UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>WALTER A. FORBES and )<br>E. KIRK SHELTON. )<br>)<br>) | No. 3:02CR264 (AWT)<br><br>September 27, 2004 |

MEMORANDUM OF WALTER A. FORBES
IN SUPPORT OF MOTION FOR (1) AN ORDER
REQUIRING THE GOVERNMENT TO CONFER
IMMUNITY ON STUART BELL OR (2) A MISSING
WITNESS INSTRUCTION RELATING TO STUART BELL
(Forbes Trial Motion No. 36) (FILED UNDER SEAL)

Walter A. Forbes, through undersigned counsel, respectfully submits this memorandum in support of his motion for (i) an order requiring the government to confer immunity on Stuart Bell or (ii) a missing witness instruction relating to Stuart Bell.

### INTRODUCTION

As the Court is aware, Mr. Bell is a critical witness in the case. During the course of the trial, the jury has heard extensive testimony relating to Mr. Bell, most notably from Cosmo Corigliano and Kevin Kearney.[1] In addition, numerous purported hearsay statements by Mr. Bell have been admitted into evidence under the co-conspirator exception to the

---

[1] Ms. Pember also testified concerning alleged accounting irregularities that purportedly occurred during Mr. Bell's tenure as CFO, although she did not provide any testimony concerning Mr. Bell's knowledge or involvement in those alleged irregularities.

hearsay rule. Mr. Bell's significance in the case is highlighted by the fact that the Court has received two juror notes inquiring about Mr. Bell and the absence of his testimony to date.

Mr. Forbes seeks to call Mr. Bell as a defense witness, and has subpoenaed him for that purpose. Mr. Bell's counsel has notified Mr. Forbes' counsel that Mr. Bell will invoke his Fifth Amendment privilege against self-incrimination if called to testify. See Exhibits 1 and 2, declarations of Messrs. Simon and Cary. Mr. Bell's counsel also has informed counsel for Mr. Forbes that Mr. Bell denies committing any fraud at CUC, Exs. 1 & 2, and that there are legitimate explanations for the accounting done at CUC during Mr. Bell's tenure as CFO, Ex. 1. Mr. Bell's testimony would be powerfully exculpatory to Mr. Forbes. Indeed, Mr. Bell is a uniquely situated witness who could refute Mr. Corigliano's, Ms. Pember's, and Mr. Kearney's testimony concerning allegedly improper accounting at CUC during the pre-1995 period. Accordingly, the government should be required to elect between either conferring immunity on Mr. Bell or having a missing witness instruction read to the jury that permits the jury to reach an adverse inference as a result of the government's failure to call Mr. Bell as a government witness.

## ARGUMENT

I.  **THE GOVERNMENT SHOULD IMMUNIZE MR. BELL.**

Due process requires that material evidence not be suppressed by the prosecution once it is requested by the defendant. Brady v. Maryland, 373 U.S. 83, 87 (1963). Because Mr. Bell is a critical exculpatory witness whose testimony is unavailable to Mr. Forbes, due process requires that the government confer immunity on Mr. Bell to enable Mr. Forbes to obtain his testimony.

The Second Circuit has held that a court may order the government to immunize a potential witness who has invoked the Fifth Amendment privilege against self-incrimination where extraordinary circumstances are present. See Blissett v. LaFavre, 924 F.2d 434, 442 (2d Cir. 1991). The Court has determined that extraordinary circumstances are present where (i) the government has deliberately denied a witness immunity while conferring immunity on other witnesses "for the purpose of withholding exculpatory evidence and gaining a tactical advantage through such manipulation"; (ii) the unimmunized witness's testimony is "material, exculpatory, and not cumulative" and (iii) "the defendant has no other way to obtain the evidence." Id. The Second Circuit also has left open the possibility that extraordinary circumstances could be present even where the first prong of the three-part test is not satisfied. See United States v. Dolah, 245 F.3d 98, 106 (2d Cir. 2001) ("If no discriminatory use of immunity for Government

3

witnesses has occurred, i.e., the Government has not immunized any of its own witnesses, we have explicitly left open the issue of whether under extraordinary circumstances, due process may require that the government confer use immunity on a witness for the defendant") (quotations omitted), overruled on other grounds, Crawford v. Washington, 124 S. Ct, 1354 (2004).

This is a case presenting extraordinary circumstances, where due process requires the government to confer immunity on Mr. Bell.

