UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 3:02CR264 (AWT) |
| v. ) | |
| ) | September 26, 2004 |
| WALTER A. FORBES and ) | |
| E. KIRK SHELTON. ) | |

REPLY MEMORANDUM IN SUPPORT OF
MOTION OF DEFENDANT WALTER A. FORBES
FOR (1) AN ORDER REQUIRING THE GOVERNMENT
TO CONFER IMMUNITY ON STUART BELL OR (2) A MISSING
WITNESS INSTRUCTION RELATING TO STUART BELL
(Forbes Trial Motion No. 36) (FILED UNDER SEAL)

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this reply memorandum in support of his motion for (i) an order requiring the government to confer immunity on Stuart Bell or (ii) a missing witness instruction relating to Stuart Bell.

## ARGUMENT

I. THE GOVERNMENT'S ONLY REASONS FOR REFUSING TO IMMUNIZE MR. BELL ARE TACTICAL ONES.

The government effectively concedes in its opposition memorandum that it has no intention of pursuing any criminal action against Mr. Bell. The government makes no representation that Mr. Bell is the subject or target of any ongoing criminal investigation. Nor does the government represent that it intends to bring any charges against Mr. Bell for his purported misconduct at CUC. It is evident from the government's silence on this point that there is no legitimate law

enforcement related barrier to immunizing Mr. Bell with respect to testimony concerning his work at CUC. It is also clear that the government's reasons for refusing to immunize Mr. Bell are purely tactical ones. Put simply, the government does not want Mr. Bell to present exculpatory testimony that would contradict, and undermine, the testimony of the government's witnesses, particularly Mr. Corigliano and Mr. Kearney.

The government has entered into cooperation and other agreements with alleged co-conspirators who support the government's case. Its refusal to immunize Mr. Bell in this case for tactical reasons, together with the government's heavy reliance on the Bell-related testimony of its cooperating witnesses to support its charges against Mr. Forbes, constitute "extraordinary circumstances" warranting an order compelling the government to grant immunity to Mr. Bell. The government has offered into evidence extensive testimony concerning Mr. Bell's purported statements and actions in support of its charges against Mr. Forbes. Yet the government seeks to deny the jury the opportunity to hear directly from Mr. Bell whether he actually made those statements or engaged in the extensive wrongdoing that the government's cooperating witnesses attribute to him.

Absent a grant of immunity to Mr. Bell, the truth-seeking function of this trial would be severely distorted. Here, as in United States v. Westerdahl, 945 F.2d 1083 (9th Cir. 1991), the government's case relies heavily on "circumstantial evidence," id. at 1087, concerning Mr. Forbes. The government seeks to use the testimony of its cooperating witnesses concerning Mr. Bell -- including testimony by

Mr. Corigliano and Mr. Kearney -- as evidence of Mr. Forbes' purported involvement in criminal conduct.[1] "The use of this testimony, while effectively denying [Mr. Forbes] the right to contradict it with [Mr. Bell's] testimony," id., would severely distort the fact-finding process. Accordingly, the government should be required to immunize Mr. Bell.

## II. MR. BELL IS A CRITICAL WITNESS WHOSE TESTIMONY WILL BE MATERIAL AND EXCULPATORY.

Mr. Bell's testimony would be both material and exculpatory. The government's contentions to the contrary (Opp. at 5-6) cannot withstand scrutiny.

First, Mr. Bell's counsel has represented to Mr. Forbes' counsel that Mr. Bell's testimony would be exculpatory. See Cary Decl.; Simon Decl. Mr. Bell's counsel has informed counsel for Mr. Forbes that (i) Mr. Bell would deny committing any fraud at CUC; (ii) Mr. Bell did not engage in financial wrongdoing at CUC; (iii) Mr. Corigliano's testimony about Mr. Bell's alleged involvement in unlawful conduct at CUC is wrong; and (iv) there are legitimate explanations for

