UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>WALTER A. FORBES and<br>E. KIRK SHELTON. | **FILED UNDER SEAL**<br><br>No. 3:02CR264 (AWT)<br><br>October 28, 2004 |

**MEMORANDUM IN SUPPORT OF MOTION OF WALTER
A. FORBES FOR A MISTRIAL
(Forbes Trial Motion No. 51)**

Walter A. Forbes, through undersigned counsel, respectfully submits this memorandum in support of his motion for a mistrial.[1]

## INTRODUCTION

During the course of this trial, Mr. Forbes filed mistrial motions because of various constitutional violations, including due process violations based on the government's presentation of Cosmo Corigliano's and Kevin Kearney's false and misleading testimony, and a variance/constructive amendment based on new charges of alleged accounting misconduct during the pre-1995 time period. Mr. Forbes moved to compel the government to confer immunity on Stuart Bell, for dismissal or striking of testimony that Mr. Bell engaged in misconduct, or for a missing witness instruction because Mr. Bell could have offered material, non-cumulative, exculpatory testimony

---

[1] This motion raises issues different than the pending oral mistrial motion made at the conclusion of the government's summation and Forbes Trial Mot. No. 49, which is also pending.

that was not available from other sources, and that would have refuted the charges regarding the pre-1995 time period as well as Mr. Corigliano's and Mr. Kearney's false testimony. Mr. Forbes also moved to exclude John Oller's interview memorandum (because it did not constitute a statement of Mr. Forbes) and evidence of Mr. Forbes' asset transfers (because such evidence was not relevant and was unduly prejudicial). The Court denied each of these motions. Each of these errors, however, was exacerbated by the government's closing argument, which made Mr. Corigliano's false testimony, Mr. Kearney's false testimony, new charges of pre-1995 accounting misconduct, Mr. Bell, the Oller memorandum, and the asset transfers the heart of the case against Mr. Forbes.[2] If there was any question before, there can be none now—these errors have prejudiced Mr. Forbes and require a mistrial.

## ARGUMENT

1.  <u>The Government Improperly Argued Mr. Corigliano's False Testimony</u>. Due process is violated when the prosecution obtains a conviction based on evidence that the government knows or should know is false or misleading. <u>See, e.g.</u>, <u>Napue v. Illinois</u>, 360 U.S. 264 (1959); <u>United

---

[2]  Mr. Forbes moved to preclude the government from arguing these matters in summation. <u>See</u> Forbes Trial Mot. No. 48 (filed Oct. 13, 2004). The Court denied that motion, and at the Court's suggestion, <u>see</u> Tr. (10/14/04) at 14604, Mr. Forbes filed a Notice of Preservation of Objections to Improper Closing Argument (Oct. 15, 2004), which lodged objections to closing argument on each of these matters. <u>See</u> Tr. (10/18/04) at 14848 (confirming that objections were preserved).

States v. Wallach, 935 F.2d 445 (2d Cir. 1991). Mr. Corigliano provided testimony that the government knows or should know was false and misleading in numerous respects. See, e.g., Forbes Trial Mot. No. 28 (filed Aug. 20, 2003). Nevertheless, in closing argument, the government relied heavily upon Mr. Corigliano's testimony and urged the jury to find that he was a credible witness. See, e.g., Tr. (10/18/04) at 14858 ("So Cosmo Corigliano, who the defense has called a liar so many times I can't even count them, is credible.").[3]

The government attempted to bolster Mr. Corigliano's credibility by arguing, improperly, that he would not falsely implicate Mr. Forbes because Mr. Corigliano could satisfy the cooperation requirement of his plea agreement by implicating Mr. Shelton alone and because false testimony would jeopardize Mr. Corigliano's agreement. See Forbes Trial Motion No. 49 (filed Oct. 19, 2003). The government also conveyed the message that the government believes that Mr. Corigliano was telling the truth by suggesting that Mr. Corigliano's cooperation agreement has not been "thrown out the window." See Tr. (10/18/04) at 14860; see also id. at 14861 ("But if they

---

[3] In responding to Mr. Forbes' oral motion for a mistrial at the conclusion of the government's summation, the government argued that it was a fair inference that Kirk Shelton was fired because of the events of March 6. See Gov't Opp'n Forbes Oral Motion for Mistrial (filed Oct. 20, 2004) at 3 (quoting and discussing Tr. (08/04/04) at 9573-74). That argument was based, almost exclusively, on Mr. Corigliano's false testimony about the supposed mid-March meeting with Mr. Forbes in Mr. Shelton's office that could not have taken place because Mr. Forbes was then 3,000 miles away.

testify falsely, if they lie, the agreement says it goes out the window.").[4] The government should not be arguing Mr. Corigliano's credibility in light of his known false testimony, and certainly should not be vouching for him.

