UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


UNITED STATES OF AMERICA      :      No. 3:02CR00264 (AWT)
                              :
         v.                   :      January 21, 2005
                              :
WALTER A. FORBES and          :
E. KIRK SHELTON               :


MEMORANDUM IN SUPPORT OF THE MOTION OF
THE UNITED STATES TO TRANSFER THE RETRIAL OF
<u>WALTER FORBES TO THE DISTRICT OF NEW JERSEY</u>

<u>INTRODUCTION</u>

This criminal prosecution was instituted in the District of New Jersey in February 2001.  Defendants Kirk Shelton and Walter Forbes jointly moved to transfer this case from the District of New Jersey to the District of Connecticut under Fed. R. Crim. P. 21(b).  The Government strenuously opposed the motion, pointing out that prosecuting the case in the District of Connecticut would be substantially more burdensome to the Government than prosecuting it in the District of New Jersey. Additionally, the Government argued that the District of New Jersey judge to whom this case was assigned had developed a substantial knowledge about the complex facts of this case, based on the assignment to him of: (a) the related criminal cases of the three co-conspirators who had pleaded guilty; and (b) the approximately 100 civil cases arising from the fraudulent conduct alleged in the indictment.

In addressing the defendants' Rule 21(b) transfer motion, the District of New Jersey judge considered the ten factors that were identified by the United States Supreme Court in Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 243-44 (1964):

> (1) location of [the] ... defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of the place of trial; (9) docket condition of each district ... involved; and (10) any other special elements which might affect the transfer.

With regard to those factors, Forbes resides in New Canaan, Connecticut, and Shelton in Darien, Connecticut. In seeking a transfer to a courthouse closer to his home, Shelton represented that his wife was the "care giver" for her elderly and ill parents and for her then 14- and 11-year-old children, both of whom suffered from arthritis. Shelton also represented that his wife intended to attend every day of the trial, but also would have to return quickly to her home in Darien in the event of a medical emergency involving either her parents or her children. Thus, according to Shelton, trying the case in Newark rather than New Haven[1] would impair Mrs. Shelton's ability to

---

[1] The New Jersey judge assumed that if this case were transferred to the District of Connecticut, it would be assigned to a judge in the New Haven vicinage. This assumption proved incorrect, and the case was assigned to this Court in Hartford. According to the Mapquest web site, defendant Forbes' home is
(continued...)

both support her husband at the trial and provide care to her parents and children.

The District of New Jersey judge concluded that the proper resolution of the transfer motion was "a very close [question] to decide one way or the other." His decision to transfer the case turned on two of the <u>Platt</u> factors. The first was the fact that the defendants resided in Connecticut. The relatively close proximity of Shelton's home to the presumed transferee court in New Haven would ease the burdens on Mrs. Shelton's attendance at the trial. The second, and more important factor, was that more of the events about which trial testimony would be elicited occurred in Connecticut than in New Jersey. The Government challenged the relevance of this factor, given that the impact of the fraudulent conduct in this case was nationwide and that the greatest harm occasioned by the charged fraud occurred after the defendants caused CUC to merge with New Jersey-based HFS to form New Jersey-based Cendant in 1997.

The District of New Jersey judge did not give strong weight to the substantial additional cost to the public of transferring the case, as well as the substantial inconvenience to the Government's attorneys, agents, and other personnel who were needed to try this case. Because the Cendant Corporation

---

[1](...continued)
actually approximately seven miles further from the Hartford
federal courthouse than it is from the Newark courthouse.

was paying the legal fees of both defendants, the relative
expense to the defendants of trying the case in New Jersey as
opposed to Connecticut was irrelevant.  On the other hand,
transferring the case to Connecticut imposed on the public the
expense of transporting and housing several Government lawyers,
agents, and support staff.  Ultimately, the cost to the United
States Attorney's Office in New Jersey for renting office space,
equipment, and paying to house the lawyers and support staff was
in excess of $250,000.[2]  See Affirmation of Rosemary Iannacone, ¶
6, attached hereto.  By contrast, Forbes' Washington, D.C. based
attorneys would have encountered no greater inconvenience or
expense in trying this case in Newark rather than in
Connecticut.[3]

---

[2]  This amount does not include any additional costs to the
other federal agencies, the Federal Bureau of Investigation and
the United States Postal Service, that participated in this
prosecution.

