UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 3:02CR264 (AWT) |
| v. | ) | |
| | ) | |
| WALTER A. FORBES and | ) | February 9, 2005 |
| E. KIRK SHELTON. | ) | |

**SUPPLEMENTAL MEMORANDUM OF DEFENDANT WALTER A. FORBES
IN OPPOSITION TO MOTION OF THE UNITED STATES
TO TRANSFER ANY RETRIAL TO THE DISTRICT OF NEW JERSEY**

Pursuant to the Court's February 8, 2005 Order, defendant Walter A. Forbes respectfully submits this supplemental memorandum in opposition to the government's motion to transfer any retrial to the District of New Jersey.

**ARGUMENT**

Mr. Forbes demonstrated in his opening memorandum that the government has no authority to move for a transfer (or retransfer) of a criminal action and a district court has no authority to grant such a motion. Even if the Court had the authority to consider the government's motion on the merits, however, the motion would properly be denied. There are no extraordinary changed circumstances that could form a legitimate basis for a "retransfer" (or a transfer of the superseding indictment returned in this District) to New Jersey.

I.   **THE REASONS FOR THE TRANSFER TO THIS DISTRICT STILL EXIST.**

In the <u>dicta</u> cited by the government, the Fourth Circuit stated that a district court might be able to retransfer a case "when the reasons for the initial Rule 21(b) transfer no longer exist." <u>United States v. Blackwell</u>, 946 F.2d 1049, 1052 n.1 (4th Cir. 1991). Here, <u>the reasons for the original transfer to this District still exist</u>. Mr. Forbes and his family still reside in Connecticut and the vast majority of the operative events at issue in the indictment still took place in Connecticut. In addition, although the New Jersey District Court did not rely on the location of witnesses as a factor in its transfer decision, the majority of witnesses -- including all of the key government cooperators -- reside in Connecticut.[1]

---

[1] See <u>United States v. Diaz</u>, No. 98-194, 1999 U.S. Dist. LEXIS 19228, at *4-6 (E.D. La. Dec. 10, 1999) (transferring case to Texas, where defendant resided, where defendant was located at all times during alleged conspiracy, and where most events at issue took place); <u>United States v. Lima</u>, No. 94 CR 800, 1995 U.S. Dist. LEXIS 7796 (N.D. Ill. May 31, 1995) (transferring case to New Jersey, where defendant resided, many acts in furtherance of alleged conspiracy took place, and many witnesses were located); <u>United States v. McDonald</u>, 740 F. Supp. 757, 762 (D. Alaska 1990) (transferring case to Washington, where defendants resided, majority of witnesses were located, and many acts charged in indictment took place); <u>United States v. Bein</u>, 539 F. Supp. 72, 73-74 (N.D. Ill. 1982) (transferring case to New York, where defendants lived, most witnesses were located, and most events likely to be in issue took place); <u>United States v. Posner</u>, 549 F. Supp. 475, 477-78 (S.D.N.Y. 1982) (transferring case to Florida, where defendant resided, most witnesses lived, and operative events took place); <u>United States v. Haley</u>, 504 F. Supp. 1124, 1126-28 (E.D. Pa. 1981) (transferring case to Georgia, where defendants lived and many witnesses resided, and which was the "'nerve center' of the alleged illicit operations"); <u>United States v. Hoover</u>, No. 77 Cr. 35 (WCC), 1980 U.S. Dist. LEXIS 10778, at *2-3 (S.D.N.Y. Mar. 17, 1980) (transferring case to Texas, where defendant resided, the majority of witnesses were located, and the key

The trial of this case demonstrated conclusively that the "center of gravity" of this action, United States v. Clark, 360 F. Supp. 936, 941 (S.D.N.Y. 1973), lies squarely in Connecticut. Virtually all of the conduct at issue in the trial took place in Connecticut, including all of the alleged conduct at issue during the period between the 1980's and mid-1997.[2] The key witnesses who testified at trial, including all of the government's cooperating witnesses, reside in Connecticut, and worked at CUC's offices in Connecticut. The alleged victim of the alleged securities fraud, Hartford Steam Boiler, is based in Connecticut. Messrs. Forbes and Shelton also live in Connecticut, and worked for CUC and Cendant in Connecticut. See In re Briscoe, 976 F.2d 1425, 1428-29 (D.C. Cir. 1992) (per curiam) (no basis for retransfer even under Blackwell dicta where reasons for transfer still existed); In re Hampers, No. 90-1890, 1990 U.S. App. LEXIS 23162, at *4-5 (1st Cir. Oct. 5, 1990) (no extraordinary circumstances justified retransfer).

