UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AWT) |
| | : | |
| v. | : | February 22, 2005 |
| | : | |
| WALTER A. FORBES and | : | |
| E. KIRK SHELTON | : | |


SUPPLEMENTAL REPLY MEMORANDUM IN SUPPORT OF THE MOTION
OF THE UNITED STATES TO TRANSFER THE RETRIAL OF
WALTER FORBES TO THE DISTRICT OF NEW JERSEY

INTRODUCTION

Professing a convenient concern for the witnesses who
will testify against him at a retrial, and relying on inapposite
caselaw involving real, rather than (as in this case) imagined,
hardships to a defendant caused by being prosecuted in a forum
many hundreds of miles from his home, Forbes contends that this
Court should give no weight to the substantial expense and
inconvenience to the Government of retrying this case in
Hartford.  Instead, Forbes argues that this Court should give
controlling weight to his own supposed inconvenience, which he
has failed to demonstrate.  Although Forbes reads Fed. R. Crim.
P. 21(b) to be a one-way street that contemplates only the
interests of the defense, the language of the rule and the
caselaw are to the contrary.  Forbes has failed to rebut the
Government's compelling showing that this case should be

retransferred to the District of New Jersey.

**I.    Retransfer Would Eliminate the Government's Substantial Incremental Costs and Inconvenience of a Retrial Without Any <u>Additional Burdens on Forbes, His Lawyers or the Witnesses.</u>**

Forbes does not and cannot dispute the Government's demonstration that federal taxpayers will incur substantial financial expense as a result of re-prosecuting this case in Hartford rather than in New Jersey, and that the Government's prosecution team will sustain substantial personal inconvenience.[1]  Instead, he argues that those facts are entitled to little or no weight because "the cost of a retrial" is not a relevant factor.  Forbes' Supplemental Reply Brief ("FSRB") at 5. Rule 21(b) does not state, as Forbes would have it, that a case may be transferred for the convenience of the defendant, but rather for "the convenience of the **parties** and the witnesses." Fed. R. Crim. P. 21(b).

Since the Government is a party to this litigation, "surely the Government's convenience as [the defendant's] [is] to be considered."  <u>Jones v. Gasch</u>, 404 F.2d 1231, 1241 (D.C. Cir.

---

[1]  In compliance with this Court's order of February 8, 2005, the Government has determined and broken down the incremental costs to the prosecuting and investigating agencies of the United States that were sustained because this case was tried in Hartford rather than in Newark.  The total amount of those costs was approximately $450,000.  <u>See</u> Affirmations of United States Attorney Christopher J. Christie and FBI Special Agent Mark Gerber, appended hereto.

1967); accord United States v. Testa, 548 F.2d 847, 857 (9th Cir. 1977); United States v. Hays, 1997 WL 34666 at *3 (E.D.Pa. 1997); United States v. Bloom, 78 F.R.D. 591, 608 (E.D.Pa. 1977).  Thus, this Court should factor into its ruling on the Government's retransfer motion the costs to the Government of "relocat[ing] its entire prosecution team" to Hartford.  United States v. Spy Factory, 951 F.Supp. 450, 459 (S.D.N.Y. 1997); see United States v. Jones, 43 F.R.D. 511, 514 (D.D.C. 1967)(denying defendant's transfer motion where the prosecutors and defense counsel were all residents of Washington D.C., so "this district clearly provides the most convenient trial forum as far as all parties and counsel are concerned"), aff'd sub nom, Jones v. Gasch, supra.  This is because, as even a case cited by Forbes has acknowledged, "while the government has greater resources with which to pay travel and lodging expenses, public funds are to be safeguarded."  United States v. Atwood, 538 F.Supp. 1206, 1209 (E.D.Pa. 1982).[2]  Quite apart from the tangible expense to the

---

[2]  Forbes contends that the cost of retrial, as opposed to the cost of the initial trial, is not a "new factor" that justifies retransfer because the New Jersey judge considered the financial burden of transfer and "retrial is a possibility in any case." FSRB 5.  The Government did not urge the New Jersey judge to deny Forbes' transfer motion on the ground that the Government might have to try Forbes twice in Connecticut, rather than once, because such a consideration was entirely speculative at that point.  Since a second trial will be required to resolve the
(continued...)

