UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AWT) |
| | : | |
| v. | : | March 1, 2005 |
| | : | |
| WALTER A. FORBES and | : | |
| E. KIRK SHELTON | : | |

REPLY MEMORANDUM IN SUPPORT OF THE MOTION OF THE UNITED STATES TO
CONTINUE THE COMMENCEMENT OF THE RETRIAL OF WALTER FORBES

I.     Forbes' Failure to Demonstrate Any Prejudice From the
       Proposed Continuance Militates Strongly in Favor of the
       Government's Request.

Forbes effectively concedes that he would suffer no prejudice from the Government's requested continuance, and for good reason. He remains free on bail with relatively few restrictions on his travel and virtually no restrictions on the use of his enormous assets. See United States v. Vogl, 374 F.3d 976, 984 (10th Cir. 2004)(defendant's release on bond before trial was a "significant" factor supporting the reasonableness of the district court's continuance of the trial pursuant to 18 U.S.C. § 3161(h)(7)). Because Forbes has received a preview of the Government's evidence in the first trial, the proposed adjournment will not impair his ability to defend himself during the retrial. See United States v. Franklin, 148 F.3d 451, 457 (5th Cir. 1998) ("With respect to the prejudice analysis [in assessing the reasonableness of a § 3161(h)(7) continuance], relevant considerations include whether the delay impaired the

appellant's ability to defend himself or resulted in excessive pretrial incarceration."). Nor does Forbes suggest that the proposed continuance would impair his employment or other financial opportunities, or his defense of any the civil actions pending against him. Rather, he merely and conveniently asserts that now, unlike the lengthy period following the initial indictment and before the first trial, he wants to promptly "clear his name." Forbes' Opposition ("FO") 3.[1] This assumes that Forbes will be acquitted at the conclusion of the retrial, a result that is far from assured.

Forbes also contends that he wants to accelerate the retrial while the evidence is still "fresh in the minds of his attorneys." Id. As the Government has demonstrated, such a schedule will prevent the Government's new trial team from ever having the opportunity that Forbes' trial team did to become fully conversant with the massive evidence in this case in the first place. Moreover, because there is an existing, voluminous

---

[1] If Forbes truly had been concerned to "clear his name" as soon as possible, he would not have sought the transfer of this case to Connecticut in the first place, which substantially and predictably delayed commencement of the initial trial by a year or more. Nor would he have sought a lengthy continuance of the trial in order to conduct a protracted Daubert hearing regarding Brian Heckler, Forbes' Motion to Continue Daubert Hearing, Docket No. 444, filed December 19, 2003, then declined to pose a single question to Mr. Heckler during trial. Trial Tr. Aug. 23, 2004, 10668. Finally, had Forbes been eager to promptly clear his name, he would not have orally moved (as the Government's initial trial team members recollect) for a continuance of the trial as the jury was about to be selected in April 2004.

trial transcript, pre-marked exhibits and jury instructions, FO 6, Forbes' attorneys have all the resources they will need to "refresh their recollection" about this case whenever the retrial begins.

Forbes' failure to identify any prejudice that would accrue from the requested continuance militates strongly against his position, and in favor of the continuance.  See United States v. Washington, 48 F.3d 73, 77 (2d Cir. 1995) (rejecting a Speedy Trial Act challenge to a continuance granted pursuant to 18 U.S.C. § 3161(h)(8)(b)(iii), based on the complexity of the proceedings, because the defendant did "not satisfy the required showing of prejudice"), citing United States v. Tedesco, 726 F.2d 1216, 1221 (7th Cir. 1984)("To obtain a reversal of the [district] court's decision [to grant a continuance for the "interests of justice" under 18 U.S.C. § 3161(h)(8)], a defendant must show actual prejudice."); cf. United States v. Taylor, 487 U.S. 326, 334 (1988)(in deciding whether to dismiss an indictment for Speedy Trial Act violations with or without prejudice, the district court should consider any prejudice to the defendant). As shown below and in the Government's initial brief in support of this motion, the Government has established sufficient grounds for a continuance under either 18 U.S.C. § 3161(h)(8) or 18 U.S.C. § 3161(h)(7), which are not outweighed by Forbes' empty

claims of prejudice.[2]

## II.    The Unavailability of the Government's Original Trial Team for the Retrial Supports the Requested Adjournment.

After the Government explained its need to replace its entire trial team in order to retry this case, Forbes alternately proposes that: the three members of the Government's initial trial team should be forced to retry this case;[3] other AUSAs who did not conduct the trial should be forced to retry the case; or an entirely new team of prosecutors could easily learn this case in a couple of months.  None of these suggestions defeats the Government's request for a continuance in the "interests of justice" under 18 U.S.C. § 3161(h)(8)(A).

