**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| v. ) | No. 3:02CR264 (AWT) |
| ) | |
| WALTER A. FORBES ) | July 14, 2005 |
| ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF MOTION OF WALTER A.**
**FORBES TO COMPEL DISCOVERY**
**(Forbes Retrial Motion No. 3)**

Walter A. Forbes, through undersigned counsel, respectfully submits

this memorandum in support of his motion to compel the government to comply

with its obligations under Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United

States, 405 U.S. 150 (1972); and Fed. R. Crim. P. 16.

**BACKGROUND**

"By definition, criminal informants are cut from untrustworthy cloth

and must be managed and carefully watched by the government and the courts to

prevent them from falsely accusing the innocent, from manufacturing evidence

against those under suspicion of crime, and from lying under oath in the

courtroom." United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993); see

also United States v. Prawl, 168 F.3d 622, 627-29 (2d Cir. 1999) (approving use of

pattern instructions requiring close scrutiny of accomplice testimony). Government

witnesses Cosmo Corigliano and Kevin Kearney fit this definition quite well.

Although these witnesses provided demonstrably false testimony at the first trial,

the government refuses to produce material impeachment evidence concerning these and other government witnesses.

By letters dated May 17, May 27, and June 13, 2005, Mr. Forbes sought disclosure of narrow categories of material impeachment information. See Ex. 1 (Letter from Simon to Gross, May 17, 2005); Ex. 2 (Letter from Simon to Gross, May 27, 2005); Ex. 3 (Letter from Simon to Gross, June 13, 2005).

The first trial exposed circumstances suggesting the existence of undisclosed oral agreements between the government and Mr. Corigliano. Mr. Forbes requested information about these agreements, but the government refuses to disclose information concerning the nature and terms of its agreements with Mr. Corigliano as well as information concerning Mr. Corigliano's knowledge of those agreements. See Ex. 4 (Letter from Martinez and Carpenito to Simon, June 24, 2005).

The first trial also exposed false testimony by Messrs. Corigliano and Kearney that was flatly inconsistent with prior statements reflected in the handwritten notes of government agents. Mr. Forbes requested the remaining notes of interviews of cooperating witnesses and attorney proffers, but the government rejected that request.

Mr. Kearney's unusual demeanor in the first trial, and the noted change in his demeanor from the time of the events at issue, suggested that he was suffering or had suffered from a cognitive impairment or affliction. Indeed, upon request of the defendants, the Court inquired into whether Mr. Kearney was then

under the influence of medication. <u>See</u> Tr. (08/05/04) at 9790-91. The government now refuses to respond to inquiries and requests for information concerning whether Mr. Kearney's memory and cognitive abilities may be impaired.

In addition, the government still has not disclosed communications with Cendant evidencing Cendant's bias against Mr. Forbes. Mr. Forbes requested disclosure of this information in advance of the first trial. <u>See, e.g.</u>, Forbes Pretrial Motion No. 50, at 33.[1] During the first trial, multiple Cendant attorneys attended every day (or nearly every day) of trial and collaborated with the prosecution team in its presentation of the case, and counsel for Cendant expressly advised the Court that Cendant was "dedicated to cooperating with the government." Tr. (03/01/04) at 106. This suggests that the government is withholding information that is highly relevant to the bias of Cendant witnesses.

The government's refusal to provide these limited categories of impeachment material conflicts with its responsibility "to take all reasonable measures to safeguard the system against treachery," including its "duty as required by <u>Giglio</u> to turn over to the defense in discovery <u>all</u> material information casting a shadow on a government witness's credibility." <u>Bernal-Obeso</u>, 989 F.2d at 334. Accordingly, the Court should order the government to provide the requested information.

---

[1]    Mr. Forbes has renewed his arguments from Pretrial Motion No. 50 (as well as Pretrial Motion No. 59) in his Renewed Fed. R. Crim. P. 12(b)(3) Motions filed today. Thus, the government should provide any responsive documents or information that it has obtained since the first trial.

