# EXHIBIT 1

LAW OFFICES
# WILLIAMS & CONNOLLY LLP
725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

BARRY S. SIMON
(202) 434-5005
bsimon@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

May 17, 2005

**Via Facsimile (856-968-4917)**
**& First Class Mail**

Norman Gross
Assistant United States Attorney
District of New Jersey
401 Market Street, 4th Floor
Camden, NJ 08101

Re:   **United States v. Forbes & Shelton**, 3:02CR264 (AWT)

Dear Mr. Gross:

During closing arguments at Mr. Forbes' trial, the government asserted that, if a witness with a plea agreement lied or testify falsely, "the agreement gets thrown out the window." Tr. (10/18/04) at 14,860; see also id. at 14,861 ("if they testify falsely, if they lie, the agreement says it goes out the window. No reduction in sentence. And they're open to being prosecuted for more crimes. Right in the agreement."). Pursuant to Brady v. Maryland, 373 U.S. 83 (1963), United States v. Giglio, 405 U.S. 150 (1972), and their progeny, Mr. Forbes requests that the government supply the following information: (i) whether any present or former employee of the United States Attorney's Office or any other representative or agent of the government has come to the conclusion that Mr. Corigliano lied or testified falsely with respect to any matter at trial; (ii) whether, in light of overwhelming evidence that Mr. Corigliano testified falsely at trial, the government has taken any steps to determine whether Mr. Corigliano in fact lied or testified falsely; and (iii) whether Mr. Corigliano's plea agreement has been revoked or "thrown out the window" due to his false testimony at trial.

Norman Gross, Esq.
May 17, 2005
Page 2

      Pursuant to <u>Brady</u>, <u>Giglio</u> and their progeny, Mr. Forbes also requests the following information: (i) the full terms (whether written or oral) of all attorney proffers made by Mr. Corigliano's counsel to the government; (ii) whether Mr. Corigliano's counsel ever represented to the government[1] that Mr. Corigliano was the source of any information supplied by counsel to the government (and, if the response is affirmative, identify the date(s) on which Mr. Corigliano's counsel supplied such information and the substance of the information supplied on each date); (iii) whether Mr. Corigliano's counsel ever stated that Mr. Corigliano had authorized his counsel to make a representation to the government on his behalf (and, if the response is affirmative, identify the date and substance of each such representation); and (iv) whether Mr. Corigliano's counsel ever represented to the government that counsel would communicate information from the government to Mr. Corigliano (and, if the response is affirmative, identify the date on which any such representation made and the substance of any such information).

                                          Sincerely,

                                          Barry S. Simon

---

[1] As defined herein, "the government" includes the SEC and any other government entity aligned with the prosecution.

# EXHIBIT 2

LAW OFFICES
# WILLIAMS & CONNOLLY LLP
725 TWELFTH STREET, N.W.

BARRY S. SIMON
(202) 434-5005
bsimon@wc.com

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

May 27, 2005

<u>Via Facsimile (856-968-4917)
& First Class Mail</u>

Norman Gross
Assistant United States Attorney
District of New Jersey
401 Market Street, 4th Floor
Camden, NJ  08101

Re:   <u>United States v. Forbes & Shelton</u>, 3:02CR264 (AWT)

Dear Mr. Gross:

Pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), <u>United States v. Giglio</u>, 405 U.S. 150 (1972), and their progeny, Mr. Forbes requests that the government supply the following information:

1.   Whether Kevin Kearney has or had any personality disorder or psychological, psychiatric, medical, or physical condition or illness that could affect his cognitive functioning, memory, or suggestibility.  If so, identify the disorder(s), illness(es), and/or condition(s).

2.   Whether Kevin Kearney has taken any medication, drug, or other substance that could affect his cognitive functioning, memory, or suggestibility.  If so, identify the medication(s), drug(s), and/or other substance(s).

3.   Whether the government is aware of any other information bearing on Mr. Kearney's cognitive functioning, memory, or suggestibility.  If so, identify all such information.

WILLIAMS & CONNOLLY LLP

Norman Gross, AUSA
May 27, 2005
Page 2

      4.     Whether any present or former employee of the United States Attorney's Office or any other representative or agent of the government has come to the conclusion that Mr. Kearney lied or testified falsely with respect to any matter at trial.

      5.     Whether, in light of overwhelming evidence that Mr. Kearney testified falsely at trial (see Forbes Trial Motion No. 30), the government has taken any steps to determine whether Mr. Kearney in fact lied or testified falsely.

