UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AWT) |
| | : | |
| V. | : | August 12, 2005 |
| | : | |
| WALTER A. FORBES | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT WALTER A. FORBES' RENEWED MOTION TO PRECLUDE THE GOVERNMENT FROM PRESENTING ITS PROPOSED EXPERT TESTIMONY BECAUSE IT DOES NOT SATISFY THE RELIABILITY REQUIREMENTS OF DAUBERT AND FEDERAL RULE OF EVIDENCE 702**

(Forbes Retrial Motion *In Limine* No. 1)

CHRISTOPHER J. CHRISTIE
NORMAN GROSS
MICHAEL MARTINEZ
CRAIG CARPENITO
Special Attorneys
U. S. Department of Justice
970 Broad Street, Room 700
Newark, New Jersey 07101
Tel: (973) 645-2700
Fax: (973) 645-2857

**INTRODUCTION**

During the pre-trial phase of this case, Forbes objected to the admission of the Government's proposed expert testimony on virtually every ground that his lawyers' fertile minds could conjure, raising claims under, *inter alia*, Fed. R. Evid. 16(a)(1)(G), 702, 703, and 704, Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993), and the confrontation clause of the United States Constitution. After forcing the Court and the Government to expend many weeks on these issues, Forbes effectively conceded that he had no real challenge to the substance of the proposed expert testimony: that certain persons involved in the accounting function at CUC and CMS had engaged in a host of practices that violated GAAP and inflated the publicly reported operating income of CUC and CMS on a quarter by quarter basis for the fiscal years ending January 31, 1996, January 31, 1997, and December 31, 1997. Rather, Forbes actively embraced the Government's proof of a massive accounting fraud at CUC and Cendant, and deployed the undisputed occurrence of that fraud to challenge the credibility of Cosmo Corigliano. Once the jury was sworn, Forbes' attacks on the Government's proofs that a fraud had occurred, including the testimony of Brian Heckler, were forgotten. Forbes did not cross-examine Heckler at trial despite having deposed him for ten days during the Daubert hearing.

Forbes nevertheless renews his objection to Heckler's

testimony, raising the same claims that he unsuccessfully presented before the first trial.[1]  He declines, however, to even mention this Court's previous rulings on these claims.  Nor does he purport to meet the very high standard for obtaining reconsideration of this Court's prior ruling.  As Forbes has failed to demonstrate that Heckler's testimony should be excluded even if this Court was considering this matter for the first time, his present claims should be rejected.

Forbes also erroneously argues that Heckler's testimony: (a) improperly "vouched" for the testimony of other prosecution witnesses; and (b) was merely "cumulative" of the testimony of other witnesses.  Those contentions should also be rejected.

---

[1]  In passing, Forbes also asks the Court to preclude the testimony of the Government's other expert accounting witness, Professor Robert Sack, but Forbes offers no argument to justify such a ruling.  FM. 10.  This Court should decline to address this undeveloped claim.  See United States v. Wilson, 390 F.3d 1003, 1009 (7th Cir. 2004)(even arguments raising constitutional claims are waived when undeveloped and unsupported by pertinent legal authority), citing United States v. Holm, 326 F.3d 872, 877 (7th Cir. 2003); United States v. Cunan, 152 F.3d 29, 36 (1st Cir. 1998)(deeming "tangential arguments [that were] undeveloped" to be waived).

**ARGUMENT**

### A. Forbes has failed to satisfy the stringent requirements for reconsideration of his previous, failed challenge to Heckler's testimony.

Forbes complains in his current submission that Heckler identified three supposedly incompatible grounds for his expert opinions:

1) his own independent fact finding;

2) his evaluation of the trial testimony; and

3) assumed or stipulated facts.

