**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **No. 3:02CR00264 (AWT)** |
| | : | |
| | : | |
| **v.** | : | **August 12, 2005** |
| | : | |
| | : | |
| | : | |
| **WALTER A. FORBES** | : | |

# GOVERNMENT'S OPPOSITION TO DEFENDANT WALTER A. FORBES' MOTION (1) FOR A BILL OF PARTICULARS AND (2) TO LIMIT THE EVIDENCE PRESENTED AT TRIAL TO THE CHARGES IN THE INDICTMENT

**(Forbes Retrial Motion No. 2)**

**CHRISTOPHER J. CHRISTIE**
**NORMAN GROSS**
**MICHAEL MARTINEZ**
**CRAIG CARPENITO**
**Special Attorneys**
**U. S. Department of Justice**
**970 Broad Street, Room 700**
**Newark, New Jersey 07101**
**Tel: (973) 645-2700**
**Fax: (973) 645-2857**

## INTRODUCTION

The indictment in this case charged a conspiracy that began as early as the late 1980's and continued until April 1998. Indictment, Count 1, ¶ 17. As Forbes acknowledges, Memorandum in Support of Motion of Defendant Walter A. Forbes (1) For a Bill of Particulars and (2) to Limit the Evidence Presented at Trial to the Charges in the Indictment ("FM") 5-8, the Government presented substantial evidence regarding the accounting fraud at CUC as it was effectuated before February, 1995. As explained in the Government's pending motion *in limine* (Government's Pre-Retrial Motion No. 1), depending on the Court's ruling on that motion, the Government's presentation at the retrial may be substantially shorter than its presentation during the initial trial.

Before the initial trial, this Court denied Forbes' repeated requests for bills of particulars. Forbes nevertheless contends that he is still so uncertain about what evidence the Government will present at the retrial about the pre-1995 fraudulent activity at CUC that he needs a bill of particulars to explicate that supposedly unknown evidence. Not surprisingly, Forbes fails to cite a single case which holds that a bill of particulars, the purpose of which is to provide greater notice of the Government's proofs than is contained in the indictment,[1] is

---

[1] The proper scope and function of a bill of particulars is to furnish facts, in addition to those alleged in the indictment, (continued...)

ever required after the Government presents its entire case, including summations, but the jury fails to reach a verdict and a mistrial is declared. This Court should decline to break new ground in this area, and reiterate its prior rulings that Forbes does not need a bill of particulars in order to defend himself against these charges, particularly during a retrial.

## ARGUMENT

**A. Given this Court's proper conclusion that Forbes was not entitled to a bill of particulars before the first trial, his request for such a bill after learning the Government's entire case during that eight month initial trial should be rejected.**

Before the first trial, this Court denied Forbes' repeated requests for a bill of particulars, including those requests directed to the Government's evidence of the fraudulent practices that were carried out before 1995. Forbes' Motion for a Bill of Particulars, Docket No. 185; Forbes' Supplemental

---

[1](...continued) which are necessary to advise a defendant of the charges against him so that he can prepare his defense, avoid unfair surprise, and plead double jeopardy as a bar to any subsequent prosecution for the same offense. United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990); United States v. Davidoff, 845 F.2d 1151, 1154 (2d Cir. 1988). Therefore, "[a] bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Urso, 369 F.Supp.2d 254, 271 (E.D.N.Y.,2005); United States v. Schlesinger, 360 F.Supp.2d 512, 525 (E.D.N.Y. 2005). The test is whether the information sought in a bill of particulars is necessary to accomplish the purposes described above, not whether the information sought would be merely helpful. United States v. Bernard, 1998 WL 241205 at *1 (D. Conn., April 2, 1998); United States v. Young & Rubicam, Inc., 741 F.Supp. 334, 349 (D. Conn. 1990).

Motion for a Bill of Particulars, Docket No. 480. As Forbes concedes, FM 5-8, he learned about the Government's evidence pertaining to the execution of the fraud at CUC during the period predating February 1995 when it was presented during the initial trial. If a bill of particulars was properly denied before the initial trial, the Government's disclosures during trial render Forbes' renewed request particularly baseless. See United States v. Crouse, 227 F.R.D. 36, 40-41 (N.D.N.Y. 2005)("where the information sought is provided in the indictment or in some acceptable alternate form, no bill of particulars is required"); United States v. Moran, 349 F.Supp.2d 425, 470-471 (N.D.N.Y. 2005)(denying a motion for a bill of particulars where the pre-trial motions and exhibits thereto were "replete with the details of the alleged acts of . . . the co-conspirators in furtherance of the alleged conspiracy").

