UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AWT) |
| | : | |
| | : | |
| v. | : | August 12, 2005 |
| | : | |
| | : | |
| | : | |
| WALTER A. FORBES | : | |



GOVERNMENT'S OPPOSITION TO DEFENDANT WALTER A. FORBES' MOTION TO
COMPEL DISCOVERY

(Forbes Retrial Motion No. 3)

CHRISTOPHER J. CHRISTIE
NORMAN GROSS
MICHAEL MARTINEZ
CRAIG CARPENITO
Special Attorneys
U. S. Department of Justice
970 Broad Street, Room 700
Newark, New Jersey 07101
Tel: (973) 645-2700
Fax: (973) 645-2857

**INTRODUCTION**

Depending on the Court's ruling on the Government's most recent Motion in Limine (Government Pre-Retrial Motion 1), the Government's presentation during the retrial is likely to be more abbreviated, based on fewer counts and fewer witnesses, than its presentation in the initial trial. Even though Forbes has already received far more discovery than is required by the Rules of Criminal Procedure and the Constitution,[1] and has learned every detail of the Government's case, which was laid bare during

---

[1] As the Court is well aware from the previous and extensive discovery proceedings in this case, Forbes has received a virtual mountain of discovery, including: (1) the 47-page superseding indictment which lays out in significant detail the conspiracy, its goals, and the manner in which it was carried out; (2) a 260-page report, describing the fraud in detail, which was prepared in August 1998 by counsel for the Audit Committee of Cendant's Board of Directors; (3) 120 binders of workpapers prepared by the Audit Committee's accounting firm; (4) 12 binders of memoranda of interviews of 81 Cendant, CUC and HFS employees, directors and auditors; (5) more than 3000 pages of attorney and agent notes of interviews of approximately 86 people; (6) more than 3 million documents obtained pursuant to Rule 17(c) subpoenas; (7) more than 1 million documents and approximately 200 deposition transcripts obtained from related civil cases; and (8) summaries of expert testimony, along with all corresponding drafts, workpapers and correspondence. See Tr. 12/17/03, 299–300 (acknowledgment of Forbes' counsel that "there are 3 million documents in the case" that the defense had received, but complaining that the defense had not received a particular summary on which Brian Heckler had relied).

The Government also provided the defense in December of 2002 with a compilation which identifies all relevant false or fraudulent accounting entries and all relevant false statements. In addition to the Ideon and Cendant merger reserves identified in the indictment, the Government's compilation identifies five other merger or acquisition reserves that were excessive, as evidenced by the fact that they were used to inflate revenue or reduce expenses fraudulently.

the eight month trial last year, he continues to seek additional information from the Government.

Thus, Forbes continues to insist that he is entitled to a virtually verbatim account, as well as the dates and times, of all meetings and other communications between any Government official and the Government's cooperating witnesses.  As the Government previously explained in response to Forbes' prior discovery motions in this case, although the law requires disclosure of information that is material to the defense, it does not require, as Forbes would have it, everything that the Government's representatives know about what the prosecution witnesses ever said that might be relevant to this case.[2]

Forbes identifies several laundry lists of documents to

---

[2]  Forbes purports to justify his request for extraordinary discovery with the assertion that the Government's case against him is "weak," and based solely on the supposedly suspect testimony of an accomplice, Cosmo Corigliano.  Memorandum in Support of Motion of Defendant Walter A. Forbes to Compel Discovery ("FM") 5.  As the Court will recall, Corigliano was not the only witness who provided inculpatory testimony against Forbes.  In any event, the "testimony of a single accomplice is sufficient to sustain a conviction so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt."  United States v. Hamilton, 334 F.3d 170, 179 (2d Cir. 2003)(internal punctuation omitted).

