UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>WALTER A. FORBES. )<br>)<br>) | No. 3:02CR264 (AWT)<br>August 22, 2005 |

**MEMORANDUM IN SUPPORT OF MOTION
OF DEFENDANT WALTER A. FORBES TO MODIFY
CONFIDENTIAL JUROR QUESTIONNAIRE
(Forbes Retrial Motion No. 6)**

**BACKGROUND**

**Modifications to Which the Parties Agree.** On August 15, 2005, defense counsel submitted to the Court a copy of the proposed Confidential Juror Questionnaire marked-up to reflect modifications that the government and the defense agree should be made. A copy of the submission reflecting those agreed upon modifications is attached hereto as Exhibit A.

**Additional Requested Modifications to Which the Parties Do Not Agree.** Mr. Forbes submits this memorandum in support of his motion that additional modifications be made to the proposed Confidential Juror Questionnaire. Defense counsel have discussed these additional requested changes with government counsel, who do not consent to the additional modifications.

**ARGUMENT**

As reflected in the Memorandum of Defendant Walter A. Forbes Concerning Proposed Jury Selection Procedure dated March 13, 2003 ("Jury

1

Selection Memorandum"), which is incorporated herein by reference, voir dire of jurors "serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising preemptory challenges." Mu' Min v. Virginia, 500 U.S. 415, 431 (1991). As the Second Circuit has stated, "[t]here must be sufficient information elicited on voir dire to permit a defendant to intelligently exercise not only his challenges for cause, but also his preemptory challenges, the right to which has been specifically acknowledged by the Supreme Court ...." United States v. Barnes, 604 F.2d 121, 142 (2d Cir. 1979).

As further reflected in Mr. Forbes' Jury Selection Memorandum, asking *open-ended* questions in a confidential jury questionnaire is critical, if counsel are to obtain the information they need to determine whether a juror should be challenged for cause and if counsel are to obtain the information they need to exercise their preemptory challenges. See Memorandum at 4. The additional requested modifications set forth below are designed to elicit the information that will permit Mr. Forbes to exercise intelligently his challenges for cause and/or his preemptory challenges.

I.   **REQUESTED ADDITIONAL QUESTIONS**

Mr. Forbes requests that 14 additional questions be added to the Confidential Juror Questionnaire.

    A.   **Requested Question Regarding Hiring, Firing or Promotion**

Mr. Forbes requests that the following question be asked after Question No. 16:

2

> 16A. *In your job or in a former job if you are retired and not currently working, do/did you have the authority to hire, fire or promote?*
> *__ Yes __ No*

A similar question was asked by the Court during supplemental voir dire before the first trial. Defense counsel are not aware of any reason that this question should not be asked at an earlier stage so that counsel may have additional time to formulate follow-up questions that may lead to challenges for cause and/or to consider the impact that the answers to this question have on counsels' use of preemptory challenges.

### B. Requested Question Concerning Personal Financial Situation Over the Past Three Years

Mr. Forbes requests that the following question be asked after requested additional Question No. 16A.:

> 16B. *How, if at all, has your personal financial situation changed in the last 3 years?  __ It's gotten better  __ It's stayed the same  __ It's gotten worse*

This question requests information that will be very useful to counsel as they decide how to exercise preemptory challenges. It may also lead to limited follow-up questions that in turn may lead to challenges for cause.[1]

### C. Requested Question Regarding Views Toward Conspiracies in Companies

Mr. Forbes requests that the following question be asked after Question No. 30:

---

[1] Defense counsel have no desire to be unduly invasive in any follow-up to this question.

3

> *30A. Based on what you know and have heard, how common are conspiracies in business?*
>
> *__ Happens all the time __ Happens occasionally*
> *__ Happens quite often __ Rarely/never happens*

This question is designed to elicit potential bias based on the myriad highly publicized accounting and corporate wrongdoing cases in recent years. It seeks information that will assist the defense in formulating appropriate follow-up questions to determine whether a potential juror brings biases and prejudices to this trial. The answer to this question and any follow-up will also be useful to counsel as they decide how to exercise their preemptory challenges.

