**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

---

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | **No. 3:02CR264 (AWT)** |
| **v.** ) | |
| ) | |
| ) | **August 22, 2005** |
| **WALTER A. FORBES** ) | |
| ) | |

---

**MEMORANDUM OF WALTER A. FORBES IN OPPOSITION TO**
**UNITED STATES' PRETRIAL MOTION *IN LIMINE***
**(Government Retrial Motion No. 1)**

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon  (Bar No. ct24159)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Oral Argument Requested

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this memorandum in opposition to the government's motion in limine.

## ARGUMENT

## I.    IN THE EVENT THE GOVERNMENT DOES NOT RETRY COUNTS 13-16, THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM PRESENTING EVIDENCE OF MR. FORBES' STOCK SALES.

The government seeks to offer evidence of Mr. Forbes' 1998 stock sales, as well as unidentified "evidence of Forbes' other sales of CUC and Cendant stock" from the late 1980's until April 15, 1998, even if the government does not retry Mr. Forbes on counts 2-4, 7-12, or 13-16. See Government Mem. ("Mem.") at 3. The Court should deny the government's request because this evidence is not probative of Mr. Forbes' knowledge or intent with respect to counts 1, 5, or 6.

As this Court observed in In re Xerox Corp. Securities Litigation, 165 F. Supp. 2d 208 (D. Conn. 2001), insider sales of stock "may be evidence of scienter if the trades are unusual or suspicious in timing or amount." Id. at 222 (quotation omitted). Here, neither the timing nor the amount of Mr. Forbes' stock sales was unusual or suspicious. With the sole exception of the March 1998 sales (discussed below), the government makes no attempt to argue that Mr. Forbes' stock sales during his tenure at CUC and Cendant were unusual in timing or amount. Accordingly, there is no basis for admitting Mr. Forbes' history of stock sales at CUC or Cendant as purported evidence of knowledge or intent to deceive.

With respect to the March 1998 sales, there also is no basis to admit this evidence to show Mr. Forbes' purported knowledge or intent. First, there is nothing unusual or suspicious about the amount of stock Mr. Forbes sold in March 1998. The government makes no attempt to argue that the amount of stock sold by Mr. Forbes in March 1998 ($11 million), which constituted a small percentage of his

overall holdings of stock and options, was unusual, suspicious, or "dramatically out of line with prior trading practices." In re Silicon Graphics, Inc., 183 F.3d 970, 987 (9th Cir. 1999) (Mem. at 7). Nor could it, because the sale of a small percentage of an individual's overall holdings does not give rise to an inference of scienter. See Acito v. Imcera Group, Inc., 47 F.3d 47, 54 (2d Cir. 1995) (Mem. at 6) (rejecting contention that sale of less than 11% of an individual's holdings was evidence of intent to deceive); see also In re Silicon Graphics, Inc., 183 F.3d at 987 (Mem. at 7) (sales of 2.6%, 7.7%, 4.1%, and 6.9% of respective holdings by various defendants were not suspicious and did not support inference of scienter); In re Apple Computer Sec. Litig. 886 F.2d 1109, 1117 (9th Cir. 1989) (Mem. at 6) (sale of 8% of holdings not probative of scienter); compare Goldman v. Belden, 754 F.2d 1059, 1070-71 (2d Cir. 1985) (Mem. at 7) (sale of 26% of holdings could raise inference of scienter).

Notably, Mr. Forbes' 1998 stock sale paled in comparison to the $60 million in stock sold by Henry Silverman in early 1998. See DX 1394; Tr. 13,841. Mr. Forbes sold the same number of shares as Jim Buckman, the General Counsel of Cendant, who sold 300,000 shares valued at $10.8 million in early 1998. See Buckman Form 144 (Ex. 1 hereto). Moreover, Mr. Forbes reduced his sale order from 400,000 shares to 300,000 shares (see Tr. 13,844; Tr. 13,850) -- hardly the conduct of an individual seeking to cash out.[1] There is nothing about the amount of Mr. Forbes' March 1998 stock sale that is probative of his purported knowledge of a fraud.

---

[1]     The government erroneously asserts that Mr. Forbes sold 400,000 shares in March 1998. Mem. at 6 n.4.

Nor was the timing of Mr. Forbes' March 1998 stock sale unusual or suspicious. Mr. Forbes sold at a time when he was legally permitted to do so after the merger, see DX 2247, when numerous other insiders sold stock as well. While the government theorizes that Mr. Forbes "decided to sell his stock in March 1998 only after learning that Henry Silverman had decided that Anne Pember would no longer be in charge of accounting for the former CUC divisions," Mem. at 4, the record does not support that theory. To the contrary, Mr. Forbes presented unrebutted documentary evidence that established that he began the sale process in early February 1998, well before Mr. Silverman made any decision to terminate Ms. Pember. See DX 2240. The government's theory about the reasons for Mr. Forbes' 1998 stock sale is simply not supported by the factual record, and is contradicted by unrefuted documentary evidence. Because the timing of Mr. Forbes' 1998 stock sales was neither unusual nor suspicious, this evidence has no probative value with respect to Mr. Forbes' knowledge or intent and should be excluded under Fed. R. Evid. 401. It also should be excluded under Fed. R. Evid. 403 because it places undue emphasis on Mr. Forbes' wealth, see United States v. Stahl, 616 F.2d 30, 32 (2d Cir. 1980), and because its prejudicial effect substantially outweighs its nonexistent probative value.

The government's alternative theory -- that the Court should admit evidence of Mr. Forbes' stock sales to show motive -- should be rejected as well. The fact that Mr. Forbes was compensated in part with stock options and sold stock during his tenure at CUC and Cendant, like numerous other individuals, proves nothing about whether he engaged in a fraud. As the Second Circuit has observed, "[i]ncentive compensation can hardly be the basis on which an allegation of fraud is

3

predicated." <u>Acito</u>, 47 F.3d at 54 (collecting cases).  The fact that an executive receives incentive-based compensation such as stock options is not probative of motive to commit a fraud -- otherwise, a significant percentage of corporate America would be so motivated.[2]  This evidence should be excluded under both Fed. R. Evid. 401 and Fed. R. Evid. 403.

## II.    IN THE EVENT THE GOVERNMENT DOES NOT RETRY COUNTS 7-12, THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM PRESENTING TESTIMONY BY MR. ROWAN.

The government seeks to present James Rowan's testimony even if counts 7-12 are dismissed.  <u>See</u> Mem. at 9-12.  The Court should deny this request.

