UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> WALTER A. FORBES | No. 3:02CR264 (AWT) <br><br> August 26, 2005 |

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF
WALTER A. FORBES TO COMPEL DISCOVERY
(Forbes Retrial Motion No. 3)**

Walter A. Forbes, through undersigned counsel, respectfully submits this reply memorandum in further support of his motion to compel.

**A.  Documents and Information Concerning Benefits the Government Conferred on Its Witnesses**

Despite its promise to provide "any evidence that arises regarding the terms of its agreements with its witnesses or benefits it provides, or promises to provide, to its witnesses," Resp. at 4 n.3, the new prosecution team has disclosed no new information, but has simply muddied the waters with its responsive brief.

The government accuses Mr. Forbes of engaging in "speculation," id. at 4, regarding the existence of undisclosed oral agreements with cooperating witnesses and asserts that "there were no side agreements between the SEC and Corigliano." Id. at 3. This cannot be reconciled with the government's repeated assertion during the first trial that the Coriglianos entered into an oral agreement with the SEC concerning the retainer funds. See, e.g., Ex. 1 (proposed government stipulation) ("Pursuant to an oral agreement between the SEC and counsel for Mr.

Oral Argument Requested

and Mrs. Corigliano, the Corigliano's [sic] are allowed to use [the retainer] funds for legal services."); Gov't Opp'n Forbes Trial Mot. No. 28, at 6-7 ("[T]here is an oral agreement between the SEC and counsel for the Coriglianos that the retainers will be used solely for legal representation."). Mr. Forbes' requests are based not on "speculation," but on the government's own representations (some of which, it turns out, may have been false) and evidence adduced at the first trial.

The government's current representation that there were no oral agreements between the SEC and Mr. Corigliano, if true, means that he violated his plea agreement, see DX 300 at 2, by, for example, concealing material information from the government regarding the retainer funds.[1] There is powerful evidence that Mr. Corigliano also violated his plea agreement by lying about various material matters (including on the stand at trial). See Mot. Mistrial Due to Presentation of Corigliano's False and Misleading Testimony (filed Aug. 20, 2004). At least some jurors believed that Mr. Corigliano lied, or they would have voted to convict. Nevertheless, it appears that the government undertook no investigation to determine whether to revoke his plea agreement. Contrary to the government's assertion, see Resp. at 9, evidence that it did not investigate (or did not thoroughly investigate) Mr. Corigliano's truthfulness under these circumstances must be

---

[1] The government's Brady/Giglio obligations are not satisfied merely because Mr. Forbes knows about the retainer funds and the dissipation of assets that were supposed to be disgorged to the receiver. See Resp. at 5. The government still has not clarified whether it conferred these benefits by way of oral agreements or whether Mr. Corigliano simply stole from and lied to the government in violation of his plea agreement.

disclosed under Brady/Giglio. It is strong circumstantial evidence that Mr. Corigliano can lie and get away with it.

The government simply has not taken the necessary steps to fulfill its promise to provide "any evidence that arises regarding the terms of its agreements with its witnesses or benefits it provides, or promises to provide, to its witnesses." Resp. at 4 n.3. Nowhere does the current prosecution team represent that it has undertaken any independent review in an effort to ensure compliance with Brady/Giglio, much less to clarify with the SEC the scope of alleged oral agreements regarding matters such as the retainer funds. Rather, it attempts to satisfy its obligation by relying on the efforts of the old prosecution team.

Its own statements demonstrate that the old prosecution team's review was inadequate. The government claims that "the initial trial team reviewed all . . . information" regarding the SEC's "investigation, prosecution, and settlement of claims against Corigliano" and disclosed "all documents that might conceivably contain Brady or Giglio information." Resp. at 7. In the next breath, however, the government admits that the old prosecution team did not actually review that information, but instead relied on the SEC to search its files. See id. at 7 n.5. The government proceeds to blame the SEC for the incomplete disclosures in the first trial. See id. (blaming tardy disclosures on "the delayed review of the SEC file[] by SEC counsel"); id. at 5 (attempting to justify failure to disclose retainer benefit by claiming that "members of the prosecution team were personally ignorant of those retainers before Forbes raised them at trial").

