UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>)<br>v.  )<br>)<br>WALTER A. FORBES.  )<br>)<br>) | No. 3:02CR264 (AWT)<br>August 26, 2005 |

**REPLY MEMORANDUM IN SUPPORT OF MOTION
OF WALTER A. FORBES TO OBTAIN A TRANSCRIPT
OF THE COURT'S EX PARTE COMMUNICATIONS
WITH GOVERNMENT COUNSEL
(Forbes Retrial Motion No. 4)**

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this reply memorandum in support of his Motion to Obtain a Transcript of the Court's Ex Parte Communications with Government Counsel.

There is no question but that ex parte communications are "rarely, if ever, looked upon with favor." Penthouse Int'l, Ltd., 855 F.2d 963, 987 (2d Cir. 1988). Indeed, the Second Circuit has stated that an exception to the rule against ex parte communications could be made "only in cases in which there is a compelling need to maintain the secrecy of certain evidence, no alternative means of meeting that need exist other than ex parte submission, and the court carefully limits its sealing order only to materials genuinely implicating the compelling need." United States v. Abuhamra, 389 F.3d 309, 321 (2d Cir. 2004) (holding that the district court violated the defendant's due process rights when it relied on ex parte, in camera information to deny him post-trial bail).

Here, there was absolutely no need to maintain secrecy, much less a compelling one. While an inquiry into government counsel's future employment plans may delve into personal employment issues that could be appropriately withheld from the public record, they are not "confidential" in a manner that warrants that they not be shared with the defense. See Robinson v. Cattaraugus County, 147 F.3d 153, 165 (2d Cir. 1998) (noting that there was nothing in the record to suggest that material received ex parte and in camera was confidential, and that the court was "not aware of an appropriate basis for the court to conduct its review in the absence of plaintiffs' counsel").

The government's argument that the ex parte communications were justified because of the defense's unwillingness to accept the representations of government counsel, Opp. at 3, misses the mark. In opposing the government's motion for a continuance, Mr. Forbes did *not* question the veracity of the government's representations. Rather, Mr. Forbes accepted the representations concerning the prosecutors' future employment desires, but argued that given the scheduled trial date of March 11, 2005, and the fact that the prosecutors were still government employees, they nonetheless had an ethical obligation to postpone any future employment opportunities until they could complete their obligations in the present case. Opposition to Continuance at 4-5.

The feasibility of this latter argument of Mr. Forbes' was disputed by the government, making it all the more important for the Court to hold a hearing to explore the feasibility of the government going forward on March 11, 2005. That

2

hearing should have included the participation of Mr. Forbes' counsel, however, for exploring the facts through the adversarial process is the best means for ferreting out the truth. See In re Colony Square, 819 F.2d at 276 n.12 (noting that the adversarial process is a fundamental precept of our system of justice).

Had the disputed facts been subject to the adversarial process, the following (now established) facts may have been unearthed, revealing that there in fact was no need to postpone the trial date in violation of Mr. Forbes' speedy trial rights: first, that the government estimated that its case against Mr. Forbes will take only 6-10 weeks, see Transcript of Proceeding before Judge Walls in the Cendant Civil Matters, 4/25/05, at pp. 7-8, attached; second, that as of the hearing held by this Court on May 20, 2005, Mr. Carney appeared still to have been employed by the United States Attorney's Office, see Tr. 5/20/05; and third, that as of the hearing held by this Court on June 17, 2005, Mr. Schechter not only appeared to be currently employed by the United States Attorney's Office, but was still participating in trials, see Tr. 6/17/05 at 13. Thus, had the trial commenced on the scheduled date of March 11, 2005, the government's case would have concluded prior to either of these two prosecutors departing the office, and well before Mr. Schechter had ceased participating in trials on behalf of the United States Attorneys' Office for the District of New Jersey.

