## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 3:02CR264 (AWT) |
| WALTER A. FORBES. | ) | August 26, 2005 |
| | ) | |

## REPLY MEMORANDUM IN SUPPORT OF RENEWED MOTION OF DEFENDANT WALTER A. FORBES TO PRECLUDE THE GOVERNMENT FROM PRESENTING ITS PROPOSED EXPERT TESTIMONY BECAUSE IT DOES NOT SATISFY THE RELIABILITY REQUIREMENTS OF <u>DAUBERT</u> AND FEDERAL RULE OF EVIDENCE 702
### (Forbes Retrial Motion *In Limine* No. 1)

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this reply memorandum in support of his Motion to Preclude the Government from Presenting Its Proposed Expert Testimony Because It Does Not Satisfy the Reliability Requirements of <u>Daubert</u> and Federal Rule of Evidence 702.

## I.    THE GOVERNMENT IGNORES THE IMPLICATIONS OF HECKLER'S TRIAL TESTIMONY.

The government argues that Mr. Forbes' motion presents nothing new, and should thus be dismissed out of hand.  Government Opposition ("Opp.") at 3. This argument ignores the fact that Mr. Heckler has now testified at trial, and that contrary to the position taken at the conclusion of the <u>Daubert</u> hearing – that Mr. Heckler would testify based upon "assumed facts," *see, e.g.,* Tr. 3/25/2004 at 2600-01 – Mr. Heckler's trial testimony was presented as being based on Mr. Heckler's own "fact finding," and on his personal interpretation of the trial evidence.  This changed

Oral Argument Requested

position alone is sufficient to warrant reconsideration of the admissibility of Mr.

Heckler's testimony.

The Court's prior ruling was premised on the <u>Daubert</u> hearing, at

which Mr. Heckler testified that while he had conducted his own investigation for

merely "background" purposes, his testimony would be based on "assumed facts":[1]

> The facts are stipulated to me. I've actually gone over and
> above doing a lot of analysis with those facts to ensure
> that I understand what was happening as best as I could
> with the facts provided to me, that I understood that to be
> able to draw a conclusion on how GAAP would apply, I
> investigated whether there were other reasons why GAAP
> would make sense given what the company may have
> done, that I considered all those other things in assessing
> the materiality. *But that I'm not responsible nor do I need
> to under my professional standards to validate the facts.*

Tr. 3/25/2004 at 2600-01 (emphasis added).  Now that Mr. Heckler has actually

testified at trial, we know that this representation proved to be untrue.  Mr.

Heckler instead suggested to the jury that he had conducted a factual investigation

sufficient to support his opinions.

The government attempts to gloss over this complete reversal by

arguing that when Mr. Heckler testified at the Daubert hearing that he would be

basing his opinion on "assumed facts," Mr. Heckler meant simply that he had

assumed that the documents he reviewed were what they purported to be.  Opp. at

---

[1] Because the Court denied Mr. Forbes' motion without any analysis or explanation,
it is unclear on what grounds the Court relied in finding the testimony admissible.
We therefore can only assume that the Court relied upon Mr. Heckler's final
position during the Daubert hearing:  that he would be testifying on the basis of
"assumed facts."

6-7.  The government's argument not only lacks logic, but also is contrary to the

actual testimony of Mr. Heckler.  For example, in addition to the testimony quoted

above, Mr. Heckler testified:

> Q.  When you say you based your assumptions on that
> material, did you decide what you should assume to be a
> fact from within the body of the Audit Committee Report,
> the indictment and the proffered answers?
>
> A.  I think I was provided the entire population of
> possible facts.  I decided which facts would be most
> relevant.  *I viewed them all as assumed facts unless I was
> going to go and prove them myself and be prepared to talk
> about them as a fact witness, so they all were assumed.*

Tr. 3/25/2004 at 2653-54 (emphasis added).  Mr. Heckler further testified:

> I did understand that my role as an expert was to use my
> training, education and experience to assess which facts
> were relevant and then to be prepared to analyze the facts
> I chose as relevant out of that population and to testify.
> And that those *assumed facts* I would not be responsible
> for proving; instead, *the government would be responsible
> for proving* through its case or that you, as the defense,
> would be in a position to disprove through your case.

