UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| _____ ) | |
| UNITED STATES OF AMERICA ) | |
| ) | No. 3:02CR264 (AWT) |
| v. ) | |
| ) | |
| ) | September 2, 2005 |
| WALTER A. FORBES ) | |
| ) | |
| _____ ) | |

MEMORANDUM IN SUPPORT OF
MOTION OF DEFENDANT WALTER A. FORBES
TO PRECLUDE THE GOVERNMENT FROM PRESENTING
EVIDENCE, CROSS-EXAMINATION, OR ARGUMENT
CONCERNING THE CHARGING OF MR. FORBES' AIRPLANE
EXPENSES TO THE CENDANT MERGER RESERVE
(Forbes Retrial Motion *In Limine* No. 2)

Defendant Walter A. Forbes, through undersigned counsel, respectfully

submits this memorandum in support of his motion *in limine* to preclude the

government from presenting any evidence, cross-examination, or argument

concerning the charging of Mr. Forbes' plane expenses to the Cendant merger

reserve.

## ARGUMENT

I.   THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM
     PRESENTING ANY EVIDENCE, CROSS-EXAMINATION, OR
     ARGUMENT CONCERNING THE PLANE EXPENSES UNDER RULES
     401 AND 403.

A.   Mr. Forbes Had Nothing To Do With the Charging of the Plane
     Expenses to the Cendant Merger Reserve.

The evidence presented at the 2004 trial established beyond any doubt

that Mr. Forbes had no involvement in the decision by Mr. Corigliano and Mr.

Shelton to charge Mr. Forbes' 1995 and 1996 plane expenses to the Cendant merger

reserve. Both Mr. Corigliano and Mr. Shelton, the two people involved in that

decision, testified to Mr. Forbes' <u>lack</u> of involvement the decision (as did Mr. Forbes).

<u>See</u> Tr. 7377-78 (Corigliano);[1] Tr. 12323 (Shelton);[2] <u>see also</u> Tr. 13836-37 (W.

Forbes). Mr. Corigliano further testified that Mr. Forbes's signature was on the

expense report before Mr. Corigliano and Mr. Shelton decided to charge the plane

expenses to the merger reserve, Tr. 7375-77, and before Mr. Shelton wrote on the

document that the expenses should be charged to the reserve, Tr. 7378.

　　　　The evidence at trial demonstrated conclusively that Mr. Forbes was

not involved in the decision to charge Mr. Forbes' plane expenses to the Cendant

merger reserve and was not aware of it. Indeed, as recently as July 21, 2005,

government counsel Richard Schechter pointed out that "<u>Walter Forbes has nothing</u>

---

[1]　　Mr. Forbes cites Mr. Corigliano's testimony because he and Mr. Shelton were the only witnesses who testified about the decision to charge the plane expenses to the merger reserve. Mr. Corigliano is a liar and Mr. Forbes does not credit his testimony. As to this issue, Mr. Forbes merely points out that even Mr. Corigliano, who fabricated evidence against Mr. Forbes, did not include Mr. Forbes in this conversation, and did not attribute to Mr. Forbes knowledge that the expenses were charged to the merger reserve.

[2]　　As the Court is aware, Mr. Forbes testified that he did not have any conversation with Mr. Shelton concerning fairness issues relating to the plane expense. For purposes of this motion, however, the Court need not address that inconsistency. Mr. Shelton's testimony made clear that Mr. Forbes was not a party to the discussion Mr. Shelton had with Mr. Corigliano concerning charging the plane expense to the merger reserve. Mr. Shelton also testified that Mr. Forbes never asked for the plane expenses to be charged to the merger reserve and that Mr. Shelton did not believe that he ever discussed that issue with Mr. Forbes. Tr. 13181.

to do with this." Tr. (7/21/05) at 287 (emphasis added); <u>see also</u> <u>id.</u> ("when Mr.

Corigliano testified at trial, Your Honor, he didn't put Mr. Forbes in this, Mr. Walter

Forbes in this conversation in any way, shape or form. Your Honor, he didn't put Mr.

Forbes in this, Mr. Walter Forbes in this conversation in any way, shape or form.").

