UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>WALTER A. FORBES. | )<br>)<br>)<br>)<br>)      No. 3:02CR264 (AWT)<br>)      September 2, 2005<br>)<br>) |

**MEMORANDUM IN SUPPORT OF MOTION OF
DEFENDANT WALTER A. FORBES TO PRECLUDE THE
GOVERNMENT FROM INTRODUCING ANALYSTS'
REPORTS OR CONSENSUS DATA REPORTS
(Forbes Retrial Motion *In Limine* No. 6)**

The information in analysts' reports bears little relevance to the charges against Mr. Forbes. Indeed, the only possible relevance the reports could have is to the extent that they (1) disseminate information to the public concerning the issues alleged in the indictment *that originated with Mr. Walter Forbes or one of the alleged co-conspirators,*[1] or (2) forecast earnings expectations that Mr. Forbes is alleged to have been targeting. Yet the government did not limit its use of analysts' reports in the first trial to these two areas. Instead, it repeatedly read lengthy excerpts from the analysis and conclusion portions of analysts' reports, and then asked witnesses to comment on the particular analyst's view. What any particular analyst may have thought about CUC during the period from the late

---

[1] Mr. Forbes continues to maintain the position that even this evidence is irrelevant, and creates a variance with the indictment, since the indictment alleges that a fraud was perpetrated by the communications disseminated through regulatory filings and shareholder mailings, not by communications through analyst reports. See Forbes Trial Motion No. 9. However, Mr. Forbes recognizes that the Court has previously rejected this argument.

Oral Argument Requested

1980s through April 15, 1998 is utterly irrelevant to the allegations of the indictment. The government should be precluded from introducing this improper evidence during the retrial.

Even those limited portions of the analysts' reports that may be relevant – the relevant information purportedly originating from Mr. Forbes or the alleged co-conspirators and the earnings forecasts – should be admitted only through the testimony of live witnesses subject to cross-examination, and *not* through the improper hearsay vehicle of the analysts' reports. Analysts' reports do not qualify as business records. Nor do they meet the requirements of any other exception to the hearsay rule. Thus, while portions of the report may be relevant, the analysts' reports themselves should not come in to evidence.

Similarly, the consensus data reports are not business records. Indeed, these reports add just one more layer of hearsay on top of the already inadmissible analysts' reports. Thus the consensus data reports must also be excluded.

I.  **THE VAST MAJORITY OF THE INFORMATION CONTAINED IN ANALYSTS' REPORTS IS IRRELEVANT TO THE ALLEGATIONS OF THE INDICTMENT.**

The indictment alleges that analysts' reports are relevant in that they provide "earnings estimates" upon which investors allegedly rely in evaluating the stock of the company at issue. Indictment, Count 1, ¶ 15. The reports may also be relevant to the extent that they reflect statements by Mr. Forbes or the alleged co-conspirators concerning the issues alleged in the

indictment. However, there is no relevance to the other information contained in these analysts' reports, such as whether the analyst recommended the stock as a "strong buy." The Court recognized this in the first trial when it attempted to limit the jury's consideration of the analysts' reports "to the issue of communications with investors." Tr. 202.[2] Nonetheless, despite the Court's limiting instruction, the government elicited wide-ranging testimony concerning the contents of the analysts' reports that had nothing to do with earnings estimates or "communications with investors." For example, the government repeatedly asked Mr. Corigliano to read what particular analysts' opinions were – to "buy" or "not buy." See, e.g., Tr. at 6839. Similarly, during the cross-examinations of Mr. Shelton and Mr. Forbes, the government would read into the record the analysis portion of an analyst report, and then ask the witness to comment upon it. See, e.g., Tr. at 13909 (asking Mr. Forbes, "What do you understand [the analyst] to be saying in the sentence that says, 'We continue to believe that CUC should trade at a multiple – should trade a multiple at least in line with its growth rate and have a 12-month target price of $40 to $45.'"); Tr. at 13925 (asking Mr. Forbes to comment upon the analyst's statement that "CUC's stock came under great pressure after the company announced its intent to buy two software companies"). These portions of the analysts' reports that the government introduced are wholly

---

[2] Defendants objected to the Court's limiting instruction because, *inter alia*, it could not cure the hearsay problem, discussed *infra*. Mr. Forbes incorporates herein the arguments made in Forbes Trial Motion No. 9, docket entry #734 (5/13/04). Moreover, it is not clear from this instruction that the only information the jury can consider in an analyst report is: (1) any target earnings number, and (2) any purported statements by Mr. Forbes or the alleged co-conspirators concerning the issues alleged in the indictment.

