UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>WALTER A. FORBES. | No. 3:02CR264 (AWT)<br>September 2, 2005 |

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT WALTER A. FORBES TO PRECLUDE THE GOVERNMENT FROM PRESENTING TESTIMONY REGARDING JAMES ROWAN'S EXPERIENCES WITH MERGER RESERVES AT THE HARTFORD STEAM BOILER COMPANY**
(<u>Forbes Retrial Motion *In Limine* No. 7</u>)

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this memorandum in support of his motion to preclude the government from soliciting any testimony from Mr. James Rowan concerning the propriety of particular merger charges, or his experience with merger reserves while employed at Hartford Steam Boiler Company ("HSB").

James Rowan is the chief investment officer for HSB, and testified in the first trial regarding his decision to purchase Cendant stock on behalf of HSB. *See* Tr. 8/17/2004 at 10246-10272. In the course of that testimony, Mr. Rowan made reference to his experience with merger reserves at HSB:

> Q. Can you give the jury an example of a one-time charge that you see as a chief investment officer of companies that you're interested in purchasing?
>
> A. Yes. One of the ones that you saw during the '90s, and one of which even the Hartford Steam Boiler was involved in, you might decide to

Oral Argument Requested

> realign your workforce, which is another way of saying having layoffs when you decide to exit a business. If you were to do that, you would have people that would have to be terminated. You would have termination expenses. You might have some physical property that would no longer be needed; cars, desks, lease expenses. And once they are done, they are extraordinary one-time events and they are not part of your normal business going forward.
>
> * * * * * * * * * * *
>
> Q. And in January of 1998, making a decision as the chief investment officer of the Hartford Steam Boiler Company, how did you view or factor in one-time charges that you saw?
>
> A. Well, we looked at them as being just one-time. In other words, they were for a specific purpose. As I said, we had gone through this exercise at the Hartford Steam Boiler so I was intimately familiar with how we had done it. I know they were rigorously reviewed by the accounting firms and, you know, that it wasn't just sort of a pull-a-number-out-of-the-sky, that you had to really carefully document all of the -- all of the things that were behind the charge.

Tr. 8/17/2004 at 10266-68. Mr. Rowan referred back to this improper testimony later in the day:

> Q. And in or about January and February of '98, had you known that CUC had used merger reserves for nonmerger-related expenses, would that have been a factor in your decision to invest --
>
> A. Yes.
>
> Q. -- Hartford Steam Boiler funds in Cendant stock in January and February of '98?
>
> A. Certainly that would have. *First of all, that's wrong, as I had described what you have to do in terms of documenting what your merger-related expenses are for.* And secondly, it would have again brought into question the validity of the business model.

Tr. 8/17/2004 at 10271 (emphasis added).

2

Mr. Rowan has not been qualified as an expert on merger reserves or their use. Thus, he should not be permitted to testify regarding what types of costs can appropriately be charged to a merger reserve, or what level of documentation is required under GAAP.

Moreover, Mr. Rowan's personal experiences at HSB bear no relevance to the charges against Mr. Forbes. Costs that HSB may or may not have charged to its merger reserve are not at issue here. Mr. Rowan may be able to testify that he expected the information provided in the publicly available financial information to be accurate, but he should not be permitted to go further and testify regarding what types of merger charges are accurate, and which are inaccurate.

## CONCLUSION

For the foregoing reasons, the government should be prohibited from eliciting any testimony from Mr. James Rowan concerning the propriety of charging particular costs against a merger reserve, or concerning his personal experience with merger reserves at HSB.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

3

- and -

        James T. Cowdery (Bar No. ct05103)
        Thomas J. Murphy (Bar No. ct07959)
        COWDERY, ECKER & MURPHY, L.L.C.
        750 Main Street
        Hartford, CT 06103-2703
        (860) 278-5555 (phone)
        (860) 249-0012 (fax)
        tmurphy@cemlaw.com (e-mail)

        Attorneys for Walter A. Forbes

Dated: September 2, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing Memorandum in Support of Motion of Defendant Walter A. Forbes to Preclude the Government from Presenting Testimony Regarding James Rowan's Experiences with Merger Reserves at the Hartford Steam Boiler company (Forbes Retrial Motion *In Limine* No. 7) to be sent on September 2, 2005 to the following via e-mail and FedEx:

>Norman Gross, Esq.
>U.S. Attorney's Office
>District of New Jersey
>401 Market Street
>Fourth Floor
>Camden, NJ 08101
>
>Michael Martinez, Esq.
>Craig Carpenito, Esq.
>U.S. Attorney's Office
>District of New Jersey
>970 Broad Street, Suite 700
>Newark, NJ 07102

Barry S. Simon