# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 3:02CR264 (AWT) |
| | ) | |
| WALTER A. FORBES | ) | September 2, 2005 |
| | ) | **(UNDER SEAL)** |
| | ) | |

## MEMORANDUM IN SUPPORT OF MOTION OF WALTER A. FORBES FOR AN ORDER REQUIRING THE GOVERNMENT TO CONFER USE IMMUNITY ON STUART BELL
### (Forbes Retrial Motion No. 7) (FILED UNDER SEAL)

Walter A. Forbes, through undersigned counsel, respectfully submits this memorandum in support of his motion for an order requiring the government to confer immunity on Stuart Bell or face the sanction of dismissal, or the sanction of excluding all evidence relating to alleged unlawful conduct by Mr. Bell.[1]

## INTRODUCTION

Because the government has no direct evidence to support its charges that Mr. Forbes knew about or participated in the alleged fraud (other than the uncorroborated false testimony of Cosmo Corigliano), its "starting point" is essentially a negligence argument—the alleged fraud was

---

[1]    The Court denied similar motions during the first trial.  See, e.g., Forbes Trial Mot. Nos. 36 & 44.  Additional facts arising since the filing of those earlier motions further justify the requested relief.  For example, the government featured Mr. Bell prominently in its summation, and nearly an additional year has passed without the government initiating an investigation or prosecution of Mr. Bell.

Oral Argument Requested

"so huge, so massive, so long running in time," Tr. at 14827-28, Mr. Forbes

must have known about it.  This argument is predicated in large part on the

claim that the alleged fraud spanned the tenure of two CFO's, Mr. Bell and

his alleged protégé, Mr. Corigliano.

> You heard testimony and you saw documents which
> proved that this fraud, this manipulation of the
> earnings, was not something that was dreamed up
> or cooked up in '95, '96 or '97 after Mr. Corigliano
> was brought in as CFO.  You heard evidence that
> this fraud existed long before, long before he was
> the CFO, long before Anne Pember was the
> controller, back when it was just Mr. Forbes as the
> chairman, Mr. Shelton as president or COO and a
> man named Stu Bell running the company.

Tr. at 14828.  The "testimony" and "documents" referenced in the

government's summation consisted primarily of testimony by Mr. Corigliano

and Kevin Kearney, and a few otherwise innocent documents that Mr.

Corigliano interpreted through his testimony to be the instrumentalities of

the alleged fraud.[2]

Mr. Bell's testimony would be material, exculpatory, and not

cumulative because it would refute the government's two-CFO theory, which

no other witness can do.  Mr. Bell denies committing fraud at CUC and would

provide legitimate explanations for the accounting at CUC during his tenure

as CFO.  See Ex. 1 (Simon Decl.); Ex. 2 (Cary Decl.).  The significance of Mr.

---

[2]    The government also featured the two-CFO theory prominently in its
rebuttal summation.  See, e.g., Tr. at 16025 ("You have two CFOs in the 1990
to 1998 period.  What are the odds that they're both corrupt and they're both
hiding the fraud from Walter Forbes and Kirk Shelton?  Does that make
Walter Forbes and Kirk Shelton the unluckiest CEO and the unluckiest
president to ever serve on a public company?").

Bell's testimony is highlighted by the fact that at the first trial, the jury submitted two notes inquiring about Mr. Bell. Mr. Bell, however, is unavailable to the defense because, according to his counsel, he will invoke his Fifth Amendment privilege if called to testify. Ex. 3 (Simon Supp. Decl.).[3] The government has refused to confer use immunity on Mr. Bell, although it has used its immunity power to obtain inculpatory testimony from other witnesses. Under these circumstances, due process requires that the government confer use immunity on Mr. Bell, or face the sanction of dismissal, or the sanction of excluding all evidence relating to alleged unlawful conduct by Mr. Bell.

