UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


UNITED STATES OF AMERICA    :  No. 3:02CR00264 (AWT)
                            :
                            :
            V.              :  September 7, 2005
                            :
                            :
                            :
WALTER A. FORBES            :




**PARTIAL REPLY MEMORANDUM OF THE UNITED STATES IN SUPPORT OF PRE-TRIAL MOTION IN LIMINE**

**GOVERNMENT'S PRE-RETRIAL MOTION NO. 1**


CHRISTOPHER J. CHRISTIE
NORMAN GROSS
MICHAEL MARTINEZ
CRAIG CARPENITO
Special Attorneys
U. S. Department of Justice
970 Broad Street, Room 700
Newark, New Jersey 07101
Tel: (973) 645-2700
Fax: (973) 645-2857

<u>**TABLE OF CONTENTS**</u>

INTRODUCTION   . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

I.   FORBES HAS FAILED TO DEMONSTRATE THAT HIS LONG HISTORY OF
     NUMEROUS LARGE SALES OF CUC AND CENDANT STOCK, THROUGH WHICH
     HE RECEIVED MILLIONS OF DOLLARS IN FRAUDULENTLY INFLATED
     PROCEEDS, IS IRRELEVANT TO PROVE HIS KNOWLEDGE, INTENT, AND
     MOTIVE TO CONSPIRE TO MAKE FALSE STATEMENTS TO THE SEC, AND
     TO MAKE SUCH STATEMENTS. . . . . . . . . . . . . . . . . . 2

II.  FORBES HAS FAILED TO DEMONSTRATE THAT THE TESTIMONY OF JAMES
     ROWAN IS IRRELEVANT. . . . . . . . . . . . . . . . . . . 10

CONCLUSION   . . . . . . . . . . . . . . . . . . . . . . . . 15

i

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AWT) |
| | : | |
| | : | |
| v. | : | September 7, 2005 |
| | : | |
| | : | |
| | : | |
| WALTER A. FORBES | : | |

**PARTIAL REPLY MEMORANDUM OF THE UNITED STATES IN SUPPORT OF
MOTION TO IN LIMINE TO ADMIT CERTAIN EVIDENCE**

<u>GOVERNMENT'S PRE-RETRIAL MOTION NO. 1</u>

**INTRODUCTION**

Pursuant to this Court's directive during the September 2, 2005 telephone conference with counsel, the Government submits this partial reply memorandum regarding the first two issues presented in the Government's pre-retrial motion *in limine* (Government Pre-Trial Motion No. 1). The Government will submit a second reply memorandum addressing the remaining issues raised in its motion *in limine* no later than September 15, 2005, as previously directed by the Court.

1

**ARGUMENT**

**I. FORBES HAS FAILED TO DEMONSTRATE THAT HIS LONG HISTORY OF NUMEROUS LARGE SALES OF CUC AND CENDANT STOCK, THROUGH WHICH HE RECEIVED MILLIONS OF DOLLARS OF FRAUDULENTLY INFLATED PROCEEDS, IS IRRELEVANT TO PROVE HIS KNOWLEDGE, INTENT, AND MOTIVE TO CONSPIRE TO MAKE FALSE STATEMENTS TO THE SEC, AND TO MAKE SUCH STATEMENTS.**

Forbes contends that evidence of his prolonged history of large sales of CUC and Cendant stock during the conspiracy period would be irrelevant in this case if the Government declined to retry Counts 13-16, charging insider trading. According to Forbes, the Government has failed to demonstrate that the timing and size of Forbes' stock sales give rise to a suspicion of *scienter*, i.e., an intent to deceive the investing public. Forbes Memorandum in Opposition to United States' Pre-Retrial Motion *in Limine* ("FM") 1. Forbes also claims that his stock sales fail to shed any light on his motive to conspire to make false reports to the SEC. FM 3-4. These claims fail.

Forbes faces a steep uphill climb in demonstrating that the proposed evidence is irrelevant. By operation of Fed. R. Evid. 401, any evidence that tends to prove a fact that is of consequence to the case is relevant. 2 Weinstein's Federal Evidence (2d ed. 2000) ("Weinstein"), § 401.04[2][a]; see United States v. Bari, 750 F.2d 1169, 1181 (2d Cir. 1984)(evidence that dried blood at the crime scene was the same type as the defendant's and that the defendant had cut his hands during the

