UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AWT) |
| | : | |
| | : | |
| | : | |
| v. | : | September 13, 2005 |
| | : | |
| | : | |
| | : | |
| WALTER A. FORBES | : | |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE
SECURITIES AND EXCHANGE COMMISSION TO QUASH SIX
SUBPOENAS SEEKING TESTIMONY FROM ITS ENFORCEMENT STAFF

INTRODUCTION

Defendant Forbes has served upon five current and one former SEC enforcement staff

members trial subpoenas to appear before this Court on October 17, 2005 to testify in the defense

case. As he did during the first trial when he issued trial subpoenas to three SEC enforcement

attorneys, Forbes now seeks testimony at the second trial from six SEC enforcement staff

members (SEC accountant Susan Markel, current SEC attorneys James Kidney, David Frohlich,

Roger Paszamant, and Matthew Greiner and former SEC Associate Director Thomas Newkirk).

Forbes apparently seeks this testimony to impermissibly bolster his attack on the credibility of

government witness Cosmo Corigliano.

As discussed below, the subpoenas to the five current and one former SEC staff members

should be quashed because the testimony Forbes seeks is irrelevant to the criminal charges

against him and would be inadmissible at trial. The subpoenas also should be quashed because

the testimony sought would invade the SEC's privileges and because courts disfavor testimony

from opposing counsel.

2

The Court's rulings on the subpoenas issued to SEC staff during the first trial support this outcome. While the Court did order limited testimony from Messrs. Frohlich and Kidney during the first trial 1/, the total irrelevance of this line of questioning became clear when the Court heard their testimony. Indeed, at a sidebar during Mr. Kidney's testimony on September 27, 2004, the Court commented on Mr. Kidney's lack of personal knowledge. Moreover, even defendant Forbes recognized the folly of this line of inquiry when he withdrew his subpoena seeking testimony from SEC Associate Director Thomas Newkirk after Messrs. Frohlich and Kidney testified and after the SEC moved to quash Newkirk's testimony. The SEC submits that, given the total lack of probative value of the testimony given in the first trial by Messrs. Frohlich and Kidney, the Court should use Rule 403 to quash the subpoenas issued by defendant Forbes to all six SEC staff (including Frohlich and Kidney) for the second trial.

## BACKGROUND

As at the earlier trial, Forbes apparently wants these six people to testify concerning what benefits have been received by Cosmo Corigliano from the SEC as a result of a budget agreement and subsequent settlement agreement in the SEC's civil action against Corigliano. 2/ But only three of the individuals subpoenaed by Forbes (Newkirk, Kidney, and Frohlich) were at all involved in the negotiation of these agreements.

During his tenure at the SEC, Mr. Newkirk was a senior official in the SEC's Division of Enforcement in Washington, D.C. He was one of four Associate Directors who reported directly

---

1/    *See U.S. v. Forbes, et al., No. 3:02-CR-00264 (AWT)* (document nos. 1185 and 1186) (copies attached as Exhibits 1 and 2).

2/    The scope of the testimony is outlined in an August 13, 2004 letter from Forbes' counsel to SEC counsel. A copy of the letter is attached as Exhibit 3.

to the SEC's Enforcement Director. His job duties included supervising the investigation and/or litigation of over 100 active cases. He also supervised approximately 80 SEC enforcement attorneys. Before he left the SEC in 2004, Mr. Newkirk was counsel for the SEC in the parallel SEC civil litigation against Forbes, Shelton, and Corigliano that is related to this criminal case.

While Mr. Newkirk has some personal knowledge about the SEC's budget agreement and subsequent settlement with Mr. Corigliano, it is limited. At Mr. Newkirk's direction, the budget agreement was negotiated by James Kidney, the SEC trial attorney who previously testified in the first trial against Mr. Forbes. Mr. Kidney was the primary SEC attorney responsible for enforcement of the budget agreement between the SEC and Mr. Corigliano. And, while Mr. Newkirk was involved in settlement negotiations, his involvement was limited to his attendance at some meetings with other SEC staff and Mr. Corigliano's counsel in which settlement of the SEC case against Mr. Corigliano was discussed. David Frohlich, another SEC enforcement attorney who testified in the first trial against Forbes, also attended most of those settlement meetings. Mr. Newkirk has no independent recollection of the dates on which the settlement meetings he attended occurred. The terms of the budget and settlement agreements are contained in those documents, which were publicly filed and to which defendant Forbes has access. 3/

James Kidney is an attorney in the Trial Unit of the SEC's Division of Enforcement in Washington, D.C. He is assigned to the parallel SEC civil litigation against Forbes, Shelton, and Corigliano that is related to this criminal case. Mr. Kidney negotiated an agreement that required Mr. Corigliano and his family to live on a fixed budget during the pendency of the

---

3/     The settlement agreement is contained in the Final Judgment entered in the SEC's civil
        action against Mr. Corigliano.

