LAW OFFICES
# WILLIAMS & CONNOLLY LLP
725 TWELFTH STREET, N.W.
WASHINGTON, D. C. 20005-5901

MARGARET A. KEELEY
(202) 434-5137
mkeeley@wc.com

(202) 434-5000

FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

August 13, 2004

<u>Via Facsimile ((860) 240-3021) and Regular U.S. Mail</u>

Samuel M. Forstein
Assistant General Counsel
Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, D.C. 20549

      Re:    *United States v. Walter A. Forbes & E. Kirk Shelton*

Dear Mr. Forstein:

      I am writing both in response to your letter of July 21, 2004, and to address our recent subpoena to Securities and Exchange Commission ("SEC") enforcement attorney James A. Kidney. Mr. Forbes seeks testimony from Mr. Kidney regarding communications that the SEC had with Cosmo Corigliano and/or his counsel, and with Agnes Theresa Corigliano and/or her counsel, including communications concerning any desire to settle the case expeditiously before either the trial against Mr. Forbes commenced, or Mr. Corigliano began his testimony in that trial, as well as the dates of any meetings between the SEC and Mr. Corigliano.

      Please also be advised that, in addition to the disclosures in my letter of July 12, 2004 summarizing the testimony that Mr. Forbes seeks from SEC enforcement attorney David Frohlich, we seek testimony from Mr. Frohlich regarding communications that the SEC had with Cosmo Corigliano and/or his counsel, and with Agnes Theresa Corigliano and/or her counsel, including communications concerning any desire to settle the case expeditiously before either the trial against Mr. Forbes commenced, or Mr. Corigliano began his testimony in that trial.

      With regard to both witnesses' testimony, please note that the government has advised us that the SEC did not know that, as reflected in the records of the Town of Old Saybrook, the Coriglianos' property is actually two separate lots. One of the parcels is designated 38 Watrous Point Road, an 8.37 acre

Exhibit 3

Samuel M. Forstein
August 13, 2004
Page 2

lot on which the Coriglianos' residence is located, and one is a separate, buildable lot of 3.14 acres. The settlement agreement between the SEC and Cosmo Corigliano provides for the turnover to a receiver, for potential distribution to investors, of all of Mr. Corigliano's assets except certain specified assets, including Mr. Corigliano's "residence at 38 Watrous Point Road." Despite this provision of the settlement agreement presented to and approved by the United States District Court for the District of New Jersey, the government has advised counsel (and the United States District Court for the District of Connecticut, in which the witnesses' testimony is sought), that the SEC understood that Mr. Corigliano's wife owned all of the land that makes up those two lots and that the agency intended in the settlement agreement to let her retain all of the property that she had originally purchased for $1.7 million.

This representation actually ignores a number of significant issues. The government's representation begs the question of whether the Commission, as opposed to the staff, would have permitted Mr. Corigliano to keep both parcels had it known of their existence, whether the Commission will permit Mr. Corigliano to keep both parcels despite the language of the settlement agreement, or whether the Commission or its staff knew that Mr. Corigliano's two parcels totaled more than 11 acres. It also does not address the fact that, in response to the SEC's inquiries concerning the value of Mr. Corigliano's assets, counsel for Mr. Corigliano in September 2003 sent the SEC a real estate listing of a nearby property that "seems comparable," but which was a single piece of property totaling only 1.32 acres. Thus, among other issues, testimony will be elicited from both witnesses concerning all communications between the SEC and the Corigliano and/or their counsel concerning the nature and value of the Coriglianos' assets, including their residence at 38 Watrous Point Road, and negotiations concerning the language describing what assets Mr. Corigliano could retain.

Testimony will also be elicited concerning the documents referenced in Paragraph XXII of the Final Judgment, which were provided on behalf of Mr. Corigliano and on which the SEC relied in settling with Mr. Corigliano and waiving its right to seek full, prejudgment interest or penalties.

