UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AWT) |
| | : | |
| | : | |
| V. | : | September 15, 2005 |
| | : | |
| | : | |
| | : | |
| WALTER A. FORBES | : | |


SECOND PARTIAL REPLY MEMORANDUM OF THE UNITED STATES IN SUPPORT
OF PRE-TRIAL MOTION IN LIMINE

GOVERNMENT'S PRE-RETRIAL MOTION NO. 1

CHRISTOPHER J. CHRISTIE
NORMAN GROSS
MICHAEL MARTINEZ
CRAIG CARPENITO
Special Attorneys
U. S. Department of Justice
970 Broad Street, Room 700
Newark, New Jersey 07101
Tel: (973) 645-2700
Fax: (973) 645-2857

## TABLE OF CONTENTS

INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

    III(A).  This Court has previously and properly rejected the
sole basis for Forbes' request to bar the admission of any
of his prior testimony: that Cosmo Corigliano and Kevin
Kearney committed perjury during the initial trial. . . . 1

    III(B).  Forbes' prior testimony about his asset transfers
is relevant to his consciousness of guilt and should be
admitted. . . . . . . . . . . . . . . . . . . . . . . . . 3

    III(C).  This Court should reject Forbes' requests to place
into evidence excerpts from his prior testimony that do not
directly address the matters set forth in the excerpts of
his prior testimony identified by the Government that should
be admitted at the retrial pursuant to Fed. R. Evid.
801(d)(2)(A). . . . . . . . . . . . . . . . . . . . . . . 6

    III(D).  This Court should admit all of Forbes' relevant
testimony from the first trial, including his responses to
Michael Monaco's testimony during the first trial. . . 10

    IV.  Forbes has failed to demonstrate that the magnitude of
the GAAP violations is irrelevant to his knowledge of the
fraud. . . . . . . . . . . . . . . . . . . . . . . . . . 12

    V.  His protestations to the contrary notwithstanding,
Forbes improperly questioned Corigliano about whether he
subjectively believed that he was guilty of the crime of
insider trading. . . . . . . . . . . . . . . . . . . . . 14

    VI. Forbes has failed to demonstrate that the challenged
portions of his attorney's opening statement and summation
were proper. . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 20

i

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AWT) |
| | : | |
| | : | |
| v. | : | September 15, 2005 |
| | : | |
| | : | |
| | : | |
| WALTER A. FORBES | : | |

SECOND PARTIAL REPLY MEMORANDUM OF THE UNITED STATES IN SUPPORT
OF MOTION TO IN LIMINE TO ADMIT CERTAIN EVIDENCE

GOVERNMENT'S PRE-RETRIAL MOTION NO. 1

INTRODUCTION

The Government submits this second partial reply memorandum in support of its pre-retrial motion *in limine* (Government Pre-Trial Motion No. 1), addressing issues three through six of that motion.  At the direction of the Court, the Government previously submitted, on September 7, 2005, an initial partial reply memorandum, addressing the first two issues presented in that motion.

ARGUMENT

**III(A). This Court has previously and properly rejected the sole basis for Forbes' request to bar the admission of any of his prior testimony: that Cosmo Corigliano and Kevin Kearney committed perjury during the initial trial.**

Forbes contends that the Government should be precluded from presenting any evidence of Forbes' testimony from the initial trial, because he was supposedly improperly compelled to

1

testify at the first trial in order to respond to Cosmo Corigliano's and Kevin Kearney's supposedly false testimony. Forbes claims he would not have testified but for the supposedly false testimony of Corigliano and Kearney.

During the first trial, Forbes advanced the same claims that Corigliano and Kearney committed perjury. Based on that supposed perjury, Forbes sought a mistrial. Forbes' Trial Motions Nos. 28 and 30, Docket Nos. 1084 and 1091, filed August 20 and 23, 2004, respectively. This Court denied both motions, implicitly finding that Forbes had failed to demonstrate that either witness had given perjured testimony.

