UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | No. 3:02CR00264 (AWT) |
| | : | |
| | : | |
| v. | : | |
| | : | September 20, 2005 |
| | : | |
| | : | |
| WALTER A. FORBES | : | |

MEMORANDUM OF THE UNITED STATES IN OPPOSITION TO
FORBES' RETRIAL MOTION IN LIMINE TO EXCLUDE
BUSINESS RECORDS FROM ADMISSION INTO EVIDENCE

(<u>Opposition to Forbes' In Limine Retrial Motion No. 6</u>)

CHRISTOPHER J. CHRISTIE
NORMAN GROSS
MICHAEL MARTINEZ
CRAIG CARPENITO
KEVIN G. WALSH
Special Attorneys
U.S. Department of Justice
970 Broad Street, Suite 700
Newark, New Jersey  07102
Tel:  (973) 645-2700
Fax:  (973) 645-2857

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | No. 3:02CR00264 (AWT) |
| : | |
| v.   : | |
| : | September 15, 2005 |
| : | |
| WALTER A. FORBES   : | |

**MEMORANDUM OF THE UNITED STATES IN OPPOSITION TO
FORBES' RETRIAL MOTION *IN LIMINE* TO EXCLUDE
BUSINESS RECORDS FROM ADMISSION INTO EVIDENCE**

(<u>Opposition to Forbes' *In Limine* Retrial Motion No. 6</u>)

INTRODUCTION

The Government respectfully submits this memorandum of law in opposition to Forbes' Retrial Motion *In Limine* No. 6, seeking to exclude from evidence reports prepared by Wall Street analysts regarding CUC. For the reasons set forth below, the Government respectfully requests that the Court deny Forbes' Retrial Motion *In Limine* No. 6.

**I.   FORBES HAS FAILED TO DEMONSTRATE THAT THIS COURT SHOULD RECONSIDER ITS PRIOR RULINGS ADMITTING THIS EVIDENCE**

Forbes acknowledges that this Court has previously rejected his challenges to the admission to the Wall Street analyst reports, and admitted those reports into evidence during the initial trial in this case. <u>See</u> Forbes' Brief at 1 n.1; at 3 n.2. Forbes advances no good reason why this Court should

1

reconsider its prior rulings in these regards.  See <u>Sequa Corp. v. GBJ Corp</u>., 156 F.3d 136, 144 (2d Cir. 1998) (reconsideration motion denied unless "moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."); <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995) (party seeking reconsideration must meet a "strict burden").  For this reason alone, the Court should deny Forbes' motion.

**II. FEDERAL RULE OF EVIDENCE 803(6) AUTHORIZES THE ADMISSION OF A BROAD ARRAY OF DOCUMENTS AS BUSINESS RECORDS.**

Federal Rule of Evidence 803(6) is broadly written and broadly interpreted.  The plain language of the rule states, <u>expansively</u>, that business records fitting the following description are not excluded as hearsay:

> A memorandum, report, record, or data compilation, <u>in any form</u>, of acts, events, <u>conditions</u>, <u>opinions</u>, <u>or diagnoses</u>, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation . . . .

Fed. R. Evid. 803(6) (emphases added).  Rule 803(6) favors the admission of business records as evidence if they have any probative value at all.  See <u>United States v. Williams</u>, 205 F.3d 23, 24 (2d Cir. 2000); <u>Phoenix Assocs. III v. Stone</u>, 60 F.3d 95, 1001 (2d Cir. 1995); <u>In re Ollag Constr. Equip. Corp.</u>, 665 F.2d

43, 46 (2d Cir. 1981).

