UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

        Plaintiff,        CIVIL ACTION
v.        NO. 3:02 CR 264 (AWT)

WALTER A. FORBES

        Defendants.        September 23, 2005

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**JOINT MEMORANDUM OF LAW IN SUPPORT OF CENDANT CORPORATION'S AND JOHN H. CARLEY'S MOTIONS TO QUASH THE <u>SUBPOENAS SERVED BY DEFENDANT WALTER A. FORBES</u>**

Non-Parties Cendant Corporation ("Cendant") and John H. Carley, Esq., respectfully submit this joint memorandum of law in support of their motions to quash three of the latest subpoenas served by Defendant Walter A. Forbes: the August 17, 2005 and September 13, 2005 document subpoenas served on Cendant (the "August 17th Cendant Subpoena" and the "September 13th Cendant Subpoena," respectively) and the September 13, 2005 subpoena served on Cendant attorney John H. Carley seeking trial testimony (the "Carley Subpoena").

## **<u>Background</u>**

This onslaught of subpoenas –duplicative and repetitive of previous subpoenas quashed by the Court – is the latest chapter in Mr. Forbes' scorched-earth defense in this case.

To date, Mr. Forbes has served literally hundreds of subpoenas seeking documents and testimony on a host of topics unrelated to the crimes alleged in the indictment. Notwithstanding the repeated admonitions of this Court over the past two years regarding the narrow scope of permissible discovery in criminal cases, Mr. Forbes continues to thumb his nose at the requirements of <u>United States v. Nixon</u> and continues to serve subpoenas that ignore the Court's prior rulings in this case. Even more outrageous is the fact that Mr. Forbes waited until the eve of the retrial to spring these subpoenas on Cendant and a host of other non-parties even though he has known since February 2005 that he would be retried. Mr. Forbes' continued harassment of Cendant and its senior executives inflicts unnecessary and costly expense on the Cendant shareholders, who are the ultimate victims of the crimes for which Mr. Forbes is on trial.

In short, the three subpoenas at issue in this motion are redundant of the myriad subpoenas served during the first trial, and the materials sought in the subpoenas have already been the subject of extensive briefing, motion practice, oral argument, and rulings by the Court. Despite the dogged persistence of Mr. Forbes' counsel, the Court has <u>never</u> ordered Cendant to provide any of the discovery sought in these subpoenas. There is no reason for the Court to revisit any of its prior rulings on these matters and to change course on the eve of the retrial: all three subpoenas should be quashed in their entirety.

**Argument**

**I.    THE SEPTEMBER 13TH AND AUGUST 17TH CENDANT SUBPOENAS SHOULD BE QUASHED IN THEIR ENTIRETY.**

When faced with a motion to quash a pretrial Rule 17(c) subpoena,[1] courts in the Second Circuit have consistently applied the four-part test articulated in United States v. Nixon, 418 U.S. 683 (1974), and placed the burden on the defendant seeking materials to establish:  "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'"  Nixon, 418 U.S. at 699-700.  See In re Irving, 600 F.2d 1027 (2d Cir. 1979) (applying Nixon analysis); United States v. Weissman, No. 01 CR 529, 2002 WL 31875410 (S.D.N.Y. Dec. 26, 2002) (same).  Applying this test, this Court emphasized that in order to be "evidentiary" under Nixon, the requested document must be "relevant *and* admissible."  See Tr. 2656 (emphasis added) (attached as Exhibit 1 hereto).  In addition, a defendant cannot use a Rule 17(c) subpoena as a license to sift through huge amounts of materials with the "mere hope" that it might uncover some favorable evidence.  See United States v. Rich, S83 CR 579, 1984 WL

---

[1]    Because the two Cendant document subpoenas are returnable during scheduled jury selection and before any witness has been called to testify, they are considered pretrial Rule 17(c) subpoenas, subject to the Nixon standards.  See United States v. Jasper, No. 00 Cr. 825, 2003 WL 1107526, at *1, n.1 (S.D.N.Y. Mar. 13, 2003) (holding that subpoena served on the first day of jury selection was a pretrial, Rule 17(c) subpoena, governed by the Nixon requirements).  In any event, any distinction between trial and pre-trial subpoenas is irrelevant to this motion because, as explained below, this Court has quashed similar document requests contained in trial subpoenas that the defendants served on testifying witnesses and their counsel during the first trial.

