EXHIBIT 5

AO 89 (Rev. 7/95) Subpoena in a Criminal Case

# United States District Court

DISTRICT OF __New Jersey__

United States of America

v.

Walter A. Forbes and E. Kirk Shelton

SERIAL NO. 946
SERVED
RECEIVED
FILED

**SUBPOENA IN A CRIMINAL CASE**

CASE NUMBER: CR 01-140-40 (WHW)

TO: Custodian of Records
Cendant Corporation
9 West 57 Street
New York, NY 10019

[X] YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below, or any subsequent place, date and time set by the court, to testify in the above referenced case. This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| PLACE | COURTROOM |
|---|---|
| U.S. Courthouse<br>50 Walnut Street<br>Newark, NJ 07101 | 4D |
| | DATE AND TIME January 15, 2002<br>9:30 a.m. |

[X] YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):

See Attached Schedule.

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
|---|---|
| WILLIAM T. WALSH<br>(BY) DEPUTY CLERK | November 28, 2001 |

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER

Peter Vigeland
Wilmer, Cutler & Pickering, LLP
520 Madison Avenue, 42nd Floor
New York, NY 10022 (202) 230-8800

Barry S. Simon
Williams & Connolly, LLP
725 12th Street, N.W.
Washington, D.C. 20005 (202) 434-5000

AO 89 (Rev. 7/95) Subpoena in a Criminal Case (Reverse)

# PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| RECEIVED BY SERVER | | |
| SERVED | DATE | PLACE |

| SERVED ON (PRINT NAME) | FEES AND MILEAGE TENDERED TO WITNESS |
|---|---|
| | ☐ YES  ☐ NO  AMOUNT $ |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____    _____
              Date                Signature of Server

                             _____
                             Address of Server

ADDITIONAL INFORMATION

# SCHEDULE OF DOCUMENTS TO BE PRODUCED BY CENDANT CORPORATION

## DEFINITIONS AND INSTRUCTIONS

a. This subpoena calls for documents generated on or after January 1, 1983.

b. If any document or other item requested is not produced but is withheld on a claim of privilege, identify the document by providing the date of its preparation, the name of the person(s) preparing and receiving it, the subject matter of the document, and the identity of each person to whom a copy of the document or item has been delivered, or to whom disclosure of the document or item was made, either orally or in writing.

c. The term "AA" means the firm of Arthur Andersen and any predecessor or successor of Arthur Anderson as well as any director, member, partner, employee or other agent of the foregoing firms.

d. The term "Accounting" shall mean the recording and providing of financial or quantitative information for decision-making, planning, controlling resources and operations, evaluating performance and financial reporting to directors, officers, employees, investors, potential investors, creditors, potential creditors, regulatory authorities and the public.

e. The term "all" shall mean any and all.

f. The term "and" shall mean "or" as well as "and" to bring within the scope of the description all documents that otherwise might be construed to be outside the description of documents to be produced.

g. The term "any" shall mean any and all.

h. The term "Auditing" shall mean the review of, examination of, or commenting upon Accounting information and reports in order to determine the accuracy, validity, fairness, or appropriateness of Accounting information and reports or the conformity of procedures with policies.

i. The term "benefit" shall mean anything of value or use, whether directly to a person or entity or indirectly to a person's or entity's attorneys, officers, directors, employees, or business associates. It includes, but is not limited to, immunity grants, whether formal or informal, witness fees, transportation

assistance, money or assurance, promises or suggestions of favorable treatment with respect to any criminal, civil, or administrative matter.

j.  The term "Cendant Litigation" shall mean any proceeding concerning, in whole or in part, Accounting or Auditing at any Cendant Entity, including but not limited to, grand jury proceedings, criminal litigation, civil litigation, regulatory proceedings, administrative proceedings, *In re Cendant*, Master File No. 98-1664 (WHW), pending in the U.S. District Court for the District of New Jersey, *George M. Kevlin v. Cendant Corp.*, Civil No. 00-09267, pending in Texas, *Securities and Exchange Commission v. Walter A. Forbes and E. Kirk Shelton* Civil No. 01-987 (AJL), pending in the U.S. District Court for the District of New Jersey, *Securities and Exchange Commission v. Corigliano, et al.*, Civ. No. 00-2873 (AJL), pending in the U.S. District Court for the District of New Jersey, and *United States v. Walter A. Forbes and E. Kirk Shelton*, Crim. No. 01-140, pending in the U.S. District Court for the District of New Jersey.

