UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AWT) |
| | : | |
| v. | : | September 27, 2005 |
| | : | |
| WALTER A. FORBES | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT WALTER A. FORBES' MOTION TO PRECLUDE THE GOVERNMENT FROM PRESENTING EVIDENCE, CROSS-EXAMINATION, OR ARGUMENT CONCERNING THE CHARGING OF MR. FORBES' AIRPLANE EXPENSES TO THE CENDANT MERGER RESERVE**

(Forbes Retrial Motion *In Limine* No. 2)

CHRISTOPHER J. CHRISTIE
NORMAN GROSS
MICHAEL MARTINEZ
CRAIG CARPENITO
Special Attorneys
U. S. Department of Justice
Room 320
450 Main Street
Hartford, Connecticut 06103
Tel: (860) 240-3387
Fax: (860) 240-3391

**ARGUMENT**

**I. Evidence of co-conspirator Kirk Shelton's personal involvement in fraudulently manipulating the Cendant merger reserve is highly probative of the existence of the charged conspiracy; Forbes has failed to demonstrate that any supposedly prejudicial effect substantially outweighs its probative value.**

Forbes contends that evidence that co-conspirator, Kirk Shelton, the President and Chief Operating Office of CUC who reported directly to Forbes, conspired with Cosmo Corigliano to charge to the Cendant merger reserve Forbes' travel expenses which, as Forbes admitted at trial, had no involvement in the Cendant merger, should be excluded from evidence in this case, because Forbes was not personally involved in the decision to charge those expenses to the merger reserve. Forbes erroneously contends that evidence involving conduct that was undertaken in furtherance of the conspiracy with which he is charged is irrelevant to the charges against him. This claim is contrary to law.

As this Court properly instructed during the initial trial, in order to convict Forbes of the charged conspiracy, the Government had to prove, *inter alia*, that the conspiracy charged in the indictment existed, and that Forbes knowingly and willfully joined the conspiracy. Tr. 16292. In order to prove the existence of the conspiracy, the Government was not required to prove that the conspirators expressly agreed about "every precise detail of the scheme." Tr. 16293.

Additionally,

> in determining whether an agreement existed . . . [the jurors were permitted to] consider the actions and statements of all those [whom the jury found] to be participants in the alleged conspiracy as proof that a common design existed on their part to act together to accomplish an unlawful purpose as charged in" the indictment.

Tr. 16294. In other words, evidence regarding acts undertaken in furtherance of the conspiracy by conspirators other than Forbes was relevant to prove the existence of the conspiracy, even if a particular conspirator such as Forbes was unaware of those acts. As this Court also properly instructed during the initial trial, the fact that Forbes may have been ignorant of all of the details of the conspiracy does not preclude a finding that he knowingly and willfully participated in the conspiracy.[1]

The challenged evidence showed the following: after Forbes gave Corigliano documentation supporting Forbes' request to be reimbursed by CUC for almost $1 million in private airplane expenses, Corigliano sought Shelton's input for dealing with the

---

[1] In this regard, this Court instructed that

> A defendant's knowledge is a matter of inference from the facts proved. In that connection, I instruct you that to become a member of the conspiracy a defendant need not have been apprised of all of the activities of the other alleged coconspirators. Moreover, a defendant need not have been fully informed as to all of the details or of the scope of the conspiracy in order to justify an inference of knowledge on his part.

Tr. 16298.

2

request.  Tr. 7374-76.  Some time later, Shelton told Corigliano that Shelton had convinced Forbes to reduce his reimbursement claim.  Tr. 7375-76.  Shelton then gave Corigliano an expense report signed by Forbes, seeking reimbursement for more than $266,000 of travel expenses for 1995, and for more than $370,000 for 1996.  Tr. 7376-77.  Corigliano then told Shelton, "Don't forget the [Cendant] merger reserve."  Tr. 7378.  Shelton put his finger up in the air, said, "Ah-ha," and wrote something on the expense report.  Id.  Corigliano had mentioned the Cendant merger reserve because it had recently been established, and the conspirators needed to find non-merger related expenses to improperly charge to the reserve in order to improperly inflate CUC's operating income.  By improperly charging Forbes' travel expenses against the merger reserve, the conspirators would achieve a "dollar for dollar" increase in CUC's operating income.  Tr. 7380-81.

