UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AWT) |
| | : | |
| | : | |
| v. | : | September 27, 2005 |
| | : | |
| | : | |
| | : | |
| WALTER A. FORBES | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT WALTER A. FORBES' MOTION TO PRECLUDE THE GOVERNMENT FROM PRESENTING IMPROPER LAY OPINION TESTIMONY AT TRIAL**

(Forbes Retrial Motion *In Limine* No. 3)

CHRISTOPHER J. CHRISTIE
NORMAN GROSS
MICHAEL MARTINEZ
CRAIG CARPENITO
Special Attorneys
U.S. Department of Justice
Room 320
450 Main Street
Hartford, Connecticut 06103
Tel: (860) 240-3387
Fax: (860) 240-3391

**INTRODUCTION**

Raising the same arguments and citing the same authority that he presented in a previous motion *in limine* filed before the first trial (Forbes' Motion *In Limine* No. 1, Docket No. 595, filed April 2, 2004), Forbes again contends that the Government should not be permitted to offer testimony from admitted members of the charged conspiracy that they intentionally engaged in accounting practices, such as using merger reserves to increase CUC's revenues and charging non-merger related expenses to merger reserves, for which they had no basis under their understanding of Generally Accepted Accounting Principles ("GAAP").

Forbes contends, as he did previously, that such testimony constitutes inadmissible lay opinion testimony under Fed. R. Evid. 701.  The parties extensively briefed this issue in advance of the initial trial, and the Court rejected Forbes' arguments and permitted the cooperating coconspirators such as Cosmo Corigliano, Anne Pember, and Steven Speaks to testify that they engaged in accounting practices for which they had no support.  E.g., Tr. 699, 721-22, 726, 734, 751, 753-54, 775-76, 851, 876-77, 991 (Speaks); 2510, 2514, 2950, (Pember); 6365, 6388, 7089, 7642-43, 8435-36 (Corigliano).  In general, Corigliano and Pember testified that they understood the company's accounting policies (a fact), they knew of no factual basis or support for the topside and other charged accounting

machinations (a fact), and they knew that they were making up CUC's financial numbers (a fact).  Forbes' present motion therefore seeks reconsideration of this Court's previous ruling that such testimony was admissible in order to demonstrate that the cooperating witnesses subjectively believed that they were engaged in the conspiracy to commit the accounting fraud that was charged in the indictment, and to prove that the conspiracy and the underlying fraud did in fact take place.

Forbes' present submission presents no new arguments, facts, or authority which demonstrates that this Court erred in its prior ruling, so he has failed to sustain his burden for obtaining reconsideration.  Accordingly, his present motion should be denied for that reason alone.  See Jordan (Bermuda) Investment Co., Ltd. v. Hunter Green Investments Ltd., 2003 WL 21263544, *3 (S.D.N.Y., June 2, 2003)(denying reconsideration where the moving party "failed to meet [the applicable] standard by neither pointing to controlling decisions or data that the court overlooked nor showing that reconsideration is necessary in order to correct a clear error or prevent manifest injustice") (internal punctuation and citations omitted).

In any event, for the reasons set forth in the Government's prior submissions, which are reiterated herein, in opposition to Forbes' prior motion to exclude this testimony, Forbes' efforts to exclude evidence that his co-conspirators had

no basis to believe that their admitted accounting manipulations had any basis in GAAP should be rejected.

## ARGUMENT

I. **As During the Initial Trial, this Court Should Permit the Cooperating Witnesses Who Are Accountants and Who Participated in the Accounting Fraud to Testify to the Fact That They Had No Basis under GAAP to Undertake the Manipulative Accounting Practices Charged in the Indictment.**

   **A. This Court properly admitted the challenged testimony during the first trial because it was based on the witnesses' personal knowledge of facts, and was not improper opinion testimony.**

