UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AWT) |
| | : | |
| | : | |
| v. | : | September 27, 2005 |
| | : | |
| | : | |
| | : | |
| WALTER A. FORBES | : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT WALTER A. FORBES' MOTION TO (1) PRECLUDE THE GOVERNMENT FROM REFERRING TO ROBERT TUCKER'S HANDWRITTEN NOTES AS BOARD "MINUTES" AND (2) PRECLUDE THE GOVERNMENT FROM PRESENTING ANY EVIDENCE, CROSS-EXAMINATION OR ARGUMENT CONCERNING THE DIFFERENCES BETWEEN GX 5, GX 453, AND GX 77

(Forbes Retrial Motion *In Limine* No. 18)

CHRISTOPHER J. CHRISTIE
NORMAN GROSS
MICHAEL MARTINEZ
CRAIG CARPENITO
Special Attorneys
U. S. Department of Justice
Room 320
450 Main Street
Hartford, Connecticut 06103
Tel: (860) 240-3387
Fax: (860) 240-3391

**ARGUMENT**

**I. The Government does not intend to refer to Robert Tucker's handwritten notes, GX 5, as "draft minutes."**

Forbes contends that, during the initial trial, the Government improperly referred on several occasions to GX 5 -- CUC corporate secretary Robert Tucker's hand-written notes which memorialized certain matters that were discussed during the April 1997 CUC Board meeting and that Tucker later incorporated into his draft minutes of the Board meeting -- as "draft minutes." Without conceding that any reference that the Government made to the notes during the initial trial was in any way misleading or otherwise improper, the Government does not intend to refer to GX 5 as "draft notes" during the retrial.

**II. This Court should again reject Forbes' objections to the admission of documents and evidence regarding the discrepancy between Tucker's hand-written notes and the final CUC Board minutes.**

Forbes argues that all evidence regarding any discrepancies between: (1) Tucker's hand-written notes, GX 5, memorializing certain events during the April 1997 CUC Board of Directors meeting; (2) draft board minutes prepared by Tucker, GX 453; and (3) the final Board minutes, GX 77, should be excluded as irrelevant or alternatively, as overly prejudicial under Fed. R. Evid. 403.  This Court previously admitted all of those documents into evidence, and the Government mentioned GX 5 during summation.  Tr. 14916.  Forbes has failed to show that this Court should reach a different result for the retrial.  Although the

Government has not yet determined whether it will seek to admit GX 5, 453, and/or 77 during the retrial, this Court should preserve the Government's opportunity to do so and deny Forbes' motion.

The Government presented evidence at the initial trial that during the April 1997 meeting, Board member Robert Davidson raised questions about the large amount of the reserve that had been set aside for the Ideon and Software acquisitions, that Shelton and Corigliano had initially responded to Davidson's inquiries, but that Forbes had reacted strongly and negatively when Davidson pressed his questions about the merger reserves. Tr. 5345-55, 5556-67, 7004-10.

Robert Tucker attended that meeting in his capacity as the corporate secretary of the CUC, and took hand-written notes of the proceedings, which were admitted as GX 5.  Tr. 12653-54. Those notes stated, in part, "Cos [Corigliano] went over year end figures, actual versus budget, and by business units.  Mr. Davidson asked certain questions concerning the company's reserve policy which were answered by Cos and Kirk [Shelton]." GX 5, Tr. 5358.  Tucker then had a type-written draft of the minutes prepared, which contained the following two sentences:

> Mr. Davidson asked certain questions concerning the reserves shown on the Company's financial statements and the Company's policies regarding reserves.  Mr. Corigliano and Mr. Shelton responded to those inquiries.

Tr. 12656-58; DX 1089.  Tucker then sent a copy of the draft

minutes to then CUC General Counsel Amy Lipton.  Tr. 11526-37; GX 453.  On the version of GX 453 that was sent to Lipton, the two sentences involving Davidson's questions about the merger reserve were struck out by hand-writing.  Tr. 14322-24; GX 453.

When Tucker prepared a second draft of the minutes, he edited out those two sentences, although he claimed at trial that he could not recall why he had done so.  Tr. 12662-69, 12701-02, 12717-19; DX 841.  Tucker then sent the version of the draft minutes without the two sentences to the Board members for approval.  Tr. 12662-66; DX 841.

Forbes claims that this Court should exclude the three documents and any argument regarding their differences based on defense-favorable evidence that was elicited during the first trial, and Forbes' self-serving spin on that evidence.  First, he contends that the omitted sentences from the draft minutes "would not place anyone on notice of the fraud," FM 3, and was not a "red flag."  FM 4.  The Government, however, does not contend that the two omitted sentences, standing alone, were a "red flag" for the fraud.  The jury can reasonably conclude, however, that the intentional elision of those sentences after the initial draft minutes were sent to Amy Lipton, was undertaken because Lipton or someone else at CUC did not want to publicize through the final board minutes the fact that Bob Davidson had raised questions about the Ideon merger reserve.

