UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AWT) |
| | : | |
| | : | |
| v. | : | September 27, 2005 |
| | : | |
| | : | |
| | : | |
| WALTER A. FORBES | : | |

GOVERNMENT'S OPPOSITION TO DEFENDANT WALTER A. FORBES' MOTION FOR AN ORDER REQUIRING THE GOVERNMENT TO CONFER USE IMMUNITY ON STUART BELL

(Forbes Retrial Motion No. 7)(FILED UNDER SEAL)

CHRISTOPHER J. CHRISTIE
NORMAN GROSS
MICHAEL MARTINEZ
CRAIG CARPENITO
Special Attorneys
U. S. Department of Justice
Room 320
450 Main Street
Hartford, Connecticut 06103
Tel: (860) 240-3387
Fax: (860) 240-3391

**ARGUMENT**

Forbes again moves, as he did during the first trial, to compel the Government to immunize Stu Bell in order to overcome his anticipated assertion of his privilege against self-incrimination and make him available as a defense witness in this case. See Docket Nos. 1207 and 1210, filed September 27, 2004, and Docket No. 1252, filed October 4, 2004. As this Court properly concluded during the first trial, Forbes failed to sustain his burden of demonstrating an entitlement to this extraordinary relief. See Tr. 13698-13705, 14550. This Court should reject what is in effect a motion for reconsideration of this Court's prior ruling. See Jordan (Bermuda) Investment Co., Ltd. v. Hunter Green Investments Ltd., 2003 WL 21263544, *3 (S.D.N.Y., June 2, 2003)(denying reconsideration where the moving party "failed to meet [the applicable] standard by neither pointing to controlling decisions or data that the court overlooked nor showing that reconsideration is necessary in order to correct a clear error or prevent manifest injustice") (internal punctuation and citations omitted).

**A.   The Government Was Not Required to Confer Immunity on a Defense Witness Absent Extraordinary Circumstances and the Court Was Not Empowered to Grant Judicial Immunity.**

As the Second Circuit has explained:

> The statute which confers the power to grant immunity in court and grand jury proceedings, 18 U.S.C. § 6003(a), gives the district courts the power to issue orders requiring individuals to give testimony only "upon the request of the United States attorney for such district."

United States v. Bahadar, 954 F.2d 821, 825 (2d Cir. 1992) Accordingly, "[a]bsent extraordinary circumstances, the Due Process Clause imposes no requirement that defense witness immunity be ordered whenever it seems fair to grant it." United States v. Diaz, 176 F.3d 52, 115 (2d Cir. 1999), quoting Blissett v. Lefevre, 924 F.2d 434, 441 (2d Cir.1991) and United States v. Turkish, 623 F.2d 769, 777 (2d Cir.1980); see also United States v. Dolah, 245 F.3d 98, 105 (2d Cir. 2001), abrogated on other grounds, Crawford v. Washington, 541 U.S. 36 (2004). Nor can the district court confer immunity on a proposed defense witness over the Government's objections. See Dolah, 245 F.3d at 105 n.5; Bahadar, 954 F.2d at 824-27 (same).

A district court may not compel the Government to confer immunity on a proposed defense witness unless the defendant satisfies a rigorous three-part test:

> First, the district court must find that the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the fifth amendment. Second, the witness's testimony must be material, exculpatory, and not cumulative. Third, the testimony must be unobtainable from any other source.

Bahadar, 954 F.2d at 826. See also Dolah 245 F.3d at 105, citing United States v. Burns, 684 F.2d 1066, 1077 (2d Cir. 1982) (three part test must be satisfied to compel the United States to grant immunity); United States v. Washington, 398 F.3d 306, 310 (4th Cir. 2005)(a "defendant bears a heavy burden when seeking to have

2

the district court compel the grant of immunity")(citing cases). Forbes has utterly failed to meet this heavy burden.[1]

First and most significantly, Forbes has utterly failed to demonstrate that the Government "engaged in discriminatory use of immunity in this case to gain a tactical advantage" over the defense. As the Government explained during the first trial, it did not immunize any of the witnesses in this case. See Tr. 13703-04.

