UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

———————————————————— x
UNITED STATES OF AMERICA             :
                                     :
             v.                      :   No. 3:02CR264 (AWT)
                                     :
WALTER A. FORBES,                    :   September 23, 2005
                                     :
             Defendant.              :
———————————————————— x

MEMORANDUM OF LAW IN SUPPORT OF MOTION
OF NON-PARTIES COSMO CORIGLIANO AND
KRAMER LEVIN NAFTALIS & FRANKEL LLP TO QUASH
RULE 17(C) SUBPOENAS AND FOR REMEDIAL RELIEF

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Gary P. Naftalis
Alan R. Friedman
Eric A. Tirschwell
J. Wells Dixon
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

-and-

JACOBS, GRUDBERG, BELT & DOW, P.C.
Ira B. Grudberg
350 Orange Street
New Haven, Connecticut 06511
(203) 772-3100

Attorneys for Cosmo Corigliano

**ORAL ARGUMENT REQUESTED**

KL3:2467476.3

## TABLE OF CONTENTS

Page

Introduction ..................................................................................................................................1

I. FAILED ATTEMPTS TO MEET AND CONFER CONCERNING THE 2005 CORIGLIANO-RELATED SUBPOENAS .................................................................6

II. THE REPETITIVE SUBPOENA DEMANDS SHOULD BE SUMMARILY QUASHED AS PROCEDURALLY IMPROPER..........................................................9

III. STANDARDS FOR PRODUCTION UNDER RULE 17(C).............................................12

    A. Specificity Required/Fishing Expeditions Prohibited .........................................12

    B. Rule 17(c) Cannot Be Used to Obtain Extrinsic Evidence That Is Inadmissible for Collateral Impeachment.............................................................13

    C. Rule 17(c) Cannot Be Used to Circumvent the Government's Disclosure Obligations Under Rule 16, Brady/Giglio and the Jencks Act............................15

    D. The Court May Also Exclude Cumulative, Unnecessary and Therefore Inadmissible Evidence..........................................................................................17

IV. THE COURT SHOULD ADHERE TO ITS PRIOR RULINGS AND SUMMARILY QUASH DEFENDANT FORBES' MANY DUPLICATIVE DEMANDS ......................................................................................................................18

    A. Subpoenas CC#3 and KL#4: "Renewal" Demands............................................19

    B. Retainer Paid to Kramer Levin..............................................................................19

    C. Retainer Paid to Fried Frank..................................................................................22

    D. Kramer Levin Billing Records Provided to Cendant...........................................23

    E. Alleged Agreements with the SEC Concerning Expenditures Between April 16, 2004 and the Turnover of the Corigliano Family Assets .....................24

    F. The Coriglianos' Expenditures Between April and July 2004 ............................25

    G. The Coriglianos' SEC Affidavit.............................................................................27

    H. Documents Exchanged and Communications With the Government and/or Cendant..........................................................................................................28

KL3:2467476.3

|   |   |   |   |
|---|---|---|---|
|   | I. | Subpoena Exhibits A – V | 30 |
|   | J. | Communications Between Mr. Corigliano and Kramer Levin Between April 1998 and January 2000 | 31 |
|   | K. | Polygraph-Related Documents | 33 |
|   | L. | Documents Concerning "Benefits" From Cooperation | 36 |
|   | M. | Connecticut Board of Accountancy | 37 |
|   | N. | Budget and Living Expense Information and Other Financial Information Mr. Corigliano Provided to His Counsel | 38 |
| V. |   | FORBES' "NEW" DEMANDS FAIL THE TESTS OF RELEVANCY, SPECIFICITY AND ADMISSIBILITY AND ARE "UNDULY BURDENSOME" AND "OPPRESSIVE" | 39 |
|   | A. | The Court Should Quash the Many Demands Relating to Interactions with the Government and Benefits | 39 |
|   | B. | The Court Should Quash the Many Improper Demands that Constitute Fishing Expeditions and/or Do Not Meet the Nixon Criteria | 41 |
| VI. |   | PROPHYLACTIC MEASURES SHOULD BE PUT IN PLACE TO PREVENT CONTINUED DEFIANCE OF THE COURT'S PRIOR RULINGS AND VEXATIOUS ABUSE OF THE RULE 17 POWER | 48 |
|   |   | CONCLUSION | 54 |

