# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) No. 3:02CR264 (AWT) |
| WALTER A. FORBES | ) September 30, 2005 |

)
)
)
)
)
)
)
)
)

## REPLY MEMORANDUM IN SUPPORT OF
## MOTION OF DEFENDANT WALTER A. FORBES
## TO PRECLUDE THE GOVERNMENT FROM PRESENTING
## EVIDENCE, CROSS-EXAMINATION, OR ARGUMENT CONCERNING
## (1) MR. FORBES' JULY 1998 SEVERANCE AGREEMENT WITH
## CENDANT; (2) THE VALUE OF MR. FORBES' SEVERANCE; (3) THE
## JULY 28, 1998 CENDANT BOARD MEETING; OR (4) THE FINANCIAL
## AND OTHER PRESSURES ON CENDANT IN JULY 1998
## (Forbes Retrial Motion In Limine No. 4)

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this reply memorandum in support of his motion in limine to preclude the government from presenting evidence, cross-examination, or argument on retrial concerning: (i) Mr. Forbes' July 1998 severance agreement with Cendant; (ii) the value of the severance Mr. Forbes received from Cendant; (iii) the July 28, 1998 Cendant Board meeting; or (iv) the financial and other pressures on Cendant in July 1998.[1]

---

[1]    The government represents that it does not intend to present evidence concerning either the July 28, 1998 Cendant Board meeting or the circumstances under which the Cendant Board of Directors agreed to Mr. Forbes' severance package. See Opp. at 3 n.1. Accordingly, Mr. Forbes will limit his reply memorandum to issues concerning (i) the July 1998 severance agreement and (ii) the value of the severance Mr. Forbes received from Cendant.

## **ARGUMENT**

The government apparently concedes that Mr. Forbes' July 1998 severance has no probative value with respect to the charged offenses and is not independently admissible in its case-in-chief. It makes no attempt to argue that either the amount of the severance or Mr. Forbes' acceptance of his severance in July 1998 has any probative value with respect to this case. To the contrary, the government asserts that the sole purpose for which it seeks to offer this evidence in its case-in-chief is to <u>impeach</u> the credibility of testimony by Mr. Forbes from the 2004 trial that the government seeks to introduce. <u>See</u> Opp. at 2-3. In other words, the government seeks to offer portions of Mr. Forbes' testimony from the 2004 trial for the purpose of attempting to <u>impeach</u> the credibility of that testimony through otherwise inadmissible evidence.

Mr. Forbes opposes the government's attempt to offer his 2004 testimony for the purpose of impeaching its credibility through otherwise inadmissible evidence.[2] It is well settled that a party may not call a witness for the sole purpose of impeaching him with otherwise inadmissible evidence. <u>See</u> <u>United</u>

---

[2]     The government did not state that it sought to offer excerpts of Mr. Forbes' 2004 testimony for the purpose of impeaching that testimony in its pretrial motion <u>in limine</u>. It made that assertion for the first time in its <u>reply</u> memorandum in support of its motion <u>in limine</u> and its memorandum in opposition to Mr. Forbes' motion <u>in limine</u> No. 4. Mr. Forbes had no notice of the government's intentions at the time he filed his opposition to the government's pretrial motion <u>in limine</u>. Now that the government has revealed its true intentions, Mr. Forbes objects to the government's attempt to offer any of his 2004 testimony because the government seeks to offer it in order to impeach it.

States v. Johnson, 802 F.2d 1459, 1466-67 (D.C. Cir. 1986) (collecting cases); United

States v. Webster, 734 F.2d 1191, 1192 (7th Cir.1984) (collecting cases); United

States v. Gorny, 732 F.2d 597, 604 (7th Cir.1984); United States v. Rogers, 549 F.2d

490, 497 (8th Cir. 1976); United States v. Morlang, 531 F.2d 183, 189 (4th

Cir.1975).  For the same reasons, the government cannot introduce portions of Mr.

Forbes' 2004 testimony for the purpose of attempting to impeach the credibility of

that testimony through otherwise inadmissible evidence.

Mr. Forbes is not a government witness and cannot be called in the

government's case.  "[A]s a general matter of relevance, a person who does not

testify at trial and who is not the source of statements admitted for their truth is

not subject to impeachment."  United States v. Finley, 708 F. Supp. 906, 909 (N.D.

Ill. 1989); see also United States v. Kabbaby, 672 F.2d 857, 863-84 (11th Cir.1982).

The government cannot offer impeachment evidence concerning Mr. Forbes'

credibility in its case-in-chief.  Nor can the government circumvent that rule by

introducing portions of Mr. Forbes' prior testimony for the purpose of attempting to

impeach it through evidence that is otherwise inadmissible in the government's

case.  That tactic would constitute a "subterfuge to get before the jury" evidence

that is not otherwise admissible.  United States v. Eisen, 974 F.2d 246, 262 (2d Cir.

1992).

The government's tactics would violate Mr. Forbes' absolute Fifth

Amendment right not to testify.  See Brooks v. Tennessee, 406 U.S. 605, 609 (1972).

While a defendant's choice to testify "carries with it serious risks of impeachment

3

and cross-examination," id., if a defendant does not testify in a criminal case, the government is not permitted to present evidence offered solely for impeachment. The government cannot be allowed to do an end-run around Mr. Forbes' Fifth Amendment right not to testify by offering his 2004 testimony for the purpose of attempting to impeach its credibility through otherwise inadmissible evidence. Accordingly, the Court should not permit the government to offer portions of Mr. Forbes' 2004 testimony for the purpose of attempting to impeach the credibility of that testimony, and should preclude the government from presenting evidence concerning Mr. Forbes' severance that is offered solely to impeach the credibility of Mr. Forbes' prior testimony.

