## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 3:02CR264 (AWT) |
| WALTER A. FORBES. | ) | October 3, 2005 |
| | ) | |

### OPPOSITION OF WALTER A. FORBES TO THE MOTION OF THE SECURITIES AND EXCHANGE COMMISSION TO QUASH SIX SUBPOENAS SEEKING TESTIMONY FROM ITS ENFORCEMENT STAFF

The Securities and Exchange Commission's ("SEC") Motion to Quash fails to acknowledge the well established principle of law that a party may demonstrate a witness' bias through extrinsic evidence, and ignores altogether the second purpose for calling SEC staff members: to testify to prior statements of witnesses whom the SEC interviewed should those witnesses testify contrary to their prior statements. The SEC's Motion to Quash should be denied, as it was in the first trial.

## I. THE SEC MISCHARACTERIZES THE PURPOSE FOR WHICH MR. FORBES MAY CALL CURRENT AND FORMER SEC STAFF TO TESTIFY.

### A. Subpoenas to Messrs. Frohlich, Greiner, Paszamant and Ms. Markel.

According to handwritten notes produced to the defense by the government, Messrs. Frohlich, Greiner, Paszamant and Ms. Markel each attended interviews of persons on the government's witness list, including interviews of the

cooperating witnesses Cosmo Corigliano, Anne Pember, and Casper Corigliano. Each took copious notes. Indeed, the government produced 728 pages of notes from David Frohlich, 282 pages from Matthew Greiner, 589 pages from Roger Paszamant, and 447 pages of notes from Susan Markel. Should any of the government's witnesses testify contrary to their earlier statements to these SEC staff members, as reflected in these notes, the defense intends to offer up the prior inconsistent statements through these SEC staff members, pursuant to Federal Rule of Evidence 613.

Although counsel for Mr. Forbes informed the SEC that this was the intent in subpoenaing Messrs. Greiner, Paszamant, and Ms. Markel, and one of the intents in subpoenaing Mr. Frohlich, the SEC's motion is notably silent regarding this area of potential testimony. Simply put, there is no basis to object to such testimony by these witnesses, and the SEC's motion to quash the subpoenas served upon the SEC witnesses should be denied.

## B.    Messrs. Kidney, Frohlich and Newkirk

### 1.    These Witnesses' Testimony is Relevant to the Bias of Cosmo Corigliano.

The SEC acknowledges that Messrs. Kidney, Frohlich and Newkirk possess information concerning the budget and settlement agreements entered into between Mr. Corigliano and the SEC. Motion at 4-5. The SEC nonetheless argues that this evidence is irrelevant and inadmissible because the witnesses do not have any "first-hand knowledge of the facts relevant to Forbes' guilt or innocence," and

their testimony would be limited to impeachment evidence against Cosmo

Corigliano. *See, e.g.,* Motion at 3-5.

       Contrary to the government's argument, "[t]he law is well settled in

this Circuit, as in others, that bias of a witness is not a collateral issue and extrinsic

evidence is admissible to prove that a witness has a motive to testify falsely."

United States v. Harvey, 547 F.2d 720, 722 (2d Cir. 1976) (reversing conviction);

accord United States v. James, 609 F.2d 36, 46 (2d Cir. 1979). "In criminal cases,

especially, defense counsel should be given great latitude in adducing proof which

might bear on credibility." United States v. Wolfson, 437 F.2d 862, 874 (2d Cir.

1970). Indeed, "[s]pecial treatment is accorded evidence which is probative of a

special motive to lie for if believed it colors every bit of testimony given by the

witness whose motives are barred." Harvey, 547 F.2d at 722 (quotation omitted).

> [A] defendant should be afforded the opportunity to
> present facts which, if believed, could lead to the
> conclusion that a witness who has testified against him
> either favored the prosecution or was hostile to the
> defendant. Evidence of all facts and circumstances which
> tend to show that a witness may shade his testimony for
> the purpose of helping to establish one side of a cause only
> should be received . . . .

Id. (quotation omitted).

       The SEC's attempts to distinguish the current case from this clear

precedent fails. First, the SEC argues that much of the case law does not apply

because it involves bias evidence against a defendant, not a witness. Motion at 9.

The SEC does not even attempt to explain the significance of its distinction,

however, and indeed nothing in the Federal Rules of Evidence or the case law

suggests that one can impeach a defendant by demonstrating bias, but not any other witness.

