Ideon and Cendant reserves directly to revenue.

42.  As the defendant and his co-conspirators knew, there was no justification in fact, or under GAAP, for this treatment of the merger reserves.  The defendant and his co-conspirators caused these fraudulent accounting treatments to be used while knowing and intending that:  a) they would ultimately be reflected in CUC's and Cendant's financial statements and public filings with the SEC; b) CUC's and Cendant's financial statements and public filings would falsely overstate CUC's and Cendant's operating income; and c) the investing public would rely upon such overstated operating income.

43.  By the above means, defendant **WALTER A. FORBES** and his co-conspirators fraudulently caused: a) the operating income CUC reported for many of its fiscal years from in or about the late 1980's through January 31, 1995 to be overstated by millions of dollars; b) the operating income CUC reported for its fiscal year ending January 31, 1996 to be overstated by approximately $10 million; c) the operating income CUC reported for its fiscal year ending January 31, 1997 to be overstated by approximately $23 million; and d) the CMS operating income that Cendant reported for its fiscal year ending December 31, 1997 to be

overstated by at least $110 million.  In addition, defendant
**FORBES** and his co-conspirators took steps to similarly draw on
the Cendant reserve to meet their target for the CMS operating
income to be reported in the fiscal year ending December 31,
1998.

<u>Underfunding of the Company's Membership Cancellation Reserve</u>

44.  Members of CUC's and Cendant's buying and other
clubs were required to pay their membership fees in full upon
joining the clubs or upon renewal of their memberships.  Some
members subsequently canceled their memberships and obtained
refunds, while other members failed to pay their membership fees
upon renewal.

45.  Defendant **WALTER A. FORBES** and his co-conspirators
represented to the SEC and the investing public that CUC and
Cendant placed a portion of the membership fees received into a
membership cancellation reserve to allow both for cancellations
and refunds and for the failure of some members to pay membership
fees upon renewal.  The conspirators were able to estimate from
CUC's and Cendant's experience how many members would cancel or
fail to pay their membership fees upon renewal each year.  The
conspirators represented that the amount of membership fees

placed into the membership cancellation reserve was sufficient, based on their experience, to cover what they called "estimated cancellations."

46. Rather than follow the stated practice, from at least the late 1980's to in or about 1998, the conspirators intentionally underfunded this membership cancellation reserve, thereby fraudulently increasing earnings.

47. As the defendant knew, there was no justification in fact, or under GAAP, for his treatment of this membership cancellation reserve. By failing to set aside sufficient amounts of membership fees in the membership cancellation reserve, the defendant and his co-conspirator knew and intended that: a) their fraudulent treatment of the membership cancellation reserve would ultimately be reflected in CUC's and Cendant's financial statements and public filings with the SEC; b) CUC's and Cendant's financial statements and public filings would falsely overstate CUC's and Cendant's earnings; and c) the investing public would rely upon such overstated earnings.

48. By failing to set aside sufficient amounts of membership fees in the membership cancellation reserve, the conspirators fraudulently caused: a) the earnings CUC reported

for each of its fiscal years from in or about the late 1980's
through January 31, 1995 to be overstated by millions of dollars;
b) the earnings CUC reported for its fiscal years ending January
31, 1996 and January 31, 1997 to be overstated by approximately
$48 million and $19 million, respectively; and c) the earnings
Cendant reported for its fiscal year ending December 31, 1997 to
be overstated by approximately $12 million.

Misallocation of Comp-U-Card Program Revenues and Expenses

49.  From at least as early as the late 1980's to in or
about 1998, defendant **WALTER A. FORBES** and his co-conspirators
inflated CUC's and Cendant's reported earnings by falsely
attributing revenues and expenses that had arisen from certain
membership programs to other membership programs that qualified
for more favorable accounting treatment.

50.  CUC immediately recognized membership fees as
revenue in some membership programs (the "immediate recognition
programs").  In other membership programs, CUC was required to
recognize membership fees as revenue on a pro-rated basis over
the life of the membership (the "deferred recognition programs").
The company disclosed to the SEC and the investing public that
it recognized membership fees as revenue it received on a pro-

rated basis over the "average membership period," which it represented to be "generally one to three years."  CUC also disclosed that it recognized expenses incurred by a particular program over approximately the same period of time that it recognized the revenue from that program.

51.  However, from at least as early as the late 1980's, defendant **WALTER A. FORBES** and his co-conspirators deliberately misallocated revenue generated from deferred recognition programs to immediate recognition programs.  As a result, the conspirators fraudulently accelerated Comp-U-Card's recognition of that revenue in a manner contrary to CUC's stated policy. [In addition, on at least one occasion during this period, the conspirators deliberately misallocated expenses from a program in which expenses would have been recognized immediately to another program in which expenses were to be recognized over a one-year period.  By this action, the conspirators fraudulently decelerated Comp-U-Card's expense recognition in a manner contrary to CUC's stated policy.] By increasing revenue [and decreasing expenses] in this manner, the defendant and his co-conspirators fraudulently inflated earnings.

