UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.         )<br>)<br>)<br>WALTER A. FORBES       )<br>)<br>) | No. 3:02CR264 (AWT)<br><br>October 7, 2005 |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION OF DEFENDANT WALTER A. FORBES TO
(1) PRECLUDE THE GOVERNMENT FROM REFERRING TO
ROBERT TUCKER'S HANDWRITTEN NOTES AS BOARD "MINUTES"
AND (2) PRECLUDE THE GOVERNMENT FROM PRESENTING ANY
EVIDENCE, CROSS-EXAMINATION OR ARGUMENT CONCERNING
THE DIFFERENCES BETWEEN GX 5, GX 453, & GX 77
(Forbes Retrial Motion _In Limine_ No. 18)**

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this reply memorandum in support of his motion *in limine* (i) to preclude the government from referring to Robert Tucker's handwritten notes of CUC Board meetings as "minutes" and (ii) to preclude the government from presenting any evidence, cross-examination, or argument concerning the differences between GX 5, GX 453, and/or GX 77.

The government concedes the first portion of Mr. Forbes' motion. See Opp. at 1. Accordingly, this reply memorandum is limited to whether the Court

Oral Argument Requested

should preclude the government from making any reference to the differences between GX 5, GX 453, and/or GX 77.

## ARGUMENT

I.  **THE DIFFERENCES BETWEEN GX 5, GX 453, AND GX 77 ARE NOT PROBATIVE OF ANY OFFENSE CHARGED IN THIS CASE.**

The government concedes that the two sentences concerning merger reserves in Mr. Tucker's draft minutes of the April 9, 1997 board meeting (GX 453) that were omitted from the final minutes (GX 77) were <u>not a "red flag" that would reveal an accounting fraud</u>. See Opp. at 3. The government also concedes that the two people involved in preparing and editing the board minutes, Robert Tucker and Amy Lipton, are not alleged co-conspirators. <u>Id.</u> at 4 & 5 n.1. In addition, the government apparently concedes that Mr. Tucker sent the draft minutes containing the two sentences in question to CUC's outside auditors at Ernst & Young. <u>Id.</u> at 5 n.1. The government also concedes that this fact "shows that Tucker was not then attempting to conceal the fact that the issue had been raised." <u>Id.</u>

Despite these concessions, the government continues to assert that the deletion of the two sentences from the final Board minutes is somehow probative because "[t]he conspirators who were engaged in [alleged misuse of the Ideon merger reserve] would not want to add any attention to Davidson's embarrassing questions during the Board meeting about why the Ideon merger reserve was so large." Opp. at 4. The government also claims that the two sentences in the draft minutes "suggest[ed] that the merger reserves were problematic." <u>Id.</u> at 6. These

claims fail, however, as a matter of both logic and evidence.

First, contrary to the government's contention, the two sentences in the draft minutes said <u>nothing</u> about any embarrassing questions by Mr. Davidson, made no reference to the size of the Ideon merger reserve, and did nothing to suggest that the merger reserves were problematic. To the contrary, the draft minutes simply stated that "<u>Mr. Davidson asked certain questions concerning the reserves shown on the Company's financial statements and the Company's policies regarding reserves. Mr. Corigliano and Mr. Shelton responded to those inquiries.</u>" <u>See</u> <u>id.</u> at 2 (quoting draft minutes) (emphasis added). The actual language of the two sentences in the draft minutes was not embarrassing, did not refer to the size of the reserves, and contained no suggestion that the reserves were problematic. The government itself acknowledges that the language in the draft minutes was <u>not</u> a red flag of fraud. <u>Id.</u> at 3. Because the draft minutes made <u>no reference</u> to any "embarrassing question" about "why the Ideon merger reserve was so large," <u>id.</u> at 4, and contained no suggestion that the reserves were "problematic," <u>id.</u> at 6, the government's theory that the minutes had to be edited to hide that purported information has no basis in fact.[1]

---

[1] While the government asserts that the jury was entitled to discredit Mr. Tucker's testimony, Opp. at 4, Mr. Forbes' motion is primarily based on the plain language of the draft minutes (GX 453) and the fact that the draft minutes were sent to Ernst & Young (as demonstrated, <u>inter</u> <u>alia</u>, by DX 1089, Mr. Tucker's facsimile to Ernst & Young attaching the draft minutes, which bears an E&Y bates-stamp (appended hereto as Ex. 1)). In any event, the government offers no reason why an attorney with an excellent reputation such as Mr. Tucker would perjure himself, and no reason to doubt the validity of Mr. Tucker's testimony.

