UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AWT) |
| | : | |
| v. | : | |
| | : | October 6, 2005 |
| | : | |
| | : | |
| WALTER A. FORBES | : | |

GOVERNMENT'S MEMORANDUM IN OPPOSITION TO FORBES' MOTION FOR
PERMISSION TO EXAMINE MR. CORIGLIANO ON POLYGRAPH EXAMINATIONS

<u>(FORBES RETRIAL MOTION IN LIMINE 21)</u>

<u>INTRODUCTION</u>

In April 2003, the Government informed Forbes that Cosmo Corigliano's lawyers had told the Government during an attorney proffer session, when Corigliano was still denying any involvement in the charged fraud in this case, that Corigliano had taken a private polygraph examination and had "done very well."[1]  Exhibit A hereto.[2]  Fourteen months later, shortly before Corigliano was called to testify during the initial trial, Forbes' attorneys demanded that the Government disclose the questions that were put to Corigliano during the polygraph examination, the answers that he gave, and the polygrapher's

_____

[1]  As the Government previously explained during the initial trial, Corigliano's lawyers later informed the Government that Corigliano had submitted to a second polygraph examination, but provided no additional information about that examination.

[2]  The Government reiterated this disclosure in another discovery letter dated June 30, 2004.  Exhibit 1 to Forbes Memorandum ("FM").

conclusions about the truthfulness of Corigliano's answers.[3]
Forbes' lawyers further informed the Government that they
intended to present evidence and to cross-examine Corigliano
regarding his submission to the polygraphs.

The Government moved *in limine* to prevent Forbes from
presenting evidence or cross-examining Corigliano regarding his
private polygraph examinations. "Government Motion *In Limine* to
Preclude Evidence and Cross-examination of Cosmo Corigliano
Regarding Polygraph Examinations," Docket No. 885, filed June 29,
2004. Following briefing by the parties, this Court granted the
Government's motion in large part, but offered to permit limited
cross-examination of Corigliano about whether he took a polygraph
examination, and whether he lied to the polygrapher. Tr. 7802-
03. Neither Forbes nor his co-defendant undertook any such
cross-examination, however.

Forbes now renews his request for additional discovery

---

[3]  As the Government previously explained during the initial
trial, no Government official was present at either of
Corigliano's private polygraph examinations, or had advance
knowledge that they would occur. The Government has never
received a copy of any reports that the polygrapher may have
written, or any other documents that may have been generated as a
result of the examinations. Corigliano and his attorneys have
never provided the Government with any additional information
regarding the polygraph examinations other than the fact that the
polygrapher had died before the first trial. The Government thus
provided Forbes with all of the information known to the
Government about Corigliano's pre-indictment polygraph
examinations.

regarding the Corigliano polygraphs[4] and wide-ranging cross-examination of Corigliano, including inquiries about the questions that the now deceased polygrapher put to Corigliano, the answers that Corigliano gave in response, whether Corigliano believed that his answers were true or false, and whether the polygrapher believed that Corigliano's answers were true or false. Forbes' only proposed limitation on his inquiries regarding the polygraph examinations is that Forbes "is not now seeking to introduce the results of Mr. Corigliano's polygraph for their substantive correctness." FM 6, n.2.

Because Forbes' current demand far exceeds the appropriate limits set by this Court when this issue was previously addressed, and Forbes has given no good reason for this Court to change its prior ruling, he has failed to satisfy the strict requirements for obtaining reconsideration, and his

---

[4] As he did during the first trial, Forbes has demanded that the Government disclose all of the questions and answers that took place during Corigliano's polygraph sessions. As the Government previously explained, it does not possess that information. Forbes now insists that the Government require Corigliano, as part of his cooperation in this case, to supply the Government with Forbes' requested information so that the Government can give it to the defense. FM 2, n. 1.

