UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>WALTER A. FORBES | )<br>)<br>)<br>)  No. 3:02CR264 (AWT)<br>)<br>)  October 7, 2005<br>)<br>) |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION OF DEFENDANT WALTER A. FORBES
TO PRECLUDE THE GOVERNMENT FROM PRESENTING
IMPROPER LAY OPINION TESTIMONY AT TRIAL
(Forbes Retrial Motion In Limine No. 3)**

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this reply memorandum in further support of his motion to preclude the government from presenting improper lay opinion testimony at trial.[1]

The government does not take issue with the request to preclude various types of lay opinion testimony concerning Mr. Forbes, see Forbes Mem. at 12-19, but the government claims that it should be able to introduce testimony from

---

[1] This is not, as the government suggests, a motion for reconsideration. Mr. Forbes has an obligation to reassert evidentiary objections at this retrial to preserve error. See, e.g., United States v. Palmer, 122 F.3d 215, 221 (5th Cir. 1997) ("A retrial following a mistrial is both in purpose and effect a new trial. Accordingly, objections made at the aborted trial have no bearing on the retrial, as the two are entirely separate affairs."); United States v. Gomez, 67 F.3d 1515, 1526 n.13 (10th Cir. 1995) ("[I]t is fundamental that, in cases where a new trial has been ordered, objections made during the first proceeding do not preserve issues for appeal in the second."). Moreover, circumstances have changed since the Court ruled on the motion in limine filed before the first trial. We now have seen the actual objectionable testimony and we object to a repetition of this improper testimony under Rule 701.

Oral Argument Requested

lay witnesses that they engaged in accounting practices "for which they had no basis under their understanding of Generally Accepted Accounting Principles ('GAAP')." Opp'n at 1; see also id. at 3 ("[T]his Court Should Permit the Cooperating Witnesses Who Are Accountants and Who Participated in the Accounting Fraud to Testify to the Fact That They Had No Basis under GAAP to Undertake the Manipulative Accounting Practices Charged in the Indictment.").

The government's primary argument—that such testimony is proper because it is based on the personal knowledge of the witnesses, see Opp'n at 3— conflates the first and third foundation requirements under Rule 701. The Second Circuit's recent decision in United States v. Garcia, 413 F.3d 201 (2d Cir. 2005), makes clear that Rule 701 has three separate foundation requirements.[2] The testimony must be (1) based on the perception of the witness; (2) helpful to the jury; and (3) not based on specialized knowledge. 413 F.3d at 211. It is the government, as "the proponent of lay opinion testimony who must satisfy the rule's three foundation requirements." Id. Irrespective of whether the testimony is based upon the personal knowledge of the witness, the government must still establish the third foundation requirement—that the testimony is not based on specialized knowledge. It is here that the government fails.

To satisfy the third foundation requirement, the government must demonstrate that the testimony is "informed by reasoning processes familiar to the

---

[2] The government's statement that Mr. Forbes "cites the same authority that he presented in a previous motion," Opp'n at 1, is not correct. Moreover, as set forth above, Garcia, one of the newly-decided cases upon which Mr. Forbes relies, demonstrates that the arguments advanced by the government are wrong.

average person in everyday life rather than by scientific, technical, or other specialized knowledge." Garcia, 413 F.3d at 216. Accrual-based, GAAP accounting is simply not familiar to the average person in every day life, and the government has not demonstrated that it is. Thus, the following type of testimony offered in the first trial is inadmissible under Rule 701:

> Q. Mr. Corigliano, showing you what has been received into evidence as Government's 304 – I'm sorry, 1304. Do you have a recollection of what 1304 is?
>
> A. Yes, I do.
>
> Q. What is 1304?
>
> A. It's CUC's 10Q for the quarter ended April 30th, 1995.
>
> Q. Was that document filed with the SEC?
>
> A. Yes, it was.
>
> Q. Was the information contained in that document true or false?
>
> A. It's false.

Tr. at 7553-54. Mr. Corigliano offered pages of testimony virtually identical to the example quoted above. See Tr. at 7553-61, 7566-67. GAAP governs the accuracy of financial statements filed with the SEC. See 17 C.F.R. § 210.4-01(a)(1) ("Financial statements filed with the Commission which are not prepared in accordance with generally accepted accounting principles will be presumed to be misleading or inaccurate . . . ."). Application of GAAP to financial statements contained in SEC filings, like Form 10-Q, is not "familiar to the average person in everyday life."

The government spends two pages setting up and knocking down a straw man when it argues that Mr. Corigliano's testimony—that the membership cancellation reserves for fiscal year 1991, as purportedly memorialized on CUC's general ledger,[3] were "$9 million short"—was based on "third grade level mathematics." Opp'n at 4-5 (citing Tr. at 6242, 6263-68, 6269-72, 6277-78). Mr. Forbes' opening memorandum did not identify this testimony as an example of improper lay opinion testimony. His opening memorandum objected to testimony "opining on the legitimacy of accounting practices employed at CUC and the accuracy of CUC's financial statements." Forbes Mem. at 8 (citing Tr. 6308-18, 6344-47, 6377, 6403-06, 6474-75, 6479-80, 6536-41, 6616, 6664-66, 6752, 6830-34, 6942, 7115, 7307-11, 7325-26, 7395, 7405, 7495-96, 7538-39, 7553-61, 7566-67 (examples of improper expert testimony by Corigliano); Tr. 2332-33, 2435-37, 2815-16, 2819 (examples of improper expert testimony by Pember)).[4]

The government's reliance upon cases that pre-date the 2000 Amendment to Rule 701 is misplaced, and Mr. Forbes distinguished such cases

---

[3]  Mr. Corigliano was not referencing CUC's General Ledger during this testimony, but rather membership cancellation analyses allegedly provided to E&Y (GX 668), see Tr. at 6246, and allegedly internal membership cancellation analyses (GX 667), see Tr. at 6257. See also Tr. at 6272-74.

