UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | No. 3:02CR264 (AWT) |
| ) | |
| WALTER A. FORBES ) | October 7, 2005 |
| ) | **(UNDER SEAL)** |

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF
WALTER A. FORBES FOR AN ORDER REQUIRING THE
GOVERNMENT TO CONFER USE IMMUNITY ON
STUART BELL
(Forbes Retrial Motion No. 7) (FILED UNDER SEAL)**

Walter A. Forbes, through undersigned counsel, respectfully submits this reply memorandum in further support of his motion for an order requiring the government to confer immunity on Stuart Bell or face the sanction of dismissal, or the sanction of excluding all evidence relating to alleged unlawful conduct by Mr. Bell.[1]

---

[1] This is not, as the government suggests, a motion for reconsideration. Mr. Forbes has an obligation to reassert evidentiary arguments at this retrial to preserve error. See, e.g., United States v. Palmer, 122 F.3d 215, 221 (5th Cir. 1997) ("A retrial following a mistrial is both in purpose and effect a new trial. Accordingly, objections made at the aborted trial have no bearing on the retrial, as the two are entirely separate affairs."); United States v. Gomez, 67 F.3d 1515, 1526 n.13 (10th Cir. 1995) ("[I]t is fundamental that, in cases where a new trial has been ordered, objections made during the first proceeding do not preserve issues for appeal in the second."). Moreover, circumstances have changed since the Court ruled on the motion in the first trial. Among other things, the government's summation made clear the significance of its two-CFO theory.

## ARGUMENT

The government agrees, as it must, that there is a "three-part test for requiring the government to grant defense witness immunity at the risk of dismissal of the indictment." United States v. Bahadar, 954 F.2d 821, 826 (2d Cir. 1992).

> First, the district court must find that the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the fifth amendment. Second, the witness's testimony must be "material, exculpatory, and not cumulative". Third, the testimony must be unobtainable from any other source.

Id.; accord Opp'n at 2 (quoting Bahadar). However, the government's brief does not always argue within this framework, but attempts to engraft additional requirements from other circuits,[2] and to make conjunctive the disjunctive component of the first part of the three-part test.[3] Mr. Forbes will return to the Second Circuit's three-part test.[4]

---

[2]  Opp'n at 3 (arguing that "Forbes must make a substantial evidentiary showing that the government attempted to distort the judicial fact-finding process" and citing inapposite cases from the 8th and 9th circuits).

[3]  Part one of the test provides that "the district court must find that the government" (a) "has engaged in discriminatory use of immunity to gain a tactical advantage or," (b) "through its own overreaching, has forced the witness to invoke the fifth amendment." Bahadar, 954 F.2d at 826 (emphasis added). Mr. Forbes argued that the government engaged in discriminatory use of immunity. See Opp'n at 8. The government's brief, nevertheless, spends more than a page arguing that the government has not through its own overreaching forced Mr. Bell to invoke his privilege. See Opp'n at 4-5.

[4]  As set forth in Mr. Forbes' opening memorandum, the Second Circuit has "explicitly left open the issue of whether under extraordinary

### 1.  The Government Has Engaged in the Discriminatory Use of Immunity.

The government responds inconsistently that "it did not immunize any of the witnesses in this case," Opp'n at 3 (emphasis in original), and that "certain witnesses such as Corigliano and Pember received transactional immunity for some possible criminal charges in exchange for their guilty pleas and cooperation," Opp'n at 4, and that "Pember and Sabatino were both permitted to plead guilty to reduced charges and obtained transactional immunity for other charges," Opp'n at 7.  The facts were laid out fully in Mr. Forbes' opening memorandum.  See Forbes Mem. at 8-9 (citing and attaching immunity agreements).

- The government conferred transactional immunity upon Steven Speaks.

- The government conferred transactional immunity on Cosmo Corigliano, Anne Pember, and Casper Sabatino for known criminal activity other than the counts to which they each pled guilty.

- The government conferred limited informal use immunity upon Mr. Kearney.

Although the government did not confer use/derivative use immunity upon any witness pursuant to 18 U.S.C. § 6002, these contractual grants of immunity are fully enforceable against the government.  See, e.g., United

---

circumstances, due process may require that the government confer use immunity on a witness for the defendant" in the absence of "discriminatory use of immunity." United States v. Dolah, 245 F.3d 98, 106 (2d Cir. 2001), overruled on other grounds, Crawford v. Washington, 541 U.S. 36 (2004) (internal quotation omitted).

States v. Aleman, 286 F.3d 86, 89-90 (2d Cir. 2002). Thus, the government has immunized several prosecution witnesses, but has refused to immunize Mr. Bell.

The real question for the Court is the legal question of whether the government's selective use of its immunity power in this case constitutes "discriminatory use."

> The 'discriminatory use' component of the test is not entirely clear. It is arguable that this component does not mean a selection of a candidate for immunity based on some objectionable characteristic, but means simply a decision by the government to confer immunity on some witnesses and not others.

