provide specific grounds for any such reconsideration. Mr. Simon also refused our request to withdraw duplicative requests from CC#1, CC#2, KL#1, KL#2, and KL#3 or to move those duplicative requests to the KL#4 and CC#3 Renewal subpoenas to clarify that (i) the Court had previously denied these materials and (ii) the requests were being repeated for purposes of preserving the appellate record.

Finally, we raised with Forbes' counsel the fact that none of the four separate subpoenas served on Kramer Levin has any carve-out for attorney work-product – a carve-out that was expressly acknowledged as appropriate by Forbes during the first trial[7] – and questioned whether they were actively seeking our work-product. Mr. Simon expressed the view that the privilege was vitiated by "various crimes and frauds," a position that Forbes' counsel had unsuccessfully asserted multiple times at the 2004 trial and that the Court had several times already, on a full record, squarely rejected. When we pressed Mr. Simon to identify the specific subpoena demands as to which he was (re-)asserting "crime fraud," and further asked that he agree that as to all others he was not seeking confidential attorney work-product, he said that he would consider our request and get back to us. Although we met and conferred a second time on this issue, among others, we still have not been provided with any additional information that would narrow the scope of these subpoenas.[8]

---

[7] *See* Corigliano Mem. dated Mar. 31, 2004, at 5 nn.3-4 (discussing Forbes' representation that they were not seeking "confidential attorney work product," on which they later reneged).

[8] Only two of the four subpoenas served on Kramer Levin – KL#1 and KL#2 – have a carve-out for attorney-client privileged documents – i.e., "communications between you and your clients unless those communications have already been disclosed to third parties." KL#3 expressly and improperly calls for attorney-client communications, a matter we address in Points IV.J and IV.K, below.

-8-

## II. THE REPETITIVE SUBPOENA DEMANDS SHOULD BE SUMMARILY QUASHED AS PROCEDURALLY IMPROPER

The latest onslaught of eighteen additional Corigliano-related subpoenas can only be described as an act of defiance of the Court's prior rulings and a subversion of the rules of orderly procedure. Instead of moving for reconsideration of the Court's multiple prior decisions that cover the vast majority of his current repetitive demands, and sustaining his burden of providing the Court (and us as the resisting party) with a legitimate basis for reconsideration of the requests, Forbes simply re-serves the same demands, thereby improperly and intentionally shifting the onus to us, non-parties to this case, to move to quash without knowing what if any new grounds are supposedly being relied upon.

As counsel for defendant Forbes well knows, a motion for reconsideration must be based on some fact or controlling law that counsel believes the Court overlooked. *See* D. Conn. L. Civ. R. 7(c).[9] "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998); *United States v. Ocasio*, No. 3:99 CR 200 (CFD), 2005 WL 1489462, *2 (D. Conn. June 20, 2005) (Droney, J.); *LoSacco v. City of Middletown*, 822 F. Supp. 870, 876-77 (D. Conn. 1993) (Nevas, J.) (purpose of reconsideration is "to correct manifest errors of law or fact or to consider newly discovered evidence") (internal quotations omitted), *aff'd*, 33 F.3d 50 (2d Cir. 1994).

---

[9] Of course, the 10-day time period set out in Rule 7(c) has long since come and gone.

Forbes has not even attempted to meet this burden; as such the Court should summarily quash the repetitive demands in each of the new Corigliano-related subpoenas on the ground that they violate Local Rule 7(c) and improperly seek to shift the burden to Mr. Corigliano to move to quash demands that have already been adjudicated against Forbes.

In addition, those many prior rulings denying Forbes' requests have become the law of the case and Forbes has presented no reason, let alone a compelling reason, for this Court to revisit any of those rulings. "The court's exercise of its power to reconsider and modify its prior interlocutory rulings is informed by the . . . law-of-the-case doctrine. That principle is that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991) (criminal case); *see Prisco v. A&D Carting Corp.*, 168 F.3d 593, 607 (2d Cir. 1999) (quoting *Uccio*). "[A]bsent cogent or compelling reasons to deviate, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," a court should adhere to its prior rulings. *Uccio*, 940 F.2d at 758. *See, e.g., Morse/Diesel, Inc. v. Trinity Indus. Inc.*, No. 84 Civ. 5791 (RO), 1997 WL 470138, at *6 (S.D.N.Y. Aug. 14, 1997) (declining to revisit first trial rulings in context of retrial on remand).

