As this Court has explained many times in quashing Forbes' multiple improper demands during the 2004 trial, rote incantations of "bias" and "benefit" by clever but disingenuous lawyers cannot and should not become a broad and open-ended exception that swallows the no-impeachment-with-extrinsic-evidence rule. *See, e.g.,* Kidney Ruling at 3 ("It is obvious to the court that, at least at the time the subpoenas were served, it was defendant Forbes' intention to use the issue of benefits received by Corigliano as a wedge to get into areas where the focus would <u>not</u> be on what benefits have been or may be received by Corigliano from the government.") (emphasis in original) (Ex. II); Gonedes Ruling at 3 (subpoena quashed in relevant part because "the documents called for reflect lines of inquiry calculated to lead solely to bolster the defendants' attack on Corigliano's credibility," as opposed to identifying particular alleged benefits) (Ex. JJ).

### IV. THE COURT SHOULD ADHERE TO ITS PRIOR RULINGS AND SUMMARILY QUASH DEFENDANT FORBES' MANY DUPLICATIVE DEMANDS

We turn now to the vast majority of demands in the "new" 2005 subpoenas issued to Kramer Levin, Mr. Corigliano and various third-parties that are the same or sufficiently identical to demands made in the context of the 2004 trial that the Court should adhere to its prior rulings, as discussed above in Point II.[17] In an effort to simplify matters, we have for the most part attempted to organize these repetitive demands by topic as opposed to by subpoena, as many demands and topics are repeated across multiple subpoenas.

---

[17] KL#1/1-5, 8; KL#2/1-2, 4-5; KL#3/1-7, 12-16; KL#4/Renewal (all calls); CC#1/5-7, 10-11, 15-17, 19; CC#2/3-14; CC#3/Renewal (all calls); Citibank#1/2, 4, 10, 23; MBNA/2, 4, 5, 8; People's Bank/1-4; Receiver/1; Citibank#2/Renewal (all calls); T. Rowe Price/Renewal (all calls); Liberty Bank/Renewal (all calls); Fidelity/Renewal (all calls); and Fleet/Renewal (all calls).

### A. "Renewal" Demands

Counsel for defendant Forbes conceded that all of the calls in subpoenas CC#3/Renewal and KL#4/Renewal (*see* Exs. C & G) have been ruled on in the past and quashed and that he "assume[s] that the District Court will make the same rulings as it did in the past." Letter from Margaret A. Keeley to Eric Tirschwell (Sept. 9, 2004) (Ex. FF). We agree, and we move to quash without burdening the Court with repetitive briefing. Instead, we incorporate by reference all of our prior arguments in our 2004 motions to quash as well as the arguments set forth in Points II and III, *supra*.

We also move to quash the improper subpoenas, dated September 14, 2005, served on five financial institutions (Citibank, T. Rowe Price, Liberty Bank, Fidelity, and Fleet) without burdening the Court with repetitive briefing.[18]  As Forbes' counsel concedes, "[t]hese subpoenas seek a subset of categories of information sought through earlier pre-trial subpoenas [and] [w]e understand that the Court previously quashed the subpoenas which included these (or similar) requests." Letter from Margaret A. Keeley to Alan Friedman, Audrey Strauss & Susan Brune (Sept. 15, 2004) (Ex. HH). We again incorporate by reference all of our prior arguments in our 2004 motions to quash as well as the arguments set forth herein.

### B. Retainer Paid to Kramer Levin

With respect to the retainer paid to Kramer Levin, Forbes' 2005 demands seek documents that were specifically requested during the 2004 trial (often on multiple occasions), briefed at length, and definitively ruled on by Your Honor. Forbes' repetitive 2005 demands can be divided into three categories, each of which was covered by multiple requests in the 2004 trial: (1) "all documents describing or memorializing agreements" between Mr. Corigliano and

Kramer Levin with respect to the retainer; (2) "all documents describing or memorializing agreements" between Mr. Corigliano and the SEC pertaining to the retainer; and (3) documents sufficient to establish the current balance of the retainer. KL#1/1-3 (Ex. D); CC#1/10 (Ex. A.)

