# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,                )
                                         )
                                         )
v.                                       )
                                         )          No. 3:02CR264 (AWT)
WALTER A. FORBES.                        )          October 11, 2005
                                         )
                                         )

# MEMORANDUM OF WALTER A. FORBES IN OPPOSITION TO MOTION OF COSMO CORIGLIANO AND KRAMER LEVIN NAFTALIS & FRANKEL LLP TO QUASH RULE 17(C) SUBPOENAS

WILLIAMS & CONNOLLY LLP
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

COWDERY, ECKER & MURPHY, L.L.C.
James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

*Attorneys for Walter A. Forbes*

Dated:  October 11, 2005

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................2

I.    SUBPOENAS SERVED. ....................................................................2

      A.    Subpoenas Served for the Production of Documents Prior to
            and During the First Trial..........................................................2

      B.    Subpoenas Served for the Production of Documents During
            the Retrial. ................................................................................4

      C.    Meet and Confer Process. ..........................................................6

ARGUMENT......................................................................................................9

I.    MR. CORIGLIANO'S AND KRAMER LEVIN'S REQUEST FOR
      PROPHYLACTIC RELIEF IS SPECIOUS............................................9

      A.    Mr. Forbes Not Only Properly Renewed His Prior Subpoena
            Requests, but Also Is Required To Have Renewed Those
            Requests In Order To Preserve Them.........................................9

      B.    Cosmo Corigliano and Kramer Levin Have No Basis To Ask
            the Court To Limit Mr. Forbes' Right to Compulsory Process.............16

II.   THE CONSTITUTION GUARANTEES A RIGHT TO
      COMPULSORY PROCESS AND EFFECTIVE CROSS-
      EXAMINATION. ...............................................................................16

      A.    Rule 17(c) Subpoenas Extend to Prior Inconsistent
            Statements, Contradiction Evidence, and Evidence of Bias
            and Motive...................................................................................18

            1.    Prior Statements of the Witness as Impeachment. ...................20

            2.    Impeachment with Evidence of Bias and Motive. ......................21

            3.    Impeachment by Contradiction. ..................................................23

                  a.    Impeachment by Contradiction as to Non-
                        Collateral Matters. ............................................................23

                  b.    Impeachment by Contradiction as to Collateral
                        Matters When the Door Has Been Opened by
                        Direct Examination. ..........................................................24

B.    Extrinsic Evidence Which Can Be Used To Confront a Witness, but Which Is Inadmissible in and of Itself, Is Nonetheless Discoverable Under Rule 17(c)............................................27

III.  THE DOCUMENTS SOUGHT HERE SHOULD BE PRODUCED. ...............28

A.    The "Renewal Subpoenas"..................................................................28

B.    The Coriglianos' Expenditures Between April and July 2004..............29

C.    Documents Exchanged and Communications with the Government and Cendant, Including Subpoena Exhibits A-V. ...........30

D.    Budget and Living Expense Information and Other Financial Information Mr. Corigliano Provided His Counsel.................................33

E.    September 2003 Asset Information.......................................................36

F.    Documents Concerning the Disposition of the Proceeds of Mr. Corigliano's Illicit Stock Sales.............................................................36

       1.    The Coriglianos' SEC Affidavit.................................................36

       2.    Financial Records for Mr. Corigliano's Illicit Proceeds. .............39

G.    Agreements with the SEC Concerning Expenditures Between April 16, 2004 and July 7, 2004, and Concerning the Coriglianos' Retainers.............................................................................40

H.    Dates of Meetings with the Government Since the 2004 Trial............41

I.     Legal Fees Advanced by Cendant. .......................................................42

J.     Receiver Documents............................................................................43

K.    Kramer Levin Retainer........................................................................44

L.     Fried Frank Retainer............................................................................46

M.    Kramer Levin Billing Records Provided to Cendant............................46

N.    Communications Between Mr. Corigliano and Kramer Levin Between April 1998 and January 2000, and Kramer Levin's Proffer Sessions with the Government. ..................................................46

       1.    The False Exculpatory Letter to Cendant..................................49

       2.    The False Exculpatory Proffer Session .....................................49

       3.    The False Exculpatory Attorney Proffer Sessions.....................51

O.    Polygraph-Related Documents.............................................................52

P.     Documents Concerning "Benefits" from Cooperation...........................52

Q.    Connecticut Board of Accountancy.....................................................53

|      | R.  | Post 2004-Trial Communications Relating to the Government and Benefits. | 54 |

|      | S.  | Credit Card and Loan Applications. | 56 |

|      | T.  | Crystal Journey Candles Documents. | 56 |

|      | U.  | 2000-2003 Property Taxes. | 57 |

| IV.  | SHOULD THE COURT QUASH ANY OF MR. FORBES' SUBPOENA REQUESTS, RESPONSIVE DOCUMENTS SHOULD BE SUBMITTED UNDER SEAL SO THAT THE FULL RECORD IS PRESERVED FOR ANY APPEAL. | | 58 |

| CONCLUSION | | | 58 |

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951) .............................. 28

