UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

```
-------------------------------
UNITED STATES OF AMERICA,     )
                              )
v.                            )    Criminal No. 3:02CR00264(AWT)
                              )
WALTER A. FORBES              )
-------------------------------
```

### RULING ON GOVERNMENT'S PRE-RETRIAL MOTION NO. 1

**(United States Pre-Retrial Motion *in Limine*)**

For the reasons set forth below, the government's motion is being granted in part and denied in part. On September 8, 2005 counsel for the government and defendant Forbes were notified by chambers that the government's motion would be granted with respect to Parts I and II below. The government's motion is being granted in part and denied in part with respect to Part III, granted in part and denied in part with respect to Part IV, and granted with respect to Parts V and VI.

I.  Admissibility of Evidence of Defendant Forbes' Sales of CUC and Cendant Stock During the Term of the Conspiracy to Prove Knowledge, Intent and Motive

The government sought to offer evidence of the timing and volume of defendant Forbes' history of selling CUC and Cendant stock during the period of the conspiracy charged in the Superceding Indictment. It sought to offer such evidence for purposes of establishing knowledge, intent and motive even if it did not retry Counts 2 through 4 (mail and wire fraud), Counts 7 through 12 (securities fraud) and Counts 13 through 16 (insider

trading).[1]  Defendant Forbes contends that this evidence is not probative of the defendant's knowledge, intent or motive and, therefore, is inadmissible pursuant to Fed. R. Evid. 401.  In addition, he argues that the evidence should be excluded pursuant to Fed. R. Evid. 403.

"To be admissible, evidence need only to alter the probabilities of a proposition; it need not sway the balance to any particular degree.  This standard of relevance . . . is usually termed 'logical' relevance as opposed to . . . 'legal' relevance . . ." 2 Weinstein, § 401.04 [2][c][ii] (footnote omitted).  "Rule 401 uses a lenient standard for relevance." Id. § 401.04 [2][c][i].

The timing of defendant Forbes' actions in connection with his stock sales that were consummated in March of 1998 and the amount of those sales is relevant, in conjunction with other evidence the government points to as to what defendant Forbes knew about the future prospects of Anne Pember at the company and when he knew it, to the issues of knowledge and intent for the reasons set forth by the government at pages 5-7 in the Partial Reply Memorandum of the United States in Support of Pre-Trial Motion *in Limine* (Doc. No. 1694) (the "First Reply").

The government's proposed evidence regarding defendant

---

[1] Subsequent to being notified by the court of its ruling on Parts I and II, the government moved to withdraw Counts 2 through 4, 7 through 11, and 13 through 16.

Forbes' stock sales is relevant to motive for the reasons set forth by the government at pages 3-5 of the First Reply. The fact that defendant Forbes can make arguments that tend to negate an inference of unlawful motive does not make the government's evidence irrelevant. In effect, what defendant Forbes seeks is to have the court apply the "legal relevance" standard. See 2 Weinstein 401.04[2][c][ii]  ("The legal relevance standard equates admissibility with sufficiency and, arguably, might require rejection of any item of evidence which does not conclusively establish the proposition to be proved.").

   Defendant Forbes also argues that this evidence should be excluded under Fed. R. Evid. 403 because it places undue emphasis on defendant Forbes' wealth. As to defendant Forbes' wealth, the government notes, correctly, at page 9 of the First Reply, that the fact that defendant Forbes is a wealthy individual is not inherently prejudicial. In addition, as is also noted by the government in the First Reply, "unfair prejudice 'means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" United States v. Brady, 26 F.3d 282, 287 (2d Cir. 1994) (quoting the Advisory Committee notes to Rule 403). Any potentially prejudicial effect can be addressed by means of an instruction that limits the jury's consideration of the evidence to the purposes for which it is admitted. See United States v. Salameh, 152 F.2d 88, 116 (2d Cir. 1998) (juries are presumed to follow instructions of the

3

court)(quoting Zafiro v. United States, 506 U.S. 534, 540 (1993)). On the other hand, the evidence the government seeks to introduce has probative value with respect to knowledge, intent and motive, and particularly in the absence of any unfair prejudice at all, Forbes cannot show that its probative value is substantially outweighed by the danger of unfair prejudice as required by Fed. R. Evid. 403.

II. Admissibility of the Testimony of James Rowan Regarding Defendant Forbes' Statements During an Investment Conference in January 1998.

The government sought to present the testimony of James Rowan even if it did not retry Counts 7 through 12. Defendant Forbes contends that Rowan's testimony is not relevant and, in any event, should be excluded under Fed. R. of Evid. 403.

