UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------
UNITED STATES OF AMERICA,      )
                               )
v.                             )    Criminal No. 3:02CR00264(AWT)
                               )
WALTER A. FORBES and           )
E. KIRK SHELTON                )
-------------------------------
```

### RULING ON FORBES' MOTION IN LIMINE NO. 3

**(Motion of Defendant Walter A. Forbes to Preclude the Government From Presenting Evidence Regarding His Transfer of Various Assets to His Wife)**

For the reasons set forth below, defendant Forbes' motion in limine was denied on September 27, 2004. See Tr. 13797-98.

Defendant Forbes sought an order precluding the government from introducing evidence that he had transferred to the sole ownership of his wife, for nominal consideration, three valuable pieces of real property that he had previously owned jointly with his wife. One parcel was purchased by the defendant and his wife on September 24, 1991 and transferred to his wife on June 8, 1998. The second parcel was purchased by the defendant and his wife on January 14, 1994 and transferred to his wife on December 4, 1998. The third parcel was purchased by the defendant and his wife on December 1, 1997 and transferred to his wife on December 15, 1999. The court initially reserved ruling on defendant Forbes' motion *in limine* and instructed the government not to discuss that subject in its opening statement, because the court

wished to have a better understanding of the government's evidence as to what other events were occurring during the time period in which these transfers took place in light of the fact that there was no authority directly on point.

Cendant Corporation's internal investigation began on or about April 15, 1998, and defendant Forbes was interviewed by the audit committee investigators on June 11, 1998.  It appeared to the court from the nature of the audit committee's investigation that this June 11 interview date was one that defendant Forbes would have been given advance notice of.  For example, he was represented by counsel at the interview.  See Gov't Ex. 1764.

Defendant Forbes left Cendant Corporation in July of 1998 and the audit committee's report was issued and filed with the S.E.C. in August of 1998.  The second transfer, which was of a relatively less expensive parcel of property, took place on December 4, 1998, and the transfer of the most expensive parcel of property, which had only been purchased on December 1, 1997, did not take place until December 15, 1999.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Under certain circumstances, evidence that defendant Forbes transferred valuable pieces of real property that he owned jointly with his

wife to his wife's exclusive ownership (and took the financial risk of doing so), is probative of whether defendant Forbes had a consciousness of guilt, and if the jury concluded that he had a consciousness of guilt, it could consider that fact in determining whether he was guilty of the crime charged, although it could not base a guilty verdict solely on a finding of a consciousness of guilt.

The court reached this conclusion after looking generally at cases involving consciousness of guilt. The court notes that defendant Forbes suggested an approach based on his analysis of the logic in certain cases involving flight as evidence of consciousness of guilt, relying heavily on United States v. Dillon, 870 F.2d 1125, 1127 (6th Cir. 1989). The court found it more helpful to focus on what general principles could be derived from cases containing a broader discussion of consciousness of guilt in a number of different contexts, including flight. These principles were summarized succinctly in a case that dealt with flight as evidence of consciousness of guilt, Miller v. United States, 320 F.2d 767 (D.C. Cir. 1963), where the court stated that it would be appropriate to give a jury an instruction in such a case,

> that they are not to presume guilt from flight; that they may, but need not consider flight as one circumstance tending to show feelings of guilt; and that they may, but need not consider feelings of guilt as evidence tending to show actual guilt.

3

Id. at 773 (footnote omitted).  One of the cases cited in Miller is Hickory v. United States, 160 U.S. 408 (1896), where the Court explained:

> It is undoubted that acts of concealment by an accused are competent to go to the jury as tending to establish guilt, yet they are not to be considered as alone conclusive, or as creating a legal presumption of guilt. . . . The rule on the subject has had nowhere a clearer and more concise expression than that given by Chief Justice Shaw in the Webster Case, to which the trial court adverted.  Com. v. Webster, 5 Cush. 295.  The learned chief justice said: "To the same head may be referred all attempts on the part of the accused to suppress evidence, to suggest false and deceptive explanations, and to cast suspicion without just cause on other persons; all or any of which tend somewhat to prove consciousness of guilt, and, when proved, exert an influence against the accused.  The consideration is not to be pressed too urgently, because an innocent man, when placed by circumstances in a condition of suspicion and danger, may resort to deception in the hope of avoiding the force of such proofs.

Id. at 416-17.  The Court continued with a discussion of a case involving an attempt to escape from a sheriff, stating:

> There are so many reasons for such conduct, consistent with innocence, that it scarcely comes up to the standard of evidence tending to establish guilt; but this and similar evidence has been allowed upon the theory that the jury will give it such weight as it deserves, depending upon the surrounding circumstances.

Id. at 417 (citations omitted).  See also Alberty v. United States, 162 U.S. 499, 510 (1896).

