UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>)<br>WALTER A. FORBES )<br>) | No. 3:02CR264 (AWT)<br><br>October 14, 2005 |

MEMORANDUM OF WALTER A. FORBES
IN SUPPORT OF MOTION FOR RECONSIDERATION
OF THE COURT'S RULINGS ON PARTS 3 & 5
OF THE GOVERNMENT'S PRETRIAL MOTION *IN LIMINE*
(Forbes Retrial Motion No. 14)

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this memorandum in support of his motion for reconsideration of the Court's rulings with respect to parts 3 and 5 of the government's motion in limine.

I.  THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM PRESENTING ANY TRIAL TESTIMONY BY MR. FORBES AT THE RETRIAL.

In Mr. Forbes' reply memorandum in support of Forbes Motion In Limine No. 4 (Docket Entry # 1778) (filed Oct. 3, 2005), Mr. Forbes raised an additional objection to the excerpts of Mr. Forbes' testimony that the government seeks to offer in its case-in-chief. Mr. Forbes explained therein that the government's memorandum in support of its motion in limine did not state that the government sought to offer excerpts of Mr. Forbes' 2004 testimony for the purpose of impeaching that testimony. The government made that assertion for the first time in its second partial reply memorandum in support of its motion in limine (filed Sept. 16, 2005) (Docket Entry # 1709) (at page 11) and its memorandum in opposition to Mr. Forbes' retrial motion in limine No. 4 (filed Sept. 20, 2005) (Docket Entry # 1719) (at pages 2-3). As a result, Mr. Forbes did not have notice of

the government's intentions at the time he filed his memorandum in opposition to the government's motion in limine on or about August 22, 2005, and the Court did not address this issue in its ruling with respect to the government's motion in limine.

As set forth in Mr. Forbes' reply memorandum in support of Forbes motion in limine no. 4, Mr. Forbes objects to the government's attempt to offer any of his 2004 testimony because the government seeks to offer it in order to impeach Mr. Forbes' credibility.

It is well settled that a party may not call a witness for the sole purpose of impeaching his credibility with otherwise inadmissible evidence. See United States v. Johnson, 802 F.2d 1459, 1466-67 (D.C. Cir. 1986) (collecting cases); United States v. Webster, 734 F.2d 1191, 1192 (7th Cir. 1984) (collecting cases); United States v. Gorny, 732 F.2d 597, 604 (7th Cir. 1984); United States v. Rogers, 549 F.2d 490, 497 (8th Cir. 1976); United States v. Morlang, 531 F.2d 183, 189 (4th Cir. 1975). For the same reasons, the government cannot introduce portions of Mr. Forbes' 2004 testimony for the purpose of attempting to impeach the credibility of that testimony through otherwise inadmissible evidence.

Mr. Forbes is not a government witness and cannot be called in the government's case. "[A]s a general matter of relevance, a person who does not testify at trial and who is not the source of statements admitted for their truth is not subject to impeachment." United States v. Finley, 708 F. Supp. 906, 909 (N.D. Ill. 1989); see also United States v. Kabbaby, 672 F.2d 857, 863-84 (11th Cir. 1982). The government cannot offer impeachment evidence concerning Mr. Forbes' credibility in its case-in-chief. Nor can the government circumvent that rule by

introducing portions of Mr. Forbes' prior testimony for the purpose of attempting to impeach his credibility through evidence that is otherwise inadmissible in the government's case. That tactic would constitute a "subterfuge to get before the jury" evidence that is not otherwise admissible. United States v. Eisen, 974 F.2d 246, 262 (2d Cir. 1992).

The government's tactics would violate Mr. Forbes' absolute Fifth Amendment right not to testify. See Brooks v. Tennessee, 406 U.S. 605, 609 (1972). While a defendant's choice to testify "carries with it serious risks of impeachment and cross-examination," id., if a defendant does not testify in a criminal case, the government is **not** permitted to present evidence offered to impeach his credibility. The government cannot be allowed to do an end-run around Mr. Forbes' Fifth Amendment right not to testify by offering his 2004 testimony for the purpose of attempting to impeach his credibility through otherwise inadmissible evidence. Accordingly, the Court should not permit the government to offer portions of Mr. Forbes' 2004 testimony for the purpose of attempting to impeach the credibility of that testimony, and should preclude the government from presenting evidence in its case-in-chief that is offered solely to impeach the credibility of Mr. Forbes' prior testimony.

