## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>v. )<br><br>WALTER A. FORBES ) | No. 3:02CR264 (AWT)<br><br>October 14, 2005 |

### MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT WALTER A. FORBES TO PRECLUDE EVIDENCE, CROSS-EXAMINATION, OR ARGUMENT CONCERNING (1) THE DECLINE IN CENDANT'S STOCK PRICE ON AND AFTER APRIL 15, 1998 OR (2) INVESTOR LOSSES (Forbes Retrial Motion *In Limine* No. 24)

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this memorandum in support of his motion *in limine* to preclude the government from presenting any evidence, cross-examination, or argument concerning (i) the decline in Cendant's stock price and market capitalization on and after April 15, 1998 or (ii) investor losses on and after April 15, 1998.

### ARGUMENT

The Court should exclude evidence concerning the decline in Cendant's stock price and investor losses after the disclosure of the fraud on April 15, 1998 for several reasons. First, the government's proffered evidence is inadmissible absent expert testimony linking the changes in Cendant's stock prices or investors' alleged losses to the alleged fraud. The government has not identified any expert to testify on the critical issue of causation. Absent such expert testimony, the government's

proposed evidence lacks any probative value and should be excluded. Second, the

evidence the government seeks to present is not necessary to prove any element of

the charged offenses and has, at best, minimal probative value with respect to the

issue of materiality. The evidence should be excluded under Fed. R. Evid. 403

because its limited probative value is "substantially outweighed by the danger of

unfair prejudice, confusion of the issues, or misleading the jury, or by considerations

of undue delay, waste of time, or needless presentation of cumulative evidence." Id.

## I.    THE EVIDENCE SHOULD BE EXCLUDED BECAUSE THE GOVERNMENT HAS NO EXPERT TO TESTIFY ON THE SUBJECT OF STOCK PRICE OR INVESTOR LOSSES.

The Court should exclude evidence concerning changes in Cendant's

stock price and market capitalization on and after April 15, 1998 and investor

losses that took place on and after April 15, 1998 because the government has no

expert to link the decline in Cendant's share price to the alleged fraud.

The Supreme Court recently determined that a drop in stock price

"after the truth makes its way into the market place," Dura Pharmaceuticals, Inc. v.

Broudo, __ U.S. __, 125 S. Ct. 1627, 1632 (2005), does not, in itself, establish that the

change in stock price was caused by financial misrepresentations. To the contrary,

"that lower price may reflect, not the earlier misrepresentation, but changed

economic circumstances, changed investor expectations, new industry-specific or

firm-specific facts, conditions, or other events which taken separately or together

account for some or all of that lower price." Id. The Court concluded, accordingly,

that a plaintiff alleging securities fraud must "prove that the defendant's

2

misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss," id. at 1633, and cannot simply rely on the change in stock price as proof of causation.

Consistent with Dura, in order for the government to establish that the decline in Cendant's stock price on and after April 15, 1998 was caused by the fraud, the government must present competent evidence on that subject. That evidence must take the form of expert testimony. See, e.g., United States v. Russo, 74 F.3d 1383, 1388-89, 1394-95 (2d Cir. 1996) (government presented expert testimony on movement of stock price in response to alleged fraud). Similarly, in order to establish that investors' losses were caused by the alleged fraud, expert testimony is required to (i) isolate the effect of the alleged fraud on the stock price by eliminating the effect of other market factors and (ii) establish the fair value of the stock absent the alleged fraud. See, e.g., In re Northern Telecom Ltd. Securities Litigation, 116 F. Supp. 2d 446, 456-57, 460 (S.D.N.Y. 2000) (expert must "perform an event study or similar analysis to remove the effects on stock price of market and industry information"); In re Executive Telecard Ltd. Securities Litigation, 979 F. Supp. 1021, 1026 (S.D.N.Y. 1997) (expert must distinguish between fraud-related and non-fraud related company specific influences on stock price); In re TSO Financial Litigation, No. 87-7903, 1989 U.S. Dist. LEXIS 7434, at *13-14 (E.D. Pa. June 29, 1989) ("Proof of such a loss would require expert testimony to establish the fair value of the stock if the fraud had not taken place."); In re Warner Communications Securities Litigation, 618 F. Supp. 735, 744 (S.D.N.Y. 1985)

("Undoubtedly, expert testimony would be needed to fix not only the amount, but the existence, of actual damages."), aff'd, 798 F.2d 35 (2d Cir. 1986); Tucker v. Arthur Andersen & Co., 67 F.R.D. 468, 481 (S.D.N.Y. 1975) ("In order to recover damages, plaintiffs must show a causal link between the alleged misrepresentations and omissions and the artificially inflated price of Bermec stock  . . . . The proving of a causal link and the calculation of damages may prove to be a difficult task in this case because of the host of factors which affect the market price of a stock. Certainly the use of expert testimony may be required.") (internal quotation & citation omitted).

