# EXHIBIT A

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>v. )<br><br>WALTER A. FORBES and )<br>E. KIRK SHELTON. )<br> ) | No. 3:02CR264 (AWT)<br><br>May 10, 2004~~March 2, 2004~~ |

## RENEWED OBJECTIONS TO PROPOSED TESTIMONY OF
## GOVERNMENT EXPERT ROBERT J. SACK
### (Supplementing Forbes Pretrial Motion No. 49)

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)
Robert M. Cary (Bar No. ct24198)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

-and-

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(806) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

# INTRODUCTION

On February 20, 2004, the Court asked the government to set forth in numbered paragraphs the proposed testimony of Robert Sack. (Tr. 2/20/04 at 723-30). Counsel for Mr. Forbes agreed to set forth their objections to the proposed testimony of Mr. Sack on a paragraph-by-paragraph basis. Id.

A brief explanation of general categories of Mr. Forbes' objections is set forth below, followed by objections to Mr. Sack's proposed testimony on a paragraph-by-paragraph basis.[1] These renewed objections have been "redlined" to reflect revisions made to the "Government's List of Proposed Opinions, Concepts and Ideas to Be Covered in Professor Sack's Testimony" on March 11, 2004, to reflect the withdrawal of the proposed testimony regarding a CEO's alleged responsibility for financial statements on May 7, 2004 and to reflect modifications to Mr. Forbes' original objections in light of the government's revised positions. As noted during a Conference Call with the Court on May 7, 2004, these renewed objections are being made to preserve Mr. Forbes' objections to Mr. Sack's testimony in lieu of objecting during Mr. Sack's testimony in order to avoid interrupting his testimony.

---

[1] In those instances where the government did not number a paragraph of proposed testimony and in those instances where the government started a new numbering sequence, counsel for Mr. Forbes has designated each paragraph of proposed testimony with a consecutive number in brackets. See ¶¶ [115]-[143].

## EXPLANATION OF OBJECTIONS

### 1. TIMLINESS AND ADEQUACY OF DISCLOURES

As set forth in detail in the memoranda and exhibits in support of Forbes Pretrial Motion No. 21, Forbes Motion for Reconsideration of Pretrial Motion No. 21, and Forbes Pretrial Motion No. 48, the government did not submit a timely and adequate summary of the proposed testimony of Mr. Sack and the basis and reasons for his opinions. This violated Rule 16 of the Federal Rules of Civil Procedure, an Order of the United States District Court for the District of New Jersey, this Court's Standing Order on Discovery in Criminal Cases and this Court's Order of November 22, 2002. This objection applies to all of the proposed testimony of Mr. Sack.

In some cases, the government admits that proposed testimony of Mr. Sack was disclosed for the first time during the hearings of February 18-20, 2004. In those cases, the government's failure to make timely and adequate disclosure is especially egregious and provides further reason to exclude Mr. Sack's proposed testimony.[2]

---

[2] The government has admitted in its List of Professor Sack's Opinions, Concepts and Ideas that the proposed "Opinions, Concepts and Ideas" identified in ¶¶ 6, 7, 18, 42, 66, and 97 were not disclosed until the <u>Daubert</u> hearing. The government has also admitted that portions of the proposed testimony in ¶¶12, 15, 16, 17, 22, 23, 49, and 64 were not disclosed until the <u>Daubert</u> hearing.

## 2. GOVERNMENT MISCONDUCT

**Affirmative Misrepresentation to the Court.** On January 15,
2003, a hearing was held on Mr. Forbes' Pretrial Motion No. 21.[3] During that
hearing, the government represented to the Court that Mr. Sack's report was not
provided to the defense until December 17, 2002, because as of August 2002 when
Mr. Heckler's report was finalized, Mr. Sack "had not completed his review of the
work." (Tr. 1/15/03 at 26). The Court then followed-up:

> The Court: When was Professor Sack's summary or his information
> available?
>
> The Government: It was late in the evening on December 16 . . . . I
> can represent to Your Honor I did not wait around the U.S. Attorney's
> Office until slightly before midnight and decide to fax it because we
> had it ready. It was something that was a work in progress and
> delivered at the last minute.

