Objections: Rule 702. ~~Not applicable.~~ ~~Rule 403. Speculation. Not qualified. Not relevant and/or not helpful to the jury. Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.~~

~~113. Most management own stock in their company. The basis for that statement is Professor Sack's general business experience (813-14).~~

~~Objections: Rule 702. Speculation. Not qualified. Not relevant and/or not helpful to the jury. Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.~~ Not applicable.

114. The semi-strong form of the efficient market hypothesis states that all available information will be captured in the stock price. This is a well-accepted theory among finance professionals. It has gained this fairly wide acceptance because research has demonstrated its validity and because it seems consistent with the day to day observation of the market price of the stock as it reacts to new information (816-22).

Objections: Rule 702. Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.

Matters Included in Professors Sack's Report
That Were Not part of His Direct Testimony

From Department of Justice Summary

[115]. If a company meets or exceeds analysts' projections, the price of its stock can rise.

Objections: Rule 702. Speculation. Not qualified. Not relevant and/or not helpful to Jury. Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.

[116]. A reserve that is overstated and then subsequently used to pay operating expenses to inflate revenue is a "cookie jar" reserve.

Objections: Rule 704(b) (when considered in connection with Mr. Sack's opinions of responsibility). Rule 702. Rule 403. Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.

[117]. ~~Management's reputation in the business community can tempt them to falsify financial statements.~~

Objections: ~~Rule 704(b). Rule 702. Rule 403. Speculation. Not qualified. Not relevant and/or not helpful to the jury. Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.~~ Not applicable.

[118]. Accounting principles are conservative in nature.

>Objections: Rule 702. Not relevant and/or not helpful to the hury. Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.

[119]. A company can recognize revenue in a service industry in part when all risk related to the service has passed to the buyer.

>Objections: Rule 702 (not applied to the alleged facts). Not relevant and/or not helpful to the jury. Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.

## From Professor Sack's Report

[120]. A reserve that is overstated and then subsequently used to pay operating expenses in inflated revenue is a "cookie jar" reserve. (This concept was raised on cross-examination).

>Objections: Rule 704(b). Rule 702. Rule 403. Not relevant and/or not helpful to the jury. Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.

[121]. ~~If investors are not satisfied, they can push to have management removed.~~

>Objections: Rule 702. ~~Legal Opinion. Not qualified. Not relevant and/or not helpful to the jury. Legal opinions. Not qualified. Speculation. Timeliness and adequacy. Misconduct. Impossible to~~

~~cross-examine without eliciting an improper opinion.~~ Not
applicable.

[122]. Investors are willing to pay more for a stock if it regularly meets
expectations.

Objections: Rule 704(b). Rule 702. Rule 403. Speculation. Not
qualified. Not Relevant and/or Not Helpful to the Jury. Timeliness
and adequacy. Misconduct. Impossible to cross-examine without
eliciting an improper opinion.

[123]. ~~Management's reputation in the business community can tempt them to
falsify financial statements~~.

Objections: ~~Rule 704(b). Rule 702. Rule 403. Speculation. Not
qualified. Not relevant and/or not helpful to the jury. Timeliness
and adequacy. Misconduct. Impossible to cross-examine without
eliciting an improper opinion.~~ Not applicable.

[124]. Accounting principles are generally conservative.

Objections: Rule 702. Not relevant and/or not helpful to the jury.
Timeliness and adequacy. Misconduct. Impossible to cross-examine
without eliciting an improper opinion.

Sack Government Exhibit 16-A

[125]. As detailed in the attached resume, Professor Sack has been on the faculty of
the Darden Graduate School of Business at the University of Virginia since
1987. Professor Sack has taught courses in financial accounting and

70

reporting, management accounting and business ethics. He has also created and taught a course that explored the relationship between financial accounting, financial policies and the financial marketplace. In 1998, Professor Sack formally retired from the University and was designated Professor Emeritus. Since his retirement, Professor Sack has been teaching and researching accounting-related issues at the Darden School on a part-time basis. Professor Sack is also a coauthor of the text <u>Fundamentals of Accounting for Decision Making</u>.

**Objections: Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.**

[126]. From 1984 through 1987, Professor Sack was the Chief Accountant of the Enforcement Division of the Securities and Exchange Commission ("SEC") in Washington, D.C. From 1956 through 1984, Professor Sack was a member of the professional staff of, and was then a partner of, Touche Ross & Co. Professor Sack held a number of positions in Touche Ross' practice offices and in the firm's executive offices in Chicago and New York.

