UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>WALTER A. FORBES. | )<br>)<br>)<br>)<br>) No. 3:02CR264 (AWT)<br>) October 18, 2005<br>)<br>) |

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT WALTER A. FORBES TO STRIKE IMPROPER LAY OPINION TESTIMONY BY STEVEN KERNKRAUT AND TO PRECLUDE FURTHER SUCH TESTIMONY**
(Forbes Retrial Motion No. 16)

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this memorandum in support of his motion for an order striking improper lay opinion testimony by Steven Kernkraut and precluding the government from eliciting similar additional testimony. Mr. Forbes incorporates by reference his memorandum in support of Forbes Retrial Motion *In Limine* No. 3 (filed Sept. 6, 2005) [Docket No. 1663].

ARGUMENT

Under Fed. R. Evid. 701, a lay witness is not permitted to offer opinion testimony that rests "in any way upon scientific, technical, or other specialized knowledge," United States v. Garcia, 413 F.3d 201, 215 (2d Cir. 2005) (quotation omitted & emphasis added), even if the testimony is also based on the witness's personal knowledge. To satisfy Rule 701, the proponent of the testimony must satisfy all three of the rule's foundation requirements: (1) personal knowledge; (2) helpfulness; and (3) not based on scientific, technical, or other specialized

knowledge within the scope of Rule 702. <u>See</u> <u>id.</u> at 211. <u>Showing that the testimony is based on personal knowledge (the first foundation requirement) does not dispense with the final foundation requirement</u>.

As the Second Circuit explained in <u>Garcia</u>, the "purpose of this final foundation requirement is to prevent a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702 and the pre-trial disclosure requirements set forth in Fed. R. Crim. P. 16." 413 F.3d at 215. Here, the government did just that. It evaded the reliability requirements of Rule 702, and it failed to comply with the disclosure requirements of Fed. R. Crim. P. 16(a)(1)(G).[1] The government exacerbated the problem by eliciting testimony from Mr. Kernkraut that a research analyst's job is "to be the resident expert" and "to become a super expert" about the industry and the companies that he covered, Tr. at 98, and that of all the analysts who covered CUC, he was the "ax" or "the most knowledgeable person in the stock." Tr. at 135; <u>see also</u> Tr. at 134-35 ("expert"; "ax"; "first call"; "most influential"); Tr. at 159 ("ax").

"[A] lay opinion must be the product of reasoning processes familiar to the average person in everyday life." <u>Garcia</u>, 413 F.3d at 215. Mr. Kernkraut,

---

1  One of the dangers of permitting expert testimony by a lay witness who has not been qualified as an expert is that the witness may not in fact be qualified, and may offer testimony that is simply not correct. <u>See</u> Tr. at 101-02 (purporting to explain contents of Form 10-K, but erroneously stating that it includes a "<u>statement by the CEO</u> of a company that would describe the business and, again, <u>attest to the accuracy of the numbers</u>" (emphasis added)). A Form 10-K did not, at the time Mr. Kernkraut was covering CUC, include an attestation by the CEO as to the accuracy of the financial statements.

however, offered opinion testimony on numerous topics based on reasoning processes that are unfamiliar to the average person in everyday life. See, e.g., Tr. at 114 (opining that "there are really very few companies in actuality that are able to grow their earn[ings] at a 20 percent rate a year after year with consistency"); Tr. at 110-12, 114 (defining earnings per share); Tr. at 119 (explaining how to set price targets); Tr. at 128-29 (opining that CUC's stock price increase was "phenomenal and I would guess[2] there are probably only 10 or 20 stocks during that time period of the size of CUC International that had that kind of result" and that the chart depicting CUC's stock price increase was "in the top one percentile as one of the most phenomenal charts you'd seen"); Tr. at 166 (opining that number of acquisitions by CUC were "unusual"); Tr. at 168-70 (defining merger reserves); Tr. at 170-71 (opining on importance of merger reserves); Tr. at 172-74 (defining operating earnings, opining on relationship between operating earnings and reported earnings, and opining on importance of operating earnings).

