UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AWT) |
| | : | |
| v. | : | October 18, 2005 |
| | : | |
| WALTER A. FORBES | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT WALTER A. FORBES' MOTION TO PRECLUDE EVIDENCE, CROSS-EXAMINATION, OR ARGUMENTS CONCERNING (1) THE DECLINE IN CENDANT'S STOCK PRICE ON AND AFTER APRIL 15, 1998 OR (2) INVESTOR LOSS**

(Forbes Retrial Motion *In Limine* No. 24)

INTRODUCTION

Forbes has belatedly[1] moved to preclude evidence that was admitted during the initial trial regarding the decline in Cendant's stock price after April 15, 1998 and the resulting financial losses to the victims ("loss evidence").[2] All of

---

[1] Forbes offers no justification for withholding until the virtual eve of the start of the retrial a motion to preclude evidence that he certainly knew, as soon as the Government announced its intention to retry this case in January 2005, that the Government would seek to offer during the retrial.

[2] The loss evidence from the initial trial showed that, while the fraudulent scheme was in operation, the share price of CUC stock rose dramatically from $1.56 in August 1989 to $32.12 in December 1997. Tr. 6465-66; GX 3058, 3059. On April 15, 1998, following the merger of CUC and HFS to form Cendant, Cendant announced that it had discovered "potential accounting irregularities in the former CUC business unit . . . [and that] it expects to restate annual and quarterly net income and earnings per share for 1997 and may restate certain other previous periods related to the former CUC business." Tr. 254-60; GX 827.

Cendant further disclosed that, based on then available information, the effect on its 1997 results was expected to be a
(continued...)

Forbes' arguments in support of this motion will be eminently familiar to the Court, as all were advanced by Forbes and Shelton in opposition to the Government's Motion *in Limine* filed before the initial trial.  <u>See</u> Government's Motion *in Limine* and Mem. of Law, Docket Nos. 454 and 455, filed January 13, 2004; Forbes' Mem. in Opposition, Docket No. 470, filed Feb. 9, 2004; Shelton's Mem. in Opposition, Docket No. 469, filed Feb. 9, 2004.  That motion sought permission to introduce evidence of the precipitous drop in Cendant's stock price following disclosure of the fraud, and the corresponding loss to Cendant's shareholders, both as evidence of Forbes' and Shelton's intent to defraud, and as proof of the materiality of the conspirators' false statements which fraudulently inflated Cendant's and CUC's earnings during the life of the conspiracy.  Although the Court did not admit the loss evidence as proof of intent to defraud, it rejected all of Forbes' present arguments and held that the evidence was admissible to prove materiality.  Tr. 6.

By rehashing arguments that were previously rejected by

---

[2](...continued)
reduction in net income prior to restructuring and unusual charges of approximately $100 to $115 million and earnings per share of 11 to 13 cents.

The price of Cendant's stock dropped precipitously following disclosure of the fraud.  On April 16, 1998, the day following the disclosure, the price of Cendant's stock fell 47%, from $35 and 5/8 per share, to $19 and 1/16 per share.  Tr. 260, 1461; GX 3058, 3059; <u>see</u> <u>also</u> <u>In re Cendant Securities Litigation</u>, 264 F.3d 201, 221 (3d Cir. 2001).

this Court, Forbes is again effectively seeking reconsideration of this Court's prior rulings, even if his motion is not expressly denominated as such.  See United States v. Berger, 2002 WL 273114, *1 (S.D.N.Y., Feb. 26, 2002)(denying a motion to dismiss which "effectively asks for reconsideration of an argument that the Court thoroughly considered and rejected when it ruled on" a prior motion seeking the same relief, where the defendant had failed "to demonstrate controlling law or factual matters which the court overlooked and that might reasonably be expected to alter" the prior disposition).  Forbes declines to even mention the demanding standard for reconsideration, much less meet that standard.  See Jordan (Bermuda) Investment Co., Ltd. v. Hunter Green Investments Ltd., 2003 WL 21263544, *3 (S.D.N.Y., June 2, 2003)(denying reconsideration where the moving party "failed to meet [the applicable] standard by neither pointing to controlling decisions or data that the court overlooked nor showing that reconsideration is necessary in order to correct a clear error or prevent manifest injustice")(internal punctuation and citations omitted).  For that reason alone, this Court can reject Forbes' present motion out-of-hand.  For the convenience of the Court, the Government will reiterate herein the reasons why Forbes' motion to exclude the loss evidence is meritless.

