UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : Case No.: 3:02 CR 264 (AWT) |
| WALTER A. FORBES, Defendant. | : October 18, 2005 |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**JOINT REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**CENDANT CORPORATION'S AND JOHN H. CARLEY'S MOTIONS TO**
**QUASH THE SUBPOENAS SERVED BY DEFENDANT WALTER A. FORBES**

Non-Parties Cendant Corporation ("Cendant") and John H. Carley, Esq. respectfully submit this joint reply memorandum of law in further support of their motions to quash three of the latest subpoenas served by Defendant Walter A. Forbes: the August 17, 2005 and September 13, 2005 document subpoenas served on Cendant (the "August 17th Cendant Subpoena" and the "September 13th Cendant Subpoena," respectively) and the September 13, 2005 subpoena served on Cendant attorney John H. Carley seeking trial testimony (the "Carley Subpoena").

In his opposition papers, Mr. Forbes concedes that all of the requests in the September 13th Cendant Subpoena have previously been quashed and that he has no new arguments that would justify this Court reversing itself. See Opp'n of Walter A. Forbes to Joint Mot. of Cendant Corporation and John H. Carley to Quash the Subpoenas Served By Defendant Walter A. Forbes ("Forbes Brief") at 1-2. That concession resolves that aspect of this motion, and the subpoena should be quashed in its entirety.

With respect to the August 17th Cendant Subpoena and the Carley Subpoena, Mr. Forbes argues that they are necessary to obtain information to demonstrate Cendant's alleged bias against him. See Forbes Brief at 2. But nothing in his opposition papers changes the facts that (i) this Court has already denied similar requests for information about Cendant's alleged bias; and (ii) the sought-after information is cumulative of information already in Mr. Forbes' possession. Mr. Forbes sought the same information during the first trial, and this Court has never ordered Cendant to provide it. There is no reason to change course now.

## I.    MR. FORBES SHOULD NOT BE PERMITTED TO ARGUE THIS MOTION *EX PARTE* (*RESPONDING TO FORBES BRIEF AT 1*).

Mr. Forbes claims to provide in a separate *ex parte* submission to the Court his explanation for why he needs the information called for by these subpoenas. See Forbes Brief at 1. It is ironic that Mr. Forbes, who is worth hundreds of millions of dollars and is represented by a legal team costing tens of millions of dollars, cites Federal Rule Criminal Procedure 17(b) in support of his *ex parte* submission[1] – a provision that by its terms is designed to protect the interests of *indigent* defendants. See United States v. Hart, 826 F. Supp. 380, 381 (D. Colo. 1993) (*ex parte* provision of Rule 17(b) does not apply to financially-able defendants seeking materials pursuant to Rule 17(c)). In any event, the case law governing Mr. Forbes' request for an *ex parte* application confirms the exacting standard

---

[1] See Oct. 11, 2005 Mem. Of Law in Supp. of Mot. For Permission to File the Attached Supplemental Mem. In Opp. To Mots. To Quash Rule 17(c) Subpoenas Filed by Cosmo Corigliano, Kramer Levin Naftalis & Frankel LLP, Anne Pember, Casper Sabatino, Kevin Kearney, Cendant and Fried, Frank, Harris, Shriver & Jacobson LLP *Ex Parte* and Under Seal, at 1-2.

a court must apply before accepting *ex parte* submissions.  See <u>United States v. Urlacher</u>, 136 F.R.D. 550, 555-58 (W.D.N.Y. 1991) (denying defendant's request to seal papers relating to motion for Rule 17(c) subpoena because, among other reasons, "[t]here is a presumption in favor of a First Amendment right of access to pretrial criminal proceedings" (citing <u>Press-Enterprise Co. v. Superior Court</u>, 478 U.S. 1, 8-9, (1986), <u>In re New York Times Co.</u>, 828 F.2d 110, 114 (2d Cir. 1987), and <u>United States v. Gerena</u>, 869 F.2d 82, 85 (2d Cir. 1989))).  As Mr. Forbes himself argued in seeking to discover the Government's *ex parte* communications with the Court:

