UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>WALTER A. FORBES. )<br>)<br>) | No. 3:02CR264 (AWT)<br>October 19, 2005 |

**OPPOSITION OF WALTER A. FORBES TO THE MOTION OF
THE SECURITIES AND EXCHANGE COMMISSION TO QUASH
TWO SUBPOENAS TO ITS RECORDS CUSTODIAN**

As with the Securities and Exchange Commission's ("SEC") prior motion to quash subpoenas seeking trial testimony from six current and former SEC employees, the SEC's current Motion to Quash fails to acknowledge the well established principle of law that a party may demonstrate a witness' bias through extrinsic evidence. In particular, the SEC's Motion fails to recognize that because Mr. Corigliano's plea agreement required him to provide complete and accurate information to the SEC upon request, documents evidencing his failure to do so are relevant and admissible to demonstrate that Mr. Corigliano has an incentive to now fabricate testimony in hopes that the government will not act upon Mr. Corigliano's breach. The SEC's Motion to Quash should be denied.

## BACKGROUND

At issue are two subpoenas served upon the SEC: one "renewal" subpoena that Mr. Forbes has acknowledged from the outset covers requests previously quashed by the Court, but which is necessary for purposes of preserving

his rights with regard to the retrial, and one subpoena containing eleven specific requests relating to the impetus for, and terms of, Mr. Corigliano's settlement with the SEC.

With regard to the "renewal" subpoena -- the subpoena containing thirty-seven calls -- Mr. Forbes relies on the arguments made in opposition to the SEC's motions to quash during the first trial. As explained in detail in Mr. Forbes' Opposition to the Motion to Quash filed by Cosmo Corigliano and Kramer Levin, Mr. Forbes was required to re-serve these subpoena requests in order to preserve the requests for purposes of the retrial. See, e.g., United States v. Palmer, 122 F.3d 215, 221 (5th Cir. 1997) ("[a] retrial following a mistrial is both in purpose and effect a new trial. Accordingly, objections made at the aborted trial have no bearing on the retrial, as the two are entirely separate affairs.").

With respect to the requests of the second subpoena, Mr. Forbes notes that although the Court ruled on similar requests during the 2004 trial, the Court did not have the benefit of Mr. Frohlich's testimony at that time. Each category of documents should be produced for the reasons set forth below.

## ARGUMENT

### I. RULE 17(C) SUBPOENAS EXTEND TO PRIOR INCONSISTENT STATEMENTS, CONTRADICTION EVIDENCE, AND EVIDENCE OF BIAS AND MOTIVE.

Rule 17(c) subpoenas are governed by the test set forth in Nixon, which requires the party seeking production to show "that the documents are evidentiary." 418 U.S. at 699. This Court has previously ruled that this requirement necessitates

that the documents being sought are potentially "admissible." See, e.g., Tr. 5/19/2004 at 1511. Although Mr. Forbes respectfully disagrees with the Court's analysis, as noted in earlier pleadings, even under an "admissibility" standard, prior inconsistent statements of a witness, documents that impeach by contradiction, and documents that impeach by establishing bias are procurable through Rule 17(c).

The SEC attempts to narrow this category by arguing that "cumulative" documents should not be procurable pursuant to Rule 17(c) because the Court has the discretion to exclude such documents from evidence under Fed. R. Evid. 403. Mot. at 10. The SEC cannot cite to any authority for this novel proposition that Rule 403 can be used to limit what documents can be subpoenaed pursuant to Rule 17(c), (as opposed to Rule 403 being used to limiting the introduction of documents produced), which implements a defendant's fundamental Sixth Amendment right to compulsory process. To the contrary, their argument is flatly contradicted by the standard for Rule 17(c) subpoenas, which requires only that documents be *potentially* admissible. See, e.g., Tr. 5/19/2004 at 1511.

The SEC also attempts to narrow the category of documents procurable under Rule 17(c) by arguing that impeachment material cannot be obtained through a Rule 17(c) subpoena. The SEC is wrong as a matter of law.

