UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------------------------- x
UNITED STATES OF AMERICA :
:
v. : No. 3:02CR264 (AWT)
:
WALTER A. FORBES, : October 20, 2005
:
             Defendant. :
---------------------------------------------------------- x

# REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION OF NON-PARTIES COSMO CORIGLIANO AND KRAMER LEVIN NAFTALIS & FRANKEL LLP TO QUASH RULE 17(C) SUBPOENAS AND FOR REMEDIAL RELIEF

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Gary P. Naftalis
Alan R. Friedman
Eric A. Tirschwell
J. Wells Dixon
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

-and-

JACOBS, GRUDBERG, BELT & DOW, P.C.
Ira B. Grudberg
350 Orange Street
New Haven, Connecticut 06511
(203) 772-3100

Attorneys for Cosmo Corigliano

**ORAL ARGUMENT REQUESTED**

KL3:2471699.2

# TABLE OF CONTENTS

|  | Page |
|---|---|

TABLE OF AUTHORITIES ................................................................................................. iii

Introduction ............................................................................................................................ 1

I.    FORBES CANNOT IGNORE THE "LAW OF THE CASE" DOCTRINE AND DOES NOT EVEN ATTEMPT TO MEET THE APPLICABLE STANDARD FOR RECONSIDERATION ............................................................................................. 2

II.    FORBES' ABUSIVE APPROACH TO REISSUING AND RELITIGATING RULE 17(C) SUBPOENAS CANNOT BE JUSTIFIED BY HIS NEED TO PRESERVE THE RECORD FOR APPEAL ........................................................................ 4

III.    FORBES CONTINUES TO ARGUE FOR A NON-EXISTENT "OPENED-THE-DOOR" EXCEPTION TO THE COLLATERAL IMPEACHMENT RULE ..................... 7

IV.    DUPLICATIVE DEMANDS: FORBES FAILS TO PROVIDE ANY BASIS FOR THE COURT TO REVERSE ITS PRIOR RULINGS AND ALSO FAILS TO SATISFY THE *NIXON* CRITERIA OF RELVANCY, SPECIFICITY AND ADMISSIBILITY ................................................................................................................ 9

    A.    Renewal Demands (Including Forbes III(F)(2), P.39) ............................................ 10

    B.    Retainer Paid to Kramer Levin (Forbes III(K), P. 44) ........................................... 11

    C.    Retainer Paid to Fried Frank (Forbes III(L), P. 46) ............................................... 12

    D.    Kramer Levin Billing Records Provided to Cendant (Forbes III(M), P. 46) ......... 12

    E.    Alleged Agreements with the SEC Concerning Expenditures and the Retainers (Forbes III(G), P. 40) ............................................................................. 13

    F.    The Coriglianos' Expenditures Between April and July 2004 (Forbes III(B), P. 29) .................................................................................................... 14

    G.    The Coriglianos' SEC Affidavit (Forbes III(F)(1), P. 36) ..................................... 14

    H.    Documents Exchanged and Communications with the Government and/or Cendant (Forbes III(C), P. 30) .............................................................................. 15

    I.    Subpoena Exhibits A-V (Forbes III(C), P.30) ....................................................... 15

    J.    Communications Between Mr. Corigliano and Kramer Levin Between April 1998 and January 2000 (Forbes III(N), P. 46) ............................................. 16

|   |    |                                                                                                                                                 |    |
|---|----|-------------------------------------------------------------------------------------------------------------------------------------------------|---:|
|   | K. | Polygraph-Related Demands (Forbes III(O), P. 52)                                                                                                | 16 |
|   | L. | Documents Concerning "Benefits" from Cooperation (Forbes III(P), P. 52)                                                                         | 19 |
|   | M. | Connecticut Board of Accountancy (Forbes III(Q), P. 53)                                                                                         | 19 |
|   | N. | Budget and Living Expense Information and Other Financial Information Mr. Corigliano Provided to His Counsel (Forbes III(D), P. 33)             | 20 |
| V. | FORBES' NEW DEMANDS ALSO FAIL TO MEET THE *NIXON* CRITERIA                                                                                           || 20 |
|   | A. | Post-2004 Trial Communications Relating to the Government and Benefits (Forbes III(R), P. 54)                                                   | 20 |
|   | B. | Date of Meetings with the Government (Forbes III(H), P. 41)                                                                                     | 21 |
|   | C. | Credit Card and Loan Applications (Forbes III(S), P. 56)                                                                                        | 21 |
|   | D. | Crystal Journey Candles Documents (Forbes III(T), P. 56)                                                                                        | 21 |
|   | E. | 2000-2003 Property Taxes (Forbes III(U), P. 57)                                                                                                 | 22 |
|   | F. | September 2003 Asset Information (Forbes III(E), P. 36)                                                                                         | 23 |
|   | G. | Legal Fees Advanced by Cendant (Forbes III(I), P.42)                                                                                            | 23 |
|   | H. | Receiver Documents (Forbes III(J), P. 43)                                                                                                       | 24 |
| CONCLUSION                                                                                                                                              ||| 25 |

