UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>WALTER A. FORBES. | No. 3:02CR264 (AWT)<br>October 25, 2005 |

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT WALTER A. FORBES FOR A MISTRIAL BECAUSE MS. PEMBER'S TESTIMONY CAUSED A CONSTRUCTIVE AMENDMENT AND A PREJUDICIAL VARIANCE**
(Forbes Retrial Motion No. 17)

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this memorandum in support of his motion for a mistrial because Anne Pember's testimony caused a constructive amendment and a prejudicial variance by expanding the membership of the alleged conspiracy to include auditors from Ernst & Young.[1]

## ARGUMENT

A constructive amendment takes place when the government presents evidence at trial that broadens the scope of the indictment beyond that returned by the grand jury, or when the government presents evidence that is based on facts different than those found by the grand jury. See, e.g., United States v. Milstein,

---

[1] Mr. Forbes incorporates by reference his memorandum in support of Forbes Trial Motion No. 13 (filed June 2, 2004) [Docket No. 803], in which he moved for a mistrial because Ms. Pember's testimony in the first trial caused a constructive amendment and/or a prejudicial variance by suggesting that Ernst & Young representatives were knowledgeable about, and complicit in, alleged accounting fraud at CUC and CMS.

401 F.3d 53, 64-66 (2d Cir. 2005) (finding constructive amendment and vacating conviction on relevant count when indictment charged defendant with misbranding drugs because they were re-packaged, but government offered evidence that the drugs were misbranded because they were not sterile); Forbes Trial Motion No. 20 (filed July 21, 2004) [Docket No. 953] (legal discussion incorporated herein by reference). A constructive amendment "is a *per se* violation of the Fifth Amendment." Milstein, 401 F.3d at 65.

Similarly, when the evidence offered by the government at trial establishes "facts materially different from those alleged in the indictment," and a defendant is thereby prejudiced in his ability to defend himself, the variance constitutes reversible error. United States v. Thomas, 274 F.3d 655, 670 (2d Cir. 2001) (quotation omitted); see also Forbes Trial Motion No. 20 (filed July 21, 2004) [Docket No. 953] (legal discussion incorporated herein by reference).

The indictment does not allege that auditors from Ernst & Young participated in the alleged conspiracy. See Indict. ¶ 17. To the contrary, the Court instructed the jury in the first trial that "[t]he government contends that the coconspirators were Walter Forbes, Kirk Shelton, Cosmo Corigliano, Anne Pember, Casper Sabatino, Steven Speaks, Kevin Kearney, Mary Sattler, and Stuart Bell. There are no other alleged coconspirators." See Tr. (11/03/04) at 16293-94 (emphasis added). Yesterday, the government filed its Preliminary Requests to Charge for Retrial and asked the Court to provide the same instruction to the jury at this retrial. See Preliminary Request to Charge No. 16 (filed Oct. 24, 2005). In

the first trial, the Court redacted the reference in the indictment to unnamed, unindicted co-coconspirators, and limited the list of coconspirators to those named in the indictment as well as Messrs. Speaks, Kearney, Bell and Ms. Sattler. See Court Ex. 21 ¶ 17. The government recently assented to a similar redaction in this retrial. See Gov't Reply Supp. Mot. Dismiss at 13-14 (filed Oct. 10, 2005) [Docket No. 1828].

Despite this history, the government, through the testimony of Ms. Pember, expanded and modified the membership of the alleged conspiracy charged in the indictment by suggesting that auditors from Ernst & Young were also in on the alleged conspiracy. For example, Ms. Pember offered testimony suggesting that Ernst & Young knew that there were problems with CUC's accounting for the Ideon merger reserve in the fiscal year ending 1/31/97, but it nevertheless issued a clean audit opinion. According to Ms. Pember's testimony:

- She provided Ernst & Young with a copy of GX 484, a schedule analyzing the Ideon merger reserve for fiscal year 1/31/97, see Tr. at 888-89, which contained numbers "that would point out to the auditors that it wasn't necessarily accurate." Tr. at 891-92.

- Because she "did not provide them with details for over $20 million worth of supposed use of a merger cost, . . . how could they not ask a question?" Tr. at 892-93.

- After the auditors did ask questions about this unexplained figure, see Tr. at 894-95, Mr. Corigliano told Mr. Rabinowitz that it "wasn't possible to give him details" because "the accounting had been a mess." Tr. at 895.

- Mr. Corigliano's explanation did not make sense. See Tr. at 895.

- Pursuant to the auditors' request for a memo describing how the $21 million had been used, see Tr. at 896, Ms. Pember prepared such a

memo, GX 485, and it was provided to Ernst & Young. See Tr. at 896-899.

- Thereafter, Mr. Caparelli asked Ms. Pember whether "the $21 million" was "really merger related or were there operating costs in that usage?" Tr. at 900. Ms. Pember hesitated for a moment and then told him that "there were no operating costs in the $21 million." Tr. at 901. Mr. Caparelli shrugged his shoulders, and left Ms. Pember's office. See Tr. at 901.

- Ernst & Young issued a clean opinion regarding the Ideon merger reserve for the fiscal year ending 1/31/97. See Tr. at 901.

- The following year, Mr. Rabinowitz repeatedly told Ms. Pember "that it would be unacceptable to him if the Ideon merger reserve analysis was done the same way it was done for 1/31/97." Tr. at 902; see also Tr. at 903-05.

