UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2005 OCT 25 P 1:51
DISTRICT COURT
HARTFORD, CT.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AWT) |
| | : | |
| v. | : | October 25, 2004 |
| | : | |
| WALTER A. FORBES | : | |

**MOTION *IN LIMINE* OF THE UNITED STATES TO ADMIT INTO EVIDENCE GX 435 AND GX 1500**

<u>(GOVERNMENT'S RETRIAL MOTION NO. 6)</u>

The United States moves *in limine* for an order admitting into evidence GX 435 and GX 1500, two letters written by defendant Walter Forbes to Robert P. Rittereiser on August 16, 1993 and December 11, 1997, respectively. The grounds for this motion are set forth in the accompanying memorandum of law.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
Special Attorney
U.S. Department of Justice

By: NORMAN GROSS  *Norman Gross/de*
MICHAEL MARTINEZ  *Michael Martinez/de*
CRAIG CARPENITO
Special Attorneys
U.S. Department of Justice



Dated: October 25, 2005
Hartford, Connecticut

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AWT) |
| | : | |
| v. | : | October 25, 2005 |
| | : | |
| WALTER A. FORBES | : | |

FILED
2005 OCT 25 P 1:51
DISTRICT COURT
HARTFORD, CT.

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION *IN LIMINE* OF THE UNITED STATES TO ADMIT INTO EVIDENCE GX 435 AND GX 1500**

ARGUMENT

The Government seeks a ruling from this Court *in limine*, admitting into evidence GX 435 and GX 1500, two letters written by defendant Walter Forbes on August 16, 1993 and December 11, 1997, respectively, to Robert P. Rittereiser, the head of the compensation committee of CUC's Board of Directors. Forbes wrote those letters when he was the Chief Executive Officer and Chairman of the Board of CUC. In both of those letters, Forbes sought increased compensation for himself because of CUC's superior past financial performance, and specifically because of the growth in CUC's earnings and its stock price appreciation. For instance, in GX 435, Forbes "list[ed] a few of our accomplishments," including:

   1) Market cap hit $4 billion - 40 times our public offering just 10 years ago

   2) Last five years - top 30 in stock appreciation.

   3) Hit approximately 200th in market cap.

   4) Stock up 10 times since recap.

5) 1992 return on equity 48.8%.

GX 435, p. 1 (copy attached as Exhibit A hereto). Forbes also mentioned that "few, if any" of the public companies which paid their CEOs more than CUC was then paying Forbes "have our growth record in sales and earnings." Id. at p. 2. As a result of what Forbes plainly believed were superior results in earnings and stock price growth, he sought a one time increase of 15-20% in his salary ("rather than continuing the 6% increase" over the past four years), and a 7.5% increase in his overall supplemental retirement program. Id.

GX 1500, Forbes' December 11, 1997 to Rittereiser (attached hereto as Exhibit B) sounded essentially the same theme. After pointing out that CUC had "obviously a great year" and that CUC's "stock [had gone] to an all time high and a lot more," Forbes requested a bonus for himself of $1,200,000.[1]

Even though these two exhibits were admitted during the initial trial on cross-examination of Forbes, Initial Tr. 14021, 14066, there is no impediment to admission of those exhibits during the Government's case-in-chief during the retrial. First, Forbes himself has previously authenticated, in his testimony

---

[1] In GX 1500, Forbes also sought a $1,100,000 bonus for co-conspirator Kirk Shelton and for Christopher McLeod. The Government has not alleged that McLeod was a co-conspirator. He was, however, like Forbes and Shelton, a member of the Office of the President, CUC's most senior managers who effectively ran the company. Initial Tr. 11626-29, 11741-42, 13561-66; DX 7602.

2

during the initial trial, both GX 435 and GX 1500 as letters that he personally wrote to Rittereiser, and both bear his signature. Initial Tr. 14021-25, 14066-67; see GX 435 and GX 1500. Forbes' testimony from the first trial is more than sufficient to establish the authenticity of the two letters. See United States v. Wittig, 2005 WL 2006822, *1 (D.Kan., Aug. 19, 2005) (rejecting defense challenge to the testimony of the Government's summary witness regarding "exhibits [that] were authenticated by prior testimony of [co-]defendant Lake.")

Second, Forbes' statements in letters that he personally wrote are plainly admissible against Forbes during the retrial pursuant to Fed. R. Evid. 801(d)(2)(a) as admissions of a party. United States v. Moran, 759 F.2d 777, 786 (9th Cir. 1985)(holding that "letters . . . signed by [the defendant] are admissible as admissions of a party opponent under Rule 801(d)(2)(A)"); accord, United States v. Pickard, 278 F.Supp.2d 1217, 1234 (D.Kan. 2003); see generally United States Meskini, 319 F.3d 88, 93 (2d Cir. 2003)(evidence regarding the defendant's out-of-court conversation was admissible as a statement by party opponent).

