# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------
UNITED STATES OF AMERICA,      )
                               )
v.                             )     Criminal No. 3:02CR00264(AWT)
                               )
WALTER A. FORBES               )
------------------------------
```

### Ruling on Anne Pember's Motion to Quash the Sixth and Seventh Rule 17(c) Subpoenas of Defendant Walter A. Forbes

For the reasons set forth below, non-party Anne E. Pember's motion to quash, which has been joined by Casper Sabatino and Kevin Kearney,[1] was granted. The seventh subpoena contains demands similar or identical to demands that were previously quashed by the court in connection with the initial trial, and it was served to preserve those subpoena demands with respect to the this retrial. With the exception of certain duplicative paragraphs that also appear in the seventh subpoena and have been withdrawn, the sixth subpoena contains new demands.

## I.  Legal Standard

Federal Rule of Criminal Procedure 17(c) provides:

A subpoena may order the witness to produce any books, papers, documents, data or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1). Courts may modify or quash a subpoena

---

[1] See Doc. Nos. 1737 and 1777.

*duces tecum* "if compliance would be unreasonable or oppressive."
Fed. R. Crim. P. 17(c)(2).

Rule 17(c) is not intended to be used as a discovery device
for criminal cases. United States v. Nixon, 418 U.S. 683, 698
(1974) (citing Bowman Dairy Co. v. United States, 341 U.S. 214,
220 (1951)). Rule 17(c)'s "chief innovation was to expedite the
trial by providing a time and place before trial for the
inspection of subpoenaed materials." Id. at 698-99. In Bowman
Dairy, the Court quoted the following statement by a member of
the advisory committee:

> [W]hile normally under a subpoena books and other things
> called for would merely be brought into court at the time
> of the trial, let us say immediately before they are to
> be offered in evidence, there is a provision in this rule
> that the court may, in the proper case, direct that they
> be brought into court in advance of the time that they
> are offered in evidence, so that they may then be
> inspected in advance, for the purpose of course of
> enabling the party to see whether he can use it or he
> wants to use it.

341 U.S. at 220 n.5 (citing Statement of Mr. G. Aaron Youngquist,
Member of the Advisory Committee, Federal Rules of Criminal
Procedure, Proceedings of the Institute on Federal Rules of
Criminal Procedure (New York University School of Law, Institute
Proceedings, Vol. VI, 1946) ¶ 167-68). "It is therefore
necessary to guard against action under Rule 17(c) which,
contrary to its spirit and purpose, is aimed at obtaining
discovery." United States v. Jannuzzio, 22 F.R.D. 223, 227 (D.
Del. 1958) (citing State v. Hutchins, 138 A.2d 342, 345-46 (Del.

Super. 1957)).

A party seeking pretrial production and inspection of documents and other objects must satisfy four requirements. That party must show:

(1) that the documents and/or objects are evidentiary and relevant;

(2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence;

(3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and

(4) that the application is made in good faith and it is not intended as a general "fishing expedition."

Nixon, 418 U.S. at 699-700.[2]

---

[2] After stating these four requirements, the Court then stated "[a]gainst this background, the Special Prosecutor, in order to carry his burden, must clear three hurdles: 1) relevancy; 2) admissibility; and 3) specificity." Nixon, 418 U.S. at 700. Some courts have interpreted this language to mean that the Nixon test may be expressed as a three part test: 1) relevancy; 2) admissibility; and 3) specificity. See United States v. Arditti, 955 F.2d 331, 345 (5th Cir. 1992); United States v. Weissman, No. 01CR529, 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002); United States v. King, 194 F.R.D. 569, 573 (E.D. Va. 2000); United States v. Nachamie, 91 F. Supp.2d 552, 562 (S.D.N.Y. 2000); United States v. Ruedlinger, 172 F.R.D. 453, 456 (D. Kan. 1997); United States v. Cherry, 876 F. Supp. 547, 552 (S.D.N.Y. 1995); United States v. Ausbrook, No. 92-40064-01, 1993 WL 270506, at * 2 (D. Kan. June 4, 1993); United States v. Moore, No. 92CR200, 1992 WL 266938, at *1 (E.D.N.Y.

