UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>WALTER A. FORBES. | )<br>)<br>)<br>)<br>)   No. 3:02CR264 (AWT)<br>)   October 29, 2005<br>)<br>) |

**MOTION OF DEFENDANT WALTER A. FORBES FOR A MISTRIAL DUE
TO THE TESTIMONY OF KEVIN KEARNEY**
(Forbes Retrial Motion No. 18)

Defendant Walter A. Forbes, through undersigned counsel, respectfully moves for a mistrial due to the testimony of Kevin Kearney. The grounds for this motion are set forth in the accompanying memorandum of points and authorities.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703

(860) 278-5555 (phone)  
(860) 249-0012 (fax)  
<u>tmurphy@cemlaw.com</u> (e-mail)

Attorneys for Walter A. Forbes

Dated: October 29, 2005

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing MOTION OF DEFENDANT WALTER A. FORBES FOR A MISTRIAL DUE TO THE TESTIMONY OF KEVIN KEARNEY to be sent on October 29, 2005 to the following via e-mail (and by hand on October 31):

>Michael Martinez, AUSA
>Craig Carpenito, AUSA
>U.S. Department of Justice
>450 Main Street, Room 320
>Hartford, CT 06103

and to the following via e-mail:

>Norman Gross, AUSA
>U.S. Attorney's Office
>District of New Jersey
>401 Market Street
>Fourth Floor
>Camden, NJ 08101

_____
Barry S. Simon

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>WALTER A. FORBES. )<br>)<br>) | No. 3:02CR264 (AWT)<br>October 29, 2005 |

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT WALTER A. FORBES FOR A MISTRIAL DUE TO THE TESTIMONY OF KEVIN KEARNEY**
**(Forbes Retrial Motion No. 18)**

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this memorandum in support of his motion for a mistrial due to the testimony of Kevin Kearney. The government elicited, and failed to correct, false and misleading testimony from Mr. Kearney. In addition to false testimony, Mr. Kearney offered improper lay opinion testimony that certain topside adjustments were "unsupported."

**ARGUMENT**

**I.   THE GOVERNMENT ELICITED AND FAILED TO CORRECT FALSE AND MISLEADING TESTIMONY FROM KEVIN KEARNEY.**

Due process prohibits the government from eliciting testimony that it knew or should have known was false or misleading. See, e.g., Napue v. Illinois, 360 U.S. 264, 269 (1959); United States v. Wallach, 935 F.2d 445, 456 (2d Cir. 1991); Memorandum in Support of Forbes Trial Motion No. 30 (filed Aug. 23, 2004) [Docket No. 1091] (incorporated herein by reference). In addition, the government has a duty to correct false testimony when it appears. See, e.g., Napue, 360 U.S. at

269-70 ("A lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth." (quotation omitted)).

As in the first trial, Mr. Kearney testified to "recollections" that Stuart Bell allegedly instructed him to make unsupported topside adjustments, that alleged coconspirators purportedly invoked the name Walter Forbes in connection with the alleged fraud, and that Cosmo Corigliano and Casper Sabatino supposedly instructed Mr. Kearney to withhold information from the auditors until Mr. Forbes approved press releases. See, e.g., Tr. at 1097-110, 1113. This testimony—which bore no resemblance to what Mr. Kearney told the government during several years of its investigation—was false, and the government knew or should have known that it was false. To make matters worse, in this retrial, Mr. Kearney testified to alleged "recollections" that he never described in numerous government interviews or in the prior trial of this matter. Compare Tr. at 1107-08 (alleging for the first time that Mr. Corigliano told him that Mr. Forbes wanted EPS to be a certain number because that was what Wall Street was expecting) with Tr. at 1186-87 (admitting that he did not make this allegation in the first trial or in the fifteen interviews that preceded the first trial). The government asked Mr. Kearney to reaffirm much of this false testimony on re-direct examination. See Tr. at 1194, 1197.[1]

---

[1]    His false and misleading testimony was not limited to these subject matters. See, e.g., Tr. at 1078-79, 1194-96, 1198.

