UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>WALTER A. FORBES )<br>)<br>) | No. 3:02CR264 (AWT)<br><br>October 29, 2005 |

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF
WALTER A. FORBES FOR PERMISSION TO EXAMINE
MR. CORIGLIANO ON POLYGRAPH EXAMINATIONS
(Forbes Retrial Motion *In Limine* No. 21)**

Walter A. Forbes, through undersigned counsel, respectfully submits this reply memorandum in support of his motion for an order permitting him to examine Mr. Corigliano about (i) his prior statements to the polygraph examiner(s) under Fed. R. Evid. 613(a); and (ii) his use of the alleged polygraph results to mislead the government under Fed. R. Evid. 608(b).[1]

    1.    <u>The scope of the proposed inquiry is narrow</u>. The government asserts, incorrectly, that Mr. Forbes seeks "wide-ranging cross-examination of Corigliano." Opp'n at 3. Mr. Forbes seeks to examine Mr. Corigliano about two issues—his prior statements to the polygrapher (including whether he lied to the polygrapher) and his use of representations about the supposed polygraph results to mislead the government about his

---

[1] Although the Court ruled on these issues in the first trial, this motion is not governed by the standards for reconsideration because this is a new trial. See Forbes Opp'n Mot. Quash at 9-16 (filed Oct. 12, 2005) [Docket No. 1830].

culpability. The government concedes that Mr. Forbes should be able to examine Mr. Corigliano about whether he lied to the polygrapher. See Opp'n at 9 ("This Court appropriately addressed that concern during the initial trial by permitting the defendants to ask Corigliano if he took a polygraph examination, and if he lied to the polygrapher."). Mr. Forbes agrees that the Court should issue an appropriately-worded limiting instruction on the use of this evidence.

    2. <u>Mr. Forbes is not seeking to examine Mr. Corigliano about the results of the polygraph examinations or their substantive correctness</u>. The government's primary argument, that the "Court should again reject Forbes' request to present evidence regarding the '<u>results</u>' of Corigliano's polygraph examinations," Opp'n at 4 (Heading A) (emphasis added), is a red herring. None of the proposed lines of examination depend on the polygraph results or their substantive correctness. Indeed, Mr. Forbes need not ask what the results were to establish facts that are admissible and probative: (1) Mr. Corigliano lied to the polygrapher about his involvement in the alleged accounting fraud; and (2) Mr. Corigliano used representations about the alleged polygraph results (irrespective of what the results actually were) to mislead the government about his culpability. Thus, the pages of cases addressing the admissibility of polygraph results to show their substantive

correctness, see Opp'n at 4-7, are not directly relevant to the issues presented here.[2]

3. <u>Rule 608(b) permits Mr. Forbes to examine Mr. Corigliano about his efforts to use representations about the alleged polygraph results to mislead the government.</u> The government does not deny that such conduct would be probative of Mr. Corigliano's character for untruthfulness under Rule 608(b), which provides that conduct probative of character for untruthfulness may be inquired into on cross-examination. The government argues instead that Mr. Forbes also seeks to introduce this evidence to demonstrate bias and ability to deceive, "issues that are beyond the scope of Rule 608(b)." Opp'n at 11. The mere fact that evidence admissible for a proper purpose could also be used for an improper purpose does not render the evidence inadmissible. Moreover, although bias evidence is not covered by Rule 608(b), <u>bias evidence is admissible</u>. Indeed, the First Circuit in

---

[2] Mr. Forbes reserves the right to examine Mr. Corigliano on the selective use of the examination results if the results are ultimately revealed to the defense through an evidentiary hearing or otherwise, and they show that Mr. Corigliano engaged in "cherry-picking" by disclosing the results of a favorable polygraph exam and withholding the results of an unfavorable one. Such evidence would mitigate any concern that the jury would infer that Mr. Corigliano is such a good liar that he fooled a polygraph exam. Mr. Corigliano's recent revelation that his counsel did not disclose the existence of the second polygraph examination to the government until the summer of 2004 when the polygraph issue was before the Court, see Reply Supp. Mot. Quash at 19 n.11 (filed Oct. 24, 2005) [Docket No. 1883], suggests that Mr. Corigliano may have engaged in the selective use of polygraph results. Indeed, the government's refusal to provide the date of the second disclosure suggests that it recognizes that the timing suggests selective use by Mr. Corigliano.

