UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA     :   No. 3:02CR00264 (AWT)
                                      :
              v.                    :   October 31, 2005
                                        :
                                        :
WALTER A. FORBES                   :

GOVERNMENT'S OPPOSITION TO DEFENDANT WALTER A. FORBES' MOTION FOR
A MISTRIAL BASED ON THE TESTIMONY OF STEVEN KERNKRAUT

(Forbes Retrial Motion No. 15)

INTRODUCTION

Forbes has moved for a mistrial based on several
portions of the direct and redirect examination of Steven
Kernkraut elicited during his second day of testimony on October
18, 2005.  He principally complains that the Government elicited
Kernkraut's supposedly improper lay opinion testimony on various
subjects.  Forbes ignores his own elicitation, during cross-
examination of Kernkraut, of numerous opinions on a panoply of
subjects that were far more extensive than anything that
Kernkraut opined about when questioned by the Government.  As
will be shown herein, most of the challenged testimony was
properly admitted.  Moreover, Forbes is not entitled to a retrial
based on testimony that was similar to that which he elicited,
where a less drastic remedy, the giving of cautionary or limiting
instructions or the striking of improper testimony, is sufficient
to cure any possible prejudice.

Forbes also complains that the Government elicited improper hearsay from Kernkraut regarding Cendant's April 15, 1998 announcement of the fraudulent accounting committed by employees of the former CUC, and Cendant's 1998 Restatement. None of the challenged testimony was offered for the truth of the matter asserted, as the Court instructed on one occasion and offered to do on others, and therefore was not hearsay. Additionally, Forbes himself elicited hearsay from Kernkraut, without offering any limiting instruction to justify its admission, and so is not entitled to a mistrial on that ground.

Forbes further claims that Kernkraut's testimony about Forbes' statements to Kernkraut was irrelevant, prejudicial, and elicited too early in the trial.  As will be shown herein, all of those claims are meritless, primarily because they are based on Forbes' mischaracterization of Kernkraut's testimony.

Finally, Forbes claims that Kernkraut's very limited testimony about CUC's overstatement of the number of its members, and CUC's overstatement of its membership retention rate, caused a constructive amendment of the indictment, and was objectively false.  Those claims are also meritless.

Additionally, none of Forbes' present claims justify the extreme sanction of a mistrial, because (with the exception of his meritless claim regarding his false statements to Kernkraut), these complaints implicate evidence about whether or

2

not the charged crimes occurred, not whether Forbes committed any

of them.  Accordingly, that evidence does not implicate Forbes'

core defense.  For that reason as well, Forbes is not entitled to

a mistrial.[1]

## ARGUMENT

I.  **Forbes evidentiary challenges are largely meritless and certainly do not justify a mistrial.**

A. Personal knowledge.

Forbes contends that Kernkraut's testimony that CUC's

reported financial results were false was not based on his

personal knowledge, but rather on his review of CUC's April 15,

1998 press release and on Cendant's 1998 Restatement.  Forbes'

Mem. in Support of Retrial Motion No. 15 ("FM") at 12-13.  Forbes

contends that this portion of Kernkraut's testimony is "back-door

hearsay."  Tr. 256-57.  To the contrary, any evidence regarding

the contents of either the April 15, 1998 announcement or the

Restatement is being offered by the Government for a relevant,

non-hearsay purpose.

The Government proposed a limiting instruction

regarding GX 827, a redacted version of the April 15, 1998

---

[1]  Forbes seeks to "incorporate by reference" his
"Memorandum in Support of Forbes Retrial Motion *In Limine* No. 3."
FM 12.  To the extent that the Court is willing to consider any
arguments set forth in that prior submission, the Government
requests that the Court also consider the Government's
"Opposition to Forbes Retrial Motion *In Limine* No. 3," Docket No.
1741, filed September 27, 2005.  By ruling dated October 27,
2005, this Court denied that motion.

announcement, to the effect that it can be considered only to prove the materiality of the conspirators' false statements regarding CUC's and Cendant's financial results.  Tr. 20, 23, 603-04.[2]  The Court overruled Forbes' objection that GX 827 was inadmissible for any purpose, particularly since Forbes refused the Court's invitation to concede the materiality of those statements.  Tr. 604-11.  When GX 827 was admitted into evidence through the testimony of Michael Monaco, the Court gave the limiting instruction.  Tr. 619.  See also Initial Tr. 1460-61.

Any evidence regarding the Restatement is likewise offered for a limited, non-hearsay purpose, as this Court concluded in its October 26, 2005 ruling denying Forbes' Retrial Motion *In Limine* No. 19 (seeking to preclude any evidence regarding the Cendant Restatement).  In that ruling, after noting that the Government had stated that it would not offer the Restatement itself into evidence, the Court held that "other evidence that Cendant restated its financial statements . . . is relevant for the reasons set forth by the Government in" its opposition to Forbes Retrial Motion *In Limine* No. 19.  Ruling at 2.  The Court has offered to give "upon request" a limiting instruction regarding any evidence about the Restatement.  Id. at 3.

---

[2]  All citations herein to "Tr." are to the transcript of the retrial.  Citations to the transcript of the initial trial are designated "Initial Tr."

