UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------
UNITED STATES OF AMERICA,      )
                               )
v.                             )    Criminal No. 3:02CR00264(AWT)
                               )
WALTER A. FORBES               )
-------------------------------
```

**RULING ON MOTION OF NON-PARTY CENDANT CORPORATION'S MOTION TO QUASH THE SUBPOENAS SERVED BY WALTER A. FORBES**

For the reasons set forth below, the motion to quash by Cendant Corporation ("Cendant") is being granted. Cendant moves to quash subpoenas dated August 17, 2005 and September 13, 2005, served on it by defendant Forbes.

I.  **Legal Standard**

Federal Rule of Criminal Procedure 17(c) provides:

> A subpoena may order the witness to produce any books, papers, documents, data or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1). Courts may modify or quash a subpoena *duces tecum* "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

Rule 17(c) is not intended to be used as a discovery device for criminal cases. United States v. Nixon, 418 U.S. 683, 698 (1974) (citing Bowman Dairy Co. v. United States, 341 U.S. 214, 220 (1951)). Rule 17(c)'s "chief innovation was to expedite the trial by providing a time and place before trial for the

inspection of subpoenaed materials." Id. at 698-99.  In Bowman Dairy, the Court quoted the following statement by a member of the advisory committee:

> [W]hile normally under a subpoena books and other things called for would merely be brought into court at the time of the trial, let us say immediately before they are to be offered in evidence, there is a provision in this rule that the court may, in the proper case, direct that they be brought into court in advance of the time that they are offered in evidence, so that they may then be inspected in advance, for the purpose of course of enabling the party to see whether he can use it or he wants to use it.

341 U.S. at 220 n.5 (citing Statement of Mr. G. Aaron Youngquist, Member of the Advisory Committee, Federal Rules of Criminal Procedure, Proceedings of the Institute on Federal Rules of Criminal Procedure (New York University School of Law, Institute Proceedings, Vol. VI, 1946) ¶ 167-68).  "It is therefore necessary to guard against action under Rule 17(c) which, contrary to its spirit and purpose, is aimed at obtaining discovery."  United States v. Jannuzzio, 22 F.R.D. 223, 227 (D. Del. 1958) (citing State v. Hutchins, 138 A.2d 342, 345-46 (Del. Super. 1957)).

    A party seeking pretrial production and inspection of documents and other objects must satisfy four requirements.  That party must show:

    (1)   that the documents and/or objects are evidentiary and relevant;

    (2)   that they are not otherwise procurable reasonably

>    in advance of trial by exercise of due diligence;
>
> (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and
>
> (4) that the application is made in good faith and it is not intended as a general "fishing expedition."

Nixon, 418 U.S. at 699-700.[1]

Under Nixon, the party seeking production must designate with specificity the documents or other objects to be produced.

---

[1] After stating these four requirements, the Court then stated "[a]gainst this background, the Special Prosecutor, in order to carry his burden, must clear three hurdles: 1) relevancy; 2) admissibility; and 3) specificity." Nixon, 418 U.S. at 700. Some courts have interpreted this language to mean that the Nixon test may be expressed as a three part test: 1) relevancy; 2) admissibility; and 3) specificity. See United States v. Arditti, 955 F.2d 331, 345 (5th Cir. 1992); United States v. Weissman, No. 01CR529, 2002 WL 31875410, at *1 (S.D.N.Y. Dec. 26, 2002); United States v. King, 194 F.R.D. 569, 573 (E.D. Va. 2000); United States v. Nachamie, 91 F. Supp.2d 552, 562 (S.D.N.Y. 2000); United States v. Ruedlinger, 172 F.R.D. 453, 456 (D. Kan. 1997); United States v. Cherry, 876 F. Supp. 547, 552 (S.D.N.Y. 1995); United States v. Ausbrook, No. 92-40064-01, 1993 WL 270506, at * 2 (D. Kan. June 4, 1993); United States v. Moore, No. 92CR200, 1992 WL 266938, at *1 (E.D.N.Y. Sept. 29, 1992); United States v. Burger, 773 F. Supp. 1419, 1425 (D. Kan. 1991); United States v. Rich, No. S83CR.579, 1984 WL 845, at *3 (S.D.N.Y. Sept. 7, 1984). In Nixon, however, it appears that the party seeking production had satisfied the second and third requirements and that what remained to be analyzed were the first and fourth requirements. This court concludes that the proper approach for determining the propriety of a Rule 17(c) subpoena is to consider each of the four requirements under Nixon set forth above.

