UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>)<br>WALTER A. FORBES )<br>)<br>) | No. 3:02CR264 (AWT)<br><br>November 4, 2005 |

MOTION OF DEFENDANT WALTER A. FORBES
FOR ENFORCEMENT OF SUBPOENA CALLS SEEKING
COPIES OF DOCUMENTS TO OR FROM THE SEC
THAT WERE PROVIDED TO MR. CORIGLIANO BY HIS COUNSEL
(Forbes Retrial Motion No. 19)

Defendant Walter A. Forbes, through undersigned counsel, respectfully moves for enforcement of the calls of his subpoenas to Kramer Levin and Cosmo Corigliano that request the production of documents to or from the SEC (or drafts thereof) that were provided to Mr. Corigliano by his counsel, including the documents identified as subpoena exhibits A-V. The pertinent calls of the subpoenas are calls 2 and 4-6 of the second subpoena to Kramer Levin and calls 16-17 of the first subpoena to Mr. Corigliano.[1]

Oral Argument Requested

---

[1] Call 5 of the second Kramer Levin subpoena requests drafts of the documents identified as exhibits A-V of the subpoena.

Mr. Forbes requests that the Court direct that any responsive documents be brought to Court on Monday, November 7 so that they can be produced forthwith in the event the Court grants the instant motion. Mr. Forbes further requests that the documents be submitted to the Court under seal and made part of the record of this case in the event the instant motion is denied.

The grounds for this motion are set forth in the accompanying memorandum of points and authorities.

        Respectfully submitted,

        WILLIAMS & CONNOLLY LLP

By: _____
    Brendan V. Sullivan, Jr. (Bar No.ct17115)
    Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

        - and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

2

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Motion of Defendant Walter A. Forbes for Enforcement of Subpoena Calls Seeking Copies of Documents to or From the SEC that were Provided to Mr. Corigliano by his Counsel (<u>Forbes Retrial Motion No. 19</u>) to be sent via email and hand-delivery on November 4, 2005 to the following:

Michael Martinez, Esq.
Craig Carpenito, Esq.
United States Attorneys
The Federal Building
U.S. Department of Justice
450 Main Street, Room 320
Hartford, CT  06103

<u>Via Email and Federal Express on November 4, 2005 to</u>:

Gary P. Naftalis, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, 30th Floor
New York, NY  10036

<u>and Via Email on November 4, 2005 to</u>:

Norman Gross, Esq.
U.S. Attorney's Office
District of New Jersey
401 Market Street
Fourth Floor
Camden, NJ  08101

_____
Barry S. Simon

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> WALTER A. FORBES ) | No. 3:02CR264 (AWT) <br><br> November 4, 2005 |

**MEMORANDUM IN SUPPORT OF
MOTION OF DEFENDANT WALTER A. FORBES
FOR ENFORCEMENT OF SUBPOENA CALLS SEEKING
COPIES OF DOCUMENTS TO OR FROM THE SEC
THAT WERE PROVIDED TO MR. CORIGLIANO BY HIS COUNSEL
(Forbes Retrial Motion No. 19)**

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this memorandum in support of his motion for enforcement of the calls of his subpoenas to Kramer Levin and Cosmo Corigliano that request the production of documents to or from the SEC (or drafts thereof) that were provided to Mr. Corigliano by his counsel, including the documents identified as subpoena exhibits A-V.[1]

## ARGUMENT

Mr. Forbes seeks to cross-examine Mr. Corigliano concerning communications between his counsel and the SEC during the period between Mr.

---

[1] The pertinent calls of the subpoenas are calls 2 and 4-6 of the second subpoena to Kramer Levin and calls 16-17 of the first subpoena to Mr. Corigliano. Call 5 of the second Kramer Levin subpoena requests drafts of the documents identified as exhibits A-V of the subpoena.

Corigliano's execution of his plea agreement on January 14, 2000 and Mr. Corigliano's April 16, 2004 settlement with the SEC. The documents include DX 951, a May 26, 2000 letter from Mr. Corigliano's counsel to the SEC that encloses "asset, liability and asset transfer information" and states that the information is provided "[p]ursuant to paragraph 12 of Mr. Corigliano's plea agreement and as part of his best efforts to settle any claims by the Commission." Id. (Exhibit 3 to this memorandum). The documents also include a September 4, 2003 letter from Mr. Corigliano's counsel to the SEC that encloses financial information concerning Mr. Corigliano, including "a brokerage listing" for a house in the Old Saybrook area that "seems comparable" to Mr. Corigliano's house. Exhibit 8 to this memorandum.

