UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>WALTER A. FORBES. | No. 3:02CR264 (AWT)<br>November 6, 2005 |

**MOTION OF DEFENDANT WALTER A. FORBES TO
PRECLUDE THE GOVERNMENT FROM INTRODUCING
GOVERNMENT EXHIBIT 11007
(Forbes Retrial Motion *In Limine* No. 25)**

Defendant Walter A. Forbes, through undersigned counsel, respectfully moves to preclude the government from introducing in to evidence Government Exhibit 11007, an employment evaluation for Ernst & Young auditor Bruce Botti. The employment review, apparently authored by Simon Wood, discusses at length the "demoralizing engagement" at CUC during calendar year 1997, describing it as "the most mentally and physically grueling audit engagement that I have ever encountered." Exhibit 1 at EY PER 3948. The memorandum goes on to state:

> The client staff that we had to deal with met the following criteria (1) they did not care about the product they were creating (due to either frustration on their part about the effective takeover of their positions by former HFS personnel and/or the fact that the large amount of money they had made through the aforementioned takeover meant they would not need to work again if they did not want too [sic]), (2) they did not have the technical ability to handle the issues involved and (3) they felt they were overworked."

Id.

Oral Argument Requested

This employment review is a document internal to Ernst & Young. No one at Cendant, including Walter Forbes, would have been privy to it during the relevant period. Moreover, both Mr. Corigliano and Ms. Pember have already testified to the evasive and deceptive tactics they employed in dealing with the auditors. Thus, the only non-cumulative purpose for offering the memorandum is to demonstrate that Ernst & Young was complicit in the fraud by establishing that Ernst & Young recognized that Ms. Pember and the other Cendant account staff members were "evasive," "unprofessional," and "unresponsive," and that they provided Ernst & Young with schedules that were "consistently wrong," yet nonetheless provided a "clean opinion" on the company's financial statements.

Such a theory is inconsistent with the indictment, and the memorandum should be excluded on that ground alone. In addition, the memorandum should be excluded because it contains inadmissible hearsay, and because any limited, legitimate relevance the memorandum may have is outweighed by the unfair prejudice that would result to Mr. Forbes.

I. **THE ONLY NON-CUMULATIVE PURPOSE FOR OFFERING GOVERNMENT EXHIBIT 11007 IS AT ODDS WITH THE ALLEGATIONS OF THE INDICTMENT.**

The indictment does not identify Ernst & Young as a coconspirator in the alleged conspiracy to fraudulently inflate the operating income of CUC and Cendant. The government nonetheless now seeks to introduce evidence that Ernst & Young was complicit in the fraud because it had knowledge of the irregularities when it issued a clean opinion as to Cendant's financial statements. Injecting such

a theory into the case would create an impermissible variance with the allegations of the indictment, however, and the government should be precluded from doing so.

The government has already pushed this theory further than it should have – introducing through Ms. Pember (over objection) several conversations that implicated Ernst & Young in the fraud. See Retrial Tr. at 923-26, 960-65, & 982-86.[1] Even then, however, the government went so far as to seek only the introduction of evidence that it argued provided context to co-conspirators' statements or that went to Ms. Pember's "state of mind." Retrial Tr. at 961. Not only did the Court reject the "state of mind" argument under Fed. R. Evid. 403, but also, here there can be no such arguments since no one at Cendant was privy to the internal personnel evaluation of Mr. Botti.

## II. GOVERNMENT EXHIBIT 11007 CONTAINS INADMISSIBLE HEARSAY.

### A. The Personnel Evaluation Contains Hearsay.

The statements of Simon Wood contained within Government 11007 constitute rank hearsay that should be precluded under Fed. R. Evid. 801. The government attempts to overcome this by proffering a purported business records certification from Ernst & Young. First, because the government's only purpose in offering the exhibit is for the truth of the matters asserted by Simon Wood within it, the certification cannot overcome the hearsay within the document itself. Rather, to

---

[1] Mr. Forbes incorporates herein the arguments he made in his Motion for a Mistrial because Ms. Pember's Testimony Caused a Constructive Amendment and a Prejudicial Variance (Forbes Retrial Motion No. 17) [Docket No. 1891].

admit the information within the document, the government would have to call Simon Wood as a witness, where he would be subject to cross-examination by the defense.

