UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> WALTER A. FORBES ) | No. 3:02CR264 (AWT) <br><br> November 7, 2005 |

### REPLY MEMORANDUM IN SUPPORT OF
### MOTION OF DEFENDANT WALTER A. FORBES
### FOR ENFORCEMENT OF SUBPOENA CALLS SEEKING
### COPIES OF DOCUMENTS TO OR FROM THE SEC
### THAT WERE PROVIDED TO MR. CORIGLIANO BY HIS COUNSEL
### (Forbes Retrial Motion No. 19)

Brendan V. Sullivan, Jr. (Bar No.ct17115)
Barry S. Simon  (Bar No. ct24159)
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Oral Argument Requested

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this reply memorandum in support of his motion for enforcement of the calls of his subpoenas that request the production of documents to or from the SEC (or drafts thereof) that were provided to Mr. Corigliano by his counsel.

## ARGUMENT

I. **ANY WRITTEN COMMUNICATIONS BETWEEN THE SEC AND KRAMER LEVIN BETWEEN JANUARY 14, 2000 AND APRIL 16, 2004 (OR DRAFTS THEREOF) THAT WERE PROVIDED TO MR. CORIGLIANO SHOULD BE PRODUCED.**

Kramer Levin does not deny that copies of certain (unidentified) correspondence between Kramer Levin and the SEC may have been provided to Mr. Corigliano. See Opp. at 11. It is unclear whether this unidentified correspondence includes the Wells submission made on Mr. Corigliano's behalf. If Kramer Levin is in the possession of any correspondence (or draft correspondence) between Mr. Corigliano's counsel and the SEC that was provided to Mr. Corigliano, we respectfully request that it be produced. Kramer Levin's contention that it should not be required to produce these materials because they should be excluded from evidence under Rule 403 (Opp. at 11-12) should be rejected. The materials are admissible (or potentially admissible) as impeachment by contradiction and to show bias and motive.

For example, Mr. Corigliano testified on direct examination that, after he entered into his plea agreement, he was always willing to give back to the SEC the proceeds of his stock sales (reduced for the cost of the options and for taxes). Tr. 1471-72. Mr. Corigliano testified that this amount was $13-14 million. Id. But the

Wells submission made to the SEC on Mr. Corigliano's behalf in May 2000 proposed a settlement amount of only $3.4 million -- far less than the proceeds of his stock sales after taxes and the cost of options. See Ex. A to Kramer Levin Opp. (referencing offer made in Wells submission).[1] If Mr. Corigliano received or reviewed the Wells submission, he would have been on notice of the fact that the settlement offer made on his behalf to the SEC was far less than the amount of money that he testified he was "always willing to give back." Tr. 1472. If a document exists that shows that the Wells submission was provided to, or reviewed by, Mr. Corigliano, it should be produced so that defense counsel can use it to impeach Mr. Corigliano's testimony on direct examination.

In addition, the correspondence appended to Kramer Levin's pleading -- which was never previously produced to the defense by the government, Mr.

---

[1] Kramer Levin asserts that "Forbes' motion attaches some, but not all of the relevant correspondence, and thus presents a partial but incomplete picture of those negotiations and the related financial disclosures." Opp. at 3. In fact, the three letters that are attached to Kramer Levin's brief were never previously produced to Mr. Forbes by the government, Mr. Corigliano, or Kramer Levin. The letters attached to Kramer Levin's brief also make reference to additional correspondence between Kramer Levin and the SEC (including a May 15, 2000 letter from the SEC to Kramer Levin and at least three letters dated March 30, 2000) that has never been produced to Mr. Forbes. See Ex. A to Opp. Upon receipt of the Kramer Levin brief, defense counsel demanded that the government produce the additional correspondence and all similar correspondence pursuant to Rule 16, Brady, Giglio, and Jencks. See Ex. 1. The government also has an obligation under Brady and Giglio to disclose any and all oral agreements between the government and Mr. Corigliano's counsel, see Silva v. Brown, 416 F.3d 980, 986 (9th Cir. 2005), even if Mr. Corigliano himself is unaware of them. See Hayes v. Brown, 399 F.3d 972 (9th Cir. 2005) (en banc) (due process violated when cooperating witness testified falsely about oral agreement reached between witness's counsel and government even though witness did not know about agreement).

