UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA      :   No. 3:02CR00264 (AWT)
                              :
           v.                 :   November 8, 2005
                              :
                              :
WALTER A. FORBES              :


GOVERNMENT'S OPPOSITION TO DEFENDANT WALTER A. FORBES' MOTION TO
PRECLUDE THE GOVERNMENT FROM INTRODUCING GOVERNMENT EXHIBIT 11007

(Forbes Retrial Motion In Limine No. 25)

INTRODUCTION

        During the initial trial and in this retrial, Forbes

has claimed that he was ignorant of the accounting manipulations

charged in the indictment.  In support of that defense, Forbes

has pointed to the fact that CUC's auditors during the conspiracy

period, Ernst & Young ("E&Y"), consistently issued "clean audit

opinions" regarding CUC's publicly disclosed financial

statements, and that Forbes expressly relied on those audit

opinions in concluding that CUC's financial statements complied

with GAAP and were free from fraud.  E.g., Initial Tr. 16382

(Forbes' Theory of the Case).[1]  According to Forbes, if

Corigliano and other conspirators were able to conceal the fraud

even from the certified public accountants from E&Y who

personally audited CUC's accounting records, what chance did

_____

        [1] Citations herein to the transcript of the initial trial
are in the form "Initial Tr. ___."  Citations to the transcript of
the retrial are in the form "Tr. ___."

Forbes, a non-accountant who did not audit those records, have of
detecting the fraud?  Having presented a defense that he relied
in good faith on E&Y's audit opinions, Forbes has opened wide the
door to evidence regarding the efforts of his coconspirators to
prevent the auditors from learning the truth about CUC's
financial results.

Forbes now seeks the exclusion of GX 11007, a document
which corroborates the testimony of the cooperating witnesses
that they intentionally concealed the fraud from the E&Y
auditors.  That document is a performance review of one of the
managers of the E&Y audit of CUC, Bruce Botti, by his supervisor
at E&Y, Simon Wood.[2]  See GX 11007, appended as Exhibit 1 to
Forbes' Mem. in Support of Retrial Motion In Limine No. 25.  The
review was prepared on March 25, 1998, shortly after the
completion of E&Y's audit of the former CUC (then part of
Cendant) for the fiscal year ended December 31, 1997.  Id.  In
the Botti review, Wood noted that "[c]lient personnel were
frequently evasive and often tried all kinds of techniques to
ensure that they did not deal with us on a timely basis."  Id.
Referring to admitted coconspirator Anne Pember, Wood described
"the former controller['s] . . . continued unprofessional and
unresponsive manner."  Id.  Wood complained about the "continued,

---

[2]  Wood was E&Y's senior manager for the CUC audit.  Initial
Tr. 1099, 1341, 2575.

2

unbelievably incompetent performances" of CUC's accounting

personnel; the "ineptitude of the client;" and the CUC staff's

lack of "care about the product they were creating."  <u>Id.</u>

For the reasons stated below, Forbes' motion to exclude

GX 11007 should be rejected.

<u>**ARGUMENT**</u>

**I.    Forbes' "Constructive Amendment" Challenge to GX 11007 Is Meritless; That Exhibit Is Relevant and Admissible to Prove the Charged Conspiracy.**

Forbes contends that GX 11007 should be excluded

because the Government seeks to use that document to demonstrate

that E&Y auditors participated in the charged conspiracy.

According to Forbes, such a claim would be at odds with the

conspiracy alleged in the indictment.  Forbes' Mem. in Support of

Retrial Motion *In Limine* No. 25 ("FM") at 2-3.  To the contrary,

as the Government explained in its Opposition to Forbes Retrial

Motion No. 17, the Government has no intention of arguing that

anyone from E&Y was a member of the charged conspiracy.  <u>See</u>

Docket No. 1905, filed Oct. 28, 2005.

