**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 3:02CR264 (AWT) |
| WALTER A. FORBES and | ) | |
| E. KIRK SHELTON. | ) | November 9, 2005 |
| | ) | |
| | ) | |

**MOTION OF WALTER A. FORBES TO LIMIT THE
SCOPE OF THE TESTIMONY OF BRIAN HECKLER
(Forbes Retrial Motion *In Limine* No. 26)**

Walter A. Forbes, through undersigned counsel, hereby moves to limit

the scope of Mr. Brian Heckler's testimony.[1]  <u>First</u>, Mr. Heckler's testimony should

be limited to those opinions that he can form based upon the facts now in evidence,

as opposed to assumed facts that the government has not introduced in its case-in-

chief.  As demonstrated at length in prior pleadings, Mr. Heckler ultimately claimed

that his opinions were based on assumed facts that the government would

purportedly prove in its case-in-chief.  Yet the government has elected to present

little evidence of the alleged accounting irregularities – presenting only general,

conclusory (and at times contradictory) testimony of a few witnesses, and almost no

documentary support.  In short, there simply is not evidence to support the majority

---

[1] Although Mr. Forbes believes that Mr. Heckler's testimony should be precluded
altogether, the Court has denied his renewed motion to preclude Mr. Heckler's
testimony (Forbes Retrial Motion No. 1).

of Mr. Heckler's proffered opinions, and he should be precluded from testifying to them.

Second, the scope of Mr. Heckler's testimony should be limited to ensure that he does not provide testimony concerning knowledge or intent – areas which are in the sole province of the jury. This is particularly critical given the fact that the government claims that Mr. Heckler's testimony should be considered for such purposes, arguing that the quantification of the GAAP violations by Mr. Heckler evidences Mr. Forbes' knowledge of those violations. See, e.g., Exhibit 1 (e-mail from Norman Gross). The government's desire to argue such an inference only underscores the impropriety in letting Mr. Heckler base his opinions on facts not introduced into evidence at the retrial, effectively eliminating Mr. Forbes' Sixth Amendment right of confrontation. Accordingly, we have proposed a limiting instruction concerning Mr. Heckler's testimony, attached as Exhibit 2.

Third, Mr. Heckler should not be permitted to opine upon issues outside the purview of the indictment, such as whether CUC had a sufficient exit plan to justify the establishment of a merger reserve in the first instance.

Fourth, Mr. Heckler should not be permitted to testify concerning what the law requires with regard to filings with the Securities and Exchange Commission.

I.    **MR. HECKLER'S TESTIMONY SHOULD BE LIMITED TO THOSE OPINIONS WHICH HE CAN FORM BASED UPON THE FACTS IN EVIDENCE.**

   A.    **Realizing that He Could Not Properly Rely on the Audit Committee Investigation, Mr. Heckler Represented at the Daubert Hearing That He Would Be Basing His Opinions on Facts To Be Proven at Trial.**

As discussed at length in Mr. Forbes' prior pleadings concerning Mr. Heckler's testimony, each of which is incorporated herein,[2] Mr. Heckler provided varying descriptions of the bases of his opinions during the Daubert hearing, but ultimately told the Court that his testimony summary was based on assumed facts that he expected the government would prove at trial.

> I did understand that my role as an expert was to use my training, education and experience to assess which facts were relevant and then to be prepared to analyze the facts I chose as relevant out of that population and to testify. And that those assumed facts I would not be responsible for proving; instead, the government would be responsible for proving through its case or that you, as the defense, would be in a position to disprove through your case.

Tr. 3/25/2004 at 2654 (emphasis added). Nonetheless, once again the PowerPoint slides provided to the defense in connection with Mr. Heckler's testimony make clear that – contrary to his Daubert testimony – Mr. Heckler in fact does intend to

---

[2] These pleadings are Motion of Defendant Walter A. Forbes to Preclude the Government from Presenting Its Proposed Expert Testimony Because It Does Not Satisfy the Reliability Requirements of Daubert and Federal Rule of Evidence 702 (Forbes Pretrial Motion No. 49) and related pleadings: docket numbers 277 (6/27/03), 278 (6/27/03), 281 (6/27/03), 404 (10/02/03), 507 (3/02/04), 602 (4/02/04), 621 (4/13/04) and 707 (5/10/04), as well as Mr. Forbes' Renewed Motion to Preclude the Government from Presenting Its Proposed Expert Testimony Because It Does Not Satisfy the Reliability Requirements of Daubert and Federal Rule of Evidence 702 (Forbes Retrial Motion In Limine No. 1): docket numbers 1605 & 1658.

