# EXHIBIT 3

# Testimony of Brian L. Heckler, CPA

## Overview of Work Performed and Conclusions Reached

United States of America vs.
Walter A. Forbes

KPMG

# Objective of Assignment

Offer my independent and objective opinion whether the:

■ alleged violations of GAAP cited in the superceding indictment were in fact violations of GAAP and SEC financial reporting and disclosure requirements, and

■ amount of alleged violations of GAAP were at least the amounts identified in the superceding indictment.

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved.
Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

United States of America vs. Walter A.
Forbes– B. Heckler Testimony



1

# Assignment

My assignment included:

- reviewing facts, relevant testimony and evidence introduced at trial,

- performing accounting technical research,

- analyzing accounting issues involved,

- formulating my expert opinion on violations of generally accepted accounting principles (GAAP),

- quantifying the effect of the violations of GAAP,

- documenting support for all findings, and

- testifying.



**United States of America vs. Walter A. Forbes- B. Heckler Testimony**

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

2

# Topics

3

Merger Reserve Reversals To Revenues/ Expenses

Quarterly Revenue and Expense "Topside" Adjustments

Other Accounting Errors

Membership Cancellation Reserves

Revenue Allocations from Deferred to Immediate Recognition

United States of America vs. Walter A. Forbes – B. Heckler Testimony

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International

KPMG

# Qualifications of Brian Heckler, CPA

Twenty-one years of experience, including:

- SEC Professional Accounting Fellow – 1995 to 1997
  - Interpreted SEC Rules and Regulations and the application of US GAAP for accounting, reporting, and disclosure requirements
  - Actively participated in interpreting and applying SEC staff's positions on:
    - Revenue recognition for membership service transactions
    - Deferral of customer acquisition and advertising costs
    - Merger and restructuring reserves
    - Consolidation
    - Analyzed accounting issues and formatted conclusions on more than 1,000 matters
- KPMG National Office of Professional Practice (1993-1995; 1997-1999)
  - Answered over 1,000 technical inquiries on the application of US GAAP and SEC Rules and Regulations involving:
    - SEC reporting and disclosure rules and practices
    - Revenue recognition
    - Consolidation accounting
    - Merger related reserve and costs
    - Income tax accounting
    - Deferred marketing costs
    - Customer solicitation costs

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved.
Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

United States of America vs. Walter A. Forbes– B. Heckler Testimony



# Qualifications of Brian Heckler, CPA (2)

- KPMG (Big 4 Firm) Transaction Services Partner (1999 to present)
  - One of the leading accounting resources at KPMG for mergers and acquisitions, including restructuring reserves

- Audit staff KPMG (1984-1993)
  - Experience leading and performing audits of public companies, including extensive experience with consolidation accounting and reserves for uncollectible amounts from customers

- Forensic and expert witness experience:
  - Co-leader for special investigation of large NY-based corporate conglomerate's accounting and reporting practices for mergers, acquisitions, and the establishment and use of merger and restructuring reserves in connection with a special investigation by an external law firm.
  - Segment lead audit partner on restatement audit for mergers and acquisitions, merger and restructuring reserves and related charges, asset impairments, and accounting for the emergence from bankruptcy for one of the largest US facilities-based Telecommunications operator.
  - Engaged and have testified as expert witness in accounting and SEC reporting involving mergers and acquisitions topics for administrative and civil matters

- CPA, B.S. in Accounting (Summa Cum Laude), Shippensburg University of PA
  - Licensed in IL, NY, and CT

- Author and lecturer on technical accounting issues and SEC matters

5

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

**United States of America vs. Walter A. Forbes – B. Heckler Testimony**





# Items Considered

**Audit Committee Investigation**

8/24/98

**Annual Reports, 10K's/10Q's, Company Financials**

FY 1/31/96, 1/31/97, 12/31/97

**Restated Company 10KA and Financials 12/31/97**

**Selected Press Releases**

**News Accounts/ Other Background**

**Interviews – Company Personnel**

Speaks, Sattler, Sabatino, et al

**Company Source Documents**

Journal Entries, Spreadsheets

**Selected E&Y and D&T Audit Workpapers**

FY 1/31/96, 1/31/97, 12/31/97

**Company-Specific Information**

**Public Documents**

**Government Investigation and Trial**

**Other Sources**

**EXPERT OPINION**

**Technical Accounting Literature and Professional Standards**

**SEC Enforcement Actions, Rules, Regulations, Staff Guidance**

**Redacted Indictment**

Forbes

**Information**

Corigliano, Sabatino, Pember

**Transcript of Pleas**

Corigliano, Sabatino, Pember

**Current & Prior Trial Testimony and Exhibits**

**United States of America vs. Walter A. Forbes and E. Kirk Shelton – B. Heckler Testimony**

© 2003 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

# GAAP – Financial Statements

- Financial statements – What are they?

