# Merger Reserves

**Reversals of Merger Reserves**
**Income/Expense** →
- CUC Europe
- Sentinel
- Welcome Wagon
- Essex

**FYE 1/31/96**
**≥$10**

**Reversals of Merger Reserves**
**Income/Expense** →
- Plextel
- Ideon

**FYE 1/31/97**
**≥$23**

**Reversals of Merger Reserves**
**Income/Expense** →
- Ideon
- Cendant
- Sparks

**FYE 12/31/97**
**≥$110**

31

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

<u>United States of America vs. Walter A.</u>
<u>Forbes– B. Heckler Testimony</u>



# Expenses – Merger Costs/Restructuring Background

■ Costs associated with activities such as realignment of a previously separate strategy, management, employees, operations, facilities, products, etc. of two entities in a business combination are commonly called "restructuring" or "exit costs."

■ When done in connection with a merger, these costs and certain transaction-related costs are often referred to as "merger-related" costs.

■ Merger costs were displayed separately by CUC in the income statement and were portrayed as being out of the ordinary, unusual, infrequent or non-recurring.

■ Timing of when restructuring costs are recorded has been addressed by GAAP

■ Typically, the costs will be accrued and recognized in the financial statements when an obligation exists to pay cash or otherwise sacrifice enterprise assets.

■ In certain circumstances, GAAP requires that exit costs and involuntary severance be accrued upon intended actions of management at a point prior to when the costs would otherwise be recognized under GAAP.

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

**United States of America vs. Walter A. Forbes– B. Heckler Testimony**



# Expenses – Merger Costs/Restructuring – Background (2)

- The Company is alleged to have:

  - included excess amounts;

  - charged off unsupported asset impairments;

  - provided for certain costs in its merger reserve accrual that did not qualify for accrual at the time of the charge

  - misclassified certain normal, recurring operating expenses as merger-related cost, and;

  - inappropriately recognized reversals of excess merger reserves as revenues.

United States of America vs. Walter A. Forbes– B. Heckler Testimony

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

33



# Cendant and Ideon Merger Reserve Utilizations

## Ideon
### Total: $179.9



$113.6 [1]

$3

$63.3

$ millions

## Cendant
### Total: $556.4

$84.2 [2]

$111.9

$360.3

$ millions



(1) 51 million in FYE 1/31/97 and $62.6 million in FYE 12/31/97, including $11 million in January 1997

(2) Includes $46.5 million of asset impairments and $37.7 million of other uses during FYE 12/31/97

□ Unsupported     ☐ Unused     ■ Other used

**United States of America vs. Walter A. Forbes– B. Heckler Testimony**

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.



KPMG

34

# Cendant and Ideon Merger Reserve Utilizations



**FYE 1/31/97**
**Total: 83.5**

$ millions

$29.5

$3

$51.0

**FYE 12/31/97**
**Total: 652.7**

$ millions

$360.3

$146.8

$145.7

35

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

Unused 

Other used 

Unsupported 

**United States of America vs. Walter A. Forbes– B. Heckler Testimony**

 KPMG

# Work Performed – Merger Reserves

KPMG performed the following procedures:

- Reviewed information from SEC filings, correspondence, company documents, auditor workpapers, Audit Committee investigation, statements of the individuals involved, transcripts of pleas, Informations, trial testimony and exhibits related to merger reserves;

- Identified unsubstantiated uses of the merger reserves and compared with the underlying books and records or other documentation evidencing the existence of the uses;

- Assess the propriety of the use of merger reserves in accordance with GAAP;

- Considered whether changes in the planned use of reserves, particularly litigation reserves and reversals of excess reserves, were treated properly in accordance with GAAP and disclosed pursuant to SEC reporting requirements;

- Accumulated and summarized the uses and reversals of merger reserves that were identified as violations of GAAP.

36

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

United States of America vs. Walter A. Forbes– B. Heckler Testimony



# Expenses – Merger costs/restructuring - Conclusions

■ The use of merger reserves and the treatment and characterization of merger-related costs by the company violated GAAP because:

– Certain of the costs included in the merger reserves accrual were not qualifying exit costs.

