UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AWT) |
| | : | |
| v. | : | October 17, 2005 |
| | : | |
| WALTER A. FORBES | : | |

GOVERNMENT'S RESPONSE TO DEFENDANT WALTER A. FORBES' MOTION FOR
RECONSIDERATION OF THE COURT'S RULINGS ON PARTS 3 & 5 OF THE
GOVERNMENT'S PRE-TRIAL MOTION *IN LIMINE*

(FORBES RETRIAL MOTION NO. 14)

INTRODUCTION

Forbes seeks reconsideration of portions of this
Court's October 13, 2005 "Ruling on Government's Pre-Trial Motion
No. 1" ("Ruling").  He complains, for instance, that the Court
granted certain relief requested by the Government even though
Forbes was unable to respond to the Government's reply memoranda
in support of its motion.  Forbes' Mem. in Support of Motion for
Reconsideration ("FM") 4, n.1.  Forbes apparently believes that
he is entitled to reconsideration because he did not have the
last word with respect to the Government's motion.  Not only does
Forbes provide no basis for his apparent belief that he must
always be given the last word on any motion before the Court,
regardless of the identity of the movant, but he simply
disregards this Court's consistent practice in this case, of
which Forbes is the primary beneficiary (because he files so many
more motions than the Government) to permit reply memoranda in
support of motions but not surreply memoranda.

Even though Forbes is expressly seeking reconsideration in this motion, he makes no mention of the movants' "strict burden" for such motions. Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (party seeking reconsideration must meet a "strict burden"); accord United States v. Ocasio, 2005 WL 1489462, *2 (D.Conn., June 20, 2005); Thompson v. United States, 2005 WL 1278953, *1 (N.D.N.Y., May 27, 2005).[1] Forbes is not entitled to a proverbial "second bite at the apple" merely because, for instance, the Court did not entertain oral argument or a surreply memoranda from Forbes in response to the Government's motion. See Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998). Because Forbes declines to "point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court," id.; United States v. Fell, 372 F.Supp.2d 773, 780 (D.Vt. 2005), he has failed to sustain his heavy burden of demonstrating that this Court's prior determinations were so unsound that they require reversal.

---

[1] Thus, "the function of a motion for reconsideration is to present the court with an opportunity to correct 'manifest errors of law or fact or to consider newly discovered evidence.'" LoSacco v. City of Middletown, 822 F.Supp. 870, 876-77 (D.Conn. 1993), aff'd, 33 F.3d 50 (2d Cir. 1994), quoting Rothwell Cotton Co. v. Rosenthal & Co., 827 F.2d 246, 251 (7th Cir. 1987)). "[A] motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made." Lopez v. Smiley, 375 F.Supp.2d 19, 21-22 (D.Conn., June 24, 2005).

**ARGUMENT**

**I.  This Court should not reconsider and reverse its proper ruling that portions of Forbes' prior testimony identified by the Government should be admitted at the retrial.**

> **a.  Forbes' claim that the Government is offering Forbes' prior testimony merely to impeach Forbes is incorrect and meritless to boot.**

Forbes' present arguments should be rejected both because they present nothing new and because they are meritless on their own terms.  First, Forbes erroneously contends that the Government is improperly seeking to admit the five portions of Forbes' testimony from the first trial that were designated in Section III of the Government's Mem. in Support of its Motion *in Limine,* Docket No. 1624, filed July 21, 2005, solely to impeach Forbes.  Forbes argues that such a purpose is improper since the Government may not, in effect, present Forbes as a witness merely to impeach him.  FM 1-2.  To the contrary, none of the five designated excerpts is being offered solely to impeach Forbes.  Rather, each of the designated portions of Forbes' prior testimony is being offered to prove Forbes' knowledge of various events or facts, his criminal intent, or other aspects of his *mens rea.*  Thus, the Government is offering Forbes' prior testimony regarding his conversation with Henry Silverman around the Labor Day weekend of 1997 (Tr. 14350, 1.15 - 14364, 1.9) in order to prove Forbes' intention to retain Pember in her accounting role so that she could continue her involvement in the

3

charged accounting fraud. Likewise, the Government is offering
Forbes' prior testimony that he did not urge the Cendant
Executive Committee to retain E&Y (Tr. 14340, 1.1 - 14344, 1.24)
as evidence of his consciousness of guilt, because that testimony
will be contradicted by other Government witnesses and shown to
be a false exculpatory statement. Accordingly, the predicate for
Forbes' contention that the Government is improperly offering his
prior testimony solely for impeachment of Forbes is erroneous,
and his claim therefore collapses.

