# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,    )
    )
    )    No. 3:02CR264 (AWT)
    v.    )
    )
WALTER A. FORBES    )    November 15, 2005
    )
    )

# OBJECTIONS OF WALTER FORBES TO GOVERNMENT'S REQUEST TO CHARGE FOR RETRIAL

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

OBJECTIONS TO DEFINING THE ALLEGED FRAUD MORE
    BROADLY THAN THE INDICTMENT ....................................................... 2

OBJECTIONS TO FAILURE TO INSTRUCT ON GENERALLY
    ACCEPTED ACCOUNTING PRINCIPLES ................................................ 6

OBJECTIONS TO FAILURE TO GIVE MISSING WITNESS
    INSTRUCTION .......................................................................................... 11

OBJECTIONS TO REPEATED CHARGE ON CONSCIOUS AVOIDANCE ........... 12

OBJECTIONS TO REPEATED CHARGE ON PROOF OF INTENT ..................... 17

OBJECTIONS TO REQUEST NO. 1 (Introduction) .................................................. 19

OBJECTIONS TO REQUEST NO. 4 (Failure to Name a Defendant) ...................... 20

OBJECTIONS TO REQUEST NO. 11 (Possible Punishment) ................................. 22

OBJECTIONS TO REQUEST NO. 12 (Overview) ..................................................... 23

OBJECTIONS TO REQUEST NO. 14 (The Indictment and the Statute) ................ 24

OBJECTIONS TO REQUEST NO. 15 (Elements of the Offense) ............................ 26

OBJECTIONS TO REQUEST NO. 16 (First Element – Existence of
    Unlawful Agreement) ................................................................................. 28

OBJECTIONS TO REQUEST NO. 17 (Second Element – Membership in
    the Conspiracy) ......................................................................................... 32

OBJECTIONS TO REQUEST NO. 18 (Knowingly and Willfully) ............................. 34

OBJECTIONS TO REQUEST NO. 19 (Conscious Avoidance) ................................. 37

OBJECTIONS TO REQUEST NO. 20 (Requisite Intent) .......................................... 38

OBJECTIONS TO REQUEST NO. 21 (Requisite Intent) .......................................... 40

OBJECTIONS TO REQUEST NO. 22 (Third Element – Commission of
    Overt Act) .................................................................................................. 41

OBJECTIONS TO REQUEST NO. 23 (Fourth Element – Commission of
    Overt Act in Furtherance of the Conspiracy) ........................................... 42

OBJECTIONS TO REQUEST NO. 24 (The Indictment and the Statute) ................ 43

OBJECTIONS TO REQUEST NO. 25 (Elements of the Offense) ............................ 44

OBJECTIONS TO REQUEST NO. 26 (First Element – False Statement of
    Fact in SEC Report) ................................................................................. 45

OBJECTIONS TO REQUEST NO. 27 (Second Element – Materiality) ................... 47

i

OBJECTIONS TO REQUEST NO. 28 (Third Element – Made or Caused
    to Be Made) ................................................................................. 49

OBJECTIONS TO REQUEST NO. 29 (Fourth Element – Knowingly,
    Willfully and With Intent to Deceive) ............................................... 50

OBJECTIONS TO REQUEST NO. 30 (Conscious Avoidance) .................................. 52

OBJECTIONS TO REQUEST NO. 31 (The Indictment and the Statute) ............... 53

OBJECTIONS TO REQUEST NO. 32 (Elements of the Offense) ........................... 55

OBJECTIONS TO REQUEST NO. 33 (First Element – Fraudulent Act) ............... 58

OBJECTIONS TO REQUEST NO. 34 (Second Element – In Connection
    With) ............................................................................................ 65

OBJECTIONS TO REQUEST NO. 35 (Third Element – Use of a Means or
    Instrumentality of Interstate Commerce) ......................................... 66

OBJECTIONS TO REQUEST NO. 36 (Fourth Element – Knowingly,
    Willfully and with the Intent to Defraud) ......................................... 67

OBJECTIONS TO REQUEST NO. 37 (Aiding and Abetting) .................................. 69

OBJECTION TO REQUEST NO. 39 (Use of Conjunctive in the
    Indictment) ................................................................................... 72

OBJECTIONS TO REQUEST NO. 41 (Evidence in this Case) ............................... 73

