## <u>PROPOSED JURY INSTRUCTION NO. 14.1</u>
(Alleged Co-Conspirator's State of Mind or Intent)

I instruct you that any testimony you heard from witnesses Cosmo Corigliano, Anne Pember, or Kevin Kearney as to his or her beliefs, understandings, intent, or state of mind may be considered only with respect to the question of whether a conspiracy existed among two or more people to fraudulently inflate financial results during the period between the late 1980's and April 1998.

You may not consider this testimony at all with respect to the question of whether Mr. Forbes was a knowing and willful participant in the alleged conspiracy or whether Mr. Forbes knowingly and willfully engaged in any wrongdoing.

Court's Limiting Instr.  (Tr. 1115-16).

## PROPOSED JURY INSTRUCTION NO. 15
(Acts and Statements After April 15, 1998)

I instruct you that any evidence of acts, omissions, declarations, or statements by any government witness that took place after April 15, 1998 was presented for the limited purpose of your evaluation of the credibility of certain witnesses called by the government.  It may only be considered by you for that limited purpose.  You may not consider that evidence for any other purpose.

O'Malley, § 11.09 (modified); Fed. R. Evid. 801(d)(2)(E); Grunewald v. United States, 353 U.S. 391, 411-14 (1957).

## PROPOSED JURY INSTRUCTION NO. 15.1

(Accounting Matters Not To Be Considered—Pre-1995 Time Period)

Certain witnesses testified about accounting manipulations in the time period before January 1, 1995. You should not consider any testimony about this time period as any evidence of wrongful or improper conduct by Mr. Forbes.

You also are instructed to disregard any testimony you heard with respect to alleged wrongdoing by Mr. Stuart Bell. I have stricken all such testimony from the record. You may not consider any testimony about Mr. Bell as any evidence of wrongful or improper conduct by Mr. Forbes, and you should strike it from your notes.

I further instruct you that Government Exhibit Numbers [any exhibits relating to the period before 1/1/95] are stricken. You may not consider these exhibits or any testimony about these exhibits in any way as evidence in the case.

See Forbes Retrial Motion *In Limine* Nos. 3, 23; Forbes Retrial Motion Nos. 7, 15. This instruction is especially necessary because the government improperly elicited testimony from Mr. Kernkraut that it was a fact that there were accounting irregularities before January 1, 1995.

## <u>PROPOSED JURY INSTRUCTION NO. 15.2</u>

(Matters Not To Be Considered—Membership Numbers/Membership Renewal
Rates)

Steven Kernkraut testified about allegedly false representations

concerning CUC's membership numbers and membership renewal rates.  I instruct

you that there was no factual basis for Mr. Kernkraut's testimony on those

subjects.  I further instruct you that Mr. Kernkraut has no personal knowledge

about those subjects and that it was improper for the government to elicit testimony

from Mr. Kernkraut on those subjects.  I further instruct you that there is no

evidence at all that the membership numbers reported by CUC or Cendant were

false or inflated in any respect and that there is no evidence at all that the

membership renewal rates reported by CUC or Cendant were false or inflated in

any respect.  I instruct you to disregard and strike from your notes all of the

testimony you heard from Mr. Kernkraut on the subject of CUC's membership

numbers and CUC's membership renewal rates.  You may not consider that

testimony in any way as evidence in the case.

<u>See</u> Forbes Retrial Motion No. 15.

## PROPOSED JURY INSTRUCTION NO. 15.2.1

(Matters Not To Be Considered—Mr. Kernkraut's Testimony About What He
Supposedly Learned After April 15, 1998)

Steven Kernkraut testified and gave opinions about matters he

supposedly learned on or after April 15, 1998, the day that Cendant announced

alleged accounting irregularities, and he testified and gave opinions about how such

information would have affected his earlier analyst reports.  I instruct you that Mr.

Kernkraut's testimony on those subjects was improperly elicited by the government

and was unreliable and in many respects inaccurate.  I instruct you to disregard all

of the testimony you heard from Mr. Kernkraut regarding matters he supposedly

learned on or after April 15, 1998, and all opinions or testimony that he provided

based on such matters.  You may not consider that testimony in any way as

evidence in the case, and you should strike all such testimony from your notes.

See Forbes Retrial Motion No. 15.

## **PROPOSED JURY INSTRUCTION NO. 15.3**
### (Matters Not To Be Considered—Wealth)

You have heard testimony about the wealth and compensation of Mr.

Forbes.  I instruct you that it is improper for you to consider any personal feelings

that you may have about the wealth, compensation, lifestyle, or other

characteristics of the parties.  All defendants, no matter what their personal

characteristics may be, are entitled to the presumption of innocence, and the

government always has the burden of proof.


