EXHIBIT 3

KRAMER LEVIN NAFTALIS & FRANKEL LLP

919 THIRD AVENUE

NEW YORK, N.Y. 10022 - 3852

GARY P. NAFTALIS
PARTNER
TEL (212) 715-9253
FAX (212) 715-8000
gnaftalis@kramerlevin.com

47, AVENUE HOCHE
75008 PARIS
FRANCE

May 16, 2000

<u>Via Facsimile</u>

Thomas C. Newkirk, Esq.
Associate Director
United States Securities and Exchange Commission
Mail Stop 8-1
450 5th Street, N.W.
Washington, DC 20549

DEFENDANT'S
EXHIBIT
1370

PENGAD 800-631-6989

Re:     In the Matter of Cendant Corporation, No. HO-3401

Dear Tom:

I have your May 15 letter.  Regrettably, it does not fairly reflect our prior dealings.  I write to set the record straight.

First, the Staff has never previously requested that Mr. Corigliano supply it with financial information pursuant to paragraph 12 of the plea agreement.  The Staff did demand that Mr. Corigliano pay more than $16 million in disgorgement, plus interest, plus a penalty equal to the disgorgement.  And the Staff indicated it would recommend waiving full payment of this amount if Mr. Corigliano was unable to pay.  In that event, the Staff would leave Mr. Corigliano with his house, car, legal fees and walking around money.  The subject of financial disclosure arose only in connection with the waiver policy and that financial disclosure would be required if Mr. Corigliano sought to avail himself of that policy.  To date, we have not availed ourselves of the waiver policy.  Instead, we have repeatedly argued that because Mr. Corigliano is not guilty of insider trading, the Staff's disgorgement calculations are inaccurate and punitive, and the fair and equitable disgorgement amount is only a small fraction of the Staff's calculations.

Second, the Staff did not repeat "several times" any request for financial disclosure, nor was David Frohlich's March 30, 2000 letter in any way a follow up request for any previously sought financial disclosure.  As part of our settlement discussions, the Staff asked that we voluntarily supply information concerning Mr. Corigliano's sales of Cendant stock from February 1, 1995 forward.  We provided that information under cover of my letter dated March 30, 2000.  Apparently, David was unaware that I had already sent the material directly to you, and that same day, he wrote me requesting this information.  In his letter, he also asked for the first time for schedule D's to Mr. Corigliano's tax returns, in order to obtain historical information about Mr. Corigliano's trades so computations could be made.  I immediately wrote back to David on March 30, 2000, pointing out that his letter had crossed with my letter to you and enclosing a copy of my earlier letter with the detailed trading information the Staff had

KL3:2034390.1

KRAMER LEVIN NAFTALIS & FRANKEL LLP

requested. In fact, we provided more information than had been sought; we also listed Mr. Corigliano's Cendant stock sales in January 1995. Following my March 30 letter, we did not receive any communications from the Staff suggesting that it required additional information concerning Mr. Corigliano's stock sales or any other financial information from him.

Third, there was nothing vague or incomplete about my response to Mr. Walker on May 2 when he asked about the proceeds from Mr. Corigliano's 1998 sales. We explained that the $23 million figure is extremely misleading because it does not reflect what gains Mr. Corigliano in fact received. We went on to explain with some specificity that after taking into account the cost of option exercises and the payment of many millions of dollars in taxes, Mr. Corigliano realized cash proceeds of approximately $8 million from his 1998 sales. We also pointed out that Mr. Corigliano has not been regularly employed since April 1998 (or more than two years), is incurring substantial legal fees and is the sole support of seven people.

Fourth, what the plea agreement says is that Mr. Corigliano, prior to his sentencing, will use his "best efforts" to settle claims that the SEC may assert for recovery of "certain of the proceeds" from his sales of Cendant stock. We have plainly complied with that provision and the other provisions of the plea argument. We have been trying diligently to settle the case. Both orally and in our Wells submission, we reiterated Mr. Corigliano's desire to negotiate a good faith settlement. In our Wells submission at page 22, we also made a substantial settlement proposal of $3.4 million -- a figure which fairly measures the benefit Mr. Corigliano allegedly received. We offered to meet with the Staff to explain the economic basis for our position, as supported by leading econometric experts, and why the Staff's calculations overstated any benefit Mr. Corigliano allegedly obtained. The Staff's response to date has been one of take it or leave it; either we accept the Staff's incorrect disgorgement number or litigate. I called you on Friday to request an additional short meeting with Director Walker to continue our settlement discussions. You advised that you would recommend against such a meeting or any further meetings with the Staff. Given that position, I was surprised by the timing of your new request for financial information and the arbitrary and unrealistic deadlines it purports to set.

