# EXHIBIT 10

07/19/00  WED 16:47 FAX 212 688 7066        KRAMER LEVIN        @002

KRAMER LEVIN NAFTALIS & FRANKEL LLP
919 THIRD AVENUE
NEW YORK, N.Y. 10022 - 3852

ALAN R. FRIEDMAN
PARTNER
TEL (212) 715-9000
FAX (212) 715-8000
afriedman@kramerlevin.com

47, AVENUE HOCHE
75008 PARIS
FRANCE

July 19, 2000

For Settlement Purposes Only
Via Facsimile

James A. Kidney, Esq.
Assistant Chief Litigation Counsel
Securities and Exchange Commission
Division of Enforcement
450 Fifth Street, N.W., Stop 8-8
Washington, DC  20549-0808

Dear Jim:

    In light of our discussions and in an effort to amicably resolve this issue, we have revised for a second time the Corigliano family's budget. We have deleted the interest expense, and lowered the home upkeep and food budget numbers. Our original food budget of $25,000 worked out to $13.70 per person, per day, for the family. It already represented a significantly reduced estimate from the family's actual and documented prior year's expenses. Nonetheless in deference to the Commission's concerns and in aid of an agreed-upon compromise, we have, with some reluctance, reduced this number by $2,000. That would allow Cosmo, Terri and their three minor children each a daily meal allowance of only $12.60 per person.

    The revisions that we have now made reflect, without regard to taxes, a $30,800 reduction from the budget provided to you on July 13 and a $38,300 reduction from the budget we sent on June 29, which we continue to regard as reasonable. After taxes and payments for their aged and infirm parents, it leaves the family with a budget for living expenses of only $126,000 for Mr. and Mrs. Corigliano and their three children. As you are aware, these numbers involve a very substantial reduction from their prior normal expenses, which were not at all extravagant. Nothing in the proposed budget suggests any dissipation or impairment of their assets.

    Rather, the proposed living expenses are well within the income annually generated by the family's assets. The family currently estimates that these assets will, depending on market conditions, generate approximately $165,000 in interest income, principally from non taxable sources (without regard to possible capital appreciation of the mutual funds).

    On the tax estimate, as you might surmise, the estimate can vary with market conditions and fund management decisions well beyond the Coriglianos' control. I am now informed that according to their most recent information, for the six months ended June 30,

KL3:2945918.1

DEFENDANT'S
EXHIBIT
964

.07/19/00  WED 16:47 FAX 212 688 7066    KRAMER LEVIN

KRAMER LEVIN NAFTALIS & FRANKEL LLP

James A. Kidney, Esq.
July 19, 2000
Page 2

2000, their mutual funds reported capital gains of approximately $215,000. These figures could obviously change by year end. But in order to be safe, I have raised the tax provision of the budget to $65,000.

   In our July 13 letter, we also explained the need for Mrs. Corigliano to spend as a one-time capital expense $51,325 for new dispensing equipment for Crystal Journey Candles. In the short term, no other extraordinary capital expenditures are anticipated for the business. As we have previously noted, the Company has grown from 3 to 18 employers since its purchase. We are informed that over the past year, the business achieved sales of approximately $1.1 million, but essentially broke even on a cash flow basis, and the Coriglianos have not received any income from it. As I may have indicated on the phone, as a start-up and because it lacks historical operating statements, it cannot finance the purchase through ordinary banking sources. The purchase of the machinery is necessary to maintain the Company's competitive position and to avoid impairment of the business. The Company estimates that the cost of the machinery should be earned back within approximately a year of its purchase as a result of savings in materials, such as wax and oil, and labor costs. Presently, the Company melts over 2,000 pounds of wax a day in 14 heat-regulated vats. Fifteen or more production workers then manually pour wax into containers and molds. This process can be streamlined through a machine that dispenses the wax into molds along a conveyor system. The purchase will result in significant labor and material savings. As important, the acquisition of the equipment represents the most cost-effective way to expand the business' operating capacity, a necessity to its ultimate success. The Company needs to leverage its fixed costs through increased production. In that manner, it can take on additional sales at increased operating margins that will add to its bottom line and so achieve operating profits. You asked whether additional expenses for shipment, delivery and installation of the equipment would be necessary. I understand that all those charges are included within the present estimate.

   I hope that we are now in a position to resolve this matter. Please call me promptly to let me know whether this proposed budget is agreeable to you.

   Best regards.

   Yours sincerely,

   *Alan R. Friedman*

   Alan R. Friedman

ARF/asb
cc: Harvey Pitt, Esq.
  Audrey Strauss, Esq.

