EXHIBIT 14

08/16/00 11:22 FAX 212 715 8000          KRAMER LEVIN                              @002/019

KRAMER LEVIN NAFTALIS & FRANKEL LLP
919 THIRD AVENUE
NEW YORK, N.Y. 10022 - 3852

ALAN R. FRIEDMAN
PARTNER

TEL (212) 715-9300
FAX (212) 715-8000
afriedman@kramerlevin.com

47, AVENUE HOCHE
75008 PARIS
FRANCE

August 16, 2000

Via Facsimile

James A. Kidney, Esq.
Assistant Chief Litigation Counsel
Securities and Exchange Commission
Division of Enforcement
450 Fifth Street, N.W., Stop 8-8
Washington, DC 20549-0808

Dear Jim:

I enclose a clean and marked revised version of the letter agreement.

As I will discuss with you on the phone, I have adjusted the one-time "Home repair/improvement charges." You may recall that in the proposed budgets that we submitted earlier, we indicated that the Coriglianos were in the process of seeking an estimate for the replacement of their home's leaking exterior kitchen doors and related necessary repairs to the house frame resulting from the water damage over time. They have received estimates of approximately $7,000 for the repairs, including materials, installation and labor.

Best regards.

Sincerely,

Alan

Alan R. Friedman

ARF/asb

cc: Harvey Pitt, Esq.
    Audrey Strauss, Esq.

KL3:2049367.1

DEFENDANT'S
EXHIBIT
973

CCQ117

**8/16 DRAFT - COSMO AGREEMENT**
**[DEFENSE COUNSEL LETTERHEAD]**

DATE

Richard H. Walker, Esq.
Director
Division of Enforcement
Securities and Exchange Commission
Mail Stop 8-1
450 Fifth St., N.W.
Washington, D.C. 20549-0801

Re: SEC v. Cosmo Corigliano, Anne M. Pember, et al., 00 Civ. 2873 (D. N.J.) (the "Action")

Dear Mr. Walker:

This letter is an agreement by Cosmo Corigliano and Agnes T. Corigliano ("our clients"), whose signatures are executed below, not to secrete, spend or otherwise dissipate existing assets, identified in Attachment A hereto, by their actions or those of their family members, agents, or others under their direct or indirect control. This agreement permits limited expenditures, if necessary, from investment earnings of these assets to meet, but not to exceed, the budget described in Attachment B hereto, but for no other purpose. However, such expenditures from assets, if any, are permitted only (i) after all earned (i.e., non-investment income) of family members has been spent pursuant to the budget and (ii) if investment income exceeds the amount of withdrawals necessary to meet budgeted expenses. Should market conditions change so as to make meeting condition (ii) impractical, our clients and the Division shall consult as to such reasonable withdrawals from principal as may be necessary and appropriate to meet the budget, but any such withdrawals from principal shall be made only with the Division's written consent, which shall not be unreasonably withheld.

Our clients further agree that they will preserve the assets in Attachment A, to the extent market conditions permit, until this dispute is resolved. Should additional assets come into their possession before this dispute is resolved, those assets shall be added to those in Attachment A and be preserved and increased subject to the provisions of this agreement.

In order to insure that the provisions of this agreement are met, our clients agree to complete and provide to the Division of Enforcement the Statement of Assets, Liabilities and Expenditures in the form of Attachment C, hereto, on a quarterly basis, 20 days after the end of each quarter, beginning with the period ended November 30, 2000 (and covering the period from the date of this agreement through November 30, 2000). Our clients also agree to provide such documentation as the Division may reasonably request in support of each such Statement.

Should it be necessary, in the judgment of our clients, to materially exceed budgeted living expenses as provided in Exhibit B, no such excess expenditure shall be made without first obtaining the written consent of the Division of Enforcement, which shall not be unreasonably withheld. Nor shall our clients, or any of their family members, agents or custodians of the

1

assets identified in Attachment A, make any withdrawals, except as may be necessary to meet the spending provisions of the budget in Attachment B, or reallocate either ownership or the investment vehicle of any such assets, without the prior written consent of the Division of Enforcement.

