UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------
UNITED STATES OF AMERICA      )
                              )
v.                            )    Criminal No. 3:02CR00264(AWT)
                              )
WALTER A. FORBES              )
-------------------------------
```

### RULING ON FORBES' RETRIAL MOTION NO. 16

### (Motion of Defendant Walter A. Forbes to Strike Improper Lay Opinion Testimony by Steven Kernkraut and to Preclude Further Such Testimony)

Defendant Forbes moves for an order striking what he characterizes as improper lay opinion testimony by government witness Steven Kernkraut and precluding the government from eliciting similar additional testimony. For the reasons set forth below, defendant Forbes' motion is being denied.

In support of his motion, defendant Forbes points to nine portions of Kernkraut's testimony. With respect to eight of those portions of the testimony, defendant Forbes contends that Kernkraut's testimony was based on reasoning processes that are unfamiliar to the average person in everyday life. With respect to the ninth portion of the testimony, the defendant argues that the testimony was not helpful to the jury.

Kernkraut's job as an analyst at Bear Stearns & Co., Inc. ("Bear Stearns") was to cover the retail industry, and he concentrated on approximately 15 particular companies at any point in time and wrote reports about them. During the period

from 1993 to 1998, Kernkraut covered CUC International ("CUC") and then Cendant Corporation. Kernkraut's job involved spending extensive time reviewing financial reports and other information concerning CUC and talking to its management, which included the defendant.

Much of what is included in the first eight portions of the testimony pointed to by the defendant is simply testimony where Kernkraut reported things he observed or where he explained to the jury the details of how he carried out his job insofar as it related to CUC;[1] to the extent Kernkraut expressed a lay opinion, it was not an opinion that was based on reasoning processes that are unfamiliar to the average person in everyday life. Thus, the court does not adopt the reasoning set forth from the first full paragraph on page 3 through the first full paragraph on page 4 of the Government's Opposition to Defendant Walter A. Forbes Motion to Strike Improper Lay Opinion Testimony by Steven Kernkraut and to Preclude Further Such Testimony (Doc. No. 1875) (the "Government's Opposition") except to the extent the government is making the point that Kernkraut was testifying about things he observed or about the details of how he carried out his job as an analysis insofar as it related to CUC. The court agrees with the

---

[1] See the discussion of the distinction between testimony as to "facts" versus "opinions" in the court's Ruling on Forbes' Retrial Motion in *Limine* No. 3, dated October 27, 2005 (Doc. No. 1901).

government's point that the fact that most people are unaware of particular information does not mean that the inference drawn by a witness from that information is based on reasoning processes that are unfamiliar to the average person in everyday life. Kernkraut's testimony was in no material respect different from that of defense witness Greg Danilow.  <u>See</u> Tr. at 2430-2435.

At page 114, Kernkraut was asked to "describe to the jury what you refer to as a growth company as an analyst at Bear Stearns."  Kernkraut first described what he looked at as a growth company and then made the statement pointed to by defendant Forbes.  There was no objection at the time to either portion of Kernkraut's response.  In addition, in the portion of the testimony pointed to by defendant Forbes, Kernkraut simply stated that there were very few companies that satisfied the definition of "growth company" that he used as an analyst at Bear Stearns.

At page 108, Kernkraut was asked to describe to the jury what was contained in his analyst's reports.  In doing so, Kernkraut stated that his reports included an earnings projection.  In a follow-up question, Kernkraut was asked to describe to the jury how he communicated the earnings projection, which he had described in terms of earnings per share, and what the term "earnings per share" means.  In the testimony at pages 110-112 and page 114 pointed to by the defendant, Kernkraut

simply explained to the jury what went into his analyst's reports.  The same is true with respect to the testimony at page 119 pointed to by the defendant, which also relates back to the question Kernkraut was asked at page 108 and was given in response to a question that followed up on Kernkraut's statement at page 109 that his analyst's reports included a price target.  The court notes there was no objection at the time to the testimony at page 119.

With respect to the testimony at pages 128-129 pointed to by the defendant, Kernkraut was asked whether "in [his] file as a Bear Stearns analyst" he had ever seen a chart like GX 3058 depicting a stock's performance for a given period of time.  Defendant Forbes does not quote the entirety of either of the responses he points to, and it is clear from the portions of Kernkraut's responses that are not quoted that in each instance Kernkraut was simply comparing the increase in share price for CUC to the increases in share price for other companies at which he had looked.

At page 166, Kernkraut was asked how many mergers CUC was involved in during the years he covered CUC.  Kernkraut stated that "CUC acquired about a dozen companies, if not more," and he was asked if that was unusual.  He then gave the testimony pointed to by the defendant, stating that "[i]t was unusual for a retail company.  CUC made more acquisitions than any other

4

company I followed." There was no objection at the time to this testimony, and here Kernkraut simply compared the number of acquisitions CUC made to how many acquisitions had been made by other companies he followed.

At page 166-167, Kernkraut was asked whether it was his practice to discuss with defendant Forbes mergers involving CUC, and Kernkraut indicated that it was his practice to do so. In connection with that testimony, Kernkraut was asked at page 168 whether he had an understanding of what a merger reserve was relating to his coverage of CUC, and he was asked at page 169 whether as an analyst covering CUC stock it was his practice to review the merger reserves a company had on its books. Kernkraut was then asked to describe to the jury "what a merger reserve was as CUC maintained them on their books." Similarly, Kernkraut was asked at page 172 to describe with respect to CUC stock whether there was "a difference between their earnings and their earnings reported after a merger reserve" and at page 173 to explain "as the analyst covering CUC stock," which number was more significant to him. Kernkraut explained why the number for operating earnings was more important to him.

Reading Kernkraut's testimony in context, as opposed to looking solely at the excerpts or characterizations contained in defendant Forbes' memorandum in support of his motion, the court concludes that Kernkraut was in most instances simply reporting

things he observed or explaining to the jury the details of how he carried out his job insofar as it related to CUC, and that to the extent Kernkraut expressed a lay opinion, it was not an opinion that was based on reasoning processes that are unfamiliar to the average person in everyday life.

With respect to the ninth portion of Kernkraut's testimony pointed to by the defendant, the court concludes that Kernkraut's testimony at page 144 was proper for the reasons set forth at pages 8-14 of the Government's Opposition.

Accordingly, the Motion of Defendant Walter A. Forbes to Strike Improper Lay Opinion Testimony by Steven Kernkraut and to Preclude Further Such Testimony (Doc. No. 1857) is hereby DENIED.

It is so ordered.

Dated this 27th day of November 2005, at Hartford, Connecticut.

/s/AWT

Alvin W. Thompson
United Stated District Judge