UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>WALTER A. FORBES )<br>)<br>) | No. 3:02CR264 (AWT)<br><br>November 27, 2005 |

## OBJECTIONS OF WALTER FORBES TO
## CURATIVE INSTRUCTION PROPOSED BY
## GOVERNMENT CONCERNING STEVEN KERNKRAUT

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits the following objections to the curative instruction proposed by the government on November 25, 2005 concerning Steven Kernkraut's testimony. Mr. Forbes objects to the government's proposed curative instruction because it is inadequate, does not address all of the issues raised by Mr. Forbes' mistrial motion, does not state that Mr. Kernkraut's testimony regarding the issues raised by Mr. Forbes' motion was without foundation, improperly elicited, and inaccurate, does not cure the constructive amendment and variance issues raised by Mr. Forbes' motion, is too general to have any curative effect, repeats Mr. Kernkraut's improper testimony, and comes too late in the trial to cure the prejudicial effect of Mr. Kernkraut's improper testimony.

    1.    Mr. Kernkraut testified on October 17 and 18, 2005. It is now November 27, 2005, more than a month after Mr. Kernkraut's testimony. At this late date, any curative instruction the Court gives concerning Mr. Kernkraut will be

ineffectual and will not cure the prejudicial effect of Mr. Kernkraut's improper testimony.[1]

A curative instruction that is given after the jury hears improper evidence or argument is inherently ineffectual -- particularly when it is given weeks after the jury is exposed to the improper evidence. See United States v. Kallin, 50 F.3d 689, 694 (9th Cir. 1995) (reversing conviction where curative instruction "was not contemporaneous with the error and was not given until the day following the improper line of questioning, long after the impermissible inference was implanted in the minds of the jury"); United States v. Bradley, 5 F.3d 1317, 1322 (9th Cir. 1993) (reversing conviction where limiting instruction "came at the end of the trial, long after the testimony was first admitted, and was general in nature"); United States v. Solivan, 937 F.2d 1146, 1157 (6th Cir. 1991) (curative instruction came too late to remedy error caused by improper argument); United States v. Hogue, 827 F.2d 660, 664 (10th Cir. 1987) (reversing conviction where limiting instruction given at the end of the trial could not cure prejudice); United States v. Jackson, 418 F.2d 786, 789 (6th Cir. 1969) (reversing conviction where "[t]he limiting instruction came two days (and more than two hundred transcript pages) after the jury had first heard the later suppressed evidence. This afforded the opportunity to absorb it

---

[1]  Mr. Forbes proposed two instructions, Forbes Proposed Instruction Nos. 15.2 and 15.2.1, in an effort to ameliorate some of the prejudicial effect of Mr. Kernkraut's improper testimony. It is Mr. Forbes' position, however, that a mistrial is required based on Mr. Kernkraut's testimony for the reasons set forth in Forbes Retrial Motion No. 15. The government has objected to Mr. Forbes' Proposed Instruction Nos. 15.2 and 15.2.1.

and to correlate it with the evidence lawfully admitted").

    2.  Mr. Kernkraut's improper testimony was highly prejudicial. <u>See</u> Opening and Reply Memoranda in Support of Forbes Retrial Motion No. 15 (incorporated herein by reference). Mr. Kernkraut was the government's lead witness and acted as an overview witness for the jury. His improper testimony, <u>inter alia</u>, portrayed Mr. Forbes as a liar, claimed that it was established that CUC's reported financial results for 1993 and 1994 were false, and constructively amended the indictment by presenting accusations of alleged fraud involving membership numbers and renewal rates that are not charged in the indictment, and as to which no person with purported knowledge of the alleged fraud actually testified. The prejudicial effect of this evidence is too great to be cured by the government's proposed instruction. <u>See, e.g.</u>, <u>United States v. Forlorma</u>, 94 F.3d 91, 95-96 (2d Cir. 1996) (reversing conviction based on improper government argument, despite curative instruction by trial court); <u>United States v. Reyes</u>, 18 F.3d 65, 71-72 (2d Cir. 1994) (reversing conviction based on improper admission of hearsay evidence, despite curative instruction); <u>Davidson v. Smith</u>, 9 F.3d 4, 8 (2d Cir. 1993) (reversing based on improper evidence elicited in violation of court order, despite curative instruction) (collecting cases); <u>United States v. Eccleston</u>, 961 F.2d 955, 962 (D.C. Cir. 1992) (reversing conviction and remanding for new trial where jury heard evidence that was later stricken by court, even though court instructed jury to disregard the stricken evidence; "the attendant jury instruction was insufficient to counterbalance the highly prejudicial content of the inadmissible testimony");

