## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA )<br><br>v. )<br><br>WALTER A. FORBES ) | No. 3:02CR264 (AWT)<br><br>December 5, 2005 |

## MOTION OF WALTER FORBES (1) TO STRIKE
## IMPROPER REBUTTAL ARGUMENT BY GOVERNMENT
## AND (2) FOR A CURATIVE INSTRUCTION AND
## NOTICE OF CONTINUING WALLACH OBJECTION

Defendant Walter A. Forbes, through undersigned counsel, respectfully moves to strike certain portions of the government's rebuttal argument, as set forth below. Mr. Forbes also moves for a curative instruction that the government's arguments on the matters set forth below were improper, have been stricken by the Court, and should be entirely disregarded by the jury. In addition, Mr. Forbes hereby notifies the government of his continuing Wallach objection to certain testimony elicited by the government and certain arguments made by the government in summation. The government's improper arguments highlight the prejudicial effect of the false and misleading testimony elicited by the government from witnesses Cosmo Corigliano, Kevin Kearney, Steven Kernkraut, and Casper Sabatino. See Giglio v. United States, 405 U.S. 150 (1972); Miller v. Pate, 386 U.S. 1 (1967); Napue v. Illinois, 360 U.S. 264 (1959); Alcorta v. Texas, 355 U.S. 28 (1957) (per curiam); White v. Ragen, 324 U.S. 760 (1945) (per curiam); Pyle v. Kansas, 317 U.S. 213 (1942); Mooney v. Holohan, 294 U.S. 103 (1935) (per curiam); Su v. Filion,

335 F.3d 119 (2d Cir. 2003); <u>Jenkins v. Artuz</u>, 294 F.3d 284 (2d Cir. 2002); <u>United States v. Vozzella</u>, 124 F.3d 389 (2d Cir. 1997); <u>United States v. Wallach</u>, 935 F.2d 445 (2d Cir. 1991); <u>DuBose v. Lefevre</u>, 619 F.2d 973 (2d Cir. 1980).  The government's improper arguments also highlight the prejudicial effect of, <u>inter alia</u>, (i) the Court's preclusion of cross-examination of Mr. Corigliano concerning issues surrounding Mr. Corigliano's purported compliance with his plea agreement and his settlement with the SEC; (ii) the government's constructive amendment of the indictment by its attempt to implicate Ernst & Young in the alleged fraud and the erroneous admission of GX 11,007; (iii) the denial of Forbes Retrial Motion No. 7 and Forbes Retrial Motion <i>In Limine</i> No. 23; and (iv) the erroneous admission of evidence concerning Mr. Forbes' asset transfers.

Mr. Forbes moves to strike the following improper arguments by the government in rebuttal summation and requests a curative instruction concerning the following arguments:

1.    The government argued that there is nothing but Walter Forbes' testimony to suggest that Mr. Forbes received a copy of DX 30,549.  Tr. 3594-95.  It suggested that Mr. Forbes' testimony that he received this document should not be believed.  <u>See</u> <u>id.</u>  <u>The government either knows or should know that in the 2004 trial, Mr. Corigliano testified that he prepared this document and gave it to Walter Forbes.</u>  <u>See</u> 2004 Tr. at 9183-85 (Corigliano).  Knowing (or being on notice of) that fact, which is undisputed, the government improperly suggested to the jury that it should reject Mr. Forbes' testimony that he received this document from Cosmo

2

Corigliano. That argument violated <u>Napue</u>, <u>Giglio</u>, <u>Wallach</u>, and their progeny.

      2.      The government argued that neither Mr. Corigliano's name nor his signature is on GX 617 and suggested that there is no indication on GX 617 that the document came from Mr. Corigliano. Tr. 3593-94. The government either knows or should know that the document <u>was on Mr. Corigliano's computer hard drive and that it was produced by Cosmo Corigliano through his counsel</u>. The footer on the document shows that it was produced by Mr. Corigliano and identifies him by name. The government's argument was improper given these undisputed facts, of which the government either is aware or should be aware.

