UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | No. 3:02CR264 (AWT) |
| v. | ) | |
| | ) | |
| WALTER A. FORBES | ) | December 7, 2005 |
| | ) | |
| | ) | |

**FINAL OBJECTIONS OF WALTER FORBES TO THE
COURT'S FINAL JURY INSTRUCTIONS**

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

OBJECTIONS TO DEFINING THE ALLEGED FRAUD MORE BROADLY
    THAN THE INDICTMENT .............................................................2

OBJECTIONS TO DEFINING THE ALLEGED FALSE STATEMENTS
    MORE BROADLY THAN THE INDICTMENT...................................6

OBJECTIONS TO FAILURE TO INSTRUCT ON GENERALLY
    ACCEPTED ACCOUNTING PRINCIPLES ........................................8

OBJECTIONS TO FAILURE TO GIVE MISSING WITNESS
    INSTRUCTION ......................................................................13

OBJECTIONS TO REPEATED CHARGE ON PROOF OF INTENT ......................14

OBJECTIONS TO INSTRUCTION NO. I(A) (Introduction) ...................................16

OBJECTIONS TO INSTRUCTION NO. I(C) (Indictment is Not Evidence)............17

OBJECTIONS TO INSTRUCTION NO. I(D) (Failure to Name a Defendant) ........18

OBJECTIONS TO INSTRUCTION NO. I(F)(1) (Presumption of Innocence
    and Burden of Proof) ....................................................................20

OBJECTIONS TO INSTRUCTION NO. I(F)(2) (Proof Beyond a Reasonable
    Doubt) .......................................................................................21

OBJECTIONS TO INSTRUCTION NO. I(H) (Matters the Jury May Not
    Consider)...................................................................................22

OBJECTIONS TO INSTRUCTION NO. I(J) (Government as a Party) ...................23

OBJECTIONS TO INSTRUCTION NO. I(K) (Possible Punishment) ......................24

OBJECTIONS TO INSTRUCTION NO. II(A) (Overview)........................................25

OBJECTIONS TO INSTRUCTION NO. II(B) (No Respondeat Superior
    Liability) ...................................................................................27

OBJECTIONS TO INSTRUCTION NO. II(C)(1) (The Indictment and the
    Statute) ....................................................................................28

OBJECTIONS TO INSTRUCTION NO. II(C)(2) (Elements of the Offense)............30

OBJECTIONS TO INSTRUCTION NO. II(C)(2)(a) (First Element –
    Existence of Unlawful Agreement)................................................32

OBJECTIONS TO INSTRUCTION NO. II(C)(2)(b) (Second Element –
    Membership in the Conspiracy)....................................................38

OBJECTIONS TO INSTRUCTION NO. II(C)(2)(b)(i) (Knowingly and
    Willfully) ...................................................................................42

i

OBJECTIONS TO INSTRUCTION NO. II(C)(2)(b)(ii) (Requisite Intent) ............... 47

OBJECTIONS TO INSTRUCTION NO. II(C)(2)(b)(iii) (Good Faith) ....................... 48

OBJECTIONS TO INSTRUCTION NO. II(C)(2)(c) (Third Element –
    Commission of Overt Act) ......................................................... 50

OBJECTIONS TO INSTRUCTION NO. II(C)(2)(d) (Fourth Element –
    Commission of Overt Act in Furtherance of the Conspiracy) ......................... 51

OBJECTIONS TO INSTRUCTION NO. II(D)(1) (The Indictment and the
    Statute) ..................................................................... 52

OBJECTIONS TO INSTRUCTION NO. II(D)(2) (Elements of the Offense) ........... 53

OBJECTIONS TO INSTRUCTION NO. II(D)(2)(a) (First Element – False
    Statement of Fact in SEC Report) ................................................ 54

OBJECTIONS TO INSTRUCTION NO. II(D)(2)(b) (Second Element –
    Materiality) .................................................................. 56

OBJECTIONS TO INSTRUCTION NO. II(D)(2)(c) (Third Element – Made
    or Caused to Be Made) .......................................................... 58

OBJECTIONS TO INSTRUCTION NO. II(D)(2)(d) (Fourth Element –
    Knowingly, Willfully and With Intent to Deceive) .................................. 59

