UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA  :  No. 3:02CR00264 (AWT)
                          :
            v.            :  December 12, 2005
                          :
                          :
WALTER A. FORBES         :


**GOVERNMENT'S OPPOSITION TO DEFENDANT WALTER A. FORBES' MOTION (1) TO STRIKE ALLEGEDLY IMPROPER REBUTTAL ARGUMENT BY THE GOVERNMENT AND (2) FOR A CURATIVE INSTRUCTION AND NOTICE OF CONTINUING <u>WALLACH</u> OBJECTION**

<u>INTRODUCTION</u>

Forbes asks this Court to strike certain portions of the Government's rebuttal summation or to give a curative instruction regarding those rebuttal portions, based on a laundry list of arguments that are belied by the record, mischaracterize the Government's rebuttal, or are contrary to applicable law. Although Forbes' ingenious lawyers have again managed to conjure a large number of objections (as they have consistently done with the Court's instructions), Forbes is not entitled to relief merely because of the volume of his arguments.

In particular, in paragraphs 6, 7, and 8 of his current motion, Forbes accuses the Government of referring during its rebuttal summation to certain testimony by Cosmo Corigliano, Steven Kernkraut, and Casper Sabatino which, according to Forbes, the Government knew or should have known was false. As demonstrated herein, Forbes is merely resurrecting his oft-

repeated and previously rejected arguments that any evidence
presented by the Government which incriminates Forbes must be
false because, according to Forbes' own testimony, he is not
guilty of the charged crimes.

        To the extent that Forbes points to information that
was not admitted into evidence which supposedly contradicts the
testimony at issue, this Court properly concluded that Forbes has
manifestly failed to sustain his burden of demonstrating that the
challenged testimony was false.  Additionally, all of the
information to which Forbes now points was available to Forbes
either when the challenged testimony was elicited, or in the case
of testimony from Sabatino at issue in paragraph 6 of Forbes'
motion, available while Forbes' defense case was still in
progress.  Even when, unlike this case, the Government knowingly
elicits perjured testimony, there is no error if the evidence
which demonstrates that the testimony was false is presented to
the jury, or was available for presentation to the jury, during
trial.  United States v. McCarthy, 271 F.3d 387, 399 (2d Cir.
2001)(rejecting due process claim where defense counsel addressed
the conflicting testimony on cross-examination, and "[t]he jury
was entitled to weigh the evidence and decide the credibility
issues for itself"), abrogation on other grounds recognized,
United States v. Robinson, __ F.3d __, 2005 WL 3277921 (2d Cir.,
Dec. 5, 2005); United States v. Joyner, 201 F.3d 61, 82 (2d Cir.

2000) ("cross-examination and jury instructions regarding witness credibility will normally purge the taint of false testimony"); United States v. Zichettello, 208 F.3d 72, 102 (2d Cir. 2000)(where the defendants had "ample opportunity to rebut [the witness's] testimony and undermine his credibility . . . [the reviewing court would not] supplant the jury as the appropriate arbiter of the truth")(internal citations omitted).  Because Forbes was aware during the retrial of the very information on which he now predicates his various false testimony claims, his reliance on cases in which the defense was unable to bring the false nature of the challenged testimony to the attention of the jury during trial are inapposite.  Cf. cases cited at Forbes' Motion, 1-2.[1]

        Under those circumstances, Forbes' remedy was to use the supposed impeaching evidence to challenge the testimony of the witnesses on the witness stand and allow the jury to

_____

        [1]  Thus, in United States v. Wallach, 935 F.2d 445 (2d Cir. 1991), the primary case on which Forbes relies, the district court sustained the government's objection to the presentation of defense evidence which would have been used to demonstrate that an essential prosecution witness's testimony was perjured.  935 F.2d at 456.  After the trial, however, the Government conceded that the witness's testimony had been perjured, thus effectively conceding that the excluded evidence should have been admitted. See United States v. Ward, 190 F.3d 483, 491 (6th Cir. 1999)("We think Wallach does not apply here, because in that case the perjured testimony was not brought to the attention of the jury, whereas here, the court gave the defendant several opportunities to cross-examine and re-cross examine the witnesses to bring out any inconsistencies in testimony to the attention of the jury.").

3

determine whether to credit that testimony. Unlike the cases cited by Forbes, none of the challenged testimony at issue here was known by the Government to be false because the witnesses had expressly repudiated it at some prior time, or because the prosecutors had first-hand, personal knowledge that the testimony was false. Accordingly, this Court should deny Forbes' motion to strike portions of the Government's rebuttal summation or to give a curative instruction regarding those portions. The Government's responses to Forbes' individual assertions of misconduct follow.

* * * * *

1. Contrary to Forbes' contention, the Government did not "suggest" that Forbes' testimony that he received DX 30549 should be discredited by the jury. In fact, the Government made precisely the opposite point, highlighting Forbes' admission that he received that document. Tr. 3594 ("This [DX 30549] is another memo that the defendant admits. This time he admits that he received this document."). In the challenged portion of the rebuttal, the Government properly argued that Forbes had admittedly received DX 30549 even though his name did not appear on the document. Id. The Government's challenged argument was a proper response to a defense argument that none of the documents admitted into evidence incriminated Forbes. Tr. 3591, see also Tr. 3141 (Forbes' summation: "In this day and age of e-mails and

4

all of us being inundated with paper and documents by the
thousands there are no documents which incriminate Walter
Forbes."). Accordingly, Forbes' claim that the argument was
improper misconstrues the challenged argument and is baseless.
See United States v. Clark, 613 F.2d 391, 405 (2d Cir. 1979)
(rejecting a summation misconduct claim which was based on a "a
strained construction not supported by the record").

