UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.  )<br>)<br>WALTER A. FORBES )<br>) | No. 3:02CR264 (AWT)<br><br>February 8, 2006<br><br>(Filed Under Seal) |

## REPLY MEMORANDUM IN SUPPORT OF OPPOSITION OF WALTER A. FORBES TO THE PROPOSED SUBSTITUTION OF AN ALTERNATE JUROR

After more than 25 days of deliberations, and the delivery of an Allen charge, the government seeks to wipe the slate clean by bringing in a new juror, which will require the jury to begin its deliberations anew. Mr. Forbes submits that, at this advanced stage of the jury's deliberations, it would be fundamentally unfair to both Mr. Forbes and the eleven jurors who have been deliberating since December 8, 2005 to introduce an alternate juror into the deliberating jury. The deliberating jurors have put a great deal of work into their deliberations and have made significant personal sacrifices in order to participate in these lengthy proceedings. Telling the jurors to start over -- that the last two months of their lives were wasted because of the improper conduct of another juror -- would both demoralize the jury and undermine all of the progress the jury has made thus far.

There is no compelling reason to require the jury to begin deliberations over again at this late date rather than allowing the eleven members of the jury to continue with their deliberations. To the contrary, even in cases where there have

not been such lengthy deliberations, the Second Circuit has repeatedly stated its preference for proceeding with a jury of eleven rather than substituting an alternate juror for a deliberating juror. See Opposition of Walter A. Forbes to the Proposed Substitution of an Alternate Juror ("Forbes Opp.") at 1-2 (collecting cases).

It will be impossible, as a practical matter, for the jury "to begin its deliberations anew," Fed. R. Crim. P. 24(c), at this advanced stage of the jury's deliberations. Moreover, any instruction by the Court requiring the jurors to begin deliberations anew would be inconsistent with the Court's Allen charge, which instructed jurors not to surrender their conscientiously held beliefs. See Court Exhibit 27. In addition, as the Advisory Committee notes to the 1983 amendment to Fed. R. Crim. P. 23(b) reflect, the introduction of a new juror into the deliberating process raises constitutional concerns. For all of these reasons, the Court should reject the government's request to substitute an alternate juror and should exercise its authority pursuant to Fed. R. Crim. P. 23(b) to proceed with eleven jurors.

The jury has been deliberating for more than 25 days. It is now approximately 60 days since the jury commenced deliberations, and almost 90 days since the jury last heard any testimony during the trial. During the course of the jury's deliberations, the jurors have made several requests for read backs, some of which were very lengthy. They have heard read backs of a significant portion of the trial, including testimony by Steven Kernkraut, Michael Monaco, Cosmo Corigliano, Greg Danilow, and Mr. Forbes.

2

The Court has repeatedly commended the jurors for their diligence and hard work. The <u>Allen</u> charge instructed the jurors that they should "inform the court" if they "reach the point where [they] believe that further deliberations would not be beneficial." Court Ex. 27 at 3. The jury has not done so. The government acknowledges that, following the <u>Allen</u> charge, the jurors have continued working in an effort to reach a verdict. Gov't Supp. Mot. at 1-2. Indeed, subsequent to the <u>Allen</u> charge, the jury heard a read-back of a significant portion of Mr. Corigliano's testimony, which took place over the course of at least three days, and a read-back of all of Mr. Forbes' testimony, which took place over the course of at least four days.

There is no reason to believe that forcing the jury to start deliberations anew at this late date, rather than proceeding with the eleven jurors who have been deliberating since December 8, 2005, will increase the likelihood of a verdict. To the contrary, precisely the opposite is true. It simply makes no sense to tell the jurors to forget everything they have seen, heard, discussed, and considered over the past 25 days of deliberations and begin over again. Moreover, asking the jury to start over at this late date would be punishing the eleven jurors who have worked diligently over the past two months in an effort to reach a verdict because of the actions of a single juror who violated the Court's instructions, and will have a seriously demoralizing effect on the jury, reducing the chances that further deliberations will be productive.

3

While the government contends that the "fresh perspective" is needed to break the jury's deadlock, Supp. Motion at 3, the jury will not make more progress by starting over at this late date with an entirely new juror than it would make by continuing its deliberations. Any new juror will not have heard or discussed any evidence in this case for almost three months. Unlike the deliberating jurors, the alternate jurors have not been immersed in the evidence for the past two months, and they likely (through no fault of their own) have forgotten a great deal of what transpired during the trial. It would take a significant amount of time to get a new juror up to speed. This will undermine, not advance, the progress the jury has made to date.[1] Moreover, as the Advisory Committee Notes to the 1983 amendment to Rule 23(b) recognize, a new juror may be "somewhat intimidated by the others by virtue of being a newcomer to the deliberations." Id. The risk that a new juror will be coerced into a conclusion by other jurors is particularly great in a case such as this, where the new juror has not heard evidence for months and the remaining jurors have been deliberating for a considerable period of time.

An instruction that the jury begin its deliberations anew will significantly undermine the progress the jury has made to date. It will preclude the original eleven jurors from proceeding with deliberations with the benefit of the

---

[1]  It is presumptuous for the government to assert that the jurors need the "fresh perspective" of a juror who has not heard the evidence for three months, and who has not participated in any of the readbacks that twelve jurors apparently believed were necessary to participate in meaningful deliberations.

