UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) )<br>) |
| v. | ) ) |
| WALTER A. FORBES. | ) No. 3:02CR264 (AHN)<br>) March 31, 2006<br>)<br>) |

## MEMORANDUM IN SUPPORT OF MOTION OF WALTER A. FORBES FOR LEAVE TO ISSUE RULE TRIAL TESTIMONY SUBPOENAS TO JAMES KIDNEY AND THOMAS NEWKIRK (Forbes Third Trial Motion No. 5)

Walter A. Forbes, through undersigned counsel, respectfully submits this memorandum in support of his Motion for leave to serve the trial testimony subpoenas attached hereto as Exhibits A and B. Mr. Forbes is filing this Motion pursuant to Judge Thompson's Order that he seek leave of the Court prior to issuing any Rule 17(c) subpoenas.[1]

Messrs. Newkirk, Kidney and David Frohlich were the three SEC attorneys most involved in negotiating the budget and settlement agreements between the SEC and Mr. Corigliano. Mr. Forbes called Mr. Kidney and Mr. Frohlich to testify in the first trial, and he served trial testimony subpoenas on Messrs. Kidney, Frohlich and Newkirk for the second trial. The Securities and Exchange Commission ("SEC") moved to quash the subpoenas, but that

---

[1] Judge Thompson's Order required that as a matter of "case management," prior to issuing any additional subpoenas for testimony from witnesses related to Cosmo Corigliano, *inter alia*, Mr. Forbes was either to file a certification with the Court verifying that the court had not already quashed a prior subpoena to that witness, or to file a motion for reconsideration of the Court's prior Order to quash. The Court's Order does not specifically address the circumstances of a third trial. But out of an abundance of caution, Mr. Forbes is filing this motion for leave to serve the attached subpoenas.

Oral Argument Requested

motion was denied.[2]  For the reasons stated herein, Mr. Forbes should be permitted to subpoena these witnesses for the third trial as well.

First, Messrs. Kidney and Newkirk possess information concerning the budget and settlement agreements entered into between Mr. Corigliano and the SEC, and which evidence Mr. Corigliano's bias.  See Forbes Third Trial Motion Nos. 2 & 4; Forbes Third Trial Motion in Limine No. 1.[3]  Second, both Messrs. Kidney and Newkirk have information concerning the negotiations leading up to each of these agreements which establish that Mr. Corigliano failed to act consistently with the obligations of his plea agreement with the United States.[4]  Id.  Third, Messrs. Kidney and Newkirk can provide testimony constituting impeachment by contradiction.

## I.    Testimony Regarding Benefits Conferred on Mr. Corigliano by the SEC Settlement.

Mr. Corigliano's testimony concerning the terms of his settlement with the SEC stood in stark contrast to the text of the written agreements he has with the SEC, see Forbes Third Trial Motion Nos. 2 & 4, and the government itself has made conflicting representations

---

[2] Mr. Forbes did not end up calling either witness to testify in the second trial.

[3] SEC attorney David Frohlich also participated in the negotiation of these agreements, and was called to testify during the first trial of Mr. Forbes.  However, unlike Messrs. Kidney and Newkirk, Mr. Frohlich also participated in interviews of several cooperating witnesses, and thus may be called to testify as to matters unrelated to Mr. Corigliano.  Because Judge Thompson's Order does not require the defense to seek leave to serve testimony subpoenas on persons whose testimony does not relate to Mr. Corigliano, we have already served Mr. Frohlich with a trial subpoena in the event Mr. Forbes decides to call him to testify concerning prior statements of the cooperating witnesses he interviewed.  Mr. Forbes may seek to call Mr. Frohlich to testify concerning the negotiations with Mr. Corigliano as well, however, in which case the following arguments apply to him.

[4] Mr. Forbes was erroneously precluded from exploring this area in each of the first two trials.  See Docket Nos. 1185 & 1186; Tr. 11/7/2005 at 33-42.

concerning the agreements in existence.  Mr. Forbes is entitled to ferret out the true nature of the

benefits enjoyed by Mr. Corigliano through, *inter alia*, the testimony of the SEC representatives.

