# EXHIBIT A

DAVID POVICH
STEVEN M. UMIN
JOHN W. VARDAMAN
PAUL MARTIN WOLFF
J. ALAN GALBRAITH
JOHN G. KESTER
WILLIAM E. McDANIELS
BRENDAN V. SULLIVAN, JR.
RICHARD M. COOPER
GERALD A. FEFFER
ROBERT P. WATKINS
JERRY L. SHULMAN
ROBERT B. BARNETT
DAVID E. KENDALL
GREGORY B. CRAIG
JOHN J. BUCKLEY, JR.
DOUGLAS R. MARVIN
JOHN K. VILLA
BARRY S. SIMON
KEVIN T. BAINE
STEPHEN L. URBANCZYK
PHILIP J. WARD

F. WHITTEN PETERS
JAMES A. BRUTON, III
PETER J. KAHN
JUDITH A. MILLER
LON S. BABBY
MICHAEL S. SUNDERMEYER
JAMES T. FULLER, III
BRUCE R. GENDERSON
CAROLYN H. WILLIAMS
F. LANE HEARD III
STEVEN R. KUNEY
GERSON A. ZWEIFACH
PAUL MOGIN
HOWARD W. GUTMAN
STEVEN A. STEINBACH
MARK S. LEVINSTEIN
MARY G. CLARK
VICTORIA RADD ROLLINS
DANIEL F. KATZ
WILLIAM R. MURRAY, JR.
EVA PETKO ESBER
STEPHEN D. RABER
DAVID C. KIERNAN

LON E. MUSSLEWHITE
ROBIN E. JACOBSOHN
HEIDI K. HUBBARD
GLENN J. PFADENHAUER
GEORGE A. BORDEN
ROBERT J. SHAUGHNESSY
DAVID S. BLATT
ARI S. ZYMELMAN
DANE H. BUTSWINKAS
LAURIE S. FULTON
DENNIS M. BLACK
PHILIP A. SECHLER
LYNDA SCHULER
PAUL K. DUEFFERT
R. HACKNEY WIEGMANN
ROBERT M. CARY
KEVIN M. HODGES
DAVID M. ZINN
JOSEPH G. PETROSINELLI
STEVEN M. FARINA
KEVIN M. DOWNEY
THOMAS G. HENTOFF
PAUL B. GAFFNEY

EMMET T. FLOOD
ROBERT A. VAN KIRK
MARCIE R. ZIEGLER
KENNETH C. SMURZYNSKI
JOHN E. SCHMIDTLEIN
SUZANNE H. WOODS
CRAIG D. SINGER
JAMES L. TANNER, JR.
J. ANDREW KEYES
GILBERT O. GREENMAN
M. ELAINE HORN
ENU MAINIGI
MICHAEL F. O'CONNOR
PAUL T. HOURIHAN
WILLIAM J. BACHMAN
MARGARET A. KEELEY
MEGAN E. HILLS
EDWARD J. BENNETT
TOBIN J. ROMERO
BETH A. LEVENE
THOMAS G. WARD

OF COUNSEL
VINCENT J. FULLER
RAYMOND W. BERGAN
JEREMIAH C. COLLINS
ROBERT M. KRASNE
JACQUELINE E. MAITLAND DAVIES

LAW OFFICES

# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

www.wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

March 16, 2006

**Via Telecopy and Federal Express**
Christopher J. Christie, Esq.
United States Attorney
U.S. Department of Justice
970 Main Street, Room 700
Newark, NJ 07102

Dear Mr. Christie:

Rule 57(d)(6) of the Local Rules for the U.S. District Court for the District of Connecticut provides in relevant part as follows:

> A lawyer associated with the prosecution or defense of a criminal matter shall not, from the time of the filing of a complaint, information, or indictment, the issuance of an arrest warrant, or arrest until the commencement of the trial or disposition without trial, make or participate in making an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication and that relates to . . . any opinion as to the guilt or innocence of the accused, the evidence, or the merits of the case." (emphasis added)

Business Week Online and USA Today Online are reporting that your spokesperson, Michael Drewniak, told the Associated Press that "[w]e still believe firmly in our evidence against Mr. Forbes." See attached articles from Business Week Online and USA Today Online. That statement made on your behalf is a flagrant violation of Rule 57(d)(6).

This is not the first time this has happened. On January 15, 2003, Judge Thompson found that similar statements made by you to the media were "very inappropriate and not consistent . . . with the requirements of our local rules." Tr. 1/15/03 at 51-56.

