# EXHIBIT A

AO 89 (Rev. 11/91) Subpoena in a Criminal Case

# United States District Court

DISTRICT OF _____ Connecticut

United States of America

v.

Walter A. Forbes

## SUBPOENA IN A CRIMINAL CASE

CASE NUMBER: 3:02CR00264 (AHN)

TO: Cendant Corporation
Custodian of Records
9 West 57th Street
New York, NY 10019

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE                                                                                                                      | COURTROOM                      |
|----------------------------------------------------------------------------------------------------------------------------|--------------------------------|
| United States District Court<br>District of Connecticut<br>Brien McMahon Federal Building<br>915 Lafayette Boulevard<br>Bridgeport, Connecticut 06604 | Courtroom R<br><br>DATE AND TIME May 19, 2006<br>9:00 a.m. |

☒ YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):

See Schedule A

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT                | DATE |
|---------------------------------------------------------|------|
| KEVIN F. ROWE                                           |      |
| (By) Deputy Clerk                                       | March 29, 2006 |

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:

Barry S. Simon, Williams & Connolly LLP,
725 Twelfth Street, N.W., Washington, DC 20005
(202) 434-5000, Attorneys for Defendant Walter A. Forbes

# SCHEDULE OF DOCUMENTS
# TO BE PRODUCED BY CENDANT CORPORATION

## DEFINITIONS AND INSTRUCTIONS

a.    The term "document" shall include material existing in both electronic and non-electronic form.  When a document is stored electronically only, the electronic format shall be produced.

b.    The term "Government" shall mean the U.S. Department of Justice, the U.S. Attorney for the District of New Jersey, the U.S. Attorney's Office for the District of New Jersey, the Federal Bureau of Investigation, the U.S. Securities and Exchange Commission, the U.S. Postal Service, and the Internal Revenue Service.

c.    The term "Cendant" shall include Cendant Corporation, as well as any parent companies, subsidiaries, affiliates, divisions, successors, predecessors, officers, directors, employees, attorneys, agents, and other representatives acting on its behalf.

d.    This subpoena does not require the re-production of any documents previously produced to Mr. Forbes.

## DESCRIPTIONS OF DOCUMENTS TO BE PRODUCED

1.    All documents describing or memorializing legal fees or expenses incurred by any of the following witnesses:  Cosmo Corigliano

      a.  Anne Pember
      b.  Casper Sabatino
      c.  Kevin Kearney
      d.  Steven Speaks

2.    All documents relating to any undertaking or obligations agreed to by Mr. Corigliano in relation to the payment of his legal fees by Cendant.

3.    All documents memorializing or describing any refusal to pay legal fees to or on behalf of Mr. Cosmo Corigliano for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

4.    All documents relating to any undertaking or obligations agreed to by Ms. Pember in relation to the payment of her legal fees by Cendant.

5. All documents memorializing or describing any refusal to pay legal fees to or on behalf of Ms. Anne Pember for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

6. All documents relating to any undertaking or obligations agreed to by Mr. Sabatino in relation to the payment of his legal fees by Cendant.

7. All documents memorializing or describing any refusal to pay legal fees to or on behalf of Mr. Casper Sabatino for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

8. All documents relating to any undertaking or obligations agreed to by Mr. Kearney in relation to the payment of his legal fees by Cendant.

9. All documents memorializing or describing any refusal to pay legal fees to or on behalf of Mr. Kevin Kearney for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

10. Documents sufficient to identify any legal fees paid to or on behalf of Mr. Steven Speaks since April 15, 1998.

11. Documents sufficient to identify any legal fees paid to or on behalf of Mr. Steven Speaks for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

12. All documents relating to any undertaking or obligations agreed to by Mr. Speaks in relation to the payment of his legal fees by Cendant.

13. All documents memorializing or describing any refusal to pay legal fees to or on behalf of Mr. Steven Speaks for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

14. Documents sufficient to identify any legal fees paid to or on behalf of Mr. John Rosenwald for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

15. All documents relating to any undertaking or obligations agreed to by Mr. Rosenwald in relation to the payment of his legal fees by Cendant.

16. All documents memorializing or describing any refusal to pay legal fees to or on behalf of Mr. John Rosenwald for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

17. Documents sufficient to identify any legal fees paid to or on behalf of Mr. Michael Monaco for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

18. All documents relating to any undertaking or obligations agreed to by Mr. Monaco in relation to the payment of his legal fees by Cendant.

19. All documents memorializing or describing any refusal to pay legal fees to or on behalf of Mr. Michael Monaco for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

20. Documents sufficient to identify any legal fees paid to or on behalf of Mr. Thomas Albright for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

21. All documents relating to any undertaking or obligations agreed to by Mr. Albright in relation to the payment of his legal fees by Cendant.

22. All documents memorializing or describing any refusal to pay legal fees to or on behalf of Mr. Thomas Albright for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

23. Documents sufficient to identify any legal fees paid to or on behalf of Ms. Janice Davidson for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

24. All documents relating to any undertaking or obligations agreed to by Ms. Davidson in relation to the payment of her legal fees by Cendant.

25. All documents memorializing or describing any refusal to pay legal fees to or on behalf of Ms. Davidson for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

26. Documents sufficient to identify any legal fees paid to or on behalf of Mr. Robert Davidson for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

27. All documents relating to any undertaking or obligations agreed to by Mr. Davidson in relation to the payment of his legal fees by Cendant.

28. All documents memorializing or describing any refusal to pay legal fees to or on behalf of Mr. Davidson for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

29. Documents sufficient to identify any legal fees paid to or on behalf of Mr. Anthony Menchaca for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

30. All documents relating to any undertaking or obligations agreed to by Mr. Menchaca in relation to the payment of his legal fees by Cendant.

31. All documents memorializing or describing any refusal to pay legal fees to or on behalf of Mr. Menchaca for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

32. Documents sufficient to identify any legal fees paid to or on behalf of Ms. Laura Hamilton for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

33. All documents relating to any undertaking or obligations agreed to by Ms. Hamilton in relation to the payment of her legal fees by Cendant.

34. All documents memorializing or describing any refusal to pay legal fees to or on behalf of Ms. Hamilton for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

35. Documents sufficient to identify any legal fees paid to or on behalf of Mr. Chris McLeod for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

36. All documents memorializing or describing any refusal to pay legal fees to or on behalf of Mr. Chris McLeod for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

37. All documents relating to any undertaking or obligations agreed to by Mr. McLeod in relation to the payment of his legal fees by Cendant.

