# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| ) | |
| **UNITED STATES OF AMERICA** ) | |
| ) | **No. 3:02CR264 (AHN)** |
| **v.** ) | |
| ) | |
| ) | **March 31, 2006** |
| **WALTER A. FORBES** ) | |
| ) | |
| ) | |

## MOTION OF DEFENDANT WALTER A. FORBES
## TO PRECLUDE THE GOVERNMENT FROM PRESENTING
## EVIDENCE, CROSS-EXAMINATION, OR ARGUMENT
## CONCERNING PROPERTY TRANSFERS
### (Forbes Third Trial Motion In Limine No. 2)

Defendant Walter A. Forbes, through undersigned counsel, respectfully moves in

limine, pursuant to Fed. R. Evid. 401 and 403, to preclude the government from presenting any

evidence, cross-examination, or argument at the retrial concerning Mr. Forbes' transfers of his

interest in certain real property to his wife. The grounds for this motion are set forth in the

accompanying memorandum of points and authorities.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon  (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

Oral Argument Requested

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

2

CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Motion of Defendant Walter A. Forbes to Preclude the Government from Presenting Evidence, Cross-Examination, or Argument Concerning Property Transfers (Forbes Third Trial Motion In Limine No. 2) to be filed electronically and to be served on March 31, 2006 to the following via e-mail:

Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)


_____
Barry S. Simon

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| UNITED STATES OF AMERICA )<br><br>v. )<br><br>WALTER A. FORBES ) | No. 3:02CR264 (AHN)<br><br>March 31, 2006 |

## MEMORANDUM IN SUPPORT OF
## MOTION OF DEFENDANT WALTER A. FORBES
## TO PRECLUDE THE GOVERNMENT FROM PRESENTING
## EVIDENCE, CROSS-EXAMINATION, OR ARGUMENT
## CONCERNING PROPERTY TRANSFERS
## (Forbes Third Trial Motion In Limine No. 2)

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this memorandum in support of his motion in limine, pursuant to Fed. R. Evid. 401 and 403, to preclude the government from presenting any evidence, cross-examination, or argument at Mr. Forbes' third trial concerning Mr. Forbes' transfers of his interest in certain real property to his wife.

## FACTUAL BACKGROUND

Mr. Forbes is charged with alleged offenses that purportedly took place between the late 1980's and April 1998. See, e.g., Redacted Superseding Indictment, Count 1, ¶ 17. On April 15, 1998, Cendant Corporation ("Cendant") publicly announced potential accounting irregularities and the alleged accounting fraud charged in the indictment came to an end.

The government seeks to offer evidence in its case-in-chief, and to cross-examine Mr. Forbes, regarding three transfers of Mr. Forbes' interest in certain real estate to his wife,

Caren. Prior to the transfers, the real estate was owned jointly by Mr. Forbes and his wife. Each

of the transfers took place after the April 1998 conclusion of the alleged offenses charged in the

indictment,[1] after Mr. Forbes had been named as a defendant in a large number of Cendant-

related civil actions. The transfers took place well before Mr. Forbes was the subject of any

criminal action,[2] at a time when, according to the then-lead prosecutor in the case, Mr. Forbes

was not a focus of the government's criminal investigation.[3] Mr. Forbes effectuated the transfers

to afford his family a measure of protection because of the civil suits, and he consulted with

counsel with respect to the transfers. See Tr. (9/30/04) at 14,432-33; Tr. (11/15/05) at 3044.

      Mr. Forbes made no effort to conceal the transfers. The transfers were effectuated

by attorneys through legal documents and filed in publicly available property records. See

Exhibit 1 (transfer records). The government previously conceded that "the evidence does not

demonstrate, and the Government will not argue, that [Mr.] Forbes's transfer of the jointly-held

---

[1]    The transfers were dated June 8, 1998, December 4, 1998, and December 15, 1999.

[2]    Mr. Forbes was indicted on February 28, 2001. The latest transfer (on 12/15/99) took place more than fourteen months earlier.

