# EXHIBIT B-H



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
450 Fifth Street, N.W., Stop-8-8
Washington, D.C. 20549-0808

DIVISION OF
ENFORCEMENT

James A. Kidney
Assistant Chief Litigation Counsel
Direct dial: 202-942-4797
Facsimile: 202-942-9581
Internet: kidneyj@sec.gov

July 20, 2000

Alan R. Friedman, Esq.
Kramer Levin Naftalis & Frankel, LLP
919 Third Avenue
N.Y., N.Y. 10022-3852

Harvey L. Pitt
Fried Frank Harris Shriver & Jacobson
1001 Pennsylvania Avenue, N.W.
Suite 800
Washington, D.C. 20004

**VIA FACSIMILE**

Dear Alan and Harvey:

This responds to Alan's letter and attachments dated July 19, 2000 in which a slightly revised budget for the Corigliano's is proposed and some additional information about the candle company is provided, along with certain representations about anticipated income for the family.

Before we can properly analyze this budget, we must have a complete list of the assets of the Corigliano family, including Mrs. Corigliano and the children. One reason we require this information is because it is now evident that one of the bases – perhaps the chief basis – on which the "budget" is defended is that it will be matched by income from existing assets. Moreover, we are entitled to the cooperation of the Coriglianos in providing this information – in detail – according to provisions of Mr. Corigliano's plea agreement. We also require production of the 1999 income tax returns of the Coriglianos, their parents and of the candle company. This information is necessary in order adequately to assess the reliability of the information you have provided and it is commonly provided the Commission as part of the statement of financial condition received from defendants and respondents in litigation.

We also require the information about family assets in order to fix whether these assets will have been dissipated pending resolution of our differences. We have requested this information in the past, and have received only limited disclosure. For example, on May 26, 2000, we received some asset information, but it was very general. The disclosure of Mrs. Corigliano's assets, other than those held jointly with her husband, was: "Terri Corigliano, investment accounts in amount of $3,950,000." We will require a detailed breakdown of the specific investment, where it is maintained (i.e., the name of the

CCQ174

DEFENDANT'S
EXHIBIT
965

Messrs. Friedman and Pitt
Page 2

brokerage and the account number), in whose name the account is maintained and recent account statements substantiating the existing principal.

I do not share your belief that the Coriglianos have provided a reasonable budget figure. By my calculation, they have arrived at a budget providing over $130,000 in living expenses for a family of five AFTER taxes and without the need to pay for shelter. This is the expendable budget of a fairly wealthy family. The median income for a married couple with children is less than $60,000 – gross. Of course, the Corigliano situation is aggravated by the tax, maintenance and utility costs of a $1.7 million house in a very expensive Connecticut town. That aside, the Coriglianos are proposing to spend nearly $80,000 on clothing, education, "educational expenses", food and "home upkeep" alone. Again, this is after taxes. This is hardly a budget that warrants hand wringing, much less the implication that family spending is cut to the bone.

Nevertheless, we hope to arrive at a budget agreement and we recognize that it may be more than we would like. However, if it is to be paid out of investment income, it is necessary that we be provided a detailed breakdown of the investment principal. Even if it were not, as I said, we also require this information to serve as a benchmark of assets for later in this litigation in the event it is not settled.

Please provide this information Monday via facsimile so that we may review it before our meeting with Judge Lechner.

Sincerely,

James A. Kidney

CCQ175

# EXHIBIT B-I

KRAMER LEVIN NAFTALIS & FRANKEL LLP

919 THIRD AVENUE

NEW YORK, N.Y. 10022 - 3852

ALAN R. FRIEDMAN
PARTNER
TEL (212) 715-9300
FAX (212) 715-8000
afriedman@kramerlevin.com

47, AVENUE HOCHE
75008 PARIS
FRANCE

July 26, 2000

<u>Via Facsimile</u>

James A. Kidney, Esq.
Assistant Chief Litigation Counsel
Securities and Exchange Commission
Division of Enforcement
450 Fifth Street, N.W., Stop 8-8
Washington, DC 20549-0808

Dear Jim:

      I write in response to your July 20 letter to Harvey Pitt and me and to follow up on our telephone conversation Friday.

