# EXHIBIT 7

*delivered*
*by hand to*
*B. Friedman*
*3/1/00 by DF*

# UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION

### STATEMENT OF FINANCIAL CONDITION OF
### COSMO CORIGLIANO

I.  **Statement of Assets and Liabilities as of** _____ :

A.  **Assets:**

List all assets owned by you, your spouse, or any other member of your household, directly or indirectly, and all assets which are subject to your or your spouse's possession, enjoyment, or control, regardless of whether legal title or ownership is held by a relative, trustee, lessor, or any other intermediary, including but not limited to the categories indicated below.

1.   Cash _____

2.   Cash Surrender Value of Insurance _____

3.   Accounts Receivable _____

4.   Loans or Notes Receivable _____

5.   Real Estate _____

6.   Furniture and Household Goods _____

7.   Automobiles _____

8.   Securities _____

9.   Partnership Interests _____

10.  Net Value of Ownership Interest
     in Business _____

11.  IRA, Keogh, 401(k), or Pension Accounts _____

12.  Other (Itemize) _____

13.  _____

14.  _____

15.  _____

**Total Assets** _____

DEFENDANT'S
EXHIBIT
60,013

PENGAD 800-531-6989

CCO231

**B.**   **Liabilities:**

List all liabilities, including but not limited to the items listed below.

|      |                                       |   |
|------|---------------------------------------|---|
| 1.   | Mortgages                             | _____ |
| 2.   | Auto Loans                            | _____ |
| 3.   | Credit Card Debt                      | _____ |
| 4.   | Loans on Insurance Policies           | _____ |
| 5.   | Installment Loans                     | _____ |
| 6.   | Other Loans or Notes Payable          | _____ |
| 7.   | Accrued Real Estate Taxes             | _____ |
| 8.   | Judgments/Settlements Owed            | _____ |
| 9.   | Other (Itemize):                      | _____ |
| 10.  | _____          | _____ |
| 11.  | _____          | _____ |
|      | **Total Liabilities**                 | _____ |

**C.**   **Net Worth (Assets Minus Liabilities)**   _____

D.     For each asset with a fair market value of greater than $1000, describe the asset, state the form of ownership (*e.g.*, individual, joint, beneficial interest), provide a fair market value, and explain how fair market value was determined (*e.g.*, appraisal, comparison, estimate, etc.).

E.     For each liability, indicate the date incurred; the original amount of the liability; the length of the obligation; the interest rate; the collateral or security, if any; who is responsible for the obligation; the outstanding balance; the name(s) and address(es) of all obligee(s); and your relationship (if any) to each creditor.

CCQ
234 Missing

**II.    Cash Flow Information**

**A.    Income/Receipts**

List all money or other income received from any source on a monthly basis by you, your spouse, or any other member of your household, identifying the source, recipient, and amount. For any income received on a basis other than monthly, convert to a monthly basis for the purposes of this statement.

| Description | Source | Amount |
|---|---|---|
| 1.   Salary/Wages | | |
| 2.   Commissions/Advances | | |
| 3.   Consulting Fees | | |
| 4.   Dividends | | |
| 5.   Interest | | |
| 6.   Annuities | | |
| 7.   Pensions | | |
| 8.   Rents/Royalties | | |
| 9.   Sales of Assets (Net) | | |
| 10.  Repayment of Loans | | |
| 11.  Payments on obligations made on your behalf by others | | |
| 12.  Fringe Benefits (*e.g.*, car) | | |
| 13.  Alimony/Child Support | | |
| 14.  Gifts/Bonuses | | |
| 15.  Other (Itemize) | | |
| 16. | | |
| **Total Receipts** | | |

CC0235

**B.**   **Expenses/Disbursements**

List all monthly expenditures for whatever purpose for you or your household for
the past 12 months, identifying the purpose and the amount, including projected
expenses. For any expenditure which varies from month to month, indicate a range
of amounts and the average amount on a monthly basis.

**Description**                                                    **Amount**

1.      Mortgage/Rent                       _____

2.      Food                                _____

3.      Utilities                           _____

4.      Payment on Loans                    _____

5.      Real Estate Taxes                   _____

6.      Insurance Premiums                  _____

7.      Medical Expenses                    _____

8.      Automobile Expenses                 _____

9.      Alimony/Child Support               _____

10.     Income Taxes                        _____

11.     Other Expenses (Itemize)            _____

12.     _____

13.     _____

14.     _____

15.     _____

        **Total Expenses/Disbursements**    _____

*/      If you anticipate unusual expenses in the coming 12 months, please describe them.

