# EXHIBIT 12

KRAMER LEVIN NAFTALIS & FRANKEL LLP

919 THIRD AVENUE
NEW YORK, N.Y. 10022 - 3852

GARY P. NAFTALIS
PARTNER
TEL. (212) 715-9253
FAX (212) 715-9238
gnaftalis@kramerlevin.com

47. AVENUE HOCHE
75008 PARIS
FRANCE

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
ONE NEW YORK PLAZA
NEW YORK, N.Y. 10004-1980
(212) 859-8000

HARVEY L. PITT
PARTNER
TEL. (202) 639-7100
FAX (202) 639-7008
pittha@ffhsj.com

1001 PENNSYLVANIA AVE. N.W.
WASHINGTON, D.C. 20004-2505

August 28 , 2000

Richard H. Walker, Esq.
Director
Division of Enforcement
Securities and Exchange Commission
Mail Stop 8-1
450 Fifth St., N.W.
Washington, D.C. 20549-0801

Re:   **SEC v. Cosmo Corigliano, Anne M. Pember, et al., 00 Civ. 2873 (D. N.J.)**
      **(the "Action")**

Dear Mr. Walker:

This letter is an agreement by Cosmo Corigliano and Agnes T. Corigliano ("our clients"), whose signatures are executed below, not to secrete, spend or otherwise dissipate existing assets, identified in Attachment A hereto, by their actions or those of their family members, agents, or others under their direct or indirect control. This agreement permits limited expenditures, if necessary, from investment earnings of these assets to meet, but not to exceed, the budget described in Attachment B hereto, but for no other purpose. However, such expenditures from assets, if any, are permitted only (i) after all earned (i. e., non-investment income) of family members has been spent pursuant to the budget and (ii) if investment income exceeds the amount of withdrawals necessary to meet budgeted expenses. Should market conditions change so as to make meeting condition (ii) impractical, our clients and the Division shall consult as to such reasonable withdrawals from principal as may be necessary and appropriate to meet the budget, but any such withdrawals from principal shall be made only with the Division's written consent.

KL3:2048961 2

**DEFENDANT'S
EXHIBIT**

F-400

Our clients further agree that they will preserve the assets in Attachment A, to the extent market conditions permit, until this dispute is resolved. Should additional assets come into their possession before this dispute is resolved, those assets shall be added to those in Attachment A and be preserved and increased subject to the provisions of this agreement.

In order to insure that the provisions of this agreement are met, our clients agree to complete and provide to the Division of Enforcement the Statement of Assets, Liabilities and Expenditures in the form of Attachment C, hereto, on a quarterly basis, 20 days after the end of each quarter, beginning with the quarter ended September 30, 2000. Our clients also agree to provide such documentation as the Division may reasonably request in support of each such Statement.

Should it be necessary, in the judgment of our clients, to materially exceed budgeted living expenses as provided in Exhibit B, no such excess expenditure shall be made without first obtaining the written consent of the Division of Enforcement, which shall not be unreasonably withheld. Nor shall our clients, or any of their family members, agents or custodians of the assets identified in Attachment A, make any withdrawals, except as may be necessary to meet the spending provisions of the budget in Attachment B, or reallocate either ownership or the investment vehicle of any such assets, without the prior written consent of the Division of Enforcement.

By executing their signatures below, our clients agree to all of the provisions stated above and, further, agree that, should there be a material breach of this Agreement by them, the Commission may move the United States District Court for the District of New Jersey for such relief as the Commission may deem appropriate.

Our clients also understand and agree that they and the Securities and Exchange Commission may, upon 30 days notice, terminate this agreement, and move, on reasonable notice, to seek such interim or final relief as they or the Commission deem appropriate.

Further, our clients understand that any material breach of this agreement may be brought to the attention of the Court in the criminal matter to which Cosmo Corigliano has entered a guilty plea.

KL3 2048961 2

- 2 -

SEC0046

Nothing in this Agreement shall be deemed or construed as a waiver of any remedy, right or defense that the Commission or our clients have in the Action or an admission as to any defense or claim or the propriety of any relief, interim or final, that any party may seek therein or in any other proceeding.

Very truly yours,

Gary P. Naftalis
Kramer, Levin, Naftalis &
Frankel LLP
Counsel for Cosmo Corigliano

Harvey L. Pitt
Fried, Frank, Harris, Shriver & Jacobson
Counsel for Agnes T. Corigliano

I have read the foregoing letter to Richard H. Walker of the Securities and Exchange Commission and understand it fully. I hereby acknowledge that it sets forth my agreement with the Division of Enforcement of the Securities and Exchange Commission.

COSMO CORIGLIANO

SUBSCRIBED AND SWORN BEFORE ME THIS 20 DAY OF August, 2000

Notary

LILIYA SURIS
NOTARY PUBLIC, State of New York
No. 01SU6014860
Qualified in Kings County
Commission Expires Oct 19, 20 00

My Commission expires on October 19 2000

I have read the foregoing letter to Richard H. Walker of the Securities and Exchange Commission and understand it fully. I hereby acknowledge that it sets forth my agreement with the Division of Enforcement of the Securities and Exchange Commission.

