# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | No. 3:02CR264 (AHN) |
| WALTER A. FORBES. | ) ) ) | April 17, 2006 |

## MOTION OF DEFENDANT WALTER A. FORBES TO PRECLUDE THE GOVERNMENT FROM INTRODUCING ANALYSTS' REPORTS
### (Forbes Third Trial Motion *In Limine* No. 7)

Defendant Walter A. Forbes, through undersigned counsel, respectfully moves to preclude the government from introducing in to evidence any analysts' reports. Analyst reports constitute inadmissible hearsay, and thus cannot be admitted for the truth of the matters asserted in them. The only potentially relevant information contained in the analysts' reports that could be admitted for a non-hearsay purpose are the figures reflecting the analysts' projections of what CUC will earn in future periods. Yet that limited amount of information cannot justify admitting these lengthy exhibits, replete with hearsay and other extraneous information, in full. Further grounds in support of this Motion are set forth in the accompanying Memorandum.

Oral Argument Requested

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Dated: April 17, 2006

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing Motion of Defendant Walter A. Forbes to Preclude the Government from Introducing Analysts' Reports (Forbes Third Trial Motion *in Limine* No. 7) to be filed electronically and to be served on April 17, 2006 to the following via e-mail:

>Norman Gross, Esq. (norman.gross@usdoj.gov)
>Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
>Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

_____
Barry S. Simon

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | No. 3:02CR264 (AHN) |
| WALTER A. FORBES. | ) ) ) ) | April 17, 2006 |

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT
WALTER A. FORBES TO PRECLUDE THE GOVERNMENT
FROM INTRODUCING ANALYSTS' REPORTS
(Forbes Retrial Motion *In Limine* No. 7)**

Defendant Walter A. Forbes, through undersigned counsel, respectfully moves to preclude the government from introducing in to evidence any analysts' reports. Analyst reports constitute inadmissible hearsay, and thus cannot be admitted for the truth of the matters asserted in them. The only potentially relevant information contained in the analysts' reports that could be admitted for a non-hearsay purpose are the figures reflecting the analysts' projections of what CUC will earn in future periods. Yet that limited amount of information cannot justify admitting these lengthy exhibits, replete with hearsay and other extraneous information, in full.[1]

---

[1] The government introduced more than 15 analyst reports in the first trial, and 4 analyst reports in the second trial.

Oral Argument Requested

I.   **ANALYST REPORTS CONSTITUTE INADMISSIBLE HEARSAY, AND CANNOT BE ADMITTED FOR THE TRUTH OF THE MATTERS ASSERTED THEREIN.**

In the first two trials the government contended that analyst reports should be admitted for the truth asserted therein because they constitute "business records" of the publishing investment banks. See, e.g., Gov't Opp. to Forbes Retrial Motion *In Limine* No. 6, Docket No. 1720. Documents are not "business records" merely because they are found in the files of a business entity. Rather, for documents to qualify as "business records," the documents must satisfy each of the following three criteria: (1) it must be the regular practice of the business entity to make such documents, (2) the documents must be made at or near the time by, or from information transmitted by, a person with knowledge, and (3) it must be the regular practice of the business entity to keep such documents. Fed. R. Evid. 803(6). Even where these three criteria are met, if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness," the document should be precluded. Id.

It is well settled that analysts' reports do not qualify as the business records of the company that distributes them. Indeed, in Eisenstadt v. Allen, No. 95-16255, 1997 U.S. App. Lexis 9587, *5-9 (9th Cir. April 28, 1997), the court made no distinction between proffered newspaper articles and analysts' reports, holding that both fell within Federal Rule of Evidence 801(d)'s definition of hearsay, and that each lacked the requisite circumstantial guarantees of trustworthiness to qualify for any hearsay exception. Numerous courts have agreed. See, e.g., In re Cirrus

2


Logic Sec. Litig., 946 F. Supp. 1446, 1469 (N.D. Cal. 1996) (rejecting plaintiffs' argument that analysts' reports were admissible in securities litigation under the business records exception to the hearsay rule); In re Sybase, Inc. Sec. Litig., 48 F. Supp. 2d 958, 960 (N.D. Cal. 1999) ("analyst reports are inadmissible hearsay"). Cf. Crystal v. Foy, 562 F. Supp. 422, 431, n.35 (S.D.N.Y. 1983) (noting that analyst reports are hearsay statements "made by a third party without firsthand knowledge of [the company's books]").

