# EXHIBIT 1

This is G o o g l e's cache of http://www.sec.gov/news/press/2002-128.htm as retrieved on Nov 9, 2005 07:48:02 GMT.
G o o g l e's cache is the snapshot that we took of the page as we crawled the web.
The page may have changed since that time. Click here for the current page without highlighting.
This cached page may reference images which are no longer available. Click here for the cached text only.
To link to or bookmark this page, use the following url: http://www.google.com/search?q=cache:excL0Sgi8fMJ:www.sec.gov/news/press/2002-128.htm+Sarbanes+Oxley+certify+10K&hl=en

Google is neither affiliated with the authors of this page nor responsible for its content.

These search terms have been highlighted: **sarbanes oxley certify**
These terms only appear in links pointing to this page: **10k**

Home | Previous Page

U.S. Securities and Exchange Commission

## Commission Approves Rules Implementing Provisions of Sarbanes-Oxley Act, Accelerating Periodic Filings, and Other Measures

**FOR IMMEDIATE RELEASE**
**2002-128**

*Washington, D.C., August 27, 2002* —The Commission took the following actions at its open meeting today. The full text of detailed releases concerning each of these items will be posted to the SEC Web site as soon as possible.

1. The Commission approved a delegation to the General Counsel to issue certain orders in Commission administrative proceedings. The delegation authorizes the General Counsel to issue orders, pursuant to Rule of Practice 411(b), under which the Commission would take up on its own motion the issue of what sanctions are appropriate in the public interest.

2. The Commission adopted amendments to accelerate the filing deadlines for quarterly reports on Form 10-Q, and annual reports on Form 10-K, required under the Exchange Act. The Commission also adopted new disclosure regarding access to reports on company Web sites.

   The changes accelerate reports for domestic companies that:

   - Have a public float of at least $75 million;
   - Have been reporting for at least 12 months;
   - Have previously filed one annual report; and
   - Are not eligible to use the Commission's special forms for small business issuers.

   The changes to filing deadlines will be phased in over three years, with no change for the first year. The annual report deadline will remain 90 days for the first year, change to 75 days for year two, and change to 60 days for year three and thereafter. The quarterly report deadline will remain 45 days for the first

year, change to 40 days for year two, and change to 35 days for year three and thereafter. The first reductions-to 75 days for annual reports and 40 days for quarterly reports-would occur for accelerated filers with fiscal years ending on or after Dec. 15, 2003.

Regarding disclosure of Web site access to reports, an accelerated filer will be required to disclose in its Form 10-K, beginning with reports for fiscal years ending on or after Dec.15 of this year, whether the company makes its periodic and current reports available, free of charge, on its Web site as soon as reasonably practicable after such material is electronically filed with, or furnished to, the Commission.

This acceleration of the periodic reports will occur less quickly than originally proposed by the Commission in April. The original proposals would have accelerated annual reports from 90 to 60 days and quarterly reports from 45 to 30 days. The proposals did not include a phase-in period. The Commission received responses from more than 300 commentators, falling generally into two groups. The first group, representing investors and other users of company reports, uniformly supported the proposals and the Commission's objective to provide investors with more timely access to company filings. The other group, consisting primarily of companies, business associations, law firms and accounting firms, opposed the proposals as written because, in their view, the proposed timeframes were too short, and could result in less accurate filings. While many did not believe any acceleration was warranted, a large number, including most business associations, generally supported the Commission's objectives, and offered alternatives to reduce potential costs and burdens. These included a more gradual phase-in or transition period, and a less extensive acceleration of deadlines. Also, while comments were mixed, more believed it would be more difficult to accelerate the quarterly report, than the annual report. As the Commission stated in its proposing release, establishing filing deadlines requires a balance between the market's need for information with the time companies need to prepare that information. Accordingly, after carefully studying the comments, the Commission staff recommended the modifications that were adopted today by the Commission.

3. The Commission adopted rules under the Securities Exchange Act of 1934 and the Investment Company Act of 1940 that require an issuer's principal executive officer and principal financial officer to **certify** the contents of the issuer's quarterly and annual reports. The rules will implement Section 302 of the **Sarbanes-Oxley** Act of 2002, which was enacted into law on July 30, 2002. Section 302 directed the Commission to adopt, by Aug. 29, 2002, rules requiring issuers' principal executive and financial officers to **certify** their quarterly and annual reports. These new rules supersede the certification proposal included in the Commission's June 14, 2002 release.

