UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v.  )<br>)<br>WALTER A. FORBES.  )<br>)<br>) | No. 3:02CR264 (AHN)<br>April 17, 2006 |

**MOTION OF WALTER A. FORBES TO PRECLUDE HEARSAY STATEMENTS FROM ERNST & YOUNG DURING THE TESTIMONY OF ANNE PEMBER**
**(Forbes Third Trial Motion *In Limine* No. 17)**

Defendant Walter A. Forbes, through undersigned counsel, respectfully moves to preclude the government from introducing hearsay statements of Ernst & Young employees during the testimony of Anne Pember. The grounds for this motion are set forth in the accompanying memorandum of points and authorities.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

Oral Argument Requested

                                      James T. Cowdery (Bar No. ct05103)
                                      Thomas J. Murphy (Bar No. ct07959)
                                      COWDERY, ECKER & MURPHY, L.L.C.
                                      750 Main Street
                                      Hartford, CT 06103-2703
                                      (860) 278-5555 (phone)
                                      (860) 249-0012 (fax)
                                      tmurphy@cemlaw.com (e-mail)

                                      Attorneys for Walter A. Forbes

Dated: April 17, 2006

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing Motion of Defendant Walter A. Forbes to Preclude Hearsay Statements from Ernst & Young During the Testimony of Anne Pember (Forbes Third Trial Motion *in Limine* No. 17) to be filed electronically and to be served on April 17, 2006 to the following via e-mail:

> Norman Gross, Esq. (norman.gross@usdoj.gov)
> Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
> Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

Barry S. Simon

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v.     )<br>)<br>WALTER A. FORBES.    )<br>)<br>) | )<br>)<br>No. 3:02CR264 (AHN)<br>April 17, 2006 |

**MEMORANDUM IN SUPPORT OF MOTION OF WALTER A.
FORBES TO PRECLUDE HEARSAY STATEMENTS FROM
ERNST & YOUNG DURING THE TESTIMONY OF ANNE
PEMBER**
**(Forbes Third Trial Motion *In Limine* No. 17)**

Defendant Walter A. Forbes, through undersigned counsel, respectfully moves to preclude the government from introducing hearsay statements of Ernst & Young employees during the testimony of Anne Pember.

**BACKGROUND**

The government elicited numerous hearsay statements from Ernst & Young during the testimony of Anne Pember, arguing that the statements were being offered as nothing more than "context" for 801(d)(2)(E) statements (presumably from Ms. Pember or Mr. Corigliano, although the alleged 801(d)(2)(E) statement was not always forthcoming). For example, Ms. Pember offered testimony suggesting that Ernst & Young knew that there were problems with CUC's accounting for the Ideon merger reserve in the fiscal year ending 1/31/97, but it nevertheless issued a clean audit opinion. According to Ms. Pember's testimony:

- She provided Ernst & Young with a copy of GX 484, a schedule analyzing the Ideon merger reserve for fiscal year 1/31/97, see Tr. at

Oral Argument Requested

   888-89, which contained numbers "that would point out to the auditors that it wasn't necessarily accurate." Tr. 10/24/2005 at 891-92.

- Because she "did not provide them with details for over $20 million worth of supposed use of a merger cost, . . . how could they not ask a question?" Tr. 10/24/2005 at 892-93.

- After the auditors did ask questions about this unexplained figure, see Tr. at 894-95, Mr. Corigliano told Mr. Rabinowitz that it "wasn't possible to give him details" because "the accounting had been a mess." Tr. 10/24/2005 at 895.

- Mr. Corigliano's explanation did not make sense. See Tr. at 10/24/2005 895.

- Pursuant to the auditors' request for a memo describing how the $21 million had been used, see Tr. at 896, Ms. Pember prepared such a memo, GX 485, and it was provided to Ernst & Young. See Tr. 10/24/2005 at 896-899.

- Thereafter, Mr. Caparelli asked Ms. Pember whether "the $21 million" was "really merger related or were there operating costs in that usage?" Tr. at 900. Ms. Pember hesitated for a moment and then told him that "there were no operating costs in the $21 million." Tr. at 901. Mr. Caparelli shrugged his shoulders, and left Ms. Pember's office. See Tr. 10/24/2005 at 901.

- Ernst & Young issued a clean opinion regarding the Ideon merger reserve for the fiscal year ending 1/31/97. See Tr. 10/24/2005 at 901.

