# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA, )
)
)
v. )
)
WALTER A. FORBES. )
)
)

No. 3:02CR264 (AHN)
April 17, 2006

## MOTION OF DEFENDANT WALTER A. FORBES TO PRECLUDE THE GOVERNMENT FROM INTRODUCING GOVERNMENT EXHIBIT 11007
### (Forbes Third Trial Motion *In Limine* No. 16)

Defendant Walter A. Forbes, through undersigned counsel, respectfully moves to preclude the government from introducing in to evidence Government Exhibit 11007, an employment evaluation for Ernst & Young auditor Bruce Botti. The grounds in support of this Motion are set forth in the accompanying Memorandum.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

Oral Argument Requested

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Dated:  April 17, 2006

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing Motion of Defendant Walter

A. Forbes to Preclude the Government from Introducing Government Exhibit 11007

(Forbes Third Trial Motion *in Limine* No. 16) to be filed electronically and to be

served on April 17, 2006 to the following via e-mail:

> Norman Gross, Esq. (norman.gross@usdoj.gov)
> Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
> Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

_____
Barry S. Simon

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,     )
)
v.     )
)
WALTER A. FORBES.     )
)
)

No. 3:02CR264 (AHN)
April 17, 2006

## MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT WALTER A. FORBES TO PRECLUDE THE GOVERNMENT FROM INTRODUCING GOVERNMENT EXHIBIT 11007
## (Forbes Third Trial Motion *In Limine* No. 16)

Defendant Walter A. Forbes, through undersigned counsel, respectfully moves to preclude the government from introducing in to evidence Government Exhibit 11007, an employment evaluation for Ernst & Young auditor Bruce Botti. The employment review, authored by Ernst & Young partner Simon Wood, discusses at length the allegedly "demoralizing engagement" at CUC during calendar year 1997, describing it as "the most mentally and physically grueling audit engagement that I have ever encountered." Exhibit 1 at EY PER 3948.[1] The memorandum goes on to state:

> The client staff that we had to deal with met the following criteria (1) they did not care about the product they were creating (due to either frustration on their part about the effective takeover of their positions by former HFS personnel and/or the fact that the large amount of money they had made through the aforementioned takeover

_____

[1] Mr. Wood was the second most senior auditor on the CUC/Cendant account for year end 1/31/1997.

Oral Argument Requested

meant they would not need to work again if they did not
want too [sic]), (2) they did not have the technical ability
to  handle the issues involved and (3) they felt they were
overworked."

Id.

This employment review is a document internal to Ernst & Young.  No one at Cendant, including Walter Forbes, would have been privy to it during the relevant period, and there is no evidence that the contents of the exhibit were communicated to Walter Forbes, the Audit Committee, or any member of the Board of Directors of CUC or Cendant.  The only purpose for offering the memorandum is to suggest that Ernst & Young was complicit in the fraud by establishing that Ernst & Young recognized that Ms. Pember and the other Cendant account staff members were "evasive," "unprofessional," and "unresponsive," and that they provided Ernst & Young with schedules that were "consistently wrong," yet nonetheless provided a "clean opinion" on the company's financial statements.

Such a theory is inconsistent with the indictment, and the memorandum should be excluded on that ground alone.  In addition, the memorandum should be excluded because it contains inadmissible hearsay; it contains inadmissible character evidence; and because any limited, legitimate relevance the memorandum may have is outweighed by the unfair prejudice that would result to Mr. Forbes.

I.    **THE ONLY NON-CUMULATIVE PURPOSE FOR OFFERING GOVERNMENT EXHIBIT 11007 IS AT ODDS WITH THE ALLEGATIONS OF THE INDICTMENT.**

A.    **Evidence of Ernst & Young's Purported Complicity Would Impermissibly Amend the Indictment.**

Government Exhibit 11007 can be interpreted to suggest that Ernst & Young was complicit in the fraud at CUC, electing to consciously avoid "red flags" that should have alerted it to the fact something was wrong with CUC's financial statements. Yet this is not the theory the government advanced in the indictment. The indictment does not allege that auditors from Ernst & Young participated in the alleged conspiracy. See Indict. ¶ 17; see also id. ¶¶ 26-29. To the contrary, the Court instructed the jury in both trials that "[t]he government contends that the coconspirators were Walter Forbes, Kirk Shelton, Cosmo Corigliano, Anne Pember, Casper Sabatino, Steven Speaks, Kevin Kearney, Mary Sattler, and Stuart Bell. There are no other alleged coconspirators." Tr. 11/03/04 at 16293-94 (emphasis added); see also Tr. 12/7/2005 at 3731 (giving same instruction in trial two, except that Mary Sattler's name was stricken because there was no evidence as to Ms. Sattler's role in the second trial).

