## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 3:02CR264 (AHN) |
| | ) | |
| WALTER A. FORBES | ) | April 17, 2006 |
| | ) | |
| | ) | |

### MOTION OF DEFENDANT WALTER A. FORBES TO PRECLUDE IMPROPER TESTIMONY BY STEVEN KERNKRAUT
### (Forbes Third Trial Motion *In Limine* No. 3)

Defendant Walter A. Forbes, through undersigned counsel, respectfully moves for an order precluding the government from presenting improper testimony by Steven Kernkraut, as the government did in the second trial.  The grounds for this motion are set forth in the accompanying memorandum of points and authorities.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

Oral Argument Requested

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Motion of Defendant Walter

A. Forbes to Preclude Improper Testimony by Steven Kernkraut (Forbes Third Trial

Motion *In Limine* No. 3) to be filed electronically and to be served on April 17, 2006

to the following via e-mail:

> Norman Gross, Esq. (norman.gross@usdoj.gov)
> Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
> Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)


_____
Barry S. Simon

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 3:02CR264 (AHN) |
| | ) | |
| WALTER A. FORBES | ) | April 17, 2006 |
| | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT WALTER A.**
**FORBES TO PRECLUDE IMPROPER TESTIMONY BY STEVEN**
**KERNKRAUT**
**(Forbes Third Trial Motion *In Limine* No. 3)**

Defendant Walter A. Forbes, through undersigned counsel, respectfully

submits this memorandum in support of his motion for an order precluding the

government from presenting improper testimony by Steven Kernkraut, as the

government did in the second trial, much of which had to be stricken belatedly from

the record.

**INTRODUCTION**

Mr. Kernkraut did not testify in the first trial, but the government

called him as its first witness (and only new witness) in the second trial. Mr.

Kernkraut was a Bear Stearns stock analyst who covered CUC International

("CUC"). He never worked at CUC, never reviewed the books and records of CUC,

is not a CPA or even an accountant, and the government did not tender him as an

expert witness subject to the disclosure requirements of Fed. R. Crim. P. 16(a)(1)(G)

and the reliability requirements of Fed. R. Evid. 702. Over repeated defense

objections, the government nevertheless elicited wide-ranging improper testimony

Oral Argument Requested

from Mr. Kernkraut, including opinion testimony that CUC's financial statements were false and that Walter Forbes lied to him about CUC's financial performance.

Mr. Kernkraut had no personal knowledge about these matters, but instead based his improper testimony on what he purportedly learned after the fact from hearsay sources, Cendant Corporation's April 15, 1998 press release and its subsequent accounting restatement (the "Restatement").[1]  Mr. Kernkraut either misread, misremembered, or misreported what he read in those hearsay sources because he testified to the supposed "fact" that CUC misstated its financial results for the years <u>1992</u>-97, although the Restatement covered only the years <u>1995</u>-97. He also testified, again over repeated defense objections, that CUC falsely overstated its membership numbers and membership renewal rates, <u>but the Restatement and press release say nothing about purportedly overstated membership numbers or renewal rates</u>.  Indeed, the government has conceded that there is no allegation in the indictment that membership numbers or membership renewal rates were overstated, <u>see</u> Tr. (11/28/05) at 52, and in two trials no

---

[1]    CUC merged with HFS Incorporated ("HFS") in December 1997 to form Cendant Corporation ("Cendant").  On April 15, 1998, Cendant issued a press release announcing the discovery of potential accounting irregularities in former CUC business units, and stating that its audit committee had commenced an investigation.  As a result of the investigation, Cendant restated previously reported annual results for the years 1995-97.  The restated numbers were presented on a calendar year basis (whereas CUC's prior years were presented on a January 31 fiscal year basis), and they were presented as if CUC and HFS had always been a single entity (whereas CUC's prior filings did not include HFS's results).  It is not possible to tie a single number from the Restatement to the numbers in the indictment.  <u>See</u> Forbes Third Trial Mot. <u>In Limine</u> No. 9 (filed April 17, 2006).

document or government witness with personal knowledge has indicated that
membership numbers or membership renewal rates were overstated.

