## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 3:02CR264 (AHN) |
| | ) | |
| WALTER A. FORBES | ) | April 17, 2006 |
| | ) | |

## MOTION OF DEFENDANT WALTER A. FORBES
## TO PRECLUDE THE GOVERNMENT FROM PRESENTING
## IMPROPER LAY OPINION TESTIMONY AT TRIAL
## (Forbes Third Trial Motion *In Limine* No. 10)

Defendant Walter A. Forbes, through undersigned counsel, respectfully moves for an order precluding the government from presenting improper lay opinion testimony at trial. The grounds for this motion are set forth in the accompanying memorandum of points and authorities.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon  (Bar No. ct24159)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
 bsimon@wc.com (e-mail)

- and -

Oral Argument Requested

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing Motion of Defendant

Walter A. Forbes to Preclude the Government from Presenting Improper Lay

Opinion Testimony at Trial (Forbes Third Trial Motion *In Limine* No. 10) to be filed

electronically and to be served on April 17, 2006 to the following via e-mail:

> Norman Gross, Esq. (norman.gross@usdoj.gov)
> Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
> Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

Barry S. Simon

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 3:02CR264 (AHN) |
| | ) | |
| WALTER A. FORBES | ) | April 17, 2006 |
| | ) | |

### MEMORANDUM IN SUPPORT OF
### MOTION OF DEFENDANT WALTER A. FORBES
### TO PRECLUDE THE GOVERNMENT FROM PRESENTING
### IMPROPER LAY OPINION TESTIMONY AT TRIAL
### (Forbes Third Trial Motion *In Limine* No. 10)

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this memorandum in support of his motion to preclude the government from presenting improper lay opinion testimony at trial.

### INTRODUCTION

During the first and second trials, the government offered extensive expert testimony about various accounting issues from "cooperating" witnesses Cosmo Corigilano, Anne Pember and Kevin Kearney under the guise of "lay opinion" testimony. These individuals are former in-house accountants for CUC International ("CUC"). All three were trained as CPAs. Under Fed. R. Evid. 701, as amended in 2000, a lay witness cannot present opinion testimony based, in whole or in part, on "scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Because the accounting testimony from lay witnesses was based on technical and specialized knowledge within the scope of

Oral Argument Requested

Rule 702, the Court should preclude the government from presenting any such testimony at the third trial under Rule 701.

The Court also should preclude the government from presenting lay opinion testimony through its witnesses concerning their speculation, beliefs, or opinions about whether Mr. Forbes had knowledge of, or participated in, the alleged fraud, and whether Mr. Forbes understood accounting concepts. All but one of the government's witnesses acknowledge that they have no personal knowledge of whether Mr. Forbes was purportedly involved in the alleged fraud. Under Rule 701, those witnesses cannot offer speculation about Mr. Forbes. Indeed, prior to the first and second trials, the government conceded that such testimony would be improper. See Opp'n Forbes Mot. In Limine Nos. 1 & 2, at 2 [Docket No. 645] ("None of these witnesses will speculate that either of the defendants 'must have known' about the conspiracy."); Opp'n Forbes Retrial Mot. In Limine No. 3, at 13 [Docket No. 1741] ("As During the First Trial, the Cooperating Witnesses Will Not Speculate about Forbes' Guilty State of Mind.").

Mr. Corigliano, the lone witness who claims to have had direct conversations with Mr. Forbes concerning the alleged fraud, should be limited to testimony concerning his purported interactions with Mr. Forbes, and should be barred from presenting his conclusions or opinions about Mr. Forbes' alleged knowledge, intent, or state of mind. Such opinion testimony is not helpful to the jury, and fails to satisfy the requirements of Fed. R. Evid. 701(b), because the jury

is fully capable of drawing its own conclusions on the critical issue of intent based
on the evidence presented at trial.[1]

## ARGUMENT

## I.    THE STANDARD FOR THE ADMISSIBILITY OF LAY OPINION TESTIMONY

A lay witness may present opinion testimony only if it meets all three
of the following criteria: (a) the testimony is "rationally based on the perception of
the witness"; (b) the testimony is "helpful to a clear understanding of the witness'
testimony or the determination of a fact in issue"; and (c) the testimony is "not
based on scientific, technical, or other specialized knowledge within the scope of
Rule 702." Fed. R. Evid. 701. The government, as the proponent of the testimony,
must establish all three foundation requirements. See United States v. Garcia, 413
F.3d 201, 211 (2d Cir. 2005); United States v. Grinage, 390 F.3d 746, 749 (2d Cir.
2004).

