# EXHIBIT 13

Vol. XIII -

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
- - - - - - - - - - - - - - - - - x
                                   :
UNITED STATES OF AMERICA:          :No. 3:02CR264(AWT)
                                   :
         vs.                       :
                                   :
WALTER A. FORBES,                  :
E. KIRK SHELTON,                   :
                                   :HARTFORD, CONNECTICUT
              Defendants           :JUNE 1, 2004
                                   :
- - - - - - - - - - - - - - - - - x
```

JURY TRIAL

VOLUME XIII

BEFORE:

    HON. ALVIN W. THOMPSON, U.S.D.J.

    and a Jury of Twelve

Diana Huntington, RMR
Corinna Thompson, RPR
Melanie G. Collard, RDR
Official Court Reporters

Page 2654

1    And again, Your Honor, I would respectfully
2    direct the Court's attention to United States against
3    Newell which was cited in our Motion to Quash the Third
4    Subpoena served on Ms. Pember for the proposition that the
5    fact that an attorney makes a proffer to the government
6    does not render prior conversations any less privileged.
7        MR EDELMAN: Your Honor, the suggestion that
8    this was a hypothetical proffer that could not be used
9    against Ms. Pember has never been suggested by the
10   government, something I would have expected would have
11   been disclosed if there was an agreement along the way and
12   ties in to our requests paragraphs one and two, which I'll
13   get to in a moment.
14       THE COURT: Why don't you get to them now.
15       MR EDELMAN: With respect to one and two, there
16   we're not limiting our request to statements made by
17   Ms. Pember. The fact is that to the extent that the
18   negotiation of this agreement were to show, for example,
19   that the government initially came out and said we want
20   you to plead to three counts with 15 years of exposure,
21   and it wound up being one count. And there's
22   correspondence going back and forth where Ms. Pember
23   requests the benefit of less. There are many issues where
24   this would pertain. We should be permitted to offer that
25   correspondence to show the benefit that Ms. Pember

Page 2655

1    received. This is not a situation where we are limited or
2    limiting our request to just statements made by Ms. Pember
3    that would evidence her bias. We are permitted to prove
4    bias by putting in extrinsic evidence that would put
5    before the jury that Ms. Pember sought a benefit and
6    obtained a benefit. And the way to do that, as in any
7    contract, is to show the course of the negotiations here.
8        The government and Ms. Pember should not be
9    permitted to insulate the way that this deal was cooked
10   from scrutiny of the jury by just saying, "Here it is."
11   The jury has no way or a limited way of assessing the
12   unusual nature and the extent to which it benefits
13   Ms. Pember. We should be permitted access to the
14   documents that led up to this bargain being made. And
15   that's clearly called for by the Second Circuit case that
16   we cited to you, Your Honor.
17       THE COURT: Which one?
18       MR EDELMAN: I have to check my memo, but the
19   Harvey case I think made clear that there's a fairly broad
20   berth allowed to a defendant in putting on extrinsic
21   evidence of bias.
22       THE COURT: Yes, but it doesn't say that this
23   kind of correspondence between counsel and the government
24   is admissible.
25       MR EDELMAN: But it stands for the proposition

Page 2656

1    that evidence that would show the bias and the benefits --
2    we start from a premise --
3        THE COURT: There's lots of evidence that you
4    could go out and try to use to show that a witness has a
5    bias. The fact that you could try to use that evidence to
6    show the witness has a bias doesn't necessarily make it
7    admissible. It's the same approach we had in terms of
8    impeachment. And the argument that was made that because
9    something could be used for impeachment purposes, it was
10   evidentiary under 17(c). No. It's got to be admissible.
11   Relevant and admissible in order to be evidentiary. And
12   if it is, then you're not precluded from using it simply
13   because it's going to be used for impeachment purposes.
14       We're having the same leap in logic here as I
15   hear it because what you're telling me is that because you
16   have something that you've identified that you want to use
17   for -- to attack a witness on the grounds of bias, you can
18   ignore all the other evidentiary rules and have that trump
19   the fact that you cannot, under the law of our circuit, at
20   least, take a statement by the witness's counsel and use
21   that statement to impeach the witness unless the witness
22   has adopted it.
23       MR EDELMAN: This isn't about impeachment. For
24   bias, and that's why we cited the Harvey case, the first
25   sentence in our brief, that bias of a witness is not a

Page 2657

1    collateral issue. And extrinsic evidence is admissible to
2    prove that a witness has a motive to testify falsely.
3        So we start from the proposition that where the
4    issue is bias, extrinsic evidence is admissible. And then
5    the question becomes, the argument Ms. Gredd made was
6    we're free to cross-examine Ms. Pember about how her deal
7    got arrived at, but we're not -- this would be going
8    beyond the bounds to put in evidence that would establish
9    how the deal was arrived at.
