## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 3:02CR264 (AHN) |
| | ) | |
| WALTER A. FORBES | ) | April 17, 2006 |
| | ) | |

## MOTION OF WALTER A. FORBES FOR PERMISSION TO EXAMINE MR. CORIGLIANO ON POLYGRAPH EXAMINATIONS
### (Forbes Third Trial Motion *In Limine* No. 19)

Walter A. Forbes, through undersigned counsel, respectfully moves for an order permitting him to examine Cosmo Corigliano about (i) his prior statements to the private polygraph examiner(s) under Fed. R. Evid. 613(a); and (ii) his use of the alleged polygraph results to mislead the government under Fed. R. Evid. 608(b). In the alternative, Mr. Forbes requests an evidentiary hearing outside the presence of the jury to determine the facts and circumstances of the polygraph examinations. The grounds for this motion are set forth in the accompanying memorandum of points and authorities.

Oral Argument Requested

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (ct17115)
Barry S. Simon (ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (ct05103)
Thomas J. Murphy (ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Motion of Defendant

Walter A. Forbes for Permission to Examine Mr. Corigliano on Polygraph

Examinations (Forbes Third Trial Motion *In Limine* No. 19) to be filed

electronically and to be served on April 17, 2006 to the following via e-mail:

> Norman Gross, Esq. (norman.gross@usdoj.gov)
> Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
> Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

Barry S. Simon

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 3:02CR264 (AHN) |
| | ) | |
| WALTER A. FORBES | ) | April 17, 2006 |
| | ) | |

### MEMORANDUM IN SUPPORT OF MOTION OF WALTER A. FORBES FOR PERMISSION TO EXAMINE MR. CORIGLIANO ON POLYGRAPH EXAMINATIONS
#### (Forbes Third Trial Motion *In Limine* No. 19)

Walter A. Forbes, through undersigned counsel, respectfully submits this memorandum in support of his motion for an order permitting him to examine Cosmo Corigliano about (i) his prior statements to the private polygraph examiner(s) under Fed. R. Evid. 613(a); and (ii) his use of the alleged polygraph results to mislead the government under Fed. R. Evid. 608(b). In the alternative, Mr. Forbes requests an evidentiary hearing outside the presence of the jury to determine the facts and circumstances of the polygraph examinations.[1]

---

[1]     In the first and second trials, the Court precluded cross-examination of Mr. Corigliano regarding polygraph issues, and the Court denied Mr. Forbes the opportunity to make a factual record by examining Mr. Corigliano outside the presence of the jury.  See Tr. (07/20/04) at 8030-34; Tr. (11/08/05) at 2093; Docket No. 1969.

Oral Argument Requested

## BACKGROUND

### I.    The First Polygraph Examination

On November 17, 1998, at a time when Mr. Corigliano was maintaining his innocence, his attorneys met with the government in an effort to persuade the government not to prosecute him.  Ex. 1 at 2 (Letter from Carney, et al. to Simon, June 30, 2004).  Mr. Corigliano's attorneys represented to the government, on his behalf, that:

> Corigliano was not a knowing participant in a fraud, he did not falsify or instruct anyone else to falsify any matter.  If there were things that were wrong, Corigliano does not know about them.  If some things do not comport with proper accounting, it was not because he knowingly did anything wrong.

Id. at 3.  Mr. Corigliano knew that these representations were untrue.  In an effort to bolster his false claims of innocence, Mr. Corigliano took a privately-administered polygraph examination and his attorneys told the government that "they had polygraphed Corigliano and that he had done very well."  Id. at 6.  Mr. Corigliano subsequently pled guilty and he began "cooperating" against Mr. Forbes.

### II.    The Second Polygraph Examination

During the first trial, the government moved to preclude the defendants from examining Mr. Corigliano about polygraph issues.  In this context, the government revealed that Mr. Corigliano had taken another polygraph examination in addition to the polygraph examination that Mr. Corigliano had supposedly passed.  The government represented that

- 2 -

"Corigliano's lawyers later informed the Government that Corigliano had submitted to a second polygraph examination, but provided no additional information about that examination." Mem. Supp. Mot. Preclude Cross-Examination of Cosmo Corigliano Regarding Polygraph Examinations at 1 [Docket No. 885].

