# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

---

|  |  |
|---|---|
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | No. 3:02CR264 (AHN) |
| ) | |
| WALTER A. FORBES ) | April 17, 2006 |
| ) | |
| ) | |

---

## MOTION OF DEFENDANT WALTER A. FORBES TO PRECLUDE EVIDENCE REGARDING CENDANT'S RESTATEMENT
## (Forbes Third Trial Motion *In Limine* No. 9)

Walter A. Forbes, through undersigned counsel, respectfully moves *in limine*, pursuant to Fed. R. Evid. 801 and 401-403, and the Confrontation Clause of the Sixth Amendment, to preclude admission of (i) Cendant Corporation's accounting restatement (the "Restatement"); (ii) testimony about the amount of the Restatement; and (iii) testimony about the fact of the Restatement.  The grounds for this motion are set forth in the accompanying memorandum of points and authorities.

Oral Argument Requested

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

2

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Motion of Defendant Walter

A. Forbes to Preclude Evidence Regarding Cendant's Restatement (Forbes Third

Trial Motion *In Limine* No. 9) to be filed electronically and to be served on April 17,

2006 to the following via e-mail:

Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)


_____
Barry S. Simon

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| v. | ) ) ) | |
| WALTER A. FORBES | ) ) ) | No. 3:02CR264 (AHN)<br><br>April 17, 2006 |
| | ) ) | |

## MEMORANDUM IN SUPPORT OF
## MOTION OF DEFENDANT WALTER A. FORBES TO
## PRECLUDE EVIDENCE REGARDING CENDANT'S
## RESTATEMENT
## (Forbes Third Trial Motion *In Limine* No. 9)

Walter A. Forbes, through undersigned counsel, respectfully submits

this memorandum in support of his motion *in limine*, pursuant to Fed. R. Evid. 801

and 401-403, and the Confrontation Clause of the Sixth Amendment, to preclude

admission of (i) Cendant Corporation's accounting restatement (the "Restatement");

(ii) testimony about the amount of the Restatement; and (iii) testimony about the

fact of the Restatement.[1]

---

[1]    Mr. Forbes sought similar relief during the first and second trials.  In the first trial, the Court excluded the Restatement and testimony about the amount of the Restatement.  See Docket No. 1198.  In the second trial, the Court denied Mr. Forbes' motion as moot on these points because the government represented that it would not offer the Restatement or testimony about the amount.  See Docket No. 1897.  In both trials, the Court admitted testimony about the fact of the Restatement and issued a limiting instruction about the use of such testimony.  See Tr. (11/04/04) at 16,397; Tr. (12/08/05) at 3,800-01.

Oral Argument Requested

## BACKGROUND

In December 1997, CUC International ("CUC") merged with HFS Incorporated ("HFS") to form Cendant Corporation ("Cendant"). On April 15, 1998, Cendant issued a press release announcing the discovery of potential accounting irregularities in former CUC business units, and stating that the company was exploring "litigation against certain officers of the former CUC as well as other potential defendants." Ex. 1 (Press Release). Following this disclosure, more than 70 lawsuits were filed against Cendant, and the Securities and Exchange Commission (the "SEC") as well as the United States Attorney's Office for the District of New Jersey commenced investigations relating to the alleged accounting irregularities. See Ex. 2 at 4, 32 (excerpt from Cendant Amended Form 10K).

Cendant's Audit Committee commenced an internal investigation with an eye towards litigation and the goal of protecting former HFS management and shifting blame towards former CUC management. See Forbes Third Trial Mot. *In Limine* No. 8 (filed April 17, 2006). The investigatory team interviewed 81 individuals and prepared a final report that was identified as attorney work product. See id. On September 28, 1998, as a result of the investigation, Cendant restated previously reported annual results for the years 1995-97. See Ex. 2 at 4 (excerpt from Cendant Amended Form 10K).

