UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA     :     No. 3:02CR00264 (AHN)
                             :
                             :
                             :
       v.                    :     April 17, 2006
                             :
                             :
                             :
WALTER A. FORBES             :

MEMORANDUM OF THE UNITED STATES IN OPPOSITION TO FORBES'
MOTION TO PRECLUDE THE GOVERNMENT FROM PRESENTING EVIDENCE,
CROSS-EXAMINATION, OR ARGUMENT CONCERNING PROPERTY TRANSFERS

(Opposition to Forbes' Third Trial Motion in Limine Motion No. 2)

CHRISTOPHER J. CHRISTIE
NORMAN GROSS
MICHAEL MARTINEZ
Special Attorneys
U.S. Department of Justice
970 Broad Street, Room 700
Newark, New Jersey 07102
Tel: (973) 645-2700
Fax: (973) 645-2857

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . .   1

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . .   3

     A.   General Relevance of Consciousness of Guilt
         Evidence . . . . . . . . . . . . . . . . . . .   4

     B.   The Asset Transfers . . . . . . . . . . . . . .   6

     C.   Forbes' Lie about Danilow's Advice Is Relevant
         Evidence That Shows Consciousness of Guilt . . . .   7

     D.   Forbes' Transfer of Assets Is Relevant Evidence
         That Also Shows His Consciousness of Guilt . . . .  10

     E.   Evidence of Forbes' Consciousness of Guilt Is Not
         Substantially More Unfairly Prejudicial than
         Probative . . . . . . . . . . . . . . . . . . .  18

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . .  21

**INTRODUCTION**

Forbes' counsel conceded in an April 5, 2006 email to Attorney Brooks that Forbes' Third Trial Motion in Limine No. 2 is "addressed to issues that were fully briefed before or during the second trial" in this case.  That is an understatement, to put it mildly.  Prior to the first trial, Forbes filed a motion in limine seeking -- just as he does now -- to preclude the Government from presenting evidence at trial regarding his transfer of three very valuable real estate assets to his wife for nominal consideration shortly after CUC International's massive accounting fraud was disclosed and its corporate succes-sor, Cendant, launched an internal investigation.  That motion was extensively briefed by the parties, e.g., Docket 631, 657, 668, and ultimately denied by Judge Thompson during the first trial, FTTr. 13797-13798,[1] after which the Government was permit-ted to cross-examine Forbes on this subject.

Prior to the second trial, Forbes "renewed" his motion in limine from the first trial to preclude evidence, cross-examina-tion and argument concerning his asset transfers.  Docket 1666. Forbes also opposed the Government's motion in limine to, inter alia, introduce in its case-in-chief Forbes' testimony concerning the asset transfers, and counter-designated testimony elicited by his own counsel that Forbes had undertaken the transfers after

---

[1] Citations to "FTTr." and "STTr." are to the transcripts of the first and second trials, respectively.

his attorney, Greg Danilow of Weil, Gotschal & Manges, advised
him that they would be "lawful." FTTr. 14432-14433. After
extensive briefing from the parties, Docket 1624, 1653, 1709,
Judge Thompson granted the Government's request, allowed Forbes'
counter-designation of his testimony concerning Danilow's pur-
ported advice, and denied Forbes' renewed motion. Docket 1839,
at 6-7; Docket 1841; STTr. 4-5.

Much to Forbes' dismay, Danilow's testimony at the second
trial showed that Forbes had lied. Far from telling Forbes that
the asset transfers would be "lawful," as Forbes had claimed
under oath at the first trial, Danilow testified that he advised
Forbes "there were two things he needed to consider":

> there are fraudulent conveyance issues that come up in
> civil litigation that you have to be concerned about.
> And in addition, there were issues that could be used
> by civil plaintiffs and prosecutors on the issue of
> whether or not it's an admission of guilt or some kind
> of wrongdoing on your part. And you need to think
> about that and consider that and get advice about that.

STTr. 2443-2444. When Danilow gave this advice to Forbes,
Cendant had already announced "the CUC restatement" and the
"accounting irregularities" that prompted it. STTr. 2446.
Danilow was representing Forbes in securities fraud litigation
concerning the CUC fraud and "knew from the time that the an-
nouncement came out that there would be a pending criminal
investigation." STTr. 2444-2446.

