UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

———————————————————————   )
)
UNITED STATES OF AMERICA    )
)        No. 3:02CR264 (AHN)
v.                          )
)
)        April 17, 2006
WALTER A. FORBES            )
)
——————————————————————— )

MOTION OF DEFENDANT WALTER A. FORBES
TO PRECLUDE THE ADMISSION OF THE CENDANT AUDIT
COMMITTEE REPORT AND THE MATERIALS GENERATED DURING
THE CENDANT AUDIT COMMITTEE INVESTIGATION
(Forbes Third Trial Motion In Limine No. 8)

Defendant Walter A. Forbes, through undersigned counsel, respectfully moves in

limine, pursuant to Fed. R. Evid. 801 and the Confrontation Clause of the Sixth Amendment, to

preclude the admission of both the Cendant Audit Committee report and the materials (including

interview memoranda) generated during the course of the Cendant Audit Committee

investigation.  The grounds for this motion are set forth in the accompanying memorandum of

points and authorities.

Oral Argument Requested

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon  (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

2

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing Motion of Defendant Walter A. Forbes

to Preclude the Admission of the Cendant Audit Committee Report and the Materials Generated

During the Cendant Audit Committee Investigation (Forbes Third Trial Motion <u>In</u> <u>Limine</u> No. 8)

to be filed electronically and to be served on April 17, 2006 to the following via e-mail:

Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

_____
Barry S. Simon

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 3:02CR264 (AHN) |
| v. | ) | |
| | ) | |
| | ) | April 17, 2006 |
| WALTER A. FORBES | ) | |
| | ) | |
| | ) | |

MEMORANDUM IN SUPPORT OF
MOTION OF DEFENDANT WALTER A. FORBES
TO PRECLUDE THE ADMISSION OF THE CENDANT AUDIT
COMMITTEE REPORT AND THE MATERIALS GENERATED DURING
THE CENDANT AUDIT COMMITTEE INVESTIGATION
(Forbes Third Trial Motion In Limine No. 8)

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits

this memorandum in support of his motion in limine, pursuant to Fed. R. Evid. 801 and the

Confrontation Clause of the Sixth Amendment, to preclude the admission of both the Cendant

Audit Committee report and the materials (including interview memoranda) generated during the

course of the Cendant Audit Committee investigation.

## BACKGROUND

A.     The Cendant Audit Committee Investigation and Report.

On April 9, 1998, two accountants at the former CUC side of Cendant, Casper

Sabatino and Steve Speaks, disclosed to Cendant's management problematic accounting entries

at the former CUC businesses.  On April 13, 1998, Cendant management from the former HFS

Oral Argument Requested

met with lawyers from the firm of Willkie Farr & Gallagher to discuss an investigation into the former CUC's accounting practices. On April 15, 1998, Cendant announced alleged accounting irregularities at the former CUC. Following the disclosure, more than seventy lawsuits were filed against Cendant.

On April 15, 1998, Cendant management officially asked Cendant's Audit Committee to conduct an investigation into the alleged accounting irregularities. See Ex. 1 at 1 (excerpts from Audit Committee Report). The Audit Committee retained Willkie Farr & Gallagher to assist in the investigation; Willkie Farr, in turn, retained the accounting firm Arthur Andersen. See id. On August 24, 1998, the Audit Committee issued its report based on the investigation. Id. On August 28, 1998, Cendant filed a Form 8-K with the SEC, attaching a copy of the Audit Committee Report.

Although the Audit Committee investigation was purportedly "independent," contemporaneous notes of the April 13, 1998 meeting between Cendant management and Willkie Farr show that the objectives of the investigation were to "protect [HFS] mgt [management]," put the "top 4-5 at CUC in iron [i.e. prison]" and make sure that CUC management was "gone." See Ex. 2 (April 13, 1998 notes of Cendant chief accounting officer Scott Forbes referring to "protect mgt"); Ex. 3 (April 13, 1998 notes of Willkie Farr & Gallagher partner Michael Young referring to objectives of "Top 4-5 at CUC in iron" and "gone").

From the start, the Audit Committee investigation was conducted with litigation in mind. On April 15, 1998, Cendant's CEO, Henry Silverman, announced on a conference call to investors that Cendant had requested its "counsel to explore litigation against certain officers of the former CUC as well as other potential defendants." Ex. 4 (April 15, 1998 Silverman

Conference Call at 635) (emphasis added). Silverman also stated that he expected that "the investigation of [Cendant's] Audit Committee . . . will establish the identity of any individuals not currently known to [Cendant]" who were involved in the alleged irregularities and that the matter was "a potentially highly litigious situation." See Ex. 4 at 635-6.

During the Audit Committee investigation, Willkie Farr conducted interviews of 81 individuals. See Ex. 1 at 3. Arthur Andersen also had numerous discussions with Cendant personnel on matters relating to the investigation. Id. With an eye toward potential litigation, Willkie Farr and Arthur Andersen deemed the memoranda they wrote purporting to memorialize these interviews and meetings to be covered by the work product privilege. See, e.g., Ex. 5 (Greyser Interview Memorandum classified as "Privileged and Confidential Attorney Work Product); Ex. 6 (Arthur Andersen Memorandum on Billing Process with each page classified as subject to "Attorney Work Product Privilege"). When the final Audit Committee Report was presented on August 24, 1998, it, too, was considered "Privileged and Confidential" and prepared subject to the "Attorney-Client and Attorney Work Product Privileges." See Ex. 1.

