# EXHIBIT 1

PRIVILEGED & CONFIDENTIAL
SUBJECT TO ATTORNEY-CLIENT AND
ATTORNEY WORK PRODUCT PRIVILEGES

# REPORT TO THE AUDIT COMMITTEE OF THE BOARD OF DIRECTORS OF CENDANT CORPORATION

PREPARED BY:

WILLKIE FARR & GALLAGHER

-and-

ARTHUR ANDERSEN LLP

August 24, 1998

## I. FACTUAL BACKGROUND

### A. April 15 Announcement

On April 15, 1998, Cendant Corporation ("Cendant" or the "Company") reported that it had discovered potential accounting irregularities in certain former CUC International, Inc. ("CUC") business units and that it expected to restate annual and quarterly net income and earnings per share for 1997 and might restate certain other previous periods related to the former CUC businesses. The release stated that based on then available information, the effect on 1997 results was expected to be a reduction of net income prior to restructuring and unusual charges of approximately $100-$115 million and earnings per share by about 11¢-13¢, respectively.

In connection with the discovery of the potential irregularities, Cendant's Audit Committee (the "Audit Committee") was asked to conduct an investigation of the irregularities, their effect on the reported financial results of Cendant and CUC, and the identity of individuals having involvement in or knowledge of the irregularities.[1] The Audit Committee retained the law firm of Willkie Farr & Gallagher ("Willkie Farr" or "Counsel") to assist in the investigation and Willkie Farr retained the accounting and consulting firm of Arthur Andersen LLP ("AA").

---

1 The members of the Audit Committee are Frederick D. Green (Chairman), Robert E. Nederlander, Robert P. Rittereiser and E. John Rosenwald, Jr.

B. Overview of the Investigation

Documents at multiple locations were reviewed. These documents, which include information downloaded from computers, were located at Cendant's offices (former CUC offices) at 595 and ,07 Summer Street, Stamford, Connecticut; at CUC archive facilities; at its Comp-U-Card division[2] ("Comp-U-Card division" or simply "Comp-U-Card") office, in Trumbull, Connecticut; and at the offices of various CUC subsidiaries located throughout the country and in Europe.[3]

---

2 Following the merger between CUC and HFS Incorporated ("HFS") on December 17, 1997, the operations of the Comp-U-Card division of CUC became part of Cendant Membership Services, Inc. ("CMS"). CMS is a subsidiary of Cendant and conducts the operations of the former CUC business units. The former Comp-U-Card division is now known as Cendant Membership Services. Nonetheless it will be referred to herein as "Comp-U-Card" or the "Comp-U-Card division."

3 The former CUC subsidiaries are now subsidiaries of Cendant. The subsidiaries whose documents were reviewed include Benefit Consultants, Inc. ("BCI"), in San Carlos, California; CUC Europe ("CUC Europe") in Slough, England; Entertainment Publications, Inc. ("EPub"), in Troy, Michigan; Essex Corporation ("Essex"), in New York, New York; FISI*Madison Financial Corporation ("FISI"), in Brentwood, Tennessee; National Card Control, Inc. ("NCCI"), in Crozier, Virginia; National Leisure Group, Inc. ("NLG") in Woburn, MA; North American Outdoor Group, Inc. ("NAOG"), in Minnetonka, Minnesota; NUMA Corporation ("NUMA") in Akron, Ohio; Spark Services, Inc. ("Spark"), in Stamford, Connecticut; Cendant Software, a division comprised of Davidson & Associates, Inc. ("Davidson"), in Torrance, California, and Sierra On-Line, Inc. ("Sierra"), in Bellevue, Washington; Welcome Wagon ("Welcome Wagon") in Trumbull, Connecticut; and Coktel Europe ("Coktel"), in Paris, France.

Documents and/or downloaded computer information provided by E. Kirk Shelton, former President and Chief Operating Officer of CUC, Cosmo Corigliano, former Chief Financial Officer ("CFO") of CUC, certain former CUC directors, Cendant personnel in Parsippany, New Jersey, and Ernst & Young, LLP ("E&Y") were also reviewed.

Numerous interviews were conducted. Such persons included most of the principal officers of CUC and many other employees located at CUC's Stamford offices, including those having significant responsibility for financial or accounting matters; directors of CUC; officers and employees of CUC's Comp-U-Card division in Trumbull and of fourteen subsidiaries (BCI; Davidson; CUC Europe; EPub; Essex; FISI; NAOG; NCCI; NLG; NUMA; Sierra; Spark; Welcome Wagon; and Coktel); former HFS officers, directors and/or employees; representatives of E&Y, CUC's former auditors; representatives of Deloitte & Touche, LLP ("D&T"), Cendant's auditors; and certain other persons. A total of 81 people were interviewed by Counsel, some of whom were interviewed on more than one occasion.[4] In addition, AA held numerous discussions with Company personnel on matters relating to the investigation.

