UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| _____ ) | |
| UNITED STATES OF AMERICA ) | |
| ) | No. 3:02CR264 (AHN) |
| v. ) | |
| ) | |
| ) | April 17, 2006 |
| WALTER A. FORBES ) | |
| ) | |
| _____ ) | |

RENEWED MOTION OF DEFENDANT WALTER A. FORBES
TO PRECLUDE EVIDENCE, CROSS-EXAMINATION, OR
ARGUMENTCONCERNING (1) THE DECLINE IN CENDANT'S
STOCK PRICE ON AND AFTER APRIL 15, 1998 OR (2) INVESTOR LOSSES
(Forbes Third Trial Motion In Limine No. 11)

Defendant Walter A. Forbes, through undersigned counsel, respectfully moves in limine to preclude the government from presenting any evidence, cross-examination, or argument concerning either (i) the decline in Cendant's stock price and market capitalization on and after April 15, 1998 or (ii) investor losses on and after April 15, 1998. The grounds for this motion are set forth in the accompanying memorandum of points and authorities.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
    Brendan V. Sullivan, Jr. (Bar No. ct17115)
    Barry S. Simon  (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

Oral Argument Requested

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing Renewed Motion of Defendant Walter

A. Forbes to Preclude Evidence, Cross-Examination, or Argument Concerning (1) the Decline in

Cendant's Stock Price On and After April 15, 1998 or (2) Investor Losses (Forbes Third Trial

Motion <u>In</u> <u>Limine</u> No. 11) to be filed electronically and to be served on April 17, 2006 to the

following via e-mail:

Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)


_____
Barry S. Simon

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 3:02CR264 (AHN) |
| v. ) | |
| ) | |
| ) | April 17, 2006 |
| WALTER A. FORBES ) | |
| ) | |

MEMORANDUM IN SUPPORT OF RENEWED MOTION OF
DEFENDANT WALTER A. FORBES TO PRECLUDE EVIDENCE,
CROSS-EXAMINATION, OR ARGUMENT CONCERNING (1) THE
DECLINE IN CENDANT'S STOCK PRICE ON AND AFTER
APRIL 15, 1998 OR (2) INVESTOR LOSSES
(Forbes Third Trial Motion In Limine No. 11)

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits

this memorandum in support of his motion in limine to preclude the government from presenting

any evidence, cross-examination, or argument concerning either (i) the decline in Cendant's

stock price and market capitalization on and after April 15, 1998 or (ii) investor losses on and

after April 15, 1998.

## BACKGROUND

A.      The 2004 Trial.

Prior to the 2004 trial, the government filed a motion in limine seeking permission

to present evidence concerning both the decline in Cendant's stock price after accounting

irregularities were disclosed on April 15, 1998 and shareholder losses after April 15, 1998.  See

Docket No. 454.  Mr. Forbes opposed the motion.  See Docket No. 470.  On May 10, 2004, the

Oral Argument Requested

Court granted the government's motion in part and permitted the government to present evidence on these subjects for a single limited purpose -- with respect to the element of materiality. The Court rejected the government's contention that such evidence was relevant to the element of intent and denied that aspect of the government's motion without prejudice. See Tr. (5/10/04) at 6.[1]

**B.    The 2005 Trial.**

Prior to the 2005 trial, Mr. Forbes filed a motion in limine to exclude evidence of the decline in Cendant's stock price and shareholder losses pursuant to Fed. R. Evid. 401 and 403. See Forbes Retrial Motion In Limine No. 24 (Docket No. 1855). The motion was denied on November 12, 2005 and the government was again permitted to offer this evidence solely with respect to the issue of materiality. See Docket No. 1966.

During the trial, the government attempted to use evidence of shareholder losses for other, improper, purposes. The government cross-examined Mr. Forbes on this subject, emphasizing that while shareholders lost "billions of dollars," Mr. Forbes made millions. Tr. (11/15/05) at 3000-01. The government also asked Mr. Forbes about the fact that he did not resign from Cendant after "shareholders lost billions," id. at 3004,[2] asked Mr. Forbes how he felt about the shareholders, id. at 3003, and repeatedly asked Mr. Forbes to agree that Cendant's stock price declined 45% on April 15, 1998, e.g., id. at 3000-01, 3040. During this line of questioning, the Court "requested that the government not refer to billions of dollars of losses to

_____

[1]    During the trial, the Court gave a limiting instruction with respect to the single purpose for which this evidence was offered. E.g., Tr. (5/11/04) at 260-61.

[2]    Mr. Forbes' objection to this question was sustained. Id.

2

investors." Id. at 3054-55.

