UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


UNITED STATES OF AMERICA        :   No. 3:02CR00264 (AHN)
                                :
                                :
            v.                  :   April 17, 2005
                                :
                                :
                                :
WALTER A. FORBES                :



GOVERNMENT'S OPPOSITION TO DEFENDANT WALTER A. FORBES' MOTION TO
PRECLUDE THE GOVERNMENT FROM REFERENCING THE TRUTH TELLING
PROVISIONS IN COSMO CORIGLIANO'S PLEA AGREEMENT AND PRESENTING
HIM AS HAVING COMPLIED WITH HIS OBLIGATIONS UNDER THAT AGREEMENT

(Opposition to Forbes Third Trial Motion *In Limine* No. 1)



CHRISTOPHER J. CHRISTIE
NORMAN GROSS
MICHAEL MARTINEZ
Special Attorneys
U. S. Department of Justice
970 Broad Street
Room 700
Newark, N.J.  07102
(973) 645-2701

**TABLE OF CONTENTS**

Introduction . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.   Forbes Is Not Entitled to Reconsideration of His
     Previously Rejected Request to Suppress the Truth-
     Telling Provision of Corigliano's Plea Agreement. . . . . 3

II.  Controlling Second Circuit Law Holds That the Truth-
     telling Provisions of Corigliano's Plea Agreement Are
     Admissible on Direct Examination of Corigliano. . . . . . 5

III. Forbes' Challenges to Corigliano's Testimony Should be
     Resolved by the Jury Based on All Relevant Information,
     Including the Truth-Telling Provisions of Corigliano's
     Plea Agreement. . . . . . . . . . . . . . . . . . . . . 7

IV.  Forbes Has Failed to Demonstrate that Any of
     Corigliano's Challenged Testimony Was Knowingly False.
     . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     A.   Corigliano's Testimony About the March 1998
          Meeting. . . . . . . . . . . . . . . . . . . . . 10

     B.   Corigliano's Testimony About the Bug-Sweeping
          Incident. . . . . . . . . . . . . . . . . . . . 13

     C.   Corigliano's Dealings With the SEC. . . . . . . . 15

          1.   Corigliano's Legal Fee Retainer Agreements. . 16

          2.   Corigliano's Retention of Real Property Under
               the SEC Settlement Agreement. . . . . . . . . 17

          3.   Corigliano's Representations About The Value
               of His Real Property. . . . . . . . . . . . . 18

          4.   Corigliano's Expenses After Signing the SEC
               Settlement Agreement. . . . . . . . . . . . . 19

V.   Forbes' Reliance on Irrelevant Caselaw Regarding
     Witness Perjury Known to the Prosecution Does not
     Advance His Claim. . . . . . . . . . . . . . . . . . . 22

Conclusion . . . . . . . . . . . . . . . . . . . . . . . 24

**INTRODUCTION**

As he did unsuccessfully before the second trial, Docket
1679 and 1680, Forbes moves in limine to preclude the Government
from presenting evidence that Cosmo Corgiliano's guilty plea
agreement with the United States contains a provision that, if he
fails to provide full and accurate information to the Government,
and testifies falsely in any proceeding, the Government may
terminate the agreement.  Judge Thompson rejected Forbes'
previous motion which sought the same relief as this one.  Docket
1915 (order denying Forbes' Retrial Motion In Limine No. 13).

Forbes has failed to demonstrate that this Court should
reconsider Judge Thompson's ruling or depart from the law of the
case.  For instance, Forbes does not cite a single case from any
court which has granted the extraordinary relief he seeks.  Nor
does he acknowledge the controlling decisions of the Second
Circuit, consistently holding that evidence of a truth-telling
provision in the plea agreement of a cooperating witness is
always admissible whenever, as here, the defendant claims that
the witness has a motive to frame the defendant in order to
secure a more lenient sentence.

Forbes effectively concedes that proof of the truth-telling
provision is highly relevant to the jury's assessment of
Corigliano's credibility, which Forbes has chosen to make a
central issue in this case.[1]  Without evidence of the truth-

_____

[1] Forbes cites out-of-circuit law that cooperating witnesses
(continued...)

telling provision, Forbes would have <u>carte</u> <u>blanche</u> to mislead the jury into the false belief that the plea agreement conferred benefits on Corigliano if he cooperated with the Government's efforts to convict Forbes, without any corresponding penalties if Corigliano provided false information that implicated Forbes.

Forbes nevertheless seeks to distort the truth-finding function of the trial, present a false and one-sided picture of the plea agreement, and suppress important evidence of Corigliano's powerful incentive to testify truthfully at trial. He claims that he is entitled to do so because, according to Forbes, Corigliano has testified falsely in the previous trials in this case. Judge Thompson, who presided over two lengthy trials during which Corigliano testified at length, repeatedly rejected these claims. This Court should as well.

