# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | No. 3:02CR264 (AHN) |
| v. | ) ) | |
| WALTER A. FORBES | ) ) ) ) | April 17, 2006 |

## MOTION OF DEFENDANT WALTER A. FORBES
## TO PRECLUDE THE GOVERNMENT FROM PRESENTING
## EVIDENCE, CROSS-EXAMINATION, OR ARGUMENT
## CONCERNING (1) MR. FORBES' JULY 1998 SEVERANCE AGREEMENT
## WITH CENDANT; (2) THE VALUE OF MR. FORBES' SEVERANCE;
## (3) THE JULY 28, 1998 CENDANT BOARD MEETING; OR
## (4) THE FINANCIAL AND OTHER PRESSURES ON CENDANT IN JULY 1998
## (Forbes Third Trial Motion In Limine No. 14)

Defendant Walter A. Forbes, through undersigned counsel, respectfully moves <u>in limine</u> to preclude the government from presenting any evidence, cross-examination, or argument concerning: (i) Mr. Forbes' July 1998 severance agreement with Cendant; (ii) the value of the severance Mr. Forbes received from Cendant; (iii) the July 28, 1998 Cendant Board meeting; or (iv) the financial and other pressures on Cendant in July 1998. The grounds for this motion are set forth in the accompanying memorandum of points and authorities.

Oral Argument Requested

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

    Brendan V. Sullivan, Jr. (Bar No. ct17115)
    Barry S. Simon  (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

     - and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

2

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing Motion of Defendant Walter A. Forbes to Preclude the Government from Presenting Evidence, Cross-Examination, or Argument Concerning (1) Mr. Forbes' July 1998 Severance Agreement with Cendant; (2) the Value of Mr. Forbes' Severance; (3) the July 28, 1998 Cendant Board Meeting; or (4) the Financial and Other Pressures on Cendant in July 1998 (Forbes Third Trial Motion <u>In</u> <u>Limine</u> No. 14) to be filed electronically and to be served on April 17, 2006 to the following via e-mail:

Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)


_____
Barry S. Simon

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) | **No. 3:02CR264 (AHN)** |
| **v.** | ) ) | |
| | ) ) | **April 17, 2006** |
| **WALTER A. FORBES** | ) ) ) | |

### MEMORANDUM IN SUPPORT OF
### MOTION OF DEFENDANT WALTER A. FORBES
### TO PRECLUDE THE GOVERNMENT FROM PRESENTING
### EVIDENCE, CROSS-EXAMINATION, OR ARGUMENT
### CONCERNING (1) MR. FORBES' JULY 1998 SEVERANCE AGREEMENT
### WITH CENDANT; (2) THE VALUE OF MR. FORBES' SEVERANCE;
### (3) THE JULY 28, 1998 CENDANT BOARD MEETING; OR
### (4) THE FINANCIAL AND OTHER PRESSURES ON CENDANT IN JULY 1998
### (Forbes Third Trial Motion In Limine No. 14)

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this memorandum in support of his motion in limine to preclude the government from presenting evidence, cross-examination, or argument in a third trial concerning: (i) Mr. Forbes' July 1998 severance agreement with Cendant; (ii) the value of the severance Mr. Forbes received from Cendant; (iii) the July 28, 1998 Cendant Board meeting; or (iv) the financial and other pressures on Cendant at the time of Mr. Forbes' July 1998 severance agreement -- all of which occurred after the termination of the alleged offenses charged in the indictment.

Oral Argument Requested

## FACTUAL BACKGROUND

Mr. Forbes executed a severance agreement with Cendant in July 1998.  See Ex. 1 (severance agreement).  The agreement was signed more than three months after accounting irregularities at Cendant were publicly disclosed in April 1998, and more than three months after the conclusion of the alleged criminal conduct charged in the indictment.  The July 28, 1998 Cendant board meeting that preceded the execution of the severance agreement, and the surrounding events of July 1998, also took place more than three months after the conclusion of the alleged conduct charged in the indictment.

