# EXHIBIT 1

# AGREEMENT

AGREEMENT (this "Agreement"), dated as of July 28, 1998, between Cendant Corporation, a Delaware corporation (the "Company"), and Walter A. Forbes (the "Executive").

## WITNESSETH

WHEREAS, the Company and the Executive are parties to a Restated Employment Agreement, dated as of May 27, 1997 (the "Employment Agreement);

WHEREAS, the Audit Committee of the Company's Board of Directors has reported to the Board of Directors on an interim basis with respect to its investigation of the accounting issues at CUC International, Inc. businesses as disclosed by the Company in a press release dated July 14, 1998 (the "Accounting Issues");

WHEREAS, the members of the Board of Directors of the Company are divided with respect to the governance of the Company;

WHEREAS, the Executive and the Company have agreed as provided herein for the termination of the Executive's employment and other positions with the Company; and

WHEREAS, the Company and the Executive desire to confirm the rights and obligations of Executive under the Employment Agreement as a result of the termination of the Executive's employment with the Company.

NOW, THEREFORE, in consideration of the mutual agreements and understandings set forth herein, the parties hereto hereby agree as follows:

Section 1.    Termination of Employment; Benefits.

(a)    Resignation. Effective at the Effective Time (as defined below), the Executive hereby terminates his Period of Employment (as defined in the Employment Agreement) with the Company and resigns as Chairman of the Board of Directors, Chairman of the Executive Committee of the Board of Directors and as a director of the Company.

(b)    Benefits. The Company and the Executive agree that the termination of the Executive's Period of Employment pursuant to Section 1(a) of this Agreement



CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0392956

CEN0392956

shall be deemed a "Without Cause Termination" under the terms of the Employment Agreement and accordingly, the Executive shall be entitled to receive the following payments and benefits in accordance with Sections VIII B, C and D of the Employment Agreement: (i) $35,000,000 in cash in full satisfaction of the Company's obligations under Sections VIII B(x) and VIII C(x) of the Employment Agreement; (ii) fully vested options to purchase 1,266,500 shares of common stock of the Company at an exercise price of $17.00 per share, subject to the same terms and conditions (other than vesting) as the Initial Options (as defined in the Employment Agreement), pursuant to a grant substantially in the form attached hereto as Annex A, in full satisfaction of the Company's obligations under Section VIII B (y) of the Employment Agreement; (iii) $753,205.13 in cash in full satisfaction of the Company's obligations under Section VIII C (y)(a) of the Employment Agreement; and (iv) until the fifth anniversary of the Effective Time, the continuation of the welfare benefits otherwise provided to the Executive under Section IV D of the Employment Agreement and, to the extent applicable, the Executive's spouse.  In addition, as a result of such termination: (i) all stock options granted to the Executive prior to the Effective Time shall become fully vested at the Effective Time and shall remain exercisable for the remainder of their terms without regard to the termination of the Executive's Period of Employment; (ii) any restrictions on shares of restricted Company common stock issued to the Executive prior to the Effective Time shall lapse at the Effective Time; and (iii) the Company shall contribute $2,149,172.00 in cash to the escrow agent to be held pursuant to the escrow agreement, substantially in the form attached hereto as Annex B, with all interest and/or dividends thereon to be paid periodically to the Company, such contribution to be in full satisfaction of the Company's obligations under Section VIII C(y)(d) of the Employment Agreement. The cash payments to the Executive, the cash contribution to the Escrow Agent and the grant of stock options to the Executive pursuant to this Section 1(b) shall be made by the Company (in the case of cash, by wire transfer of immediately available funds to one or more accounts designated by the Executive or the Escrow Agent, as the case may be) on or before the Effective Time.  In accordance with Section XIV of the Employment Agreement and as detailed in Schedule A attached hereto, all payments made by the Company to the Executive pursuant to this Section 1(b) shall be reduced by all federal, state, city or other taxes that are required to be withheld pursuant to any law or governmental regulation.

