# EXHIBIT 10

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
919 THIRD AVENUE
NEW YORK, N.Y. 10022-3852

ALAN R. FRIEDMAN
PARTNER
TEL (212) 715-9000
FAX (212) 715-8000
afriedman@kramerlevin.com

47, AVENUE HOCHE
75008 PARIS
FRANCE

July 19, 2000

**For Settlement Purposes Only**
**Via Facsimile**

James A. Kidney, Esq.
Assistant Chief Litigation Counsel
Securities and Exchange Commission
Division of Enforcement
450 Fifth Street, N.W., Stop 8-8
Washington, DC 20549-0808

Dear Jim:

   In light of our discussions and in an effort to amicably resolve this issue, we have revised for a second time the Corigliano family's budget. We have deleted the interest expense, and lowered the home upkeep and food budget numbers. Our original food budget of $25,000 worked out to $13.70 per person, per day, for the family. It already represented a significantly reduced estimate from the family's actual and documented prior year's expenses. Nonetheless in deference to the Commission's concerns and in aid of an agreed-upon compromise, we have, with some reluctance, reduced this number by $2,000. That would allow Cosmo, Terri and their three minor children each a daily meal allowance of only $12.60 per person.

   The revisions that we have now made reflect, without regard to taxes, a $30,800 reduction from the budget provided to you on July 13 and a $38,300 reduction from the budget we sent on June 29, which we continue to regard as reasonable. After taxes and payments for their aged and infirm parents, it leaves the family with a budget for living expenses of only $126,000 for Mr. and Mrs. Corigliano and their three children. As you are aware, these numbers involve a very substantial reduction from their prior normal expenses, which were not at all extravagant. Nothing in the proposed budget suggests any dissipation or impairment of their assets.

   Rather, the proposed living expenses are well within the income annually generated by the family's assets. The family currently estimates that these assets will, depending on market conditions, generate approximately $165,000 in interest income, principally from non taxable sources (without regard to possible capital appreciation of the mutual funds).

   On the tax estimate, as you might surmise, the estimate can vary with market conditions and fund management decisions well beyond the Coriglianos' control. I am now informed that according to their most recent information, for the six months ended June 30,

KL3:2045018.1

CCQ176

DEFENDANT'S
EXHIBIT
964

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**

James A. Kidney, Esq.
July 19, 2000
Page 2

2000, their mutual funds reported capital gains of approximately $215,000. These figures could obviously change by year end. But in order to be safe, I have raised the tax provision of the budget to $65,000.

       In our July 13 letter, we also explained the need for Mrs. Corigliano to spend as a one-time capital expense $51,325 for new dispensing equipment for Crystal Journey Candles. In the short term, no other extraordinary capital expenditures are anticipated for the business. As we have previously noted, the Company has grown from 3 to 18 employers since its purchase. We are informed that over the past year, the business achieved sales of approximately $1.1 million, but essentially broke even on a cash flow basis, and the Coriglianos have not received any income from it. As I may have indicated on the phone, as a start-up and because it lacks historical operating-statements, it cannot finance the purchase through ordinary banking sources. The purchase of the machinery is necessary to maintain the Company's competitive position and to avoid impairment of the business. The Company estimates that the cost of the machinery should be earned back within approximately a year of its purchase as a result of savings in materials, such as wax and oil, and labor costs. Presently, the Company melts over 2,000 pounds of wax a day in 14 heat-regulated vats. Fifteen or more production workers then manually pour wax into containers and molds. This process can be streamlined through a machine that dispenses the wax into molds along a conveyor system. The purchase will result in significant labor and material savings. As important, the acquisition of the equipment represents the most cost-effective way to expand the business' operating capacity, a necessity to its ultimate success. The Company needs to leverage its fixed costs through increased production. In that manner, it can take on additional sales at increased operating margins that will add to its bottom line and so achieve operating profits. You asked whether additional expenses for shipment, delivery and installation of the equipment would be necessary. I understand that all those charges are included within the present estimate.

       I hope that we are now in a position to resolve this matter. Please call me promptly to let me know whether this proposed budget is agreeable to you.

    Best regards.

