# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **No. 3:02CR00264 (AHN)** |
| | : | |
| **v.** | : | **April 17, 2006** |
| | : | |
| **WALTER A. FORBES** | : | |

### OPPOSITION OF SECURITIES AND EXCHANGE COMMISSION ("SEC") TO FORBES' MOTIONS TO ISSUE THREE SUBPOENAS AND MOTION TO QUASH FOUR SUBPOENAS ALREADY SERVED BY FORBES

The Securities and Exchange Commission ("SEC"), by its undersigned counsel, opposes

defendant Forbes' motions for leave to issue three more Rule 17(c) subpoenas – one to the

SEC's records custodian seeking documents, and two seeking testimony from one current and

one former SEC attorney. The SEC also moves to quash four subpoenas already issued by

defendant Forbes that seek testimony from four other SEC enforcement staff members. The

grounds for this opposition and motion are set forth in the accompanying memorandum of law.1/

Respectfully submitted,

*Kathleen Cody*

SAMUEL M. FORSTEIN
Assistant General Counsel

KATHLEEN CODY
Senior Counsel

Securities and Exchange Commission
100 F Street, N. E.
Washington, D.C. 20549-9612
Tel: (202) 551-5126
Fax: (202) 772-9263

---

1/ Rather than burden this court with two oppositions to Forbes' two motions and a separate motion to quash, the SEC is filing one pleading which addresses all of Forbes' subpoenas.

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AHN) |
| | : | |
| | : | |
| v. | : | April 17, 2006 |
| | : | |
| | : | |
| WALTER A. FORBES | : | |

### MEMORANDUM OF LAW IN SUPPORT OF THE SEC'S OPPOSITION
### TO DEFENDANT FORBES' PROPOSED SUBPOENAS AND THE SEC'S MOTION
### TO QUASH FORBES' ALREADY SERVED SUBPOENAS

### INTRODUCTION

Through Rule 17 subpoenas, defendant Forbes seeks testimony from five current and one former SEC enforcement staff members at the upcoming criminal trial. Those staff members are SEC accountant Susan Markel, SEC attorneys James Kidney, David Frohlich, Roger Paszamant, and Matthew Greiner, and former SEC Associate Director Thomas Newkirk. Forbes seeks testimony from Newkirk, Kidney, and Frohlich regarding what, if any, benefits government witness Cosmo Corigliano received as a result of his budget and settlement agreements with the SEC in its civil action against him. Forbes seeks more testimony from Frohlich, Paszamant, Greiner, and Markel to attempt to collaterally impeach Corigliano and, perhaps, government witnesses Anne Pember and Casper Sabatino if they testify contrary to "statements" Forbes claims are attributed to them in notes taken by those four SEC employees.

In addition to the significant amount of tangential testimony described above, Forbes also seeks 36 broad categories of documents from the SEC through a seventh Rule 17 subpoena to the SEC's records custodian. Forbes is also conducting this "fishing expedition" in an attempt to collaterally impeach government witness Corigliano. The document subpoena improperly seeks

2

virtually all SEC documents in any way pertaining to the settlement of the SEC's civil action

against Corigliano.    Some of the documents sought by the subpoena were produced to the

prosecutors assigned to the first trial and, we believe, to defendant Forbes in accordance with

Fed. R. Crim. P. 16. The subpoena also encompasses numerous privileged documents such as

internal SEC memoranda, documents reflecting internal deliberations among the staff, and staff

work product. These documents are protected from disclosure by the attorney-client privilege,

the deliberative process privilege, and/or the work product doctrine. They are also specifically

exempted from disclosure by Rule 16(a)(2) of the Federal Rules of Criminal Procedure.

Forbes asks this Court to issue the three subpoenas described above to Newkirk, Kidney,

and the SEC's records custodian. He already has served the four other subpoenas described

above on Messrs. Frohlich, Paszamant, Greiner, and Ms. Markel. As he attempted during his

first and second trials, Forbes apparently intends to use all of this extrinsic evidence in an effort

to convert this trial against him into an improper mini-trial against government witness

Corigliano.

As discussed herein, this Court should be guided by the rulings of Judge Thompson in the

first and second trials. Although Judge Thompson held that narrowly-circumscribed testimony

as to what, if any, benefits Corigliano received as a result of his budget and settlement

agreements with the SEC in its civil action against him could be admissible to show bias or a

motive to testify falsely on the part of Corigliano, Judge Thompson noted that such testimony

could easily become an impermissible attack on Corigliano's credibility and result in an

unwarranted mini-trial against government witness Corigliano. Indeed, in ruling on the SEC's

earlier motions to quash, Judge Thompson noted that defendant Forbes was attempting to use

3

bias as a wedge to do just that.  *See U.S. v. Forbes, et al., No. 3:02-CR-00264 (AWT)* (document no. 1185) at pp. 2-4.

