# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

———————————————————— x
                                            :
UNITED STATES OF AMERICA                    :
                                            :
                                            :   No. 3:02 CR 264 (AHN)
                v.                          :
                                            :   April 17, 2006
WALTER A. FORBES                            :
                                            :
                Defendant.                  :
                                            :
———————————————————— x

## OPPOSITION OF NON-PARTIES COSMO CORIGLIANO AND KRAMER LEVIN NAFTALIS & FRANKEL LLP TO WALTER FORBES' MOTIONS TO VACATE REMEDIAL RELIEF ORDER AND FOR LEAVE TO ISSUE RULE 17(C) SUBPOENAS

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Gary P. Naftalis
Alan R. Friedman
Eric A. Tirschwell
J. Wells Dixon
1177 Avenue of the Americas
New York, New York  10036
(212) 715-9100

-and-

JACOBS, GRUDBERG, BELT,
    DOW & KATZ, P.C.
Ira B. Grudberg
350 Orange Street
New Haven, Connecticut  06511
(203) 772-3100

Attorneys for Cosmo Corigliano

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

Introduction ......................................................................................................................... 1

I.      BACKGROUND ...................................................................................................... 3

        A.      Forbes' Demands in Connection with the First Trial ..................................... 3

        B.      Forbes' Demands in Connection with the Second Trial and the
                Remedial Order ............................................................................................. 5

II.     FORBES' MOTION FOR LEAVE TO FILE REPETITIVE SUBPOENA
        DEMANDS SHOULD BE SUMMARILY DENIED AS PROCEDURALLY
        IMPROPER ............................................................................................................... 7

III.    STANDARDS FOR PRODUCTION UNDER RULE 17(C) ..................................... 9

        A.      *United States v. Nixon*'s Requirements of Specificity,
                Admissibility and Relevance ........................................................................ 9

        B.      Rule 17(c) Cannot Be Used to Obtain Extrinsic Evidence That
                Is Inadmissible for Collateral Impeachment ................................................ 12

        C.      Forbes Continues to Argue for a Non-Existent "Opened the
                Door" Exception to the Collateral Impeachment Rule .................................. 13

        D.      The Court May Also Exclude Cumulative, Unnecessary and
                Therefore Inadmissible Evidence ................................................................. 15

IV.     FORBES CONTINUES TO RELY ON SELF-CREATED FICTIONAL
        VIOLATIONS OF MR. CORIGLIANO'S OBLIGATIONS TO THE
        GOVERNMENT ....................................................................................................... 16

V.      THE COURT SHOULD ADHERE TO JUDGE THOMPSON'S MANY PRIOR
        RULINGS AND DENY FORBES LEAVE TO SERVE HIS DUPLICATIVE
        DEMANDS .............................................................................................................. 22

        A.      Correspondence with the SEC and with the United States
                Attorney's Office Concerning the SEC ......................................................... 23

        B.      Documents Reflecting Communications with the Government
                and Cendant that Were Copied to Cosmo Corigliano,
                Including Kramer Levin Subpoena Exhibits A-V ......................................... 24

        C.      Budget and Living Expense Information and Other Financial
                Information Mr. Corigliano Provided to His Counsel ................................... 25

D.    September 2003 Asset Information.............................................................. 27

E.    Receiver Documents ...................................................................................... 27

F.    Kramer Levin and Fried Frank Retainer Agreements.................................... 29

G.    Communications Between Mr. Corigliano and Kramer Levin
       Between April 1998 and January 2000, and Kramer Levin's
       Attorney Presentations to the Government ..................................................... 31

H.    Polygraph-Related Documents ....................................................................... 33

I.     Post 2004-Trial Communications Relating to the Government
       and Benefits ..................................................................................................... 36

J.     Crystal Journey Candles Documents .............................................................. 37

K.    Credit Card Statements Covering the Period April 1, 2004
       Through July 7, 2004 ...................................................................................... 39

CONCLUSION.................................................................................................................... 40

KL3:2511034.11

# TABLE OF AUTHORITIES

## CASES

*Bankers Ins. Co. v. Florida Dep't of Ins. & Treasurer,*
   755 So. 2d 729 (Fla. Dist. Ct. App. 2000) .................................................................... 35 n.35

*Bowman Dairy Co. v. United States,*
   341 U.S. 214 (1951)........................................................................................................... 11

*Brown v. State,*
   448 N.E.2d 10 (Ind. 1983) ........................................................................................... 35 n.35

*Carmona v. State,*
   941 S.W.2d 949 (Tex. Ct. Crim. App. 1997)................................................................. 35 n.35

*In re Irving,*
   600 F.2d 1027 (2d Cir.  1979) ...................................................................................... 10-11

*LoSacco v. City of Middletown,*
   822 F. Supp. 870 (D. Conn. 1993),
   *aff'd,* 33 F.3d 50 (2d Cir. 1994) ...................................................................................... 7-8

*Meyers v. Arcudi,*
   947 F. Supp. 581 (D. Conn. 1996)................................................................. 34 n.31, 35 n.33

*People v. Marcy,*
   283 N.W.2d 754 (Mich. Ct. App. 1979)....................................................................... 35 n.35

*Rosario v. Kuhlman,*
   839 F.2d 918 (2d Cir. 1988) ........................................................................................ 15 n.14

*Schrader v. CSX Transp., Inc.,*
   70 F.3d 255 (2d Cir. 1995) ................................................................................................ 7

*Sequa Corp. v. GBJ Corp.,*
   156 F.3d 136 (2d Cir. 1998) .............................................................................................. 7

*State v. Juarez,*
   570 A.2d 1118 (R.I. 1990)........................................................................................... 35 n.35

*State v. Post,*
   32 Ohio St. 3d 380 (1987) .......................................................................................... 35 n.35

*State v. Rickabaugh,*
   361 N.W.2d 623 (S.D. 1985)....................................................................................... 35 n.35

KL3:2511034.11

*United States ex rel. Stone v. Rockwell Int'l Corp.*,
   144 F.R.D. 396 (D. Colo. 1992) ................................................................... 26 n.24

*United States v. Akers*,
   702 F.2d 1145 (D.C. Cir. 1983) ....................................................................... 9 n.6

*United States v. Beauchamp*,
   986 F.2d 1 (1st Cir. 1993) ................................................................................. 12

