# EXHIBIT K

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------- x
UNITED STATES OF AMERICA                 :
                                         :
            v.                           :  No. 3:02CR264 (AWT)
                                         :
WALTER A. FORBES,                        :  October 20, 2005
                                         :
            Defendant.                   :
---------------------------------------- x

REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION
OF NON-PARTIES COSMO CORIGLIANO AND
KRAMER LEVIN NAFTALIS & FRANKEL LLP TO QUASH
RULE 17(C) SUBPOENAS AND FOR REMEDIAL RELIEF

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Gary P. Naftalis
Alan R. Friedman
Eric A. Tirschwell
J. Wells Dixon
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100

-and-

JACOBS, GRUDBERG, BELT & DOW, P.C.
Ira B. Grudberg
350 Orange Street
New Haven, Connecticut 06511
(203) 772-3100

Attorneys for Cosmo Corigliano

**ORAL ARGUMENT REQUESTED**

KL3:2471699.2

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iii

Introduction .............................................................................................................................. 1

I. FORBES CANNOT IGNORE THE "LAW OF THE CASE" DOCTRINE AND DOES NOT EVEN ATTEMPT TO MEET THE APPLICABLE STANDARD FOR RECONSIDERATION .................................................................................................. 2

II. FORBES' ABUSIVE APPROACH TO REISSUING AND RELITIGATING RULE 17(C) SUBPOENAS CANNOT BE JUSTIFIED BY HIS NEED TO PRESERVE THE RECORD FOR APPEAL ........................................................ 4

III. FORBES CONTINUES TO ARGUE FOR A NON-EXISTENT "OPENED-THE-DOOR" EXCEPTION TO THE COLLATERAL IMPEACHMENT RULE ..................... 7

IV. DUPLICATIVE DEMANDS: FORBES FAILS TO PROVIDE ANY BASIS FOR THE COURT TO REVERSE ITS PRIOR RULINGS AND ALSO FAILS TO SATISFY THE *NIXON* CRITERIA OF RELVANCY, SPECIFICITY AND ADMISSIBILITY ........................................................................................................... 9

    A. Renewal Demands (Including Forbes III(F)(2), P.39) .......................................... 10

    B. Retainer Paid to Kramer Levin (Forbes III(K), P. 44) ......................................... 11

    C. Retainer Paid to Fried Frank (Forbes III(L), P. 46) .............................................. 12

    D. Kramer Levin Billing Records Provided to Cendant (Forbes III(M), P. 46) ......... 12

    E. Alleged Agreements with the SEC Concerning Expenditures and the Retainers (Forbes III(G), P. 40) ........................................................................... 13

    F. The Coriglianos' Expenditures Between April and July 2004 (Forbes III(B), P. 29) ......................................................................................................... 14

    G. The Coriglianos' SEC Affidavit (Forbes III(F)(1), P. 36) ..................................... 14

    H. Documents Exchanged and Communications with the Government and/or Cendant (Forbes III(C), P. 30) ............................................................................ 15

    I. Subpoena Exhibits A-V (Forbes III(C), P.30) ..................................................... 15

    J. Communications Between Mr. Corigliano and Kramer Levin Between April 1998 and January 2000 (Forbes III(N), P. 46) ........................................... 16

|   |     |                                                                                                                                                      |     |
|---|-----|------------------------------------------------------------------------------------------------------------------------------------------------------|-----|
|   | K.  | Polygraph-Related Demands (Forbes III(O), P. 52)                                                                                                     | 16  |
|   | L.  | Documents Concerning "Benefits" from Cooperation (Forbes III(P), P. 52)                                                                              | 19  |
|   | M.  | Connecticut Board of Accountancy (Forbes III(Q), P. 53)                                                                                              | 19  |
|   | N.  | Budget and Living Expense Information and Other Financial Information Mr. Corigliano Provided to His Counsel (Forbes III(D), P. 33)                  | 20  |
| V.| FORBES' NEW DEMANDS ALSO FAIL TO MEET THE *NIXON* CRITERIA                                                                                                 |     | 20  |
|   | A.  | Post-2004 Trial Communications Relating to the Government and Benefits (Forbes III(R), P. 54)                                                        | 20  |
|   | B.  | Date of Meetings with the Government (Forbes III(H), P. 41)                                                                                          | 21  |
|   | C.  | Credit Card and Loan Applications (Forbes III(S), P. 56)                                                                                             | 21  |
|   | D.  | Crystal Journey Candles Documents (Forbes III(T), P. 56)                                                                                             | 21  |
|   | E.  | 2000-2003 Property Taxes (Forbes III(U), P. 57)                                                                                                      | 22  |
|   | F.  | September 2003 Asset Information (Forbes III(E), P. 36)                                                                                              | 23  |
|   | G.  | Legal Fees Advanced by Cendant (Forbes III(I), P.42)                                                                                                 | 23  |
|   | H.  | Receiver Documents (Forbes III(J), P. 43)                                                                                                            | 24  |
| CONCLUSION |                                                                                                                                                       || 25  |

