UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA    :   No. 3:02CR00264 (AHN)

                        :

                        :

        v.               :   April 13, 2006

                        :

                        :

                        :

WALTER A. FORBES           :

GOVERNMENT'S OPPOSITION TO DEFENDANT WALTER A. FORBES' MOTION FOR
AN ORDER REQUIRING THE GOVERNMENT TO CONFER USE IMMUNITY ON
STUART BELL

(Forbes Third Trial Motion No. 3)(FILED UNDER SEAL)

INTRODUCTION

Forbes again moves, as he did during the first and second
trials, to compel the Government to immunize Stuart Bell in order
to overcome his anticipated assertion of his privilege against
self-incrimination and make him available as a defense witness in
this case. See Docket Nos. 1207 and 1210, filed September 27,
2004, Docket No. 1252, filed October 4, 2004, and Docket No.
1689, filed September 6, 2005. Judge Thompson rejected each of
those motions following full briefing by the parties.

**ARGUMENT**

### A. Forbes Has Failed to Demonstrate That This Court Should Reconsider This Twice Rejected Claim, or Depart From the Law of the Case.

Forbes fails to cite a single decision from any Court in this Circuit which has ever compelled the Government to confer use immunity on a defense witness.  The Second Circuit has recently confirmed in another securities fraud case that such claims are moribund in this Circuit.  United States v. Skelly, __ F.3d __, 2006 WL 766746, *5 (2d Cir., March 21, 2006).  As Judge Thompson properly concluded during the first trial, Forbes failed to sustain his burden of demonstrating an entitlement to this extraordinary relief.  See First Trial Transcript ("FTTr.") 13698-13705, 14550.

Forbes' present motion offers nothing new in the way of legal authority, factual support, or argument that he did not advance in his previous submissions.  Indeed, he does not even claim that his present submission offers anything new, other than mentioning a supposed remark to a reporter by one of the jurors during the second trial, which suggests that the juror declined to convict Forbes in that trial because the Government failed to present Bell as a witness.  Such a remark obviously does not advance Forbes' meritless claim.

Forbes has failed to demonstrate that he was entitled to what is in effect reconsideration of his previously rejected

2

compelled immunity claim.  A reconsideration motion will be denied unless the "moving party can point to controlling decisions or data that the court overlooked -- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." United States v. Fell, 372 F. Supp. 2d 773, 780 (D. Vt. 2005).  "[T]he function of a motion for reconsideration is to present the court with an opportunity to correct manifest errors of law or fact or to consider newly discovered evidence." LoSacco v. City of Middletown, 822 F. Supp. 870, 876-77 (D. Conn. 1993)(internal quotation marks omitted), aff'd, 33 F.3d 50 (2d Cir. 1994).

Forbes has not even attempted to meet his heavy burden for obtaining reconsideration of his previously rejected compelled immunity claims. Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)(party seeking reconsideration must meet a "strict burden"); accord United States v. Ocasio, 2005 WL 1489462, *2 (D. Conn., June 20, 2005).  Reconsideration motions do not provide a litigant with a second bite at the apple.  See Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998).[1]  As Forbes has failed to sustain his "strict burden," but has merely recycled his

---

[1] "[A] motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made." Lopez v. Smiley, 375 F. Supp. 2d 19, 21-22 (D. Conn., June 24, 2005); Horsehead Resource Development Co., Inc. v. B.U.S. Environmental Services, Inc., 928 F. Supp. 287, 289 (S.D.N.Y., May 21, 1996) (internal citations and quotation marks omitted).

previous arguments, his motion can be summarily rejected.

In addition, Judge Thompson's denial of Forbes' prior motions for compelled immunity of Bell have become the law of the case and Forbes has presented no compelling reason for this Court to revisit any of those rulings.  "The court's exercise of its power to reconsider and modify its prior interlocutory rulings is informed by the . . . law-of-the-case doctrine.  That principle is that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case."  United States v. Uccio, 940 F.2d 753, 758 (2d Cir. 1991).[2]  "[A]bsent cogent or compelling reasons to deviate, such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," a court should adhere to its prior rulings. Id. at 758.

