# EXHIBIT A



**CENDANT**

James E. Buckman
Vice Chairman
General Counsel

February 21, 2001

Senator Alfonse D'Amato
Park Strategies
101 Park Avenue, Suite 2506
New York, NY 10178

Dear Senator D'Amato:

The enclosed memo was prepared at the request of Henry Silverman.

Sincerely,

James E. Buckman
Vice Chairman and General Counsel

JEB/smg
enclosure

**PARK 001**



Cendant Corporation. 6 Sylvan Way, Parsippany, NJ 07054. Tel: 973 496-5266. Fax: 973 496-5335. jim.buckman@cendant.com

|  | **INTEROFFICE MEMORANDUM** |
|---|---|
|  **CENDANT** | |
| | **James E. Buckman** |
| | Vice Chairman and General Counsel |
| Date: February 21, 2001 | Cendant Corporation |
| | 9 West 57th Street |
| To: Sen. Alfonse D'Amato | New York, NY 10019 |
| CC: | (212) 413-1816  Business |
| Subject: Pending SEC Investigation | (212) 413-1826  Fax |
| | jim.buckman@cendant.com  E-mail |

There are currently pending at the Division of Enforcement of the Securities and Exchange Commission investigations of Walter A. Forbes and E. Kirk Shelton, Chairman of the Board and President, respectively, of CUC International, and, perhaps, certain other former officers of CUC International, concerning violations of the federal securities laws relating to the financial statements of CUC International. The Division of Enforcement is also investigating the role played by Ernst & Young with regard to the fraudulent financial statements of CUC International. Our sense is that those investigations are stalled despite evidence provided to the Division of Enforcement by former officers of CUC International who have pleaded guilty to various conspiracy and fraud charges.

The following information may be helpful to your understanding of the pending investigations:

1. The general matter concerning the financial fraud at CUC International has been pending at the SEC since April 20, 1998, when representatives of Cendant met with several members of the staff of the SEC in Washington to apprise the SEC of the situation that had been discovered. We strongly encouraged the staff to aggressively investigate, prosecute and punish the persons responsible for the fraudulent activity that had caused serious economic damage to the management and shareholders of Cendant.

2. The report issued to the Audit Committee of the Board of Directors of Cendant by the law firm, Willkie, Farr & Gallagher, reflecting the investigation conducted by that law firm and by Arthur Andersen, together with all the exhibits and work product and work papers produced in connection with the investigation and report, were voluntarily provided to the SEC to aid in their investigation. Those documents have been in the possession of the SEC staff since September 1998.

3. Members of the Division of Enforcement staff participated in several interviews of former officers of CUC International and current officers of Cendant, as well as partners and employees of Ernst & Young, relating to the fraud at CUC International.

4. Effective June 14, 2000, Cendant entered into a consent order with the SEC effectively enjoining Cendant from future violations of Section 13(a) and (b) of the Securities Exchange Act of 1934 and certain rules thereunder, all of which relate to financial

PARK 002

reporting obligations under that Act. The SEC noted in the consent order the full cooperation provided to it during the investigation by the management of Cendant.

5. Effective June 14, 2000, the SEC entered into consent orders with three former financial executives of CUC International, Cosmo Corigliano, the former chief financial officer of CUC International, Anne Pember, the former senior vice president and controller of CUC International, and Caspar Sabatino, the former senior vice president-finance of CUC International, and certain other lower level financial executives of CUC International. The consent decrees enjoined such persons from further violations of the anti-fraud provisions of the Securities Exchange Act of 1934, prohibited such persons from holding management positions with registrants, called for the disgorgement by the persons of gains realized on their trading in the common stock of CUC International and Cendant, and imposing fines against such persons.

