UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v. ) <br> ) <br> ) <br> WALTER A. FORBES ) <br> ) | No. 3:02CR264 (AHN) <br><br> April 28, 2006 |

**MOTION OF DEFENDANT WALTER A. FORBES
TO PRECLUDE THE GOVERNMENT FROM PRESENTING
EVIDENCE, CROSS-EXAMINATION, OR ARGUMENT
CONCERNING THE CHARGING OF MR. FORBES' AIRPLANE
EXPENSES TO THE CENDANT MERGER RESERVE
(Forbes Third Trial Motion In Limine No. 22)**

Defendant Walter A. Forbes, through undersigned counsel, respectfully moves in limine to preclude the government from presenting any evidence, cross-examination, or argument at Mr. Forbes' third trial concerning the charging of Mr. Forbes' airplane expenses to the Cendant merger reserve. The grounds for this motion are set forth in the accompanying memorandum of points and authorities.

Oral Argument Requested

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: /s/

   Brendan V. Sullivan, Jr. (Bar No. ct17115)
   Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)
      - and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Motion of Defendant Walter A. Forbes to Preclude the Government from Presenting Evidence, Cross-Examination, or Argument Concerning the Charging of Mr. Forbes' Airplane Expenses to the Cendant Merger Reserve (Forbes Third Trial Motion In Limine No. 22) to be filed electronically and to be served on April 28, 2006 to the following via e-mail:

Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

_____
Barry S. Simon

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.            )<br>)<br>)<br>WALTER A. FORBES      )<br>)<br>) | No. 3:02CR264 (AHN)<br><br>April 28, 2006 |

MEMORANDUM IN SUPPORT OF
MOTION OF DEFENDANT WALTER A. FORBES
TO PRECLUDE THE GOVERNMENT FROM PRESENTING
EVIDENCE, CROSS-EXAMINATION, OR ARGUMENT
CONCERNING THE CHARGING OF MR. FORBES' AIRPLANE
EXPENSES TO THE CENDANT MERGER RESERVE
(Forbes Third Trial Motion In Limine No. 22)

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this memorandum in support of his motion in limine to preclude the government from presenting any evidence, cross-examination, or argument at Mr. Forbes' third trial concerning the charging of Mr. Forbes' plane expenses to the Cendant merger reserve.

## BACKGROUND

During the 2004 trial of Messrs. Forbes and Shelton, the government presented evidence that Mr. Shelton and Mr. Corigliano agreed to charge expenses incurred by Mr. Forbes to the Cendant merger reserve. The expenses in question were costs incurred by Mr. Forbes in 1995 and 1996 for business-related travel on a private plane. In September 1997, Mr. Forbes submitted the expenses to the Compensation Committee of the CUC Board of Directors for approval of the reimbursement after he learned from his accountant that he had erroneously undercharged CUC in prior years. See Ex. 3. Mr. Forbes subsequently signed an expense report

concerning those costs. Id. After Mr. Forbes had signed the expense report, Mr. Shelton placed a handwritten notation on the expense report that the expenses should be charged to the Cendant merger reserve. See Ex. 2 (reflecting handwritten notation).

The evidence presented at the 2004 trial established beyond any doubt that Mr. Forbes had no involvement in the decision by Mr. Corigliano and Mr. Shelton to charge Mr. Forbes' 1995 and 1996 plane expenses to the Cendant merger reserve. Both Mr. Corigliano and Mr. Shelton, the two people involved in that decision, testified to Mr. Forbes' lack of involvement in the decision (as did Mr. Forbes). See Tr. (7/14/04) at 7377-78 (Corigliano);[1] Tr. (9/14/04) at 12,323 (Shelton); see also Tr. (9/28/04) at 13,836-37 (W. Forbes). Mr. Shelton testified that Mr. Forbes never asked for the plane expenses to be charged to the merger reserve and that Mr. Shelton did not believe that he ever discussed that issue with Mr. Forbes. Tr. (9/22/04) at 13,181. Mr. Forbes testified that he had no knowledge that the plane expenses were charged to the merger reserve. Tr. (9/28/04) at 13,836-37. Mr. Corigliano testified that Mr. Forbes's signature was on the expense report before Mr. Corigliano and Mr. Shelton decided to charge the plane expenses to the merger reserve, Tr. (7/14/04) at 7375-77, and before Mr. Shelton wrote on the document that the expenses should be charged to the reserve, id. at 7378.

