# EXHIBIT 1

## CUC INTERNATIONAL INC.

## MINUTES

## BOARD OF DIRECTORS

Pursuant to Notice duly given, a meeting of the Board of Directors was held in New York, NY on April 9, 1997. All Directors were present.

Also present were Cosmo Corigliano, Amy N. Lipton, and Robert T. Tucker. Various other members of the Company's management attended portions of the meeting. Walter A. Forbes, Chairman of the Company, presided and Robert T. Tucker acted as Secretary.

Mr. Corigliano reviewed the Company's financial results for the fourth quarter and for the fiscal year ended January 31, 1997. Such results were compared to results for the relevant period in the prior fiscal periods and the Company budgets for the fourth quarter and fiscal 1997.

Mr. Shelton then led a discussion on certain possible acquisitions which had been discussed at the previous meeting. Mr. Shelton advised that the acquisitions of S Corp and SH Corp were not proceeding at this time. Mr. Shelton also reviewed the status of several possible acquisitions which were in a very early exploratory stage. Mr. Shelton advised the Board that management would report further to the Board at its next meeting.

Mr. Shelton then led a discussion of certain of the Company's operating units including BCI, Interval, Entertainment Publications and FISI.

Ms. Lipton reported on the status of certain litigation matters relating to the acquisition of Ideon.

Mr. Burnap, Chairman of the Nominating Committee, then presented to the Board, the resolutions of the Committee relating to the 1997 Annual Meeting of Stockholders. After discussion, the following resolutions were approved by the Board. Robert Davidson and Janice Davidson abstained from the vote on this matter.

This document is submitted as CONFIDENTIAL
Exemption from disclosure to non-governmental
parties of this document and any copies of it is
claimed under Freedom of Information Act

GOVERNMENT EXHIBIT EX. 77

| | |
|---|---|
| 1. Date, Time and Place | June 11, 1997 - 9:15 AM<br>Hyatt Regency, Old Greenwich, CT. |
| 2. Record Date | April 25, 1997 |
| 3. Election Inspectors | Boston EquiServe |
| 4. Proxies | Walter A. Forbes<br>Cosmo Corigliano |
| 5. Size of Board | 11 Members |
| 6. Candidates for the Board | |
| Bartlett Burnap | Term Ending 2000 |
| Robert M. Rittereiser | Term Ending 2000 |
| Walter A. Forbes | Term Ending 2000 |
| 7. Accountants for Fiscal Year Ending January 31, 1998 | Ernst & Young |

Robert Davidson and Janice Davidson were then excused from the meeting and a discussion took place relating to certain aspects of the acquisition and operation of Davidson Associates, Inc. At the conclusion of this discussion, Robert Davidson and Janice Davidson rejoined the meeting.

Ms. Davidson then led a discussion concerning questions of the Company's corporate culture and values, particularly as these relate to the Company's entertainment software products. After discussion, the following resolution, presented by Ms. Davidson, was unanimously adopted:

> RESOLVED that the CUC management establish a Code of Decency containing guidelines for the treatment of sex, violence and foul language in the subject and content of the Company's entertainment software products for the Board to review at its June meeting.

There then ensued a short discussion of the format and scope of the minutes of the Board of Directors meetings. The Board agreed to table this discussion until the June, 1997 meeting.

This document is submitted as CONFIDENTIAL
Exemption from disclosure to non-governmental
parties of this document and any copies of it is
claimed under Freedom of Information Act

Several members of the Company's management then led a lengthy presentation and discussion of the Company's interactive operations and, in particular, its present and future activities on the Internet.

There being no further business, the meeting duly adjourned.

April 9, 1997

Robert T. Tucker

Secretary

CD - 24539

This document is submitted as CONFIDENTIAL
Exemption from disclosure to non-governmental parties of this document and any copies of it is claimed under Freedom of Information Act

# EXHIBIT 2

Copy of FDG

The St. Regis

GOVERNMENT EXHIBIT EX. 5

4/9/97

Exec Board ~~[illegible]~~ Meeting

All directors ex, Ang, Tucker

1. Cos. went over year end figures actual v budget & by business unit. Mr. Donelan asked certain questions concerning the company's reserve policy which were answered by Cos & Tucker.

2. Acq:

A. Signature — somewhat similar [illegible] TPS, Allied, Road & Track - its for sale by Mark Ward / GE

We put in offer letter & then raised it & were still way below. HFS is probably going to buy it for a large number — it would be expensive & we pass.

B. Looking at PBT [illegible] King's company & keep working on it. Fits well with HFS. about 150 mm — just [illegible] now.

C. Bonyhart [illegible] (data services) +

712907

An ITT Sheraton Luxury Hotel
Fifth Avenue At 55th Street, New York, New York 10022 Tel 212 753 4500, Telex 148368, Fax 212 787 3447



The St. Regis

New concept Tango —
Partner is CBS Radio — 300 radio
stations — looks good.

Sally Foster — people are billing to
begin — we think E Club sales
through schools is better.
in low 30s

Software — S/Holyoke — after
review we lowered our estimate
& think they might be cheaper
in the future —
Still believed at right price but it's
too expensive.

(1) Bulky Systems / Completed
1x revenue 23 mm slowed slow 3-4 mm
paper this year.

working on Capital multimedia &
some others.

looking at lot of ideas but
way down the road.

3 Business Update —
looking to grow on-line membership
BCI & EBB are getting saturated.

AN ITT SHERATON LUXURY HOTEL
FIFTH AVENUE AT 55TH STREET NEW YORK, NEW YORK 10022 TEL 212 753 4500 TELEX 148368 FAX 212 787 3447

712908



The St. Regis
NEW YORK

Real Lazzaro Atlas Interval of RCI – the whole time shares business is expanding.

