# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____
)
**UNITED STATES OF AMERICA**   )
)   **No. 3:02CR264 (AHN)**
**v.**   )
)
)   **April 28, 2006**
**WALTER A. FORBES**   )
)
_____)

## REPLY MEMORANDUM IN SUPPORT OF
## MOTION OF DEFENDANT WALTER A. FORBES
## TO PRECLUDE THE GOVERNMENT FROM PRESENTING
## EVIDENCE, CROSS-EXAMINATION, OR ARGUMENT
## CONCERNING PROPERTY TRANSFERS
## (Forbes Third Trial Motion In Limine No. 2)

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon  (Bar No. ct24159)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Oral Argument Requested

Defendant Walter A. Forbes respectfully submits this reply memorandum in support of his motion in limine to preclude the government from presenting any evidence, cross-examination, or argument at Mr. Forbes' third trial concerning Mr. Forbes' transfers of his interest in certain real property to his wife.[1]

## ARGUMENT

Mr. Forbes' property transfers in 1998 and 1999 are irrelevant to this case. They are not evidence of purported consciousness of guilt. The government has never cited a case in which a court admitted evidence of property transfers effectuated a year or more before indictment, at a time when the defendant was not the subject of any criminal investigation, for this purpose. Just as this evidence is irrelevant, so, too, is Mr. Forbes' prior testimony on this subject. The Court should exclude this irrelevant but extremely prejudicial evidence pursuant to Fed. R. Evid. 401 and 403.

## I.    THE COURT IS NOT BOUND BY JUDGE THOMPSON'S DECISIONS CONCERNING THIS MATTER.

While the government suggests that this Court should adhere to Judge Thompson's prior decisions on this subject, Opp. at 3-4, this Court is under no obligation to follow those decisions. To the contrary, this Court has discretion to revisit those decisions, particularly where, as here, they were in error. See Reply Memorandum in Support of Forbes Third Trial Motion No. 4 (filed 4/28/06). In United States v. Uccio, 940 F.2d 753 (2d Cir. 1991) (Opp. at 3), for example, the Second Circuit found no violation of the law of the case doctrine where a district court revisited a sentencing issue on remand. Id. at 758-59. The Court observed

---

[1]    For the same reasons, Mr. Forbes also objects to any evidence, cross-examination, or argument concerning his property transfer to his daughters. The government apparently seeks to offer this evidence as well. See Opp. at 7.

that, "[h]aving given [the defendant] sufficient notice and an opportunity to be heard, it was well

within the court's discretion to decline to deem itself bound by a ruling that it had come to view

as wrong." Id. at 759; see also United States v. Williams, 205 F.3d 23, 34 (2d Cir. 2000)

(rejecting argument that district court violated law of the case doctrine by not adhering on retrial

to rulings it made during the first trial). Accordingly, the Court is free to revisit Judge

Thompson's rulings on this subject.

## II.    EVIDENCE OF ASSET TRANSFERS IN 1998 AND 1999 HAS NO PROBATIVE VALUE WITH RESPECT TO THE CHARGED OFFENSES.

The government asserts that consciousness of guilt evidence is "independently

probative" of guilt. Opp. at 5. Mr. Forbes does not dispute that proposition. The critical

question here, however, is not whether proper consciousness of guilt evidence is admissible, but

whether Mr. Forbes' property transfers in 1998 and 1999 are probative of purported

consciousness of guilt. They are not.

Once again, the government relies on a series of inapposite cases in support of the

claimed relevance of Mr. Forbes' property transfers.[2] And, once again, the government fails to

