# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

———————————————————— )
)
**UNITED STATES OF AMERICA** )
)    **No. 3:02CR264 (AHN)**
**v.** )
)
)    **April 28, 2006**
**WALTER A. FORBES** )
)
———————————————————— )

### REPLY MEMORANDUM IN SUPPORT OF MOTION OF
### DEFENDANT WALTER A. FORBES TO COMPEL DISCOVERY
### AND PRODUCTION OF <u>BRADY/GIGLIO</u> MATERIAL
### <u>(Forbes Third Trial Motion No. 2)</u>

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon  (Bar No. ct24159)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Oral Argument Requested

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this reply memorandum in support of his motion to compel the government to comply with its obligations to provide discovery and Brady/Giglio material.

## INTRODUCTION

The government erroneously seeks to portray Mr. Forbes' motion as one for reconsideration of Judge Thompson's denial of an earlier motion to subpoena documents from Cosmo Corigliano. See Opp. at 2-3. Mr. Forbes' motion is not directed to Mr. Corigliano, but to the government, and seeks documents within the government's possession, custody, or control.[1] Unlike Mr. Corigliano, the government has a duty, pursuant to Rule 16, to produce documents material to the preparation of Mr. Forbes' defense, as well as an obligation, under Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and this District's Standing Order on Discovery, to produce, inter alia, significant impeachment material concerning the government's key witness. The government also has an obligation under the Due Process Clause not to let false testimony go uncorrected. See Napue v. Illinois, 360 U.S. 264, 269 (1959); United States v. Sanfilippo, 564 F.2d 176, 178 (5th Cir. 1977).

Contrary to the government's contention, Opp. at 13, Judge Thompson never "rejected [Mr.] Forbes' contention that the prosecution team was obligated to turn over documents in the SEC's files that might prove useful to the defense," id. at 13-14. Judge Thompson never entered such a ruling, largely because the government previously "agreed to produce all Brady and Giglio information in the SEC's possession." Docket No. 359 (filed

---

[1]    As discussed herein, Mr. Forbes' motion is not a motion for reconsideration. In any event, Mr. Forbes has an obligation to renew his requests for discovery and Brady/Giglio material at this juncture. See generally Reply Memorandum in Support of Forbes Third Trial Motion No. 4 (filed 4/28/06).

8/23/03).[2]  The government further represented to Judge Thompson that it either had produced, or would produce "all financial data" provided by government witnesses to the SEC, id. at 49, SEC notes of witness interviews, id.,[3] information regarding any efforts by the government to lobby the SEC on behalf of prosecution witnesses, id. at 50, and all documents in the possession of the SEC that pertained to the Corigliano investigation, Docket No. 1643 (filed 8/15/05) at 7.

In a March 8, 2004 pleading (Docket No. 519), the government reiterated its obligation to produce SEC materials and represented that it had complied with that obligation. The government asserted, inter alia, that it had "reviewed the SEC correspondence file and has produced all materials contained therein that are subject to Brady, Giglio or any other legal concept that could require production."  Id. at 6; see also id. at 7 ("The defendants are already in possession of all of the SEC's contemporaneous notes of witness interviews.").  In August 2005, the government represented that, "[a]s of July 24, 2004, the Government transmitted to the defendants all remaining documents in possession of the SEC that pertained to the Corigliano investigation that, owing to the delayed review of the SEC file[] by SEC counsel, had not

_____

[2]    Judge Thompson explained that, "if there's a motion and I get a representation from the government that it is fulfilling its obligations under the law, my normal practice is to deny the motion as moot based on the representations of the government."  Tr. (10/23/03) at 10.  In June 2004, Judge Thompson stated, without explanation, that he was denying Mr. Forbes' discovery motions.  Tr. (6/16/04) at 4685-86; Tr. (6/23/04) at 5809-10.  The government subsequently continued to produce materials from the SEC and continued to represent that it would produce such materials.

[3]    See also Tr. 10/23/03 at 55 (government representation that "we have given them for the cooperators all the notes of former AUSAs, all the notes taken by agents and all the notes taken by SEC counsel.  So they have all that stuff."); id. at 65 ("We have turned over so far all of the notes taken by AUSAs, agents and SEC counsel with the exception of the notes taken by the current AUSAs.").

