## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | No. 3:02CR264 (AHN) |
| ) | April 28, 2006 |
| WALTER A. FORBES. ) | |

## REPLY MEMORANDUM IN SUPPORT OF MOTION OF WALTER A. FORBES FOR LEAVE TO ISSUE TRIAL TESTIMONY SUBPOENAS TO JAMES KIDNEY AND THOMAS NEWKIRK, AND A RULE 17(C) SUBPOENA TO THE SEC RECORDS CUSTODIAN
<u>(Forbes Third Trial Motion No. 5)</u>

### and

## MEMORANDUM OF WALTER A. FORBES IN OPPOSITION TO THE SEC'S MOTION TO QUASH TRIAL SUBPOENAS SERVED ON DAVID FROHLICH, MATT GREINER, ROGER PAZAMANT AND <u>SUSAN MARKEL</u>

The Securities and Exchange Commission's ("SEC") opposition to Mr. Forbes' Motion for leave to serve subpoenas claims that the information sought by Mr. Forbes' testimony and document subpoenas is "collateral."[1] As demonstrated in Mr. Forbes' Opening Memoranda, in Forbes Third Trial Motion <u>in Limine</u> No. 4 (Docket No. 2273), and in his Reply to the Opposition filed by Mr. Corigliano and Kramer Levin (filed April 28, 2006), the information sought is <u>not</u> collateral, and should be produced.

The SEC also moves to quash four subpoenas served on SEC personnel who participated in interviews of several government witnesses. The SEC personnel may be called to

---

[1] The SEC discusses the topics likely to be covered in the testimony of the witnesses Mr. Forbes seeks to subpoena in only the most general of terms, and the SEC provides no discussion or analysis concerning the document requests themselves.

testify to statements made by these witnesses during those interviews should the witnesses deny making the statements.  Similar testimony was necessary during the first two trials, and is expected to be necessary in the third trial.

## I.    SUBPOENA FOR DOCUMENTS.

The SEC's arguments that the documents sought pursuant to Mr. Forbes' Rule 17(c) subpoena to the custodian of records are privileged, and that Mr. Forbes' requests are contrary to Federal Rule of Criminal Procedure 16(a)(2), must be rejected.  First, the SEC makes no effort to delineate how the documents it is withholding qualify as privileged.  See, e.g., Adler, Coleman, Clearing Corp. v. Mishkin, SIPC,1999 WL 1747410, *2 (S.D.N.Y. Dec. 8, 1999) ("The party seeking to invoke a privilege bears the burden of establishing those facts that are the essential elements of the privileged relationship. . .. This burden cannot be discharged by mere conclusory or ipse dixit assertions.").  Indeed, most of the document requests relate to the SEC's communications with third parties – either Mr. Corigliano or his counsel – and cannot possibly fall into a privileged category.  Second, Rule 16(a)(2) applies to internal investigative files made in connection with "investigating or prosecuting the case." Fed. R. Crim. Proc. 16(a)(2) (emphasis added).  Mr. Forbes does not seek documents made in connection with this case, but in connection with the SEC's case against Mr. Corigliano – a matter which has been settled for over a year now.  Such documents are not protected by Fed. R. Crim. Proc. 16(a)(2), and thus the Rule can provide no comfort to the SEC here.[2]

Even if the Rule were applied here, it would have to yield to the government's Brady obligations.  For example, if the SEC's internal files reflected communications with the

---

[2] To the extent any of the responsive documents contain Jencks material, which is addressed by Fed. R. Crim. Proc. 16(a)(2), that fact should merely give cause to delay production until Mr. Corigliano testifies, not eliminate the need to produce the documents altogether.

USAO establishing that the terms of Mr. Corigliano's agreement differ from what is written, the government would be obligated to produce the relevant documents, regardless of the protections afforded by Fed. R. Crim. Proc. 16(a)(2).[3]

Moreover, the USAO has taken the position that it has no obligation to produce SEC documents pursuant to Rule 16.  See Gov't Opp. to Forbes Third Trial Motion No. 2 at 10-13, Docket No. 2258-1.  While the government's position is erroneous and inconsistent with its prior representations to Judge Thompson and defense counsel, see Forbes Reply Mem. Third Trial Motion No. 2 (filed April 28, 2006), even more clear is that the government cannot avoid production by claiming the SEC is not part of the prosecution for purposes of Rule 16, but is part of the prosecution for purposes of Rule 17(c).[4]

The SEC's other arguments in Opposition to Mr. Forbes' Motion for Leave to serve the document subpoena are duplicative of those set forth in the Opposition filed by Mr. Corigliano and Kramer Levin.  Mr. Forbes relies upon the arguments in his Reply Memorandum to that brief, also filed today, April 28, 2006.

