UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 3:02CR264 (AHN) |
| | ) | |
| WALTER A. FORBES | ) | April 28, 2006 |
| | ) | **(UNDER SEAL)** |

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF
WALTER A. FORBES FOR AN ORDER REQUIRING THE
GOVERNMENT TO CONFER USE IMMUNITY ON STUART
BELL
(Forbes Third Trial Motion No. 3) (FILED UNDER SEAL)**

Walter A. Forbes, through undersigned counsel, respectfully submits this

reply memorandum in further support of his motion for an order requiring the

government to confer use immunity on Stuart Bell or face the sanction of dismissal, or

the sanction of excluding all evidence relating to alleged unlawful conduct by Mr. Bell.[1]

**ARGUMENT**

This is an extraordinary case in which the government is arguing that the

former Chief Financial Officer Stuart Bell corruptly cooked the books of CUC

International, but is afraid to let him testify. The government prefers that the allegations

about Mr. Bell, which are a centerpiece of its case against Mr. Forbes, not be answered.

This tactic is fundamentally unfair and should not be condoned by this Court.

---

[1] The government devotes several pages to its boilerplate reconsideration and law
of the case arguments. See Opp'n at 2-5. Because Mr. Forbes has an obligation to
reassert evidentiary arguments at this third trial to preserve error, among other reasons,
this motion is not governed by the standards for reconsideration or the law of the case
doctrine. See Reply Mem. Forbes Third Trial Mot. No. 4 (filed April 28, 2006).
Moreover, circumstances have changed since the Court ruled on the motion in the second
trial. See Forbes Mem. at 1 n.1.

The government agrees, as it must, that there is a "three-part test for requiring the government to grant defense witness immunity at the risk of dismissal of the indictment." United States v. Bahadar, 954 F.2d 821, 826 (2d Cir. 1992).

> First, the district court must find that the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the fifth amendment. Second, the witness's testimony must be "material, exculpatory, and not cumulative". Third, the testimony must be unobtainable from any other source.

Id.; accord Opp'n at 6 (quoting Bahadar). However, the government's brief does not always argue within this framework, but attempts to engraft additional requirements from other circuits,[2] and attempts to substitute the word "and" for the word "or" in the first part of the three-part test.[3] Mr. Forbes will return to the Second Circuit's three-part test.[4]

---

[2] Opp'n at 7-8 (arguing that "Forbes must make 'a substantial evidentiary showing that the government intended to distort the judicial fact-finding process'" and citing inapposite cases from the 8th and 9th circuits).

[3] Part one of the test provides that "the district court must find that the government" (a) "has engaged in discriminatory use of immunity to gain a tactical advantage or," (b) "through its own overreaching, has forced the witness to invoke the fifth amendment." Bahadar, 954 F.2d at 826 (emphasis added). Mr. Forbes argued that the government engaged in discriminatory use of immunity. The government's brief, nevertheless, argues in multiple places that the government has not through its own overreaching forced Mr. Bell to invoke his privilege. See Opp'n at 8-9, 9-10.

[4] As set forth in Mr. Forbes' opening memorandum, the Second Circuit has "explicitly left open the issue of whether under extraordinary circumstances, due process may require that the government confer use immunity on a witness for the defendant" in the absence of "discriminatory use of immunity." United States v. Dolah, 245 F.3d 98, 106 (2d Cir. 2001), overruled on other grounds, Crawford v. Washington, 541 U.S. 36 (2004) (internal quotation omitted). The government's assertion that the Second Circuit's decision in United States v. Skelly, 2006 WL 766746, at *5 (2d Cir., March 21, 2006), rejected an "extraordinary circumstances" exception to the first prong, Opp'n at 17-18, is wrong. The portion of Skelly quoted by the government quotes Dolah, the case cited by Mr. Forbes which recognizes that the existence of an extraordinary circumstances exception is an open question. Skelly says nothing about that question, but merely quotes Dolah's restatement of the general three-part test.

