UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AHN) |
| | : | |
| | : | |
| V. | : | May 15, 2006 |
| | : | |
| | : | |
| | : | |
| WALTER A. FORBES | : | |


REPLY MEMORANDUM OF THE UNITED STATES
IN SUPPORT OF ITS PRE-TRIAL MOTION IN LIMINE

<u>GOVERNMENT'S THIRD TRIAL MOTION NO. 1</u>

CHRISTOPHER J. CHRISTIE
NORMAN GROSS
MICHAEL MARTINEZ
Special Attorneys
U. S. Department of Justice
970 Broad Street, Room 700
Newark, New Jersey 07101
Tel: (973) 645-2700
Fax: (973) 645-2857

**TABLE OF CONTENTS**

I.    Forbes' CUC/Cendant Stock Sales Are Probative of His
      Guilt . . . . . . . . . . . . . . . . . . . . . . . .   1

II.   Rowan's Testimony Is Probative of Materiality, Which
      Forbes Concedes, and Knowledge and Intent, As Judge
      Thompson Ruled . . . . . . . . . . . . . . . . . . . . 3

III.  Forbes' Arguments for Excluding His Testimony from the
      First and Second Trials Are Meritless  . . . . . . . . 5

IV.   As Judge Thompson Ruled, the Magnitude of the Fraud Is
      Probative of Forbes' Knowledge of the Conspiracy . . . . 7

V.    Like Judge Thompson, This Court Should Preclude Forbes
      from Asking Cosmo Corigliano If He Committed "Insider
      Trading" . . . . . . . . . . . . . . . . . . . . . . . 8

VI.   Confidentiality Legends Should Be Redacted from
      Documents Introduced Or Displayed at Trial . . . . . . 10

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . 10

i

Defendant Forbes' opposition ("DB") to Point I-V of the Government's opening brief largely repeats arguments properly rejected by Judge Thompson.  As for Point VI, confidentiality legends affixed to documents during discovery should be redacted to avoid juror confusion; Bates numbers need not.

## I.    Forbes' CUC/Cendant Stock Sales Are Probative of His Guilt.

As he did prior to the second trial, Forbes contends that none of his stock sales during the term of the conspiracy should be put before the jury.  He claims such evidence is not probative of motive, knowledge or intent and would otherwise be unfairly prejudicial because it calls undue attention to his wealth.  DB1-9.  Judge Thompson squarely rejected each of those contentions and Forbes' opposition brief fails in other respects, as well.

First, Judge Thompson ruled that all of Forbes' stock sales during the conspiracy were "relevant to motive" and that Forbes' arguments "that tend to negate an unlawful motive does not make the government's evidence irrelevant."  Docket 1839, at 2-3. Second, Judge Thompson ruled that the timing and amount of Forbes' March 1998 sales were "relevant, in conjunction with" what Forbes "knew about the future prospects of Anne Pember at the company and when he knew it, to the issues of knowledge and intent."  Id. at 2.  Third, Judge Thompson ruled that evidence that Forbes "is a wealthy individual is not inherently prejudi- cial" and that "[a]ny potentially prejudicial effect" from

evidence of his stock sales could be addressed by an adequate limiting instruction.  Id.

The civil cases concerning heightened pleading standards under Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA") relied upon by Forbes, DB1-2, are not to the contrary.  Those heightened pleading standards are intended to "restrict abuses in securities class-action litiga-tion," In re Alpharma Inc. Sec. Litig., 372 F.3d 137, 147 (3d Cir. 2004), and not to impose heightened evidentiary standards on the Government in a criminal trial.

Furthermore, whether Anne Pember's uncertain "status at CUC . . . had anything to do with" Forbes' 1998 sale, DB5 at n.5, is for the jury to decide, not Forbes.  In that regard, a jury could reasonably consider Forbes' admission that he knew as early as the fall of 1997 -- long before initiating any paperwork for his March 1998 sale -- that Henry Silverman and Michael Monaco wanted to remove Pember from her position in the accounting function of the company.  FTTr. 14350-14367; STTr. 3007-3019.

