UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> WALTER A. FORBES | ) <br> ) <br> )    No. 3:02CR264 (AHN) <br> ) <br> ) <br> )    May 19, 2006 <br> ) <br> ) <br> ) |

**AMENDED REPLY MEMORANDUM IN SUPPORT OF
MOTION OF DEFENDANT WALTER A. FORBES
TO PRECLUDE THE GOVERNMENT FROM PRESENTING
EVIDENCE, CROSS-EXAMINATION, OR ARGUMENT
CONCERNING PROPERTY TRANSFERS
(Forbes Third Trial Motion In Limine No. 2)**

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon  (Bar No. ct24159)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Oral Argument Requested

## **ARGUMENT**

I.   **MR. FORBES' PROPERTY TRANSFERS HAVE NO PROBATIVE VALUE.**[1]

The critical question before the Court is whether Mr. Forbes' property transfers in 1998 and 1999 are probative of purported consciousness of guilt. They are not.[2] The government has never cited a case in which a court admitted evidence of property transfers effectuated a year or more before indictment, at a time when the defendant was not the subject of any criminal investigation, for this purpose. See Docket No. 1841 at 2 (acknowledgment by Judge Thompson that "there was no authority directly on point").[3] The government's failure to cite any such case demonstrates powerfully that this evidence is not probative of purported consciousness of guilt.

While the government boldly asserts that, "[f]or a century now, American courts have permitted prosecutors to proffer evidence of asset transfers by a defendant as relevant to consciousness of guilt," Opp. at 10, the only case cited by the government for this purported

---

[1] While the government suggests that the Court should adhere to Judge Thompson's prior decisions on this subject, Opp. at 3-4, this Court is under no obligation to follow those decisions. See Docket No. 1830 (filed 10/11/05) at pp. 9-16.

[2] Mr. Forbes also objects to any evidence, cross-examination, or argument concerning his property transfer to his daughters. See Opp. at 7.

[3] The government once again relies on a series of inapposite cases. In United States v. Deutsch, 451 F.2d 98 (2d Cir. 1971) (Opp. at 5-6), for example, the defendant was charged with aiding and abetting an individual who violated the securities laws. Id. at 102. The evidence in question showed "evasive conduct concealing a transaction" that was at issue in the case. See id. at 105-06, 115-16 & n.21. Here, Mr. Forbes' property transfers to family members, which were filed in the public record, did nothing to conceal any matter at issue in this case. In United States v. Burrous, 147 F.3d 111 (2d Cir. 1998) (Opp. at 6), evidence was admitted that the defendant, who was charged with robbing a Burger King, id. at 113, "tossed a box containing $128 in cash from the window of his apartment while law enforcement personnel were in the process of arresting him." Id. at 117. Burrous bears no resemblance to this case. Nor does United States v. Wilson, 11 F.3d 346 (2d Cir. 1993) (Opp. at 6), in which "the use of false identification" was found admissible to show consciousness of guilt, id. at 353, or United States v. Dittrich, 100 F.3d 84 (8th Cir. 1996) (Opp. at 6), where the court concluded that "[b]ribing another person to take the blame for the crime charged shows consciousness of guilt," id. at 86.

general proposition is a 1906 decision from state court in North Carolina. See id. (citing State v. Kincaid, 55 S.E. 647 (N.C. 1906)). Even in that case, however, no evidence was presented in the government's case-in-chief concerning property transfers. The government asked the defendant on cross-examination about a transfer he apparently engaged in <u>after</u> indictment, and he testified that he had transferred his property "<u>to avoid the result of this indictment</u>." 55 S.E. at 648 (emphasis added). Kincaid does not support the contention that Mr. Forbes' property transfers, which were done well before any indictment, at a time when Mr. Forbes was not the subject of any criminal investigation, are admissible to show alleged consciousness of guilt.[4]

Judge Thompson relied on inapposite case law in ruling that Mr. Forbes' property transfers could be admitted as purported evidence of consciousness of guilt. See Docket No. 1841 at 4-6. For example, Judge Thompson relied on United States v. Foster, 309 F.2d 8 (4th Cir. 1962) (see Docket No. 1841 at 5). But that court found that purported consciousness of guilt evidence was <u>erroneously admitted</u> and reversed the defendant's conviction. See 309 F.2d at 14-15. In Foster, the defendant engaged in lawful conduct in resisting the production of records sought by the IRS. Id. at 14. The court reasoned that "lawful resistance to investigation does not generate an inference of guilt," id., and that "the jury should not be allowed to draw from it an inference of misdoing on the part of the accused," id. at 15. Here, Mr. Forbes' conduct -- at a time when he was <u>not</u> the subject of any criminal investigation -- was lawful and did nothing to impede the government's investigation of wrongdoing at CUC or Cendant. Foster thus supports

---

[4] The government's citation to Wigmore adds nothing to its citation of Kincaid. The government also cites an inapposite civil bankruptcy case in which the court found, after a bench trial, that certain asset transfers should be set aside as fraudulent transfers. In re Manshul Constr. Corp., 2000 WL 1228866 (S.D.N.Y. Aug. 30, 2000) (Opp. at 11).

