# EXHIBIT 1



**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

_____

970 Broad Street, Suite 700          (973) 645-2700
Newark, NJ 07102
September 14, 2001

<u>VIA FAX AND FEDERAL EXPRESS</u>

Paul A. Engelmayer, Esq.
Wilmer, Cutler & Pickering
520 Madison Avenue
New York, NY  10022

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901

            Re:  <u>United States v. Forbes and Shelton</u>

Dear Messrs. Engelmayer and Simon:

        We are writing in response to both Paul Engelmayer's
letter of August 16, 2001 setting forth demands for additional
discovery and Barry Simon's letter of August 15, 2001 relating to
our previous discussions on discovery.  We understand that, whe-
ther formally or otherwise, each of you has adopted the other's
discovery requests.

        We believe it will be helpful if, before we attempt to
respond to your very numerous specific requests for discovery, we
describe the general approach we have taken to producing discov-
ery materials.  Though this description can be very brief, we
believe it provides an answer to a great number of your specific
requests.

        We have so far, as you know, produced to you more than
140 boxes of documents, including the entirety of the extensive
files we have obtained from Cendant and Ernst & Young.  In an
effort to comply with your request for "open-file discovery" to
the greatest extent possible, we are now completing a review of
other materials in our office, some of which are not normally
produced under Rule 16.  We had expected to complete this
process, including the Bates-stamping of documents we are
producing, by today, but have unfortunately found it impossible
to do so because of the unavailability of our investigative

agents in the current national crisis.  We still hope to be able
to complete it, however, by the middle of next week.  When we do,
you will have all the materials currently in our possession that
are subject to production at this time.  Of course, we recognize
that we have a continuing obligation to produce documents, and
will promptly produce any additional materials subject to imme-
diate production that come into our possession subsequent to that
date.

     We have produced, or will produce as set forth above,
all the documents and other materials in our possession that are
related to this case except documents and materials that fall
into a few narrow categories, as follows:

     1.  We will not now produce Jencks and Giglio materi-
als, though we of course will do so at the appropriate time.

     2.  We will not produce documents or materials that
constitute government work product or are otherwise not disclo-
sable under Fed. R. Cr. P. 16(a)(2).  We include in this category
any work product of the Securities and Exchange Commission (the
"SEC") that the SEC has provided to us in the course of our
investigation.

     3.  We will not in general produce our investigative
correspondence, including our correspondence with the SEC, or any
correspondence between the SEC and other parties that may have
been provided to us.  We consider such investigative correspon-
dence generally to be work product, and we believe that to the
extent it may not be work product it is clearly not "material to
the preparation of the defendant's defense" within the meaning of
Fed. R. Cr. P. 16(a)(1)(C).

     In an effort to accommodate requests you have made,
however, we will produce any correspondence we have received from
an individual or entity outside the government (and also any such
correspondence the SEC has received of which we have obtained
copies) which transmitted documents or materials that are subject
to production under Rule 16(a)(1)(C) and which is needed to iden-
tify or explain the nature of those documents or materials.  In
addition, we will produce any privilege logs, listings of redact-
ed documents, or similar information in our possession that was
produced by any individual or entity outside the government.

     4.  Apart from any testimony before the grand jury
which may constitute Jencks material, we will not produce records
of proceedings in the grand jury or records, such as grand jury
subpoenas, which document the manner in which the grand jury

investigation was conducted.  These records include affidavits describing the progress of the grand jury investigation which the government has filed under seal in support of stay motions in civil cases.  The law is plain in this Circuit that, absent a showing that your clients were prejudiced by irregularities in the grand jury investigation which you have not made and, we believe, cannot make, records of that investigation are not "material" under Rule 16(a)(1)(C) and are not subject to discovery.

5.  We will not produce press releases issued by this Office or the SEC or related documents, which similarly are in no way "material" under Rule 16(a)(1)(C).

