# EXHIBIT 5



**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

*970 Broad Street, Suite 700*                                    *(973) 645-2700*
*Newark, NJ 07102*
November 26, 2001

<u>VIA FAX AND FEDERAL EXPRESS</u>

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901

Paul A. Engelmayer, Esq.
Wilmer, Cutler & Pickering
520 Madison Avenue
New York, NY  10022

                    Re:   <u>United States v. Forbes and Shelton</u>

Dear Messrs. Simon and Engelmayer:

          In the past two to three weeks, each of you has sent us
additional multi-page requests for discovery which are largely
devoted to repeating, with little if any variation, requests we
have already responded to.  Frankly, we fail to understand why
you seek to make us respond again and again to defense demands on
which our position is already clear.  However, we will do our
best to provide a full reply to your recent letters.

Barry Simon's letter
<u>dated November 6, 2001</u>

          Barry Simon's 11-page letter of November 6, 2001 begins
with yet another demand that we produce materials to the defen-
dants that are not in our possession, but in the possession of
third parties.  We have already, as you know, arranged for you to
receive all the documents in the possession of the SEC that would
be subject to criminal discovery in this matter.  We have also
advised you, in our letter of October 17, 2001, that the govern-
ment has no subpoenas still outstanding in this case.  We will
now further advise you, since you seem to believe we have somehow
tried to split hairs by speaking in terms of our "possession" of
documents, that we do not have "custody" or "control" of any

producible documents we do not possess. We will not respond further to your requests for documents that are not in our possession. If you still wish to take issue with our position on this matter, we suggest you file a motion with the Court.

Barry Simon's November 6, 2001 letter next goes on to reargue a number of other topics we have previously discussed at length, including documents in electronic format; the government's investigative correspondence; the production of documents by the SEC; Brady and Giglio material; privilege logs; and summaries of expert testimony. With regard to some of these topics, the letter presents only the sheer speculation, with no apparent basis, that the government may not have produced all the documents in certain categories. With regard to other topics, the letter simply reiterates demands the government has already explicitly declined to comply with, suggesting that you may not have recently reviewed our previous written responses to your discovery requests.

We believe that the only responses we can usefully make to these assorted arguments, speculations, and repetitions of demands are as follows.

1. We advised you on October 3, 2001 that, with two exceptions not relevant here,[1] we had completed our production to you of the all the documents in this Office's possession which we were required to produce under Rule 16, as per our letter dated September 14, 2001. Since that time we have discovered and promptly produced to you small quantities of additional producible documents, and we are producing one more such document with this letter. However, we are not aware of any other such documents in our possession that we have not produced, whether in the categories that are the subject of the arguments in Barry Simon's November 6, 2001 letter or in other categories. If we do discover or obtain such other documents, we will promptly produce those to you also.

---

[1]   As you know, the two exceptions, as set forth in the October 3, 2001 letter, were (1) summaries of expert testimony required by Rule 16(a)(1)(E), and (2) an image of the hard drive of Cosmo Corigliano's laptop computer. Our summaries of expert testimony are not now due to be produced until April 29, 2002. The image of the Corigliano hard drive has still not been created by the FBI because of the problems referred to in our October 3, 2001 letter. We note, however, that you already have a complete set of the files on that drive as to which there is no privilege claim.

2.  Your list of materials we have provided in electro-
nic format is incomplete.  We are aware of other such materials
we have produced to you which bear the control numbers 207536 and
503484-87.  We do not, however, undertake to represent that even
this is a complete list of the materials of this kind we have
produced.  To anticipate your questions, 207536 was produced to
us by Cendant Corporation ("Cendant") and was, we are informed,
prepared by Cendant's outside counsel; 503484-87 were produced to
us by defendant Shelton.

3.  With regard to the three computer disks you ask
about:  the disk containing an analysis of journal entries which
you describe as having no Bates number was in fact produced to
you with such a number, which is 503472.  The contents of both
503472 and 503473, which were produced to us by Arthur Andersen
LLP, are self-explanatory.  The disk numbered 503474 was produced
to us by a firm known as I/B/E/S and contains historical earnings
estimates for CUC International, Inc.  We note that we have also
produced a printout of this disk and an explanatory memorandum
from I/B/E/S which are found at Bates range 504154-225.

4.  We fail to grasp the point of your statements
regarding the production of deposition transcripts to you by the
SEC.  As we have previously advised you on more than one occa-
sion, the SEC is producing documents to you pursuant to the rules
of criminal discovery, not the civil rules, and is therefore not
producing Jencks or _Giglio_ material to you at this time.

5.  Your argument concerning the subpoena dated June
11, 2001 which the SEC served on Cendant makes no sense.  We
understand that any documents produced to the SEC by Cendant,
whether pursuant to this subpoena or otherwise, have been pro-
duced to you.  Further, the materials this subpoena calls for --
documents produced in, and transcripts of depositions taken in,
civil litigation relating to Cendant -- are in any event the very
same materials which you have already agreed, as counsel to
individuals who are themselves parties to the Cendant civil
litigation, to obtain by making an appropriate application to
Judge Walls.  We fail to understand how it has now become this
Office's responsibility to obtain for you any of these materials
you do not already have, when your own clients are parties to the
very proceedings in which the materials were generated and you
have, in consequence, agreed that you should obtain them for
yourselves.

