UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) No. 3:02CR264 (AHN) |
| WALTER A. FORBES. | ) May 19, 2006 |
| | ) |

**AMENDED REPLY MEMORANDUM IN SUPPORT OF MOTION OF
WALTER A. FORBES FOR LEAVE TO ISSUE
RULE 17(C) SUBPOENAS TO COSMO CORIGLIANO, KRAMER LEVIN,
FRIED FRANK, NEIL CARTUCIELLO, CRYSTAL JOURNEY CANDLES
AND THE SEC
(Forbes Third Trial Motion No. 4)**

WILLIAMS & CONNOLLY LLP
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

COWDERY, ECKER & MURPHY, L.L.C.
James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

*Attorneys for Walter A. Forbes*

Not content to argue the merits of Mr. Forbes' requests, Mr. Corigliano's and Kramer Levin's Opposition attacks his counsel, accusing them of abusing the Court's process by filing a motion <u>requesting</u> <u>permission</u> to serve subpoenas that was not only appropriate, but <u>required</u> if Mr. Forbes is to preserve those requests for purposes of a third trial. More fundamentally, Mr. Forbes has a Sixth Amendment right to procure evidence to confront the witnesses against him, which is implemented through Rule 17(c) subpoenas. Moreover, contrary to the claims of the Opposition that Mr. Forbes "flouted" the Court's Orders governing subpoenas, Mr. Forbes raised the issue of Judge Thompson's "case management" Order concerning these Rule 17(c) subpoenas the first time he appeared before the Court. Tr. 3/6/2006 at 31-35. He advised the Court of Judge Thompson's Order, and explained that as a result of that Order he would be filing the present Motion for leave to serve the subpoenas rather than simply serving the subpoenas – as would be done in the normal course. Tr. 3/6/2006 at 31-35. That Motion was procedurally proper and cannot be viewed as "flouting" any order of the Court. <u>See</u> Memorandum of Walter A. Forbes In Opposition to Motion of Cosmo Corigliano and Kramer Levin Naftalis & Frankel LLP To Quash Rule 17(c) Subpoenas at pp.9-16 [Docket No. 1830] (explaining why neither "reconsideration" nor "law of the case" is applicable in the context of subpoena requests to be served in a retrial).

On the merits, the Opposition relies almost exclusively on Judge Thompson's prior rulings. Those decisions were in error for the reasons articulated in Mr. Forbes' Opening Memorandum, and discussed in more detail below. Moreover, neither those rulings nor the Opposition ever address some of Mr. Forbes' most significant arguments.[1]

---

[1] For example, Judge Thompson quashed all of Mr. Forbes' subpoenas for financial records on the grounds that, <u>inter alia</u>, they were fishing expeditions. But one subpoena recipient, Solomon

Finally, the Opposition should not take comfort in its reliance on Judge Thompson's statements that he could not rely upon counsel for Mr. Forbes. Such statements were not justified. There is no question but that our advocacy on behalf of Mr. Forbes inexplicably caused Judge Thompson to make statements impugning the integrity and professionalism of defense counsel. All defense counsel believe that these statements by Judge Thompson were wholly baseless, inappropriate and unjustified. For example, the Opposition cites to a portion of the 2004 trial transcript where Judge Thompson stated that a pleading filed by Mr. Forbes concerning the crime-fraud exception mischaracterized Mr. Corigliano's testimony at page 7610 of the record, and that "[t]his assertion leaves me concerned as to

---

Smith Barney, had fortuitously already produced documents pursuant to Mr. Forbes' Rule 17(c) subpoena prior to Judge Thompson quashing the subpoena upon the motion of Mr. Corigliano. It was from this production that Mr. Forbes ultimately learned of the nearly $3 million paid to Kramer Levin as a legal retainer. Neither the government nor Mr. Corigliano produced any evidence of the retainer to Mr. Forbes before the first trial. Nor did Mr. Corigliano identify the retainer in any of the multiple financial disclosures he filed with the SEC. Nor was the retainer identified in the final Consent Agreement between Mr. Corigliano and the SEC. Indeed, the USAO claimed that it did not know about the retainer until after Mr. Corigliano admitted to it on cross-examination during the first trial. Tr. 8/2/04 at 9126-27; Tr. 8/4/04 at 9626-27; Gov't Opp'n to Forbes Retrial Motion No. 3, at 5 (Docket No. 1643). And attorneys from Kramer Levin, having successfully persuaded Judge Thompson to quash all of Mr. Forbes' subpoenas seeking Mr. Corigliano's financial records, sat quietly in the courtroom while Mr. Corigliano testified to what the government purportedly permitted him to keep in his settlement with the SEC, and failed to mention the approximately $2 million in legal retainers still on deposit with his and his wife's law firms. Thus, but for this production pursuant to a subpoena which Judge Thompson later quashed, along with all the other subpoenas for financial records, Mr. Forbes would never have learned of the more than $3 million paid to the Coriglianos' law firms as a legal retainer. Absent that, this benefit worth millions of dollars would have gone undisclosed to the jury, as would have Mr. Corigliano's false testimony on direct concerning what he was able to keep in his settlement with the SEC (which did not disclose these legal retainers).

