08/15/2003 10:15 FAX 312 6   276      KPMG LLP                 ᕽᑊᕽᑊᒣᒪᒪᕽᒪᑊᒪᒪᒪ    ☑003
ᕽᑊᑊᕽ ᑊᕽ ᑊᕽᑊᕽᑊ ᑊᕽᑊᕽᑊ ᕽᕽ

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA      :   No. 3:02CR00264 (AWT)
                              :
                              :
                              :
        .v.                   :
                              :
                              :
                              :
                              :
                              :
WALTER A. FORBES, and         :
E. KIRK SHELTON               :


DECLARATION OF BRIAN HECKLER, CPA

Brian L. Heckler states as follows:

1.  I am a certified public accountant and partner at the accounting firm KPMG, LLP.  I have been retained by the United States to render an expert opinion in the matter of the United States v. Walter A. Forbes and E. Kirk Shelton now pending in the District of Connecticut.  I submit this declaration and the attached letter, which is hereby incorporated as if set forth fully herein, to clarify and explain certain issues regarding the methodologies and bases for my expert opinion that the accounting practices detailed in the Connecticut superseding indictment violated Generally Accepted Accounting Principles.

2.  In forming my opinion that the accounting practices detailed in the superseding indictment violated GAAP, I substantially relied upon my own independent review and analysis of the books and records of CUC and Cendant, the transcripts of

the detailed guilty plea allocutions of Cosmo Corigliano, CUC's

former chief financial officer, Anne Pember, CUC's former

controller, and Casper Sabatino, CUC's former director of

financial reporting, and the proffered oral answers from

Corigliano and Pember to several questions I posed to the United

States.

      3.  As a part of my independent review and analysis, my

staff and I spent hundreds of hours examining thousands of pages

of CUC and Cendant documents that were contained within the files

of Arthur Andersen and Ernst & Young.  These documents included,

but were not limited to, the journal entries, spreadsheets,

schedules and internal correspondence that caused, or served as

the foundation for, the improper accounting practices that are

the subject of my expert opinion.  My independent review and

analysis of these source documents, along with the allocutions

and proffered oral answers to my questions, constituted the most

important bases for my opinion.

      4.  I also read and considered the Audit Committee

Report and the thousands of pages of workpapers prepared by

Arthur Andersen.  The Report provided me with a useful background

to understand certain of the accounting-related allegations and

as a corrobative source for my own independent assessments.  I

did not, however, simply adopt or substantially rely on the

conclusions of the Report as a basis for my own opinion.  I

likewise utilized the voluminous workpapers of Arthur Andersen.

However, I did not accept any of their work on its face. Rather, I designed and performed necessary and sufficient procedures to allow me to assess the accuracy of Arthur Andersen's calculations for the areas identified in the superseding indictment.

5.  My staff and I further read and considered the witness interviews conducted during the Audit Committee's investigation. These interviews, primarily the ones given by Mary Sattler, Steven Speaks and Casper Sabatino, were helpful in gaining a contextual understanding of the issues relevant to my opinion, but did not serve as a substantial basis for my opinion. Nor did I uncritically accept the information contained within the interviews at face value.

6.  Overall, in my professional judgement, I performed necessary and sufficient procedures and tests to gain a reliable factual basis for my opinion. Thereafter, I performed an exhaustive analysis of the relevant authoritative accounting principles. I concluded that CUC and Cendant employed accounting procedures that violated GAAP in amounts at least as great as those alleged in the superseding indictment.

7.  If asked, I could provide additional information concerning the reliable bases and methodologies I employed in reaching the opinion contained in my summary of expert witness testimony.

