UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA : No. 3:02CR00264 (AHN)
:
:
v. :
: May 22 2006
:
:
WALTER A. FORBES :

GOVERNMENT'S OPPOSITION TO FORBES' MOTION TO PRECLUDE THE
GOVERNMENT FROM ELICITING SUPPOSEDLY FALSE TESTIMONY FROM KEVIN
KEARNEY OR, IN THE ALTERNATIVE, FOR LEAVE TO PRESENT DOCUMENTARY
EVIDENCE TO IMPEACH SUPPOSEDLY FALSE TESTIMONY BY KEVIN KEARNEY

(OPPOSITION TO FORBES THIRD TRIAL MOTION IN LIMINE NO. 6)

CHRISTOPHER J. CHRISTIE
NORMAN GROSS
MICHAEL MARTINEZ
MARK E. COYNE
Special Attorneys
U. S. Department of Justice
970 Broad Street
Room 700
Newark, N.J.  07102
(973) 645-2701

## TABLE OF CONTENTS

INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

I.      FORBES HAS FAILED TO SUSTAIN HIS HEAVY BURDEN OF
        DEMONSTRATING THAT KEARNEY'S ANTICIPATED TRIAL
        TESTIMONY WILL VIOLATE FORBES' RIGHT TO DUE
        PROCESS. . . . . . . . . . . . . . . . . . . . . . . 3

II.     THIS COURT SHOULD REJECT FORBES' REQUEST TO SUPPRESS
        KEARNEY'S ANTICIPATED TESTIMONY THAT WILL INCULPATE
        FORBES. . . . . . . . . . . . . . . . . . . . . . . 4

        A. Forbes Has Failed to Demonstrate that Kearney's
        challenged trial testimony is false. . . . . . . . 4

        B. Forbes Has Failed to Demonstrate That The Government
           Was Aware of The Alleged Perjury. . . . . . . . 12

        C. No Due Process Violation Occurred Because The
           Grounds for Forbes' Attacks on Kearney's Testimony
           Were Revealed to Forbes. . . . . . . . . . . . 16

III.    THIS COURT SHOULD NOT RECONSIDER JUDGE THOMPSON'S
        RULING, OR DEPART FROM THE LAW OF THE CASE THAT FORBES
        IS NOT ENTITLED TO HAVE INCOMPLETE AND UNADOPTED
        SUMMARIES OF KEARNEY'S PRIOR STATEMENTS ADMITTED INTO
        EVIDENCE TO IMPEACH. . . . . . . . . . . . . . . . 18

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . 22

**INTRODUCTION**

Prosecution witness Kevin Kearney implicated Forbes in the charged fraud during the first and second trials.  Not surprisingly, Forbes contends that Kearney should not be permitted to implicate him in the third.  Forbes does not claim that Kearney's anticipated third trial testimony runs afoul of the Federal Rules of Evidence.  Nor does Forbes claim that the Government secured Kearney's testimony by unlawful means, or posit any other legitimate reason to exclude that testimony. Rather, according to Forbes, this Court should exclude Kearney's anticipated inculpatory testimony from the third trial because Kearney supposedly lied when he testified in the first and second trials about conspiratorial conversations in which he participated that inculpated Forbes in the fraud.  Judge Thompson rejected variations of this claim repeatedly.  E.g. Docket 1839 at 5.

Forbes' "proof" of Kearney's supposedly previous perjury is a series of hand-written notes taken by attorneys and investigators during pre-trial interviews of Kearney.  According to Forbes, those notes memorialize Kearney's prior inconsistent statements, or his failure to recount the conspiratorial conversations during those interviews.  Forbes implicitly presumes that the hand-written notes, none of which have been adopted by (or apparently even shown to) Kearney, e.g. Second Trial Transcript ("STTr.")  2655-56, set forth complete and accurate accounts of Kearney's statements during the interviews. From that premise, Forbes asserts that Kearney's trial testimony regarding the conspiratorial conversations was perjured, based on

supposed inconsistencies between those notes and Kearney's testimony, or the omission from the notes of information about those conversations.

Judge Thompson previously rejected, on two occasions, this line of argument when he denied Forbes' motions during the first and second trials for a mistrial based on Kearney's supposed perjury.  Docket 1091 (Forbes' first trial motion), 1123 (Government's opposition to first trial motion), 1264 (Judge Thompson's ruling, denying that motion); 1911 (Forbes' second trial motion); 1932 (Government's opposition to second trial motion).[1]  Forbes has failed to demonstrate that this Court should reconsider Judge Thompson's ruling that Forbes has failed to demonstrate that Kearney committed perjury, see Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998), or that this Court should depart from the law of the case, see United States v. Uccio, 940 F.2d 753, 758 (2d Cir. 1991).

