UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AHN) |
| | : | |
| v. | : | May 22, 2005 |
| | : | |
| WALTER A. FORBES | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT WALTER A. FORBES' MOTION TO PRECLUDE EVIDENCE REGARDING CENDANT'S RESTATEMENT**

<u>(Opposition to Forbes Third Trial Motion In Limine No. 9)</u>

**ARGUMENT**

Forbes again moves, as he did before the first and second trials, to preclude admission of: (i) Cendant Corporation's August 1998 restatement of its financial results (the "Restatement"), filed with the SEC; (ii) evidence about the amounts by which Cendant restated various financial results; and (iii) testimony about the fact that Cendant restated its financial results after the fraud was publicly disclosed. Although the Government will not seek to offer into evidence on direct examination during its case-in-chief in the third trial either the Restatement or the amounts by which Cendant restated its financial results, the Government will seek to offer, consistent with Judge Thompson's prior rulings, testimony "about the fact of the Restatement." Forbes has neither demonstrated cause for this Court to reconsider Judge Thompson's previous

rulings on these matters, see Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998), nor shown that this Court should depart from the law of the case, see United States v. Uccio, 940 F.2d 753, 758 (2d Cir. 1991).

Before the first trial, Judge Thompson denied Forbes' Motion In Limine No. 7, First Trial Transcript ("FTTr.") 5-6. During the first trial, Cendant's former Chief Financial Officer Michael Monaco testified that, after the fraud was revealed to him by two employees of the former CUC in April 1998, the Cendant Audit Committee hired the law firm of Wilkie, Farr and Gallagher ("WFG") to conduct an investigation into the fraud. WFG in turn hired the accounting firm of Arthur Andersen ("AA") to assist in the investigation. FTTr. 1452-54.

As CFO, Monaco was responsible for Cendant's publicly reported financial statements, including the financial statements contained in Cendant's annual report filed on SEC Form 10-K on March 31, 1998. He was deeply involved in the Audit Committee investigation of the fraud. FTTr. 1455-57. Monaco was tasked with overseeing the restatement of Cendant's financial results to correct the fraudulent misrepresentations of those results caused by the charged conspiracy in this case. FTTr. 1457. To that end, Monaco and his staff personally reviewed a wide range of documents from the former CUC, including the general ledger, journal entries to the general ledger, and supporting documents

for the journal entries, such as invoices and cancelled checks. FTTr. 1458-59.

The Audit Committee Investigation revealed that Cendant's March 31, 1998 Form 10-K filing contained material inaccuracies, and that the company's financial results had to be restated "to make it right." FTTr. 1466-67. During the first trial, Monaco identified Cendant's amended Form 10-K report (the Restatement), "representing the restated financials of the company." FTTr. 1467-68. Although the Government offered the Restatement into evidence during the first trial, Judge Thompson excluded that document, as well as evidence regarding the amount of the restated financial results, "unless the defense opens the door." FTTr. 1468, 1765-66. Thereafter, the Government did not offer the Restatement into evidence. FTTr. 6918. At the conclusion of the first trial, the Court gave a limiting instruction, directing the jury to consider the evidence about the Restatement (such as Monaco's testimony about the origins and nature of the Audit Committee Investigation) only in determining whether any of CUC's or Cendant's publicly issued financial statements were false or material. FTTr. 16397.

Bear Stearns securities analyst Steven Kernkraut studied and reported on CUC's and then Cendant's financial results and predicted future results. He testified during the second trial that Cendant's Restatement caused him to change his mind about

recommending Cendant's stock to his customers, and changed his opinion about the "price target" and earnings projections for Cendant's stock.  Second Trial Transcript ("STTr.") 337-38.  At the conclusion of the second trial, Judge Thompson gave a limiting instruction regarding the evidence about the Restatement that was similar to that given at the conclusion of the first trial.  STTr. 3801.

