Richards
(973) 684-4420

**PRIVILEGED & CONFIDENTIAL**
**SUBJECT TO ATTORNEY-CLIENT AND**
**ATTORNEY WORK PRODUCT PRIVILEGES**

**REPORT TO THE AUDIT COMMITTEE**
**OF THE BOARD OF DIRECTORS**
**OF CENDANT CORPORATION**

**PREPARED BY:**

**WILLKIE FARR & GALLAGHER**

-and-

**ARTHUR ANDERSEN LLP**

August 24, 1998

reasons for the historical understatement of the cancellation
reserve could not be determined.

     5.   Other Irregularities

     Other accounting irregularities and improper accounting
practices, including those relating to the commissions payable
account and various miscellaneous improper adjustments and
entries, are detailed in Section XII below.

     6.   Information as to Which Persons
           Had Knowledge of Irregularities

     Although, as detailed in the Report, the numerous
unsupported entries were effected in many instances by employees
of CUC subsidiaries (often with knowledge that there was no
apparent support for the making of such entries), the directions
for the making of the improper entries came from CUC corporate
headquarters.

     The information obtained during the investigation
indicates that Cosmo Corigliano, Chief Financial Officer of CUC
since early 1995, and prior thereto Corporate Controller of the
Comp-U-Card division, directed the unsupported topside
adjustments to increase quarterly income and knew about or
directly participated in certain of the other irregular
activities discussed in this Report.  The evidence also indicates
that Anne Pember, the Controller of CUC (and formerly Corporate
Controller of the Comp-U-Card division), who reported directly to
Corigliano, gave the directions that resulted in the improper
reversal of a substantial amount of merger reserves into income
and the recording of other improper entries.

-14-

Certain other financial and accounting personnel including Casper Sabatino, Vice President of Accounting and Financial Reporting; Kevin Kearney, Director of Financial Reporting from July, 1995 to March, 1997, after which he became a Controller of a CUC subsidiary; Steven Speaks, Controller of the Comp-U-Card division after June, 1997; and Mary Sattler, Supervisor of Financial Reporting for CUC, all indicated that they participated in certain of the irregular activities and directed others to record improper entries which are discussed in this Report.

More than 20 present and former employees from various CUC business units in the United States and Europe, including the major operating units of the company, have said that they were instructed by persons at CUC corporate headquarters to engage in the activities discussed in this Report.

E. Kirk Shelton, the President and Chief Operating Officer of CUC, to whom Corigliano reported, made himself available for several interviews. Shelton reported to Walter Forbes, the Chief Executive Officer and Chairman of the Board. Shelton denied knowledge of any accounting irregularities, including those discussed in the Report. There is evidence, which Shelton disputes, that in March, 1998 he advanced a plan that involved the improper reversal of merger reserves into revenues in 1998. Moreover, Shelton has stated that he authorized more than $500,000 of airplane expenses incurred by Walter Forbes in 1995 and 1996 to be charged to the reserve established in connection with the CUC/HFS merger in 1997. This

-15-

was not a proper charge and has been reversed in the Restatement. Shelton said that when he authorized the charge he did not know how it related to the merger. He said he was told to do so by Corigliano. Information pertaining to Shelton's possible knowledge of certain other matters that were investigated is discussed below.

Walter Forbes made himself available for an interview on two occasions and denied knowledge of any accounting irregularities and improper practices. The Report discusses Walter Forbes' statements with respect to the matters that were investigated and certain other information pertaining thereto.

Also discussed in the Report is the evidence pertaining to whether or not other persons may have had knowledge of irregularities or other improper practices.

Neither Pember nor Corigliano were able to be interviewed for reasons described in the Report. Had we been able to interview these individuals, they might have contradicted statements made about them by others, provided explanations for their actions, indicated the extent, if any, to which they acted at the direction or with the knowledge of others or generally provided additional information relevant to an understanding of the matters investigated. We also were unable to interview Stuart L. Bell for reasons discussed in this Report.[12]  He was the Chief Financial Officer from 1981 to early 1995.  Corigliano

---

12    See n.8, supra.

-16-

reported to Bell prior to becoming Chief Financial Officer.  Paul J. Hiznay, former Accounting Manager of the Comp-U-Card division, who reported to Pember, also could not be interviewed for reasons discussed earlier.[13]

---

[13]    See n.7, supra.