UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA      :    No. 3:02CR00264 (AHN)
                              :
        v.                    :
                              :     May 23, 2006
                              :
                              :
WALTER A. FORBES              :


GOVERNMENT'S MEMORANDUM IN OPPOSITION TO FORBES' MOTION FOR
PERMISSION TO EXAMINE MR. CORIGLIANO ON POLYGRAPH EXAMINATIONS

<u>(Opposition to FORBES THIRD TRIAL MOTION IN LIMINE 19)</u>


CHRISTOPHER J. CHRISTIE
NORMAN GROSS
MICHAEL MARTINEZ
MARK E. COYNE
Special Attorneys
U. S. Department of Justice
970 Broad Street
Room 700
Newark, N.J.  07102
(973) 645-2701

**TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

I.    AS JUDGE THOMPSON PROPERLY CONCLUDED, THE SUPPOSED "LIMITED
      PURPOSES" FOR WHICH FORBES SEEKS TO IMPEACH CORIGLIANO BY
      REFERENCE TO HIS POLYGRAPH EXAMINATIONS DO NOT JUSTIFY THE
      PROPOSED INQUIRY. . . . . . . . . . . . . . . . . . . . 2

II.   AS JUDGE THOMPSON PROPERLY CONCLUDED, FED. R. EVID. 613(a)
      DOES NOT AUTHORIZE THE ATTEMPTED IMPEACHMENT OF CORIGLIANO
      ABOUT HIS POLYGRAPH EXAMINATIONS. . . . . . . . . . . . 9

III.  AS JUDGE THOMPSON PROPERLY CONCLUDED, FED. R. EVID 608(b)
      DOES NOT AUTHORIZE FORBES TO ATTEMPT TO IMPEACH CORIGLIANO
      BY REFERENCE TO HIS PRIVATE POLYGRAPH EXAMINATION.  . . 11

IV.   JUDGE THOMPSON ALSO PROPERLY CONCLUDED THAT FORBES' EFFORTS
      TO CROSS-EXAMINE CORIGLIANO REGARDING POLYGRAPH EXAMINATIONS
      WOULD VIOLATE CORIGLIANO'S LAWYER-CLIENT PRIVILEGE.  . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . 22

## INTRODUCTION

For the fourth time, Forbes seeks permission to cross-examine Cosmo Corgliano regarding polygraph examinations that were arranged by his lawyers without the knowledge or participation of any Government official.[1]  Judge Thompson denied all of Forbes' prior requests to inquire into this area. Although Forbes briefly acknowledges those prior rulings, FM 1 n.1, his present motion proceeds as if he is raising this issue for the first time.  In his present motion, Forbes does not even attempt to demonstrate that this Court should reconsider Judge Thompson's repeated denials of this claim, see Sequa Corp. v. GBJ

---

[1]  Judge Thompson's rulings on this issue are described in the Government's Amended Opposition to Forbes' Third Trial Motion No. 2, Docket 2232 at 29-31.  In April 2003, the Government informed Forbes that Corigliano's lawyers had told the Government during an attorney proffer session, when Corigliano was still denying any involvement in the charged fraud in this case, that Corigliano had taken a private polygraph examination and had "done very well."  The Government reiterated this disclosure in a discovery letter dated June 30, 2004.  Exhibit 1 to Forbes' Memorandum in Support of Third Trial Motion No. 19 ("FM").

Corigliano's lawyers later told the Government that Corigliano had taken a second polygraph examination, but provided no additional information about it.  No Government official was present at either of Corigliano's private polygraph examinations, or had advance knowledge that they would occur.  The Government has never received any documents that may have been generated as a result of the examinations.  Corigliano and his attorneys have provided the Government no other information about the polygraph examinations other than that the polygrapher had died before the first trial in this case.  The Government thus has no additional information to provide to Forbes about Corigliano's polygraph examinations.

Corp., 156 F.3d 136, 144 (2d Cir. 1998),[2] or that this Court

should depart from the law of the case, see United States v.

Uccio, 940 F.2d 753, 758 (2d Cir. 1991).  In any event, Forbes'

present claims are meritless on their own terms.

