UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AHN) |
| | : | |
| v. | : | May 24, 2006 |
| | : | |
| WALTER A. FORBES | : | |

OPPOSITION OF THE UNITED STATES
TO DEFENDANT WALTER A. FORBES' MOTION TO PRECLUDE
THE GOVERNMENT FROM INTRODUCING GOVERNMENT EXHIBIT 11007

(<u>Opposition to Forbes Third Trial Motion In Limine No. 16</u>)

<u>INTRODUCTION</u>

During the first and second trials, Forbes claimed that he was ignorant of the accounting manipulations charged in the Indictment. The cornerstone of that defense was that CUC's auditors during the conspiracy, Ernst & Young ("E&Y"), consistently issued "clean audit opinions" regarding CUC's publicly disclosed financial statements, and that Forbes relied on those audit opinions in concluding that CUC's financial statements complied with GAAP and were free from fraud. <u>E.g.</u>, FTTr. 16382.[1] According to Forbes, if Corigliano and other conspirators were able to conceal the fraud even from the certified public accoun-

---

[1] Citations to "FTTr." and "STTr." are to the transcripts of the first and second trials. Citations to "GX" and DX" are to trial exhibits introduced by the Government and Forbes. Citations to "FM" and "Ex." are to Forbes' memorandum in support of, and the exhibits appended to, his motion.

tants from E&Y who audited CUC's accounting records, how could Forbes, a non-accountant who did not audit those records, detect the fraud?

Having presented a defense that he relied in good faith on E&Y's audit opinions, Forbes opened wide the door to evidence regarding the efforts of his coconspirators to prevent the auditors from learning the truth about CUC's financial results. Nonetheless, during the second trial, Forbes moved to exclude GX 11007, a performance review of one of the E&Y auditors of CUC, Bruce Botti, by his supervisors, Marc Rabinowitz and Simon Wood. FTTr. 1099, 1341, 2575. The review was prepared on March 25, 1998, shortly after the completion of E&Y's audit of the former CUC (then part of Cendant) for the year ended December 31, 1997. See Exhibit 1 to Forbes' Third Trial Motion In Limine No. 16 (copy of GX 11007). In the Botti review, Rabinowitz and Wood noted that "[c]lient personnel were frequently evasive and often tried all kinds of techniques to ensure that they did not deal with us on a timely basis." Id. Referring to admitted coconspirator Anne Pember, Rabinowitz and Wood described "the former controller['s] . . . continued unprofessional and unresponsive manner." Id. Wood complained about the "continued, unbelievably incompetent performances" of CUC's accounting personnel; the "ineptitude of the client;" and the CUC staff's lack of "care about the product they were creating." Id.

Although GX 11007 corroborates the testimony of the cooperating witnesses that they intentionally concealed the fraud from the E&Y auditors, Forbes claimed it should be excluded because it purportedly was "inconsistent with the indictment," contained "inadmissible hearsay," and would be unfairly prejudicial to Forbes if admitted. Docket 1943 at 2. The Government addressed these arguments in a written opposition, Docket 1955, and Judge Thompson denied Forbes' motion "for substantially the reasons set forth in the Government's opposition." STTr. 2304.

Forbes once again seeks to exclude GX 11007. His brief, however, merely amplifies arguments already rejected by Judge Thompson and relies upon self-serving deposition testimony of E&Y employees in 2002 that sought to minimize the damning evidence of E&Y's own recklessness contained in this document. There is no basis to reconsider Judge Thompson's rulings at this juncture, which has become law of the case. See, e.g., Lillbask v. Connecticut Dept. of Educ., 397 F.3d 77, 94 (2d Cir. 2005) ("[u]nder the law of the case doctrine, courts are understandably reluctant to reopen a ruling once made, especially when one judge or court is asked to consider the ruling of a different judge or court") (internal quotation marks omitted); United States v. Crowley, 318 F.3d 401, 420 (2d Cir. 2003) (when "a court has ruled on an issue, that decision should generally be adhered to by that court

in subsequent stages in the same case") (internal quotation marks omitted).[2]  That ruling was entirely correct, as shown herein.

