UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AHN) |
| | : | |
| | : | |
| v. | : | May 24, 2006 |
| | : | |
| | : | |
| WALTER A. FORBES | : | |

GOVERNMENT'S OPPOSITION TO WALTER A. FORBES' MOTION TO PRECLUDE
THE GOVERNMENT FROM (1) REFERRING TO ROBERT TUCKER'S HANDWRITTEN
NOTES AS BOARD "MINUTES" AND (2) PRESENTING ANY EVIDENCE, CROSS-
EXAMINATION OR ARGUMENT CONCERNING THE DIFFERENCES BETWEEN
GOVERNMENT EXHIBITS 5, 453, AND 77

(Opposition to Forbes Third Trial Motion In Limine No. 23)

INTRODUCTION

In 1996, when Forbes was the Chief Executive Office and

Chairman of the Board of Directors of CUC International, he

approved the relatively simultaneous acquisition of three

companies: Ideon, which provided credit card protection and other

consumer services, and two companies that manufactured software,

Davidson and Associates and Sierra.  First Trial Transcript

("FTTTr.") 614, 2399, 13712-16, 13729-31.  In order to pay the

expenses associated with the acquisition of those three

companies, CUC established a large "merger reserve," a liability

account which was supposed to be used only for that purpose.

FTTr. 445-50.  The merger reserve established to cover the costs

of those three acquisitions was referred to at CUC as the "Ideon

reserve."  FTTr. 2359.

Under Generally Accepted Accounting Principles ("GAAP") CUC

was required to make a good faith estimate of the acquisition-
related expenses, establish the merger reserve at the amount of
that estimate, and then pay the acquisition-related expenses from
the merger reserve as they came due.  FTTr. 448, 10647.  The
conspirators did not comply with GAAP rules for establishing and
using a merger reserve, however.  Instead, they deliberately
inflated the amount of the Ideon merger reserve by tens of
millions of dollars above their good faith estimate of those
costs.  FTTr. 2358-97.

The conspirators used the excess, as they had previously
used other merger reserves, to fraudulently inflate CUC's
publicly reported financial results in two ways.  First, they
charged ordinary operating expenses to the merger reserve.  FTTr.
752-54, 2333-35, 2401-17, 2435-66, 3790-91.  Second, they made
transfers from the merger reserve into the revenue accounts of
various CUC subsidiaries.  FTTr. 567-68, 725-27, 733-76, 935,
987-92, 3591-92, 3606-17, 8922.[1]  The amounts of the transfers
from the merger reserve accounts to revenue accounts came "out of
thin air," and had no basis in any actual transaction undertaken
by the company.  FTTr. 745-49. Those transfers violated CUC's
stated accounting policies, as well as GAAP.  FTTr. 10647-56,
10708-10.  The conspirators attempted to conceal from CUC's

_____

[1]  To the same end, the conspirators had previously
manipulated the merger reserves involving CUC's acquisitions of
smaller companies.  FTTr. 3889-3900, 3920-25, 4321-43, 8529-31.

2

outside auditors, Ernst & Young ("E&Y"), the investing public, and the SEC their fraudulent manipulation of the Ideon merger reserve.  FTTr. 2502-30.  In its publicly disclosed financial results, CUC fraudulently inflated its operating income every quarter in order to meet or exceed earnings targets published by Wall Street analysts.  FTTr. 3782-87, 10654-656, 10660-61.

Had the SEC or the investing public received wind of CUC's fraudulent manipulation of the Ideon merger reserve, the jig would have been up, and CUC's stock price, which had risen dramatically for many years, would have collapsed.  That is precisely what happened after CUC merged with another company, HFS, to form Cendant in December 1997, executives from the former HFS learned of the fraud in April 1998, and publicly disclosed the fraud on April 14, 1998.  FTTr. 254-60.

During the initial trial, the Government presented evidence that during the April 1997 meeting of the CUC Board of Directors, Board member Robert Davidson, the former president of Davidson and Associates before it was acquired by CUC, raised questions about the large size of the Ideon merger reserve.  Corigliano and another member of the charged conspiracy in this case, CUC President and Chief Operating Officer Kirk Shelton, initially responded to Davidson's inquiries.  Forbes then reacted strongly and negatively when Davidson pressed his questions about the Ideon reserve.  FTTr. 5345-55, 5556-67, 7004-10.

