```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

 UNITED STATES OF AMERICA       :    No. 3:02CR00264 (AHN)
                                :
                                :
                                :
      v.                        :    May 25, 2006
                                :
                                :
                                :
 WALTER A. FORBES               :
```

**MEMORANDUM IN OPPOSITION TO MOTION OF DEFENDANT WALTER A. FORBES TO PRECLUDE THE ADMISSION OF GOVERNMENT EXHIBIT 616**

(<u>Opposition to Forbes Third Trial Motion In Limine No. 20</u>)

<u>INTRODUCTION</u>

Defendant Walter Forbes has once again moved to preclude the admission of Government Exhibit 616 ("GX 616"), a memorandum dated October 21, 1997 from co-conspirator Kirk Shelton to Henry Silverman, the then-CEO of HFS.  Speaking on behalf of himself and Forbes, Shelton wrote to Silverman in that memorandum that "we . . . believe that keeping Anne Pember in the accounting loop for the old CUC business makes sense."  <u>See</u> Exhibit 1 to FM.[1] Shelton urged Silverman to allow Pember to retain her "budgeting and consolidation functions" and report directly to Cosmo Corigliano rather than to someone from the HFS side of Cendant.

---

[1] "FM" refers to Forbes' Memorandum in Support of the Motion to Preclude the Admission of Government Exhibit 616 (Forbes Third Trial Motion <u>In</u> <u>Limine</u> No. 20).

Notably, Forbes, Shelton, Pember and Corigliano are all members of the conspiracy charged in the superseding indictment.

Forbes does not dispute that GX 616 contains non-hearsay coconspirator statements under Fed. R. Evid. 801(d)(2)(E). Under the Rule, a statement is not hearsay if it is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). The Government will demonstrate by a preponderance of the evidence that: (1) the charged conspiracy was in effect in October 1997 when the memorandum was written and delivered; (2) both Shelton, the declarant of the statement, and Forbes, a recipient of the memorandum and the defendant against whom the statement is being offered, were members of that conspiracy; (3) the memorandum was written during the course of the conspiracy; and (4) the memorandum was written to advance the goals of the conspiracy by retaining Pember and maintaining the fraud. See Bourjaily v. United States, 483 U.S. 171, 175-76 (1987) (enumerating four prerequisites for admissibility of coconspirator statements and establishing preponderance of evidence standard); United States v. Tellier, 83 F.3d 578, 580 (2d Cir. 1996). The fact that the memorandum is addressed to Henry Silverman, who was not a member of the charged conspiracy, does not render it inadmissible under Rule 802(d)(2)(E). See United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1198 (2d Cir. 1989); United States v.

D'Antoni, 874 F.2d 1214, 1217 (7th Cir. 1989). Thus, GX 616 is admissible against Forbes pursuant to Rule 801(d)(2)(E).[2]

Despite conceding that GX 616 contains coconspirator statements under Rule 801(d)(2)(E), Forbes takes issue with the absence of the "two org[anizational] charts" referenced in the memorandum, claiming that introduction of GX 616 would violate the rule of completeness embodied in Federal Rule of Evidence 106, the best evidence rules embodied in Federal Rules of Evidence 1001 and 1003, and Federal Rule of Evidence 403. Forbes' arguments are meritless and should be rejected.

## ARGUMENT

**I.    FORBES HAS NOT SHOWN THAT THE RULE OF COMPLETENESS EMBODIED IN FEDERAL RULE OF EVIDENCE 106 REQUIRES EXCLUSION OF GX 616.**

As in previous trials, see Docket No. 757, Forbes argues that admission of GX 616 without the organizational charts violates the rule of completeness, which is embodied in Fed. R. Evid. 106. FM4-5. Judge Thompson already rejected this argument, concluding that "the text of the memorandum is such that the absence of the organizational charts does not make GX 616 unreliable as to the matter it is offered to prove."

