UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AHN) |
| | : | |
| v. | : | May 26, 2006 |
| | : | |
| WALTER A. FORBES | : | |

**CORRECTED MEMORANDUM IN OPPOSITION TO FORBES' MOTION
TO PRECLUDE HEARSAY STATEMENTS FROM ERNST & YOUNG
DURING THE TESTIMONY OF ANNE PEMBER**

**(Opposition to Forbes Third Trial Motion In Limine No. 17)**

INTRODUCTION

Although the caption of this motion seeks only to preclude the out-of-court statements of auditors from Ernst & Young ("E&Y") to Anne Pember, elicited during Pember's testimony, the motion actually seeks to preclude all of Pember's testimony about her conversations with the E&Y auditors.[1] The testimony, however, both demonstrates Forbes' motive for seeking to retain E&Y as CUC's auditor after its merger with HFS to form Cendant,

---

[1] See Memorandum in Support of Motion of Walter A. Forbes to Preclude Hearsay Statements of Ernst & Young During the Testimony of Anne Pember (Forbes Third Trial Motion In Limine No. 17) ("FM"). In his memorandum, Forbes asks this Court to preclude the "testimony that the Government elicited from Ms. Pember," FM 6, and excerpts statements of not only E&Y but also Pember and Cosmo Corigliano. FM 1-3.

and rebuts his claim of good faith reliance on E&Y's clean audit opinions.

Forbes has previously attempted to preclude this testimony, claiming that it caused a constructive amendment of, or a prejudicial variance from, the indictment. See Dockets 802, 1891.[2] Forbes previously argued that Pember's testimony suggested that the auditors "knew" about the problems with CUC's accounting for the Ideon merger reserve and were "complicit" in the fraudulent scheme to use that reserve to fraudulently inflate CUC's publicly reported earnings, even though the auditors were not identified by the indictment as conspirators in this case. Id.  Judge Thompson previously rejected that argument. E.g., Docket No. 2003.

Forbes adds a new (and meritless) wrinkle to his previously failed argument: that in its rebuttal closing argument, the Government argued that the auditors' out-of-court statements to Pember should be considered for the truth of their contents, rather than for other, non-hearsay purposes. FM 4. Specifically, Forbes challenges the Government's rebuttal statement that Pember's testimony (along with other probative evidence) showed that the E&Y auditors had seen "red flags" in their audit of CUC's books and records. FM 4. That statement,

---

[2] The United States fully briefed this issue in the prior trials.  See Docket Nos. 843, 1905.

Forbes argues, constructively amended the indictment. FM 5.

As shown herein, this new wrinkle lends no additional support to Forbes' constructive amendment or prejudicial variance argument. There is no reason to reconsider Judge Thompson's rulings, which have become the law of the case.[3] Nonetheless, even on its own terms, Forbes' constructive amendment claim is meritless.

Forbes' hearsay challenge to Pember's testimony should also be rejected for the reasons previously adopted by Judge Thompson. The challenged testimony was not offered in the previous trials, and will not be offered in this trial, for the truth of the matters asserted by the E&Y auditors to Pember. Rather, the auditors' statements and questions will be offered for one or more proper, non-hearsay reasons. Those are to: (1) provide context or background to Pember's coconspirator statements; (2) show the effect of those statements on Pember and to explain her subsequent actions; and/or (3) prove the apparent falsity of

---

[3] When "a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." United States v. Uccio, 940 F.2d 753, 758 (2d Cir. 1991). "[A]bsent cogent or compelling reasons to deviate," a court should adhere to its prior rulings. United States v. Tenzer, 213 F.3d 34, 39 (2d Cir. 2000) (internal quotation marks omitted). Thus, "[u]nder the law of the case doctrine, courts are understandably reluctant to reopen a ruling once made, especially when one judge or court is asked to consider the ruling of a different judge or court." Lillbask v. Connecticut Dep't of Educ., 397 F.3d 77, 94 (2d Cir. 2005) (internal quotation marks omitted).

those statements. Accordingly, Pember's testimony about the statements and questions of the auditors to her or in her presence should again be admitted into evidence.

