```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

 UNITED STATES OF AMERICA       :    No. 3:02CR00264 (AHN)
                                :
                                :
                                :
      v.                        :    May 26, 2006
                                :
                                :
                                :
 WALTER A. FORBES                :
```

        **RESPONSE OF THE UNITED STATES TO FORBES' MOTION
        TO PRECLUDE THE GOVERNMENT FROM ARGUING THAT HE
        BREACHED A DUTY OF TRUST TO THE CUC SHAREHOLDERS**

        (<u>Response to Forbes Third Trial Motion In Limine No. 12</u>)

    Despite making no contemporaneous objection whatsoever to the Government's second trial opening statement, STTr. 31-53,[1] defendant Forbes in this motion now claims that the Government improperly asked the jury to convict him on a theory of negligence because he had "breached a duty of 'trust' to the CUC shareholders." FM 1. The Government did no such thing.

    The portion of the Government's opening quoted by Forbes makes clear that "'the defendant committed a crime'" by "'directing this fraud from the very beginning and by telling lie after lie about how CUC was doing.'" FM 2 (<u>quoting</u> STTr. 32). Shortly thereafter, the Government emphasized both its burden to prove Forbes guilty beyond a reasonable doubt and the nature of the

---

    [1] Citations to "FTTr." and "STTr." are to the transcripts of the first and second trials. Citations to "FM" are to Forbes' memorandum in support of his present motion.

crime that he committed:

> The United States will prove beyond a reasonable doubt that the defendant directed a conspiracy to defraud investors. The defendant as the head of CUC was also the head of the conspiracy. The evidence will show that the defendant along with his two right-hand men in the conspiracy, Cosmo Corigliano, the chief financial officer, and Kirk Shelton, the chief operating officer, coordinated this quarter billion dollar fraud.
>
> You'll hear that the defendant didn't get his hands dirty by going into the books himself and changing the numbers; rather, he ordered others to do it. And while lower level employees did the dirty work, the defendant reaped the rewards.

STTr. 33-34.

At no point did the Government imply to the jury "that if it found" that "Forbes provided false information to the shareholders, thereby breaching their trust, the jury should" convict him. FM 4. Nor did the Government suggest that Forbes could be convicted merely if "information he disseminated turned out to be false." Id. Instead, as the Government made clear while summarizing "the quarter billion dollar fraud that the defendant directed while he was CEO and chairman of the board," STTr. 35:

> You will hear that during the [1990's] CUC was actually a profitable company that was growing. But you'll also hear that the defendant wasn't satisfied with that growth. The defendant demanded that CUC be labeled a growth company by Wall Street, and that meant growing at a rate of 25 percent or more per year. And when CUC couldn't achieve that 25 percent growth legitimately, the defendant instructed his subordinates to cook the books to make it look like CUC was growing at that rate.

Nor did the Government "invite[] the jury to convict" Forbes "based upon a belief that [he] had a moral obligation to protect

2

the shareholders, and failed to do so." FM 1. Although Judge Thompson sustained objections to questions about whether Forbes "had a duty to shareholders to protect their investment" and whether he thought he or Cosmo Corigliano "let [the shareholders] down in any way,"[2] the Government properly was permitted to cross-examine Forbes about his "duty to tell the shareholders the truth." STTr. 3002-3003. Far from being an irrelevant or misleading inquiry, such cross-examination addresses an essential predicate for a securities fraud charge: the duty to disclose truthfully.

It is settled law that such a duty "arises from a '"fiduciary or other similar relation of trust and confidence."'" United States v. Szur, 289 F.3d 200, 210 (2d Cir. 2002) (quoting United States v. Chestman, 947 F.2d 551, 565 (2d Cir. 1991) (en banc) (quoting Chiarella v. United States, 445 U.S. 222, 228 (1980))); United States v. Skelly, 442 F.3d 94, 97-98 (2d Cir. 2006) ("the able district court made clear to the jury that it could only convict a defendant on a 'failure to disclose' theory if the broker had assumed a 'fiduciary duty' to disclose such information," which instruction "was consistent with our prior holdings"). By virtue of his position as Chief Executive Officer and Chairman of the Board of CUC, Forbes as a matter of law

---

[2] The Government will not pose these questions during the third trial, unless Forbes opens the door during his cross-examination of any of the Government's witnesses.

"occupied a fiduciary or similar relationship of trust and confidence in the context of Rule 10b-5 criminal liability." Chestman, 947 F.2d at 567-68 (adding that "some associations are inherently fiduciary"; "among these hornbook fiduciary relations are those existing between . . . senior corporate official and shareholder").³  In knowingly and intentionally disseminating materially false and misleading statements to investors, Forbes breached that duty.

The Government also properly cross-examined Forbes about whether he "read each 10-Q and 10-K he signed."  FM 4.  Forbes' defense in this case is that he was a visionary, who delegated to others the day-to-day management of CUC and its finances and -- in his own words on direct -- "would have no way of knowing" whether his right-hand men were committing a massive accounting fraud.  STTr. 2797; see, e.g., STTr. 2746-2747.  Cross-examination about whether Forbes read CUC's SEC filings sheds light on the credibility of that defense.  The jury should be permitted to decide for themselves whether to credit Forbes' testimony that he did not read these critical, materially false and misleading documents before signing them.  If they do not find that testi-

---

³ See also United States v. Moskowitz, 215 F.3d 265, 272 (2d Cir. 2000) (per curiam) (affirming abuse-of-trust enhancement because "[a]mong the primary victims of the instant fraud were Ferro's shareholders, who were misled by the fraudulent inflation of Ferro's share price"; "[t]hese victims were public shareholders, who necessarily and typically entrust their corporate officers with fiduciary duties"); abrogated on other grounds by Crawford v. Washington, 541 U.S. 36 (2004).