First, it cannot be disputed that Mr. Bell's testimony is material, exculpatory, and not cumulative. If Mr. Bell testified, he would deny any participation in any fraud at CUC. Mr. Bell's testimony would undermine the government's claim that the alleged fraud began in the late 1980's under Mr. Bell and continued throughout Mr. Bell's tenure as CFO of CUC. Mr. Bell's testimony also would undermine Mr. Corigliano's testimony that Mr. Corigliano learned how to commit accounting fraud from Mr. Bell and that Mr. Corigliano was not the architect of CUC's improper accounting. In addition, Mr. Bell would be able to explain that the documents introduced into evidence by the government concerning the pre-1995 period do not reflect improper accounting, and that the accounting done under Mr. Bell was proper and in compliance with GAAP. This testimony would be extremely exculpatory and would undermine the testimony of the government's central witness against Mr. Forbes. The significance of Mr. Bell's testimony is

4

highlighted by the fact that the Court has received two juror notes inquiring about Mr. Bell.

Second, it is clear that Mr. Forbes has no other means of presenting the testimony that only Mr. Bell can offer. Mr. Bell was the CFO of CUC prior to 1995, and he is the only person who can refute Mr. Corigliano's testimony concerning allegedly improper accounting during Mr. Bell's tenure as CFO. Much of Mr. Corigliano's testimony concerning Mr. Bell involved purported conversations in which only Mr. Corigliano and Mr. Bell were present. Only Mr. Bell could contradict Mr. Corigliano's testimony concerning those conversations. Moreover, as the former CFO, and a CPA, Mr. Bell is uniquely qualified to explain the propriety of CUC's accounting during the pre-1995 period and refute Mr. Corigliano's claims that documents from that period reflect accounting that intentionally violates GAAP.

Third, this case presents extraordinary circumstances for additional reasons. The government has presented extensive testimony from other witnesses concerning Mr. Bell's purported statements and actions, including numerous hearsay statements purportedly made by Mr. Bell. It is fundamentally unfair for the government to feature Mr. Bell's alleged misconduct prominently in its case-in-chief, and to claim that Mr. Bell initiated the accounting fraud and taught Mr. Corigliano how to commit the fraud, while denying Mr. Forbes the testimony of the key witness who would deny these claims. Mr. Bell's testimony is crucial to the judicial fact-finding

5

process. Without his testimony, the fact-finding process will necessarily be distorted. Such distortion is contrary to the very purpose of a trial and our system of criminal justice. See Nix v. Whiteside, 475 U.S. 157, 158 (1996) ("the very nature of a trial [is] as a search for truth"); Arizona v. Fulminante, 488 U.S. 279, 296 (1991) ("The search for truth is ... central to our system of justice.").

Fourth, the government has no valid reason for denying immunity to Mr. Bell, and seeks to gain tactical advantage by refusing to immunize him. Indeed, the government's sole interest here is in preventing Mr. Bell from testifying in a manner that would demonstrate Mr. Forbes' innocence. That is an illegitimate interest, and one that warrants an Order compelling immunity. See United States v. Westerdahl, 945 F.2d 1083 (9th Cir. 1991).

In Westerdahl the government obtained a robbery conviction by relying heavily on circumstantial evidence provided by the testimony of two witnesses who had been granted immunity by the government, and one witness who testified as part of a plea agreement in which a host of felony charges pending against him were dropped. Id. at 1087. The government refused to grant immunity to a fourth witness, however, who was ready to testify that the defendant had not participated in the robbery. Id. at 1086. The government's use of the three witnesses' testimony "while effectively denying Westerdahl the right to contradict it with [his witness's] testimony,

6

may have distorted the fact-finding process, and an evidentiary hearing should have been held to determine whether the denial of use immunity for [the witness] denied Westerdahl his due process rights." Id. at 1087. The court therefore reversed the judgment of conviction. Id.

The facts here are comparable to those in Westerdahl. Here, each of the government's three key witnesses has entered into a plea agreement under which his or her potential time of incarceration has been substantially reduced. And each of the witnesses' agreements was contingent upon cooperating with the government by providing testimony on its behalf. Moreover, the government provided multiple proffer agreements to the one other witness to provide testimony concerning alleged irregularities dating back to Bell's tenure as CFO – Kevin Kearney.[2]

By immunizing where necessary the testimony of any alleged coconspirator that the government can convince to testify against the defendants, but denying immunity to those who exculpate the defendants, the government engages in the precise misconduct condemned in Westerdahl. The government's conduct distorts the judicial fact-finding process, and due process mandates that the government be compelled to grant statutory immunity to Mr. Bell.