---

[1] For example, the government elicited testimony from Mr. Corigliano that (i) Mr. Forbes walked in on meetings between Mr. Corigliano and Mr. Bell during which improper accounting purportedly was discussed, and (ii) the conversations continued in Mr. Forbes' presence. E.g., Tr. 6421-24, 6727-29. The government also elicited testimony from Mr. Corigliano that he began providing "cheat sheets" to Mr. Forbes after Mr. Forbes purportedly mentioned that he previously went over the numbers with Mr. Bell and sought to do so with Mr. Corigliano when Mr. Corigliano became CFO. E.g., Tr. 6455-56. The government elicited testimony from Mr. Kearney that Mr. Bell purportedly invoked Mr. Forbes' name when giving instructions to Mr. Kearney concerning purported unsupported topside adjustments. E.g., Tr. 9715-25. Mr. Forbes has moved for a mistrial based on, inter alia, that testimony. See Forbes Trial Motion No. 30.

3

the accounting done at CUC during Mr. Bell's tenure as CFO. See Simon Decl. Mr. Bell's counsel is in the best position to know whether Mr. Bell would provide exculpatory or inculpatory testimony in this case. The government has not presented any evidence to indicate that Mr. Bell's testimony would be inculpatory. If the Court seeks further confirmation in this regard, the Court should conduct an evidentiary hearing on this subject. See Westerdahl, 945 F.2d at 1087 (evidentiary hearing should have been held on issue of whether due process required immunizing defense witness).[2]

Second, the fact that Mr. Bell may not address the 1995-1998 period (Opp. at 5) does nothing to negate the significance of Mr. Bell's testimony.[3] The indictment charges an alleged scheme that purportedly commenced in the late 1980's and continued throughout Mr. Bell's tenure as CFO. See Indictment, Count 2, ¶ 2, Count 3, ¶ 1, Count 4, ¶ 1, Counts 7-12, ¶ 1, Counts 13-16 ¶ 1. Mr. Corigliano testified that Mr. Bell taught him how to engage in accounting fraud and deceive the auditors, and that the fraud began under Mr. Bell. Testimony by Mr.

---

[2] If the government truly believes that Mr. Bell's testimony would be inculpatory, it should have no fear in immunizing Mr. Bell. If Mr. Bell's testimony were inculpatory, and Mr. Bell were to testify that he engaged in accounting fraud during his tenure at CUC, Mr. Bell would significantly strengthen the government's case and corroborate Mr. Corigliano's testimony. The government's strenuous opposition to Mr. Forbes' motion suggests that precisely the opposite is true.

[3] According to Mr. Bell's counsel, Mr. Bell did not participate in any fraud at CUC at any time. Mr. Bell could thus refute any implication that he had any discussions with Mr. Corigliano (or anyone else) concerning improper accounting in the period after he stepped down as CFO.

4

Bell that he did <u>not</u> engage in accounting fraud or conceal information from auditors; that CUC's accounting during the pre-1995 period was proper; and that Mr. Bell did <u>not</u> instruct Mr. Corigliano to engage in fraud, would powerfully undermine both critical aspects of the charges in the indictment and the testimony of the government's central witness against Mr. Forbes.

As the Court has observed, much of Mr. Corigliano's testimony involved purported interactions with Mr. Forbes and/or Mr. Shelton at which no one else was present. E.g., Tr. 13,139-40. The same is true with respect to Mr. Corigliano's testimony concerning his purported interactions with Mr. Bell. Mr. Corigliano testified extensively about purported meetings or conversations at which Mr. Corigliano and Mr. Bell were the only persons present and about purported improper accounting done by Mr. Corigliano and Mr. Bell. See, e.g., Tr. 6245-46; 6250-51, 6286, 6300, 6303, 6318, 6325-26, 6343-44, 6346-51, 6353-54, 6356-57, 6360-62, 6365-67, 6371-74, 6411-13, 6417-19, 6426, 6500-01. If Mr. Bell refutes Mr. Corigliano's testimony about their purported conversations and interactions concerning fraudulent accounting, the jury could very well conclude that Mr. Corigliano cannot be believed and that Mr. Corigliano's testimony regarding Mr. Forbes is false as well. Moreover, if Mr. Bell refutes Mr. Corigliano's claim that Mr. Corigliano learned how to commit fraud and deceive auditors from Mr. Bell, the jury could conclude that Mr. Corigliano was the mastermind of the fraud -- not Mr. Bell or Mr. Forbes -- and that Mr. Corigliano repeatedly lied during his direct examination.