  2. The Government Improperly Argued Mr. Kearney's False Testimony. Mr. Kearney testified falsely when he asserted that Mr. Bell invoked the name Walter Forbes in connection with the alleged fraud. See Forbes Trial Mot. No. 30 (filed Aug. 23, 2004). The government participated in the interviews that demonstrate the falsity of this testimony. In government interviews, Mr. Kearney said that he had no evidence regarding Mr. Forbes. The notes, memoranda and letters from the first twelve Kearney interview sessions provide no indication that Mr. Kearney claimed that Mr. Bell ever invoked the name Walter Forbes. They indicate just the opposite. Mr. Kearney's story changed throughout the interview sessions, but even when he started claiming to have had meetings with Mr. Bell regarding topside adjustments, he told the government that he "does not recall whether Stu Bell invoked Walter Forbes's name." Forbes Trial Mot. No. 30 (filed Aug. 23, 2004), Ex. 25 at 2 (emphasis added).[5]

---

[4] The government concedes that it argued Mr. Corigliano's credibility in closing arguments. See Mem. Opp'n Forbes Mot. Mistrial Due to Improper Closing Argument (filed October 20, 2004) at 11 (arguing that "the Government's arguments that Corigliano gave credible testimony" were proper).

[5] As set forth below, Mr. Bell would have refuted Mr. Kearny's false testimony.

- 4 -

Knowing full well Mr. Kearney's absence of knowledge concerning Mr. Forbes, the government in summation emphasized Mr. Kearney's false trial testimony that Mr. Bell invoked the name Walter Forbes in connection with the alleged fraud. See Tr. (10/18/04) at 14834-35 ("You saw Mr. Schechter write the words of Mr. Kearney when he testified concerning what he heard. And at his testimony on page 9720: 'Question: When Stu Bell came to you, did he indicate to you who wanted the changes to be made? Yes. What did Stu Bell tell you with respect to that? He would often come back to us and say Walter Forbes wanted EPS to be a different number than what we had so we needed to make these changes.' . . . . Stu wants EPS to be a certain number. Walter wants EPS to be a certain number. 2 plus 2 is 4 until Stu Bell and Walter Forbes got involved. And then it was 5, and then it was 6, and then it was whatever they wanted it to be.").[6]

---

[6] The infirmity of the government's reliance on this false testimony is underscored by the fact that Mr. Kearney subsequently took back the precise words he attributed to Mr. Bell. See Tr. (08/05/04) at 9845 ("Q. What I want you to do now, Mr. Kearney, is focus for the jury if you have a specific recollection, as opposed to a general recollection, a specific recollection of meeting with Stu Bell in which he made the statements you told the jury yesterday. Do you have a specific recollection of the meeting or is it a general recollection? A. A general recollection."); id. at 9869 ("So when government counsel was writing on the board, as it did several times, Walter Forbes said X or Stuart Bell said X and it was written out in words that were taken, I guess, delivered from your lips to this board, what you're saying to us today is that this is a general recollection, it's not a specific recollection that should translate into exact words; is that a fair statement? A. Yes.").

The government claimed that this testimony was critical evidence against Mr. Forbes because it supposedly "corroborated" Mr. Corigliano's testimony. See Tr. (10/18/04) at 14835 ("It's important, ladies and gentlemen, because Cosmo Corigliano has testified day after day after day in this case. He came on the stand on June the 28th of this year, and he left on August the 4th. Three months. And throughout the three months he maintained that Walter Forbes knew all about this fraud and directed this fraud. Kevin Kearney is corroborating Cosmo Corigliano.").[7]

As was the case with respect to Mr. Corigliano, the government argued that Mr. Kearney was a credible witness, with no motive to lie, who was telling the truth. See Tr. (10/18/04) at 14836 ("Who is Kevin Kearney? Is Kevin Kearney facing jail time? No. Is Kevin Kearney looking to cooperate to reduce a sentence? No. Has Kevin Kearney got a pending open issue with the SEC as to what's going to happen to him or with any other regulatory body? No. He's just a witness. Somebody who was involved. So you've got to ask yourselves, ladies and gentlemen, would he came in, would he come in here and lie about the words he heard spoken about Walter Forbes being involved in this, or is he telling the truth? Why would he lie?"). Not only is it improper to vouch for any witness or to argue the credibility of a witness the government knows or should know testified untruthfully, but the