[3]  With respect to the remaining Platt factors, the District
of New Jersey judge concluded that, because the Government had
assembled copies of all of the relevant documents in its Newark
Office, the location of those records was a "neutral factor."

Because neither defendant was employed at the time of the
transfer decision, the District of New Jersey judge declined to
consider any possible disruption of their work.

The Court found that opportunities for transportation to New
Jersey and Connecticut by train were comparable, and that Newark
was more accessible by air.

The difference between the docket conditions between New
Jersey and Connecticut were deemed not significant.

(continued...)

4

On March 18, 2002, the District of New Jersey judge granted the motion and transferred the entire prosecution "to New Haven" and thereafter denied the Government's motion for reconsideration of the transfer order.  The Government sought mandamus from the Court of Appeals for the Third Circuit, which was denied on August 23, 2002.  This case was then transferred to the District of Connecticut and assigned to this Court for trial. Following an almost nine month trial, which included two months of deliberations, the jury convicted Shelton of all twelve counts with which he had been charged, but was unable to reach a verdict on any of the sixteen counts with which Forbes had been charged.

The Government now moves this Court to retransfer this case to the District of New Jersey for retrial of all of the charges against defendant Walter A. Forbes.  The Government does not seek the retransfer of any future proceedings involving defendant E. Kirk Shelton, or of the related criminal cases of United States v. Cosmo Corigliano, Dist. of Ct. Docket 3:02-cr-379, United States v. Anne Pember, Dist. of Ct. Docket 3:02-cr-380, and United States v. Casper Sabatino, Dist. of Ct. Docket 3:02-cr-378.

---

[3](...continued)
    The New Jersey judge disagreed with the Government's position that the judge's personal knowledge about the events at issue in this case, gleaned from presiding over the many related criminal and civil cases, was a significant factor that weighed against transfer.

**ARGUMENT**

**THE RESOLUTION OF THE SHELTON CASE ELIMINATES ONE OF
THE TWO REASONS WHY THIS CASE WAS TRANSFERRED AND
JUSTIFIES THE RETRANSFER OF THIS CASE BACK TO THE
DISTRICT OF NEW JERSEY FOR RETRIAL OF FORBES IN ORDER TO
SPARE THE PUBLIC FROM SUBSTANTIAL UNNECESSARY EXPENSE.**

One of the two reasons that prompted the District of New Jersey judge to transfer this case to the District of Connecticut was that both defendants lived substantially closer to New Haven than to Newark.  In granting the defendants' transfer motion, the District of New Jersey judge pointed out that he had considered the reduction in hardship that would accrue to both defendants, and to Mrs. Shelton, if the case was tried in New Haven instead of Newark.[4]  Since a retrial will involve only Forbes and not Shelton, the relative convenience to either Shelton or his wife based on where the case is venued is no longer of any moment.  Forbes will suffer no inconvenience from having this case transferred back to Newark, as he lives closer to the federal courthouse in Newark than to the federal courthouse in Hartford.[5]

As the New Jersey judge recognized in ruling on the transfer motion, the issue was a close one even when the relative

---

[4]  Of course, this case was not transferred to the New Haven vicinage of this District, but to Hartford.

[5] Several members of the prosecution team who participated in the first trial observed that Forbes was staying in a Hartford hotel during at least part of the proceedings in this Court. Presumably, it would be no more burdensome or expensive for Forbes to reside in a Newark hotel than in a Hartford hotel.

convenience of a trial in Connecticut to the defendants and to
Mr. Shelton was treated as an important factor.  Because that
factor no longer has any bearing on where the retrial should
occur, a re-balancing of the <u>Platt</u> factors in light of the
transfer of this case to Hartford rather than to New Haven and of
the resolution of all charges against Shelton tips strongly in
favor or retrying the case in New Jersey.

Retransfer of this case for the retrial of Forbes would
not only strike the proper balance between the <u>Platt</u> factors, but
would be a permissible exercise of this Court's substantial
discretion under Fed. R. Crim. P. 21(b).  <u>See</u> <u>United States v.</u>
<u>Maldonado-Rivera</u>, 922 F.2d 934, 966 (2d Cir. 1990) ("Disposition
of a Rule 21(b) motion is vested in the sound discretion of the
district court.").  The counterpart to Rule 21(b) for civil cases
is 28 U.S.C. § 1404(a).  Like Rule 21(b), § 1404(a) provides that
"[f]or the convenience of parties and witnesses, in the interest
of justice, a district court may transfer any civil action to any
other district or division where it might have been brought."  28
U.S.C. § 1404(a).