---

events took place); United States v. Alter, 81 F.R.D. 524, 526-28 (S.D.N.Y. 1979) (transferring case to Florida, where defendants lived, "most of the allegedly criminal acts occurred," and most substantive witnesses were located); United States v. Olen, 183 F. Supp. 212, 215, 219 (S.D.N.Y. 1960) (transferring case to Alabama, where defendants resided, where they lived "at the time of the alleged commission of the crimes charged," where most witnesses were located, and where "the basically improper action which is charged took place").

[2] The locus of events at issue is a factor that "generally carries considerable weight." United States v. Martino, No. S1 00 CR 389 (RCC), 2000 U.S. Dist. LEXIS 17945, at *22 (S.D.N.Y. Dec. 14, 2000); accord United States v. Alter, 81 F.R.D. 524, 525 (S.D.N.Y. 1979) ("A significant factor is the location of the events likely to be at issue."). In its mandamus petition, the government conceded that "much of the [allegedly] fraudulent activity did occur in Connecticut." Petition at 27.

A retrial in this District is especially appropriate because <u>the government procured a new indictment in this District following the transfer of the case to Connecticut.</u>  The December 2002 indictment under which Mr. Forbes was tried was returned in Connecticut.  That indictment identifies a Connecticut-based alleged victim, Hartford Steam Boiler, and relates to alleged conduct that primarily took place in Connecticut.  Having procured a new indictment in Connecticut following the transfer, which added <u>ten</u> new Connecticut-based counts, the government cannot be heard to complain about a retrial in this District.

This case bears no resemblance to <u>United States v. Mohney</u>, 476 F. Supp. 421 (D. Hawaii 1979), where a case was retransferred to its original district under truly extraordinary circumstances.  In <u>Mohney</u>, the single count that caused the case to be transferred to Hawaii was dismissed.  <u>Id.</u> at 423.  At that point, "there was no longer any connection between [the case] and the State of Hawaii." <u>Id.</u>  None of the operative events took place in Hawaii, no witnesses lived in Hawaii, no defendants resided in Hawaii, and a jury in Hawaii could not apply the local community standards of the Eastern District of Michigan to determine whether something was obscene.  <u>Id.</u> at 426.  Here, in sharp contrast, there is a close nexus between this case and this District.  Both defendants and numerous witnesses reside in Connecticut, virtually all of the operative events took place here, the alleged victim of the alleged securities fraud is located here, and the operative indictment was returned here.

4

The fact that a retrial will cost the government money does not mean that the reasons for the original transfer to this District no longer exist. To the contrary, the New Jersey District Court expressly considered the issue of cost to the government in rendering its transfer decision. See Transcript of March 18, 2002 at 101. The government raised the issue of cost in its opposition to defendants' original transfer motion, as well as in its motion for reconsideration of the New Jersey District Court's transfer order and its petition for mandamus. There is nothing new about this issue.

The cost of a retrial also is not a new factor because a retrial is a possibility in any case that has been transferred to another District. The government fails to cite a single case in which the cost of a retrial was identified as a relevant factor in a motion to transfer (or retransfer) a case. Moreover, "[t]he primary concern of Rule 21(b) is to minimize the inconvenience to the defense," United States v. McDonald, 740 F. Supp. 757, 761 (D. Alaska 1990) (emphasis added), not to the government. See also United States v. Gruberg, 493 F. Supp. 234, 243 (S.D.N.Y. 1979) (government's convenience "is a factor given little weight when other considerations of convenience suggest transfer of a trial under Rule 21(b)").[3]

---

[3] In any event, a retrial in Connecticut would reduce certain costs that the government would incur if the case were tried in New Jersey, such as the cost of transporting witnesses from Connecticut to New Jersey and providing accommodation to those witnesses in New Jersey. Since all of the government's key cooperating witnesses reside in Connecticut, and several of those witnesses testified for a significant period of time in the first trial, these savings would not be

5

Particularly where, as here, the government had to have known early on that the defendants reside in Connecticut, most of the relevant witnesses are located in Connecticut and the alleged criminal conduct was centered there, the government's convenience is given little weight. As one court observed in a similar situation,

> all of the factors impelling me to grant the transfer must have been known to the Government very early in its investigation. With knowledge of these factors it chose to continue the proceedings in this district. Under the circumstances, the Government will not now be heard to complain . . . .

United States v. Olen, 183 F. Supp. 212, 220 (S.D.N.Y. 1960); accord United States v. Jessup, 38 F.R.D. 42, 48 (M.D. Tenn. 1965) (following Olen; "all of the factors militating in favor of transfer were, or should have been known to the Government when it chose to prosecute in this district rather than in Mississippi"). Accordingly, the cost of a retrial to the government is not a basis on which to reconsider the decision made by the New Jersey District Court.