3

Government, Forbes does not even address the personal hardship to
the Government's attorneys of having to effectively live far from
their homes and families for upwards of six or seven months if
this case is retried in Hartford.  See United States v. Bein, 539
F.Supp. 72, 75 (N.D.Ill. 1982)("Contrary to defendants'
contentions, the convenience of government counsel is a relevant
factor.").[3]

By contrast, Forbes has failed to demonstrate that he
would suffer any inconvenience or additional expense from

---

[2](...continued)
charges against Forbes, the incremental costs are now a reality.

Additionally, having had no prior experience with trying
such a large case outside of New Jersey, the U.S. Attorney's
Office in New Jersey substantially underestimated its incremental
costs resulting from the transfer, and advised the New Jersey
judge that it anticipated such costs would amount to
approximately $150,000.  See Government's March 28, 2002 Letter
Brief Seeking Reconsideration of Transfer Order, at p.3, Docket
No. 33, filed April 1, 2002, United States v. Walter Forbes and
E. Kirk Shelton, DNJ Docket No. Cr. 01-140 (WHW).  Neither the
Government nor the New Jersey judge who transferred this case
anticipated that the total incremental cost to the Government
would approach $450,000 per trial in Hartford.

[3]  Forbes cites United States v. Gruberg, 493 F.Supp. 234
(S.D.N.Y. 1979), in which the transferor court gave little weight
to "the Government's convenience . . . when other considerations
of convenience suggest transfer."  The Court in Gruberg did not
address any substantial incremental costs to the Government
accruing from transfer.  Additionally, in that case, all of the
witnesses lived closer to the transferee district, and transfer
would alleviate disruptions on the defendant's business and save
the defendant commuting and accommodations expenses.  493 F.Supp.
at 242.  As shown below, none of those factors are present here.

4

retransfer.  Although he points out that he lives in Connecticut,

he does not and cannot dispute the Government's demonstration

that his home is actually closer to the Newark courthouse than it

is to the Hartford courthouse, or that the Washington, D.C.

offices of his principal attorneys are substantially closer to

Newark than to Hartford.[4]  Nor does Forbes claim that retransfer

of this case would increase his costs one iota.

        Instead, Forbes' lawyers assert that they contacted

unidentified persons at some unidentified taxi cab companies, who

stated that the trip from Forbes' home to the Newark courthouse

would take up to three hours during rush hour.  FSRB 9.  By

contrast to Forbes' reliance on these purported estimates, the

Government's agents personally drove from New Canaan to the

Newark courthouse during rush hour on three separate occasions.

Driving at or slightly above the posted speed limit, the trip

---

[4]  Cf. United States v. Russell, 582 F.Supp. 660, 663-64
(S.D.N.Y. 1984) (cited by Forbes)(although defendants' Memphis
based attorneys "could come to New York for couple of months for
the criminal proceedings, it would escalate their costs
considerably"); United States v. Atwood, 538 F.Supp. 1206, 1210
(E.D.Pa. 1982)(cited by Forbes)(transferring case from
Philadelphia to Western Virginia, and noting that it would "be as
inconvenient and costly for defendant's counsel to appear for
trial in Pennsylvania as for the Assistant United States Attorney
to appear for trial in Virginia"); United States v. Clark, 360
F.Supp. 936, 943 (S.D.N.Y. 1973)(cited by Forbes)(transfer of
case would allow the defendant to discharge his New York City
attorneys and hire Oklahoma attorneys, "thus reducing his
expenses substantially").