First, as the Government explained in its initial brief, none of the three members of the original trial team will be available to retry this case.  When the United States Attorney

---

[2] Forbes paradoxically asserts that a retrial must not only proceed expeditiously, but may not proceed at all, because Cosmo Corigliano is supposedly a "proven perjurer."  FO 3, n. 1. Forbes declines to mention that this Court rejected this very claim following extensive briefing during the initial trial, and offers no reason why this Court needs to revisit it again now.

[3] These is no small irony in Forbes' insistence that those three particular AUSAs retry this case.  This Court will recall that Forbes previously sought to disqualify those same prosecutors from participating in this case (which would have required a substantial delay of the first trial) when the Government asked Forbes to waive any possible conflict of interest that might arise from the representation by other lawyers at Williams & Connolly of a plaintiff class that included those AUSAs.

learned that the members of the original trial team would not be able to retry the case, he appropriately decided to replace the trial team.  As occasionally happens in large and protracted criminal investigations and prosecutions, including previously in this very case,[4] AUSAs who become unavailable to continue working on a pending matter are replaced by other AUSAs.

In this case, the three members of the former trial team provided exceptional and dedicated service to the United States by living apart from their families, working tirelessly on this matter throughout a very protracted trial, and putting their future career plans on hold to see the case through to verdict. Given that the former trial team had collectively provided about 45 years of dedicated service to the New Jersey U.S. Attorney's Office, the United States Attorney decided not to impair the efforts of the former trial team members to seek new employment.

Second, the Court should disregard Forbes' rampant speculation and purported factual scenarios based "on information and belief" about how the former trial team members could jump through various hurdles to make themselves available for a

---

[4]  The Court will recall that former AUSA Paul J. Weissman and the former United States Attorney Robert J. Cleary conducted the investigation and were preparing to try the case when it was pending in New Jersey.  When they became unavailable to continue their involvement, other AUSAs were assigned without objection by Forbes that the reassignment would delay disposition of the charges.

retrial.[5]  Given the absence of any prejudice to Forbes from the
Government's requested adjournment, this Court should not insist
that members of the trial team delay their departure from public
service, or that prospective private employers hold open job
offers to public prosecutors so that they may complete a trial, a
first retrial, or any subsequent retrial.  If the shoe were on
the other foot and Mr. Sullivan and Mr. Simon had elected after
the initial trial to resign their positions at Williams &
Connolly so that they could, for instance, take full-time
teaching positions, the Court would not require that they put
their new careers on hold or require Forbes to proceed promptly

_____

[5]  Contrary to Forbes' speculation, Mr. McMahon is not
available to retry this case.  As of March 7, Mr. McMahon will
begin his new job as the Deputy Chief of the Fraud Section of the
Department of Justice in Washington, D.C., a position he accepted
in September of last year.  Mr. McMahon therefore will no longer
be employed by the office that is responsible for staffing and
prosecuting this case.  Forbes does not, and cannot, offer any
reason why he should be able to reassign responsibility for this
case to another office in the Department of Justice.

    Upon commencement of his new job, Mr. McMahon will have
substantial supervisory responsibilities that foreclose his
ability to devote the time necessary to be a member of the trial
team in this case.  Forbes offers no compelling reason why the
Government must choose between having Mr. McMahon perform his
long delayed and important duties in Washington, or having
sufficient time to get an entirely new trial team up to speed to
prosecute this complicated and lengthy retrial.