## ARGUMENT

## I.     THE GOVERNMENT SHOULD BE REQUIRED TO COMPLY WITH ITS <u>BRADY</u> AND <u>GIGLIO</u> OBLIGATIONS.

Under the Due Process Clause of the Fifth Amendment, the government has an obligation to disclose evidence favorable to the defendant that is material to guilt or to punishment.  <u>See</u> <u>United States v. Bagley</u>, 473 U.S. 667, 676 (1985); <u>United States v. Agurs</u>, 427 U.S. 97, 110-11 (1976); <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972); <u>Brady v. Maryland</u>, 373 U.S. 83, 87-88 (1963); <u>United States v. Gil</u>, 297 F.3d 93, 101 (2d Cir. 2002); <u>see also</u> Standing Order ¶ A(11) (requiring production of "[a]ll information known to the government which may be favorable to the defendant on the issues of guilt or punishment within the scope of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963)").

The government's constitutional duty to disclose encompasses not only exculpatory evidence, but impeachment evidence as well.  <u>See</u> <u>Kyles v. Whitley</u>, 514 U.S. 419, 433 (1995) ("[T]he Court [has] disavowed any difference between exculpatory and impeachment evidence for <u>Brady</u> purposes . . . ."); <u>Bagley</u>, 473 U.S. at 676 ("Impeachment evidence, . . . as well as exculpatory evidence, falls within the <u>Brady</u> rule."); <u>Giglio</u>, 405 U.S. at 154; <u>Gil</u>, 297 F.3d at 101; <u>see also</u> Standing Order ¶ A(10) (requiring production of "[a]ll information concerning the existence and substance of any payments, promises of immunity, leniency, or preferential treatment, made to prospective government witnesses, within the scope of [<u>Giglio v. United States</u>,] 405 U.S. 150 (1972) and <u>Napue v. Illinois</u>, 360 U.S. 264 (1959)").  Indeed, the Supreme Court has recognized that "if disclosed and used effectively,

[impeachment evidence] may make the difference between conviction and acquittal." Bagley, 473 U.S. at 676.

This is especially true here because the government's evidence against Mr. Forbes is weak and is based almost exclusively on the testimony of Mr. Corigliano. The outcome of the first trial confirmed the weakness in the government's case and the importance of Mr. Corigliano's credibility. If all of the jurors had believed Mr. Corigliano's testimony, the jury would presumably have voted to convict. After deliberating for more than 35 days over the course of 9 weeks, however, the jury was unable to reach a verdict on any count with respect to Mr. Forbes.

The Court should order the government to produce to the defense immediately all Brady and Giglio material in its possession, custody, or control (including all material in the possession, custody or control of the SEC),[2] including the following:

### A.    Documents and Information Concerning Benefits the Government Conferred on Its Witnesses

To comply with its Brady/Giglio obligations, the government must disclose agreements with and promises to cooperating witnesses whether or not they are in writing. Indeed, in Giglio v. United States, 405 U.S. 150 (1972), for example, the government failed to disclose an oral promise by a prosecutor to a key

---

[2]    See, e.g., Kyles, 514 U.S. at 437 (prosecutor has a "duty to learn of any favorable evidence known to the others acting on the government's behalf in the case"); United States v. Brooks, 966 F.2d 1500, 1503 (D.C. Cir. 1992) (Brady obligations required prosecution to review files of government agencies closely aligned with the prosecution) (collecting cases).

government witness that he would not be prosecuted. The Supreme Court stated
that "[w]hen the reliability of a given witness may well be determinative of guilt or
innocence, nondisclosure of evidence affecting credibility falls within [the] general
rule" of <u>Brady</u>. <u>Id.</u> at 154 (internal quotation omitted). The Supreme Court
reversed the defendant's conviction and, in words applicable to the present case,
explained:

> Here the Government's case depended almost entirely on
> Taliento's testimony; without it there could have been no
> indictment and no evidence to carry the case to the jury.
> Taliento's credibility as a witness was therefore an
> important issue in the case, and evidence of any
> understanding or agreement as to a future prosecution
> would be relevant to his credibility and the jury was
> entitled to know of it.