      6.     The first time (in terms of the number of interviews before the statement was first made and the first date of the statement) that Mr. Kearney stated in substance that Mr. Bell instructed him to make topside adjustments. See Forbes Motion to Compel Production of Brady/Giglio Material Concerning Kevin Kearney (filed August 16, 2004).

      7.     The first time (in terms of the number of interviews before the statement was first made and the first date of the statement) that Mr. Kearney stated in substance that he met with Mr. Bell to discuss topside adjustments. See id.

      8.     The first time (in terms of the number of interviews before the statement was first made and the first date of the statement) that Mr. Kearney stated in substance that Mr. Bell invoked the name Walter Forbes in connection with topside adjustments and/or wanting EPS to be a certain number. See id.

      9.     The first time (in terms of the number of interviews before the statement was first made and the first date of the statement) that Mr. Kearney stated in substance that Cosmo Corigliano or anyone else invoked the name Walter Forbes in connection with topside adjustments and/or wanting EPS to be a certain number. See id.

      10.    The first time (in terms of the number of interviews before the statement was first made and the first date of the statement) that Mr. Kearney stated in substance that Cosmo Corigliano, Casper Sabatino, or anyone else invoked the name Walter Forbes in connection with hiding information from Ernst & Young. See id.

WILLIAMS & CONNOLLY LLP

Norman Gross, AUSA
May 27, 2005
Page 3

    11. The first time (in terms of the number of interviews before the statement was first made and the first date of the statement) that Mr. Kearney stated in substance that Cosmo Corigliano, Casper Sabatino or anyone else stated that information should not be released to Ernst & Young until Walter Forbes signed off on the press release.

    12. The total number of interviews Mr. Kearney has had with the government to date (including all interviews in preparation for and during the 2004 trial and any subsequent interviews) and the dates of all such interviews to the extent those dates have not previously been disclosed by the government.

              Sincerely,

              Barry S. Simon

# EXHIBIT 3

LAW OFFICES

## WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

BARRY S. SIMON
(202) 434-5005
bsimon@wc.com

(202) 434-5000

FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

June 13, 2005

**Via Facsimile (856-968-4917)
& First Class Mail**
Norman Gross
Assistant United States Attorney
District of New Jersey
401 Market Street, 4th Floor
Camden, NJ  08101

Re:  United States v. Forbes & Shelton, 3:02CR264 (AWT)

Dear Mr. Gross:

Pursuant to Fed. R. Crim. P. 16, Brady v. Maryland, 373 U.S. 83 (1963), United States v. Giglio, 405 U.S. 150 (1972), and United States v. Deli, 151 F.3d 938 (9th Cir. 1998), Mr. Forbes requests that the government supply the following documents and information to the extent it has not previously been produced:

1. All notes of (i) government interviews of cooperating witnesses and/or (ii) factual information received from cooperating witnesses, including, but not limited to, all notes taken by Messrs. Carney, Schecter, and/or McMahon of interviews of cooperating witnesses.

2. A list of every date on which the government interviewed or obtained factual information from each of its cooperating witnesses. See Tr. 10/16/03 at 160.

Sincerely,

*Barry S. Simon /MRZ*

Barry S. Simon

# EXHIBIT 4



**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

970 Broad Street, Suite 700       973/645-2700
Newark, NJ 07102

June 24, 2005

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901

   Re: <u>United States v. Forbes</u>, 3:02CR264 (AWT)

Dear Mr. Simon:

  The United States has received your letters dated May 17, 2005, May 27, 2005, and June 13, 2005. The United States is aware of and has complied with its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>United States v. Giglio</u>, 405 U.S. 150 (1972). The United States understands that its obligations under <u>Brady</u> and <u>Giglio</u> are ongoing, and the United States will continue to comply.

          Very truly yours,

          CHRISTOPHER J. CHRISTIE
          United States Attorney

      By: MICHAEL MARTINEZ
         Assistant U.S. Attorney

      By: CRAIG CARPENITO
         Special Assistant U.S. Attorney

# CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Memorandum in Support of Motion of Walter A. Forbes to Compel Discovery (Forbes Retrial Motion No. 3) to be served on July 14, 2005 to the following via FedEX:

Norman Gross, Esq.
U.S. Attorney's Office
District of New Jersey
401 Maret Street
Fourth Floor
Camden, NJ 08101

Michael Martinez, Esq.
Craig Carpenito, Esq.
U.S. Attorney's Office
District of New Jersey
970 Broad Street, Suite 700
Newark, NJ 07102

Barry S. Simon