Memorandum in Support of Renewed Motion of Defendant Walter A. Forbes To Preclude The Government From Presenting Its Proposed Expert Testimony Because It Does Not Satisfy The Reliability Requirements Of <u>Daubert</u> And Federal Rule Of Evidence 702 ("FM") 1-3.  Forbes presented precisely this same argument in his extensive "Post-Hearing Memorandum" in support of his motion to preclude Heckler's testimony, Docket No. 601, filed April 2, 2004, 3-10.  The Government addressed that argument in its own post-<u>Daubert</u> hearing submission, Docket No. 614, filed April 8, 2004, and Forbes then filed an extensive reply brief.  Docket No. 621, filed April 14, 2004.  Nothing in Forbes' current submission adds anything new to the parties previous debate on this issue.  Forbes' present submission is merely a thinly veiled request for reconsideration without any effort to meet the heightened standards for obtaining such extraordinary relief.  As Forbes has

3

given the Court no reason to depart from its previous ruling that Heckler's testimony was admissible, this Court should not reconsider and reverse that ruling.  See Jordan (Bermuda) Investment Co., Ltd. v. Hunter Green Investments Ltd., 2003 WL 21263544, *3 (S.D.N.Y., June 2, 2003)(denying reconsideration where the moving party "failed to meet [the applicable] standard by neither pointing to controlling decisions or data that the court overlooked nor showing that reconsideration is necessary in order to correct a clear error or prevent manifest injustice")(internal punctuation and citations omitted).

> **B. Heckler's testimony was not grounded on mutually inconsistent grounds.**

Forbes' present argument also fails on its own terms.  He claims that Heckler admitted during the Daubert hearing that he did not follow appropriate accounting standards for conducting his factual investigation, which Forbes contends were the Generally Accepted Auditing Standards ("GAAS").  FM 2.  As Heckler testified at length during the Daubert hearing, because he was not giving an audit or attest opinion about the financial statements at issue in this case, he was not required to apply GAAS procedures and standards in formulating his expert opinion.  Daubert Hearing Transcript ("DHT") 313-16, 2558-94.  Rather, his work as an expert witness was governed by the consulting standards of the AIPCA.  Id.; see also August 12, 2003 letter from Brian Heckler to John J. Carney, attached to and incorporated in

4

the August 14, 2003 Declaration of Brian Heckler, appended as Exhibit B to Government's Opposition to Forbes' Motion to Preclude Expert Testimony, Docket No. 376, filed August 18, 2003. See also Heller Healthcare Finance, Inc. v. Boyes, 2002 WL 1558340 *13-14 (N.D. Tex., July 5, 2002) (rejecting the claim that the plaintiff's expert opinion regarding compliance with GAAP was inadmissible because the expert did not perform a compilation, review, or audit of the financial statements and because he did not state an opinion, where the expert fully complied with the relevant AICPA Standards for Consulting Services); AU 625.05 (Accounting Guideline for engagements to provide expert testimony).

Because Heckler based his investigation and analysis on the AICPA standards for consulting, rather than on GAAS, Forbes contends that Heckler failed to undertake the same "intellectual rigor" required in the expert's field outside the courtroom. FM 2-3. This argument fails. As Heckler explained during the Daubert hearing, he could reliably opine that certain accounting practices undertaken at CUC violated GAAP, and had a quantitative effect on the reported income of CUC of at least a particular amount, without conducting a GAAS-compliant audit of CUC's books and records. DHT 2562-71, 2576-86, 2593-94; see also DHT 2610 (Heckler explaining that, in conducting his investigation and formulating his expert opinion, he adhered to "the same standard of intellectual rigor that's demanded of accountants in this

area"). As Heckler testified, he complied faithfully with the AICPA standards for the provision of expert testimony. DHT 2595. Forbes' contention that Heckler's opinion was inadmissible under <u>Daubert</u> and Fed. R. Evid. 702 because Heckler did not comply with the GAAS requirements for giving an audit or attest opinion is repudiated by, among others, Roman Weil, the accounting professor retained as a defense witness in this case. DHT 2603-06; Trial Transcript ("Tr.") 11265-277.