Forbes nevertheless contends that he is entitled to a bill of particulars which identifies any evidence pertaining to that time period which the Government may present during the retrial that was not presented during the initial trial. This is an insufficient basis for a bill of particulars, particularly after a lengthy trial has already taken place. United States v. Chen, 378 F.3d 151, 162-163 (2d Cir. 2004) (affirming the denial of a request for a bill of particulars that identified the (1) date and place of the extensions of credit alleged in the indictment; (2) date and place in which the defendants threatened

the victims; and (3) specific acts of threats and violence, and other criminal means at issue); United States v. Butler, 351 F.Supp.2d 121, 133 -134 (S.D.N.Y. 2004)(denying a motion for a bill of particulars simply because the indictment did not "specify the nature, time, and place of every overt act the defendant or others committed in furtherance of the alleged conspiracy, or to set forth all the evidence the Government intends to introduce . . . . [which are] the very sorts of information with respect to which courts routinely deny requests for particularization). The "acquisition of evidentiary detail is not the function of the bill of particulars." United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990); United States v. RW Professional Leasing Services Corp., 317 F.Supp.2d 167, 180 (E.D.N.Y. 2004)("the proper scope and function of a bill of particulars is not to obtain disclosure of evidence or witnesses to be offered by the Government at trial"). A bill of particulars is not a general investigative tool for the defense, United States v. Salazar, 485 F.2d 1272, 1278 (2d Cir. 1973); United States v. Stroh, 2000 WL 1833397 at *6 (D.Conn., Nov. 3, 2000); United States v. Mannino, 480 F.Supp. 1182, 1185 (S.D.N.Y. 1979), nor is it a device to compel disclosure of the government's evidence prior to trial. See United States v. Gottlieb, 493 F.2d 987, 994 (2d Cir. 1974); United States v. Lebron, 222 F.2d 531, 535-36 (2d Cir. 1955). Rather, it is designed to give the defendant only that minimum amount of

information necessary to permit him to conduct his own investigation. United States v. Coffey, 361 F.Supp.2d 102, 121-122 (E.D.N.Y. 2005) (denying a particulars request for information that "might be useful or helpful" to the defense; Fed.R.Crim.P. 7(f) does not contemplate "wide-sweeping and burdensome discovery").

Given the substantial evidence already presented regarding the pre-February 1995 fraudulent activity, any additional evidence that the Government might present during the retrial would merely be icing on a cake that Forbes has already had ample opportunity to digest. Chen, 378 F.3d at 162-63 (affirming the denial of a bill of particulars where the indictment described the nature and timing of criminal acts; the government provided extensive discovery, and the government "distilled its case even further" during oral arguments in the case); United States v. Barnes, 158 F.3d 662, 665-66 (2d Cir. 1998)(district court did not abuse discretion in denying a request for a bill of particulars after finding that the Government had provided defense with extensive additional material regarding the case).[2] It is hard to imagine more

---

[2] Accord, Coffey, 361 F.Supp.2d at 121-22 (denying a bill of particulars where the indictment and discovery were sufficient to permit the defendants to avoid surprise and prepare for trial); United States v. RW Professional Leasing Services Corp., 317 F.Supp.2d 167, 180 (E.D.N.Y. 2004)(denying a motion for a bill of particulars where "the Government supplied a letter to the defendants . . . outlining the specific fraudulent loans that (continued...)

extensive discovery than has already occurred here, after the Government presented its case in a very protracted trial.

**B. Forbes' alternative remedy, to restrict the Government's presentation of evidence during the retrial, should be rejected.**

Forbes alternatively asks this Court to preclude the Government from presenting any "testimony, document, or argument" at the retrial regarding the pre-February 1995 fraudulent activities that was not presented at the first trial. FM 3. Forbes is not entitled to such drastic relief as an alternative to a bill of particulars, because even when a bill of particulars is produced, the defendant may not rely on the bill to unduly limit the Government's trial proofs and arguments. Butler, 351 F.Supp.2d at 133-134 ("Rule 7(f) does not require . . . disclosure to be, in effect, hard-wired into the indictment as a limitation on what the government may prove or argue at trial").[3]