Acknowledging that Corigliano's allegations against Forbes were corroborated at the first trial by Kevin Kearney, Forbes also makes gratuitous attacks against Kevin Kearney in this motion.  Kearney, however, was never charged criminally for his relatively low-level participation in the conspiracy, and the SEC civil lawsuit against him had been concluded well before he testified in this case.  Tr. 9853-56.  Thus, he had no incentive to curry favor with the Government when he testified.

which he claims entitlement.  FM 7, 10, 11-12.  To the extent

that Forbes is entitled to the production of any of these

documents from the Government, they have already been provided.

Accordingly, this motion should be denied.

### ARGUMENT

**A. The Government has turned over all information known to the prosecution team regarding any supposed "side agreements" between Corigliano and any federal agency.**

During the first trial, Forbes was permitted to cross-

examine Corigliano at length regarding supposed "side deals"

between Corigliano and the SEC regarding: the fact that

Corigliano's real property in Old Saybrook was recorded on the

township's property records as two separate parcels rather than

one, Tr. 8161-78, 8502-10, 9347-57; Corigliano's payment of

retainers to his lawyers and to his wife's lawyers, Tr. 8109-11,

9365-78; and Corigliano's payment of his family's expenses under

a settlement agreement he had reached with the SEC, Tr. 7990,

7996, 8071-80, 8096-8103, 9393-9411.  Nevertheless, Forbes

contends that the evidence from the first trial "suggested" the

existence of additional supposed undisclosed "oral side

agreements" between Corigliano and the Government.  FM 2.  As SEC

lawyer David Frohlich testified at the initial trial, however,

there were no side agreements between the SEC and Corigliano.

Tr. 13600-02.  Additionally, Corigliano's payment of retainers to

his attorneys and his wife's attorneys, and his payment of his

3

living expenses with assets that were later surrendered to the

SEC were not inconsistent with Corigliano's written settlement

with the SEC, which was fully disclosed to the defense.  Tr.

13603-07.  The fact that Corigliano made those payments does not

establish that he and the SEC had entered into undisclosed oral

agreements that he could do so, or that the Government failed to

disclose material impeachment information.  See Shabazz v. Artuz,

336 F.3d 154, 163-65 (2d Cir. 2003) (prosecution did not violate

its disclosure obligations; the fact that cooperating witnesses

sought and received sentencing leniency for their cooperation did

not contradict the prosecutor's testimony that he did not promise

to recommend such leniency).

Forbes nevertheless claims that the Government

belatedly turned over information regarding such supposed "side

agreements" in advance of the first trial, and demands disclosure

of additional information regarding any such agreements.  FM 7-8.

To the contrary, before the first trial, the Government turned

over sufficient information regarding any agreements between the

prosecution and Corigliano.[3]

Forbes' present claim is nothing more than speculation

---

[3]  The Government produced plea agreements, cooperation
agreements, non-prosecution letters, and proffer agreements for
the Government's witnesses in December 2002 pursuant to paragraph
A(10) of the District's Standing Order on Discovery.  The
Government will continue to produce any evidence that arises
regarding the terms of its agreements with its witnesses or
benefits it provides, or promises to provide, to its witnesses.

4

that the Government <u>must</u> have undisclosed information regarding
supposed oral side agreements.  The Government did not disclose
before the first trial Corigliano's payment of a retainer to his
lawyers because the members of the prosecution team were
personally ignorant of those retainers before Forbes raised them
at trial.  <u>E.g.</u>, Tr. 9126-27, 9625-28 (representation of DOJ
Special Attorney Carney regarding Corigliano's pre-paid legal
fees).