### D. Requested Question Regarding Feelings About People Who Earn More than $1 Million Annually

Mr. Forbes requests that potential jurors be asked this question after Question No. 31:

> *31A. Do you have strong feelings about people who make more than $1 million per year? __ Yes __ No*
>
> *If yes, please explain:*

It is improper to appeal to class prejudice, see <u>United States v. Stahl</u>, 616 F.2d 30 (2d Cir. 1980), and the Court instructed the first jury that "it is improper for a juror to consider any personal feelings he or she may have about the wealth of the defendants." Tr. 16246. Nevertheless, the government focused on Mr. Forbes' earnings during cross-examination of him. E.g., Tr. 14029 (government writing down on easel, "Forbes Compensation approximately $1 million in 1993"). This proposed additional question is calculated to determine whether prospective jurors

4

hold strong personal feelings about people like Mr. Forbes, who has earned more than $1 million per year.

### E. Requested Question Regarding Aircraft

Evidence of private jet usage by Mr. Forbes was introduced during the first trial. In light of such evidence, it is appropriate to ask:

> 31B. *Do you have strong feelings about people who fly on private airplanes?* __ *Yes* __ *No*
>
> *If yes, please explain:*

This question is designed to root out whether any prospective jurors are biased against people like Mr. Forbes, who have flown on private airplanes.

### F. Requested Question Regarding Experience with Allegations of Inaccurate Financial Results

Mr. Forbes requests that the potential jury pool be asked the following question after requested additional Question No. 31B:

> 31C. *Have you ever worked for a company where questions were raised about the accuracy of its reported financial results?* __ *Yes* __ *No*

This question asks whether the juror has been in a situation similar to the situation presented by the facts of this case. If so, it would be appropriate to conduct follow-up questioning to determine whether a challenge for cause is warranted. Of course, this information will also assist counsel in determining how to use their preemptory challenges.

### G. Requested Question About Chief Executive Officers

The defense requests that the following question be asked after requested additional Question No. 31C:

> *31D. Do you feel that top corporate executives like Chief Executive Officers (CEOs) should be expected to know every significant thing going on in the company? __ Yes __ No*

This question asks whether prospective jurors have any preconceived notions regarding what Chief Executive Officers like Mr. Forbes know or do not know. It is critical to determine whether potential jurors have preconceived notions about what Chief Executive Officers know and do not know, because the government requested and received (over objection) an instruction on conscience avoidance during the first trial. Moreover, the government repeatedly implied (again over objection) that Mr. Forbes must have known that there was accounting fraud at CUC/Cendant, because Mr. Forbes was the "captain of the ship," and "the top dog." E.g., Tr. 13867-68. If defense counsel is not given the opportunity to learn whether potential jurors bring preconceived notions regarding what Chief Executive Officers know to this trial, the likely result will be a jury for which the government's burden of proof is effectively reduced.

### H. Requested Question Regarding Serious Consideration of Working in Law Enforcement

Mr. Forbes requests that the following question be asked after Question No. 33:

> *33A. Have you ever seriously considered working in law enforcement, such as working as a police officer, FBI agent, Secret Service agent or prosecutor? __ Yes __ No*

6

This is the sort of question that will allow the defense to fashion appropriate follow-up that might lead to challenges for cause. Moreover, the answer to this question will assist counsel in deciding how to use preemptory challenges.

### I. Requested Question About Internet Shopping

Mr. Forbes requests that the following question be asked after Question No. 40:

> 40A. *Have you or any member of your family ever purchased any items on the internet?* __ Yes __ No

This case concerns the internet, and there was significant testimony during the first trial about Mr. Forbes' visions and actions with respect to internet commerce. If a prospective juror has purchased items on the internet, counsel may want to ask follow-up questions regarding that experience to determine if it would affect his or her ability to judge Mr. Forbes fairly. The answer to this question may also inform counsel's judgment regarding how to exercise preemptory strikes.