As the government acknowledges, Mr. Rowan's testimony was presented at the 2004 trial in an effort "to prove that [Mr.] Forbes was guilty of the securities fraud charges set forth in Counts 7-12 of the Indictment, and in particular, that [Mr.] Forbes participated in making false or fraudulent representations in connection with the purchase or sale of securities that are subject to the federal securities laws." Mem. at 11.  If the government dismisses counts 7-12, Mr. Rowan's testimony is no longer relevant to this case.

Contrary to the government's contention, the fact that Mr. Forbes gave a presentation to Mr. Rowan about the synergies between CUC and HFS and the

---

[2]    The cases cited by the government do not support its contention that evidence of Mr. Forbes' stock sales is probative of a motive to commit fraud.  <u>United States v. Guterma</u>, 281 F.2d 742 (2d Cir. 1960) (Mem. at 8), involved evidence of the undisclosed acquisition of numerous shares, <u>see id.</u> at 746, not routine stock sales that were well documented and publicly disclosed.  <u>United States v. King</u>, 560 F.2d 122 (2d Cir. 1977) (Mem. at 8-9), and <u>United States v. Mennuti</u>, 679 F.2d 1032 (2d Cir. 1982) (Mem. at 9), did not involve evidence of stock sales.  Finally, in <u>United States v. Abrams</u>, 357 F.2d 539 (2d Cir.1966) (Mem. at 9), the defendants were charged with securities fraud based on their stock sales, <u>id.</u> at 543, and this evidence was directly relevant to the case.  Here, the government seeks to offer this evidence even if the securities fraud and insider trading counts are dismissed.

4

ways in which the two companies would work together, see Tr. 10253-24, proves

nothing about whether Mr. Forbes "was involved in directing the fraudulent use of

merger reserves." Mem. at 12. Nor does it do anything "to corroborate Corigliano's

testimony that [Mr.] Forbes was involved in directing the fraudulent use of merger

reserves." Id. The fact that Mr. Forbes could discuss CUC's and HFS's general

business strategy and synergies simply is not probative of whether Mr. Forbes

knowingly and willfully engaged in a fraud with respect to CUC's or Cendant's

reported earnings. Nor does it do anything to rebut Mr. Forbes' contention that he

was not involved in the fraud and did not know about it prior to mid-April 1998.

Certainly a corporate executive can speak about his company's strategy and

objectives without being involved in a fraud. Henry Silverman, Chris McLeod, Tony

Menchaca, Laura Hamilton, and numerous other executives at CUC and Cendant

who had no knowledge of the fraud gave presentations concerning the businesses of

CUC and/or HFS, but the government does not contend that their general knowledge

of the businesses is evidence that they engaged in criminal wrongdoing. Because

Mr. Rowan's testimony does nothing to corroborate Mr. Corigliano's claims about Mr.

Forbes' purported involvement in the fraud, it should be excluded under Fed. R.

Evid. 401.

       The cases cited by the government offer no support for the purported

relevance of Mr. Rowan's testimony if counts 7-12 are dismissed. In United States v.

Payton, 159 F.3d 49 (2d Cir. 1998) (Mem. at 12), the court allowed the government to

cross-examine the defendant about his possession of heroin after the defendant

testified on direct examination that he had nothing to hide from the police. Id. at 58.

The court concluded that the defendant opened the door to this questioning through

his direct testimony.  Here, the government seeks to present Mr. Rowan's testimony in its case-in-chief, not to impeach Mr. Forbes on cross-examination; moreover, Mr. Rowan's testimony does nothing to rebut Mr. Forbes' contention that he had no involvement in the fraud.  In <u>United States v. Scarpa</u>, 913 F.2d 993 (2d Cir. 1990) (Mem. at 12), the evidence in question corroborated the testimony of a government witness.  <u>Id.</u> at 1016.  Here, in contrast, Mr. Rowan's testimony does nothing to corroborate Mr. Corigliano's testimony about Mr. Forbes' purported involvement in the fraud.

In the alternative, the Court should exclude Mr. Rowan's testimony under Fed. R. Evid. 403.  The government seeks to have Mr. Rowan testify as a representative of Hartford Steam Boiler in an effort to establish that a local company was a victim of the alleged fraud.  In so doing, the government seeks to elicit an emotional response from the jurors and win their sympathy.  This is clearly prejudicial and should not be permitted by the Court if counts 7-12 are dismissed. See <u>United States v. Blackstone</u>, 56 F.3d 1143, 1146 (9th Cir. 1995) ("Evidence is prejudicial if it 'appeals to the jury's sympathies, arouses its sense of horror, provokes its instincts to punish, or triggers other mainsprings of human action.'") (quoting 1 <u>Weinstein's Federal Evidence</u> § 403[3]).

## III.   THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM PRESENTING ANY TRIAL TESTIMONY BY MR. FORBES AT THE RETRIAL.

### A.   Mr. Forbes' Testimony Was Coerced by the False Testimony of the Government's Witnesses and Is Inadmissible.

A defendant's testimony from a prior trial is ordinarily admissible in a retrial.  <u>Harrison v. United States</u>, 392 U.S. 219 (1968).  When that testimony is induced by the admission of unlawful evidence in the government's case, however, it

6

may not be introduced in a subsequent trial. Id. at 225. In Harrison, the Supreme

Court held that a defendant's testimony from a prior trial was inadmissible in his

retrial because the testimony had been provoked by the improper admission of the

defendant's unlawfully obtained confessions. Id. at 226; see also United States v.

Pelullo, 173 F.3d 131, 134-35 (3d Cir. 1999) (government was required to establish

that defendant's testimony at prior trial was not impelled by Brady violation in order

to introduce testimony at retrial).

Here, Mr. Forbes was forced to testify at the 2004 trial in response to

unlawful evidence presented by the government in its case-in-chief. The government

presented false testimony from both Cosmo Corigliano and Kevin Kearney in an

effort to implicate Mr. Forbes in the fraud.[3] Like the unlawful confession in

Harrison, the presentation of false testimony by the government is a matter of

constitutional dimension. See, e.g., Napue v. Illinois, 360 U.S. 264, 269 (1959);

United States v. Wallach, 935 F.2d 445, 456 (2d Cir. 1991). The government's case

against Mr. Forbes was almost entirely based on Mr. Corigliano's testimony, as

purportedly corroborated by Mr. Kearney. Had Mr. Corigliano and Mr. Kearney not

testified falsely in an effort to implicate Mr. Forbes, Mr. Forbes would not have

testified. Because Mr. Forbes' 2004 trial testimony was induced by the government's

presentation of false evidence, in violation of the Due Process Clause, the Court

should not permit the government to introduce any of Mr. Forbes' trial testimony at

---

[3]       See Memorandum in Support of Motion of Walter A. Forbes for a Mistrial due
to the Government's Presentation of, and Failure To Correct, Cosmo Corigliano's
False and Misleading Testimony (Forbes Trial Motion No. 28) (filed August 20, 2004)
(incorporated herein by reference); Memorandum in Support of Motion of Walter A.
Forbes for a Mistrial due to the Government's Presentation of, and Failure To
Correct, Kevin Kearney's False and Misleading Testimony (Forbes Trial Motion No.
30) (filed August 23, 2004) (incorporated herein by reference).

the retrial.