The new prosecution team cannot satisfy its Brady/Giglio obligations by abdicating its responsibility to the former prosecutors, who abdicated their responsibility to the SEC, while conceding that the SEC's review was inadequate. Intentional suppression by the prosecution team is not the standard under Brady. See, e.g., Giglio v. United States, 405 U.S. 150, 154 (1972) ("[W]hether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor."); Brady v. Maryland, 373 U.S. 83, 87 (1963) (rule applies "irrespective of the good faith or bad faith of the prosecution" (quotation omitted)). The government has an affirmative obligation to disclose Brady/Giglio material in its possession, custody or control (including all material in the possession, custody or control of the SEC). See, e.g., Kyles v. Whitley, 514 U.S. 419, 437 (1995) (prosecutor has a "duty to learn of any favorable evidence known to the others acting on the government's behalf in the case"); United States v. Brooks, 966 F.2d 1500, 1503 (D.C. Cir. 1992) (Brady obligations required prosecution to review files of government agencies closely aligned with the prosecution).[2]

The government's suggestions that (i) Mr. Forbes' prior opportunity to cross-examine Mr. Corigliano on the existence of side agreements and undisclosed benefits satisfies Brady/Giglio, see Resp. at 3; and (ii) the requested information is not material, see id. at 5-6 & n.4, are wrong. Cross-examination does not relieve the government of its obligations under Brady/Giglio, particularly because Mr.

---

[2] The government makes repeated reference to its review and disclosure of "documents." Resp. at 7. To comply with Brady/Giglio, however, the government must disclose agreements with and promises to cooperating witnesses whether or not they are in writing, Forbes Mem. at 5, a point the government does not dispute.

- 4 -

Corigliano disclaimed knowledge of any oral side agreements. See Silva v. Brown, 416 F.3d 980 (9th Cir. 2005) ("'It makes little sense to argue that because [the defendant] tried to impeach [the witness] and failed, any further impeachment evidence would be useless.'" (quotation contained in parenthetical)). Whether his denials were knowingly false or whether the government and Mr. Corigliano's attorneys reached oral agreements without his knowledge, due process requires the government to disclose the agreements. See Giglio, 405 U.S. 150 (due process violated when government witness testified falsely about existence of oral promise); Hayes v. Brown, 399 F.3d 972 (9th Cir. 2005) (en banc) (due process violated when cooperating witness testified falsely about oral agreement between witness's counsel and government even though witness did not know about agreement).

Furthermore, the evidence in the first case was weak, based almost exclusively on Mr. Corigliano's testimony, and the defense established that he is a serial liar. Under such circumstances, evidence of undisclosed oral agreements with the government and other hidden benefits (which goes to the actual terms of his plea agreement) is clearly material. See, e.g., Giglio, 405 U.S. at 154-55 ("Here the Government's case depended almost entirely on Taliento's testimony; without it there could have been no indictment and no evidence to carry the case to the jury. Taliento's credibility as a witness was therefore an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility and the jury was entitled to know of it."); Silva v. Brown, 416 F.3d 980 (9th Cir. 2005) ("[B]ecause evidence of the undisclosed deal could well

have undermined the credibility of a vital prosecution witness, there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." (quotation omitted)).[3]

### B. Documents and Information Concerning Prior Statements of Government Witnesses

The government's statement that it disclosed all potential Brady/Giglio material from attorney proffers and interview notes created by Attorneys Carney, Schechter and McMahon, see Resp. at 8, 10-11, suffers from the same defect as its representation discussed above. There is no indication that the new prosecutors have undertaken any review of these notes. Moreover, there is strong reason to believe that the government is withholding additional Brady/Giglio material concerning witness interviews and attorney proffers.[4]

**1. Witness Interviews.** The government has not provided all Brady/Giglio material from witness interviews conducted by the original trial team. The government stopped providing letter summaries of interviews conducted by Attorneys Carney, Schechter and McMahon on or about June 24, 2004. Those

---

[3]     The government's assertion that the testimony of a single witness may be sufficient to sustain a conviction, see Resp. at 2 n.2, ignores the fact that there was a hung jury on every count against Mr. Forbes. The government's claim that Mr. Kearney corroborated Mr. Corigliano, see id., is also incorrect. Mr. Kearney's testimony regarding various people invoking the name Walter Forbes in connection with the alleged fraud was false, see Forbes Trial Mot. No. 30, and, in any event, Mr. Corigliano did not testify that he invoked Mr. Forbes' name to Mr. Kearney.

[4]     The old prosecution team repeatedly represented that it had complied with its Brady/Giglio obligations, but the evidence proved otherwise, as the government was forced to provide additional Brady/Giglio material from notes it had already reviewed. See, e.g., Supp. Mem. Regarding Gov't Obligation to Produce Brady/Giglio Material (filed July 1, 2004).