## CONCLUSION

For the foregoing reasons, Mr. Forbes respectfully objects to the ex parte communications that occurred between government counsel and the Court concerning the government's Motion for a Continuance, and moves this Court for an order that a transcript of the ex parte communications with Messrs. Carney and Schechter be made and produced to the defense.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Dated: August 26, 2005

# EXHIBIT 1

```
        IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF NEW JERSEY
                Civil No. 98-1664(WHW)
```

IN RE: CENDANT LITIGATION,

                                    Transcript of
                                    Proceedings

-----------------------------------

                                    Newark, New Jersey
                                    April 25, 2005

B E F O R E:   HONORABLE WILLIAM H. WALLS,
               UNITED STATES DISTRICT JUDGE


A P P E A R A N C E S:

   SAMUEL KADET, ESQ.
   (Skadden, Arps, Slate, Meagher & Flom, LLP)

   D. GREG DURBIN, ESQ.
   (McCormick, Barstow, Sheppard, Wayte & Carruth, LLP)


         - - - - - - - - - - -

     Pursuant to Section 753 Title 28 United States Code, the following transcript is certified to be an accurate record as taken stenographically in the above-entitled proceedings.

                                    _____
                                    Yvonne Davion, CSR, CM
                                    Official Court Reporter

1      MR. CARPENITO: The quality of the defense is
2 one of the things that might have them come up with the
3 different strategy, something that they wouldn't quite
4 frankly wouldn't be entitled to on their criminal case.
5 Discovery they wouldn't be entitled to.
6      THE COURT: We are talking about discovery.
7 What I'm trying to figure out is what is to be
8 discovered that they have not already discovered in
9 their examination of these people, or am I being just
10 naive about that.
11      MR. CARPENITO: Well, your Honor, the
12 individuals did not testify as to every fact that they
13 know with regard to this litigation when they got up on
14 the stand and testified at trial. As you know your
15 Honor civil deposition can be much more lengthy and
16 cover areas that the government did not choose to bring
17 out on its direct.
18      THE COURT: All right. So you wish the matter
19 as to these ten persons, by way of discovery, stayed
20 pending the trial of Mr. Forbes in September of this
21 Fall, right?
22      MR. CARPENITO: Correct, your Honor.
23      THE COURT: About how long do you think the
24 case is going to take?
25      MR. CARPENITO: The government expects it to be

1  6 to 10 weeks, your Honor.
2          THE COURT: So you are saying by Thanksgiving
3  or Christmas the case should be over.
4          MR. CARPENITO: Yes, your Honor.
5          THE COURT: All right. Let me hear those from
6  those who oppose this and I think you are the first one,
7  sir.
8          Your name again is?
9          MR. DURBIN: Mr. Durbin, your Honor. I
10 appreciate the opportunity to be heard on this.
11         The Alexander and Bock plaintiffs that we
12 represent originally worked for a company by the name of
13 Sierra On Line that had employee stock options. And,
14 Sierra On Line was acquired by CUC and those employee
15 stock options that they had were converted to CUC
16 shares. And the price, both for the acquisition of the
17 company and those stock options, we contend, was
18 fraudulently inflated. So that's the reason we are
19 here.
20         The lawsuits filed by the Bock and Alexander
21 plaintiffs were filed back in 1999 and in 2000. And we
22 believe that their case relatively straightforward. And
23 indeed the only defendant that the Alexander and Bock
24 plaintiffs have sued is CUC which became Cendant
25 Corporation. We have not sued any of the other

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Reply Memorandum in Support of Motion of Walter A. Forbes to Obtain a Transcript of the Court's <u>Ex Parte</u> Communications with Government Counsel to be served on August 26, 2005 to the following via e-mail and FedEx:

> Norman Gross, Esq.
> U.S. Attorney's Office
> District of New Jersey
> 401 Market Street
> Fourth Floor
> Camden, NJ 08101
>
> Michael Martinez, Esq.
> Craig Carpenito, Esq.
> U.S. Attorney's Office
> District of New Jersey
> 970 Broad Street, Suite 700
> Newark, NJ 07102

_____
Barry S. Simon