Tr. 3/25/2004 at 2654 (cited by the government, Opp. at 6) (emphasis added).  Of

course, the problem is that Mr. Heckler did not tell the jury he had assumed any

facts at all, and so the government was not put to its burden of proving such facts to

be true.  Instead, Mr. Heckler implied that he had conducted a factual investigation

sufficient to support his testimony, warranting a new look at the admissibility of his

opinions.  Moreover, to the extent Mr. Heckler is in fact accepting certain "assumed

facts" based on the Audit Committee Report, Tr. 3/25/2004 at 2653-54, he runs into

the host of unreliability issues inherent in the multiple layers of hearsay underlying

that report, as well as problems with the Confrontation Clause of the Sixth

Amendment.  See Forbes Pretrial Motion No. 49 at 9-15.

## II.    MR. HECKLER'S SO-CALLED "FACTUAL INVESTIGATION" WAS INSUFFICIENT TO SUPPORT HIS TESTIMONY.

The government argues that Mr. Heckler's alleged compliance with the

AICPA's "consulting standards" in his so-called "factual investigation" gets him over

the Daubert hurdle.  Opp. at 4-5.  The accounting profession cannot thwart the

requirement that testifying experts apply the same standards to their expert

testimony as they would in other professional endeavors simply by adopting

standards specific to expert testimony.  See Kumho Tire Company, Ltd. v.

Carmichael, 526 U.S. 137, 152 (1999) (requiring that an expert employ "in the

courtroom the same level of intellectual rigor that characterizes the practice of an

expert in the relevant field.").  Indeed, the consulting standards themselves

acknowledge this by requiring that a testifying expert apply not only the consulting

standards, *but also any other standards applicable to the type of opinion he is

rendering*.  Tr. 3/24/2004 at 2366-68 (testimony of Mr. Jackson); Tr. 3/24/2004 at

2478-79 (testimony of Mr. Murphy).  See F-306 CS 100.005, note 1a.

Mr. Heckler's admitted failure to follow the applicable standards does

not simply provide fodder for cross-examination, as contended by the government,

but renders his opinion inadmissible.  Only after an expert meets the foundational

requirements of admissibility does the burden shift to the opposing party to attack

the weight of the opinion by exploring deficiencies in the bases.  *See, e.g.,* Stecyk v.

Bell Helicopter Textron, Inc., 295 F.3d 408, 414 (3d Cir. 2002), cited by the government. Indeed, the government's argument ignores the fundamental gatekeeping function of the Court, which must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-593 (1993). Where, as here, the expert's opinion fails to meet even the minimum standards employed by others in the relevant field when carrying out their regular duties, this gatekeeping function must be employed to exclude the testimony. Amorgianos v. National RR Passenger Corp., 303 F.3d 256, 265-266 (2d Cir. 2002) (quoting Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137 (1999)).

## III.    THE GOVERNMENT MISCHARACTERIZES MR. HECKLER'S TESTIMONY VOUCHING FOR OTHER WITNESSES.

The government's claim that Mr. Heckler did not vouch for witnesses, but merely "assumed" their testimony to be true, is flatly contradicted by Mr. Heckler's testimony.

Regardless of whether an expert's testimony constitutes "vouching," it is clear that an expert cannot properly testify to another witness's credibility. United States v. Scop, 846 F.2d 135, 142-143 (2d Cir. 1988) (holding that while an expert witness can assume the truth of other witnesses' testimony, he cannot base his opinion on a "positive assessment" of another's credibility), *rev'd in part on other grounds on rehearing*, 856 F.2d 5 (1988). Here, Mr. Heckler did far more than state that his opinions "assumed" the truth of other witnesses. Rather, Mr. Heckler

5

testified that his "independent factual investigation" *confirmed* the testimony of critical witnesses such as Cosmo Corigliano and Casper Sabatino. *See, e.g.*, Tr. 10,629-30; Tr. 10,651-52. This testimony crossed the line of permissible expert testimony because it improperly suggested that Mr. Heckler had concluded that Mr. Corigliano and Mr. Sabatino had testified truthfully. Particularly in a case where the outcome turns almost exclusively on the credibility of Cosmo Corigliano, such impermissible testimony should be strictly prohibited.

Moreover, Mr. Heckler's testimony *did* cross into impermissible vouching. Much of Mr. Heckler's "independent factual investigation" that purportedly confirmed Mr. Sabatino's and Mr. Corigliano's testimony was based on evidence never presented to the jury. *See* Opening Memorandum at 5-7. Thus Mr. Heckler did precisely what vouching prohibits: suggest that there was additional evidence not presented to the jury that supported these witnesses' credibility. United States v. Newton, 369 F.3d 659, 681 (2d Cir. 2004). Although such vouching typically arises in the context of a prosecutor's statements, the policy considerations behind prohibiting vouching are equally applicable to an expert witness testifying on behalf of the government – that a jury will trust the judgment of the speaker over its own because of the special imprimatur of expertise or trustworthiness. Id.