> **B.    It Would Be Extremely Misleading, Confusing, and Prejudicial To Mr. Forbes for the Government to Present Evidence or Argument Concerning the Charging of the Plane Expenses to the Cendant Merger Reserve.**

It is undisputed that Mr. Forbes was not involved in the decision to

charge plane expenses to the Cendant merger reserve. <u>See</u> Tr. (7/21/05) at 287. This

evidence has no probative value with respect to Mr. Forbes. It would be extremely

prejudicial to Mr. Forbes, as well as highly misleading, for the government to present

this evidence at trial. The jury could easily come to the erroneous conclusion that

Mr. Forbes was involved in the decision to charge the expenses to the merger

reserve, or that he was aware of the charge, because Mr. Forbes signed the expense

form and the expenses in question were Mr. Forbes'. Because the evidence in

question has no probative value with respect to Mr. Forbes, and would be

exceedingly prejudicial, the Court should exclude it pursuant to Fed. R. Evid. 401

and 403.

The evidence should be excluded under Rule 401 because it has no

probative value with respect to Mr. Forbes' innocence or alleged guilt. The

government agrees that Mr. Forbes had nothing to do with the decision to charge the

plane expenses to the merger reserve. Tr. (7/21/05) at 287. Given that fact, and the evidence presented at the 2004 trial -- which demonstrated conclusively that Mr. Forbes was not involved in this decision and was not aware of it -- the plane expense evidence proves nothing with respect to Mr. Forbes. It has no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Accordingly, the Court should preclude any evidence or argument on this subject at trial.

The Court also should preclude the government from presenting any evidence or argument concerning the charging of the plane expenses to the Cendant merger reserve under Rule 403. To the extent this evidence has any probative value in this case (and we submit it has none), it is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Id.

First, the evidence would be highly prejudicial to Mr. Forbes because the plane expenses charged to the merger reserves were Mr. Forbes' expenses and he signed the expense reimbursement form. Although Mr. Forbes had nothing to do with the charging of the expenses to the Cendant merger reserve, knew nothing about it, and signed the form before it said anything about a charge to the merger reserve, a juror could conclude that Mr. Forbes must have been involved because the

4

expenses in question were his. A juror also could speculate, erroneously, that because the form itself reflects that the plane expenses will be charged to the reserve, and because Mr. Forbes signed the form, Mr. Forbes must have signed the form after the merger reserve language was added to the form.

Second, the evidence is prejudicial because it involves a significant amount of money. The plane expenses in question were in excess of $500,000. Given the lack of probative value of this evidence with respect to Mr. Forbes, the likely impact of it will be to emphasize Mr. Forbes' use of an expensive private plane and to bias the jury against Mr. Forbes. It is improper for the government to place undue emphasis on the wealth of a defendant. United States v. Stahl, 616 F.2d 30 (2d Cir. 1980); see also United States v. Lachman, 48 F.3d 586, 592 (1st Cir. 1995) ("The concern is with any pronounced tendency of evidence to lead the jury, often for emotional reasons, to desire to convict a defendant for reasons other than the defendant's guilt.").

Third, the plane expense evidence is both misleading and confusing. It involves Mr. Forbes' expenses, and a form signed by Mr. Forbes, yet Mr. Forbes was not involved in the decision to charge the expenses to the Cendant merger reserve and was not aware of that decision. A juror could certainly be misled by this evidence to believe that Mr. Forbes was somehow involved in this decision or had knowledge of it. The minimal probative value (at best) of this evidence with respect to the case is far outweighed by its potential to mislead and confuse the jury.

5

For all of these reasons, the Court should prelude the government from presenting any evidence or argument at trial concerning the charging of Mr. Forbes' plane expenses to the Cendant merger reserve.

## II.   THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM OFFERING THE PLANE EXPENSE REIMBURSEMENT VOUCHER PURSUANT TO FED. R. EVID. 1001 AND 1003.

Government Exhibit ("GX") 158 (Exhibit 1 hereto)) purports to be a copy of an employee expense report for Mr. Forbes. Government Exhibit 388 (Exhibit 2) purports to be the same document. The two documents are not identical, however. For example, one contains a signature by Comp-U-Card President Tony Menchaca (GX 388); the other does not. In addition, one contains two different post-it notes (GX 158); the other does not.

During discovery, Cendant and the government produced various versions of the document. <u>See</u>, <u>e.g.</u>, Exhibits 3-5. In addition to the versions contained in GX 158 and GX 388, for example, copies of the document have been produced that contain a <u>single</u> post-it note that is different than the two post-it notes on GX 158. <u>See</u> Exhibit 5. Moreover, both GX 388 and GX 158 contain a handwritten notation "Balance due to plane hrs for CUC business -- <u>see attached</u>." GX 158; GX 388 (emphasis added). Neither GX 388 nor GX 158, however, contains an attachment.