3

irrelevant to the charges against Mr. Forbes, and should not have been admitted in to evidence.

## II. THE ANALYSTS' REPORTS CONSTITUTE CLASSIC HEARSAY.

Even the information which may be relevant in the analysts' reports – communications from Mr. Forbes or the alleged co-conspirators concerning the issues alleged in the indictment and earnings estimates – should be presented through analysts' testimony, *not* through hearsay reports.

In the first trial, the Court allowed the analysts' reports in for the "limited purpose" of evidencing "communications with investors," concluding that this was "not for the truth asserted." Tr. 202. This "solution" does not resolve the hearsay problem. The reports are still being admitted for the truth of the matter asserted in them – that Mr. Forbes or the alleged co-conspirators made particular statements or representations.[3] An analyst, who would be subject to cross-examination, may be able to testify to statements made to him or her by Mr. Forbes or an alleged co-conspirator, but the analysts' reports containing these purported statements are classic hearsay.

The government's argument that the analysts' reports are nonetheless admissible because they are business records must fail. Documents are not

---

[3] Compounding this problem, the government read into the record sections of analysts' reports, the source of which was unknown. These portions of the reports may have been based on statements from persons not alleged to be part of the conspiracy, or on sources from *outside* CUC altogether. See, e.g., Tr. at 12,994 (reading into the record an analyst report's discussion of 11 lawsuits outstanding against Ideon, and concluding "CUC's management have known Mr. Halmos for a number of years, which could help in the settlement of the suits.")

4

"business records" merely because they are found in the files of a business entity. Rather, for documents to qualify as "business records," the documents must satisfy each of the following three criteria: (1) it must be the regular practice of the business entity to make such documents, (2) the documents must be made at or near the time by, or from information transmitted by, a person with knowledge, and (3) it must be the regular practice of the business entity to keep such documents. Fed. R. Evid. 803(6).

It is well settled that analysts' reports do not qualify as the business records of the company that distributes them. Indeed, in Eisenstadt v. Allen, No. 95-16255, 1997 U.S. App. Lexis 9587, *5-9 (9th Cir. April 28, 1997), the court made no distinction between proffered newspaper articles and analysts' reports, holding that both fell within Federal Rule of Evidence 801(d)'s definition of hearsay, and that each lacked the requisite circumstantial guarantees of trustworthiness to qualify for any hearsay exception. Numerous courts have agreed. See, e.g., In re Cirrus Logic Sec. Litig., 946 F. Supp. 1446, 1469 (N.D. Cal. 1996) (rejecting plaintiffs' argument that analysts' reports were admissible in securities litigation under the business records exception to the hearsay rule); In re Sybase, Inc. Sec. Litig., 48 F. Supp. 2d 958, 960 (N.D. Cal. 1999) ("analyst reports are inadmissible hearsay"). Cf. Crystal v. Foy, 562 F. Supp. 422, 431, n.35 (S.D.N.Y. 1983) (noting that analyst reports are hearsay statements "made by a third party without firsthand knowledge of [the company's books]").

That the analysts' reports are not sufficiently reliable to be admitted for the truth of the matter asserted is evidenced by the fact that the analysts'

reports themselves contain disclaimers noting that the information contained in them may not be reliable. See, e.g., Gov't Ex. 1400 at 1, footnote. (Bear Stearns analyst report, noting that "although the information contained herein has been obtained from sources believed to be reliable, its accuracy and completeness cannot be guaranteed"). Moreover, as Mr. Rosenwald testified, the companies that issue analyst reports do so with the hope that their clients will follow their recommendations and invest in the company discussed. Tr. 5/10/04 at 158. In essence, the reports are marketing tools used to promote the brokerage firm's products. Marketing tools, by their very nature, lack the level of reliability required to surmount the hearsay rule.