## ARGUMENT

### I.    THE SECOND CIRCUIT EMPLOYS A THREE-PART TEST TO REQUESTS FOR DEFENSE WITNESS IMMUNITY.

The Second Circuit "has followed the carrot-and-stick approach, leaving the immunity decision to the executive branch but interposing the judicial power to subject the government to certain choices of action." United States v. Bahadar, 954 F.2d 821, 826 (2d Cir. 1992); accord United States v. Dolah, 245 F.3d 98, 105 n.5 (2d Cir. 2001), overruled on other grounds, Crawford v. Washington, 541 U.S. 36 (2004). Those choices of action include

---

[3]    The privilege serves to protect the innocent because "truthful responses of an innocent witness . . . may provide the government with incriminating evidence from the speaker's own mouth." Ohio v. Reiner, 532 U.S. 17, 21 (2001) (per curiam); see also Grunewald v. United States, 353 U.S. 391, 421 (1957) ("The privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances." (quotation omitted)).

the choice between conferring defense witness immunity or dismissal.  See

Bahadar, 954 F.2d at 825-26.  As an alternative to dismissal, the Court could

exclude the offending testimony of Messrs. Corigliano and Kearney, and all

other evidence that Mr. Bell allegedly engaged in unlawful conduct.  See

United States v. De Palma, 476 F. Supp. 775, 782 (S.D.N.Y. 1979) (granting

motion for new trial and holding that immunized witness's testimony would

be excluded unless government granted immunity to defense witnesses).

There is a "three-part test for requiring the government to grant

defense witness immunity at the risk of dismissal of the indictment."

Bahadar, 954 F.2d at 826.

> First, the district court must find that the
> government has engaged in discriminatory use of
> immunity to gain a tactical advantage or, through
> its own overreaching, has forced the witness to
> invoke the fifth amendment.  Second, the witness's
> testimony must be "material, exculpatory, and not
> cumulative".  Third, the testimony must be
> unobtainable from any other source.

Id.  Moreover, the Second Circuit has "explicitly left open the issue of

whether under extraordinary circumstances, due process may require that

the government confer use immunity on a witness for the defendant" in the

absence of "discriminatory use of immunity."  Dolah, 245 F.3d at 106

(internal quotation omitted).

## II.    THE THREE-PART TEST IS SATIFIED.

Mr. Bell's testimony is material, exculpatory, and not

cumulative; his testimony is unobtainable from other sources; and the

government has engaged in the discriminatory use of immunity to gain a tactical advantage.  In addition, extraordinary circumstances are present to satisfy the first part of the test irrespective of the discriminatory use of immunity.

### A.    Mr. Bell's Testimony Is Material, Exculpatory, And Not Cumulative.

A centerpiece of the government's case is the two-CFO theory. The government attempted to support this theory at the first trial with testimony of Messrs. Corigliano and Kearney.  On direct examination, Mr. Corigliano testified for a day and a half about the alleged use of various improper accounting practices to improve CUC's operating results during the Bell era.  See Tr. at 6238-328, 6337-454.

Mr. Corigliano further testified that he learned these illicit accounting techniques under the tutelage of Mr. Bell.  See, e.g., Tr. at 6245 ("Stu Bell told me how to prepare the membership analysis to give to the auditors and told me how it should differ from the internal records."); id. at 6361 ("I followed Stu's instructions to take $2 million out of the general reserve and put it into operating earnings for the first quarter."); id. at 6367 ("Initially, when we first started doing it, [Mr. Bell] told me not to record the membership rejects for the end of the year."); id. at 6372 ("Stu Bell asked me to move members out of the deferred category and put them in the immediate category so we could increase -- so the company could increase its operating income."); id. at 6401 ("The substance of the conversation was that Stu asked

Tom to create some reserves indicating that it would be real nice if we had some cushions, some excess reserves when we took the company over.").

Mr. Kearney also offered testimony on direct examination concerning Mr. Bell's tenure as CFO. At trial, Mr. Kearney claimed for the first time that he met with Mr. Bell every quarter to discuss improper topside adjustments when Mr. Bell was CFO, and that Mr. Bell allegedly invoked Walter Forbes' name each quarter in connection with these adjustments. See Tr. at 9715-25.