crime was relevant, even though 45% of the population had the same blood type).  Rule 401 creates a "lenient standard for relevance," which requires the proponent to show that the proffered evidence would "merely alter the probability of the existence of a fact."  2 Weinstein, § 401.04[2][c]; New Jersey v. T.L.O., 469 U.S. 325, 345 (1985); Doe v. New York City Dep't of Social Services, 649 F.2d 134, 147 (2d Cir. 1981).  If a juror might believe the probability of the existence of a consequential fact to be different if s/he knew about the proffered evidence, the evidence is relevant.  2 Weinstein, § 401.04[2][b].  Evidence need not make the proposition for which it is offered appear more probable than not, so long as it advances the inquiry to some degree.  Id.; see United States v. Carmona, 873 F.2d 569, 571-72 (2d Cir. 1989).  This Court's determination that an item of evidence is relevant is subject to limited review on appeal, and will be reversed only if the finding of relevance is "irrational."  2 Weinstein, § 401.03[3][a].

The Government's proposed evidence regarding Forbes' stock sales is summarized in a chart appended as Exhibit A hereto.  That chart shows that, during the seven years from March 1991 through March 1998, Forbes repeatedly divested himself of large blocks of CUC and Cendant stock, ultimately selling over two million shares resulting in total proceeds of almost $57 million.  The net proceeds of those sales amount to a substantial

percentage of Forbes' self-declared net worth of approximately $200 million in 1998.

The evidence will further show that the price of CUC's and Cendant's stock was substantially inflated by the fraud, so that Forbes' take from his stock sales was substantially greater than it would have been had the fraud not occurred. Forbes' substantial profits from the fraud, likely in the many millions of dollars, created a powerful incentive for him to engage in the fraud. Forbes seeks to negate the inference of unlawful motive by pointing out that other persons who had no involvement in the fraud also sold inflated stock before the fraud was disclosed. FM 2. This is unavailing. That Henry Silverman and Jim Buckman, who, unlike Forbes, had no involvement in the management of CUC during the conspiracy period, might have inadvertently reaped some short-term financial gains from the fraud, does not render the proposed evidence irrelevant, because those persons, unlike Forbes, had neither the access to inside information about the fraud, nor the corporate power to effectuate the fraud.

The proffered evidence therefore tends to prove Forbes' motive to commit the charged crimes, which is typically relevant in a criminal prosecution. United States v. Laflam, 369 F.3d 153, 157 (2d Cir. 2004); United States v. Gonzalez, 110 F.3d 936, 941-42 (2d Cir. 1997); United States v. Rodriquez, 53 F.3d 545, 546 (2d Cir. 1995); United States v. Amuso, 21 F.3d 1251, 1258-59

4

(2d Cir. 1994).  Evidence that a defendant had a powerful motive to commit the crime, in turn, is logically relevant to prove that he knew about and intended to commit the crime.[1]

Forbes' contrary argument, in essence, is that evidence that he garnered tens of millions of dollars from the sale of fraudulently inflated CUC and Cendant stock makes it no more likely that he knew about, intended to facilitate, and had a motive to participate in the charged fraudulent scheme than if he had not made a single red cent from selling CUC and Cendant stock during the conspiracy period.  The jury can rationally conclude, however, that Forbes would have been more highly motivated to participate in the fraud if it had provided him with substantial tangible benefits than if its success was a matter of no personal concern to him.

Evidence of Forbes' sale of 300,000 shares of Cendant stock in March 1998 is particularly relevant to prove Forbes' *scienter*.  Although Forbes sold large blocks of CUC stock repeatedly during the conspiracy period, the sale of the 300,000 Cendant shares was the single largest sale of shares that he ever

_____

[1]  Forbes irrelevantly claims that his "incentive based" compensation, in the form of stock options, does not create an inference that he was motivated to engage in fraud.  FM 3-4.  The point is not that Forbes was motivated to commit the charged fraud because he was compensated, in part, by stock options. Rather, the point of the proffered evidence is that he was motivated to commit the fraud because it increased the value of his stock holdings, whether acquired by option or otherwise, and that he realized that increased value when he sold the stock.

undertook on a single day, by a substantial margin.  See Exhibit
A.  Not only was the amount of the sale suspiciously large
relative to Forbes' prior stock sales, but the timing of the sale
was likewise suspicious, coming less than six weeks before the
fraud was disclosed and the market price for the stock crashed,
and shortly after Forbes learned that Pember would be removed
from her position as CUC Controller and therefore unable to
continue to facilitate the fraud.  See In re Xerox Corporation
Securities Litigation, 165 F.Supp.2d 208, 222 (D.Conn. 2001)
(Thompson, J.)(evidence of a defendant's stock sales may be
relevant to prove his intent to deceive, if the timing or amount
of the sales is suspicious).