4

SEC's civil action against him. Mr. Kidney also participated in two meeting with other SEC
staff and Cosmo Corigliano's lawyers regarding a potential settlement of the SEC civil litigation
against Mr. Corigliano.

David Frohlich is also an attorney in the SEC's Division of Enforcement in Washington,
D.C. He supervises approximately 5 SEC enforcement attorneys and conducts complicated
investigations. He was assigned to the parallel SEC investigation that is related to this criminal
case. He also was counsel for the SEC in its parallel civil case against Mr. Corigliano, and
remains counsel for the SEC in its pending parallel civil case against Forbes and Shelton. Mr.
Frohlich participated in meetings with certain government witnesses during the SEC
investigation and resulting civil litigation, during which they were questioned by Mr. Frohlich
and others about facts related to the subsequent indictment as well as the SEC's civil action. Mr.
Frohlich also attended interviews of certain government witnesses conducted by the U.S.
Attorney's Office that is prosecuting this case.

As this Court may recall, the dearth of personal knowledge of Mr. Kidney and Mr.
Frohlich was abundantly clear when Forbes called them to testify in the first trial. Mr. Kidney
and Mr. Frohlich had no first-hand knowledge of any facts relevant to Forbes' guilt or
innocence. They have never met or spoken to Mr. Forbes and have no personal knowledge of his
activities during the time periods charged in the indictment. Nor did Mr. Kidney or Mr. Frohlich
know Mr. Corigliano during the time period of the fraud charged in the indictment. The only
facts known to Mr. Kidney and Mr. Frohlich that relate to this case were gained during the
course of their representation of the SEC in its civil actions against Forbes, Shelton, and
Corigliano. Moreover, Mr. Kidney and Mr. Frohlich derived that information second or third-

5

hand from other sources.

Unlike Messrs. Newkirk, Kidney, and Frohlich who had varying degrees of involvement in the negotiation of the budget and settlement agreements in the SEC's civil action against Corigliano, the remaining SEC staff whom Forbes served with subpoenas (Susan Markel, Roger Paszamant, and Matthew Greiner) have no personal knowledge regarding those agreements. Ms. Markel is the Chief Accountant of the SEC's Division of Enforcement. Messrs. Paszamant and Greiner are attorneys in the SEC's Division of Enforcement in Washington, D.C.

## ARGUMENT

**I.      Forbes' Issuance of Subpoenas To Six SEC Staff Members Is Unreasonable.**

It is completely unreasonable for Forbes to subpoena six SEC staff members to provide testimony about purely potential impeachment material that is irrelevant to the crimes charged. *See United States v. Holihan*, 248 F. Supp. 2d 179, 184-85 (W.D.N.Y. 2003) (information subpoenaed under Rule 17 must be relevant to defendant's culpability and not merely potential impeachment material of government witness). Moreover, as discussed in the preceding paragraph, three of the six SEC staff members subpoenaed by Forbes (Markel, Paszamant, and Greiner) did not work on the budget and settlement agreements in the SEC's civil case against government witness Cosmo Corigliano, and, thus, have no personal knowledge regarding the testimony Forbes seeks from them.

The terms of the budget and settlement agreements are contained in those documents, which were publicly filed and to which defendant Forbes has access. He does not need to waste the Court's and jury's time with needless testimony from SEC attorneys Newkirk, Kidney, and Frohlich to testify about the contents of those documents at the second trial. The documents

6

speak for themselves. The Court should apply Rule 403's balancing test to quash Forbes'

subpoenas to all six SEC witnesses because the testimony Forbes seeks from them is not relevant

to defendant Forbes' culpability, but merely potential impeachment material of government

witness Cosmo Corigliano.

## II.    Forbes Cannot Meet The Standard For Obtaining Testimony Under Rule 17 Of The Federal Rules Of Criminal Procedure.