Testimony will also be elicited concerning the terms of the settlement with Mr. Corigliano. The Consent agreement and the Final Judgment each provides that Mr. Corigliano and the Relief Defendants shall disgorge all assets of a value of $1,000 or more in which they had any direct or indirect legal or beneficial ownership interest *as of March 31, 2004*, other than (1) the residence at 38 Watrous Point Road in Old Saybrook, Connecticut; (2) all furnishing and personal property therein; (3) the residence in Trumbull, Connecticut, occupied by Mr. Corigliano's parents; (4) all furnishing and personal property therein; (5) one 1996 Lexus automobile; (6) one 1993 Acura automobile; and (7) a balance of $100,000 in each of the three trust funds set up in the names of Mr. Corigliano's children. The SEC, in

Samuel M. Forstein
August 13, 2004
Page 3

a pleading signed by Mr. Frohlich and listing Mr. Kidney as the most senior lawyer, made the same representation in seeking the prompt entry of a Final Judgment from the Court in New Jersey, wherein the SEC stated that the proposed Final Judgment "requires the Coriglianos to disgorge as unjust enrichment all of their assets except their residence, the residence of Corigliano's parents, two aging vehicles, and $100,000 each in three trust funds held for the education of their minor children." See Memorandum in Support of Plaintiff's Motion to Reassign and Restore this Matter to the Active Docket and for Entry of Finals Judgment as to Defendant Cosmo Corigliano and Relief Defendants Agnes T. Corigliano and Mary Louise Scully.

The government has made several representations concerning the SEC that appear inconsistent with the SEC's representations in these pleadings and settlement documents. For example, the government represented that the SEC knew that Mr. Corigliano also had a retainer on deposit with his counsel, and that Mrs. Corigliano had a retainer on deposit with her counsel, prior to settling with them. The government has advised us that as of April 2004 these two retainers totaled approximately $2 million. The government has further represented that the retainers on deposit with the Coriglianos' attorneys can continue to be used for legal fees, and that only the remainder, if any, will be disgorged to the receiver after their need for legal services has ended. Prior cases brought by the SEC clearly establish that the SEC has the legal right to reach unused portions of legal retainers. SEC v. Credit Bancorp, Ltd., 109 F. Supp. 2d 142, 145 (S.D.N.Y. 2000); SEC v. Princeton Economic Int'l Ltd., 84 F. Supp. 2d 443, 446 (S.D.N.Y. 2000); SEC v. Comcoa, Ltd., 887 F. Supp. 1521, 1528 (S.D. Fla.), aff'd, 70 F.3d 1191 (11th Cir. 1995). Moreover, the settlement agreement signed by the SEC, and approved by the Court in New Jersey, provides for the transfer of *all* assets, within 60 days, that are not expressly left to Mr. Corigliano therein, and the April retainer balances are not identified as assets in the settlement agreement that Mr. Corigliano will retain. The only conclusion to draw from this new information is that the SEC and the Coriglianos entered into an undocumented side-agreement concerning the retainers. Defendants will seek testimony concerning this side-agreement from both witnesses subpoenaed. In addition, the retainers were not identified in Mr. Corigliano's quarterly statements to the SEC. Thus testimony will be sought regarding the timing and the extent of Mr. Corigliano's (or his counsel's) disclosures to the SEC concerning these retainers.

Testimony may also be elicited concerning what expenses, if any, Mr. Corigliano was permitted to pay out of the assets in which he had a direct or indirect beneficial interest on March 31, 2004. The plain language of the Final Judgment states that all such assets, other those specifically exempted, are to be disgorged to the SEC. Yet Mr. Corigliano continued to pay his living expenses and property taxes up through at least July 1, 2004 out of these assets, raising the

Samuel M. Forstein
August 13, 2004
Page 4

question of whether these expenditures were authorized by the SEC in another, undocumented side-agreement.

As set forth in my July 12, 2004 letter, these voluntary disclosures regarding testimony that Mr. Forbes seeks from SEC enforcement attorneys are merely an attempt to avoid needless expenditure of judicial and party resources. Mr. Forbes' right to the use of compulsory process to obtain relevant evidence is in no way contingent upon him making any disclosures to the SEC.

If you have any questions regarding this matter, please do not hesitate to contact me at (860) 293-1546.[1]

Sincerely yours,

Margaret A. Keeley

Enclosure

cc: Kathleen Cody, Esq.
Thomas P. Puccio, Esq.
Scott Edelman, Esq.

---

[1] Please note that all potential witnesses, including Messrs. Frohlich and Kidney, are subject to a sequestration order, and thus the contents of trial testimony cannot be shared with them.