Forbes now offers nothing beyond that which he previously advanced in support of his perjury/mistrial motions. Accordingly, he once again effectively seeks reconsideration of this Court's prior determination that Forbes failed to demonstrate that either Corigliano or Kearney committed perjury at the first trial. This Court should decline to revisit its prior determination that Forbes has failed to establish perjury of either witness, particularly given Forbes' failure to present any new evidence or arguments of the supposed perjury. See Jordan (Bermuda) Investment Co., Ltd. v. Hunter Green Investments Ltd., 2003 WL 21263544, *3 (S.D.N.Y., June 2, 2003)(denying reconsideration where the moving party "failed to meet [the applicable] standard by neither pointing to controlling decisions

or data that the court overlooked nor showing that
reconsideration is necessary in order to correct a clear error or
prevent manifest injustice"). Accordingly, Forbes' claim that
his prior testimony should be excluded *in toto* from the retrial
should be rejected.

### III(B). Forbes' prior testimony about his asset transfers is relevant to his consciousness of guilt and should be admitted.

Forbes admits in his brief, FM 10, as he did at trial,
Tr. 14386-97, that he transferred several parcels of real
property valued in the millions of dollars to his wife
specifically to shield those assets from potential adverse
judgments in private lawsuits that had been brought against him,
alleging his involvement in the same fraudulent conduct at issue
in this criminal case. He contends that he feared civil
liability, which could be based on vicarious liability. He
claims that his supposed fear of civil liability fully explains
the asset transfers, so evidence of those transfers is irrelevant
to prove that he was also conscious of intentional wrong-doing
required to establish criminal liability.

This argument should be rejected. First, it requires
the Court to accept as true Forbes' explanation for his conduct.
That decision, however, is for the jury. <u>United States v. Roman</u>,
870 F.2d 65, 71 (2d Cir. 1989). A suspect or defendant who flees
from justice can always argue that, although he was innocent, he

3

reasonably feared a wrongful conviction, and his flight was
therefore motivated by something other than a guilty conscience.
Nevertheless, the jury can reject that inference and opt for
another plausible explanation: consciousness of guilt.

Second, the jury could reasonably reject Forbes' self-
serving explanation for the transfers and conclude that Forbes'
decision to transfer the assets was motivated, at least in part,
by his consciousness of intentional wrongdoing.  Even if Forbes
could be held civilly liable for conduct that did not rise to the
level of intentional fraud, proof of intentional fraud would
also, obviously, support a finding of civil liability for
violation of the federal securities laws.  See Rolf v. Blyth,
Eastman Dillon & Co., Inc., 570 F.2d 38, 46 (2d Cir. 1978)
(recklessness, as well as willful conduct, may satisfy the
scienter requirement for a private cause of action for securities
fraud in violation of Rule 10b-5).  Since a fine or order of
restitution following a criminal conviction, like a civil money
judgment, could subject Forbes to the loss of his real property,
he would be equally motivated to shield his assets against an
adverse outcome in either a criminal or civil proceeding.  The
jury could reasonably infer that Forbes' efforts to shield his
assets from a possible civil judgment could have been motivated
by his fears that a civil jury would find that he intentionally
engaged in unlawful conduct.  Forbes was likely aware that a

4

civil jury would be more likely to impose liability against Forbes based on a finding of willful fraud than on a finding of some less blameworthy mental state.[1]  Evidence that Forbes shielded his assets against a legal judgment makes it more likely that he knew that he was guilty of the charged crimes than if he had confidently retained his interests in those assets, knowing that, as he claims, he did nothing wrong.