Contrary to Forbes' arguments, the analyst reports at issue here are properly admitted as business records. A business record should meet three criteria prior to its admission into evidence: (1) the document was kept in the course of a regularly conducted business activity; (2) it was the regular practice of that business activity to make the record; and (3) either a custodian of the document testifies to (1) and (2) above, or the document is properly certified under Fed. R. Evid. 902(11). See United States v. Freidin, 849 F.2d 716, 719-20 (2d Cir. 1988); see also Wechsler v. Hunt Health Systems, Ltd., 2003 WL 22358807 *11 (S.D.N.Y., Oct. 16, 2003). Because Rule 806(3) is so sweepingly broad due to the regularity with which businesses retain their records, even inconsistent, inaccurate, or incomplete records are admissible, so long as they meet the criteria set forth in the rule. See United States v. Schwartz, 464 F.2d 499, 511 (2d Cir. 1972); United States v. Re, 336 F.2d 306, 313 (2d Cir. 1964). Matters affecting the credibility of business records go to their weight, not their admissibility. See United States v. Panza, 750 F.2d 1141, 1151 (2d Cir. 1984) (incompleteness of business records went to weight, not admissibility); United States v. Ellenbogen, 365 F.2d 982, 988 (2d Cir. 1966) (noting that business records are not inadmissible simply because they show evidence of a fraud); see also United

3

States v. Foster, 711 F.2d 871, 882 (9th Cir. 1983) (coconspirators' ledger containing drug transaction records was admissible as a business record, even though it was incomplete and contained unrelated entries); Crompton-Richmond Co., Inc., Factors v. Briggs, 560 F.2d 1195, 1202 n.12 (5th Cir. 1977) (attacking business record as inaccurate "is an assault on its weight, not its admissibility").

Furthermore, hearsay within a business record also goes to its weight, not its admissibility. See Pekelis v. Transcontinental & Western Air, Inc., 187 F.2d 122, 130 (2d Cir. 1951) (analyzing statutory precursor to Fed. R. Evid. 803(6)). Finally, an employee's description in an employer's report about an event that the employee witnesses does not affect the determination of admissibility with respect to a business record. See Lewis v. Baker, 526 F.2d 470, 473 (2d Cir. 1975) ("The fact that a report embodies an employee's version of the accident or happens to work in favor of the entrant's employer does not, without more, indicate untrustworthiness." (citation omitted)); Taylor v. B & O RR., 344 F.2d 281, 286 (2d Cir. 1965).

In addition, business records are admissible even if the records custodian does not have actual knowledge of the circumstances surrounding their creation. See Phoenix Assocs., 60 F.3d at 101-02; United States v. Re, 336 F.2d 306, 313 (2d Cir. 1964). For instance, the partner of a company can

4

permissibly verify the company's record-keeping procedures, in lieu of the actual custodian's testimony on that subject. See United States v. Dawson, 400 F.2d 194, 198-99 (2d Cir. 1968); see also United States v. Lauersen, 348 F.3d 329, 342 (2d Cir. 2003) ("custodian or other witness" is given a broad interpretation under Rule 803(6)), vacated on other grounds, 125 S.Ct. 1109 (2005); cf. United States v. McGrath, 613 F.2d 361, 368 (2d Cir. 1979) (analyzing Rule 602 and concluding, "It is not unreasonable to expect that one who keeps the records of a multi-million dollar business does so with care and precision.").

In Ollag Construction, supra, the Second Circuit held that bank account holders' financial statements were admissible as business records, even though these documents contain factual assertions of unknown reliability that are made by the account holders. The court noted that business records are admissible where they are relied upon by the business in its day-to-day operations. 665 F.2d at 46 (citing cases). The Second Circuit has also approved the admission of a corporate memorandum confirming instructions regarding inter-account bank transfers. See United States v. Gleason, 616 F.2d 2, 23 (2d Cir. 1979). The court's rationale was simple: the memorandum was "a record made in the regular course of business." Id.

Such regularity is the hallmark of business records, as noted in Phoenix Associates, supra, where the Second Circuit

analyzed the admissibility of work papers used to prepare financial statements.  There, the chief financial officer "testified that he prepared the work paper each year in the regular course of preparing appellants' financial statements, and it was the regular practice of appellants' business to make such documents . . . ."  60 F.3d at 103.  Accordingly, "the work paper was admissible as a business record."  <u>Id.</u>

**III. THE DOCUMENTS AT ISSUE ARE ADMISSIBLE AS BUSINESS RECORDS PURSUANT TO FED. R. EVID. 803(6) OR ON SOME OTHER BASIS.**