845, at *3 (S.D.N.Y. Sept. 7, 1984). Measured against this familiar standard, both the September 13th and August 17th Cendant Subpoenas should be quashed in their entirety.

      **A.**    **The September 13th Cendant Subpoena Merely Reiterates Requests from Earlier Subpoenas That The Court Quashed.**

The September 13th Cendant Subpoena consists of requests previously quashed by the Court.[2] (A copy of the September 13th Cendant Subpoena is attached hereto as Exhibit 2.) As Mr. Forbes' counsel explained in the cover letter accompanying the subpoena, "the Court previously quashed the subpoenas which included these (or similar) requests." See Exhibit 3. The cover letter goes on to explain that Mr. Forbes served the September 13th Cendant Subpoena "to ensure that each of these subpoena demands is preserved with respect to the current trial." Id. As this cover letter makes clear, the service of the September 13th Cendant Subpoena was intended to preserve Mr. Forbes' appellate rights in connection with the retrial. There is no need for this Court to reconsider its earlier rulings on these requests, and the subpoena should be quashed in its entirety.[3]

---

[2]   Cendant and Attorney Carley respectfully incorporate by reference all arguments made in support of their motions to quash the subpoenas served upon them by the defendants during the first trial.

[3]   Request Nos. 27-30 of the September 13th Cendant Subpoena are not in dispute and merely repeat previous requests for originals of various company records. Cendant previously informed Mr. Forbes that it does not have originals of these records in its possession, custody, or control. Cendant has not located originals of any of these records in the past year. In addition, Request No. 32 is not in dispute because Cendant has no documents in its possession, custody, or control other than those it has already produced. Finally, the sweeping request for all documents relating to legal fees incurred by five witnesses included in the September 13th Cendant Subpoena (Request No. 31) is subsumed within the requests in the August 17th Cendant Subpoena seeking discovery related to legal fees. As explained in detail below, this information is not relevant or admissible under well-established case law and this Court's prior rulings.

1.  **The Overbroad Requests for E-mails Sent to or from Various Current and Former CUC and Cendant Executives Should Be Quashed Again.**

Request Nos. 1 through 4 of the September 13th Cendant Subpoena seek e-mails that were sent to or from various current and former Cendant executives, including Henry Silverman, Michael Monaco, James Buckman and Scott Forbes. These requests are verbatim copies of requests that were included in the fourth Rule 17(c) subpoena that Mr. Forbes served on Cendant during the first trial and are also subsumed within a sweeping request for all e-mails of various Cendant executives in the first Rule 17(c) subpoena served on Cendant in November 2001. See June 13, 2004 Subpoena Request Nos. 1-4 (attached hereto as Exhibit 4) and November 28, 2001 Subpoena Request No. 77 (attached hereto as Exhibit 5). Cendant moved to quash, and the Court did not order these materials to be produced. There is no reason to revisit this issue now, and these requests should be quashed.[4]

2.  **The Requests for Documents Relating to Meetings and Other Interactions Between Cendant and the Government Should Be Quashed Again.**

The September 13th Cendant Subpoena contains 22 separate requests seeking materials related to Cendant's communications and interactions with the government over the past seven years. See Request Nos. 5-12 (seeking documents relating to various meetings between Cendant officials and representatives of the government); Request Nos. 13-24 (documents related to a memorandum from Senator Robert Torricelli to the United States Attorney for the District of New Jersey and any meetings between Mr. Silverman and Ms.

---

[4] As Cendant explained to Mr. Forbes' counsel in response to the June 13, 2004 subpoena, the company has no documents responsive to Request No. 2. See Exhibit 6. Moreover, Cendant has reviewed all e-mails sent to or received by the individuals listed in these four requests and produced all relevant e-mails. Other than Request No. 2, these requests contain no subject matter limitation, and read literally, would call for "spam" e-mails and other irrelevant e-mails.

Hochberg); Request Nos. 25-26 (seeking documents relating to offers to assist the government with respect to its investigation or pursuit of remedies against various individuals and Ernst & Young). These 22 requests appeared verbatim in the third Rule 17(c) subpoena served on Cendant during the first trial. See April 5, 2004 Subpoena Request Nos. 1 - 8, 17 - 30 (attached hereto as Exhibit 7).