k.  The term "Cendant Entity" shall mean Cendant Corporation, all parents and predecessors of Cendant Corporation, CUC International, Inc., all parents and predecessors of CUC International, Inc., HFS, Inc., all parents and predecessors of HFS, Inc., all entities in which Cendant Corporation or a parent or predecessor of Cendant Corporation owns or owned, directly or indirectly, more than 50 percent of the shares or other interests in the entity, all entities in which CUC International, Inc., or a parent or predecessor of CUC International, Inc., owns or owned, directly or indirectly, more than 50 percent of the shares or other interests in the entity, any entity in which HFS, Inc., or a parent or predecessor of HFS, Inc., owns or owned, directly or indirectly, more than 50 percent of the shares or other interests in the entity, any director of any of the foregoing entities, the board of directors of any of the foregoing entities, any committee or subcommittee of the board of directors of any of the foregoing entities, any officer of any of the foregoing entities, any employee of any of the foregoing entities, any attorney or law firm representing any of the foregoing entities with respect to the subject matter of this subpoena, any accounting firm retained by any of the foregoing entities with respect to the subject matter of this subpoena, any public relations firm retained by any of the foregoing entities with respect to the subject matter of this subpoena, any communications firm retained by any of the foregoing entities with respect to the subject matter of this subpoena, and any other agent of any of the foregoing entities.

l.  The term "communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise), including but not limited to, face-to-face conversations, meetings, presentations, telephone conversations,

    letters, memos, notes and other correspondence, agreements, reports, filings and the transmittal of information by way of computer such as e-mails.

m.   The term "concerning" shall mean relating to, referring to, describing, reflecting, regarding, evidencing, memorializing or constituting.

n.   The term "D&T" shall mean the firm of Deloitte & Touche, LLP, and any predecessor or successor of Deloitte & Touche, LLP, including, but not limited to the firms of Deloitte Haskins & Sells and Touche Ross, as well as any director, member, partner, employee or other agent of the foregoing firms.

o.   The term "document" shall mean any and all books, papers, letters, correspondence, reports, memoranda, studies, calendars, appointment books, diaries, notes, messages, computer facilitated or transmitted materials, images, photographs, polaroids, information in any computer database, audio and video tapes, recordings, transcripts, ledgers, printouts, contracts, checks, receipts and all copies or portions thereof, and any other written, recorded, or memorialized material of any nature whatsoever.

p.   The term "E&Y," shall mean the firm of Ernst & Young, LLP, and any predecessor or successor of Ernst & Young, LLP, including, but not limited to, the firms of Ernst & Whinney and Arthur Young, as well as any director, member, partner, employee, or other agent of the foregoing firms.

q.   The term "Government" shall mean any federal, state or local governmental agency, any federal, state or local governmental entity, any federal, state or local government official, any federal, state or local government employee, and any other federal, state or local government agent. The term "Government" shall include, but not be limited to, the U.S. Department of Justice, the U.S. Attorney for the District of New Jersey, the U.S. Attorney's Office for the District of New Jersey, the Federal Bureau of Investigation, the U.S. Securities and Exchange Commission, the U.S. Postal Service, the U.S. Congress, any state or municipal law enforcement agency, any U.S. Attorney, any Acting U.S. Attorney, any Assistant U.S. Attorney (including but not limited to Paul A. Weissman and John J. Carney), any agent or special agent of the Federal Bureau of Investigation (including but not limited to Special Agent Mark J. Gerber), any postal inspector of the U.S. Postal Service (including but not limited to Patricia A. Mathews), any attorney or accountant affiliated with the Securities and Exchange Commission (including but not limited to Thomas C. Newkirk, James A. Kidney, James T. Coffman and David Frolich), and any state or local law enforcement official or officer.

r.   The term "Investigation" shall mean any investigation concerning, in whole or in part, Accounting or Auditing at any Cendant Entity.

s.  The term "KPMG" shall mean the firm of KPMG and any predecessor or successor of KPMG, as well as any director, member, partner, employee or other agent of the foregoing firms.

t.  The term "Media" shall mean any newspaper, magazine, journal, book, publication, television network, television station, radio station, radio network or internet site, or any representative of any of the foregoing.

u.  The term "or" shall mean "and" as well as "or" to bring within the scope of the description all documents that might otherwise be construed to be outside the description of documents to be produced.