     Based on this evidence, the jury could reasonably conclude that Shelton's and Corigliano's decision to improperly charge Forbes' travel expenses -- which, as Forbes admitted, had nothing to do with the CUC-HFS merger, Tr. 14258 -- to the Cendant merger reserve was undertaken to further the conspiratorial goal of fraudulently inflating CUC's operating income through the improper manipulation of the Cendant merger reserve.  Indictment, Count 1, ¶¶ 30-33, 37-43.  That evidence

was relevant to prove that the charged conspiracy actually existed.[2]  In light of the jury instructions identified above, evidence regarding how Shelton came to charge Forbes' ordinary business expenses to the Cendant merger reserve is admissible during the retrial, regardless of whether Forbes personally took part in the decision to charge those expenses to the merger reserves.

Forbes alternatively contends that the evidence should be excluded under Fed. R. Evid. 403, because it might cause the jury to erroneously conclude that Forbes personally directed his subordinates to improperly charge his travel expenses to the Cendant merger reserve, and because it involved "a significant

---

[2]  As the parties implicitly recognized during the first trial, evidence regarding the conspiratorial acts of others is properly admissible against Forbes to prove the existence of the conspiracy regardless of whether those acts were reasonably foreseeable to Forbes.  The challenged evidence here is offered for that purpose, and not to establish Forbes' liability for substantive crimes under a "Pinkerton" theory (Pinkerton v. United States, 328 U.S. 640 (1946)), based on his participation in a conspiracy to commit those substantive offenses.

After the jury finds that a conspiracy exists, it may consider whether a defendant is liable for the acts of his co-conspirators.  United States v. Bala, 236 F.3d 87, 95 (2d Cir. 2000).  The Pinkerton theory permits criminal liability of a conspirator "for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not himself participate in the substantive crimes."  United States v. Romero, 897 F.2d 47, 51 (2d Cir. 1990) (internal quotation marks omitted).  Before convicting the defendant on a Pinkerton theory, the jury must find that a particular substantive crime is foreseeable and in furtherance of the conspiracy.  Id.

amount of money." Neither of these arguments justifies exclusion of highly relevant proof of the existence of the conspiracy. Evidence may be excluded under Fed. R. Evid. 403 only if its "probative value is **substantially outweighed** by the danger of **unfair prejudice**." Fed. R. Evid. 403 (emphasis added). Under Rule 403, "unfair prejudice 'means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" United States v. Brady, 26 F.3d 282, 287 (2d Cir. 1994) (quoting the Advisory Committee Notes to Rule 403). Any potentially prejudicial effect can be minimized by an instruction that limits the jury's consideration of the evidence to the purposes for which it is admitted. United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992). The Court of Appeals confers substantial deference on a district court's rulings under the rule, which "will not be overturned unless . . . [the court] acted arbitrarily or irrationally." United States v. Thai, 29 F.3d 785, 813 (2d Cir. 1994).

     As Forbes argues, the Government's evidence during the first trial established that Shelton decided to improperly charge Forbes' 1995 and 1996 travel expenses to the Cendant merger; no witness testified that Forbes knew about that decision before it occurred. The Government does not intend to argue that Forbes knew about or was involved in the decision, but will argue that Shelton's involvement is proof that the charged conspiracy

5

existed and that Shelton was a member of the conspiracy, as the indictment alleges.  Given the straightforward nature of the evidence and the Government's argument, there is little if any likelihood that the jury will completely misunderstand that evidence to conclude that Forbes, not Shelton, was the person who directed this particular manipulation of the merger reserve.