Contrary to Forbes' past and present claim, FM 8,[1] the challenged testimony is not "opinion" testimony at all for purposes of Rule 701. The challenged testimony was properly admitted because it was based on the witness's "inside information" about how the fraud was executed and why the publicly reported financial results of CUC were fraudulent. Corigliano's and Pember's challenged testimony described their own personal observations and decision-making, and not their opinions. They described what they knew about CUC's fraudulent accounting practices, what they did to advance those practices, why they did so, and that they had no support for those practices. Their challenged testimony concerned events and

---

[1] As used in this and other Government memoranda of law in opposition to this round of Forbes' Pre-Retrial Motions *In Limine*, "FM" refers to Forbes' memorandum of law in support of the particular motion to which the Government's memorandum in opposition is addressed.

conversations in which they personally participated, or personally observed during their years at CUC.  See United States v. Fawaz, 881 F.2d 259, 266-67 (6th Cir. 1989) (accountant's testimony about how defendant's tax return was prepared was admissible because the witness was asked about his own direct knowledge of returns in the context of his knowledge of defendant's personal financial condition at the time).

Contrary to Forbes' claim, FM 9, Corigliano and Pember did not need specialized knowledge to testify that they made up the numbers that found their way into CUC's press releases and financial reports.  They testified primarily about the discrepancy between the numbers that they calculated and the numbers they reported.  When Corigliano testified, for instance, that the membership cancellation reserves for fiscal year 1991, as memorialized on CUC's general ledger, were "$9 million short" (Tr. 6277-78), he was not giving his "opinion" based on "scientific, technical, or other specialized knowledge."  Rather, he was testifying that, by virtue of his position in the CUC accounting department at that time, he had personal knowledge about what the cancellation reserves were supposed to be, based on the historic cancellation rates that CUC had experienced.  Tr. 6242, 6263-68.

Corigliano also had personal knowledge about the amount of cancellation reserves that were memorialized in the CUC

4

general ledger.  Tr. 6269-72.  Subtracting the proper amount of the membership cancellation reserve based on accurate historical cancellation rates from the fraudulently reduced amount of that reserve that the conspirators had actually set aside to yield a shortfall of nine million dollars is not a matter about which "scientific, technical, or other specialized knowledge" is required.  Rather, it is a fact, not an opinion, that derives from third grade level mathematics, for which expert testimony is wholly unnecessary.  See Commentary to 2000 Amendments to Rule 701 (permissible "lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field,'" citing State v. Brown, 836 S.W.2d 530, 549 (Tenn. 1992).

Simply because the conspirators' fraudulent actions also resulted in violations of GAAP does not mean that they had to be qualified as experts before telling the jury what they did, why they did it, and what they understood to be the results of their actions.  Their testimony about relatively straightforward facts and the easily understood inferences arising from those facts did not rely on "scientific, technical, or other specialized knowledge within the scope of Rule 702," and did not amount to improper lay opinion testimony that is prohibited by Rule 701.  See Fed. R. Evid. 701, Advisory Committee's Note, 2000

5

Amendment (revised Rule 701 does not prohibit testimony about "manner of conduct" or "an endless number of items that cannot be described factually in words apart from inferences.").[2]

> **B. To the extent that the cooperating witnesses' testimony involves "opinions," this Court properly admitted that testimony pursuant to Fed. R. Evid. 701.**

To the extent that any of Corigliano's or Pember's testimony expressed an opinion (as opposed to a factual assertion based on a witness's personal knowledge), that opinion was well supported by the witness' business experience, developed during years of employment with CUC and the defendants, and helpful to the jury's understanding of the disputed factual issues.  Any such testimony was not based on any specialized knowledge, expertise, or skill, and so was not subject to the constraints of