The charged conspiracy in this case involved the intentional inflation of the Ideon merger reserve beyond the amount needed to pay the reasonably anticipated costs of CUC's acquisition of Ideon and the two software companies, so that the excess could be used to improperly inflate CUC's earnings. Indictment, Count 1, ¶¶ 23-36, 41-43.  The conspirators who were engaged in that activity would not want to draw any added attention to Davidson's embarrassing questions during the Board meeting about why the Ideon merger reserve was so large.  The fact that Tucker removed the two sentences from the draft minutes after sending that draft to Amy Lipton, Forbes' corporate subordinate, is evidence that Lipton or someone above her in the CUC hierarchy wanted those sentences removed.  That Lipton was not identified by the Government as a member of the conspiracy does not mean that she was unwilling to do the bidding of someone else who was.

Forbes points out that Tucker denied that the sentences were removed for an "improper reason," and that his testimony was not "refuted" by any other witness.  FM 4.  Tucker was a partisan of Forbes, however, Tr. 12676-77, 12719-23, and the jury was entitled to discredit his self-serving and Forbes-serving testimony whether it was refuted or not.  Kiss v. Kmart Corp., 2001 WL 568974, *3 (E.D.Pa., May 22, 2001)("A jury may accept or reject testimony, even though the testimony is uncontradicted or

4

unrefuted."); see also United States v. Mangual-Corchado, 139 F.3d 34, 46 n. 26 (1st Cir. 1998)(rejecting the defendant's claim which was based on the testimony of a witness whom the jury could simply choose to disbelieve).[1]

      Forbes next claims that the evidence should be excluded because, even though there is nothing improper about editing draft Board minutes, the Government "seeks to place a conspiratorial spin on this conduct."  FM 5.  The evidence from the first trial allowed the jury to find that Forbes reacted angrily to Davidson's inquiries about a matter that was at the heart of the conspiracy, the intentional inflation of the Ideon merger reserve, and it was precisely that inquiry that was edited

---

[1] Forbes points out that all of the Board members who were present during the April 1997 would have heard the exchange between Bob Davidson and Forbes regarding the Ideon merger reserve, and that Tucker allegedly sent the first draft of the Board minutes, containing the two subsequently deleted sentences, to E&Y.  FM 3-4.  Removal of the two sentences about the merger reserves from final Board minutes meant that anyone outside of the Board who had occasion to review the final minutes would never know that the subject of the merger reserves had been raised.  Although whomever wanted the two sentences removed from the first draft of the minutes could not go back in time and prevent Davidson's inquiry during the Board meeting from taking place, elimination of the two sentences from the final version of the minutes at least made it less likely that information about Davidson's inquiry would spread beyond the Board.  That Tucker sent the first draft of the minutes to E&Y before removing the two sentences merely shows that Tucker was not then attempting to conceal the fact that the issue had been raised, consistent with the fact that, as Forbes points out, FM 4, Tucker was not a member of the conspiracy.  It was only after Tucker sent the first draft of the minutes to E&Y that someone decided to have those sentences removed.

5

out of the draft minutes by Tucker and another person at CUC who, like Tucker, might have been loyal to and/or subservient to Forbes.  That evidence is sufficient to permit the jury to infer that Forbes or someone acting at his behest sought to limit the spread of information suggesting that the merger reserves were problematic.

Forbes' claim that this evidence should be excluded because the editing of draft Board minutes is not inherently nefarious should be rejected.  That the jury need not necessarily draw an inference conducive to a finding of guilt from relevant evidence is hardly grounds to exclude that evidence.  United States v. MacPherson, __ F.3d __, 2005 WL 2212043, *6 (2nd Cir., September 13, 2005)("The possibility that inferences consistent with innocence as well as with guilt might be drawn from circumstantial evidence is of no matter to sufficiency analysis because it is the task of the jury, not the court, to choose among competing inferences.")(internal quotation marks omitted).

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that this Court deny Forbes' Pre-Retrial Motion *In Limine* No. 18.

                                      Respectfully submitted,

                                      CHRISTOPHER J. CHRISTIE
                                      Special Attorney
                                      U.S. Department of Justice

                                      /s/ Norman Gross

                                      NORMAN GROSS
                                      MICHAEL MARTINEZ
                                      CRAIG CARPENITO
                                      Special Attorneys
                                      U.S. Department of Justice

Dated: September 27, 2005
Hartford, Connecticut

CERTIFICATE OF SERVICE

    The undersigned certifies that on this day I caused to be served copies of the foregoing upon the following by hand delivery:

Barry S. Simon, Esq.
Williams & Connolly LLP
Residence Inn
942 Main Street
Hartford, CT 06103


    /s/ Debra Elliott
    DEBRA ELLIOTT
    U.S. Department of Justice

Dated: September 27, 2005
       Hartford, Connecticut