Additionally, to overcome the Government's "broad discretion" regarding immunity grants, and to demonstrate that the Government engaged in discriminatory use of immunity, Forbes must make "a substantial evidentiary showing that the government intended to distort the judicial fact-finding process." United States v. Campbell, 410 F.3d 456, 463 (8th Cir. 2005), quoting United States v. Washington, 318 F.3d 845, 855 (8th Cir. 2003); Williams v. Woodford, 384 F.3d 567, 600 (9th Cir. 2004). In this

---

[1] As the Second Circuit has explained, the strict limitations against judicially-compelled immunity grants is necessary to vindicate two purposes:

> In addition to ensuring that prosecutorial decisions concerning whom to prosecute and what evidence to present at a criminal trial will not be lightly interfered with by the judiciary, it reduces the possibility of cooperative perjury between the defendant and his witness. A person suspected of crime should not be empowered to give his confederates an immunity bath.

Blissett v. Lefevre, 924 F.2d 434, 441-42 (2d Cir. 1991)(internal punctuation and citations omitted).

regard, it is simply not enough, as Forbes has done, to point out that certain witnesses such as Corigliano and Pember received transactional immunity for some possible criminal charges in exchange for their guilty pleas and cooperation, and others, such as Kearney, who voluntarily provided information during a proffer session, was not prosecuted, whereas Bell, who did none of those things, was not immunized so that he could testify as a defense witness.  Campbell, 410 F.3d at 463 ("the mere failure to grant immunity to a defense witness, even if coupled with a grant of immunity to a prosecution witness, [does not] create a substantial showing that the government intended to distort the fact-finding process").

Forbes does not contend, and cannot show, for instance, that the Government "made repeated threats or warnings to [Bell]" to prevent him from testifying.  Id.; Williams v. Woodford, 384 F.3d at 601-02 ("Undue prosecutorial interference in a defense witness's decision to testify arises when the prosecution intimidates or harasses the witness to discourage the witness from testifying, for example, by threatening the witness with prosecution for perjury or other offenses"), citing United States v. Angiulo, 897 F.2d 1169, 1192 (1st Cir. 1990) and United States v. Morrison, 535 F.2d 223, 229 (3d Cir. 1976).  Forbes cannot do so because the Government did not engage in any action that could possibly constitute overreaching, because it did not force Bell

4

to claim that he would invoke his Fifth Amendment privilege if called to testify by the defense.  <u>Moreno-Ortiz v. United States</u>, 983 F.2d 15, 17 (2d Cir. 1993) (stating that compelled immunity is not available absent "prosecutorial overreaching forcing the witness to invoke the Fifth Amendment").  Rather, Bell and his lawyer apparently made that decision on their own.  <u>Washington</u>, 398 F.3d at 310-311 (district court properly declined to compel the Government to immunize a witness so that he could testify for the defense, where the defendant "proffered no evidence that [the witness] had been coerced into asserting his Fifth Amendment privilege by threats of prosecution").  Unlike the situation in <u>Washington</u>, there is no evidence here that the Government even merely warned Bell that he might be subject to prosecution if he testified as a defense witness in this case.

   That Forbes' defense would in theory have been advanced by Bell's testimony does not demonstrate that the Government acted improperly by declining to immunize Bell.  <u>United States v. Ballistrea</u>, 101 F.3d 827, 837 (2d Cir. 1996) (affirming denial of request to compel Government to immunize proposed defense witnesses where "[n]othing in the record indicates that the Government had granted immunity to its witnesses, and refused to grant immunity to defendant's witnesses, in order to gain a tactical advantage").  After all, a defendant such as Forbes can always assert that his defense would have been advanced if the

5

Government immunizes a proposed defense witness who refuses to testify on Fifth Amendment grounds. Rather, the issue is whether the Government is acting in bad faith by refusing to immunize a defense witness under the same circumstances that it has immunized a prosecution witness. Dolah, 245 F.3d at 105 (to compel the Government to immunize a proposed defense witness, a defendant must demonstrate, *inter alia,* that "the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the Fifth Amendment").