## **Introduction**

In connection with the 2004 trial, the defendants served some *35* Rule 17(c) subpoenas relating to *non-party* Cosmo Corigliano, consisting of nearly *400* separate demands for documents, demands made not just on the witness but also on his defense counsel, his accountant, multiple financial institutions with which his family allegedly transacted business, the SEC, and a court-appointed receiver. This onslaught of subpoenas resulted in at least *10* motions to quash, more than *300* pages of legal briefing, and innumerable rulings by this Court – rulings that quashed the overwhelming number of demands, including multiple improper demands on Mr. Corigliano's defense counsel for materials plainly protected by the attorney-client privilege and/or work-product doctrine. After the Court spent so much time and effort on these issues, often entertaining (and almost always rejecting) reconsideration applications and multiple bites at the apple, it did not seem unreasonable for us to imagine that, in connection with the retrial, this Court would not again be subjected to this very same vexatious, duplicative and oppressive practice. But we were wrong.

Beginning on August 22, 2005, and continuing up until last week, counsel for Forbes served *18* additional document subpoenas related to Mr. Corigliano, with some 250 separate calls, the overwhelming number of which demand exactly the same documents, or the same categories of documents, that were demanded in connection with the 2004 trial and expressly ruled on (and almost uniformly quashed) by this Court.[1] The latest sets of improper demands include 4 different subpoenas served on Mr. Corigliano's law firm (Kramer Levin); 3 separate subpoenas served on Mr. Corigliano; 8 subpoenas to third-party banks concerning the

---

[1] In the "Definitions and Instructions" section, all but one of the subpoenas exclude documents previously produced.

Corigliano family; 2 subpoenas on the Court-appointed receiver overseeing Mr. Corigliano's SEC settlement; and a subpoena on Mr. Corigliano's wife's law firm (Fried Frank).[2] Every one of these subpoenas bears the name of attorney Simon alone, who from all appearances has led and continues to lead the charge on subpoena issues.

So far has Forbes' counsel traveled from *United States v. Nixon* – a case that reached the highest court in the land on the question of whether specifically identified recorded conversations relating to the very charges in the indictment fell within the reach of a Rule 17(c) subpoena, and applied the standard of specificity, relevancy and admissibility – that Forbes' latest onslaught includes such plainly improper demands as:

- "all documents" relating to conversations between *Mr. Corigliano's mother-in-law* and the court-appointed receiver overseeing the SEC's settlement;

- all credit card applications that *Mr. Corigliano's wife* made to Citibank and MBNA America Bank at any time in her life;

- all documents relating to the transfer to the SEC of the so-called "second lot" that is a part of the Corigliano residence, *even though counsel for defendant Forbes knows without doubt that this lot was not transferred to the SEC*; and,

- documents sufficient to quantify the amount of legal fees advanced on behalf of Mr. Corigliano by Cendant for legal services rendered in connection with the 2004 trial, when a significant portion of those fees were incurred fighting off Forbes' own relentless stream of improper demands and unfounded accusations against Mr. Corigliano and his counsel.

Counsel for Forbes egregiously demands again the same documents and categories of documents he was denied during the 2004 trial – in subpoenas returnable September 23, 2005, well before the first witness will even be sworn – barely acknowledging, much less respecting, the Court's prior adverse rulings and without purporting to provide any

---

[2] We also learned that the SEC has recently received 2 new document subpoenas relating to Mr. Corigliano, with 48 demands, on top of the 6 testimonial subpoenas for SEC attorneys that are already the subject of an SEC motion to quash.

KL3:2467476.3

basis for the Court to revisit or reconsider those decisions. In so doing, defendant Forbes violates both Local Rule 7(c) and the "law of the case" doctrine, which require that a party seeking reconsideration of a prior ruling in the same case set forth new information or a manifest error that could justify a changed result, as well as Rule 17(c), which expressly requires prior judicial authorization to issue subpoenas that call for documents to be produced prior to the time they are "to be offered into evidence."