Even if Mr. Forbes testifies at the retrial, and is properly subject to impeachment with respect to credibility, the Court should preclude the government from making any reference to Mr. Forbes' severance pursuant to Fed. R. Evid. 401 and 403. The agreement has no bearing on Mr. Forbes' credibility because it only authorizes Cendant to bring an action against Mr. Forbes for recovery of the severance in the event he were convicted of a crime. See Exhibit 1, section 2. The government concedes that Cendant has already sued Mr. Forbes for recovery of his severance. See Opp. at 3 ("Cendant has already sued Forbes"). Accordingly, the severance agreement does not give Mr. Forbes any motive to testify falsely, as Cendant already has sued Mr. Forbes to recover his severance. For this fundamental reason, the severance agreement is irrelevant to Mr. Forbes' credibility.

4

While the government now contends that Mr. Forbes has a motive to testify falsely because of the pending Cendant civil <u>lawsuit</u> seeking recovery of his severance, Opp. at 3, this fallback argument fails as well.  As the government is aware, Mr. Forbes is a defendant in a number of civil actions seeking the recovery of, at a minimum, hundreds of millions of dollars. If the government wishes to cross-examine Mr. Forbes concerning that fact, it is free to do so.  But there is no legitimate reason for the government to single out the amount of the severance in order to conduct such a cross-examination.

The cases cited by the government in support of the purported relevance of the severance are entirely inapposite.  <u>United States v. Ballestros Gutierrez</u>, 181 F. Supp. 2d 350, 354 (S.D.N.Y. 2002) (Opp. at 4-5), involved conduct that took place <u>during the time of the charged offenses and that was probative of the underlying offenses</u>.  <u>See id.</u> (parallel trading by family members supported inference that defendant traded on inside information).  Here, Mr. Forbes accepted his severance in July 1998, months <u>after</u> the conclusion of the offenses charged in the indictment, and the government does not even attempt to argue that the severance is probative of any element of the charged offenses.  <u>Kunzman v. Enron Corp.</u>, 941 F. Supp. 853 (N.D. Iowa 1996) (Opp. at 5), was a civil age discrimination case in which the wealth of the defendant corporation was relevant to a <u>substantive issue in the case</u> (whether its proffered explanation for the plaintiff's termination -- financial difficulties -- was a pretext).  <u>Id.</u> at 867.  Here, Mr. Forbes' severance has no probative value with respect to any element of the charged offenses.

5

It is evident that the government's real purpose in seeking to present evidence concerning the severance agreement is to place the amount of the severance before the jury, emphasize Mr. Forbes' wealth, and suggest that Mr. Forbes was greedy and insensitive to the plight of Cendant shareholders when he accepted the severance in July 1998.[3]  These are the points the government repeatedly emphasized during the 2004 trial.  See, e.g., Tr. 14377 ("You were going to try to negotiate your way out, a nice big severance on the way out?); Tr. 14405 ("But even though you felt bad for the shareholders and you were still a multimillionaire by tens of millions of dollars, isn't it true you still wanted more money out of  the company before you would agree to leave?");[4] Tr. 14488 ("Well, when you left were you given the $47 million?"); Tr. 15116 ("Mr. Forbes tells us he was sorry for the shareholders.  Felt sorry for them.  He was so sorry that he wanted to take $47 million with him as part of his severance.").

The government's clear purpose in seeking to introducing the severance agreement into evidence is to arouse juror emotion and anger concerning the amount of the severance and Mr. Forbes' alleged insensitivity in accepting it. Because this evidence has no probative value in this case and is extremely

---

[3]     The government cannot, and does not, respond to the point that, had Mr. Forbes not accepted his severance, the government likely would argue that such conduct demonstrated consciousness of guilt.  Given the Catch-22 nature of the situation, it is both misleading and fundamentally unfair for the government to emphasize the amount of the severance or to suggest that Mr. Forbes acted improperly by accepting it.

[4]     Mr. Forbes' objection to this question was sustained.

prejudicial, the Court should preclude the government from making any reference to Mr. Forbes' severance under Fed. R. Evid. 401 and 403.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Mr. Forbes' opening memorandum, the Court should preclude the government from presenting any evidence, cross-examination, or argument concerning: (i) Mr. Forbes' July 1998 severance agreement with Cendant; (ii) the value of the severance Mr. Forbes received from Cendant; (iii) the July 28, 1998 Cendant Board meeting; or (iv) the financial and other pressures on Cendant in July 1998.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: *Barry S. Simon | MRZ*

    Brendan V. Sullivan, Jr. (Bar No.ct17115)
    Barry S. Simon  (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

7

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Reply Memorandum in

Support of Motion of Defendant Walter A. Forbes to Preclude the Government From

Presenting Evidence, Cross-Examination, or Argument Concerning (1) Mr. Forbes'

July 1998 Severance Agreement With Cendant; (2) the Value of Mr. Forbes'

Severance; (3) the July 28, 1998 Cendant Board Meeting; or (4) the Financial and

Other Pressures on Cendant in July 1998 (Forbes Retrial Motion In Limine No. 4)

to be sent on September 30, 2005 to the following via Federal Express and email:

> Michael Martinez, Esq.
> Craig Carpenito, Esq.
> United States Attorneys
> The Federal Building
> U.S. Department of Justice
> 450 Main Street, Room 320
> Hartford, CT  06103
>
> Norman Gross, Esq.
> U.S. Attorney's Office
> District of New Jersey
> 401 Market Street
> Fourth Floor
> Camden, NJ  08101

Barry S. Simon IMRZ

Barry S. Simon