Second, the SEC baldly asserts that <u>Harvey</u>, 547 F.2d 720, and <u>Messino</u>, 882 F. Supp. 115, are inapposite. Motion at 9-10. Again, however, the SEC's memorandum never explains why it believes the cases are inapposite. Instead, the SEC merely summarizes the facts of <u>Harvey</u>, which *support* Mr. Forbes' position and, in a footnote, erroneously summarizes the facts and holding of <u>Messino</u>, which clearly recognized a defendant's right to subpoena impeachment material once it is clear a witness is going to testify. Motion at 10. Here, of course, there is no question but that Mr. Corigliano will testify.

Finally, the SEC's reliance on <u>United States v. James</u>, 609 F.2d 36, 47-48 (2d Cir. 1979), is grossly misplaced. In <u>James</u>, the court ultimately determined there was insufficient prejudice to justify a reversal, but nonetheless held that bias evidence was *not* barred by Federal Rule of Evidence 608(b), and indeed that it was *"preferable to allow the testimony."* <u>Id</u>. at 47 (emphasis added).

## 2. The SEC Witnesses' Testimony Is Not Duplicative of Mr. Corigliano's.

The SEC argues that even if relevant and admissible, the testimony of its witnesses should be precluded because it adds nothing new to the testimony of Mr. Corigliano. Motion at 11. This argument ignores the fact that Mr. Corigliano's testimony stood in stark contrast to the text of the agreements he has with the SEC, and that the government itself has made conflicting representations concerning the

agreements in existence.  Mr. Forbes is entitled to ferret out the true nature of the

benefits enjoyed by Mr. Corigliano through, *inter alia*, the testimony of the SEC

representatives.

Mr. Forbes is entitled to a complete and accurate description of the

benefits conferred on Mr. Corigliano by the SEC.  And although the SEC claims that

the agreement between Mr. Corigliano and the SEC is captured in the documents

produced by the SEC, Mr. Corigliano's testimony – and the representations of the

United States Attorneys' Office during the first trial – is inconsistent with the text

of those documents.  For example, both the Consent and the Final Judgment

provide that Mr. Corigliano and the Relief Defendants shall disgorge all assets of a

value of $1,000 or more in which they had any direct or indirect legal or beneficial

ownership interest as of March 31, 2004, other than (1) the residence at 38 Watrous

Point Road in Old Saybrook, Connecticut; (2) all furnishing and personal property

therein; (3) the residence in Trumbull, Connecticut, occupied by Mr. Corigliano's

parents; (4) all furnishing and personal property therein; (5) one 1996 Lexus

automobile; (6) one 1993 Acura automobile; and (7) a balance of $100,000 in each of

the three trust funds set up in the names of Mr. Corigliano's children.  See DX1060

at ¶ 6.  Notably missing from this list is any mention of the purported right to

continue to use the retainer on deposit with the Coriglianos' counsel until Mr.

Corigliano's legal problems are eradicated.  Yet Mr. Corigliano testified that it was

his understanding that he could continue to use the legal fees as long as they were

needed.  See Tr. (8/3/2004) at 9367-72.  The United States Attorney's Office

("USAO") attempted to bolster this testimony during the first trial, representing that in fact there was an oral side agreement between Mr. Corigliano and the SEC concerning the retainer. Gov't Opp. to Forbes Trial Motion No. 28 at 6-8. The USAO has now reversed its position, stating that there is no oral agreement between Mr. Corigliano and the SEC. Gov't Opp. to Forbes Retrial Motion No. 3 at 3.

Similarly, Mr. Corigliano testified that he understood that until the time he actually transferred his assets to the Receiver, he could continue to pay his living expenses out of the assets in which he had a direct or indirect beneficial interest on March 31, 2004. See, e.g., Tr. (08/03/04) at 9393-412. The plain language of the Consent and Final Judgment belies Mr. Corigliano's understanding, stating that all such assets, other than those specifically exempted, are to be disgorged to the receiver. See DX1060.