52.  As the defendant knew, there was no justification

in fact or under GAAP for the misallocations set forth in paragraph 51. The defendant and his co-conspirators made these misallocations knowing and intending that: a) the misallocations would ultimately be reflected in CUC's and Cendant's financial statements and public filings with the SEC; b) CUC's and Cendant's financial statements and public filings would falsely overstate CUC's and Cendant's earnings; and c) the investing public would rely upon such overstated earnings.

53.   By the actions set forth in paragraph 51, the defendant and his co-conspirators fraudulently caused: a) the earnings CUC reported for each of its fiscal years from in or about the late 1980's through January 31, 1996 to be overstated by millions of dollars; b) the earnings CUC reported for its fiscal year ending January 31, 1997 to be overstated by approximately $10 million; and c) the earnings Cendant reported for its fiscal year ending December 31, 1997 to be overstated by approximately $17 million.

<u>Other Fraudulent Accounting Entries</u>

54.   From at least as early as the late 1980's to in or about 1998, defendant **WALTER A. FORBES** and his co-conspirators fraudulently inflated the reported earnings of CUC and Cendant by

knowingly causing CUC and CMS to make a variety of other

fraudulent accounting entries, including those set forth in

paragraphs 55 through 58 below.

55.  From in or about the late 1980's to in or about

early 1996, the conspirators routinely manipulated some standard

calculations of membership solicitation costs so as to

fraudulently reduce the expenses recognized by CUC.  By so doing,

the conspirators fraudulently caused the earnings CUC reported

for many of its fiscal years from in or about the late 1980's

through January 31, 1997 to be overstated by millions of dollars.

56.  At various times, including in or about early

1997, the conspirators caused CUC to arbitrarily reduce the

liability for commission expenses arising from the solicitation

of new members that Comp-U-Card carried on its books.  The

reduced liability was credited directly to revenue or against

operating expenses.  By so doing, the conspirators fraudulently

caused the earnings CUC reported for its fiscal year ending

January 31, 1997 to be overstated by at least approximately $4.5

million.

57.  In or about January 1998, the conspirators caused

Sierra retroactively to credit approximately $2.6 million to

revenue on the basis of an unsubstantiated entry in Sierra's
books indicating that the company might receive an unspecified
future tax benefit.  By so doing, the conspirators fraudulently
caused the earnings Cendant reported for its fiscal year ending
December 31, 1997 to be overstated by approximately $2.6 million.

58.  The conspirators knew that January 1997 was the
only month of CUC's fiscal year ending January 31, 1997 which was
included in Cendant's fiscal year ending December 31, 1997.  The
conspirators deliberately credited approximately $22 million
which CUC had earned in the months prior to January 1997 to CUC's
January 1997 earnings.  The conspirators had already fraudulently
inflated CUC's January 1997 earnings in the previous year with
approximately $11 million which they had drawn from merger
reserves as set forth in paragraph 43 above.  Therefore, by
inflating CUC's earnings for January 1997 as described in this
paragraph, the conspirators fraudulently caused the earnings
Cendant reported for its fiscal year ending December 31, 1997 to
be overstated by approximately $33 million.

59.  As the defendant knew, there was no justification
in fact, or under GAAP, for the fraudulent acts set forth in
paragraphs 55 through 58.  The defendant and his co-conspirators

committed these acts knowing and intending that: a) that these
fraudulent acts would ultimately be reflected in CUC's and
Cendant's financial statements and public filings with the SEC;
b) CUC's and Cendant's financial statements and public filings
would falsely overstate CUC's and Cendant's earnings; and c) the
investing public would rely upon such overstated earnings.

The Impact on Earnings Reports of CUC and Cendant and
<u>The Losses to Holders of Cendant Securities</u>

60.  By the means set forth above, defendant **WALTER A.
FORBES** and his co-conspirators fraudulently caused CUC and
Cendant to misreport their earnings as set forth below:

a.  The conspirators caused CUC to report operating
income for its fiscal year ending January 31, 1996 which was
overstated, in all, by at least $60 million, or more than 28
percent.  The conspirators thus caused CUC to report earnings per
share for that year before one-time expenses of $.86, when the
true figure was no more than $.67;

b.  The conspirators caused CUC to report operating
income for its fiscal year ending January 31, 1997 which was
overstated, in all, by at least $56 million, or more than 14
percent.  The conspirators thus caused CUC to report earnings per
share for that year before one-time expenses of $.70, when the

true figure was no more than $.61; and

      c.  The conspirators caused Cendant to report operating income for its fiscal year ending December 31, 1997 which was overstated by at least $170 million, which was more than 12 percent of Cendant's total operating income and more than 36 percent of the CMS operating income.  The conspirators thus caused Cendant to report earnings per share for that year before one-time expenses of $1.00, when the true figure was no more than $.88.