3

The government's theory also cannot be reconciled with the fact that Mr. Tucker provided the draft minutes to Ernst & Young on April 21, 1997, twelve days after the April 9, 1997 board meeting. See Tr. 12656-57; DX 1089 (Ex. 1 hereto). If the draft minutes truly "suggest[ed] that the merger reserves were problematic," Opp. at 6, as the government claims, an alleged co-conspirator of Mr. Forbes surely would have intervened to ensure that the draft minutes were not sent to the company's auditors. The record of the 2004 trial is replete with evidence about Mr. Corigliano's and his subordinates' extensive efforts to conceal from Ernst & Young any information that could reveal the fraud or raise a red flag.

The fact that the draft minutes were sent to Ernst & Young is utterly inconsistent with the government's theory that the draft minutes suggested that merger reserves at CUC were problematic or would have raised a concern about merger reserves. Because the draft minutes did nothing to suggest impropriety with respect to merger reserves, the deletion of two sentences from the draft minutes was not an act in furtherance of the alleged conspiracy and has no probative value in this case. The Court should preclude any evidence on this subject under Fed. R. Evid. 401 and 402.[2]

---

[2] The government's reliance on United States v. MacPherson, 2005 WL 2212043 (2d Cir. Sept. 13, 2005) (Opp. at 6), is misplaced. In MacPherson, the Court concluded that the evidence in question, the defendant's pattern of structuring transactions, id. at *7, was probative of his knowledge and intent in a structuring case. Id. Here, the evidence the government seeks to offer is not probative of any element of the charged offenses. While evidence may be admissible if it is "consistent with innocence as well as with guilt," id. at *6, it is not admissible when it has no probative value at all.

In addition, the government apparently concedes that it does not know who purportedly directed Ms. Lipton to delete the two sentences (which she certainly could have decided to do herself, as the General Counsel of CUC, and the person who routinely reviewed draft Board minutes) or why the two sentences were deleted. See Opp. at 5 n.1 (referring to "whomever wanted the two sentences removed" and stating that "someone decided to have those sentences removed"); id. at 5 (asserting that "Forbes or someone acting on his behalf" sought to edit the minutes). The action could have been taken by Ms. Lipton, who is not an alleged co-conspirator, for reasons having nothing to do with the government's theories. The government has presented nothing more than speculation about who caused the minutes to be edited or why it was done, and the admission of this evidence would be an improper invitation for the jury to engage in speculation. For this reason as well, the Court should exclude any evidence on this subject. See, e.g., Niagara Mohawk Power Corp. v. Jones Chemical, Inc., 315 F.3d 171, 177 (2d Cir. 2003) ("impermissible speculation" cannot form the basis for a jury finding); Radiation Dynamics, Inc. v. Goldmuntz, 464 F.2d 876, 887 (2d Cir. 1972) (improper to ask jury to draw inference that "rests merely upon speculation and conjecture").

Finally, the government does not respond to Mr. Forbes' contention that the Court should, in the alternative, exclude this evidence under Fed. R. Evid. 403 and/or Fed. R. Evid. 404(b). For the reasons set forth in Mr. Forbes' opening memorandum, the Court should preclude this evidence under Rules 403 and/or 404(b) if it does not do so under Rules 401 and 402.

5

## **CONCLUSION**

For the foregoing reasons, and the reasons set forth in Mr. Forbes' opening memorandum, the Court should (i) preclude the government from referring to Robert Tucker's handwritten notes of CUC Board meetings as "minutes" and (ii) preclude the government from presenting any evidence, cross-examination, or argument concerning the differences between GX 5, GX 453, and/or GX 77.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
    Brendan V. Sullivan, Jr. (Bar No. ct17115)
    Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

# EXHIBIT 1

Apr-21-97 03:06P R. T. Tucker/Phoenix Prod (914) 967 - 8161          P.01

**ROBERT T. TUCKER, ESQ.**
61 Purchase Street, #2
Rye, New York 10580

Telephone: (914) 967 - 8105
Facsimile: (914) 967 - 8161

**FACSIMILE COVER PAGE**

DATE: _____4/21/97_____   TIME: _____3:00 PM_____

TOTAL NUMBER OF PAGES: _____6_____ (Including this cover Page)

ATTENTION: _____Joseph Caparelli/Simon Wood_____

COMPANY: _____Ernst & Young_____

FAX NUMBER: _____(203) 326 - 8228_____

FROM: _____Robert T. Tucker_____

**MESSAGE**

Re: CUC International Inc.
Minutes

*Handwritten note:* SJW 4/28/97 / 4-29-97 — Note per discussion with Robert Tucker these were the only minutes subsequent to the minutes reviewed as part of our previous audit work on the fiscal 1997 results. No meetings were to be held between the date of this fax and the filing of the 10-K.