As demonstrated herein, this Court should reject Forbes' request to expand the limits which this Court previously set on cross-examination by reference to the polygraphs. Forbes does not claim that he needs any additional information in order to conduct that limited inquiry. Should the Court decline to modify its previous ruling limiting the scope of cross-examination regarding the polygraph examinations, it should also reject Forbes' request for an evidentiary hearing.

present motion should be denied.   See Jordan (Bermuda) Investment

Co., Ltd. v. Hunter Green Investments Ltd., 2003 WL 21263544, *3

(S.D.N.Y., June 2, 2003)(denying reconsideration where the moving

party "failed to meet [the applicable] standard by neither

pointing to controlling decisions or data that the court

overlooked nor showing that reconsideration is necessary in order

to correct a clear error or prevent manifest injustice")

(internal punctuation and citations omitted).

   **A. This Court should again reject Forbes' request to present
   evidence regarding the "results" of Corigliano's polygraph
   examinations.**

         As the Government previously explained, Forbes' request

to admit evidence or cross-examine Corigliano regarding the

polygrapher's opinions about whether or not Corigliano had

provided truthful answers to the polygraph questions (whether or

not for the purpose of proving "their substantive correctness")

should be rejected.   Before the Supreme Court's decision in

Daubert v. Merrell-Dow Pharamaceuticals, Inc., 509 U.S. 579

(1993), the law of this Circuit suggested that polygraph evidence

was per se inadmissible.   E.g., United States v. Rea, 958 F.2d

1206, 1224 (2d Cir. 1992).   See United States v. Scheffer, 523

U.S. 303, 309-10 (1998)("[T]here is simply no consensus that

polygraph evidence is reliable.   To this day, the scientific

community remains extremely polarized about the reliability of

polygraph techniques.") (internal citations and punctuation

omitted).  Following <u>Daubert</u>, this Circuit has yet to hold that polygraph results have achieved a level of reliability that justifies their admission into evidence for any purpose.  <u>United States v. Messina</u>, 131 F.3d 36, 42 (2d Cir. 1997)(affirming the exclusion of polygraph evidence offered by the defense based on the district court's finding that the "polygraph evidence actually presented was unworthy of credit"); <u>United States v. Kwong</u>, 69 F.3d 663, 667-68 (2d Cir. 1995) (district court properly excluded polygraph evidence offered by the defendant).

Exclusion of polygraph evidence typically rests on two grounds.  First, the evidence fails to meet the reliability requirement of Fed. R. Evid. 702 for scientific evidence. <u>Messina</u>, 131 F.3d at 42 (affirming district court's determination that defense proffered polygraph evidence "has not reached a sufficient sate of reliability to be admissible under Rule 702"). Second, polygraph evidence is routinely excluded pursuant to Fed. R. Evid. 403 because its probative value is slight, but it carries a substantial risk of confusing and misleading the jury. <u>E.g.</u>, <u>Kwong</u>, 69 F.3d at 668 (affirming exclusion of polygraph evidence by operation of Rule 403).  Thus,

> By its very nature, polygraph evidence may diminish the jury's role in making credibility determinations. . . . Unlike other expert witnesses who testify about factual matters outside the jurors' knowledge, such as the analysis of fingerprints, ballistics, or DNA found at a crime scene, a polygraph expert can supply the jury only with another opinion, in addition to its own, about whether the witness was telling the truth. [One] may legitimately be concerned

about the risk that juries will give excessive weight to the
opinions of a polygrapher, clothed as they are in scientific
expertise. . . .

Scheffer, 523 U.S. at 313-14 (internal citation and footnote

omitted).

As the Government pointed out when this issue was

addressed during the initial trial, the courts are particularly

skeptical of polygraph examinations, such as those administered

to Corigliano, which are conducted by persons hired by suspects

of criminal activity, without prior notice to the Government.

Such "privately commissioned polygraph examination[s]" are

particularly unreliable because they deprive the Government of an

opportunity to: (1) conduct its own contemporaneous examination

of the suspect with a polygrapher of the Government's choosing;

(2) have a representative present to observe the privately

commissioned examination; and (3) offer input regarding the

procedures employed.  United States v. Thomas, 167 F.3d 299, 307-

08 (6th Cir. 1999) ("We have repeatedly held that unilaterally

obtained polygraph evidence is almost never admissible under

Evidence Rule 403.")(internal quotation marks omitted).