[4]  In any event, although the math associated with comparing the allegedly reported membership cancellation reserves with the "what the cancellations reserves were supposed to be," Opp'n at 4, may not be expert opinion, testimony about what the membership cancellation reserves were supposed to be is. Determining appropriate membership cancellation reserves under GAAP—for which there is a range of reasonableness according to Mr. Heckler's testimony—is not math and is not a process of reasoning "familiar to the average person in everyday life."

previously. See Reply Supp. Mot Preclude Improper Lay Opinion at 6-9 (May 6, 2004) [Docket No. 683]. As the Second Circuit explained in Garcia, "Rule 701 was amended to provide that testimony cannot be received as lay opinion if it is based on scientific, technical, or other specialized knowledge. Rather, a lay opinion must be the product of reasoning processes familiar to the average person in everyday life." Garcia, 413 F.3d at 215 (internal citation omitted). Therefore, in Garcia, the Second Circuit rejected the government's reliance on pre-Amendment cases. Id. at 215 n.9 ("To the extent the government relies on cases that pre-date this 2000 amendment to support its argument that a law enforcement officer may offer opinion testimony as to the criminality of action witnessed by him, we do not find such cases particularly useful to our analysis.").

Nor does the advisory committee's note to the 2000 Amendments advance the government's position. The government quotes snippets of one segment from the note, but a complete quotation of that segment illustrates why the note is not helpful to the government.

> For example, most courts have permitted the owner or officer of a business to testify to the <u>value or projected profits of a business</u>, without the necessity of qualifying the witness as an accountant, appraiser or similar expert. Such opinion testimony is admitted <u>not because of experience, training or specialized knowledge within the realm of an expert</u>, but because of the particularized knowledge that witness has by virtue of his or her position in the business. The amendment does not purport to change this analysis.

Fed. R. Evid. 701 advisory committee's note (emphasis added & citation omitted). The witnesses here are not business owners or officers testifying to lost profits, they

are accountants opining on the legitimacy of accounting practices and the accuracy of GAAP financial statements.

Furthermore, lost profit calculations do not depend on specialized training, but can be determined by straightforward, common-sense calculations. See, e.g., Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 265 (2d Cir. 1995) (business owner calculated lost profits based on decrease in sales). The same cannot be said about financial statements prepared in accordance with GAAP. Although the government would like the jury to believe that accounting is as simple as 1 + 1, accrual-based GAAP accounting is not math. For example, if a company received five $1,000,000 checks in a financial reporting quarter, simple math would indicate that the company's quarterly revenues were $5,000,000. If such a company reported $5,000,000 in quarterly revenues, however, its accountants might get indicted. Depending on when the company rendered services in exchange for those checks, the company may be required to recognize the revenues in an earlier or in a subsequent period. It requires expertise in GAAP accounting to determine quarterly revenues, not third-grade math, and not "reasoning processes familiar to the average person in everyday life."

The government has failed to satisfy the third foundation requirement of Rule 701.[5] Accordingly, the Court should preclude lay witnesses from opining on

---

[5] As noted by Mr. Forbes in his opening brief, this testimony does not satisfy the helpfulness requirement either. See Forbes Mem. at 12 n.7. Mr. Corigliano's understanding of GAAP is not helpful to the jury's resolution of whether Mr. Corigliano participated in a conspiracy. He will testify that he did. Nor is Mr. Corigliano's understanding of GAAP helpful to the jury's resolution of Mr. Forbes'

the legitimacy of accounting practices employed at CUC and the accuracy of CUC's financial statements.[6]

       Respectfully submitted,

       WILLIAMS & CONNOLLY LLP

By: _____
    Brendan V. Sullivan, Jr. (ct17115)
    Barry S. Simon (ct24159)

    725 Twelfth Street, N.W.
    Washington, D.C. 20005
    (202) 434-5000 (phone)
    (202) 434-5029 (fax)
    bsimon@wc.com (e-mail)

    - and -

    James T. Cowdery (ct05103)
    Thomas J. Murphy (ct07959)
    COWDERY, ECKER & MURPHY, L.L.C.
    750 Main Street
    Hartford, CT 06103-2703
    (860) 278-5555 (phone)
    (860) 249-0012 (fax)
    tmurphy@cemlaw.com (e-mail)

    Attorneys for Walter A. Forbes

---

state of mind. Mr. Corigliano never testified that he informed Mr. Forbes of his understanding of GAAP, and he did not convey his understanding telepathically.

[6]  Moreover, Mr. Heckler will be testifying to these issues as an expert witness. The government cannot have it both ways. Either this is expert testimony or it is not. As set forth above, it is expert testimony. However, if it is not expert testimony, Mr. Heckler should not be testifying to the matters as an expert.

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Reply Memorandum in Support of Motion of Defendant Walter A. Forbes to Preclude the Government from Presenting Improper Lay Opinion Testimony at Trial (Forbes Retrial Motion *In Limine* No. 3) to be sent to the following on October 7, 2005 via E-mail and on October 8, 2005 via Federal Express:

Michael Martinez, Esq.
Craig Carpenito, Esq.
United States Attorneys
The Federal Building
U.S. Department of Justice
450 Main Street, Room 320
Hartford, CT 06103

Norman Gross, Esq.
U.S. Attorney's Office
District of New Jersey
401 Market Street
Fourth Floor
Camden, NJ 08101

Barry S. Simon