United States v. Dolah, 245 F.3d 98, 105-06 (2d Cir. 2001), overruled on other grounds, Crawford v. Washington, 541 U.S. 36 (2004). If that is the test, Mr. Forbes plainly has satisfied the first prong.[5]

The Second Circuit in Dolah continued, however, to state that: "[o]n the other hand, Burns referred to a 'discriminatory use of immunity to gain a tactical advantage,' and 'tactical advantage' might mean something more than merely selecting from among potential witnesses who will receive immunity." Id. at 106 (citation omitted).

Even if Mr. Forbes must demonstrate "something more," he has done that here. Only those witnesses who have offered testimony damaging to Mr. Forbes or testimony admitting to fraud at CUC have obtained any

---

[5] The government's citation of Dolah for the proposition that "the issue is whether the Government is acting in bad faith," Opp'n at 6, is not accurate.

form of immunity. The government has refused to immunize Mr. Bell, who, as set forth below, would offer testimony that is material, exculpatory, not cumulative, and unobtainable from other sources.[6] The government—in an argument that it apparently believes supports its position—essentially concedes this point. It states that in an "even-handed manner," it provided immunity to those witnesses "who were willing to speak truthfully to the Government about what they knew about the fraud," but not to those witnesses who refused to speak about "what they knew about the accounting fraud." Opp'n at 7-8. <u>Mr. Bell did not know about or participate in the fraud. He should not be required to lie and plead guilty to obtain immunity.</u> The government's argument underscores that only a witness who would support its theory of the case can get immunity.[7] Indeed, the government never states whether it offered Mr. Bell any form of immunity (including the proffer

---

[6]     The government suggests that it did not immunize only those witnesses who offered damaging testimony against Mr. Forbes, and cites to Pember and Sabatino as examples. <u>See</u> Opp'n at 7. Although those witnesses did not testify that Mr. Forbes was involved in the fraud, they testified that there was a fraud. The government's suggestion that such testimony is not damaging stands in stark contrast to its arguments elsewhere that the mere existence and size of the fraud constitute circumstantial evidence of Mr. Forbes' alleged knowledge and participation. Moreover, those witnesses offered testimony against other alleged co-conspirators, who had not yet pleaded guilty or been convicted. The point is that only witnesses who support the government's theory of the case have received immunity.

[7]     This is why courts in this circuit instruct jurors to scrutinize with care the credibility of cooperating government witnesses. <u>See</u> <u>United States v. Prawl</u>, 168 F.3d 622, 628 (2d Cir. 1999) (defendant entitled to instruction that identifies circumstances that make cooperating government witnesses particularly vulnerable to government's power and influence).

immunity provided to Mr. Kearney) if he would offer any testimony supporting its theory of the case.

Moreover, as set forth in great detail in Mr. Forbes' opening memorandum, extraordinary circumstances further support defense witness immunity: (a) the government prominently featured Mr. Bell in its case-in-chief, and made the two-CFO theory a centerpiece of its summation; (b) the government has a trivial interest in withholding immunity because it does not intend to prosecute Mr. Bell at this late date;[8] (c) conferring immunity on Mr. Bell would not preclude the government from prosecuting Mr. Bell for the historical conduct (because the federal immunity statute does not provide transactional immunity from prosecution) or for perjury at trial, see 18 U.S.C. § 6002; (d) the government has permitted Mr. Corigliano to violate the transactional immunity provisions of his plea agreement without sanction, see also Reply Supp. Forbes Retrial Mot. *In Limine* No. 13 (filed today); and (e) Mr. Bell's testimony could mitigate the constitutional violations from the first trial should they recur at the retrial. The government refuses to address the five points set forth in this paragraph. See Opp'n at 10.

Whatever the Second Circuit meant by "something more" in Dolah, 245 F.3d at 106, these circumstances are sufficient to satisfy the first

---

[8]  The government, despite lengthy briefing on this issue over the course of two trials, still has not stated that it has any intention of prosecuting Mr. Bell, or even that there is an active, ongoing investigation almost three years after the present indictment was returned. Its reliance upon United States v. Shandell, 800 F.2d 322, 324 (2d Cir. 1986), see Opp'n at 8 n.4, which involved a "prosecution target," 800 F.2d at 324, is, therefore, misplaced.

prong of the three-part test, even if "something more" than "simply a decision by the government to confer immunity on some witnesses and not others" is required. Id. at 105-06.[9]

### 2. Mr. Bell's Testimony Is Material, Exculpatory, And Not Cumulative.

The government, like an ostrich, ignores the fact that the two-CFO theory is a centerpiece of its case against Mr. Forbes.

> You heard testimony and you saw documents which proved that this fraud, this manipulation of the earnings, was not something that was dreamed up or cooked up in '95, '96 or '97 after Mr. Corigliano was brought in as CFO. You heard evidence that this fraud existed long before, long before he was the CFO, long before Anne Pember was the controller, back when it was just Mr. Forbes as the chairman, Mr. Shelton as president or COO and a man named Stu Bell running the company.