In this Circuit, on retrial, "[a] court should be loathe to revisit an earlier decision in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995) (internal quotations omitted). In other words, "the law of the case should be 'disregarded only when the court has a clear conviction of error with respect to a point of law on which its previous decision was predicated.'" *Id.* (quoting

*Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981)).[10] This is particularly true when the case is being retried after a jury failed to reach a verdict:

> [A] mistrial occasioned by the jury's inability to arrive at a verdict does not convert those matters which were previously the subject of dispositive rulings by the trial court to matters the litigants are free to relitigate de novo in the second trial. Stated differently, a retrial is not designed to afford either party an opportunity to fortify a position it was unable to maintain at the previous trial. To hold otherwise would subject parties at a retrial to either futile litigation to foregone conclusions or to confusing inconsistencies in the rulings of the Court. Of at least equal significance, a contrary result would ignore the established principle that a litigant is generally entitled to but a single opportunity to present and prevail upon his claim; a principle which is fundamental to our system of jurisprudence.

*City of Cleveland v. Cleveland Elec. Illuminating Co.*, 538 F. Supp. 1328, 1330-31 (N.D. Ohio 1981) (citations and quotations omitted).

Here, considering that the Court was forced by Forbes to make the same rulings multiple times during the first trial (including on many occasions after a full record had been developed following Mr. Corigliano's extended examination), and that counsel for Forbes has not even attempted to provide this Court with a reason to reconsider any of those rulings, *not* adhering to the prior rulings would work a manifest injustice, especially as to those subject areas where Forbes has already had multiple bites at the apple.[11]

---

[10] Indeed, it has been held that "it is error for a court at retrial to reverse an identical evidentiary ruling made during the first trial, barring clear error or a change in circumstances." *United States v. Tham*, 960 F.2d 1391, 1397 (9th Cir. 1992).

[11] In a related tactical maneuver that similarly subverts the governing procedural rules, instead of seeking Court authorization before issuing subpoenas calling for the production of documents prior to the time they realistically could be offered into evidence – which authorization Rule 17(c) plainly requires and Forbes sought (and received) prior to the 2004 trial – this time around Forbes' counsel decided to issue such subpoenas with return dates (originally September 19, 2005, and then "adjourned" to September 23 at our request) well before any date by which they reasonably could have imagined the evidentiary stage of the trial would begin. The apparent purpose of this improper tactic is again to avoid what is plainly Forbes' burden *ab initio* of persuading the Court that the eighteen new subpoenas are properly issued, a burden which

### III. STANDARDS FOR PRODUCTION UNDER RULE 17(C)

Assuming the Court decides to address some or all of the 2005 subpoena demands "on the merits," as the Court is all too well-aware, *Bowman Dairy Co. v. United States,* 341 U.S. 214 (1951), and its progeny, including *United States v. Nixon,* 418 U.S. 683, 697-702 (1974), require that Rule 17(c) demands for documents – whether sought pre-trial or at the time of trial – satisfy at least a three-part showing: relevancy, specificity and admissibility.

#### A. Specificity Required/Fishing Expeditions Prohibited

Thus, as we have argued many times before, the "mere hope" that a subpoena may turn up something useful is the essence of the improper "fishing expedition" first identified in *Bowman Dairy,* 341 U.S. at 221, and subsequent case law makes clear that subpoenas based only on such hopes cannot pass muster under Rule 17(c). *See United States v. King,* 164 F.R.D. 542, 546 (D. Kan. 1996) ("Rule 17 was not intended to provide the defendant a mechanism by which to troll the waters of the sea's otherwise undiscoverable material in the small hope that something beneficial might rise to the surface."); *United States v. Noriega,* 764 F. Supp. 1480, 1493 (S.D. Fla. 1991) (where moving party "merely hopes that something useful will turn up" in response to Rule 17(c) subpoena, "this is a sure sign that the subpoena is being misused"). *See also Bowman Dairy,* 341 U.S. at 220 ("Rule 17(c) was not intended to provide an additional means of discovery."); *United States v. Weissman,* No. 01 CR 529, 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002) ("Rule 17(c) is not a means of discovery in a criminal trial.").