During the 2004 trial, after considering and granting motions to quash subpoenas served by defendant Shelton seeking these same categories of documents, entertaining and partially granting Shelton's motion for reconsideration that was joined in full by Forbes, and then granting an additional motion to quash Forbes' later subpoena calling for the very same categories of documents,[19] the Court made its rulings on these retainer issues perfectly clear:

- "[A] right to receive legal services valued at up to a certain amount . . . is a benefit . . . [a]nd the defense is entitled to put that benefit out before the jury." (Tr. 7/30/04, at 8-9.)

- "I don't see how the retainer agreement does that." (*Id.* at 10.)

- Retainer-related documents were not admissible to show "prior inconsistent statements." (*Id.* at 12.)

- The letter from the Kramer Levin accounting department dated July 31, 2004 – which set forth the balance of the legal fee retainer paid to Kramer Levin at the time of the trial and at the time of the SEC settlement – "reflects all of the information defendant Forbes is entitled to introduce into evidence on this topic [and] any additional documents obtained by defendant Forbes pursuant to the subpoena would be excluded pursuant to Rule 403 as cumulative." (Gonedes Ruling at 2 (Ex. JJ.))

- Demands relating to alleged "agreements" with the SEC concerning the balance of Kramer Levin's retainer were improper as "the documents called for reflect lines of inquiry calculated solely to bolster the defendants' attack on Corigliano's credibility during their cross-examinations of him, as opposed to identifying particular benefits that were or could be received by Corigliano as a result of his settlement with the SEC." (*Id.* at 3.)

---

[18] These subpoenas include: Citibank#2/Renewal; T. Rowe Price/Renewal; Liberty Bank/Renewal; Fidelity/Renewal; and Fleet/Renewal. (Exs. N-R.)

[19] Forbes Aug. 19, 2004 Subpoena (calls #1-3) (Ex. BB); Shelton July 20, 2004 Subpoenas (calls #1-5) (Exs. V & W).

- There is no "legitimate basis to argue that Mr. Corigliano has cash on deposit with his counsel." (Tr. 7/30/04, at 8.)[20]

Moreover, in the course of making these rulings, the Court found that what Forbes' counsel was attempting through these retainer demands was "particularly inappropriate" and a "back-door attack on credibility." Kidney Ruling at 3-4 (incorporated by reference in Gonedes Ruling) (Exs. II & JJ). The Court also noted that "[t]he recipients of the subpoenas [including Kramer Levin] have accurately perceived what defendant Forbes' strategy is, and in moving to quash these subpoenas, they emphasize all of the inappropriate aspects of what it appears defendant Forbes would attempt to do." (*Id.* at 4-5.)[21]

In sum, the Court ruled that Forbes was entitled to know only the balance of Kramer Levin's retainer as of the time of the settlement and at the time of trial (which we voluntarily disclosed during the 2004 trial and are prepared to do again upon the Court's

---

[20] Ignoring the Court's express finding on this point, Forbes' latest subpoenas almost tauntingly characterize the retainer as "legal fees and expenses *on deposit*" with Kramer Levin. *See* KL#1/1 (Ex. D); CC#1/10 (Ex. A) (emphasis added).

[21] Similarly, in another written ruling on September 24, 2004, the Court noted that our counter-statement of certain facts set forth in our reply memorandum seeking to quash trial subpoenas served on Mr. Corigliano's attorneys was also accurate. *See* Ruling Mot. Non-Parties Gary P. Naftalis & Alan R. Friedman Quash Subps. Trial Testimony, dated Sept. 24, 2004 [hereinafter KL Attorneys Ruling] (citing Reply Mem. in Supp. at 2-4) (Exs. LL & MM). In that reply memorandum, we noted that "Defendant Forbes' inattention to the record and refusal to adhere to the rulings in this case are well documented" and that his submissions represented "a continuation of his efforts to relitigate or otherwise challenge the Court's prior rulings and to hide the ball about his true intentions." (*Id.* at 2.) In particular, we noted defendant Forbes' failure "even to acknowledge the Court's clear ruling that when the SEC learned about the retainer prior to settling with Mr. Corigliano is not subject to disclosure," or to acknowledge the Court's ruling that the retainer Mr. Corigliano paid to his attorneys was not "his asset" or "cash on deposit with his counsel."