*Brimley v. Hardee's Food Sys., No. 93 Civ. 1797 (LAK), 1995 U.S. Dist. LEXIS 1471 (S.D.N.Y. Feb. 8, 1995)* .......................................... 35

*Brogan v. United States*, 522 U.S. 398 (1998).................................... 50

*Cleveland v. Cleveland Electric Illuminating Co.*, 538 F. Supp. 1328 (N.D. Ohio 1981) ....................................................................... 11

*Davis v. Alaska*, 415 U.S. 308 (1974) ................................................ 17

*In re Grand Jury Proceedings*, 417 F.3d 18 (1st Cir. 2005)....................... 48, 49

*In re Grand Jury Subpoena*, 731 F.2d 1032 (2d Cir. 1984)........................... 47

*Krishna v. Colgate Palmolive Co., No. 90 Civ. 4116 (CSH), 1993 U.S. Dist. LEXIS 17935 (S.D.N.Y. Dec. 16, 1993)* ............................... 35

*In re Martin Marietta Corp.*, 856 F.2d 619 (4th Cir. 1988) ................. 17, 21, 22

*Mead Data Central, Inc. v. Air Force*, 566 F.2d 242 (D.C. Cir. 1977) ............. 33

*Morse / Diesel, Inc. v. Trinity Industrial Inc.*, No. 84 Civ. 5791, 1997 WL 470138 (S.D.N.Y. Aug. 14, 1997)............................................ 14

*North River Insurance Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160 (2d Cir. 1995) ................................................................. 13, 14

*Olden v. Kentucky*, 488 U.S. 227 (1988).......................................... 17

*Prisco v. A&D Carting Corp.*, 168 F.3d 593 (2d Cir. 1999) ...................... 14

*In re Richard Roe*, 168 F.2d 69 (2d Cir. 1999) .................................. 47

*Rosario v. Kuhlman*, 839 F.2d 918 (2d Cir. 1988) .......................... 23, 24

*SEC v. Comcoa Ltd.*, 887 F. Supp. 1521 (S.D. Fla. 1995), *aff'd subnom., Levine v. Comcoa Ltd.*, 70 F.3d 1191 (11th Cir. 1995)................................ 45

*SEC v. Credit Bancorp, Ltd.*, 109 F. Supp. 2d 142 (S.D.N.Y. 2000) ............... 45

*SEC v. Princeton Econ. International Ltd.*, 84 F. Supp. 2d 443
(S.D.N.Y. 2000) ............................................................................................. 45

*Savage v. United States*, 295 F. 686 (4th Cir. 1924) ........................................ 10

*United States ex rel. Stone v. Rockwell International Corp.*, 144 F.R.D.
396 (D. Colo. 1992) ................................................................................. 34, 35

*United States v. Abel*, 469 U.S. 45 (1984) ........................................................ 17

*United States v. Akers*, 702 F.2d 1145 (D.C. Cir. 1983) ............................ 11, 12

*United States v. Almonte*, 956 F.2d 27 (2d Cir. 1992) ..................................... 21

*United States v. Beckford*, 964 F. Supp. 1010 (E.D. Va. 1997) ........................ 38

*United States v. Benedetto*, 571 F.2d 1246 (2d Cir. 1978) ............................... 24

*United States v. Bufalino*, 683 F.2d 639 (2d Cir. 1982) ................................... 25

*United States v. Burr*, 25 F. Cas. 30 (C.C.D. Va. 1807) ................................... 17

*United States v. Carter*, 15 F.R.D. 367 (D.D.C. 1954) ............................... 37, 38

*United States v. Caruso*, 948 F. Supp. 382 (D.N.J. 1996) ............................... 17

*United States v. Cuadrado*, 413 F.2d 633 (2d Cir. 1969) ................................ 25

*United States v. Cuthbertson*, 630 F.2d 139 (3d Cir. 1980) ............................ 21

*United States v. Dixon*, 273 F.3d 636 (5th Cir. 2001) ...................................... 10

*United States v. Dovico*, 261 F. Supp. 862 (S.D.N.Y. 1966), aff'd, 380
F.2d 325, 326 n ........................................................................................... 13

*United States v. Garcia*, 900 F.2d 571 (2d Cir. 1990) ...................................... 24

*United States v. Gomez*, 67 F.3d 1515 (10th Cir. 1995) ................................... 10

*United States v. Hall*, 346 F.2d 875 (2d Cir. 1965) .......................................... 32

*United States v. Harvey*, 547 F.2d 720 (2d Cir. 1976) ..................................... 22

*United States v. Hill*, 60 F.3d 672 (10th Cir. 1995) .......................................... 10

*United States v. King*, 194 F.R.D. 569 (E.D. Va. 2000) ................................... 21

*United States v. LaRouche Campaign*, 841 F.2d 1176 (1st Cir. 1988)...... 21, 22

*United States v. Lynn*, 856 F.2d 430 (1st Cir. 1988)..................... 22, 23, 35, 45