The court concluded that Rowan's testimony is relevant, even if the government did not retry Counts 7 through 12, for the reasons set forth by the government at pages 12-13 of the First Reply. In addition, the court found defendant Forbes' argument that Rowan's testimony about the January 1998 conference should be excluded pursuant to Rule 403 unpersuasive for the reasons set forth by the government at pages 14-15 of the First Reply.

III. Admission of Limited Portions of Defendant Forbes' Testimony From the First Trial Regarding Six Discrete Events Without Opening the Door to His Prior Testimony Regarding Other, Unrelated Events

The government moves for a ruling that, by offering six specified portions of defendant Forbes' testimony at the first

trial, the government will not open the door to other portions of defendant Forbes' testimony from the first trial that pertain to other subjects. Citing to Fed. R. Evid. 106, the government notes that it does not object to the offer by defendant Forbes under the rule of completeness of other portions of his prior trial testimony that are explanatory of or relevant to the passages offered by the government. See United States v. Jackson, 180 F.3d 55, 73 (2d Cir. 1999). Four issues are raised by defendant Forbes' opposition, and they are treated separately below.

    A.    Defendant Forbes' Contention That His Testimony Was Coerced by False Testimony of Government Witnesses

Defendant Forbes argues that the government should be precluded from presenting any of his testimony from the first trial because he was improperly compelled to testify at the first trial in order to respond to false testimony given by Cosmo Corigliano and Kevin Kearney. He represents that he would not have testified but for false testimony by these two witnesses. The court finds this argument unpersuasive because on each of the repeated occasions when defendant Forbes has raised it the court has concluded that he failed to demonstrate that either witness gave perjured testimony. Continuously repeating the assertion does nothing to make it meritorious.

B.   <u>Prior Testimony Concerning Asset Transfers</u>

Defendant Forbes argues that the government should be precluded from offering testimony or other evidence relating to his transfer of his interest in certain real estate to his wife in 1998 and 1999.  He contends that the evidence concerning these asset transfers has no relevance to the case because they took place after the period at issue in the indictment.  <u>See</u> Memorandum of Walter A. Forbes in Opposition to United States' Pretrial Motion *in Limine* (Doc. 1653) (the "Defendant's Memorandum) at 8.  He also argues that the transfers are not probative of consciousness of guilt because they were made before defendant Forbes was indicted or even the focus of the government's criminal investigation.  <u>See</u> Defendant's Memorandum at 8-9.  In addition, he argues that the evidence should be excluded pursuant to Fed. R. Evid. 403.  As it did in denying Forbes' Motion *in Limine* No. 3 (Doc. No. 631), the court concludes that, under the circumstances of this case, the evidence that defendant Forbes transferred his interest in valuable pieces of real property that he owned jointly with his wife to his wife's exclusive ownership is probative of whether he had a consciousness of guilt, and if the jury concludes that he had such a consciousness of guilt it could consider that fact in determining whether he is guilty of the crime charged, but it could not base a guilty verdict solely on the finding of a

consciousness of guilt.  The court will give a limiting instruction upon request.  See Miller v. United States, 320 F.2d 767, 773 (D.C. Cir. 1963).

Defendant Forbes argues that this emphasis is highly prejudicial because it places undue and improper evidence on his wealth.  The court finds this argument unpersuasive for the reasons discussed in Part I above with respect to evidence of defendant Forbes' sales of CUC and Cendant stock.  Defendant Forbes also argues that because evidence concerning the asset transfers relates to the Cendant civil litigation pending in 1998 and 1999 there is a potential for the jury being confused and misled and holding him responsible for the criminal charges because he is a defendant in civil litigation.  However, the jury should have no trouble following an instruction from the court, which will be given upon request, that the fact that defendant Forbes is a defendant in civil litigation cannot be used as evidence in support of the government's allegations in this case.

    C.    The Government's Objections to Testimony Defendant Forbes Would Seek to Present Under Fed. R. Evid. 106

In its moving papers, the government identified the testimony it would seek to introduce in its case-in-chief. Defendant Forbes identified in Part III(C) of the Defendant's Memorandum certain testimony he contends should be admitted at the time the government presents defendant Forbes' prior testimony.  At pages 8-10 of the Second Partial Reply Memorandum

of the United States in Support of Pre-Trial Motion *in Limine* (Doc. No. 1709) (the "Second Reply"), the government sets forth its objections to the testimony defendant Forbes seeks to offer in response to that identified by the government.  The court sustains the government's objections set forth in ¶¶ 1 (Tr. 13537:1-13549:15), 2(a) (Tr. 13684:8-13685:1), 2(c)(Tr. 13686:11-13687:12), 3 (Tr. 13687:13-13688:23), 4 (Tr. 13707:7-17), 5 (Tr. 13731:15-23), 6 (Tr. 13741:10-12), 7 (Tr. 13744:15-21), 8 (Tr. 13747:6-8), 9 (Tr. 13747:8-13749:8), 10 (Tr. 13765:14-13766:1) and 12(b) (Tr. 13821:24-13831:13).