It is a consistent theme in these cases that actions, such as flight, that might reflect a consciousness of guilt, cannot be considered conclusive proof of guilt of the crime charged. Another consistent theme is that the determination as to whether

4

a particular action has any probative value should be based on the facts of the particular case and that the events must have occurred after the date of the alleged crime, but not necessarily on the heels of the commission of the alleged crime. These points were made by the court in United States v. Foster, 309 F.2d 8 (4th Cir. 1962). The court stated:

> At the outset, we think none of [the events] inadmissible simply because they occurred several years subsequent to the date of the alleged crimes. If the behavior is to prove consciousness of guilt, it obviously must have occurred subsequent to the offense. In assessing their admissibility on still other grounds we examine the circumstances of each instance. Throughout it must be remembered, as the appellant stresses, that all of these events took place after the inception of the criminal investigation. Foster's tax problems had been placed in the hands of a Special Agent of the Intelligence Division. Assignment of a case to a Special Agent is generally known to mean that investigation is afoot for a criminal prosecution.

Id. at 13 (citations omitted). Also instructive is language from United States v. Stoehr, 196 F.2d 276 (3rd Cir. 1952), where the court stated:

> In cases of prosecution for crimes involving fraudulent intent, some courts have displayed increased liberality in admitting evidence of subsequent statements and conduct of [the] defendant. See Heindel v. United States, 150 F.2d 493, 497 (6th Cir. 1945); United States v. Matot, 146 F.2d 197, 198 (2d Cir. 1944); United States v. Wicoff, 187 F.2d 886, 890-891 (7th Cir. 1951). The underlying philosophy prompting this policy is well expressed by the Second Circuit in United States v. Matot, supra, where the court declared that so long as evidence does not confuse the jury, its exclusion merely because of logical remoteness from the issue is always a hazard and is usually undesirable. We agree with this principle. Such a rule of liberality does not, however, render admissible every subsequent mental state (which

>     evidence is supplied by the subsequent act) of any
>     probative value in establishing his state of mind at the
>     time of the alleged criminal acts, and if so, does the
>     evidence not unduly entangle the issues or confuse the
>     jury?

Id. at 282 (footnotes omitted).  See also United States v. Malizia, 503 F.2d 578, 582-83 (2d Cir. 1974) (in case involving flight the court stated that "[e]vidence of flight, like any other circumstantial evidence, has consistently been admissible as evidence of guilt if considered with other facts of the case"); United States v. Ramon-Perez, 703 F.2d 1231, 1233 (11th Cir. 1983) ("But the interpretation to be gleaned from an act of flight should be made with a sensitivity to the facts of the particular case.").

   Nothing in these cases suggests an absolute requirement that a defendant have been indicted or know that he is the focus of a criminal investigation in order for his actions to qualify as ones that manifest a consciousness of guilt, although that certainly is the most common situation.  These same principles would logically apply to a situation where a defendant has reason to be concerned that an investigation will eventually lead to him.  Thus, whether a defendant had been indicted or had become the focus of a criminal investigation should be a circumstance to be considered, but not a necessary predicate to a finding that a defendant had a consciousness of guilt.  The question is whether a reasonable inference can be drawn, based on all the

6

circumstances, that the defendant had a consciousness of guilt.

In light of the foregoing, the court concluded that it was for the jury to determine whether to infer a consciousness of guilt based on the temporal relationships between the transfers of property by defendant Forbes (including what inference to draw with respect to the transfer on December 15, 1999 of the property that was purchased on December 1, 1997) and other events the record reflected were occurring during the relevant time period (e.g., the ongoing criminal investigations; the June 18, 1999 guilty plea by Casper Sabatino; and the September 23, 1999 guilty plea by Anne Pember), or to credit defendant Forbes' proffered innocent explanation for the transfers.

The court did not find persuasive defendant Forbes' assertion that the offer of such evidence was subject to the requirements of Fed. R. Evid. 404(b).

Finally, the court found unpersuasive defendant Forbes' argument that evidence of the transfers should be excluded pursuant to Fed. R. Evid. 403. For reasons discussed above, the court did not agree with defendant Forbes' contention that the evidence had no or minimal probative value. The court also did not agree that the primary impact of the evidence would be to suggest that the defendant was a "bad man." Nor did the court find persuasive defendant Forbes' argument to the effect that it would not be effective for the court to give the jury a

cautionary instruction that it could not draw an inference that a fear of civil liability is tantamount to a consciousness of criminal guilt.

Accordingly, the Motion of Defendant Walter A. Forbes to Preclude the Government From Presenting Evidence Regarding His Transfer of Various Assets to His Wife (Doc. No. 631) was DENIED on September 27, 2004.

Dated this 13th day of October 2005, at Hartford, Connecticut.

/s/<br>
Alvin W. Thompson<br>
United States District Judge