**II. IN THE EVENT THE COURT PERMITS THE GOVERNMENT TO OFFER MR. FORBES' 2004 TESTIMONY IN ITS CASE-IN-CHIEF, THE COURT SHOULD ALLOW MR. FORBES TO PRESENT TESTIMONY THAT SHOULD, IN FAIRNESS, BE CONSIDERED CONTEMPORANEOUSLY WITH IT.**

In the event the Court nevertheless permits the government to offer portions of Mr. Forbes' testimony in its case-in-chief, Mr. Forbes respectfully requests that the Court reconsider its ruling sustaining the government's objections

to Mr. Forbes' counter-designations of testimony.  See Ruling at 8.

The Court did not give any explanation for its decision sustaining all of the government's objections to Mr. Forbes' counter-designations.  Mr. Forbes respectfully submits that the Court's rulings were erroneous and that reconsideration is necessary to prevent manifest injustice to Mr. Forbes.[1]  The excerpts identified by Mr. Forbes are narrowly tailored to address the testimony identified by the government and constitute a small fraction of the almost 1000 pages of Mr. Forbes' 2004 trial testimony.  As set forth below, the limited testimony excerpts identified by Mr. Forbes are relevant to the testimony identified by the government.  They are necessary to explain and place in context the testimony the government seeks to offer and to avoid misleading the jury.  They satisfy the standard for admissibility under Fed. R. Evid. 106 and "ought in fairness be considered contemporaneously with," id., the testimony the government intends to introduce.

The testimony excerpts identified by Mr. Forbes also should be permitted because the exclusion of Mr. Forbes' counter-designations will create a fundamentally unfair situation in which the government's selective excerpts "paint[] a distorted picture" of Mr. Forbes' testimony that he will be "powerless to remedy without taking the stand." United States v. Walter, 652 F.2d 708, 713 (7th Cir. 1981) (cited in United States v. Marin, 669 F.2d 73, 85 n.6 (2d Cir. 1982)).  In the event Mr. Forbes chooses not to testify, the selective admission of the

---

[1]  Mr. Forbes did not have a previous opportunity to brief this issue because the government's objections to his counter-designations were set forth in the government's reply memorandum in support of its motion in limine.  The Court did not hear argument with respect to Mr. Forbes' counter-designations before issuing its Ruling.

4

government's excerpts, without Mr. Forbes' corresponding 2004 testimony, will unfairly penalize him and will leave the jury with a misleading picture of Mr. Forbes' prior testimony.  See Walker, 652 F.2d at 713-14 (reversing where trial court excluded relevant portions of defendant's prior testimony).  For this reason as well, the Court should permit Mr. Forbes to offer the limited excerpts of his 2004 testimony that he has designated pursuant to Fed. R. Evid. 106.

**A.     Testimony Regarding Merger Reserves.**

The government seeks to present the following testimony by Mr. Forbes:

> Q.  Now, as part of these acquisitions you were aware reserves were going up, right, Mr. Forbes?
>
> MR. SULLIVAN:  I'm sorry.  I didn't hear that.
>
> BY MR. CARNEY:
>
> Q.  As part of the company's acquisitions you were aware the reserves were being put up?
>
> A.  I'm sorry, did you say put up?
>
> Q.  Established?
>
> A.  I would have expected reserves to be establish in most of our acquisitions, yes.
>
> Q.  And you not only expected it, you knew it?
>
> A.  I'm not sure that I can say that I knew reserves were set up in every acquisition, but I certainly would have expected that we would have set up reserves when we did an acquisition.
>
> Q.  Okay.  And again, putting aside -- were you aware one was put up for Davidson?
>
> A.  I believe I was.  I'm sure a company that size there would have been a reserve.
>
> Q.  How about Sierra?
>
> A.  Same.  I would have expected we would have had a reserve, yes.

>   Q. Certainly Ideon, right?
>
>   A. Yes.
>
>   Q. And the merger with HFS, right?
>
>   A. Yes.
>
>   Q. Absolutely no question about it, right?
>
>   A. No question at all.
>
>   Q. All right. So merger reserves -- and merger reserves were actually very important to this company, weren't they?
>
>   A. I think if you're going to do mergers and they're going to be one-time costs, having merger reserves are very important, yes.

Tr. 14191:11-14192:19. The clear purpose of this cross-examination by the government was to establish that Mr. Forbes was aware of the existence of the two principal merger reserves that the government alleges were abused at CUC: the Ideon reserve (consisting of reserves for the Ideon, Sierra, and Davidson acquisitions) and the HFS merger reserve. The cross-examination also attempted to demonstrate that Mr. Forbes was generally aware that merger reserves were established in connection with acquisitions and that merger reserves were very important to CUC. The cross-examination was designed to suggest that, because Mr. Forbes believed that merger reserves were important to CUC, and because Mr. Forbes was aware that merger reserves were set up for the Ideon, Sierra, Davidson, and HFS mergers, it was more likely that Mr. Forbes was involved in the creation of the reserves, knowledgeable of the "cushions" built into the reserves, and aware of how the reserves were misused at CUC.