A lay witness such as Mr. Monaco or Mr. Rowan cannot testify to these issues because he cannot isolate the effect of the alleged fraud on Cendant's stock price or determine the fair value of the stock in the absence of the alleged fraud. Moreover, any attempt by a lay witness to offer such testimony would violate Fed. R. Evid. 701, which prohibits opinion testimony by lay witnesses concerning matters requiring "scientific, technical, or other specialized knowledge within the scope of Rule 702," Fed. R. Evid. 701(c). See United States v. Glenn, 312 F.3d 58 (2d Cir. 2002) (district court abused its discretion in allowing lay opinion testimony about matter requiring specialized knowledge); Black v. Consol. Freightways Corp., 219 F. Supp. 2d 243, 249-50 (E.D.N.Y. 2002) (striking affidavit from fact witness because it was based on specialized knowledge).[1] It also would violate the well-

---

[1]     See also United States v. Garcia, 291 F.3d 127, 140 (2d Cir. 2002) ("[A] witness offering a lay opinion must base his opinion on his own personal knowledge,

settled rule that lay witnesses cannot present speculative testimony concerning hypothetical scenarios (such as the value of CUC or Cendant stock in the absence of the alleged fraud).[2]

      Absent expert testimony establishing a link between the alleged fraud and the value of Cendant stock at a given point in time, evidence of changes in Cendant's stock price or market capitalization has no probative value and will serve only to confuse and mislead the jury. It also would improperly invite the jury to engage in rank speculation concerning the relationship between stock price and the alleged fraud in the absence of any competent evidence on the subject. See, e.g., Niagara Mohawk Power Corp. v. Jones Chemical, Inc., 315 F.3d 171, 177 (2d Cir. 2003) ("impermissible speculation" cannot form the basis for a jury finding); Radiation Dynamics, Inc. v. Goldmuntz, 464 F.2d 876, 887 (2d Cir. 1972) (improper

---

which must be established to the court and jury."); Nichols v. Johnson, No. 00 C 7785, 2002 WL 826482, at *5 (N.D. Ill. May 1, 2002) (fact witness's testimony, which consisted of "taking his personal knowledge about the facts . . . , applying his training and experience to those facts, and reaching a conclusion" was expert testimony).

[2]    See, e.g., Wilson v. Bradlees of New England, Inc, 250 F.3d 10, 15 n.8 (1st Cir. 2001) (affirming exclusion under Rule 701 of witness's speculative testimony in products liability action regarding what she would have done had sweatshirt displayed a warning label); Certain Underwriters at Lloyd's v. Sinkovich, 232 F.3d 200, 202-03 (4th Cir. 2000) (improper for lay witness to respond to "hypothetical or like questions"); United States v. Mason, 993 F.2d 406, 408-10 (4th Cir. 1993) (reversing conviction where government posed hypothetical questions to lay witness on cross examination); White v. Walker, 950 F.2d 972, 979 (5th Cir. 1991) (affirming exclusion under Rule 701 of testimony of police officer in response to hypothetical questions where officer was offered as a lay witness); United States v. Gibson, 636 F.2d 761, 764 (D.C. Cir. 1980) (affirming exclusion of testimony by lay witness concerning what he might have seen if he had used binoculars).

to ask jury to draw inference that "rests merely upon speculation and conjecture") (quotation omitted).  Accordingly, the government's proffered evidence concerning changes in Cendant's share price and alleged losses to investors should be excluded because the government has not identified any expert witness to testify on this subject.

## II.    THE PROFFERED EVIDENCE SHOULD BE EXCLUDED UNDER FED. R. EVID. 403.

The Court also should exclude any evidence concerning shareholder losses or the changes in Cendant's stock price and market capitalization on and after April 15, 1998 because the minimal (at best) relevance of this evidence to the charges in the indictment is far outweighed by its prejudicial effect.