Id. at 28 (emphasis added).

This representation was false. Mr. Sack's report was substantively
complete and had been shared with the U.S. Attorney's Office by June 2002 after
having already been edited. When Mr. Sack was asked when he prepared his
report, he responded that "I believe it would have been June 2002." (Tr. 2/18/04 at
485) The government subsequently brought out that citations were added later,
but Mr. Sack's testimony on cross-examination was unequivocal that his report in

---

[3] Forbes Pretrial Motion No. 21 was Mr. Forbes' Motion to Preclude the
Government from Presenting Expert Testimony Due to Its Deliberate and
Unjustifiable Violation of the Court's Scheduling Order, based on the government's
failure to present the testimony summaries by April 29, 2002, the date established
by Judge Walls.

4

June 2002 expressed his opinions and that all he did after June 2002 was add citations:

> Q: There was a report prepared in June of 2002, correct?
>
> A: Yes.
>
> Q: And subsequent to that you added some cites, correct?
>
> A: Yes.
>
> Q: But you didn't change anything substantively other than adding the cites, correct?
>
> A: Yes.
>
> Q: Your report in June 2002 expressed your opinions, correct?
>
> A: Yes.

(Tr. 2/20/04 at 783-784). Mr. Sack's testimony confirms what the defense argued based on its review of the documents. Mr. Sack's report was effectively complete in June 2002. The government was not truthful to the defense or the Court, when the government represented that Professor Sack's "information" was "delivered at the last minute" on December 16, 2002.

   **Failure to Fulfill <u>Brady</u> Obligation.** During cross-examination, Mr. Sack withdrew his previous opinion that "the CEO is responsible to be sure that the financial statements meet the requirements of the law and GAAP." Tr. 2/19/04 at 674 ("I had no basis for it and would not say it today."). The government knew that Mr. Sack was withdrawing this opinion "a week or so" before Mr. Sack took the stand. Tr. 2/20/04 at 782-84 ("<u>I did say to them</u>, as I said in court, <u>I intend to conclude</u> that I don't have a basis for saying the CEO is responsible to be sure

5

the financial statements meet the requirements of the law under GAAP."

(emphasis added)).  <u>But the government did not disclose that fact to the defense.</u>

<u>Moreover, the government introduced as an exhibit Mr. Sack's report that</u>

<u>contained this critical opinion that the government – but not the defense – knew</u>

<u>had been withdrawn by the witness.</u>  <u>See</u> Sack Gov't Exh. 16-B.  The government

then sat back to see whether the defense would stumble across the fact that Mr.

Sack had withdrawn a critical opinion.  The defense only learned that Mr. Sack

had withdrawn one of his critical opinions regarding CEOs (and had told the

government about the withdrawal) through meticulously reviewing Mr. Sack's

papers with him – cross-examination to which the government objected.  (Tr.

2/20/04 at 760-61).

      The government's misrepresentation to the Court regarding when Mr.

Sack's information was available, the government's failure to disclose <u>Brady</u>

material to the defense, and the government's submission of Mr. Sack's report to

the Court without advising anybody that he had withdrawn one of his critical

opinions warrants exclusion of Mr. Sack as a witness.  <u>See</u> <u>Taylor v. Illinois</u>, 484

U.S. 400, 415 (1988) (violation of discovery order that was willful and motivated by

a desire to obtain a tactical advantage justifies exclusion of testimony).

### 3. IMPOSSIBLITY OF CONDUCTING EFFECTIVE CROSS-EXAMINATION WITHOUT ELICITING AN IMPOPER OPINION

      A defendant is "guaranteed an opportunity for effective cross-

examination" by the Sixth Amendment's confrontation clause.  <u>Delaware v. Van</u>

<u>Arsdall</u>, 475 U.S. 673, 678-79 (1986).  But the government has guaranteed that Mr.