**Objections: Rule 403 (fact that Mr. Sack was Chief Accountant of the Enforcement Division of the Securities and Exchange Commission). Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.**

[127]. Professor Sack will testify that publicly-held corporations are required to prepare financial statements and narrative disclosures. He will testify that

this information is part of a comprehensive U.S. reporting system that requires public companies to file an annual report (Form 10K) and quarterly reports (Form 10Q) with the U.S. Securities and Exchange Commission ("SEC"). See 17 C.F.R. §§ 240.13a-1 and 13a-13; FADM 227-246. Professor Sack will explain the type of financial information contained in these SEC reports, including balance sheets; income statements; and statements of cash flows. See FADM pgs. 53-64; 17 C.F.R. §§ 210.3-01-02 and 210.10-1(a)-(c). The witness will testify that companies also issue press releases that inform the public concerning the performance of the company. Professor Sack will testify that the reports filed with the SEC, both quarterly and annually, should be prepared in accordance with Generally Accepted Accounting Principles ("GAAP"). See 17 C.F.R. §§ 210.4-01(a)(1). With respect to GAAP, the witness will testify that there are accounting rules that apply to the following areas:  merger reserves, revenue recognition, membership cancellation reserves and the arbitrary increasing or decreasing of revenues or expenses in determining an entity's results. See FADM pgs. 5-9.

**Objections:  Rule 704(b).  Rule 702 (FADM at pages 5-9 does not address whether there are accounting rules that apply to the enumerated areas).  Rule 403.  Legal opinions.  Speculation.  Not qualified.  Not Relevant and/or Not Helpful to the Jury.  Timeliness**

**and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.**

[128].  Professor Sack will testify that the investing public uses the information contained in SEC filings, annual reports and press releases to make investing decisions. He will testify that some companies provide the investing public with guidance about anticipated financial results and that investors and analysts use this guidance, as well as the company's historic financial statements, to value a company's stock. He will testify that stock analysts gather and study the information disclosed by public companies and then use this information to prepare reports and projections or estimates of future earnings, which often contain a recommendation to buy or sell the stock of the company. He will explain that when a company releases favorable information, such as meeting or exceeding analysts' estimates of earnings, that the price of the company's stock tends to increase in value. Conversely, Professor Sack will testify that a company's stock price will often be negatively impacted if a company does not meet the expectations of investors and analysts. Professor Sack will testify that management, in order to meet these expectations, occasionally manipulate reserves (e.g., merger reserves) – sometimes by overstating them – in order to create "cookie jar" reserves that are later used to improperly inflate its earnings. Shareholders do not view the establishment of such a reserve in a negative way because the expenses represented in the reserve are viewed as unusual,

73

one time expenses that are presented in such a way so that investors do not factor the expenses into a calculation of the entity's operating performance. If the reserve is later used to offset expenses or increase revenue then the financial statements no longer reflect the true results of the entity and therefore can mislead investors.

**Objections: Rule 704(b) (Mr. Sack's "background" opinions regarding allegedly improper opinions combined with his views regarding who is responsible). Rule 702 (Mr. Sack has not performed and has not relied on any statistically valid studies in support of his opinions regarding stock market reaction and shareholder views; testimony does not fit alleged facts of case). Rule 403. Legal opinions. Speculation. Not qualified. Not Relevant and/or Not Helpful to the Jury. Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.**

[129]. Professor Sack will testify that the investing public and stock analysts rely on the components of revenues and expenses that make up a company's income statement to evaluate the company's performance. He will testify that they consider, among other things, both positive and negative trends in revenue and expense categories and income from continuing operations versus income generated by unusual events, see FADM pgs. 163-164, which is commonly referred to as "Ongoing Net Income."

74

**Objections: Rule 702. Rule 403. Speculation. Not qualified. Not Relevant and/or Not Helpful to the Jury. Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.**

[130]. Professor Sack will also testify that the investing public and stock analysts rely on management's narrative discussion in the company's SEC filings known as Management's Discussions and Analysis. This discussion requires that company's senior management to disclose any trends, events or uncertainties that has caused, or would cause in the future, reported financial information not to be necessarily indicative of future operating results or of future financial condition. Disclosure is also required of any unusual or infrequent events or transactions or any significant economic changes that materially affected the amount of reported income from continuing operations and, in each case, indicate the extent to which income was so affected. The witness will give examples of items requiring such disclosures, including instances where a company overfunded merger reserves, underfunded other reserves, or changed its revenue recognition practices to inflate its results. Irrespective of whether or not such actions violated GAAP, Professor Sack will testify that a company's management, including its chairman and president, must disclose these items and explain their impact on the reported financial information. See FADM, pgs. 11-14; 17 C.F.R. § 229.303(a) and instructions, ¶ 3.