As in Garcia, "the government made no effort to demonstrate that [Kernkraut's] challenged opinion [testimony] was informed by reasoning processes familiar to the average person in everyday life rather than by scientific, technical, or other specialized knowledge." 413 F.3d at 216. Just as the agent's expertise in narcotics trafficking informed the opinion testimony in Garcia, see id., Mr. Kernkraut's self-proclaimed expertise in the analysis of retail companies informed the opinion testimony in this case. Just as the government highlighted the agent's

---

2   This testimony also fails to meet the personal knowledge and helpfulness requirements of Rule 701 because, as the witness admitted, it was a "guess."

experience in intercepting conversations during narcotics investigations in Garcia, id., the government highlighted Mr. Kernkraut's experience and expertise in the retail industry and as an industry analyst in this case. "Based on this experience, certainly outside the ken of the average person," id., Mr. Kernkraut informed the jury, for example, that CUC's earnings growth put it in a group of "very few," Tr. at 114, its stock price increase was "phenomenal," Tr. at 128, the chart depicting its stock price increase was "in the top one percentile as one of the most phenomenal charts you'd seen," Tr. at 129, and its number of acquisitions were "unusual." Tr. at 166. See also Garcia, 413 F.3d at 216 ("When he overheard references to dollar amounts, he could assess their significance in light of his specialized knowledge that the price for a kilogram of cocaine in the New York market at the relevant time was $20,000 to $30,000."). Just as the agent's reasoning process in Garcia was "that of a law enforcement officer with considerable specialized training and experience in narcotics trafficking," id. at 217, Mr. Kernkraut's testimony was that of a retail analyst who had become the self-proclaimed "ax," or king of the super-experts. "As such, his opinion testimony was not admissible under Rule 701." Id. at 217.[3]

Finally, Mr. Kernkraut also offered testimony that failed to meet the helpfulness requirement of Rule 701 when he opined on Mr. Forbes' alleged knowledge and sophistication. See, e.g., Tr. at 144 (opining that "if anyone knew

---

[3] The Second Circuit found that the error in Garcia was harmless. In other cases, however, the admission of lay opinion testimony without satisfying the three foundation requirements of Rule 701 was found to be reversible error. See Forbes Retrial Motion In Limine No. 3 (filed Sept. 6, 2005) [Docket No. 1663] (citing cases).

how the business worked, [Mr. Forbes] knew how the business worked" and that "he knew the key variables. He knew membership growth. He knew the renewal rates."); Tr. at 144 (opining that Mr. Forbes "was very articulate in those matters" relating to key variables). Where, as here, "a witness has fully described what a defendant was in a position to observe, what the defendant was told, and what the defendant said or did, the witness's opinion as to the defendant's knowledge will not be 'helpful' within the meaning of Rule 701 because the jury will be in as good a position as the witness to draw the inference as to whether or not the defendant knew." United States v. Rea, 958 F.2d 1206, 1216 (2d Cir. 1992).

## CONCLUSION

For the reasons set forth above, Mr. Forbes respectfully requests that the Court strike the offending testimony, see, e.g., Tr. at 101-02, 110-12, 114, 119, 128-29, 144, 166, 168-74, provide a limiting instruction and preclude the government from eliciting similar additional testimony.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

                            James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Dated: October 18, 2005

- 6 -

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT WALTER A. FORBES TO STRIKE IMPROPER LAY OPINION TESTIMONY BY STEVEN KERNKRAUT AND TO PRECLUDE FURTHER SUCH TESTIMONY to be sent on October 18, 2005 to the following by hand and via e-mail:

>Michael Martinez, AUSA
>Craig Carpenito, AUSA
>U.S. Department of Justice
>450 Main Street, Room 320
>Hartford, CT 06103

and to the following via e-mail:

>Norman Gross, AUSA
>U.S. Attorney's Office
>District of New Jersey
>401 Market Street
>Fourth Floor
>Camden, NJ 08101

*Barry S. Simon*
Barry S. Simon