**ARGUMENT**

**I.  Forbes has failed to sustain his heavy burden of demonstrating that this Court should reconsider and reverse its prior determination that the loss evidence is admissible without accompanying expert testimony.**

Forbes contends, as he did before the first trial (see Forbes' Memorandum in Opposition to Government's Motion *in Limine*, Docket 470, filed Feb. 9, 2004), that the Government's loss evidence is inadmissible in a criminal prosecution absent expert testimony to apportion the amount of the loss caused by the fraud.  Once again, however, he fails to cite a single case which remotely so holds.[3]  Rather, he again relies wholly on inapposite caselaw regarding the plaintiff's obligation in a private lawsuit for money damages under 15 U.S.C. § 78j(b) and Rule 10b-5 to prove that they sustained out-of-pocket losses that were caused by the fraudulent conduct.  Forbes' Mem. in Support of Retrial Motion *in Limine* No. 24 to Preclude Evidence of Decline in Stock Price or Investor Loss ("FM") 3-4.[4]

---

[3]  Forbes again cites United States v. Russo, 74 F.3d 1383 (2d Cir. 1996), FM 3, as he did when this issue was previously addressed before the first trial.  That case does not address whether, much less hold that, expert testimony is required to prove loss in a criminal prosecution for securities fraud.  74 F.3d at 1389.  Nor does it address whether loss evidence is admissible in a criminal prosecution for securities fraud absent expert testimony to apportion the loss to the charged fraud and other factors.

[4]  E.g. In re Northern Telecom Ltd. Securities Litigation, 116 F.Supp.2d 446, 456-62 (S.D.N.Y. 2000); In re Executive Telecard, Ltd. Securities Litigation, 979 F.Supp. 1021, 1025
(continued...)

As the Government previously explained, Forbes' arguments fail on at least two grounds.  Unlike a private plaintiff, the Government is not required to prove "damages" or indeed any out-of-pocket loss to any victim in a criminal prosecution for violation of the federal securities laws. Gutstein v. United States, 86 F.3d 1162, 1996 WL 266493, *2 (9th Cir., May 17, 1996)(unpublished); see United States v. Newman, 664 F.2d 12, 16-17 (2d Cir. 1981)(unlike a private action for damages, the Government is not required, in a criminal prosecution for violation of Rule 10b-5, to prove that a buyer or seller of securities sustained damages), overruled on unrelated grounds as recognized in Ingber v. Enzor, 841 F.2d 450, 454 (2d Cir. 1988); United States v. Naftalin, 441 U.S. 768, 773 & n.6 (1979)(same for criminal violations of 15 U.S.C. § 77q(a)(1)).[5]

---

[4](...continued)
(S.D.N.Y. 1997); In re Warner Communications Securities Litigation, 618 F.Supp. 735, 744 (S.D.N.Y. 1985).  None of those cases even addresses the issue presented here: the admissibility of loss evidence, without accompanying expert testimony, in a criminal case charging securities fraud where there is a "fraud on the market."

[5]  For that reason, Dura Pharmaceuticals, Inc. v. Broudo, 125 S.Ct. 1627 (2005), the only case cited by Forbes which was not previously cited in his prior submissions on this issue, does not advance his claim.  Indeed, that case demonstrates why the requirements for a private lawsuit for securities fraud seeking money damages do not necessarily apply to criminal prosecutions for the same kind of conduct.  In Dura, the Court held that, in private action for securities fraud seeking money damages, an inflated purchase price will not by itself constitute or proximately cause the relevant economic loss needed to allege and
(continued...)