> There is no question but that <u>ex parte</u> communications are "rarely, if ever, looked upon with favor."  <u>Penthouse Int'l Ltd. [v. Dominion Fed. Sav. & Loan Ass'n]</u>, 855 F.2d 963, 987 (2d Cir. 1988.  Indeed, the Second Circuit has stated that an exception to the rule against <u>ex parte</u> communications could be made "only in cases in which there is a compelling need to maintain the secrecy of certain evidence, no alternative means of meeting that need exist other than <u>ex parte</u> submission, and the court carefully limits its sealing order only to materials genuinely implicating the compelling need."  <u>United Sates v. Abuhamra</u>, 389 F.3d 309, 321 (2d Cir. 2004)…

Aug. 26, 2005 Reply Mem. In Supp. of Mot. of Walter A. Forbes to Obtain a Transcript of the Court's <u>Ex Parte</u> Communications with Government Counsel (Doc. 1657) at 1.

Beyond the fact that the public has a right to know what is happening in its courtroom during a criminal trial, Mr. Forbes cannot meet the standards that he himself cites.  He contends that he needs to make his arguments in secret because litigating the matter in open court would somehow reveal his trial strategy.  See Forbes Brief at 1.  Because Cendant is not privy to the *ex parte* submission's contents, it is of course impossible to address them specifically.  Nevertheless it is difficult to imagine that Mr. Forbes' submission could reveal a

3

novel legal theory during the re-trial that is not already obvious in the record in this case, where there has already been a seven-month trial on these same charges and there is a parallel civil case with extensive discovery – including hundreds of depositions in which Mr. Forbes' counsel has been an active participant.  See United States v. Daniels, 194 F.R.D. 699, 700 (D. Kan. 2000) (refusing to seal motion in support of Rule 17(c) subpoena in part because "substantially similar" arguments in support of the motion had already been made in publicly-filed motion papers).

## II.    THE AUGUST 17TH CENDANT SUBPOENA SHOULD BE QUASHED (*RESPONDING TO FORBES BRIEF AT 2-4*).

Regardless of the contents of Mr. Forbes' *ex parte* submission, his subpoenas should be quashed.  As Mr. Forbes concedes, the documents sought by the August 17th Cendant Subpoena fall into two categories:  (i) legal fees advanced by Cendant to various potential trial witnesses, and (ii) Scott Forbes' severance from Cendant.  See Forbes Brief at 2, 4.  Mr. Forbes argues that the fact that Cendant advanced legal fees demonstrates Cendant's bias against him.  See Forbes Brief at 3.  This argument fails for a number of reasons.  First, this Court has already denied requests for such information about Cendant's alleged bias.  See Tr. at 4685-86 (attached as Exhibit 8 to Joint Mem. of Law in Supp. of Cendant Corporation's and John H. Carley's Mots. To Quash the Subpoenas Served by Defendant Walter A. Forbes ("Cendant and Carley Moving Brief")).  Mr. Forbes attempts to distinguish this ruling by claiming that it related to alleged bias evidence other than legal fees.  See Forbes Brief at 2-3.  But Mr. Forbes offers no principled reason why the analysis would be different for legal fees

than it was for other evidence about Cendant's purported bias. And in fact, this Court has never ordered Cendant to produce any documents relating to legal fees, despite the fact that Mr. Forbes made these same requests during the first trial.[2] Mr. Forbes also does not address in his opposition the fact that Cendant has advanced millions of dollars for *Mr. Forbes' own legal fees*, a fact that belies his contention that the advancement of such fees reflects Cendant's bias against him. See Cendant and Carley Moving Brief at 9.

In addition, it is clear that documents regarding legal fees would be cumulative of materials that are already in Mr. Forbes' possession. Mr. Forbes already possesses information from the first trial about the legal fees advanced for certain witnesses – information which Mr. Forbes never used. The fact that Cendant may have advanced additional legal fees after the first trial has no bearing on Mr. Forbes' bias argument.