### A. Prior Statements of the Witness as Impeachment.

There is no question but that witness statements and documents evidencing oral statements of a witness, including notes and memoranda, may be

3

obtained by subpoena. Prior statements of a witness may be used in cross-examination, and become admissible should the witness deny the statement.

> The admissibility facet of Nixon also must be assessed in perspective of the principle that a prior inconsistent statement, otherwise inadmissible as hearsay, may be admissible for the limited purpose of impeaching the witness. And, of course, if the witness, after being afforded an opportunity to explain or deny the statement, does not admit having made the prior inconsistent statement, the statement itself is admissible as an exhibit.

United States v. King, 194 F.R.D. 569, 574 (E.D. Va. 2000) (citation & internal quotation omitted). See also Martin Marietta Corp., 856 F.2d at 621-22 ("interview notes, transcripts, and electronic recordings" reflecting witness statements are "evidentiary"); United States v. LaRouche Campaign, 841 F.2d 1176, 1180 (1st Cir. 1988) (videotape of interview likely to reveal "inconsistent statements"); United States v. Cuthbertson, 630 F.2d 139, 144 (3d Cir. 1980) ("Under the 'evidentiary' standard of Bowman, rule 17(c) permits a party to subpoena materials that may be used for impeaching a witness called by the opposing party, including prior statements of the witness."); King, 194 F.R.D. at 574 ("[S]tatements useful for impeachment purposes are evidentiary within the meaning of Nixon. . . ."); United States v. Messino, 882 F. Supp. 115, 115-16 (N.D. Ill. 1995) (defendant "entitled to subpoena [impeachment] material under Rule 17(c)" including "reports of interview" when witness testifies at trial); United States v. Myerson, 684 F. Supp. 41, 45-46 (S.D.N.Y. 1988) (ordering production of the accounts of interviews). Moreover, when a prior inconsistent statement of a witness is reflected in notes taken by a third party, the notes may be used to impeach the witness if they contain a

4

substantially verbatim statement of the witness or have been adopted by the witness, and if the proper foundation is laid for the notes to constitute a past recollection recorded of the note-taker, they may be read into evidence under Fed. R. Evid. 803(5). See United States v. Almonte, 956 F.2d 27, 29 (2d Cir. 1992) (per curiam).

### B. Impeachment with Evidence of Bias and Motive.

Documents reflecting negotiations with the government, benefits conferred by the government, and other documents evidencing bias or motive are also procurable by a Rule 17(c) subpoena. See Martin Marietta Corp., 856 F.2d at 622 (correspondence and notes reflecting settlement negotiations between corporation and government are "evidentiary" to defendant's allegation that corporation made him a scapegoat); LaRouche Campaign, 841 F.2d at 1180 (documents evidencing "bias"); Messino, 882 F. Supp. at 116 (defendant "entitled to subpoena [impeachment] material under Rule 17(c)" including "documents reflecting any agreements, promises, plea bargains, immunity letters or orders, or any other benefit conferred" when witness testifies at trial). Documents in this category can always be used as the basis for cross-examination, and may be admitted into evidence if the witness denies the evidence of bias after being given an opportunity to explain or deny it. See United States v. Harvey, 547 F.2d 720, 722 (2d Cir. 1976).

Bias evidence includes not only that evidence tending to show that the witness may have lied in order to obtain a beneficial plea agreement, but anything

5

that could "reveal any present and continuing reasons for the witness to fabricate his testimony in return for *future* prosecutorial favors." United States v. Lynn, 856 F.2d 430, 433 (1st Cir. 1988) (emphasis added). This latter category of bias would include evidence that the witness had breached his plea agreement with the government, and thus has a motive to fabricate testimony in hopes that the government will not act upon the breach. In Lynn, for example, the court held that it was error to exclude evidence that the witness had not successfully completed a polygraph exam when successful completion was a condition of the plea agreement. "There is no question of the relevance of the intended area of inquiry – [the witness's] motivation to lie to continue to curry favor with the government." Id. Similarly, the court noted that a desire to protect assets that may still be subject to forfeiture can provide a witness with motive to fabricate testimony. Id. at n.5.