KL3:2471699.2

## TABLE OF AUTHORITIES

### CASES

*Bankers Ins. Co. v. Florida Dep't of Ins. and Treasurer,*
  755 So. 2d 729 (Fla. Dist. Ct. App. 2000) .................................................................. 18 n.9

*Brown v. State,*
  448 N.E.2d 10 (Ind. 1983) ........................................................................................ 18 n.9

*Carmona v. State,*
  941 S.W.2d 949 (Tex. Ct. Crim. App. 1997) ............................................................. 18 n.9

*Christianson v. Colt Industries Operating Corp.,*
  486 U.S. 800 (1988) ......................................................................................................... 4

*Cleveland v. Cleveland Elec. Illuminating Co.,*
  538 F. Supp. 1328 (N.D. Ohio 1981) .............................................................................. 3

*Eversole v. Butler County Sheriff's Office,*
  No. C-1-99-789, 2001 WL 1842461 (S.D. Ohio Aug. 7, 2001) ................................. 18 n.9

*North River Insurance Co. v. Philadelphia Reinsurance Corp.,*
  63 F.3d 160 (2d Cir. 1995) .............................................................................................. 4

*People v. Marcy,*
  283 N.W.2d 754 (Mich. Ct. App. 1979) .................................................................... 18 n.9

*Rosario v. Kuhlman,*
  839 F.2d 918 (2d Cir. 1988) ...................................................................................... 9 n.5

*State v. Juarez,*
  570 A.2d 1118 (R.I. 1990) ......................................................................................... 18 n.9

*State v. Post,*
  32 Ohio St. 3d 380 (1987) ......................................................................................... 18 n.9

*State v. Rickabaugh,*
  361 N.W.2d 623 (S.D. 1985) ..................................................................................... 18 n.9

*United States Postal Serv. v. Phelps Dodge Refining Corp.,*
  852 F. Supp. 156 (E.D.N.Y. 1994) ............................................................................ 18 n.9

*United States v. Akers,*
  702 F.2d 1145 (D.C. Cir. 1983) .................................................................................. 3 n.2

*United States v. Benedetto,*
   571 F.2d 1246 (2d Cir. 1978) ............................................................................ 8 n.4

*United States v. Bufalino,*
   683 F.2d 639 (2d Cir. 1982) ............................................................................... 8 n.4

*United States v. Cuadrado,*
   413 F.2d 633 (2d Cir. 1969) ............................................................................... 8 n.4

*United States v. Giampa,*
   No. S 92 CR 437 (PKL), 1992 WL. 296440 (S.D.N.Y. Oct. 7, 1992) ............. 22 n.13

*United States v. Leaver,*
   358 F. Supp. 2d 273 (S.D.N.Y. 2005) .............................................................. 22 n.13

*United States v. Nektalov,*
   No. S 203 CR 828 (PKL), 2004 WL. 1574721 (S.D.N.Y. July 14, 2004) ....... 22 n.13

*United States v. Orena,*
   883 F. Supp. 849 (E.D.N.Y. 1995) ................................................................... 22 n.13

*United States v. Palmer,*
   122 F.3d 215 (5th Cir. 1997) ................................................................................ 5, 6

*United States v. Quintieri,*
   306 F.3d 1217 (2d Cir. 2002) .......................................................................... 2 n.1, 3

*United States v. Seijo,*
   514 F.2d 1357 (2d Cir. 1975) ................................................................................ 8, 9

*United States v. Tenzer,*
   213 F.3d 34 (2d Cir. 2000) .................................................................................... 2, 3