Ms. Pember offered similar testimony regarding the fiscal year ending 12/31/97, suggesting that Ernst & Young knew that there were problems with CUC's accounting for the Ideon merger reserve. According to her testimony:

- She provided Ernst & Young with a copy of GX 527, a schedule analyzing the Ideon merger reserve for fiscal year 12/31/97, see Tr. at 905, which contained a hole similar to the prior year despite Mr. Rabinowitz's admonition that he would "not tolerate" such an analysis. See Tr. at 903-04, 906.

- Mr. Rabinowitz asked Ms. Pember about a missing $45 million. See Tr. at 906-07. She provided misinformation. See Tr. at 907. He also asked whether the balance of the merger reserve was in fact $500,000 as reflected on GX 527. See id. Ms. Pember said yes. See id.

- Mr. Rabinowitz responded, "Oh, shit," because they "had just completed the conversation where [Ms. Pember] explained that this schedule did not include the increase in the Ideon merger reserve of $45 million, and therefore if the balance was only $565,000, Mr. Rabinowitz knew and said that that meant that the $45 million had been used somehow and [Ms. Pember] was not giving him any explanation as to how the company used the $45 million." Tr. at 908.

- As compared to the prior year, "this analysis was worse because [Ms. Pember] hadn't even made any attempt to show any of the usage of the

>   $45 million." Tr. at 909. In addition, the number "was more than twice" as large. Id.
>
> - Mr. Rabinowitz subsequently explained that he needed an analysis showing how the $45 million had been used and Ms. Pember "prepared a schedule that reflected the categories that Mr. Rabinowitz indicated were acceptable usage of a merger reserve." Tr. at 909-10. GX 521 "is the final schedule that we agreed with Ernst & Young would meet the needs of the Ideon merger reserve usage," but it did not accurately reflect the usage of the reserve. Tr. at 910. The schedule was intentionally inaccurate. See id.

The government attempted to go further by (i) asking Ms. Pember whether she was "surprised by the process [she] had with the auditors regarding the Ideon merger reserve for 12/31/97," Tr. at 912, (ii) eliciting testimony that Mr. Rabinowitz told Mr. Corigliano that, "You know, Cosmo, when this is all over we'll need to get together and go out on your boat and talk about what really happened here," and that Mr. Corigliano "sort of chuckled," Tr. at 913-14, and (iii) by asking whether Ernst & Young issued a clean opinion that year, see id. The Court sustained an objection to the first question, struck the offending testimony, and the government did not obtain an answer to the clean opinion question.

Ms. Pember also offered testimony suggesting that Ernst & Young duped HFS executives who were asking questions about the use of the Ideon merger reserve.

> - During a meeting with Mr. Corigliano, Mr. Shelton and others, Mr. Monaco and Scott Forbes asked to speak with the auditors regarding the use of the Ideon merger reserve. See Tr. at 934.
>
> - Mr. Corigliano called Mr. Rabinowitz to the meeting. See id.
>
> - Following the meeting, Mr. Shelton told Ms. Pember that "Mr. Rabinowitz deserved an Academy Award for his performance in the

meeting with Mr. Scott Forbes and Mr. Monaco." Tr. at 937; see also id.

The obvious import of the government's examination of Ms. Pember was that Ernst & Young knew, for at least two years, that CUC's accounting for the Ideon merger reserve was improper, but that Ernst & Young nevertheless issued clean audit opinions and duped HFS into believing that the accounting for the merger reserves was proper. An alleged conspiracy involving Ernst & Young is materially different than the alleged conspiracy charged in the indictment. The testimony that the government elicited from Ms. Pember broadened the scope of the indictment and requires a mistrial.

## CONCLUSION

For the reasons set forth above, Mr. Forbes respectfully requests that the Court grant a mistrial or, in the alternative, strike the offending testimony and provide a limiting instruction.[2]

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)

---

[2] In addition to the constitutional problems with the testimony discussed above, the testimony was improper as an evidentiary matter for the reasons set forth on the record. It violated Fed. R. Evid. 401, 602, 701 & 801, and did not put into context alleged coconspirator statements.

>(202) 434-5029 (fax)
>bsimon@wc.com (e-mail)
>
>- and -
>
>James T. Cowdery (Bar No. ct05103)
>Thomas J. Murphy (Bar No. ct07959)
>COWDERY, ECKER & MURPHY, L.L.C.
>750 Main Street
>Hartford, CT 06103-2703
>(860) 278-5555 (phone)
>(860) 249-0012 (fax)
>tmurphy@cemlaw.com (e-mail)
>
>Attorneys for Walter A. Forbes

Dated: October 25, 2005

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT WALTER A. FORBES FOR A MISTRIAL BECAUSE MS. PEMBER'S TESTIMONY CAUSED A CONSTRUCTIVE AMENDMENT AND A PREJUDICIAL VARIANCE to be sent on October 25, 2005 to the following by hand and via e-mail:

> Michael Martinez, AUSA
> Craig Carpenito, AUSA
> U.S. Department of Justice
> 450 Main Street, Room 320
> Hartford, CT 06103

and to the following via e-mail:

> Norman Gross, AUSA
> U.S. Attorney's Office
> District of New Jersey
> 401 Market Street
> Fourth Floor
> Camden, NJ 08101

_____
Barry S. Simon