Finally, Forbes' statements in the letters, seeking higher compensation from CUC because of the company's strong financial performance satisfies the very broad standard for relevance under Fed. R. Evid. 401. "Evidence of [the

3

defendant's] motive [to commit the charged crime] is generally admissible where relevant." United States v. Noland, 960 F.2d 1384, 1388 (8th Cir. 1992). See generally United States v. Reed, 639 F.2d 896, 907 (2d Cir. 1981)(affirming the admission of motive evidence in a prosecution for conspiracy to commit securities fraud and securities fraud); United States v. Sackett, 598 F.2d 739, 742 (2d Cir. 1979)(affirming the admission of motive evidence in a prosecution for making a false statement to a federally insured bank).

Here, the indictment charges that Forbes had a personal financial motive to participate in the charged conspiracy, alleging that the principal goals of the charged conspiracy included:

> a) to fraudulently inflate the earnings CUC reported to the SEC and the investing public in order to artificially increase the price of CUC stock; . . . and e) for defendant **WALTER A. FORBES** to personally enrich himself through salary, bonuses, stock options and capital appreciation of shares they held.

Proposed Redacted Indictment for Retrial, Count 1, ¶ 38.

Evidence of Forbes' attempt to profit from, and his evident belief that he would profit from the financial success of the charged scheme to fraudulent overstate earnings in order to increase CUC's and Cendant's stock price is relevant to show Forbes' financial motive to commit the charged crimes. See United States v. Murphy, 935 F.2d 899, 901 (7th Cir. 1991) (in a prosecution for making false statements in order to obtain AFDC,

4

the district court properly admitted into evidence copies of the AFDC checks that the defendant received in order to prove her motive for her fraudulent failure to report as income certain disability benefits"); see generally United States Ewings, 936 F.2d 903, 906 (7th Cir. 1991) ("in crimes where the object is financial enrichment, evidence that one has been enriched is probative of participation in the crime"); United States v. Decicco, 370 F.3d 206, 214 (1st Cir. 2004) (reversing, on the Government's appeal, the district court's exclusion of testimony of the defendant's accountant that defendant owed substantial taxes at the time of the charged arson and fraudulent statements to defendant's insurer; the evidence was offered to "establish the tax liabilities in order to show for what purpose the fraudulently obtained insurance proceeds were intended . . . . [where] the motive of the charged mail fraud can be properly alleged to have been pecuniary gain"). That evidence is particularly probative where the cornerstone of Forbes' defense is that he was supposedly ignorant of, and therefore had no intention to participate in the charged fraudulent scheme. Retrial Tr. 59-60.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that this Court admit GX 435 and GX 1500 into evidence during the retrial.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
Special Attorney
U.S. Department of Justice

NORMAN GROSS  *Norman Gross/de*
MICHAEL MARTINEZ  *Michael Martinez/de*
CRAIG CARPENITO
Special Attorneys
U.S. Department of Justice

Dated: October 25, 2005
Hartford, Connecticut



707 Summer Street
P.O. Box 1000
Stamford, CT 06904-2040
203-324-9261

## CUC INTERNATIONAL

August 16, 1993

Mr. Robert P. Rittereiser
Trustee
DBL Liquidating Trust
450 Lexington Avenue, Suite 1450
New York, NY  10017

Dear Bob:

As I have mentioned to you, I feel it is appropriate to look at my overall compensation more seriously this year than in the past.

The basic point that I would make is that CUC is a much larger company than I think most people realize and, while I am not unhappy with my compensation to date, I think it is appropriate to make several adjustments, none of which are that significant.

As I do every year at this time, I will list a few of our accomplishments in no particular order:

Financial Accomplishments

1)   Market cap hit $4 billion - 40 times our public offering just 10 years ago.

2)   Last five years - top 30 in stock appreciation.

3)   Hit approximately 200th in market cap.

4)   Stock up 10 times since recap.

5)   1992 return on equity 48.8%

6)   CUC should have $100 million in cash at year end, lacking additional acquisitions.

Strategic Accomplishments

1)   We have successfully diversified our membership base.

2)   We are still adding 2-3 million members a year.



GOVERNMENT EXHIBIT F 9/29 712486
EX. 435
02CR264

- 2 -

3) We have successfully positioned ourselves as a major player in the upcoming interactive TV world. (Our willingness to continue investing in the on-line world in the last 10 years has proven to be a smart decision.)

We continue to have no significant management turnover and continue to demonstrate our creativity and flexibility, as well as maintain very tight control over all costs and expenses. Although it is not particularly relevant, it is fun to realize that we have a market cap that is larger than companies such as Compact Computer, Melon Bank, Transamerica, Genentech, TRW and Wrigley. In short, I believe there are only a handful of companies that have had a better 10 years than we have and, even more importantly, there are even fewer that are in a better strategic position than we are. As many of our shareholders are beginning to realize, we are extremely well positioned for the 90's.

The average current compensation for CEO's of companies who had a market cap of $4 billion last year is $1,635,000, while mine was $1,073,000. It goes without saying that few, if any, of those companies have our growth record in sales and earnings. Because of our exceptional record and the tremendous increase in the size of our operation, I feel it is appropriate to discuss the following areas in regards to my compensation:

1) I believe that this year my salary should be increased one time between 15 and 20% rather than continuing the 6% increase I've had over the last 4 years.