To satisfy the first requirement under Nixon, the party seeking production must show that the subpoenaed documents or other objects are relevant and admissible. See id. at 700. Thus, there must be "a sufficient likelihood" that each of the documents or other objects sought contains materials "relevant to the offenses charged in the indictment," and the party seeking production must make a "preliminary showing that each of the subpoenaed [documents or other objects] contains evidence admissible with respect to the offenses charged in the indictment." Id. For example, in United States v. Caruso, the defendant was a former partner and managing partner at the accounting firm of Coopers & Lybrand ("C&L"). 948 F. Supp. 382, 397 (D. N.J. 1996). The indictment charged that he had engaged in a scheme to defraud C&L. Id. The defendant sought to compel C&L to produce certain documents. Id. The court concluded that the defendant had met his burden of showing that the documents he sought were "evidentiary, relevant, and admissible." Id.

> The defendant claims, based upon his first hand knowledge
> as managing partner at C&L, that the documents will
> demonstrate a variance between policy and actual practice

Sept. 29, 1992); United States v. Burger, 773 F. Supp. 1419, 1425 (D. Kan. 1991); United States v. Rich, No. S83CR.579, 1984 WL 845, at *3 (S.D.N.Y. Sept. 7, 1984). In Nixon, however, it appears that the party seeking production had satisfied the second and third requirements and that what remained to be analyzed were the first and fourth requirements. This court concludes that the proper approach for determining the propriety of a Rule 17(c) subpoena is to consider each of the four requirements under Nixon set forth above.

at C&L with regard to, <u>inter</u> <u>alia</u>, partner relocation. The defendant contends that his actions in this case were in accord with C&L's actual practices and that he therefore did not possess criminal intent when he engaged in the activities charged in the indictment.

<u>Id.</u> at 398.  The court held that such documents had evidentiary value because they were probative of the defendant's state of mind at the time of the alleged offense.  <u>Id.</u> at 397.  Similarly, in <u>United States v. King</u>, the court determined that unedited, unbroadcast videotapes and a reporter's notes from her interview with an unindicted co-conspirator who was certain to be a government witness were relevant and admissible, because the witness' statements in the interview would be useful for impeachment.  194 F.R.D. 569, 573 (E.D. Va. 2000).  The documents or other objects must satisfy the requirements of relevancy and admissibility at the time they are sought.  <u>United States v. Marchisio</u>, 344 F.2d 653, 669 (2d Cir. 1965).

Conclusory allegations of relevancy and admissibility are not sufficient.  <u>United States v. Rich</u>, No. S83CR.579, 1984 WL 845, at *3 (S.D.N.Y. Sept. 7, 1984) ("mere conclusory allegations devoid of support" to be inadequate); <u>United States v. King</u>, 164 F.R.D. 542, 545 (D. Kan. 1991) ("conclusory allegations of relevance and admissibility are insufficient."); <u>Jannuzzio</u>, 22 F.R.D. at 227-228 (defendants' affidavits stating that subpoenaed papers "may be material to the conduct the defense of this action" failed to give "any clue as to how or under what

circumstances the defendants could successfully offer in evidence" the materials sought).

Defendant Forbes has emphasized the sentence in <u>Bowman Dairy</u> that states that "[t]here was no intention to exclude from the reach of the process of the defendant any material that . . . could be used at the trial." <u>Bowman Dairy</u>, 341 U.S. at 221. Relying on this language, he has argued that the proper interpretation of the term "evidentiary" is that it encompasses any material that could be <u>used</u> at trial. The court finds defendant Forbes' argument unpersuasive because it ignores the context in which this sentence appears in the Court's opinion. The sentence immediately following reads: "In short, any document or other materials, <u>admissible as evidence</u>, obtained by the government by solicitation voluntarily from third persons is subject to subpoena." <u>Id.</u> (emphasis added).