Because Mr. Kearney provided testimony that was false and misleading in several respects, due process has been violated and a mistrial is required.

## II. THE GOVERNMENT ELICITED IMPROPER LAY OPINION TESTIMONY FROM KEVIN KEARNEY.

To satisfy Rule 701, the proponent of the testimony must satisfy <u>all three</u> of the rule's foundation requirements: (1) personal knowledge; (2) helpfulness; and (3) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. See United States v. Garcia, 413 F.3d 201, 211 (2d Cir. 2005); Forbes Retrial Motion *In Limine* No. 3 (filed Sept. 6, 2005) [Docket No. 1663] (legal argument incorporated herein by reference). The government failed to meet these foundational requirements when it elicited testimony from Mr. Kearney that certain topside adjustments were "unsupported." See, e.g., Tr. at 1070-73 (opining that GX 9512 contains unsupported topside adjustments); Tr. at 1073 ("Q. How many quarters, while you were employed at CUC, were topside adjustments made to overstate the income of the Comp-U-Card division? A. Every quarter, except I believe there was one quarter at the very beginning when I first started that actually was adjusting income, actually reducing it."); Tr. at 1074 (opining that GX 9322—a document from July 1993, the first quarter that Mr. Kearney worked at CUC—contained "[u]nsupported" topside adjustments); id. at 1076-78, 1095 (offering similar opinion testimony regarding GX 9322); Tr. at 1078-79 (testifying that unsupported topside adjustments happened "[e]very quarter while I was there" from "'93 to '97"); Tr. at 1091-92 (opining that

GX 9320—a July 31, 1993 press release from the first quarter that Mr. Kearney worked at CUC—contained unsupported topside adjustments); Tr. at 1093-96 (opining that GX 9321—a document from July 1993, the first quarter that Mr. Kearney worked at CUC—contained unsupported topside adjustments); Tr. at 1097-100 (opining that Mr. Bell instructed him to make unsupported topside adjustments every quarter in 1993-95); Tr. at 1104 (opining that Mr. Corigliano instructed him to make unsupported topside adjustments every quarter in 1993-95).[2]

### A.   Personal Knowledge

The government failed to establish that Mr. Kearney had personal knowledge to testify that topside adjustments made in the quarter ending July 31, 1993 (the first month he arrived at CUC) or in the years prior to 1995 were "unsupported." Indeed, <u>Mr. Kearney testified on cross-examination that when he started at CUC, Mr. Corigliano provided him with explanations for the topside adjustments and that those explanations appeared legitimate to Mr. Kearney</u>.

> Q. Now, sir, when you first started at CUC, did Mr. Corigliano provide you with some rationalizations for the topside adjustments that he was asking to you make?
>
> A. Yes.
>
> Q. And at the outset, these rationalizations that he gave to you sounded legitimate from your perspective as a CPA; am I correct?
>
> A. Yes.
>
> Q. And Mr. Corigliano never told you flat out that We're committing a fraud here; am I correct about that?
>
> A. Yes.

---

[2]   Mr. Kearney started at CUC in July 1993.  <u>See</u> Tr. at 1064.

Q. And for example, he would tell you on occasion that it was okay to make topside adjustments because he knew there was a receivable at BCI which would justify the adjustments; am I correct?

A. Yes.

Q. And he would give examples like that from time to time in order to convince you that what he was asking to you do was proper; am I correct?

A. Yes.

Q. And indeed, on occasion he would tell you that there was an excess in merger reserves, correct?

A. Yes.

Q. And you wouldn't know for sure whether there was; you relied upon him in that instance that there was such an excess, am I correct?

A. Yes.

Q. And sometimes he would use that as an excuse for why there should be a topside adjustment, indicating that it was a proper thing to do; am I correct?

A. Yes.

Q. And isn't it also true that from time to time he told you that the numbers would equal out in the end, something along those lines? Do you recall that?