United States v. Lynn, 856 F.2d 430, 433 (1st Cir. 1988), reversed a conviction when the district court excluded polygraph evidence relevant to show bias.

Furthermore, Mr. Forbes does not, as the government suggests, propose to introduce the evidence to show ability to deceive. The evidence Mr. Forbes seeks to elicit is what the attorneys represented to the government about the alleged results, <u>not what the results in fact were</u>. The government argues that even if the jury does not hear the actual results of the polygraph examination, the jury might infer that Mr. Corigliano passed the examination, consistent with the representations of his attorneys, and that he is a skilled liar who fooled the polygraph examiner. See Opp'n at 12 (arguing that evidence should be excluded under Rule 403). The Court can and should issue an appropriate limiting instruction to avoid speculation by the jury about what the results were.

The government argues that the jury may also speculate and draw inferences at odds with the "true facts." Opp'n at 13. For example, "the jury might infer that, because Corigliano submitted to a polygraph examination and told the Government that he had done so, but later pleaded guilty in this case, Corigliano had 'flunked' the polygraph examination and had pleaded guilty because of his poor performance on the polygraph, rather than because he was honestly admitting his guilt." Id. Given Mr. Corigliano's testimony in the prior trial, testimony from other witnesses,

- 4 -

opening statements in this case, and Mr. Corigliano's likely testimony in this case, there is no risk that the jury will infer that Mr. Corigliano is factually innocent, but was duped into pleading guilty by the results of a polygraph examination.[3]

The government contends that there is no evidentiary basis to argue that Mr. Corigliano authorized his attorneys to make representations to the government about the alleged polygraph results. See Opp'n at 11 n.8 (citing Court's comments from prior trial, see Tr. at 7803). Mr. Forbes respectfully disagrees. First, Mr. Forbes did not examine Mr. Corigliano about whether he authorized his attorneys to make representations about the polygraph to the government because there was a pending motion on polygraph issues at the time.[4] Although Mr. Corigliano denied knowing what

---

[3] Mr. Forbes agrees with the government that the parties should not speculate about the true facts. (The government continues to suggest that "the" polygrapher is dead, see Opp'n at 3 n.2, and to make arguments based on the supposed fact that "the" polygrapher is deceased, see, e.g., Opp'n at 12, but we do not know whether there was only one polygrapher who conducted both polygraph exams, and the government purports to have no information about the "second" polygraph other than the fact that there was one.) To avoid such speculation, the government should obtain the information from Mr. Corigliano and disclose it. Alternatively, the Court should hold an evidentiary hearing. Although the government states that it does not have detailed information about the polygraph examinations, see Opp'n at 2 n.3, it does not deny that it could obtain the information simply by asking Mr. Corigliano. See DX 300 at 2 (plea agreement requiring Mr. Corigliano to disclose all information requested by the government). Apparently, the government is not interested in learning the true facts.

[4] It would not be proper to preclude a defendant from eliciting testimony (whether Mr. Corigliano authorized his attorneys to disclose the polygraph results) and then use the failure to elicit such testimony to preclude other lines of cross-examination (regarding the attorneys' disclosure of the

his attorneys were doing on his behalf in other contexts, it is highly likely that he would recall the polygraph issue.[5] Second, even if Mr. Corigliano denies knowledge that his attorneys made representations about the polygraph, the jury would be entitled to disbelieve such testimony. Such a denial would go to the weight (not the admissibility) of the evidence. There is strong circumstantial evidence that Mr. Corigliano did know what his attorneys were doing: (1) he retained the attorneys; (2) they were making representations on his behalf; (3) to federal prosecutors; (4) consistent with his false denials of wrongdoing; (5) to further his interest; (6) in a matter of extreme importance to Mr. Corigliano; (7) about an extraordinary device, a polygraph examination. Moreover, the attorneys would have been ethically precluded from disclosing the information at issue without Mr. Corigliano's consent.[6]

---

polygraph results) on the grounds that there is no factual basis for the examination.