4

The Government has not and will not offer evidence regarding either Cendant's April 15, 1998 announcement or the Restatement to prove the truth of any of the matters set forth in either of those documents. Rather, Kernkraut's testimony about his review of the April 15, 1998 announcement and of the Restatement was offered only to prove whether any of CUC's or Cendant's publicly reported financial results were material. The Court has already given such a limiting instruction regarding a portion of Kernkraut's testimony, Tr. 216, and has offered to give an additional instruction about others, Tr. 230. The Government does not oppose the giving of any additional applicable and correct instructions that Forbes may request, and Forbes should be limited to that relief. See United States v. Levy, 578 F.2d 896, 902 (2d Cir. 1978) (affirming the denial of a mistrial motion where the Government did not improperly exploit the inadmissible statement, and the defendant declined to seek a curative instruction). To the extent that Kernkraut testified that CUC's or Cendant's publicly disclosed financial results were "inaccurate," Tr. 228-29, 232, or that Forbes' statements to Kernkraut regarding CUC's results were "essentially false," Tr. 337, the Government would not oppose an appropriate instruction striking only those limited portions of Kernkraut's testimony. See United States v. Chambers, 944 F.2d 1253, 1263 (6th Cir. 1991) (affirming the denial of a mistrial where the court

instructed the jury to disregard all of the improperly admitted testimony).[3]

**B.    Lay opinion testimony regarding CUC's reported financial results.**

Forbes contends that Kernkraut's lay opinions regarding CUC's reported financial results were improper because Kernkraut had no personal knowledge of the accuracy of those results. Forbes also claims that the testimony did not meet the "helpfulness" requirement of Fed. R. Evid. 701 because Kernkraut lacked expert qualifications to offer such an opinion, and the opinion was based on scientific, technical or other specialized training.  FM 14.  The first claim, regarding Kernkraut's personal knowledge, merely repeats Forbes' claim in Point I(A), above; the Government's response to that point applies equally to this portion of Forbes' claim in Point I(B).

As to Forbes' other challenges to this evidence, a mistrial would be inappropriate because Forbes elicited numerous, similar lay opinions from Kernkraut.  See Ruling on Forbes Retrial Motion *In Limine* No. 3, Docket No. 1901, filed Oct. 27, 2005, at p. 4 (noting that "during the first trial, and already during this [re]trial, defense counsel elicited, without objection, improper lay opinion testimony from government

---

[3]  The Court has already stricken a portion of Kernkraut's testimony that "all the financial reports that I had based the models on, the earnings projection on, were false . . ."  Tr. 228.

witnesses on cross-examination).  For instance, Kernkraut opined on cross-examination that:

1) he would not expect that Forbes "put together" CUC's 10K or 10Q reports, Retrial Tr. 240;

2) CUC was "one of the few or maybe the only company that had that edge" of having "multiple millions of members in their shopping service who pay $35 a year and of having "all the vendor relationships with all of the manufacturers," Tr. 267-68;

3) CUC was "among a very few companies that could sustain such [an annual] growth rate" of 25 to 30%, Tr. 270-71;

4) in May of 1993, CUC "was on the for front [sic] of interactive shopping and had been for the last 20 years or so," Tr. 280;

5) CUC was "a marketing machine," Tr. 284;

6) CUC's "core direct marketing business remains a cash generating machine and that it can grow EPS at a 30 percent rate over the foreseeable future," Tr. 285;

7) "it was a good policy for CUC to acquire complimentary businesses and make them part of the CUC family," Tr. 286;

8) only two of the ten to twelve CUC acquisitions that Kernkraut analyzed was not "complimentary" to CUC's business," Tr. 288;

9) CUC's acquisition of Sierra On-Line and Davidson was "a wise decision," Tr. 289, "far-sighted," Tr. 291, and "would be good for the company long range," id.;

10) Forbes was a "media star" because of his "vision" about the Internet, he "had a vision that was going to take the home shopping world into the interactive world," Tr. 295-96;

11) part of CUC's "business plan" was to grow by acquisitions, Tr. 305; "the acquisition process at CUC was an accretive process [which] explained in part the growth of the company," Tr. 305-06;

12) there was an "accretive aspect" to both kinds of CUC's acquisitions, "complimentary" and "different," Tr. 305;

13) CUC's decision to acquire Ideon was a "once in a lifetime opportunity," a "lay-up," and a "no-brainer," Tr. 308-09;

14) CUC's and HFS's pre-merger joint business ventures functioned well, Tr. 321;

15) the combination of CUC and HFS "would be a very powerful growth company and would get superior returns," Tr. 322-23.

Having elicited Kernkraut's opinions on a wide range of issues that were substantially similar to the opinions about which he objects, Forbes is not entitled to mistrial based on those opinions. See United States v. Diaz, 176 F.3d 52, 104 (2d Cir. 1999) (affirming the denial of a mistrial motion based on the testimony of a prosecution witness that defendants tried to kill the witness, where the defendant, *inter alia*, "elicited similar testimony when he cross-examined" the witness; "Such actions . . . by [the defendant] do not support a finding of prejudice" required to obtain a mistrial).