Nixon, 418 U.S. at 700.  This specificity requirement ensures that a 17(c) subpoena is not turned into a "fishing expedition to see what may turn up." Bowman Dairy, 341 U.S. at 221.  "[T]he subpoena must refer to specific documents, or at least, to specific kinds of documents." United States v. Carroll, No. 96-20024, 1996 WL 442213, at *3 (D. Kan. July 3, 1996); see also United States v. Ruedlinger, 172 F.R.D. 453, 456 (D. Kan. 1997) (citing 2 Charles A. Wright, Federal Practice and Procedure ¶275 at 159 (1982)).  This requirement is satisfied if the subpoena identifies "certain documents or sharply defined groups of documents."  Ruedlinger, 172 F.R.D. at 456.  This requirement of specificity must, of course, be considered in light of the circumstances of the particular case.  In Caruso, after noting that "[t]he defendant's subpoena is targeted at uncovering specific documents, or types of documents, which are relevant to establishing a potential defense for the defendant," the court concluded that the subpoena, which was written in broad terms,[2]

---

[2]  The subpoena called for production of :
   1. All documents concerning [C & L's] policies and practices regarding partner relocation, subsidies paid in lieu of relocation, and reimbursement to partners or others in connection with partner relocation....
   ....
   2. All documents concerning reimbursement and subsidy payments made as a result of the relocation of [the names of several individuals are omitted].
   3. All documents concerning [C & L's] policies and practices with respect to the authority of managing partners within their area of geographic responsibility, including but not limited to documents concerning managing partners' authority to make

4

Case 3:02-cr-00264-AHN   Document 1938   Filed 11/07/2005   Page 5 of 12

was "*as specific as could be reasonably expected under the circumstances* (i.e., where the defendant does not actually possess the documents, but has first hand knowledge as former managing partner about what the documents will purportedly contain)... ." 948 F. Supp. at 399 (emphasis added). In addition, this requirement of specificity provides the subpoenaed party with sufficient knowledge about what documents or other objects are being sought to formulate objections related to relevancy or admissibility. United States v. Ruedlinger, 172 F.R.D. 453, 456 (D. Kan. 1997). Failure to set forth "with sufficient specificity the evidentiary nature of the requested materials ... forc[es] the court to speculate as to the specific nature of their contents and its relevance." United States v. Arditti, 955 F.2d 331, 346 (5th Cir. 1992).

In almost every case where the requesting party broadly requests "any and all" documents in a broad category, courts will narrow the request or grant the motion to quash the request. See United States v. Anderson, 31 F. Supp.2d 933, 943 (D. Kan. 1998) (narrowing request for "any and all express or implied threats against any expected government witness"); U.S. v. Colima-Monge, No.96-305-FR.,1997 WL 325318, at *5 (D. Or. June 6, 1997)

---

> decisions regarding charitable contributions and accounting therefor, office expenses, the discounting of bills, and other subjects as to which managing partners had decisionmaking responsibility...

Caruso, 948 F. Supp. at 396.

5

(quashing request for "[a]ny and all records ... setting forth guidelines, protocol, or other regulations promulgated by any agency concerning the operation of ROCN agents and informants... ."); Ruedlinger, 172 F.R.D. at 456 (quashing request for any and all audit reports prepared by IRS pertaining to defendant's company); United States v. Jackson, 155 F.R.D. 664, 668 (D.Kan.1994) (quashing subpoenas and stating that the "subpoenas employ such terms as 'any and all documents' or 'including, but not limited to;' these are indicia of a fishing expedition"). Such broad requests, which the courts often refer to as "fishing expeditions, fail to satisfy the specificity requirement.