Defense counsel are in possession of information indicating, inter alia, that the asset transfer information supplied in the May 26, 2000 Kramer Levin letter to the SEC was incomplete, and that the information in the September 4, 2003 Kramer Levin letter was inaccurate or misleading.[2] As the Court stated on November 3, 2005, a critical question with respect to the May 26, 2000 letter is "whether this is something Mr. Corigliano had at the time." Tr. 2011; see also id. (inquiring whether Mr. Corigliano "ha[d] this at some point and looked at it and kn[e]w that what went to the SEC was, according to the evidence you say you have,

---

[2] The source of this information is not the Affidavit of Cosmo Corigliano and Agnes T. Corigliano recently provided to Mr. Forbes pursuant to the Court's ruling on Mr. Corigliano's and Kramer Levin's motion to quash. That Affidavit, however, raises additional questions about Mr. Corigliano's failure to provide accurate asset transfer information to the SEC prior to April 16, 2004.

2

not complete and accurate."); Tr. 2012 (Court poses question as follows: "Did Mr. Corigliano actually have knowledge as to what went to the SEC and therefore know that, according to the defense position, what went in as a report of his asset transfers was not correct?").

The subpoena calls in question are intended to resolve that precise inquiry. If, as defense counsel believe, Mr. Corigliano was provided or shown a copy of (or a draft of) the May 26, 2000 letter by his counsel, then Mr. Corigliano was on notice of the information contained in (or omitted from) the letter and is clearly subject to cross-examination about the accuracy or inaccuracy of the letter. The same is true with respect to counsel's September 4, 2003 letter to the SEC and other correspondence between Mr. Corigliano's counsel and the SEC.[3]

---

[3] It is highly unlikely that Mr. Corigliano's counsel would send the SEC information about his assets, as specifically required by his plea agreement, without having Mr. Corigliano review and/or receive a copy of (or a draft of) the communication with the SEC to ensure that it was complete and accurate. Nevertheless, Mr. Forbes should be permitted to cross-examine Mr. Corigliano concerning his understanding of what was being sent to the SEC on his behalf even if he did not see the correspondence between his counsel and the SEC. Any communication between Mr. Corigliano and his counsel concerning information that would be provided to the SEC is not privileged. "[I]t is well established that communications between an attorney and his client, though made privately, are not privileged if it was understood that the information communicated in the conversation was to be conveyed to others." United States v. Tellier, 255 F.2d 441, 447 (2d Cir. 1958). If a client intends that the information he provides to counsel will be disclosed to third parties, then his communications with counsel concerning that information are not protected by the attorney client privilege. See id.; United States v. Rosenthal, 142 F.R.D 389, 392 (S.D.N.Y. 1992) ("If a client communicates material to an attorney with an understanding that it will be communicated to others, the communication as well as related details will not be considered privileged because the requisite confidentiality has not existed from the outset.") (citing Tellier); Mead Data Central, Inc. v. Air Force, 566 F.2d 242, 253 (D.C. Cir.

The documents sought by the subpoena are not privileged. The simple act of forwarding a draft or a copy of a non-privileged document to a client (such as a letter to or from the SEC) does not involve providing legal advice and is not a privileged communication. See United States v. Hall, 346 F.2d 875, 882 (2d Cir. 1965) (message conveyed from government to individual through his counsel not privileged). Mr. Corigliano's counsel appear to have sent a copy of at least one SEC-related document to their client, as referenced by a "bcc" notation on the document. See Exhibit 1.[4] Moreover, Mr. Corigliano was legally obligated to provide

---

1977) ("If the information has been or is later shared with third parties, the privilege does not apply."). It is not necessary for the attorney to act as a mere conduit of the information provided by the client. In Tellier, for example, the attorney exercised legal judgment in preparing a letter that included the substance of the information provided by the client but did not repeat it verbatim. 255 F.2d at 447-48. The Second Circuit nevertheless concluded that the attorney-client privilege did not apply to the communication between the client and his counsel. Id.

[4] During the 2004 trial, defense counsel showed Mr. Corigliano several communications between his counsel and the SEC, including the May 26, 2000 letter. Mr. Corigliano testified that he had never seen the documents. Tr. 7976-77, 7990, 7991, 7992. With respect to the September 4, 2003 letter, Mr. Corigliano testified that he provided information to his counsel but did not know that it had been requested by the SEC. Tr. 9298. Mr. Corigliano's counsel, however, have never represented that copies of the documents in question (or drafts thereof) were not supplied (or shown) to Mr. Corigliano. Furthermore, it would be extremely unusual for a law firm not to provide to a client significant documents such as the May 26, 2000 and September 4, 2003 disclosures to the SEC, which were made pursuant to Mr. Corigliano's legal obligations under the plea agreement to supply the SEC with complete and accurate information and respond truthfully to the SEC's inquiries. Mr. Corigliano testified in this proceeding that he did not recall receiving a September 28, 1998 communication from the SEC that was sent to his counsel, "but if my attorneys were supposed to send it to me, I'm sure they did." Tr. 1540. It is certainly reasonable to believe that Mr. Corigliano's counsel also sent him important correspondence with the SEC, such as the May 26, 2000 and September 4, 2003 letters, and/or drafts of those documents.