Second, the certification fails to meet the requirements of Fed. R. Evid. 803(6) and 902(11) as it fails to state that the evaluation was made in the ordinary course of Ernst & Young's business. See Exhibit 2 (stating only that the record was kept in the ordinary course of Ernst & Young's business). Even a cursory review of the evaluation – which includes a special "attachment" to address the extraordinary circumstances of the Cendant audit engagement – makes clear that this evaluation is far from "ordinary" in Ernst & Young's business.

**B.      Mr. Forbes' Sixth Amendment Right to Confrontation Requires Exclusion of Government Exhibit 11007.**

Mr. Forbes' Sixth Amendment right to confront the witnesses against him also requires the exclusion of this hearsay evidence. The Second Circuit has expounded upon the importance of the right to confrontation, stating that because "cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested, the opportunity for cross-examination, protected by the Confrontation Clause, is critical for ensuring the integrity of the fact-finding process." Cotto v. Herbert, 331 F.3d 217, 229 (2d Cir. 2003) (internal quotations and citations omitted).

The Supreme Court recently reaffirmed this "bedrock procedural guarantee," holding that the Sixth Amendment required the exclusion of testimonial statements, even when they met an accepted exception to the hearsay

4

rule. Crawford v. Washington, 541 U.S. 36, 42 (2004). The Court explained that with respect to testimonial statements, the Confrontation Clause commands that "reliability be assessed in a particular manner: by testing in the crucible of cross-examination. The Clause thus reflects a judgment, not only about the desirability of reliable evidence (a point on which there could be little dissent), but about how reliability can best be determined." Id. at 61.

The hearsay at issue here may not be testimonial in nature, as was the hearsay in Crawford. Nonetheless, the fundamental principles underlying the Confrontation Clause and the Crawford decision dictate that the less reliable the hearsay, the more important the right to cross-examine becomes. Allowing the government to present the unreliable hearsay evidence contained within Government Exhibit 11007 would effectively eliminate this fundamental right so recently reaffirmed by the Supreme Court.

### III. GOVERNMENT EXHIBIT 11007 SHOULD BE PRECLUDED UNDER FED. R. EVID. 403.

Finally, even if there were some legitimate, non-hearsay purpose for admitting Government Exhibit 11007, the minimal probative value of the memorandum would be far outweighed by the unfair prejudice to Mr. Forbes. As discussed above, the only apparent purpose for offering the memorandum is to demonstrate that Ernst & Young was complicit in the fraud carried out by Mr. Corigliano and Ms. Pember. Although the government will undoubtedly argue that such evidence supports its theory that Mr. Forbes lobbied for Ernst & Young because he believed that Cendant could "get the fraud by Ernst & Young," all the

5

government need show to support its theory is that (1) there was a fraud, and (2) the auditors continued nonetheless to issue "clean opinions." Expanding its theory beyond that to make the auditors complicit takes the allegations of the conspiracy to a whole new level. Moreover, the danger in presenting such evidence concerning the auditors' knowledge is that the jury may conclude that if the auditors – who are Certified Public Accountants, and saw fraudulent documents never shared with Mr. Forbes – had knowledge of the fraud, then Mr. Forbes must have had knowledge of the fraud. Such an inference would be an impermissible one, yet is unlikely to be cured by a Court instruction that the jury not consider the evidence for that purpose.

Accordingly, even if the Court were to determine that there were some legitimate, non-hearsay purpose in admitting the exhibit, the limited relevance of the memorandum would be outweighed by this prejudice to Mr. Forbes.[2]

## CONCLUSION

For the foregoing reasons, Mr. Forbes respectfully requests that the government be precluded from introducing in to evidence Government Exhibit 11007.