2

<u>Corigliano, or Kramer Levin</u> (<u>see</u> note 1, <u>supra</u>) -- confirms that Mr. Corigliano did, in fact, receive special treatment from the SEC.² For example, the May 24, 2000 letter from Gary Naftalis to Tom Newkirk of the SEC states that Mr. Naftalis represented to the SEC staff on May 19, 2000 "that <u>Cosmo would fill out the financial disclosure form you have provided</u> -- which also requests transfer information." Ex. B to Kramer Levin Opp. (emphasis added). The letter further acknowledged that the SEC wished to receive certain information "<u>from Cosmo directly</u> as part of any financial disclosure rather than from Fried Frank." <u>Id.</u> (emphasis added). It also represented that "<u>Cosmo is working on the financial disclosure form, and we will supply that information to you as promptly as we possibly can.</u>" <u>Id.</u> (emphasis added).

To defense counsel's knowledge, Mr. Corigliano never provided a signed financial disclosure form to the SEC that contained asset transfer information prior to his April 2004 SEC settlement.³ If the SEC excused Mr.

---

² While Kramer Levin asserts that this theory is "new," Opp. at 8, it was advanced by Mr. Forbes in the pleading that Mr. Forbes moved for leave to file <u>ex parte</u> and under seal because it revealed Mr. Forbes' cross-examination strategy. That motion was denied by the Court.

³ No such document has ever been produced to the defense. According to Kramer Levin, "Mr. Corigliano was never required to submit that disclosure form." Opp. at 6. If any such completed form was submitted to the SEC, it is a prior statement of Mr. Corigliano and should have been produced, at a minimum, as <u>Jencks</u> material in 2004. To the extent the completed form is in the possession of Mr. Corigliano and/or Kramer Levin, and was completed at a time when it was contemplated that Mr. Corigliano would provide it to the SEC (<u>see</u> Ex. B to Kramer Levin Opp.), it was not prepared with any expectation that it would remain confidential and it should be produced pursuant to the subpoenas previously

Corigliano from that obligation following its initial demand for it -- after being reminded by Kramer Levin that it could be used "for future cross-examination of Mr. Corigliano," id. -- that would be a significant benefit for Mr. Corigliano, and would evidence the special treatment he has received from the SEC as the government's star witness.[4] If there is correspondence between the SEC and Kramer Levin on that subject that was provided to or reviewed by Mr. Corigliano, it would demonstrate that Mr. Corigliano was aware of the special treatment he received from the SEC.[5]

To the extent that the SEC relented from its initial request for full and complete asset transfer information from Mr. Corigliano (as required by the

---

quashed by the Court. In the alternative, Mr. Forbes seeks permission to serve a new subpoena for this specific document.

[4] The plea agreement required Mr. Corigliano to "truthfully disclose all information he possesses concerning any matters about which this Office and other government agencies designated by this Office, including . . . the SEC, may inquire of him." Plea Agreement at 2.

[5] While Kramer Levin asserts that Mr. Corigliano "had informed the government of his knowledge of Walter Forbes' [alleged] knowing participation in the CUC/Cendant fraud months before" the spring and fall of 2000, Opp. at 12 n. 5, and therefore has no motive to fabricate evidence, id., Mr. Corigliano's claims about Mr. Forbes have varied widely over the years. For example, certain aspects of Mr. Corigliano's 2004 testimony were inconsistent with information contained in notes of his government interviews from early 2000, and were more inculpatory of Mr. Forbes. The underlying premise of United States v. Prawl, 168 F.3d 622, 626 (2d Cir. 1999), is that cooperating witnesses such as Mr. Corigliano have ongoing motives to fabricate. To the extent that Mr. Corigliano was aware in and after the year 2000 that he was receiving special treatment from the government and was allowed to violate the disclosure obligations of his plea agreement with impunity, that gave him (and gives him) an additional motive to fabricate his testimony in a manner that helps the government.