Rather, the Government seeks the admission of GX 11007

for two proper reasons.  First, GX 11007 shows that, even though

the auditors were extremely frustrated by the failure of the CUC

accounting staff to timely provide complete and truthful

information about CUC's financial results, E&Y issued "clean

audit opinions" quarter after quarter.  That evidence tends to

3

explain Forbes' motive to lobby Henry Silverman and Michael
Monaco for the retention of E&Y as CUC's auditor after the
Cendant merger.  Evidence regarding Forbes' motive to play his
part in the charged fraud is highly relevant.  <u>See generally</u>
<u>United States v. Salameh</u>, 152 F.3d 88, 111 (2d Cir. 1998)(noting
that motive evidence is "commonly admitted"); <u>United States v.</u>
<u>Reed</u>, 639 F.2d 896, 907 (2d Cir. 1981)(affirming the admission of
motive evidence in a prosecution for conspiracy to commit
securities fraud and securities fraud).

        Second, the evidence is highly relevant to rebut a
central theme of Forbes' defense: that Forbes relied in good
faith on E&Y's issuance, during the conspiracy period, of "clean
audit opinions."  <u>See</u> Initial Tr. 16382 (jury instructions
regarding Forbes' "Theory of the Case").  According to Forbes, if
Corigliano and the other conspirators concealed the accounting
fraud from the auditors, notwithstanding their accounting
expertise and access to CUC's accounting records, Corigliano
could also have concealed the fraud from Forbes.

        The evidence demonstrates that CUC was required to and
did provide the auditors with a series of "management
representation letters," which stated, *inter alia*, that CUC's
financial statements were prepared in compliance with Generally
Accepted Accounting Principles ("GAAP") and were free from
material misstatements.  Tr. 447-48, 520-22 (Sack testimony); GX

4

529, 3070.  Auditors expressly rely on those representations in
certifying that their client's financial statements complied with
GAAP.  Tr. 448.  CUC's assurances about its financial statements
in those management representation letters, like the financial
statements themselves, were false.  Tr. 1498-1501.

GX 11007 provides additional proof, corroborating the
testimony of the cooperating witnesses, that CUC did not provide
timely, accurate, and complete information to the auditors.
Because GX 11007 tends to prove that Forbes' coconspirators
intentionally failed to provide the auditors with sufficient
information to perform a thorough and accurate audit, the
document is relevant to rebut Forbes' claim that he relied in
good faith on the E&Y audit opinions in concluding that CUC's
financial statements complied with GAAP and were not false or
misleading. See <u>United States v. Khalil</u>, 214 F.3d 111, 122 (2d
Cir. 2000)(in a prosecution for threatening to use a weapon of
mass destruction, photographs of the defendant dressed as a
"suicide bomber," were properly admitted to rebut the defense
portrayals of the accused as someone who merely sought to obtain
money from the government by pretending to prevent a terroristic
attack, but who had no intention to cause damage or harm); <u>United
States v. Rubin</u>, 37 F.3d 49, 53 (2d Cir. 1994)(affirming the
admission of evidence that defendant's accomplice obtained stolen
checks that were not charged in the indictment, because the

evidence negated the defendant's claim that he innocently received the indictment checks from someone other than the accomplice).  Moreover, "evidence . . . [used by the Government] to rebut defense theories" could not have constructively amended the indictment.  United States v. McAnderson, 914 F.2d 934, 945 (7th Cir. 1990).

The absence of evidence that Forbes personally saw GX 11007, FM 2, is of no moment.  "Where a defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant."  Salameh, 152 F.3d at 111; see United States v. Brady, 26 F.3d 282, 287 (2d Cir. 1994)(affirming the admission -- in a prosecution for conspiracy to commit murders for the purpose of advancing the defendant's position within a RICO enterprise -- of evidence of murders committed by other coconspirators, which was relevant to prove the charged conspiracy).  Forbes effectively admitted that E&Y's internal documents regarding the audit are relevant to this case.  He successfully offered into evidence, during his cross-examination of Corigliano but pursuant to the certification of another person, a slew of E&Y's internal documents relating to the CUC audit, with no showing that Forbes himself (or even Corigliano,

for that matter) ever saw any of those documents.[3]  Moreover,
since a principal goal of the conspiracy was to create false and
misleading financial statements that would cause investors to pay
more for CUC stock than they would have paid had the true
financial results been disclosed, and because the financial
statements could not be publicly disclosed unless audited by an
independent accounting firm, it was reasonably foreseeable to
Forbes that his coconspirators who regularly dealt with E&Y would
conceal the fraud from the auditors.