opine that there were violations of GAAP in CUC/Cendant's financial statements, and to quantify those alleged violations, based upon evidence not admitted at the trial. See Exhibit 3 (PowerPoint slides) at 6.[3] Among the offending categories of "facts" on which Mr. Heckler claims to rely (according to the PowerPoint) are (1) the Restatement that has not itself been admitted; (2) the audit committee report that has not been admitted into evidence; (3) audit committee interviews of witnesses who have not appeared at trial, such as Mary Sattler; (4) "News Accounts/Other Background"; (5) company documents and filings other than those admitted into evidence; (6) workpapers of Ernst & Young and Deloitte & Touche that have not been admitted into evidence; (7) testimony from the prior trial; and (8) the Indictment against Mr. Forbes – a document that the Court has already instructed the jury is *not* to be considered as evidence – as well as the Informations and plea transcripts of Messrs. Corigliano and Sabatino, and Ms. Pember. See Exhibit 3 at 6. For the reasons discussed in Mr. Forbes' prior pleadings, these items do not provide a reliable and proper basis for expert testimony under Fed. R. Evid. 702 and 703,

---

[3] The government has marked only seven of these slides for presentation to the jury as demonstratives (Exhibit 3, pp.3 (modified), 10, 15, 21, 31, 34 & 48 (modified)). However, except for where otherwise noted herein, the government has not represented that the information contained within the other slides will not be elicited during the examination of Mr. Heckler. Nor, importantly, has the government represented that Mr. Heckler's opinion is no longer dependent upon the "facts" set forth at page 6 of Exhibit 3.

and Mr. Heckler should be held to his statement that he would rely on those facts "proven" at trial.[4]

Indeed, the only two items identified in the PowerPoint on which it would be proper for Mr. Heckler to rely are the Testimony and Exhibits from the retrial, and the Technical Accounting Literature and Professional Standards. Id. Yet the government elected in the retrial to present limited evidence concerning the accounting practices at CUC. Having made that election, the government cannot now use Mr. Heckler as a "stop gap" to testify concerning issues not otherwise presented, and for which there could be no basis other than the improper, non-evidentiary material reviewed by Mr. Heckler. Some of the issues raised by the government's limited evidence concerning the alleged accounting irregularities are discussed below.[5]

---

[4] In particular, as demonstrated at length in Mr. Forbes' earlier pleadings addressed to excluding Mr. Heckler's testimony before Mr. Heckler changed the premise of his testimony to assumed facts that would be "proven" by the government at trial, the Audit Committee Report contains multiple layers of hearsay and was prepared specifically for purposes of litigation. Courts have long recognized the inherently unreliable nature of material prepared in anticipation of litigation, and an expert would not reasonably rely on the Audit Committee Report here. See, e.g., Hoffman v. Palmer, 129 F.2d 976, 991 (2d Cir. 1942) (describing documents prepared for litigation as "dripping with motivations to misrepresent," and excluding report prepared by employee after accident), aff'd, 318 U.S. 109 (1943).

[5] Below are only some examples of the facts upon which the Mr. Heckler claims to base his opinions, but which have no support in the record. Other examples include his testimony regarding the distribution of cancel rate reports to "management" generally, PowerPoint at 22, and the reasons for charges to be "rejected," PowerPoint at 24. Indeed, even if Mr. Heckler were permitted to base his opinions on facts not in evidence (despite the unreliability of his methodologies in this case), he would be precluded from testifying regarding those "facts" that serve as the

1.    **Cancellation Reserve Reversals.**

The government presented evidence that Mr. Corigliano and Ms.

Pember underfunded the cancellation reserve by using an artificially low

cancellation reserve rate. See, e.g., Retrial Tr. at 1276-81 (Mr. Corigliano's

testimony describing the underfunding of the cancellation reserve) and Retrial Tr.

at 879-881, 885 (Ms. Pember testifies that she instructed Steve Speaks to use the

cancellation reserve to overstate earnings to the cumulative tune of $100 million for

both fiscal year ending 1/31/1997 and fiscal year ending 12/31/1997).    Unlike the

first trial, however, Ms. Pember provided no testimony concerning journal entries

that rebooked cancellation reserves to operating expense or revenue accounts.  Nor

were any exhibits offered concerning the "reversal" of the cancellation reserve.

Thus there is no evidence on which Mr. Heckler could rely in offering the opinion

that such reversals occurred, much less that they occurred in the amounts he

proffers. See Exhibit 3 at pp. 21 & 25.