- A means through which financial information for a defined period of time or as of a particular date is communicated to users (i.e., banks, investors, management etc.)

  – Result from simplifying, condensing, and aggregating masses of data

  – Provides financial information useful in making investment and credit decisions, and assessing the performance of operations

- Generally show how much income you make and what you currently own and owe

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A.  KPMG and the KPMG logo are registered trademarks of KPMG International.

<u>United States of America vs. Walter A.</u>
<u>Forbes– B. Heckler Testimony</u>



7

# Generally Accepted Accounting Principles (GAAP)

GAAP encompasses the conventions, rules, and procedures necessary to define accepted accounting practice at a particular time, including not only broad guidelines of general application, but also detailed practices and procedures.



**Hierarchy of Sources for GAAP**

FASB,
APB
Standards

FASB Technical Bulletins,
Industry Audit and Accounting,
Statements of Position

AcSEC,
Emerging Issues Task Force

AICPA Accounting Interpretations,
Implementation Guides,
Industry Practices

FASB Statements of Financial Accounting Concepts*,
AICPA Issues Papers,
International Accounting Standards,
AICPA Technical Practice Aids,
Accounting textbooks, handbooks, and articles

*Normally more influential than other sources in this category

*Source: SAS 69,
paragraphs 02, 10,
and 11*

8

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved.
Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

United States of America vs. Walter A.
Forbes- B. Heckler Testimony



# Key Themes

■ Four main themes throughout my testimony:

1. **Timing**

   – When is it appropriate to recognize revenue, expenses and liabilities in financial statements?

   – How does this compare to when CUC recognized certain revenues, expenses and liabilities in its financial statements?

2. **Characterization of expenses**

   – How are certain expenses appropriately characterized as normal, recurring charges vs. special non-recurring charges?

   – How does this compare to how CUC characterized certain expenses?

3. **Assets**

   – What constitutes an asset?

   – How are various assets viewed differently?

4. **Financial performance**

   – How are a Company's financial statements used by the public and why is it important that a Company's public statements are accurate?

   – How does this compare to CUC's public statements?

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International

9

<u>United States of America vs. Walter A.</u>
<u>Forbes– B. Heckler Testimony</u>



# Quarterly Topside Adjustments



**FYE 1/31/96**

4/30/95

$19[1]

10/31/95

$(1)

$13[1]

7/31/95

$31[2]

Topside Adjustments

4/30/97

$62[1]

10/31/97

$53[1]

**FYE 12/31/97**

7/31/97

$176[2]

**FYE 1/31/97**

4/30/96

$42[1]

10/31/96

$5[1]

$40[1]

7/31/96

$87[2]

(1) Represents the incremental income statement effect for the period presented

(2) Represents the cumulative nine-month income statement effect

10

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

**United States of America vs. Walter A. Forbes— B. Heckler Testimony**



# Topside Adjustments Background

- In consolidating financial results, it is not uncommon for companies to record certain adjustments:

  – so-called "consolidating entries" or

  – "topside entries."

- Also, it is not uncommon that interim amounts (i.e. quarterly amounts) be adjusted as a result of differences between reporting quarterly and reporting annually – so-called "intra-period allocations."

- The quarterly topside adjustments made by Cendant personnel do not constitute the types of adjustments noted above.

- Unsupported, arbitrary adjustments made to increase revenues and decrease expenses would be violations of GAAP.

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

**United States of America vs. Walter A.
Forbes– B. Heckler Testimony**



11

# Topside Adjustments

■ Why is it a problem that Cendant recorded these topside adjustments?

– Adjustments were unsupported, arbitrary and had no basis.

– Adjustments were used by Company personnel to align the Company's reported quarterly results with analysts' expectations.

– Actual reported results would have fallen short of analysts' expectations without these adjustments.