– The Ideon and Cendant merger reserves did not represent valid estimates of anticipated exit costs.

– The asset impairments recognized did not qualify to be recognized and were improperly recorded.

– Expenses were mischaracterized in the income statement and expenses were not recognized in the period in which they were incurred.

– The Company inappropriately reversed excess merger reserves into revenue.

– The Company did not provide the required disclosures of the merger reserves, costs change to merger reserves, and reversals of excess reserves.

United States of America vs. Walter A. Forbes– B. Heckler Testimony



© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

37

# Merger Reserves – Overall Conclusion

- In my opinion, the reversals of excess merger reserves to increase revenues and decrease unrelated expense amounts were not in accordance with GAAP;

- In my opinion, this practice overstated CUC pre-tax operating income by at least:

  FYE Dec. 31, 1997          $110 million

  FYE Jan. 31, 1997          $23 million

  FYE Jan. 31, 1996          $10 million

38

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

United States of America vs. Walter A. Forbes– B. Heckler Testimony

KPMG

# Other Accounting Errors



**Commissions Payable Reversed → Income**

$4    FYE 1/31/97
$2    FYE 12/31/97

**Deferred Tax Asset Reversed → Income**

$2    FYE 12/31/97

<u>United States of America vs. Walter A. Forbes– B. Heckler Testimony</u>

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

39

**KPMG**

# Other – Commissions Payable Background

■ When Comp-u-Card, CUC's largest division, obtained new members it was obligated to pay commissions to banks and other institutions (clients) through which such members were obtained.

■ Comp-u-Card created a liability ("commissions payable") at the time it recorded revenue for those commissions.

  – Commission payables were booked based on the established commission rate between CUC and the client.

■ CUC personnel are alleged to have recorded nine post-close unsupported entries in fiscal 1997 (three of which were recorded in January 1997 and impacted both fiscal and calendar year 1997) reversing the commission liability account to increase certain revenue accounts.

40

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

**United States of America vs. Walter A.**
**Forbes– B. Heckler Testimony**



# Other – Commissions Payable - Conclusion

■ The unsupported reductions made to commissions payable by company personnel violated GAAP because:

  - A liability was reversed into revenue that did not meet the definition of revenue.

  - The Company was not relieved of the commission payable liability obligation.

  - Company management failed to disclose the effect of this adjustment on commission liability or on reported revenues.

41

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved.
Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

<u>United States of America vs. Walter A.
Forbes– B. Heckler Testimony</u>



# Other – Deferred Tax Asset Background

- In April 1997, the Sierra division of CUC Software acquired Berkeley Systems and Books That Work (Berkeley) and used purchase accounting.

- Included on Berkeley's pre-acquisition balance sheet was a $2.6 million deferred tax asset (DTA) against which a 100% valuation allowance was maintained.

- The DTA was at first excluded from Sierra's accounting for the acquisition of Berkeley.

- In December 1997, by direction of CUC management, the DTA and corresponding valuation allowance were reinstated on Sierra's balance sheet.

- In January 1998, once again directed by CUC management, the valuation allowance was reversed into miscellaneous income.

United States of America vs. Walter A. Forbes– B. Heckler Testimony



© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved.
Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

42

# Other – Deferred Tax Asset Conclusion

- The reversal of the valuation allowance into income violated GAAP because:

  – The deferred tax asset did not meet the GAAP qualifications to be recognized in the financial statements:

  – Reversing the valuation allowance into income was inappropriate

  – The Company was required to disclose the effect of the change in the valuation allowance and the impact its reversal had on income.

- The earnings Cendant reported for its fiscal year ending December 31, 1997 were overstated by approximately $2.6 million.

43

United States of America vs. Walter A. Forbes– B. Heckler Testimony

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved.
Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.



# Work Performed – Other Accounting Irregularities

KPMG performed the following procedures:

- Read SEC filings, correspondence, company documents, Audit Committee investigation, statements of individuals involved, transcripts of pleas, Informations, trial testimony, and exhibits related to commissions payable and the deferred tax valuation allowance.

  - Commissions payable.  Observed unsupported journal entries related to commission payables that overstated reported net income and understated the commissions liability.