Moreover, the Government has agreed, and the Court has
ruled, that some portions of Forbes' prior self-serving testimony
from the initial trial is admissible pursuant to Fed. R. Evid.
106 because that testimony (unlike the testimony that the Court
properly excluded) is necessary to give a complete picture of the
events described in the five portions of prior testimony
designated by the Government. Any of Forbes' prior testimony
that is offered by Forbes is obviously not offered by the
Government, and is therefore subject to impeachment regardless of
the general prohibition against presenting a witness merely to
impeach.

For instance, the Court has ruled that Forbes is
entitled to admit evidence of his prior testimony regarding the
supposed "innocent" reasons why he urged Silverman to retain
Pember in her accounting role in the company following the

4

merger.  Ruling at 7-8; Tr. 13744, l.18 - 13777, 117.  The
Government will argue that Forbes' self-serving testimony
regarding his supposedly innocent reasons for seeking to retain
Pember as an accountant for the former CUC divisions, testimony
that is being offered by Forbes, not the Government, was false.[2]

Additionally, the Court has granted the Government's
motion to admit a portion of Forbes' prior testimony in which he
denied that he urged the former HFS executives to retain E&Y as
the auditors of the former CUC divisions following the merger.
Ruling at 8-9 (excluding portions of Forbes' prior testimony that
incorporates read-backs of Monaco's prior testimony, but
otherwise admitting Forbes' prior testimony on this point).  That
evidence will be offered, not for the truth of the matter

---

[2]  Forbes references in his present motion for
reconsideration, FM 2, arguments that he presented in his Reply
Memorandum in support of his Retrial Motion *in Limine* No. 4,
Docket No. 1778, filed October 3, 2005, seeking to exclude
evidence regarding Forbes' 1998 severance agreement.  There,
Forbes argued that evidence regarding his severance agreement is
inadmissible to impeach Forbes unless he testified again in the
retrial.  By offering his prior testimony from the initial trial
as evidence during the retrial, however, Forbes' is in effect
testifying at the retrial, and is subject to impeachment like any
other witness, including hearsay declarants.  Fed. R. Evid. 806;
see generally United States v. Friedman, 854 F.2d 535, 569 (2d
Cir. 1988).

Since Forbes filed his motion for reconsideration, this
Court, on October 15, 2005, granted Forbes' Retrial Motion *in
Limine* No. 4.  The Court has not ruled, however, that Forbes'
prior testimony, offered by him into evidence during the retrial,
is immune from impeachment on grounds other than by reference to
the severance agreement.

asserted, but as false exculpatory testimony, which is affirmative evidence of Forbes' consciousness of guilt.  United States v. Quiroz, 13 F.3d 505, 510 (2d Cir. 1993) ("A defendant's false exculpatory statement is admissible at trial to show his consciousness of guilt, and may be an important part of the government's proof.") (internal citations omitted), rehearing granted in part on other grounds, 22 F.3d 489 (2d Cir. 1994); United States v. Johnson, 513 F.2d 819, 824 (2d Cir. 1975) (a defendant's false exculpatory statements "are circumstantial evidence of a consciousness of guilt and have independent probative force.").

Because evidence of Forbes' false exculpatory statements is independently admissible as affirmative evidence of consciousness of guilt, that evidence does not run afoul of the rule that a witness may not be called merely as a subterfuge in order to present otherwise inadmissible evidence to impeach that witness.   See United States v. Eisen, 974 F.2d 246, 262 (2d Cir. 1992) (rejecting the defense claim that the district court improperly permitted the Government to present witnesses whose testimony exculpated the defendant in order to show that the witnesses had persisted to lie about the defendant's involvement in the charged crime; "the Government did not call these witnesses as a mere subterfuge to get before the jury evidence

6

not otherwise admissible.").[3]

> **II.  Forbes has failed to sustain his strict burden for obtaining reconsideration of this Court's rulings regarding the portions of Forbes' prior testimony that should be admitted to satisfy Fed. R. Evid. 106.**