OBJECTIONS TO REQUEST NO. 43 (Acts and Declarations of Alleged
    Co-Conspirators) ............................................................................ 74

OBJECTIONS TO REQUEST NO. 45 (Evidence Concerning the Cendant
    Restatement) ................................................................................. 75

OBJECTIONS TO CHARGE NO. 46 (Mr. Corigliano's Testimony
    Regarding a Certain Statement by Mr. Silverman) .......................... 76

OBJECTIONS TO CHARGE NO. 47 (Mr. and Mrs. Davidson's
    Employment) ................................................................................. 77

OBJECTIONS TO REQUEST NO. 50 (Persons Not Called As Witnesses) ............. 78

OBJECTIONS TO REQUEST NO. 51 (Use of Particular Investigative
    Techniques or Witnesses) ............................................................... 79

OBJECTIONS TO REQUEST NO. 52 (Credibility of the Witnesses) ..................... 81

OBJECTIONS TO REQUEST NO. 53 (Prior Inconsistent Statement) ................... 82

OBJECTIONS TO REQUEST NO. 54 (Uncontradicted Testimony) ....................... 83

OBJECTIONS TO REQUEST NO. 56 (Testimony of Expert Witnesses) ................ 84

OBJECTIONS TO REQUEST NO. 58 (Not Proper to Consider Guilty Plea
    of Government Witness) ................................................................. 85

OBJECTIONS TO REQUEST NO. 62 (Defendant's Testimony from a
 Prior Proceeding) ............................................................................86

OBJECTIONS TO REQUEST NO. 63 (Procedures You Must Follow)......................87

OBJECTIONS TO REQUEST NO. 64 (Notes) ............................................................88

OBJECTIONS TO REQUEST NO. 66 (Exhibits and Testimony; Use of the
 Indictment) ....................................................................................89

ADDITIONAL OBJECTIONS ....................................................................................90

## INTRODUCTION

Mr. Forbes, through undersigned counsel, respectfully submits his objections to the government's proposed jury instructions.

## OBJECTIONS TO DEFINING THE ALLEGED FRAUD MORE BROADLY THAN THE INDICTMENT

1.     Mr. Forbes objects to the government's proposed instructions because they define the alleged fraud more broadly than the indictment. See Proposed Instructions 31, 32, 33. Although there are various types of fraud that can be alleged and proven under the securities fraud statute, only one type of fraud is alleged in Counts 1-4 of the indictment—the alleged dissemination of materially false financial information in specific SEC filings, annual reports, and press releases. However, the government's proposed instructions and the government's presentation of the case invite the jury to convict Mr. Forbes for other types of alleged fraud that are not charged in this case. This is an unconstitutional amendment of the indictment and/or a prejudicial variance. See, e.g., Stirone v. United States, 361 U.S. 212 (1960); United States v. Wozniak, 126 F.3d 105, 109 (2d Cir. 1997) ("A constructive amendment of an indictment is a per se violation of the Grand Jury Clause of the Fifth Amendment that requires reversal even without a showing of prejudice to the defendant." (quotation & brackets omitted)); United States v. Mollica, 849 F.2d 723, 729 (2d Cir. 1988) ("In light of the current broad range of conduct covered by the federal fraud statutes, it is critical that courts vigilantly enforce the Fifth Amendment requirement that a person be tried only on the charges contained in the indictment returned by the grand jury." (quotation omitted)). The Court's instructions should clearly define the fraud to involve only the alleged dissemination of materially false financial information in specific SEC filings, annual reports, and press releases, and, in instructing the jury on the

- 2 -

requirement of unanimity, should identify the particular false statement(s) at issue in each count.