See United States v. Stahl, 616 F.2d 30, 32 (2d Cir. 1980) (reversing conviction
because government aroused "prejudice against the defendant because of his
wealth" despite "curative instructions against drawing adverse inferences from the
defendant's wealth or social status").

## PROPOSED JURY INSTRUCTION NO. 15.4
(No Respondeat Superior Liability)

You have heard testimony that Mr. Forbes was a senior executive at CUC and Cendant. I instruct you that you may not vote to convict Mr. Forbes based on the positions that he held at CUC and Cendant.

A defendant who is an officer, director, or employee of a corporation is not criminally responsible for the alleged acts of his subordinates merely because the defendant held a senior position with the corporation. Therefore, it is not enough for the government to prove that alleged accounting irregularities occurred at CUC and Cendant and that Mr. Forbes held senior positions. Nor is it enough for the government to prove that one or more alleged wrongdoers reported to Mr. Forbes. The law requires more. As I will explain in further detail, the government must prove beyond a reasonable doubt that Mr. Forbes knowingly and willfully participated in the alleged fraud with the specific intent to defraud.

Furthermore, you may not infer that Mr. Forbes, based solely on his positions at CUC and Cendant, had any knowledge of the alleged accounting irregularities. It is not enough for the government to prove that Mr. Forbes should have known about the alleged accounting irregularities at CUC and Cendant. The law requires more. As I will explain in further detail, the government must prove beyond a reasonable doubt that Mr. Forbes acted knowingly, willfully, and with the specific intent to defraud.

See Morissette v. United States, 342 U.S. 246, 250 (1952) ("The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion.  It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil."); United States v. Dotterweich, 320 U.S. 277, 286 (1943) (Murphy, J., dissenting) ("It is a fundamental principle of Anglo-Saxon jurisprudence that guilt is personal and that it ought not lightly to be imputed to a citizen who, like the respondent, has no evil intention or consciousness of wrongdoing.  It may be proper to charge him with responsibility to the corporation and the stockholders for negligence and mismanagement.  But in the absence of clear statutory authorization it is inconsistent with established canons of criminal law to rest liability on an act in which the accused did not participate and of which he had no personal knowledge."); United States v. Bronx Reptiles, Inc., 217 F.3d 82, 87 (2d Cir. 2000) (recognizing that the "existence of a mens rea is the rule of, rather than the exception to, the principles of Anglo-American jurisprudence" (quotation omitted)); United States v. Rank, No. 84-1870, 1986 WL 18059, at *4 (6th Cir. Oct. 14, 1986) (per curiam) (reversing conviction and "declin[ing] to adopt the government's theory, akin to a respondeat superior basis for criminal liability," that "Brown's position as owner and president of the Clinic and his frequent telephone contacts with it from the Caribbean demonstrated sufficient control over the Clinic's operation to infer that Brown had participated in the criminal acts alleged against him"); Beck v. United States, 33 F.2d 107, 112 (8th Cir. 1929) ("It must be true that no man can be held liable for a false pretense or promise if he neither made the pretense nor authorized it.  It is doubtful as to whether the corporation could be personally held; those questions need not be discussed, for the doctrine of respondeat superior that sometimes holds a principal for representations he neither authorized nor ratified, expressly or impliedly, is a doctrine of civil liability, not criminal responsibility . . . . But the trial proceeded on the theory stated by the court that any representation made by those employed by the company was competent, irrespective of [the defendant-president's] knowledge, authority, or ratification; and this was error.").  Even when charging a jury on strict liability offenses under the Food Drug and Cosmetic Act, the charge may not "permit the jury to find guilty solely on the basis of [the defendant's] position in the corporation; rather, it [must] fairly advise[] the jury that to find guilt it must find [the defendant] had a responsible relation to the situation, and by virtue of his position had authority and responsibility to deal with the situation." United States v. Park, 421 U.S. 658, 674 (1975) (quotation and ellipses omitted).

## PROPOSED JURY INSTRUCTION NO. 16
### (Credibility of Witnesses)

You, as jurors, are the sole and exclusive judges of the credibility of each of the witnesses called to testify in this case and only you determine the importance or the weight that their testimony deserves. After making your assessment concerning the credibility of a witness, you may decide to believe all of that witness' testimony, only a portion of it, or none of it.