I trust that the Staff is still interested in negotiating a settlement of the matter. To that end, I reiterate my request for a prompt meeting with Mr. Walker so that we can attempt to avoid the unseemly prospect of adversary litigation between the Commission and a significant cooperating witness who has provided substantial assistance to your ongoing investigations.

In all events, you can be assured that we will continue to meet all our obligations under the plea agreement.

Sincerely yours,

Gary P. Naftalis

cc:    Paul A. Weissman, Esq.

KL3:2034390.1

# EXHIBIT 4

KRAMER LEVIN NAFTALIS & FRANKEL LLP
919 THIRD AVENUE
NEW YORK, N.Y. 10022 - 3852

GARY P. NAFTALIS
PARTNER
TEL (212) 715-9253
FAX (212) 715-8000
gnaftalis@kramerlevin.com

47, AVENUE HOCHE
75008 PARIS
FRANCE

May 24, 2000

<u>For Settlement Purposes Only</u>
<u>Via Facsimile</u>

Thomas C. Newkirk, Esq.
Associate Director
United States Securities and Exchange Commission
Mail Stop 8-1
450 5th Street, N.W.
Washington, DC 20549

DEFENDANT'S
EXHIBIT
1371
PENGAD 800-631-6989

Re:    <u>In the Matter of Cendant Corporation, No. HO-3401</u>

Dear Tom:

I write to reconfirm that our client Cosmo Corigliano will be promptly providing you with financial disclosure in aid of our attempts to reach an amicable resolution of this matter.

In my May 16, 2000 letter, I represented, in response to what we understood to be your first request for financial disclosure pursuant to the plea agreement, that "you can be assured that we will continue to meet all our obligations under the plea agreement." I meant what I said. Cosmo will comply with all his obligations under the plea agreement, including paragraph 12's provision on financial disclosure.

At our meeting on Friday afternoon, May 19, I delineated for the Staff in detail the proceeds Cosmo received from his 1998 stock sales, the amounts paid for option exercises and the taxes he incurred. I described with specificity the form and approximate value of his assets. I also told you that his wife and children have assets as well, that they are separately represented by Harvey Pitt and Audrey Strauss of Fried, Frank, Harris, Shriver & Jacobson, and that questions concerning their assets should be directed to Harvey and Audrey. In response to the Staff's question relating to transfers made by Cosmo to his wife and children, I advised that Harvey and Audrey would provide you with information concerning such transfers. I understand that you subsequently initiated conversations with them on this subject. Moreover, I explicitly stated that Cosmo would fill out the financial disclosure form you have provided -- which also requests transfer information. But I noted that providing the written responses to your detailed form would require some time and that I was cognizant of the need in representing an important cooperating witness to be precise and accurate in our written responses since even small, minor or inadvertent inconsistencies could provide unnecessary potential fodder for future cross-examination of Mr. Corigliano -- an interest that the government shares.

KL3:2036120.1

KRAMER LEVIN NAFTALIS & FRANKEL LLP

Thomas C. Newkirk, Esq.
May 24, 2000
Page 2

      In my voicemail to you of yesterday, I told you that, consistent with my representation on Friday, Harvey and Audrey would call you today to provide you with information relating to transfers between Cosmo and his wife or children. Based on the voicemail you left me this morning, I understand that you wish to receive such information from Cosmo directly as part of any financial disclosure rather than from Fried Frank. Accordingly, Cosmo is working on the financial disclosure form, and we will supply that information to you as promptly as we possibly can.

      Best regards.

                  Sincerely yours,

                  Gary P. Naftalis

GPN/asb
cc:    Richard Walker, Esq.
       Paul A. Weissman, Esq.
       Harvey Pitt, Esq.
       Audrey Strauss, Esq.