KL3 2045818.1

DRAFT (7/19/2000)

**Revised Annualized Budget**
**for the Corigliano Family**

**Annual Expenses:**

Automobile Expenses:

| | |
|---|---|
| Fuel and tolls | $3,600 |
| Maintenance | 2,000 |

| | |
|---|---|
| Automobile Insurance | 2,600 |
| Clothing | 10,000 |

Education (three children):

| | |
|---|---|
| Parochial School Tuition | 7,500 |

| | |
|---|---|
| Books, Educational Supplies, After-School Activities, Toys And Other Educational Expenses | 12,000 |
| Food | 23,000 |
| Home Upkeep, Supplies and Ordinary Repairs | 16,000 |
| Income Taxes (Federal and State) | 65,000[1] |

Insurance Premiums:

| | |
|---|---|
| Health Insurance | 9,500 |
| Property Insurance | 3,800 |

| | |
|---|---|
| Medical Expenses | 5,000 |
| Real Estate Taxes | 25,000[2] |
| Utilities (electricity, oil and telephone) | 21,000 |
| Miscellaneous Expenses | 10,000 |

---

[1]    Does not reflect possible taxes that would be due if Crystal Journey Candles had taxable income for the year. In that event, the estimate for taxes would need to be increased.

[2]    Based on anticipated tax reassessment.

KL3:204206).4

CCQ178

.07/19/00  WED 18:48 FAX 212 000 7000

**Support to Cosmo and Terri Corigliano's Parents:**[3]          **DRAFT (7/19/2000)**

Cosmo's Parents:

| | | |
|---|---|---|
| Food, Utilities, Insurance Premiums, Medical Expenses  (paid in periodic installments) | 25,000 | |
| Property Taxes | 3,800 | |
| | 28,800 | |

Terri's Mother:

| | | |
|---|---|---|
| Monthly Payments of $1,000 for Living Expenses | 12,000 | |
| Insurance Premiums, Medical Expenses | | |
| Property Taxes | 8,000 | |
| | 20,000 | |

---

[3] Cosmo's parents own no significant assets.  As reported previously, their home is now owned by Cosmo Corigliano, who purchased the lifelong family home from his parents, who had insufficient assets to take out a loan on the house to help pay for their own living expenses.

The only sources of income for Cosmo's parents are social security payments and support from Cosmo.

Terri Corigliano's mother owns a home in Branford, Connecticut.  She has a mortgage on this house totaling approximately $150,000.  She has no additional significant assets.

The only sources of income for Terri's mother are social security payments and support from Cosmo.

- 2 -

KL3:2042063.4

CCQ179

DRAFT (7/19/2000)

**Payments Owed on In-Progress Construction Work on Corigliano House**

The Coriglianos have contracted with a local residential construction worker, Robert Dibble, to complete necessary repairs to their home's driveway and sidewalk pavement. The contractor had begun work on this project several months ago and already has removed the previous pavement. He also has made purchases of gravel and tar to complete the job. The cost of completion and outstanding payments owed by the Coriglianos are estimated by Mr. Dibble at approximately $10,000.[4]

**Necessary Business Expenses**

Crystal Journey Candles is a manufacturing company that produces aromatic candles. Since Mrs. Corigliano purchased the company in June 1999, sales have doubled and the number of employees has grown from 3 to 18. In order for the company to maintain its value and complete even existing orders, the company needs to expand its production capacity through automation. Without such capital improvements the company's future will be jeopardized and it will not to remain competitive in the marketplace.

The company currently relies on employees to manually pour the melted wax into candle molds. The machinery needed to expand production capacity and reduce costs would dispense wax automatically into the candle molds at a rate that surpasses the company's present capabilities. In order to compete in the marketplace, the company must be able to meet customer demands in the future.

After an exhaustive search of equipment manufacturers, Crystal Journey Candles located a local candle equipment manufacturer in New Jersey that has available for sale the needed dispensing equipment at a reasonable cost. Crystal Journey Candles will purchase an 8-Head Votive Dispenser with 118 trays, conveyor system and holding tank at a price of $51,325. The company needs to complete this purchase immediately in order to meet current contract demands and to have sufficient production capacity in place for the upcoming holiday season. Without these improvements, the company cannot continue to compete, risks losing its value in the near future as well as jeopardizing the employment of its 18 workers.

---

[4]The Coriglianos are also in the process of seeking an estimate on the needed replacement of their home's leaking exterior kitchen doors and related repairs to the house frame.

- 3 -

KLJ:2042063.4



**UNITED STATES**
# SECURITIES AND EXCHANGE COMMISSION
450 Fifth Street, N.W., Stop-8-8
Washington, D.C. 20549-0808

DIVISION OF
ENFORCEMENT

**James A. Kidney**
Assistant Chief Litigation Counsel
Direct dial: 202-942-4797
Facsimile: 202-942-9581
Internet: kidneyj@sec.gov

**DRAFT**

July 20, 2000

Alan R. Friedman, Esq.
Kramer Levin Naftalis & Frankel, LLP
919 Third Avenue
N.Y., N.Y. 10022-3852

Harvey L. Pitt
Fried Frank Harris Shriver & Jacobson
1001 Pennsylvania Avenue, N.W.
Suite 800
Washington, D.C. 20004                          **VIA FACSIMILE**

Dear Alan and Harvey:

This responds to Alan's letter and attachments dated July 19, 2000 in which a slightly revised budget for the Corigliano's is proposed and some additional information about the candle company is provided, along with certain representations about anticipated income for the family.