By executing their signatures below, our clients agree to all of the provisions stated above and, further, agree that, should there be a material breach of this agreement by them, the Commission may, upon such reasonable notice to our clients as the Court may determine, move the United States District Court for the District of New Jersey for such relief as the Commission may deem appropriate.

Our clients also understand and agree that they and the Securities and Exchange Commission may, upon 30 days notice, terminate this agreement and move, on reasonable notice, to seek such interim or final relief as they or the Commission deem appropriate.

Further, our clients understand that any material breach of this agreement may be brought to the attention of the Court in the criminal matter to which Cosmo Corigliano has entered a guilty plea.

Nothing in this agreement shall be deemed or construed as a waiver of any remedy, right or defense that the Commission or our clients have in the Action or an admission as to any defense or claim or the propriety of any relief, interim or final, that any party may seek therein or in any other proceeding.

Very truly yours,

Gary P. Naftalis
Kramer, Levin, Naftalis &
 Frankel LLP
Counsel for Cosmo Corigliano

Harvey L. Pitt
Fried, Frank, Harris, Shriver & Jacobson
Counsel for Agnes T. Corigliano

I have read the foregoing letter to Richard H. Walker of the Securities and Exchange Commission and understand it fully. I hereby acknowledge that it sets forth my agreement with the Division of Enforcement of the Securities and Exchange Commission.

COSMO CORIGLIANO

2

KL3:2051061.1

      I have read the foregoing letter to Richard H. Walker of the Securities and Exchange Commission and understand it fully. I hereby acknowledge that it sets forth my agreement with the Division of Enforcement of the Securities and Exchange Commission.

                                                                                      AGNES CORIGLIANO

## Attachment A: Assets of Cosmo Corigliano and Family
### [April 2000; July 2000 Spouse]

| | | |
|---|---:|---|
| Cash | | |
| People's Bank Jt. Checking Acct. No. 1 | 5,700 | |
| People's Bank Jt. Checking Acct. No, 2 | 44,400 | |
| People's Bank Jt. Savings Acct. | 9,300 | |
| People's Bank Spouse Checking Acct. | 60,000 | |
| Real Estate | | |
| Trumbull CT | 180,000 | |
| Old Saybrook, CT | 1,745,000 | |
| Autos | 13,200 | |
| Securities | | |
| Fidelity CT Muni Fund (Joint) | 1,200 | |
| Smith Barney Inv. Fund | 2,042,300 | |
| Fairfield Capital Partners | 1,245,700 | |
| Cendant Stock | 1,773,700 | [130,777 shares @ $13.5625/share] |
| Cendant Stock Options | 3,000,000 | ["in excess of] |
| Vanguard Tax Exempt Investment Funds (Spouse) | 225,000 | |
| T. Rowe Price Tax Exempt Investment Funds (3 accts -- Spouse) | 2,448,000 | |
| Fidelity Tax Exempt Investment Funds (2 accts -- Spouse) | 1,230,000 | |
| Merrill Lynch Equity Acct. (Spouse) | 504,000 | |
| Merrill Lynch Investment Fund (Spouse) | 214,000 | |
| Pensions, IRA, Keough | | |
| Smith Barney IRA | 327,500 | |
| Sailboat | 45,000 | |
| Mary Corigliano Trust Fund | 200,000 | |
| Michael Corigliano Trust Fund | 200,000 | |
| David Corigliano Trust Fund | 200,000 | |
| Crystal Journey Candles LLC | 750,000 | [purchase price] |
| TOTAL | 16,464,000 | |

## Attachment B: Budget for Cosmo Corigliano and Family

| | |
|---|---:|
| **Family Expenses** | |
| Auto | 5,600 |
| Insurance | 6,400 |
| Clothing | 10,000 |
| Tuition | 7,500 |
| Childrens' Activities: Music Lessons, Sports, etc., | 12,000 |
| Food | 23,000 |
| Home Maint | 16,000 |
| Health Expenses (including insurance) | 14,500 |
| Real Estate & Property Taxes | 25,000 |
| Utilities | 21,000 |
| Miscellaneous | 10,000 |
| House Repairs/Improvements (one-time charges) | 17,000 |
| Income Taxes | 65,000 |
| **Subtotal** | **233,000** |
| | |
| Candle Company [one time expense] | 51,325 |
| **Subtotal** | **51,325** |
| | |
| **Cosmo parents** | |
| Food, utilities, insurance, medicine | 25,000 |
| Property Taxes | 3,800 |
| **Subtotal** | **28,800** |
| | |
| Terri's Mother | |
| Living Expenses | 12,000 |
| Property taxes | 8,000 |
| **Subtotal** | **20,000** |
| | |
| **GRAND TOTAL** | **333,125** |