United States v. DiNome, 954 F.2d 839, 844-45 (2d Cir. 1992) (reversing convictions of defendants prejudiced by spillover effect of evidence that was no longer admissible as to them after the trial court granted judgments of acquittal during the trial); United States v. Colombo, 909 F.2d 711, 715 (2d Cir. 1990) (reversing conviction based on improper admission of evidence, despite limiting instruction); United States v. Parks, 411 F.2d 1171, 1173 (1st Cir. 1969) (new trial required where government offered 22 exhibits into evidence that were later stricken in whole or in part where the jury "could not possibly have been able to erase the irrelevant evidence from its collective mind"); United States v. DeDominicis, 332 F.2d 207, 210 (2d Cir. 1964) (reversing based on admission of improper testimony, despite curative instruction striking it and instructing jury to disregard it). Because Mr. Kernkraut's improper testimony directly challenged Mr. Forbes' credibility, it also cannot be cured by an instruction. See Colombo, 909 F.2d at 715.

    3.    The government's proposed curative instruction is inadequate in several respects. It does not address all of the issues raised by Mr. Forbes' mistrial motion. For example, the proposed instruction says nothing about membership numbers or membership renewal rates. The proposed instruction repeats and highlights the substance of certain of Mr. Kernkraut's improper testimony without telling the jury that the testimony was improper, baseless, and inaccurate. Nor does the proposed instruction inform the jury that Mr. Kernkraut's testimony regarding all of the matters set forth in Mr. Forbes' Retrial Motion No. 15 was improper and inaccurate, or that Mr. Kernkraut has no personal knowledge of the

4

allegedly improper accounting about which he testified. The proposed instruction also does not inform the jury that Mr. Kernkraut has no personal knowledge of whether Mr. Forbes lied to him or whether Mr. Forbes lacked knowledge that the information he provided was inaccurate. The instruction also does not make clear that there is no evidence at all that the membership numbers reported by CUC or Cendant were false or inflated in any respect and that there is no evidence at all that the membership renewal rates reported by CUC or Cendant were false or inflated in any respect.

4. The government's proposed curative instruction is so general that it is ineffectual; it fails to give the jury any concrete information about the portions of Mr. Kernkraut's testimony that the jury must disregard and leaves the jurors to speculate about which parts of Mr. Kernkraut's testimony have and have not been stricken.

5. The government's proposed curative instruction does not specifically address Mr. Kernkraut's testimony that he supposedly learned after April 15, 1998 that CUC's financial results in 1993 and 1994 were false. See Tr. 215, 229-30. This testimony was expressly elicited by the government and tied to Mr. Kernkraut's July 1994 analyst report (GX 1400). See Tr. 229-30. The testimony was false and improper. Mr. Kernkraut has no personal knowledge of whether CUC's 1993 or 1994 reported results were false. Neither Cendant's Restatement nor the Cendant Audit Committee Report (one or both of which were the purported sources of his knowledge of this purported fact) addresses the years

5

1993 or 1994. The government cannot elicit improper, baseless, and prejudicial testimony that CUC's financial results for 1993 and 1994 were false (or that membership numbers or renewal rates were false) through a witness with no personal knowledge of the matter and then attempt to "cure" that testimony through a general, vague instruction more than a month after it elicited the improper testimony.[2/]

                           Respectfully submitted,

                           WILLIAMS & CONNOLLY LLP

                           By: _____
                              Brendan V. Sullivan, Jr. (Bar No.ct17115)
                              Barry S. Simon  (Bar No. ct24159)

                           725 Twelfth Street, N.W.
                           Washington, D.C. 20005
                           (202) 434-5000 (phone)
                           (202) 434-5029 (fax)
                           bsimon@wc.com (e-mail)

                           - and -

---

[2/]    The question of whether CUC's reported financial results prior to the first quarter of fiscal year 1995 were false is a disputed matter. Mr. Kernkraut's improper testimony on this point as the lead government witness compounds the error from the Court's denial of Forbes Retrial Motion No. 7 and the Court's refusal to give the missing witness instruction requested by Mr. Forbes (to which the government has objected).

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Objections of Walter Forbes to Curative Instruction Proposed by Government Concerning Steven Kernkraut to be sent on November 27, 2005 to the following via email:

>Norman Gross, Esq.
>U.S. Attorney's Office
>District of New Jersey
>401 Market Street
>Fourth Floor
>Camden, NJ 08101
>
>Michael Martinez, Esq.
>Craig Carpenito, Esq.
>United States Attorneys
>The Federal Building
>U.S. Department of Justice
>450 Main Street, Room 320
>Hartford, CT 06103

The pleading will be delivered by hand to the above-referenced recipients on November 28, 2005.

_____
Barry S. Simon