      3.      The government argued that Kevin Kearney has no motivation to lie and suggested that Mr. Kearney's testimony should be evaluated as that of an ordinary witness. <u>See</u> Tr. 3573 ("Well, Kevin Kearney didn't plead guilty to a crime. He does not have a plea agreement with the United States. His testimony had no bearing whatsoever on his SEC settlement made years ago. Does he have a motivation beyond that of an ordinary witness?"). This argument was improper in two respects. First, the government either knows or should know that Kevin Kearney is <u>not</u> an ordinary witness because he has received informal immunity from the government, which did not prosecute him for his crimes in exchange for his cooperation. The Court will give the jury an instruction to that effect (<u>see</u> Instruction No. IV(R)), and the government itself requested such an instruction in its proposed jury instructions. It is entirely improper for the government to suggest to the jury that Kevin Kearney is a disinterested witness with no motive to falsify

his testimony in favor of the government when the government knows that precisely the opposite is true. Second, the government improperly argued that Mr. Kearney's testimony had no bearing at all on his SEC settlement. There is no evidence in the record on this point, and the government's argument lacks any factual basis.

4.       The government argued that Mr. Sabatino has no motive to testify in a manner that pleases the government because he was called as a defense witness and gave certain testimony favorable to the defense. Tr. 3574-75. This argument was improper. The government knows that Mr. Sabatino has a plea agreement with the government and that the plea agreement gives him a motive to testify falsely in favor of the government. The Court will instruct the jury to that effect. See Instruction No. IV(P). It was improper to argue, as the government did, that Mr. Sabatino has no motive to try to please the government.

5.       The government repeatedly argued that Mr. Corigliano's plea agreement gives him a motive to testify truthfully. Tr. 3566, 3575. The government also argued that the relevant question is not whether Mr. Corigliano lied in the past, before he signed his plea agreement, but rather whether Mr. Corigliano lied on the witness stand in this case. Tr. 3565. Those arguments were improper in light of Mr. Corigliano's repeated lies in the 2004 trial and in this trial -- all of which the government either is aware or should be aware[1] -- and the fact

_____

[1]       These lies include, inter alia, (i) Mr. Corigliano's 2004 testimony that he had a meeting with Messrs. Forbes and Shelton at CUC's offices a few days after March 9, 1998, when documentary evidence conclusively established that Mr. Forbes was traveling outside Connecticut from March 9, 1998 until March 22, 1998;

4

that the government has chosen to allow Mr. Corigliano to violate his obligations under the plea agreement without suffering any adverse consequences. The argument highlights the <u>Wallach</u> issues raised by Mr. Forbes, <u>see</u> Forbes Retrial Motion No. 13 (incorporated herein by reference), as well as the prejudicial effect of the Court's preclusion of cross examination of Mr. Corigliano concerning his violation of his obligations under the plea agreement (including with respect to his disclosure obligations to the SEC and the misleading and incomplete financial information his counsel provided to the SEC on his behalf).

      6.     The government argued that Mr. Corigliano did not testify falsely about the issue of bug sweeping and that GX 3075 supports Mr. Corigliago's claim that there was additional bug sweeping at CUC in 1997. <u>See</u> Tr. 3598-99. The government argued that GX 3075 "shows that CUC did bug sweeps at least three times per year. Government 3075 does not show that Cosmo is incorrect, much less lying." Tr. 3599. These arguments were improper for at least two reasons. First, the government either knows or should know that Mr. Corigliano's 2004 testimony about a purported bug sweeping in November 1997 in connection with the Cendant merger was false, as demonstrated by unrefuted documentary

_____

(ii) Mr. Corigliano's 2004 testimony that he did not write GX 613 and that it was not on his computer, when the document was indisputably on the hard drive of his computer; and (iii) Mr. Corigliano's false testimony in this proceeding about a purported phone call that Mr. Forbes had with Kirk Shelton about the Ideon merger that Mr. Corigliano previously testified was substantively different and in which Mr. McLeod also participated. These are just a few examples of the many lies Mr. Corigliano told under oath in these proceedings.

evidence.  Yet the government continues to argue Mr. Corigliano's credibility on this

subject and in general.  Second, the government either knows or should know from

the document productions by E.E.D (the bug sweeping company) and Cendant and

the government's interview of E.E.D. representative Ray Melucci that <u>there were no</u>

<u>bug sweeps of CUC in 1997 after the January 1997 sweep reflected in GX 3075.</u>

E.E.D. produced its entire CUC bug sweeping file to the government, and the only

1997 sweep reflected in that production is the January 1997 sweep.  Given those

facts, it is improper for the government to argue that Mr. Corigliano's testimony in

this proceeding about purported additional sweeps of CUC's office in 1997 was

truthful.