OBJECTIONS TO INSTRUCTION NO. II(E)(1) (The Indictment and the
    Statutes and Regulation) ....................................................... 61

OBJECTIONS TO INSTRUCTION NO. II(E)(2) (Elements of the Offense) ............. 63

OBJECTIONS TO INSTRUCTION NO. II(E)(2)(a) (First Element –
    Fraudulent Act) ............................................................... 66

OBJECTIONS TO INSTRUCTION NO. II(E)(2)(b) (Second Element – In
    Connection With) .............................................................. 72

OBJECTIONS TO INSTRUCTION NO. II(E)(2)(c) (Third Element – Use of a
    Means or Instrumentality of Interstate Commerce) ................................. 73

OBJECTIONS TO INSTRUCTION NO. II(E)(2)(d) (Fourth Element –
    Knowingly, Willfully and with the Intent to Defraud) .............................. 74

OBJECTIONS TO INSTRUCTION NO. II(F) (Aiding and Abetting) ...................... 75

OBJECTION TO INSTRUCTION NO. II(H) (Use of Conjunctive in the
    Indictment) ................................................................... 79

OBJECTIONS TO INSTRUCTION NO. III (The Defendant's Position) .................. 80

OBJECTIONS TO INSTRUCTION NO. IV(A) (Evidence in this Case) ................... 83

OBJECTIONS TO INSTRUCTION NO. IV(D) (Acts and Declarations of
    Alleged Co-Conspirators) ....................................................... 84

OBJECTIONS TO INSTRUCTION NO. IV(G) (Evidence Concerning the
    Cendant Restatement) ................................................................. 85

OBJECTIONS TO INSTRUCTION NO. IV(H) (Certain Testimony of Steven
    Kernkraut) ................................................................................... 86

OBJECTIONS TO INSTRUCTION NO. IV(J) (Use of Particular
    Investigative Techniques or Witnesses) .................................... 92

OBJECTIONS TO INSTRUCTION NO. IV(K) (Credibility of the Witnesses) ......... 94

OBJECTIONS TO INSTRUCTION NO. IV(N) (Uncontradicted Testimony) ........... 95

OBJECTIONS TO INSTRUCTION NO. IV(O) (Testimony of Expert
    Witnesses) ................................................................................... 96

OBJECTIONS TO INSTRUCTION NO. IV(Q) (Defense Witness Testifying
    Under Plea Agreement) ............................................................... 97

OBJECTIONS TO INSTRUCTION NO. IV(R) (Not Proper to Consider
    Guilty Plea of Government Witness) ........................................... 98

OBJECTIONS TO INSTRUCTION NO. IV(T) (Defendant's Testimony) ............... 100

OBJECTIONS TO INSTRUCTION NO. V(B) (Notes) .............................. 101

OBJECTIONS TO INSTRUCTION NO. V(D) (Exhibits and Testimony; Use
    of the Indictment) ...................................................................... 102

ADDITIONAL OBJECTIONS TO FAILURE TO GIVE CHARGES
    REQUESTED BY MR. FORBES ................................................. 103

OBJECTIONS TO FAILURE TO GIVE CURATIVE INSTRUCTIONS
    REQUESTED BY MR. FORBES ................................................. 112

**INTRODUCTION**

Mr. Forbes, through undersigned counsel, respectfully submits his final objections to the Court's jury charge.

## OBJECTIONS TO DEFINING THE ALLEGED FRAUD MORE BROADLY THAN THE INDICTMENT

1.       Mr. Forbes objects to the Court's instructions because they define the alleged fraud more broadly than the indictment.  See Court Instructions II(E)(1), II(E)(2), II(E)(2)(a).  Although there are various types of fraud that can be alleged and proven under the securities fraud statute, only one type of fraud is alleged in Counts 1 and 4 of the indictment—the alleged dissemination of materially false financial information in specific SEC filings, annual reports, and press releases.  However, the Court's instructions and the government's presentation of the case invite the jury to convict Mr. Forbes for other types of alleged fraud that are not charged in this case.  This is an unconstitutional amendment of the indictment and/or a prejudicial variance.  See, e.g., Stirone v. United States, 361 U.S. 212 (1960); United States v. Wozniak, 126 F.3d 105, 109 (2d Cir. 1997) ("A constructive amendment of an indictment is a per se violation of the Grand Jury Clause of the Fifth Amendment that requires reversal even without a showing of prejudice to the defendant." (quotation & brackets omitted)); United States v. Mollica, 849 F.2d 723, 729 (2d Cir. 1988) ("In light of the current broad range of conduct covered by the federal fraud statutes, it is critical that courts vigilantly enforce the Fifth Amendment requirement that a person be tried only on the charges contained in the indictment returned by the grand jury." (quotation omitted)).  The Court's instructions should clearly define the fraud to involve only the alleged dissemination of materially false financial information in specific SEC filings, annual reports, and press releases, and, in instructing the jury on the