    2.  Forbes' complaint about the Government's rebuttal
reference to GX 617 fails for the same reason that his challenge
to the rebuttal reference to DX 30549 fails: Forbes has simply
mischaracterized the obvious import of the challenged argument.
The Government did not contend that Corigliano had nothing to do
with GX 617. Rather, the challenged argument was that Corigliano
truthfully testified that he possessed that document even though
his name appears nowhere on it. Tr. 3593-94 (describing GX 617
as "a document that Mr. Corigliano prepared at the defendant's
instruction"). Forbes' selective reading of the transcript in
order to create an obvious mischaracterization of the
Government's argument is hardly grounds to strike that argument.

    3.  Contrary to Forbes' contention, the Government
never argued that Kevin Kearney had no motivation to lie.
Rather, the Government accurately pointed out that Kearney was
not testifying pursuant to a cooperating plea agreement, and
asked the rhetorical question, "does he have a motivation beyond

that of an ordinary witness?" Tr. 3573. The purpose of the question was to contrast the motivation of a witness who has already received the benefit of an informal immunity agreement at the time of his testimony, and the very different motivation of a witness who has yet to receive the full benefit of a cooperation agreement at the time of his testimony because that witness has not yet been sentenced. See United States v. Eltayib, 88 F.3d 157, 173 (2d Cir. 1996) (where "the defendants' lawyers specifically attacked [the witness's] credibility and veracity in their summations," the prosecutor permissibly "asked the jurors to draw inferences based on their common sense that would lead to the conclusion that the witness"); United States v. Feliciano, 223 F.3d 102, 123 (2d Cir. 2000)(prosecutor permissibly "referred the jury to evidence at trial concerning [the prosecution witnesses], on the basis of which the jury could judge whether either witness had a motivation to lie").

        After the challenged remark was made during the rebuttal, the Court instructed the jury that a witness such as Kearney who is testifying pursuant to an informal immunity agreement does have a motivation to testify favorably for the Government that is different from that of an "ordinary witness." Tr. 3811-12. Accordingly, the Government's rhetorical question was answered in the affirmative by the Court, and no further curative instruction is necessary. In any event, because this

Court "properly advised the jury that the arguments of counsel were not to be taken as evidence in the case . . . . that was adequate prophylaxis against the danger of the jury's finding the informant to be credible only because of the prosecutor's reply summation." United States v. Suarez, 588 F.2d 352, 355 (2d Cir. 1978) (rejecting a claim that the Government's rebuttal summation was lacking in evidentiary support).

Forbes also complains that there is no evidence to support the Government's contention that Kearney's testimony during this retrial in 2005 was not influenced by a settlement he reached with the SEC.  To the contrary, Kearney testified that he had already paid a substantial monetary penalty to settle the SEC lawsuit, but incurred no other adverse consequences.  Tr. 1121. Because the settlement has been concluded and Kearney had fully satisfied his obligations under the settlement, any testimony he gives at this time will not improve Kearney's position regarding that settlement.  Accordingly, the argument was properly grounded on the evidence.  See United States v. Rodriguez, 968 F.2d 130, 143 (2d Cir. 1992)("The government is entitled, in summation, to argue all inferences that may permissibly be drawn from the evidence admitted."); United States v. Gerry, 515 F.2d 130, 144 (2d Cir. 1975) (the prosecutor's summation statement regarding the disappearance of a witness before trial and the prosecutor's speculation that the witness was being supported by one of the

7

defendants at that time "did not transgress broad limits within which counsel for both sides are entitled to argue inferences which they wish the jury to draw from evidence")(internal quotation marks omitted).

4.   Contrary to Forbes' characterization of the Government's rebuttal, the Government did not claim that Sabatino had no theoretical motive (based on his cooperation agreement) to testify favorably for the Government.  Rather the challenged remark was that, notwithstanding any theoretical motive to "please the government," Sabatino had not given false testimony that was favorable to the Government.  In support of its argument that Sabatino's testimony that was favorable to the Government was not false, the Government properly pointed out that some of Sabatino's testimony during the retrial was favorable to the defense.  Tr. 3574-75.

5.   Forbes contends that the Government was not entitled to argue that Corigliano's cooperation agreement did not create a motive for him to testify truthfully during the retrial, even though the agreement expressly provided that Corigliano could forfeit all benefits under the agreement if he gave false information or testified falsely.  See GX 1546, at p. 2. According to Forbes, this argument was improper because Corigliano has given false testimony against Forbes.  The Court previously rejected this argument in its November 1, 2005 ruling,

denying Forbes' Retrial Motion *In Limine* No. 13, Docket No. 1915. <u>See</u> <u>also</u> <u>United States v. Carr</u>, 424 F.3d 213, 228 (2d Cir. 2005)(in light of the defense attacks on the credibility of the cooperating witnesses, the "government's remarks in its rebuttal summation emphasizing that the cooperation agreements required that witnesses 'tell the truth' in order to gain any benefits were also proper"). The argument was particularly permissible in response to the defense summation that Corigliano had framed an innocent man in order to obtain a reduced sentence for himself. <u>See</u> <u>United States v. Rivera</u>, 971 F.2d 876, 883 (2d Cir. 1992) ("The prosecutor's remarks were legitimate responses to counsel's arguments that Rivera had, in essence, been framed by the cooperating witnesses," because the "challenged statements were an attempt to focus the jury's attention upon the evidence and away from defense counsel's claims.")