4

discussions that have taken place during the past two months. Beginning anew will hinder, rather than advance, the jury's progress.

In addition, as a practical matter, it will be impossible for the jurors to set aside everything that has taken place during more than 25 days of deliberations. At this stage of the deliberations, the jurors' discussions are informed by all of their prior deliberations, the exhibits they have reviewed, and the testimony they have heard read back. It will be impossible for the jurors to eliminate the knowledge they have gained and the insights they have made during 25 days of deliberations from their minds, and they cannot realistically be expected to do so. Indeed, the Court commented, with respect to the Corigliano read back, that the jurors likely had "created a construct for looking at the evidence." Tr. 4105. If that is the case, the jurors will not be able to simply wipe the slate clean and begin deliberations anew as if the prior deliberations had never taken place.

As the District Court determined in United States v. Levinite, 277 F.3d 454 (4th Cir. 2002), a case decided *after* the 1999 amendment to Fed. R. Crim. P. 24(c), substituting an alternate juror is "difficult at best, and constitutionally suspect." 277 F.3d at 464 (citing Advisory Committee Notes to 1983 amendment of Fed. R. Crim. P. 23(b)). That is particularly true in a case involving lengthy jury deliberations. Although Rule 24(c) was amended to permit the option of substituting an alternate juror for a deliberating juror in an appropriate case, this is not such a case. The defense is unaware of any case (and the government has not cited any) in which a new juror was permitted to begin deliberating after the jury

5

had deliberated for as many days as this jury has. Nor is the defense aware of <u>any</u> case in which a new juror was permitted to deliberate after the trial court had delivered an <u>Allen</u> charge to the jury. Moreover, substitution of a new juror at this point is not necessary to obviate the need for a mistrial based on an insufficient number of deliberating jurors.

Contrary to the government's contention, proceeding with a jury of eleven at this time will not increase the chances of a mistrial. Mr. Forbes consents to a jury of eleven, and offered to stipulate to a jury of ten if necessary.[2] The Court has the clear authority to proceed with a jury of eleven, even over the government's objection. The Court also has the authority to keep the alternate jurors available to replace a deliberating juror in the event that another juror is lost. In <u>Levinite</u>, the District Court reasoned, in proceeding with an eleven-member jury, that it retained the "option of impaneling an alternate juror" should additional jurors be lost. 277 F.3d at 464.[3] Accordingly, proceeding with a jury of eleven at this juncture would not increase the likelihood of a mistrial. In contrast, requiring the jurors to begin deliberations again at this late date <u>increases</u> the chances that jurors will become demoralized and seek to be excused, which would increase the chances of a mistrial

---

[2] The government objects to proceeding with <u>any</u> number of jurors other than twelve.

[3] If the Court allows the eleven deliberating jurors to continue their deliberations, the issues presented by substituting an alternate juror in a case such as this are likely to be avoided. It is certainly not unreasonable to believe that the jurors are near the conclusion of their deliberations at this point.

6

and/or result in the jury having to repeatedly begin deliberations anew if additional jurors are substituted.[4] It also increases the likelihood of additional lengthy deliberations, which could result in the loss of additional jurors who may have personal and/or scheduling conflicts in the coming weeks or months.

Finally, it would be fundamentally inconsistent with the Court's <u>Allen</u> charge to instruct the jury that it must begin its deliberations anew at this point. At this juncture, the jury has not returned any verdicts, and one or more jurors presumably believe that Mr. Forbes is entitled to an acquittal. The Court has instructed the jurors that "under no circumstances must any juror yield his or her conscientious judgment." Court Ex. 27 at 1. If the Court were to now instruct the jurors to begin deliberations anew, as Rule 24(c) requires in the event an alternate juror is substituted, the Court would, in effect, be telling the jurors who favor acquittal to eliminate from their minds all of the reasons they favor acquittal based on the jury's deliberations to date. That would be fundamentally inconsistent with the instruction that no juror should yield his or her conscientious judgment. At this delicate stage of the proceedings -- a month after the jury indicated that it was "not unanimous with [its]vote,"Court Ex. 25, after "talk[ing] about the evidence, exchang[ing] views amongst each other, and voting," <u>id.</u>, and the Court gave an <u>Allen</u> charge over Mr. Forbes' objection -- it would be highly prejudicial to Mr.

---

[4]   Already, one other juror was on the verge of requesting to be excused, but withdrew the request. The likelihood that that juror, and other jurors, will request to be excused will increase substantially if the jury is told that it must start over again after more than 25 days of deliberations.

7

Forbes, and potentially unconstitutional, to require those jurors who favor acquittal to abandon their conscientiously held beliefs and begin deliberations anew.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

8

# CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Reply Memorandum in Support of Opposition of Walter A. Forbes to the Proposed Substitution of an Alternate Juror to the following via email on February 8, 2006 and hand delivery on February 9, 2006:

>Michael Martinez, Esq.
>Craig Carpenito, Esq.
>U.S. Attorney's Office
>District of New Jersey
>970 Broad Street, Suite 700
>Newark, NJ 07102

_____
Barry S. Simon