For while one would expect that any agreement between Mr. Corigliano and the SEC would be

captured by the written Consent Agreement, Mr. Corigliano's testimony – and the

representations of the United States Attorneys' Office during the first trial – is inconsistent with

the text of those documents.  See Forbes Third Trial Motion Nos. 2 & 4.

For example, the Consent provides that Mr. Corigliano and the Relief Defendants

shall disgorge all assets of a value of $1,000 or more in which they had any direct or indirect

legal or beneficial ownership interest as of March 31, 2004, other than (1) the residence at

[REDACTED] in Old Saybrook, Connecticut; (2) all furnishings and personal property therein;

(3) the residence in Trumbull, Connecticut, occupied by Mr. Corigliano's parents; (4) all

furnishings and personal property therein; (5) one 1996 Lexus automobile; (6) one 1993 Acura

automobile; and (7) a balance of $100,000 in each of the three trust funds set up in the names of

Mr. Corigliano's children.  See Ex.13 at ¶ 6.[5]  Notably missing from this list is any mention of

the purported right to continue to use the millions of dollars in legal retainers on deposit with the

Coriglianos' counsel until Mr. Corigliano's legal problems are eradicated.  Yet Mr. Corigliano

testified that it was his understanding that he could continue to use the legal fees as long as they

were needed.  See Tr. 8/3/2004 at 9367-72.  The United States Attorney's Office ("USAO")

attempted to bolster this testimony during the first trial, representing that in fact there was an oral

side agreement between Mr. Corigliano and the SEC concerning the retainer.  Gov't Opp. to

Forbes Trial Motion No. 28 at 6-8, Docket No. 1147.  The USAO has now reversed its position,

---

[5] To avoid duplication, Mr. Forbes is filing a set of Exhibits which supports several of the
motions he is filing today.  Documents from this shared set of exhibits are referenced by number
(*e.g.*, 1, 2, 3), while documents attached to this Memorandum are referenced by letter (*e.g.*, A, B,
C).

stating that there are no side agreements between Mr. Corigliano and the SEC.  Gov't Opp. to

Forbes Retrial Motion No. 3 at 3,  Docket No. 1643.

Similarly, Mr. Corigliano testified that he understood that until the time he

actually transferred his assets to the Receiver, which was to be 60 days after the Final Judgment

was entered, he could continue to pay his "normal" living expenses out of the assets in which he

had a direct or indirect beneficial interest on March 31, 2004.  See, e.g., Tr. 08/03/2004 at 9393-

412.  The plain language of the Consent and Final Judgment belies Mr. Corigliano's

understanding, stating that all such assets, other than those specifically exempted, are to be

disgorged to the receiver.  See Ex. 13.

"Bias of a witness is not a collateral issue and extrinsic evidence is admissible to

prove that a witness has a motive to testify falsely."  United States v. Harvey, 547 F.2d 720, 722

(2d Cir. 1976) (reversing conviction); accord United States v. James, 609 F.2d 36, 46 (2d Cir.

1979).  "In criminal cases, especially, defense counsel should be given great latitude in adducing

proof which might bear on credibility."  United States v. Wolfson, 437 F.2d 862, 874 (2d Cir.

1970).  Indeed, "[s]pecial treatment is accorded evidence which is probative of a special motive

to lie for if believed it colors every bit of testimony given by the witness whose motives are

barred."  Harvey, 547 F.2d at 722 (quotation omitted).

> [A] defendant should be afforded the opportunity to present facts
> which, if believed, could lead to the conclusion that a witness who
> has testified against him either favored the prosecution or was
> hostile to the defendant.  Evidence of all facts and circumstances
> which tend to show that a witness may shade his testimony for the
> purpose of helping to establish one side of a cause only should be
> received . . . .

Id. (quotation omitted).

4

Given the clear conflict between the SEC's position, Mr. Corigliano's position, and the shifting positions of the USAO, Mr. Forbes has the right to explore the exact nature of the benefit conferred on Mr. Corigliano through the testimonial evidence sought from Messrs. Kidney and Newkirk. In particular, Mr. Forbes has a right to explore whether in fact any oral side agreements exist between the SEC and Mr. Corigliano and, if not, whether the SEC is now turning a blind eye toward Mr. Corigliano's violations of the plain text of the agreements – which in and of itself would constitute a benefit conferred upon Mr. Corigliano, the key cooperating witness for the government.