Do you have any explanation for why your office continues to violate the Court's

WILLIAMS & CONNOLLY LLP

Christopher J. Christie, Esq.
March 16, 2006
Page 2

rules – especially after being warned about such "very inappropriate" comments ?  Please advise
as we intend to raise this issue with the Court promptly.

Sincerely yours,

Brendan V. Sullivan,

Brendan V. Sullivan, Jr.

cc:  Michael Martinez, Esq.
     Craig Carpenito, Esq.


Find out how Microsoft Partners in Learning helps schools in 50 states ➔  Your potential. Our p  Microsoft

**BusinessWeek | online**

SEARCH SI
Advanced S

TOP NEWS | BW MAGAZINE | INVESTING | ASIA | EUROPE | TECHNOLOGY | AUTOS | INNOVATION | SMALL BIZ | B-SCHOO

Get Four
Free Issues

Register
Subscribe to BW
Customer Service

TODAY'S NEWS
NEWS ARCHIVE
NEWS SEARCH
SPECIAL REPORTS
LIFESTYLE
NEWSMAKER VIDEOS

MARKETS
STOCKS
FUNDS
SECTORS
ECONOMY & BONDS
INVESTING
GLOSSARY

NEWSLETTER
SIGN-UP


South Asia
Earthquake Relief

| BUSINESS DIRECTORY
**Find services and products now.**

THE ASSOCIATED PRESS/BRIDGEPORT, CONN.
By JOHN CHRISTOFFERSEN
AP Business Writer

# Another trial is planned in Cendant case

**MAR. 15 12:17 P.M. ET** Prosecutors plan to try former Cendant Corp. chairman Walter Forbes for a third time on charges he participated in a massive fraud that cost the company and investors more than $3 billion.

Forbes' first two trials ended in mistrials when jurors could not reach a verdict. His second trial ended in February after a U.S. District Court jury in Hartford deliberated for 27 days. Forbes had argued that he did not know about the fraud.

"We are moving forward at this time with a retrial," Michael Drewniak, a spokesman for the U.S. Attorney's Office in New Jersey, said Wednesday. "If there is any change, we will alert the court."

PEOPLE SEARCH

**Search for business contacts:**

First Name :

Last Name :

Company Name :

GO

**PREMIUM SEARCH**
Search by job title, geography and build a list of executive contacts

SEARCH BY
✺ zoominfo

TOI
POPU

1. IP's
Con
2. Con
Corl
3. Gold
Haul
4. Givi
Whe
Due
5. App
Dis-

Get Free I

MARKET
DJIA
S&P 500
Nasdaq

STOCK L

**Stocks (
Report**
Create /
Launch P

hsbcdire
Online S

What
most
impo
to yo
your
infra

ADVERTISEMENT


Find out how Microsoft Partners in Learning helps schools in 50 states ➔
Your potential. Our passion.
Microsoft

| PREMIUM CONTENT
| MBA Insider

| BW MAGAZINE
| Get Four Free Issues
| Register

A telephone message was left Wednesday for Forbes' attorney, Barry Simon.

Register
Subscribe
Customer Service
| ONLINE FEATURES
Book Reviews
BW Video
Columnists
Interactive Gallery
Newsletters
Past Covers
Philanthropy
Podcasts
Special Reports
| BLOGS
Auto Beat
Blogspotting
Brand New Day
Byte of the Apple
Deal Flow
Economics Unbound
Fine On Media
Hot Property
Investing Insights
New Tech in Asia
NussbaumOnDesign
Tech Beat
Working Parents
| TECHNOLOGY
J.D. Power Ratings
Product Reviews
Tech Stats
Wildstrom: Tech Maven
| AUTOS
Home Page
Auto Reviews
Classic Cars
Car Care & Safety
Hybrids
| INNOVATION & DESIGN
Home Page
Architecture
Brand Equity
Auto Design
Game Room
| SMALLBIZ
Smart Answers
Success Stories
Today's Tip
| INVESTING
Investing: Europe
Annual Reports
BW 50

During a conference call with attorneys Tuesday, U.S. District Judge Alvin W. Thompson, who heard both trials, said the third trial would likely take place before Judge Alan Nevas in Bridgeport.

In the second trial, prosecutors reduced the number of charges from 16 to four -- conspiracy to commit securities fraud, securities fraud and two counts of false reporting to the U.S. Securities and Exchange Commission. The third trial involves the same charges at this point, officials said.