38. Documents sufficient to identify any legal fees paid to or on behalf of Ms. Amy Lipton for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

39. All documents memorializing or describing any refusal to pay legal fees to or on behalf of Ms. Amy Lipton for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton

40. All documents relating to any undertaking or obligations agreed to by Ms. Lipton in relation to the payment of her legal fees by Cendant.

41. Documents sufficient to identify any legal fees paid to or on behalf of Mr. Robert Tucker for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

42. All documents memorializing or describing any refusal to pay legal fees to or on behalf of Mr. Robert Tucker for services rendered in connection with the 2004 trial of Walter A. Forbes and E. Kirk Shelton.

43.  All documents relating to any undertaking or obligations agreed to by Mr. Tucker in relation to the payment of his legal fees by Cendant.

44.  All documents memorializing or describing any benefits provided to Mr. Scott Forbes upon the termination of his employment with Cendant.

45.  All documents memorializing or describing any agreement to indemnify Mr. Scott Forbes for any legal fees incurred in connection with the retrial of Mr. Walter Forbes.

46.  All documents submitted by any of the witnesses identified above, or their counsel, in support of any request that Cendant pay the witness's legal fees.

47.  If any of the documents called for above exist only electronically, an electronic copy of any such document.

48.  All documents memorializing or describing any agreements entered into after April 15, 1998 with any of the following witnesses:

        a.  Cosmo Corigliano
        b.  Anne Pember
        c.  Casper Sabatino
        d.  Kevin Kearney
        e.  Steven Speaks

49.  All documents relating to any meetings between Cendant and the government on February 4, 1999.

50.  All documents relating to any meetings between Cendant and the government on June 17, 2000.

51.  All documents relating to any meetings between Cendant and the government on March 27, 2001

52.  All documents relating to any meetings between Cendant and the government on November 20, 2001.

53.  All documents relating to the preparation of the July 28, 1998 memorandum from Senator Torricelli to United States Attorney Faith Hochberg (hereafter "USA Hochberg").

54.  All documents relating to the decision to request a meeting between Henry Silverman and USA Hochberg.

55.  All documents relating to the decision to prepare the July 28, 1998 memorandum from Senator Torricelli to USA Hochberg.

56. All documents describing or memorializing the delivery of the July 28, 1998 memorandum from Senator Torricelli to USA Hochberg.

57. All documents describing or memorializing any response to the July 28, 1998 memorandum from Senator Torricelli to USA Hochberg.

58. All documents describing or memorializing any oral communications concerning the July 28, 1998 memorandum from Senator Torricelli to USA Hochberg.

59. All documents relating to any meeting between Henry Silverman and either USA Hochberg or the United States Attorney's Office for the District of New Jersey as a result of the Torricelli memorandum.

60. All documents provided by you to the United States Attorney's Office for the District of New Jersey during any meeting between Henry Silverman and the United States Attorneys' Office for the District of New Jersey as a result of the Torricelli memorandum.

61. All documents received from the United States Attorney's Office for the District of New Jersey during any meeting between Henry Silverman and the United States Attorneys' Office for the District of New Jersey as a result of the Torricelli memorandum.

62. All documents relating to any offer of assistance to the government in the investigation or pursuit of any criminal, civil or administrative remedy against any of the following:

     a.   Walter A. Forbes
     b.   E. Kirk Shelton
     c.   Cosmo Corigliano
     d.   Anne Pember
     e.   Casper Sabatino
     f.   Mary Sattler
     g.   Steven Speaks
     h.   Kevin Kearney
     i.   Stuart Bell
     j.   Ernst & Young
     k.   Marc Rabinowitz
     l.   Kenneth Wilchfort
     m.   Simon Wood

63. Originals of the documents listed in the report attached as Exhibit 1, copies of which have been previously produced, but which were illegible.

64. The original of the documents attached hereto (other than Exhibit 1);

65. Any other versions of the documents attached hereto (other than Exhibit 1) if the version:

    a.  contains any original handwriting;

    b.  contains any original tick-marks or similar notations;

    c.  contains original hi-lighting (for electronically hi-lighted documents, either an electronic version should be produced, or a legible printout made which reflects both the original text and the hi-lighting).

66. All e-mails sent or received by Henry Silverman, Michael Monaco, James Buckman, or Scott Forbes from March 6, 1998 through and including March 10, 1998 relating to Cendant.

67. Any e-mails regarding Cendant's actual or projected financial performance that were sent or received by Henry Silverman, Michael Monaco, James Buckman, or Scott Forbes from March 6, 1998 through and including March 10, 1998.

68. All e-mails sent by Scott Forbes to, or received by Scott Forbes from, any of the following people during the period between May 1, 1997 and April 15, 1998 concerning Cendant or CUC: (a) Cosmo Corigliano; (b) Anne Pember; (c) Casper Sabatino; (d) Steve Speaks; (e) Mary Sattler or (f) Kevin Kearney.

69. All e-mails sent by Michael Monaco to, or received by Michael Monaco from, any of the following people during the period between May 1, 1997 and April 15, 1998 concerning Cendant or CUC: (a) Cosmo Corigliano; (b) Anne Pember; (c) Casper Sabatino; (d) Steve Speaks; (e) Mary Sattler or (f) Kevin Kearney.

**A-1**

# Illegible Documents

| | |
|---|---|
| CEN  1461 - 1463 | CEN  9450 |
| CEN  1469 | CEN  9455 – 9459 |
| CEN  1474 | CEN  9531 |
| CEN  1480 – 1482 | CEN  9535 |
| CEN  1487 – 1489 | CEN  9538 |
| CEN  1494 – 1503 | CEN  9540 |
| CEN  1529 – 1543 | CEN  9555 |
| CEN  1559 | CEN  9619 |
| CEN  1560 | CEN  9648 |
| CEN  1561 | CEN  9677 |
| CEN  1569 – 1573 | CEN  9682 |
| CEN  1595 | CEN  9692 – 9693 |
| CEN  1831 – 1833 | CEN  9771 |
| CEN  1955 | CEN  9809 – 9810 |
| CEN  1976 | CEN  9842 |
| CEN  1991 | CEN  10094 |
| CEN  2067 – 2092 | CEN  12024 |
| CEN  2099 – 2101 | CEN  12123 |
| CEN  5030 – 5031 | CEN  12142 |
| CEN  5393 | CEN  12146 |
| CEN  5577 | CEN  12189 |
| CEN  5579 | CEN  12191 |
| CEN  5621 | CEN  12565 |
| CEN  5723 | CEN  12672 |
| CEN  6216 | CEN  12859 |
| CEN  6345 | CEN  13148 |
| CEN  6423 | CEN  13260 – 13263 |
| CEN  6429 | CEN  17709 |
| CEN  6437 | CEN  17737 |
| CEN  6815 | CEN  17761 |
| CEN  6834 | CEN  17863 |
| CEN  6887 | CEN  17926 – 17928 |
| CEN  7265 | CEN  17956 |
| CEN  7311 – 7327 | CEN  18087 |
| CEN  7574 | CEN  18091 |
| CEN  7789 | CEN  18217 |
| CEN  7917 – 7919 | CEN  18284 |
| CEN  7923 – 7955 | CEN  18312 |
| CEN  7968 | CEN  18449 |
| CEN  8036 | CEN  19119 |
| CEN  8070 | CEN  19133 |
| CEN  8146 | CEN  19193 |
| CEN  8320 | CEN  19208 |