[3]    A criminal investigation commenced on or about April 15, 1998, after Cendant's public announcement of potential accounting irregularities. Former Assistant U.S. Attorney Paul Weissman was the lead prosecutor in the government's investigation in this matter until early 2001. He testified that the investigation was not focused on Mr. Forbes in the years 1998 and 1999:

> Q. The dates of these interviews were in 1998 and 1999; is that correct?
> A. Correct.
> Q. And you indicated to the jury that you were not focusing on Walter Forbes
> at that time, correct?
> A. Correct.

Tr. (9/2/04) at 11,446; see also id. at 11,445.

real estate to his wife's exclusive ownership was, by itself, unlawful or improper."
Memorandum of the United States in Opposition to Forbes' Motion to Preclude the Government
from Presenting Evidence at Trial Regarding Forbes' Transfer of Assets to His Wife (filed April
29, 2004) (Docket No. 657) ("2004 Gov't Mem.") at 10.

      Prior to Mr. Forbes' first trial, Mr. Forbes filed a motion in limine seeking to
preclude the government from presenting any evidence, cross-examination, or argument
concerning his real estate transfers to his wife.  See Motion of Walter A. Forbes to Preclude the
Government frm Presenting Evidence at Trial Regarding His Transfer of Various Assets to His
Wife (filed April 20, 2004) (Docket No. 631); see also Docket No. 668 (Mr. Forbes' reply
memorandum).  On May 10, 2004, the Court reserved ruling on Mr. Forbes' motion.  See Tr.
(5/10/04) at 5.  The Court instructed the government not to discuss the subject in opening
argument.  Id.  The government did not attempt to introduce any evidence concerning asset
transfers in its case-in-chief.  On September 27, 2004, during the defense case, the Court orally
denied Mr. Forbes' motion.  See Tr. (9/27/04) at 13,797-98.  The government was permitted to
question Mr. Forbes concerning the subject of asset transfers during his cross-examination.  See
Tr. (9/30/04) at 14,386-403.[4]

      Mr. Forbes renewed his motion in limine concerning property transfers prior to
the 2005 trial and opposed the government's motion to introduce Mr. Forbes' prior testimony on
this subject in its case-in-chief.[5]  Mr. Forbes' renewed motion in limine was denied.  See Tr.

---

[4]     More than a year later, on October 14, 2005, the Court issued a written opinion setting
forth reasons for its denial of Mr. Forbes' motion on September 27, 2004.  See Docket No. 1841.

[5]     See Renewed Motion of Defendant Walter A. Forbes To Preclude the Government from
Presenting Evidence, Cross-Examination, or Argument Concerning Asset Transfers (filed

(10/17/05) at 4-5. Over Mr. Forbes' objection, the government was permitted to present Mr.

Forbes' prior testimony on this subject in its case-in-chief and to cross-examine Mr. Forbes on

the subject of asset transfers. See Tr. (10/26/05) at 1225-37; Tr. (11/15/05) at 3040-53. In

addition, the Court permitted the government, over Mr. Forbes' objection, to cross-examine

defense witness Greg Danilow about this subject. See Tr. (11/9/05) at 2436-40, 2443-46.[6] Mr.

Danilow, an attorney, confirmed that Mr. Forbes consulted with him before effectuating any asset

transfers. Mr. Danilow testified that he raised two issues with Mr. Forbes -- the possibility that

asset transfers could be deemed fraudulent conveyances in connection with the civil litigation

and the possibility that they could be treated by prosecutors as some sort of admission of guilt.

See Tr. (11/9/05) at 2444. Mr. Danilow testified that he did not advise Mr. Forbes that such

transfers were either unlawful or improper. Id. at 2445. Mr. Forbes testified that he proceeded

with the transfers after talking to Mr. Danilow and consulting with another attorney because he

understood that the transfers were not unlawful and because he had done nothing wrong and

never thought that he would be prosecuted. Tr. (11/15/05) at 3049-50, 3053.