      As you know, Mr. Corigliano has been a valuable, cooperating witness for many months in the Government's continuing investigation of accounting irregularities at Cendant. The Commission Staff has repeatedly confirmed that Cosmo has been always available and has provided truthful and complete information of substantial assistance to the Government. On May 26, 2000, in aid of our efforts to settle the Commission's claims against Mr. Corigliano, I supplied the Commission with detailed information about Cosmo's assets and transfers, including, among other things, a complete list of his personal and joint assets, the securities he holds, the brokerage firms where the accounts are located, as well as information about the family residence and the candle business. Moreover, although the plea agreement does not confer on Mrs. Corigliano any obligations as to her asset information, her counsel, Harvey Pitt and Audrey Strauss, have, in aid of settlement, given the Staff additional information relating to Terri's total liquid assets. While you may not be aware of it, they provided such information orally and in a writing, as part of the more than $11 million settlement proposal they delivered to the Commission. The Staff, therefore, already has ample information available to confirm that the assets, already described to it, would support interest payments of $165,000.

      Given these facts, we do not understand the basis for your most recent requests for additional information beyond that already provided. Prior to Mr. Corigliano's plea, we had understood that the Commission would consent to the contemplated motion by the United States Government to stay the action and that all the Staff sought were assurances from counsel that the Coriglianos had no foreign bank accounts and were not secreting assets, acts that the Staff confirmed they had no evidence of. We readily gave those assurances. Subsequent to Mr. Corigliano's plea, those discussions evolved into the Staff's requests for the provision of the several budgets that we have now sent to you.

KRAMER LEVIN NAFTALIS & FRANKEL LLP

James A. Kidney, Esq.
July 26, 2000
Page 2

        In those budgets, we documented in detail the Coriglianos' living expenses over the past year, which were normal and regular and not extravagant.  We showed that the proposed budget represented a considerable reduction from their prior year's expenses.  At your request and in aid of obtaining a consensual resolution, we revised the budget figures downward twice.  I explained that every further reduction to the budget -- in items like food, clothing, children's activities -- essentially comes out of Terri's and the children's daily living expenses.  Such reductions are not required to avoid any dissipation of assets.  Indeed, we provided these budgets to you principally in aid of attempting to amicably resolve this issue and facilitate a substantive, overall settlement negotiation.  And while it is plain that the proposed budget would leave the Coriglianos living expenses within the interest generated by their assets, that was not our main argument or "defense" of the budget.  In our conversations, you indicated that such a representation would be helpful in reaching agreement.  I, therefore, provided it in my July 19 letter.

        Although we think it clear that you have the information you need to evaluate the budget, in still another effort to achieve consensus, we inform you that Fried Frank will be providing you shortly with further particulars on Mrs. Corigliano's investment accounts.  We believe that the Staff should then be in a position to accept the July 19, 2000 budget as sent to you.  You should also be aware that on May 26, 2000, the Staff already received a listing of Cosmo's assets, that the family has not yet filed its 1999 tax returns, and that the candle company as an LLC does not file a separate return.

        Please confirm to us whether the Staff is now prepared to agree to the July 19 budget.

                              Yours sincerely,

                              *Alan R. Freedman*

                              Alan R. Friedman


ARF/asb

cc:    Harvey Pitt, Esq.
       Audrey Strauss, Esq.

KL3:2046295.2

# KRAMER LEVIN NAFTALIS & FRANKEL LLP

919 Third Avenue

New York NY 10022

(212) 715-9100

---

### Fax Department: (212) 715-9191

### Fax Number: (212) 715-8000

| | | |
|---|---|---|
| **FROM:** Alan R. Friedman, Esq. | **DATE:** | July 26, 2000 |
| **PHONE:** 212-715-9300 | | |

## PLEASE DELIVER AS SOON AS POSSIBLE TO:

| | RECIPIENT | COMPANY | FAX NO. | PHONE NO. |
|---|---|---|---|---|
| 1. | James A. Kidney, Esq. | Securities and Exchange Commission | 202-942-9581 | 202-942-4797 |

Total number of pages including this page: 3

The documents accompanying this facsimile transmission are intended only for the use of the addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination the communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. Thank you.