CC0236

### III.  Other Information

A.  List any disbursement having a value of $1000 or more, made on your behalf, or on behalf of your spouse or children, by any other person or entity in the last five years, the amount of the disbursement, and the name and address of the person or entity who made the disbursement.

B.  List all transfers of cash in an amount of $1000 or more, or assets or property with a cost or fair market value of $1000 or more, made by you in the last five years, and, if applicable, identify the value of the asset, the consideration received, and the relationship of the transferor to the transferee, or indicate that no such transfers have been made.

C.  Identify any financial institution accounts (other than those identified in Item I.F. above) in which you have deposited more than $1000 in the last five years, or indicate that no such deposits have been made.

7

D.    List all dependents, their ages, and whether or not they reside with you.

E.    Attach federal tax returns filed by you or on your behalf (including personal, trust, or business returns) in the last five years.

F.    Attach any federal gift tax returns filed by you or your spouse in the last five years.

G.    Attach any financial statement which the declarant has prepared in the last five years, for any purpose (*e.g.*, such as a financial statement provided to a bank to secure a loan).

Under penalties of perjury, I declare that I have examined the information given in this statement, and attached hereto, and, to the best of my knowledge and belief, it is true, correct, and complete. I further declare that I have no assets, owned either directly or indirectly, or income of any nature other than as shown in, or attached to, this statement. I understand that any material misstatements or omissions made by me herein or in any attachments hereto may constitute criminal violations, punishable under 18 U.S.C. § 1001.

_____

Cosmo Corigliano                          Date

Sworn before me this _____ day of _____, 2000.

_____
                Notary Public

My commission expires on _____.

- 8 -

CC0238

# EXHIBIT 8

# KRAMER LEVIN NAFTALIS & FRANKEL LLP

### 919 Third Avenue
### New York NY 10022
### (212) 715-9100

---

## Fax Department: (212) 715-9191

## Fax Number: (212) 715-8000

**FROM:** Alan R. Friedman, Esq.

**DATE:** May 26, 2000

**PHONE:** 212-715-9300

## PLEASE DELIVER AS SOON AS POSSIBLE TO:

| | RECIPIENT | COMPANY | FAX NO. | PHONE NO. |
|---|---|---|---|---|
| 1. | Thomas C. Newkirk, Esq. | Securities and Exchange Commission | 202-942-9636 | 202-942-4550 |

Total number of pages including this page: **6**

The documents accompanying this facsimile transmission are intended only for the use of the addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of the communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. Thank you.

LJ:2036669.1

KRAMER LEVIN NAFTALIS & FRANKEL LLP
919 THIRD AVENUE
NEW YORK, N.Y. 10022 - 3852

ALAN R. FRIEDMAN
PARTNER
TEL (212) 715-9500
FAX (212) 715-8000
grafriats@kramerlevin.com

47, AVENUE HOCHE
75008 PARIS
FRANCE

May 26, 2000

For Settlement Purposes Only
Via Facsimile

Thomas C. Newkirk, Esq.
Associate Director
Division of Enforcement
Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, D.C.  20549

Re:    In the Matter of Cendant Corporation, No. HO-3401

Dear Tom:

Pursuant to paragraph 12 of Mr. Corigliano's plea agreement and as part of his best efforts to settle any claims by the Commission, I enclose his asset, liability and asset transfer information.

When Gary returns to the office on Tuesday, we can discuss the remaining items on the financial disclosure form.

Best regards.

Yours sincerely,

Alan R. Friedman

Enclosure

KL3.2806567.1

United States
Securities And Exchange Commission

Statement Of Financial Condition
Of Cosmo Corigliano

I.   Statement of Assets and Liabilities as of, or about, April 2000[1]

   A.   **Assets:**

      1.   Cash

         Joint Checking Account with his wife, Terri          $5,700
         Corigliano, at People's Bank[2]

         Joint Savings Account with Terri Corigliano at       9,300
         People's Bank

         Joint Checking Account with Terri Corigliano at      44,400
         People's Bank

      2.   Real Estate

         Trumbull, Connecticut house where Mr.                180,000
         Corigliano's parents have resided since 1967[3]

      3.   Automobiles

         1993 Acura                              approximately 6,700[4]

         1965 Mercedes 230                       approximately 6,500[5]

---

[1]   All numbers rounded to the nearest hundred dollars and reflect best estimates based on currently available information. Amounts represent Mr. Corigliano's individual holdings, unless otherwise noted.

[2]   For purposes of this disclosure statement, we have listed the full balances in accounts owned jointly by Mr. and Mrs. Corigliano.