AGNES T. CORIGLIANO

SUBSCRIBED AND SWORN BEFORE ME THIS 20 DAY OF August, 2000

Notary

LILIYA SURIS
NOTARY PUBLIC, State of New York
No. 01SU6014860
Qualified in Kings County
Commission Expires Oct 19, 20 00

My Commission expires on October 19 2000

- 3 -

KL3 2048961.2

## Attachment A: Assets of Cosmo Corigliano and Family
### [April 2000; July 2000 Spouse]

| | | |
|---|---:|---|
| **Cash** | | |
| People's Bank Jt. Checking Acct. No. 1 | 5,700 | |
| People's Bank Jt. Checking Acct. No. 2 | 44,400 | |
| People's Bank Jt. Savings Acct. | 9,300 | |
| People's Bank Spouse Checking Acct. | 60,000 | |
| **Real Estate** | | |
| Trumbull CT | 180,000 | |
| Old Saybrook, CT | 1,745,000 | |
| **Autos** | 13,200 | |
| **Securities** | | |
| Fidelity CT Muni Fund (Joint) | 1,200 | |
| Smith Barney Inv. Fund | 2,042,300 | |
| Fairfield Capital Partners | 1,245,700 | |
| Cendant Stock | 1,773,700 | [130,777 shares @ $13.5625/share] |
| Cendant Stock Options | 3,000,000 | ["in excess of"] |
| Vanguard Tax Exempt Investment Funds (Spouse) | 225,000 | |
| T. Rowe Price Tax Exempt Investment Funds (3 accts – Spouse) | | |
| Fidelity Tax Exempt Investment Funds (2 accts – Spouse) | 2,448,000 | |
| Merrill Lynch Equity Acct. (Spouse) | 1,230,000 | |
| Merrill Lynch Investment Fund (Spouse) | 504,000 | |
| **Pensions, IRA, Keough** | 214,000 | |
| Smith Barney IRA | 327,500 | |
| **Sailboat** | 45,000 | |
| Mary Corigliano Trust Fund | 200,000 | |
| Michael Corigliano Trust Fund | 200,000 | |
| David Corigliano Trust Fund | 200,000 | |
| Crystal Journey Candles LLC | 750,000 | [purchase price] |
| | | |
| **TOTAL** | 16,464,000 | |

8/1/00

## Attachment B:  Budget for Cosmo Corigliano and Family

**Family Expenses**

| | |
|---|---|
| Auto | |
| Insurance | 5,600 |
| Clothing | 6,400 |
| Tuition | 10,000 |
| Childrens' Activities:  Music Lessons, | 7,500 |
| Sports, etc. | |
| Food | 12,000 |
| Home Maint | 23,000 |
| Health Expenses (including insurance) | 16,000 |
| Real Estate & Property Taxes | 14,500 |
| Utilities | 25,000 |
| Miscellaneous | 21,000 |
| House Repairs/improvements | 10,000 |
| (one-time charges) | 17,000 |
| Income Taxes | 65,000 |
| | |
| **Subtotal** | **233,000** |
| | |
| Candle Company [one time expense] | 51,325 |
| | |
| **Subtotal** | **51,325** |
| | |
| **Cosmo parents** | |
| Food, utilities, insurance, medicine | 25,000 |
| Property Taxes | 3,800 |
| Subtotal | 28,800 |
| | |
| **Terri's Mother** | |
| Living Expenses | 12,000 |
| Property taxes | 8,000 |
| Subtotal | 20,000 |
| | |
| **GRAND TOTAL** | 333,125 |

8/1/00

Attachment C

## QUARTERLY STATEMENT OF ASSETS, LIABILITIES AND EXPENDITURES OF THE FAMILY OF COSMO CORIGLIANO AND AGNES T. CORIGLIANO

The following information is to be provided within 20 days after the close of each calendar quarter to James A. Kidney, Securities and Exchange Commission, Mail Stop 8-8, 450 Fifth St., N.W., Washington, D.C. 20549. Detailed asset and liability information provided in earlier reports need not be repeated if the account is reasonably identified below so that quarterly comparisons may be made, assuming there has been no change in such account information. The dollar amount of any such assets and liabilities must be again stated, however, for each quarter.

I.    Statement of Assets as of _____.

List all assets owned by Cosmo Corigliano, Agnes T. Corigliano or any other member of their household, directly or indirectly, and all assets which are subject to their possession, enjoyment or control, regardless of whether legal title or ownership is held by a relative, trustee, lessor, or any other intermediary, including but not limited to the categories indicated below. For each asset identified below with a fair market value of greater than $1,000, describe the asset, identify the owner, state the form of ownership (e.g., individual, joint, beneficial interest), provide the name of the institution in which the asset is held and the account number, if any, and state a fair market value of the asset and how the fair market value was determined (i.e., most recent account statement, appraisal, estimate, etc.).