That the analysts' reports are not sufficiently reliable to be admitted for the truth of the matter asserted is evidenced by the fact that the analysts' reports themselves contain disclaimers noting that the information contained in them may not be reliable. See, e.g., Ex. 1 at 1, footnote. (Bear Stearns analyst report, noting that "although the information contained herein has been obtained from sources believed to be reliable, its accuracy and completeness cannot be guaranteed").[2] Moreover, as Bear Stearns executive John Rosenwald testified during the first trial, the companies that issue analyst reports do so with the hope that their clients will follow their recommendations and invest in the company discussed. Tr. 5/10/2004 at 158. In essence, the reports are marketing tools used to promote the brokerage firm's products. Marketing tools, by their very nature, lack the level of reliability required to surmount the hearsay rule.

Exacerbating this unreliability problem is the fact that an analyst's company often has an added incentive in promoting the stock either because it has a

---

[2] We have attached the version of this exhibit admitted during the first trial. All but the first page was redacted for purposes of the second trial.

3

stake in the company itself, see, e.g., Ex. 1 at 18, footnote. ("Bear Stearns & Co. is a market maker in the security of this company and may have a long or short position in the security."), or because it has an investment banking relationship with the company that it wishes to enhance, see, e.g., id.  This alone provides analysts with financial incentives for being less than reliable.  There is no justification for introducing hearsay dripping with such self-motivation.  Thus, the analyst reports should be admitted only to the extent that there is a legitimate, non-hearsay purpose for doing so.

## II.  THE ONLY POTENTIALLY RELEVANT NON-HEARSAY PURPOSE FOR ADMITTING ANALYST REPORTS IS FOR THE EARNINGS PROJECTIONS CONTAINED THEREIN.

In the first two trials the analyst reports were purportedly admitted only for non-hearsay purposes.  In fact, however, the government was permitted both to use the reports for the truth of the matters asserted therein with regard to purported statements of CUC management, and to elicit wide-ranging testimony concerning the analysts' opinions and recommendations that are wholly irrelevant to the allegations of the indictment.

### A. "Communications with Investors" Does Not Qualify as "Non-Hearsay".

In the first two trials, the Court allowed the analysts' reports in over objection for the "limited purpose" of evidencing "communications with investors," concluding that this was "not for the truth asserted."  See, e.g., Tr. 4/21/2004 at 202.  This "solution" does not resolve the hearsay problem.  Even when the reports attribute a purported statement to a specific individual (which was generally not the

4

case), the reports are still being admitted for the truth of the matter asserted in them – that Mr. Forbes or the alleged co-conspirators purportedly made particular statements or representations.  For example, if an analyst report stated, "Mr. Corigliano, the CFO, advises that the company expects growth in the range of 12% in the fourth quarter due to expected strong software sales," and that statement were being offered as evidence of Mr. Corigliano's communications with investors, then the analyst report is being offered for the truth of the matter asserted – that Mr. Corigliano in fact made that statement.

        Compounding this problem, the government read into the record sections of analysts' reports, the source of which was unknown.  These portions of the reports may have been based on statements from persons not alleged to be part of the conspiracy, or on sources from <u>outside</u> CUC altogether.  See, e.g., Tr. 9/21/2004 at 12,994 (reading into the record an analyst report's discussion of 11 lawsuits outstanding against Ideon, and concluding "CUC's management have known Mr. Halmos for a number of years, which could help in the settlement of the suits.")  <u>See</u> also Tr. 10/31/2005 at 1335 (second trial testimony regarding the purported beliefs of unidentified "CUC management").  Such statements constitute double hearsay since they cannot possibly qualify as co-conspirator statements, and are irrelevant to the allegations of the indictment since they cannot be part of the fraudulent scheme.

        An analyst, who would be subject to cross-examination, may be able to testify to statements made to him or her by Mr. Forbes or an alleged co-conspirator,

5

but the analysts' reports containing these purported statements are classic hearsay. They should not be admitted for this purported "limited purpose."