**Highlights of the New Rules**

**Contents of Certification**

New Exchange Act Rules 13a-14 and 15d-14 will require an issuer's principal executive and financial officers each to **certify**, with respect to the issuer's quarterly and annual reports filed or submitted under Section 13(a) or 15(d) of the Securities Exchange Act of 1934, that:

- he or she has reviewed the report;

- based on his or her knowledge, the report does not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under

which such statements were made, not misleading;

- based on his or her knowledge, the financial statements, and other financial information included in the report, fairly present in all material respects the financial condition and results of operations of the issuer as of, and for, the periods presented in the report;

- he or she and the other certifying officers:

    - are responsible for establishing and maintaining "disclosure controls and procedures" (a newly-defined term reflecting the concept of controls and procedures related to disclosure) for the issuer;

    - have designed such disclosure controls and procedures to ensure that material information is made known to them, particularly during the period in which the periodic report is being prepared;

    - have evaluated the effectiveness of the issuer's disclosure controls and procedures within 90 days of the date of the report; and

    - have presented in the report their conclusions about the effectiveness of the disclosure controls and procedures based on the required evaluation;

- he or she and the other certifying officers have disclosed to the issuer's auditors and to the audit committee of the board of directors (or persons fulfilling the equivalent function):

    - all significant deficiencies in the design or operation of internal controls (a pre-existing term relating to internal controls regarding financial reporting) which could adversely affect the issuer's ability to record, process, summarize and report financial data and have identified for the issuer's auditors any material weaknesses in internal controls; and

    - any fraud, whether or not material, that involves management or other employees who have a significant role in the issuer's internal controls; and

- he or she and the other certifying officers have indicated in the report whether or not there were significant changes in internal controls or in other factors that could significantly affect internal controls subsequent to the date of their evaluation, including any corrective actions with regard to significant deficiencies and material weaknesses.

The new rules will apply to the principal executive and financial officers of any issuer that files quarterly and annual reports with the Commission under either Section 13(a) or 15(d) of the Exchange Act, including foreign private issuers and small business issuers. The new rules will require that the certification be included in annual reports on Forms 10-K, 10-KSB, 20-F and 40-F, quarterly reports on Forms 10-Q and 10-QSB and amendments to any of the foregoing reports. The staff of the Commission's Division of Corporation Finance will release a statement regarding compliance with the certification requirements of Exchange Act Rules 13a-14 and 15d-14 by asset-backed issuers.

**Disclosure Controls and Procedures**

New Exchange Act Rules 13a-15 and 15d-15 will require an issuer to establish and maintain an overall system of disclosure controls and procedures that is adequate to meet its Exchange Act reporting obligations. These rules are

intended to complement existing requirements for reporting companies to establish and maintain systems of internal controls with respect to their financial reporting obligations.

Comments on the question of certification of proxy statements should be received within 30 days of the date of publication of the rules in the *Federal Register*. The rules will apply to reports filed after Aug. 29, 2002.

### Registered Investment Companies

New Investment Company Act Rule 30a-2 will implement the certification requirement of Section 302 for registered investment companies. Rule 30a-2 will require the principal executive and financial officers of a registered investment company that files periodic reports under Section 13(a) or 15(d) of the Exchange Act to **certify** the company's semi-annual reports on Form N-SAR, as well as the financial statements on which the financial information in Form N-SAR is based. Form N-SAR is the form designated for registered investment companies to comply with their periodic reporting requirements under the Exchange Act.

In addition, the Commission voted to propose amendments designed to better implement the intent of Section 302 of the **Sarbanes-Oxley** Act of 2002 with respect to registered investment companies. These proposed amendments would:

- require registered management investment companies, including mutual funds, to file certified shareholder reports with the Commission, on a new Form N-CSR. These certified shareholder reports would consist of a copy of any required shareholder report, information regarding the company's disclosure controls and procedures, and the certifications required by Section 302;

- require all registered investment companies to maintain, and regularly evaluate, disclosure controls and procedures designed to ensure that the information required in all its disclosure documents is collected, processed, and disclosed on a timely basis; and

- uniformly apply to all registered investment companies, and not just those required to file periodic reports under the Exchange Act, the requirement to include a certification of their principal executive and financial officers in their reports on Form N-SAR.