- The following year, Mr. Rabinowitz repeatedly told Ms. Pember "that it would be unacceptable to him if the Ideon merger reserve analysis was done the same way it was done for 1/31/97." Tr. at 902; see also Tr. 10/24/2005 at 903-05.

Ms. Pember offered similar testimony regarding the fiscal year ending 12/31/97, suggesting that Ernst & Young knew that there were problems with CUC's accounting for the Ideon merger reserve. According to her testimony:

- She provided Ernst & Young with a copy of GX 527, a schedule analyzing the Ideon merger reserve for fiscal year 12/31/97, see Tr. at 905, which contained a hole similar to the prior year despite Mr. Rabinowitz's admonition that he would "not tolerate" such an analysis. See Tr. 10/24/2005 at 903-04, 906.

2

- Mr. Rabinowitz asked Ms. Pember about a missing $45 million. See Tr. 10/24/2005 at 906-07. She provided misinformation. See Tr. at 907. He also asked whether the balance of the merger reserve was in fact $500,000 as reflected on GX 527. See id. Ms. Pember said yes. See id.

- Mr. Rabinowitz responded, "Oh, shit," because they "had just completed the conversation where [Ms. Pember] explained that this schedule did not include the increase in the Ideon merger reserve of $45 million, and therefore if the balance was only $565,000, Mr. Rabinowitz knew and said that that meant that the $45 million had been used somehow and [Ms. Pember] was not giving him any explanation as to how the company used the $45 million." Tr. 10/24/2005 at 908.

- As compared to the prior year, "this analysis was worse because [Ms. Pember] hadn't even made any attempt to show any of the usage of the $45 million." Tr. at 909. In addition, the number "was more than twice" as large. Id.

- Mr. Rabinowitz subsequently explained that he needed an analysis showing how the $45 million had been used and Ms. Pember "prepared a schedule that reflected the categories that Mr. Rabinowitz indicated were acceptable usage of a merger reserve." Tr. at 909-10. GX 521 "is the final schedule that we agreed with Ernst & Young would meet the needs of the Ideon merger reserve usage," but it did not accurately reflect the usage of the reserve. Tr. at 910. The schedule was intentionally inaccurate. See id.

The government attempted to go further by (i) asking Ms. Pember whether she was "surprised by the process [she] had with the auditors regarding the Ideon merger reserve for 12/31/97," Tr. 10/24/2005 at 912, (ii) eliciting testimony that Mr. Rabinowitz told Mr. Corigliano that, "You know, Cosmo, when this is all over we'll need to get together and go out on your boat and talk about what really happened here," and that Mr. Corigliano "sort of chuckled," Tr. 10/24/2005 at 913-14, and (iii) by asking whether Ernst & Young issued a clean opinion that year, see id. The Court sustained an objection to the first question, struck the offending testimony of

3

point (ii), and the government did not obtain an answer to the clean opinion question.

Although the government told the Court at the time it introduced this hearsay testimony that it was simply seeking to provide "context" for 801(d)(2)(E) statements, the clear intent of the testimony was to paint Ernst & Young as possibly complicit in the conspiracy. And indeed, by the time of the government's rebuttal closing argument, the façade had been dropped, and the government was improperly arguing that Ernst & Young's purported statements demonstrated that they had seen "red flags," but nonetheless issued "clean opinions":

> You also heard the testimony of Anne Pember who told you that on at least two occasions, Ernst & Young saw red flags in documents and brought them to her attention.
>
> Now, if you could, Ms. Elliott, put up Government Exhibit 484.
>
> Government Exhibit 484 is a schedule that Anne Pember told you she prepared. Anne Pember told you she prepared this schedule, and when she did so she did not provide detail to the auditors for more than $20 million of the uses of the Ideon merger reserve. If you see it there, it's highlighted, $21 million number. As a result of that number, Ernst & Young questioned that $21 million.
>
> Anne Pember told you that on a Saturday, Joe Caparelli, an Ernst & Young auditor that she's known for 15 years, visited her and asked, and I'll quote her testimony: "Come on Anne, is the 21 million really merger related or were there operating costs in that usage?"
>
> Now, she told you an explanation was fabricated by herself and Cosmo Corigliano but as a result of that, CUC was warned by Marc Rabinowitz. And I'll quote Ms. Pember again. "It would be unacceptable to him if the Ideon merger reserve analysis was done the same way as it was done in Government Exhibit 484."
>
> What happened as a resulted of that warning?