Consistent with the indictment, the co-conspirators who testified confirmed that they had repeatedly lied to Ernst & Young. For example, Mr. Sabatino testified that he was instructed by Mr. Corigliano to hide the accounting issues from Ernst & Young. Tr. 11/10/2005 at 2567-69. Similarly, Ms. Pember testified that she took steps to hide the improper accounting matters from the auditors. Tr. 10/25/2005 at 1004-05. Government Exhibit 11007 could nonetheless

3

improperly inject a new theory into the case – a theory not presented to the grand jury – of Ernst & Young's potential complicity.

A constructive amendment takes place when the government presents evidence at trial that broadens the scope of the indictment beyond that returned by the grand jury, or when the government presents evidence that is based on facts different than those found by the grand jury.  See Forbes Third Trial Motion *in Limine* No. 3 at Section III(A), (filed April 17, 2006), incorporated herein.  An alleged conspiracy involving Ernst & Young is materially different than the alleged conspiracy charged in the indictment.  Thus, to now introduce Ernst & Young's potential complicity through the Botti memo would impermissibly amend the indictment.

**B.    Absent Allegations of Ernst & Young's Complicity, Government Exhibit 11007 Is Not Relevant.**

In apparent recognition that adding Ernst & Young to the conspiracy would constitute a constructive amendment of the indictment, the government claimed that it had no intention of arguing that Ernst & Young was part of the conspiracy.  Gov't Opp. to Forbes Retrial Motion *In Limine* No. 25 [Docket No. 1955] at 3.  Rather, the government proffered two alternative reasons why the exhibit was relevant.  Neither relevancy argument survives scrutiny.

**1.    The Government's Argument that the Memorandum Provided Motive for Walter Forbes to "Lobby" for Ernst & Young.**

The government argued that the memorandum demonstrates that Ernst & Young was willing to provide "clean opinions" on CUC's financial

statements despite the fact that it was extremely frustrated by CUC's failure to provide timely, complete and accurate financial information.  Gov't Opp. to Forbes Retrial Motion *In Limine* No. 25 [Docket No. 1955], at 3-4.  This in turn, the government argued, provided the motive for Walter Forbes allegedly to "lobby" Henry Silverman and Michael Monaco to retain Ernst & Young as the auditors for the merged company, Cendant.  Id.

First, in order for the memorandum to have provided "motive" for Mr. Forbes to keep Ernst & Young, Mr. Forbes would have had to have seen the memorandum, or been advised of its substance.  The evidence to date is just the opposite, however.  Mr. Corigliano testified that while he was generally aware of Ernst & Young's concern that it was not getting information quickly enough, none of the "concerns" in the memorandum that were hi-lighted by the government had been communicated to him.  Tr. 11/9/2005 at 2351-52.  Nor to his knowledge were any of these "concerns" communicated to the Audit Committee or the Board of Directors.  Id. at 2351-52.  This is confirmed by the civil deposition testimony of Simon Wood, the author of the Botti review, Government Exhibit 11007.[2]  Mr. Wood testified that when he wrote the review, he never expected it to be seen outside of Ernst & Young.  Ex. 2, 1/16/2002 at 1162.[3]  Moreover, he never communicated the

---

[2] Several parallel civil litigations remain pending in the Federal District Court for the District of New Jersey.  Messrs. Wood and Botti were both deposed extensively in that litigation.

[3] The Court can consider Mr. Wood's civil deposition under Fed. R. Evid. 104(a).

substance of his comments to any director of Cendant (which would include Walter Forbes). Ex. 2, 1/9/2002 at 543.

If Mr. Forbes was never advised of the substance of the views expressed in Government Exhibit 11007, they could not have provided him motive to "lobby" for Ernst & Young.