      After having unsuccessfully objected to the admission of this improper
testimony, Mr. Forbes moved for a mistrial on the grounds that Mr. Kernkraut's
testimony violated numerous rules of evidence (including Fed. R. Evid. 401-403,
602, 701 and 802), Mr. Forbes' Sixth Amendment rights (because much of it was
based on testimonial hearsay), the Second Circuit's prohibition against opening a
criminal case with an overview witness, and the Due Process prohibition against
false and misleading testimony.  Even the government ultimately conceded that
some of Mr. Kernkraut's testimony that it had elicited was improper.

      The Court ultimately struck the vast majority of the testimony
identified in Mr. Forbes' mistrial motion.  Compare Mot. Mistrial Based on
Testimony of Steven Kernkraut at 3-11 [Docket No. 1886] (blocking quoting
testimony at Tr. (10/18/05) at 214:14-218:13, 228:23-233:09, 335:23-339:09) with Tr.
(11/28/05) at 44 (striking testimony at Tr. (10/18/05) at 214:22-215:09, 215:15-
218:13, 228:23-232:23, 336:01-339:09).[2]  Six weeks after the improper testimony had
been given, and after the close of evidence, the Court also provided the following
"curative" instruction:

> Government witness Steven Kernkraut had no personal
> knowledge of any improper accounting or any accounting
> irregularities at CUC or Cendant.  Therefore, I struck all
> testimony by Mr. Kernkraut to the effect that CUC's or

---

[2]    Although the Court did not strike the questions, answers, and objections at
pages 232:24-233:09, it originally sustained the objections in that segment, so there
was no testimony to strike.

Cendant's financials statements or reports were false, overstated, incorrect, or inaccurate.

I also struck the testimony by Mr. Kernkraut that on April 15, 1998 he found out that the representations that he relied on that had been made to him by Mr. Forbes were essentially false. The testimony I struck included testimony by Mr. Kernkraut that the number of members that CUC had added was overstated and the member renewal rate had been overstated significantly. There is no evidence at all that the membership numbers reported by CUC or Cendant were false or inflated in any respect, and there is no evidence at all that the membership renewal rates reported by CUC or Cendant were false or inflated in any [respect] and I instruct you that there is no issue in the case with respect to those matters.

Tr. (12/08/05) at 3,801.

## ARGUMENT

Mr. Kernkraut should not be permitted to offer a repeat performance in the third trial. The Court should preclude him from testifying about the accuracy of CUC's reported financial results, the truthfulness of Walter Forbes' alleged statements to him about these matters, and CUC's membership numbers and membership renewal rates.

## I.    MR. KERNKRAUT CANNOT TESTIFY ABOUT THE ACCURACY OF CUC'S REPORTED FINANCIAL RESULTS.

Mr. Kernkraut should not be permitted to testify about the accuracy of CUC's reported financial results for several reasons. Under Fed. R. Evid. 701, a lay witness, like Mr. Kernkraut, is not permitted to opine on such matters unless the proponent of the testimony satisfies all three of the rule's foundation requirements: (a) personal knowledge; (b) helpfulness; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702. See United States v.

- 4 -

Garcia, 413 F.3d 201, 211 (2d Cir. 2005); see also Forbes Third Trial Motion *In Limine* No. 10 (filed April 17, 2006). Mr. Kernkraut's prior testimony about the accuracy of CUC's financial results failed all three foundation requirements of Rule 701. In addition to violating Rule 701, Mr. Kernkraut's testimony violated Rule 602 (because he lacked personal knowledge), Rule 802 (because it was based on hearsay), and Rules 401-403 (because his untrained and unfounded opinion was irrelevant and unduly prejudicial).