### A.    The Requirement of Personal Knowledge

The first requirement for the admissibility of lay opinion testimony "is
the familiar requirement of first-hand knowledge or observation." United States v.

---

[1]    The Court denied a similar motion prior to the second trial based in part the
government's representation that it would not elicit opinion testimony about Mr.
Forbes' knowledge, intent or state of mind. See Docket No. 1901. The Court opted
to resolve the issue of accounting testimony by lay witnesses in the context of
particular objections, sustaining some and overruling others. Where the Court
overruled objections, it generally appeared that the Court was focused only on the
question of whether the witness was testifying based on first-hand knowledge,
without considering (as Rule 701(c) requires) whether the testimony was based on
technical or specialized knowledge. See Section II.A infra.

- 3 -

Garcia, 291 F.3d 127, 140 (2d Cir. 2002) (quoting United States v. Rea, 958 F.2d

1206, 1215 (2d Cir. 1992)). "[A] witness offering a lay opinion must base his opinion

on his own personal knowledge, which must be established to the court and jury."

Garcia, 291 F.3d at 140.[2]

## B.    The Helpfulness Requirement

The helpfulness requirement limits the admission of lay opinion

testimony to that which will "'aid[] or clarif[y] an issue that the jury would not

otherwise be as competent to understand.'" McNulty v. Citadel Broad. Co., No. 01-

3902, 2003 WL 500171, at *6 (3d Cir. Feb. 26, 2003) (quoting Lauria v. Nat'l R.R.

Passenger Corp., 145 F.3d 593, 600 (3d Cir. 1998)). The issue of helpfulness is a

threshold legal matter "that must be determined by the court before it may allow

the opinion to be heard by the jury." Rea, 958 F.2d at 1217.

The helpfulness requirement is "designed to provide assurances

against the admission of opinions which would merely tell the jury what result to

reach." Hester v. BIC Corp., 225 F.3d 178, 181 (2d Cir. 2000) (quotation omitted);

see also Garcia, 413 F.3d at 214; Grinage, 390 F.3d at 749 (vacating conviction

because lay opinion testimony interpreting conversations not helpful); Rea, 958

F.2d at 1216 (Rule 701 precludes testimony that "does not help the jury but only

---

[2]    A fundamental requirement of any fact witness testimony is that the witness
has personal knowledge of the matters about which he or she testifies. Federal
Rule of Evidence 602 provides that "[a] witness may not testify to a matter unless
evidence is introduced sufficient to support a finding that the witness has personal
knowledge of the matter." Fed. R. Evid. 602.

tells it in conclusory fashion what it should find"). A lay opinion is not helpful to the jury, and therefore not admissible, "when the jury can readily draw the necessary inferences and conclusions without the aid of the opinion." Lynch v. City of Boston, 180 F.3d 1, 17 (1st Cir. 1999) (citing 7 John Henry Wigmore, Wigmore on Evidence §§ 1917-18)).

"[T]he likely benefits of lay opinion testimony must outweigh its costs," Hester, 225 F.3d at 182 (quotation omitted), for such testimony to satisfy the helpfulness requirement of Rule 701. The Second Circuit has observed that "the costs of lay opinion increase[] and the benefits diminish the closer the opinion approaches the crucial issues in the case." Id. (quotation omitted). "This is because, even where . . . the opinion is accompanied by supporting facts, the risk remains that the opinion may distract jurors from their task of drawing an independent conclusion as to an ultimate issue in the case." Id. (quotation omitted); accord Mitroff v. Xomox Corp., 797 F.2d 271, 276 (6th Cir. 1986) ("[S]eldom will be the case when a lay opinion on an ultimate issue will meet the test of being helpful to the trier of fact since the jury's opinion is as good as the witness'.") (cited with approval in Hester, 225 F.3d at 184).