10       If there's a document that shows Ms. Pember
11   initially requested a two-count deal that would have had
12   ten years of exposure and wound up getting a one-count
13   deal with five years of exposure, that's highly relevant
14   in establishing her bias. And those documents would be
15   admissible. And we should be permitted the opportunity to
16   have access to those documents. Under Harvey they are
17   admissible.
18       THE COURT: Harvey doesn't say that they are
19   admissible. Harvey states the general principle. And
20   none of the cases that talk about statements of this kind
21   or memos or letters extend to the -- extend that principle
22   to permit the introduction into evidence of a statement by
23   the witness's lawyer, a statement by a case agent, which
24   is another one of the cases, and I'm trying to think of
25   the other -- but all the other cases really deal with

Page 2658

1  statements by the witness. And what you have happening is
2  you have other people coming into court to testify to or
3  to try to testify in some instances and to testify in
4  others as to statements that a witness made or actions
5  that a witness took, none of which is a situation where
6  you have the witness's lawyer having sent letters back and
7  forth in terms of negotiation or otherwise and the witness
8  not having adopted the statement. And then you admit that
9  as substantive evidence as to the bias of the witness.
10 You have to at least lay a foundation that the witness
11 adopted it.
12        MR EDELMAN: We're not making the argument that
13 we will show at trial that Ms. Pember adopted a particular
14 statement.
15        THE COURT: I know you're not. And that's the
16 problem.
17        MR EDELMAN: With respect to one and two, we're
18 offering it for a different purpose. We're offering this
19 evidence to show that Ms. Pember received a significant
20 benefit. This is the most significant benefit in the
21 case. Ms. Pember could have been charged with felonies
22 that would have exposed her to 10 or 15 years in prison
23 where the guidelines call for those numbers. Now we
24 have -- there's correspondence going back and forth
25 presumably that talks about how we arrived at a five-year

Page 2659

1  deal that clearly goes to those benefits. And those
2  benefits clearly evidence bias and we should be able to
3  establish before the jury the fact that she got such a
4  favorable deal.
5        THE COURT: You will be able to go to that and
6  establish. You just cannot do with it evidence that's not
7  admissible and those letters are not admissible.
8        MR EDELMAN: We respectfully disagree and think
9  it should be admissible.
10       THE COURT: I understand.
11 I think that resolves that motion to quash.
12       MS. GREDD: I think it does, Your Honor.
13       THE COURT: Motion's granted.
14 I was going to ask a question about something
15 else, but we'll bring it up later.
16       MR. SIMON: Briefly, the correspondence to be
17 the basis for questions to be used on cross-examination
18 and to the extent that they're in the hands of the
19 government, we have a pending discovery motion which
20 covers that. Under Rule 16, material only has to be
21 material to the preparation of the defense under 16 to be
22 producible. And so to the extent that those documents can
23 be the basis for forming questions, to the extent that
24 it's in the hands of the government, it should certainly
25 be produced pursuant to pending discovery requests.

Page 2660

1        THE COURT: Actually, I was halfway through that
2  before I came in. That will be the first thing I'll look
3  at during the break. If you have a chance, direct me to
4  where in your papers that is, give it to Attorney Fowler.
5        MR. SIMON: I don't have it here, Your Honor,
6  because it's been something that's been at issue for quite
7  a period of time.
8        THE COURT: That's what I was in the middle of.
9        MR. SIMON: That is a very different issue,
10 Your Honor.
11       THE COURT: It is.
12       MR. SIMON: There are Giglio issues as well
13 which we've also raised with the government given the fact
14 that there have been over 50 meetings between this witness
15 and the government.
16       THE COURT: The point I was looking at just
17 before I came in was the discussion between counsel as to
18 materiality versus utility. So that's what I was looking
19 at.
20       MR. SIMON: Again, the cases have a broad
21 definition of material for preparation for the defense in
22 terms of ability to use on cross-examination, develop
23 evidence, and even contact witnesses.
24       THE COURT: I think where you and the government
25 disagree is what's the definition of "material." The

Page 2661

1  government's position is that you're substituting for
2  "material" "utility" as a definition. And that's what I
3  was sort of looking at.
4        MR. SIMON: Nobody's ever suggested
5  "materiality" in terms of the choice of preparation of the
6  defense is the same as, for example, Brady material.
7  We've got millions of pages of documents in discovery and
8  it would be a little bizarre that you get broad discovery
9  of things that the government thinks aren't really
10 important but we might we may be able to use in some way
11 and things that really are important for cross-examining a
12 key witness, suddenly they say, no, it's got to be
13 critical material --
14       THE COURT: It depends on what extent you're
15 talking about, the government voluntarily handing over
16 things versus the things the government takes the position
17 it's not obligated to turn over, so it's not going to.
18       MR. SIMON: At a minimum, Your Honor, we would
19 want all those materials presented to the Court. If
20 they're not produced to the defense sealed and made part
21 of the case. This relates to a key witness. The same
22 issues are there with respect to Mr. Corigliano, with
23 respect to the key witnesses to Mr. Forbes. We want to
24 make sure there is a clear record with respect to these
25 materials.