The government did not state when Mr. Corigliano's counsel had disclosed the existence of this second polygraph. During the second trial, Mr. Corigliano revealed that his counsel first disclosed to the government the existence of the second polygraph examination in the summer of 2004 when the polygraph issue was before the Court in the first trial. See Reply Supp. Mot. Quash at 19 n.11 [Docket No. 1883].[2]

## ARGUMENT

Cases recognize a distinction between introducing the results of a polygraph examination to prove that a witness is telling the truth or lying at trial, and introducing evidence relating to a polygraph examination for limited purposes unrelated to the substantive correctness of the polygraph

---

[2] The timing of the disclosure to the government of the second polygraph raises the possibility that Mr. Corigliano engaged in selective disclosure by initially telling the government the results of a favorable polygraph exam and withholding the results of an unfavorable or inconclusive one. But the parties and the Court should not be forced to speculate about the facts. Mr. Corigliano's plea agreement requires him to disclose all information requested by the government. See Ex. 2 at 2 (Plea Agreement). The government apparently did not ask Mr. Corigliano to disclose the questions posed during the polygraph tests, the answers, the results of the second test, the identity or identities of the polygrapher(s), or the timing and sequence of the polygraph tests. It should do so now so that the Court does not have to decide the pending issues in a partial vacuum.

results.  Indeed, several cases hold that evidence unrelated to the substantive correctness of polygraph results is admissible for limited purposes.  One such purpose is to impeach a witness with his prior statements under Fed. R. Evid. 613(a).  Irrespective of whether the polygraph examination results correctly showed deception, no deception or were inconclusive, Rule 613(a) permits Mr. Forbes to cross-examine Mr. Corigliano about his prior statements to the polygraphers.

Another permissible use of polygraph evidence is to impeach a witness with specific instances of conduct probative of untruthfulness under Fed. R. Evid. 608(b).  Thus, Mr. Forbes should be permitted to cross-examine Mr. Corigliano about whether he lied to the polygraphers.  Rule 608(b) likewise permits Mr. Forbes to cross-examine Mr. Corigliano about his efforts to use a polygraph examination to mislead the government about his culpability because such conduct is probative of Mr. Corigliano's character for untruthfulness.  This is true whether Mr. Corigliano performed poorly on the test, but nevertheless represented to the government that he had performed well; Mr. Corigliano did not even take a test, but represented to the government that he had; Mr. Corigliano answered irrelevant or misleading questions, but represented to the government that he had performed well on the test; or Mr. Corigliano falsely answered relevant questions, performed well on the test, and disclosed his performance to the government.  Like the

- 4 -

other lines of cross-examination discussed above, this questioning does not depend on the substantive correctness of the polygraph results.

Mr. Corigliano is the critical witness in this case. Without his testimony, there would be no case. Under these circumstances, complete foreclosure of cross-examination on the issue of Mr. Corigliano's polygraph examinations, which is highly probative of his character for untruthfulness, would violate Mr. Forbes' Sixth Amendment right of confrontation.

## I.    EVIDENCE UNRELATED TO THE SUBSTANTIVE CORRECTNESS OF THE POLYGRAPH RESULTS IS ADMISSIBLE FOR LIMITED PURPOSES.

Evidence concerning polygraph examinations is admissible for limited purposes unrelated to the substantive correctness of the polygraph results. See United States v. Lynn, 856 F.2d 430, 433 (1st Cir. 1988) ("[P]olygraph results are admissible for reasons other than proving the substance contained."); United States v. Hart, 344 F. Supp. 522, 523 (E.D.N.Y. 1971) ("Evidence of lie detector tests is admissible for some purposes under prior decisions.").[3]  For example, courts have permitted cross-examination concerning a witness's refusal to take a polygraph examination

_____

[3]    Although Mr. Forbes is not now seeking to introduce the results of Mr. Corigliano's polygraph examinations for their substantive correctness, some courts have ruled that polygraph results may be admissible for such purposes. See United States v. Scheffer, 523 U.S. 303, 311 (1998) (noting that "some Federal Courts of Appeals have abandoned the per se rule excluding polygraph evidence, leaving its admission or exclusion to the discretion of district courts under Daubert"). The Second Circuit has not yet decided whether polygraphy has reached a sufficient state of reliability for polygraph results to be admissible for their substantive correctness. See, e.g., United States v. Messina, 131 F.3d 36, 42 (2d Cir. 1997).