The Restatement involved considerably more than the alleged fraudulent accounting charged in the indictment. While the Restatement purportedly included alleged accounting "irregularities," it also included accounting errors that were allegedly unintentional misstatements on Cendant's books. See id.

2

at 4.  The Restatement also included a change to Cendant's revenue and expense recognition policies that caused Cendant's financial statements to be restated by hundreds of millions of dollars.  Although Cendant believed that the prior policies "were appropriate and consistent with industry practice," Cendant agreed to adopt the SEC's recommended policy changes "in connection with the Company's cooperation with the [SEC]."  Id. at F-16.[2]  Moreover, the Restatement was not limited to the former CUC business units, but also included restated financial amounts traceable to the former HFS business units.  All of these changes made the Restatement significantly greater in scope and magnitude than any alleged fraudulent accounting practices charged in the indictment.

In addition to the fact that the Restatement is significantly larger in both scope and magnitude than the alleged fraud charged in the indictment, there is no correlation between the amounts included in the Restatement and the amounts alleged in the indictment.  The Restatement does not quantify any alleged accounting irregularities in isolation from any alleged accounting errors or the changes in accounting treatment mandated by the SEC.  Moreover, the financial statements for 1995 and 1996 were restated on a calendar year basis ending on December 31, rather than the fiscal year used by the former CUC businesses and referenced in the indictment, which ended on January 31.  These factors have led

---

[2]    On June 14, 2000, Cendant's negotiations with the SEC resulted in an SEC Order in which the only sanction to Cendant was an order to cease and desist from violating the securities laws.  See Ex. 3 at 14-15 (Cease and Desist Order).  In considering the appropriateness of Cendant's "sanction," the SEC gave weight to the cooperation afforded the Commission and "other authorities," as well as remedial acts undertaken by Cendant, such as the Restatement.  See id. at 14.

both of the government's experts, Mr. Heckler and Mr. Sack, to concede that they could not tie a single number from the Restatement to either the indictment or the Audit Committee Report. See Tr. (3/10/2004) at 1348:24–1349:10, 1351:12–1352:6 (Heckler); Tr. (2/19/2004) at 584:7–585:19, 661:25–662:7 (Sack). Nor could Mr. Heckler identify any Deloitte & Touche workpaper that identified how the amounts included in the Restatement were calculated or what specific items were included in the restated figures. See Tr. (3/8/2004) at 1041:25–1042:11; 1056:25–1057:10; 1074:20–1075:2.

## **ARGUMENT**

### I.  **THE RESTATEMENT SHOULD BE EXCLUDED FROM EVIDENCE AS UNRELIABLE HEARSAY.**

The Court should exclude the Restatement and testimony about it because the Restatement is classic hearsay—"a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter[s] asserted." Fed. R. Evid. 801(c). The Restatement does not constitute a record of a regularly conducted business activity and does not fall within the business records exception to the hearsay rule. See Fed. R. Evid. 803(6); Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1258 (9th Cir. 1984) (special audit report ordered in response to suspicion of irregularities not conducted in the regular course of business).

In Paddack, the trustees of two labor–management trust funds ordered an audit of the trusts when the trustees suspected the employer was not contributing sufficient funds to the trust. Such an audit did not occur with any

4

regularity. Instead, it took place whenever the trustees suspected a deficiency in the employer's contributions. The court held that "[t]he irregular frequency and nature with which the audits were conducted . . . precludes their classification as business records" of either the employer, the trustees, or the auditors, id. The court further held that because the audits were conducted only when the trustees suspected irregularities in the employers contributions, the audit reports "do not contain the same reliability that normally attends records kept in the course of a regularly conducted business activity." Id.

The Advisory Committee notes to Rule 803(6) follow a similar approach. When the "supplier of the information" recorded in a document "does not act in the regular course," such as when a company files restated financials, "an essential link is broken" that renders the record unreliable, regardless of whether the information is recorded "with scrupulous accuracy":

> Sources of information presented no substantial problem
> with ordinary business records. All participants,
> including the observer or participant furnishing the
> information to be recorded, were acting routinely, under a
> duty of accuracy, with employer reliance on the result, or
> in short "in the regular course of business." If, however,
> the supplier of the information does not act in the regular
> course, an essential link is broken; the assurance of
> accuracy does not extend to the information itself, and the
> fact that it may be recorded with scrupulous accuracy is of
> no avail.