Now that his perjury during the first trial was exposed in
the second, Forbes is even more desperate to keep out all evi-

dence, (including, presumably, his false testimony at the first trial), cross-examination and argument about his transfer of assets to his wife.  (His motion does not mention Forbes' asset transfer to his daughters.)  Especially in light of Danilow's devastating testimony, however, this Court should not reverse Judge Thompson's rulings permitting evidence, cross-examination, and argument on the subject of Forbes' asset transfers.  Those rulings were entirely correct, as the Government shall demonstrate once again in this case.

## ARGUMENT

When "a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case."  United States v. Uccio, 940 F.2d 753, 758 (2d Cir. 1991); see United States v. Crowley, 318 F.3d 401, 420 (2d Cir. 2003).  "[A]bsent cogent or compelling reasons to deviate," such as "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," a court should adhere to its prior rulings. United States v. Tenzer, 213 F.3d 34, 39 (2d Cir. 2000) (internal quotation marks omitted).  Thus, "[u]nder the law of the case doctrine, courts are understandably reluctant to reopen a ruling once made, especially when one judge or court is asked to consider the ruling of a different judge or court."  Lillbask v.

<u>Connecticut Dept. of Educ.</u>, 397 F.3d 77, 94 (2d Cir. 2005) (internal quotation marks omitted).[2]

Here, Judge Thompson's rulings permitting evidence, cross-examination, and argument concerning Forbes' transfer of roughly $15 million in assets to his wife, FTTr. 14402 (not to mention another $2 million asset to his children, FTTr. 14404) were entirely correct.  Indeed, given the contradiction between Danilow's and Forbes' testimony, the probative value of evidence, cross-examination and argument on Forbes' asset transfer is even more compelling than it was before.  Under long-settled law, that Forbes lied about Danilow's advice concerning these transfers and that Forbes began undertaking the transfers, notwithstanding Danilow's advice, shortly after Cendant disclosed the accounting fraud and commenced an internal investigation both evidence consciousness of guilt.

**A.    General Relevance of Consciousness of Guilt Evidence.**

Evidence is relevant if it has "<u>any tendency</u> to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

---

[2] Similarly, a reconsideration motion will be denied unless the "moving party can point to controlling decisions or data that the court overlooked."  <u>Sequa Corp. v. GBJ Corp</u>., 156 F.3d 136, 144 (2d Cir. 1998); <u>see</u> <u>LoSacco v. City of Middletown</u>, 822 F. Supp. 870, 876-77 (D. Conn. 1993) ("the function of a motion for reconsideration is to present the court with an opportunity to correct manifest errors of law or fact or to consider newly discovered evidence") (internal quotation marks omitted), <u>aff'd</u>, 33 F.3d 50 (2d Cir. 1994).

without the evidence." Fed. R. Evid. 401 (emphasis added). "The
Rule's basic standard of relevance thus is a liberal one,"
Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 587 (1993):
the proponent need show only that the proffered evidence would
"appear to alter the probabilities of a consequential fact" in
the case, i.e., that "a reasonable person might believe the
probability of the truth of the consequential fact to be differ-
ent if that person knew of the proffered evidence." 2 Wein-
stein's Federal Evidence § 401.04[2][b] & [c] (Hon. Joseph M.
McLaughlin ed., 2d ed. 2006) ["Weinstein"]; see New Jersey v.
T.L.O., 469 U.S. 325, 345 (1985).

Evidence need not make the proposition for which it is
offered "appear more probable than not," so long as it advances
the inquiry "in some degree." 2 Weinstein § 401.04[2][b]; see
United States v. Carmona, 873 F.2d 569, 571-72 (2d Cir. 1989).
Moreover, "[a]ll relevant evidence is admissible unless excluded
by the constitution, a statute, or a rule." Fed. R. Evid. 402.
The trial court "is in the best position to evaluate the admissi-
bility of offered evidence," United States v. Valdez, 16 F.3d
1324, 1332 (2d Cir. 1994). Judge Thompson, who presided over two
lengthy trials in this case, was particularly well-situated to
make relevance determinations.

Here, evidence tending to show Forbes' consciousness of
guilt of the charged offense "is independently probative of his
guilt," United States v. Deutsch, 451 F.2d 98, 115 (2d Cir.