B.    The 2004 and 2005 Trials.

Prior to the 2004 trial, Mr. Forbes filed a motion in limine to preclude the admission of any evidence of, or reference to, either the Cendant Audit Committee investigation or the Cendant Audit Committee report. See Docket No. 648 (filed April 23, 2004); Docket No. 673 (reply memorandum). The motion was opposed by the government, see Docket No. 666, and denied by the Court, see Docket No. 723. During the trial, the government did not attempt to offer the Audit Committee report into evidence, but elicited testimony concerning the Audit Committee investigation.

Mr. Forbes renewed his motion in limine prior to the 2005 trial.  See Docket Nos. 1683, 1781.  The motion was opposed by the government, see Docket No. 1722, and denied by the Court, see Docket No. 1842.  The government made no attempt to offer the Audit Committee report into evidence at Mr. Forbes' second trial.

## ARGUMENT

I.     **THE AUDIT COMMITTEE REPORT AND RELATED MATERIALS GENERATED DURING THE AUDIT COMMITTEE INVESTIGATION ARE UNRELIABLE HEARSAY.**

The Court should exclude the Audit Committee Report and all documents generated during the course of the Audit Committee investigation as unreliable hearsay.  These items are classic hearsay – "statement[s], other than one[s] made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter[s] asserted."  Fed. R. Evid. 801(c).  Moreover, the report and the related materials contain multiple layers of hearsay. For example, the Willkie Farr interview memoranda generated during the Audit Committee investigation are statements by attorneys containing purported statements from company personnel that often discuss statements attributed to other personnel.  See, e.g., Ex. 5 at 4 ("Greyser remembered a presentation by Amy Lipton . . . where Lipton discussed legal matters and the topic of reserves as it related to Ideon").  The Arthur Andersen workpapers are statements containing purported statements from company personnel regarding company documents or accounting issues.  The statements in the Audit Committee report are derived from the hearsay statements in the Willkie Farr interview memoranda and Arthur Andersen's workpapers.

4

The Willkie Farr memoranda, Arthur Andersen workpapers, and Audit Committee Report do not fall within any of the established exceptions to the hearsay rule. Neither the Audit Committee Report nor its supporting documents constitute records of a regularly conducted business activity. See Fed. R. Evid. 803(6). Documents prepared in anticipation of litigation are inadmissible under the business records exception because they are "dripping with motivations to misrepresent." Hoffman v. Palmer, 129 F.2d 976, 991 (2d Cir. 1942), aff'd, 318 U.S. 109, 113 (1943); see Potamkin Cadillac Corp. v. B.R.I. Coverage Corp., 38 F.3d 627, 632 (2d Cir. 1994) ("[A] document that constitutes attorney work product . . . is not a business record within the meaning of Rule 803(6).").[1] Similarly, when an investigation is conducted because of suspicions of irregularities rather than as a regular part of the company's business, neither the investigation nor the report the company issues is conducted in the regular course of business. See, e.g., Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1258 (9th Cir. 1984) (audit report prepared without sufficient regularity and because of suspicion of irregularities not a business record).

Here, the Audit Committee investigation was not undertaken in the regular course of business, but because of Cendant management's suspicions of irregularities at the former CUC. See Paddack, 745 F.2d at 1258. The investigation was expressly undertaken with the

---

[1]    See also Echo Acceptance Corp. v. Household Retail Servs., Inc, 267 F.3d 1068, 1091 (10th Cir. 2001) ("It is well-established that one who prepares a document in anticipation of litigation is not acting in the regular course of business.") (quotation omitted); Certain Underwriters at Lloyd's, London v. Sinkovich, 232 F.3d 200, 205 n.4 (4th Cir. 2000) ("[T]he rule is well established that documents made in anticipation of litigation are inadmissible under the business records exception."); Lamb Eng'g & Constr. Co. v. Nebraska Pub. Power Dist., 103 F.3d 1422, 1432 n.5 (8th Cir. 1997) (report prepared by accountant based on audit was inadmissible, where circumstances indicated it had been prepared for litigation); E.F. Hutton & Co. v. Penham, 547 F. Supp. 1286, 1293-94 (S.D.N.Y. 1982) (report prepared by plaintiff brokerage dealer's legal department purporting to show unauthorized trades by defendant account executive was self-serving document inadmissible under business records exception).

contemplation of litigation, and the report and its supporting memoranda were expressly declared

to be work product prepared in anticipation of litigation.  See Potamkin Cadillac, 38 F.3d at 632

(document claimed as work product inadmissible as business record).  The objective of the

investigation was to protect HFS management and place the top four or five CUC senior

executives "in iron."  See Exs. 2 and 3.[2]  The conclusions of the investigation and the Audit

Committee Report were "dripping with motivations to misrepresent," Hoffman 129 F.2d at 991.