---

4 A list of persons interviewed by Counsel is attached as Appendix Ex. 1.

Three persons believed to have highly relevant information were not interviewed: Corigliano[5], Anne Pember[6], the Senior Vice President and Controller of CUC, and former Controller of the Comp-U-Card division, and Paul J. Hiznay[7], former Accounting Manager of the Comp-U-Card division.

Certain other former officers and/or employees of CUC who might have useful information also were not interviewed.[8]

---

5 In a letter to the Board of Directors of Cendant dated April 17, 1998, Corigliano stated that he had "never knowingly engaged in any accounting or other financial wrongdoing or irregularity or advised or assisted anyone else to do so."

Corigliano, through his counsel, stated his willingness to appear for an interview if he were provided in advance with a precise specification of the particular accounting irregularities at issue, the reasons why Cendant believes those matters are incorrect, the basis for any claim of knowledge or participation by Corigliano in the irregularities, and other support believed to have existed to show that he acted improperly. In this regard, he wanted affidavits or other statements that employees or others have adopted that allegedly implicate Corigliano. He also requested copies of all documents which would be shown to him at his interview in advance of the interview. His counsel stated that he believed that Corigliano was in a different position than others that had been interviewed and was entitled to this information in advance of an interview because of the circumstances of his termination, which in his counsel's view were unfair.

After extended discussions between counsel, it was ultimately concluded that it would be inappropriate to interview Corigliano subject to these conditions.

6 Several requests were made to Pember's counsel for an interview. Those requests were declined.

7 Hiznay did not respond to attempts by Cendant to reach him at his home by letter and telephone.

8 Stuart L. Bell, CUC's CFO prior to Corigliano, offered, through his counsel, to respond to written questions, but

(Footnote Continued)

In addition, AA, over a period of 16 weeks and expending in excess of 3,700 person-days, conducted investigations with respect to accounting irregularities; analyzed financial statements, financial documents, accounts and account elements, and accounting transactions involved in certain accounting irregularities; identified the apparent causes of such accounting irregularities; and analyzed certain CUC subsidiary accounting systems, records and transactions.

C. Audit Committee Special Meetings

Following the commencement of the investigation, the Audit Committee held many special meetings to receive reports from AA and Willkie Farr as to the progress of the investigation and to discuss the information it received.

---

declined to be interviewed. Just prior to the completion of this Report, new counsel for Bell re-opened discussions about a possible interview, but no interview took place.

Bell has stated, through counsel, that he has not been involved with any of CUC's annual financial statements since January 31, 1994 or any quarterly statements since October 31, 1994 and that during his tenure the company's accounting policies and practices were all undertaken in accordance with generally accepted accounting principles.

# EXHIBIT 2

4/13/98

Per WS to Jack Nussbaum
WS objectives:
1. Preservation of Co.
2. Protect Mgt
3. CUC mgt - fix appropriate responsibility and punish
4 Ck D&O mrs/HWS - handle as appropriate

Per Jack Nussbaum: - Process re:
1. Determine the facts
a. Not criticize if act properly
b. Can't sit, must take steps
c. Want cooperation of people (staff)

2. Could go to SEC [illegible] ... [illegible] since don't know, don't go to SEC yet

3. [illegible] different.
Determine
Since determined, decide and [illegible]

B Management [illegible] the [illegible],

ii Process includes getting financial:
A. [illegible]
B. [illegible]

# EXHIBIT 3

[illegible]

1st Q

[illegible] for 12 months [illegible] cats [illegible] category.
1998 - [illegible]
• [illegible]
Not anticipated [illegible] in 1st Q.

Cosmo Codiano
Casper Sabatino
Anne Pember

Who's "they"?
Old CEO (Cosmo Codiano)
[illegible] (Casper Sabatino) - VP Consolidation.
Cos

[illegible] Q - [illegible] What's that? [illegible]
Cosmo [illegible] (Kirk Shelton) had to know.

(Anne Pember) Controller. [illegible] for CUC [illegible]

[illegible] with CO?
Pember resigned 2 weeks ago
Cosmo - [illegible] his resignation. (Du [illegible])

[illegible]
[illegible] -- [illegible]
"[illegible]"

Kirk in CUC [illegible] them?
[illegible]

[illegible]
1) [illegible] co.
2) [illegible]
3) Top 4-5 at CUC in [illegible]. All out of CUC gone.
4) All O's/Ds totally gone. Our s/H totally [illegible]
[illegible]

[illegible] A/A.
D: T - [illegible]
B: [illegible]
My 5-6 -- [illegible] 1st Q #s. [illegible] STK trading.