Prior to closing arguments, Mr. Forbes filed a Notice of Preservation of Objections to Improper Argument in which he objected to any argument by the government in summation that contrasted Mr. Forbes' compensation with losses to Cendant stockholders. See Docket No. 2010, ¶ 11. On November 29, 2005, the Court reviewed this objection with the government and stated that, "[i]f there were to be argument on that, I would sustain an objection, just so we're clear." Tr. (11/29/05) at 3080. Despite this warning, government counsel argued in summation that, although Mr. Forbes "said he felt very badly for the shareholders after Cendant's stock price collapsed," he "took another $47 million in severance" after "Cendant publicly announced accounting irregularities in the CUC divisions on April 15, 1998." Id. at 3091-92. The government further argued that Mr. Forbes' acceptance of his severance at such a time was evidence that he was a knowing participant in the fraud. Id. The Court sustained Mr. Forbes' objection to these arguments and struck them from the record. Id. at 3092.[3]

## ARGUMENT

The Court should exclude evidence concerning the decline in Cendant's stock price and investor losses on and after April 15, 1998 for the reasons set forth in Forbes Retrial Motion In Limine No. 24 and its supporting memorandum (Docket No. 1855) (incorporated herein by reference). In addition, the Court should exclude evidence concerning these subjects pursuant to Fed. R. Evid. 403 because the government's conduct at the 2005 trial reveals that it seeks to offer this evidence to inflame juror emotions and incite juror anger and resentment

---

[3]     Mr. Forbes has separately moved to preclude the government from presenting any evidence, cross-examination, or argument with respect to his severance. See Forbes Third Trial Motion In Limine No. 14 (filed 4/17/06).

3

against Mr. Forbes. Even assuming arguendo that this evidence has probative value with respect

to the issue of materiality, the prejudicial effect of this evidence far outweighs its probative

value.

It is undisputed that the critical, hotly contested issue in this case is not

materiality, but whether Mr. Forbes knowingly and willfully directed improper accounting at

CUC and Cendant. Mr. Forbes did not make any argument concerning materiality in either trial

or elicit any evidence at either trial on that subject. The government acknowledged as much in

its 2005 summation: "So what's the question in dispute? Simply put, whether the defendant

knew about the fraud. That's the question." Tr. (11/29/05) at 3091.[4]

The government's first argument on the pivotal question of Mr. Forbes' intent was

the improper contention that Mr. Forbes was a knowing participant in the fraud because he

accepted millions of dollars in compensation at a time when Cendant's stock price "collapsed"

and shareholders were injured. Id. at 3091-92. It is clear from this argument -- which has

nothing to do with the issue of materiality -- that the government seeks to present evidence of the

decline in Cendant's stock price and shareholder losses to arouse juror anger against Mr. Forbes,

portray Mr. Forbes as a bad person who should be punished for his insensitivity to injured

shareholders, and suggest, improperly, that this evidence demonstrates that Mr. Forbes had

---

[4]     Mr. Forbes would agree to eliminate the element of materiality from the jury's
consideration at Mr. Forbes' third trial (although Mr. Forbes would not agree to any stipulation to
be read to the jury or any statement to the jury that Mr. Forbes agrees that the element of
materiality has been satisfied). Mr. Forbes recognizes that the government is not under any
obligation to agree to eliminate the issue of materiality from the jury's consideration. See Old
Chief v. United States, 519 U.S. 172, 189 (1997).

knowledge of the fraud.[5]

   The government's 2005 cross-examination of Mr. Forbes also reveals that the government seeks to present evidence of the decline in Cendant's share price and shareholder losses to incite juror anger and resentment against Mr. Forbes.  During cross-examination, the government contrasted Mr. Forbes' significant earnings with the "billions of dollars" lost by shareholders, Tr. (11/15/05) at 3000-01, in a clear "appeal to class prejudice," United States v. Stahl, 616 F.2d 30, 33 (2d Cir. 1980).  The government also asked Mr. Forbes about the decline in Cendant's stock price on April 15, 1998, Tr. (11/15/05) at 3000-01, 3040, suggested that Mr. Forbes should have resigned after "shareholders lost billions," id. at 3004,[6] and asked Mr. Forbes how he felt about the shareholders, id. at 3003.  It is evident that the government seeks to use evidence of shareholder losses to arouse anger among jurors who are likely to sympathize with average investors and that the government seeks to focus that juror anger on Mr. Forbes.

   Under Rule 403, unfair prejudice is "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  Fed. R. Evid. 403, advisory committee notes.  Evidence is prejudicial for purposes of Rule 403 "when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence.  The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against

---

[5] Although Mr. Forbes' objection to this argument was sustained, and the argument was stricken by the Court, the fact that the government made this argument after a warning by the Court not to do so demonstrates that the government seeks to use this evidence to prejudice Mr. Forbes in the eyes of the jury.