---

[1] (...continued)
are generally untrustworthy. Memorandum in Support of Forbes' Third Trial Motion In Limine No. 1 ("FM") at 1. In this Circuit, however, the uncorroborated testimony of a co-conspirator such as Corigliano is sufficient, standing along, to support a conviction. <u>United States v. Diaz</u>, 176 F.3d 52, 92 (2d Cir. 1999)(citing <u>United States v. Gordon</u>, 987 F.2d 902, 906 (2d Cir. 1993), and <u>United States v. Parker</u>, 903 F.2d 91, 97 (2d Cir. 1990). As the trial evidence will show, moreover, there is abundant evidence of Forbes' guilt in this case, in addition to Corigliano's testimony. For instance, Forbes' perjured testimony during the first trial is evidence of his consciousness of guilt. A complete description of Forbes' perjury is set forth in the Government's Opposition to Forbes' Third Trial Motion In Limine No. 2.

**ARGUMENT**

**I.    Forbes Is Not Entitled to Reconsideration of His Previously Rejected Request to Suppress the Truth-Telling Provision of Corigliano's Plea Agreement.**

Forbes declines to mention in his lengthy brief in support of this motion that Judge Thompson previously rejected on multiple occasions the same request to exclude the truth-telling provisions of Corigliano's plea agreement.  The omission is apparently not inadvertent.  Forbes has failed to demonstrate that he was entitled to what is in effect reconsideration of his previously rejected motion.  A reconsideration motion will be denied unless the "moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  United States v. Fell, 372 F. Supp. 2d 773, 780 (D. Vt. 2005).  "[T]he function of a motion for reconsideration is to present the court with an opportunity to correct manifest errors of law or fact or to consider newly discovered evidence."  LoSacco v. City of Middletown, 822 F. Supp. 870, 876-77 (D. Conn. 1993)(internal quotation marks omitted), aff'd, 33 F.3d 50 (2d Cir. 1994).

Forbes has not even attempted to meet his heavy burden for obtaining reconsideration of his previously rejected discovery demands.  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)(party seeking reconsideration must meet a "strict burden");

3

accord <u>United States v. Ocasio</u>, 2005 WL 1489462, *2 (D. Conn.,
June 20, 2005).  Reconsideration motions do not provide a
litigant with a second bite at the apple.  <u>See Sequa Corp. v. GBJ
Corp.</u>, 156 F.3d 136, 144 (2d Cir. 1998).[2]  As Forbes has failed
to sustain his "strict burden," but has merely recycled his
previous arguments, this motion can be summarily rejected.

In addition, Judge Thompson's denial of Forbes' prior motion
to exclude this evidence is the law of the case and Forbes has
presented no compelling reason for this Court to revisit that
ruling.  "The court's exercise of its power to reconsider and
modify its prior interlocutory rulings is informed by the . . .
law-of-the-case doctrine.  That principle is that when a court
has ruled on an issue, that decision should generally be adhered
to by that court in subsequent stages in the same case."  <u>United
States v. Uccio</u>, 940 F.2d 753, 758 (2d Cir. 1991).[3]  "[A]bsent
cogent or compelling reasons to deviate, such as an intervening
change of controlling law, the availability of new evidence, or
the need to correct a clear error or prevent manifest injustice,"
a court should adhere to its prior rulings.  <u>Id.</u> at 758.

---

[2] "[A] motion for reconsideration may not be used to plug
gaps in an original argument or to argue in the alternative once
a decision has been made."  <u>Lopez v. Smiley</u>, 375 F. Supp. 2d 19,
21-22 (D. Conn., 2005); <u>Horsehead Resource Development Co., Inc.
v. B.U.S. Environmental Services., Inc</u>., 928 F. Supp. 287, 289
(S.D.N.Y. 1996) (internal citations and quotation marks omitted).

[3] <u>Accord United States v. Crowley</u>, 318 F.3d 401, 420 (2d
Cir. 2003); <u>United States v. Tenzer</u>, 213 F.3d 34, 39-40 (2d Cir.
2000)

"Under the 'law of the case' doctrine, 'courts are understandably reluctant to reopen a ruling once made,' especially 'when one judge or court is asked to consider the ruling of a different judge or court.'" <u>Lillbask v. Connecticut Dept. of Educ.</u>, 397 F.3d 77, 94 (2d Cir. 2005) (quoting 18B Wright, Miller & Cooper, <u>Federal Practice and Procedure</u>, § 4478 (2d ed. 2002)); <u>see</u> <u>Chiu v. United States</u>, 948 F.2d 711, 717 (Fed. Cir. 1991) ("A successor judge steps into the shoes of his or her predecessor, and is thus bound by the same rulings and given the same freedom as the first judge."); <u>Philadelphia Housing Auth. v. American Radiator & Standard Sanitary Corp.</u>, 323 F. Supp. 381, 383 (E.D. Pa. 1970) ("Nor is there any apparent reason why the rule of the law of the case should not be applied merely because a different judge has now been assigned to this litigation."). For that reason as well, this motion should be denied without consideration of the merits.