During the July 28, 1998 Board meeting, the Cendant Board of Directors and Mr. Forbes agreed that "it is in the best interests of the Company and its stockholders for the Company to enter into the Agreement as of July 28, 1998, between the Company and Mr. Forbes."  Minutes of Cendant July 28, 1998 Board of Directors Meeting (Ex. 2) at 11.  Mr. Forbes' resignation from Cendant pursuant to the terms of the July 28, 1998 agreement allowed the company to "end any uncertainty about the future direction and leadership of Cendant."  Ex. 3 (July 28, 2998 Cendant news release) at 1.  Mr. Forbes was contractually entitled to the severance payment he received pursuant to the terms of his May 1997 employment contract, see Ex. 4, which was approved by the CUC Board of Directors.

### A.     The 2004 Trial.

During the 2004 trial, the government posed a series of questions to Mr. Forbes on cross-examination concerning his severance and the July 28, 1998 Cendant board meeting.  See Tr. (9/30/04) at 14,376-77, 14,405-12; Tr. (10/4/04) at 14,473-89.  The government also introduced Mr. Forbes' severance agreement into evidence.  See Ex. 1 (GX 20,244).  The

2

government cross-examined Mr. Forbes about the magnitude of his severance, the terms of his severance agreement, the board fight that took place at the July 28, 1998 meeting, the financial stresses on Cendant in July 1998, Mr. Forbes' alleged refusal to resign from Cendant unless he received his severance, and the resignations of other Cendant board members from the former CUC. See Tr. (9/30/04) at 14,376-77, 14,405-12; Tr. (10/4/04) at 14,473-89. Counsel for Mr. Forbes interposed a series of objections during this questioning. See id.

The government's cross-examination concerning Mr. Forbes' severance was designed to portray Mr. Forbes as a person of bad character and to prejudice Mr. Forbes in the eyes of the jury. The government sought to bias the jury against Mr. Forbes by emphasizing the magnitude of the severance ($47 million) and suggesting that Mr. Forbes was a greedy and selfish man who demanded substantial compensation at a time when the average Cendant investor suffered serious losses. See, e.g., Tr. (9/30/04) at 14,377 ("You were going to try to negotiate your way out, a nice big severance on the way out?); id. at 14,405 ("But even though you felt bad for the shareholders and you were still a multimillionaire by tens of millions of dollars, isn't it true you still wanted more money out of the company before you would agree to leave?");[1] Tr. (10/4/04) at 14,488 ("Well, when you left were you given the $47 million?").

In a further effort to prejudice Mr. Forbes before the jury, the government's summation emphasized the amount of Mr. Forbes' severance and asserted that Mr. Forbes had no concern for Cendant shareholders because he accepted a large severance:

> Mr. Forbes tells us he was sorry for the shareholders. Felt sorry for them. He was so sorry that he wanted to take $47 million with him as part of his severance.

_____

[1]     Mr. Forbes' objection to this question was sustained.

3

Tr. (10/19/04) at 15,116.

The government also attempted to portray Mr. Forbes as a person of poor character by suggesting during cross-examination that Mr. Forbes would not resign from Cendant unless he received his $47 million.  Through these questions, the government suggested that Mr. Forbes was selfish, greedy, and insensitive.[2]  The government further suggested that Mr. Forbes acted improperly by accepting his severance, despite the fact that Mr. Forbes' conduct in July 1998 was entirely lawful.[3]  Finally, the government suggested that Mr. Forbes had "47 million reasons to lie," Tr. (10/19/04) at 15,117, because he could be sued by Cendant and required to forfeit the severance in the event he were convicted.  See Tr. (9/30/04) at 14,411.  In fact, Mr. Forbes was sued by Cendant for return of his severance long before the 2004 trial.  In June 1999, Cendant filed claims against Mr. Forbes that seek full recovery of his severance.