(c)    Continuing Rights and Obligations under Employment Agreement. The parties hereto agree that the rights and obligations under the Employment Agreement which continue by their terms after termination of the Period of Employment shall be unaffected by the execution of this Agreement, including without limitation the indemnification provisions of Section XI thereof, except to the extent the parties' respective rights and obligations under Article VIII of the Employment Agreement are provided for in .

2

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0392957

Section 1(b) hereof. The Executive agrees that within thirty (30) days after the Effective Time he shall vacate his offices at the Company and at any of its subsidiaries and return to the Company all property of the Company and any of its subsidiaries, including without limitation, files, records, access cards, computer cards, computer equipment and software, facsimile machines, automobiles. The Executive agrees that promptly following the Effective Time he shall return to the Company all cellular telephones, credit cards and debit cards.

      (d)    Representations and Warranties of the Executive. The Executive hereby represents and warrants to the Company that he did not have knowledge of or participate in the Accounting Issues and no event, circumstance or other reason exists that would entitle the Company to terminate his Period of Employment under the Employment Agreement through a "Termination for Cause" (as defined in the Employment Agreement).

      Section 2.    Additional Agreements. The Company covenants that it will not bring or assert against the Executive any claim or cause of action, whether in law or equity, based upon any of the Accounting Issues and hereby releases the Executive from any and all claims, causes of action, debts, contracts, promises and demands, whether in law or equity, based upon the Accounting Issues, except as expressly set forth in this Agreement; provided however, that this Section 2 shall in all respects be null, void and of no effect if the Executive is convicted of or pleads guilty to any crime based upon any of the Accounting Issues. In the event that the Executive has received any direct benefit or consideration relating to any of the Accounting Issues (it being understood that, for purposes of this Agreement, receipt by the Executive of his compensation and other benefits pursuant to the terms of his employment by the Company or trading in the Company's securities shall not be considered such benefit or consideration), the Company's remedy in any proceeding against the Executive with respect to such benefits or consideration shall be limited to the recovery of any such benefit or consideration. The covenant and release in this paragraph shall in no way eliminate, limit or waive the Company's right to bring or assert against any other person a claim or cause of action, whether in law or equity, based upon any of the Accounting Issues. The Executive agrees that for a period of ten (10) years from the date hereof, he will not interpose as a defense or otherwise assert any legal doctrine or theory based upon the passage of time, including without limitation the statute of limitations and laches, in or in connection with any action, proceeding, claim, or cause of action brought against him by the Company based upon any of the Accounting Issues to the extent consistent with the terms of this Agreement.

3

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0392958

CEN0392958

The Executive hereby releases the Company from any and all claims, causes of action, debts, contracts, promises and demands, whether in law or equity, which the Executive ever had or now has, except as expressly set forth in this Agreement and except with respect to any rights to indemnification whether under law or pursuant to the Employment Agreement, the Company's Amended and Restated By-Laws or the Company's Certificate of Incorporation. The releases in this Section 2 shall in no way eliminate, limit or waive (i) the Executive's right to bring or assert against any officer, director, employee or agent of the Company any action, proceeding, claim or cause of action or (ii) the right of any officer, director, employee or agent of the Company to bring or assert against the Executive any action, proceeding, claim or cause of action.

Section 3.     Effective Time of this Agreement. This Agreement shall be deemed effective immediately upon the satisfaction or occurrence of all of the following events (such time herein referred to as the "Effective Time"): (i) the approval and adoption of this Agreement by the Board of Directors of the Company; (ii) the effectiveness of the irrevocable resignations of all of the persons listed on Schedule B hereto as members of the Company's Board of Directors in the form attached hereto as Annex C; (iii) the receipt by the Company of the irrevocable resignation of Frederick D. Green as a member of the Company's Board of Directors in the form attached hereto as Annex D; (iv) the receipt by the Executive of the cash payments to the Executive, the cash contribution to the Escrow Agent and the granting of stock options to the Executive pursuant to Section 1(b) hereof; and (v) the approval and adoption by the Company's Board of Directors of the Amended and Restated By-Laws of the Company in the form set forth in Annex E hereto by the affirmative vote of at least 24 directors. In the event that the Effective Time shall not have occurred by July 30, 1998, this Agreement shall terminate and become void and have no effect, and neither party hereto shall have any liability or obligation hereunder.