                                          Yours sincerely,

                                          Alan R. Friedman

ARF/asb
cc:    Harvey Pitt, Esq.
        Audrey Strauss, Esq.

DRAFT (7/19/2000)

Revised Annualized Budget
for the Corigliano Family

**Annual Expenses:**

Automobile Expenses:

    Fuel and tolls      $3,600
    Maintenance      2,000

Automobile Insurance      2,600

Clothing      10,000

Education (three children):

    Parochial School Tuition      7,500

Books, Educational Supplies, After-School
Activities, Toys And Other Educational Expenses      12,000

Food      23,000

Home Upkeep, Supplies and Ordinary Repairs      16,000

Income Taxes (Federal and State)      65,000[1]

Insurance Premiums:

    Health Insurance      9,500
    Property Insurance      3,800

Medical Expenses      5,000

Real Estate Taxes      25,000[2]

Utilities (electricity, oil and telephone)      21,000

Miscellaneous Expenses      10,000

---

[1] Does not reflect possible taxes that would be due if Crystal Journey Candles had taxable income for the year. In that event, the estimate for taxes would need to be increased.

[2] Based on anticipated tax reassessment.

KL3:2042063.4

Support to Cosmo and Terri Corigliano's Parents:[3]     DRAFT (7/19/2000)

Cosmo's Parents:

| | |
|---|---|
| Food, Utilities, Insurance Premiums, Medical Expenses (paid in periodic installments) | 25,000 |
| Property Taxes | 3,800 |
| | 28,800 |

Terri's Mother:

| | |
|---|---|
| Monthly Payments of $1,000 for Living Expenses Insurance Premiums, Medical Expenses | 12,000 |
| Property Taxes | 8,000 |
| | 20,000 |

---

[3] Cosmo's parents own no significant assets. As reported previously, their home is now owned by Cosmo Corigliano, who purchased the lifelong family home from his parents, who had insufficient assets to take out a loan on the house to help pay for their own living expenses.

The only sources of income for Cosmo's parents are social security payments and support from Cosmo.

Terri Corigliano's mother owns a home in Branford, Connecticut. She has a mortgage on this house totaling approximately $150,000. She has no additional significant assets.

The only sources of income for Terri's mother are social security payments and support from Cosmo.

KL3:2042063.4                                      -2-

CCQ179

DRAFT (7/19/2000)

**Payments Owed on In-Progress Construction Work on Corigliano House**

The Coriglianos have contracted with a local residential construction worker, Robert Dibble, to complete necessary repairs to their home's driveway and sidewalk pavement. The contractor had begun work on this project several months ago and already has removed the previous pavement. He also has made purchases of gravel and tar to complete the job. The cost of completion and outstanding payments owed by the Coriglianos are estimated by Mr. Dibble at approximately $10,000.[4]

**Necessary Business Expenses**

Crystal Journey Candles is a manufacturing company that produces aromatic candles. Since Mrs. Corigliano purchased the company in June 1999, sales have doubled and the number of employees has grown from 3 to 18. In order for the company to maintain its value and complete even existing orders, the company needs to expand its production capacity through automation. Without such capital improvements the company's future will be jeopardized and it will not to remain competitive in the marketplace.

The company currently relies on employees to manually pour the melted wax into candle molds. The machinery needed to expand production capacity and reduce costs would dispense wax automatically into the candle molds at a rate that surpasses the company's present capabilities. In order to compete in the marketplace, the company must be able to meet customer demands in the future.

After an exhaustive search of equipment manufacturers, Crystal Journey Candles located a local candle equipment manufacturer in New Jersey that has available for sale the needed dispensing equipment at a reasonable cost. Crystal Journey Candles will purchase an 8-Head Votive Dispenser with 118 trays, conveyor system and holding tank at a price of $51,325. The company needs to complete this purchase immediately in order to meet current contract demands and to have sufficient production capacity in place for the upcoming holiday season. Without these improvements, the company cannot continue to compete, risks losing its value in the near future as well as jeopardizing the employment of its 18 workers.

---

[4] The Coriglianos are also in the process of seeking an estimate on the needed replacement of their home's leaking exterior kitchen doors and related repairs to the house frame.