Judge Thompson quashed Forbes' document subpoenas to the SEC during both the first and second trials.  He reasoned that they were "overly broad," constituted a "fishing expedition," and "the broad categories of documents that defendant Forbes calls for in each subpoena reflect areas where the inquiry would be calculated solely to bolster the defendant's attack on Corigliano's credibility."  *Id.* (quoting document no. 1939, *see also* document no. 1187).

As discussed in more detail herein, this Court should similarly reject Forbes' attempt to turn his criminal trial into a mini-trial against government witness Corigliano.  This Court should decline to issue the subpoenas to Messrs. Newkirk, Kidney, and the SEC's records custodian.  It should quash the four subpoenas Forbes has issued to Messrs. Frohlich, Paszamant, Greiner, and Ms. Markel.

## BACKGROUND

### I.    The SEC Staff Subpoenaed By Forbes

Forbes apparently seeks testimony from Messrs. Newkirk, Kidney, and Frohlich concerning what benefits have been received by Cosmo Corigliano from the SEC as a result of a budget agreement and subsequent settlement agreement in the SEC's civil action against Corigliano.  Forbes asks this Court to issue subpoenas to Newkirk and Kidney, and has already served a subpoena on Frohlich.  Messrs. Kidney and Frohlich testified during the first trial, but were not called by Forbes during the second trial.  Mr. Newkirk did not testify at either trial.

During his tenure at the SEC, Mr. Newkirk was a senior official in the SEC's Division of Enforcement in Washington, D.C.  While Mr. Newkirk has some personal knowledge about the

4

SEC's budget agreement and subsequent settlement with Mr. Corigliano, it is limited. At Mr. Newkirk's direction, the budget agreement was negotiated by James Kidney, an attorney in the Trial Unit of the SEC's Division of Enforcement in Washington, D.C., who testified in the first Forbes' trial. David Frohlich, the third person Forbes proposes to call for this purpose 2/, is also an attorney in the SEC's Division of Enforcement in Washington, D.C.

As Judge Thompson noted when ruling on the SEC's motion to quash during the second trial, the dearth of personal knowledge of Mr. Kidney and Mr. Frohlich of any facts relevant to Forbes' guilt or innocence became abundantly clear when Forbes called them to testify in the first trial. Mr. Kidney and Mr. Frohlich have never met or spoken with Mr. Forbes and have no personal knowledge of his activities during the time periods charged in the indictment. Nor did Mr. Kidney or Mr. Frohlich know Mr. Corigliano during the time period of the fraud charged in the indictment. The only facts known to Mr. Kidney and Mr. Frohlich that relate to this criminal case were gained during the course of their representation of the SEC in its civil actions against Forbes, Shelton, and Corigliano. Moreover, Mr. Kidney and Mr. Frohlich derived that information second or third-hand from other sources. And, Mr. Newkirk's relevant knowledge is even less than that of Kidney and Frohlich.

In addition to Mr. Frohlich, Forbes has already served three SEC employees (Messrs. Paszamant and Greiner and Ms. Markel) with subpoenas seeking additional testimony. Like Mr.

---

2/    Forbes has already served Mr. Frohlich with a subpoena apparently seeking testimony on two subjects. As he did during the first trial, Forbes wishes to question Mr. Frohlich about any benefits Mr. Corigliano may have received as a result of the budget and settlement agreements with the SEC. In addition, as discussed subsequently herein, Forbes also seeks to collaterally impeach Mr. Corigliano and, perhaps, other government witness if they testify contrary to purported "statements" contained in notes Mr. Frohlich and other SEC staff took during witness' interviews with them and/or factual proffers made to the government by their counsel.

Frohlich, Messrs. Paszamant and Greiner are attorneys in the SEC's Division of Enforcement in Washington, D.C. Ms. Markel is the Chief Accountant of the SEC's Division of Enforcement. Unlike Messrs. Newkirk, Kidney, and Frohlich who had varying degrees of involvement in the negotiation of the budget and settlement agreements in the SEC's civil action against Corigliano, Markel, Paszamant, and Greiner have no personal knowledge regarding those agreements.

Forbes apparently seeks testimony from Frohlich, Paszamant, Greiner, and Markel to collaterally impeach Corigliano and, perhaps, government witnesses Anne Pember and Casper Sabatino if they testify contrary to "statements" Forbes claims are attributed to them in notes taken by those four SEC employees. Some of these notes were taken during witness' interviews. Others were taken during factual proffers made to the government by counsel for Corigliano, Pember, and/or Sabatino which certain SEC staff attended.