*United States v. Beckford*,
   964 F. Supp. 1010 (E.D. Va. 1997) ......................................................... 14-15 n.13

*United States v. Benedetto*,
   571 F.2d 1246 (2d Cir. 1978) ................................................................... 14 n.12

*United States v. Blackwood*,
   456 F.2d 526 (2d Cir. 1972) ............................................................................ 16

*United States v. Bolzer*,
   367 F.3d 1032 (8th Cir. 2004) ......................................................................... 13

*United States v. Brown*,
   95 CR 168, 1995 WL 387698 (S.D.N.Y. June 30, 1995) .............................. 14 n.13

*United States v. Bufalino*,
   683 F.2d 639 (2d Cir. 1982) ..................................................................... 14 n.12

*United States v. Canter*,
   338 F. Supp. 2d 460 (S.D.N.Y. 2004) ......................................................... 34 n.33

*United States v. Cuadrado*,
   413 F.2d 633 (2d Cir. 1969) ..................................................................... 14 n.12

*United States v. Cuevas Pimentel*,
   815 F. Supp. 81 (D. Conn. 1993) ................................................................. 23 n.21

*United States v. D'Angelo*,
   No. 02-CR-399 (JG), 2004 WL 315237 (E.D.N.Y. Feb. 18, 2004) ............................ 34 n.31

*United States v. De Yian*,
   No. 94 CR 719, 1995 WL 614563 (S.D.N.Y. Oct. 19, 1995) ........................ 14 n.13

*United States v. Giampa*,
   No. S 92 Cr. 437, 1992 WL 296440 (S.D.N.Y. Oct. 7, 1992) ........................ 38 n.41

KL3:2511034.11

*United States v. Gomes*,
 177 F.3d 76 (1st Cir. 1999)........................................................................................... 16 n.15

*United States v. Holihan*,
 248 F. Supp. 2d 179 (W.D.N.Y. 2003).................................................................................. 10

*United States v. Innamorati*,
 996 F.2d 456 (1st Cir. 1993)........................................................................................... 12 n.8

*United States v. Jasper*,
 No. 00 CR 825 (PKL), 2003 WL 1107526 (S.D.N.Y. Mar. 13, 2003)................................... 10

*United States v. Johnson*,
 904 F. Supp. 1303 (M.D. Ala. 1995)............................................................................. 35 n.34

*United States v. King*,
 164 F.R.D. 542 (D. Kan. 1996) ............................................................................................ 11

*United States v. King*,
 194 F.R.D. 569 (E.D. Va. 2000)........................................................................................... 11

*United States v. Kwong*,
 69 F.3d 663 (2d Cir. 1995) ........................................................................................... 34 n.33

*United States v. Leaver*,
 358 F. Supp. 2d 273 (S.D.N.Y. 2005) ........................................................................... 38 n.41

*United States v. Lynn*,
 856 F.2d 430 (1st Cir. 1988)................................................................................................ 21

*United States v. Marchisio*,
 344 F.2d 653 (2d Cir. 1965) ................................................................................................ 10

*United States v. Marino*,
 277 F.3d 11 (1st Cir. 2002)...................................................................................... 12-13 n.10

*United States v. Messina*,
 131 F.3d 36 (2d Cir. 1997) ........................................................................................... 34 n.31

*United States v. Morris*,
 287 F.3d 985 (10th Cir. 2002) ............................................................................................. 11

*United States v. Mulinellli-Navas*,
 111 F.3d 983 (1st Cir. 1997)................................................................................... 12-13 & n.10

*United States v. Nektalov*,
No. S 203 CR 828 (PKL), 2004 WL 1574721 (S.D.N.Y. July 14, 2004) ..................... 38 n.41

*United States v. Nixon*,
418 U.S. 683 (1974)........................................................................................................ *passim*

*United States v. Ocasio*,
No. 3:99 CR 200 (CFD), 2005 WL 1489462 (D. Conn. June 20, 2005)................................. 8

*United States v. Orena*,
883 F. Supp. 849 (E.D.N.Y. 1995) ........................................................................... 10, 38 n.41

*United States v. Perez-Perez*,
72 F.3d 224 (1st Cir. 1995)............................................................................................ 12 n.8

*United States v. Quintieri*,
306 F.3d 1217 (2d Cir. 2002) ..................................................................................... 8 n.5, 9

*United States v. R. W. Prof'l Leasing Servs.*,
228 F.R.D. 158 (E.D.N.Y. 2005) ......................................................................................... 11

*United States v. Rosenthal*,
142 F.R.D. 389 (S.D.N.Y. 1992)................................................................................... 26 n.24

*United States v. Scheffer*,
523 U.S. 303 (1998)............................................................................................... 34 nn.30-31

*United States v. Seijo*,
514 F.2d 1357 (2d Cir. 1975) ...................................................................................... 14-15

*United States v. Silverman*,
745 F.2d 1386 (11th Cir. 1984) .......................................................................................... 10

*United States v. Tarantino*,
846 F.2d 1384 (D.C. Cir. 1988).................................................................................... 12 n.8

*United States v. Tellier*,
255 F.2d 441 (2d Cir. 1958) ........................................................................................ 26 n.24

*United States v. Tenzer*,
213 F.3d 34 (2d Cir. 2000) ................................................................................................... 9

*United States v. Tham*,
960 F.2d 1391 (9th Cir. 1992) ....................................................................................... 9 n.6

*United States v. Uccio*,
   940 F.2d 753 (2d Cir. 1991) ............................................................................................. 8-9

*United States v. Wallach*,
   935 F.2d 445 (2d Cir. 1991) ........................................................................................ 14-15

*United States v. Weiss*,
   930 F.2d 185 (2d Cir. 1991) ..................................................................................... 16 n.15

*United States v. Weissman*,
   No. 01 CR 529, 2002 WL 31875410 (S.D.N.Y. Dec. 26, 2002).................................. 38 n.41

*United States v. Williams*,
   95 F.3d 723 (8th Cir. 1996) ...................................................................................... 35 n.34

*United States v. Williams*,
   205 F.3d 23 (2d Cir. 2000) ........................................................................................... 9 n.6

*United States v. Zolin*,
   491 U.S. 554 (1989)................................................................................................... 33 n.30

*In re Von Bulow*,
   828 F.2d 94 (2d Cir. 1987) ........................................................................................ 26 n.24

*Walder v. United States*,
   347 U.S. 62 (1954)..................................................................................................... 14 n.12