# TABLE OF AUTHORITIES

## CASES

*Bankers Ins. Co. v. Florida Dep't of Ins. and Treasurer,*
  755 So. 2d 729 (Fla. Dist. Ct. App. 2000)..................................................................18 n.9

*Brown v. State,*
  448 N.E.2d 10 (Ind. 1983).............................................................................................18 n.9

*Carmona v. State,*
  941 S.W.2d 949 (Tex. Ct. Crim. App. 1997) ...............................................................18 n.9

*Christianson v. Colt Industries Operating Corp.,*
  486 U.S. 800 (1988).............................................................................................................4

*Cleveland v. Cleveland Elec. Illuminating Co.,*
  538 F. Supp. 1328 (N.D. Ohio 1981).................................................................................3

*Eversole v. Butler County Sheriff's Office,*
  No. C-1-99-789, 2001 WL 1842461 (S.D. Ohio Aug. 7, 2001)................................18 n.9

*North River Insurance Co. v. Philadelphia Reinsurance Corp.,*
  63 F.3d 160 (2d Cir. 1995)..................................................................................................4

*People v. Marcy,*
  283 N.W.2d 754 (Mich. Ct. App. 1979).......................................................................18 n.9

*Rosario v. Kuhlman,*
  839 F.2d 918 (2d Cir. 1988)............................................................................................9 n.5

*State v. Juarez,*
  570 A.2d 1118 (R.I. 1990) ...............................................................................................18 n.9

*State v. Post,*
  32 Ohio St. 3d 380 (1987)................................................................................................18 n.9

*State v. Rickabaugh,*
  361 N.W.2d 623 (S.D. 1985)...........................................................................................18 n.9

*United States Postal Serv. v. Phelps Dodge Refining Corp.,*
  852 F. Supp. 156 (E.D.N.Y. 1994)..................................................................................18 n.9

*United States v. Akers,*
  702 F.2d 1145 (D.C. Cir. 1983) .......................................................................................3 n.2

*United States v. Benedetto*,
  571 F.2d 1246 (2d Cir. 1978) ..................................................................................8 n.4

*United States v. Bufalino*,
  683 F.2d 639 (2d Cir. 1982) ....................................................................................8 n.4

*United States v. Cuadrado*,
  413 F.2d 633 (2d Cir. 1969) ....................................................................................8 n.4

*United States v. Giampa*,
  No. S 92 CR 437 (PKL), 1992 WL. 296440 (S.D.N.Y. Oct. 7, 1992) ..........................22 n.13

*United States v. Leaver*,
  358 F. Supp. 2d 273 (S.D.N.Y. 2005) .........................................................................22 n.13

*United States v. Nektalov*,
  No. S 203 CR 828 (PKL), 2004 WL. 1574721 (S.D.N.Y. July 14, 2004) ....................22 n.13

*United States v. Orena*,
  883 F. Supp. 849 (E.D.N.Y. 1995) ..............................................................................22 n.13

*United States v. Palmer*,
  122 F.3d 215 (5th Cir. 1997) ......................................................................................5, 6

*United States v. Quintieri*,
  306 F.3d 1217 (2d Cir. 2002) .....................................................................................2 n.1, 3

*United States v. Seijo*,
  514 F.2d 1357 (2d Cir. 1975) .....................................................................................8, 9

*United States v. Tenzer*,
  213 F.3d 34 (2d Cir. 2000) ..........................................................................................2, 3

*United States v. Tham*,
  960 F.2d 1391 (9th Cir. 1992) ....................................................................................3 n.2

*United States v. Todd*,
  920 F.2d 399 (6th Cir. 1990) ......................................................................................3, 4, 6