"Under the 'law of the case' doctrine, 'courts are understandably reluctant to reopen a ruling once made,' especially 'when one judge or court is asked to consider the ruling of a different judge or court.'"  Lillbask v. Connecticut Dept. of Educ., 397 F.3d 77, 94 (2d Cir. 2005) (quoting 18B Wright, Miller & Cooper, Federal Practice and Procedure, § 4478

---

[2]  Accord, see United States v. Crowley, 318 F.3d 401, 420 (2d Cir. 2003); United States v. Quintieri, 306 F.3d 1217, 1225 (2d Cir. 2002); United States v. Tenzer, 213 F.3d 34, 39-40 (2d Cir. 2000)

(2d ed. 2002)); <u>see</u> <u>Chiu v. United States</u>, 948 F.2d 711, 717 (Fed. Cir. 1991) ("A successor judge steps into the shoes of his or her predecessor, and is thus bound by the same rulings and given the same freedom as the first judge."); <u>Philadelphia</u> <u>Housing Auth. v. American Radiator & Standard Sanitary Corp.</u>, 323 F. Supp. 381, 383 (E.D. Pa. 1970) ("Nor is there any apparent reason why the rule of the law of the case should not be applied merely because a different judge has now been assigned to this litigation.").

For that reason as well, this motion should be denied without consideration of the merits. Nevertheless, the Government will respond to the merits and demonstrate that Judge Thompson properly denied Forbes' compelled immunity request.

**B. Judge Thompson Properly Declined to Compel the Government to Immunize a Defense Witness.**

As the Second Circuit has explained:

> The statute which confers the power to grant immunity in court and grand jury proceedings, 18 U.S.C. § 6003(a), gives the district courts the power to issue orders requiring individuals to give testimony only "upon the request of the United States attorney for such district."

<u>United States v. Bahadar</u>, 954 F.2d 821, 825 (2d Cir. 1992) Accordingly, "[a]bsent extraordinary circumstances, the Due Process Clause imposes no requirement that defense witness immunity be ordered whenever it seems fair to grant it." <u>United</u> <u>States v. Diaz</u>, 176 F.3d 52, 115 (2d Cir. 1999), <u>quoting</u> <u>Blissett</u> <u>v. Lefevre</u>, 924 F.2d 434, 441 (2d Cir. 1991) and <u>United States v.</u>

Turkish, 623 F.2d 769, 777 (2d Cir. 1980); see also United States
v. Dolah, 245 F.3d 98, 105 (2d Cir. 2001), abrogated on other
grounds, Crawford v. Washington, 541 U.S. 36 (2004).  Nor can the
district court confer immunity on a proposed defense witness over
the Government's objections.  See Dolah, 245 F.3d at 105 n.5;
Bahadar, 954 F.2d at 824-27.

The Second Circuit has stated that a district court may not
compel the Government to confer immunity on a proposed defense
witness unless the defendant satisfies a rigorous three-part
test:

> First, the district court must find that the government
> has engaged in discriminatory use of immunity to gain a
> tactical advantage or, through its own overreaching,
> has forced the witness to invoke the fifth amendment.
> Second, the witness's testimony must be material,
> exculpatory, and not cumulative.  Third, the testimony
> must be unobtainable from any other source.

Bahadar, 954 F.2d at 826.  See also Dolah 245 F.3d at 105, citing
United States v. Burns, 684 F.2d 1066, 1077 (2d Cir. 1982) (three
part test must be satisfied to compel the United States to grant
immunity); United States v. Washington, 398 F.3d 306, 310 (4th
Cir. 2005)(a "defendant bears a heavy burden when seeking to have
the district court compel the grant of immunity")(citing cases).
Forbes has failed to meet this heavy burden.

Twenty-five years ago the Second Circuit stated that
"[c]laims for defense witness use immunity have been uniformly
rejected by this Court," United States v. Turkish, 623 F.2d 769,

772 (2d Cir. 1980), and Forbes has not identified any intervening cases in which the Court of Appeals has either approved or required a grant of defense use immunity.[3]  Nor has Forbes, like the many defendants before him who have sought this "available only in theory" relief, met his burden in this case.

### 1. The Government Did Not Make Discriminatory Use of Immunity.

First and most significantly, Forbes has failed to demonstrate that the Government "engaged in discriminatory use of immunity in this case to gain a tactical advantage" over the defense.  As the Government explained during the first trial, it did not immunize <u>any</u> of the witnesses in this case.  <u>See</u> Tr. 13703-04.