6. Based upon the testimony of such former financial executives of CUC International, the Consent to Order entered into by Cendant contains several findings by the SEC indicating that fraudulent accounting practices had been engaged in by CUC International since at least 1986 and that "CUC's senior and middle management devised and operated a systemic, systematic scheme to inflate operating income at CUC." In testimony before the U.S. District Court of New Jersey at the time of entering their pleas, Cosmo Corigliano, Anne Pember and Caspar Sabatino all testified that fraudulent accounting practices were routine at CUC International since the time that each of them had joined the company and that such practices were dictated to them by their superior officers. In the case of Cosmo Corigliano, those superior officers could only have been Walter Forbes, Kirk Shelton and Stuart Bell, the prior chief financial officer of CUC.

7. In conversations with Tom Newkirk, the assistant director of the Division of Enforcement, and other members of the Division of Enforcement staff, I stated the proposition that, given the findings of widespread financial and accounting fraud at CUC since at least 1986, and given the fact that Ernst & Young were the independent accountants and auditors of the financial statements of CUC International since the time CUC International became a public company in the early 1980s, such widespread fraud could not have occurred and continued for over 12 years without the complicity or reckless disregard of the truth of Ernst & Young and its partners and employees with regard to the financial accounting practices of CUC International and the auditing practices of Ernst & Young.

8. Cendant has made available at its own very substantial cost and expense the partners and employees of Arthur Andersen who performed the forensic audit of CUC International on behalf of the Cendant audit committee to aid in the investigation by the Division of Enforcement. Cendant has incurred several millions of dollars aiding and supporting the investigation of these matters by both the SEC and the U.S. Attorney in the District of New Jersey.

9. The SEC's own document, i.e., the consent order entered into by Cendant containing the findings by the SEC of at least 12 years of systematic fraudulent accounting practices by CUC International, cries out for the aggressive prosecution by the SEC of the persons responsible for these fraudulent practices; and we know who they are, Walter Forbes, Kirk Shelton, Stuart Bell, all of whom are former senior-most officers of CUC

International, and several audit partners at Ernst & Young, including Kenneth Wilchfort, who was the principal audit partner throughout the 1990s.

The question we and others ask is akin to the question raised by Bob Dole in the 1996 presidential campaign, "Where is the outrage?" In our case, the question is more properly put as, "Where is the outrage of the enforcement officials who have had this case 90 percent dropped in their laps and paid for by Cendant and its shareholders, where it has languished for over two years?"

If you have any further questions concerning this matter or would like to discuss anything set forth in this memo, please feel free to call me at (212) 413-1816.

PARK 004

# EXHIBIT B

# PARK STRATEGIES, LLC

TO: Commissioner Laura Unger

FROM: Senator Alfonse M. D'Amato

RE: Pending SEC Investigation

---

There are currently pending at the Division of Enforcement of the Securities and Exchange Commission investigations of Walter A. Forbes and E. Kirk Shelton, Chairman of the Board and President, respectively, of CUC International; and, perhaps, certain other former officers of CUC International, concerning violations of the federal securities laws relating to the financial statements of CUC International. The Division of Enforcement is also investigating the role played by Ernst & Young with regard to the fraudulent financial statements of CUC International. Our sense is that those investigations are stalled despite evidence provided to the Division of Enforcement by former officers of CUC International who have pleaded guilty to various conspiracy and fraud charges.

1. The general matter concerning the financial fraud at CUC has been pending at the SEC since April 20, 1998, when representatives of Cendant met with several members of the staff of the SEC in Washington to apprise the SEC of the situation that had been discovered. We strongly encouraged the staff to aggressively investigate, prosecute and punish the persons responsible for the fraudulent activity that had caused serious economic damage to the management and shareholders of Cendant.

2. The report issued to the Audit Committee of the Board of Directors of Cendant by the law firm Wilkie, Farr & Gallagher, reflecting the investigation conducted by that law firm and by Arthur Andersen, together with all the exhibits and work product and work papers produced in connection with the investigation and report, were voluntarily provided to the SEC to aid in their investigation. Those documents have been in the possession of the SEC staff since September 1998.

3. Members of the Division of Enforcement staff participated in several interviews of former officers of CUC International and current officers of Cendant, as well as partners and employees of Ernst & Young, relating to a fraud at CUC International.