The government has acknowledged that Mr. Forbes was not involved in the decision to charge his business-related plane expenses to the Cendant merger reserve. On July

---

[1] Mr. Forbes cites Mr. Corigliano's testimony because he and Mr. Shelton were the only witnesses who testified about the decision to charge the plane expenses to the merger reserve. Mr. Corigliano is a liar and Mr. Forbes does not credit his testimony. As to this issue, Mr. Forbes merely points out that even Mr. Corigliano, who fabricated evidence against Mr. Forbes, did not include Mr. Forbes in this conversation, and did not attribute to Mr. Forbes knowledge that the expenses were charged to the merger reserve.

2

21, 2005, during Mr. Shelton's sentencing proceedings, government counsel Richard Schechter pointed out that "<u>Walter Forbes has nothing to do with this</u>." Tr. (7/21/05) at 287 (emphasis added); see also id. ("when Mr. Corigliano testified at trial, Your Honor, he didn't put Mr. Forbes in this, Mr. Walter Forbes in this conversation in any way, shape or form. Your Honor, he didn't put Mr. Forbes in this, Mr. Walter Forbes in this conversation in any way, shape or form.").

After Mr. Forbes filed a motion in limine to exclude evidence concerning the charging of the plane expenses to the Cendant merger reserve from Mr. Forbes' retrial, see Docket Nos. 1660-61 (filed 9/6/05), the government represented that it "does not intend to argue that Forbes knew about or was involved in that decision." Docket No. 1740 (filed 9/27/05) at 5. The government also acknowledged that the only relevance of this evidence would be as evidence of the existence of a conspiracy and Mr. Shelton's alleged participation in it. See id. at 5-6.

On November 12, 2005, Judge Thompson granted Mr. Forbes' motion in limine pursuant to Fed. R. Evid. 403. See Docket No. 1965. Judge Thompson concluded that "there is substantial other evidence as to the existence of the unlawful agreement charged in the indictment, and the charging of these airplane expenses to the Cendant merger reserve is not one of the overt acts charged in the indictment." Id. at 1. Judge Thompson further found that "this evidence has no probative value on the question of whether defendant Forbes knowingly and willfully became a member of the conspiracy and did so with the requisite unlawful intent." Id. Although the probative value of this evidence in a trial of Mr. Forbes alone was slight at best, Judge Thompson found that, "because this evidence relates to defendant Forbes' expenses and

3

includes a form signed by defendant Forbes, even though defendant Forbes was not involved in the decision to charge the expenses to the Cendant merger reserve, the jury could be confused or misled by the evidence to believe that defendant Forbes was somehow involved in the decision of had knowledge of it." Id. at 1-2. As a result, Judge Thompson concluded that "the probative value of this evidence is substantially outweighed by the danger of unfair prejudice or misleading the jury and it should be excluded pursuant to Fed. R. Evid. 403." Id. at 2.

In March 2006, counsel for Mr. Forbes inquired of government counsel whether the government sought to introduce any evidence on this subject at Mr. Forbes' third trial. Government counsel represented that the government would not seek to introduce any evidence on this subject. On April 17, 2006, Mr. Forbes filed a Notice of motions in limine that he was not filing (Docket No. 2252), which included the subject of plane expenses charged to the Cendant merger reserve. Id., Item 1. The Notice was reviewed by the government and specifically agreed to before it was filed. See Exs. 6-7. After Mr. Forbes filed the Notice, government counsel informed counsel for Mr. Forbes that the government would no longer abide by its prior representation that it would not seek to introduce any evidence on this subject. As a result, Mr. Forbes is filing this motion in limine.

## ARGUMENT

I. THE COURT SHOULD EXCLUDE EVIDENCE CONCERNING THE CHARGING OF MR. FORBES' PLANE EXPENSES TO THE CENDANT MERGER RESERVE PURSUANT TO FED. R. EVID. 403.