Discussion of special charges to P.E. & our current P.E. forecast in general range but lower end.

Wright Express – Partnering with AmEx

Any reports on Ideon related negotiations with Holmes

Nominating Committee
Walter, R.R. & Bob –
lowering # of directors to 11 –
Motion approved – Mr. & Mrs. Davidson abstained.

Discussion of Davidson matter w/o them – Kirk – Sold an asset that would ruin company & ... etc.

712909



Jon – What kind of company
what kind of entertainment software
e.g. X rated and rated product –
violence / social responsibility issues.
Chris changed with Wally, it
out

Board policies available on the
issue (T/W, or Disney) We should
consider these.

What standards for our
entertainment software

Bd. unanimous that a
Corporate standard should be set.

---

CARU

We have no R rated
in products or AO

Not establish rates +
subject. Violence / sex etc.
Not by far – Second
Chris

Additional Business –

712910



RR re Minutes —
Board Policy — Shall be
Board Description

Motion to take minutes →

Approved →

Interaction Strategy / Tony

1. Near Term — sell stand alone
memberships on Internet
Not Through AOL
Our interest — Basic mobility, members are
Mostly Through AOL

2. Netmarket — Long Term
for one see you access all of these
Overtime, this will be the
Main product — Overload after

AN ITT SHERATON LUXURY HOTEL
FIFTH AVENUE AT 55TH STREET, NEW YORK, NEW YORK 10022 TEL 212.753.4500 TELEX 148368 FAX 212.787.3447

712911

John Battam

The St. Regis

Barsanù

$59 price (save non-member ....)

$79 gets additional service

Netmarket is a work in progress

Lengthy discussion Net market

An ITT Sheraton Luxury Hotel
Fifth Avenue At 55th Street, New York, New York 10022 Tel 212.753.4500, Telex 148368, Fax 212 787 3447

712912

# EXHIBIT 3

ROBERT T. TUCKER

ATTORNEY AT LAW

61 PURCHASE ST.
-, N.Y. 10580

(914) 967-8105
FAX: (914) 967-8161

April 21, 1997

**VIA FEDERAL EXPRESS**

Amy N. Lipton, Esq.
CUC International Inc.
707 Summer Street
Stamford, CT 06901

Dear Amy:

As we discussed, I enclose draft minutes of the Board Meeting of April 9, 1997. I suggest that, on an on-going basis, we adopt the following procedure. After each meeting, I will prepare draft minutes and send them to you for review by you and anyone else you think may be appropriate. Once we are satisfied with the minutes, I will send them to all of the directors for their review prior to the next meeting. At the next meeting, the minutes will be submitted for approval.

Further, to clear up any past issues and put a stop to the complaining, I suggest that I send out a copy of all minutes since the new directors started (Sept. 1996 is the first meeting) and we present these minutes for approval in June. In this connection, I enclose a copy of a proposed cover letter to the Board to accompany these minutes. I would appreciate your comments.

With respect to content of the minutes, I propose we generally retain the format we have always used and which a significant majority of the Board prefers; that is, we carefully document all actions taken by the Board but summarize discussions in a general way. With respect to the specific comments made by Jan Davidson on the minutes of March 7, 1997, I have no problem

GOVERNMENT EXHIBIT Ex. 453

including her expanded discussion of the comments made by her or Bob Davidson (to the extent we previously agreed - leaving out the more egregious comments such as "the plummeting earnings of Sierra", etc.) but I propose eliminating most of the comments she attributes to Bob Rittereiser or Walter. I enclose a hand marked copy of the latest draft of the March 7 minutes showing these deletions.

Finally, for your information I enclose an exchange of correspondence between Jan and me.

Best Regards.

Very truly yours,

Robert T. Tucker

RTT/kau

CUC INTERNATIONAL INC. DRAFT

MINUTES

BOARD OF DIRECTORS

Pursuant to Notice duly given, a meeting of the Board of Directors was held in New York, NY on April 9, 1997. All Directors were present.

Also present were Cosmo Corigliano, Amy N. Lipton, and Robert T. Tucker. Various other members of the Company's management attended portions of the meeting. Walter A. Forbes, Chairman of the Company, presided and Robert T. Tucker acted as Secretary.

Mr. Corigliano reviewed the Company's financial results for the fourth quarter and for the fiscal year ended January 31, 1997. Such results were compared to results for the relevant period in the prior fiscal periods and the Company budgets for the fourth quarter and fiscal 1997. ~~Mr. Davidson asked certain questions concerning the reserves shown on the Company's financial statements and the Company's policies regarding reserves. Mr. Corigliano and Mr. Shelton responded to these inquiries.~~

Mr. Shelton then led a discussion on certain possible acquisitions which had been discussed at the previous meeting. Mr. Shelton advised that the acquisitions of S Corp and SH Corp were not proceeding at this time. Mr. Shelton also reviewed the status of several possible acquisitions which were in a very early exploratory stage. Mr. Shelton advised the Board that management would report further to the Board at its next meeting.

Mr. McLeod then led a discussion of certain of the Company's operating units including BCI, Interval, Entertainment Publications and FISI.

Ms. Lipton reported on the status of certain litigation matters relating to the acquisition of Ideon.