---

[2]    In United States v. Deutsch, 451 F.2d 98 (2d Cir. 1971) (Opp. at 5-6), for example, the defendant was charged with aiding and abetting an individual who violated the securities laws. Id. at 102. The evidence in question showed "evasive conduct concealing a transaction" that was at issue in the case. See id. at 105-06, 115-16 & n.21. Here, Mr. Forbes' property transfers to family members, which were filed in the public record, did nothing to conceal any matter at issue in this case. In United States v. Burrous, 147 F.3d 111 (2d Cir. 1998) (Opp. at 6), evidence was admitted that the defendant, who was charged with robbing a Burger King, id. at 113, "tossed a box containing $128 in cash from the window of his apartment while law enforcement personnel were in the process of arresting him." Id. at 117. Burrous bears no resemblance to this case. Nor does United States v. Wilson, 11 F.3d 346 (2d Cir. 1993) (Opp. at 6), in which "the use of false identification" was found admissible to show consciousness of guilt, id. at 353, or United States v. Dittrich, 100 F.3d 84 (8th Cir. 1996) (Opp. at 6), where the court concluded that "[b]ribing another person to take the blame for the crime charged shows consciousness of guilt," id. at 86. The stark differences between the evidence in these cases, which was genuinely

cite a single case in which a property transfer made at a time when an individual was not charged

with any crimes, and was not the subject of any criminal investigation, was found admissible as

evidence of purported consciousness of guilt. See Docket No. 1841 at 2 (acknowledgment by

Judge Thompson that "there was no authority directly on point"). The government's failure to

cite a single case so holding demonstrates powerfully that this evidence is not probative of

purported consciousness of guilt.

      While the government boldly asserts that, "[f]or a century now, American courts

have permitted prosecutors to proffer evidence of asset transfers by a defendant as relevant to

consciousness of guilt," Opp. at 10, the only case cited by the government for this purported

general proposition is a 1906 decision from state court in North Carolina. See id. (citing State v.

Kincaid, 55 S.E. 647 (N.C. 1906)). Even in that case, however, no evidence was presented in the

government's case-in-chief concerning consciousness of guilt. The government asked the

defendant on cross-examination about a transfer he apparently engaged in after indictment, and

the defendant testified that he had transferred his property "to avoid the result of this indictment."

55 S.E. at 648 (emphasis added). Kincaid does not support the government's contention that Mr.

Forbes' property transfers, which were done well before any indictment, at a time when Mr.

Forbes was not the subject of any criminal investigation, are admissible as substantive evidence

of consciousness of guilt.[3]

_____

probative of consciousness of guilt, and Mr. Forbes' property transfers, highlights the lack of
probative value of the evidence the government seeks to offer here.

[3]     The government's citation to Wigmore adds nothing to its citation of Kincaid. The
government also cites an inapposite civil bankruptcy case in which the court found, after a bench
trial, that certain asset transfers should be set aside as fraudulent transfers. In re Manshul Constr.
Corp., 2000 WL 1228866 (S.D.N.Y. Aug. 30, 2000) (Opp. at 11). That case did not consider the

Judge Thompson also relied on inapposite case law in ruling that Mr. Forbes' property transfers could be admitted as purported evidence of consciousness of guilt. See Docket No. 1841 at 4-6. For example, Judge Thompson relied on United States v. Foster, 309 F.2d 8 (4th Cir. 1962) (see Docket No. 1841 at 5). But that court found that purported consciousness of guilt evidence was erroneously admitted and reversed the defendant's conviction. See 309 F.2d at 14-15. In Foster, the defendant engaged in lawful conduct in resisting the production of records sought by the IRS. Id. at 14. The court reasoned that "lawful resistance to investigation does not generate an inference of guilt," id., and that "the jury should not be allowed to draw from it an inference of misdoing on the part of the accused," id. at 15. Here, Mr. Forbes' conduct -- at a time when he was not the subject of any criminal investigation -- was lawful and did nothing to impede the government's investigation of wrongdoing at CUC or Cendant. Foster thus supports the exclusion, not the admission, of the property transfer evidence.[4]

Even assuming arguendo that evidence of property transfers could be admissible under certain circumstances to show purported consciousness of guilt, the Court should exclude this evidence because the government cannot "sturdily support[]," United States v. Al-Sadawi,

---

issue presented here.