2

previously been disclosed to the defense.").[4]

The government further represented to Judge Thompson that, "[w]ith respect to the SEC, just overall, Your Honor, we asked, because we wanted to be sure and they are civil attorneys and don't understand the level of sensitivity to criminal and constitutional issues, so we took it upon ourselves to do more rather than less and actually take their files and look through them." Tr. (4/6/04) at 92.  While the government now attempts to distance itself from the SEC in an effort to avoid producing important impeachment material in the SEC's possession, it cannot escape its own prior representations to Judge Thompson, by which it should be bound in this proceeding.[5]

Nor can the government escape its prior representations to defense counsel in discovery correspondence in which the government acknowledged its obligation to produce SEC materials in this case. On September 14, 2001, for example, former AUSA Paul Weissman represented to defense counsel that "we have asked the SEC to produce documents and materials

---

[4]    As Mr. Forbes pointed out in his opening memorandum (Docket No. 2189 at 7-8), that representation was not accurate.  The government now asserts that it only represented that it would turn over from the SEC "anything that is arguably discovery under Brady, Giglio, the Jencks Act, and Rule 16." Opp. at 14.  That is inaccurate as well.  The government represented in August 2005 that it had produced "all remaining documents in possession of the SEC that pertained to the Corigliano investigation." Docket No. 1643 (filed 8/15/05) at 7 (emphasis added).  Moreover, the three letters between Mr. Corigliano's counsel and the SEC that were never produced by the government (and were provided to the defense by Mr. Corigliano's counsel for the first time on November 6, 2005) (Exs. 3-5 to Docket No. 2187), are, at an absolute minimum, material to the preparation of Mr. Forbes' defense and should have been produced under Rule 16.

[5]    In light of the government's representation that it had obtained and reviewed SEC files for Brady and Giglio, Tr. (4/6/04) at 92, and its numerous representations about producing SEC materials, this is not a situation where Mr. Forbes seeks materials that the prosecution team "has never had in its files, never inspected, and never knew about." Morgan v. Salamack, 735 F.2d 354, 358 (2d Cir. 1984) (Opp. at 11).  Nor is this a case in which Mr. Forbes seeks materials that are available from "public sources," id.

3

to you to which we would normally have access, and we understand the SEC has taken prompt

steps to make those documents and materials available to you." Ex. 1 hereto at 5; <u>see also</u> Ex. 2

hereto at 2 (10/3/01 letter from AUSAs Weissman and Carney to defense counsel; "We

understand that the SEC's production to you, on which you are dealing with the SEC directly,

will also be completed shortly."). On October 17, 2001, the U.S. Attorney's Office made clear

that "<u>this Office has agreed to ask the SEC to produce documents to you as part of the</u>

<u>government's production of discovery in this criminal case. The SEC, in turn, has agreed to</u>

<u>make and is making the production requested, but is doing so pursuant to the rules of criminal</u>

<u>discovery</u>, not the civil rules." Ex. 3 hereto at 4 (emphasis added). On October 23, 2001, SEC

attorney James Kidney wrote: "We know *Brady* material is to be produced. If we identify any --

and we *do* try to identify it -- we'll produce it." Ex. 4 hereto (emphasis in original); <u>see also</u> Ex.

5 hereto at 3 (11/26/01 letter from AUSAs Weissman and Carney stating "[a]s we have

previously advised you on more than one occasion, <u>the SEC is producing documents to you</u>

<u>pursuant to the rules of criminal discovery</u>, not the civil rules, and is therefor not producing

Jencks or <u>Giglio</u> material to you <u>at this time</u>.") (emphasis added).

It is clear from the government's correspondence that both the SEC and the U.S.

Attorney's Office understood that the government's obligations under Rule 16, <u>Brady</u>, and

<u>Giglio</u> included the production of materials from the SEC. Indeed, the SEC appears to be

operating with the understanding that its documents are subject to production by the government

under Rule 16. <u>See</u> Docket No. 2277 (SEC pleading) (filed 4/17/06) at 3, 18-19 (asserting that

the SEC believes that some of its documents were produced under Rule 16 and that Rule

16(a)(2) protects certain SEC documents from disclosure); Docket No. 1053 (filed 8/16/04)

(SEC pleading implicitly acknowledging production obligations under Rule 16, <u>Brady</u>, and

Giglio, and asserting that certain documents were privileged and not subject to production under Rule 16, Brady, or Giglio).