---

[3] At a minimum, the Court should inspect in camera any SEC documents that are contemporaneous with either the Budget Agreement or the Consent Agreement, and which describe the terms of those agreements (in particular, the assets which the Coriglianos were permitted to retain) – including any memoranda prepared for the SEC Commissioners who had to approve the Consent.  Then, at the very least, there would be a clear record of what the SEC believed the terms of these agreements to be at the time, before Mr. Corigliano testified in the first trial.

[4] Nor does Mr. Forbes seek production of the material twice.  If the documents are produced by the USAO pursuant to Rule 16, the SEC need not produce the identical documents pursuant to a Rule 17(c) subpoena.

II.    **TESTIMONY SUBPOENAS TO MESSRS. KIDNEY, FROHLICH AND NEWKIRK.**

    A.    <u>**These Witnesses' Testimony is Relevant to the Bias of Cosmo Corigliano.**</u>

        The SEC acknowledges that Messrs. Kidney, Frohlich and Newkirk possess information concerning the budget and settlement agreements entered into between Mr. Corigliano and the SEC. Opp. at 4-5. The SEC nonetheless argues that this evidence is irrelevant and inadmissible, asserting that "the testimony sought relates to the <u>tangential topic of Corigliano's settlement with the SEC and the alleged inadequacy of Corigliano's disclosures to the SEC</u>. This is purely potential impeachment material, irrelevant to the crimes charged." <u>See, e.g.</u>, Opp. at 13 (emphasis added).

        Contrary to the government's argument, as described at length in Mr. Forbes' earlier pleadings,[5] both these topics are relevant to Mr. Corigliano's bias. The settlement permitted Mr. Corigliano to keep millions of dollars worth of assets – a far from inconsequential benefit conferred upon him by the government, and evidences bias. Similarly, the government's willingness to ignore Mr. Corigliano's apparent breach of his obligation to provide complete and accurate information to the SEC upon request – first in the spring of 2000, and then again in the fall of 2003 when the SEC specifically requested valuation of Mr. Corigliano's property beyond that provided in his regular quarterly reports – confers yet another benefit on Mr. Corigliano, and provides both a motive to lie to ensure he stays in good favor with the government, as well as critical evidence of the true nature of the agreement between Mr. Corigliano and the government. "The law is well settled in this Circuit, as in others, that bias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely."

---

[5] Including Forbes Third Trial Motion No. 2 (Docket No. 2189), Forbes Third Trial Motion No. 4 (Docket No. 2186, and Forbes Third Trial Motion in Limine No. 4 (Docket No. 2273).

United States v. Harvey, 547 F.2d 720, 722 (2d Cir. 1976) (reversing conviction); accord United States v. James, 609 F.2d 36, 46 (2d Cir. 1979). See Opening Memorandum at 4-5.[6]

## B.    The SEC Witnesses' Testimony Is Not Duplicative of Mr. Corigliano's.

The SEC argues that even if relevant and admissible, the testimony of its witnesses should be precluded because it adds nothing new to the testimony of Mr. Corigliano. Opp. at 14-15. This argument ignores the fact that Mr. Corigliano's testimony stood in stark contrast to the text of the agreements he has with the SEC, and that the government itself has made conflicting representations concerning the agreements in existence. Compare Ex. 28 (Proposed Stipulation stating that there was an oral side agreement) and Docket No. 1643 at 3 (stating that there was no oral side agreement). Moreover, as set forth in Forbes Third Trial Motion No. 2, Docket No. 2189, and in Mr. Forbes' Reply Memorandum to the Opposition filed by Mr. Corigliano and Kramer Levin (filed April 28, 2006), the testimony of David Frohlich in the first trial was not consistent with Mr. Corigliano's testimony, and thus is not duplicative. Given the discrepancies between Mr. Corigliano, the text of the agreement, and the government itself, Mr. Forbes has the right to explore the exact nature of the benefit conferred on Mr. Corigliano through the testimonial evidence sought from Messrs. Kidney, Frohlich, and Newkirk. See Opening Mem. at 2-4.

Nor would the testimony of Messrs. Kidney, Frohlich and Newkirk be duplicative of each other. Mr. Kidney is the SEC employee who negotiated the budget agreement governing the Coriglianos' expenditures between August 2000 and March 31, 2004 and, as in the first trial, his testimony will be focused on that agreement. See also Tr. 9/23/2004 at 13507-09. Mr.

---

[6] These documents also impeach by contradiction Mr. Corigliano's expected testimony that he has complied with his plea agreement, and that he has been forthright with the government since the day he began his alleged "cooperation."

Kidney also had relevant, albeit limited, knowledge concerning the settlement – a perfectly appropriate subject for cross-examination. See, e.g., Tr. 9/23/2004 at 13511-23.