1.     **The Government Has Engaged in the Discriminatory Use of Immunity.**

The government responds inconsistently that "it did not immunize <u>any</u> of the witnesses in this case," Opp'n at 7 (emphasis in original), and that "certain witnesses such as Corigliano and Pember received transactional immunity for some possible criminal charges in exchange for their guilty pleas and cooperation," Opp'n at 8, and that "Pember and Sabatino were both permitted to plead guilty to reduced charges and obtained transactional immunity for other charges," Opp'n at 11. The facts were laid out fully in Mr. Forbes' opening memorandum. <u>See</u> Forbes Mem. at 9-10 (citing and attaching immunity agreements).

- The government conferred transactional immunity upon Steven Speaks.

- The government conferred transactional immunity on Cosmo Corigliano, Anne Pember, and Casper Sabatino for known criminal activity other than the counts to which they each pled guilty.

- The government conferred limited informal use immunity upon Kevin Kearney.

Although the government did not confer use/derivative use immunity upon any witness pursuant to 18 U.S.C. § 6002, the government's contractual grants of immunity are fully enforceable against the government. <u>See, e.g.</u>, <u>United States v. Aleman</u>, 286 F.3d 86, 89-90 (2d Cir. 2002). Thus, the government has immunized several prosecution witnesses, but has refused to immunize Mr. Bell.

The real question for the Court is the legal question of whether the government's selective use of its immunity power here constitutes "discriminatory use."

The 'discriminatory use' component of the test is not entirely clear. It is arguable that this component does not mean a selection of a candidate for immunity based on some objectionable characteristic, but means simply a

decision by the government to confer immunity on some
witnesses and not others.

<u>Dolah</u>, 245 F.3d at 105-06.[5]  If that is the test, Mr. Forbes plainly has satisfied the first

prong.

The Second Circuit in <u>Dolah</u> continued, however, to state that: "[o]n the

other hand, <u>Burns</u> referred to a 'discriminatory use of immunity to gain a tactical

advantage,' and 'tactical advantage' might mean something more than merely selecting

from among potential witnesses who will receive immunity."  <u>Id.</u> at 106 (citation

omitted).

Even if Mr. Forbes must demonstrate "something more," he has done that

here.  Only those witnesses who have offered testimony damaging to Mr. Forbes or

testimony admitting to fraud at CUC have obtained any form of immunity.  The

government has refused to immunize Mr. Bell, who, as set forth below, would offer

testimony that is material, exculpatory, not cumulative, and unobtainable from other

sources.[6]  The government—in an argument that it apparently believes supports its

position—essentially concedes this point.  It states that in an "even-handed manner," it

---

[5]    This language makes clear that the government's citation of <u>Dolah</u> for the
proposition that "the issue is whether the Government acted in bad faith," Opp'n at 9, is
not accurate.

[6]    The government suggests that it did not immunize only those witnesses who
offered damaging testimony against Mr. Forbes, and cites to the examples of Ms. Pember
and Mr. Sabatino.  <u>See</u> Opp'n at 11.  Although those witnesses did not testify that Mr.
Forbes was involved in the fraud, they testified that there was a fraud.  The government's
suggestion that such testimony is not damaging stands in stark contrast to its arguments
elsewhere that the mere existence and size of the fraud constitute circumstantial evidence
of Mr. Forbes' alleged knowledge and participation.  Moreover, those witnesses offered
testimony against other alleged co-conspirators (<u>e.g.</u>, Mr. Corigliano and Mr. Shelton),
who had not yet pled guilty or been convicted.  The point is that only witnesses who
support the government's theory of the case have received immunity.

provided immunity to those witnesses "who were willing to speak truthfully to the Government about what they knew about the fraud," but not to those witnesses who refused to speak about "what they knew about the accounting fraud." Opp'n at 12. This presupposes knowing participation by Mr. Bell in a fraud, but <u>Mr. Bell did not know about or participate in a fraud. He should not be required to lie and plead guilty to obtain immunity.</u> The government's argument underscores that only a witness who would support its theory of the case can get immunity. Indeed, the government never states whether it offered Mr. Bell any form of immunity (including the proffer immunity provided to Mr. Kearney) if he would offer testimony supporting its theory of the case.