Nor did the Government improperly cross-examine Forbes about his wealth or appeal to class prejudices during its opening, summation and rebuttal in the second trial.  DB8-9.  Counsel did not object when Forbes was asked whether he "had made millions of dollars at CUC" and whether his total compensation during the term of the conspiracy "exceeded $100 million."  STTr. 3001-3002. As for the portions of the Government's arguments quoted by

Forbes, in only one instance was an objection lodged.[1]  Although Forbes belatedly moved to strike some 27 aspects of the Government's rebuttal, none of them concerned his wealth.  Docket 2017.

## II. Rowan's Testimony Is Probative of Materiality, Which Forbes Concedes, _and_ Knowledge and Intent, As Judge Thompson Ruled.

Forbes concedes that James Rowan's testimony is probative of materiality and therefore is admissible.  DB9-10.  Despite Forbes' intimation to the contrary, DB9, materiality is and should remain an issue in this case.  See Opposition to Forbes Third Trial Motion in Limine No. 11.

Moreover, this Court should reject Forbes' recycled argument that his ability to "discuss CUC's and HFS's general business strategy and synergies" is not probative of his participation in the charged fraud.  DB11.  As Judge Thompson ruled, Rowan's testimony is relevant to prove Forbes' knowledge and intent, in addition to materiality.  Docket 1839, at 4.  In so ruling, Judge Thompson expressly adopted "the reasons set forth" by the Government in Docket 1694, at 12-13.

There, the Government demonstrated that "Rowan did not merely testify" at the first trial "that Forbes was able to

---

[1] That objection concerned a comment that Forbes "walked away" after taking "another $47 million in severance."  STTr. 3092.  Judge Thompson apparently believed this inappropriately compared "Forbes' compensation" with investor losses.  STTr. 3080.  Forbes did not object to argument that "if the defendant were found guilty of committing the fraud, then Cendant could sue [him] to get the $47 million back."  STTr. 3092.  As Judge Thompson ruled, "the value of [his] severance" was "relevant to" his "bias" and "incentive to be untruthful."  Docket 1845, at 3.

3

discuss Cendant's 'strategy and synergies' at the investor conference."  Rather:

- Rowan explained that Forbes gave a 25 to 35 minute presentation without using notes, which impressed Rowan because others persons who gave similar presentations that Rowan had attended often merely read from the Power Point slides.

- According to Rowan, Forbes demonstrated at the presentation that he "knew the business, the nuances of the business and knew it very, very well and could speak to it.  And that's essentially the type of presentation that Mr. Forbes did."  FTTr. 10254-55.

- Forbes' impressive performance during the January 1998 conference will demonstrate that Forbes was indeed capable of understanding sophisticated concepts and mastering minutiae.

Furthermore, as noted in the briefing adopted by Judge Thompson, Forbes' claim is similar to but less compelling than one rejected in United States v. Calandrella, 605 F.2d 236 (6th Cir. 1979), a prosecution for making materially false statements in a loan application.  There, the district court admitted evidence regarding the defendant's uncharged fraudulent conduct. On appeal, the defendant contended that the evidence, although "relevant to show [his] business acumen," should have been excluded under Rule 403 because it was unfairly prejudicial.

The Sixth Circuit rejected the claim with reasoning that applies equally here:

> Defendant Kaye's basic defense was that he was not aware of the nature of the transactions [at issue in the charged crimes] and that he was in effect duped. The evidence tended to show Kaye's level of business sophistication in transactions involving his companies and thus it tended to contradict this claim.

4

Id. at 253-54.  Although the Government cited Calandrella in its opening brief, Forbes has not even attempted to distinguish it.

## III. Forbes' Arguments for Excluding His Testimony from the First and Second Trials Are Meritless.

In its opening brief, the Government painstakingly identi-fied those portions of Forbes' testimony from the first and second trials that the Government seeks to introduce as the statement of a party pursuant to Fed. R. Evid. 801(d)(2)(A). Instead of counter-designating appropriate portions of his testimony under the rule of completeness, however, Forbes regurg-itates prior objections that Judge Thompson has overruled.

First, Forbes contends that all of his testimony at the prior trials was prompted by purportedly "false testimony from both Cosmo Corigliano and Kevin Kearney." DB12. The Government has addressed this argument at length elsewhere. E.g., Docket 1122, 1147, 2268. As Judge Thompson ruled, "this argument [is] unpersuasive because on each of the repeated occasions when defendant Forbes has raised it the court has concluded that he failed to demonstrate that either witness gave perjured testi-mony. Continuously repeating the assertion does nothing to make it meritorious." Docket 1839, at 5.