2

the exclusion, not the admission, of the property transfer evidence.[5]

Even assuming arguendo that evidence of property transfers could be admissible to show purported consciousness of guilt, the government cannot "sturdily support[]," United States v. Al-Sadawi, 432 F.3d 419, 424 (2d Cir. 2005), "each link in the chain of inferences," id., necessary to admit it here. While the government asserts that Mr. Forbes' transfers to family members "carried an obvious financial risk," Opp. at 12, and that this "gives rise to a reasonable inference that he foresaw a significant risk of criminal liability for the charged conduct in this case," id., that argument rests on pure speculation and is premised on flawed assumptions.

For example, as the government asserts elsewhere, Mr. Forbes had a "self-declared net worth of approximately $200 million in 1998." Docket No. 2262 (filed 4/17/06) at 8. Mr. Forbes' transfers to family members of his half-interest in property comprising a small percentage of his net worth was not an "obvious financial risk," Opp. at 12, for him and was fully consistent with his desire to give his family a measure of protection in the Cendant civil litigation. The transfer of a small portion of Mr. Forbes' net worth to family members, in publicly-filed legal documents executed by attorneys, does not give rise to any inference that Mr. Forbes "foresaw a significant risk of criminal liability," id.

---

[5] Judge Thompson also relied on United States v. Stoehr, 196 F.2d 276 (3d Cir. 1952). See Docket No. 1841 at 5. Stoehr, however, was not a consciousness of guilt case. It involved an attempt by the defendant to offer evidence concerning his subsequent tax returns. Id. at 281-82. The other cases cited by Judge Thompson are inapposite as well. See, e.g., Hickory v. United States, 160 U.S. 408, 410-11, 416 (1896) (Docket No. 1841 at 4) (defendant concealed evidence of murder, such as blood spots, and avoided arrest); Alberty v. United States, 162 U.S. 499, 510 (1896) (Docket No. 1841 at 4) (flight after a homicide); United States v. Malizia, 503 F.2d 578, 582-83 (2d Cir. 1974) (Docket No. 1841 at 6) (flight after defendant was sought for arrest); United States v. Ramon-Perez, 703 F.2d 1231, 1233 (11th Cir. 1983) (Docket No. 1841 at 6) (flight following indictment, and prior to "impending suppression hearing and trial").

Nor can the government point to any event preceding the transfers "which would tend to spark a sharp impulse of fear of prosecution or conviction in a guilty mind." United States v. Dillon, 870 F.2d 1125, 1128 (6th Cir 1989) (Opp. at 13). While the government asserts that Mr. Forbes "transferred these assets while aware that a criminal investigation was ongoing," Opp. at 13, Mr. Forbes was not the focus of any criminal investigation in 1998 or 1999, see Tr. (9/2/04) at 11,445-46, and he was not notified that he was a subject or target of any criminal investigation until shortly before his February 2001 indictment, Tr. (10/4/04) at 14,473. Accordingly, there is no evidentiary basis for the inference the government seeks to draw. See United States v. Beahm, 664 F.2d 414, 420 (4th Cir. 1981) (flight after commencement of criminal investigation inadmissible where there was "no evidence that [the defendant] was aware that he was a subject of a criminal investigation") (emphasis added).[6]

The fact that the Cendant Audit Committee was conducting an investigation into accounting irregularities at the time of the first transfer in May 1998 reveals nothing about any potential criminal liability on Mr. Forbes' part and does not give rise to any inference of purported consciousness of criminal wrongdoing. Indeed, Mr. Forbes transferred his interest in two of the properties in question after the August 1998 release of the Audit Committee's Report, which found no evidence that Mr. Forbes either knew about or directed any improper accounting.