6.  We will not, of course, produce to you documents, such as certain court papers, that we know to be in your possession already.

Notwithstanding any of the above, we will produce any document or material falling into the above categories that we are required to produce under <u>Brady</u>.

Since they are in our files and appear to be covered by certain of your requests, we will produce various papers served on us in civil litigation related to Cendant, including papers filed by the defendants themselves.  We will not, however, take the trouble to Bates-stamp these papers.  We ask that in the future, whenever either defendant files any papers in any civil litigation related to Cendant, you arrange for these papers to be served on the other defendant, so that the government need not continue to produce these documents.

Again, with the exception of the limited amount of material in the above six categories, we are producing <u>all</u> the documents in our files on Cendant.  Our production is clearly a more expansive one than we are required to make under Rule 16 and constitutes for any practical purpose, we submit, precisely the "open file discovery" that you both seek.

Requests Made in Paul Engelmayer's
<u>August 16, 2001 letter</u>

The Engelmayer letter of August 16, 2001 sets forth well over a hundred highly detailed discovery requests, and asks that we provide you with a particularized response to each one.

- 3 -

Where particularized responses to these requests will help delin-
eate our respective positions concerning discovery, we are happy
to provide them below.

However, most of the Engelmayer requests ask for the
production of arbitrarily defined categories of documents that
bear no clear relationship to the categories of producible and
non-producible materials defined by the discovery rules.  (In
this respect the August 16, 2001 Engelmayer letter is similar to
Barry Simon's discovery request letter dated June 4, 2001.)  For
example, many of the requests seek the production of all material
documents "relating to" some specific allegation in the Super-
seding Indictment or some other particular subject matter, appa-
rently without reference to the limitations on discovery, such as
the exclusion of work product and Jencks material, that are set
forth in Rule 16.  Other requests purport to ask for various cat-
egories of documents covered by Rule 16, but define those cate-
gories in terms different from and significantly broader than the
terms used in the actual Rule.

We believe it would serve no purpose for us to under-
take the laborious and unproductive task of compiling a point-by-
point analysis of each of the above document requests which would
list each and every respect in which each request asks for dis-
covery the rules do not provide for.  We especially believe this
is true because we are in any case, as set forth above, producing
all the documents in our files except for those in a few familiar
categories of materials that are typically withheld from discov-
ery.  In view of this fact, we consider that we can best respond
to many of your requests -- including many in which you have
varied the language of the rules -- by assuring you that we are
producing all the documents in our possession that the requests
call for other than the documents in the above few categories.
In these cases, we believe, such a response will provide you with
ample information with which to frame your motions.  As already
stated, however, we agree that in some cases more detailed re-
sponses to your requests may help clarify the issues, and we have
provided those responses below.

The following responses are keyed to various sub-
headings and, where appropriate, to paragraph numbers in the
August 16, 2001 Engelmayer letter.

General Considerations

As we have previously advised you, when we refer to
documents and materials in our possession, we are referring to

- 4 -

documents and materials in the possession of this Office, the
Federal Bureau of Investigation (the "FBI"), and the United
States Postal Inspection Service.  We are making production of
these documents and materials.  In addition, as you are aware, we
have asked the SEC to produce documents and materials to you to
which we would normally have access, and we understand the SEC
has taken prompt steps to make those documents and materials
available to you.  We know of no reason to believe that the
Internal Revenue Service or any other federal agency is in
possession of any additional documents or materials relating to
this case that would be subject to your discovery.  If you know
of any such reason, please advise us what it is.  We do not be-
lieve we have any obligation to produce documents that are in the
possession of any local or state agencies, but we also have no
reason to believe that any such agencies have any materials that
would be subject to your discovery in any case.

     We decline to attempt to produce to you any documents
that we do not possess, but that are in the possession of indivi-
duals or corporate entities such as Cendant and Ernst & Young.
We believe your request for such documents has no legal basis.
Further, we decline to attempt to respond to your request that we
somehow identify for you these individual- or corporate-held
documents.