6.  Your list of materials we have provided which
assert claims of privilege is incomplete.  We are aware of other
such materials we have produced to you which bear the control

numbers McLeod 1644A, RF 00001A-1B, and 313038A-38B. Again, how-
ever, we do not undertake to represent that this is a complete
list of the materials of this kind we have produced. We are also
producing with this letter a copy of a May 19, 1998 letter ad-
dressed to David Frohlich of the SEC by counsel for Cosmo
Corigliano which contains a claim of privilege for certain
documents. Although this letter, to which we have given the
Bates numbers CC 1001A-1B, may have been produced to you by the
SEC, it appears that we inadvertently did not produce it to you
earlier. Finally, we will advise you that we are attempting to
determine whether any claims of privilege have been asserted to
the government by counsel for Amy Lipton and Christopher McLeod,
and if so to obtain privilege logs from those counsel. Apart
from documents withheld on grounds of privilege, however, we have
not undertaken to assemble or provide you with information as to
documents which third parties have not produced to the
government, for example because those parties did not consider
them responsive to the government's requests.

    7. With regard to your argument concerning SEC work
product materials: we clearly stated in our letter of September
14, 2001 that we would decline to produce to you any SEC work
product that the SEC had provided to us in the course of our
investigation. In light of this statement, we fail to understand
what point concerning these materials you now seek to raise.

    8. With regard to _Brady_ and _Giglio_ material, we refer
you to the statements in our letter to Barry Simon dated July 27,
2001 and our letters to you both of September 14, 2001 and
October 17, 2001. We see no need to elaborate on these state-
ments still further.

    9. Regarding your request that we "identify the
contents" of various boxes of documents: our letter of September
14, 2001, stated that

        we have offered, purely as an accommodation,
        to assist you by responding to a reasonable
        number of specific questions about where
        various documents were originally generated.
        We will not, however, voluntarily undertake
        the labor of preparing an entire index of
        documents, by their source or place of gene-
        ration or otherwise, for you.

Your blanket request willfully ignores the terms of our offer, as
well as the spirit of accommodation in which it was made, and we
decline to comply with it.

10.  With regard to summaries of expert testimony:  we do not agree that the information we have already provided to you on this topic is insufficiently detailed, and we refer you to the response we made in our letter of October 17, 2001 to your previous demand for further expert witness disclosures.

Lastly, Barry Simon's November 6, 2001 letter appends a long list of questions concerning documents identified by specific Bates numbers.  We have researched all these questions, and our answers to them are as follows:

Items A and H:  we produced documents with overlapping ranges of Bates numbers to you because that is how Salomon Smith Barney and Paine Webber produced the documents to us.

Item B:  see paragraph 6 above and the attached letter from counsel for Cosmo Corigliano.

Items C through G and I:  we in fact produced to you the document numbered CD 16933, which is listed by you as missing.  We did not produce to you the remaining documents you list in these items as having been omitted from our production because we don't have them in our possession.

Item J:  these documents were produced to you in the same form in which they were provided to the government.  The government made none of the redactions.  Further, to the best of our knowledge, the government has obtained no explanation of any of these redactions that we have not already produced.

Item K:  it appears to us that your copying service may have had difficulty copying these documents, either because their type is small, because the documents themselves are poor photocopies, or for some other reason.  We will be happy either to allow you to examine the originals or to provide them to your copying service again.

Item L:  the documents with Bates numbers 315213-226, 406061, and EYS 12/97 004326-355 were produced to you.  If you wish, we will produce them to you again.  We do not possess documents with the other Bates numbers that you list.

Paul Engelmayer's letter
dated November 15, 2001

Our responses to the numbered questions in this letter are as follows:

1a.   We are prepared to discuss with you such matters as the early production of Jencks material provided that you are prepared to discuss making reciprocal commitments on behalf of the defendants.  In the meantime, we note that you still have not responded to our request for a commitment that you will make disclosures equivalent to the ones we have offered to make in connection with the government's expert testimony, though we have asked you for such a commitment several times.

1b.   We will produce any notes of a witness interview taken by an investigative agent unless the notes have been used to prepare a memorandum such as an FBI 302, in which case we will produce the memorandum but not the notes.  If more than one agent took notes at a particular interview, we will produce either handwritten notes or a memorandum from each agent.

1c.   As we have previously advised you at least twice, we consider non-verbatim notes of interviews taken by government attorneys to be work product and not statements of witnesses.  Since we have no verbatim statements of witnesses recorded by government attorneys, we do not intend to produce any of their notes.

1d.   See our response to 1b above.

2a.   We have produced to you notes of one or both of the two Shelton proffers taken by U.S. Attorney Bob Cleary, Assistant U.S. Attorney Paul Weissman, Postal Inspector Patricia Matthews, FBI Special Agent Mark Gerber, and SEC attorney David Frohlich.  The notes taken by David Frohlich were provided to you under cover of Paul Weissman's letter of October 19, 2001 and were identified as David Frohlich's in that letter.  We will be happy to identify who produced each of the remaining sets of notes the next time we are able to meet and look at the notes.