Similarly, absent Mr. Forbes renewing his subpoena requests during the second trial, and Judge Thompson's decision to reverse his prior decision to quash the subpoena request for a financial affidavit Mr. Corigliano provided to the SEC, Mr. Forbes would never have known that after Mr. Corigliano signed his plea agreement in 2000, Mr. Corigliano received a $1 million refund from the retainer paid to Kramer Levin – casting even further doubt on Mr. Corigliano's incredible testimony that he had never disclosed the retainer in his quarterly reports because the money was "not his."

2

whether I can rely on counsel to not cite to the record inaccurately." Tr. 7/26/2006 at 8813-14. We respectfully submit that the statement in the pleading – that Mr. Corigliano testified that he went into his meeting with the government on January 13, 1999 intending to make false statements – was a fair and correct reading of his testimony that "I knew that I was going to lie to them in hopes that it would go away." Tr. 715/2004 at 7610, l. 8-11; see Docket No. 957. We believed then, and continue to believe now, that the description of Mr. Corigliano's testimony in that pleading was accurate, and the Court's statements were at the time, and still are, baffling.[2] We would urge the Court to consider the facts and the law, and not Judge Thompson's slights against counsel, in deciding the issues presented.

I. **THE COURT'S PRIOR "FINDINGS" CONCERNING THE EVIDENCE OF MR. CORIGLIANO'S AGREEMENTS WITH THE SEC, AND THE EVIDENCE CONCERNING MR. CORIGLIANO'S RETAINER, RELIED UPON BY MR. CORIGLIANO AND KRAMER LEVIN IN THEIR OPPOSITION, WERE ERRONEOUS AND CONTRARY TO THE EVIDENCE.**

Mr. Corigliano and Kramer Levin assert that Mr. Forbes is proceeding on "false factual premises" as well, relying on certain so-called "findings" of the Court during the first two trials. Specifically, Mr. Corigliano and Kramer Levin argue that Mr. Forbes' claim that Mr. Corigliano breached his obligations to the government under his plea agreement with the USAO and his consent agreement with the SEC by (1) not including the amount of the Kramer Levin and Fried Frank retainers on quarterly reports filed with the SEC; (2) making expenditures between his last quarterly report prior to the SEC settlement (March 31, 2004) and the turnover of assets on July 7, 2004; or (3) failing to immediately transfer to the Receiver the balances of his and his wife's legal fee retainers is a "unilateral interpretation" not shared by any of the

---

[2] There are many other examples of what defense counsel believe were inappropriate and baseless reactions by Judge Thompson outside the subpoena context. Defense counsel see no purpose in re-hashing other such incidents here, unless the Court so requests.

3

parties to those agreements. Opp. at 16-17.[3]

       First, as to the retainer, as discussed in Mr. Forbes' Opening Memorandum, Mr. Corigliano's trial testimony that he did not believe the retainer to be "his money," and thus did not list it among his assets, is preposterous. No one would pay an attorney $3 million with the understanding that the money was no longer his, and that he could not obtain a refund of any unearned portions by terminating the relationship at any time. Indeed, <u>Mr. Corigliano had already received a $1 million refund from the retainer, a fact unknown to Mr. Forbes during the first trial, and a fact which he was erroneously precluded from eliciting during the second trial</u>. Ex. 20.[4] The retainer should shed additional light on the matter in any event, and as a statement previously adopted by Mr. Corigliano when he signed it, the agreement satisfies any "admissibility." Judge Thompson's previous "findings" that retainer related documents were not admissible to challenge Mr. Corigliano's testimony that the money was "not his," and that there was no legitimate basis to argue that Mr. Corigliano had cash on deposit with his counsel, see Opp. at 18, were simply in error, and do not address the impact of the $1 million refund.[5]

---

[3] Although these are the breaches cited and addressed in the Opposition, apparently because Mr. Corigliano and Kramer Levin believe that they can respond to these issues, they are <u>not</u> all of Mr. Corigliano's breaches. See Opening Memorandum; Forbes Third Trial Motion No. 2 (Docket 2189); Forbes Third Trial Motion in Limine Nos. 1 & 4 (Docket Nos. 2190 & 2273).