08/15/2003 10:16 FAX 312 6   276        KPMG LLP                    J 913126651555      006
AUG 14 2003 15:36 FR                                                            P.05

8.   Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_Brian L. Heckler_
Brian L. Heckler, CPA


Dated:   August 14, 2003
         Chicago, Illinois

08/15/2003 10:17 FAX 312 6( 276    KPMG LLP    J 913126651555    @007
HUG 14 2003 15:36 FR



303 East Wacker Drive                                   Telephone 312 665 1000
Chicago, IL 80601-5212                                  Fax 312 665 8038

**PRIVILEGED AND CONFIDENTIAL – ATTORNEY WORK PRODUCT**

August 12, 2003

John J. Carney, Esq.
Assistant United States Attorney
United States Department of Justice
Fraud and Public Protection Division
United States Attorney's Office - District of New Jersey
970 Broad Street, Suite 700
Newark, NJ 07102

Re:  United States of America v. Walter A. Forbes and E. Kirk Shelton

Dear John:

This letter is being issued to clarify and confirm the scope of my procedures pursuant to our engagement letter dated February 4, 2002 in connection with the matter referenced above with respect to CUC International, Inc. and Cendant Corporation (together, the "Company").

Pursuant to the third paragraph of that letter, I was engaged to "review documents, conduct analysis as deemed necessary and appropriate, prepare an expert's report, and prepare to testify in the captioned matter." My understanding and approach to this engagement was to design a work plan and conduct such work as was necessary to formulate my independent and objective opinion about whether the alleged violations of generally accepted accounting principles ("GAAP") cited in the indictment were in fact violations of GAAP and to quantify whether the amount of the errors and irregularities related to those alleged violations of GAAP were at least the amounts identified in the indictment.

As further described in my letter to you dated August 12, 2002 that accompanied my testimony summary, the objective of my work was "to review facts and analysis in this matter, perform technical research, quantify errors and irregularities without reliance on procedures performed by Arthur Andersen to the extent possible, formulate opinions of violations of GAAP with individual issues in the case, detail all findings in the "detailed notes" and write the testimony summary."

My approach included, among other things, the review of information, primarily the Company's source documents, transcripts of the allocutions of Anne Pember, Cosmo Corigliano and Casper Sabatino, proffered interview responses of Anne Pember and Cosmo Corigliano, as well as additional documents and other information as I deemed to be necessary to support my opinion. I reviewed thousands of pages of Company source documents that were contained in the Arthur Andersen workpapers as well as in the Ernst & Young workpapers.



08/15/2003 10:17 FAX 312 6      276         KPMG LLP                                    ᵭ008

**KPMG**

John J. Carney, Esq.
United States Department of Justice
August 12, 2003
Page 2

This is contemplated in the engagement letter dated February 4, 2002 wherein I request that "you will make available to us the documents necessary for us to complete these tasks. Should we determine that additional documents are necessary, we will make all requests for financial and other records through you." However, my work was not based solely on information gathered by Arthur Andersen.

I understand that paragraph three of my letter to you dated August 12, 2002 states, "Our engagement was performed under the Statements on Standards for Consulting Services issued by the American Institute of Certified Public Accountants ("AICPA"). The nature of our analysis was limited in nature and in scope following the procedures selected by you. We make no representation regarding the sufficiency or purposes of the procedures you selected, and if those procedures would disclose all significant matters or reveal errors in the underlying information, instances of fraud, or illegal acts, if any." However, that paragraph was not intended to and does not convey that the scope of my work was restricted. To the contrary, throughout the conduct of the engagement, I was given access to all documents and information that I ultimately deemed necessary to form my opinions in this matter, and I was not restricted from documents, information or procedures that I deemed to be necessary to conduct the work or to formulate my opinions. That paragraph's reference to "limits" is solely a reference to the fact that my work plan, procedures, and opinion related to the matters and financial reporting periods identified in the indictment, and not to other aspects of the accounting records, practices, and financial reporting for the Company.

To further clarify, my expert opinion is not an audit or attest opinion with respect to the assertions in any of the Company's financial statements taken as a whole, or with respect to any specific assertion, account balance, or disclosure in any of the Company's financial statements. I was not engaged to and did not perform procedures (or issue a report) that constituted an audit, examination or review as contemplated by the standards established by the AICPA of any matters in connection with the financial statements issued by the Company or the report issued by Arthur Andersen, as such work was unnecessary to form a basis for my opinion in this matter. My expert witness opinion is based upon my judgment, experience, education, training, and analysis, in compliance with the Statements on Standards for Consulting Services, the applicable guidance for litigation services issued by the AICPA.

Very truly yours:

*Brian L Heckler*

Brian L. Heckler, *Partner*

Transaction Services