Forbes seeks to conceal Kearney's testimony from the jury based on a credibility challenge, but it is for the jury to determine whether Kearney's sworn account of what he heard others say about Forbes' involvement in the charged fraud is true.  The voluminous exhibits attached to Forbes' motion demonstrate that

---

[1]  The docket does not reflect Judge Thompson's ruling on Forbes' second trial motion, seeking a mistrial based on Kearney's supposed perjury.  Since Judge Thompson did not declare a mistrial of the second trial based on that motion, however, he effectively denied that motion.  Jacobs v. Law Offices of Leonard N. Flamm, 2005 WL 1844642, *5 (S.D.N.Y., July 29, 2005) (noting that the court "effectively denied" motions that it did not grant).

the Government has been diligent to a fault in informing Forbes about anything that might enable him to impeach Kearney.

This Court, however, should decline Forbes' misdirected invitation to make its own credibility findings about Kearney's trial testimony before that testimony is even elicited during the third trial. Contrary to Forbes' self-serving claims that Kearney lied at trial when he implicated Forbes, no member of the prosecution team has personal knowledge that any of Kearney's prior testimony was false. At most, Forbes has shown that Kearney's recollection has changed over time. If that is a basis for the jury to discredit Kearney's testimony, so be it, but it is not a ground for this Court to exclude Kearney's testimony.

**ARGUMENT**

I.  **FORBES HAS FAILED TO SUSTAIN HIS HEAVY BURDEN OF DEMONSTRATING THAT KEARNEY'S ANTICIPATED TRIAL TESTIMONY WILL VIOLATE FORBES' RIGHT TO DUE PROCESS.**

Forbes contends that, if Kearney is permitted to inculpate Forbes in the third trial, Forbes' right to due process will be violated because Kearney's inculpatory testimony will be intentionally false, and the Government will know it is false. Forbes has failed to sustain his heavy burden to prove such a violation. Relief based on "allegations of perjured testimony should be granted only with great caution and in the most extraordinary circumstances." United States v. McCarthy, 271 F.3d 387, 399 (2d Cir. 2001), quoting United States v. Zichettello, 208 F.3d 72, 102 (2d Cir. 2000) (collecting cases), abrogated on other grounds, United States v. Robinson, 439 F.3d 537, 541 (2d Cir. 2005). In order to prevail on such a claim,

3

Forbes must show that: (I) Kearney actually committed perjury during the prior trials; (ii) Kearney's alleged perjury was material; (iii) the Government knew or should have known that Kearney committed perjury during the prior trials; and (iv) the grounds for alleging Kearney's supposed perjury was not disclosed to Forbes before the third trial.  <u>United States v. Glover</u>, 588 F.2d 876, 879 (2d Cir. 1978) (rejecting due process claim where the defendant "failed to establish either that [the challenged] testimony was perjurious or that the government's behavior was improper").

As will be shown herein, not only has Forbes failed to demonstrate that this Court should reconsider Forbes' twice-rejected claims and depart from the law of the case, but Forbes' present claim that Kearney committed perjury fails on its own terms.  This is because Forbes has failed to meet at least <u>three</u> of the four requirements of this demanding standard (without even considering whether Kearney's challenged testimony is material).

## II.  THIS COURT SHOULD REJECT FORBES' REQUEST TO SUPPRESS KEARNEY'S ANTICIPATED TESTIMONY THAT WILL INCULPATE FORBES.

### A.  Forbes Has Failed to Demonstrate that Kearney's challenged trial testimony is false.

Forbes devotes the bulk of his memorandum in support of this motion to cataloguing Kearney's supposed failures to describe, in a series of pre-trial interviews, the conspiratorial conversations that implicated Forbes in the charged fraud. According to Forbes, those supposed omissions mean that Kearney's testimony about those conversations during the first and second trials must have been false.  Not only that, but Forbes also

4

insists that the prosecutors and investigators in this case, none of whom were present during any of the conspiratorial conversations, know or should know that Kearney's trial testimony about those conversations was false.

Regarding the first and presumably most compelling example of Kearney's supposedly "false testimony," Forbes claims that Kearney must have lied about his conversations with the former Chief Financial Officer of CUC, Stuart Bell, during which Bell invoked Forbes' name when discussing with Kearney the preparation of unsupported topside adjustments.[2]  According to Forbes, Kearney's testimony about Bell's statements were false, because many of the notes written by persons other than Kearney during or after the Kearney interviews failed to describe those conspiratorial conversations between Kearney and Bell.  FM 2. Forbes also claims that Kearney's pre-trial statements "prior to 2003 mentioned that Kearney met with persons other than Bell to

---

[2]  The conspirators engaged in unsupported topside adjustments in order to close the gap between CUC's actual financial results and the results that CUC reported to the SEC and the investing public.  CUC's twenty-two operating divisions reported their actual revenues and expenses on a monthly basis to CUC's corporate headquarters.  First trial transcript ("FTTr.") 6521-22.  Those divisional results were entered onto an Excel computer spreadsheet program, which calculated the monthly and quarterly revenue, expenses, and income for CUC as a whole.  FTTr. 439-40, 1067-68, 1228, 4016-18, 4022-24, 5048-49.