As Judge Thompson correctly determined, and contrary to Forbes' contentions, FM 6-9, the Restatement was not created solely in anticipation of litigation.  Rather, it was created to fulfill Cendant's statutory obligation to accurately state its financial results for the fiscal years ending January 31, 1996, January 31, 1997, and December 31, 1997 to the SEC and the investing public.  15 U.S.C. § 78j-1(b) (required response to audit discoveries).  For that reason, Judge Thompson properly concluded that the evidence about the issuance of the Restatement is relevant to prove that the previous financial statements issued by CUC and Cendant were materially inaccurate.  See In re Bio-Technology General Corp. Securities Litigation, 380 F. Supp. 2d 574, 586 (D.N.J. 2005) (finding that private securities fraud complaint "has adequately pled allegations establishing materially false or misleading statements" where the plaintiff "alleged a restatement of [prior disclosures], a fact which in itself establishes the falsity of the original statements for

purposes of surviving a motion to dismiss"); In re Atlas Air Worldwide Holdings, Inc. Securities Litigation, 324 F. Supp. 2d 474, 486-487 (S.D.N.Y. 2004) ("Although a restatement is not an admission of wrongdoing, the mere fact that financial results were restated is sufficient basis for pleading that those statements were false when made."); In re Firstenergy Corp. Securities Litigation, 316 F. Supp. 2d 581, 595 (N. D. Ohio 2004)(because "the purpose of a restatement is to correct an error in a previously-issued financial statement . . . . a restatement says that the prior financial statement was false"); In re Cylink Sec. Litig., 178 F. Supp. 2d 1077, 1084 (N. D. Cal.2001) ("the mere fact that . . . . statements were restated at all" is sufficient to establish falsity at the pleading stage).

 Forbes nevertheless contends that the amount of the Restatement is irrelevant to any issue in this case because it includes adjustments for accounting errors as well for "irregularities" (fraud), included adjustments to the former HFS as well as to the former CUC business units, and the Government's experts could not equate any of the restated financial results with any of the quantitative assertions in the indictment or to the Audit Committee Report.  FM 3, 12-13.

 This claim fails.  The Restatement is not being offered into evidence by the Government on direct examination during its case-

in-chief, so nothing in the Restatement is being offered for the truth of the matter asserted. Thus, the Government will not rely on the Restatement in order to prove an allegation in the indictment that, for instance, in CUC's quarterly report on Form 10-Q for the third fiscal quarter ending October 31, 1997, "total revenue was stated to be approximately $775 million when, in fact, total revenue was approximately $44 million less." Indictment, Count 2, ¶2(a). That allegation will be proven by the testimony of cooperating witnesses and the Government's expert witness, certified public accountant Brian Heckler.

Even though the Restatement itself is not being offered, evidence that Cendant's senior management took the self-critical step of admitting that the company's previously released financial statements were materially false is relevant to prove the elements of the crimes of making false statements in reports required to be filed with the SEC, charged in Counts 2 and 3 of the redacted indictment. Those elements include "the SEC report to which that count pertains contained a false statement of fact," and "the false statement of fact was material." STTr. 3752 (jury instructions regarding elements of Counts 2 and 3).

That the Restatement does not identify the particular false statements identified in Counts 2 and 3 of the indictment does not render evidence that Cendant restated its financial results irrelevant. Indeed, Forbes has an uphill battle in demonstrating

6

irrelevance. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence is relevant if it merely "alters the probabilities" of the existence of a consequential fact, and need not make the proposition more probable than not. Weinstein's Federal Evidence ("Weinstein"), § 401.04[2][b] (2d ed., 2006); see United States v. Schultz, 333 F.3d 393, 415 (2d Cir. 2003); United States v. Schneider, 111 F.3d 197, 202 (1st Cir. 1997). This is a lenient standard. Weinstein, § 401.04[2][c]. "The evidence need only alter the probabilities of a proposition; it need not sway the balance to any particular degree." Id. at § 401.04[2][c][ii]; see Doe v. New York City Dep't of Social Services, 649 F.2d 134, 147 (2d Cir. 1981).

Here, the fact that Cendant, after engaging a prominent law firm and what was then a Big 5 accounting firm to undertake a top to bottom review of the former CUC's financial results, FTTr. 2127, decided to restate its financial results makes it more likely that the previously disclosed financial results were false and material than if Cendant had never taken that self-critical step. E.g., Bio-Technology General Corp. Securities Litigation, 380 F. Supp. 2d at 586; In re Atlas Air Worldwide Holdings, Inc. Securities Litigation, 324 F. Supp. 2d at 486-487.