**ARGUMENT**

I.    **AS JUDGE THOMPSON PROPERLY CONCLUDED, THE SUPPOSED "LIMITED
      PURPOSES" FOR WHICH FORBES SEEKS TO IMPEACH CORIGLIANO BY
      REFERENCE TO HIS POLYGRAPH EXAMINATIONS DO NOT JUSTIFY THE
      PROPOSED INQUIRY.**

      Judge Thompson correctly ruled that Forbes is not entitled

to question Corigliano about the private polygraph examinations

he took without the Government's insistence or knowledge, or

about his lawyers' assessment that Corigliano "did very well" on

the first of those examinations.  Forbes' Memorandum in Support

of Third Trial Motion In Limine No. 19 ("FM") at 5-8.[3]  Judge

---

[2]  A reconsideration motion will be denied unless the
"moving party can point to controlling decisions or data that the
court overlooked -- matters, in other words, that might
reasonably be expected to alter the conclusion reached by the
court." United States v. Fell, 372 F. Supp. 2d 773, 780 (D. Vt.
2005).  "[T]he function of a motion for reconsideration is to
present the court with an opportunity to correct manifest errors
of law or fact or to consider newly discovered evidence."
LoSacco v. City of Middletown, 822 F. Supp. 870, 876-77 (D. Conn.
1993)(internal quotation marks omitted), aff'd, 33 F.3d 50 (2d
Cir. 1994).

[3]  Forbes is coy about whether he seeks to question
Corigliano about the results of the polygraph examinations.  He
states that he is "not now seeking to introduce the results of
Mr. Corigliano's polygraph examinations for their substantive
correctness," FM 5, n.3 (emphasis added).  He leaves the door
open to seeking the admission of the polygraph results for some
other, unidentified purpose.

2

Thompson did not err.

Evidence regarding a defendant's or a witness's polygraph examinations is generally inadmissible because "there is simply no consensus that polygraph evidence is reliable.  To this day, the scientific community remains extremely polarized about the reliability of polygraph techniques."  United States v. Scheffer, 523 U.S. 303, 309-10 (1998) (internal citations and punctuation omitted).  "[B]ecause polygraph evidence is likely to be shrouded with an aura of near infallibility . . . such evidence is likely to mislead the jury."  United States v. MacEntee, 713 F. Supp. 829, 830-31 (E.D. Pa. 1989) (internal punctuation and citation omitted) (excluding defense impeachment evidence that a prosecution witness "flunked" a polygraph examination)).  Thus,

> [b]y its very nature, polygraph evidence may diminish the jury's role in making credibility determinations. . . . Unlike other expert witnesses who testify about factual matters outside the jurors' knowledge, such as the analysis of fingerprints, ballistics, or DNA found at a crime scene, a polygraph expert can supply the jury only with another opinion, in addition to its own, about whether the witness was telling the truth.  [One] may legitimately be concerned about the risk that juries will give excessive weight to the opinions of a polygrapher, clothed as they are in scientific expertise. . . .

Scheffer, 523 U.S. at 313-14 (internal citation and footnote omitted).[4]  For that reason, polygraph evidence is routinely

---

[4]  Before the Supreme Court's decision in Daubert v. Merrell-Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the law of this Circuit suggested that polygraph evidence was per se inadmissible.  E.g., United States v. Rea, 958 F.2d 1206, 1224
(continued...)

excluded pursuant to Fed. R. Evid. 403 because its probative value is slight, but it carries a substantial risk of confusing and misleading the jury. E.g., United States v. Kwong, 69 F.3d 663, 668 (2d Cir. 1995) (affirming exclusion of polygraph evidence by operation of Rule 403, and referring to polygraph evidence as a "Pandora's Box").[5]

Judge Thompson properly rejected Forbes' recycled claim that cross-examination of Corigliano is necessary to vindicate Forbes' confrontation rights. "Generally speaking, the Confrontation Clause guarantees an **opportunity** for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (emphasis in original). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is

---

[4](...continued)
(2d Cir. 1992). Following Daubert, this Circuit has yet to hold that polygraph results have achieved a level of reliability that justifies their admission into evidence for any purpose. United States v. Messina, 131 F.3d 36, 42 (2d Cir. 1997) (affirming the exclusion of polygraph evidence offered by the defense based on the district court's finding that the "polygraph evidence actually presented was unworthy of credit"); United States v. Kwong, 69 F.3d 663, 667-68 (2d Cir. 1995) (district court properly excluded polygraph evidence offered by the defendant).

[5] The courts are particularly skeptical of polygraph examinations, such as those administered to Corigliano, which are conducted by persons hired by suspects of criminal activity, without prior notice to the Government. United States v. Thomas, 167 F.3d 299, 307-08 (6th Cir. 1999) ("We have repeatedly held that unilaterally obtained polygraph evidence is almost never admissible under Evidence Rule 403.") (internal quotation marks omitted).