## ARGUMENT

### I. GX 11007 Is Neither a Constructive Amendment of the Indictment Nor Unnecessarily Cumulative.

Forbes contends that GX 11007 should be excluded because the Government seeks to use that document to demonstrate that E&Y auditors participated in the charged conspiracy.  According to Forbes, such a claim would be at odds with the conspiracy alleged in the Indictment.  FM 3.  This is just the latest iteration of Forbes' repeated complaints that any evidence tending to show that E&Y should have discovered the fraud earlier constitutes "a constructive amendment and prejudicial variance by expanding the membership of the alleged conspiracy to include auditors from E&Y."  Docket 2003 at 1.  Judge Thompson has rejected such arguments three times before in this case.  Id. at 1-4 & n.1; STTr. 2305.

As Forbes is well aware, the Government has not argued and will not argue that anyone from E&Y was a member of the charged conspiracy.  See, e.g., Docket No. 1905.  Rather, as Judge

---

[2] Similarly, a reconsideration motion will be denied unless the "moving party can point to controlling decisions or data that the court overlooked."  Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998); see LoSacco v. City of Middletown, 822 F. Supp. 870, 876-77 (D. Conn. 1993) ("the function of a motion for reconsideration is to present the court with an opportunity to correct manifest errors of law or fact or to consider newly discovered evidence") (internal quotation marks omitted), aff'd, 33 F.3d 50 (2d Cir. 1994).

4

Thompson ruled during the second trial, the Government seeks the admission of GX 11007 for two proper reasons.  First, GX 11007 shows that even though E&Y auditors were extremely frustrated by the failure of the CUC accounting staff to timely provide complete and truthful information about CUC's financial results, E&Y issued "clean audit opinions" quarter after quarter.  That evidence tends to explain Forbes' motive to lobby Cendant Chief Executive Officer Henry Silverman and Cendant Chief Financial Officer Michael Monaco for the retention of E&Y as the auditor of the former CUC divisions after the Cendant merger.  Evidence regarding Forbes' motive to play his part in the charged fraud is highly relevant.  See generally United States v. Salameh, 152 F.3d 88, 111 (2d Cir. 1998) (noting that motive evidence is "commonly admitted"); United States v. Reed, 639 F.2d 896, 907 (2d Cir. 1981) (affirming the admission of motive evidence in a prosecution for conspiracy to commit securities fraud and securities fraud).

Second, the evidence is highly relevant to rebut a central theme of Forbes' defense: that Forbes relied in good faith on E&Y's issuance, during the conspiracy period, of "clean audit opinions."  See FTTr. 16382 (jury instructions regarding Forbes' "Theory of the Case").  According to Forbes, if Corigliano and the other conspirators concealed the accounting fraud from the auditors, notwithstanding their accounting expertise and access

5

to CUC's accounting records, Corigliano could also have concealed the fraud from Forbes.

The evidence demonstrates that CUC was required to and did provide the auditors with a series of "management representation letters," which stated, <u>inter alia</u>, that CUC's financial statements were prepared in compliance with Generally Accepted Accounting Principles ("GAAP") and were free from material misstatements. STTr. 447-48, 520-22; GX 529. Auditors expressly rely on those representations in certifying that their client's financial statements complied with GAAP. STTr. 448. CUC's assurances about its financial statements in those management representation letters, like the financial statements themselves, were false. STTr. 1498-1501.

GX 11007 corroborates the testimony of the cooperating witnesses that CUC did not provide timely, accurate, and complete information to the auditors. Because GX 11007 tends to prove that Forbes' coconspirators intentionally failed to provide the auditors with sufficient information to perform a thorough and accurate audit, the document is relevant to rebut Forbes' claim that he relied in good faith on the E&Y audit opinions in concluding that CUC's financial statements complied with GAAP and were not false or misleading.[3] Moreover, "evidence . . . [used

---

[3] <u>See</u> <u>United States v. Khalil</u>, 214 F.3d 111, 122 (2d Cir. 2000) (in prosecution for threatening to use a weapon of mass destruction, photographs of defendant dressed as a "suicide bom-
(continued...)

by the Government] to rebut defense theories" could not have constructively amended the indictment. United States v. McAnderson, 914 F.2d 934, 945 (7th Cir. 1990).