Robert Tucker attended that meeting in his capacity as the

corporate secretary of CUC, and took hand-written notes of the
proceedings, which were admitted as Government Exhibit ("GX") 5
(Exhibit 2 to Forbes' Third Trial Motion In Limine No. 23
("Forbes' Motion")).  FTTr. 12653-54.  Those notes stated, in
part, "Cos [Corigliano] went over year end figures, actual versus
budget, and by business units.  Mr. Davidson asked certain
questions concerning the company's reserve policy which were
answered by Cos and Kirk [Shelton]."  GX 5; FTTr. 5358.  Tucker
then had a type-written draft of the minutes prepared, which
contained the following two sentences:

> Mr. Davidson asked certain questions concerning the
> reserves shown on the Company's financial statements
> and the Company's policies regarding reserves.  Mr.
> Corigliano and Mr. Shelton responded to those
> inquiries.

FTTr. 12656-58; Defense Exhibit ("DX") 1089 (Exhibit 4 to Forbes'
Motion).  Tucker then sent a copy of the draft minutes to then
CUC General Counsel Amy Lipton.  FTTr. 11526-37; GX 453 (Exhibit
3 to Forbes' Motion).  On the version of GX 453 that was sent to
Lipton, the two sentences involving Davidson's questions about
the merger reserve were struck out by hand-writing.  FTTr. 14322-
24; GX 453.

When Tucker prepared a second draft of the minutes, he
edited out those two sentences, although he claimed at trial that
he could not recall why he had done so.  FTTr. 12662-69, 12701-
02, 12717-19; DX 841 (Exhibit A hereto).  Tucker then sent the
version of the draft minutes without the two sentences to the

4

Board members for approval.  FTTr. 12662-66; DX 841.  The final version of the minutes that was approved by the Board did not contain the two sentences.  FTTr. 5367-68, 5380, 7012; GX 77 (Exhibit 1 to Forbes' Motion).

As he did before the second trial (Docket 1684) Forbes now moves to exclude any evidence, cross-examination, or argument regarding GX 5, GX 453, or GX 77.  He also moves to preclude the Government from referring to Tucker's handwritten notes as Board "minutes."  In response to Forbes' previous motion on these subjects, the Government agreed not to refer to the handwritten notes as "minutes," and the Government now makes the same representation with respect to the instant motion.

Judge Thompson denied Forbes' prior request to exclude any evidence, cross-examination, or argument regarding GX 5, GX 453, and GX 77.  Docket 1952 (Exhibit B hereto).  Forbes has neither demonstrated cause for this Court to reconsider Judge Thompson's prior ruling on this matter, see Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998), nor shown that this Court should depart from the law of the case, see United States v. Uccio, 940 F.2d 753, 758 (2d Cir. 1991).

**ARGUMENT**

## I.   THE GOVERNMENT DOES NOT INTEND TO REFER TO ROBERT TUCKER'S HANDWRITTEN NOTES, GX 5, AS "DRAFT MINUTES."

Forbes contends that, during the initial trial, the Government improperly referred on several occasions to GX 5 --

CUC corporate secretary Robert Tucker's hand-written notes which memorialized certain matters that were discussed during the April 1997 CUC Board meeting and that Tucker later incorporated into his draft minutes of the Board meeting -- as "draft minutes." Without conceding that any reference that the Government made to the notes during the initial trial was in any way misleading or otherwise improper, the Government does not intend to refer to GX 5 as "draft minutes" during the retrial.

## II. JUDGE THOMPSON PROPERLY REJECTED FORBES' OBJECTIONS TO THE ADMISSION OF DOCUMENTS AND EVIDENCE REGARDING THE DISCREPANCY BETWEEN TUCKER'S HAND-WRITTEN NOTES AND THE FINAL CUC BOARD MINUTES.

Forbes argues that all evidence regarding any discrepancies between: (1) Tucker's hand-written notes, GX 5, memorializing certain events during the April 1997 CUC Board of Directors meeting; (2) draft board minutes prepared by Tucker, GX 453; and (3) the final Board minutes, GX 77, should be excluded as irrelevant or alternatively, as overly prejudicial under Fed. R. Evid. 403. FM 6. During the first trial, Judge Thompson admitted all of those documents over Forbes' objection, and the Government mentioned GX 5 during summation. FTTr. 14916.