---

[2] As the Government explained in prior briefing, see Docket No. 756, GX 616 is also admissible as a business record under Fed. R. Evid. 803(6), and even incomplete business records may be properly admitted where they otherwise satisfy the requirements of Rule 803(6). See United States v. So, 105 F.3d 667, 1996 WL 734863, *2 (9th Cir. 1996).

3

See Docket No. 809; see also STTr. 1385.[3]  There is no basis to reconsider Judge Thompson's rulings at this juncture, which are the law of the case.[4]  Nonetheless, consideration of Forbes' argument reveals that Judge Thompson's rulings were correct.

Under the rule of completeness, an "omitted portion of a statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion."  United States v. Jackson, 180 F.3d 55, 73 (2d Cir. 1999).  However, the completeness doctrine does not require the admission of portions of a statement that are neither explanatory of, nor relevant to, the admitted passages.  See Jackson, 180 F.3d at 73; see also United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) (stating that district court did not err in not admitting redacted portion of statement because it was, inter alia, not relevant to, or

---

[3] Citations to "STTr." refer to the transcript of the second trial in this case, while citations to "FTTr." refer to the transcript of the first trial in this case.

[4] When "a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case."  United States v. Uccio, 940 F.2d 753, 758 (2d Cir. 1991).  "[A]bsent cogent or compelling reasons to deviate," a court should adhere to its prior rulings.  United States v. Tenzer, 213 F.3d 34, 39 (2d Cir. 2000) (internal quotation marks omitted).  Thus, "[u]nder the law of the case doctrine, courts are understandably reluctant to reopen a ruling once made, especially when one judge or court is asked to consider the ruling of a different judge or court."  Lillbask v. Connecticut Dep't of Educ., 397 F.3d 77, 94 (2d Cir. 2005) (internal quotation marks omitted).

4

necessary to explain, the admitted portion); <u>United States v. Nahrgang</u>, 19 Cust. Ct. 333, 334 (2d Div. App. Term 1947) (upholding trial court's decision that a "full understanding of the affidavit may be obtained from an examination of the affidavit itself, and the legal effect of the affidavit may be determined without knowledge of the details of the unattached exhibits").

Here, the organizational charts are neither explanatory of nor relevant to the matter the memorandum will be offered to prove. GX 616 will be introduced to show that Forbes wanted to "keep[] Anne Pember in the accounting loop for the old CUC businesses" in order to advance the goals of the conspiracy. Ex. 1 to FM. The memorandum itself shows that the organizational charts have little or nothing to do with the request to keep Pember "in the accounting loop." <u>Id.</u> Shelton begins the memorandum by stating that he owed Silverman a response on "two organizational issues" from the prior week. <u>Id.</u> He goes on to explain that the two issues are "the proposed organizational charts <u>and</u> Anne Pember's reporting relationship." <u>Id.</u> (emphasis added). After referring to the organizational charts, Shelton <u>then</u> begins a <u>new</u> paragraph by stating "[i]n addition, we also believe that keeping Anne Pember in the accounting loop . . . makes sense" and setting forth three reasons for that belief. <u>Id</u>. Neither of the organizational charts is discussed or even referenced in connection with Pember's reporting relationship or

in the paragraph explaining why it is necessary to keep her "in the accounting loop." Id. Thus, the memorandum has narrative integrity separate and apart from the organizational charts.

Nor is introduction of the organizational charts necessary to avoid misleading the jury or to ensure a "fair and impartial" understanding of the admitted memorandum. The import of the memorandum, and the purpose for which it will be offered, can easily be understood without the introduction of the organizational charts. The memorandum alone provides for a "fair and impartial understanding" of the request to retain Pember. The organizational charts are therefore wholly unnecessary to permit the jury to comprehend why the advocacy of the retention of Pember is relevant to the charges against Forbes. That the organizational charts may have discussed Pember's "proposed role" after the consolidation, or the "proposed structure" of the merged entities, is superfluous information. FM2-3. Indeed, when asked about the import of GX 616, Forbes himself expressed no confusion or uncertainty due to the absence of the organizational charts. FTTr. 13775, 14357-61; STTr. 2935-96. Accordingly, the rule of completeness is not implicated and, as before, GX 616 should be admitted into evidence.