## ARGUMENT

**I. FORBES HAS FAILED TO DEMONSTRATE THAT PEMBER'S TESTIMONY WILL CAUSE A CONSTRUCTIVE AMENDMENT OF OR A PREJUDICIAL VARIANCE FROM THE INDICTMENT.**

According to Forbes, Pember's prior testimony that "suggest[ed]" that E&Y "knew" of the fraud, and had been given "red flags" concerning the falsities in CUC's accounting for the Ideon merger reserve, suggests that the auditors were "in on the alleged conspiracy." FM 6. This, says Forbes, is inconsistent with the conspiracy charged in the indictment. Id. As Judge Thompson previously found, this argument is meritless.

**First**, the third trial jury will be prohibited from finding that Forbes conspired with anyone from E&Y because this Court, like Judge Thompson, will presumably instruct the jury that such a finding is impermissible. Jury instructions are the principal protection against possible confusion regarding the nature and scope of the charges. See United States v. Coyne, 4 F.3d 100, 111-12 (2d Cir. 1993) (admission of relevant evidence regarding pre-conspiracy conduct did not constructively amend the indictment, in light of the district court's limiting instructions).

During the first and second trials, Judge Thompson

4

instructed the jury that the charged conspiracy in this case involved a discrete number of persons, identified those persons, and further instructed that there were no other conspirators. First Trial Transcript ("FTTr.") 16293-95; Second Trial Transcript ("STTr.") 3731. No one from E&Y is included in that list of conspirators. Id. The Government will not oppose the giving of the same instruction during the third trial, and the jury will presumably follow that instruction if given. Weeks v. Angelone, 528 U.S. 225, 234 (2000). An instruction that limits the universe of Forbes' coconspirators will prevent the jury from convicting him of conspiring with anyone from E&Y. See United States v. Lutz, 621 F.2d 940, 942-43 (9th Cir. 1980) (the risk of a variance arising from the admission of evidence of the defendants' participation in uncharged fraudulent conduct was eliminated by jury instructions that the defendants could be convicted only for the "single scheme . . . involving each of the defendants" that was charged in the indictment); see generally United States v. Salameh, 152 F.3d 88, 145-46 (2d Cir. 1998) (no constructive amendment of the indictment where the Government's summation and the final charge closely tracked the indictment, and the jury was given a copy of the indictment for use during deliberations).

**Second**, even if the challenged evidence suggested that the auditors were "in on the alleged conspiracy," FM 6, Forbes'

5

constructive amendment argument still fails.  A constructive amendment of the indictment occurs only "when the charging terms are altered, either literally or constructively," United States v. Clemente, 22 F.3d 477, 482 (2d Cir. 1994), i.e., when the trial evidence "modif[ies] essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury."  United States v. Vebeliunas, 76 F.3d 1283, 1290 (2d Cir. 1996).[4]  So long as "the allegations and the proof substantially correspond," and the trial evidence is consistent with the "core of criminality" alleged in the indictment, there can be no constructive amendment.  United States v. Danielson, 199 F.3d 666, 670 (2d Cir. 1999).[5]  As the Second Circuit has reiterated:

> Because proof at trial need not, indeed cannot, be a precise replica of the charges contained in the indictment, this court has consistently permitted significant flexibility in proof, provided that the defendant was given notice of the core of criminality to be proven at trial.

United States v. Frank, 156 F.3d 332, 338 (2d Cir. 1998).[6]

---

[4] Accord United States v. Joyner, 201 F.3d 61, 69 (2d Cir. 2000); United States v. Mucciante, 21 F.3d 1228, 1234 (2d Cir. 1994); United States v. Weiss, 752 F.2d 777, 787 (2d Cir. 1985).