4

mony credible, they may choose not to credit other aspects of Forbes' testimony and conclude that he knew that the SEC filings were materially false and misleading. See United States v. Simon, 425 F.2d 796, 809 (2d Cir. 1969) (Friendly, J.) ("'while there is no allowable inference of knowledge from the mere fact of falsity,'" many cases permit "'an inference'" from "'the actor's special situation and continuity of conduct'" that "'he did know the untruth of what he said or wrote'") (quoting Bentel v. United States, 13 F.2d 327, 329 (1926)).[4]

Moreover, during the first and second trials, Judge Thompson stressed to the jury that Forbes could not be convicted on a negligence, breach of fiduciary duty or similar theory:

> There is one point I want to address before I review the elements of the charged offenses. In some other areas of the law, there is a doctrine we call respondeat superior. Under that doctrine, employers can be held liable for an employee's wrongful acts committed within the scope of the employee's employment based solely upon the employer's status as the employer. That doctrine has no applicability in this case.
>
> You have heard testimony that the defendant was a senior executive at CUC and Cendant. I instruct you that you may not vote to convict the defendant based solely on the position or positions that he held at CUC and/or Cendant.
>
> A defendant who is an officer, director, or employee of a corporation is not criminally responsibl[e]

---

[4] See also United States v. Brodie, 403 F.3d 123, 150 (3d Cir. 2005) ("it would be reasonable for a jury to give weight -- indeed, substantial weight -- to the fact that the Defendant was the President of The Bro-Tech Corporation; this, in turn, would support the critical inference that he knew of the sales to Cuba and of the U.S. entity's involvement therein").

5

>   for the alleged acts of his subordinates merely because
>   the defendant held a senior position with the corpora-
>   tion.  Therefore, it is not enough for the government
>   to prove that alleged accounting irregularities oc-
>   curred at CUC and Cendant and that the defendant held
>   senior positions.  Nor is it enough for the government
>   to prove that one or more alleged wrongdoers reported
>   to the defendant.
>
>        In addition, you may not infer that the defendant,
>   based solely on his positions at CUC and Cendant, had
>   any knowledge of the alleged accounting irregularities.
>
>        Furthermore, it is not enough for the government
>   to prove that the defendant should have known about the
>   alleged accounting irregularities at CUC and Cendant.
>   In each instance, the law requires more.  The govern-
>   ment must prove beyond a reasonable doubt that the
>   defendant acted knowingly, willfully, and with the
>   particular unlawful intent required for that offense.

STTr. 3698-3699; see FTTr. 16250-16251.  Because "[f]ew tenets are more fundamental to our jury trial system than the presumption that juries obey the court's instruction," United States v. Adeniji, 31 F.3d 58, 63 (2d Cir. 1994) (quotation marks omitted), a similar charge in this trial will prevent Forbes from being convicted for anything less than "knowingly and intentionally furnish[ing] false information to the public," FM 4.

Finally, the Government does not intend to argue or question Forbes during the third trial about whether he had or breached a "fiduciary" duty to CUC/Cendant shareholders.  The Government does intend to argue, however, that Forbes had a duty to disclose to shareholders and breached that duty by knowingly and intentionally disseminating or causing others to disseminate materially false and misleading information to the public.  As Judge Thompson permitted during the second trial, the Government also

6

intends to cross-examine Forbes about his "duty to tell the shareholders the truth." STTr. 3002-3003.

## CONCLUSION

Accordingly, the Government respectfully requests that this Court deny Forbes' Third Trial Motion in Limine No. 12. If this Court grants the motion, however, the Government respectfully requests that Forbes be barred from arguing or eliciting testimony about fiduciary duties, as well.[5]

          Respectfully submitted,

          CHRISTOPHER J. CHRISTIE
          Special Attorney
          U.S. Department of Justice

          *Norman Gross/s*

          NORMAN GROSS
          Federal Bar Number 24933
          MICHAEL MARTINEZ
          Federal Bar Number phv0243
          MARK E. COYNE
          Federal Bar Number phv01079
          Special Attorneys
          U.S. Department of Justice
          970 Broad Street, Room 700
          Newark, New Jersey 07102
          Tel:  (973) 645-2700
          Fax:  (973) 645-2857

Newark, New Jersey
Date:  May 26, 2006

---

[5] See FTTr. 8017 (justifying request to pursue certain cross-examination because "Corigliano had fiduciary duties as an officer and executive of Cendant"); FTTr. 1922-1927 (co-defendant's cross-examination about whether Government witness understood "the concept of fiduciary" or "violate[ed] any fiduciary responsibility").

**CERTIFICATE OF SERVICE**

    The undersigned certifies that on this day I caused to be served a copy of the Response of the United States to Forbes' Motion to Preclude the Government from Arguing That He Breached a Duty of Trust to the CUC Shareholders (Response to Forbes' Third Trial Motion in Limine Motion No. 12) via email on:

    Barry S. Simon, Esq.
    Williams & Connolly LLP
    725 Twelfth Street, N.W.
    Washington, D.C.  20005-5901
    (202) 434-5005
    bsimon@wc.com

*Norman Gross/s*
NORMAN GROSS

Dated:  May 26, 2006
       Camden, New Jersey