---

[2] Mr. Kearney's testimony about Mr. Bell appears to be a recent fabrication. See Motion of Walter A. Forbes for a Mistrial Due to the Government's Presentation of, and Failure to Correct, Kevin Kearney's False and Misleading Testimony (Forbes Trial Motion No. 30).

The government has presented extensive testimony concerning Mr. Bell, including more than a day of testimony by Mr. Corigliano. The government also has placed a large number of purported hearsay statements by Mr. Bell before the jury through the testimony of Corigliano and Kearney. The government does not want Mr. Bell to testify because his testimony would contradict that of its cooperating witnesses and undermine the government's contention that CUC engaged in improper accounting when Mr. Bell was CFO. Because the government seeks to withhold immunity from Mr. Bell to gain tactical advantage, the Court should compel the government to grant immunity to Mr. Bell.

It is clear that the government has no good-faith basis for denying immunity to Mr. Bell. The government has never sought to prosecute Mr. Bell for his purported involvement in accounting wrongdoing at CUC and cannot represent in good faith that it has any intention to do so now. It is more than six years after accounting irregularities at CUC were disclosed to the public, and more than nine years after Mr. Bell stepped down as CFO of CUC. If the government had any serious interest in pursuing criminal charges against Mr. Bell, it would have done so long ago.

The government has been on notice of Mr. Bell's purported wrongdoing since at least the year 2000, and has chosen not to indict him. Mr. Corigliano began cooperating with the government in early 2000, and has consistently claimed that Mr. Bell was involved in improper accounting at

CUC. The government relied on other claims of Mr. Corigliano when it indicted the two top officers of the former CUC – the CEO and the President – in 2001. But while it named Mr. Bell as an unindicted alleged co-conspirator in connection with that indictment and two superseding indictments, the government did not indict Mr. Bell. The government's decision not to indict Mr. Bell notwithstanding Mr. Corigliano's claims is a powerful indication that the government has no intention of pursuing any criminal action against Mr. Bell. Moreover, it would be highly unusual for the government to indict Mr. Bell at this late date, since he was a subordinate of Mr. Forbes. The government does not ordinarily indict lower-level employees after charging higher-level employees.

Finally, the government's interests, and the interests of justice, would be served by immunizing Mr. Bell. Mr. Bell has no criminal record and is not under investigation for any criminal conduct unrelated to his employment at CUC. It is clear from the government's failure to indict Mr. Bell in the past six years that the government does not seek to charge Mr. Bell with any criminal conduct arising from his employment at CUC. As a result, Mr. Bell does not receive any benefit from an immunity order at this juncture. Moreover, if the government believes that Mr. Bell's testimony denying fraudulent conduct is false, an immunity order does not preclude the government from charging Mr. Bell with perjury or obstruction of justice. Because an immunity order would still allow the government to bring

9

criminal charges if it sees fit, the interests of justice are served by a grant of immunity to Mr. Bell.

## II. IN THE ALTERNATIVE, THE COURT SHOULD GIVE A MISSING WITNESS INSTRUCTION WITH RESPECT TO MR. BELL.

In the event the Court does not compel the government to grant statutory immunity to Mr. Bell, the Court should give the jury a missing witness instruction that allows the jury to infer from the government's failure to call Mr. Bell as a witness that his testimony would have been harmful to the government's case.

It is well settled that, "when a party has it peculiarly within its power to produce witnesses and fails to do so, the jury may infer that the testimony, if produced, would have been unfavorable to that party." United States v. Myerson, 18 F.3d 153, 158 (2d Cir. 1994) (quotation omitted) (collecting cases). Ordinarily, when a witness asserts the Fifth Amendment privilege against self-incrimination, he is considered unavailable to all of the parties to the case, and there is no basis for an instruction that the missing witness's testimony would have been adverse to one party. In a criminal case, however, the government has the power to immunize a witness who asserts the Fifth Amendment; the defendant does not. As a result, "in circumstances that indicate the government has failed to immunize an exculpatory witness," Myerson, 18 F.3d at 160, a district court may abuse its discretion "by refusing to give

a missing witness charge." Id.[3]

Here, in the event the Court determines that the government is not required to immunize Mr. Bell under the Due Process Clause, a missing witness instruction is appropriate because the government has "failed to immunize an exculpatory witness." Id. As discussed above, Mr. Bell's testimony would be extremely exculpatory and would refute the testimony of the government's key witness, Mr. Corigliano. Because the government has the power to immunize Mr. Bell, but refuses to do so, an instruction informing the jury that it may draw an adverse inference with respect to the government's failure to call Mr. Bell as a witness is both necessary and appropriate.