Furthermore, Mr. Bell's testimony would negate the government's claim and Mr. Corigliano's testimony that accounting fraud at CUC took place between the late 1980's and early 1995. Mr. Bell's testimony also would rebut Mr. Kearney's testimony concerning Mr. Bell's purported invocation of Mr. Forbes' name when giving instructions to Mr. Kearney concerning purportedly unsupported topside adjustments, as well as Mr. Kearney's testimony that unsupported topside adjustments were done during the period when Mr. Bell was CFO. Mr. Bell's testimony also would refute Ms. Pember's testimony with respect to pre-1995 accounting at CUC. Accordingly, the fact that Mr. Bell may not address the 1995-1998 time period does nothing to lessen the significance of Mr. Bell's testimony.[4]

Third, the government cannot (and does not) refute the fact that a significant percentage of both Mr. Corigliano's and Mr. Kearney's testimony addressed the pre-1995 period and their purported interactions with Mr. Bell. Mr. Corigliano's testimony with respect to Mr. Bell was an important part of the government's case, because the government seeks to establish that: (i) Mr. Corigliano did not begin the fraud at CUC; (ii) Mr. Corigliano began to participate in the fraud because he was instructed to do so by his superior, Mr. Bell; (iii) the fraud was part of a purported ingrained corporate culture at CUC and spanned two

---

[4] The government's contention that "the defense will argue that Corigliano's testimony regarding Mr. Bell is false" even if Mr. Bell does not testify (Opp. at 6) does not mean that Mr. Bell's testimony is immaterial. To the contrary, Mr. Forbes' contention that Mr. Corigliano is lying about Mr. Bell (as well as about Mr. Forbes) would be significantly strengthened by Mr. Bell's testimony refuting Mr. Corigliano's testimony.

6

CFO's; (iv) Mr. Bell reported to Mr. Forbes; (v) Mr. Forbes walked in on purported conversations concerning accounting manipulations between Mr. Corigliano and Mr. Bell that continued in Mr. Forbes' presence (see Tr. 6421-24, 6427-29); and (vi) Mr. Corigliano purportedly began discussing the "cheat sheet" with Mr. Forbes in 1995 after Mr. Forbes purportedly mentioned to Mr. Corigliano that he previously discussed the numbers with Mr. Bell (Tr. 6455-56). Mr. Kearney's testimony concerning the pre-1995 period is significant to the government's case as well, because the government will rely on Mr. Kearney's testimony that Mr. Bell invoked Mr. Forbes' name when discussing purportedly improper topside adjustments to argue to the jury that Mr. Forbes must have been aware of improper accounting at CUC.

Based on Mr. Corigliano's and Mr. Kearney's testimony, the government will argue to the jury that Mr. Forbes -- to whom Mr. Bell reported -- had to have known about, and been involved in, the fraud at CUC. If Mr. Bell were to contradict Mr. Corigliano's testimony concerning Mr. Bell's purported involvement in the fraud, and Mr. Kearney's testimony that Mr. Bell invoked Mr. Forbes' name when discussing purportedly improper topside adjustments, the jury would be presented with a very different picture, and would be less inclined to believe that the fraud was an ingrained part of CUC's culture or that Mr. Forbes must have been involved in it.

Fourth, the government cannot (and does not) dispute the fact that the government introduced numerous purported statements by Mr. Bell into evidence

under the co-conspirator exception to the hearsay rule. Having offered Mr. Bell's own purported words into evidence in an effort to convict Mr. Forbes, it would be fundamentally unfair for the government to deny Mr. Forbes the opportunity to call Mr. Bell himself as a witness. Particularly where (as here) Mr. Bell is not the subject or target of any ongoing criminal investigation concerning his conduct at CUC, there is no legitimate reason for the government to deny the jury the opportunity to hear directly from Mr. Bell.