---

[7] Notably, Mr. Corigliano did not corroborate Mr. Kearney's testimony that anyone invoked the name Walter Forbes in connection with wanting EPS to be a certain number.

government's arguments regarding Mr. Kearney's motives to lie are directly contrary to the law and the Court's instructions. Indeed, the Court will instruct the jury that Mr. Kearney—who, in exchange for his testimony, has been promised that he will not be prosecuted for any crimes he has admitted in Court or in interviews—has a special motive to testify falsely. See Charge IV.R.

        3.    The Government Improperly Argued the Pre-1995 Time Period. Mr. Corigliano's testimony caused a prejudicial variance and/or a constructive amendment because it injected new allegations of uncharged accounting misconduct relating to the pre-1995 time period, general reserves, profit sharing receivables, and the Getko merger reserve. See Forbes Trial Mot. No. 20 (filed July 21, 2004). Although the indictment charges that the alleged accounting misconduct took place from "at least as early as the late 1980's to in or about April 1998," Indict., Count 1 ¶ 17, it fails to provide specifics concerning the period between the late 1980s and January 1995. Similarly, the government's pretrial disclosures failed to identify the alleged accounting fraud during that lengthy time period.[8] Thus, the late 1980s to January 1995 remained shrouded in mystery until Mr. Corigliano testified at trial and blindsided Mr. Forbes with a day and a half of prejudicial testimony concerning alleged accounting misconduct during this time period. Because

---

[8]    Mr. Forbes' repeated requests for particulars concerning this time period were denied. See, e.g., Forbes Pretrial Motion No. 38; Forbes Pretrial Motion No. 60; Forbes Trial Motion No. 2; Tr. (05/27/04) at 2494-95.

he had no advance notice of these charges, Mr. Forbes moved for a mistrial or, in the alternative, for a continuance so that he could prepare to meet these new charges. Both requests were denied.

The government's summation exacerbated these violations when it made the pre-1995 time period a crucial element of its case against Mr. Forbes. The government argued that because the fraud allegedly pre-dated Mr. Corigliano's tenure as CFO, Mr. Corigliano could not have been the mastermind of the fraud. See Tr. (10/18/04) at 14828 ("You heard testimony and you saw documents which proved that this fraud, this manipulation of the earnings, was not something that was dreamed up or cooked up in '95, '96 or '97 after Mr. Corigliano was brought in as CFO. You heard evidence that this fraud existed long before, long before he was the CFO, long before Anne Pember was the controller, back when it was just Mr. Forbes as the chairman, Mr. Shelton as president or COO and a man named Stu Bell running the company."); Tr. (10/18/04) at 14831-32 ("Is this case all about what happened in 1990, 1991? No. But it's important for you to know that this fraud existed back then. This fraud was running, it was raging back then. Any suggestion, ladies and gentlemen, that Cosmo Corigliano thought this up, that he was the mastermind of this fraud is ridiculous. This fraud began long before Mr. Corigliano was ever the CFO. As we'll go over later, he wasn't the starter in the game, he was the relief pitcher brought in by Mr. Shelton and Mr. Forbes to continue the fraud.").

The government theorized instead that the defendants (particularly Mr. Forbes, to whom Mr. Bell reported) conceived of and ran the fraud during the pre-1995 time period. See Tr. (10/18/04) at 14832-33 ("Let's talk about topsides. We know that the topsides, manipulation of the numbers back in the early '90 was going also going on, again, when Stu Bell was the CFO and when Stu Bell was being directly supervised by Walter Forbes."); Tr. (10/18/04) at 14842 ("So while this fraud was building, getting bigger in the early 1990s, while the stock price was going higher and higher, it wasn't Corigliano, Anne Pember; it was Bell and Forbes. Bell and Forbes talking to the analysts, Bell and Forbes taking credit for all of this."); Tr. (10/18/04) at 14843 ("This fraud ran all the while Mr. Bell and Mr. Forbes and Mr. Shelton were running this company."); Tr. (10/18/04) at 14848 ("You have evidence that the fraud grew in just about every area that existed post-'90, '95. What you have is no Cosmo Corigliano running the show. You have Walter Forbes, Stu Bell talking to the analysts, issuing the press release and asking to get paid.").