Neither Rule 21(b) nor § 1404(a) expressly authorize
the retransfer of a case back to the transferor district.  As the
Second Circuit has recognized, however, § 1404(a) implicitly
authorizes the retransfer of a civil case following a change in
circumstances that justified the original transfer.  <u>SongByrd,</u>

7

<u>Inc. v. Estate of Grossman</u>, 206 F.3d 172, 177-78 (2d Cir. 2000)
(after a case has been transferred, subsequent developments might
make retransfer appropriate).  The party seeking retransfer is
required to file a motion, which "affords the transferee court an
opportunity to assess the then-current circumstances."  <u>Id.</u>; <u>See</u>
<u>also</u> <u>Russell v. IU International Corp.</u>, 685 F.Supp. 172, 175
(N.D.Ill. 1988) (although transferee courts are reluctant "to
review a transfer order indirectly by means of a motion to
retransfer . . . . ***[a] motion to retransfer is perfectly***
***appropriate . . . on a showing of changed circumstance.***"),
<u>quoting</u> 15 C. Wright, A. Miller & E. Cooper, Federal Practice and
Procedure (2d ed.) § 3846 at 361-62 (1986)(emphasis in the
opinion, not in the treatise).

        At least one Court of Appeals has recognized that,
following a transfer of a federal criminal case under Rule 21(b),
"a district court possess the inherent authority to retransfer
proceedings to the original forum when the reasons for the
initial Rule 21(b) transfer no longer exist."  <u>United States v.</u>
<u>Blackwell</u>, 946 F.2d 1049, 1051 n.1 (4th Cir. 1991)(holding that
the Fourth Circuit was without jurisdiction to review the
retransfer of a criminal prosecution from the Western District of
Kentucky, which is in the Sixth Circuit, back to the Middle
District of North Carolina, from which the case was originally

transferred).[6]  This inherent authority exists apart from Rule 21 itself, which does not expressly authorize such retransfer.  <u>Id.</u> The <u>Blackwell</u> opinion acknowledges that the same implicit authority of a federal district court to retransfer a civil case based on changed circumstances also applies to the retransfer of a criminal prosecution.

Rule 21(b) in the criminal context and § 1404(a) in the civil context are animated by the same considerations of convenience to the parties and the interests of justice. Additionally, motions to transfer under either Rule 21(b) or § 1404(a) are governed by the same criteria.  The ten <u>Platt</u> factors apply to motions for transfer brought under § 1404(a) in a civil proceeding, <u>In re Scott</u>, 709 F.2d 717, 719 (D.C. Cir. 1983); <u>Carnes Co., Inc. v. Stone Creek Mechanical, Inc.</u>, 2002 WL 32349391, *7 (W.D.Wis. June 6, 2002), just as they apply to a transfer motion under Rule 21(b) in a criminal case, <u>United States v. Maldonado-Rivera</u>, 922 F.2d 934, 966 (2d Cir. 1990); <u>United States v. Jordan</u>, 223 F.3d 676, 685 (7th Cir. 2000).

It follows then, as the <u>Blackwell</u> Court recognized, that retransfer should be equally available in a criminal case as

---

[6]  Because the Government did not seek to retransfer this case to Newark until the substantial changes in circumstances occasioned by completion of the initial trial had transpired, the general rule that the transferee court may not review the propriety of the transfer decision, <u>United States v. U.S. District Court for the Eastern District of Tennessee</u>, 209 F.2d 575, 577 (6th Cir. 1954), does not apply.

in a civil case.  Given the strong public interest in conserving the Government's limited resources to investigate and prosecute crime, the retransfer of a criminal prosecution for the purpose of conserving those resources, particularly where such a retransfer imposes no additional burden on the defense, is appropriate.  Cf. United States v. De Peri, 778 F.2d 963, 984 (3d Cir. 1986) (explaining that the chief rationale for the presumption of joint trials of defendants who are jointly indicted is "the public interest considerations" in the "conservation of public resources that would be lost if the same evidence were presented at separate trials").