The fact that the case was ultimately assigned to Hartford rather than New Haven after the transfer to this District (Government Mem. at 5) also does not demonstrate that the original grounds for the transfer decision no longer exist.

---

insignificant. Moreover, a transfer of this action to New Jersey would be far from cost-free. It would require the physical transfer of the court's files to New Jersey, as well as the duplication of all of those files because of the related Shelton proceedings in this District. The government also would incur additional expense in the event of a transfer because a new federal judge would have to devote extensive time to learning this case -- time that could productively be spent on other matters.

6

While the government asserts that the New Jersey District Court transferred the case "to New Haven," id., the Court's Order transferred the case to the District of Connecticut -- not to New Haven. The fact that the case could be tried in Hartford rather than New Haven or Bridgeport was always a possibility and was expressly considered by the Third Circuit in addressing the government's mandamus petition.[4]

The government's contention that Mr. Forbes will not suffer any prejudice or inconvenience if the case is transferred to New Jersey (Government Mem. at 6) is erroneous. Mr. Forbes would be prejudiced by a transfer to New Jersey because a defendant has a strong interest in being tried in his home District. See, e.g., United States v. Martino, No. S1 00 CR 389 (RCC), 2000 U.S. Dist. LEXIS 17945, *19 (S.D.N.Y. Dec. 14, 2000) ("Most relevant here is the location of the defendant. Courts in this district have accorded greater weight to the defendant's interest in being tried in the district of his residence than to any other factor.") (collecting cases); United States v. Kennedy, No. 86-159, 1986 U.S. Dist. LEXIS 24988, at *2 (E.D. Pa. May 28, 1986) ("it is preferable to try a defendant in the

---

[4]   Mr. Shelton's conviction is not a basis for a retransfer either. The government acknowledges that the Court could grant a new trial to Mr. Shelton based on his post-trial motions. See Government Mem. at 13. Indeed, the government seeks to defer Mr. Forbes' retrial until the resolution of Mr. Shelton's post-trial motions in order to obtain a joint trial in the event Mr. Shelton were retried. (Mr. Forbes opposes that request). Since the government seeks to retry Mr. Forbes together with Mr. Shelton, the government cannot assert that considerations relating to Mr. Shelton's family circumstances are irrelevant to the location of Mr. Forbes' retrial.

7

district where he resides"); United States v. Russell, 582 F. Supp. 660, 662 (S.D.N.Y. 1984) ("As a matter of policy, . . . wherever possible, defendants should be tried where they reside."); United States v. Atwood, 538 F. Supp. 1206, 1207 (E.D. Pa. 1982) ("In accord with recent decisions in this District, defendant's home district is entitled to real weight.").

Mr. Forbes also would be prejudiced and inconvenienced by a transfer to New Jersey because his wife and one of his daughters -- both of whom attended many days of the trial, and who would seek to do so again in the event of a retrial -- would be unable to commute from their home in Connecticut to New Jersey on a daily basis. See Kennedy, No. 86-159, 1986 U.S. Dist. LEXIS 24988, at *2-3 (granting transfer to defendant's home district where "the defendant's wife and children . . . could not otherwise attend the trial and offer emotional support to the defendant").

In addition, while the government assumes that a transfer to New Jersey means that the case would be assigned to the Newark vicinage of the New Jersey District Court, there is no guarantee that this case would be assigned to Newark rather than Trenton or Camden in the event of a transfer to New Jersey. Under Local Rule 18.1 of the New Jersey District Court Rules, a case may be assigned to a vicinage other than the one in which the alleged offense arose in order to balance the assigned caseloads of the vincinages of the court. See New Jersey Cr. R. 18.1. Accordingly, there is a reasonable possibility that the case would be

assigned to Camden or Trenton. There also is no guarantee that the case would be assigned to Judge Walls. According to an article on the <u>New Jersey Star Ledger</u> website, Judge Walls is taking senior status. <u>See</u> "Prosecutor in Line to be Federal Judge," <u>www.nj.com</u> (January 22, 2005).

Even if the case were assigned to Newark, it is simply untrue that Mr. Forbes or his family could travel to Newark as easily as they can to Hartford. In connection with Mr. Forbes' transfer motion, the defense contacted several taxicab companies in Connecticut to determine a realistic commuting time between Mr. Forbes' residence and the Newark courthouse during morning and evening rush hour. We were repeatedly informed that a rush-hour trip between these locations would consume approximately two-and-one-half to three hours each way, and that any trip during rush hour would be unpredictable. In contrast, the drive from Mr. Forbes' home to this Court can be accomplished in approximately one hour. Accordingly, Mr. Forbes would suffer both prejudice and inconvenience in the event of a transfer.