took ninety minutes twice, and ninety-seven minutes on the third

occasion. <u>See</u> Trans. March 18, 2002, pp. 34-35, Hearing on

Forbes' Motion for Transfer, DNJ Docket No. Cr. 01-140 (WHW).[5]

In any event, Forbes does not even claim that he would personally

make the trip from New Canaan to Newark on a daily basis, rather

than staying in a Newark hotel on the nights before trial days

(as he apparently stayed in a Hartford hotel on at least some of

the nights during the first trial).[6]

---

[5] Because Forbes has failed to demonstrate any inconvenience or
additional expense to himself that would accrue from retransfer,
his reliance on <u>United States v. Olen</u>, 183 F.Supp. 212 (S.D.N.Y.
1960) is of no moment.  There, the district court gave scant
consideration to the burdens on the Government from transfer of
the case to Alabama, since all of the factors which supported
transfer, including the fact that virtually all of the witnesses
lived in Alabama, were known to the Government early in the
investigation, and the Government still chose to indict the case
in New York.  In <u>Olen</u>, the Government should have recognized that
a trial in New York City would be so burdensome to the Alabama-
based defendants that it might render them impecunious.  183
F.Supp. at 219.

        By contrast, retrial in Newark will not cost Forbes any more
than retrial in Hartford, and certainly will not wholly dissipate
his $200 million fortune.  Additionally, as shown herein, the
vast bulk of the witnesses in this case do not live in
Connecticut, and none would be substantially inconvenienced if
they had to testify in Newark.  Because the factors favoring
transfer in <u>Olen</u> did not exist in this case, the Government
cannot be faulted for failing to anticipate those non-existent
factors.

[6] Instead, Forbes claims only that his wife and one of his
daughters would attend "many days of the retrial," but would be
unable to commute to Newark "on a daily basis."  FSRB 8.  Even
assuming that one can drive from his home to the Hartford
                                              (continued...)

As the Government demonstrated in its initial
memorandum in support of this motion, the unexpected transfer of
this case from Newark to Hartford (rather than to New Haven or
Bridgeport)[7] and the conviction of co-defendant Shelton in the

_____

[6](...continued)
courthouse in "approximately one hour," FSRB at 9, Forbes offers
no explanation why the supposed half-hour additional travel time
that his wife and daughter would experience as a result of the
retransfer would make it "impossible" for them to attend the
retrial.  Unlike Shelton's wife, who claimed that attendance at a
trial in Newark would substantially interfere with her care for
her elderly parents and her children, Forbes does not identify
any similar problems that his wife and daughter would encounter
by attending a trial in Newark rather than Hartford.  Cf. United
States v. Kennedy, 1986 WL 6227 (E.D.Pa. 1986)(cited by
Forbes)(granting transfer where the defendant's "wife and
children . . . **could not** attend the trial" absent a transfer).

[7]  Forbes now contends that the transfer of this case to Hartford
rather than Bridgeport or New Haven "was always a possibility,"
and so is not a "new event" that justifies retransfer.  FSRP 7.
Regardless of that "possibility," the New Jersey judge clearly
anticipated that this case would be assigned to Bridgeport or New
Haven when he ordered the case transferred, because:

(1) the Government advised the New Jersey judge that it had been
informed by a supervisor in the U.S. Attorney's Office in
Connecticut that, if transferred, this case would likely be
assigned to a judge in Bridgeport or New Haven, Government's
Opposition to Transfer Motion at 4, n.2, Docket No. 19, filed
Feb. 15, 2002, DNJ Docket No. Cr. 01-140 (WHW);

(2) Forbes expressly requested that the case be transferred to
Bridgeport or New Haven, Trans. March 18, 2002, p. 3, Hearing on
Forbes' Motion for Transfer, DNJ Docket No. Cr. 01-140 (WHW); and

(3) all of the briefing and argument in the New Jersey District
Court surrounding the transfer motion contemplated a transfer to
either Bridgeport or New Haven, because unlike Hartford, those
cities are actually closer to Forbes' and Shelton's homes than
(continued...)