    Finally, Mr. McMahon obviously cannot retry this case
alone, so additional trial team members would have to be
appointed, and a continuance would be required, regardless of
whether Mr. McMahon had already left the New Jersey U.S.
Attorney's Office.

to trial while represented only by the more junior members of the current defense team, even if he desired to hire more experienced substitute trial counsel.[6]

Apparently eager to choose his opponents in the retrial, Forbes also contends that other AUSAs could substitute as trial counsel in this case, because they "participated in the case." As this Court is well aware, those other AUSAs collectively presented a grand total of one witness at trial, Norman Schonefeld. In any event, just as the Government does not presume which attorneys will represent Forbes and what roles they will play in the case, it is the United States Attorney, not the criminal defense attorneys, who is charged with the duty to determine which AUSAs to appoint to this complex case, and what roles they will assume.

Forbes' suggestion that a new trial team could be ready to retry this case by March because "it is a retrial with prepackaged exhibits, witnesses, testimony, jury instructions,

---

[6] Forbes's attempted and misplaced analogy to the ethical duties of private counsel towards a client who is a defendant in a criminal proceeding, FO 5, n.2, has no bearing on an AUSA's entitlement to leave his or her government job, particularly following a lengthy period of honorable service. Unlike a private lawyer who changes law firms but continues to represent the same client, an AUSA cannot continue to represent the United States in a criminal prosecution once their employment with the Department of Justice is concluded. 28 U.S.C. § 516 ("Except as otherwise authorized by law, the conduct of litigation in which the United States . . . is a party . . . and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.").

and motions," FO at 6, is fanciful.  As Forbes repeatedly
stressed in his pre-trial motions, this is an exceedingly complex
case involving voluminous information.[7]  Documents provided to
the defense in discovery and in response to subpoenas numbered in
the millions of pages.  E.g., Government Response to Forbes
Motion for Bill of Particulars, Docket No. 253, filed June 3,
2003, pp. 16, 20.  Forbes' world class trial team,[8] composed of
at least seven attorneys, repeatedly moved, more than a year
after this case was transferred to this Court, and more than
three years after the initial indictment was issued by the New
Jersey grand jury, to further delay the trial on the ground that
those attorneys needed additional time for preparation.  See
Forbes' Motion to Continue Trial, Docket No. 456, filed Jan. 20,
2004; Forbes' Reply Brief in Support of Motion to Continue Trial,
Docket No. 464, filed Jan. 30, 2004; see also Forbes' Waiver of
Speedy Trial to Continuance Granted pursuant to 18 U.S.C. §

---

[7]  E.g., Forbes Motion for Bill of Particulars, Docket No.
185, filed Apr. 25, 2003; pp. 2, 5-7; see also Forbes Motion for
Bill of Particulars, Docket No. 35, filed Dec. 14, 2001.  This
Court has also acknowledged the obvious complexity of the case by
granting Shelton's lawyers ninety days in which to file their
brief in support of Shelton's post-trial motions, even though
several of those lawyers personally conducted Shelton's defense
before and during trial, and are thoroughly familiar with the
trial record, all of the discovery provided in the case, and any
other information needed for that brief.

[8]  Washingtonian Magazine, January 15, 2005, identifying
both Mr. Sullivan and Mr. Simon as among the "Top Lawyers" in
Washington D.C., and Mr. Sullivan as among the "top five."
http://www.washingtonian.com/people/lawyers/toplawyers30.html.

3161(h)(8), Docket No. 88, filed Jan 31, 2003.  In order to
sustain the Government's demanding burden of proof, the
Government's new trial team cannot be expected to merely "read
the script" of the first trial, and proceed to the retrial
without a thorough understanding of the voluminous underlying
documents in this case.[9]  Although such a course of action would
surely enure to Forbes' benefit, it would hardly comport with the
"ends of justice" that a continuance under § 3161(h)(8)(A) is
intended to advance.[10]

---

[9]  The fact that other lawyers in the New Jersey U.S.
Attorney's Office have some knowledge of the evidence and legal
issues in this case does not alleviate the need for the
Government's new trial team to develop their own knowledge of
those matters.    This Court previously acknowledged as much with
respect to defense counsel.  It is the Government's recollection
that, after Mr. Puccio entered his appearance for Shelton in this
case, this Court granted Shelton's oral motion for a continuance
of the start of trial from January to February, 2004.