<u>Id.</u> at 154-55; <u>see also</u> <u>Hayes v. Brown</u>, 399 F.3d 972 (9th Cir. 2005) (en banc) (due
process violated when cooperating witness testified falsely about oral agreement
reached between witness's counsel and government even though witness did not
know about agreement).

      The government conferred substantial benefits upon Mr. Corigliano in
exchange for his testimony against Walter Forbes. Some of these benefits are
reflected in written agreements between Mr. Corigliano and the government.
Others are allegedly contained in oral side agreements that are inconsistent with
the written agreements. For example, during the first trial, the government
belatedly disclosed that Mr. Corigliano and the SEC purportedly entered into oral
side agreements that permit him and his wife to use retainer funds to pay their
ongoing legal fees. <u>See, e.g.</u>, Mot. Mistrial Due to Presentation of Corigliano's False

and Misleading Testimony (filed Aug. 20, 2004), Ex. 1 (proposed government stipulation). The government has never fully disclosed the nature and terms of these oral agreements, and Mr. Corigliano disclaimed knowledge of the agreements. See, e.g., Tr. (08/03/04) at 9367-69.

Similarly, the evidence at trial showed that Mr. Corigliano used assets that were to be transferred to the receiver to pay for his living expenses and future property taxes. See, e.g., Tr. (08/03/04) at 9393-412. Nothing in the written SEC settlement agreement permitted Mr. Corigliano to make these expenditures. The government has refused to provide information concerning whether there is another oral side agreement with the SEC that allowed Mr. Corigliano to spend money that was supposed to be disgorged to the receiver.

Mr. Forbes respectfully requests that the Court order the government to provide the following documents and information concerning the nature of the benefits the government conferred on its witnesses as well as their knowledge of those benefits:

1. The substance of any agreement, promise, or inducement (oral or written) that the government has made with or to Corigliano or any other prospective government witness;

2. All documents and information concerning the SEC's investigation, prosecution and settlement of claims against Corigliano or the Relief Defendants named in SEC v. Corigliano, et al., 00 Civ. No. 2873, including, but not limited to, all documents and information concerning communications with Corigliano or his counsel, asset values, asset descriptions, asset transfers, asset dispositions, the property at 38 Watrous Point Road, the property at 36 Watrous Point Road, retainer funds, legal fees, financial statements, Crystal Journey Candles LLC, and expenditures out of assets to be transferred to the Receiver;

- 7 -

   3. Whether Corigliano's counsel ever represented to the government that counsel would communicate information from the government to Corigliano (and, if the response is affirmative, the date on which any such representation was made and the substance of any such information);

   4. Whether Corigliano's plea agreement has been revoked because of his false testimony at the first trial;

   5. Whether the government has taken any steps to determine whether Corigliano or Kearney testified falsely at the first trial; and

   6. Whether any current or former government agent has concluded that Corigliano or Kearney testified falsely at the first trial.

**B.  Documents and Information Concerning Prior Statements of Government Witnesses**

Prior statements that government witnesses made during proffer sessions and interviews constitute classic <u>Brady</u>/<u>Giglio</u> material that the government must disclose.  <u>See, e.g.</u>, <u>United States v. Vozzella</u>, 124 F.3d 389, 392 (2d Cir. 1997) (reversing conviction and stating that the undisclosed "statements made by Pietrosanti during the proffer session were highly exculpatory as to [defendant's] participation in a conspiracy"); <u>United States v. Sudikoff</u>, 36 F. Supp.2d 1196, 1201 (C.D. Cal. 1999) ("[T]o the extent the proffers and other information reveal that the witness's proposed testimony may have varied over time, they may reveal inconsistencies relevant to the accomplice witness's credibility and within the scope of <u>Brady</u>."); <u>United States v. Perry</u>, No. 96 CR. 1053, 1997 WL 642554, at *6 (S.D.N.Y. Oct. 17, 1997) ("[T]he government did have an obligation, under <u>Brady</u>, to disclose . . . any exculpatory evidence that emerged from the proffer sessions . . . .").  This disclosure obligation extends to attorney

proffers, in which the counsel for the witness provided factual information, obtained from the witness, to the government.