      Forbes also contends that Heckler's trial testimony that he conducted an "independent investigation" was inconsistent with his testimony during the <u>Daubert</u> hearing that his opinion was based on "assumed facts" or "hypothetical facts." FM 4-5. There was no inconsistency. As Heckler explained during the <u>Daubert</u> hearing, his use of the term "assumed facts" did not refer to stipulations of the parties or other agreements about what the facts were. DHT 2598-99. Rather, Heckler's use of the term, "assumed facts" referred to the information contained in all of the material that he reviewed in his investigation of the alleged GAAP errors at issue in this case, including the source documents of CUC, the statements of the cooperating witnesses, and information contained in the Audit Committee Report or the voluminous supporting documents for that report. DHT 2641-55, 2665-66. Heckler did not "assume" that the information contained in the source materials, such as the statements of various

witnesses to the investigators of the Cendant Audit Committee, was actually true, however. Indeed, some of that information was mutually contradictory. DHT 2667-68. At most, Heckler assumed that the documents containing the information from which Heckler drew the facts that he considered were what they purported to be.

Forbes' contention that Heckler inconsistently testified that he engaged in independent fact-finding and that he was not responsible for "finding the facts" is another red herring. Heckler testified that he was not restricted by the Government in the materials that he could consider, and that he used his training, expertise, and judgment in deciding what information to consider, and what significance it had in formulating his opinion. DHT 2641-42, 2650-53. His engagement was to render an expert opinion based on the information that he reviewed (e.g. CUC's general ledger, journal entries, internal memoranda, emails). DHT 21-23, 40-47, 59-60, 2598-99; Government Exhibit 1 for Daubert hearing. That information contained the "assumed facts" for Heckler's analysis insofar as Heckler assumed that the documents that Heckler reviewed were what they purported to be. DHT 2649. Heckler was not told by the Government, however, that he had to assume the truth of the information in the source materials, and did not do so. DHT 2650-53, 2668. As Heckler accurately explained, it was up to the jury to find the facts, and to determine, based on the adversarial process,

whether Heckler's opinion was worthy of consideration based in part on its assessment of those facts. DHT 2594, 2599.

As Heckler explained from the outset in his expert witness summary, he would consider, among other sources of data, the pre-trial proffers and trial testimony of the Government's cooperating witnesses in deciding whether the challenged accounting practices complied with GAAP. See Heckler's August 12, 2002 Project Cendant Expert Witness Testimony Summary, 1-2, Exhibit 1 to Forbes Pre-Trial Motions Nos. 21 and 48, Docket No. 274, filed June 27, 2003. Heckler testified to the same effect at the Daubert hearing, DHT 23-24, 54-55, 65-68, 236-44, and at trial. Tr. 10623, 10629-30, 10641-42, 10658. Where, as here, the testimony of a cooperating witness is subject to dispute between the parties, "the expert may assume the truth of [that] trial testimony and thereafter offer an opinion based on the substance of the testimony." United States v. Scop, 846 F.2d 135, 143 (2d Cir. 1988); Graham, Handbook of Federal Evidence, Article VII, "Opinions and Expert Testimony;" Rule 703, "Bases of Opinion Testimony by Experts," n. 18 (2005).

In deciding whether the books at CUC were "cooked," Heckler reasonably relied on sworn testimony from admitted members of the conspiracy that it was their conscious decision to do the cooking, particularly since that testimony was against the penal interest of those persons and therefore particularly

8

reliable. See United States v. Locascio, 6 F.3d 924 (2d Cir. 1993).[2] The testimony of Corigliano, Pember, Sabatino, Speaks, and Kearney that they intentionally engaged in accounting practices for which there was no basis under GAAP was information that Heckler could reasonably consider as establishing "assumed facts" of their mental states, because it shed light on whether those practices amounted to GAAP violations or could be somehow explained as in compliance with some hypothetical construction of the accounting rules.[3] Forbes, of course, was free to argue that the testimony of the conspirators on those matters was false and that Corigliano, Pember, and Sabatino had perversely pled guilty to federal felony offenses when in fact they believed that they had engaged in appropriate accounting. He could then have

---

[2] In Locasio, the Second Circuit rejected a claim that expert testimony was improperly admitted under Fed. R. Evid. 703, even though the expert there, an FBI agent, had testified about the nature and function of organized crime families based on the out-of-court statements of former criminals turned informants, and the recorded, out-of-court conversations of criminals. 6 F.3d at 938. The Second Circuit acknowledged that the statements of former mobsters to their law enforcement contacts contained "the type of information" on which the law enforcement officers traditionally relied. Id. That reliance was reasonable, even though the credibility of those former mobsters speaking in that context would be subject to reasonable challenges for reliability.

[3] Of course, Forbes never argued to the jury that such accounting practices as using merger reserves to increase revenue, treating revenue from deferred recognition programs as if it were earned by immediate recognition programs, or deliberately understating the membership cancellation reserve, all for the sake of increasing the reported operating income of the company, was appropriate under any interpretation of GAAP.

challenged Heckler's reliance on that testimony, as one may always attack an expert's opinion by showing that the data he relied upon was unreliable. See United States v. Stone, 222 F.R.D. 334, 341 (E.D.Tenn. 2004)(rejecting Confrontation Clause and Rule 703 challenges to the testimony of an expert in a prosecution for tax fraud and tax evasion prosecution against corporate officials; the expert permissibly relied on her conversations with non-testifying employees of the corporation in forming her opinions, and could be cross-examined regarding the reliability of the information imparted by those persons).[4]

That Heckler considered such "assumed facts" does not

---

[4] As the Eighth Circuit has explained:

> [O]nce expert testimony has been admitted, the rules of evidence then place the full burden of exploration of facts and assumptions underlying the testimony of an expert witness squarely on the shoulders of opposing counsel's cross-examination. It is, therefore, the burden of opposing counsel to explore and expose any weaknesses in the underpinnings of the expert's opinion.

Brennan v. Reinhart Institutional Foods, 211 F.3d 449, 451 (8th Cir. 2000)(internal citations and quotation marks omitted); accord Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 414 (3d Cir. 2002)(affirming the admission of expert testimony against a Rule 703 challenge, and noting that "[Fed. R. Evid.] 705, together with Rule 703, places the burden of exploring the facts and assumptions underlying the testimony of an expert witness on opposing counsel during cross-examination."); see also 4 Weinstein's Federal Evidence, (2d ed., 2000), § 703.06 (noting that effective cross-examination of an expert is achieved by "giving the defendant access to the hearsay information relied on by the expert"); United States v. Smith, 869 F.2d 348, 353-54 (7th Cir. 1989)(affirming the admission of expert testimony regarding voice identification, even though the expert relied on spectograms prepared by another person; the defense had access to the spectograms and recording).

mean, however, that he did not also engage in fact-finding regarding other sources of information on which his expert opinion was based. In this regard, Heckler testified about his extensive factual investigation, which included a review of numerous original source documents from Cendant's and CUC's accounting files. DHT 43-46, 52-54, 59-60, 62, 69-72, 87. See Fiataruolo v. United States, 8 F.3d 930, 942 (2d Cir. 1993) (district court properly admitted testimony of an expert witness accountant to demonstrate a violation of established accounting principles, where the witness "went through and explained in some detail" the documents that he examined; "he couched his opinion specifically 'on the evidence that I looked at and the work I did.'"). Thus, Forbes' argument that Heckler could not both consider "assumed facts" and have engaged in independent fact finding is contradicted by the record, and by logic.

Forbes himself placed no reliance during trial on any supposed inconsistency created by Heckler's Daubert hearing testimony. After convincing this Court to conduct a fifteen day pre-trial Daubert hearing, much of which was devoted to Forbes' cross-examination of Heckler, Forbes not only declined to bring this supposed inconsistency to the jury's attention during trial; he did not pose a single question to Heckler on cross-examination

11

at trial. Tr. 10668.[5]

Forbes' silence on this matter at trial was completely consistent with his trial strategy of conceding the incontestable existence and scope of the massive accounting fraud at CUC for many years while Forbes was the CEO and Chairman of the Board of Directors, but blaming all of the fraudulent activity on Cosmo Corigliano and his subordinates in the CUC Accounting Department. Tr. 88-100 (Sullivan opening statement).[6] This aspect of Forbes' argument again fails on its own terms.

### C. Forbes' other challenges to Heckler's testimony should be rejected.

---

[5] Forbes' trial strategy to effectively concede the accuracy of Heckler's opinions was at odds with his counsel's statement during the Daubert hearing that the defense needed several months to prepare for cross-examination of Heckler during that hearing because his opinions pertained to "a critical matter in this case." DHT 327.

[6] Forbes predictably blames the Government for his own strategic decisions to neither cross-examine Heckler nor to present expert testimony of his own (which Forbes had previously deployed during the Daubert hearing, DHT 2359, 2475). He contends that Heckler's supposedly shifting grounds for his expert testimony made it "impossible for the defense to prepare or conduct an adequate cross-examination" of Heckler. FM 9. To the contrary, any supposed inconsistencies in Heckler's various statements about the basis for his opinions would have abetted Forbes' opportunity to challenge the credibility of Heckler's conclusions. Fed. R. Evid. 613(a)(permitting examination of a witness concerning a prior statement); 613(b)(limiting extrinsic evidence of a prior inconsistent statement of a witness); see generally United States v. Strother, 49 F.3d 869, 874-76 (2d Cir. 1995). His protestations to the contrary notwithstanding, Forbes declined to challenge Heckler's conclusions precisely because they were more useful than damaging to Forbes' defense theory.

Forbes also contends that Heckler should be precluded from testifying that he conducted his own factual investigation in this case, because no such investigation occurred. This assertion simply ignores Heckler's <u>Daubert</u> hearing testimony and his written affirmation submitted in opposition to defense motions to preclude Heckler's expert testimony. They demonstrate that Heckler and his team of supporting CPAs conducted a thorough investigation of CUC's challenged accounting practices that are at issue in this case.[7]

Forbes misconstrues the prohibited practice of "vouching" when he claims that Heckler implicitly vouched for the credibility of the Government's cooperating witnesses because he

---

[7] Although Forbes insists that Heckler merely "adopted" the findings of the Audit Committee report, Heckler testified that he did no such thing. DHT 52-54. Although Heckler carefully read and considered the report as important background information for his own work, <u>id.</u>, he undertook substantial independent investigation and analysis beyond his consideration of the report. Thus, in connection with his analysis of the various improper accounting practices undertaken by the conspirators, Heckler engaged in substantial investigation and analysis beyond his consideration of the Audit Committee Report, Arthur Andersen's work papers, and the documents reviewed by the Arthur Andersen accountants. <u>E.g.</u>, DHT 80-117 (investigation and analysis of improper topside adjustments); DHT 118-55 (analysis of improper allocations of revenue and expenses between immediate and deferred programs); DHT 157-75 (analysis of understated and underfunded cancellation reserve); DHT 176-182, 200-25 (analysis of failure to timely record "rejects-in-transit"); DHT 226-84 (analysis for improper use of merger reserves); DHT 286-302 (analysis of other accounting errors regarding commission payable, deferred tax asset, and deferred marketing expenses). Forbes' present contention that Heckler did no independent analysis of the existing data simply ignores the record.

testified that he considered their trial testimony in formulating their opinions. FM 7-8. Improper vouching is a species of improper argument by counsel, which suggests that the lawyer has "inside information," not presented to the jury, which supports the credibility of a witness. United States v. Newton, 369 F.3d 659, 681 (2d Cir. 2004)(citing cases).[8] Heckler was a witness rather than a lawyer in this case. Additionally, he neither testified that he believed that the testimony of any of the cooperators was credible, nor suggested that he had undisclosed "inside information" bearing on their credibility. Rather, he explained that the testimony of the cooperators was "helpful" to the formulation of his conclusions, Tr. 10651-52, or "confirmed" his own determinations. Tr. 10629-30. Forbes tellingly cites no authority for the proposition that expert testimony is inadmissible because other evidence in the case is consistent

---

[8] Although an expert witness may not testify that he affirmatively concluded that the testimony of another witness was credible, Scop, 846 F.2d at 143, Heckler never tendered such an opinion in this case. See United States v. Collins, 78 F.3d 1021, 1037 (6th Cir. 1996)(expert did not impermissibly opine on the credibility of other prosecution witnesses when he tendered an opinion that was based on lengthy hypothetical questions that were consistent with the testimony of those other witnesses). Rather, his opinions were based on the assumption that the cooperator's testimony was truthful; to the extent that the Government failed to otherwise convince the jurors that the cooperator testimony was truthful, the defendants could attack the reliability of Heckler's testimony on that ground. As shown above, during the first trial, Forbes elected not to do so.

with the expert's conclusions.[9]

Forbes also complains because Heckler provided "no record evidence" to support his conclusions about quantitative effects of certain improper accounting practices on the company's reported earnings. FM 6-7. Forbes paradoxically contends that the jury "had no choice" but to accept Heckler's conclusion because Heckler supposedly failed to provide sufficient support for those conclusions. FM 6. As a consequence of the extensive Daubert hearing, on top of the substantial pre-trial documentary discovery provided to Forbes regarding Heckler's testimony, Forbes had every opportunity to challenge the accuracy of Heckler's quantitative conclusions regarding the effect of the fraudulent accounting practices on CUC's and Cendant's reported income. Forbes declined to mount any such challenge. Expert testimony is not inadmissible, as Forbes would have it, merely because the expert does not painstakingly present to the jury his "work product" which supports his conclusions. To the contrary, Fed. R. Evid. 705 "allows an expert to state an opinion without

---

[9] If that were the case, a medical examiner could never opine in a murder prosecution that the cause of death was homicide whenever an eyewitness testified that he saw the defendant kill the victim. Such is clearly not the rule, however. Cf. Williams v. State, 710 So.2d 1276, 1326-27 (Ala.Crim.App. 1996)(in a murder prosecution, the trial court properly admitted, over a challenge that the evidence was cumulative and prejudicial, photographs of the bodies of the four victims, and the testimony of a pathologist concerning the causes of death).

disclosing the basis for it." Scop, 846 F.2d at 142. The Government's decision not to elicit Heckler's complicated work product for the jury went only to the weight that the jury would attribute to Heckler's conclusions, not its admissibility.

Finally, Forbes seeks the exclusion of Heckler's testimony on the ground that it was supposedly "cumulative, unnecessary and prejudicial." FM 10. Forbes contends that Heckler's testimony was unnecessary to establish the occurrence of the CUC and Cendant GAAP violations and the quantitative effects of those violations on the companies' publicly reported results, because other witnesses had already established those facts.

Forbes is once again improperly seeking to have it both ways, and place the Government in an untenable double bind. Forbes has argued that the Government is required to prove the GAAP violations alleged in the indictment, <u>and</u> that non-expert witnesses, even those who are CPAs, are not permitted to opine on whether or not CUC's and Cendant's accounting practices violated GAAP. See, e.g., Forbes Motion in Limine No. 1 (Motion to Preclude Improper Lay Opinion Testimony) at 7-8, Docket No. 594, filed April 2, 2004; Forbes Trial Motion No. 21 (Motion for Mistrial Based on Undisclosed Expert Testimony by Cosmo Corigliano), Docket No. 955, filed July 21, 2005. Forbes should not be heard to inconsistently contend that the Government **must**

**prove** the GAAP violations through expert testimony, and that the Government **may not prove** such violations through expert testimony because of the existence of supposedly "cumulative" testimony of non-experts on this subject.

**CONCLUSION**

For the foregoing reasons, in addition to the reasons set forth in the Government's previous written submissions in opposition to Forbes' prior attempts to exclude or limit the testimony of Mr. Heckler, the Government respectfully requests that this Court deny Forbes' current motion to preclude or limit that testimony.

                Respectfully submitted,

                CHRISTOPHER J. CHRISTIE
                Special Attorney
                U.S. Department of Justice

                /s/ Norman Gross

                NORMAN GROSS
                MICHAEL MARTINEZ
                CRAIG CARPENITO
                Special Attorneys
                U.S. Department of Justice

Dated: August 12, 2005
Newark, New Jersey

CERTIFICATE OF SERVICE

      The undersigned certifies that on this day I caused to be served copies of the foregoing upon the following via email and United States Mail:

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901
(202) 434-5005


                                    /s/ Lynda Powers
                                    LYNDA POWERS
                                    U.S. Department of Justice

Dated: August 12, 2005
       Camden, New Jersey