---

[2](...continued)
it intends to refer to at the trial."). Extensive disclosure of documents and testimony can be such an acceptable alternate form. United States v. Blumberg, 1998 WL 136174 at *3-4 (D.Conn., March 11, 1998); see United States v. Beech-Nut Nutrition Corp., 659 F.Supp. 1487, 1499-1500 (E.D.N.Y. 1987) (government's production of 30,000 pages in discovery "must have answered a great many, if not all, of defendants' requests" for bills of particulars); United States v. Rigas, 258 F.Supp.2d 299, 303-05 (S.D.N.Y. 2003) (denying a motion for a bill of particulars in a complex corporate fraud case where discovery and other information adequately notified defendants of charges).

[3] Accord, United States v. Baez, 62 F.Supp.2d 557, 559 (D.Conn. 1999)(a motion for a bill of particulars is properly denied where it would "unduly restrict the Government's ability (continued...)

Were the Court to prevent the Government from offering any new evidence or making any new argument during the retrial, however, the Court would inevitably become embroiled with defense challenges that particular testimony or arguments differed, however slightly, from testimony or arguments presented at the first trial. Forbes cites no authority for his contention that the Government should be restricted in a retrial to merely mimic its presentation from the initial trial. Cf. Moore v. Garraghty, 739 F.Supp. 285, 289 (E.D.Va. 1990)(after a conviction for premeditated murder was reversed on appeal, the prosecution permissibly elected to proceed on a theory of felony-murder during the retrial, where the indictment and the transcript of the first trial gave the defendant adequate notice of the evidence that would support such a theory of liability).

Additionally, Forbes is unlikely to agree that, during the retrial, he is limited to presenting only evidence and argument he presented at the initial trial, and the Government must be free to respond to any new defense evidence or arguments

---

[3](...continued) to present its case"); United States v. Young & Rubicam, Inc., 741 F.Supp. 334, 349 (D.Conn. 1990) (a bill of particulars is not intended to unduly restrict the government's presentation of its proof at trial); United States v. Rigas, 258 F.Supp.2d at 304 (a bill of particulars is not meant to "lock Government into its proof"); United States v. Jimenez, 824 F.Supp. 351, 363 (S.D.N.Y. 1993)(a bill of particulars cannot be used to compel the Government "to give a preview of its evidence and legal theories lest the defendant tailor his testimony to explain away the Government's case").

with appropriate rebuttal evidence and arguments.[4]

Forbes also resurrects his failed arguments that he presented during the initial trial that the admission of any evidence about the alleged misuse of any general reserves, merger reserves other than the Ideon and Cendant reserves, and profit-sharing receivables creates a constructive amendment of the indictment. Contrary to Forbes' contention, the indictment did not restrict the fraudulent use of merger reserves to the Ideon and Cendant mergers, established in 1996 and 1997 respectively. Rather, it alleged that "[f]rom at least as early as the late 1980's to in or about 1998, [the conspirators] established excessive merger reserves and then drew upon them to fraudulently inflate the reported operating income of CUC and Cendant. Indictment, Count 1, ¶ 30. After describing how the conspirators fraudulently manipulated the Ideon and Cendant merger reserves to increase CUC's and Cendant's publicly reported income, the indictment alleged that the conspirators, "by the above means,"

> fraudulently caused: a) **the operating income CUC reported for many of its fiscal years from in or about the late 1980's through January 31, 1995 to be overstated by millions of dollars**; b) the operating income CUC reported for its fiscal year ending January

[4] At present, the prosecution team is not aware of any documents regarding the pre-1995 fraudulent activities that were not introduced into evidence during the initial trial and that the Government intends to present during the retrial. The Government will promptly supplement its exhibit list if it intends to offer any documents that were not presented during the first trial.

> 31, 1996 to be overstated by approximately $10 million; c) the operating income CUC reported for its fiscal year ending January 31, 1997 to be overstated by approximately $23 million; and d) the CMS operating income that Cendant reported for its fiscal year ending December 31, 1997 to be overstated by at least $110 million.

Indictment, Count 1, ¶43 (emphasis added). Although the indictment provided detail about the quantitative effect of the conspirators' manipulation of the Ideon and Cendant merger reserves, it also clearly alleged that the conspirators had manipulated other merger reserves by the same "means." Id.

In support of this claim, Forbes expressly relies on his unsuccessful Trial Motion No. 20 (Docket No. 953, filed July 21, 2004), which this Court previously denied (see Docket entry for October 5, 2004). This claim is therefore effectively a motion for reconsideration of the denial of Forbes' Trial Motion No. 20, even if not denominated as such, and therefore should be treated as such. See United States v. Berger, 2002 WL 273114, *1 (S.D.N.Y., Feb. 26, 2002)(denying a motion to dismiss which "effectively asks for reconsideration of an argument that the Court thoroughly considered and rejected when it ruled on" a prior motion seeking the same relief, where the defendant had failed "to demonstrate controlling law or factual matters which the court overlooked and that might reasonably be expected to alter" the prior disposition). Forbes has failed to even attempt to demonstrate that he is entitled to relief by way of

reconsideration. See Jordan (Bermuda) Investment Co., Ltd. v. Hunter Green Investments Ltd., 2003 WL 21263544, *3 (S.D.N.Y., June 2, 2003)(denying reconsideration where the moving party "failed to meet [the applicable] standard by neither pointing to controlling decisions or data that the court overlooked nor showing that reconsideration is necessary in order to correct a clear error or prevent manifest injustice")(internal punctuation and citations omitted). Accordingly, this Court should again reject Forbes' efforts to unduly restrict the Government's trial evidence by resort to claims of constructive amendment and variance.

Forbes contends that the Government should be estopped from presenting evidence about fraudulent transactions which predate 1995 because the Government supposedly represented that it would not present such evidence during oral argument on Forbes' initial motion for a bill of particulars. FM 8-9. The record belies this claim. The Government explained during the oral argument that it had compiled for the defense all of the CUC accounting department documents available to the Government that proved the fraudulent transactions from 1995 onward. It also explained, however, that it would present evidence of the pre-1995 fraud without use of the kinds of "specific fraudulent accounting entries" in the books and records of CUC regarding post-1995 fraudulent activities, because those records were not

available. Accordingly, the Government accurately represented that it would present evidence through the testimony of Corigliano, including evidence of Corigliano's use of "cheat sheets," to demonstrate the existence of pre-1995 fraudulent transactions.[5] In any event, after obtaining the most thorough

---

[5] As the Government explained during the October 13, 2003 argument on the bill of particulars:

Mr. McMahon:

> Now, as the defense points out, the transactions in that compilation are limited to the period from 1995 to 1998. And what they should know is that **in terms of specific fraudulent accounting entries or transactions, the case is going to be limited, the trial will be limited to 1995 to 1998.**
>
> That doesn't mean, though, that the conspiracy started in 1995. As the Indictment alleges, and as the defense is on notice, the conspiracy started much, much sooner. And there will be references during the trial to earlier incidents in the conspiracy.
>
> For example, Mr. Corigliano will testify about what's called a cheat sheet. . . . A cheat sheet was a one page document, and there are many versions of it over time and we've recovered a few of them, on which Mr. Corigliano kept track of how much merger reserve and other money he had that he could later shift into revenue or reduce expenses.
>
> It basically, in one sentence, it is a summary of the fraud where the fraud stands now and the opportunities for fraud in the future so that CUC could reach its desired earnings per share result each quarter. And Mr. Corigliano -- we will offer into evidence a cheat sheet from the early '90s, prior to 1995.
>
> So there will be some references to the conspiracy starting earlier than the first transaction in that book. **But in terms of specific accounting entries, everything is in that book.**

(continued...)

possible bill of particulars, in the form of a lengthy transcript, Forbes should not be heard to complain at this stage that the Government's presentation of evidence regarding the pre-1995 fraud should be restricted because of insufficient disclosure.

---

[5](...continued)
Tr. 10/13/03, 132-34 (emphasis added).

Later in the argument, the Government elaborated on the distinction between fraudulent activities from 1995 forward, for which the Government had produced accounting records, and pre-1995 fraud. The Government expressly reserved the right to supplement its disclosures with documents pertaining to the pre-1995 fraud as they became available:

Mr. McMahon:

> As I understand it, the evidence of both defendants' involvement in the conspiracy prior to 1995 is going to consist of their -- discussion of their involvement in the general fraudulent accounting practices that are identified in the Indictment.
>
> So for example, just pick an example, and I'm making one up here, Cosmo Corigliano might testify, Well, Kirk Shelton and I talked about the fraudulent use of merger reserves prior to 1995.
>
> However, we are not, in connection with that testimony or that evidence, going to talk about **specific fraudulent accounting entries or present evidence of specific fraudulent accounting entries.**
>
> If over the course of preparing for trial we do that, and we change our minds, we will update this letter to alert the defense, yes, we're going to talk about entry X on the books that, you know, dated December 20, 1994, for example. And we'll provide -- or point out similar documents to those that we provided in the compilation. So they will have that information.

Tr. 10/13/03, 148 (emphasis added).

Forbes also contends, FM 9, that the Government should be bound by its disclosure letters of December 31, 2002 and May, 2003, but neither of those letters remotely suggests that the Government would not present evidence of the pre-1995 fraud. To the contrary, those letters made clear that the Government's identification of specific fraudulent items in CUC's public filings was not intended to be, and could not be treated as comprehensive.[6]

Forbes complains that it is hard to defend against testimony about the pre-1995 fraud because CUC destroyed many of the documents pertaining to its accounting during that period. He cites no authority for the proposition that highly relevant inculpatory evidence may be excluded merely because it is difficult to refute. Forbes does not claim, for instance, that

---

[6] Indeed, the December 31, 2002 letter sets forth the following caveat at its outset:

> The purpose of this letter is to provide you with additional detail concerning the allegations in the superseding indictment. The information contained herein, and in the enclosed exhibits, should not be construed as a bill of particulars and does not in any way limit the Government's ability to offer additional evidence at trial. We reserve the right to supplement this information as the case progresses.

December 31, 2002 letter from DOJ Special Attorney John Carney to Barry Simon and Paul Engelmayer (Exhibit A hereto).

The May 30, 2003 letter likewise notified defense counsel that its purpose was merely to "supplement the Government's letter of December 31, 2002 concerning specific false statements alleged to have been made by CUC and Cendant." May 30, 2003 letter from Carney to Simon and Engelmayer (Exhibit B hereto).

the Government bears any responsibility for the destruction of documents at CUC, and indeed, as CEO of CUC at that time, Forbes had more authority than anyone to prevent that destruction. Cf. United States v. Valenzuela-Bernal, 458 U.S. 858 (1982)(defendant was not entitled to relief on account of the Government's deportation of witnesses who would have allegedly exculpated the defendant).

Forbes also contends that Corigliano's testimony about the fraudulent conduct at CUC before 1995 was contradicted by two other witnesses. Once again, relevant inculpatory testimony is not rendered inadmissible merely because it is contradicted by other evidence.[7] Contradictions between witnesses are matters for the jury to resolve, and are not a basis for exclusion of evidence. See United States v. Ervasti, 201 F.3d 1029, 1037 (8th Cir. 2000) ("It is the jury's job to judge the credibility of witnesses, and to resolve contradictions in the evidence.") (quoting United States v. Ireland, 62 F.3d 227, 230 (8th Cir. 1995)); cf. Walters v. McCormick, 122 F.3d 1172, 1175 (9th Cir.1997) (allowing a four-year-old to testify at trial; any inconsistencies in her prior accounts went to the weight, not the admissibility, of the testimony).

---

[7] Contrary to Forbes' contention that Thomas Albright repudiated Corigliano's testimony about the misuse of merger reserves at Essex, Albright testified that there were no legitimate business reasons to increase the reserves in the manner that Corigliano and Bell requested. Tr. 3891.

**CONCLUSION**

For all of the foregoing reasons, as well as the reasons set forth in the Government's previous written and oral submissions regarding Forbes' prior motions for a bill of particulars and for a mistrial based on an alleged constructive amendment of the indictment, the Government respectfully requests that Forbes' motion for a bill of particulars and to limit the Government's evidence at trial be denied.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
Special Attorney
U.S. Department of Justice

/s/ Norman Gross

NORMAN GROSS
MICHAEL MARTINEZ
CRAIG CARPENITO
Special Attorneys
U.S. Department of Justice

Dated: August 12, 2005
Newark, New Jersey

**EXHIBIT A**

**EXHIBIT B**

CERTIFICATE OF SERVICE

The undersigned certifies that on this day I caused to be served copies of the foregoing upon the following via email and United States Mail:

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901
(202) 434-5005

/s/ Lynda Powers
LYNDA POWERS
U.S. Department of Justice

Dated: August 12, 2005
Camden, New Jersey