Corigliano's titled interest in his real property was a
matter of public record, and his use of assets subsequently
disgorged to the SEC to pay his personal expenses was disclosed
to the defense via Corigliano's quarterly budget statements to
the SEC.  "<u>Brady</u> cannot be violated if the defendants had actual
knowledge of the relevant information or if the documents are
part of public records and 'defense counsel should know of them
and fails to obtain them because of lack of diligence in his own
investigation.'"  <u>United States v. Zagari</u>, 111 F.3d 307, 320 (2d
Cir.1997) (quoting <u>United States v. Payne</u>, 63 F.3d 1200, 1209 (2d
Cir.1995)), <u>Yu v. United States</u>, 1998 WL 160964, *6 (S.D.N.Y.,
April 7, 1998).  Additionally, as the Government explained in
opposition to Forbes' Mistrial Motion based on Corigliano's
supposed perjury regarding those matters (Docket No. 1147, filed
September 8, 2004, responding to Docket No. 1084, filed August
20, 2004) the Government disagrees with Forbes' assessment that

5

any of those matters had to be disclosed under <u>Brady</u> or <u>Giglio</u>.[4]

Forbes' speculation that more of the same of this largely irrelevant information is known or should be known to members of the prosecution team is plainly an insufficient basis for this Court to direct the Government to make additional disclosures.  <u>See</u> <u>United States v. Navarro</u>, 737 F.2d 625, 631-32 (7th Cir. 1984)("A due process standard which is satisfied by mere speculation would convert <u>Brady</u> into a discovery device and impose an undue burden upon the district court"); <u>United States v. Milikowsky</u>, 896 F.Supp. 1285, 1309 n.38 (D.Conn. 1994) ("Were this court to grant the Defendants' motion, it would set an absurd precedent, allowing defendants to scour the working notes of prosecutors upon the mere accusation that the government has not sufficiently disclosed every potentially exculpatory detail.").

---

[4]    The basic rule of <u>Brady</u> "is that the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or punishment." <u>United States v. Coppa</u>, 267 F.3d 132, 139 (2d Cir. 2001). Evidence is material only if there is a reasonable probability that its non-disclosure could have affected the outcome of the case.  <u>United States v. Bagley</u>, 473 U.S. 675, 682 (1985).

<u>Brady</u>, however, does not require the prosecution to disclose absolutely all exculpatory and impeachment material. <u>Coppa</u>, 267 F.3d at 135.  That some evidence might be merely useful to the defense is not enough to require disclosure.  Such a standard would "necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense." <u>United States v. Agurs</u>, 427 U.S. 97, 112 n.20 (1976).

Forbes again demands that the Government turn over documents generated by or in possession of the SEC regarding its investigation, prosecution, and settlement of claims against Corigliano. FM at 7-8. The prosecutors from the initial trial team reviewed all such information, and all documents that might conceivably contain _Brady_ or _Giglio_ information was turned over to the defense. Tr. 8076, 8128-30, 8613-16, 8620-21, 9023.[5] If the Government's present trial team becomes aware of any other documents containing such information, it will promptly disclose it to the defense.

> **B. The Government has disclosed to the defense all material "attorney proffer" information known to the prosecution team.**

Forbes again seeks information regarding any "attorney proffers" made to the Government by Corigliano's attorneys, including the terms of any written proffers, whether Corigliano's attorney ever represented to the Government that Corigliano was the source of any information supplied by counsel to the

---

[5] As set forth in the Government's letter to defense counsel dated June 24, 2004, the Government has previously provided counsel with all documents in possession of the Government's trial team concerning the SEC settlement. Following Forbes' written demand on June 16, 2004 for additional documents regarding the settlement, the Government made a second inquiry of the SEC for any documents possessed by that agency which had not yet been disclosed to the prosecution team. As of July 24, 2004, the Government transmitted to the defendants all remaining documents in possession of the SEC that pertained to the Corigliano investigation that, owing to the delayed review of the SEC filed by SEC counsel, had not been previously disclosed to the defense. Tr. 9023.

Government, and whether Corigliano authorized his attorney to make representations to the Government on his behalf.  FM 10, items 3-4.  The Government has already given the defense all potential <u>Brady</u> and <u>Giglio</u> information from any oral statements made by its witness' attorneys, thus mooting Forbes' citation to, and argument arising from, <u>Spicer v. Roxbury Correctional Institute</u>, 194 F.3d 547 (4th Cir. 1999).  Following extensive litigation on this subject before and during the initial trial, <u>e.g.</u>, Tr. 2645-62, the Court directed the Government to disclose certain information regarding proffers made by the cooperators' attorneys, which was done.  Tr. 6100-01, 7810-11, 8015-33. Finally, Corigliano was closely cross-examined during the first trial regarding these subjects.  Tr. 7671-73, 7692-93, 7698, 7976-77, 8060, 8173-74, 9298-99, 9313.  No additional attorney proffers have taken place since the first trial, so the Government has nothing further to disclose.[6]

---

[6]  As the Government previously explained, Forbes' reliance on <u>United States v. Sudikoff</u>, 36 F.Supp.2d 1196 (C.D.Cal. 1999) does not advance his claim, because the <u>Sudikoff</u> court substituted <u>Brady</u>'s materiality standard in the pretrial context with a requirement that the Government disclose "exculpatory information that is either admissible or is reasonably likely to lead to admissible evidence."  <u>Sudikoff</u>, 36 F.Supp.2d at 1200. In <u>Coppa</u>, however, the Second Circuit granted the Government's petition for a writ of mandamus and directed the District Court to vacate its order that required, among other things, the immediate production of all exculpatory and impeachment materials "without regard for its materiality in the <u>Agurs</u>/<u>Bagley</u> sense." <u>Coppa</u>, 267 F.3d at 146.

(continued...)

**C. The Government has not revoked Corigliano's plea agreement because Corigliano has not breached the agreement.**

Forbes inquires whether Corigliano's plea agreement has been revoked because he supposedly lied during his testimony in the first trial. The Government rejects Forbes' contentions that Corigliano lied about anything while testifying during the first trial, and has not sought to revoke Corigliano's plea agreement for supposed lying that did not occur. Revocation of Corigliano's plea agreement would violate the Government's obligations under the agreement, and serve no legitimate purpose, although it would obviously advance Forbes' defense in this trial.

Forbes also demands to know if the Government took affirmative steps to determine if Corigliano or Kearney testified falsely at trial. He cites no authority and makes no argument to demonstrate that he is entitled to information describing the Government's investigative efforts, as opposed to the results of those efforts. Forbes was represented by the most able attorneys

---

[6](...continued)

Despite <u>Coppa</u>, the Government has largely complied with <u>Sudikoff</u>. With the exception of notes taken by the members of the current and previous trial teams (DOJ Special Attorneys Martinez, Carpenito, Carney, Schechter, and McMahon), the defense has all notes of all meetings with witnesses, both before and after any plea or cooperation agreements were signed. The Government has produced all possible <u>Brady</u> and <u>Giglio</u> material from all meetings between any witness and members of the current and previous trial teams.

that money can buy, who spared no expense in obtaining
information used to challenge the testimony of Corigliano and
other prosecution witnesses.  Even though Forbes threw everything
but the proverbial kitchen sink at Corigliano and Kearney during
cross-examination in the first trial, no one on the Government's
trial team concluded that either of those witnesses lied during
their testimony at the first trial.

### D. Forbes has failed to demonstrate that he is entitled to reconsideration of this Court's previous ruling, declining to order the Government to turn over the work product of members of the initial trial team.

Forbes again seeks disclosure of all of the notes
created by the three prosecutors from the initial trial (DOJ
Special Attorneys Carney, Schechter, and McMahon) regarding
witness interviews and witness preparation sessions for
Corigliano and Kearney.  FM 10, item numbers 1 and 2.[7] The

---

[7]  Forbes again requests, as he did before the first trial,
the dates of witness interviews.  FM 10, item number 2.  To the
extent that any proffer session notes are dated (and many are)
the defense already has that information.  Where the date of the
interview is not recorded on any of the notes that were turned
over to the defense, that information is unavailable.  As the
Government previously explained, the defense may nevertheless be
able to determine the dates of the undated notes by matching the
content of the notes with that of dated notes taken by others.

In any event, as the Court determined prior to the
first trial, the Government is not required to attempt to
reconstruct this immaterial information for the defense.  Tr.
9042, 9047.  Neither Brady nor Giglio require the Government to
reconstruct the dates of the few undated notes for the defense.
See United States v. Upton, 856 F.Supp. 727, 746 (E.D.N.Y. 1994)
(noting that "the government is under no obligation to turn over
(continued...)

10

Government has reviewed all of these notes and has disclosed, by way of a series of letters to the defense, any information that could possibly be considered <u>Brady</u> or <u>Giglio</u> contained in the notes in letters to counsel.[8]  <u>See</u> <u>Milikowsky</u>, 896 F.Supp. at 1308 (directing the Government to comply with <u>Brady</u> by producing "detailed summaries of exculpatory statements" made during witness interviews).[9]  At the insistence of the defense, the Court also reviewed *in camera* during the initial trial some of the interview notes prepared by those prosecutors.  Tr. 2853-54, 2865-67, 3194.

Forbes contends that Corigliano and Kearney gave

---

[7](...continued)
that which it does not have").

[8]  <u>See</u>, <u>e.g.</u>, Exhibit A (January 9, 2004 letter regarding interviews of Corigliano on December 30, 2003 and January 6, 2004); Exhibit B (January 19, 2004 letter regarding interviews of Sabatino on December 30, 2003 and January 7, 2004); Exhibit C (January 27, 2004 letter regarding interviews of Corigliano on January 13 and 14, 2004); Exhibit D (March 22, 2004 letter regarding March 17, 2004 interview of Kevin Kearney).

[9]  In <u>Milikowsky</u>, the defendants claimed that they were entitled to a new trial because they were denied access to notes taken by prosecutors during their interviews of a prosecution witness.  <u>Id.</u> at 1307.  Judge Burns explained that, although the Government could not conceal discoverable information and statements merely because they were set forth in non-discoverable reports and memoranda, the Government was not required to reveal the entirety of such documents.  Rather, the Government had to reveal only the substance of the discoverable material.  <u>Id.</u>  The court pointed out that there was no requirement under Second Circuit law that the Government could be compelled, in contravention of Rule 16(a)(2), to disclose its notes and other work product to defense counsel.  <u>Id.</u> at 1308.

testimony during the first trial that was inconsistent with certain of their prior statements, and again speculates that the Government has somehow withheld evidence of other prior inconsistent statements of those witnesses, because the Government has refused to turn over the handwritten notes of the prosecutors from the first trial, and notes of attorney proffers. FM 2.  With the exception of the notes prepared by the members of the initial trial team, Forbes has already received all witness statements, reports and notes of interviews of Government witnesses or summaries of material aspects of interviews of Government witnesses.[10]  No additional disclosures are required.

To the extent that Corigliano has provided information to the Government, disclosure of which is required by <u>Brady</u>, <u>Giglio</u>, the Jencks Act, or Rule 16, the Government has provided all such information to the defense by way of attorney or agent notes and letters to defense counsel.  The Government understands that its disclosure obligations are ongoing.  Contrary to Forbes' suggestion, however, the Government has no obligation to disclose to the defense the sum and substance of all of its communications with its witnesses regarding their anticipated testimony.  <u>Kyles</u>

---

[10]  As the Court is aware, in an abundance of caution, the Government turned over to the defense, long before the start of trial, the interview notes of former AUSA Paul Weissman and of other participants in the interviews of prosecution witnesses. <u>E.g.</u>, Tr. 1053; <u>see</u> <u>Coppa</u>, 267 F.3d at 135 (<u>Brady</u> must be disclosed in time for its effective use at trial).

v. Whitley, 514 U.S. 419, 437 (1995) (Brady "requires less of the prosecution than the ABA Standards for Criminal Justice, which call generally for prosecutorial disclosures of any evidence tending to exculpate or mitigate").

Notwithstanding Forbes' repeated assertions that the prosecution team in this case did not understand or take seriously the Government's disclosure obligations, the Court's *in camera* review confirmed that none of those notes contained discoverable information. This *in camera* review went beyond the obligations of the Government and the Court in assuring the disclosure of discoverable information to the defense. See Milikowsky, 896 F.Supp. at 1309 (court's in camera review of government's work product was satisfied any constitutional disclosure requirement); United States v. Henke, 222 F.3d 633, 642-43 (9th Cir. 2000) (defendants did not trigger court's obligation to review interview notes *in camera* where they made no showing that notes might contain Brady or Giglio material).

**E. The Government need not provide additional information regarding the timing of Kearney's statements to Government officials about Forbes' involvement in the charged crimes.**

Forbes demands information regarding the timing of Kearney's initial statements to the Government which implicated Forbes and Stu Bell in the conspiracy. FM 10, item number 5. Forbes has already received the Kearney interview notes prepared by all persons other than the prosecutors from the first trial,

13

as well as summaries of his interviews by those prosecutors.
See, e.g., Exhibit D.  Additionally, Kearney testified during the
first trial about the timing of his disclosures about those
subjects to the Government.  Tr. 9849-53, 9862, 9876-78.  Forbes
has failed to demonstrate that he is entitled to disclosure of
any more information than he has already received on this
issue.[11]

> **F.  The Government has not suppressed any material
> information regarding Kearney's supposed mental health
> problems.**

Forbes asserts that Kevin Kearney's demeanor during the
initial trial suggested that he was suffering from some
unspecified cognitive impairment, and seeks discovery of
documents and information regarding that supposed impairment.  FM
11-12.  When this issue arose during the first trial, the Court
questioned Kearney on the record regarding his alleged "flat
affect" while testifying.  Kearney replied that he was taking

---

[11]  The Government reiterates that Kearney's failure to
volunteer information that implicated Forbes and Bell in the
conspiracy before he was specifically asked about those persons
does not trigger a disclosure obligation for the Government.  See
United States v. DeLeo, 1991 WL 111172, *2 (N.D.Ill., June 5,
1991) (the Government "need only produce those communications or
statements which . . . omit mention of [the defendant] and were
(a) made by a witness in a position to know whether [the
defendant] was engaged in illegal conduct, (b) in a context in
which the person likely would have mentioned [the defendant] if
he believed [the defendant] had committed criminal acts"); see
also United States v. Zuno-Arce, 44 F.3d 1420, 1426 (9th Cir.
1995)(prior failure of eyewitnesses to identify the defendant as
a participant in the charged crime was "too weak" an inference to
amount to exculpatory evidence).

medication for a "skin condition," but assured the Court that the medication had no effect on his cognitive functioning. The Court concluded that Kearney was "just not feeling very lively [while] being examined in court." Tr. 9791. Forbes made no further requests at that time for any additional information regarding Kearney's medical or psychological condition. <u>Id.</u>

Forbes now speculates that Kearney is suffering from some sort of cognitive impairment, and claims that the Government has refused to disclose information about this alleged impairment when requested. FM 11-12. Forbes seeks information about whether Kearney has a personality disorder, medical, or psychiatric condition that would affect his cognitive functioning, memory, or "suggestibility" and whether he takes any medication that would affect those functions. <u>Id.</u>

Contrary to Forbes' allegation, the Government is hiding nothing from Forbes in this regard, and has no knowledge that Kearney is receiving any sort of treatment for any condition that would impair his memory or cognition.[12]

---

[12] Forbes would not necessarily be entitled to discovery of such information even if it does exist. For instance, statements by a mental health patient to a treating psychotherapist, made in confidence for the purpose of obtaining treatment, are privileged against disclosure as a matter of federal law. <u>Jaffee v. Redmond</u>, 518 U.S. 1, 12 (1996); <u>see</u> Fed. R. Evid. 501 (privileges of a witness in federal court proceedings "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States"). Although a defendant in a criminal case may be entitled to the disclosure of privileged but exculpatory or materially impeaching information, he may not

(continued...)

**G. Forbes is not entitled to any additional information regarding the "bias" of the corporate entity Cendant against Forbes.**

Forbes next contends that he is entitled to information regarding the supposed "bias" of the Cendant Corporation against Forbes. FM 12-13. He declines to mention that this Court expressly rejected an identical request during trial. Tr. 4685-87. He provides no reason to change that decision.

Forbes' legal team is already well aware of the source of any bias against Forbes that may be held by any high-ranking executives at Cendant: the fact that Cendant has been required to pay billions of dollars in damages and other expenses arising from the fraud, and that Cendant has pending legal claims against Forbes arising from the fraud. Forbes himself has been sued by Cendant to recover the $47 million "severance" payment that

---

[12](...continued)
review, without judicial supervision, privileged and confidential records in the hope that they contain information helpful to the defense. See Pennsylvania v. Ritchie, 480 U.S. 39, 50-58 (1987). Rather, to protect both the confidentiality of the privileged records and the defendant's due process rights, the records should be reviewed *in camera* by the trial court, which should disclose only that information which is truly exculpatory or impeaching. Id. at 58.

Additionally, this Court has substantial discretion under Fed. R. Evid. 403 to determine whether the probative value of any evidence of a witness's mental condition would be outweighed by its potential for confusion of the issues, prejudice, or the waste of time. United States v. Sasso, 59 F.3d 341, 348 (2d Cir. 1995); United States v. Bari, 750 F.2d 1169, 1178 (2d Cir. 1984). Rule 611 also confers substantial discretion upon this Court to "protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a)(3); see United States v. Laljie, 184 F.3d 180, 192-93 (2d Cir. 1999).

16

Cendant paid Forbes in 1998, based on Cendant's claim that Forbes was involved in the accounting fraud at issue in this case.  Tr. 14405-11.  From the fact of that lawsuit, Forbes can argue that Cendant has an interest to see him convicted in this case.

Forbes has also obtained extensive materials from the numerous completed and on-going civil lawsuits spawned by the fraud at issue in this case.[13]  Forbes also states that he knows that Cendant lobbied the Government to bring criminal charges against Forbes, and that lawyers who represent Cendant have worked with Government attorneys in connection with the prosecution of this case.  FM 3, 12-13.  Counsel for Shelton sought to impeach Scott Forbes during the first trial based on his "loyalty" to Cendant's CEO, Henry Silverman.  Tr. 5943.  Given the previous disclosure of information regarding Cendant's purported bias against Forbes, he has failed to demonstrate that he is entitled to additional discovery on this matter.

### H. The Government has already produced all documents required to be disclosed by Fed. R. Evid. 16.

Forbes also renews his request for any documents that are discoverable under Fed. R. Crim. P. 16.  FM 13.  The discovery afforded by Rule 16(a)(1)(C) is limited by Rules 16(a)(2) and (3).  Rule 16(a)(2) exempts from disclosure

---

[13]  Forbes attaches a portion of a transcript from one of those cases as support for his motion for a bill of particulars. See Exhibit 1 to Memorandum in Support of Forbes Retrial Motion No. 2.

"reports, memoranda, or other internal government documents made
by the attorney for the government or any other government agent
investigating or prosecuting the case," and "statements made by
government witnesses or prospective government witnesses."  See
Milikowsky, 896 F. Supp. at 1307-09; United States v. Jordan, 316
F.3d 1215, 1251 (11th Cir. 2003); United States v. Cherry, 876
F.Supp. 547, 551 (S.D.N.Y. 1995) (Rule 16(a)(2) bars disclosure
of reports generated by federal, state and local law enforcement
agents; the "work product" theory protects from disclosure a
litigant's theories and thought processes contained in internal
notes and memoranda related to the case).

        As a general matter, Forbes bears the burden of making
a *prima facie* case of materiality before the Government can be
required to produce evidence under Rule 16.  United States v.
Maniktala, 934 F.2d 25, 28 (2d Cir. 1991) (defense bears burden
of showing materiality).[14]  In order to meet his burden of making
a *prima facie* showing of materiality, Forbes must show "more than
that the evidence in question bears some abstract logical

---

        [14]  Accord United States v. Walker, 1997 WL 327093 at *2
(S.D.N.Y., June 12, 1997)(defendant must make a *prima facie*
showing of materiality); United States v. McGuinness, 764 F.Supp.
888, 895 (S.D.N.Y. 1991)(same; collecting cases).  Evidence is
material to the defense and therefore subject to this subsection
of Rule 16 only if it could be used to counter the Government's
case.  See United States v. Armstrong, 517 U.S. 456, 462 (1996)
('defense' in Rule 16(a)(1)(C) means only claims "which refute
the Government's arguments that the defendant committed the crime
charged").

relationship to the issues in the case."  Id.; Ashley, 905 F.Supp. at 1168.  Rather, he must show that pretrial disclosure of the evidence will enable him "significantly to alter the quantum of proof in his favor."  Maniktala, 934 F.2d at 28; Ashley, 905 F.Supp. at 1168.  To do that, he must specify "what he is looking for . . ., why he expects it to be there, and what use he intends to make of the information."  Walker, 1997 WL 327093 at *2.

Forbes cannot meet his burden merely by making conclusory allegations that the requested evidence is material. "If courts credited such statements, defendants could obtain absolutely anything they wanted simply by making such an assertion."  United States v. Savarese, 2002 WL 265153 at *2 (S.D.N.Y., Feb. 22, 2002); Walker, 1997 WL 327093 at *2; McGuinness, 764 F.Supp. at 895.  Forbes has failed to demonstrate that he is owed anything in discovery by operation of Rule 16.

**CONCLUSION**

As demonstrated above, the Government has complied, and will continue to comply, with this Court's discovery orders, the Standing Order on Discovery, Rule 16, <u>Brady</u>, <u>Giglio</u> and the Jencks Act. The Court should reject Forbes' continuing efforts to expand the Government's obligations beyond those established by law. Accordingly, this Court should again reject Forbes' on-going speculation that the Government has failed to turn over discoverable material, particularly in light of the Government's representation that it has disclosed all such material of which the prosecution team is aware or reasonably should be aware. <u>See</u> <u>Savarese</u>, 2002 WL 265153 at *2-3 ("district courts in [Second Circuit] routinely accept the type of representation that the Government has made concerning <u>Brady</u> material"); <u>United States v.</u> <u>McVeigh</u>, 923 F.Supp. 1310, 1313-14 (D.Colo. 1996) (court's reliance on Government's representations regarding <u>Brady</u> is "ordinary procedure").

For all of the foregoing reasons, as well as the reasons set forth in the Government's written and oral submissions in response to Forbes' prior discovery requests, the Government respectfully requests that Forbes' current discovery motion be denied.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
Special Attorney

20

U.S. Department of Justice

/s/ Norman Gross

NORMAN GROSS
MICHAEL MARTINEZ
CRAIG CARPENITO
Special Attorneys
U.S. Department of Justice

Dated: August 12, 2005
Newark, New Jersey

EXHIBIT A

EXHIBIT B

EXHIBIT C

EXHIBIT D

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this day I caused to be served copies of the foregoing upon the following via email and United States Mail:

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901
(202) 434-5005


  /s/ Lynda Powers
LYNDA POWERS
U.S. Department of Justice


Dated: August 12, 2005
       Camden, New Jersey