### J. Requested Question Concerning Personal Accountant

Mr. Forbes requests that the following be asked after Question No. 41:

> 41A. *Do you have a personal accountant?* __ Yes __ No
>
> *If yes, what does he or she do for you?*

This case is about accounting, and there was significant testimony about the role and functions of accountants both generally and at CUC and Cendant. Whether a prospective juror has a personal accountant and what that personal accountant does

for the prospective juror may be critical information – both in deciding whether to challenge a juror for cause and in determining how to exercise preemptories.

### K.   Requested Question Concerning Stock Broker

Mr. Forbes requests that the following question be asked after Question No. 46:

> 46A.   *Do you or any member of your family have a stock broker?*
> *__ Yes __ No*

This case also concerns the stock market, and there was significant testimony about the role of stock analysts and their reports to investors. Whether a potential juror has a stock broker is highly relevant to counsel's decisions whether to challenge a juror for cause (after appropriate follow-up) or through use of a preemptory strike.

### L.   Requested Question Concerning Losing Money in an Investment Because of False or Misleading Information

Mr. Forbes requests that the following question be asked after requested additional Question No. 46A:

> 46B.   *Have you ever lost money on an investment because you felt you were given false or misleading financial or other information about the investment?  __ Yes __ No*
>
> *If yes, please explain.*

The fact that a person has been a victim of a crime similar to that charged in the indictment is a basis for a challenge for cause. See United States v. Poole, 450 F.2d 1082 (3d Cir. 1971) (reversible error to deny defendant the opportunity to even inquire whether prospective juror was a victim of a crime similar to that charged in

8

indictment). This question asks for highly relevant information that goes to potential bias and also will inform counsel as they use preemptories.

### M.    Requested Question Concerning Meeting Minutes

The government, over defense objections, argued during the first trial that board minutes were not kept appropriately. If the government insists on introducing such evidence again and if the Court overrules Mr. Forbes' objections, the following question should be asked after Question No. 53:

> 53A.  *Have you ever received the meeting minutes of any organization?*
> *__ Yes __ No*

This will allow for follow-up that could lead to challenges for cause and better informed use of preemptories.

### N.    Requested Question Concerning Desire to Be on Jury

Finally, Mr. Forbes requests that the following question be asked after Question No. 73:

> 73A.  *Would you like to serve on this jury?*
> *__ Yes __ No __ Maybe*
>
> *What is the reason for your answer?*

The answer to this open-ended question will be very telling. It may expose biases and prejudices that will enable counsel to make for cause challenges and will probably reveal information that will assist counsel in deciding how to use their preemptory challenges.

II.  **PROPOSED REVISIONS TO EXISTING QUESTIONS**

   A.  **Question No. 24.**

Question No. 24 on the proposed Confidential Juror Questionnaire reads as follows:

> 24.  *Have you, any relative, or anyone close to you had any experience involving law enforcement officials or government agents that might prevent you from considering the evidence in this case fairly and impartially?  __ Yes __ No*
>
> *If yes, please explain:*

Question No. 24, as presently worded, suggests that the appropriate answer is "No." Few jurors will volunteer that they would not be "fair" and "impartial." Mr. Forbes proposes that Question No. 24 be reworded in a less suggestive and more open-ended way as follows:

> 24.  *Have you, any relative, or anyone close to you had any experience involving law enforcement officials or government agents that would influence your consideration of the evidence in this case? __ Yes __ No*
>
> *If yes, please explain:*

As set forth in Mr. Forbes' Jury Selection Memorandum, one of the most important features of effective voir dire is "[u]sing open-ended questions on the juror questionnaire." Jury Selection Memorandum at 4 (<u>quoting</u> Hirschorn Aff. ¶5). Question No. 24 should be presented in an open-ended, non-suggestive manner. If a juror were to answer this question in the affirmative, appropriate follow-up could be asked by the Court and/or counsel to determine whether the juror is qualified or should be stricken for cause. Even if the juror were found to be qualified, this open-

10

ended question may reveal information that would be useful to defense counsel and government counsel alike as they decide how to use their preemptory strikes.

**B.     Question Nos. 36 and 60**

The defense requests that the word "simply" be removed from the following questions:

> 36.    *Would you give greater or lesser weight to the testimony of a law enforcement officer or government agent than to the testimony of any other witness simply because the witness was a law enforcement officer or government agent?  __ Yes __ No*
>
> *If yes, please explain:*
>
> 60.    *Suppose you are selected as a juror in this case and when you retire to deliberate you decide one way on a charge you are considering, either guilty or not guilty, and all the other jurors decide the other way.  If after discussing this matter fully with the other jurors you remain convinced that you are correct and they are incorrect, would you then surrender your position <u>simply</u> for the purpose of reaching a verdict?  __ Yes __ No*
>
> *If yes, please explain.*

The word "simply," as used in these questions means "merely" or "only."  <u>See</u> Webster's II New College Dictionary (1999) (third definition of "simply" is "merely" or "only").  Mr. Forbes is entitled to learn whether a prospective juror is biased at all in favor of law enforcement officers or government agents.  Inquiry should not be limited to whether a juror is biased in favor of a law enforcement witness <u>only</u> because he or she is a law enforcement officer or government agent.  Likewise, Mr. Forbes is entitled to learn if a prospective juror, who after a full discussion remained convinced that he or she was correct, would surrender his or her position for any reason.  The fact that the prospective juror may also have some other

11

inappropriate reason for surrendering his or her position other than reaching a verdict should not prevent Mr. Forbes and his counsel from obtaining the information they need to select a fair and impartial jury.[2]

### III. OBJECTION TO QUESTION NO. 60

Mr. Forbes objects to Questions No. 61, which reads in full as follows here:

> 61. *Your duty, as a juror, is to determine whether a defendant is guilty or not guilty based on the evidence. It is the duty of the presiding judge to determine punishment if the jury renders a verdict of "guilty." The law does not permit jurors to consider the issue of punishment. Would it be difficult for you to render a full and impartial verdict if a conviction could result in a prison sentence?* __ Yes __ No
>
> *If yes, please explain:*

This question does not state the law correctly – especially in this case. Specifically the statement that "[t]he law does not permit jurors to consider the issues of punishment" is wrong, because the jury may consider the potential punishment of Mr. Corigliano. As the Court properly instructed the jury during the first trial, "[a] witness who realized that he or she may be able to obtain his or her own freedom or receive a lighter sentence by giving testimony favorable to the government has a motive to testify falsely." Tr. 16413. Moreover, it is not correct to suggest that the presiding judge has the exclusive power to determine punishment. The Court's ability to determine Mr. Corigliano's punishment is limited to a large extent by the

---

[2] If the Court adopted the defense position with respect to Question Nos. 36 and 60, Question No. 38 regarding cooperating witnesses should probably be reworded as well to eliminate the word "simply."

agreements he reached with the government. And the Court's ability to determine punishment for any criminal defendant is limited by statute. Mr. Forbes objects to Question No. 61 and requests that the question be stricken.

## CONCLUSION

For the foregoing reasons, Walter A. Forbes respectfully requests that the Confidential Juror Questionnaire be modified as set forth above.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: *[signature]*

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (email)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Dated: August 22, 2005

## CERTIFICATE OF SERVICE

      I hereby certify that I caused the foregoing Memorandum in Support of Motion of Defendant Walter A. Forbes to Modify Confidential Juror Questionnaire (Forbes Retrial Motion No. 6) to be served on August 22, 2005 to the following via Federal Express:

      Norman Gross, Esq.
      U.S. Attorney's Office
      District of New Jersey
      401 Market Street
      Fourth Floor
      Camden, NJ  08101

      Michael Martinez, Esq.
      Craig Carpenito, Esq.
      U.S. Attorney's Office
      District of New Jersey
      970 Broad Street, Suite 700
      Newark, NJ  07102

                                                        Barry S. Simon