**B.    Mr. Forbes' Testimony Concerning Asset Transfers Is Irrelevant and Should Be Excluded.**

Even if the Court permits the government to introduce portions of Mr. Forbes' 2004 trial testimony into evidence (over Mr. Forbes' objection), the Court should preclude the government from presenting testimony (or other evidence) relating to Mr. Forbes' transfer of certain real estate to his wife in 1998 and 1999. See Mem. at 13 (citing Mr. Forbes' testimony at Tr. 14,386-97 as testimony the government seeks to offer at the retrial). Mr. Forbes' testimony concerning asset transfers that took place <u>after</u> the period at issue in the indictment has no relevance to this case and should be excluded under Fed. R. Evid. 401 and 403.[4]

It is undisputed that Mr. Forbes' real estate transfers took place in 1998 and 1999, after the public disclosure of accounting improprieties at CUC and Cendant. The only purported relevance of these transfers to this case is the government's contention that they are probative of consciousness of guilt on the part of Mr. Forbes. See Memorandum of the United States in Opposition to Forbes Motions <u>in Limine</u> No. 3 & 4 (filed April 29, 2004) ("2004 Mem."). Significantly, however, the government has never cited a single case to support its contention that

---

[4]    On May 10, 2004, the Court reserved ruling on Mr. Forbes' motion <u>in limine</u> no. 3, which sought to preclude the government from presenting any evidence regarding asset transfers. <u>See</u> Tr. 5. The Court instructed the government not to discuss that subject in opening argument. <u>Id.</u> Mr. Forbes' motion was rendered moot with respect to the government's case-in-chief because the government did not attempt to introduce any evidence concerning asset transfers in its case-in-chief. During Mr. Forbes' testimony in the defense case, the government requested a ruling from the Court on this issue. On September 27, 2004, the Court orally denied Mr. Forbes' motion, <u>see</u> Tr. 13,797-98, and the government was permitted to question Mr. Forbes concerning asset transfers during his cross-examination. The Court did not state the reasons for its decision. The issue here is one the Court did not address at the prior trial, namely whether the government can present asset transfer evidence in its case-in-chief.

asset transfers made years <u>before</u> an indictment (at a time when, according to the

government's then-lead prosecutor, the government was not focusing on Mr. Forbes)[5]

are admissible as evidence of consciousness of guilt.  The government's inability to

cite any case holding that an asset transfer made years before an indictment is

probative of consciousness of guilt speaks volumes about the irrelevance of this

evidence, which should be excluded under Fed. R. Evid. 401.

      The government has not even cited a single case in which evidence

relating to asset transfers that took place <u>after</u> an arrest or indictment was held

admissible in a criminal trial to show consciousness of guilt.[6]  To the contrary, at

---

[5]     Mr. Weissman, the AUSA in charge of the government's investigation in 1998 and 1999, testified that he was "not focusing" on Mr. Forbes at the time of Mr. Kearney's interviews in 1998 and 1999.  <u>See</u> Tr. 11,445 "these interviews took place at an early stage of the investigation when I and I believe my colleagues was [sic] not focusing on Mr. Forbes"); Tr. 11,446 ("Q.  The dates of these interviews were in 1998 and 1999; is that correct?  A.  Correct.  Q.  And you indicated to the jury that you were not focusing on Walter Forbes at that time, correct?  A.  Correct.").

[6]     The government previously cited a civil bankruptcy case in which the court found, after a three-week bench trial, that certain asset transfers should be set aside as fraudulent transfers made to evade obligations to creditors.  <u>In re Manshul Constr. Co.</u>, 2000 WL 1228866 (S.D.N.Y. Aug. 30, 2000) (2004 Mem. at 4-5).  The <u>Manshul</u> court did not consider the entirely different issue of whether evidence of asset transfers made years before an indictment should be admissible in a criminal action as evidence of consciousness of guilt.  The remaining consciousness of guilt cases cited by the government do not involve asset transfers and are entirely inapposite.  <u>See</u> <u>United States v. Anglin</u>, 169 F.3d 154, 158-60 (2d Cir. 1999) (2004 Mem. at 6) (evidence of flight); <u>United States v. Salameh</u>, 152 F.3d 88, 157 (2d Cir. 1998) (2004 Mem. at 6) (flight); <u>United States v. Burrous</u>, 147 F.3d 111, 117 (2d Cir. 1998) (2004 Mem. at 4 (throwing cash out the window during arrest); <u>United States v. Amuso</u>, 21 F.3d 1251, 1258 (2d Cir. 1994) (2004 Mem. at 8) (flight); <u>United States v. Wilson</u>, 11 F.3d 346, 353 (2d Cir. 1993) (2004 Mem. at 4) (false identification); <u>United States v. Macklin</u>, 927 F.2d 1272, 1279-80 (2d Cir. 1991) (2004 Mem. at 4) (attempt to persuade witness not to testify in grand jury); <u>United States v. Blanco</u>, 861 F.2d 773, 782 (2d Cir. 1988) (2004 Mem. at 10) (use of false name and false identification papers at time of arrest); <u>United States v. Bein</u>, 728 F.2d 107, 114-15 (2d Cir. 1984) (2004 Mem. at 10) (witness intimidation); <u>United States v. Deutsch</u>, 451 F.2d 98, 116 (2d Cir. 1971) (2004 Mem. at 4) (concealment of underlying transaction).  <u>United States v. Diaz</u>, 878 F.2d 608 (2d Cir. 1989), on which the government also relied (2004 Mem. at 8), did not involve any issue relating to evidence of consciousness of guilt.

least one court has held that an asset transfer made <u>after the defendant was arrested</u> was <u>not</u> probative of consciousness of guilt. <u>See United States v. Ramirez</u>,176 F.3d 1179, 1182-83 (9th Cir. 1999) (harmless error to admit evidence that defendant's sister registered title to his vehicles in her name six days following his arrest; evidence not admissible to show consciousness of guilt). There is simply no legal support for the government's contention that Mr. Forbes' transfers of certain real estate to his wife in 1998 and 1999 are probative of consciousness of criminal wrongdoing. The Court should exclude this evidence under Fed. R. Evid. 401.

The government's assertion that evidence tending to show that Mr. Forbes transferred assets because he feared <u>civil</u> liability is probative of consciousness of <u>criminal</u> wrongdoing (2004 Mem. at 7) is simply erroneous. The government cites no cases to support this contention, and its reasoning cannot withstand scrutiny. Mr. Forbes' potential liability in the Cendant civil litigation could be based on theories of vicarious liability that have nothing to do with whether Mr. Forbes knowingly and willfully engaged in criminal conduct. The fact that Mr. Forbes (after consultation with counsel) sought to afford his family a measure of financial protection from civil judgments (Tr. 14,432-33; Tr. 14,471-72) proves nothing about whether Mr. Forbes was conscious of criminal wrongdoing. This evidence is irrelevant and should be excluded under Rule 401.[7]

In the alternative, the Court should preclude the government from presenting any evidence concerning asset transfers pursuant to Fed. R. Evid. 403.

---

[7]     The government's related claim that Mr. Forbes had "no reason" to transfer assets if he was "a victim just like any other shareholder" (2004 Mem. at 8) is equally flawed. Unlike the vast majority of Cendant shareholders, Mr. Forbes was named as a defendant in several civil suits seeking to recover billions of dollars.

10

"Unfair prejudice," for purposes of Rule 403, is "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's notes.  Evidence is properly excluded under Rule 403 where there is a "genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence."  United States v. Bailey, 990 F.2d 119, 122 (4th Cir. 1993) (quotation omitted); see also United States v. Blackstone, 56 F.3d 1143, 1146 (9th Cir. 1995) ("Evidence is prejudicial if it 'appeals to the jury's sympathies, arouses its sense of horror, provokes its instincts to punish, or triggers other mainsprings of human action.'") (quoting 1 Weinstein's Federal Evidence § 403[3]).

Here, the non-existent probative value of evidence of asset transfers in 1998 and 1999 is substantially outweighed by its potential to confuse and mislead the jury and to prejudice Mr. Forbes.  Evidence concerning the value of the assets transferred by Mr. Forbes is highly prejudicial because it places undue and improper emphasis on his wealth. See Tr. 14,386-88, 14,934, 14,401-03 (emphasizing value of assets transferred during government questioning); United States v. Stahl, 616 F.2d 30, 32 (2d Cir. 1980) (reversing conviction where prosecutor emphasized defendant's wealth and value of real estate during questioning of witnesses and in argument). Evidence concerning the asset transfers also is prejudicial because it relates to the Cendant civil litigation pending in 1998 and 1999.  The fact that Mr. Forbes is a defendant in civil litigation has no relevance to the charges in this case, but could lead jurors to  conclude that Mr. Forbes should be held responsible for the accounting fraud at CUC and should therefore be convicted.  Because this evidence has no probative value with respect to the charged offenses, but is extremely prejudicial and

11

misleading, the Court should exclude it under Rules 401 and 403.

**C.    In the Event the Court Permits Mr. Forbes' Testimony To Be Introduced, the Court Should Permit Mr. Forbes To Present Related Testimony Under Fed. R. Evid. 106.**

In the event that the Court (over Mr. Forbes' objection) permits the government to introduce portions of Mr. Forbes' 2004 testimony at the retrial, the Court should allow Mr. Forbes to introduce under Fed. R. Evid. 106 the portions of Mr. Forbes' testimony "which ought in fairness to be considered contemporaneously with it." Id. Based on the pages of testimony identified in the government's memorandum, at a minimum the following testimony by Mr. Forbes should be admitted at the time the government presents Mr. Forbes' prior testimony: Tr. 13,537, l.1-13,549, l.15; Tr. 13,684, l.8-13,687, l.12; Tr. 13,687, l.13-13,688, l.23; Tr. 13,707, l.7-17; Tr. 13,731, l.15-23; Tr. 13,741, l.10-12; Tr. 13,744, l. 15-21; Tr. 13,747, l.6-8; Tr. 13,747, l.15-13,749, l.8; Tr. 13,765, l.14-13,766, l.1; Tr. 13,774, l.18-13,777, l.17; Tr. 13,815, l.8-13,831, l.13; Tr. 14,432, l.2-14,433, l.15; Tr. 14,471, l.24-14,472, l.21.[8] The foregoing limited testimony excerpts are directly related to the testimony identified by the government in its memorandum, and are necessary to explain and place in context the testimony the government seeks to offer.[9]

---

[8]    Mr. Forbes reserves the right to supplement these preliminary designations at a later date.  To the extent certain of the foregoing testimony involves the issue of asset transfers, Mr. Forbes identifies the testimony, over objection, in the event the Court permits the government to introduce evidence on this subject at trial.

[9]    None of the cases cited by the government involved the admissibility of limited testimony excerpts such as those identified by Mr. Forbes that are directly relevant to the excerpts the government seeks to offer.  In United States v. Jackson, 180 F.3d 55, 73 (2d Cir. 1999) (Mem. at 15), the defendant sought to introduce an entire 42-minute tape recording after the government introduced a 90-second excerpt, where the remainder of the tape did not undermine or place in context the fact that the defendant was put on notice that the proposed conduct was unlawful. Here, in sharp contrast, Mr. Forbes has identified a small portion of his trial testimony that is directly responsive to the excepts identified by the government.

12

**D.    The Government Cannot Present Mr. Monaco's Inadmissible Testimony in the Guise of a Question to Mr. Forbes.**

The testimony excerpts identified by the government include questions posed to Mr. Forbes that included readbacks of excerpts of Mr. Monaco's 2004 testimony.  See Tr. 14,340, l.10-21; Tr. 14,341, l.22-14,342, l.15.  Mr. Monaco's testimony from the 2004 trial is inadmissible hearsay at the retrial because the government has identified Mr. Monaco as an "A" category witness who will testify for the government.  The government cannot place Mr. Monaco's inadmissible hearsay before the jury in the guise of questions to Mr. Forbes.  The Court should exclude those excerpts from the testimony (if any) of Mr. Forbes that the government is permitted to read to the jury at the retrial.[10]

**IV.    THE GOVERNMENT SHOULD NOT BE PERMITTED TO ARGUE THAT THE MAGNITUDE OF THE ALLEGED GAAP VIOLATIONS CONSTITUTES CIRCUMSTANTIAL EVIDENCE OF PURPORTED KNOWLEDGE.**

The government seeks to argue to the jury that the magnitude of the allegedly improper accounting at CUC and Cendant is circumstantial evidence of Mr. Forbes' alleged knowledge of the fraud.  Mem. at 18.  The Court should not permit such an argument for three reasons.

First, the only case cited by the government in support of the claimed propriety of this argument is a civil case in which the plaintiffs asserted that the

---

United States v. Ricks, 882 F.2d 885, 892-93 (4th Cir. 1989) (Mem. at 16), involved the admission of the entire cross-examination of a missing witness and is inapposite. United States v. Myers, 972 F.2d 1566, 1575-76 (11th Cir. 1992) (Mem. at 16), involved the denial of a request to introduce the defendant's entire statement to the police after the government introduced only limited portions of the statement.

[10]    In the event the Court allows the government to introduce Mr. Monaco's testimony as part of Mr. Forbes' cross-examination (over Mr. Forbes' objection), the Court should allow Mr. Forbes to introduce the relevant portions of Mr. Monaco's cross-examination concerning the subject of Ernst & Young.

magnitude of the improper accounting "suggest[ed] that the Defendants knew <u>or</u> <u>were severely reckless in not knowing</u> about the GAAP violations." <u>In re AFC</u> <u>Enterprises, Inc. Sec. Litig.</u>, 348 F. Supp. 2d 1363, 1372 (N.D. Ga. 2004) (emphasis standard). The standard for proving knowledge in this criminal case is much different than the civil standard for liability. The government has the burden of proving <u>actual knowledge</u> of the fraud by Mr. Forbes, not recklessness. Even under the Court's conscious avoidance instructions (to which Mr. Forbes continues to object), knowledge could only be established if "the defendant deliberately closed his eyes to what otherwise would have been obvious to him." Tr. 16,323. The government has not cited any case holding that the magnitude of the alleged fraud may be offered as evidence of the defendant's knowledge in a criminal case.

Second, there is nothing about the magnitude of the alleged GAAP violations that could establish that Mr. Forbes either had actual knowledge of the fraud or "deliberately closed his eyes to what otherwise would have been obvious to him." <u>Id.</u> CUC's and Cendant's reported revenue, expenses, and earnings were publicly disclosed in SEC filings and audited by Big 5 accounting firms. There was nothing about the amount of revenue, expenses, or earnings reported by either CUC or Cendant that would have placed anyone on notice of a "red flag." Furthermore, the evidence at the 2004 trial established beyond any doubt that the fraud was extremely well hidden by those involved in it, and that trained auditors at E&Y were unable to detect it for years, despite annual audits of CUC's financial records. The evidence also is undisputed that sophisticated businessmen and/or CPA's such as Henry Silverman, Michael Monaco, Scott Forbes, Chris McLeod, and Tony Menchaca knew nothing about the fraud, despite the magnitude of it. It is further

14

undisputed that the fraud was never detected by anyone, but came to light only after Casper Sabatino and Steve Speaks came forward and disclosed it in April 1998. The defense also established at the 2004 trial that the amount of revenue and expenses adjusted at CUC was a very small percentage of CUC's overall revenue and expenses. Given the record of this case, and the undisputed fact that the fraud was extremely well hidden and successfully concealed from those not involved in it, the government should not be permitted to assert that the amount of the alleged fraud somehow establishes that Mr. Forbes consciously avoided knowledge of it.

Third, the theory of the indictment and the government's case is that Mr. Forbes had <u>actual knowledge</u> of the fraud, discussed the improper use of merger reserves in repeated meetings with Cosmo Corigliano, and directed the fraud. The government asserts that Mr. Forbes had explicit conversations with Cosmo Corigliano in which they discussed, <u>inter alia</u>, the creation of "cushions" in merger reserves, the improper use of merger reserves to inflate income, and other improper accounting techniques. The government further asserts that Mr. Forbes was an active participant in the fraud and directed the fraud. The government did not present any evidence that Mr. Forbes did not have actual knowledge of the fraud but closed his eyes to facts that obviously demonstrated a fraud. Indeed, there was no evidence that Mr. Forbes ever saw any documents reflecting the improper accounting adjustments made by CUC's corporate accounting department.

There is simply no factual basis for an argument that the magnitude of the alleged fraud somehow establishes constructive knowledge on the part of Mr. Forbes. Nor does the indictment contain any such allegation. Any argument by the government that the magnitude of the improper accounting establishes Mr. Forbes'

alleged knowledge would constitute a constructive amendment of the indictment. Accordingly, the Court should preclude the government from making any argument that the magnitude of the improper accounting at CUC is evidence that Mr. Forbes had knowledge of the fraud.[11]

### V.  THE GOVERNMENT'S MOTION TO PRECLUDE MR. CORIGLIANO'S INCREDIBLE TESTIMONY THAT HE BLOCKED OUT HIS KNOWLEDGE OF THE FRAUD WHEN HE SOLD $23 MILLION OF CENDANT STOCK MUST BE REJECTED.

The government implicitly concedes that Mr. Forbes has a right to cross-examine Mr. Corigliano concerning his past criminal conduct, and in particular the crimes with which the government could have charged him, but agreed not to do so. The government nonetheless seeks to prevent the defense from asking Mr. Corigliano whether he engaged in insider trading, arguing that this line of inquiry impermissibly crosses into lay "opinion" testimony regarding the legal requirements for insider trading, and is unnecessary for showing Mr. Corigliano's bias. Mem. at 20-26. The government's argument fails for at least two reasons: First, it is based on the mistaken premise that the defense challenged Mr. Corigliano's understanding of what constituted insider trading; in fact, the defense did not challenge Mr. Corigliano's understanding of the law, but Mr. Corigliano's incredible testimony that, *as a factual matter*, while he sold millions of dollars of stock during the very period of time he was orchestrating a massive fraud within CUC's accounting department, he never "put the two points together." See, e.g., Tr. at 7588. Second, in

---

[11]     To the extent the government presents evidence concerning the magnitude of the improper accounting (including any Heckler testimony introduced over Mr. Forbes' objection), the Court should give a limiting instruction to the jury that makes clear that the only relevance of this evidence is to the materiality of the allegedly false statements in CUC's and Cendant's financial disclosures.

focusing solely on what might be necessary to establish bias, the government ignores the fact that this testimony arose in the context of cross-examining Mr. Corigliano concerning his past lies – specifically his lies to the government in January 1999 when he denied all wrongdoing.  Tr. at 7597-98.  Particularly where, as here, the government's case relies heavily on the testimony of one witness, it is "especially important that the defense have a fair opportunity to cross examine and to impeach [the witness's] testimony."  St. Germain v. United States, No. 03CV8006(CM), S1 99CR339(CM), 2004 WL 1171403 (S.D.N.Y. May 11, 2004) (granting a new trial on the grounds that the government withheld material impeachment material concerning its key witness).  The government's motion should be denied.

### A.      The Defense Did Not, and Does Not, Seek to Challenge Cosmo Corigliano's Understanding of the Law of Insider Trading.

The government claims that the defense called Mr. Corigliano a liar in the first trial because Mr. Corigliano testified that one who possesses material, inside information, but does not "use" that information when he trades stock, is not guilty of insider trading.  Mem. at 25-26.  The government's claim fundamentally mischaracterizes Mr. Forbes' cross-examination.  Not once did Mr. Forbes question Mr. Corigliano about his understanding of the legal requirements of insider trading. Rather, Mr. Forbes questioned Mr. Corigliano concerning the *factual* assertion that he did not use his knowledge of the fraud when trading stock:

> Q.  Well, when you sold the stock, you certainly had in mind that the stock was inflated because of all the financial misconduct that you had engaged in in all the years prior to January 1999; am I not correct?
>
> A.  I had that information but I never connected that with me selling stock. Me selling stock was a personal individual decision.  I never put the two points together.

17

Q.  In other words, you sold stock, as you described yesterday, in March of 1998, I think for almost $23 million, and you never put together the fact that the stock was inflated based upon your misconduct over many years?

A.  I never put those two points together, which is why around that same time frame, I took my $200,000 bonus, my $300,000 salary, I didn't take the cash, I converted that into more stock options.  I thought I was just taking some off the table and leaving just as much, if not more, still on the table in Cendant stock.

\* \* \* \* \* \* \*

Q.  You didn't focus on the fact when you sold the stock, that the price had been inflated by your own misconduct; is that your statement?

A.  I didn't put those two facts together.  I sold the stock.

Q.  In other words, when you sold the stock, you had a clear mind that somehow you had blocked out all of the prior years of financial misconduct. You simply sold the stock thinking it was an honest transaction and that you were not using insider information to benefit; is that your testimony?

A.  I sold the stock as a personal decision between my wife and I.  What I did at CUC was my job and I'd never put those two things together.

Tr. at 7589-90.  Cf. Tr. 7594-98 (questioning Corigliano's claim that he blocked out his insider information when he traded shares).

Mr. Forbes then argued in closing that this testimony by Mr. Corigliano was too incredible to believe – particularly in light of Mr. Corigliano's testimony that two days before one of his largest stock sales he had been "shocked," "scared," and unable to "process information" because Mr. Silverman had suggested they might need to go to the SEC.  Tr. at 15,177.  Thus, Mr. Forbes argued, Mr. Corigliano was in fact guilty of insider trading – and lying in denying it – not because Mr. Corigliano's stated understanding of the law was wrong, but because he could not be believed when he testified that, as a factual matter, he had not used the information pertaining to the fraud he was orchestrating when he traded $23 million in shares. There is nothing "confusing" or "irrelevant" about this evidence.  Mem. at 21.  To the

18

contrary, it bears directly on the issues of Corigliano's bias and credibility.

Moreover, exploration of Mr. Corigliano's purported failure to "put those two things together" is critical in light of the government's stipulation in Mr. Corigliano's plea agreement that Mr. Corigliano did not engage in the fraud in order to enrich himself personally. See DX300 at Ex. A, ¶ 12. In light of this stipulation, Mr. Forbes has the right to explore the facts surrounding Mr. Corigliano's sales, and to then argue to the jury that the government's stipulation was yet another benefit to the government given the weighty evidence indicating that Mr. Corigliano did indeed commit the fraud in order to enrich himself personally.

The incredulity of Mr. Corigliano's testimony may be embarrassing to the witness and to the government, but embarrassment arising as a result of incredulity is not grounds for excluding evidence. Rather, courts have excluded "embarrassing" evidence when it is only tangentially relevant and relates to a subject personal in nature, such as the sexual impotence at issue in United States v. Laljie, 184 F.3d 180 (2d Cir. 1999), the case primarily relied upon by the government. Here, Mr. Corigliano's testimony is highly relevant – speaking directly to the issues of bias and credibility. Moreover, it is embarrassing precisely because it speaks so loudly to those issues, not because it encroaches on a peculiarly personal issue for Mr. Corigliano. The government's motion should be denied.

### B.    Mr. Corigliano's Testimony Regarding Insider Trading Went Not Only to Bias, But Also to Mr. Corigliano's Credibility In Denying Insider Trading to the Government in January 1999.

The government acknowledges that Mr. Forbes has a right to establish Mr. Corigliano's bias by cross-examining him concerning criminal conduct that went uncharged by the government. The government argues that Mr. Forbes need not

question Mr. Corigliano about whether he committed insider trading, however, because he can establish bias in favor of the government "through testimony that Corigliano sold a large volume of Cendant stock while in possession of material inside information which had drastically inflated the price of that stock, coupled with the fact that Corigliano was never charged with insider trading." Mem. at 24. The government's argument ignores the second, equally important aim of Mr. Forbes' cross-examination in this area: to establish that Mr. Corigliano lied when he denied insider trading to the government in January 1999.

The issue of insider trading first arose during Mr. Forbes' cross-examination concerning Mr. Corigliano's lies to the government in January 1999. See Tr. at 7587-7598. Mr. Corigliano admitted during this cross-examination that he had denied all knowledge of financial wrongdoing when he met with the government in January 1999. Tr. at 7587. It was in this context that Mr. Forbes then asked Mr. Corigliano if his denial of wrongdoing included a claim that his profits from the sale of stock were legitimate. Id. It was this question that led to the testimony concerning Mr. Corigliano's use of insider information, in particular his testimony that when he sold $23 million worth of stock, he never connected those sales to the knowledge he had of the fraud he was carrying out at CUC. Tr. at 7587-98. If the jury rejected Mr. Corigliano's incredible claim that he did "not put the two points together," it would have to conclude that Mr. Corigliano lied twice – first to the government in January 1999, and second to the jury itself. Such powerful impeachment evidence goes well beyond bias, and cannot be shown through the more limited cross-examination suggested by the government. For this second and independent reason, the government's motion should be denied.

## VI.  THERE WAS NOTHING IMPROPER IN MR. FORBES' OPENING OR CLOSING ARGUMENTS.

### A.    Opening Arguments.

The government faults defense counsel for not explicitly specifying that each and every one of the facts presented during opening argument was based on what he expected the evidence to show.  Mem. at 27-30.  Defense counsel need not incorporate these magic words into every single sentence, however, so long as this basis for the argument is clear.  Here, reading the statements called into question by the government in context, there is no question but that Mr. Forbes' arguments were based on what he expected the evidence to show.  Mr. Forbes' counsel referenced the bases for his statements – the evidence that would be presented – no less than 16 times in the 28 pages of opening argument.  Indeed, in the very first example cited by the government, defense counsel had introduced the subject matter at issue by explaining that there were several points that would be *demonstrated by the evidence*:

> Much of the case is very complex, but the key elements of Walter Forbes' defense are not complex.  **The evidence will demonstrate** that Walter Forbes had not committed the crimes charged and the government will not be able to prove them beyond a reasonable doubt.
>
> *First, Walter Forbes had no knowledge of wrongdoing.  That's the central theme and core of the defense.  One, no knowledge.  The most important point that you'll hear from me now and at the end of the case.*
>
> Secondly, Walter Forbes relied upon skilled auditors in one of the most recognized auditing firms in the world, Ernst & Young, to certify the financials of this company.  And they did certify them year after year, seeing no problem with the financials, seeing no misconduct, and seeing no fraud.

Tr. at 84 (italicized emphasis reflects the portion excerpted in the government's motion at p.29; bolded emphasis added).  While Mr. Forbes did not repeat three times in a row that his statements were based upon what the evidence would show, there is

no doubt left in the listeners' minds that the entire argument is based upon what the evidence is expected to demonstrate.  No more is required.

### B.     Closing Arguments.

Nor was there anything improper in Mr. Forbes' summation.  First, arguing that the government hopes that the jury will be blinded by the size of the fraud and the enormous amount of money Mr. Forbes earned is not improper.  The government is a party to an adversarial dispute.  The defense has every right to argue that the government hopes the jury will be blinded by some facts, or ignore other facts, in order to achieve the government's ultimate goal:  a conviction.  Indeed, the Second Circuit approved of just this type of argument in United States v. Salameh, 152 F.3d 88 (2d Cir. 1998), cited by the government, Mem. at 33, wherein the prosecutor argued that defense counsel was trying to sell the jury "a bill of goods."

Second, the defense's argument that the government would not revoke Mr. Corigliano's deal if he lied on the stand, despite the provision of the agreement stating to the contrary, was a fair inference of the evidence adduced at trial.  "It is well settled that the prosecution and defense are entitled to broad latitude in the inferences they may suggest to the jury during closing arguments, provided they do not misstate the evidence."  United States v. Myerson, 18 F.3d 153, 163 (2d Cir. 1994) (internal citations and quotations omitted) (cited by the government).  Here, the government's star witness was caught in numerous lies, see Forbes Trial Motion No. 28, and yet the government made no move to revoke his plea agreement.  It was therefore more than fair to infer − and to argue to the jury − that yet one more benefit conferred upon Mr. Corigliano by the government was that he could lie with

impunity, notwithstanding the terms of his plea agreement. Indeed, the fact that the government is not revoking Mr. Corigliano's agreement despite his lies was recently confirmed in the government's Opposition to Mr. Forbes' Motion to Compel Discovery. See Forbes Retrial Motion No. 3 at 9-10.[12]

In sum, there was nothing improper in the defense's argument, and no further guidance from the Court is required in this regard. The government's motion should be denied.

## CONCLUSION

For the foregoing reasons, the government's motion in limine should be denied.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon  (Bar No. ct24159)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

---

[12]    The defense argument came after the government engaged in repeated misconduct during its summation, including vouching for the credibility of Mr. Corigliano.

23

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

August 22, 2005

24

# EXHIBIT 1

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

## FORM 144

### NOTICE OF PROPOSED SALE OF SECURITIES
### PURSUANT TO RULE 144 UNDER THE SECURITIES ACT OF 1933

| OMB APPROVAL |
|---|
| OMB Number: 3235-0101 |
| Expires: September 30, 1998 |
| Estimated average burden hours per response ........ 2.0 |

**SEC USE ONLY**
DOCUMENT SEQUENCE NO.
CUSIP NUMBER
WORK LOCATION

**ATTENTION:** *Transmit for filing 3 copies of this form concurrently with either placing an order with a broker to execute sale or executing a sale directly with a market maker.*

| 1 (a) NAME OF ISSUER (Please type or print) | (b) IRS IDENT. NO. | (c) S.E.C. FILE NO. |
|---|---|---|
| Cendant Corporation | 06-0918165 | 1-10308 |

| 1 (d) ADDRESS OF ISSUER    STREET          CITY | STATE | ZIP CODE | (e) TELEPHONE NO. AREA CODE / NUMBER |
|---|---|---|---|
| 6 Sylvan Way    Parsippany, N.J.    07054 | | | 973 / 496-5266 |

| 1 (a) NAME OF PERSON FOR WHOSE ACCOUNT THE SECURITIES ARE TO BE SOLD | (b) SOCIAL SECURITY NO. OR IRS IDENT. NO. | (c) RELATIONSHIP TO ISSUER | (d) ADDRESS STREET    CITY    STATE    ZIP CODE |
|---|---|---|---|
| James E. Buckman | ▮▮▮ | Director/Officer | 6 Sylvan Way    Parsippany    N.J.    07054 |

*INSTRUCTION: The person filing this notice should contact the issuer to obtain the I.R.S. Identification Number and the S.E.C. File Number.*

| 1 (a) Title of the Class of Securities To Be Sold | (b) Name and Address of Each Broker Through Whom the Securities are to be Offered or Each Market Maker who is Acquiring the Securities | SEC USE ONLY (c) Broker-Dealer File Number | (c) Number of Shares or Other Units To Be Sold (See instr. 3(c)) | (d) Aggregate Market Value (See instr. 3(d)) | (e) Number of Shares or Other Units Outstanding (See instr. 3(e)) | (f) Approximate Date of Sale (See instr. 3(f)) (MO. DAY YR.) | (g) Name of Each Securities Exchange (See instr. 3(g)) |
|---|---|---|---|---|---|---|---|
| Common Stock | Merrill Lynch World Financial Center New York, N.Y. | | 300,000 | $10.8 mill. | 839,992,974 | 2/5/98 | NYSE |
| | | | | | | | |
| | | | | | | | |

**INSTRUCTIONS:**
1  (a) Name of Issuer
   (b) Issuer's I.R.S. Identification Number
   (c) Issuer's S.E.C. file number, if any
   (d) Issuer's address, including zip code
   (e) Issuer's telephone number, including area code

2  (a) Name of person for whose account the securities are to be sold
   (b) Such person's Social Security or I.R.S. identification number
   (c) Such person's relationship to the issuer (e.g., officer, director, 10% stockholder, or member of immediate family of any of the foregoing)
   (d) Such person's address, including zip code

3. (a) Title of the class of securities to be sold
   (b) Name and address of each broker through whom the securities are intended to be sold
   (c) Number of shares or other units to be sold (if debt securities, give the aggregate face amount)
   (d) Aggregate market value of the securities to be sold as of a specified date within 10 days prior to the filing of this notice
   (e) Number of shares or other units of the class outstanding, or if debt securities the face amount thereof outstanding, as shown by the most recent report or statement published by the issuer
   (f) Approximate date on which the securities are to be sold
   (g) Name of each securities exchange, if any, on which the securities are intended to be sold

601376

SEC 1147 (5-96)

## TABLE I — SECURITIES TO BE SOLD

*Furnish the following information with respect to the acquisition of the securities to be sold
and with respect to the payment of all or any part of the purchase price or other consideration therefor:*

| Title of the Class | Date you Acquired | Nature of Acquisition Transaction | Name of Person from Whom Acquired (If gift, also give date date donor acquired) | Amount of Securities Acquired | Date of Payment | Nature of Payment |
|---|---|---|---|---|---|---|
| Common | 2/6/98 | Exercise of stock option covered by Registration Statement on Form S-8 | Cendant Corporation | 300,000 | 2/6/98 | Cash |

**INSTRUCTIONS:**  1. If the securities were purchased and full payment therefor was not made in cash at the time of purchase, explain in the table or in a note thereto the nature of the consideration given. If the consideration consisted of any note or other obligation, or if payment was made in installments describe the arrangement and state when the note or other obligation was discharged in full or the last installment paid.   2. If within two years after the acquisition of the securities the person for whose account they are to be sold had any short positions, put or other option to dispose of securities referred to in paragraph (d)(3) of Rule 144, furnish full information with respect thereto.

## TABLE II — SECURITIES SOLD DURING THE PAST 3 MONTHS

*Furnish the following information as to all securities of the issuer sold during the past 3 months by the person for whose account the securities are to be sold.*

| Name and Address of Seller | Title of Securities Sold | Date of Sale | Amount of Securities Sold | Gross Proceeds |
|---|---|---|---|---|
| | | | | |

**REMARKS:**

**INSTRUCTIONS:**
See the definition of "person" in paragraph (a) of Rule 144. Information is to be given not only as to the person for whose account the securities are to be sold but also as to all other persons included in that definition. In addition, information shall be given as to sales by all persons whose sales are required by paragraph (a) of Rule 144 to be aggregated with sales for the account of the person filing this notice.

**ATTENTION:**
*The person for whose account the securities to which this notice relates are to be sold hereby represents by signing this notice that he does not know any material adverse information in regard to the current and prospective operations of the issuer of the securities to be sold which has not been publicly disclosed.*

February 6, 1998
———————————————
DATE OF NOTICE

/s/ James E. Buckman
———————————————
(SIGNATURE)

*The notice shall be signed by the person for whose account the securities are to be sold. At least one copy of the notice shall be manually signed. Any copies not manually signed shall bear typed or printed signatures.*

**ATTENTION:  Intentional misstatements or omission of facts constitute Federal Criminal Violations (See 18 U.S.C. 1001)**

SEC 1147 (5-96)

601377

## TABLE I — SECURITIES TO BE SOLD

*Furnish the following information with respect to the acquisition of the securities to be sold and with respect to the payment of all or any part of the purchase price or other consideration therefor:*

| Title of the Class | Date you Acquired | Nature of Acquisition Transaction | Name of Person from Whom Acquired (If gift, also give date donor acquired) | Amount of Securities Acquired | Date of Payment | Nature of Payment |
|---|---|---|---|---|---|---|
| Common | 2/6/98 | Exercise of stock option covered by Registration Statement on Form S-8 | Cendant Corporation | 300,000 | 2/6/98 | Cash |

**INSTRUCTIONS:**  1.  If the securities were purchased and full payment therefor was not made in cash at the time of purchase, explain in the table or in a note thereto the nature of the consideration given. If the consideration consisted of any note or other obligation, or if payment was made in installments describe the arrangement and state when the note or other obligation was discharged in full or the last installment paid.

2.  If within two years after the acquisition of the securities the person for whose account they are to be sold had any short positions, put or other option to dispose of securities referred to in paragraph (d)(3) of Rule 144, furnish full information with respect thereto.

## TABLE II — SECURITIES SOLD DURING THE PAST 3 MONTHS

*Furnish the following information as to all securities of the issuer sold during the past 3 months by the person for whose account the securities are to be sold.*

| Name and Address of Seller | Title of Securities Sold | Date of Sale | Amount of Securities Sold | Gross Proceeds |
|---|---|---|---|---|
| | | | | |

**REMARKS:**

**INSTRUCTIONS:**
See the definition of "person" in paragraph (a) of Rule 144. Information is to be given not only as to the person for whose account the securities are to be sold but also as to all other persons included in that definition. In addition, information shall be given as to sales by all persons whose sales are required by paragraph (e) of Rule 144 to be aggregated with sales for the account of the person filing this notice.

**ATTENTION:**
*The person for whose account the securities to which this notice relates are to be sold hereby represents by signing this notice that he does not know any material adverse information in regard to the current and prospective operations of the Issuer of the securities to be sold which has not been publicly disclosed.*

_Feb 6, 1998_
DATE OF NOTICE

_James E Buck_
(SIGNATURE)

*The notice shall be signed by the person for whose account the securities are to be sold.  At least one copy of the notice shall be manually signed. Any copies not manually signed shall bear typed or printed signatures.*

**ATTENTION:  Intentional misstatements or omission of facts constitute Federal Criminal Violations (See 18 U.S.C. 1001)**

SEC. 1147 (5-96)

601378

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Memorandum of Walter A. Forbes in Opposition to United States' Pretrial Motion in Limine (Government Retrial Motion No. 1) to be served on August 22, 2005 to the following via e-mail and FedEx:

Norman Gross, Esq.
U.S. Attorney's Office
District of New Jersey
401 Market Street
Fourth Floor
Camden, NJ 08101

Michael Martinez, Esq.
Craig Carpenito, Esq.
U.S. Attorney's Office
District of New Jersey
970 Broad Street, Suite 700
Newark, NJ  07102

_____
Barry S. Simon