- 6 -

attorneys continued to meet with witnesses after that date and throughout the first trial. Whether or not they took notes of those sessions, the government must provide all Brady/Giglio material arising from those sessions. The government has not provided such information, and has not represented that it undertook to disclose oral Brady from those sessions. Nor has the government provided the dates of those witness sessions, or the identities of the persons who participated in the interviews. See Ex. 2 (Letter from Simon to Martinez, Aug. 23, 2005). The government's statement that it need not "reconstruct" the dates of witness interviews, Resp. at 10 n.7, does not address the fact that it can easily provide the dates that it represented that it would be keeping on a going-forward basis from October 2003. See Tr. (10/16/03) at 159-60.[5]

Although the government states that "[w]ith the exception of notes taken by the members of the current and previous trial teams . . . , the defense has all notes of all meetings with witnesses" and "all possible Brady and Giglio material from all meetings between any witness and members of the current and previous trial teams," Resp. at 9 n.6, the government has not produced letter summaries from notes of its current trial team members, or any agent notes since July 2004.

---

[5]   The government asserts that the Court reviewed *in camera* "some of the interview notes prepared by" the original trial team. Resp. at 11. Defense counsel do not know what the Court reviewed *in camera*, but the cited transcript pages do not support the government's assertion. Part G of Forbes Pretrial Motion No. 50 sought "Witness Interview Notes of Attorneys Carney, McMahon and Schechter." The cited transcript pages, however, address Part I of the motion. See Tr. at 2853-55 (addressing Part I, indicating receipt of "drafts of plea agreements" and "written communications," and requesting summary of oral communications); Tr. at 2865-66 (addressing Part I, and asking for "written communications and a description of oral communications"); Tr. at 3194 (indicating receipt of "in camera submission").

The government does not deny that the new trial team has met with witnesses or that agents have met with witnesses since July 2004; presumably, someone took notes. In any event, a tactical failure to take notes would not relieve the government of its obligation to disclose oral Brady material.

In addition, the government must disclose the first time that Mr. Kearney claimed that alleged co-conspirators invoked the name Walter Forbes in connection with the alleged fraud. The attorney notes demonstrate that this was a recent fabrication (which Mr. Kearney denied at trial), see Forbes Trial Mot. No. 30, but the government has refused to disclose the first time Mr. Kearney made such allegations. The government incredibly suggests that no one asked Mr. Kearney about Mr. Forbes or Mr. Bell during the five-plus years before his story began to change on the eve of trial. See Resp. at 14 n.11. Particularly given this argument that Kearney's changed story is attributable to the questions asked, what the government asked Mr. Kearney when he failed to mention Messrs. Forbes and Bell is also Brady/Giglio material that must be disclosed.

**2. Attorney Proffers.** The government has provided only portions of attorney proffers, but should provide the full terms of those proffers. The attorney proffers on behalf of Mr. Corigliano and Ms. Pember, for example, must consist almost entirely of material impeachment and exculpatory information because at the time of the proffers, those witnesses were denying all wrongdoing; whereas at the time of trial, they testified that they engaged in a massive fraud and Mr. Corigliano claimed that Mr. Forbes was involved. See Spicer v. Roxbury

Correctional Institute, 194 F.3d 547, 556 (4th Cir. 1999) (government violated Brady by failing to disclose attorney proffer reflecting version significantly less damaging than witness's testimony). The government should also disclose any evidence that statements made by Mr. Corigliano's counsel in attorney proffers were attributed to or authorized by Mr. Corigliano because at trial he claimed that he was unaware of what his attorneys were saying to the government. See, e.g., Tr. at 7611, 7672-73. Again, as set forth above, the mere fact that defense counsel cross-examined him, see Resp. at 8, does not relieve the government of its obligation to disclose material impeachment information that he denied.

### C. Documents and Information Concerning Kearney's Impaired Memory

The government asserts that it "has no knowledge that Kearney is receiving any sort of treatment for any condition that would impair his memory or cognition," Resp. at 15 (emphasis added), but fails to answer the requests which ask, for example, whether Mr. Kearney has ever had a condition or received treatment (irrespective of whether he is currently receiving treatment), and whether the condition or the treatment (as opposed to simply the treatment) could (as opposed to would) impair his cognitive functioning, memory or suggestibility. Nor does the government state whether it has asked Mr. Kearney these questions, much less undertaken any independent investigation. The government's suggestion that there might be privileged mental health records, see id. at 15-16 n.12, underscores the need for further investigation by the government into Mr. Kearney's condition. See Silva v. Brown, 416 F.3d 980 (9th Cir. 2005) (reversing

conviction when government failed to disclose that witness agreed not to be psychiatrically evaluated before testifying and noting that "evidence that calls into question a witness's competence to testify is powerful impeachment material").

### D. Documents and Information Concerning Bias of Cendant Witnesses

The government has identified three current or former HFS (now Cendant) employees on its witness list. Matters arising during and after the first trial (such as Cendant's collaboration with the prosecution team in its presentation of the case and Cendant's submission of a "victim" statement) suggest that there is new, undisclosed evidence regarding Cendant's bias against Mr. Forbes. Clearly, the government must disclose communications between Cendant and the government concerning such topics as whether to pursue the retrial. The government does not deny that this or similar information exists, but it has refused to disclose its oral or written communications with Cendant representatives that evidence Cendant's bias. Contrary to the government's assertion, it is not the law that just because it is allegedly clear that a witness is biased, there is no need to disclose particular acts taken by the witness that demonstrate his bias.

## CONCLUSION

For the reasons set forth above and in the opening memorandum, Mr. Forbes respectfully requests that the Court order the government to provide the requested documents and information.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

# EXHIBIT 1

# UNITED STATES DEPARTMENT OF JUSTICE

*Federal Building*
*450 Main Street, Room 617*
*Hartford, CT 06103*



Telephone (860)240-2675
(Fax): (860)240-3021(Connecticut)

DATE: 8/3/04          PAGES TO FOLLOW: 1

DELIVER TO: Barry Simon, Esq.     FAX: 860-293-1651

[X] URGENT DELIVERY       [X] NORMAL DELIVERY

SUBJECT/COMMENTS: _____

Barry my cell # is 973-454-4147

## **PROPOSED STIPULATION**

The United States of America, Walter A. Forbes, and E. Kirk Shelton hereby stipulate to the following:

1. Prior to Mr. and Mrs. Corigliano's April 16, 2004 settlement agreement with the Securities and Exchange Commission ("SEC"), the SEC was advised that counsel for Mr. Corigliano, Kramer Levin Naftalis & Frankel LLP, and counsel for Mrs. Corigliano, Fried Frank Harris Shriver & Jacobson LLP, had received legal fee retainers.

2. The unused balance of the legal fee retainer paid to Kramer Levin Naftalis & Frankel LLP as of April 30, 2004 was $1,633,258.27. The unused balance of the legal fee retainer paid to Fried Frank Harris Shriver & Jacobson LLP as of April 30, 2004 was $417,358.65. Pursuant to an oral agreement between the SEC and counsel for Mr. and Mrs. Corigliano, the Corigliano's are allowed to use those funds for legal services, and at the completion of Mr. and Mrs. Corigliano's need for legal representation, the balance, if any, remaining in the retainer accounts will be provided to the Receiver appointed under Mr. Corigliano's settlement agreement with the SEC.

# EXHIBIT 2

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

BARRY S. SIMON
(202) 434-5005
bsimon@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

August 23, 2005

**<u>Via Facsimile (973-297-2045) & First Class Mail</u>**
Michael Martinez, Esq.
Craig Carpenito, Esq.
U.S. Attorney's Office
District of New Jersey
970 Broad Street, Suite 700
Newark, NJ 07102

   Re: <u>United States v. Forbes</u>, **3:02CR264 (AWT)**

Dear Messrs. Martinez and Carpenito:

  Pursuant to Fed. R. Crim. P. 16, <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>United States v. Giglio</u>, 405 U.S. 150 (1972), Mr. Forbes requests that the government supply the following information with respect to Mr. Corigliano:

  1. According to Mr. Corigliano's June 14, 2000 Order of Release, Mr. Corigliano was not required to report to Pretrial Services as a condition of his bail. Please confirm that it is correct that Mr. Corigliano has not been required to report to Pretrial Services during the past five-plus years.

  2. The government's June 27, 2003, July 28, 2003, and January 9, 2004 letters concerning Mr. Corigliano contain exculpatory information but do not identify (i) the date(s) on which Mr. Corigliano provided the information or (ii) the person(s) present during the interview(s) or conversation(s). This information is critical to cross-examination of Mr. Corigliano concerning the information in the letters and to Mr. Forbes' ability to present testimony concerning Mr. Corigliano's prior inconsistent statements. We further request that the government produce its notes of the interviews or conversations referenced in these letters in order to ensure that all of the pertinent information provided by Mr. Corigliano to the government is encompassed by the government's letters.

  Thank you for your prompt attention to these matters.

               Sincerely,

               Barry S. Simon

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing Reply Memorandum in Support of Motion of Walter A. Forbes to Compel Discovery (Forbes Retrial Motion No. 3) to be sent on August 26, 2005 to the following via e-mail and FedEx:

Norman Gross, Esq.
U.S. Attorney's Office
District of New Jersey
401 Market Street
Fourth Floor
Camden, NJ 08101

Michael Martinez, Esq.
Craig Carpenito, Esq.
U.S. Attorney's Office
District of New Jersey
970 Broad Street, Suite 700
Newark, NJ  07102

_____
Barry S. Simon