In addition, the government's description of Mr. Heckler as having relied on the cooperators' testimony is contrary to the government's agreement before trial that Mr. Heckler would not opine regarding intent, and highlights why the defense could not cross-examine Mr. Heckler without undue risk of eliciting

improper testimony.  At trial, the government conceded that Mr. Heckler could not testify to "irregularities" (as opposed to "errors") because "irregularities" require an element of intent which was not a proper subject of Mr. Heckler's testimony.  Yet in its Opposition, the government now states that Mr. Heckler *is* opining regarding intent – describing his analysis as deciding whether the books at CUC were "cooked," based upon the assumed mental state of the cooperating witnesses.  Opp. at 8-9.  Any cross-examination by the defense would risk eliciting further improper testimony regarding intent from Mr. Heckler – a subject the government conceded was not properly put to an expert, yet on which Mr. Heckler initially formed and proffered opinions.[2]

## IV.    ANY "DOUBLE BIND" IS OF THE GOVERNMENT'S OWN MAKING.

Finally, the government complains that the defense is trying to put it in an "untenable double bind" by arguing that Mr. Heckler's testimony should be excluded as cumulative of the cooperators' testimony, while also arguing that the cooperators' testimony should have been excluded.  Opp. at 16-17.  There is nothing "inconsistent" in Mr. Forbes position; nor is he trying to have it "both ways."  Id. Rather, it is the government that is trying to have its cake and eat it too – first by introducing improper expert testimony through lay witnesses, and then by introducing cumulative testimony from an expert which impermissibly vouches for

---

[2] The government claims Mr. Forbes did not cross-examine Mr. Heckler because his testimony was more useful than damaging to his defense theory.  If the government actually believed this argument, however, it would not be proffering Mr. Heckler's testimony in the first instance.

those lay witnesses.  Had the objectionable testimony from the lay witnesses been excluded, as requested by the defense,[3] Mr. Heckler's testimony would not be cumulative (although it would remain inadmissible under <u>Daubert</u>, as discussed <u>supra</u>).  Indeed, should the Court exclude the parallel testimony of the lay witnesses on the ground that it is expert testimony in the retrial, Mr. Forbes will withdraw his claim that Mr. Heckler's testimony is cumulative.

The true "double bind" here is of the government's own making – it should not be permitted to introduce expert testimony through the cooperators because it did not qualify them as experts under Federal Rule of Evidence 702, and it should not be permitted to introduce expert testimony through Mr. Heckler because the bases of his opinions fail to meet the reliability and confrontation requirements of Federal Rule of Evidence 702, <u>Daubert</u>, 509 U.S. 579, and the United States Constitution.[4]

---

[3] The defense maintains that the cooperating witnesses were improperly permitted to provide expert testimony concerning the accounting practices at CUC.  The Court has disagreed, holding that the testimony at issue did not constitute "expert testimony."

[4] The government's request that the Court ignore Mr. Forbes' motion to exclude the testimony of Mr. Sack is premised on the erroneous assertion that Mr. Forbes offered no argument in support of the motion.  In fact, Mr. Forbes incorporated his prior arguments concerning Mr. Sack into his renewed Motion.  *See* Opening Memorandum at 3.

## CONCLUSION

For the foregoing reasons, as well as the reasons stated in Mr. Forbes'
earlier pleadings, incorporated herein, Mr. Forbes respectfully requests that the
Court preclude the testimony of the government's experts, Mr. Heckler and Mr.
Sack, or in the alternative, that the Court preclude Mr. Heckler from (1) suggesting
in any way that he conducted his own factual investigation, or (2) bolstering other
witnesses' credibility by suggesting that his work confirmed their testimony, or (3)
purporting to quantify the amount of the alleged accounting errors.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Dated: August 26, 2005

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Reply Memorandum in

Support of the Renewed Motion of Defendant Walter A. Forbes to Preclude the

Government from Presenting Its Proposed Expert Testimony Because It Does Not

Satisfy the Reliability Requirements of <u>Daubert</u> and Federal Rule of Evidence 702

(Forbes Retrial Motion *In Limine* No. 1) to be sent on August 26, 2005 to the

following via e-mail and FedEx:

> Norman Gross, Esq.
> U.S. Attorney's Office
> District of New Jersey
> 401 Market Street
> Fourth Floor
> Camden, NJ 08101
>
> Michael Martinez, Esq.
> Craig Carpenito, Esq.
> U.S. Attorney's Office
> District of New Jersey
> 970 Broad Street, Suite 700
> Newark, NJ  07102

Barry S. Simon