It is impossible to determine, without examining the originals of GX 158 and GX 388, which of the numerous versions of the document that exist is an

6

accurate reproduction of the actual record in Cendant's files. It also is impossible to

determine, without examining the originals of GX 158 and GX 388, whether the

original document maintained in Cendant's files was part of a larger group of

documents maintained together as documentation concerning this expense. It

certainly appears, from some of the versions of the document produced in discovery,

that the document was <u>not</u> maintained in isolation, but rather with several

attachments. <u>See</u> Exhibits 3-5. Finally, it is impossible to determine, without

examining the originals of GX 158 and GX 388, which of the handwriting on the

different versions of the document was written in different ink.

Because there are so many versions of the document in question, with

different handwritten notations, post-its, and attachments, none of the different

versions of the document constitutes a "duplicate" as that term is defined in Fed. R.

Evid. 1001(4). Federal Rule of Evidence 1001(4) provides that photocopies are

considered duplicates of original documents if they "<u>accurately reproduce[] the</u>

<u>original.</u>" <u>Id.</u> (emphasis added). Here, however, the original has not been supplied

and it is impossible to determine, from the different versions of the document, which

is an accurate reproduction of the original. Accordingly, neither GX 158 nor GX 388

is admissible as a "duplicate" document under Rule 1001(4).

GX 158 and GX 388 also are not admissible under Fed. R. Evid. 1003.

Under Rule 1003, "[a] duplicate is admissible to the same extent as an original

unless (1) a genuine question is raised as to the authenticity of the original or (2) in

7

the circumstances it would be unfair to admit the duplicate in lieu of the original."
Id. Here, a genuine question has been raised as to the authenticity of the original
and, under the circumstances, it would be unfair to admit the purported duplicate in
lieu of the original. Indeed, it is entirely unclear which of the many versions of the
document is an accurate copy of the document in Cendant's files and which
documents were appended to the document in its original form. Without the original,
it also is impossible to determine the different inks on the document.

Under these circumstances, it would be fundamentally unfair to admit
GX 158, GX 388, or any other version of the expense reimbursement form  into
evidence in lieu of the original. See, e.g., Opals on Ice Lingerie v. Bodylines, Inc.,
320 F.3d 362, 371 (2d Cir. 2003) (photocopies not admissible under Fed. R. Evid.
1003 where parties produced materially different copies of agreement and no original
could be located); United States v. Haddock, 956 F.2d 1534, 1545-46 (10th Cir. 1992)
(affirming where trial court excluded photocopies where questions raised concerning
accuracy of copies and original was not available), vacated in part on other grounds,
961 F.2d 933 (10th Cir. 1992); Amoco Prod. Co. v. United States, 619 F.2d 1383, 1391
(10th Cir. 1980) (affirming exclusion of copies under Fed. R. Evid. 1003 where critical
part of original was not completely reproduced in the duplicate). Accordingly, the
Court should exclude the expense reimbursement document under Fed. R. Evid.
1001 and 1003.

## CONCLUSION

For the foregoing reasons, the Court should preclude the government from presenting evidence, cross-examination, or argument concerning the charging of Mr. Forbes' airplane expenses to the Cendant merger reserve.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon  (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

9

# EXHIBIT 1

# CUC INTERNATIONAL

## EMPLOYEE EXPENSE REPORT

| | | TODAY'S DATE | PERIOD COVERED |
|---|---|---|---|
| | | /    / | — |

EMPLOYEE  *Walter Forbes*

LOCATION  *Corp*

DEPARTMENT

EMPLOYEE PHONE #& EXT  (    )          X

EMPLOYEE VENDOR #

| | | | | | | TOTAL CHARGES PAID BY EMPLOYEE |
|---|---|---|---|---|---|---|---|
| DATE | 1995 | 1996 | | | | | |
| LOCATION | | | | | | | |
| BREAKFAST | | | | | | | |
| LUNCH | | | | | | | |

*Nancy*
*Put on T&E Walter*
*Schedule then*
*Send through*
*payables.*
*Thks*
*S*

*STEVE -*
*10/20 -*
*needs to go to Merger*
*reserve - (But not this in*
*the CUC T&E bill)*
*Chris - please make*
*a copy for me - here*

| MISC. EXP. ENTERTAINMENT (DETAIL BELOW) | | | | | | | |
|---|---|---|---|---|---|---|---|
| TOTALS | 226,464 | 370,417 | | | | | |

MINUS: ADVANCES FOR THE PERIOD

BALANCE TO BE REIMBURSED TO EMPLOYEE    596,881

FOR INFORMATIONAL PURPOSES ONLY:

| DATE | AMOUNT | DESCRIPTION OF CHARGES BILLED DIRECTLY TO CUC |
|---|---|---|
| | $ | |
| | $ | |

ENTERTAINMENT DETAIL

| DATE | PERSON(S) ENTERTAINED | NATURE AND PURPOSE |
|---|---|---|
| 95/96 | *Balance due to plane fee attorney* | *fees for CUC business -* |
| | ∜ *Charge to Merger Reserve* | |

**GOVERNMENT EXHIBIT**
**EX. 158**

## Certification:

I certify that this statement describes actual and necessary business expenses incurred by me while engaged in company related business.

*HFS Merger costs*

| ACCOUNT NO. | DEPT. CODE | AMOUNT |
|---|---|---|
| 73333 | 0000 | $ 596,881 |
| | | $ |
| | | $ |
| | | $ |

PLEASE FILL IN YOUR EXPENSE REPORT COMPLETELY TO ASSIST IN A PROMPT REIMBURSEMENT.

SIGNATURE OF EMPLOYEE

DATE  9/30/97

SIGNATURE OF DEPARTMENT VICE PRESIDENT

204298

# EXHIBIT 2

# CUC INTERNATIONAL

## EMPLOYEE EXPENSE REPORT

| | |
|---|---|
| EMPLOYEE | *Walter Forbes* |
| LOCATION | *Corp* |
| DEPARTMENT | |

TODAY'S DATE: / /

PERIOD COVERED: —

| EMPLOYEE PHONE # & EXT. | ( )  x |
|---|---|
| EMPLOYEE VENDOR # | |

| | | | | | | | TOTAL CHARGES PAID BY EMPLOYEE |
|---|---|---|---|---|---|---|---|
| DATE | 1995 | 1996 | | | | | |
| LOCATION | | | | | | | |
| BREAKFAST | | | | | | | |
| LUNCH | | | | | | | |
| DINNER | | | | | | | |
| LODGING | | | | | | | |
| TIPS | | | | | | | |
| TELEPHONE | | | | | | | |
| PARKING | | | | | | | |
| TRANSPORTATION | | | | | | | |
| TAXI | | | | | | | |
| MILEAGE | | | | | | | |
| AUTO RENTAL | | | | | | | |
| MISC. EXP. ENTERTAINMENT (DETAIL BELOW) | | | | | | | |
| TOTALS | 226,464 | 370,417 | | | | | |

MINUS: ADVANCES FOR THE PERIOD

**BALANCE TO BE REIMBURSED TO EMPLOYEE** 596,881

FOR INFORMATIONAL PURPOSES ONLY:

| DATE | AMOUNT | DESCRIPTION OF CHARGES BILLED DIRECTLY TO CUC |
|---|---|---|
| : | $ | |
| : | $ | |

GOVERNMENT EXHIBIT Ex. 388 CAMELS 000-732-0000

ENTERTAINMENT DETAIL

| DATE | PERSON(S) ENTERTAINED | NATURE AND PURPOSE |
|---|---|---|
| 95/96 | *Balance due to close hrs for CUC business —* | |
| | *fee Steeley* | |
| | *$ Charge to Merger Reserve* | |

## Certification:

I certify that this statement describes *HFS Merger costs* the actual and necessary business expenses ...d by me while engaged in company business.

| | ACCOUNT NO. | DEPT. CODE | AMOUNT |
|---|---|---|---|
| | 13333 | 0000 | $ 596,881 |
| | | | $ |
| | | | $ |
| | | | $ |

PLEASE FILL IN YOUR EXPENSE REPORT COMPLETELY TO ASSIST IN A PROMPT REIMBURSEMENT.

SIGNATURE OF EMPLOYEE          9/30/97          SIGNATURE OF DEPARTMENT VICE PRESIDENT          DATE
                              DATE

CENDANT 0003331

# EXHIBIT 3



CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
In Civil Action No. 98-1664 (WHW)

CEN 0370150

Walter
Forbes

$T\frac{1}{2}E$

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0370151

| VOUCHER NUMBER | INVOICE NUMBER | PURCHASE ORDER | INVOICE DATE | AMOUNT | DISCOUNT | NET AMOUNT |
|---|---|---|---|---|---|---|
| | 330536 | | 11-11-97 | $96881.09 | .00 | $96881.09 |
| | | | | | | |
| | | | | $96881.09 | .00 | $96881.09 |

**CUC INTERNATIONAL INC.**
45 OAKVIEW DRIVE, TRUMBULL, CONNECTICUT 06611

PLEASE DETACH BEFORE DEPOSITING

**189279**

THIS CHECK IS PRINTED ON CHEMICAL REACTIVE PAPER WHICH CONTAINS A WATERMARK - HOLD UP TO A LIGHT TO VIEW

**CUC INTERNATIONAL INC.**
45 OAKVIEW DRIVE TRUMBULL, CONNECTICUT 06611

THE CHASE MANHATTAN BANK, N A
SYRACUSE, NEW YORK

**189279**

| DATE | CHECK NO. | NET AMOUNT |
|---|---|---|
| 11/11/97 | 00189279 | $96,881.09 |

PAY

"* HUNDRED NINETY SIX THOUSAND EIGHT HUNDRED EIGHTY ONE **NOT VALID AFTER 180 DAYS**

TO THE
ORDER
OF

WALTER A FORBES
STOCKGROUP/CORPORATE



NON-NEGOTIABLE

⑈189279⑈ ⑆021309379⑉ 601⸱2⸱14810⑈    Gave to Beth 11/12/97

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 398-1664 (WHW)

CEN 0370152

To: Service Payables  
Fax: 2248

From: _Nancy Scafora_  
Ext: _2360_

## BILL APPROVAL FORM

*Each invoice requires a separate Bill Approval Form*

1.) Check Made Out To: _Walter Forbes_

2.) Description:  
_Walt- Forbes T&E_

3.) Amount to be paid: _596.88.00_

4.) Approved By *Must have VP Signature*            Date:  
_(see signature on T&E)_

5.) Please fill in all available information:

**NOV 10 1997**

Client Code _294411_            Manual # _____  
Invoice # _C09596_            Inv. Date _____ :r3.97  
P.O. # _____  
G.L Account # _33333-CCCC_            Amount $ _596.88.CC_

**Special Instructions!**

If you have questions, please call Service Payables at ext. 2248  
• White Copy To Accounting    • Yellow Copy for Your Records

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER  
IN Civil Action No. 98-1664 (WHW)

CEN 0370153

ROBERT P. RITTEREISER
16 WALL STREET
16TH FLOOR
NEW YORK NEW YORK 10005

**VIA FACSIMILE**

September 8, 1997

To:   Compensation Committee Members
      CUC International

Please see the attached material which will be discussed at the Compensation Committee meeting on Tuesday, September 9.

Sincerely,

attachment

cc:   Walter A. Forbes (w/o attachment)
      Robert T. Tucker (w/attachment)

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0370154

 CENDANT INTERNATIONAL

September 8, 1997

Robert Rittereiser
Grunlal & Company Inc
14 Wall Street
New York, NY 10005

Dear Rit

Here are the plane charges – as you would expect, our use of planes has accelerated with our new life

Going forward, we will have two planes (starting next April) and my use of the corporate plane will go away or be replaced by a direct contract with Executive Jet

If you have any questions, please call

Best regards,

Walter A. Forbes

WAF/bf

Attachments

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0370155

**Amount Due WAF**

1995 amount not billed          $   226.464
1996 amount not billed              370.417
amount overflown 1995 & 1996        ~~188.662~~
                                $ ~~1,045,543~~

                                    } 576.551   (CW Cox.

"we "overflew" the planes 157.4 hours beyond my contract. these monies will go to Executive Jet

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0370156

P.2

# Buck, Summer & Co., P.C.

CERTIFIED PUBLIC ACCOUNTANTS

521 FIFTH AVENUE, NEW YORK, NEW YORK 10175

(212) 682-7333

FAX (212) 682-787

DOUGLAS BUCK, C.P.A.
RICHARD C. STURMER, C.P.A.
CARL T. PORLES, JR., C.P.A.
JAMES A. BENNETT, C.P.A.
GERARD B. CARMODY, JR., C.P.A.
SUSAN YOKASS, C.P.A.
NORMAN A. BENNETT, C.P.A.
KEVIN P. BOLAND, C.P.A.

330 Y. FREIND AVENUE, BOX 12
WYL, NEW YORK 02000
(914) 967-0477
FAX (914) 967-0480

September 5, 1997

Mr. Walter Forbes
CUC International
707 Summer Street
Stamford, CT 06901

Dear Mr. Forbes:

We have analyzed your charges to CUC International for use of plane(s) during 1995 and 1996. The enclosed schedules reflect charges you made and amounts for which you were reimbursed.

You have undercharged CUC substantially for both years, as reflected on the enclosed reports.

The 1996 report does not reflect any billing to CUC for use during the months of October, November and December which, hopefully, was billed to the corporation during 1997.

Sincerely,

Douglas Buck

DB/sc
Enc.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0370157

SEP 05 '97  02:55PM BUCK, STURMER & CO                                    P.5

WALTER FORBES
1995 PLANE CHARGES
AND USE FOR CUC INTERNATIONAL

| MONTH | HAWKER HOURS | RATE PER HOUR | TOTAL THAT SHOULD HAVE BEEN BILLED | ACTUALLY BILLED TO CUC | DIFFERENCE DUE FROM CUC |
|---|---|---|---|---|---|
| JANUARY | 16.8 | $ 5,084 | $ 85,411 | $ 39,154 | $ 46,257 |
| FEBRUARY | 6.6 | 5,084 | 33,554 | 17,945 | 15,609 |
| MARCH | 23.3 | 5,084 | 118,457 | 63,353 | 55,104 |
| APRIL | 4.4 | 5,084 | 22,370 | 11,964 | 10,406 |
| MAY | 4.3 | 5,084 | 21,861 | 19,980 | 1,881 |
| JUNE | 4.3 | 5,084 | 21,861 | 11,691 | 10,170 |
| JULY | 2.5 | 5,084 | 12,710 | 7,000 | 5,710 |
| AUGUST | 9.8 | 5,084 | 49,823 | 26,950 | 22,873 |
| SEPTEMBER | 24.8 | 5,084 | 126,083 | 86,800 | 39,283 |
| OCTOBER | 33.9 | 5,084 | 172,348 | 118,600 | 53,748 |
| NOVEMBER | 4.0 | 5,084 | 20,336 | 13,300 | 7,036 |
| DECEMBER | | | | | |
| | 134.7 | $ 5,084 | $ 684,814 | $ 416,737 | $ 268,077 |
| THREE MONTHS OF MANAGEMENT FEES BILLED IN ADDITION | | | | 41,613 | (41,613) |
| | | | $ 684,814 | $ 458,350 | $ 226,464 |

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0370158

SEP 48 '97  01:56PM BUCK.STURMER & CO                         P.4

WALTER FORBES
***B PLANE CHARGES
~.D USE FOR CUC INTERNATIONAL

| MONTH | HAWKER HOURS | CITATION 5 ULTRA HOURS | TOTAL PLANE HOURS | RATE PER HOUR | TOTAL THAT SHOULD HAVE BEEN BILLED | ACTUALLY BILLED TO CUC | DIFFERENCE DUE FROM CUC |
|---|---|---|---|---|---|---|---|
| JANUARY | 8.8 | | 6.8 | $ 5,084 | $ 33,556 | $ 22,440 | $ 11,114 |
| FEBRUARY | 24.5 | 2.0 | 26.5 | 5,084 | 134,728 | 89,570 | 45,155 |
| MARCH | 6.5 | | 6.5 | | | | |
| APRIL | 17.3 | 2.0 | 19.3 | 5,084 | 162,688 | 127,564 | 35,124 |
| MAY | 6.2 | | 8.2 | | | | |
| JUNE | 4.8 | 3.0 | 7.8 | 8,868 | 69,170 | 44,880 | 24,290 |
| JULY | 8.6 | 0.5 | 9.1 | 8,868 | 80,699 | 45,220 | 35,479 |
| AUGUST | | 1.5 | 1.5 | 8,868 | 13,302 | 5,250 | 8,052 |
| SEPTEMBER | 2.9 | 0.5 | 3.4 | 8,868 | 30,151 | 21,140 | 9,011 |
| OCTOBER | 9.0 | 0.5 | 9.5 | 8,868 | 84,246 | | 84,246 |
| NOVEMBER | 8.1 | | 8.1 | 8,868 | 71,831 | | 71,831 |
| DECEMBER | 4.2 | 1.0 | 5.2 | 8,868 | 46,114 | | 46,114 |
| | 98.7 | 11.0 | 109.7 | | $ 728,481 | $ 358,064 | $ 370,417 |

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0370159