Exacerbating this unreliability problem is the fact that an analyst's company often has an added incentive in promoting the stock either because it has a stake in the company itself, see, e.g., Gov't Ex. 1400 at 18, footnote. ("Bear Stearns & Co. is a market maker in the security of this company and may have a long or short position in the security."), or because it has an investment banking relationship with the company that it wishes to enhance, see, e.g., id. This alone provides the analysts with financial incentives for being less than reliable. There is no justification for introducing hearsay dripping with such self-motivation.

## II.   MR. FORBES' SIXTH AMENDMENT RIGHT TO CONFRONTATION REQUIRES EXCLUSION OF THE ANALYSTS' REPORTS.

Mr. Forbes' Sixth Amendment right to confront the witnesses against him also requires the exclusion of this hearsay evidence. The Second Circuit has expounded upon the importance of the right to confrontation, stating that because "cross-examination is the principal means by which the believability of a witness

6

and the truth of his testimony are tested, the opportunity for cross-examination, protected by the Confrontation Clause, is critical for ensuring the integrity of the fact-finding process." Cotto v. Herbert, 331 F.3d 217, 229 (2d Cir. 2003) (internal quotations and citations omitted).

The Supreme Court recently reaffirmed this "bedrock procedural guarantee," holding that the Sixth Amendment required the exclusion of testimonial statements, even when they met an accepted exception to the hearsay rule. Crawford v. Washington, 541 U.S. 36, 42 (2004). The Court explained that with respect to testimonial statements, the Confrontation Clause commands that "reliability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined." Id. at 61.

The hearsay at issue here may not be testimonial in nature, as was the hearsay in Crawford. Nonetheless, the fundamental principles underlying the Confrontation Clause and the Crawford decision dictate that the less reliable the hearsay, the more important the right to cross-examine becomes. Allowing the government to present the unreliable hearsay evidence proffered by the government would effectively eliminate this fundamental right so recently reaffirmed by the Supreme Court.

### III. "CONSENSUS DATA" PUBLISHED BY FIRST CALL DATA ARE NOT SUBJECT TO THE HEARSAY EXCEPTION FOR "BUSINESS RECORDS."

The government also seeks to introduce as "business records" "consensus" data published by First Call which purportedly represents the "consensus" earnings data from various analysts' reports. The data reported by First Call were not created by First Call, and thus cannot constitute First Call's business information. Indeed, the "consensus data" is based on the analysts' reports discussed above, which are themselves inadmissible hearsay. The government can hardly add one more layer of hearsay – the First Call report – and then claim that the data becomes admissible.

Moreover, this data is collected by First Call not so that it can rely upon it in its business, as required by the business records exception, but so that it can market the data to third persons. And while the health of First Call's business may depend upon the data being accurate, this no more converts the data into a business record of First Call than a newspaper company's need to be accurate in its reporting converts news articles into business records.

The consensus reports are rank hearsay built upon hearsay, and should be excluded.

## **CONCLUSION**

For the foregoing reasons, Mr. Forbes respectfully requests that the government be precluded from introducing in to evidence any analysts' reports or consensus data reports.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Dated: September 2, 2005

## CERTIFICATE OF SERVICE

      I hereby certify that I caused the foregoing Memorandum in Support of Motion of Walter A. Forbes to Preclude the Government from Introducing Analysts' Reports or Consensus Data Reports (Forbes Retrial Motion *In Limine* No. 6) to be sent on September 2, 2005 to the following via FedEx and e-mail:

      Norman Gross, Esq.
      U.S. Attorney's Office
      District of New Jersey
      401 Market Street
      Fourth Floor
      Camden, NJ 08101

      Michael Martinez, Esq.
      Craig Carpenito, Esq.
      U.S. Attorney's Office
      District of New Jersey
      970 Broad Street, Suite 700
      Newark, NJ 07102

      _____
      Barry S. Simon