If Mr. Bell testified, he would deny participation in any fraud at CUC. His testimony would undermine the government's theory that the alleged fraud began in the 1980s under Mr. Bell and continued throughout his tenure as CFO. Mr. Bell's testimony also would contradict Mr. Corigliano's testimony that he learned how to commit accounting fraud from Mr. Bell and that Mr. Bell (as opposed to Mr. Corigliano) was the architect of CUC's allegedly improper accounting. Mr. Bell would be able to explain that the documents introduced into evidence by the government concerning the pre-1995 period do not reflect improper accounting as alleged by Mr. Corigliano. Mr. Bell would similarly refute Mr. Kearney's testimony that Mr. Bell instructed him to make improper topside adjustments and invoked the

name Walter Forbes in doing so. Accordingly, Mr. Bell's testimony is material, exculpatory, and not cumulative.[4]

**B.     The Testimony Is Unobtainable From Any Other Source.**

Mr. Forbes has no other means of presenting the testimony that Mr. Bell can offer. Mr. Bell is the only witness who can refute Mr. Corigliano's testimony concerning allegedly improper accounting during Mr. Bell's tenure as CFO. Much of Mr. Corigliano's testimony concerning Mr. Bell involved purported conversations in which only Mr. Corigliano and Mr. Bell were present. Only Mr. Bell could contradict Mr. Corigliano's testimony concerning those conversations. Moreover, as the former CFO, Mr. Bell is uniquely qualified to explain CUC's accounting during the pre-1995 period and refute Mr. Corigliano's nefarious spin on documents from that time period. Likewise, Mr. Bell is the only witness who can refute Mr. Kearney's testimony about what Mr. Bell supposedly said.

---

[4]     The government has argued that Mr. Bell's exculpatory testimony would be "self-serving" and "highly suspect" because he "is still facing potential civil liability" and "has never previously provided such an account to the Government." Opp'n to Forbes Trial Mot. No. 44, at 10 (filed Oct. 4, 2004). That may be a basis for cross-examination, but it is not a basis to deprive Mr. Forbes of the testimony. See United States v. Mackey, 117 F.3d 24, 28 (1st Cir. 1997) ("But one might think that it was a matter for the jury, not the prosecutor, to decide whether testimony seemingly helpful to the defendant was actually false.").

C.    **The Government Has Engaged In Discriminatory Use of Immunity And, In Any Event, Extraordinary Circumstances Are Present.**

By offering immunity only as necessary to those witnesses who provide inculpatory testimony and depriving Mr. Forbes of access to Mr. Bell, the government has engaged in the discriminatory use of immunity. Alternatively, extraordinary circumstances support an order to the government to confer defense witness immunity.

1.    **The Government Has Engaged in the Discriminatory Use of Immunity.**

Only those witnesses who have offered testimony damaging to Mr. Forbes or testimony admitting to fraud at CUC have obtained any form of immunity. The government entered into an agreement with Steven Speaks that provides him with transactional immunity in the District of New Jersey from "criminal charges arising from any acts or conduct of Mr. Speaks within the scope of his authority as an employee of CUC or Cendant during the period from in or about August 1996 through April 1998" so long as he complies with the agreement. Ex. 4 at SPS 343 (Cooperation Agreement, Oct. 7, 1998). The government entered into plea agreements with Cosmo Corigliano, Anne Pember, and Casper Sabatino that provide transactional immunity in the District of New Jersey from charges for known criminal activity other than the counts to which they each pled guilty. See, e.g., DX 300 at 1 (Corigliano Plea Agreement) ("If Mr. Corigliano enters a guilty plea and is sentenced on this charge, and if he otherwise fully complies with all of

- 8 -

the terms of this agreement, this Office will not initiate any further charges against him arising from [alleged accounting misconduct at CUC or insider trading].”); DX 1621 at 1 (Sabatino Plea Agreement) (“If Mr. Sabatino enters a guilty plea and is sentenced on this charge, and if he otherwise fully complies with all of the terms of this agreement, this Office will not initiate any further charges against him arising from [alleged accounting misconduct at CUC].”; DX 1162 at 1 (Pember Plea Agreement) (“If Ms. Pember enters a guilty plea and is sentenced on this charge, and if she otherwise fully complies with all of the terms of this agreement, this Office will not initiate any further charges against her arising from [alleged accounting misconduct at CUC or insider trading].”).  The government also entered into a proffer agreement with Mr. Kearney that provided limited informal use immunity.  See Ex. 5 ¶ 1 (Proffer Agreement, Apr. 29, 1999) (providing that “no statements made by your client during the interview will be used against your client in the government’s case-in-chief at trial or for purposes of sentencing, except as provided below”).[5]

By immunizing where necessary any alleged coconspirator that the government can convince to testify against Mr. Forbes, but denying immunity to those who exculpate him, the government engages in the discriminatory use of immunity condemned by the Second Circuit.  See

---

[5]    Informal immunity agreements are fully enforceable against the government.  See, e.g. United States v. Aleman, 286 F.3d 86, 89-90 (2d Cir. 2002).

- 9 -

<u>Dolah</u>, 245 F.3d at 105-06. The government cannot refuse to grant immunity solely to withhold exculpatory evidence from the defense, when it has used its immunity power to procure inculpatory evidence. Therefore, due process mandates that the Court compel the government to confer use immunity upon Mr. Bell or face appropriate sanction. <u>See</u> <u>United States v. De Palma</u>, 476 F. Supp. 775, 782 (S.D.N.Y. 1979) (granting motion for new trial and holding that immunized witness's testimony would be excluded unless government granted immunity to defense witnesses).

### 2. Extraordinary Circumstances Support Defense Witness Immunity.

Even if the Court does not find that the government has engaged in the discriminatory use of immunity, extraordinary circumstances "require that the government confer use immunity on" Mr. Bell. <u>Dolah</u>, 245 F.3d at 106. Several extraordinary circumstances are present here.

#### a. Extensive testimony regarding Bell

The government at the first trial presented extensive testimony concerning Mr. Bell's alleged statements and actions, including numerous hearsay statements purportedly made by Mr. Bell. It is fundamentally unfair for the government to feature Mr. Bell's alleged misconduct prominently in its case-in-chief, and to claim that Mr. Bell initiated the accounting fraud and taught Mr. Corigliano how to commit the fraud, while denying Mr. Forbes the testimony of the key witness who would deny these claims. Mr. Bell's testimony is crucial to the judicial fact-finding process. Without his

testimony, the fact-finding process will necessarily be distorted.  Such

distortion is contrary to the very purpose of a trial and our system of criminal

justice.  See <u>Nix v. Whiteside</u>, 475 U.S. 157, 158 (1986) ("the very nature of a

trial [is] as a search for [the] truth"); <u>Arizona v. Fulminate</u>, 499 U.S. 279, 295

(1991) ("The search for truth is . . . central to our system of justice.").

### b.    No intent to prosecute Bell

The government has a trivial interest in withholding immunity

because it does not intend to prosecute Mr. Bell.  Since at least 2000, the

government has been on notice of Mr. Corigliano's claim that Mr. Bell

engaged in wrongdoing.  Nevertheless, the government has not sought to

charge Mr. Bell for his purported involvement in accounting wrongdoing at

CUC and has not represented that it has any intention to do so now, more

than seven years after accounting irregularities at CUC were disclosed to the

public, and more than a decade after Mr. Bell stepped down as CFO of CUC.

If the government had any serious interest in pursuing criminal charges

against Mr. Bell, it would have done so long ago.  See <u>United States v.</u>

<u>Mackey</u>, 117 F.3d 24, 28 (1st Cir. 1997) (stating that due process might

require court to compel prosecutor to grant immunity over good faith

objection when prosecutor has "trivial interest in withholding immunity" and

"the defendant has an overwhelming need for specific exculpatory evidence

that can be secured in no way other than through the grant of immunity").

### c. Immunity would not preclude Bell prosecution

Providing use immunity to Mr. Bell would not preclude a future prosecution of Mr. Bell because the government completed its investigation years ago. The federal immunity statute does not provide transactional immunity from prosecution, but rather prevents the government from using immunized testimony (or any information directly or indirectly derived from such testimony) against the witness in a criminal case, except in a prosecution for perjury or false statements. See 18 U.S.C. § 6002. Here, the government has already completed its investigation into alleged accounting fraud at CUC. It has identified the witnesses, the documents, and the testimony that it believes supports its case. If the government takes appropriate steps to protect this "evidence" from any taint by immunized testimony, it should be able to satisfy its burden under Kastigar of proving that it derived its evidence from legitimate sources "wholly independent" of the immunized testimony. Kastigar v. United States, 406 U.S. 441, 460-61 (1972). Furthermore, if the government believes that Mr. Bell's testimony denying criminal conduct is false, statutory immunity would not preclude the government from charging Mr. Bell with perjury or false statements. See 18 U.S.C. § 6002. The interests of justice are served by immunizing Mr. Bell because the government could prosecute him as it sees fit, irrespective of a grant of immunity.

####     d.    Abuse of immunity power in favor of Mr. Corigliano

The government has permitted Mr. Corigliano to violate the transactional immunity provisions of his plea agreement without sanction. The plea agreement expressly conditions the immunity promise on Mr. Corigliano's provision of truthful testimony. See DX 300 at 2 (Corigliano Plea Agreement) ("[S]hould it be established that he has intentionally given materially false, incomplete, or misleading testimony or information . . . the non-prosecution provisions of this agreement shall be null and void."). Mr. Corigliano breached the agreement by providing materially false testimony on numerous topics during the first trial. See, e.g., Mot. Mistrial Due to Corigliano's False and Misleading Testimony (filed Aug. 20, 2004). For example, Mr. Corigliano put Mr. Forbes in an alleged conspiratorial meeting in Mr. Shelton's office in Stamford when travel records establish that, in fact, Mr. Forbes was thousands of miles away. See Tr. at 9631-51; see also Forbes Retrial Mot. *In Limine* No. 13 (explaining fabrication in greater detail). When confronted with documentary evidence that he had lied, Mr. Corigliano stood by his lie because, he testified, "I remember the meeting. I remember it being in Kirk's office. I remember it being after Walter told me that [Henry] wasn't going to do anything. And that's what I remember." Id. at 9651. Despite this demonstrably false testimony, the government has recently confirmed that it "has not sought to revoke Corigliano's plea agreement."

- 13 -

Opp'n Mot. Compel at 9 (filed Aug. 12, 2005). This is further evidence that the government has abused its immunity power.

### e.    Additional tactical advantages

The government is gaining a significant tactical advantage through its deliberate denial of immunity to Mr. Bell beyond depriving Mr. Forbes of exculpatory evidence. It is also depriving Mr. Forbes of evidence to address various constitutional and other violations caused by the government in the first trial, including Mr. Corigliano's improper testimony about new charges of alleged accounting misconduct during the late 1980s to January 1995 time period, see Mot. Mistrial Due to Constructive Amendment and/or Prejudicial Variance and Notice Violations (filed July 21, 2004); Mr. Corigliano's undisclosed expert testimony concerning the accounting in that same time period, see Mot. Mistrial Based on Undisclosed Expert Testimony (filed July 21, 2004); and Mr. Kearney's false testimony concerning alleged meetings with Mr. Bell and Mr. Bell's alleged invocation of the name Walter Forbes in connection with purported accounting manipulations, see Mot. Mistrial Due to Kearney's False and Misleading Testimony (filed Aug. 23, 2004).[6] Admission of Mr. Bell's testimony would not cure these other

---

[6]    Compare United States v. Wallach, 935 F.2d 445, 456 (2d Cir. 1991) (reversing conviction when government witness testified falsely that he had stopped gambling and government successfully argued that extrinsic evidence of witness' continued gambling should be excluded under Fed. R. Evid. 608(b)).

violations if they are repeated at the second trial, but would serve to mitigate them.

## CONCLUSION

For the reasons set forth above, Mr. Forbes respectfully requests that the Court provide the government with a choice—immunize Mr. Bell or face dismissal.  As an alternative to dismissal, the Court could exclude evidence that Mr. Bell allegedly engaged in unlawful conduct at CUC.[7]

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (ct17115)
Barry S. Simon (ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (ct05103)
Thomas J. Murphy (ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street

---

[7]    If the Court denies this motion, and Mr. Bell does not otherwise testify at trial, Mr. Forbes will request a missing witness instruction making it clear that the jury may conclude that Mr. Bell's testimony would have been harmful to the government.  See United States v. Myerson, 18 F.3d 153, 160 (2d Cir. 1994) ("[I]n the absence of circumstances that indicate the government has failed to immunize an exculpatory witness, a district court does not abuse its discretion by refusing to give a missing witness charge.").

Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Memorandum in Support of Motion of Walter A. Forbes for an Order Requiring the Government to Confer Use Immunity on Stuart Bell (Forbes Retrial Motion No. 7) (FILED UNDER SEAL) to be sent on September 2, 2005 to the following via e-mail and FedEx:

Norman Gross, Esq.
U.S. Attorney's Office
District of New Jersey
401 Market Street
Fourth Floor
Camden, NJ 08101

Michael Martinez, Esq.
Craig Carpenito, Esq.
U.S. Attorney's Office
District of New Jersey
970 Broad Street, Suite 700
Newark, NJ 07102

Barry S. Simon