        Forbes contends that other evidence refutes the notion
that he was motivated to sell the large block of shares by
Silverman's decision to remove Pember as the CMS controller,
because Forbes took the initial steps to sell those shares in
February 1998, before Silverman finally decided to remove Pember.
FM 3.  As shown above, Forbes' large sales of shares throughout
the conspiracy period, and not just his sale of 300,000 shares in
March 1998, is relevant to prove his unlawful motive.  In any
event, regardless of when Forbes first notified his stock brokers
of his intent to sell the shares, and to begin preparing the
paperwork to effectuate the sale, the sale was hardly inexorable
until the shares were actually sold.  Forbes did not finally

decide to sell the shares until after he learned that Pember would be sacked.

Additionally, Forbes admittedly knew as early as the fall of 1997 that Silverman was thinking of removing Pember from her position in the accounting function of the company, and that Pember was unhappy with how the impending merger was affecting her job responsibilities, and was considering leaving the company. Tr. 14350-54. Thus, the timing of Forbes' stock sales in March 1998 bears a logical and temporal relationship to his knowledge that Pember would be removed from her key role in the fraud, and should be admitted regardless of whether the Government elects to retry the insider trading counts. Cf. United States v. Santagata, 924 F.2d 391, 394 (1st Cir. 1991) (documents that memorialized the defendant's orders to purchase merchandise from defrauded manufacturers were relevant to the existence of a scheme to defraud, even though they did not pertain to the particular enumerated mail fraud counts of the indictment).

Forbes also contends, in a single sentence, that evidence of his stock sales should be excluded under Fed. R. 403 because it supposedly places undue emphasis on his wealth.  FM 3. Relevant evidence may not be excluded under Rule 403 unless, inter alia, its "probative value is **substantially outweighed** by the danger of **unfair prejudice**." Fed. R. Evid. 403 (emphasis

7

added).  Under Rule 403, "unfair prejudice 'means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  <u>United States v. Brady</u>, 26 F.3d 282, 287 (2d Cir. 1994) (quoting the Advisory Committee Notes to Rule 403).  Any potentially prejudicial effect can be minimized by an instruction that limits the jury's consideration of the evidence to the purposes for which it is admitted.  <u>United States v. Pitre</u>, 960 F.2d 1112, 1120 (2d Cir. 1992).  The Court of Appeals confers substantial deference on a district court's rulings under the rule, which "will not be overturned unless . . . [the court] acted arbitrarily or irrationally."  <u>United States v. Thai</u>, 29 F.3d 785, 813 (2d Cir. 1994).[2]

---

[2] Forbes's Rule 403 claim misconceives the import of prejudice under Rule 403.  Evidence is unduly prejudicial, as a threshold matter, only if it is "inflammatory," i.e., it would tend to cause the jurors to dislike Forbes for reasons divorced from the evidence of his guilt for the charged crime.  <u>United States v. Gelzer</u>, 50 F.3d 1133, 1139 (2d Cir. 1995).  Even evidence that casts a defendant in a negative light does not fall within the scope of Rule 403.  <u>See</u> <u>Brady v. Chemical Const. Corp.</u>, 740 F.2d 195, 202 (2d Cir. 1984)(rejecting as "frivolous" the claim that Rule 403 barred the admission of evidence that cast the objecting party "in a bad light" where the evidence "was not inflammatory"); <u>United States v. Logan</u>, 250 F.3d 350, 368 (6th Cir. 2001) ("evidence that is prejudicial only in the sense that it paints the defendant in a bad light is not unfairly prejudicial pursuant to Rule 403"); <u>Schwartz v. Fortune Magazine</u>, 193 F.R.D. 144, 147 (S.D.N.Y. 2000)(evidence regarding the plaintiff's poor work performance was properly admitted over Rule 403 objection, "although it painted [him] in a bad light, it did not invite the jury to make a decision based on emotion or other unfair basis").

That Forbes reaped almost $57 million in proceeds from his stock sales created a greater incentive to engage in a serious crime than had he reaped a much smaller sum, so evidence that Forbes obtained substantial, rather than paltry sums, from the crime has substantial probative value.  This Court should decline to exclude, under Rule 403, evidence which shows that Forbes committed the charged crimes out of greed, and that he continued to commit the crime over many years because his criminal activities increased his wealth.  See United States v. Ballesteros Gutierrez, 181 F.Supp.2d 350, 354 (S.D.N.Y. 2002) (evidence that the defendants earned substantial sums from insider trading was properly admitted over their Rule 403 objection that it would cause antipathy based on their wealth).

Nor is evidence that Forbes was a wealthy man inherently prejudicial, as Forbes would have it.  Far from being a badge of dishonor, great wealth is viewed as a commendable attribute by many in our society.  Indeed, during the initial trial, Forbes trumpeted the financial success that CUC enjoyed under his management.  Tr. 82-88 (opening statement), 13549-56 (Forbes' testimony).  He thereby acknowledged that the jury would respond favorably to his successes as a businessman.  In this country, financial success in business is almost invariably

rewarded by increased compensation.[3]  Accordingly, this Court should admit evidence of all of Forbes' stock sales during the conspiracy period, whether or not the Government retries the insider trading counts.

**II.  FORBES HAS FAILED TO DEMONSTRATE THAT THE TESTIMONY OF JAMES ROWAN IS IRRELEVANT.**

The Government has moved to permit the testimony of James Rowan at the retrial, which would be substantially similar to the relatively brief and unchallenged testimony[4] he provided at the initial trial, even if the Government elects not to retry Counts 7-12, charging securities fraud.  The Government argued in its initial memorandum that Rowan's testimony would be admissible

---

[3] Forbes' reliance on United States v. Stahl, 616 F.2d 30, 32 (2d Cir. 1980) is misplaced, as that case involved the Government going to "to great lengths [during summation] to appeal to class prejudice in characterizing the defendant as a very rich man."  Berman\ Enterprises Inc. v. Local 333, United Marine Division, Intern. Longshoremen's Ass'n, 644 F.2d 930, 939 (2d Cir. 1981)(distinguishing Stahl); United States v. Derman, 211 F.3d 175, 180 (1st Cir. 2000)(distinguishing Stahl and finding no misconduct based on the Government's statements during the trial and closing arguments that addressed the defendant's financial motive for the charged crimes, which "did not impermissibly stray into class bias"); United States v. Little, 753 F.2d 1420, 1441 (9th Cir. 1984)(distinguishing Stahl where the prosecutor's summation arguments that the defendant was motivated by money and greed to commit the charged crimes was appropriate advocacy, and did not involve an appeal to class prejudice).  Although appeals to class prejudice are improper, evidence of the defendant's financial motive to commit a white collar crime is patently not.  Likewise here, the Government will not make summation arguments designed to appeal to class prejudices.

[4] Neither defendant cross-examined Mr. Rowan during the first trial.  Tr. 10272.

10

at the retrial, even if the Government elected not to retry the securities fraud counts, for two purposes: (a) Rowan's testimony about attending an investor conference in January 1998 at which Forbes spoke was relevant to prove Forbes' knowledge and intent regarding any remaining charges submitted to the retrial jury, and (b) Rowan's testimony about his reliance on CUC's and Cendant's false, publicly filed financial statements was relevant to prove the materiality of those false statements.  Government's Initial Memorandum, 9-13 and n. 7.  Rowan's testimony about the conference was limited to only four and one half transcript pages; his entire testimony spanned twenty-six transcript pages. Compare Tr. 10252-56 with Tr. 10246-10272.

Forbes contends that Rowan's testimony regarding the January 1998 conference would not be relevant absent trial on the securities fraud counts.  FM 4-6.  He does not, however, contest the Government's claim that the balance of Rowan's testimony, regarding his educational and employment history, and particularly his current position as the Chief Investment Officer of Hartford Steam Boiler, his decision to purchase 32,500 shares of Cendant stock in January and February 1998, and his reliance on CUC's and Cendant's false financial statements in making that decision, would be relevant to prove materiality.

Forbes' relevance challenge to Rowan's testimony regarding his attendance at the January 1998 investor conference

11

should be rejected.  According to Forbes, his ability to "discuss [at the conference] CUC's and HFS's general business strategy and synergies simply is not probative of whether Mr. Forbes knowingly and willfully engaged in a fraud with respect to CUC's or Cendant's reported earnings."  FM 5.  Rowan did not merely testify, however, that Forbes was able to discuss Cendant's "strategy and synergies" at the investor conference.  Rather, Rowan explained that Forbes gave a 25 to 35 minute presentation without using notes, which impressed Rowan because others persons who gave similar presentations that Rowan had attended often merely read from the Power Point slides.  According to Rowan, Forbes demonstrated at the presentation that he "knew the business, the nuances of the business and knew it very, very well and could speak to it.  And that's essentially the type of presentation that Mr. Forbes did."  Tr. 10254-55.

       Rowan's testimony goes directly to Forbes' level of knowledge about the overall operations of CUC and Cendant, which in turn supports the Government's evidence that Forbes was directly involved in supervising the fraud.  Forbes testified at the first trial that he had delegated all of the day to day decision making at CUC to his subordinates, and was the "visionary" who focused only on how CUC should change in the future, and for that reason, had no occasion or reason to concern himself with the company's past performance.  Rowan will testify

12

in the retrial that, to the contrary, Forbes' performance at the January 1998 investor conference demonstrated that he was keenly aware of the "nuts and bolts" of CUC's current and past business practices, and would not have been oblivious to CUC's historic performance.  Rowan's testimony is also relevant to rebut the frequent defense theme presented during the first trial, that, as a non-accountant, Forbes did not have the expertise to personally manage or even understand all of the accounting manipulations involved in the conspiracy.  Forbes' impressive performance during the January 1998 conference will demonstrate that Forbes was indeed capable of understanding sophisticated concepts and mastering minutiae.

Forbes' claim is similar to but less compelling than one which was rejected in United States v. Calandrella, 605 F.2d 236 (6th Cir. 1979), a prosecution for wire fraud, conspiracy, and making materially false statements in a loan application.  In that case, the district court admitted the testimony of a witness regarding uncharged fraudulent conduct of the defendant.  On appeal, the defendant contended that the evidence, although "relevant to show [his] business acumen," should have been excluded under Rule 403 because it was unfairly prejudicial.  The Court of Appeals rejected the claim with reasoning that applies equally here:

> Defendant Kaye's basic defense was that he was not
> aware of the nature of the transactions [at issue in

13

> the charged crimes] and that he was in effect duped. The evidence tended to show Kaye's level of business sophistication in transactions involving his companies and thus it tended to contradict this claim.

Id. at 253-54.

As a fall back, Forbes again argues that, even if Rowan's testimony about the January 1998 conference is relevant, it should be excluded pursuant to Rule 403.  FM 6.  According to Forbes, evidence that "a local company was a victim of the alleged fraud" would "elicit an emotional response from the jurors."  Id.  As Forbes neglects to mention, this Court has already taken steps to minimize any possible improper prejudice from Rowan's testimony, by precluding the Government from eliciting testimony that the beneficiaries of the investment fund that Rowan oversaw were the current and former employees of Hartford Steam Boiler, rather than the company itself.  In any event, evidence which merely identifies a particular victim of a purely economic crime is hardly the kind of incendiary information that would likely cause the jury to ignore this Court's admonitions that it must decide this case without sympathy or bias.

In conducting Rule 403 balancing, the Court should assess any potential prejudice in light of the nature of the charges in the case.  See United States v. Livoti, 196 F.3d 322, 326 (2d Cir. 1999).  Here, the potentially prejudicial effect of the challenged evidence that the crime victims included a local

14

business, in addition to individuals and businesses located
outside Hartford, is negligible if not non-existent, and does not
substantially outweigh the probative value of the evidence.  See
United States v. Baez, 349 F.3d 90, 94 (2d Cir. 2003) (rejecting
a Rule 403 challenge to the admission of evidence, in a
prosecution for racketeering conspiracy, of the defendants'
uncharged robberies, because the "uncharged conduct . . .
involved criminal conduct less inflammatory than the murder
charged in the indictment").

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court grant the Government's motion *in limine* with respect to the first two issues regarding evidence of Forbes' stock trades and the proposed testimony of James Rowan.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
Special Attorney
U.S. Department of Justice

/s/ Norman Gross

By: NORMAN GROSS
    Special Attorney
    U.S. Department of Justice
    Federal Bar No. 24933
    MICHAEL MARTINEZ
    Special Attorney
    U.S. Department of Justice
    Federal Bar No. PHV0423
    CRAIG CARPENITO
    Special Attorney
    U.S. Department of Justice
    Federal Bar No. PHV0424

Dated: September 7, 2005
       Newark, New Jersey

16

EXHIBIT A

## Walter A. Forbes Stock Sales

| Government Exhibit | Date of Sale | No.Shares Sold | Selling Price/Share | Total Sale | Cumulative Total |
|---|---|---|---|---|---|
| 3 and 4/91 | 03/06/91 | 20,000 | $20.501 | $410,020.00 | $410,020.00 |
| 3 and 4/91 | 03/07/91 | 20,000 | $19.250 | $385,000.00 | $795,020.00 |
| 3 and 4/91 | 03/08/91 | 30,000 | $19.419 | $582,570.00 | $1,377,590.00 |
| 3 and 4/91 | 03/11/91 | 18,100 | $19.376 | $350,705.60 | $1,728,295.60 |
| 3 and 4/91 | 03/12/91 | 13,500 | $18.625 | $251,437.50 | $1,979,733.10 |
| 3 and 4/91 | 03/14/91 | 30,000 | $20.000 | $600,000.00 | $2,579,733.10 |
| 3 and 4/91 | 03/15/91 | 23,700 | $20.337 | $481,986.90 | $3,061,720.00 |
| 3 and 4/91 | 04/03/91 | 44,700 | $23.792 | $1,063,502.40 | $4,125,222.40 |
| 3 and 4/91 | 04/04/91 | 8,300 | $23.500 | $195,050.00 | $4,320,272.40 |
| 3 and 4/91 | 04/04/91 | 16,700 | $23.250 | $388,275.00 | $4,708,547.40 |
| Jul-91 | 07/02/91 | 25,000 | $24.250 | $606,250.00 | $5,314,797.40 |
| Jul-92 | 07/02/92 | 22,500 | $20.080 | $451,800.00 | $5,766,597.40 |
| Jul-92 | 07/02/92 | 9,750 | $20.160 | $196,560.00 | $5,963,157.40 |
| Jul-92 | 07/02/92 | 21,750 | $20.250 | $440,437.50 | $6,403,594.90 |
| Jul-92 | 07/02/92 | 57,900 | $20.330 | $1,177,107.00 | $7,580,701.90 |
| Jul-92 | 07/02/92 | 600 | $20.410 | $12,246.00 | $7,592,947.90 |
| Jul-92 | 07/03/92 | 15,000 | $20.000 | $300,000.00 | $7,892,947.90 |
| Jul-92 | 07/03/92 | 1,650 | $20.160 | $33,264.00 | $7,926,211.90 |
| Jul-92 | 07/03/92 | 8,550 | $20.330 | $173,821.50 | $8,100,033.40 |
| Jul-92 | 07/06/92 | 20,000 | $19.630 | $392,600.00 | $8,492,633.40 |
| Jul-92 | 07/06/92 | 5,000 | $19.750 | $98,750.00 | $8,591,383.40 |
| Jul-92 | 07/06/92 | 10,000 | $19.680 | $196,800.00 | $8,788,183.40 |
| Jul-92 | 07/07/92 | 4,100 | $19.330 | $79,253.00 | $8,867,436.40 |
| Jul-92 | 07/07/92 | 4,800 | $19.500 | $93,600.00 | $8,961,036.40 |
| Jul-92 | 07/07/92 | 5,000 | $19.880 | $99,400.00 | $9,060,436.40 |
| Jul-92 | 07/08/92 | 63,300 | $19.190 | $1,214,727.00 | $10,275,163.40 |
| Jul-92 | 07/09/92 | 900 | $19.500 | $17,550.00 | $10,292,713.40 |
| Jul-92 | 07/09/92 | 49,200 | $19.190 | $944,148.00 | $11,236,861.40 |
| Nov-92 | 11/12/92 | 10,000 | $25.875 | $258,750.00 | $11,495,611.40 |
| Nov-92 | 11/12/92 | 13,000 | $26.250 | $341,250.00 | $11,836,861.40 |
| Nov-92 | 11/12/92 | 7,000 | $27.000 | $189,000.00 | $12,025,861.40 |
| Nov-92 | 11/12/92 | 400 | $26.125 | $10,450.00 | $12,036,311.40 |
| Nov-92 | 11/12/92 | 19,600 | $26.000 | $509,600.00 | $12,545,911.40 |
| Nov-92 | 11/15/92 | 5,000 | $26.250 | $131,250.00 | $12,677,161.40 |
| Nov-92 | 11/15/92 | 4,000 | $26.375 | $105,500.00 | $12,782,661.40 |
| Nov-92 | 11/15/92 | 20,000 | $26.500 | $530,000.00 | $13,312,661.40 |
| Nov-92 | 11/15/92 | 11,400 | $25.875 | $294,975.00 | $13,607,636.40 |
| Nov-92 | 11/17/92 | 5,100 | $25.500 | $130,050.00 | $13,737,686.40 |
| Nov-92 | 11/17/92 | 600 | $26.625 | $15,975.00 | $13,753,661.40 |
| Nov-92 | 11/17/92 | 800 | $26.250 | $21,000.00 | $13,774,661.40 |

| Nov-92 | 11/17/92 | 2,800 | $26.000 | $72,800.00 | $13,847,461.40 |
|--------|----------|-------|---------|------------|-----------------|
| Nov-92 | 11/17/92 | 24,600 | $25.750 | $633,450.00 | $14,480,911.40 |
| Dec-92 | 12/17/92 | 5,000 | $27.750 | $138,750.00 | $14,619,661.40 |
| Dec-92 | 12/18/92 | 700 | $28.500 | $19,950.00 | $14,639,611.40 |
| Dec-92 | 12/18/92 | 4,300 | $28.250 | $121,475.00 | $14,761,086.40 |
| Dec-92 | 12/18/92 | 5,000 | $28.375 | $141,875.00 | $14,902,961.40 |
| Dec-92 | 12/21/92 | 3,200 | $27.500 | $88,000.00 | $14,990,961.40 |
| Dec-92 | 12/21/92 | 5,200 | $28.375 | $147,550.00 | $15,138,511.40 |
| Dec-92 | 12/21/92 | 1,600 | $28.000 | $44,800.00 | $15,183,311.40 |
| May-93 | 05/05/93 | 20,000 | $22.375 | $447,500.00 | $15,630,811.40 |
| May-93 | 05/05/93 | 10,000 | $22.250 | $222,500.00 | $15,853,311.40 |
| May-93 | 05/05/93 | 10,000 | $22.500 | $225,000.00 | $16,078,311.40 |
| May-93 | 05/10/93 | 10,000 | $21.875 | $218,750.00 | $16,297,061.40 |
| May-93 | 05/10/93 | 1,900 | $22.000 | $41,800.00 | $16,338,861.40 |
| May-93 | 05/14/93 | 29,400 | $22.375 | $657,825.00 | $16,996,686.40 |
| May-93 | 05/14/93 | 600 | $22.500 | $13,500.00 | $17,010,186.40 |
| May-93 | 05/19/93 | 8,600 | $23.325 | $200,595.00 | $17,210,781.40 |
| May-93 | 05/19/93 | 9,500 | $23.250 | $220,875.00 | $17,431,656.40 |
| Dec-92 | 12/21/92 | 1,600 | $28.000 | $44,800.00 | $17,476,456.40 |
| Apr-93 | 04/06/93 | 48,000 | $19.500 | $936,000.00 | $18,412,456.40 |
| Apr-93 | 04/06/93 | 60,000 | $19.330 | $1,159,800.00 | $19,572,256.40 |
| Apr-93 | 04/06/93 | 2,250 | $19.420 | $43,695.00 | $19,615,951.40 |
| Apr-93 | 04/07/93 | 39,750 | $19.420 | $771,945.00 | $20,387,896.40 |
| Apr-93 | 04/27/93 | 6,300 | $19.750 | $124,425.00 | $20,512,321.40 |
| Apr-93 | 04/27/93 | 68,700 | $19.670 | $1,351,329.00 | $21,863,650.40 |
| Sep-93 | 06/07/93 | 5,000 | $27.875 | $139,375.00 | $22,003,025.40 |
| Sep-93 | 06/07/93 | 3,000 | $28.000 | $84,000.00 | $22,087,025.40 |
| Sep-93 | 06/07/93 | 4,000 | $26.375 | $105,500.00 | $22,192,525.40 |
| Sep-93 | 06/07/93 | 3,000 | $26.625 | $79,875.00 | $22,272,400.40 |
| Sep-93 | 06/14/93 | 5,400 | $26.750 | $144,450.00 | $22,416,850.40 |
| Sep-93 | 06/14/93 | 9,600 | $26.625 | $255,600.00 | $22,672,450.40 |
| Sep-93 | 06/14/93 | 5,000 | $26.875 | $134,375.00 | $22,806,825.40 |
| Sep-93 | 06/15/93 | 5,000 | $26.750 | $133,750.00 | $22,940,575.40 |
| Sep-93 | 06/15/93 | 5,000 | $27.000 | $135,000.00 | $23,075,575.40 |
| Sep-93 | 06/17/93 | 3,900 | $28.000 | $109,200.00 | $23,184,775.40 |
| Sep-93 | 06/28/93 | 10,000 | $27.875 | $278,750.00 | $23,463,525.40 |
| Oct-93 | 10/15/93 | 7,700 | $38.625 | $297,412.50 | $23,760,937.90 |
| Oct-93 | 10/15/93 | 11,000 | $38.375 | $422,125.00 | $24,183,062.90 |
| Oct-93 | 10/15/93 | 12,000 | $38.500 | $462,000.00 | $24,645,062.90 |
| Oct-93 | 10/18/93 | 100 | $38.375 | $3,837.50 | $24,648,900.40 |
| Nov-93 | 11/04/93 | 1,100 | $38.250 | $42,075.00 | $24,690,975.40 |
| Nov-93 | 11/04/93 | 8,900 | $38.000 | $338,200.00 | $25,029,175.40 |
| Nov-93 | 11/04/93 | 5,000 | $38.875 | $194,375.00 | $25,223,550.40 |
| Nov-93 | 11/04/93 | 5,000 | $37.875 | $189,375.00 | $25,412,925.40 |
| Nov-93 | 11/04/93 | 5,000 | $37.750 | $188,750.00 | $25,601,675.40 |
| Nov-93 | 11/09/93 | 5,000 | $36.375 | $181,875.00 | $25,783,550.40 |

| | | | | | |
|---|---|---|---|---|---|
| Nov-93 | 11/09/93 | 5,000 | $36.250 | $181,250.00 | $25,964,800.40 |
| Nov-93 | 11/11/93 | 5,000 | $36.250 | $181,250.00 | $26,146,050.40 |
| Nov-93 | 11/11/93 | 5,000 | $36.375 | $181,875.00 | $26,327,925.40 |
| Nov-93 | 11/11/93 | 5,000 | $36.875 | $184,375.00 | $26,512,300.40 |
| Sep-94 | 09/16/94 | 85,000 | $32.375 | $2,751,875.00 | $29,264,175.40 |
| Sep-94 | 09/16/94 | 25,000 | $32.750 | $818,750.00 | $30,082,925.40 |
| Sep-94 | 09/19/94 | 20,000 | $33.375 | $667,500.00 | $30,750,425.40 |
| Sep-94 | 09/21/94 | 20,000 | $32.750 | $655,000.00 | $31,405,425.40 |
| Sep-94 | 09/26/94 | 10,000 | $33.125 | $331,250.00 | $31,736,675.40 |
| Sep-94 | 09/27/94 | 5,000 | $33.000 | $165,000.00 | $31,901,675.40 |
| Sep-94 | 09/22/94 | 10,000 | $32.750 | $327,500.00 | $32,229,175.40 |
| Sep-94 | 09/30/94 | 10,000 | $32.375 | $323,750.00 | $32,552,925.40 |
| Nov-95 | 11/13/95 | 10,015 | $38.250 | $383,073.75 | $32,935,999.15 |
| Nov-95 | 11/13/95 | 30,400 | $38.375 | $1,166,600.00 | $34,102,599.15 |
| Nov-95 | 11/13/95 | 77,000 | $38.625 | $2,974,125.00 | $37,076,724.15 |
| Nov-95 | 11/13/95 | 22,700 | $38.750 | $879,625.00 | $37,956,349.15 |
| Nov-95 | 11/13/95 | 10,300 | $38.875 | $400,412.50 | $38,356,761.65 |
| Nov-95 | 11/14/95 | 29,000 | $37.375 | $1,083,875.00 | $39,440,636.65 |
| Nov-95 | 11/14/95 | 12,000 | $37.500 | $450,000.00 | $39,890,636.65 |
| Nov-95 | 11/14/95 | 15,000 | $37.625 | $564,375.00 | $40,455,011.65 |
| Nov-96 | 11/21/96 | 20,000 | $24.000 | $480,000.00 | $40,935,011.65 |
| Nov-96 | 11/21/96 | 10,000 | $24.125 | $241,250.00 | $41,176,261.65 |
| Nov-96 | 11/21/96 | 10,000 | $24.250 | $242,500.00 | $41,418,761.65 |
| Nov-96 | 11/21/96 | 17,000 | $24.375 | $414,375.00 | $41,833,136.65 |
| Nov-96 | 11/21/96 | 43,800 | $24.500 | $1,073,100.00 | $42,906,236.65 |
| Nov-96 | 11/21/96 | 24,200 | $24.625 | $595,925.00 | $43,502,161.65 |
| Jan-97 | 01/10/97 | 80,000 | $26.000 | $2,080,000.00 | $45,582,161.65 |
| Mar-98 | 03/06/98 | 100,000 | $37.810 | $3,781,000.00 | $49,363,161.65 |
| Mar-98 | 03/06/98 | 50,000 | $37.620 | $1,881,000.00 | $51,244,161.65 |
| Mar-98 | 03/06/98 | 50,000 | $38.370 | $1,918,500.00 | $53,162,661.65 |
| Mar-98 | 03/06/98 | 100,000 | $38.180 | $3,818,000.00 | $56,980,661.65 |

<u>CERTIFICATE OF SERVICE</u>

      The undersigned certifies that on this day I caused to
be served copies of the foregoing upon the following via email
and United States Mail:

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901
(202) 434-5005


    /s/ Lynda Powers
LYNDA POWERS
U.S. Department of Justice


Dated: September 7, 2005
      Camden, New Jersey