The Court should quash the subpoenas because Forbes cannot make any showing that the

testimony he is requesting from five current and one former SEC enforcement staff members is

relevant and admissible in this case. Forbes' subpoenas are part of a transparent attempt to

transform the criminal trial against him into a mini-trial against government witness Cosmo

Corigliano.

Rule 17 of the Federal Rules of Criminal Procedure governs the issuance of subpoenas

that seek testimony and/or documents in criminal cases. Rule 17 subpoenas are not discovery or

investigative tools for criminal cases. *See United States v. Cherry*, 876 F. Supp. 547, 549-550

(S.D.N.Y. 1995). "Courts must be careful that Rule 17 is not turned into a broad discovery

device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R.

Crim. P. 16." *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980), *cert. denied*, 449

U.S. 1126 (1981). "It was not intended by Rule 16 to give a limited right of discovery and then

by Rule 17 to give a right of discovery in the broadest terms." *Bowman Dairy v. United States*,

341 U.S. 214, 220 (1951).

A party serving a Rule 17 subpoena "must clear three hurdles: (1) relevancy;

(2) admissibility; and (3) specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974).

Forbes' subpoenas to the six SEC staff members clear none of these hurdles. First, Forbes'

7

subpoenas fail the relevancy test because the requested testimony is not "relevant to the offenses charged in the indictment." *Nixon*, 418 U.S. at 700. *See also United States v. Holihan*, 248 F. Supp. 2d 179, 184-85 (W.D.N.Y.) (Information subpoenaed under Rule 17 must be relevant to defendant's culpability and not merely potential impeachment material of government witnesses); *see also Bowman Dairy*, 341 U.S. at 221 (invalidating as improper "fishing expedition" that portion of trial subpoena that requested documents "relevant to the allegations or charges contained in said indictment, whether or not they might constitute evidence with respect to the guilt or innocence of any of the defendants"). Here, none of the subpoenaed testimony bears on the truth or falsity of the testimony of government witness Cosmo Corigliano concerning the substance of his dealings with defendant Forbes and the fraudulent scheme. Rather, the testimony sought relates to the tangential topic of Corigliano's settlement with the SEC and the alleged inadequacy of Corigliano's disclosures to the SEC. This is purely potential impeachment material, irrelevant to the crimes charged.

Similarly, the requested testimony fails the admissibility test. Forbes will have the opportunity at the second trial to cross examine Corigliano thoroughly about Forbes' contention that Corigliano lied to or otherwise misled the SEC during his settlement negotiations. Even if the requested testimony from the six SEC staff members supported Forbes' contentions about Corigliano, which it does not, the Federal Rules of Evidence would not permit Forbes to introduce it into evidence or otherwise use it in an attempt to prove his contentions. *See United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995) ("Courts have consistently interpreted the admissibility standard of Rule 17 to preclude production of materials whose evidentiary use is limited to impeachment.") (citations omitted).

8

Rule 608(b) of the Federal Rules of Evidence provides, in relevant part:

> Specific instances of the conduct of a witness, for the purpose of
> attacking or supporting the witness' credibility, other than conviction
> of a crime as provided in Rule 609, *may not be proved by extrinsic evidence.*
> They may, however, in the discretion of the court, if probative of truthfulness
> or untruthfulness, *be inquired into on cross-examination * * *.*

Fed. R. Crim. P. 608(b) (emphasis added). *See Ricketts v. City of Hartford*, 74 F.3d 1397, 1413

(2d Cir. 1996) ("Rule 608(b) precludes the introduction of extrinsic evidence solely to attack

credibility"); *Walker v. Firestone Tire & Rubber Co.*, 412 F.2d 60, 63 (2d Cir. 1969) (noting

"well settled" rule that an opposing party may "ask questions" but "is not permitted to adduce

extrinsic evidence that a witness lied on a previous occasion"). The purpose of this rule is to

prevent mini-trials on side issues that are not relevant to the defendant's guilt or innocence. *See*

*Ricketts*, 74 F.3d at 1414 (district court properly exercised discretion in refusing to permit a trial

within the trial concerning witness' conduct).

During the first trial, Forbes sought to escape Rule 608(b)'s ban on the use of extrinsic

evidence to impeach Mr. Corigliano by claiming that the testimony Forbes sought from three

SEC enforcement attorneys about the settlement of its civil action against Mr. Corigliano was

admissible to prove that Mr. Corigliano is biased or has a motive to testify falsely in this criminal

trial. Forbes relied on a series of cases, cited in his opposition to one of the SEC's motions to

quash a subpoena issued during the first trial (document no.1087 at p. 9), in which extrinsic

evidence was admitted. In every single one of those cases, however, the extrinsic evidence was

admitted to impeach the defendant's testimony, not that of a witness.

The two cases Forbes did cite, elsewhere in his brief, which did involve impeaching the

credibility of a government witness, *see United States v. Harvey*, 547 F.2d 720 (2d Cir. 1976)

9

and *United States v. Messino*, 882 F. Supp. 115 (N.D. Ill. 1995), are inapposite to Forbes'

continuing efforts to impeach Mr. Corigliano. In *Harvey*, the trial court refused to admit

extrinsic evidence that the government's sole identification witness who placed the defendant at

the scene of the crime charged in the indictment had once accused the defendant of fathering and

failing to support her child. The Second Circuit reversed the conviction stating that defendant

was denied an important opportunity to raise a reasonable doubt about his participation in the

crime charged in the indictment. *Id.* 4/

Forbes' efforts to impeach Mr. Corigliano are more akin to the circumstances presented

in *United States v. James*, 609 F.2d 36, 47-48 (2d Cir. 1979), in which the Second Circuit upheld

the conviction even though the trial court refused to admit extrinsic evidence (FBI reports and

testimony from the Assistant United States Attorney regarding another criminal case in which a

government witness was involved). The Second Circuit upheld the conviction because the

defendant in *James* was given a full opportunity to bring out on cross examination of the

government witness what favors the witness had already received from the government and what

further ones he expected. The *James* Court stated that the test for admission of such evidence is

whether the jury is in possession of sufficient information to make a discriminating appraisal of

the witness' possible motives for testifying falsely in favor of the government. *Id.*

---

4/    Similarly, in *Messino*, the defense sought information central to the criminal case against
      the defendant. The defense subpoenaed information about the arrest record of the
      government informant who recorded conversations with the defendant in connection with
      the crimes charged in the indictment. This information was necessary to lay the
      foundation for playing the tapes of those conversations in the criminal case. Moreover,
      in *Messino*, unlike the instant case against Forbes, the subpoenaed information was
      *Giglio* impeachment material and, thus, the Court found that it would be admissible once
      the informant testified and his credibility was at issue.

10

Here, as the Court now knows from the testimony of Messrs. Kidney and Frohlich at the first trial, testimony from six SEC staff members at the second trial will not add anything new to what Mr. Corigliano will testify to during his cross examination at the second trial. As was the case during the first trial, the record at the second trial can be fully developed as to Mr. Corigliano's alleged "bias" based on his settlement with the SEC during his cross examination. Any further testimony from six SEC witnesses would be cumulative and a waste of the Court's and jury's time. *See James*, 609 F.2d at 47-48; *see also United States v. Weis*, 930 F.2d 185, 198 (2d Cir. 1991) (finding no error in the exclusion, as cumulative, of extrinsic evidence of prosecution witness' bias where defense counsel already caused the witness to "admit[ ] to the main circumstances from which any bias supposedly arose. All the relevant information was obtained and there is no evidence that the testimony would have added anything of probative value") (internal citation omitted); *United States v. Blackwood*, 456 F.2d 526, 530 (2d Cir. 1972) (explaining that "[a] defendant's right to elicit such evidence * * * is not boundless, but is subject to reasonable limitations imposed by the trial judge in the exercise of sound discretion," and holding that "[t]he test for determining whether there has been an abuse of discretion is whether "the jury was otherwise in possession of sufficient information concerning formative events to make a 'discriminating appraisal' of a witness' motives and bias") (internal citation omitted).

The testimony Forbes seeks from five current and one former SEC enforcement staff members also fails *Nixon's* specificity test. The existence of the six subpoenas on their face make this point abundantly clear. Forbes is once again engaged in an impermissible "fishing expedition" that seeks an end-run around the carefully crafted criminal discovery rules. Six

11

subpoenas issued to SEC staff, based on the "mere hope" that something useful might turn up, do

not satisfy the specificity requirement in Rule 17. *See Cuthbertson*, 630 F.2d at 1246.

### III.    The Subpoenaed Testimony Is Privileged.

#### A.    Forbes' Six Subpoenas To SEC Staff Are An Improper Attempt To Disqualify Opposing Counsel By Converting Them Into Witnesses.

The subpoenaed SEC staff all participated in *In the Matter of Cendant Corporation and*

*Trading in its Securities*, File No. HO-03401, the SEC investigation into possible securities laws

violations by Walter Forbes and others. In addition, Messrs. Kidney and Frohlich are counsel in

the SEC's pending enforcement action against Forbes and Shelton. And, before he left the SEC,

Mr. Newkirk also was counsel in that pending SEC action. In this capacity, all six SEC

employees have knowledge regarding the defendants which may be the subject of various

privileges, including, but not limited to, the deliberative process privilege, the attorney-client

privilege, and the attorney work product doctrine.

Forbes' subpoenas to the six SEC enforcement staff members are in direct conflict with a

long line of judicial decisions strongly disapproving of attempts to force an attorney for an

opposing party and those working at their direction to testify about substantive matters or

information that the attorney learned during the course of representing his or her client. Courts

generally bar the depositions or testimony of opposing counsel or those working at their

direction, recognizing the risk of harassment such testimony fosters. *See, e.g., SEC v. Morelli*,

143 F.R.D. 42, 47 (S.D.N.Y. 1992); *SEC v. Buntrock*, 217 F.R.D. 441, 444 (N.D. Ill. 2003);

N.F.A. Corp. v. Riverview Narrow Fabrics, 117 F.R.D. 83, 85 (M.D.N.C. 1987). Such testimony

also has the potential to intrude upon information protected by the work product doctrine, the

deliberative process privilege, and other privileges. *See, e.g. Morelli*, 143 F.R.D. at 47

(deposition of SEC attorney would impermissibly allow opposing counsel to inquire into litigation strategies); *In re Adler, Coleman Clearing Corp.*, 1999 WL 1747410 (S.D.N.Y. 1999)(denying proposed third-party deposition of NASD attorney in charge of pending NASD investigation); *SEC v. Cavanagh*, 1998 U.S. Dist. LEXIS 3713 (S.D.N.Y. 1998) (granting protective order precluding proposed depositions of SEC trial counsel); *SEC v. Rosenfeld*, 1997 WL 576021 (S.D.N.Y. 1997). Testimony of opposing counsel is strongly disfavored. *See United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991) (*citing Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)).

Under *Shelton*, which is recognized as setting the test for determining when testimony from opposing counsel should be compelled 5/, and which has been widely applied by district courts in the Second Circuit 6/, such testimony may be allowed only if (1) the information sought is relevant and non-privileged, (2) no other means exist to obtain the information, and (3) the information sought is crucial to the preparation of the case. 805 F.2d at 1327. As explained below, Forbes' demand for testimony from the six SEC staff members does not meet any of the three prongs of this test.

---

5/   *See Alcon Labs v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 342 (S.D.N.Y. 2002) (noting that "the Second Circuit has * * * expressed agreement with the principles expressed" in *Shelton*) (citations omitted).

6/   *See id.*; *In re M/V DG Harmony*, 2002 WL 664078 (S.D.N.Y. Apr. 19, 2002); *Madanes v. Madanes*, 199 F.R.D. 135, 151 (S.D.N.Y. 2001); *Maher v. Monahan*, 2000 WL 777877, at *3 (S.D.N.Y. June 15, 2000); *USF&G v. Braspetro Oil Serv. Co.*, 2000 WL 1253262, at *1 (S.D.N.Y. Sept. 1, 2000); *Pereira v. United Jersey Bank*, 1997 WL 773716, at *7 (S.D.N.Y. Dec. 11, 1997); *Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, 125 F.R.D. 578, 594 (N.D.N.Y. 1989).

13

**B.** **Compelling The SEC Staff To Testify Would Unduly Interfere With The SEC's Work Product Protection, Deliberative Process Privilege, and Attorney Client Privilege, And Such Testimony Is Not Relevant To This Case.**

Allowing Forbes' counsel to question the six SEC staff members would invade the SEC's privileges. First, allowing questions relating to the budget and settlement agreements between the SEC and Mr. Corigliano would require the SEC attorneys and those working at their direction to divulge information they learned from serving as SEC counsel in the SEC's investigation and/or resulting civil actions against Forbes, Shelton, and Corigliano. Such information is protected by, among other things, the attorney work product doctrine, the deliberative process privilege, and the attorney client privilege. Accordingly, courts have repeatedly barred testimony from opposing counsel. *See SEC v. Morelli*, 143 F.R.D. 42, 47 (S.D.N.Y. 1992) (quashing deposition of SEC attorney where deposition would impermissibly allow opposing counsel to inquire into SEC's litigation strategies); *In re Adler, Coleman Clearing Corp.*, 1999 WL 1747410, at *5 (quashing deposition of NASD attorney in charge of pending NASD investigation); *SEC v. Cavanagh*, 1998 WL 132842 (S.D.N.Y. Mar. 23, 1998) (barring proposed depositions of SEC trial counsel, where SEC asserted questioning would violate work product doctrine and deliberative process privilege); *SEC v. Rosenfeld*, 1997 WL 576021 (S.D.N.Y. Sept. 16, 1997) (quashing defendant's notice to depose SEC attorney with knowledge of SEC action pending against defendant).

Even if Forbes were to contend that the subpoenas seek to discover facts, and not attorney work product, the above-mentioned cases demonstrate that testimony from attorneys involved in litigation and those working at their direction inherently invades the attorneys' mental processes and strategies. Thus, for example, *Morelli* barred the deposition of an SEC

14

attorney, even though the defendant argued that it was intended merely to learn the factual basis

of the SEC's allegations, including the facts relating to charges of insider trading. The court

barred the deposition, finding that it constituted an impermissible attempt to inquire into the

mental processes and strategies of the SEC. *Morelli*, 143 F.R.D. at 44, 47. 7/

In addition, as discussed in Section II of this brief, the testimony Forbes seeks from the

SEC staff is not relevant to the criminal charges against him. Further, other means exist to

obtain the information sought by these subpoenas. Forbes will have ample opportunity to

thoroughly cross-examine Cosmo Corigliano. He should not be permitted to bolster his attack

on Mr. Corigliano's credibility by taking testimony from five SEC attorneys and an SEC

accountant during the second trial. And, this testimony is far from crucial to the defense – it is a

sideshow intended to distract the jury from considering Forbes' guilt or innocence of the crimes

charged in the indictment.

Thus, even if the *Shelton* test did not apply here, and only federal common law standards

applied, the testimony Forbes seeks is privileged. On this ground alone, the Court should quash

the six subpoenas.

---

7/    *See also SEC v. Buntrock*, 217 F.R.D. 441, 444 (N.D. Ill. 2003); *N.F.A. Corp. v.
      Riverview Narrow Fabrics*, 117 F.R.D. 83, 85 (M.D.N.C. 1987) ("deposition of a party's
      attorney * * * involves forays into the area most protected by the work product doctrine –
      that involving an attorney's mental impressions or opinions"); *Berkey Photo, Inc. v.
      Eastman Kodak Co.*, 74 F.R.D. 613, 616 (S.D.N.Y. 1977) (barring discovery of
      "counsel's ordering of the 'facts' referring to the prospective proofs, organizing, aligning,
      and marshaling empirical data with the view to combative employment that is the
      hallmark of the adversary enterprise"); *In re Bilzerian*, 258 B.R. 846 (Bankr. M.D. Fla.
      2001) (court issued protective order in response to Rule 30(b)(6) deposition notice, as
      persons most familiar would be SEC attorneys who conducted the investigation and any
      deposition would naturally include disclosure of their legal and factual theories).

**C.     Even If The Court Determines That The Prior Testimony Of SEC Attorneys
Frohlich and Kidney Creates A Limited Waiver Of Certain SEC
Privileges, The Court Should Still Quash The Current Subpoenas To
Six SEC Staff Members Under Rule 403's Balancing Test.**

Defendant Forbes will undoubtedly argue that, when SEC attorneys Frohlich and Kidney

testified in the first trial as ordered by the Court, the SEC waived certain privileges within the

scope of their actual testimony. While the Court did order limited testimony from Messrs.

Frohlich and Kidney during the first trial, the total irrelevance of this line of questioning became

clear when the Court heard their testimony. *See supra* at p. 3.

As noted previously, any reasonable balancing test conducted pursuant to Rule 403

would exclude the testimony Forbes seeks from six SEC staff members at the second trial.

Defendant Forbes will have the opportunity to thoroughly cross-examine Cosmo Corigliano

about the budget and settlement agreements with the SEC during the second trial. In order to

prevent witness harassment, confusion of the issues, undue trial delay, and waste of the jury's

time, the six subpoenas to the SEC enforcement staff should be quashed. *See Yousef*, 327 F.3d at

121 (District Court has broad discretion to admit or exclude evidence for reasons enumerated in

Rule 403); *Schatzle*, 901 F.2d at 256 (District Court properly exercised Rule 403 discretion to

exclude evidence about witness' conduct where evidence could lead to a "mini-trial" that "posed

a genuine risk of focusing the jury upon the wrong event"). Here, the Court has the rare benefit

of hindsight and should use it to prevent the waste of its and the jury's time at the second trial.

**D.     If The Court Orders Any Testimony From SEC Staff In The Second Trial,
It Should Be From One SEC Staff Member And Subject To The Same
Limitations As In The First Trial.**

As the Court may recall, it ordered limited testimony from Messrs. Frohlich and Kidney

during the first trial. On September 24, 2004, in ruling on the SEC's motion to quash or limit

16

this testimony (document no. 1010 regarding Mr. Frohlich and no. 1094 regarding Mr. Kidney),
the Court found that defendant Forbes was entitled to an "appropriate opportunity" to put before
the jury evidence on the issue of whether Cosmo Corigliano has a bias in favor of the
government. *See U.S. v. Forbes, et al.*, No. 3:02-CR-00264 (AWT) (document nos. 1185 and
1186 attached hereto as Exhibits 1 and 2). The aspect of that issue presented by Forbes'
subpoenas to Frohlich and Kidney was the extent to which Mr. Corigliano received benefits from
the SEC in connection with his settlement of the SEC's civil action against him.

However, the Court ruled that defendant Forbes would not be permitted to explore
whether the SEC itself agreed to the benefits conferred on Corigliano "because that line of
inquiry is calculated solely to bolster the defendants' attack on Corigliano's credibility during
their cross-examination of him and to attack the credibility of the government." Exhibit 2 at p. 2.
For example, the Court noted that Forbes would not be allowed to elicit testimony from Frohlich
or Kidney that could then be compared to Corigliano's answers on cross-examination to
impermissibly attack Corigliano's credibility. Exhibit 1 at p. 3. The Court felt strongly that such
a backdoor attack on credibility could not be permitted. *Id.*

The Court also prohibited Forbes from using Frohlich's or Kidney's testimony to put
before the jury Forbes' interpretation of agreements between the SEC and Corigliano, and then
argue that those agreements were "side agreements." *Id.* The Court used the balancing test
under Rule 403 to prohibit this line of questioning.

The SEC reiterates that, based on the Court's observation of the total lack of probative
value of the testimony given in the first trial by Messrs. Frohlich and Kidney and Forbes'
issuance of six subpoenas to SEC staff for testimony in the second trial, the Court should use

17

Rule 403's balancing test to quash the six subpoenas. *See Yousef*, 327 F.3d at 121 (District Court has broad discretion to admit or exclude evidence for reasons enumerated in Rule 403); *Schatzle*, 901 F.2d at 256 (District Court properly exercised Rule 403 discretion to exclude evidence about witness' conduct where evidence could lead to a "mini-trial" that "posed a genuine risk of focusing the jury upon the wrong event").

Should the Court determine that testimony from an SEC staff member is necessary in the second trial, it should impose the same limitations and only require testimony from one SEC staff member. 8/

## CONCLUSION

For the foregoing reasons, the Court should quash Forbes' subpoenas to the five current and one former SEC staff members.

Respectfully submitted,

*Kathleen Cody*

SAMUEL M. FORSTEIN
Assistant General Counsel

KATHLEEN CODY
Senior Counsel

Securities and Exchange Commission
100 F Street, N. E.
Washington, D.C. 20549-9612
Tel. (202) 551-5126; Fax (202) 772-9263

---

8/    Should the Court require testimony from an SEC staff member, the SEC objects to Forbes' request that witnesses be available on 48 hours notice for the entire duration of the defense case. During the first trial, one of the SEC witnesses was summoned to Hartford, Connection from Washington, D.C. on numerous occasions before he ever actually testified. The SEC requests that Forbes' counsel be ordered to notify the undersigned SEC counsel at least seven business days before the testimony is sought to determine whether the witness is available.