Forbes again claims that this evidence should be excluded by operation of Rule 403, and again cites only the inapposite decision in United States v. Stahl, 616 F.2d 30 (2d Cir. 1980).  See Government's Initial Partial Reply Memorandum in Support of Pre-Retrial Motion in Limine, p. 10, n.3 (distinguishing Stahl).  As this Court previously concluded in granting the Government's motion with respect to evidence of

---

[1]   United States v. Ramirez, 176 F.3d 1179 (9th Cir. 1999) provides scant support for Forbes' claim.  There, the Ninth Circuit concluded without explanation that evidence that the defendant's sister registered title to the defendant's vehicles shortly after he was arrested was "harmless error" after the defendant claimed that the evidence was irrelevant and prejudicial.  Id. at 1182-83.  The Court agreed, without enthusiasm, that evidence that the defendant had used a rental vehicle rather than one of his own cars to transport drugs across the U.S./Mexico border was relevant to his consciousness of guilt, but apparently concluded that the additional evidence that he also transferred car titles to his sister was unnecessary to support that inference.  Id.  Unlike this case, the Government evidently did not contend in Ramirez that the defendant transferred assets in order to shield them against loss as a consequence of the criminal prosecution, thereby demonstrating consciousness of guilt, so the Court did not address the relevance theory the Government presents here.

Forbes' stock sales, the jury is unlikely to develop an animus against Forbes because of his wealth.  The Government agrees with Forbes that his status as a defendant in a civil case is irrelevant here, FM 11, and will not offer any evidence of that fact.  Accordingly, Forbes purported concern that the jury might hold him responsible for the criminal charges because he has been sued civilly fails for want of a predicate.

**III(C).  This Court should reject Forbes' requests to place into evidence excerpts from his prior testimony that do not directly address the matters set forth in the excerpts of his prior testimony identified by the Government that should be admitted at the retrial pursuant to Fed. R. Evid. 801(d)(2)(A).**

Forbes does not dispute that the following designated excerpts of Forbes' prior testimony are relevant to the retrial:

1) Forbes' conversation with Henry Silverman around the Labor Day weekend of 1997 regarding Forbes' request that Silverman not remove Pember from her position in the accounting function of CMS, Tr. 14350, l.15 - 14364, l.9;[2]

2) Forbes' claim that he did not urge the Cendant Executive Committee to retain E&Y as the independent auditors of the former CUC divisions of Cendant, Tr. 14340, l.1 - 14344, l.24;

3) Forbes' desire to know if CUC had "hit the range" of estimates established by Wall Street analysts, Tr. 13968, l.4 - 13969, l.6; Forbes kept track of and occasionally spoke to Corigliano about whether CUC's earnings were meeting those targets, Tr. 13969, l.21 - 13970, l.21;

_____

[2]  In its initial memorandum in support of its pre-retrial motions *in limine*, the Government neglected to identify the line numbers, as well as the page numbers, of the excerpts of Forbes' prior testimony for which it seeks admission at the retrial.  The Government has now identified those line numbers in this submission.

6

4) Forbes' attendance during meetings at CUC when "forecasts" were discussed, Tr. 13977, l.6 - l.17; and

5) Forbes' knowledge that CUC was establishing merger reserves for CUC's large acquisitions and knew that such reserves were important to the company, Tr. 14191, l.11 - 14192, l.19.[3]

As the Government demonstrated in its initial memorandum in support this motion, if this Court admits the foregoing excerpts pursuant to Fed. R. Evid. 801(d)(2)(A), Forbes is entitled to the admission of only those other portions of his prior testimony, pursuant to Fed. R. Evid. 106, needed to satisfy the "rule of completeness." United States v. Jackson, 180 F.3d 55, 73 (2d Cir. 1999)("The completeness doctrine does not . . . require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages."); United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982)(district court properly declined to admit that portion of the defendant's prior statement to police which contained his claim that another person was responsible for the drugs found in the defendant's car; the omitted portion of the statement "was not needed, in fairness, to make complete the portions of [his] statement that were admitted against him").[4]

---

[3]  The Government has addressed in the previous sub-section of this memorandum Forbes' contention that his prior testimony about his asset transfers should be excluded from the retrial as irrelevant and overly prejudicial.

[4]  This Court's "application of the rule of completeness is
(continued...)

Instead of seeking the admission of only those portions of his prior testimony needed to satisfy the rule of completeness, however, Forbes seeks to admit, for instance, his general denials that he had any involvement in any aspect of the fraud. Such general, open-ended denials are not sufficiently pertinent to the limited category of events addressed in the excerpts of Forbes' prior testimony for which the Government seeks admission in the retrial. Rather, they constitute Forbes' "self-serving statements, which, as offered by him, are inadmissible hearsay." Jackson, 180 F.3d at 73. Forbes also improperly seeks the admission of his prior testimony regarding matters other than those addressed in the Government's proposed excerpts from Forbes' prior testimony. As the Second Circuit explained in Jackson, admission, at the Government's behest, of a defendant's relevant prior statements does not open the door to the wholesale admission of all of the defendant's self-serving denials of illegality.

The Government's position as to each of the excerpts of Forbes' prior testimony for which he seeks admission under Rule 106 is as follows:

1. Tr. 13537, l.1 - 13549, l.15: all of Forbes' testimony on these 13 pages should be excluded as unnecessary to provide relevant context to the Government's proposed excerpts. Forbes' testimony in this protracted excerpt sets forth his very general

---

[4](...continued)
reviewed only for abuse of discretion." Jackson, 180 F.3d at 73.

8

denials of his participation in any of the charged crimes or his involvement in any of the charged accounting manipulations.  None of that testimony addresses any of the specific issues addressed in the Government's motion.

2(a). Tr. 13684, l.8 - 13685, l.1: the Government objects to this portion of this excerpt setting forth Forbes' denial that he considered merger reserves when deciding whether or not to acquire or merge with another company.  The Government's proposed excerpt deals with the much more limited issue of whether Forbes knew that CUC had established merger reserves and that they were important to CUC.  Tr. Tr. 14191, l.11 - 14192, l.19.

2(b).  Tr. 13685, l.2 - 13686, l.10: the Government does not object to this portion of this proposed excerpt of Forbes' testimony about his understanding of what a merger reserve is and his general non-involvement in establishing and charging expenses to a merger reserve.

2(c).  Tr. 13686, l.11 - 13687, l.12: the Government objects to this portion of this excerpt, because it sets forth Forbes' denial that he encouraged Cosmo Corigliano or anyone else to manipulate the merger reserves, and his denial that he was ever told about the manipulations of the merger reserves.  This excerpt goes far beyond the Government's proposed excerpt regarding Forbes' knowledge that CUC created merger reserves which were important to the company.

3.  Tr. 13687, l.13 - 13688, l.23: the Government objects to this proposed excerpt of Forbes' denial that he ever discussed with Corigiliano such matters as cheat sheets, plug numbers, cushions, improper accounting, or "making up numbers."  None of the Government's proposed excerpts address any of these issues.

4.  Tr. 13707, l.7 - l.17: the Government objects to this proposed excerpt of Forbes' testimony about Corigliano's loss of his briefcase or about Forbes' statements to Corigliano regarding Pember's severance package.  These matters are not addressed in the Government's proposed excerpts.

5. Tr. 13731, l.15 - l.23: the Government objects to this proposed excerpt of Forbes' testimony about whether his decision to acquire Ideon was affected by merger reserves; this testimony again goes well beyond the Government's proposed excerpt regarding Forbes' knowledge that the reserves were on CUC's books and were important to the company.

6.  Tr. 13741, l.10 - l.12: the Government objects to this

9

proposed excerpt of Forbes' testimony about his role in determining the amount of the Ideon merger reserve.

7.  Tr. 13744, l.15 - l.21: the Government objects to this proposed excerpt of Forbes' redundant testimony that he did not consider merger reserves in deciding to acquire Ideon.

8. Tr. 13747, l.6 - l.8: the Government objects to this proposed excerpt of Forbes' denial that Corigliano told Forbes that the Ideon merger reserve contained a cushion.

9. Tr. 13,747, l.8 - 13749, l.8: the Government objects to this proposed excerpt of Forbes' denial of involvement in establishing the size of the Ideon merger reserve.

10. Tr. 13765, l.14 - 13766, l.1: the Government objects to this proposed excerpt of Forbes' denial that his decision to seek a merger with HFS had anything to do with merger reserves.

11. Tr. 13774, l.18 - 13777, l.17: the Government does not object to this proposed excerpt of Forbes' testimony about his decision to seek to retain Anne Pember as a CUC employee.

12(a). Tr. 13815, l.8 - 13821, l.23: the Government does not object to this portion of this proposed excerpt of Forbes' testimony about the decision for Cendant to retain Delloitte & Touche as the company's independent auditing firm, and not retain E&Y, and Forbes' testimony that he agreed with that decision.

12(b).  Tr. 13821, l.24 - 13831, l.13: the Government objects to this portion of this proposed excerpt of Forbes' testimony about events that occurred after the decision to retain D&T was made.

13. Tr. 14432, l.2 - 14433, l.15: the Government does not object to this proposed excerpt of Forbes' testimony regarding his asset transfers.

14.  Tr. 14471, l.24 - 14472, l.21: the Government does not object to this additional excerpt of Forbes' testimony regarding his asset transfers.

### III(D).  This Court should admit all of Forbes' relevant testimony from the first trial, including his responses to Michael Monaco's testimony during the first trial.

Forbes asks this Court to exclude any excerpts from his prior trial testimony which include readbacks of excerpts of the

10

testimony of Michael Monaco from the initial trial, because Monaco's prior testimony is hearsay.  To the contrary, the Government seeks the inclusion of the Monaco excerpts in Forbes' prior testimony, not to prove the truth of the matters asserted by Monaco, but as context to demonstrate that Forbes' contradicted Monaco's testimony on certain points.  <u>E.g.</u>, Tr. 14340-42.  Evidence not offered for the truth of the matter asserted is not hearsay.  Fed. R. Evid. 801(c); <u>United States v. Ansaldi</u>, 372 F.3d 118, 130 (2d Cir. 2004).  "Testimony containing hearsay may be admissible not for its truth . . . if the non-hearsay purpose by which the evidence is sought to be justified is relevant" and the evidence is otherwise admissible under Rule 403.  <u>United States v. Slaughter</u>, 386 F.3d 401, 403 (2d Cir. 2004).

Here, the Government will argue that, to the extent that Forbes' and Monaco's testimony directly contradict, the jury should discredit Forbes and conclude that his false testimony at the prior trial is evidence of his consciousness of guilt.  <u>Cf. United States v. Perez</u>, 387 F.3d 201, 209 (2d Cir. 2004) ("falsehoods told by a defendant in hope of evading prosecution . . . may strengthen an inference of guilt supplied by other evidence," because they prove the defendant's consciousness of guilt).  "Where, as here, the statement is offered as circumstantial evidence of a defendant's state of mind, it does

not fall within the definition given by Rule 801(c); because it
was not offered to prove the truth of the matter asserted."
United States v. Salameh, 152 F.3d 88, 112 (2d Cir. 1998)
(internal punctuation omitted), quoting United States v. Detrich,
865 F.2d 17, 21 (2d Cir. 1988).

> **IV. Forbes has failed to demonstrate that the magnitude of
> the GAAP violations is irrelevant to his knowledge of the
> fraud.**

Forbes contends that the magnitude of the GAAP
violations sheds no light on whether Forbes knew about the
manipulative accounting practices at issue in this case, because
Cendant officials from the HFS side of the business and E&Y's
auditors did not suspect the fraud even though they were aware of
CUC's and Cendant's reported earnings.  This baseless argument
should be rejected.

First, a large scale fraud which created a large
discrepancy between CUC's actual and reported earnings would be
harder for admitted conspirators such as Corigliano to conceal
from other CUC accountants than a smaller fraud with a more
limited impact on CUC's reported earnings.  Because of the
heightened difficulty of concealing a large fraud with large
results, Corigliano would be more strongly motivated to insure
that his corporate superiors such as Forbes had approved
Corigliano's malfeasance, as Corigliano testified was the case.

Second, the evidence showed that the large quantitative
effect of the fraud on CUC's reported earnings was the result of
several different accounting manipulations that spanned several

12

operating units of CUC.  As a result, Corigliano had to conspire with other CUC employees to execute the fraud.  The number of conspirators was therefore necessarily greater than it would have been had the fraud been smaller and more contained.  Each of Corigliano's subordinate co-conspirators could potentially betray the conspiracy to Corigliano's superiors, as indeed happened when Sabatino and Speaks disclosed the fraud to former HFS officials in April 1998.  Thus, the larger number of conspirators required to execute a large-scale fraud provided a greater incentive for Corigliano to ensure that his corporate superiors had approved the unlawful conduct.

That E&Y did not discover the fraud is completely consistent with the inferences identified above.  Corigliano certainly had no incentive to disclose the fraud to the E&Y auditors.  Although Silverman and several other former HFS officials became Corigliano's corporate superiors after the Cendant merger, it was a goal of the conspirators to conceal the fraud from those persons as well.  That goal did not change until Silverman decided to transfer oversight of the consolidation function from co-conspirator Pember to non-conspirator Scott Forbes.  Only then did Shelton decide to attempt to recruit Scott Forbes into the conspiracy.  Thus, the fact that the auditors and the former HFS officials were oblivious to the fraud until Sabatino and Speaks revealed it does not undermine the relevance of the size of the fraud to Forbes' knowledge.

In this light, evidence of the large size of the fraud

13

is relevant to Forbes' knowledge because a large fraud made it
more likely that Corigliano told Forbes about the fraud than if
the fraud had been small.  The evidence therefore satisfies the
low threshold of Fed. R. Evid. 401 for mere relevance.
Additionally, the inference supported by the evidence regarding
the size of the fraud is that Corigliano told Forbes about the
fraud directly, and is not, as Forbes would have it, relevant
only to support a theory of conscious avoidance.[5]  For that
reason as well, Forbes' argument that he could not have
consciously avoided knowledge of the fraud unless Silverman,
Monaco and the E&Y auditors did so as well misses the mark.

> **V.  His protestations to the contrary notwithstanding,
> Forbes improperly questioned Corigliano about whether he
> subjectively believed that he was guilty of the crime of
> insider trading.**

      Forbes does not dispute that he is not entitled to

---

[5]  Nevertheless, the magnitude of the fraud is itself a
consideration that would strongly support a conscious avoidance
instruction in this case.  As the Government previously
explained, the sheer magnitude, duration, and numerous
transactions comprising the fraud, all of which occurred while
Forbes was the highest ranking executive at the company where the
fraud was exclusively conducted, provides substantial support for
a conscious avoidance instruction.  See United States v. Svoboda,
347 F.3d 471, 480-81 (2d Cir. 2003)(timing and magnitude of the
defendant's profitable stock trades based on tips received from a
co-conspirator alerted the defendant to the likelihood that the
co-conspirator was unlawfully revealing inside information);
United States v. Fletcher, 928 F.2d 495, 53 (2d Cir. 1991)
(conscious avoidance instruction supported by the fact that the
fraudulent scheme involved numerous transactions); United States
v. Gurary, 860 F.2d 521, 527 (2d Cir. 1988) (conscious avoidance
instruction was properly given in a tax fraud prosecution where
the defendants sold fictitious invoices totaling over $136
million during a period of eight years to over 200 purchasers).

14

cross-examine the non-lawyer Corigliano about whether he was guilty of the crime of insider trading, a purely legal issue. Rather, he contends that his cross-examination of Corigliano during the first trial regarding his sale of CUC and Cendant stock was properly limited to "factual matters," i.e. whether Corigliano realized when he sold CUC and Cendant stock that its price had been fraudulently inflated.  The following exchanges demonstrate that Forbes' assertion is incorrect:

> Q: So what were your gross proceeds of stock sales during that period when you were talking to these analysts about the stock of the company?
>
> A: Between February and March, as I recall, my gross proceeds before the cost of options and before paying the taxes was about $21 million.
>
> Q: Is it your testimony that the two were not tied together? By that I mean you're telling lies to analysts on the one hand and selling your stock on the other hand, is it your testimony they were not tied together?
>
> A: As I said before, it was not tied together.
>
> Q: It was purely coincidental that you were lying to keep the stock price where it was and selling to put as much money in your pocket as you could, right?
>
> A: I think I said before, I didn't -- I wasn't part of the fraud -- I didn't do the fraud to get rich, although I recognize that in the process I did get rich.
>
> Q: That's still your story, right?
>
> A: That's the truth.
>
> **_Q: This was insider trading, wasn't it?_**
>
> **_A: No, it was not._**

Tr. 8937-38 (emphasis added).

> Q: Well, my question is:  "Federal laws and regulations prohibit purchases and sales of the company's stock and

15

other related securities by directors, officers and
employees on the basis of material information which is not
generally available to the public."  You did that, right?
You sold stock while an officer of the company, right, CFO,
on the basis of material information which is not generally
available to the public?  That's what you
did, right?

A: I --

Q: Can you answer me yes or no, first?

A: Yes, I did.

Q: Just tell me yes or no.

A: Yes, I did.

Q: *All right.  And that's a crime, it's called insider
trading, right?*

A: I'm not sure -- as I said before, I was aware of the
fraud, participated in it, didn't do it to get rich but I
recognize I got rich in the process, and have paid all the
money back.

Q: Oh, so you pay the money back it's okay, right?

A: It's not okay.

Q: You rob the bank, you give the money back, it's okay;
everything washed away, right?

A: Clearly not, as what I've said here.

Q: *I forget, you're still denying you were guilty of the
crime of insider trading; is that correct?  Where are we
on that issue?  Are you still doing that?*

A: *I told you that I -- I didn't do -- my actions -- I
didn't do it to get rich although I got rich in the process.*

Tr. 8944-46 (emphasis added).

The Government does not dispute that Forbes may cross-
examination Corigliano about the reasons why he sold his CUC and
Cendant stock, and whether he understood that the fraud had
improperly inflated the price of CUC and Cendant stock when he

16

sold his stock.  Forbes' cross-examination of Corigliano at the
initial trial was not limited to those factual matters, however.
Because Corigliano, a non-lawyer, was not competent to determine
whether or not he was guilty of insider trading, it was also
improper for defense counsel to argue during summation that
Corigliano had lied when he denied that he was guilty of insider
trading.[6]

During the retrial, defense counsel should be
prohibited from again questioning Corigliano about his
layperson's understanding of the law, and from again arguing the
Corigliano lied when he denied that he was guilty of insider
trading.[7]

### VI. Forbes has failed to demonstrate that the challenged portions of his attorney's opening statement and summation were proper.

Forbes misconceives the Government's objection to his

---

[6]  Forbes' counsel argued that Corigliano lied, not simply
because he denied selling stock when he had inside information
about the fraud, but specifically when he denied that he was
guilty of insider trading:

As we'll see in more detail, in June of 2000, the time he
entered his plea, the SEC files a lawsuit to recoup money
that he earned by virtue of his stock sales, *which he said
is not insider trading, one of the classic lies of all time,
which I'll describe in more detail later.*

Tr. 15138-39 (emphasis added).

[7]  Because Corigliano's opinion about the crime of insider
trading is incompetent regardless of when it was held, defense
counsel should be precluded from arguing that, to the extent that
he denied that he was guilty of insider trading when he spoke to
Government investigators in January 1999, he was lying then as
well.  FM 20.

counsel's opening statement.  Portions of the defense opening
were objectionable, not because counsel failed to recite a mantra
that he was describing what he anticipated the evidence would
show.  Rather, it was objectionable because defense counsel spoke
about Forbes' supposed subjective state of mind without
explaining that Forbes would testify in the case.  The only
person who had personal knowledge of Walter Forbes' subjective
thoughts, and who could therefore permissibly testify about those
thoughts pursuant to Fed. R. Evid. 602, was Forbes himself.
Forbes has now conceded that, when the opening statements were
delivered, it was his intention not to testify in this case.
Forbes Memorandum in Opposition 7.  Thus, there was no
anticipated evidentiary basis for defense counsel's remarks about
Forbes' subjective thoughts.

        If counsel wishes to inform the jury during his opening
about what Forbes "thought," "knew," "believed," or was "shocked
by," counsel should state during his opening that Forbes will
testify during the retrial.  If Forbes declines to testify during
the retrial, counsel has no basis to make claims during his
opening about Forbes' subjective thoughts, other than what is
revealed through Forbes' prior testimony from the first trial
that is admitted into evidence at the retrial pursuant to Fed. R.
Evid. 801(d)(2)(A).

        This Court should also reject Forbes' argument that he
should be permitted during his summation to accuse the
prosecutors of misconduct because this is "an adversarial

18

dispute." Counsel is certainly entitled to argue that the jury should not be swayed by his wealth or the magnitude of the loss, but should not be allowed to take the unwarranted step of claiming that the prosecutors affirmatively sought to have the jury decide the case based on improper grounds.  This is particularly so where the Government stated at the end of its initial summation during the first trial that the jury should return a verdict of not guilty if the evidence had shown no more than that the defendants were in charge of a company in which other employees committed the fraud without the involvement or participation of the defendants.  Tr. 15118.

      Forbes maintains that defense counsel argued fairly that the Government would never revoke Corigliano's plea agreement even if he lied at trial, because the Government has yet to revoke the agreement even though Corigliano has supposedly already perjured himself.  As this Court has previously found in rejecting Forbes' mistrial motions based on Corigliano's testimony, Forbes has been quick to accuse Corigliano of perjury, but yet to prove it.  Defense counsel in criminal cases routinely accuse a witness who is testifying pursuant to a cooperation agreement that he is framing the defendant in order to secure a lenient sentence, but that does not obviate the general prohibition against baseless accusations of prosecutorial misconduct.  This Court should exercise its discretion to

19

preclude such *ad hominem* remarks during the retrial.[8]

### CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court grant the Government's motion *in limine* with respect to the third, fourth, fifth and sixth issues presented in that motion.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
Special Attorney
U.S. Department of Justice

/s/ Norman Gross

By: NORMAN GROSS
    Special Attorney
    U.S. Department of Justice
    Federal Bar No. 24933
    MICHAEL MARTINEZ
    Special Attorney
    U.S. Department of Justice
    Federal Bar No. PHV0423
    CRAIG CARPENITO
    Special Attorney
    U.S. Department of Justice
    Federal Bar No. PHV0424

Dated: September 15, 2005
       Newark, New Jersey

---

[8]  Forbes points to <u>United States v. Salameh</u>, 152 F.3d 88 (2d Cir. 1998), in which the Second Circuit did not condemn a statement by a prosecutor that defense counsel was seeking to sell the jury "a bill of goods." FM 22.   In <u>Salameh</u>, the prosecutor's argument was directed to the validity of the defense argument, rather than an opinion on the subjective and supposedly unethical goals of opposing counsel.  In any event, that a district court does not abuse its discretion by permitting *ad hominem* attacks on counsel is hardly an endorsement of the practice.  Summations should be directed to the evidence and the law, and not baseless speculation on what opposing counsel think or desire.

<u>CERTIFICATE OF SERVICE</u>

        The undersigned certifies that on this day I caused to
be served copies of the foregoing upon the following via email
and United States Mail:

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901
(202) 434-5005


                                    /s/ Lynda Powers
                                   LYNDA POWERS
                                   U.S. Department of Justice


Dated: September 15, 2005
       Camden, New Jersey