    **A.    Analyst Reports Are Business Records**

The analyst reports to which Forbes has objected meet all the criteria required by Fed. R. Evid. 803(6).  The rule is concerned with regularity and the duty of the person making the record to report regularly and accurately.  Analyst reports meet these criteria.  Much of the information set forth in the analysts reports is historical information drawn from SEC filings by the company under review, describing highly objective financial information regarding the company that is the subject of the analysis, such as historic figures for revenues, expenses, earnings, and profits for a particular time period.  Such compilations are properly admissible as business records.  <u>See</u> <u>United States v. Metallo</u>, 908 F.2d 795, 789-99 (11th Cir. 1990) (affirming admission pursuant to Rule 803(6) of a corporate credit history report prepared by Dun & Bradstreet ("D&B"), a credit-reporting service, which showed that the corporation's

representative had informed D&B that the corporation showed an upward trend in sales and profits, and annual sales figures of more than a half-million dollars); <u>United States v. Beecroft</u>, 608 F.2d 753, 760-61 (9th Cir. 1979) (approving admission of D&B report because that company "regularly prepares such reports, and prepared this one promptly after it received the [company's] financial statement.").

As Professor Sack will testify, the company that has assembled and filed corporate information with the SEC has a legal obligation to ensure that the information is accurate.  The Court can also take notice that the federal securities laws subject a reporting company to harsh sanctions and extensive civil liability if the information proves to be materially inaccurate.

Contrary to Forbes' contention that the analyst reports are inherently unreliable "marketing tools," an investment firm issuing an analyst's report has a powerful financial incentive to insure the accuracy of such historic information.  The value of the analysis to the firm's customers, and their willingness to pay for that analysis, is critically dependent on the accuracy of the data from which the analysis proceeds.  Thus, the same indicia of reliability that support the admission of other kinds of business records -- such as, the powerful self-interest of the person preparing the record to insure its accuracy -- are at work

with respect to such analysts reports.

To the extent that the analyst reports contain statements other than a recitation of historic financial information, such as the analysts' recommendation to buy, sell, or hold a particular stock, those statements do not purport to describe events, nor will they be offered by the Government for the truth of the matter asserted.  Rather, those recommendations will be offered to prove that they were made, and to explain the effect of the conspirators' false statements and omissions on the price of CUC's stock.  See Fuller v. Dilbert, 244 F.Supp. 196, 213, n.21 (S.D.N.Y. 1965) (in action for fraud and breach of contract relating to the sale of corporate stock, the testimony about an offer to sell stock, the offeree's subsequent offer to sell to others, and the eventual sale of the stock to the public was not inadmissible as hearsay, because the statements were not offered to prove the truth of matter asserted but only that the statements were made), aff'd, 358 F.2d 305 (2d Cir. 1966); see generally United States v. Sorrentino,  72 F.3d 294, 298 (2d Cir. 1995) (statements not offered for the truth of the matter asserted are not hearsay); accord United States v. Pratt, 239 F.3d 640, 644 (4th Cir. 2001); United States v. Murphy, 193 F.3d 1, 6 (1st Cir. 1999).  This component of the analysts' reports is crucial evidence regarding the mechanism by which the charged fraud was perpetrated on the investing public.  Other evidence

will prove that the conspirators sought to influence such analysts' reports by causing the analysts to predict that CUC's stock price would increase or maintain its value, thereby causing members of the investing public to continue to hold or acquire additional shares.

An analyst firm -- in this case, Bear Stearns -- follows certain NYSE-listed stocks and issues reports to the public about these stocks on a scheduled, regular basis.  In this case, the firm did not make an ad-hoc, editorial decision to issue a report about CUC or Cendant; it was their business. Analyst reports are not issued in response to isolated or unusual events.  Bear Stearns analyst reports are disseminated to the public on a regular basis, the reports are kept at Bear Stearns as a regular practice, and the Bear Stearns records custodian has certified that the analyst reports proposed to be offered as evidence by the Government are business records of the company. For these reasons, analyst reports qualify as business records under Fed. R. Evid. 803(6) and should be admissible as evidence because the Government has complied with Fed. R. Evid. 902(11).

The analyst reports satisfy the criteria of Fed. R. Evid. 803(6) as well as the reliability considerations described in case law from the Second Circuit and other federal courts that have examined these issues.  See United States v. Bueno-Sierra, 99 F.3d 375, 378 (11th Cir. 1996) (admitting document pursuant to

9

803(6), noting that "[t]he touchstone of admissibility under the business records exception to the hearsay rule is reliability."), cert. denied, 520 U.S. 1161 (1997).  Moreover, it is expected that at least one analyst will himself testify at trial in this case, thereby addressing at least one of Forbes' myriad and meritless objections to the procedures employed by the Court during the first trial in this case.

>    **B.    Stock Trading Data Compilations are Routinely Admitted as Business Records.**

Forbes' request to exclude "consensus data" published by entities such as First Call should also be rejected.  As a threshold matter, it is the normal course for courts to take judicial notice of stock prices and related financial information.  See, e.g., In re NAHC, Inc. Securities Litigation, 306 F.3d 1314, 1331 (3d Cir. 2002) (trial court took judicial notice of stock price as compiled by Dow Jones News Service); Ieradi v. Mylan Labs., Inc., 230 F.3d 594, 600 (3d Cir. 2000) (court took judicial notice of stock prices as reported by Quotron Chart Services); S.E.C. v. Bilzerian, 814 F.Supp. 116, 123 n.19 (D.D.C. 1993) (trial court took judicial notice of stock price as reported in Standard and Poor's Daily Stock Price Record of NYSE), aff'd 29 F.3d 689 (D.C.Cir. 1994); cf. Elliot Assocs., L.P. v. Banco de la Nacion, 194 F.R.D. 116, 121 (S.D.N.Y. 2000) (interest rate information gathered from Bloomberg or web site of the Federal Reserve Board admissible under Fed. R. Evid.

803(17)).

Aside from judicial notice or other hearsay exceptions, however, business records from companies whose major business function is to report accurately about the previous day's financial trading information are classic business records admissible under Rule 803(6). Bloomberg, First Call, and Yahoo! keep accurate records of the prior business day's financial trading information. These companies record financial information as it is occurring and make a practice of retaining that data for information purposes. Such financial data provided by these companies are business records and admissible pursuant to Fed. R. Evid. 803(6).

**IV. ADMITTING BUSINESS RECORDS INTO EVIDENCE DOES NOT OFFEND THE CONFRONTATION CLAUSE BECAUSE THEY ARE NOT TESTIMONIAL DOCUMENTS.**

Forbes relies upon <u>Crawford v. Washington</u>, 541 U.S. 36 (2004) for the proposition that the admission into evidence of business records somehow offends his Confrontation Clause rights. The case does not say that. In fact, the Supreme Court expressly stated in <u>Crawford</u> that business records are not testimonial and, therefore, are not inadmissible based upon the Confrontation Clause. 541 U.S. at 56. The various Courts of Appeals that have addressed the issue since <u>Crawford</u> have likewise concluded that the admission of business records does not offend the confrontation clause. <u>See</u> <u>United States v. Cervantes-Flores</u>, ---

11

F.3d ---, 2005 WL 2027646 at *5 (9th Cir. Aug. 24, 2005); United States v. Lopez-Moreno, --- F.3d ---, 2005 WL 1864257 at *12 (5th Cir. Aug. 8, 2005); United States v. Rueda-Rivera, 396 F.3d 678, 680 (5th Cir. 2005). Accordingly, Forbes' Crawford claim should be rejected.

## CONCLUSION

For all of the foregoing reasons, the Government respectfully requests that the Court deny Forbes' Retrial Motion *In Limine* No. 6.

> Respectfully submitted,
>
> CHRISTOPHER J. CHRISTIE
> Special Attorney
> U.S. Department of Justice
>
> /s/ Michael Martinez
>
> NORMAN GROSS
> MICHAEL MARTINEZ
> CRAIG CARPENITO
> KEVIN G. WALSH
> Special Attorneys
> U.S. Department of Justice

Dated:    September 20, 2005
          Newark, New Jersey

12

**CERTIFICATE OF SERVICE**

      The undersigned certifies that on this day I caused to be served copies of the foregoing upon the following via e-mail and United States mail:

    Barry S. Simon, Esq.
    Williams & Connolly, LLP
    Residence Inn
    942 Main Street
    Hartford, CT 06103
    (860) 293-1546


                                    /s/ Debra Elliott
                                    DEBRA ELLIOTT
                                    Paralegal Specialist
                                    U.S. Department of Justice


Dated:    September 20, 2005
            Hartford, Connecticut