The relevance and discoverability of Cendant's and its lawyers' communications with the government has been extensively briefed and argued in connection with the first trial. Indeed, Mr. Forbes has argued unsuccessfully on multiple occasions that he needs these materials to show that Cendant and its senior management is biased against him. See e.g., May 2, 2003 Walter A. Forbes Corrected Opposition to Cendant Motions to Quash Rule 17(c) Subpoenas at 22 (arguing that materials related to Cendant's communications with the government were "highly relevant . . . to demonstrate that this case is a witch-hunt orchestrated by Cendant's present management"). The Court expressly rejected this argument during the first trial shortly before the testimony of Cendant executive Scott Forbes and denied requests for materials relating to the alleged "bias and motives of the senior Cendant management." See Tr. at 4685-86 (attached hereto as Exhibit 8). There is no reason to revisit that issue in connection with the retrial, and these identical requests contained in the September 13th Cendant Subpoena should be quashed again.

    **B.**    **The August 17th Cendant Subpoena Seeks Materials Related to Legal Fees That Are Covered By Prior Court Rulings and Irrelevant Materials Related to a 2005 Severance Agreement.**

The August 17th Cendant Subpoena is merely a slight variation of requests that Mr. Forbes acknowledges were quashed during the first trial. Specifically, the requests in the August 17 Cendant Subpoena that are in dispute fall into two categories: (1) documents relating to Cendant's advancement of legal fees to various witnesses and potential witnesses

and (2) documents relating to former Cendant executive Scott Forbes' 2005 severance agreement.[5] None of these requests meets the standards of <u>Nixon</u> and its progeny and recognized by this Court, and all of the requests related to legal fees are duplicative of requests that the Court has already quashed.

### 1. Documents Relating to the Advancement of Legal Fees Are Irrelevant.

Mr. Forbes breaks his request for documents related to legal fees advanced to witnesses and potential witnesses into more than fifty separate requests. <u>See</u> Request Nos. 1-50 & 53 (a copy of the August 17th Cendant Subpoena is attached hereto as Exhibit 9). One group of requests seeks "documents sufficient to identify any legal fees paid . . . since April 15, 1998" on behalf of various former Cendant employees and directors. <u>See</u> Request Nos. 1, 5, 9, 13, and 17. A second type of requests asks for "documents sufficient to identify any legal fees paid . . . for services rendered in connection with the 2004 trial" on behalf of various former Cendant employees and directors. <u>See</u> Request Nos. 2, 6, 10, 14, 18, 21, 24, 27, 30, 33, 36, 39, 42, 45, and 48. A third category of requests seeks documents about any refusal of Cendant to pay legal fees "for services rendered in connection with the 2004 trial" for various former Cendant employees and directors. <u>See</u> Request Nos. 4, 8, 12, 16, 20, 23, 26, 29, 32, 35, 38, 41, 343, 46 and 49. In case these sweeping requests did not catch everything related to legal fees, there is a catchall request seeking "all documents submitted by any of the witnesses

---

[5] The following requests in the August 17th Cendant Subpoena are not in dispute because Cendant has no additional responsive documents other than what it has already produced: documents relating to undertakings or obligations agreed to by various witnesses and potential witnesses in connection with Cendant's advancement of legal fees (Request Nos. 3, 7, 11, 15, 19, 22, 25, 28, 31, 34, 37, 40, 44, 47, and 50), and documents related to any efforts expended by Deloitte & Touche to be appointed the auditor of Cendant (Request Nos. 54 and 55).

identified above, or their counsel, in support of any request that Cendant pay the witness's legal fees." See Request No. 53.

The information sought in these requests has nothing to do with the crimes for which Mr. Forbes is standing trial. Indeed, all of these requests related to legal fees seek discovery of materials created after the discovery and public disclosure of the accounting fraud charged in the indictment. Mr. Forbes presumably seeks these materials as part of his tired argument that Cendant and its senior executives are biased against him and that the advancement of legal fees to witnesses somehow supports that theory.

This Court has expressly rejected Mr. Forbes' argument about his need for discovery to collect impeachment materials regarding the alleged bias of Cendant and its senior management and denied previous requests seeking this information. See Tr. at 4685-86 (attached as Exhibit 8). There is no reason for the Court to reverse course at this point and order the production of any of these materials related to Mr. Forbes' contention that the alleged bias of Cendant and its senior management is relevant.

Even if the Court were to revisit its prior rulings, the detailed documents that Mr. Forbes seeks related to legal fees are not relevant and admissible at the retrial. At best, these materials would serve as impeachment on an issue that is collateral to the crimes charged in the indictment. Accordingly, they are not discoverable under well established case law. See United States v. Beauchamp, 986 F.2d 1, 3-4 (1st Cir. 1993).[6]

---

[6] The fact that Cendant provided Mr. Forbes with the total dollar amount of the legal fees that it had advanced to Cosmo Corigliano and Anne Pember during the first trial does not mean that these materials are relevant. That information about legal fees was as irrelevant then as it is now. Indeed, Mr. Forbes never used the information about the total amount of legal fees advanced to these witnesses (presumably because he did not want the jury to hear that Cendant had advanced him millions of dollars in legal fees).

The rationale behind Mr. Forbes' requests – i.e., that Cendant's advancement of witnesses' legal fees reflects its bias against Mr. Forbes – conveniently ignores the fact that Cendant has advanced Mr. Forbes millions and millions of dollars in legal fees, funding a substantial portion of his army of lawyers in both the criminal and civil cases.  It is also undisputed that Cendant has advanced millions of dollars in legal fees to Cosmo Corigliano and Anne Pember.  Mr. Forbes knows that and can cross-examine Mr. Corigliano and Ms. Pember regarding the fact that Cendant has advanced each of them substantial legal fees.  Thus, even if Cendant's advancement of legal fees were relevant to this case – which it is not – Mr. Forbes has more than enough evidence in his possession to make his point, and the additional information sought in the August 17th Cendant Subpoena would be cumulative.  It is for that very reason that this Court quashed a trial subpoena served by Mr. Forbes during the first trial on the law firm representing Cosmo Corigliano.  See Sept. 24, 2004 Ruling on Motion of Non-Parties Kramer Levin Naftalis & Frankel LLP and Peter Gonedes to Quash Defendant Forbes' Subpoenas Dated August 19, 2004 at 2 (holding that in light of the information Mr. Forbes already had about Cosmo Corigliano's legal fees, "any additional documents obtained by defendant Forbes pursuant to the subpoena would be excluded pursuant to Rule 403 as cumulative") (attached hereto as Exhibit 10).

### 2. Documents Regarding Scott Forbes' 2005 Severance Agreement Are Irrelevant.

Walter Forbes' requests for all materials related to any "benefits" provided to Scott Forbes upon his departure from Cendant and any agreement to indemnify him for legal fees incurred in connection with the retrial seek irrelevant and inadmissible evidence.  See

---

Moreover, the requests in the August 17th Cendant Subpoena go well beyond the total dollar amount and seek additional irrelevant information.

Request Nos. 51-52. Scott Forbes, a senior Cendant executive who testified at the 2004 trial, left the company in 2005 and currently lives and works in London, England. Walter Forbes can be expected to argue that he needs these materials as impeachment evidence. This argument misses the mark for two reasons. First, it is not clear that Scott Forbes will testify at the retrial. If he does not testify, there is no justification for the production of materials relating to his severance agreement and its terms. But even if he does testify, Walter Forbes would not be entitled to this information about the terms of Scott Forbes' departure from the company <u>seven years</u> after the events alleged in the indictment took place. Accordingly, the requests for materials related to Scott Forbes' departure from Cendant in 2005 should be quashed.

## II.     THE CARLEY SUBPOENA SHOULD ALSO BE QUASHED.

The subpoena seeking trial testimony served on John H. Carley, a senior Cendant in-house lawyer, underscores the abuse of process and harassment that is the defining characteristic of Mr. Forbes' defense to the charges in this case.[7] This is nothing new for Mr. Forbes' counsel. Indeed, the law firm representing Mr. Forbes was recently sanctioned by a state court judge in Virginia for, among other things, an abuse of the discovery process. As part of those sanctions, the *pro hac vice* admission of Barry Simon, one of Mr. Forbes' lead counsel in this case, was revoked. <u>See</u> Exhibit 12.

Attorney Carley is the Senior Vice President, Legal & Regulatory Affairs of Cendant and joined the Cendant legal department in June 1998, two months *after* the discovery and public disclosure of the accounting fraud alleged in the indictment. As a member of the Cendant legal department, he has overseen the company's defense of shareholder litigation

---

[7]     A copy of the Carley Subpoena is attached hereto as Exhibit 11.

relating to the accounting fraud and the company's prosecution of its lawsuit against Ernst & Young LLP.  Because Attorney Carley has no first-hand knowledge of any relevant events prior to June 1998, it is difficult to fathom how his testimony could possibly be relevant.  When Mr. Forbes' counsel was asked prior to filing this motion why they were calling Attorney Carley to testify at the trial, they refused to provide even a general subject matter.[8]

In addition, as counsel to Cendant, Attorney Carley is an especially inappropriate witness.  Anything that he could testify about would have been learned in his role as counsel to the company and thus would be protected either by the attorney-client privilege, the work-product doctrine, or both.  It is for this reason that subpoenas served upon attorneys are generally disfavored.  See, e.g., In re Grand Jury Subpoena, 438 F. Supp. 1176, 1178-79 n.9 (S.D.N.Y. 1977) (granting motion to quash grand jury subpoena served upon attorney); In re Terkeltoub, 256 F. Supp. 683, 684-85 (S.D.N.Y. 1966) (denying motion to compel grand jury testimony of attorney).

As the party proffering the proposed evidence, Mr. Forbes must show that Attorney Carley's testimony would be relevant and admissible.  See Fed. R. Evid. 401 and 402.  As this Court has already held, where it is clear that the sought-after testimony would be relevant only to collateral matters in the case, it is appropriate to quash the subpoena.  See September 24, 2004 Rulings on Motions to Quash Subpoena Seeking Testimony and Documents from SEC Enforcement Attorney James Kidney and Others (attached hereto as Exhibit 13).

---

[8]  This is not the first time Mr. Forbes has sought to harass Attorney Carley.  During the first trial, counsel for Mr. Forbes personally served Attorney Carley with a trial subpoena in the courtroom.  And counsel for Mr. Forbes then too refused to provide any basis for calling Attorney Carley.  Attorney Carley moved to quash the subpoena (and never testified at the first trial).

It is undisputed that Attorney Carley has no first-hand knowledge of any relevant facts. The only conceivable purpose of his testimony would be to develop Mr. Forbes' theory that Cendant and its senior executives are biased against him. As explained in detail above, whether Cendant and its executives are biased against Mr. Forbes is an entirely collateral issue, and this Court has already denied similar requests for testimony regarding Cendant's alleged bias.[9] The Carley Subpoena should be quashed.

---

[9] To the extent Attorney Carley is being called to attack the credibility of other current or former Cendant executives who may testify at the retrial, this Court has already ruled that a lawyer cannot be called to testify merely to attack the credibility of his or her client. See Exhibit 14 (September 24, 2004 Order, quashing a number of subpoenas ad testificandum served by Mr. Forbes on various attorneys for Mr. Corigliano).

## Conclusion

For all of the foregoing reasons, Cendant and John H. Carley respectfully request that all three subpoenas be quashed in their entirety.

>CENDANT CORPORATION and
>JOHN H. CARLEY
>
>
>By: /s/ Robert E. Kaelin
>    Francis J. Brady – ct04296
>    Robert E. Kaelin – ct11631
>
>Murtha Cullina LLP
>CityPlace I – 185 Asylum Street
>Hartford, Connecticut 06103-3469
>Telephone:  (860) 240-6000
>Facsimile:  (860) 240-6150
>Email:   fbrady@murthalaw.com
>         rkaelin@murthalaw.com
>
>           and
>
>Saul B. Shapiro (SS-5506) – ct24714 (Visiting Attorney
>Peter W. Tomlinson (PT-0669) – ct24714 (Visiting Attorney)
>PATTERSON, BELKNAP, WEBB &
>  TYLER LLP
>1133 Avenue of the Americas
>New York, New York 10036
>Telephone:  (212) 336-2000
>Facsimile:  (212) 336-2222
>Email: sshapiro@pbwt.com
>       pwtomlinson@pbwt.com
>
>Their Attorneys

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was delivered by hand on September 23, 2005 to:

| Counsel For The U.S. Government | Counsel For Walter A. Forbes |
|---|---|
| Michael Martinez, Esq.<br>United States Attorney's Office<br>District of New Jersey<br>c/o  Federal Building<br>    450 Main Street, Rm. 320<br>    Hartford, CT 06103 | Barry Simon, Esq.<br>Williams & Connolly LLP<br>c/o  Residence Inn<br>    942 Main Street<br>    Hartford, CT  06103<br><br>James T. Cowdery, Esq.<br>Cowdery, Ecker & Murphy, LLC<br>750 Main Street<br>Hartford, CT 06103 |

                                                    \_\_\_\_\_/s/ Robert E. Kaelin_____
                                                  Robert E. Kaelin, Esq.