v.  The past tense shall include the present tense and *vice versa* so as to bring within the scope of the description all documents that might otherwise be construed to be outside the scope of the description of documents to be produced.

w.  The plural shall include the singular and *vice versa* so as to bring within the scope of the description all documents construed to be outside the scope of the description of documents to be produced.

x.  The term "Potential Witness" shall mean any and all of the following:

1.  Tom Albright
2.  Chris Annese
3.  Stuart L. Bell
4.  Sandy Berry
5.  James E. Buckman
6.  Colleen Chaney
7.  Cosmo Corigliano
8.  Vincent D'Agostino
9.  Robert Davidson
10. T. Barnes Donnelley
11. Martin L. Edleman
12. Richard Fernandes
13. Scott Forbes
14. Beth Freimour
15. John H. Fullmer
16. Jeffrey Gershowitz
17. Frederick Green
18. Steven Greyser
19. Laura P. Hamilton
20. Robert Higgins

21. Greg Hilinski
22. Paul J. Hiznay
23. Stephen P. Holmes
24. Tobia Ippolito
25. Sam Katz
26. Kevin T. Kearney
27. Robert D. Kunisch
28. Amy Lipton
29. Christopher K. McLeod
30. Anthony L. Menchaca
31. Mark Metcalf
32. Michael Monaco
33. Steve Pedersen
34. Anne Pember
35. Burton C. Perfit
36. Mary Peterson
37. Mary (Sattler) Polverari
38. Kathleen Pranger-Mills
39. Marc Rabinowitz
40. Robert Rittereiser
41. Casper Sabatino
42. Robert Sarkie
43. Henry Silverman
44. Steven P. Speaks
45. Bruce Tolle
46. Eva Viniczay
47. Michael Wargotz
48. Kenneth J. Wilchfort
49. Starin Woodward

y. The term "PwC" shall mean the firm of PricewaterhouseCoopers, LLP, and any predecessor or successor of PricewaterhouseCoopers, LLP, including, but not limited to the firms of Price Waterhouse and Coopers & Lybrand as well as any director, member, partner, employee or other agent of the foregoing firms.

## DESCRIPTIONS OF DOCUMENTS TO BE PRODUCED

1. All documents concerning any agreements between any Cendant Entity or any past or present director, officer or employee of any Cendant Entity and the Government concerning, in whole or in part, Accounting or Auditing at any Cendant Entity. This includes, but is not limited to, any plea agreements, settlement agreements, cooperation agreements, consent decrees, immunity agreements, agreements concerning testimony or potential testimony, proffer

5

agreements, and agreements concerning any interview or potential interview by the Government.

2. All documents concerning any benefits any Cendant Entity or any past or present director, officer or employee of any Cendant Entity has received or may receive as a result of providing information or cooperation to the Government concerning, in whole or in part, Accounting or Auditing at any Cendant Entity.

3. All documents concerning any negotiations between any Cendant Entity or any past or present director, officer or employee of any Cendant Entity and the Government concerning any agreement or potential agreement between any Cendant Entity or any past or present director, officer or employee of any Cendant Entity and the Government concerning, in whole or in part, Accounting or Auditing at any Cendant Entity. This includes, but is not limited to, all offers, counteroffers, proposals, counterproposals and drafts concerning any agreement or potential agreement between any Cendant Entity or any past or present director, officer or employee of any Cendant Entity and the Government.

4. All documents that any Cendant Entity or any past or present director, officer or employee of any Cendant Entity provided to or received from the Government concerning, in whole or in part, Accounting or Auditing at any Cendant Entity.

5. All documents concerning any communications between any Cendant Entity or any past or present director, officer or employee of any Cendant Entity and the Government concerning, in whole or in part, Accounting or Auditing at any Cendant Entity. This request includes, but is not limited to, any and all notes concerning such communications, any written submission the purpose of which was to convince the Government not to take action or to be lenient in any action, and any and all correspondence between any Cendant Entity or any past, present or former director, officer, or employee of any Cendant Entity and the Government concerning, in whole or in part, Accounting or Auditing at any Cendant Entity.

6. All documents concerning any prior statements made by any director, officer or employee of any Cendant Entity concerning, in whole or in part, Accounting or Auditing at any Cendant Entity. This includes statements under oath and statements not under oath. This also includes, but is not limited to, affidavits, deposition transcripts, interrogatory answers, correspondence, videotapes and notes concerning such statements.

7. All documents concerning the application or non-application of Generally Accepted Accounting Principles at any Cendant Entity.

8. All documents concerning Accounting or Auditing policies or potential Accounting or Auditing policies or draft Accounting or Auditing policies for any Cendant Entity.

9. All documents concerning any alleged or actual Accounting or Auditing mistakes, errors, irregularities, improprieties or change in Accounting policy at any Cendant Entity.

10. All documents concerning the consolidation of financial reporting information or data at any Cendant Entity.

11. All documents concerning any adjustments to the Accounting records of any Cendant Entity made in connection with the consolidation process.

12. All documents concerning any inflated earnings at any Cendant Entity, including any so-called "cheat sheets."

13. All documents concerning any post-consolidation Accounting adjustments at any Cendant Entity.

14. All documents concerning merger reserves, acquisition reserves or restructuring reserves at any Cendant Entity.

15. All documents concerning cancellation reserves at any Cendant Entity.

16. All documents concerning the Accounting or Auditing treatment of solicitation costs at any Cendant Entity.

17. All documents concerning the Accounting or Auditing treatment of commissions at any Cendant Entity.

18. All documents concerning the Accounting or Auditing treatment of any tax asset obtained by Sierra On-Line, Inc.

19. All documents concerning the Accounting or Auditing treatment of any receivables concerning Benefit Consultants, Inc.

20. All documents concerning the Accounting or Auditing treatment of marketing costs at any Cendant Entity.

21. All documents concerning the recognition of revenue and expenses at any Cendant Entity.

22. All documents concerning the allocation of revenues and expenses at any Cendant Entity.

23. All documents concerning Accounting at any Cendant Entity, Auditing at any Cendant Entity, Cendant Litigation or any Investigation provided to or received from Willkie Farr & Gallagher.

24. All documents concerning any communications with Willkie Farr & Gallagher concerning Accounting at any Cendant Entity, Auditing at any Cendant Entity, Cendant Litigation or any Investigation. This includes, but is not limited to, any correspondence with Willkie Farr & Gallagher concerning Accounting at any Cendant Entity, Auditing at any Cendant Entity, Cendant Litigation or any Investigation, any analyses prepared by or prepared for Willkie Farr & Gallagher concerning Accounting at any Cendant Entity, Auditing at any Cendant Entity, Cendant Litigation or any Investigation and any reports, preliminary reports or draft reports prepared by or prepared for Willkie Farr & Gallagher concerning Accounting at any Cendant Entity, Auditing at any Cendant Entity, Cendant Litigation or any Investigation.

25. All documents provided to or received from AA concerning Accounting at any Cendant Entity, Auditing at any Cendant Entity, Cendant Litigation or any Investigation.

26. All documents concerning any communications with AA concerning Accounting at any Cendant Entity, Auditing at any Cendant Entity, Cendant Litigation or any Investigation. This includes, but is not limited to, any correspondence with AA, any analyses prepared by or prepared for AA and any reports, preliminary reports or draft reports prepared by or prepared for AA.

27. All documents concerning Accounting at any Cendant Entity, Auditing at any Cendant Entity, Cendant Litigation or any Investigation provided to or received from any law firm or lawyer representing any Cendant Entity or audit committee of any board of directors of any Cendant Entity. This includes, but is not limited to, such documents provided to Weil Gotshal & Manges, LLP, and Skadden Arps Slate Meagher & Flom, LLP.

28. All documents concerning any communications concerning Accounting at any Cendant Entity, Auditing at any Cendant Entity, Cendant Litigation or any Investigation with any law firm or lawyer representing any Cendant Entity or audit committee of any board of directors of any Cendant Entity. This includes, but is not limited to, correspondence concerning Accounting at any Cendant Entity, Auditing at any Cendant Entity, Cendant Litigation or any Investigation with Weil Gotshal & Manges, LLP and Skadden Arps Slate Meagher & Flom, LLP.

29. All documents concerning any Investigation directed or approved by any audit committee of any board of directors of any Cendant Entity.

30. All documents concerning any Investigation conducted by Willkie Farr & Gallagher or AA during 1998.

31. All documents concerning any negotiations, renegotiations, termination, modification or amendment in or about December 1997, concerning any contract, policy or other agreement between Continental Casualty Company or CNA, on the one hand, and any Cendant Entity, on the other hand.

32. All documents provided to or received from any Accounting or Auditing firm that audited any Cendant Entity or provided any service, advice or information to any Cendant Entity concerning Accounting or Auditing. This includes, but is not limited to, all documents provided to or received from E&Y, PwC, D&T, AA, and KPMG.

33. All documents concerning communications, including but not limited to correspondence, with any Accounting or Auditing firm that audited any Cendant Entity or provided any service, advice or information to any Cendant Entity concerning Accounting or Auditing. This includes, but is not limited to, documents concerning communications with E&Y, PwC, D&T, AA and KPMG.

34. All documents concerning any restated financial statements or amended filings with the U.S. Securities and Exchange Commission by any Cendant Entity, except for the electronic versions of the filings themselves that are available to the public. This includes, but is not limited to, the version of the amended filings themselves bearing original signatures.

35. All documents concerning any issues raised, questions raised, differences, disagreements or discussions concerning the positions taken in any restated financial statements or amended filings with the U.S. Securities and Exchange Commission by any Cendant Entity.

36. All documents provided to any investment bank, merchant bank or commercial bank concerning any Cendant Entity. This includes, but is not limited to, all documents provided to Bear Sterns, Goldman Sachs, and Merrill Lynch.

37. All documents concerning any communication with any investment bank, merchant bank or commercial bank concerning any Cendant Entity. This includes, but is not limited to, Bear Sterns, Goldman Sachs, and Merrill Lynch.

38. All documents concerning any actual or potential merger, acquisition, business combination, corporate restructuring, financing, purchase of assets, sale of assets or issuance of securities of or by any Cendant Entity. This includes, but is not limited to, all documents concerning the consideration or selection of entities for potential merger, acquisition or business combination of or by any Cendant Entity. This also includes, but is not limited to, pitch books, industry analyses and pro forma combinations.

39. All documents provided to or received from the Media or any representative of the Media concerning Accounting at any Cendant Entity, Auditing at any Cendant Entity, Cendant Litigation or any Investigation. This includes, but is not limited to, any press releases concerning Accounting at any Cendant Entity, Auditing at any Cendant Entity, Cendant Litigation or any Investigation provided to the Media.

40. All documents concerning any communication with the Media or any representative of the Media concerning Accounting at any Cendant Entity, Auditing at any Cendant Entity, Cendant Litigation or any Investigation. This includes, but is not limited to, any transcripts of any interviews with the Media concerning Accounting at any Cendant Entity, Auditing at any Cendant Entity, Cendant Litigation or any Investigation, any videotapes of any interviews with the Media concerning Accounting at any Cendant Entity, Auditing at any Cendant Entity, Cendant Litigation or any Investigation and any drafts of any articles concerning Accounting at any Cendant Entity, Auditing at any Cendant Entity, Cendant Litigation or any Investigation that appeared or were intended to appear in the Media.

41. All documents provided to or received from any public relations or communications firm concerning Accounting at any Cendant Entity, Auditing at any Cendant Entity, Cendant Litigation or any Investigation. This includes, but is not limited to, all documents concerning Accounting at any Cendant Entity, Auditing at any Cendant Entity, Cendant Litigation or any Investigation provided to or received from Kekst & Company.

42. All documents concerning any communications with any public relations or communications firm concerning Accounting at any Cendant Entity, Auditing at any Cendant Entity, Cendant Litigation or any Investigation. This includes, but is not limited to, any correspondence with any public relations or communications firm concerning Accounting at any Cendant Entity, Auditing at any Cendant Entity, Cendant Litigation or any Investigation. Furthermore, this includes, but is not limited to, all documents concerning communications with Kekst & Company concerning Accounting at any Cendant Entity, Auditing at any Cendant Entity, Cendant Litigation or any Investigation.

43. All documents concerning any agreements between any Potential Witness and any Cendant Entity. This includes, but is not limited to, any such employment agreement, severance agreement, golden parachute agreement, change of control agreement, and indemnity agreement.

44. All documents concerning negotiations over agreements or potential agreements between any Potential Witness and any Cendant Entity. This includes, but is not limited to, all offers, counteroffers, proposals,

10

counterproposals and drafts concerning any such agreement or potential agreement.

45. All documents concerning any compensation any Potential Witness received from any Cendant Entity, any compensation any Potential Witness may receive from any Cendant Entity in the future, and any potential compensation from any Cendant Entity for which any Potential Witness was potentially eligible, even if he or she did not in fact receive such compensation. This includes, but is not limited to, all Forms W2, all Forms 1099, all paycheck stubs, all statements reflecting any bonus and all other statements reflecting compensation or potential compensation of any kind to any Potential Witness from any Cendant Entity.

46. All documents concerning any stock options any Potential Witness was granted by any Cendant Entity, any stock options that any Cendant Entity may grant to any Potential Witness in the future, or any stock options from any Cendant Entity for which any Potential Witness was potentially eligible, even if he or she did not in fact receive such stock options. This request includes, but is not limited to, any summary of stock options granted to any Potential Witness by any Cendant Entity.

47. All documents concerning any retirement plan or retirement benefits provided to any Potential Witness by any Cendant Entity, any retirement benefits that any Cendant Entity may provide to any Potential Witness in the future or any retirement benefits from any Cendant Entity for which any Potential Witness was potentially eligible, even if he or she did not in fact receive them.

48. All documents concerning any stock granted to any Potential Witness by any Cendant Entity, any stock that may be granted to any Potential Witness by any Cendant Entity in the future or any stock from any Cendant Entity for which any Potential Witness was potentially eligible, even if he or she did not in fact receive such stock.

49. All documents concerning any benefits any Potential Witness has received from any Cendant Entity, any benefits any Potential Witness may receive from any Cendant Entity in the future or any benefits from any Cendant Entity for which any Potential Witness was potentially eligible, even if he or she did not in fact receive such benefits.

50. All documents concerning any evaluations or performance reviews of any Potential Witness arising from or concerning his or her employment with any Cendant Entity.

51. All documents concerning the personnel file of any Potential Witness at any Cendant Entity. This includes, but is not limited to, all of the contents of the personnel file of any Potential Witness.

52. All documents concerning any disciplinary actions arising from or concerning the employment of any Potential Witness by any Cendant Entity.

53. All documents concerning any conviction, arrest or criminal record of, and any criminal charge brought against any Potential Witness

54. All documents concerning any action taken against or threatened to be taken against any Potential Witness by the Government.

55. All documents provided to or received from any securities analysts concerning any Cendant Entity.

56. All documents concerning any communications with any securities analysts concerning any Cendant Entity. This includes, but is not limited to, correspondence with any securities analysts concerning any Cendant Entity. Furthermore, this includes, but is not limited to, transcripts and audiotapes of telephone calls with any securities analysts concerning any Cendant Entity.

57. All financial statements for any Cendant Entity or any division or business segment of any Cendant Entity, including but not limited to drafts or other versions of such financial statements prepared prior to the final version.

58. All documents concerning the financial performance of any Cendant Entity or any division or business segment of any Cendant Entity.

59. All documents concerning any meetings of any board of directors of any Cendant Entity, any meetings of any audit committee of any board of directors of any Cendant Entity, and any meetings of any other committee or subcommittee of any board of directors of any Cendant Entity. This includes, but is not limited to, any minutes, draft minutes, notes, board packets, handouts and presentations concerning such meetings.

60. All documents concerning any budget, projections or forecasts for any Cendant Entity. This includes, but is not limited to, all drafts or other versions of such financial statements prepared prior to the final version.

61. All documents provided by any Cendant Entity to any member of the board of directors of any Cendant Entity. This includes, but is not limited to, all board packages.

62. All documents concerning any filing with or reporting to the U.S. Securities and Exchange Commission concerning any Cendant Entity, except for the electronic version of the filings themselves which are available to the public. This includes, but is not limited to, all drafts or any such filing or reporting eventually filed with the U.S. Securities and Exchange Commission concerning

any Cendant Entity. This also includes, but is not limited to, the ver... the filings themselves bearing original signatures.

63. All documents concerning communications with the U.S. Securities and Exchange Commission concerning any Cendant Entity. This includes, but not limited to, any so-called "Wells Submission" to the U.S. Securities and Exchange Commission and correspondence with the U.S. Securities and Exchange Commission concerning any Cendant Entity. This also includes is not limited to, all agreements between any Cendant Entity or any past present director, officer or employee of any Cendant Entity and the U.S. Securities and Exchange Commission and all documents concerning any negotiations concerning any such agreement or potential agreement between any Cendant Entity or any past or present director, officer or employee of Cendant Entity and the U.S. Securities and Exchange Commission.

64. All documents concerning any filings with the U.S. Securities and Exchange Commission concerning any Potential Witness, except for such filings themselves that are available to the public. This includes, but is not limited drafts of Forms 3, Forms 4 and Forms 5 concerning any Potential Witness.

65. All documents concerning Cendant Litigation, except for confidential communications with Cendant Corporation's counsel in that litigation that have not been produced, copied to, or shared with any third party.

66. All documents produced, provided, demanded or requested in the course of Cendant Litigation.

67. All documents concerning the basis for redactions and claims of privilege in connection with documents produced, provided, demanded or requested the course of Cendant Litigation.

68. All calendars, diaries, daytimers, appointment books or similar documents maintained by or on behalf of or concerning any Potential Witness through July 30, 1998.

69. All telephone records of any Potential Witness.

70. All documents concerning travel by any Potential Witness through July 1998.

71. All documents concerning the business expenses of any Potential Witness through July 30, 1998. This includes, but is not limited to, all requests for reimbursement for the designated time period submitted by any Potential Witness or on behalf of the Potential Witness to any Cendant Entity.

72. All insurance applications for any Cendant Entity.

13

73. All Documents concerning any fidelity bond or other third party obligation that would allow any Cendant Entity to collect upon a showing of criminal misconduct by an officer or employee, and all documents reflecting or concerning any claim or contemplated claim made upon such bond or obligation concerning, in whole or in part, Accounting or Auditing at any Cendant Entity.

74. All documents concerning Walter A. Forbes. This includes, but is not limited to, all documents concerning communications with Walter A. Forbes, such as e-mails and correspondence with Walter A. Forbes.

75. All documents concerning E. Kirk Shelton. This includes, but is not limited to, all documents concerning communications with E. Kirk Shelton, such a e-mails and correspondence with E. Kirk Shelton.

76. All electronic data concerning computers belonging to or used by Stuart Bell, Cosmo Corigliano, Walter Forbes, Anne Pember, E. Kirk Shelton, Casper Sabatino, Mary Sattler, Paul Hiznay and Steve Speaks.

77. All E-mail communications sent either by or to, or received by any Potential Witness.

78. All electronic data concerning any Cendant Entity made available to Willkie Farr & Gallagher or AA or retrieved by Willkie Farr & Gallagher or AA. This includes, but is not limited to, all such electronic data contained or stored on network storage devices, personal computers, portable computers, laptop computers, computer hard drives, floppy disks, compact disks, zip disks, zip files, zip drives, computer files, backup tapes, personal data organizers or personal digital assistants. This also includes, but is not limited to, the electronic data contained on at least 21 personal computers reviewed by Willkie Farr & Gallagher or AA as indicated in Exhibit C.

79. All documents concerning analyses of electronic data concerning any Cendant Entity made available to Willkie Farr & Gallagher or AA or retrieved by Willkie Farr & Gallagher or AA. This includes, but is not limited to, all searches of such electronic data contained or stored on network storage devices, personal computers, portable computers, laptop computers, computer hard drives, floppy disks, compact disks, zip disks, zip drives, zip files, computer files, backup tapes, personal data organizers or personal digital assistants. This also includes, but is not limited to, all searches of e-mails and all searches of electronic data contained on at least 21 personal computers reviewed by Willkie Farr & Gallagher or AA as indicated in Exhibit C.

80. All hard copies of all electronic data made available to Willkie Farr & Gallagher or AA or retrieved by Willkie Farr & Gallagher or AA. This includes, but is not limited to at least 98 binders of such hard copies generated

14

by or made available to or retrieved by Willkie Farr & Gallagher or AA as indicated in Exhibit C.

81. All devices on which documents responsive to this subpoena are contained or stored, have been contained or stored or were contained or stored. This includes, but is not limited to, all such network storage devices, personal computers, portable computers, laptop computers, computer hard drives, floppy disks, compact disks, zip disks, zip drives, zip files, computer files, backup tapes, personal data organizers or personal digital assistants.

82. All documents identified in Exhibit A. This includes, but is not limited to, the containers and contents of the containers identified in Exhibit A. This also includes, but is not limited to, the indices identified in Exhibit A.

83. All documents identified in Exhibit B.

84. All documents identified in Exhibit C. This includes, but is not limited to, the "approximately 21 PCs reviewed (98 binders)" identified in Exhibit C, the "E-mails" identified in Exhibit C, "[a]ll documents maintained in AA custody, as received" identified in Exhibit C, and all drafts, memoranda and reports identified in Exhibit C.

85. The "hot document binder" and the contents thereof identified in Exhibit D.