As for Forbes' concern that he will suffer prejudice because his business travel expenses in 1995 and 1996 totaled several hundred thousand dollars, there is no evidence, and the Government will not argue, that the cost of those expenses were excessive or inappropriate.  Nor does Forbes point to anything to suggest that the jury would conclude, without evidence or argument, that Forbes had done anything wrong by incurring that level of expenses for business-related travel.  For all that the challenged evidence shows, Forbes was a busy executive who undertook a lot of travel on behalf of the company that he ran. Particularly given the Court's anticipated instruction that the jury should not allow its deliberations to be affected by bias based on "wealth, compensation, or lifestyle," Tr. 16246, Forbes has failed to demonstrate that any possible prejudicial impact substantially outweighs the probative value of this evidence. See United States v. Ballesteros Gutierrez, 181 F.Supp.2d 350, 353-55 (S.D.N.Y. 2002).

6

**II. Forbes has failed to sustain his burden of demonstrating that photocopies of GX 158 and GX 388 are not accurate duplicates of the original expense report signed by Forbes, and containing Shelton's directive to charge the travel expense to the merger reserve.**

Forbes next argues that Government Exhibits ("GX") 158 and 388 should be excluded from evidence because the Government has failed to demonstrate that those exhibits are accurate copies of the original documents. This argument should be rejected.

Fed. R. Evid. 1003 provides that:

A duplicate is admissible to the same extent as an original unless (a) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

Under the rule, a duplicate[3] should be admitted into evidence and treated for all purposes as it were an original if the authenticity of the original is not seriously questioned, and admission of the duplicate would not be unfair. The party opposing admission of the duplicate bears the burden of establishing a genuine and substantial question about the authenticity of the original. United States v. Bakhtiar, 994 F.2d 970, 979 (2d Cir. 1993)(affirming admission of duplicates of

---

[3] Forbes does not contend that either GX 388 or GX 158 is not a proper "duplicate" of the original as that term is defined by Fed. R. Evid. 1001(4) (defining a duplicate as a "counterpart produced by the same impression as the original . . . or by other equivalent techniques which accurately reproduces the original.") See United States v. Wagoner, 713 F.2d 1371, 1377 (8th Cir. 1983) (photocopies of documents are "duplicates" for purposes of Rule 1001(4)).

counterfeit bank checks, where the defendants raised "no serious questions" regarding authenticity or fairness, and the duplicates were clear photographs and photocopies of the checks and were authenticated at trial); United States v. Chang An-Lo, 851 F.2d 547, 557 (2d Cir. 1988) (duplicate hotel telephone logs were properly admitted as originals because defendant failed to raise a genuine issue of their authenticity); see Moretti v. C.I.R., 77 F.3d 637, 645 (2d Cir. 1996)(Tax Court abused its discretion by refusing to admit a xerox photocopy of a sales agreement, in violation of Tax Court Rule analogue to Rule 1003).  A genuine challenge to the authenticity of the original must be established by evidence, not mere speculation.  Chang An-Lo, 851 F.2d at 557; United States v. Mulinelli-Navas, 111 F.3d 983, 989-90 (1st Cir. 1997).

   Forbes has failed to present such a genuine challenge here.  During the initial trial, witnesses with knowledge testified that GX 388 was an accurate copy of Forbes' expense report that was signed by Forbes, and which bore Kirk Shelton's hand-written instruction to charge Forbes' travel expenses to the Cendant merger reserve.  Tr. 10036-40 (testimony of Anthony Menchaca); 10481-82 (testimony of John Oller regarding Shelton's admission that he signed GX 388).

   Likewise, witnesses with knowledge testified that GX 158 was an accurate copy of Forbes' signed expense report with

two Post-It notes affixed to it.  Steven Speaks testified that he was the person who wrote the Post-It note that was addressed to "Nancy" and signed, "Steve."  Tr. 851-65.  He further testified that the other Post-It note, addressed to "Steve" and signed, "Anne," was written by Anne Pember.  Id.  Pember confirmed Speaks' testimony that she and Speaks authored the two Post-It notes that appear on GX 158.  Tr. 2623-25.  Finally, Corigliano testified that GX 158 was an accurate copy of the expense report that Shelton showed to Corigliano, which bore Forbes' signature.  Tr. 7376-77, 9590-92.  This testimony was more than sufficient to demonstrate the authenticity of both GX 388 and GX 158, and justify their admission.  Chang An-Lo, 851 F.2d at 557 (deputy manager of the hotel was qualified to authenticate copies of hotel's telephone logs, even though he did not compare the duplicate with the original, where he recognized the names of hotel employees that appeared on the copies, the room numbers, and the printed format of the logs).

During his protracted testimony in the first trial, Shelton never denied that he personally wrote "charge to merger reserve" on the expense report, copies of which were admitted as GX 388 (as a copy of the report without Post-It notes attached to it), and GX 158 (as a copy of the same report with two Post-It notes attached).  Nor did Shelton otherwise challenge the authenticity of the original expense report.  Likewise, during

9

his protracted testimony in the first trial, Forbes never denied that he personally signed the expense report, or otherwise challenged the authenticity of the original report.  Nor does Forbes, in his current motion, claim that he or anyone else has personal knowledge that the original expense report is not authentic.

Forbes has failed to raise a genuine issue, through the submission of admissible evidence or otherwise, regarding the authenticity of the original expense report.  United States v. Patten, 826 F.2d 198, 199 (2d Cir. 1987).  Accordingly, the first prong of Rule 1003 has been satisfied.  United States v. DiMatteo, 716 F.2d 1361, 1368 (11th Cir. 1983)(copies of tapes were properly admitted where defendant failed to meet his burden under Rule 1002 of raising a genuine issue as to authenticity), vacated on other grounds, 469 U.S. 1101 (1985).

Nor has Forbes raised a genuine issue that either GX 388 or GX 158 is an inaccurate copy of the original expense report.  Modern methods for the reproduction of documents, such as the photocopying process used to create GX 388 and GX 158, support the resolution of fairness issues in favor of the admission of duplicates.  See United States v. Enstam, 622 F.2d 857, 866 (5th Cir. 1980).  Forbes has failed to show that either GX 388 or GX 158 is an inaccurate reproduction of Forbes' original expense report that he personally signed, and on which

Shelton wrote "charge to the merger reserve" (by showing, for example, that the copy has been mutilated, erased, or is illegible). United States v. Feldhacker, 849 F.2d 293, 297 (8th Cir. 1988)(affirming the admission of duplicate copies which the district court concluded were "legible enough"); cf. Ruberto v. C.I.R., 774 F.2d 61, 63 (2d Cir. 1985)(incomplete copies of canceled checks were inadmissible, where proponent could not match the front and the back of the checks). Neither Forbes nor Shelton claimed during the first trial that either exhibit was an inaccurate copy of the original expense report. Thus, Forbes has failed to show that admission of the copies of the expense report will be "unfair."

     Because an accurate copy is admissible to the same extent and for the same purpose as an original pursuant to Rule 1003, the Government need not satisfy the requirements of Fed. R. Evid. 1004 for the submission of "other evidence of contents" of an original writing. United States v. Buck, 1987 WL 19300, *9 (S.D.N.Y., October 28, 1987)("Rule 1004 does not apply to 'duplicates' . . . which are specifically addressed by Rule 1003."). This is because a "'duplicate original' under Rule 1003 [meets] the 'original writing' rule's requirements head on," and therefore need not "qualify as secondary evidence of the writing's contents under Rule 1004." In re Macmillan, Inc., 186

B.R. 35, 48 (Bankr. S.D.N.Y. 1995).[4]

Forbes' challenge to the authenticity of GX 388 and GX 158 is limited to the fact that different Post-It notes were affixed to Forbes' expense report at different times. That fact

---

[4] In any event, Rule 1004 permits the use of "other evidence of the contents of a writing" and dispenses with the need for the original if any one of four conditions are satisfied, including evidence that "all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith."  Fed. R. Evid. 1004(1).

In seeking the admission of GX 388 and GX 158 in advance of the initial trial, the Government proffered, and Forbes did not dispute, that the Government had no involvement in the loss of the original expense report, which was never in the Government's possession, and that Government's investigators and former CUC officials have conducted a reasonable but unsuccessful search for the original. Burt Rigid Box, Inc. v. Travelers Property Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002)(affirming the district court's admission of secondary evidence of the existence and terms of insurance policies, where the insured made a diligent effort to locate the policies).  Good faith destruction or loss of an original document, even by Government officials, satisfies the requirement of Rule 1004(1) and paves the way for admission of other evidence of the contents of the destroyed documents. United States v. Maxwell, 383 F.2d 437, 442-43 (2d Cir. 1967) (transcript of tape recording properly admitted where Government did not destroy original recordings in bad faith); United States v. Balzano, 687 F.2d 6, 7 (1st Cir. 1982) (duplicate tape properly admitted where government knowingly erased the original, but not in bad faith); accord United States v. Conry, 631 F.2d 599, 600 (9th Cir. 1980); United States v. Capanelli, 257 F.Supp.2d 678, 681 (S.D.N.Y. 2003) (rejecting defense request to exclude voice recordings after the Government destroyed the original, digital chip recordings, because "the recordings produced from [the chips] are duplicates and admissible under the protocol established by Rules 1001-1003;" problems arising from the "software-assisted reproduction of the recordings may be fully explored by a defense expert witness"). *A fortiori,* loss or destruction of the original expense report by someone other than a Government official satisfies the requirement of Fed. R. Evid. 1004(1).

hardly undermines the authenticity of the original or the accuracy of either GX 388 or GX 158. It is the very purpose and nature of Post-It notes that they can be affixed to or removed from another document without altering the other document in any way. The Government has presented GX 388 and GX 158 to demonstrate that Forbes submitted a request to be reimbursed for ordinary business expenses, and that his co-conspirators Corigliano and Shelton decided to improperly charge those ordinary business expenses to the Cendant merger reserve. Nothing in any of the Post-It notes that were affixed to that expense report does anything to undermine the fact that Forbes' signature appears on the expense report, requesting the reimbursement, or Shelton's hand-written instruction on the body of the report itself, and not on any of the Post-It notes, to charge the expense to the merger reserve.

Notwithstanding his burden, Forbes has proffered no sufficient reason to believe that the original expense report was not authentic, the proffered copies are inaccurate, or that the Government has attempted to commit a fraud on the court by altering the original or the copies. United States v. Childs, 5 F.3d 1328, 1334-35 (9th Cir. 1993)(admitting duplicates where opponent proffered no evidence of alteration of the original or duplicate records). Accordingly, this Court should once again admit into evidence GX 388 and GX 158 as accurate duplicates of

13

Forbes' expense report pursuant to Rule 1003.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that this Court deny Forbes' Pre-Retrial Motion *In Limine* No. 2.

                                          Respectfully submitted,

                                          CHRISTOPHER J. CHRISTIE
                                          Special Attorney
                                          U.S. Department of Justice

                                          /s/ Norman Gross

                                          NORMAN GROSS
                                          MICHAEL MARTINEZ
                                          CRAIG CARPENITO
                                          Special Attorneys
                                          U.S. Department of Justice

Dated: September 27, 2005
Hartford, Connecticut

CERTIFICATE OF SERVICE

       The undersigned certifies that on this day I caused to be served copies of the foregoing upon the following by hand delivery:

Barry S. Simon, Esq.
Williams & Connolly LLP
Residence Inn
942 Main Street
Hartford, CT 06103


                                                /s/ Debra Elliott
                                                DEBRA ELLIOTT
                                                U.S. Department of Justice

Dated: September 27, 2005
       Hartford, Connecticut