---

[2] The Government has previously advanced the following analogy to illustrate this point: a wildlife biologist who conducted a census of the fish in a particular lake could testify, consistent with Rule 701, that he caught, tagged, and released 400 different fish of six inches or more during a one month period, but that he falsely wrote in his report that he counted 700 such fish.  Such testimony would not require specialized knowledge because it is understandable to a lay juror, regardless of whether or not the juror is schooled in ichthyology.  See Soden v. Freightliner Corp., 714 F.2d 498, 510-12 (5th Cir. 1983)(lay witness's conclusion had a rational basis because it would have been apparent to anyone with the same perceptions, knowledge, and experience as the witness).  If however, the witness sought to testify that he had concluded, based on his examination of the fish that he had captured and released, that they had been exposed to certain water-borne toxins, such testimony would be subject to the requirements of Rule 702.  See United States v. 0.59 Acres of Land, 109 F.3d 1493, 1495-96 (9th Cir. 1997) (homeowner's lay opinion about the effects of electromagnetic fields on the value of her home was inadmissible).

Fed. R. Evid. 701.  See Teen-Ed, Inc. v. Kimball Int'l, Inc., 620 F.2d 399, 403 (3d Cir. 1980) (witness's personal knowledge of company's balance sheets acquired in course of his accounting duties "was clearly sufficient under Rule 602 to qualify him as a witness eligible under Rule 701 to testify to his opinion of how lost profits could be calculated and to inference that he could draw from his perception of Teen-Ed's books."); see generally In re Merritt Logan, Inc., 901 F.2d 349, 360 (3d Cir. 1990) (noting that the modern trend favors admission of opinion testimony if founded on witness's personal knowledge and susceptible to cross-examination).

The Advisory Committee's Note to Rule 701 is clear: business executives (such as Corigliano and Pember) can permissibly testify about their companies' financial practices, the manner in which their companies conduct business, and the way in which their companies may have been damaged by tortious or criminal conduct.  This type of testimony is admissible because of the executive's "knowledge and participation in the day-to-day affairs of the business."  Fed. R. Evid. 701, Advisory Committee's Note to 2000 Amendment.  Stated differently, a corporate insider's opinion testimony about the company:

> is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business.  The [2000] amendment [to Rule 701] does not purport to change

7

this analysis.

Advisory Committee's Note to 2000 Amendment.  See also id. ("most courts have permitted the owner or officer of a business to testify to the value of projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert." (emphases added)(citing Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153 (3d Cir. 1993), overruling on other grounds recognized by Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery, 214 F.Supp. 2d 453, 458 (D.N.J. 2002)).

Here, the cooperating witnesses testified about discrepancies between what the company earned and what the company said that it earned.  They did not testify in an expert capacity regarding GAAP.[3]  Their testimony was admissible because it was supported by an adequate foundation, namely their personal and particularized knowledge about CUC's accounting practices and actions.  See Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 265 (2d Cir. 1995) (president of company could testify as to

---

[3] On direct examination, the accountant witnesses from CUC who participated in the conspiracy testified that they had "no support" for various accounting manipulations that they undertook, but did not testify that those manipulations violated GAAP.  E.g. Tr. 699, 991 (Speaks); 4032 (Sabatino); 9764 (Kearney).  To the extent that Pember and Corigliano testified that the manipulative accounting practices at issue in this case violated their understanding of GAAP, that testimony was elicited on cross-examination.  Tr. 3232 (Pember); 8197-99 (Corigliano). Forbes also elicited Pember's testimony on cross-examination that the accounting manipulations in which she participated were "illegal."  Tr. 3441.

8

how lost profits could be calculated since testimony was based on his personal knowledge of the business); Wactor v. Spartan Transp. Corp., 27 F.3d 347, 351 (8th Cir. 1994) (witnesses could testify about the improper procedure of employing lock lines on tows through locks since it was based on their perceptions and experience); Lightning Lube, 4 F.3d at 1175 (company's founder "not required to qualify as an expert to offer opinion testimony concerning [his business's] lost profits."); Williams Enterprises, Inc. v. Sherman R. Smoot Co., 938 F.2d 230, 234 (D.C.Cir. 1991) (broker permissibly testified as a lay witness based on facts, such as account history, of which he had personal knowledge); Merritt Logan, 901 F.2d at 360 ("Mr. Logan's personal knowledge of his business . . . [was] sufficient to make [this] witness[] eligible under Rule 701 to testify as to how lost profits could be calculated."); see generally DIJO, Inc. v. Hilton Hotels Corp., 351 F.3d 679, 685 (5th Cir. 2003) (recognizing that the 2000 amendment to Federal Rule of Evidence 701 "'did not place any restrictions on the pre-amendment practice of allowing business owners or officers to testify based on particularized knowledge derived from their position.") (emphases added).[4]

---

[4] Forbes' continued reliance on Wechsler v. Hunt Health Sys. Ltd., 198 F.Supp.2d 508 (S.D.N.Y. 2002) is misplaced, as this Court previously concluded. In that case, the objectionable affidavit from the accountant Davidson was offered to prove that the defendant company's disputed receivables were properly

Even if Corigliano or Pember could have been qualified as experts, they were still not precluded from giving non-expert testimony based on their personal knowledge about CUC's accounting practices. See Teen-Ed, 620 F.2d at 403 ("The fact that Zeitz [the company's accountant] may have been able to qualify as an expert witness <u>on the use of accepted accounting principles</u> in the calculation of business losses should not have prevented his testifying on the basis of his knowledge of appellant's records about how lost profits could be calculated from the data contained therein.")(emphasis added).

Forbes again erroneously contends in a footnote, FM 12, n. 7, as he did before the first trial, that the challenged testimony does not satisfy the "helpfulness" requirement for expert opinion testimony established by Fed. R. Evid. 701. Forbes contends that the challenged testimony is not helpful because Corigliano's "personal opinion on the legitimacy of the accounting adds nothing to the jury's consideration of that issue." Id. Forbes' argument misconceives the purpose of the challenged testimony, which is not to help the jury understand that the accounting manipulations did in fact violate GAAP. Rather Corigliano's personal understanding that his accounting

---

represented under the applicable accounting rules.  Davidson proposed to testify in Wechsler based upon his "'understanding as a Texas certified public accountant.'"  Id. at 529.  The testimony at issue here will not articulate similar opinions that require accounting expertise.

manipulations violated GAAP will be helpful to the jury's resolution of several other important factual matters.

First, because the evidence demonstrates that Corigliano believed that he was engaged in a scheme to make accounting entries that had no support, it tends to prove that Corigliano did in fact participate in the charged scheme to do that very thing. Indictment, Count 1, ¶ 30-33. Evidence that Corigliano participated in such an agreement obviously tends to prove that the agreement charged in the indictment existed, which is an element of the Count 1 conspiracy with which Forbes is charged. Tr. 16293-95 (initial trial jury instructions).

Additionally, evidence that Corigliano subjectively believed that the accounting manipulations at issue had no support tends to prove that Forbes, a non-accountant who supposedly relied on Corigliano and other CUC accountants for advice on accounting matters, Tr. 97 (Forbes' opening); Tr. 13538-40, 13544, 13632, 13664-65, 13667, 14088, 14119 (Forbes' testimony), also did not act in "good faith" when, according to Corigliano, Forbes participated in decisions regarding the challenged accounting practices. See United States v. Fowler, 932 F.2d 306, 312 (4th Cir. 1991) (lay opinion testimony was "helpful to the jury in determining the nature and extent of Fowler's knowledge about the documents and whether he acted through negligence, accident, inadvertence, mistake, or

11

confusion.").

This is particularly relevant since Forbes obtained a "good faith" instruction during the first trial, Tr. 16303-05, and presumably will do so during the retrial. That instruction requires the Government to demonstrate that Forbes did not act in "good faith," and explains that the jury cannot find that Forbes acted with guilty knowledge if he acted in good faith. That Corigliano, Forbes' corporate subordinate, advisor on accounting, and alleged co-conspirator, understood his conduct to be improper is therefore relevant to prove the second element of conspiracy, that Forbes knowingly and willfully entered into an agreement with Corigliano and others to violate the law. Tr. 16295-300. See United States v. Ceballos, 340 F.3d 115, 123 (2d Cir. 2003) ("In order to convict a given defendant of conspiracy, the government must prove that he knew of the conspiracy and joined it with the intent to commit the offenses that were its objectives.") (internal citation omitted); United States v. Aleskerova, 300 F.3d 286, 292 (2d Cir. 2002) ("To establish membership in a conspiracy, the government must prove that the defendant knowingly engaged in the conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy.")(internal quotation marks omitted).[5]

---

[5] As the Government previously explained, the cases cited by Forbes regarding the helpfulness requirement of Rule 701 are readily distinguishable. Thus, in United States v. Rea, 958 F.2d

12

## II. As During the First Trial, the Cooperating Witnesses Will Not Speculate about Forbes' Guilty State of Mind.

Forbes also contends that this Court should preclude opinion testimony by the cooperating witnesses regarding his "knowledge, intent, or state of mind." He identifies no instances of such testimony during the first trial, FM 12-19, and indeed none occurred. As the Government explained when Forbes' raised this concern before the initial trial, the Government does not intend to elicit any such testimony during its direct examination.[6] Rather, Corigliano will permissibly testify about his own personal knowledge of conversations and other events which provide direct and circumstantial proof of Forbes' knowledge of the charged conspiracy.[7]

---

1206, 1219 (2d Cir. 1992), the Second Circuit determined that lay opinion testimony was improperly admitted because the only thing to which the witness could testify was that the defendant "had to" know (or "must have known") about the methods used to achieve the conspiracy's illegal object. The court held such speculation "was not 'helpful' within the meaning of Rule 701." Id. Here, by contrast, the Government's witnesses, many of whom are CPAs or other accountants, were familiar with CUC's accounting practices and directly participated and helped to execute the very fraud about which they will testify. Their testimony will be far more helpful to the jury than the speculation conveyed to the jury in Rea.

[6] Likewise, Forbes should not be permitted to elicit testimony from any other witness that he "could not have known" about the fraud.

[7] As the Government previously explained, Forbes' reliance on Hester v. BIC Corp., 225 F.3d 178, 185 (2d Cir. 2000) is misplaced. There, the Second Circuit rejected lay witness testimony constituting "naked speculation" about an actor's motivation for engaging in a disputed activity. 225 F.3d at 185.

13

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that this Court deny Forbes' Pre-Retrial Motion *In Limine* No. 3.

    Respectfully submitted,

    CHRISTOPHER J. CHRISTIE
    Special Attorney
    U.S. Department of Justice

    /s/ Norman Gross

    NORMAN GROSS
    MICHAEL MARTINEZ
    CRAIG CARPENITO
    Special Attorneys
    U.S. Department of Justice

Dated: September 27, 2005
Hartford, Connecticut

---

The court explained why Hester's witnesses were not qualified to offer lay opinion testimony about the reason for plaintiff's termination, which led to her Title VII lawsuit:

> None of Hester's four witnesses was involved in [defendant's] decision-making processes, or had personal knowledge of it. Nor had they any basis for knowing whether Hester was adequately performing her duties as a Group leader. Their testimony about Beck's racist motivations was not "focused on objective fact," but instead consisted of the witnesses' subjective impressions that Beck's condescension to Hester was attributable to Hester's race.

Id. at 184. Here, by contrast, Corigliano will testify, as he did during the first trial, that he met periodically with Forbes precisely to make decisions about, *inter alia*, how to manipulate the merger reserves to increase operating income. Corigliano's personal knowledge of his own conspiratorial conversations with Forbes is a far cry from the "naked speculation" that was improperly admitted in Hester.

14

CERTIFICATE OF SERVICE

      The undersigned certifies that on this day I caused to be served copies of the foregoing upon the following by hand delivery:

Barry S. Simon, Esq.
Williams & Connolly LLP
Residence Inn
942 Main Street
Hartford, CT 06103


                                      /s/ Debra Elliott
                                      DEBRA ELLIOTT
                                      U.S. Department of Justice

Dated: September 27, 2005
       Hartford, Connecticut