Forbes contends that the Government immunized witnesses such as Kearney who implicated Forbes, but has improperly declined to immunize Bell because he will exonerate Forbes. FM 8-9. Even characterizing the Kearney proffer agreements and Corigliano, Pember, and Sabatino cooperation agreements as "immunity grants," as Forbes does, does not demonstrate the kind of invidious discrimination against Forbes that compelled immunity is available to redress. "We have rejected the argument that immunity must be granted to defense witnesses in order to redress a supposed government advantage over the defense." Diaz, 176 F.3d at 115 (internal punctuation omitted). Rather, it is "[o]nly when a prosecutor has abused the government's ability to grant immunity by using it in a discriminatory fashion for the purpose of gaining a tactical advantage does due process require

6

a grant of immunity for a defense witness." Id. [2]

Forbes has failed to demonstrate that the Government's immunity decisions were improperly motivated to prevent Forbes from obtaining exculpatory evidence, because the Government has made decisions and reached agreements with prospective witnesses in an even-handed manner based on whether or not a witness has been forthcoming, and not based on the content of the witness's account.  Thus, Pember and Sabatino were both permitted to plead guilty to reduced charges and obtain transactional immunity for other charges even though Pember never claimed that she had discussed the fraud with Forbes, and Sabatino affirmatively denied that he had done so.  Tr. 4075, 4641-42, 4645-59, 4662-64, 4747-48, 4809-10, 4830-31, 4835-36, 4845, 5137-38.[3]  While the Government reached plea or proffer agreements with all persons

---

[2] The notion that the Government should immunize defense witnesses whenever it has had to use its immunity power to obtain the testimony of prosecution witnesses, and thus provide a sort of "balance of immunity power" between the parties was firmly rejected by the Second Circuit.  Turkish, 623 F.2d at 774-75 (explaining that "a criminal prosecution, unlike a civil trial, is in no sense a symmetrical proceeding" owing to the "substantial affirmative obligations" assumed by the prosecution that do not apply to the defense; "where accuser and accused have inherently different roles, with entirely different powers and rights, equalization is not a sound principle on which to extend any particular procedural device" such as authority to confer immunity on reluctant witnesses).

[3] Forbes' assertion that the Government "immuniz[ed] where necessary any alleged coconspirator that the Government can convince to testify against Forbes," FM 9, is therefore refuted by the record.

who were willing to speak truthfully to the Government about what they knew about the fraud, the Government did not immunize any person who (like Bell) refused even to speak to the Government (or in Bell's case, even to the Audit Committee investigators) concerning what they knew about the accounting fraud which endured for years while Bell was the CFO of CUC.  The Government never denied Bell an opportunity to enter into a cooperating plea agreement (like Corigliano, Pember and Sabatino) or to provide a proffer to the Government pursuant to a proffer agreement (like Kearney).  Because Bell unilaterally declined to enter into any such arrangements, the Government did not engage in any conduct vis-a-vis Bell that was designed to gain a tactical advantage over Forbes at trial.[4]  Blissett v. Lefevre, 924 F.2d 434, 442

---

[4]   Forbes contends that the Government has a "trivial interest" in prosecuting Bell at this point, and that the Government could prosecute Bell notwithstanding a grant of immunity in this case, so the Government's interest does not overcome Forbes' supposed need for Bell's testimony.  FM 11-12.  The fact that Bell has been directly implicated in the fraud is reason enough to show that the Government's decision not to immunize him was not the result of improper gamesmanship against Forbes.  United States v. Shandell, 800 F.2d 322, 324 (2d Cir. 1986) ("Where, as here, the witness herself is a prosecution target, there can be no claim of discrimination or overreaching.") The decisions about whether to pursue an investigation, the manner in which to pursue it, whether to present charges to a grand jury, what charges to present, and when to present them are solely within the province of the Department of Justice.  United States v. George, 363 F.3d 666, 672 (7th Cir. 2004)(the Government permissibly exercised its discretion not to immunize a proposed defense witness who was involved in the charged fraudulent schemes, where "the government would gain nothing and the immunity would hinder future actions").

(2d Cir. 1991)("Only when a prosecutor has abused the government's ability to grant immunity by using it in a discriminatory fashion for the purpose of gaining a tactical advantage does due process require a grant of immunity for a defense witness . . . The number of witnesses immunized, without more, does not support a finding of this type of misconduct.") (internal punctuation omitted).

      Forbes contends that this Court should compel the Government to immunize Bell even if he cannot sustain his burden of demonstrating that first and most difficult prong of the Second Circuit test for compelled immunization.  He points to no authority which holds that a district court has such authority.  Indeed, the Second Circuit has repeatedly affirmed the denial of a defense request for compelled immunity where the defendant failed to establish the first prong, without even considering the other two factors.  See Bahadar, 954 F.2d at 826 (affirming denial of request for compelled immunity where the defendant failed to "vault the first hurdle" of the three-part test, and not addressing the second and third prongs); United States v. Pinto, 850 F.2d 927, 935 (2d Cir. 1988)("Since we have found no error in the district court's finding that there was no prosecutorial overreaching, appellants' claims of error as to both motions for immunity also must fail.").  Because Forbes cannot point to any witness who received preferential immunity

treatment from the Government compared to Bell, he cannot satisfy the first prong of the Second Circuit test for compelled immunity, and his request was properly denied for that reason alone.  For that reason, Forbes' contentions that this case presents "exceptional circumstances" which justify compelled immunity even in the absence of Government overreaching to gain a tactical advantage over the defense, FM 10-15, need not be addressed.

In any event, Forbes has failed to satisfy the second requirement for compelled immunity by showing that if immunized, Bell would provide testimony that is "exculpatory."  See Bahadar, 954 F.2d at 826.  Bell's supposed denial that he did not commit the charged fraud with Corigliano hardly demonstrates that Forbes did not commit those crimes with Corigliano.  Indeed, although Corigliano testified that he repeatedly discussed the fraud with Bell before Corigliano became CFO, e.g., Tr. 6245, 6251, 6298-6300, 6322-23, 6343-61, 6367-68, 6372, 6397-6400, 6412-13, 6424, 6427-30, and repeatedly discussed the fraud with Forbes after Corigliano became CFO, e.g., Tr. 6455-57, 6520, 6571-72, 6588-90, 6605, 6714-18, 6776-77, 6783-84, 6792, 6825-28, 6831, 6834, 6891, 6951, 6957-58, 7085-86, 7093-94, Corigliano did not testify that he discussed the fraud with both Bell and Forbes at the same time.  Even assuming that an immunized Bell would testify, as Forbes contends, that Bell did not commit the charged fraud, that

testimony does not implicate Corigliano's testimony that he discussed the fraud with Forbes in Bell's absence.

At most, Bell's supposed denial of complicity in the fraud merely contradicts one aspect of Corigliano's testimony without exculpating Forbes.  Forbes points to no authority which holds that the Government can be compelled to immunize a witness whose relevant testimony does not exculpate the accused, but merely contradicts the testimony of a prosecution witness regarding facts which the jury need not find in order to convict. See United States v. Rivera, 971 F.2d 876, 887 (2d Cir. 1992) (affirming the refusal to immunize a proposed defense witness who would have contradicted the testimony of two prosecution witnesses; the defendant failed to establish "the requirements that our decisions have consistently required to compel a governmental grant of immunity, and it is clear that they were not satisfied with respect to the peripheral testimony assertedly available from [the proposed defense witness"); United States v. Praetorius, 622 F.2d 1054, 1064 (2d Cir. 1979)(affirming the district court's discretionary determination not to compel the Government to immunize a defense witness whose proposed testimony "merely related to the credibility of a [prosecution] witness . . . . [since] the issue of witness credibility, particularly in the factual context presented here, is a collateral matter and does not rise to the kind of 'extraordinary circumstance' which would

11

compel government immunization of a defense witness.").

Additionally, Forbes has failed to demonstrate that, if immunized, Bell would provide even the denials which Forbes' lawyers contend that Bell's lawyer said that Bell would provide. Forbes cites no case in which the Government was compelled to immunize a proposed defense witness merely because defense counsel submitted a declaration purporting to describe what the witness's lawyer claims his client would do if immunized. Williams v. Woodford, 384 F.3d at 601 n.13 ("We have previously indicated that satisfaction of the relevance prong requires the defendant to offer proof of the substance of a defense witness's testimony beyond the defendant's or defense counsel's unsupported assertions")(citing cases).

Indeed, the contention that Bell's lawyer purportedly told Forbes' counsel -- in an off the record conversation -- that his client (Bell), if immunized, would deny committing fraud at CUC, is hardly the type of compelling "evidence" that justifies the extraordinary remedy of compelled immunity. First, Forbes has failed to show that Bell himself, as opposed to Bell's lawyer, has ever provided any information that would benefit Forbes' defense. To the contrary, when provided with an opportunity to exonerate not only Forbes but himself, Bell repeatedly declined to even speak to the investigators from the Cendant Audit Committee regarding the fraud. "Report to the

12

Audit Committee of the Board of Directors of Cendant Corporation," August 24, 1998, pp. 4-5, n.8.[5]

In this context, Forbes' proffer does little to demonstrate that Bell would actually give helpful defense testimony in this case. Bell's lawyer had nothing to lose and everything to gain by claiming for public consumption that his client, who was apparently planning to assert his Fifth Amendment privilege, did nothing wrong. Thus, Forbes has failed to satisfy the second prong of the three part test.

Finally, Forbes can not demonstrate that the information he sought from Bell could not be obtained without immunizing Bell. Forbes has consistently declined to ask this Court to make a finding (based on an *in camera* submission by Bell) that Bell could not carry his burden of demonstrating a viable risk that he would incriminate himself if he testified at this trial. United States v. Edgerton, 734 F.2d 913, 919 (2d Cir. 1984)("The mere assertion of the [Fifth Amendment] privilege, however, by the one whose testimony is sought, based on his reasonable belief, is not enough. . . . It is for the court to say whether his silence is justified.") quoting Hoffman v. United States, 341 U.S. 479, 486 (1951). There is certainly nothing in Bell's supposed denial of any involvement in the

---

[5] Like Bell, Corigliano and Pember also declined to speak to Audit Committee investigators id. at 4, nn. 5 and 6, but they later admitted that they were deeply involved in the fraud.

charged accounting fraud which Forbes' claims that he wants to elicit that would incriminate Bell.  Forbes' failure to date to ask this Court to determine whether or not Bell has a viable Fifth Amendment privilege regarding anything that would be elicited during his testimony in this case suggests that Forbes is more interested in preserving a claim that he was wrongfully denied Bell's testimony than in obtaining the testimony itself.  Additionally, Forbes' unwillingness to challenge Bell's claimed invocation of the privilege suggests that, notwithstanding Forbes' supposed need for Bell's testimony, Forbes has some unstated interest in protecting Bell from testifying without immunity.  Such coordination between Bell and Forbes raises concerns about corroborative perjury that the strict limitations against judicially-compelled perjury are designed to prevent. Blissett v. Lefevre, 924 F.2d 434, 441-42 (2d Cir. 1991).[6]

---

[6] Twenty-five years ago the Second Circuit stated that "[c]laims for defense witness use immunity have been uniformly rejected by this Court," United States v. Turkish, 623 F.2d 769, 772 (2d Cir. 1980), and Forbes has not identified any intervening cases in which the Court of Appeals has either approved or required a grant of defense use immunity.

Notably, the only case cited by Forbes in which a court in this Circuit directed the Government to immunize a proposed defense witness or face sanctions is United States v. De Palma, 476 F.Supp. 775 (S.D.N.Y. 1979).  Forbes declines to mention that, on the Government's appeal from the district court's immunity order, the Second Circuit concluded that its intervening decision in Turkish had "significantly undercut the analytical foundation" of the immunity decision in De Palma. United States v. Horwitz, 622 F.2d 1101, 1105 (2d Cir. 1980).  Because the case was remanded for the district court to reconsider a separate

Forbes has offered no reason for this Court to reverse its well reasoned ruling during trial, rejecting this claim.

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that this Court deny Forbes' Pre-Retrial Motion No. 7.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
Special Attorney
U.S. Department of Justice

/s/ Norman Gross

NORMAN GROSS
MICHAEL MARTINEZ
CRAIG CARPENITO
Special Attorneys
U.S. Department of Justice

Dated: September 27, 2005
Hartford, Connecticut

---

suppression order, the Court of Appeals did not have occasion to reverse the immunity order in De Palma/Horwitz. Nevertheless, the appellate court strongly suggested that the district court reconsider and reverse its immunity decision in light of Turkish. 622 F.2d at 1106. See United States v. Todaro, 744 F.2d 5, 9 n. 3 (2d Cir. 1984)(noting that "[i]n the wake of Turkish, this Court has regularly upheld district court denials of requests for defense witness immunity, and has remanded for reconsideration in light of Turkish a district court order suppressing testimony of a government-immunized witness unless use immunity was granted to a defense witness" citing De Palma). Accordingly, the district court's opinion in De Palma provides a very slender reed in support of Forbes' claim.

15

CERTIFICATE OF SERVICE

       The undersigned certifies that on this day I caused to be served copies of the foregoing upon the following by hand delivery:

Barry S. Simon, Esq.
Williams & Connolly LLP
Residence Inn
942 Main Street
Hartford, CT 06103


                                              /s/ Debra Elliott
                                              DEBRA ELLIOTT
                                              U.S. Department of Justice


Dated: September 27, 2005
       Hartford, Connecticut