Instead of following the rules set up specifically to preserve court resources and prevent repetitive and vexatious litigation of the same issues, and in open defiance of the Court's multiple prior rulings in this case, counsel for defendant Forbes have simply arrogated to themselves unfettered authority to issue multiple repetitive subpoenas, improperly seeking to shift the burden to the Court and opposing counsel for a non-party witness to sift through some 250 demands and separate the old from the few that may be new and match up the Court's prior controlling rulings. Indeed, after being told by counsel for defendant Forbes that the new subpoenas would seek only documents different from the ones that had been unsuccessfully sought in connection with the 2004 trial, and later that all "renewed" demands would be incorporated into a single subpoena (both of which turned out not to be the case), we initiated a "meet and confer" during which we asked that repetitive demands be withdrawn and that any specific bases for reconsideration be identified, but counsel for defendant Forbes refused on both fronts.

In arguments set forth below that will be familiar to the Court, and as we did in connection with the 2004 trial, we move to quash each and every one of Forbes' abusive and improper subpoena demands, including both those that are old and tired and those few that are new but equally specious. Although our submission is lengthy, the short and dispositive answer

KL3:2467476.3

to almost all of the 2005 subpoenas is simple: the issues were presented and decided, the Court's rulings are the law of the case, and all repetitive demands should accordingly be quashed. As one district judge has explained:

> [A] mistrial occasioned by the jury's inability to arrive at a verdict does not convert those matters which were previously the subject of dispositive rulings by the trial court to matters the litigants are free to relitigate de novo in the second trial.[3]

In addition, and with great reluctance to burden the Court, we feel compelled to seek more than just the quashing of these latest subpoenas. Absent some prophylactic measure by the Court, defendant Forbes' counsel's abuse of Rule 17 undoubtedly will continue and even escalate during the upcoming retrial: the document subpoenas recently received surely represent just the first wave of such demands, to be followed (if history is any guide) by an equally abusive wave of subpoenas as the defense case approaches. In the exercise of its inherent authority, we urge the Court to impose an appropriate and narrowly tailored restriction on counsel for Mr. Forbes to ensure that these vexatious and harassing tactics do not continue throughout the course of the retrial. Specifically, as further outlined below, we ask that: (a) before Forbes is allowed to issue any additional Rule 17 subpoena relating to Mr. Corigliano, his lead trial counsel (Mr. Sullivan) as well as his local counsel be required to certify to the Court that (i) the subpoena represents a good-faith attempt to secure relevant and admissible evidence, and (ii) the same documents or testimony has not been demanded or ruled on previously; and (b) to the extent Forbes specifically seeks to use Rule 17 to attempt to secure documents and/or testimony that have been the subject of prior rulings, he be required to file a proper motion for reconsideration signed by lead trial counsel and local counsel.

---

[3] *City of Cleveland v. Cleveland Elec. Illuminating Co.*, 538 F. Supp. 1328, 1330-31 (N.D. Ohio 1981) (citations and quotations omitted).

KL3:2467476.3

\*          \*          \*

In an effort to make some order out of the chaos that Forbes' abusive eighteen new Corigliano-related subpoenas were intended to create, our submission starts, in Point I, with a discussion of how we came to learn about Forbes' 2005 subpoenas, how counsel for Forbes refused to meet and confer in good faith, and how the 2005 subpoenas represent a continuation and escalation of Forbes' attempts to invade the attorney-client relationship and trample on the protections of the attorney-client and work-product privileges. We begin our affirmative argument in Point II, demonstrating that all of the 2005 Corigliano-related subpoenas are procedurally improper on one or more grounds and should be quashed summarily. In Point III, we provide a brief review of the controlling legal principles that have governed this Court's consideration of Rule 17(c) subpoenas. In Point IV, we collect all of the 2005 demands that call for information that was demanded and/or ruled upon in the context of the 2004 trial, summarize the Court's prior rulings, and show why there is no basis for the Court to reconsider or reopen its prior decisions rejecting these requests. In Point V, we address the small minority of 2005 demands that are arguably "new," showing why "new" does not translate to "proper" and urging that they be quashed as well. Finally, in Point VI, we collect the extensive history of abuse by counsel for Mr. Forbes, including his misuse of the Rule 17 power and defiance of Court rulings and procedures, and then address the issue of an appropriate remedy or sanction that will protect the Court, Mr. Corigliano, his attorneys, and other third-parties from these continued abuses.

We note, finally, that this motion to quash and the arguments that follow apply to the 3 subpoenas served on Mr. Corigliano, the 4 subpoenas served on Kramer Levin, the 8 subpoenas served on financial institutions through which the Coriglianos allegedly conducted their personal finances (Citibank, MBNA, People's Bank, T. Rowe Price, Liberty Bank, Fidelity,

KL3:2467476.3

and Fleet), and the 2 subpoenas served on the court-appointed receiver overseeing the Coriglianos' SEC Settlement (one of which is directed to Crystal Journey Candles LLP). (For the Court's reference, immediately following the signature page to this Memorandum we have included an Index to Arguments that cross-references each call in each of the 2005 subpoenas with the section(s) of this Memorandum in which we address the call.)[4]

## I. FAILED ATTEMPTS TO MEET AND CONFER CONCERNING THE 2005 CORIGLIANO-RELATED SUBPOENAS

On August 17, 2005, we received a call from counsel for defendant Forbes seeking our consent to accept service of Rule 17(c) subpoenas for Mr. Corigliano and our law firm (Kramer Levin). We agreed to accept service of these subpoenas after Forbes' counsel represented that they "seek different information from the subpoenas issued in the first trial – which were the subject of extensive motion practice and were for the most part quashed." *See* Letter from Eric A. Tirschwell to Margaret A. Keeley (Aug. 18, 2005) (Ex. DD). Contrary to this representation, however, and as we lay out in detail below, the first three subpoenas we received from defendant Forbes – which were originally made returnable September 19, 2005, and are hereafter referred to as CC#1, KL#1 and KL#2 – consist largely of demands that are duplicative of requests considered (often on multiple occasions) and rejected by the Court in the first trial.

Our subsequent attempt to "meet and confer" with Forbes' counsel was met with further misinformation and refusals to provide any clarification. In a telephone conversation on September 9, 2005, we agreed to accept service of an additional subpoena on behalf of Kramer

---

[4] The 18th Corigliano-related subpoena was served on Mrs. Corigliano's counsel, the Fried Frank law firm. We understand Fried Frank is separately addressing that subpoena, but note that a number of demands made on Fried Frank are identical to demands made on Mr. Corigliano that should be quashed for the reasons set forth below.

KL3:2467476.3

Levin and/or Mr. Corigliano, with the understanding that the requests therein were made and ruled on in connection with the prior trial and the purpose of re-serving them was to preserve defendant Forbes' appellate record. *See* Letter from Eric A. Tirschwell to Margaret A. Keeley (Sept. 9, 2005) (Ex. EE). Defendant Forbes' counsel subsequently confirmed that the additional subpoenas would seek materials previously ruled on and denied to them by this Court, but then added that they would be "specifically seeking reconsideration from the District Court as to *some* of these calls" and agreed "to identify" which ones during the upcoming meet and confer. *See* Letter from Margaret A. Keeley to Eric A. Tirschwell (Sept. 9, 2005) (emphasis added) (Ex. FF).

On September 12, 2005, approximately one hour prior to our scheduled meet and confer, we received by email from defendant Forbes' counsel four new sets of demands for Kramer Levin and Mr. Corigliano, and were told that these demands subsequently would be incorporated into four separate additional subpoenas, as opposed to the one or two we were told to expect.[5] During our meet and confer telephone conference shortly thereafter, defendant Forbes' counsel acknowledged that the requests in two of the four new subpoenas – hereafter referred to as "CC#3/Renewal" and "KL#4/Renewal" – were taken word-for-word from prior subpoenas that the Court had quashed either in the pretrial context or during the first trial. But counsel for Forbes refused to identify the specific calls as to which they would be seeking reconsideration, notwithstanding their prior express promise to do just that, and also refused to

---

[5] The actual 4 subpoenas incorporating these additional demands were not received until Friday, September 16, 2005, only 7 days before the return date, with a cover letter cryptically announcing that "two of these subpoenas call for information sought" in connection with the first trial; "we understand that the Court previously quashed the subpoenas which included these (or similar) requests"; but that "we believe we are entitled to these documents, the factual record has been substantially expanded since the time of the Court's prior rulings, and we wish to ensure that each of these subpoena demands is preserved with respect to the current trial." See the cover letter from Margaret Keeley to Eric Tirschwell dated September 14, 2005, but not received until September 16, 2005 (Ex. GG).

KL3:2467476.3

provide specific grounds for any such reconsideration. Mr. Simon also refused our request to withdraw duplicative requests from CC#1, CC#2, KL#1, KL#2, and KL#3 or to move those duplicative requests to the KL#4 and CC#3 Renewal subpoenas to clarify that (i) the Court had previously denied these materials and (ii) the requests were being repeated for purposes of preserving the appellate record.

Finally, we raised with Forbes' counsel the fact that none of the four separate subpoenas served on Kramer Levin has any carve-out for attorney work-product – a carve-out that was expressly acknowledged as appropriate by Forbes during the first trial[6] – and questioned whether they were actively seeking our work-product. Mr. Simon expressed his view that the privilege was vitiated by "various crimes and frauds," a position that Forbes' counsel had unsuccessfully asserted multiple times at the 2004 trial and that the Court had several times already, on a full record, squarely rejected. When we pressed Mr. Simon to identify the specific subpoena demands as to which he was (re-)asserting "crime fraud," and further asked that he agree that as to all others he was not seeking confidential attorney work-product, he said that he would consider our request and get back to us. He never did, and we were never provided with any additional information that would narrow the scope of these subpoenas.[7]

---

[6] See Corigliano Mem. dated Mar. 31, 2004, at 5 nn.3-4 (discussing Forbes' representation that they were not seeking "confidential attorney work product," on which they later reneged).

[7] Only two of the four subpoenas served on Kramer Levin – KL#1 and KL#2 – have a carve-out for attorney-client privileged documents – i.e., "communications between you and your clients unless those communications have already been disclosed to third parties." KL#3 expressly and improperly calls for attorney-client communications, a matter we address in Points IV.J and IV.K, below.

KL3:2467476.3

## II. THE REPETITIVE SUBPOENA DEMANDS SHOULD BE SUMMARILY QUASHED AS PROCEDURALLY IMPROPER

The latest onslaught of eighteen additional Corigliano-related subpoenas can only be described as an act of defiance of the Court's prior rulings and a subversion of the rules of orderly procedure. Instead of moving for reconsideration of the Court's multiple prior decisions that cover the vast majority of his current repetitive demands, and sustaining his burden of providing the Court (and us as the resisting party) with a legitimate basis for reconsideration of the requests, Forbes simply re-serves the same demands, thereby improperly and intentionally shifting the onus to us, non-parties to this case, to move to quash without knowing what if any new grounds are supposedly being relied upon.

As counsel for defendant Forbes well knows, a motion for reconsideration must be based on some fact or controlling law that counsel believes the Court overlooked. *See* D. Conn. L. Civ. R. 7(c).[8] "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998); *United States v. Ocasio*, No. 3:99 CR 200 (CFD), 2005 WL 1489462, *2 (D. Conn. June 20, 2005) (Droney, J.); *LoSacco v. City of Middletown*, 822 F. Supp. 870, 876-77 (D. Conn. 1993) (Nevas, J.) (purpose of reconsideration is "to correct manifest errors of law or fact or to consider newly discovered evidence") (internal quotations omitted), *aff'd*, 33 F.3d 50 (2d Cir. 1994).

---

[8] Of course, the 10-day time period set out in Rule 7(c) has long since come and gone.

Forbes has not even attempted to meet this burden; as such the Court should summarily quash the repetitive demands in each of the new Corigliano-related subpoenas on the ground that they violate Local Rule 7(c) and improperly seek to shift the burden to Mr. Corigliano to move to quash demands that have already been adjudicated against Forbes.

In addition, those many prior rulings denying Forbes' requests have become the law of the case and Forbes has presented no reason, let alone a compelling reason, for this Court to revisit any of those rulings. "The court's exercise of its power to reconsider and modify its prior interlocutory rulings is informed by the . . . law-of-the-case doctrine. That principle is that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991) (criminal case); *see Prisco v. A&D Carting Corp.*, 168 F.3d 593, 607 (2d Cir. 1999) (quoting *Uccio*). "[A]bsent cogent or compelling reasons to deviate, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," a court should adhere to its prior rulings. *Uccio*, 940 F.2d at 758. *See, e.g., Morse/Diesel, Inc. v. Trinity Indus. Inc.*, No. 84 Civ. 5791 (RO), 1997 WL 470138, at *6 (S.D.N.Y. Aug. 14, 1997) (declining to revisit first trial rulings in context of retrial on remand).

In this Circuit, on retrial, "[a] court should be loathe to revisit an earlier decision in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995) (internal quotations omitted). In other words, "the law of the case should be 'disregarded only when the court has a clear conviction of error with respect to a point of law on which its previous decision was predicated.'" *Id.* (quoting

KL3:2467476.3