Given the clear conflict between the SEC's position, Mr. Corigliano's position, and the shifting positions of the USAO, Mr. Forbes has the right to explore the exact nature of the benefit conferred on Mr. Corigliano through the testimonial evidence sought from Messrs. Kidney, Frohlich, and Newkirk. In particular, Mr. Forbes has a right to explore whether in fact any oral side agreements exist between the SEC and Mr. Corigliano and, if not, whether the SEC is now turning a blind eye toward Mr. Corigliano's violations of the plain text of the agreements – which in and of itself would constitute a benefit conferred upon Mr. Corigliano, the key cooperating witness for the government.

### C.    These Witnesses' Testimony is Relevant to Impeach Cosmo Corigliano.

Even if the impeachment does not relate to bias, once a witness has opened the door by affirmatively testifying to a particular fact – as Mr. Corigliano did by testifying to the benefits received pursuant to his SEC settlement on both direct and cross-examination – he opens the door to extrinsic evidence coming in to impeach that testimony.  For example, in <u>Walder v. United States</u>, 347 U.S. 62 (1954), a defendant charged with the unlawful sale of narcotics testified not only that he had not committed the crime alleged in the indictment, but also that he had *never* possessed illegal narcotics.  The Supreme Court upheld the trial court's subsequent admission of a police officer's testimony that drugs had previously been seized at the defendant's home – *an incident not charged in the indictment* – holding that "there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the [opposing party's] disability to challenge his credibility." <u>Id.</u> at 65.  <u>Accord</u> <u>United States v. Bufalino</u>, 683 F.2d 639 (2d Cir. 1982) (defendant testified that not only did he not order that a particular person be killed as charged in the indictment, but that he had never told anyone to kill the person, thus opening the door to a tape recording from an *earlier crime* when he had ordered that the person be eliminated); <u>United States v. Benedetto</u>, 571 F.2d 1246, 1250 (2d Cir. 1977) (holding that once a witness testifies to a specific fact on direct examination, the court has broad discretion to admit extrinsic evidence tending to contradict that fact); <u>United States v. Cuadrado</u>, 413 F.2d 633, 635 (2d Cir. 1969) ("Where a defendant in his direct testimony falsely states a specific fact, the

prosecution will not be prevented from proving, either through cross-examination or by calling its own witnesses, that he lied as to that fact.") (internal citations and quotations omitted).

Indeed, the government has an affirmative obligation to correct the false testimony Mr. Corigliano provided concerning his settlement with the SEC. See Mr. Forbes' Motion for Mistrial Due to the Government's Presentation of, and Failure to Correct, Cosmo Corigliano's False and Misleading Testimony (Forbes Trial Motion No. 28). Yet instead of fulfilling this Constitutional obligation, here the government is attempting to prevent the truth from ever being presented to the jury.

## II.    MR. FORBES SHOULD NOT BE LIMITED TO CALLING ONLY ONE SEC WITNESS.

Mr. Forbes should not be limited to calling one SEC witness, an alternative urged by the SEC at the end of its motion. See Motion at 16-17. With regard to those witnesses who may be called to testify to prior inconsistent witnesses' statements, there is no way for Mr. Forbes to know at this point which prior statements Mr. Corigliano may deny, and thus who should be called to impeach him. Moreover, it is certainly relevant that two or three SEC agents recall a prior statement after a testifying witness denies it, demonstrating that there is more than simply a "he said, she said" controversy between two witnesses.

With regard to the witnesses who can testify to the agreements between Mr. Corigliano and the SEC, none of the three are substantially duplicative of each other. As the SEC itself acknowledges, Mr. Kidney is the SEC employee

who negotiated the budget agreement governing the Coriglianos' expenditures between August 2000 and March 31, 2004 and, as in the first trial, his testimony will be focused on that agreement. Motion at 4-5. <u>See also</u> Tr. 9/23/2004 at 13507-09. Mr. Kidney also had relevant, albeit limited, knowledge concerning the settlement – a perfectly appropriate subject for cross-examination. <u>See, e.g.</u>, Tr. 9/23/2004 at 13511-23.

Mr. Frohlich appears to have been less involved in the budget negotiations than Mr. Kidney, but substantially more involved in the settlement negotiations that occurred in the spring of 2004. <u>See, e.g.</u>, Tr. 9/27/2004 at 13,601-611. Indeed, Mr. Frohlich signed the SEC's correspondence with Mr. Corigliano's attorneys during this time period. Even Mr. Frohlich was uncertain as to whether Mr. Corigliano could continue to have his legal services charged against the retainer on deposit with his counsel, however. <u>See</u> Tr. 9/27/2004 at 13,611. Mr. Kidney testified that Mr. Newkirk would be the best person to fill this knowledge gap:

- Q. Who was in charge of this negotiation?
  A. Tom Newkirk. (Tr. 9/23/2004 at 13,513);

- "Tom Newkirk is the one who would be involved and knowledgeable about any provisions." (Tr. 9/23/2004 at 13,514);

- "I don't know that there was an agreement [regarding the retainer], but I can tell you that Mr. Newkirk is the one who would be most familiar, I believe, with anything having to do with this matter that you are interested in." (Tr. 9/23/2004 at 13,514-15);

- Q. [ ]Tell me, who would be the persons in your department who would have been knowledgeable about any oral

agreement to permit the Coriglianos to use $2 million worth of legal fees, if needed?

A. Well, if there was such an agreement, which I doubt, Mr. Newkirk would presumably be the one most knowledgeable about that. (Tr. 9/23/2004 at 13,519-20).

If Mr. Forbes is to explore the benefits conferred upon Mr. Corigliano by each of these two agreements, he must have the ability to examine both the persons responsible for the day-to-day negotiation of the agreements, as well as the person who would be "most familiar" with any side-agreement, should it have existed.[1]

## III.  MR. FORBES DOES NOT SEEK TO QUESTION THE SEC WITNESSES IN THEIR ROLE AS OPPOSING COUNSEL IN THE SEC'S CASE AGAINST MR. FORBES.

The SEC argues that SEC staff members should not be required to testify because they are assigned to the SEC matter pending against Mr. Forbes, citing to a number of cases wherein a party to a civil suit sought to depose an agency attorney concerning the agency's investigation of the party. See Motion at 12-14. The Court rejected this argument in the first trial. As the Court implicitly acknowledged in denying the SEC's motion to quash then, Mr. Forbes does not seek a civil deposition of these witnesses concerning the investigation against Mr. Forbes, as was the situation in the cases cited by the SEC. Rather, Mr. Forbes seeks testimony, pursuant to his Sixth Amendment right to compulsory process, on a limited number of discrete issues *that have been put at issue by the government.*

---

[1] The SEC's argument that the subpoenas – which name specific persons currently or formerly employed by the SEC – are lacking in specificity has no merit, and should be rejected out of hand.

10

The testimony sought is not privileged, and in fact the SEC makes no effort to delineate how it qualifies as privileged.  <u>See, e.g.</u>, <u>Adler, Coleman, Clearing Corp. v. Mishkin, SIPC</u>,1999 WL 1747410, *2 (S.D.N.Y. Dec. 8, 1999) ("The party seeking to invoke a privilege bears the burden of establishing those facts that are the essential elements of the privileged relationship. . .. This burden cannot be discharged by mere conclusory or ipse dixit assertions.") (cited by the SEC, Motion at 5).  Moreover, Mr. Forbes has no means of obtaining the information sought through the SEC staff's testimony other than through the government or Mr. Corigliano's counsel – all of whom successfully sought to avoid testifying in the first trial – and, contrary to the SEC's claim, <u>id.</u>, these issues are crucial to Mr. Forbes' defense because they go the very heart of the case against him – the bias and credibility of the government's star witness, Cosmo Corigliano.

## <u>CONCLUSION</u>

For the foregoing reasons, Mr. Forbes respectfully requests that the Court deny the SEC's Motion to Quash the testimony subpoenas served upon Messrs. Kidney, Frohlich, Newkirk, Greiner, Paszamant and Ms. Markel.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Dated:  October 3, 2005

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Opposition of Walter A. Forbes to the Motion of the Securities and Exchange Commission to Quash Six Subpoenas Seeking Testimony from Its Enforcement Staff to be sent on October 3, 2005 to the following via e-mail and FedEx:

> Kathleen Cody, Esq.
> Securities and Exchange Commission
> 100 F. Street, N.E.
> Washington, D.C. 20549-9612
>
> Norman Gross, Esq.
> U.S. Attorney's Office
> District of New Jersey
> 401 Market Street
> Fourth Floor
> Camden, NJ 08101
>
> Michael Martinez, AUSA
> Craig Carpenito, AUSA
> U.S. Department of Justice
> 450 Main Street, Room 320
> Hartford, CT 06103

Barry S. Simon