      61.  By causing CUC to report such rapid and consistent growth in operating income, the conspirators helped cause the price of CUC stock to rise from approximately $1.56 on August 23, 1989 to approximately $32.13 on December 17, 1997.  (The price on August 23, 1989, the first day CUC stock was traded on the New York Stock Exchange, has been adjusted to reflect stock splits between that date and December 17, 1997.)  This increase in the stock price from 1989 through 1997 helped the conspirators to continue making new acquisitions, since such acquisitions could largely be paid for with stock.

      62.  By the above means, defendant **WALTER A. FORBES** and his co-conspirators caused holders of Cendant securities to

sustain billions of dollars in losses after the fraudulent inflation of Cendant's reported earnings for the year ending December 31, 1997 was disclosed to the public on or about April 15, 1998.

Overt Acts

63. In furtherance of the conspiracy and to accomplish its unlawful objects, defendant **WALTER A. FORBES** and his co-conspirators committed and caused to be committed the following overt acts in the District of Connecticut, the District of New Jersey, and elsewhere:

a. On or about March 19, 1996, at Stamford, Connecticut, defendant **FORBES** and his co-conspirators caused CUC to issue a press release announcing its earnings for the fiscal year ending January 31, 1996 in which those earnings were overstated as set forth in paragraph 60(a) above.

b. On or about April 25, 1996, at Stamford, Connecticut, defendant **FORBES** and his co-conspirators caused CUC to file with the SEC an annual report on Form 10-K for the fiscal year ending January 31, 1996 in which CUC's operating income for that year was overstated by at least $60 million, or more than 28 percent.

c.  On or about March 11, 1997, at Stamford,
Connecticut, defendant **FORBES** and his co-conspirators caused CUC
to issue a press release announcing its earnings for the fiscal
year ending January 31, 1997 in which those earnings were
overstated as set forth in paragraph 60(b) above.

d.  On or about May 1, 1997, at Stamford,
Connecticut, defendant **FORBES** and his co-conspirators caused CUC
to file with the SEC an annual report on Form 10-K for the fiscal
year ending January 31, 1997 in which CUC's operating income for
that year was overstated by at least $56 million, or more than 14
percent.

e.  On or about December 15, 1997, defendant **FORBES**
and his co-conspirators caused CUC to file with the SEC CUC's
quarterly report on Form 10-Q for the third fiscal quarter ending
October 31, 1997 which contained the false statements set forth
in paragraph 2(a) through 2(h) of Count 5 of this Indictment.

f.  On or about February 2, 1998, at Stamford,
Connecticut, defendant **FORBES** and his co-conspirators caused the
CMS accounting unit to transmit by facsimile to Cendant
headquarters in Parsippany, New Jersey a schedule of the CMS
earnings which were to be included in the reported earnings of

Cendant for the fiscal year ending December 31, 1997.  The schedule overstated the revenue of CMS for the year ending December 31, 1997 by approximately $139 million.

g.  On or about February 4, 1998, at Parsippany, New Jersey, defendant **FORBES** and his co-conspirators caused Cendant to issue a press release announcing its earnings for the fiscal year ending December 31, 1997 in which Cendant's results were overstated as set forth in paragraph 60(c) above.

h.  On or about March 31, 1998, at Parsippany, New Jersey, defendant **FORBES** and his co-conspirators caused Cendant to distribute to Cendant's shareholders and the investing public Cendant's 1997 Annual Report for the fiscal year ending December 31, 1997 in which Cendant's operating income for that year was overstated by at least $170 million, or more than 12 percent.

i.   On or about March 31, 1998, at Parsippany, New Jersey, defendant **FORBES** and his co-conspirators caused Cendant to file with the SEC Cendant's annual report on Form 10-K for the year ending December 31, 1997 which contained the false statements set forth in paragraph 2(a) through 2(b) of Count 3 of this Indictment.

All in violation of Title 18, United States Code,

Section 371.

COUNT 2

(False Statement in Report
Required to Be Filed with the SEC)

1.  The allegations set forth in paragraphs 1 through 16 and 18 through 63 of Count 1 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

2.  On or about December 15, 1997, in the District of Connecticut, and elsewhere, defendant

**WALTER A. FORBES**

knowingly and willfully made and caused to be made a statement in a report and document required to be filed under the Securities Exchange Act of 1934, Title 15, United States Code, Sections 78a et seq., and the rules and regulations promulgated thereunder, which was false and misleading with respect to material facts, in that the defendant filed and caused to be filed with the SEC CUC's quarterly report on Form 10-Q for the third fiscal quarter ending October 31, 1997, in which, as the defendant knew, CUC's filing had misstated the following:

a.  For the three months ending October 31, 1997, total revenue was stated to be approximately $775 million when, in fact, total revenue was approximately $44 million less;

b.  For the three months ending October 31, 1997,

total expenses were stated to be approximately $612 million when, in fact, total expenses were approximately $9 million greater;

    c.  For the three months ending October 31, 1997, income before taxes was stated to be approximately $163 million when, in fact, it was overstated by 48 per cent, or approximately $53 million;

    d.  For the nine months ending October 31, 1997, total revenue was stated to be approximately $2,168 million when, in fact, total revenue was approximately $149 million less;

    e.  For the nine months ending October 31, 1997, total expenses were stated to be approximately $1,735 million when, in fact, total expenses were approximately $27 million greater;

    f.  For the nine months ending October 31, 1997, income before taxes was stated to be approximately $433 million when, in fact, it was overstated by 68 per cent, or approximately $176 million;

    g.  On October 31, 1997, current assets, primarily cash, were stated to be approximately $2,117 million when, in fact, it was overstated by approximately $124 million; and

    h.  On October 31, 1997, accounts payable and

accrued expenses, were stated to be approximately $464 million when, in fact, it was understated by approximately $77 million.

In violation of Title 15, United States Code, Section 78ff(a) and Title 18, United States Code, Section 2.

<u>COUNT 3</u>

(False Statement in Report
Required to Be Filed with the SEC)

1.  The allegations set forth in paragraphs 1 through 16 and 18 through 63 of Count 1 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

2.  On or about March 31, 1998, in the District of Connecticut and elsewhere, defendant

**WALTER A. FORBES**

knowingly and willfully made and caused to be made a statement in a report and document required to be filed under the Securities Exchange Act of 1934, Title 15, United States Code, Sections 78a <u>et seq.</u>, and the rules and regulations promulgated thereunder, which was false and misleading with respect to material facts, in that the defendant filed and caused to be filed with the SEC Cendant's annual report on Form 10-K for its fiscal year ending December 31, 1997, in which, as the defendant knew, Cendant's filing had misstated the following:

a.  Net revenues for the fiscal year ending December 31, 1997 was stated to be approximately $5,315 million when, in fact, this amount was overstated by approximately $139 million; and

b.  Merger-related costs and other unusual charges for the fiscal year ending December 31, 1997 was stated to be approximately $1,148 million when, in fact, this amount was overstated by approximately $200 million.

In violation of Title 15, United States Code, Section 78ff(a) and Title 18, United States Code, Section 2.

COUNT 4

(Securities Fraud – Hartford Steam Boiler)

1.   The allegations set forth in paragraphs 1 through 16 and 18 through 63 of Count 1 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

2.   The Hartford Steam Boiler Inspection and Insurance Company ("Hartford Steam Boiler") was a public company based in Hartford, Connecticut, that provided insurance to commercial clients.  It invested in various securities, including Cendant.

3.   On or about February 18, 1998, in the District of Connecticut, and elsewhere, defendant

**WALTER A. FORBES**

and others did willfully and knowingly, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, directly and indirectly use and employ manipulative and deceptive devices and contrivances in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5 in connection with the purchase of 5000 shares of Cendant common stock by Hartford Steam Boiler, by, in connection with such transaction, (i) employing devices, schemes, and artifices to defraud; (ii) making untrue statements

of material facts and omitting to state material facts necessary

in order to make the statements made, in the light of the

circumstances under which they which they were made, not

misleading; and (iii) engaging in acts, practices, and courses of

business which operated and would operate as a fraud and deceit

on the Hartford Steam Boiler Employees' Retirement Trust all as

set forth in substance in paragraphs 18 through 63 of Count 1 of

this Indictment.

In violation of Title 15, United States Code, Sections

78j(b) and 78ff(a), Title 17, Code of Federal Regulations,

Section 240.10b-5, and Title 18, United States Code, Section 2.

A TRUE BILL:


FOREPERSON


CHRISTOPHER J. CHRISTIE
SPECIAL ATTORNEY
UNITED STATES DEPARTMENT OF JUSTICE

UNITED STATES ATTORNEY
DISTRICT OF NEW JERSEY

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing Response of Walter

A. Forbes to Motion of the United States for Leave to Dismiss with Prejudice

Certain Counts of the Superseding Indictment and to Submit a Redacted

Indictment to the Jury to be sent on October 3, 2005 to the following via e-

mail and FedEx:

> Norman Gross, AUSA
> U.S. Attorney's Office
> District of New Jersey
> 401 Market Street
> Fourth Floor
> Camden, NJ 08101
>
> Michael Martinez, AUSA
> Craig Carpenito, AUSA
> U.S. Department of Justice
> 450 Main Street, Room 320
> Hartford, CT 06103

Barry S. Simon