• • • • • • • • • • • • • • •
IF YOU HAD ANY TROUBLE RECEIVING THIS TRANSMISSION,
PLEASE CALL (914) 967 - 8105 IMMEDIATELY.

DEFENDANT'S
EXHIBIT
1089

EYS 1/97  001253

CUC INTERNATIONAL INC.  DRAFT 4/2/97

MINUTES

BOARD OF DIRECTORS

Pursuant to notice duly given, a meeting of the Board of Directors was held via conference telephone on March 7, 1997. All directors, other than Mr. Rumbough, were present.

Also present were Cosmo Corigliano, Amy N. Lipton, Robert T. Tucker. Walter A. Forbes, Chairman of the Company, presided and Mr. Tucker acted as Secretary.

Mr. Shelton stated that the primary purpose of the meeting was to review the status of certain possible acquisitions.

Mr. Shelton first reviewed the status of S Corp. The Company had been advised by the Investment Banker to the owner of S Corp. that a sale was being considered. Mr. Corigliano reviewed S Corp.'s financial situation. Mr. Shelton reviewed S Corp.'s business activities and discussed possible competitors if the company is actually put up for sale. The Board was advised that Management would be meeting with representatives of S Corp. in approximately one week. Management was instructed to continue to explore this matter and report back to the Board.

Mr. Shelton then led a discussion of the possible acquisition of SH Corp. Mr. Shelton reviewed the status of the negotiations. Mr. Shelton advised the Board that members of Management would be traveling to review the international operations of SH Corp. In addition, development activities and legal matters were being carefully reviewed.

Ms. Davidson reviewed several aspects of the business of SH Corp. which in her view, required specific attention and further due diligence. Among these were SH Corp.'s return situation and return history, its operating margins and its forward profit forecast. Mr. Corigliano pointed out that the financials of SH Corp. provided a fairly large reserve for returns. Ms. Davidson also suggested that in depth product due diligence was in order as well as a careful review of the product progress toward SH's significant increase in product flow and delivery schedule.

Mr. Shelton and Mr. McLeod then reviewed the management personnel of SH Corp. stating that management roles had not been determined and employment contracts have not yet been negotiated and the strategic fit of SH Corp. with the Company which was that in addition to its entertainment software

EYS 1/97 001254

Page 2

titles, SH Corp.'s licensed properties could be further marketed and leveraged by the Company's development and marketing resources, and that SH Corp.'s European operations would increase the distribution of the Company's software in Europe.

Mr. Davidson noted that changes in the valuation summary and the marketplace since the last discussion made the SH acquisition considerably less attractive than previously. Mr. Davidson then enumerated several concerns over this possible acquisition. These included (1) the reliability of the earnings of SH Corp. in view of their record of many years of losses and only a few quarters of profitability; (2) the significant recent appreciation in its stock price and (3) current issues at CUC Software which will require significant attention of management. After stating some specifics, Mr. Davidson stated that CUC should not be spending another $ 350 - 400 million on an acquisition until we get own operations in order. *[handwritten: ie per Cosmo improve performance and results of CUC Software]*

Ms. Davidson asked the Board to bear in mind when considering acquisitions the differences in the software and the membership parts of the business, particularly with regard to the different management challenges and different risks and benefits to shareholder value.

Mr. Forbes acknowledged the concerns of Mr. and Ms. Davidson. He pointed out that the Board must always keep in mind the overall vision of CUC. Ms. Davidson expressed her agreement with an acquisition as long as in the Board's best business judgment there was a clear reason to believe that the acquisition would increase shareholder value. Management was instructed to continue to review this matter and report back to the Board.

Ms. Lipton then reviewed the current situation regarding trading in the Company's securities by the Members of the Board. *[handwritten: per Cosmo no SEC/peeking implications.]*

There being no further business, the meeting adjourned.

— March 7, 1997

Robert T. Tucker
Secretary

EYS 1/97 001255

CUC INTERNATIONAL INC.        DRAFT

MINUTES

BOARD OF DIRECTORS

Pursuant to Notice duly given, a meeting of the Board of Directors was held in New York, NY on April 9, 1997. All Directors were present.

Also present were Cosmo Corigliano, Amy N. Lipton, and Robert T. Tucker. Various other members of the Company's management attended portions of the meeting. Walter A. Forbes, Chairman of the Company, presided and Robert T. Tucker acted as Secretary.

Mr. Corigliano reviewed the Company's financial results for the fourth quarter and for the fiscal year ended January 31, 1997. Such results were compared to results for the relevant period in the prior fiscal periods and the Company budgets for the fourth quarter and fiscal 1997. Mr. Davidson asked certain questions concerning the reserves shown on the Company's financial statements and the Company's policies regarding reserves. Mr. Corigliano and Mr. Shelton responded to these inquiries.

*[handwritten: Per discussion with Cosmo Corigliano no new information on potential acquisitions.]*

Mr. Shelton then led a discussion on certain possible acquisitions which had been discussed at the previous meeting. Mr. Shelton advised that the acquisitions of S Corp and SH Corp were not proceeding at this time. Mr. Shelton also reviewed the status of several possible acquisitions which were in a very early exploratory stage. Mr. Shelton advised the Board that management would report further to the Board at its next meeting.

Mr. McLeod then led a discussion of certain of the Company's operating units including BCI, Interval, Entertainment Publications and FISI.

*[handwritten: See legal letter updates]*

Ms. Lipton reported on the status of certain litigation matters relating to the acquisition of Ideon.

Mr. Burnap, Chairman of the Nominating Committee, then presented to the Board, the resolutions of the Committee relating to the 1997 Annual Meeting of Stockholders. After discussion, the following resolutions were approved by the Board. Robert Davidson and Janice Davidson abstained from the vote on this matter.

EYS 1/97 001256

- 2 -

| | | |
|---|---|---|
| 1. | Date, Time and Place | June 11, 1997 - 9:15 AM[?]<br>Hyatt Regency, Old Greenwich, CT. |
| 2. | Record Date | April 25, 1997 |
| 3. | Election Inspectors | Boston EquiServe |
| 4. | Proxies | Walter A. Forbes<br>E. Kirk Shelton |
| 5. | Size of Board | 11 Members |
| 6. | Candidates for the Board | |
| | Bartlett Burnap | Term Ending 2000 |
| | Robert M. Rittereiser | Term Ending 2000 |
| | Walter A. Forbes | Term Ending 2000 |
| 7. | Accountants for Fiscal Year<br>Ending January 31, 1998 | Ernst & Young |

Robert Davidson and Janice Davidson were then excused from the meeting and a discussion took place relating to certain aspects of the acquisition and operation of Davidson Associates, Inc. At the conclusion of this discussion, Robert Davidson and Janice Davidson rejoined the meeting.

Ms. Davidson then led a discussion concerning questions of the Company's values, particularly as these relate to the Company's entertainment software products. After discussion, the following resolution, presented by Ms. Davidson, was unanimously adopted:

> RESOLVED that the CUC management establish a Code of Decency, with guidelines for the treatment of sex violence and foul language in the subject and content of the Company's entertainment software products, for the Board to review at its June meeting.

There then ensued a short discussion of the format and scope of the minutes of the Board of Directors meetings. The Board agreed to table this discussion until the June, 1997 meeting.

EYS 1/97   001257

- 3 -

Several members of the Company's management then led a lengthy presentation and discussion of the Company's interactive operations and, in particular, its present and future activities on the Investment.

There being no further business, the meeting duly adjourned.

April 9, 1997

Robert T. Tucker

Secretary

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing Reply Memorandum in Support of Motion of Defendant Walter A. Forbes to (1) Preclude the Government from Referring to Robert Tucker's Handwritten Notes as Board "Minutes" and (2) Preclude the Government from Presenting any Evidence, Cross-Examination or Argument Concerning the Differences Between GX 5, GX 453, & GX 77 (<u>Forbes Retrial Motion *In Limine* No. 18</u>) to be sent on October 7, 2005 to the following via Federal Express and email:

> Michael Martinez, Esq.
> Craig Carpenito, Esq.
> United States Attorneys
> The Federal Building
> U.S. Department of Justice
> 450 Main Street, Room 320
> Hartford, CT  06103
>
> Norman Gross, Esq.
> U.S. Attorney's Office
> District of New Jersey
> 401 Market Street
> Fourth Floor
> Camden, NJ  08101

_____
Barry S. Simon