Additionally, the Thomas Court noted that the reliability of the

private polygraph examination in that case suffered from the fact

that it occurred several years after the incidents about which

the suspect was polygraphed, which may also be the case here.

Id. at 403.  This Court should resist Forbes' current efforts to

alter this Court's prior determination that evidence of the polygraph results is admissible for any purpose.[5]

**B. This Court should again reject Forbes' contention that he is entitled, pursuant to Fed. R. Evid. 608(b) to cross-examine Corigliano about the questions posed, the answers given, and the results of the polygraph examinations, and further exclude evidence of Corigliano's communications to the Government about those examinations.**

The same reasons that support the routine exclusion of defense proffered evidence regarding polygraph examinations as substantive evidence (unreliability, confusion, and usurpation of the jury's credibility function), also support the preclusion of defense impeachment by reference to polygraph examinations. See United States v. Lopez, 885 F.2d 1428, 1437-38 (9th Cir. 1989) (precluding defense cross-examination by reference to the witness's reaction to another person's polygraph results because "many of the same concerns [given the generally suspect nature of polygraph evidence] would be present that are sought to be avoided in excluding evidence of polygraph results as direct evidence"), overruled on other grounds as recognized by United States v. Arellano-Cardenas, 993 F.2d 884, 1993 WL 147354, *2

---

[5] Forbes again harps on the fact that Corigliano is a critical witness in this case, FM 5, but Corigliano's relative importance as a witness does not suspend the restrictions against polygraph evidence. United States v. A & S Council Oil Co., 947 F.2d 1128, 1133-34 (4th Cir. 1991)(following "[t]his court's precedents [which] preclude direct attacks on or bolstering of the credibility of a witness through evidence that the witness has taken a polygraph test," even regarding "a lone witness upon whom the government's case depends, whose credibility is heavily attacked, and who is disbelieved in part by the jury").

(9th Cir. 1993); accord, United States v. Wills, 88 F.3d 704, 714 (9th Cir. 1996).  The Courts have consistently prevented criminal defendants from seeking to impeach a prosecution witness, either through cross-examination or by the presentation of extrinsic evidence regarding the witness's submission to a polygraph examination.  See United States v. Williams, 95 F.3d 723, 728-30 (8th Cir. 1996) (affirming exclusion of evidence regarding a polygraph examination taken by the chief prosecution witness, offered to impeach his testimony); United States v. Ferris, 719 F.2d 1405, 1408 (9th Cir. 1983) (affirming the exclusion of "unfavorable results of a polygraph test given a Government witness"); United States v. Bagsby, 489 F.2d 725, 726 (9th Cir. 1973)(affirming the preclusion of defense cross-examination of an accomplice regarding his polygraph examination results); United States v. Johnson, 904 F.Supp. 1303, 1311 (M.D.Ala. 1995) (granting the Government's motion in limine to preclude the impeachment of a prosecution witness by reference to his performance on a polygraph examination);  United States v. MacEntee, 713 F.Supp. 829, 830-31 (E.D.Pa. 1989)(excluding defense impeachment evidence that prosecution witness "flunked" a polygraph examination, "because polygraph evidence is likely to be shrouded with an aura of near infallibility . . . such evidence is likely to mislead the jury")(internal punctuation and citation omitted).

Forbes contends that, because the purpose of his proposed cross-examination is not to demonstrate that accuracy of the polygrapher's conclusions, the restrictions against polygraph evidence discussed above are inapplicable.  For instance, Forbes argues that he should be permitted wide-ranging cross-examination of Corigliano under Fed. R. Evid. 608(b), which permits impeachment by reference to specific instances of conduct probative of truthfulness.  FM 10-12.  According to Forbes, the fact that Corigliano apparently lied to the polygrapher would further Forbes' contention that Corigliano is lying when he testifies during the retrial that Forbes participated in the charged fraudulent scheme.  This Court appropriately addressed that concern during the initial trial by permitting the defendants to ask Corigliano if he took a polygraph examination, and if he lied to the polygrapher.  Forbes declined to take advantage of that ruling and pose those questions during his extensive and wide-ranging cross-examination of Corigliano during the first trial.  He provides no good reason why he should be permitted to go beyond such an inquiry during the retrial.

In the event that Forbes changes course and elicits evidence during the retrial that Corigliano took a polygraph and lied to the polygrapher, the Government requests that this Court give a contemporaneous limiting instruction that such evidence is

admissible only for the purpose described in Rule 608(b).[6]

Otherwise, Forbes may argue, and/or the jury may infer, that the

evidence shows that Corigliano was or believed that he was such a

skilled liar that he could "fool" the polygrapher.  This Court

previously concluded that such an argument would be improper.[7]

---

[6]  That rule provides in pertinent part:

> **(b) Specific instances of conduct**. Specific instances of the
> conduct of a witness . . . .  , **for the purpose of attacking
> or supporting the witness' character for truthfulness** may .
> . .  in the discretion of the court, if probative of
> truthfulness or untruthfulness, be inquired into on cross-
> examination of the witness (1) **concerning the witness'
> character for truthfulness or untruthfulness** . . .

Fed. R. Evid. 608(b)(emphasis added).

        Accordingly, an appropriate limiting instruction which
reflected the purpose of Rule 608(b) would state that
Corigliano's testimony about the polygraph examinations is being
admitted only for the limited purpose of showing Corigliano's
character for truthfulness or untruthfulness.  The limiting
instruction should also direct the jury not to speculate about
whether the polygraph examiner concluded that Mr. Corigliano's
answers during the examination were or were not truthful, and
additionally should not speculate about whether Mr. Corigliano
believed that he could "fool" the polygraph examiner into
believing that Mr. Corigliano's false answers were truthful.

[7]  In addressing this issue, this Court explained that the
defendants' proposed use of the polygraph evidence:

> really goes to suggest to the jury . . .  that Mr.
> Corigliano -- without knowing what questions were asked,
> first of all, that Mr. Corigliano took a polygraph, that he
> lied, that he passed the test, and thus the substance of the
> suggestion to the jury is that Mr. Corigliano is such a
> skillful liar that he can fool the polygraph machine.  And
> to me, that's what it's really being offered for, not for
> the probative value of lack of credibility because he made
> prior inconsistent statements.

(continued...)

Forbes evidently wants to go beyond asking Corigliano if he lied to the polygrapher, and inquire about the fact that Corigliano's attorneys told the Government during a proffer session that Corigliano took a polygraph examination and "did very well."[8]  He also seeks to elicit that evidence for purposes other than that specified by Fed. R. Evid. 608(b), supporting or attacking Corigliano's character for truthfulness.  Thus, Forbes seeks to use evidence of the polygraph results and of Corigliano's statements to the Government about those results to demonstrate Corigliano's bias, and his ability to deceive, issues that are beyond the limited scope of Rule 608(b).  This Court should again prevent this line of inquiry for the reasons advanced by the Government in its prior submissions on this matter.

---

[7](...continued)
        I think it's not appropriate to offer it for that purpose when we don't have a showing as to what questions were asked on that polygraph, what questions were asked on the second polygraph, how he did on the second polygraph. And in order to get into all of that material, it seems to me that I need to conduct a <u>Daubert</u> analysis, which I haven't done.

Tr. 7796-97.

[8]  To the extent that Forbes suggests that Corigliano authorized his attorneys to mislead the Government into believing that Corigliano played no role in the fraud by making representations about Corigliano's performance on the polygraphs, this Court has already determined that there is no factual basis for any claim that Corigliano authorized his lawyers to do any such thing.  Tr. 7803.

Just as evidence regarding the polygraph results should be excluded under Rules 702 and 403 because of the likelihood of confusion and waste of time, evidence regarding Corigliano's attempts to deceive the Government by taking a polygraph examination should likewise be excluded.  If, as Forbes now proposes, the jury were to learn that Corigliano's lawyers informed the Government that Corigliano "did very well" on a privately-administered polygraph without also learning about the unreliability of polygraph examinations in general, and of the unreliability of the particular polygraph technique to which Corigliano submitted, the jury would be misled in precisely the same way that causes the court to routinely exclude polygraph evidence under Rule 403.  Thus, the jury might conclude that Corigliano is a particularly skilled liar, because he "did very well" on a polygraph, and only a skilled liar could "fool" the polygrapher.  Such a conclusion would be unwarranted, because it would rest on the jury giving "excessive weight to the opinions of a polygrapher, clothed as they are in scientific expertise." Scheffer, 523 U.S. at 313-14.  The jury could not be disabused of such a conclusion without evidence regarding the particular polygraph examination at issue here (which might be unavailable due to the death of the polygrapher), as well as evidence about

the science and reliability of polygraph testing in general.[9]

Additionally, such an argument would require the jury to speculate about Corigliano's performance on the polygraph (i.e., the "results" of the polygraph) and draw inferences that might be at odds with the true facts.  See United States v. Bowen, 857 F.2d 1337, 1341-42 (9th Cir. 1988) (even though evidence that a defendant had falsified his polygraph results was relevant to prove his consciousness of guilt, the district court properly excluded the evidence under Rule 403 because the evidence would have led the jury to infer that the defendant had flunked the polygraph, and given undue weight to that inference).  Thus, the jury might infer that, because Corigliano submitted to a polygraph examination and told the Government that he had done so, but later pleaded guilty in this case, Corigliano had "flunked" the polygraph examination and had pleaded guilty because of his poor performance on the polygraph, rather than because he was honestly admitting his guilt.

United States v. Robbins, 197 F.3d 829, 843-44 (7th Cir. 1999), is instructive on this point.  In that case, the Seventh Circuit affirmed the exclusion of evidence about whether

---

[9]  Forbes speculates that, notwithstanding the representations of Corigliano's lawyers to the Government, Corigliano may not have even taken a polygraph examination, or took the examination and did not "do very well."  FM 5.  This Court should not conduct pointless evidentiary hearings or otherwise delay this case to investigate Forbes' unwarranted speculation.

or not a prosecution witness took a polygraph examination, even though the defendant's basis for admitting the evidence was stronger than Forbes' basis would be here.   In <u>Robbins</u>, a witness had entered into a cooperation agreement which obligated him to submit to a polygraph examination if requested by the Government, and that agreement, including the polygraph provision, was admitted into evidence.   The witness had never been asked to submit to a polygraph and had not done so.   The defendant sought to establish that fact at trial in order to dispel the erroneous inference that the witness had taken and passed a polygraph, and was therefore a credible person.   The district court prevented the defendant from doing so, basing its decision on Rule 403. The Court of Appeals affirmed, based on reasoning that applies equally here.   197 F.3d at 844 ("The trial court applied the balancing test of Federal Rule of Evidence 403 and determined that, in the context of this case, even the threshold question as to whether a polygraph test had been administered would confuse and cause speculation among the jury.").

Here, the Court has already permitted Forbes to do what the district court in <u>Robbins</u> would not allow the defendant to do, elicit evidence about whether a cooperating witness submitted to a polygraph.   Forbes' request to go far beyond that inquiry

should be rejected.[10]

For similar reasons, Forbes should not be permitted to attempt to demonstrate or argue that Corigliano subjectively believed that he was such a skilled liar that he could "fool" the polygrapher.  Such an argument would merely add an additional level of speculation (Corigliano's speculative understanding of the reliability of polygraph results) upon the already speculative reliability and limited helpfulness of polygraph evidence generally.

**C. This Court should again reject Forbes' contention that he is entitled, by operation Fed. R. Evid. 613(b), to cross-examine Corigliano about the content and results of his polygraph examinations.**

This Court should also again reject Forbes' argument that he should be permitted broad-ranging cross-examination of Corigliano regarding the polygraphs pursuant to Fed. R. Evid. 613(b), which permits cross-examination by reference to a prior inconsistent statement.  Forbes has failed to cite a single case,

---

[10]  In Murphy v. Cincinnati Ins. Co., 772 F.2d 273, 277 (6th Cir. 1985), the Court of Appeals affirmed the district court's discretionary decision to admit evidence that the plaintiff/ insured in an action to recover insurance proceeds for fire damage to the insured's home had volunteered to take a polygraph examination to support his contention that he had not set the fire.  This Court has likewise permitted Forbes to question Corigliano about whether he took a polygraph examination, and in addition, to elicit evidence that Corigliano lied to the polygrapher.  Accordingly, Murphy does not advance Corigliano's claim that he is entitled to greater latitude in cross-examining Corigliano about the polygraphs than this Court has already permitted.

and the Government's research has disclosed none, in which cross-examination regarding a witness's experience with polygraphs was permitted under Rule 613(b).[11]

Forbes seeks to question Corigliano under Rule 613 "concerning the fact that he took the polygraph examination and the statements he made to the polygrapher," erroneously

---

[11]    Thus, in <u>United States v. Melton</u>, 27 Fed.Appx. 664, 666 (7th Cir. 2001)(unpublished), cited by Forbes, the Court affirmed the district court's limitation on the cross-examination of a prosecution witness by reference to his polygraphs, and merely noted in passing that the district court had permitted some cross-examination on the matter.  The Court of Appeals was not asked to decide, and did not decide, whether the district court would have erred by excluding any questioning of the witness regarding his responses to polygraph questions.  Additionally, Rule 613 was not mentioned in that opinion.

    <u>Underwood v. Colonial Penn Ins. Co.</u>, 888 F.2d 588 (8th Cir. 1990), also cited by Forbes, involved an action by the insured against his insurer to refuse to pay a claim for fire damage which the insurer suspected had been caused by arson.  A deputy sheriff who investigated the fire testified that he asked the plaintiff if he would submit to a polygraph, and, according to the sheriff, the plaintiff refused and cursed at the sheriff. On appeal, the defendant/insurer argued that cross-examination of the plaintiff regarding his refusal to be polygraphed was permissible under Rule 613.  888 F.2d at 591.  The Court of Appeals did not squarely address the claim, finding that the district court had permissibly exercised its discretion to permit the cross-examination "for the purpose of impeaching Underwood's credibility by contradiction" because the plaintiff had testified that he had offered to cooperate fully with the sheriff's investigation.  <u>Id.</u>

    Here, Corigliano has admitted that he initially lied to the Government about his involvement in the charged fraud, and Forbes will be permitted to question Corigliano about whether he lied to the polygrapher.  Such testimony will permit Forbes to contradict Corigliano's trial testimony that he and Forbes conspired to manipulate CUC's financial results without resort to a detailed inquiry into Corigliano's polygraph examinations.

contending that such an inquiry would accord with this Court's prior ruling.  FM 9.  Although this Court previously ruled that Forbes could question Corigliano about whether he took a polygraph examination, it precluded cross-examination about what Corigliano was asked, what he answered, and what the polygrapher opined about Corigliano's answers.[12]

To the extent that Corigliano made statements to the polygrapher which were inconsistent with his trial testimony, this Court should again exclude such evidence pursuant to Fed. R. Evid. 403 as confusing and wasteful.  Forbes has a wealth of Corigliano's prior inconsistent statements to work with apart from any statements he made during his polygraph examinations.

---

[12]  Forbes cites several cases which held that the Government was required under Brady v. Maryland to disclose information regarding polygraph examinations taken by prosecution witnesses.  Jacobs v. Singletary, 952 F.2d 1282 (11th Cir. 1992); Anderson v. United States, 788 F.2d 517, 520 (8th Cir. 1986); United States v. Hart, 344 F.Supp. 522, 523 (E.D.N.Y. 1971).  Those cases are inapposite to Forbes' arguments that polygraph evidence is admissible at the retrial, as opposed to merely discoverable.  See Anderson 788 F.2d at 519, n.1 ("we do not recede from the rule that polygraph examination results should not be admitted absent stipulation"); MacEntee, 713 F.Supp. at 831 (finding Hart unpersuasive to the extent that it suggested that polygraph evidence was admissible merely because it was discoverable under Brady).

Forbes' cases are also of questionable vitality on the discovery issue in light of the Supreme Court's intervening holding in Wood v. Bartholomew, 516 U.S. 1, 8 (1995) that the prosecution did not violate Brady by failing to disclose polygraph evidence that was not admissible under controlling state law even for impeachment.  In any event, the Government has turned over all relevant information in its possession regarding Corigliano's polygraphs.

Corigliano admittedly made statements to Government investigators during his January 1999 proffer session that were inconsistent with his trial testimony. Tr. 7029-32, 7054, 7630-68. Unlike any statements that Corigliano made to his privately retained polygrapher, his false statements to the Government violated the law. Tr. 7667-68. Corigliano also admittedly made false exculpatory statements in a letter that his lawyers sent to the Cendant Board of Directors shortly after the accounting fraud was publicly disclosed in May. Tr. 7675-81. He also admittedly lied to E&Y auditors, Tr. 7712, Wall Street analysts, Tr. 7748, CUC and HFS executives who were not involved in the fraud, Tr. 9010-11, and to the investing public to the extent that Corigliano, as the CFO of CUC, signed off on CUC's SEC filings that contained financial information which Corigliano knew to be false and misleading. Tr. 7895-96. All of those statements were inconsistent with some portions of Corigliano's trial testimony.

Given the abundant evidence of Corigliano's other prior statements that are inconsistent with his anticipated trial testimony, this Court should again exercise its discretion under Rule 403[13] and preclude wasteful and misleading cross-examination about Corigliano's prior statements to a polygrapher that are

---

[13] Tr. 7796 (Court's prior ruling: "As to the prior inconsistent statements, it seems to me that the probative value in terms of the prior inconsistent statements isn't very high . . . ").

also inconsistent to his anticipated trial testimony.

**D. This Court's previously imposed limitations on Forbes' cross-examination of Corigliano by reference to his polygraph examinations do not violate Forbes' confrontation rights.**

Forbes again contends that the Confrontation Clause will be violated if this Court does not permit essentially unrestricted cross-examination of Corigliano regarding the polygraph examinations. The law is otherwise. Delaware v. Fensterer, 474 U.S. 15, 20 (1985)("Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.")(emphasis in original). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). Under Fed. R. Evid. 403, a district court may, consistent with a defendant's confrontation rights, restrict cross-examination into relevant matters if it finds that "the probative value of the testimony is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative

19

evidence." <u>United States v. Crowley</u>, 318 F.3d 401, 417 (2d Cir. 2003)(rejecting confrontation clause challenge to restrictions on defense cross-examination); <u>accord</u> <u>United States v. Rahman</u>, 189 F.3d 88, 132 (2d Cir. 1999); <u>King v. Trippett</u>, 192 F.3d 517, 522-25 (6th Cir. 1999)(defendant's confrontation rights were not violated by limiting cross-examination regarding a prosecution witness's polygraph examination).[14]  Particularly where Forbes has a wealth of other evidence with which to cross-examine Corigliano for days on end, this Court's reasonable limitation (but not elimination) of cross-examination regarding polygraphs will not violate Forbes' confrontation rights.  <u>United States v. Brown</u>, 289 F.3d 989, 993-94 (7th Cir. 2002) (affirming the preclusion of cross-examination based on a witness's failure to appear for a scheduled "voice stress test" (which is similar to a polygraph) where the defendant had "ample opportunity to cross-examine [the witness] on his failure to cooperate with [the] investigation").[15]

---

[14]  This Court reached precisely this conclusion during the initial trial, explaining that "to have someone else who has some aura of expertise on the question of whether someone is lying or not seems to me to really violate Rule 403."  Tr. 7800.  <u>See also</u> Tr. 7814 ("I really don't see the probative value of a polygraph evidence being -- well, I see it being substantially outweighed by the prejudicial effect.").

[15]  Forbes relies on inapposite cases in which polygraph evidence was admitted or permitted to be offered only because the party opposing the evidence had opened the door.  Thus, in <u>United States v. Lynn</u>, 856 F.2d 430 (1st Cir. 1988), a cooperating

(continued...)

## CONCLUSION

For the foregoing reasons, this Court should deny

---

[15](...continued)
witness entered into a cooperation agreement which required that
he take and "successfully complete" a polygraph exam or suffer
the possible loss of the benefits of the agreement, and the
polygrapher was "inconclusive" about whether the witness had
truthfully answered all of the questions.  856 F.2d at 432.  The
Government then had the witness's entire cooperation agreement,
including the polygraph provision, placed into evidence, but
convinced the district court to prevent defense counsel from
eliciting the fact that the witness did not "successfully
complete" the examination.  The result was that the jury was left
with the erroneous impression that the witness's inculpatory
testimony had been corroborated by a successful polygraph
examination, when that was precisely what did not occur.  Id. at
433.  Accord, United States v. Thornton, 197 F.3d 241, 253 (7th
Cir. 1999)("Since the polygraph test statement in [the witness's]
proffer letter was admitted, defense counsel should have been
permitted to cross-examine her on this subject. ").  Here, by
contrast, Corigliano was examined by a polygrapher of his
choosing without any involvement of the Government, and the
Government will not seek to bolster Corigliano's credibility by
reference to his willingness to take a polygraph.

Other cases cited by Forbes also permitted the use of
polygraph evidence only after the party resisting the evidence
opened the door to that evidence.  United States v. Matthews, 20
F.3d 538, 552 (2d Cir. 1994)(Government presented evidence about
the defendant's refusal to take a polygraph only after the
defendant opened the door to the subject by presenting evidence
that he defendant had initially offered to take a polygraph);
United States v. Hall, 805 F.2d 1410, 1416-17 (10th Cir.
1986)(district court permissibly allowed Government to elicit
evidence that the defendant had failed two polygraphs to rebut
the defense claim that investigators had improperly focused on
the defendant without sufficiently investigating other possible
suspects);  United States v. Kampiles, 609 F.2d 1233, 1244 (7th
Cir. 1979) (district court permitted Government to present
evidence that defendant confessed only after he failed two
polygraph examinations in order to rebut defense claims that his
confession was coerced).  Here, Forbes does not claim, and cannot
show, that the Government opened the door to Forbes' request for
expansive cross-examination regarding Corigliano's polygraphs.

Forbes' Retrial Motion *In Limine* No. 21.

> Respectfully submitted,
>
> CHRISTOPHER J. CHRISTIE
> Special Attorney
> U.S. Department of Justice
>
> /s/ Norman Gross
>
> NORMAN GROSS
> MICHAEL MARTINEZ
> CRAIG CARPENITO
> Special Attorneys
> U.S. Department of Justice

Dated: October 6, 2005
Hartford, Connecticut

## CERTIFICATE OF SERVICE

The undersigned certifies that on this day I caused to be served copies of the foregoing upon the following via email and United States Mail:

Barry S. Simon, Esq.
Williams & Connolly LLP
Residence Inn
942 Main Street
Hartford, CT 06103
(860) 293-1581
fax: (860) 293-1651

        and

Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901
(202) 434-5005
fax (202) 434-5029

_____
DEBRA M. ELLIOTT
Paralegal Specialist
U.S. Department of Justice

Dated:     October 6, 2005
           Hartford, Connecticut