Tr. at 14828; see also Tr. at 16025 ("You have two CFOs in the 1990 to 1998 period. What are the odds that they're both corrupt and they're both hiding the fraud from Walter Forbes and Kirk Shelton? Does that make Walter Forbes and Kirk Shelton the unluckiest CEO and the unluckiest president to ever serve on a public company?"). Its argument—that Mr. Bell's testimony is not exculpatory because it "merely contradicts one aspect of Corigliano's testimony without exculpating Forbes," Opp'n at 11—is premised on an interpretation of "exculpatory" that is so narrow as to be

---

[9]     The government's theoretical policy argument that in the ordinary case "a defendant such as Forbes can always assert that his defense would have been advanced if the Government immunizes a proposed defense witness," Opp'n at 6, is divorced from the extraordinary circumstances of this case.

absurd. If the government seriously contends that its theory of a fraud dating back to the early 1990s and spanning the tenure of two CFOs is not inculpatory of Mr. Forbes, the government should abandon any evidence and argument supporting this theory, and Mr. Forbes will abandon his request for defense-witness immunity.[10]

### 3. The Testimony Is Unobtainable From Any Other Source.

The government does not deny that the testimony is unavailable from any other source. The government argues instead that the testimony is available from Mr. Bell himself and that Mr. Forbes has not demonstrated that Mr. Bell's invocation of his privilege is proper. That is not the test set forth by the Second Circuit. See Bahadar, 954 F.2d at 826 ("Third, the testimony must be unobtainable from any other source."). The government cites no case holding that the defendant must also demonstrate that the invocation is proper. Because the testimony is unobtainable from any other source, Mr. Forbes has satisfied the third part of the test.

Moreover, the government distorts the standard for determining whether an invocation of the Fifth Amendment is proper by suggesting that invocation is proper only when the witness proves that the responses would

---

[10] The government also claims that Mr. Forbes has failed to provide sufficient evidence that Mr. Bell will offer testimony consistent with his counsel's representations. The burden the government seeks to put on Mr. Forbes is not realistic. Mr. Forbes does not have access to Mr. Bell because he has invoked his privilege and the government will not confer immunity on him. Mr. Forbes has presented evidence, as opposed to unsupported assertions.

be incriminating.  See Opp'n at 13-14.  The privilege serves to protect the innocent because "truthful responses of an innocent witness . . . may provide the government with incriminating evidence from the speaker's own mouth." Ohio v. Reiner, 532 U.S. 17, 21 (2001) (per curiam); see also Grunewald v. United States, 353 U.S. 391, 421 (1957) ("The privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances." (quotation omitted)).  To substantiate a claim of privilege, a witness is not "required to prove the hazard" because, by doing so, "he would be compelled to surrender the very protection which the privilege is designed to guarantee." Hoffman v. United States, 341 U.S. 479, 486 (1951).  Rather, the privilege applies when it is simply "evident from the implications of the question, in the setting in which it is asked, that a responsive answer . . . or an explanation of why it cannot be answered might be dangerous." Id. at 486-87 (emphasis added); see also Arndstein v. McCarthy, 254 U.S. 71, 72 (1920) (sustaining invocation of privilege because "[i]t is impossible to say from mere consideration of the questions propounded, in the light of the circumstances disclosed, that they could have been answered with entire impunity").  Here, where the government argues that "Bell has been directly implicated in the fraud," Opp'n at 8 n.4, has named Mr. Bell as an alleged unindicted coconspirator, and is relying on the testimony of a proven liar, Mr.

Bell has good reason to fear that truthful exculpatory testimony could be used against him in an unfounded prosecution.[11]

## CONCLUSION

For the reasons set forth above, Mr. Forbes respectfully requests that the Court provide the government with a choice—immunize Mr. Bell or face dismissal. As an alternative to dismissal, the Court could exclude evidence that Mr. Bell allegedly engaged in unlawful conduct at CUC.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (ct17115)
Barry S. Simon (ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

---

[11] The government's suggestion of coordination between Mr. Bell and Forbes raising the risk of corroborative perjury, see Opp'n at 14, is baseless and further justifies Mr. Bell's apparent concern about unfounded prosecution.

James T. Cowdery (ct05103)
Thomas J. Murphy (ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing Reply Memorandum in Support of Motion of Walter A. Forbes for an Order Requiring the Government to Confer Use Immunity on Stuart Bell (Forbes Retrial Motion No. 7) (FILED UNDER SEAL) to be sent to the following on October 7, 2005 via E-mail and on October 8, 2005 via Federal Express:

Michael Martinez, Esq.
Craig Carpenito, Esq.
United States Attorneys
The Federal Building
U.S. Department of Justice
450 Main Street, Room 320
Hartford, CT  06103

Norman Gross, Esq.
U.S. Attorney's Office
District of New Jersey
401 Market Street
Fourth Floor
Camden, NJ  08101

_____
Barry S. Simon