---

Forbes' counsel of course knew they could never meet. *See United States v. Santiago-Lugo,* 904 F. Supp. 43, 46 (D.P.R. 1995) ("Only with court intervention can the subpoena be utilized for production before the court at any time prior to trial or prior to the time when the documents are to be offered into evidence.").

Of particular relevance to many of the repeat demands here, "[c]ourts have held that requests for an entire file are evidence of an impermissible fishing expedition," *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) (citing cases), and that requests for "*all documents*" relating to broad subject matters also fail to meet the specificity requirement. *United States v. R. W. Prof'l Leasing Servs.*, 228 F.R.D. 158, 163 (E.D.N.Y. 2005) (Spatt, J.) (finding demands such as "*[a]ll documents* relating or referring to [defendant's] reserve accounts" to be "overbroad and totally unreasonable") (emphasis added).

### B. Rule 17(c) Cannot Be Used to Obtain Extrinsic Evidence That Is Inadmissible for Collateral Impeachment

As this Court has also explained many times in ruling on Forbes' multiple subpoenas, the admissibility and relevancy requirements mean that Rule 17(c) subpoenas may not properly be used to obtain documents that are potentially useful exclusively or even primarily to impeach a witness on collateral matters or to impeach his character for truthfulness. *See, e.g.*, Ruling Mot. SEC Quash Subp. Seeking Testimony & Docs. from SEC Enforcement Attorney James Kidney, dated Sept. 24, 2005 [hereinafter Kidney Ruling], at 3-4 ("The only purpose served by questions in most of these areas would be to elicit testimony that could then be compared to Corigliano's answers on cross-examination and, thus, attack Corigliano's credibility. Such a back-door attack on credibility would be particularly inappropriate in view of the latitude the defendants were given in conducting their lengthy cross-examinations of Corigliano, and it should not be permitted by the court.") (Ex. II); Ruling Mot. Non-Parties Kramer Levin & Peter Gonedes Quash Def. Forbes' Subp. Dated Aug. 19, 2004, dated Sept. 24, 2004 [hereinafter Gonedes Ruling], at 3 (subpoena quashed in relevant part because "the documents called for reflect lines of inquiry calculated to lead solely to bolster the defendants' attack on Corigliano's credibility," as opposed to identifying particular alleged benefits) (Ex. JJ).

- 13 -

This is so in part because "a party may not present extrinsic evidence to impeach a witness by contradiction on a collateral matter." *United States v. Beauchamp*, 986 F.2d 1, 3-4 (1st Cir. 1993).[12] Critically, this "collateral issue rule" requires that "in order to be admissible," extrinsic evidence (including documents[13]) "must not only contradict a statement of the [witness], but must also be material to [the defendant's] guilt or innocence." *United States v. Mulinellli-Navas*, 111 F.3d 983, 988 (1st Cir. 1997).[14]

---

[12] *Accord Walker v. Firestone Tire & Rubber Co.*, 412 F.2d 60, 63 (2d Cir. 1969) (noting "well settled" rule that an opposing party may "ask questions" but "is not permitted to adduce extrinsic evidence that a witness lied on a previous occasion"); *United States v. Perez-Perez*, 72 F.3d 224, 227 (1st Cir. 1995) ("extrinsic evidence to impeach is only admissible for contradiction where the prior testimony being contradicted was itself material to the case at hand"); *United States v. Tarantino*, 846 F.2d 1384, 1409 (D.C. Cir. 1988) ("the 'specific contradiction' rule . . . states that 'a witness may not be impeached by extrinsic evidence (contradiction by another witness or evidence) on a collateral issue'"). *See generally* 4 *Weinstein's Federal Evidence* § 608.20[3][a] at 608-37 - 608-39 (2d ed. 2003). In other words, "when a witness testifies to a collateral matter, the examiner 'must take [the] answer,' i.e., the examiner may not disprove it by extrinsic evidence." *Beauchamp*, 986 F.2d at 3. This is particularly so when the collateral matter about which the witness is to be impeached has been "elicited on cross-examination." *United States v. Lloyd*, 71 F.3d 1256, 1268 (7th Cir. 1995). The purpose of the rule is obvious: to prevent trials within the trial or "detour[s] into [] essentially irrelevant episode[s]." *United States v. Innamorati*, 996 F.2d 456, 479-80 (1st Cir. 1993).

[13] *See* Wright et al., 28 *Fed. Prac. & Proc.* § 6117 (2004).

[14] In *Mulinelli-Nava*, the defendant attempted to impeach a government cooperating witness with extrinsic evidence that the witness lied on the stand about what he had said in a prior interview. *See id.* at 988. The district court precluded the cross-examination, and the Court of Appeals found that this was a proper exercise of its discretion as the proposed extrinsic evidence "was relevant only to [the cooperating witness's] credibility on a matter immaterial to [the defendant's] guilt." *Id.* at 989. *Accord United States v. Marino*, 277 F.3d 11, 24 (1st Cir. 2002) (district court properly excluded extrinsic evidence offered to impeach government's primary witness where that evidence "was not relevant to [the defendant's] guilt or innocence").

*See also United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995) (citing *Nixon*) ("[c]ourts have consistently interpreted the admissibility standard of Rule 17(c) to preclude production of materials whose evidentiary use is limited to impeachment"); *Weissman*, 2002 WL 31875410, at *1 (quashing subpoena and rejecting contention that production should be compelled because the subpoena "*may* have some evidentiary basis other than impeachment – such as to show bias, to show state of mind or as recorded recollection") (emphasis in original). Only where "other valid potential evidentiary uses for the same material" exist may a court order

Use of a Rule 17(c) subpoena for impeachment is also improper to the extent any documents or other extrinsic evidence would be offered to attack Mr. Corigliano's *character for truthfulness*, because admission of such evidence would be barred by Fed. R. Evid. 608(b). This Rule bars evidence "'designed to show that the witness has done things, unrelated to the suit being tried, that make him more or less believable per se.'" Fed. R. Evid. 608(b), Advisory Committee Note, 2003 Amendments (quoting *United States v. Fusco*, 748 F.2d 996, 998 (5th Cir. 1984)).[15]

### C. Rule 17(c) Cannot Be Used to Circumvent the Government's Disclosure Obligations Under Rule 16, Brady/Giglio and the Jencks Act

Courts have long held that Rule 17(c) subpoenas "cannot be used as a means of circumventing Rule 16's limits on discovery in a criminal case." *United States v. Brown*, 95 CR 168, 1995 WL 387698, at *9 (S.D.N.Y. June 30, 1995). *See also United States v. De Yian*, No. 94 Cr. 719, 1995 WL 614563, at *1 (S.D.N.Y. Oct. 19, 1995) ("Having received the benefits of Rule 16(a)(1), further discovery is barred by Rule 16(a)(2), and that bar cannot be circumvented

---

the pre-trial production of statements for the purpose of impeaching a party's witnesses. *Nixon*, 418 U.S. at 702.

[15] Nor would such extrinsic evidence be admissible under Fed. R. Evid. 613(b) to prove a prior inconsistent statement by a witness unless the requested documents satisfied the requirements of *Nixon* and the allegedly inconsistent statements contained in those documents were "material" and not collateral. *See United States v. Bolzer*, 367 F.3d 1032, 1038-39 (8th Cir. 2004); 4 *Weinstein's Federal Evidence* § 613.05[1], at 613-14 (2003) (Rule 613(b) permits extrinsic evidence where "relevant" or "material" but not on "collateral matters"). In this case, because much of the information sought by defendant Forbes' latest subpoenas is collateral and not relevant to the charges against him, this Court has broad discretion to preclude impeachment by extrinsic evidence, even if the extrinsic evidence is a prior inconsistent statement. *Cf. United States v. Mulinelli-Navas*, 111 F.3d 983, 988 (1st Cir. 1997) ("The inquiry into what is collateral is squarely within the trial court's discretion.") (citing *United States v. Kozinski*, 16 F.3d 795, 806 (7th Cir. 1994)). Indeed, as noted above, the Court previously rejected such a Rule 613(b) argument by defendant Forbes during the first trial. *See* Tr. 7/30/04, at 12.

by the service of a Rule 17(c) subpoena."); *United States v. Percevault*, 490 F.2d 126, 128-29 (2d Cir. 1974) ("The Jencks Act . . . is the exclusive vehicle for disclosure of statements made by government witnesses") (citing *Palermo v. United States*, 360 U.S. 343 (1959)).[16]

Indeed, it is well-established that Rule 17(c) subpoenas calling for documents including or reflecting witness statements, impeachment material, plea negotiations, and settlement discussions should be decided with reference to, and in harmony with, the array of rules, statutes and decisions carefully governing and limiting the scope and timing of the disclosure, as well as the admissibility of these important categories of evidence. *See, e.g.*, Fed. R. Crim. P. 17(h) ("No party may subpoena a statement of a witness or of a prospective witness under this rule."); *United States v. Beckford*, 964 F. Supp. 1010, 1031 (E.D. Va. 1997) ("Rule 17(c) subpoena duces tecum is improper where it calls for the production of *Brady*, Jencks or *Giglio* material"). And while many of these rules expressly govern only the government's disclosure obligations, this Court nevertheless should carefully apply and enforce Rule 17(c) in a manner consistent with these edicts:

> Although the language of Rule 17(c) is broad, the rule is only one in an integrated group for the regulation of procedure in criminal cases in federal courts. It must be read with the other rules in mind
> . . . .

*United States v. Carter*, 15 F.R.D. 367, 370 (D.D.C. 1954) (internal citation and quotations omitted), *cited with approval in Nixon*, 418 U.S. at 701-02. To the extent that defendant Forbes' subpoenas attempt to circumvent this carefully crafted balance, they should be quashed.

---

[16] The Second Circuit has held that under the Jencks Act, which provides the exclusive procedure for addressing defendants' demands for the production of prior statements of a government witness, the government cannot be ordered to disclose such statements before trial. *See United States v. Coppa*, 267 F.3d 132, 145 & n.10 (2d Cir. 2001). Congress also specifically excluded so-called "3500 materials" from the scope of Rule 16, thereby avoiding any conflict between the criminal discovery rules and the Jencks Act. *See* Fed. R. Crim. P. 16.

### D. The Court May Also Exclude Cumulative, Unnecessary and Therefore Inadmissible Evidence

While we acknowledge the Court's prior determination that a defendant may seek by Rule 17(c) subpoena documents that would constitute admissible evidence of a witness' bias, including admissible evidence showing the extent to which a cooperating witness has received or may receive any benefits from the government, *see, e.g.*, Kidney Ruling at 2 (*citing United States v. Harvey*, 547 F.2d 720, 722 (2d Cir. 1976)) (Ex. II), the right to introduce such evidence – and thus the subsidiary right under Rule 17(c) to attempt to gather it – is not unlimited. Where, as here, the jury will possess "sufficient information concerning formative events to make a 'discriminating appraisal' of a witness's motives and bias," the district court has ample discretion under Rule 403 to exclude additional extrinsic evidence on those same issues. *United States v. Blackwood*, 456 F.2d 526, 530 (2d Cir. 1972) (explaining that "[a] defendant's right to elicit such [bias] evidence . . . is not boundless, but is subject to reasonable limitations imposed by the trial judge in the exercise of sound discretion"). This is particularly so where such evidence would be likely to confuse and distract the jury vis-à-vis the real issues and defendants on trial. *See United States v. Gomes*, 177 F.3d 76, 81 (1st Cir. 1999) (agreeing that while certain extrinsic evidence might show "bias," "the trial judge had discretion to exclude such an excursion into extrinsic evidence that would distract the jury from the main issues in this case"). *Accord United States v. Weiss*, 930 F.2d 185, 198 (2d Cir. 1991) (finding no error in the exclusion, as cumulative, of extrinsic evidence of prosecution witness's bias where defense counsel already caused the witness to "admit [ ] to the main circumstances from which any bias supposedly arose, "[a]ll the relevant information was obtained[,] and there is no evidence that the testimony would have added anything of probative value") (internal citation omitted).

KL3:2469827.2