direction[22]) and that anything further that Forbes sought relating to the retainer or its disposition was not admissible and therefore was not properly the subject of a Rule 17(c) subpoena demand. These rulings squarely address and should resolve each of the repetitive 2005 subpoena demands relating to the Kramer Levin retainer, all of which summarily should be quashed.[23]

### C. Retainer Paid to Fried Frank

Forbes' 2005 repetitive requests for documents relating to the Kramer Levin retainer are mirrored in essentially identical demands seeking documents relating to the retainer paid to the Fried Frank firm, which represents Mr. Corigliano's wife, Agnes. *See* CC#1/11 (Ex. A); KL#1/4 (Ex. D); *see also* FF/1, 2 and 4 (Ex. H). For the most part these demands are identical or nearly-identical to demands made on the Fried Frank law firm during the 2004 trial.[24] Apart from allowing defendant Forbes to obtain and introduce the balance of the Fried Frank retainer, for the same reasons as it allowed into evidence the amount of the balance of the Kramer Levin retainer, all of the retainer-related requests served on Fried Frank were quashed.[25]

---

[22] In our second meet and confer on October 6, 2005, we agreed to provide counsel for Forbes with such a letter, as we did in the 2004 trial.

[23] *See* KL#1/1-3 (Ex. D); CC#1/10 (Ex. A).

[24] *See* Aug. 19, 2004 Fried Frank Subp. (calls 1, 2, 3 and 5) (Ex. CC).

[25] The Court quashed this subpoena, in relevant part, in a written ruling dated September 24, 2004, "because the documents called for reflect lines of inquiry calculated solely to bolster the defendants' attack on Corigliano's credibility during their cross-examinations of him, as opposed to identifying particular benefits that were or could be received by Corigliano as a result of his settlement with the SEC." *See* Ruling Mot. Non-Parties Audrey Strauss & Fried Frank Quash Subps. Seeking Trial Testimony & Docs., dated Sept. 24, 2004, at 2 (Ex. NN).

It appears that Forbes did not specifically demand documents concerning the agreement between Fried Frank and Mrs. Corigliano during the 2004 trial. But the same reasoning the Court applied in rejecting the 2004 demands for the Kramer Levin retainer agreement should govern the 2005 demands for the Fried Frank retainer agreement.

KL3:2469827.2

There is no reason for any different result now, and the repetitive 2005 Fried Frank retainer-related requests should be summarily quashed.

### D. Kramer Levin Billing Records Provided to Cendant

Next, defendant Forbes demands production of "[a]ll billing records concerning work performed by [Kramer Levin] on behalf of Cosmo Corigliano that were provided to Cendant Corporation." KL#1/8 (Ex. D). Again, although not on Forbes' "renewal" list, this request is entirely duplicative of prior subpoenas that this Court quashed last year. It is exactly the same as the demands included in defendant Forbes' subpoenas to Kramer Levin and Mr. Corigliano, dated July 23, 2004 (Exs. Y & Z), seeking, respectively, "[a]ll billing records or statements concerning work performed by Kramer Levin Naftalis & Frankel LLP on behalf of Cosmo Corigliano that were provided to Cendant Corporation" (call #2) and "[a]ll billing records or statements concerning work performed on your behalf by Kramer Levin Naftalis & Frankel LLP that were provided to Cendant at any time" (call #2). The Court previously quashed these requests, ruling that defendant Forbes is not entitled to any Kramer Levin billing records because no piece of paper that Kramer Levin ever sent to Mr. Corigliano – whether in the form of a bill or some other type of document – stated the remaining balance of the retainer, which is the only information defendant Forbes conceivably might use to show the "benefit" Mr. Corigliano allegedly received in connection with the retainer that he paid to Kramer Levin. (*See* Tr. 8/2/04 at 9121-22, 9129.)[26] Because Mr. Corigliano still has never received any piece of paper from

---

[26] As we represented during the 2004 trial, and reiterate now, there are no documents that went from Kramer Levin to Mr. Corigliano reflecting the remaining balance of the retainer. *See* Kramer Levin Mem. Opp'n Forbes Request for Billing Records, dated Aug. 1, 2004, at 14; Tr. 8/2/04, at 9122 (THE COURT: "And my understanding is that none of the bills that Mr. Corigliano received stated the remaining amount of his retainer." MR. NAFTALIS: "That's correct, Your Honor."); *id.* at 9129 (MR. ARENA: "[N]one of the bills sent to Mr. Corigliano stated the remaining amount of his retainers. Does the term 'bills' include all documents that he

Kramer Levin that stated the remaining balance of the retainer, this latest demand for Kramer Levin's billing records should be summarily quashed.

### E. Alleged Agreements with the SEC Concerning Expenditures Between April 16, 2004 and the Turnover of the Corigliano Family Assets

Persisting in pressing the self-created fiction that, under the terms of his settlement with the SEC, Mr. Corigliano was not permitted to make expenditures in the ordinary course during the period between April 16, 2004 (when the SEC settlement was signed) and the July 2004 turnover of the Corigliano family assets, Forbes now demands yet again that Kramer Levin (and, in an identical request, Fried Frank) produce "[a]ll documents describing or memorializing any agreements with the SEC relating to expenditures by or on behalf of either Cosmo Corigliano or Agnes Corigliano between April 16, 2004 and July 7, 2004, from assets that existed as of March 31, 2004." KL#1/5 (Ex. D); *see also* FF/3 (Ex. H). The Court already considered and quashed a similar demand during the 2004 trial.[27] *See* Gonedes Ruling (Ex. JJ). More importantly, as we noted when we moved to quash that earlier demand, and as we restate now, there simply are no separate or additional agreements with the SEC on this issue – and thus no documents reflecting any such separate or additional agreements – beyond the SEC settlement

---

received from Kramer Levin?" MR. NAFTALIS: "Yes, it does."). Based on these representations, the Court declined to order production of any of these bills. (Tr. 8/2/04 at 9121-22, 9129.)

[27] Forbes' August 19, 2004 subpoena to Kramer Levin demanded an even wider universe of alleged agreement-related documents that would have included his current request, i.e., "[a]ll documents describing or memorializing any agreement with the SEC concerning the existence, use, or disposition of any assets legally or beneficially used or controlled by Cosmo Corigliano or Agnes T. Corigliano, other than the budget agreement dated August 28, 2000 and the Settlement Agreement dated April 16, 2004." *See* Aug. 19, 2004 Kramer Levin Subp. (Ex. BB).

The Court quashed that subpoena in its September 24, 2004 rulings on the ground that "the documents called for reflect lines of inquiry calculated solely to bolster the defendants' attack on Corigliano's credibility during their cross-examinations of him." *See* Gonedes Ruling (Ex. JJ).

- 24 -

agreement that Forbes already has in his possession and used extensively during the 2004 trial. Finally, as the Court now knows, Mr. Corigliano's understanding of the SEC settlement – that it allowed him to continue to pay ordinary and reasonable expenses up to the turnover of assets, *see* Tr. 8/3/04, at 9389-412 – is shared by the only other party to that agreement, the SEC. Specifically, SEC attorney David Frohlich testified that as to the period between the SEC settlement (in April 2004) and when Mr. Corigliano actually turned over his assets to the receiver (in early July 2004), Mr. Corigliano "could continue [to pay] his reasonable expenses" out of the funds that he was going to turn over to the receiver. *Id.* For all of these reasons, these renewed demands for imagined documents concerning a purported additional agreement that counsel for Forbes knows does not exist should be quashed.

### F.    The Coriglianos' Expenditures Between April and July 2004

Defendant Forbes' current demands served on Mr. Corigliano (CC#1/5-7) (Ex. A) and three third-parties (Citibank#1/2, 4, 10 and 12; MBNA/2, 4, 6 and 8; People's Bank/1-4) (Exs. K-M) also seek a range of credit card statements, bank statements and other documents in a classic fishing expedition into how and on what the Coriglianos spent money during this same period between the SEC settlement in April 2004 and the turnover of their assets in July 2004.

The Court has already ruled on similar demands[28] and determined what information and what documents defendant Forbes was entitled to receive in order to put before the jury the purported "benefit" Mr. Corigliano received in the form of sums he was allowed to spend during the period between April and July 2004. Consistent with these rulings, *see* Tr.

---

[28] Forbes served a subpoena on Mr. Corigliano, dated July 23, 2004, requesting documents sufficient to identify expenditures over $1,000 made between March 31, 2004 and the time he transferred assets to the receiver, and documents sufficient to identify any sums he retained from funds transferred to the receiver. *See* Ex. AA.

8/2/04, at 9121, Mr. Corigliano has already produced to the defense documents sufficient to identify any expenditures over $1,000 made between March 31, 2004 and the time he transferred his assets to the Receiver in July 2004 and documents sufficient to identify any sums that he retained from funds transferred to the Receiver, including any uncleared checks and sums necessary to satisfy any loans or other encumbrances, or taxes due, on the disposition of those assets. For example, these documents included copies of cancelled checks for property tax payments totaling approximately $19,000; a spreadsheet showing income tax payments of $86,500; a spreadsheet showing credit card payments to Citibank and MBNA (which included payments on both these credit cards during the time period) as well as other living expenses totaling more than $64,000; and, a list of dividend checks totaling about $14,000, which were deposited into a People's Bank checking account and immediately turned over to the Receiver. Counsel for both Forbes and Shelton also cross-examined Mr. Corigliano at length about these expenditures and, in particular, whether he had any agreement with the SEC concerning expenditures between April and July 2004. *See* Tr. 8/2/04, at 9205-09; 8/3/04, at 9378-80, 9389, 9393-412, 9458-60, 9466.

Accordingly, because prior demands for similar documents were made, the Court issued rulings, materials were disclosed, and full cross-examination took place, the Court should adhere to its prior rulings and not require anything more. The latest demands – which in essence seek the wholly irrelevant item-by-item expenditure details behind the above-described disclosures – are classic non-specific fishing expeditions and an attempt to pry improperly into the minutiae of the Corigliano family finances to see if anything interesting turns up. They should be quashed.

### G.     The Coriglianos' SEC Affidavit

Repeating a demand he unsuccessfully made on the government during the 2004 trial, Forbes seeks again – and not just once, but three times, from Mr. Corigliano, from Kramer Levin, and from the court-appointed Receiver – a copy of the accounting that Mr. Corigliano submitted in connection with the SEC settlement agreement. *See* CC#2/14 (Ex. B); KL#3/16 (Ex. F); Receiver/1 (Ex. I).[29] These demands are repetitive of Forbes' motion to compel dated September 28, 2004 – which came after a full record had been developed following Mr. Corigliano's extended examination – seeking production from the government under Rule 16 of this same affidavit and its exhibits. *See* Forbes Mem. Supp. Mot. Compel Production Aff. (Forbes Trial Mot. No. 40). Forbes argued then that "this affidavit contains evidence of the benefits conferred on Mr. Corigliano – in the form of assets which he is being permitted to keep or use" and "is relevant to Mr. Corigliano's bias." (*Id.* at 2.) In response to that motion, the government agreed to and did in fact produce the affidavit, an exhibit that listed the Coriglianos' assets as of March 31, 2004, and a valuation of their personal property (which was arguably responsive to Forbes' benefit theory), but argued that defendant Forbes was not entitled to the other exhibits listing the Coriglianos' brokerage and bank accounts and asset transfers over $5,000 over an eight-year period between January 1, 1996 and March 31, 2004, because he was "clearly seeking to embark on yet another impermissible fishing expedition in the hope of

---

[29] As previously disclosed, the accounting consists of an affidavit plus three exhibits: (i) a list of the Coriglianos' assets worth at least $5,000, as of March 31, 2004, (ii) a list of the Coriglianos' accounts with any financial institution or brokerage firm between January 1, 1996 and March 31, 2004, and (iii) a list of transactions in amounts of $5,000 or more conducted in these accounts between January 2006 and March 31, 2004.

- 27 -

KL3:2469827.2