*United States v. Mann*, 590 F.2d 361 (1st Cir. 1978) ...................................... 10

*United States v. Marcus Schloss & Co., Inc.*, No. 88 *CR 796 (CSH)*,
    1989 WL 62729 (S.D.N.Y. June 5, 1989) .................................................... 55

*United States v. Messino*, 882 F. Supp. 115 (N.D. Ill. 1995) .................... 21, 22

*United States v. Nixon*, 418 U.S. 683 (1974).......................................... 17, 18, 28

*United States v. Olin Mathieson Chemical Corp.*, 36 F.R.D. 18
    (S.D.N.Y. 1964) ............................................................................................ 17

*United States v. Oloyede*, 982 F.2d 133 (4th Cir. 1992)................................... 35

*United States v. Orena*, 883 F. Supp. 849 (E.D.N.Y. 1995)...................... 27, 28

*United States v. Palmer*, 122 F.3d 215 (5th Cir. 1997)................................. 9-11

*United States v. RW Professional Leasing Services*, 228 F.R.D. 158
    (E.D.N.Y. 2005)............................................................................................. 18

*United States v. Rosenthal*, 142 F.R.D. 389 (S.D.N.Y. 1992) ........................ 33

*United States v. Seijo*, 514 F.2d 1357 (2d Cir. 1975) ....................................... 26

*United States v. Skeddle*, 989 F. Supp. 912 (N.D. Ohio 1997) ....................... 55

*United States v. Tellier*, 255 F.2d 441 (2d Cir. 1958) ........................... 33-34, 46

*United States v. Tham*, 960 F.2d 1391 (9th Cir. 1992).................................... 12

*United States v. Todd*, 920 F.2d 399 (6th Cir. 1990)................................. 11, 12

*United States v. Uccio*, 940 F.2d 753 (2d Cir. 1991) .................................. 14, 15

*United States v. Wallach*, 935 F.2d 445 (2d Cir. 1991)............................. 25, 26

*United States v. White*, 950 F.2d 426 (7th Cir. 1991)...................................... 35

*United States v. Williams*, 205 F.3d 23 (2d Cir. 2000) ............................. 12, 15

*United States v. Zolin*, 491 U.S. 554 (1989)...................................................... 48

*Walder v. United States*, 347 U.S. 62 (1954)..................................................... 25

Walter A. Forbes, through undersigned counsel, respectfully submits the following Memorandum in Opposition to Motion of Non-Parties Cosmo Corigliano and Kramer Levin Naftalis & Frankel LLP ("Kramer Levin") to Quash Rule 17(c) Subpoenas and for Remedial Relief.  A supplemental memorandum providing additional details concerning Mr. Forbes' trial strategy, and in particular, potential lines of his cross-examination of Cosmo Corigliano, is also being filed *ex parte* and under seal in further opposition to Mr. Corigliano's and Kramer Levin's Motion.

## **INTRODUCTION**

Not content to argue the merits of Mr. Forbes' requests, Mr. Corigliano's and Kramer Levin's Motion attacks his counsel, accusing them of abusing the Court's process for serving subpoenas that are not only appropriate, ***but required by law should Mr. Forbes wish to preserve the requests for purposes of appeal.***  The baseless and vitriolic arguments advanced in the Motion to Quash are even more galling considering their source.  Far from being an "innocent bystander," Cosmo Corigliano is the centerpiece of the government's case against Mr. Forbes.  Never in the experience of any of Mr. Forbes' counsel has there been a cooperating witness who received the level of special treatment afforded Mr. Corigliano, or who stood to gain the benefits that the government has conferred upon him.  Mr. Forbes is entitled to the full facts surrounding the special treatment conferred upon this star witness; the documents he seeks by subpoena should be

ordered produced.[1]

* * * * * * * *

For the Court's convenience, in Section III *infra*, we have used

headings to describe each category of documents at issue that are similar to those

used by Mr. Corigliano and Kramer Levin in their Motion to Quash.  We have also

cross-referenced each section both to the corresponding argument in the Motion to

Quash, and to the specific subpoenas and calls at issue.  In addition, we have

duplicated Kramer Levin's "Index to Arguments," and added a column to cross-

reference the appropriate section of this Opposition.  See Exhibit ("Ex.") 1, attached

hereto.

## BACKGROUND

### I.    SUBPOENAS SERVED.

#### A.    Subpoenas Served for the Production of Documents Prior to and During the First Trial.

Prior to and during the first trial, Mr. Forbes issued a number of Rule

17(c) subpoenas seeking production of records pertaining to Cosmo Corigliano.  Mr.

Corigliano moved to quash the pre-trial subpoenas on numerous grounds, including,

*inter alia*, that the subpoenas sought impeachment material not subject to pre-trial

production, and that the subpoenas were overbroad and lacking in specificity.  The

Court granted this motion, presumably in part because of this specificity objection,

---

[1] Mr. Corigliano's counsel, Kramer Levin, has also been well compensated, receiving (even before the beginning of the last trial) in excess of five million dollars in fees from the Cendant Corporation, an entity which stands to benefit significantly should Mr. Forbes be convicted of the charges against him.

although the grounds relied upon by the Court were not made clear in its ruling.
Tr. 5/13/04 at 596 & Tr. 5/17/04 at 823.

Mr. Corigliano and Kramer Levin also moved to quash each and every one of the subpoenas issued during trial, again advancing the arguments that, *inter alia*, the requests were not sufficiently specific, or that the requests sought impeachment material not subject to production under Rule 17(c). The Court rejected many of their arguments, and the subsequent productions proved critical to Mr. Forbes' cross-examination of Mr. Corigliano. For example, Mr. Forbes received:

- a list of expenditures made by Mr. Corigliano in his purported "final quarter" under the SEC budget agreement, (DX2336); and
- the People's Bank loan file, including the appraisal of one of the two lots owned by the Coriglianos of $2.5 million (DX8).

Had Mr. Corigliano and Kramer Levin succeeded in their attempts to quash each and every one of Mr. Forbes' requests, neither of the above benefits would have been discovered and presented to the jury. Nonetheless, Kramer Levin and Mr. Corigliano's hollow arguments succeeded in one respect – the piecemeal fashion in which this material was produced significantly undercut its effectiveness. Mr. Forbes' cross-examination had to be resumed after the cross-examination by Mr. Shelton was completed in order to continue the cross-examination with regard to newly produced material, not available when Mr. Forbes conducted his initial cross-examination.[2] Mr. Corigliano and his counsel should not be permitted to

---

[2] Some of this material came from the government, <u>see</u> Amended Notice of Late Produced Impeachment Material, filed 7/27/2004, but some of the material consisted of documents produced pursuant to Rule 17(c) subpoenas that Mr. Corigliano and/or Kramer Levin had unsuccessfully moved to quash.

interfere in the presentation of the case in this manner again.

**B.    Subpoenas Served for the Production of Documents During the Retrial.**

Prior to the retrial, Mr. Forbes issued a number of new subpoenas. One of the subpoenas issued to Mr. Corigliano and one of the subpoenas issued to Kramer Levin repeated word-for-word some of the requests quashed prior to, or during, the first trial. Corigliano Exs. C and G.[3] As Mr. Corigliano and Kramer Levin acknowledge, these subpoenas were identified as "renewed," and were accompanied by a letter explaining that Mr. Forbes was nonetheless serving the subpoenas because Mr. Forbes continues to believe that he is entitled to the documents – particularly in light of the substantially expanded factual record since the Court's earlier rulings – and because Mr. Forbes needed to ensure that each of the subpoena demands was preserved for purposes of the current trial. Corigliano Ex. GG (September 14, 2005 letter of Margaret A. Keeley).

The requests in the remaining subpoenas fall into two categories. The first category consists of requests that have not been made before, including the requests that Mr. Corigliano and Kramer Levin acknowledge are new in their Motion. The second category consists of requests that have been revised since initially made in an effort to respond to Mr. Corigliano's and Kramer Levin's earlier

---

[3] Citations to "Corigliano Ex." refer to the exhibits attached to Mr. Corigliano's and Kramer Levin's Motion to Quash.

objections that they were not sufficiently specific,[4] or calls which may have been served before, but the relevance of which is even more clear now given the evidence learned in the interim.

Many of the requests in this second category are characterized as "renewed" requests in Mr. Corigliano's and Kramer Levin's Motion. Yet they should not be considered the same as Mr. Forbes' renewed requests. First, the factual record has substantially expanded since the Court ruled on the more expansive version of these requests. Second, most of the requests have been substantially revised to respond to Mr. Corigliano's and Kramer Levin's previous objections. For example, Mr. Corigliano previously objected to a request for all documents concerning his membership in any professional organizations (Subpoena dated 11/21/2001, ¶ 49, Corigliano Ex. S). Mr. Forbes thus revised the request to call only for communications between Mr. Corigliano and the Connecticut State Board of Accountancy concerning the potential revocation of his Connecticut Certified Public Accounting Certificate, the Board's investigation of his conduct at CUC and Cendant, or his negotiation and settlement with the Board. (CC#1, ¶ 19, Corigliano Ex. A) This request is substantially more narrow. Similar examples are discussed with respect to each relevant category below.

---

[4] Kramer Levin and Mr. Corigliano complain about the number of calls in Mr. Forbes' recent subpoenas. Mot. at 1-2. If the subpoenas are lengthy, however, it is because of an effort to respond to the prior objections of over-breadth.

## C.     Meet and Confer Process.

Kramer Levin claims that counsel for Mr. Forbes failed to engage in a good faith meet and confer.  First, there is no obligation for counsel to engage in a meet and confer concerning subpoena requests.  Second, despite having no obligation to do so, counsel for Mr. Forbes engaged in not one, but two, meet and confer conference calls, and they participated in good faith in each.  The fact that Kramer Levin asked that Mr. Forbes waive his rights and withdraw his requests, and he refused, does not constitute bad faith.  To the contrary, as discussed below, Mr. Forbes is *required* to press these issues if he wishes to preserve them.

Moreover, Kramer Levin's complaint that counsel for Mr. Forbes would not identify which of the requests sought the production of attorney work product turns the subpoena process on its head.  It is not Mr. Forbes' burden to identify which requests may call for work product, but Kramer Levin's burden to assert the work product privilege as an objection where appropriate.

Kramer Levin asked for a meet and confer telephone conference concerning the subpoenas dated July 17, 2005.  Declaration of Margaret A. Keeley ("Keeley Decl."), attached hereto as Ex. 2.  Counsel for Mr. Forbes concurred, but explained that additional subpoenas were being prepared.  Id.  It was thus agreed that counsel would send Kramer Levin the schedules to be attached to the

forthcoming subpoenas in advance of the teleconference.[5]  Id.  Counsel for Mr. Forbes called Eric Tirschwell of Kramer Levin on the day of the teleconference to obtain the appropriate e-mail address for this purpose, but did not hear back from Mr. Tirschwell until shortly before the call was scheduled.  Id.  Kramer Levin's implicit suggestion that Mr. Forbes' counsel is somehow at fault for providing the schedules so close to the scheduled call time, Motion at 7, should thus be flatly rejected.  Indeed, it was at the suggestion of Mr. Forbes' counsel that the call was postponed to allow Kramer Levin time to review the subpoena schedules e-mailed to it – including two schedules which Mr. Forbes acknowledged were simply renewing, word-for-word, prior requests to ensure that the record was clear that he was seeking the documents in this trial.  Id.

During the meet and confer itself, Kramer Levin expressed its opinion that requests in the "non-renewal" subpoenas were in fact "renewals."  Declaration of Barry S. Simon ("Simon Decl."), attached as Ex. 4, Declaration of Robert M. Cary ("Cary Decl."), attached as Ex. 5, and Keeley Decl.  Counsel for Mr. Forbes responded that there were categories of documents that the Court had previously

---

[5] Kramer Levin also asked for an extension of time to respond to the subpoenas already served, despite the fact they would have had them for one month prior to the return date.  Counsel for Mr. Forbes agreed to extend the return date so that *all* the subpoenas would be returnable on the same date – September 23, 2005.  As the Court is aware, Kramer Levin attempted to use counsels' agreement to their disadvantage in its motion for a briefing schedule, claiming that any scheduling issue was of "their own making."  Kramer Levin Motion for Briefing Schedule at 1.  Moreover, contrary to Kramer Levin's suggestion that counsel for Mr. Forbes failed to negotiate in good faith with regard to a briefing schedule, it was Kramer Levin that refused to respond to counsel's e-mail concerning this issue, see Ex. 3 attached hereto, electing to file a motion instead.

7

addressed that Mr. Forbes did intend to press further with the Court, given the fact

that many of the requests had been revised in response to Mr. Corigliano's and

Kramer Levin's previous objections, and in light of the additional evidence garnered

since the Court's prior rulings. Id. Counsel for Mr. Forbes was prepared to go

through each subpoena request during the meet and confer, but Kramer Levin

expressed its view that it would not be helpful to go through the subpoenas request

by request. Id.

After Kramer Levin had filed the Motion to Quash, a second meet and

confer was held in order to determine if the issues for the Court's consideration

could be narrowed. Id. The call proceeded much along the lines of the prior meet

and confer. Id. Counsel for Mr. Forbes reiterated that they were required to serve

subpoenas for purposes of the retrial in order to preserve the requests. Id. Counsel

for Mr. Forbes also confirmed that Mr. Forbes intended to include additional

argument in his Opposition as to the categories of documents Kramer Levin

addressed in Section IV of its Motion, and also advised Kramer Levin that Mr.

Forbes would be including additional argument concerning the subpoenas issued to

financial institutions through which the proceeds of Mr. Corigliano's stock sales

flowed, Corigliano Exs. N through R. Id.

As to the substance of the subpoenas, Kramer Levin agreed to provide

a letter reflecting the balance of Mr. Corigliano's retainer, as it had been ordered to

do in the first trial. Id. Counsel for Mr. Forbes agreed to narrow the request for

credit card applications to the time period of the SEC budget agreement – August

2000 through July 2004.  Id.  Kramer Levin stated that it nonetheless still objected to this narrowed request for credit card applications.  Id.

## ARGUMENT

## I.    MR. CORIGLIANO'S AND KRAMER LEVIN'S REQUEST FOR PROPHYLACTIC RELIEF IS SPECIOUS.

### A.    Mr. Forbes Not Only Properly Renewed His Prior Subpoena Requests, but Also Is <u>Required</u> To Have Renewed Those <u>Requests In Order To Preserve Them.</u>

Mr. Corigliano's and Kramer Levin's argument that the subpoenas Mr. Forbes issued in connection with this retrial "can only be described as an act of defiance of the Court's prior rulings and a subversion of the rules of orderly procedure," Mot. at 9, is more than mere hyperbole.  It is contrary to extensive circuit court precedent concerning the renewal of arguments in criminal retrials, none of which Mr. Corigliano or Kramer Levin brought to the Court's attention. Moreover, as set forth below, Mr. Corigliano and Kramer Levin misstate Second Circuit case law in their effort to support their otherwise unsupportable position.

Not only is Mr. Forbes permitted to serve new subpoenas in connection with the retrial, to the extent that Mr. Forbes wants to preserve error, *he is required to serve new subpoenas and reassert his evidentiary arguments at this retrial*.  It is well-established that "[a] retrial following a mistrial is both in purpose and effect a new trial.  Accordingly, objections made at the aborted trial have no bearing on the retrial, as the two are entirely separate affairs."  <u>United States v. Palmer</u>, 122 F.3d 215, 221 (5th Cir. 1997).  A defendant in a criminal trial, therefore, has an "obligation" to renew requests and arguments at retrial to

9

preserve error.  <u>See</u> <u>id.</u> ("Palmer had an obligation [at retrial] to reassert her severance motion in a timely fashion if she wished to preserve error.").

Numerous circuit court opinions confirm this fundamental proposition. <u>See, e.g.,</u> <u>United States v. Dixon</u>, 273 F.3d 636, 639 (5th Cir. 2001) ("Because defendant did not object during his second trial to the kidnapping instruction, we review that instruction only for plain error."); <u>United States v. Gomez</u>, 67 F.3d 1515, 1526 n.13 (10th Cir. 1995) ("[I]t is fundamental that, in cases where a new trial has been ordered, objections made during the first proceeding do not preserve issues for appeal in the second."); <u>United States v. Hill</u>, 60 F.3d 672, 675 n.2 (10th Cir. 1995) (holding that defendant failed to preserve argument when he objected "during his first trial, which ended without conviction," but "failed to object to the same testimony at the second trial before the new jury that rendered the convictions Hill challenges in this appeal"); <u>Savage v. United States</u>, 295 F. 686, 687 (4th Cir. 1924) (declining to address objections at first trial that were not renewed at retrial and stating that "the exceptions . . . apply to the court's ruling and action at and during the first trial, when there was a disagreement of the jury, and hence are of no avail to the defendant upon the second trial").  As the First Circuit explained, the "argument that the district court's rulings at the mistrial two days earlier made objection unnecessary cannot be accepted; a rule that one objection preserves an issue during any retrials would make the domain of a trial judge more of a mine field than ever." <u>United States v. Mann</u>, 590 F.2d 361, 371 (1st Cir. 1978).

Although a district court *may* adhere to its prior rulings on retrial, it is

not required to do so.  See Palmer, 122 F.3d at 221; United States v. Todd, 920 F.2d

399, 404 (6th Cir. 1990).  The D.C. Circuit characterized as "baseless" the

suggestion (which Corigliano and Kramer Levin make here) that a trial court, on

retrial, must adhere to its prior evidentiary rulings.  United States v. Akers, 702

F.2d 1145, 1148 (D.C. Cir. 1983).

> No doctrine of the law of the case operates under *these*
> *circumstances.*  The evidentiary ruling at issue was
> rendered in a *new trial* which was ordered pursuant to a
> mistrial.  When, as here, "the previous trial [is] a nullity,"
> the court in the new trial tries "the case as if it were being
> tried for the first time . . . , as if there had been no prior
> trial."

Id. (emphasis and alterations in original) (footnotes omitted).

Mr. Corigliano's and Kramer Levin's brief quotes extensively from a

district court case in the Sixth Circuit to support the contrary argument that the

law-of-the-case doctrine restricts the Court's ability to reconsider issues at a retrial.

See Mot. at 11 (quoting Cleveland v. Cleveland Elec. Illuminating Co., 538 F. Supp.

1328, 1330 (N.D. Ohio 1981)).  They neglect to tell the Court, however, that a

subsequent Sixth Circuit decision *expressly rejected their argument* that a district

court is bound by evidentiary rulings made in a prior criminal trial that ended in

mistrial.  See Todd, 920 F.2d at 402.  Todd did not overrule Cleveland, and

recognized that a district court *may* apply the law of the case doctrine to rulings

made in a case that ends in mistrial, but it also recognized that a district court

retains the power to reconsider previously decided issues in this situation.  See id.

at 404 (holding that district court acted "appropriately" in revisiting evidentiary

rulings made in first trial).  "It is within the sole discretion of a court to determine if

a prior ruling should be reconsidered.  Thus, we *decline to impose any conditions or limitations upon a court's power to review a prior ruling* of another court."  Id. at 403 (emphasis added).[6]

Although the Sixth Circuit has stated that a district court may apply the law of the case doctrine to evidentiary rulings made in a criminal trial that ends in a mistrial, the Second Circuit declined to go even that far.  In United States v. Williams, 205 F.3d 23 (2d Cir. 2000), the Second Circuit did not reach the question of whether the law of the case doctrine applies in these circumstances because it rejected an argument that a district court violated the law of the case doctrine by not adhering on retrial to rulings it made during the first trial.

> Also unavailing is Williams's assertion that the district court violated the law of the case by reconsidering at the second trial several of the evidentiary rulings it had made at the first.  Specifically, Williams challenges certain modifications by the district court of its prior rulings on evidence of other crimes and innocent trips to Jamaica.  Assuming, without deciding, that the law of the case doctrine even applies to mere evidentiary rulings in a second trial of the same case, *but see* United States v. Akers, 702 F.2d 1145, 1147-48 (D.C.Cir.1983) (holding

---

[6] Mr. Corigliano and Kramer Levin cite only one case that comes close to addressing the issue presented here—renewal of an evidentiary argument at a criminal retrial, see United States v. Tham, 960 F.2d 1391 (9th Cir. 1992), but they buried that citation in a footnote.  See Mot. at 11 n.10.  Tham states that the law of the case doctrine applies when the issue is "identical," there has been no "change in circumstances," and there was no "clear error" in the prior ruling.  960 F.2d at 1397.  In any event, it held that the doctrine did not preclude the district court on retrial from changing its erroneous evidentiary ruling from the first trial.  See id.  Moreover, Tham does not suggest in any way that a defendant need not renew his arguments at retrial to preserve them or, as Mr. Corigliano and Kramer Levin contend, that renewing his arguments would be "an act of defiance" or "a subversion of the rules of orderly procedure."  Mot. at 9.

> that the doctrine does not apply in such circumstances),
> we find no abuse of discretion in the district court's
> modification of its earlier rulings.   The law of the case
> doctrine is, at best, a discretionary doctrine which does
> not constitute a limitation on the court's power but merely
> expresses the general practice of refusing to reopen what
> has been decided.

Id. at 34 (quotation omitted); see also United States v. Dovico, 261 F. Supp. 862, 869

(S.D.N.Y. 1966) ("[E]ven if we read Judge Sugarman's persuasive disposition [of the

motion for a new trial] as setting a rule to be followed at the retrial, *we cannot*

*conclude that it determines the law of the case concerning admissibility of evidence,*

*such question resting in the discretion of the trial judge.*" (emphasis added)), aff'd,

380 F.2d 325, 326 n.1 (2d Cir. 1967).

Despite this extensive precedent, none of which Mr. Corigliano or

Kramer Levin brought to the Court's attention, Mr. Corigliano and Kramer Levin

incorrectly assure the Court that:

> *In this Circuit, on retrial,* "[a] court should be loathe to
> revisit an earlier decision in the absence of extraordinary
> circumstances such as where the initial decision was
> clearly erroneous and would work a manifest injustice."
> North River Ins. Co. v. Philadelphia Reinsurance Corp.,
> 63 F.3d 160, 165 (2d Cir. 1995) (internal quotations
> omitted).

Mot. at 10 (emphasis added).  Although the italicized portion of Mr. Corigliano's and

Kramer Levin's brief suggests that North River addressed the application of the law

of the case doctrine on retrial, that case *has nothing to do with renewed arguments*

*made during a retrial.*

North River involved an order consolidating two arbitrations, not an

evidentiary ruling made at a prior trial.  63 F.3d at 162.  The parties could have

13

taken an appeal from the consolidation order, but did not. Id. at 164. Following a motion to vacate the arbitration award, the district court reversed its earlier consolidation order. The Second Circuit held that under the law of the case doctrine, "a legal decision made at one stage of [the] litigation, *unchallenged in a subsequent appeal when the opportunity to do so existed,* becomes the law of the case for future stages of the same litigation." Id. (quotation omitted & emphasis added). Here, Mr. Forbes has never had an opportunity to challenge the Court's prior rulings on appeal.[7]

The other two Second Circuit law-of-the-case decisions cited by Mr. Corigliano and Kramer Levin are equally unavailing. Those cases *rejected* application of the law of the case doctrine and recognized that it is *discretionary* as applied to prior district court rulings, and *neither case dealt with the issue here –* renewing evidentiary arguments on retrial. See Prisco v. A&D Carting Corp., 168 F.3d 593, 607 (2d Cir. 1999); United States v. Uccio, 940 F.2d 753 (2d Cir. 1991). In Uccio, the Second Circuit explained that there are various branches of the law-of-the-case doctrine, "one deals with decisions of a lower court that have been ruled on on appeal, and another deals with decisions that have not been ruled on on appeal." 940 F.2d at 757. The doctrine is binding only in the first situation, *i.e.*, a district

---

[7] Likewise, in another case erroneously relied upon by Mr. Corigliano and Kramer Levin, see Mot. at 10, the rulings at issue "were either *affirmed* [on appeal] or *not appealed* from." Morse/Diesel, Inc. v. Trinity Indus. Inc., No. 84 Civ. 5791, 1997 WL 470138, at *6 (S.D.N.Y. Aug. 14, 1997) (emphasis added). Moreover, even when a party has had an opportunity to appeal a district court's prior rulings, but did not, the law of the case doctrine does not prevent the district court from revisiting its prior rulings, but "merely expresses the practice of courts generally to refuse to reopen what has been decided." North River, 63 F.3d at 164 (quotation omitted).

court cannot disregard a prior ruling of the Second Circuit. Id. A district court is free to revisit its own prior interlocutory rulings. Although the law of the case doctrine "informs the court's discretion, [it] does not limit the tribunal's power." Id. at 758 (quotation omitted). Moreover, the district court's decision to apply the law of the case doctrine to its prior rulings is:

> informed principally by the concern that disregard of an earlier ruling not be allowed to prejudice the party seeking the benefit of the doctrine. In this context, "prejudice" does not mean harm resulting from the failure to adhere to the prior decision; "rather, it refers to a lack of sufficiency of notice" or a lack of sufficient "opportunity to prepare armed with the knowledge that the prior ruling is not deemed controlling."

Id. at 758 (citations & brackets omitted). The Second Circuit found no error in the district court's reversal of its prior ruling because Uccio had more than two weeks to submit his position in writing. Id.; accord Williams, 205 F.3d at 34 ("[T]he district court's evidentiary rulings were sound as modified. Moreover, because Williams *does not suggest that he was prejudiced by insufficient notice* of the changed rulings, we find no abuse of discretion in the court's decision to reconsider some of its prior rulings at the first trial." (emphasis added)). Mr. Corigliano and Kramer Levin cannot complain that they have been prejudiced by any lack of notice. They have known about the subpoenas for several weeks, and they were able to marshal the

resources to file a fifty-one-page amended brief objecting to them.[8]

**B.    Cosmo Corigliano and Kramer Levin Have No Basis To Ask the Court To Limit Mr. Forbes' Right to Compulsory Process.**

Kramer Levin's request that the Court restrain Mr. Forbes' right to compulsory process is frivolous in light of the above case law. As demonstrated, far from acting inappropriately, Mr. Forbes' counsel were *required* to serve new subpoenas in order to preserve his requests for appeal. The subpoenas issued to date by counsel for Mr. Forbes have been approved by the most senior member of Mr. Forbes trial team, Brendan V. Sullivan, Jr., and have been appropriate, in good faith, and consistent with their duty, "[a]s advocate, [to] zealously assert the client's position under the rules of the adversary system." Preamble to the Connecticut Rules of Court Rules of Professional Conduct. The suggestion that Mr. Forbes' counsel should be sanctioned for following their ethical mandate should be summarily rejected.

**II.    THE CONSTITUTION GUARANTEES A RIGHT TO COMPULSORY PROCESS AND EFFECTIVE CROSS-EXAMINATION.**

The Compulsory Process Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. More than a century ago, Chief Justice Marshall held that the right of compulsory

---

[8] Mr. Corigliano's and Kramer Levin's reliance on Local Civil Rule 7(c) regarding motions for reconsideration is also misplaced. Rule 7(c)'s mandatory ten-day limit makes clear that it cannot apply to renewed arguments at a criminal retrial. To find otherwise would mean that every unsuccessful argument renewed on retrial would be time-barred.

process includes the right to secure papers, in addition to the testimony of

witnesses.  See United States v. Burr, 25 F. Cas. 30, 34-35 (C.C.D. Va. 1807).  The

Confrontation Clause of the Sixth Amendment secures the right of cross-

examination, which includes impeachment.  See Olden v. Kentucky, 488 U.S. 227,

231 (1988) (per curiam); United States v. Abel, 469 U.S. 45, 50 (1984); Davis v.

Alaska, 415 U.S. 308, 316 (1974).

         In criminal cases, these constitutional rights are implemented, in part,

by Fed. R. Crim. P. 17.  See United States v. Nixon, 418 U.S. 683, 711 (1974); In re

Martin Marietta Corp., 856 F.2d 619, 621 (4th Cir. 1988) ("Rule 17(c) implements

the Sixth Amendment guarantee that an accused have compulsory process to secure

evidence in his favor.").

> The right to the production of all evidence at a criminal
> trial similarly has constitutional dimensions.  The Sixth
> Amendment explicitly confers upon every defendant in a
> criminal trial the right "to be confronted with the
> witnesses against him" and "to have compulsory process
> for obtaining witnesses in his favor."  Moreover, the Fifth
> Amendment also guarantees that no person shall be
> deprived of liberty without due process of law.

Nixon, 418 U.S. at 711.

         To the extent that specificity is required, the subpoena is satisfactory

so long as it is "as specific as could be reasonably expected under the

circumstances."  United States v. Caruso, 948 F. Supp. 382, 399 (D.N.J. 1996).  "The

degree of particularity required must necessarily vary with the facts of each case."

United States v. Olin Mathieson Chem. Corp., 36 F.R.D. 18, 22 (S.D.N.Y. 1964).

         Mr. Corigliano's and Kramer Levin's suggestion that this element is

17