> D. Questions Posed to Defendant Forbes That Included Readbacks of Excerpts of Michael Monaco's Testimony

One of the testimony excerpts identified by the government includes questions posed to defendant Forbes that included readbacks of excerpts of Michael Monaco's testimony at the first trial, i.e., Tr. 14340:10-21; Tr. 14341:22-14342:15.  Defendant Forbes argues that this testimony by Monaco from the first trial is inadmissible hearsay because Monaco has been identified as a witness who will testify for the government and the government cannot place Monaco's inadmissible hearsay before the jury in the guise of questions to the defendant.  The court agrees.

The government argues that it seeks the inclusion of the excerpts of Monaco's testimony that are set forth in the defendant's prior testimony "not to prove the truth of the matters asserted by Monaco, but as context to demonstrate that

Forbes contradicted Monaco's testimony on certain points." Second Reply at 11. Then, the government goes on to explain that it will argue that the jury should discredit Forbes' testimony and conclude that his false testimony at the prior trial is evidence of his consciousness of guilt. See id. However, by seeking to show that defendant Forbes' testimony is untrue because it contradicts the excerpts of Monaco's testimony that are included in the questions, the government is, in substance, presenting Monaco's testimony for the truth of the matters asserted by Monaco.

Moreover, even assuming, arguendo, that there is a way to structure the readback such that the readback of excerpts of Monaco's testimony included in questions posed to defendant Forbes could be viewed as not being offered for the truth of the matter, "the probative value of this evidence for its non-hearsay purpose is outweighed by the danger of unfair prejudice resulting of the impermissible hearsay use of the declarant's statement." United States v. Reyes, 18 F.3d 65,70 (2d Cir. 1994).

IV. Evidence of the Amount of Overstated Operating Income in CUC's and Cendant's SEC Filings

It is unclear to the court why the government has raised this issue in its motion *in limine*. The government correctly notes that during the first trial no limiting instruction was sought or given regarding the quantitative effect of the GAAP violations on CUC's and Cendant's reported earnings, as opposed

9

to the amount of the loss in market capitalization. To the extent the government is seeking to argue that the magnitude of the alleged fraud, in and of itself, establishes knowledge on the part of defendant Forbes, its motion is being denied. However, the qualitative effect of the various GAAP violations on CUC's and Cendant's reported earnings is relevant, and to the extent the government will argue that certain inferences should be drawn from that evidence when viewed in combination with other evidence in the case, as the government appears to indicate in the Second Reply it will do, that is permissible.

V.  Questioning Cosmo Corigliano on Cross-Examination as to Whether He Committed or is Guilty of the Crime of "Insider Trading"

The government seeks to have defendant Forbes precluded from questioning Cosmo Corigliano during the retrial about Corigliano's understanding or belief about whether he committed the crime of insider trading. The government's motion is being granted because Corigliano's lay opinion about whether he was guilty of the crime of insider trading is not admissible under Fed. R. of Evid. 701 and is in any event excludable pursuant to Fed. R. of Evid. 403 because of the danger of confusing the jury for substantially the reasons set forth by the government in Part V of the Memorandum of the United States in Support of Pre-Trial Motion *In Limine* (Doc. No. 1624) (the "Government Memorandum").

In addition, because of the testimony cited by the

government at pages 15 and 16 of the Second Reply, the court finds unpersuasive defendant Forbes contention that his cross-examination of Corigliano during the first trial regarding his sale of CUC and Cendant stock was properly limited to factual matters.

Accordingly, defendant Forbes is prohibited from questioning Corigliano about his lay person's understanding of the law and from arguing that Corigliano lied when he denied that he was guilty of insider trading.

VI. Defense Counsel's Opening Statement and Closing Argument

   A. Opening Statement

> An opening statement has a narrow purpose and scope. It is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole; it is not an occasion for argument. To make statements which will not or cannot be supported by proof is, if it relates to significant elements of the case, professional misconduct. Moreover, it is fundamentally unfair to an opposing party to allow an attorney, with the standing and prestige inherent in being an officer of the court, to present to the jury statements not susceptible of proof but intended to influence the jury in reaching a verdict.

United States v. Dinitz, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring). Similarly, the American Bar Association's Standards for Criminal Justice state that an attorney's opening statement "should be confined to a brief statement of the issues in the case and evidence the lawyer intends to offer which the lawyer believes in good faith will be available and admissible." A.B.A. Standard

for Crim. Just. § 4-7.4.

Defendant Forbes represents that at the time opening statements were delivered, it was his intention not to testify. See Defendant's Memorandum at 7. Consequently, the court agrees with the government that there was not an anticipated evidentiary basis for the remarks by defense counsel during the opening statement about Forbes' subjective thoughts that are detailed in footnote 17 of the Government's Memorandum.

Therefore, if defendant Forbes wishes to inform the jury during his opening statement about what defendant Forbes "thought," "knew," "believed" or "was shocked by," or make similar statements, defense counsel should state during his opening statement that defendant Forbes will testify during the retrial. Also, the court notes that it appears to be permissible for defense counsel to argue that there will be no credible evidence that would show that defendant Forbes "knew," etc. certain things.

B.   Closing Argument

"A personal attack by the prosecutor on defense counsel is improper, and the duty to abstain from such attacks is obviously reciprocal." A.B.A. Standards for Crim. Just. § 4-7.8 (footnotes omitted). As to the first point raised by the government, the government is correct when it asserts that defense counsel improperly impugned the motives of the prosecutors by expressly accusing them of trying to persuade the jury to convict in

violation of the law when defense counsel purported to read the prosecutors' minds by asserting that the government hoped the jury would be blinded by the fact that there was a massive fraud and by the enormous amount of money that defendant Forbes earned.

As to the second point raised by the government, defendant Forbes argues that it was "more than fair to infer -- and to argue to the jury -- that yet one more benefit conferred upon Mr. Corigliano by the government was that he could lie with impunity, notwithstanding the terms of his plea agreement." Defendant's Memorandum at 22-23. Similarly, during his closing argument, as reflected in the language emphasized in footnote 19 of the Government's Memorandum, counsel for defendant Forbes argued in substance that the government would decline to enforce the truth-telling provisions in Corigliano's plea agreement if the government determined that Corigliano had violated the agreement.[2] This argument came after the court had stricken, emphatically, a question posed to defendant Forbes by his counsel on redirect examination wherein defense counsel highlighted what

---

[2] The government's description, during its closing argument, of the truth-telling provisions in the plea agreements glossed over the actual language in those agreements and invited a response, but not an improper response. Government counsel argued that "the agreements also say if they lie, if they testify falsely, in essence, the agreement gets thrown out the window." Tr. 14860:16-18. However, the actual language of the plea agreements is that "should it be established that he has intentionally given materially false, incomplete or misleading testimony or information or otherwise violated any provision of this agreement, the non-prosecution provisions of this agreement shall be null and void." Gov't Ex. 1546.

13

it represented was certain testimony by Corigliano, and then characterized was untrue, as having been given "at the behest of these prosecutors." Tr. 14420:9-10. What was most inappropriate about this incident and is not reflected in the transcript is that, as defense counsel said the words "at the behest of these prosecutors," he stood in front of the defense table pointing down at counsel for the government. This argument also came after the court had rejected as lacking merit the arguments by defendant Forbes that the government intentionally elicited testimony from Corigliano and Kevin Kearney that it knew, or should have known, was perjurious. <u>See</u> Forbes' Trial Motion #28 (Doc. No. 1084) and Forbes' Trial Motion No. #30 (Doc. No. 1091).

There was plenty of room for the defense to argue to the jury that Corigliano would not be deterred by the truth-telling provisions of his plea agreement, without suggesting that government counsel was engaging in prosecutorial misconduct. If defense counsel in any case wants to raise such matters, the matters should be raised in motions filed with the court -- provided they are filed in good faith -- not argued before the jury. Accusations of misconduct by opposing counsel, even if cleverly disguised, will not be permitted in the presence of the jury.

As Chief Justice Burger wrote in <u>Dinitz</u>, in discussing opening statements, the trial judge has a duty, "in order to protect the integrity of the trial, to take prompt and

affirmative action to stop . . . professional misconduct." 424 U.S. 600, 612 (Burger, C.J., concurring).  Thus, such conduct during the retrial will lead not only an admonition but a curative instruction.  Therefore, the government's motion is being granted with respect to the closing argument.

## CONCLUSION

For the reasons set forth above, the Government's Motion *in Limine* (Doc. No. 1624) has been GRANTED in part and DENIED in part.

It is so ordered.

Dated this 13th day of October 2005 at Hartford, Connecticut.

/s/
Alvin W. Thompson
United States District Judge