The testimony counter-designated by Mr. Forbes on this subject to which the government objects (Tr. 13684:8-13685:1, Tr. 13686:11-13687:12, Tr. 13731:15-23, Tr. 13741:10-12, Tr. 13744:15-21, Tr. 13747:6-13749:8, and Tr.

6

13765:14-13766:1) directly responds to the testimony the government seeks to offer concerning Mr. Forbes' understanding of the importance of merger reserves to CUC. It also responds to the testimony the government seeks to offer concerning Mr. Forbes' awareness of the fact that reserves were established for the Ideon, Sierra, Davidson, and HFS mergers. The testimony rebuts the government's suggestion that Mr. Forbes sought to engage in mergers because of the reserves that would be set up in connection with the mergers. It also rebuts the inferences that the government wants the jury to draw -- that because Mr. Forbes was aware of the existence of merger reserves and considered them important to CUC, he was more likely to be aware of the fact that the reserves were inflated and that the reserves were used to inflate CUC's income.

    The limited testimony excerpts that Mr. Forbes has designated concerning merger reserves are "necessary to explain the admitted portion, to place it in context, [and] to avoid misleading the trier of fact." Marin, 669 F.2d at 84. They are "relevant to the admitted passages," id., and are needed "to ensure a fair and impartial understanding of the admitted portion," id. (quotation omitted). Without the testimony counter-designated by Mr. Forbes, the government will be able to argue the incriminating inferences described above, without any response from Mr. Forbes that rebuts those inferences and informs the jury that Mr. Forbes testified that: (i) he did not seek to engage in mergers in order to create merger reserves; (ii) he did not know that cushions were set up in merger reserves; and (iii) he did not participate in, or have knowledge of, the misuse of merger reserves. The Court should permit the testimony counter-designated by Mr. Forbes pursuant to Rule 106 if it permits the government to offer the testimony it has designated

7

concerning merger reserves. See Walker, 652 F.2d at 710-15 (reversible error to exclude testimony counter-designated by defendant that was relevant to excerpts offered by government).[2]

> B. **Testimony Concerning Forecasts, Earning Expectations, and Meetings with Corigliano to Discuss CUC's Financial Performance.**

The government seeks to present the following testimony by Mr. Forbes:

> Q. Okay. So you wanted to know what the possible range of EPS estimates were on Wall Street for your company?
>
> A. From time to time I did want to know that, yes.
>
> Q. Okay. And from time to time, I mean, certainly you wanted to care at the end of each year, right?
>
> A. I don't know what would be special about a year-end.
>
> Q. Well, you're going to report your numbers. Wouldn't you want to know how you did compared to this consensus?
>
> A. As compared to any other time? Any other earnings announcement?
>
> Q. Well, I mean, this is for the year, right, isn't it? The 89 cents is for the year, not a quarter?
>
> A. This is for a year, yes.
>
> Q. Right. And that's why I asked, Mr. Forbes, for the year. So if this is what Wall Street, the consensus says 89 cents -- and you're looking at the range, mind you -- you'd want to know?
>
> A. I'd want to know that we're in the range, yes.
>
> Q. That was important to you, right?

---

[2] United States v. Jackson, 180 F.3d 55, 73 (2d Cir. 1999), bears no resemblance to this case. There, the defendant sought to introduce an entire 42-minute tape recording after the government introduced a 90-second excerpt, where the remainder of the tape did not undermine or place in context the fact that the defendant was put on notice that the proposed conduct was unlawful. Here, Mr. Forbes has identified a small portion of his trial testimony that is directly responsive to the excerpts identified by the government.

>A. It would have been important for somebody to tell me if we weren't in the range, yes.
>
>Q. That would have been a bad thing, right?
>
>A. It would have been something that we would have to talk about, yes.
>
>Q. But it wouldn't have been good news?
>
>A. Not particularly, no.
>
>Q. Better to be in the range or right at the top, right?
>
>A. It's better to be in the range, yes.

Tr. 13968:4-13969:6.

* * * *

>Q. And is that -- so you would -- is it fair to say that you would get together with Mr. Corigliano from time to time, as you say, to see how the company was doing, its earnings in comparison to how the analysts were predicting to do?
>
>A. I'm sure I did ask him those questions from time to time.
>
>Q. Right. And that was -- more from time to time, you'd do it every reporting cycle, wouldn't you? Each quarter, each year-end?
>
>A. I think you would want to know how you're doing a little bit before you reported your numbers. Is that the question? I'm not quite sure.
>
>Q. Actually, I'm trying to -- you were there and I wasn't. And if you could tell me: How did you and when did you, during the course of the year, go through this exercise of seeing what the market said the company should be doing and how you found out how the company was actually doing?
>
>A. I would have asked from time to time what the range of earnings was and I found out how we were doing when we released earnings, or a few days, a day before we released earnings, I would see the actual earnings and know exactly how we were doing.
>
>Q. So it's something you would keep track of?
>
>A. Yes.

Tr. 13969:21-13970:21.

* * * *

> Q. Did you see a forecast?
>
> A. I was in meetings where there were forecast reviews, yes.
>
> Q. Who was in the meeting? Do you recall a specific meeting, Mr. Forbes?
>
> A. I don't recall a specific one, but when we were looking to acquire a company, we usually gather around the people who were involved in that particular acquisition. And my only concern would be essentially, is this accretive or neutral or dilutive. My interest in the acquisition was strategic, not the numbers, but I did need to know that much.

Tr. 13977:6-17.

The clear purpose of this testimony was to attempt to establish that Mr. Forbes (i) was aware of earnings expectations for CUC, (ii) wanted CUC to achieve those expectations, (iii) kept track of CUC's financial performance, (iv) discussed CUC's financial performance with Mr. Corigliano, and (v) was at meetings where forecasts (which the government refers to as "cheat sheets") were discussed. The government wants the jury to infer from this testimony that Mr. Forbes received and reviewed "cheat sheets," and that Mr. Corigliano's testimony concerning his purported conversations with Mr. Forbes regarding "cheat sheets" is credible.

The testimony counter-designated by Mr. Forbes on these subjects to which the government objects (Tr. 13687:13-13688:23, Tr. 13707:7-13), places the testimony designated by the government in context. It rebuts the inference the government wants the jury to draw that Mr. Forbes had discussions with Mr. Corigliano in which they reviewed "cheat sheets" and discussed how CUC would meet earnings expectations through improper accounting. The testimony explains that, while Mr. Forbes attended meetings where forecasts were reviewed, he did not receive anything from Mr. Corigliano called a "cheat sheet," never saw a document

that showed improper accounting, and never had any discussions with Mr. Corigliano concerning improper accounting or the misuse of merger reserves to achieve financial targets. Without this testimony, the government will be able to create the misleading impression that the testimony excerpts the government seeks to offer somehow corroborate Mr. Corigliano's testimony or establish that Mr. Forbes attended meetings with Mr. Corigliano to review "cheat sheets." The testimony designated by Mr. Forbes is essential to respond to the excerpts the government seeks to introduce and to place that testimony in context.

### C.  Testimony Concerning Anne Pember.

The government has designated extensive testimony concerning Anne Pember (Tr. 14350:15-14364:9) in an attempt to suggest that any actions that Mr. Forbes took on Ms. Pember's behalf were done because Mr. Forbes knew that Anne Pember was involved in the fraud. The limited testimony designated by Mr. Forbes to which the government objects (Tr. 13707:14-17) rebuts the suggestion that Mr. Forbes agreed to Ms. Pember's severance package because he knew that she was involved in the fraud.[3] The testimony is necessary to respond to the implication that the government wants the jury to draw from the testimony it has designated -- namely, that Mr. Forbes gave Ms. Pember special treatment because he knew she was a participant in the fraud. It also is necessary to place the testimony the government seeks to offer into context.

---

[3]   The government does not object to the remaining testimony counter-designated by Mr. Forbes on the subject of Anne Pember. (Tr. 13774:18-13777:17). See Second Partial Reply Memorandum at 10.

11

### D. Testimony Concerning Ernst & Young.

The Court has sustained Mr. Forbes' objection to a portion of the testimony designated by the government concerning the subject of E&Y. Ruling at 8. The Court is still permitting the government, however, to introduce a portion of Mr. Forbes' testimony on this subject. The portion of Mr. Forbes' testimony allowed by the Court includes references to Mr. Monaco's testimony and the government's contention (based on Mr. Monaco's testimony) that Mr. Forbes re-raised the issue of E&Y at the January 25, 1998 Cendant Executive Committee meeting. The testimony counter-designated by Mr. Forbes to which the government objects (Tr. 13821:24-13831:13) rebuts the government's contention that Mr. Forbes re-raised the issue of E&Y at the January 25, 1998 Cendant Executive Committee meeting and explains why it would not have made any sense for Mr. Forbes to re-raise the issue at that time (as the government and Mr. Monaco claim he did). The testimony is essential to place the testimony the government seeks to offer into context and to prevent the jury from being misled by the excerpt the government seeks to offer. It also is essential to address the inference the government wants the jury to draw from its selected excerpt --namely, that Mr. Forbes repeatedly advocated to keep E&Y as CUC's auditor because he was aware of the fraud and knew that it had successfully been concealed from E&Y.

The testimony the Court is permitting the government to offer addresses Mr. Monaco's claim that Mr. Forbes re-raised the issue of E&Y at the January 25, 1998 Executive Committee meeting and seeks to establish that Mr. Forbes' testimony is false. The testimony designated by Mr. Forbes directly addresses this issue. It deals with the sequence of events between the Cendant

Audit Committee meeting on January 20, 1998 -- during which D&T was selected as Cendant's outside auditor -- and the Executive Committee meeting on January 25, 1998 -- during which, according to Mr. Monaco, Mr. Forbes re-raised the issue of E&Y. It explains, based on the sequence of events, that it would not make any sense for Mr. Forbes to re-raise the issue on January 25, 1998, and that the minutes of the January 25, 1998 meeting -- which were approved on February 3, 1998 -- make no reference to Mr. Forbes' purported statements on January 25, 1998. The testimony is essential to explain the testimony designated by the government and should, in fairness, be considered with that testimony.

### E. Denials of Involvement in Criminal Conduct.

Finally, Mr. Forbes has designated certain testimony (Tr. 13537:1-13549:15) to address the totality of the testimony designated by the government. The government will attempt to argue that the excerpts of Mr. Forbes' testimony that it has designated are circumstantial evidence of his guilt. The limited testimony counter-designated by Mr. Forbes is necessary to clarify and explain the testimony the government seeks to offer and to place that testimony in context. Without hearing Mr. Forbes' clear and unequivocal denials of guilt, including denials regarding specific matters as to which the government wants inferences to be drawn (e.g., Tr. 13537:23-25, 13538:11-13, 13539:13-23, 13541:4-8), the jury will be misled by the government's selective excerpts. Because the government will assert that the testimony excerpts it seeks to offer are probative of guilt, it is essential for the jury to hear Mr. Forbes explicitly and clearly deny that he engaged in any wrongdoing. It certainly ought, in fairness, to be considered together with the testimony the government seeks to offer.

III. **THE GOVERNMENT'S REPLY MEMORANDUM CITED TO THE CROSS EXAMINATION CONDUCTED BY MR. SHELTON'S COUNSEL WHEN IT ERRONEOUSLY ARGUED THAT MR. FORBES IMPROPERLY QUESTIONED MR. CORIGLIANO.**

The Court relied on "the testimony cited by the government at pages 15 and 16 of the Second Reply," Ruling at 10-11, in concluding that Mr. Forbes' "contention that his cross-examination of Corigliano during the first trial regarding his sale of CUC and Cendant stock was properly limited to factual matters" was "unpersuasive." Id. at 11.

Mr. Forbes respectfully submits that the Court's reliance on the transcript excerpts cited by the government on this point was misplaced. The government claimed that Mr. Forbes cross-examined Mr. Corigliano concerning the law of insider trading (as opposed to the facts), *but then cited to the cross-examination conducted by Mr. Puccio, Kirk Shelton's counsel.* See Gov't Second Partial Reply at 15-16. Mr. Forbes limited his cross-examination to the facts underlying Mr. Corigliano's trades, and in particular whether Mr. Corigliano used his inside information when selling his stock for millions of dollars. This cross-examination was perfectly proper, as the government concedes, Gov't Second Partial Reply at 16-17, and should not be limited during the retrial.

          Respectfully submitted,

          WILLIAMS & CONNOLLY LLP

    By: _____
          Brendan V. Sullivan, Jr. (Bar No. ct17115)
          Barry S. Simon (Bar No. ct24159)
          725 Twelfth Street, N.W.
          Washington, D.C. 20005
          (202) 434-5000 (phone)
          (202) 434-5029 (fax)
          bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing Memorandum in Support of Motion of Walter A. Forbes for Reconsideration of the Court's Rulings on Parts 3 & 5 of the Government's Pretrial Motion *In Limine* (Forbes Retrial Motion No. 14) to be sent on October 14, 2005 to the following via Federal Express and email:

>Michael Martinez, Esq.
>Craig Carpenito, Esq.
>United States Attorneys
>The Federal Building
>U.S. Department of Justice
>450 Main Street, Room 320
>Hartford, CT 06103
>
>Norman Gross, Esq.
>U.S. Attorney's Office
>District of New Jersey
>401 Market Street
>Fourth Floor
>Camden, NJ 08101

_____
Barry S. Simon