The drop in Cendant's stock price on one day in April 1998 does not establish the materiality of any of the allegedly false statements charged in the indictment.  Courts in this Circuit have emphasized that "[t]he determination of materiality is to be made upon all the facts as of the time of the transaction and not upon a 20-20 hindsight view long after the event." Spielman v. General Host Corp., 402 F. Supp. 190, 194 (S.D.N.Y. 1975) (emphasis added), aff'd, 538 F.2d 39 (2d Cir. 1976); accord Ganino v. Citizens Utilities Co., 228 F.3d 154, 165 (2d Cir. 2000) ("Materiality is determined in light of the circumstances existing at the time the alleged misstatement occurred.").  In this case, the indictment charges a vast securities fraud scheme that purportedly took place over the course of more than a decade; the price of Cendant stock on a single day is not evidence of the alleged

materiality of any of the allegedly false statements made over the course of that decade, as it lacks a temporal link to the vast majority of those statements. Similarly, investor loss is not an element of any of the charges in the indictment,[3] and evidence of investor losses has, at best, minimal probative value in this case.

Even if the Court were to conclude that the government's proffered evidence has some limited relevance to this case, the Court should exclude the evidence under Rule 403 because its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Id. There is an enormous risk that the evidence the government seeks to present will inflame the jury and cause it to return a guilty verdict against Mr. Forbes based on emotion and passion rather than a rational assessment of the prosecution's case.

"Unfair prejudice," for purposes of Rule 403, is "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, advisory committee notes. Evidence is properly excluded under Rule 403 where there is a "genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to

---

[3]    See United States v. Haddy, 134 F.3d 542, 550 (3d Cir. 1998) ("[I]nvestor reliance is not required for a securities fraud conviction. The language does not proscribe deception on a purchaser or seller of a security; instead it speaks to deceptive devices employed 'in connection with the purchase or sale of any security.'").

the probative value of the offered evidence." <u>United States v. Bailey</u>, 990 F.2d 119,

122  (4th Cir. 1993) (citation omitted); <u>see</u> <u>also</u> <u>United States v. Blackstone</u>, 56 F.3d

1143, 1146 (9th Cir. 1995) ("Evidence is prejudicial if it 'appeals to the jury's

sympathies, arouses its sense of horror, provokes its instincts to punish, or triggers

other mainsprings of human action.'") (quoting 1 <u>Weinstein's Federal Evidence</u>

§ 403[3]).

Evidence of a significant drop in Cendant's stock price, or substantial

investor losses, is likely to cause jurors to believe that the losses were caused by the

fraud, despite the absence of any competent expert testimony to establish this

purported fact.  It also will cause jurors to associate CUC and Cendant with

companies such as Enron and Worldcom, which caused devastating financial injury

to shareholders and employees.  Such evidence would greatly increase the likelihood

that jurors will return a guilty verdict against Mr. Forbes because of an emotional

desire to punish high-level corporate executives for shareholder losses rather than

based on a rational assessment of  the strength or weakness of the government's

case. <u>See</u> <u>Old Chief v. United States</u>, 519 U.S. 172, 180 (1997) (under Rule 403,

"[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of

some concededly relevant evidence to lure the factfinder into declaring guilt on a

ground different from proof specific to the offense charged."); <u>United States v.</u>

<u>Lachman</u>, 48 F.3d 586, 592 (1st Cir. 1995) ("The concern is with any pronounced

tendency of evidence to lead the jury, often for emotional reasons, to desire to

convict a defendant for reasons other than the defendant's guilt.").

8

The risk that such evidence will inflame and prejudice the jury against Mr. Forbes is heightened by the numerous recent high profile alleged accounting frauds that have cost shareholders billions of dollars. These matters have resulted in the indictments and convictions of a number of corporate executives and have created a pervasive anti-corporate-defendant sentiment among the public. Because the evidence the government seeks to present is designed to arouse anger among jurors, improperly associate CUC and Cendant with companies such as Enron, and increase the likelihood that the jury will return a verdict based on passion rather than reason, the Court should exclude the proffered evidence under Rule 403. See, e.g., United States v. Lentz, No. 02-19, 2003 U.S. App. LEXIS 2062, at *10-16 (4th Cir. Feb. 6, 2003) (affirming, by divided court, trial court's Rule 403 decision to exclude evidence referring to O.J. Simpson, even though evidence was highly probative of defendant's intent); Blackstone, 56 F.3d at 1146 (reversing because of, inter alia, admission of drug-related evidence in case involving possession of firearm; evidence should have been excluded under Rule 403 where it "connect[ed] a party with a highly charged public issue") (quotation omitted); Lachman, 48 F.3d at 591-93 (affirming trial court's decision to exclude prejudicial evidence that end use of items exported by defendants was weaponry such as nuclear missiles; evidence could elicit strong emotional response from jury notwithstanding its relevance to defendants' knowledge).[4]

---

[4]     Courts have excluded evidence on the subject of financial loss even where its likely prejudicial effect was far less significant. See United States v. Lane, 323 F.3d

9

When weighing the significant prejudicial effect of the government's proffered evidence against its limited probative value, the Court should consider the other evidence available to the government to prove the magnitude of the alleged fraud. See Old Chief, 519 U.S. at 183 ("a judge applying Rule 403 could reasonably apply some discount to the probative value of an item of evidence when faced with less risky alternative proof going to the same point"); id. at 184-85 (court may evaluate "evidentiary alternatives" to challenged evidence when performing Rule 403 balancing); Lachman, 48 F.3d at 593 ("In applying Rule 403, it is plainly pertinent whether a litigant has some alternative way to establish a fact that involves no (or at least a lesser) risk of prejudice."); Fed. R. Evid. 403, advisory committee notes ("The availability of other means of proof may also be an appropriate factor" to consider in the Rule 403 analysis). Here, the government has ample evidence at its disposal to prove the magnitude of the alleged fraud, such as evidence concerning the dollar amount by which CUC's and Cendant's earnings were overstated by the alleged fraud and the testimony of cooperating witnesses Corigliano, Pember, and Sabatino. Accordingly, the Rule 403 balancing test weighs

---

568, 583-84 (7th Cir.) (affirming exclusion of evidence proffered by defendant of lack of harm to alleged victim; "Even if the court had considered whether the victims suffered a loss as relevant to the issue of intent, the court did not improperly exclude this evidence, considering its lack of probative value"), cert. denied, 124 S. Ct. 84 (2003); United States v. Prater, 805 F.2d 1441, 1443 n.2 (11th Cir. 1986) (trial court erred in allowing witnesses to testify about write-downs taken by corporation in wire fraud case; "The implication of this evidence was that defendant's investment activity caused the corporation to suffer losses. We agree that this evidence was irrelevant and prejudicial.").

heavily in favor of the exclusion of extraordinarily prejudicial evidence of alleged

billions of dollars in shareholder losses and reduction of Cendant's market

capitalization.

The Court also should exclude the proffered evidence under Rule 403

because it will mislead and confuse the jurors.  As discussed above, investor loss is

not an element of any of the charges in the indictment.  Even if the jury is

instructed on this point, there is a significant risk that jurors may improperly seek

to remedy investor losses, "send a message" to the public about investor losses, or

influence the outcome of pending civil litigation through their verdict in this case.

See Lachman, 48 F.3d at 593 (affirming exclusion of evidence under Rule 403 where

"ample opportunity exist[ed] for jury confusion").

While jurors are ordinarily presumed to follow instructions, "[t]here

are some contexts in which the risk that the jury will not, or cannot, follow

instructions is so great, and the consequences of failure so vital to the defendant,

that the practical and human limitations of the jury system cannot be ignored."

United States v. Jackson, 418 F.2d 786, 789 (6th Cir. 1969) (quoting Bruton v.

United States, 391 U.S. 123, 135 (1968)).[5]  This is such a case.

---

[5]    See also Throckmorton v. Holt, 180 U.S. 552, 567 (1901) ("there may be
instances where such a strong impression has been made upon the minds of the jury
by illegal and improper testimony, that its subsequent withdrawal will not remove
the effect caused by its admission, and in that case the general objection may avail
on appeal or writ of error."); United States v. King, 911 F. Supp. 113, 119 (S.D.N.Y.
1995) ("That inadmissible and prejudicial evidence should not be put before a jury is
a given.  Instructing a jury to disregard such evidence which may have come to its
attention will not, in all cases, be an adequate remedy"), aff'd, 140 F.3d 76 (2d Cir.

For all of the foregoing reasons, the Court should exclude evidence concerning: (i) Cendant's stock price on and after April 15, 1998; (ii) alleged losses suffered by individual investors who purchased CUC or Cendant stock; or (iii) the decline in Cendant's market capitalization on and after April 15, 1998.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (Bar No.ct17115)
Barry S. Simon  (Bar No. ct24159)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

---

1998).

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing Memorandum in Support of

Motion of Walter A. Forbes to Preclude Evidence, Cross-Examination, or Argument

Concerning (1) the Decline in Cendant's Stock Price On and After April 15, 1998 or

(2) Investor Losses (Forbes Retrial *Motion In Limine* No. 24) to be sent on October

14, 2005 to the following via Federal Express and email:

Michael Martinez, Esq.
Craig Carpenito, Esq.
United States Attorneys
The Federal Building
U.S. Department of Justice
450 Main Street, Room 320
Hartford, CT  06103

Norman Gross, Esq.
U.S. Attorney's Office
District of New Jersey
401 Market Street
Fourth Floor
Camden, NJ  08101


Barry S. Simon