Forbes would <u>not</u> have an opportunity for effective cross-examination if Mr. Sack were allowed to testify. Mr. Forbes' counsel would not be able to effectively cross-examine Mr. Sack, because the chances of Mr. Forbes' counsel eliciting an improper opinion would be too great. Mr. Forbes' counsel would be hamstrung.

The government caused Mr. Sack to develop and express admittedly improper opinions. Mr. Sack understood that he was asked to give his opinion not only on how accounting issues identified in the indictment "fit into the overall financial reporting framework," but also how those issues "might have affected Cendant financials." (Tr. 2/18/04 at 534) Later, when asked whether a note he had written during a conversation with the prosecution team to "[c]over more explicitly CUC and Forbes' use of ongoing income and press releases," Mr. Sack admitted that he believed that this was a Justice Department request. (Tr. 2/19/04 at 658) Of course, the government presented his original improper opinions. The government clearly wanted them.

Without doing any independent analysis whatsoever, Mr. Sack opined that the financial statements of CUC were overstated "deliberate[ly] with the intent to deceive CUC's stockholders and potential investors." Sack Gov't Exh. 16-B at 13. Mr. Sack also opined about specific alleged accounting treatments at CUC. For example, Mr. Sack opined that CUC engaged in "abuse of something called merger reserves – a significant inflation of 'income before one-time charges' of more than $185 million dollars in the Company's annual income from February 1, 1995 through December 31, 1997." Sack Gov't Exh. 16-B at 9. Mr. Sack

7

admitted that he did almost no work other than lifting these conclusions from the Audit Committee Report. E.g., Tr. 2/19/04 at 632-33 (numbers lifted directly from Audit Committee Report without any independent calculations by Mr. Sack). The government has conceded that these opinions are improper by striking them from his intended testimony.

But the government cannot wipe Mr. Sack's opinions from his brain.[4] And if the jury were exposed to an improper opinion, the unfair prejudice to Mr. Forbes would be extreme. As the Supreme Court said in Daubert, expert testimony "can be both powerful and quite misleading because of the difficulty in evaluating it." Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 595 (1993). This prejudice is especially acute in a criminal case. See e.g., United States v. Brown, 776 F.2d 397, 401 n.6 (2d Cir. 1985) ("The 'aura of special reliability and trustworthiness' surrounding expert testimony ought to caution its use, especially when offered by the prosecution in criminal cases, poses a special risk in a case of this sort." (quoting United States v. Young, 745 F.2d 733, 765-66 (2d Cir. 1984) (J. Newman concurring) (citations omitted)); United States v. Green, 548 F.2d 1261, 1268 (6th Cir. 1977) (reversing conviction on grounds that prejudicial expert testimony admitted at trial).

Attempting to cross-examine Mr. Sack would be like attempting to traverse a mine-field. Mr. Forbes' counsel would not be able to conduct a

---

[4] Indeed, the government did not even educate Mr. Sack as to what opinions had been stricken prior to his testimony at the Daubert hearing. Mr. Sack saw Sack Gov't Exh. 16-B for the first time at the Daubert hearing. (Tr. 2/20/04 at 779)

meaningful cross-examination for fear of stepping on any one of those mines.  And

the risk of stepping on such a land mine is great.  At the <u>Daubert</u> hearing, Mr.

Shelton's counsel asked the following innocuous question of Mr. Sack:

> Q:  In connection with any of the opinions you've reached at the
> request of the government, have you done any testing?

(Tr. 2/20/04 at 858).  After an exchange regarding whether or not Mr. Sack could

answer the question with a yes or no answer, Mr. Sack responded to Mr. Puccio's

innocuous question with an improper opinion that had been stricken by the

government.  Mr. Sack opined:

> A:  As you said, in a global overarching way, without going, without
> going back through each of the statements that I might be asked to
> or that appeared in my report, I believe that I said that the overall
> opinion that I will provide is that CUC's financial statements were
> misstated and that they were misstated by a significant amount.

(Tr. 2/20/04 at 859).  Mr. Sack's improper and improperly formed opinions – to

which he still adheres -- are bound to come out if he is allowed to testify at trial.

Therefore, he should not be allowed to testify at all.

*     *     *     *     *

Even if Mr. Sack's testimony on direct and cross-examination could be

limited to those opinions that the government has not stricken, Mr. Sack should

still not be allowed to testify, because his remaining opinions are improper for a

number of reasons.

9

### 4. RULE 704(b)

The government proposes to have Mr. Sack give his opinion as to how an accounting fraud usually takes place.  For example, the government seeks to offer opinions from Mr. Sack that:

- ~~"most managements own stock in their companies, directly or through stock options, and they want to keep the stock price up to protect their own investment;" see Gov't Exh. Sack 16-B at 5;~~

- if companies "fail to meet the market's earnings expectations, the stock price will not rise to its projected level, and in fact may fall;" see id.;

- ~~"very often managements are reluctant to report bad earnings;" see id.;~~

- ~~"management's ownership of stock" and "the impact of earnings results" "can pressure management to override the accounting systems and distort the company's financial statements;" see Gov't Exh. Sack 16-A at 7-8;~~

- ~~"the CEO is responsible to be sure that the financial statements meet the requirements of the law and GAAP;" see Gov't Exh. Sack 16-B at 4;~~

- ~~the "CEO is ultimately responsible for the accuracy and fairness of the financial statements; see id.;~~

- "Most CEOs [Mr. Sack has] known have cared passionately about their financial statements;" see id. and

- "The CEO will make final decisions on accounting questions;" see id.

The government then proposes to have Mr. Sack describe how accounting mechanisms are allegedly used to commit a fraud.  Specifically, the government proposes to have Mr. Sack testify regarding:

- alleged unsupported topside adjustments; <u>see</u> Gov't Exh. Sack 16-A at 10; Gov't Exh. Sack 16-B at 8;

- alleged use of merger reserves to offset costs unrelated to merger and reserves; <u>see</u> Gov't Exh. Sack 16-A at 10-11; Gov't Exh. Sack 16-B at 9-10;

- alleged moving of revenue from one recognition category to another; <u>see</u> Gov't Exh. Sack 16-A at 12; Gov't Exh. Sack 16-B at 11; and

- alleged failure to establish and maintain an adequate reserve or allowance; <u>see</u> Gov't Exh. Sack 16-A at 13; Gov't Exh. Sack 16-B at 12.

In sum, Mr. Sack would testify that CEOs are ~~"responsible" for accounting mechanisms described by Mr. Sack~~ make "final decisions on accounting questions" that ~~are used to commit~~ result in fraud.

Mr. Sack's proposed testimony is akin to that offered by the government in <u>United States v. Gutierrez-Farias</u>, 294 F.3d 657, 661-63 (5th Cir. 2002), a case in which the U.S. Court of Appeals for the Fifth Circuit held that background expert testimony violated FRE 704(b), because it was effectively an opinion that the defendant knew that he was transporting illegal drugs. In <u>Gutierrez-Farias</u>, a DEA agent testified as a "background" expert on the business of transporting illegal drugs. He testified:

> The way it <u>usually</u> works in that respect is that I don't think they would target somebody just off the street that, you know, has no knowledge. <u>Usually</u>, it's somebody that is a friend of a friend. It could start that way. <u>Usually</u> they want to use people that . . . have a certain amount of trust and responsibility because you have to realize as we showed before here, the amount of money that the narcotics communicates too. It's a lot of money and . . . this is . . . a business . . . . [J]ust as in any other business, the people need a certain amount of credentials, if you will, to be employed or to be sought out by a narcotics trafficking organization.

11

Id. at 662 (emphasis added). The U.S. Court of Appeals for the Fifth Circuit held that this background testimony violated FRE 704(b), because "rather than assisting the jury to understand evidence or complicated fact issues in the case, [the DEA agent] presented the jury with a simple generalization: in most drug cases, the person hired to transport the drugs knows the drugs are in the vehicle." Id. at 663. The DEA agent's opinion, the Fifth Circuit held, "crosses the borderline long recognized by this court between a 'mere explanation of the expert's analysis of the facts' and a 'forbidden opinion on the ultimate legal issue' in the case." Id. at 663. The import of the testimony was that because "most drivers know there are drugs in their vehicles, [the defendant] must have known too." Id. at 663. Although the DEA Agent did not expressly say that the defendant knew there were drugs in his vehicle, "his testimony amounted to the functional equivalent of such a statement." Id. Thus, it violated FRE 704(b), which forbids expert testimony offering "an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged." Id. at 662 (quoting FRE 704(b)).

So it is here. The government has conceded that Professor Sack "is not going to testify about the facts of the case." (Tr. 1/30/04 at 18-19). Rather, under the guise of "background" testimony, Mr. Sack would be giving opinions that CEOs ~~are "responsible" for accounting mechanisms~~ make accounting decisions that have resulted in frauds in other cases. As did the expert in the Gutierrez-Farias case, Mr. Sack's testimony would be the "functional equivalent" of testimony that

12

Mr. Forbes knew of any accounting fraud, because he ~~was "responsible" for it~~ made the accounting decision.  That clearly violates FRE 704(b).

### 5.  RULE 702

Mr. Sack's proposed testimony is also barred by FRE 702.  The government bears the burden of demonstrating that proposed expert testimony satisfies FRE 702.  See Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999) ("[t]he burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert") (citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 at 592 n.10 (1993); see also Zaremba v. General Motors Corp., 2004 U.S. App. Lexis 2422 (2d Cir., Feb. 13, 2004) (holding that "plaintiffs [who proffered the expert] have satisfied none of the four factors identified in Daubert").  FRE 702 provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

Here, the government has not met its burden of demonstrating that Mr. Sack's proposed testimony is based upon sufficient facts or data, or that his proposed testimony is the product of reliable principles and methods, much less that Mr. Sack has applied reliable principles and methods in a reliable matter to the facts of this case.  Mr. Sack conceded that he did not have statistically valid

13

surveys to support his opinions regarding what investors think and do (Tr. 2/20/04 796-804), what management of companies think and do (Tr. 2/20/04 at 812), or what analysts think and do (Tr. 2/20/04 at 834-35). <u>Where an expert has not tested his theories, they should be excluded.</u> <u>See</u> Brooks v. Outboard Marine Corp., 234 F.3d 89, 92 (2d Cir. 2000). Mr. Sack's untested theories should be excluded.

Furthermore, even background testimony must "fit" the alleged facts of this case. <u>See</u> Advisory Committee Note to Rule 702. Mr. Sack testified repeatedly that GAAP needs to be applied to particular facts and circumstances. (<u>E.g.</u>, Tr. 2/19/04 at 699 ("Q: The principles of GAAP have to be applied to specific facts and circumstances? A: True."), 703 ("The ability to make reasonable estimates of the amount of returns depends on many factors and circumstances that will vary from one case to the next" (reading from SFAS 48)), Tr. 2/20/04 at 856-57 (advice of accountant in applying GAAP depends upon the facts and circumstances of a particular case). But Mr. Sack's proposed testimony includes examples regarding cars and trucks (Tr. 2/18/04 at 428), department stores (Tr. 2/18/04 at 426), accelerated depreciation (Tr. 2/18/04 at 424-26), research and development costs (Tr. 2/18/04 at 428-29) and newspaper subscriptions (Tr. 2/18/04 at 496-99) that bear no resemblance to the facts alleged in the indictment. Mr. Sack's proposed "background" testimony does not fit the alleged facts of this case and should not be presented to the jury.

## 6. RULE 403

Mr. Sack's proposed testimony is also barred by FRE 403, as its only purpose is to prejudice the jury, and it has no probative value. This is not a case where the jury will need expert assistance to translate code words used by drug dealers, to determine the value of illegal drugs or to understand the structure of a secret criminal organization.[5] Rather, this is a case where there are fact witnesses, who can provide the alleged facts necessary for the government to make its arguments (except as to the application of GAAP to the alleged particular facts of this case, for which the government is offering an expert other than Mr. Sack). See United States v. Castillo, 924 F.2d 1227 (2d Cir. 1991) (expert testimony to describe procedures and equipment used in illegal drug operation not admissible where eye witness has already described relevant procedures and equipment).

Moreover, by describing how accounting mechanisms have been used to commit fraud at other companies and who is responsible for them, the government is attempting to unduly prejudice the jury. Mr. Forbes is not on trial for what happened at other companies. He is on trial for what happened at Cendant, and as Mr. Sack acknowledged, "[n]o two companies are the same." (Tr. 2/20/04 at 811). The government can use fact witnesses to try to make its case.

Given the recent wave of high profile allegations of corporate wrongdoing, including those at Enron and WorldCom, the prejudice to Mr. Forbes of Mr. Sack's proposed testimony would be severe. Indeed, the government even

---

[5] Thus this case is different than the cases cited by the government.

~~lists Mr. Sack's retention by WorldCom at the request of the SEC after scandal~~
~~beset that company as one of his qualifications. (Tr. 2/18/04 at 390-92)~~ And Mr.
Sack's testimony contains references to "the last five years" (Tr. 2/18/04 at 451) and
"press accounts" during the last several years (Tr. 2/18/04 at 468). The government
even cites Mr. Sack's work at the SEC deciding what cases to bring as a further
qualification. (Tr. 2/18/04 at 393-94) Then the government proposes having Mr.
Sack testify as to how fraud has occurred at other companies. Mr. Sack's proposed
testimony will give the jury the impression that Mr. Sack has seen fraud – after all,
he worked at the SEC ~~and was engaged to help clean up WorldCom~~ – and that Mr.
Sack believes that a fraud took place at Cendant. (Of course, Mr. Sack improperly
concluded that there was a fraud without doing any independent analysis, though
the government has now stricken those opinions—at least from its summary, if not
from Mr. Sack's mind.) WorldCom and other alleged frauds such as Enron have no
business in this case. Mr. Sack's presence and his proposed testimony regarding
other alleged frauds will insert these alleged frauds and unfair prejudice into this
case.

The unfair prejudice would be especially severe because the
government hopes to use Mr. Sack at the beginning of its case. (Tr. 10/16/03 at 221
(Mr. Sack is to be "one of [the government's] early witnesses")). As the Fifth
Circuit recently announced when considering the admissibility of an "overview"
witness at the beginning of the government's case: "We unequivocally condemn
this practice [of using an overview witness at the beginning of a case] as a tool

employed by the government to paint a picture of guilt before evidence has been introduced." United States v. Griffin, 324 F.3d 330, 349 (5th Cir. 2003); see also United States v. Long, 917 F.2d 691, 702 (2d Cir. 1990) (calling expert witnesses to describe organized crime families "as the first prosecution witness" "operated less to aid the jury than to prejudice it."); United States v. Mendoza-Medina, 346 F.3d 121, 125 (5th Cir. 2003) (cautioning that it is time for trial judges to "rein in" the use of background witnesses in criminal cases).

### 7. LEGAL OPINIONS

"It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." United States v. Bilzerian, 926 F.2d 1285, 1294-95 (2d Cir. 1977). Nevertheless, the government seeks to have Mr. Sack testify regarding the purported legal requirements for reports filed with the SEC[6] and the purported legal responsibilities of CEOs, Presidents, CFOs and others within a corporation.[7] This proposed opinion testimony invades the province of the Court. Mr. Sack's opinions regarding what the law requires are not only improper, they are also not reliable. For example, Mr. Sack looked up SEC regulations in the Commerce Clearinghouse binder of SEC regulations, but made no effort to determine what SEC regulations were in effect during each year covered by the indictment (Tr.

---

[6] See, e.g., Sack Gov't Exh. 16-A at 2-3, 5 (citing SEC regulations); Sack Gov't Exh. 16-B at 2-3, 7 (same).

[7] See, e.g., Sack Gov't Exh. 16-A at 6 ("corporate officers, including the Chief Executive Officer ("CEO"), the President and the Chief Financial Officer ("CFO") have a specific duty and responsibility to ensure that financial statements are prepared under GAAP and that the related narrative disclosures are truthful and accurate.") Exh. B at 4.

2/19/04 at 667-68). And Mr. Sack has made no effort to cite legal authority for his legal opinions regarding the "responsibility" of corporate officers. Though he wrote down the name of a law professor in his notes regarding the responsibility of corporate offices, he ultimately chose not to speak to that law professor about this case. (Tr. 2/19/04 at 611-12) The jury is to receive proper instruction on the law from the Court and make determination as to whether Mr. Forbes and Mr. Shelton are "responsible" in the context of this case.[8] The jury will not need Mr. Sack's recitation of what he believes the law provides, and it would be improper to give it to them.

### 8. NOT QUALIFIED

A witness must be qualified to render the opinions he or she is offering. See FRE 702 (expert witness must be qualified "by knowledge, skill, experience, training or education"); see also Eaglston v. Guido, 41 F.3d 865 (2d Cir. 1994) (testimony of unqualified expert disallowed). The government hopes to offer testimony from Mr. Sack regarding:

- what stock analysts think and do; see Sack Gov't Exh. 16-A at 3-7;

- what company managers and executives think and do; see Sach Gov't Exh. 16-A at 3-4; Sack Gov't Exh. 16-B at 4; and

- what shareholders think and do; see Sack Gov't Exh. 16-A at 4, 11; Sack Gov't Exh. 16-B at 2-3.

---

[8] Mr. Sack's purported opinions invading the province of the Court would dilute the Court's instructions such as instructions on willfulness and the government's burden of proof beyond a reasonable doubt.

Mr. Sack simply is not qualified to render these opinions, and they should not be admitted into evidence. Mr. Sack is <u>an accountant</u>, who teaches accounting-related courses. Mr. Sack has never been a CEO, a president of a company, a COO, a CFO, or the controller of a company. (Tr. 2/18/04 at 529-530). In fact, he has never worked for a publicly-traded company at all. <u>Id.</u> His alleged qualifications are purely in a role as an academic accountant, and are not based on statistically valid studies. Simply put, he is not qualified to render an opinion on what company managers and executives think and do. And he is certainly not qualified to opine on who is responsible for what. When asked whether he had attempted to do any legal research in connection with his assignment for this case, he responded, "No. I am an accountant." (Tr. 2/19/04 at 612).[9] And more importantly, legal issues fall within the province of the Court, not a witness. <u>See</u> previous section on Legal Opinions.

### 9. NOT RELEVANT AND/OR NOT HELPFUL TO THE JURY

Many of Mr. Sack's opinions are not relevant and/or are not helpful to the jury. What may have happened at other companies, what may have happened at the Darden Business School, what may have happened at the SEC or what may have happened at Touche Ross is not relevant at all to what allegedly happened at Cendant. Mr. Forbes and Mr. Shelton are on trial for what happened at Cendant, not for what may have happened anywhere else.

---

[9] In fact, Mr. Sack did do legal research in connection with his work on this case. He looked up SEC regulations.

19

Furthermore, as set forth in the paragraph-by-paragraph objections that follow, there are a number of instances where the government proposes to have Mr. Sack testify regarding matters that are not alleged in the indictment. For example, the government proposes to have Mr. Sack testify regarding the balance sheet, the statement of cash flows and the MD&A, even though there are no allegations regarding them in the indictment.

Mr. Sack's opinions regarding what analysts purportedly think and do are not helpful to the jury in the least. What analysts think and do is not relevant in the first place. And even if what analysts think and do were deemed relevant, the government has five analysts who in fact covered CUC and Cendant on its potential witness list. In the event that any testimony regarding what analysts think and do were deemed relevant and admissible in the first place, these analysts could speak for themselves.

With respect to Mr. Sack's opinions regarding what managers and executives purportedly think and do, the government can use its principal witness, CUC CFO Cosmo Corigliano, who was responsible for the preparation of CUC's financial statements, to explain what Mr. Corigliano allegedly <u>did</u>. Mr. Corigliano can speak for himself as to what allegedly happened with respect to the preparation of the financial statements at CUC and Cendant. Testimony regarding what Mr. Corigliano <u>was thinking</u> has no probative value and is not admissible. As for the issue of whether Mr. Forbes knew that Mr. Corigliano was doing anything

20

improper,[10] nobody can testify as to what Mr. Forbes was thinking. Mr. Corigliano can testify as to what Mr. Corigliano claims <u>happened</u>, and the jury can evaluate Mr. Corigliano's credibility and draw inferences based on what Mr. Corigliano claims happened. The jury does not need a witness to assist it in evaluating Mr. Corigliano's credibility. Certainly they do not need an expert to testify generally as to what executives <u>think</u>.

Finally, with respect to Mr. Sack's opinions regarding what investors purportedly think and do, this testimony is likewise not helpful to the jury. First, determining what investors as a group think and do is irrelevant. Second, members of the jury may well be members of the investing public. They do not need an expert to tell them what they think and do. Third, in the event that investor testimony were deemed relevant, the government has three CUC/Cendant investors on its witness list. Once again, these investors can speak for themselves to the extent that any testimony from investors is relevant and admissible. Expert testimony on what investors think and do (in addition to being outside Mr. Sack's (and anybody's) area of expertise) is not helpful to the jury.

### 10. SPECULATION

Finally, Mr. Sack's proposed testimony regarding what any person other than himself <u>thinks</u> or what any person <u>whom he has not observed</u> does is pure speculation (in addition to being irrelevant and inadmissible for the reasons cited above). As with any witness, an expert witness cannot speculate. <u>See</u>

---

[10] Mr. Forbes did <u>not</u> know that Mr. Corigliano was doing anything improper, and

Zaremba v. General Motors Corp., 2004 U.S. App. Lexis 2422 (2d Cir. Feb 13, 2004) (upholding exclusion of proposed expert testimony that was speculative).

## 11. INTERPRETATION OF FINANCIAL STATEMENTS AND PRESS RELEASES AT ISSUE IN THIS CASE

The government has represented that Mr. Sack will not address the facts of this case. (Tr. 1/30/04 at 18-19)  Nevertheless, the government proposed that Mr. Sack will interpret financial statements and press releases at issue in this case. As the Court has noted, "that won't be allowed." (Tr. 2/20/04 at 736)  The paragraphs of proposed testimony in which the government suggests that Mr. Sack will do just that are noted below.

## PARAGRAPH-BY-PARAGRAPH OBJECTIONS

1.    Professor Sack is a semi-retired professor at the Darden School, which is the MBA school connected with the University of Virginia.  He came to the Darden School in 1987.  Therefore, he has been there for about 14 or 15 years.  When he retired, the school gave him the title of emeritus professor. He still teaches one course per year (387).

**Objections: Timeliness and adequacy.  Misconduct.  Impossible to cross-examine without eliciting an improper opinion.**

2.    For the last several years, Professor Sack has taught a course called Decisions in Financial Reporting.  That course asks students to look at the most important things that they might have to decide as future CEOs or officers of a firm when the firm prepares its financial statements to issue to

---

Mr. Corigliano will be lying if he suggests otherwise at trial.