75

**Objections: Rule 704(b). Rule 702. Rule 403. Legal opinions. Speculation. Not qualified. Not Relevant and/or Not Helpful to the Jury. Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.**

[131]. The witness will also explain that Net Income is defined as the excess of revenue over expenses and that "Income Before One Time Charges" is calculated by excluding unusual costs from net income. See FADM p. 54-55. He will explain how Net Income per share compared to Income Before One Time Charges per share is calculated generally and that this type of information is considered to be significant to investors because it allowed them to gauge the recurring performance of the entity. See FADM pp. 161-64.

**Objections: Rule 702. Rule 403. Legal opinions. Speculation. Not qualified. Not Relevant and/or Not Helpful to the Jury. Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.**

[132]. Professor Sack will testify that a company's financial statements are prepared by, and are the responsibility of, the company's management. ~~He will testify that corporate officers, including the Chief Executive Officer ("CEO"), the President and the Chief Financial Officer ("CFO") have a specific duty and responsibility to ensure that financial statements are~~

76

~~prepared under GAAP and that the related narrative disclosures are~~
~~truthful and accurate.~~ See General Instructions to Form 10-K, item D(2)(a).
Objections: Rule 704(b). Rule 702. Rule 403. Legal opinions.
Speculation. Not qualified. Not relevant and/or not helpful to the
jury. Timeliness and adequacy. Misconduct. Impossible to cross-
examine without eliciting an improper opinion.

[133]. Professor Sack will describe the basic processes employed by companies in
preparing financial statements, including that: 1) management is
responsible for establishing an accounting system that captures all
significant transactions and events and then applies judgments in a
systematic way to produce a set of financial statements; 2) the system is
subject to internal controls to make sure the financial statements are
comprehensive and fair; and 3) one part of the system of controls is a review
of the resulting financial statements by top management of the firm. See
FADM Exhibit 1.1.

Objections: Rule 704(b). Rule 702. Rule 403. Legal opinions.
Speculation. Not qualified. Not relevant and/or not helpful to the
jury. Timeliness and adequacy. Misconduct. Impossible to cross-
examine without eliciting an improper opinion.

[134]. Professor Sack will testify that a company's financial statements must be
audited by an independent CPA. He will testify that the independent
auditor is not responsible for the preparation of financial statements, but

77

instead this is the explicit responsibility of management (see, e.g., Auditing Standards and Procedures at 792. Management is also required to review the financial statements and thereafter represent in a letter to the independent auditor that the financial statements are presented in accordance with GAAP. See Statement on Auditing Standards, AU Section 333.

**Objections: Rule 704(b). Rule 702. Rule 403. Legal opinions. Speculation. Not qualified. Not relevant and/or not helpful to the jury. Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.**

[135]. Professor Sack will testify that : 1) the independent CPA must conduct an audit in accordance with Generally Acceptable Auditing Standards; 2) an audit consists of random tests of material transactions and material items on the company's financial statements; 3) an audit, therefore, is not guaranteed to detect fraudulent activity; and 4) based on the audit, the auditor opines only whether the financial statements are fairly presented in accordance with GAAP. See FADM pp. 9-11.

**Objections: Rule 704(b). Rule 702. Rule 403. Legal opinions. Speculation. Not qualified. Not relevant and/or not helpful to the jury. Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.**

78

[136]. Professor Sack will also testify that the following can pressure management to override the accounting systems and distort the company's financial statements: 1) management's ownership of stock in their company, either directly or through options; 2) the impact of earnings results on the stock price and the stock market's reaction to encouraging or disappointing earnings results; 3) bonuses and salaries tied to earnings; and 4) reputation in the business community.

**Objections: Rule 704(b). Rule 702. Rule 403. Legal opinions. Speculation. Not qualified. Not relevant and/or not helpful to the jury. Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.**

[137]. Professor Sack will testify about the requirements contained in Accounting Principles Board Opinion ("APB") #28 that are relevant to publicly traded companies. Professor Sack will testify that any quarterly entries made to a company's book that are arbitrary and without basis in fact are inappropriate, see APB 28, paragraph 15c, and that quarterly financial statements containing arbitrary entries would not be prepared in accordance with GAAP.

**Objections: Rule 704(b). Rule 702. Rule 403. Legal opinions. Speculation. Not qualified. Not relevant and/or not helpful to the jury. Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.**

[138]. Professor Sack will testify and explain that mergers may be accounted for either as a pooling or as a purchase.  Professor Sack will testify that accounting principles are generally conservative in nature and that applies to the creation of a merger reserve.  See SFAS #5.

**Objections: Rule 702.  Not relevant and/or not helpful to the jury. Timeliness and adequacy.  Misconduct.  Impossible to cross-examine without eliciting an improper opinion.**

[139]. He will testify that when companies merge they very often incur certain costs that are directly attributable the merger.  Such costs, include, but are not limited to, professional fees (e.g., accounting, investment banking, and legal fees), litigation costs, and integrations costs (e.g., costs associated with closing redundant factories, layoffs, and relocating employees).  At the time of the merger, companies are permitted to set up a merger reserve account for these costs.  Professor Sack will testify that the costs a company may accrue as the result of a merger must be based upon a good-faith estimate by management of merger related expenses and not be an arbitrarily derived amount.  This testimony will include the EITF 94-3 addresses what may be included in a merger reserve.  Professor Sack will testify that the company records the merger expense at the time it establishes the reserve, thereby reducing the company's net earnings in the period.  However, as discussed above, investors and analyst do not view the establishment of such a reserve in a negative way because the expenses represented in the reserve are

viewed as unusual, one time expenses that are presented in such a way so that investors do not factor the expenses into the calculation of the company's operating performance.

**Objections: Rule 702. Rule 403. Legal opinions. Speculation. Not qualified. Not relevant and/or not helpful to the jury. Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.**

[140]. Thereafter, in subsequent periods, when the company actually incurs a merger-related expense the cost is charged against the merger reserve account rather an expense account. This difference is important as the company's current net earnings are not reduced by the merger-related expense. Professor Sack will testify that, under GAAP, merger reserves cannot be used to offset costs unrelated to the merger or be used to simply increase revenues. He will testify that any non merger-related use of the merger reserve must be clearly disclosed. Use of the merger reserve to offset such expenses or to increase revenue, if not fully disclosed, would mislead investors and analysts as to the true operating performance of the company.

**Objections: Rule 704(b). Rule 702. Rule 403. Legal opinions. Speculation. Not qualified. Not relevant and/or not helpful to the jury. Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.**

81

[141]. Professor Sack will testify that there are different ways a company may recognize revenue. This testimony will included an explanation of accounting guidelines, which provide that revenue may be recognized when the following criteria are met (See SFAC Statement #5, paragraph 83 and 84): the earning process is complete; the amount of revenue can be seen to be reasonably collectible; and all the risk related to the service has passed to the buyer.

**Objections: Rule 702. Not relevant and/or not helpful to the jury. Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.**

[142]. Professor Sack will testify that it is not appropriate and a violation of GAAP, to move revenue from one recognition category to another (e.g. deferred to immediate) without any basis in fact or any underlying transaction or event. Professor Sack will testify that the movement of revenues between categories impacts a company's income statement and its trends.

**Objections: Rule 704(b). Rule 702. Rule 403. Legal opinions. Speculation. Not qualified. Not relevant and/or not helpful to the jury. Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.**

[143]. Professor Sack will testify that SFAB #5 governs the setting up of a reserve for membership cancellations. See SFAS #5, paragraph 22 and SFAS #48, paragraphs 6-8. Professor Sack will testify that a failure to establish and

82

maintain an adequate reserve, or allowance, based on good faith estimates violates GAAP and that under funding such a reserve has the effect of improperly increasing income.

**Objections: Rule 704(b). Rule 702. Rule 403. Timeliness and adequacy. Misconduct. Impossible to cross-examine without eliciting an improper opinion.**

## CONCLUSION

For the foregoing reasons, the testimony of Robert J. Sack should be excluded from evidence.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)
Robert M. Cary (Bar No. ct24198)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)
rcary@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)

83

(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

**Attorneys for Walter A. Forbes**

Dated:  May 10, 2004 ~~March 2, 2004~~

## CERTIFICATION

I hereby certify that I caused true copies of the foregoing Objections To Proposed Testimony Of Government Expert Robert J. Sack to be delivered by hand sent by first-class mail, postage prepaid, this 2nd 10th day of March May, 2004, to:

John J. Carney, Esq.
Assistant United States Attorney
United States Attorney's Office
  for the District of New Jersey
970 Broad Street, Suite 700
Newark, NJ 07102

Thomas P. Puccio, Esq.
230 Park Ave.
Suite 301
New York, NY 10169

Scott A. Edelman, Esq.
Milbank, Tweed, Hadley
  & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005

Stanley A. Twardy, Esq.
Gary H. Collins, Esq.
Day, Berry & Howard LLP
CityPlace I
Hartford, CT 06103


_____
Robert M. Cary