Additionally, the Second Circuit has apparently never held that expert testimony is required to prove damages, even in a civil securities fraud case, and at least two Courts of Appeals have squarely held to the contrary. Wortley v. Camplin, 333 F.3d 284, 296 (1st Cir. 2003); Rowe v. Maremont Corp., 850 F.2d 1226, 1240-42 (7th Cir. 1988). As the Rowe Court explained, the jury's damage calculation was adequately based on the stock's "performance in the market for a reasonable time after" the defendant publicly announced its intention to make a tender offer. 850 F.2d at 1240. Evidence of such stock price performance is precisely what the Government has proffered here.[6]

---

[5](...continued)
prove "loss causation." 125 S.Ct. at 1631. The Court noted that a private action for securities fraud was like a common-law action for deceit and misrepresentation, which requires pleading and proof of loss causation. Id. at 1631-33 ("The statute thereby makes clear Congress' intent to permit private securities fraud actions for recovery where, but only where, plaintiffs adequately allege and prove the traditional elements of causation and loss."). By contrast, as shown above, the Government need not prove any loss in this criminal prosecution, much less "loss causation."

The Court in Dura did not even address, much less hold that evidence of stock price loss was inadmissible in a private action for securities fraud absent expert testimony. The Court obviously had no occasion to discuss evidentiary issues in a criminal prosecution for securities fraud, such as Forbes presents in his present motion *in limine*.

[6] Some courts have occasionally stated in broad generalities that, in a private securities fraud case, expert testimony is necessary to prove the existence as well as the amount of damages caused by the fraudulent conduct. Warner Communications, 618 F.Supp. at 744. None of those cases hold,
(continued...)

Second, it is one thing to say that expert testimony is helpful or even required to sustain a private plaintiff's burden of proving that he sustained a particular amount of out-of-pocket loses that were caused by the charged fraud.  It is quite another to argue, as Forbes would have it, that evidence of a sharp stock price decline that follows quickly on the heels of the public disclosure of the fraud is <u>inadmissible</u> unless accompanied by expert testimony regarding the causal nexus between the fraud and the price decline.  Forbes does not cite a case which so holds, and logic and common sense militate against such a requirement.[7]

---

[6](...continued)
however, that a private action for securities fraud could not be maintained in the absence of such expert testimony, and dismissed the complaint for want of such testimony.  More importantly, none addressed a factual situation comparable to that presented here, where cooperating witnesses will testify that the conspirators took many affirmative steps to fraudulently overstate the Company's income in order to inflate the price of the stock, and a sharp price decline followed closely on the heels of the public revelation of the fraud.

[7] The Government previously offered the following analogy to illustrate this point:

> In a murder case in which the victim was repeatedly stabbed to death and shed copious amounts of blood, evidence that the defendant was seen shortly after the murder with what appeared to be red stains on his clothes is certainly relevant to prove his guilt.  This is so even if the prosecution was unable to adduce expert testimony to prove that the red stains were blood stains, that the blood was human blood, that the human blood matched the blood type of the victim, or that DNA analysis conclusively demonstrated that the blood came from the victim.
>
> The failure of the Government to present expert testimony to prove any of those facts diminishes the probative
(continued...)

Revelation of an accounting fraud that has substantially inflated earnings for several years will of necessity depress the stock price.  A lay jury is fully capable of understanding the reason for that without the benefit of expert testimony: rational investors are reluctant to trust their investments to companies whose financial statements are admittedly and patently false.

Although an expert might be needed to quantify the precise amount of the loss that is attributable solely to the fraud, that precision is not required here where the Government need not prove any amount of recoverable loss attributable to the fraud.  Whether the fraud caused the entire loss or some smaller percentage of it is therefore simply not the point.  As the Indictment charges, Count 1, ¶ 62, it is the magnitude of the loss ("billions of dollars," not millions, or hundreds of millions), not the precise amount of the loss, that is relevant to the materiality of the false statements.  The greater the loss that followed disclosure of the fraud, the stronger the showing

---

⁷(...continued)
force of the evidence that the defendant had red stains on his clothes, but does not render the evidence inadmissible.  This is because a lay juror, applying his common sense without the benefit of expert testimony, knows that a person who repeatedly stabs another is likely to end up with the victim's blood on his person.  That red stains on the defendant's clothes shortly after the murder is insufficient, standing alone, to prove guilt beyond a reasonable doubt does not render the evidence inadmissible.  Likewise here, lay jurors will be able to appreciate, without the benefit of expert testimony, the causal relationship between the charged scheme and the stock price drop immediately after the scheme was disclosed.

of materiality.

Although the loss evidence would be irrelevant to this case if the loss had no relationship to the charged crimes, the Government has proffered sufficient evidence of such a relationship.  The close temporal proximity (24 hours) of Cendant's disclosure of the fraud and the sharp price decline, the magnitude and alacrity of the price decline, the logical relationship between disclosure of the fraud and the decline in the stock price, and the express purpose of the charged fraudulent scheme to inflate the stock price, together create a reasonable inference that the disclosure of the fraud was "a substantial factor" which contributed to the loss.  Rowe, 850 F.2d at 1242 (movement of stock price in close proximity to defendant's announcement of its intention to make a tender offer for the stock "raises the inference that the tender offer was a substantial factor in [the issuer's] increased price").  Because the proffered evidence supports a reasonable inference that the charged fraud helped cause the loss, a jury finding to that effect would hardly amount to "rank speculation," as Forbes contends.  FM 5.[8]

---

   [8] Because the proffered evidence supports a reasonable inference regarding a relevant fact, the "speculation" cases cited by Forbes, FM 5, are inapposite. Niagra Mohawk Power Corporation v. Jones Chemical Inc., 315 F.3d 171, 177 (2d Cir. 2003) (refusing to draw an inference where there was "no evidence" to support it); Radiation Dynamics, Inc. v. Goldmuntz,
(continued...)

**II. Forbes has failed to sustain his heavy burden of demonstrating that this Court should reconsider and reverse its previous determination that any possible prejudicial effect from the loss evidence would substantially outweigh its probative value pursuant to Fed. R. Evid. 403.**

Forbes again meritlessly argues, as he did when this issue was previously addressed by the Court, that the supposedly prejudicial effect of the loss evidence will substantially outweigh it probative effect, and should therefore be excluded by operation of Fed. R. Evid. 403. To the contrary, evidence of the rise and fall of the stock price should be admitted because it is highly relevant to prove the materiality of various statements and omissions of the conspirators, and materiality is an element of securities fraud and the crime of making false statements in a report required to be filed with the SEC. S.E.C. v. Monarch Funding Corp., 192 F.3d 295, 308 (2d Cir. 1999)(materiality is an element of securities fraud under § 10j(b) and Rule 10b-5); United States v. Natelli, 527 F.2d 311, 319 (2d Cir. 1975)(same for the crime of making false statements to the SEC in violation of 15 U.S.C. § 78ff(a)).

In a prosecution for securities fraud, non-disclosed information is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by

---

⁸(...continued)
464 F.2d 876, 885-86 (2d Cir. 1972)(affirming directed verdict where the plaintiff "failed to produce a *scintilla* of evidence or any inference which could be drawn from the evidence inculpating the . . . defendants on any fraud").

the reasonable investor as having significantly altered the total mix of information made available." Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988)(internal quotation marks omitted). It is hard to imagine more compelling proof that accurate information about Cendant's and CUC's actual (as opposed to the fraudulently inflated and reported) earnings was "material" to the investing public than that the price of Cendant stock fell by 47% on the day after the fraudulent scheme was disclosed. See United States v. Bilzerian, 926 F.2d 1285, 1298 (2d Cir. 1991)(in assessing the materiality of certain statements, "stock movement is a factor the jury may consider relevant.") Because the materiality of false statements and omissions in a securities fraud case can be shown by movement in the price of the stock, this Court properly permitted the Government to prove during the initial trial, and should it permit it prove during the retrial, the degree of the effect of the false statements on the stock price.

Forbes again contends, as he did before the initial trial, that the loss evidence "does not establish the materiality of any of the false statements charged in the indictment." FM 6 (emphasis added). The argument improperly conflates the principles of relevant evidence and sufficient evidence. "Though it is a common error, relevance should never be confused with sufficiency of proof required to enable a party to get to the jury on an issue." 2 Weinstein's Federal Evidence, § 401.05

11

(2d ed. 2000). Because "stock movement is a factor the jury may consider relevant" in determining whether an event that precedes the movement is material, Bilzerian, 926 F.2d at 1298, the loss evidence is relevant and admissible even if it does not conclusively prove materiality. United States v. Schultz, 333 F.3d 393, 416 (2d Cir. 2003)("Evidence need not be conclusive in order to be relevant.").

Forbes also again argues that the loss evidence should be excluded because "the Government has ample evidence at its disposal to prove the magnitude of the alleged fraud." FM 10. This Court should again reject this argument. Forbes has not offered to stipulate even that the public statements regarding CUC's earnings described in the indictment were false, much less that they were materially false. The Government should not be prevented from presenting all available evidence that supports a contested element of the charged crimes merely because the Government may have "other" evidence which may or may not be sufficient to sustain its burden of proof. United States v. Mohr, 318 F.3d 613, 618-19 (4th Cir. 2003).

By contrast to the compelling probative value of the loss evidence to prove materiality, Forbes' gossamer claims of improper prejudice fail to satisfy the Rule 403 requirement that such prejudice must "substantially outweigh" probative value, much less the heavy burden of demonstrating error needed to

obtain reconsideration and reversal. Thus, Forbes argues, FM 8, as he did previously, that the loss evidence would supposedly invoke the widely publicized investment losses caused by accounting fraud at other corporations such as Enron and Worldcom. Admission of the loss evidence during the first trial obviously did not cause the jurors to convict Forbes based on improper prejudice. As during the first trial, the Government will present no evidence or argument during the retrial of misconduct at other corporations. Negative publicity about crime in general or particular kinds of crime should have little if any impact on a court's evidentiary rulings.[9] The extensive *voir dire* already conducted in this case, along with appropriate cautionary instructions, will substantially reduce any possible risk that the loss evidence will cause the jury to decide this case based on an emotional response.[10] Thus the retrial jury,

---

[9] As the Government previously pointed out, the potential for evidence about corporate crime to inflame the jury has likely been reduced by the sheer volume of recent news stories on the subject. United States v. Adams, 759 F.2d 1099, 1109 (3d Cir. 1985) (rejecting Rule 403 challenge in a drug-trafficking case to evidence of the seizure of semi-automatic firearms and other "weapons of extreme violence [that] looked like they were taken from the set of a Hollywood gangster movie," because "it is well known that continued exposure to even emotion-arousing objects tends to reduce their effect")(quoting United States v. Cahalane, 560 F.2d 601, 607 (3d Cir. 1977)).

[10] Forbes relies on the same inapposite caselaw that informed his previous unsuccessful efforts to ban the loss evidence. For instance, in Old Chief v. United States, 519 U.S. 172 (1997) the defendant offered to stipulate to the existence of
(continued...)

just like the jury from the initial trial, can be trusted to adhere to a limiting instruction to consider the loss evidence only for the proper purpose for which it is offered.[11]

---

[10](...continued)
an element of the offense as to which the prejudicial evidence (the nature of the defendant's prior criminal conviction) was offered by the Government. 519 U.S. at 175-76. "Such a concession . . . will sometimes call for the exclusion of the evidence offered to prove [the] point conceded by the opponent." Id. at 184, citing Advisory Committee Notes to Fed. R. Evid. 401. By contrast, Forbes has not offered to stipulate even that the relevant statements were false, much less materially false.

United States v. Blackstone, 56 F.3d 1143 (9th Cir. 1995) held that the district court erred by admitting, in prosecution for unlawful gun possession, evidence that the defendant also possessed recipes for the preparation of methamphetamine. The Ninth Circuit noted that, unlike the possession of chemicals or laboratory equipment, the possession of recipes "prove[d] very little" about the defendant's intent to manufacture methamphetamine. 56 F.3d at 1146. Here, by contrast, the loss evidence "proves very much" about materiality.

Other cases cited by Forbes (again) involved evidence that was far more inflammatory than the unremarkable fact that defendant who engaged in a financial fraud scheme caused their intended victims to lose money. Cf. United States v. Lachman, 48 F.3d 586, 590-93 (1st Cir. 1995)(minimally relevant evidence that defendants sold machinery to a foreign country which could have been used to manufacture weapons of mass destruction); United States v. Lentz, 58 Fed.Appx. 961, 2003 WL 253949 (4th Cir., Feb. 6, 2003) (unpublished) (equally divided court affirming the district court's exclusion of defendant's statements that he would kill his ex-wife and "get away with it" like O.J. Simpson did).

[11] Forbes again relies on cases that have no bearing on his contention that the jury will be unable to abide by this Court's limiting instruction regarding the purpose of the loss evidence. Cf. Throckmorton v. Holt, 180 U.S. 552 (1901)(opinion testimony that was presented to the jury but later withdrawn); United States v. King, 911 F.Supp. 113 (S.D.N.Y. 1995)(side-bar discussion of inadmissible evidence); United States v. Jackson,
(continued...)

Forbes again speculates, FM 8, as he did previously, that the jury might flatly violate the Court's instructions and convict Forbes, not because the evidence proved his guilt, but in order to "punish high level corporate executives for shareholder losses." Of course, the jury from the first trial declined to convict Forbes, so his prior self-serving prophecy on this score was negated. The negligible risk that the jury will convict (or acquit) for some improper purpose exists in every case and is not an independent ground to exclude relevant evidence.

Finally, absent proof that the stock price declined upon disclosure of the fraud, Forbes will be able to create the misleading appearance that any increases in the price of the stock helped, rather than hurt the shareholders.[12] Exclusion of the loss evidence would also leave the jury with the erroneous impression that the conspirators' false statements had no effect on the stock price. This would permit Forbes to plausibly argue that, since there was no evidence that the charged fraud had

---

[11](...continued) 418 F.2d 786 (6th Cir. 1969)(evidence that should have been suppressed). When evidence that is admissible for one purpose carries a risk that it will be improperly considered for another, limiting instructions are generally sufficient to dispel the risk of such improper use. Richardson v. Marsh, 481 U.S. 200, 210 (1987).

[12] Indeed, one of Forbes' lawyers made precisely this point in her oral argument in support of Forbes' Pre-trial Motion 27, when she claimed that a scheme to increase the price of the Company's stock would enure to the benefit of all shareholders ("a rising tide raises all boats," N.T. 3/3/04, p. 66).

achieved its intended goal, there must have been no fraud.

The Court should prevent the jury from being misled in this manner.  See United States v. DeCastris, 798 F.2d 261, 265 (7th Cir. 1986)(the risks of admitting potentially prejudicial evidence "are not one-sided," and a jury forced to assess a defense claim without being able to assess contrary evidence could "have been led to error").  Exclusion of the loss evidence will inform the jury of only the rise of CUC's stock, and cover-up the fall.  It would tell only a misleading half of the story.  As during the initial trial in this case, this Court should admit the entire story of the rise and fall.

## CONCLUSION

For all of the foregoing reasons, the Government respectfully requests that this Court deny Forbes' Retrial Motion *in Limine* No. 24.

                                   Respectfully submitted,

                                   CHRISTOPHER J. CHRISTIE
                                   Special Attorney
                                   U.S. Department of Justice


                              By:  NORMAN GROSS
                                   MICHAEL MARTINEZ
                                   CRAIG CARPENITO
                                   Special Attorneys
                                   U.S. Department of Justice

Dated: October 18, 2005
Hartford, Connecticut

16

CERTIFICATE OF SERVICE

      The undersigned certifies that on this day I caused to be served copies of the foregoing upon the following by hand delivery:

Barry S. Simon, Esq.
Williams & Connolly LLP

                                                  DEBRA ELLIOTT
                                                U.S. Department of Justice

Dated: October 18, 2005
       Hartford, Connecticut