Discovery related to Scott Forbes' severance from Cendant is equally inappropriate. First, simply because Scott Forbes is on the government's witness list does not mean that he necessarily will testify. Walter Forbes' requests therefore are not ripe until Scott Forbes takes the stand. Second, even if Scott Forbes does testify, it is difficult to fathom how documents regarding his departure from Cendant seven years after the events charged in the indictment have any bearing on this case. Walter Forbes claims that such information is relevant to show bias (see Forbes Brief at 4), but as explained above, this Court has already denied similar requests for information about Cendant's – and therefore Scott Forbes' – alleged bias.

---

[2] The fact that this Court held during the first trial that evidence regarding legal fees advanced by Cendant may be admissible (see Forbes Brief at 3) does not mean that Mr. Forbes is entitled to compel Cendant to produce additional documents on this topic pursuant to a Rule 17(c) subpoena.

**III.    THE CARLEY SUBPOENA SHOULD BE QUASHED (*RESPONDING TO FORBES BRIEF AT 4-5*).**

Mr. Forbes claims to seek Mr. Carley's testimony because he "appears to have been responsible for either approving or denying requests for reimbursement of legal fees by former Cendant officers, directors and employees." Forbes Brief at 4-5. This request is inappropriate for at least a couple of reasons. As explained above, Mr. Forbes is not entitled to any additional information about Cendant's advancement of witnesses' legal fees. Seeking testimony from Mr. Carley on this peripheral topic would be cumulative of the documents that Mr. Forbes already has in his possession and that he is seeking in the August 17th Cendant Subpoena. See discussion *supra* at 4. In any event, asking questions about these topics of Mr. Carley, the Cendant corporate legal officer responsible for overseeing litigation arising from the accounting irregularities will almost inevitably intrude upon the attorney-client privilege, the work-product doctrine, or both. It is for this reason that courts strongly disfavor compelling attorneys to testify. See Cendant and Carley Moving Brief at 11 (citing cases). Mr. Forbes claims that because he will focus on Mr. Carley's actions with respect to third parties, there is no risk of eliciting privileged information. See Forbes Brief at 5, n.1. But those actions were informed by consultations with Cendant personnel and/or influenced by litigation strategy decisions. Considering the irrelevance of Mr. Carley's proposed testimony, there is simply no justification for compelling him to appear.

## CONCLUSION

For all of the foregoing reasons, and for all of the reasons set forth in the Cendant and Carley Moving Brief, Cendant and Mr. Carley respectfully request that all three subpoenas be quashed in their entirety.

                                       CENDANT CORPORATION and JOHN H. CARLEY

                                       By: /s/ Robert E. Kaelin
                                             Francis J. Brady – ct04296
                                             fbrady@murthalaw.com
                                             Robert E. Kaelin – ct11631
                                             rkaelin@murthalaw.com
                                             C. Donald Neville – ct24001
                                             dneville@murthalaw.com

                                       Murtha Cullina LLP
                                       CityPlace I – 185 Asylum Street
                                       Hartford, Connecticut 06103-3469
                                       Telephone:  (860) 240-6000
                                       Facsimile:  (860) 240-6150

*Of Counsel:*
Peter W. Tomlinson – ct24714 *(Visiting Attorney)*
pwtomlinson@pbwt.com
Gregory L. Diskant – ct13146 (*Visiting Attorney*)
gdiskant@pbwt.com
Saul B. Shapiro – ct24713 (*Visiting Attorney*)
sshapiro@pbwt.com

PATTERSON, BELKNAP, WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York  10036
(212) 336-2000
fax:  (212) 336-2222
Its Attorneys

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing was delivered via First Class Mail, unless otherwise specified, October 18, 2005 to:

Counsel For The U.S. Government

Michael Martinez, Esq.
United States Attorney'sOffice
District of New Jersey
c/o  Federal Building
    450 Main Street, Rm. 320
    Hartford, CT 06103

Counsel For Walter A. Forbes

Barry Simon, Esq.
Williams & Connolly LLP
c/o  Residence Inn
    942 Main Street
    Hartford, CT  06103

James T. Cowdery, Esq.
Cowdery, Ecker & Murphy, LLC
750 Main Street
Hartford, CT 06103

       /s/ Robert E. Kaelin
Robert E. Kaelin