    The SEC's attempts to distinguish the current case from this clear precedent fails. First, the SEC repeats its earlier argument that much of the case law does not apply because it involves bias evidence against a defendant, not a witness. Mot. at 7. As pointed out in Mr. Forbes' Opposition filed on October 3, 2005, the SEC does not even attempt to explain the significance of its distinction, however, and nothing in the Federal Rules of Evidence or the case law suggests that one can impeach a defendant by demonstrating bias, but not any other witness. To the contrary, the legal precedent cited by Mr. Forbes is replete with cases addressing actual or potential impeachment of a non-defendant witness by extrinsic evidence. See King, 194 F.R.D. at 574; Martin Marietta Corp., 856 F.2d at 621-22;

6

LaRouche Campaign, 841 F.2d at 1180; Cuthbertson, 630 F.2d at 144; Messino, 882 F. Supp. at 115-16; Myerson, 684 F. Supp. at 45-46; Harvey, 547 F.2d 720; Rosario v. Kuhlman, 839 F.2d 918, 925-26 (2d Cir. 1988); cf. Wallach v. United States, 935 F.2d 445 (2d Cir. 1991); United States v. Seijo, 514 F.2d 1357 (2d Cir. 1975).

Second, the SEC baldly asserts that Harvey, 547 F.2d 720, and Messino, 882 F. Supp. 115, are inapposite. Motion at 9-10. As in its motion to quash subpoenas for trial testimony, however, the SEC's memorandum never explains why it believes the cases are inapposite. Instead, the SEC merely summarizes the facts of Harvey, which *support* Mr. Forbes' position and, in a footnote, erroneously summarizes the facts and holding of Messino, which clearly recognized a defendant's right to subpoena impeachment material once it is clear a witness is going to testify. Motion at 10. Here, of course, there is no question but that Mr. Corigliano will testify.

Finally, the SEC's reliance on United States v. James, 609 F.2d 36, 47-48 (2d Cir. 1979), is grossly misplaced. In James, the court ultimately determined there was insufficient prejudice to justify a reversal, but nonetheless held that bias evidence was *not* barred by Federal Rule of Evidence 608(b), and indeed that it was *"preferable to allow the testimony."* Id. at 47 (emphasis added).

C. **Impeachment by Contradiction.**

Impeachment by contradiction is not governed by Rule 608(b), which prohibits the use of extrinsic evidence of conduct to impeach a witness's character for truthfulness. A witness can always be impeached on a non-collateral matter.

And even extrinsic evidence of collateral matters can be admitted if the door has been opened during direct examination.

### 1. Impeachment by Contradiction as to Non-Collateral Matters.

It is axiomatic that extrinsic evidence which contradicts a witness's testimony on a *non-collateral* matter can be admitted into evidence. Moreover, in the Second Circuit, ***"[t]he determinative question in deciding whether extrinsic evidence contradicting a witness's testimony is admissible is not whether the contradicting extrinsic evidence is material or collateral, but rather whether the assertions that the impeaching party seeks to contradict are themselves material or collateral."*** Rosario v. Kuhlman, 839 F.2d 918, 925-26 (2d Cir. 1988) (emphases added). Thus, even if the extrinsic evidence itself is collateral, it is admissible if it contradicts the witness's testimony on a material matter. Rosario is illustrative. There, the defendant's conviction rested on the testimony of an eye-witness who claimed to have been in the neighborhood to visit his girlfriend. The state court had precluded the proffered testimony of a witness who stated that the witness had not even met the girlfriend until months after the incident. The Second Circuit affirmed the issuance of a writ of *habeus corpus*, finding that the eye-witness's account concerning his girlfriend "was part of the background and circumstances of his observation of the crime. Moreover, as a matter of human experience, he could not have been mistaken about [the girlfriend] if his story was true." Id. at 926 (internal quotations and citations omitted).

8

### 2. Impeachment by Contradiction as to Collateral Matters When the Door Has Been Opened by Direct Examination.

The Second Circuit also permits impeachment on *collateral* matters when the witness' direct testimony opens the door to such impeachment. See United States v. Benedetto, 571 F.2d 1246, 1250 (2d Cir. 1978) ("Once a witness (especially a defendant-witness) testifies as to any specific fact on direct testimony, the trial judge has broad discretion to admit extrinsic evidence tending to contradict the specific statement, *even if such statement concerns a collateral matter in the case*." (emphasis added)) (citing Walder v. United States, 347 U.S. 62 (1954)); see also United States v. Garcia, 900 F.2d 571, 575 (2d Cir. 1990) ("It was only after Camacho reopened the issue on redirect-examination and created the false impression that the arrest had *not* involved drugs that the court allowed admission of the arrest record. Thus the record was admitted not to impeach Camacho's general credibility through extrinsic evidence, see Fed. R. Evid. 608(b), but to contradict a false statement made by Camacho in his redirect testimony.").

For example, in Walder, 347 U.S. 62, a defendant charged with the unlawful sale of narcotics testified not only that he had not committed the crime alleged in the indictment, but also that he had *never* possessed illegal narcotics. The Supreme Court upheld the trial court's subsequent admission of a police officer's testimony that drugs had previously been seized at the defendant's home – *an incident not charged in the indictment* – holding that "there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the [opposing party's] disability to challenge his credibility." Id. at 65;

9

accord United States v. Bufalino, 683 F.2d 639 (2d Cir. 1982) (defendant testified that not only did he not order that a particular person be killed as charged in the indictment, but that he had never told anyone to kill the person, thus opening the door to a tape recording from an *earlier crime* when he had ordered that the person be eliminated); United States v. Cuadrado, 413 F.2d 633, 635 (2d Cir. 1969) ("Where a defendant in his direct testimony falsely states a specific fact, the prosecution will not be prevented from proving, either through cross-examination or by calling its own witnesses, that he lied as to that fact.") (internal quotations omitted).

Second Circuit precedent makes clear that this principle applies to witnesses with equal force as to defendants. For example, in United States v. Wallach, 935 F.2d 445 (2d Cir. 1991), the key witness against the defendant had lied during his direct examination about his compulsive gambling – claiming that he had stopped gambling after he began cooperating with the government. The witness's gambling had nothing to do with the substantive charges in the case, so the fact that he lied about his gambling went only to his character for truthfulness. The Second Circuit nonetheless reversed the conviction because evidence that the witness had lied about gambling had not been put before the jury. The court based its decision on the finding that the government should have known of the witness's perjury and thus corrected the record. The court also held, however, that "[e]ven assuming the government had no knowledge of the perjury at the time of trial, we believe that reversal would still be warranted" because additional evidence that the witness had in fact continued to gamble had come out months after the trial. Id. at

10

458. "This additional information in itself provides a sufficient basis for granting the defendants a new trial." Id. Of course, there would be no point in granting a new trial based upon newly discovered evidence if the new evidence were not admissible.

Similarly, in United States v. Seijo, 514 F.2d 1357 (2d Cir. 1975), the Second Circuit granted a new trial because there was evidence that the government's star witness had lied about his past marijuana use, and evidence of that lie had not been made available to the defense. As in Wallach, the false testimony affected "only his credibility as a witness." Id. at 1364. Nonetheless, the court reversed the conviction noting that "the test is whether there was a significant chance that this added item, developed by skilled counsel . . . could have induced a reasonable doubt in the minds of enough jurors to avoid a conviction." Id. Again, implicit in the test articulated by the court and in the reversal itself, is the premise that this extrinsic evidence should have been admitted even though it went solely to the witness's character for truthfulness.

## II. THE DOCUMENTS SOUGHT BY MR. FORBES' SUBPOENA TO THE SEC MEETS THESE REQUIREMENTS.

### A. Agreements with the SEC Concerning Expenditures Between April 16, 2004 and July 7, 2004, and Concerning the Coriglianos' Retainers.[1]

There is no dispute that Mr. Corigliano's agreements with the SEC, and benefits conferred upon him by the government, are relevant to his bias. Mr. Corigliano testified that he was permitted to continue to pay ordinary and

---

[1] Calls 6 & 11 of the subpoena attached as SEC Ex. 1.

11

reasonable expenses up to July 7, 2004, the latest date by which he had to turn over his assets, Tr. 8/3/04 at 9389, and that he was able to continue to use the retainer to pay his legal expenses so long as his legal troubles continued, Tr. 8/3/2004 at 9367-72. Yet nothing in the text of the Consent Agreement (DX1060) supports either interpretation. Nor does Mr. Frohlich's testimony support Mr. Corigliano's understanding.

The Court did not have the benefit of Mr. Frohlich's testimony when it quashed Mr. Forbes' request for this information during the first trial. Nor did the Court know at that time that the government would reverse positions – initially offering to stipulate that there was an oral agreement concerning the retainer accounts, Gov't Opp'n to Forbes Trial Motion No. 28, at 6-8, but now claiming that there is no oral agreement between Mr. Corigliano and the SEC, Gov't Opp'n to Forbes Retrial Mot. No. 3, at 3. Mr. Forbes is entitled to full disclosure as to the true nature of the agreements between the government and Mr. Corigliano – disclosure which has yet to be forthcoming.

Further discussion of the facts which support Mr. Forbes' requests, but which reveals his confidential trial strategy, is set forth in the supplemental memorandum filed *ex parte* and under seal on October 11, 2005.

### B. Value of the Old Saybrook Properties.[2]

The Old Saybrook properties are the single most valuable asset left to the Coriglianos after their settlement with the SEC. Mr. Forbes is entitled to know

---

[2] Calls 3, 4, & 5 of the subpoena attached as SEC Ex. 1.

what the SEC was told about these assets, and whether Mr. Corigliano comported with the requirement in his plea agreement that he provide complete and accurate information to the SEC upon request. DX300, Schedule A at 7. If Mr. Corigliano did not comport with this requirement, that fact provides him with additional motive to fabricate his testimony in the trial against Mr. Forbes in the hope that the government will not act upon his breach of the plea agreement. See Lynn, 856 F.2d at 433.

### C.   SEC Affidavit.[3]

The SEC affidavit constitutes a prior statement of Mr. Corigliano, and is critical, *inter alia*, to the determination of what benefits Mr. Corigliano has received from the government. Mr. Forbes has not sought the affidavit Mr. Corigliano filed with the SEC by way of a 17(c) subpoena prior to now. He did seek a copy of the affidavit by way of a motion to compel filed against the government, and the Court denied that motion without explanation on October 5, 2004.[4] See Tr. at 14,550.

Further discussion of the facts which support Mr. Forbes' requests, but which reveals his confidential trial strategy, is set forth in the supplemental memorandum filed *ex parte* and under seal on October 11, 2005.

---

[3] Call 7 of the subpoena attached as SEC Ex. 1.

[4] Mr. Corigliano's testimony was completed prior to the date he was to file the SEC Affidavit, so the motion to compel was necessarily filed after Mr. Corigliano's cross-examination had been completed. Here, of course, we are able to request the document while it can still be used during the cross-examination of Mr. Corigliano.

D.  **Negotiations and Communications Regarding the Settlement.**[5]

The documents sought here are critical to demonstrating the full extent and actual nature of the relationship between the government and its key witness, the benefits conferred upon him, and the manner in which those benefits were obtained. There is no question that those benefits were substantial, and provide Mr. Corigliano with a motive to fabricate his testimony against Mr. Forbes. Mr. Corigliano's settlement with the SEC left him with two pieces of property worth millions of dollars, use of two legal retainers worth nearly two million dollars, and three hundred thousand dollars in cash funds set aside for his three children's college education.

Further discussion of the facts which support Mr. Forbes' requests, but which reveals his confidential trial strategy, is set forth in the supplemental memorandum filed *ex parte* and under seal on October 11, 2005.

### III. THE SEC'S ASSERTION THAT IT HAS PRODUCED ALL NON-PRIVILEGED, RESPONSIVE DOCUMENTS DOES NOT WARRANT THE RELIEF THE GOVERNMENT REQUESTS.

The SEC argues that the subpoenas should be quashed because it "previously produced the non-privileged SEC documents responsive to these two subpoenas to the prosecutors assigned to the first trial." Mot. at 4. First, the SEC makes no effort to delineate how the documents it is withholding qualify as privileged. See, e.g., Adler, Coleman, Clearing Corp. v. Mishkin, SIPC, 1999 WL 1747410, *2 (S.D.N.Y. Dec. 8, 1999) ("The party seeking to invoke a privilege bears

---

[5] Calls 1, 2, 8, 9, & 10 of the subpoena attached as SEC Ex. 1.

14

the burden of establishing those facts that are the essential elements of the privileged relationship. . ... This burden cannot be discharged by mere conclusory or ipse dixit assertions.").

Second, one need look no further than Call 7 of the SEC's Exhibit 1 – seeking production of the Affidavit provided by Mr. Corigliano to the SEC pursuant to his settlement – to know that the defense has not received all non-privileged, responsive documents.

Third, even if no additional responsive documents existed (which cannot be correct in light of Mr. Corigliano's missing SEC Affidavit), the appropriate response would not be to quash the subpoena, but for the SEC to affirm in writing, in a form admissible at trial, that no responsive documents exist.

## IV. MR. FORBES DOES NOT SEEK INFORMATION PROTECTED BY RULE 16(a)(2).

The SEC argues that Mr. Forbes seeks investigative files protected from disclosure by Fed. R. Crim. Proc. 16(a)(2). See Mot. at 4-5. Rule 16(a)(2) applies to internal investigative files made in connection with "investigating or prosecuting *the case*." Fed. R. Crim. Proc. 16(a)(2) (emphasis added). Mr. Forbes does not seek documents made in connection with this case, but in connection with the SEC's case against Mr. Corigliano – a matter which has been settled for over a

year now. Such documents are not protected by Fed. R. Crim. Proc. 16(a)(2), and thus the Rule can provide no comfort to the SEC here.[6]

## CONCLUSION

For the foregoing reasons, Mr. Forbes respectfully requests that the Court deny the SEC's Motion to Quash the two subpoenas served upon its records custodian.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

---

[6] To the extent any of the responsive documents contain Jencks material, which is addressed by Fed. R. Crim. Proc. 16(a)(2), that fact should merely give cause to delay production until the Thursday before Mr. Corigliano begins testimony, not eliminate the need to produce the documents altogether.

16

          James T. Cowdery (Bar No. ct05103)
          Thomas J. Murphy (Bar No. ct07959)
          COWDERY, ECKER & MURPHY, L.L.C.
          750 Main Street
          Hartford, CT 06103-2703
          (860) 278-5555 (phone)
          (860) 249-0012 (fax)
          tmurphy@cemlaw.com (e-mail)

          Attorneys for Walter A. Forbes

Dated: October 19, 2005

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Opposition of Walter A. Forbes to the Motion of the Securities and Exchange Commission to Quash Two Subpoenas Served on Its Custodian of Records to be sent on October 19, 2005 to the following via e-mail and FedEx:

>Norman Gross, Esq.
>U.S. Attorney's Office
>District of New Jersey
>401 Market Street
>Fourth Floor
>Camden, NJ 08101
>
>Michael Martinez, AUSA
>Craig Carpenito, AUSA
>U.S. Department of Justice
>450 Main Street, Room 320
>Hartford, CT 06103

and via Fed Ex to:

>Kathleen Cody, Esq.
>Securities and Exchange Commission
>100 F. Street, N.E.
>Washington, D.C. 20549-9612

_____
Barry S. Simon