*United States v. Tham,*
   960 F.2d 1391 (9th Cir. 1992) ............................................................................... 3 n.2

*United States v. Todd,*
   920 F.2d 399 (6th Cir. 1990) .............................................................................. 3, 4, 6

*United States v. Uccio,*
   940 F.2d 753 (2d Cir. 1991) ................................................................................... 3, 4

*United States v. Wallach,*
   935 F.2d 445 (2d Cir. 1991) ................................................................................... 8, 9

*United States v. Weissman*,
   No. 01 *CR 529*, 2002 WL. 31875410 (S.D.N.Y. Dec. 26, 2002)..................................22 n.13

*United States v. Williams*,
   205 F.3d 23 (2d Cir. 2000)..........................................................................................3 n.2

*Walder v. United States*,
   347 U.S. 62 (1954).......................................................................................................8 n.4

## STATUTES

Fed. R. Crim. P. 16 ........................................................................................................14, 15

Fed. R. Crim. P. 16(a)(1)(E)..................................................................................................14

Fed. R. Crim. P. 17(c) ...................................................................................................*passim*

Fed. R. Evid. 608(b) ..............................................................................................................17

Fed. R. Evid. 613(a)...............................................................................................................17

KL3:2472879.1

## Introduction

Nothing in Forbes' 58-page opposition memorandum refutes our arguments that: (1) under the law of the case doctrine, this Court *should* follow its prior rulings absent "cogent or compelling reasons" to deviate; (2) Forbes provides no such "cogent and compelling" reasons and, indeed, consistently refuses even to acknowledge the Court's prior decisions; (3) Forbes' purported "new" demands fail to satisfy the requirements of relevancy, specificity and admissibility; and (4) the latest round of subpoenas continues the unprecedented assault on our attorney-client relationship in an effort improperly to gain access to Mr. Corigliano's attorneys' confidential and privileged materials.

Instead of responding on the merits to most of our category-by-category arguments as to why his subpoena demands are repetitive and/or improper, Forbes attempts to distract and further divert the Court and its processes by claiming that he was "required" to reserve all of his prior demands and litigate their validity as if the first trial had never occurred in order to preserve his record for appeal, and that he is entitled to make 17 extra pages of substantive arguments in support of his subpoena demands in secret (i.e., *ex parte* and under seal) and outside the testing of the adversarial process on the mere assertion that he might otherwise reveal his "trial strategy." As we show below, and as we argued in a separate opposition memorandum (dated October 19, 2005) opposing Forbes' application to submit a supplemental memorandum *ex parte* and under seal, Forbes' position is legally and factually unjustified.

In the end, we respectfully submit that the consistent truths here are that Forbes continues to abuse the Rule 17(c) power, that all of his latest improper demands should be

KL3:2471699.2

quashed, and that a remedial procedure imposed by the Court is required to ensure that this continuing subversion of the legal process is brought under control as the retrial progresses.

I. **FORBES CANNOT IGNORE THE "LAW OF THE CASE" DOCTRINE AND DOES NOT EVEN ATTEMPT TO MEET THE APPLICABLE STANDARD FOR RECONSIDERATION**

In his failed attempt to avoid the foundational principle of judicial economy common to both the "law of the case" and reconsideration doctrines that should defeat the overwhelming number of his demands, Forbes begins by mischaracterizing our position, claiming – incorrectly – that we argued that this Court "must adhere" to or is "bound by" its prior rulings. Forbes Opp'n at 11. As our opening brief makes perfectly clear, what we actually said was that under the second "prong" or "branch" of the law of the case doctrine,[1] this Court *should* adhere to its prior rulings "absent cogent or compelling reasons to deviate, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Amended Motion at 10 (quoting *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991)). This is the law in the Second Circuit, discussed and applied in criminal

---

[1]As the Second Circuit has explained:

> The law of the case doctrine has two branches. The first requires a trial court to follow an appellate court's previous ruling on an issue in the same case. . . . This is the so-called "mandate rule." . . . . The second and more flexible branch is implicated when a court reconsiders its own ruling on an issue in the absence of an intervening ruling on the issue by a higher court. It holds "that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case, . . . unless "cogent" and "compelling" reasons militate otherwise. . . .

*United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (internal citations and footnote omitted). Here, "in the absence of an intervening ruling on the issue by a higher court," the "second and more flexible branch" is plainly implicated and is what we argued and quoted in our opening brief.

- 2 -

as well as civil cases. *See, e.g., Uccio*, 940 F.2d at 758; *Quintieri*, 306 F.3d at 1225; *United States v. Tenzer*, 213 F.3d 34, 39-40 (2d Cir. 2000).[2]

On this point Forbes' critique of our reliance on *Cleveland v. Cleveland Elec. Illuminating Co.*, 538 F. Supp. 1328 (N.D. Ohio 1981), in light of the Sixth Circuit's subsequent decision in *United States v. Todd*, 920 F.2d 399 (6th Cir. 1990), is curious at best. While *Todd* affirmed a district court's decision, following a mistrial, not to follow a prior judge's evidentiary ruling, it cited *Cleveland* approvingly for the proposition that "the law-of-the-case doctrine can be applied to rulings made in a case that ends in a mistrial," explaining:

> Otherwise, a court would be required to rule *de novo* on every issue previously decided in a prior proceeding that ends in a mistrial. . . . This would be inefficient, particularly when the previous trial had progressed considerably. In such a case the law-of-the-case doctrine would prove useful. A court may recognize and enforce prior rulings based on this doctrine, but also retains the power to reconsider previously decided issues as they arise in the context of a new trial.

*Id.* at 404 (internal citations omitted).

---

[2] Forbes' reliance on *United States v. Akers*, 702 F.2d 1145, 1148 (D.C. Cir. 1983), is also misplaced. There, the court rejected a defendant's law-of-the-case argument as to a prior evidentiary ruling, finding that "the fact that the photographs were admitted in the first trial does not *compel* their admission in the new trial." *Id.* (emphasis added). This is consistent with the Second Circuit's non-compulsory application of the law-of-the-case doctrine outside the appellate context. In addition, the loose language of the majority opinion in *Akers* was both criticized by Judge Mikva, who concurred "only in the result" because he was "troubled by the way in which the majority characterizes the 'law of the case' doctrine," *id.* at 1150, and persuasively rejected by the Ninth Circuit in *United States v. Tham*, 960 F.2d 1391, 1397 n.3 (9th Cir. 1992) (explaining that "despite the dictates of the law of the case doctrine with its implications for deference, consistency, and judicial economy, *Akers* would permit a judge arbitrarily to reverse his own ruling or that of another trial judge in the same case," and further finding that "*Akers* relies upon legal precedents which do not support its position").

The *but see* citation to *Akers* in *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000), where the Second Circuit "assume[ed], without deciding, that the law of the case doctrine . . . applies to mere evidentiary rulings in a second trial of the same case," leaves undisturbed this Circuit's prior and later holdings discussing and applying the discretionary doctrine in a wide variety of contexts. *See id.* (explaining that while the doctrine is "discretionary," it "expresses the general practice of refusing to reopen what has been decided").

Forbes similarly misses the mark in his rejoinder to our citation to *North River Insurance Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995), for the proposition that on a retrial a court "should be 'loathe' to revisit an earlier decision 'in the absence of extraordinary circumstances.'" (Citation omitted.) While *North River* did not itself involve a retrial, the quoted language comes from *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816-17 (1988), a leading Supreme Court case explaining that the law of the case doctrine "promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues'" and thus, while it does not deprive a court of the "power to revisit prior decisions of its own," "as a rule[,] courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" (Citation omitted.) This *Christianson* rule has specifically been relied on in the criminal mistrial/retrial context in the very case Forbes highlights, *see Todd*, 920 F.2d at 403, and its "clear error" and "manifest injustice" benchmarks are fully consistent with the Second Circuit's application of the doctrine in criminal cases such as *Uccio*, 940 F.2d at 758, and *Tenzer*, 213 F.3d at 39 (explaining that "cogent or compelling reasons" "justifying reconsideration" include "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice") (internal quotations and citations omitted).

II. **FORBES' ABUSIVE APPROACH TO REISSUING AND RELITIGATING RULE 17(C) SUBPOENAS CANNOT BE JUSTIFIED BY HIS NEED TO PRESERVE THE RECORD FOR APPEAL**

Forbes' argument that he was "required" to re-serve his multiple subpoenas in order to preserve the record on appeal is an exercise in misdirection. We of course take no issue with the proposition that – notwithstanding his prior duplicative demands and the Court's prior rulings quashing almost all of the demands for these same categories of documents – Forbes is