2) I think my overall supplemental retirement program should be increased by 7.5 percentage points.

Two items we should discuss are. One, I am beginning to have concerns in the area of personal security. Unfortunately, in the Stamford area, I have become a public figure and the press delights in pointing out various aspects of my financial situation on a regular basis. In addition, we have enough employees now that you begin to worry about the occasional disgruntled one. While I do not have specific recommendations about this, I would like to discuss it with you. I know we are the only major company in our area without security.

Two, on a more complex subject, I continue to be concerned that some of our top executives may leave the company since they have sufficient funds to do whatever they want. I think it would be appropriate to set aside a special pool of 500,000 options significantly below market; i.e., create a potential major reward as a carrot. My plan would be to have it known that we have set these options aside and they may be awarded over the next several years to senior executives who have made a significant contribution to the company. My general idea here, which I admit is not

712487

CN 0857

completely worked out, would be to have it known that these options exist, but not pass them out immediately. I think that this carrot might make a difference in terms of people thinking of leaving. Over time, we would give them out for exceptional performance. I think that options are slightly more favorable than restricted stock, although restricted stock would serve the purpose as well.

Bob, this is a short list because I think that our compensation policies are basically in good shape. I look forward to discussing these issues at our Compensation Committee Meeting, which will be immediately after the Board dinner on September 14th at the Peninsula Hotel.

Please let me know if you need any additional information.

Best regards,

[signature: Walter]

WAF:nak

bcc: R. Tucker

712488

Exhibit B

DEC-12-1997  11:23           GRUNTAL COMPANY                    212 267 3011    P.03/05
                    Stamford, CT 06904 7049                                WALTER A. FORBES
                    203-965-3118 FAX 203 977-8501              Chairman and Chief Executive Officer


# CUC INTERNATIONAL

December 11, 1997

Mr. Robert P. Rittereiser
Gruntal & Company, Inc.
14 Wall Street, 14th Floor
New York, NY 10005

Dear Rit:

I will skip the commercial, but obviously a great year. Putting together this merger, stock going to an all time high and a lot more.

The chart is self explanatory and is all cash. Kirk, Chris and I would normally get a higher award (see below) and then convert to options keeping cash equal to salary.

|        | Recommended Bonus |
|--------|-------------------|
| Forbes | $1,200,000.       |
| Shelton| $1,100,000.       |
| McLeod | $1,100,000.       |

We have to get this done by Tuesday.

Thanks for the help.

All the best,

Walter

Walter A. Forbes

WAF/bf

Attachment

GOVERNMENT EXHIBIT F 9/29
EX. 1500
02CR264

FILE No. 640 12/11 '97 10:48 ID:CUC INTERNATIONAL, INC.   203 977 8501    PAGE  2

CONFIDENTIAL    RTT                    4

GRUNTAL COMPANY
CUC Senior Management
Compensation Summary

| Employee | Business | 98 Base | 98 Bonus (target) | Total $ | final y or n |
|---|---|---|---|---|---|
| Walter Forbes | Corp | $1,250 | $825 | $2,075 | y |
| Kirk Shelton | Corp | $650 | $550 | $1,200 | y |
| Chris McLeod | Corp/software | $650 | $550 | $1,200 | |
| Tony Menchaca | Compucard | $300 | $265 | $565 | y |
| John Fullmer | CMO | $300 | $265 | $565 | y |
| Bob Sarkie | Epub | $300 | $250 | $550 | y |
| Bill Avery | International | $280 | $220 | $500 | y |
| Paul Walsh | Wright Express | $300 | formula | | |
| Cosmo Corigliano | CFO | $300 | $200 | $500 | y |
| Amy Lipton | Gen Counsel | $300 | $200 | $500 | y |
| Ken Keith | FISI | $230 | $180 | $410 | y |
| Vince D'Agostino | BCI | $255 | $150 | $405 | y |
| Rick Fernandes | Plextel (dating) | $220 | $160 | $380 | |
| Jon Boyman | CIO | $245 | $135 | $380 | y |
| Don Taylor | FISI | $190 | $150 | $340 | |
| Scott Hancock | Travel | $195 | $110 | $305 | y |
| Trish Flynn | Epub | $175 | $90 | $265 | |
| Mark Metcalfe | Shopping | $175 | $95 | $270 | y |
| Pam Flower | BCI | $165 | $80 | $245 | |
| Neal Metviner | Compucard | $180 | formula | | y |
| | | | $4,475 | | |

Page 1

CONFIDENTIAL   RTT         5

**CERTIFICATE OF SERVICE**

    The undersigned certifies that on this day I caused to be served copies of the foregoing upon the following via email and hand delivery:

Barry S. Simon, Esq.
Williams & Connolly LLP

*/s/ Debra M. Elliott*
DEBRA M. ELLIOTT
Paralegal Specialist
U.S. Department of Justice

Dated:    October 25, 2005
             Hartford, Connecticut