Under <u>Nixon</u>, the party seeking production must designate with specificity the documents or other objects to be produced. <u>Nixon</u>, 418 U.S. at 700. This specificity requirement ensures that a 17(c) subpoena is not turned into a "fishing expedition to see what may turn up." <u>Bowman Dairy</u>, 341 U.S. at 221. "[T]he subpoena must refer to specific documents, or at least, to specific kinds of documents." <u>United States v. Carroll</u>, No. 96-20024, 1996 WL 442213, at *3 (D. Kan. July 3, 1996); <u>see also</u> <u>United States v. Ruedlinger</u>, 172 F.R.D. 453, 456 (D. Kan. 1997)

(citing 2 Charles A. Wright, Federal Practice and Procedure ¶275 at 159 (1982)).  This requirement is satisfied if the subpoena identifies "certain documents or sharply defined groups of documents."  Ruedlinger, 172 F.R.D. at 456.  This requirement of specificity must, of course, be considered in light of the circumstances of the particular case.  In Caruso, after noting that "[t]he defendant's subpoena is targeted at uncovering specific documents, or types of documents, which are relevant to establishing a potential defense for the defendant," the court concluded that the subpoena, which was written in broad terms,[3] was "*as specific as could be reasonably expected under the circumstances* (i.e., where the defendant does not actually possess the documents, but has first hand knowledge as former managing partner about what the documents will purportedly

_____

[3]  The subpoena called for production of :
> 1. All documents concerning [C & L's] policies and practices regarding partner relocation, subsidies paid in lieu of relocation, and reimbursement to partners or others in connection with partner relocation....
> ....
> 2. All documents concerning reimbursement and subsidy payments made as a result of the relocation of [the names of several individuals are omitted].
> 3. All documents concerning [C & L's] policies and practices with respect to the authority of managing partners within their area of geographic responsibility, including but not limited to documents concerning managing partners' authority to make decisions regarding charitable contributions and accounting therefor, office expenses, the discounting of bills, and other subjects as to which managing partners had decisionmaking responsibility...

Caruso, 948 F. Supp. at 396.

contain)... ." 948 F. Supp. at 399 (emphasis added). In
addition, this requirement of specificity provides the subpoenaed
party with sufficient knowledge about what documents or other
objects are being sought to formulate objections related to
relevancy or admissibility. United States v. Ruedlinger, 172
F.R.D. 453, 456 (D. Kan. 1997). Failure to set forth "with
sufficient specificity the evidentiary nature of the requested
materials ... forc[es] the court to speculate as to the specific
nature of their contents and its relevance." United States v.
Arditti, 955 F.2d 331, 346 (5th Cir. 1992).

In almost every case where the requesting party broadly
requests "any and all" documents in a broad category, courts will
narrow the request or grant the motion to quash the request. See
United States v. Anderson, 31 F. Supp.2d 933, 943 (D. Kan. 1998)
(narrowing request for "any and all express or implied threats
against any expected government witness"); U.S. v. Colima-Monge,
No.96-305-FR.,1997 WL 325318, at *5 (D. Or. June 6, 1997)
(quashing request for "[a]ny and all records ... setting forth
guidelines, protocol, or other regulations promulgated by any
agency concerning the operation of ROCN agents and informants...
."); Ruedlinger, 172 F.R.D. at 456 (quashing request for any and
all audit reports prepared by IRS pertaining to defendant's
company); United States v. Jackson, 155 F.R.D. 664, 668
(D.Kan.1994) (quashing subpoenas and stating that the "subpoenas

8

employ such terms as 'any and all documents' or 'including, but not limited to;' these are indicia of a fishing expedition"). Such broad requests, which the courts often refer to as "fishing expeditions, fail to satisfy the specificity requirement.

By way of contrast, sharply drawn subpoenas have been enforced.  For instance, in United States v. King, the court permitted pretrial production and inspection by a third party of "[a]ny and all recordings, of whatever nature, in unedited form, of any statements by or conversations with any person known or purporting to be a witness to alleged conduct in this case, and any notes, unedited or redacted of said statements or conversation with or between reporter Jean Zillioni [sic] and Apryl Gauldin." 194 F.R.D. at 571 n.1, 575.  The court stated that the defendants' subpoena was not a fishing expedition because it sought notes and tapes from conversations with witnesses specific to the case.  Id. at 575.  The court further stated that the record indicated only one witness had been interviewed by the reporter, and thus, modified the subpoena to require production of Gauldin's interview only.  Id.  Other courts have required pretrial production and inspection based upon narrowly drawn subpoenas.  See Nixon, 418 U.S. 683;  United States v. Nachamie, 91 F. Supp. 2d 552 (S.D.N.Y. 2000); United States v. Beckford, 964 F. Supp. 1010 (E.D. Va. 1997); Caruso, 948 F. Supp. 382; United States v. Olin Mathieson Chemical Corp.,

36 F.R.D. 18 (S.D.N.Y. 1964).

In Nixon, the Court stated with respect to pretrial production of impeachment material, that "*[g]enerally*, the need for evidence to impeach witnesses is insufficient to require production in advance of trial. . . . Here, however, there are other valid potential evidentiary uses for the same material ..." Nixon, 418 U.S. at 701 (emphasis added). This language has given rise to conflicting interpretations. Some courts have found that Nixon established a complete bar to pretrial production of impeachment material. Others have concluded that while generally such production is not allowed, in certain instances pretrial production of impeachment material is appropriate.

The theory behind prohibiting the production of impeachment material pursuant to a Rule 17(c) subpoena is that impeachment "materials ripen into evidentiary material only if and when the witness testifies at trial." United States v. Cuthbertson, 630 F.2d 139, 144 (3d Cir.1980), cert. denied, 449 U.S. 1126 (1981); see also United States v. Weissman, No. 01CR529, 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002) (stating that "several cases articulate an absolute prohibition on the use of a Rule 17(c) subpoena solely for impeachment purposes"); United States v. Cherry, 876 F. Supp. 547, 552 (S.D.N.Y. 1995) (stating that "documents are not evidentiary for Rule 17 (c) purposes if their use is limited to impeachment"); United States v. Messino, 882 F.

Supp. 115, 116 (N.D. Ill. 1995) (holding that the subpoena requesting impeachment material was premature because it was not certain whether the witness would testify and the witness had not yet testified).  In <u>Cuthbertson</u>, the court did not allow pretrial production of documents regarding the credibility of potential witnesses.  <u>Cuthbertson</u>, 630 F.2d at 145.  The court stated that impeachment materials "although subject to subpoena under Rule 17(c), generally are not subject to production and inspection by the moving party prior to trial." <u>Id.</u> (citing <u>Nixon</u>, 418 U.S. at 701).  The court noted that the defendants would get the impeachment materials, "if at all, only after the witness testifies at trial."  <u>Id.</u>

Other courts have held that in certain instances, pretrial production of impeachment materials is appropriate.  In <u>King</u>, the court noted that there was no issue in <u>Nixon</u> as to ripeness.  194 F.R.D. at 574.  The court stated:

> It follows, therefore, that where it is known with certainty before trial that the witness will be called to testify, the admissibility determination, within the meaning of <u>Nixon</u>, can be made before trial, and the statements properly may be considered evidentiary. ... In sum, witness statements useful for impeachment purposes are evidentiary within the meaning of <u>Nixon</u> ... .  The decisions which have analyzed the issue carefully have recognized as much by disposing of the "admissibility/evidentiary" inquiry as a question of timing.

<u>Id.</u> (citations omitted).  The court further stated that opinions articulating an absolute bar to using Rule 17(c) subpoenas to

11

secure impeachment material before trial ignore "the plain language of Rule 17(c), [and are] at odds with the well-reasoned decisions which have made the issue a discretionary one depending upon the facts of particular cases and upon the certainty with which the court could say that the person giving the statement would testify at trial." Id. at 574 n.5. The court concluded that such an interpretation of Rule 17(c) contradicts the rule's chief innovation "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." Id. (citing Nixon, 418 U.S. at 698-99). The court further concluded that a blanket prohibition against pretrial production of impeachment material is at odds with the third factor of the Nixon test, which requires a showing that the material is essential for proper trial preparation. King, 194 F.R.D. at 574 n.5.

In a criminal case in this district prior to Nixon, the court ordered pretrial production of impeachment materials, where the trial was to begin the following month to avoid "frequent and lengthy delays which would otherwise be necessary." United States v. Shackney, 31 F.R.D. 550, 552 (D. Conn. 1962). In a post-Nixon case, the Second Circuit upheld a district court's decision to require pretrial production of impeachment material that the defendants had demonstrated was relevant and admissible. In re Irving, 600 F.2d 1027, 1034-36 (2d Cir. 1979). The court

concluded that such production was necessary for "adequate production" of the defendants' case.  Id. at 1034.

Irving and King support pretrial production of impeachment material where the requesting party satisfies the requirements under Nixon.  This court concludes that Nixon did not create a bar to pretrial production of impeachment material and that courts should consider the facts in each case to determine whether the requirements for pretrial productions have been met.

## II. Discussion

### A. The Seventh Rule 17(c) Subpoena

During the course of this case, non-party Anne Pember has moved to quash a total of seven subpoenas served on her by defendants Forbes and Shelton.  The second and fourth Forbes/Shelton subpoenas were ultimately withdrawn by the defendants.  The seventh subpoena contains demands similar or identical to demands that were previously quashed by the court in connection with the initial trial, and it was served to preserve those subpoena demands with respect to the this retrial.  With the exception of certain duplicative paragraphs that also appear in the seventh subpoena and have been withdrawn, the sixth subpoena contains new demands.

The first subpoena, which was the subject of Anne E. Pember's Motion to Quash the Rule 17(c) Subpoena of Defendants Walter A. Forbes and E. Kirk Shelton (Doc. No. 107), was quashed

on May 13, 2004.  <u>See</u> Trial Tr. 596.  Casper Sabatino, Steven
Speaks and Kevin Kearney joined in that motion to quash and
agreed to be bound by the ruling on it.  <u>Id.</u>  Pember's motion to
quash the first subpoena was, with numerous other motions to
quash filed by non-parties, the subject of a hearing on motions
to quash on March 1, 2004.  After consideration of the arguments
and representations made at that hearing, the court concluded
that the defendants had not met their burden of showing that
their application had been made in good faith and with sufficient
specificity so as not to amount to a "fishing expedition."  The
court's determination was based on its conclusion that the
subpoena demands were as broad as any request for production in a
civil case could be and that, contrary to the spirit and purpose
of Rule 17(c), the defendants' subpoenas were aimed at obtaining
discovery.  <u>See</u> Hearing Tr. (3/1/04) at 12-13, 18.  The court's
conclusion was reenforced by the fact that, although there has
been extensive discovery in the related civil litigation, Cendant
Corporation had nonetheless produced an <u>additional</u> million papers
as a result of the 17(c) subpoena served on it in this case.  <u>See</u>
<u>id.</u> at 35.  In the final analysis, the court found persuasive the
position articulated by counsel for Cosmo Corigliano, i.e., that
when a defendant serves a thoroughly improper subpoena that fails
under the <u>Nixon</u> test it should be quashed and that defendant can
then come back with a proper subpoena, which can then be

14

enforced.  <u>See</u> <u>id.</u> at 161.  Proceeding in any other manner would simply encourage an inappropriate practice of serving, for tactical reasons, an overly broad Rule 17(c) subpoena, knowing that one could receive more than what one was entitled to receive from recipients who attempt a good faith negotiation, and then, possibly obtain additional documents once the court was presented with a motion to quash.  The court notes that during the motions hearing on March 1, 2004, it initially attempted to force the disputants to compromise but, upon reflection, concluded that was not the appropriate way to proceed.

The third subpoena was the subject of Anne E. Pember's Motion to Quash the Third Rule 17(c) Subpoena of Defendants Walter A. Forbes and E. Kirk Shelton (Doc. No. 557), which motion was granted in part and denied in part on May 20, 2004.  The court's analysis was set forth on May 18 (Trial Tr. 1040-1054), May 19 (Trial Tr. 1510-1521) and May 20 (Trial Tr. 1528-1531).  The court notes that Pember's counsel made oral proffers to the government on May 26, 1998, June 19, 1998, and July 10, 1998.  In response to a request from the defense for any "innocence proffers" made by counsel for government witnesses, the government sent defense counsel a letter dated April 29, 2003.  The letter summarized the three sessions with Pember's counsel without identifying what statements had been made at which sessions.  The court concluded that the appropriate course of

action was to require the government to provide information in a form that would enable the defense to determine what statements were made on which dates.  As part of the process, the court conducted an *in camera* review of the notes taken by the government at each of these sessions.  See Trial Tr. 1051.

The fifth subpoena, which was served on Pember by defendant E. Kirk Shelton, was the subject of Anne E. Pember's Motion to Quash the Fifth Rule 17(c) Subpoena of Defendant E. Kirk Shelton (Doc. No. 800), which motion to quash was granted on June 1, 2004 for the reasons set forth by the court during oral argument.  See Trial Tr. 2645-2654.  The court notes that it was made clear by counsel for Pember that any statements made to counsel by Pember during the course of her representation of Pember were not for the purpose of having counsel pass on the statements.  See Trial Tr. 2651-2653.  This was consistent with Pember's testimony at trial.  See Trial Tr. 3074-3075.

Therefore, the seventh subpoena was quashed because the subpoena demands had either heretofore been previously quashed for the reasons set forth above or had been rendered moot because the materials demanded had been furnished to defendant Forbes.

**B.   The Sixth Rule 17(c) Subpoena**

Paragraph 1 of the sixth subpoena was quashed because the government was providing to the defense all quarterly reports filed with the S.E.C. since March 31, 2004.  Paragraph 2 was

quashed based on the representation by Pember's counsel that no such documents exist. Paragraph 3 was quashed based on the representation by Pember's counsel that she would provide the defense with a letter listing the dates on which Pember had met with or spoken to the government since June 9, 2004; to the extent the subpoena demand was broader than that, it was quashed for the reasons the prior, broader subpoena demand was quashed.

Paragraph 4 of the sixth subpoena was quashed because it is a subset of a previously quashed demand, as set forth in the Memorandum of Law in Support of Non-Party Anne E. Pember's Motion to Quash the Sixth and Seventh Subpoenas of Defendant Walter A. Forbes (Doc. No. 1732) at page 5. Paragraph 8 was quashed based on the representation by Pember's counsel that she would provide a letter stating the total fees and expenses that had been advanced; to the extent Paragraph 8 repeats the previous subpoena demands for billing records it was quashed for the reasons the court quashed prior, similar demands. Paragraph 10 was quashed based on the fact that defendant Forbes already has in his possession the only agreements Pember has made with the government; to the extent Paragraph 10 demands a broader range of documents memorializing Pember's communications with the government since June 9, 2004 concerning her plea agreement, that demand was quashed for the reasons the substantially similar demand was quashed earlier.

The remaining demands in the sixth Rule 17(c) subpoena are duplicative of the demands in the seventh Rule 17(c) subpoena.

### C. <u>Casper Sabatino and Kevin Kearney</u>

Casper Sabatino and Kevin Kearney joined in Anne E. Pember's Motion to Quash the Sixth and Seventh Rule 17(c) Subpoenas. Those subpoenas are also quashed, provided that each of Sabatino and Kearney provided defendant Forbes with a letter summarizing the dates of his meetings with the government since his testimony in 2004 and summarizing the total amount of legal fees and expenses that have been advanced to him by Cendant.

## III. Conclusion

For the reasons set forth above, Anne M. Pember's Motion to Quash the Sixth and Seventh Rule 17c Subpoenas of Defendant Walter A. Forbes (Doc. No. 1732) was GRANTED.

It is so ordered.

Dated this 28th day of October 2005 at, Hartford, Connecticut.

/s/
_____
Alvin W. Thompson
United States District Judge