A. Yes.

Q. And you understood from him when he made such statements that he was telling you that he was acting properly and you were acting properly by making these topside adjustments; am I correct?

A. Yes.

Q. And these explanations sounded legitimate to you at that time, didn't they?

A. To a degree.

Q. Do you recall testifying in a prior proceeding at page 995 -- excuse me, yes, 9955 at line 1. "Question: And these were all rational explanations that sounded legitimate to you? "Answer: Yes." Was that truthful testimony?

   A. Yes.

Tr. at 1165-67. Mr. Kearney did not recall any big adjustments made at the end of 1994. See Tr. at 1168. It was not until _after_ Mr. Corigliano became CFO in February 1995 that the adjustments became larger and quite different. See id. Accordingly, the government failed to establish that Mr. Kearney had personal knowledge to opine that topside adjustments in the years prior to 1995 were unsupported.

### B. Not Based on Specialized Knowledge

Under Fed. R. Evid. 701, a lay witness is not permitted to offer opinion testimony that rests "_in any way_ upon scientific, technical, or other specialized knowledge." Garcia, 413 F.3d at 215 (quotation omitted & emphasis added). Instead, "a lay opinion must be the product of reasoning processes familiar to the average person in everyday life." Garcia, 413 F.3d at 215. Mr. Kearney, however, offered opinion testimony on the propriety of topside adjustments, a reasoning process that is unfamiliar to the average person in everyday life. As in Garcia, "the government made no effort to demonstrate that [Kearney's] challenged opinion [testimony] was informed by reasoning processes familiar to the average person in everyday life rather than by scientific, technical, or other specialized knowledge." 413 F.3d at 216. Just as the agent's expertise in narcotics trafficking informed the opinion testimony in Garcia, see id., Mr. Kearney's expertise as a CPA informed the opinion testimony in this case. Just as the government highlighted the agent's experience in intercepting conversations during narcotics investigations in Garcia,

id., the government highlighted Mr. Kearney's experience and expertise as a CPA. See Tr. at 1060-67 (describing education, training, and experience in accounting and financial reporting). "Based on this experience, certainly outside the ken of the average person," 413 F.3d at 216, Mr. Kearney informed the jury that certain topside adjustments were unsupported. Just as the agent's reasoning process in Garcia was "that of a law enforcement officer with considerable specialized training and experience in narcotics trafficking," id. at 217, Mr. Kearney's testimony was that of an experienced CPA. "As such, his opinion testimony was not admissible under Rule 701." Id. at 217.[3]

## CONCLUSION

For the reasons set forth above, Mr. Forbes respectfully requests that the Court grant a mistrial or strike the offending testimony.

---

[3] The Second Circuit found that the error in Garcia was harmless. In other cases, however, the admission of lay opinion testimony without satisfying the three foundation requirements of Rule 701 was found to be reversible error. See Forbes Retrial Motion *In Limine* No. 3 (filed Sept. 6, 2005) [Docket No. 1663] (citing cases). Mr. Kearney's testimony, which relates to the Two-CFO theory, would not be harmless. Indeed, Mr. Kearney's testimony about alleged fraud in the pre-1995 time period should have been excluded for the various reasons set forth in Forbes Retrial Motion No. 7 (filed Sept. 6, 2005) [Docket No. 1689] and Forbes Retrial Motion *In Limine* No. 23 (filed Oct. 17, 2005) [Docket No. 1863].

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Dated: October 29, 2005

- 8 -

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT WALTER A. FORBES FOR A MISTRIAL DUE TO THE TESTIMONY OF KEVIN KEARNEY to be sent on October 29, 2005 to the following via e-mail (and by hand on October 31):

> Michael Martinez, AUSA
> Craig Carpenito, AUSA
> U.S. Department of Justice
> 450 Main Street, Room 320
> Hartford, CT 06103

and to the following via e-mail:

> Norman Gross, AUSA
> U.S. Attorney's Office
> District of New Jersey
> 401 Market Street
> Fourth Floor
> Camden, NJ 08101

_____
Barry S. Simon