[5] In addition, there is good reason to believe that Mr. Corigliano's denials were false. Evidence that Mr. Corigliano committed perjury during the first trial would not be collateral, but would go to the heart of his plea agreement and his motive to please the government. See, e.g., United States v. Lynn, 856 F.2d 430 (1st Cir. 1988). Such evidence would not be cumulative because the Court has apparently concluded that Mr. Corigliano did not commit perjury (although we respectfully disagree with that conclusion), see Ruling on Government's Pre-retrial Motion No. 1, at 5 (filed Oct. 13, 2005) [Docket No. 1839], and there is thus the danger that a jury could reach the same conclusion if the Court limits the proper scope of Mr. Corigliano's cross-examination.

[6] The two cases cited by the government in support of its argument that "evidence regarding Corigliano's attempts to deceive the Government by taking a polygraph examination should likewise be excluded," because of the

4.  <u>Rule 613(a) permits Mr. Forbes to examine Mr. Corigliano about his prior statements to the polygraphers</u>. The government cannot deny that Rule 613(a) permits examination about prior statements, and there is no polygraph statement exception to Rule 613(a). The government argues, however, that the Court should preclude examination about prior statements under Rule 403. If Mr. Forbes is permitted to elicit testimony that Mr. Corigliano lied to the polygrapher (as the government concedes he is), he should also be able to elicit testimony concerning what Mr. Corigliano lied about—what he was asked and what he said. The fact that Mr. Corigliano lied about the subject matter of this case adds substantially to the probative value of the past lie. Moreover, evidence concerning the questions and answers would eliminate speculation by the jury. Mr. Corigliano is a critical

---

"likelihood of confusion and waste of time," <u>see</u> Opp'n at 12, do not support precluding a defendant in a criminal case from examining a key cooperating witness about a matter that is highly probative of character for untruthfulness and is otherwise admissible under Rule 608(b). Neither case involved polygraph evidence that was otherwise admissible under Rule 608(b). In <u>United States v. Bowen</u>, 857 F.2d 1337, 1341-42 (9th Cir. 1988), the polygraph evidence was offered <u>against the defendant</u>; there was a risk that the jury would conclude that the defendant failed the exam and was guilty of the underlying offense; the defendant would want to introduce evidence that he passed a subsequent exam leading to a battle of polygraphers; and the government represented on numerous occasions that it would not seek admission of polygraph evidence at trial. Moreover, to the extent that <u>United States v. Robbins</u>, 197 F.3d 829, 843-44 (7th Cir. 1999), held that the government may introduce a plea agreement in which the witness agrees to submit to a polygraph exam, but that a defendant is not permitted to examine the witness to show that he or she did not take the exam, Mr. Forbes submits that the case was incorrectly decided. <u>See, e.g.</u>, <u>United States v. Lynn</u>, 856 F.2d 430 (1st Cir. 1988).

- 7 -

government witness. Accordingly, examination about his prior inconsistent statements should not be curtailed under Rule 403.

     5.    <u>Complete foreclosure of cross-examination would violate the Confrontation Clause</u>. The government's reliance on <u>King v. Trippett</u>, 192 F.3d 517 (6th Cir. 1999), for the proposition that foreclosure of cross-examination would not implicate the Confrontation Clause is misplaced. In that case, the defendant sought to impeach the witness about the fact that he had failed polygraph examinations. Here, Mr. Forbes does not seek to examine Mr. Corigliano about the results of his examinations or to argue the substantive correctness of the examinations. He seeks to offer evidence that is unrelated to the substantive correctness of the results and is otherwise admissible under the Federal Rules of Evidence. Again, the government cites no authority for the proposition that the proposed lines of inquiry are improper under Rules 608(b) and 613(a), but argues instead that the evidence should be precluded under Rule 403.[7]

Under these circumstances, where a criminal defendant seeks to cross-examine a key witness concerning a polygraph examination for permissible purposes unrelated to the substantive correctness of the results, courts must grant considerable latitude because of the defendant's Sixth Amendment right of confrontation. The First Circuit's decision in <u>Lynn</u>, 856

---

[7]    The government cites <u>United States v. Brown</u>, 289 F.3d 989, 993-94 (7th Cir. 2002), a case precluding cross-examination regarding a failure to appear for a voice stress test, in support of its Confrontation Clause argument, but that case does not address the Confrontation Clause.

F.2d 430, is instructive. In that case, Bryon, a key government witness, testified pursuant to a plea agreement that required him to submit to a polygraph examination and further provided that the government could nullify the agreement if he failed to complete the examination successfully. Id. at 432. The polygrapher deemed some of Bryon's answers to be "inconclusive." Id. Lynn sought to impeach Bryon by showing that he had not successfully completed the test and therefore had reason to continue to please the government by lying about Lynn. The district court precluded cross-examination about the polygraph examination.

The First Circuit held that this restriction of cross-examination violated Lynn's Sixth Amendment right of confrontation.

> In this case, we are faced with the district court's complete foreclosure of cross-examination on the issue of Bryon's polygraph examination. There is no question of the relevance of the intended area of inquiry - Bryon's motivation to lie to continue to curry favor with the government. Moreover, polygraph results are admissible for reasons other than proving the substance contained . . . . We find that by cutting off all cross-examination into a relevant and not fully explored area, the district court abused its discretion. The constitutional right to confront and cross-examine witnesses was impaired.

Id. at 433-34.[8]

---

[8] The government buries Lynn in a footnote and argues that it is distinguishable because the curtailment of cross-examination violated the Confrontation Clause only because the government introduced the plea agreement into evidence and "opened the door." Opp'n at 20 n.15 ("Forbes relies on inapposite cases in which polygraph evidence was admitted or

## CONCLUSION

Accordingly, Mr. Forbes respectfully requests that the Court enter an order permitting him to examine Mr. Corigliano about (i) his prior statements to the polygraph examiners under Fed. R. Evid. 613(a); and (ii) his use of the alleged polygraph results to mislead the government under Fed. R. Evid. 608(b).

---

permitted to be offered only because the party opposing the evidence had opened the door." (emphasis added)). But the First Circuit did not base its analysis solely on the government's introduction of the plea agreement. Rather, the court based its analysis primarily on the complete foreclosure of an otherwise permissible line of cross-examination relevant to show bias. Although the First Circuit mentioned the fact that the government had presented the agreement to the jury, this fact was not the sole basis for its holding. See 856 F.2d at 433 ("Finally, we cannot ignore the government's tactic of drafting the plea agreement with the polygraph requirement clause, revealing the entire agreement to the jury (and thereby implying the witness' motivation to tell the truth), then objecting to defense attempts to expose the full implications of the clause." (emphasis added)). As in Lynn, cross-examination of Mr. Corigliano concerning his scheme to mislead the government using the polygraph examination is relevant to show bias. Mr. Corigliano disclosed only the results of one polygraph exam to the government. If the undisclosed results of the other polygraph examination were unfavorable (the parties do not know), this would be evidence of potential crimes not covered by the transactional immunity provisions of his plea agreement. See DX 300 at 1. This would give Mr. Corigliano a strong incentive to curry favor with the government in an effort to avoid prosecution for such conduct.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (ct17115)
Barry S. Simon (ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (ct05103)
Thomas J. Murphy (ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing REPLY MEMORANDUM IN SUPPORT OF MOTION OF WALTER A. FORBES FOR PERMISSION TO EXAMINE MR. CORIGLIANO ON POLYGRAPH EXAMINATIONS to be sent on October 29, 2005 to the following via e-mail (and by hand on October 31):

>Michael Martinez, AUSA
>Craig Carpenito, AUSA
>U.S. Department of Justice
>450 Main Street, Room 320
>Hartford, CT 06103

and to the following via e-mail:

>Norman Gross, AUSA
>U.S. Attorney's Office
>District of New Jersey
>401 Market Street
>Fourth Floor
>Camden, NJ 08101

Barry S. Simon