In any event, Kernkraut's challenged opinions were properly admitted. Kernkraut testified that CUC's earnings had been overstated to him, and that CUC's historically reported earnings growth rate from 1992 to 1997 had been overstated. Tr. 217, 229-30. Kernkraut had personal knowledge of the amount of CUC's earnings and earnings growth rates that had been communicated to him personally by Forbes and others, e.g., Tr. 142-45, 152-53, 157-58. Kernkraut's testimony that those earnings were overstated compared to Cendant's restated earnings

8

was based on a simple comparison between two sets of numbers that
he was obviously qualified to undertake as an experienced
securities analyst, and did not require specialized training.
See Eisenberg v. Gagnon, 766 F.2d 770, 781 (3d Cir. 1985)
(rejecting, in a private action for securities fraud, a Rule 701
challenge to the opinion testimony of an attorney that public
offering disclosure materials that he had personally scrutinized
were inadequate; the testimony was "not an impermissible answer
to a hypothetical question by a non-expert, but [was a proper]
lay inference from his prior personal experience and
observation").  Kernkraut's opinion was also helpful to the jury
because, as an experienced analyst, he "ha[d] specialized
knowledge that the jury does not have" about comparing initial
and restated financial statements and so was "in a better
position than the jury to form the opinion" on this matter.  4
Weinstein's Federal Evidence, § 701.05 (2d ed.).

Kernkraut's opinion that CUC had historically
overstated its earnings growth was also a matter within
Kernkraut's personal knowledge, owing to his extensive study of
CUC's publicly disclosed financial results.  Tr. 112-34.  That
Kernkraut "never worked for CUC or reviewed their [internal]
books and records," FM 13, is no basis for challenge to
Kernkraut's testimony about CUC's publicly reported financial
results.  For the same reasons that Kernkraut's opinion about

9

CUC's earnings amounts met the helpfulness and non-expert requirements of Rule 701, his opinion about CUC's earnings growth did so as well.

Finally, to the extent that Kernkraut's opinions were based on CUC's restated financial results, the Government would not oppose a limiting instruction that all of Kernkraut's testimony regarding his post-April, 1998 assessment of CUC's publicly disclosed financial results has been offered only for the limited purpose previously identified: to assess the materiality of the conspirator's false statements.[4]

**C.    Lay opinion testimony about the accuracy of Forbes' statements.**

Forbes complains that Kernkraut offered an improper lay opinion testimony that Forbes "made false representations to [Kernkraut] about CUC's financial numbers." FM 16. Forbes argues that this testimony was beyond Kernkraut's personal knowledge for the reasons stated in Point I(A), above, because Kernkraut lacked sufficient expertise to opine on whether the

---

[4] <u>United States v. Garcia</u>, 413 F.3d 201 (2d Cir. 2005), cited by Forbes, does not compel a mistrial. The Court's "overarching concern" with the agent's testimony in <u>Garcia</u>, 413 F.3d at 210, was his opinion that the defendant was guilty of the charged crime, and that the opinion was based "on the totality of information gathered in the course of [the] investigation." 413 F.3d at 210-11. Here, Kernkraut has offered nothing resembling an opinion that Forbes is guilty of any of the charged crimes, nor has he predicated his opinions on, for instance, the investigations of the Government, the Cendant Audit Committee, or any other group of persons. A properly worded limiting instruction will cure any possible improper prejudice.

statements were false, and because the testimony "was essentially
an opinion that Forbes committed a crime," and therefore "usurped
the jury's function." Id.

The record refutes Forbes' characterization, FM 16,
that Kernkraut testified that "Forbes lied to" Kernkraut.
Rather, he testified that, in retrospect, Forbes' statements to
Kernkraut about CUC's financial results turned out to be
"essentially false." Tr. 334. See United States v. Anderskow,
88 F.3d 245, 249 (3d Cir. 1996) (rejecting a Rule 701 objection
where, notwithstanding the Government's questioning about why the
defendant would know that certain information was false, the
witness never explicitly opined that the defendant had guilty
knowledge). That testimony is fully consistent with Forbes'
defense that he was unaware of any of the accounting
manipulations at issue, or that any of CUC's and Cendant's
publicly reported financial results were false. Again, to extent
that Kernkraut testified that CUC's and Cendant's reported
financial results were "essential false," the Government would
not oppose an instruction striking that limited testimony.

While the Government did not elicit any opinion from
Kernkraut that Forbes had lied to him, Forbes elicited opinion
testimony from Kernkraut about Forbes' mental processes,
knowledge, and state of mind, including that:

   1) Forbes "had a vision that the Internet would be used for
   commerce," Tr. 294;

11

2) Forbes "started embracing the Internet and a computer as the transaction device" and "was always searching for the device that would take his business away from a telephone-based service to an interactive-based service," Tr. 294-95;

3) Forbes had "a very good instinct" about what was going on at CUC, but he was not a "detail guy," Tr. 326-27.

Forbes evidently sought Kernkraut's opinions on these matters to support a key aspect of his defense (which he advanced during the initial trial): that he was unaware of the accounting manipulations at CUC because he concentrated on long-term strategic matters.  Tr. 80-81 (Sullivan opening statement). Compare Initial Tr. 107, 15168.  Thus, Forbes is hardly in a position to complain that Kernkraut was asked to opine about a matter as to which only Forbes had personal knowledge: Forbes' own state of mind.  For that reason as well, Forbes is not entitled to a mistrial based on the challenged testimony regarding the falsity of CUC's reported financial results.

D.    **Lay opinion testimony in the form of "speculative" responses to hypothetical questions.**

Forbes contends that Kernkraut "speculated" and gave improper lay opinion testimony in response to hypothetical questions.  FM 17-18.  Forbes is correct that lay witnesses generally should not testify in the form of a hypothetical opinion.  Certain Underwriters at Lloyd's, London v. Sinkovich, 232 F.3d 200, 203 (4th Cir. 2000); but see United States v. Ranney, 719 F.2d 1183, 1187 (1st Cir. 1983)(rejecting a defense

12

objection to testimony from victim investors, in a mail fraud
prosecution based on a fraudulent investment scheme, that they
would not have made the investments had they known that
representations made to them about the investments were false).
Forbes is in no position to complain about hypothetical questions
posed to Kernkraut by the Government, however, since Forbes also
posed such questions to Kernkraut regarding possible events about
which Kernkraut obviously had no personal knowledge.  Tr. 252
("but if you talk to enough people in the company if there's some
weak spot, you're going to find it, normally, from your point of
view?"); Tr. 276 ("And it's fair to say that had you seen any
problem whatsoever with respect to this company's financials or
the way it operated its business, you would have felt obliged to
report it in your reports and tell your thousand customers,
correct?").

        Forbes thereby took the position that Kernkraut had
sufficient personal experience, observations, and/or knowledge to
answer his hypothetical questions.  He is not entitled to a
mistrial based on a complaint that the Government did so as well.
See Diaz, 176 F.3d at 104.  If this Court concludes that
Kernkraut's responses to the Government's hypothetical questions
were improper, the Court should deny the mistrial motion and
strike Kernkraut's testimony in response to all hypothetical
questions posed by either the Government or the defense, thereby

13

precluding any argument based on any of that testimony.

  **E.    Lay opinion testimony about other matters.**

  Forbes identifies a litany of other supposedly improper
lay opinions, and asserts without argument that "this testimony
failed to meet all three foundational requirements of Rule 701."
FM 18-19.  Because Forbes has declined to develop this claim with
argument or authority, this Court should decline to address it.
United States v. Hook, 195 F.3d 299, 310 (7th Cir. 1999); United
States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

  In any event, the challenged opinions were properly
admitted.  Having studied publicly traded companies for a decade
at Bear Stearns, Tr. 97, which presumably included a comparison
of reported financial results and predicated financial results,
Kernkraut also had sufficient experience, which did not require
specialized training, to opine that even a one cent shortfall
between actual and reported EPS could cause the stock price to
drop precipitously.  Tr. 335.  See Medforms, Inc. v. Healthcare
Management Solutions, Inc., 290 F.3d 98, 111 (2d Cir. 2002)(in an
action for copyright infringement, affirming the admission, under
Rule 701, of lay opinion testimony of a computer programmer
regarding his subordinates' work on two programs and regarding
the meaning of the word "programs" as used in the copyright
registrations; the testimony was based on the witness's "everyday
experience as a computer programmer and specifically on the two

programs . . . . Therefore, the testimony did not have to satisfy the requirements for expert testimony under Fed. R. Evid. 702."); Brady v. Chemical Const. Corp., 740 F.2d 195, 200 (2d Cir. 1984) (affirming the admission of lay opinions of an investigator which were based on "facts that he personally had learned during his investigation . . . and the conclusions he had reached . . . . [which] did not require any specialized knowledge and could have been reached by any ordinary person").

Similarly, Kernkraut's extensive personal experience as a securities analyst at Bear Stearns, Tr. 97-110, and his additional work in business and finance for other entities, Tr. 95-97, was sufficient to support his lay opinion that Cendant's April 15, 1998 announcement merely "affected" the stock price when it dropped over 40% the following day.  Tr. 220.  See Joy Mfg. Co. v. Sola Basic Industries, Inc. 697 F.2d 104, 111-112 (3d Cir. 1982)(in an action against a furnace manufacturer for the failure of two furnaces, reversing the district court's exclusion, under Rule 701, of the opinion testimony of the plaintiff's supervisor of production control, where the witness "had sufficient personal knowledge of Joy's heat treating facility to make an estimate of what amount of downtime was due to the hearth problems"); United States v. Mohanlal, 867 F.Supp. 199, 201 (S.D.N.Y. 1994) (admitting lay opinion testimony of a clergyman that the defendant knew the difference between right

and wrong, where the clergyman had significant personal contact
with the defendant to make his opinion rationally based on his
perception and his testimony could be helpful to the jury).[5]

   **F.   Relevance and prejudice challenges to Kernkraut's
         testimony about the accuracy of Forbes' statements to
         Kernkraut.**

       Citing no law, FM 19-20, Forbes contends that
Kernkraut's testimony concerning CUC's membership numbers should
have been excluded as irrelevant and unduly prejudicial "because
there is no allegation in the indictment that CUC's membership
numbers or renewal rates were overstated."  The indictment,
however, is required to set forth only a "plain, concise, and
definite written statement of the essential facts constituting
the offense charged."  Fed. R. Crim. P. 7(c)(1).  It cannot, by
definition, describe in detail all of the relevant evidence
regarding a complex accounting fraud that spanned the better part
of a decade.  See United States v. Cooper, 384 F.Supp.2d 958, 960
(W.D.Va., 2005) (Rule 7(c) "does not contemplate the inclusion
[in the indictment] of every piece of evidence that ultimately
may be relevant"); United States v. Cisneros, 26 F.Supp.2d 24, 46
(D.D.C. 1998)("an indictment is an instrument of accusation, not

_____

       [5]  Forbes seeks to "incorporate by reference" his
"Memorandum in Support of Forbes Retrial Motion *In Limine* No.
16."  FM 19.  To the extent that the Court is willing to consider
any arguments set forth in that prior submission, the Government
requests that the Court also consider the Government's
"Opposition to Forbes Retrial Motion *In Limine* No. 16," Docket
No. 1875, filed October 20, 2005.

of proof"). Accordingly, the Government cannot be limited to proving only those facts that are identified in the indictment. See United States v. Janati, 374 F.3d 263, 270 (4th Cir. 2004) (reversing, on the Government's appeal, a pre-trial ruling limiting the government to proving only those overt acts alleged in the indictment).

Forbes also claims that Kernkraut's testimony that "he believes that Mr. Forbes lied to him should been excluded" as irrelevant and prejudicial. FM 19. This claims fails for want of an accurate predicate. As noted above, Kernkraut never testified that Forbes lied; he testified rather that Forbes' representations to Kernkraut about CUC's financial results were "essentially false." Tr. 337. According to Forbes' own defense in this case, there is a world of difference, amounting to the difference between guilt and innocence, between those two assertions.

Nor is there merit in Forbes' contention that Kernkraut's testimony about what he was told by Forbes improperly invades the jury's domain to determine whether or not the Government has met its burden of proof. FM 19. Kernkraut did not opine that he believed that Forbes was guilty of any of the charged crimes. In any event, "[t]he fact that the lay opinion testimony bears on the ultimate issue in the case does not render the testimony inadmissible." Lightfoot v. Union Carbide Corp.,

17

110 F.3d 898, 911 (2d Cir. 1997); accord, United States v.
Parris, 243 F.3d 286, 288-89 (6th Cir. 2001).

      The Government solicited Kernkraut's testimony that
Cendant's disclosure of the accounting fraud caused one of the
worst days of his professional life in order to "draw the sting"
of an anticipated "bias" challenge to Kernkraut's testimony.
United States v. Feldman, 788 F.2d 544, 555 (9th Cir. 1986)
("drawing the 'sting' from the opposing party's anticipated
arguments through the presentation of one's own case is a
standard and proper litigation technique.").  The Court will
presumably instruct the jurors, as it did during the initial
trial, "not to be swayed by sympathy or bias," Initial Tr. 16247,
which is presumptively sufficient to dispel any possible improper
harm from Kernkraut's testimony about his subjective response to
the bad news about Cendant on April 15, 1998.  Greer v. Miller,
483 U.S. 756, 766 n. 8 (1987); United States v. Colombo, 909 F.2d
711, 715 (2d Cir. 1990).

**G.**     **Hearsay challenge to Kernkraut's testimony about the
April 15, 1998 press release and the Cendant
Restatement.**

      Forbes complains that the Government elicited "back-
door" hearsay from Kernkraut regarding the contents of the
Restatement and the April 15, 1998 Cendant press release, Tr.
256-57.  Forbes himself repeatedly elicited hearsay from
Kernkraut, however, without offering (as the Government did) any

18

limiting instruction regarding the relevant non-hearsay purpose
of such testimony.  For instance, Forbes questioned Kernkraut
about his conversations with "20 to 25" CUC managers other than
Forbes in order to establish that: (1) their out-of-court
statements were consistent with CUC's published financial
results; and (2) none of those persons told Kernkraut about any
fraudulent activity at CUC regarding the company's financial
performance.  Tr. 249-51.  Forbes also elicited Kernkraut's
hearsay testimony about the contents of one of CUC's 10Q reports
to the SEC regarding the scope of the Halmos litigation.  Tr.
307-08.

        Unlike the out-of-court statements elicited by Forbes
without a limiting instruction, the Government has offered a
limiting instruction regarding the contents of the Cendant's
Restatement and its April 15, 1998 announcement.[6]  No evidence
about either of those documents, to the extent that it is
expressly conveyed, or conveyed by implication by any Government
witness, is being offered for the truth of the matter asserted.
Rather, evidence regarding either document is offered by the
Government in order to prove the information that was conveyed to

---

[6]  The Government respectfully requests that Forbes be
required to fashion a limiting instruction which explains the
relevant, non-hearsay purpose for the out-of-court statements
identified above that Forbes elicited from Kernkraut, and that
the Court give an appropriate limiting instruction regarding that
testimony.  Otherwise, in his summation, Forbes can treat those
statements as proof of the matter asserted.

the investing public, in order to establish the effect that it had on the investors.  Cooper-Schut v. Visteon Automotive Systems, 361 F.3d 421, 430 (7th Cir. 2004)(district court properly admitted an out-of-court statement "only . . . for the effect that it had on its listener"); see United States v. Aspinall, 389 F.3d 332, 340-41 (2d Cir. 2004)(a statement offered to prove the fact that it was made is not subject to exclusion as hearsay), abrogation on other grounds recognized, United States v. Fleming, 397 F.3d 95, 99 n.5 (2d Cir. 2005).  This is consistent with the Court's limiting instructions during the initial trial, Initial Tr. 260, 619, 1460-61 (limiting instructions regarding April 15, 1998 announcement), 16397 (limiting instruction regarding Restatement), and the limiting instruction given by the Court to date in this retrial.  Tr. 216.

Thus, the Government will not argue that CUC's and Cendant's reported financial results were false because either the Restatement or the April 15, 1998 announcement said that they were.  Rather, the Government will prove and argue that the reported financial results contained materially false misstatements and omissions based on the testimony of witnesses who participated in the accounting fraud and who intentionally misstated those results, and on the testimony of the Government's accounting expert who studied Cendant's and CUC's internal financial records, Brian Heckler.

20

**H.    The prohibition regarding the order of "overview witnesses."**

Forbes contends that he is entitled to a mistrial merely because Kernkraut was the Government's first witness in this retrial.  According to Forbes, Kernkraut was essentially an "overview witness" who had no first hand information about any relevant facts, but who offered only a "summary opinion" and "was permitted to testify in essence that Mr. Forbes knowingly made material false statements . . . regarding matters that were not charged in the indictment."  FM 22.  A mistrial is unwarranted.

Although the Court in United States v. Garcia, 413 F.3d 201 (2d Cir. 2005) criticized the practice of leading off the Government's case with an overview witness, 413 F.3d at 214, Forbes' strained effort to make the facts of this case fit the admonition in Garcia fails.  Forbes' assertion that Kernkraut was a "witness with almost no relevant personal knowledge," FM 22, simply misreads the record.  First, as shown above, Kernkraut did not testify, in essence or otherwise, that Forbes knowingly made any false statements.

Second, unlike an overview witness, such as a case agent who conducts a *post-hoc* investigation of a crime but who has no personal knowledge of any the relevant facts, Kernkraut testified extensively about his personal, first-hand: (a) conversations with Forbes while the charged scheme was on-going, Tr. 129, 139-41; (b) attendance at numerous meetings,

21

conferences, and seminars at which Forbes spoke about CUC's business while the charged scheme was on-going, Tr. 138-39, 142-45, 152-53, 157-58; (c) conversations with other managers of CUC while the charged scheme was on-going, Tr. 104-06, 138, 163; (d) close analysis of CUC's reported financial results for the years 1990 to 1998, Tr. 112-16; and (e) review of CUC's publicly disclosed statements to the SEC and the investing public, Tr. 100, 114-15. Thus, this case is a far cry from "the practice of having a case agent offer a summary opinion as to culpability before any evidence to support such a conclusion has been presented for jury review." <u>Garcia</u>, 413 F.3d at 214.

## II. Forbes' constructive amendment claim is meritless.

Forbes seeks a mistrial because of a supposed constructive amendment of the indictment. He argues that, because the indictment "does not contain any allegations regarding overstated membership numbers or membership renewal rates," Kernkraut's testimony about such matters "injected new charges of accounting fraud into the case." FM 24. To the contrary, the admission of evidence of a particular aspect of a large fraudulent scheme does not constructively amend the indictment merely because that aspect of the scheme is not described in the indictment.

A constructive amendment of the indictment occurs only "when the charging terms are altered, either literally or

constructively," <u>United States v. Clemente</u>, 22 F.3d 477, 482 (2d

Cir. 1994), <u>i.e.</u> when the trial evidence "modif[ies] essential

elements of the offense charged to the point that there is a

substantial likelihood that the defendant may have been convicted

of an offense other than the one charged by the grand jury."

<u>United States v. Vebeliunas</u>, 76 F.3d 1283, 1290 (2d Cir. 1996).[7]

So long as the "the allegations and the proof substantially

correspond," and the trial evidence is consistent with the "core

of criminality" alleged in the indictment, there is no

constructive amendment of the indictment.  <u>United States v.</u>

<u>Danielson</u>, 199 F.3d 666, 670 (2d Cir. 1999).[8]  The Second Circuit

has reiterated that:

> Because proof at trial need not, indeed cannot, be a
> precise replica of the charges contained in the
> indictment, this court has consistently permitted
> significant flexibility in proof, provided that the
> defendant was given notice of the core of criminality
> to be proven at trial.

<u>United States v. Frank</u>, 156 F.3d 332, 338 (2d Cir. 1998).[9]  In

---

[7]  <u>Accord</u> <u>United States v. Joyner</u>, 201 F.3d 61, 69 (2d Cir.
2000); <u>United States v. Mucciante</u>, 21 F.3d 1228, 1234 (2d Cir.
1994); <u>United States v. Weiss</u>, 752 F.2d 777, 787 (2d Cir. 1985).

[8]  <u>Accord</u> <u>United States v. Salmonese</u>, 352 F.3d 608, 620 (2nd
Cir. 2003); <u>United States v. Delano</u>, 55 F.3d 720, 729-30 (2d Cir.
1995).

[9]  <u>See</u> <u>also</u> <u>United States v. LaSpina</u>, 299 F.3d 165, 181 (2d
Cir. 2002); <u>United States v. Patino</u>, 962 F.2d 263, 265-66 (2d
Cir. 1992)(no constructive amendment where the prosecutor argued
that the defendant had illegally used three separate guns in
furtherance of a crime of violence, where the indictment charged
(continued...)

23

assessing a constructive amendment claim, the court must examine
the totality of the indictment, and not merely a particular
averment which allegedly conflicts with the trial evidence.
United States v. Ansaldi, 372 F.3d 118, 127 (2d Cir. 2004);
United States v. Teitler, 802 F.2d 606, 617 (2d Cir. 1986).

        The indictment charges that the conspirators
fraudulently inflated CUC's earnings by intentionally
underfunding CUC's membership cancellation reserve.  Proposed
Redacted Indictment for Retrial, Count 1, ¶¶ 44-48.  They did so
by failing to reserve sufficient funds to pay: (a) the "money-
back" guarantee of the entire membership fee to any member who
cancelled their membership before the expiration of the
membership period; and (b) any costs for members who failed to
pay their membership fees.  Id. at ¶¶ 45-45.  See Tr. 879-81;
Initial Tr. 2345-54, 2468-91.

        The conspirators intentionally manipulated the historic
cancellation rates for various programs in order to justify to
E&Y the (insufficient) cancellation reserve.  Initial Tr. 2476.
By understating that reserve, the conspirators misled the
auditors and the investing public to think that CUC was losing
fewer members to cancellation than it actually did.  That being
so, Kernkraut's testimony about CUC's and Cendant's overstatement

_____

        [9](...continued)
the use of a different gun on a different date).

24

of the number of its members and of its membership retention rate
pertains to conduct that is clearly within the "core of
criminality" charged in the indictment.

Forbes' claim is premature as well as meritless.  A
discrepancy between the indictment and the evidence or the jury
instructions is not a constructive amendment unless it confused
the jury into convicting the defendant of a crime other than the
one charged in the indictment.  United States v. Bryser, 954 F.2d
79, 87 (2d Cir. 1992).  The court's instructions are the
principal protection against such possible confusion.  United
States v. Coyne, 4 F.3d 100, 111-12 (2d Cir. 1993) (admission of
relevant evidence regarding pre-conspiracy conduct did not
constructively amend the indictment, in light of the district
court's limiting instructions).  Here, appropriate instructions
regarding the nature of the charged conspiracy will prevent the
jury from convicting Forbes merely for lying about membership
numbers and membership retention rates.  See United States v.
Lutz, 621 F.2d 940, 942-43 (9th Cir. 1980)(risk of variance
arising from admission of evidence of the defendant's
participation in uncharged fraudulent conduct was eliminated by
jury instructions that the defendants could be convicted only for
the "single scheme . . . involving each of the defendants" that
was charged in the indictment); see generally United States v.
Salameh, 152 F.3d 88, 145-46 (2d Cir. 1998)(no constructive

amendment of the indictment, where the Government's summation and
the final charge closely tracked the indictment, and the jury was
given a copy of the indictment for use during deliberations).[10]

**III.    Forbes has failed to demonstrate that Kernkraut's testimony about membership numbers and renewal rates was deliberately false.**

---

[10]    Forbes principally relies on <u>United States v. Milstein</u>,
401 F.3d 53 (2d Cir. 2005), but that case is distinguishable.
There, the defendant was convicted of distributing misbranded
prescription drugs with fraudulent intent, based on an allegation
in the indictment that the defendant "forged or falsified" the
material in which drugs were packaged.  401 F.3d at 64.  At
trial, however, the Government presented evidence that the drugs
were not only improperly re-packaged, but were also not sterile.
<u>Id.</u>  On appeal, the defendant argued that the district court
constructively amended the indictment by instructing the jury
that it could convict on the misbranding count if it found only
that "the labeling of the ampules of saline diluent suggested
untruthfully that these ampules were sterile . . . when in fact
they were a danger to health."  <u>Id.</u> at 64-65.  The Court of
Appeals reversed the misbranding conviction (but not the
convictions for any other count).

Unlike the district court in <u>Milstein</u>, this Court
presumably will not instruct jury that it can convict Forbes on
any count if it finds that the accounting scheme involved only
false statements regarding the number of members and member
retention rates.  Nor will the Government argue that Forbes could
be convicted on that basis.

Additionally, the challenged evidence in <u>Milstein</u>
changed the "core of criminality" because it pertained to
significantly more heinous conduct than that identified in the
indictment.  The <u>Milstein</u> indictment alleged that the drugs were
misbranded because they purported to be manufactured for
distribution in the United States, but were in fact manufactured
for distribution elsewhere.  401 F.3d at 59.  Evidence not
mentioned in the indictment that the drugs contained "bacteria
and endotoxins," 401 F.3d at 59-60, was a much more serious
offense because it implicated public health.  Here, evidence that
CUC overstated the number and retention rates of its members is
no more inflammatory than the accounting manipulations described
in the indictment.

26

Forbes contends that the Government is required to "correct the falsehood" of Kernkraut's testimony that CUC's membership numbers and membership renewal rates were overstated, because that testimony "does not appear to have any factual basis whatsoever."  FM 25.  Forbes' due process claim, based on such cases as <u>Napue v. Illinois</u>, 360 U.S. 264 (1959) and <u>United States v. Wallach</u>, 935 F.2d 445 (2d Cir. 1991) requires him to show that Kernkraut's challenged testimony is objectively and intentionally false, and that the Government knew or should have known it to be false.  <u>United States v. McCarthy</u>, 271 F.3d 387, 399 (2d Cir. 2001); <u>United States v. Glover</u>, 588 F.2d 876, 879 (2d Cir. 1978) (rejecting a due process claim where the defendant "failed to establish either that [the challenged] testimony was perjurious or that the government's behavior was improper").

Forbes has undertaken no such burden.  Rather, he simply contends that Kernkraut's testimony is "apparently based" on Cendant's April 15, 1998 press release, which makes no mention of membership numbers or retention rates.  FM 25.  That, however, hardly demonstrates that Kernkraut's testimony was false.  There is abundant testimony in this record that the conspirators intentionally inflated CUC's membership retention rates in calculating the amount of the membership cancellation reserve needed to pay cancelling members their guaranteed refund of the membership fee upon cancellation.  Initial Tr. 2345-54, 2468-91.

27

It stands to reason that, if CUC was overstating the rate by which members renewed their memberships, CUC was also, at least implicitly, overstating the total number of members. Accordingly, Kernkraut's testimony is not objectively false.

### IV. Forbes has failed to satisfy the rigorous requirements for obtaining a mistrial.

Finally, Forbes has failed to demonstrate that any of his present complaints about Kernkraut's testimony justify the extreme sanction of a mistrial, which is "warranted only upon a showing of actual prejudice." United States v. Gaskin, 364 F.3d 438, 464 (2d Cir. 2004); see United States v. Abrams, 137 F.3d 704, 708-09 (2d Cir. 1998); United States v. Cohen, 177 F.2d 523, 527 (2d Cir. 1949)(mistrial is an "extreme remedy" which was properly denied where remedial instructions could have cured the error). Forbes bears the burden of demonstrating such extreme prejudice from the challenged testimony that a mistrial is required. United States v. Urban, 404 F.3d 754, 777 (3d Cir. 2005) (affirming the denial of mistrial motion; "The party seeking the new trial bears the burden of demonstrating a likelihood of prejudice.").[11]

Mistrial is not warranted because (with the exception of Forbes' meritless claim regarding Kernkraut's testimony about

_____

[11]  Accord United States v. Walker, 1 F.3d 423, 432-33 (6th Cir. 1993); United States v. Joetzki, 952 F.2d 1090, 1094 (9th Cir. 1991);  United States v. Archie, 656 F.2d 1253, 1258 (8th Cir. 1981).

Forbes' false statements to Kernkraut), all of Forbes' present complaints implicate evidence which tends to prove that the charged crimes occurred, but not that Forbes committed them.  As noted above, the challenged evidence does not contradict Forbes' core defense in this case.  <u>United States v. Joy</u>, 192 F.3d 761, 770 (7th Cir. 1999) (district court properly denied mistrial motion based on prosecutor's summation argument regarding a matter that was essentially uncontested).  During the initial trial, Forbes never took issue with Heckler's testimony that certain of CUC's and Cendant's publicly reported statements were false; indeed, Forbes declined to even cross-examine Heckler on any matter during the initial trial.  Initial Tr. 10668.  Nor did Forbes argue in his extensive summation that the Government had failed to prove the existence of the charged fraudulent scheme.

During his opening statement for the retrial, Forbes stuck to the same defense: that he was ignorant of the accounting fraud that Corigliano and perhaps others were responsible for. Retrial Tr. 59 (stating that Corigliano engaged in criminal conduct); 68 (Corigliano conspired with his subordinates in CUC's Accounting Department to "manipulat[e] the books and records);" 68-70 (Corigliano hid the accounting manipulation from the auditors); 71 (Corigliano "ma[de] up numbers" and was "success[ful in] pulling this thing off").

Additionally, Kernkraut's challenged testimony that

tends to prove the existence of the accounting fraud, but not that Forbes participated in it, is cumulative of other evidence that has or will be admitted during the retrial.  For instance, Kernkraut's testimony that CUC's and Cendant's reported financial statements were inaccurate provides no basis for a mistrial for the additional reason that Government presented testimony from Pember, and will present testimony from Corigliano and Brian Heckler, that those statements were in fact false.  Pember has testified during the retrial that the conspirators intentionally falsified the publicly reported financial statements of CUC and Cendant, Tr. 860-62, 872-86, 914-22, 955-57.  She also testified that she and others intentionally lied to CUC's auditors in order to cover up the accounting manipulations.  Tr. 888-914.  Even erroneously admitted evidence that is cumulative of properly admitted evidence generally is no cause for a mistrial, particularly when the trial court gives a suitable cautionary instruction.  See United States v. Banks, 405 F.3d 559, 565 (7th Cir. 2005)(no abuse of discretion to deny mistrial motion in prosecution for drug-trafficking following the erroneous admission of cumulative evidence regarding the defendant's admission that he owned a gun found in his vehicle, where the court later directed the jury to disregard the improper

evidence).[12]  For that reason as well, Forbes' mistrial motion

regarding Kernkraut's testimony should be denied.

### CONCLUSION

For the foregoing reasons, the Government respectfully

requests that this Court deny Forbes' Retrial Motion No. 15.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
Special Attorney
U.S. Department of Justice


NORMAN GROSS
MICHAEL MARTINEZ
CRAIG CARPENITO
Special Attorneys
U.S. Department of Justice

Dated: October 31, 2005
Hartford, Connecticut

---

[12]  Accord, United States v. Bradshaw, 281 F.3d 278, 284
(1st Cir. 2002)(affirming denial of mistrial motion based on
jury's consideration of statements, which were conditionally
admitted but later stricken, where the statements were
cumulative, and district court explicitly admonished the jury to
disregard the statements); United States v. Newby, 11 F.3d 1143,
1147 (3d Cir. 1993) (affirming denial of mistrial based on the
revelation of hearsay evidence[that] was . . . at most
cumulative," where curative instruction was given); United States
v. Torres, 733 F.2d 449, 462 (7th Cir. 1984)(affirming the denial
of a mistrial motion, in a murder prosecution, based on an
forensic examiner's improper testimony relating to blood stains
on a glove found with knife and sheath, where the district court
granted a motion to disregard the testimony at the close of the
Government's case and again at close of trial, and the evidence
was cumulative); see generally United States v. Mills, 280 F.3d
915, 922 (9th Cir. 2002)(noting that, in deciding whether to
grant a mistrial based on the jury's exposure to improper
information, the court should consider, inter alia, whether the
extraneous information merely cumulative of other evidence
adduced at trial; whether a curative instruction was given or
some other step taken to ameliorate the prejudice).

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this day I caused to be served copies of the foregoing upon the following by hand delivery:

Barry S. Simon, Esq.
Williams & Connolly LLP


_____
DEBRA ELLIOTT
U.S. Department of Justice


Dated: October 31, 2005
       Hartford, Connecticut