**II.   The August 17, 2005 Subpoena**

Cendant Corporation ("Cendant") moves to quash two groups of calls in the August 17, 2005 subpoena: (a) documents relating to Cendant's advancement of legal fees to various witnesses and potential witnesses, and (b) documents relating to the 2005 severance of former Cendant Executive, Scott Forbes.

**(a) Documents Relating to the Advancement of Legal Fees**

Cendant has grouped the 53 separate calls relating to the advancement of legal fees into four categories: (i) documents sufficient to identify any legal fees paid since April 15, 1998 on behalf of various former Cendant employees and directors; (ii) documents sufficient to identify any legal fees paid for services rendered in connection with the 2004 trial on behalf of various

6

former Cendant employees and directors; (iii) all documents memorializing or describing any refusal to pay legal fees for services rendered in connection with the 2004 trial for various former Cendant employees and directors; and (iv) all documents submitted by various former Cendant employees and directors who were witnesses in the 2004 trial in support of any request that Cendant pay the witness' legal fees.

Cendant argues that documents relating to the advancement of (or the refusal to advance) legal fees are irrelevant. However, the court agrees with defendant Forbes that documents relating to legal fees advanced to some witnesses and refused others go to bias with respect to the witnesses whose legal fees were or are being paid. Bias of a witness is not a collateral matter, and thus, may be established by extrinsic evidence. See United States v. Kahn, 472 F.2d 272, 281-82 (2d Cir. 1973); United States v. Hayutin, 398 F.2d 944, 952-53 (2d Cir. 1968). "The law of evidence has long recognized that a cross-examiner is not require to 'take the answer' of a witness concerning possible bias, but may proffer extrinsic evidence, including the testimony of other witnesses, to prove the facts showing bias in favor of or against a party." United States v. Harvey, 547 F.2d 720, 722 (2d Cir. 1976) (citing McCormick, Evidence, § 41 (2d ed. 1972)). However,

> [t]his Circuit follows the rule applicable in a number of other Circuits, that a proper foundation must be laid

7

> before extrinsic evidence of bias may be introduced. <u>See</u> <u>United States v. Kahn</u>, 472 F.2d 272, 281-82 (2d Cir. 1973); <u>United States v. Hayutin</u>, 398 F.2d 944, 952-53 (2d Cir. 1968). Prior to the proffer of extrinsic evidence, a witness must be provided an opportunity to explain the circumstances suggesting bias.

<u>Id.</u>

In connection with other motions to quash filed in connection with this retrial, the court is aware of the fact that defendant Forbes has information as to the advancement of legal fees to at least three witnesses called in the government's case-in-chief, i.e., Anne Pember, Kevin Kearney and Cosmo Corigliano. Pember and Kearney have concluded their testimony, and neither was provided an opportunity to explain any bias resulting from Cendant's advancement of legal fees. Thus, in neither instance has a proper foundation been laid for the introduction of extrinsic evidence of resulting bias. Also, in the event, defendant Forbes elects to lay a proper foundation to introduce such extrinsic evidence of bias with respect to Corigliano, he does not need Cendant to produce extrinsic evidence in the form of documents relating to the advancement of legal fees by Cendant to Corigliano because such extrinsic evidence has already been produced by Corigliano.

It does not appear that any of the other individuals mentioned in these calls will appear as witnesses for the government, and thus it does not appear that defendant Forbes has any need for the documents he seeks with respect to them.

8

However, even if any of those individuals were to be called as a witness, this is not a situation where defendant Forbes cannot properly prepare for trial without production and inspection in advance of trial and where there would be a delay in the trial as a result of the failure to obtain the information in advance. It would take no more than a few minutes to review such documents. Accordingly, in view of the fact that defendant Forbes has not laid a proper foundation for introducing extrinsic evidence of resulting bias with respect to either Pember or Kearney, Cendant should not be burdened with producing documents with respect to any other potential witness until such time as the potential witness has been identified as a witness pursuant to the Order Re Procedures for Retrial and defendant Forbes has represented that he will lay a proper foundation for the introduction of such extrinsic evidence. (The court notes that it is unlikely that defendant Forbes he will do so in view of the fact that doing so would open the door to introduction by the government of evidence that Cendant advanced legal fees to defendant Forbes.)

The court notes that defendant Forbes also argues that the documents described in these calls are relevant and admissible because they evidence "Cendant's bias," separate and apart from the bias of certain witnesses. However, it is not apparent how evidence of "Cendant's bias," separate and apart from the bias of an individual witness, would be relevant or admissible.

**(b) Scott Forbes' Severance Agreement**

The court agrees with defendant Forbes that benefits conferred upon Scott Forbes by Cendant are relevant and admissible as evidence with respect to bias. However, because Scott Forbes will not be called as a witness in this case, the motion to quash is being granted as to these calls.

### III. The September 13, 2005 Subpoena

The September 13, 2005 subpoena contains calls similar or identical to calls that were previously quashed by the court in connection with the initial trial, and it was served to preserve those subpoena demands with respect to this retrial. Defendant Forbes states that, with respect to the September 13, 2005 subpoena, he relies on arguments made in opposition to Cendant's motions to quash before and during the first trial. See Opposition of Walter A. Forbes to Joint Motion of Cendant Corporation and John H. Carley to Quash the Subpoenas Served by Defendant Walter A. Forbes (Doc. No. 1832) at 1-2.

Defendant Forbes' November 28, 2001 subpoena and February 13, 2003 subpoena were the subject of Non-Party Cendant Corporation's Supplementary Motion Quash the First Rule 17(c) Subpoena and Its Motion to Quash the Second Rule 17(c) Subpoena (Doc. No. 157), which was granted on May 13, 2004. See Trial Tr. 596. That motion to quash was, with numerous other motions to quash filed by non-parties, the subject of a hearing on motions

to quash on March 1, 2004. After consideration of the arguments and representations made at that hearing, the court concluded that the defendants had not met their burden of showing that their application had been made in good faith and with sufficient specificity so as not to amount to a "fishing expedition." The court's determination was based on its conclusion that the subpoena demands were as broad as any request for production in a civil case could be and that, contrary to the spirit and purpose of Rule 17(c), the defendants' subpoenas were aimed at obtaining discovery. See Hearing Tr. (3/1/04) at 12-13, 18. The court's conclusion was reenforced by the fact that, although there has been extensive discovery in the related civil litigation, Cendant had nonetheless produced an additional million papers as a result of the 17(c) subpoenas served on it in this case. See id. at 35. In the final analysis, the court found persuasive the position articulated by counsel for Cosmo Corigliano, i.e., that when a defendant serves a thoroughly improper subpoena that fails under the Nixon test it should be quashed and that defendant can then come back with a proper subpoena, which can then be enforced. See id. at 161. Proceeding in any other manner would simply encourage an inappropriate practice of serving, for tactical reasons, an overly broad Rule 17(c) subpoena, knowing that one could receive more than what one was entitled to receive from recipients who attempt a good faith negotiation, and then,

11

possibly obtain additional documents once the court was presented with a motion to quash. The court notes that during the motions hearing on March 1, 2004, it initially attempted to force the disputants to compromise but, upon reflection, concluded that was not the appropriate way to proceed.

Defendant Forbes' March 22, 2004 subpoena, which was the subject of Non-Party Cendant Corporation's Motion to Quash the Third Rule 17(c) Subpoena (Doc. No. 570), was also quashed on May 13, 2004, as was defendant Forbes' March 22, 2004 Subpoena served on Patterson, Belknap, Webb & Tyler LLP, which was the subject of Non-Party Patterson, Belknap, Webb & Tyler LLP's Motion to Quash the Rule 17(c) Subpoena (Doc. No. 572).

As to defendant Forbes' June 13, 1004 subpoena, he fails to satisfy his burden under <u>Nixon</u> of showing that the documents called for are evidentiary and that he is not engaged in a "fishing expedition."

**IV. Conclusion**

For the reasons set forth above Non-Party Cendant Corporation's Motion to Quash the Subpoenas Served by Walter A. Forbes (Doc. No. 1735) is hereby GRANTED.

Dated this 5th day of November 2005 at Hartford, Connecticut.

                                                  /s/
                                       Alvin W. Thompson
                             United States District Judge