4

information to the SEC upon request. DX300, Schedule A at 7. He cannot avoid that obligation by having his attorneys perform it, and then claiming to know nothing about the information supplied to the SEC on his behalf pursuant to his obligations under the plea agreement.[5]

The subpoena calls in question seek relevant and admissible documents that relate to non-collateral matters, including Mr. Corigliano's bias and motive, the nature of his relationship with the government, the true terms of his plea agreement, and the benefits he has received from the government during his tenure as a cooperator.

First, the materials in question are relevant to Mr. Corigliano's bias and motive. Bias evidence includes anything that could "reveal any present and continuing reasons for the witness to fabricate his testimony in return for future prosecutorial favors." United States v. Lynn, 856 F.2d 430, 433 (1st Cir. 1988). This includes evidence that the witness has breached his plea agreement with the government, and thus has motive to fabricate testimony in the hope that the government will not act upon the breach. In Lynn, for example, the court held that it was error to exclude evidence that the witness had not successfully completed a polygraph exam when successful completion was a condition of the plea agreement. "There is no question of the relevance of the intended area of inquiry -- [the

---

[5] Any legal advice that may have accompanied the transmittal of the documents may simply be redacted, and cannot justify withholding the documents altogether.

witness's] motivation to lie to continue to curry favor with the government." Id.[6] Similarly, the court noted that a desire to protect assets that may still be subject to forfeiture may provide a witness with motive to fabricate testimony. Id. at n.5.

Here, Mr. Corigliano's plea agreement requires him to "use his best efforts" to settle any claims asserted by the SEC, and "to provide the SEC, upon request, with complete and accurate information regarding his ability to pay any such settlement in the form ordinarily required by the SEC." Plea Agreement, Schedule A at 7. The plea agreement also requires Mr. Corigliano to "truthfully disclose all information he possesses concerning any matters about which this Office and other government agencies designated by this Office, including . . . the SEC, may inquire of him." Plea Agreement at 2.

The defense is in the possession of evidence indicating that Mr. Corigliano did <u>not</u> completely and truthfully disclose all of the information he was required to disclose to the SEC. The documents sought by the subpoena will establish that Mr. Corigliano was on notice of the representations made by his counsel to the SEC between January 14, 2000 and April 16, 2004. Having received

---

[6] The court also stated, "we cannot ignore the government's tactic of drafting the plea agreement with the polygraph requirement clause, revealing the entire agreement to the jury (and thereby implying the witness' motivation to tell the truth), then objecting to defense attempts to expose the full implications of the clause." Id. Here, the government had Mr. Corigliano read portions of his plea agreement to the jury, including the provision that he truthfully disclose all information he possesses about which the SEC might inquire of him, on direct examination, and Mr. Corigliano testified that he was in compliance with that obligation. Tr. 1452.

6

or reviewed the correspondence in question (or drafts thereof), Mr. Corigliano would have learned that the information was inaccurate and/or incomplete, yet he did nothing to correct that information. If that is the case, then Mr. Corigliano violated his obligations under the plea agreement and has an additional motive to testify in a manner favorable to the government in an effort to curry favor with it so that it will excuse his noncompliance with the plea agreement. See Lynn, 856 F.2d at 433. Mr. Corigliano also has a motive to fabricate testimony in an effort to protect assets that may still be subject to forfeiture, such as assets he transferred to others and did not disclose to the government prior to September 4, 2004 (and which the government has not, to our knowledge, made any effort to claim since September 2004). See id. at 433 n.5.

Second, Mr. Corigliano's compliance with his plea agreement was placed directly at issue by the government during Mr. Corigliano's direct examination. Mr. Corigliano testified on direct examination concerning his compliance with the plea agreement, including the provision requiring him to "truthfully disclose all information he possess[es] concerning any matters about which this office and other government agencies designated by this office, including without limitation, the Federal Bureau of Investigation, the US Postal Inspection Service, and the SEC, may inquire of him." Tr. 1452. Under the doctrine of impeachment by contradiction, the defense should be permitted to establish that the testimony elicited by the government during Mr. Corigliano's direct examination was not accurate because Mr. Corigliano breached his plea agreement

7

by failing to provide complete and accurate information to the SEC.

It is axiomatic that documents that contradict a witness's testimony on a non-collateral matter may be admitted into evidence. In the Second Circuit, "[t]he determinative question in deciding whether extrinsic evidence contradicting a witness's testimony is admissible is not whether the contradicting extrinsic evidence is material or collateral, but rather whether the assertions that the impeaching party seeks to contradict are themselves material or collateral." Rosario v. Kuhlman, 839 F.2d 918, 925-26 (2d Cir. 1988). Here, Mr. Corigliano's compliance or lack of compliance with his obligations under the plea agreement is not a collateral matter. It is directly relevant to his bias and motive. The documents sought by the subpoena are relevant to establishing that Mr. Corigliano has failed to comply with his obligations under the plea agreement. They should be produced to enable Mr. Forbes to respond to the testimony elicited by the government on direct examination about Mr. Corigliano's purported compliance with his plea agreement.[7]

Third, the correspondence between Mr. Corigliano's counsel and the SEC demonstrates the nature of the relationship between the government and Mr.

---

[7] Although Mr. Corigliano's compliance with his plea agreement is not a collateral matter, the Second Circuit permits impeachment on collateral matters when the witness's direct testimony opens the door to such impeachment. See United States v. Benedetto, 571 F.2d 1246, 1250 (2d Cir. 1978) ("Once a witness (especially a defendant-witness) testifies as to any specific fact on direct testimony, the trial judge has broad discretion to admit extrinsic evidence tending to contradict the specific statement, even if such statement concerns a collateral matter in the case." (emphasis added)) (citing Walder v. United States, 347 U.S. 62 (1954)).

8

Corigliano. This correspondence reflects the government's willingness to bend, over and over again, to accommodate the special requests of its star witness and to forgive his failure to comply with the SEC's requests for information to which it was entitled under Mr. Corigliano's plea agreement.

For example, in March 2000, the SEC provided Mr. Corigliano's counsel a blank "Statement of Financial Condition of Cosmo Corigliano." See Exhibit 2. That form required a variety of detailed financial information, including "any disbursement having a value of $1000 or more, made on your behalf, or on behalf of your spouse or children, by any other person or entity in the last five years," id. at 7, and "all transfers of cash in an amount of $1000 or more . . . made by you in the last five years." Id. The form also required the production of "tax returns filed by you or on your behalf in the last five years," id. at 8, as well as other documents, *and was to be signed by Mr. Corigliano under penalty of perjury.* Id. Despite Mr. Corigliano's obligation to provide all information requested by the SEC "in the form ordinarily required by the SEC," DX 300, Mr. Corigliano did not provide this completed form to the SEC. Instead, Mr. Corigliano's counsel wrote two letters to the SEC containing some, but not all, of the information requested by the form. See Exhibit 3 (enclosing asset, liability and asset transfer information) and Exhibit 4 (enclosing living expense information). After "discussions," Mr. Corigliano's counsel provided a revised family budget a few weeks later. See Exhibit 5.

The SEC responded by requesting additional information, pointing out that it was entitled to such information under Mr. Corigliano's plea agreement, and that despite past requests, disclosure thus far had been "limited." See Exhibit 6. The SEC also noted that the budget proposed by Mr. Corigliano was not "reasonable," and that it was "hardly a budget that warrants hand wringing, much less the implication that family spending is cut to the bone." Id. Mr. Corigliano's counsel responded by reminding the SEC what a "valuable, cooperating witness" Mr. Corigliano had been, and argued that sufficiently detailed information already had been provided. See Exhibit 7. The SEC apparently reversed course at this point, and a budget agreement was signed shortly thereafter according to the terms proposed by Mr. Corigliano. DX400.

The course of the negotiations with the SEC that resulted in the budget agreement of August 2000 – a significant benefit to Mr. Corigliano – is critical evidence of the nature of the actual relationship between Mr. Corigliano and the government. That the government allowed Mr. Corigliano to circumvent its ordinary form, providing far less detailed information, and through his attorney rather by his own signature, under penalty of perjury, demonstrates the government's willingness to bend the rules time and again for Mr. Corigliano. It also reflects the government's willingness to let Mr. Corigliano violate his obligations under the plea agreement – which specifically required him to provide this information to the SEC in the form ordinarily used – with impunity.

10

The SEC correspondence also demonstrates exactly how extraordinary the budget agreed to between Mr. Corigliano and the SEC was. The SEC thought Mr. Corigliano's budget was "unreasonable" and not worthy of "hand wringing," pointing out that the median income for a married couple with children is less than $60,000 *gross*. See Exhibit 6. Yet the SEC nonetheless agreed to Mr. Corigliano's budget after being reminded what a "valuable, cooperating witness" Mr. Corigliano was. The SEC's willingness to agree to such an extraordinary budget is highly probative of the special status afforded Mr. Corigliano in this case. Similarly, the fact that in Mr. Corigliano's Wells submission, his counsel pointed to Mr. Corigliano's cooperation as grounds for the SEC being lenient demonstrates yet another benefit that Mr. Corigliano hoped to – and did – receive in exchange for his cooperation. That Mr. Corigliano was aware of this extraordinary, special treatment conferred upon him by the government goes directly to his motive and bias.

Fourth, the information sought speaks to the true scope, nature, and terms of Mr. Corigliano's plea agreement. The government wants to buttress Mr. Corigliano's credibility by arguing to the jury that his plea agreement would be "ripped up" if he lied. See Tr. 8/3/2004 at 7447-79; see also Tr. 1456-57 (Mr. Corigliano's testimony on direct examination that the non-prosecution provisions of his plea agreement will be "null and void" if Mr. Corigliano does not tell the truth); id. at 1456 (Mr. Corigliano's direct examination reading provision of plea agreement that "[s]hould Mr. Corigliano withdraw from this agreement, or should he commit

11

any additional federal, state or local crimes, or should it be established that he has intentionally given materially false, incomplete, or misleading testimony or information or otherwise has violated any provision of this agreement, the non-prosecution provisions of this agreement shall be null and void.").

The documents sought here demonstrate that Mr. Corigliano knows that he can violate his obligations under the plea agreement with impunity. Indeed, it appears that the government has been on notice, since September 4, 2004, that Mr. Corigliano did not supply all of the information he was required to supply to the SEC under his plea agreement during the period between January 14, 2000 and April 16, 2004. The full Affidavit of Cosmo Corigliano and Agnes T. Corigliano produced to the defense by Court Order (over objection by both Mr. Corigliano's counsel and the government[8]) on November 1, 2005 (and provided to the government more than a year earlier, in September 2004) discloses a number of asset transfers that were not contained in the disclosures made by Mr. Corigliano's counsel to the SEC between January 2000 and September 2004. Despite that fact, the SEC has not taken any action to recover those funds, and the government has taken no action to revoke the non-prosecution provisions of Mr. Corigliano's plea agreement. Thus, it appears that, despite the government's protestations and Mr. Corigliano's direct testimony, Mr. Corigliano can violate his obligations under the

---

[8]   See Government Opp. to Forbes Motion to Compel Affidavit (filed Oct. 4, 2004) at 2-3. The full affidavit with exhibits was not provided to the defense by the government as Brady, Giglio, or Jencks material on the Thursday before Mr. Corigliano began testifying or at any other time.

plea agreement while continuing to enjoy the benefits he receives under the agreement.

Finally, Mr. Forbes' request is not a "fishing expedition." Mr. Forbes' request is limited to a few, specific documents (such as fax transmittal sheets, cover letters, or "bcc" pages) that would simply demonstrate that Mr. Corigliano received the documents at issue (or drafts thereof).

## CONCLUSION

For the foregoing reasons, Mr. Forbes respectfully requests that the Court enforce the calls of his subpoenas to Kramer Levin and Cosmo Corigliano that request the production of documents to or from the SEC (or drafts thereof) that were provided to Mr. Corigliano by his counsel, including the documents identified as subpoena exhibits A-V. Mr. Forbes requests that the Court direct that any responsive documents be brought to Court on Monday, November 7 so that they can be produced forthwith in the event the Court grants the instant motion. Mr. Forbes further requests that the documents be submitted to the Court under seal and made part of the record of this case in the event the instant motion is denied.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

14

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Memorandum in Support of Motion of Defendant Walter A. Forbes for Enforcement of Subpoena Calls Seeking Copies of Documents to or From the SEC that were Provided to Mr. Corigliano by his Counsel (Forbes Retrial Motion No. 19) to be sent via email and hand-delivery on November 4, 2005 to the following:

Michael Martinez, Esq.
Craig Carpenito, Esq.
United States Attorneys
The Federal Building
U.S. Department of Justice
450 Main Street, Room 320
Hartford, CT  06103

Via Email and Federal Express on November 4, 2005 to:

Gary P. Naftalis, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, 30th Floor
New York, NY  10036

and Via Email on November 4, 2005 to:

Norman Gross, Esq.
U.S. Attorney's Office
District of New Jersey
401 Market Street
Fourth Floor
Camden, NJ  08101

Barry S. Simon