---

[2] In addition, we cannot find any evidence that the government provided us with a copy of Government Exhibit 11007 during the first trial. Thus, although the document was produced in discovery, the first time we appear to have received a copy of the document marked as Government Exhibit 11007 was in Court on Thursday, November 3, 2005. For this reason, the government should not be permitted to introduce the document in its case-in-chief.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Dated: November 6, 2005

# EXHIBIT 1

## Ernst & Young LLP — Manager/Senior Manager Periodic Performance Review

Reviewee: Bruce Botti  
Location/Practice Unit: Stamford/Audit  
Performance Period: From 4/97 to 3/98  
Approximate hours on assignment: 1400  
Client Name/Activity: Cendant Corporation (formerly CUC International Inc.)/Annual Audit  
Reviewer: Simon Wood  
Date Prepared: 3/25/98

**A. Engagement Expectations.** Were engagement expectations (e.g., key client considerations/issues, outputs/deliverables, timetables and other expectations) discussed with the reviewee prior to or near the beginning of the engagement? Yes [x] No [ ]

**B. Nature of Assignment.** Briefly describe the assignment, including the scope of the work performed, specific tasks and responsibilities, and the degree of difficulty.

See attached supplement.

**C. Performance Observations.** Please review the behaviors listed under each of the five major performance areas below. Then, using these behaviors, comment about the individual's strengths and development needs for each area, and provide supporting examples where appropriate.

1. **PEOPLE** (includes: Teamwork—encouraging collaboration among team members; helping to resolve team conflicts. Development of Others—coaching, developing, and mentoring others; providing constructive on-the-job feedback. Management Style—creating a positive work climate characterized by trust and open communications. Oral/Written Communications—effectively structuring, writing, or editing proposals and engagement reports and supporting documentation; clearly presenting information to others in individual and group situations.)

People Strengths/Development Needs (and supporting examples)
Teamwork - clearly a strength of Bruce's. Bruce was definitely in this demoralizing engagement for the long haul and was continually prepared to work exceptionally long hours during the week and also at the weekend when required (due to the significant number of SEC filings etc. such time commitments were throughout the year not just on the year end audit). Development of Others - Bruce enjoys working in teams and makes a point of ensuring that the personal concerns of his staff are understood by him and where possible allowances made for their personal commitments. Bruce is a good developer of others and my only suggestion for him would be to try and increase the amount of work that he delegates to others as this will both improve their ability and give him and others above him more of a work/ life balance (Bruce has a tendency like most of us to feel that it is quicker for him to do many tasks which although more efficient in the short-term is probably less efficient in the long-run). Management Style - Again another strength. Bruce has a relaxed style dealing with staff below him which makes it comfortable for them to approach him with questions - an example of this is that a number of seniors ask him questions about engagements that Bruce is not involved with - this is a tremendous reflection on Bruce, but Bruce should for his own sake be careful not to have them take too much advantage of his patience as this could place additional constraints on his work/ life balance in the future. Oral/ Written Communications - Above average for his level, work papers are very neat, concise and easy to follow and Bruce makes good use of his PC in presenting his work. Bruce has a good oral communication style and is clear in his explanations. Bruce should focus on being more forceful in presenting his personal opinions as he usually has very good points to make.

2. **CLIENT SERVICE** (includes: providing value by listening, assessing, and properly diagnosing client business needs; providing client(s) with high quality work products that meet and/or exceed their expectations; providing ideas that improve client operations; demonstrating responsiveness and timeliness in addressing client issues and concerns.)

Client Service Strengths/Development Needs (and supporting examples)
This is a difficult engagement to discuss anybody's client skills for the reasons documented in the attached supplemental discussion. However, despite this and based upon my experience working with Bruce for over a year he has strong skills in this area. The last 6 months have been tremendously difficult and Bruce has tended to put off discussing issues with the former controller given her continued unprofessional and unresponsive manner which although entirely understandable and common amongst everyone on the engagement should be considered in any similar future situations (which I hope none of us ever have to face) as the only way to get to the end result required is to keep ignoring the personal slights and keep hounding the client. Other than this specific situation Bruce continued to work effectively with the CUC personnel despite their own continued, unbelievably incompetent performances and Bruce is to be praised and admired for putting up with this tremendously difficult environment. Due to the ineptitude of the client the preparation of a high-quality financial statement for the former CUC business relied upon the E&Y continually pointing out errors in client-prepared schedules and also significantly providing advice as to the disclosures and accounting that CUC should follow. The only reason CUC were able to produce a high-quality document that satisfied their new bosses (the Cendant Parsippany corporate office) and allowed a good Form 10-K filing to be achieved by Cendant itself was due to the 100% plus effort and technical skill of the E&Y team and Bruce was an instrumental part of this happening. SEC filings occurred at a tremendous rate throughout the year and Bruce provided responsive and well thought-out solutions to issues that arose as well as helping to ensure that all of these fire-drill deadlines were met.

3. **SALES** (includes: developing contacts outside the firm; contributing to lead generation by identifying contacts and target accounts; translating client needs into opportunities for additional work during the engagement; effectively negotiating and closing engagement opportunities; bringing all firm resources to bear to effectively sell integrated services.)

NHR 9

Sales Strengths/Development Needs (and supporting examples)

This was not the year for Bruce to be able to sell services on this client for the issues previously discussed. However, I know Bruce is aware of the need to sell services and I also know that he has a good understanding of all the services E&Y can provide - an example of this was the way he placed numerous calls to E&Y National staff to determine if there was a way to perform an agreed upon procedures project for the Wright Express subsidiary. Bruce was also part of the effort we made in pushing an accounts receivable systems installation project at the same subsidiary (we started off way behind 4 other vendors, incl. 2 Big 6 and ended up losing narrowly to a boutique firm purely on the basis of their prior successful projects with the subsidiary).

4. KNOWLEDGE (includes: within bounds of professional standards, formulating creative solutions to client's business problems; actively sharing functional/industry knowledge and expertise with others; effectively applying technical/industry knowledge to client business issues; identifying the impact of emerging industry issues on client operations; effectively utilizing industry-specific firm methodologies, techniques, tools, and information.)
- Knowledge Strengths/Development Needs (and supporting examples)

Bruce has a strong technical ability and for his level a very good SEC knowledge. Bruce was comfortable producing the first draft of a set of complex financial statements which were basically prepared from scratch and he produced a high-quality draft. Bruce is confident in utilizing the new E&Y resources and methodology that we have available at E&Y.

5. MANAGING PROJECTS (includes: Financial Management—developing comprehensive and responsive engagement plans; billing for services commensurate with value provided to client; maximizing appropriate economic standards [e.g., realization, utilization, leverage, etc.]; controlling and minimizing discounts. Resource Utilization—effectively utilizing the skills and abilities of others; demonstrating and instilling in others a concern for efficiency, productivity, and cost-effectiveness.)
- Managing Projects Strengths/Development Needs (and supporting examples)

I believe Bruce is aware of the need to meet budgetary concerns although due to the inherent nature of this engagement it was impossible to produce a budget and the significant amount of time spent by the engagement team was a function of the inefficiencies and inadequacies of the client. Occasionally and not surprisingly given the fact that there was 2 managers and a senior manager on this engagement and given the sheer demoralizing environment created by the client, Bruce did not take on as aggressive a manager role, in terms of resolving some outstanding open items in as timely a manner as I may have expected. However, Bruce was instrumental in ensuring that all open items on this engagement were finally completed.

Conclusion - An excellent performance, Bruce has demonstrated that his promotion to manager was well justified and with more experience reporting directly to partners he will develop into an exceptional manager and be ready for the next promotion.

D. Performance Review Timeliness. Indicate whether the reviewee completed performance reviews for others in a timely manner (i.e., within 30-60 days following the completion of the performance period).   ☒ Yes   ☐ No   ☐ N/A

E. Sign-offs. Has this review been discussed with the reviewee in person?   ☒ Yes   ☐ No
Reviewee's Signature: _____ Date: 4/1/98   Reviewer's Signature: _____ Date: 4/2/98
Optional: Reviewee should provide his or her comments on additional sheet, if necessary.
Second-level Reviewer's Signature: _____ Date: 4/3/98

F. Overall Rating: Considering this individual's level of experience, the difficulty and complexity of the assignment, accomplishment of engagement expectations (from Section A) and the individual's performance in each of the five major performance areas included in Section C, select the rating that most accurately reflects your judgment of this individual's overall performance:
- 5 = Outstanding (performance significantly and consistently exceeds all expectations and is of the highest quality and value);
- 4 = Very Good (performance frequently exceeds all expectations);
- 3 = Good (performance fully meets all expectations);
- 2 = Needs Improvement (performance meets some, but not all, expectations);
- 1 = Unacceptable (performance does not meet minimal expectations).

Overall Rating: 4.5

NOTE: A copy of the completed form should be routed to the reviewee's counselor.

NHR 9          CONFIDENTIAL                    EY PER 003947

Attachment to Bruce Botti's Review.

Nature of Assignment

This review is written against the backdrop of the most mentally and physically grueling audit engagement that I have ever encountered and which I believe few E&Y audit staff have fortunately had to endure. The client staff that we had to deal with met the following criteria (1) they did not care about the product they were creating (due to either frustration on their part about the effective takeover of their positions by former HFS personnel and/or the fact that the large amount of money they had made through the aforementioned takeover meant they would not need to work again if they did not want too), (2) they did not have the technical ability to handle the issues involved and (3) they felt they were overworked. All of these conditions led to the following situations:

(1) Client schedules were consistently wrong, needed to be revised and required multiple versions in order to arrive at a final schedule.
(2) Client personnel were frequently evasive and often tried all kinds of techniques to ensure that they did not deal with us on a timely basis.
(3) There was often low morale among the client personnel which contributed to a difficult work environment.
(4) Client personnel were often reticent about working overtime so the overtime we worked was often without any client personnel being there.
(5) Our overtime was increased in order to mitigate the fact that the work product of the client staff was insufficient and poorly executed.

Specifically on this engagement Bruce was responsible for the day to day managing of the Corporate part of this engagement, for which he had 2 seniors and 1 staff report to him at various points during the year. Additionally, Bruce worked throughout the year on a tremendous amount of SEC filings (including S-3, S-4, S-8, 8-K and 10-K filings which in the aggregate involved 15-25 filings during the last 12 months). Bruce dealt specifically with a large amount of reporting issues (both SEC and non-SEC) and the restructuring reserve as well the review of a large amount of the work produced by the team under him. Bruce also was involved in the production of some technical memo's on very complex issues. This was an exceptionally difficult assignment for a manager due to the issues discussed above.

CONFIDENTIAL

EY PER 003948

# EXHIBIT 2

Received 11/03/2005 10:52AM in 00:56 on line [0] for TM006315 * Pg 2/2

11-03-2005  11:53    From-ERNST & YOUNG LLP    2127793928    T-960  P.002/002  F-618

## DECLARATION

My name is Michele S. Grossman. I am of sound mind and capable of making this Declaration. I am an employee of Ernst & Young LLP ("Ernst & Young"). Based on personal knowledge and inquiry, I am familiar with the regularly conducted activities of Ernst & Young, and documents created during the course of those regularly conducted activities.

I have reviewed the document bearing Ernst & Young Bates-stamp numbers EY PER 003946-3948. It is a performance review prepared at or near the time by a person with knowledge of the reviewee and the audit that was kept in the course of Ernst & Young's regularly conducted business activities.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of November 2005.

_____
MICHELE S. GROSSMAN

## CERTIFICATE OF SERVICE

      I hereby certify that I caused the foregoing Memorandum in Support of Motion of Walter A. Forbes to Preclude the Government from Introducing Government Exhibit 11077 (Forbes Retrial Motion *In Limine* No. 25) to be sent via email on November 6, 2005 and via FedEx on November 7, 2005 to the following:

Norman Gross, Esq.
U.S. Attorney's Office
District of New Jersey
401 Market Street
Fourth Floor
Camden, NJ  08101

Michael Martinez, Esq.
Craig Carpenito, Esq.
United States Attorneys
The Federal Building
U.S. Department of Justice
450 Main Street, Room 320
Hartford, CT  06103

_____
Barry S. Simon