financial disclosure form the SEC gave to Kramer Levin in March 2000) (Exhibit 1 to Mr. Forbes' motion), that would be a further benefit to Mr. Corigliano and further evidence that Mr. Corigliano was permitted to violate his obligations under the plea agreement with impunity. See Note 4, supra.[6] To the extent that there is correspondence between the SEC and Kramer Levin on that subject that was provided to or reviewed by Mr. Corigliano, it would also demonstrate that Mr. Corigliano was aware of the special treatment he received from the SEC.[7]

While Kramer Levin asserted in May 2000 that Mr. Corigliano was not required to complete the financial disclosure form because he was not seeking a waiver of sums demanded by the SEC (including penalties and interest) based on inability to pay, Opp. Ex. A, the SEC apparently did not share that view. See Opp. at 9; Exhibit 6 to Opening Mem. Rather than acceding to the SEC's requests for information, however, as required by the plea agreement (at page 2), Mr. Corigliano's counsel argued with the SEC and "ultimately decided to provide the SEC Staff with something less than the complete and sworn Statement of Financial Condition form." Opp. at 9.

Even under Kramer Levin's interpretation of the plea agreement, the final SEC settlement did excuse Mr. Corigliano from paying full interest, see DX

---

[6] Kramer Levin asserts that "the SEC took the position for some time that Mr. Corigliano should fill out the financial disclosure form." Opp. at 9.

[7] It appears from pages 10-11 of Kramer Levin's pleading that correspondence between the SEC and Kramer Levin on the subject of Mr. Corigliano's financial disclosures may have been provided to Mr. Corigliano.

5

1060 ¶ 9, and Mr. Corigliano should have been required to complete a financial disclosure form to obtain that concession from the SEC.[8] If the SEC accorded the benefit of a partial interest waiver to Mr. Corigliano without requiring him to complete the financial disclosure form under oath, and Mr. Corigliano was copied on (or reviewed) correspondence to that effect, then Mr. Corigliano would be aware of additional special treatment he received from the SEC, which excused him from the obligation set forth in paragraph 12 of his plea agreement.

Kramer Levin's contention that it should not be required to produce any correspondence between Kramer Levin and the SEC that Mr. Corigliano received because it would distract and confuse the jury, Opp. at 11, is unavailing. The government placed Mr. Corigliano's purported compliance with the plea agreement directly at issue in Mr. Corigliano's direct examination. Tr. 1452. The government also elicited testimony from Mr. Corigliano that he is in compliance with his plea agreement. Id. It would be fundamentally unfair and a violation of Mr. Forbes' Sixth Amendment rights to preclude cross-examination or the

---

[8] Irrespective of paragraph 12, the plea agreement required Mr. Corigliano to "truthfully disclose all information he possesses concerning any matters about which this Office and other government agencies designated by this Office, including . . . the SEC, may inquire of him." Plea Agreement at 2. That language of the plea agreement required Mr. Corigliano to truthfully respond to any SEC request for information. The fact that the SEC allowed Mr. Corigliano not to respond to certain of its requests, or to respond to them incompletely, is further evidence of special treatment received by Mr. Corigliano or that he could violate the terms of his plea agreement without suffering any sanction. The government elicited Mr. Corigliano's purported compliance with the plea agreement on direct examination. Tr. 1452.

6

admission of extrinsic evidence that shows that Mr. Corigliano was on notice that he did not comply with his obligations under the agreement and/or that the government was allowing him to violate his plea agreement with impunity.[9]

In addition, it is unclear from Kramer Levin's response whether Mr. Corigliano was copied on (or otherwise reviewed) correspondence between the SEC and Kramer Levin in which the SEC complained that the budget sought by Mr. Corigliano was unreasonable and/or too high.[10] To the extent that there is correspondence between the SEC and Kramer Levin on that subject that was provided to or reviewed by Mr. Corigliano, it would demonstrate that Mr. Corigliano was aware that the SEC was allowing him to live on a budget that it considered unreasonable and that Mr. Corigliano was aware of the special treatment he received from the SEC.[11]

---

[9] Given Kramer Levin's disclosure of and reliance on three significant letters that were never previously produced to Mr. Forbes, Mr. Forbes renews his request for enforcement of his subpoena calls seeking all communications between Kramer Levin and the SEC, whether or not the communications were provided or shown to Mr. Corigliano. In the alternative, Mr. Forbes requests permission to serve a new subpoena seeking those communications.

[10] Kramer Levin asserts that it "found no documents indicating that Mr. Corigliano was copied on or otherwise received" the SEC letter dated July 20, 2000. Opp. at 2. It is unclear whether Mr. Corigliano was copied on or reviewed similar correspondence. Pages 10 and 11 of Kramer Levin's pleading suggest that Mr. Corigliano may have received copies of correspondence with the SEC concerning the reasonableness of his budget requests.

[11] While Kramer Levin asserts that the budget was not a benefit, Opp. at 10, Kramer Levin's opinion is irrelevant. The relevant question is whether Mr. Corigliano was aware of the <u>SEC's position</u> that the budget proposed by his counsel (to which it ultimately acquiesced with slight modifications) was unreasonably high,

7

Finally, Kramer Levin's pleading appears to contradict Mr. Corigliano's testimony on direct examination that the dispute with the SEC that held up his settlement was that the SEC wanted him to pay an additional approximately $6 million that he had paid in taxes on the proceeds of stock sales. See Tr. 1472. According to Kramer Levin, the SEC did not give Mr. Corigliano special treatment because the SEC's May 2000 settlement demand was "essentially" the same as the final April 2004 settlement (with the exception of the money Mr. Corigliano was allowed to keep for his children's education). Opp. at 12. If that is the case, then Mr. Corigliano's testimony that the SEC was demanding $6 million for tax payments, but finally relented on that point before the April 2004 settlement, is not accurate. To the extent that Mr. Corigliano received (or reviewed) correspondence between his counsel and the SEC concerning "what a fair settlement . . . should look like," Opp. at 11, as it appears he may have, id., those documents are relevant to impeach Mr. Corigliano's direct testimony and should be produced.

## II. DEFENSE COUNSEL SHOULD BE PERMITTED TO CROSS-EXAMINE MR. CORIGLIANO CONCERNING THE MAY 26, 2000 AND SEPTEMBER 4, 2003 LETTERS AND OTHER COMMUNICATIONS BETWEEN KRAMER LEVIN AND THE SEC.

Kramer Levin has represented that it "found no responsive documents that would show that the two particular financial disclosure letters on which Forbes

---

because that would show Mr. Corigliano's awareness that he was receiving special treatment from the SEC.

8

has placed primary reliance for his arguments, dated May 26, 2000 and September 4, 2003, were copied to Mr. Corigliano." Opp. at 1. Kramer Levin also has asserted that "we have diligently searched and can find no documents indicating that drafts, carbon copies or blind carbon copies of either of these letters were sent to Mr. Corigliano." Id. at 5-6. Kramer Levin has not represented that the two documents were never shown to Mr. Corigliano or reviewed by him. Nor has Kramer Levin asserted that Mr. Corigliano was never told that the information in the letters would be provided to the SEC. Mr. Forbes should be permitted to inquire whether Mr. Corigliano saw or reviewed either of these letters, as well as whether he understood that the information contained in the letters would be supplied to the SEC.[12] Mr. Forbes also should be permitted to inquire whether Mr. Corigliano saw or reviewed other communications between his counsel and the SEC, such as the Wells submission made on his behalf.

As Mr. Forbes asserted in his opening memorandum (at 3 n.3), it is highly unlikely that Mr. Corigliano's counsel would release financial information to the SEC, or make representations to the SEC concerning financial information, without having Mr. Corigliano review and verify the information that was to be provided.[13] Mr. Forbes should be permitted to inquire whether that process took

---

[12]  As discussed supra, Mr. Corigliano had a legal obligation under the plea agreement to provide truthful and complete information to the SEC.

[13]  Mr. Naftalis' May 24, 2000 letter to the SEC asserted that he was "cognizant of the need in representing an important cooperating witness to be precise and accurate in our written responses since even small, minor or

9

place. Such questions do not call for privileged information because Mr. Corigliano's review of information that he understood would be provided to the SEC is not privileged.[14] To the extent that Mr. Corigliano denies that he reviewed these materials before they were provided to the SEC, the jury should be permitted to hear those denials and make its own determination about the credibility of those denials. Finally, although the Court has previously ruled to the contrary, Mr. Forbes renews his contention (for purposes of preserving the record) that Mr. Corigliano should be subject to cross-examination under Fed. R. Evid. 613 based on representations made by his counsel on his behalf. See Williams v. Union Carbide Corp., 790 F.2d 552, 555-56 (6th Cir. 1986).[15]

---

inadvertent inconsistencies could provide unnecessary fodder for future cross-examination of Mr. Corigliano." Ex. B to Kramer Levin Opp. That would certainly suggest that Mr. Corigliano would have reviewed the financial disclosures his counsel made to the SEC before they were sent to ensure their accuracy.

[14]   It is not necessary to establish that Mr. Corigliano's counsel were acting as mere conduits in providing information to the SEC in order to show that the attorney-client privilege does not apply to information Mr. Corigliano provided to his counsel with the understanding that it would be provided to the SEC. See Opening Mem. at 3 n.3. Kramer Levin's reliance on In re Von Bulow, 828 F.2d 94 (2d Cir. 1987) (Opp. at 13), is misplaced. There, the communications in question were originally intended to be confidential. Id. at 102. Here, to the extent Mr. Corigliano reviewed correspondence that he understood would be provided to the SEC, or provided information to his counsel with the understanding that it would be communicated to the SEC, there is no expectation of confidentiality and no privilege attaches. Cf. In re Grand Jury Subpoena, 731 F.2d 1032, 1037 (2d Cir. 1984) (Opp. at 13) (observing that the critical question is whether confidentiality was intended at the time of the communication).

[15]   This should particularly be the case where the lawyer is making a representation the client is legally required to make, and where the government has elicited testimony that the witness has complied with this legal obligation.

10

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

# EXHIBIT 1

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

BARRY S. SIMON
(202) 434-5005
bsimon@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

November 6, 2005

**By Facsimile & E-mail**
Michael Martinez, Esq.
Craig Carpenito, Esq.
450 Main Street, Room 320
Hartford, CT 06103

Re:   **United States v. Forbes**, 3:02CR264 (AWT)

Dear Messrs. Martinez and Carpenito:

The pleading e-mailed by Kramer Levin today attaches as exhibits three letters between the SEC and Kramer Levin (dated May 16, 2000, May 24, 2000, and May 25, 2000) that were never previously produced by the government, Mr. Corigliano, or Kramer Levin. One of the letters attached to Kramer Levin's motion also makes reference to additional correspondence between Kramer Levin and the SEC (including a May 15, 2000 letter from Tom Newkirk of the SEC to Kramer Levin and at least 3 letters dated March 30, 2000) that has never been produced by the government, Mr. Corigliano, or Kramer Levin. See Ex. A to Kramer Levin Opp. The letter also makes reference to a May 2, 2000 communication of some sort between Kramer Levin and Director Walker of the SEC. Id. at 2. Another letter appended to the Kramer Levin motion makes reference to a meeting between Mr. Naftalis and the SEC on May 19, 2000. See Ex. B to Kramer Levin Opp.

In light of the foregoing, we again renew our requests, under Fed. R. Crim. P. 16, Brady, Giglio, and Jencks, for all correspondence or other written communications between Mr. Corigliano and/or his counsel and the SEC, including the March 30, 2000 and May 15, 2000 correspondence referenced above. We also renew our requests, under Brady and Giglio, for all information in the government's possession (whether written or oral) concerning communications between Mr. Corigliano and/or his counsel and the SEC, including the May 2, 2000 and May 19, 2000 communications.

We request a prompt response to this letter.

Sincerely,

Barry S. Simon

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Reply Memorandum in Support of Motion of Defendant Walter A. Forbes for Enforcement of Subpoena Calls Seeking Copies of Documents to or From the SEC That Were Provided to Mr. Corigliano by His Counsel (<u>Forbes Retrial Motion No. 19</u>) to be sent via e-mail and hand-delivery on November 7, 2005 to the following:

Michael Martinez, Esq.
Craig Carpenito, Esq.
United States Attorneys
The Federal Building
U.S. Department of Justice
450 Main Street, Room 320
Hartford, CT 06103

Gary P. Naftalis, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas, 30th Floor
New York, NY 10036

**and by e-mail to:**
Norman Gross, Esq.
U.S. Attorney's Office
District of New Jersey
401 Market Street
Fourth Floor
Camden, NJ 08101

Barry S. Simon