        That GX 11007 could support an argument that someone at
E&Y was or should have been aware of the fraud provides no basis
to exclude that document.  Evidence does not constructively amend
the indictment unless it confuses the jury into convicting the
defendant of a crime other than the one charged in the
indictment.  United States v. Bryser, 954 F.2d 79, 87 (2d Cir.
1992).  The Government will not argue that Forbes should be
convicted of any of the charged crimes because he conspired with
anyone from E&Y.  Nor will it argue that anyone from E&Y
participated in any of the charged crimes.  Additionally, the

_____

        [3]  E.g. Tr. 1661-65 (cross-examination of Corigliano
regarding DX 645); 1665-67 (DX 649); 1668-70 (DX 652); 1670-71
(DX 656); 1673-75 (DX 671); 1675-76 (DX 673); 1676-77 (DX 676);
1677-78 (DX 677); 1678 (DX 678); Tr. 1678-79 (DX 681); 1679-80
(DX 687); 1680-82 (DX 691).  Forbes devoted over half an hour of
his cross-examination of Corigliano to a single document, DX 692,
an E&Y questionnaire regarding "internal control and fraud
considerations."  1682-1712.

Court will presumably instruct the jury regarding the identity of
the coconspirators, none of whom include anyone from E&Y.  See
Government's Preliminary Requests to Charge for Retrial, Request
Nos. 14, 16, 17, and 43.

    Jury instructions are the principal protection against
possible confusion regarding the nature of the charges.  United
States v. Coyne, 4 F.3d 100, 111-12 (2d Cir. 1993)(admission of
relevant evidence regarding pre-conspiracy conduct did not
constructively amend the indictment, in light of the district
court's limiting instructions).  As during the initial trial, an
instruction that limits the universe of Forbes' coconspirators
will prevent the jury from convicting him of conspiring with
anyone from E&Y.  See United States v. Lutz, 621 F.2d 940, 942-43
(9th Cir. 1980)(the risk of a variance arising from the admission
of evidence of the defendants' participation in uncharged
fraudulent conduct was eliminated by jury instructions that the
defendants could be convicted only for the "single scheme . . .
involving each of the defendants" that was charged in the
indictment); see generally Salameh, 152 F.3d at 145-46 (no
constructive amendment of the indictment where the Government's
summation and the final charge closely tracked the indictment,
and the jury was given a copy of the indictment for use during
deliberations).  Accordingly, Forbes' constructive amendment
claim should be rejected.

**II.  As GX 11007 Is Properly Admissible as a Business Record Pursuant to Fed. R. Evid. 803(6), Forbes' Hearsay and Confrontation Challenges to the Document Are Meritless.**

Forbes argues that GX 11007 should be excluded as hearsay because the Government seeks its admission to prove the truth of matters asserted in the document by Wood.  As the certification attached to GX 11007 demonstrates, however, GX 11007 is a business record of E&Y, and is therefore admissible pursuant to Fed. R. Evid. 803(6), regardless of Wood's availability.  Forbes' assertion, without argument or authority, that Wood's out-of-court statements set forth in GX 11007 are inadmissible unless Wood testifies at trial simply ignores the operation of Rule 803(6) to permit the proponent of a business record to use that document to prove the truth of the contents of the record.  Malek v. Federal Ins. Co., 994 F.2d 49, 53 (2d Cir. 1993); see generally United States v. Lieberman, 637 F.2d 95, 100 (2d Cir. 1980).

Forbes complains that the certification is defective because it "fails to state that the evaluation was made in the ordinary course of [E&Y's] business."  FM 4.  Even without consideration of the certification, Wood's performance review of Botti demonstrates on its face that it was in made in the ordinary course of E&Y's business.  The document is self-described as a "**periodic** performance review."  (Emphasis added).  Wood's appraisal is set forth on a pre-printed form that E&Y

9

apparently uses as a matter of routine for such appraisals, and Wood's commentary responds to "the five major performance areas" identified by the form. Wood evaluated Botti's performance for a defined period of time, "From 4/97 to 3/98," suggesting that such reviews are periodically undertaken. Finally, the document, a "Manager/Senior Manager Periodic Performance Review" sets forth information that is crucial to the successful operation of a business that sells the services of its professional employees. It is therefore the kind of record that the business is likely to collect and maintain as part of its regularly conducted business.

The certification fully supports the requirement of Rule 803(6) that the record refer to the regularly conducted business of E&Y. Because the performance review "was kept in the course of Ernst & Young's regularly conducted business activities," Exhibit 2 to FM, it stands to reason that the document refers to regularly conducted business activity (i.e., the review of the performance of a subordinate by his supervisor). Additionally, the author of the certification recites that she is "familiar with the regularly conducted activities of Ernst & Young, and documents created during the course of those regularly conducted activities." Id. Such a recitation would be unnecessary verbiage if GX 11007 was not created "during the course" of E&Y's regularly conducted activities, or did not refer to E&Y's "regularly conducted

activities."

Citing <u>Crawford v. Washington</u>, 541 U.S. 36 (2004),
Forbes claims that admission of GX 11007 will violate his
confrontation rights.  To the contrary, documents that are
properly admitted as business records are not "testimonial" as
that concept is articulated in <u>Crawford</u>, so that decision
provides no basis to bar the admission of such records.  <u>United
States v. Jamieson</u>, __ F.3d __, 2005 WL 2806425, *12 (6th Cir.,
Oct. 28, 2005); <u>Valentine v. Alameida</u>, 143 Fed.Appx. 782, *784,
2005 WL 1899321 (9th Cir., Aug. 8, 2005)(unpublished); <u>United
States v. Dwyer</u>, 2005 WL 1364839, *9 (D.N.J., June 9, 2005); <u>see
Crawford</u>, 541 U.S. at 56 (noting that most hearsay exceptions
"covered statements that by their nature were not testimonial--
for example, business records"); <u>United States v. Lopez-Moreno</u>,
420 F.3d 420, 436 (5th Cir. 2005)(public records that are
admissible under Rule 803(8), like business records that are
admissible under Rule 803(6), are not testimonial under
<u>Crawford</u>).  Accordingly, Forbes' hearsay and confrontation claims
are meritless.

**III. Forbes Has Failed to Demonstrate That Any Supposed "Unfair"
     Prejudice From the Admission of Gx 11007 Would
     "Substantially Outweigh" the Probative Value of the Exhibit.**

As demonstrated above, GX 11007 is properly admitted
for two separate and proper reasons: to prove Forbes' motive to
seek to retain E&Y, and to rebut Forbes' defense that he relied

in good faith on the E&Y's clean audit opinions.  Forbes

nevertheless seeks the exclusion of GX 11007 under Fed. R. Evid.

403, because, according to Forbes, the Government will seek to

use the document to make the supposedly impermissible argument

that, since E&Y knew about the fraud, Forbes should have as well.

> Under Rule 403, relevant evidence may be excluded when its
> probative value is "substantially outweighed by the danger
> of unfair prejudice, confusion to the issues, or misleading
> the jury, or by considerations of undue delay, waste of
> time, or needless presentation of cumulative evidence."  A
> district court is obviously in the best position to do the
> balancing mandated by Rule 403.

Salameh, 152 F.3d at 110 (internal citation omitted).

Forbes' argument fails for several reasons.  First, the

Court will presumably give the same instruction it gave during

the initial trial that Forbes cannot be convicted on a *respondeat*

*superior* theory based on what he should have known, as opposed to

what he did know.  Initial Tr. 16250-51.  The Government will not

argue that Forbes should be convicted of anything because he

should have known about the fraud.

Second, as noted above, Forbes has argued that, if E&Y

did not know about the fraud, he could not have known about it

either.  Evidence that E&Y auditors knew or should have known

about the fraud properly rebuts the argument advanced by Forbes.

Having introduced the issue of E&Y's knowledge of the fraud into

the case, Forbes is not entitled to exclude evidence relevant to

that issue on the grounds of supposed prejudice.

12

Finally, GX 11007 contains no criticism whatsoever of Forbes, and therefore cannot possibly evoke an improper emotional response against him. <u>See</u> <u>United States v. Zichettello</u>, 208 F.3d 72, 101 (2d Cir. 2000) (rejecting a Rule 403 challenge to evidence that cooperating coconspirators participated in related but uncharged crimes, where the evidence did not implicate the defendants in that conduct); <u>Brady</u> 26 F.3d 282 at 287 (rejecting a Rule 403 challenge to evidence of murders committed by the defendants' coconspirators, which did not directly implicate the defendant).

Nor does GX 11007 establish that the coconspirators engaged in any conduct that is more heinous than the crimes with which Forbes is charged. <u>See</u> <u>United States v. Perez</u>, 387 F.3d 201, 210 (2d Cir. 2004) (rejecting a Rule 403 challenge to evidence that "was no more sensational than other evidence of" the charged crimes). Evidence that refutes a defense theory may undermine the defense, but that is hardly a basis to exclude evidence under Rule 403. <u>United States v. Gelzer</u>, 50 F.3d 1133, 1139 (2d Cir. 1995) (although all inculpatory evidence "is prejudicial to the interests of that defendant," Rule 403 addresses only that prejudice which creates "some adverse effect . . . beyond tending to prove the fact or issue that justified

13

its admission into evidence").[4]

<u>**CONCLUSION**</u>

For the foregoing reasons, the Government respectfully requests that this Court deny Forbes' Retrial Motion No. 18.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
Special Attorney
U.S. Department of Justice

By:  NORMAN GROSS
MICHAEL MARTINEZ
CRAIG CARPENITO
Special Attorneys
U.S. Department of Justice

Dated: November 8, 2005
Hartford, Connecticut

---

[4] Forbes complains in a footnote that, although the Government provided GX 11007 to Forbes in discovery, he did not receive a copy of the document marked as GX 11007 until November 3.  FM 6, n.2.  He fails to articulate how he suffered any prejudice from this fact, and so effectively concedes that Rule 403 cannot justify exclusion of this document because it was disclosed to the defense without an exhibit sticker.

In any event, the Government seeks the admission of GX 11007 only on redirect examination of Corigliano.  This Court's October 17, 2005 Order Governing Procedures for Retrial does not preclude the admission of exhibits to be used on redirect examination or rebuttal merely because a pre-marked version of the document was not provided to the defense before admission of the document is sought.  Rather, the Order provides in pertinent part that "[a]s soon as a party becomes aware of a need to revise or supplement its exhibit list, it or he shall inform the court and the other party immediately."  Order, ¶ 3.  The Government turned over to the defense a copy of GX 11007 with the exhibit sticker attached as soon as the Government determined, based on Forbe's cross-examination of Corigliano, that the Government would use that document as an exhibit for Coriglianos' redirect examination.  Tr. 2083.

14

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this day I caused to be served copies of the foregoing upon the following by hand delivery:

Barry S. Simon, Esq.
Williams & Connolly LLP


_____
DEBRA ELLIOTT
U.S. Department of Justice

Dated: November 8, 2005
       Hartford, Connecticut