2.    **Merger Reserve Reversals, Fiscal Year 1996.**

The government has presented evidence that $2 million in Essex

merger reserves were inappropriately used in Fiscal Year 1996.  Retrial Tr. at 1272-

75. The government has presented no evidence concerning CUC Europe, Sentinel,

---

bases of his opinions. See Fed. R. Evid. 703 ("Facts or data that are otherwise
inadmissible shall not be disclosed to the jury by the proponent of the opinion or
inference unless the court determines that their probative value in assisting the
jury to evaluate the expert's opinion substantially outweighs their probative effect.")
(emphasis added).

or Welcome Wagon merger reserves, however, and Mr. Heckler should not be permitted to opine on them.  See Exhibit 3 at p.31.

### 3.    Merger Reserve Reversals, Calendar Year 1997.

The government has presented contradictory testimony concerning the use of merger reversals at year end 12/31/1997, none of which supports the conclusion to which Mr. Heckler proposes to opine.  Ms. Pember testified that earnings were overstated by approximately $85 million at year end 12/31/1997 by the combined misuse of the Cendant and Ideon merger reserves.  Retrial Tr. at 879.  Mr. Corigliano, in contrast, testified that the Cendant merger reserve had not been utilized at year end 12/31/1997.  Retrial Tr. 1608-09.  No exhibits were admitted reflecting the actual use of either merger reserve.  Thus there simply is no evidence to support Mr. Heckler's proffered opinion that $146.8 million in Ideon and Cendant reserves were misused at year end 12/31/1997.  See Exhibit 3 at 34-38.

### 4.    Top-Side Adjustments.

The government presented no testimony or documents evidencing the amount of the allegedly unsupported top-side adjustments made each quarter save for one – April 30, 1995.  See Retrial Tr. at 1070-73 (testimony of Kevin Kearney).  Nor did the government present any evidence of top-side adjustments having been made in either the quarter ending October 31, 1997 or in the month of January 1997.  Mr. Heckler should thus be precluded from providing any evidence concerning either the amount of any top-side adjustments, or the existence of any

top-side adjustments in the third quarter of calendar year 1997 or January 1997.

See Exhibit 3 at 10.[6]

> **B.    Allowing Mr. Heckler to Base His Testimony on Facts Not in Evidence Would Violate Mr. Forbes' Constitutional Right to Confront and Cross-Examine the Witnesses Against Him.**

Permitting Mr. Heckler to testify to conclusions based upon facts not in

evidence – in particular on statements made by witnesses who were not called to

testify – would violate Mr. Forbes' Sixth Amendment right to confront and cross-

examine the witnesses against him.  The government called only 4 of the 81

witnesses interviewed by Arthur Andersen.  Should Mr. Heckler be permitted to

offer opinions based on the statements of any of the 77 witnesses who were not

called as witnesses by the government, it would essentially introduce the testimony

of those witnesses without at the same time subjecting those witnesses to cross-

examination.

Although the hearsay rules and the Confrontation Clause of the Sixth

Amendment are designed to protect similar values, the Supreme Court has

explicitly recognized that evidence which may surmount the hearsay rules does not

necessarily survive the Confrontation Clause. Idaho v. Wright, 497 U.S. 805, 814

(1990). "The Confrontation Clause, in other words, bars the admission of some

---

[6] The government has presented no testimony or exhibits concerning the "other" accounting errors on which Mr. Heckler opined last time. We understand that the government now does not intend to elicit such testimony in this trial. As with the categories above, testimony by Mr. Heckler concerning these matters would introduce the issues for the first time, and would necessarily be based on facts not in evidence. See PowerPoint at 38, 43-44. Mr. Heckler's testimony on these subjects should be excluded.

evidence that would otherwise be admissible under an exception to the hearsay rule." Id. In Wright, the Court addressed the testimony of an examining physician who had relayed to the jury statements made to him by his three year old patient. Agreeing with the Idaho Supreme Court that the statements were "fraught with the dangers of unreliability which the Confrontation Clause is designed to highlight and obviate," the United States Supreme Court reversed the defendant's conviction. Id. at 816.

The Second Circuit has expounded upon the importance of this right, stating that because "cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested, the opportunity for cross-examination, protected by the Confrontation Clause, is critical for ensuring the integrity of the fact-finding process." Cotto v. Herbert, 331 F.3d 217, 229 (2d Cir. 2003) (internal quotations and citations omitted). Allowing the government to present witness testimony through the guise of Mr. Heckler's reliance would effectively eliminate this fundamental right.

## II.    MR. HECKLER SHOULD NOT BE PERMITTED TO TESTIFY REGARDING INTENT.

The government initially requested that Mr. Heckler form an opinion on whether the alleged accounting errors were intentional. There was no proper justification for this request; no expert can permissibly testify to the ultimate issue of intent in a criminal case. Yet the government asked Mr. Heckler to do so, and as was demonstrated in the Daubert hearing, Mr. Heckler's opinions concerning intent seeped out during Mr. Heckler's testimony. For example, Mr. Heckler testified on

9

direct examination that certain information was "directed from on high . . . by a superior." Tr. 12/17/2003 at 258. Any "slippage" into opinions concerning intent would be unduly prejudicial to Mr. Forbes. No such testimony should be elicited on direct examination, and Mr. Heckler should be instructed by the government that no opinions on intent should be provided during cross-examination either – including any opinions regarding accounting "irregularities" as opposed to "errors", as the former, by definition, involves a determination of intent.

In addition, the jury should be instructed that it cannot consider Mr. Heckler's opinion for anything other than the question of whether certain accounting activities that are alleged to have occurred at CUC and Cendant during the fiscal years ending 1/31/96, 1/31/97 and 12/31/97 were in accordance with Generally Accepted Accounting Principles, and the question of whether any allegedly false statement made during that same time period was material. See Exhibit 2 (proposed limiting instruction). Although the government has expressed its intent to argue that the quantification of the GAAP violations evidences Mr. Forbes' knowledge of those violations, this argument would compound the problems inherent in Mr. Heckler's testimony. For not only would Mr. Heckler be proffering opinions based on "facts" not in the record, but also the government would then be arguing that the jury should conclude that Mr. Forbes knew of the accounting

violations based upon facts not presented to it – a scenario antithetical to the right of confrontation provided by the Sixth Amendment.[7]

Thus, should the Court permit Mr. Heckler to testify based upon matters not presented at the retrial (over Mr. Forbes' objection), the Court should instruct the jury to limit its consideration of Mr. Heckler's testimony to the question of whether certain accounting activities that are alleged to have occurred at CUC and Cendant during the fiscal years ending 1/31/96, 1/31/97 and 12/31/97 were in accordance with Generally Accepted Accounting Principles, and the question of whether any allegedly false statement made during that same time period was material.

## III.    MR. HECKLER SHOULD NOT BE PERMITTED TO OPINE ON MATTERS OUTSIDE THE PURVIEW OF THE INDICTMENT.

Mr. Forbes also renews his motion to limit Mr. Heckler's testimony to the accounting matters alleged in the indictment. The government elicited during the Daubert hearing a number of opinions on matters that were not part of the indictment. And although Mr. Heckler did not testify to such matters in the first trial, out of an abundance of caution, Mr. Heckler should be instructed by the government not to testify to such matters in the retrial.

---

[7] The government's argument also underscores why Mr. Heckler's testimony should be limited to the question of whether certain accounting activities violated GAAP, and not to the quantification of those errors' effect on the financial statements. Mr. Forbes thus once again renews his request that Mr. Heckler's testimony be limited to the application of GAAP to the conduct alleged to have taken place at CUC/Cendant, and not the quantification of the alleged accounting errors.

These improper opinions included Mr. Heckler's conclusion that *all* of the company's merger charges were improper because the company had not developed a sufficient exit plan to justify a merger reserve in the first instance. Tr. 12/17/2003 at 255-56. This "error" is not alleged in the indictment, and is contrary to the three other audit firms which have opined on or investigated CUC's or Cendant's financial statements – Ernst & Young, Deloitte & Touche, and Arthur Andersen. Yet Mr. Heckler not only testified to it during his direct examination during the <u>Daubert</u> hearing, <u>but also admitted that this theory was one of the underpinnings to his conclusions that at least the amount alleged in the indictment was inappropriately charged to the merger reserve</u>. Tr. 12/17/2003 at 256-57.[8]

The PowerPoint slides also state that Mr. Heckler considered whether "changes in the planned use of reserves, particularly litigation reserves" were treated properly in accordance with GAAP and disclosed pursuant to SEC reporting requirements. PowerPoint at 36-37. The indictment makes no allegations concerning the disclosure of "changes" in the planned use of reserves, and this evidence should be excluded both under Fed. R. Evid. 702 and as an improper attempt to amend the indictment.

---

[8] This admission underscores why Mr. Heckler's testimony violates Mr. Forbes' right to confrontation under the Sixth Amendment (as well as why Mr. Heckler's testimony based on this theory would constitute a constructive amendment of the indictment and/or a prejudicial variance) and thus why it should <u>not</u> be considered with regard to such critical issues as Mr. Forbes' alleged intent.

**IV.    MR. HECKLER SHOULD NOT BE PERMITTED TO TESTIFY REGARDING SEC FINANCIAL AND ACCOUNTING DISCLOSURE REQUIREMENTS.**

Finally, "it is not for witnesses to instruct the jury as to applicable principles of law, but for the judge." United States v. Bilzerian, 926 F.2d 1285, 1294-95 (2d Cir. 1977). Nevertheless, the government sought during the Daubert hearing to have Mr. Heckler testify regarding the "financial and accounting disclosure requirements" of the SEC. Tr. 12/16/2003 at 21-22. While the government did not elicit any such testimony from Mr. Heckler during the first trial, Mr. Forbes should be assured that the government will not resurrect this testimony for the retrial because such opinion testimony invades the province of the Court. The jury is to receive proper instruction on the law from the Court. The jurors will not need Mr. Heckler's recitation of what he believes the law provides, and it would be improper to give it to them.

## CONCLUSION

For the foregoing reasons, Mr. Forbes respectfully requests that the Court limit the scope of Mr. Heckler's testimony to those opinions that he can reach based upon the evidence introduced during the government's case-in-chief, and preclude Mr. Heckler from testifying to issues of intent, issues of law, and issues not plead in the indictment.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Dated: November 9, 2005

# EXHIBIT 1

ℹ You forwarded this message on 11/5/2005 1:49 PM.

**Keeley, Meg**

| | | | |
|---|---|---|---|
| **From:** | Norman.Gross@usdoj.gov [Norman.Gross@usdoj.gov] | **Sent:** | Sat 11/5/2005 1:46 PM |
| **To:** | Keeley, Meg | | |
| **Cc:** | Michael.Martinez2@usdoj.gov; Craig.Carpenito@usdoj.gov; Simon, Barry; 'christopher_mattei@ctd.uscourts.gov' | | |
| **Subject:** | RE: Proposed Limine Instruction | | |
| **Attachments:** | | | |

Dear Ms. Keeley:

The Government objects to your proposed limiting instruction that the jury may not consider Mr. Heckler's testim
respect to the question of whether Mr. Forbes was a knowing and willful participant in the alleged conspiracy, or
Forbes knowingly and willfully engaged in any wrongdoing." As you know, this issue was addressed in Section IV
Government's Pre-Retrial Motion No. 1 (Pre-Retrial Motion in Limine), filed July 18, 2005. We read Section IV of
October 13, 2005 Ruling on Government's Pre-Retrial Motion No. 1 to permit the Government to argue that "the
effect of the various GAAP violations on CUC's and Cendant's reported earnings is relevant" to Forbes knowledge
conspiracy and of the charged wrongdoing. See Ruling at pp. 9-10. Your proposed limiting instruction contradict
ruling, in our view.

Very truly yours,

AUSA Norman Gross

-----Original Message-----
From: MKeeley@wc.com [mailto:MKeeley@wc.com]
Sent: Friday, November 04, 2005 4:38 PM
To: Gross, Norman; Martinez, Michael; Carpenito, Craig
Subject: Proposed Limine Instruction


Per your discussion with Barry, see the attached proposed instruction. Please call Barry with any comments.

Meg.


-----------------------------------------------------------------------
NOTICE:

This message is intended for the use of the individual or entity to which it is addressed and may contain informat
privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the
recipient or the employee or agent responsible for delivering this message to the intended recipient, you are here
that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received tl
communication in error, please notify us immediately by reply or by telephone (call us collect at (202) 434-5000)
immediately delete this message and all its attachments.

=================================================================================

# EXHIBIT 2

## PROPOSED LIMITING INSTRUCTION RE TESTIMONY OF BRIAN HECKLER

I instruct you that the testimony of Brian Heckler that you are about to hear may be considered only with respect to the question of whether certain accounting activities that are alleged to have occurred at CUC and Cendant during the fiscal years ending 1/31/96, 1/31/97 and 12/31/97 were in accordance with Generally Accepted Accounting Principles, and with respect to the question of whether any allegedly false statement made during that same time period was material. You may not consider it for any other purpose. In particular, you may not consider this testimony at all with respect to the question of whether Mr. Forbes was a knowing and willful participant in the alleged conspiracy, or whether Mr. Forbes knowingly and willfully engaged in any wrongdoing.