12



© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International

**United States of America vs. Walter A. Forbes– B. Heckler Testimony**

# Work Performed: Topside Adjustments

In the area of topside adjustments, KPMG performed/re-performed the following procedures:

■ Compared Quarterly Reports issued to the public with underlying books and records used to prepare those reports;

■ Identified adjustments to the schedules used to accumulate financial information from the various businesses of CUC/Cendant;

■ Looked for support in correspondence, company documents, SEC filings, testimony, exhibits, transcripts of pleas, Informations, Audit Committee investigation, and accounts of those involved that validated those adjustments;

■ Identified unsupported adjustments representing violations of GAAP;

■ Accumulated the results.

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

**United States of America vs. Walter A. Forbes– B. Heckler Testimony**



# Topside Adjustments – Overall Conclusion

■ In my opinion, the topside adjustments violated GAAP because they:

– Had no basis in a past transaction(s) or event(s) (i.e. services rendered)

– Had no basis in GAAP to be recognized in the financial statements.

– No exchange of consideration or a transaction with a customer.

– No claim to cash or other asset that met the definition of an asset.

– Revenue recognized failed to meet the definition of revenue.

– Company management failed to disclose the accounting practices.

14

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative.  All rights reserved.
Printed in the U.S.A.  KPMG, the KPMG logo are registered trademarks of KPMG International.

United States of America vs. Walter A.
Forbes  B. Heckler Testimony



# Revenue – Allocations Deferred to Immediate Programs



Revenue Allocations from Deferred Programs to Immediate Recognition

FYE 12/31/97
≥$17

FYE 1/31/97
≥$10

FYE 1/31/96
≥$3

United States of America vs. Walter A. Forbes– B. Heckler Testimony

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

15

# Revenue Recognition – Immediate vs. Deferred Background

- During the "relevant period", CUC stated that it reported revenues in its financial statements over the membership period.

- CUC determined what to report as revenue related to its membership programs by using a "projection model".

- These projection models included a column labeled "allocations"

- These "allocations" had the effect of moving revenues CUC would have recognized in future periods (i.e., deferred) in accordance with its stated policy to the current period (i.e., immediate).

- Had the "reallocations" not been recorded by CUC, revenues related to its membership programs would have been lower than reported and its revenue growth rate that was implicitly reported to the public would also have been lower.

- Unsupported "reallocations" that depart from the stated Company revenue recognition policy would fail the revenue recognition standards and distort the "users" view of currently earned revenue and anticipated growth resulting in violations of GAAP.

United States of America vs. Walter A. Forbes– B. Heckler Testimony

© 2004 KPMG LLP, the US. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.



16

# Work Performed – Revenue Recognition – Reallocations

KPMG performed the following procedures:

■ Read the public SEC filings, company documents, audit workpapers, Audit Committee investigation, interviews, transcripts of pleas, Informations, trial testimony, exhibits, and other accounts of individuals involved to gain an understanding of CUC's business, the various membership programs, the Company's policy and practices for revenue recognition and membership acquisition costs, and disclosures made;

■ Identified reallocations between deferred and immediate revenue recognition programs located in the projection models for 1/31/95, 96, 97 and 12/31/97;

■ Looked for appropriate evidentiary documentation (company documentation, interviews, etc.) related to support the reallocations made;

■ Accumulated the amount of the reallocations or transfers between these programs for the relevant periods;

■ Calculated the effect as if the identified reallocations were not made;

■ Summarized the effect on revenues recognized for the periods identified.

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved.
Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

United States of America vs. Walter A.
Forbes – B. Heckler Testimony



17

# Revenue Recognition – Immediate vs. deferred

- Accelerated revenue recognition for these "reallocations" violated GAAP because:

  – CUC did not meet revenue recognition criteria requiring that they be "realizable" and "earned."

- Not realizable or earned because:

  – CUC was required to provide the membership service over a period of time in accordance with its membership agreement with the customers.

  – CUC had to expend its own funds and resources over the membership period to make the service available to the customer at any time the customer wanted.

  – Customers had the right to receive their money back if they cancelled their service during the entire membership period, including their last day of membership.

  – CUC's customers frequently cancelled their memberships during the membership period.

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved.
Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

United States of America vs. Walter A.
Forbes – B. Heckler Testimony



# Revenue Recognition – Immediate vs. deferred

- The "reallocations" in effect represented transactions recognized in CUC's financial statements.

- These transactions should not have been recognized as there was no support for the transactions under GAAP.

- The recognition of the "reallocations" distorted a user's view of earned revenues, anticipated future revenues, and growth in memberships because there was no disclosure of these reallocations.

- GAAP requires appropriate disclosures as to how CUC recognized and accounted for revenues.

19

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

United States of America vs. Walter A.
Forbes—B. Heckler Testimony



# Revenue Recognition – Overall Conclusion

- In my opinion, the recognition of the "reallocations" were not in accordance with GAAP or in accordance with CUC's stated accounting policy;

- In my opinion, this practice overstated CUC revenues by at least:

| | |
|---|---|
| FYE Dec. 31, 1997 | $17 million |
| FYE Jan. 31, 1997 | $10 million |
| FYE Jan. 31, 1996 | $3 million |

20

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

United States of America vs. Walter A.
Forbes– B. Heckler Testimony

KPMG



# Membership Cancellation Reserves

Inappropriate Cancel Rate Estimates

Delayed Recognition of Rejects and Cancellations

Cancel Reserves Reversed → Income

FYE 1/31/96 ≥$48

FYE 1/31/97 ≥$19

FYE 12/31/97 ≥$12

21

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

United States of America vs. Walter A. Forbes– B. Heckler Testimony

KPMG

# Revenue Recognition – Cancellation Reserve Rates Background

### Cancellation Rates

- CUC's accounting policy was to reduce the amount of revenue it recognized by an estimated percent to account for its estimate of membership fees it would refund to customers.

- CUC developed detailed systems to track actual cancellation rates and make estimates as to future cancellation rates.

- These reports were distributed and reviewed by management on a regular basis.

- CUC justified the rates used to its auditor E&Y by selectively providing programs that would support the rates used and not the entire population of cancellation rates.

- CUC's rates used to calculate the required reserves were as follows:

| Renewal Revenues | | New Member Revenues | |
|---|---|---|---|
| 12/31/97 | 31.5% of Dec 1997 revenues | 26% of Dec and Nov 1997 revenues | |
| 01/31/97 | 31.5% of Jan 1997 revenues | 26% of Jan 1997 and Dec 1996 revenues | |
| 01/31/96 | 31.5% of Jan 1996 revenues | 26% of Jan 1996 and Dec 1995 revenues | |

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

**United States of America vs. Walter A. Forbes– B. Heckler Testimony**

22



# Revenue Recognition – Cancellation Reserve Rates Background

- CUC attempted to reduce revenues by an estimated amount of cancellations.

- CUC had historical experience of cancellation, reflecting that they were "probable."

  - CUC historically tracked in detail, or a program-by-program basis, actual cancellation rates experienced by CUC.

  - Because CUC's estimates were not based on available information at the time, the reserve recorded was not in accordance with GAAP.

- If the rates used by CUC to calculate the reserves were too low and were not updated/increased to reflect actual cancellation rates experienced by CUC, then CUC would not have reduced revenues for a given period by an adequate amount to account for those revenues that would ultimately be returned to the customer when they cancelled their memberships.

- Inappropriate cancellation reserves based on a flawed estimate using improper cancellation experience rates would result in a violation of GAAP.

23

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

<u>United States of America vs. Walter A.</u>
<u>Forbes– B. Heckler Testimony</u>



# Revenue Recognition – Cancellation Reserve Rejects Background

Rejects-in-Transit:

- CUC generally billed its annual membership fees to customers' credit cards.

- Some of these charges were "rejected" for the following reasons:

  - Credit card was over the limit;

  - Credit card was invalid (e.g., closed or lost/stolen); or

  - Member's refusal of the charge ("chargebacks")

- CUC generally recorded these rejects as they were incurred by decreasing cash for receivables and the member cancellation reserve.

- It was CUC's "policy" not to record (i.e., hold) those rejects incurred during the last three months of the year.

- These "held" rejects were recorded in the first three months of the subsequent year.

- The existence of this policy was not disclosed by CUC.

24

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved.
Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

United States of America vs. Walter A.
Forbes– B. Heckler Testimony



# Revenue Recognition–Cancellation Reserve Reversals Background

Reversals to Income:

- At each year end, CUC estimated the amount of the required cancel reserve to cover future cancellations; this estimate was then compared to the amount of the membership cancel reserve actually recorded by CUC;

- In this comparison, CUC determined that the amount of the reserve recorded was too large compared to what was "required."

- In certain periods, the amount identified as excess cancellation reserves was reversed to increase revenues or reduce other expenses.

- If the cancellation reserves were not truly in excess of amounts required or if the reversals were presented in a misleading way, a violation of GAAP would exist.

United States of America vs. Walter A. Forbes– B. Heckler Testimony

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.



25

# Work Performed – Revenue Recognition – Cancellation Reserves

KPMG performed the following procedures:

- Gained an understanding of CUC's stated policy and practice for cancellations and rejects and the underlying methodology for recording revenues net of an estimate cancellation rate;

- Read other information concerning cancellation reserves and rejects, including SEC filings correspondence, company documents, auditor workpapers, Audit Committee investigation materials, statements of the individuals involved, Informations, transcripts of pleas, trial testimony and exhibits;

- Read historical data and company records of membership cancellation rates and compared this information to the rates used to support the cancellation reserve level;

- Performed tests of a company-prepared revised cancellation reserve estimate redesigned to address concerns raised with the original design and use of cancellation rate information to determine the reserve level;

- Summarized the amount of rejects not recorded on a timely basis from the bank reconciliations at 1/31/95, 96, 97, and 12/31/97;

- Observed reversing entries to reduce "excess reserves" based on the flawed methodology and understated level of required reserves;

- Calculated the effect of cancellation reserve violations of GAAP for the relevant fiscal periods.



© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

United States of America vs. Walter A. Forbes– B. Heckler Testimony

26

# Revenue Recognition – Cancellation Reserves (Rates)

<u>Cancellation rates</u>

- GAAP requires revenues subject to a return privilege [SFAS 5 and 48] to be recognized at the time of sale and reduced by an estimate of cancellations/refunds to be incurred.

- In making this estimate, GAAP requires only that:

  – Cancellations are probable in the future;

  – The amount of those cancellations can be reasonably estimated; and

  – All information available at the time is used to make the estimate

- CUC's stated policy and calculation method failed to comply with GAAP's requirements, because:

  – These rates were not reflective of CUC's overall cancellations as:

    – The rates were not updated for current information in each of the periods

    – The rates were justified by selectively "choosing" certain membership programs that happened to be a reflection of the rates used, despite most of the programs being higher

  – CUC's estimates were made using only one or a few overall cancel rates for membership programs

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

<u>United States of America vs. Walter A.</u>
<u>Forbes – B. Heckler Testimony</u>

27



# Revenue Recognition – Cancellation Reserves (Rejects)

<u>Rejects-in-Transit:</u>

■ Not recording those "held" rejects, had the effect of increasing the cash balance and the membership cancellation reserves CUC reported in its financial statements at year end.

■ This was done even though;

– CUC had already given the cash back to the customer (or rescinded its claim to cash)

– CUC had no obligation to provide membership services to those customers; and

– The "transaction" (e.g., the rejection of the charge) had already occurred.

■ CUC had unrecorded rejects totaling:

12/31/97    $125

1/31/97    $122

1/31/96    $84

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

<u>United States of America vs. Walter A. Forbes– B. Heckler Testimony</u>

KPMG

# Revenue Recognition – Cancellation Reserves

In my opinion, CUC violated GAAP because:

- CUC estimated the amount of the required reserve by using an inadequate formula based on inappropriate data using selected historical cancellation rates not representative of all membership programs resulting in a distortion in the amount of the reduction from revenues.

- CUC failed to recognize an additional charge against revenues to establish the reserve for rejects and cancellations of the amounts CUC believed were necessary.

- The estimates of rejects and future membership cancellations was not based on all information then currently available to management since "known" rejects and cancellations were not recorded on a timely bases at year end.

- The Company presented cash in its financial statements that did not exist at year-end.

- The Company failed to disclose its policy of delaying the recognition of rejects by three months at year-end.

- CUC failed to provide a sufficient estimate of its rejects and cancellations.

United States of America vs. Walter A.
Forbes – B. Heckler Testimony



© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved.
Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

29

# Revenue Recognition – Cancellation Reserves – Summary

As a result of these violations, CUC's membership reserves were understated and the pre-tax income to be overstated by at least:

12/31/97      $12 million

1/31/97       $19 million

1/31/96       $48 million

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved.
Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

United States of America vs. Walter A.
Forbes– B. Heckler Testimony

**KPMG**