  - Deferred tax valuation allowance.  Observed internal correspondence/emails between Casper Sabatino, Pam Drake and Brian Foster related to the treatment of deferred tax assets.

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved.
Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

United States of America vs. Walter A.
Forbes– B. Heckler Testimony

44



# Other Accounting Errors – Overall Conclusion

- In my opinion, the reversal of commissions payable and deferred tax assets into income and the reduction of various expense accounts by transfers to deferred marketing were not in accordance with GAAP or in accordance with CUC's stated accounting policy;

- Actions taken in the area of Topside adjustments and merger reserves that were duplicated in the month of January 1997 to exploit the change in fiscal year violated GAAP.

- In my opinion, this practice overstated CUC pre-tax income by at least:

| | 1/31/1997 | 12/31/1997 |
|---|---|---|
| **Other irregularities made to income:** | | |
| Commission payables | 4 | 2 |
| Deferred tax assets | 0 | 2 |
| ***January 1997 impact:*** | | |
| Topside adjustments | 0 | 22 |
| Merger reversals into income | 0 | 11 |
| **Total overstatement of pre-tax income** | **4** | **37** |

45

**United States of America vs. Walter A. Forbes– B. Heckler Testimony**

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.



# Summary of Conclusions

KPMG

# Key Themes

■ Four main themes throughout my testimony:

1. **Timing**
   – When is it appropriate to recognize revenue, expenses and liabilities in financial statements?
   – How does this compare to when CUC recognized certain revenues, expenses and liabilities in its financial statements?

2. **Characterization of expenses**
   – How are certain expenses appropriately characterized as normal, recurring charges vs. special non-recurring charges?
   – How does this compare to how CUC characterized certain expenses?

3. **Assets**
   – What constitutes an asset?
   – How are various assets viewed differently?

4. **Financial performance**
   – How are a Company's financial statements used by the public and why is it important that a Company's public statements are accurate?
   – How does this compare to CUC's public statements?

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved.
Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

<u>United States of America vs. Walter A. Forbes– B. Heckler Testimony</u>



# Summary of Overstatements of Pre-Tax Income [1]

| $ millions | Nine months ended 10/31/1995 | FYE 1/31/1996 | Nine months ended 10/31/1996 | FYE 1/31/1997 | Nine months ended 10/31/1997 | FYE 12/31/1997 |
|---|---|---|---|---|---|---|
| Topside adjustments | 31 | | 87 | | 176 | |
| Revenue recognition practices | | 3 | | 10 | | 17 |
| Membership cancellation reserves | | 48 | | 19 | | 12 |
| Merger reserves | | 10 | | 23 | | 110 |
| Other accounting irregularities | | – | | 4 | | 37 |
| Total overstatement of pre-tax income | 31 | 61 | 87 | 56 | 176 | 176 |

Note:    (1)  The amounts noted in this schedule had the effect of overstating reported pre-tax operating income by at least the amounts identified

United States of America vs. Walter A. Forbes– B. Heckler Testimony

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved.
Printed in the U.S.A.  KPMG and the KPMG logo are registered trademarks of KPMG International.

48



# Addendum 1:  Details of Work Performed

KPMG

# Work Performed – Topside Adjustments

In the area of topside adjustments, KPMG performed/re-performed the following procedures:

- Gained an understanding of the process used by AA to identify the topside adjustments.

- Agreed the adjustments identified to the consolidating worksheets noting the amounts added by the Company for each of the first three quarters for each of the years ended January 31, 1996, January 31, 1997 and December 31, 1997 for a total of nine quarters.

- Agreed the reported numbers to the CUC/Cendant 10Qs and press releases for each of the three quarters ended January 31, 1996, January 31, 1997 and December 31, 1997.

- Detail tested input data for amounts in the consolidating worksheet for the quarter ended April 30, 1996 by comparing the original reporting package of the CUC division to the consolidating spreadsheet components, noting the reconciling items. For all other subsidiaries, agreed summary totals from the consolidating spreadsheet to the respective division's financial reporting package.

- Reviewed procedures performed by AA for verifying inputs to consolidating worksheet for all quarters and subsidiaries other than the period detailed tested by KPMG noting similar procedure and results.

- Read and summarized interviews, transcripts of pleas, trial testimony, and other accounts of individuals involved.

- Reviewed trial exhibits introduced as evidence.



United States of America vs. Walter A. Forbes– B. Heckler Testimony

50

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

# Work Performed – Revenue Recognition – Reallocations

KPMG performed the following procedures:

- Read the public SEC filings to gain an understanding of CUC's business, the various membership programs, the Company's policy for revenue recognition and membership acquisition costs, and disclosures made.

- Gained an understanding of the CUC revenue recognition practices and procedures performed by AA.

- Identified and summarized the alleged facts related to revenue recognition and identified appropriate evidentiary documentation (company documentation, interviews, etc.) related to these facts.

- Read and summarized interviews, transcripts of pleas, trial testimony, and other accounts of individuals involved.

- Reviewed selected D&T restatement audit workpapers.

- Reviewed trial exhibits introduced as evidence.

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved.
Printed in the U.S.A.  KPMG and the KPMG logo are registered trademarks of KPMG International.

United States of America vs. Walter A.
Forbes– B. Heckler Testimony



# Work Performed – Revenue Recognition – Reallocations (2)

In addition, KPMG performed the following procedures:

- Read the original projection models and amortization grids, noting columns labeled "allocation," purportedly used by the Company to transfer deferred revenues to the immediate recognition programs.

- Using the 12/31/1997 projection model and amortization grids, KPMG observed how the projection model operated and confirmed the transfer of revenue from the deferred program to immediate recognition programs via the column labeled "allocation".

- Reviewed a reconciliation prepared by Steve Speaks of the revenues reported in internally prepared CUC financial statements (11 months) to those used to prepare the final 12/31/1997 consolidation and the amounts in the 12/31/1997 projection model.

- Recalculated the monthly amortization of revenues for February and August 1994 contained in the January 31, 1995 projected model for a selected program revenues.

- Read the restated amortization grids and documented an understanding of how the amount of the misstatement that was calculated by Steve Speaks and tested by AA.

- Understood and recalculated AA's estimate and the USAO's estimate of the misstatement as included in the Indictment of the misstatement on the revenue grids agreeing amounts to the original and restated amortization grids.

- KPMG agreed all of the amounts of the "reallocations" to the original revenue recognition grids.

- Prepared a calculation of the income statement effect for each period assuming the revenues originally allocated for immediate recognition were deferred similar to other revenues for each program.

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International

<u>**United States of America vs. Walter A. Forbes– B. Heckler Testimony**</u>



52

# Work Performed – Revenue Recognition – Cancellation Reserves

KPMG performed the following procedures:

- Gained an understanding of CUC's methodology for recording revenues net of an estimate cancellation rate.

- Read CUC's public SEC filings for disclosures related to cancellation rates and any disclosed accounting policies.

- Identified and read AA workpapers for cancellation reserves, rejects in transit and related "P" entries and gained an understanding of the procedures performed by AA.

- Identified and summarized the alleged facts related to cancellation reserves, rejects in transit and "P" entries and identified appropriate evidentiary documentation (company documentation, interviews, etc.) related to these facts where included in the AA workpapers or elsewhere.

- Read and summarized interviews, transcript of pleas, trial testimony, and other accounts of individuals involved.

- Reviewed selected D&T restatement audit workpapers.

- Reviewed trial exhibits introduced as evidence.

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved.
Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

United States of America vs. Walter A. Forbes – B. Heckler Testimony



# Work Performed – Revenue Recognition – Cancellation Reserves (2)

In addition, KPMG performed the following procedures:

■ Obtained CUC calculation of original membership cancellation reserve for 1/31/1996, 1/31/1997 and 12/31/1997 and gained an understanding of how this reserve was calculated.

■ Agreed net membership cancellation reserves as included on the original membership cancellation reserve for 1/31/1996, 1/31/1997 and 12/31/1997 to the CUC financial records contained in the E&Y workpapers.

■ Read an e-mail to Anne Pember from Steve speaks dated March 31, 1998 indicating that the "audit support for this number [membership reserves] is weak at best" and "we could have a $10-$20MM problem here."

■ Obtained and read CUC produced cancel rates and experience for the period between September 1993 to April 1995.

■ Obtained and read portions of a CUC generated reports entitled "Cancellation point estimates report for years one, two and three – Information current as of December 30, 1997." Portions of the January 31, 1997 report were also obtained and read.

■ Obtained the restated reserve calculations prepared by Steve Speaks for AA for December 31, 1997, January 31, 1997, 1996 and 1995, noting the calculation was performed on a program-by-program basis.

■ For the same periods, KPMG obtained an electronic version of the final membership reserve re-calculation prepared by the Company from AA. Using the electronic versions, KPMG gained a basic understanding of the methodology employed in re-calculating the reserve. KPMG also compared the electronic versions to the versions included in the AA workpapers to ensure consistency in calculation methodology.

■ Using the final membership reserve re-calculation for December 31, 1997, agreed selected cancel rates to the cancel rate report.

■ Compared the original cancellation reserve during the relevant period, as reported in the CUC trial balance, to the restated cancellation reserve calculated by CUC/Speaks and recomputed the effect of the adjustment for income each period.

<u>United States of America vs. Walter A.</u>
<u>Forbes– B. Heckler Testimony</u>

54

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved.
Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.



# Work Performed – Revenue Recognition – Cancellation Reserves – Rejects

KPMG performed the following procedures on rejects in transits:

- KPMG identified and summarized journal entries identified by AA and made by CUC to record rejects in transit subsequent to year-ends. Using this information, KPMG re-calculated the effects of reversing these entries and recording the rejects-in-transit in the appropriate period.

- Read an e-mail from "Corp: PHiznay" documenting CUC's policy of holding rejects in transit at year-end. KPMG also read E&Y's "Cash Memo" for the year ended December 31, 1997 confirming the existence of such a policy.

- For January 31, 1995, 1996, and 1997 and December 31, 1997, KPMG summarized by cash account number and recalculated the rejects, chargebacks and cancellations identified by AA.

- For each year, KPMG agreed the account number and amounts of the rejects/chargebacks and cancellations to the bank (or accounts receivable) reconciliations prepared by CUC at the time, noting only minor exceptions. KPMG also noted how these reconciling items were described in the reconciliations and that these items were shown as deductions from the book balance.

- KPMG noted that AA identified the journal entries utilized by CUC to record the amounts of rejects subsequent to year end and recalculated the amount of AA's coverage of the total rejects/chargebacks and cancellations as included in CUC's bank reconciliations. The coverage percentages were 59%, 65%, and 79% for January 31, 1996 and 1997 and December 31, 1997, respectively.

United States of America vs. Walter A.
Forbes– B. Heckler Testimony

55



© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

# Work Performed – Merger Reserves

KPMG performed the following procedures:

■ Reviewed in detail the procedures performed by AA on the Cendant and Ideon merger reserves.

– Cendant: For year ended December 31, 1997, AA tested the transactions posted to the HFS/Cendant merger reserve (acct #23333) for every journal entry greater than $100,000 (debit or credit) and several entries below this scope, amounting to approximately 99% of all account activity through March.

– For accounts payable transactions, AA obtained applicable voucher packers (including check copies, invoices, etc), in addition to contacting the CUC employee responsible for preparing each entry.

– AA held discussions w/CUC personnel to gain an understanding of the purpose of the entries.

– Ideon: Identical approach as used to test the Cendant reserve was used to test the Ideon reserve for the years ended January 31, 1997 and December 31, 1997. Testing covered in excess of 98% of the aggregate amount charged against the Ideon Reserve.

– Reviewed the D&T audit workpapers related to the restatement of Ideon and Cendant merger reserves.

© 2004 KPMG LLP, the U.S. member firm of KPMG International, a Swiss cooperative. All rights reserved. Printed in the U.S.A. KPMG and the KPMG logo are registered trademarks of KPMG International.

<u>United States of America vs. Walter A.<br>Forbes – B. Heckler Testimony</u>



56