Forbes contends that this Court erred in excluding many of Forbes' counter-designations of prior testimony, because he "did not have a previous opportunity to brief this issue because the government's objections to his counter-designations were set forth in the government's reply memorandum."  FM 4, n.1.  This is simply incorrect.  Forbes elected merely to identify in his opposition to the Government's motion *in limine* the counter-designated portions of his prior testimony for which he seeks admission in the retrial, but declined to explain, by argument or reference to caselaw, why those portions should be admitted under Fed. R. Evid. 106.  Forbes Memorandum in Opposition to United States Pretrial Motion *in Limine*, Docket No. 1653, filed August 23, 2005, at p. 12.  Nothing prevented Forbes from making in his August 23 opposition the same arguments that he now belatedly

---

[3]  Thus, cases cited by Forbes at FM 2, in which the Government improperly called witnesses whom it knew would offer exculpatory testimony, merely as a subterfuge to present evidence of the prior inconsistent (and hearsay) statements of those witnesses which inculpated the defendants, in the hope that the jury would improperly treat the prior statements not merely as impeaching but also as substantive evidence of guilt, are wholly inapplicable here.  Cf. United States v. Johnson, 802 F.2d 1459 (D.C. Cir. 1986); United States v. Webster, 734 F.2d 1191 (7th Cir. 1984); United States v. Morlang, 531 F.2d 183 (4th Cir. 1975).

raises in his October 14 reconsideration motion. Because Forbes
is merely seeking a "second bite at the apple" that was fully
available to him when he filed his opposition to the Government's
motion *in limine*, but not presenting the Court with intervening
law or facts that were unavailable to Forbes when he previously
opposed the Government's motion *in limine*, he has failed to
satisfy the strict standards for obtaining reconsideration.

Forbes also complains that the Court "did not give any
explanation for its decision" excluding most of Forbes' counter-
designations. FM 4. To the contrary, the Court identified pages
8-9 of the Government's Second Partial Reply Memorandum in
Support of Pre-Trial Motion *in Limine*, Docket No. 1709, filed
September 16, 2005, and presumably agreed with the Government's
arguments on those designated pages of the Government's brief.
Ruling 7-8. In any event, this Court should reject out-of-hand
the notion that Forbes' dissatisfaction with the depth of this
Court's explanation for its ruling somehow justifies
reconsideration.

Because Forbes has failed to meet his stringent burden
for obtaining reconsideration, this Court should deny the motion
for failure to satisfy the applicable burden. In any event,
Forbes' arguments regarding his counter-designations are
meritless on their own terms. Forbes has failed to demonstrate
that any of his proposed counter-designations are "necessary to

8

explain the admitted portion, to place it in context, or to avoid
misleading the trier of fact." United States v. Marin, 669 F.2d
73, 84 (2d Cir. 1982)(emphasis added).  Rather, Forbes repeatedly
argues that his counter-designations are necessary to rebut "the
Government's suggestions;" FM 7, or various "inferences" or
"implications." FM 7, 11.  Thus, Forbes contends that he should
be permitted to present his former testimony that he never
reviewed "cheat sheets," FM 10, even though none of Forbes' prior
testimony designated by the Government contains an admission by
Forbes that he reviewed "cheat sheets."  Although Corigliano will
testify that he reviewed cheat sheets with Forbes, Rule 106 does
not authorize the admission of a defendant's self-serving prior
testimony in order to give a complete and fair picture of the
testimony from someone other than the defendant, as opposed to
the prior testimony of the defendant himself.

        The Court properly excluded Forbes' counter-
designations because they were not sufficiently tailored to the
subjects of the Government's designations.  For instance, Forbes
now argues, FM 12, that his counter-designation regarding E&Y
that the Court disallowed (the "disallowed E&Y counter-
designation") is necessary to rebut "the government's contention
that Mr. Forbes re-raised the issue of E&Y at the January 25,
1998 Cendant Executive Committee meeting."  FM 12.  Forbes
counter-designates almost ten full pages of his prior testimony

(Tr. 13821, 1.24 - 13831, 1. 13) as supposedly necessary to rebut this contention about the January 25 meeting.  FM 12.

Monaco testified at the first trial that Forbes had urged the retention of E&Y on two occasions: during a Cendant Executive Committee meeting at the office of the Skadden, Arps law firm on January 16, 1998, Tr. 1623-26, and again during a meeting of the Cendant Audit Committee in Palm Springs on January 25, 1998, Tr. 1630-35.  Forbes' prior testimony regarding the discussions during the January 16, 1998 Executive Committee meeting about selecting an auditing firm is contained in the counter-designated testimony to which the Government did not object, and which the Court will admit if offered by Forbes.  See Government's Second Partial Reply Memorandum, p. 10, ¶ 12(a), citing Tr. 13815, 1.8 - 13821, 1.23; see particularly, Tr. 13820, 1.7 - 13821, 1.23 (Forbes' testimony about the discussion of the selection of Deloitte & Touche during the January 16 meeting).

As Forbes points out, the Government's designated prior testimony, Tr. 14340, 1.1 - 14344, 1.24, contains Forbes' denial that he urged retention of E&Y at the January 25 meeting.  Tr. 14340, 1. 23 - 14341, 1.7.  Nothing in the disallowed E&Y counter-designation, however, is necessary to give a fair and complete picture of Forbes' prior testimony about E&Y.  Moreover, the disallowed E&Y counter-designation contains extensive inadmissible testimony about other matters.  Thus, Forbes testified about an Audit Committee meeting on January 20, 1998

that Forbes admittedly <u>did not</u> even attend.  Tr. 13822, l.1 -
13823, l.4.  Forbes also testified about a January 20, 1998
letter from Deloitte & Touche to Monaco which, for all the record
reveals, Forbes did not receive.  Tr. 13823, l.5 - 13824, l.2.
Forbes then testified at some length about Cendant's January 22,
1998 Form 8K, including the fact that E&Y had previously given
"clean" audit opinions of CUC's financial statements during the
previous two years.  Tr. 13824, l.3 - 13827, l.10.  The
disallowed E&Y counter-designation concludes with Forbes'
testimony about a February 3, 1998 Cendant Audit Committee
meeting that Forbes again admittedly <u>did not</u> attend.  Tr. 13830,
l.12 - 13831, l.13.  None of the foregoing testimony contradicts
Monaco's testimony that, during the January 16 and 25 meetings,
Forbes urged the retention of E&Y, or is otherwise necessary to
give a fair and complete picture of Forbes' prior testimony about
his efforts to retain E&Y.

Forbes' only testimony regarding the January 25, 1998
Executive Committee meeting in the disallowed E&Y counter-
designated was as follows:

> Q: Turn to Tab F.  There you'll find Defendants' Exhibit
> 1,307.  And what is this, sir?
>
> A.  This is minutes of an Executive Committee meeting that
> was held on January 25th, 1998.
>
> Q.  And were you present at that meeting?
>
> A.  Yes, I was.

Q.   Was there any discussion reflected in the minutes of
that meeting about the selection of a new auditor for
Cendant?

A.   There was not.

Tr. 18329, l. 5-15.

Thus, Forbes merely testified that he was present at
the January 25 Executive Committee meeting (which corroborates,
rather than contradicts Monaco's testimony on that point) and
characterizes a document, DX 1307, that was admitted into
evidence.  Forbes' testimony, however, is not needed to
characterize that document, since the document speaks for itself
on that point.  Contrary to Forbes' contention, the ten page
disallowed E&Y counter-designation is not needed to rebut
Monaco's testimony that Forbes urged the retention of E&Y during
the January 25 meeting, and this Court should not reconsider and
reverse its prior ruling on that point.

Finally, Forbes argues that the thirteen page prologue
to his direct examination at the initial trial, Tr. 13537, l.1 -
13549, l.5, in which Forbes denies that he was involved in any of
the fraudulent conduct at issue in this case, because that prior
testimony "addresses the totality of the testimony designated by
the Government."  FM 13.  That counter-designation goes far
beyond the very limited portions of Forbes' prior testimony
designated by the Government.  Rather, as Forbes concedes, it
contains "Mr. Forbes' clear and unequivocal denials of guilt,

12

<u>including</u> denials regarding specific matters as to which the Government wants inferences to be drawn." <u>Id.</u> (emphasis added). Forbes is therefore admittedly seeking the admission of his own prior, self-serving testimony which is <u>not</u> limited to the subjects addressed in the Government's designated testimony, but effectively extends to all of the evidence, from whatever source, that implicates Forbes in the charged crimes. This is simply not the purpose of Rule 106, as the Court properly concluded when it denied Forbes' request to admit this blanket denial of guilt. Forbes' motion to reconsider the exclusion of his cross-designated prior testimony should be rejected.[4]

---

[4] <u>United States v. Walker</u>, 652 F.2d 708 (7th Cir. 1981), cited by Forbes, is readily distinguishable. There, the district court admitted during the retrial, at the Government's request, portions of the defendant's testimony from the first trial at which the jury had been hung, and excluded from the retrial other portions of the defendant's prior testimony offered by the defendant. Much of the defendant's excluded prior testimony pertained to a particular conversation on July 7, 1979 between the defendant and an informant during which the defendant allegedly accepted a bribe from the informant. The admitted prior testimony pertained largely to that conversation. 652 F.2d at 711-13. Other excluded testimony "explained statement already admitted into evidence." <u>Id.</u> at 713. Here, Forbes seeks the admission of his prior testimony that goes far beyond any particular conversations involving Forbes or any of Forbes' statements that are addressed in the Government's designated portions of Forbes' prior testimony.

III. Although Forbes accurately points out that the
Government misidentified the defense attorney who improperly
cross-examined Corigliano during the initial trial about
whether or not Corigliano believed that he had committed
insider trading, Forbes does not challenge this Court's
ruling that such cross-examination may not be repeated
during the retrial.

Forbes accurately points out, FM 14, that the
Government misidentified Forbes' counsel as the defense attorney
who engaged in the cross-examination of Corigliano quoted at pp.
15-16 of the Government's Second Partial Reply Memorandum; Tr.
8937-38 and 8944-46.  As Forbes accurately points out, the quoted
cross-examination was undertaken by Thomas Puccio, one of the
lawyers for Kirk Shelton at the initial trial.  The Government's
misidentification was inadvertent, and certainly was not intended
to mislead the Court or the defense.  The Government apologizes
to the Court and opposing counsel for any misunderstanding or
inconvenience that it may have caused.

Forbes does not contend in this motion for
reconsideration, however, that Puccio's quoted cross-examination
was proper and should be permitted at the retrial.  Forbes
suggests that his cross-examination of Corigliano in this area
will be "limited . . . to the facts underlying Mr. Corigliano's
trades, and in particular whether Mr. Corigliano used his inside
information when selling stocks for millions of dollars."  FM 14.
If that is the case, then the Government will not object to that
line of cross-examination.

14

The Government notes, however, that during the initial trial, counsel for Forbes did cross-examine Corigliano about his understanding of insider trading, and whether he intended to deny that he had committed insider trading.[5]  The Government

---

[5]  The pertinent exchange is as follows:

Q [by Brendan Sullivan].  Isn't it part of your strategy developed at that time that you were going to deny wrongdoing?

A [by Corigliano]. Well, I didn't think of it as strategy. I was just still scared, still didn't -- wanted to make it go away, didn't want to go to jail.  So I didn't think of it as a strategy.  I was just still scared.

Q. You didn't think of it as a strategy, but forget the word "strategy" for a moment.  You knew the way you were going to deal with the problem in the scared condition you were in was to deny wrongdoing, correct?

A. I was going to continue to deny wrongdoing.

Q. **Secondly, you were going to deny insider trading; am I correct?**

A. Well, I don't believe -- I never did any insider trading.

Q. You never did?

A. No.

Q. Up until today?

A. Yes.

Q. In other words, on your seventh day of testimony – **do you know what insider trading is?**

A. I had the information.  I didn't use it to trade my shares.

Q. Okay.  Just traded your shares and blocked it out?
(continued...)

respectfully requests that, consistent with the Court's ruling on Part 5 of the Government's Motion *in Limine* No. 1, Forbes be precluded from cross-examining Corigliano during the retrial about his understanding of the legal concept of insider trading, or whether he engaged in insider trading.

### CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court deny Forbes' Motion for Reconsideration.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
Special Attorney
U.S. Department of Justice

By: NORMAN GROSS
MICHAEL MARTINEZ
CRAIG CARPENITO
Special Attorneys
U.S. Department of Justice

Dated: ~~October 17~~, 2005
      11/13/05
      Hartford, New Jersey

---

[5](...continued)
A. As I said before, when I was trading my shares, it was a personal decision.

Tr. 7597-98.

16

CERTIFICATE OF SERVICE

The undersigned certifies that on this day I caused to
be served copies of the foregoing upon the following via email
and hand delivery upon:

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 2005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (E-mail)

DEBRA ELLIOTT
U.S. Department of Justice
Craig Carpenito

Dated: ~~October 17, 2005~~ November 13, 2005
       Hartford, Connecticut