      2.     Count 4 of the indictment is predicated solely on alleged false statements. Count 4 does not identify the substance of the alleged fraud, but states that the "substance" of the alleged fraud is set forth in paragraphs 18 through 63 of Count 1. See Indict., Count 4 ¶ 3. Paragraphs 18 through 63 of Count 1 allege that Mr. Forbes was responsible for various purported accounting irregularities that resulted in the alleged fraudulent overstatement of CUC's and Cendant's financial results. Those paragraphs further allege that Mr. Forbes caused these allegedly overstated financial results to be reported to the SEC and to the investing public in periodic filings with the SEC and in press releases. These paragraphs of the indictment identify the following specific SEC filings and press releases, which allegedly contained false statements—(1) a March 19, 1996 CUC press release; (2) an April 25, 1996 CUC Form 10-K; (3) a March 11, 1997 CUC press release; (4) a May 1, 1997 CUC Form 10-K; (5) a December 15, 1997 CUC Form 10-Q; (6) a February 4, 1998 Cendant press release; (7) a March 31, 1998 Cendant Annual Report; and (8) a March 31, 1998 Cendant Form 10-K. Indict., Count 1 ¶¶ 63(a)-(e) & (m)-(o). Thus, the indictment charges only false statements, not some other device, scheme, or artifice to defraud; not omissions; and not some other transaction, practice, or course of business that would operate as a fraud. The government effectively concedes that the substance of the alleged securities fraud consisted of the purported making of materially false statements in the particular

SEC filings and press releases identified in the indictment.  See United States

Opp'n Forbes Mot. Mistrial Due to Constructive Amendment (filed July 30, 2004) at

33 ("Forbes was entitled to disclosure of the particular public filings or press

releases by CUC or Cendant that were materially false or misleading, but not to

each and every non-public statement or omission which made those public filings

and statements false or misleading.  No bill of particulars was needed for that

purpose, since the indictment identified in exacting detail the particular public

filings and press releases of CUC and Cendant which contain false and misleading

information."); see also Gov't Response to Preliminary Proposed Jury Instructions

(filed Oct. 8, 2004) at 27 ("The Government does not oppose a properly worded

instruction that, in order to convict a defendant for securities fraud, the jury must

unanimously agree on at least one materially false or misleading statement.").

      3.    The government's proposed instructions on securities fraud

nevertheless define the fraud to encompass more than false statements.  For

example, Request No. 33 instructs the jury on "omission[s]," "device[s]," "scheme[s],"

"artifice[s]," and "trick[s]."  Moreover, the proposed instructions on count 4 do not

identify the alleged false statements at issue, but instead invite the jury to convict

Mr. Forbes for whatever they each deem the fraud to be.  The proposed instructions

on counts 2-3 do not identify the manner in which each alleged false statement is

alleged to be false.  An instruction on the alleged false statements at issue and the

manner in which they are alleged to be false is necessary to ensure that Mr. Forbes

is tried only on the charges in the indictment, that the jury unanimously agrees on

the same alleged false statement, and that the jury conducts a proper evaluation of materiality.

        4.      The government has also invited the jury to convict Mr. Forbes for alleged frauds that are not charged in the indictment. For example, Mr. Kernkraut testified that CUC falsified its membership numbers, an allegation not made in the indictment. In light of this evidence, it is critical that the jury be carefully instructed about what fraudulent conduct must actually be proven. The government's proposed charge fails to do so.

## OBJECTIONS TO FAILURE TO INSTRUCT ON GENERALLY ACCEPTED ACCOUNTING PRINCIPLES

Mr. Forbes objects to the government's proposed instructions because they lack any instructions on generally accepted accounting principles ("GAAP") and on the interaction between GAAP and the elements of falsity and intent. See Forbes Instr. Nos. 29, 36, 50, 56, 66, 72.

1.    The government must prove GAAP violations because all of the substantive charges in the indictment are predicated upon GAAP violations. A failure to provide GAAP instructions would constitute a constructive amendment and/or a prejudicial variance. The indictment alleges that CUC and Cendant failed to comply with GAAP in accounting for merger reserves, membership cancellation reserves, revenue recognition, and other items <u>and that as a result CUC and Cendant fraudulently inflated their financial results</u> by specific amounts. See, e.g., Indict., Count 1 ¶¶ 31-33 (alleging GAAP standards for merger reserves, i.e., that reserve must be based on good faith estimate of one-time merger costs), 35-36 (alleging that Ideon reserve did not comply with standards set forth in paragraphs 31-33, i.e., that it was not based on a good faith estimate of one-time merger costs), 39-40 (alleging that Cendant reserve did not comply with standards set forth in paragraphs 31-33, i.e., that it was not based on a good faith estimate of one-time merger costs), 42-43 (alleging that treatment of merger reserves violated "GAAP" and that as a result CUC and Cendant fraudulently overstated operating income in the specified amounts), 47-48 (alleging that treatment of membership cancellation reserve violated "GAAP" and that as a result CUC and Cendant fraudulently

overstated earnings in the specified amounts), 52-53 (alleging that allocation between deferred and immediate revenue recognition programs violated "GAAP" and that as a result CUC and Cendant fraudulently overstated earnings in the specified amounts), 55-59 (alleging that other accounting entries violated "GAAP" and that as a result CUC and Cendant fraudulently overstated earnings).  These allegations are incorporated in each substantive count of the indictment.  See Indict., Counts 2-4 ¶ 1.  Moreover, these alleged GAAP violations, which purportedly resulted in overstated financial results, are alleged to be the substance of the purported fraud charged in Count 4.  See Indict. Count 4 ¶ 1.  Having charged that CUC's and Cendant's operating results were overstated because of the alleged GAAP violations, the government cannot now amend the indictment.

      2.     The government must prove that a GAAP violation occurred to establish falsity, which is an essential element of the substantive charges in the indictment.  The specific purportedly false statements charged in the indictment consist of financial figures contained in CUC's and Cendant's SEC filings, annual reports, and press releases.  See, e.g., United States Opp'n Forbes Mot. Mistrial Due to Constructive Amendment (filed July 30, 2004) at 33 ("Forbes was entitled to disclosure of the particular public filings or press releases by CUC or Cendant that were materially false or misleading, but not to each and every non-public statement or omission which made those public filings and statements false or misleading.  No bill of particulars was needed for that purpose, since the indictment identified in exacting detail the particular public filings and press releases of CUC and Cendant

- 7 -

which contain false and misleading information."). The truth or falsity of these

figures cannot be determined by comparison to the objective truth as in a false

statement case in which a government contractor is charged with falsely stating

that it paid $500,000 for supplies when, in fact, it paid $5,000 for the supplies. Nor

can the truth or falsity of these figures be determined by application of a

mathematical formula. The truth or falsity of these figures is determined by

reference to GAAP. Indeed, according to the securities laws, GAAP is the standard

by which the accuracy of financial statements filed with the SEC is measured. See

Regulation S-X, 17 C.F.R. § 210.4-01(a)(1) ("Financial statements filed with the

Commission which are not prepared in accordance with generally accepted

accounting principles will be presumed to be misleading or inaccurate . . . ."). 

Because falsity is an element of the substantive offenses, and because falsity turns

on non-compliance with GAAP, the government must establish non-compliance with

GAAP.[1]

---

[1]      The Second Circuit's holding in United States v. Simon, 425 F.2d 796 (2d Cir. 1969), that compliance with GAAP is not a "complete defense" in a securities fraud case predicated on purportedly false accounting should not control. First, Simon predates the revision of Regulation S-X on September 25, 1980, in which the SEC promulgated the rule adopting GAAP as the standard by which to judge the accuracy of financial statements. See 17 C.F.R. § 210.4-01(a)(1). Second, Simon predates the establishment of the Financial Accounting Standards Board, and the promulgation of a substantial body of standards for financial accounting to guide the accounting profession. Third, if there is no established set of rules by which to determine the truth or falsity of accounting, a prosecution based on allegedly false accounting would violate fundamental principles of fair notice. If not to GAAP, where could an individual who wanted to comply with the law look to guide his behavior? According to the government's theory, the individual would have nowhere to look, but would have to rely upon prosecutors and juries to determine,

3.      Because GAAP is not a mathematical formula, but requires judgments and estimates, the question of falsity involves an interpretive question.[2] When the question of falsity involves an interpretive question, the government must prove beyond a reasonable doubt that the statement was false under any reasonable interpretation. See, e.g., United States v. Whiteside, 285 F.3d 1345, 1351 (11th Cir. 2002) ("In a case where the truth or falsity of a statement centers on an interpretive question of law, the government bears the burden of proving beyond a reasonable doubt that the defendant's statement is not true under a reasonable interpretation of the law."); United States v. Migliaccio, 34 F.3d 1517, 1525 (10th Cir. 1994) (government must "negate any reasonable interpretations that would make a defendant's statement factually correct where reporting requirements are ambiguous"); United States v. Gahagan, 881 F.2d 1380, 1384 (6th Cir. 1989); United States v. Race, 632 F.2d 1114, 1120 (4th Cir. 1980); United States v. Anderson, 579 F.2d 455, 460 (8th Cir. 1978).

4.      The government must prove that Mr. Forbes knew that the reported financial results violated GAAP to establish knowledge of falsity, which is

---

long after the fact, what the accounting figures should have been based on whatever standards they deem appropriate.

[2]      The government's 2004 summation suggested incorrectly that GAAP is akin to a mathematical formula. See Tr. (10/18/04) at 14833 ("2 plus 2 equals 4. Not so hard."); id. at 14835 ("2 plus 2 is 4 until Stu Bell and Walter Forbes got involved."); id. at 14858 ("He has a calculator and a computer and with that you can do anything."); id. at 14862 ("two plus two wasn't four anymore"). This type of argument underscores the need for jury instructions on GAAP.

an essential element of the charges in the indictment. To satisfy this burden, the government must prove knowledge of a GAAP violation.

5.    There is an evidentiary basis for Mr. Forbes' proposed instructions on the interaction between GAAP and the elements of falsity and intent. See Tr. (10/19/05) at 489-95; see also Indict., Count 1 ¶¶ 31-33 (alleging GAAP standards for merger reserves, i.e., that reserve must be based on good faith estimate of one-time merger costs), 35-36 (alleging that Ideon reserve did not comply with standards set forth in paragraphs 31-33, i.e., that it was not based on a good faith estimate of one-time merger costs).

6.    There is also a basis for the requested instruction defining GAAP and the instructions which state that there is not always a right answer under GAAP. As the Supreme Court has recognized: "[f]ar from a single-source accounting rulebook, GAAP encompasses the conventions, rules, and procedures that define accepted accounting practice at a particular point in time. GAAP changes and, even at any one point, is often indeterminate. The determination that a particular accounting principle is generally accepted may be difficult because no single source exists for all principles." Shalala v. Guernsey Mem'l Hosp., 514 U.S. 87, 101 (1995) (internal quotation & citation omitted) (emphasis added). Testimony supports this point. See, e.g., Tr. (10/19/05) at 496-502.

## OBJECTIONS TO FAILURE TO GIVE MISSING WITNESS INSTRUCTION

Mr. Forbes objects to the omission of a missing witness instruction from the government's proposed instructions.  <u>See</u> Forbes Instr. No. 11.1; <u>see also</u> Forbes Retrial Motion No. 7.

## OBJECTIONS TO REPEATED CHARGE ON CONSCIOUS AVOIDANCE

Mr. Forbes objects to the government's proposed conscious avoidance instructions and to the incorporation of that instruction into the instruction on the mental state required for Count 4. See Request Nos. 19, 30, 36. The proposed instructions concerning conscious avoidance constitute a constructive amendment of the indictment and/or a prejudicial variance. The indictment unequivocally alleges that Mr. Forbes directed the alleged fraud and directed the improper accounting that constituted the alleged fraud. See, e.g., Indictment, Count 1, ¶ 24 ("If the consolidated quarterly earnings failed to meet the earnings target, defendant FORBES directed other conspirators to increase the earnings figure so that it met or exceeded that target" (emphasis added)); id., ¶ 27 ("defendant WALTER A. FORBES directed other conspirators to increase the consolidated earnings figures for th[e] quarter and the fiscal year by the amounts necessary to meet or exceed their respective earnings targets for that quarter and fiscal year" (emphasis added)). Conscious avoidance is irreconcilable with knowing direction. The indictment also alleges actual knowledge of improper accounting on the part of Mr. Forbes and active participation in improper accounting by Mr. Forbes -- not willful blindness. See, e.g., Indictment, Count 1, ¶ 47 ("As Mr. Forbes knew, there was no justification in fact, or under GAAP, for their treatment of this membership cancellation reserve." (emphasis added)); id., ¶ 51 ("defendant WALTER A. FORBES and his co-conspirators deliberately misallocated revenue generated from deferred recognition programs to immediate recognition programs" (emphasis

added)); id., ¶ 52 ("As Mr. Forbes knew, there was no justification in fact or under GAAP for the misallocations set forth in paragraph 51" (emphasis added)); id., ¶ 59 ("Mr. Forbes and his co-conspirators committed these acts knowing and intending that: a) that [sic] these fraudulent acts would ultimately be reflected in CUC's and Cendant's financial statements and public filings with the SEC; (b) CUC's and Cendant's financial statements would falsely overstate CUC's and Cendant's earnings; and (c) the investing public would rely upon such overstated earnings."). Conscious avoidance is fundamentally inconsistent with active, knowing, intentional participation in accounting manipulations, as alleged in the indictment. Consequently, any instruction on that subject would constitute a constructive amendment of the indictment and/or a prejudicial variance.

1.     The government has repeatedly argued, consistent with the indictment, that Mr. Forbes directed the alleged fraud and actively and intentionally participated in it. The arguments advanced by the government—that Mr. Forbes directed the fraud, and was actively and intentionally engaged in fraudulent accounting—are fundamentally inconsistent with the notion of conscious avoidance. Under these circumstances, a jury instruction on conscious avoidance is unwarranted and will confuse the jury.

2.     There is not an adequate evidentiary basis for a conscious avoidance instruction as to Mr. Forbes—that Mr. Forbes was aware of a high probability of a fact but consciously avoided confirming that fact. The government presented no evidence of conscious avoidance by Mr. Forbes and the "evidence" of

knowledge and direction by Mr. Forbes was—except for Mr. Corigliano's false and misleading testimony—non-existent. When there is only "equivocal evidence" of actual knowledge and "no evidence" of conscious avoidance, a conscious avoidance instruction could improperly lead a jury to convict merely because the defendant "had not tried hard enough to learn the truth." United States v. Ferrarini, 219 F.3d 145, 157 (2d Cir. 2000). For this reason as well, a conscious avoidance charge is unwarranted in this case.

        3.    The Court will give an instruction on actual knowledge, and the government contends that there is sufficient evidence to support a finding of actual knowledge. Generally, "when the evidence supports a finding that the defendant had either actual knowledge or no knowledge, it is error to give a conscious avoidance instruction." 1 Leonard B. Sand, Modern Federal Jury Instructions, 3A-15 (emphasis added); see also Ferrarini, 219 F.3d at 157 ("We conclude that the evidence does not establish the requisite factual predicate for the charge. The evidence shows that Vieira actually knew of the frauds; it is not sufficient to permit a finding that he consciously avoided confirming them.").

        4.    The placement of the initial conscious avoidance instruction in the proposed conspiracy instruction is confusing and misstates the law. See Request No. 19. Conscious avoidance cannot be considered with respect to whether the defendant knowingly intended to participate in the alleged conspiracy. See Ferrarini, 219 F.3d at 154-55. Nowhere does the instruction clarify that there "are two aspects of knowledge involved in a conspiracy: 1) knowing participation or

- 14 -

membership in the scheme charged and 2) some knowledge of the unlawful aims and objectives of the scheme," and that "[c]onscious avoidance may not be used to support a finding as to the former." Id. (quotation omitted).

5.    The placement of the incorporating conscious avoidance instructions adjacent to an incorporating instruction on good faith is confusing and improper. See Request No. 36. Good faith is relevant to all applicable mental states because it negates knowledge, willfulness, and intent. In contrast, conscious avoidance is relevant only to some components of knowledge insofar as it serves as a proxy for knowledge. Conscious avoidance is not relevant to, and is not a proxy for, willfulness or intent.

6.    Mr. Forbes objects to repeating the conscious avoidance instruction in the instruction on the required mental states for each of the charged offenses. The government previously agreed that the charge could be given once and need not be repeated or incorporated by reference each time instructions on mental states are given. See Tr. (10/15/04) at 14675-76.

7.    Mr. Forbes objects to the sentence: "However, if you conclude that Mr. Forbes actually believed that CUC's and Cendant's publicly reported financial results were not materially false or fraudulently inflated, he should be acquitted," Request No. 30, because it impermissibly dilutes and shifts the burden of proof. Mr. Forbes objects to the failure to use the following language after the word "inflated": "(or if you have a reasonable doubt as to whether Mr. Forbes actually believed that CUC's and Cendant's publicly reported financial results were

not materially false or fraudulently inflated)." Mr. Forbes also objects to the words "he should be acquitted," and requests that the words "he must be acquitted" be substituted in their place. The jury should be instructed that it must acquit Mr. Forbes if it has a reasonable doubt with respect to whether Mr. Forbes actually believed that CUC's and Cendant's publicly reported financial results were not materially false or fraudulently inflated.