In making your assessment of that witness, you should carefully scrutinize all of the testimony given by that witness, the circumstances under which each witness has testified, and all of the other evidence which tends to show whether a witness, in your opinion, is worthy of belief. Consider each witness's intelligence, motive to falsify, state of mind, and appearance and manner while the witness was on the stand. Consider the witness's ability to observe the matters as to which he or she has testified and consider whether he or she impresses you as having an accurate memory or recollection of these matters. Consider also any relation a witness may bear to either side of the case, the manner in which each witness might be affected by your verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

After making you own judgment or assessment concerning the believability of a witness, you can then attach such importance or weight to that testimony, if any, that you feel it deserves. You will then be in a position to decide whether the government has proven the charges beyond a reasonable doubt.

O'Malley, § 15.01.

## PROPOSED JURY INSTRUCTION NO. 17
### (Government Witness Testifying Under Plea Agreement)

In this case, there has been testimony from two government witnesses who pled guilty after entering into an agreement with the government to testify— Cosmo Corigliano and Anne Pember. There is evidence that the government agreed not to prosecute the witnesses on certain charges in exchange for the witnesses' agreement to plead guilty to one or more offenses and testify at this trial against Mr. Forbes. There also has been testimony from a defense witness, Casper Sabatino, who has a plea agreement with the government. The government entered into agreements with all of these witnesses concerning sentencing issues and promised to bring the witnesses' cooperation to the attention of the sentencing court.

The government is permitted to enter into this kind of plea agreement. You, in turn, may accept the testimony of such a witness and convict the defendant on the basis of this testimony alone, if it convinces you of every element of the offense charged beyond a reasonable doubt. However, you should bear in mind that a witness who has entered into such an agreement has an interest in this case different than any ordinary witness. A witness who realizes that he or she may be able to obtain his or her own freedom, or receive a lighter sentence by giving testimony favorable to the government, has a motive to testify falsely. Therefore, you must examine the testimony of such a witness with caution, and weigh it with great care. If, after scrutinizing the testimony of such a witness, you decide to accept it, you may give it whatever weight, if any, you find it deserves.

Sand, Instruction 7-11 (modified); <u>United States v. Prawl</u>, 168 F.3d 622 (2d Cir. 1999); <u>United States v. Ramirez</u>, 973 F.2d 102, 106 & n.1 (2d Cir. 1992).

## PROPOSED JURY INSTRUCTION NO. 18
### (Informal Immunity of Government Witness)

You have heard the testimony of government witness Kevin Kearney, who has been promised by the government that, in exchange for his testimony, he will not be prosecuted for any crimes he may have admitted either here in court or in interviews with the government.  This promise was not a formal order of immunity by the Court, but was arranged directly between the witness and the government.

The government is permitted to make these kinds of promises and is entitled to call as witnesses people to whom these promises are given.  You are instructed that you may convict a defendant on the basis of such a witness's testimony alone, if you find that his or her testimony proves every element of the offense charged beyond a reasonable doubt.

However, the testimony of a witness who has been promised that he or she will not be prosecuted should be examined by you with greater care than the testimony of an ordinary witness.  You should scrutinize it closely to determine whether or not it is colored in such a way as to place guilt on Mr. Forbes in order to further the witness's own interests.  Such a witness, confronted with the realization that he or she can win freedom by helping to convict another, has a motive to falsify his or her testimony.

Such testimony should be received by you with suspicion.  You may give it such weight, if any, as you believe it deserves.

Sand, Instruction 7-9 (modified); <u>United States v. Prawl</u>, 168 F.3d 622 (2d Cir. 1999).

## PROPOSED JURY INSTRUCTION NO. 19
### (Guilty Pleas of Government Witnesses)

You have heard evidence that government witnesses Cosmo Corigliano and Anne Pember, and defense witness Casper Sabatino, pled guilty to felony charges arising from accounting issues at CUC and Cendant.

The testimony of a witness may be discredited by evidence showing that the witness has pled guilty to a felony, a crime for which a person may receive a prison sentence of more than one year.

A guilty plea to a crime that is a felony is one of the circumstances that you may consider in determining the credibility of that witness. It is the sole and exclusive right of the jury to determine the weight to be given to any prior guilty plea as impeachment and the weight, if any, to be given to the testimony of anyone who has pled guilty to a felony.

You may consider evidence that Cosmo Corigliano, Anne Pember, and Casper Sabatino pled guilty to felony charges only in evaluating the credibility of Cosmo Corigliano, Anne Pember, and Casper Sabatino as witnesses in this case. You may not consider this evidence for any other purpose.

You are to draw no conclusions or inferences against Mr. Forbes from the fact that a witness pled guilty to similar charges. The witness's decision to plead guilty was a personal decision about his or her own guilt. It may not be used by you in any way as evidence against or unfavorable to Mr. Forbes.

Sand, Instruction 7-10 (modified); O'Malley, §§ 11.09, 15.07 (modified); United States v. Prawl, 168 F.3d 622, 626-27 (2d Cir. 1999) (collecting cases); United States v. Ramirez, 973 F.2d 102, 105 (2d Cir. 1992).

## <u>PROPOSED JURY INSTRUCTION NO. 20</u>
(Bias and Hostility)

In connection with your evaluation of the credibility of the witnesses, you should specifically consider evidence of resentment or hostility which some government witnesses may have toward Mr. Forbes.

Evidence that a witness is biased, prejudiced, or hostile toward the defendant requires you to view that witness's testimony with caution, to weigh it with care, and to subject it to close and searching scrutiny.

Sand, Instruction 7-2; <u>United States v. Masino</u>, 275 F.2d 129 (2d Cir. 1960).

## PROPOSED JURY INSTRUCTION NO. 20.1
(Retainer Funds)

You have heard testimony about retainer funds held by Mr.

Corigliano's attorneys and Mrs. Corigliano's attorneys.  Retainer funds are used to

pay for legal expenses.  In a civil action against a party for securities law violations,

the SEC can seek to have the party turn over retainer funds as disgorgement or to

pay interest or penalties even when the funds are held by that party's attorney.

Therefore, the SEC could have required Mr. and Mrs. Corigliano to turn over the

retainer funds to the receiver as part of their settlement, but it did not do so.  By

allowing Mr. and Mrs. Corigliano to maintain the retainer funds with their lawyers,

the government conferred a benefit on Mr. Corigliano.  You should consider this

benefit in evaluating Mr. Corigliano's credibility.

See SEC v. Credit Bancorp, Ltd., 109 F. Supp. 2d 142, 145 (S.D.N.Y. 2000); SEC v. Princeton Econ. Int'l Ltd., 84 F. Supp. 2d 443, 446 (S.D.N.Y. 2000); SEC v. Comcoa, Ltd., 887 F. Supp. 1521, 1528 (S.D. Fla. 1995), aff'd sub nom. Levine v. Comcoa Ltd., 70 F.3d 1191 (11th Cir. 1995).

## PROPOSED JURY INSTRUCTION NO. 20.2
(SEC Quarterly Asset Schedules)

You have heard testimony about and have seen the quarterly asset schedules that Mr. Corigliano was required to file with the SEC. These quarterly asset schedules required Mr. Corigliano to identify and list the amounts in the retainer funds held by Mr. and Mrs. Corigliano's lawyers.

See GX 400 at SEC 0050.

# PROPOSED JURY INSTRUCTION NO. 20.3
### (Town of Old Saybrook Appraisal and Assessment of Corigliano Property)

You have heard testimony about an appraisal and a tax assessment conducted by the Town of Old Saybrook on the Corigliano property. Under Connecticut law, the appraisal conducted by the Town of Old Saybrook represented a determination of the fair market value of the Corigliano property. The assessed value of the Corigliano property was 70% of its fair market value. The tax assessor was required by law to mail a written notice of assessment increase of the Corigliano property to Mr. Corigliano's home address. The law presumes that a mailing is received by the addressee.

See Conn. Gen. Stat. Ann. §§ 12-55(b), 12-62a(b) & 12-63(a); Gov't Opp'n Forbes Mot. Judicial Notice (filed Aug. 9, 2004) at 10 (noting that "the mailing of a letter creates a presumption of receipt by the addressee" (citing Meckel v. Continental Res. Co., 758 F.2d 811, 817 (2d Cir. 1985)).

## <u>PROPOSED JURY INSTRUCTION NO. 20.4</u>
### (SEC Settlement Agreement)

You have heard testimony and seen evidence that, after March 31, 2004, Mr. Corigliano used funds and assets that were otherwise required to be transferred to the receiver pursuant to the SEC settlement agreement to pay his personal living expenses and property taxes. The written SEC settlement agreement did not permit Mr. Corigliano to make these expenditures.

<u>See</u> DX 1060 ¶¶ 3(vi) & 6.

## PROPOSED JURY INSTRUCTION NO. 21
(Impeachment by Prior Inconsistent Statement or Omission)

You have heard evidence that one or more witnesses made a statement on an earlier occasion which counsel argues is inconsistent with the witness's trial testimony. You also have heard evidence that one or more witnesses did not state in either a prior proceeding or in prior interviews certain information to which the witness testified at this trial.

Evidence of a prior inconsistent statement or omission by a witness is not to be considered by you as affirmative evidence bearing on Mr. Forbes' innocence or guilt. Evidence of the prior inconsistent statement or omission was placed before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself or herself or who previously did not make certain statements to which he or she testified at trial.

If you find that a witness made an earlier statement that conflicts with his or her trial testimony, you may consider that fact in determining how much of his or her testimony, if any, to believe. In determining how much of a witness's testimony, if any, to believe, you also may consider whether the witness failed to make a statement to which he or she testified in this proceeding either (1) at any time prior to this proceeding or (2) in earlier interviews that took place closer in time to the events in question.

In making these determinations, you may consider whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency or previous omission concerns an important fact, or

- 42 -

whether it had to do with a small detail; whether the witness had an explanation for the inconsistency or omission, and, if so, whether that explanation appealed to your common sense.

It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement or omission was inconsistent, and if so how much, if any, weight to be given to the inconsistent statement or omission in determining whether to believe all or part of a witness's testimony.

Sand, Instruction 7-19 (modified).

## PROPOSED JURY INSTRUCTION NO. 21.1
### (Prior Testimony)

You have heard evidence that one or more witnesses gave certain testimony in a prior proceeding.  That testimony was generally read into the record by an attorney asking whether the witness previously gave such testimony.

Because testimony in the prior proceeding was under oath, evidence of a witness's testimony in the prior proceeding may be considered by you as evidence bearing on Mr. Forbes' innocence or guilt.  You should consider this testimony just like any other testimony that occurred here in Court.

Fed. R. Evid. 801(d)(1)(A).

## **PROPOSED JURY INSTRUCTION NO. 22**
### (Falsus in Uno, Falsus in Omnibus)

If you determine that any witness has knowingly testified falsely

concerning any important or material matter, you obviously have a right to distrust

the testimony of such an individual concerning other matters.  You may reject all

the testimony of that witness or give it such weight or credibility as you may think

it deserves.


O'Malley, § 15.06 (modified).

## PROPOSED JURY INSTRUCTION NO. 23
### (Expert Witness)

I have permitted certain witnesses, specifically Robert Sack and Brian Heckler, to express their opinions about matters that are in issue.

I instruct you that Robert Sack provided only background testimony. He did not testify about the facts of this. And I instruct you that nothing in his testimony should be regarded by you as an expression of opinion about whether any of the alleged conduct of the defendant, if it occurred, was improper, unlawful or illegal in any manner. Mr. Sack was not here to give his opinion as to what the law requires. That is a matter which must be presented to you by the Court.

I instruct you that the testimony of Brian Heckler may be considered only with respect to the question of whether certain accounting activities that are alleged to have occurred at CUC and Cendant during the fiscal years ending 1/31/96, 1/31/97 and 12/31/97 were in accordance with Generally Accepted Accounting Principles, and with respect to the question of whether any allegedly false statement made during that same time period was material. You may not consider it for any other purpose. In particular, you may not consider this testimony at all with respect to the question of whether Mr. Forbes was a knowing and willful participant in the alleged conspiracy, or whether Mr. Forbes knowingly and willfully engaged in any wrongdoing.

With respect to both Mr. Sack and Mr. Heckler, I instruct you that a witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience, and training. Such testimony is

presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness's qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness's testimony. You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case. You should not, however, accept opinion testimony merely because I allowed the expert to testify concerning his or her opinion. Nor should you substitute it for your own reason, judgment, and common sense. The determination of the facts in this case rests solely with you.


Sack Limiting Instr. (10/19/05 Tr. 385-86); Forbes Retrial Motion *In Limine* No. 26; Sand, Instruction 7-21 (modified).

## PROPOSED JURY INSTRUCTION NO. 24
### (Summary Charts)

The parties have offered into evidence certain summary charts which the offering parties contend are based on information from exhibits and testimony that has already been received into evidence. Such summary charts may prove useful to your consideration of the evidence in this case, but I warn you that you must evaluate such summary charts with great care. These summary charts are not in and of themselves evidence or proof of any facts. The controlling evidence is the underlying information upon which the government or the defendant contends these summary charts are based, to the extent you find that information is in evidence. The summary charts are no better than the information upon which they purport to be based. Thus, these summary charts cannot be relied upon independently. It is your responsibility to decide whether the summary charts correctly present information set forth in exhibits and testimony that is in evidence and upon which the parties contend they are based. To the extent, if any, that these charts do not correctly reflect information shown by underlying evidence, you are to disregard them.

United States v. Forbes & Shelton, Tr. (06-10-04) at 4185-86 (modified).