KL3:2036120.1

# EXHIBIT 5

05/25/00  THU 17:51 FAX 202 942 9636          ENF FRONT OFC                                        ☑002



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
WASHINGTON, D.C. 20549

DIVISION OF
ENFORCEMENT

May 25, 2000

BY FAX (212) 715-8253

Gary P. Naftalis, Esq.
Kramer Levin Naftalis & Frankel LLP
919 Third Avenue
New York, NY 10022-3852

Re: *In the Matter of Cendant Corporation, No. HO-3401*

Dear Mr. Naftalis:

Assistant United States Attorney Paul Weissman has advised me that you have told him that at least some of the financial information we have been seeking from your client Cosmo Corigliano is ready for transmittal to us. As I understand it, this includes the information concerning Mr. Corigliano's assets and asset transfers. Please send us this information and such other information and schedules as are currently available by overnight delivery or by fax to me at 202.946.9636 immediately and without awaiting completion of the other information.

Sincerely yours,

*Thomas C. Newkirk*

Thomas C. Newkirk
Associate Director

cc: Paul A. Weissman, Deputy Chief
    Fraud and Public Protection Division
    U.S. Attorney's Office (D.N.J.)

DEFENDANT'S
EXHIBIT
1372
PENGAD 800-631-6989

# EXHIBIT 6

## KRAMER LEVIN NAFTALIS & FRANKEL LLP
919 Third Avenue
New York NY 10022
(212) 715-9100

---

**Fax Department: (212) 715-9191**

**Fax Number: (212) 715-8000**

| | | | |
|---|---|---|---|
| **FROM:** | Alan R. Friedman, Esq. | **DATE:** | May 26, 2000 |
| **PHONE:** | 212-715-9300 | | |

### PLEASE DELIVER AS SOON AS POSSIBLE TO:

| | RECIPIENT | COMPANY | FAX No. | PHONE No. |
|---|---|---|---|---|
| 1. | Thomas C. Newkirk, Esq. | Securities and Exchange Commission | 202-942-9636 | 202-942-4550 |

Total number of pages including this page: **6**

The documents accompanying this facsimile transmission are intended only for the use of the addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of the communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. Thank you.

KL3:2026669.1

DEFENDANT'S
EXHIBIT
951

CCQ168

05/26/00  FRI 17:14 FAX 212 666 7055          KRAMER LEVIN                                    ☒002

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**

919 THIRD AVENUE

NEW YORK, N.Y. 10022-3852

47, AVENUE HOCHE
75008 PARIS
FRANCE

ALAN R. FRIEDMAN
PARTNER
TEL (212) 715-9300
FAX (212) 715-8000
gnarfalks@kramerlevin.com

May 26, 2000

For Settlement Purposes Only
Via Facsimile

Thomas C. Newkirk, Esq.
Associate Director -
Division of Enforcement
Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, D.C.  20549

　　　　　Re:  In the Matter of Cendant Corporation, No. HO-3401

Dear Tom:

　　　　　Pursuant to paragraph 12 of Mr. Corigliano's plea agreement and as part of his best efforts to settle any claims by the Commission, I enclose his asset, liability and asset transfer information.

　　　　　When Gary returns to the office on Tuesday, we can discuss the remaining items on the financial disclosure form.

　　　　　Best regards.

　　　　　　　　　　Yours sincerely,

　　　　　　　　　　*Alan L. Friedman*

　　　　　　　　　　Alan R. Friedman

Enclosure

KL3:2034567.1

United States
Securities And Exchange Commission

Statement Of Financial Condition
Of Cosmo Corigliano

I.    Statement of Assets and Liabilities as of, or about, April 2000[1]

    A.    Assets:

        1.    Cash

| | |
|---|---:|
| Joint Checking Account with his wife, Terri Corigliano, at People's Bank[2] | $5,700 |
| Joint Savings Account with Terri Corigliano at People's Bank | 9,300 |
| Joint Checking Account with Terri Corigliano at People's Bank | 44,400 |

        2.    Real Estate

| | |
|---|---:|
| Trumbull, Connecticut house where Mr. Corigliano's parents have resided since 1967[3] | 180,000 |

        3.    Automobiles

| | |
|---|---:|
| 1993 Acura | approximately 6,700[4] |
| 1965 Mercedes 230 | approximately 6,500[5] |

---

[1]    All numbers rounded to the nearest hundred dollars and reflect best estimates based on currently available information. Amounts represent Mr. Corigliano's individual holdings, unless otherwise noted.

[2]    For purposes of this disclosure statement, we have listed the full balances in accounts owned jointly by Mr. and Mrs. Corigliano.

[3]    The Trumbull house was originally purchased by Mr. Corigliano's parents in about 1967, or approximately 33 years ago. They have continuously resided there since then. The house was transferred to Mr. Corigliano approximately eight years ago in or around 1992 when his parents were unable based on their own credit to obtain additional financing on the home. Mr. Corigliano became the owner of the property and then obtained the borrowing for his parents' benefit, based on his own credit as obligor.

[4]    Based on Kelley Blue Book (May 2000 edition) trade-in value.

[5]    Estimate based on NADA Guides Appraisal Report (May 2000 edition).

| | | | |
|---|---|---|---|
| 4. | Securities | | in excess of 8,071,900 |
| 5. | IRA, Keogh, 401(k) or Pension Accounts | | 327,500 |
| 6. | Other | | |
| | 1985 Sabre sailboat, purchased 1994, joint ownership | | approximately 45,000 |

**B.    Liabilities:**

Negative Balance Due on Smith Barney Money Market Account — ($206,000)

**C.    Description of Assets:**

One-family house in Trumbull, Connecticut, where Mr. Corigliano's parents have lived continuously since approximately 1967, estimate. — $180,000

People's Bank, Special Savings, joint ownership — 9,300

People's Bank, Checking, joint ownership — 5,700

People's Bank, Checking, joint ownership — 44,400

1993 Acura, estimate based on Kelley Blue Book (May 2000 edition) trade-in value. — approximately 6,700

1965 Mercedes 230, estimate based on NADA Guides Appraisal Report (May 2000 edition) — approximately 6,500

1985 Sabre sailboat, jointly owned, estimate — approximately 45,000

See response to paragraph I.E. for securities assets.

**D.    Description of Liabilities:**

Smith Barney Money Market Account Due — (206,000)

**E.    Description of Securities Assets and Accounts:**

Fidelity CT Muni MM, joint ownership — 1,200

Smith Barney Investment Funds, individual ownership — 2,042,300

- 2 -

Fairfield Capital Partners Investment Fund    1,254,700

Cendant Stock, individual ownership    1,773,700[6]

Stock Options to Purchase Cendant Stock[7]    in excess of 3,000,000[8]

F.    Description of Retirement Accounts:

Smith Barney, IRA    327,500

G.    Description of Credit Card Accounts:

Citibank, credit limit $21,000

Bank One, credit limit $10,500

---

[6]    130,777 shares at $13.5625 per share.  Closing price at 5/25/2000.

[7]    Mr. Corigliano presently holds Cendant stock options in the following amounts:  (i) 150,000 options with a strike price at $22.33 and an expiry date of July 24, 2006; (ii) 230,000 options with a strike price at $20.50 and an expiry date of April 21, 2007; and (iii) 82,316 options with a strike price at $37.50 and an expiry date of March 2, 2008. Mr. Corigliano received the 82,316 options in lieu of cash compensation of $500,000, to which he was otherwise entitled.  Moreover, prior to his termination by Cendant, Mr. Corigliano also held additional options to purchase 600,000 Cendant shares with a strike price of $31.375 and an expiry date of December 17, 2007, and options to purchase 300,000 Cendant shares with a strike price of $34.3125 and an expiry date of January 27, 2008, which he lost following his termination.

[8]    Valuations of the 380,000 options presently held by Mr. Corigliano are based on binomial or Black-Scholes models, which result in a value in excess of $3 million.  This estimated value does not include the 900,000 options he received in December 1997 and January 1998 and that he lost following his termination.

- 3 -

CCQ172

05/26/00  FRI 17:16 FAX 212 688 7066    KRAMER LEVIN    @006

II.    Asset transfers subsequent to February 1, 1995:[9]

> Dividing family assets based on financial and estate planning advice: Terri Corigliano, investment accounts in amount of $3,950,000.
>
> Establishment of daughter Mary Corigliano's trust fund: $200,000.
>
> Establishment of son Michael Corigliano's trust fund: $200,000
>
> Establishment of son David Corigliano's trust fund: $200,000
>
> $10,000 gift to each child's trust fund from joint account: total of $30,000

---

[9]    Pursuant to a real estate contract executed in October 1997, Terri Corigliano purchased a house in Greenwich, Connecticut for approximately $2,500,000. While not technically a transfer, Cosmo Corigliano was the original source of the funds used for the purchase of the home and the paydown of the mortgage on it (for which he was the obligor). The Corigliano family never resided in this house, which was sold in December 1998. The proceeds of that sale were paid to Mrs. Corigliano. The Corigliano family now lives in Old Saybrook, Connecticut in a home purchased by Terri Corigliano for approximately $1,745,000. Mrs. Corigliano also purchased Crystal Journey Candles, LLC for approximately $750,000, plus broker and other fees.

The Coriglianos' prior home in Stamford was jointly owned by them. The proceeds from the sale of that house, approximately $735,000, were paid to Mrs. Corigliano.

- 4 -

# EXHIBIT 7

06/29/00  THU 11:36 FAX 212 660 7000        KRAMER LEVIN                              @001

## KRAMER LEVIN NAFTALIS & FRANKEL LLP

### 919 Third Avenue
### New York NY 10022
### (212) 715-9100

---

**Fax Department:  (212) 715-9191**

**Fax Number: (212) 715-8000**

| | | | |
|---|---|---|---|
| **FROM:** | Gary P. Naftalis, Esq. | **DATE:** | June 29, 2000 |
| **PHONE:** | 212-715-9253 | | |

### PLEASE DELIVER AS SOON AS POSSIBLE TO:

| | RECIPIENT | COMPANY | FAX NO. | PHONE NO. |
|---|---|---|---|---|
| 1. | James A. Kidney, Esq. | Securities and Exchange Commission | 202-942-9581 | 202-942-4797 |

Total number of pages including this page: **5**

The documents accompanying this facsimile transmission are intended only for the use of the addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of the communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. Thank you.

KL3-2042573.1

DEFENDANT'S
EXHIBIT
960

CCQ225

KRAMER LEVIN NAFTALIS & FRANKEL LLP

919 THIRD AVENUE

NEW YORK, N.Y. 10022 - 3852

GARY P. NAFTALIS
PARTNER

TEL (212) 715-9253
FAX (212) 715-8000
gnaftalis@kramerlevin.com

47, AVENUE HOCHE
75008 PARIS
FRANCE

June 29, 2000

James A. Kidney, Esq.
Assistant Chief Litigation Counsel
Securities and Exchange Commission
Division of Enforcement
450 Fifth Street, N.W., Stop 8-8
Washington, DC 20549-0808

Dear Jim:

      I enclose a proposed budget for the Corigliano family.  Please call me once you
have had an opportunity to review it.

      Kindest regards.

Sincerely,

Gary P. Naftalis

GPN/asb

KL3:2043533.1

CCQ226

**Annualized Budget**
**for the Corigliano Family**

DRAFT

**Annual Expenses:**

Automobile Expenses:

| | |
|---|---|
| Fuel and tolls | $3,600 |
| Maintenance | 2,000 |

Automobile Insurance   2,600

Clothing   10,000

Education (three children):

| | |
|---|---|
| Parochial School Tuition | 7,500 |
| Books, Supplies, After School Activities, Camp and Other Educational Expenses | 8,000 |

Food   25,000

Home Upkeep, Supplies and Ordinary Repairs   22,000

Income Taxes (Federal and State)   45,000[1]

Insurance Premiums:

| | |
|---|---|
| Health Insurance | 9,500 |
| Property Insurance | 3,800 |

Medical Expenses   5,000

Professional Fees (tax accountant)   6,500

Real Estate Taxes   30,000[2]

Utilities (electricity, oil and telephone)   21,000

Miscellaneous Expenses   10,000

---

[1]   Does not reflect possible taxes that would be due if Crystal Journey Candles had taxable income for the year. In that event, the estimate for taxes would need to be increased.

[2]   Last year real estate taxes were approximately $22,000, but they are expected to increase on reassessment.

## Anticipated Unusual Expenses:

Capital Improvements and Charges for Crystal Journey Candles:

| | |
|---|---|
| Working Capital Infusion Needed to Complete Existing Product Orders, For Which Payment Will Not be Received Until Fall 2000 | 40,000 |
| Equipment Purchases to Expand Production Capacity to Meet Expected Demand | 65,000 |

House Repairs:

| | |
|---|---|
| Land Construction Repairs in Progress | 10,000 |
| Replace Leaking Exterior Doors | 5,000 |

Loan Payments:

| | |
|---|---|
| Interest Payments Owed on Smith Barney Money Market Creditline | approximately 1,900 a month |

Cosmo's Parents:

| | |
|---|---:|
| Food, Utilities, Insurance Premiums, Medical Expenses (paid in periodic installments) | 25,000 |
| Property Taxes | 3,800 |
| | 28,800 |

Terri's Mother:

| | |
|---|---:|
| Monthly Payments of $1,000 for Living Expenses Insurance Premiums, Medical Expenses | 12,000 |
| Property Taxes | 8,000 |
| | 20,000 |

EXHIBIT 8

## Settlement Proposal

For purposes of resolving pending and proposed litigation, we propose the following settlement offer on behalf of Cosmo and Terri Corigliano. In making this offer, no admission is intended, implied or may be inferred, nor may any reference be made to this document in any context whatsoever other than the internal deliberations of the SEC and its Staff. If any aspect of this proposal is unclear, or unsatisfactory, we urge the Staff to consult with us so that we can achieve a meeting of the minds and resolve these matters consensually.

1.    Total payment by the Coriglianos of cash and securities with a current value in excess of $11 million. We believe this amount exceeds what both parties could agree to as a figure that represents any unjust enrichment by virtue of trading activity in Cendant securities. It exceeds what the plaintiffs' expert in the civil litigation estimates is the actual unjust enrichment, which is $8 million. That amount ($8 million) is also the figure that would be reached if one applied the analysis the Commission used in the Patel case. Indeed, even on the way the Staff calculates disgorgement, if one used the five-day average close after April 15, 1998, instead of the low closing price over those days, the Staff's number would be only $10.9 million. *The Coriglianos will be giving up more than was actually received from the trading, and they will not keep a penny of any unjust trading gains.*

2.    To achieve this payment, Cosmo would give up all his assets, except for an old car, his IRA, and his parents' home in Trumbull. The latter – the house of his parents, has been their abode for 33 years, and was not a device designed to siphon off assets to thwart disgorgement. This proposed payment includes securities with a current value in excess of $9 million, consisting of: approximately $3 million of mutual fund assets; 130,777 shares of Cendant stock (worth approximately $2 million based on Wednesday's close of $15.00 a share);

DEFENDANT'S
EXHIBIT
994

Page 2

plus options to purchase 462,316 Cendant shares, that depending on the trading model used to value them, are presently worth between $4 and $5 million.[1]

3.     Terri would add $2.0 million.  This would leave her with about $2.5 million of liquid assets, the Old Saybrook house, and the Candle Business.

4.     Prior to the '98 stock trading, the Coriglianos had significant assets, resulting from the prior 15 years of work and savings.  Their pre-'98 assets included:

      a.     $2.55 million in mutual funds
      b.     $500,000 of equity in their Stamford house
      c.     $3.6 million from the SERP payment (before taxes)
Total      $6.65 million

This excludes 200,000 Cendant shares he owned in 1998 before his trading, and 900,000 options he lost after being terminated.

We hope this is perceived as a substantial effort to bridge the gap that currently exists.  Please let us know how we can finalize a consensual resolution of this matter.

---

[1]     These options consist of (i) options to purchase 150,000 shares at a strike price at $22.33 and an expiry date of July 24, 2006; (ii) options to purchase 230,000 shares with a strike price at $20.50 and an expiry date of April 21, 2007; and (iii) options to purchase 82,316 shares with a strike price at $37.50 and an expiry date of March 2, 2008.  Mr. Corigliano received the 82,316 options in lieu of cash compensation of $500,000, to which he was otherwise entitled.

Settlement Proposal