Before we can properly analyze this budget, we must have a complete list of the assets of the Corigliano family, including Mrs. Corigliano and the children. One reason we require this information is because it is now evident that one of the bases – perhaps the chief basis – on which the "budget" is defended is that it will be matched by income from existing assets. Moreover, we are entitled to the cooperation of the Coriglianos in providing this information – in detail – according to provisions of Mr. Corigliano's plea agreement. We also require production of the 1999 income tax returns of the Coriglianos, their parents and of the candle company. This information is necessary in order adequately to assess the reliability of the information you have provided and it is commonly provided the Commission as part of the statement of financial condition received from defendants and respondents in litigation.

We also require the information about family assets in order to fix whether these assets will have been disipated pending resolution of our differences. We have requested this information in the past, and have received only limited disclosure. For example, on May 26, 2000, we received some asset information, but it was very general. The disclosure of Mrs. Corigliano's assets, other than those held jointly with her husband, was: "Terri Corigliano, investment accounts in amount of $3,950,000." We will require a detailed breakdown of the specific investment, where it is maintained (i.e., the name of the

Messrs. Friedman and Pitt
Page 2

*[handwritten: what about property taxes]*

brokerage and the account number), in whose name the account is maintained and recent account statements substantiating the existing principal.

I do not share your belief that the Coriglianos have provided a reasonable budget figure. By my calculation, they have arrived at a budget providing over $130,000 in living expenses for a family of five AFTER taxes and without the need to pay for shelter. This is the expendable budget of a fairly wealthy family. Of course, the situation is aggravated by the tax, maintenance and utility costs of a $1.7 million house in a very expensive Connecticut town. That aside, the Coriglianos are proposing to spend nearly $80,000 on clothing, education, "educational expenses", food and "home upkeep" alone. Again, this is after taxes. This is hardly a budget that warrants handwringing, much less the implication that family spending is cut to the bone.

Nevertheless, we hope to arrive at a budget agreement and we recognize that it may be more than we would like. However, if it is to be paid out of investment income, it is necessary that we be provided a detailed breakdown of the investment principal. Even if it were not, as I said, we also require this information to serve as a benchmark of assets for later in this litigation in the event it is not settled.

Please provide this information Monday via facsimile so that we may review it before our meeting with Judge Lechner.

Sincerely,

James A. Kidney

*[handwritten: means for a family] The median income in this country for a married-couple household with what children is less than $60,000.*

EXHIBIT 11



**UNITED STATES**
## SECURITIES AND EXCHANGE COMMISSION
450 Fifth Street, N.W., Stop-8-8
Washington, D.C. 20549-0808

DIVISION OF
ENFORCEMENT

James A. Kidney
Assistant Chief Litigation Counsel
Direct dial: 202-942-4797
Facsimile: 202-942-9581
Internet: kidneyj@sec.gov

July 20, 2000

Alan R. Friedman, Esq.
Kramer Levin Naftalis & Frankel, LLP
919 Third Avenue
N.Y., N.Y. 10022-3852

Harvey L. Pitt
Fried Frank Harris Shriver & Jacobson
1001 Pennsylvania Avenue, N.W.
Suite 800
Washington, D.C. 20004

**VIA FACSIMILE**

Dear Alan and Harvey:

This responds to Alan's letter and attachments dated July 19, 2000 in which a slightly revised budget for the Corigliano's is proposed and some additional information about the candle company is provided, along with certain representations about anticipated income for the family.

Before we can properly analyze this budget, we must have a complete list of the assets of the Corigliano family, including Mrs. Corigliano and the children. One reason we require this information is because it is now evident that one of the bases – perhaps the chief basis – on which the "budget" is defended is that it will be matched by income from existing assets. Moreover, we are entitled to the cooperation of the Coriglianos in providing this information – in detail – according to provisions of Mr. Corigliano's plea agreement. We also require production of the 1999 income tax returns of the Coriglianos, their parents and of the candle company. This information is necessary in order adequately to assess the reliability of the information you have provided and it is commonly provided the Commission as part of the statement of financial condition received from defendants and respondents in litigation.

We also require the information about family assets in order to fix whether these assets will have been dissipated pending resolution of our differences. We have requested this information in the past, and have received only limited disclosure. For example, on May 26, 2000, we received some asset information, but it was very general. The disclosure of Mrs. Corigliano's assets, other than those held jointly with her husband, was: "Terri Corigliano, investment accounts in amount of $3,950,000." We will require a detailed breakdown of the specific investment, where it is maintained (i.e., the name of the

CCQ174

DEFENDANT'S
EXHIBIT
965

Messrs. Friedman and Pitt
Page 2

brokerage and the account number), in whose name the account is maintained and recent account
statements substantiating the existing principal.

I do not share your belief that the Coriglianos have provided a reasonable budget figure. By my
calculation, they have arrived at a budget providing over $130,000 in living expenses for a family of five
AFTER taxes and without the need to pay for shelter. This is the expendable budget of a fairly wealthy
family. The median income for a married couple with children is less than $60,000 – gross. Of course,
the Corigliano situation is aggravated by the tax, maintenance and utility costs of a $1.7 million house in
a very expensive Connecticut town. That aside, the Coriglianos are proposing to spend nearly $80,000
on clothing, education, "educational expenses", food and "home upkeep" alone. Again, this is after
taxes. This is hardly a budget that warrants hand wringing, much less the implication that family
spending is cut to the bone.

Nevertheless, we hope to arrive at a budget agreement and we recognize that it may be more than we
would like. However, if it is to be paid out of investment income, it is necessary that we be provided a
detailed breakdown of the investment principal. Even if it were not, as I said, we also require this
information to serve as a benchmark of assets for later in this litigation in the event it is not settled.

Please provide this information Monday via facsimile so that we may review it before our meeting with
Judge Lechner.

Sincerely,

James A. Kidney

EXHIBIT 12

KRAMER LEVIN NAFTALIS & FRANKEL LLP

919 THIRD AVENUE

NEW YORK, N.Y. 10022 - 3852

ALAN R. FRIEDMAN
PARTNER
TEL  (212) 715-9300
FAX  (212) 715-8000
afriedman@kramerlevin.com

47, AVENUE HOCHE
75008 PARIS
FRANCE

July 26, 2000

Via Facsimile

James A. Kidney, Esq.
Assistant Chief Litigation Counsel
Securities and Exchange Commission
Division of Enforcement
450 Fifth Street, N.W., Stop 8-8
Washington, DC  20549-0808

Dear Jim:

I write in response to your July 20 letter to Harvey Pitt and me and to follow up on our telephone conversation Friday.

As you know, Mr. Corigliano has been a valuable, cooperating witness for many months in the Government's continuing investigation of accounting irregularities at Cendant. The Commission Staff has repeatedly confirmed that Cosmo has been always available and has provided truthful and complete information of substantial assistance to the Government. On May 26, 2000, in aid of our efforts to settle the Commission's claims against Mr. Corigliano, I supplied the Commission with detailed information about Cosmo's assets and transfers, including, among other things, a complete list of his personal and joint assets, the securities he holds, the brokerage firms where the accounts are located, as well as information about the family residence and the candle business. Moreover, although the plea agreement does not confer on Mrs. Corigliano any obligations as to her asset information, her counsel, Harvey Pitt and Audrey Strauss, have, in aid of settlement, given the Staff additional information relating to Terri's total liquid assets. While you may not be aware of it, they provided such information orally and in a writing, as part of the more than $11 million settlement proposal they delivered to the Commission. The Staff, therefore, already has ample information available to confirm that the assets, already described to it, would support interest payments of $165,000.

Given these facts, we do not understand the basis for your most recent requests for additional information beyond that already provided. Prior to Mr. Corigliano's plea, we had understood that the Commission would consent to the contemplated motion by the United States Government to stay the action and that all the Staff sought were assurances from counsel that the Coriglianos had no foreign bank accounts and were not secreting assets, acts that the Staff confirmed they had no evidence of. We readily gave those assurances. Subsequent to Mr. Corigliano's plea, those discussions evolved into the Staff's requests for the provision of the several budgets that we have now sent to you.

KL3:2044295.2

DEFENDANT'S
EXHIBIT
968

KRAMER LEVIN NAFTALIS & FRANKEL LLP

James A. Kidney, Esq.
July 26, 2000
Page 2

       In those budgets, we documented in detail the Coriglianos' living expenses over the past year, which were normal and regular and not extravagant. We showed that the proposed budget represented a considerable reduction from their prior year's expenses. At your request and in aid of obtaining a consensual resolution, we revised the budget figures downward twice. I explained that every further reduction to the budget -- in items like food, clothing, children's activities -- essentially comes out of Terri's and the children's daily living expenses. Such reductions are not required to avoid any dissipation of assets. Indeed, we provided these budgets to you principally in aid of attempting to amicably resolve this issue and facilitate a substantive, overall settlement negotiation. And while it is plain that the proposed budget would leave the Coriglianos living expenses within the interest generated by their assets, that was not our main argument or "defense" of the budget. In our conversations, you indicated that such a representation would be helpful in reaching agreement. I, therefore, provided it in my July 19 letter.

       Although we think it clear that you have the information you need to evaluate the budget, in still another effort to achieve consensus, we inform you that Fried Frank will be providing you shortly with further particulars on Mrs. Corigliano's investment accounts. We believe that the Staff should then be in a position to accept the July 19, 2000 budget as sent to you. You should also be aware that on May 26, 2000, the Staff already received a listing of Cosmo's assets, that the family has not yet filed its 1999 tax returns, and that the candle company as an LLC does not file a separate return.

       Please confirm to us whether the Staff is now prepared to agree to the July 19 budget.

       Yours sincerely,

       *Alan R. Friedman*

       Alan R. Friedman

ARF/asb

cc:  Harvey Pitt, Esq.
     Audrey Strauss, Esq.

KL3:2044293.2

KRAMER LEVIN NAFTALIS & FRANKEL LLP

919 Third Avenue

New York NY 10022

(212) 715-9100

**Fax Department: (212) 715-9191**

**Fax Number: (212) 715-8000**

**FROM:**   Alan R. Friedman, Esq.              **DATE:**              July 26, 2000
**PHONE:**   212-715-9300

## PLEASE DELIVER AS SOON AS POSSIBLE TO:

| RECIPIENT | COMPANY | FAX NO. | PHONE NO. |
|---|---|---|---|
| 1.  James A. Kidney, Esq. | Securities and Exchange Commission | 202-942-9581 | 202-942-4797 |

Total number of pages including this page: *3*

The documents accompanying this facsimile transmission are intended only for the use of the addressee and may contain information that is privileged and confidential. If are not the intended recipient, you are hereby notified that any dissemination of the communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. Thank you.

KL3 2042323 1

# EXHIBIT 13

KRAMER LEVIN NAFTALIS & FRANKEL LLP
919 THIRD AVENUE
NEW YORK, N.Y. 10022 - 3852

ALAN R. FRIEDMAN
PARTNER
TEL (212) 715-9300
FAX (212) 715-8000
afriedman@kramerlevin.com

47, AVENUE HOCHE
75008 PARIS
FRANCE

August 9, 2000

<u>Via Facsimile</u>

James A. Kidney, Esq.
Assistant Chief Litigation Counsel
Securities and Exchange Commission
Division of Enforcement
450 Fifth Street, N.W., Stop 8-8
Washington, DC  20549-0808

Dear Jim:

      As Audrey and I discussed with you, I enclose a clean and marked revised version of the letter agreement.

      Best regards.

Sincerely,

Alan

Alan R. Friedman

ARF/asb

cc:    Harvey Pitt, Esq.
       Audrey Strauss, Esq.

KL3:2049547.1

DEFENDANT'S
EXHIBIT
972

**WITHOUT PREJUDICE**
**FOR SETTLEMENT PURPOSES ONLY**

KRAMER LEVIN NAFTALIS & FRANKEL LLP

919 THIRD AVENUE

NEW YORK, N.Y. 10022 - 3852

GARY P. NAFTALIS
PARTNER
TEL (212) 715-9253
FAX (212) 715-9238
gnaftalis@kramerlevin.com

47, AVENUE HOCHE
75008 PARIS
FRANCE

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
ONE NEW YORK PLAZA
NEW YORK, N.Y. 10004-1980
(212) 859-8000

HARVEY L. PITT
PARTNER
TEL (202) 639-7100
FAX (202) 639-7008
pittha@ffhsj.com

1001 PENNSYLVANIA AVE, N.W.
WASHINGTON, D.C. 20004-2505

August __, 2000

Richard H. Walker, Esq.
Director
Division of Enforcement
Securities and Exchange Commission
Mail Stop 8-1
450 Fifth St., N.W.
Washington, D.C. 20549-0801

Re:    SEC v. Cosmo Corigliano, Anne M. Pember, et al., 00 Civ. 2873 (D. N.J.)
       (the "Action")

Dear Mr. Walker:

This letter is an agreement by Cosmo Corigliano and Agnes T. Corigliano ("our clients"), whose signatures are executed below, not to secrete, spend or otherwise dissipate existing assets, identified in Attachment A hereto, by their actions or those of their family members, agents, or others under their direct or indirect control. This Agreement permits limited expenditures, if necessary, from investment earnings of these assets to meet, but not to exceed, the budget described in Attachment B hereto, but for no other purpose. However, such expenditures from assets, if any, are permitted only (i) after all earned (i. e., non-investment income) of family members has been spent pursuant to the budget and (ii) if investment income exceeds the amount of withdrawals necessary to meet budgeted expenses. Should market conditions change, the parties will consult as to such reasonable withdrawals from principal as may be necessary and appropriate.

KL3:2049941.2

Our clients further agree that they will preserve the assets in Attachment A, to the extent market conditions permit, until this dispute is resolved. Should additional assets come into their possession before this dispute is resolved, those assets shall be added to those in Attachment A and be preserved and increased subject to the provisions of this agreement.

In order to insure that the provisions of this agreement are met, our clients agree to complete and provide to the Division of Enforcement the Statement of Assets and Liabilities in the form of Attachment C, hereto, on a quarterly basis, 20 days after the end of each quarter, beginning with the quarter ended September 30, 2000. Our clients also agree to provide such documentation as the Division may reasonably request in support of each such Statement of Assets and Liabilities.

Should it be necessary, in the judgment of our clients, to exceed budgeted living expenses as provided in Exhibit B, no such excess expenditure shall be made without first obtaining the written consent of the Division of Enforcement, which consent shall not be unreasonably withheld. Nor shall our clients, or any of their family members, agents or custodians of the assets identified in Attachment A, make any withdrawals, except as may be necessary to meet the spending provisions of the budget in Attachment B, or reallocate either ownership or the investment vehicle of any such assets, without the prior written consent of the Division of Enforcement.

By executing their signatures below, our clients agree to all of the provisions stated above and, further, agree that, should there be a material breach of this Agreement by them, the Commission may, upon reasonable notice to our clients, move the United States District Court for the District of New Jersey for such interim relief as the Commission may deem appropriate.

Both the Commission and our clients may, upon at least 30 days notice to the other, terminate this Agreement, in which event, any party may move, on reasonable notice to the other and the United States Attorney for the District of New Jersey, to lift a stay of proceedings, if any, in the Action, and should such motion be granted or if no stay is in effect, then prosecute or defend the Action and, on reasonable notice, seek such relief, interim or final, as the party deems appropriate.

Nothing in this Agreement shall be deemed or construed as a waiver of any remedy, right or defense that the Commission or our clients have in the Action or an admission as to any defense or claim or the propriety of any relief, interim or final, that any party may seek therein or in any other proceeding.

- 2 -

KL3:2049961.2

Further, our clients understand that any material breach of this Agreement may be brought to the attention of the Court in the criminal matter to which Cosmo Corigliano has entered a guilty plea.

Very truly yours,

_____
Gary P. Naftalis
Kramer, Levin, Naftalis &
Frankel LLP
Counsel for Cosmo Corigliano

_____
Harvey L. Pitt
Fried, Frank, Harris, Shriver & Jacobson
Counsel for Agnes T. Corigliano

I have read the foregoing letter to Richard H. Walker of the Securities and Exchange Commission and understand it fully.  I hereby acknowledge that it sets forth my agreement with the Division of Enforcement of the Securities and Exchange Commission.

_____
COSMO CORIGLIANO

SUBSCRIBED AND SWORN BEFORE ME
THIS ___ DAY OF _____, 2000

_____
Notary

My Commission expires on _____.

I have read the foregoing letter to Richard H. Walker of the Securities and Exchange Commission and understand it fully.  I hereby acknowledge that it sets forth my agreement with the Division of Enforcement of the Securities and Exchange Commission.

_____
AGNES T. CORIGLIANO

SUBSCRIBED AND SWORN BEFORE ME
THIS ___ DAY OF _____, 2000

_____
Notary

My Commission expires on _____.

- 3 -

KL3:2049061.2

CCQ146

### Exhibit A:  Assets of Cosmo Corigliano and Family
### [April 2000: July 2000 Spouse]

| | | |
|---|---|---|
| **Cash** | | |
| People's Bank Jt. Checking Acct. No. 1 | 5,700 | |
| People's Bank Jt. Checking Acct. No. 2 | 44,400 | |
| People's Bank Jt. Savings Acct. | 9,300 | |
| People's Bank Spouse Checking Acct. | 60,000 | |
| **Real Estate** | 180,000 | |
| Trumbull, CT | 1,745,000 | |
| Old Saybrook, CT | 13,200 | |
| **Autos** | | |
| **Securities** | | |
| Fidelity CT Muni Fund (Joint) | 1,200 | |
| Smith Barney Inv. Fund | 2,042,300 | |
| Fairfield Capital Partners | 1,245,700 | |
| Cendant Stock | 1,773,700 | (130,777 shares @ $13.56261share] ["in excess of"] |
| Cendant Stock Options | 3,000,000 | |
| Vanguard Tax Exempt Investment Funds (Spouse) | 225,000 | |
| T. Rowe Price Tax Exempt Investment Funds (3 accts - Spouse) | 2,448,000 | |
| Fidelity Tax Exempt Investment Funds (2 accts - Spouse) | 1,230,000 | |
| Merrill Lynch Equity Acct. (Spouse) | 504,000 | |
| Merrill Lynch Investment Fund (Spouse) | 214,000 | |
| **Pensions, IRA, Keough** | 327,500 | |
| Smith Barney IRA | 45,000 | |
| **Sailboat** | 200,000 | |
| Mary Corigliano Trust Fund | 200,000 | |
| Michael Corigliano Trust Fund | 200,000 | |
| David Corigliano Trust Fund | 750,000 | [purchase price] |
| Crystal Journey Candles LLC | | |
| **TOTAL** | 16,464,000 | |

K13:2045961.2

CCQ147

### Exhibit B: Budget for Cosmo Corigliano and Family

| | |
|---|---:|
| **Family Expenses** | 5800 |
| Auto | 6400 |
| Insurance | 10000 |
| Clothing | 7500 |
| Tuition | |
| Childrens' Activities: Music Lessons, Sports, etc. | 12000 |
| Food | 23000 |
| Home Maint | 16000 |
| Health Expenses (including insurance) | 14500 |
| Real Estate & Property Taxes | 25000 |
| Utilities | 21000 |
| Miscellaneous | 10000 |
| House Repairs/improvements (one-time charges) | 10000 |
| Income Taxes | 65000 |
| | |
| **Subtotal** | **226000** |
| | |
| Candle Company [one time expense] | 51325 |
| | |
| **Subtotal** | **51325** |
| | |
| **Cosmo parents** | 25000 |
| Food, utilities, insurance, medicine | 3800 |
| Property Taxes | **28800** |
| **Subtotal** | |
| | |
| **Terri's Mother** | 12000 |
| Living Expenses | 8000 |
| Property taxes | **20000** |
| **Subtotal** | |
| | |
| **GRAND TOTAL** | **326125** |

KL3/2041941.2

~~8/3 DRAFT - COSMO AGREEMENT (DEFENSE COUNSEL LETTERHEAD)~~
~~WITHOUT PREJUDICE~~
~~DATE FOR SETTLEMENT PURPOSES ONLY~~

KRAMER LEVIN NAFTALIS & FRANKEL LLP
919 THIRD AVENUE
NEW YORK, N.Y. 10022 - 3852

47. AVENUE HOCHE
75008 PARIS
FRANCE

GARY P. NAFTALIS
PARTNER
TEL (212) 715-1751
FAX (212) 715-8238
gnaftalis@kramerlevin.com

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
ONE NEW YORK PLAZA
NEW YORK, N.Y. 10004-1980
(212) 859-8000

1001 PENNSYLVANIA AVE. N.W.
WASHINGTON, D.C. 20004-2505

HARVEY L. PITT
PARTNER
TEL (202) 639-7188
FAX (202) 639-7008
pitth@ffhsj.com

August ___, 2000

Richard H. Walker, Esq.
Director
Division of Enforcement
Securities and Exchange Commission
Mail Stop 8-1
450 Fifth St., N.W.
Washington, D.C. 20549-0801

Re:    SEC v. Cosmo Corigliano, Anne M. Pember, et al., 00 Civ. 2873 (D. N.J.)
       (the "Action")

Dear Mr. Walker:

This letter is an agreement by Cosmo Corigliano and Agnes T. Corigliano ("our clients"), whose signatures are executed below, not to secrete, spend or otherwise dissipate existing assets, identified in Attachment A hereto, by their actions or those of their family members, agents, or others under their direct or indirect control. This ~~agreement~~ Agreement permits limited expenditures, if necessary, from investment earnings of these assets to meet, but not to exceed, the budget described in Attachment B hereto, but for no other purpose. However, such expenditures from assets, if any, are permitted only (i) after all earned (i. e., non-investment income) of family members has been spent pursuant to the budget and (ii) if investment income exceeds the amount of withdrawals necessary to meet budgeted expenses. Should market

KL3:2049961.2

CCQ149

conditions change, the parties will consult as to such reasonable withdrawals from principal as may be necessary and appropriate.

Our clients further agree that they will preserve the assets in Attachment A, to the extent market conditions permit, until this dispute is resolved. Should additional assets come into their possession before this dispute is resolved, those assets shall be added to those in Attachment A and be preserved and increased subject to the provisions of this agreement.

In order to insure that the provisions of this agreement are met, our clients agree to complete and provide to the Division of Enforcement the Statement of ~~Financial Condition~~ Assets and Liabilities in the form of Attachment C, hereto, on a quarterly basis, 20 days after the end of each quarter, beginning ~~on~~ with the quarter ended September 30, 2000, ~~subscribed to and sworn before a notary and subject to the penalties for perjury~~. Our clients also agree to provide such documentation as the Division may reasonably request in support of each such Statement of ~~Financial Condition~~ Assets and Liabilities.

Should it be necessary, in the judgment of our clients, to exceed budgeted living expenses as provided in Exhibit B, no such excess expenditure shall be made without first obtaining the written consent of the Division of Enforcement, which consent shall not be unreasonably withheld. Nor shall our clients, or any of their family members, agents or custodians of the assets identified in Attachment A, make any withdrawals, except as may be necessary to meet the spending provisions of the budget in Attachment B, or reallocate either ownership or the investment vehicle of any such assets, without the prior written consent of the Division of Enforcement.

By executing their signatures below, our clients agree to all of the provisions stated above and, further, agree that, should ~~any of these provisions be violated in any~~ there be a material ~~respect~~ breach of this Agreement by them, the Commission may, ~~without~~ upon reasonable notice to ~~ray client~~ our clients, move the United States District Court for the District of New Jersey ~~to immediately freeze any and all assets which~~ for such interim relief as the Commission ~~contends are subject to disgorgement and, in addition, sufficient assets as may remain to insure payment of prejudgment interest and a reasonable civil penalty for the conduct alleged in the Complaint in the above-referenced civil matter,~~ may deem appropriate.

~~Our~~ Both the Commission and our clients ~~also understand and agree that the Securities and Exchange Commission may move to impose an asset freeze and freeze on expenditures by our clients on~~ may, upon at least 30 days notice ~~while this agreement is in effect. Our clients also understand and agree that the Securities and Exchange Commission may move at any time~~ to the other, terminate this Agreement, in which event, any party may move, on reasonable notice ~~to the other~~ and the United States Attorney for the District of New Jersey, to lift a stay of proceedings, if any, ~~and, with~~ in the Action, and should such motion be granted or if no stay is in effect, then prosecute or defend the Action and, ~~on~~ reasonable notice ~~to my clients, move that the Court order the assets of my clients be disgorged as demanded in the Complaint,~~ seek such relief, interim or final, as the party deems appropriate.

- 2 -

Nothing in this Agreement shall be deemed or construed as a waiver of any remedy, right or defense that the Commission or our clients have in the Action or an admission as to any defense or claim or the propriety of any relief, interim or final, that any party may seek therein or in any other proceeding.

KL3-2048961.2

CCQ151

Further, our clients understand that any material breach of this ~~agreement will~~ **Agreement may** be brought to the attention of the Court in the criminal matter to which Cosmo Corigliano has entered a guilty plea. ~~The Commission also reserves the right to take whatever other actions it deems appropriate should this agreement be materially breached.~~

Very truly yours,

_____

Gary P. Naftalis
Kramer, Levin, Naftalis &
Frankel, LLP
Counsel for Cosmo Corigliano

_____

Harvey L. Pitt
Fried, Frank, Harris, Shriver & Jacobson
Counsel for Agnes T. Corigliano

I have read the foregoing letter to Richard H. Walker of the Securities and Exchange Commission and understand it fully. I hereby acknowledge that it sets forth my agreement with the Division of Enforcement of the Securities and Exchange Commission.

_____

COSMO CORIGLIANO

SUBSCRIBED AND SWORN BEFORE ME
THIS ___ DAY OF _____, 2000

_____

Notary

My Commission expires on _____.

I have read the foregoing letter to Richard H. Walker of the Securities and Exchange Commission and understand it fully. I hereby acknowledge that it sets forth my agreement with the Division of Enforcement of the Securities and Exchange Commission.

_____

AGNES T. CORIGLIANO

SUBSCRIBED AND SWORN BEFORE ME
THIS ___ DAY OF _____, 2000

_____

Notary

My Commission expires on _____.

- 4 -

KL3:2049461.2

**Exhibit A:  Assets of ~~Como Corialiano and Family~~April Cosmo Corigliano and Family
[April 2000: July 2000 ~~Spousel~~ Spousel**

| | | |
|---|---|---|
| Cash | | |
| People's Bank ~~Jt. Checking~~ **Jt. Checking** Acct. No. 1 | 5,700 | |
| People's Bank Jt. Checking Acct. No. 2 | 44,400 | |
| People's Bank Jt. Savings Acct. | 9,300 | |
| People's Bank Spouse Checking Acct. | 60,000 | |
| Real Estate | | |
| Trumbull, CT | 180,000 | |
| Old Saybrook, CT | 1,745,000 | |
| Autos | ~~13,200~~ | |
| | **13,200** | |
| Securities | | |
| Fidelity CT Muni Fund (Joint) | 1,200 | |
| Smith Barney Inv. Fund | 2,042,300 | |
| Fairfield Capital Partners | 1,245,700 | |
| Cendant Stock | 1,773,700 | (130,777 shares @ $13.56261share] ["in excess of"] |
| Cendant Stock Options | 3,000,000 | |
| Vanguard Tax Exempt Investment Funds (Spouse) | 225,000 | |
| T. Rowe Price Tax Exempt Investment Funds (3 accts - Spouse) | 2,448,000 | |
| Fidelity Tax Exempt Investment Funds (2 accts - Spouse) | 1,230,000 | |
| Merrill Lynch Equity Acct. (Spouse) | 504,000 | |
| Merrill Lynch Investment Fund (Spouse) | 214,000 | |
| Pensions, IRA, Keough | | |
| Smith Barney IRA | 327,500 | |
| Sailboat | 45,000 | |
| Mary Corigliano Trust Fund | 200,000 | |
| Michael ~~Coriglilano~~ **Corigliano** Trust Fund | 200,000 | |
| David Corigliano Trust Fund | 200,000 | |
| Crystal Journey Candles LLC | 750,000 | [purchase price] |
| TOTAL | ~~16,464,000~~ | |
| | **16,464,000** | |

## Exhibit B: Budget for Cosmo Corigliano and Family

| | |
|---|---|
| **Family Expenses** | 5800 |
| Auto | 6400 |
| Insurance | 10000 |
| Clothing | 7500 |
| Tuition | |
| Childrens' Activities: Music Lessons, | 12000 |
| Sports, etc. | 23000 |
| Food | 16000 |
| Home Maint | 14500 |
| Health Expenses (including insurance) | 25000 |
| Real Estate & Property Taxes | 21000 |
| Utilities | 10000 |
| Miscellaneous | 10000 |
| House Repairs/improvements | |
| (one-time charges) | 65000 |
| Income Taxes | |
| **Subtotal** | **226000** |
| | |
| Candle Company [one time expense] | 51325 |
| **Subtotal** | **51325** |
| | |
| **Cosmo parents** | 25000 |
| Food, utilities, insurance, medicine | 3800 |
| Property Taxes | 28800 |
| **Subtotal** | |
| | |
| **Terri's Mother** | 12000 |
| Living Expenses | 8000 |
| Property taxes | 20000 |
| **Subtotal** | |
| | |
| **GRAND TOTAL** | 326125 |

KL3:2049901.2

KRAMER LEVIN NAFTALIS & FRANKEL LLP
919 Third Avenue
New York NY 10022
(212) 715-9100

Fax Department: (212) 715-9191

Fax Number: (212) 715-8000

FROM:    Alan R. Friedman, Esq.          DATE:          August 9, 2000
PHONE:   212-715-9300

PLEASE DELIVER AS SOON AS POSSIBLE TO:

| RECIPIENT | COMPANY | FAX NO. | PHONE NO. |
|---|---|---|---|
| 1. James A. Kidney, Esq. | Securities and Exchange Commission | 202-942-9581 | 202-942-4797 |

Total number of pages including this page:

The documents accompanying this facsimile transmission are intended only for the use of the addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of the communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. Thank you.

KL3:2042527.1

CCQ155