1

Attachment C

# QUARTERLY STATEMENT OF ASSETS, LIABILITIES AND EXPENDITURES OF THE FAMILY OF COSMO CORIGLIANO AND AGNES T. CORIGLIANO

The following information is to be provided within 20 days after the close of each calendar quarter to James A. Kidney, Securities and Exchange Commission, Mail Stop 8-8, 450 Fifth St., N.W., Washington, D.C. 20549. Detailed asset and liability information provided in earlier reports need not be repeated if the account is reasonably identified below so that quarterly comparisons may be made, assuming there has been no change in such account information. The dollar amount of any such assets and liabilities must be again stated, however, for each quarter.

I.  Statement of Assets as of _____:

List all assets owned by Cosmo Corigliano, Agnes T. Corigliano or any other member of their household, directly or indirectly, and all assets which are subject to their possession, enjoyment or control, regardless of whether legal title or ownership is held by a relative, trustee, lessor, or any other intermediary, including but not limited to the categories indicated below. For each asset identified below with a fair market value of greater than $1,000, describe the asset, identify the owner, state the form of ownership (e.g., individual, joint, beneficial interest), provide the name of the institution in which the asset is held and the account number, if any, and state a fair market value of the asset and how the fair market value was determined (i.e., most recent account statement, appraisal, estimate, etc.).

1.  Cash
2.  Cash surrender value of insurance
3.  Accounts receivable
4.  Loans or notes receivable
5.  Real estate
6.  Furniture and Household Goods
7.  Automobiles
8.  Securities
9.  Partnership interests
10. Net value of ownership interest in business
11. IRA, Keough, 401(K) or pension accounts

1

KL3:2051051.1

CCQ123

12    Other (itemize) _____
      _____

      Total Assets                                          _____

II.   **Liabilities as of** _____ .

List all liabilities, including but not limited to the items listed below. Identify original principal amount of the liability, the amount remaining to be paid, the monthly payment, if any, the name of each creditor, the account number of the debt, if any, and the basis for reporting the liability (e.g., recent account statement, estimate, etc.)

1.   Mortgages                                              _____
2.   Auto loans                                             _____
3.   Credit card debt                                       _____
4.   Loans on insurance policies                            _____
5.   Installment loans                                      _____
6.   Other loans or notes payable                           _____
7.   Other (itemize) _____
     _____

III.  **Income/Expenses**

   A.   **Income**

   List all income over $1,000 from any source received during the quarter. Identify the source of the income and the amount.

1.   Salary/wages                                           _____
2.   Consulting fees                                        _____
3.   Dividends                                              _____
4.   Interest                                               _____
5.   Annuities                                              _____
6.   Pensions                                               _____
7.   Rents/royalties                                        _____

2

KL3:2031981.1

8.  Sales of assets
    [Note: asset sales, other than those conducted by fund or portfolio managers or pursuant to distribution of dividends and capital gains for such accounts, require the written consent of the Division of Enforcement]

9.  Repayment of loans  _____

10. Gifts  _____

11. (itemize)  _____

### B. Expenditures

Total approximate expenditures for the quarter: _____

List each expenditure over $10,000:

Identify any expenditure over $5,000 which is not within a category of the budget which was Attachment B to your Agreement with the Division of Enforcement. _____

### C. Budget Compliance

Based upon expenditures to date, it is our belief that our expenditures are within the range provided in the annual budget described as Attachment B to our agreement with the Division of Enforcement of the Securities and Exchange Commission providing for expenditure limits.

[Check one]

Yes  _____

No  _____

If No, explain in what categories you expect the budget, why, and how much.

_____
COSMO CORIGLIANO

_____
AGNES T. CORIGLIANO

3

KL3-2051081.1

CCQ125