   7. The government argued that Mr. Kernkraut gave truthful

testimony about CUC's purported conference calls in the years prior to 1997, and

that Mr. Forbes' testimony to the contrary should not be believed.  Tr. 3563-64.

That argument was improper because the government either knows or should know

from the Cendant production and the government's numerous witness interviews

that there are no records of <u>any</u> CUC quarterly conference calls prior to the

announcement of the Cendant merger in 1997.  The government improperly argued

that Mr. Forbes' testimony on this point was false when it either knows or should

know that Mr. Kernkraut's testimony was (at best) simply wrong.

   8. The government argued that Mr. Sabatino testified on cross-

examination that there were unsupported topside adjustments under Mr. Bell and

that his prior testimony on this subject in both this trial and the 2004 proceeding

6

was incorrect. Tr. 3574. The government further argued that GX 9322 refreshed

Mr. Sabatino's recollection on this point. Id. This argument was improper because

the government knows that prosecutor Richard Schecter showed Mr. Sabatino

GX 9322 in preparation for the 2004 trial but Mr. Sabatino nevertheless testified at

that trial that there were no unsupported topside adjustments under Mr. Bell. See

Ex.1 hereto at 2. The government's argument (and its cross-examination of Mr.

Sabatino) created the false and misleading impression that Mr. Sabatino simply

was not shown GX 9322 before and that it immediately refreshed his recollection

that there were unsupported topside adjustments under Mr. Bell.

      9.     The government argued that there were no documents that

incriminate Mr. Forbes because "conspirators don't attach their names and

signatures to incriminating documents." Tr. 3593. The government then identified

several alleged "cheat sheets," GX 58A, GX 62B, GX 663, and GX 1777 and argued

that "Cosmo's name, Mr. Corigliano's name, signature, aren't on any of those." Tr.

3593. Those arguments were false and misleading in several respects. First, Mr.

Corigliano's handwriting is on GX 58A, GX 62B, and GX 663. That clearly

identifies the documents as documents Mr. Corigliano had in his personal

possession. It was false and misleading for the government to suggest to the jury

that the alleged "cheat sheets" contain no information on the face of the documents

that would link them to Mr. Corigliano. Second, the government either knows or

should know that there are several e-mails and other documents that the

government described in the 2004 trial as documents showing the fraud that were

sent to and from various alleged co-conspirators, including GX 31, GX 506, GX 519, GX 530, and GX 537. It is simply untrue that there are no documents that show the alleged co-conspirators discussing incriminating matters with one another. What is true is that Mr. Forbes was not copied on any of those documents. It is improper and misleading for the government to argue that conspirators do not attach their names to incriminating documents when the government knows that this is untrue.

10.     The government argued that Mr. Corigliano did not receive any reward from his settlement with the SEC because he paid back more than his unjust enrichment. See Tr. 3576-78. It argued, "can't the SEC just decide that Cosmo Corigliano's unjust enrichment claim was satisfied by $14 million?" Tr. 3577-78. These arguments were improper in several respects. First, the government either knows or should know from DX 1060 that the SEC did not determine that its claims against Mr. Sabatino were satisfied by $14 million. To the contrary, DX 1060 reflects that the SEC forgave an undetermined amount of interest in its settlement with Mr. Corigliano. That was clearly a benefit to Mr. Corigliano, as was the SEC's decision to allow him to keep assets worth $4 million. Second, the government either knows or should know that the SEC could have imposed a 100% penalty on the amounts it claimed from Mr. Corigliano, as it did with Kevin Kearney. The fact that the SEC did not impose any penalty on Mr. Corigliano, and allowed him to keep $4 million is assets, further establishes that the settlement gave Mr. Corigliano significant benefits. The government's argument to the contrary was false and misleading. Third, the government's

8

improper argument on this point underscores the prejudicial effect of the Court's preclusion of cross-examination on matters relating to his counsel's communications with the SEC on his behalf and the U.S. Attorney's Office's intervention with the SEC on behalf of Mr. Corigliano.

11.     The government argued that E&Y saw red flags in CUC's accounting and nevertheless gave CUC clean opinions year after year.  Tr. 3587-90. This argument, in addition to the testimony and documentary evidence the government presented on this point, including GX 11,007, constituted a constructive amendment of the indictment and/or a prejudicial variance.  See Forbes Motion *In Limine* No. 25 (incorporated herein by reference); Forbes Retrial Motion No. 17 (incorporated herein by reference).

12.     The government argued that Kevin Kearney's testimony should be believed and that it corroborates Cosmo Corigliano.  See Tr. 3572-73.  That argument was improper for the reasons set forth in Forbes Retrial Motion No. 18 (incorporated herein by reference).

13.     The government argued Anne Pember's guilty plea as substantive evidence.  See Tr. 3556-57 ("Anne Pember kept the books of CUC and HFS separate after the merger.  Anne Pember pled guilty to conspiring to commit this very fraud.").  That argument was improper because Ms. Pember's guilty plea was admitted for a limited purpose relating to her credibility and may not be considered as evidence of Mr. Forbes' alleged guilt.  The Court has so instructed the jury, and the Court's final charge contains the same instruction.  See Instruction

9

No. IV(Q).

14.    The government argued that Anne Pember's compensation and severance should be viewed differently that Laura Hamilton's because Ms. Pember "was not an executive with the company." Tr. 3569. The government also argued that Anne Pember was a "lower level employee." Tr. 3568. Those arguments were false and/or misleading. Ms. Pember was a senior vice president at CUC. See Tr. 988 (Pember).

15.    The government made arguments about Mr. Forbes' asset transfers. See Tr. 3599-3602. Those arguments highlight the improper admission of asset transfer evidence in this case. See Forbes Retrial Motion *In Limine* No. 5 (incorporated herein by reference); Forbes Opp. to Government Retrial Motion *In Limine* No. 1 (incorporated herein by reference).

16.    The government argued that Mr. Forbes created CUC's financial statements based on the fact that he signed management representation letters. See Tr. 3582-83. That argument was improper because the unrefuted evidence in the record, from both Mr. Sabatino and Mr. Forbes, was that Mr. Forbes had nothing to do with the preparation of CUC's financial statements. Tr. 2583-85; 2699-2700.

17.    The government argued based on GX 616 that Mr. Forbes fought to keep Cosmo Corigliano in the accounting function. Tr. 3596. That argument highlights the improper admission of GX 616, which is an incomplete document that lacks the organizational charts referenced in the document.

10

18.    The government argued that, to believe Mr. Forbes, the jury must disbelieve Mr. Kernkraut and Mr. Monaco. That argument was improper, because there can be innocent reasons for differences in people's recollections of events. For example, Mr. Monaco contradicted Mr. Kernkraut's testimony that he was not involved in advising HFS on the Cendant merger. Does that mean that, to believe Mr. Monaco, the jury must disbelieve Mr. Kernkraut? Cf. United States v. Scanio, 900 F.2d 485, 493 (2d Cir. 1990); United States v. Hestie, 439 F.2d 131, 132 (2d Cir. 1971).

19.    The government argued that Mr. Kernkraut's stricken testimony related to "what occurred after April 15th, 1998." Tr. 3559. That argument was improper because the testimony stricken by the Court encompassed more than what happened after April 15, 1998. The argument also improperly suggested that Mr. Heckler gave the same testimony as Mr. Kernkraut and could simply be substituted for the stricken Kernkraut testimony. Tr. 3559-60. That argument was not accurate because, inter alia, Mr. Heckler (unlike Mr. Kernkraut) did not testify about any allegedly-false accounting at CUC in the years 1993 and 1994. Nor did Mr. Heckler testify that CUC's membership numbers or membership renewal rates were false or inflated. In addition, the government's argument relied on testimony by Mr. Kernkraut that was improper for the reasons set forth in Forbes Retrial Motion Nos. 15 and 16 (incorporated herein by reference).

20.    The government argued that "there are at least three witnesses who put incriminating statements in the defendant's mouth," Tr. 3558, and

11

included Mr. Kernkraut as one of those witnesses. In particular, the government argued that Mr. Kernkraut's testimony demonstrated that Mr. Forbes lied when he testified that he was not involved in the establishment of the Ideon reserve. See Tr. 3572. Those arguments were improper because Mr. Kernkraut did not testify to any incriminating statements by Mr. Forbes (apart from Mr. Kernkraut's stricken testimony), and the conversations to which he testified did not show that Mr. Forbes was involved in determining what was to be included in the Ideon reserve.

21.    The government made arguments based on Mr. Forbes' severance agreement. Tr. 3562. Those arguments were improper for the reasons set forth in Forbes Retrial Motion *In Limine* No. 4 (incorporated herein by reference). In addition, the government argued the terms of the severance agreement as substantive evidence, see Tr. 3602, when the agreement was admitted for the limited purpose of consideration with respect to Mr. Forbes' credibility.

22.    The government argued Mr. Monaco's testimony concerning a purported September 1997 meeting with Mr. Forbes to which Mr. Monaco did not testify at the 2004 trial. At that trial, Mr. Monaco testified to a virtually identical conversation with Mr. Shelton and never said that he discussed Anne Pember with Mr. Forbes. See Tr. 781-85. That testimony, and the government's reliance on it was improper, and violated Wallach.

23.    The government argued that Mr. Kernkraut's testimony "shows the defendant is lying when he says that he had nothing to do with establishing the Ideon merger reserve or that he had nothing to do with increasing it." Tr. 3572.

That argument was improper because Mr. Kernkraut has no personal knowledge of whether Mr. Forbes had anything to do with establishing or increasing the Ideon merger reserve, and Mr. Kernkraut's testimony does not contradict Mr. Forbes' testimony in any respect on this subject.

24.    The government argued that Mr. Corigliano's plea agreement required him to use his best efforts to settle with the SEC.  <u>See</u> Tr. 3576.  That argument was improper in light of the evidence the Court did not permit defense counsel to introduce during Mr. Corigliano's cross-examination (but of which the government is or should be aware) that shows that Mr. Corigliano violated this obligation in his plea agreement by, <u>inter</u> <u>alia</u>, failing to provide timely and accurate financial information to the SEC through his counsel.

25.    The government made arguments based on portions of the Court's instructions on conspiracy to which Mr. Forbes has objected.  <u>See</u> Tr. 3592. Those arguments highlight the prejudicial effect of these instructions, which the Court is giving over Mr. Forbes' objection.

26.    The government argued that CUC had two corrupt CFO's.  <u>See</u> Tr. 3557.  That argument was improper for the reasons set forth in Forbes Retrial Motion No. 7 and Forbes Retrial Motion *In Limine* No. 23 (both of which are incorporated herein by reference), and exacerbated the prejudice from the Court's failure to give Mr. Forbes' proposed missing witness instruction and the government's improper eliciting of testimony from its first witness, Mr. Kernkraut, that there was a fraud at CUC in 1993 and 1994 that affected the financial

13

numbers it reported in those years.

27.    The government argued that Mr. Kernkraut had no motive to testify falsely in this case. See Tr. 3564. That was improper because the government argued in response to Forbes Retrial Motion No. 15 that certain portions of Mr. Kernkraut's testimony should not be stricken because it related to an anticipated bias challenge. See Gov't Opp. to Forbes Retrial Motion No. 15 at 18. Having made that argument to salvage a portion of Mr. Kernkraut's improper testimony, the government cannot argue to the jury that Mr. Kernkraut has no motive to lie.

## CONCLUSION

For the foregoing reasons, the Court should strike the improper arguments set forth above and give a curative instruction that the arguments were improper, have been stricken, and should not be given any consideration by the jury.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (Bar No.ct17115)
Barry S. Simon  (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

14

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

15

# EXHIBIT 1



**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

*Securities & Health Care Fraud Unit*

---

*970 Broad Street, Suite 700*                                    *(973)645-2700*
*Newark, New Jersey 07102*

November 14, 2005

**VIA Electronic Mail**

Barry Simon, Esq.
c/o Residence Inn by Marriot
942 Main Street
Hartford, CT 06103

     Re:  **United States v. Walter A. Forbes**
          **No. 3:02CR264 (AWT)**

Dear Mr. Simon:

     In response to your letter to us of November 13, 2005, the Government strenuously disagrees with your mischaracterization of certain portions of the Government's examination of Casper Sabatino and Kevin Kearney during the retrial. Thus, the Government categorically rejects your assertion that the any questioning by the Government "suggested that . . . Mr. Sabatino had never seen GX 9322 before." To the contrary, the Government's cross-examination merely inquired if Mr. Sabatino was shown a copy of GX 9322 by either of us, Michael Martinez or Craig Carpenito. Tr. 2633-34.

     Since all of your inquiries regarding point 1 of your letter depend on the accuracy of your (mis)characterization of the Government's purported "suggestion," the Government believes that there is nothing that needs to be produced in response to that mischaracterization. In any event, the Government does not have any materials in its possession regarding Mr. Sabatino, other than the voluminous materials previously disclosed to the defense, that must be disclosed under either <u>Brady</u>, <u>Giglio</u>, or <u>Wallach</u>. The same holds for your request for additional disclosures regarding Kevin Kearney in points 2-4 of your letter.

Nevertheless, in response to your November 13 letter, and consistent with the Government's on-going practice in this case to err on the side of disclosure, we inquired of Mr. Schechter and Ms. Mathews if Mr. Sabatino was ever shown a copy of GX 9322 by them. Mr. Schechter recalled that he had shown Sabatino a copy of GX 9322 before Mr. Sabatino testified during the first trial. Mr. Schechter recalled that, after looking at that document, Mr. Sabatino acknowledged that it was consistent with the unsupported topside adjustments made after 1995, and that he did not dispute that unsupported topside adjustments were made prior to 1995. Mr. Sabatino did not, however, indicate that the document refreshed his recollection about participating in the unsupported topside adjustments prior to 1995. Mr. Schechter's recollection is that Mr. Sabatino could not say he recalled the pre-1995 unsupported adjustments. Mr. Sabatino did agree that such fraud was committed, based on the document, and based on the plea allocution of Mr. Corigliano that Mr. Sabatino witnessed. Mr. Sabatino was not arguing that there was no such fraud. Since Mr. Sabatino's statements to Mr. Schechter regarding GX 9322 did not become even arguably relevant until Mr. Sabatino's recross-examination during the retrial, the Government was under no obligation to disclose that statement to you before that time.

In response to your letter, the Government also confirmed with Mr. Gerber that all notes taken by him during any and all witness interviews during the course of the investigation in this case have been turned over to the defense long ago, even though such disclosure goes far beyond the Government's disclosure obligations.

In additional response to points 2-3 of your letter, the Government does not possess any notes prepared by either Mr. Pazzamont or Ms. Markel regarding the July 10, 2001 interview of Mr. Kearney. Moreover, since neither of those persons, unlike Mr. Gerber, have ever been members of the prosecution team in this case, the Government is under no obligation to obtain their notes and turn them over to the defense. E.g., United States v. Locascio, 6 F.3d 924, 949-50 (2d Cir. 1993); United States v. Pelullo, 399 F.3d 197, 216 (3d Cir. 2005). In any event, the members of the Government's prior prosecution team have confirmed to us that the Government has already disclosed to the defense all relevant materials from the files of the SEC that were ever possessed by any members of that prosecution team in this case, again consistent with its approach throughout this case to disclose voluminous materials to the defense beyond those which the Government was obligated to disclose. We have received no

-2-

additional materials from the SEC since the first trial was
completed that have not been disclosed to the defense.

Sincerely,

/s/ Michael Martinez

MICHAEL MARTINEZ
United States Department of Justice
Special Attorney

/s/ Craig Carpenito

CRAIG CARPENITO
United States Department of Justice
Special Attorney

## CERTIFICATE OF SERVICE

   I hereby certify that I caused the foregoing Motion of Walter Forbes (1) to Strike Improper Rebuttal Argument by Government and (2) for a Curative Instruction and Notice of Continuing <u>Wallach</u> Objection to be sent on December 5, 2005 to the following via email:

      Michael Martinez, Esq.
      Craig Carpenito, Esq.
      U.S. Attorney's Office
      450 Main Street, Room 320
      Hartford, CT  06103

      Norman Gross, Esq.
      U.S. Attorney's Office
      District of New Jersey
      401 Market Street
      Fourth Floor
      Camden, NJ  08101

   The pleading will be hand-delivered to Messrs. Martinez and Carpenito on December 6, 2005 and will be sent by FedEx to Mr. Gross on December 6, 2005.

Barry S. Simon