2

requirement of unanimity, should identify the particular false statement(s) at issue in each count.

2.      Count 4 of the indictment is predicated solely on alleged false statements.  Count 4 does not identify the substance of the alleged fraud, but states that the alleged fraud is set forth in paragraphs 18 through 57 of Count 1.  <u>See</u> Indict., Count 4 ¶ 3.  Paragraphs 18 through 57 of Count 1 allege that Mr. Forbes was responsible for various purported accounting irregularities that resulted in the alleged fraudulent overstatement of CUC's and Cendant's financial results.  Those paragraphs further allege that Mr. Forbes caused these allegedly overstated financial results to be reported to the SEC and to the investing public in periodic filings with the SEC and in press releases.  These paragraphs of the indictment identify the following specific SEC filings and press releases, which allegedly contained false statements—(1) a March 19, 1996 CUC press release; (2) an April 25, 1996 CUC Form 10-K; (3) a March 11, 1997 CUC press release; (4) a May 1, 1997 CUC Form 10-K; (5) a December 15, 1997 CUC Form 10-Q; (6) a February 4, 1998 Cendant press release; (7) a March 31, 1998 Cendant Annual Report; and (8) a March 31, 1998 Cendant Form 10-K.  Indict., Count 1 ¶¶ 57(a)-(e) & (g)-(i).  Thus, the indictment charges only false statements, not some other device, scheme, or artifice to defraud; not omissions; and not some other transaction, practice, or course of business that would operate as a fraud.  The government effectively concedes that the substance of the alleged securities fraud consisted of the purported making of materially false statements in the particular SEC filings and

3

press releases identified in the indictment.  <u>See</u> United States Opp'n Forbes Mot.

Mistrial Due to Constructive Amendment (filed July 30, 2004) at 33 ("Forbes was

entitled to disclosure of the particular public filings or press releases by CUC or

Cendant that were materially false or misleading, but not to each and every non-

public statement or omission which made those public filings and statements false

or misleading.  No bill of particulars was needed for that purpose, since the

indictment identified in exacting detail the particular public filings and press

releases of CUC and Cendant which contain false and misleading information."); <u>see</u>

<u>also</u> Gov't Response to Preliminary Proposed Jury Instructions (filed Oct. 8, 2004)

at 27 ("The Government does not oppose a properly worded instruction that, in

order to convict a defendant for securities fraud, the jury must unanimously agree

on at least one materially false or misleading statement.").

        3.     The Court's instructions on securities fraud nevertheless define

the fraud to encompass more than false statements.  For example, Instruction No.

II(E)(2)(a) instructs the jury on omissions, "device[s]," "scheme[s]," "artifice[s]," and

"trick[s]."  Moreover, the Court's instructions on count 4 do not identify the alleged

false statements at issue, but instead invite the jurors to convict Mr. Forbes for

whatever they each deem the fraud to be.

        4.     The government has also invited the jury to convict Mr. Forbes

for alleged frauds that are not charged in the indictment.  For example, Mr.

Kernkraut testified that CUC falsified its membership numbers, an allegation not

made in the indictment.  In light of this evidence, it is critical that the jury be

4

carefully instructed about what fraudulent conduct must actually be proven. The Court's charge fails to do so.

## OBJECTIONS TO DEFINING THE ALLEGED FALSE STATEMENTS MORE BROADLY THAN THE INDICTMENT

1.      Mr. Forbes objects to the Court's instructions on Counts 2-3 because they define the alleged false statements more broadly than the indictment. See Court Instructions II(D)(2)(a). An instruction on the manner in which the alleged false statements at issue are alleged to be false is necessary to ensure that Mr. Forbes is tried only on the charges in the indictment, that the jury unanimously agrees on the same alleged false statement, and that the jury conducts a proper evaluation of materiality.

2.      Mr. Forbes objects to the Court's instructions on Counts 2-3 because they do not identify the manner in which each alleged false statement is alleged to be false. For example, the paragraph on the first alleged false statement in Count 2 should include the following language, which was in the government's initial proposed jury instruction in the 2004 trial: "In order to establish the statement was false, the government must prove beyond a reasonable doubt that total revenue was overstated by approximately $44 million." The indictment alleges that the first statement was allegedly false because total revenue was overstated by approximately $44 million. The jury could convict based on a finding that total revenue was understated by $44 million or was overstated by $5 million. Such a finding might amount to a finding that the statements were false, but they would be different false statements than those charged in the indictment. Inclusion of this instruction as worded constitutes an unconstitutional amendment of the indictment

6

and/or a prejudicial variance.  See, e.g., Stirone v. United States, 361 U.S. 212

(1960); United States v. Wozniak, 126 F.3d 105, 109 (2d Cir. 1997) ("A constructive

amendment of an indictment is a per se violation of the Grand Jury Clause of the

Fifth Amendment that requires reversal even without a showing of prejudice to the

defendant." (quotation & brackets omitted)); United States v. Mollica, 849 F.2d 723,

729 (2d Cir. 1988) ("In light of the current broad range of conduct covered by the

federal fraud statutes, it is critical that courts vigilantly enforce the Fifth

Amendment requirement that a person be tried only on the charges contained in the

indictment returned by the grand jury." (quotation omitted)); United States v.

Crocker, 568 F.2d 1049, 1060 (3d Cir. 1977) ("[W]hen a grand jury has specifically

charged the manner in which testimony [or another false statement] is untruthful,

permitting the government to prove that it is untruthful in an entirely different

manner amounts to a constructive amendment of the indictment rather than a mere

variance.").

## OBJECTIONS TO FAILURE TO INSTRUCT ON GENERALLY ACCEPTED ACCOUNTING PRINCIPLES

Mr. Forbes objects to the Court's instructions because they lack any instructions on generally accepted accounting principles ("GAAP") and on the interaction between GAAP and the elements of falsity and intent. See Forbes Instr. Nos. 29, 36, 50, 56, 66, 72.

1.     The government must prove GAAP violations because all of the substantive charges in the indictment are predicated upon GAAP violations. The failure to provide instructions on GAAP constitutes a constructive amendment and/or a prejudicial variance. The indictment alleges that CUC and Cendant failed to comply with GAAP in accounting for merger reserves, membership cancellation reserves, revenue recognition, and other items and that as a result CUC and Cendant fraudulently inflated their financial results by specific amounts. See, e.g., Indict., Count 1 ¶¶ 31-33 (alleging GAAP standards for merger reserves, i.e., that reserve must be based on good faith estimate of one-time merger costs), 35-36 (alleging that Ideon reserve did not comply with standards set forth in paragraphs 31-33, i.e., that it was not based on a good faith estimate of one-time merger costs), 39-40 (alleging that Cendant reserve did not comply with standards set forth in paragraphs 31-33, i.e., that it was not based on a good faith estimate of one-time merger costs), 42-43 (alleging that treatment of merger reserves violated "GAAP" and that as a result CUC and Cendant fraudulently overstated operating income in the specified amounts), 47-48 (alleging that treatment of membership cancellation reserve violated "GAAP" and that as a result CUC and Cendant fraudulently

8

overstated earnings in the specified amounts), 52-53 (alleging that allocation between deferred and immediate revenue recognition programs violated "GAAP" and that as a result CUC and Cendant fraudulently overstated earnings in the specified amounts), 54 (alleging GAAP violations).  These allegations are incorporated in each substantive count of the indictment.  See Indict., Counts 2-4 ¶ 1.  Moreover, these alleged GAAP violations, which purportedly resulted in overstated financial results, are alleged to be the substance of the purported fraud charged in Count 4.  See Indict. Count 4 ¶ 1.  Having charged that CUC's and Cendant's operating results were overstated because of the alleged GAAP violations, the government cannot now amend the indictment.

2.    The government must prove that a GAAP violation occurred to establish falsity, which is an essential element of the substantive charges in the indictment.  The specific purportedly false statements charged in the indictment consist of financial figures contained in CUC's and Cendant's SEC filings, annual reports, and press releases.  See, e.g., United States Opp'n Forbes Mot. Mistrial Due to Constructive Amendment (filed July 30, 2004) at 33 ("Forbes was entitled to disclosure of the particular public filings or press releases by CUC or Cendant that were materially false or misleading, but not to each and every non-public statement or omission which made those public filings and statements false or misleading.  No bill of particulars was needed for that purpose, since the indictment identified in exacting detail the particular public filings and press releases of CUC and Cendant which contain false and misleading information.").  The truth or falsity of these

9

figures cannot be determined by comparison to the objective truth as in a false

statement case in which a government contractor is charged with falsely stating

that it paid $500,000 for supplies when, in fact, it paid $5,000 for the supplies.  Nor

can the truth or falsity of these figures be determined by application of a

mathematical formula.  The truth or falsity of these figures is determined by

reference to GAAP.  Indeed, according to the securities laws, GAAP is the standard

by which the accuracy of financial statements filed with the SEC is measured.  See

Regulation S-X, 17 C.F.R. § 210.4-01(a)(1) ("Financial statements filed with the

Commission which are not prepared in accordance with generally accepted

accounting principles will be presumed to be misleading or inaccurate . . . .").

Because falsity is an element of the substantive offenses, and because falsity turns

on non-compliance with GAAP, the government must establish non-compliance with

GAAP.[1]

---

[1]    The Second Circuit's holding in United States v. Simon, 425 F.2d 796 (2d Cir.
1969), that compliance with GAAP is not a "complete defense" in a securities fraud
case predicated on purportedly false accounting should not control.  First, Simon
predates the revision of Regulation S-X on September 25, 1980, in which the SEC
promulgated the rule adopting GAAP as the standard by which to judge the
accuracy of financial statements.  See 17 C.F.R. § 210.4-01(a)(1).  Second, Simon
predates the establishment of the Financial Accounting Standards Board, and the
promulgation of a substantial body of standards for financial accounting to guide
the accounting profession.  Third, if there is no established set of rules by which to
determine the truth or falsity of accounting, a prosecution based on allegedly false
accounting would violate fundamental principles of fair notice.  If not to GAAP,
where could an individual who wanted to comply with the law look to guide his
behavior?  According to the government's theory, the individual would have
nowhere to look, but would have to rely upon prosecutors and juries to determine,
long after the fact, what the accounting figures should have been based on whatever
standards they deem appropriate.

3.      Because GAAP is not a mathematical formula, but requires

judgments and estimates, the question of falsity involves an interpretive question.

When the question of falsity involves an interpretive question, the government

must prove beyond a reasonable doubt that the statement was false under any

reasonable interpretation. See, e.g., United States v. Whiteside, 285 F.3d 1345,

1351 (11th Cir. 2002) ("In a case where the truth or falsity of a statement centers on

an interpretive question of law, the government bears the burden of proving beyond

a reasonable doubt that the defendant's statement is not true under a reasonable

interpretation of the law."); United States v. Migliaccio, 34 F.3d 1517, 1525 (10th

Cir. 1994) (government must "negate any reasonable interpretations that would

make a defendant's statement factually correct where reporting requirements are

ambiguous"); United States v. Gahagan, 881 F.2d 1380, 1384 (6th Cir. 1989); United

States v. Race, 632 F.2d 1114, 1120 (4th Cir. 1980); United States v. Anderson, 579

F.2d 455, 460 (8th Cir. 1978).

4.      The government must prove that Mr. Forbes knew that the

reported financial results violated GAAP to establish knowledge of falsity, which is

an essential element of the charges in the indictment.  To satisfy this burden, the

government must prove knowledge of a GAAP violation.

5.      There is an evidentiary basis for Mr. Forbes' proposed

instructions on the interaction between GAAP and the elements of falsity and

intent. See Tr. (10/19/05) at 489-95; see also Indict., Count 1 ¶¶ 31-33 (alleging

GAAP standards for merger reserves, i.e., that reserve must be based on good faith

estimate of one-time merger costs), 35-36 (alleging that Ideon reserve did not

comply with standards set forth in paragraphs 31-33, <u>i.e.</u>, that it was not based on a

good faith estimate of one-time merger costs).

      6.    There is also a basis for the requested instruction defining

GAAP and the instructions which state that there is not <u>always</u> a right answer

under GAAP.  As the Supreme Court has recognized: "[f]ar from a single-source

accounting rulebook, GAAP encompasses the conventions, rules, and procedures

that define accepted accounting practice at a particular point in time.  GAAP

changes and, even at any one point, is <u>often indeterminate</u>.  The determination that

a particular accounting principle is generally accepted may be difficult because no

single source exists for all principles."  <u>Shalala v. Guernsey Mem'l Hosp.</u>, 514 U.S.

87, 101 (1995) (internal quotation & citation omitted) (emphasis added).  Testimony

supports this point.  <u>See, e.g.</u>, Tr. (10/19/05) at 496-502.

**OBJECTIONS TO FAILURE TO GIVE MISSING WITNESS INSTRUCTION**

   Mr. Forbes objects to the omission of a missing witness instruction

from the Court's instructions. <u>See</u> Forbes Instr. No. 11.1; <u>see also</u> Forbes Retrial

Motion No. 7; <u>United States v. Myerson</u>, 18 F.3d 153, 158 (2d Cir. 1994).  The

defense was prepared to proceed with the witness's testimony, and there is evidence

that it would have been exculpatory rather than inculpatory.  In these

circumstances, the requested missing witness instruction should have been given.

Had a missing witness instruction been given, a different argument could have been

made with respect to Messrs. Corigliano and Kearney and with respect to whether

there was an alleged fraud before Mr. Corigliano became CFO.

13

## OBJECTIONS TO REPEATED CHARGE ON PROOF OF INTENT

Mr. Forbes objects to the Court's instructions regarding proof of intent and to the incorporation of these instructions into each of the instructions on the mental states required for the various offenses, including aiding and abetting.  See Instruction Nos. II(C)(2)(b), (II)(D)(2)(d), II(E)(2)(d), II(F).

1.     The instructions on matters of proof and evidence should not be intermingled with instructions defining the elements of the offense.  There is a separate charge on direct and circumstantial evidence and on inferences.  See Instruction No. IV(A).  This language is therefore redundant.  At most, the paragraph which begins "The question of whether a person . . . ," should be given.  It fully sets forth any legal issue with respect to proof of intent.

2.     This language on matters of proof and evidence is only repeated with respect to the intent elements of each of the charges and thereby dilutes the intent elements, which are the most hotly contested issues in the case.  It also renders the intent elements confusing, and it marshals certain types of evidence and instructs the jury that it should consider them as more important than other types of evidence, thereby effectively invading the province of the jury.  Indeed, in the conspiracy count the incorrect and misleading instructions concerning the general unavailability of direct proof of intent actually precede the instructions concerning what the intent elements are and what the government must prove beyond a reasonable doubt.

14

3.     The language concerning the availability of direct evidence of knowledge and fraudulent intent is an incorrect statement of the law, is inconsistent with the government's case, is inconsistent with the reality of the proof offered in most government fraud prosecutions, and puts the imprimatur of the Court behind the government's proof (or lack thereof).  Direct proof of knowledge and fraudulent intent is often (indeed, almost always) available, particularly in the new electronic age with e-mail, computerized files and databases, and tape recordings.  While this statement may have been accurate decades ago, it is not true today.  Moreover, the government has put on the testimony of Cosmo Corigliano, which Mr. Forbes contends is false, purporting to provide direct proof of knowledge and fraudulent intent.  This instruction is essentially a statement by the Court that this is a rare case, and that the government's case is particularly convincing because it has "direct proof of knowledge and fraudulent intent."

4.     Mr. Forbes objects to incorporating the proof of intent instruction into the instructions on the required mental states for each of the charged offenses.  The government previously agreed that the charge could be given once and need not be repeated or incorporated by reference each time instructions on mental states are given.  See, e.g., Tr. (10/15/04) at 14728, 14745.

5.     Mr. Forbes objects to the proof of intent instruction because it is not contained in the pattern jury instructions in O'Malley.

15

## OBJECTIONS TO INSTRUCTION NO. I(A)
(Introduction)

1.    Mr. Forbes objects to the submission of the indictment to the jury because it addresses many evidentiary matters and includes numerous unnecessary allegations.  The relevant portions defining the alleged offenses should be integrated into the Court's instructions, as described in the pattern jury instructions in O'Malley.  Moreover, the language of the indictment is unconstitutionally vague.  There is a serious danger that the jury will convict Mr. Forbes on facts or theories not found by the grand jury.  See, e.g., Russell v. United States, 369 U.S. 749 (1962).

2.    Mr. Forbes objects to the use of the phrase "the defendant's" rather than the phrase "Mr. Forbes'" in the line stating "third, I will explain the defendant's position."

16

## OBJECTIONS TO INSTRUCTION NO. I(C)
### (Indictment is Not Evidence)

1.      Mr. Forbes objects to the use of the phrase "the defendant"

rather than the phrase "Mr. Forbes" in this instruction.

## OBJECTIONS TO INSTRUCTION NO. I(D)
### (Failure to Name a Defendant)

      1.    Mr. Forbes objects to this instruction because the fact that certain persons are not alleged to have engaged in wrongdoing <u>is</u> relevant, and <u>should</u> play a part in the jury's deliberations.  For example, it is appropriate to make comparisons between Mr. Forbes and Mike Monaco and Henry Silverman, who had knowledge similar to (or greater than) that of Mr. Forbes, and who signed the same 10-K at issue in Count 3,  but who are not alleged to have done anything wrong.  <u>See</u> Tr. (11/01/04) at 16048-49 ("THE COURT:  I agree with Mr. Puccio.  I believe the thrust of his argument was that they did this, they did this, they did this, compare that to what Mr. Forbes did.  They didn't do anything wrong, so therefore the inference is Mr. Forbes didn't do anything wrong either.").

      2.    Mr. Forbes objects to this instruction because it suggests that the jury may not consider in any way charging decisions concerning witnesses who entered into a plea agreement.  This is an incorrect statement of the law.  Evidence of favorable treatment received by the cooperating witnesses from the government is relevant to the credibility of those witnesses.  <u>See, e.g.</u>, <u>United States v. Prawl</u>, 168 F.3d 622, 628 (2d Cir. 1999) (defendant entitled to instruction that identifies circumstances that make cooperating government witnesses particularly vulnerable to government's power and influence); <u>United States v. Blackwood</u>, 456 F.2d 526, 530 (2d Cir. 1972) ("The rule is that in attempting to establish the motives or bias of a witness against him, a defendant may . . . elicit evidence showing that the government made explicit promises of leniency in return for cooperation." (quotation

& brackets omitted)). The second paragraph of the instruction does not adequately address the problem, which goes beyond the question of a government promise not to charge a witness with a crime.

   3. Mr. Forbes further objects to this instruction because it is unclear what "certain" persons this charge is referring to.  If it is Pember, Corigliano, Sabatino, or Kearney, the government's charging decision and related promises <u>are</u> clearly relevant and are addressed separately in the Court's instructions.  If it is Sattler, Shelton, and/or Bell, there is no evidence either way in the record, and the instruction invites improper speculation by the jury.  If it is anyone else (for example, Messrs. Silverman or Monaco), it improperly suggests that there could be a basis for charging them, and/or that it is improper to compare their knowledge and actions with the knowledge and actions of Mr. Forbes, contrary to paragraph 1 above.  In short, the instruction is confusing, misleading, and undermines proper arguments that defense counsel should be able to make.

**OBJECTIONS TO INSTRUCTION NO. I(F)(1)**
(Presumption of Innocence and Burden of Proof)


      1.     Mr. Forbes objects to the use of the phrase "the defendant"

rather than the use of the phrase "Mr. Forbes" in this instruction.

## OBJECTIONS TO INSTRUCTION NO. I(F)(2)
(Proof Beyond a Reasonable Doubt)

      1.    Mr. Forbes objects to the use of the phrase "the defendant"

rather than the use of the phrase "Mr. Forbes" in this instruction.