6.   Forbes' contention that Corigliano testified falsely about the issue of bug sweeping at CUC's offices, and that the Government committed misconduct by referring during its rebuttal to Corigliano's testimony on that subject, was properly rejected by the Court. Forbes' counsel, who have never been shy about voicing objections during these proceedings, did not object to the Government's rebuttal remarks about that testimony when those remarks when they were made. Instead, Forbes now belatedly argues that the statements by the Government during rebuttal were

improper for two reasons: because there is supposedly "unrefuted documentary evidence" contradicting that testimony, and because the Government's interview of E.E.D. representative Ray Melucci demonstrated that "there were no bug sweeps of CUC in 1997 after the January 1997 sweep reflected in GX 3075." Forbes' Motion to Strike Improper Rebuttal at 5-6 (emphasis in original).

This Court previously and correctly rejected Forbes' argument on this point, Tr. 3640-48, and the Government relies on the Court's reasons in opposing this objection. Two additional reasons support this Court's ruling. First, contrary to Forbes' contention, GX 3075 does not refute Corigliano's testimony regarding the bug sweeping issue. Rather, that document on its face provides a factual basis for that testimony, stating that CUC was given a a 20% discounted rate because it employed E.E.D.'s services "(3) or more times a year." GX 3075.

Second, contrary to Forbes' contention, Melucci's statements to the Government's investigators and his document production do not refute Corigliano's testimony. Melucci neither said nor provided a document showing that E.E.D. failed to provide bug-sweeping services for CUC in 1997. On March 3, 2003, Postal Inspector Pat Mathews and FBI Special Agent John Pittman interviewed Melucci at his home in Brooklyn, New York. During that interview, the United States learned that: (1) Melucci ran E.E.D. out of his home; (2) running E.E.D. was not Melucci's

full-time job; (3)  Melucci did not have a secretary; and (4)
Melucci stored E.E.D.'s records in his basement.  During the
interview, Melucci told the investigators that he would gather
whatever E.E.D. records pertaining to his work for CUC that he
could find, but he did not state that those records were
complete.

       During the interview, Melucci did not tell the
investigators that the only bug sweeping services that E.E.D.
provided for CUC were reflected in E.E.D.'s records, and he did
not state that E.E.D. did not provide any bug sweeping services
in 1997.  Melucci provided two documents that showed that E.E.D.
provided bug sweeping services in 1997: GX 3075 and GX 3074.  The
latter document, which Melucci signed, showed that CUC provided
bug sweeping services for CUC on or about November 17, 1997.  As
this Court will recall, Melucci's invoice was shown to be
inaccurate during the initial trial.  In light of the established
inaccuracy in Melucci's record-keeping, as well as the lack of
any professional record-keeping personnel or an automated record-
keeping system, this Court should reject Forbes' argument that an
alleged absence in Melucci's records for bug sweeping services
provided by E.D.D. in 1997 irrefutably proves that Cosmo
Corigliano lied.  See United States v. Salameh, 152 F.3d 88, 137-
38 (2d Cir. 1998) (rejecting the defense contention that the
government's summation was based on evidence that the government

knew or should have known to be false; arguments were properly based on the evidence and were within bounds of broad latitude given to the government to suggest reasonable inferences to jury); cf. United States v. Rodriquez, 968 F.2d 130, 143 (2d Cir. 1992)("The fact that a physical object is not available does not require the exclusion of relevant oral testimony describing the object if the court is persuaded that the witness has the requisite personal knowledge.").

     7.  This Court also properly rejected Forbes' contention that the Government committed misconduct by referring during its rebuttal to the testimony of Kernkraut regarding CUC's quarterly conference calls.  Kernkraut testified that the quarterly conference calls started in 1995.  Tr. 302.  The Government has reviewed documents establishing that there were conference calls with investors or stock analysts between June 1995 and January 1998.  These include documents showing that CUC had conference calls on April 22, 1996, September 4, 1997, and December 2, 1997.

     Forbes contradicted Kernkraut's testimony on this point, testifying that the conference calls did not begin until mid-1997.  Tr. 2763-64.  That Forbes, who has a far greater motive to testify falsely in this case than does Kernkraut, contradicted Kernkraut hardly proves Kernkraut a liar on this point.  To the contrary, as this Court instructed the jurors,

12

they (not the Court, and certainly not the lawyers for the parties) are the exclusive judges of credibility.[2]

The defense had the opportunity to counter Kernkraut's testimony on this point with evidence other than Forbes' own highly self-serving testimony. On December 6, 2005, defense counsel presented the Government with a transcript of the deposition of Laura Hamilton, given pursuant to a civil lawsuit.[3]

---

[2]  This Court instructed the jury in Section IV(J) of the charge ("Credibility of the Witnesses") as follows:

In deciding the facts of this case, you will have to evaluate the credibility of the witnesses. **You, as jurors, are the sole judges as to the credibility of the witnesses and the weight that their testimony deserves.**  You may accept as true everything a witness says, only part of it, or none of it.
       * * * * *

**Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses**, may or **may not cause you to discredit such testimony**.  Two or more persons witnessing an incident or a transaction may see or hear it differently. Innocent misrecollection, like failure of recollection, is not an uncommon experience.  In weighing the effect of a discrepancy, however, you may wish to consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

Tr. 3803-04.

[3]  That Forbes has now produced, after the Government's rebuttal had concluded, a transcript from a deposition of Laura Hamilton in which she contradicted Kernkraut's testimony about the timing of the CUC conference calls hardly demonstrates that the Government engaged in misconduct by referring to Kernkraut's testimony on the subject.  As the Government explained, Tr. 3656-57, it was unaware of Hamilton's deposition testimony until
                                              (continued...)

In that deposition, Hamilton testified that, "[w]hile [she] was vice-president of investor relations at CUC, we did not do conference calls to investors."  March 16, 2005 deposition transcript at 59.  Hamilton also testified that, "[w]hile at CUC, we didn't do any analyst calls.  We didn't do conference calls."  Id. at 73.  Hamilton testified that she was vice-president of investor relations from June 1995 until roughly January 1998.  Id. at 25.  Hamilton's testimony on this point is consistent with statements that she made during her July 7, 1999 interview with representatives of the Government.

Notwithstanding the conflict between Kernkraut's testimony and Hamilton's accounts regarding the conference calls, and the fact that Forbes' defense team was well aware during the retrial of Hamilton's accounts on this point, Forbes declined to present Hamilton as a witness to contradict Kernkraut and corroborate Forbes.  Indeed, Hamilton was on the defense witness list.  The fact that Hamilton or anyone else might have said anything that contradicts Kernkraut's testimony hardly means that

---

[3](...continued)
Forbes' lawyers belated disclosed it to the Government after the rebuttal summation was concluded.  The Government does not commit misconduct by making arguments that are based on information then known to the prosecutor.  United States v. Grant, 462 F.2d 28, 35 (2d Cir. 1972)(the prosecutor permissibly argued, based on information then known to him, that a cooperating witness had not illegally sold guns after he begun cooperating with the Government, even though the prosecutor subsequently learned that the assertion was incorrect).

the Government acted improperly by eliciting that testimony, or by referring to that testimony during its rebuttal.

Finally, the fact that Kernkraut's testimony on any matter is not corroborated by documents or the accounts of any other persons is no basis to challenge the admissibility of that testimony, to claim that the testimony was improperly elicited, or to argue that the Government improperly relied in its rebuttal summation on such testimony.  The Court instructed the jury that the uncorroborated testimony of cooperating co-conspirators, much less innocent witnesses such as Kernkraut, is not only admissible, but may be <u>sufficient</u>, standing alone, to sustain the United States' burden of proof.[4]

Thus, Forbes has failed to sustain is burden of showing that the Government knowingly elicited false testimony from Kernkraut and referred to that testimony during its rebuttal.

---

[4]  The Court instructed the jury in Section IV(O) of the charge ("Government Witness Testifying Under Plea Agreement") as follows:

> In this case, there has been testimony from two government witnesses who pled guilty after entering into an agreement with the government to testify—-Cosmo Corigliano and Anne Pember.
> * * * *
> The government is permitted to enter into this kind of plea agreement.  **<u>You, in turn, may accept the testimony of such a witness and convict the defendant on the basis of this testimony alone</u>**, if it convinces you of every element of the offense charged beyond a reasonable doubt.

Tr. 3808-09 (emphasis added).

Forbes' claim should be rejected for the same reasons that a similar claim was rejected by the Ninth Circuit Court of Appeals in United States v. Zuno-Arce:

> Zuno-Arce presents no argument or evidence for his proposition that the prosecutor knowingly put on false evidence, except for the contradictions between Cervantes at the first trial and Godoy and Lopez at the second. This evidence does not conclusively prove that the prosecutor knew that the Lopez and Godoy testimony was false.
>
> Lawyers in criminal cases, for prosecution and defense, sometimes swim in a sea of lies, and must necessarily trust the jury to determine what is true, or whether reasonable doubt remains about what is true. Rarely will a retrial produce exactly the same evidence as the first trial, yet appellant's argument suggests invalidity of the verdict in the second trial whenever the testimony varies. Discrepancies in the testimony about the details of 1984 meetings during trials in 1990 and 1992 could as easily flow from errors in recollection as from lies. It is hard to see how the prosecutor could know who was at which meetings, or when and where they occurred, except for what people who said they were there told him. Zuno-Arce has offered no evidence whatsoever for prosecutorial misconduct except for the inference from discrepancies.

Zuno-Arce, 44 F.3d 1420, 1423 (9th Cir. 1995).

   8.   Forbes erroneously contends that the Government elicited false testimony from Sabatino on cross-examination to the effect that GX 9322 refreshed Sabatino's recollection that CUC engaged in unsupported topside adjustments in 1993. According to Forbes, that testimony was false, because it was contradicted by the Government's disclosure to the defense during this retrial. Forbes is incorrect, there is no contradiction.

As the Government informed the defense in a letter to Barry Simon
dated November 14, 2005, Richard Schechter, a member of the
Government's trial team during the initial trial, showed GX 9322
to Sabatino before the initial trial.  In response, Sabatino told
Schechter that he did not dispute that unsupported topside
adjustments were made prior to 1995.  November 14, 2005 letter to
Barry Simon from Michael Martinez and Craig Carpenito, Exhibit 1
to Forbes' Motion to Strike Supposedly Improper Rebuttal
Summation.  Sabatino also told Schechter that GX 9322 did not <u>at
that time</u> refresh Sabatino's recollection about participating in
the unsupported topside adjustments prior to 1995.  <u>Id.</u>

        The fact that the document did not refresh Sabatino's
recollection when he was shown it before the 2004 trial does not
mean, however, that Sabatino testified falsely during the 2005
trial that the document refreshed his recollection <u>then</u>.  In any
event, even though Forbes had all the information on November 14
which supports his current claim that Sabatino's testimony was
false, he elected not to recall Sabatino to question him about
his prior statement to Schechter which supposedly contradicted
the supposed false testimony.  Nor did Forbes ever bring
Sabatino's prior statement to the attention of the Court while
evidence was being presented during the retrial.

        Thus, even Forbes apparently recognized that Sabatino's
testimony that GX 9322 refreshed his recollection would not be

17

undermined by his prior statement to Schechter.  Forbes' current
request to strike the Government's rebuttal argument which was
properly based on the properly admitted testimony of Sabatino is
yet another sandbag effort, to compensate for Forbes' strategic
decision not to challenge Sabatino's testimony on this point
where it should have been challenged, on the witness stand.
Having failed to even attempt to impeach Sabatino with his prior
statement when he had every opportunity to do so, Forbes is
certainly not entitled to have this Court strike the Government's
rebuttal argument on the ground that Sabatino's testimony was
false.

        Nor was Forbes entitled to curative instruction based
on the Government's disclosure about the Schechter/Sabtatino
discussion, as the Second Circuit decision in <u>United States v.
Grant</u>, 462 F.2d 28 (2d Cir. 1972) makes clear.  In that case, a
prosecution witness named Brent testified that he signed many
documents at the behest of the defendant, but did not remember
the circumstances in which they were signed.  After Brent's
testimony ended, the Government disclosed to the defense a
document signed by Brent.  Rather than recalling Brent and
questioning him about that document, the defense presented
another witness who testified that it had been prepared by
someone other than the defendant.  In summation, the defense
argued that the document showed that Brent's testimony that he

signed documents only at the behest of the defendant was
incorrect.  In rebuttal, the Government permissibly argued that,
based on Brent's testimony, had he been shown the document at
issue, he probably would have testified that he could not recall
who prepared it.

        The Court of Appeals affirmed the district court's
refusal to give a curative instruction regarding the Government's
rebuttal summation, given the defendant's opportunity but failure
to recall Brent to question him about the document.  "In light of
their failure to do so, they were not entitled to a favorable
instruction on what inferences the jury should draw from the
letter signed by Brent."  462 F.2d at 35.  That analysis applies
fully to this case, where Forbes could have recalled Sabatino and
questioned him about his prior statement to Schechter, but
elected not to, then sought an instruction that Sabatino's
testimony on this point was incorrect.

        9.  Contrary to Forbes' assertion, there is nothing
inconsistent between the Government's argument that "conspirators
don't attach their names and signatures to incriminating
documents" and the fact that some of the cheat sheets admitted
into evidence bore Corigliano' handwriting.  More to the point,
the Government's challenged argument was properly responsive to
defense counsel's argument regarding the purported absence of
documents that incriminated Forbes.  Tr. 3141.  The Government

permissibly argued, in effect, that the absence of Forbes' name
or signatures on the cheat sheets did not disprove Corigliano's
testimony that he showed those documents to Forbes during the
conspiracy period.  Tr. 3591-93.  The Government's challenged
argument was plainly one made (and likely understood by the jury)
to be a general one, that conspirators typically don't attach
their names and signatures to incriminating documents, not that
they never do.

        10.  Forbes' complaints about the Government's remarks
regarding Corigliano's settlement agreement with the SEC is
essentially a battle over semantics, and hardly demonstrates that
the Government's rebuttal was improper.  Regardless of how the
settlement was characterized by the lawyers, the jury had before
it abundant evidence regarding the terms of the settlement with
the SEC, memorialized in DX 1060.

        In particular, the evidence established: how much money
Corigliano paid and what other assets he conveyed to settle the
SEC lawsuit; what property Corigliano retained as part of the
settlement; the amount of money that Corigliano spent while the
SEC lawsuit was pending, including money that Corigliano spent to
pay his real estate taxes; Corigliano's disclosures to the SEC
about Corigliano's residential property in the town of Old
Saybrook, CT; the amount of money that Corigliano paid to various
attorneys as retainers; and the length of time that it took for

Corigliano and the SEC to reach a settlement.  Tr. 1468-76, 1945-47, 1972-74, 1980-89, 2019-34, 2099-2166.  Forbes focuses upon the fact that SEC forgave "an undetermined amount of interest in its settlement" with Corigliano, but Corigliano's testimony established that fact for the jury.  Tr. 1982-85.

Forbes elected to characterize the SEC's decision to settle the case for less than all of Corigliano's worldly assets as a "benefit" to Corigliano.  Forbes now effectively asserts that the Government was not permitted to argue a different characterization of the SEC settlement with Corigliano.  For Forbes' self-serving characterization of the SEC settlement as a "benefit" to Corigliano to be irrefutable, however, there would have to evidence in the record that the SEC believed that it would have received a more favorable result by proceeding to trial against Corigliano, taking into account litigation risks, rather than by settling its claims on the terms that were finally reached.  In other words, there would have to be evidence that the SEC compromised its claims for less than the SEC believed that those claims were worth, and that such a compromise was a benefit to Corigliano.  Simply put, there is no such evidence in this record.

The Government permissibly argued, in effect, that the settlement by which Corigliano forfeited over $14 million in assets was not a "benefit" to Corigliano, but was rather the

result of arms-length negotiations between two adverse parties in a lawsuit, with both sides accepting a compromise of their respective claims.  See United States v. Simmons, 923 F.2d 934, 955 (2d Cir. 1991)(after defense counsel argued that a cooperating witness had fabricated testimony in exchange for various benefits from the Government, including placement in the Witness Protection Program, the Government permissibly replied during rebuttal that "the only 'benefit' [the witness] received from entering the program was protection 'so that he wouldn't wind up on the pavement somewhere'"), abrogation on other grounds recognized, Jones v. United States, 306 F.Supp.2d 142 (D.Ct. 2003); see generally United States v. Rivera, 971 F.2d 876, 884 (2d Cir. 1992)("A prosecutor is not precluded from vigorous advocacy, or the use of colorful adjectives, in summation.").

        11.  Forbes contends that the Government's argument regarding GX 11007 constituted a constructive amendment of the indictment, for the reasons set forth in Forbes' Retrial Motion *In Limine* No. 25.  By its oral ruling on November 9, 2005, this Court denied that motion.  Unnumbered docket entry for November 9, 2005, denying Forbes' Motion docketed at No. 1943.  In support of his constructive amendment argument, Forbes also relies on the arguments set forth in his Retrial Motion No. 17.  By ruling dated November 27, 2005, this Court denied that motion as well.

Docket No. 2003.  As this Court previously and properly concluded, during this retrial as well as during the initial trial, none of the evidence regarding E&Y's knowledge or lack of knowledge about the charged accounting fraud amounted to a constructive amendment of the indictment.  Accordingly, Forbes' challenge to this portion of the Government's rebuttal summation should be rejected.

12.  Forbes contends that Government was not permitted to argue that Kearney's testimony should be believed, and relies solely on the arguments set forth in Forbes' Retrial Motion No. 18.  Although the Court has not yet issued a written ruling in response to that motion, the Court has stated on the record that it intends to deny that motion, Tr. 11/28/05, p. 32.  This challenge should be rejected.

13.  To the extent that the Government's passing mention of the fact that Pember pleaded guilty to conspiring to commit the charged fraud could be construed by the jury as an argument that Pember's guilty plea should be considered for any reason other than to assess her credibility, the Government did not intend any such inference to be drawn, and the jury is unlikely to draw such an inference.  See United States v. Pitre 960 F.2d 1112, 1124 (2d Cir. 1992)(rejecting the claim that the jury would "naturally and necessarily" view the prosecutor's statement that the defense had "no plausible explanation" as a

comment on the defendants' decision not to testify). That remark
was immediately followed by a reference to Pember's unchallenged
testimony that she thoroughly participated in the fraud. Tr.
3556. There was no dispute in this case that Pember was a key
participant in the fraud, so any mention of the fact that Pember
pleaded guilty to that participation could not have prejudiced
the defense. Cf. United States v. Perez, 144 F.3d 204, 211 (2d
Cir. 1998) (rejecting the defense contention that the
prosecutor's summation, in which he made a hypothetical reference
to facts which were not in evidence, mischaracterized the
evidence; even if comments were improper, viewed against entire
argument before jury, they did not deprive the defendant of a
fair trial). In any event, after the challenged rebuttal remark,
the Court instructed the jury that it may consider Pember's
guilty plea only to assess her credibility, so no additional
curative instruction is necessary. Tr. 3810-11.

        14. Contrary to Forbes' argument, the Government
properly characterized the evidence regarding Pember's status at
CUC. Although the Government briefly garbled its message by
stating that Pember "was not an executive with the company," it
immediately and correctly stated that Pember was "not an
executive pictured in this photo," (GX 634). See United States
v. Torres, 901 F.2d 205, 245-246 (2d Cir. 1990)(rejecting a
summation misconduct claim where the context of the challenged

24

statement demonstrated that the prosecutor did not engage in
impermissible vouching).  The Government's description of Pember
as a "lower level employee [whom Forbes] did not even speak to"
correctly described Pember as occupying a lower level at CUC than
Forbes.

15.  Forbes contends that the Government should not
have been permitted to refer during its rebuttal to evidence of
Forbes' admitted asset transfers.  In support of this contention,
Forbes relies exclusively on the arguments set forth in his
Retrial Motion *In Limine* No. 5, and his opposition to the
Government's Retrial Motion *In Limine* No. 1.  By ruling dated
October 19, 2005, this Court denied Forbes' Retrial Motion *In
Limine* No. 5. Docket No. 1866.  By ruling dated October 13, 2005,
the Court granted the Government's Retrial Motion *In Limine* No. 1
insofar as it sought the admission of evidence of Forbes' asset
transfers.  Docket No. 1839.  Accordingly, this challenge should
be rejected.  United States v. McCarthy, 473 F.2d 300, 305 (2d
Cir. 1972) (rejecting a summation misconduct claim that the
Government had referred to improperly admitted evidence, because
the challenged evidence was properly admitted, "[i]t follows that
the prosecutor's comments which are said to have been
inflammatory were comments on evidence in the record.")

16.  Forbes claims that the Government argued that
Forbes created CUC's financial statements, but this is a

mischaracterization of the argument.  The challenged remark was
expressly a response to the defense summation that Monaco was
somehow "responsible" for that portion of the Cendant merger
reserve that was created on the former CUC side of the company by
the conspirators. Tr. 3581 ("I want to address one of defense
counsel's other arguments; that is, that Mike Monaco was somehow
in charge of the merger reserve after the merger.")  The
Government accurately pointed to Pember's testimony that <u>she</u> (not
Forbes) used the merger reserves to fraudulently inflate the
financial statements for the CUC side of the business.  Tr. 3581-
82.  The Government then accurately quoted from GX 529, a
management representation letter signed by Forbes and other
members of the former CUC's management, stating to E&Y that those
management personnel were responsible for the fair presentation
of the company's financial statements.  Tr. 3582-83.

        The Government never argued that Forbes personally
created the financial statements.  Nevertheless, the fact that
Forbes represented that he and others were responsible for the
fair presentation of the financial statements was properly
admitted evidence in this case, as Forbes' effectively
acknowledged by not seeking to exclude that evidence.
Additionally, this Court instructed the jury after the challenged
rebuttal remark that Forbes cannot be convicted on a *respondeat
superior* theory of liability.  Tr. 3697-98.

17.  Forbes contends that the Government was not permitted to refer in its rebuttal to GX 616, even though that document was admitted into evidence, because that document was supposedly improperly admitted.  By admitting that exhibit, however, the Court rejected the basis for this claim.  Because Forbes does not suggest that the Government's argument mischaracterized the document, his complaint should be rejected.

18.  Forbes claims that the Government improperly argued that the jury could not accept both Forbes' testimony that he had no conversations with Monaco about "splitting the audit" or retaining Pember in her accounting position, and Monaco's testimony that he had such conversations with Forbes.  Tr. 3563. According to Forbes, such an argument ignores the possibility that either Forbes or Monaco had an innocent misrecollection of the conversations, and that neither person lied.  Forbes raises a similar objection to the Government's rebuttal statements regarding the contradictions between the testimony of Forbes and Kernkraut regarding the conversations between the two of those persons.

In support of this argument, Forbes provides only a "cf." cite to inapposite cases which state that a witness should not be compelled to comment on the veracity of another witness by asking if that other witness "lied" on the stand, e.g., United States v. Scanio, 900 F.2d 485, 493 (2d Cir. 1990), abrogated on

27

other grounds, Ratzlaff v. United States, 510 U.S. 135 (1994).
The Government never asked Forbes if either Monaco or Kernkraut
was lying, however.  Nevertheless, whether innocently mistaken or
not, Forbes' testimony that he did not have certain conversations
with Monaco and Kernkraut was simply irreconcilable with Monaco's
and Kernkraut's testimony that they did have those conversations.

  The Government permissibly argued to the jury that it
could conclude that Forbes' testimony was false based on that
contradiction, and Forbes was entitled to argue that the
testimony was inconsistent for innocent reasons.  There is no
basis, however, to strike the challenged argument.  United States
v. Shareef, 190 F.3d 71, 79 (2d Cir. 1999) (rejecting the
argument that the prosecutor engaged in improper summation by
arguing that if the jury believed "Shareef's testimony, it had to
conclude that other witnesses were lying.")

  19.  Forbes again mischaracterizes the Government's
rebuttal by claiming that the Government effectively argued that
all of Kernkraut's stricken testimony related to what occurred
after April 15, 1995.  The Government did not purport to
characterize the totality of the portions of Kernkraut's
testimony that were stricken by this Court.  Rather, the
Government stated that "Steven Kernkraut's testimony of what
occurred after April 15th, 1998, is not in the record."  Tr.
3559.  That is an accurate assessment of a portion of this

28

Court's instruction that the court "also struck the testimony by
Mr. Kernkraut that on April 15, 1998 he found out that
representations that he relied on that had been made to him by
Mr. Forbes were essentially false." Tr. 3083-84. More
generally, however, this Court struck portions of Kernkraut's
testimony that were based on his review of Cendant's disclosures,
including the Restatement, that CUC had overstated its earnings
for various years, because Kernkraut did not have sufficient
personal knowledge of the overstatement to satisfy Fed. R. Evid.
701. The Court did not strike any of Kernkraut's testimony about
what he learned from his assessment of CUC through various means,
including his numerous conversations with Forbes, and what he
concluded and reported about CUC before Cendant disclosed the
fraud on April 15, 1998. The Government's challenged remarks
were accurate both technically and in general.

Contrary to Forbes' claim, the Government never
suggested that Heckler testified about CUC's false accounting for
any years before 1995. Forbes again conveniently ignores the
Government's accurate characterization of Heckler's testimony as
limited to the years of 1995-1997. Tr. 3560 (stating that
Heckler "testified that for the fiscal years 1/31/96, 1/31/97,
and 12/31/97, the former CUC businesses overstated their income
by approximately $252 million."). Nor did the Government
remotely suggest that Heckler testified about CUC's membership

numbers or membership renewal rates.  In any event, this Court has already instructed the jury, both before and after the Government's challenged rebuttal, that "there is no evidence at all that the membership numbers reported by CUC or Cendant were false or inflated in any respect . . . and I instruct you that there is no issue in the case with respect to those matters." Tr. 3083-84, 3801.  No additional curative instruction on that issue is possibly necessary.

Finally, Forbes contends that the Government was not entitled to rely on Kernkraut's testimony for the reasons stated in Forbes' Retrial Motions Nos. 15 and 16.  By its ruling dated November 27, 2005, the Court denied Retrial Motion No. 16. Docket No. 2004.  Although the Court has not yet issued a formal ruling on Forbes' Retrial Motion No. 15, it has stated on the record to defense counsel that "I did not accept your arguments in Forbes' Motion Number 15."  Tr. 11/28/05, p. 41.  Accordingly, nothing in either of those motions supports Forbes' present challenge.

20.  Forbes again mischaracterizes the Government's rebuttal by claiming that the Government mischaracterized Kernkraut's testimony about his conversations with Forbes about the Ideon merger reserve.  According to Forbes, the Government argued that Kernkraut testified that Forbes was lying when he denied any involvement in the Ideon merger reserve.  To the

30

contrary, what the Government argued was that Kernkraut's
testimony about Forbes' knowledge of the shifting amounts of the
Ideon merger reserve "corroborates Cosmo Corigliano and shows the
defendant is lying when he says that he had nothing to do with
establishing the Ideon merger reserve or that he had nothing to
do with increasing it." Tr. 3572.  Thus, the Government's
argument was that Corigliano's testimony that Forbes was
intimately involved with the fraudulent inflation of the Ideon
merger reserve was corroborated by Kernkraut's testimony that
Forbes was readily conversant with the shifting amount of the
reserve, and Corigliano's and Kernkraut's mutually corroborating
testimony, taken together, establish that Forbes was lying when
he denied any involvement in the Ideon merger reserve.  See also
Tr. 3114-16 (Government's initial summation).

     21.  Forbes claims that the Government was not permitted to
reference during its rebuttal evidence regarding Forbes'
severance agreement, because Forbes had objected to the admission
of that agreement in his Retrial Motion In Limine No. 4.  By its
ruling of October 17, 2005, the Court denied Retrial Motion In
Limine No. 4 insofar as it sought to exclude the severance
agreement from evidence.  Docket No. 1845.

     Forbes also erroneously claims that the Government
improperly argued that the severance agreement was substantive
evidence of Forbes' guilt, rather than evidence which impeached

Forbes' denials of guilt.  To the contrary, the Government
invoked the severance agreement during its rebuttal solely to
challenge Forbes' own testimony that he did not contemplate that
he would be criminally prosecuted when he transferred assets to
his wife.  Tr. 3602.  Had Forbes properly made a timely objection
to this remark, the Government could have emphasized that the
reference to the severance agreement was for the purpose of
assessing Forbes' credibility.  United States v. Castillo, 14
F.3d 802, 806-807 (2d Cir. 1994)(rejecting the claim that the
prosecutor had abrogated the court's limiting instructions by
improperly arguing the truth of the hearsay testimony during his
closing and rebuttal arguments, where, "[i]mmediately following
defense counsel's objection to his closing argument, the
prosecutor stated to the jury that he was not arguing that the
substance of the hearsay testimony be accepted as true").
Additionally, had Forbes made a timely objection, he would have
enabled the Court to give a contemporaneous instruction that
clarified the matter on the spot.  Id.  Forbes declined to
object, however, so any possible ambiguity is attributable to his
own strategic decision.

        22.  Forbes argues that the Government "violated
Wallach" by relying on Monaco's testimony regarding a meeting he
had with Forbes in September 1997 because, according to Forbes,
Monaco's testimony during the first trial regarding that meeting

did not state that Monaco discussed Pember with Forbes.  In other words, the Government knowingly elicited false testimony because Monaco's testimony during the two trial was not identical.  The law is to the contrary.  E.g. <u>United States v. Douglas</u>, 874 F.2d 1145, 1160 (7th Cir. 1989), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>United States v. Durrive</u>, 902 F.2d 933 (7th Cir. 1990).  This is particularly true, where Monaco's testimony from the initial trial does not <u>contradict</u> his testimony at the retrial, but merely <u>fails to include</u> all of the information in the retrial testimony.  The absence of even important inculpatory information in a written summary of a witness's prior statement does not make the witness's trial testimony about that information false, much less knowingly false.  <u>United States v. Borkoski</u>, 154 F.Supp.2d 262, 266-67, 270-71 (D.Conn. 2001), <u>citing</u> <u>United States v. Gambino</u>, 59 F.3d 353, 365 (2d Cir. 1995)("even a direct conflict in testimony does not in itself constitute perjury").

        23.  Forbes' challenge in this paragraph of his motion to the Government's remarks regarding the testimony of Kernkraut, citing Tr. 3572, is the same as his challenge set forth in paragraph 20 of his motion.  The Government refers the Court to its response to paragraph 20, <u>supra</u>.

        24.  Forbes contends that the Government impermissibly pointed out during rebuttal that Corigliano's plea agreement required him to use his "best efforts" to settle with the SEC,

but the plea agreement provides precisely that.  GX 1546,
Schedule A, ¶ 12.  According to Forbes, that argument was
improper because the Court improperly limited Forbes' cross-
examination of Corigliano regarding his supposed failure to use
his best efforts.  Since Forbes is merely referring to his failed
arguments on matters that were previously briefed at length in
various motions to quash Forbes' Rule 17(c) subpoenas, he has
failed to demonstrate that the Government committed misconduct by
accurately characterizing a document that was properly admitted
into evidence.

        25.  Forbes contends that the Government made arguments
based on portions of the Court's instructions on conspiracy to
which Forbes objected.  Forbes apparently believes that it is his
objections to proposed instructions that somehow limits the
Government's summation, and not the Court's rulings that rejected
those objections.  Not surprisingly, Forbes cites no authority
for this self-aggrandizing contention.

        26.  Forbes contends that the Government was not
entitled to argue that CUC had two corrupt CFOs, Corigliano and
Stuart Bell, because this Court supposedly erred by denying his
Retrial Motion No. 7 and his Retrial Motion *In Limine* No. 23, and
supposedly further erred by denying Forbes' request for a missing
witness instruction regarding Bell.  The Government, again, did
not commit misconduct merely because it did not toe the line of

Forbes' arguments that were previously rejected by this Court.
To the extent that Forbes complains about Kernkraut's testimony
that there was fraud at CUC in 1993 and 1994, that testimony, and
all testimony by Kernkraut that CUC's accounting was fraudulent,
was stricken by this Court.  Tr. 3083-84, 3801.

27.  Forbes challenges the Government's statement
regarding the absence of a motive for Kernkraut to falsely
implicate Forbes in the charged fraud.  As Forbes points out, the
Government elicited certain testimony from Kernkraut (to the
effect that April 15, 1998 was "one of the worst days of
[Kernkraut's] professional life," Tr. 214) in anticipation that
Forbes would seek to establish Kernkraut's motive to testify
falsely against Forbes.  Forbes, however, never questioned
Kernkraut about that testimony, and never argued in his lengthy
summation that Kernkraut had a motive to testify falsely against
Forbes.  Rather, to the extent that Forbes disputed any portions
of Kernkraut's testimony, he claimed that Kernkraut had a faulty
memory or was otherwise honestly mistaken.  Tr. 3458-63.  Because
the evidence elicited by the Government was never used by Forbes
in any manner to establish any motive for Kernkraut to
intentionally frame Forbes, the Government's argument that
Kernkraut had no motive to testify falsely was correct.

35

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that this Court deny Forbes' motion to strike portions of the Government's rebuttal argument or for a curative instruction.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
Special Attorney
U.S. Department of Justice


By:  NORMAN GROSS
     MICHAEL MARTINEZ
     CRAIG CARPENITO
     Special Attorneys
     U.S. Department of Justice


Dated: December 12, 2005
Hartford, Connecticut

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this day I served a copy of the Government's Opposition to Defendant Walter A. Forbes' Motion (1) to Strike Allegedly Improper Rebuttal Argument by the Government and (2) for a Curative Instruction and Notice of Continuing <u>Wallach</u> Objection upon the following by email:

Barry S. Simon
Marcie Ziegler

_____
NORMAN GROSS
U.S. Department of Justice

Dated: December 12, 2005
       Camden, New Jersey