## II.    TESTIMONY REGARDING MR. CORIGLIANO'S FAILURE TO COMPLY WITH HIS PLEA AGREEMENT.

As discussed at length in Forbes Third Trial Motion Nos. 2 and 4, Mr. Corigliano's plea agreement required him, inter alia, to "truthfully disclose all information he possesses concerning any matters about which [the U.S. Attorney's] Office and other government agencies designated by this Office, including . . . the SEC, may inquire of him," Ex. 2 at 2, to "use his best efforts" to settle any claims asserted by the SEC, Ex. 2, Schedule A at 7, ¶ 12, and "to provide the SEC, upon request, with complete and accurate information regarding his ability to pay any such settlement in the form ordinarily required by the SEC." Id. The correspondence between Mr. Corigliano's counsel and the SEC that has been produced to the defense to date reveals that Mr. Corigliano nonetheless fought with the SEC over what financial information would be required of him, and it appears that he failed to provide the full disclosure requested by the SEC.

Messrs. Newkirk and Kidney participated in the relevant communications concerning Mr. Corigliano's financial disclosure, and their testimony could be invaluable in establishing the actions Mr. Corigliano took which were inconsistent with his obligations under

the plea agreement, and the reasons for the government's willingness to permit the non-compliance. Particularly given the government's presentation of Mr. Corigliano as a person who has at all times fully complied with his obligations under the plea agreement, these issues directly implicate the government's obligations under United States v. Wallach, 935 F.2d 445 (2d Cir. 1991). See Forbes Third Trial Motion *in Limine* No. 1.

## III.    TESTIMONY CONSTITUTING IMPEACHMENT BY CONTRADICTION.

In addition, Messrs. Kidney and Newkirk may be called to impeach Mr. Corigliano by contradiction. For example, Mr. Corigliano's Wells submission to the SEC in May 2000 directly contradicts Mr. Corigliano's trial testimony that from the moment he signed the plea agreement in January 2000 he was ready to disgorge all of his $10-$11 million in stock profits to the SEC, *see, e.g.*, Tr. 7/19/2004 at 7924-28, reflecting that in fact Mr. Corigliano made an offer of only $3.4 million to the SEC after he had signed the plea agreement. Ex. 19. Both Messrs. Kidney and Newkirk may be able to shed additional light on these negotiations, and further contradict Mr. Corigliano's testimony on this point.

In addition, Mr. Corigliano admitted that he never disclosed to the SEC the fact that his "residence" – the largest asset he was permitted to keep under the Consent Agreement with the SEC – in fact consisted of two separate, divisible lots, and that his residence was entirely located on only one of those lots. Nor did the "comparable" property submitted by Mr. Corigliano's attorneys to the SEC in response to the SEC's express request for valuation information on the property in September 2003 have two lots. Ex. 13. Indeed, Mr. Corigliano's property consisted of over 11 acres, divided into 2 lots, while the "comparable" had less than 2 acres. See Tr. 8/3/2004 at 9348-53. Messrs. Kidney and Newkirk can testify about the fact this

information was not disclosed to them – indeed Mr. Kidney has already done so during the first

trial. See Tr. 9/23/2004 at 13,524 & 13,530-31.[6]

## CONCLUSION

For the foregoing reasons, Mr. Forbes respectfully requests that the Court grant

him leave to serve the attached subpoenas on James Kidney and Thomas Newkirk.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Dated: March 31, 2006

_____

[6] Mr. Forbes was erroneously precluded from eliciting this testimony in the second trial. See Tr.
11/7/2005 at 33-42.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing Memorandum In Support of

Motion of Walter A. Forbes for Leave to Issue Trial Testimony Subpoenas to James

Kidney and Thomas Newkirk (Forbes Third Trial Motion No. 5) to be filed electronically

and to be served on March 31, 2006 to the following via e-mail:


Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)


and to be sent on March 31, 2006 to the following by Fed Ex:


Kathleen Cody, Esq.
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-9162


Notice of this filing will be sent to all proposed subpoena recipients by operation of the Court's
electronic filing system or by Fed Ex to anyone unable to accept electronic filing as indicated on
the Notice of Electronic Filing.


Barry S. Simon