"We still believe firmly in our evidence against Mr. Forbes," Drewniak said.

Jurors last year convicted Forbes' co-defendant, former Cendant Vice Chairman E. Kirk Shelton, of conspiracy, mail fraud, wire fraud, securities fraud and making false statements to the SEC.

Shelton was sentenced to 10 years in prison and ordered to pay $3.27 billion restitution to Cendant, including a balloon payment of $15 million and monthly installments of $2,000 after he is released from prison.

Prosecutors said Shelton inflated revenue by $500 million at Cendant's predecessor, CUC International, to drive up the stock price. The fraud was reported in 1998, causing Cendant's market value to drop by $14 billion in one day.

CUC, which ran a membership marketing operation, merged with HFS Inc., a travel and real-estate services company, in 1997 to form Cendant. Cendant's brands include Ramada, Howard Johnson, Avis, Coldwell Banker and Century 21.

The Cendant allegations were among the first in a series of corporate accounting scandals in recent years that sparked outrage from investors. At the time it was first brought, the $3 billion fraud was the largest case of accounting fraud in the country, prosecutors said.

Forbes was chief executive officer of CUC and Shelton was president before CUC merged with HFS.

Copyright 2005, by The Associated Press. All rights reserved. This material may not be published, broadcast, rewritten or redistributed.

 **AP** **Associated Press**

BW MALL  SPONSORED LINKS

- **Trade the US Dollar**  24 hour FOREX trading - No Commissions or Fees - Mini Accounts from $250 - Free Practice Account.

- **Homeowner's Insurance**  Get Competitive Rates - Free Quotes from Providers in Your Area - Fast!

- **Costa Rica Real Estate Opportunity**  Property values on the central Pacific coast are skyrocketing. Now is the perfect time to invest in mountain and ocean view homesites at pre-development prices. Introducing Costa Montaña, a private, gated community. Free DVD and brochure.

- **Top Performing Tech Stocks**  Of 180 newsletters covered by Hulbert Financial Digest, Fredhager.com is the top performer year to date. Hager is also #1 over the past 1, 2, 3, and 4 year periods. Up 318% over the last three years and up another 68% YTD. Click here to register.

- **Stock Report: Profit from Baby Boomers**  Get our Free Report & capitalize on America's Aging Population. Exclusive investment research on the health care, retail, and travel & leisure industries with 8 company-specific reports.

S&P Picks & Pans
Stock Screeners
Free S&P Stock Report
| SCOREBOARDS
Mutual Funds
Info Tech 100
S&P 500
| B-SCHOOLS
MBA Blogs
MBA Profiles
MBA Rankings
Who's Hiring Grads
| BW EXTRAS
BW Digital
BW Mobile
BW Online Alerts
Dashboard Widgets
Podcasts RSS
RSS Feeds RSS
Reprints/Permissions
Conferences
Investor Workshops
Research Services

**Buy a link now!**

Get BusinessWeek directly on your desktop with our **RSS feeds.** RSS

Add BusinessWeek news to your Web site with our **headline feed**.

Click to buy an **e-print or reprint** of a *BusinessWeek* or BusinessWeek Online story or video.

To subscribe online to *BusinessWeek* magazine, please **click here**.

Learn more, go to the **BusinessWeekOnline home page**

Terms of Use | Privacy Notice

Advertising | Special Sections | MarketPlace | Knowledge Centers

The **McGraw-Hill** Companies




Cargill

Rollover to learn more

 **Classifieds:**  |  |  |  | 

# Money

Get a quote: Enter Symbol(s) o

**DJIA** 11,257.00 ▲ 47.23    **NASDAQ** 2,316.02 ▲ 4.18    1:35P ET 3/16/2006  © BigCharts.com

Home
News
Travel
Money
Sports
Life
Tech
Weather

Search

powered by **YAHOO!** GO

**More Money**
Money briefs
Money columnists
**Markets**
Markets home
Most active stocks
World stocks
Commodities
Currencies
Key interest rates
Internet 50
**Investor Tools**
Investor home
Markets Report
Your Portfolio
Stock screener
Fund screener
Snap quote
Economic calendar
Company calendar
**Managing Money**
News/columns/tips
Calculators
CD and loan rates
**Special Sections**
Cars
Jobs
Small Business
Talk Today
Today in the Sky
**Marketplace**
Real estate
Arcade
Franchise Center

▶ E-MAIL THIS   ▪ PRINT THIS   ▪ SAVE THIS   ▪ MOST POPULAR   ▪ SUBSCRIBE

Posted 3/15/2006 11:45 AM   Updated 3/15/2006 11:59 AM

## Third trial for former Cendant chair Forbes

BRIDGEPORT, Conn. (AP) — Prosecutors plan to try former Cendant (CD) Chairman Walter Forbes for a third time on charges he participated in a massive fraud that cost the company and investors more than $3 billion.

Forbes' first two trials ended in mistrials when jurors could not reach a verdict. His second trial ended in February after a U.S. District Court jury in Hartford deliberated for 27 days.

"We are moving forward at this time with a retrial," Michael Drewniak, a spokesman for the U.S. Attorney's Office in New Jersey, said Wednesday. "If there is any change, we will alert the court."

During a conference call with attorneys Tuesday, U.S. District Judge Alvin W. Thompson, who heard both trials, said the third trial would likely take place before Judge Alan Nevas in Bridgeport.

In the second trial, prosecutors reduced the number of charges from 16 to four — conspiracy to commit securities fraud, securities fraud and two counts of false reporting to the U.S. Securities and Exchange Commission. The third trial involves the same charges at this point, officials said.

"We still believe firmly in our evidence against Mr. Forbes," Drewniak said.

A telephone message was left Wednesday for Forbes' attorney, Barry Simon.

Forbes argued that he did not know about the fraud.

*Copyright 2006 The Associated Press. All rights reserved. This material may not be published, broadcast,*



Cargill

Rollover to learn mor



Related Advertiser Links

• **$145,000 Loan for $484/Mon**
  www.lowermybills.com

• **Mortgage Rates as Low as 2.9**
  www.homeloantrust.com

• **Cheap Mortgage Quotes**
  www.comparefreequotes.com

• **$150,000 Mortgage for $483**
  www.pickamortgage.com

Related Advertiser

**Pay your taxes with Visa.**
If you have to pay, do it the easy way.
pay1040.com/visa10

Special Offers
International
Business Index
Business
Opportunities
Newspaper
Classifieds

*rewritten or redistributed.*

Related advertising links  What's this?

**$7 Stock Trades, Unlimited Shares**
Open an account today at Scottrad…
**www.scottrade.com**

**Screaming Stock Picks**
Finance, stocks, penn…
**www.screamingstock…**

**Tomorrow's Hot Stock Pick**
Free reports, picks, and tips…
**www.rocketstockpic…**

**Subscribe Today: Home Delivery of USA TODAY - Save 35%**



**TODAY'S TOP STORIES**
▶ Buy a piece of the Plaza
▶ Bike across country? Sure!

USATODAY.com partners: <u>USA Weekend</u> • <u>Sports Weekly</u> • <u>Education</u> • <u>Space.com</u>

<u>Home</u> • <u>Travel</u> • <u>News</u> • <u>Money</u> • <u>Sports</u> • <u>Life</u> • <u>Tech</u> • <u>Weather</u>

Resources: <u>Mobile news</u> • <u>Site map</u> • <u>FAQ</u> • <u>Contact us</u> • <u>E-mail news</u>
<u>Jobs with us</u> • <u>Internships</u> • <u>Terms of service</u> • <u>Privacy policy</u> • <u>Media kit</u> • <u>Press room</u>
<u>Electronic print edition</u> • <u>Reprints and Permissions</u>

<u>Add USATODAY.com RSS feeds</u> XML

© Copyright 2006 USA TODAY, a division of <u>Gannett Co. Inc.</u>

# EXHIBIT B

1

1

2

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

3

4

- - - - - - - - - - - - - - - x

5

                       :

UNITED STATES OF AMERICA     :   No. 3:02-CR-264(AWT)

6

                       :

7

      vs.          :

COPY

WALTER A. FORBES,      :

8

E. KIRK SHELTON,      :

                       :   HARTFORD, CONNECTICUT

9

           Defendants   :   JANUARY 15, 2003

10

- - - - - - - - - - - - - - - x

11

12

13

ORAL ARGUMENT ON MOTIONS

14

15

16

17     BEFORE:

       **HON. ALVIN W. THOMPSON, U.S.D.J.**

18

19

20

21

22

23

24

                       Diana Huntington, RMR, CRR

                       Official Court Reporter

25

1    and I'll ask them.

2            MR. SIMON:  -- any other pending indictment?

3    They identify him as leading this prosecution.  And even if

4    he's talking -- he says CEOs are saying "We need $30 a

5    share" --

6            THE COURT:  I've read that.  Let me ask you this.

7            This interview was given on July 8, 2002.  You

8    know my question, go ahead and answer it.

9            MR. SIMON:  Your Honor, we're not seeking to hold

10   somebody in contempt.  And in fact, the reason the Court

11   needs to say something is because the government's response

12   is the comments didn't violate the rules.  Oh, if we

13   simply --

14           THE COURT:  I think it will be pretty clear by

15   the time we finish our discussion today what my reaction

16   will be to the various comments.  And I would suggest we

17   might get to where we want to get faster if I talk with

18   Mr. Carney about a few things.

19           MR. SIMON:  Thank you, Your Honor.

20           The interview of Mr. Christie --

21           THE COURT:  I'll tell you what my thinking is.  I

22   really don't think you have very strong points with respect

23   to Mr. Carney's interview.  But with respect to

24   Mr. Christie's interview, I think he is a different story,

25   and I'll ask Mr. Carney about that.  So why don't I start

1    with Mr. Christie's interview.  I'm much more interested in

2    that.

3              MR. SIMON:  My only --

4              THE COURT:  And we'll come back to Mr. Carney if

5    you want to.

6              MR. SIMON:  That's fine.  I would like to do

7    that.

8              THE COURT:  Okay.

9              MR. SCHECHTER:  I'm Richard Schechter.  I was

10   prepared to argue this.  And Mr. Carney told me if I drove

11   out to Connecticut, I'd get to do something.  I'd like an

12   opportunity to respond to whatever questions Your Honor

13   has.

14            THE COURT:  I'll have to pull out the

15   government's memorandum.  And I have to get out the

16   transcript.

17          I assume there are no disagreements about the

18   copy of the transcript that is attached to the defense

19   memorandum?

20            MR. SIMON:  We provided a copy of the tapes so

21   there would be no question.  And we identified this is a

22   transcript my firm prepared.  There's no ambiguity that we

23   did it and we haven't heard any objection that it's

24   inaccurate.

25            THE COURT:  First of all, it seems to me to be

1    clear that this is an interview solely about this case.

2             MR. SCHECHTER:  Your Honor, he certainly talked

3    about the case, no doubt about it.

4             THE COURT:  It says, "I just wanted to ask you

5    about a big case in your office."  And that's what's at

6    least the focus of the interview is.

7             And I have to keep straight, on page 8 of the

8    government's memorandum -- and let me just digress for one

9    moment.  It will be helpful when we respond to defense

10   memoranda if we don't combine two responses in one

11   document.  It creates confusion in terms of linking the

12   documents up.

13            MR. SCHECHTER:  That's fine.

14            THE COURT:  The government's memorandum says that

15   when Mr. Christie was asked if a specific witness would

16   testify, he ducked the question basically saying it's too

17   early to tell.  That would be a decision made by my trial

18   team.

19            I don't think that's a response that's consistent

20   with our requirements.  I think he's not allowed to comment

21   on anything like that.

22            Secondly, with respect to the issue under

23   Rule 13(b)(6) -- let me just find that question.  I think

24   that's the question, "Are you confident you have a strong

25   case when you go to trial?"  I thought that that response

1    was also not consistent with the requirements of our rule.

2    I think he was not entitled to comment on that at all.  And

3    I understand your desire to protect the U.S. Attorney's

4    flank, but I really didn't find your analysis in the

5    memorandum persuasive.  In substance, he says, I think a

6    reasonable person looking at this response would say yeah,

7    he's guilty.  We'll get a conviction.  Although there's

8    some other things that are built into the response.  So

9    that's quite problematic.

10        I'm trying to remember if there was a third item

11   that was pointed to in terms of Mr. Christie's -- oh, the

12   other comment about it being the first of the Enron-type

13   questions.  That's also very inappropriate and not

14   consistent, in my view, with the requirements of our Local

15   Rules.  Because we know what people hear when the words

16   "it's an Enron-type case" are said.

17        And there are a couple of other things I'll point

18   out so you have my whole reading on it.  At one point the

19   questioner says, "This is a fraud that primarily occurred

20   at CUC?"  And then the answer is, "That's correct."  I

21   mean, it's not only the "at CUC," but "it's a fraud."

22        I think it's safe to say that this is an

23   interview that shouldn't have been given.

24        Those are my reactions.  I wanted to give them to

25   you.  If you want to respond to them.

1          MR. SCHECHTER:  I'm not going to quibble with

2     Your Honor's conclusions.  All I can say is look the

3     ultimate question:  Is this going to deprive the defendants

4     of a fair trial?  Are we going to be able to select a jury

5     20 months after Mr. Carney's statement or 15 months after

6     Mr. Christie's comments, as Your Honor has found, were

7     about this case?  I think that's the question.  And the

8     question ultimately, Your Honor, we believe can be

9     answered:  Yes, we will be able in 14 or 13 months to be

10     able to select a fair, impartial jury based on the voir

11     dire that Your Honor will conduct.

12          While Your Honor has found that the statements

13     that were made should not have been made ultimately here,

14     this is going to be an opportunity for us to ferret out

15     whatever prejudice these statements may have caused this

16     hypothetical jury and we're confident we can pick a jury.

17          Given Your Honor has ruled you found it

18     inappropriate, I don't know what, if any, relief Mr. Simon

19     is seeking.  If what Your Honor is suggesting we adhere to

20     Rule 13, we'll relay these comments to everybody in the

21     office including the U.S. Attorney.  Beyond that, I don't

22     know what else Mr. Simon is asking.

23          THE COURT:  I believe Mr. Simon wants to have a

24     little more discussion with me about the interview

25     Mr. Carney gave.

1          MR. SIMON:  Yes.  And also in terms of the

2    government.

3          Again, we weren't seeking a sanction other than

4    an order saying comply with the rule.  I don't want the

5    government to go away thinking if they give another

6    interview or make a statement and the jury isn't going to

7    be selected for a year, the only issue is jury selection.

8    The rules are designed for prophylactic purposes.  The rule

9    doesn't say, oh, if this in fact makes jury selection more

10   difficult.

11         And I just hope, given that last comment by the

12   government, the government doesn't go away thinking the

13   issue is, well, as long as it doesn't affect the jury, then

14   it doesn't matter what we say.

15         And I hope, despite the fact that maybe it's a

16   face-saving measure the government said that, they don't

17   believe that and don't go away with the idea that the issue

18   is only going to be:  Is jury selection compromised?

19   Because if the government makes further statements, we will

20   not be simply seeking an order from the Court saying comply

21   with the rule, we will be seeking contempt.

22         THE COURT:  Let me tell you what strikes me about

23   this situation and it really strikes me with respect to

24   both of the motions we've been talking about.  I think --

25   Mr. Cowdery's not here today, but Mr. Murphy is.

1          MR. MURPHY:  I'm here, Your Honor.

2          THE COURT:  And we've had a couple of motions

3    where we've gotten into a discussion of our Local Rules.

4    I'm sure the government has talked with somebody in the

5    District of Connecticut about our Local Rules, but what I

6    think is an appropriate response is to inform the

7    government that I expect the government counsel to review

8    the Local Rules, our Local Rules, with someone in the U.S.

9    Attorney's Office here in the district and to ensure that

10   anyone who's in their office who might be involved in the

11   case is put on notice of the rules that will be governing

12   this case, we don't have any slippage in the future.

13          I think defense counsel are wise to have someone

14   from the district here for proceedings, for reasons that

15   are pretty obvious to you.  And I think it would probably

16   be helpful at least as we're getting going for the

17   government to have someone here too.  I think that might

18   cut down on the number of motions I have to rule on.  At

19   least one argument of them, anyway.

20          MR. SIMON:  I heard -- maybe the government in

21   particular should focus on what the Court told the

22   government about in November about the open file approach

23   to discovery.  Because otherwise we're going to have

24   massive issues in the whole discovery area.  And that may

25   be a particularly salutary suggestion to the government.

1      THE COURT:  If that's been an issue, I will want

2   someone in our district involved in your discussions of the

3   discovery issues.

4      MR. SIMON:  The Court indicated beyond the rule

5   there's a practice of open file.

6      THE COURT:  I did.

7      MR. SIMON:  We don't have an open file.

8   Mr. Corigliano in the first 15 months of cooperation gave

9   84 hours of interviews over the course of 13 days, and we

10   don't have any of that.  We have a summary from the day

11   before he started cooperating.  But 84 hours, that's a lot

12   of material that's going to have to be reviewed.

13      I can't believe there's no Brady material in

14   there.

15      We have, the second cooperator, Ms. Pember, in

16   the first 15 months, according to something we just

17   received, had given ten days of interviews.  We don't have

18   any of that.

19      We don't have an open file.  And that is tied in

20   to the issue of not getting the summaries, Your Honor.

21   It's part of an effort, again, not have the cooperator

22   subjected to depositions, don't provide what they say.

23   Don't provide particulars, keep that as long as possible.

24   That is important in terms of the overall context --

25      THE COURT:  Are we digressing?

1    MR. SIMON:  And I don't want to digress any

2    further, Your Honor.

3         The issue on Motion 22 as to Mr. Carney's

4    statement, we didn't seek any sanctions and I recognize at

5    that point we were not in this court.  And I didn't even

6    write to Mr. Carney at that point.  I wrote after the case

7    was fully transferred to Connecticut.  And I said, "In

8    light of your statements, I want you to be aware of this

9    Local Rule so you don't violate it in the future."

10   Mr. Christie came after.  So when I said I understand the

11   issue with respect to Mr. Carney, it was only because we

12   weren't physically in this court.

13        In terms of whether it violated the rule, I think

14   it's appropriate for the Court to ask Mr. Carney at that

15   time was Mr. Carney prosecuting any other CEO in an

16   accounting fraud case.  Because if not, whether his

17   identification as the prosecutor here came before or after

18   the statement, that's the only reason for interviewing him.

19   His name wasn't picked out of a hat.  The reason for the

20   interview is he's prosecuting the former CEO of the Cendant

21   Corporation.  And so when he starts talking about what CEOs

22   want, that's the context.  Maybe Mr. Carney had six other

23   cases and he was talking about other CEOs, but was there

24   another CEO involved in an accounting fraud that was

25   pending on the day he gave the interview?

1        Again, the government's response to the Court is,

2    Oh, we didn't refer to the case by name.  The government

3    shouldn't go away from this hearing with a license from the

4    Court that whether it's Mr. Christie or Mr. Carney or

5    anybody else, if they start talking about CEOs being

6    prosecuted by the office for accounting fraud, as long as

7    they don't say if the case is up in Hartford that it's

8    okay, because it shouldn't be okay.  Shouldn't be able to

9    have the person who's known as leading this prosecution

10   give comments about CEOs and simply by himself not saying

11   "I'm talking about Walter Forbes" and the article simply

12   says he's prosecuting the executives, then it's okay under

13   the rule.

14        That's my concern, Your Honor, and I think it's

15   an appropriate question.  Was there another pending

16   indictment at that time against a CEO?  If not, those

17   comments about Mr. Forbes -- I'm more concerned with the

18   comments down the road, Your Honor.  Given the government's

19   response Mr. Carney didn't expressly state Walter Forbes,

20   didn't expressly state the case in Connecticut, because I

21   say that's -- he's not being interviewed out of the blue.

22        THE COURT:  Do you want to respond to that,

23   Mr. Schechter or Mr. Carney, either one of you?

24        MR. CARNEY:  Well, Your Honor, I'll just say that

25   actually, you know, at that point in time I have been

1    prosecuting financial fraud cases probably approximately 12

2    years.  I've been -- I'm also a CPA and spent years at the

3    Securities and Exchange Commission where I prosecuted cases

4    involving CEOs and public companies.  And have tried cases

5    at the SEC and have been involved in numerous other cases.

6    And I will not comment here in open court whether my office

7    and me as a supervisor have ongoing cases.  Which may very

8    well be true.  But if the Court would wish to hear from me

9    in camera as to other cases in my office or ones that I've

10   dealt with -- I don't know why they contact me specifically

11   or whether because I was chief of this unit or this case or

12   my long history of doing these types of cases.

13          MR. SIMON:  Your Honor, I didn't ask about

14   investigations.  Simple question.

15          THE COURT:  You suggested a question to me and I

16   chose not to ask it.

17          MR. SIMON:  Okay.

18          I would ask Your Honor, because if this is the

19   only pending indictment involving a CEO, the fact that when

20   he was back at the SEC he did something or the fact that he

21   has investigations doesn't change.  He's talking about this

22   CEO.

23          And again, the rules aren't designed to be evaded

24   so easily as saying I have other cases that are being

25   investigated or I prosecuted cases in the past.  The first

1    answer was, I prosecuted many accounting fraud cases.

2    There are a lot of people, CEOs involved in accounting

3    fraud.  This is a comment on the CEO and purports to have a

4    conversation, go back and get it.  What do you think they

5    mean by that conversation?  There aren't a lot of

6    documents, but that's what happens.

7              And maybe the Court won't -- obviously the Court

8    can only ask the questions the Court wants.  It's a very

9    simple question which would entail a very simple response.

10   When the interview was given, were there any other pending

11   indictments?  Not investigations.  I don't want to know

12   about grand juries.  Pending indictments of CEOs.  That

13   should inform the Court's instructions to the government

14   about what's appropriate commentary.

15             THE COURT:  I'm afraid I don't put the weight on

16   that question that you do.

17             To the extent that the motion seeks an order, I'm

18   going to deny it, but I think we have a pretty clear

19   understanding as to how I evaluated the statements in

20   Mr. Christie's interview.  And I think I have instructed

21   the government to consult with someone here in the district

22   and to make sure that word gets back throughout the office.

23             Now, there was another motion that was filed,

24   Forbes Pretrial Motion Number 23.  The government has

25   merely filed a preliminary response to that motion.  And

EXHIBIT C

**JAN 29 2003**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------x
UNITED STATES OF AMERICA        :
                                :
v.                              : Crim. No. 3:02CR264(AWT)
                                :
WALTER A. FORBES and            :
E. KIRK SHELTON                 :
---------------------------------x

## RULING ON FORBES PRETRIAL MOTION NO. 22

(Motion of Defendant Walter A. Forbes For an Order Requiring the
Government to Comply with Rule 13 of the Local Rules of the
District of Connecticut)

For the reasons set forth on the record at the hearing on
January 15, 2003, Forbes Pretrial Motion No. 22 (Doc. # 20),
which was adopted by defendant E. Kirk Shelton, see (Doc. # 76),
was DENIED as to defendants Forbes and Shelton.  See Tr.,
1/15/03, at 64, lines 17-22 (Doc. # 82).

It should be noted, however, that in denying the motion, the
court gave instructions to the government as to how to proceed
going forward.  See Tr. at 59, lines 4-12, and 60, lines 1-3.
(Copies of pages 59 and 60 are attached.)

It is so ordered.

Dated this 27th day of January 2003, at Hartford,
Connecticut.

                              _____
                              Alvin W. Thompson
                              United States District Judge

59

1   MR. MURPHY:  I'm here, Your Honor.

2   THE COURT:  And we've had a couple of motions

3   where we've gotten into a discussion of our Local Rules.

4   I'm sure the government has talked with somebody in the

5   District of Connecticut about our Local Rules, but what I

6   think is an appropriate response is to inform the

7   government that I expect the government counsel to review

8   the Local Rules, our Local Rules, with someone in the U.S.

9   Attorney's Office here in the district and to ensure that

10  anyone who's in their office who might be involved in the

11  case is put on notice of the rules that will be governing

12  this case, we don't have any slippage in the future.

13      I think defense counsel are wise to have someone

14  from the district here for proceedings, for reasons that

15  are pretty obvious to you.  And I think it would probably

16  be helpful at least as we're getting going for the

17  government to have someone here too.  I think that might

18  cut down on the number of motions I have to rule on.  At

19  least one argument of them, anyway.

20      MR. SIMON:  I heard -- maybe the government in

21  particular should focus on what the Court told the

22  government about in November about the open file approach

23  to discovery.  Because otherwise we're going to have

24  massive issues in the whole discovery area.  And that may

25  be a particularly salutary suggestion to the government.

1    THE COURT:  If that's been an issue, I will want

2    someone in our district involved in your discussions of the

3    discovery issues.

4    MR. SIMON:  The Court indicated beyond the rule

5    there's a practice of open file.

6    THE COURT:  I did.

7    MR. SIMON:  We don't have an open file.

8    Mr. Corigliano in the first 15 months of cooperation gave

9    84 hours of interviews over the course of 13 days, and we

10    don't have any of that.  We have a summary from the day

11    before he started cooperating.  But 84 hours, that's a lot

12    of material that's going to have to be reviewed.

13    I can't believe there's no Brady material in

14    there.

15    We have, the second cooperator, Ms. Pember, in

16    the first 15 months, according to something we just

17    received, had given ten days of interviews.  We don't have

18    any of that.

19    We don't have an open file.  And that is tied in

20    to the issue of not getting the summaries, Your Honor.

21    It's part of an effort, again, not have the cooperator

22    subjected to depositions, don't provide what they say.

23    Don't provide particulars, keep that as long as possible.

24    That is important in terms of the overall context --

25    THE COURT:  Are we digressing?