Exhibit 2

| | | | | |
|---|---|---|---|---|
| CEN | 19214 | | CEN | 46347 – 46348 |
| CEN | 19489 – 19509 | | CEN | 46350 – 46359 |
| CEN | 24061 | | CEN | 46369 – 46391 |
| CEN | 24248 | | CEN | 46403 – 46424 |
| CEN | 24606 – 24625 | | CEN | 46434 – 46491 |
| CEN | 24765 | | CEN | 46500 – 46514 |
| CEN | 24913 | | CEN | 46517 – 46521 |
| CEN | 25109 | | CEN | 46534 – 46550 |
| CEN | 25526 | | CEN | 46659 – 46660 |
| CEN | 25722 | | CEN | 46676 – 46704 |
| CEN | 25724 | | CEN | 47706 |
| CEN | 25727 | | CEN | 47818 |
| CEN | 25770 – 25775 | | CEN | 47863 |
| CEN | 25779 | | CEN | 47945 – 47946 |
| CEN | 25781 | | CEN | 48029 – 48033 |
| CEN | 25943 – 25951 | | CEN | 48170 – 48172 |
| CEN | 25958 – 25960 | | CEN | 48200 – 48204 |
| CEN | 26202 | | CEN | 48262 |
| CEN | 26679 – 26681 | | CEN | 48450 – 48466 |
| CEN | 26789 – 26790 | | CEN | 49828 |
| CEN | 26874 | | CEN | 49830 – 49831 |
| CEN | 27282 – 27285 | | CEN | 50145 |
| CEN | 27298 | | CEN | 50489 – 50494 |
| CEN | 27400 | | CEN | 51617 – 51623 |
| CEN | 28540 | | CEN | 51872 |
| CEN | 28638 – 28709 | | CEN | 52182 |
| CEN | 29406 – 29416 | | CEN | 52197 |
| CEN | 29742 – 29744 | | CEN | 52707 – 52708 |
| CEN | 29771 – 29780 | | CEN | 53030 |
| CEN | 29803 – 29804 | | CEN | 53109 |
| CEN | 29829 – 29844 | | CEN | 53226 |
| CEN | 29846 – 30017 | | CEN | 53228 |
| CEN | 30211 | | CEN | 53231 |
| CEN | 30223 | | CEN | 53285 – 53286 |
| CEN | 30252 | | CEN | 53443 – 53450 |
| CEN | 30273 | | CEN | 53458 – 53460 |
| CEN | 30340 – 30343 | | CEN | 53611 |
| CEN | 30548 – 30823 | | CEN | 53702 |
| CEN | 30899 | | CEN | 53756 |
| CEN | 30930 | | CEN | 53883 |
| CEN | 31263 | | CEN | 53885 |
| CEN | 46175 – 46178 | | CEN | 53889 |
| CEN | 46299 – 46301 | | CEN | 54171 |
| CEN | 46319 | | CEN | 54179 |
| CEN | 46336 – 46337 | | CEN | 54180 |

Exhibit 2

| | |
|---|---|
| CEN 54240 | CEN 77223 – 77226 |
| CEN 54374 | CEN 77373 – 77377 |
| CEN 54623 – 54625 | CEN 78284 – 78293 |
| CEN 54763 | CEN 78340 |
| CEN 54803 – 54804 | CEN 78344 – 78345 |
| CEN 54809 | CEN 78918 – 78950 |
| CEN 54811 | CEN 78990 – 78998 |
| CEN 55762 – 55763 | CEN 79611 – 79668 |
| CEN 55895 | CEN 79799 – 79803 |
| CEN 55945 | CEN 80715 |
| CEN 56041 | CEN 80862 – 80866 |
| CEN 56048 | CEN 81243 – 81245 |
| CEN 56146 | CEN 81454 – 81455 |
| CEN 56381 – 56383 | CEN 81460 |
| CEN 56402 | CEN 81677 – 81683 |
| CEN 56404 – 56405 | CEN 82251 – 82256 |
| CEN 56554 | CEN 83040 – 83047 |
| CEN 56593 – 56595 | CEN 83238 |
| CEN 56607 – 56608 | CEN 83259 – 83264 |
| CEN 56624 – 56631 | CEN 83671 – 83678 |
| CEN 56633 | CEN 83988 – 83998 |
| CEN 56635 | CEN 84023 – 84025 |
| CEN 57312 – 57314 | CEN 84272 |
| CEN 57713 – 57714 | CEN 86594 – 86595 |
| CEN 57740 | CEN 86695 – 86701 |
| CEN 57756 | CEN 86806 |
| CEN 57759 | CEN 87051 |
| CEN 57761 | CEN 87206 |
| CEN 57827 – 57836 | CEN 87222 |
| CEN 57847 – 57850 | CEN 87255 |
| CEN 57912 – 57926 | CEN 87706 |
| CEN 57936 – 57937 | CEN 88123 |
| CEN 58358 – 58370 | CEN 88136 – 88137 |
| CEN 58711 – 58712 | CEN 88486 – 88493 |
| CEN 58722 – 58725 | CEN 88521 |
| CEN 58768 | CEN 88593 |
| CEN 58769 | CEN 88635 |
| CEN 58770 – 58777 | CEN 88716 |
| CEN 58784 – 58785 | CEN 89009 – 88037 |
| CEN 72543 – 72546 | CEN 89044 – 88047 |
| CEN 76366 – 76395 | CEN 89475 |
| CEN 76410 – 76421 | CEN 89511 |
| CEN 76491 – 76495 | CEN 89915 |
| CEN 77134 – 77147 | CEN 89920 |
| CEN 77189 – 77217 | CEN 89937 – 89938 |

| | | |
|---|---|---|
| CEN | 89958 | |
| CEN | 90162 | |
| CEN | 90227 - 90230 | |
| CEN | 90231 | |
| CEN | 90234 – 90237 | |
| CEN | 90238 | |
| CEN | 90239 | |
| CEN | 90243 – 90252 | |
| CEN | 90283 – 90287 | |
| CEN | 90288 | |
| CEN | 90290 | |
| CEN | 90327 – 90328 | |
| CEN | 90371 – 90379 | |
| CEN | 90461 – 90491 | |
| CEN | 90477 – 90483 | |
| CEN | 90490 – 90492 | |
| CEN | 90512 | |
| CEN | 90516 – 90517 | |
| CEN | 90519 | |
| CEN | 90640 – 90642 | |
| CEN | 90826 | |
| CEN | 90829 | |
| CEN | 90883 – 90885 | |
| CEN | 91256 – 91257 | |
| CEN | 91262 | |
| CEN | 91266 | |
| CEN | 91343 – 91350 | |
| CEN | 91376 | |
| CEN | 91378 – 91379 | |
| CEN | 91385 | |
| CEN | 91752 – 91757 | |
| CEN | 92502 – 92517 | |
| CEN | 92560 | |
| CEN | 92561 – 92572 | |
| CEN | 92922 – 92927 | |
| CEN | 92956 | |
| CEN | 93939 – 93950 | |
| CEN | 93952 | |
| CEN | 94211 | |
| CEN | 94449 – 94456 | |
| CEN | 95023 – 95031 | |
| CEN | 95300 | |
| CEN | 97458 – 97459 | |
| CEN | 97484 | |
| CEN | 97513 | |

| | |
|---|---|
| CEN | 97682 |
| CEN | 97684 |
| CEN | 97686 |
| CEN | 97690 |
| CEN | 97692 |
| CEN | 97694 |
| CEN | 97717 |
| CEN | 97722 – 97725 |
| CEN | 98056 |
| CEN | 98070 – 98077 |
| CEN | 98079 |
| CEN | 98081 – 98082 |
| CEN | 98095 |
| CEN | 98139 |
| CEN | 98325 – 98327 |
| CEN | 98497 – 98498 |
| CEN | 98651 – 98652 |
| CEN | 98664 |
| CEN | 98666 |
| CEN | 98668 |
| CEN | 98670 |
| CEN | 98852 – 98854 |
| CEN | 98958 – 98960 |
| CEN | 98982 – 99005 |
| CEN | 99174 |
| CEN | 99176 |
| CEN | 99179 |
| CEN | 99181 |
| CEN | 99183 |
| CEN | 99186 |
| CEN | 99188 |
| CEN | 99190 |
| CEN | 99193 |
| CEN | 99195 |
| CEN | 99197 |
| CEN | 99200 |
| CEN | 100687 – 100688 |
| CEN | 100690 – 100682 |
| CEN | 101302 – 101304 |
| CEN | 101312 – 101317 |
| CEN | 101333 – 101337 |
| CEN | 101350 – 101352 |
| CEN | 101354 |
| CEN | 101360 |
| CEN | 101362 |

| | |
|---|---|
| CEN  101365 | CEN  103410 |
| CEN  101369 | CEN  103477 |
| CEN  101371 | CEN  103504 |
| CEN  101378 | CEN  103512 – 103513 |
| CEN  101383 – 101389 | CEN  103515 |
| CEN  101392 | CEN  103578 |
| CEN  101410 | CEN  103585 |
| CEN  101412 | CEN  103587 |
| CEN  101414 – 101416 | CEN  103592 |
| CEN  101520 | CEN  103631 |
| CEN  101584 – 101585 | CEN  103638 |
| CEN  101621 – 101622 | CEN  103663 |
| CEN  101644 | CEN  103665 |
| CEN  101647 | CEN  103667 |
| CEN  101723 – 101732 | CEN  103671 |
| CEN  101741 | CEN  103679 |
| CEN  101767 | CEN  103719 |
| CEN  101771 | CEN  103722 |
| CEN  101775 | CEN  103777 |
| CEN  101938 – 101939 | CEN  103791 |
| CEN  102015 | CEN  103798 |
| CEN  102023 | CEN  103806 |
| CEN  102037 | CEN  103879 |
| CEN  102041 | CEN  103882 |
| CEN  102049 | CEN  103890 – 103891 |
| CEN  102062 | CEN  103894 |
| CEN  102083 | CEN  103896 |
| CEN  102086 – 102087 | CEN  103916 |
| CEN  102093 | CEN  103945 |
| CEN  102107 | CEN  103950 – 103952 |
| CEN  102124 | CEN  103971 |
| CEN  102349 | CEN  103980 |
| CEN  102633 | CEN  103987 |
| CEN  103094 | CEN  104036 |
| CEN  103186 | CEN  104077 |
| CEN  103240 | CEN  104084 |
| CEN  103305 | CEN  104095 |
| CEN  103309 | CEN  104109 |
| CEN  103315 | CEN  104146 – 104147 |
| CEN  103323 | CEN  104148 – 104150 |
| CEN  103326 – 103327 | CEN  104163 |
| CEN  103330 | CEN  104220 |
| CEN  103335 | CEN  104223 |
| CEN  103393 | CEN  104234 |
| CEN  103404 | CEN  104423 |

| | | | |
|---|---|---|---|
| CEN | 104720 | CEN | 118908 – 118915 |
| CEN | 104722 – 104723 | CEN | 118924 – 118926 |
| CEN | 104725 | CEN | 118927 – 118967 |
| CEN | 104760 | CEN | 137819 – 137824 |
| CEN | 104779 | CEN | 146969 – 146971 |
| CEN | 104781 – 104782 | CEN | 149433 – 149434 |
| CEN | 104787 | CEN | 149442 |
| CEN | 104798 | CEN | 149964 – 149975 |
| CEN | 104800 | CEN | 149987 – 149991 |
| CEN | 104811 | CEN | 152024 – 152025 |
| CEN | 104813 | CEN | 167464 – 167467 |
| CEN | 104815 | CEN | 401370 – 401375 |
| CEN | 104817 | CEN | 401398 – 401400 |
| CEN | 104819 | CEN | 469629 – 470843 |
| CEN | 104821 | CEN | 485156 – 485454 |
| CEN | 104823 | CEN | 514486 |
| CEN | 104825 | CEN | 536828 – 536849 |
| CEN | 104831 | CEN | 570835 – 570838 |
| CEN | 104837 | CEN | 597092 |
| CEN | 104839 | CEN | 602928 |
| CEN | 104841 | CEN | 630547 - 631384 |
| CEN | 104843 | CEN | 687166 |
| CEN | 104845 | CEN | 687752 – 687753 |
| CEN | 104851 | CEN | 700628 |
| CEN | 104853 | CEN | 760629 – 760637 |
| CEN | 104855 | CEN | 760639 – 760648 |
| CEN | 104862 | CEN | 773382 – 773393 |
| CEN | 104888 – 104889 | CEN | 1137781 |
| CEN | 104896 | CEN | 1137798 – 1137799 |
| CEN | 104918 | CEN | 1138198 |
| CEN | 104928 | CEN | 1138638 |
| CEN | 104932 | CEN | 1138712 |
| CEN | 105355 – 105362 | CEN | 1138888 – 1138889 |
| CEN | 105393 | CEN | 1138955 – 1138958 |
| CEN | 105479 | CEN | 1139098 |
| CEN | 106995 | CEN | 1139128 |
| CEN | 109098 – 109113 | CEN | 1139132 |
| CEN | 109122 – 109127 | CEN | 1139182 |
| CEN | 109132 – 109135 | CEN | 1139564 |
| CEN | 109167 – 109174 | CEN | 1139565 |
| CEN | 111124 | CEN | 1139576 – 1139577 |
| CEN | 115151 – 115152 | CEN | 1139731 – 1139732 |
| CEN | 115180 | CEN | 1140592 |
| CEN | 115471 – 115472 | CEN | 1140652 – 1140656 |
| CEN | 115907 | CEN | 1209205 |

**Exhibit 7**

CEN    1209272
CEN    1219420
CEN    1219443
CEN    1221281
CEN    1221285 –
          1221286


SKD    476 – 477
SKD    692 – 695
SKD    708 – 723
SKD    729 – 735
SKD    748 – 749
SKD    762 – 807
SKD    816 – 823
SKD    847 – 852
SKD    879 – 882
SKD    2288 – 2287

# A-2

CONFIDENTIAL MEMORANDUM

TO:      Anne Pember

FROM:    Walter Forbes

DATE:    March 27, 1998 - Revised April 2, 1998

---

The following represents the terms of the Severance Package being offered to you (pursuant to the terms of your Employment Agreement ("Agreement") dated August 1, 1996 and as amended November 17, 1997), in addition to other information, in connection with the termination of your employment from the Cendant Corporation, ("Cendant"), effective your last day worked Tuesday, June 30, 1998.

<u>Severance Package</u>

- Cendant will pay you the equivalent of two years base salary ($165,000 per year) and two years annual bonus ($75,000 per year) as a lump sum payment of $358,468 on July 1, 1998 which is net of the salary you elected to convert to Cendant stock options under this year's bonus/salary replacement program. These stock options shall remain exercisable by you until the applicable expiration dates set forth in the stock option agreements pursuant to which such stock options were granted.

- The medical/prescription drug, dental and vision coverages, as then may be provided to other Cendant employees, will continue through June 30, 2001 at no cost to you. You have the option to continue receiving these benefits through June 30, 2005 provided you are not eligible to receive these benefits through any other employment and provided that you reimburse Cendant for the employee cost of providing these benefits to you (and where applicable, in accordance with any COBRA regulations)

- You will receive a one-time stay bonus equal to $125,000 which you have opted to convert into Cendant stock options. These options shall remain exercisable until the applicable expiration dates set forth in the stock option agreement pursuant to which such stock options were granted.

- All vested stock options which you currently hold shall remain exercisable until the applicable expiration dates set forth in the stock option agreements pursuant to which such stock options were granted. You shall continue to vest an additional 30,000 options granted to you on December 22, 1997 and an additional 30,000 options granted to you on January 27, 1998 according to the following vesting schedule: 20,000 options shall vest each year on January 1, 1999, January 1, 2000 and January 1, 2001. These options shall also remain exercisable by you until the applicable expiration dates set forth in the stock option agreements pursuant to which such stock options were granted.

This document is submitted as CONFIDENTIAL

Exemption from disclosure to non-governmental parties of this document and any copies of it is claimed under the Freedom of Information Act.

CD - 0005616

- You shall remain available to assist in the performance of your current duties and responsibilities and any other inquiries as may deemed necessary during normal business hours for a 90 day transition period (April 1 - June 30, 1998), however, your presence in the office will not be required on a daily basis.

All other employment related benefits will cease on June 30, 1998, and no other amounts will be owed to you by Cendant.

In consideration for the foregoing Severance Package, you agree to release, discharge and hold harmless Cendant and its subsidiaries, divisions, corporate affiliates and their respective directors, officers, employees and agents from any and all claims, demands or causes of action of any kind or nature, including but not limited to: any claims for compensation, wages, salary, bonuses or benefits of any kind or nature; any claims of employment discrimination, including but not limited to any claims brought under Title VII of the Civil Rights Act, the Americans with Disabilities Act, the Connecticut Human Rights and Opportunities Act, any claims pursuant to any other federal, state or local statute, regulation, or ordinance; any claims based on contract, express or implied; or any claims based on tort.

In addition, and in further consideration for this Severance Package, you agree that you will not discuss or otherwise disclose in any manner the terms of this Severance Package and that you will remain liable for all continuing obligations under Sections IX through XV of the Agreement.

In the event that your are reemployed by Cendant or any of its divisions, subsidiaries or affiliates prior to July 1, 2000, you agree to repay Cendant promptly upon such reemployment a pro rata portion of the cash severance amount paid to you by Cendant, i.e. $357,699 with the pro rata portion being repaid equal to the value of such severance in relationship to the months left in the severance period, i.e. July 1, 1998 - July 1, 2000.

Anne, please carefully review and consider this offer. You have the right to consult with an attorney before deciding whether to accept it, and you are encouraged to do so.

If you accept this Severance Package and agree to abide by the terms and conditions herein, please sign the Acceptance and Agreement attached, have it notarized and return it to me.

This document is submitted as CONFIDENTIAL

Exemption from disclosure to non-governmental parties of this document and any copies of it is claimed under the Freedom of Information Act.

CD - 0005617

**Acceptance and Agreement**:

I, Anne Pember, have read and understand, and agree to accept the Severance Package under the terms and conditions set forth herein.

_____
Anne Pember

State of     Connecticut
_____

County of     Fairfield
_____

On this _2nd_ day of _April_____, 1998, before me came Anne Pember, whose name is subscribed to the foregoing Acceptance and Agreement and acknowledged to me that she read and understood the document, and that she executed the same of he own free will. In **WITNESS WHEREOF**, I have hereunto set my hand and affixed my official seal the day and year first above written.

_____
Notary Public

**CASPER SABATINO**
*NOTARY PUBLIC*
**MY COMMISSION EXPIRES NOV. 30, 1999**

This document is submitted as CONFIDENTIAL

Exemption from disclosure to non-governmental parties of this document and any copies of it is claimed under the Freedom of Information Act.

CD - 0005618

**A-3**

707 Summer Street
P.O. Box 10049
Stamford, CT 06904-2049
203-324-9261

 CUC INTERNATIONAL

November 17, 1997

Ms. Anne Pember
CUC International Inc.
707 Summer Street
Stamford, CT 06902

Dear Anne:

The following sets forth our recent agreement:

1.     All unvested stock options that you hold upon the merger (the "Merger") of HFS
       Incorporated into CUC International Inc. ("CUC") will vest immediately upon the Merger
       and shall remain exercisable until the applicable expiration dates set forth in the stock
       option agreements pursuant to which such stock options were granted.

2.     If you remain employed by CUC on May 1, 1998, you will receive a one-time, stay
       bonus, equal to $125,000, payable in cash, which shall be payable on or before May 15,
       1998.

3.     Your annual review date shall be January 1 of each year.  Your annual base salary
       commencing January 1, 1998 will be $165,000.  Your target bonus will be 40% of your
       base salary.

4.     Upon the Merger, you will be granted options to purchase 40,000 shares of CUC
       Common Stock and you will be eligible to receive future option awards in the discretion
       of CUC.

5.     Upon the Merger, the Agreement between you and CUC made as of August 1, 1996
       (the "Agreement") will be amended to read as set forth in Exhibit A hereto.

6.     You hereby waive any and all rights you may have under Section XI of the Agreement,
       (pertaining to Change in Control), arising out of or in connection with the Merger.

Sincerely,

CUC International Inc.

By: _____          By: _____
    Walter A. Forbes                        E. Kirk Shelton
    Chairman and Chief Executive Officer     President and Chief Operating Officer

CEN 0539080 KSCA1
CONFIDENTIAL

EXHIBIT A

**AGREEMENT**

This Agreement made effective as of August 1, 1996, by and between CUC International Inc. (the "Company"), a Delaware corporation, and Anne Pember (the "Executive"), as amended on November 17, 1997.

The Executive is willing to serve in the employ of the Company on a full-time basis for said period and upon such other terms and conditions as provided in this Agreement.

In consideration of the mutual covenants contained in this Agreement, the parties hereby agree as follows:

**SECTION I**

**EMPLOYMENT**

The Company agrees to employ the Executive and the Executive agrees to be employed by the Company for the Period of Employment as provided in Paragraph III.A. below and upon the terms and conditions provided in the Agreement.

**SECTION II**

**POSITION AND RESPONSIBILITIES**

During the Period of Employment, the Executive agrees to serve as one of the Company's Senior Vice Presidents, and to be responsible for the typical management responsibilities expected of an officer holding such positions.

(c:\ab\emplyagr\Anne-97.doc)                    1

CEN 0539081 KSCA1
CONFIDENTIAL

## SECTION III

## TERMS AND DUTIES

A.     **Period of Employment**

The period of the Executive's employment under this Agreement will commence as of August 1, 1996 and shall continue for a period of sixty (60) full calendar months through July 31, 2001.

B.     **Duties**

During the Period of Employment and except for illness, incapacity or any reasonable vacation periods in any calendar year, the Executive shall devote all of her business time, attention and skill exclusively to the business and affairs of the Company and its subsidiaries.  The Executive will not engage in any other business activity and will perform faithfully the duties which may be assigned to her from time to time by the Company.  Nothing in this Agreement shall preclude the Executive from devoting time during reasonable periods required for:

i.     Serving, with prior approval of the Chief Executive Officer and the Board of Directors of the Company, as a director or member of a committee or organization involving no actual or potential conflict of interest with the Company.

ii.     Delivering lectures and fulfilling speaking engagements.

iii.     Engaging in charitable and community activities.

iv.     Investing her personal assets in business in such form or manner that will not violate this Agreement or require services on the part of the Executive in the operation or affairs of the companies in which those investments are made.  These activities will be allowed as long as they do not materially affect or interfere with the performance of the Executive's duties and obligations to the Company.

## SECTION IV

(c:\ab\emplyagr\Anne-97.doc)

2

CEN 0539082 KSCA1
CONFIDENTIAL

A.    Compensation

For all services rendered by the Executive in any capacity during the Period of Employment, the Executive shall be compensated as follows:

i.    Base Salary

The Company shall pay the Executive a fixed Base Salary at the rate of not less than her current salary prior to January 1, 1998 and not less than $165,000 per year commencing January 1, 1998, subject to annual increases as the Company deems appropriate in accordance with the Company's customary procedures regarding the salaries of senior officers. Base Salary shall be payable according to the customary payroll practices of the Company but in no event less frequently than once each month.

B.    Annual Incentive Awards

The Company may pay the Executive annual incentive compensation awards, if any, under an annual incentive program.

C.    Additional Benefits

In addition, the Executive will be entitled to participate in all compensation or employee benefit plans or programs and receive all benefits and perquisites which any salaried employees are eligible under any plan or program now or established later by the Company for salaried employees. The Executive will participate to the extent permissible under the terms and provisions of such plans or programs in accordance with program provisions. These may include group hospitalization, health, dental care, life or other insurance, tax qualified pension, savings, thrift and profit sharing plans, termination pay programs, sick leave plans, travel or accident insurance, disability insurance and contingent compensation plans including capital accumulation programs, stock purchase programs and stock option plans. Nothing in this Agreement will preclude the Company from amending or terminating any of the plans or programs applicable to salaried or senior executives as long as such amendment or termination is applicable to all salaried

(c:\ab\emplyagr\Anne-97.doc)                    3

CEN 0539083 KSCA1
CONFIDENTIAL

employees or senior executives. The Company will furnish to the Executive long-term disability insurance in an amount no less than 60% of Base Salary.

## SECTION V
## BUSINESS EXPENSES

The Company will reimburse the Executive for all reasonable travel and other expenses incurred by the Executive in connection with the performance of her duties and obligations under this Agreement.

## SECTION VI
## DISABILITY

A.     In the event of disability of the Executive during the Period of Employment, the Company will continue to pay the Executive according to the compensation provisions of this Agreement during the period of her disability. However, in the event the Executive is disabled for a continuous period of six (6) months or more, the Company may terminate the employment of the Executive and make payments to the Executive under the terms of the long-term disability provisions of this Agreement. In this case, normal compensation will cease except for earned but unpaid Base Salary and Incentive Compensation Awards which would be payable on a pro-rated basis for the year in which the disability occurred. The Company will also continue the benefits and perquisites described in this Agreement for a period of thirty-six (36) months subsequent to any such termination. In the event of such termination, all unvested stock options held by Executive shall be deemed fully vested on the date of such termination.

B.     During the period the Executive is receiving payments of either regular compensation or disability insurance described in this Agreement and as long as he is physically and mentally able to do so, the Executive will furnish information and

(c:\ab\emplyagr\Anne-97.doc)                    4

CEN 0539084 KSCA1
CONFIDENTIAL

assistance to the Company and from time to time will make herself available to the Company to undertake assignments consistent with her prior position with the Company and her physical and mental health.  If the Company fails to make a payment or provide a benefit required as part of the Agreement, the Executive's obligation to furnish information and assistance will end.

      C.    The term "disability" will have the same meaning as under any disability insurance provided pursuant to this Agreement or otherwise.

**SECTION VII**

**DEATH**

      In the event of the death of the Executive during the Period of Employment, the Period of Employment shall end and the Company's obligation to make payments under this Agreement shall cease as of the date of death, except for earned but unpaid Base Salary and any earned but unpaid incentive compensation awards, which will be paid to the Executive's surviving spouse, estate or personal representative, as applicable, in a lump sum within sixty (60) days after the date of the Executive's death.  The Executive's designated beneficiary will be entitled to receive the proceeds of any life or other insurance or other death benefit programs provided in this Agreement.  The Company will also continue the benefits and perquisites described in this Agreement for a period of thirty-six (36) months commencing on the Executive's death.  Any stock options held by the Executive will vest and become immediately exercisable upon her death, without regard to the provisions of the agreement under which such options were granted.

(c:\ab\emplyagr\Anne-97.doc)

5

CEN 0539085 KSCA1
CONFIDENTIAL

## SECTION VIII
## EFFECT OF TERMINATION OF EMPLOYMENT

A.      If the Executive's employment terminates due to either a Without Cause Termination, as defined later in this Agreement, at any time prior to July 31, 2001, or because the Executive resigns for any reason upon at least thirty (30) days notice to the Company prior to December 31, 1999, the Company will continue to pay the Executive her Base Salary as in effect at the time of the termination for a period of two (2) years following the date of such Without Cause Termination or resignation.  The benefits and perquisites described in this Agreement will in each such case be continued for thirty-six (36) months (at no cost) to the Executive; and, at the Executive's option, continued thereafter for an additional twenty-four (24) month period, provided that the Executive reimburses the Company for the employee portion of the cost to the Company of providing such benefits or perquisites (as determined in accordance with any applicable COBRA regulations).  In the event of any such Without Cause Termination or resignation, all unvested stock options held by Executive which would have vested during the eighteen (18) months following such termination shall be deemed vested on the date of such termination.

B.      If the Executive's employment terminates due to a Termination for a Cause, earned but unpaid Base Salary will be paid on a pro-rated basis for the year in which the termination occurs.  Earned but unpaid incentive awards for any prior years shall be payable in full, but no other payments will be made or benefits provided by the Company.

C.      Upon termination of the Executive's employment other than for reasons due to death, disability, or pursuant to Paragraph A of this Section, the Period of Employment and the Company's obligation to make payments under this Agreement will cease as of the date of the termination except as expressly defined in this Agreement.

(c:\ab\emplyagr\Anne-97.doc)                    6

CEN 0539086 KSCA1
CONFIDENTIAL

D.    For this Agreement, the following terms have the following meanings:

i.    "Termination for Cause" means termination of the Executive's employment by the Company by written notice to the Executive specifying the event relied upon for such termination, due to the Executive's serious, willful misconduct with respect to her duties under this Agreement including but not limited to conviction for a felony or perpetration of a common law fraud which has resulted or is likely to result in material economic damage to the Company.

ii.    "Without Cause Termination" means termination of the Executive's employment by the Company other than due to death, disability or expiration of the Period of Employment and other than Termination for Cause.

## SECTION IX
## OTHER DUTIES OF THE EXECUTIVE
## DURING AND AFTER THE PERIOD OF EMPLOYMENT

A.    The Executive will with reasonable notice during or after the Period of Employment furnish information as may be in her possession and fully cooperate with the Company and its affiliates as may be requested in connection with any claims or legal action in which the Company or any of its affiliates is or may become a party.

B.    The Executive recognizes and acknowledges that all information pertaining to this Agreement or to the affairs; business; results of operations; accounting methods, practices and procedures;  members; acquisition candidates; financial condition; clients; customers or other relationships of the Company or any of its affiliates ("Information") is confidential and is a unique and valuable asset of the Company or any of its affiliates. Access to and knowledge of certain of the Information is essential to the performance of the Executive's duties under this Agreement.  The Executive will not during the Period of Employment or thereafter, except to the extent reasonably necessary in performance of her duties under this Agreement, give to any person, firm, association, corporation, or

(c:\ab\emplyagr\Anne-97.doc)                7

CEN 0539087 KSCA1
CONFIDENTIAL

governmental agency any Information, except as may be required by law. The Executive will not make use of the Information for her own purposes or for the benefit of any person or organization other than the Company or any of its affiliates. The Executive will also use her best efforts to prevent the disclosure of this Information by others. All records, memoranda, etc. relating to the business of the Company or its affiliates whether made by the Executive or otherwise coming into her possession are confidential and will remain the property of the Company or its affiliates.

      C.    i.    During the Period of Employment and for two (2) years thereafter (the "Restricted Period"), irrespective of the cause, manner or time of any termination, the Executive will not use her status with the Company or any of its affiliates to obtain loans, goods or services from another organization on terms that would not be available to her in the absence of her relationship to the Company or any of its affiliates.

      ii.    During the Restricted Period, the Executive will not make any statements or perform any acts intended to or which may have the effect of advancing the interest of any existing or prospective competitors of the Company or any of its affiliates or in any way injuring the interests of the Company or any of its affiliates. During the Restricted Period, the Executive, without prior express written approval by the Board of Directors of the Company, will not engage in, or directly or indirectly (whether for compensation or otherwise) own or hold proprietary interest in, manage, operate, or control, or join or participate in the ownership, management, operation or control of, or furnish any capital to or be connected in any manner with, any party which competes in any way or manner with the business of the Company or any of its affiliates, as such business or businesses may be conducted from time to time, either as a general or limited partner, proprietor, common or preferred shareholder, officer, director, agent, employee, consultant, trustee, affiliate, or otherwise. The Executive acknowledges that the Company's and its affiliates' businesses are conducted nationally and internationally and

(c:\ab\emplyagr\Anne-97.doc)          8

CEN 0539088 KSCA1
CONFIDENTIAL

agrees that the provisions in the foregoing sentence shall operate throughout the United States and the World.

iii.    During the Restricted Period, the Executive, without express prior written approval from the Board of Directors, will not solicit any members or the then current clients of the Company or any of its affiliates for any existing business of the Company or any of its affiliates or discuss with any employee of the Company or any of its affiliates information or operation of any business intended to compete with the Company or any of its affiliates.

iv.    During the Restricted Period, the Executive will not meddle with the employees or affairs of the Company or any of its affiliates or solicit or induce any person who is an employee of the Company or any of its affiliates to terminate any relationship such person may have with the Company or any of its affiliates, nor shall the Executive during such period directly or indirectly engage, employ or compensate, or cause or permit any person with which the Executive may be affiliated, to engage, employ or compensate, any employee of the Company or any of its affiliates.  The Executive hereby represents and warrants that the Executive has not entered into any agreement, understanding or arrangement with any employee of the Company or any of its affiliates pertaining to any business in which the Executive has participated or plans to participate, or to the employment, engagement or compensation of any such employee.

v.    For the purposes of this Agreement, proprietary interest means legal or equitable ownership, whether through stock holding or otherwise, of an equity interest in a business, firm or entity or ownership of more than 5% of any class of equity interest in a publicly-held company and the term "affiliate" shall include without limitation all subsidiaries and licensees of the Company.

(c:\ab\emplyagr\Anne-97.doc)                9

CEN 0539089 KSCA1
CONFIDENTIAL

vi.    The Company's obligation to make any payments under the terms of this Agreement will cease upon any violation of the preceding paragraphs.

D.    The Executive hereby acknowledges that damages at law may be an insufficient remedy to the Company if the Executive violates the terms of this Agreement and that the Company shall be entitled, upon making the requisite showing, to preliminary and/or permanent injunctive relief in any court of competent jurisdiction to restrain the breach of or otherwise to specifically enforce any of the covenants contained in this Agreement without the necessity of showing any actual damage or that monetary damages would not provide an adequate remedy.  Such right to an injunction shall be in addition to, and not in limitation of, any other rights or remedies the Company may have. Without limiting the generality of the foregoing, neither party shall oppose any motion the other party may make for any expedited discovery or hearing in connection with any alleged breach of this Section IX.

E.    The period of time during which the provisions of this Section IX shall be in effect shall be extended by the length of time during which the Executive is in breach of the terms hereof as determined by any court of competent jurisdiction on the Company's application for injunctive relief.

F.    The Executive agrees that the restrictions contained in this Section IX are an essential element of the compensation the Executive is granted hereunder and but for the Executive's agreement to comply with such restrictions, the Company would not have entered into this Agreement.

## SECTION X
## INDEMNIFICATION, LITIGATION

(c:\ab\emplyagr\Anne-97.doc)                          10

CEN 0539090 KSCA1
CONFIDENTIAL

A.    The Company will indemnify the Executive to the fullest extent permitted by the laws of the state of incorporation in effect at that time, or certificate of incorporation and by-laws of the Company whichever affords the greater protection to the Executive.

B.    In the event of any litigation or other proceeding between the Company and the Executive with respect to the subject matter of this Agreement and the enforcement of the rights under the Agreement, the Company shall reimburse the Executive for all costs and expenses related to the litigation or proceeding including attorney's fees and expenses, providing that the litigation or proceeding results in either settlement requiring the Company to make a payment to the Executive or judgment in favor of the Executive.

## SECTION XI
## WITHHOLDING TAXES

The Company may directly or indirectly withhold from any payments under this Agreement all federal, state, city or other taxes that shall be required pursuant to any law or governmental regulation.

## SECTION XII
## EFFECTIVE PRIOR AGREEMENTS

This Agreement contains the entire understanding between the Company and the Executive with respect to the subject matter and supercedes any prior Employment Agreement between the Company and the Executive (other than the Agreement between the Company and the Executive dated February 10, 1995, which shall remain in full force and effect), except that this Agreement shall not affect or operate to reduce any benefit or compensation inuring to the Executive of a kind elsewhere provided and not expressly provided in this Agreement.

(c:\ab\emplyagr\Anne-97.doc)                    11

CEN 0539091 KSCA1
CONFIDENTIAL

## SECTION XIII

## CONSOLIDATION, MERGER OR SALE OF ASSETS

Nothing in this Agreement shall preclude the Company from consolidating or merging into or with, or transferring all or substantially all of its assets to, another corporation which assumes this Agreement and all obligations and undertakings of the Company hereunder.  Upon such a Consolidation, Merger or Sale of Assets the term "the Company" as used will mean the other corporation and this Agreement shall continue in full force and effect.

## SECTION XIV

## MODIFICATION

This Agreement may not be modified or amended except in writing signed by the parties.  No term or condition of this Agreement will be deemed to have been waived except in writing by the party charged with waiver.  A waiver shall operate only as to the specific term or condition waived and will not constitute a waiver for the future or act on anything other than that which is specifically waived.

## SECTION XV

## GOVERNING LAW

This Agreement has been executed and delivered in the State of Connecticut and its validity, interpretation, performance and enforcement shall be governed by the laws of that state.

(c:\ab\emplyagr\Anne-97.doc)                              12

CEN 0539092 KSCA1
CONFIDENTIAL

IN WITNESS WHEREOF, the undersigned have executed this Agreement as of the date just above written.

CUC INTERNATIONAL INC.

_____
Walter A. Forbes

_____
Anne Pember

(c:\ab\emplyagr\Anne-97.doc)                          13

CEN 0539093 KSCA1
CONFIDENTIAL