_____

September 6, 2005) (Docket No. 1666); Memorandum of Walter A. Forbes in Opposition to the
Government's Pretrial Motion in Limine (filed August 23, 2005) (Docket No. 1653) at 8-12.

[6]     Mr. Danilow was called by the defense to present limited and brief testimony about a
meeting he attended in January 1996 to evaluate pending litigation with respect to a company
that CUC subsequently acquired. Tr. (11/9/05) at 2428-36. The cross-examination on asset
transfers was permitted on the ground that it purportedly related to Mr. Danilow's credibility.

4

## ARGUMENT

**I.    THE COURT SHOULD PRECLUDE ANY EVIDENCE, CROSS-EXAMINATION, OR ARGUMENT CONCERNING THE PROPERTY TRANSFERS PURSUANT TO FED. R. EVID. 401.**

The government's asserted rationale for presenting evidence concerning Mr. Forbes' real estate transfers is that it is evidence of consciousness of guilt.  See 2004 Gov't Mem. (Docket No. 657) at 3-4.  The Court should exclude all such evidence, and preclude the government from cross-examining Mr. Forbes concerning his real estate transfers pursuant to Fed. R. Evid. 401, because the transfers are not probative of consciousness of criminal wrongdoing.

The government's assertion that Mr. Forbes' property transfers are probative of consciousness of guilt is unfounded.  The government has never cited a case holding that any asset transfer made a year or more prior to indictment -- much less a real property transfer that was publically recorded -- is admissible as evidence of consciousness of guilt.  Indeed, the government has not cited a single case in which evidence relating to an asset transfer that took place either before or after an arrest or indictment was held admissible in a criminal trial to show consciousness of guilt.[7]  At least one court has held that an asset transfer to a family member

---

[7]    The government previously cited a civil bankruptcy case in which the court found, after a three-week bench trial, that certain asset transfers should be set aside as fraudulent transfers made to evade obligations to creditors.  In re Manshul Constr. Corp., 2000 WL 1228866 (S.D.N.Y. Aug. 30, 2000) (2004 Gov't Mem. at 4-5).  The Manshul court did not consider the entirely different issue of whether evidence of asset transfers made a year or more before an indictment should be admissible in a criminal action as evidence of consciousness of guilt.  The remaining consciousness of guilt cases cited by the government do not involve asset transfers and are inapposite.  See United States v. Anglin, 169 F.3d 154, 158-60 (2d Cir. 1999) (2004 Gov't Mem. at 6) (evidence of flight); United States v. Salameh, 152 F.3d 88, 157 (2d Cir. 1998) (2004 Gov't Mem. at 6) (flight); United States v. Burrous, 147 F.3d 111, 117 (2d Cir. 1998) (2004 Gov't Mem. at 4) (throwing cash out the window during arrest); United States v. Amuso, 21 F.3d

5

made after the defendant was arrested was <u>not</u> probative of consciousness of guilt. <u>See United States v. Ramirez</u>,176 F.3d 1179, 1182-83 (9th Cir. 1999) (harmless error to admit evidence that defendant's sister registered title to his vehicles in her name six days following his arrest; evidence not admissible to show consciousness of guilt).[8]

    The lack of authority for the government's position is reflective of the fact that evidence of a property transfer to a family member at a time when, according to the government's then-lead prosecutor, the government was not focusing on Mr. Forbes (<u>see</u> note 3, <u>supra</u>), does not provide a factual predicate "from which a reasonable jury can make the required inferences that give [consciousness of guilt] evidence its probative value." <u>United States v. Amuso</u>, 21 F. 3d 1251, 1260 (2d Cir. 1994). Such a factual predicate is required to "ensure[] that the evidence is probative in a legal sense and protect[] the defendant against the possibility of the jury drawing unsupported inferences from otherwise innocuous behavior." <u>Id.</u>

---

1251, 1258 (2d Cir. 1994) (2004 Gov't Mem. at 8) (flight); <u>United States v. Wilson</u>, 11 F.3d 346, 353 (2d Cir. 1993) (2004 Gov't Mem. at 4) (false identification); <u>United States v. Macklin</u>, 927 F.2d 1272, 1279-80 (2d Cir. 1991) (2004 Gov't Mem. at 4) (attempt to persuade witness not to testify in grand jury); <u>United States v. Blanco</u>, 861 F.2d 773, 782 (2d Cir. 1988) (2004 Gov't Mem. at 10) (use of false name and false identification papers at time of arrest); <u>United States v. Bein</u>, 728 F.2d 107, 114-15 (2d Cir. 1984) (2004 Gov't Mem. at 10) (witness intimidation); <u>United States v. Deutsch</u>, 451 F.2d 98, 116 (2d Cir. 1971) (2004 Gov't Mem. at 4) (concealment of underlying transaction). <u>United States v. Diaz</u>, 878 F.2d 608 (2d Cir. 1989), on which the government also relied (2004 Gov't Mem. at 8), did not involve any issue relating to evidence of consciousness of guilt.

[8] A subsequent Ninth Circuit decision, <u>United States v. Gonzales-Flores</u>, 418 F.3d 1093 (9th Cir. 2005), took issue with the harmless error analysis in <u>Ramirez</u>, observing that "an error presumptively requires reversal and the burden is on the government to demonstrate otherwise by showing that the error was more probably than not harmless." <u>Id.</u> at 1099. The court did not take issue with the conclusion of the <u>Ramirez</u> court that the admission of the asset transfer evidence was erroneous.

The classic evidence that may be used to prove consciousness of guilt is flight. However, the probative value of flight evidence "as circumstantial evidence of guilt depends upon the degree of confidence with which four inferences can be drawn:  (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged."  United States v. Al-Sadawi, 432 F.3d 419, 424 (2d Cir. 2005) (quoting United States v. Myers, 550 F.2d 1036, 1048-51 (5th Cir. 1977)); see also Amuso, 21 F.3d at 1258.  "If the government wishes to offer evidence of flight to demonstrate guilt, it must ensure that each link in the chain of inferences leading to that conclusion is sturdily supported."  Al-Sadawi, 432 F.3d at 424 (quoting United States v. Beahm, 664 F.2d 414, 420 (4th Cir. 1981)) (emphasis added).[9]

In Al-Sadawi, the Second Circuit cautioned that purported consciousness of guilt evidence must "provide the jury with more than an opportunity for mere conjecture and speculation."  432 F.3d at 424 (quotations omitted).  The Court held that the evidence in question – that the defendant's wife attempted to obtain passports and airline tickets for herself and the defendant  – was "too attenuated to establish that he intended to flee to avoid prosecution or apprehension."  Id. at 425; see also id. at 424 ("the chain of inferences never proceeds beyond the

---

[9]     Judge Thompson's October 14, 2005 opinion was rendered before the Second Circuit's decision in Al-Sadawi.  Mr. Forbes had relied on the four-part inference analysis in his reply memorandum in support of his original motion in limine (Docket No. 668).  Judge Thompson never addressed the series of logical steps necessary to give alleged consciousness of guilt evidence any probative value.

first of these four steps").[10]

Under the logic of Al-Sadawi, evidence relating to an asset transfer could conceivably be admissible as evidence of consciousness of guilt only if a well-supported factual predicate permitted inferences to be drawn: (1) from the property transfer to consciousness of guilt; (2) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (3) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged. In this case, there is no "sturdily supported," id. (quotation omitted), factual predicate from which any of these inferences could properly be drawn by a jury.

First, it is undisputed that the property transfers were done at a time when Mr. Forbes was named as a defendant in a plethora of civil suits but was not a focus of any criminal investigation. The government previously acknowledged the possibility that Mr. Forbes' transfers could have been made out of a concern for potential civil liability. See 2004 Gov't Mem. at 6-7. That alone breaks the chain of inferences necessary for the admission of this evidence. See Myers, 550 F.2d at 1050 (flight evidence inadmissible because there was insufficient evidence to show that defendant "fled solely because he felt guilty about" the crime charged) (emphasis added).

The government's contention that fear of civil liability is the equivalent of consciousness of criminal guilt (see 2004 Gov't Mem. at 6-7) ignores the significantly different

---

[10]     The Court found the error harmless in large part because of "the overwhelming strength of the evidence against Al-Sadawi." 432 F.3d at 425. Here, in sharp contrast, the only witness who claims that Mr. Forbes was involved in criminal activity is Cosmo Corigliano, a government cooperator whose credibility is, at best, severely compromised based on the significant benefits he has received from the government in exchange for his testimony and his demonstrably false testimony in two trials. The case against Mr. Forbes has resulted in two hung juries after a total of sixty days of deliberations and is far from "overwhelming," id.

standards of liability and proof in civil and criminal cases. Mr. Forbes' potential liability in the

Cendant civil litigation could be based on theories of vicarious liability that have nothing to do

with whether he knowingly and willfully engaged in criminal conduct. If the Court were to

admit evidence relating to Mr. Forbes' property transfers, it would permit the jury to draw the

improper inference that concern about civil liability is tantamount to consciousness of criminal

guilt. See United States v. Skeddle, 981 F. Supp. 1074, 1078 (N.D. Ohio 1997) (rejecting

government's proposed consciousness of guilt evidence on the ground that "defendants'

purported spoliation of evidence could have been in response to fear of civil prosecution or

ethical reprimand, and therefore evidence only of their consciousness of general wrongdoing").

Second, the chain of necessary inferences fails in this case because Mr. Forbes

made no effort to conceal the transfers, which were (and are) available to the public in property

records. In addition, the transfers were effectuated by lawyers, and Mr. Forbes consulted with

counsel before initiating the transfers. The fact that Mr. Forbes sought legal advice with respect

to the matter is evidence of his consciousness of innocence and desire to act lawfully, not

evidence of consciousness of guilt. So, too, is the fact that Mr. Forbes decided to proceed with

the transfers after speaking with Mr. Danilow, because he knew that he had done nothing wrong

and did not fear criminal prosecution.

Third, in order for flight evidence to be probative of consciousness of guilt, "the

timing of flight must itself indicate the sudden onset or the sudden increase of fear in the

defendant's mind that he or she will face apprehension for, accusation of, or conviction of the

crime charged." United States v. Dillon, 870 F.2d 1125, 1128 (6th Cir. 1989) (emphasis added).

The government has not (and cannot) proffer any evidence that at the time that Mr. Forbes made

the property transfers at issue, he suddenly feared "apprehension for, accusation of, or conviction

of the crime charged;" indeed, the transfers took place over an eighteen-month period that ended

more than a year before Mr. Forbes was indicted, and were done at a time when the government's

investigation was not focused on Mr. Forbes (see note 3, supra).[11] The timing of the transfers

undermines any inference of consciousness of guilt in this case. Compare United States v.

Silverman, 861 F.2d 571, 581-82 (9th Cir. 1988) (flight evidence inadmissible where "the

Government has offered no evidence from which it [could] be inferred that [the defendant] was

conscious of guilt of any" of the charged offenses).

  Mr. Forbes' attempt to afford his family a measure of financial protection from

civil judgments proves nothing about whether he was conscious of criminal wrongdoing.

Evidence of Mr. Forbes' property transfers in 1998 and 1999 is irrelevant and should be excluded

under Rule 401.

## II. THE COURT SHOULD PRECLUDE ANY EVIDENCE, CROSS-EXAMINATION, OR ARGUMENT CONCERNING THE PROPERTY TRANSFERS PURSUANT TO FED. R. EVID. 403.

  In the alternative, the Court should preclude the government from presenting any

evidence, cross-examination, or argument concerning property transfers pursuant to Fed. R. Evid.

403 because its probative value is "substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of

time, or needless presentation of cumulative evidence." Id.

---

[11] Mr. Forbes testified that he was not told that criminal charges would be brought against him until a month or two before the February 2001 indictment. Tr. (10/4/04) at 14,473.

10

"Unfair prejudice," for purposes of Rule 403, is "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's notes.  Evidence is properly excluded under Rule 403 where there is a "genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence." United States v. Bailey, 990 F.2d 119, 122 (4th Cir. 1993) (quotation omitted); see also United States v. Blackstone, 56 F.3d 1143, 1146 (9th Cir. 1995) ("Evidence is prejudicial if it 'appeals to the jury's sympathies, arouses its sense of horror, provokes its instincts to punish, or triggers other mainsprings of human action.'") (quoting 1 Jack B. Weinstein et al., Weinstein's Federal Evidence § 403[3], at 37-41).

Here, the non-existent probative value of evidence of property transfers in 1998 and 1999 is substantially outweighed by its potential to confuse and mislead the jury and to prejudice Mr. Forbes.  Evidence concerning the value of the assets transferred by Mr. Forbes is highly prejudicial because it places undue and improper emphasis on his wealth.  See, e.g., Tr. (9/30/04) at 14,386-88, 14,394, 14,401-03 (government cross-examination emphasizing value of property transferred); United States v. Stahl, 616 F.2d 30, 32 (2d Cir. 1980) (reversing conviction where prosecutor emphasized defendant's wealth and value of real estate during questioning of witnesses and in argument).[12]

---

[12]     Mr. Forbes' concern in this regard is well founded.  During the 2005 trial, the jury requested a read-back of testimony on this subject on the fourth day of jury deliberations.  See Court Exhibit 16 (referenced in Docket No. 2096) ("We would like to hear all testimony regarding Walter Forbes' transfer of property to his family from Greg Danilow and Walter Forbes.  We would like to hear this first thing in the morning, if possible.").

11

This evidence also is prejudicial because it relates to conduct that jurors may find distasteful, and which may lead jurors to conclude that Mr. Forbes is a bad or unethical person who should be punished -- despite its lack of probative value with respect to the offenses charged. Such evidence would greatly increase the likelihood that jurors would return a guilty verdict against Mr. Forbes because of an emotional reaction to conduct having nothing to do with the charged offenses rather than based on a rational assessment of the strength or weakness of the government's case. See Old Chief v. United States, 519 U.S. 172, 180 (1997) (under Rule 403, "[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."); United States v. Lachman, 48 F.3d 586, 592 (1st Cir. 1995) ("The concern is with any pronounced tendency of evidence to lead the jury, often for emotional reasons, to desire to convict a defendant for reasons other than the defendant's guilt.").

Finally, the government's introduction of this evidence would give rise to a distracting and unnecessary mini-trial about the advice Mr. Forbes received with respect to the transfers, the attorneys with whom he consulted, whether the transfers were lawful or unlawful, and why Mr. Forbes effectuated the transfers. This would serve only to confuse and distract the jury from the real issues in this case. See Lachman, 48 F.3d at 593 (affirming exclusion of evidence under Rule 403 where "ample opportunity exist[ed] for jury confusion"). It also would require the introduction of evidence relating to the Cendant civil litigation pending against Mr. Forbes in 1998 and 1999. The fact that Mr. Forbes is named as a defendant in civil litigation arising from accounting irregularities at CUC and Cendant has no relevance to the charges in this case, but could lead jurors to conclude that Mr. Forbes should be held responsible for the

accounting fraud and should therefore be convicted.

Because evidence of Mr. Forbes' property transfers has no probative value with respect to the charged offenses, but would be extremely prejudicial and misleading, the Court should exclude it under Rules 401 and 403.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
    Brendan V. Sullivan, Jr. (Bar No. ct17115)
    Barry S. Simon  (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

13

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing Memorandum in Support of Motion of

Defendant Walter A. Forbes to Preclude the Government from Presenting Evidence, Cross-

Examination, or Argument Concerning Property Transfers (Forbes Third Trial Motion In Limine

No. 2) to be filed electronically and to be served on March 31, 2006 to the following via e-mail:

>    Norman Gross, Esq. (norman.gross@usdoj.gov)
>    Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
>    Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

_____
Barry S. Simon