KL3:3042323.1

3269

# EXHIBIT B-J

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON

A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

ONE NEW YORK PLAZA
NEW YORK, NEW YORK 10004 - 1980
212 - 859 - 8000
FAX - 212 - 859 - 4000

WRITER'S DIRECT LINE

212-859-8544

August 1, 2000                                          (FAX: 212-859-8584)

**Via Facsimile**

James A. Kidney, Esq.
Assistant Chief Litigation Counsel
Securities and Exchange Commission
Division of Enforcement
450 Fifth Street, N.W., Stop 8-8
Washington, DC  20549-0808

        RE:    SEC v. Corigliano, et al.

Dear Jim:

        We are writing to provide, on behalf of our client, Terri Corigliano, further information, as you requested, regarding her investment accounts.  We understand that the following numbers reflect best estimates based on currently available information for accounts held in Mrs. Corigliano's name individually.  (We understand that Mr. Corigliano previously provided information regarding accounts in his name and those held in their joint names.)

|  | Balance |
|---|---|
| **I. Cash**<br>Checking Account at People's Bank<br>(Account number<br><div align="center">**REDACTED**</div> | $ 60,000 |
| **II. Securities**<br>Vanguard Investment Funds (tax exempt)<br>(Account number:<br><div align="center">**REDACTED**</div> | $ 225,000 |

DEFENDANT'S
EXHIBIT
971

NEW YORK · WASHINGTON · LOS ANGELES · LONDON · PARIS

AUG. -01.'00(TUE) 13:47                240

CCQ111

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON

| | | |
|---|---|---|
| T. Rowe Investment Funds (tax exempt) (Account numbers: REDACTED | 3) | $2,448,000 |
| Fidelity Investment (Account numbers: REDACTED | ) | $1,230,000 |
| Merrill Lynch - Equi (Account Numbers REDACTED | | $ 504,000 |
| Merrill Lynch - Investment Fund (taxable) (Account Number REDACTED | | $  214,000 |
| TOTAL | | $4,681,000 |

Very truly yours,

*[signature]*

Harvey Pitt

*[signature]*

Audrey Strauss

AS:mf

#329661

## FRIED, FRANK, HARRIS, SHRIVER & JACOBSON

A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
ONE NEW YORK PLAZA
NEW YORK, N.Y. 10004-1980
(212) 859-8000

FACSIMILE NUMBER

(212) 859-8584

If you have problems receiving this transmission, please contact us at (212) 859-8362.

**Confidentiality Note:**

The information contained in this facsimile message may be legally privileged and confidential. It is intended only for the use of the addressee named below. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original message to us at the address above via the United States Postal Service. We will reimburse any costs you incur in notifying us and returning the message to us. Thank you.

## FACSIMILE COVER LETTER

Date:  08/01/00 02:45 PM          Number of Pages (including cover sheet):  3

To:    James A. Kidney, Esq.           Fax No.:      202-942-9581
       Firm Name: United States Securities
       and Exchange Commission         Office No.:   202-942-4797

From:  Audrey Strauss                  Phone:        (212) 859-8544
                                       email:        Strauau@FFHSJ.com

Comments:

[fny02\strauau\329662.1]

CCQ113

# EXHIBIT B-K

KRAMER LEVIN NAFTALIS & FRANKEL LLP

919 THIRD AVENUE

NEW YORK, N.Y. 10022 - 3852

GARY P. NAFTALIS
PARTNER
TEL (212) 715-9253
FAX (212) 715-9238
gnaftalis@kramerlevin.com

47, AVENUE HOCHE
75008 PARIS
FRANCE

August 29, 2000

<u>Via Federal Express</u>

James A. Kidney, Esq.
Assistant Chief Litigation Counsel
Securities and Exchange Commission
Division of Enforcement
450 Fifth Street, N.W., Stop 8-8
Washington, DC  20549-0808

Dear Jim:

I enclose an original of the letter agreement, executed by the Coriglianos, Harvey Pitt and me.

Kindest regards.

Sincerely,

Gary P. Naftalis

GPN/hg
Enclosure

cc:    Harvey Pitt, Esq., w/enclosure
       Audrey Strauss, Esq., w/enclosure

KL3.2042533.1

SEC0044

KRAMER LEVIN NAFTALIS & FRANKEL LLP

919 THIRD AVENUE
NEW YORK, N.Y. 10022 - 3852

GARY P. NAFTALIS
PARTNER
TEL (212) 715-9253
FAX (212) 715-9238
gnaftalis@kramerlevin.com

47, AVENUE HOCHE
75008 PARIS
FRANCE

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
ONE NEW YORK PLAZA
NEW YORK, N.Y. 10004-1980
(212) 859-8000

HARVEY L. PITT
PARTNER
TEL (202) 639-7100
FAX (202) 639-7008
pittha@ffhsj.com

1001 PENNSYLVANIA AVE, N.W.
WASHINGTON, D.C. 20004-2505

August 28 , 2000

Richard H. Walker, Esq.
Director
Division of Enforcement
Securities and Exchange Commission
Mail Stop 8-1
450 Fifth St., N.W.
Washington, D.C. 20549-0801

Re:     SEC v. Cosmo Corigliano, Anne M. Pember, et al., 00 Civ. 2873 (D. N.J.)
        (the "Action")

Dear Mr. Walker:

This letter is an agreement by Cosmo Corigliano and Agnes T. Corigliano ("our clients"), whose
signatures are executed below, not to secrete, spend or otherwise dissipate existing assets,
identified in Attachment A hereto, by their actions or those of their family members, agents, or
others under their direct or indirect control. This agreement permits limited expenditures, if
necessary, from investment earnings of these assets to meet, but not to exceed, the budget
described in Attachment B hereto, but for no other purpose. However, such expenditures from
assets, if any, are permitted only (i) after all earned (i. e., non-investment income) of family
members has been spent pursuant to the budget and (ii) if investment income exceeds the amount
of withdrawals necessary to meet budgeted expenses. Should market conditions change so as to
make meeting condition (ii) impractical, our clients and the Division shall consult as to such
reasonable withdrawals from principal as may be necessary and appropriate to meet the budget,
but any such withdrawals from principal shall be made only with the Division's written consent.

KL3-2043961 2

SEC0045

Our clients further agree that they will preserve the assets in Attachment A, to the extent market conditions permit, until this dispute is resolved. Should additional assets come into their possession before this dispute is resolved, those assets shall be added to those in Attachment A and be preserved and increased subject to the provisions of this agreement.

In order to insure that the provisions of this agreement are met, our clients agree to complete and provide to the Division of Enforcement the Statement of Assets, Liabilities and Expenditures in the form of Attachment C, hereto, on a quarterly basis, 20 days after the end of each quarter, beginning with the quarter ended September 30, 2000. Our clients also agree to provide such documentation as the Division may reasonably request in support of each such Statement.

Should it be necessary, in the judgment of our clients, to materially exceed budgeted living expenses as provided in Exhibit B, no such excess expenditure shall be made without first obtaining the written consent of the Division of Enforcement, which shall not be unreasonably withheld. Nor shall our clients, or any of their family members, agents or custodians of the assets identified in Attachment A, make any withdrawals, except as may be necessary to meet the spending provisions of the budget in Attachment B, or reallocate either ownership or the investment vehicle of any such assets, without the prior written consent of the Division of Enforcement.

By executing their signatures below, our clients agree to all of the provisions stated above and, further, agree that, should there be a material breach of this Agreement by them, the Commission may move the United States District Court for the District of New Jersey for such relief as the Commission may deem appropriate.

Our clients also understand and agree that they and the Securities and Exchange Commission may, upon 30 days notice, terminate this agreement, and move, on reasonable notice, to seek such interim or final relief as they or the Commission deem appropriate.

Further, our clients understand that any material breach of this agreement may be brought to the attention of the Court in the criminal matter to which Cosmo Corigliano has entered a guilty plea.

KL3 20489612

- 2 -

Nothing in this Agreement shall be deemed or construed as a waiver of any remedy, right or defense that the Commission or our clients have in the Action or an admission as to any defense or claim or the propriety of any relief, interim or final, that any party may seek therein or in any other proceeding.

Very truly yours,

Gary P. Naftalis
Kramer, Levin, Naftalis &
Frankel LLP
Counsel for Cosmo Corigliano

Harvey L. Pitt
Fried, Frank, Harris, Shriver & Jacobson
Counsel for Agnes T. Corigliano

I have read the foregoing letter to Richard H. Walker of the Securities and Exchange Commission and understand it fully.  I hereby acknowledge that it sets forth my agreement with the Division of Enforcement of the Securities and Exchange Commission.

COSMO CORIGLIANO

SUBSCRIBED AND SWORN BEFORE ME
THIS 20 DAY OF August , 2000

Notary

LILIYA SURIS
NOTARY PUBLIC State of New York
No. 01SU6014860
Qualified in Kings County
Commission Expires Oct 19, 20 00

My Commission expires on October 19 2000

I have read the foregoing letter to Richard H. Walker of the Securities and Exchange Commission and understand it fully.  I hereby acknowledge that it sets forth my agreement with the Division of Enforcement of the Securities and Exchange Commission.

AGNES T. CORIGLIANO

SUBSCRIBED AND SWORN BEFORE ME
THIS 20 DAY OF August , 2000

Notary

LILIYA SURIS
NOTARY PUBLIC State of New York
No. 01SU6014860
Qualified in Kings County
Commission Expires Oct 19, 20 00

My Commission expires on October 19 2000

KL3 2048961 2

- 3 -

Attachment A:  Assets of Cosmo Corigliano and Family
[April 2000; July 2000 Spouse]

| | | |
|---|---:|---|
| Cash | | |
| People's Bank Jt. Checking Acct. No. 1 | | |
| People's Bank Jt. Checking Acct. No. 2 | 5,700 | |
| People's Bank Jt. Savings Acct. | 44,400 | |
| People's Bank Spouse Checking Acct. | 9,300 | |
| Real Estate | 60,000 | |
| Trumbull CT | | |
| Old Saybrook, CT | 180,000 | |
| Autos | 1,745,000 | |
| Securities | 13,200 | |
| Fidelity CT Muni Fund (Joint) | | |
| Smith Barney Inv. Fund | 1,200 | |
| Fairfield Capital Partners | 2,042,300 | |
| Cendant Stock | 1,245,700 | |
| Cendant Stock Options | 1,773,700 | [130,777 shares @ $13.5625/share] |
| Vanguard Tax Exempt Investment Funds (Spouse) | 3,000,000 | ["in excess of"] |
| T. Rowe Price Tax Exempt Investment Funds (3 accts – Spouse) | 225,000 | |
| Fidelity Tax Exempt Investment Funds (2 accts – Spouse) | 2,448,000 | |
| Merrill Lynch Equity Acct. (Spouse) | 1,230,000 | |
| Merrill Lynch Investment Fund (Spouse) | 504,000 | |
| Pensions, IRA, Keough | 214,000 | |
| Smith Barney IRA | | |
| Sailboat | 327,500 | |
| Mary Corigliano Trust Fund | 45,000 | |
| Michael Coriglilano Trust Fund | 200,000 | |
| David Corigliano Trust Fund | 200,000 | |
| Crystal Journey Candles LLC | 200,000 | |
| | 750,000 | [purchase price] |
| TOTAL | | |
| | 16,464,000 | |

8/1/00

Attachment B:  Budget for Cosmo Corigliano and Family

**Family Expenses**

| | |
|---|---|
| Auto | |
| Insurance | 5,600 |
| Clothing | 6,400 |
| Tuition | 10,000 |
| Childrens' Activities:  Music Lessons, Sports, etc. | 7,500 |
| Food | 12,000 |
| Home Maint | 23,000 |
| Health Expenses (including insurance) | 16,000 |
| Real Estate & Property Taxes | 14,500 |
| Utilities | 25,000 |
| Miscellaneous | 21,000 |
| House Repairs/improvements | 10,000 |
|  (one-time charges) | 17,000 |
| Income Taxes | 65,000 |
| | |
| **Subtotal** | |
| | **233,000** |
| | |
| Candle Company [one time expense] | 51,325 |
| | |
| **Subtotal** | |
| | **51,325** |
| | |
| **Cosmo parents** | |
| Food, utilities, insurance, medicine | 25,000 |
| Property Taxes | 3,800 |
| **Subtotal** | **28,800** |
| | |
| **Terri's Mother** | |
| Living Expenses | 12,000 |
| Property taxes | 8,000 |
| **Subtotal** | **20,000** |
| | |
| **GRAND TOTAL** | |
| | **333,125** |

8/1/00

# QUARTERLY STATEMENT OF ASSETS, LIABILITIES AND EXPENDITURES OF THE FAMILY OF COSMO CORIGLIANO AND AGNES T. CORIGLIANO

The following information is to be provided within 20 days after the close of each calendar quarter to James A. Kidney, Securities and Exchange Commission, Mail Stop 8-8, 450 Fifth St., N.W., Washington, D.C. 20549. Detailed asset and liability information provided in earlier reports need not be repeated if the account is reasonably identified below so that quarterly comparisons may be made, assuming there has been no change in such account information. The dollar amount of any such assets and liabilities must be again stated, however, for each quarter.

I.      Statement of Assets as of _____.

List all assets owned by Cosmo Corigliano, Agnes T. Corigliano or any other member of their household, directly or indirectly, and all assets which are subject to their possession, enjoyment or control, regardless of whether legal title or ownership is held by a relative, trustee, lessor, or any other intermediary, including but not limited to the categories indicated below. For each asset identified below with a fair market value of greater than $1,000, describe the asset, identify the owner, state the form of ownership (e.g., individual, joint, beneficial interest), provide the name of the institution in which the asset is held and the account number, if any, and state a fair market value of the asset and how the fair market value was determined (i.e., most recent account statement, appraisal, estimate, etc.).

1.    Cash                                                    _____

2.    Cash surrender value of insurance                      _____

3.    Accounts receivable                                    _____

4.    Loans or notes receivable                              _____

5.    Real estate                                            _____

6.    Furniture and Household Goods                          _____

7.    Automobiles                                            _____

8.    Securities                                             _____

9.    Partnership interests                                  _____

10.   Net value of ownership interest in business            _____

1

11.    IRA, Keogh, 401(K) or pension accounts

12.    Other (itemize) _____

_____

Total Assets

**II.    Liabilities as of** _____.

List all liabilities, including but not limited to the items listed below.  Identify original principal amount of the liability, the amount remaining to be paid, the monthly payment, if any, the name of each creditor, the account number of the debt, if any, and the basis for reporting the liability (e.g., recent account statement, estimate, etc.).

1.    Mortgages

2.    Auto loans

3.    Credit card debt

4.    Loans on insurance policies

5.    Installment loans

6.    Other loans or notes payable

7.    Other (itemize):

_____

**III.    Income/Expenses**

A. Income

List all income over $1,000 from any source received during the quarter.  Identify the source of the income and the amount.

1.    Salary/wages

2.    Consulting fees

3.    Dividends

4.    Interest

2

SEC0051

5.  Annuities

6.  Pensions                                                    _____

7.  Rents/royalties                                             _____

8.  Sales of assets                                             _____
    [Note: asset sales, other than those conducted by fund or portfolio managers or
    pursuant to distribution of dividends and capital gains for such accounts, require the
    written consent of the Division of Enforcement]

9.  Repayment of loans

10. Gifts                                                       _____

11. Other (itemize)    _____            _____
    _____

B. Expenditures

Total approximate expenditures for the quarter: _____

List each expenditure over $5,000:

Identify any expenditure over $2,000 which is not within a category of the budget
which was Attachment B to your agreement with the Division of Enforcement. _____
_____

3

## C. Budget Compliance

Based upon expenditures to date, it is our belief that our expenditures are within the range provided in the annual budget described as Attachment B to our agreement with the Division of Enforcement of the Securities and Exchange Commission providing for expenditure limits.

[Check one]

Yes _____

No _____

If No, explain in what categories you expect to exceed the budget, why, and by how much.

_____

I declare that I have examined the information given in this statement and, to the best of my knowledge and belief, it is true and complete.

_____
COSMO CORIGLIANO

I declare that I have examined the information given in this statement and, to the best of my knowledge and belief, it is true and complete.

_____
AGNES T. CORIGLIANO

4

SEC0053

# EXHIBIT B-L

03·05/01  19:25 FAX 212 715 8051      KRAMER LEVIN                    ☒002·004

KRAMER LEVIN NAFTALIS & FRANKEL LLP

919 THIRD AVENUE
NEW YORK, N.Y. 10022 - 3852

GARY P. NAFTALIS
PARTNER
TEL (212) 715-9253
FAX (212) 715-9300
gnaftalis@kramerlevin.com

47, AVENUE HOCHE
75008 PARIS
FRANCE

March 5, 2001

Via Facsimile

Jonathan J. Lerner, Esq.
Samuel Kadet, Esq.
Skadden, Arps, Meagher & Flom LLP
Four Times Square
New York, New York 10036

Re:   Cendant Corporation

Dear Jon and Sam:

I write to follow up on our meeting a couple of weeks ago concerning Cendant's ongoing obligation to advance legal fees and expenses on behalf of our client, Cosmo Corigliano. I thought it might be useful if we supplied you with some additional authority supporting the fact that Mr. Corigliano's June 14, 2000 guilty plea does not constitute a "final disposition" of the criminal charges against him so that the Company's obligation to advance fees on his behalf with respect to that matter continues.

Cendant's by-laws provide that the Company shall advance fees and expenses on Mr. Corigliano's behalf in advance of the "final disposition" of any actions against him. As we have previously argued, the entry of a plea of guilty does not constitute the final disposition of a criminal action. There is overwhelming case and other law supporting this point. The Supreme Court has repeatedly held that the final disposition of a criminal action must, at a minimum, include the imposition of sentence. See, e.g., Teague v. Lane, 489 U.S. 288, 314 n.2 (1989) ("a criminal judgment necessarily includes the sentence imposed upon the defendant"); Flynt v. Ohio, 451 U.S. 619, 620 (1981) ("Applied in the context of a criminal prosecution, finality is normally defined by the imposition of the sentence."); Parr v. United States, 351 U.S. 513, 518 (1956) ("Final judgment in a criminal case means sentence." (quotation marks omitted)); Berman v. United States, 302 U.S. 211, 212 (1937) ("Final judgment in a criminal case means sentence.").[1]

---

[1] See also United States v. Douglas, 974 F.2d 1046, 1047-49 (9th Cir. 1992) (holding that defendant could not be convicted for being felon in possession of firearms for conduct engaged in following his guilty plea but prior to sentencing and entry of judgment); Aguilera-Enriquez v. INS, 516 F.2d 565, 570-71 (6th Cir. 1975) (holding that a conviction is final for deportation purposes only "[o]nce sentencing [on a guilty plea] is completed").

KL3 20913453

CONFIDENTIAL   SKD 002718

KRAMER LEVIN NAFTALIS & FRANKEL LLP

Jonathan J. Lerner, Esq.
March 5, 2001
Page 2

Similarly, federal courts have confirmed that a guilty plea, where sentence has not yet been imposed, is not admissible at trial for impeachment purposes as evidence of a criminal conviction. See United States v. Semensohn, 421 F.2d 1206, 1208 (2d Cir. 1970) (holding that "the defendant's former misdemeanor conviction lacked the certainty and finality to warrant its prejudicial use against him at trial ... for, though [he] had pleaded guilty to the misdemeanor charge, he had not been sentenced and could have sought to withdraw his plea prior to sentencing"); see also In re Adler, 1998 WL 160036, at *9 (Bankr. S.D.N.Y. 1998) (holding presentencing guilty plea inadmissible under Fed. R. Evid. 609).

Federal Rule of Criminal Procedure 32(e) also makes clear that a criminal action is not finally disposed of merely because a guilty plea has been entered. That Rule explicitly provides that a guilty plea may be withdrawn "for any fair and just reason." See also Fed. R. Crim. P. 11(e)(4) (court must give defendant an opportunity to withdraw a plea of guilty if court subsequently decided to reject the plea agreement); United States v. Hyde, 520 U.S. 670, 676 (1997) (Fed. R. Crim. P. 11(e)(4) "implements the commonsense notion that a defendant can no longer be bound by an agreement that the court has refused to sanction."). Courts have recognized a defendant's right to withdraw a plea of guilty in varied circumstances, notwithstanding a prior allocution. For example, a defendant may withdraw his plea if the government breaches a plea or cooperation agreement, see, e.g., Santobello v. New York, 404 U.S. 257, 262-63 (1971); if the government has failed to disclose Brady or Giglio material prior to the entry of the plea, see, e.g., United States v. Millan-Colon, 829 F. Supp. 620, 635-36 (S.D.N.Y. 1993); where the defendant entered the plea despite his or her legal innocence, see, e.g., United States v. Groll, 992 F.2d 755 (7th Cir. 1993); where the defendant received ineffective assistance of counsel in connection with the plea of guilty, see, e.g., United States v. Gaviria, 116 F.3d 1498, 1511-14 (D.C. Cir. 1997); where there is a "finding of judicial misconduct in connection with a plea proceeding," United States v. Anderson, 993 F.2d 1435, 1437 (9th Cir. 1993); or where the prosecutor induced the plea "by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g., bribes)," Brady v. United States, 397 U.S. 742, 755 (1970) (quotation marks omitted). In sum, the point remains that a guilty plea is just not a "final disposition" of a criminal case. Accordingly, Cendant's obligation to advance fees in the criminal matters continues unabated.

Moreover, the obligation to advance fees with respect to the criminal, or the ongoing civil cases, is, of course, separate from the question of who will bear ultimate liability for these funds. But, a company cannot delay the advancement of funds so as to render its obligations a nullity. Judge Haight recognized this dilemma in his second opinion on this issue in United States v. Weissman, 1997 WL 539774, at *9-10 (S.D.N.Y. Aug. 28, 1997). He specifically held that fees incurred prior to "judgment or other final adjudication," the relevant language in that matter, would have to be advanced to counsel even though a judgment adverse to the officer would be rendered before the fees were paid and even though it was unlikely that the officer would be able to reimburse the employer. He stated: "[A]dvancement provisions ensure that qualified officers will not be deterred from accepting employment by the possibility of civil or criminal litigation arising out of their employment . . . . I cannot see how these values

KL3 3091265.3

CONFIDENTIAL    SKD 002719

KRAMER LEVIN NAFTALIS & FRANKEL LLP

Jonathan J. Lerner, Esq.
March 5, 2001
Page 3

are served by constructing an advancement regime which ties the degree of advancement to the timing of the proceedings' conclusion and the employer's alacrity in turning over funds. Such an uncertain framework for securing payment of attorneys' fees would hardly enhance the ability of a corporate officer to obtain counsel. . . . Indeed, the issue before me does not concern [defendant's] ultimate liability for these funds." Id.

As we have also noted, Cendant's own legal and business considerations weigh in favor of its advancement of fees and expenses on Mr. Corigliano's behalf, even if he were not contractually entitled to advancement. When we next talk, I can elaborate on circumstances involving governmental investigations that I believe might be helpful to your evaluation in this regard. I would just note here that the Sentencing Guidelines for organizations and related authority support the point that it may be in a company's business interests to fund counsel for a cooperating witness in the context of a governmental investigation. By providing Mr. Corigliano with the financial wherewithal to hire competent counsel, Cendant assists Mr. Corigliano's ability to cooperate effectively with the government in its ongoing investigation, which in turn inures to Cendant's ultimate benefit. See, e.g., U.S.S.G. §8C2.5(g)(2); Winthrop M. Swenson, "An Effective Program to Prevent and Detect Violations of Law," in Kaplan et al. eds., Compliance Programs and the Corporate Sentencing Guidelines §4.08, n.5 ("[T]he organizational guidelines generally favor disclosure of the facts surrounding an offense. Full and adequate legal representation of individuals, to whom the guidelines separately provide incentives for disclosure, would seem to promote this policy objective." (citations omitted)).

I hope that this letter assists you in your review of Cendant's continuing obligation to advance Mr. Corigliano's legal fees and expenses in connection with the criminal action. This letter is sent without prejudice to all of Mr. Corigliano's rights and remedies, all of which are expressly reserved.

Best regards.

Sincerely yours,

Gary P. Naftalis

KL3:2041453

CONFIDENTIAL   SKD 002720