[3]   The Trumbull house was originally purchased by Mr. Corigliano's parents in about 1967, or approximately 33 years ago. They have continuously resided there since then. The house was transferred to Mr. Corigliano approximately eight years ago in or around 1992 when his parents were unable based on their own credit to obtain additional financing on the home. Mr. Corigliano became the owner of the property and then obtained the borrowing for his parents' benefit, based on his own credit as obligor.

[4]   Based on Kelley Blue Book (May 2000 edition) trade-in value.

[5]   Estimate based on NADA Guides Appraisal Report (May 2000 edition).

| | | | | |
|---|---|---|---|---|
| 4. | Securities | | in excess of 8,071,900 |
| 5. | IRA, Keogh, 401(k) or Pension Accounts | | 327,500 |
| 6. | Other | | |
| | 1985 Sabre sailboat, purchased 1994, joint ownership | | approximately 45,000 |

**B.**   <u>Liabilities:</u>

Negative Balance Due on Smith Barney Money Market Account — ($206,000)

**C.**   <u>Description of Assets:</u>

| | |
|---|---|
| One-family house in Trumbull, Connecticut, where Mr. Corigliano's parents have lived continuously since approximately 1967, estimate. | $180,000 |
| People's Bank, Special Savings, joint ownership | 9,300 |
| People's Bank, Checking, joint ownership | 5,700 |
| People's Bank, Checking, joint ownership | 44,400 |
| 1993 Acura, estimate based on Kelley Blue Book (May 2000 edition) trade-in value. | approximately 6,700 |
| 1965 Mercedes 230, estimate based on NADA Guides Appraisal Report (May 2000 edition) | approximately 6,500 |
| 1985 Sabre sailboat, jointly owned, estimate | approximately 45,000 |
| See response to paragraph I.E. for securities assets. | |

**D.**   <u>Description of Liabilities:</u>

Smith Barney Money Market Account Due — (206,000)

**E.**   <u>Description of Securities Assets and Accounts:</u>

| | |
|---|---|
| Fidelity CT Muni MM, joint ownership | 1,200 |
| Smith Barney Investment Funds, individual ownership | 2,042,300 |

- 2 -

CCO171

05/26/00   FRI 17:15 FAX 212 888 7066      KRAMER LEVIN                    @005

| | |
|---|---|
| Fairfield Capital Partners Investment Fund | 1,254,700 |
| Cendant Stock, individual ownership | 1,773,700[6] |
| Stock Options to Purchase Cendant Stock[7] | in excess of 3,000,000[8] |

F.    Description of Retirement Accounts:

Smith Barney, IRA                                          327,500

G.    Description of Credit Card Accounts:

Citibank, credit limit $21,000

Bank One, credit limit $10,500

---

[6]    130,777 shares at $13.5625 per share.  Closing price at 5/25/2000.

[7]    Mr. Corigliano presently holds Cendant stock options in the following amounts:  (i) 150,000 options with a strike price at $22.33 and an expiry date of July 24, 2006; (ii) 230,000 options with a strike price at $20.50 and an expiry date of April 21, 2007; and (iii) 82,316 options with a strike price at $37.50 and an expiry date of March 2, 2008. Mr. Corigliano received the 82,316 options in lieu of cash compensation of $500,000, to which he was otherwise entitled.  Moreover, prior to his termination by Cendant, Mr. Corigliano also held additional options to purchase 600,000 Cendant shares with a strike price of $31.375 and an expiry date of December 17, 2007, and options to purchase 300,000 Cendant shares with a strike price of $34.3125 and an expiry date of January 27, 2008, which he lost following his termination.

[8]    Valuations of the 380,000 options presently held by Mr. Corigliano are based on binomial or Black-Scholes models, which result in a value in excess of $3 million.  This estimated value does not include the 900,000 options he received in December 1997 and January 1998 and that he lost following his termination.

- 3 -

II.    Asset transfers subsequent to February 1, 1995:[9]

Dividing family assets based on financial and estate planning advice: Terri Corigliano, investment accounts in amount of $3,950,000.

Establishment of daughter Mary Corigliano's trust fund: $200,000.

Establishment of son Michael Corigliano's trust fund: $200,000

Establishment of son David Corigliano's trust fund: $200,000

$10,000 gift to each child's trust fund from joint account: total of $30,000

---

[9]    Pursuant to a real estate contract executed in October 1997, Terri Corigliano purchased a house in Greenwich, Connecticut for approximately $2,500,000. While not technically a transfer, Cosmo Corigliano was the original source of the funds used for the purchase of the home and the paydown of the mortgage on it (for which he was the obligor). The Corigliano family never resided in this house, which was sold in December 1998. The proceeds of that sale were paid to Mrs. Corigliano. The Corigliano family now lives in Old Saybrook, Connecticut in a home purchased by Terri Corigliano for approximately $1,745,000. Mrs. Corigliano also purchased Crystal Journey Candles, LLC for approximately $750,000, plus broker and other fees.

The Coriglianos' prior home in Stamford was jointly owned by them. The proceeds from the sale of that house, approximately $735,000, were paid to Mrs. Corigliano.

- 4 -

# EXHIBIT 9

# (Filed Under Seal)

# EXHIBIT 10



**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
450 Fifth Street, N.W., Stop-8-8
Washington, D.C. 20549-0808

DIVISION OF
ENFORCEMENT

James A. Kidney
Assistant Chief Litigation Counsel
Direct dial: 202-942-4797
Facsimile: 202-942-9581
Internet: kidneyj@sec.gov

July 20, 2000

Alan R. Friedman, Esq.
Kramer Levin Naftalis & Frankel, LLP
919 Third Avenue
N.Y., N.Y. 10022-3852

Harvey L. Pitt
Fried Frank Harris Shriver & Jacobson
1001 Pennsylvania Avenue, N.W.
Suite 800
Washington, D.C. 20004

<u>**VIA FACSIMILE**</u>

Dear Alan and Harvey:

This responds to Alan's letter and attachments dated July 19, 2000 in which a slightly revised budget for the Corigliano's is proposed and some additional information about the candle company is provided, along with certain representations about anticipated income for the family.

Before we can properly analyze this budget, we must have a complete list of the assets of the Corigliano family, including Mrs. Corigliano and the children. One reason we require this information is because it is now evident that one of the bases – perhaps the chief basis – on which the "budget" is defended is that it will be matched by income from existing assets. Moreover, we are entitled to the cooperation of the Coriglianos in providing this information – in detail – according to provisions of Mr. Corigliano's plea agreement. We also require production of the 1999 income tax returns of the Coriglianos, their parents and of the candle company. This information is necessary in order adequately to assess the reliability of the information you have provided and it is commonly provided the Commission as part of the statement of financial condition received from defendants and respondents in litigation.

We also require the information about family assets in order to fix whether these assets will have been dissipated pending resolution of our differences. We have requested this information in the past, and have received only limited disclosure. For example, on May 26, 2000, we received some asset information, but it was very general. The disclosure of Mrs. Corigliano's assets, other than those held jointly with her husband, was: "Terri Corigliano, investment accounts in amount of $3,950,000." We will require a detailed breakdown of the specific investment, where it is maintained (i.e., the name of the

CCQ174

DEFENDANT'S
EXHIBIT
965

Messrs. Friedman and Pitt
Page 2

brokerage and the account number), in whose name the account is maintained and recent account statements substantiating the existing principal.

I do not share your belief that the Coriglianos have provided a reasonable budget figure. By my calculation, they have arrived at a budget providing over $130,000 in living expenses for a family of five AFTER taxes and without the need to pay for shelter. This is the expendable budget of a fairly wealthy family. The median income for a married couple with children is less than $60,000 – gross. Of course, the Corigliano situation is aggravated by the tax, maintenance and utility costs of a $1.7 million house in a very expensive Connecticut town. That aside, the Coriglianos are proposing to spend nearly $80,000 on clothing, education, "educational expenses", food and "home upkeep" alone. Again, this is after taxes. This is hardly a budget that warrants hand wringing, much less the implication that family spending is cut to the bone.

Nevertheless, we hope to arrive at a budget agreement and we recognize that it may be more than we would like. However, if it is to be paid out of investment income, it is necessary that we be provided a detailed breakdown of the investment principal. Even if it were not, as I said, we also require this information to serve as a benchmark of assets for later in this litigation in the event it is not settled.

Please provide this information Monday via facsimile so that we may review it before our meeting with Judge Lechner.

Sincerely,

James A. Kidney

# EXHIBIT 11

KRAMER LEVIN NAFTALIS & FRANKEL LLP

919 THIRD AVENUE

NEW YORK, N.Y. 10022 · 3852

ALAN R. FRIEDMAN
PARTNER
TEL (212) 715-9300
FAX (212) 715-8000
afriedman@kramerlevin.com

47, AVENUE HOCHE
75008 PARIS
FRANCE

July 26, 2000

Via Facsimile

James A. Kidney, Esq.
Assistant Chief Litigation Counsel
Securities and Exchange Commission
Division of Enforcement
450 Fifth Street, N.W., Stop 8-8
Washington, DC  20549-0808

Dear Jim:

        I write in response to your July 20 letter to Harvey Pitt and me and to follow up
on our telephone conversation Friday.

        As you know, Mr. Corigliano has been a valuable, cooperating witness for many
months in the Government's continuing investigation of accounting irregularities at Cendant.
The Commission Staff has repeatedly confirmed that Cosmo has been always available and has
provided truthful and complete information of substantial assistance to the Government.  On
May 26, 2000, in aid of our efforts to settle the Commission's claims against Mr. Corigliano, I
supplied the Commission with detailed information about Cosmo's assets and transfers,
including, among other things, a complete list of his personal and joint assets, the securities he
holds, the brokerage firms where the accounts are located, as well as information about the
family residence and the candle business.  Moreover, although the plea agreement does not
confer on Mrs. Corigliano any obligations as to her asset information, her counsel, Harvey Pitt
and Audrey Strauss, have, in aid of settlement, given the Staff additional information relating to
Terri's total liquid assets.  While you may not be aware of it, they provided such information
orally and in a writing, as part of the more than $11 million settlement proposal they delivered to
the Commission.  The Staff, therefore, already has ample information available to confirm that
the assets, already described to it, would support interest payments of $165,000.

        Given these facts, we do not understand the basis for your most recent requests
for additional information beyond that already provided.  Prior to Mr. Corigliano's plea, we had
understood that the Commission would consent to the contemplated motion by the United States
Government to stay the action and that all the Staff sought were assurances from counsel that the
Coriglianos had no foreign bank accounts and were not secreting assets, acts that the Staff
confirmed they had no evidence of.  We readily gave those assurances.  Subsequent to Mr.
Corigliano's plea, those discussions evolved into the Staff's requests for the provision of the
several budgets that we have now sent to you.

KL3:2040296.2

DEFENDANT'S
EXHIBIT
968

KRAMER LEVIN NAFTALIS & FRANKEL LLP

James A. Kidney, Esq.
July 26, 2000
Page 2

In those budgets, we documented in detail the Coriglianos' living expenses over the past year, which were normal and regular and not extravagant. We showed that the proposed budget represented a considerable reduction from their prior year's expenses. At your request and in aid of obtaining a consensual resolution, we revised the budget figures downward twice. I explained that every further reduction to the budget -- in items like food, clothing, children's activities -- essentially comes out of Terri's and the children's daily living expenses. Such reductions are not required to avoid any dissipation of assets. Indeed, we provided these budgets to you principally in aid of attempting to amicably resolve this issue and facilitate a substantive, overall settlement negotiation. And while it is plain that the proposed budget would leave the Coriglianos living expenses within the interest generated by their assets, that was not our main argument or "defense" of the budget. In our conversations, you indicated that such a representation would be helpful in reaching agreement. I, therefore, provided it in my July 19 letter.

Although we think it clear that you have the information you need to evaluate the budget, in still another effort to achieve consensus, we inform you that Fried Frank will be providing you shortly with further particulars on Mrs. Corigliano's investment accounts. We believe that the Staff should then be in a position to accept the July 19, 2000 budget as sent to you. You should also be aware that on May 26, 2000, the Staff already received a listing of Cosmo's assets, that the family has not yet filed its 1999 tax returns, and that the candle company as an LLC does not file a separate return.

Please confirm to us whether the Staff is now prepared to agree to the July 19 budget.

Yours sincerely,

*Alan R. Friedman*

Alan R. Friedman

ARF/asb

cc:    Harvey Pitt, Esq.
       Audrey Strauss, Esq.

KL3:2044293.2

CCQ109

# KRAMER LEVIN NAFTALIS & FRANKEL LLP

### 919 Third Avenue
### New York NY 10022
### (212) 715-9100

---

## Fax Department: (212) 715-9191

## Fax Number: (212) 715-8000

**FROM:**   Alan R. Friedman, Esq.     **DATE:**     July 26, 2000
**PHONE:**   212-715-9300

## PLEASE DELIVER AS SOON AS POSSIBLE TO:

| | RECIPIENT | COMPANY | FAX NO. | PHONE NO. |
|---|---|---|---|---|
| 1. | James A. Kidney, Esq. | Securities and Exchange Commission | 202-942-9581 | 202-942-4797 |

Total number of pages including this page: 3

The documents accompanying this facsimile transmission are intended only for the use of the addressee and may contain information that is privileged and confidential. If you are not the intended recipient, you are hereby notified that any dissemination of the communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone. Thank you.

KL3:2042323.1