1.    Cash                                         _____

2.    Cash surrender value of insurance           _____

3.    Accounts receivable                          _____

4.    Loans or notes receivable                    _____

5.    Real estate                                  _____

6.    Furniture and Household Goods                _____

7.    Automobiles                                  _____

8.    Securities                                   _____

9.    Partnership interests                        _____

10.   Net value of ownership interest in business  _____

1

11. IRA, Keogh, 401(K) or pension accounts _____

12. Other (itemize) _____

_____

Total Assets _____

## II. Liabilities as of _____.

List all liabilities, including but not limited to the items listed below. Identify original principal amount of the liability, the amount remaining to be paid, the monthly payment, if any, the name of each creditor, the account number of the debt, if any, and the basis for reporting the liability (e.g., recent account statement, estimate, etc.).

1. Mortgages

2. Auto loans _____

3. Credit card debt _____

4. Loans on insurance policies _____

5. Installment loans _____

6. Other loans or notes payable _____

7. Other (itemize): _____

_____

## III. Income/Expenses

### A. Income

List all income over $1,000 from any source received during the quarter. Identify the source of the income and the amount.

1. Salary/wages

2. Consulting fees _____

3. Dividends _____

4. Interest _____

_____

2

5.   Annuities                                        _____

6.   Pensions                                         _____

7.   Rents/royalties                                  _____

8.   Sales of assets                                  _____
     [Note: asset sales, other than those conducted by fund or portfolio managers or
     pursuant to distribution of dividends and capital gains for such accounts, require the
     written consent of the Division of Enforcement]

9.   Repayment of loans                               _____

10.  Gifts                                            _____

11.  Other (itemize) _____

B. Expenditures

Total approximate expenditures for the quarter: _____

List each expenditure over $5,000:

Identify any expenditure over $2,000 which is not within a category of the budget

which was Attachment B to your agreement with the Division of Enforcement. _____

_____

3

## C. Budget Compliance

Based upon expenditures to date, it is our belief that our expenditures are within the range provided in the annual budget described as Attachment B to our agreement with the Division of Enforcement of the Securities and Exchange Commission providing for expenditure limits.

[Check one]

Yes    _____

No    _____

If No, explain in what categories you expect to exceed the budget, why, and by how much.

_____

I declare that I have examined the information given in this statement and, to the best of my knowledge and belief, it is true and complete.

_____
COSMO CORIGLIANO

I declare that I have examined the information given in this statement and, to the best of my knowledge and belief, it is true and complete.

_____
AGNES T. CORIGLIANO

4

# EXHIBIT 13

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RECEIVED~CLERK
U.S. DISTRICT COURT

SECURITIES AND EXCHANGE COMMISSION,          :

                              Plaintiff,      :

                     v.                       :          00 Civ. No. 2873

COSMO CORIGLIANO, ANNE M. PEMBER,            :
CASPER SABATINO, and KEVIN T. KEARNEY,       :

                              Defendants,     :

AGNES T. CORIGLIANO, CARLETON H.             :
PEMBER IV, and MARY LOUISE SCULLY,           :

                              Relief Defendants.  :

## CONSENT OF DEFENDANT COSMO CORIGLIANO,
## RELIEF DEFENDANT AGNES T. CORIGLIANO, AND
## RELIEF DEFENDANT MARY LOUISE SCULLY

1.      Defendant Cosmo Corigliano ("Defendant Corigliano"), Relief Defendant Agnes

T. Corigliano ("Relief Defendant Corigliano"), and Relief Defendant Mary Louis Scully

("Relief Defendant Scully") each acknowledge having been served with the Amended

Complaint in this action, enter a general appearance, and admit the Court's jurisdiction over

him or her and over the subject matter of this action.

2.      Without admitting or denying the allegations of the Amended Complaint (except

as to personal and subject matter jurisdiction, which Defendant Corigliano, Relief Defendant

Corigliano, and Relief Defendant Scully admit), Defendant Corigliano, Relief Defendant

DEFENDANT'S
EXHIBIT

1060

Corigliano, and Relief Defendant Scully hereby consent to the entry of the Final Judgment as to

Defendant Cosmo Corigliano, Relief Defendant Agnes T. Corigliano, and Relief Defendant

Mary Louise Scully in the form attached hereto (the "Final Judgment") and incorporated by

reference herein, which, among other things:

> (a)    permanently restrains and enjoins Defendant Corigliano from violation of
>
> Section 17(a) of the Securities Act of 1933 ("Securities Act"), Sections 10(b)
>
> and 13(b)(5) of the Securities Exchange Act of 1934 ("Exchange Act"), and
>
> Exchange Act Rules 10b-5, 13b2-1, and 13b2-2; and from aiding and abetting
>
> violations of Sections 13(a), 13(b)(2)(A), 13(b)(2)(B), and 14(a) of the Exchange
>
> Act, and Exchange Act Rules 12b-20, 13a-1, 13a-13, and 14a-9; and
>
> (b)    orders Defendant Corigliano to pay disgorgement of his unjust
>
> enrichment, plus partial payment of prejudgment interest thereon, by
>
> surrendering all assets of Defendant Corigliano and Relief Defendant Corigliano,
>
> as well as certain assets held in trusts for which Relief Defendant Scully serves
>
> as trustee, with the exception of specific exempted assets, to a Court-appointed
>
> Receiver, but partially waives payment of prejudgment interest on that
>
> disgorgement, based on representations in financial statements, and other
>
> documents and information, submitted to the Commission by Defendant
>
> Corigliano and Relief Defendant Corigliano.

3.    Defendant Corigliano and Relief Defendant Corigliano agree and undertake to

transfer, no later than sixty days from the entry of the Final Judgment, all their assets, except for

2

specific exempted assets set forth below, to the Court-appointed Receiver as provided in the

Final Judgment, as disgorgement of the unjust enrichment of Defendant Corigliano, as alleged

in the Amended Complaint, together with partial payment of prejudgment interest on that

disgorgement. Said assets of Defendant Corigliano and Relief Defendant Corigliano shall

include, but are not limited to: (i) the entire balance of any and all financial depository or

brokerage institution accounts or investment funds in which Defendant Corigliano or Relief

Defendant Corigliano holds any interest, whether legal or equitable, including, but not limited

to, investment funds and checking, savings, money market, IRA, Keough, pension, or

investment accounts (with the exception of certain trust account balances enumerated in

Paragraph 6 below); (ii) any and all securities held by Defendant Corigliano or Relief

Defendant Corigliano (whether individually or jointly), including, but not limited to, any equity

securities or debt instruments of, or options, rights, or contracts for the purchase of securities of,

CUC International Inc. or Cendant Corporation; (iii) a 1985 Sabre sailboat; (iv) a 1965

Mercedes Benz automobile; (v) all interests of Defendant Corigliano and Relief Defendant

Corigliano in Crystal Journey Candles LLC; and (vi) any other assets of a value of $1,000 or

more in which Defendant Corigliano or Relief Defendant Corigliano had any direct or indirect

legal or beneficial ownership interest as of March 31, 2004, other than those enumerated in

Paragraph 6 below.

    4.     Relief Defendant Scully agrees and undertakes to transfer, no later than sixty

days from the entry of the Final Judgment, (1) all funds held in trust in the Mary Corigliano

Trust Fund, for which Relief Defendant Scully serves as Trustee, less a balance of $100,000 (as

determined as of the date of the transfer); (2) all funds held in trust in the David Corigliano Trust Fund, for which Relief Defendant Scully serves as Trustee, less a balance of $100,000 (as determined as of the date of the transfer); and (3) all funds held in trust in the Michael Corigliano Trust Fund, for which Relief Defendant Scully serves as Trustee, less a balance of $100,000 (as determined as of the date of the transfer), to the Court-appointed Receiver as provided in the Final Judgment.

5.    Defendant Corigliano and Relief Defendant Corigliano undertake and agree to prepare and submit to the Commission no later than one hundred and twenty days from the entry of the Final Judgment an affidavit under oath containing a detailed accounting setting forth the following information, as of March 31, 2004:

(a) all securities, funds, or other assets, which other assets cost or are presently worth at least $5,000, of Defendant Corigliano and Relief Defendant Corigliano held in the name of Defendant Corigliano or Relief Defendant Corigliano, or for the direct or indirect beneficial interest of Defendant Corigliano or Relief Defendant Corigliano, stating the location and disposition of each such asset. With respect to any items of personal property, said accounting shall consist of a statement of the total value of said personal property and an itemization of any individual item of a value or cost of $5,000 or more;

(b) each account with any financial institution or brokerage firm maintained in the name of Defendant Corigliano or Relief Defendant Corigliano, or held for the direct or indirect beneficial interest of Defendant Corigliano or Relief

4

Defendant Corigliano, or over which Defendant Corigliano or Relief Defendant Corigliano exercises or exercised control from January 1, 1996, to March 31, 2004; including, but not limited to, each account through which Defendant Corigliano or Relief Defendant Corigliano directed securities or other transactions at any time since January 1, 1996, or in which proceeds from such transactions were held;

(c) all transactions in amounts of $5,000 or more conducted in each account identified in subsection (b) of this Paragraph, and the disposition of proceeds of those transactions; and

(d) all gifts, assignments, and other transfers of assets in amounts of $5,000 or more by Defendant Corigliano or Relief Defendant Corigliano at any time from January 1, 1996, to March 31, 2004.

6.       Defendant Corigliano and Relief Defendant Corigliano, and all entities under their control, undertake and agree to transfer forthwith or to provide any and all necessary documents to allow transfer of all assets described in Paragraph 3 above, less such sums as are necessary to satisfy any loans or other encumbrances on said assets or taxes due on the disposition of said assets, to the Receiver appointed by the Court pursuant to the Final Judgment. Further, Defendant Corigliano and Relief Defendant Corigliano shall retain their interests in (i) their residence at     **REDACTED**     Old Saybrook, Connecticut; (ii) all furnishings and personal property therein; (iii) the residence in Trumbull, Connecticut, occupied by Defendant Corigliano's parents; (iv) all furnishings and personal property therein; (v) one

5

1996 Lexus automobile, (vi) one 1993 Acura automobile; (vii) a balance of $100,000 in the

Mary Corigliano Trust Fund, a balance of $100,000 in the Michael Corigliano Trust Fund, and

a balance of $100,000 in the David Corigliano Trust Fund, provided however that any balances

in any of those trust funds in excess of $100,000 (as determined as of the date of the transfer of

the remaining funds of the trust) shall be transferred to the Receiver appointed by the Court

pursuant to the Final Judgment.

     7.     Defendant Corigliano and Relief Defendant Corigliano further undertake and

agree that any assets which are derived from any assets legally or beneficially owned or

possessed by them during the period from January 1, 1996, to and including the date the Final

Judgment is entered, or from any assets which they obtained or controlled during this period,

(other than those excluded by Paragraph 6 above), will be transferred to the Receiver (or, in the

event that the receivership estate no longer exists, transferred directly to the Clerk of this

Court), irrespective of when those derived assets are discovered or are realized. Such derived

assets shall include, but not be limited to, any tax refunds, whether federal, state, or local,

received by Defendant Corigliano or Relief Defendant Corigliano for the calendar years 2000

through and including 2004. In the event of any dispute as to current or past legal or beneficial

ownership in such derived assets, Defendant Corigliano and Relief Defendant Corigliano

undertake and agree that they shall bear the burden of proving the absence of such legal or

beneficial ownership, that such derived assets were not legally or beneficially owned by or

possessed by others acting as their nominees, and that the transfer of such derived assets by or

through them was not done as a sham to conceal their true ownership. If the Receiver or the

Court finds that Defendant Corigliano or Relief Defendant Corigliano have met their burden of proof concerning such derived assets, then the parties agree that Defendant Corigliano and Relief Defendant Corigliano shall not be obligated to transfer such derived assets to the Receiver.

8.       Defendant Corigliano, Relief Defendant Corigliano, and Relief Defendant Scully agree and consent to the appointment of a Receiver by the Court who shall have the rights, powers, and duties enumerated in the Final Judgment. Defendant Corigliano, Relief Defendant Corigliano, and Relief Defendant Scully agree to cooperate fully with the Receiver and to provide him with such testimony, documents, and powers of attorney as the Receiver may require to locate, account for, and transfer assets to the receivership estate. Defendant Corigliano and Relief Defendant Corigliano specifically undertake and agree to waive any and all rights they may have under the laws of the United States or any other nation providing for the secrecy of their transactions with banks or other financial institutions and to provide all necessary letters, directions, and authorizations to facilitate and effectuate all inquiries and directions by the Receiver or the Commission to locate, account for, or transfer their assets.

9.       Defendant Corigliano and Relief Defendant Corigliano acknowledge that the Court is exempting certain assets from Defendant Corigliano's payment of prejudgment interest on his disgorgement, based on representations in financial statements, and other documents and information, submitted to the Commission by Defendant Corigliano and Relief Defendant Corigliano. Defendant Corigliano and Relief Defendant Corigliano further consent that if at any time following the entry of the Final Judgment the Commission obtains information

7

indicating that the representations to the Commission by Defendant Corigliano and Relief Defendant Corigliano concerning their assets, income, liabilities, or net worth were fraudulent, misleading, inaccurate, or incomplete in any material respect as of the time such representations were made, the Commission may, at its sole discretion and without prior notice to Defendant Corigliano or Relief Defendant Corigliano, petition the Court for an order requiring Defendant Corigliano to pay the unpaid portion of the prejudgment interest and postjudgment interest thereon. In connection with any such petition, the only issue shall be whether the financial information provided by Defendant Corigliano and Relief Defendant Corigliano was fraudulent, misleading, inaccurate, or incomplete in any material respect as of the time such representations were made. In any such petition, the Commission may move the Court to consider all available remedies, including but not limited to ordering Defendant Corigliano or Relief Defendant Corigliano to pay funds or assets, directing the forfeiture of any assets, or sanctions for contempt of the Court's Final Judgment. The Commission may also request additional discovery. Defendant Corigliano or Relief Defendant Corigliano may not, by way of defense to such petition: (1) challenge the validity of this Consent or the Final Judgment; (2) contest the allegations in the Amended Complaint; (3) assert that payment of prejudgment or postjudgment interest should not be ordered; (4) contest the amount of prejudgment or postjudgment interest; or (5) assert any defense to liability or remedy, including but not limited to any statute of limitations defense.

8

10.  Defendant Corigliano, Relief Defendant Corigliano, and Relief Defendant Scully waive the entry of findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

11.  Defendant Corigliano, Relief Defendant Corigliano, and Relief Defendant Scully waive the right, if any, to appeal from the entry of the Final Judgment.

12.  Defendant Corigliano, Relief Defendant Corigliano, and Relief Defendant Scully enter into this Consent voluntarily and represent that no threats, offers, promises, or inducements of any kind have been made by the Commission or any member, officer, employee, agent, or representative of the Commission to induce Defendant Corigliano, Relief Defendant Corigliano, or Relief Defendant Scully to enter into this Consent.

13.  Defendant Corigliano, Relief Defendant Corigliano, and Relief Defendant Scully agree that this Consent shall be incorporated into the Final Judgment with the same force and effect as if fully set forth therein.

14.  Defendant Corigliano, Relief Defendant Corigliano, and Relief Defendant Scully will not oppose the enforcement of the Final Judgment on the ground, if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and hereby waive any objection based thereon.

15.  Defendant Corigliano, Relief Defendant Corigliano, and Relief Defendant Scully waive service of the Final Judgment and agree that entry of the Final Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant Corigliano, Relief Defendant Corigliano, and Relief Defendant Scully of its terms and conditions.  Defendant

Corigliano, Relief Defendant Corigliano, and Relief Defendant Scully further agree to provide counsel for the Commission, no later than thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit or declaration stating that they have received and read a copy of the Final Judgment.

16.     Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims asserted against Defendant Corigliano, Relief Defendant Corigliano, and Relief Defendant Scully in this civil proceeding. Defendant Corigliano acknowledges that no promise or representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant Corigliano waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy or civil penalty herein. Defendant Corigliano further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant Corigliano

10

understands that he shall not be permitted to contest the factual allegations of the Amended Complaint in this action.

17.    Defendant Corigliano understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegation in the complaint or order for proceedings." 17 C.F.R. § 202.5. In compliance with this policy, Defendant Corigliano agrees:  (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the Amended Complaint or creating the impression that the Amended Complaint is without factual basis; and (ii) that upon the filing of this Consent, Defendant Corigliano hereby withdraws any papers filed in this action to the extent that they deny any allegation in the Amended Complaint.  If Defendant Corigliano breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket. Nothing in this paragraph affects Defendant Corigliano's:  (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

18.    Defendant Corigliano hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to pursue reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant Corigliano to defend against this action.  For these purposes, Defendant Corigliano agrees that Defendant Corigliano is not the prevailing party in this action since the parties have reached a good faith settlement.

11

19.    Defendant Corigliano, Relief Defendant Corigliano, and Relief Defendant Scully

agree that the Commission may present the Final Judgment to the Court for signature and entry

without further notice.

12

20.    Defendant Corigliano, Relief Defendant Corigliano, and Relief Defendant Scully agree that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated: 4/16/04

_____
Cosmo Corigliano

On April 16, 2004, Cosmo Corigliano, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

_____
Notary Public
Commission expires:

My Commission Expires
April 30, 2004

Approved as to form:

_____
Gary P. Naftalis, Esq.
Kramer, Levin, Naftalis & Frankel
919 Third Avenue
New York, New York 10022
(212) 715-9100
Attorney for Defendant

13

20.    Defendant Corigliano, Relief Defendant Corigliano, and Relief Defendant Scully

agree that this Court shall retain jurisdiction over this matter for the purpose of enforcing the

terms of the Final Judgment.

Dated: 4/16/04

_____
Cosmo Corigliano

On April 16 , 2004, Cosmo Corigliano , a person known to me,
personally appeared before me and acknowledged executing the foregoing Consent.

_____
Notary Public
Commission expires:

**My Commission Expires**
**April 30, 2004**

Approved as to form:

_____
Gary P. Naftalis, Esq.
Kramer, Levin, Naftalis & Frankel
919 Third Avenue
New York, New York  10022
(212) 715-9100
Attorney for Defendant

13

Dated: 4/16/04

_____
Agnes T. Corigliano

On April 16, 2004, Agnes T. Corigliano, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

_____
Notary Public
Commission expires:

**My Commission Expires**
**April 30, 2004**

Approved as to form:

_____
Dixie L. Johnson, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
1001 Pennsylvania Avenue, N.W.
   Suite 800,
Washington, D.C. 20004-2505
(202) 639-7000
Attorney for Relief Defendant Agnes T. Corigliano

14

Dated: 4/16/04

Agnes T. Corigliano

On April 16, 2004, Agnes T Gorigliano, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

Notary Public
Commission expires:
My Commission Expires
April 30, 2006

Approved as to form:

Dixie L. Johnson, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
1001 Pennsylvania Avenue, N.W.
    Suite 800,
Washington, D.C. 20004-2505
(202) 639-7000
Attorney for Relief Defendant Agnes T. Corigliano

14

Dated: 4/16/04                          _Mary Louise Scully_
                                        Mary Louise Scully


On April 16, 2004, Mary Louise Scully, a person known to me,
personally appeared before me and acknowledged executing the foregoing Consent.


                                        _____
                                        Notary Public
                                        Commission expires:    *My Commission Expires*
                                                               *April 30, 2004*


Approved as to form:


_____
Frank P. Arleo, Esq.
622 Eagle Rock Avenue
West Orange, NJ  07052

Attorney for Relief Defendant Mary Louise Scully

Dated: 4/16/04

_Mary Louise Scully_
Mary Louise Scully

On April 16, 2004, _Mary Louise Scully_ a person known to me, personally appeared before me and acknowledged executing the foregoing Consent.

Notary Public
Commission expires: My Commission Expires
April 30, 2004

Approved as to form:

Frank P. Arleo, Esq.
622 Eagle Rock Avenue
West Orange, NJ  07052

Attorney for Relief Defendant Mary Louise Scully

# EXHIBIT 14



**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

*970 Broad Street, Suite 700*                    *(973) 645-2700*
*Newark, New Jersey 07102*

June 30, 2004

BY HAND

Barry S. Simon, Esq.
Williams & Connolly, LLP
725 Twelfth Street, N.W.
Washington, DC 20005

      Re:  United States v. Forbes, et al.
         No. 3:02CR264 (AWT)

Dear Mr. Simon:

      We write in response to your request for further
details of the conversations between counsel for Mr. Corigliano
and the Government on August 7, 1998 and November 11, 1998.

<u>Cosmo Corigliano</u>

      Please be advised that on or about August 7, 1998
counsel for Cosmo Corigliano provided the following information:

      With respect to the meeting held on or about March 9,
1998, concerning the usage of the Ideon reserve, it was discussed
that Anne Pember created the schedules used at the meeting and
that both Corigliano and Shelton have never seen those schedules
before the meeting.  Anne Pember also made the presentation of
what is in reserves, why she put items in the reserves and things
to that effect.  After the meeting Rabinowitz came in and made a
defense of the Ideon reserve and the way Anne had used it.

      After the merger, he was no longer in the financial
area, he was in the International area,  and did not know what
costs were being charged to the Cendant reserve.  He had no
responsibility for these charges, but does not deny the policy

**NOTE: The information in this letter conveys only the substance of discussions between
counsel for Mr. Corigliano and the Government based upon non-verbatim notes. The
information does not necessarily reflect statements made by Mr. Corigliano or statements
made on behalf of Mr. Corigliano by his counsel.**

Rec'd from M.Gerber
a:30 A.M.

was to be aggressive.  Pember no longer reported to Cosmo, maybe to Shelton, with a dotted line to Monaco, who is now CFO.

The philosophy for the reserves that came down to him was that Silverman wanted them to be as big as possible.  He understood that Silverman said to Forbes or Shelton that he, Silverman, was the King of purchase price accounting.  Corigliano understood that the reserve should be as large as it could be within proper limits.

With respect to the establishment and use of merger reserves by CUC, counsel advised that Corigliano speculated whether Casper Sabatino, who was not all that swift, could have screwed something up, possibly not keeping the necessary work papers to support the reserve.  Corigliano second guesses himself, but thought that the merger reserves were all right at the time.  Corigliano believes that they are all pretty competent. Anne Pember is very competent, but that Sabatino was less competent and that could have contributed to any problem with the reserves.

Corigliano was very upset about the Wall Street Journal story where Silverman and Monaco announced that there was a fraud.

Corigliano always wanted to explain himself. He did not feel deceived by Shelton and Forbes and feels his level of knowledge is not different than Shelton's, who was a very hands-on operating guy.  Forbes was more remote, but not as remote as he is saying now.

Please be advised that on or about November 17, 1998, counsel for Cosmo Corigliano provided the following information:

Corigliano said he had been mistreated by the company and that the audit report was biased.

On the evening of the 14th, both Corigliano and Shelton received phone calls from Forbes who told them not to come into the office anymore and that he can't talk to them.  Between then and the 17th they never got calls.

At a board meeting to which they were not invited, Silverman tried to get Corigliano fired.  They represented that Corigliano refused to cooperate and be interviewed which was a

NOTE: The information in this letter conveys only the substance of discussions between counsel for Mr. Corigliano and the Government based upon non-verbatim notes. The information does not necessarily reflect statements made by Mr. Corigliano or statements made on behalf of Mr. Corigliano by his counsel.

deliberate lie. It was falsely represented to the board that Speaks and Sabatino's affidavits implicated Corigliano by name.

Corigliano thought the audit report understated the knowledge of people on the HFS side regarding certain issues. Monaco and Forbes signed the 10-K.

In the summer of 1997, Monaco told Corigliano that he had no financial responsibilities until he took over in 2000. Corigliano resisted and they told him not to worry and gave him international responsibilities. He had no financial responsibility and did not function as CFO after 12/17/97. On 4/9 Silverman went out of his way to say Corigliano was not in the financial area.

Pre 12/97, Pember reported to Corigliano and Sabatino reported to Pember and not Corigliano. After the merger, Pember reported to Shelton. Corigliano was not in the chain of command anymore, so Pember was the top ranking accountant at CUC.

Monaco and Forbes were told by Shelton on 3/6 and by Pember on 3/9 that earnings were getting a boost from merger reserves. Everyone at both companies knew this including Walter Forbes. The notion that merger reserves were being used aggressively to boost earnings was well known and had been going on for years.

On 3/9 Pember showed up with a schedule showing how she had used the Ideon reserve and gave them all copies and walked them through the schedule. They hadn't seen the schedule before, but they knew what was going on. Then Rabinowitz came in and answered questions. Forbes and Monaco signed the 10-K.

Corigliano was not a knowing participant in a fraud, he did not falsify or instruct anyone else to falsify any matter. If there were things that were wrong, Corigliano does not know about them. If some things do not comport with proper accounting, it was not because he knowingly did anything wrong. He knew merger reserves were being used to increase earnings, but did not think this was improper. In meetings with Monaco and Silverman, Corigliano was told directly to make the Cendant merger reserves as large as possible. Walter Forbes also communicated this message to him. Corigliano was urged to estimate expenses liberally rather than conservatively as HFS was very comfortable with this position.

**NOTE: The information in this letter conveys only the substance of discussions between counsel for Mr. Corigliano and the Government based upon non-verbatim notes. The information does not necessarily reflect statements made by Mr. Corigliano or statements made on behalf of Mr. Corigliano by his counsel.**

Cosmo Corigliano attended a meeting with the senior management of both CUC and HFS where Monaco explained reserves. During the meeting, CUC represented that its reserves were exhaustive. Henry Silverman said they should go back and find more reserves. The AA report understates the knowledge of the people on the HFS side.

What items Anne Pember charged against the Ideon reserve was not known to Corigliano until March 9, 1998. He found it very convincing, however, as did Shelton and Ernst and Young. He understood Ernst & Young worked on reserves with Pember. Corigliano had a good memory of the 3/6-3/10 time period regarding what documents were created, who reviewed them, etc.

Kirk Shelton did all the talking at the March 6, 1998 meeting. Mr. Shelton had knowledge roughly equivalent to Corigliano. Shelton was a very hands-on operating guy, while Forbes was more remote. Everyone agrees that Kirk did the talking on March 6 except that Shelton is presently denying that he did the talking.

Corigliano does not understand how merger reserves can be allocated to revenues. Corigliano had no responsibility for charges to the Cendant merger reserves. Corigliano was supposedly shocked by the allegation that Anne Pember did things in the middle of the night. Corigliano believed that Ernst & Young had approved of everything that was done.

Corigliano never told anyone to make unsupported topside adjustments. He believed that the AA report was exculpatory in that Sabatino stated that he was unaware of unsupported topside adjustments while Stu Bell was CFO prior to 1995.

Prior to 1995 while Bell was there and Corigliano was responsible for topside adjustments, they were all supported. After Corigliano became CFO and Sabatino assumed responsibility for this area, the numbers were now unsupportable. Corigliano

**NOTE: The information in this letter conveys only the substance of discussions between counsel for Mr. Corigliano and the Government based upon non-verbatim notes. The information does not necessarily reflect statements made by Mr. Corigliano or statements made on behalf of Mr. Corigliano by his counsel.**

maintains that if any of the adjustments were made on an
unsupported basis, it was done by Sabatino alone.   Sabatino lied
about who is involved in the making of unsupported topside
adjustments.   Corigliano believed that whatever adjustments were
being made at that time were justified.   Corigliano denies that
he told Sabatino what adjustments to make.   It was Sabatino's job
to make the adjustments and Corigliano maintains that he lied
about Corigliano's directive.   Corigliano does not know if the
figures for the topsides are false or not.   Corigliano has no
knowledge of adjustments to revenue, including whether they were
part of topside adjustments in 1997.   These adjustments do not
make sense to Corigliano.   Sabatino was upset about not getting
the controller's job which Shelton decided to leave vacant.
Rivalry existed between Pember and Sabatino. When Pember got the
controller's job Sabatino was very bitter.   Corigliano got vibes
from Ernst & Young that Sabatino wasn't up to his job.   At one
point Corigliano stood up for Sabatino to keep him from getting
fired.   Sabatino had failed to provided Ernst & Young with
support for entries that he was too inept to find.   Sabatino was
incompetent and/or Sabatino cheated to make himself look good.

Corigliano thinks that management from HFS took
advantage of the situation and tried to make the accounting
problems appear as bad as possible.   It was never expected that
the stock would drop by 50 percent, maybe 5 percent.

Benefits attributable to the reserves were expected
from the beginning of the year. If they can see from the
beginning of the year that operations are at certain levels and
they know about reserves, they have every reason to suppose that
there are going to be adjustments, then they can do this.

NOTE: The information in this letter conveys only the substance of discussions between
counsel for Mr. Corigliano and the Government based upon non-verbatim notes. The
information does not necessarily reflect statements made by Mr. Corigliano or statements
made on behalf of Mr. Corigliano by his counsel.

Counsel informed the government that they had polygraphed Corigliano and that he had done very well. They invited the government to polygraph Mr. Sabatino.

Very truly yours,

CHRISTOPHER J. CHRISTIE
Special Attorney
U.S. Department of Justice


By: JOHN J. CARNEY
Special Attorney
U.S. Department of Justice


By: JAMES MCMAHON
Special Attorney
U.S. Department of Justice


By: RICHARD SCHECHTER
Special Attorney
U.S. Department of Justice

cc:  Thomas P. Puccio, Esq.
     Scott Edelman, esq.

**NOTE: The information in this letter conveys only the substance of discussions between counsel for Mr. Corigliano and the Government based upon non-verbatim notes. The information does not necessarily reflect statements made by Mr. Corigliano or statements made on behalf of Mr. Corigliano by his counsel.**