### B. Analysts' Opinions and Recommendations Are Irrelevant to the Allegations of the Indictment.

The indictment alleges that CUC management would provide analysts with "predictions" or "guidance" concerning the company's expected earnings; Indictment, Count 1, ¶ 15; that relying at least in part on this guidance, the analysts would then publish their own earnings estimates, which were closely followed by the investment community, id.; and that because a failure to meet or exceed the analysts' expectations typically resulted in a decline in stock price, id., the co-conspirators allegedly adjusted their reported earnings to ensure that they always met or exceeded the analysts' expectations.[3] Aside from these earnings expectations, however, the indictment says nothing about analysts' theories, analyses, or recommendations. Thus, while the defense does not dispute that the projected earnings published in analyst reports may be relevant in light of these allegations, the defense does object to the admission of the discussion and recommendation portions of analysts' reports.

Despite this objection, the government was permitted to elicit wide-ranging testimony concerning the contents of the analyst reports during the first

---

[3] The government has not been consistent with what it means by this allegation. In the first trial, the government presented a theory that the co-conspirators were targeting consensus earnings projections – i.e., the average of several analysts' expectations. In the second trial, in contrast, the government presented the theory that the co-conspirators were targeting the earning projections of Bear Stearns analyst Steven Kernkraut.

6

trial. For example, the government repeatedly asked Mr. Corigliano to read what particular analysts' opinions were – to "buy" or "not buy." See, e.g., Tr. 7/1/2004 at 6839. Similarly, during the cross-examinations of Mr. Shelton and Mr. Forbes during the first trial, the government would read into the record the analysis portion of an analyst report, and then ask the witness to comment upon it. See, e.g., Tr. 9/28/2004 at 13909 (asking Mr. Forbes, "What do you understand [the analyst] to be saying in the sentence that says, 'We continue to believe that CUC should trade at a multiple – should trade a multiple at least in line with its growth rate and have a 12-month target price of $40 to $45.'"); Tr. 9/28/2004 at 13925 (asking Mr. Forbes to comment upon the analyst's statement that "CUC's stock came under great pressure after the company announced its intent to buy two software companies"). These portions of the analysts' reports that the government introduced are wholly irrelevant to the charges against Mr. Forbes, and should not have been admitted in to evidence.

While the government was a bit more limited in the second trial, the government still went beyond the permissible area of earnings forecasts. During the testimony of Mr. Kernkraut, a former Bear Stearns analyst, the government had the witness read the "strong buy" recommendation into the record, and then testify as to what that meant. Tr. 10/18/2005 at 226. And during the testimony of Mr. Corigliano, the government had Mr. Corigliano read into the record the following statement from an analyst report: "More important, CUC will be establishing a $100 million reserve for outstanding litigation, transaction fees and

7

restructuring costs. CUC's management believes that this reserve will amply cover any potential liability that might arise from these lawsuits." Tr. 10/31/2005 at 1335.

What any particular analyst may have thought about CUC during the period from the late 1980s through April 15, 1998 is utterly irrelevant to the allegations of the indictment. The government should be precluded from introducing this improper evidence during the third trial.

## CONCLUSION

For the foregoing reasons, Mr. Forbes respectfully requests that the government be precluded from introducing in to evidence any analysts' reports.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: /s/ Brendan V. Sullivan, Jr.
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

8

                                                James T. Cowdery (Bar No. ct05103)
                                                Thomas J. Murphy (Bar No. ct07959)
                                                COWDERY, ECKER & MURPHY, L.L.C.
                                                750 Main Street
                                                Hartford, CT 06103-2703
                                                (860) 278-5555 (phone)
                                                (860) 249-0012 (fax)
                                                tmurphy@cemlaw.com (e-mail)

                                                Attorneys for Walter A. Forbes

Dated:  April 17, 2006

9

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Memorandum in Support of Motion of Defendant Walter A. Forbes to Preclude the Government from Introducing Analysts' Reports (Forbes Third Trial Motion *in Limine* No. 7) to be filed electronically and to be served on April 17, 2006 to the following via e-mail:

Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

_____
Barry S. Simon