Comments on the proposed amendments should be received within 30 days of the date of their publication in the *Federal Register*. The rules will apply to reports filed after Aug. 29, 2002.

4. The Commission voted to adopt rule and form amendments to implement the accelerated filing deadline applicable to change of beneficial ownership reports required to be filed by officers, directors and principal security holders under Section 16(a) of the Securities Exchange Act of 1934, as amended by Section 403 of the **Sarbanes-Oxley** Act of 2002. The Commission announced in Exchange Act Release No. 46313 (Aug. 6, 2002) that it would consider adopting such amendments. The amendments:

    - Conform all references to the Form 4 filing deadline to the amended statutory filing deadline;

    - Require transactions between officers or directors and the issuer previously reportable on an annual basis on Form 5 to be reported within

two business days on Form 4; and

- Modify the Form 4 reporting deadline for certain transactions, if the insider does not select the date of execution. For these transactions, the reports must be filed within two business days after the insider receives notice of the transaction, but the notification date may be no later than the third business day after the transaction is executed. These transactions are:

    o Transactions pursuant to Rule 10b5-1(c) arrangements; and

    o Specified plan transactions defined as "Discretionary Transactions," such as fund-switching transactions, pursuant to employee benefit plans.

The rule and form amendments apply to transactions executed on or after Aug. 29, 2002. Comments on the amendments and related issues should be received no later than Sept. 30, 2002.

5. The Commission voted to grant a de minimis exemption from the trade-through restrictions of the Intermarket Trading System Plan for transactions in exchange-traded funds tracking the Nasdaq-100 Index (QQQs), the Dow Jones Industrial Average (DIAMONDs), and the Standard and Poors 500 Index (SPDRs). The exemption will cover transactions that are executed at no more than three cents ($0.03) away from the national best bid and offer displayed in the Consolidated Quote. The exemption will be effective for nine months commencing on the date of publication of the order in the *Federal Register*.

    The Commission also directed the Division of Market Regulation to present a proposal for a series of interactive public meetings on aspects of market structure. In order to facilitate the Commission's decisionmaking, and give the public the opportunity to become better informed on this range of important issues, the Commission expects that the meetings will involve market participants, as well as experts from the financial service industry, corporate America and academics, in discussions of the steps, and alternatives, for improving the national market system.

6. The Commission voted to adopt rule amendments and a new rule under the Securities Exchange Act of 1934 that were proposed for comment in the *Federal Register* on June 10, 2002. New paragraph (e) of Rule 10b-10 and new Rule 11d2-1 are designed to clarify the disclosures broker-dealers effecting transactions in security futures products in futures accounts must make in the confirmations sent to customers regarding those transactions.

7. The Commission decided to propose amendments to Exhibit A to Exchange Act Rule 15c3-3 in light of the anticipated trading of security futures products under the Commodity Futures Modernization Act of 2000. Exhibit A sets forth the formula, commonly called the "Reserve Formula," for calculating the amount a broker-dealer must deposit in a reserve bank account for the protection of customer assets, as required under Rule 15c3-3. The proposed amendments delineate the treatment under the Reserve Formula of customer margin related to security futures products required and on deposit with clearing entities. The proposed amendments are designed to minimize regulatory costs associated with conducting a customer business in security futures products. Generally, the proposed changes would permit a broker-dealer, subject to specified conditions, to include the amount of customer security futures product margin required and on deposit at a clearing house as a debit in the Reserve Formula. One of those conditions is that a broker-dealer obtain from its DCO an undertaking, which is provided to the Commission, that confirms that representatives of the Commission may examine the DCO for compliance with

requirements of Rule 15c3-3a. The Commission solicits comments on the proposed amendments. In particular, the Commission seeks comment on whether the undertaking is necessary to protect customers. Comments should be received no later than 30 days after publication of the proposals in the *Federal Register*. Security futures products may begin trading before adoption of final rule amendments to the Reserve Formula in Exhibit A to Rule 15c3-3. Any concerns that arise with regard to the treatment under the Reserve Formula of customer security futures product margin before commencement of trading should be brought to the attention of the Division of Market Regulation.

http://www.sec.gov/news/press/2002-128.htm

Home | Previous Page                                     Modified: 08/27/2002

http://64.233.161.104/search?q=cache:excL0Sgi8fMJ:www.sec.gov/news/press/2002-128...    11/17/2005