4

> Well, the following year, Ms. Pember told you that she provided Mr. Rabinowitz with Government Exhibit 527. Now in Government Exhibit 527, she explained that she failed to explain a $45 million usage of the Ideon merger reserve. Twice the size of the hole that was in Exhibit 484.
>
> Once again, Mr. Rabinowitz questioned the usage. And once again, a clean audit opinion was ultimately obtained by CUC.

Tr. 12/5/2005 at 3588-90 (rebuttal argument by AUSA Craig Carpenito).

## **ARGUMENT**

There is no question but that these alleged statements by Ernst & Young are hearsay, and that the government should never have argued the truth of those statements in its closing as it did. Nonetheless, the government's closing confirmed what the defense had maintained from the beginning: that the government's claim that it was admitting the statements as "context" for 801(d)(2)(E) statements was simply a ruse to get evidence of Ernst & Young's possible complicity before the jury.[1] Not only do the government's tactics run afoul of the hearsay rule, but they also create an impermissible variance with the indictment.

A constructive amendment takes place when the government presents evidence at trial that broadens the scope of the indictment beyond that returned by the grand jury, or when the government presents evidence that is based on facts different than those found by the grand jury. See Forbes Third Trial Motion *in Limine* No. 3 at Section III(A), (filed April 17, 2006), incorporated herein. The

---

[1] If the government was simply attempting to provide "context" for purported Rule 801(d)(2)(E) statements, as it contended, there of course would have been no need to elicit the rich details that it did.

5

indictment does not allege that auditors from Ernst & Young participated in the alleged conspiracy. See Indict. ¶ 17; see also id. ¶¶ 26-29. To the contrary, the Court instructed the jury in the first trial that "[t]he government contends that the coconspirators were Walter Forbes, Kirk Shelton, Cosmo Corigliano, Anne Pember, Casper Sabatino, Steven Speaks, Kevin Kearney, Mary Sattler, and Stuart Bell. There are no other alleged coconspirators." Tr. 11/03/04 at 16293-94 (emphasis added); see also Tr. 12/7/2005 at 3731 (giving same instruction in trial two, except that Mary Sattler's name was stricken because there was no evidence as to Ms. Sattler's role in the second trial).

Despite this history, the government, through the testimony of Ms. Pember, expanded and modified the membership of the alleged conspiracy charged in the indictment by suggesting that auditors from Ernst & Young were also in on the alleged conspiracy. The obvious import of the government's examination of Ms. Pember was that Ernst & Young knew, for at least two years, that CUC's accounting for the Ideon merger reserve was improper, but that Ernst & Young nevertheless issued clean audit opinions. Indeed, this was the essence of the government's argument in its rebuttal closing.

An alleged conspiracy involving Ernst & Young is materially different than the alleged conspiracy charged in the indictment. The testimony that the government elicited from Ms. Pember should be precluded in the third trial.

6

## **CONCLUSION**

For the reasons set forth above, Mr. Forbes respectfully requests that the Court preclude any hearsay of Ernst & Young from being offered during the testimony of Anne Pember.

                Respectfully submitted,

                WILLIAMS & CONNOLLY LLP

By: _____
        Brendan V. Sullivan, Jr. (Bar No. ct17115)
        Barry S. Simon (Bar No. ct24159)

        725 Twelfth Street, N.W.
        Washington, D.C. 20005
        (202) 434-5000 (phone)
        (202) 434-5029 (fax)
        bsimon@wc.com (e-mail)

        - and -

        James T. Cowdery (Bar No. ct05103)
        Thomas J. Murphy (Bar No. ct07959)
        COWDERY, ECKER & MURPHY, L.L.C.
        750 Main Street
        Hartford, CT 06103-2703
        (860) 278-5555 (phone)
        (860) 249-0012 (fax)
        tmurphy@cemlaw.com (e-mail)

        Attorneys for Walter A. Forbes

Dated: April 17, 2006

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing Memorandum in Support of Motion of Defendant Walter A. Forbes to Preclude Hearsay Statements from Ernst & Young During the Testimony of Anne Pember (Forbes Third Trial Motion *in Limine* No. 17) to be filed electronically and to be served on April 17, 2006 to the following via e-mail:

>Norman Gross, Esq. (norman.gross@usdoj.gov)
>Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
>Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

_____
Barry S. Simon