<u>Second</u>, Mr. Wood made clear in his deposition that the events which he describes in Government Exhibit 11007 all post-dated February 3, 1998. Ex. 2, 1/9/2002 at 560 & 1/16/02 at 1161-62. There has never been a contention that Walter Forbes was "lobbying" for Ernst & Young at this late date, however. To the contrary, it is undisputed that Cendant had already selected Deloitte & Touche as the new auditors on January 20, 1998. Ex. 3. As with events unknown to Mr. Forbes, events post-dating his alleged "lobbying" efforts certainly could not have provided motive for that alleged "lobbying."

**2.    The Government's Argument that the Memorandum Corroborates the Alleged Co-Conspirators' Testimony That They Had Lied to Ernst & Young.**

The government's second relevancy argument was that the exhibit provides additional proof, corroborating the testimony of the alleged co-conspirator witnesses, that CUC did not provide timely, accurate, and complete information to the auditors, and thus Mr. Forbes could not rely upon the auditors in good faith. Gov't Opp. to Forbes Retrial Motion *In Limine* No. 25, [Docket No. 1955] at 4-5.

<u>First</u>, the fact that the alleged co-conspirators lied to Ernst & Young cannot undermine Mr. Forbes' defense that he relied upon Ernst & Young in good

faith unless the government can show that Mr. Forbes <u>knew</u> that the alleged co-conspirators lied to Ernst & Young.  Government Exhibit 11007 says nothing about Mr. Forbes, however, and therefore does not advance the government's argument.

<u>Second</u>, there is no need for "corroboration" of the alleged co-conspirators' testimony that they lied to Ernst & Young because there is no dispute as to this issue.  To the contrary, most of the evidence concerning their lies was introduced <u>by the defense</u>.  <u>See, e.g.</u>, Tr. 10/25/2005 at 1003-1010 (defense cross-examination of Anne Pember); Tr. 10/26/2005 at 1177-79 (defense cross-examination of Kevin Kearney); Tr. 11/1/2005 at 1503, 1581-82, 1588, 1590-91 (defense cross-examination of Cosmo Corigliano); Tr. 11/10/2005 at 2540, 2545, 2567-70 (defense direct examination of Casper Sabatino).  Thus this aspect of the alleged co-conspirators' testimony needs no "corroboration," and the government's argument only demonstrates that its proffers of relevance are merely pre-texts for its true goal:  to paint Ernst & Young as complicit.[4]

<u>Third</u>, any minimal value the memorandum has as "corroboration" is far outweighed by the unfairly prejudicial effect the exhibit would have in implying the complicity of the auditors, Ernst & Young.

---

[4] The government in fact argued during its rebuttal closing argument that Government Exhibit 11007 demonstrated that Ernst & Young saw red flags, and that Mr. Forbes had more access to the company's books and records than Ernst & Young, implying both that Ernst & Young in fact saw the accounting problems, and that if Ernst & Young saw these problems, then surely Walter Forbes saw them. Tr. 12/5/2005 at 3587-88.

## II.  GOVERNMENT EXHIBIT 11007 CONSTITUTES INADMISSIBLE HEARSAY.

Assuming the government could establish relevancy (which it cannot), it still cannot surmount the prohibition against hearsay.

The government seeks to admit Government Exhibit 11007 for the truth of Mr. Wood's statements concerning the CUC/Cendant audit.  In order to overcome the obvious hearsay problem this poses, in the second trial the government proffered a business records certification from Ernst & Young pursuant to Fed. R. Evid. 902(11).  But this certification cannot overcome the face of the document or the testimony of the Ernst & Young personnel who signed it – Simon Wood, Bruce Botti, and Marc Rabinowitz – which establish that the document does not meet the business records exception to the hearsay rule.[5]  Moreover, where, as here, there is serious dispute whether the document in fact satisfies the business record criteria, Mr. Forbes has a constitutional right to cross-examine the custodian of records.  See United States v. Wittig, Crim. No. 03-40142 (JAR), 2005 WL 1227790 (D. Kan. May 23, 2005) (holding that certifications pursuant to Fed. R. Evid. 902(11) are testimonial, and therefore could not be offered against a defendant under Crawford v. Washington, 541 U.S. 36 (2004)).

_____

[5] Rule 902(11) provides that business records may be authenticated through certification, but requires that such certifications be provided to the other side far enough in advance to permit an adverse party with a fair opportunity to challenge them.  Thus it is clear that the existence of a certification does not end the inquiry into whether a document in fact satisifies the criteria of the business records exception.

Business records must satisfy each of the following three criteria to be admissible under Federal Rule of Evidence 803(6):  (1) it must be the regular practice of the business entity to make such documents, (2) the documents must be made at or near the time by, or from information transmitted by, a person with knowledge, and (3) it must be the regular practice of the business entity to keep such documents.  Fed. R. Evid. 803(6).  Even where these three criteria are met, if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness," the document should be precluded.  Id.

## A.     On Its Face, the Review Does Not Appear to have Been Made in the Ordinary Course of Ernst & Young's Business.

Ernst & Young undoubtedly engaged in at least annual reviews of its employees.  However, even a cursory review of Bruce Botti's evaluation from March 1998 – which includes a special "attachment" to address the extraordinary circumstances of the Cendant audit engagement – makes clear that this evaluation is far from "ordinary" in Ernst & Young's business.  To the contrary, the special attachment demonstrates that this particular evaluation was not in the ordinary course of Ernst & Young's business, and thus cannot qualify as a business record bearing an element of unusual reliability.  See, e.g., Advisory Committee Notes to Fed. R. Evid. 803(6) ("The element of unusual reliability of business records is said variously to be supplied by systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation.")

**B.     There Are Indicia that the Statements in Government Exhibit 11007 Lack Trustworthiness.**

Even if the exhibit met the first three prongs of the business records exception, the circumstances of its preparation indicate a lack of trustworthiness.

Mr. Wood admitted in his deposition that he did not even have personal knowledge of everything he put in the memorandum: "The next sentence regarding the money was a little flip. I have no idea if they had enough money that they never had to work again, so that was a little flip." Ex. 2 Tr. 1/16/2002 at 1188-89. Mr. Wood's admitted lack of knowledge concerning some of the "facts" stated in Government Exhibit 11007 demonstrates the lack of trustworthiness that should preclude admission of the exhibit, even if the Court were to find it otherwise qualified as a business record. See Fed. R. Evid. 803(6) (business records should not be admitted when "the source of information or the method or circumstances of preparation indicate lack of trustworthiness"). And Mr. Wood's lack of knowledge is not the only indicia of untrustworthiness here:

- Mr. Wood himself testified: "I was obviously telling the truth, but I think, particularly when it comes to an internal document that, you know, I'm putting together at the end of an audit and you know, you can vent and you can go a little overboard on how much you say things and you know, if I did this at a different time, I don't know if I would have said exactly the same things," Ex. 2, Tr. 1/22/02 at 1492-93;

- Mr. Rabinowitz, who was senior to Mr. Wood, did not believe the client was inept, Ex. 4, Tr. 2/11/02 at 753-54;

- Mr. Botti testified that he did not necessarily agree with Mr. Wood's statements in the review, Ex. 5, Tr. 12/3/2001 at 1008;

- Mr. Botti does not recall client schedules being consistently wrong, id., Tr. 6/4/2001 at 177-178;

10

- Mr. Botti is not sure he would describe the engagement as demoralizing, id., Tr. 6/4/2001 at 166-67;

- Mr. Botti would not necessarily agree that the CUC staff did not care about the product they were creating; id., Tr. 6/4/2001 at 175-76.

In short, Government Exhibit 11007 falls far short of the "trustworthiness" typical of a business record, and is not the type of document that should come into evidence for the truth of the matters asserted therein concerning CUC.

## III.   GOVERNMENT EXHIBIT 11007 CONTAINS INADMISSIBLE CHARACTER EVIDENCE.

Even if Government Exhibit 11007 could qualify as a business record, it would have to be excluded as improper character evidence.

Government Exhibit 11007 is replete with improper character evidence, describing the alleged co-conspirators as, *inter alia*, "unprofessional and unresponsive," "incompetent," "inefficien[t]," "inadequate[e]", uncaring, "evasive," and "reticent."   Ex. 1.  Federal Rule of Evidence 608 precludes the introduction of character evidence of a witness unless for purposes of showing the truthfulness or untruthfulness of a witness.  The government of course is not trying to prove the untruthfulness of the alleged co-conspirator witnesses, and Government Exhibit 11007 does nothing to advance these witnesses' character for truthfulness.  Rather, Government Exhibit 11007 paints a picture of an incompetent, inept and unprofessional accounting group.  Mr. Wood could not testify to such characterizations even if called to the stand to testify.  Thus the government should not be permitted to offer the statements by introducing Government Exhibit 11007.

## IV.   GOVERNMENT EXHIBIT 11007 SHOULD BE PRECLUDED UNDER FED. R. EVID. 403.

As discussed above, Government Exhibit 11007 has no relevance to the allegations of the indictment, and thus no probative value.  But even if the Court were to assign some minimal probative value to the document, it clearly would be outweighed by the unfair prejudice to Mr. Forbes and the danger the document could mislead the jury.

First, the memorandum could seriously mislead the jury.  The memo purports to be an employment evaluation by "Ernst & Young," and is signed by the two most senior members of the audit team assigned to CUC by Ernst & Young. Yet, as made clear in the civil deposition of Mr. Rabinowitz, his signature did not signify his agreement with Mr. Wood's opinions.

Mr. Rabinowitz testified that his focus was on the recognition of Bruce Botti's skills when he read and signed the review, not the commentary on CUC:

> Q.   Did you agree, when you signed this review on or about April 3 of 1998, that during the course of the 12/31/97 audit for CMS, that Ann Pember acted in an unprofessional and unresponsive manner?
>
> A.   I didn't provide Simon with commentary on every single sentence that was placed in the review.
>
> I read the review to make sure Bruce got the recognition that he deserved, and I felt that came across correctly.
>
> The difficulties, frustration that Simon experienced, I think Simon can be the one who can talk to that.
>
> I didn't look at it the way – I didn't dissect it sentence-by-sentence.

I was aware of what was going on at the company. I would characterize it as we were in the middle of trying to serve two taskmasters. I would characterize it that it was frustrating for people on the engagement team.

There were different tasks being put forth. Former CUC people were no longer in charge, so they were re -- they were being -- requesting numerous information, and it made it difficult necessarily to Simon and us to meet the time tables that were being established. It made it frustrating to meet the timetables that were being established.

So when I looked at this review, I didn't look at it that way.

So I can just say I read it to make sure Bruce got the recognition he deserved, that I agreed with it. There was nothing that was in the review that surprised me. Simon has a tendency to be flowery at times, but if you want to know specific -- what he meant by specific sentences, you should -- you should talk to Mr. Wood.

\* \* \* \* \* \* \*

Q.    Am I correct that at the time you signed this document you did not view your sign-off as a second level reviewer as signifying that you agreed with all of the comments that are set forth in this document that were provided by the primary level review?

A.    Yes.

Ex. 4, 1/29/2002 at 581-582 & 2/19/2002 at 1348. Indeed, while Mr. Rabinowitz understood Mr. Wood's frustrations, he did not agree with all of his opinions, such as the view that the client was inept. Ex. 4, 2/11/2002 at 753-54.

Similarly, Mr. Botti testified that he did not necessarily agree with everything Mr. Wood said. See Ex. 5, Tr. 12/3/2001 at 1008; Tr. 6/4/2001 at 166-67; Tr. 6/4/2001 at 175-78.

13

Admission of the Botti review without this testimony could seriously mislead the jury to conclude that the review was the opinion of all of Ernst & Young, not just the opinion of a single auditor, based on events which all post-dated the earnings release of February 3, 1998.

Second, there is serious danger that a jury could misconstrue the memorandum to mean that Ernst & Young was complicit in the fraud carried out by Mr. Corigliano and Ms. Pember. The jury then may conclude that if the auditors – who are Certified Public Accountants, and saw fraudulent documents never shared with Mr. Forbes – had knowledge of the fraud, then Mr. Forbes must have had knowledge of the fraud. Such an inference would be an impermissible one, yet is unlikely to be cured by a Court instruction that the jury not consider the evidence for that purpose.

Accordingly, even if the Court were to determine that there were some legitimate, non-hearsay purpose in admitting the exhibit, the limited relevance of the memorandum would be outweighed by this prejudice to Mr. Forbes.

## CONCLUSION

For the foregoing reasons, Mr. Forbes respectfully requests that the government be precluded from introducing in to evidence Government Exhibit 11007.

14

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Dated:  April 17, 2006

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Memorandum in Support of

Motion of Defendant Walter A. Forbes to Preclude the Government from

Introducing Government Exhibit 11007 (Forbes Third Trial Motion *in Limine* No.

16) to be filed electronically and to be served on April 17, 2006 to the following via e-

mail:

        Norman Gross, Esq. (norman.gross@usdoj.gov)
        Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
        Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)


_____
Barry S. Simon