Mr. Kernkraut's prior testimony violated the personal knowledge requirement of Fed. R. Evid. 602 and 701(a). Mr. Kernkraut has no personal knowledge of whether CUC's reported financial results were in fact false. He never worked at CUC and he never reviewed the underlying books and records of CUC. See Tr. (10/18/05) at 333 (testifying that he never reviewed the underlying books and records of CUC International; "none of those were ever available to me"); see also id. at 262-63 ("Doing independent research on CUC was a bit more difficult because their business model was somewhat like a black box. You could not see how many members they had.").

Mr. Kernkraut's "personal knowledge" about the accuracy of CUC's reported financial results is derived solely (and inaccurately) from Cendant's April 15, 1998 press release announcing financial irregularities and its subsequent Restatement, see id.. at 231-32, 255, 337-38, both of which are inadmissible hearsay. See Forbes Third Trial Mot. *In Limine* No. 9 (filed April 17, 2006). Thus, Mr. Kernkraut has "personal knowledge" about the alleged fraud in the same way

- 5 -

as the lawyers in this case who have read the press release and Restatement, but none of us is competent to testify about such "knowledge."[3]

Mr. Kernkraut's testimony in the second trial underscores the danger of allowing a witness to testify without personal knowledge. <u>The witness may testify to supposed "facts" that do not exist</u>. For example, Mr. Kernkraut opined that CUC's "earnings growth rate was much lower than was reported where the earnings growth rate had been reported historically from that '92 to '97 period as 20, 25, 30 percent, numbers in those range, and the growth rate was far lower than that." Tr. (10/18/05) at 217; <u>see also</u> <u>id.</u> at 215, 229-30 (opining on alleged financial irregularities dating back to 1993). However, the documents upon which Mr. Kernkraut's testimony was based, the Restatement and the press release, <u>do not</u> state that the alleged fraud dated back to 1992 or 1993. The Restatement covers the period from 1995 to 1997. <u>See, e.g.,</u> Ex. 1 at 4, 32, 38, F-17 (excerpt from Cendant Amended Form 10-K). The April 15, 1998 press release stated only that Cendant expected to restate net income and earnings per share for 1997 and may restate for previous periods. <u>See</u> Ex. 2 (Press Release).

Mr. Kernkraut's untrained and unfounded opinion also violated the helpfulness requirement of Rule 701(b), and was irrelevant and unduly prejudicial, <u>see</u> Fed. R. Evid. 401-403. Mr. Kernkraut's testimony was not helpful because he

---

[3]     By eliciting testimony from Mr. Kernkraut concerning and based on the alleged content of those documents, the government made an end-run around the hearsay rule. In addition, by putting the hearsay in through a witness without personal knowledge, the government deprived Mr. Forbes of his Sixth Amendment right to cross-examine the hearsay declarants.

lacks the qualifications to offer expert testimony on the accuracy and amount of

CUC's earnings and earnings growth rate. Mr. Kernkraut's personal opinion on the

accuracy of CUC's reported financial results adds nothing to the jury's consideration

of that issue. In addition, his testimony that CUC's results were "misstated" to him

was not helpful and usurped the jury's role. Mr. Kernkraut can properly testify

about what was allegedly said to him (if he can recall). But it is the jury's function,

after hearing evidence of what was allegedly said, to determine, based on the other

admissible evidence, whether the alleged statements were accurate.

Finally, because an opinion on the accuracy and amount of earnings or

earnings growth rate is based on specialized accounting knowledge and is not "the

product of reasoning processes familiar to the average person in everyday life,"

Garcia, 413 F.3d at 215, Mr. Kernkraut's testimony also violated the third

foundation requirement for lay opinion testimony. See Fed. R. Evid. 701(c).

The government essentially conceded that Mr. Kernkraut's testimony

about the accuracy of CUC's financial results was improper, see Opp'n Mot. Mistrial

Based on Testimony of Kernkraut at 5 [Docket No. 1913] ("To the extent that

Kernkraut testified that CUC's or Cendant's publicly disclosed financial results

were 'inaccurate' . . . the Government would not oppose an appropriate instruction

striking only those limited portions of Kernkraut's testimony."), and the Court

agreed, striking "all testimony by Mr. Kernkraut to the effect that CUC's or

Cendant's financials statements or reports were false, overstated, incorrect, or

inaccurate." Tr. (12/08/05) at 3,801. Accordingly, the Court should preclude Mr.

- 7 -

Kernkraut from testifying in the third trial about the accuracy of CUC's financial
results.[4]

## II.    MR. KERNKRAUT CANNOT TESTIFY THAT MR. FORBES LIED TO HIM ABOUT CUC'S FINANCIAL RESULTS.

Mr. Kernkraut also offered improper lay opinion testimony that Mr.
Forbes made false representations to him about CUC's financial numbers. See Tr.
(10/18/05) at 335, 337 ("Q. Did you rely upon Walter Forbes' representations about
the CUC financial numbers? A. Yes, I did . . . . Q. On April 15th, 1998, what did
you find out about the representations that you relied on that were made to you by
Mr. Forbes? A. That they were essentially false."). Although it was proper for Mr.
Kernkraut to testify about what Mr. Forbes allegedly said, his testimony that Mr.
Forbes lied to him about CUC's financial numbers was improper because he lacked
personal knowledge of whether any of the alleged representations were in fact false,
and he lacked the expertise and information to determine whether the alleged
representations were in fact false. Moreover, this testimony was not helpful
because it usurped the jury's function of deciding whether any alleged statements
were false. This testimony was essentially an opinion that Mr. Forbes committed a
crime. Therefore, this testimony, like the testimony described above, failed all three
foundation requirements of Rule 701.

---

[4]    Similarly, the Court should preclude Mr. Kernkraut from speculating (as he
did in the second trial) about what would have happened in a hypothetical world in
which CUC contemporaneously reported lower financial results. See, e.g., Tr.
(10/18/05) at 215, 217, 218, 229-30, 338-39. Again, such testimony violates Rule
701, and the Court ultimately struck the offending testimony in the second trial.

The testimony also should have been excluded under Rules 401-403 because Mr. Kernkraut's subjective belief is irrelevant and unduly prejudicial.  It is the jury's duty to decide, based on admissible evidence, whether the government has carried its burden of proving that Mr. Forbes knowingly participated in a fraud.[5]

The government essentially conceded that Mr. Kernkraut's testimony that Mr. Forbes had made false statements to him was improper, see Opp'n Mot. Mistrial Based on Testimony of Kernkraut at 5 [Docket No. 1913] ("To the extent that Kernkraut testified that . . . Forbes' statements to Kernkraut regarding CUC's results were 'essentially false' . . . , the Government would not oppose an appropriate instruction striking only those limited portions of Kernkraut's testimony."), and the Court agreed, striking "the testimony by Mr. Kernkraut that on April 15, 1998 he found out that the representations that he relied on that had been made to him by Mr. Forbes were essentially false."  Tr. (12/08/05) at 3,801. Accordingly, the Court should preclude Mr. Kernkraut from offering similar testimony in the third trial.

## III.  MR. KERNKRAUT CANNOT TESTIFY ABOUT CUC'S MEMBERSHIP NUMBERS AND MEMBERSHIP RENEWAL RATES.

Over the course of two days, Mr. Kernkraut testified repeatedly that Mr. Forbes discussed CUC's membership numbers and renewal rates with him.

---

[5]    All of these problems are exacerbated by the fact that Mr. Kernkraut was unable to attribute any specific alleged statements to Mr. Forbes (other than certain alleged statements regarding the Ideon merger reserve).  It is unclear how Mr. Kernkraut could opine that Mr. Forbes lied to him when he could not remember what Mr. Forbes said.

- 9 -

See, e.g., Tr. (10/17/05) at 139-40, 142; Tr. (10/18/05) at 230-31, 330-31.  Mr.

Kernkraut testified that Mr. Forbes "knew" the membership numbers and the

renewal rates.  See Tr. (10/17/05) at 144 (opining that "if anyone knew how the

business worked, [Mr. Forbes] knew how the business worked" and that "he knew

the key variables.  He knew membership growth.  He knew the renewal rates.").

Mr. Kernkraut emphasized the alleged importance of the membership numbers and

renewal rates and testified that he was unable to validate those figures other than

through discussions with management.  See Tr. (10/18/05) at 274 ("[T]here were two

key variables in CUC's business; the number of members they had and what the

renewal rate of the company was.  And there was no way for an outside analyst to

validate that information aside from hearing it from the management's mouth."); id.

at 262-63.  Mr. Kernkraut testified that CUC overstated its membership numbers

and renewal rates.  See id. at 217-18, 229.

     The Court should exclude from the third trial all testimony by Mr.

Kernkraut about CUC's membership numbers and membership renewal rates,

including testimony that the membership numbers and renewal rates were

allegedly overstated, testimony that Mr. Forbes allegedly knew the membership

numbers and renewal rates, and testimony that Mr. Forbes allegedly discussed

membership numbers and renewal rates with Mr. Kernkraut.

## A.    Mr. Kernkraut Cannot Testify that CUC's Membership Numbers and Renewal Rates Were Overstated.

     Mr. Kernkraut's testimony that CUC's membership numbers and

membership renewal rates were overstated violated the personal knowledge

- 10 -

requirement of Rules 602 and 701(a). Mr. Kernkraut testified that he did not know how many members CUC had and that he could not validate the number of members or membership renewal rates other than through discussions with management. See Tr. (10/18/05) at 262-63 ("Doing independent research on CUC was a bit more difficult because their business model was somewhat like a black box. You could not see how many members they had."); id. at 274 ("[T]here were two key variables in CUC's business; the number of members they had and what the renewal rate of the company was. And there was no way for an outside analyst to validate that information aside from hearing it from the management's mouth.").

Mr. Kernkraut's testimony again underscores the danger of permitting a witness to testify without personal knowledge. Mr. Kernkraut's assertion that the membership numbers and renewal rates were overstated was wrong. Cendant's Restatement and press release, upon with Mr. Kernkraut's testimony was based, do not say that membership numbers or renewal rates were overstated or that actual renewal rates were closer to 50% as he testified. See Tr. (10/18/05) at 217-18. Moreover, in two trials, not a single witness with personal knowledge testified that CUC's membership numbers or renewal rates were overstated. The Court struck Mr. Kernkraut's testimony about overstated membership numbers and renewal rates and instructed the jury that:

> There is no evidence at all that the membership numbers reported by CUC or Cendant were false or inflated in any respect, and there is no evidence at all that the membership renewal rates reported by CUC or Cendant were false or inflated in any [respect] and I instruct you

that there is no issue in the case with respect to those
matters.

Tr. (12/08/05) at 3,801.

Because Mr. Kernkraut's opinion about the accuracy of CUC's
membership numbers and renewal rates was unfounded and incorrect, it also
violated the helpfulness requirement of Rule 701(b), and was irrelevant and unduly
prejudicial, see Fed. R. Evid. 401-403.

Mr. Kernkraut's testimony also caused a constructive amendment and
a prejudicial variance. A constructive amendment takes place when the
government presents evidence at trial that broadens the scope of the indictment
beyond that returned by the grand jury, or when the government presents evidence
that is based on facts different than those found by the grand jury. See, e.g., United
States v. Milstein, 401 F.3d 53, 64-66 (2d Cir. 2005) (finding constructive
amendment and vacating conviction on relevant count when indictment charged
defendant with misbranding drugs because they were re-packaged, but government
offered evidence that the drugs were misbranded because they were not sterile);
Forbes Trial Motion No. 20 [Docket No. 953] (legal discussion incorporated herein
by reference). A constructive amendment "is a *per se* violation of the Fifth
Amendment." Milstein, 401 F.3d at 65.

Similarly, when the evidence offered by the government at trial
establishes "facts materially different from those alleged in the indictment," and a
defendant is thereby prejudiced in his ability to defend himself, the variance
constitutes reversible error. United States v. Thomas, 274 F.3d 655, 670 (2d Cir.

- 12 -

2001) (quotation omitted); see also Forbes Trial Motion No. 20 [Docket No. 953]

(legal discussion incorporated herein by reference).

The Second Circuit has warned that courts should be particularly

vigilant in preventing deviations from the indictment in conspiracy and fraud cases

because of the already broad nature of such prosecutions.

> [W]e must be especially alert to subtle attempts to
> broaden the already pervasive and widesweeping nets of
> conspiracy prosecutions.  In light of the current broad
> range of conduct covered by the federal fraud statutes, it
> is critical that courts vigilantly enforce the Fifth
> Amendment requirement that a person be tried only on
> the charges contained in the indictment returned by the
> grand jury.  In order to avoid amending an indictment in
> violation of the Fifth Amendment, the government in
> fraud cases should think through the nature of the crime
> it wishes to allege and then spell out the offense in a
> carefully drafted indictment, instead of confronting the
> defendant with its theory of criminality for the first time
> at trial.

United States v. Mollica, 849 F.2d 723, 729 (2d Cir. 1988) (quotations omitted).

The indictment does not contain any allegations regarding overstated

membership numbers or membership renewal rates, a point the government

conceded.  See Tr. (11/28/05) at 52 ("THE COURT: . . . It's certainly not in the

indictment, correct?  MR. GROSS:  That's correct, Your Honor.").  Confronting Mr.

Forbes with a new theory of criminality at trial constructively amended the

indictment and caused a prejudicial variance.[6]

---

[6]    The indictment charges allegedly fraudulent accounting practices regarding
the use of topside adjustments, see Redacted Indict. ¶¶ 23-25, the use of merger
reserves, see id. ¶¶ 30-43, the underfunding of membership cancellation reserves,
see id. ¶¶ 44-48, and the misallocation of revenues and expenses among immediate
and deferred recognition categories, see id. ¶¶ 49-53.

**B.    Mr. Kernkraut Cannot Testify That Mr. Forbes Knew CUC's Membership Numbers and Renewal Rates.**

Mr. Kernkraut's prior testimony that Mr. Forbes supposedly "knew" the membership numbers and renewal rates violated Rule 701. The Second Circuit has determined that "in most instances" lay opinion testimony concerning a party's knowledge "will not meet the requirements of Rule 701." United States v. Rea, 958 F.2d 1206, 1216 (2d Cir. 1992). Where a witness does not identify a factual basis for opinion testimony concerning a defendant's knowledge, "the proffered opinion obviously fails completely to meet the requirements of Rule 701, first because there is no way for the court to assess whether it is rationally based on the witness's perceptions, and second because the opinion does not help the jury but only tells it in conclusory fashion what it should find." Id. Conversely, "when a witness has fully described what a defendant was in a position to observe, what the defendant was told, and what the defendant said or did, the witness's opinion as to the defendant's knowledge will often not be 'helpful' within the meaning of Rule 701 because the jury will be in as good a position as the witness to draw the inference as to whether or not the defendant knew." Id.

Mr. Kernkraut lacked personal knowledge about what Mr. Forbes "knew," and his testimony was not helpful to the jury. Beyond the obvious point that Mr. Kernkraut is not a mind-reader, he did not know what the membership numbers and membership renewal rates were. See Tr. (10/18/05) at 274 ("[T]here were two key variables in CUC's business; the number of members they had and what the renewal rate of the company was. And there was no way for an outside

- 14 -

analyst to validate that information aside from hearing it from the management's mouth."). Therefore, he could not compare what he knew the membership numbers and renewal rates to be with what Mr. Forbes supposedly told him to determine whether Mr. Forbes knew the figures. If Mr. Forbes said anything about membership numbers or renewal rates, as far as Mr. Kernkraut knew, Mr. Forbes could have been parroting what others told him, without knowing whether others were providing him with accurate information. All Mr. Kernkraut knows is what Mr. Forbes allegedly said. He does not know whether Mr. Forbes "knew" the membership numbers or renewal rates.[7]

### C.     Mr. Kernkraut Cannot Testify that Mr. Forbes Discussed CUC's Membership Numbers and Renewal Rates.

Because there is no issue in the case about membership numbers or renewal rates, testimony that Mr. Forbes discussed these figures with Mr. Kernkraut would be of marginal relevance. See Fed. R. Evid. 401. Moreover, any minimal probative value of the testimony would be substantially outweighed by the danger of confusion of the issues. See Fed. R. Evid. 403. Testimony about

---

[7]     Although the Court ultimately struck the testimony that the membership numbers and renewal rates were overstated, the Court did not strike Mr. Kernkraut's related testimony that Mr. Forbes supposedly "knew" the membership numbers and renewal rates. It should have. United States v. Skelly, __ F.3d __, 2006 WL 766746 (2d Cir. Mar. 21, 2006), is not to the contrary. In that case, a cooperating witness volunteered in response to a "proper question" that the defendant "was aware of what was going on with the stocks." Id. at *4. The Second Circuit held that this was not reversible error because this was "simply a summary of the witness' more particularized testimony as to Gross' involvement in the conspiracy." Id. Here, unlike the cooperating witness in Skelly, Mr. Kernkraut lacks personal knowledge of Mr. Forbes' state of mind or alleged participation in any fraudulent scheme. Moreover, unlike the present case, in Skelly, there was "ample evidence of [the defendant's] involvement in the charged offenses." Id.

discussions involving membership numbers and renewal rates is likely to confuse
the jury because there is an allegation in the indictment that membership
<u>cancellation reserves</u> were underfunded, <u>see</u> Redacted Indict. ¶¶ 44-48, a totally
separate issue, and in the second trial, Mr. Corigliano often testified in short-hand
about this allegation as the "membership accounting" issue. Tr. (10/31/05) at 1381;
Tr. (11/01/05) at 1486-93. There is a real risk that the jury will confuse these
similar sounding, but different, issues.

Moreover, focus on these figures, which Mr. Kernkraut repeatedly
characterized as the "key variables" of CUC's business, could cause the jury to
conclude that if Mr. Forbes was familiar with these allegedly "key variables," he
must also be familiar with CUC's reported financial statements or with accounting
issues. In fact, unlike the alleged accounting irregularities charged in the
indictment that supposedly resulted in false statements in SEC filings, the
membership numbers and renewal rates were operational numbers that do not
involve accrual-based GAAP accounting. Because there is no allegation in the
indictment about membership numbers or renewal rates, and testimony about these
issues would be confusing and misleading, the Court, pursuant to Fed. R. Evid. 403,
should exclude testimony by Mr. Kernkraut that Mr. Forbes allegedly discussed
these figures with him.[8]

---

[8]     If the Court nevertheless permits testimony that Mr. Forbes discussed
membership numbers and renewal rates with Mr. Kernkraut, Mr. Forbes
respectfully requests that the Court issue a limiting instruction similar to that
issued in the second trial. See Tr. (12/08/05) at 3,801 ("There is no evidence at all
that the membership numbers reported by CUC or Cendant were false or inflated in

## CONCLUSION

For the reasons set forth above, Mr. Forbes respectfully requests that the Court preclude all testimony by Mr. Kernkraut about the accuracy of CUC's reported financial results, whether Mr. Forbes lied to him, and CUC's membership numbers and renewal rates.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

---

any respect, and there is no evidence at all that the membership renewal rates reported by CUC or Cendant were false or inflated in any [respect] and I instruct you that there is no issue in the case with respect to those matters.").

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Memorandum in Support of

Motion of Defendant Walter A. Forbes to Preclude Improper Testimony by Steven

Kernkraut (Forbes Third Trial Motion *In Limine* No. 3) to be filed electronically and

to be served on April 17, 2006 to the following via e-mail:

> Norman Gross, Esq. (norman.gross@usdoj.gov)
> Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
> Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

Barry S. Simon