**C.    The Requirement that Testimony Not Be Based on Specialized Knowledge, Education, or Training**

In 2000, "Rule 701 was amended to provide that testimony cannot be received as lay opinion if it is based on scientific, technical, or other specialized knowledge" within the scope of Rule 702. United States v. Garcia, 413 F.3d 201,

215 (2d Cir. 2005).  In determining whether the government has satisfied its burden on "the third prerequisite for lay opinion testimony, a court must focus on the reasoning process by which a witness reached his proffered opinion."  Id.  Lay opinion testimony "must be the product of reasoning processes familiar to the average person in everyday life."  Id.  Such "testimony is admissible only to help the jury or the court to understand the facts about which the witness is testifying and not to provide specialized explanations or interpretations that an untrained layman could not make if perceiving the same acts or events."  United States v. Peoples, 250 F.3d 630, 641 (8th Cir. 2001) (collecting cases).

Thus, "[t]he distinction between an expert and a non-expert witness is that a non-expert witness's testimony results from a process of reasoning familiar in everyday life and an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field."  State v. Brown, 836 S.W.2d 530, 549 (Tenn. 1992).[3]  For example, Rule 701 permits lay opinion testimony on subjects such as "the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, [and] distance."  Fed. R. Evid. 701 advisory committee's note to 2000 amendment. (quotation omitted).  Any person with relevant personal experience (such as an eyewitness to an event) could testify about these subjects.   The amended rule would

_____

[3]    The Advisory Committee Note to the 2000 Amendment of Rule 701 explains that the amended rule "incorporates the distinctions set forth in State v. Brown, 836 S.W.2d 530, 549 (Tenn. 1992)." Fed. R. Evid. 701 advisory committee's note to 2000 amendment.

not, however, permit lay opinion testimony on subjects such as "how a narcotic was manufactured," id., or whether "bruising around the eyes is indicative of skull trauma," id., because such testimony would be based on knowledge, training, or experience that an average person does not have.

"If the opinion rests in any way upon scientific, technical, or other specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701." Garcia, 413 F.3d at 215 (emphasis added & quotation omitted); accord Fed. R. Evid. 701 advisory committee's note to 2000 amendment ("The amendment makes clear that any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements of the Civil and Criminal Rules."). Under amended Rule 701, "[w]hat is essentially expert testimony . . . may not be admitted under the guise of lay opinions. Such a substitution subverts the disclosure and discovery requirements of Federal Rules of Criminal Procedure 26 and 16 and the reliability requirements for expert testimony." Peoples, 250 F.3d at 641 (citations omitted); see also Garcia, 413 F.3d at 215 ("The purpose of this final foundation requirement is to prevent a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702 and the pre-trial disclosure requirements set forth in Fed. R. Crim. P. 16 and Fed. R. Civ. P. 26."); Fed. R. Evid. 701 advisory committee's note to 2000 amendment (amendment intended "to eliminate the risk

- 7 -

that the reliability requirements set forth in Rule 702 [concerning expert testimony] will be evaded through the simple expedient of proffering an expert in lay witness clothing").

## II.  THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM PRESENTING IMPROPER LAY OPINION TESTIMONY.

### A.  The Court Should Preclude Lay Opinion Testimony Concerning Accounting Issues.

During the first and second trials, the government elicited testimony from former in-house CUC accountants opining on the legitimacy of accounting practices employed at CUC and the accuracy of CUC's financial statements.  See, e.g., Tr. (05/26/04) at 2332-33, 2435-37; Tr. (06/01/04) at 2815-16, 2819; Tr. (06/28/04) at 6308-18; Tr. (06/29/04) at 6344-47, 6377, 6403-06, 6474-75, 6479-80; Tr. (06/30/04) at 6536-41, 6616, 6664-66; Tr. (07/01/04) at 6752, 6830-34; Tr. (07/12/04) at 6942, 7115; Tr. (07/13/04) at 7307-11, 7325-26; Tr. (07/14/04) at 7395, 7405, 7495-96, 7538-39, 7553-61, 7566-67; Tr. (10/24/05) at 879, 880-82, 885, 955; Tr. (10/25/05) at 1070-73, 1074, 1076-78, 1078-79, 1091-92, 1093-96, 1097-100; Tr. (10/31/05) at 1291-92; Tr. (11/01/05) at 1498-99; see also Tr. (10/31/05) at 1389-90. The government did so without demonstrating, as it must under the third foundation requirement, that these opinions were "informed by reasoning processes familiar to the average person in everyday life rather than by scientific, technical, or other specialized knowledge."  Garcia, 413 F.3d at 216.  This is a burden that the government cannot meet because such testimony is clearly based on specialized knowledge, training, and education in accounting and should be excluded under

Rule 701(c).  See Wechsler v. Hunt Health Sys., Ltd., 198 F. Supp. 2d 508, 529 (S.D.N.Y. 2002) (CPA with personal knowledge of events could not provide lay opinion concerning whether it was proper for company to employ a certain accounting practice; opinion was "clearly an opinion based upon his expert knowledge" as a CPA).[4]

In the second trial, the Court often overruled Rule 701 objections to testimony by former CUC accountants as long as the witness clarified that the opinion testimony about the legitimacy of CUC's accounting and the accuracy of its financial statements was based on the witness' personal knowledge and experience at CUC.  For example, the Court permitted Ms. Pember, over objection, to opine on the accuracy of CUC's Form 10-K for the fiscal year ended January 31, 1997.

> Q.  And due to that participation, are you aware of the amount of the overstatement of CUC's income for 1/31/97?
>
> A.  Yes.
>
> Q.  What was the amount?

---

[4]    See also Garcia, 413 F.3d at 217 ("[H]is reasoning process was not that of an average person in everyday life; rather, it was that of a law enforcement officer with considerable specialized training and experience in narcotics trafficking."); United States v. Glenn, 312 F.3d 58, 67 (2d Cir. 2002) (error to admit lay opinion testimony about manner in which drug dealers carry handguns; testimony was admissible, if at all, only under Rule 702); Black v. Consol. Freightways Corp., 219 F. Supp. 2d 243, 249-50 (E.D.N.Y. 2002) (opinion testimony by fact witness inadmissible under Rule 701; testimony was based on specialized knowledge and was expert testimony under Rule 702); Faryniarz v. Nike, Inc., No. 00 Civ. 2623(NRB), 2002 WL 1968351, at *3 (S.D.N.Y. Aug. 23, 2002) ("Rule 701 testimony does not extend to technical conclusions"; witness who examined shoes could testify about what he observed, but not conclusions); Williams v. Roberts, 202 F.R.D. 294, 295-96 (M.D. Ala. 2001) (toxicologist could not present lay opinion testimony under Rule 701 because testimony would be based on specialized knowledge not available to general public).

MS. KEELEY:  Objection; 701, Your Honor.

THE COURT:  <u>The question is due to her participation, is she aware?</u>

MR. CARPENITO:  Yes.

THE COURT:  <u>Objection overruled</u>.

BY MR. CARPENITO:

Q.  You can answer the question, Ms. Pember.

A.  The merger reserve usage for that year that overstated earnings was in excess of $45 million.  The other categories, membership cancellation reserve and the immediate revenue recognition; $40 million for the immediate revenue recognition and it was still about the hundred million for the membership cancellation reserve.

Tr. (10/24/05) at 884-85 (emphasis added); <u>see also</u> <u>id.</u> at 955; Tr. (10/31/05) at

1,291; Tr. (11/01/05) at 1,498-99.

This focus on the witness' personal participation conflates the first and

third foundation requirements under Rule 701.  Irrespective of whether the

testimony is based upon the personal knowledge of the witness, the government

must still establish the third foundation requirement—that the testimony is not

based on specialized knowledge.  It is here that the government fails.  Accrual-

based, GAAP accounting is simply not familiar to the average person in everyday

life, and the government has not demonstrated that it is.  GAAP governs the

accuracy of financial statements filed with the SEC.  <u>See</u> 17 C.F.R. § 210.4-01(a)(1)

("Financial statements filed with the Commission which are not prepared in

accordance with generally accepted accounting principles will be presumed to be

misleading or inaccurate . . . .").  Application of GAAP to financial statements

contained in SEC filings, like Form 10-K, is not "familiar to the average person in

- 10 -

everyday life." Similarly, the issues of what expenses are properly chargeable to merger reserves and the proper size and scope of merger reserves have been the subject of considerable debate and analysis in the accounting profession.[5]

Accountants must undergo extensive training and testing before they are licensed to practice precisely because accounting principles are exceedingly complex and require specialized knowledge. Indeed, the government has acknowledged that "[t]he existence and operation of GAAP is not known by most laypersons," and that "[v]iolations of GAAP . . . standards are established through expert testimony." Opp'n to Forbes Pretrial Motion No. 49, at 3 [Docket No. 376] (citation omitted & ellipses in original).

Moreover, the government has identified at least one expert witness to testify about alleged GAAP violations, including CUC's and Cendant's "accounting treatment of such items as merger reserves, revenue recognition, membership cancellation reserves, and other matters," id., the very same matters about which Ms. Pember opined. The government cannot offer testimony on these subjects from its "cooperating" witnesses based on the premise that the witnesses were employed as accountants or that some of their accounting knowledge is based upon on-the-job training and experience. Under amended Rule 701, any testimony based on

---

[5]     Two landmark position papers were issued by the Financial Accounting Standards Board's Emerging Issues Task Force ("EITF") in the area of merger reserves, one in 1994 and one in 1995: EITF 94-3: Liability Recognition for Certain Employee Termination Benefits and Other Costs to Exit an Activity (Including Certain Costs Incurred in a Restructuring) and EITF 95-3: Recognition of Liabilities in Connection with a Purchase Business Combination.

specialized knowledge, education, or training is expert testimony, even if the source

of that specialized knowledge, education, or training is experience on the job. See,

e.g., Garcia, 413 F.3d at 216 ("We hold that the foundation requirements of Rule

701 do not permit a law enforcement agent to testify to an opinion so based and

formed if the agent's reasoning process depended, in whole or in part, on his

specialized training and experience."); Black, 219 F. Supp. 2d at 249 & n.6.  For

example, a treating physician's views about a patient's prognosis are expert

opinions under amended Rule 701, irrespective of the fact that the physician's views

were formed during the ordinary course of his or her work.  See Brandon v. Vill. of

Maywood, 179 F. Supp. 2d 847, 860 (N.D. Ill. 2001).

       Ms. Pember's opinion testimony on the propriety of accounting with

respect to merger reserves, membership cancellation reserves, and revenue

recognition violated the third foundation requirement of Rule 701.  As in Garcia,

"the government made no effort to demonstrate that [Pember's] challenged opinion

[testimony] was informed by reasoning processes familiar to the average person in

everyday life rather than by scientific, technical, or other specialized knowledge."

413 F.3d at 216.  Just as the agent's expertise in narcotics trafficking informed the

opinion testimony in Garcia, see id., Ms. Pember's expertise as a CPA informed her

opinion testimony.  "Based on this experience, certainly outside the ken of the

average person," id., Ms. Pember informed the jury that certain accounting was

improper, and she purported to quantify the amount of the impropriety.  Just as the

agent's reasoning process in Garcia was "that of a law enforcement officer with

considerable specialized training and experience in narcotics trafficking," id. at 217, Ms. Pember's testimony was that of an experienced CPA. "As such, [her] opinion testimony was not admissible under Rule 701." Id.

Accordingly, the Court should preclude any government fact witness from presenting testimony concerning his or her understanding of GAAP, or his or her opinions or beliefs about whether CUC's or Cendant's accounting practices or financial statements were legitimate or accurate, or purporting to quantify the amount of any alleged inaccuracy, because such testimony is expert opinion inadmissible under Rule 701. See Wechsler, 198 F. Supp. 2d at 529; In re Campbell Soup Co. Sec. Litig., 145 F. Supp. 2d 574, 593 (D.N.J. 2001) ("it is well-settled in this circuit that what accounting practices comprise GAAP is a question of fact best addressed through expert testimony") (collecting cases); Danis v. USN Commc'ns, Inc., 121 F. Supp. 2d 1183, 1192 (N.D. Ill. 2000) ("Violations of GAAP and GAAS standards are established through expert testimony.") (collecting cases).[6]

### B.    The Court Should Preclude Speculative and Unhelpful Lay Opinion Testimony Concerning Mr. Forbes.

The Court also should preclude the government from presenting lay opinion testimony by government witnesses concerning their speculation, beliefs, or opinions about whether Mr. Forbes had knowledge of, or was involved in, the

---

[6]    This improper testimony is especially problematic insofar as it relates to the accounting in the pre-1995 time period because records from that time period are incomplete, and the government has not offered any expert testimony with respect to that time period. See also Forbes Third Trial Mot. No. 3 (Under Seal) [Docket No. 2191].

alleged fraud, or whether Mr. Forbes had knowledge of accounting or other concepts. Any such testimony is inadmissible on the ground that: (i) it is not based on the witness's personal knowledge and/or (ii) it is not helpful to the jury.

The Second Circuit has determined that "in most instances" lay opinion testimony concerning a party's knowledge "will not meet the requirements of Rule 701." United States v. Rea, 958 F.2d 1206, 1216 (2d Cir. 1992). Where a witness does not identify any factual basis for opinion testimony concerning a defendant's knowledge, "the proffered opinion obviously fails completely to meet the requirements of Rule 701, first because there is no way for the court to assess whether it is rationally based on the witness's perceptions, and second because the opinion does not help the jury but only tells it in conclusory fashion what it should find." Id. Conversely, "when a witness has fully described what a defendant was in a position to observe, what the defendant was told, and what the defendant said or did, the witness's opinion as to the defendant's knowledge will often not be 'helpful' within the meaning of Rule 701 because the jury will be in as good a position as the witness to draw the inference as to whether or not the defendant knew." Id. Thus, even where a lay witness has a foundation for his or her opinion as to a party's alleged knowledge, the testimony should be excluded on the ground that it is not helpful to the jury under Rule 701(b).[7]

---

[7]     See also Krueger v. State Farm Mutual Auto. Ins. Co., 707 F.2d 312, 316-17 (8th Cir. 1983) (cited with approval in Rea) (opinion testimony as to whether motorist could have avoided accident properly excluded as not helpful to jury where witness testified to facts concerning distances, speed, and driving conditions).

- 14 -

### 1.    Speculative Testimony

The vast majority of the witnesses the government intends to call at trial have no personal knowledge about whether Mr. Forbes purportedly had any involvement in the alleged fraud.  Indeed, Cosmo Corigliano is the only witness who claims to have had direct conversations with Mr. Forbes concerning the alleged fraud.  Prior to the first and second trials, the government conceded that witnesses lacking personal knowledge concerning Mr. Forbes should not be invited to speculate about what he "must have known" or "had to know."  See Opp'n to Forbes Mot. In Limine Nos. 1 & 2, at 2 [Docket No. 645] ("None of these witnesses will speculate that either of the defendants 'must have known' about the conspiracy."); Opp'n Forbes Retrial Mot. In Limine No. 3, at 13 [Docket No. 1741] ("As During the First Trial, the Cooperating Witnesses Will Not Speculate about Forbes' Guilty State of Mind.").[8]

Lay opinion testimony that consists of speculation by witnesses who lack personal knowledge is inadmissible under Fed. R. Evid. 701.  See, e.g., Hester v. BIC Corp., 225 F.3d 178, 184 (2d Cir. 2000) (reversible error to allow lay opinion testimony that "was not focused on objective facts, but instead consisted of the

---

[8]    Although none of the "cooperating" witnesses speculated about what Mr. Forbes supposedly "knew," Steven Kernkraut, a Bear Stearns analyst who did not testify in the first trial, offered improper testimony in the second trial about Mr. Forbes' alleged state of mind.  Because Mr. Kernkraut offered testimony that was improper in numerous other respects (much of his testimony was stricken), Mr. Forbes has filed a separate motion addressing Mr. Kernkraut's testimony.  See Forbes Third Trial Mot. In Limine No. 3 (filed April 17, 2006).

witnesses' subjective impressions that [the supervisor's] condescension to [the plaintiff] was attributable to [her] race" (quotation omitted)); <u>United States v. Whitworth</u>, 856 F.2d 1268, 1284-85 (9th Cir. 1988) (abuse of discretion for trial court to allow alleged co-conspirator to testify about whether he had "suspicions or apprehensions" that the defendant knew that classified material was sold to Soviet Union; question clearly called for speculation concerning defendant's state of mind). Accordingly, the Court should preclude the government from eliciting any lay opinion testimony concerning a government witness's speculation about whether or not Mr. Forbes knew about the alleged fraud.

Similarly, the Court should preclude speculative testimony by government witnesses concerning their beliefs or opinions about whether Mr. Forbes was involved in the alleged fraud.  Such testimony would not be based on the witness's personal knowledge and is barred by Fed. R. Evid. 701(a). <u>E.g.</u>, <u>United States v. Glenn</u>, 312 F.3d 58, 66-67 (2d Cir. 2002) (reversible error to admit lay opinion testimony that was not based on witness's first-hand knowledge or observation); <u>United States v. Marshall</u>, 173 F.3d 1312, 1315  (11th Cir. 1999) (abuse of discretion to admit lay opinion testimony from witness without personal knowledge as to whether defendant was source of drugs); <u>Rea</u>, 958 F.2d at 1216 (lay opinion testimony that is not based on witness's personal observations inadmissible under Rule 701).

## 2.    Testimony that Is Not Helpful to the Jury

In addition, the Court should exclude any lay opinion testimony concerning Mr. Forbes' purported knowledge, intent, or state of mind by Cosmo Corigliano or any other witness now claiming to have personal knowledge with respect to Mr. Forbes' alleged involvement in the alleged fraud or Mr. Forbes' alleged understanding of accounting or other concepts.  While government witnesses may testify to claimed interactions with Mr. Forbes, they cannot testify to the conclusions or beliefs they formed as a result of those purported interactions because any such testimony would not be helpful to the jury.

"An opinion is only helpful to the jury 'if it aids or clarifies an issue that the jury would not otherwise be as competent to understand.'"  McNulty v. Citadel Broad. Co., No. 01-3902, 2003 WL 500171, at *6 (3d Cir. Feb. 26, 2003) (quoting Lauria, 145 F.3d at 600).  Because lay opinion testimony on the subject of a defendant's knowledge and state of mind will do "no more than instruct the jury as to what result it should reach," Rea, 958 F.2d at 1219, on the critical issue of knowledge, and will not be helpful to the jury, it should be excluded under Rule 701.  See also United States v. Grinage, 390 F.3d 746, 751 (2d Cir. 2004) ("[T]he agent's testimony as to his interpretations of the calls went beyond permissible lay opinion testimony under Rule 701(b) because, rather than being helpful to the jury, it usurped the jury's function."); Lynch v. City of Boston, 180 F.3d 1, 17 (1st Cir. 1999) ("Lay opinions are not helpful when the jury can readily draw the necessary inferences and conclusions without the aid of the opinion."); United States Aviation

- 17 -

Underwriters, Inc. v. Yellow Freight Sys., Inc., 296 F. Supp. 2d 1322, 1333 (S.D. Ala. 2003) (lay opinion testimony inadmissible where "[a] jury can look at the same evidence considered by [the witness] and reach its own conclusions").

The Second Circuit's decision in Rea is instructive. The Second Circuit held that it was error to permit testimony by an accountant testifying as a fact witness that the defendant "had to" know that federal excise taxes would not be paid on certain transactions. 958 F.2d at 1217. The Court concluded that the district court abused its discretion in allowing the testimony because it was not helpful to the jury; the jury was in a better position than the witness to decide "whether or not Rea knew he was participating in a tax evasion scheme," id. at 1219, and the testimony "did no more than instruct the jury as to what result it should reach on the issue of knowledge." Id.[9]

Similarly, in Hester, the Second Circuit held that it was reversible error to allow lay opinion testimony from company employees as to whether a supervisor acted with racial animus toward the plaintiff. 225 F.3d at 185. The Court observed that a "witness's opinion as to the defendant's ultimate motivations will often not be helpful within the meaning of Rule 701 because the jury will be in as good a position as the witness to draw the inference as to whether or not the

---

[9]    The Court determined that the error was harmless because there was extensive evidence of guilt and the government did not rely on the improper testimony in summation. Id. at 1220-21. In this case, the admission of such testimony would be highly prejudicial because the government's case against Mr. Forbes is extremely weak, as evidenced by the length of deliberations and the jury's inability to reach a verdict against Mr. Forbes in the first two trials.

defendant was motivated by an impermissible animus." Id. (quotation & brackets omitted).

Other courts also have held that lay opinion testimony concerning a defendant's knowledge or state of mind cannot satisfy the "helpfulness" requirement of Rule 701. In United States v. Anderskow, 88 F.3d 245 (3d Cir. 1996), the court held that the trial court erred when it permitted an alleged co-conspirator to testify about his belief that the defendant knew about alleged criminal conduct. Id. at 251. The court explained, following the Second Circuit's decision in Rea, that the testimony was not helpful to the jury and improperly turned the witness into "a thirteenth juror." Id. at 250. Because the jury was aware of "the very circumstantial evidence" upon which the witness based his opinion, and was capable of making its own determination as to the defendant's knowledge based on that evidence, it was not helpful for the jury to hear the witness's subjective belief concerning the defendant's knowledge. Id. at 251; see also United States v. Henke, 222 F.3d 633, 641-42 (9th Cir. 2000) (reversing conviction based on improper admission of lay opinion testimony concerning defendant's knowledge on the ground it was not helpful to the jury); United States v. Hauert, 40 F.3d 197, 201-02 (7th Cir. 1994) (affirming exclusion of lay opinion testimony concerning defendant's knowledge of tax laws and state of mind on ground it was not helpful to jury).

Here, as in Rea, Hester, Anderskow, Henke, and Hauert, testimony by government witnesses concerning their conclusions and beliefs about Mr. Forbes's knowledge or state of mind would not be helpful to the jury. The jury will have

- 19 -

available to it, and will be fully capable of assessing, the purported facts upon which such witnesses base their conclusions.[10]

## CONCLUSION

For the reasons set forth above, the Court should preclude the government from presenting improper lay opinion testimony at trial.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon  (Bar No. ct24159)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
 bsimon@wc.com (e-mail)

- and -

---

[10]    United States v. Skelly, __ F.3d __, 2006 WL 766746 (2d Cir. Mar. 21, 2006), does not change the analysis.  In that case, a cooperating witness volunteered in response to a "proper question" that the defendant "was aware of what was going on with the stocks." Id. at *4.  The Second Circuit held that this was not reversible error because this was "simply a summary of the witness' more particularized testimony as to Gross' involvement in the conspiracy." Id.  Moreover, unlike the present case, there was "ample evidence of [the defendant's] involvement in the charged offenses." Id.

- 20 -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## **CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing Memorandum in Support of

Motion of Defendant Walter A. Forbes to Preclude the Government from Presenting

Improper Lay Opinion Testimony at Trial (Forbes Third Trial Motion *In Limine* No.

10) to be filed electronically and to be served on April 17, 2006 to the following via

e-mail:

>   Norman Gross, Esq. (norman.gross@usdoj.gov)
>   Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
>   Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)


Barry S. Simon