to show motive and to impeach the witness's credibility. See Underwood v.
Colonial Penn Ins. Co., 888 F.2d 588, 590-91 (8th Cir. 1990). Similarly,
courts have permitted a witness to testify about his willingness to take a
polygraph examination because it was probative of "his credibility and the
[insurance company's] motive in refusing the claim." Murphy v. Cincinnati
Ins. Co., 772 F.2d 273, 277 (6th Cir. 1985) ("An insured's willingness to
cooperate in an insurance company's investigation and request for a
polygraph examination does not depend on the scientific acceptability which
is necessary to support the admissibility of polygraph test results."); see also
United States v. Matthews, 20 F.3d 538, 552 (2d Cir. 1994) (government
cross-examined defendant about subsequent refusal to take polygraph
examination after defendant elicited testimony that he initially offered to
take polygraph examination).

When a defendant attacked the quality of the government's
investigation, the court admitted evidence that a full-scale investigation was
not necessary because the defendant had failed a polygraph examination.
See United States v. Hall, 805 F.2d 1410, 1416-17 (10th Cir. 1986). Courts
have also admitted evidence relating to failed polygraph examinations
followed by confessions when defendants claimed the confessions were
involuntary. See, e.g., United States v. Kampiles, 609 F.2d 1233, 1244 (7th
Cir. 1979) ("The probative value of the evidence in sustaining the specific

- 6 -

point for which it was being offered here is substantial, and the party offering
the evidence was not asserting the accuracy of the test results.").

Where a criminal defendant seeks to cross-examine a witness
concerning a polygraph examination, courts must grant considerable latitude
because of the defendant's Sixth Amendment right of confrontation.  The
First Circuit's decision in Lynn, 856 F.2d 430, is instructive.  In that case,
Bryon, a key government witness, testified pursuant to a plea agreement that
required him to submit to a polygraph examination and further provided that
the government could nullify the agreement if he failed to complete the
examination successfully.  Id. at 432.  The polygrapher deemed some of
Bryon's answers to be "inconclusive."  Id.  Lynn sought to impeach Bryon by
showing that he had not successfully completed the test and therefore had
reason to continue to please the government by lying about Lynn.  The
district court precluded cross-examination about the polygraph examination.

The First Circuit held that this restriction of cross-examination
violated Lynn's Sixth Amendment right of confrontation.

> In this case, we are faced with the district court's
> complete foreclosure of cross-examination on the
> issue of Bryon's polygraph examination.  There is
> no question of the relevance of the intended area of
> inquiry - Bryon's motivation to lie to continue to
> curry favor with the government.  Moreover,
> polygraph results are admissible for reasons other
> than proving the substance contained . . . . We find
> that by cutting off all cross-examination into a
> relevant and not fully explored area, the district
> court abused its discretion.  The constitutional

> right to confront and cross-examine witnesses was
> impaired.

Id. at 433-34.[4]

## II.    RULE 613(a) PERMITS MR. FORBES TO EXAMINE MR. CORIGLIANO ABOUT HIS PRIOR STATEMENTS TO THE POLYGRAPHERS.

Fed. R. Evid. 613(a) permits impeachment of a witness with a

prior statement by questioning the witness about whether he made the

statement.

> **(a) Examining witness concerning prior statement.** In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.

Id.; see also United States v. Adamson, 291 F.3d 606, 612 (9th Cir. 2002)

("When exploring the credibility of a government witness who testifies

against a criminal defendant at trial, it is axiomatic that the defendant may

employ the witness's prior inconsistent statements in order to impeach the

credibility of the witness." (citing United States v. Hale, 422 U.S. 171, 176

(1975))). Under Rule 613(a), a party can cross-examine a witness about a

prior written statement or about a prior oral statement. See Jankins v. TDC

Mgmt. Corp., 21 F.3d 436, 442 (D.C. Cir. 1994) ("Fed. R. Evid. 613(a) clearly

---

[4]    See also Hart, 344 F. Supp. at 523 (when witness failed government polygraph exam, but government disregarded results and put witness on stand in first trial, court permitted defendants in retrial to inquire about polygraph exam as well as any investigations made by government which might have put it on notice that government witness was untruthful).

contemplates that a witness's prior oral statement may be the subject of cross-examination, as it explicitly addresses 'examining a witness concerning a prior statement made by the witness, whether written or not.'").

Accordingly, the Court should permit Mr. Forbes to cross-examine Mr. Corigliano about his prior statements to the polygraphers. See, e.g., United States v. Melton, 27 Fed. Appx. 664, 666 (7th Cir. 2001) (unpublished) ("Here, the district court allowed [defendant] to cross-examine Lemus about his responses to the polygraph questions and to establish that Lemus decided to cooperate after Agent Smith communicated to him his belief that Lemus had lied in response to those questions."). This line of cross-examination is unrelated to the substantive correctness of the polygraph results and is expressly permitted by Rule 613(a).[5]

## III.    RULE 608(b) PERMITS MR. FORBES TO EXAMINE MR. CORIGLIANO ABOUT HIS EFFORTS TO USE THE POLYGRAPH EXAMINATION TO MISLEAD THE GOVERMENT.

Fed. R. Evid. 608(b) permits cross-examination concerning "[s]pecific instances of the conduct of a witness, for the purpose of attacking . . . the witness' character for truthfulness . . . if probative of truthfulness or untruthfulness." Under this Rule, the Second Circuit has "upheld, for example, cross-examination into an attorney's disbarment, into a witness's

---

[5]    Mr. Forbes still does not know the basic facts and circumstances surrounding the polygraph examinations, such as the dates, the questions, the answers, and whether there were one or two polygraphers. He has subpoenaed the documents, but this is information available to the government that should be produced under Brady/Giglio.

failure to disclose a prior arrest on his bar application, and into a prior

finding by an Immigration Judge that the witness's testimony in a

deportation proceeding was not credible." Hynes v. Coughlin, 79 F.3d 285,

294 (2d Cir. 1996) (citations omitted); see also Chnapkova v. Koh, 985 F.2d

79, 83 (2d Cir. 1993) (district court abused discretion by precluding cross-

examination under Rule 608(b) regarding failure to file tax returns because

plaintiff's credibility "was of such crucial importance, and because her failure

to file tax returns bore directly on her credibility"); United States v. Jones,

900 F.2d 512, 520 (2d Cir. 1990) (Rule 608(b) permits cross-examination

regarding false statements "on applications for employment, an apartment, a

driver's license, a loan, membership in the National Association of Securities

Dealers, and on her income tax returns"); United States v. Sperling, 726 F.2d

69, 75 (2d Cir. 1984) (Rule 608(b) permits cross-examination regarding "false

credit card applications").

Accordingly, Mr. Forbes should be permitted to cross-examine

Mr. Corigliano about whether he lied to the polygrapher(s) because prior false

statements are probative of character for untruthfulness.  Mr. Corigliano's

efforts to mislead the government about his culpability with representations

about a polygraph examination are even more probative of his character for

untruthfulness.  In the fall of 1998, the government was investigating

whether Mr. Corigliano had engaged in fraudulent accounting practices at

CUC.  Knowing that he had engaged in fraudulent accounting practices, Mr.

Corigliano maintained his innocence and sought to avoid prosecution. To achieve his goal of avoiding prosecution, he apparently took a polygraph examination, knowing in advance that favorable results would be misleading. His attorneys then represented to the government that Mr. Corigliano "was not a knowing participant in a fraud" and that "they had polygraphed Corigliano and that he had done very well." Ex. 1 at 3, 6 (Letter from Carney, et al. to Simon, June 30, 2004).

This evidence is probative of Mr. Corigliano's character for untruthfulness, irrespective of the substantive correctness of the polygraph results. Mr. Corigliano knew that he had engaged in fraudulent accounting practices, yet he employed representations about a powerful device (the polygraph) in an effort to mislead the government into believing that he had not.

## IV.   THE ATTORNEY-CLIENT PRIVILEGE DOES NOT SHIELD MR. CORIGLIANO FROM CROSS-EXAMINATION ABOUT MATTERS HIS ATTORNEYS DISCLOSED TO THE GOVERNMENT.

In denying Mr. Forbes' motion to examine Mr. Corigliano on polygraph issues, the Court erroneously noted as a threshold matter that "what Corigliano knows about the polygraph examination is part of protected attorney-client communication and that the work of the polygraph examiner is also protected by the attorney-client privilege." Docket No. 1969, at 1. At a time when he was the target of a criminal investigation, Mr. Corigliano's attorneys voluntarily disclosed to the government that he took a polygraph

- 11 -

examination and that he had done well. Therefore, he waived the privilege
as to these matters. See, e.g., Ratliff v. Davis, Polk & Wardwell, 354 F.3d
165, 170 n.5 (2d Cir. 2003) ("This Court has previously rejected a 'limited
waiver' rule that would preserve attorney-client privilege even after
documents had been disclosed to a third party, such as the SEC."); In re
Steinhardt Partners, L.P., 9 F.3d 230, 235 (2d Cir. 1993) ("The waiver
doctrine provides that voluntary disclosure of work product to an adversary
waives the privilege as to other parties.").

Furthermore, the crime-fraud exception would vitiate any
privilege because Mr. Corigliano used the polygraph exam to perpetrate a
fraud against the government. The exception applies when (1) the client
communication or work product in question was itself made in furtherance of
the crime or fraud; and (2) probable cause exists to believe that the particular
communication or work product was intended in some way to facilitate or to
conceal the criminal activity. In re Richard Roe, 168 F.3d 69, 71 (2d Cir.
1999). The second element focuses on the intent of the client, not the lawyer.
Indeed, the crime-fraud exception applies when the lawyer is unwittingly
used as a tool to perpetrate a fraud. See In re Grand Jury Subpoena, 731
F.2d 1032, 1038 (2d Cir. 1984) ("Such communications are properly excluded
from the scope of the privilege even if the attorney is unaware that his advice
is sought in furtherance of such an improper purpose." (collecting cases)).

- 12 -

The meaning of "probable cause" in this context was recently discussed at length by the First Circuit in In re Grand Jury Proceedings, 417 F.3d 18 (1st Cir. 2005).

> As we read the consensus of precedent in the circuits, it is enough to overcome the privilege that there is a reasonable basis to believe that the lawyer's services were used by the client to foster a crime or fraud. The circuits – although divided on the articulation and on some important practical details – all effectively allow piercing of the privilege on something less than a mathematical (more likely than not) probability that the client intended to use the attorney in furtherance of a crime or fraud. This is a compromise based on policy but so is the existence and measure of the privilege itself.

Id. at 23 (emphasis added).

There is a "reasonable basis" to believe that Mr. Corigliano used the polygrapher's services to foster a crime or a fraud. Mr. Corigliano knew that he had engaged in fraudulent accounting practices; he took a polygraph exam, knowing that favorable results would be misleading; his attorneys then told the government that he had not engaged in fraudulent accounting practices and that he had done well on a polygraph examination. Certainly, Mr. Corigliano was entitled to maintain his innocence, but by using the polygraph to mislead the government about his culpability, Mr. Corigliano committed a fraud. Therefore, the crime-fraud exception applies.

If the Court is not satisfied that the exception applies, it should, at the very least, conduct an in camera review of any documents relating to the polygraph examinations and of Mr. Corigliano. See United States v.

- 13 -

Zolin, 491 U.S. 554, 572 (1989) (stating that a lesser showing is required to "trigger in camera review than is required ultimately to overcome the privilege"); id. at 574-75 (party seeking disclosure need only present evidence to "support a reasonable belief that in camera review may yield evidence that establishes the exception's applicability").

## CONCLUSION

For the reasons set forth above, Mr. Forbes respectfully requests that the Court enter an order permitting him to examine Mr. Corigliano about (i) his prior statements to the polygraph examiner(s) under Fed. R. Evid. 613(a); and (ii) his use of the alleged polygraph results to mislead the government under Fed. R. Evid. 608(b).  In the alternative, Mr. Forbes requests an evidentiary hearing outside the presence of the jury to determine the facts and circumstances of the polygraph examinations.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:    _____
Brendan V. Sullivan, Jr. (ct17115)
Barry S. Simon (ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

- 14 -

James T. Cowdery (ct05103)
Thomas J. Murphy (ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Memorandum in

Support of Motion of Defendant Walter A. Forbes for Permission to Examine

Mr. Corigliano on Polygraph Examinations (Forbes Third Trial Motion *In

Limine* No. 19) to be filed electronically and to be served on April 17, 2006 to

the following via e-mail:

Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

_____
Barry S. Simon