Fed. R. Evid. 803(6) advisory committee's note to proposed rule (1972).

The Restatement, by its very nature, was not issued in the course of a regularly conducted business activity and is unreliable. Unlike annual Form 10-K's, which are part of the regular SEC reporting obligations of a public company,

the Restatement was issued because Cendant suspected irregularities at the former

CUC business units and wanted to change its previously issued financial

statements. Such an action is an extraordinary event for a company to undertake

and was tainted with Cendant's suspicion of irregularities. It does not "contain the

same reliability that normally attends records kept in the course of a regularly

conducted business activity." Paddack, 745 F.2d at 1258.

　　　　The Restatement also should be excluded as unreliable hearsay

because of the inherently unreliable circumstances in which it was prepared—in

anticipation of litigation. Courts have long recognized that company documents are

inadmissible under the "business records" exception if they are prepared in

anticipation of litigation. See Palmer v. Hoffman, 318 U.S. 109, 113-114 (1943);

Potamkin Cadillac Corp. v. B.R.I. Coverage Corp. 38 F.3d 627, 632 (2d Cir. 1994)

("Data prepared or compiled for use in litigation are not admissible as business

records").[3]

---

[3]     See also Echo Acceptance Corp. v. Household Retail Servs., Inc., 267 F.3d
1068, 1091 (10th Cir. 2001) ("It is well-established that one who prepares a
document in anticipation of litigation is not acting in the regular course of
business." (quotation omitted)); Certain Underwriters at Lloyd's, London v.
Sinkovich, 232 F.3d 200, 205 n.4 (4th Cir. 2000) ("[T]he rule is well established that
documents made in anticipation of litigation are inadmissible under the business
records exception."); Lamb Eng'g & Constr. Co. v. Nebraska Pub. Power Dist., 103
F.3d 1422, 1432 n.5 (8th Cir. 1997) (report prepared by accountant based on audit
was inadmissible, where circumstances indicated it had been prepared for
litigation); E.F. Hutton & Co. v. Penham, 547 F. Supp. 1286, 1293-4 (S.D.N.Y. 1982)
(report prepared by plaintiff brokerage dealer's legal department purporting to
show unauthorized trades by defendant account executive were self-serving
documents inadmissible under business records exception).

To say that the Restatement was created in anticipation of litigation would be an understatement. The Restatement was created in the midst of a litigation firestorm. At the time of the Restatement, Cendant was facing more than 70 civil lawsuits as well as investigations by the United States Attorney's Office and the SEC. See Ex. 2 at 4, 32 (excerpt from Cendant Amended Form 10-K). The anticipated litigation with the SEC had a profound impact on the content of the Restatement. For example, in an effort to cooperate with the SEC, Cendant implemented significant changes to its revenue and expense recognition policies. See id. at F-16. Cendant made these changes, which had a material effect on Cendant's net income, not because Cendant's stated policy violated GAAP, but because the SEC requested the changes. See id. Due to Cendant's "remedial acts" and "cooperation" with the SEC and "other authorities," see Ex. 3 at 14 (Cease and Desist Order), the only "sanction" the SEC imposed on Cendant was an order to cease and desist from violating the securities laws. See id. at 14-15.

In addition to the litigation and anticipated litigation against Cendant, Cendant was contemplating cross-claims against the former CUC senior management and its auditors, Ernst and Young, which were filed the following year. The SEC and the United States Attorney's Office investigations, the civil lawsuits, and the contemplated cross-claims provided Cendant with a strong motivation to restate its financial results to place blame on the former CUC management and protect Cendant's current management from liability. See Forbes Third Trial Motion *In Limine* No. 8 (filed April 17, 2006).

7

The problem is exacerbated by the fact that the Restatement includes what in essence purport to be expert opinions about the propriety of the accounting in prior periods. Although Rule 803(6) acknowledges that a business record may contain "opinions, or diagnoses," this Court has recognized the problem with applying the business records exception to documents containing opinions that were prepared in anticipation of litigation. See Bruneau v. Borden, 644 F. Supp. 894 (D. Conn. 1986). In that case, the plaintiff offered a letter from a physician diagnosing the plaintiff's condition and opining that it was caused by exposure to foam insulation. The Court excluded the letter as hearsay and stated:

> [T]here is a serious question as to whether the rule was intended to cover opinions given in relation to litigation. If that were the intention, all a party need do is consult an expert, obtain a written opinion and an assertion that in written form it was within Rule 803(6), and the writing could come into evidence. The troublesome aspect of such a procedure is that it is totally unfair to an opposing party adversely affected by the opinion. Such would have no opportunity to cross-examine the expert on: his/her qualifications; the facts on which the opinion was based; the reasoning behind the opinion; and alternative theories, reasons, and facts.

Id. at 896.

Once Cendant announced the alleged accounting irregularities and its intention to restate its financial results, Cendant also had a motivation to make the Restatement as large as possible. Cendant restated its financial results to recognize expenses immediately and defer the recognition of revenue to the future. Cendant also included purported accounting errors in the Restatement, as well as alleged accounting irregularities. In doing this, Cendant reduced past income while

increasing future income.  This effectively allowed Cendant to have faster revenue growth and the appearance of greater financial health in the future.  The Restatement is "dripping with motivations to misrepresent," Hoffman v. Palmer, 129 F.2d 976, 991 (2d Cir. 1942), aff'd, 318 U.S. 109 (1943), and should be excluded as unreliable hearsay.

## II.    THE RESTATEMENT SHOULD BE EXCLUDED BECAUSE IT RELIES ON MULTIPLE LAYERS OF UNRELIABLE HEARSAY.

The Restatement and testimony about it should also be excluded because the Restatement contains multiple layers of hearsay.  The Restatement was based, in part, on the Audit Committee's investigation and findings.  See Ex. 2 at 38 (excerpt from Cendant Amended Form 10K) ("As a result of the findings of the Audit Committee investigation and the Company's investigation, the Company has restated its financial results for the years 1995 through 1997.  The financial information contained herein has been restated to incorporate all relevant information obtained from the aforementioned investigations.").  The Audit Committee's investigation and findings were based, in part, on interviews of 81 individuals.  See Forbes Third Trial Mot. *In Limine* No. 8 (filed April 17, 2006).  The Audit Committee's findings as well as the statements made in the underlying interviews are unreliable hearsay.  See id.

The Restatement is also based on documents prepared by Cendant personnel and Cendant's auditors, Deloitte & Touche.  Because those documents were also prepared in anticipation of litigation and not in the regular course of business, they too, are unreliable hearsay.  See Palmer 318 U.S. at 113-114;

9

<u>Paddack</u> 745 F.2d at 1258.  The Restatement is inadmissible because it is based in some unspecified part on these other hearsay statements.

## III.    ADMISSION OF THE RESTATEMENT WOULD VIOLATE MR. FORBES' SIXTH AMENDMENT RIGHT OF CONFRONTATION.

Admitting into evidence the unreliable hearsay contained within the Restatement would also violate Mr. Forbes' Sixth Amendment right to confront and cross-examine the witnesses against him.  In <u>Crawford v. Washington</u>, 541 U.S. 36 (2004), the Supreme Court announced a <u>per se</u> bar on the admission of out-of-court testimonial statements unless the declarant is unavailable and his or her prior statements were subject to cross-examination.  Although the Court did not "spell out a comprehensive definition of 'testimonial,'" it provided examples, including prior testimony and responses to police interrogation.  <u>Id.</u> at 68.  These statements "all involve a declarant's knowing responses to structured questioning in an investigative environment or a courtroom setting, where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings."  <u>United States v. Saget</u>, 377 F.3d 223, 228 (2d Cir. 2004).  The Second Circuit has interpreted <u>Crawford</u> as suggesting that "the determinative factor in determining whether a declarant bears testimony is the declarant's awareness or expectation that his or her statement may later be used at a trial."  <u>Id.</u>

The Restatement itself is testimonial hearsay.  The Restatement was prepared in part in response to inquiries by the SEC "in an investigative environment" about the propriety of the accounting in the prior time periods.  The declarants (the twenty people who signed the Restatement and the countless others

who prepared it) could reasonably expect that responses to the SEC's inquiries might be used in future judicial proceedings. Indeed, numerous lawsuits as well as government investigations were pending against Cendant and some of the same people who signed the Restatement.[4]

Furthermore, the Restatement is based, at least in part, on testimonial hearsay, including the interviews of 81 individuals. Those interviews "all involve a declarant's knowing responses to structured questioning in an investigative environment . . . where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings." See id. Although the government was not conducting the interviews, Cendant was cooperating with the government, investigating the same matters, and it ultimately disclosed the interview memoranda. At the time the interviews were conducted, witnesses were advised that the interviewers did not represent them and some were advised that their statements might be disclosed. Thus, these witnesses could reasonably expect that their statements might be used in future judicial proceedings.

Because the Restatement and the underlying witness interviews constitute testimonial hearsay, the prior statements were not subject to cross-examination, and there has been no showing that all declarants are unavailable,

---

[4]    When the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints on the use of prior testimonial statements. See Crawford, 541 U.S. at 59 n.9. Although four declarants who signed the Restatement testified in either the first trial or both prior trials (Michael Monaco, Scott Forbes, Chris McLeod, and John Rosenwald), the vast majority of declarants who signed and prepared the Restatement did not. See Ex. 2 at 63-64 (excerpt from Cendant Amended Form 10K). Nor did the auditors on whose work the Restatement was based, and on whom the signatories ultimately relied, testify.

11

admission of the Restatement or testimony about it would violate the Confrontation Clause.

## IV.    THE RESTATEMENT IS NOT RELEVANT TO PROVING ANY OF THE ALLEGATIONS IN THE INDICTMENT.

The Court should exclude the Restatement and testimony about it because the Restatement is not relevant to proving any part of the government's case. The indictment alleges that certain SEC filings and press releases of CUC and Cendant were materially false in certain respects. See Redacted Indict., Count 2 ¶ 2(a)-(h), Count 3 ¶ 2(a)-(b), Count 4 ¶ 3.[5] For example, Count 2 alleges that eight specific statements on CUC's Form 10-Q for the third quarter of 1997 were materially false—the statements that for the three months ending October 31, 1997, total revenue was approximately $775 million, total expenses were approximately $612 million, and income before taxes was approximately $163 million; for the nine months ending October 31, 1997, total revenue was approximately $2,168 million, total expenses were approximately $1,735 million, and income before taxes was approximately $433 million; and on October 31, 1997, current assets were

---

[5]    Count 4 does not identify the substance of the alleged fraud, but states that the substance of the alleged fraud is set forth in paragraphs 18 through 63 of Count 1. See id., Count 4 ¶ 3. [Redacted Count 4 contains a typographical error and should refer to paragraphs 18 through 57 of Count 1 because Count 1 of the Redacted Indictment ends at paragraph 57.] Paragraphs 18 through 57 of Count 1 allege that Mr. Forbes was responsible for various purported accounting irregularities that resulted in the overstatement of CUC's and Cendant's financial results. Those paragraphs further allege that Mr. Forbes caused these allegedly overstated financial results to be reported to the SEC and to the investing public in periodic filings with the SEC and in press releases. These paragraphs of the indictment identify specific SEC filings and press releases containing specific allegedly false statements. See id., Count 1 ¶ 57(a)-(i).

12

approximately $2,117 million, and accounts payable and accrued expenses were approximately $464 million.  Id., Count 2 ¶ 2(a)-(h).

In the prior trials, the Court admitted testimony about the fact of the Restatement as relevant to the issues of falsity and materiality.  See Tr. (11/04/04) at 16,397; Tr. (12/08/05) at 3,800-01.  But the Restatement is not relevant to whether any of the eight statements identified in Count 2 (or any other statements charged in the indictment) were false or material because the Restatement does not say anything about these specific statements.  Indeed, despite attempts by both government expert witnesses, neither Mr. Sack nor Mr. Heckler was able to tie out a single number from the Restatement to the indictment.

The Restatement purportedly includes changes to Cendant's accounting policies, corrections for accounting errors and restated financials for both the HFS and CUC businesses.  The Restatement also changed the financial reporting year from January 31 to December 31 for all reported years.  The inclusion of these changes not only increased the magnitude of the Restatement; these changes also rendered impossible an assessment of the alleged irregularities that were purportedly corrected in Cendant's restated financials.  Therefore, the Restatement does not help prove whether any of the statements identified in the indictment were false or material.  The Restatement is simply not probative of any issue in this case, and should be excluded pursuant to Fed. R. Evid. 401.

**V.    THE COURT SHOULD EXCLUDE THE RESTATEMENT BECAUSE IT
WOULD CREATE A SUBSTANTIAL RISK OF UNFAIR PREJUDICE
AND CONFUSION.**

The Court also should exclude the Restatement and testimony about it

because the minimal, if any, probative value of the Restatement is substantially

outweighed by the danger of jury confusion and unfair prejudice to Mr. Forbes.  See

Fed. R. Evid. 403.  As discussed above, the Restatement has little, if any, probative

value.  The danger of jury confusion and unfair prejudice to Mr. Forbes is, however,

significant.

The very magnitude of the Restatement, much of which is expressly

not related to any alleged fraud, and which is much greater than the alleged fraud

charged in the indictment, would inflame the jury.  It could lead jurors to find Mr.

Forbes guilty based on the size of the Restatement rather than the strength of the

government's case.

In addition, introduction of the Restatement is likely to confuse the

jury by injecting into the case a mini-trial regarding the components of the

Restatement and the differences between the Restatement and the indictment.  If

the Restatement were admitted, Mr. Forbes would have to introduce evidence that

the Restatement involved both the HFS and CUC sides of Cendant's business and

included accounting errors as well as alleged accounting irregularities.  Mr. Forbes

would also have to introduce evidence regarding the changes in accounting policy

required by the SEC and the cumulative effect those changes had on the restated

financial statements.  Such a mini-trial could only serve to distract and confuse the

jury while substantially delaying the trial on collateral issues.  See Paolitto v. John

14

<u>Brown E. & C. Inc.</u>, 151 F.3d 60, 64-65 (2d Cir. 1998) (affirming exclusion of

government report because introduction of report would cause attempt to expose

weaknesses in report which could confuse or mislead jury and result in waste of

time); <u>City of New York v. Pullman, Inc.</u>, 662 F.2d 910, 915 (2d Cir. 1981) (affirming

exclusion of government report where report would protract trial with inquiry into

collateral issues regarding report's accuracy and methodology).  Given these

substantial risks of juror confusion and unfair prejudice, the Court should exclude

the Restatement or references to it pursuant to Fed. R. Evid. 403.

## **CONCLUSION**

For the reasons set forth above, the Court should preclude (i) the

Restatement; (ii) testimony about the amount of the Restatement; and

(iii) testimony about the fact of the Restatement.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

16

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Memorandum in Support of

Motion of Defendant Walter A. Forbes to Preclude Evidence Regarding Cendant's

Restatement (Forbes Third Trial Motion *In Limine* No. 9) to be filed electronically

and to be served on April 17, 2006 to the following via e-mail:

Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)


_____
Barry S. Simon