1971), and is therefore relevant and admissible.  <u>See</u> <u>United</u>
<u>States v. Burrous</u>, 147 F.3d 111, 117 (2d Cir. 1998); <u>United</u>
<u>States v. Wilson</u>, 11 F.3d 346, 353 (2d Cir. 1993).  Indeed,
"[e]vidence of consciousness of guilt is routinely admitted
against defendants in criminal cases, in the form of flight,
threatening a witness, subornation of perjury, and the like."
<u>United States v. Dittrich</u>, 100 F.3d 84, 86-87 (8th Cir. 1996).

**B.    The Asset Transfers.**

Shortly after learning that Cendant was undertaking an
internal investigation (led by Willkie Farr & Gallagher) of the
fraud at issue in this case (and just three days before being
interviewed in that investigation, FTTr. 14207-14208, 14389),
Forbes began transferring for nominal consideration to his wife
and daughters his interest in four very valuable pieces of real
property.  The internal investigation began on or about April 15,
1998, <u>see</u> <u>In re Cendant Corp. Litig.</u>, 264 F.3d 201, 221 (3d Cir.
2001), after which Forbes transferred:

- his joint interest in a single-family home in Vail,
  Colorado to his wife for $10 on June 8, 1998;

- his joint interest in a condominium in Vero Beach,
  Florida to his wife for $10 on December 4, 1998;[3]

---

[3] On August 28, 1998, "Cendant filed Willkie Farr's report
of its investigation" with the SEC, announcing that it "would
restate its 1995, 1996, and 1997 financial statements by approxi-
mately $500 million."  <u>In re Cendant</u>, 264 F.3d at 221.

- his joint interest in a single-family home in New Canaan, Connecticut to his wife for $10 on December 15, 1999;[4] and

- his interest in a parcel of land in Wisconsin to his four daughters in "1998" or "1999."

FTTr. 14386-14397, 14401-14403, 14472.  Forbes has admitted that a "safe number" for the total value of the transferred assets was "about $17 million."  FTTr. 14403.

Thus within 20 months after Cendant's public disclosure of the fraud at issue in this criminal case, Forbes virtually gave away to his wife and daughters approximately $17 million in real estate assets.  Furthermore, Forbes took these measures while "aware that there was a criminal investigation surrounding the accounting conduct at the company" -- though he claims not to have suspected that he would become a target of that investigation.  FTTr. 14473; see FTTr. 14489-14490.

### C.    Forbes' Lie about Danilow's Advice Is Relevant Evidence That Shows Consciousness of Guilt.

Forbes only obliquely refers to "the advice Mr. Forbes received with respect to the [asset] transfers" and "the attorneys with whom he consulted."  FM12.[5]  In fact, the jury could reasonably find that Forbes lied at the first trial about this very subject:

---

[4] Just eight days earlier, "Cendant announced a proposed settlement" of the securities class actions against it "that would require it to pay $2.85 billion to the class members."  In re Cendant, 264 F.3d at 226.

[5] Citations to "FM" are to the Memorandum in support of Forbes Third Trial Motion In Limine No. 2 (Docket 2185).

7

Q.   And before you made these transfers to your wife,
did you check with an attorney to make sure it was
proper and lawful and a reasonable thing to do?

A.   I did.  I was -- I checked to see if there was
some way to put some additional layer of protection for
my wife and children.  And I talked to Greg Danilow and
asked him if that was lawful and he said that it was.

Q.   And so you decided that you would take steps to
protect your family?

A.   When there are billions of dollars of lawsuits out
there, I thought it might offer some additional protec-
tive layer for them, yes.

FTTr. 14432-14433.  At the second trial, Danilow testified that

he did not advise Forbes that the asset transfers were "lawful";

in fact, Danilow advised that if Forbes undertook such transfers,

they "could be used by . . . prosecutors" as "an admission of

guilt or some kind of wrongdoing."  STTr. 2444.[6]

Forbes' fabrication of exculpatory evidence of his reliance

on counsel is relevant, of great probative value, and admissible.

Although "[a] defendant's fabrication of exculpatory evidence

cannot be the sole basis for a conviction," it is admissible as

"'evidence of consciousness of guilt.'"  United States v. Schei-

---

[6] When confronted on cross-examination with Danilow's testi-
mony, Forbes changed his testimony, claiming for the first time
that he "contacted another lawyer," Robert Tucker (a longtime
friend), who purportedly "indicated [the asset transfer] was
lawful," and "went ahead and did it."  STTr. 3049.  Tucker,
however, did not testify at the second trial, and so Forbes'
self-serving testimony on this issue was wholly uncorroborated.
Moreover, although a witness "may give inaccurate testimony due
to confusion, mistake, or faulty memory," United States v. Dunni-
gan, 507 U.S. 87, 95 (1993), whether any of these innocent
explanations applies or Forbes lied is for the jury to decide.
E.g., United States v. Rosa, 11 F.3d 315, 337 (2d Cir. 1993)
("[a] challenge to . . . credibility of a witness is a matter for
argument to the jury").

bel, 870 F.2d 818, 822 (2d Cir. 1989) (quoting <u>United States v.</u>
<u>Di Stefano</u>, 555 F.2d 1094, 1104 (2d Cir. 1977)); <u>see</u>, <u>e.g.</u>,
<u>United States v. Kahan</u>, 415 U.S. 239, 241 (1974) (per curiam)
(holding that trial court properly admitted "[a]s part of the
Government's case [defendant's] statements to the court as to his
lack of funds" as, <u>inter</u> <u>alia</u>, "false exculpatory statements
evincing respondent's consciousness that the bank deposits were
incriminating"); <u>United States v. Bin Laden</u>, 397 F. Supp. 2d 465,
517 (S.D.N.Y. 2005) (agreeing that defendant's "repeated perjury
to the Grand Juries investigating al Qaeda . . . indicate [his]
consciousness of guilt, and indeed offers significant evidence of
his state of mind with respect to the charged conspiracies").[7]

Indeed, as Forbes concedes, providing "false identifica-
tion," "attempt[ing] to persuade" a witness "not to testify in
grand jury," using a "false name and false identification papers"
when arrested, intimidating witnesses, and concealing an "under-
lying transaction" all evidence "consciousness of guilt."  FM5-6
n.7; <u>see</u>, <u>e.g.</u> <u>United States v. Blanco</u>, 861 F.2d 773, 782 (2d

---

[7] <u>See also</u> <u>United States v. Durham</u>, 139 F.3d 1325, 1331-32
(10th Cir. 1998) (affirming "instruction on false exculpatory
statements, which this court allows to prove consciousness of
guilt"); <u>United States v. Collins</u>, 90 F.3d 1420, 1428 (9th Cir.
1996) ("evidence of the Collins' attempts to induce witnesses to
lie is indicative of consciousness of guilt and may be placed
before the jury"); <u>United States v. Warren</u>, 973 F.2d 1304, 1308
(6th Cir. 1992) ("[witness's] testimony to the effect that
defendant solicited him to commit perjury indicates consciousness
of guilt on defendant's part"); <u>United States v. Perkins</u>, 937
F.2d 1397, 1402 (9th Cir. 1991) ("false statements may be consid-
ered as circumstantial evidence of consciousness of guilt").

Cir. 1988); <u>United States v. Bein</u>, 728 F.2d 107, 114-15 (2d Cir. 1984).  Surely, if "evasive conduct aimed at concealing" a relevant "transaction" is "circumstantial evidence of guilty consciousness," <u>United States v. Deutsch</u>, 451 F.2d 98, 116 (2d Cir. 1971), as is engaging in conduct <u>before</u> trial designed to hinder the truth-seeking process, <u>e.g.</u>, <u>United States v. Wilson</u>, 11 F.3d 346, 353 (2d Cir. 1993); <u>United States v. Macklin</u>, 927 F.2d 1272, 1279-80 (2d Cir. 1991), then false testimony by Forbes <u>at</u> <u>trial</u> which sought to mislead the jury is evidence of consciousness of guilt, as well.

**D.   Forbes' Transfer of Assets Is Relevant Evidence That Also Shows His Consciousness of Guilt.**

As Judge Thompson ruled, Docket 1841 at 6-7, that Forbes transferred assets worth $17 million to his wife and daughters following the commencement of Cendant's internal investigation also evidences Forbes' consciousness of guilt.  For a century now, American courts have permitted prosecutors to proffer evidence of asset transfers by a defendant as relevant to consciousness of guilt.  <u>See</u> <u>State v. Kincaid</u>, 55 S.E. 647, 647 (N.C. 1906) (finding no error where "[t]he defendant . . . was asked by the solicitor of the state if he had not transferred his property to avoid the result of this indictment"; "[i]t would have been equally as competent to ask him if he had not fled from the charge"); 2 <u>Wigmore on Evidence</u> § 282, at 147 (James H. Chadbourne Rev. 1979) ("the <u>conveyance of property</u>, during

10

litigation or just prior to it, may be evidence of the trans-
feror's consciousness that he ought to lose") (citing <u>Kincaid</u>).[8]

Here, evidence that Forbes transferred highly valuable real
property that he owned jointly with his wife to his wife's
exclusive ownership tends to prove that he sought to protect the
property from the rightful claims of persons who suffered pecuni-
ary loss from Forbes's fraudulent conduct.  <u>See</u> <u>In re Manshul</u>
<u>Constr. Corp.</u>, 2000 WL 1228866 at **1-2 (S.D.N.Y. 2000) (describ-
ing a similar effort to shelter property from creditors).  The
fact of the transfer is probative of Forbes' consciousness of
guilt because, other things being equal, one who is conscious of
his own guilt and thus more fearful of civil and criminal liabil-

---

[8] <u>United States v. Ramirez</u>, 176 F.3d 1179 (9th Cir. 1999),
and <u>United States v. Gonzales-Flores</u>, 418 F.3d 1093 (9th Cir.
2005), relied upon by Forbes, FM6 & n.8, provide scant support
for his claim to the contrary.  In <u>Ramirez</u>, the Ninth Circuit
concluded without explanation that evidence that the defendant's
sister registered title to the defendant's vehicles shortly after
he was arrested was "harmless error" after the defendant claimed
that the evidence was irrelevant and prejudicial.  <u>Id.</u> at 1182-
83.  The Court agreed, without enthusiasm, that evidence that the
defendant had used a rental vehicle rather than one of his own
cars to transport drugs across the U.S./Mexico border was rele-
vant to his consciousness of guilt, but apparently concluded that
the additional evidence that he also transferred car titles to
his sister was unnecessary to support that inference.  <u>Id.</u>
Unlike this case, the Government evidently did not contend in
<u>Ramirez</u> that the defendant transferred assets in order to shield
them against loss as a consequence of the criminal prosecution,
thereby demonstrating consciousness of guilt, so the Court did
not address the relevance theory the Government presents here.
<u>Gonzales-Flores</u>, on the other hand, is not a consciousness of
guilt case, and that court had no occasion to revisit <u>Ramirez</u> on
that specific issue.

ity has a stronger incentive to shield his assets than one who knows he is innocent.

Forbes' transfer of his interest in the real properties to his wife and children carried an obvious financial risk for Forbes.  Even if Forbes presently has the same use and benefit of the properties after transferring his ownership interests to his wife and daughters, the transfers might divest him of that use and benefit if, for instance, Forbes and his wife later divorced or he and his daughters became estranged.  Rationally, Forbes would undertake that risk only if he believed that there was a countervailing and greater risk of loss of the use and benefit of the properties if he retained any ownership interest.  His decision to transfer his assets gives rise to a reasonable inference that he foresaw a significant risk of criminal liability for the charged conduct in this case.

Forbes contends that the asset transfers should not be admitted because they occurred "well before [he] was the subject of any criminal action" and was not yet "a focus of the government's criminal investigation."  FM2 (emphasis deleted).  Judge Thompson, however, rejected the same arguments being disinterred by Forbes:  "that the evidence concerning these asset transfers has no relevance . . . because they took place after the period at issue in the indictment"; and "that these transfers are not probative of consciousness of guilt because they were made before

12

[he] was indicted or even the focus of the government's criminal investigation." Docket 1841, at p.6; see FM2, 5-6, 9-10.

Judge Thompson's ruling was eminently correct. After owning his Vail, Colorado home for more than six years, Forbes transferred all of his interest to his wife just seven weeks after Cendant's public announcement that it was investigating the fraud at issue in this case and just three days before being interviewed in that investigation. See United States v. Salameh, 152 F.3d 88, 157 (2d Cir. 1998) (holding that jury could infer defendant's consciousness of guilt from fact that he made plans to leave the United States on the day after the charged bombing); United States v. Anglin, 169 F.3d 154, 158-60 (2d Cir. 1999) (rejecting challenge to sufficiency of evidence of guilt, in part because defendant left New York the day after the FBI questioned a close friend about the crime). Moreover, Forbes transferred these assets while aware that a criminal investigation was ongoing. See United States v. Dillon, 870 F.2d 1125, 1128 (6th Cir. 1989) (rejecting defendant's "argument that . . . evidence of flight" may be introduced "only when the defendant learns of the charges against him or her" and noting that "the commencement of an investigation may substitute for accusation as the precipitating event" that would "tend to spark a sharp impulse of fear of prosecution or conviction in a guilty mind") (internal quotation marks omitted).

13

Forbes admits in his brief, FM2, as he did at trial, Tr. 14386-97, 14432-14433, that he transferred the real estates assets to his wife and daughters specifically to shield those assets from potential adverse judgments in private lawsuits that had been brought against him, alleging his involvement in the same fraudulent conduct at issue in this criminal case. He contends that he feared civil liability, which could be based on vicarious liability. FM2, 8-9. He claims that his supposed fear of civil liability fully explains the asset transfers, so those transfers are irrelevant to prove that he was also conscious of intentional wrong-doing required to establish criminal liability.

This argument should be rejected. First, it requires the Court to accept as true Forbes' explanation for his conduct. That decision, however, is for the jury. See United States v. Roman, 870 F.2d 65, 71 (2d Cir. 1989). A defendant who flees from justice can always argue that, although he was innocent, he reasonably feared a wrongful conviction, so his flight was not motivated by a guilty conscience. Nevertheless, the jury can reject that inference and opt for another plausible explanation: consciousness of guilt. See United States v. Amuso, 21 F.3d 1251, 1258 (2d Cir. 1994) ("[w]here the evidence passes the threshold inquiry of relevance, '[t]he accepted technique is for the judge to receive the evidence and permit the defendant to

14

bring in evidence in denial or explanation'") (quoting <u>United States v. Ayala</u>, 307 F.2d 574, 576 (2d Cir. 1962)).[9]

On that score, Forbes has boldly proclaimed that he was a victim of the charged conspiracy.  <u>E.g.</u>, FTTr. 13537-12549, 14404-14045.  If this is true and he is a victim just like every innocent shareholder, officer and director of CUC/Cendant, then he would have no reason to transfer his assets in the way that he did.  The jury should be free to evaluate the evidence and determine, if it so chooses, that his actions are probative of guilt and that he was not a victim of the fraud, but a perpetrator.  <u>See</u> <u>Amuso</u>, 21 F.3d at 1258 ("that a defendant's flight is

---

[9] <u>United States v. Al-Sadawi</u>, 432 F.3d 419 (2d Cir. 2002), <u>United States v. Myers</u>, 550 F.2d 1036 (5th Cir. 1977), and <u>United States v. Beahm</u>, 664 F.2d 414 (4th Cir. 1981), relied upon by Forbes, FM7-8, are not to the contrary.  They are all "flight" cases, which Forbes himself contends "are inapposite." FM7 n.5.  Moreover, even assuming the "chain of inferences" test set forth in those cases applies here, in <u>Al-Sadawi</u>, there was too "thin" an "evidentiary reed" that the "defendant's behavior" constituted "flight."  432 F.3d at 424-25.  In <u>Myers</u>, a government witness's testimony concerning one supposed instance of flight contradicted his sworn testimony in another, while the other supposed instance of flight was too "remote in time from the commission . . . of the offense."  550 F.2d at 1049-51.  Beyond that, the defendant had committed two separate crimes, in different states, only one of which was being prosecuted, so any "flight" might have been prompted by fear of prosecution for the other crime.  <u>Id.</u> at 1050.  And in <u>Beahm</u>, the defendant's supposed flight occurred neither "immediately after the commission of a crime" nor "after he was accused of a crime."  664 F.2d at 420.  Here, in contrast, Forbes has admitted that just seven weeks after Cendant launched its internal investigation, he began transferring out of his name for nominal consideration assets worth by his own estimate $17 million.  Moreover, unlike <u>Myers</u>, Forbes' role in the fraud at CUC is the only misconduct by him that could possibly have been at issue when he transferred those assets.

subject to varying interpretations does not lead inevitably to
the conclusion that the district court abused its discretion in
admitting flight evidence").

Second, Forbes' fear of civil liability is predicated upon
the same fraud at issue in this criminal case.  Compare In re
Cendant Corp. Litig., 264 F.3d 286, 288-90 & n.3 (3d Cir. 2001)
(noting that "numerous plaintiffs claiming to have acquired CUC
or Cendant securities filed lawsuits against Cendant and others
[including Forbes] alleging, inter alia, federal securities law
violations," and describing the fraudulent accounting practices
at issue in those civil lawsuits) with Count One of the Redacted
Superseding Indictment in this case (charging conspiracy to
violate, inter alia, § 78j(b) and Rule 10b-5) and Count 4 (charg-
ing substantive violations of § 78j(b) and Rule 10b-5).

Any evidence tending to show that Forbes believed that he
was properly liable for securities fraud in the civil lawsuits
against him would also tend to prove his consciousness of guilt
in this case, as the underlying wrongful conduct is the same.
The jury could reasonably reject Forbes' self-serving explanation
for the transfers and conclude that Forbes' decision to transfer
the assets was motivated, at least in part, by his consciousness
of intentional wrongdoing.  Even if Forbes could be held civilly
liable for conduct that did not rise to the level of intentional
fraud, FM8-9, proof of intentional fraud would also, obviously,
support a finding of civil liability for violation of the federal

16

securities laws.  See Rolf v. Blyth, Eastman Dillon & Co., Inc.,
570 F.2d 38, 46 (2d Cir. 1978) (recklessness, as well as willful
conduct, may satisfy the scienter requirement for a private cause
of action for securities fraud in violation of Rule 10b-5).

Since a fine or order of restitution following a criminal
conviction, like a civil money judgment, could subject Forbes to
the loss of his real property, he would be equally motivated to
shield his assets against an adverse outcome in either a criminal
or civil proceeding.  The jury could reasonably infer that
Forbes' efforts to shield his assets from a possible civil
judgment could have been motivated by his fears that a civil jury
would find that he intentionally engaged in unlawful conduct.
Forbes was likely aware that a civil jury would be more likely to
impose liability against him based on a finding of willful fraud
than on a finding of some less blameworthy mental state.  Thus,
evidence that Forbes shielded his assets makes it more likely
that he knew that he was guilty of the charged crimes than if he
had confidently retained his interests in those assets, knowing
that, as he claims, he did nothing wrong.

Forbes' remaining relevance objections may be appropriate
arguments for the jury, but are no basis for excluding evidence,
cross-examination, and argument concerning his asset transfers.
That Forbes did not "conceal" his asset transfers, FM9, does not
mean that he conducted them for an innocent purpose.  Further-
more, that he sought "legal advice with respect to the matter"

17

does not exonerate him, FM9, because Forbes not only disregarded
the legal advice that Danilow gave him, but also <u>lied</u> under oath
at the first trial about that very advice.  Such conduct is
hardly consistent with Forbes' claim "that he knew he had done
nothing wrong and did not fear criminal prosecution."  FM9.

### E.    Evidence of Forbes' Consciousness of Guilt Is Not Substantially More Unfairly Prejudicial than Probative.

Nor should evidence, cross-examination, and argument con-
cerning the transfers be excluded on the grounds of Fed. R. Evid.
403.  Relevant evidence may not be excluded under Rule 403
unless, <u>inter</u> <u>alia</u>, its "probative value is <u>substantially out-
weighed</u> by the danger of <u>unfair prejudice</u>."  Fed. R. Evid. 403
(emphasis added).  Under Rule 403, "unfair prejudice 'means an
undue tendency to suggest decision on an improper basis, com-
monly, though not necessarily, an emotional one.'"  <u>United States
v. Brady</u>, 26 F.3d 282, 287 (2d Cir. 1994) (quoting the Advisory
Committee Notes to Rule 403).  Relevant evidence introduced by
the Government is "meant to be prejudicial" to a criminal defen-
dant; "it is only unfair prejudice which must be avoided" under
Rule 403.  <u>United States v. Rodriguez-Estrada</u>, 877 F.2d 153, 156
(1st Cir. 1989) ("[t]hat the evidence helped the prosecution and
hurt the defendant's chances cannot be gainsaid -- but that did
not require exclusion"); <u>United States v. Universal Rehabilita-
tion Services, (PA) Inc.</u>, 205 F.3d 657, 664 (3d Cir. 2000) (en
banc) ("Rule 403 creates a presumption of admissibility, and the

18

district courts may utilize the rule only rarely to cause the exclusion of evidence.").

The evidence of asset transfers and Forbes' lie about the legal advice he received about them is relevant and substantially probative for the reasons explained above, and there would be little if any unfairly prejudicial impact, because consulting counsel and transferring assets to one's spouse or children is not, by itself, illegal or even wrongful, so long as the transfer is not a fraudulent effort to defeat the interests of creditors. See Bein, 728 F.2d at 115 (affirming the admission of evidence of consciousness of guilt over a Rule 403 objection). Moreover, the Government will not oppose an appropriate limiting instruction stating that whether or not the proposed evidence proves that Forbes was conscious of his own guilt is a factual matter for the jury to decide. See Blanco, 861 F.2d at 782 (upholding admission of consciousness of guilt evidence where such an instruction was given). Indeed, such instructions were given at the first and second trials.

Nor will evidence, cross-examination, and argument concern-ing Forbes' asset transfers place undue emphasis on his wealth, as Forbes unsuccessfully argued before the second trial. The Second Circuit recently confirmed that evidence of a defendant's "substantial salary" is not unduly prejudicial, if accompanied by appropriate instructions or other safeguards. United States v. Quattrone, 441 F.3d 153, 187 (2d Cir. 2006). As Judge Thompson

19

previously concluded in granting the Government's motion prior to
the second trial with respect to evidence of Forbes' stock sales,
the jury is unlikely to develop an animus against Forbes because
of his wealth.[10]   Finally, the Government agrees with Forbes that
his status as a defendant in a civil case is irrelevant here,
FM12-13, and will not offer any evidence of that fact in its
case-in-chief.   Accordingly, Forbes' purported concern that the
jury might hold him responsible for the criminal charges because
he has been sued civilly fails for want of a predicate.

---

[10] Forbes' reliance on United States v. Stahl, 616 F.2d 30,
32 (2d Cir. 1980), is misplaced.  There, the Government went "to
great lengths [during summation] to appeal to class prejudice in
characterizing the defendant as a very rich man." Berman Enters.
Inc. v. Local 333, Int'l Longshoremen's Ass'n, 644 F.2d 930, 939
(2d Cir. 1981) (distinguishing Stahl); United States v. Derman,
211 F.3d 175, 180 (1st Cir. 2000) (distinguishing Stahl and
finding no misconduct based on the Government's statements during
the trial and closing arguments that addressed the defendant's
financial motive for the charged crimes, which "did not
impermissibly stray into class bias"); United States v. Little,
753 F.2d 1420, 1441 (9th Cir. 1984) (distinguishing Stahl where
the prosecutor's summation arguments that the defendant was
motivated by money and greed to commit the charged crimes was
appropriate advocacy, and did not involve an appeal to class
prejudice).  Although appeals to class prejudice are improper,
evidence of the defendant's financial motive to commit a white
collar crime is patently not.  Moreover, the Government will not
make summation arguments designed to appeal to class prejudices.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that Forbes' motion in limine be denied.  Judge Thompson properly permitted evidence, cross-examination, and argument regarding Forbes' transfer of real estate assets to his wife (and daughters) during the first two trials and properly instructed the jury on these subjects.  This Court should do likewise.


Respectfully submitted,

CHRISTOPHER J. CHRISTIE
Special Attorney
U.S. Department of Justice

*Norman Gross/s*

NORMAN GROSS
Federal Bar Number 24933
MICHAEL MARTINEZ
Federal Bar Number PHVO243
Special Attorneys
U.S. Department of Justice


Newark, New Jersey
Date: April 17, 2006

## CERTIFICATE OF SERVICE

The undersigned certifies that on this day I caused to be served a copy of the Government's Memorandum of the United States in Opposition to Forbes' Motion to Preclude the Government from Presenting Evidence, Cross-examination, or Argument Concerning Property Transfers (Opposition to Forbes' Third Trial Motion in Limine Motion No. 2) via email on:

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901
(202) 434-5005
bsimon@wc.com


*Norman Gross/s*
NORMAN GROSS


Dated: April 17, 2006
      Camden, New Jersey