The Report and all documents generated during the course of the Audit Committee investigation

must be excluded as inadmissible hearsay under Fed. R. Evid. 802.[3]

## II.    ADMITTING THE AUDIT COMMITTEE REPORT OR INVESTIGATION MEMORANDA INTO EVIDENCE WOULD VIOLATE MR. FORBES' SIXTH AMENDMENT RIGHT OF CONFRONTATION.

Admitting into evidence the unreliable hearsay and multiple hearsay contained in

the Audit Committee Report and Audit Committee investigation memoranda also would violate

Mr. Forbes' Sixth Amendment right to confront and cross-examine the witnesses against him.

The Second Circuit has emphasized the importance of this right: '[b]ecause cross-examination is

---

[2]    For example, while the investigators retained by the Audit Committee secured the hard drives of various former CUC executives, they did not do so with respect to former HFS executives.  It also appears that the e-mails of former HFS executives were not preserved, despite Cendant's receipt of grand jury subpoenas and civil litigation commencing in April 1998.

[3]    The government asserted in response to Mr. Forbes' renewed motion in limine that Mr. Forbes' statements to Audit Committee investigators are admissible as non-hearsay.  See Docket No. 1722 at 1-2.  The government did not, however, attempt to offer any of Mr. Forbes' purported statements during Audit Committee interviews into evidence at the 2005 trial.  Mr. Forbes objects to the admission of any evidence concerning his Audit Committee interviews on the ground that the memoranda of those interviews are not his statements.  See Forbes Trial Motion No. 45 (filed Oct. 4, 2004) (Docket No. 1248) (incorporated herein by reference).  The memoranda were never adopted by Mr. Forbes and are not a verbatim record of his purported statements.  As a result, they are inadmissible.  See United States v. Almonte, 956 F.2d 27 (2d Cir. 1992) (per curiam).

the principal means by which the believability of a witness and the truth of his testimony are

tested, the opportunity for cross-examination, protected by the Confrontation Clause, is critical

for ensuring the integrity of the fact-finding process." Cotto v. Herbert, 331 F.3d 217, 229 (2d

Cir. 2003).

   In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court announced a

per se bar on the admission of out-of-court testimonial statements unless the declarant is

unavailable and his or her prior statements were subject to cross-examination.  Although the

Court did not "spell out a comprehensive definition of 'testimonial,'" it provided examples, such

as prior testimony and responses to police interrogation. Id. at 68.  These statements "all involve

a declarant's knowing responses to structured questioning in an investigative environment or a

courtroom setting, where the declarant would reasonably expect that his or her responses might

be used in future judicial proceedings." United States v. Saget, 377 F.3d 223, 228 (2d Cir. 2004).

The Second Circuit has interpreted Crawford as suggesting that "the determinative factor in

determining whether a declarant bears testimony is the declarant's awareness or expectation that

his or her statement may later be used at a trial." Id.

   The Audit Committee Report and its supporting memoranda are testimonial

hearsay:  they are "declaration[s] . . . made for the purpose of establishing or proving some fact,"

Crawford, 541 U.S. at 51 (quotation omitted).  Willkie Farr purported to record statements of 81

witnesses regarding their purported knowledge of CUC and Cendant's alleged accounting

irregularities.  Those interviews "all involve a declarant's knowing responses to structured

questioning in an investigative environment . . . where the declarant would reasonably expect that

his or her responses might be used in future judicial proceedings." Saget, 377 F.3d at 228.

7

Civil litigation had already been instituted and criminal and SEC investigations had commenced at the time of the interviews.  Although the government was not conducting the interviews, Cendant was cooperating with the government, investigating the same matters, and it ultimately disclosed the interview memoranda.  At the time the interviews were conducted, witnesses were advised that the interviewers did not represent them and some were advised that their statements might be disclosed.  Thus, these witnesses could reasonably expect that their statements might be used in future judicial proceedings.

The government has only identified a small number of the 81 witnesses interviewed by the Willkie Farr & Gallagher as likely to testify in this case.  Admitting the Report or any Audit Committee interview memoranda would allow testimonial hearsay into evidence without that hearsay being tested in the "crucible of cross-examination," Crawford, 541 U.S. at 61.  The admission of such evidence would violate Mr. Forbes' right to confrontation under the Sixth Amendment.

## CONCLUSION

For the foregoing reasons, the Court should preclude the admission of both the Cendant Audit Committee report and the materials (including interview memoranda) generated during the course of the Cendant Audit Committee investigation.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
    Brendan V. Sullivan, Jr. (Bar No.ct17115)
    Barry S. Simon  (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

    - and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing Memorandum in Support of Motion of Defendant Walter A. Forbes to Preclude the Admission of the Cendant Audit Committee Report and the Materials Generated During the Cendant Audit Committee Investigation (Forbes Third Trial Motion <u>In Limine</u> No. 8) to be filed electronically and to be served on April 17, 2006 to the following via e-mail:

Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

Barry S. Simon