# EXHIBIT 4

**CENDANT CORPORATION**

**Moderator: Henry Silverman**
**April 15, 1998**
**4:30 pm CT**

Operator: Good day and welcome to today's Cendant conference call. Today's conference is being recorded.

At this time for opening remarks, I would like to turn the conference over to Mr. Henry Silverman, President and Chief Executive Officer. Please go ahead, sir.

Henry Silverman: Thank you. Good afternoon. As you are aware, today we announced that we have discovered certain potential accounting irregularities resulting from the actions of a small group of individuals in certain former CUC business units which are now part of Cendant's Alliance Marketing Division.

Although this will have no material long-term effect upon the performance of our businesses, it is being dealt with promptly, thoroughly and professionally. And it's clearly something we needed to communicate to you as soon as we were aware of the facts and the scope of the problem.

Those potential accounting irregularities have come to light in the course of transferring responsibility for Cendant's accounting functions from former CUC International Inc. personnel to former HFS Incorporated financial personnel, and in preparing the consolidation of first quarter 1998 results.

The potential accounting irregularities are limited to certain former CUC businesses, which in total accounted for less than 1/3 of Cendant's net income in 1997. Nevertheless, we expect to restate annual and quarterly net income and earnings per share for 1997, and may restate certain other previous periods related to the former CUC businesses.

Based on presently available information, the effect on 1997 results is expected to be a reduction to net income -- prior to restructuring and unusual charges -- of approximately 100 to $115 million, and a reduction of earnings per share by about 11 to 13 cents.

In 1997 the company had previously reported net income prior to restructuring and unusual charges of $872 million, and earnings per share of $1.

All of our current businesses continue to perform strongly. And anticipated percentage growth of earnings per share in 1998 over restated 1997 appears quite achievable. We expect to meet or exceed the currently forecasted Wall Street consensus estimate of 25 cents per share for the first quarter of 1998.

However, since 1997 earnings per share will be reduced by about 11 to 13 cents, we anticipate that 1998 full year earnings expectations will be reduced from current levels by approximately the same amount. I should point out to you that this has a minimal effect on cash flow or cash earnings per share, as approximately 2/3 of this reduction relate to non-cash items.

I am outraged- we are outraged by the actions of this small number of former CUC employees, who betrayed the trust that was placed in them by the company and our fellow shareholders. I can assure you that we are taking all appropriate steps to address these actions.

Upon discovering the potential accounting irregularities, Cendant -- together with our counsel, (Skadenarps), assisted by independent third party auditors -- immediately began an intensive investigation. As a result of the discovery and information developed to date, we have taken the following steps.

We have informed all of the appropriate regulatory authorities. The Audit Committee of our Board of Directors has engaged Willkie, Farr & Gallagher as special legal counsel. And Willkie, Farr has engaged Arthur Andersen to perform an independent investigation.

We have assigned all accounting, finance, financial reporting, budget systems, and control functions to the former HFS finance staff. And we have asked our counsel to explore litigation against certain officers of the former CUC as well as other potential defendants.

In addition, we will take all appropriate actions, including immediate terminations with respect to those individuals whom we believe or whom the investigation establishes have had any involvement in or knowledge of the potential accounting irregularities.

We expect that the investigation of our Audit Committee, which has commenced, will establish the identity of any individuals not currently known to us.

I want to emphasize that Cendant remains committed to the completion of the previously announced acquisitions of American Bankers, National Parking Corporation and Providian Insurance.

As I am sure you understand, this is a potentially highly litigious situation. And at this point, we cannot disclose any additional information with you other than that that we have provided through the press release and on this call.

We will not comment further on this matter until the ongoing investigation has been completed, and the results presented to the Audit Committee and the Board of Directors.

In addition, in accordance with SAS Number 1, the company's previously issued financial statements and auditors' reports will need to be revised. And revised financial statements and auditors' reports will be issued upon the completion of the investigation.

In closing, most of you know how committed I am to Cendant. As the company's largest individual shareholder and the second largest total shareholder, I share your anger and your frustration. I want to assure you that all of our businesses continue to perform very strongly. Cendant remains a strong, healthy and highly liquid company.

We have zero tolerance for any breach of any of our standards. I want you to know that as the Chief Executive Officer, I am more committed than ever to achieving our long term goals and delivering value to our shareholders. I'd like to thank you for listening to the call.

APR-20-98 11:29 From: T-579 P.06/06 Job-082

CENDANT CORPORATION
Moderator: Henry Silverman
04-15-98/4:30 pm CT
Confirmation #464565
Page 5

Operator: That concludes today's conference. Thank you everyone for your participation.

END

CENDANT 0000637