[6] Mr. Forbes' objection to this question was sustained.  Id.

the defendant." <u>United States v. Quattrone</u>, __ F.3d __, 2006 U.S. App. LEXIS 6911, at *75 (2d Cir. Mar. 20, 2006) (citations omitted); <u>see also id.</u> at *76 ("[T]he prejudice must be unfair in the sense that it could unduly inflame the passion of the jury, confuse the issues before the jury, or inappropriately lead the jury to convict on the basis of conduct not at issue in the trial."); <u>United States v. Blackstone</u>, 56 F.3d 1143, 1146 (9th Cir. 1995) ("Evidence is prejudicial if it 'appeals to the jury's sympathies, arouses its sense of horror, provokes its instincts to punish, or triggers other mainsprings of human action.'") (quoting 1 <u>Weinstein's Federal Evidence</u> § 403[3]).

   Here, the prejudicial effect of evidence of shareholder losses and the decline in Cendant's stock price is substantial.  The evidence, and the manner in which the government seeks to use this evidence, has a strong tendency to incite juror emotions and provoke an instinct among jurors to punish Mr. Forbes for reasons having nothing to do with whether he knowingly and willfully engaged in fraudulent conduct.  It is evident from the government's 2005 cross-examination of Mr. Forbes and the government's 2005 closing argument that the government seeks to use this evidence for far more than the limited purpose for which it could legitimately be admitted.  <u>See</u> <u>Quattrone</u>, 2006 U.S. App. LEXIS at *75-78 (concluding that government cross-examination of defendant "went too far" and that "the manner of questioning by the government gave rise to the potential for unfair prejudice to Quattrone" under Rule 403).  Because the admission of this evidence creates a serious risk of "unduly inflam[ing] the passion of the jury, confus[ing] the issues before the jury, or inappropriately lead[ing] the jury to convict on the basis of conduct not at issue in the trial," <u>id.</u> at *76, the Court should exclude it under Rule 403.

   The admission of this evidence would be particularly prejudicial in this case because the government's evidence with respect to the critical issue of Mr. Forbes' knowledge

and intent is weak. The government's case is predicated on the testimony of a single, highly compromised witness, Cosmo Corigliano, who claims to have knowledge of Mr. Forbes' purported involvement in the fraud. The Court should not permit the government to improperly buttress this dubious evidence with appeals to juror anger, emotion, and class prejudice.

The risk that this evidence will inflame and prejudice the jury against Mr. Forbes is heightened by the numerous recent high-profile alleged accounting frauds that have cost shareholders billions of dollars. These matters have resulted in the indictments and convictions of a number of corporate executives and have created a pervasive anti-corporate-defendant sentiment among the public. Because the evidence the government seeks to present is designed to arouse anger among jurors and would increase the likelihood that the jury would return a verdict based on passion rather than reason, the Court should exclude it under Rule 403.[7]

When weighed against its enormous prejudicial effect, the probative value of this evidence is weak. The evidence is, at best, relevant to the single issue of materiality. See Docket No. 1966. Mr. Forbes is willing to agree to remove the issue of materiality from the jury's consideration, rendering the admission of this evidence unnecessary. See note 4, supra. While the government may not agree to that offer, the Court should take it into consideration in

---

[7]     Courts have excluded evidence on the subject of financial loss even where its likely prejudicial effect was far less significant. See United States v. Lane, 323 F.3d 568, 583-84 (7th Cir.) (affirming exclusion of evidence proffered by defendant of lack of harm to alleged victim; "Even if the court had considered whether the victims suffered a loss as relevant to the issue of intent, the court did not improperly exclude this evidence, considering its lack of probative value"), cert. denied, 540 U.S. 818 (2003); United States v. Prater, 805 F.2d 1441, 1443 n.2 (11th Cir. 1986) (trial court erred in allowing witnesses to testify about write-downs taken by corporation in wire fraud case; "The implication of this evidence was that defendant's investment activity caused the corporation to suffer losses. We agree that this evidence was irrelevant and prejudicial.").

performing its Rule 403 analysis, because the evidence the government seeks to present "goes to an element entirely outside the natural sequence of what the defendant is charged with thinking and doing to commit the current offense." <u>Old Chief v. United States</u>, 519 U.S. 172, 191 (1997). The government will not be deprived of any evidence of Mr. Forbes' alleged "thoughts and actions in [allegedly] perpetrating the offense for which he is being tried," <u>id.</u> at 192, if it is unable to present evidence of the decline in Cendant's stock price on and after April 15, 1998 or shareholder losses resulting from the decline in Cendant's stock price.

   Even if the element of materiality is not removed from the jury's consideration, evidence of the decline in Cendant's share price or shareholder losses is of limited probative value. Courts in this Circuit have emphasized that "[t]he determination of materiality is to be made upon all the facts as of the time of the transaction and <u>not upon a 20-20 hindsight view long after the event</u>." <u>Spielman v. Gen. Host Corp.</u>, 402 F. Supp. 190, 194 (S.D.N.Y. 1975) (emphasis added), <u>aff'd</u>, 538 F.2d 39 (2d Cir. 1976); <u>accord</u> <u>Ganino v. Citizens Utils. Co.</u>, 228 F.3d 154, 165 (2d Cir. 2000) ("Materiality is determined in light of the circumstances existing at the time the alleged misstatement occurred."). Here, the fraudulent scheme charged in the indictment allegedly took place over the course of a decade or more. <u>See, e.g.</u>, Redacted Superseding Indictment, Count 1, ¶ 17. The drop in Cendant's stock price on a single day is not evidence of the alleged materiality of any of the allegedly false statements made over the course of that decade, as it lacks a temporal link to the vast majority of those statements. Evidence of investor losses has even less probative value with respect to the issue of materiality. Moreover, since investor losses are the direct result of a decline in Cendant's share price, evidence on <u>both</u> of these subjects is both cumulative and unnecessary.

8

In weighing the limited probative value of this evidence against its prejudicial effect, the Court also should consider the other evidence available to the government on the subject of materiality. See Old Chief , 519 U.S. at 183 ("[A] judge applying Rule 403 could reasonably apply some discount to the probative value of an item of evidence when faced with less risky alternative proof going to the same point."); id. at 184-85 (court may evaluate "evidentiary alternatives" to challenged evidence when performing Rule 403 balancing); United States v. Awadallah, 436 F.3d 125, 132 (2d Cir. 2006) (same); Fed. R. Evid. 403, advisory committee notes ("The availability of other means of proof may also be an appropriate factor" to consider in the Rule 403 analysis).[8]

The government cannot dispute that it has ample alternative evidence at its disposal to prove the element of materiality. This evidence includes, inter alia, the dollar amount by which CUC's and Cendant's earnings were overstated by the alleged fraud (a "quarter-billion" dollars, according to the government, Tr. (10/17/05) at 51), the testimony of expert witness Brian Heckler concerning the magnitude of the alleged fraud in three fiscal years, see Tr. (11/9/05) at 2383-2497,[9] the testimony of witnesses such as James Rowan, Steven Kernkraut, and Michael Monaco concerning their reliance on financial information disseminated by CUC and/or their reliance on CUC's SEC filings, e.g., Tr. 10/18/05 (Kernkraut) at 203; Tr. 10/18/05 (Rowan) at 345-48, 362:14-363:2, 364:5-16; Tr. (10/19/05) (Monaco) at 550, and the testimony of

---

[8]    The presiding judge in the prior trial did not conduct such an analysis, concluding instead that "unless there's going to be a concession on materiality, the government's entitled to put in enough evidence so it believes it has  met its burden of proving each element beyond a reasonable doubt." Tr. (10/20/05) at 606.

[9]    Mr. Forbes objects to this testimony. See Forbes Third Trial Motion In Limine No. 5 (filed 4/17/06).

government witnesses such as Cosmo Corigliano and Anne Pember.  Given Mr. Forbes'

willingness to relieve the government of its burden to prove materiality beyond a reasonable

doubt, <u>see</u> note 4, <u>supra</u>, and the abundance of alternative evidence of materiality available to the

government, the Rule 403 balancing test weighs heavily in favor of the exclusion of highly

prejudicial evidence concerning shareholder losses and the precipitous decline in Cendant's share

price on April 15, 1998.

## **CONCLUSION**

For the foregoing reasons, and the reasons set forth in Forbes Retrial Motion <u>In</u>

<u>Limine</u> No. 24 (Docket No. 1855), the Court should preclude the government from presenting

any evidence, cross-examination, or argument concerning either (i) Cendant's stock price on and

after April 15, 1998 or (ii) losses suffered by individuals who purchased CUC or Cendant stock.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
    Brendan V. Sullivan, Jr. (Bar No.ct17115)
    Barry S. Simon  (Bar No. ct24159)
    725 Twelfth Street, N.W.
    Washington, D.C. 20005
    (202) 434-5000 (phone)
    (202) 434-5029 (fax)
    bsimon@wc.com (e-mail)

- and -

10

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

11

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing Memorandum in Support of Renewed Motion of Defendant Walter A. Forbes to Preclude Evidence, Cross-Examination, or Argument Concerning (1) the Decline in Cendant's Stock Price On and After April 15, 1998 or (2) Investor Losses (Forbes Third Trial Motion <u>In Limine</u> No. 11) to be filed electronically and to be served on April 17, 2006 to the following via e-mail:

> Norman Gross, Esq. (norman.gross@usdoj.gov)
> Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
> Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

Barry S. Simon