## II. Controlling Second Circuit Law Holds That the Truth-telling Provisions of Corigliano's Plea Agreement Are Admissible on Direct Examination of Corigliano.

Corigliano's plea agreement obligates him to provide truthful information about any matters about which the Government might inquire of him, and to give truthful testimony in all proceedings, including trials. Exhibit 2 to Forbes' Third Trial Motion In Limine No. 1 ("Forbes' Motion") at 2. The agreement also authorizes the Government to prosecute Corigliano for crimes

in addition to those for which he pleaded guilty if he intentionally gives false or misleading testimony.  Id.

Forbes will doubtlessly attack Corigliano's credibility during the third trial, as he did during the first and second trials.[4]  That attack almost certainly will reprise arguments that Corigliano had a motive and the intention to falsely implicate Forbes in the charged fraud because Corigliano believes that he will receive a reduced prison sentence as a reward for such supposedly false testimony.  E.g., FTTr. 97-99 (Forbes' opening); FTTr. 7921-68 (Forbes' cross-examination); FTTr. 15137 (Forbes' summation, characterizing Corigliano's plea agreement as "extraordinary").

When a defendant lodges such an attack against a cooperating witness, as Forbes will doubtlessly do during the retrial, the Government is entitled to elicit evidence of the truth-telling provisions of the cooperation agreement.  United States v. Carr,

---

[4] For instance, Forbes' counsel sought to impeach Corigliano during the first trial based on Corigliano's: (1) substantial involvement in the charged fraud, during which he lied repeatedly to CUC's outside auditors, other CUC officials and employees, the investing public, and the SEC, Transcript of the first (2004) trial ("FTTr.") 7613-15, 7712-74, 7830-96, 7903-17; (2) false denials of complicity to the Cendant Board of Directors when the fraud was first publicly disclosed, Tr 7675-83, 7826-29; (3) false denials of complicity when he first spoke to the federal prosecutors and investigators in this case, FTTr. 7581-7611, 7617-70; (4) sale of CUC and Cendant stock when the price had been inflated by the fraud, FTTr. 7775-80, 7898-7903; and (5) "benefits" to Corigliano supposedly attributable to his cooperation, including his resolution of the civil charges brought against him by the SEC, FTTr. 7970-96, 8037-57, 8071-80, 8089-8115, 8152-78.

424 F.3d 213, 228 (2d Cir. 2005)("Considering the defense counsel's persistent attacks on the witnesses' credibility, the district court rightly permitted the government to introduce into evidence the various cooperation agreements and to elicit testimony about each cooperating witness's understanding of what his agreement required -- specifically, to tell the truth."); United States v. Smith, 778 F.2d 925, 928 (2d Cir. 1985) (noting that the "truth-telling portions" of cooperation agreements can properly be elicited on direct examination if a witness's credibility has been attacked); see United States v. Cosentino, 844 F.2d 30, 34 (2d Cir. 1988) ("the written text of a cooperation agreement may be admitted during a witness' direct testimony whenever a defense attack on credibility in opening has made evidence of the whole agreement admissible").  In light of that law, the truth-telling provisions of Corigliano's plea agreement were properly admitted during the first two trials, and should be admitted in this one as well.

**III. Forbes' Challenges to Corigliano's Testimony Should be Resolved by the Jury Based on All Relevant Information, Including the Truth-Telling Provisions of Corigliano's Plea Agreement.**

Forbes contends that this Court should nevertheless ignore this well-settled law because Corigliano supposedly violated his cooperation agreement when he supposedly committed perjury during the first trial.  Forbes effectively concedes (and cannot do otherwise, in light of the foregoing cases), that evidence of the

truth-telling provisions is highly relevant to prove the accuracy of Corigliano's testimony that Forbes directed Corigliano's involvement in the fraud.  Nor does Forbes claim that evidence of the truth-telling provision is somehow "prejudicial" to Forbes and subject to exclusion under Fed. R. Evid. 403.  Indeed, Forbes' motion does not seek a ruling of law from this Court.

Rather, his argument boils down to an improper request for this Court to make a pre-trial factual finding, without ever having heard Corigliano testify, that Corigliano committed perjury during the first and second trials over which this Court did not preside.  Whether Corigliano testified truthfully, however, was not a matter over which even Judge Thompson, who heard that testimony first-hand, was the proper arbiter.  Rather, the jury is the proper tribunal to resolve Forbes' challenges to Corigliano's testimony.  E.g., United States v. Rosa, 11 F.3d 315, 337 (2d Cir. 1993)("[a] challenge to . . . credibility of a witness is a matter for argument to the jury").

Forbes' argument presupposes that any inconsistencies between Corigliano's testimony and some other evidence necessarily means that Corigliano committed perjury.  On the contrary, even assuming that Corigliano's testimony was inaccurate on any point, such inaccuracies could have been innocent, rather than intentional.  See United States v. Dunnigan, 507 U.S. 87, 95 (1993) (noting that a witness "may give inaccurate testimony due to confusion, mistake, or faulty

8

memory"). Some minor mistakes in Corigliano's lengthy accounts of the fraud are to be expected, given the long passage of time between the two trials and the events about which he testified (over ten years, in some instances).

The Government is not obligated to revoke Corigliano's plea agreement for any possible breach, much as Forbes would like it to. Nor would the Government's decision not to revoke the plea agreement to date lead Corigliano to believe that he could intentionally lie on the witness stand. Rather, the truth-telling provisions remain available as a basis for the Government to terminate its obligations under the plea agreement if the Government (not Forbes) determines in good faith that Corigliano has testified falsely in this case. To date, no member of the prosecution team has drawn that conclusion.

In any event, if the evidence supports it, Forbes can argue to the jury that Corigliano believes that he can testify falsely against Forbes with impunity, and that the truth-telling provision is an ineffective deterrent against Corigliano's supposed false testimony. However, this Court should not suppress highly probative evidence which the Government must have to counter that argument. United States v. Renteria, 106 F.3d 765, 767 (7th Cir. 1997)(where "[d]efense counsel was free to urge a competing inference [from the cooperating witness's plea agreement], as he did on numerous occasions," the prosecutor permissibly used the truth-telling provision to argue that the

9

witness had a motive to testify truthfully; "[b]y arguing as they did, both sides respected the jury's ability to evaluate credibility based on the facts in evidence").

## IV. Forbes Has Failed to Demonstrate that Any of Corigliano's Challenged Testimony Was Knowingly False.

For the foregoing reasons, this Court need not wade through Forbes' misdirected arguments that Corigliano committed perjury in the previous trials.  For the sake of completeness, however, the Government will now repudiate those arguments.

### A.    Corigliano's Testimony About the March 1998 Meeting.

Forbes claims that Corigliano testified falsely about a meeting he attended with Forbes and Kirk Shelton at CUC headquarters in Connecticut (the "Forbes/Shelton  meeting").[5] That meeting occurred after March 9, 1998, when Corigliano and Shelton met with Michael Monaco, Scott Forbes and others to address CUC's use of a merger reserve in 1997.  Forbes now claims that Corigliano lied about the Forbes/Shelton meeting, because his testimony about the timing of that meeting was inconsistent with documents that Forbes introduced at trial, purporting to show that Forbes was not in Connecticut during the time period when Corigliano testified that the meeting occurred.  FM 5-7.

Forbes' argument fails on close inspection of the record. When Corigliano testified at the first trial about the

_____

[5] As this Court is aware, a jury convicted Shelton during the first trial in this case of all counts.  Corigliano was one of the primary witnesses who implicated Shelton at that trial.

Shelton/Forbes meeting, more than six years after it had occurred, Corigliano was admittedly unsure of the date of the Forbes/Shelton meeting. This is hardly surprising. There was no calender or other document memorializing the meeting that could refresh Corigliano's recollection.

On direct examination Corigliano testified that he couldn't remember the exact date of the Forbes/Shelton meeting: "<u>I can't be more specific</u> than sometime after the 11th or 12th of March, but not a month later, obviously. Within a few days." FTTr. 7488 (emphasis added.) On cross-examination, Corigliano reaffirmed that "the meeting happen[ed] after we met on the 9th [of March] and after I heard from Walter [Forbes] that Henry [Silverman] wasn't going to take issue with a penny or two from last year [referring to CUC's overstatement of its earnings per share]." FTTr. 9650.

Intent Hell bent on creating an inconsistency, Forbes' counsel strained to fit Corigliano's testimony into a time frame where he could allege that the meeting couldn't have happened.

> Q.    What's a few days to you? How many days should we mark in yellow on that chart to encompass your sworn testimony that the meeting occurred within a few days of March 11 or 12th?
>
> A.    I just -- I told you what I remember. And I remember meeting with Walter in Kirk's office after we were aware that penny --
>
> Q.    Could you answer my question and tell me --
>
> A.    <u>I don't know. Soon after. I can't put a time frame on.</u>

Q.   What's a few? You used the word "few."  What's a few days?

A.   <u>Two, three, four, five.  Not a month.  That's the best I can do.</u>

Q.   You think five is a few?

A.   <u>I said, I couldn't be specific about</u> --

Q.   Let's use five.  Color five more days, Patrick.

<u>Id</u>. (emphasis added).  Thus, although Forbes' lawyer purported to testify that Corigliano had conceded that the meeting took place within five days of the March 9 meeting, Corigliano refused to be pinned down to that time frame.

In any event, any discrepancy between Corigliano's testimony regarding the timing of the Forbes/Shelton meeting and the documents showing that Forbes was not in Connecticut when Corigliano supposedly said he was cannot demonstrate that Corigliano committed perjury.  A witness's mistaken testimony about the precise and distant timing of the defendant's criminal act does not establish perjury.  <u>United States v. Glover</u>, 588 F.2d 876, 879 (2d Cir. 1978) (rejecting a defense claim for relief based on evidence that the testimony of a prosecution witness may have been "mistaken by a few months with regard to specific dates").

Judge Thompson, who heard Corigliano's testimony about the Forbes/Shelton meeting first hand, denied one of Forbes' numerous mistrial motions which was based, in part, on Forbes' contention that Corigliano lied about that Forbes/Shelton meeting.  Docket

12

1084 (Forbes' Trial Motion No. 28, p. 7, n.5); oral order denying Forbes' Trial Motion No. 28, docketed on November 1, 2004. This Court should decline Forbes' invitation to find that Corigliano committed perjury, and that the Government forfeited the right to offer relevant evidence of the truth-telling provisions of Corigliano's plea agreement, based on a factual claim that Judge Thompson evidently rejected.

**B.    Corigliano's Testimony About the Bug-Sweeping Incident.**

Forbes contends that Corigliano lied about an incident that Corigliano recalled had taken place in the fall of 1997, after the CUC/HFS merger agreement had been signed but before the merger had closed. Corigliano testified that Forbes had directed that CUC's offices be "swept" for electronic listening devices ("bugs") because Forbes was concerned that the head of HFS, Henry Silverman, might have caused the CUC offices to be bugged. FTTr. 7344-49. Forbes claims, as he has repeatedly before, that Corigliano's testimony is contradicted by documents which show that the bug-sweeping incident occurred in the fall of 1996, not 1997, before the HFS/CUC merger was proposed, and before Forbes would have had occasion to be concerned that Henry Silverman had bugged the CUC offices. FM 7-10.

Forbes argues again that a document which supported Corigliano's testimony, Government Trial Exhibit ("GX") 430 (Exhibit 24 to Forbes' Motion) was "misdated." The jury could have reasonably concluded from all of the documentary evidence

13

that Forbes had the CUC offices swept for bugs on more than one occasion, and that GX 430 accurately reflected the sweeping incident in the fall of 1997 about which Corigliano testified. Alternatively, Corigliano may have honestly recalled a conversation in the fall of 1997 when Forbes suggested that the CUC offices be swept for bugs, but mistakenly believed that an actual sweep had taken place then because he had confused bug-sweeping activity from the prior year as the result of Forbes' 1997 remarks. Corigliano acknowledged that there was bug-sweeping activity at CUC in late 1996. Tr. 8141. The exhibits on which Forbes now relies to show that Corigliano committed perjury on this point, Ex. 24, 25, 26, and 27, do not necessarily contradict his testimony.

Even if Corigliano was mistaken about the timing of the bug sweeping activity, Corigliano could have been honestly mistaken in his recollection of the timing of those events, and still testified truthfully that he conspired with Forbes and others for many years to fraudulently inflate CUC's earnings. See United States v. Brennan, 326 F.3d 176, 188-91 (3d Cir. 2003) (denying relief where the testimony of the government's key witness regarding the date when he received $3 million in bearer bonds from the defendant in New York City was contradicted by an airline ticket showing that he was not in New York on that date, and the witness conceded that he "could not explain that ticket"). Forbes' arguments about the timing of the bug-sweeping

14

fails to prove perjury or a basis to exclude the truth-telling
provision.

**C.    Corigliano's Dealings With the SEC.**

Forbes rehashes arguments he previously presented without
success to Judge Thompson to support his claims that Corigliano
violated his plea agreement by virtue of his dealings with the
Securities and Exchange Commission ("SEC").  In 1998, the SEC
began investigating Corigliano's involvement in the fraud at CUC.
FTTr. 7683-85.  The United States Attorney's Office for the
District of New Jersey ("USAODNJ") launched a criminal
investigation around the same time.  In January 2000, Corigliano
pleaded guilty to federal criminal charges.  The SEC instituted a
civil proceeding against Corigliano that was separate from this
criminal case.  FTTr. 7970.  In his plea agreement with the
USAODNJ, Corigliano promised to use his best efforts to settle
the SEC civil charges, and also to provide complete and accurate
information to the SEC.  Exhibit 2 to Forbes' Motion at 7
(Schedule A, ¶ 12).

In August 2000, while attempting to negotiate a settlement
agreement with the SEC, Corigliano entered into a letter
agreement with the SEC, which placed restrictions on what
Corigliano could spend from his assets until the SEC lawsuit was
resolved, and imposed quarterly financial reporting requirements
on Corigliano.  Ex. 12 to Forbes' Motion.  In 2004, Corigliano
settled the SEC charges by disgorging property worth

15

approximately $14 million.  FTTr. 7504; Exhibit 13 to Forbes'
Motion.

### 1.  Corigliano's Legal Fee Retainer Agreements.

Forbes contends that Corigliano violated his letter
agreement with the SEC because he did not identify retainer fees
that he had paid to his lawyers and his wife's lawyers as assets
belonging to Corigliano.  FM 11.  Corigliano testified without
contradiction that it was his understanding that, once he paid
the retainer fees to the lawyers, no portion of the fees would be
returned to him, even if the lawyers did not exhaust the
retainer, because the unused balances would be disgorged to the
SEC.  FTTr. 8109-11, 9367-69, 9377.  For that reason, Corigliano
did not treat the retainer fees as his assets that had to be
disclosed as such to the SEC.  FTTr. 8110.

Forbes, however, has interpreted the Corigliano/SEC letter
agreement to have required Corigliano to disclose the retainers
to the SEC in his quarterly financial reports.  From this
interpretation, Forbes asserts that ~~that~~ Corigliano's failure to
identify the retainer fees as his assets breached the letter
agreement, and consequently, Corigliano's plea agreement in the
criminal case.  FM 12-15.  He also argues that Corigliano's
testimony that he complied with the letter agreement was
perjured.  Id.

Both Corigliano's lawyer and a lawyer for the SEC, however,
confirmed that Corigliano did not breach the letter agreement by

16

declining to list the retainer amounts on Corigliano's quarterly
financial reports.  FTTr. 9124-25 (representation of Gary
Naftalis, Esq., counsel for Corigliano); FTTr. 13600-07
(testimony of SEC attorney David Frohlich).  Corigliano could not
have testified falsely about his obligations under the letter
agreement when both his lawyer and a lawyer for the other party
to that agreement have agreed that Corigliano did not breach the
letter agreement.  Forbes' more restrictive and self-serving
reading of Corigliano's obligations under the letter agreement
fail to demonstrate that Corigliano perjured himself on this
subject at trial, and obligated the Government to "tear up"
Corigliano's plea agreement.[6]

> ### 2.  Corigliano's Retention of Real Property Under the SEC Settlement Agreement.

In his settlement agreement with the SEC, Corigliano
disgorged $14 million of assets, but was permitted to retain

---

[6] Forbes again complains that the Government did not provide
the defense with information about Corigliano's supposed breach
of the letter agreement.  FM 13-14.  Unlike Forbes' lawyers,
however, members of the prosecution team were unaware of
Corigliano's payment of the retainers to his lawyers and to his
wife's lawyers before Forbes' lawyers cross-examined Corigliano
about the retainers at trial.  E.g., FTTr. 9126-27, 9625-28.
Likewise, any inconsistencies in the Government's characteriza-
tions of Corigliano's retainer agreements with his lawyers and
his wife's lawyers, FM 11, n.9, is attributable to the fact that
the Government's understanding of those agreements was incomplete
when the Government first offered to stipulate that Corigliano
and the SEC had an "oral side agreement" which allowed Corigliano
to exempt the retainer funds from his quarterly disclosure
reports.  SEC lawyer Frohlich subsequently testified that there
were no such oral agreements.  FTTr. 13600-02.

other assets, including real property he owned in the town of Old Saybrook Connecticut on which his home was situated.  Exhibit 13 to Forbes' Motion, ¶ 6(i).  That real property was comprised of two contiguous but separately taxed parcels of property, which Corigliano purchased in a single transaction in 1999.  FTTr. 8166-67.

Forbes reads the SEC settlement agreement to have permitted Corigliano to retain only the larger, 8 acre parcel of real property, but not the smaller, 3 acre parcel.  FM 16.  Forbes again argues, as he did unsuccessfully before Judge Thompson, that Corigliano breached the SEC settlement agreement (and by extension, his plea agreement in this criminal case) by failing to disgorge to the SEC the smaller parcel.  FM 15-16.

Corigliano plausibly explained that he regarded the two adjoining but separately taxed parcels of real property, which he purchased in a single transaction, as a single piece of property. FTTr. 8167-71.  Corigliano correctly informed his lawyers, who informed the SEC, what he paid for that property in 1998, FTTr. 8171-74.  As SEC attorney James Kidney testified, the SEC was likely unconcerned about Corigliano's characterization of his real estate holdings in Old Saybrook.  FTTr. 13531.  Forbes' arguments regarding Corigliano's retention of the 3 acre parcel therefore fails to justify suppression of the truth-telling provision of Corigliano's plea agreement.

18

### 3. Corigliano's Representations About The Value of His Real Property.

In a related, recycled claim that Judge Thompson has previously rejected, Forbes claims that Corigliano lied in his quarterly financial reports to the SEC about the value of his real property in Old Saybrook.  FM 17-18.  According to Forbes, Corigliano also lied during the first trial when he testified that the property, for which he paid approximately $1.7 million in 1999, was worth approximately $2 million in 2004.  Forbes contends that Corigliano's statements to the SEC and his trial testimony on that score was false because "a recent tax assessment had valued [the property] at more than $3.6 million." FM 17.  Forbes declines to mention that Corigliano testified at the first trial without contradiction that he was unaware of that assessment.  FTTr. 8168-70.

Forbes suggests that Corigliano's first trial testimony that the real property was worth approximately $2 million was contradicted by his testimony at the second trial that it had been assessed for $3.6 million.  FM 17-18.  By the time of the second trial, however, Corigliano had become aware of the assessment.  Second Trial Transcript ("STTr.") 1471.  Thus, there was no contradiction, and certainly no proof of perjury on this point.

4.    **Corigliano's Expenses After Signing the SEC
Settlement Agreement.**

As noted above, in August 2000, Corigliano and the SEC
entered into a letter agreement which allowed Corigliano to pay
ordinary living expenses from the income of his assets.  Exhibit
12 to Forbes' Motion.  After the parties had operated under that
agreement for more than 3½ years, they executed the settlement
agreement on April 16, 2004.  Exhibit 13 to Forbes' Motion at 1.
Paragraph 3 of the settlement agreement required Corigliano to
transfer, no later than 60 days from the entry of the final
judgment (i.e., by July 7, 2004) all assets other than those
expressly exempted from transfer in ¶ 6 of the agreement.  The
settlement agreement did not forbid Corigliano, during the period
between the entry of the final judgment and Corigliano's transfer
of the assets, from continuing to pay his ordinary living
expenses from funds derived from his assets, as he had been
permitted to do under the August 2000 letter agreement.

Corigliano testified that, after the settlement agreement
was executed and before he transferred the assets on July 7, he
paid some of his normal living expenses (including real estate
and income taxes that were due on July 1, 2004) from funds
derived from the assets that were slated for transfer to the
receiver.  FTTr. 8165-66, 8169-70, 9393-95.  Corigliano testified
that he believed that, consistent with his authorized practice
before the settlement agreement was executed, the settlement

20

agreement permitted him to make such payments until July 7, 2004, when he transferred the assets to the receiver.  FTTr. 9394-95.

Notwithstanding the absence of any evidence that Corigliano believed or should have known that such payments were forbidden by the settlement agreement, Forbes contends that Corigliano breached the settlement agreement by paying these expenses out of his assets before they were turned over to the SEC receiver.  The basis for this argument is again Forbes' own interpretation of the settlement agreement, which was not shared by the parties to that agreement.  FM 18-19 (claiming that Corigliano's payment of those expenses was "inconsistent with the written settlement agreement").[7]  According to Forbes, because Corigliano was prohibited by the settlement agreement from paying those expenses, Corigliano lied when he testified that he disgorged everything he was required to disgorge under the settlement agreement.  FM 19.  Hiding the rabbit squarely in the hat, Forbes also claims that Corigliano would have testified falsely at the first trial that he did not hide the expenditures from the SEC if

---

[7] Forbes argues that, because the settlement agreement, which was signed in April 2004, required Corigliano to disgorge his assets to the SEC receiver "forthwith," Corigliano breached the agreement because the disgorgement did not occur until July 2004   FM 18.  The fact that the SEC afforded Corigliano two months after the entry of the final judgment to transfer the assets, rather than immediately, demonstrates that the SEC did not intend to prevent Corigliano from treating the assets during that two month period as he had before the settlement agreement was executed.

Corigliano "made these expenditures without the knowledge and consent of the SEC." FM 19.

Forbes points to no evidence, however, that Corigliano falsely told anyone at the SEC or to the SEC receiver that Corigliano was not making the challenged payments. No does Forbes identify any evidence that Corigliano understood that he was required to inform the SEC or the receiver of those payments but failed to do so. For instance, there is no evidence that Corigliano's lawyers or the SEC ever informed Corigliano that he could not pay his normal living expenses from funds derived from the assets to be transferred.

Nor is there any evidence that Corigliano should have understood on his own that such payments were prohibited by the settlement agreement. After all, Corigliano had been permitted to make such payments before the execution of the settlement agreement, and nothing in the settlement agreement expressly forbade such payments after that agreement was executed. Forbes has again failed to prove that he is entitled to suppression of the truth-telling provision of Corigliano's plea agreement.

## V.    Forbes' Reliance on Irrelevant Caselaw Regarding Witness Perjury Known to the Prosecution Does Not Advance His Claim.

Because he cannot identify any cases in which evidence of the truth-telling provision of a plea agreement was excluded even though the defense attacked a cooperating witness by reference to his plea agreement, Forbes is forced to string-cite a panoply of

22

irrelevant cases, none of which involved the suppression of the
truth-telling provisions of a plea agreement.  FM 20.  Those
cases hold that the Government may not elicit testimony which the
prosecutors know or should know is false.  Unlike this case, the
prosecutors in those cases either had personal knowledge about
the falsity of the testimony because it pertained to the
witness's dealings with the prosecutor or the prosecutor's
office,[8] or the prosecutors otherwise knew and conceded that the

---

[8] E.g. Alcorta v. Texas, 355 U.S. 28, 31 (1957) (key
prosecution witness admitted to the prosecutor that his trial
testimony was false, but the prosecutor did not disclose this
admission to the defense); Pyle v. Kansas, 317 U.S. 213, 214
(1942)(claim that the petitioner's conviction "resulted from
perjured testimony, knowingly used by State authorities to obtain
his conviction, and from the deliberate suppression by those same
authorities of evidence favorable to him"); Mooney v. Holohan,
294 U.S. 103, 110 (1935)(prosecution "authorities deliberately
suppressed evidence which would have impeached and refuted the
[perjured] testimony"); United States v. Vozzella, 124 F.3d 389,
391 (2d Cir. 1997)(information known to the Government which
demonstrated the falsity of loan documents which the Government
had presented at trial to prove the truth of the contents of
those documents "did not come to [the defendant's] attention
until after his trial"); Jenkins v. Artuz, 294 F.3d 284, 287-89
(2d Cir. 2002) (key prosecution witness falsely testified during
trial that there was "no deal" for his testimony, but prosecutor
argued in summation that the witness had "no reason to lie");
Shih Wei Su v. Filion, 335 F.3d 119, 123 (2d Cir. 2003)(key
prosecution witness falsely testified during trial that he had
been promised him "nothing at all" with regard to his sentence,
even though the prosecutor had promised the witness five years'
probation in exchange for his testimony); DeMarco v. United
States, 928 F.2d 1074, 1075 (11th Cir. 1991) (prosecution witness
falsely testified at trial that he was never promised, did not
receive, and did not expect "anything" in return for his trial
testimony); Du Bose v. Lefevre, 619 F.2d 973, 975-77 (2d Cir.
1980)(key eyewitness falsely testified during trial that she had
not been offered "any kind of" deal, promise "or anything" for
her testimony); United States v. Sanfilippo, 564 F.2d 176, 177
(continued...)

23

testimony was false.[9]  Additionally, relief was granted in those cases because the perjury was never revealed to the jury.  Here, Forbes has been permitted to parade all of his challenges to the truthfulness of Corigliano's testimony to the jury.

---

[8] (...continued)
(5th Cir. 1977) (prosecutor told defense counsel that the Government had agreed to drop charges against a key prosecution witness in exchange for his testimony, but the witness repeatedly denied such an agreement during his trial testimony).

[9] Giglio v. United States, 405 U.S. 150, 152 (1972) (Government filed affidavit which confirmed defense claim that testimony of key prosecution witness was false); Napue v. Illinois, 360 U.S. 264, 265 (1959)(former prosecutor filed petition stating that he had promised key prosecution witness consideration for his testimony, but the witness had falsely denied such a promise in his trial testimony); Miller v. Pate, 386 U.S. 1, 5-6 (1967)(prosecution, which presented testimony that stains on pair of shorts attributed to defendant were blood stains, admittedly knew before trial that the stains were caused by paint, and had failed to disclose that fact to the defense); United States v. Wallach, 935 F.2d 445, 455 (2d Cir. 1991) (government conceded that key prosecution witness committed perjury); Hayes v. Brown, 399 F.3d 972, 978-82 (9th Cir. 2005)(prosecutor suborned false testimony from a prosecution witness that he had received no "deal" in exchange for his testimony, which the prosecutor knew to be false).

**CONCLUSION**

For the foregoing reasons, the Government requests that Forbes' Third Trial Motion In Limine No. 1. be denied.

                    Respectfully submitted,

                    CHRISTOPHER J. CHRISTIE
                    Special Attorney
                    U.S. Department of Justice

                    *Norman Gross/s*

                    NORMAN GROSS
                    Federal Bar Number 24933
                    MICHAEL MARTINEZ
                    Federal Bar Number PHV0423
                    Special Attorneys
                    U.S. Department of Justice
                    970 Broad Street
                    Room 700
                    Newark, N.J.  07102
                    (973) 645-2701


Newark, New Jersey
Date: April 17, 2006

### CERTIFICATE OF SERVICE

The undersigned certifies that on this day I caused to be served a copy of the Government's Opposition to Defendant Walter A. Forbes' Motion to Preclude the Government from Referencing the Truth Telling Provisions in Cosmo Corigliano's Plea Agreement and Presenting Him as Having Complied with His Obligations under That Agreement (Opposition to Forbes Third Trial Motion *in Limine* No. 1) via email on:

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901
(202) 434-5005
bsimon@wc.com


*Norman Gross/s*

NORMAN GROSS


Dated: April 17, 2006
       Camden, New Jersey