### B.      The 2005 Trial.

Prior to the 2005 trial, Mr. Forbes filed a motion in limine, pursuant to Fed. R. Evid. 401 and 403, to preclude the government from presenting any evidence, cross-examination, or argument concerning Mr. Forbes' severance or the July 1998 Cendant Board meeting.  See

---

[2]     See Tr. (10/4/04) at 14,479 ("And you refused to leave without your 47 million; is that correct, Mr. Forbes?"); id. at 14,480 ("So you opposed leaving unless you got the 47 million?"); id. at 14,483 ("Well, Mr. Forbes, the bottom line is, you wouldn't leave unless you got the 47 million, right?"); id. ("the answer is yes, you wouldn't leave without your 47 million? . . . . Can we agree it was 47 million?"); id. at 14,488 ("Is it true that you were not going to leave, not resign as the chairman of the board unless you got your $47 million?").  The government repeated this theme in summation, asserting that Mr. Forbes "wouldn't leave the company; wouldn't leave the company, ladies and gentlemen, unless he got one more payment, one more chance to get paid."  Tr. (10/19/04) at 15,116.

[3]     See, e.g., Tr. (10/4/04) at 14,483 ("And can we agree, and I'll try to wrap this up, the former HFS directors said you should leave without it"); id. at 14,489 ("And before you left -- before you agreed to leave, did people want you to leave without your $47 million?").

4

Forbes Retrial Motion In Limine No. 4 (filed 9/2/05) (Docket Nos. 1664, 1665-1) (incorporated herein by reference). The government opposed the motion, but asserted that it did "not presently intend to elicit evidence" concerning either the July 1998 Cendant Board meeting or the circumstances under which the Cendant Board of Directors agreed to Mr. Forbes' severance package. Docket No. 1719 (filed 9/20/05) at 3 n.1; see also Docket No. 1778 (Forbes reply memorandum).

On October 17, 2005, the Court issued a decision granting Mr. Forbes' motion in part and denying it in part. See Docket No. 1845. The Court precluded the government from presenting any evidence in its case-in-chief concerning either the severance agreement or the value of Mr. Forbes' severance, but allowed the government to cross-examine Mr. Forbes concerning those subjects with respect to bias. Id. at 1-4. The Court further ruled that the government should not address the severance in opening argument but could discuss it in summation if Mr. Forbes testified. Id. at 4.[4]

During the government's cross-examination of Mr. Forbes at the 2005 trial, the government emphasized the losses suffered by Cendant shareholders in April 1998, asked Mr. Forbes how he felt about the shareholders, and highlighted the fact that Mr. Forbes received his severance a few months after the collapse of Cendant's stock price in April 1998. Tr. (11/15/05) at 3000-04. Although cross-examination concerning Mr. Forbes' severance was permitted only with respect to bias, see Docket No. 1845 at 4, the government improperly argued the severance

---

[4]    The Court observed that the motion was moot with respect to the issue of the July 28, 1998 Cendant Board meeting and the financial and other pressures on Cendant in July 1998 because of the government's representation that it did not intend to elicit evidence about those subjects. Docket No. 1845 at 1.

as substantive evidence in summation. See Tr. (11/29/05) at 3091-92. The government asserted

that Mr. Forbes' acceptance of his severance was the first of five reasons that demonstrated Mr.

Forbes' purported knowledge of the fraud. See id. The government also emphasized the amount

of the severance and attacked Mr. Forbes' character based on the fact that he accepted the

severance at a time when Cendant shareholders suffered losses:

> I'll provide you five reasons that prove that the defendant knew
> about the fraud. Let's start with the defendant's actions after
> Cendant publicly announced accounting irregularities in the CUC
> divisions on April 15, 1998. You saw the defendant testify. The
> defendant said that he felt very badly for the shareholders after
> Cendant's stock price collapsed and he was shocked to learn of the
> fraud. That's what the defendant said. What does the evidence
> show? The evidence shows that the defendant took another $47
> million in severance from the company and then he walked away.

Id.[5] The Court sustained Mr. Forbes' objection to this argument and struck it from the record.

Id. at 3092.[6]

---

[5]     Prior to closing arguments, Mr. Forbes filed a Notice of Preservation of
Objections to Improper Argument in which he objected to any argument by the government in
summation that contrasted Mr. Forbes' compensation with losses to Cendant stockholders. See
Docket No. 2010, ¶ 11. On November 29, 2005, the Court reviewed this objection with the
government and stated that, "[i]f there were to be argument on that, I would sustain an objection,
just so we're clear." Tr. (11/29/05) at 3080. Notwithstanding this warning, the government
made the foregoing argument, which reveals its true purpose for eliciting evidence concerning
Mr. Forbes' severance.

[6]     The government also argued that "[i]n the July 1998 severance agreement
between Cendant and the defendant, there's a provision. If the defendant were to plead guilty to
committing the fraud, or if the defendant were found guilty of committing the fraud, then
Cendant could sue the defendant to get the $47 million back." Tr. (11/29/05) at 3092. The
government failed to mention that Cendant sued Mr. Forbes in 1999 "to get the $47 million
back." The government repeated this misleading argument on rebuttal. See Tr. (12/5/05) at 3562
("But Cendant retained the right to sue the defendant should he plead guilty or be found guilty in
a court of law of committing a fraud while he was at CUC.").

6

**C.    Recent Events.**

Prior to filing the instant motion, counsel for Mr. Forbes inquired of government counsel whether the government stood by its prior representation that it would not elicit any evidence concerning either the July 1998 Cendant Board meeting or the circumstances under which the Cendant Board of Directors agreed to Mr. Forbes' severance package. The government refused to reaffirm its prior representation on this subject.

## ARGUMENT

**I.    MR. FORBES' SEVERANCE, AND THE EVENTS SURROUNDING IT, ARE NOT RELEVANT TO ANY ISSUE IN THIS CASE.**

The Court should preclude the government from presenting any evidence concerning either Mr. Forbes' severance or the events of July 1998 pursuant to Fed. R. Evid. 401. The severance agreement has no relevance to this action. It was executed in July 1998, months after the conclusion of the alleged conduct charged in the indictment -- which was publicly disclosed in April 1998. The severance agreement has no bearing on any element of the charged offenses and proves nothing with respect to the charges against Mr. Forbes. Similarly, the July 1998 Cendant board meeting, the financial stresses on Cendant in July 1998, and the discussion that took place at the July 1998 meeting concerning the terms of Mr. Forbes' resignation and severance have no bearing on any issue in this case. Such evidence does nothing "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

First, it is clear that, at most, the severance is potentially relevant only to impeachment of Mr. Forbes' credibility in the event Mr. Forbes testifies. As Judge Thompson

properly concluded, such impeachment evidence is not admissible in the government's case-in-chief.  See Docket No. 1845 at 1-2; Forbes Reply Memorandum (Docket No. 1778) at 2-4 (incorporated herein by reference).  Because the government cannot present this evidence in its case-in-chief, the government also should be precluded from making any reference to the severance in its opening argument.  See Docket No. 1845 at 4.

Second, even with respect to Mr. Forbes' cross-examination (in the event Mr. Forbes testifies), the severance has no probative value.  The only conceivable relevance of the severance agreement to the issue of bias is that the agreement authorizes Cendant to bring an action against Mr. Forbes for recovery of the severance in the event he were convicted of a crime. See Ex. 1, § 2.  Nothing in the agreement ensures that Cendant would prevail in any such action. See id.

The severance agreement could not give rise to any purported motive to testify falsely on the part of Mr. Forbes because Cendant has already sued Mr. Forbes for recovery of his severance; it filed such a claim in 1999.  The government has conceded this fact.  See Docket No. 1719 at 3 at 3 ("Cendant has already sued Forbes"); Gov't Opp. to Forbes Motion to Compel Discovery (Docket No. 1643) at 16-17 (Mr. Forbes "has been sued by Cendant to recover the $47 million 'severance' payment that Cendant paid Forbes in 1998, based on Cendant's claim that Forbes was involved in the accounting fraud at issue in this case.").  Because Cendant has already availed itself of any claimed right it has under the severance agreement to sue Mr. Forbes for recovery of the severance payment, it would be improper and misleading for the government to contend that Mr. Forbes is shading his testimony in order to avoid a Cendant lawsuit seeking recovery of his severance.  Accordingly, the government should be precluded from questioning

8

Mr. Forbes about the severance under the pretext that it is relevant to a purported motive to testify falsely in these proceedings.

While the government also asserts that Mr. Forbes has a motive to testify falsely because his odds of prevailing in the pending Cendant civil lawsuit seeking recovery of his severance would be reduced if he were convicted, see Docket No. 1719 at 3 at 3, this fallback argument fails as well. As the government is aware, Mr. Forbes is a defendant in a number of civil actions seeking the recovery of, at a minimum, hundreds of millions of dollars. If the government wishes to cross-examine Mr. Forbes concerning that fact, it is free to do so. But there is no legitimate reason for the government to single out the amount of the severance in order to conduct such a cross-examination.[7]

It is obvious that Mr. Forbes has a great deal at stake in this case, including his liberty. The government is free to point that out in the event Mr. Forbes testifies in a third trial. The government also is free to argue to the jury that the high stakes in this case are a relevant factor in assessing Mr. Forbes' credibility. But the possibility that Cendant could sue Mr. Forbes for recovery of the severance if he were convicted -- a non-issue, because Cendant has already

---

[7]    The cases previously cited by the government in support of the purported relevance of the severance are entirely inapposite. United States v. Ballestros Gutierrez, 181 F. Supp. 2d 350, 354 (S.D.N.Y. 2002) (Docket No. 1719 at 4-5), involved conduct that took place during the time of the charged offenses and that was probative of the underlying offenses. See id. (parallel trading by family members supported inference that defendant traded on inside information). Here, Mr. Forbes accepted his severance in July 1998, months after the conclusion of the offenses charged in the indictment, and the government does not even attempt to argue that the severance is probative of any element of the charged offenses. Kunzman v. Enron Corp., 941 F. Supp. 853 (N.D. Iowa 1996) (Docket No. 1719 at 5), was a civil age discrimination case in which the wealth of the defendant corporation was relevant to a substantive issue in the case (whether its proffered explanation for the plaintiff's termination -- financial difficulties -- was a pretext). Id. at 867. Here, Mr. Forbes' severance has no probative value with respect to any element of the charged offenses.

9

sued Mr. Forbes for recovery of the severance -- is not a relevant factor in assessing Mr. Forbes'

credibility.  Particularly where, as here, the government's real purpose for offering evidence

concerning Mr. Forbes' severance is an improper one, see infra, the Court should preclude the

government from discussing either the severance agreement or the amount of the severance in

cross-examination of Mr. Forbes.

The remaining evidence the government seeks to elicit concerning the severance

-- Mr. Forbes' conduct at the July 1998 Board meeting, the Board fight, the views expressed by

various Board members at the July 1998 meeting, Mr Forbes' alleged refusal to resign without a

severance, the resignations of other Cendant board members, and the financial pressures on

Cendant in July 1998 -- have no conceivable relevance to Mr. Forbes' credibility or any other

legitimate issue in this case.[8]  The events of July 1998 are not charged in the indictment, and they

have no probative value with respect to the offenses charged.  The Court should preclude the

government from presenting any evidence, cross-examination, or argument on these subjects

pursuant to Rule 401.

## II.  THE COURT SHOULD EXCLUDE EVIDENCE RELATING TO THE SEVERANCE AND THE JULY 1998 BOARD MEETING UNDER FED. R. EVID. 403.

The Court also should exclude evidence concerning Mr. Forbes' severance and

the July 1998 board meeting pursuant to Fed. R. Evid. 403.  The nonexistent probative value of

this evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the

issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless

---

[8]        Evidence concerning the views of other Cendant board members about whether
Mr. Forbes should have accepted the severance also is inadmissible pursuant to Fed. R. Evid. 701
(prohibiting lay opinion testimony) and because it is hearsay.

presentation of cumulative evidence." Id. Indeed, it is evident from the government's closing arguments in both 2004 and 2005 that the government's real purpose in offering evidence concerning these issues is both improper and prejudicial. The government seeks to improperly argue that Mr. Forbes' acceptance of the severance is substantive evidence of Mr. Forbes' purported knowledge of the fraud, highlight Mr. Forbes' wealth, incite juror emotion and anger at the fact that Mr. Forbes received $47 million at a time when shareholders were suffering losses, and portray Mr. Forbes as a person of bad character.

The admission of evidence concerning the severance has a serious potential to confuse and mislead the jury. The government's 2005 summation demonstrates that the real purpose for which the government seeks to offer this evidence is to improperly suggest that Mr. Forbes' acceptance of the severance is substantive evidence of his purported guilt. See Tr. (11/29/05) at 3091-92 ("I'll provide you five reasons that prove that the defendant knew about the fraud. Let's start with the defendant's actions after Cendant publicly announced accounting irregularities in the CUC divisions on April 15, 1998. You saw the defendant testify. The defendant said that he felt very badly for the shareholders after Cendant's stock price collapsed and he was shocked to learn of the fraud. That's what the defendant said. What does the evidence show? The evidence shows that the defendant took another $47 million in severance from the company and then he walked away."). Although this argument was stricken by the Court, id. at 3092, it is evident that the government seeks to present this evidence for improper purposes.

There was nothing unlawful or improper about Mr. Forbes' acceptance of his severance in July 1998 or Mr. Forbes' alleged conduct at the July 1998 Cendant board meeting.

11

Neither the amount of the severance nor Mr. Forbes' acceptance of his severance has any legitimate probative value with respect to the charged offenses.[9] Indeed, had Mr. Forbes <u>not</u> accepted his severance, the government likely would argue that such conduct demonstrated consciousness of guilt. Given the Catch-22 nature of the situation, it is both misleading and fundamentally unfair for the government to suggest that Mr. Forbes' acceptance of the severance is purported evidence that he participated in accounting irregularities at Cendant. Yet this is the precise argument the government made in summation at the 2005 trial -- despite a clear ruling by the Court that cross-examination concerning the severance was allowed only with respect to the issue of bias. <u>See</u> Docket No. 1845. Because it is clear that the government seeks to use this evidence in a manner that will confuse and mislead the jury, the Court should preclude its admission under Rule 403.

The admission of this evidence also would be highly prejudicial because the government seeks to use it to arouse juror emotion and anger. "Unfair prejudice," for purposes of Rule 403, is "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, advisory committee notes. Evidence is properly excluded under Rule 403 where there is a "genuine risk that the emotions of the jury

---

[9]      Cendant executives from the former HFS, including Mr. Silverman and Mr. Monaco, also received generous financial packages after the merger. There is no indication that Mr. Silverman, Mr. Monaco, or any other high-level Cendant personnel declined to accept any compensation after Cendant's stock price suffered following the disclosure of the fraud in April 1998. To the contrary, Mr. Monaco testified that, although he believed that his compensation package following the merger was excessive, Tr. (5/25/04) at 2102, he accepted all of the compensation offered to him. Yet the government does not accuse Mr. Monaco, Mr. Silverman, or any other Cendant executive from the former HFS, of any wrongdoing. Mr. Forbes' acceptance of his compensation package, including his severance, proves nothing about whether he is guilty of the charged offenses.

12

will be excited to irrational behavior, and that this risk is disproportionate to the probative value

of the offered evidence." United States v. Bailey, 990 F.2d 119, 122 (4th Cir. 1993) (quotation

omitted).[10]

        In both the 2004 and 2005 trials, the government sought to incite emotion and

anger among jurors by emphasizing the fact that Mr. Forbes accepted a $47 million severance

package at a time when the average Cendant investor was suffering losses.[11] This is a classic

"appeal to class prejudice," United States v. Stahl, 616 F.2d 30, 33 (2d Cir. 1980), which the

Second Circuit has condemned as "improper and hav[ing] no place in a court room." Id.

(collecting cases). Indeed, in Stahl, the Second Circuit reversed a conviction where the

government sought to "appeal to the potential bias of not-so-wealthy jurors" by emphasizing the

defendant's wealth and "equat[ing] wealth with wrongdoing." Id. at 31. The government has

done precisely that here; in both trials, it sought to portray Mr. Forbes' acceptance of $47 million

---

     [10]    See also United States v. Blackstone, 56 F.3d 1143, 1146 (9th Cir. 1995)
("Evidence is prejudicial if it 'appeals to the jury's sympathies, arouses its sense of horror,
provokes its instincts to punish, or triggers other mainsprings of human action.'") (quoting 1
Weinstein's Federal Evidence § 403[3]); United States v. Lachman, 48 F.3d 586, 592 (1st Cir.
1995) ("The concern is with any pronounced tendency of evidence to lead the jury, often for
emotional reasons, to desire to convict a defendant for reasons other than the defendant's guilt.").

     [11]    See, e.g., Tr. (9/30/04) at 14,405 ("But even though you felt bad for the
shareholders and you were still a multimillionaire by tens of millions of dollars, isn't it true you
still wanted more money out of the company before you would agree to leave?"); Tr. (10/19/04)
at 15,116 ("Mr. Forbes tells us he was sorry for the shareholders. Felt sorry for them. He was so
sorry that he wanted to take $47 million with him as part of his severance."); Tr. (11/15/05) at
3000-04 (asking Mr. Forbes how he felt about shareholders who lost money, and highlighting
that Mr. Forbes accepted his severance a few months after the collapse of Cendant's stock price);
Tr. (11/29/05) at 3092 ("The defendant said that he felt very badly for the shareholders after
Cendant's stock price collapsed and he was shocked to learn of the fraud. That's what the
defendant said. What does the evidence show? The evidence shows that the defendant took
another $47 million in severance from the company and then he walked away.").

from Cendant at a time when others were suffering losses as wrongful conduct.

The government also has suggested, improperly, that Mr. Forbes is a person of poor character because he did not forfeit his severance at a time when Cendant shareholders were experiencing losses, and because he purportedly "walked away" from Cendant, Tr. (11/29/05) at 3092, after accepting the severance. This argument was highly prejudicial, as well as misleading. Mr. Forbes did not simply "walk[] away" from Cendant. His resignation resulted from a Board fight in July 1998. Mr. Forbes ultimately agreed to resign from Cendant not because he wanted to leave the company, but because both he and the Cendant Board of Directors concluded that it was in the best interest of the shareholders for him to resign. See Ex. 2.

The government should not be permitted to present any evidence or argument on this subject because it has no probative value and is highly prejudicial. In the event the government is allowed to present the misleading suggestion to the jury that Mr. Forbes acted improperly by accepting his severance and resigning, Mr. Forbes could be required to present evidence about the real reasons he left the company in July 1998. This could result in a distracting mini-trial on irrelevant issues. Because this evidence has no probative value and is extremely prejudicial, the Court should preclude the government from making any reference to Mr. Forbes' severance or the events of July 1998 in a third trial pursuant to Fed. R. Evid. 403.

## CONCLUSION

For the foregoing reasons, the Court should preclude the government from presenting evidence, cross-examination, or argument concerning: (i) Mr. Forbes' July 1998 severance agreement with Cendant; (ii) the value of the severance Mr. Forbes received from Cendant; (iii) the July 28, 1998 Cendant Board meeting; or (iv) the financial and other pressures

14

on Cendant in July 1998.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

    Brendan V. Sullivan, Jr. (Bar No. ct17115)
    Barry S. Simon  (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

      - and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Memorandum in Support of Motion of Defendant Walter A. Forbes to Preclude the Government from Presenting Evidence, Cross-Examination, or Argument Concerning (1) Mr. Forbes' July 1998 Severance Agreement with Cendant; (2) the Value of Mr. Forbes' Severance; (3) the July 28, 1998 Cendant Board Meeting; or (4) the Financial and Other Pressures on Cendant in July 1998 (Forbes Third Trial Motion In Limine No. 14) to be filed electronically and to be served on April 17, 2006 to the following via e-mail:

Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

Barry S. Simon