Section 4.     Public Announcement. The parties agree that the initial press release to be issued with respect to the matters contemplated by this Agreement shall be in the form as agreed to by the parties and shall not be issued until the Effective Time. In the event that either party or any of its representatives makes any public statements concerning this Agreement or otherwise publicly discloses the existence of this Agreement or the fact that there were or are discussions between the parties regarding the matters set forth herein in violation of the preceding sentence, the preceding sentence shall be null and void and without further effect.

4

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0392959

Section 5.     Miscellaneous.

(a)     Governing Law; Jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware (without giving effect to the choice of law principles thereof). The parties agree that, if Section 2 hereof becomes null and void and of no effect, any claim or cause of action arising from or based upon this Agreement shall be brought before the Court of Chancery of the State of Delaware in and for New Castle County (the "Court"), and each of the parties hereby consents to the Court's exercise of personal jurisdiction over it and to venue before the Court for purposes of any such claim or cause of action. In circumstances in which the immediately preceding sentence shall not be operative, the parties agree that the arbitration provisions of Section XIX of the Employment Agreement shall apply to any claim or cause of action arising from or based upon this Agreement.

(b)     Headings. The section and paragraph headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

(c)     Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(d)     Entire Agreement. This Agreement constitutes the entire agreement, and supersedes all prior agreements and understandings (other than the Employment Agreement), both written and oral, between the parties with respect to the subject matter of this Agreement.

(e)     Severability. If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect.

(f)     Subrogation. Notwithstanding anything contained in this Agreement to the contrary, nothing in this Agreement is intended to or shall impair, affect or limit the rights of any insurance carrier to subrogation or recovery.

5

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0392960

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first above written.

CENDANT CORPORATION

By: _____

Name:

Title:

_____

Walter A. Forbes

6

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0392961

SCHEDULE A

Taxes to be withheld on payments under Sections 1(b)(i) and 1(b)(ii) of this Agreement:

Total Payment Due Executive:          $35,753,205.13

Less:
    Federal Taxes (28%)          $10,010,897.44
    State Taxes (4%)               1,430,128.20
    Medicare (1.45%)                 518,421.47
        Total Withholdings   $11,959,447.11

Total Net Payment to Executive        $23,793,758.02

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0392962

CEN0392962

SCHEDULE B

Bartlett Burnap
T. Barnes Donnelly
Walter A. Forbes
Stephen A. Greyser
Burton C. Perfit
Anthony G. Petrello
Stanley M. Rumbough, Jr.
Kirk Shelton
Robert T. Tucker

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

ANNEX A

July 28, 1998

Walter A. Forbes:

In accordance with Section 1(b)(ii) of the Agreement, dated as of July 28, 1998, between Cendant Corporation (the "Corporation") and you (the "Separation Agreement"), the Board of Directors (the "Board") of the Corporation has authorized the grant to you of a non-qualified option to purchase 1,266,500 shares of common stock, $.01 par value, of the Corporation (the "Common Stock") at a price of $17.00 per share (the "Exercise Price"), which the Board of Directors has determined to be the closing price of a share of Common Stock on the New York Stock Exchange on the date of the Separation Agreement.

Your option has the following terms:

(a)     This option is irrevocable and may be exercised by you as follows:

        You may purchase the 1,266,500 shares of Common Stock for which options are herein granted at any time following the filing by the Corporation of a Registration Statement on Form S-8 (the "Form S-8") covering the shares of Common Stock underlying the option granted herein.

(b)     If required by the Corporation and applicable laws, rules and regulations, prior to the delivery to you of a certificate or certificates representing the shares of Common Stock purchased by you upon the exercise of this option, you shall have deposited with the Corporation a non-disposition letter (restricting disposition by you of the shares of Common Stock) in form reasonably satisfactory to counsel for the Corporation.

(c)     In the event of any change in corporate capitalization, such as a stock split or a corporate transaction, or any merger, consolidation, separation, including a spin-off, or other distribution of stock or property of the Corporation, any reorganization (whether or not such reorganization comes within the definition of such term in Section 368 of the Internal Revenue Code of 1986, as amended (the "Code")) or any partial or complete liquidation of the Corporation, the Board may make such substitution or adjustments in the number, kind and option price of shares subject to this option as it determines is appropriate to preserve the benefits of this option.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0392964

(d)    This option shall become exercisable as provided in paragraph (a) above and shall thereafter continue to be exercisable for a period of ten (10) years from the date hereof (the "Term"), and shall terminate at the end of such period; provided, however, that if you die within such period, this option shall continue to be exercisable by your estate or legal representative for a period of twelve (12) months from the date of your death or until the expiration of the Term, whichever period is the shorter; and shall terminate at the end of such period; provided, further, however, that your estate or legal representative may not exercise this option pursuant to the foregoing proviso until the Form S-8 has been filed.

(e)    You may pay for shares purchased pursuant hereto (together with any withholding taxes due with respect thereto) in cash, by check or with previously acquired shares of Common Stock having an aggregate fair market value equal to the aggregate exercise price of the options being exercised at the time of exercise or with any other legal consideration that may be acceptable to the Board in its sole discretion at the time of exercise. The delivery to you of shares of Common Stock upon exercise of this option shall be conditional upon your payment of, or your arrangement which is acceptable to the Corporation to pay, all required withholding taxes in connection with such exercise.

(f)    This option shall not be transferable except: by will or the laws of descent and distribution; pursuant to a domestic relations order, as defined in the Code, or Title I of the Employee Retirement Income Security Act, as amended, or the regulations thereunder; or as a gift to your family members, trusts for the benefit of your family members or charities or other not-for-profit organizations. If you wish to transfer your option, contact the Corporation first for more information.

(g)    Even though your option is not granted under the Corporation's 1997 Stock Incentive Plan (the "Plan"), in the event of any ambiguity in this Agreement, any term not defined in this Agreement, or any matters as to which this Agreement is silent, this Agreement shall be deemed to adopt the relevant terms of the Plan.

The Corporation agrees to use its best efforts to file the Form S-8 with the Securities and Exchange Commission as promptly as practicable following the filing by the Corporation of amended financial statements correcting the Accounting Issues (as defined in the Separation Agreement). The Form S-8 shall be kept effective (and the current status of the prospectus required thereby shall be maintained) for as long as the option granted herein remain outstanding.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)        CEN 0392965

When you wish to exercise your stock option in whole or in part, please refer to the provisions of this letter and correspond in writing with the Secretary of the Corporation. This is not an incentive stock option under Section 422 of the Code.

Very truly yours,

[Name]
[Title].

3

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0392966

ANNEX B

## ESCROW AGREEMENT

ESCROW AGREEMENT, dated as of July __, 1998, between Cendant Corporation, a Delaware corporation ("Cendant"), ChaseMellon Shareholder Services, L.L.C., a Delaware limited liability company (the "Escrow Agent"), and Walter A. Forbes (the "Executive").

## W I T N E S S E T H

WHEREAS, the Executive owns six life insurance policies (the "Policies"), issued by Security Mutual Life Insurance Company of New York, Guardian Life Insurance Company of America and Canada Life, with respect to which Cendant has advanced the premiums paid to date and a list of which is attached hereto as Exhibit I; and

WHEREAS, pursuant to the provisions of Section IV. F. of the amended and restated employment agreement, dated as of May 27, 1997, between Cendant (formerly known as CUC International, Inc.) and the Executive (the "Employment Agreement"), Cendant has agreed to advance premiums in the annual amount of approximately $540,000 or such other annual amount as may be agreed to in writing between Cendant and the Executive on the Policies through the calendar year in which the Executive attains age 61, provided that the Executive does not violate the Covenant Not to Compete set forth in Exhibit A to the Employment Agreement (the "Covenant Not to Compete"), a copy of which is attached hereto as Exhibit II; and

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0392967

WHEREAS, pursuant to the terms of the Agreement, dated as of July 28, 1998, between the Executive and Cendant (the "Separation Agreement"), the Executive is terminating his employment and directorship with Cendant;

WHEREAS, pursuant to the provisions of Section VIII.C.(y)(d) of the Employment Agreement, on or prior to the Effective Time (as defined in the Separation Agreement), Cendant is required to contribute to an escrow agent a lump sum of $2,149,172 (as it may be expended from time to time pursuant to the terms of this Agreement, the "Escrow Fund"), representing all of the required premiums on the Policies that would hereafter be payable under Section IV.F(ii) of the Employment Agreement if the Executive's employment with Cendant continued through the calendar year in which the Executive attains age 61 (the "Premium Period"); and

WHEREAS, Cendant and the Executive desire to have the Escrow Agent hold the Escrow Fund, and the Escrow Agent is willing to do so, all upon the terms and conditions hereinafter set forth.

NOW, THEREFORE, the parties hereto hereby agree as follows:

FIRST: Concurrently with the execution and delivery of this Escrow Agreement, Cendant shall deposit the Escrow Fund with the Escrow Agent, and the Escrow Agent shall hold the Escrow Fund in escrow pursuant to the terms of this Agreement.

SECOND: A. The Escrow Agent is authorized and directed to pay out of the Escrow Fund all premiums on the Policies as they are due in accordance with the terms of the Policies as in effect on the date hereof.

2

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0392968

B. The Escrow Agent shall invest the Escrow Fund in short-term government securities, government repurchase agreements, commercial paper rated the highest grade by Moody's Investors Service, Inc. and Standard & Poor's Corporation with a maturity of not more than one year, money market funds invested in the foregoing, short-term certificates of deposit issued by commercial banks having a combined capital surplus and undivided profits of not less than $100 million or other similar short-term highly liquid investments of equal or greater security as the foregoing. Any interest and dividends earned on the Escrow Fund shall be distributed to Cendant by the Escrow Agent when earned.

THIRD: A. This Agreement and Cendant's obligation to pay premiums with respect to the Policies for the Premium Period shall terminate, and concurrently therewith the Escrow Agent shall distribute to Cendant any remaining balance of the Escrow Fund and all undistributed interest and dividends earned thereon, upon the earlier of (i) a violation by the Executive of the Covenant Not to Compete prior to the date on which he attains age 60, (ii) the death of the Executive prior to the date on which he attains age 60 or (iii) January 1, 2004.

B. The Escrow Agent shall be entitled conclusively to rely on a written statement of the Executive that the Executive has attained the age of 60, with a copy of the Executive's birth certificate, notwithstanding the fact that it shall receive written notice from Cendant to the contrary or that it shall know or have reasonable grounds to know to the contrary.

3

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0392969

C. The Escrow Agent shall be entitled conclusively to rely on a written certification of Cendant that the Executive has died.

D. In the event that the Escrow Agent shall receive written notice from Cendant to the effect that Cendant is entitled to distribution of the Escrow Fund held by the Escrow Agent hereunder as a result of the application of the provisions of part A(i) of this Article THIRD, the Escrow Agent shall give written notice thereof to the Executive. Unless the Escrow Agent shall receive written notice from the Executive within twenty business days after the delivery of such notice by the Escrow Agent to the Executive that he intends to exercise his rights to arbitration as set forth in the Employment Agreement in order to contest Cendant's determination that the Executive has breached the Covenant Not to Compete, the Escrow Agent shall be conclusively entitled to rely upon such initial notice from Cendant of Cendant's right to the distribution of the Escrow Fund. If the Escrow Agent shall timely receive such written notice of objection from the Executive, the Escrow Agent shall be entitled to retain the Escrow Fund until the receipt of a final determination of the arbitration proceeding or the receipt of a written agreement between Cendant and the Executive. The Escrow Agent shall then deliver the Escrow Fund in accordance with such final determination or the written agreement of the parties.

FOURTH:  A.  Cendant agrees to reimburse the Escrow Agent for the reasonable fees, expenses, disbursements and advances incurred or made by the Escrow Agent in the performance of its duties hereunder. The Escrow Agent shall be paid an annual fee by Cendant. Such fee arrangement shall be set forth in a separate agreement between Cendant and the Escrow Agent.

4

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0392970

B. The Escrow Agent undertakes to perform only such duties as are specifically set forth in this Escrow Agreement. All of such duties are purely ministerial in nature and the Escrow Agent may conclusively rely and shall be protected in acting or refraining from acting on any written notice, instrument or signature believed by it to be genuine and to have been signed or presented by the proper party duly authorized and to do so, including, without limitation, the notices referred to in ARTICLE FIFTH hereof. The Escrow Agent shall have no responsibility for the contents of any such writing contemplated hereby and may rely upon the contents thereof without liability.

C.    The Escrow Agent shall not be liable for any action taken or omitted by it in good faith and believed by it to be authorized hereby or within the rights and powers conferred upon it hereunder, nor for action taken or omitted by it in good faith, or in accordance with the advice of counsel (which counsel may be of the Escrow Agent's own choosing), and shall not be liable for any mistake of fact or error of judgment or for any acts or omissions of any kind.

D. Cendant hereby agrees to indemnify the Escrow Agent and hold it harmless from and against, and agrees to reimburse the Escrow Agent for, any and all loss, damage, liability, cost and expense, including reasonable attorneys' fees, incurred by it in connection with its duties hereunder.

FIFTH: All notices hereunder shall be in writing and shall be sent by registered or certified mail, return receipt requested; if intended for Cendant be addressed to it, attention of its Senior Executive Vice President and General Counsel, at 6 Sylvan Way, Parsippany, New Jersey 07054, or at such other address of which Cendant shall

5

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0392971

have given notice to the Executive and the Escrow Agent in the manner herein provided; if intended for the Executive, shall be mailed to him at 941 Ponus Ridge Road, New Canaan, Connecticut 06840, or at such other address of which the Executive shall have given notice to Cendant and the Escrow Agent in the manner herein provided; if intended for the Escrow Agent be addressed to it, attention of _____, at 85 Challenger Road, Ridgefield Park, NJ 07660, or at such other address and/or to the attention of such other person of which the Escrow Agent shall have given notice to Cendant and the Executive in the manner herein provided.

SIXTH:  This Escrow Agreement constitutes the entire understanding among the parties with respect to the matters referred to herein and no waiver or modification to the terms hereof shall be valid unless in writing signed by the party to be charged and only to the extent therein set forth.  All prior and contemporaneous agreements and understandings between the parties with respect to the subject matter of this Escrow Agreement are superseded by this Escrow Agreement.

SEVENTH:  Cendant and the Executive may terminate the Escrow Agreement and/or the services of the Escrow Agent by mutual written consent and may appoint by mutual written consent a successor Escrow Agent.

EIGHTH:  This Escrow Agreement shall be binding upon and inure to the benefit of the parties hereto, their respective heirs, administrators, executors, personal representatives and successors and assigns and in the event the Escrow Agent resigns or is replaced following the execution of this Escrow Agreement, shall apply to any

6

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0392972

successor Escrow Agent; provided, however, that none of the parties hereto may assign

any of its or his rights or obligations hereunder other than by operation of law.

NINTH:  This Escrow Agreement shall be governed by and construed in

accordance with the laws of the State of New York without reference to the principles of

conflict of laws.

7

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0392973

IN WITNESS WHEREOF, the parties hereto have executed this Escrow Agreement as of the day and year first above written.

CENDANT CORPORATION

By: _____
      Name:
      Title:

CHASEMELLON SHAREHOLDER SERVICES, L.L.C.

By: _____
      Name:
      Title:

_____
WALTER A. FORBES

8

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0392974

**EXHIBIT I**

I.   Policies Issued by Guardian Life Insurance Company

    2913144

    3023808

    3001153

II.  Policies Issued by Security Mutual Life Insurance

    1046438

    1071502

III. Policies Issued by Canada Life

    2633-125

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

CEN 0392975