- 3 -

# EXHIBIT 11

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**
919 THIRD AVENUE
NEW YORK, N.Y. 10022 - 3852

GARY P. NAFTALIS
PARTNER
TEL (212) 715-9253
FAX (212) 715-9238
gnaftalis@kramerlevin.com

47, AVENUE HOCHE
75008 PARIS
FRANCE

**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON**
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS
ONE NEW YORK PLAZA
NEW YORK, N.Y. 10004-1980
(212) 859-8000

HARVEY L. PITT
PARTNER
TEL (202) 639-7100
FAX (202) 639-7008
pittha@ffhsj.com

1001 PENNSYLVANIA AVE, N.W.
WASHINGTON, D.C. 20004-2505

August 28, 2000

Richard H. Walker, Esq.
Director
Division of Enforcement
Securities and Exchange Commission
Mail Stop 8-1
450 Fifth St., N.W.
Washington, D.C. 20549-0801

Re: SEC v. Cosmo Corigliano, Anne M. Pember, et al., 00 Civ. 2873 (D. N.J.) (the "Action")

Dear Mr. Walker:

This letter is an agreement by Cosmo Corigliano and Agnes T. Corigliano ("our clients"), whose signatures are executed below, not to secrete, spend or otherwise dissipate existing assets, identified in Attachment A hereto, by their actions or those of their family members, agents, or others under their direct or indirect control. This agreement permits limited expenditures, if necessary, from investment earnings of these assets to meet, but not to exceed, the budget described in Attachment B hereto, but for no other purpose. However, such expenditures from assets, if any, are permitted only (i) after all earned (i. e., non-investment income) of family members has been spent pursuant to the budget and (ii) if investment income exceeds the amount of withdrawals necessary to meet budgeted expenses. Should market conditions change so as to make meeting condition (ii) impractical, our clients and the Division shall consult as to such reasonable withdrawals from principal as may be necessary and appropriate to meet the budget, but any such withdrawals from principal shall be made only with the Division's written consent.

DEFENDANT'S EXHIBIT F-400

KL3:2041961.2

SEC0045

Our clients further agree that they will preserve the assets in Attachment A, to the extent market conditions permit, until this dispute is resolved. Should additional assets come into their possession before this dispute is resolved, those assets shall be added to those in Attachment A and be preserved and increased subject to the provisions of this agreement.

In order to insure that the provisions of this agreement are met, our clients agree to complete and provide to the Division of Enforcement the Statement of Assets, Liabilities and Expenditures in the form of Attachment C, hereto, on a quarterly basis, 20 days after the end of each quarter, beginning with the quarter ended September 30, 2000. Our clients also agree to provide such documentation as the Division may reasonably request in support of each such Statement.

Should it be necessary, in the judgment of our clients, to materially exceed budgeted living expenses as provided in Exhibit B, no such excess expenditure shall be made without first obtaining the written consent of the Division of Enforcement, which shall not be unreasonably withheld. Nor shall our clients, or any of their family members, agents or custodians of the assets identified in Attachment A, make any withdrawals, except as may be necessary to meet the spending provisions of the budget in Attachment B, or reallocate either ownership or the investment vehicle of any such assets, without the prior written consent of the Division of Enforcement.

By executing their signatures below, our clients agree to all of the provisions stated above and, further, agree that, should there be a material breach of this Agreement by them, the Commission may move the United States District Court for the District of New Jersey for such relief as the Commission may deem appropriate.

Our clients also understand and agree that they and the Securities and Exchange Commission may, upon 30 days notice, terminate this agreement, and move, on reasonable notice, to seek such interim or final relief as they or the Commission deem appropriate.

Further, our clients understand that any material breach of this agreement may be brought to the attention of the Court in the criminal matter to which Cosmo Corigliano has entered a guilty plea.

Nothing in this Agreement shall be deemed or construed as a waiver of any remedy, right or defense that the Commission or our clients have in the Action or an admission as to any defense or claim or the propriety of any relief, interim or final, that any party may seek therein or in any other proceeding.

Very truly yours,

*[signature: Gary P. Naftalis]*
Gary P. Naftalis
Kramer, Levin, Naftalis & Frankel LLP
Counsel for Cosmo Corigliano

*[signature: Harvey L. Pitt]*
Harvey L. Pitt
Fried, Frank, Harris, Shriver & Jacobson
Counsel for Agnes T. Corigliano

I have read the foregoing letter to Richard H. Walker of the Securities and Exchange Commission and understand it fully. I hereby acknowledge that it sets forth my agreement with the Division of Enforcement of the Securities and Exchange Commission.

*[signature]*
COSMO CORIGLIANO

SUBSCRIBED AND SWORN BEFORE ME
THIS 20 DAY OF August, 2000

*[signature: Liliya Suris]*
Notary

LILIYA SURIS
NOTARY PUBLIC, State of New York
No. 01SU6014860
Qualified in Kings County
Commission Expires Oct. 19, 20__

My Commission expires on October 19, 2000

I have read the foregoing letter to Richard H. Walker of the Securities and Exchange Commission and understand it fully. I hereby acknowledge that it sets forth my agreement with the Division of Enforcement of the Securities and Exchange Commission.

*[signature]*
AGNES T. CORIGLIANO

SUBSCRIBED AND SWORN BEFORE ME
THIS 20 DAY OF August, 2000

*[signature: Liliya Suris]*
Notary

LILIYA SURIS
NOTARY PUBLIC, State of New York
No. 01SU6014860
Qualified in Kings County
Commission Expires Oct. 19, 20__

My Commission expires on October 19, 2000

KL3 2048961.2

- 3 -

SEC0047

### Attachment A: Assets of Cosmo Corigliano and Family
### [April 2000; July 2000 Spouse]

| | | |
|---|---:|---|
| **Cash** | | |
| People's Bank Jt. Checking Acct. No. 1 | 5,700 | |
| People's Bank Jt. Checking Acct. No. 2 | 44,400 | |
| People's Bank Jt. Savings Acct. | 9,300 | |
| People's Bank Spouse Checking Acct. | 60,000 | |
| **Real Estate** | | |
| Trumbull CT | 180,000 | |
| Old Saybrook, CT | 1,745,000 | |
| **Autos** | 13,200 | |
| **Securities** | | |
| Fidelity CT Muni Fund (Joint) | 1,200 | |
| Smith Barney Inv. Fund | 2,042,300 | |
| Fairfield Capital Partners | 1,245,700 | |
| Cendant Stock | 1,773,700 | [130,777 shares @ $13.5625/share] |
| Cendant Stock Options | 3,000,000 | ["in excess of"] |
| Vanguard Tax Exempt Investment Funds (Spouse) | 225,000 | |
| T. Rowe Price Tax Exempt Investment Funds (3 accts -- Spouse) | 2,448,000 | |
| Fidelity Tax Exempt Investment Funds (2 accts -- Spouse) | 1,230,000 | |
| Merrill Lynch Equity Acct. (Spouse) | 504,000 | |
| Merrill Lynch Investment Fund (Spouse) | 214,000 | |
| **Pensions, IRA, Keough** | | |
| Smith Barney IRA | 327,500 | |
| Sailboat | 45,000 | |
| Mary Corigliano Trust Fund | 200,000 | |
| Michael Corigliano Trust Fund | 200,000 | |
| David Corigliano Trust Fund | 200,000 | |
| Crystal Journey Candles LLC | 750,000 | [purchase price] |
| **TOTAL** | 16,464,000 | |

8/1/00

## Attachment B: Budget for Cosmo Corigliano and Family

**Family Expenses**

| | |
|---|---:|
| Auto | 5,600 |
| Insurance | 6,400 |
| Clothing | 10,000 |
| Tuition | 7,500 |
| Childrens' Activities: Music Lessons, Sports, etc. | 12,000 |
| Food | 23,000 |
| Home Maint | 16,000 |
| Health Expenses (including insurance) | 14,500 |
| Real Estate & Property Taxes | 25,000 |
| Utilities | 21,000 |
| Miscellaneous | 10,000 |
| House Repairs/improvements (one-time charges) | 17,000 |
| Income Taxes | 65,000 |
| **Subtotal** | **233,000** |
| | |
| Candle Company [one time expense] | 51,325 |
| **Subtotal** | **51,325** |
| | |
| **Cosmo parents** | |
| Food, utilities, insurance, medicine | 25,000 |
| Property Taxes | 3,800 |
| **Subtotal** | **28,800** |
| | |
| **Terri's Mother** | |
| Living Expenses | 12,000 |
| Property taxes | 8,000 |
| **Subtotal** | **20,000** |
| | |
| **GRAND TOTAL** | **333,125** |

8/1/00

Attachment C

# QUARTERLY STATEMENT OF ASSETS, LIABILITIES AND EXPENDITURES OF THE FAMILY OF COSMO CORIGLIANO AND AGNES T. CORIGLIANO

The following information is to be provided within 20 days after the close of each calendar quarter to James A. Kidney, Securities and Exchange Commission, Mail Stop 8-8, 450 Fifth St., N.W., Washington, D.C. 20549. Detailed asset and liability information provided in earlier reports need not be repeated if the account is reasonably identified below so that quarterly comparisons may be made, assuming there has been no change in such account information. The dollar amount of any such assets and liabilities must be again stated, however, for each quarter.

I.     Statement of Assets as of _____.

List all assets owned by Cosmo Corigliano, Agnes T. Corigliano or any other member of their household, directly or indirectly, and all assets which are subject to their possession, enjoyment or control, regardless of whether legal title or ownership is held by a relative, trustee, lessor, or any other intermediary, including but not limited to the categories indicated below. For each asset identified below with a fair market value of greater than $1,000, describe the asset, identify the owner, state the form of ownership (e.g., individual, joint, beneficial interest), provide the name of the institution in which the asset is held and the account number, if any, and state a fair market value of the asset and how the fair market value was determined (i.e., most recent account statement, appraisal, estimate, etc.).

1. Cash     _____

2. Cash surrender value of insurance     _____

3. Accounts receivable     _____

4. Loans or notes receivable     _____

5. Real estate     _____

6. Furniture and Household Goods     _____

7. Automobiles     _____

8. Securities     _____

9. Partnership interests     _____

10. Net value of ownership interest in business     _____

1

SEC0050

11. IRA, Keogh, 401(K) or pension accounts ____________

12. Other (itemize) ____________________________________________
____________________________________________________________

Total Assets ____________

II. Liabilities as of ____________________.

List all liabilities, including but not limited to the items listed below. Identify original principal amount of the liability, the amount remaining to be paid, the monthly payment, if any, the name of each creditor, the account number of the debt, if any, and the basis for reporting the liability (e.g., recent account statement, estimate, etc.).

1. Mortgages ____________

2. Auto loans ____________

3. Credit card debt ____________

4. Loans on insurance policies ____________

5. Installment loans ____________

6. Other loans or notes payable ____________

7. Other (itemize): ____________________________________________
____________________________________________________________

III. Income/Expenses

A. Income

List all income over $1,000 from any source received during the quarter. Identify the source of the income and the amount.

1. Salary/wages ____________

2. Consulting fees ____________

3. Dividends ____________

4. Interest ____________

5. Annuities _____

6. Pensions _____

7. Rents/royalties _____

8. Sales of assets _____
   [Note: asset sales, other than those conducted by fund or portfolio managers or pursuant to distribution of dividends and capital gains for such accounts, require the written consent of the Division of Enforcement]

9. Repayment of loans _____

10. Gifts _____

11. Other (itemize) _____

B. Expenditures

Total approximate expenditures for the quarter: _____

List each expenditure over $5,000:

Identify any expenditure over $2,000 which is not within a category of the budget which was Attachment B to your agreement with the Division of Enforcement. _____

3

## C. Budget Compliance

Based upon expenditures to date, it is our belief that our expenditures are within the range provided in the annual budget described as Attachment B to our agreement with the Division of Enforcement of the Securities and Exchange Commission providing for expenditure limits.

[Check one]

Yes _____

No _____

If No, explain in what categories you expect to exceed the budget, why, and by how much.

_____

I declare that I have examined the information given in this statement and, to the best of my knowledge and belief, it is true and complete.

                                     COSMO CORIGLIANO

I declare that I have examined the information given in this statement and, to the best of my knowledge and belief, it is true and complete.

                                     AGNES T. CORIGLIANO