## II.    Judge Thompson's Rulings Regarding the SEC During The First Trial

During the first trial, defendant Forbes subpoenaed the same testimony from Messrs. Newkirk, Kidney, and Frohlich as he now seeks. He also subpoenaed the same broad categories of documents from the SEC. Although Forbes does not in his current motion apprise this Court of the substance of Judge Thompson's prior rulings, he offers his opinion that those rulings were "erroneous."

Judge Thompson quashed the document subpoena to the SEC finding that it was "overly broad," constituted an impermissible "fishing expedition," and failed to comply with the Rule 17(c) requirement that a subpoena call only for materials that are "evidentiary." *See U.S. v. Forbes* (document no 1187) at p. 2. Judge Thompson further found that the broad categories of Forbes' document subpoena "reflect areas where the inquiry would be calculated solely to

6

bolster the defendant's attack on Corigliano's credibility." *Id.*

As to the testimony subpoenas, Judge Thompson applied similar reasoning and found that "it was defendant Forbes' intention to use the issue of benefits received by Corigliano as a wedge to get into areas where the focus would <u>not</u> be on what benefits have been or may be received by Corigliano from the government [including the SEC] . . . . The only purpose served by questions in most of these areas would be to elicit testimony that could then be compared to Corigliano's answers on cross-examination and, thus, attack Corigliano's credibility." *See U.S. v. Forbes* (document no. 1185) at pp. 2-4. Judge Thompson found that such a "back-door attack on credibility would be particularly inappropriate in view of the latitude [defendant Forbes] was given in conducting [his] lengthy cross examination of Corigliano and it should not be permitted by the court." *Id.* at pp. 3-4.

During the first trial, Judge Thompson struck a balance in favor of allowing limited testimony from SEC enforcement attorneys Frohlich and Kidney as to what, if any, benefits Corigliano received as a result of his budget and settlement agreements with the SEC. *Id.* at p. 6. Those limitations included that defendant Forbes would not be permitted to explore whether the SEC itself agreed to the benefits conferred on Corigliano "because that line of inquiry is calculated solely to bolster the defendants' attack on Corigliano's credibility during their cross-examination of him and to attack the credibility of the government." *Id.* (document no. 1186) at p. 2. Judge Thompson also prohibited Forbes from using Frohlich's or Kidney's testimony to put before the jury Forbes' interpretation of agreements between the SEC and Corigliano and then argue that those agreements were "side agreements." *Id.* (document no. 1185) at p. 3.

7

However, as Judge Thompson observed, the testimony of Messrs. Frohlich and Kidney in the first trial, added very little to the contents of the budget and settlement agreements which Mr. Forbes had in his possession. Indeed, at a sidebar during Mr. Kidney's testimony on September 27, 2004, the Judge commented on Mr. Kidney's lack of personal knowledge on this topic. Thereafter, defendant Forbes withdrew his subpoena directed to former SEC Associate Director Thomas Newkirk.

This Court should also be apprised of Judge Thompson's prior rulings as to the admission of the purported "statements" of government witnesses Corigliano, Pember, and/or Sabatino contained in certain SEC staff notes. Some of these notes were taken during the witness' interviews with SEC staff. Others were taken during factual proffers made to the government by counsel for Corigliano, Pember, and/or Sabatino which certain SEC staff attended. This is the testimony Forbes seeks through the four subpoenas he recently served on Messrs. Frohlich, Paszamant, Greiner, and Ms. Markel.

During the first trial, Judge Thompson repeatedly found that presentations by an attorney to the government are not admissible as witness statements unless they are statements explicitly made or adopted by the client. *See* Transcript 6/1/04 at 2644-59; 6/2/04 at 2865-67; 6/3/04 at 3194. The Judge further concluded that attorney notes or memoranda that were never adopted by government witnesses such as Mr. Corigliano, Ms. Pember, or Mr. Sabatino are simply not statements attributable to them, and as such they are not admissible at trial. *See* Transcript 5/20/04 at 1530-31.

### III.    Judge Thompson's Rulings Regarding the SEC During The Second Trial

During the second trial, Forbes issued the same seven subpoenas to the SEC's records

8

custodian and its enforcement staff now pending before this Court.  Forbes sought the testimony and documents for the same purposes described above.

Adopting his ruling on the document subpoena from the first trial (*see U.S. v. Forbes*, document no. 1187), Judge Thompson quashed Forbes' document subpoena during the second trial because Forbes document subpoena remained "overly broad," constituted a "fishing expedition," amounted to an impermissible attempt to "bolster the defendant's attack on Corigliano's credibility," and failed to comply with Rule 17(c)'s requirement that the materials sought be evidentiary. *See U.S. v. Forbes* (document no. 1939) at pp. 1-2.

As to the testimony subpoenas Forbes served on Messrs. Newkirk, Kidney, and Frohlich during the second trial, Judge Thompson reminded defendant Forbes that while the defense was entitled to inquire what, if any, benefits Mr. Corigliano received as a result of his budget and settlement agreements with the SEC, the court would be "very unhappy if that situation is exploited in an effort to have a back door attack on credibility." *See* Transcript 11/7/05, at 62. Judge Thompson further noted that it would not take long to adduce any benefits testimony and that, since the defense had issued subpoenas to three SEC enforcement attorneys seeking the same benefits testimony, the court would be strongly inclined to grant a Rule 403 objection as soon as that testimony became cumulative. *Id.* at pp. 63-64.

While Judge Thompson did not quash the subpoenas to Messrs. Newkirk, Kidney, or Frohlich during the second trial, he narrowly limited the testimony Forbes could elicit from them, and  Forbes did not to call any of those witnesses at the second trial.

Forbes also sought testimony from Messrs, Frohlich, Paszamant, and Greiner, and Ms. Markel in an attempt to improperly impeach Corigliano and other government witnesses by

"contradiction" during the second trial. Citing *Rosario v. Kuhlman*, 839 F.2d 918, 925-26 (2d

Cir. 1988), Judge Thompson held that the determinative question in deciding whether extrinsic

evidence contradicting a witness' testimony is admissible is not whether the contradicting

extrinsic evidence is material or collateral, but rather whether the assertions that the impeaching

party seeks to contradict are themselves material or collateral. Judge Thompson held that

*Rosario* did not support Forbes' argument because the assertions that Forbes sought to contradict

then (and seeks to contradict now) are collateral. *See U.S. v. Forbes* (document no. 1939) at p. 4.

Judge Thompson stated that "[w]hile in <u>Rosario</u>, the [government] eyewitness' account

concerning his girlfriend 'was part of the background and circumstances of his observation of the

crime,' here the testimony defendant Forbes seeks to contradict is not part of the background or

circumstances of Corigliano's observation of the crime charged in the indictment." *See U.S. v.*

*Forbes,* (document no. 1939) at p. 4 (citing *Rosario*, 839 F.2d at 926).<u>3/</u>

During the second trial, Judge Thompson did not permit any testimony from Frohlich,

Paszamant, Greiner, or Markel as impeachment by contradiction or pursuant to Rule 613(b).

Defendant Forbes then attempted to obtain testimony from Greiner and Markel as recorded

recollection under Rule 803(5). Judge Thompson found that Forbes did not permit this

testimony from Greiner. He allowed a few sentences of Ms. Markel's notes taken during an

interview with Mr. Corigliano to be admitted pursuant to Rule 803(5). *See* Transcript 11/10/05

at p. 2501.

---

<u>3/</u>    Forbes apparently also seeks to contradict the same government witnesses with the same
collateral evidence by using F.R.E. 613(b). However, as discussed subsequently herein and as
Judge Thompson found during the first trial, Forbes fails to meet Rule 613(b)'s foundational
requirements for admission of this collateral evidence.

During the second trial, Judge Thompson also rejected Forbes' argument that because

Mr. Corigliano's plea agreement requires him to provide complete and accurate information to

the SEC upon request, testimony from the SEC evidencing his purported failure to do so is

relevant and admissible to demonstrate that Mr. Corigliano has an incentive to now fabricate

testimony in the hopes that the government will not act upon Mr. Corigliano's breach. *See U.S.*

*v. Forbes* (document no. 1939) at p. 5. Judge Thompson found that "Forbes ignore[d] the fact

that the SEC, as reflected in Mr. Frohlich's testimony during the first trial, does not view

Corigliano as having failed to comply with his obligations under the plea agreement. *Id.* The

Judge further noted that "Forbes is the only person taking the position that Corigliano has failed

to live up to his obligation under the plea agreement to provide complete and accurate

information to the SEC, and defendant Forbes' contention is premised on what he argues is the

appropriate way to interpret the Final Judgment in Corigliano's SEC case and other documents

the SEC has itself received and found acceptable." *Id.* It was also apparent to Judge Thompson

that, because both the SEC and Corigliano disagree with defendant Forbes' interpretation of

these documents, "defendant Forbes' line of inquiry is calculated solely to bolster his attack on

Corigliano's credibility and, possibly, to attack the credibility of the government." *Id.* at pp. 5-6.

Finding that this was "far removed from a legitimate, good faith inquiry into motive on the part

of Corigliano to fabricate testimony in the hope that the government will not find him in breach

of the terms of the plea agreement," Judge Thompson quashed the document subpoenas to the

SEC and did not allow testimony on this point. *Id.* at p. 6.

## DISCUSSION

As discussed below, this Court should reject Forbes' attempt to turn his criminal trial into

11

a improper mini-trial against government witness Cosmo Corigliano. This Court should decline

to issue the subpoenas to Messrs. Newkirk and Kidney, and the SEC's records custodian. It

should quash the subpoenas Forbes has served on Messrs. Frohlich, Paszamant, and Greiner, and

Ms. Markel.

**I.      Forbes Cannot Meet The Standard For Obtaining Testimony Or Documents
          From The SEC Under Rule 17 Of The Federal Rules Of Criminal Procedure.**

Forbes cannot make any showing that the documents and testimony he is requesting from

the SEC are relevant and admissible in this case. Forbes' seven subpoenas are part of a

transparent attempt to transform the criminal trial against him into a mini-trial against

government witness Cosmo Corigliano.

Rule 17 of the Federal Rules of Criminal Procedure governs the issuance of subpoenas

that seek testimony and/or documents in criminal cases. Rule 17 subpoenas are not discovery or

investigative tools for criminal cases. *See United States v. Cherry*, 876 F. Supp. 547, 549-550

(S.D.N.Y. 1995). "Courts must be careful that Rule 17 is not turned into a broad discovery

device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R.

Crim. P. 16." *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980), *cert. denied*, 449

U.S. 1126 (1981). "It was not intended by Rule 16 to give a limited right of discovery and then

by Rule 17 to give a right of discovery in the broadest terms." *Bowman Dairy v. United States*,

341 U.S. 214, 220 (1951).

A party serving a Rule 17 subpoena "must clear three hurdles: (1) relevancy;

(2) admissibility; and (3) specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974).

Forbes' subpoenas to the six SEC staff members and his seventh subpoena seeking documents

from the SEC clear none of these hurdles. First, Forbes' subpoenas fail the relevancy test

12

because the requested testimony and documents are not "relevant to the offenses charged in the indictment." *Nixon*, 418 U.S. at 700. *See also United States v. Holihan*, 248 F. Supp. 2d 179, 184-85 (W.D.N.Y.) (information subpoenaed under Rule 17 must be relevant to defendant's culpability and not merely potential impeachment material of government witnesses); *see also Bowman Dairy*, 341 U.S. at 221 (invalidating as improper "fishing expedition" that portion of trial subpoena that requested documents "relevant to the allegations or charges contained in said indictment, whether or not they might constitute evidence with respect to the guilt or innocence of any of the defendants"). Here, none of the subpoenaed testimony or documents bear on the truth or falsity of the testimony of government witness Cosmo Corigliano concerning the substance of his dealings with defendant Forbes and the fraudulent scheme. Rather, the testimony sought relates to the tangential topic of Corigliano's settlement with the SEC and the alleged inadequacy of Corigliano's disclosures to the SEC. This is purely potential impeachment material, irrelevant to the crimes charged.

Not only is the requested testimony improper, but the document subpoena is patently inappropriate. Forbes disregards Second Circuit precedent finding that Rule 17 subpoenas calling for information that could only be used for impeachment – which describes all of the documents sought by Forbes from the SEC – fail as a matter of law to satisfy *Nixon*'s admissibility prong. *See, e.g., United States v. Jasper*, 2003 WL 1107526, at *2 (S.D.N.Y. March 13, 2003) ("documents are 'not evidentiary for Rule 17(c) purposes if their use is limited to impeachment") (quoting *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995); *Holihan*, 248 F. Supp. 2d at 183.

In addition to relevance and admissibility, *Nixon* also requires specificity. The "mere

hope" that a subpoena may turn up something useful is the essence of the improper "fishing expedition" identified in *Bowman Dairy*, 341 U.S. at 221 (invalidating as improper "fishing expedition" that portion of trial subpoena that requested documents "relevant to the allegations or charges contained in said indictment, whether or not they might constitute evidence with respect to the guilt or innocence of any of the defendants").

## II.   JUDGE THOMPSON'S RULINGS AND THE TESTIMONY IN THE EARLIER TRIALS DEMONSTRATE THAT ALL OF FORBES' SUBPOENAS SHOULD BE DISALLOWED.

### A.    Judge Thompson Properly Restricted The Benefits Testimony.

Judge Thompson found that narrowly-circumscribed testimony as to what, if any, benefits government witness Corigliano received as a result of his budget and settlement agreements with the SEC could be admissible to show bias or a motive to testify falsely on the part of Mr. Corigliano. At the earlier trials, Forbes adduced exhaustive testimony on this issue even apart from SEC testimony. Indeed, given the restrictions placed on SEC testimony by Judge Thompson during the second trial, *see* Transcript 11/7/05 at 63-64 (reminding Forbes' counsel that the court retained the discretion to exclude cumulative and unnecessary evidence even as to benefits), defendant Forbes did not call Messrs. Newkirk, Kidney, or Frohlich to testify. The SEC submits that defendant Forbes can obtain this evidence at the third trial the same way he did during the second trial – through his cross-examination of Mr. Corigliano and the other witnesses. Given that the testimony Forbes seeks from three SEC witnesses would be cumulative of Mr. Corigliano's cross-examination, constitute an impermissible attempt by Forbes to bolster his attack on Mr. Corigliano's credibility, and an improper attempt to convert the criminal trial against Forbes into a lengthy mini-trial against Corigliano, this Court has the

14

discretion to prohibit it and should do so.4/

In addition, where, as here, the jury will possess "sufficient information concerning formative events to make a 'discriminating appraisal' of a witness's motives and bias," the district court has ample discretion under Rule 403 to exclude additional extrinsic evidence on those same issues. *United States v. Blackwood*, 456 F.2d 526, 530 (2d Cir. 1972) (explaining that "[a] defendant's right to elicit such [bias] evidence . . . is not boundless, but is subject to reasonable limitations imposed by the trial judge in the exercise of sound discretion"). *See also United States v. Gomes,* 177 F.3d 76, 81 (1st Cir. 1999) (agreeing that while certain extrinsic evidence might show "bias," the trial judge had discretion to exclude such an excursion into extrinsic evidence that would distract the jury from the main issues in this case"). *Accord United States v. Weiss*, 930 F.2d 185, 198 (2d Cir. 1991) (finding no error in the exclusion, as cumulative, of extrinsic evidence of prosecution witness's bias where defense counsel already caused the witness to admit to the main circumstances from which any bias supposedly arose).

**B.    Judge Thompson Properly Found That Impeachment By Contradiction Cannot Be Accomplished With Extrinsic Evidence.**

In addition to his bias theory, Forbes continues to seek documents and testimony from the SEC to impeach Corigliano and other government witnesses by their alleged contradiction on issues other than bias. Citing Second Circuit precedent (*Rosario*, 839 F.2d at 925-26), Judge Thompson held that the determinative question in deciding whether extrinsic evidence contradicting a witness' testimony is admissible is not whether the contradicting extrinsic evidence is material or collateral, but rather whether the assertions that the impeaching party

---

4/    If this Court is inclined to permit Forbes to adduce any SEC testimony, it should limit the testimony to only one SEC witness.

seeks to contradict are themselves material or collateral. Judge Thompson correctly ruled that *Rosario* did not support Forbes' request for testimony and documents because the assertions that Forbes sought to contradict then (and will seek to contradict in the third trial) are collateral. *See U.S. v. Forbes* (document no. 1939) at p. 4. Judge Thompson stated that "[w]hile in *Rosario*, the [government] eyewitness' account concerning his girlfriend 'was part of the background and circumstances of his observation of the crime,' here the testimony defendant Forbes seeks to contradict is not part of the background or circumstances of Corigliano's observation of the crime charged in the indictment." *Id.* (document no. 1939) at p. 4.

Nor would such extrinsic evidence be admissible under Rule 613(b) to prove a prior inconsistent statement by a witness unless the allegedly inconsistent statement is "material" and not collateral. *See United States v. Bolzer*, 367 F.3d 1032, 1038-39 (8th Cir. 2004); 4 *Weinstein's Federal Evidence* §613.05[[1], at 613-14 (2003) (Rule 613(b) permits extrinsic evidence where "relevant" or "material" but not on "collateral matters"). In this case, because much of the information sought by Forbes' subpoenas is collateral and not relevant to the charges against him, this Court has broad discretion to preclude impeachment by extrinsic evidence, even if the extrinsic evidence is a prior inconsistent statement. *Cf. United States v. Mulinelli-Navas*, 111 F.3d 983, 988 (1st Cir. 1997) ("The inquiry into what is collateral is squarely within the trial court's discretion.") (citing *United States v. Kozinski*, 16 F.3d 795, 806 (7th Cir. 1994)).5/

---

5/     Use of a Rule 17 subpoena for impeachment is also improper to the extent any documents or other extrinsic evidence would be offered to attack Corigliano's character for truthfulness, because admission of such evidence would be barred by Rule 608(b). That rule bars evidence "designed to show that the witness has done things, unrelated to the case being tried, that make him more or less believable per se." Fed. R. Evid. 608(b), Advisory Committee Note, 2003 Amendments (quoting *United States v. Fusco*, 748 F.2d 996, 998 (5th Cir. 1984)).

In addition, Forbes fails to meet the foundational requirements of Rule 613(b) for the admission of the purportedly inconsistent "statements" of government witnesses Corigliano, Pember, and/or Sabatino contained in certain SEC staff notes. In order to be admissible under Rule 613(b), the witness Forbes seeks to impeach must be confronted with the "statement" at trial, testify inconsistently, and the "statements" must be "substantially verbatim," "contemporaneously made," and formally adopted by the witness Forbes seeks to impeach with them. Some of these notes were taken during the witness' interviews with SEC staff. Others were taken during factual proffers made to the government by counsel for Corigliano, Pember, and/or Sabatino which certain SEC staff attended.

During the first trial, Judge Thompson repeatedly found that presentations by an attorney to the government are not admissible unless they are statements explicitly made or adopted by the client. *See* Transcript 6/1/04 at 2644-59; 6/2/04 at 2865-67; 6/3/04 at 3194. The Judge further concluded that attorney notes or memoranda that were never adopted by government witnesses such as Mr. Corigliano, Ms. Pember, or Mr. Sabatino are simply not statements attributable to them, and as such they are not admissible at trial. *See* Transcript 5/20/04 at 1530-31.6/

This Court should follow the Judge Thompson's reasoning during the first trial and quash the subpoenas to the SEC and the four subpoenas to Messrs. Frohlich, Paszamant, Greiner, and Ms. Markel as improper collateral impeachment on issues other than bias. Forbes should not be allowed to question Frohlich, Markel, Paszamant, and Greiner regarding purported "statements"

---

6/     This Court should also preclude any attempt by Forbes to use Rule 803(5) as a third method of introducing extrinsic evidence.

of government witness contained in notes the SEC staff took during government witness'

interviews with certain SEC attorneys or during factual proffers made to the government by

counsel for those government witnesses.

**C.    Judge Thompson Twice Properly Quashed The
        Document Subpoena to the SEC.**

There are no changed circumstances to justify Forbes' request that this Court issue the

previously quashed document subpoena to the SEC. This Court should decline to issue it for the

reasons set forth in Judge Thompson's earlier rulings. *See U.S. v. Forbes* (document nos. 1939

and 1187). As discussed above, the documents sought by the current subpoena amount to

entirely tangential and secondary impeachment material that is irrelevant to the crimes charged.

*See Holihan*, 248 F. Supp. 2d at 184-85 (information subpoenaed under Rule 17 must be relevant

to defendant's culpability and not merely potential impeachment material of government

witness).

Moreover, Forbes already has the relevant and discoverable non-privileged SEC

documents responsive to the current document subpoena. The SEC previously produced the

non-privileged SEC documents to the prosecutors assigned to the first trial. Forbes has received

from those prosecutors those non-privileged documents that were discoverable to defendant

Forbes consistent with the Federal Rules of Criminal Procedure.

Defendant Forbes seeks the sort of documents that have traditionally been held to be

barred from disclosure by Rule 16(a)(2) of the Federal Rules of Criminal Procedure. *See United*

*States v. Feola*, 651 F. Supp. 1068, 1142-43 (S.D.N.Y. 1987), *aff'd*, 875 F.2d 857 (2d Cir. 1989)

(disclosure of investigative files and interview reports of law enforcement officials barred by

Rule 16(a)(2)); *United States v. Sileven,* 985 F.2d 962, 966 (8th Cir. 1993) (Rule 16(a)(2)

18

precluded disclosure of government's case files and investigative reports concerning the defendant's investigation). His broad requests call for internal SEC memoranda and documents that contain internal deliberations among the staff and staff work product. Such documents are protected from disclosure by Rule 16(a)(2). *See Cherry*, 876 F. Supp. at 549-550 (finding that Rule 16(a)(2) protects internal reports generated by federal, local, and state law enforcement agents).

In sum, this Court should decline to issue the document subpoena because it is overly broad, constitutes a "fishing expedition," will lead to an impermissible attack on government witness Corigliano's credibility, and does not comply with Rule 17(c)'s requirement that the materials sought be evidentiary.

**III.     It Is Unreasonable For Forbes To Issue Seven Subpoenas To The SEC And Its Enforcement Staff Seeking Documents And Testimony For The Sole Purpose Of Collateral Impeachment.**

It is completely unreasonable for Forbes to subpoena the SEC to produce 36 broad categories of documents and six SEC staff members to provide testimony about purely potential impeachment material that is irrelevant to the crimes charged. *See Holihan*, 248 F. Supp. 2d at 184-85 (information subpoenaed under Rule 17 must be relevant to defendant's culpability and not merely potential impeachment material of government witness).

While Judge Thompson found that narrowly-circumscribed testimony as to what, if any, benefits Mr. Corigliano received as a result of his budget and settlement agreements with the SEC in its civil action against him could be admissible to show bias or a motive to testify falsely on his part, *see Harvey*, 547 F.2d at 722, Judge Thompson also noted that such testimony could easily become an impermissible attack on Mr. Corigliano's credibility and result in a mini-trial

against government witness Corigliano. Indeed, Judge Thompson concluded that defendant Forbes was attempting to use bias as a wedge to do just that. *See U.S. v. Forbes* (document no. 1185) at pp. 2-4.

Moreover the benefits testimony, while admissible, is not necessary. The terms of the budget and settlement agreements are contained in those documents, which were publicly filed. Defendant Forbes does not need to waste the Court's and jury's time with needless testimony from SEC attorneys Newkirk, Kidney, and Frohlich about the contents of those documents at the third trial. The documents speak for themselves. Moreover, during the upcoming trial, Forbes will have ample opportunity to cross-examine Mr. Corigliano about these agreements and about Forbes' contention that Mr. Corigliano lied to or otherwise misled the SEC during his settlement negotiations with the SEC. In order to prevent Forbes' criminal trial from becoming a mini-trial on Mr. Corigliano's credibility, this Court should decline to issue subpoenas to Messrs. Newkirk, Kidney, and Frohlich for this purpose.7/

---

7/    In the event that this Court determines to allow some benefits testimony, it should apply the same restrictions to this testimony as imposed by the Judge Thompson during the second trial in order to avoid having a mini-trial on Mr. Corigliano's settlement with the SEC. *See* Transcript 11/7/05, at 62-64. In order to avoid cumulative testimony on this point and a waste of the Court's and jury's time, the Court also should limit this testimony to one SEC witness.

## CONCLUSION

For the foregoing reasons, this Court should decline to issue subpoenas to the SEC's records custodian, and Messrs. Newkirk, and Kidney. It also should quash the subpoenas served by Forbes on Messrs. Frohlich, Paszament, Greiner, and Ms. Markel.

Respectfully submitted,

*Kathleen Cody*

SAMUEL M. FORSTEIN
Assistant General Counsel

KATHLEEN CODY
Senior Counsel

Securities and Exchange Commission
100 F Street, N. E.
Washington, D.C. 20549-9612
Tel. (202) 551-5126; Fax (202) 772-9263

## CERTIFICATE OF SERVICE

The undersigned certifies that, on April 17, 2006, I caused this electronically-filed

opposition and motion, certificate of service, and proposed order to be served on the following

individuals via federal express:

> Michael Martinez, Esq.
> U.S. Attorney's Office for the District of New Jersey
> 970 Broad Street
> Suite 700
> Newark, New Jersey 07102
>
> Meg Keeley, Esq.
> Williams & Connolly
> 725 Twelfth Street, N.W.
> Washington, D.C. 20005


*Kathleen Cody*
Kathleen Cody

Dated:  April 17, 2006
       Washington, D.C.

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **No. 3:02CR00264 (AHN)** |
| | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| | : | |
| **WALTER A. FORBES** | : | |
| | : | |

## PROPOSED ORDER

Upon consideration of the opposition of the Securities and Exchange Commission ("SEC") to Forbes' motions to issue three proposed subpoenas and the SEC's motion to quash four subpoenas already served by Forbes, any opposition or reply thereto, and the entire record herein,

IT IS HEREBY ORDERED that the SEC's opposition and motion are granted. The Court declines to issue defendant Forbes' proposed subpoenas to Thomas Newkirk, James Kidney, and the SEC's records custodian. It is FURTHER ORDERED that the subpoenas Forbes has issued to David Frohlich, Susan Markel, Roger Paszamant, and Matthew Greiner are quashed in their entirety.

**DATED:** _____        _____
            **Bridgeport, Connecticut**        **Alan H. Nevas**
                                      **United States District Judge**

23