*Walker v. Firestone Tire & Rubber Co.*,
   412 F.2d 60 (2d Cir. 1969) .......................................................................................... 12 n.8

## STATUTES & RULES

D. Conn. L. Civ. R. 7(c)..............................................................................................*passim*

Fed. R. Crim. P. 16 ...................................................................................................... 24 n.22

Fed. R. Crim. P. 17(h)........................................................................................... 14-15 n.13

Fed. R. Evid. 403 ................................................................................................................ 16

Fed. R. Evid. 608(b).................................................................................................... 13 n.11

Fed. R. Evid. 608(b), Advisory Committee Note, 2003 Amendments................................. 13 n.11

Fed. R. Evid. 613(b).............................................................................................................. 13

KL3:2511034.11

Fed. R. Evid. 803(5)................................................................................................................. 10

Fed. R. Evid. 803 (6) .............................................................................................................. 10

## MISCELLANEOUS

4 *Weinstein's Federal Evidence* § 608.20[3][a] (2d ed. 2003)................................................ 12 n.8

4 *Weinstein's Federal Evidence* § 613.05[1] (2d ed. 2003)......................................................... 13

Wright et al., 28 *Fed. Prac. & Proc.* § 6117 (2004)............................................................... 12 n.9

KL3:2511034.11

Non-parties Cosmo Corigliano and Kramer Levin Naftalis & Frankel LLP respectfully submit this memorandum in opposition to defendant Walter Forbes' motions (1) to vacate Judge Thompson's order governing the issuance of Rule 17(c) subpoenas, and (2) for leave to issue six Rule 17(c) subpoenas relating to Mr. Corigliano.

## Introduction

Defendant Forbes begins this third trial with a series of motions that flout the letter and spirit of this Court's March 31, 2006 Order (entered in accordance with Judge Thompson's previous November 1, 2005 Order) setting forth remedial procedures governing Forbes' issuance of Rule 17(c) subpoenas. Forbes' motion to serve six additional subpoenas relating to Mr. Corigliano concedes that virtually all of the requests are substantially identical to demands that Judge Thompson quashed – on multiple occasions – but, contrary to the Court's Orders, is not styled as a motion for reconsideration and does not attempt to meet any of the standards for reconsideration motions or for overcoming the law-of-the-case doctrine. Similarly, Forbes does not attempt to address the admissibility of specific requests and concedes that many of the demanded documents would not be admissible in evidence. Had Forbes followed the procedures ordered by the Court, it would have spared the Court the burden of revisiting more than ten prior motions to quash, nearly 500 pages of legal briefing, and countless hours of oral argument resulting in dozens of rulings by Judge Thompson quashing all but the tiniest fraction of these demands.

Judge Thompson's Order, now adopted by this Court, was an eminently rational response to Forbes' otherwise unrelenting abuse of Rule 17(c) and disregard for the Court's rulings. The Order was a remedial measure addressed to Forbes' issuance of literally scores of all-inclusive, civil-type discovery demands that had no place in a criminal proceeding. All in all, in connection with the first two trials, and for the sole purpose of attempting to discredit Mr. Corigliano, defendant Forbes served: (a) more than *fifty* Rule 17(c) subpoenas for documents on at least twenty

1

different parties, consisting of some *650* separate demands, and (b) at least fifteen separate subpoenas for testimony of live witnesses, including two attorneys and other employees of the Kramer Levin firm, an attorney and custodian of records from the Fried Frank firm, and three different SEC attorneys who worked on Mr. Corigliano's SEC case and settlement.

Along the way, Judge Thompson repeatedly made findings that Forbes claimed to be subpoenaing information for one purpose but in fact intended or knew that it would be used for a different, improper purpose; was seeking a second or third "bite at the apple" in the context of subpoena-related issues; and, in the course of litigating subpoena-related issues, had misstated the record or otherwise engaged in misleading conduct.

Accordingly, at the urging of various counsel including the undersigned, Judge Thompson's remedial Order required, *inter alia*, that all future subpoenas issued by Forbes be accompanied by a certification that the documents sought are "admissible into evidence – indicating generally what category of admissible evidence" – and further requiring that "to the extent defendant Forbes wishes to reissue a Rule 17(c) subpoena for documents where the court has already quashed a prior subpoena demand that called for identical or substantially similar documents, he shall move for reconsideration of the court's order specifying[] the bases on which he believes reconsideration is warranted." Nov. 1, 2005 Order at 11 (attached hereto as Ex. A). These requirements are maintained in this Court's recent Order. *See* Mar. 31, 2006 Order (Ex. B).

In derogation of the clear requirements set forth in both the November 1, 2005 Order and this Court's subsequent Order, Forbes' application to serve six additional subpoenas related to Mr. Corigliano – including more than 150 separate demands for documents directed to Mr. Corigliano, the Kramer Levin law firm, to Mrs. Corigliano's law firm (Fried Frank), to the SEC, to the candle company the Coriglianos previously owned, and to the court-appointed receiver overseeing aspects of the Coriglianos' SEC settlement – identifies no change in the law, no

2

discovery of new facts, and no clear error or oversight in the Court's prior rulings. Nor does Forbes set out or explain the bases for the Court's prior rulings, much less attempt to explain why these rulings are clearly erroneous. Instead, similar to his approach at the outset of the second trial, Forbes merely notes that prior similar demands were quashed, thus improperly shifting the burden to the Court to review the governing rulings, compare those rulings and the prior arguments to the current arguments, and determine if anything new or different is being presented. This is exactly what obedience to the remedial Order would have averted.

Forbes' non-compliance with this Court's Order alone provides reason enough to reject in its entirety his motion to issue new subpoenas. But beyond this and related threshold defects, Forbes' application is also substantively meritless. Where Judge Thompson ruled against Forbes (as he did in nearly every aspect of every motion to quash), the ruling was painstakingly considered and legally correct. Moreover, for every category of documents he now identifies, Forbes' own recitation of the facts and arguments makes it clear that he already has in his possession more than sufficient material to make his cross-examination points (however misleading they may be, as we discuss below). Under these circumstances, the suggestion that Forbes' Sixth Amendment confrontation rights are potentially implicated, much less infringed, by his inability to issue further subpoenas to obtain additional inadmissible documents is frivolous at best.

As we now explain in detail, Forbes' recycled arguments were properly rejected by Judge Thompson the first time, the second time, and in some cases the third and fourth times they were made during the first two trials, and they should be rejected by this Court as well.

## I.   **BACKGROUND**

### A.   **Forbes' Demands in Connection with the First Trial**

In connection with the first trial, the defendants served some *thirty-five* Rule 17(c) subpoenas relating to Mr. Corigliano, including numerous subpoenas to his counsel. Forbes'

document requests included demands for telephone, financial and banking records of the Corigliano family; confidential attorney notes and working files; attorney billing and accounting records; our retainer letter; and privileged communications between Mr. Corigliano and his counsel.[1]    In quashing nearly all of Forbes' requests in connection with the first trial, Judge Thompson made factual findings, adopted sections of the government's briefs and ours that pointed out some of the more egregious instances of Forbes' distortions of the record and defiance of the Court's rulings,[2] and as noted above, repeatedly found that Forbes' conduct constituted improper attempts to relitigate previously decided issues and/or to seek documents for one purported purpose when in fact they would be used for a different improper purpose.[3]

---

[1] Forbes also defined "You" in his subpoenas to Mr. Corigliano to include his counsel and expressly refused to exclude from his demands Mr. Corigliano's privileged communications with his counsel.

[2] *See* Ruling on Motion of Non-Parties Kramer Levin Naftalis & Frankel LLP and Peter Gonedes to Quash Defendant Forbes' Subpoenas Dated August 19, 2004 (Sept. 24, 2004) [hereinafter Gonedes Ruling] ("so that the record as to these matters is clear, the court notes that the movants have accurately summarized in Part I.A of their memorandum in law in support of the motion the extensive background of the Rule 17(c) subpoenas relating to Corigliano"); Ruling on Motion of Non-Parties Gary P. Naftalis and Alan R. Friedman to Quash Subpoenas for Trial Testimony (Sept. 24, 2004) [hereinafter KL Attorneys Ruling] ("so the record as to these matters is clear, the court notes that it has reviewed the 'Counter-Statement of Certain Facts,' set forth in the movants' reply memorandum at pages 2 through 4, and concludes that it is accurate"). These rulings and our referenced briefs are Exhibits C and D. *See also* Tr. 9/27/04, at 13591-94; Tr. 10/14/04, at 14612.

[3] *See, e.g.,* Tr. 7/20/04, at 8034 (Forbes requesting "third bite" on crime-fraud issues, which Court concludes are "not for discussion"); Tr. 7/26/04, at 8813 ("I expressed my concern that what the defendants were really seeking by asking for an evidentiary hearing was another bite at the apple."); KL Attorneys Ruling at 2 (Ex. D) (adopting our "Counter-Statement of Certain Facts," which addresses Forbes' continuing efforts to relitigate or otherwise challenge the Court's prior rulings); Ruling on Motion of SEC to Quash Subpoena Seeking Testimony and Documents from SEC Enforcement Attorney James Kidney (Sept. 24, 2004) [hereinafter Kidney Ruling] at 3 (Ex. E) ("It is obvious to the court that, at least at the time the subpoenas were served, it was defendant Forbes' intention to use the issue of benefits received by Corigliano as a wedge to get into areas where the focus would not be on what benefits have been or may be received by Corigliano from the government. . . . The only purpose served by questions in most of these areas would be to elicit testimony that could then be compared to Corigliano's answers on cross-examination and, thus, attack Corigliano's credibility. Such a back-door attack on credibility would be particularly inappropriate in view of the latitude the defendants were given in conducting their lengthy cross-examinations of Corigliano, and it should not be permitted by the court.").

4

**B.    Forbes' Demands in Connection with
the Second Trial and the Remedial Order**

In the weeks leading up to the commencement of the second trial in 2005, Forbes

served an additional eighteen Rule 17(c) subpoenas, with some 250 separate calls, the

overwhelming majority of which demanded exactly the same or substantially similar documents

that were unsuccessfully sought in connection with the first trial. Those subpoenas included three

to Mr. Corigliano, four to Kramer Levin, eight to third-party banks concerning the Corigliano

family, two to the court-appointed receiver overseeing Mr. Corigliano's SEC settlement, and one to

Mr. Corigliano's wife's law firm (Fried Frank).

On November 1, 2005, Judge Thompson quashed nearly all of Forbes' subpoena

demands relating to Mr. Corigliano. *See* Nov. 1, 2005 Order (Ex. A). He also entered the case

management order implementing procedures substantially similar to those requested by counsel for

Mr. Corigliano (which request had been joined in by Fried Frank and Cendant). *See* Tr. 11/1/05, at

1444-46; Nov. 1, 2005 Order (Ex. A); Mar. 31, 2006 Order (Ex. B).

In imposing the case management order, Judge Thompson carefully explained his

concerns about Forbes' abuse of the subpoena power:

> Defendant Forbes' extensive use of Rule 17(c) subpoenas creates a case management
> concern. There have been numerous motions to quash in this case, which have to a
> large extent been granted, but only after extensive, but necessary, briefing. The
> process has been costly to the non-parties involved and burdensome to them and the
> court. However, the process does appear to inure to the benefit of defendant Forbes,
> because even when a motion to quash is granted as to a particular call, the movants
> must frequently make representations as to particular matters in order to support the
> motion to quash, thus affording defendant Forbes some degree of discovery to which
> he is not entitled. Therefore, the court has concluded that adoption of a procedure
> similar to that suggested by the movants is appropriate in this case, but it should not
> be limited to Corigliano.

Nov. 1, 2005 Order at 10-11 (Ex. A). Judge Thompson further noted:

> I agree with the description of how things evolve when the subpoenas are served that
> is in the [Kramer Levin] papers, and I think the way that things are going it just
> creates a lot of work for everybody, but the person that is advantaged are the people

5

serving the subpoenas, which is the defense, and everyone else, including me, is overwhelmed and that's just not a good situation. So I think to the extent that the defense wants to serve additional subpoenas, we will follow a type of procedure suggested in the papers.

Tr. 11/1/05, at 1446.

The virtue of the remedial relief order was almost immediately apparent. In striking contrast to the first trial, Forbes' counsel did not attempt to serve any additional Rule 17(c) subpoenas relating to Mr. Corigliano, nor did he seek reconsideration of any of the Court's November 1, 2005 subpoena rulings.

However, Forbes' attempts to invade the attorney-client privilege did not cease. For example, contrary to the evidence at trial and once again in defiance of Judge Thompson's prior adverse rulings, Forbes continued to attempt to elicit a waiver of Mr. Corigliano's attorney-client privilege by arguing that his counsel had acted as a "mere conduit" of information to the government (an argument defendant makes again in the present papers, without acknowledging Judge Thompson's prior adverse findings). In response, Judge Thompson was forced to halt cross-examination and address an issue that he had already addressed repeatedly.

> I think that was the subject of much discussion last time [during the 2004 trial], and it was clear from [Mr. Corigliano's] testimony last time that he gave whatever his attorneys asked him to give to his attorneys. His attorneys then acted as his attorneys in dealing with the SEC. That is very different from the way I heard very intentionally phrased question "give information to be passed on to the SEC" which we all know is what is the defense took -- I don't know how many efforts, and you've slipped in a few questions already today.
> 
> . . . .
> There have been a few questions already slipped in today at odd points which really go back to that formulation, which we all know is a very particular formulation as to whether counsel were merely a conduit or whether they were operating in the way that Mr. Naftalis represented he was acting when he was here in court . . . And I really find it unacceptable to have these repeated attempts to go back to that same subject again.

KL3:2511034.11

Tr. at 11/3/05, at 1989-94. Judge Thompson concluded that Mr. Corigliano "made it clear that his

attorneys were not a mere conduit, as that term is used in the case law." *Id.* at 2000.[4]

Undeterred, Forbes filed a motion to enforce certain previously filed subpoenas

relating to Mr. Corigliano, which Judge Thompson similarly denied. *See* Tr. 11/7/05, at 29-30. In

response to arguments made by Forbes, Judge Thompson stated:

> I think it's pretty clear to me at this point at least, after all this time dealing with
> counsel, that the representations I have been receiving from Kramer Levin have been
> accurate and it's pretty obvious to me at least that Mr. Naftalis, who is quite senior
> from what I can tell, and knows how to structure a representation of a cooperating
> witness to the client's maximum benefit, including how to structure it in such a way
> as to not waive the attorney/client privilege. . . . So I really don't give any credit to
> the suggestions that counsel for the cooperating witnesses have not structured things
> in a way to maximize the effectiveness of their representation of cooperating
> witnesses and that they could not possibly have done the things they said they did
> because it all fits – it all works the way they've presented to me what they have
> done. They've been doing an effective job, skillful and very competent job of
> representing their client.

*Id.* at 30-31.

## II.    FORBES' MOTION FOR LEAVE TO FILE REPETITIVE SUBPOENA DEMANDS SHOULD BE SUMMARILY DENIED AS PROCEDURALLY IMPROPER

A motion for reconsideration must be based on some fact or controlling law that

counsel believes the Court overlooked. *See* D. Conn. L. Civ. R. 7(c). "The standard for granting

such a motion is strict, and reconsideration will generally be denied unless the moving party can

point to controlling decisions or data that the court overlooked – matters, in other words, that might

reasonably be expected to alter the conclusion reached by the court." *Schrader v. CSX Transp.,*

*Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also, e.g., Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144

(2d Cir. 1998); *LoSacco v. City of Middletown*, 822 F. Supp. 870, 876-77 (D. Conn. 1993) (Nevas,

J.) (purpose of reconsideration is "to correct manifest errors of law or fact or to consider newly

---

[4] Further, Judge Thompson noted that it was "not obvious" that Forbes' counsel was making a good faith attempt to follow his orders. Tr. 11/3/05, at 1991.

discovered evidence") (internal quotations omitted), *aff'd*, 33 F.3d 50 (2d Cir. 1994); *United States v. Ocasio*, No. 3:99 CR 200 (CFD), 2005 WL 1489462, *2 (D. Conn. June 20, 2005) (Droney, J.).

Forbes has not even attempted to meet this burden, notwithstanding that the Court's Order specifically made a motion for reconsideration a clear prerequisite to issuing subpoena demands that are the same or substantially similar to demands previously quashed. Accordingly, this Court should summarily reject Forbes' motion to serve new Corigliano-related subpoenas on the ground that it violates the Order as well as Local Rule 7(c).

In addition, those many prior rulings denying Forbes' requests have become the law of the case and Forbes has presented no reason, let alone a compelling reason, for this Court to revisit any of those rulings. Under the law-of-the-case doctrine, the "principle is that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991). Under the second "prong" or "branch" of the law-of-the-case doctrine,[5] this Court *should* adhere to prior rulings in this case "absent cogent or compelling reasons to deviate, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent

---

[5]As the Second Circuit has explained:

> The law of the case doctrine has two branches. The first requires a trial court to follow an appellate court's previous ruling on an issue in the same case. . . . This is the so-called "mandate rule". . . . The second and more flexible branch is implicated when a court reconsiders its own ruling on an issue in the absence of an intervening ruling on the issue by a higher court. It holds "that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case, . . . unless "cogent" and "compelling" reasons militate otherwise. . .

*United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (internal citations and footnote omitted). Here, "in the absence of an intervening ruling on the issue by a higher court," the "second and more flexible branch" is plainly implicated. *Id.*

KL3:2511034.11

manifest injustice." *Uccio*, 940 F.2d at 758 (quotation marks omitted). *See also Quintieri*, 306 F.3d at 1225; *United States v. Tenzer*, 213 F.3d 34, 39-40 (2d Cir. 2000).[6]

Here, considering that Judge Thompson was forced by Forbes to make the same rulings multiple times during the first two trials (including on many occasions after a full record had been developed following Mr. Corigliano's extended examination), and that counsel for Forbes has not attempted to provide this Court with specific reasons to reconsider any of those rulings, *not* adhering to the prior rulings would work a manifest injustice.

## III.    STANDARDS FOR PRODUCTION UNDER RULE 17(C)

### A.    *United States v. Nixon*'s Requirements of Specificity, Admissibility and Relevance

Pursuant to the March 31, 2006 and November 1, 2005 Orders, as well as *United States v. Nixon*, 418 U.S. 683, 697-702 (1974), and the overwhelming majority of lower court case holdings, documents sought pursuant to Rule 17(c) must be "admissible." Nonetheless, Forbes contends instead that "evidentiary use," and not admissibility, is the relevant inquiry under Rule 17(c). *See* Forbes Mem. at 5-6.

---

[6] We expect Forbes will again cite to *United States v. Akers*, 702 F.2d 1145, 1148 (D.C. Cir. 1983), on the law-of-the-case issue. *Akers* is consistent with the Second Circuit's non-compulsory application of the law-of-the-case doctrine outside the appellate context. In addition, the loose language of the majority opinion in *Akers* was both criticized by Judge Mikva, who concurred "only in the result" because he was "troubled by the way in which the majority characterizes the 'law of the case' doctrine," *id.* at 1150, and persuasively rejected by the Ninth Circuit in *United States v. Tham*, 960 F.2d 1391, 1397 n.3 (9th Cir. 1992) (explaining that "despite the dictates of the law of the case doctrine with its implications for deference, consistency, and judicial economy, *Akers* would permit a judge arbitrarily to reverse his own ruling or that of another trial judge in the same case," and further finding that "*Akers* relies upon legal precedents which do not support its position"). The *but see* citation to *Akers* in *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000), where the Second Circuit "assume[ed], without deciding, that the law of the case doctrine . . . applies to mere evidentiary rulings in a second trial of the same case," leaves undisturbed this Circuit's prior and later holdings discussing and applying the discretionary doctrine in a wide variety of contexts. *See id.* (explaining that while the doctrine is "discretionary," it "expresses the general practice of refusing to reopen what has been decided").

KL3:2511034.11

As Judge Thompson noted, *see* Tr. 5/20/04, at 1530-31, the only authority defendant Forbes cites from within this Circuit addressed documents that were at least "potentially admissible." *See United States v. Orena*, 883 F. Supp. 849, 868 (E.D.N.Y. 1995) (government surveillance reports "potentially admissible" under Fed. R. Evid. 803(5) and 803(6)). To the extent *Orena* and/or the other case cited − *United States v. Silverman*, 745 F.2d 1386, 1397 (11th Cir. 1984) − contain language suggesting that Rule 17(c) requires no more than that the materials sought be potentially useful in formulating questions on cross-examination, such language must be rejected as directly at odds with the controlling decisions in *Nixon* and *United States v. Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965), among others, *see* Tr. 5/20/04, at 1530 (where Judge Thompson explained that these cases hold "the document must at the time meet the tests of relevancy and admissibility"), as well as Judge Arterton's recent on-point decision in *United States v. Perez*, No 3:02 Cr. 7 (JBA), at 2 (D. Conn. Apr. 23, 2004) (Ex. F), holding that Rule 17(c) subpoenas for attorney notes of witness proffers are "improper" under *Nixon*, even though they "may lead the defense toward areas to explore on cross examination," because the notes themselves are not admissible.

Forbes also ignores the consistent line of decisions by courts in the Second Circuit holding that Rule 17(c) subpoenas calling for documents that could only be used for impeachment − which describes virtually all of the proposed requests here − fail as a matter of law to satisfy *Nixon*'s admissibility prong. *E.g., United States v. Jasper*, No. 00 Cr. 825 (PKL), 2003 WL 1107526, at *2 (S.D.N.Y. March 13, 2003) ("documents are 'not evidentiary for Rule 17(c) purposes if their use is limited to impeachment'") (quoting *United States v. Cherry*, 876 F. Supp. 547, 553 (S.D.N.Y. 1995)); *United States v. Holihan*, 248 F. Supp. 2d 179, 183 (W.D.N.Y. 2003).

Moreover, under *Nixon*, documents sought by subpoena must be "relevant," *Nixon*, 418 U.S. at 700, which even in the context of impeachment materials requires that the documents sought be relevant to the charges in the indictment. Thus, in *In re Irving*, 600 F.2d 1027 (2d Cir.

10

1979), the Second Circuit held that the union membership applications that defendants sought from non-party counsel to the National Labor Relations Board were properly ordered produced because, primarily, they might have "provide[d] the defendants with a basis for asserting an entrapment defense," and additionally because they might have allowed defendants to directly impeach the key witness with respect to "the transaction underlying the instant indictment." *Id.* at 1034. Similarly, in *United States v. King*, 194 F.R.D. 569, 572-73 (E.D. Va. 2000), the trial court found that the statements contained in the subpoenaed videotape "clearly and directly concerned [the] allegations [in the indictment]."

Beyond admissibility and relevance, *Nixon* also requires specificity. The "mere hope" that a subpoena may turn up something useful is the essence of the improper "fishing expedition" first identified in *Bowman Dairy Co. v. United States*, 341 U.S. 214, 218-21 (1951) (invalidating as improper "fishing expedition" that portion of trial subpoena that requested documents "relevant to the allegations or charges contained in said indictment, whether or not they might constitute evidence with respect to the guilt or innocence of any of the defendants"); *see also United States v. King*, 164 F.R.D. 542, 546 (D. Kan. 1996) ("Rule 17 was not intended to provide the defendant a mechanism by which to troll the waters of the sea's otherwise undiscoverable material in the small hope that something beneficial might rise to the surface."). Of particular relevance to many of the repeat demands here, "[c]ourts have held that requests for an entire file are evidence of an impermissible fishing expedition," *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) (citing cases), and that requests for "*all documents*" relating to broad subject matters also fail to meet the specificity requirement. *United States v. R. W. Prof'l Leasing Servs.*, 228 F.R.D. 158, 163 (E.D.N.Y. 2005) (Spatt, J.) (finding demands such as "[a]*ll documents* relating or referring to [defendant's] reserve accounts" to be "overbroad and totally unreasonable") (emphasis added).

**B.     Rule 17(c) Cannot Be Used to Obtain Extrinsic
Evidence That Is Inadmissible for Collateral Impeachment**

As Judge Thompson found many times, the admissibility and relevancy requirements

mean that Rule 17(c) subpoenas may not properly be used to obtain documents to impeach a

witness on collateral matters or to impeach his character for truthfulness.[7]  To the extent Forbes

hopes to offer documents such as our retainer agreement or other extrinsic evidence to impeach Mr.

Corigliano by *contradicting* his prior testimony on cross-examination, they would be barred under

the well-established rule that "a party may not present extrinsic evidence to impeach a witness by

contradiction on a collateral matter." *United States v. Beauchamp*, 986 F.2d 1, 3 (1st Cir. 1993).[8]

Critically, this "collateral issue rule" requires that "in order to be admissible," extrinsic evidence

(including documents[9]) "must not only contradict a statement of the [witness], but must also be

material to [the defendant's] guilt or innocence." *United States v. Mulinellli-Navas*, 111 F.3d 983,

988-89 (1st Cir. 1997) (Torruella, C.J.).[10]

---

[7] *See, e.g.,* Kidney Ruling at 3-4 (Ex. E); Gonedes Ruling at 3 (Ex. C).

[8] *Accord Walker v. Firestone Tire & Rubber Co.*, 412 F.2d 60, 63 (2d Cir. 1969) (noting "well settled" rule that an opposing party may "ask questions" but "is not permitted to adduce extrinsic evidence that a witness lied on a previous occasion"); *United States v. Perez-Perez*, 72 F.3d 224, 227 (1st Cir. 1995) ("extrinsic evidence to impeach is only admissible for contradiction where the prior testimony being contradicted was itself material to the case at hand"); *United States v. Tarantino*, 846 F.2d 1384, 1409 (D.C. Cir. 1988) ("the 'specific contradiction' rule . . . states that 'a witness may not be impeached by extrinsic evidence (contradiction by another witness or evidence) on a collateral issue'"). *See generally* 4 *Weinstein's Federal Evidence* § 608.20[3][a] at 608-37 - 608-39 (2d ed. 2003).  The purpose of the rule is obvious – to prevent trials within the trial or "detour[s] into [] essentially irrelevant episode[s]." *United States v. Innamorati*, 996 F.2d 456, 479-80 (1st Cir. 1993).

[9] *See* Wright et al., 28 *Fed. Prac. & Proc.* § 6117 (2004).

[10] *Mulinelli-Navas* is directly on point here.  In that case, the defendant attempted to impeach a government cooperating witness with extrinsic evidence that the witness lied on the stand about what he had said in a prior interview.  *Id.* at 988.  The district court precluded the cross-examination, and the Court of Appeals found that this was a proper exercise of its discretion as the proposed extrinsic evidence "was relevant only to [the cooperating witness's] credibility on a matter immaterial to [the defendant's] guilt."  *Id.* at 989. *Accord United States v. Marino*, 277 F.3d 11, 24

Nor would extrinsic evidence be admissible under Fed. R. Evid. 613(b) to prove a prior inconsistent statement by a witness unless the allegedly inconsistent statement contained in those documents is "material" and not collateral. *See United States v. Bolzer*, 367 F.3d 1032, 1038-39 (8th Cir. 2004); 4 *Weinstein's Federal Evidence* § 613.05[1], at 613-14 (2003) (Rule 613(b) permits extrinsic evidence where "relevant" or "material" but not on "collateral matters"). Because nearly all of the information sought by Forbes' subpoenas is collateral and not relevant to the charges against him, this Court has broad discretion to preclude impeachment by extrinsic evidence, even if the extrinsic evidence is a prior inconsistent statement. *Cf. Mulinelli-Navas*, 111 F.3d at 988 ("The inquiry into what is collateral is squarely within the trial court's discretion.") (citing *United States v. Kozinski*, 16 F.3d 795, 806 (7th Cir. 1994)).[11]

### C.    Forbes Continues to Argue for a Non-Existent "Opened the Door" Exception to the Collateral Impeachment Rule

Resuscitating an argument that Judge Thompson rejected in the prior trials, Forbes continues to claim that there is a sweeping exception to the no collateral impeachment rule when a witness "opens the door." *See* Forbes Mem. at 9-11. But the cases Forbes principally relies on involved *testifying defendants* (not cooperating witnesses) who offered a broad disclaimer of misconduct – essentially denying that they engaged in the charged crimes or any conduct that was remotely similar – which, if true, would have exonerated the defendants from the charged crimes and thus could not be left unchallenged. In each case, the government was permitted to impeach the

---

(1st Cir. 2002) (district court properly excluded extrinsic evidence offered to impeach government's primary witness where that evidence "was not relevant to [the defendant's] guilt or innocence").

[11] Use of a Rule 17(c) subpoena for impeachment materials is also improper to the extent any documents or other extrinsic evidence would be offered to attack Mr. Corigliano's *character for truthfulness*, because admission of such evidence would be barred by Fed. R. Evid. 608(b). That rule bars evidence "'designed to show that the witness has done things, unrelated to the suit being tried, that make him more or less believable per se.'" Fed. R. Evid. 608(b), Advisory Committee Note, 2003 Amendments (quoting *United States v. Fusco,* 748 F.2d 996, 998 (5th Cir. 1984)).

13

defendant's blatantly perjurious testimony.[12]  Here, of course, far from issuing any blanket denial of

wrongdoing, Mr. Corigliano has fully and repeatedly admitted his criminal conduct.  Nor does his

prior testimony constitute a broad disclaimer of misconduct of the type that Courts have allowed

prosecutors to impeach with extrinsic evidence.

          Citing *United States v. Wallach*, 935 F.2d 445 (2d Cir. 1991), and *United States v.*

*Seijo*, 514 F.2d 1357 (2d Cir. 1975), Forbes further claims that "Second Circuit precedent makes

clear that this principle applies to witnesses with equal force as to defendants."  Forbes Mem. at 10.

But these cases do not address the open-the-door argument or cite to or draw on any of the other

cases Forbes cites for this point.  Instead, they deal with the very different issue of when a

cooperating witness' proven perjury warrants the granting of a new trial – and apply the standard

that a new trial is warranted only where, had the jury been aware of the perjury, "it probably would

have acquitted the defendants."  *Wallach*, 935 F.2d at 458.  These cases also do not in any way

discuss Rule 17(c) or purport to create new avenues for third-party discovery in a criminal case.[13]

---

[12]  *See, e.g., Walder v. United States*, 347 U.S. 62, 64 (1954) (defendant charged with selling narcotics who testified that he had never purchased, sold or possessed any narcotics impeached by evidence of prior possession of heroin); *United States v. Bufalino*, 683 F.2d 639, 647 (2d Cir. 1982) (where defendant charged with conspiracy to violate civil rights and obstruction of justice arising from plan to murder witness testified that his acquaintance with alleged Mafia hit-man was based on "chance meetings," "it became proper for the government to impeach him by introducing evidence of [his] longstanding relationship with La Cosa Nostra . . . . since without this evidence it was unlikely that the jury would believe that [the Mafia hit-man] would agree to commit the crime"); *United States v. Benedetto*, 571 F.2d 1246, 1250 (2d Cir. 1978) (defendant charged with bribery who testified that the never took bribes impeached with evidence of prior bribes); *United States v. Cuadrado*, 413 F.2d 633 (2d Cir. 1969) (defendant charged with selling narcotics who testified that he had never dealt with narcotics except on one instance and did not intend to derive personal benefit impeached by evidence of heroin sale).

[13]  Courts have long held that Rule 17(c) subpoenas "cannot be used as a means of circumventing Rule 16's limits on discovery in a criminal case." *United States v. Brown*, 95 CR 168, 1995 WL 387698, at *9 (S.D.N.Y. June 30, 1995). *See also United States v. De Yian*, No. 94 Cr. 719, 1995 WL 614563, at *1 (S.D.N.Y. Oct. 19, 1995) ("Having received the benefits of Rule 16(a)(1), further discovery is barred by Rule 16(a)(2), and that bar cannot be circumvented by the service of a Rule 17(c) subpoena."). Indeed, it is well-established that Rule 17(c) subpoenas calling for documents including or reflecting witness statements, impeachment material, plea negotiations, and settlement

14

Moreover, as Judge Thompson also noted in prior rulings, Forbes has repeatedly "failed to demonstrate" that Mr. Corigliano "gave perjured testimony" during the first and second trial, *see* Ruling on Government's Pre-Retrial Motion No. 1, at 5, and the type of collateral impeachment that Forbes continues to pursue does not even come close to the sort of impeachment by proof of perjury that could have made the difference between conviction and acquittal in cases like *Wallach* (where the cooperator falsely testified on direct examination by the government that he had not gambled in the year prior to the trial and had stopped gambling at the behest of prosecutors) and *Seijo* (where the cooperator falsely maintained on the stand that he did not have any criminal record in his adult life). *See* 935 F.2d at 455; 514 F.2d at 1364.[14]

### D.    The Court May Also Exclude Cumulative, Unnecessary and Therefore Inadmissible Evidence

Judge Thompson ruled that Forbes may seek by Rule 17(c) subpoena documents that are admissible evidence of a witness' bias, including admissible evidence showing the extent to which a cooperating witness has received any benefits from the government. *See, e.g.,* Kidney Ruling at 2 (Ex. E) (*citing United States v. Harvey*, 547 F.2d 720, 722 (2d Cir. 1976)). However,

---

discussions should be decided with reference to, and in harmony with, the array of rules, statutes and decisions carefully governing and limiting the scope and timing of the disclosure, as well as the admissibility of these important categories of evidence. *See, e.g.,* Fed. R. Crim. P. 17(h) ("No party may subpoena a statement of a witness or of a prospective witness under this rule."); *United States v. Beckford*, 964 F. Supp. 1010, 1031 (E.D. Va. 1997) ("Rule 17(c) subpoena duces tecum is improper where it calls for the production of *Brady*, Jencks or *Giglio* material.").

[14] Forbes' citation to *Rosario v. Kuhlman*, 839 F.2d 918 (2d Cir. 1988), both acknowledges the collateral impeachment rule, *see* Forbes Mem. at 9, and highlights one of the central flaws with virtually all of Forbes' Rule 17(c) demands – i.e., that they seek evidence that is not even close to relating to a *non-collateral* issue. The problem that led to reversal in *Rosario* was that the defendant was precluded from introducing extrinsic evidence in the form of testimony that directly contradicted the government's sole eyewitness on his "claim to be a witness to the crime" of robbery-homicide. 839 F.2d at 926. Here, in stark contrast, Forbes seeks to use Rule 17(c) subpoenas improperly to obtain extrinsic evidence that he speculates might contradict Mr. Corigliano, *not* on any of his statements relating to the crimes of which Forbes is accused, but instead on plainly collateral issues such as the values of Mr. Corigliano's family's assets. This is precisely what the collateral impeachment rule is designed to prevent.

KL3:2511034.11

the right to introduce such evidence – and thus the subsidiary right under Rule 17(c) to attempt to gather it – is not unlimited.

Where, as here, the jury will possess "sufficient information concerning formative events to make a 'discriminating appraisal' of a witness's motives and bias," the district court has ample discretion under Rule 403 to exclude additional extrinsic evidence on those same issues. *United States v. Blackwood*, 456 F.2d 526, 530 (2d Cir. 1972) (explaining that "[a] defendant's right to elicit such [bias] evidence . . . is not boundless, but is subject to reasonable limitations imposed by the trial judge in the exercise of sound discretion").[15]  Moreover, as Judge Thompson explained many times in quashing Forbes' improper demands during the 2004 trial, rote incantations of "bias" and "benefit" by clever but disingenuous lawyers cannot and should not become a broad exception that swallows the no-impeachment-with-extrinsic-evidence rule or facilitates fishing expeditions into the minutiae of a witness' personal affairs. *See, e.g.*, Nov. 1, 2005 Order at 6 (Ex. A).

## IV.  FORBES CONTINUES TO RELY ON SELF-CREATED FICTIONAL VIOLATIONS OF MR. CORIGLIANO'S OBLIGATIONS TO THE GOVERNMENT

Beyond its procedural and legal defects, much of Forbes' submission here proceeds on false factual premises.  Without even acknowledging Judge Thompson's prior rulings to the contrary, Forbes contends that he is entitled to boundless discovery from the government and Mr. Corigliano to pursue his theory – based on unilateral interpretations of Mr. Corigliano's plea agreement and SEC settlement not shared by any of the actual parties to those agreements – that Mr.

---

[15] This is particularly so where such evidence would be likely to confuse and distract the jury vis-à-vis the real issues and defendants on trial. *See United States v. Gomes*, 177 F.3d 76, 81 (1st Cir. 1999) (agreeing that while certain extrinsic evidence might show "bias," "the trial judge had discretion to exclude such an excursion into extrinsic evidence that would distract the jury from the main issues" in this case). *Accord United States v. Weiss*, 930 F.2d 185, 198 (2d Cir. 1991) (finding no error in the exclusion, as cumulative, of extrinsic evidence of prosecution witness's bias where defense counsel already caused the witness to "admit [ ] to the main circumstances from which any bias supposedly arose, "[a]ll the relevant information was obtained[,] and there is no evidence that the testimony would have added anything of probative value") (internal citation omitted).

16