*United States v. Uccio*,
  940 F.2d 753 (2d Cir. 1991) .......................................................................................3, 4

*United States v. Wallach*,
  935 F.2d 445 (2d Cir. 1991) .......................................................................................8, 9

*United States v. Weissman,*
   No. 01 CR 529, 2002 WL 31875410 (S.D.N.Y. Dec. 26, 2002) ................... 22 n.13

*United States v. Williams,*
   205 F.3d 23 (2d Cir. 2000) ................................................................. 3 n.2

*Walder v. United States,*
   347 U.S. 62 (1954) .......................................................................... 8 n.4

## STATUTES

Fed. R. Crim. P. 16 ........................................................................... 14, 15

Fed. R. Crim. P. 16(a)(1)(E) ................................................................... 14

Fed. R. Crim. P. 17(c) ....................................................................... *passim*

Fed. R. Evid. 608(b) ............................................................................. 17

Fed. R. Evid. 613(a) ............................................................................. 17

## Introduction

Nothing in Forbes' 58-page opposition memorandum refutes our arguments that: (1) under the law of the case doctrine, this Court *should* follow its prior rulings absent "cogent or compelling reasons" to deviate; (2) Forbes provides no such "cogent and compelling" reasons and, indeed, consistently refuses even to acknowledge the Court's prior decisions; (3) Forbes' purported "new" demands fail to satisfy the requirements of relevancy, specificity and admissibility; and (4) the latest round of subpoenas continues the unprecedented assault on our attorney-client relationship in an effort improperly to gain access to Mr. Corigliano's attorneys' confidential and privileged materials.

Instead of responding on the merits to most of our category-by-category arguments as to why his subpoena demands are repetitive and/or improper, Forbes attempts to distract and further divert the Court and its processes by claiming that he was "required" to re-serve all of his prior demands and litigate their validity as if the first trial had never occurred in order to preserve his record for appeal, and that he is entitled to make 17 extra pages of substantive arguments in support of his subpoena demands in secret (i.e., *ex parte* and under seal) and outside the testing of the adversarial process on the mere assertion that he might otherwise reveal his "trial strategy." As we show below, and as we argued in a separate opposition memorandum (dated October 19, 2005) opposing Forbes' application to submit a supplemental memorandum *ex parte* and under seal, Forbes' position is legally and factually unjustified.

In the end, we respectfully submit that the consistent truths here are that Forbes continues to abuse the Rule 17(c) power, that all of his latest improper demands should be

- 1 -

KL3:2471699.2

quashed, and that a remedial procedure imposed by the Court is required to ensure that this continuing subversion of the legal process is brought under control as the retrial progresses.

I. **FORBES CANNOT IGNORE THE "LAW OF THE CASE" DOCTRINE AND DOES NOT EVEN ATTEMPT TO MEET THE APPLICABLE STANDARD FOR RECONSIDERATION**

In his failed attempt to avoid the foundational principle of judicial economy common to both the "law of the case" and reconsideration doctrines that should defeat the overwhelming number of his demands, Forbes begins by mischaracterizing our position, claiming – incorrectly – that we argued that this Court "must adhere" to or is "bound by" its prior rulings. Forbes Opp'n at 11. As our opening brief makes perfectly clear, what we actually said was that under the second "prong" or "branch" of the law of the case doctrine,[1] this Court *should* adhere to its prior rulings "absent cogent or compelling reasons to deviate, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Amended Motion at 10 (quoting *United States v. Uccio*, 940 F.2d 753, 758 (2d Cir. 1991)). This is the law in the Second Circuit, discussed and applied in criminal

---

[1] As the Second Circuit has explained:

> The law of the case doctrine has two branches. The first requires a trial court to follow an appellate court's previous ruling on an issue in the same case.... This is the so-called "mandate rule."  .... The second and more flexible branch is implicated when a court reconsiders its own ruling on an issue in the absence of an intervening ruling on the issue by a higher court. It holds "that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case, ... unless "cogent" and "compelling" reasons militate otherwise....

*United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (internal citations and footnote omitted). Here, "in the absence of an intervening ruling on the issue by a higher court," the "second and more flexible branch" is plainly implicated and is what we argued and quoted in our opening brief.

as well as civil cases. *See, e.g., Uccio*, 940 F.2d at 758; *Quintieri*, 306 F.3d at 1225; *United States v. Tenzer*, 213 F.3d 34, 39-40 (2d Cir. 2000).[2]

On this point Forbes' critique of our reliance on *Cleveland v. Cleveland Elec. Illuminating Co.*, 538 F. Supp. 1328 (N.D. Ohio 1981), in light of the Sixth Circuit's subsequent decision in *United States v. Todd*, 920 F.2d 399 (6th Cir. 1990), is curious at best. While *Todd* affirmed a district court's decision, following a mistrial, not to follow a prior judge's evidentiary ruling, it cited *Cleveland* approvingly for the proposition that "the law-of-the-case doctrine can be applied to rulings made in a case that ends in a mistrial," explaining:

> Otherwise, a court would be required to rule *de novo* on every issue previously decided in a prior proceeding that ends in a mistrial. . . . This would be inefficient, particularly when the previous trial had progressed considerably. In such a case the law-of-the-case doctrine would prove useful. A court may recognize and enforce prior rulings based on this doctrine, but also retains the power to reconsider previously decided issues as they arise in the context of a new trial.

*Id.* at 404 (internal citations omitted).

---

[2] Forbes' reliance on *United States v. Akers*, 702 F.2d 1145, 1148 (D.C. Cir. 1983), is also misplaced. There, the court rejected a defendant's law-of-the-case argument as to a prior evidentiary ruling, finding that "the fact that the photographs were admitted in the first trial does not *compel* their admission in the new trial." *Id.* (emphasis added). This is consistent with the Second Circuit's non-compulsory application of the law-of-the-case doctrine outside the appellate context. In addition, the loose language of the majority opinion in *Akers* was both criticized by Judge Mikva, who concurred "only in the result" because he was "troubled by the way in which the majority characterizes the 'law of the case' doctrine," *id.* at 1150, and persuasively rejected by the Ninth Circuit in *United States v. Tham*, 960 F.2d 1391, 1397 n.3 (9th Cir. 1992) (explaining that "despite the dictates of the law of the case doctrine with its implications for deference, consistency, and judicial economy, *Akers* would permit a judge arbitrarily to reverse his own ruling or that of another trial judge in the same case," and further finding that "*Akers* relies upon legal precedents which do not support its position").

The *but see* citation to *Akers* in *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000), where the Second Circuit "assume[ed], without deciding, that the law of the case doctrine . . . applies to mere evidentiary rulings in a second trial of the same case," leaves undisturbed this Circuit's prior and later holdings discussing and applying the discretionary doctrine in a wide variety of contexts. *See id.* (explaining that while the doctrine is "discretionary," it "expresses the general practice of refusing to reopen what has been decided").

Forbes similarly misses the mark in his rejoinder to our citation to *North River Insurance Co. v. Philadelphia Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995), for the proposition that on a retrial a court "should be 'loathe' to revisit an earlier decision 'in the absence of extraordinary circumstances.'" (Citation omitted.) While *North River* did not itself involve a retrial, the quoted language comes from *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 816-17 (1988), a leading Supreme Court case explaining that the law of the case doctrine "promotes the finality and efficiency of the judicial process by 'protecting against the agitation of settled issues'" and thus, while it does not deprive a court of the "power to revisit prior decisions of its own," "as a rule[,] courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" (Citation omitted.) This *Christianson* rule has specifically been relied on in the criminal mistrial/retrial context in the very case Forbes highlights, *see Todd*, 920 F.2d at 403, and its "clear error" and "manifest injustice" benchmarks are fully consistent with the Second Circuit's application of the doctrine in criminal cases such as *Uccio*, 940 F.2d at 758, and *Tenzer*, 213 F.3d at 39 (explaining that "cogent or compelling reasons" "justifying reconsideration" include "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice") (internal quotations and citations omitted).

## II. FORBES' ABUSIVE APPROACH TO REISSUING AND RELITIGATING RULE 17(C) SUBPOENAS CANNOT BE JUSTIFIED BY HIS NEED TO PRESERVE THE RECORD FOR APPEAL

Forbes' argument that he was "required" to re-serve his multiple subpoenas in order to preserve the record on appeal is an exercise in misdirection. We of course take no issue with the proposition that – notwithstanding his prior duplicative demands and the Court's prior rulings quashing almost all of the demands for these same categories of documents – Forbes is

entitled to preserve the record for an appeal following the retrial. What we do take issue with is the manner in which he has gone about this – i.e., serving some 18 "new" subpoenas calling in the bulk of instances for documents to which the Court previously ruled (sometime on multiple occasions) he was not entitled, without in any way: (a) acknowledging the Court's prior rulings, (b) stating some basis for reconsideration, or (c) making it clear that the renewed demands were for purposes of preserving the record on appeal and not because of some new facts or law or arguments overlooked or not considered by the Court the first time around. This approach improperly shifted the burden to us to move to quash and to anticipate any new arguments that might be made.

We have little doubt that, had Forbes made his preserving the record intentions clear, the government would have stipulated or the Court otherwise could have facilitated an orderly and efficient procedure whereby Forbes' prior Rule 17(c) demands and arguments could have been deemed re-made and preserved without forcing the Court to sift through the hundreds of pages of briefing that we (among other non-parties) have been forced to file without knowing what if any new arguments are being raised. In other words, Forbes' counsel (no stranger to in limine practice and never bashful about suggesting procedures) could have taken a proactive approach instead of choosing simply to re-serve scores of identical or near-identical document demands, setting in motion an enormously burdensome process without even consulting with the Court or the other affected individuals.[3]

Forbes' citation to *United States v. Palmer*, 122 F.3d 215 (5th Cir. 1997), is particularly instructive in this regard. *Palmer* involved a mistrial and then a retrial. Prior to the

---

[3] Forbes' statement that he was not required to meet and confer, *see* Forbes Opp'n at 6, only reinforces that he continues to have no interest in attempting to resolve or narrow issues in the orderly manner that is common and expected practice in subpoena motion practice.

retrial, Palmer's counsel responsibly inquired whether "motions previously filed" and the court's rulings on those motions "carry into this trial." *Id.* at 220. The court responded by saying: "I don't think that's a safe assumption." *Id.* Notwithstanding the court's express direction, defense counsel failed to renew a severance motion that had been made prior the first trial (and was denied). After being convicted at the retrial, Palmer attempted to raise on appeal the denial of the severance motion prior to the first trial, arguing that the law of the case doctrine "saves her from procedural default" and citing the Sixth Circuit's *Todd* decision.

In rejecting that argument, the Fifth Circuit agreed with the *Todd* decision that "a trial court *may*, following a mistrial, apply its prior rulings to a retrial, but it is not required to do so." *Id.* at 221 (emphasis in original). But the court went on to explain that:

> Here, the trial judge told Palmer it was not safe to assume that the court would recognize all of its previous rulings. Thus, Palmer was on notice that the trial court was not going to apply the law-of-the-case doctrine to preserve her previous objections. Accordingly, Palmer had an obligation to reassert her severance motion in a timely fashion if she wished to preserve error.

*Id.*

Far from justifying Forbes' approach here, *Palmer* is really beside the point. This Court did not oblige Forbes' counsel to re-serve their multitude of previously quashed subpoena demands without making any good-faith efforts to approach the issue in an orderly and efficient manner that would have recognized the areas in which the Court previously ruled and pointed out any proper bases for reconsideration. Our proposed remedy simply asks the Court to put in place a reasonable, rational and orderly procedure going forward, which would allow Forbes to both preserve his record with respect to repeat demands and make reasonable new demands in good-faith, but also would prevent him from forcing the Court and the non-parties to re-address

issues that were presented and resolved during the 2004 trial without at least explaining first what (if anything) is different and what could justify the Court's revisiting its prior decisions.

Indeed, Forbes' opposition to our motion to quash underscores the need for some remedy to force Forbes' counsel to acknowledge and address what has already happened in this case. As we detail below, with respect to a substantial number of categories of document demands, relating to such familiar topics as Kramer Levin billing records, communications with and documents exchanged between Mr. Corigliano and the government or Cendant, alleged undisclosed agreements with the SEC, and the crime-fraud exception, Forbes simply acts as if the issues were never addressed (yet does not dispute our recitations showing that they were), repeats his same arguments (often *in haec verba*), and makes no effort to explain why a different ruling should obtain now. Absent some intervention by the Court, Forbes no doubt will continue to burden the Court and disrupt the progress of the trial with repetitive applications for materials (and perhaps witnesses) as to which (and whom) the Court has already made its views clearly known.

### III. FORBES CONTINUES TO ARGUE FOR A NON-EXISTENT "OPENED THE DOOR" EXCEPTION TO THE COLLATERAL IMPEACHMENT RULE

Resuscitating an argument that Court rejected in the prior trial, Forbes also claims that there is a sweeping exception to the no collateral impeachment rule when a witness "opens the door." Forbes Opp'n at 24-27. But as we argued during the last trial, the cases he principally relies on involved *testifying defendants* (not cooperating witnesses) who offered a broad disclaimer of misconduct — essentially denying that they engaged in the charged crimes or any conduct that was remotely similar — which, if true, would have exonerated the defendants from the charged crimes and thus could not be left unchallenged. In each case, the government was

- 7 -

KL3:2471699.2

permitted to impeach the defendant's blatantly perjurious testimony.[4] Here, of course, far from issuing any blanket denial of wrongdoing, Mr. Corigliano has fully and repeatedly admitted his criminal conduct. Nor does his prior testimony constitute a broad disclaimer of misconduct of the type that Courts have allowed prosecutors to impeach with extrinsic evidence.

Citing *United States v. Wallach*, 935 F.2d 445 (2d Cir. 1991), and *United States v. Seijo*, 514 F.2d 1357 (2d Cir. 1975), Forbes now claims that "Second Circuit precedent makes clear that this principle applies to witnesses with equal force as to defendants." Forbes Opp'n at 25. But the cited cases do not address the open-the-door argument or cite to or draw on any of the other cases Forbes cites for this point. Instead, they deal with the very different issue of when a cooperating witness' proven perjury warrants the granting of a new trial – and apply the standard that a new trial is warranted only where, had the jury been aware of the perjury, "it probably would have acquitted the defendants." *Wallach*, 935 F.2d at 458 Here, however, as the Court recently noted, Forbes has repeatedly "failed to demonstrate" that Mr. Corigliano "gave perjured testimony" during the first trial, *see* Ruling on Govt's. Pre-Retrial Motion No. 1, at 5, and the type of collateral impeachment that Forbes continues to pursue does not even come close to the sort of impeachment by proof of perjury that could have made the difference between

---

[4] *See Walder v. United States*, 347 U.S. 62, 64 (1954) (defendant charged with selling narcotics who testified that he had never purchased, sold or possessed any narcotics impeached by evidence of prior possession of heroin); *United States v. Bufalino*, 683 F.2d 639, 647 (2d Cir. 1982) (where defendant charged with conspiracy to violate civil rights and obstruction of justice arising from plan to murder witness testified that his acquaintance with alleged Mafia hit-man was based on "chance meetings," "it became proper for the government to impeach him by introducing evidence of [his] longstanding relationship with La Cosa Nostra . . . . since without this evidence it was unlikely that the jury would believe that [the Mafia hit-man] would agree to commit the crime"); *United States v. Benedetto*, 571 F.2d 1246, 1250 (2d Cir. 1978) (defendant charged with bribery who testified that the never took bribes impeached with evidence of prior bribes); *United States v. Cuadrado*, 413 F.2d 633 (2d Cir. 1969) (defendant charged with selling narcotics who testified that he had never dealt with narcotics except on one instance and did not intend to derive personal benefit impeached by evidence of heroin sale).

- 8 -

KL3:2471699.2

conviction and acquittal in cases like *Wallach* (where the cooperator falsely testified on direct examination by the government that he had not gambled in the year prior to the trial and had stopped gambling at the behest of prosecutors) and *Seijo* (where the cooperator falsely maintained on the stand that he did not have any criminal record in his adult life). *See* 935 F.2d at 455; 514 F.2d at 1364.[5]

## IV. DUPLICATIVE DEMANDS: FORBES FAILS TO PROVIDE ANY BASIS FOR THE COURT TO REVERSE ITS PRIOR RULINGS AND ALSO FAILS TO SATISFY THE *NIXON* CRITERIA OF RELEVANCY, SPECIFICITY AND ADMISSIBILITY

With respect to the many categories of demands for documents that were sought during the first trial and denied by the Court, Forbes for the most part does not dispute – but continues to refuse to acknowledge – either the prior demands or the Court's prior rulings, and he offers no compelling reason for the Court to reconsider its earlier decisions. All of these categories of demands should therefore be quashed under the law of the case doctrine.[6]

---

[5] Forbes' citation to *Rosario v. Kuhlman*, 839 F.2d 918 (2d Cir. 1988), both acknowledges the collateral impeachment rule, *see* Forbes Opp'n at 23-24, and reinforces one of the central flaws with virtually all of Forbes' Rule 17(c) demands – i.e., that they seek evidence that is not even remotely close to relating to a *non-collateral* issue. As Forbes points out, the problem that led to reversal in *Rosario* was that the defendant was precluded from introducing extrinsic evidence in the form of testimony that directly contradicted the government's sole eyewitness on his "claim to be a witness to the crime" of robbery-homicide. *Id.* at 926. Here, in stark contrast, Forbes continues to use Rule 17(c) subpoenas improperly to attempt to obtain extrinsic evidence that he speculates might contradict Mr. Corigliano *not* on any of his statements relating to the crimes of which Walter Forbes is accused but instead on plainly collateral issues such as the values of Mr. Corigliano's family's assets. This is precisely what the collateral impeachment rule is designed to prevent.

[6] In another indication of his intent needlessly to confuse the record and burden the Court, Forbes' opposition memorandum addresses our specific category-by-category arguments in a different order than we presented the arguments in our moving papers. Among other things, Forbes' shuffling and re-ordering erases the clear demarcation we made in our opening papers between categories of demands that have already been addressed (our opening brief Point IV) and those that are new (our opening brief Point V). To avoid further confusing the record, and to maintain with clarity the important distinction between old and new arguments, we proceed in

### A. Renewal Demands (Including Forbes III(F)(2), P.39)

Forbes' concedes that, at least with respect to what he has labeled his "renewal" demands, they were made before and there is nothing new and no basis for reconsideration. These demands should therefore be quashed for the same reasons as they were quashed during the first trial.

For example, among other renewal demands addressed in our opening memorandum, with respect to the renewed subpoenas on five financial institutions (Citibank, T. Rowe Price, Liberty Bank, Fidelity, and Fleet Bank) that purportedly seek a subset of categories of demands made during the first trial (which demands Forbes concedes were quashed), Forbes now contends his sole purpose is to "trace the proceeds of Mr. Corigliano's illicit stock sales." Forbes Opp'n at 39. Yet Forbes fails to make any argument explaining why "tracing" what Mr. Corigliano did with the proceeds of his stock sales – as opposed to the amount of the proceeds, which of course has been disclosed – is relevant to showing any benefit or bias or any other relevant and admissible fact (except perhaps for what he has argued in his proposed secret *ex parte* submission, to which we have objected in a separate memorandum dated October 19, 2005).

In addition, even if tracing the proceeds was a valid purpose, which it is not, these new subpoenas are still wildly overbroad and not at all narrowly tailored to that purported (but improper) endeavor. For example, while Forbes demanded from Citibank in connection with the first trial "[a]ll documents *concerning any Citibank accounts* in the name of, or for the benefit of" Mr. Corigliano or Mrs. Corigliano, he has now "revised" his subpoena to demand "[a]ll

---

the same order as we proceeded in our opening submission, addressing duplicative and repetitive demands first and new or different demands second, and include cross-references to the corresponding letter point and page numbers in Forbes' opposition.

- 10 -

KL3:2471699.2

documents *relating to deposits into or withdrawals from any Citibank accounts* in the name of, or for the benefit of" Mr. Corigliano or Mrs. Corigliano for the six-year time period April 15, 1998 through July 31, 2004. And as to the other subpoenas, such as the ones addressed to Fidelity and the other financial institutions, Forbes has actually *increased* the number of demands nearly five-fold and, more importantly, still calls for all-inclusive categories of documents that would expose every deposit and withdrawal, and every stock, bond and mutual fund purchase or sale, for both Mr. and Mrs. Corigliano, over the six-year period from 1998 into 2004. In the face of these expansive and all-inclusive demands, it is difficult to understand how Forbes can argue that he has "narrowed the requests substantially." Forbes Opp'n at 39. These financial institution subpoenas should therefore be quashed, as they were during the first trial, for both lack of specificity and failure to satisfy the relevancy and admissibility requirements.

**B.     Retainer Agreement with Kramer Levin (Forbes III(K), P. 44)**[7]

In a footnote, Forbes "acknowledges that Mr. Shelton previously sought the retainer agreement itself, and Mr. Forbes joined in his arguments on this issue." Forbes Opp'n at 44 n.27. Forbes then goes on simply to repeat arguments made during the first trial, including that the agreement would "contradict Mr. Corigliano's purported understanding that the money did not 'belong' to him," that the SEC would have considered the retainer Mr. Corigliano's asset and it therefore should have been disclosed, and that the alleged failure to disclose is evidence of a breach of his plea agreement and provides an added reason for Mr. Corigliano "to lie in hopes that he will curry favor with the government." *Id.* at 45.

---

[7] Mr. Forbes correctly reports that we have agreed to provide him with an updated letter disclosing the same information that we disclosed during the first trial with respect to the balance of the retainer.

- 11 -

As we pointed out in our opening memorandum, *see* Amended Motion at 20-21, the Court has already rejected each of these arguments more than once – finding among other things that the whole line of inquiry represents an improper attempt to impeach Mr. Corigliano on a plainly collateral issue and that the retainer agreement was not discoverable by way of a Rule 17(c) subpoena – and Forbes offers no reason whatsoever to revisit those correct prior rulings. We add only that, as to the continuing baseless claim that the retainer was an "asset" of the Coriglianos that was not properly disclosed to the SEC, the government has joined us in representing that the retainer was disclosed prior to the SEC settlement, *see* Tr. 7/26/04, at 8715-16; Tr. 8/2/04, at 9279, 9285, the Court has found that there is no "legitimate basis to argue that Mr. Corigliano has cash on deposit with his counsel," Tr. 7/30/04, at 8, and the Court also has rejected Forbes' crime-fraud argument based on the claim that the retainers (held by both us and, as to Mrs. Corigliano, separately by lawyers at the Fried Frank firm) should have been included in written disclosures to the SEC. *See* Tr. 8/2/04, at 9121.

### C.   Fried Frank Retainer (Forbes III(L), P. 46)

As to the Fried Frank retainer, Forbes simply references the arguments with respect to the Kramer Levin retainer, and we do the same, adding that not even counsel for Mr. Forbes contends that Mrs. Corigliano's retainer agreement with the Fried Frank firm could be a "statement" admissible to impeach Mr. Corigliano.

### D.   Kramer Levin Billing Records Provided to Cendant (Forbes III(M), P. 46)

Forbes does not dispute – but refuses to be candid with the Court and acknowledge – that such records were demanded during the prior trial and that those demands were quashed, instead making his arguments exclusively *ex parte* and under seal. We therefore cannot respond and we object, for the reasons set forth in our previously filed opposition memorandum to the proposed *ex parte* submission (dated October 19, 2005).

### E. Alleged Agreements with the SEC Concerning Expenditures and the Retainers (Forbes III(G), P. 40)

Forbes does not dispute, but again refuses to acknowledge, that documents concerning such alleged additional agreements with the SEC with respect to certain expenditures and the Kramer Levin and Fried Frank retainers were demanded during the prior trial, that the arguments Forbes makes now about how Mr. Corigliano's understandings and testimony were allegedly inconsistent with the text of the SEC settlement agreement are exactly the same arguments previously made, or that the Court rejected these arguments and quashed the demands.

Instead, other than repeating his arguments (and submitting arguments *ex parte* and under seal, to which we object), Forbes now oddly cites to the testimony of David Frohlich. That testimony, as we pointed out in our opening submission, *see* Amended Motion at 25, is fully consistent with Mr. Corigliano's testimony about the propriety of his expenditures between the April 2004 SEC settlement and the July 2004 turnover of assets.[8]

Forbes also points to some alleged inconsistency in a draft stipulation proposed by the government (but never agreed by the parties) during the first trial and a filing by the government in advance of the retrial as to whether there was an "oral agreement" concerning the disposition of the balance of any retainers. But again, Forbes' attempted linguistic distinctions notwithstanding, the simple facts remain, as we and the government have consistently

---

[8] Forbes also complains about our representation that there are no documents concerning any agreements with respect to these expenditures apart from the SEC settlement documents he already has, demanding "written confirmation" in "admissible form." Forbes Opp'n at 41. Of course, there is no basis – and Forbes cites none – for such a demand under the authority to issue subpoenas for documents that is provided by Rule 17(c); moreover, Forbes does not explain why he cannot adequately establish the absence of any such additional written agreements by inquiring of Mr. Corigliano during his cross-examination.