Additionally, to overcome the Government's "broad discretion" regarding immunity grants, and to demonstrate that the Government engaged in discriminatory use of immunity, Forbes

---

[3]  As the Second Circuit has explained, the strict limitations against judicially-compelled immunity grants is necessary to vindicate two purposes:

> In addition to ensuring that prosecutorial decisions concerning whom to prosecute and what evidence to present at a criminal trial will not be lightly interfered with by the judiciary, it reduces the possibility of cooperative perjury between the defendant and his witness.  A person suspected of crime should not be empowered to give his confederates an immunity bath.

<u>Blissett</u>, 924 F.2d at 441-42 (internal punctuation and citations omitted).

must make "a substantial evidentiary showing that the government
intended to distort the judicial fact-finding process." United
States v. Campbell, 410 F.3d 456, 463 (8th Cir. 2005), quoting
United States v. Washington, 318 F.3d 845, 855 (8th Cir. 2003);
Williams v. Woodford, 384 F.3d 567, 600 (9th Cir. 2004).  In this
regard, it is simply not enough, as Forbes has done, to point out
that certain witnesses such as Corigliano and Pember received
transactional immunity for some possible criminal charges in
exchange for their guilty pleas and cooperation, and others, such
as Kearney, who voluntarily provided information during a proffer
session, was not prosecuted, whereas Bell, who did none of those
things, was not immunized so that he could testify as a defense
witness.  Campbell, 410 F.3d at 463 ("the mere failure to grant
immunity to a defense witness, even if coupled with a grant of
immunity to a prosecution witness, [does not] create a
substantial showing that the government intended to distort the
fact-finding process").

Forbes does not contend, and cannot show, for instance, that
the Government "made repeated threats or warnings to [Bell]" to
prevent him from testifying.  Id.; Williams v. Woodford, 384 F.3d
at 601-02 ("Undue prosecutorial interference in a defense
witness's decision to testify arises when the prosecution
intimidates or harasses the witness to discourage the witness
from testifying, for example, by threatening the witness with

prosecution for perjury or other offenses"), <u>citing</u> <u>United States</u>
<u>v. Angiulo</u>, 897 F.2d 1169, 1192 (1st Cir. 1990).

That Forbes' defense would in theory be advanced by Bell's
testimony does not demonstrate that the Government acted
improperly by declining to immunize Bell.  <u>United States v.</u>
<u>Ballistrea</u>, 101 F.3d 827, 837 (2d Cir. 1996) (affirming denial of
request to compel Government to immunize proposed defense
witnesses where "[n]othing in the record indicates that the
Government had granted immunity to its witnesses, and refused to
grant immunity to defendant's witnesses, in order to gain a
tactical advantage").  After all, a defendant such as Forbes can
always assert that his defense would have been advanced if the
Government immunizes a proposed defense witness who refuses to
testify on Fifth Amendment grounds.

Rather, the issue is whether the Government acted in bad
faith by refusing to immunize a defense witness under the same
circumstances that it has immunized a prosecution witness.
<u>Dolah</u>, 245 F.3d at 105 (to compel the Government to immunize a
proposed defense witness, a defendant must demonstrate, *inter*
*alia,* that "the government has engaged in <u>discriminatory</u> use of
immunity to gain a tactical advantage or, through its own
<u>overreaching</u>, has forced the witness to invoke the Fifth
Amendment").  The Government did not "overreach," because it did
not force Bell to claim that he would invoke his Fifth Amendment

privilege if called to testify by the defense.  <u>Moreno-Ortiz v.</u>
<u>United States</u>, 983 F.2d 15, 17 (2d Cir. 1993) (stating that
compelled immunity is not available absent "prosecutorial
overreaching forcing the witness to invoke the Fifth Amendment").
Rather, Bell and his lawyer made that decision on their own.
<u>Washington</u>, 398 F.3d at 310-311 (district court properly declined
to compel the Government to immunize a witness so that he could
testify for the defense, where the defendant "proffered no
evidence that [the witness] had been coerced into asserting his
Fifth Amendment privilege by threats of prosecution").

Forbes contends that the Government immunized witnesses such
as Kearney who implicated Forbes, but has improperly declined to
immunize Bell because he will exonerate Forbes.  Forbes'
Memorandum ("FM") 10.  Even characterizing the Kearney proffer
agreements and the Corigliano, Pember, and Sabatino cooperation
agreements as "immunity grants," as Forbes does, does not
demonstrate the kind of invidious discrimination against Forbes
that compelled immunity is available to redress.  "We have
rejected the argument that immunity must be granted to defense
witnesses in order to redress a supposed government advantage
over the defense." <u>Diaz</u>, 176 F.3d at 115 (internal punctuation
omitted).  Rather, it is "[o]nly when a prosecutor has abused the
government's ability to grant immunity by using it in a
discriminatory fashion for the purpose of gaining a tactical

advantage does due process require a grant of immunity for a defense witness." Id.[4]

Forbes has failed to demonstrate that the Government's immunity decisions were improperly motivated to prevent Forbes from obtaining exculpatory evidence, because the Government has made decisions and reached agreements with prospective witnesses in an even-handed manner based on whether or not a witness has been forthcoming, and not based on the content of the witness's account. Thus, Pember and Sabatino were both permitted to plead guilty to reduced charges and obtain transactional immunity for other charges even though Pember never claimed that she had discussed the fraud with Forbes, and Sabatino affirmatively denied that he had done so. FTTr. 4075, 4641-42, 4645-59, 4662-64, 4747-48, 4809-10, 4830-31, 4835-36, 4845, 5137-38.

This puts the lie to Forbes' assertion that the Government "immuniz[ed] where necessary any alleged coconspirator that the Government can convince to testify against Forbes." FM 10.

---

[4] The notion that the Government should immunize defense witnesses whenever it has had to use its immunity power to obtain the testimony of prosecution witnesses, and thus provide a sort of "balance of immunity power" between the parties was firmly rejected by the Second Circuit. Turkish, 623 F.2d at 774-75 (explaining that "a criminal prosecution, unlike a civil trial, is in no sense a symmetrical proceeding" owing to the "substantial affirmative obligations" assumed by the prosecution that do not apply to the defense; "where accuser and accused have inherently different roles, with entirely different powers and rights, equalization is not a sound principle on which to extend any particular procedural device" such as authority to confer immunity on reluctant witnesses).

Although the Government reached plea or proffer agreements with all persons who were willing to speak truthfully to the Government about what they knew about the fraud, the Government did not immunize any person who (like Bell) refused even to speak to the Government (or in Bell's case, even to the Cendant Audit Committee investigators) concerning what they knew about the accounting fraud which endured for years while Bell was the CFO of CUC.  The Government never denied Bell an opportunity to enter into a cooperating plea agreement (as did Corigliano, Pember and Sabatino) or to speak to Government officials pursuant to a proffer agreement (as did Kearney).  Because Bell unilaterally declined to enter into any such arrangements, the Government did not engage in any conduct vis-a-vis Bell that was designed to gain a tactical advantage over Forbes at trial.  <u>Blissett</u>, 924 F.2d at 442 ("Only when a prosecutor has abused the government's ability to grant immunity by using it in a discriminatory fashion for the purpose of gaining a tactical advantage does due process require a grant of immunity for a defense witness . . . The number of witnesses immunized, without more, does not support a finding of this type of  misconduct.") (internal punctuation omitted).

**2. Forbes Has Failed to Show That, If Immunized, Bell Would Exculpate Forbes.**

Forbes has failed to satisfy the second requirement for compelled immunity by showing that if immunized, Bell would

12

provide testimony that is "exculpatory." See Bahadar, 954 F.2d
at 826. Bell's supposed denial that he did not commit the
charged fraud with Corigliano hardly demonstrates that Forbes did
not commit those crimes with Corigliano. Indeed, although
Corigliano testified that he repeatedly discussed the fraud with
Bell before Corigliano became CFO, e.g., FTTr. 6245, 6251, 6298-
6300, 6322-23, 6343-61, 6367-68, 6372, 6397-6400, 6412-13, 6424,
6427-30, and repeatedly discussed the fraud with Forbes after
Corigliano became CFO, e.g., FTTr. 6455-57, 6520, 6571-72, 6588-
90, 6605, 6714-18, 6776-77, 6783-84, 6792, 6825-28, 6831, 6834,
6891, 6951, 6957-58, 7085-86, 7093-94, Corigliano did not testify
that he discussed the fraud with both Bell and Forbes at the same
time. Even assuming that an immunized Bell would testify, as
Forbes contends, that Bell did not commit the charged fraud, that
testimony does not repudiate Corigliano's testimony that he
discussed the fraud with Forbes in Bell's absence.

At most, Bell's supposed denial of complicity in the fraud
contradicts one aspect of Corigliano's testimony without
exculpating Forbes. Forbes points to no authority which holds
that the Government can be compelled to immunize a witness whose
relevant testimony does not exculpate the accused, but merely
contradicts the testimony of a prosecution witness regarding
facts which the jury need not find in order to convict. See
United States v. Rivera, 971 F.2d 876, 887 (2d Cir. 1992)

(affirming the refusal to immunize a proposed defense witness who would have contradicted the testimony of two prosecution witnesses; the defendant failed to establish "the requirements that our decisions have consistently required to compel a governmental grant of immunity, and it is clear that they were not satisfied with respect to the peripheral testimony assertedly available from [the proposed defense witness"); United States v. Praetorius, 622 F.2d 1054, 1064 (2d Cir. 1979)(affirming the district court's discretionary determination not to compel the Government to immunize a defense witness whose proposed testimony "merely related to the credibility of a [prosecution] witness . . . . [since] the issue of witness credibility, particularly in the factual context presented here, is a collateral matter and does not rise to the kind of 'extraordinary circumstance' which would compel government immunization of a defense witness.").

Additionally, Forbes has failed to demonstrate that, if immunized, Bell would provide even the denials which Forbes' lawyers contend that Bell's lawyer said that Bell would provide. Forbes cites no case in which the Government was compelled to immunize a proposed defense witness merely because defense counsel submitted a declaration purporting to describe what the witness's lawyer claims his client would do if immunized. Williams v. Woodford, 384 F.3d at 601 n.13 ("We have previously indicated that satisfaction of the relevance prong requires the

defendant to offer proof of the substance of a defense witness's testimony beyond the defendant's or defense counsel's unsupported assertions")(citing cases).

Indeed, the contention that Bell's lawyer purportedly told Forbes' counsel -- in an off-the-record conversation -- that his client (Bell), if immunized, would deny committing fraud at CUC, is hardly the type of compelling "evidence" that justifies the extraordinary remedy of compelled immunity. First, Forbes has failed to show that Bell himself, as opposed to Bell's lawyer, has ever provided any information that would benefit Forbes' defense. To the contrary, when provided with an opportunity to exonerate not only Forbes but himself, Bell repeatedly declined to even speak to the investigators from the Cendant Audit Committee regarding the fraud. "Report to the Audit Committee of the Board of Directors of Cendant Corporation," August 24, 1998, pp. 4-5, n.8.[5]

In this context, Forbes' proffer does little to demonstrate that Bell would actually give helpful defense testimony in this case. Bell's lawyer had nothing to lose and everything to gain by claiming for public consumption that his client, who was apparently planning to assert his Fifth Amendment privilege, did nothing wrong. Thus, Forbes has failed to satisfy the second

---

[5]  Like Bell, Corigliano and Pember also declined to speak to Audit Committee investigators id. at 4, nn. 5 and 6, but they later admitted that they were deeply involved in the fraud.

prong of the three part test.

> **3.  Forbes Has Failed to Show That Bell's Testimony Can Be Obtained Only By Granting Him Immunity.**

Finally, Forbes can not demonstrate that the information he sought from Bell could not be obtained without immunizing Bell.  Although Forbes has repeatedly subpoenaed Bell and caused him to come to the Hartford courthouse during the second trial, Forbes did not ask Judge Thompson to make a finding (based on an *in camera* submission by Bell) that Bell could not carry his burden of demonstrating a viable risk that he would incriminate himself if he testified at this trial.  <u>United States v. Edgerton</u>, 734 F.2d 913, 919 (2d Cir. 1984)("The mere assertion of the [Fifth Amendment] privilege, however, by the one whose testimony is sought, based on his reasonable belief, is not enough. . . .  It is for the court to say whether his silence is justified.") <u>quoting</u> <u>Hoffman v. United States</u>, 341 U.S. 479, 486 (1951).  There is certainly nothing in Bell's supposed denial of any involvement in the charged accounting fraud which Forbes' claims that he wants to elicit that would incriminate Bell. Forbes' failure to date to ask this Court to determine whether or not Bell has a viable Fifth Amendment privilege regarding anything that would be elicited during his testimony in this case suggests that Forbes is more interested in preserving a claim that he was wrongfully denied Bell's testimony than in obtaining the testimony itself.

Additionally, Forbes' unwillingness to challenge Bell's claimed invocation of the privilege suggests that, notwithstanding Forbes' supposed need for Bell's testimony, Forbes has some unstated interest in protecting Bell from testifying without immunity.  Such coordination between Bell and Forbes raises concerns about corroborative perjury that the strict limitations against judicially-compelled perjury are designed to prevent.  <u>Blissett</u>, 924 F.2d at 441-42.

### 4.  Compelled Immunity Is Not Available Due To Supposed "Extraordinary Circumstances."

Forbes contends that this Court should compel the Government to immunize Bell even if he cannot sustain his burden of demonstrating that first and most difficult prong of the Second Circuit test for compelled immunization.  According to Forbes, this Court should compel the Government to immunize Bell because of supposed "extraordinary circumstances."  FM 10-15. Forbes, however, points to no authority which holds that a district court has such authority.

To the contrary, the Second Circuit recently reaffirmed that the Government could theoretically be compelled (the Court of Appeals has never identified such a case however) "to provide this immunity . . . **only when** the Government 'has engaged in discriminatory use of immunity to gain a tactical advantage or, through its overreaching, has forced the witness to invoke the Fifth Amendment" and the other circumstances identified above are

17

met.  Skelly, 2006 WL 766746 * 5 (emphasis added)(quoting Dolah, 245 F.3d at 105 ).  The Second Circuit has repeatedly affirmed the denial of a defense request for compelled immunity where the defendant failed to establish the first prong, without even considering the other two factors.  See Bahadar, 954 F.2d at 826 (affirming denial of request for compelled immunity where the defendant failed to "vault the first hurdle" of the three-part test, and not addressing the second and third prongs); United States v. Pinto, 850 F.2d 927, 935 (2d Cir. 1988)("Since we have found no error in the district court's finding that there was no prosecutorial overreaching, appellants' claims of error as to both motions for immunity also must fail.").

As shown above, Forbes has failed to satisfy the first requirement for an order compelling the Government to immunize a defense witness.  Forbes' resort to supposed "exceptional circumstances" are therefore of no moment, and need not be addressed.[6]  Forbes has offered no reason for this Court to

_____

[6]  Forbes also claims that, as an alternative to compelling the Government to immunize Bell, this Court should invoke Fed. R. Evid. 403 and 611 to preclude the Government from presenting any evidence about the accounting fraud at CUC while Bell was the CFO.  FM 4, n.4.  This request presupposes that the Government acted improperly by declining to immunize Bell.  As shown above, that is not the case.

Forbes' reference to other supposedly "serious problems" regarding the Government's proof that the fraud was already in place during the "Bell era" are matters that Forbes may raise to attack the credibility of the Government's evidence regarding the
(continued...)

18

reverse Judge Thompson's prior rulings, rejecting this very

claim.

## CONCLUSION

The Government respectfully requests that Forbes' Third

Trial Motion No. 3 be denied.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
Special Attorney
U.S. Department of Justice

*Norman Gross/s*

NORMAN GROSS
MICHAEL MARTINEZ
Special Attorneys
U.S. Department of Justice
970 Broad Street
Room 700
Newark, N.J.  07102
(973) 645-2701

Newark, New Jersey
Date: April 13, 2006

---

[6](...continued)
"Bell era" fraud.  Relevant and compelling evidence of Forbes'
guilt can not be excluded, however, merely because Forbes can
point to other, countervailing evidence.  The jury is the proper
arbiter of conflicting evidence.  Finally, Forbes' reliance on
his myriad mistrial motions, FM 4, n.4, fails to point out that
Judge Thompson denied each and every one of those motions
following extensive briefing by the parties.

## CERTIFICATE OF SERVICE

The undersigned certifies that on this day, I caused a copy of the foregoing Government's Opposition to Defendant Walter A. Forbes' Motion for an Order Requiring the Government to Confer Use Immunity on Stuart Bell (Forbes Third Trial Motion No. 3) to be served upon the following by email:

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W,
Washington, D.C.  20005-5901
(292) 434-5005
email: bsimon@wc.com



*Norman Gross/s*
NORMAN GROSS


Dated: April 13, 2006
       Camden, New Jersey