**PARK 005**

NEW YORK OFFICE: 101 PARK AVENUE • SUITE 2508 • NEW YORK, NY 10178 • PHONE: 212-808-7155 • FAX: 212-972-1509
WASHINGTON, DC OFFICE: 1800 K STREET, NW • SUITE 1124 • WASHINGTON, DC 20006 • PHONE: 202-833-4923 • FAX: 202-223-8036

4. Effective June 14, 2000, Cendant entered into a consent order with the SEC effectively enjoining Cendant from future violations of Section 13(a) and (b) of the Securities Exchange Act of 1934 and certain rules thereunder, all of which relate to financial reporting obligations under that Act. The SEC noted in the consent order the full cooperation provided to it during the investigation by the management of Cendant.

5. Effective June 14, 2000, the SEC entered into consent orders with three former financial executives of CUC International, Cosmo Corigliano, the former chief financial officer of CUC International, Anne Pember, the former senior vice president and controller of CUC International, and Casper Sabatino, the former senior vice president-finance of CUC International, and certain other low level financial executives of CUC International. The consent decrees enjoined such persons from further violations of the anti-fraud provisions of the Securities Exchange Act of 1934, prohibited such persons from holding management positions with registrants, called for the disgorgement by the persons of gains realized on their trading in the common stock of CUC International and Cendant, and imposing fines against such persons.

6. Based upon the testimony of such former financial executives of CUC International, the Consent to Order entered into by Cendant contains several findings by the SEC indicating the fraudulent accounting practices had been engaged in by CUC International since at least 1986 and that "CUC's senior and middle management devised and operated a systemic, systematic scheme to inflate operating income at CUC." In testimony before the U.S, District Court of New jersey at the time of entering their pleas, Cosmo Corigliano, Anne Pember and Casper Sabatino all testified that fraudulent accounting practices were routine at CUC International since the time that each of them had joined the company and that such practices were dictated to them by superior officers. In the case of Cosmo Corigliano, those superior officers could only have been Walter Forbes, Kirk Shelton and Stuart Bell, the prior chief financial officer of CUC.

7. Given the findings of widespread financial and accounting fraud at CUC since at least 1986, and given the fact that Ernst & Young were the independent accountants and auditors of the financial statements of CUC International since the time CUC International became a public company in the early 1980's, such widespread fraud could not have occurred and continued for over 123 years without the complicity r reckless disregard of the truth of Ernst & young and its partners and employees with regard to the financial accounting practices of CUC International and the auditing practices of Ernst & Young.

8. Cendant has made available at its own very substantial cost and expense partners and employees of Arthur Andersen who performed the forensic audit of CUC International on behalf of Cendant audit committee to aid in the investigation by

PARK 006

the Division of Enforcement. Cendant has incurred several millions of dollars aiding and supporting the investigation of these matters by both the SEC and the U.S. Attorney in the District of New Jersey.

9.  The SEC's own document, i.e., the consent order entered into by Cendant containing the findings by the SEC of at least 123 years of systematic fraudulent accounting practices by CUC International, cries out for the aggressive prosecution by the SEC of the persons responsible for those fraudulent practices; and we know who they are, Walter Forbes, Kirk Shelton, Stuart Bell, all of whom are former senior-most officers of CUC International, and several audit partners at Ernst & Young, including Kenneth Wilchfort, who was the principal audit partner throughout the 1990's.

The question Cendant most wants answered is whether action will be taken by the SEC, consistent with the facts, against those who have clearly violated the law.

If you have any further questions concerning this matter, or would like to discuss anything set forth in this memo, please feel free to call me.

PARK 007

# EXHIBIT C

## Patterson, Belknap, Webb & Tyler LLP

1133 Avenue of the Americas
New York, NY 10036-6710
(212) 336-2000
Fax (212) 336-2222

Peter W. Tomlinson

Direct Phone
(212) 336-2977

Email Address
pwtomlinson@pbwt.com

May 3, 2002

**By Federal Express**

Terri A. Mazur, Esq.
Mayer Brown Rowe & Maw
190 South LaSalle Street
Chicago, Illinois 60603-3441

Re:  **In re Cendant Corporation Securities Litigation**

Dear Terri:

      At the time Cendant collected documents in this litigation, it was understood that e-mails from the 1997 and 1998 time period were not retrievable. Recently, however, Cendant located back-up tapes of the e-mail servers of the former HFS and Cendant for 1997 and 1998. Cendant has gone to considerable effort and expense to extract the relevant e-mails from these back-up tapes. We have completed our review of the extracted e-mails, and I am enclosing approximately 1 ½ boxes of responsive e-mails. These documents are stamped CEN1122431 - CEN1126153. I am enclosing a list showing the source information for these e-mails.

      In light of this discovery, we reviewed E&Y's production of e-mails. Based on a review of E&Y's production and its responses to our inquiries, there is no evidence that E&Y has undertaken any efforts to retrieve deleted e-mails from the 1997-1998 time period, as Cendant has now done. As we understand E&Y's production and your responses, all E&Y did to collect e-mails in this litigation was (1) search for hard copies of e-mails in desk files and (2) print out e-mails that existed in its employees' computer in-boxes after April 15, 1998. We have no reason to believe that E&Y has exhausted the technology available to retrieve deleted e-mails from the period involved. Cendant's retrieval of its own e-mails confirms that there are relevant e-mails sent by E&Y employees that E&Y has never produced in this litigation. For example, Bruce Botti sent a draft of the CMS financial statements to Toby Ippolito and Gregg Baron on March 25, 1998 (CEN1123093 - CEN11123131), and Casper Sabatino sent Bruce Botti an e-mail on February 24, 1998 relating to January 1997 (CEN1122633 - CEN1122634). E&Y did not produce either of these e-mails. We discovered numerous other e-mails exchanged between E&Y and Cendant personnel which E&Y also has not produced. There are also undoubtedly internal e-mails between E&Y auditors concerning the CUC and CMS audits that exist on back-up tapes or in some similar format and have never been produced by E&Y.

Terri A. Mazur, Esq.
May 3, 2002
Page 2

      Please advise us in writing by May 13 (1) what efforts E&Y has undertaken to retrieve e-mails from 1997 and 1998 which are responsive to Cendant's document requests, (2) whether there now exist back-up tapes or other media housing such e-mails, (3) whether E&Y has destroyed, discarded, or lost any such back-up tapes or similar media since April 15, 1998, or permitted responsive e-mails to be automatically deleted, and (4) what efforts E&Y has undertaken to secure all relevant e-mails.

                                              Very truly yours,

                                              Peter W. Tomlinson

Enclosures
cc:    Steven M. Hecht, Esq. (by fax w/o enclosures)

831953v1

## Source Information for E-Mails Produced on 5/3/02

| | |
|---|---|
| Toby Ippolito | CEN1122431 - CEN1123203 |
| Scott Forbes | CEN1123204 - CEN1123221 |
| Mary Sattler | CEN1123222 - CEN1123247 |
| Elliot Bloom | CEN1123248 - CEN1123407 |
| Michael Wargotz | CEN1123408 - CEN1123571 |
| Peg Coleman | CEN1123572 - CEN1123599 |
| Ed Snack | CEN1123600 - CEN1123688 |
| Mark Hunter | CEN1123689 - CEN1123811 |
| Jim Huesby | CEN1123812 - CEN1124309 |
| Chris Annese | CEN1124310 - CEN1125265 |
| Scott Anderson | CEN1125266 - CEN1125362 |
| Gary Bell | CEN1125363 - CEN1125369 |
| Gregg Baron | CEN1125370 - CEN1125516 |
| Michael Monaco | CEN1125517 - CEN1125522 |
| David Johnson | CEN1125523 - CEN1125728 |
| Pat Berenyi | CEN1125729 - CEN1126153 |