Judge Thompson's decision to preclude the government from presenting any evidence concerning the charging of Mr. Forbes' plane expenses to the Cendant merger reserve was well-reasoned and well-founded. Mr. Forbes respectfully submits that the Court should

4

exclude this evidence as well pursuant to Fed. R. Evid. 403.

It is undisputed that Mr. Forbes was not involved in the decision to charge plane expenses to the Cendant merger reserve. See Tr. (7/21/05) at 287. This evidence has no probative value with respect to Mr. Forbes. It would be extremely prejudicial to Mr. Forbes, as well as highly misleading, for the government to present this evidence at trial. The jury could easily come to the erroneous conclusion that Mr. Forbes was involved in the decision to improperly charge the expenses to the merger reserve, or that he was aware of the improper charge, because Mr. Forbes signed the expense form and the expenses in question were Mr. Forbes'. See Docket No. 1965 at 1-2. Because the evidence in question has absolutely no probative value with respect to Mr. Forbes, and would be exceedingly prejudicial, the Court should exclude it pursuant to Fed. R. Evid. 403.

The evidence in question has no probative value with respect to Mr. Forbes' innocence or alleged guilt. The government agrees that Mr. Forbes had nothing to do with the decision to charge the plane expenses to the merger reserve. Tr. (7/21/05) at 287. Given that fact, and the evidence presented at the 2004 trial -- which demonstrated conclusively that Mr. Forbes was not involved in this decision and was not aware of it -- the plane expense evidence proves nothing with respect to Mr. Forbes. According to the government, the only purported relevance of this evidence is as evidence of the existence of a conspiracy and Mr. Shelton's alleged participation in it. See Docket No. 1740 (filed 9/27/05) at 5-6. But Mr. Shelton is not on trial here, and the government's proffered evidence proves nothing about whether Mr. Forbes was a member of a conspiracy. See Docket No. 1965 at 1. Accordingly, the probative value of this evidence in a trial of Mr. Forbes alone is minimal at best.

5

To the extent this evidence has any probative value in this case, it is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. First, the evidence would be highly prejudicial to Mr. Forbes because the plane expenses charged to the merger reserves were Mr. Forbes' expenses and he signed the expense reimbursement form. Although Mr. Forbes had nothing to do with the improper charging of the expenses to the Cendant merger reserve, knew nothing about it, and signed the form before it said anything about a charge to the merger reserve, a juror could conclude that Mr. Forbes must have been involved because the expenses in question were his. A juror also could speculate, erroneously, that because the form itself reflects that the plane expenses will be charged to the reserve, and because Mr. Forbes signed the form, Mr. Forbes must have signed the form after the merger reserve language was added to the form.

Second, the evidence is prejudicial because it involves a significant amount of money. The plane expenses in question were in excess of $500,000. Given the lack of probative value of this evidence with respect to Mr. Forbes, the likely impact of it will be to emphasize Mr. Forbes' use of an expensive private plane and to bias the jury against Mr. Forbes. It is improper for the government to place undue emphasis on the wealth of a defendant. United States v. Stahl, 616 F.2d 30 (2d Cir. 1980); see also United States v. Lachman, 48 F.3d 586, 592 (1st Cir. 1995) ("The concern is with any pronounced tendency of evidence to lead the jury, often for emotional reasons, to desire to convict a defendant for reasons other than the defendant's guilt.").

Third, the plane expense evidence is both misleading and confusing. It involves Mr. Forbes' expenses, and a form signed by Mr. Forbes, yet Mr. Forbes was not involved in the

6

decision to charge the expenses to the Cendant merger reserve and was not aware of that decision. A juror could certainly be misled by this evidence to believe that Mr. Forbes was somehow involved in this decision or had knowledge of it. The minimal probative value (at best) of this evidence with respect to the case is far outweighed by its potential to mislead and confuse the jury.

Fourth, if this evidence is allowed, Mr. Corigliano likely will testify, as he did in the 2004 trial, that Mr. Forbes originally sought reimbursement for more than $1 million in plane expenses, Tr. (7/14/04) at 7374-75, that Mr. Forbes' travel and entertainment expenses were "a very sore subject with both Kirk [Shelton] and [CUC executive] Chris [McLeod]," id. at 7375, and that Mr. Shelton reduced the amount of plane expenses for which Mr. Forbes sought reimbursement because of "errors or duplication." Id. This testimony would be highly prejudicial to Mr. Forbes, because it would suggest that Mr. Forbes' reimbursement request was improper and had to be reduced, and that Mr. Forbes' expenses were a chronic problem or subject of contention at CUC. Because Mr. Forbes' request for reimbursement was entirely proper, and was reviewed and approved by the Compensation Committee of the CUC Board, Mr. Corigliano's suggestion to the contrary would be extremely prejudicial and misleading to the jury. Mr. Corigliano's testimony also would emphasize Mr. Forbes' use of an expensive private plane and his high travel and entertainment expenses, which could bias the jury against Mr. Forbes.

Finally, when weighing the significant prejudicial effect of this evidence against its limited probative value, the Court should consider the other evidence available to the government to prove the existence of a conspiracy and Mr. Shelton's alleged participation in it.

See Old Chief v. United States, 519 U.S. 172, 183 (1997) ("[A] judge applying Rule 403 could reasonably apply some discount to the probative value of an item of evidence when faced with less risky alternative proof going to the same point."); id. at 184-85 (court may evaluate "evidentiary alternatives" to challenged evidence when performing Rule 403 balancing); Lachman, 48 F.3d at 593 ("In applying Rule 403, it is plainly pertinent whether a litigant has some alternative way to establish a fact that involves no (or at least a lesser) risk of prejudice . . . ."); Fed. R. Evid. 403, advisory committee notes ("The availability of other means of proof may also be an appropriate factor" to consider in the Rule 403 analysis).

Here, as Judge Thompson found (Docket No. 1965 at 1), the government has ample evidence at its disposal to prove the existence of a conspiracy including, inter alia, the testimony of government witnesses Pember, Corigliano, and Kearney and numerous documents showing that Mr. Corigliano and his subordinates manipulated the earnings of CUC. The government cannot seriously claim that it needs to offer evidence about the charging of Mr. Forbes' plane expenses to the Cendant merger reserve to establish the existence of a conspiracy.

Moreover, the government has other evidence from which it could establish Mr. Shelton's purported involvement in the conspiracy. Indeed, it spent most of the 2004 trial presenting such evidence. Since Mr. Shelton is not on trial in this proceeding, the government is not required to present evidence seeking to establish beyond a reasonable doubt that he was a member of the alleged conspiracy. It need only present evidence sufficient to establish by a preponderance of the evidence that Mr. Shelton was an alleged member of the conspiracy in order for his statements to be admissible in this trial. See Bourjaily v. United States, 483 U.S. 171, 175-76 (1987). The government does not need to present evidence concerning the charging

of Mr. Forbes' plane expenses to the Cendant merger reserve to make that more limited showing.

Because the evidence in question does not prove anything with respect to Mr. Forbes, but would be highly prejudicial to him, and because the government has other evidence at its disposal to establish both the existence of a conspiracy and Mr. Shelton's purported involvement in it, the Court should exclude this evidence under Fed. R. Evid. 403.

## II. THE COURT SHOULD PRECLUDE THE GOVERNMENT FROM OFFERING THE PLANE EXPENSE REIMBURSEMENT VOUCHER PURSUANT TO FED. R. EVID. 1001 AND 1003.

Government Exhibit ("GX") 158 (Ex. 1) purports to be a copy of an employee expense report for Mr. Forbes. Government Exhibit 388 (Ex. 2) purports to be the same document. The two documents are not identical, however. For example, one contains a signature by Comp-U-Card President Tony Menchaca (GX 388); the other does not. In addition, one contains two different post-it notes (GX 158); the other does not.

During discovery, Cendant and the government produced various versions of the document. See, e.g., Exs. 3-5. In addition to the versions contained in GX 158 and GX 388, for example, copies of the document have been produced that contain a single post-it note that is different than the two post-it notes on GX 158. See Ex. 5. Moreover, both GX 388 and GX 158 contain a handwritten notation "Balance due to plane hrs for CUC business – see attached." GX 158; GX 388 (emphasis added). Neither GX 388 nor GX 158, however, contains an attachment.

It is impossible to determine, without examining the originals of GX 158 and GX 388, which of the numerous versions of the document that exist is an accurate reproduction of the actual record in Cendant's files. It also is impossible to determine, without examining the originals of GX 158 and GX 388, whether the original document maintained in Cendant's files

9

was part of a larger group of documents maintained together as documentation concerning this expense. It certainly appears, from some of the versions of the document produced in discovery, that the document was not maintained in isolation, but rather with several attachments. See Exs. 3-5. Finally, it is impossible to determine, without examining the originals of GX 158 and GX 388, which of the handwriting on the different versions of the document was written in different ink.

Because there are so many versions of the document in question, with different handwritten notations, post-its, and attachments, none of the different versions of the document constitutes a "duplicate" as that term is defined in Fed. R. Evid. 1001(4).[2] Federal Rule of Evidence 1001(4) provides that photocopies are considered duplicates of original documents if they "accurately reproduce[] the original." Id. (emphasis added). Here, however, the original has not been supplied and it is impossible to determine, from the different versions of the document, which is an accurate reproduction of the original.[3] Accordingly, neither GX 158 nor GX 388 is admissible as a "duplicate" document under Rule 1001(4).

GX 158 and GX 388 also are not admissible under Fed. R. Evid. 1003. Under Rule 1003, "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Id. Here, a genuine question has been raised

---

[2]  Judge Thompson rejected Mr. Forbes' arguments under Fed. R. Evid. 1001 and 1003 and permitted the government to admit these documents at the 2004 trial. This issue was mooted at the 2005 trial by Judge Thompson's decision to exclude evidence on the subject of Mr. Forbes' plane expenses pursuant to Fed. R. Evid. 403. See Docket No. 1965.

[3]  Mr. Forbes subpoenaed the original documents from Cendant, which represented that it had no original of any of the various versions of the document.

10

as to the authenticity of the original and, under the circumstances, it would be unfair to admit the purported duplicate in lieu of the original. Indeed, it is entirely unclear <u>which</u> of the many versions of the document is an accurate copy of the document in Cendant's files and which documents were appended to the document in its original form. Without the original, it also is impossible to determine the different inks on the document.

Under these circumstances, it would be fundamentally unfair to admit GX 158, GX 388, or any other version of the expense reimbursement form into evidence in lieu of the original. <u>See, e.g.</u>, <u>Opals on Ice Lingerie v. Bodylines, Inc.</u>, 320 F.3d 362, 371 (2d Cir. 2003) (photocopies not admissible under Fed. R. Evid. 1003 where parties produced materially different copies of agreement and no original could be located); <u>United States v. Haddock</u>, 956 F.2d 1534, 1545-46 (10th Cir. 1992) (affirming where trial court excluded photocopies where questions raised concerning accuracy of copies and original was not available), <u>vacated in part on other grounds</u>, 961 F.2d 933 (10th Cir. 1992); <u>Amoco Prod. Co. v. United States</u>, 619 F.2d 1383, 1391 (10th Cir. 1980) (affirming exclusion of copies under Fed. R. Evid. 1003 to prove content of document where critical part of original was not completely reproduced in the duplicate). Accordingly, the Court should exclude the expense reimbursement document under Fed. R. Evid. 1001 and 1003.

## **CONCLUSION**

For the foregoing reasons, the Court should preclude the government from presenting evidence, cross-examination, or argument concerning the charging of Mr. Forbes' airplane expenses to the Cendant merger reserve.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
    Brendan V. Sullivan, Jr. (Bar No. ct17115)
    Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Memorandum in Support of Motion of Defendant Walter A. Forbes to Preclude the Government from Presenting Evidence, Cross-Examination, or Argument Concerning the Charging of Mr. Forbes' Airplane Expenses to the Cendant Merger Reserve (Forbes Third Trial Motion In Limine No. 22) to be filed electronically and to be served on April 28, 2006 to the following via e-mail:

>Norman Gross, Esq. (norman.gross@usdoj.gov)
>Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
>Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

Barry S. Simon