Mr. Burnap, Chairman of the Nominating Committee, then presented to the Board, the resolutions of the Committee relating to the 1997 Annual Meeting of Stockholders. After discussion, the following resolutions were approved by the Board. Robert Davidson and Janice Davidson abstained from the vote on this matter.

| | |
|---|---|
| 1. Date, Time and Place | June 11, 1997 - 9:15 AM[?] Hyatt Regency, Old Greenwich, CT. |
| 2. Record Date | April 25, 1997 |
| 3. Election Inspectors | Boston EquiServe |
| 4. Proxies | Walter A. Forbes<br>E. Kirk Shelton |
| 5. Size of Board | 11 Members |
| 6. Candidates for the Board | |
| Bartlett Burnap | Term Ending 2000 |
| Robert M. Rittereiser | Term Ending 2000 |
| Walter A. Forbes | Term Ending 2000 |
| 7. Accountants for Fiscal Year Ending January 31, 1998 | Ernst & Young |

Robert Davidson and Janice Davidson were then excused from the meeting and a discussion took place relating to certain aspects of the acquisition and operation of Davidson Associates, Inc. At the conclusion of this discussion, Robert Davidson and Janice Davidson rejoined the meeting.

Ms. Davidson then led a discussion concerning questions of the Company's values, particularly as these relate to the Company's entertainment software products. After discussion, the following resolution, presented by Ms. Davidson, was unanimously adopted:

> RESOLVED that the CUC management establish a Code of Decency, with guidelines for the treatment of sex violence and foul language in the subject and content of the Company's entertainment software products, for the Board to review at its June meeting.

There then ensued a short discussion of the format and scope of the minutes of the Board of Directors meetings. The Board agreed to table this discussion until the June, 1997 meeting.

Several members of the Company's management then led a lengthy presentation and discussion of the Company's interactive operations and, in particular, its present and future activities on the Investment.

There being no further business, the meeting duly adjourned.

April 9, 1997

__________________________

Robert T. Tucker

Secretary

**DRAFT**

TO: The Board of Directors
CUC International Inc.

FROM: Robert T. Tucker

RE: Minutes - Board of Directors Meetings

DATE: April 21, 1997

**************************************************************************************************

As discussed at our recent meeting and in accordance with our practice, I enclose draft Minutes of the meeting of April 9, 1997. These Minutes will be submitted for approval at the upcoming meeting in June.

To ensure there are no misunderstandings, I also enclose Minutes of the meeting of September 10, 1996; October 29, 1996 (Executive Committee); December 4, 1996; January 19, 1997; January 28, 1997 (Executive Committee); January 31, 1997; and March 7, 1997. These minutes will also be submitted to the June meeting for approval.

Any comments may be directed to Amy or myself or, of course, can be presented at the June meeting.

Best Regards.

RTT/kau

CUC INTERNATIONAL INC.          DRAFT
                                4/2/97

MINUTES

BOARD OF DIRECTORS

Pursuant to notice duly given, a meeting of the Board of Directors was held via conference telephone on March 7, 1997. All directors, other than Mr. Rumbough, were present.

Also present were Cosmo Corigliano, Amy N. Lipton, Robert T. Tucker. Walter A. Forbes, Chairman of the Company, presided and Mr. Tucker acted as Secretary.

Mr. Shelton stated that the primary purpose of the meeting was to review the status of certain possible acquisitions.

Mr. Shelton first reviewed the status of S Corp. The Company had been advised by the Investment Banker to the owner of S Corp. that a sale was being considered. Mr. Corigliano reviewed S Corp.'s financial situation. Mr. Shelton reviewed S Corp.'s business activities and discussed possible competitors if the company is actually put up for sale. The Board was advised that Management would be meeting with representatives of S Corp. in approximately one week. Management was instructed to continue to explore this matter and report back to the Board.

Mr. Shelton then led a discussion of the possible acquisition of SH Corp. Mr. Shelton reviewed the status of the negotiations. Mr. Shelton advised the Board that members of Management would be traveling to review the international operations of SH Corp. In addition, development activities and legal matters were being carefully reviewed.

Ms. Davidson reviewed several aspects of the business of SH Corp. which in her view, required specific attention and further due diligence. Among these were SH Corp.'s return situation and return history, its operating margins and its forward profit forecast. Mr. Corigliano pointed out that the financials of SH Corp. provided a fairly large reserve for returns. Ms. Davidson also suggested that in depth product due diligence was in order as well as a careful review of the product progress toward SH's significant increase in product flow and delivery schedule.

Mr. Shelton and Mr. McLeod then reviewed the management personnel of SH Corp. stating that management roles had not been determined and employment contracts have not yet been negotiated and the strategic fit of SH Corp. with the Company which was that in addition to its entertainment software

titles, SH Corp.'s licensed properties could be further marketed and leveraged by the Company's development and marketing resources, and that SH Corp.'s European operations would increase the distribution of the Company's software in Europe.

Mr. Davidson noted that changes in the valuation summary and the marketplace since the last discussion made the SH acquisition considerably less attractive than previously. Mr. Davidson then enumerated several concerns over this possible acquisition. These included (1) the reliability of the earnings of SH Corp. in view of their record of many years of losses and only a few quarters of profitability; (2) the significant recent appreciation in its stock price and (3) current issues at CUC Software which will require significant attention of management. After stating some specifics, Mr. Davidson stated that CUC should not be spending another $ 350 - 400 million on an acquisition until we get own operations in order.

Ms. Davidson asked the Board to bear in mind when considering acquisitions the differences in the software and the membership parts of the business, particularly with regard to the different management challenges and different risks and benefits to shareholder value. ~~Mr. Rittereiser noted that CUC had a long track record of successful integration of its acquisitions and expressed his confidence that the very capable CUC management would be equally successful in integrating software acquisitions~~.

Mr. Forbes acknowledged the concerns of Mr. and Ms. Davidson. ~~but expressed that he did not agree with them.~~ He pointed out that the Board must always keep in mind the overall vision of CUC. ~~and move forward on this acquisition opportunity if upon further review it was merited~~. Ms. Davidson expressed her agreement with an acquisition as long as in the Board's best business judgment there was a clear reason to believe that the acquisition would increase shareholder value. Management was instructed to continue to review this matter and report back to the Board.

Ms. Lipton then reviewed the current situation regarding trading in the Company's securities by the Members of the Board.

There being no further business, the meeting adjourned.

March 7, 1997

Robert T. Tucker, Secretary

ROBERT T. TUCKER

ATTORNEY AT LAW

61 PURCHASE ST.
YE, N.Y. 10580

(914) 967-8105
FAX: (914) 967-816

April 14, 1997

**VIA FACSIMILE**

Ms. Janice G. Davidson
The Davidson Group
Del Amo Financial Center
Union Bank Tower, Suite 960
21515 Hawthorne Boulevard
Torrance, CA 90503

Dear Jan:

As we discussed, please send me the text of the resolution you presented at the recent CUC Board Meeting. I would like to ensure that the resolution is presented correctly in the minutes.

Very truly yours,

Robert T. Tucker

RTT/kau

*The Davidson Group*
**Del Amo Financial Center, Union Bank Tower, Suite 960**
**21515 Hawthorne Blvd, Torrance, California 90503**
**Phone 310/540-2740 FAX 310/540-2804**

April 14, 1997

Mr. Robert Tucker
Secretary, CUC International, Inc.
61 Purchase Street.
Rye, New York 01580

FAX: 914/967-8161

Dear Robert,

At our CUC Board meeting last week, you requested that I send you the exact wording of my motion to establish a decency policy:

> "I move that the CUC management establish a Code of Decency, with guidelines for the treatment of sex, violence, and foul language in the subject and content of the Company's entertainment software products. for the Board to review at the June meeting."

I know that concern was expressed at last week's meeting that general, less specific board minutes were preferable, but I feel that the record should adequately reflect the issues raised in our board discussions. I would like to reiterate my suggestion that within ten days following each board meeting, you circulate to all the directors a draft of the minutes for their review and approval. Also, I request that going forward CUC conform to the standard practice of having the previous meeting's minutes reviewed and approved by the directors. (According to my records. minutes have not been distributed or approved by the board during my term as a director.)

Very truly yours,

Jan

Janice G. Davidson

# EXHIBIT 4

Apr-21-97 03:06P R. T. Tucker/Phoenix Prod (914) 967 - 8161 P.01

SJW 4/28/97
TL 4-29-97

Note per discussion with Robert Tucker these were the only minutes subsequent to the minutes reviewed as part of our previous audit work on the fiscal 1997 results. No meetings were to be held between the date of this fax and the filing of the 10-K.

**ROBERT T. TUCKER, ESQ.**
**61 Purchase Street, # 2**
**Rye, New York 10580**

**Telephone: (914) 967 - 8105**
**Facsimile: (914) 967 - 8161**

**FACSIMILE COVER PAGE**

**DATE:** 4/21/97 **TIME:** 3:00 PM

**TOTAL NUMBER OF PAGES:** 6 **(Including this cover Page)**

**ATTENTION:** Joseph Caparelli/Simon Wood

**COMPANY:** Ernst & Young

**FAX NUMBER:** (203) 326 - 8228

**FROM:** Robert T. Tucker

**MESSAGE**

**Re: CUC International Inc.**
**Minutes**

T

******************

**IF YOU HAD ANY TROUBLE RECEIVING THIS TRANSMISSION, PLEASE CALL (914) 967 - 8105 IMMEDIATELY.**

DEFENDANT'S EXHIBIT 1089
PENGAD 800-631-6989

CUC INTERNATIONAL INC.

DRAFT
4/2/97

MINUTES

BOARD OF DIRECTORS

Pursuant to notice duly given, a meeting of the Board of Directors was held via conference telephone on March 7, 1997. All directors, other than Mr. Rumbough, were present.

Also present were Cosmo Corigliano, Amy N. Lipton, Robert T. Tucker. Walter A. Forbes, Chairman of the Company, presided and Mr. Tucker acted as Secretary.

Mr. Shelton stated that the primary purpose of the meeting was to review the status of certain possible acquisitions.

Mr. Shelton first reviewed the status of S Corp. The Company had been advised by the Investment Banker to the owner of S Corp. that a sale was being considered. Mr. Corigliano reviewed S Corp.'s financial situation. Mr. Shelton reviewed S Corp.'s business activities and discussed possible competitors if the company is actually put up for sale. The Board was advised that Management would be meeting with representatives of S Corp. in approximately one week. Management was instructed to continue to explore this matter and report back to the Board.

Mr. Shelton then led a discussion of the possible acquisition of SH Corp. Mr. Shelton reviewed the status of the negotiations. Mr. Shelton advised the Board that members of Management would be traveling to review the international operations of SH Corp. In addition, development activities and legal matters were being carefully reviewed.

Ms. Davidson reviewed several aspects of the business of SH Corp. which in her view, required specific attention and further due diligence. Among these were SH Corp.'s return situation and return history, its operating margins and its forward profit forecast. Mr. Corigliano pointed out that the financials of SH Corp. provided a fairly large reserve for returns. Ms. Davidson also suggested that in depth product due diligence was in order as well as a careful review of the product progress toward SH's significant increase in product flow and delivery schedule.

Mr. Shelton and Mr. McLeod then reviewed the management personnel of SH Corp. stating that management roles had not been determined and employment contracts have not yet been negotiated and the strategic fit of SH Corp. with the Company which was that in addition to its entertainment software

titles, SH Corp.'s licensed properties could be further marketed and leveraged by the Company's development and marketing resources, and that SH Corp.'s European operations would increase the distribution of the Company's software in Europe.

Mr. Davidson noted that changes in the valuation summary and the marketplace since the last discussion made the SH acquisition considerably less attractive than previously. Mr. Davidson then enumerated several concerns over this possible acquisition. These included (1) the reliability of the earnings of SH Corp. in view of their record of many years of losses and only a few quarters of profitability; (2) the significant recent appreciation in its stock price and (3) current issues at CUC Software which will require significant attention of management. After stating some specifics, Mr. Davidson stated that CUC should not be spending another $ 350 - 400 million on an acquisition until we get own operations in order.

↳ ie per Cosmo improve performance and results of CUC Software.

Ms. Davidson asked the Board to bear in mind when considering acquisitions the differences in the software and the membership parts of the business, particularly with regard to the different management challenges and different risks and benefits to shareholder value.

Mr. Forbes acknowledged the concerns of Mr. and Ms. Davidson. He pointed out that the Board must always keep in mind the overall vision of CUC. Ms. Davidson expressed her agreement with an acquisition as long as in the Board's best business judgment there was a clear reason to believe that the acquisition would increase shareholder value. Management was instructed to continue to review this matter and report back to the Board.

Ms. Lipton then reviewed the current situation regarding trading in the Company's securities by the Members of the Board. → Per Cosmo no SEC/pooling implications.

There being no further business, the meeting adjourned.

March 7, 1997

[signature]

Robert T. Tucker
Secretary

CUC INTERNATIONAL INC. DRAFT

MINUTES

BOARD OF DIRECTORS

Pursuant to Notice duly given, a meeting of the Board of Directors was held in New York, NY on April 9, 1997. All Directors were present.

Also present were Cosmo Corigliano, Amy N. Lipton, and Robert T. Tucker. Various other members of the Company's management attended portions of the meeting. Walter A. Forbes, Chairman of the Company, presided and Robert T. Tucker acted as Secretary.

Mr. Corigliano reviewed the Company's financial results for the fourth quarter and for the fiscal year ended January 31, 1997. Such results were compared to results for the relevant period in the prior fiscal periods and the Company budgets for the fourth quarter and fiscal 1997. Mr. Davidson asked certain questions concerning the reserves shown on the Company's financial statements and the Company's policies regarding reserves. Mr. Corigliano and Mr. Shelton responded to these inquiries.

Per discussion with Cosmo Corigliano no new information on potential acquisitions.

Mr. Shelton then led a discussion on certain possible acquisitions which had been discussed at the previous meeting. Mr. Shelton advised that the acquisitions of S Corp and SH Corp were not proceeding at this time. Mr. Shelton also reviewed the status of several possible acquisitions which were in a very early exploratory stage. Mr. Shelton advised the Board that management would report further to the Board at its next meeting.

Mr. McLeod then led a discussion of certain of the Company's operating units including BCI, Interval, Entertainment Publications and FISI.

See legal letter updates

Ms. Lipton reported on the status of certain litigation matters relating to the acquisition of Ideon.

Mr. Burnap, Chairman of the Nominating Committee, then presented to the Board, the resolutions of the Committee relating to the 1997 Annual Meeting of Stockholders. After discussion, the following resolutions were approved by the Board. Robert Davidson and Janice Davidson abstained from the vote on this matter.

| | |
|---|---|
| 1. Date, Time and Place | June 11, 1997 - 9:15 AM[?]<br>Hyatt Regency, Old Greenwich, CT. |
| 2. Record Date | April 25, 1997 |
| 3. Election Inspectors | Boston EquiServe |
| 4. Proxies | Walter A. Forbes<br>E. Kirk Shelton |
| 5. Size of Board | 11 Members |
| 6. Candidates for the Board | |
| Bartlett Burnap | Term Ending 2000 |
| Robert M. Rittereiser | Term Ending 2000 |
| Walter A. Forbes | Term Ending 2000 |
| 7. Accountants for Fiscal Year Ending January 31, 1998 | Ernst & Young |

Robert Davidson and Janice Davidson were then excused from the meeting and a discussion took place relating to certain aspects of the acquisition and operation of Davidson Associates, Inc. At the conclusion of this discussion, Robert Davidson and Janice Davidson rejoined the meeting.

Ms. Davidson then led a discussion concerning questions of the Company's values, particularly as these relate to the Company's entertainment software products. After discussion, the following resolution, presented by Ms. Davidson, was unanimously adopted:

> RESOLVED that the CUC management establish a Code of Decency, with guidelines for the treatment of sex violence and foul language in the subject and content of the Company's entertainment software products, for the Board to review at its June meeting.

There then ensued a short discussion of the format and scope of the minutes of the Board of Directors meetings. The Board agreed to table this discussion until the June, 1997 meeting.

Several members of the Company's management then led a lengthy presentation and discussion of the Company's interactive operations and, in particular, its present and future activities on the Investment.

There being no further business, the meeting duly adjourned.

April 9, 1997

Robert T. Tucker

Secretary

# EXHIBIT 5

# HARVARD BUSINESS SCHOOL

PROFESSOR STEPHEN A. GREYSER

Morgan Hall 183
Boston, Massachusetts 02163 U.S.A.

Fax No. (617) 496-5853
Please telephone (617) 495-6329 if any fax pages are missing

*DELIVER TO:* Robert Tucker

*DATE:* May 2, 1997

*ADDRESS:*

*FAX NO.* 914-967-8161

*FROM:* Stephen A. Greyser

*Pages* 7
*(including this cover)*

*Message*

GOVERNMENT
EXHIBIT
EX. 5d

711315

**ROBERT T. TUCKER**

ATTORNEY AT LAW

61 PURCHASE ST.
RYE, N.Y. 10580

(914) 967-8105
FAX: (914) 967-8161

RT
See
4/9 pp 2, 3
9/10 p 3
3/7 pp 1, 2
Hope this is helpful.
/ Steve C
Greyser

**VIA FEDERAL EXPRESS**

TO: The Board of Directors
CUC International Inc.

FROM: Robert T. Tucker

RE: Minutes - Board of Directors Meetings

DATE: April 28, 1997

****************************************************************************************

I enclose draft Minutes of the meeting of April 9, 1997. These Minutes will be submitted for approval at the upcoming meeting in June.

To ensure there are no misunderstandings, I also enclose Minutes of the meetings of September 10, 1996; December 4, 1996; January 19, 1997; January 31, 1997; and March 7, 1997. These minutes will also be submitted to the June meeting for approval.

Any comments may be directed to Amy or myself or, of course, may be presented at the June meeting.

Best Regards.

RTT/kau

| | |
|---|---|
| 1. Date, Time and Place | June 11, 1997 - 9:15 AM<br>Hyatt Regency, Old Greenwich, CT. |
| 2. Record Date | April 25, 1997 |
| 3. Election Inspectors | Boston EquiServe |
| 4. Proxies | Walter A. Forbes<br>E. Kirk Shelton |
| 5. Size of Board | 11 Members |
| 6. Candidates for the Board | |
| Bartlett Burnap | Term Ending 2000 |
| Robert M. Rittereiser | Term Ending 2000 |
| Walter A. Forbes | Term Ending 2000 |
| 7. Accountants for Fiscal Year Ending January 31, 1998 | Ernst & Young |

Robert Davidson and Janice Davidson were then excused from the meeting and a discussion took place relating to certain aspects of the acquisition and operation of Davidson Associates, Inc. At the conclusion of this discussion, Robert Davidson and Janice Davidson rejoined the meeting. corporate cul- ture and

Ms. Davidson then led a discussion concerning questions of the Company's values, particularly as these relate to the Company's entertainment software products. After discussion, the following resolution, presented by Ms. Davidson, was unanimously adopted:

> RESOLVED that the CUC management establish a Code of Decency containing guidelines for the treatment of sex, violence and foul language in the subject and content of the Company's entertainment software products, for the Board to review at its June meeting.

There then ensued a short discussion of the format and scope of the minutes of the Board of Directors meetings. The Board agreed to table this discussion until the June, 1997 meeting.

Several members of the Company's management then led a lengthy presentation and discussion of the Company's interactive operations and, in particular, its present and future activities on the ~~Investment~~.

There being no further business, the meeting duly adjourned.

April 9, 1997

Robert T. Tucker

Secretary

**CUC INTERNATIONAL INC.**

**DRAFT**
**4/2/97**

**MINUTES**

**BOARD OF DIRECTORS**

Pursuant to notice duly given, a meeting of the Board of Directors was held via conference telephone on March 7, 1997. All directors, other than Mr. Rumbough, were present.

Also present were Cosmo Corigliano, Amy N. Lipton, Robert T. Tucker. Walter A. Forbes, Chairman of the Company, presided and Mr. Tucker acted as Secretary.

Mr. Shelton stated that the primary purpose of the meeting was to review the status of certain possible acquisitions.

Mr. Shelton first reviewed the status of S Corp. The Company had been advised by the Investment Banker to the owner of S Corp. that a sale was being considered. Mr. Corigliano reviewed S Corp.'s financial situation. Mr. Shelton reviewed S Corp.'s business activities and discussed possible competitors if the company is actually put up for sale. The Board was advised that Management would be meeting with representatives of S Corp. in approximately one week. Management was instructed to continue to explore this matter and report back to the Board.

Mr. Shelton then led a discussion of the possible acquisition of SH Corp. Mr. Shelton reviewed the status of the negotiations. Mr. Shelton advised the Board that members of Management would be traveling to review the international operations of SH Corp. In addition, development activities and legal matters were being carefully reviewed.

Ms. Davidson reviewed several aspects of the business of SH Corp. which in her view, required specific attention and further due diligence. Among these were SH Corp.'s return situation and return history, its operating margins and its forward profit forecast. Mr. Corigliano pointed out that the financials of SH Corp. provided a fairly large reserve for returns. Ms. Davidson also suggested that in depth product due diligence was in order as well as a careful review of the product progress toward SH's significant increase in product flow and delivery schedule.

Mr. Shelton and Mr. McLeod then reviewed the management personnel of SH Corp. stating that management roles had not been determined and employment contracts have not yet been negotiated, and the strategic fit of SH Corp. with the Company, ~~which was that~~ in addition to its entertainment software

711319

titles, SH Corp.'s licensed properties could be further marketed and leveraged by the Company's development and marketing resources, and also SH Corp.'s European operations would increase the distribution of the Company's software in Europe.

Mr. Davidson noted that changes in the valuation summary and the marketplace since the last discussion made the SH acquisition considerably less attractive than previously. Mr. Davidson then enumerated several concerns over this possible acquisition. These included (1) the reliability of the earnings of SH Corp. in view of their record of many years of losses and only a few quarters of profitability; (2) the significant recent appreciation in its stock price and (3) current issues at CUC Software which will require significant attention of management. After stating some specifics, Mr. Davidson stated that CUC should not be spending another $ 350 - 400 million on an acquisition until we get own operations in order.

Ms. Davidson asked the Board to bear in mind when considering acquisitions the differences in the software and the membership parts of the business, particularly with regard to the different management challenges and different risks and benefits to shareholder value.

Mr. Forbes acknowledged the concerns of Mr. and Ms. Davidson. He pointed out that the Board must always keep in mind the overall vision of CUC. Ms. Davidson expressed her agreement with an acquisition as long as in the Board's best business judgment there was a clear reason to believe that the acquisition would increase shareholder value. Management was instructed to continue to review this matter and report back to the Board.

Ms. Lipton then reviewed the current situation regarding trading in the Company's securities by the Members of the Board.

There being no further business, the meeting adjourned.

March 7, 1997

Robert T. Tucker
Secretary

3. The revision of the outstanding Stock Option Plans in connection with changes to Section 16 of the Securities and Exchange Act and other matters as described in detail by Ms. Lipton. Copies of such revised plans, as presented, to the meeting were ordered kept with the Companies records.

To the extent required, the foregoing activities of the Compensation Committee were unanimously approved, ratified, and confirmed.

Mr. Forbes and other members of Management then discussed several potential acquisitions. After discussion, the resolutions set forth on Schedule A hereto were unanimously adopted.

Ms. Lipton then reviewed, in detail, plans for a secondary offering of shares of Common Stock held by Mr. and Mrs. Davidson and related entities. After discussion it was unanimously

le RESOLVED, that the Board of Directors approves in principal the secondary offering of Common Stock as described to the meeting including the temporary suspension of S-3 Prospectus Sales; and le

FURTHER RESOLVED, that the Executive Committee of the Board of Directors is hereby authorized and directed to take all actions on behalf of the Board of Directors in connection with such secondary offering of Common Stock of the Company; and

FURTHER RESOLVED, that without limiting the foregoing Resolutions, the Board of Directors hereby adopts those resolutions set forth on Schedule B.

Representatives of Davidson Associates, Inc. and Sierra On-Line, Inc. then presented detailed reviews of these companies.

There then ensued a general business discussion.

The meeting then duly adjourned.

September 10, 1996

Robert T. Tucker, Secretary

711321

# EXHIBIT 6

CUC INTERNATIONAL INC.

MINUTES

BOARD OF DIRECTORS

Pursuant to Notice duly given, a meeting of the Board of Directors was held in New York, NY on May 15, 1997. All Directors were present in person or by conference telephone.

Also present were Cosmo Corigliano, Amy N. Lipton, Robert T. Tucker and representatives of Wachtell, Lipton, Rosen & Katz ("Wachtell") and Goldman Sachs & Co. ("Goldman"). Walter A. Forbes, Chairman of the Company, presided and Mr. Tucker acted as Secretary. The Minutes of the Directors Meetings of September 10, 1996, December 4, 1996, January 19, 1997, January 31, 1997, March 7, 1997 and April 9, 1997 were approved.

Mr. Forbes advised the Board that on April 22, 1997, the Executive Committee approved the 1997 Stock Option Plan and that the Plan would be submitted to the shareholders of the Company for their approval at the upcoming shareholders meeting.

Mr. Rittereiser advised the Board that on April 9, 1997, the Compensation Committee approved the granting of certain stock options, effective April 18, 1997 and April 21, 1997. A list of such options was ordered appended to the minutes of the Board Meeting of April 9, 1997.

DEFENDANT'S EXHIBIT 5181
PENGAD 800-631-6989

Mr. Rittereiser then reviewed with the Board the 1996 Executive Retirement Plan which was approved and adopted by the Compensation Committee on April 9, 1997. In November, 1996, the Committee, together with its advisors and counsel, had undertaken a detailed review of various deferred compensation alternatives available for Senior management. After discussion the Committee determined to implement an Executive Retirement Plan for Senior Management. Management and its advisors were directed to finalize this matter and report to the Committee at its meeting in January, 1997. At the January, 1997 meeting the Committee reviewed all material terms of the proposed plan as set forth on the term sheet prepared for the meeting. The Committee then approved the 1996 Executive Retirement Plan subject only to a review of the formal plan documents to be prepared by counsel in accordance with the term sheet. At the April, 1996 meeting the Committee approved the final plan documents which had previously been distributed to the Committee.

Mr. Forbes then advised the Board that the purpose of the meeting was to begin a review of the possible merger of the Company with HFS Incorporated. Mr. Forbes described the proposed transaction as a true merger of equals and reviewed the discussions that had recently taken place with representatives of HFS. Mr. Forbes emphasized that the Board, in reviewing the proposal, should focus on whether the Company and its shareholders would be better off as a separate corporation or in combination with HFS. The Board, therefore, must review the Company's prospects as it is currently constituted and compare these with its prospects if the Company and HFS were to combine. Mr. Forbes encouraged the Board to ask any questions of management and its advisors which the Board felt would better enable it to judge the merits of the transaction.

Ms. Lipton advised the Board that the Company had engaged the services of Goldman and Wachtell with respect to the proposed transaction pursuant to Letter Agreements dated May 15, 1997 copies of which were presented to the Board. The actions of the Company in entering into these Letter Agreements were approved, ratified and confirmed.

Mr. Robert Higgins and other representatives of Goldman then led the Board through an exhaustive review of the proposed combination following generally the Presentation Booklet presented to the Board. Mr. Higgins first reviewed the rationale for the transaction particularly with respect to the projected valuation of the Company separately and in combination with HFS.

Goldman's representatives then undertook a detailed review of the business of HFS. The representatives also discussed many financial considerations including projected free cash flow, corporate debt and ratings considerations and earning multiples.

Goldman also emphasized the critical importance that the successful combination of the corporate cultures would have on the overall success of the transaction and, in particular, the realization of potential synergies.

Mr. Higgins returned to a detailed examination of the core question presented by Mr. Forbes - would the shareholders of the Company be better if the Company stood alone or in combination with HFS?

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

The Board then reviewed the proposed structure of the transaction - a tax free merger of HFS into the Company which would be accounted for using the pooling of interests method. In particular, the Board discussed the proposed Exchange Ratio, Protective Provisions, Board and Committee Composition, Executive Positions and Succession, Employment Agreements, and various corporate governance provisions.

Mr. Forbes emphasized that the transaction was a true merger of equals and not an acquisition by either company of the other.

The Board then reviewed a lengthy presentation of projected earnings of CUC and HFS singly and the possible effect on earnings of a combination of the companies as well as the likely multiple such earnings might command.

Goldman also reviewed areas requiring further examination. These included a more in-depth investigation of HFS's business and financial information and a review of the status of Avis and the effect on HFS if a planned public offering occurs or, conversely, does not occur. Finally, a detailed examination of the most recent financial information was required.

Goldman then reviewed HFS on a business unit basis.

Patricia A. Vlahakis of Wachtell then reviewed briefly the documentation that would be required to effectuate the transaction.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

Ms. Lipton reminded the Board that everything discussed by the Board was highly confidential and emphasized that no trading should be undertaken in the stock of the Company or HFS.

Mr. Forbes asked if the Board had any remaining questions at this point. Many questions were asked by the Board and answered by management and its advisors.

The Board then instructed management and its advisors to continue to explore the possible merger with HFS and report to back to the Board at its next meeting which was set for May 20, 1997.

There being no further business, the meeting adjourned.

May 15, 1997

Robert T. Tucker
Secretary

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER
IN Civil Action No. 98-1664 (WHW)

# EXHIBIT 7

**From:** Cary, Rob
**Sent:** Thursday, April 13, 2006 10:01 AM
**To:** HARTFORD TRIAL TEAM
**Subject:** FW: Attached Notice

**Attachments:** WAF.Limine Notice.PDF

---

**From:** Cary, Rob
**Sent:** Thursday, April 13, 2006 10:01 AM
**To:** 'Martinez, Michael (USANJ)'
**Cc:** Gross, Norman (USANJ); Simon, Barry
**Subject:** Attached Notice

Mr. Martinez:

Is the attached notice addressing motions in limine that we will not be filing acceptable to the government?

Thank you.

Rob Cary

WAF.Limine Notice.PDF (59 KB)

**DRAFT**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:02CR264 (AHN) |
| v. | ) | April 17, 2006 |
| WALTER A. FORBES. | ) | |

**NOTICE**

The defense will not be filing Motions in Limine regarding the following topics that were the subject of Motions in Limine in advance of Trial No. 2, because the government has agreed that it will not be offering evidence or arguing as follows.

1. The government will not present any evidence, cross-examination or argument concerning the charging of Mr. Forbes' airplane expenses to the Cendant merger reserve. This was the subject of Retrial Motion in Limine No. 2 before Trial No. 2.

2. The government will not refer to Walter Forbes as the "Captain of the Ship" or other similar positions. This was the subject of Retrial Motion in Limine No. 10 before Trial No. 2.

3. The government will not offer or refer to Government Exhibit 1527. This was the subject of Retrial Motion in Limine No. 12 before Trial No. 2.

4. The government will not refer to Enron, Tyco, WorldCom or any other financial scandal. This was the subject of Retrial Motion in Limine No. 16 before Trial No. 2.

5. The government will not (1) refer to Robert Tucker's handwritten notes as board minutes, and (2) will not present any evidence, cross-examination or argument concerning the differences between Government Exhibit 5, Government Exhibit 453 and Government Exhibit 77. This was the subject of Retrial Motion in Limine No. 18 before Trial No. 2.

6. The government will not offer Government Exhibit 577 or Government Exhibit 578. This was the subject of Retrial Motion in Limine No. 20 before Trial No. 2.

The government reviewed this Notice before it was filed with the Court.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

________________________
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)
Attorneys for Walter A. Forbes

Dated: April 17, 2006

# EXHIBIT 8

**From:** Cary, Rob
**Sent:** Friday, April 14, 2006 8:55 AM
**To:** HARTFORD TRIAL TEAM
**Subject:** FW: Attached Notice

-----Original Message-----
From: Martinez, Michael (USANJ) [mailto:Michael.Martinez2@usdoj.gov]
Sent: Thursday, April 13, 2006 4:55 PM
To: Cary, Rob
Subject: RE: Attached Notice

The attached notice is fine. Mike Martinez

-----Original Message-----
From: Cary, Rob [mailto:RCary@wc.com]
Sent: Thursday, April 13, 2006 10:01 AM
To: Martinez, Michael (USANJ)
Cc: Gross, Norman (USANJ); Simon, Barry
Subject: Attached Notice

Mr. Martinez:

Is the attached notice addressing motions in limine that we will not be filing acceptable to the government?

Thank you.

Rob Cary

<<WAF.Limine Notice.PDF>>

------------------------------------------------------------------------
------
NOTICE:

This message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by reply or by telephone (call us collect at (202) 434-5000) and immediately delete this message and all its attachments.

========================================================================
======