[4]     Judge Thompson also relied on United States v. Stoehr, 196 F.2d 276 (3d Cir. 1952). See Docket No. 1841 at 5 (finding Stoehr "instructive"). Stoehr, however, was not a consciousness of guilt case. Instead, it involved an attempt by the defendant to offer evidence concerning his subsequent tax returns. Id. at 281-82. The other cases cited by Judge Thompson are inapposite as well. See, e.g., Hickory v. United States, 160 U.S. 408, 410-11, 416 (1896) (Docket No. 1841 at 4) (evidence admitted that defendant concealed evidence of murder, such as blood spots, and avoided arrest); Alberty v. United States, 162 U.S. 499, 510 (1896) (Docket No. 1841 at 4) (evidence admitted of flight after a homicide); United States v. Malizia, 503 F.2d 578, 582-83 (2d Cir. 1974) (Docket No. 1841 at 6) (evidence of flight after defendant was sought for arrest); United States v. Ramon-Perez, 703 F.2d 1231, 1233 (11th Cir. 1983) (Docket No. 1841 at 6) (evidence of flight following indictment, and prior to "impending suppression hearing and trial").

432 F.3d 419, 424 (2d Cir. 2005), "each link in the chain of inferences," id., necessary to admit it

here. For example, the government asserts that Mr. Forbes' transfers to family members "carried

an obvious financial risk," Opp. at 12, and that this "gives rise to a reasonable inference that he

foresaw a significant risk of criminal liability for the charged conduct in this case," id. But that

argument rests on speculation and is premised on a number of flawed assumptions.

For example, as the government asserts elsewhere, Mr. Forbes had a "self-

declared net worth of approximately $200 million in 1998." Docket No. 2262 (filed 4/17/06) at

8. Mr. Forbes' transfers to family members of his half-interest in property comprising a small

percentage of his net worth was not an "obvious financial risk," Opp. at 12, for him and was fully

consistent with his desire to give his family a measure of protection in the Cendant civil

litigation. The transfer of a small portion of Mr. Forbes' net worth to family members, in

publicly-filed legal documents executed by attorneys, does not give rise to any inference that Mr.

Forbes "foresaw a significant risk of criminal liability," id.

Nor can the government point to any event preceding the transfers "which would

tend to spark a sharp impulse of fear of prosecution or conviction in a guilty mind." United

States v. Dillon, 870 F.2d 1125, 1128 (6th Cir 1989) (Opp. at 13). While the government asserts

that Mr. Forbes "transferred these assets while aware that a criminal investigation was ongoing,"

Opp. at 13, Mr. Forbes was not the focus of any criminal investigation in 1998 or 1999, Tr.

(9/2/04) at 11,445-46, and he was not notified that he was a subject or target of any criminal

investigation until shortly before his February 2001 indictment, Tr. (10/4/04) at 14,473. The

government has not presented any contrary evidence. Accordingly, there is no basis for the

inference the government seeks to draw. See United States v. Beahm, 664 F.2d 414, 420 (4th

Cir. 1981) (evidence of flight after commencement of criminal investigation inadmissible where there was "no evidence that [the defendant] was aware that he was a subject of a criminal investigation") (emphasis added).[5]

The fact that the Cendant Audit Committee was conducting an investigation into accounting irregularities at the time of the first transfer in May 1998 reveals nothing about any potential criminal liability on Mr. Forbes' part and does not give rise to any inference of purported consciousness of criminal wrongdoing. Indeed, Mr. Forbes transferred his interest in two of the properties in question after the August 1998 release of the Cendant Audit Committee Report, which found no evidence that Mr. Forbes either knew about or directed any improper accounting.

Similarly, the fact that Mr. Forbes transferred his interest in a property to his wife "eight days" after Cendant announced its proposed settlement of the securities class actions, Opp. at 7 n.4, proves nothing about purported consciousness of criminal wrongdoing. Cendant acknowledged in 1998 that fraudulent conduct took place at CUC and Cendant; the fact that Mr. Forbes transferred his interest in a property to his wife after Cendant announced that it would pay a substantial sum to resolve civil class action litigation has no logical link to any purported

---

[5]     While the government cites United States v. Dillon, 870 F.2d 1125 (6th Cir. 1989) (Opp. at 13), for the proposition that "the commencement of an investigation" may be sufficient to "spark a sharp impulse of fear of prosecution or conviction in a guilty mind," Opp. at 13, the case cited in Dillon for this proposition is United States v. Beahm, 664 F.2d at 420. See Dillon, 870 F.2d at 1128. Beahm, however, made clear that flight after the commencement of a criminal investigation is admissible only where the defendant is "aware that he was the subject of a criminal investigation." 664 F.2d at 420. The mere fact of the existence of a criminal investigation is not sufficient to give rise to an inference of consciousness of guilt from flight. Nor is it sufficient to give rise to an inference of consciousness of guilt from a property transfer.

consciousness of criminal wrongdoing on Mr. Forbes' part.[6] The situation here bears no

resemblance to that in the cases cited by the government, where an individual made plans to flee

the country the day after a bombing, United States v. Salameh, 152 F.3d 88, 157 (2d Cir. 1998)

(Opp. at 13), or fled the jurisdiction after learning that "a convicted co-conspirator" was "on the

verge of testifying before a Grand Jury about their common crime," United States v. Dillon, 870

F.2d 1125, 1128 (6th Cir. 1989) (Opp. at 13), situations that give rise to a legitimate inference of

consciousness of guilt.[7]

---

[6]    The civil settlement did not end the civil litigation relating to the decline in Cendant's
stock price on and after April 15, 1998.  A number of shareholders opted out of the class action,
and the E&Y/Cendant civil litigation, in which Mr. Forbes is a defendant, remains unresolved.

[7]    Judge Thompson also relied on erroneous or flawed factual assumptions in permitting the
government to present evidence of Mr. Forbes' property transfers.  For example, Judge
Thompson cited the purported fact that Mr. Forbes was interviewed by Cendant Audit
Committee investigators on June 11, 1998 and transferred his interest in one property to his wife
on June 8, 1998.  See Docket No. 1841 at 2; Opp. at 13.  In fact, Mr. Forbes was not interviewed
on that date, but on June 15, 1998.  See Tr. (10/4/04) at 14,532-33.  There is no evidence in the
record about when Mr. Forbes received notice of that interview, whether the June 8, 1998
transfer had anything to do with that interview, or (even assuming arguendo that it did), why a
transfer on June 8, 1998 -- almost three years before any indictment was returned against Mr.
Forbes, and at a time when he was not the focus of any criminal investigation -- has any
probative value with respect to purported consciousness of guilt.  Judge Thompson also cited the
fact that a transfer took place in December 1998, after the Cendant Audit Committee's report had
been issued.  See Docket No. 1841 at 2.  The Audit Committee Report, however, disclosed that
the investigators found no evidence that Mr. Forbes either participated in or had knowledge of
the fraud.  The fact that Mr. Forbes transferred his interest in a property after the issuance of a
report that effectively exonerated him of intentional wrongdoing does not support a conclusion
that Mr. Forbes' conduct evidences consciousness of guilt.  Finally, while Judge Thompson cited
"the June 18, 1999 guilty plea by Casper Sabatino" and "the September 23, 1999 guilty plea by
Anne Pember," Docket No. 1841 at 7 (emphasis added), neither Mr. Sabatino nor Ms. Pember
has ever claimed to have any knowledge about any purported wrongdoing by Mr. Forbes (and
Mr. Sabatino has repeatedly provided exculpatory information about Mr. Forbes).  Moreover, the
cited dates were not the dates of public guilty pleas, but the dates on which Pember and Sabatino
signed plea agreements with the government.  Mr. Sabatino and Ms. Pember did not enter guilty
pleas until June 2000, and there is no evidence that Mr. Forbes had knowledge in 1999 of their
plea agreements.  In any event, two of Mr. Forbes' property transfers took place in 1998, prior to

7

The government's contention that Mr. Forbes' attempt to shield assets from a potential civil judgment "would also tend to prove his consciousness of guilt in this case," Opp. at 16, cannot be reconciled with the fact that Mr. Forbes' potential civil liability in the Cendant litigation could be based on a theory of vicarious liability wholly unrelated to any purported knowing or intentional wrongdoing on his part. The government concedes that Mr. Forbes could be held liable in the Cendant civil litigation for "conduct that did not rise to the level of intentional fraud," such as recklessness. Id. at 17. There is no basis for the government's contention that actions taken by Mr. Forbes to protect his family from potential civil judgments is somehow evidence of consciousness of guilt.[8] Indeed, the government's admission that the property transfers could have been motivated "in part" by a reason other than purported consciousness of criminal wrongdoing, Opp. at 16, is fatal to its claim. See United States v. Myers, 550 F.2d 1036, 1050 (5th Cir. 1977) (flight evidence inadmissible because there was insufficient evidence to show that defendant "fled solely because he felt guilty about" the crime charged) (emphasis added); United States v. Skeddle, 981 F. Supp. 1074, 1078 (N.D. Ohio 1997) (rejecting government's proposed consciousness of guilt evidence on the ground that "defendants' purported spoliation of evidence could have been in response to fear of civil prosecution or ethical reprimand, and therefore evidence only of their consciousness of general wrongdoing.").

---

the 1999 plea agreements.

[8]    The government's claim that Mr. Forbes "would have no reason to transfer his assets" if he "is a victim just like every innocent shareholder, officer, and director of CUC/Cendant," Opp. at 15, ignores the fact that Mr. Forbes has been sued in the Cendant/E&Y civil litigation.

8

### III. MR. FORBES' PRIOR TESTIMONY CONCERNING PROPERTY TRANSFERS IS IRRELEVANT TO THE CHARGED OFFENSES.

Just as evidence of Mr. Forbes' property transfers is irrelevant to the charges in the indictment, so, too, is Mr. Forbes' prior testimony about this subject and the legal advice he received from Mr. Danilow. The government's claim that Mr. Forbes testified falsely about this matter does nothing to change the fact that the subject of Mr. Forbes' property transfers is irrelevant to this case.[9]

While the government attempts to portray Mr Forbes' prior trial testimony as a purported false exculpatory statement admissible as consciousness of guilt evidence, a false exculpatory statement is a "pretrial fabrication[], on the theory that the innocent do not fabricate to avoid being accused of crime. That theory does not apply to a defendant's trial testimony." United States v. Clark, 45 F.3d 1247, 1251 (8th Cir. 1995) (citation omitted) (emphasis added). Moreover, the cases cited by the government do not support its contention that Mr. Forbes' testimony about property transfers "is relevant, of great probative value, and admissible." Opp. at 8. To the contrary, the cases on which the government relies involved statements or conduct that (unlike Mr. Forbes' property transfers) concerned the underlying offenses charged.

In United States v. Scheibel, 870 F.2d 818 (2d Cir. 1989) (Opp. at 8-9), for example, the defendant fabricated evidence in an attempt to create the appearance that other drug dealers used the property on which his own drugs were found. Id. at 820. The fabricated

---

[9] In any event, Mr. Forbes' prior testimony is neither false nor inconsistent with Mr. Danilow's testimony. Mr. Danilow did not advise Mr. Forbes that a property transfer to a family member was unlawful, Tr. (11/9/05) at 2445, and Mr. Forbes' understanding of the advice he received was that it was lawful to engage in such a transfer. See Tr. (11/15/05) at 3049-50, 3053. The transfers were effectuated by attorneys through legal documents and filed in publicly available property records.

evidence consisted of a note purportedly written by another drug dealer that was left on the

property (with drugs) "six days after the selection of the jury for [the defendant's] drug trial." Id.

The Second Circuit concluded that this evidence was properly admitted to show consciousness of

guilt. Id. at 822. Here, the government does not (and cannot) contend that Mr. Forbes fabricated

evidence concerning the underlying offenses at issue in this case. Instead, Mr. Forbes' testimony

concerned the collateral, and unrelated, matter of property transfers in 1998 and 1999.

       In United States v. Kahan, 415 U.S. 239 (1974) (per curiam) (Opp. at 9), the

defendant was charged with receiving gratuities for official acts and with perjury before a grand

jury. Id. at 239. He failed to disclose the existence of four savings accounts in which he had

made deposits totaling $27,000 during the time of the underlying offenses. Id. at 240. Evidence

of $25,000 of the deposits "was admitted at trial as supporting the inference that [the defendant]

improperly received the gratuities as was charged." Id. at 241. The defendant's concealment of

those funds was admitted to show "consciousness that the bank deposits were incriminating, and

as evidence of willfulness in making statements before the grand jury with knowledge of their

falsity." Id. Kahan bears no resemblance to this case. Nor does United States v. Bin Laden, 397

F. Supp. 2d 465 (S.D.N.Y. 2005) (Opp. at 9), in which the defendant testified falsely before

grand juries "that he had not seen bin Laden since 1994, despite his two visits with him in 1997,"

id. at 517, or United States v. Di Stefano, 555 F.2d 1094 (2d Cir. 1977) (Opp. at 9), where the

defendant made false exculpatory statements to an FBI agent following her arrest concerning the

bank robbery charged in the case. Id. at 1099.[10]

---

[10]    The remaining cases cited by the government are equally inapposite. In United States v.
Durham, 139 F.3d 1325 (10th Cir. 1998) (Opp. at 9 n.7), the evidence admitted consisted of the
defendant's denial of participation in drug transactions, id. at 1332, a matter going to the heart of

In sum, there is no legal authority for the government's contention that Mr. Forbes' prior testimony about the irrelevant subject of property transfers, or any purported inconsistency between Mr. Forbes' and Mr. Danilow's testimony, is admissible as substantive evidence of purported consciousness of guilt. The Court should preclude the government from presenting any of Mr. Forbes' prior testimony on this subject in its case-in-chief.

IV.    **THE COURT SHOULD PRECLUDE ANY EVIDENCE, CROSS-EXAMINATION, OR ARGUMENT CONCERNING MR. FORBES' PROPERTY TRANSFERS PURSUANT TO FED. R. EVID. 403.**

The Court also should preclude the government from presenting any evidence, cross-examination, or argument on the subject of property transfers because the prejudicial effect of this evidence far outweighs its (nonexistent) probative value.

The prejudicial effect of this irrelevant evidence is substantial. Jurors could well conclude that an individual who sought to transfer valuable assets after being named as a defendant in civil litigation arising from economic losses suffered by shareholders is a person of poor moral character who should be punished, even though the transfers have nothing to do with the charges in this case.[11] The government agrees that Mr. Forbes' status as a civil defendant "is irrelevant here." Opp. at 20. Its assertion that it will not offer any evidence of this fact in its case-in-chief, id., however, is an empty promise where the government <u>seeks to offer Mr. Forbes'</u>

_____

the case. In <u>United States v. Perkins</u>, 937 F.2d 1397 (9th Cir. 1991) (Opp. at 9 n.7), the defendant made false statements with respect to matters directly relating to the bank robberies with which he was charged. <u>Id.</u> at 1402. Finally, <u>United States v. Collins</u>, 90 F.3d 1420 (9th Cir. 1996) (Opp. at 9 n.7), <u>United States v. Warren</u>, 973 F.2d 1304 (6th Cir. 1992) (Opp. at 9 n.7), <u>United States v. Macklin</u>, 927 F.2d 1272 (2d Cir. 1991) (Opp. at 10), involved attempts to induce witnesses to lie or not testify, and are entirely inapposite.

[11]    During the 2005 trial, the jury requested a read-back of testimony on this subject on the fourth day of jury deliberations. <u>See</u> Court Ex. 16 (referenced in Docket No. 2096).

prior testimony about this precise matter in its case-in-chief. See Government Motion In Limine

(Docket No. 2262) at 17 ¶ 3 (designating for inclusion in government case-in-chief, inter alia,

Trial 1 Tr. at 14,396:6-18, consisting of questioning about the fact that Mr. Forbes has been sued

by shareholders for losses in CUC and Cendant stock). Moreover, in the event evidence of

property transfers is allowed, it will be necessary for Mr. Forbes to explain the context in which

the transfers were done, and the jury will inevitably learn about the pending civil litigation. The

prejudicial effect of this evidence is significant.

       Evidence regarding Mr. Forbes' property transfers also improperly highlights Mr.

Forbes' wealth and is designed to arouse class prejudice and anger among jurors. It is clear that

the government seeks to use this evidence for precisely this purpose. See, e.g., Tr. (9/30/04) at

14,388 (cross-examination of Mr. Forbes; "How about, you have the nice house in Connecticut,

you have something to go skiing with in Vail. Do you have anything for the winter months, or

did you?"); id. at 14,394 (same; "And, in essence, what's happening here is your property, the

house that's worth, you bought for five and put millions of dollars more, you're getting rid of

your ownership of that now, too, aren't you?").[12] While the government asserts that it "will not

make summation arguments designed to appeal to class prejudice," Opp. at 20 n.10, the

government has done precisely that in two trials. See Tr. (11/29/05) at 3092-93 (emphasizing the

value of the severance accepted by Mr. Forbes at a time when shareholders suffered losses and

---

[12]    While the government cites cases in which evidence of "the defendant's financial motive for the charged crimes" was properly admitted, Opp. at 20 n.10, Mr. Forbes' 1998 and 1999 property transfers, which took place after the period at issue in the indictment, cannot be admitted as motive evidence.

the value of the property transferred by Mr. Forbes); Tr. (10/19/04) at 15,116-117 (same).[13]

   The government's contention that the prejudicial effect of this evidence could be mitigated by a jury instruction, and that "such instructions were given at the first and second trials," Opp. at 19, is erroneous. First, Judge Thompson rejected the government's request for a jury instruction on this subject, see Tr. (10/17/04) at 14,686-87, and no such charge was given at either trial.[14] Second, as Judge Thompson recognized, there is no standard jury instruction on the subject of property transfers. Id.[15] A jury instruction would exacerbate the prejudicial effect of the admission of any property transfer evidence because it would lend credence to the government's erroneous claim that this evidence is probative of consciousness of guilt.[16]

   Finally, the Court should preclude this evidence because the government's case against Mr. Forbes on the merits is weak. The government seeks to improperly buttress its

_____

[13] In 2005 the government also argued that "[t]he evidence shows that the defendant tried to hide millions of dollars in assets from the United States Department of Justice and from civil litigants." Tr. (11/15/05) at 3093. That claim was both erroneous and highly prejudicial. There is no evidence that Mr. Forbes did anything to conceal the property transfers from anyone. They were publicly filed in official property records.

[14] Judge Thompson explained, "I feel it's a situation where me giving a charge might be bolstering the government's arguments on a point where it's not -- where there is no standard charge. So I don't feel it's appropriate to give a charge on voluntary transfer of assets."). Id.

[15] The fact that there is no standard instruction on this subject (in contrast to flight, for example) further evidences the lack of probative value of this evidence to show purported consciousness of guilt.

[16] Once again, the cases cited by the government are inapposite. See United States v. Blanco, 861 F.2d 773, 781 (2d Cir. 1988) (Opp. at 19) (evidence that, "when she was arrested, Blanco used a false name and was found to be carrying false identification papers"); United States v. Bein, 728 F.2d 107, 113-15 (2d Cir. 1984) (Opp. at 19) (evidence of altercation admissible because "threats by a defendant against a potential witness against him" may show guilty knowledge).

evidence of the charged offenses – which consists principally of the testimony of Cosmo

Corigliano, whose credibility is suspect at best -- with highly prejudicial evidence designed to

portray Mr. Forbes in a poor light and to inflame juror anger and resentment against a wealthy

individual who sheltered assets during shareholder litigation. Because this evidence has no

probative value, but would be extremely prejudicial to Mr. Forbes, the Court should exclude it

under Fed. R. Evid. 401 and 403.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:_____

   Brendan V. Sullivan, Jr. (Bar No. ct17115)
   Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

14

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing Reply Memorandum in Support of

Motion of Defendant Walter A. Forbes to Preclude the Government from Presenting

Evidence, Cross-Examination, or Argument Concerning Property Transfers (Forbes Third Trial

Motion <u>In Limine</u> No. 2) to be filed electronically and to be served on April 28, 2006 to the

following via e-mail:

       Norman Gross, Esq. (norman.gross@usdoj.gov)
       Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
       Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)


                     _____
                     Barry S. Simon