Finally, the U.S. Attorney's Office cannot escape the history of its extensive cooperation with the SEC in the investigation of accounting irregularities and violations of the securities laws at CUC and Cendant. For example, the government has an approved access request on file with the SEC that gives the U.S. Attorney's Office access to documents and information in the possession, custody, or control of the SEC. See Ex. 6 hereto.[6] In addition, the government cannot dispute that SEC attorneys and representatives regularly participated in interviews conducted by the U.S. Attorney's Office of the prosecution's cooperating witnesses, see Tr. (4/6/04) at 69-70; an FBI agent assisting the prosecution (Mark Gerber) attended interviews conducted by the SEC, such as Kevin Kearney's July 10, 2001 interview; the SEC "knew the dates on which th[e] cooperators were going to enter their pleas," Tr. (10/23/03) at 147; the government has disclosed that it gave the U.S. Attorney's Office a draft of its civil complaint against the government's key cooperators before it filed the complaint; the SEC filed its civil claims against the government's key cooperators on the same day they entered their guilty pleas (and did not oppose any stay of its civil claims in deference to this criminal action), see Docket No. 359 at 50; the SEC press release announcing its civil claims against the government cooperators makes express reference to the U.S. Attorney's investigation, see Ex. 7 hereto;[7] the SEC filed its civil action against Messrs. Forbes and Shelton on February 28, 2001,

---

[6]     See 17 C.F.R. §§ 200.30-4(a)(7) & 240.24c-1(b)(1); SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1383 (D.C. Cir. 1980) ("the SEC's general policy is to grant Justice continuing access to the entirety of a given investigative file once the Commission formally grants access.").

[7]     The SEC press release states "[t]oday's actions make crystal clear that the SEC and the U.S. Attorney have zero tolerance for fraudulent financial reporting," Ex. 2 at 1, and devotes a

the same day as the original indictment returned in this case; the SEC press release announcing

its civil claims against Messrs. Forbes and Shelton "<u>acknowledges the assistance provided by the</u>

<u>U.S. Attorney for the District of New Jersey</u>," Ex. 9 hereto at 2 (emphasis added); the SEC is

specifically referenced in Mr. Corigliano's plea agreement as an entity to which Mr. Corigliano

owes obligations under the plea agreement, <u>see</u> Ex. 2 to Docket No. 2187 at 2 & Schedule A ¶

12; former AUSA Paul Weissman engaged in discussions with the SEC on Mr. Corigliano's

behalf concerning Mr. Corigliano's disclosures to the SEC, <u>e.g.</u>, Exs. 5, 35 to Docket No. 2187;

SEC attorney David Frohlich gave Mr. Corigliano's counsel a copy of the SEC financial

disclosure form at a March 1, 2000 interview of Mr. Corigliano conducted by the U.S.

Attorney's Office in which the SEC participated, <u>see</u> Ex. 7 to Docket No. 2187; and the SEC

settled its civil claims against Mr. Corigliano on the eve of Mr. Forbes' 2004 trial in order to

have the claims resolved prior to the commencement of the trial, <u>see</u> Exs. 12-13 to Docket No.

2273.

    Given the U.S. Attorney's Office's lengthy history of cooperation and joint

investigation with the SEC in the investigation of alleged securities law violations at CUC and

Cendant, and the government's repeated representation that it was producing SEC materials

under Rule 16, <u>Brady</u>, and <u>Giglio</u>, the government cannot claim at this late date that it has no

obligation to produce materials from the SEC.  <u>See</u> <u>Kyles v. Whitley</u>, 514 U.S. 419, 437 (1995);

<u>United States v. Payne</u>, 63 F.3d 1200, 1208 (2d Cir. 1995); <u>United States v. Wood</u>, 57 F.3d 733,

737 (9th Cir. 1995) ("[U]nder <u>Brady</u> the agency charged with administration of the statute,

which has consulted with the prosecutor in the steps leading to prosecution, is to be considered

---

paragraph to the criminal pleas entered by Messrs. Corigliano and Sabatino and Ms. Pember on
the same day as the filing of the SEC actions, <u>id.</u> at 4.

as part of the prosecution in determining what information must be made available to the

defendant charged with violation of the statute."); accord United States v. Bhutani, 175 F.3d 572,

577 (7th Cir. 1999) (collecting cases).[8]

       As demonstrated below and in Mr. Forbes' opening memorandum, the materials

Mr. Forbes seeks from the government, including SEC materials, are material to the preparation

of his defense. In many instances, the documents Mr. Forbes seeks consist of significant

impeachment material relating to the government's central witness, Cosmo Corigliano. The

documents are neither collateral nor cumulative. To the contrary, they go to the heart of the

government's (false) portrayal of Mr. Corigliano as a man who has seen the error of his ways

and has become a reformed truth-teller since entering into his plea agreement in January 2000.

Because the government continues to present Mr. Corigliano as an honest witness who is in full

---

[8]    The cases cited by the government do not support its claim that it has no obligation to
produce SEC materials. For example, while the government relies on United States v. Avellino,
136 F.3d 249 (2d Cir. 1998) (Opp. at 11), the Second Circuit stated there that it was troubled by
the possibility that the prosecution had actual or constructive knowledge of the materials in
question. See id. at 256 ("Were this Court in disagreement with the district court's assessment
of materiality, we would likely remand for further proceedings to explore those questions.").
Other cases cited by the government are inapposite. E.g., United States v. Pelullo, 399 F.3d 197,
218 & n.23 (3d Cir. 2005) (Opp. at 12) (no Brady violation based on non-production of Pension
& Welfare Benefits Administration ("PWBA") documents where (unlike here) "[t]here is no
indication that the prosecution and PWBA engaged in a joint investigation or otherwise shared
labor and resources," and the defendant never made a specific request for the documents), cert.
denied, 126 S. Ct. 1141 (2006); Lavallee v. Coplan, 374 F.3d 41, 45-46 (1st Cir. 2004) (court
found documents immaterial under Brady, although acknowledged that government may have
been obligated to produce them); United States v. Locascio, 6 F.3d 924, 948-49 (2d Cir. 1993)
(Opp. at 11-12) (documents were immaterial and concerned unrelated investigation); United
States v. Hutcher, 622 F.2d 1083, 1088 (2d Cir. 1980) (Opp. at 11) (documents were in
bankruptcy court file and involved proceedings in which defendant participated); United States
v. Quinn, 445 F.2d 940, 944 (2d Cir. 1971) (Opp. at 12 n.5) (document was sealed indictment
returned in another district); United States v. Gambino, 835 F. Supp. 74, 95 (E.D.N.Y. 1993),
aff'd, 59 F.3d 353 (2d Cir. 1995) (Opp. at 11) (documents were known to an FBI agent and a
state prosecutor in an unrelated case investigated four years earlier).

compliance with his plea agreement, and Mr. Corigliano's testimony apparently was credited by one or more jurors in the 2004 and 2005 trials,[9] the materials Mr. Forbes seeks are critical to reveal the truth about Mr. Corigliano, demonstrate that the government permits Mr. Corigliano to breach his plea agreement with impunity, and impeach Mr. Corigliano's credibility.

Where, as here, the government's case relies heavily on the testimony of one witness, it is "especially important that the defense have a fair opportunity to cross examine and to impeach [the witness's]] testimony." <u>St. Germain v. United States</u>, 2004 WL 1171403 (S.D.N.Y. May 11, 2004) (granting a new trial on the grounds that the government withheld material impeachment material concerning its key witness). Mr. Forbes respectfully requests that the Court require the government to produce the materials and information identified in his motion.

## ARGUMENT

## I.    DOCUMENTS AND INFORMATION RELATING TO COSMO CORIGLIANO.

### A.    Communications Between Mr. Corigliano and/or His Counsel and the SEC.

The government repeatedly asserts that the materials Mr. Forbes seeks with respect to communications between Mr. Corigliano's counsel and the SEC are collateral and/or cumulative. They are not.

First, the materials are not collateral because the government elicited direct testimony from Mr. Corigliano concerning his purported compliance with his obligations under the plea agreement, including his disclosure obligations with respect to the SEC. <u>See</u> Tr.

---

[9]    Otherwise, Mr. Forbes would have received the acquittal to which he is entitled. Mr. Corigliano is the only witness who claims to have personal knowledge of purported wrongdoing by Mr. Forbes.

(11/1/05) at 1452-53, 1456-57. The government also elicited direct testimony from Mr.

Corigliano concerning his obligation under the plea agreement to use his best efforts to settle any

claims asserted by the SEC, see Tr. (11/1/05) at 1467-68, and his purported willingness, after

entering into his plea agreement, to pay back to the SEC all of the net proceeds of the stock he

sold during his tenure at CUC and Cendant. See id. at 1471-72.

      Having affirmatively elicited this testimony from Mr. Corigliano, the government

cannot contend that materials which would impeach this testimony are collateral in this case.

Under the doctrine of impeachment by contradiction, Mr. Forbes is entitled to impeach

testimony elicited from the government on these subjects and to present extrinsic evidence on

these subjects. See United States v. Benedetto, 571 F.2d 1246, 1250 (2d Cir. 1978) ("Once a

witness (especially a defendant-witness) testifies as to any specific fact on direct testimony, the

trial judge has broad discretion to admit extrinsic evidence tending to contradict the specific

statement"); see also United States v. Garcia, 900 F.2d 571, 575 (2d Cir. 1990) ("It was only

after Camacho reopened the issue on redirect-examination and created the false impression that

the arrest had *not* involved drugs that the court allowed admission of the arrest record. Thus the

record was admitted not to impeach Camacho's general credibility through extrinsic evidence,

see Fed. R. Evid. 608(b), but to contradict a false statement made by Camacho in his redirect

testimony.").

      Second, the materials Mr. Forbes seeks go to the heart of Mr. Corigliano's

relationship with the government and his motive and bias to testify falsely against Mr. Forbes in

an effort to curry favor with the government. "The law is well settled in this Circuit, as in

others, that bias of a witness is not a collateral issue and extrinsic evidence is admissible to prove

that a witness has a motive to testify falsely." United States v. Harvey, 547 F.2d 720, 722 (2d

9

Cir. 1976). Bias evidence includes anything that could "reveal any present and continuing

reasons for the witness to fabricate his testimony in return for <u>future</u> prosecutorial favors."

<u>United States v. Lynn</u>, 856 F.2d 430, 433 (1st Cir. 1988) (emphasis added). This category of

bias would include evidence that the witness had breached his plea agreement with the

government, and thus has a motive to fabricate testimony in hopes that the government will not

act upon the breach.[10]

        Third, the materials Mr. Forbes seeks are necessary to correct false and

misleading testimony presented by the government. <u>See</u> Forbes Third Trial Motion <u>In</u> <u>Limine</u>

No. 4 (Docket No. 2273) (filed 4/17/06). The Court should reject the government's contention

that there should be no inquiry into whether Mr. Corigliano has breached his plea agreement or

received special treatment from the government because neither the SEC nor the U.S. Attorney's

Office has concluded that he has done so (Opp. at 15, 19). Both the U.S. Attorney's Office and

the SEC have a vested interest in protecting the government's key witness against Mr. Forbes

and denying that Mr. Corigliano has received special treatment in light of his status as the

government's star witness. Similarly, both the U.S. Attorney's Office and the SEC are no doubt

aware of the consequences of an admission by the government that Mr. Corigliano has breached

his plea agreement and/or testified falsely. In <u>United States v. Wallach</u>, 935 F.2d 445 (2d Cir.

1991), the government took the position that its key witness, who testified that "he stopped

gambling at the direction of prosecutors," <u>id.</u> at 455, and whose cessation of gambling was a

---

[10]     In <u>Lynn</u>, for example, the court held that it was error to exclude evidence that the witness
had not successfully completed a polygraph exam when successful completion was a condition
of the plea agreement. "There is no question of the relevance of the intended area of inquiry –
[the witness's] motivation to lie to continue to curry favor with the government." <u>Id.</u> Similarly,
the court noted that a desire to protect assets that may still be subject to forfeiture can provide a
witness with motive to fabricate testimony. <u>Id.</u> at n.5.

condition of his bail, id. at 456, had done nothing wrong and had testified truthfully.  Rather than acknowledging the truth about its central witness, the government "sought to rehabilitate the witness on redirect," id. at 457, and "consciously avoided recognizing the obvious -- that is, that [the witness] was not telling the truth."  Id.  The Second Circuit reversed the defendants' convictions.

The government here is on notice of specific evidence identified by Mr. Forbes that reveals that Mr. Corigliano testified falsely in two trials and breached his obligations to the SEC under the plea agreement.  The documents made available to Mr. Forbes to date reflect, inter alia, that Mr. Corigliano (through his counsel) (1) resisted and defied SEC requests for financial disclosure pursuant to Mr. Corigliano's plea agreement; (2) refused to complete the SEC financial disclosure form under oath despite requests from the SEC that he do so; (3) provided misleading and incomplete financial information to the SEC; and (4) did not produce tax returns sought by the SEC.  The documents also reveal that Mr. Corigliano's testimony about his purported willingness, as of January 2000, to return all of the net proceeds of his ill-gotten gains to the SEC was false, and that Mr. Corigliano's testimony about a purported $6 million tax issue that supposedly held up his SEC settlement was false.  The documents Mr. Forbes seeks from the government relate to these significant issues and should be produced.

Finally, the Court should reject the government's contention that the documents and information requested by Mr. Forbes are immaterial because Mr. Forbes already has a "virtual mountain of impeachment information."  Opp. at 9.  Much of the so-called "mountain" of material consists of information about Mr. Corigliano's conduct before he entered into his plea agreement.  See Opp. at 16 (identifying prior subjects of cross-examination, including Mr. Corigliano's involvement in the fraud, false denials of complicity in 1998 and 1999, and stock

11

sales prior to April 1998). The information Mr. Forbes seeks is of a very different character, relating to Mr. Corigliano's credibility and conduct <u>after</u> he entered into his January 2000 plea agreement and after his purported moral transformation into a truth-teller.

In <u>Wallach</u>, the Second Circuit rejected a similar argument advanced by the government, reasoning that the information not revealed to the jury was material because the government had led the jury to believe that its key witness "had undergone a radical moral transformation" after agreeing to cooperate with the government, 935 F.2d at 458, and because the government emphasized that the witness's cooperation agreement gave him a powerful motive to testify truthfully, <u>id.</u> at 458-59. The government has done the same thing with Mr. Corigliano, whose testimony, like that of the key witness in <u>Wallach</u>, is "essential to the government's case." <u>Id.</u> at 458.

It is undisputed that Mr. Corigliano was a liar and a criminal <u>before</u> he entered into his plea agreement in January 2000; the government itself elicits this testimony from Mr. Corigliano on direct examination. The critical question is whether Mr. Corigliano was transformed into a law-abiding truth-teller upon entering into his plea agreement, as the government contends, and as the government argues to the jury, or whether he is the same Cosmo Corigliano as before, lying and manipulating to further his own self-interest.[11] If the jury

---

[11]    The government's emphasis on Mr. Corigliano's purported transformation following his plea agreement, and its reliance on the truth-telling provisions of his plea agreement, in both its direct examination of Mr. Corigliano and in summation, <u>see</u> Forbes Third Trial Motion <u>In Limine</u> No. 1 (Docket No. 2190) (filed 3/31/06), distinguishes this case from <u>United States v. Weiss</u>, 930 F.2d 185 (2d Cir. 1991) (Opp. at 17). There, the government "did not question its witnesses on their motive for testifying," <u>id.</u> at 198, and "did not stress the issue of the government witnesses' lack of motivation to alter their testimony against [the defendant]." <u>Id.</u> <u>United States v. Gomes</u>, 177 F.3d 76 (1st Cir. 1999) (Opp. at 17), is inconsistent with <u>Wallach</u> and is not the law of this Circuit.

at Mr. Forbes' third trial concludes that Mr. Corigliano is testifying untruthfully about his

purported moral transformation following his plea agreement, and his purported compliance with

that agreement, it will "call[] into question the veracity of the rest of his statements." Id. at

458.[12] In a case that hinges on Mr. Corigliano's credibility, the information Mr. Forbes seeks is

neither cumulative nor immaterial.[13]

### 1.    SEC Financial Disclosure Form.

The government observes that Mr. Corigliano was required to fill out an extensive

affidavit "[i]n conjunction with his $14 million settlement with the SEC." Opp. at 18. It

neglects to mention that Mr. Corigliano was not required to submit this affidavit until September

2004, after Mr. Corigliano's April 2004 settlement with the SEC, after cross-examination of Mr.

Corigliano in 2004 that brought to light matters not contained in Mr. Corigliano's pretrial

financial disclosures to the SEC, and after the conclusion of Mr. Corigliano's 2004 trial

testimony.

Mr. Corigliano's September 2004 affidavit is not at issue here. Rather, Mr.

Forbes seeks documents and information concerning the SEC's request in early 2000 and

---

[12]    While Mr. Forbes also is able to cross-examine Mr. Corigliano about the benefits he has
received from the government under his plea agreement and the terms of his SEC settlement,
Opp. at 16, the value of that impeachment is mitigated by the government's emphasis on the
truth-telling provisions of the plea agreement. This further illustrates the significance of the
materials Mr. Forbes seeks concerning Mr. Corigliano's violation of his obligations under his
plea agreement.

[13]    Compare United States v. Amiel, 95 F.3d 135, 146 (2d Cir. 1996) (Opp. at 17) (case was
not dependent on testimony of witnesses with respect to whom Brady issue arose and there was
no indication that government elicited direct testimony about witnesses' compliance with plea
agreement). In United States v. Knight, 342 F.3d 697 (7th Cir. 2003) (Opp. at 18), the
government disclosed impeachment information during trial and the defendants "failed to show
that favorable impeachment evidence was suppressed." Id. at 707.

thereafter, pursuant to Mr. Corigliano's plea agreement, for Mr. Corigliano to complete its standard financial disclosure form under oath. That form would have required Mr. Corigliano, inter alia, to disclose matters such as his substantial cash transfers to his father and the $3 million retainer he paid to his counsel. Mr. Forbes has identified specific correspondence between the SEC and Mr. Corigliano's counsel on the subject of Mr. Corigliano's financial disclosures that has not been produced, including a May 15, 2000 letter from Thomas Newkirk of the SEC to Mr. Corigliano's counsel and at least three letters dated March 30, 2000. See Docket No. 2189 at 8 n.6. Mr. Forbes also has identified specific communications between the SEC and Mr. Corigliano's counsel about which the government has not supplied any information, such as a May 2, 2000 communication between Mr. Corigliano's counsel and Director Walker of the SEC. See id.

While the government attempts to excuse Mr. Corigliano's refusal to provide the financial disclosure form sought by the SEC, Opp. at 20, because Mr. Corigliano's counsel purportedly advised that completion of the form "was required only if the parties were on the verge of settlement," id., Mr. Corigliano had a personal, non-delegable duty under the plea agreement to "truthfully disclose all information he possesses concerning any matters about which [the U.S. Attorney's] Office and other government agencies designated by this Office, including . . . the SEC, may inquire of him." Ex. 2 to Docket No. 2187 at 2. This obligation is unequivocal and contains no exceptions based on the status of Mr. Corigliano's settlement negotiations with the SEC. It is clear that the SEC requested that Mr. Corigliano provide certain information, under oath, and that he refused to do so.

The contemporaneous record also is inconsistent with the government's revisionist history. Mr. Corigliano's counsel's May 16, 2000 letter to the SEC (Ex. 3 to Docket

14

No. 2187) reflects that Mr. Corigliano's counsel initially took the position that Mr. Corigliano was not required to complete the form unless he was availing himself of the SEC waiver policy based on a claim of financial hardship. It is clear, however, that the SEC took issue with that position, and that Mr. Corigliano's counsel <u>retreated</u> from that position at a meeting with the SEC on May 19, 2000, at which time Mr. Corigliano's counsel "explicitly stated that Cosmo would fill out the financial disclosure form you have provided -- which also requests transfer information." Ex. 4 to Docket No. 2187. On May 24, 2000, Mr. Corigliano's counsel further represented that "Cosmo is working on the financial disclosure form, and we will supply that information to you promptly as we possibly can." <u>Id.</u> Two days later, however, Mr. Corigliano's counsel supplied a letter to the SEC in lieu of the form, Ex. 8 to Docket No. 2187.

   Mr. Corigliano never supplied a completed disclosure form to the SEC prior to the April 2004 settlement, despite the representations of his counsel that he would do so, and despite the requirements of the plea agreement. Even under the government's current theory, Mr. Corigliano would have been required to complete the form in advance of the April 2004 settlement, because the settlement contained a partial interest waiver based on Mr. Corigliano's financial circumstances. <u>See</u> Ex. 13 to Docket No. 2187 ¶ 13. Indeed, according to both Mr. Corigliano and the government, the terms of the final SEC settlement were essentially the same as the terms of the settlement proposed by the SEC in May 2000, where the SEC would waive full payment if Mr. Corigliano was unable to pay, and would leave him "with his house, car, legal fees, and walking around money." Ex. 3 to Docket No. 2187; <u>see</u> Opp. at 15. The government has not offered any explanation for Mr. Corigliano's failure to complete the SEC form at any time prior to the April 2004 settlement, even after he sought to take advantage of the SEC waiver policy.

15

Mr. Corigliano either defied the SEC's request that he complete the ordinary SEC financial disclosure form under penalty of perjury or was excused by the SEC from that obligation. In either case, all communications between Mr. Corigliano or his counsel and the SEC concerning SEC requests for financial disclosure constitute Brady, Giglio, and Rule 16 material that should be produced by the government. Similarly, the government should be required to produce all oral Brady and Giglio concerning this subject matter, including the substance of all oral communications between the SEC and Mr. Corigliano or his counsel on these subjects. This information is relevant to Mr. Forbes' cross-examination of Mr. Corigliano and is admissible as evidence of bias and motive, as well as to impeach the testimony the government seeks to elicit from Mr. Corigliano on direct examination.

While the government attempts to lodge objections to the admissibility of the materials Mr. Forbes seeks, e.g., Opp. at 26, the issue here is not whether the materials are admissible but whether they are subject to production under, inter alia, Rule 16. Rule 16 requires the production of any document that will assist the defense in "uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." United States v. Lloyd, 992 F.2d 348, 351 (D.C. Cir. 1993) (quotation omitted). It is not limited to documents that may be introduced into evidence. The government cannot excuse its failure to produce these materials, which are clearly subject to production under Rule 16, on the purported ground that they are inadmissible. In virtually every instance in which the government has made a belated production of SEC material (such as the correspondence between the SEC and Mr. Corigliano's counsel that it produced mid-trial in 2004, see Docket No. 971), or such material was otherwise disclosed (such as the three letters attached to the Kramer Levin pleading in November 2005 but not produced by the government), the documents

16

have been significant to Mr. Forbes' trial preparation and/or cross-examination of Mr.

Corigliano.[14]

---

[14]    In any event, Mr. Forbes should be permitted to cross-examine Mr. Corigliano concerning his counsel's communications with the SEC and to introduce those materials into evidence. See, e.g., Forbes Third Trial Motion No. 4 (Docket No. 2186) filed 3/31/06); Forbes Third Trial Motion In Limine No. 4 (Docket No. 2273) (filed 4/17/06). Mr. Corigliano should not be allowed to hide behind his lawyers when he had a non-delegable duty to the SEC under his plea agreement and authorized his lawyers to interact with the SEC on his behalf. At least one court of appeals has held that a witness may be examined under Rule 613 about a statement by an agent who was authorized to speak on behalf of the witness:

> It is the general rule that "statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney." United States v. Margiotta, 662 F.2d 131, 142 (2nd Cir. 1981), cert. denied, 461 U.S. 913, 103 S. Ct. 1891, 77 L. Ed. 2d 282 (1983). . . . In this case there is no question that the plaintiff's attorney was fully authorized to act and speak for the plaintiff. The statements made in the previous lawsuit were proper for impeachment under Federal Rule of Evidence 613.

Williams v. Union Carbide Corp., 790 F.2d 552, 555-56 (6th Cir. 1986). This rule is consistent with cases holding that a witness may be impeached with a third party statement that the witness has adopted. See, e.g., United States v. Strother, 49 F.3d 869, 875 (2d Cir. 1995) ("[A] third party's characterization of a witness's statement can constitute a prior statement of the witness where the witness has 'subscribed to that characterization.'" (quoting United States v. Almonte, 956 F.2d 27, 29 (2d Cir. 1992))). If a statement is attributable to a witness when she adopts the statement after the fact, a statement should likewise be attributable to the witness when she authorized the third party to make the statement before the fact. In either situation, the witness has adopted the statement as her own. United States v. Cuevas Pimentel, 815 F. Supp. 81 (D. Conn. 1993) (Opp. at 22), does not compel a different result. That case addressed the question of whether a transcript of an attorney's statements at a detention hearing was admissible as extrinsic evidence of prior inconsistent statements by the client witness under Rule 613(b). Although the Court ruled in limine that the transcript itself would be inadmissible under Rule 613(b), the Court did not address the question of whether the client witness could be cross-examined concerning the statements reflected in the transcript under Rule 613(a). To the extent that Pimentel holds that a statement of a third party can never be attributable to a witness for purposes of Rule 613, see 815 F. Supp. at 83 ("This rule makes no provision, express or implied, for the attribution of statements of others to a witness."), that case is inconsistent with Strother, 49 F.3d at 875; United States v. Almonte, 956 F.2d at 29; and Williams, 790 F.2d at 555-56. Moreover, the statements here are not mere prior inconsistent statements, but evidence of Mr. Corigliano's noncompliance with the terms of his plea agreement and the government's willingness to excuse or ignore Mr. Corigliano's noncompliance.

17