Mr. Frohlich appears to have been less involved in the budget negotiations than Mr. Kidney, but substantially more involved in the settlement negotiations that occurred in the spring of 2004. See, e.g., Tr. 9/27/2004 at 13,601- 611. Indeed, Mr. Frohlich signed the SEC's correspondence with Mr. Corigliano's attorneys during this time period. Even Mr. Frohlich was uncertain as to whether Mr. Corigliano could continue to use his and his wife's legal retainers after July 7, 2004, however (as testified to by Mr. Corigliano). See Tr. 9/27/2004 at 13,611. Mr. Kidney testified that Mr. Newkirk would be the best person to fill this knowledge gap:

- Q. Who was in charge of this negotiation?
  A. Tom Newkirk. (Tr. 9/23/2004 at 13,513);

- "Tom Newkirk is the one who would be involved and knowledgeable about any provisions." (Tr. 9/23/2004 at 13,514);

- "I don't know that there was an agreement [regarding the retainer], but I can tell you that Mr. Newkirk is the one who would be most familiar, I believe, with anything having to do with this matter that you are interested in." (Tr. 9/23/2004 at 13,514-15);

- Q. [ ]Tell me, who would be the persons in your department who would have been knowledgeable about any oral agreement to permit the Coriglianos to use $2 million worth of legal fees, if needed?
  A. Well, if there was such an agreement, which I doubt, Mr. Newkirk would presumably be the one most knowledgeable about that. (Tr. 9/23/2004 at 13,519-20).

If Mr. Forbes is to explore the benefits conferred upon Mr. Corigliano by each of these two agreements, as well as the government's willingness to ignore apparent breaches of those agreements, he must have the ability to examine both the persons responsible for the day-

to-day negotiation of the agreements, as well as the person who would be "most familiar" with any side-agreement or understanding, should it exist.

## III.  TESTIMONY SUBPOENAS TO MESSRS. FROHLICH, GREINER, PASZAMANT AND MS. MARKEL.

The SEC also moves to quash the four testimony subpoenas already served upon Messrs. Frohlich, Greiner, Paszamant, and Ms. Markel.

According to handwritten notes produced to the defense by the government, Messrs. Frohlich, Greiner, Paszamant and Ms. Markel each attended interviews of persons on the government's witness list, including interviews of the "cooperating" witnesses Cosmo Corigliano, Anne Pember, and Casper Sabatino.  Each took copious notes.  Indeed, the government produced 728 pages of notes from David Frohlich, 282 pages from Matthew Greiner, 589 pages from Roger Paszamant, and 447 pages of notes from Susan Markel.  Should any of these witnesses testify contrary to their earlier statements to these SEC staff members, as reflected in these notes, the defense intends to offer up the prior inconsistent statements through these SEC staff members, pursuant to Federal Rule of Evidence 613, as was done with one SEC witness and one former United States Attorney during the second trial.

The SEC's argument that the notes themselves do not constitute prior inconsistent statements of the witnesses is inapposite.  Regardless of whether the notes themselves can constitute a prior inconsistent statement, Mr. Forbes has a right to call the SEC personnel to ask (1) whether they recall the particular witness's prior statement, (2) if not, whether their handwritten notes refresh their recollection as to the particular witness's prior statement, and (3) if not, what the circumstances were surrounding the creation of their handwritten notes in order to establish if the notes can be read into record as a prior recollection recorded of the particular witness's prior statement.  The SEC fails to provide any basis for precluding such a line of

inquiry – merely asserting in a footnote that the Court should prohibit it.  See Opp. at 17, n.6.[7]

There is no basis for the SEC's request; indeed as the SEC is well aware, sections of notes were

read into the record in the second trial under just this type of scenario.  The SEC's Motion to

Quash should be denied.

## CONCLUSION

For the foregoing reasons, Mr. Forbes respectfully requests that the Court grant

Mr. Forbes' request to serve testimony subpoenas on Messrs. Kidney and Newkirk, and that the

Court deny the SEC's Motion to Quash the testimony subpoenas served upon Messrs. Frohlich,

Greiner, Paszamant and Ms. Markel.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:  _____

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

---

[7] The government's presentation of false testimony from these witnesses also necessitates the introduction of these prior statements in one form or another, regardless of whether the notes themselves meet the requirements of the Federal Rules of Evidence.  See Forbes Third Trial Motion in Limine No. 6 (Docket No. 2274)

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Dated:  April 28, 2006

CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Reply Memorandum in Support of Motion of Walter A. Forbes for Leave to Issue Trial Testimony Subpoenas to James Kidney and Thomas Newkirk, and a Rule 17(c) Subpoena to the SEC Records Custodian (Forbes Third Trial Motion No. 5) and Memorandum of Walter A. Forbes in Opposition to the SEC's Motion to Quash Trial Subpoenas Served on David Frohlich, Matt Greiner, Roger Pazamant and Susan Markel to be filed electronically and to be served on April 28, 2006 to the following via e-mail:

> Norman Gross, Esq. (norman.gross@usdoj.gov)
> Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
> Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

and to be sent on April 28, 2006 to the following by Fed Ex:

> Kathleen Cody, Esq.
> Securities and Exchange Commission
> 100 F Street, N.E.
> Washington, D.C. 20549-9162

Barry S. Simon