Moreover, as set forth in great detail in Mr. Forbes' opening memorandum, extraordinary circumstances further support defense witness immunity: (a) the government prominently featured Mr. Bell in its case-in-chief, and made the two-CFO theory a centerpiece of its summation; (b) the government has a trivial interest in withholding immunity because it does not intend to prosecute Mr. Bell at this late date;[7] (c) conferring immunity on Mr. Bell would not preclude the government from prosecuting Mr. Bell for the historical conduct (because the federal immunity statute does not provide transactional immunity from prosecution) or for perjury at trial, <u>see</u> 18 U.S.C. § 6002; (d) the government has permitted Mr. Corigliano to violate the transactional immunity provisions of his plea agreement without sanction, <u>see also</u> Reply Mem. Forbes Third Trial Mot. *In Limine* No. 1 (filed April 28, 2006); and (e) Mr. Bell's testimony could mitigate certain constitutional violations from the earlier trials should they recur at

---

[7]    The government, despite lengthy briefing on this issue over the course of two trials and these pre-third-trial proceedings, <u>still</u> has not stated that it has <u>any</u> intention of prosecuting Mr. Bell, or even that there is an active, ongoing investigation.

the third trial.  The government refuses to address the five points set forth in this

paragraph.  See Opp'n at 18 ("Forbes' resort to supposed 'exceptional circumstances' are

therefore of no moment, and need not be addressed.").

Whatever the Second Circuit meant by "something more" in Dolah, 245

F.3d at 106, these circumstances are sufficient to satisfy the first prong of the three-part

test, even if "something more" than "simply a decision by the government to confer

immunity on some witnesses and not others" is required.  Id. at 105-06.[8]

### 2.    Mr. Bell's Testimony Is Material, Exculpatory, and Not Cumulative.

The government, like an ostrich, ignores the fact that the two-CFO theory

is a centerpiece of its case against Mr. Forbes.

> You heard testimony and you saw documents which proved
> that this fraud, this manipulation of the earnings, was not
> something that was dreamed up or cooked up in '95, '96 or
> '97 after Mr. Corigliano was brought in as CFO.  You heard
> evidence that this fraud existed long before, long before he
> was the CFO, long before Anne Pember was the controller,
> back when it was just Mr. Forbes as the chairman, Mr.
> Shelton as president or COO and a man named Stu Bell
> running the company.

Tr. (10/18/04) at 14,828; see also Tr. (11/01/04) at 16,025 ("You have two CFOs in the

1990 to 1998 period.  What are the odds that they're both corrupt and they're both hiding

the fraud from Walter Forbes and Kirk Shelton?  Does that make Walter Forbes and Kirk

Shelton the unluckiest CEO and the unluckiest president to ever serve on a public

company?"); Tr. (12/05/05) at 3,557 ("What an unfortunate coincidence for the

---

[8]     The government's theoretical policy argument that in the ordinary case "a
defendant such as Forbes can always assert that his defense would have been advanced if
the Government immunizes a proposed defense witness," Opp'n at 9, is divorced from
the extraordinary circumstances of this case.

defendant. Not just one but two corrupt CFOs when he was head of the company."). Its argument—that Mr. Bell's testimony is not exculpatory because it merely "contradicts one aspect of Corigliano's testimony without exculpating Forbes," Opp'n at 13—is premised on an interpretation of "exculpatory" that is so narrow as to be absurd. Indeed, elsewhere in its brief, the government refers to evidence of alleged wrongdoing by Mr. Bell as "[r]elevant and compelling evidence of Forbes' guilt." Opp'n at 19 n.6. But, if the government seriously contends that its theory of a fraud dating back to the early 1990s and spanning the tenure of two CFOs is not inculpatory of Mr. Forbes, the government should abandon any evidence and argument supporting this theory, and Mr. Forbes will abandon his request for defense-witness immunity.[9]

### 3.      The Testimony Is Unobtainable From Any Other Source.

The government does not deny that the testimony is unavailable from any other source. The government argues instead that the testimony is available from Mr. Bell himself and that Mr. Forbes has not demonstrated that Mr. Bell's invocation of his privilege is proper. That is not the test set forth by the Second Circuit. See Bahadar, 954 F.2d at 826 ("Third, the testimony must be unobtainable from any other source."). The government cites no case holding that the defendant must also demonstrate that the

---

[9]      The government also claims that Mr. Forbes has failed to provide sufficient evidence that Mr. Bell will offer testimony consistent with his counsel's representations. The burden the government seeks to put on Mr. Forbes is not realistic. Mr. Forbes does not have access to Mr. Bell because he has invoked his privilege and the government will not confer immunity on him. Mr. Forbes has presented evidence, as opposed to unsupported assertions.

invocation is proper. Because the testimony is unobtainable from any other source, Mr. Forbes has satisfied the third part of the test.[10]

Moreover, the government distorts the standard for determining whether an invocation of the Fifth Amendment is proper by suggesting that invocation is proper only when the witness proves that the responses would be incriminating. See Opp'n at 16. The privilege serves to protect the innocent because "truthful responses of an innocent witness . . . may provide the government with incriminating evidence from the speaker's own mouth." Ohio v. Reiner, 532 U.S. 17, 21 (2001) (per curiam); see also Grunewald v. United States, 353 U.S. 391, 421 (1957) ("The privilege serves to protect the innocent who otherwise might be ensnared by ambiguous circumstances." (quotation omitted)). To substantiate a claim of privilege, a witness is not "required to prove the hazard" because, by doing so, "he would be compelled to surrender the very protection which the privilege is designed to guarantee." Hoffman v. United States, 341 U.S. 479, 486 (1951). Rather, the privilege applies when it is simply "evident from the implications of the question, in the setting in which it is asked, that a responsive answer . . . or an explanation of why it cannot be answered might be dangerous." Id. at 486-87 (emphasis added); see also Arndstein v. McCarthy, 254 U.S. 71, 72 (1920) (sustaining invocation of privilege because "[i]t is impossible to say from mere consideration of the questions propounded, in the light of the circumstances disclosed, that they could have been answered with entire impunity"). Here, where the government has named Mr. Bell

---

[10]    Mr. Forbes subpoenaed Mr. Bell to testify in both trials, required him to come to Court, and was prepared to have him testify before the jury. Defense counsel offered to make a complete record if there was any question about the validity of Mr. Bell's assertion of the Fifth Amendment privilege. The Court decided to rest its decision solely on the first prong of the three-part test and said that no further record was necessary. See Tr. (11/14/05) at 2,643-44.

as an alleged unindicted coconspirator, and is relying on the testimony of Mr. Corigliano, a proven liar, Mr. Bell has good reason to fear that truthful exculpatory testimony could be used against him in an unfounded prosecution.[11]

## CONCLUSION

For the reasons set forth above, Mr. Forbes respectfully requests that the Court provide the government with a choice—immunize Mr. Bell or face dismissal. As an alternative to dismissal, the Court could exclude evidence that Mr. Bell allegedly engaged in unlawful conduct at CUC.[12]

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (ct17115)
Barry S. Simon (ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

---

[11]     The government's suggestion of coordination between Messrs. Bell and Forbes raising the risk of corroborative perjury, see Opp'n at 17, is baseless and further justifies Mr. Bell's apparent concern about unfounded prosecution.

[12]     The government misses the point when it states that Mr. Forbes' alternative request to exclude all evidence that Mr. Bell engaged in unlawful conduct under Rules 403 and 611 "presupposes that the Government acted improperly by declining to immunize Bell." Opp'n at 18 n.6. Under these Rules, the Court could exclude the evidence (without a showing of government misconduct) because the evidence is one-sided, misleading, and not "effective for ascertainment of the truth." Fed. R. Evid. 611.

James T. Cowdery (ct05103)
Thomas J. Murphy (ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Reply Memorandum in

Support of Motion of Walter A. Forbes for an Order Requiring the Government to Confer

Use Immunity on Stuart Bell to be sent on April 28, 2006 to the following via e-mail and

Federal Express:

>Norman Gross, AUSA
>Michael Martinez, AUSA
>Craig Carpenito, AUSA
>U.S. Attorney's Office
>District of New Jersey
>401 Market Street, Fourth Floor
>Camden, NJ 08101

Barry S. Simon