Second, Forbes contends that the Government was "errone-ously" permitted "to offer [his] testimony on the subject of asset transfers in its case-in-chief" at the second trial, and that his testimony from the first and second trials on those

5

transfers should be excluded.  DB12, 13-14.  As briefed more
fully in Docket 2263, however, that Forbes transferred roughly
$17 million in assets while a criminal investigation was pending,
and then lied under oath about the advice he received concerning
the legality of those transfers, is evidence of consciousness of
guilt.  Moreover, as Judge Thompson explained in his <u>third</u>
opinion rejecting Forbes' arguments on this subject, Docket 1866,
at 2, <u>see</u> Docket 1839, at 6-7; Docket 1841, the Second Circuit
has "upheld the admission of various kinds of evidence on the
ground that it demonstrated consciousness of guilt."  <u>United
States v. Perez</u>, 387 F.3d 201, 209 (2d. Cir. 2004) (admitting
evidence that witness "had been asked to lie to appellant's own
investigators").

   <u>Third</u>, the Government is not introducing <u>any</u> of the testi-
mony identified in its opening brief "solely for impeachment."
DB12-13.  Rather, as Judge Thompson agreed in rejecting Forbes'
prior iteration of this argument, Docket 1978, this testimony is
being offered to prove Forbes' knowledge, his criminal intent, or
other aspects of his <u>mens</u> <u>rea</u>.  Each of the four "Items" of
testimony singled out by Forbes, DB13 at n.12, will be offered as
false exculpatory testimony, which is affirmative evidence of
Forbes' consciousness of guilt.  Docket 2263, at 5-6, 8-10.[2]

_____

   [2] <u>See</u> <u>United States v. Quiroz</u>, 13 F.3d 505, 510 (1993)
("false exculpatory statement is admissible . . . to show [defen-
dant's] consciousness of guilt" and "may be an important part of
the government's proof"), <u>reh'g</u> <u>on</u> <u>other</u> <u>grounds</u>, 22 F.3d 489 (2d
Cir. 1994); <u>United States v. Johnson</u>, 513 F.2d 819, 824 (2d Cir.

Because evidence of Forbes' false exculpatory statements is admissible as affirmative evidence of consciousness of guilt, that evidence does not run afoul of the rule that a witness may not be called merely as a subterfuge in order to present other-wise inadmissible evidence to impeach that witness.  <u>See</u> <u>United States v. Eisen</u>, 974 F.2d 246, 262 (2d Cir. 1992) (rejecting defense claim that district court improperly permitted prosecution to present witnesses whose testimony exculpated defendant in order to show that those witnesses had persisted to lie about defendant's involvement in the charged crime).

Finally, having failed to identify any testimony whose introduction is necessary under the rule of completeness, Forbes should be barred from seeking to counter-designate any such testimony in the future.  The Government is prepared, however, to treat as counter-designated for this trial those portions of Forbes' testimony from the first trial that Judge Thompson ruled were properly counter-designated by Forbes under the rule of completeness.  <u>See</u> Docket 1839, at 7-8; Docket 1978, at 1-2.

## IV.  As Judge Thompson Ruled, the Magnitude of the Fraud Is Probative of Forbes' Knowledge of the Conspiracy.

Forbes does not dispute that Judge Thompson permitted the Government to argue that the quantitative effect of the various GAAP violations on CUC's and Cendant's reported earnings, "when viewed in combination with other evidence in the case," consti-

----

1975) (false exculpatory statements "are circumstantial evidence of a consciousness of guilt" with "independent probative force").

tutes circumstantial evidence of Forbes' knowledge of the fraud.
Docket 1839, at 10.  Other courts similarly have held that "the
magnitude of the alleged falsity" of a public disclosure
"stengthen[s] the inference that" the defendant knew "the state-
ments" were false.  <u>Adams v. Kinder-Morgan, Inc.</u>, 340 F.3d 1083,
1106 (10th Cir. 2003).[3]  "After all, books do not cook them-
selves."  <u>In re McKesson HBOC, Inc. Sec. Litig.</u>, 126 F. Supp. 2d
1248, 1273 (N.D. Cal. 2000).

**V.  Like Judge Thompson, This Court Should Preclude Forbes from Asking Cosmo Corigliano If He Committed "Insider Trading."**

Forbes argues that Judge Thompson's preclusion of cross-
examination on whether Cosmo Corigliano believed he committed the
crime of "insider trading" was "clearly in error."  DB20.  In
Forbes' view, Judge Thompson did not consider the cross-examina-
tion conducted by Forbes' counsel, and instead improperly relied
upon a portion of the cross-examination conducted by co-defendant
Kirk Shelton's counsel that was erroneously cited in the Govern-
ment's papers prior to the second trial.  DB20.

Forbes fails to mention, however, that Judge Thompson
subsequently overruled this objection:

---

[3] <u>See</u> <u>In re Daou Sys., Inc.</u>, 411 F.3d 1006, 1022 (9th Cir.
2005) ("significant violations of GAAP standards can provide
evidence of scienter"); <u>Nursing Home Pension Fund, Local 144 v.
Oracle Corp.</u>, 380 F.3d 1226, 1234 (9th Cir. 2004) ("reasonable to
infer that" Larry Ellison's "detail-oriented management style led
[him] to become aware of" such significant "improper revenue
recognition . . . that the company would have missed its quar-
terly earnings projection but for the adjustments").

upon reconsideration, the court concludes that the
cited passages of defendant Forbes' cross-examination
of Corigliano reflect that Corigliano was cross-exam-
ined by defendant Forbes about his understanding of
insider trading and whether he intended to deny that he
had committed insider trading.  Accordingly, after
reconsideration, the relief sought by defendant Forbes
is being denied.

Docket 1978, at 2-3.

The "cited passages" referred to by Judge Thompson put the

lie to Forbes' claim that his counsel never questioned Corigliano

about his understanding of insider trading, and whether he

intended to deny that he had committed insider trading, DB21.  In

fact, he did:

> Q.  **Secondly, you were going to deny insider trading;
> am I correct**?
>
> A.  Well, I don't believe -- I never did any insider
> trading.
>
> Q.  You never did?
>
> A.  No.
>
> Q.  Up until today?
>
> A.  Yes.
>
> Q.  In other words, on your seventh day of testimony –
> **do you know what insider trading is?**
>
> A.  I had the information.  I didn't use it to trade my
> shares.

Tr. 7597-98 (emphasis added).

That Corigliano may have been identified as a contact person

for CUC personnel with questions about the company's insider

trading policy, DB20-21, does not make his lay opinion testimony

on what constitutes "insider trading" admissible.  If Forbes

wishes to cross-examine Corigliano concerning the facts underly-

ing Corigliano's trades and whether Corigliano used his inside information when selling stocks for millions of dollars, however, the Government will not object.

**VI.  The Parties Should Redact Confidentiality Legends on Documents Introduced Or Displayed at Trial.**

The Government agrees that redacting Bates numbers on trial exhibits may prove impractical.  Confidentiality legends affixed to documents during civil and criminal discovery, however, are another matter.  Although Forbes "does not object to the redaction of these markings on a limited basis where the Government has a concern about a particular document," DB26, these legends have no probative or practical value and all of them are potentially confusing to the jury.  They all should be redacted.

**CONCLUSION**

For the foregoing reasons and those set forth in its opening brief, the Government respectfully requests that its motion <u>in limine</u> be granted in all respects save redaction of Bates numbers from exhibits to be introduced at trial.

Respectfully submitted,
CHRISTOPHER J. CHRISTIE
Special Attorney
U.S. Department of Justice

*Norman Gross/s*

By: NORMAN GROSS
Federal Bar No. 24933
MICHAEL MARTINEZ
Federal Bar No. PHV0423
Special Attorneys
U.S. Department of Justice

May 15, 2006, Newark, New Jersey

10

## CERTIFICATE OF SERVICE

The undersigned certifies that on this day I caused to be served a copy of the Reply Memorandum of the United States In Support of its Pre-trial Motion in Limine (Government's Third Trial Motion No. 1) via email on:

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901
(202) 434-5005
bsimon@wc.com


*Norman Gross/s*

NORMAN GROSS


May 15, 2006
Camden, New Jersey