---

[6] While the government cites United States v. Dillon, 870 F.2d 1125 (6th Cir. 1989) (Opp. at 13), for the proposition that "the commencement of an investigation" may be sufficient to "spark a sharp impulse of fear of prosecution or conviction in a guilty mind," Opp. at 13, the case cited in Dillon for this proposition is United States v. Beahm, 664 F.2d at 420. See Dillon, 870 F.2d at 1128. Beahm, however, made clear that flight after the commencement of a criminal investigation is admissible only where the defendant is "aware that he was the subject of a criminal investigation." 664 F.2d at 420. The mere fact of the existence of a criminal investigation is not sufficient to give rise to an inference of consciousness of guilt from flight. Nor is it sufficient to give rise to an inference of consciousness of guilt from a property transfer.

4

Similarly, the fact that Mr. Forbes transferred his interest in a property to his wife "eight days" after Cendant announced its proposed settlement of the securities class actions, Opp. at 7 n.4, proves nothing about purported consciousness of criminal wrongdoing. Cendant acknowledged in 1998 that fraudulent conduct took place at CUC and Cendant; the fact that Mr. Forbes transferred his interest in a property to his wife after Cendant announced that it would pay a substantial sum to resolve civil class action litigation has no logical link to any purported consciousness of criminal wrongdoing on Mr. Forbes' part.[7] The situation here bears no resemblance to that in United States v. Salameh, 152 F.3d 88, 157 (2d Cir. 1998) (Opp. at 13), where an individual made plans to flee the country on the day after a bombing, or United States v. Dillon, 870 F.2d 1125 (6th Cir. 1989) (Opp. at 13), where the defendant fled the jurisdiction after learning that "a convicted co-conspirator" was "on the verge of testifying before a Grand Jury about their common crime." Id. at 1128.[8]

---

[7]   The civil settlement did not end the civil litigation relating to the decline in Cendant's stock price on and after April 15, 1998. A number of shareholders opted out of the class action, and the E&Y/Cendant civil litigation, in which Mr. Forbes is a defendant, remains pending.

[8]   Judge Thompson also relied on erroneous or flawed factual assumptions in permitting the government to present evidence of Mr. Forbes' property transfers. For example, Judge Thompson cited the purported fact that Mr. Forbes was interviewed by Cendant Audit Committee investigators on June 11, 1998 and transferred his interest in one property to his wife on June 8, 1998. See Docket No. 1841 at 2; Opp. at 13. In fact, Mr. Forbes was not interviewed on that date, but on June 15, 1998. See Tr. (10/4/04) at 14,532-33. There is no evidence in the record about when Mr. Forbes received notice of that interview, whether the June 8, 1998 transfer had anything to do with that interview, or (even assuming arguendo that it did), why a transfer on June 8, 1998 -- almost three years before any indictment was returned against Mr. Forbes, and at a time when he was not the focus of any criminal investigation -- has any probative value with respect to purported consciousness of guilt. Judge Thompson also cited the fact that a transfer took place in December 1998, after the Cendant Audit Committee's report had been issued. See Docket No. 1841 at 2. The Audit Committee Report, however, disclosed that the investigators <u>found no evidence that Mr. Forbes either participated in or had knowledge of the fraud</u>. The fact that Mr. Forbes transferred his interest in a property after the issuance of a

The government's contention that Mr. Forbes' attempt to shield assets from a potential civil judgment "would also tend to prove his consciousness of guilt in this case," Opp. at 16, cannot be reconciled with the fact that Mr. Forbes' potential civil liability in the Cendant litigation could be based on a theory of vicarious liability wholly unrelated to any purported knowing or intentional wrongdoing on his part. The government concedes that Mr. Forbes could be held liable in the Cendant civil litigation for "conduct that did not rise to the level of intentional fraud," such as recklessness. Id. at 17. There is no basis for the government's contention that actions taken by Mr. Forbes to protect his family from potential civil judgments is somehow evidence of consciousness of guilt.[9] Indeed, the government's admission that the property transfers could have been motivated "in part" by a reason other than purported consciousness of criminal wrongdoing, Opp. at 16, is fatal to its claim. See United States v. Myers, 550 F.2d 1036, 1050 (5th Cir. 1977) (flight evidence inadmissible because there was insufficient evidence to show that defendant "fled solely because he felt guilty about" the crime charged) (emphasis added); United States v. Skeddle, 981 F. Supp. 1074, 1078 (N.D. Ohio 1997)

---

report that effectively exonerated him of intentional wrongdoing does not support a conclusion that Mr. Forbes' conduct evidences consciousness of guilt. Finally, while Judge Thompson cited "the June 18, 1999 guilty plea by Casper Sabatino" and "the September 23, 1999 guilty plea by Anne Pember," Docket No. 1841 at 7 (emphasis added), neither Mr. Sabatino nor Ms. Pember has ever claimed to have any knowledge about any purported wrongdoing by Mr. Forbes (and Mr. Sabatino has repeatedly provided exculpatory information about Mr. Forbes). Moreover, the cited dates were not the dates of public guilty pleas, but the dates on which Pember and Sabatino signed plea agreements with the government. Mr. Sabatino and Ms. Pember did not enter guilty pleas until June 2000, and there is no evidence that Mr. Forbes had knowledge in 1999 of their plea agreements.

[9]    The government's claim that Mr. Forbes "would have no reason to transfer his assets" if he "is a victim just like every innocent shareholder, officer, and director of CUC/Cendant," Opp. at 15, ignores the fact that Mr. Forbes has been sued in the Cendant/E&Y civil litigation.

(rejecting proposed consciousness of guilt evidence on the ground that "defendants' purported spoliation of evidence could have been in response to fear of civil prosecution or ethical reprimand, and therefore evidence only of their consciousness of general wrongdoing.").

## II. MR. FORBES' PRIOR TESTIMONY CONCERNING PROPERTY TRANSFERS IS IRRELEVANT TO THE CHARGED OFFENSES.

Just as evidence of Mr. Forbes' property transfers is irrelevant to the charges in the indictment, so, too, is Mr. Forbes' prior testimony about this subject and the legal advice he received from Mr. Danilow.[10] While the government attempts to portray Mr Forbes' prior trial testimony as a purported false exculpatory statement, a false exculpatory statement is a "pretrial fabrication[], on the theory that the innocent do not fabricate to avoid being accused of crime. That theory does not apply to a defendant's trial testimony." United States v. Clark, 45 F.3d 1247, 1251 (8th Cir. 1995) (citation omitted) (emphasis added). Moreover, the cases cited by the government do not support its contention that Mr. Forbes' testimony about property transfers "is relevant, of great probative value, and admissible." Opp. at 8. To the contrary, the cases on which the government relies involved statements or conduct that (unlike Mr. Forbes' property transfers) concerned the underlying offenses charged.

In United States v. Scheibel, 870 F.2d 818 (2d Cir. 1989) (Opp. at 8-9), for example, the defendant fabricated evidence in an attempt to create the appearance that other drug dealers used the property on which his own drugs were found. Id. at 820. The fabricated evidence consisted

---

[10] Mr. Forbes' prior testimony is neither false nor inconsistent with Mr. Danilow's testimony. Mr. Danilow did not advise Mr. Forbes that a property transfer to a family member was unlawful, Tr. (11/9/05) at 2445, and Mr. Forbes' understanding of the advice he received was that it was lawful to engage in such a transfer. See Tr. (11/15/05) at 3049-50, 3053. The transfers were effectuated by attorneys and filed in publicly available property records.

of a note purportedly written by another drug dealer that was left on the property (with drugs) "six days after the selection of the jury for [the defendant's] drug trial." Id. The Second Circuit concluded that this evidence was properly admitted to show consciousness of guilt. Id. at 822. Here, the government does not (and cannot) contend that Mr. Forbes fabricated evidence concerning the underlying offenses at issue in this case. Instead, Mr. Forbes' testimony concerned the collateral, and unrelated, matter of property transfers in 1998 and 1999.

In United States v. Kahan, 415 U.S. 239 (1974) (per curiam) (Opp. at 9), the defendant was charged with receiving gratuities for official acts and with perjury before a grand jury. Id. at 239. He failed to disclose the existence of four savings accounts in which he had made deposits totaling $27,000 during the time of the underlying offenses. Id. at 240. Evidence of $25,000 of the deposits "was admitted at trial as supporting the inference that [the defendant] improperly received the gratuities as was charged." Id. at 241. Kahan bears no resemblance to this case. Nor does United States v. Bin Laden, 397 F. Supp. 2d 465 (S.D.N.Y. 2005) (Opp. at 9), in which the defendant testified falsely before grand juries "that he had not seen bin Laden since 1994, despite his two visits with him in 1997," id. at 517, or United States v. Di Stefano, 555 F.2d 1094 (2d Cir. 1977) (Opp. at 9), where the defendant made false exculpatory statements to an FBI agent following her arrest concerning the bank robbery charged in the case. Id. at 1099.[11]

---

[11] The remaining cases cited by the government are equally inapposite. In United States v. Durham, 139 F.3d 1325 (10th Cir. 1998) (Opp. at 9 n.7), the evidence admitted consisted of the defendant's denial of participation in drug transactions, id. at 1332, a matter going to the heart of the case. In United States v. Perkins, 937 F.2d 1397 (9th Cir. 1991) (Opp. at 9 n.7), the defendant made false statements with respect to matters directly relating to the bank robberies with which he was charged. Id. at 1402. Finally, United States v. Collins, 90 F.3d 1420 (9th Cir. 1996) (Opp. at 9 n.7), United States v. Warren, 973 F.2d 1304 (6th Cir. 1992) (Opp. at 9 n.7), United States v. Macklin, 927 F.2d 1272 (2d Cir. 1991) (Opp. at 10), involved attempts to induce witnesses to lie or not testify.

In sum, there is no legal authority for the government's contention that Mr. Forbes' prior testimony about the irrelevant subject of property transfers is admissible as evidence of purported consciousness of guilt. The Court should preclude the government from presenting any of Mr. Forbes' prior testimony on this subject in its case-in-chief.

### III. THE COURT SHOULD PRECLUDE ANY EVIDENCE OF PROPERTY TRANSFERS PURSUANT TO FED. R. EVID. 403.

The prejudicial effect of the admission of irrelevant evidence concerning Mr. Forbes' property transfers would be substantial. Jurors could well conclude that an individual who sought to transfer valuable assets after being named as a defendant in civil litigation arising from losses suffered by shareholders is a person of poor moral character who should be punished, even though the transfers have nothing to do with the charges in this case.[12]

The government agrees that Mr. Forbes' status as a civil defendant "is irrelevant here." Opp. at 20. Its assertion that it will not offer any evidence of this fact in its case-in-chief, id., ignores the fact that the government seeks to offer Mr. Forbes' prior testimony about this precise matter in its case-in-chief. See Docket No. 2262 at 17 ¶ 3 (government designation of Trial 1 Tr. at 14,396:6-18, consisting of questioning about the fact that Mr. Forbes has been sued by shareholders for losses in CUC and Cendant stock). Moreover, in the event evidence of property transfers is allowed, it will be necessary for Mr. Forbes to explain the context in which the transfers were done, and the jury will inevitably learn about the pending civil litigation.

Evidence regarding Mr. Forbes' property transfers would improperly highlight Mr. Forbes' wealth and arouse class prejudice and anger among jurors. It is clear that the government

---

[12] During the 2005 trial, the jury requested a read-back of testimony on this subject on the fourth day of jury deliberations. See Court Ex. 16 (referenced in Docket No. 2096).

9

seeks to use this evidence for precisely this purpose. See, e.g., Tr. (9/30/04) at 14,388 (cross-examination of Mr. Forbes; "How about, you have the nice house in Connecticut, you have something to go skiing with in Vail. Do you have anything for the winter months, or did you?); id. at 14,394.[13] While the government asserts that it "will not make summation arguments designed to appeal to class prejudice," Opp. at 20 n.10, the government has done precisely that in two trials. See Tr. (11/29/05) at 3092-93; Tr. (10/19/04) at 15,116-117.

The government's contention that the prejudicial effect of this evidence could be mitigated by a jury instruction, and that "such instructions were given at the first and second trials," Opp. at 19, is erroneous. First, Judge Thompson rejected the government's request for a jury instruction on this subject, see Tr. (10/17/04) at 14,686-87. No such charge was given at either trial. Second, there is no standard jury instruction on the subject of property transfers. See id. A jury instruction would exacerbate the prejudicial effect of the admission of any property transfer evidence because it would lend credence to the government's erroneous claim that this evidence is probative of consciousness of guilt.[14] Because this evidence has no probative value, but would be extremely prejudicial to Mr. Forbes, the Court should exclude it under Fed. R. Evid. 401 and 403.

---

[13] While the government cites cases in which evidence of "the defendant's financial motive for the charged crimes" was admitted, Opp. at 20 n.10, Mr. Forbes' property transfers, which took place after the period at issue in the indictment, cannot be admitted as motive evidence.

[14] The cases cited by the government are again inapposite. See United States v. Blanco, 861 F.2d 773, 781 (2d Cir. 1988) (Opp. at 19) (evidence that, "when she was arrested, Blanco used a false name and was found to be carrying false identification papers"); United States v. Bein, 728 F.2d 107, 113-15 (2d Cir. 1984) (Opp. at 19) (evidence of altercation admissible because "threats by a defendant against a potential witness against him" may show guilty knowledge).

10

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Amended Reply Memorandum in Support of Motion of Defendant Walter A. Forbes to Preclude the Government from Presenting Evidence, Cross-Examination, or Argument Concerning Property Transfers (Forbes Third Trial Motion *In Limine* No. 2) to be filed electronically and to be served on May 19, 2006 to the following via e-mail:

>Norman Gross, Esq. (norman.gross@usdoj.gov)
>Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
>Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

_____
Barry S. Simon