     Contrary to your statement, we did not agree to provide
you with a "list" of the documents to be produced to you by the
SEC.  What we told you, at an early stage in our discussions on
discovery, was that we would attempt to provide you with a gene-
ral description of the documents related to the charges in this
case that the SEC had obtained, but that we ourselves did not
possess.  Now that the SEC is actually about to produce all those
documents to you, we fail to see why you should require any
further information about them from us.

     As set forth earlier in this letter, we will produce to
you correspondence we have received where it is needed to iden-
tify any documents transmitted with it.  In addition, we have of-
fered, purely as an accommodation, to assist you by responding to
a reasonable number of specific questions about where various
documents were originally generated.  We will not, however,
voluntarily undertake the labor of preparing an entire index of
documents, by their source or place of generation or otherwise,
for you.

     Since Jencks and Giglio material is not to be produced
until much closer to trial, we have not yet addressed the ques-
tion of whether the SEC is in possession of any such material.

We will do so after we have completed our Rule 16 discovery, and will advise you whether the SEC will produce any such material in its possession to you.

We are producing in computer-readable form any documents or materials we have obtained that were originally provided to us on computer-readable media.

Statements of the Defendants

We are enclosing with this letter copies of U.S. Attorney Bob Cleary's and Paul Weissman's notes of an interview of Kirk Shelton conducted in this Office on January 7, 1999, and Paul Weissman's notes of a second interview of Shelton conducted in this Office on January 25, 2001. A copy of notes taken by David Frohlich, an attorney with the SEC, of the January 7, 1999 interview of Shelton will be provided to you under separate cover. We are producing these notes, which have been redacted to remove work product material that does not reflect statements by Shelton, under the provision of Rule 16(a)(1)(A) that calls for production of "that portion of a written record containing the substance of any relevant oral statement made by [a] defendant . . . in response to interrogation by any person then known to the defendant to be a government agent." In addition, in response to your request, we are enclosing with this letter copies of the handwritten notes taken by Postal Inspector Patricia Matthews and FBI Special Agent Mark Gerber at the above interviews, which have previously been provided to you in type-written form.

Your request under the heading "Statements of the Defendants" sweeps far more broadly than Rule 16(a)(1)(A). For example, that rule obviously does not require the production of any and all documents "relating to, reflecting upon, or incorporating" statements by a defendant. We thus do not consider notes taken by a non-government witness reflecting statements a defendant made to that witness to be producible under Rule 16(a)(1)(A), but will rather produce any such notes as Jencks material. We can respond further to your request only by noting that (i) we have produced all documents in our possession that are required to be produced under Rule 16(a)(1)(A), and (ii) we have also produced all documents in our possession that fall within your request, except for those which constitute Jencks material or work product or fall within one of the other categories of documents we are not now producing to you that are set forth above.

- 6 -

**The Defendants' Prior Record**

We reiterate our previous statement that, to our knowledge, neither defendant here has a criminal record.

**Documents and Tangible Objects**

Again, since your requests under the above heading often do not track the language of Rule 16(a)(1)(C), we can respond to some of those requests only with the statement that we are producing all documents and materials in our possession required to be produced under Rule 16(a)(1)(C), and all documents and materials in our possession that you have requested under this heading except those in the six categories set forth on pages 2 and 3 of this letter.

In addition, we have the following responses to certain of your numbered paragraphs:

**Paragraph 2.** We will, at the appropriate time, produce copies of our trial exhibits and of any materials relating to the specific circumstances of this case that any expert witness we plan to call has reviewed or relied upon to form an opinion. We will specifically identify the latter group of materials. Please confirm, however, that we will receive equivalent disclosures from the defense.

Your request that we identify any materials that "will be relied on or referred to in any way" by fact witnesses would appear to call for at least a partial advance script of those witnesses' testimony. We know of no legal basis for this request, and we decline to comply with it.

We suggest that we engage in a discussion of deadlines for such matters as the production of trial exhibits once we have completed the current phase of our discovery.

**Paragraph 4.** As we have previously advised you, the only hard drives the government has acquired in the course of its investigation are hard drives used by Christopher McLeod, Kirk Shelton, and Cosmo Corigliano. An image of the McLeod hard drive has already been provided to you, and an image of the Shelton hard drive can be provided to you very shortly if we receive confirmation from counsel for Shelton that they agree to our producing this image (which includes files as to which they have claimed privilege) to counsel for Forbes.

We are unable to provide you with a complete image of the Corigliano hard drive because it contains two files as to which privilege has been claimed by counsel for Corigliano and a third file as to which privilege has been claimed by Cendant. Consistent with our above statement concerning our approach to discovery, we will provide you with a copy of the letter from counsel in which these claims are set forth. As an immediate alternative, we will provide you shortly with copies on one or more CD-ROM disks of the files -- what we understand are known as the "logical files," as opposed to an image -- on the Corigliano drive other than the two claimed to be privileged. These files, however, were downloaded by the FBI from the drive approximately two years ago, using computer analysis software which we are informed the FBI no longer relies on and which may be less than optimum in certain respects. Accordingly, we have asked the FBI to perform a new analysis of the Corigliano drive using its current software. We understand that this analysis will provide you with an image of the hard drive from which the three files claimed to be privileged have been subtracted. We expect it to be completed and to be available to you soon.

Paragraphs 5 and 6. As stated above, we will provide you with any privilege logs or similar information which has been furnished to us indicating that any individual or entity outside the government has claimed any privilege with respect to any documents or has redacted any documents being produced to you. Where information concerning documents which have been redacted by third parties has not been furnished to us, we decline to undertake to obtain that information for you.

Paragraph 7. We are Bates-stamping all the documents we are producing to you which have not already been Bates-stamped by the party who originally produced them, with the exception of court papers served on us as set forth above. We know of no authority for the notion that we are obligated to describe for you the chain of custody of each document we are producing, and we decline to do so.

Particular Categories of
Documents and Tangible Objects

Paragraphs 9(b) through 9(e), 9(g), 9(k), and 9(l) contain requests for documents which appear to be aimed entirely or in substantial part at obtaining government work product, investigative correspondence, or other types of documents included in the six categories set forth on pages 2 and 3 of this letter. As we have already noted, documents in these categories are not

- 8 -

subject to production, at least at this time, and we accordingly
decline to produce them. Apart from documents in these six
categories, we have produced or will produce all documents in our
possession that are called for by the requests under the above
heading.

Documents and Tangible Objects Relating
to Particular Allegations in the Indictment

        You have requested under the above heading that we
examine each of the documents in the more than 140 boxes of
documents we are producing and advise you whether it is a docu-
ment "relating to" each of approximately 50 separate allegations
in the Superseding Indictment. We believe that this task would
require many weeks to complete, and that even then it would be
impossible to perform with any meaningful degree of precision.
We also believe it is clear that your request has no legal basis.
Accordingly, we decline to attempt to comply with it.

        We have produced or will produce all of the documents
in our possession "relating to" any of the allegations in the
Superseding Indictment that you cite except those in the six
categories set forth on pages 2 and 3 of this letter.

Reports of Examinations and Tests

        We have no reports or examinations of tests required to
be produced under Rule 16(a)(1)(D). We decline to attempt to
determine and disclose to you what documents we possess that
might be construed as "reports" or "examinations" not falling
within the Rule.

        We do not believe that "financial, accounting, or
statistical reports or opinions" such as you refer to constitute
"reports of examinations or tests" under Rule 16(a)(1)(D). How-
ever, we have produced or will produce the documents requested in
your Paragraph 5 under the above heading, except where such docu-
ments constitute work product of this Office or the SEC.

Expert Witnesses

        We will produce expert witness reports as ordered by
Judge Walls by December 15, 2001. At an appropriate time, we
will also identify any materials relating to the specific circum-
stances of this case that any expert witness we plan to call has

- 9 -

reviewed or has relied upon to form an opinion.  As we have
mentioned earlier, however, we ask in return for a written com-
mitment from you that you will make similar disclosures with
respect to expert witnesses for the defendants.

## Brady and Giglio Material

We do not plan to produce Giglio material at this time,
but to provide it to you together with our Jencks material.

We are well aware of our obligation to produce Brady
material, as opposed to Giglio material, promptly.  We have read
and considered your specific requests for such material, but we
are not aware at this time of any documents or information we
possess that constitute Brady material that have not already been
produced to you.  We decline to specifically identify any mater-
ial that we do not believe is Brady material.  However, should we
conclude that any documents or information we have not already
produced constitute Brady material as we continue the process of
pretrial preparation, we will promptly produce that material to
you.

The government is in possession of handwritten notes
which were taken by AUSA Paul Weissman and FBI Special Agent Mark
Gerber during the January 13, 1998 interview of Cosmo Corigliano
which is memorialized in an FBI 302 by Agent Gerber that has been
produced to you.  We do not, however, believe that these notes
contain any Brady material not also contained in the FBI 302.

## Jencks Act Material

We will be prepared to discuss the timing of the pro-
duction of Jencks material once we have completed the current
phase of our discovery.

We consider non-verbatim notes of interviews taken by
AUSA's to be work product and not statements of witnesses.  Fur-
ther, we decline to undertake to comply with your request that we
create for you detailed compilations of the documents referred to
in any Jencks material.

## Other Crimes Evidence

We stand on the statement you refer to regarding Rule 404(b) evidence which is set forth in Paul Weissman's July 27, 2001 letter to Barry Simon.

## Suppression Issues

Paragraphs 1 and 2  As set forth in Paul Weissman's July 27, 2001 letter to Barry Simon, we have no such evidence as is referred to in these requests.

Paragraphs 3 and 4.  For purposes of any suppression motion, you should assume that we may offer into evidence any statement by either of the defendants that we have produced to you.  We believe you are not entitled to any of the other information sought by these requests, and we decline to comply with them.

## Charts and Summaries

We stand on the statement you refer to regarding charts and summaries which is set forth in Paul Weissman's July 27, 2001 letter to Barry Simon.

## Additional Requests Made in Barry Simon's August 15, 2001 letter

The following are our responses to the requests set forth in Barry Simon's letter of August 15, 2001, to the extent those responses are not already set forth above.

Barry Simon's letter states that the government agreed to "draft a request to the Court to modify the protective order" in the civil litigation before Judge Walls to permit the defendants herein to use civil discovery materials.  We have agreed that we would join with you in such a request, but have never offered to obtain a modification of the protective order for you. Since defendants Shelton and Forbes are parties to the civil litigation and to the protective order entered in it, while the government is not, we respectfully suggest that your clients' civil counsel are in the best position to draft the necessary application to Judge Walls.

Contrary to the statement to this effect in Barry

- 11 -

Simon's letter, we have not to date agreed to provide Jencks material "no less than 30 days in advance of trial." We are prepared to discuss this matter further, however, as set forth above.

We are not certain of the meaning of your statement that you believe we are prohibited from "proffering expert testimony through a lay witness." We would agree that, under the recent amendment to Fed. R. Ev. 701, when the same witness offers both lay and expert testimony, the expert portion of his testimony is governed by the standards of Fed. R. Ev. 702 and the applicable disclosure requirements.

At one point, Barry Simon's letter quotes Paul Weissman's July 27, 2001 letter to Barry Simon as stating that the government would not produce Brady material that is "not required to be produced pursuant to Rule 16 or as Jencks material." This is a misquote. What Paul Weissman's letter actually said was: "We decline to produce any information or documents sought in your Brady request which fall outside the actual scope of Brady, and are also not required to be produced pursuant to Rule 16 or as Jencks material."

Yours very truly,

ROBERT J. CLEARY
United States Attorney

BY:  PAUL A. WEISSMAN
Assistant U.S. Attorney

BY:  JOHN J. CARNEY
Assistant U.S. Attorney

Encls.

- 12 -

# EXHIBIT 2

OCT -05' 01(FRI) 14:39    FRAUD DIVISION                    TEL:973 645 2857                    P. 002



**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

*970 Broad Street, Suite 700*
*Newark, NJ 07102*                                    *(973) 645-2700*
October 3, 2001

VIA FAX AND FEDERAL EXPRESS

Paul A. Engelmayer, Esq.
Wilmer, Cutler & Pickering
520 Madison Avenue
New York, NY 10022

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901

        Re:  United States v. Forbes and Shelton

Dear Messrs. Engelmayer and Simon:

        We have received (and we assume Barry Simon has also received and would join in) Paul Englemayer's letter of September 28, 2001, which reiterates certain requests for what are characterized as "particulars" of the Superseding Indictment and in some cases elaborates on the original requests.  The letter asks us to respond within three days, i.e., by today.

        Our response can only be as follows.  In our view, defendants are simply not entitled to the minute details of the government's proofs that you demand in your interrogatory-like requests.  As we proceed to trial, under the Federal Rules of Criminal Procedure and the Court's discovery order, the defendants will of course be entitled to disclosure of further documents and information concerning the government's case, for example when the government produces its trial exhibits.  However, the allegations in the Superseding Indictment, which as you note is 40 pages long, are already quite detailed and specific.  Together with the information the government has already provided you in response to your first request for so-called particulars, we believe the indictment's allegations are more than sufficient to provide defendants with notice of the charges against them, which at this time is all that the rules contemplate or require.

On another subject, after the delay caused by the
events of last month which we have previously discussed with you,
we have now, with two exceptions, made available to your copying
service all the documents in this Office's possession which we
are required to produce under Rule 16, as per our letter dated
September 14, 2001.  The two exceptions are (1) expert reports
required by Rule 16(a)(1)(E), which we have been ordered by the
Court to produce by December 15, 2001, and (2) the image of the
Corigliano hard drive referred to at page 8 of our September 14
letter, which has not yet been created by the FBI because the
resources to do so have been unavailable, but which we still
intend to provide you with as promptly as reasonably possible.

We understand that the SEC's production to you, on
which you are dealing with the SEC directly, will also be
completed shortly.  However, we will of course continue to
produce to you any additional documents we may obtain which are
subject to production under Rule 16.

Yours very truly,

ROBERT J. CLEARY
United States Attorney

BY:  PAUL A. WEISSMAN
     Assistant U.S. Attorney

BY:  JOHN J. CARNEY
     Assistant U.S. Attorney

- 2 -

# EXHIBIT 3



**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

_____

*970 Broad Street, Suite 700*          *(973) 645-2700*
*Newark, NJ 07102*
October 17, 2001

<u>VIA FAX AND FEDERAL EXPRESS</u>

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901

Paul A. Engelmayer, Esq.
Wilmer, Cutler & Pickering
520 Madison Avenue
New York, NY  10022

Re:  <u>United States v. Forbes and Shelton</u>

Dear Messrs. Simon and Engelmayer:

We have Barry Simon's letters of September 28, 2001 and October 9, 2001.  These letters appear to consist largely of self-serving argumentation concerning issues we have already discussed, along with demands that the government respond for a second or third time to defense claims or requests that the government has already responded to.  Frankly, we see no reason why these portions of the letters require a detailed reply.  We will, however, respond as follows.

The September 28 letter seeks immediate further disclosure from the government regarding expert testimony the government will present.  As you know, the Court has already set a relatively early date for the government to produce reports by its expert witnesses.  We are, as we understand it, in the midst of discussions with you now as to what would be an appropriate new date for that production if the trial date is adjourned.  In addition, when we met last summer, the government voluntarily agreed to share with you some of our thinking about expert witnesses.  We did so because we believed that informal discussions of this sort between opposing counsel would contribute to the fairness of the process and serve the interests of both sides.  Now, however, you appear to be attempting to use those informal conversations offensively.  On the one hand, you seek to take

issue with our statements while, on the other, you use them as a predicate to demand further disclosures of the same kind.

At this time, we see no need for and decline to make any such further disclosures. At the appropriate time we will, of course, comply with the discovery rules and the Court's orders regarding the production of expert reports.

The October 9 letter, which is some nine pages long, asks us to provide written responses to numerous specific questions concerning discovery and other matters. Though we would have thought that some of these questions could most easily have been dealt with in a less formal manner, our responses to the questions are as follows:

1. The boxes containing documents and disks that you received on October 4, 2001 are a part of the government's Rule 16 discovery. We do not understand your request that we "identify the source" of these materials. Except as stated in our earlier letters, we have not agreed to undertake that task either for these materials or those we have produced in the past.

2. As stated in John Carney's letter to you dated October 15, 2001, we inadvertently failed to include a small number of documents in the otherwise-final set of documents we made available to your copying service on October 3, 2001. Those documents, which have now been produced to you, included documents control-numbered GCC 2 and GCC 3, which relate to the claim of privilege for certain documents on Cosmo Corigliano's hard disk.

3. We have produced papers served on us in civil litigation related to Cendant, as we said we would do in our September 14, 2001 letter. These documents were included in those we made available to your copying service on October 3, 2001.

4. The government has no subpoenas outstanding in this case. We decline to attempt to characterize whether any communications we have had with third parties during the investigation or prosecution of this case may have given rise to "formal or informal agreements or understandings." We again decline to attempt to take responsibility for producing documents to you that we do not possess.

5. As we have already advised you on more than one occasion, we agree that the government is obligated to produce immediately any document or material that falls into the category

- 2 -

of Jencks material that we are required to produce under <u>Brady</u>. As we have also advised you, we are well aware of our <u>Brady</u> obligations, and are on notice of your specific <u>Brady</u> requests. We decline to become engaged in abstract debates with you concerning whether, under various hypothetical circumstances, the government would or would not be required to produce material under <u>Brady</u>.

6. The government does not intend to produce as Jencks material any interview notes of an investigative agent that have been used as the basis for an FBI 302 or similar memorandum. As we have previously advised you, we also do not intend to produce as Jencks material any non-verbatim attorney notes of interviews of Cosmo Corigliano or other witnesses.

7. The reference to "the January 13, 1998 interview of Cosmo Corigliano" in our letter of September 14, 2001 should have read "the January 13, 1999 interview of Cosmo Corigliano."

8. We will provide you with a copy of the notes taken by SEC attorney David Frohlich at the January 7, 1999 interview of E. Kirk Shelton in the next day or so.

9. As we have previously advised you, we will not only comply with Fed. R. Cr. P. 16(a)(1)(E), but will specifically identify materials relating to this case that have been reviewed by the government's experts. We cannot agree to your your request that we also specifically identify "general or background materials that may be the basis for testimony by the government's experts," since the terms "general" and "background" are nowhere to be found in the Rule or the accompanying commentary and are obviously subject to widely divergent interpretation. If there are more particularized categories of materials whose disclosure you believe may become an issue in connection with the government's expert testimony, let us know and we will attempt to respond to your concern. In the meantime, we note that you have not yet responded to our request for a written commitment that defendants will make disclosures with respect to expert witnesses parallel to those the government has agreed to make.

With regard to other matters raised in Barry Simon's October 9, 2001 letter, we believe we have already set forth our positions with ample clarity for purposes of any motions you may wish to file. We do not believe that defendants are entitled to require us further to "explain" or "specify the basis" for those positions, or further to "identify the categories" of materials in our possession that are not subject to discovery. Accordingly, we decline to undertake these exercises.

- 3 -

Lastly, we would like to address certain matters you have raised in your October 4, 2001 and October 5, 2001 letters to Jim Kidney of the SEC, copies of which you have provided to us. As we have advised you, this Office has agreed to ask the SEC to produce documents to you as part of the government's production of discovery in this criminal case. The SEC, in turn, has agreed to make and is making the production we have requested, but it is doing so pursuant to the rules of criminal discovery, not the civil rules. As you know, the government's motion for a stay of discovery in in the case of <u>SEC v. Forbes and Shelton</u> is still pending, and discovery and other proceedings in that case have yet to begin.

Accordingly, the production the SEC is making to defendants is governed by the same rules as the production made to you by this Office. This fact should suffice to respond to your inquiries to Jim Kidney as to why the SEC is not producing to you Jencks or <u>Giglio</u> material, correspondence between the SEC and third parties, or documents not in the SEC's possession. As we have previously advised you, we do not believe that these materials, whether they are in our possession or the SEC's, are subject to production under the criminal rules.

We understand that the SEC will shortly complete its document production. We will ask Jim Kidney to respond to you directly on this timing and on other matters relating to the mechanics of the SEC's production. In the somewhat unusual circumstances here, however, it would probably be most efficient if you addressed your objections regarding the scope of the government's production solely and directly to us.

Yours very truly,

ROBERT J. CLEARY
United States Attorney

BY:  PAUL A. WEISSMAN
Assistant U.S. Attorney

BY:  JOHN J. CARNEY
Assistant U.S. Attorney

- 4 -

# EXHIBIT 4



**UNITED STATES**
## SECURITIES AND EXCHANGE COMMISSION
450 Fifth Street, N.W., Stop-9-11
Washington, D.C. 20549-0911

**DIVISION OF
ENFORCEMENT**

James A. Kidney
Assistant Chief Litigation Counsel
Direct dial: 202-942-4797
Facsimile: 202-942-9581
Internet: kidneyj@sec.gov

Barry S. Simon, Esq.                    October 23, 2001
Williams & Connolly LLP
725 12th St., N.W.                      **VIA FACSIMILE**
Washington, D.C. 20005

Re:    <u>United States v. Forbes & Shelton</u>

Dear Mr. Simon:

This letter responds to your letters of October 4, 5 and 17, 2001. They raise a collection of issues, most of which have been addressed by a letter from the Office of the U.S. Attorney dated October 16, 2001. A few items specific to the Commission's production are outstanding, and I address them below.

We will make our final production available to the defendants next week. This will include some computerized information and some video tapes, as well as additional documents.

Your first inquiry, in your October 4 letter, asks about the existence of deposition transcripts. There are a few such transcripts. The transcripts of the Fifth Amendment testimony of Mr. Shelton and Mr. Forbes will be produced in the third wave. There are very few other transcripts, and at the request of the U.S. Attorney, those are being withheld for the time being.

You also inquired about a privilege log. As my September 27, 2001 letter states, no privilege log will be produced since none customarily is produced under Rule 16 Fed. R. Crim. Proc. Moreover, the access request of the U.S. Attorney's Office did not encompass materials the Commission deems to be work product or attorney-client privileged. Since your agreement with the U.S. Attorney's Office involves only those materials to which the U.S. Attorney had access, these privileged documents are not among those to be produced or subject to any log.

You seem to suggest in your October 5 letter that we are not complying with criminal discovery obligations. We know *Brady* material is to be produced. If we identify any – and we *do* try to identify it -- we'll produce it.

Very truly yours,

James A. Kidney

cc:  Paul Weissman, Esq. via facsimile
     Martin Auerbach, Esq. via facsimile
     Paul Engelmeyer, Esq. via facsimile