2b.   We have produced all notes of the two Shelton proffers in the possession of either this Office or the SEC.

2c.   As we have previously advised you, we produced the above notes to you pursuant to the provision of Rule 16(a)(1)(A) that calls for production of "that portion of a written record containing the substance of any relevant oral statement made by [a] defendant . . . in response to interrogation by any person then known to the defendant to be a government agent."  The question of whether the notes are a "substantially verbatim" record is thus irrelevant.

3a-b.  As we have previously advised you in our letter of September 14, 2001:

> The government is in possession of hand-
> written notes which were taken by AUSA Paul
> Weissman and FBI Special Agent Mark Gerber
> during the January 13, 1998[2] interview of
> Cosmo Corigliano which is memorialized in an
> FBI 302 by Agent Gerber that has been pro-
> duced to you.  We do not, however, believe
> that these notes contain any <u>Brady</u> material
> not also contained in the FBI 302.

Since we do not regard the Weissman and Gerber notes as <u>Brady</u> material, we intend to deal with them in accordance with our responses to 1b and 1c above.

4a-b.  We have no information called for by these questions which we regard as constituting <u>Brady</u> material.  We are not prepared to offer an opinion as to the validity of your claim that any statement by a witness's agent must necessarily be attributed to the witness for purposes of <u>Giglio</u> and the Jencks Act, but it seems at a minimum to be excessively sweeping.  If we determine that statements made by agents of witnesses of which we have knowledge do constitute <u>Giglio</u> or Jencks material, we will produce them to you at the appropriate time.

Paul Engelmayer's letter
<u>dated November 19, 2001</u>

Our responses to the additional numbered questions in this letter are as follows:

1.  See numbered paragraph 4 of our above response to Barry Simon's letter dated November 6, 2001.

2.  See the previous response.  With regard to attorney notes of interviews, see also our response to question 1c in Paul Engelmayer's letter dated November 15, 2001.

3.  We have no information called for by this question

---

[2]  As set forth in our letter of October 17, 2001, this date should have read "January 13, 1999."

- 7 -

which we regard as constituting <u>Brady</u> material.  If we have any
such information which we determine constitutes <u>Giglio</u> material,
we will produce it to you at the appropriate time.


Barry Simon's letter
<u>dated November 13, 2001</u>

        We are happy to provide you with the name and address
of the State Division of Investment's proxy voting service.  It
is Automatic Data Processing, located at 51 Mercedes Way, Edge-
wood, NY  11717.  As set forth in our letter of September 14,
2001, however, we decline to attempt to advise you which docu-
ments we have produced "relate to" particular allegations in the
Superseding Indictment.

                          Yours very truly,

                          ROBERT J. CLEARY
                          United States Attorney


BY:   PAUL A. WEISSMAN
      Assistant U.S. Attorney


BY:   JOHN J. CARNEY
      Assistant U.S. Attorney


Encl.

                          - 8 -

KRAMER, LEVIN, NAFTALIS & FRANKEL

919 THIRD AVENUE

NEW YORK, N.Y. 10022 – 3852

N R. FRIEDMAN
PARTNER

(212) 715-9300

FACSIMILE
(212) 715 -8000

May 19, 1998

FOIA Confidential Treatment Request

**By Federal Express**

David Frohlich, Esq.
United States Securities and Exchange Commission
Division of Enforcement
Mail Stop 7-5
450 Fifth Street, N.W.
Washington, D.C.  20549

**RECEIVED**

MAY 2 3 199

Division of Enforcement

Re:   In the Matter of Cendant Corporation and
Trading in Its Securities, File No. HO-3401

Dear Mr. Frohlich:

In response to the subpoenas served on our client, Cosmo Corigliano, I enclose non-privileged, responsive documents Bates-stamped CC 1001 to CC 1945 and CC 10001 to CC 10874.  These documents include documents downloaded from Mr. Corigliano's office laptop computer.  However, documents numbered CC 10016, 10048-49, 10060, 10079-83, 10108, 10125, 10152, 10161-62, 10560-63 and 10875-10947 have been withheld under a claim of privilege at the request of Cendant's counsel, subsequent to our numbering of them for production.

Pursuant to SEC rules relating to confidential information and any other applicable laws and regulations, we request that this letter and the enclosed documents be maintained in confidence, not be made part of any public record, and not be disclosed to any person.  In addition, we request, pursuant to 17 C.F.R. § 200.83, that this letter and the enclosed documents be treated as confidential and exempt from disclosure under the Freedom of Information Act.  We have marked each document "Confidential Treatment Requested by Mr. Cosmo Corigliano."

If any person (including a government employee who is not an employee of the Commission) should request an opportunity to inspect or copy this letter or any of the enclosed documents, we request, pursuant to 17 C.F.R. § 200.83, that we receive notification of the request, a copy of all written material pertaining to the request, and an

CC10014

KRAMER, LEVIN, NAFTALIS & FRANKEL

David Frohlich, Esq.
May 19, 1998
Page 2


opportunity to substantiate further our request for confidential treatment and to object to any such disclosure.  Notification should be sent to Gary P. Naftalis or to me at Kramer, Levin, Naftalis & Frankel, 919 Third Avenue, New York, New York 10022 (212-715-9100).

Yours sincerely,

Alan R. Friedman


cc:     Freedom of Information Act Officer
        Securities and Exchange Commission (w/o encl.)


.L3:223004.4



**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

970 Broad Street, Suite 700          (973) 645-2700
Newark, NJ 07102
November 27, 2001

<u>VIA FAX AND FEDERAL EXPRESS</u>

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901

Martin J. Auerbach, Esq.
747 Third Avenue, 11th Floor
New York, NY  10017

           Re:  <u>United States v. Forbes and Shelton</u>

Dear Messrs. Simon and Auerbach:

        We have been provided with a copy of the trial subpoena
you recently served on counsel for Cosmo Corigliano.  We believe
it is obvious that this subpoena is vastly overbroad, and we are
concerned that subpoenas of this kind could be used to improperly
harass government witnesses.  We are writing to request that you
provide us with copies of any other subpoenas calling for pre-
trial production of documents that you have already served or
that you serve in the future, so that we may have a basis for
determining what position the government should take in this
regard.

                          Yours very truly,

                          ROBERT J. CLEARY
                          United States Attorney

                          BY:  PAUL A. WEISSMAN
                          Assistant U.S. Attorney

                          BY:  JOHN J. CARNEY
                          Assistant U.S. Attorney

NOV. 28' 01(WED) 11:35    FRAUD DIVISION                    TEL:973 645 2857              P. 001



**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

_____

*970 Broad Street, Suite 700*          *(973) 645-2700*
*Newark, NJ 07102*
November 27, 2001

<u>VIA FAX AND FEDERAL EXPRESS</u>

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901

Martin J. Auerbach, Esq.
747 Third Avenue, 11th Floor
New York, NY  10017

     Re:  <u>United States v. Forbes and Shelton</u>

Dear Messrs. Simon and Auerbach:

        We have been provided with a copy of the trial subpoena you recently served on counsel for Cosmo Corigliano.  We believe it is obvious that this subpoena is vastly overbroad, and we are concerned that subpoenas of this kind could be used to improperly harass government witnesses.  We are writing to request that you provide us with copies of any other subpoenas calling for pre-trial production of documents that you have already served or that you serve in the future, so that we may have a basis for determining what position the government should take in this regard.

                    Yours very truly,

                    ROBERT J. CLEARY
                    United States Attorney

                    *Paul Weissman*

          BY:  PAUL A. WEISSMAN
               Assistant U.S. Attorney


          BY:  JOHN J. CARNEY
               Assistant U.S. Attorney

```
***********************
***   RX REPORT   ***
***********************
```

RECEPTION OK

```
TX/RX NO              9866
CONNECTION TEL              973 645 2857
SUBADDRESS
CONNECTION ID
ST. TIME              11/28 10:24
USAGE T               00'35
PGS.                    1
RESULT                OK
```

# EXHIBIT 6

DAVID POVICH
STEVEN M. UMIN
    W. VARDAMAN
    KEVIN WOLFF
    GALBRAITH
    KESTER
    E. McDANIELS
AN V. SULLIVAN, JR
AUBREY M. DANIEL, III
RICHARD M. COOPER
GERALD A. FEFFER
ROBERT P. WATKINS
JERRY L. SHULMAN
LEWIS H. FERGUSON, III
ROBERT B. BARNETT
DAVID E. KENDALL
GREGORY B. CRAIG
JOHN J. BUCKLEY, JR
TERRENCE O'DONNELL
JOHN K. VILLA
BARRY S. SIMON

KEVIN T. BAINE
STEPHEN L. URBANCZYK
PHILIP J. WARD
F. WHITTEN PETERS
JAMES A. BRUTON, III
PETER J. KAHN
JUDITH A. MILLER
LON S. BABBY
MICHAEL S. SUNDERMEYER
JAMES T. FULLER, III
BRUCE R. GENDERSON
CAROLYN H. WILLIAMS
F. LANE HEARD III
STEVEN R. KUNEY
GERSON A. ZWEIFACH
PAUL MOGIN
HOWARD W. GUTMAN
STEVEN A. STEINBACH
MARK S. LEVINSTEIN
MARY G. CLARK
VICTORIA RADD ROLLINS

LAW OFFICES
WILLIAMS & CONNOLLY LLP
725 TWELFTH STREET, N.W.
WASHINGTON, D. C. 20005-5901
(202) 434-5000
FAX (202) 434-5029

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

DANIEL F. KATZ
NICOLE K. SELIGMAN
ROBERT M. KRASNE
KATHLEEN L. BEGGS
WILLIAM R. MURRAY, JR
EVA PETKO ESBER
STEPHEN D. RABER
DAVID C. KIERNAN
LON E. MUSSLEWHITE
HEIDI K. HUBBARD
GLENN J. PFADENHAUER
GEORGE A. BORDEN
ROBERT J. SHAUGHNESSY
JONATHAN P. GRAHAM
ALLEN P. WAXMAN
DAVID S. BLATT
ARI S. ZYMELMAN
REGINA G. MALONEY
DANE H. BUTSWINKAS
LAURIE S. FULTON
DENNIS M. BLACK

PHILIP A. SECHLER
LYNDA SCHULER
PAUL K. DUEFFERT
R. HACKNEY WIEGMANN
ROBERT M. CARY
KEVIN M. HODGES
DAVID M. ZINN
JOSEPH G. PETROSINELLI
STEVEN M. FARINA
KEVIN M. DOWNEY
THOMAS G. HENTOFF
KUMIKI GIBSON
PAUL B. GAFFNEY
EMMET T. FLOOD
ROBERT A. VAN KIRK
MARCIE R. ZIEGLER
KENNETH C. SMURZYNSKI
JOHN E. SCHMIDTLEIN

COUNSEL
RAYMOND W. BERGAN
JEREMIAH C. COLLINS

August 9, 2001

## BY FACSIMILE ((202) 942-9581) AND FIRST CLASS MAIL

Mr. James Kidney
SEC Litigation Counsel
Securities and Exchange Commission
450 Fifth Street, NW
Washington, D.C.  20549-0801

     Re:   *United States v. Walter Forbes, et al.*, Crim. No. 01-140 (WHW)

Dear Mr. Kidney:

     On August 3, 2001, there was a conference call regarding discovery in this case between the United States Attorney's Office and counsel for the defendants.  AUSA Paul Weissman informed defense counsel that the Securities and Exchange Commission ("SEC" or "your office") would provide the defense with the same access to documents and information that the United States Attorney's Office has under the "approved access request" on file with your office.  The only exceptions Mr. Weissman set forth to the disclosure were for Jencks material and impeachment material within the meaning of United States v. Giglio, 405 U.S. 150 (1972).

     Under the applicable regulations and caselaw, an approved access request gives the United States Attorney's Office access to all documents and

WILLIAMS & CONNOLLY LLP

Mr. James Kidney
August 9, 2001
Page 2

information in the possession, custody or control of the SEC.[1]  We therefore request

that you produce all such documents[2] and information relating to this matter,

without any "exception."  We understand that this includes, but is not limited to, all

materials made available to the SEC pursuant to its recent subpoenas to Cendant

Corporation relating to discovery and depositions in the cases In re Cendant,

Master File No. 98-1664 (D. N.J.), and George M. Kevlin v. Cendant Corp., Civil No.

00-09267 (Texas).  We also request that you identify all material that you intend to

withhold under the "exception" to full access identified by AUSA Weissman, so that

we can  pursue this matter further with the United States Attorney's Office or the

Court.

Thank you for your assistance in this matter.

Very truly yours,

Barry S. Simon

---

[1] See 17 C.F.R. §§ 200.30-4(a)(7) & 240.24c-1(b)(1); see also SEC v. Dresser
Industries, 628 F.2d 1368, 1383 (D.C. Cir. 1980) ("the SEC's general policy is to
grant Justice continuing access to the entirety of an investigative file once the
Commission formally grants access.").

[2] The word "documents" includes, but is not limited to, all books, papers, letters,
correspondence, reports, memoranda, studies, calendars, appointment books,
diaries, notes, messages, computer facilitated or transmitted materials, images,
photographs, polaroids, information in any computer database, audio and video
tapes, recordings, transcripts, ledgers, printouts, contracts, checks, receipts, and all
copies or portions thereof, and any other written, recorded, or memorialized
material of any nature whatsoever.

WILLIAMS & CONNOLLY LLP

Mr. James Kidney
August 9, 2001
Page 3


cc:    AUSA Paul A. Weissman
       Martin Auerbach, Esq

# EXHIBIT 7

FOR IMMEDIATE RELEASE                                   2000-80

           SEC Brings Enforcement Actions Against Former Top Financial
       Officers And Managers At CUC International For Massive Financial
                          Fraud at CUC and Cendant Corp.

                   Financial Reporting Case Filed Against Cendant

           Washington, DC, June 14, 2000 -- The Securities and Exchange
       Commission today brought civil and administrative fraud and other
       charges against seven former officials of CUC International Inc.
       (CUC) and Cendant Corporation for their involvement in a massive
       financial fraud that caused billions of dollars in losses for
       investors.

           Cendant was created through the December 1997 merger of CUC
       and HFS Incorporated.  These proceedings and litigation are a
       result of the Commission's continuing investigation of a long-
       running financial fraud that began at CUC in the 1980s and
       continued until its discovery and disclosure by Cendant in April
       1998.

           SEC Enforcement Director Richard H. Walker said, "Today's
       actions make crystal clear that the SEC and the U.S. Attorney
       have zero tolerance for fraudulent financial reporting.
       Financial fraud causes grave harm to the investing public and
       undermines the integrity of our capital markets.  Investors need
       to know that when they invest their hard-earned dollars in a
       company's stock, they can depend on the reliability and accuracy
       of the financial information that the company reports about its
       operations.  We will continue to do everything we can to give
       them that confidence."

       Four Former CUC Officials Charged In District Court with Fraud

           In the first of three separate complaints filed by the
       Commission today with the U.S. District Court, the Commission
       alleged violations of the federal securities laws by Cosmo
       Corigliano, Anne M. Pember, Casper Sabatino, and Kevin Kearney,
       all former officers or managers of CUC.  Corigliano and Pember
       are contesting the Commission's action.

       Corigliano -- The Commission's complaint alleges that Corigliano,
       the Chief Financial Officer of CUC, was one of the CUC senior
       officers who helped to engineer the fraud.  Among other things,
       the complaint alleges that during the last several years of the
       fraud, Corigliano was the CUC officer responsible for creating
       and maintaining a schedule that management used to track the
       progress of their fraud.  Corigliano regularly directed CUC
       financial reporting managers to make unsupported alterations to
       the company's quarterly and annual financial results.  The
       Commission alleges, moreover, that Corigliano profited from his
       own wrong-doing by selling CUC securities and a large number of
       Cendant securities at inflated prices while the fraud he helped
       engineer was underway and undisclosed.  The complaint alleges
       that Corigliano, by his actions in furtherance of the fraud,
       violated, or aided and abetted violations of, the antifraud,
       periodic reporting, corporate record-keeping, internal controls,
       and lying to auditors provisions of the federal securities laws.
       The Commission's complaint seeks an injunction enjoining

Corigliano from future violations of those provisions, disgorgement of his ill-gotten gains (plus prejudgment interest thereon), payment of a civil money penalty, and an order permanently barring him from acting as an officer or director of a public company.

Pember -- The Commission's complaint alleges that Pember, the former CUC Controller, was the CUC officer most responsible for implementing directives received from Corigliano in furtherance of the fraud.  Among other things, the complaint alleges that, in January 1998 alone, Pember was responsible for implementing directives that inflated Cendant's annual income by more than $100 million, primarily through improper use of the company's reserves.  The Commission alleges that Pember too profited from her own wrong-doing by selling CUC and Cendant stock at inflated prices while the fraud she helped implement was underway and undisclosed.  The complaint alleges that Pember, by her actions in furtherance of the fraud, violated, or aided and abetted violations of, the antifraud, periodic reporting, corporate record-keeping, internal controls, and lying to auditors provisions of the federal securities laws.  The Commission's complaint seeks an injunction enjoining Pember from future violations of those provisions, disgorgement of her ill-gotten gains (plus prejudgment interest thereon), payment of a civil money penalty, and an order permanently barring her from acting as an officer or director of a public company.

Sabatino and Kearney -- Sabatino and Kearney, without admitting or denying the Commission's allegations, agree to settle the Commission's charges against them.  The Commission's complaint alleges that Sabatino, a former CUC Vice President of Accounting and Financial Reporting, implemented directives from Corigliano in furtherance of the fraud.  Among other things, the Commission's complaint alleges that Sabatino was the CUC officer most responsible for directing lower-level CUC financial reporting managers to make Corigliano's alterations to the company's quarterly financial results.  The complaint alleges that Sabatino, by his actions in furtherance of the fraud, violated, or aided and abetted violations of, the antifraud, periodic reporting, corporate record-keeping, internal controls, and lying to auditors provisions of the federal securities laws.  Sabatino has consented to entry of a Final Judgment that would enjoin him from future violations of those provisions and permanently bar him from acting as an officer or director of a public company.

    The Commission's complaint alleges that Kearney, a former CUC Director of Financial Reporting, also instructed lower-level CUC financial reporting managers to carry out directives received from Corigliano in furtherance of the fraud.  Among other things, the Commission alleges that Kearney was regularly present when Corigliano would calculate unsupported alterations to CUC's quarterly results and that, while he was part of the CUC financial reporting operations, Kearney supervised the lower-level managers who actually entered Corigliano's quarterly alterations.  The complaint alleges that Kearney also profited from his own wrong-doing, selling CUC and Cendant stock at prices inflated by the fraud he had knowingly assisted.  The Commission's complaint alleges that Kearney, by his actions in furtherance of the fraud, violated, or aided and abetted

violations of, the antifraud, periodic reporting, corporate record-keeping, and lying to auditors provisions of the federal securities laws.  Kearney has consented to entry of a Final Judgment that would enjoin him from future violations of those provisions, order him to pay disgorgement of $32,443 in ill-gotten gains (plus prejudgment interest of $8,234), and order him to pay a civil money penalty of $35,000.

Kearney has also agreed to the issuance of a Commission administrative Order that would be issued subsequent to entry of the Final Judgment and that would bar Kearney from practicing before the Commission as an accountant, with the right to reapply after five years.

Three Former CUC Officials and Cendant Settle Administrative Charges

Speaks -- The Commission today also issued administrative Orders instituting settled administrative proceedings against three lower-level financial reporting or accounting managers at CUC. In the first of the three separate administrative Orders, the Commission found that Steven Speaks, the former Controller of CUC's largest division, violated the corporate record-keeping provisions of the federal securities laws, and aided and abetted violations of the antifraud, periodic reporting, and corporate record-keeping provisions, in connection with actions that he took at the direction of Pember and in furtherance of the fraud. Among other things, the Commission's complaint alleges that Speaks made, or instructed others to make, journal entries that effectuated much of the January 1998 income inflation directed by Pember.  Simultaneous with the institution of the administrative proceeding, and without admitting or denying the findings contained therein, Speaks consented to the issuance of the Commission Order, which orders Speaks to cease and desist from future violations of the provisions and bars Speaks from practicing before the Commission as an accountant, with the right to reapply after three years.  He also agreed to pay a civil money penalty of $25,000.

Polverari -- In a second separate administrative Order, the Commission found that Mary Sattler Polverari, a former CUC Supervisor of Financial Reporting, violated the corporate record-keeping provisions of the federal securities laws, and aided and abetted violations of the antifraud, periodic reporting, and corporate record-keeping provisions, in connection with actions that she took in furtherance of the fraud.  Among other things, the Commission alleges that Polverari, at the direction of Sabatino and Kearney, regularly and knowingly made unsupported alterations to CUC's quarterly financial results.  Simultaneous with the institution of the administrative proceeding, and without admitting or denying the findings contained therein, Polverari consented to the issuance of the Commission Order, which orders Polverari to cease and desist from future violations of the provisions and bars her from practicing before the Commission as an accountant, with the right to reapply after three years.  She also agreed to pay a civil money penalty of $25,000.

Hiznay -- In a third administrative Order, the Commission found that Paul Hiznay, a former Accounting Manager at CUC's largest

division, aided and abetted violations of the periodic reporting
provisions of the federal securities laws, in connection with
actions that he took at the direction of his superiors at CUC.
Among other things, the Commission alleges that Hiznay made
unsupported journal entries that Pember had directed.
Simultaneous with the institution of the administrative
proceeding, and without admitting or denying the findings
contained therein, Hiznay consented to the issuance of the
Commission Order, which orders him to cease and desist from
future violations of the provisions.

Cendant -- In a fourth and separate administrative Order issued
today, the Commission found that Cendant violated the periodic
reporting, corporate record-keeping, and internal controls
provisions of the federal securities laws, in connection with the
CUC fraud.  Among other things, the Commission's Order finds that
the company's books, records, and accounts had been falsely
altered, and materially false periodic reports had been filed
with the Commission, as a result of the long-running fraud at
CUC.  Simultaneous with the institution of the administrative
proceeding, and without admitting or denying the findings
contained therein, Cendant consented to the issuance of the
Commission Order, which orders Cendant to cease and desist from
future violations of the provisions.  In fashioning its Order,
the Commission recognized remedial acts promptly undertaken by
Cendant and cooperation afforded the Commission and other
authorities.

U.S. Attorney for District of New Jersey Brings Criminal Charges

     The U.S. Attorney's Office ("USAO") for the District of New
Jersey today announced that Corigliano, Pember, and Sabatino had
each pleaded guilty to Informations in the U.S. District Court
for the District of New Jersey, pursuant to plea agreements
between those three individuals and the USAO.  Pursuant to his
agreement, Corigliano pleaded guilty to a two-count Information
charging him with wire fraud and with conspiracy to commit mail
fraud, wire fraud, and causing false statements to be made in
documents required to be filed with the Commission.  Similarly,
pursuant to her agreement, Pember pleaded guilty to a one-count
Information charging her with conspiracy to commit mail fraud and
wire fraud.  Sabatino, pursuant to his agreement, pleaded guilty
to a one-count Information charging him with aiding and abetting
wire fraud.

     The Commission's investigation into these matters continues.

For further information call Thomas C. Newkirk at 202 942 4550 or
James T. Coffman at 202 942 4574.

                         #  #  #

# EXHIBIT 8



U.S. Department of Justice

*United States Attorney*
*District of New Jersey*

| | |
|---|---|
| *970 Broad Street, Suite 700*<br>*Newark, NJ 07102* | *973/645-2700* |

April 3, 2006

**VIA FEDERAL EXPRESS**

Barry S. Simon
Williams & Connolly LLP
725 12th St. NW
Washington, D.C. 20005

Thomas P. Puccio
230 Park Avenue
Suite 301
New York, NY 10169

Re:    *United States v. Forbes, No. 3:02CR00264*

Dear Counsel:

Enclosed are hand-written notes prepared by former FBI Special Agent Mark Gerber, Bates-stamped MG 00324 through MG 00340. Those notes pertain to interviews of Cosmo Corigliano that Gerber attended on October 13, 2000, November 2, 2000, November 6, 2000, and December 14, 2000, and an interview of Starin Woodward that Gerber attended on November 29, 2000. These notes were not previously disclosed to the defense out of inadvertence. These notes, however, contain no information which the Government is required to disclose under Brady/Giglio, the Jencks Act, Fed. R. Crim. P. 16, or the standing order for discovery in this case. These notes are being turned over to you now in accordance with the Government's previous representations in this case that all agent interview notes would be disclosed to the defense, regardless of whether such disclosure was required.

On March 30, 2006, while reorganizing the numerous boxes of documents that the Government has assembled in this case, an unlabelled box containing the personal effects of Gerber was discovered by a member of the trial team. In that box were several notepads belonging to Gerber. A review of those notepads revealed Gerber's interview notes identified above. The notes were not Bates-stamped and were not memorialized in the Government's index of disclosed documents.

After consulting with Gerber, the current trial team concluded that he had inadvertently failed to turn over those notes to other members of the then-trial team for Bates-stamping,

indexing, and disclosure, because he had forgotten that those notes existed. No other member of the trial team was aware of the existence of these notes before they were discovered late last week.

Very truly yours,

CHRISTOPHER J. CHRISTIE
Special Attorney
U.S. Department of Justice

By:   MICHAEL MARTINEZ
Special Attorney
U.S. Department of Justice

Encs.
cc:   Hon. Alan H. Nevas
      Hon. Alvin W. Thompson

# EXHIBIT 9



Home | Previous Page

U.S. Securities and Exchange Commission

# SECURITIES AND EXCHANGE COMMISSION

**Litigation Release No. 16910 / February 28, 2001**

**ACCOUNTING AND AUDITING ENFORCEMENT RELEASE NO. 1372**

***Securities And Exchange Commission v. Walter A. Forbes and E. Kirk Shelton**, Civil Action No. 01-987(AJL) (D.N.J. Feb. 28, 2001)*

**SEC CHARGES WALTER A. FORBES AND E. KIRK SHELTON, FORMER TOP OFFICERS OF CUC INTERNATIONAL INC., AND CENDANT CORP., WITH DIRECTING AND PROFITING FROM A MASSIVE FINANCIAL FRAUD**

The Securities and Exchange Commission today filed a civil enforcement action in the U.S. District Court for the District of New Jersey against Walter A. Forbes and E. Kirk Shelton, the top two former officers of CUC International Inc. ("CUC"), alleging that they directed a massive financial fraud while selling millions of dollars worth of the company's common stock. For the period 1995-1997 alone, pre-tax operating income reported to the public by CUC was inflated by an aggregate amount of over $500 million. The Commission, among other relief, seeks disgorgement of their fraudulent stock gains (with prejudgment interest), payment of civil money penalties, orders barring Forbes or Shelton from serving as an officer of a public company, and injunctions against violations of the federal securities laws.

CUC merged with HFS Incorporated on December 17, 1997, to form Cendant Corporation ("Cendant"). The litigation results from the Commission's investigation of a long-running financial fraud that began at CUC in the 1980s and continued until its discovery and disclosure by Cendant in April 1998. Upon disclosure of the fraud, the price of Cendant common stock plummeted, causing billions of dollars in losses for investors.

SEC Director of Enforcement Richard H. Walker said, "As this case graphically illustrates, large, complex, and long-running financial frauds often originate at the highest levels of a company. When senior officers entrusted by investors to run public companies engage in fraud, the Commission will respond aggressively to assure continued investor confidence in the quality of financial reporting."

The Commission's complaint alleges the following:

- Forbes, CUC's Chairman and Chief Executive Officer, directed the fraud from its beginnings in 1985. From at least 1991 on, Shelton, CUC's President and Chief Operating Officer, joined Forbes in directing the scheme.

- Forbes and Shelton reviewed and managed schedules listing fraudulent adjustments to be made to CUC's quarterly and annual financial statements. CUC senior management used the adjustments to artificially pump up income and earnings, defrauding investors by creating the illusion of a company that had ever-increasing earnings and making millions for themselves along the way.

- Forbes and Shelton undertook a program of mergers and acquisitions on behalf of CUC in order to generate inflated merger and purchase reserves at CUC to be used in connection with the fraud. Forbes and Shelton sought out HFS as a merger partner because they believed the reserves that would be created would be big enough to bury the fraud. To entice HFS management into the merger, Forbes and Shelton inflated CUC's earnings and earnings projections. Soon after CUC merged with HFS to create Cendant, Forbes and Shelton explicitly congratulated each other on being masterful "financial engineers" who had been able to nurture the fraud through the years and who had assured their continued success by duping HFS into agreeing to a merger with CUC.

- Forbes and Shelton profited from their own wrongdoing by selling CUC and Cendant securities at inflated prices while the fraud they had directed was underway and undisclosed. The sales brought Forbes and Shelton millions of dollars in ill-gotten gains.

- After the Cendant merger, Forbes served as Cendant's Chairman of the Board until his resignation in July 1998. At the time of the merger, Shelton became a Cendant director and Vice Chairman. Shelton resigned from Cendant in April 1998.

The Commission seeks to enjoin Forbes and Shelton from violating Section 17(a) of the Securities Act, Sections 10(b), 13(a), 13(b) and 14(a) of the Exchange Act and Rules 10b-5, 12b-20, 13a-1, 13a-13, 13b2-1, 13b2-2, and 14a-9. In addition, as noted above, the Commission seeks disgorgement of their fraudulent stock gains, prejudgment interest, civil money penalties and orders barring Forbes and Shelton from serving as an officer and director of a public company.

The Commission previously brought related civil actions and administrative proceedings against seven individuals, as well as against the issuer. In those actions, the Commission charged among others, CUC's former Chief Financial Officer, Controller and Senior Vice President, Vice President of Accounting and Reporting, and Director of Financial Reporting. *See* Litigation Release No. 16587 (June 14, 2000); Exchange Act Rel. No. 42933 (June 14, 2000); Exchange Act Rel. No. 42934 (June 14, 2000); Exchange Act Rel. No. 42935 (June 14, 2000); Exchange Act Rel. No. 42936 (June 14, 2000); Exchange Act Rel. No. 43034 (July 13, 2000). These actions remain pending as to Cosmo Corigliano and Ann Pember.

The Commission acknowledges the assistance provided by the U.S. Attorney for the District of New Jersey. The Commission's investigation in this matter is continuing.

*http://www.sec.gov/litigation/litreleases/lr16910.htm*