[4] Unless otherwise noted, all citations to Exhibits are to the joint Exhibits in Support of Mr. Forbes' Motions Filed March 31, 2006 (Docket No. 2187).

[5] Mr. Corigliano's and Kramer Levin's reliance on a New York ethics decision is also misplaced. Opp. at 18-19. That opinion addresses only whether retainers paid to an attorney are considered the client's funds for purposes of determining whether the State's ethical rules require the funds to be placed in a client trust account. The opinion does not establish legal <u>property rights</u>, and indeed recognizes that any <u>unearned funds must be returned to the client</u>. Indeed, these disciplinary rules did not create any bar to the government's seizure of retainer funds in the two New York cases cited in Mr. Forbes' Opening Memorandum: SEC v. Credit Bancorp, Ltd., 109 F. Supp. 2d 142, 145 (S.D.N.Y. 2000) (evaluating the terms of the retainer agreement and holding that the retainer was part of the frozen receivership estate because it was the asset of the

4

Second, as to Mr. Corigliano's continued use of the retainer funds, the Opposition and Judge Thompson's rulings ignore the discrepancy between Mr. Corigliano's testimony and that of Mr. Frohlich, an SEC attorney who participated in the negotiation of the agreement. As discussed in Forbes Third Trial Motion No. 2, Docket No. 2189, whereas Mr. Corigliano testified that he could use the retainer indefinitely, Mr. Frohlich testified that he was not certain if Mr. Corigliano could use the retainer beyond July 7, 2004:

> Q.  Were the retainers to be turned over 60 days after the final judgment [July 7, 2004] or could Mr. Corigliano continue to use the retainers to cover reasonable legal fees indefinitely?
>
> A.  I'm not certain.

Tr. 9/27/2004 at 13610-611.[6]

More importantly, the plain language of the settlement agreement did not permit Mr. Corigliano to keep the retainer. The agreement was structured such that Mr. Corigliano was to disgorge everything other than a specific list of assets. That list of assets Mr. Corigliano could retain makes no mention of either the retainer, or the right to legal services to which the retainer entitled Mr. Corigliano. In fact, the retainer is not mentioned anywhere in the agreement. Thus the text simply does not support Mr. Corigliano's purported understanding that he could continue to use the retainer indefinitely.

Third, as for Mr. Forbes' position that the consent agreement did not permit Mr.

---

client, not the law firm) and SEC v. Princeton Econ. Int'l Ltd., 84 F. Supp. 2d 443, 446 (S.D.N.Y. 2000). Moreover, the opinion does not conclude that all retainer funds are treated as attorney funds under the disciplinary rules, but rather that this question is determined by the agreement between the attorney and client – an agreement that has not been disclosed in this case. See N.Y. St. Bar Ass'n comm. on Prof. Ethics, Op. No. 570, 1985 WL 57057 at *1 (1985) ("[T]he lawyer may agree to treat advance payments of legal fees as client funds . . . .").

[6] After he had made the "findings" relied upon by Mr. Corigliano and Kramer Levin, Judge Thompson admitted that he did not recall this testimony. Tr. 11/7/2005 at 36-37.

5

Corigliano to continue to pay his living expenses up through July 7, 2004 out of funds to be disgorged to the SEC, contrary to Mr. Corigliano's and Kramer Levin's claim that this position is a "far-fetched interpretation" of the agreement, Mr. Forbes' reading comes straight from the text of the document. See Forbes Third Trial Motion No. 2 at 20-23 (Docket No. 2189). Neither the Opposition nor Judge Thompson's prior rulings ever addressed the language of the agreement, or how it could possibly comport with Mr. Frohlich's testimony that the judgment "covered" the retainer. See Docket 1927 at 5 (Court ruling relying on Frohlich's testimony that the judgment against Corigliano covered the retainer agreement).

Nor, contrary to the findings in Judge Thomspon's Order of November 1, 2005, did Mr. Frohlich's testimony support Mr. Corigliano's position that he could continue to pay his normal living expenses through July 7, 2004. Rather, Mr. Frohlich testified that he understood Mr. Corigliano could continue to pay his normal living expenses (including attorney fees) through the date of Final Judgment, which was May 6, 2004:

> Q. Was Mr. Corigliano permitted to use the proximately $1,500,000 in legal fees if he needed to and then return the balance to the receiver, if there was any?
>
> A. My understanding was that his use of the retainer for legal fees continued to be the same as it was right up to the time that the judgment was entered. Nothing had changed.
>
> Q. In other words, nothing had changed, meaning he could use the legal fees? The answer to my question, I gather, is yes?
>
> A. He had certain regular expenses that he was always allowed to incur and pay, and I viewed these as the same as any of those other ongoing expenses.

Tr. 9/27/2004 at 13603-04 (emphasis added). The fact that Mr. Frohlich's testimony also finds no support in the text of the agreement only demonstrates the need to have full disclosure of the negotiations and agreements between Mr. Corigliano and the SEC pertaining to this matter,

6

including the communications with the receiver, who is charged with carrying out the dictates of the agreement.

Fourth, with regard to the defense's position that Mr. Corigliano has ignored the plain requirements of his plea agreement, even the limited information produced to date supports Mr. Forbes' contention. As discussed at length in Forbes Third Trial Motion No. 2 (Docket No. 2189) and Forbes Third Trial Motion in Limine No. 4 (Docket No. 2273), there can be little doubt that Mr. Corigliano resisted the financial disclosure requests of the SEC in derogation of his obligations under the plea agreement. And although the Opposition and Judge Thompson's rulings rely upon the claim that neither Mr. Corigliano nor the government allege a breach, Opp. at 21-22, belatedly produced correspondence between the SEC and Kramer Levin in the spring of 2000 reveals that the SEC was in fact claiming that Mr. Corigliano's failure to comply with the SEC's requests for financial disclosure was contrary to the obligations he had agreed to in his plea agreement. See Forbes Third Trial Motion No. 2, Docket No. 2189 at 8-12 (discussing this correspondence at length). Again, this fact was never addressed in the rulings of the prior Presiding Judge.

* * * * * * * * *

In any event, to the extent that there are conflicting interpretations of the issues, they are ultimately for the jury to decide. At a minimum, the defense is entitled to the evidence from which we can make the arguments that Mr. Corigliano has breached his agreements with the government and that the government has chosen to ignore those breaches, rather than have the government simply present Mr. Corigliano as a "new man" who has fully complied with his obligations.

## II. MR. CORIGLIANO MISCONSTRUES THE REQUIREMENTS OF NIXON.

Contrary to the arguments of Mr. Corigliano and Kramer Levin, documents meet the requirements of Rule 17(c) when they can be used for impeachment purposes. See Nixon, 418 U.S. 683, 701 (1974); United States v. Compton, Nos. 93-1649, 93-1712, 1994 WL 328303, at *3 (6th Cir. July 1, 1994) (subpoena "reasonably calculated to produce impeachment materials").[7]

Moreover, documents relevant to the non-collateral issues of motive and bias are admissible, and satisfy the requirements of Rule 17(c), even if those documents may also happen to impeach Mr. Corigliano's general credibility. See Opp. at 12-13

---

[7] See also United States v. LaRouche Campaign, 841 F.2d 1176, 1180 (1st Cir. 1988) (enforcing subpoena seeking materials for "sole purpose of impeaching [government witness] at trial"); United States v. Silverman, 745 F.2d 1386, 1397 (11th Cir. 1984) (subpoenaed materials "clearly possessed evidentiary potential for impeachment purposes"); United States v. Cuthbertson, 630 F.2d 139, 144 (3d Cir. 1980); United States v. Shackney, 31 F.R.D. 550, 552 (D. Conn. 1962) (enforcing subpoena for documents that might be used for impeachment); United States v. Martin Marietta Corp., 856 F.2d 619, 621-22 (4th Cir. 1988) ("interview notes, transcripts, and electronic recordings" reflecting witness statements are "evidentiary"); Fryer v. United States, 207 F.2d 134, 137 (D.C. Cir. 1953) ("[S]tatements by the witnesses, which might have been introduced for impeachment purposes, were clearly 'evidentiary,' as Bowman requires."); United States v. King, 194 F.R.D. 569, 574 (E.D. Va. 2000) ("[S]tatements useful for impeachment purposes are evidentiary within the meaning of Nixon. . . ."); United States v. Myerson, 684 F. Supp. 41, 45-46 (S.D.N.Y. 1988) (interview notes are "evidentiary").

The cases cited by Mr. Corigliano and Kramer Levin are inapposite. Opp. at 10. United States v. Jasper, No. 00 CR. 825 (PKL), 2003 WL 1107526 (S.D.N.Y. March 13, 2003) and United States v. Holihan, 248 F. Supp. 2d 179, 183 (W.D.N.Y. 2003) address subpoenas that sought the production of impeachment material in advance of trial, prior to the witness having testified. Here, in contrast, there is no question but that Mr. Corigliano will testify (the government has no case without him), and Mr. Forbes is seeking production of documents during the trial itself. And while United States v. Cherry, 876 F. Supp. 547, 553 (S.D.N.Y. 1995) does not specify whether it is addressing a pre-trial subpoena as opposed to a trial subpoena, it must be doing so, or else it is against the overwhelming weight of the authority cited above, including appellate decisions.

8

III.   THE SPECIFIC CATEGORIES OF DOCUMENTS REQUESTED.

Mr. Forbes described the bases for his specific document requests at length in his Opening Memorandum. He addresses two of them again here in order to bring to the Court's attention yet another decision concerning the crime-fraud exception which is analogous to the circumstances here, and to address a claim of work product protection raised in Mr. Corigliano's and Kramer Levin's Opposition.

### A.   Communications Between Mr. Corigliano and Kramer Levin Between April 1998 and January 2000, and Kramer Levin's Proffer Sessions with the Government.

Mr. Corigliano and Kramer Levin describe Mr. Forbes' requests for documents relating to communications between Mr. Corigliano and his counsel prior to his "cooperation" as "the most egregious attempt to invade the privileged attorney-client relationship." Opp. at 31. Yet the Third Circuit recently applied the crime-fraud exception to the privilege in circumstances analogous to those here. In Re: Grand Jury Investigation, 445 F.3d 266 (3rd Cir. 2006). There, evidence indicated that the recipient of a grand jury subpoena had destroyed e-mails after discussing the subpoena with counsel. The appellate court held that the destruction of the e-mails could constitute the obstruction of justice. Id. The court then held that the communications with counsel could have been "in furtherance" of this crime because the subpoena recipient could have selected which e-mail to destroy based upon counsel's advice concerning where the investigation was headed and what documents were sought by the subpoena. Id.

Here, there is no question but that Mr. Corigliano engaged in the obstruction of justice when he provided false information to the government – first via attorney proffers, and then through his own January 1999 interview. See Open. Mem. at 25-31. As in In re Grand Jury

9

Case 3:02-cr-00264-AHN    Document 2343    Filed 05/19/2006    Page 11 of 13

Investigation, Mr. Corigliano could have determined when to lie, and when to tell the truth, based upon what he learned from his counsel concerning the direction the investigation was headed, as well as on what issues, and on which persons, the government was focused. This evidence alone should warrant application of the crime-fraud exception, id., and at a minimum, establishes a prima facie case for such application.

**B.      Post 2004-Trial Communications Relating to the Government and Benefits.**

Mr. Corigliano and Kramer Levin represent that there are no documents responsive to this request "apart from the possibility of any Kramer Levin confidential internal work-product." Opp. at 36. To the extent these documents contain some fact work product of the author (although it is not clear what "litigation" was anticipated), and the protected information is not capable of redaction, the defense's overriding need for the information in this case would overcome any fact work product privilege. See United States v. Marcus Schloss & Co., Inc., No. 88 CR 796 (CSH) 1989 WL 62729 (S.D.N.Y. June 5, 1989) (balancing the defendant's need against the lack of prejudice to the witness, and ordering the production of an attorney's notes of its client's meetings with the government); see also United States v. Skeddle, 989 F. Supp. 912, 916-17 (N.D. Ohio 1997) (enforcing trial subpoenas to third parties that called for notes and memoranda prepared by private investigators of interviews of government witnesses). Documents reflecting agreements between the government and Mr. Corigliano's counsel concerning benefits are critical evidence of Mr. Corigliano's bias. Indeed, even if Mr. Corigliano is purportedly unaware of the benefit, the information must be produced, and is admissible evidence for the jury's consideration. Hayes v. Brown, 399 F.3d 972 (9th Cir. 2005) (en banc) (due process violated when cooperating witness testified falsely about oral agreement between witness's counsel and government even though witness was unaware of it).

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Dated: May 19, 2006

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing Amended Reply Memorandum in Support of Motion of Walter A. Forbes for Leave to Issue Rule 17(c) Subpoenas to Cosmo Corigliano, Kramer Levin, Fried Frank, Neil Cartuciello, Crystal Journey Candles and the SEC (Forbes Third Trial Motion No. 4) to be filed electronically and to be served on May 19, 2006 to the following via e-mail:

>Norman Gross, Esq. (norman.gross@usdoj.gov)
>Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
>Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

and to be sent on May 19, 2006 to the following by Fed Ex:

>Susan Brune, Esq.
>Brune & Richard LLP
>80 Broad Street, 30th Floor
>New York, NY 10004
>
>Kathleen Cody, Esq.
>Securities and Exchange Commission
>100 F Street, N.E.
>Washington, D.C. 20549-9162

_____
Barry S. Simon