When the conspirators determined that CUC's actual consolidated earnings fell below the company's earnings targets, they changed the consolidated revenue, expense and earnings figures in the Excel spreadsheet, so that the earnings would hit CUC's earnings targets, even though there was no valid basis for those adjustments.  FTTr. 2330-31, 2628-34, 2664-68, 2688-92, 6562-63.  The fraudulent adjustments increased earnings that were reported on CUC's publicly filed quarterly reports and in press releases.  FTTr. 4073, 4086-90, 4094-98, 4426-35.

discuss the unsupported topside adjustments, but he did not state that he met with Bell to discuss those adjustments."  FM 2-3.

The other instances of Kearney's supposed perjury described by Forbes are variations on this theme.[3]  Forbes claims, for instance, that Kearney's prior statements that he attended meetings with Corigliano and/or Sabatino to discuss unsupported topside adjustments necessarily means that he did not attend meetings at which Bell was present to discuss that subject.[4]

---

[3]  See FM 9-11 (alleging that Kearney testified falsely that Casper Sabatino told Kearney not to release financial information to CUC's outside auditors until Forbes "signed off" on the draft press release, because none of Kearney's prior statements "contain this claim"); FM 11-13 (alleging that Kearney testified falsely that Cosmo Corigliano had invoked Forbes' name when instructing Kearney to make topside adjustments and regarding the timing of providing information to the outside auditors, because "in none" of Kearney's prior interviews did Kearney make those claims); FM 13 (alleging that Kearney testified falsely during the second trial that Corigliano had told Kearney that unsupported topside adjustments were necessary because Forbes wanted CUC's reported earnings per share to meet Wall Street targets, because Kearney acknowledged that he did not testify to that particular conversation during the first trial, and did not mention it in his prior interviews).

Forbes' claim that omission equals inconsistency equals perjury does not even get to first base.  For instance, with respect to the final allegation, there is nothing inconsistent between Kearney's pre-trial statements that Corigliano selected a particular quarterly EPS number during a conversation with Kearney, and Kearney's trial testimony that Corigliano told Kearney that Forbes directed Corigliano to publicly report a particular quarterly EPS number.  Corigliano has testified that, following his promotion to the position of Chief Financial Officer, Corigliano took his marching orders regarding the fraud directly from Forbes.  FTTr. 6193-96, 6428-30, 6455-56, 6520-21, 6572-73, 6588-94, 6605, 6714-16, 8443-44.

[4]  In this regard, Forbes cites to a number of interview notes which purport to recite that Kearney stated that he attended meetings about the unsupported topside adjustments with persons other than Bell.  FM 3.  Forbes cites only a single set of notes, taken by former AUSA Mark Winston, which purport to recite that Kearney denied meeting with Bell to discuss the topsides.  FM 3,
(continued...)

Interview notes which reflect that Kearney stated that he met with and discussed the consolidation process with Corigliano and Sabatino do not exclude the possibility that Kearney also discussed that subject with Bell.  See United States v. Borkoski, 154 F. Supp. 2d 262, 266-67, 270-71 (D. Conn. 2001) (investigatory report which stated that the witness had an incriminating conversation with the defendant's co-conspirator on a particular date, but which did not mention the defendant, "does not conclusively preclude the possibility that [the defendant] was in the room with [the co-conspirator] at the time of the . . . conversation"); United States v. Verser, 916 F.2d 1268, 1270-71 (7th Cir. 1990) ("mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony").

Forbes also points to notes which purport to state that Kearney had "no evid." or had "nada" regarding Forbes.  FM 3-4. With respect to latter, the author of that note, SEC attorney Matthew Greiner, contradicted Forbes' current interpretation that

---

[4](...continued)
citing Exhibit 6 at XMW004.  The referenced notation, however, addresses "monthly results," not the quarterly meetings about topside adjustments.  Id.  This notation is therefore easily squared with Kearney's testimony about his discussion of topside adjustments with Bell.

Although Forbes subpoenaed Winston for the second trial, he did not call Winston as a witness.  The record is therefore silent as to whether or not Winston's notation accurately recites what Kearney said.  As discussed below, when other note takers testified in this case about their notes of the Kearney interviews, they explained that certain passages of their notes on which Forbes relies in his present motion could not necessarily be construed to support the interpretation advanced by Forbes.

the notation meant that Kearney had stated that he had no information that implicated Forbes.  Although Forbes called the author of the former notation, SEC attorney David Frohlich, as a witness during the first trial, Forbes never asked Frohlich about his notes from the Kearney interview.  FTTr. 13600-10.  Kearney's purported statement that he had "no evid." regarding Forbes might simply mean that Kearney did not personally observe Forbes participate in the fraud, which is entirely consistent with Kearney's trial testimony that he spoke with others who had personal knowledge of Forbes' involvement.

Forbes cannot sustain his heavy burden of demonstrating perjury by merely pointing to third-party notes purporting to memorialize Kearney's pre-trial statements which omit information about which Kearney testified at the first and second trials.  If that were the law, the Government would violate the Due Process Clause whenever it elicited testimony that is in conflict with the witness's prior statements.  The law, quite reasonably, is to the contrary.  <u>United States v. Bortnovsky</u>, 879 F.2d 30, 33-34 (2d Cir. 1989) (inconsistencies between trial testimony and prior statements should not be confused with perjury, but instead are "a point for the defense counsel to place before the jury for its resolution."); <u>United States v. Lebon</u>, 4 F.3d 1, 2 (1st Cir. 1993) ("[T]he fact that a witness contradicts herself or changes her story does not establish perjury.").[5]  Much less does the

---

[5]  <u>Accord</u> <u>Mason v. Phillips</u>, 548 F. Supp. 674, 675 (S.D.N.Y. 1982) (defendant failed to demonstrate a due process violation based on claimed perjury of a prosecution witness where "the trial record simply establishes that a police officer's trial
(continued...)

mere absence of inculpatory information in a written summary of a witness's prior statement make the witness's trial testimony about that information false, much less knowingly false. Borkoski, 154 F. Supp. 2d at 270-71.

Forbes has failed to prove that Kearney lied at the previous trials about his conspiratorial conversations that implicated Forbes because there are reasonable, innocent explanations for Kearney's apparent omissions.  First, any inconsistencies between Kearney's trial testimony and his prior statements could be the result of mistaken recollection, not intentional falsity, and due process is violated only by intentional falsity.  Glover, 588 F.2d at 879 (rejecting due process claim where the witness's testimony may have been "mistaken by a few months with regard to specific dates"); United States v. Peak, 856 F.2d 825, 830 (7th Cir. 1988) (defendant failed to demonstrate the intentional elicitation of perjury, because the witness's internally inconsistent testimony could have been caused by confusion, imperfect memory, or other mistake); McCarthy v. United States, 2004 WL 1535577 *2 (S.D.N.Y. July 9, 2004) (rejecting due process/perjury claim because the defendant failed to demonstrate that a prosecution witness "actually committed perjury . . . a

---

[5](...continued)
testimony was inconsistent with a previous unsworn statement"); Malcum v. Burt, 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003) ("the fact that a witness contradicts himself or herself or changes his or her story . . . does not establish perjury"; rejecting a due process claim based on inconsistencies in the testimony of the key witness (the victim) in a sexual assault prosecution); Thomas v. Cockrell, 2004 WL 856609, *11 (W.D. Tex., April 16, 2004) ("Perjury is not established merely by . . . conflicts between reports, written statements, and trial testimony of a prosecution witness.").

showing essential to establishment of a due process violation").

Alternatively, any discrepancies may be attributable to the possible failure of the authors of the interview notes to directly question Kearney about his conversations with Bell, and Kearney did not think to, or did not choose to volunteer that information unbidden.  None of the interview notes attached to Forbes' motion identify the questions that were put to Kearney during those interviews.  For instance, the interview notes do not state that Kearney was asked if, and denied that, Bell invoked Forbes' name when discussing topside adjustments.  Forbes merely assumes this premise without demonstrating from the interview notes that it is so.[6]

Nor has Forbes demonstrated that the interview notes summarize Kearney's entire recollection of the events at issue, even assuming that the non-verbatim, often disjointed and abbreviated hand-written notations accurately reflect some of the things that Kearney said during the interviews.  Former AUSA Paul Weissman, the author of several sets of notes on which Forbes relies in this motion, testified that his notes were neither verbatim nor "precise."  STTr. 2649; see also id. at 2654. Rather, Weissman testified that he was merely "attempting to summarize the substance of what the interviewee said, at least in those areas that were of interest to me at that time."  Id. at

_____

[6]  During the first trial, the Government attempted to demonstrate that Kearney did not implicate Forbes during some of his earlier interviews because he was not asked about Forbes. Judge Thompson, however, sustained Forbes' objection to that line of questioning.  FTTr. 9991-92.  As a result, the record is largely silent about Kearney's recollections about what he was asked during the interviews.

2649-50 (emphasis added).  Weissman

> obviously . . . did not write down even the substance of
> everything that [that Kearney said during one of the
> interviews].  I certainly wrote down a lot of it.  And I
> just want to make clear that there may be things that were
> said that are not reflected in the notes.

Id. at 2652.  Weissman testified that, although a particular

passage in his notes accurately reflected what Kearney had said

during a pre-trial interview, "it's not the substance of

everything [that Kearney] told me necessarily with regard to that

subject."  Id. at 2653.  Additionally, Weissman's notes

occasionally summarized his own "understanding of a subject,"

rather than Kearney's statements about the subject.  Id. at 2655.

Because the interview notes fail to capture everything that

Kearney said during the pre-trial interview sessions, Forbes

cannot even demonstrate that Kearney failed to provide

information at those sessions merely by pointing to the

admittedly non-exhaustive hand-written notes.

Even assuming a real contradiction between Kearney's trial

testimony and his pre-trial statements, the jury who heard

Kearney testify in person could reasonably conclude that

Kearney's trial testimony that implicated Forbes was more

credible that Kearney's failure to implicate Forbes during his

pre-trial interviews.  Such a conclusion would be entirely

reasonable, as Kearney, who has not been prosecuted in this case,

has nothing to gain from falsely implicating Forbes.[7]

---

[7]  In this regard, Forbes overstates his case when he claims that
Kearney has been "cooperating with the Government" since 1998.
FM 4.  There is no "cooperation agreement" between Kearney and
the Government because the Government decided early on this case
(continued...)

Forbes also points to contradictions between Kearney and another conspirator, Casper Sabatino, regarding whether Sabatino was present during some of the conspiratorial conversations.  FM 5, n.4.  It is for the jury to resolve any contradictions between the testimony of witnesses, and not, as Forbes suggests, for this Court to determine based on the cold transcript.  See United States v. Gambino, 59 F.3d 353, 365 (2d Cir. 1995) ("even a direct conflict in testimony does not in itself constitute perjury"); United States v. Sanchez, 969 F.2d 1409, 1415 (2d Cir. 1992) (reversing the grant of a new trial based on a claim that conflicting testimony between prosecution witnesses demonstrated perjury because "the differences in testimony presented a credibility question for the jury, at most").[8]

**B.   Forbes Has Failed to Demonstrate That The Government Was Aware of The Alleged Perjury.**

Forbes also fails to satisfy the second prong of his due process claim, that the members of the prosecution team know or should know that Kearney's prior trial testimony that implicated Forbes was intentionally false.  Because the alleged prior inconsistencies and omissions are insufficient to demonstrate

---

[7](...continued)
that Kearney's involvement in the fraud was not sufficiently egregious to merit criminal prosecution.  See FTTr. 9853.  If, as Forbes suggests, Kearney perceived that he would receive favorable treatment from the Government in the form of a decision not to prosecute him by implicating Forbes, he certainly would have done so early on in this investigation.

[8]  Accord, Lombard v. Mazzuca, 2003 WL 22900918, *8 (E.D.N.Y. Dec. 8, 2003) (contradiction between testimony of two witnesses "was a credibility issue for the jury to decide," not a basis for a due process claim); Coe v. Bell, 161 F.3d 320, 343 (6th Cir. 1998) ("mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony").

that Kearney's prior testimony was perjured, they are likewise insufficient to prove that the Government knew about the supposed perjury.  Magnotta v. Berry, 906 F. Supp. 907, 925 (S.D.N.Y. 1995) (witness's prior statements that were not entirely consistent with her trial testimony "failed to demonstrate that the prosecutor knowingly elicited perjury testimony").

As a general matter, Forbes does not contend that members of the prosecution team had personal knowledge that any of Kearney's prior trial testimony was false, as was the situation in many of the inapposite cases that Forbes cites in support of this motion.[9]  For example, when a prosecutor negotiates an agreement with a witness to recommend leniency or withhold or drop criminal

---

[9]  Forbes relies on a series of cases in which the perjury of the prosecution witness was either conceded by the Government, e.g. Giglio v. United States, 405 U.S. 150, 152 (1972) (Government filed an affidavit which confirmed the defense claim that the testimony of a key prosecution witness was false); Napue v. Illinois, 360 U.S. 264, 265 (1959) (former prosecutor filed a petition stating that he had promised a key prosecution witness consideration for his testimony, but the witness had falsely denied such a promise in his trial testimony); United States v. Wallach, 935 F.2d 445, 455 (2d Cir. 1991) (government conceded that a key prosecution witness had committed perjury); United States v. Sanfilippo, 564 F.2d 176, 177 (5th Cir. 1977) (prosecutor told defense counsel that the Government had agreed to drop charges against a key prosecution witness in exchange for his testimony, but the witness repeatedly denied such an agreement during his trial testimony; the prosecutor then falsely claimed in summation that the witness was not subject to prosecution for the dismissed charges), or conceded by the witness himself, United States v. Rivera Pedin, 861 F.2d 1522, 1525-26 (11th Cir. 1988) (witness denied at trial that he spoke to a defense investigator about declining to testify against the defendant in return for a cash payment, but the witness had previously admitted to a government investigator that the witness had engaged in such a discussion).  None of those cases involved a judicial determination that a defendant had sustained his burden of demonstrating perjury or even false testimony merely because of an inconsistency between a witness's trial testimony and a prior statement or alleged prior statement, as Forbes seeks here.

charges in exchange for cooperation, and the witness thereafter testifies that he has no such agreement, the prosecutor <u>knows</u> that the testimony is false, and is obligated to correct it. Since no member of the prosecution team was present during the conspiratorial events related by Kearney, those persons cannot know, as the prosecutors did in the cases cited by Forbes, that the challenged testimony was false. Accordingly, it is typically only testimony about a witness's dealings with the prosecutor, as opposed to the witness's accounts of events involving the charged crime (during which prosecutors and investigators are typically absent) that may serve as the basis for a <u>Napue</u>-type perjury claim.

Forbes identifies only one snippet of Kearney's testimony that conceivably falls into the kind of perjury about which the prosecutors and investigators would know or have reason to know is false. That testimony pertains not to Kearney's conspiratorial conversations which implicated Forbes, but about Kearney's pre-trial interviews with prosecutors and investigators. Forbes contends that the Government knew or should have known that Kearney's testimony about what he said during his prior interviews was false. FM 5-6. This claim also fails.

In addition to being interviewed by prosecutors and law enforcement agents, Kearney was also interviewed by members of the Cendant Audit Committee investigation team. FTTr. 9849-51. Suffice to say, after being interviewed over a dozen times over the course of more than six years about the wide-ranging fraud,

14

and describing numerous events involving scores of different people, it is hardly surprising that Kearney may have innocently lost track of when he first told private or public investigators about his conspiratorial conversations during which Forbes name was invoked. When Kearney testified that he "thinks" that he told the government investigators during his first thirteen interviews about those conspiratorial conversations, or that he "believed" that he mentioned those conversations during his first "two, three, four interviews," his testimony on those points is simply too equivocal to be branded a lie.

Moreover, when Kearney testified that he "answered that way [informing his interlocutors about his conspiratorial conversations in which Forbes was implicated] in several interviews," FM 6, his testimony was undisputably correct, because Kearney had, in fact, previously told investigators "in several interviews" about his conspiratorial conversations in which Forbes had been inculpated, as the exhibits attached to Forbes' motion prove. See Exhibits 24, 25, and 27 to FM. Accordingly, Forbes has failed to demonstrate that the Government knew or should have known Kearney's testimony about his pre-trial interviews was deliberately false. See Wedra v. Thomas, 671 F.2d 713, 717 (2d Cir. 1982) (defendant failed to demonstrate that a prosecution witness testified falsely at trial that he was promised no consideration by the prosecution in exchange for his testimony, even though the witness received such consideration shortly after he testified).

15

C.    **No Due Process Violation Occurred Because The Grounds for Forbes' Attacks on Kearney's Testimony Were Revealed to Forbes.**

Forbes does not even attempt to satisfy, because he cannot, the third prong of a due process/perjury claim: that the grounds for demonstrating the supposed false testimony was concealed from the defense.  All of the information on which Forbes now grounds his claim of perjury has been disclosed by the Government to Forbes.  Harris v. Artuz, 288 F. Supp. 2d 247, 261 (E.D.N.Y. 2003) (petitioner failed to make out a Napue/due process violation where "the prosecutor did not withhold evidence from the defense").  Even knowing elicitation of perjured testimony – which has not happened here -- does not violate due process rights if the evidence which demonstrates that the testimony was false is available for use during cross-examination during trial.  McCarthy, 271 F.3d at 399 (rejecting a due process claim where defense counsel addressed the conflicting testimony on cross-examination; "[t]he jury was entitled to weigh the evidence and decide the credibility issues for itself"); United States v. Joyner, 201 F.3d 61, 82 (2d Cir. 2000) ("cross-examination and jury instructions regarding witness credibility will normally purge the taint of false testimony").

As Forbes repeatedly acknowledges, FM 5-8, he confronted Kearney on cross-examination with the interview notes, seeking to show that Kearney's trial testimony about the conspiratorial statements at issue was fabricated because the interview notes did not reflect those statements.  During the second trial, Forbes also presented AUSA Weissman as a defense witness in an

effort to impeach Kearney's trial testimony.  STTr. 2678-87.

Because Forbes has been given carte blanche access to those

notes, his reliance on cases in which the basis for a perjury

claim was withheld from the defense before or during trial are

inapposite.[10]  As the Second Circuit has explained:

> We have always assumed, though never expressly held, that
> perjured testimony must have remained undisclosed during
> trial in order to require reversal of a conviction.  This
> position is consistent with our long-held view that when
> perjury is introduced at trial, the subsequent conviction is
> to be reversed only if there is reason to believe that the
> verdict was based on the false testimony.  Once the perjury
> is disclosed during trial, however, there is less likelihood
> that the verdict was tainted by the false evidence.

United States v. Blair, 958 F.2d 26, 29 (2d Cir. 1992) (internal

citations omitted).

Forbes' ability to attack Kearney's testimony at the third

---

[10]    Cf. Giglio, 405 U.S. at 152-53 (prosecution failed to
disclose to the defense that the testimony of a key prosecution
witness about the consideration that he received in exchange for
his testimony was false); Miller v. Pate, 386 U.S. 1, 5-6 (1967)
(prosecution, which presented testimony that the stains on a pair
of shorts attributed to the defendant were blood stains,
admittedly knew before trial that the stains were caused by
paint, and had failed to disclose that fact to the defense);
Alcorta v. Texas, 355 U.S. 28, 31 (1957) (prosecutor testified at
a post-conviction hearing that a key prosecution witness had
admitted to the prosecutor that his trial testimony was false,
and that the prosecutor had not disclosed the witness's admission
to the defense); Pyle v. Kansas, 317 U.S. 213, 214 (1942)
(petitioner stated a cognizable claim of a due process violation
where he alleged that "his imprisonment resulted from perjured
testimony, knowingly used by State authorities to obtain his
conviction, and from the deliberate suppression by those same
authorities of evidence favorable to him"); Mooney v. Holohan,
294 U.S. 103, 110 (1935) (prosecution "authorities deliberately
suppressed evidence which would have impeached and refuted the
[perjured] testimony"); United States v. Vozzella, 124 F.3d 389,
391 (2d Cir. 1997) (information known to the Government which
demonstrated the falsity of loan documents which the Government
had presented at trial to prove the truth of the contents of
those documents "did not come to [the defendant's] attention
until after his trial").

trial is the proper remedy for his allegations of perjury, and
the jury is the proper body to resolve any issues regarding the
credibility of Kearney's trial testimony.  Zichetello, 208 F.3d
at 102 (where the defendants had "ample opportunity to rebut [the
witness's] testimony and undermine his credibility . . . [the
reviewing court would not] supplant the jury as the appropriate
arbiter of the truth") (internal citations omitted); accord,
McCarthy, 271 F.3d at 399-400.  This Court need not exclude
highly relevant testimony in order to protect Forbes' due process
rights.[11]

### III. THIS COURT SHOULD NOT RECONSIDER JUDGE THOMPSON'S RULING, OR DEPART FROM THE LAW OF THE CASE THAT FORBES IS NOT ENTITLED TO HAVE INCOMPLETE AND UNADOPTED SUMMARIES OF KEARNEY'S PRIOR STATEMENTS ADMITTED INTO EVIDENCE TO IMPEACH.

Forbes contends that, if Kearney's testimony is not
excluded, he should be permitted to offer into evidence the
disjointed, incomplete summaries of Kearney's prior statements
that were written by other persons and never adopted by Kearney.
As Forbes points out, FM 14, Judge Thompson rejected that
request, and for good reason.  Judge Thompson properly ruled that
Forbes was not permitted to offer into evidence certain notes of

---

[11] By contrast, in Wallach, cited by Forbes, the district court
sustained the government's objection to the presentation of
defense evidence which would have been used to demonstrate that
an essential prosecution witness's testimony was perjured.  935
F.2d at 456.  After the trial, however, the Government conceded
that the witness's testimony had been perjured, thus effectively
conceding that the excluded evidence should have been admitted.
See United States v. Ward, 190 F.3d 483, 491 (6th Cir. 1999) ("We
think Wallach does not apply here, because in that case the
perjured testimony was not brought to the attention of the jury,
whereas here, the court gave the defendant several opportunities
to cross-examine and re-cross examine the witnesses to bring out
any inconsistencies in testimony to the attention of the jury.").

Weissman or SEC attorney Matthew Greiner that were not shown to
and adopted by Kearney, and did not even purport to accurately
summarize Kearney's statements.

As shown above, Weissman testified that his notes did not
purport to precisely record Kearney's interview statements, and
that Kearney never even saw, much less adopted those notes as
accurate recitations of his prior statements.  Judge Thompson
conducted a line by line analysis of Weissman's notes in light of
his testimony about the completeness of those notes.  Judge
Thompson then identified portions of the notes that he concluded
had accurately reflected Kearney's own statements, as opposed to
Weissman's summary of his own understanding of what Kearney had
said.  Judge Thompson permitted Forbes to offer only those
portions of the notes into evidence.  STTr. 2656-60.

Greiner testified that he could recall virtually nothing
about interviewing Kearney.  He did not recall attending any
interviews of Kearney, STTr. 2666, had no recollection of
anything that Kearney said at any interview, _id._, and had
forgotten Kearney's name by the time of the second trial.  _Id._
Although he was able to tentatively authenticate a set of his own
notes, _id._ at 2667, the notes did not refresh his recollection of
the Kearney interview "in any regard."  _Id._ at 2668-69.  Greiner
did not remember asking Kearney any questions about Forbes during
the interview, and Forbes was not even a focus of Greiner's
investigation into the Cendant fraud when the interview was
conducted.  _Id._ at 2670.

When Forbes' counsel sought Greiner's confirmation that a

19

portion of his notes reflected that Kearney had affirmatively stated that he knew "nada" about Forbes, Greiner declined to provide the confirmation and explained that the notation could have meant that Kearney merely said nothing during the interview about Forbes. Greiner "just [didn't] know exactly what Mr. Kearney said." Id. at 2671-74. Based on that testimony, Judge Thompson concluded that Forbes had failed to meet his burden of showing that Greiner's reference to "nada about Walter" could be attributed to Kearney. Id. at 2676.[12]

Judge Thompson's careful parsing of Weissman's notes, and his exclusion of the "nada about Walter" portion of Greiner's notes, was eminently correct, and should not be reconsidered by this Court. In United States v. Almonte, 956 F.2d 27 (2d Cir. 1992) the Court of Appeals affirmed the district court's denial of a defense request to impeach the testimony of a DEA agent by reference to a memorandum written by an AUSA. Like former AUSA Weissman in this case, the AUSA in Almonte testified that his memorandum was merely a "shorthand summary" of the agent's statements to the AUSA. 956 F.2d at 29. The Second Circuit applied the well-settled rule that a witness may not be impeached by a mere "summary" of his prior statement unless the witness "endorses" the summary or the summary consisted of a verbatim transcript of the witness' statements. Id., citing United States

---

[12] Forbes now contends that Greiner's testimony about that notation was "improbable," FM 14, n. 10, but he fails to show that Judge Thompson erred by making a factual finding that was fully supported by Greiner's testimony. United States v. Ansaldi, 372 F.3d 118, 129 (2d Cir. 2004) (credited testimony at suppression hearing supported district court's finding that the consent given to enter the house was voluntary).

v. Leonardi, 623 F.2d 746, 757 (2d Cir. 1980); cf. Palermo v. United States, 360 U.S. 343, 350 (1959) (it would be "grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations").

Forbes has already received more than he is entitled to under Almonte, because Judge Thompson has permitted Forbes to try to impeach Kearney by reference to the hand-written notes of others.  Judge Thompson properly drew the line, however, by declining Forbes' request to introduce the prior statements into evidence.

**CONCLUSION**

The Government requests that Forbes' Third Trial Motion <u>In Limine</u> No. 6 be denied.

                         Respectfully submitted,

                         CHRISTOPHER J. CHRISTIE
                         Special Attorney
                         U.S. Department of Justice

                         *Norman Gross/s*

                         NORMAN GROSS
                         Federal Bar Number 24933
                         MICHAEL MARTINEZ
                         Federal Bar Number PHV0423
                         MARK E. COYNE
                         Federal Bar Number PHV01079
                         Special Attorneys
                         U.S. Department of Justice
                         970 Broad Street
                         Room 700
                         Newark, N.J.  07102
                         (973) 645-2701


Newark, New Jersey
Date: May 22, 2006

### CERTIFICATE OF SERVICE

    The undersigned certifies that on this day I caused to be served a copy of the Government's Opposition to Forbes' Motion to Preclude the Government from Eliciting Supposedly False Testimony from Kevin Kearney Or, in the Alternative, for Leave to Present Documentary Evidence to Impeach Supposedly False Testimony by Kevin Kearney (Opposition to Forbes Third Trial Motion <u>In Limine</u> No. 6) via email on:

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901
(202) 434-5005
bsimon@wc.com


*Norman Gross/s*
_____
NORMAN GROSS
U.S. Department of Justice


Dated: May 22, 2006
      Camden, New Jersey