Because the Government will not seek the admission of the Restatement or the results of the Restatement on direct examination during its case-in-chief, Forbes' challenges to the reliability of those results is beside the point.  Even if the Government was seeking admission of the Restatement or its results, Forbes' challenges would go only to the weight of the evidence, not its admissibility.  Although Forbes advances reasons to distrust the results, there are countervailing reasons to credit them.  For instance, Forbes contends that Cendant's senior management was motivated to falsely put the blame for the fraud on Forbes, and that the Restatement was therefore infected with the anti-Forbes bias of the Cendant management team.  FM 7.  Nothing in the Restatement purports to blame Forbes for the accounting irregularities identified in that document.

Forbes points to the fact that the Restatement was issued after Cendant and its senior managers (including Forbes) had been repeatedly sued by private individuals, and were under investigation by the SEC and the U.S. Attorney's Office for the District of New Jersey.  FM 7.  Forbes' assertion that Cendant management intentionally inflated the amount of the Restatement for business reasons, FM 8-9, is fanciful and unsupported by testimony or other evidence.  Any public admission that Cendant's and CUC's previously issued financial statements were materially false dramatically increased the likelihood of liability in the

8

private lawsuits, as well as the likelihood of additional sanctions imposed by the SEC and other law enforcement agencies.

Forbes claims that the Restatement was "based, in part" on the Audit Committee investigation, which, according to Forbes, was also slanted against him. FM 9. Again, Forbes declines to mention that the Audit Committee Report all but exonerated him. Exhibit A hereto. Additionally, evidence about what Cendant management did after they were informed of the fraud is relevant to repudiate any notion that those persons failed to act responsibly and properly, and to repudiate any claim that the testimony of those persons should not be discredited based on their response to the fraud after it was disclosed. See United States v. Langford, 990 F.2d 65, 70 (2d Cir. 1993) (events occurring outside the time frame of the charged conspiracy can be relevant to show the history and background of the crime). Absent proof that Cendant restated its financial results, the jury will be left with the incorrect belief that Cendant's senior management, including people such as Monaco who will testify again at the third trial, discovered the fraud but did not take prompt steps to inform the investing public and the SEC about CUC's true financial results during the years in question. See United States v. Panebianco, 543 F.2d 447, 455 (2d Cir. 1976) (where the defendant creates for a jury an incomplete picture of a Government witness's credibility, the Government is entitled to

set the record straight).

    Finally, Forbes argues that evidence about the Restatement should be excluded as overly prejudicial under Fed. R. Evid. 403. FM 14-15. He claims that the "magnitude of the Restatement . . . would inflame the jury." FM 14. Because the Government will not put the "magnitude of the Restatement" before the jury, there will be no inflamation on that ground. Forbes' other Rule 403 complaint, that admission of the Restatement would require "a mini-trial regarding the components of the Restatement and the differences between the Restatement and the indictment," is likewise of no concern, because the Government will not offer the Restatement into evidence unless Forbes opens the door.

**CONCLUSION**

The Government respectfully requests that the Court deny Forbes' Third Trial In Limine No. 9.

> Respectfully submitted,
>
> CHRISTOPHER J. CHRISTIE
> Special Attorney
> U.S. Department of Justice
>
> *Norman Gross/s*
>
> NORMAN GROSS
> Federal Bar Number 24933
> MICHAEL MARTINEZ
> Federal Bar Number PHV0423
> MARK E. COYNE
> Federal Bar Number PHV01079
> Special Attorneys
> U.S. Department of Justice
> 970 Broad Street
> Room 700
> Newark, N.J.  07102
> (973) 645-2701

Newark, New Jersey
Date: May 22, 2006

**EXHIBIT A**

(PORTION OF AUDIT COMMITTEE REPORT OF CENDANT CORPORATION, YY, 1998)

**CERTIFICATE OF SERVICE**

    The undersigned certifies that on this day I caused to be served a copy of the Government's Opposition to Defendant Walter A. Forbes' Motion to Preclude Evidence Regarding Cendant's Restatement (Opposition to Forbes Third Trial Motion <u>In</u> <u>Limine</u> No. 9) via email on:

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901
(202) 434-5005
bsimon@wc.com


                                            *Norman Gross/s*
                                            NORMAN GROSS

Dated: May 22, 2006
       Camden, New Jersey