4

concerned to impose reasonable limits on such cross-examination
based on concerns about, among other things, harassment,
prejudice, confusion of the issues, the witness' safety, or
interrogation that is repetitive or only marginally relevant."
Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

Judge Thompson properly exercised his discretion under Rule
403 by precluding cross-examination of Corigliano regarding the
polygraph examinations.[6]  The same reasons that support the
routine exclusion of defense proffered evidence regarding
polygraph examinations as substantive evidence (unreliability,
confusion, and usurpation of the jury's credibility function),
also support the preclusion of defense impeachment by reference
to polygraph examinations.  Courts have consistently prevented
criminal defendants from seeking to impeach a prosecution
witness, either through cross-examination or by the presentation
of extrinsic evidence regarding the witness's submission to a
polygraph examination.  See United States v. Lopez, 885 F.2d
1428, 1437-38 (9th Cir. 1989) (precluding defense cross-
examination by reference to the witness's reaction to another
person's polygraph results because "many of the same concerns

---

[6]  As Judge Thompson concluded during the first trial, "to
have someone else who has some aura of expertise on the question
of whether someone is lying or not seems to me to really violate
Rule 403."  First Trial Transcript ("FTTr.") 7800.  See also
FTTr. 7814 ("I really don't see the probative value of a
polygraph evidence being -- well, I see it being substantially
outweighed by the prejudicial effect.").

[given the generally suspect nature of polygraph evidence] would
be present that are sought to be avoided in excluding evidence of
polygraph results as direct evidence").[7]  Particularly where
Forbes has a wealth of other evidence with which to cross-examine
Corigliano for days on end,[8] Judge Thompson did not violate
Forbes' confrontation rights by precluding cross-examination of
Corigliano about the polygraphs.  United States v. Brown, 289
F.3d 989, 993-94 (7th Cir. 2002) (affirming the preclusion of
cross-examination based on a witness's failure to appear for a
scheduled "voice stress test" (which is similar to a polygraph)
where the defendant had "ample opportunity to cross-examine [the

---

[7]  Accord United States v. Wills, 88 F.3d 704, 714 (9th Cir.
1996); United States v. Williams, 95 F.3d 723, 728-30 (8th Cir.
1996) (affirming exclusion of evidence regarding a polygraph
examination taken by the principal prosecution witness, offered
to impeach his testimony); United States v. Ferris, 719 F.2d
1405, 1408 (9th Cir. 1983) (affirming the exclusion of
"unfavorable results of a polygraph test given a Government
witness"); United States v. Bagsby, 489 F.2d 725, 726 (9th Cir.
1973) (affirming the preclusion of defense cross-examination of
an accomplice regarding his polygraph examination results);
United States v. Johnson, 904 F. Supp. 1303, 1311 (M.D. Ala.
1995) (granting the Government's motion in limine to preclude the
impeachment of a prosecution witness by reference to his
performance on a polygraph examination).  See generally United
States v. Crowley, 318 F.3d 401, 417 (2d Cir. 2003) (rejecting
confrontation clause challenge to restrictions on defense cross-
examination); accord United States v. Rahman, 189 F.3d 88, 132
(2d Cir. 1999); King v. Trippett, 192 F.3d 517, 522-25 (6th Cir.
1999)(no confrontation violation by restricting cross-examination
regarding a prosecution witness's polygraph examination).

[8]  See Government's Opposition to Forbes' Third Trial Motion
No. 1, Docket 2268, p.6, n.4; Second Trial Transcript ("STTr.")
1502-2307.

witness] on his failure to cooperate with [the] investigation").

Forbes' reliance on United States v. Lynn, 856 F.2d 430 (1st Cir. 1988) was properly rejected by Judge Thompson.  In Lynn, a witness entered into a cooperation agreement with the Government which required that he take and "successfully complete" a polygraph exam.  The polygrapher could not conclusively determine that the witness had truthfully answered all of the polygraph questions.  856 F.2d at 432.  At trial, the district court admitted into evidence the entire cooperation agreement, including the polygraph provision, but prevented defense counsel from eliciting evidence that the witness did not "successfully complete" the examination.  The jury was left with the erroneous impression that the witness's testimony had been corroborated by a successful polygraph examination, when that was precisely what did not occur.  Id. at 433.  Here, by contrast, the Government will not seek to bolster Corigliano's credibility by any reference to the polygraph examinations.[9]

---

[9]  Other cases cited by Forbes also permitted the use of polygraph evidence only after the party resisting the evidence opened the door to that evidence.  United States v. Matthews, 20 F.3d 538, 552 (2d Cir. 1994) (Government presented evidence about the defendant's refusal to take a polygraph only after the defendant opened the door to the subject by presenting evidence that he had initially offered to take a polygraph); United States v. Hall, 805 F.2d 1410, 1416-17 (10th Cir. 1986) (district court permissibly allowed the Government to elicit evidence that the defendant had failed two polygraphs to rebut the defense claim that investigators had improperly focused on the defendant without sufficiently investigating other possible suspects);
(continued...)

Forbes' citation to cases in which a witness <u>refused</u> to take

a polygraph examination, or in which an insurance company refused

to consider an insured's willingness to submit to polygraph

examination, FM 5-6,[10] is also misplaced.  There is no contention

that Corigliano refused to take a polygraph examination – to the

---

[9](...continued)
<u>United States v. Kampiles</u>, 609 F.2d 1233, 1244 (7th Cir. 1979)
(district court permitted the Government to present evidence that
the defendant confessed only after he failed two polygraph
examinations in order to rebut the defense claims that his
confession was coerced).  Here, by contrast, the Government never
opened the door to polygraph evidence.

[10]    In <u>Underwood v. Colonial Penn Ins. Co.</u>, 888 F.2d 588
(8th Cir. 1989) the plaintiff sued his insurer for refusal to pay
a claim for fire damage which the insurer suspected had been
caused by arson.  A deputy sheriff who investigated the fire
testified that he asked the plaintiff to submit to a polygraph.
The plaintiff refused and cursed at the sheriff.  On appeal, the
defendant/insurer argued that cross-examination of the plaintiff
regarding his refusal to be polygraphed was permissible under
Fed. R. Evid. 613.  888 F.2d at 591.  The Court of Appeals did
not squarely address the claim, finding that the district court
had permissibly exercised its discretion to permit the cross-
examination "for the purpose of impeaching Underwood's
credibility by contradiction" because the plaintiff had testified
that he had offered to cooperate fully with the sheriff's
investigation.  <u>Id.</u>  Here, by contrast, Forbes points to nothing
in Corigliano's direct examination that would be contradicted by
Forbes' proposed questioning of Corigliano regarding the
polygraph examinations.

    In <u>Murphy v. Cincinnati Ins. Co.</u>, 772 F.2d 273, 277 (6th
Cir. 1985), the Court of Appeals affirmed the discretionary
admission of evidence that the plaintiff in an action to recover
insurance proceeds for fire damage had volunteered to take a
polygraph examination to support his contention that he had not
set the fire.  Forbes, however, does not seek to present evidence
only that Corigliano offered to or did in fact take a polygraph
examination.  Accordingly, <u>Murphy</u> does not advance Forbes' claim
that he is entitled to wide-ranging examination of Corigliano
about his polygraphs.

contrary, he voluntarily submitted to two such examinations.  Nor is there evidence that the Government or anyone else declined to consider evidence of Corigliano's willingness to submit to polygraph examinations.

## II.  AS JUDGE THOMPSON PROPERLY CONCLUDED, FED. R. EVID. 613(a) DOES NOT AUTHORIZE THE ATTEMPTED IMPEACHMENT OF CORIGLIANO ABOUT HIS POLYGRAPH EXAMINATIONS.

As did Judge Thompson, this Court should reject Forbes' argument that he should be permitted broad-ranging cross-examination of Corigliano regarding the polygraphs pursuant to Fed. R. Evid. 613(a), which permits cross-examination by reference to a prior inconsistent statement.  Forbes has failed to cite a single case, and the Government's research has disclosed none, in which cross-examination regarding a witness's experience with polygraphs was permitted under Rule 613(a).[11]

Forbes nevertheless seeks to broadly question Corigliano under Rule 613 "about his prior statements to the polygraphers." FM 9.  Judge Thompson properly precluded cross-examination of Corigliano about what he was asked, what he answered, and what

---

[11]   In United States v. Melton, 27 Fed.Appx. 664, 666, 2001 WL 1613846 (7th Cir. 2001)(unpublished), cited by Forbes, the Court affirmed the district court's limitation on the cross-examination of a prosecution witness by reference to his polygraphs, and merely noted in passing that the district court had permitted some cross-examination on the matter.  The Court of Appeals was not asked to decide, and did not decide, whether the district court would have erred by excluding any questioning of the witness regarding his responses to polygraph questions. Additionally, Rule 613 was not mentioned in that opinion.

the polygrapher opined about Corigliano's answers.  As shown
above, Forbes has a wealth of Corigliano's prior inconsistent
statements, particularly those he made to the Cendant Board of
Directors in April 1998 and those he made to Government officials
in January 1999 when he lied about his involvement in the charged
fraud, with which to challenge his credibility.  That being the
case, Judge Thompson properly exercised his discretion by
precluding wasteful and misleading cross-examination about
Corigliano's statements to a polygrapher.  See United States v.
Zaccaria, 240 F.3d 75, 80-82 (1st Cir. 2001) (affirming the
preclusion of cross-examination of a prosecution witness
regarding his failure to take a polygraph examination).[12]

Finally, Forbes' request for additional information
regarding the Corigliano polygraph examinations, raised in
Forbes' Third Trial Motion No. 2, Docket 2192 at 24-25, and
repeated in passing here, FM 9 n. 5, should be rejected for the

---

[12]  In language that applies equally this case, the Court of
Appeals for the First Circuit explained in Zaccaria that:

Defendants cannot run roughshod, doing precisely as they
please simply because cross-examination is underway.  So
long as a reasonably complete picture of the witness'
veracity, bias, and motivation is developed, the judge
enjoys power and discretion to set appropriate boundaries.
Indeed, the judge has a responsibility to do so. . . . [The
district court] on the whole, treated the appellant's wide-
ranging cross-examination of [the] government witnesses very
hospitably.

240 F.3d at 81.

reasons set forth in the Government's Amended Opposition to that Motion, Docket 2232 at 29-31.[13]

### III.  AS JUDGE THOMPSON PROPERLY CONCLUDED, FED. R. EVID 608(b) DOES NOT AUTHORIZE FORBES TO ATTEMPT TO IMPEACH CORIGLIANO BY REFERENCE TO HIS PRIVATE POLYGRAPH EXAMINATION.

Judge Thompson previously and properly rejected Forbes' revived claim that he should be permitted wide-ranging cross-examination of Corigliano under Fed. R. Evid. 608(b), which permits impeachment by reference to specific instances of conduct probative of truthfulness.  FM 9-11.  According to Forbes, the fact that Corigliano supposedly lied to a polygrapher is admissible because it is "probative of character of truthfulness."  FM 10.  Judge Thompson appropriately excluded this line of attempted impeachment, because it would allow Forbes to misleadingly argue, and/or the jury to infer, that Corigliano was or believed that he was such a skilled liar that he could "fool" the polygrapher.[14]

---

[13]  In <u>Wood v. Bartholomew</u>, 516 U.S. 1, 8 (1995) the Supreme Court held that the prosecution did not violate <u>Brady</u> by failing to disclose polygraph evidence that was not admissible under controlling state law even for impeachment.  In any event, the Government has turned over all relevant information in its possession regarding Corigliano's polygraphs.

[14]  In addressing this issue, Judge Thompson explained that Forbes' proposed use of the polygraph evidence:

> really goes to suggest to the jury . . .  that Mr. Corigliano – without knowing what questions were asked, first of all, that Mr. Corigliano took a polygraph, that he lied, that he passed the test, and thus the substance of the
> (continued...)

Forbes evidently wants to go beyond asking Corigliano if he lied to the polygrapher and inquire about the fact that Corigliano's attorneys told the Government during a proffer session that Corigliano took a polygraph examination and "did very well."  Just as evidence regarding the polygraph results should be excluded under Rules 702 and 403 because of the likelihood of confusion and waste of time, evidence regarding Corigliano's purported attempts to deceive the polygrapher should likewise be excluded.  If, as Forbes now proposes, the jury were to learn that Corigliano's lawyers informed the Government that Corigliano "did very well" on a privately-administered polygraph without also learning about the unreliability of polygraph examinations in general, and of the unreliability of the particular polygraph technique to which Corigliano submitted, the jury would be potentially misled.

---

[14](...continued)
suggestion to the jury is that Mr. Corigliano is such a skillful liar that he can fool the polygraph machine.  And to me, that's what it's really being offered for, not for the probative value of lack of credibility because he made prior inconsistent statements.

I think it's not appropriate to offer it for that purpose when we don't have a showing as to what questions were asked on that polygraph, what questions were asked on the second polygraph, how he did on the second polygraph. And in order to get into all of that material, it seems to me that I need to conduct a Daubert analysis, which I haven't done.

FTTr. 7796-97.

12

The jury might conclude, for instance, that Corigliano is a particularly skilled liar, because he "did very well" on a polygraph, and only a skilled liar could "fool" the polygrapher. Such a conclusion would be unwarranted, because it would rest on the jury giving "excessive weight to the opinions of a polygrapher, clothed as they are in scientific expertise." Scheffer, 523 U.S. at 313-14. The jury could not be disabused of such a conclusion without evidence regarding the particular polygraph examination at issue here (which might be unavailable due to the death of the polygrapher, FTTr. 7816), as well as evidence about the science and reliability of polygraph testing in general. Judge Thompson properly declined to subject this already protracted case to a mini-trial about polygraphs.

Additionally, Forbes' proposal would require the jury to speculate about Corigliano's performance on the polygraph (i.e., the "results" of the polygraph) and draw inferences that might be at odds with the true facts. See United States v. Bowen, 857 F.2d 1337, 1341-42 (9th Cir. 1988) (even though evidence that a defendant had falsified his polygraph results was relevant to prove his consciousness of guilt, the district court properly excluded the evidence under Rule 403 because the evidence would have led the jury to infer that the defendant had flunked the polygraph, and given undue weight to that inference). Thus, the jury might infer that, because Corigliano submitted to a

13

polygraph examination and his lawyers told the Government that he had done so, but later pleaded guilty in this case, Corigliano had "flunked" the polygraph examination and had pleaded guilty because of his poor performance on the polygraph, rather than because he was honestly admitting his guilt.

United States v. Robbins, 197 F.3d 829, 843-44 (7th Cir. 1999), is instructive on this point.  A witness in that case had entered into a cooperation agreement with the Government which obligated him to submit to a polygraph examination if requested by the Government, and that agreement, including the polygraph provision, was admitted into evidence.  The Government never asked the witness to submit to a polygraph and he had not done so.  The defendant sought to establish that fact at trial in order to dispel the erroneous inference that the witness had taken and passed a polygraph, and was therefore a credible person.  The district court excluded the proposed evidence under Rule 403, and the Court of Appeals affirmed, based on reasoning that applies equally here.  197 F.3d at 844 ("The trial court applied the balancing test of Federal Rule of Evidence 403 and determined that, in the context of this case, even the threshold question as to whether a polygraph test had been administered would confuse and cause speculation among the jury.").

For similar reasons, Forbes should not be permitted to argue that Corigliano was or believed he was such a skilled liar that

14

he could "fool" the polygrapher.  Such an argument would merely add an additional level of speculation (Corigliano's speculative understanding of the reliability of polygraph results) upon the already speculative reliability and limited helpfulness of polygraph evidence generally.

IV.  **JUDGE THOMPSON ALSO PROPERLY CONCLUDED THAT FORBES' EFFORTS TO CROSS-EXAMINE CORIGLIANO REGARDING POLYGRAPH EXAMINATIONS WOULD VIOLATE CORIGLIANO'S LAWYER-CLIENT PRIVILEGE.**

As Forbes acknowledges, FM 11, during the second trial, in addition to precluding cross-examination of Corigliano on other grounds, Judge Thompson also concluded that any information known to Corigliano about his involvement in the polygraph examinations, undertaken at the behest of his attorneys, was protected by the attorney-client privilege.  Because Judge Thompson properly excluded cross-examination of Corigliano by reference to the polygraph examinations under Rule 403, Judge Thompson's ruling regarding the privilege was not necessary to his denial of Forbes' request to delve into the polygraphs. Nevertheless, Judge Thompson's rulings regarding the privilege were correct and provided an alternative and sufficient basis to preclude this line of cross-examination.

A witness's valid claim of attorney-client privilege may preclude defense cross-examination in a criminal proceeding regarding the privileged communications.  United States v. Gatzonis, 805 F.2d 72, 74-75 (2d Cir. 1986); United States v.

Coven, 662 F.2d 162, 170-71 (2d Cir. 1981); See Mills v.
Singletary, 161 F.3d 1273, 1288-89 (11th Cir. 1998); United
States v. Rainone, 32 F.3d 1203, 1206-07 (7th Cir. 1994).
Corigliano's attorney represented to Judge Thompson that any
communications that Corigliano had regarding the polygraph
examinations were made in the context of obtaining legal advice,
and were intended to be privileged.  FTTr. 7807-08, 7824.  Forbes
does not challenge that representation.  Rather, he contends that
the statements of Corigliano's lawyers to the Government that
Corigliano had "done very well" in response to the private
polygraph was an implied waiver of the privilege regarding any
other communications between Corigliano and his lawyers regarding
the polygraph examinations.  FM 11-12.  This claim fails.

By telling the Government that Corigliano had "done very
well" on the first polygraph, Corigliano's lawyers did not
implicitly waive the privilege regarding other communications
they had with Corigliano about the polygraphs which Corigliano's
lawyers did not disclose to the Government.  It is only when a
party seeks to use a privileged communication to influence the
decision-maker in litigation that fairness may require that other
privileged communications that bear on the same subject as the
disclosed communication must be disclosed to the opposing party.
In re von Bulow, 828 F.2d 94, 102-104 (2d Cir. 1987).  Where a
privileged communication is disclosed to an adversary in a non-

judicial setting, as occurred here, the party making the
disclosure has not attempted to influence a judicial decision-
maker by use of the disclosure, and the party seeking additional
disclosure has not sustained any "legal prejudice" because of
selective disclosure.  Id.[15]  See also John Doe Co. v. United
States, 350 F.3d 299, 302-307 (2d Cir. 2003) (applying von Bulow
and rejecting the "implied waiver" of all attorney work product
regarding a particular subject matter where limited work product
was disclosed to a federal prosecutor, but not in a judicial
proceeding, so selective disclosure and non-disclosure did not
prejudice the Government's opportunity to rebut the disclosed
information during a judicial proceeding).  That the privileged
information was made to Government officials in order to convince

---

[15]  As the Second Circuit explained in that case:

The client's offer of his own or the attorney's **testimony** as
to a **specific communication** to the attorney is a waiver as
to all other communications to the attorney on the same matter.
But where, as here, disclosures of privileged information
are made extrajudicially and without prejudice to the
opposing party, there exists no reason in logic or equity to
broaden the waiver beyond those matters actually revealed. .
. . . [R]elated matters not so disclosed remain
confidential.  Although it is true that disclosures in the
public arena may be "one-sided" or "misleading", so long as
such disclosures are and remain extrajudicial, there is no
**legal** prejudice that warrants a broad court-imposed subject
matter waiver.  The reason is that disclosures made in
public rather than in court-even if selective-create no risk
of **legal** prejudice until put at issue in the litigation by
the privilege-holder.

828 F.2d at 103 (emphasis in original).

17

them not to seek an indictment against Corigliano is insufficient
to trigger a subject matter waiver of all privileged
communications regarding the polygraphs.  Id. at 303-04.[16]  As in
the previous trials, the Government will offer no evidence
regarding Corigliano's polygraph examinations.  Forbes will
therefore suffer no "legal prejudice" in the eyes of the jury
from the absence of additional disclosures of privileged
communications between Corigliano and his attorneys.[17]

---

[16]  The Second Circuit's rationale in Doe applies equally
here:

> The U.S. Attorney is conducting an investigation before
> the grand jury.  Doe is a subject of the investigation.
> The U.S. Attorney's office in its sole discretion
> decides what evidence will be placed before the grand
> jury.  Doe's letter, in which it made claims about
> [his] . . .  innocent state of mind, was delivered **only**
> to the U.S. Attorney.  It was not seen by the grand
> jury, much less by a petit jury or court adjudicating
> Doe's claims of innocent state of mind. It is
> impossible to see how the U.S. Attorney is subjected to
> any unfairness as the result of its own receipt of the
> Letter.

350 F.3d at 303-04 (emphasis added).

[17]  Ratliff v. Davis, Polk & Wardwell, 354 F.3d 165 (2d Cir.
2003), cited by Forbes, is not to the contrary.  There, the Court
held that a client had impliedly waived the privilege with
respect to the particular documents that he or his attorney had
disclosed to third parties.  354 F.3d at 170.  See also In re
Steinhardt Partners, L.P., 9 F.3d 230, 230 (2d Cir. 1993) (trader
waived privilege with respect to a legal memorandum prepared by
his attorneys that he had voluntarily submitted to the SEC).
Here, Forbes is not content with the particular communication
that Corigliano's lawyers communicated to the Government, but
seek "all privileged communications" between Corigliano and his
attorneys regarding the polygraph examinations.

18

Forbes also contends that Corigliano's supposed use of his attorneys to inform prosecutors that Corigliano was innocent of any involvement in the accounting fraud at CUC, and to inform those investigators that Corigliano had "done very well" in a polygraph, even though Corigliano knew that he had committed that fraud, was a fraud on the Government, obviating the privilege under the "crime-fraud" exception to the privilege.  FM 12-14. Judge Thompson properly rejected that argument.

"A party wishing to invoke the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the crime or fraud."  United States v. Jacobs, 117 F.3d 82, 88 (2d Cir. 1997).  The crime or fraud must "have been the objective of the client's communication."  In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983, 731 F.2d 1032, 1039 (2d Cir. 1984); accord, In re Grand Jury Proceedings, 417 F.3d 18, 23 (1st Cir. 2005).  The party seeking to pierce the privilege must show that a privileged communication was "made with an intent to further an unlawful act," and that the client "had set upon a criminal course **before** consulting counsel." Jacobs, 117 F.3d at 88 (citation omitted) (emphasis in original).

As Judge Thompson concluded, Forbes has failed to establish probable cause that Corigliano actually authorized his attorneys

19

to affirmatively mislead the Government.  FTTr. 7803-05, 7821, 8033.  The only persons with first-hand knowledge on this subject have refuted Forbes' contention that Corigliano intended to use his attorneys to commit a fraud or crime.  Corigliano testified during the first trial that his lawyers never told him about any of the exchanges that occurred during their attorney proffer sessions with the Government.  FTTr. 7698-99.  Corigliano's lawyers corroborated that testimony regarding the related subject of the lawyers' statements to the SEC.[18]  Forbes has provided no countervailing evidence, and Judge Thompson made a credibility finding that Corigliano's testimony on that point was truthful.  Based on that testimony, Forbes has failed to establish that Corigliano intended, much less directed, that anything that he told the polygrapher or his lawyers regarding the polygraph examinations would be utilized by his lawyers to attempt to persuade the government not to prosecute him.[19]

---

[18]  During the second trial, one of Corigliano's attorneys directly refuted Forbes' claim that Corigliano had used his attorneys as mere "conduits" for his false statements to the SEC, representing that:

> We did not act as conduits.  We made our own judgments about what we provided to the SEC and what we didn't. We exercised legal judgment in doing that.  I think the communications between us and our client remain privileged, and we assert that privilege.

STTr. 2001.

[19]  For that reason, this case is readily distinguishable
(continued...)

20

Nor has Forbes satisfied his burden for obtaining an <u>in camera</u> review of documents regarding the polygraph examination (if any exist) in the possession of Corigliano or his lawyers. Forbes' chain of events supporting his claim that Corigliano used his lawyers to defraud the Government, FM 13, conspicuously omits any allegation, much less record evidence support, that Corigliano knew or had reason to know that his attorneys would say anything to the Government about the polygraph results.  No additional disclosure of polygraph information is required.

---

[19](...continued)
from <u>In re Grand Jury Proceedings</u>, 417 F.3d 18 (1st Cir. 2005), cited by Forbes.  There, the district court found that the Government had established "reasonable suspicion" (an arguably lower standard for piercing the privilege than the "probable cause" standard required by the Second Circuit) to believe that an attorney had directed one client ("Client A") to commit perjury before the grand jury, and that another client ("Client B") of the same lawyer may have been involved in the perjury. The Court of Appeals affirmed the district court's ruling that the Government could question the lawyer about his communications with Client B.  417 F.3d at 23-24.  Here, the fact-finder (Judge Thompson) came to the contrary conclusion based on the evidence before him, that Forbes has failed to establish probable cause to believe that Corigliano intended to use his attorneys to commit a fraud upon the Government.

**CONCLUSION**

The Government requests that Forbes' Third Trial Motion <u>In</u> <u>Limine</u> No. 19 be denied.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
Special Attorney
U.S. Department of Justice

*Norman Gross/s*

NORMAN GROSS
Federal Bar Number 24933
MICHAEL MARTINEZ
Federal Bar Number PHV0423
MARK E. COYNE
Federal Bar Number PHV01079
Special Attorneys
U.S. Department of Justice
970 Broad Street
Room 700
Newark, N.J.  07102
(973) 645-2701

Newark, New Jersey
Date: May 23, 2006

22

## CERTIFICATE OF SERVICE

The undersigned certifies that on this day I caused to be served a copy of the Government's Memorandum in Opposition to Forbes' Motion for Permission to Examine Mr. Corigliano on Polygraph Examinations (Opposition to Forbes Third Trial Motion In Limine 19) via email on:

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901
(202) 434-5005
bsimon@wc.com


*Norman Gross/s*

NORMAN GROSS


Dated: May 23, 2006
       Camden, New Jersey