The absence of evidence that Forbes personally saw GX 11007, FM 5, is of no moment. "Where a defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant." Salameh, 152 F.3d at 111; see United States v. Brady, 26 F.3d 282, 287 (2d Cir. 1994) (affirming admission -- in prosecution for conspiracy to commit murders in order to advance defendant's position within a RICO enterprise -- of evidence of murders committed by other coconspirators, which was relevant to prove the charged conspiracy).

Here, Forbes has tacitly admitted that E&Y's internal documents regarding the audit are relevant to this case. He successfully offered into evidence, during his cross-examination of Corigliano but pursuant to the certification of another person, a slew of E&Y's internal documents relating to the CUC audit, with no showing that Forbes himself (or even Corigliano,

---

[3] (...continued)
ber" were properly admitted to rebut defense portrayals of him as someone who merely sought to obtain money from the government by pretending to prevent a terror attack, but who had no intention to cause damage or harm); United States v. Rubin, 37 F.3d 49, 53 (2d Cir. 1994) (affirming admission of evidence that defendant's accomplice obtained stolen checks that were not charged in the indictment, because the evidence negated the defendant's claim that he innocently received the indictment checks from someone other than the accomplice).

for that matter) ever saw any of those documents.[4]  Moreover, since a principal goal of the conspiracy was to create false and misleading financial statements that would cause investors to pay more for CUC stock than they would have paid had the true financial results been disclosed, and because the financial statements could not be publicly disclosed unless audited by an independent accounting firm, it was reasonably foreseeable to Forbes that his coconspirators who regularly dealt with E&Y would conceal the fraud from the auditors.

That GX 11007 could support an argument that someone at E&Y was or should have been aware of the fraud provides no basis to exclude that document.  Evidence does not constructively amend the indictment unless it causes the jury to convict the defendant of a crime other than the one charged in the indictment.  United States v. Bryser, 954 F.2d 79, 87 (2d Cir. 1992).[5]  The Government will not argue that Forbes should be convicted of any of the charged crimes because he conspired with anyone from E&Y.

---

[4] E.g. STTr. 1661-65 (cross-examination of Corigliano regarding DX 645); 1665-67 (DX 649); 1668-70 (DX 652); 1670-71 (DX 656); 1673-75 (DX 671); 1675-76 (DX 673); 1676-77 (DX 676); 1677-78 (DX 677); 1678 (DX 678); Tr. 1678-79 (DX 681); 1679-80 (DX 687); 1680-82 (DX 691).  Forbes devoted more than half an hour of his cross-examination of Corigliano to a single document, DX 692, an E&Y questionnaire regarding "internal control and fraud considerations."  STTr. 1682-1712.

[5] To spare the Court repetitive briefing, the Government notes that pages 9-12 of its opposition to Forbes' Third Trial Motion in Limine No. 3 also discuss the law of constructive amendment and prejudicial variance.

Additionally, as did Judge Thompson, e.g., STTr. 3798, the Court presumably will instruct the jury regarding the identity of the coconspirators. The E&Y auditors are not among those identified conspirators. STTr. 3731.

Jury instructions are the principal protection against possible confusion regarding the nature and scope of the charges. United States v. Coyne, 4 F.3d 100, 111-12 (2d Cir. 1993) (admission of relevant evidence regarding pre-conspiracy conduct did not constructively amend the indictment, in light of the district court's limiting instructions). As during the first and second trials, an instruction that limits the universe of Forbes' coconspirators will prevent the jury from convicting him of conspiring with anyone from E&Y. See United States v. Lutz, 621 F.2d 940, 942-43 (9th Cir. 1980) (the risk of a variance arising from the admission of evidence of the defendants' participation in uncharged fraudulent conduct was eliminated by jury instructions that the defendants could be convicted only for the "single scheme . . . involving each of the defendants" that was charged in the indictment); see generally Salameh, 152 F.3d at 145-46 (no constructive amendment of the indictment where the Government's summation and the final charge closely tracked the indictment, and the jury was given a copy of the indictment for use during deliberations). Accordingly, Forbes' constructive amendment claim should be rejected.

**II. GX 11007 Is Properly Admissible as a Business Record, and Forbes' Hearsay and Confrontation Challenges to the Document Are Meritless.**

Forbes once again argues that GX 11007 should be excluded as hearsay because the Government seeks its admission to prove the truth of matters asserted in the document by Wood. FM 8-11. As Judge Thompson ruled, however, the certification provided by E&Y, Exhibit 1 to Forbes' Motion at 4, demonstrates that GX 11007 is a business record of E&Y. Thus, it is admissible pursuant to Fed. R. Evid. 803(6) "as evidence of the truth of the matters stated," United States v. Lieberman, 637 F.2d 95, 100 (2d Cir. 1980), regardless of the availability of E&Y personnel who signed the evaluation. See United States v. Hagege, 437 F.3d 943, 958 (9th Cir. 2006) ("[b]usiness records fall outside the core class of 'testimonial evidence,' and thus are not subject to the absolute requirement of confrontation established in Crawford").

Although Forbes contends that, under Crawford v. Washington, 541 U.S. 36 (2004), he "has a constitutional right to cross-examine" Michele Grossman of E&Y concerning the certification she signed, FM 8, that would be true only if the certification is placed before the jury. See Hagege, 437 F.3d at 958 n.6 (no Crawford problem where "foreign certifications attesting to the authenticity of the business records were not admitted into evidence" but the business records were). Under Fed. R. Evid. 104(a), this Court, not the jury, decides preliminary questions of admissibility, and the Supreme Court and the Second Circuit

10

have held on many occasions that use of hearsay evidence to decide such questions does not implicate the Confrontation Clause.⁶ <u>Crawford</u> did not call into question this authority, as Forbes tacitly concedes by asking this Court to consider deposition testimony in deciding this motion. FM 5-6 & n.3, 10-11.

Forbes' complaint that GX 11007 "was <u>not</u> in the ordinary course of Ernst & Young's business" is meritless. Rabinowitz's and Wood's performance review of Botti demonstrates on its face that it was in made in the ordinary course of E&Y's business. The document is self-described as a "**<u>Periodic</u>** Performance Review." GX 11007 at 1 (emphasis added). Rabinowitz's and Wood's appraisal is set forth on a pre-printed form that E&Y apparently uses as a matter of routine for such appraisals, and their commentary responds to "the five major performance areas" identified by the form. <u>Id.</u> at 1-3.⁷ They evaluated Botti's perfor-

---

⁶ <u>See</u> <u>Bourjaily v. United States</u>, 483 U.S. 171, 175-81 (1987) (determining applicability of co-conspirator exception to hearsay rule); <u>United States v. Raddatz</u>, 447 U.S. 667, 679 (1980) (suppression hearing); <u>United States v. Matlock</u>, 415 U.S. 164, 172-75 (1974) (suppression hearing); <u>McCray v. Illinois</u>, 386 U.S. 300, 312-13 (1967) (probable cause hearing); <u>see</u> <u>also</u> <u>United States v. Mastrangelo</u>, 693 F.2d 269, 273 (2d Cir. 1982) (endorsing use of hearsay evidence under Rule 104(a) in making preliminary determination whether defendant had waived his confrontation rights by misconduct leading to declarant's death). Although Forbes cites an unpublished opinion from the District of Kansas to the contrary, FM 8 (citing <u>United States v. Wittig</u>, 2005 WL 1227790 (D. Kan. 2005)), neither <u>Wittig</u> nor Forbes even mentions, let alone distinguishes, <u>Bourjaily</u>, <u>Raddatz</u>, <u>Matlock</u> and <u>McCray</u>.

⁷ What Forbes calls a "special 'attachment' to address the extraordinary circumstances of the Cendant audit engagement," FM
(continued...)

mance for a defined period of time, "From 4/97 to 3/98," id. at 1, suggesting that such reviews are periodically undertaken. The document, a "Manager/Senior Manager Periodic Performance Review" also sets forth information that is crucial to the successful operation of a business that sells the services of its professional employees. Id. It is therefore the kind of record that the business is likely to collect and maintain as part of its regularly conducted business.

 Moreover, Forbes completely ignores the certification itself, which fully supports the requirement of Rule 803(6) that the record refer to the regularly conducted business of E&Y. Because the performance review "was kept in the course of Ernst & Young's regularly conducted business activities," Exhibit 1 at 4, it stands to reason that the document refers to regularly conducted business activity (i.e., the review of the performance of a subordinate by his supervisor). Additionally, the author of the certification recites that she is "familiar with the regularly conducted activities of Ernst & Young, and documents created during the course of those regularly conducted activities." Id. Such a recitation would be unnecessary verbiage if GX 11007 was not created "during the course" of E&Y's regularly

---

[7] (...continued)
9, is in fact a rider containing a fulsome response to a question on the form. Compare GX 11007 at 1 ("B. Nature of Assignment. Briefly describe the assignment . . . .") with id. at 3 ("Nature of the Assignment").

conducted activities, or did not refer to E&Y's "regularly conducted activities."

Nor does the self-serving deposition testimony of E&Y employees cited by Forbes render GX 11007 too "untrustworthy" to qualify as a business record. FM 10-11. Forbes paraded a slew of E&Y work papers before the jury, including numerous documents prepared by E&Y during the very audit discussed in GX 11007. All of these work papers were introduced as business records under Fed. R. Evid. 803(6). E.g., FTTr. 7700-7702, 7834-7838, 7845-7851, 7868-7876, 7880-7882, 7884-7895. Whether the signatories of GX 11007 have tried to back away from the obvious implications of that document in a failed effort to insulate E&Y during the Cendant litigation "is an issue that concerns the weight to be given to the" Exhibit "in light of all the other evidence." In re Balfour MacLaine Int'l Ltd., 85 F.3d 68, 80 (2d Cir. 1996).[8] Finally, "[i]n the absence of a motive to fabricate" -- and none is alleged here -- there is no basis to ignore "those earmarks of reliability which otherwise establish the trustworthiness of the record." Lewis v. Baker, 526 F.2d 470, 473 (2d Cir. 1975).

---

[8] Their efforts are easily dimissed. For example, even though he stated in GX 11007, which was prepared on March 25, 1998 and signed in early April 1998, that "[t]he last 6 months have been tremendously difficult," Wood later claimed that none of his observations "concerning the competence and cooperative-ness of the client pertained to any matters that occurred before February 3, 1998." Ex. 2, at 1162.

**III. GX 11007 Is Not Being Offered to Prove Or Impeach the Character of Any Witnesses.**

Forbes also contends that GX 11007 should be excluded as improper impeachment because it contains negative character evidence about Forbes' co-conspirators.  FM 11.  Especially coming from a defendant who intends to spend days disparaging the cooperating witnesses' character, this argument rings hollow.  The Government will not proffer GX 11007 as proof of Cosmo Corigliano's, Anne Pember's or Kevin Kearney's character.  Rather, the Government will proffer GX 11007 to help demonstrate why Forbes fought to retain E&Y as CUC/Cendant's auditor.  That GX 11007 contains unflattering comments about Forbes' co-conspirators does not make it inadmissible.  See United States v. Console, 13 F.3d 641, 661 (3d Cir. 1993) ("evidence barred by Rule 608(b) solely for impeachment can be admitted if it is otherwise relevant to a material issue") (internal quotation marks omitted); United States v. DiMatteo, 716 F.2d 1361, 1366 (11th Cir. 1983) ("evidence that is admissible for other purposes is still admissible . . . even though it may by implication reduce the credibility of another witness"), vacated on other grounds, 469 U.S. 1101 (1985); United States v. Ostager, (5th Cir. 1979) ("The fact that the business records might have the incidental effect of proving Posner a liar does not affect their admissibility as relevant evidence.").

**IV. Forbes Cannot Show That Any Supposed "Unfair" Prejudice From the Admission of GX 11007 Would "Substantially Outweigh" the Probative Value of the Exhibit.**

As shown above, GX 11007 is properly admitted for two proper reasons: to prove Forbes' motive to seek to retain E&Y, and to rebut Forbes' defense that he relied in good faith on the E&Y's clean audit opinions. Forbes nevertheless seeks the exclusion of GX 11007 under Fed. R. Evid. 403, because, according to Forbes, the Government will seek to use the document to make the supposedly impermissible argument that, since E&Y knew about the fraud, Forbes should have as well. This argument fails.

Relevant evidence may not be excluded under Rule 403 unless, inter alia, its "probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403 (emphasis added). Under Rule 403, "unfair prejudice 'means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" United States v. Brady, 26 F.3d 282, 287 (2d Cir. 1994) (quoting the Advisory Committee Notes to Rule 403). Relevant evidence introduced by the Government is "meant to be prejudicial" to a criminal defendant; "it is only unfair prejudice which must be avoided" under Rule 403. United States v. Rodriguez-Estrada, 877 F.2d 153, 156 (1st Cir. 1989); United States v. Universal Rehabilitation Services, (PA) Inc., 205 F.3d 657, 664 (3d Cir. 2000) (en banc) ("Rule 403 creates a presumption of admissibility, and the district courts may utilize the rule only rarely to cause the

15

exclusion of evidence.").

Here, as Judge Thompson previously concluded, Forbes faces no risk of unfair prejudice if GX 11007 is admitted.  <u>First</u>, the Court will presumably give the same instruction that Judge Thompson gave during the first and second trials that Forbes cannot be convicted on a <u>respondeat</u> <u>superior</u> theory based on what he should have known, as opposed to what he did know.  FTTr. 16250-16251; STTr. 3697-3699.  Consistent with those instructions, the Government will not argue that Forbes should be convicted of anything because he should have known about the fraud.

<u>Second</u>, as noted above, Forbes has argued that, if E&Y did not know about the fraud, he could not have known about it either.  Evidence that E&Y auditors knew or should have known about the fraud properly rebuts the argument advanced by Forbes.  Having introduced the issue of E&Y's knowledge of the fraud into the case, Forbes is not entitled to exclude evidence relevant to that issue on the grounds of supposed prejudice.

<u>Third</u>, GX 11007 contains no criticism whatsoever of Forbes, and therefore cannot possibly evoke an improper emotional response against him.  See <u>United States v. Zichettello</u>, 208 F.3d 72, 101 (2d Cir. 2000) (rejecting a Rule 403 challenge to evidence that cooperating coconspirators participated in related but uncharged crimes, where the evidence did not implicate the defendants in that conduct); <u>Brady</u>, 26 F.3d 282 at 287 (rejecting

a Rule 403 challenge to evidence of murders committed by the defendants' coconspirators, which did not directly implicate the defendant). Nor does GX 11007 establish that the coconspirators engaged in any conduct that is more heinous than the crimes with which Forbes is charged. See United States v. Perez, 387 F.3d 201, 210 (2d Cir. 2004) (rejecting a Rule 403 challenge to evidence that "was no more sensational than other evidence of" the charged crimes).

Finally, evidence that refutes a defense theory may undermine the defense, but that is hardly a basis to exclude evidence under Rule 403. See United States v. Gelzer, 50 F.3d 1133, 1139 (2d Cir. 1995) (although all inculpatory evidence "is prejudicial to the interests of that defendant," Rule 403 addresses only that prejudice which creates "some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence"); Rodriguez-Estrada, 877 F.2d at 156 ("[t]hat the evidence helped the prosecution and hurt the defendant's chances cannot be gainsaid -- but that did not require exclusion").

**CONCLUSION**

The Government respectfully requests that this Court deny Forbes' Third Trial Motion in Limine No. 16.

                              Respectfully submitted,

                              CHRISTOPHER J. CHRISTIE
                              Special Attorney
                              U.S. Department of Justice

                              *Norman Gross/s*

                              NORMAN GROSS
                              Federal Bar Number 24933
                              MICHAEL MARTINEZ
                              Federal Bar Number PHVO243
                              MARK E. COYNE
                              Federal Bar Number PHV01079
                              Special Attorneys
                              U.S. Department of Justice

Newark, New Jersey
Date:  May 24, 2006

**CERTIFICATE OF SERVICE**

    The undersigned certifies that on this day I caused to be served a copy of the Opposition of the United States To Defendant Walter A. Forbes' Motion to Preclude The Government from Introducing Government Exhibit 11007 (<u>Opposition to Forbes Third Trial Motion in Limine No. 16</u>) via email on:

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901
(202) 434-5005
bsimon@wc.com


                                              <u>*Norman Gross*/s</u>
                                              NORMAN GROSS


Dated:  May 24, 2006
        Camden, New Jersey