Before the second trial, Judge Thompson denied Forbes' motion to exclude any reference to those documents, Docket 1952, but the Government elected to make no mention of those documents during that trial. The Government nevertheless wishes to retain the option of offering those documents into evidence during the

third trial if circumstances dictate that the documents would advance the Government's case.[2]  As Judge Thompson did in denying Forbes' prior motion to exclude any reference to those documents, this Court should preserve the Government's opportunity to do so and deny Forbes' motion, at least at this pre-trial stage of the proceeding.  See United States v. Caputo, 313 F. Supp. 2d 764, 767-68 (N.D. Ill. 2004) (reserving ruling on motion in limine until the record was more fully developed).

Forbes seeks the exclusion of the three documents and any argument regarding their differences based on defense-favorable evidence that was elicited during the first trial, and Forbes' self-serving spin on that evidence.  He proffers five reasons in support of his contention that the challenged evidence is irrelevant in this case.  None justify exclusion of this evidence or demonstrate that the challenged evidence does not meet the very broad test for relevance under Fed. R. Evid. 401.[3]

---

[2]  As Forbes accurately recites, FM 5, the Government inadvertently informed Forbes that it did not intend to seek the admission of any of the challenged evidence, but later determined that this concession was erroneous, and that the Government wanted to preserve its option of offering those exhibits and the testimony regarding them into evidence.

[3]  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Evidence is relevant if it merely "alters the probabilities" of the existence of a consequential fact, and need not make the proposition more probable than not.  Weinstein's Federal Evidence ("Weinstein"), § 401.04[2][b] (2d ed., 2006); see United States v. Schultz, 333 F.3d 393, 415 (2d Cir. 2003); United States v. Schneider, 111

**First**, Forbes contends that the omitted sentences from the draft minutes were not "a red flag that would alert someone to a fraud." FM 6. The Government does not contend that the two omitted sentences, standing alone, were a "red flag" for the fraud. The jury can reasonably conclude, however, that the intentional elision of those sentences after the initial draft minutes were sent to Amy Lipton was undertaken because Lipton or someone else at CUC did not want to publicize through the final board minutes the fact that Bob Davidson had raised questions about the Ideon merger reserve.

The charged conspiracy in this case involved the intentional inflation of the Ideon merger reserve beyond the amount needed to pay the reasonably anticipated costs of CUC's acquisition of Ideon and the two software companies, so that the excess could be used to improperly inflate CUC's earnings. Redacted Indictment, Count 1, ¶¶ 23-36, 41-43. The conspirators who were engaged in that activity would not want to draw any added attention to Davidson's embarrassing questions during the Board meeting about why the Ideon merger reserve was so large. The fact that Tucker removed the two sentences from the draft minutes after sending that draft to Amy Lipton, Forbes' corporate subordinate, is

---

F.3d 197, 202 (1st Cir. 1997). This is a lenient standard. Weinstein, § 401.04[2][c]. "The evidence need only alter the probabilities of a proposition; it need not sway the balance to any particular degree." Weinstein, § 401.04[2][c][ii]; see Doe v. New York City Dept. of Social Services, 649 F.2d 134, 147 (2d Cir. 1981).

evidence that Lipton or someone above her in the CUC hierarchy
wanted those sentences removed.  Forbes points out that the
Government has not identified either Lipton or Tucker as members
of the charged conspiracy.  FM 7.  That Lipton, Forbes'
subordinate at CUC, and Tucker, Forbes' ally (FTTr. 12676-87,
12690-91), were not identified by the Government as a members of
the conspiracy does not mean that they were unwilling to do the
bidding of someone else who was.

   **Second**, Forbes argues that, if Tucker was conspiring with
Forbes to conceal the inflated Ideon merger reserve, he would not
have sent the draft minutes containing the two sentences that
were later deleted to E&Y.  FM 6.  That Tucker sent the first
draft of the minutes to E&Y before removing the two sentences
merely shows either that Tucker was careless, or that he was not
then attempting to conceal the fact that the issue had been
raised, consistent with the fact that, as Forbes points out,
Tucker was not a member of the conspiracy.  It was only after
Tucker sent the first draft of the minutes to E&Y that someone
decided to have those sentences removed.

   **Third,** Forbes points out that the CUC Board of Directors
approved the final version of the minutes, even though they did
not include the two sentences about Davidson's inquiry regarding
the Ideon merger reserve.  From this, Forbes asserts that the
omitted information was not an attempt to conceal Davidson's
inquiry from the Board members.  All or most of those persons

9

were present during the meeting when Forbes' testy exchange with Davidson occurred, so the two sentences about Davidson's inquiry could not have been concealed from them in any event.

Removal of the two sentences about the merger reserves from final Board minutes, however, meant that anyone outside of the Board who had occasion to review the final minutes would never know that the subject of the merger reserves had been raised. Although whomever wanted the two sentences removed from the first draft of the minutes could not go back in time and prevent Davidson's inquiry during the Board meeting from taking place, elimination of the two sentences from the final version of the minutes at least made it less likely that information about Davidson's inquiry would spread beyond the Board.

**Fourth,** Forbes points out that the Government has not alleged that Tucker or Lipton were members of the conspiracy, and that Tucker gave "unrefuted testimony" that he did not edit the minutes for "an improper reason." FM 7. Tucker was a partisan of Forbes, however, FTTr. 12676-77, 12719-23, and the jury was entitled to discredit his self-serving and Forbes-serving testimony whether it was refuted or not. United States v. Baptiste, 264 F.3d 578, 589 (5th Cir. 2001) (jury was entitled to discredit all defense evidence); Kiss v. Kmart Corp., 2001 WL 568974, *3 (E.D. Pa., May 22, 2001) ("A jury may accept or reject testimony, even though the testimony is uncontradicted or unrefuted."); see also United States v. Mangual-Corchado, 139

10

F.3d 34, 46 n. 26 (1st Cir. 1998)(rejecting the defendant's claim which was based on the testimony of a witness whom the jury could simply choose to disbelieve).

**Fifth,** Forbes contends that the evidence fails to establish the identity of the person who directed Lipton to remove the two sentences, and the Government has failed to demonstrate that Forbes was the person who did so.  FM 7-8.  Forbes contends that Lipton could have removed the two sentences for a legitimate reason.  Id. at 8.  Lipton testified at the first trial, however, and failed to give any "legitimate reason" for deleting the two sentences.  Because the deleted sentences just happened to deal with a discussion of a subject that is central to the charged fraud in this case, the deliberate inflation of the Ideon merger reserve, because Forbes reacted with uncharacteristic anger towards Robert Davidson when he broached the subject, FTTr. 7010, and because the person(s) who was responsible for removing the two sentences was either an ally (Tucker) or a loyal subordinate (Lipton) of Forbes, there is a reasonable factual basis for the jury to conclude that Forbes or someone acting at his behest directed Lipton and/or Tucker to remove the problematic sentences from the final version of the minutes.

Forbes' claim that this evidence should be excluded under Fed. R. Evid. 403 because the editing of draft Board minutes is not inherently nefarious should be rejected.  That the jury need not necessarily draw an inference conducive to a finding of guilt

11

from relevant evidence is hardly grounds to exclude that
evidence.  Cf. United States v. MacPherson, 424 F.3d 183, 190 (2d
Cir. 2005) ("The possibility that inferences consistent with
innocence as well as with guilt might be drawn from
circumstantial evidence is of no matter to sufficiency analysis
because it is the task of the jury, not the court, to choose
among competing inferences.") (internal quotation marks omitted).
Forbes has failed to demonstrate that this Court should exclude
the challenged exhibits before the third trial even begins.

## CONCLUSION

The Government respectfully requests that the Court deny
Forbes' Third Trial In Limine No. 23.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
Special Attorney
U.S. Department of Justice

*Norman Gross/s*

NORMAN GROSS
Federal Bar Number 24933
MICHAEL MARTINEZ
Federal Bar Number PHV0423
MARK E. COYNE
Federal Bar Number PHV01079
Special Attorneys
U.S. Department of Justice
970 Broad Street
Room 700
Newark, N.J.  07102
(973) 645-2701

Newark, New Jersey
Date: May 24, 2006

EXHIBIT A

(DEFENSE TRIAL EXHIBIT NUMBER 841)

EXHIBIT B

(DOCKET 1952, JUDGE THOMPSON'S RULING ON FORBES' RETRIAL MOTION
<u>IN</u> <u>LIMINE</u> NO. 18)

## CERTIFICATE OF SERVICE

The undersigned certifies that on this day I caused to be served a copy of the Government's Opposition to Walter A. Forbes' Motion to Preclude the Government from (1) Referring to Robert Tucker's Handwritten Notes as Board "Minutes" and (2) Presenting Any Evidence, Cross-examination or Argument Concerning the Differences Between Government Exhibits 5, 453, and 77 (Opposition to Forbes Third Trial Motion In Limine No. 23) via email on:

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901
(202) 434-5005
bsimon@wc.com


_Norman Gross/s_

NORMAN GROSS


Dated: May 24, 2006
       Camden, New Jersey