**II. FORBES HAS FAILED TO DEMONSTRATE THAT THE BEST EVIDENCE RULES EMBODIED IN FEDERAL RULES OF EVIDENCE 1001 AND 1003 REQUIRE EXCLUSION OF GX 616.**

Forbes also challenges the authenticity of GX 616 under Federal Rules of Evidence 1001 and 1003, i.e., the best evidence

6

rules, claiming that GX 616 is an "inaccurate reproduction" of the original document and that "it would be unfair to admit the duplicate in lieu of the original."  FM3.  Forbes' arguments should be rejected.

Forbes' reliance on Rule 1001 is misplaced.  That Rule provides a list of "Definitions" applicable to the best evidence rules, including that a "duplicate" consists of "a counterpart produced by the same impression as the original . . . by . . . techniques which accurately reproduce[] the original."  There can be no question that GX 616 is an "accurate reproduction" of the memorandum.  <u>Addison v. United States</u>, 317 F.2d 808, 816 (5th Cir. 1963) (upholding trial court's admission of tape recording, even though half of the recording was unavailable, because the "part that was reproduced was an accurate reproduction of the conversation it purported to reproduce").

Forbes' argument fares no better under Rule 1003, which provides that:

> A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.

Fed. R. Evid. 1003.  Under the rule, a duplicate should be admitted into evidence and treated for all purposes as it were an original if the authenticity of the original is not seriously questioned, and admission of the duplicate would not be unfair.  The party opposing admission bears the burden of establishing a

genuine and substantial question about the authenticity of the original.[5]  United States v. Bakhtiar, 994 F.2d 970, 979 (2d Cir. 1993); see also United States v. Knohl, 379 F.2d 427, 440-41 (2d Cir. 1967) (finding district court did not abuse its discretion in admitting tape recording where portions of recorded material were "missing," as the recording was not "so suspicious" or "so untrustworthy" that its authenticity was seriously questioned). A genuine challenge to the authenticity of a document must be established by evidence, not mere speculation.  United States v. Chang An-Lo, 851 F.2d 547, 551 (2d Cir. 1988).

Forbes has failed to present a genuine challenge here. During the previous trials, witnesses with knowledge -- including the author himself -- testified that they recognized GX 616 as the memorandum they had seen in October 1997 when the memorandum was written.  Shelton testified that he recognized GX 616 as the memorandum he authored in 1997.  FTTr. 12377-78.  Corigliano testified that GX 616 represented the memorandum Shelton showed him around the time it was written, and identified the initial "K" appearing on the memorandum as that of Shelton.  FTTr. 7293; STTr. 1385.  Most important, Forbes himself testified that he recalled receiving GX 616 in 1997, that he and Shelton had a conversation concerning the subject matter of GX 616, and that he

---

[5]  The "requirement of authentication . . . as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Fed. R. Evid. 901(a).

knew Shelton to be its author.  FTTr. 13775, 14357; STTr. 2936.
Despite being shown GX 616 several times throughout the course of
the two trials, Forbes expressed no uncertainty as to the
authenticity of GX 616 due to the absence of the organizational
charts.  Nor did he ever deny the authenticity or accuracy of the
memorandum.  This is more than sufficient evidence to demonstrate
the authenticity and accuracy of GX 616.  Forbes has failed to
raise a genuine issue through the admission of admissible
evidence or otherwise, regarding the authenticity of the
memorandum.  Accordingly, the first prong of Rule 1003 is
satisfied.

    Nor has Forbes demonstrated that it would be unfair to admit
GX 616 without the organizational charts.  "[U]nfairness must
involve some infirmity with the duplicate itself, such as where
the duplicate fails to reproduce some <u>vital</u> <u>part</u> of the original
document."  32A CJS Evid. § 1102 (emphasis added) (internal
citation omitted).  The Advisory Committee Notes of Rule 1003
make clear that portions of memoranda may be admitted into
evidence, unless the "remainder is needed for cross-examination
or may disclose matters qualifying the part offered or otherwise
useful to the opposing party."  Fed. R. Evid. 1003.  A "technical
and rigorous application of the best evidence rule makes no sense
and is not required."  <u>Knohl</u>, 379 F.2d at 440.

    Forbes' challenge to the authenticity of GX 616 is limited
to the absence of the organizational charts.  The Government will

present GX 616 only to demonstrate that Forbes wanted to keep Pember "in the accounting loop" in furtherance of the fraud. Nothing in the organizational charts would have any bearing on that issue, as is clear from the text of the memorandum itself. The organizational charts here are hardly "vital" to the matter for which the memorandum is being offered, and are in no way necessary or useful to the defense. Therefore, the absence of the organizational charts does not undermine the authenticity and accuracy of GX 616.[6]

Notwithstanding Forbes' burden, he has proffered no sufficient reason to believe that the memorandum is not authentic or that the organizational charts are a critical part of GX 616. Having failed to satisfy his burden, GX 616 is admissible to the same extent and for the same purpose as an original pursuant to Rule 1003. Accordingly, the Government need not satisfy the requirements of Fed. R. Evid. 1004 for the submission of "other evidence of the contents" of an original writing. United States v. Buck, 1987 WL 19300, *9 (S.D.N.Y. Oct. 28, 1987) ("Rule 1004

---

[6] The cases cited by Forbes in support of his position are inapposite. Cf. e.g., Amoco Production Co. v. United States, 619 F.2d 1383, 1391 (10th Cir. 1980) (excluding document because the "most critical part" of the original was not reproduced in the duplicate). Each of those cases involved the exclusion of evidence that was critical to the matter at issue in the case. Here, unlike in the cases cited by Forbes, the organizational charts are not critical -- or even relevant -- to the matter for which the document is being offered. Thus, it is proper for the Court to admit the memorandum without them. Cf. United States v. Sinclair, 74 F.3d 753, 760-61 (7th Cir. 1996) (admitting document because "omitted portions" not useful to defense).

does not apply to 'duplicates' . . . which are specifically addressed by Rule 1003."). This is because a "'duplicate original' under Rule 1003 [meets] the 'original writing' rule's requirements head on," and therefore need not "qualify as secondary evidence of the writing's contents under Rule 1004." In re Macmillan, Inc., 186 B.R. 35, 48 (Bankr. S.D.N.Y. 1995).

Accordingly, the Court should admit GX 616 into evidence as an authentic and accurate reproduction of the memorandum.

### III. THE PROBATIVE VALUE OF GX 616 FAR OUTWEIGHS ANY PERCEIVED UNFAIR PREJUDICE TO FORBES.

Forbes argues that GX 616 should be excluded under Fed. R. Evid. 403, because the probative value is "slight," there is "a serious risk" the Government's "characterization of the document will mislead and confuse the jury" and it would be unfair to admit the document without the organizational charts as evidence of Forbes' involvement in the conspiracy. FM5. Forbes raised this argument previously, see Docket Nos. 745, 757, and Judge Thompson correctly rejected it, see Docket 809 (concluding that the probative value of GX 616 substantially outweighed any danger of any unfair prejudice). Thus, Judge Thompson's ruling is the law of the case, and this Court should decline to reconsider this argument.

In any event, none of Forbes' suppositions justifies exclusion of highly relevant proof of Forbes' involvement in the conspiracy. Evidence may be excluded under Rule 403 only if its

11

"probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403 (emphasis added). Unfair prejudice "means any undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." United States v. Brady, 26 F.3d 282, 287 (2d Cir. 1994). Relevant evidence introduced by the Government is "meant to be prejudicial" to a criminal defendant; "it is only unfair prejudice which must be avoided" under Rule 403. United States v. Rodriguez-Estrada, 877 F.2d 153, 156 (1st Cir. 1989). Any prejudicial effect can be minimized by an instruction that limits the jury's consideration of the evidence to the purposes for which it is admitted. See United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992).

GX 616 is relevant because it proves that Forbes urged Silverman to keep Pember -- who has since testified and pleaded guilty to falsifying CUC's books and records -- "in the accounting loop" for the former CUC businesses after the consolidation. As such, GX 616 demonstrates one aspect of Forbes' participation in the conspiracy: seeking to retain Pember in the accounting loop so as to allow Pember to continue to make fraudulent adjustments to the CUC Divisions' books and records. Forbes' efforts to retain Pember in the accounting loop were intended to conceal the fraud from people outside the conspiracy. GX 616 also corroborates the testimony of government witnesses, including Cendant Chief Financial Officer Michael Monaco and

12

Corigliano, both of whom testified that Forbes lobbied to keep the accounting for the CUC entities in Stanford under Pember's leadership. FTTr. 1625-34; STTr. 576-86. Thus, GX 616 clearly has "a tendency to make the existence of any fact that is of consequence . . . more probable." Fed. R. Evid. 401.

That Forbes is not the memorandum's author is of no moment. It cannot be disputed that the memorandum was written by Shelton, one of Forbes' coconspirators, and that Forbes was an intended recipient and did, in fact, receive it. Even more important, as Forbes testified, Shelton had authority to speak on his behalf and the memorandum thus represented their collective views. FTTr. 14357; STTr. 2936.

The probative value of GX 616 is not substantially outweighed by any supposed unfair prejudice. The organizational charts are irrelevant and unnecessary for an understanding of the statements demonstrating Forbes' advocacy of Pember's retention. The only speculation is Forbes' claim that the "omitted portion" might rebut the Government's characterization of the memorandum. FM5. Given that the matter for which the memorandum is being offered is wholly unrelated to the subject matter of the organizational charts, such speculation on Forbes' part is frivolous.

The "serious risk" is not the Government's "characterization" of the memorandum, but the clear import of GX 616, which is direct evidence of Forbes' involvement in the fraud. That GX 616

13

may inculpate Forbes is not the kind of prejudice Rule 403 was intended to prevent.  See United States v. Gelzer, 50 F.3d 1133, 1139 (2d Cir. 1995) (although inculpatory evidence "is prejudicial to the interests of that defendant," Rule 403 addresses only that prejudice which creates "some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence"); Rodriguez-Estrada, 877 F.2d at 156 ("[t]hat the evidence helped the prosecution and hurt the defendant's chances cannot be gainsaid -- but that did not require exclusion").

## CONCLUSION

The Government requests that Forbes' Third Trial Motion In Limine No. 20 be denied.

                              Respectfully submitted,

                              CHRISTOPHER J. CHRISTIE
Special Attorney
U.S. Department of Justice

*Norman Gross/s*

NORMAN GROSS
Federal Bar Number 24933
MICHAEL MARTINEZ
Federal Bar Number PHV0423
MARK COYNE
Federal Bar Number PHV01079
Special Attorneys
U.S. Department of Justice
970 Broad Street
Room 700
Newark, N.J.  07102
(973) 645-2701

Newark, New Jersey
Date: May 25, 2006

**CERTIFICATE OF SERVICE**

    The undersigned certifies that on this day I caused to be served a copy of the Government's Opposition to Motion of Defendant Walter A. Forbes to Preclude the Admission of Government Exhibit 616 (Opposition to Forbes Third Trial Motion *In Limine* No. 20) via email on:

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901
(202) 434-5005
bsimon@wc.com


                                       *Norman Gross/s*
                                      NORMAN GROSS

Dated: May 25, 2006
       Camden, New Jersey