[5] Accord United States v. Salmonese, 352 F.3d 608, 620 (2d Cir. 2003); United States v. Delano, 55 F.3d 720, 729-30 (2d Cir. 1995).

[6] In assessing a constructive amendment claim, the court must examine the totality of the indictment, and not merely a

Measured against these legal standards, Forbes' argument fails as a matter of law. The three elements of conspiracy to violate the laws of the United States, 18 U.S.C. § 371, are: (1) an agreement between two or more persons to commit an unlawful act; (2) knowingly engaging in the conspiracy intending to commit those offenses that were the objects of the conspiracy; and (3) commission of an "overt act" by one or more members of the conspiracy in furtherance of the conspiracy. United States v. Reyes, 302 F.3d 48, 53 (2d Cir. 2002). The identity and number of conspirators are not elements of the conspiracy charged in the indictment. Thus, there can be no constructive amendment based on a change in the number or identity of Forbes' coconspirators. See United States v. Cahalane, 560 F.2d 601, 605-06 (3d Cir. 1977) (by naming additional co-conspirators and identifying twenty additional overt acts on the eve of trial, "which was explanatory and descriptive rather than inconsistent . . . to the charges in the indictment," the Government did not constructively amend the indictment). Forbes' claim is insufficient to demonstrate a prejudicial variance, much less a constructive amendment of the indictment. See United States v. Lippner, 676 F.2d 456, 465 (11th Cir. 1982) (stating that defendant's claim

---

particular averment which allegedly conflicts with the trial evidence. United States v. Ansaldi, 372 F.3d 118, 127 (2d Cir. 2004); United States v. Teitler, 802 F.2d 606, 617 (2d Cir. 1986).

that he suffered a prejudicial variance between the number of conspirators alleged in the indictment and proved at trial "borders on the frivolous").[7]

**Third**, Forbes' argument also fails on its own facts. As a matter of law, a person cannot be found guilty of a conspiracy unless he or she knowingly and willfully agrees to advance the objects of the conspiracy. See United States v. Svoboda, 347 F.3d 471, 476 (2d Cir. 2003). Someone who merely knows that others are or may be committing a crime is not guilty of that crime. See United States v. Cabrera, 116 F.3d 1243, 1244 (8th Cir. 1997) ("Merely proving that the defendant knew of the existence of the conspiracy is insufficient to support a conviction for conspiracy; rather, the government must establish some degree of knowing involvement and cooperation.") (internal punctuation omitted).[8] Conspicuously absent from Pember's

---

[7] See also United States v. Schurr, 775 F.2d 549, 554 (3d Cir. 1985) (inconsistency between the conspirators identified in the indictment and proved by the trial evidence was a non-prejudicial variance); United States v. Melekh, 193 F. Supp. 586, 599 (N.D. Ill. 1961) ("It has been consistently held that an indictment is not subject to an attack of variance where it is disclosed by the evidence that the jury in fact knew the name of a co-conspirator but failed to state it.")

[8] Accord United States v. Salvatore, 110 F.3d 1131, 1138 (5th Cir. 1997) ("establishing that a defendant merely associated with the conspirators is insufficient to prove membership in a conspiracy"), abrogated on other grounds, Cleveland v. United States, 531 U.S. 12 (2000); cf. United States v. Tyler, 758 F.2d 66, 69 (2d Cir. 1985) (proof that the defendant "merely . . . helped a willing buyer [of illegal narcotics] locate a willing seller . . . . is insufficient to establish the existence of an

testimony is any assertion that any E&Y auditor agreed to participate in the charged fraudulent scheme. That E&Y auditors saw "red flags" in CUC's accounting for the merger reserve, or even knew about the fraud, is insufficient to show the auditors' participation in the charged conspiracy. See Svoboda, 347 F.3d at 476-77 (holding that a person cannot be found guilty of conspiracy unless he knowingly and willfully agrees to advance the objects of the conspiracy).

**Fourth**, the trial evidence will not confuse the jury into convicting Forbes of conspiring with anyone from E&Y. Evidence does not constructively amend the indictment unless it confuses the jury into convicting the defendant of a crime other than the one charged in the indictment. See United States v. Bryser, 954 F.2d 79, 87 (2d Cir. 1992). The Government has charged a conspiracy that does not include anyone from E&Y. See Redacted Indictment, ¶ 17. The Government has not argued, and will not argue, that anyone from E&Y was a member of the conspiracy. Nor will the Government argue that Forbes is guilty because he conspired with anyone from E&Y. Rather, the Government will offer Pember's testimony for the following proper reasons:

- It corroborate the testimony of other witnesses that the coconspirators did not provide timely, accurate or complete information to the auditors. Her testimony will demonstrate not only the existence of the conspiracy, but also her actions, and the actions of her coconspirators, in

---

agreement between the facilitator and the seller").

furtherance of that conspiracy. Such evidence is vital because it supports the Government's argument that Forbes, knowing that Pember would participate in falsifying CUC's records, took efforts to ensure that she remain in her budgeting and consolidation role for the CUC entities after the merger.

- It shows that E&Y consistently issued clean audit opinions year after year even though Pember and her coconspirators constantly rebuffed E&Y's requests for more information or provided patently false information. E.g., STTr. 892-98, 901, 905-9. The challenged evidence shows that Pember and her coconspirators understood that E&Y, which failed to expose the massive fraud perpetrated on its watch, would continue to rubber-stamp CUC's financials after the merger. This is highly relevant to explain why Forbes sought to ensure that E&Y remain as CUC's auditor after its merger with HFS. See generally Salameh, 152 F.3d at 111 (noting that motive evidence is "commonly admitted"); United States v. Reed, 639 F.2d 896, 907 (2d Cir. 1981) (affirming the admission of motive evidence in a prosecution for conspiracy to commit securities fraud and securities fraud). It also corroborates the testimony of other witnesses that Forbes lobbied Henry Silverman and Michael Monaco (the Chief Executive Officer and Chief Financial Officer, respectively, of Cendant) to retain E&Y as the auditor of the former CUC divisions after the merger. FTTr. 1625-34; STTr. 576-86. Evidence regarding Forbes' motive to play his part in the charged fraud has substantial probative value.

- It rebuts a central theme of Forbes' defense: that Forbes relied in good faith on E&Y's issuance, during the conspiracy period, of "clean audit opinions." See FTTr. 16382 (jury instructions regarding Forbes' "Theory of the Case"); STTr. 83, 60-61. During the prior two trials, Forbes has pointed to the fact that E&Y issued clean audit opinions "year after year, quarter after quarter" of CUC's publicly disclosed financial statements, and that Forbes relied on those audit opinions in concluding that CUC's financial statements complied with GAAP and were free from fraud. E.g., STTr. 61, 83. According to Forbes, if Cosmo Corigliano and the other coconspirators were able to conceal the fraud even from the certified public accountants from E&Y who audited CUC's accounting records, how could Forbes, a non-accountant who did not audit those records, detect the fraud?

Pember's testimony shows that the conspirators intentionally failed to provide E&Y with sufficient or accurate information for the auditors to conduct a thorough and accurate audit. E.g., STTr. 893, 898-901, 905-10. Her testimony will also show that the coconspirators knew that E&Y would not seriously question or expose the fraud at CUC. Such evidence is relevant to rebut Forbes' claim that he relied in good faith on E&Y's audit opinions in concluding that CUC's financial statements complied with GAAP and were not false or misleading. See United States v. Khalil, 214 F.3d 111, 122 (2d Cir. 2000) (admitting rebuttal evidence); United States v. Rubin, 37 F.3d 49, 53 (2d Cir. 1994) (same). Having presented a defense of good faith reliance on E&Y's clean audit opinions, Forbes should not be heard to preclude evidence that rebuts his claim of good faith.[9] "[E]vidence . . . [used by the Government] to rebut defense theories" did not have constructively amended the indictment. United States v. McAnderson, 914 F.2d 934, 945 (7th Cir. 1990).

Forbes opened the door wide to Pember's testimony about her

---

[9] The absence of evidence that Forbes was personally involved in Pember's discussions with E&Y is of no moment. "Where a defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant." Salameh, 152 F.3d at 111; see United States v. Brady, 26 F.3d 282, 287 (2d Cir. 1994)(affirming the admission -- in a prosecution for conspiracy to commit murders for the purpose of advancing the defendant's position within a RICO enterprise -- of evidence of murders committed by other coconspirators, which was relevant to prove the charged conspiracy).

conversations with the E&Y auditors regarding the "red flags" of the fraud when Forbes' lawyer stated during his opening statement before the second trial that the auditors did not know of or even see the fraud happening at CUC:

> There is no credible evidence that Walter Forbes saw Cosmo and the accounting staff manipulating the books and records. He hid it so well that these **auditors . . . never saw it**. They never saw it. Walter didn't see it. The auditors who were paid, trained, skilled people, examining the books every quarter, every year didn't see it.

STTr. 68 (emphasis added). Forbes thereby put E&Y's knowledge of the fraud at issue. This Court should not exclude evidence tending to show that E&Y suspected or even knew about the fraud will constructively amend or cause a prejudicial variance from the indictment. Forbes should not be permitted to use evidence as a sword when he likes it, and as a shield when he does not.

Contrary to Forbes' latest contention, the Government did not state during its second trial rebuttal summation that anyone from E&Y was a participant in the charged conspiracy. Rather, the Government drew appropriate inferences from the properly admitted evidence to demonstrate Forbes' motive for seeking to retain E&Y after the merger. STTr. 3587-90.

The Government referred not only to Pember's testimony, which demonstrated that she had provided significant falsehoods to E&Y, but also to Government Exhibit 11007, which "noted many red flags with the CUC audit," STTr. 3587. The Government even

explained to the jury how they should interpret that evidence:

> Ladies and gentlemen, this Ernst & Young performance review [GX 11007] and Anne Pember's testimony brings us back to the very reason that the defendant fought so hard to split the audit between Ernst & Young and Deloitte & Touche.  The defendant knew he could . . . get away . . . with giving Ernst & Young shoddy accounting that raised the red flags, . . . and that [E&Y] would still give him a clean audit opinion letter.

STTr. 3589-90.

This argument was proper rebuttal to the summation of Forbes' counsel that no one saw any "red flags" in CUC's books and records.  E.g., STTr. 3386.[10]  Forbes' lawyer did not say this once or twice, but 28 times.  Given this record, Forbes is improperly seeking to prevent the Government from rebutting one of the key concepts of his defense.  His constructive amendment and prejudicial variance claims should once again be rejected.

## II. NONE OF THE STATEMENTS OF THE AUDITORS FROM E&Y IS INADMISSIBLE AS HEARSAY.

Forbes also argues that Pember's testimony about the statements of the auditors from E&Y to Pember should be excluded as hearsay.  This claim should also be rejected.[11]  A statement

---

[10] Remarkably, when the Government sought to elicit testimony from Pember concerning her understanding of the phrase "red flag," Forbes' counsel objected.  STTr. 890.  Yet, in his closing argument, Forbes' counsel did not hesitate to say that no witness testified that they had seen any "red flags."  STTr. 3386.

[11] Although Forbes appears to be challenging all of Pember's testimony as improper, he only raises hearsay challenges as to the E&Y statements.  FM 1, 5.  Thus, the only issue before

is hearsay if: (1) it is made by someone other than the declarant while testifying at trial or a hearing and (2) it is offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801. Where out-of-court statements are offered for some other purpose, the hearsay rules do not apply. Here, contrary to Forbes' claim, Pember's testimony of E&Y's statements will be offered for several other, non-hearsay purposes.

**First**, admission of the E&Y auditors' statements to Pember is necessary to provide context for other statements that were properly admitted as made during the course and in furtherance of the conspiracy. An out-of-court statement may be admitted to explain the circumstances surrounding relevant events. E.g., United States v. Gilliam, 994 F.2d 97, 103 (2d Cir. 1993) (statements referring to a second gun were not admitted to prove the truth of matter asserted, but only to explain the contested actions of the police officers in returning to the scene); United States v. Lubrano, 529 F.2d 633, 636-37 (2d Cir. 1975) (district court properly admitted, as background information, instructions of investigating agent to government informant that linked defendant to criminal activity); United States v. Ruggiero, 472 F.2d 599, 607 (2d Cir. 1973) (statement, "albeit challengeable as

---

this Court is whether any of the statements made by the auditors of E&Y is hearsay. In any event, no meritorious challenge could be made to any of Pember's other statements, as they are admissible as coconspirator statements pursuant to Fed. R. Evid. 801(d)(2)(E).

hearsay," was admissible as relevant proof of background operative facts).

Here, the challenged evidence will demonstrate the existence of the charged conspiracy and the acts taken in furtherance of that conspiracy. Pember's testimony about the auditors' questions and comments to her concerning the legitimacy of the analysis that Pember supplied to them, and their requests for additional support for the usage of the merger reserve, are necessary to give context to Pember's acts in providing false analyses after false analyses and deliberating lying to the auditors to prevent them from exposing the fraud at CUC. E.g., STTr. 893, 895-98, 900-01, 905-07, 910. If the statements of the E&Y auditors to Pember are omitted, other portions of Pember's testimony would make no sense.

**Second**, the statements of the E&Y auditors to Pember are admissible to show the effect of those statements on Pember. Testimony offered to show the effect on the listener and the listener's subsequent conduct is not hearsay. See United States v. Puzzo, 928 F.2d 1356, 1365 (2d Cir. 1991) (concluding that district court erred in not admitting statements offered for the effect on defendant's actions). Here, the challenged testimony will show that Pember and her coconspirators constantly rebuffed the auditors' requests for more detail of the usages for the merger reserve and that, when the coconspirators did provide more

15

information to E&Y, it was false.  E.g., STTr. 892-901, 905-11. The auditors' continued acceptance of Pember's false and incomplete explanations gave her cause to believe that she and her coconspirators could continue to lie to the auditors without disclosing the fraud.  E&Y's continued acceptance of Pember's falsehoods emboldened her to provide even "worse" lies concerning greater amounts of money.[12]  STTr. 909.  E&Y's history of failing to expose the fraud at CUC is highly relevant circumstantial evidence of Forbes' motive to lobby Silverman and Monaco to retain E&Y as CUC's auditor after the merger.  Thus, the out-of-court statements are admissible for the fact that they were made, not for the truth of the assertions.  See Fed. R. Evid. 801(c), Advisory Comm. Notes; "Under the Federal Rules of Evidence, '[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, [then] the statement is not hearsay.'"; United States v. Sorrentino, 72 F.3d 294, 298 (2d Cir. 1995) ("[t]he statements of the CI were not offered to prove the truth of the matters

---

[12]  This is particularly true of Rabinowitz's "Oh shit" comment.  STTr. 908-09.  Pember understood that comment to mean that Rabinowitz knew that the "unexplained" $45 million of the merger reserve had been used "somehow" and that she was not giving him an explanation.  STTr. 908-09.  Because Pember believed that Rabinowitz ultimately would accept any explanation of the usages of the merger reserve, she provided him another false schedule but with more detail.  STTr. 910.  True to form, Rabinowitz, and thus E&Y, accepted Pember's false representations.

16

asserted but only to render what Sorrentino said in these conversations intelligible"; they thus were not "hearsay evidence"); United States v. Cardascia, 951 F.2d 474, 486 (2d Cir. 1991) (quoting Fed. R. Evid. 801(c) Advisory Committee's note); United States v. Press, 336 F.2d 1003, 1011 (2d Cir. 1965) ("statements admissible to prove the truth of the matter they assert may be admitted if the fact of the assertion is in itself relevant").[13] The fact that clean audit opinions were given is itself a relevant fact; it does not matter whether the opinions were true or false.

**Third**, the questions that the auditors posed to Pember are not "assertions" offered for their truth and thus they cannot be seen as hearsay statements. United States v. Oguns, 921 F.2d 442, 449 (2d Cir. 1990) ("An inquiry is not an 'assertion,' and accordingly is not and cannot be a hearsay statement."). "Because a question cannot be used to show the truth of the matter asserted, the dangers necessitating the hearsay rule are not present." Id. at 449.

**Finally**, some of the challenged out-of-court statements are not hearsay because they will be offered to show their falsity.

---

[13] Accord, United States v. Faulkner, 439 F.3d 1221, 1226 (10th Cir. 2006); United States v. Saada, 212 F.3d 210, 212 n.8 (3d Cir. 2000); Macuba v. Deboer, 193 F.3d 1316, 1324 n.15 (11th Cir. 1999); United States v. Branham, 97 F.3d 835, 851 (6th Cir. 1996); United States v. Cantu, 876 F.2d 1134, 1137 (5th Cir. 1989); United States v. Legarda, 17 F.3d 496, 499 (1st Cir. 1994).

United States v. Pedroza, 750 F.2d 187, 203 (2d Cir. 1984) (statement not hearsay if offered for its "patent falsity"). Thus, E&Y auditor Rabinowitz told Pember that he would not accept another merger analysis like the one he had received for the January 1, 1997 audit. STTr. 902-05. Even after Rabinowitz made that assertion, Pember provided him with an even "worse" analysis than the one he had criticized, because it contained an even bigger "hole" that she made no attempt to explain. STTr. 909. Nevertheless, E&Y issued clean audit opinions for Cendant's December 31, 1997 financial statements. STTr. 1412, 2326. Clearly, Rabinowitz "tolerate[d]" and found acceptable the false information he continued to receive from Pember.

In sum, each of E&Y's statements is admissible for a number of reasons, none of which includes "paint[ing]" E&Y as "complicit" in (as opposed to oblivious to) the fraud. Accordingly, Forbes' motion should be denied, and Pember's testimony should be admitted into evidence without restriction.

**CONCLUSION**

The Government respectfully requests that this Court deny Forbes' Motion in Limine No. 17.

> Respectfully submitted,
>
> CHRISTOPHER J. CHRISTIE
> Special Attorney
> U.S. Department of Justice
>
> *Norman Gross/s*
>
> NORMAN GROSS
> Federal Bar Number 24933
> MICHAEL MARTINEZ
> Federal Bar Number PHV0423
> MARK E. COYNE
> Federal Bar Number PHV01079
> Special Attorneys
> U.S. Department of Justice
> 970 Broad Street
> Room 700
> Newark, N.J.  07102
> (973) 645-2701

Newark, New Jersey
Date: May 26, 2006

**CERTIFICATE OF SERVICE**

       The undersigned certifies that on this day I caused to be served copies of the Government's Corrected Memorandum in Opposition to Forbes' Motion to Preclude Hearsay Statements of Ernst & Young During the Testimony of Anne Pember (Opposition to Forbes Third Trial Motion In Limine No. 17) via email on:

Barry S. Simon, Esq.
Williams & Connolly, LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901
(202) 434-5005
bsimon@wc.com


                            *Norman Gross/s*
                            NORMAN GROSS

Dated: May 26, 2006
       Camden, New Jersey