Indeed, a missing witness instruction is particularly warranted in this case because the government has presented evidence, over defense objection, concerning Mr. Forbes' ongoing business relationship with Mr. Bell. Tr. 8/3/2004 at 9478 (Testimony of Cosmo Corigliano). In so doing, the government has created the appearance that Mr. Forbes should be in a position to call Mr. Bell to testify, and jurors may erroneously conclude that Mr. Forbes' failure to call Mr. Bell indicates that Mr. Bell would testify

---

[3] While a prosecutor's failure to immunize a witness does not "categorically[] give rise to an inference that the witness's testimony would be unfavorable to the government," Myerson, 18 F.3d at 159, such an inference is certainly warranted here. Indeed, Mr. Bell's counsel has made it clear that Mr. Bell's testimony would contradict the government's central allegations that Mr. Bell engaged in fraudulent accounting during his tenure as CFO, and that it was he who taught Mr. Corigliano how to engage in fraudulent accounting.

12

adversely to Mr. Forbes. Because the precise opposite is true, and because the government's refusal to immunize Mr. Bell precludes Mr. Forbes from presenting Mr. Bell's exculpatory testimony, a missing witness instruction explaining that the government was uniquely situated to call Mr. Bell but failed to do so is warranted.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: *Barry S. Simon / RMC*
Brendan V. Sullivan, Jr. (ct17115)
Barry S. Simon (ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (ct05103)
Thomas J. Murphy (ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Dated: September 27, 2004

# EXHIBIT 1

## Declaration of Barry S. Simon

Barry S. Simon, counsel for Walter A. Forbes, hereby declares as follows:

1. Counsel for Mr. Stuart Bell has informed me that absent a grant of immunity by the government, Mr. Stuart Bell will invoke the privilege not to testify under the Fifth Amendment if called to testify in the matter of United States v. Forbes, No. 3:02CR264 (AWT) (D. Conn.).

2. Counsel for Mr. Stuart Bell further informed me that should Mr. Bell testify pursuant to a grant of immunity, Mr. Bell would deny committing any fraud at CUC.

3. In earlier discussions, counsel for Mr. Bell informed me, among other things, that Mr. Bell did not engage in financial wrongdoing at CUC, that Mr. Corigliano's testimony about Mr. Bell's alleged involvement in unlawful conduct at CUC is wrong, and that there are legitimate explanations for the accounting done at CUC during Mr. Bell's tenure as CFO.

I declare under penalty of perjury that the foregoing is true and correct.

_Barry S. Simon / RMC_
Barry S. Simon
September 25, 2004

# EXHIBIT 2

## Declaration of Robert M. Cary

Robert M. Cary, counsel for Walter A. Forbes, hereby declares as follows:

1. Counsel for Mr. Stuart Bell has informed me that absent a grant of immunity by the government, Mr. Stuart Bell will invoke the privilege not to testify under the Fifth Amendment if called to testify in the matter of United States v. Forbes, No. 3:02CR264 (AWT) (D. Conn.).

2. Counsel for Mr. Stuart Bell further informed me that should Mr. Bell testify pursuant to a grant of immunity, Mr. Bell would deny committing any fraud at CUC.

I declare under penalty of perjury that the foregoing is true and correct.

*Robert M. Cary*
Robert M. Cary
September 25, 2004

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Memorandum in Support of Motion of Walter A. Forbes for (1) An Order Requiring the Government to Confer Immunity on Stuart Bell or (2) a Missing Witness Instruction Relating to Stuart Bell (Forbes Trial Motion No. 36) (Filed under Seal) to be served on September 27, 2004 to the following:

<u>Via Hand Delivery</u>
John J. Carney, Esq.
Special Attorney
U.S. Department of Justice
450 Main Street, Room 617
Hartford, CT 06103

Gary H. Collins, Esq.
Day Berry & Howard LLP
CityPlace I
Hartford, CT 06103

<u>Via Federal Express</u>
Thomas P. Puccio, Esq.
230 Park Ave.
Suite 301
New York, NY 10169

Scott A. Edelman, Esq.
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005

_Barry S. Simon/Rm e_
Barry S. Simon