Fifth, Mr. Bell is uniquely situated to refute Mr. Corigliano's incriminating interpretations of documents introduced by the government with respect to the pre-1995 period and Mr. Corigliano's incriminating testimony concerning allegedly improper accounting during this period. Over Mr. Forbes' continuing Rule 701 objection, the Court allowed Mr. Corigliano to testify extensively concerning the purported impropriety of CUC's pre-1995 accounting. See Forbes Trial Motion No. 21. Mr. Corigliano repeatedly testified that there was no basis for accounting decisions made by CUC during this period. See id.; Forbes Trial Motion No. 20. Mr. Bell, as the former CFO of CUC, is the only person who could refute this extensive testimony by explaining the legitimate reasons for such purportedly improper accounting.

While the government claims that Mr. Forbes could call other people who worked in CUC's accounting department during this period, the government has not identified any other witness who could testify to the range of issues raised by Mr. Corigliano concerning the pre-1995 period (including, inter alia, the

cancellation reserve, rejects in transit, revenue recognition practices, topside adjustments, the general reserve, the alleged "cheat sheets," other reserve adjustments, the Essex merger reserve, the Sentinel merger reserve, the BCI/CNA profit sharing receivable adjustment, the health accrual adjustment, the CPub solicitation adjustment, and the professional fees adjustment ). See, e.g., Tr. 6245-46, 6291-94, 6298-6302, 6306-07, 6311-14, 6318, 6323-25, 6344-60, 6363-67, 6371-73, 6398-6402, 6500-01, 8435-36; Forbes Trial Motion Nos. 20 & 21. Nor has the government pointed to any other witness who was present during the entire period between the late 1980's and early 1995, as Mr. Bell was.

Moreover, Mr. Bell was the only CFO of CUC during the pre-1995 period, and much of Mr. Corigliano's testimony involved purported conversations with Mr. Bell at which Mr. Corigliano and Mr. Bell were the only persons present. In addition, Mr. Bell is the only person who can testify to Mr. Bell's intent with respect to CUC's accounting and deny the government's contention that Mr. Bell was an alleged co-conspirator. Mr. Bell also could explain that he never intended to file false or misleading financial statements with the SEC, and that he signed CUC's SEC filings during the pre-1995 period with a good faith belief that they were materially correct. Accordingly, the government's contention that there are other former CUC employees who could offer the same testimony as Mr. Bell is unfounded.[5]

---

[5] Mr. Bell's testimony on these subjects is especially critical because the government did not provide any particulars concerning the pre-1995 period and

Sixth, the government's contention that Mr. Bell's explanations for CUC's accounting may not be correct (Opp. at 5) is inapposite. If Mr. Bell believed, in good faith, that CUC's accounting during the pre-1995 period was proper, then Mr. Bell could not have been a member of a criminal conspiracy to fraudulently inflate CUC's financial results. Similarly, if Mr. Bell genuinely believed that CUC's accounting was proper, and never conveyed to Mr. Forbes that there was anything improper about CUC's accounting, then the government cannot establish that Mr. Forbes was a knowing and willful member of a conspiracy that purportedly began in the late 1980's and continued throughout Mr. Bell's tenure as CFO. Finally, if Mr. Bell believed that the accounting during his tenure as CFO was proper, the jury could conclude that Mr. Corigliano's testimony that he and Mr. Bell repeatedly discussed improper accounting (and purportedly did so in Mr. Forbes' presence) is incredible, and that Mr. Corigliano cannot be believed.

Seventh, the government's contentions that Mr. Bell cannot establish that "fraud did not happen while Mr. Bell was there or after Mr. Bell left" (Opp. at 5), or that Mr. Forbes "did not conspire with Shelton, Corigliano, or others" (Opp. at 5-6), are unavailing. The alleged conspiracy that is the focus of this trial is one in which Mr. Bell purportedly was an <u>integral participant</u>. The government has identified Mr. Bell as an alleged co-conspirator, and its chief witness places Mr. Bell

---

unfairly surprised Mr. Forbes with the testimony of Mr. Corigliano and other witnesses concerning this period. <u>See</u> Forbes Trial Motion No. 20; Forbes Pretrial Motion Nos. 38, 60.

10

at the heart of the alleged conspiracy for more than five years. Mr. Bell's denial of wrongdoing will powerfully undermine both the government's case and the testimony of the government's principal witness.

In sum, Mr. Bell's testimony would be material, exculpatory, and not cumulative. Indeed, it is precisely because Mr. Bell's testimony would be powerfully exculpatory with respect to Mr. Forbes, and because Mr. Bell would demonstrate that the government's key witness is a liar, that the government opposes immunizing Mr. Bell. Because the government's sole reason for refusing to immunize Mr. Bell is a tactical one, and because the truth-seeking function of this trial would be severely distorted if Mr. Bell did not testify, the government should be required to confer immunity on Mr. Bell.

### III. IN THE ALTERNATIVE, THE COURT SHOULD GIVE A MISSING WITNESS INSTRUCTION.

In the event the Court does not compel the government to grant statutory immunity to Mr. Bell, the Court should at least give the jury a missing witness instruction that allows the jury to infer from the government's failure to call Mr. Bell as a witness that his testimony would have been harmful to the government's case.

The government quotes from the Second Circuit's decision in United States v. Myerson, 18 F.3d 153 (2d Cir. 1994) (Opp. at 7) in support of its contention that no missing witness instruction is warranted. The government neglects, however, to mention the fact that the Second Circuit observed in Myerson that, "in

11

circumstances that indicate the government has failed to immunize an exculpatory witness," id. at 160, a district court may abuse its discretion "by refusing to give a missing witness charge." Id. Here, Mr. Bell is an exculpatory witness whom the government refuses to immunize. Under Myerson, a missing witness instruction that informs the jury that it may infer from the government's failure to call Mr. Bell that his testimony would have been harmful to the government's case is warranted.

The government presents no evidence with respect to its assertion that Mr. Forbes has a "past and current business relationship with, and long time friendship with, Mr. Bell." Opp. at 7. It certainly presents no evidence that the relationship between Mr. Forbes and Mr. Bell is such that, as a practical or other matter, Mr. Forbes is in any position to actually obtain Mr. Bell's testimony. In any event, the government's claim does nothing to alter the fact that Mr. Bell will invoke the Fifth Amendment privilege against self-incrimination if he is called to testify. Nor does it alter the fact that the government alone has the power to immunize Mr. Bell. Those undisputed facts render Mr. Bell unavailable to Mr. Forbes as a witness. Under Myerson, a missing witness instruction should be given, because Mr. Bell's testimony would be exculpatory and the government refuses to immunize him.

As Mr. Forbes pointed out in his opening memorandum, a missing witness instruction is particularly necessary here precisely because the government has introduced evidence that there is an ongoing business investment that involves both Mr. Forbes and Mr. Bell. See Tr. 9478. Because the government has

12

presented evidence suggesting that Mr. Forbes <u>should be</u> in a position to call Mr. Bell as a witness, and because at least one member of the jury is keenly interested in Mr. Bell and disappointed by his failure to testify, the jury could very well conclude -- absent a missing witness instruction -- that Mr. Forbes' failure to call Mr. Bell demonstrates that Mr. Bell would have testified adversely to Mr. Forbes. Because precisely the opposite is true, the Court should give a missing witness instruction in this case.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Mr. Forbes' opening memorandum, the Court should (i) require the government to confer immunity on Stuart Bell or (ii) give a missing witness instruction relating to Stuart Bell that allows the jury to draw the inference that Mr. Bell's testimony would have been unfavorable to the government.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon  (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the Motion of Reply Memorandum in Support of Motion of Defendant Walter A. Forbes for (1) an Order Requiring the Government to Confer Immunity on Stuart Bell or (2) Missing Witness Instruction Relating to Stuart Bell (Forbes Trial Motion No. 36) (Filed Under Seal) to be served on September 27, 2004 to the following:

<u>Hand Delivery</u>

John J. Carney, Esq.
Special Attorney
U.S. Department of Justice
450 Main Street, Room 617
Hartford, CT 06103

Stanley A. Twardy, Jr., Esq.
Gary H. Collins, Esq.
Day, Berry & Howard LLP
CityPlace I
Hartford, CT 06103

<u>Via Federal Express</u>

Thomas P. Puccio, Esq.
230 Park Ave.
Suite 301
New York, NY 10169

Scott A. Edelman, Esq.
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005

Barry S. Simon