4. The Government Improperly Argued Mr. Bell's Complicity. Most of Mr. Corigliano's testimony about the pre-1995 time period consisted of alleged interactions that he purportedly had with Mr. Bell, the then-CFO. Indeed, he testified that Mr. Bell taught him the improper accounting techniques at issue in this case. See Forbes Trial Mot. No. 44 (filed Oct. 4, 2004). Mr. Forbes sought the testimony of Mr. Bell, who

is in a unique position to counter these charges. See Forbes Trial Mot. Nos. 36, 44. Mr. Bell would have refuted Mr. Corigliano's allegations, denied committing fraud at CUC, and provided legitimate explanations for the accounting in the pre-1995 time period. See Forbes Trial Mot. No. 36, Declarations.

Mr. Bell would have also put the lie to Mr. Kearney's testimony that Mr. Bell invoked the name Walter Forbes in connection with the alleged fraud, another defective pillar of the government's case. But the government prevented Mr. Forbes from correcting the record and presenting the truth to the jury. Compare United States v. Wallach, 935 F.2d 445, 456 (1991) (reversing conviction when government witness testified falsely that he had stopped gambling and government successfully argued that extrinsic evidence of witness' continued gambling should be excluded under Fed. R. Evid. 608(b)).

The government could not deny that Mr. Bell would offer exculpatory testimony on these matters, but argued that such testimony would be "highly suspect" because Mr. Bell "has every incentive to deny his involvement in the scheme." Gov't Opp'n Forbes Trial Mot. No. 44 (filed Oct. 4, 2004) at 10. The government would have been free to make that argument to the jury, but the jury should have made the ultimate credibility determination. Not only was Mr. Forbes denied access to Mr. Bell, but he was denied a missing witness instruction, and was effectively precluded from

arguing in summation the government's failure to call Mr. Bell. See Tr. (10/15/04) at 14781-84 (sealed portion of transcript which counsel have not reviewed).

5. **The Government Improperly Argued the Oller Memorandum.** The Oller memorandum does not reflect Mr. Forbes' own words, but rather the interviewers' collective characterization of Mr. Forbes' purported words. It therefore failed the test for admissibility enunciated by the Second Circuit in United States v. Almonte, 956 F.2d 27 (2d Cir. 1992) (per curiam), and applied by this Court when the defendants attempted to introduce prior statements of government witnesses. See Forbes Trial Motion No. 45 (filed Oct. 4, 2004). In closing argument, the government argued that Mr. Forbes, in fact, said what is reflected in the written characterization and that his testimony at trial conflicted with that characterization.

> And Mr. Forbes was there, too. Mr. Forbes gave an account of what happened that day, an account different than what he testified to on the stand a few weeks ago, a different account than he gave to the Audit Committee investigators back before there was a trial, before there was an indictment. Mr. Forbes gave an account to Willkie, Farr & Gallagher about what happened that morning. At page 14523, line 19. "Specifically, Mr. Silverman was concerned over the 'surprising' amount of non-recurring revenue which was much greater than he expected (and conversely a lower than expected recurring revenue figure). Mr. Silverman was surprised by the amount of non-recurring revenue because it was higher than it historically had been in the past. The context of Mr. Silverman's

remarks may have related to both past results and 1998 budgeted results." Skipping down. Answer – "Question: If you would read into the record. "Answer: Either at or around the time of the March 9th meeting, Mr. Silverman told him that there was a budget showing planned use of reserves to increase CUC income in 1998, that 'this can't be,' that, 'you can't do that,' and that he was extremely unhappy." The 165 was dead. This can't be. You can't do that is what Mr. Forbes remembers Mr. Silverman saying. Although when he's on the witness stand, he can't recall those words. So you have the testimony of Mr. Oller. Mr. Forbes stated, continuing, that he did not at the time know anything about the use of reserves to produce non-recurring income. He did say that, I knew we had reserves that were appropriately taken back in. I knew we had reserves which were appropriately taken back in. What does that mean, taken back in reserves? We used merger reserves? We took them in? We used them? We used them to manipulate the earnings of the company?

\*   \*   \*

On the stand he denied saying that a few weeks ago. He had to deny saying that. Mr. Oller, Mr. Greiner, the investigators, pressed him. He later backed away from the statement when asked what was meant by reserves having been appropriately taken back in. "Mr. Block said the context of that remark must have been that it was determined that reserves were unused because they are not needed, they are put back into the appropriate account. Mr. Forbes agreed with this statement. However, he also stated he is not aware whether there were such reserves that had been established which were not fully utilized." Now, what happened there? Did Mr. Forbes slip? In the context of this interview did he say, Well, I knew we had reserves that were appropriately taken back in. And his lawyer jumped in front of him and said, What he must have meant by that if he had ones that were not used, they were put back in the right account. Mr. Forbes agrees. Or did Mr.

- 12 -

> Forbes know exactly what was going on to use reserves like Cosmo Corigliano told you?

Tr. (10/19/04) at 15100-03.

The government thus used the Oller memorandum to argue improperly that Mr. Forbes was lying at trial. See Tr. (10/19/04) at 15105-06 ("So we had some testimony which is at odds with itself; testimony from Mr. Forbes regarding what was said in the March 9th meeting versus what he said at the Audit Committee Investigation; testimony from Mr. Forbes regarding what he said about reserves being appropriately taken back in during the Audit Committee Investigation versus what he said on the witness stand. You'll have to ask yourself: Why is the evidence changing? Why is the testimony changing? Or the statements changing? Are stories being developed as the case goes along in order to fit the evidence? To fit an excuse?").

6. **The Government Improperly Argued the Asset Transfers.** Prior to trial Mr. Forbes moved in limine under Fed. R. Evid. 404(b) and 403 to preclude the government from presenting evidence regarding his transfer of various assets. See Forbes Mot. In Limine No. 3 (filed April 21, 2004). Moreover, at trial the government was unable to establish an evidentiary basis for the argument that Mr. Forbes transferred assets because of the criminal investigation. Indeed, Mr. Weissman, the lead prosecutor at the time of the transfers, testified that the investigation had not focused on Mr. Forbes at the time of the alleged transfers. See Tr. (09/02/04) at 11446.

Without any evidentiary support, the government closed its summation by arguing that the asset transfers were powerful evidence of Mr. Forbes' alleged knowledge of wrongdoing. See Tr. (10/19/04) at 15117-18 ("But then Mr. Forbes did a couple of last things even after leaving the company. Mr. Forbes had multimillion dollar houses in Connecticut, in Colorado, property he had in Wisconsin, property he had down in Florida. What did he do? What did he do? He transferred them out of his name. Millions and millions of dollars . . . Why would he do that? Why would a man who was innocent, who has done nothing wrong, who was not involved in the fraud completely, why would he transfer millions and millions of property out of his name into his wife's name, into I believe his children's name? Why? Is he afraid of something? Is he afraid the authorities are going to catch up to him? The lies will catch up with him? The fraud will catch up with him? Ask yourself.").

\*   \*   \*

Although this trial has lasted for six months, has involved an overwhelming number of witnesses and exhibits, the lack of evidence against Mr. Forbes is stunning. No documents indicate that Mr. Forbes knew about or participated in a fraud; and no witnesses other than Mr. Corigliano testified that Mr. Forbes knew about or participated in a fraud. Because of this lack of evidence, the government, in summation, was forced to rely on other, improper, bases in urging the jury to convict Mr. Forbes—convict him

- 14 -

based on the testimony of witnesses who the government knows or should know provided false and misleading testimony, convict him based on uncharged misconduct, convict him because of the alleged complicity of a missing witness who would have offered material exculpatory testimony, but who Mr. Forbes was precluded from calling, convict him based on supposedly inconsistent statements that Mr. Forbes never made, convict him for transferring assets because of pending civil litigation, based on the advice of counsel, at a time when the government concedes that he was not the focus of any criminal investigation. The prejudice from these improper arguments is severe because the evidence is so weak, and because the government's summation emphasized these improper arguments to the near exclusion of proper arguments.

## CONCLUSION

For the reasons set forth above, Mr. Forbes respectfully requests that the Court grant a mistrial.

                      Respectfully submitted,

                      WILLIAMS & CONNOLLY LLP

By: _____
       Brendan V. Sullivan, Jr. (ct17115)
       Barry S. Simon (ct24159)

       725 Twelfth Street, N.W.
       Washington, D.C. 20005
       (202) 434-5000 (phone)
       (202) 434-5029 (fax)
       bsimon@wc.com (e-mail)

       - and -

James T. Cowdery (ct05103)
Thomas J. Murphy (ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Dated: October 28, 2004