        Following the resolution of the charges against Shelton in the first trial, the balance of the Platt factors now favors retransfer of this case back to the District of New Jersey.  In particular, the United States Attorney's Office for the District of New Jersey had to expend an additional $250,000 to undertake the first trial in the District of Connecticut that it would not have had to spend had the case been tried in Newark.  See Iannacone Affirmation.  The Government would again incur substantial expenses from retrying the case in the District of Connecticut that it would not incur by retrying the case in the District of New Jersey.[7]

_____

        [7]  The United States Attorney's Office for District of New Jersey obviously does not have unlimited resources.  The
(continued...)

10

Retransfer of this case to a judge in the District of New Jersey will not render this Court's substantial work to date on this case for naught.  Aside from the fact that this Court's many pre-trial and trial rulings resulted in a disposition of all of the charges against defendant Shelton, those rulings would also presumptively be followed by any judge in the District of New Jersey to whom this case would be assigned, under the "law of the case" doctrine.

"As most commonly defined, the doctrine [of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  Arizona v. California, 460 U.S. 605, 618 (1983).  The doctrine "promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues."  1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice ¶ 0.404[1], p. 118 (1984).  "A court has the power to revisit prior decisions of . . . a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary

---

[7](...continued)
financial resources of the Office are stretched particularly thin at present.  The Executive Office of the United States Attorneys Offices has recently imposed a 5.6% reduction in the operating budget of the United States Attorney's Office for District of New Jersey for the fiscal year ending September 30, 2005, on top of a 4.5% reduction in the salary budget of that Office for the fiscal year ending September 30, 2004.  See Iannacone Affirmation, ¶ 7.

circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 817 (1988) (quoting Arizona v. California, 460 U.S. at 618 n. 8).[8]

Even though the retransfer of this case would subject the retrial to the law of a different circuit than that under which the original trial was conducted, the Government anticipates that Third Circuit law diverges very little if at all from Second Circuit law on the vast majority of issues resolved by this Court to date.

In the event that this Court denies this motion, the Government respectfully requests that this Court set a date for the retrial of the charges against Forbes no earlier than September 6, 2005 (the day following Labor Day), given the numerous legal issues that will likely require pretrial

---

[8] To be sure, the law of the case doctrine "does not constitute a limitation on the court's power but merely expresses the general practice of refusing to reopen what has been decided." United States v. Birney, 686 F.2d 102, 107 (2d Cir. 1982), quoting Dictograph Products Co. v. Sonotone Corp., 230 F.2d 131, 134-36 (2d Cir. 1956). The Third Circuit Court of Appeals, whose law would govern if this case were retransferred to the District of New Jersey, provides similar treatment to the "law of the case" doctrine, which "limits the extent to which an issue will be reconsidered once the court has made a ruling on it." Fagan v. City of Vineland, 22 F.3d 1283, 1290 (3d Cir. 1994); see also Lambert v. Blackwell, 387 F.3d 210, 237 (3d Cir. 2004). Absent a significant divergence between Second and Third Circuit law regarding a particular legal issue that may arise at a retrial, there is every reason to believe that a district court judge in New Jersey to whom the retrial is assigned would rely on this Court's rulings as the law of the case.

resolution, including possible defense motions to limit or preclude the testimony of certain Government witnesses now that Shelton is no longer a co-defendant.

In addition, this Court's resolution of Shelton's post-trial motions will determine whether he will be retried, so any retrial of Forbes should await the disposition of those motions. Finally, as the first trial spanned more than eight months, involved dozens of witnesses and hundreds of exhibits, allowing the Government adequate time to attempt to more sharply focus its presentation with the goal of lessening the time required to retry the case would conserve the resources of the parties and of this Court.

## CONCLUSION

_____    For the foregoing reasons, the Government respectfully requests that this Court transfer this case back to the United States District Court for the District of New Jersey for the re-trial of all of the indictment counts charging Walter Forbes.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
Special Attorney
U.S. Department of Justice

By:  JOHN J. CARNEY
Special Attorney
U.S. Department of Justice
Federal Bar No. 24063

By:  NORMAN GROSS
Special Attorney
U.S. Department of Justice
Federal Bar No. 24933

By:  JAMES MCMAHON
Special Attorney
U.S. Department of Justice
Federal Bar No. 24062

By:  RICHARD J. SCHECHTER
Special Attorney
U.S. Department of Justice
Federal Bar No. 24238