## II.  TO THE EXTENT THERE ARE ANY CHANGED CIRCUMSTANCES, THEY WEIGH HEAVILY IN FAVOR OF A RETRIAL IN THIS DISTRICT.

To the extent there are any changed circumstances at this juncture, they weigh heavily <u>against</u> a retransfer to New Jersey.

9

First, it would be extremely burdensome for the Court to transfer the case for retrial to a judge who is not familiar with the extensive record of this complex case.[5] When Mr. Forbes' transfer motion was briefed, the government argued strenuously that judicial economy was an important factor and that the case should remain in New Jersey because Judge Walls was familiar with the civil actions. See Government Opposition to Forbes Pretrial Motion No. 12 at 20. At this juncture, this Court is unquestionably more familiar with the criminal action than any judge in the District of New Jersey, and judicial economy weighs heavily in favor of this Court retaining the case for retrial.

Second, following the transfer of this action to Connecticut, the three government cooperators sought and received a transfer to this District. The government did not oppose those requests; nor does it seek a retransfer with respect to any of its cooperating witnesses. The government also does not seek a retransfer with respect to Mr. Shelton. See Government Mem. at 5. Because this Court will retain jurisdiction over the criminal actions relating to Mr. Corigliano, Ms. Pember, and Mr. Sabatino, as well as with respect to all proceedings relating to Mr. Shelton, including any retrial of Mr. Shelton, judicial economy and efficiency strongly weigh in favor of this Court retaining jurisdiction over all proceedings with respect to Mr. Forbes.

---

[5] The government recently represented that it would take new prosecutors "substantial time (measured in terms of months, not weeks) to learn this complex case." See Memorandum in Support of Motion of the United States to Continue the Commencement of the Retrial of Walter Forbes (Feb. 4, 2005) at 2.

10

Third, as discussed above, the government procured a new, Connecticut-based indictment in this District following the transfer. In response to Mr. Forbes' motion to dismiss the ten new counts in this indictment on grounds of prosecutorial vindictiveness, the government defended its decision to add the new counts on the ground that "a venue-based challenge to those charges would be less likely to succeed, and might not even be brought, in Connecticut." Opposition to Forbes Pretrial Motion No. 30 at 26. Because the government has procured a new indictment in Connecticut, and has taken the position that venue may not lie in New Jersey with respect to all of the counts in the new indictment, the government's transfer motion should be denied.

Fourth, a retransfer of this case would lead to significant delay. In the event the Court ordered a retransfer, Mr. Forbes would be forced to petition the Second Circuit for issuance of a writ of mandamus. If the case were transferred to New Jersey, Mr. Forbes also would be forced to move in the District of New Jersey for a retransfer to Connecticut. This would result in additional delay and the possibility that the case would become an "orphan" case unwanted by any District. See In re Hampers, No. 90-1890, 1990 U.S. App. LEXIS 23162, at *3-4 (1st Cir. Oct. 5, 1990) ("important countervailing considerations -- most notably the conflict between district courts and the creation of 'orphan' cases unwanted by either transferor or transferee -- might favor a rule barring retransfer even under . . . extraordinary circumstances").

11

In addition, the mechanical process of a transfer would be extremely time-consuming, given the extensive record in this case. Indeed, retransfer of the case would create a logistical nightmare because the file for the same action would be located in two different jurisdictions.

In the event the case were retried in New Jersey, there also would be extensive delay because a New Jersey judge would have to absorb and understand a complicated case in which hundreds of pleadings have been filed. The docket in this case contains more than 1400 entries and more than fifty motions were filed during trial. It would take several months, at a minimum, for a new judge to get up to speed on this case. Because a transfer would result in significant delay, which would be prejudicial to Mr. Forbes, the government's motion should be denied.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Mr. Forbes' opening memorandum, the government's transfer motion should be denied.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the Supplemental Memorandum of Defendant Walter A. Forbes in Opposition to Motion of the United States to Transfer any Retrial to the District of New Jersey to be served on February 9, 2005 on the following:

<u>Via Federal Express</u>

John J. Carney, Esq.
Assistant U.S. Attorney
United States Attorneys Office
District of New Jersey
970 Broad Street, Suite 700
Newark, NJ 07102

Stanley A. Twardy, Jr., Esq.
Gary H. Collins, Esq.
Day, Berry & Howard LLP
CityPlace I
Hartford, CT 06103

Thomas P. Puccio, Esq.
Law Offices
2300 Park Avenue
Suite 301
New York, NY 10169

Scott A. Edelman, Esq.
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005

_____
Barry S. Simon