7

initial trial eliminates one of the two grounds on which the New Jersey judge relied in transferring this case to this Court: the relative convenience to Shelton and his wife of a trial in New Haven as opposed to Newark.[8]  Because Forbes has failed to show that he, his attorneys, or his family members would suffer any substantial inconvenience or expense from a retransfer, he erroneously claims that retransfer would inconvenience the Government's cooperating witnesses and other witnesses whom he declines to identify, because "the majority of witnesses" supposedly live in Connecticut.  FSRB 2.  By the Government's count, only 18 of the 49 witnesses who testified in the initial trial lived in Connecticut, and six of those were called by Shelton.[9]  As Forbes accurately concedes, FSRB 2, the New Jersey

_____

[7](...continued)
Newark is.

[8]  Forbes does not dispute this fact, but claims that, if this Court were to order a new trial for Shelton, concern for the convenience of Shelton and his wife would re-emerge.  Because Shelton's home in Darien is also closer to Newark than it is to Hartford, retransfer would be more convenient to all of the parties even if this Court were to order a new trial for Shelton.  According to www.mapquest.com, Shelton's residence in Darien is 71.2 miles to the Hartford courthouse, with an estimated travel time of 1 hour and 19 minutes, whereas that home is only 55.3 miles from the Newark courthouse, with an estimated travel time of 1 hour and 6 minutes.

[9]  Those witnesses were Speaks, Pember, Sabatino, Corigliano, Kearney, Menchaca, Rowan, McCormack, Goot, McLeod, Rabinowitz, Wilchfort, Ainsworth, Lipton, Shelton, Laskaway, Norman Wood, and
(continued...)

judge determined that even a trial in Bridgeport or New Haven
would be no more convenient for the witnesses than a trial in
Newark.

More significantly, the fact that a particular witness
lives in Connecticut says nothing about whether a retrial in
Hartford would be more convenient for the witness than a retrial
in Newark, since much of southwestern Connecticut is closer to
Newark than to Hartford.  Indeed, Forbes declines to identify a
single witness who would find it more burdensome to testify in
Newark than Hartford.  See United States v. Spy Factory, 951
F.Supp. 450, 456 (S.D.N.Y. 1997) (a "naked allegation that
witnesses will be inconvenienced by trial in a distant forum will
not suffice for transfer"), quoting United States v. Haley, 504
F.Supp. 1124, 1126 (E.D.Pa. 1981).[10]  Forbes' supposed concern
that the prosecution witnesses would face greater hardships
testifying in Newark than in Hartford -- setting aside Forbes'
obvious tactical interest in increasing, not ameliorating the

---

[9](...continued)
Forbes.

[10]  Additionally, the attorneys for several of the witnesses,
including Cosmo Corigliano, Anne Pember, Casper Sabatino, Michael
Monaco, Scott Forbes, Kevin Kearney, John Rosenwald and John
Oller have offices in New York City or in New Jersey.  During the
first trial, some of those attorneys were present during all or
part of the trial testimony of their clients, and occasionally
participated in the proceedings.  A retrial in Newark will be
more convenient for those attorneys than a retrial in Hartford.

hardship to those witnesses -- need not concern this Court, since those witnesses will be available to testify in Newark notwithstanding any increased burden.  <u>Id.</u> (to support a transfer motion, "[d]efendants must offer specific examples of witnesses' testimony and their **inability to testify** because of the location of the trial").  Because a retrial in Newark would be substantially more convenient and less expensive to the Government, and no less convenient for Forbes or for most of the witnesses, retransfer would comport with the purpose of Rule 21(b), to change venue "for the convenience of the parties and witnesses."  Fed. R. Crim. P. 21(b).

Because he cannot show that retrial in Hartford would further the stated purpose of Rule 21(b), Forbes is forced to rely heavily on the mere fact that he lives in Connecticut.  As shown above, this fact does not militate against retransfer in this case, given the relative proximity of Newark and Hartford to Forbes' home and to his attorneys' homes and offices.  For that reason, Forbes' reliance on cases in which transfer was granted to alleviate the hardship to a defendant for having to defend himself in a forum far from his home is misplaced.  <u>Cf.</u> <u>United States v. Russell</u>, 582 F.Supp. 660, 662 (S.D.N.Y. 1984) (transferring the case to the Western District of Tennessee, and noting that "it can be a hardship for defendants **to stand trial**

**far away from home**")(emphasis added); United States v. Clark, 360
F.Supp. 936, 944 (S.D.N.Y. 1973)(transferring the case to
Oklahoma City, where the disruption to the defendant's family
life and business occasioned by a criminal trial "is obviously
increased by a long trial **far away from home**")(emphasis added).
Unlike Forbes, the defendants in those cases obtained transfer of
the charges against them to their home districts from districts
that were many hundreds of miles or further from their homes.[11]

    Although Forbes contends that he has a "strong interest
in being tried in his home district," FSRB at 7, that interest is
dissipated when the defendant has to travel the same, relatively
short distance to either of the alternate venues, as opposed to
traveling much further to the district where the charges were

---

[11]  E.g. United States v. Diaz, 1999 U.S. Dist. LEXIS 19228, at
*4-6 (E.D. La. 1999) (transferring the case to the defendant's
home district in Texas); United States v. Lima, 1995 U.S. Dist.
LEXIS 7796 (N.D. Ill. 1995) (transferring the case to the
defendant's home district in  New Jersey); United States v.
McDonald, 740 F. Supp. 757, 762 (D. Alaska 1990) (transferring
the case to the defendants' home district in Washington state;
additionally, air travel to Alaska was frequently disrupted by an
active volcano); Bein, 539 F. Supp. at 73-74 (transferring the
case to the defendants' home district in New York); United States
v. Posner, 549 F. Supp. 475, 477-78 (S.D.N.Y. 1982) (transferring
the case to the defendant's home district in Florida); United
States v. Haley, 504 F. Supp. 1124, 1126-28 (E.D. Pa. 1981)
(transferring the case to the defendants' home district in
Georgia); United States v. Hoover, 1980 U.S. Dist. LEXIS 10778,
at *2-3 (S.D.N.Y. 1980) (transferring the case to the defendant's
home district in Texas).

filed than to the courthouse in the defendant's home district.

See Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 245

(1964)(a party's place of residence has no "independent

significance" and should not be given dispositive weight in a

motion to transfer); In re United States, 273 F.3d 380, 388-89

(3d Cir. 2001)("[i]t is important not to overlook the Supreme

Court's statement in Platt that a defendant is not entitled to

defend his case in his or her home district").  Indeed, the

caselaw cited by Forbes focuses upon the actual financial and

other personal hardship occasioned by distant travel.[12]  Because

---

[12]  In such cases, a defendant will typically face substantial
hardship for reasons that are wholly absent here.  For instance,
the defendant will be forced to spend substantial amounts to
transport, house, and accommodate himself in the distant venue.
Cf. United States v. Martino, 2000 WL 1843233 (S.D.N.Y. 2000), *6
(noting that the defendant and her husband who lived in Florida
"will have to bear the cost of housing and food" if the case was
not transferred to their home district, and the defendant would
have to forgo treatment from his Florida psychiatrist for an
anxiety disorder); United States v. Jessup, 38 F.R.D. 42, 45, 48
(M.D.Tenn. 1965)(transferring the case to the defendants' home
district in Mississippi, so they would not have "to incur
considerable expense in traveling to Nashville and remaining
there for trial" as well as the expense of transporting all of
their witnesses; "a trial in this district would indeed be a
substantial hardship on defendants").

        Defendants unlike Forbes who are still employed at the
time of trial also face much greater difficulties conducting
their work while on trial in a district far from their homes than
they would if tried in their home district.  Bein, 539 F.Supp. at
74-75 (disruption of defendant's "fledgling" business in New York
by having to defend themselves in Chicago "weighs strongly in
favor of transfer"); Martino, supra at *6 (defendants would have
                                                (continued...)

12

the location of Forbes' residence does not militate against a retransfer, it "scarcely justifies [Forbes'] effort to paint residence as a 'crucial' factor, a characterization not well supported in the case law." Bein, 539 F.Supp. at 74.

Other cases cited by Forbes in which transfer was ordered to the district where most or all of the relevant criminal conduct occurred also involved much greater distances between the transferor and transferee districts than is at issue here. E.g. United States v. Alter, 81 F.R.D. 524 (S.D.N.Y. 1979) (granting transfer to the Southern District of Florida). Those cases turn largely on the fact that the most important witnesses for both the Government and the defense typically resided in the district where the criminal conduct occurred, and those witnesses

---

12(...continued)
to "suspend their Florida-based business activities" during a trial in New York City); Russell, 582 F.Supp. at 663 (transfer from New York City to Memphis would allow the defendants "to carry on their business at least to a limited extent"); Jessup, 38 F.R.D. at 45, 47 (defendants were essential to the continued operations of their business; prolonged absence would "cause serious financial hardship" to the business and to the defendants).

Although one case cited by Forbes noted the benefits to the defense of presenting character witnesses who reside in the trial forum, Martino, supra at *6, Forbes presented no character witnesses at the initial trial, and does not allege in his brief that he would present any at the retrial. See also Russell (transferring the case from New York City to the Western District of Tennessee and noting that the defendant "filed a long list of character witnesses, including the Mayor of Memphis").

would encounter substantial hardship if forced to testify in a

distant forum.  Id. at 526-27 (noting that most of the more

important fact witnesses, as opposed to those who would merely

"identify or authenticate documents" resided in Miami, not in New

York City).[13]  Additionally, the defendant would be forced to

incur substantial expense in transporting those witnesses to the

distant forum.  As shown above, those factors are absent here.

Accordingly, a rebalancing of the Platt factors in light of the

---

[13]    Thus, in United States v. Atwood, the district court
transferred a criminal prosecution from the Eastern District of
Pennsylvania to the Western District of Virginia for reasons
largely missing in this case.  There, the defendant, a retiree
with an annual income of approximately $20,000, would have had to
pay "at least $3,000 and probably significantly more" to bring
defense witnesses from Virginia to Philadelphia to testify.  538
F.Supp. at 1208.  Additionally, five of the defendant's eight
fact witnesses suffered from ill health that would exacerbate the
inconvenience of testifying in a distant forum.  Id.  The
defendant's expenses related to transporting his witnesses,
particularly in relation to his modest means, rendered the
"comparative attorney costs" of the parties "insignificant."  Id.
at 1210.  With his $200 million in assets and Cendant's backing,
Forbes appropriately does not claim that he will sustain any
financial hardship from retransferring this case to Newark, or
that any of his witnesses have health problems that will make it
harder for them to testify in Newark than in Hartford.

    In another case cited by Forbes for the proposition that
transfer was justified to the district where most of the criminal
conduct occurred, United States v. Clark, 360 F.Supp. 936, 944
(S.D.N.Y. 1973), the court concluded that "the ultimate
consideration" justifying a transfer of the case to the Western
District of Oklahoma was "the obvious difficult[y]" that a New
York lawyer would face "with the documents in New York and most
of the witnesses 1500 miles away" in Oklahoma City.   No such
difficulty exists here.

changed circumstances following the initial trial now weigh
heavily in favor of retransfer.

**II.  Issuance of the Second Superseding Indictment by a
Grand Jury Sitting in this District is No Impediment to
<u>Retransfer of this Case to the District of New Jersey</u>**

Although Forbes contends that the present indictment
should be tried in this district because it was issued by a grand
jury sitting in this district, he does not argue, much less show,
that there is any legal impediment to trying this case in New
Jersey.  Nor can he, since he himself successfully moved to have
an indictment issued by a New Jersey grand jury tried in
Connecticut.  Although the Government obtained a superseding
indictment from a Connecticut grand jury, it was not obligated to
do so, and would not be obligated to obtain a new indictment if
this case were retransferred to New Jersey.

Forbes does not claim, much less purport to show that
the New Jersey District Court would lack jurisdiction or venue
over any count in the present indictment.  Instead, he points to
the fact that, in its opposition to Forbes' vindictive
prosecution motion, the Government argued that venue over newly
added counts in the Connecticut indictment indisputably existed
in Connecticut, whereas the connection between the conduct at
issue in those counts and New Jersey was more tenuous.  FSRB 11.
Thus, erring on the side of caution, and in order to avoid

15

additional motion practice by Forbes, the Government had withheld those counts from the New Jersey indictment.  <u>See</u> Government's Memorandum in Opposition to Forbes' Motion to Dismiss Counts 5 and 7-16 of the New Indictment Based on Prosecutorial Vindictiveness, pp. 22-29, Docket No. 296, filed June 30, 2003. The Government never conceded, however, that venue over those counts would have been absent in New Jersey.  In his reply brief in support of his motion to dismiss for prosecutorial vindictiveness, however, Forbes affirmatively argued that venue would have existed over those newly added counts in New Jersey. <u>See</u> Forbes' Reply Memorandum in support of Motion to Dismiss Counts 5 and 7-16 of the New Indictment Based on Prosecutorial Vindictiveness, pp. 22-26, Docket No. 363, filed August 7, 2003. Thus, issuance of the present indictment by a Connecticut grand jury does not weight against retransfer.

III**. <u>Forbes' Remaining Arguments Are Unpersuasive</u>**

Although Forbes had no such concerns when urging the New Jersey judge to transfer this case even though he was then far more familiar with the facts of this case than any judge in the District of Connecticut, Forbes now complains that if this case were transferred, judicial economy would suffer because the new judge would know much less about this case than this Court does.

16

As the Government previously explained, although retransfer would occasion some duplication of judicial effort, the New Jersey judge to whom this case would be assigned would have the benefit of this Court's rulings on all of the pretrial and trial motions, and would be able to adopt the vast majority of those rulings as the law of the case. Forbes does not dispute that the law of the case would apply to this Court's rulings in a retrial involving the same parties, the same allegations, and a largely overlapping body of law.

Forbes also speculates that if this case were retransferred to New Jersey, it might be assigned to the Trenton or Camden vicinages, which are farther from Forbes' home (but closer to his attorneys' homes and offices) than Hartford. The Clerk of the Court for the District of New Jersey has informed the Government that, if this case was retransferred to New Jersey, it would be reassigned to the Newark judge to whom it was initially assigned, the Honorable William H. Walls. According to the Clerk, in the event that the case had to be assigned to a different judge, it would go to another Newark judge. In that instance, the case could then be assigned to a judge who currently sits in Newark, the Honorable Joel A. Pisano, because Judge Pisano is currently presiding over a related civil case involving the fraudulent conduct at issue in this criminal case.

17

<u>Securities and Exchange Commission v. Forbes</u>, Docket No. Civ. 01-
987 (JAP).  The District Court for the District of New Jersey is
authorized to assign this case to Judge Pisano as a related case
to the SEC case.  <u>See United States v. Forbes</u>, 150 F.Supp.2d 672,
680-81 (D.N.J. 2001).

        In the unlikely event that the case was assigned to a
judge sitting in Trenton or Camden, Forbes could request that the
judge conduct the "trial and all proceedings" in Newark, pursuant
to New Jersey District Court's Local Criminal Rule ("L.Cr.R.")
18.1(a).  If the Camden or Trenton judge declined to try the case
in Newark, Forbes could file a motion with the Chief Judge,
requesting that the case be transferred to a judge sitting in
Newark, pursuant to the provision of L.Cr.R. 18.1(a) that a
criminal case "shall be assigned . . . to a Judge of the vicinage
where the alleged offense arose."  Here, the indictment alleges
criminal conduct in Parsipanny, New Jersey, which is in the
Newark vicinage, but alleges no criminal conduct in either the
Trenton or Camden vicinages.[14]

_____

[14] <u>E.g.</u>, Indictment, Count 1, ¶¶ 18 (principal goal of the
conspiracy was to fraudulently inflate earnings that Parsippany-
based Cendant reported to the SEC and to the investing public);
39 (defendants caused Cendant to falsely represent to the SEC and
the investing public that the size of the Cendant reserve was
based on a good-faith estimate of the probable amount of merger
related expenses); 40 (defendants caused Cendant to falsely
                                        (continued...)

Forbes further contends that retransfer of the case to New Jersey would "require" that he seek mandamus from the Second Circuit, directing the retransfer of this case back to this District.  FSRB 11.  Of course, nothing would require Forbes to seek mandamus under those circumstances, as there is no reason that he could not obtain a fair trial in the District of New Jersey which would be no more inconvenient to him than a retrial in this District.[15]  The only reason for Forbes to threaten to delay the commencement of the retrial would be because it would be to his tactical advantage to impose unwarranted hardships and expense on the Government by having to retry this case in this District.[16]

---

[14](...continued)
represent to the SEC and the investing public that expenses charged to the Cendant reserve were non-recurring costs incurred principally in connection with the merger with HFS); 42(b) (defendants caused fraudulent accounting treatments to be used while knowing and intending that Cendant's financial statements and public filings would falsely overstate Cendant's operating income); 43(d)(defendants fraudulently caused the CMS operating income that Cendant reported for its fiscal year ending December 31, 1997 to be overstated by at least $110 million); see also Count 1, ¶¶ 45, 47(a) and (b); 48(c); 53(c); 57; 58; 60(c); 63(m), (n), and (o); Count 6, ¶ 2.

[15]  Forbes has previously complained that he would suffer from local bias by jurors in this District because the victim of Counts 7-12 is a Hartford-based company.  That concern would be eliminated by a retransfer to Newark.

[16]  In the event of retransfer, Forbes also threatens to ask the transferee court to send this case back to this Court.  FSRB 11.
(continued...)

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in the Government's prior submissions, the Government respectfully requests that this Court retransfer this case to the District of New Jersey for the re-trial of all of the indictment counts charging Walter Forbes.

                         Respectfully submitted,

                         CHRISTOPHER J. CHRISTIE
                         Special Attorney
                         U.S. Department of Justice

                         /s/ John J. Carney

                         By:  JOHN J. CARNEY
                         Special Attorney
                         U.S. Department of Justice
                         Federal Bar No. 24063

                         /s/ Norman Gross

                         By:  NORMAN GROSS
                         Special Attorney
                         U.S. Department of Justice
                         Federal Bar No. 24933

                         /s/ James McMahon

---

[16](...continued)
The law is settled, however, that absent a change in circumstances, the transferee court has no authority to send the case back.  E.g. United States v. U.S. District Court for the Eastern District of Tennessee, 209 F.2d 575, 577 (6th Cir. 1954). Forbes' threat to overturn any retransfer order by way of mandamus and a motion to retransfer this case back to Connecticut belies his contention that he desires a speedy trial in this case.

By:  JAMES MCMAHON
Special Attorney
U.S. Department of Justice
Federal Bar No. 24062

/s/ Richard J. Schechter

By:  RICHARD J. SCHECHTER
Special Attorney
U.S. Department of Justice
Federal Bar No. 24238

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this day I caused to be served copies of the foregoing upon the following via fax and email delivery:

Barry S. Simon, Esq.

Thomas P. Puccio, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

/s/ Norman Gross
Norman Gross
U.S. Department of Justice

Dated: February 18, 2005
       Camden, New Jersey