That continuance was granted even though Shelton had been
represented by several very capable attorneys since the
commencement of this case in February, 2001, but had dismissed
those lawyers after retaining Mr. Puccio.  Motion of Paul A.
Englemayer et al. to Withdraw as Counsel for Shelton, Docket No.
468, filed Feb. 5, 2004.  Thereafter, additional delays in the
commencement of the trial meant that Mr. Puccio did not have to
begin trial until May of 2004, almost ten months after he entered
his appearance on July 21, 2003.  Docket No. 331.  Compare Jan.
28, 2003 Amended Scheduling Order, setting Jan. 21, 2004 for
commencement of jury selection, Docket No. 85, with April 30,
2004 Order Resetting Start of Trial for May 10, 2004.  See also
Shelton Motion to Continue Daubert Hearing and Trial, Docket No.
458, filed Jan. 20, 2004, and granted on May 12, 2004.  Docket
No. 720.

[10]  None of the case cited by Forbes in which defense
requested continuances were denied involved a complex fraud case
(continued...)

Forbes contends that the Government did not act with reasonable diligence because it did not appoint a new trial team immediately after the conclusion of the initial trial, so a continuance pursuant to 18 U.S.C. § 3161(h)(8)(C) is unwarranted. FO 7.  To the contrary, the composition of the Government's new trial team has been addressed by the United States Attorney himself, along with almost all of his principal assistants, since shortly after the first trial ended.  Initial preparations for the retrial by a new trial team have already begun.

Because retrial of the case in Hartford would present an extreme personal hardship to many of the experienced

_____

[10](...continued)

involving millions of pages of pertinent documents, and an initial trial that lasted almost seven months and generated over 16,000 pages of transcripts.  See Avery v. Alabama, 308 U.S. 444, 448-52 (1940)(one day trial; defendant failed to show that his attorneys would have done anything differently had they been granted more time to prepare); United States v. Burgos, 579 F.2d 747 (2d Cir. 1978)(prosecution for conspiracy to commit a single unlawful drug transaction which occurred on a single day). Defense attorneys who belatedly entered their appearances in complex cases have received lengthy continuances.  E.g. United States v. Lattany, 982 F.2d 866, 868 (3d Cir. 1993)(district court granted multiple open-ended continuances which extended the commencement of trial for over one year based on, inter alia, the substitution of new defense counsel and defendant's desire to pursue an insanity defense); United States v. Williams, 717 F.2d 473, 475 (9th Cir. 1983)(district court properly granted a mistrial after allowing defense counsel to withdraw, where new counsel needed a lengthy delay in order to prepare for a complex case); see also United States v. Litton Systems, Inc., 722 F.2d 264, 271 (5th Cir. 1984)(defendant in a complex contractor fraud case who continued to seek adjournments for additional trial preparation in 1982, even though the Government was ready to proceed to trial in 1977, was not entitled to a Speedy Trial dismissal).

prosecutors in the U.S. Attorney's Office who are best suited to handle this complex case, the United States Attorney has been understandably reluctant to finalize the composition of the trial team until the Court rules on the Government's Motion to Retransfer the Case to New Jersey, a motion which the Government filed on January 24, 2005, less than three weeks after the jury was unable to reach a verdict in the first trial.  Docket No. 1433.  After Forbes first suggested that he would insist on a speedy retrial during a telephone conference with the Court shortly after the Government's retransfer motion was filed, the Government promptly filed its continuance motion on February 7, 2005.  Docket No. 1443.[11]

A continuance in the "interests of justice" is

---

[11]  By contrast, Forbes cites cases involving the denial of last minute requests for continuances because those requests were tardy.  E.g. United States v. Pascarella, 84 F.3d 61, 68 (2d Cir. 1996)(continuance request four days before trial started, with no explanation for the delay); United States v. Taylor, 562 F.2d 1345, 1363 (2d Cir. 1977)(defendant dismissed appointed counsel, new counsel was appointed only nine days before trial, and defendant failed to show any significant impairment of trial preparation); United States v. Carroll, 510 F.2d 507, 509 (2d Cir. 1075)(no abuse of discretion to deny "last minute request for change of counsel [which] was in substantial part an attempt by [the defendant] to delay his trial").

Here, by contrast, the Government first asked to continue the commencement of the retrial in its motion to retransfer the case to New Jersey, the first pleading that the Government filed following the mistrial.  It was only after the Government first requested a continuance that Forbes, for the first time in the protracted history of this case, stated that he wanted a "speedy [re]trial."  Forbes is apparently more interested in a claimed Speedy Trial Act violation than a speedy retrial.

appropriately granted where:

> the case is so unusual or so complex, due to . . . the
> nature of the prosecution, or the existence of novel
> questions of fact or law, that it is unreasonable to
> expect adequate preparation for pretrial proceedings or
> for the trial itself within the time limits established
> by this section.

18 U.S.C. § 3161(h)(8)(B)(ii). It is hard to imagine a case to
which that description more aptly applies than it does to this
case. Forbes does not dispute, and this Court is well aware,
that this case is particularly complex, involving issues of
financial accounting and corporate financial reporting that are
not typically encountered in many sophisticated white collar
fraud prosecutions. Additionally, this case covers a protracted
period of time, involving a fraudulent scheme that spanned over a
decade, and numerous acts committed in furtherance of that
protracted scheme. Finally, the case has generated substantial
motion practice, particularly by Forbes. Familiarity with the
complete record of the initial trial, encompassing over 16,000
pages of transcripts and over 700 trial exhibits (with many more
exhibits marked but not admitted) and with all of the Court's
rulings during and in advance of that trial, as well as with the
mass of documents that are relevant to this case but which were
not admitted into evidence at the first trial, is essential to
the successful prosecution of this case. Because the Government
has had to appoint an entirely new team to prosecute the retrial,
granting the Government's requested continuance would be well

within the broad discretion of this Court.   See <u>United States v.</u>
<u>Beech-Nut Nutrition Corp.</u>, 871 F.2d 1181, 1197 (2d Cir. 1989)
(affirming the denial of defendant's Speedy Trial Act claim,
where the district court granted a lengthy continuance of 186
days beyond the 70 day period for commencement of trial under §
3161(h)(8), given the complexity of the case, which included
"more than a dozen pre-trial motions", tens of thousands of pages
of discovery, and a defense concession that the case was
complex).[12]

---

[12]  Without citation to any authority, Forbes requests an
evidentiary hearing to "determine the facts and circumstances"
surrounding the employment status of the initial trial team.  The
Court should reject this request as yet another unwarranted
attempt by Forbes to invade the inner workings of the United
States Attorney's Office, as well as the private lives of its
employees.  The Government believes that its initial memorandum
in support of this motion and this reply memorandum describe
sufficient facts regarding the employment status of the three
members of the initial team to enable this Court to informatively
rule on the pending continuance motion.  If the Court desires
additional information regarding any of these matters, the
Government will promptly provide it, but would request that any
such information be submitted to the Court *ex parte*, *in camera*
and under seal.

        When Forbes's attorneys insisted that they needed a
substantial continuance to prepare their cross-examination of
Brian Heckler at the <u>Daubert</u> hearing, the Government did not
request an evidentiary hearing to challenge the accuracy of that
representation, but took defense counsel at their word.  Forbes
should not be permitted to consume the valuable time of this
Court with a fishing expedition that would distract the United
States Attorney's Office from the substantial task of preparing
for the retrial that Forbes is supposedly eager to begin.

III.     **This Court Should Exclude From the Speedy Trial Period
         Any Delay Occasioned by a Ruling on Shelton's
         Post-Trial Motions.**

Forbes contends that 18 U.S.C. § 3161(h)(7) does not
apply to this case, because Forbes is not **presently** "joined for
trial with a codefendant."  Forbes purports to distinguish United
States v. Salerno, 108 F.3d 730 (7th Cir. 1997) on the ground
that Salerno's co-defendants, unlike Shelton, were not convicted
on all counts following the first trial, and for that reason were
joined with Salerno for trial throughout the period during which
all of the defendants' post-trial motions were pending.  Forbes'
purported distinction fails.  In Salerno, the Government did not
make its determination about which persons would be "joined for
trial" with Salerno until after the district court had resolved
all of the defendants' various post-trial motions.  108 F.3d at
734.  The same will occur here: the determination of whether
Shelton will be "joined for trial" with Forbes will be made by
the Government only after all of Shelton's post-trial motions are
resolved by this Court, and the Government has an opportunity to
evaluate its options in light of the rulings on those motions.
As in Salerno, the Government is entitled to a continuance
pursuant to § 3161(h)(7) to provide it with an opportunity to
determine whether or not Shelton will be joined for trial with
Forbes, which continuance should cover the time required to
resolve Shelton's post-trial motions.

14

Forbes' narrow construction of § 3161(h)(7) would eviscerate "the obvious purpose behind the exclusion in § 3161(h)(7), [which] is to accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial." Vogl, 374 F.3d at 983 (internal punctuation omitted), quoting United States v. Theron, 782 F.2d 1510, 1514 (10th Cir. 1986). This purpose is furthered when the Government is given sufficient time, in a complex case, to formulate a unified trial strategy against all defendants involved in a single trial, with an understanding in advance of trial of which defendants, charges, evidence, and legal issues remain in the case.

Permitting the case against Forbes to proceed before the Court rules on Shelton's post-trial motions would create a risk, however small, that the Government and the Court would have to conduct largely duplicative, protracted trials against each defendant alone, rather than a single joint trial against both defendants. See United States v. Gambino, 784 F.Supp. 129, 140 (S.D.N.Y. 1992)(granting a continuance pursuant to § 3161(h)(8), in order to avoid "two or more lengthy, complex trials . . . with a greater possibility of inconsistent verdicts and all of the unwelcome burdens on the judicial system of multiple separate trials"). This would be an enormous waste of this Court's resources, which a continuance under § 3161(h)(7) is designed to

15

prevent.  <u>United States v. Dennis</u>, 737 F.2d 617, 621 (7th Cir. 1984)("Section 3161(h)(7) was intended to help avoid the time, expense and inconvenience of separate prosecutions."), <u>citing</u> S.Rep. No. 1021, 93d Cong., 1st Sess. 38 (1974) and S.Rep. No. 212, 96th Cong., 1st Sess. 24 (1979).[13]

Forbes misrepresents the Government's position by claiming that the Government has contradicted its representation that it would oppose separate trials for Forbes and Shelton, because the Government did not seek to retransfer both Shelton's and Forbes' cases to New Jersey.  FO 8, n. 7.  The Government did not seek to transfer the case against Shelton at this time because, having presided over the initial trial, this Court is obviously the proper forum to resolve Shelton's post-trial motions and to sentence Shelton.  If this Court were to both retransfer this case to New Jersey <u>and</u> grant a new trial to Shelton, the Government would then seek to retransfer Shelton's case to New Jersey as well for a joint trial, as the Government pointed out in a recent submission in this case.  Government's

---

[13]  Although the Government anticipates that this Court will deny Shelton's request for a new trial, Forbes contends that "numerous violations of Mr. Shelton rights [occurred] during the first trial," FO 7, n. 6, suggesting that he at least believes that a new trial should be awarded to Shelton.  Because the Government is not proposing that the retrial of Shelton await the disposition of Shelton's appeal, Forbes' contention that resolution of the appeal "could take more than year (or years)," <u>id.</u>, is no basis to deny the Government's requested continuance of six months.

16

Supplemental Reply Memorandum in Support of Motion to Transfer, filed Feb. 22, 2005, at 8, n.8.

**IV.    Forbes Has Failed to Justify His Plan to Withhold Until Trial the Filing of Evidentiary Motions That Could Be Filed and Resolved Before Trial.**

Forbes filed numerous motions, some styled "motions in limine," regarding various evidentiary issues, after the first trial began.[14] Those motions were all directed to evidence that the Government had disclosed to Forbes long in advance of trial, so nothing prevented Forbes from filing those motions before the start of that trial.[15] Because some of those motions sought to exclude evidence that the Government was about to elicit shortly

---

[14] *E.g.* Docket No. 727, filed May 12, 2004, Docket Nos. 732, 734, 735, filed May 13, 2004; Docket No. 741, filed May 17, 2004; Docket No. 743, filed May 18, 2004; Docket No. 745, filed May 19, 2004; Docket No. 747, filed May 20, 2004, Docket No. 826, filed June 8, 2004; Docket No. 840, filed June 10, 2004; Docket No. 857, filed June 15, 2004.

[15] By contrast, the Government routinely filed evidentiary motions well in advance of trial. For instance, the Government filed on September 29, 2003, over seven months in advance of trial, a motion in limine regarding evidence of Shelton's proffer statements to the Government. Docket No. 392.

The Government filed a motion in limine pertaining to several evidentiary issues on January 13, 2004, Docket No. 454. Briefing on that motion was completed by March 10, 2004, well in advance of trial. Government Reply Brief in Support of Motion in Limine, Docket No. 522. As a result, the Court was able to rule on all issues presented in that motion by the start of trial on May 10, 2004.

On March 22, 2004, over six weeks before the start of trial, the Government filed its Motion to Use Summary Charts. Docket No. 545. Briefing on that motion was also completed on April 26, 2004, before trial commenced. Docket No. 652.

after the motions were filed, the Government was compelled to brief, and the Court was required to rule on those motions on short notice.  To reduce the occasions of such expedited briefing and rulings during the retrial, the Government has requested that Forbes file before the retrial, pursuant to a schedule established by the Court, all evidentiary motions for which the basis has been disclosed to Forbes before the retrial.

Even though Forbes has now had a preview of the Government's evidence in this case during the first trial, he contends that he should be permitted to withhold all of his evidentiary objections until after the retrial begins, because he might be required to renew those objections during the retrial even if he seeks a pre-trial ruling on those objections.  FO 9-10.  This is an insufficient basis to permit Forbes to withhold all of his evidentiary objections.  Forbes filed several motions in limine before, albeit shortly before, the start of the first trial.[16]  Nothing would prevent Forbes from filing his next round of evidentiary motions before the retrial begins.

---

[16]  E.g, Docket Nos. 594, 596, filed Apr. 2, 2004; Docket Nos. 631, 632, filed Apr. 21, 2004, Docket No. 637, filed Apr. 22, 2004; Docket Nos. 647 and 649, filed Apr. 23, 2004.  The Court conducted a hearing on those motions on May 3, 2004, a week before the commencement of trial.  Docket No. 700.  Briefing on those motions was concluded by May 6, Docket Nos. 669 and 672-74, 676, 683, and the Court ruled on some of those motions on May 7, Docket Nos. 697 and 698, also before trial began, and the balance on May 12, two days after the start of trial.  Docket Nos. 722-24.

Even assuming, as Forbes does, that in some instances, "relevant facts and circumstances change materially after the advance ruling has been made," FO 10, briefing of the issues in advance of trial will assist this Court's disposition of any evidentiary motions, regardless of additional wrinkles that may arise during the retrial. Additionally, in those instances in which there are no "material changes" in the facts and circumstances, the parties and Court will have one less thing to accomplish during the taxing period of trial.

Courts and lawyers do not operate most effectively under unnecessary time pressures. Particularly because time pressures are inevitable in a complex and lengthy trial, matters that can be resolved in advance of trial should be, so that the parties and the Court have sufficient time to resolve those matters that arise unexpectedly. Such a procedure will hasten the resolution of the retrial, a result for which, at least according to Forbes' opposition to the Government's continuance motion, Forbes is supposedly eager.

**CONCLUSION**

For the foregoing reasons, and the reasons set forth in the Government's initial submission in support of this motion, the Government respectfully requests that this Court continue the commencement of the retrial of Walter Forbes until September 6, 2005, and rule that the period between now and September 6, 2005 is excludable for purposes of calculating the time when the retrial must commence under the Speedy Trial Act.

Respectfully submitted,

John J. Carney/s

JOHN J. CARNEY
Special Attorney
U.S. Department of Justice
Federal Bar No. 24063

Norman Gross/s

NORMAN GROSS
Special Attorney
U.S. Department of Justice
Federal Bar No. 24933

James McMahon/s

JAMES MCMAHON
Special Attorney
U.S. Department of Justice
Federal Bar No. 24062

Richard J. Schechter/s

RICHARD J. SCHECHTER
Special Attorney
U.S. Department of Justice
Federal Bar No. 24238

## CERTIFICATE OF SERVICE

     The undersigned certifies that on this day I caused to be served copies of the foregoing upon the following via fax and email delivery:

    Barry S. Simon, Esq.

    Scott Edelman, Esq.

     I declare under penalty of perjury that the foregoing is true and correct.


          _Norman Gross/s_____
          Norman Gross
          U.S. Department of Justice


Dated: March 1, 2005
      Camden, New Jersey