In <u>Spicer v. Roxbury Correctional Institute</u>, 194 F.3d 547, 556 (4th Cir. 1999), for example, the court held that the government violated <u>Brady</u> by failing to disclose to the defense an attorney proffer, which reflected a version of the witness's testimony significantly less damaging to the defendant than the witness's testimony at trial. The fact that the communication was made by the witness's attorney to the prosecutor was immaterial to the court's analysis because "the impeaching nature of the statements does not depend on whether the state was a direct or indirect audience. For purposes of determining whether evidence is 'favorable' to the defendant, it is the content of the statements, not their mode of communication to the state, that is important." <u>Id.</u> at 556.

Similarly, in <u>United States v. Sudikoff</u>, 36 F. Supp.2d 1196 (C.D. Cal. 1999), the court ordered the government to disclose information concerning both witness and attorney proffers.

> The government must disclose to the defendants all proffers by any witness receiving any benefit, whether immunity or leniency, in return for their testimony. Included in this category are any proffers made by lawyers for such witnesses. By "proffers" the Court refers to statements that reflect an indication of possible testimony, whether or not it seems likely that the witness would actually so testify. In addition, the government must disclose any notes or documents created by the government that reflect this information. Further, the government must disclose any material that indicates any variations in the witness's proffered testimony.

<u>Id.</u> at 1206.

Prior to the first trial, the government provided some, but not all, interview notes. Those it did provide contained substantial amounts of Brady/Giglio material. Indeed, defense counsel frequently used the notes on cross-examination and in some instances called government agents to testify to the prior inconsistent statements reflected in the notes. The government refuses, however, to provide the remaining notes from witness interviews and attorney proffers. Mr. Forbes respectfully requests that the Court order the government to provide the following documents and information:

1. All notes of government interviews of cooperating witnesses and/or factual information received from cooperating witnesses, including, but not limited to, all notes taken by Messrs. Carney, Schechter and or McMahon;

2. A list of every date on which the government interviewed or obtained factual information from each of its cooperating witnesses;[3]

3. The full terms (whether written or oral) of all attorney proffers made by counsel for government witnesses to the government;

4. Whether Corigliano's counsel ever represented to the government that (a) Corigliano was the source of any information supplied by counsel to the government; or (b) Corigliano had authorized his counsel to make a representation to the government on his behalf (and, if the response is affirmative, the date(s) on which Corigliano's counsel supplied such information and the substance of the information supplied on each date);

5. The first time (interview number and date) that Kearney stated in substance that (a) Bell instructed him to make topside adjustments; (b) Kearney met with Bell to discuss topside

---

[3]     The government represented that it would be keeping such a record on a going-forward basis, see Tr. (10/16/03) at 159-60, and the Court ruled that Mr. Forbes "was entitled to attempt to introduce the dates through the testimony of the former federal prosecutors unless the parties entered into a stipulation." Ruling on Mot. Quash Weissman Subpoena (dated Sept. 6, 2004).

adjustments; (c) Bell invoked the name Walter Forbes in connection with topside adjustments and/or wanting EPS to be a certain number; (d) Corigliano or anyone else invoked the name Walter Forbes in connection with topside adjustments and/or wanting EPS to be a certain number; (e) Corigliano, Sabatino, or anyone else invoked the name Walter Forbes in connection with hiding information from Ernst & Young; (f) Corigliano, Sabatino or anyone else stated that information should not be released to Ernst & Young until Walter Forbes signed off on the press release; and

6. All grand jury testimony constituting or characterizing prior statements of government witnesses.

## C.    Documents and Information Concerning Kearney's Impaired Memory

Information concerning defects in a witness's memory or cognitive ability constitutes <u>Brady</u>/<u>Giglio</u> material that the government must disclose. <u>See, e.g.</u>, <u>Jean v. Rice</u>, 945 F.2d 82 (4th Cir. 1991) (due process violated when government failed to disclose information relating to hypnotically-refreshed recollection of government witnesses).[4] Kearney exhibited an unusual demeanor during the first trial, which suggested that his memory and cognitive abilities were impaired. The government has refused to respond to inquiries regarding this matter. Mr. Forbes respectfully requests that the Court order the government to provide the following documents and information:

1. Whether Kearney has or had any personality disorder or psychological, psychiatric, medical, or physical condition or illness that could affect his cognitive functioning, memory, or

---

[4]    <u>See also</u> <u>United States v. Gray</u>, 52 Fed. Appx. 945 (9th Cir. 2002) (unpublished) (reversing conviction when government withheld victim's psychiatric records until Friday before trial); <u>United States v. Pellot</u>, 43 Fed. Appx. 473, 475 (3d Cir. 2002) (unpublished) ("We are troubled by the prosecution's failure to notify defense counsel of the witness's history of mental problems in advance of the trial.").

      suggestibility (and, if so, the name of the disorder, illness, or
condition);

2. Whether Kearney has taken any medication, drug, or other
substance that could affect his cognitive functioning, memory, or
suggestibility (and, if so, the name of the medication, drug, or
substance); and

3. Whether the government is aware of any other information
bearing on Kearney's cognitive functioning, memory, or
suggestibility (and, if so, the information).

### D.    Documents and Information Concerning Bias of Cendant Witnesses

The government must disclose information that the defense could use
"to impeach the Government's witnesses by showing bias or interest." Horton v.
Mayle, 408 F.3d 570, 578 (9th Cir. 2005) (quoting United States v. Bagley, 473 U.S.
667, 676 (1985)). Cendant witnesses, particularly former HFS executives at
Cendant, have a bias against Mr. Forbes and an interest in his prosecution.
Cendant lobbied for the institution of this prosecution. Multiple Cendant attorneys
attended every day (or nearly every day) of the first trial and collaborated with the
prosecution team in its presentation of the case. Cendant submitted a "victim"
statement in connection with the sentencing of Mr. Shelton. Mr. Forbes is entitled
to information relating to Cendant's bias so that he can effectively cross-examine
Henry Silverman or any other Cendant witnesses who testify at trial. The
government, however, has not disclosed its oral or written communications with
Cendant representatives that evidence this bias. Mr. Forbes respectfully requests
that the Court order the government to provide the following documents and
information:

1. All communications (written or oral) between Cendant representatives (including its attorneys) and the government concerning the investigation or prosecution of this matter, including, but not limited to, all communications between Henry Silverman or Herb Stern, Esq. and Christopher Christie, Esq.

## II.   THE GOVERNMENT SHOULD ALSO PRODUCE RESPONSIVE DOCUMENTS PURSUANT TO RULE 16.

Much of the information requested above may be undocumented. To the extent, however, that the information is documented, Fed. R. Crim. P. 16(a)(1)(E)(i) requires the government to provide the documents because, for the reasons set forth above, they are "material to preparing the defense." The materiality requirement of Rule 16 "is not a heavy burden." United States v. Lloyd, 992 F.2d 348, 351 (D.C. Cir. 1993) (quotation omitted). Information is material whenever it is "relevant to the development of a possible defense," United States v. Clegg, 740 F.2d 16, 18 (9th Cir. 1984), or "will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." United States v. Marshall, 132 F.3d 63, 68 (D.C. Cir. 1998) (quotation omitted); Lloyd, 992 F.2d at 351; see also United States v. Zanfordino, 833 F. Supp. 429, 432 (S.D.N.Y. 1993); United States v. Halpin, 145 F.R.D. 447, 450 (N.D. Ohio 1992). Both exculpatory and inculpatory information may be "material" under Rule 16. See Marshall, 132 F.3d at 68.[5]

---

[5]     To the extent it has not already done so, the government should produce all documents that are in its control, but not its physical possession, that constitute Rule 16, Brady, or Giglio material. See, e.g., United States v. Skeddle, 176 F.R.D. 258, 261 n.5 (N.D. Ohio 1997); Scott v. Arex, Inc., 124 F.R.D. 39, 41 (D. Conn. 1989) ("The word 'control' is to be broadly construed. A party controls documents that it has the right, authority, or ability to obtain upon demand.").

## CONCLUSION

For the reasons set forth above, Mr. Forbes respectfully requests that the Court order the government to provide the requested documents and information.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes