UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA       :  No. 3:02CR00264 (AHN)
                               :
              v.               :  June 9, 2006
                               :
                               :
WALTER A. FORBES               :

GOVERNMENT'S RESPONSES TO FORBES' FINAL OBJECTIONS TO THE COURT'S
FINAL JURY INSTRUCTIONS FROM THE SECOND TRIAL

CHRISTOPHER J. CHRISTIE
NORMAN GROSS
MICHAEL MARTINEZ
MARK E. COYNE
Special Attorneys
U. S. Department of Justice
970 Broad Street
Room 700
Newark, N.J.  07102
(973) 645-2701

TABLE OF CONTENTS

Page

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . 1

GOVERNMENT'S RESPONSE TO FORBES' ERRONEOUS CONTENTION THAT THE
FINAL JURY CHARGE DEFINED THE ALLEGED FRAUD MORE BROADLY THAN
THE INDICTMENT . . . . . . . . . . . . . . . . . . . . . . . 5

GOVERNMENT'S RESPONSE TO FORBES' ERRONEOUS CONTENTION THAT THE
FINAL JURY CHARGE DEFINED THE ALLEGED FALSE STATEMENTS MORE
BROADLY THAN THE INDICTMENT . . . . . . . . . . . . . . . 10

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO JUDGE THOMPSON'S
DECISIONS REGARDING INSTRUCTIONS CONCERNING GENERALLY ACCEPTED
ACCOUNTING PRINCIPLES . . . . . . . . . . . . . . . . . . . 11

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO JUDGE THOMPSON'S
DECISION NOT TO GIVE MISSING WITNESS INSTRUCTION . . . . . . 17

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTIONS
REGARDING REPEATED CHARGE ON PROOF OF INTENT . . . . . . . . 19

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION I(A)
(INTRODUCTION) . . . . . . . . . . . . . . . . . . . . . . . 22

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION I(C)
(INDICTMENT IS NOT EVIDENCE) . . . . . . . . . . . . . . . . 24

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION I(D)
(JUDGE THOMPSON'S DECISION NOT TO NAME A DEFENDANT) . . . . . 25

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION
I(F)(1) (PRESUMPTION OF INNOCENCE AND BURDEN OF PROOF) . . . 27

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION
I(F)(2) (PROOF BEYOND A REASONABLE DOUBT) . . . . . . . . . . 28

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION I(H)
(MATTERS THE JURY MAY NOT CONSIDER) . . . . . . . . . . . . . 29

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION I(J)
(GOVERNMENT AS A PARTY) . . . . . . . . . . . . . . . . . . . 30

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION I(K)
(POSSIBLE PUNISHMENT) . . . . . . . . . . . . . . . . . . . . 31

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(A)
(OVERVIEW) . . . . . . . . . . . . . . . . . . . . . . . . . 33

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(B)
(NO RESPONDEAT SUPERIOR LIABILITY) . . . . . . . . . . . . 34

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(C)
(1) (THE INDICTMENT AND THE STATUTE) . . . . . . . . . . . 35

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(C)
(2) (ELEMENTS OF THE OFFENSE) . . . . . . . . . . . . . . . 39

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(C)
(2)(a) (FIRST ELEMENT - EXISTENCE OF UNLAWFUL AGREEMENT) . . 42

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(C)
(2)(B) (SECOND ELEMENT - MEMBERSHIP IN THE CONSPIRACY) . . . 50

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(C)
(2)(b)(I) (KNOWINGLY AND WILLFULLY) . . . . . . . . . . . . 54

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(C)
(2)(b)(ii) (REQUISITE INTENT) . . . . . . . . . . . . . . . 60

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(C)
(2)(b)(iii) (GOOD FAITH) . . . . . . . . . . . . . . . . . 62

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(C)
(2)(c) (THIRD ELEMENT - COMMISSION OF OVERT ACT) . . . . . . 64

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(C)
(2)(D) (FOURTH ELEMENT - COMMISSION OF OVERT ACT IN FURTHERANCE
OF THE CONSPIRACY) . . . . . . . . . . . . . . . . . . . . 65

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(D)
(1) (THE INDICTMENT AND THE STATUTE) . . . . . . . . . . . 66

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(D)
(2) (ELEMENTS OF THE OFFENSE) . . . . . . . . . . . . . . . 67

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(D)
(2)(a) (FIRST ELEMENT - FALSE STATEMENT OF FACT IN SEC REPORT) 69

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(D)
(2)(b) (SECOND ELEMENT - MATERIALITY) . . . . . . . . . . . 70

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(D)
(2)(c) (THIRD ELEMENT - MADE OR CAUSED TO BE MADE) . . . . . 72

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(D)
(2)(d) (FOURTH ELEMENT - KNOWINGLY, WILLFULLY AND WITH INTENT TO
DECEIVE) . . . . . . . . . . . . . . . . . . . . . . . . . 73

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(E)
(1) (THE INDICTMENT AND THE STATUTES AND REGULATION) . . . . 75

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(E)
(2) (ELEMENTS OF THE OFFENSE) . . . . . . . . . . . . . . . . 77

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(E)
(2)(A) (FIRST ELEMENT - FRAUDULENT ACT) . . . . . . . . . . 79

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(E)
(2)(B) (SECOND ELEMENT - IN CONNECTION WITH) . . . . . . . 83

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(E)
(2)(C) (THIRD ELEMENT - USE OF A MEANS OR INSTRUMENTALITY OF
INTERSTATE COMMERCE) . . . . . . . . . . . . . . . . . . 84

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(E)
(2)(d) (FOURTH ELEMENT - KNOWINGLY, WILLFULLY AND WITH THE INTENT
TO DEFRAUD . . . . . . . . . . . . . . . . . . . . . . . 86

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(F)
(AIDING AND ABETTING) . . . . . . . . . . . . . . . . . . 88

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(H)
(USE OF CONJUNCTIVE IN THE INDICTMENT) . . . . . . . . . . 94

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION III
(THE DEFENDANT'S POSITION) . . . . . . . . . . . . . . . . 95

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION IV(A)
(EVIDENCE IN THIS CASE) . . . . . . . . . . . . . . . . . 98

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION IV(D)
(ACTS AND DECLARATIONS OF ALLEGED CO-CONSPIRATORS) . . . . . 99

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION IV(G)
(EVIDENCE CONCERNING THE CENDANT RESTATEMENT) . . . . . . . 100

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION IV(H)
(CERTAIN TESTIMONY OF STEVEN KERNKRAUT) . . . . . . . . . . 101

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION IV(J)
(USE OF PARTICULAR INVESTIGATIVE TECHNIQUES OR WITNESSES) . . 102

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION IV(K)
(CREDIBILITY OF THE WITNESSES) . . . . . . . . . . . . . . 105

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION IV(N)
(UNCONTRADICTED TESTIMONY) . . . . . . . . . . . . . . . . 106

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION IV(O)
(TESTIMONY OF EXPERT WITNESSES) . . . . . . . . . . . . . . 107

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION IV(Q)
(DEFENSE WITNESS TESTIFYING UNDER PLEA AGREEMENT) . . . . . . 108

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION IV(R)
(NOT PROPER TO CONSIDER GUILTY PLEA OF GOVERNMENT WITNESS) . 109

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION IV(T)
(DEFENDANT'S TESTIMONY) . . . . . . . . . . . . . . . . . . 112

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION V(B)
(NOTES) . . . . . . . . . . . . . . . . . . . . . . . . . . 113

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION V(D)
(EXHIBITS AND TESTIMONY; USE OF THE INDICTMENT) . . . . . . . 114

GOVERNMENT'S RESPONSES TO FORBES' OBJECTIONS TO JUDGE THOMPSON'S
DECISION NOT TO GIVE CHARGES REQUESTED BY FORBES . . . . . . 115

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO JUDGE THOMPSON'S
DECISION NOT TO GIVE CURATIVE INSTRUCTIONS REQUESTED
BY FORBES . . . . . . . . . . . . . . . . . . . . . . . . . 116

CONCLUSION   . . . . . . . . . . . . . . . . . . . . . . . . 117

**<u>INTRODUCTION</u>**

The Court has directed the Government to respond to the "Final Objections of Walter Forbes to the Court's Final Jury Instructions," filed on December 7, 2005 during the second trial in this case. Docket 2022. Those responses are set forth herein. As used herein the "Final Jury Charge" refers the Honorable Alvin W. Thompson's instructions to the second trial jury, given on December 7 and 8, 2005. The Government will address in a separate pleading its two proposed supplemental instructions to the Final Jury Charge. Other than those requested modifications, and a few minor objections advanced by Forbes to the Final Jury Charge which, as identified herein, the Government does not presently oppose, the Government respectfully requests that this Court adopt the Final Jury Charge as the final charge for the third trial.

Before addressing Forbes' specific objections to the Final Jury Charge, a few general observations are in order. This Court directed Forbes to identify the "significant issues" in his objections to the Final Jury Charge. On March 31, 2006, Forbes filed a "Notice of Issues Concerning Jury Instructions," in which he "identifie[d] selected (I) objections [he lodged to the Final Jury Charge] and (ii) requests for jury instructions that were overruled in 2005." Docket 2167. In that Notice, Forbes identified most of his objections to the Final Jury Charge. Nevertheless, he asserted that "all of the instructions he sought but were not given, and all of his [December 2005] objections to

the 2005 jury instructions, are significant."  Notice at 1, n.1.
Forbes plainly intends to preserve all of his December 2005
objections to the Final Jury Charge.  The Government will
therefore address in this submission all of Forbes' objections.

Forbes' objections to the Final Jury Charge are illustrative
of his general litigation strategy, which is to raise every
conceivable obstacle to the completion of this case.  As
demonstrated herein, Forbes' plethora of objections to the Final
Jury Charge, which consume 114 pages, are riddled with complaints
about such inconsequential matters as the wording or the absence
of captions, the sequence of the instructions, or the sequence of
concepts within an instruction, all of which are within the trial
court's very broad discretion.

Forbes raises a welter of objections to most of the
instructions in the Final Jury Charge even though this case turns
largely on a single issue: whether Forbes knew about and
participated in the fraud.  Thus, Forbes' nit-picking objections
addressed to whether the charged securities fraud -- which was
effectuated through numerous communications over the interstate
wires, mails, and through the sale of stock on the New York Stock
exchange -- affected interstate commerce are directed to matters
of no real consequence in this case, and seem intended only to
delay these proceedings.

Judging from the length of Forbes' objections, one would
think that Judge Thompson had concocted a one-sided and error-

2

filled charge with no regard to precedent.  As will be shown

herein, the Final Jury Charge largely tracks the two most widely

used and respected instructional treatises, L. Sand, et al.,

Modern Federal Jury Instructions (Criminal) ("Sand & Siffert")

and O'Malley, Grenig, and Lee, Federal Jury Practice and

Instructions (5th ed.)("O'Malley").

Judge Thompson placed no restrictions on Forbes' efforts to

challenge the instructions.  Both the Government and Judge

Thompson acceded to many of Forbes' objections when they were

grounded in the law and/or logic.  Judge Thompson properly

rejected the myriad complaints set forth in Forbes' Objections to

the Final Jury Charge.  This Court has stated that it will

reconsider each of those objections, thereby allowing Forbes a

double benefit for his scorched-earth practice of raising every

conceivable claim that occurs to his imaginative lawyers,

regardless of legal substance.

Consumption of the Court's and the Government's scarce

resources to address Forbes' barrage of complaints is central to

Forbes' strategy, which seeks to discourage the Government and

the Court from proceeding because the process has become so

costly and time-consuming.  Indeed, as this Court is well aware,

Judge Thompson withdrew from this case precisely because it had

become so time-consuming that he was unable to timely attend to

other matters on his docket.  Although the Government has

responded herein to each of Forbes' Objections to the Final Jury

3

Charge, the Government urges the Court to discourage Forbes' lawyers from the wasteful practice of re-raising matters that were previously resolved by Judge Thompson following his extensive assessment and analysis.

## GOVERNMENT'S RESPONSES TO FORBES' PARTICULAR OBJECTIONS

**GOVERNMENT'S RESPONSE TO FORBES' ERRONEOUS CONTENTION THAT THE FINAL JURY CHARGE DEFINED THE ALLEGED FRAUD MORE BROADLY THAN THE INDICTMENT**

1.  Contrary to Forbes' complaints, the final instructions properly instruct the jury according to general principles that apply to all prosecutions for the charged offenses, viz., conspiracy in violation of 18 U.S.C. § 371; making false statements in reports required to be filed with the Securities and Exchange Commission ("SEC"), in violation of 15 U.S.C. §§ 78ff(a) and 2; and securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 2 and 17 C.F.R. § 240.10b-5.  Judge Thompson properly adopted the practice of the model instructions by describing the elements of those statutory crimes in general terms and allowing the jury to apply the instructions to the evidence in this case, rather than, as Forbes insists, requiring the Court to describe the evidence at length in the instructions.  E.g., O'Malley, § 31.03 ("Conspiracy, The Essential Elements of the Offense Charged"); Sand & Siffert, Instr. 19-3 ("Elements of Conspiracy").

Nor does the commonplace practice of giving general instructions which define the statutory offenses amount to a constructive amendment of the indictment.  The Government's trial evidence will prove the allegations set forth in detail in the redacted superseding indictment.  To prevail on a constructive amendment claim, Forbes must demonstrate that the evidence and

5

the jury instructions "modify essential elements of the offense charged to the point that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged by the grand jury." United States v. Vebeliunas, 76 F.3d 1283, 1290 (2d Cir. 1996). So long as the "the allegations and the proof substantially correspond," and the trial evidence is consistent with the "core of criminality" alleged in the indictment, there is no constructive amendment of the indictment. United States v. Danielson, 199 F.3d 666, 670 (2d Cir. 1999); accord, United States v. Salmonese, 352 F.3d 608, 620 (2nd Cir. 2003). As the Second Circuit has recently explained, even very general allegations that the defendant violated the anti-fraud provisions of the federal securities laws such as 15 U.S.C. § 78j(b) and SEC Rule 10b-5, like those alleged here (see Indictment, Count 4, ¶ 3), are "more than sufficient to encompass" evidence of more specific kinds of fraudulent conduct, and thereby defeat a constructive amendment claim. United States v. Skelly, 442 F.3d 94, 99 (2d Cir. 2006) (indictment allegation that the defendants "caus[ed] retail brokers employed by Walsh Manning and other firms to employ a variety of fraudulent and illegal sales practices was . . . . more than sufficient to encompass" the practice of paying substantially enhanced compensation to push the "house stocks").

Forbes contends that the instructions must confine the fraud to "only the alleged dissemination of materially false financial

6

information in specific SEC filings, annual reports, and press releases."  To the contrary, the charged conspiracy and the fraud involved extensive other conduct by Forbes and his co-conspirators, including conversations between members of the conspiracy and actions by the co-conspirators to falsely inflate CUC's and Cendant's publicly reported earnings; making false representations to officials from the former HFS in order to induce those officials to agree to the merger between HFS and CUC to form Cendant; seeking to convince Cendant officials, after the merger agreement was finalized, to retain CUC's independent auditors from Ernst & Young ("E&Y") as the auditors for Cendant, or at least for those divisions of Cendant that were formerly divisions of CUC; and seeking to induce the former HFS officials to allow Forbes' co-conspirator Anne Pember to remain in her accounting position so that, unbeknownst to the former HFS officials, she could continue her involvement in the fraud. Forbes' objection ignores the distinction between one of the goals of the fraud, which was to make false and fraudulently incomplete statements to the investing public and to the SEC, on one hand, and the entirety of the fraudulent conduct, on the other.

2.  Forbes again seeks to obliterate the distinction between the charges in Counts 2 and 3, which charge making false statements to the SEC, and the charge in Count 4, which charges securities fraud against a particular victim, the Hartford Steam

Boiler Company.  Forbes contends that the only false statements that can serve as the basis for the securities fraud count are those set forth in Counts 2 and 3.  To the contrary, there will be evidence that the decision of the Hartford Steam Boiler Company to purchase tens of thousands of shares of Cendant stock in January and February 1998 was based not only on the false statements identified in Counts 2 and 3 of the indictment, but on the fraudulent inflation of CUC stock over the entire conspiracy period.  The evidence will show that CUC's stock price was fraudulently inflated by the conduct of the conspirators throughout the conspiracy period, and not merely by those false and misleading statements identified in Counts 2 and 3.

For instance, the false financial statements that were included in CUC's quarterly reports in every financial quarter from 1996 through 1997, which were the result of the conspirators' fraudulent consolidation of the financial results of CUC's operating divisions, caused the price of CUC's stock to consistently increase throughout that period.  The evidence will show that the conspirators' creation of the false impression that CUC always met or exceeded its Wall Street earnings targets was a major impetus for the decision of Hartford Steam Boiler's investment manager to purchase the tens of thousands of shares of Cendant stock in January and February 1998.

3.  Forbes' contention that the indictment charges only false statements, and not "some other device, scheme, or artifice

8

to defraud," therefore simply overlooks both the charging
language of the indictment and the Government's trial evidence.
Moreover, Forbes' false dichotomy between "false statements" and
"material omissions" should be rejected.  Whenever CUC, for
instance, published a press release which fraudulently inflated
CUC's earnings for a particular fiscal quarter, that press
release was not only a false statement, but also omitted
materially accurate information about CUC's actual earnings for
that period.  False statements and material omissions are two
sides of the same coin.  Likewise, the continuous issuance of
false press releases and SEC filings over the conspiracy period
can be considered as "device[s]" "scheme[s]" "artifice[s]," and
"tricks" as those terms are defined by the Final Jury Charge.

4.  Contrary to Forbes' assertion, the Government never
"invited the jury to convict Forbes" based on Steven Kernkraut's
testimony regarding falsified membership numbers.  In fact, Judge
Thompson instructed the jury during the second trial that
Kernkraut's testimony about such falsified membership numbers was
stricken.  Second Trial Transcript ("STTr.") 3801.  Nowhere in
the Government's initial or rebuttal summation did it rely on
that stricken testimony.  That stricken testimony therefore
provides no basis for this Court to alter the Final Jury Charge.

**GOVERNMENT'S RESPONSE TO FORBES' ERRONEOUS CONTENTION THAT THE FINAL JURY CHARGE DEFINED THE ALLEGED FALSE STATEMENTS MORE BROADLY THAN THE INDICTMENT**

1.   The current wording of Final Jury Charge II(D)(2)(a) would not cause a constructive amendment of the indictment, because the indictment, the trial evidence and the Government's summation would inform the jury that the itemized fraudulent statements in Counts 2 and 3 were fraudulent for the reasons set forth in the indictment, and not for some other reason.

2.   Nevertheless, the Government does not oppose modifying the Final Jury Charge II(D)(2)(a) so that the description of the false statements in the instructions mirror the description of the false statements in the indictment.   Thus, to use Forbes' example, the modified instruction would state, mirroring the false statements identified in Count 2 of the indictment, that the first false statement at issue in that count was that, for the three months ending October 31, 1997, total revenue was stated to be approximately $775 million when, in fact, total revenue was approximately $44 million less.   Forbes' request for additional language in the Final Jury Charge II(D)(2)(a) regarding the Government's obligation to prove beyond a reasonable doubt that the $775 million figure was overstated by approximately $44 million is unnecessary, given the burden of proof language set forth in the immediately preceding portion, Court Instructions II(D)(2).

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO JUDGE THOMPSON'S DECISIONS REGARDING INSTRUCTIONS CONCERNING GENERALLY ACCEPTED ACCOUNTING PRINCIPLES**

1.  As Judge Thompson correctly concluded, the Government is not required to prove GAAP violations.  Contrary to Forbes' assertion, none of the substantive charges in the indictment are predicated upon GAAP violations.  Indeed, had the conspirators merely violated GAAP, they would not necessarily be guilty of fraud.  See Rothman v. Gregor, 220 F.3d 81, 98 (2d Cir. 2000) (violations of GAAP without fraudulent intent does not amount to a violation of SEC Rule 10b-5).

2.  By the same token, the Government is not required to prove a GAAP violation in order to prove that the conspirators' intentionally false statements about CUC's earnings were false.  The evidence will show that Corigliano and others, acting at the direction of Forbes, Kirk Shelton, and Stuart Bell, intentionally inflated CUC's publicly reported earnings for the purpose of meeting or exceeding the earnings targets published by Wall Street analysts.  It was the goal of the conspirators to falsely report CUC's earnings and meet Wall Street targets because the conspirators understood that only by meeting or exceeding such targets would the price of CUC's stock continue to increase, and continually increasing the price of CUC stock brought a host of benefits to the conspirators.  The conspirators falsely inflated CUC's earnings not because of any misapprehension about the application of GAAP, but because they intended to falsely inflate

11

CUC's earnings without regard to any constraint, GAAP or otherwise, to truthfully report CUC's earnings.  Thus, whether GAAP was ambiguous during the conspiracy period as to the proper accounting treatment of a merger reserve was of no moment to the conspirators, because the goal was to defraud investors, not to comply with GAAP.

Forbes nevertheless seeks to introduce irrelevant considerations about GAAP ambiguity into the case in order to distract the third trial jury from what Forbes has consistently argued is the contested issue in this case: whether or not Forbes knew about and participated in the fraud.  E.g., First Trial Transcript ("FTTr.") 88-91 (opening statement); STTr. 59-60 (opening statement), 3137 (summation).  During the first two trials, Forbes did not testify that he found GAAP to be ambiguous and that he honestly but mistakenly misconstrued GAAP, and for that reason he honestly but mistakenly believed that CUC's publicly reported earnings complied with GAAP.  Nor did he testify that he believed that CUC's and Cendant's publicly reported financial results were accurate because he understood that those results complied with GAAP.  Rather, Forbes testified that he relied wholly on others, such as Corigliano and the outside auditors of CUC, to insure that CUC's reported earnings were calculated in compliance with GAAP, and that he had no involvement in the preparation of CUC's publicly reported financial statements.  E.g., FTTr. 13538-40; STTr. 2694-2700.

Forbes has consistently taken the position that Cosmo Corigliano and others engaged in an accounting fraud at CUC. E.g., STTr. 61-62, 68 (opening statement).  Forbes testified that he was wholly ignorant of that fraud committed by his subordinates.  FTTr. 13537-40; STTr. 2694-2700.  Whether GAAP rules regarding, for instance, how to account for merger reserves, might be subject to different but reasonable interpretations by persons who were honestly attempting to interpret and apply those rules is of no moment in this case, because the (so far) uncontested evidence will show that CUC's accountants who executed the fraud did not intend to comply in good faith with those rules.

3.  Although GAAP is not a mathematical formula, the falsity of CUC's publicly reported earnings will be shown by reference to elementary school mathematics.  The evidence will show that the conspirators fraudulently reported CUC's operating earnings by "making up numbers."  Thus, to give a simplified illustration, 20 of CUC's operating divisions would report to CUC's corporate accounting office that each division had earned $5 million dollars during a particular fiscal year.  The conspirators would then manipulate the consolidation process whereby the results of the 20 operating divisions are added together, and report that CUC had earned a total of $120 million during that year.  A simple mathematical calculation shows that the reported revenue figure was false, regardless of GAAP.  All of the other

13

fraudulent activity undertaken by the conspirators was designed to justify the fraudulent inflation of reported earnings by CUC.

Thus, all of the fraudulent activity produced falsely inflated earnings figures, regardless of GAAP. Evidence that particular accounting manipulations, intended to cover up the fraudulent reporting of earnings, also violated GAAP is relevant to demonstrate that the conspirators had no good faith basis for their accounting manipulations.

4. The Government need not prove that Forbes knew that the reported financial results violated GAAP in order to convict. Even assuming that Forbes was wholly oblivious to GAAP rules or even the existence of GAAP, Forbes was guilty of the fraud when he told Corigliano, in effect, to publicly report that CUC's earnings had met or exceeded Wall Street targets, regardless of whether or not they did. Whether or not Forbes was ignorant of the precise accounting practices that Corigliano and others used, in violation of GAAP, to hit the Wall Street targets is of no moment. Forbes' contrary argument is akin to the baseless proposition that the Government cannot convict a defendant who directs a subordinate to poison drinking water unless it can prove that the defendant understood the pharmacological properties of the particular toxin used by the subordinate.

Additionally, none of the charges in the indictment contain an element that the defendant violated GAAP. Rather, the elements of each offense are accurately set forth in the Final

14

Jury Charge.  For instance, the elements of making false

statements in reports required to be filed with the SEC are

accurately set forth in Final Jury Charge II(D)(2) as follows:

> First, that the SEC report to which that count
> pertains contained a false statement of fact;
>
> Second, that the false statement of fact was
> material;
>
> Third, that the defendant made or caused to be
> made that false statement of material fact in the SEC
> report; and
>
> Fourth, that the defendant acted knowingly,
> willfully, and with the intent to deceive.

Final Jury Charge II(D)(2).

Although the indictment alleges that certain accounting

manipulations performed by the conspirators violated GAAP, the

evidence will establish that Forbes is guilty of causing others

to make false statements of material fact regardless of whether

those statements violated GAAP.  Indeed, the evidence will prove

that the statements were false regardless of GAAP.

For instance, the indictment alleges in Count 2 that Forbes

caused others to make a false statement in CUC's Form 10-Q for

its third fiscal quarter ending October 31, 1997 by stating in

that quarterly report that CUC's total revenue for the three

months ending October 31, 1997 was approximately $775 million.

The evidence will show that CUC did not have revenues of $775

million for the fiscal quarter, but reported that amount of

revenue only by fraudulently adding $44 million with no basis in

15

fact, and without any attempt to comply with GAAP or even with third grade arithmetic. The conspirators added the revenue figures for each of CUC's 22 operating divisions, concluded that the total revenue for CUC as a whole was approximately $731 million, then falsely reported to the SEC and the investing public that it had received revenues of approximately $775 million. The conspirators falsely reported that CUC had an additional $44 million in revenue in order to hit Wall Street's target financial results for that quarter. Such a blatantly false statement about CUC's quarterly revenues was false not merely because it violated GAAP -- which it plainly did -- but because the conspirators were "making up the numbers" to meet Wall Street's targets.

As an additional response to Forbes' objections regarding GAAP, the Government incorporates by reference its memorandum of law that was previously filed in this case regarding this issue, which is appended hereto as Exhibit A.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO JUDGE THOMPSON'S
DECISION NOT TO GIVE A MISSING WITNESS INSTRUCTION**

Judge Thompson correctly declined to instruct the jury to draw an adverse inference against the United States for its failure to present a particular witness at trial.  This request presumes that the witness was available to the Government as a witness.  For the reasons stated in Docket 2301, (Government's Opposition to Forbes' Third Trial Motion No. 3), this witness was unavailable to the United States.  The Second Circuit's decision in <u>United States v. Myerson</u>, 18 F.3d 153, 157-60 (2d Cir. 1994) fully supports Judge Thompson's decision on this point.  <u>See</u> <u>also</u> <u>United States v. Mittelstaedt</u>, 31 F.3d 1208, 1215-16 (2d Cir. 1994) (affirming refusal to give a missing witness charge regarding a witness who, even if sympathetic to the Government, was not within the Government's control).

A missing witness instruction is not warranted when the missing witness is unavailable to the party opposing the instruction.  <u>United States v. Addo</u>, 989 F.2d 238, 243 (7th Cir. 1993) ("The rule is that a defendant is not entitled to a missing witness' instruction where a government witness is equally unavailable to both parties.") <u>citing</u> <u>United States v. Easley</u>, 977 F.2d 283, 286 (7th Cir. 1992); <u>see</u> <u>generally</u> <u>United States v. Bahna</u>, 68 F.3d 19, 22 (2d Cir. 1995) (affirming an instruction that "[n]either the defendant nor the government could benefit" from the absence at trial of certain persons "because each side

17

has an equal opportunity or lack of opportunity, to have them testify"); <u>United States v. Torres</u>, 845 F.2d 1165, 1170 (2d Cir. 1988) ("[C]ourts have been reluctant to find a witness practically unavailable when it appears that the defense has no real interest in calling the witness to the stand, but merely is engaged in a form of gamesmanship in an effort to obtain a missing witness charge.").

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTIONS
REGARDING REPEATED CHARGE ON PROOF OF INTENT**

1.  Judge Thompson did not abuse his very broad discretion
regarding the structure of the Final Jury Charge by instructing
on matters of proof and evidence in conjunction with defining the
elements of the offenses.  In particular, it is entirely
appropriate and commonplace to instruct that proof of a
defendant's mental state may be undertaken through circumstantial
evidence.  Offense elements regarding a defendant's <u>mens rea</u>, as
opposed to elements bearing on observable conduct, are
particularly susceptible to proof through circumstantial evidence
and particularly unsusceptible to proof through direct evidence.
See  <u>O'Malley</u>, § 17.07 ("Proof of Knowledge or Intent"); <u>Sand &
Siffert</u>, Instr. 6-17 ("Knowledge, Willfulness, Intent, Malice");
<u>Sand & Siffert</u>, Instr. 57-25 ("Securities and Exchange Act
Securities Fraud, 15 U.S.C. § 78j(b), Second Element - Knowledge,
Intent, and Willfulness").  Judge Thompson also appropriately
instructed about the manner of proving <u>mens rea</u> in conjunction
with the instructions which identify the <u>mens rea</u> elements for a
particular offense.  <u>Sand & Siffert</u>, Instr. 6-17 and Instr. 57-
25.  Forbes provides no contrary authority.

2, 4. Forbes should not be heard to complain that
instructions regarding the manner of proving <u>mens rea</u> are
"redundant" and overly emphasize proof by circumstantial evidence
when he requested and Judge Thompson agreed to redundantly define

the mens rea elements for each of the charged offenses.  Compare Instruction C(2)(b)(I) (defining "knowingly" and "willfully" in the context of the conspiracy charge) with Instruction D(2)(d) (identically defining the same terms in the context of the false statements charge) and Instruction E(2)(d) (identically defining the same terms in the context of the securities fraud charge). There are other instances in the Final Jury Charge where instructions are redundant, particularly regarding the Government's burden of proof.[1]  Some of those instances emphasize points sought by Forbes, others emphasize points sought by the Government.

Judge Thompson properly exercised his discretion in electing which points to emphasize through repetition, but the larger point is that Forbes should not be heard to demand that repetitive instructions that he does not like should be excised solely because they are repetitive, while repetitive instructions that he requested and received should be left in place.  Although Forbes complains throughout his objections that certain instructions are supposedly "unbalanced," his requests to avoid repetition of some points but not others show that what he seeks is not a balanced final charge, but a lopsided one.

3.  Forbes' contention that the instructions regarding proof

_____

[1]  For instance, the phrases "reasonable doubt" or "beyond a reasonable doubt" are mentioned **98 times** in the 84 page Final Jury Charge, although Forbes objects repeatedly that it is not mentioned even more frequently than that.

of <u>mens</u> <u>rea</u> are factually incorrect in light of technological changes during the "electronic age" is meritless.  Email, computerized files and databases are merely tools for creating, storing, and accessing a person's written statements.  Such statements typically provide only circumstantial, not direct proof of the persons's <u>knowledge</u> and <u>intent</u>.  A statement memorialized in an email, as opposed to parchment, is not direct proof of the speaker's intent and knowledge by virtue of the medium on which it is inscribed.

    5.  The challenged instructions regarding proof of intent are not materially different from <u>O'Malley</u>, § 17.07 or <u>Sand & Siffert</u>, Instr. 57-25.

21

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION I(A)
(INTRODUCTION)

1. Judge Thompson properly exercised his discretion by
reading the indictment in this complex fraud case to the jury as
part of the Final Jury Charge.  The Second Circuit has explained
that:

> in protracted cases involving numerous counts . . . ,
> reference to the indictment often serves as a helpful
> guide in delineating the issues that the jury is called
> on to decide.

United States v. Press, 336 F.2d 1003, 1016 (2d Cir. 1964)

(conspiracy and mail fraud case).  The Second Circuit has also

explained that the trial judge has substantial discretion to read

the indictment as part of its final charge.  Id. at 1016-17.  One

of the applicable model instructions follows suit.  Sand and

Siffert, Instr. 19-1 ("Conspiracy to Violate Federal Law, The

Indictment and the Statute").  So long as the trial judge

instructs the jury that the indictment is not to be considered as

evidence -- as Judge Thompson did in this case, see Instruction

I(C) -- he properly exercises his discretion by submitting the

indictment to the jurors for their consideration during

deliberations.  United States v. Giampino, 680 F.2d 898, 901 n.3

(2d Cir. 1982); United States v. Marquez, 424 F.2d 236, 240 (2d

Cir. 1970).

As an appropriate balance to submission of the indictment,

Judge Thompson gave a lengthy instruction regarding "The

Defendant's Position."  Instruction III.  He did so even though

the indictment spells out for the jury the allegations which the Government is required to prove beyond a reasonable doubt, and Forbes is not required to prove anything. Tellingly, Forbes makes no mention of Instruction III in his objection to Instruction I(A). He presumably believes that this Court should again instruct the jury regarding "The Defendant's Position" even if the Final Jury Charge made no reference to the indictment.

2. Walter Forbes is the defendant in this case. Judge Thompson did not abuse his discretion by referring to Forbes as the defendant throughout the Final Jury Charge.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION I(C)
(INDICTMENT IS NOT EVIDENCE)**

Walter Forbes is the defendant in this case.  Judge Thompson did not abuse his discretion by referring to Forbes as the defendant throughout the Final Jury Charge.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION I(D)**
**(JUDGE THOMPSON'S DECISION NOT TO NAME A DEFENDANT)**

1.  Forbes' objection to this instruction is based on a mischaracterization of the instruction.  It states that the jury "may not draw any inference, favorable or unfavorable, towards the government or the defendant from the fact that certain persons **are not named as defendants** in the indictment or that certain persons **are named as co-conspirators but not indicted**." (Emphasis added).  Forbes contends that evidence that "certain persons are not alleged to have engaged in **wrongdoing** <u>is</u> relevant" (bold emphasis added, underlining in original).  The instruction, however, says nothing about "wrongdoing."  Rather, it speaks only about the Government's decision to criminally charge a person, which properly takes into account not only evidence of wrong-doing but a host of other factors that are irrelevant to the jury's consideration of Forbes' guilt in this case.

This instruction is particularly appropriate in this case, because the version of the indictment that will be presented to the jury in the third trial will not identify Shelton (who was convicted during the first trial) as a defendant, but only as a co-conspirator.  Elimination of this instruction, as Forbes requests, would invite the jury to speculate about the reason for the absence of Shelton as a defendant in this trial, even though there will be abundant evidence of his guilt.

25

2.  Forbes' contention that this instruction suggests that charging decisions regarding cooperating co-conspirators is irrelevant ignores another instruction which expressly addresses that situation and accurately states the law as set forth in the cases that Forbes cites in this objection.  See Instruction IV(P).  Forbes's assertion that this instruction fails to tell the jury how to assess the testimony of a cooperating witness ignores the totality of the Final Jury Charge.  An instruction may not be judged in isolation, however, but must be assessed in the context of the charge as a whole and the trial record. Estelle v. McGuire, 502 U.S. 62, 72 (1991) (internal quotation marks omitted); accord, United States v. Whab, 355 F.3d 155, 160 (2d Cir. 2004).

3.  Forbes complains that the instruction is "unclear" because it references "certain persons."  That uncertainty can be clarified by changing the phrase "certain persons" to "any persons."  As to Forbes' concern about the different situations of persons such as Shelton, about whom there was abundant evidence of guilt during the first two trials, and persons such as Silverman and Monaco, about whom there was no evidence of guilt, the instruction properly directs the jury not to consider the Government's charging decisions, period, regardless of any evidence of guilt.

### GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION I(F)(1) (PRESUMPTION OF INNOCENCE AND BURDEN OF PROOF)

Walter Forbes is the defendant in this case.  Judge Thompson did not abuse his discretion by referring to Forbes as the defendant throughout the Final Jury Charge.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION
I(F)(2) (PROOF BEYOND A REASONABLE DOUBT)**

Walter Forbes is the defendant in this case.  Judge Thompson
did not abuse his discretion by referring to Forbes as the
defendant throughout the Final Jury Charge.

28

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION I(H)**
**(MATTERS THE JURY MAY NOT CONSIDER)**

Walter Forbes is the defendant in this case.  Judge Thompson did not abuse his discretion by referring to Forbes as the defendant throughout the Final Jury Charge.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION I(J)**
**(GOVERNMENT AS A PARTY)**

Judge Thompson properly exercised his discretion by declining to give an irrelevant instruction about the Government "winning" or "losing."  Although the proposition that "the Government always wins when justice is done" is a truism, considerations about "winning" and "losing" are irrelevant to the jury's performance of its duty.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION I(K)**
**(POSSIBLE PUNISHMENT)**

1.  Judge Thompson properly gave this standard instruction
that the jury should not consider the punishment that might
accompany a conviction.  See O'Malley, § 20.01 ("Verdict -
Election of Foreperson -  Duty to Deliberate - Unanimity -
Punishment - Form of Verdict - Communication with the Court");
Sand & Siffert, Instr. 9-1 ("Punishment").  Considerations of
punishment are irrelevant, because a jury must apply the same
burden of proof and presumption of innocence regardless of
whether the defendant is subject to a long sentence or a short
one.  This instruction is necessary to discourage the jurors from
acquitting Forbes, an older man, solely to spare him from a
lengthy prison sentence.  Such an outcome would amount to
improper jury nullification.[2]

2.  Forbes argues that Instruction 1(I) sufficiently
addresses the issue of sympathy, and that this instruction is

---

[2]    The Second Circuit has explained:

> Inasmuch as no juror has a right to engage in
> nullification -- and, on the contrary, it is a
> violation of a juror's sworn duty to follow the law as
> instructed by the court -- trial courts have the duty
> to forestall or prevent such conduct, whether by firm
> instruction or admonition or, where it does not
> interfere with guaranteed rights or the need to protect
> the secrecy of jury deliberations, by dismissal of an
> offending juror from the venire or the jury.

United States v. Thomas, 116 F.3d 606, 616 (2d Cir. 1997).
Instruction I(K) of the Final Jury Charge properly serves the
purpose identified in Thomas.

31

unnecessary.  Instruction 1(I), a very general admonition, does
not address head-on the potential reluctance of some persons to
subject an older defendant with no prior criminal history such as
Forbes to a potentially lengthy prison sentence.  Judge Thompson
properly exercised his discretion by addressing that concern
under the circumstances of this case.

3.  Instruction 1(K) properly conveys the dichotomy that, as
between the jury and the judge, the judge determines the
punishment.  That the judge must consider various sources of law,
including the Sentencing Guidelines, in fashioning the
appropriate sentence does not gainsay the relevant point that the
jury should not concern itself with possible punishment.

4.  The second paragraph of Instruction 1(K) properly
underscores the first paragraph by reminding the jurors of the
scope of their function in the trial, and contrasting that
function with one of the judge's functions, to determine the
proper punishment.  As such, it is not "unnecessarily
repetitive."  Forbes has failed to demonstrate that the second
paragraph misstates the law in any manner, so that paragraph is a
proper exercise of the trial judges' broad discretion in
selecting the wording of an instruction that properly articulates
the law.  United States v. Lee, 439 F.3d 381, 387 (7th Cir.
2006).

### GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS
### TO INSTRUCTION II(A) (OVERVIEW)

1.  The Government does not oppose insertion of the word "alleged" before the word "crime."

2.  Forbes opposes the reference to "aiding and abetting" based on his objections to Instruction II(F).  The Government will address those objections in responding to Forbes' objections to Instruction II(F).

3.  Walter Forbes is the defendant in this case.  Judge Thompson did not abuse his discretion by referring to Forbes as the defendant throughout the Final Jury Charge.

4.  In this instruction, Judge Thompson properly referred to and read the indictment, for the reasons stated in the Government's Response to Forbes' Objection to Instruction I(A), supra.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(B)
(NO RESPONDEAT SUPERIOR LIABILITY)**

Walter Forbes is the defendant in this case. Judge Thompson did not abuse his discretion by referring to Forbes as the defendant throughout the Final Jury Charge.

### GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(C)(1) (THE INDICTMENT AND THE STATUTE)

1.   The Government has previously responded to Forbes' objection to the reading of the indictment.  <u>See</u> Government's Response to Forbes' Objection to Instruction I(A).

2.   Judge Thompson properly exercised his discretion by reading the relevant statutory language for each of the charged crimes as part of the Final Jury Charge.  This is standard practice.  <u>See</u> <u>O'Malley</u>, § 13.02 ("The Statute Defining the Offense Charged").  The applicable model instructions for § 371 conspiracy recommends that the statutory language be read during the charge.  <u>O'Malley</u>, § 31.02 ("Conspiracy to Commit an Offense or to Defraud the United States (18 U.S.C. § 371), The Statute Defining the Offense Charged"); <u>Sand & Siffert</u>, Instr. 19-1 ("The Indictment and the Statute").  Forbes speculates that the statutory language "may be confusing," but declines to identify any confusing language.  Nor does he cite any authority which discourages the reading of the relevant statutes during the final charge.

3.   Forbes complains because Judge Thompson did not order the various concepts of this instruction in the same sequence that Forbes requested.  This Court should reject Forbes' efforts to, in effect, require this Court to engage in the time-consuming and wasteful process of re-ordering the Final Jury Charge.  Judge Thompson formulated the Final Jury Charge following the

35

submission of lengthy pleadings by the parties and following
protracted charge conferences during the first and second trials.
Forbes provides no basis for this Court to reconsider Judge
Thompson's discretionary rulings regarding such matters as the
sequencing of concepts within a particular instruction.  Forbes
does not contend, for instance, that the instruction fails to
properly identify each of the elements of the charge of
conspiracy.  Nor does he contend that the instruction's
definition of the element of an agreement to commit an unlawful
objective is legally erroneous.

4.  In this objection, Forbes again does not argue that the
statement that "conspiracy is a separate offense" is legally
erroneous, and indeed it is not.  See United States v. Sessa, 125
F.3d 68, 73 (2d Cir. 1997) ("We have long held that substantive
RICO and RICO conspiracy are separate offenses.").  The
instruction is routinely given.  Sand & Siffert, Instr. 19-2
("Purpose of the Statute").  It is particularly appropriate here
because the evidence will show that Forbes's role in the
conspiracy was to direct others to commit the charged crimes.  As
the CEO and Chairman of the Board of CUC, Forbes did not have to
dirty his own hands with the fraudulent accounting manipulations.

Forbes nevertheless contends that the jury can "infer" that
conspiracy is a separate offense from the fact that the other
offenses are separately defined.  Judge Thompson did not err,
however, by making a relevant point of law explicit, rather than

36

leaving it for the jury to infer.  Other than consuming the time and energies of the Government and the Court, this objection serves no purpose.

Forbes' other objections are likewise meritless.  That the Government will present evidence during the third trial that Forbes and his coconspirators committed the object offenses of the conspiracy does not mean that the jury will find that those object offenses were committed.  Accordingly, Judge Thompson properly instructed that the verdicts on the object offenses do not control the verdict on the conspiracy charge.  The Final Jury Charge is riddled with references to the Government's burden of proving every element beyond a reasonable doubt, and to the intent and other elements of conspiracy.  This particular instruction is not "unbalanced" because it does not repeat yet again the instructions regarding the Government's burden of proof and the elements of conspiracy.

5.  Forbes' objection to the identification of Stuart Bell as one of the unindicted conspirators in this case is meritless.  There was evidence during the first two trials that Bell participated in the conspiracy.  To the extent that Forbes is complaining about Judge Thompson's denial of Forbes' Retrial Motion No. 7, that motion was properly denied for the reasons set forth in Docket 1755 (Government's Opposition to that Motion), and in Docket 2301 (Government's Opposition to Forbes' Third Trial Motion No. 5).

37

6.  Walter Forbes is the defendant in this case.  Judge Thompson did not abuse his discretion by referring to Forbes as the defendant throughout the Final Jury Charge

7.  Forbes' objection to the level of specificity in the references to the object offenses of the conspiracy fails to address a substantive matter, and is needlessly argumentative. The Final Jury Charge is already very lengthy without adding the unnecessary and redundant verbiage proposed by Forbes.  Reading the instructions as a whole, there is no likelihood that the jury will be confused about the identity of the statutes or regulations that pertain to "securities fraud" in this case, or the crime of making false statements required to be filed with the SEC.

### GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(C)(2) (ELEMENTS OF THE OFFENSE)

1.  Judge Thompson explained during the Final Jury Charge that "[t]he captions and the table of contents are not part of the instructions.  They are present solely for your convenience, to assist you in locating different instructions."  Section I, "General Instructions, A. Introduction."  Accordingly, Forbes' objection to the caption (which fails to mention Judge Thompson's instruction about the captions) is of no consequence, and wastes the time of the Court and the Government.  Nevertheless, the Government does not object to Forbes' request for such a caption.

2.  Reading the instructions as a whole, the Final Jury Charge sufficiently instructs the jury regarding the "knowingly" and "willfully" elements of the crime of conspiracy.  See Instruction C(2)(b)(I).  There is no need to duplicate that instruction in this one.

3.  Because the crime of making false statements in reports required to be filed with the SEC does not require an "intent to defraud," but only the "intent to deceive," Forbes' proposal was properly rejected by Judge Thompson.  See Instruction II(D)(2)(d)("Fourth Element of Making False Statements to the SEC, Knowingly, Willfully and With the Intent to Deceive").  Forbes declines to cite any authority for his assertion that "intent to defraud" is an element of false statements to the SEC.

Section § 78ff(a) of Title 15 of the United States Code

establishes criminal liability for anyone who knowingly and willfully "makes, or causes to be made, any statement in any . . . report, or document required to be filed under [Chapter 2B of Title 15] or any rule or regulation thereunder, which statement was false or misleading with respect to any material fact."  This prohibition is similar to the prohibition established by 18 U.S.C. § 1001(a) against knowingly and willfully providing "any materially false, fictitious, or fraudulent statement or representation . . . in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States."  Neither statute provides that the false statement must also be made with the "intent to defraud," and the Courts have held that such an intent is not required under § 1001.  <u>United States v. Godwin</u>, 566 F.2d 975, 976 (5th Cir. 1978) ("§ 1001 does not require that the government prove a specific intent to defraud," although it does require proof of an "intent to deceive;" the two "are not synonymous [since] [d]eceive is to cause to believe the false or to mislead [whereas] [d]efraud is to deprive of some right, interest or property by deceit").[3]

_____

[3] <u>Accord</u>, <u>United States v. Sanders</u>, 834 F.2d 717, 719, n.4 (8th Cir. 1987); <u>United States v. Markey</u>, 693 F.2d 594, 596 (6th Cir. 1982); <u>United States v. White</u>, 765 F.2d 1469, 1472 (11th Cir. 1985); <u>United States v. Mercado</u>, 871 F. Supp. 103, 106 (D.P.R. 1994) ("Since the purpose of 18 U.S.C. § 1001 is to protect the government against those who would cheat or mislead it in the administration of its programs, a charge that includes
(continued...)

4.   The Government does not oppose the insertion of the word "alleged" before the word "conspiracy."

5.   The Government does not oppose substitution of the word "any" for the words "one or more."

6.   There is no material difference between the challenged portion of the instruction and Forbes' proposed language, so this objection should be overruled.

---

[3](...continued)
specific intent to deceive along with the other elements
mentioned above comports with 18 U.S.C. § 1001").

### GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(C)(2)(a) (FIRST ELEMENT - EXISTENCE OF UNLAWFUL AGREEMENT)

1.  Forbes' blanket, unsupported assertions that this instruction is "extremely confusing" and "unbalanced" provide no basis to change the instruction.  Forbes' complaint that the instruction describes what the jury does not need to find, in addition to what the jury must find, is unsupported by authority and contradicted by the model instructions.  O'Malley, § 31.04 ("Conspiracy - Existence of an Agreement")(bracketed paragraph); Sand & Siffert, Instr. 19-4 ("Conspiracy - Existence Agreement"). The statements regarding things that the jury need not find ("an express or formal agreement" or a statement by the conspirators about "what the scheme was, its objects or purpose" accurately set forth the law.  They are necessary to dispel any possible misconceptions a lay jury may have about the differences between a criminal conspiracy and a formal and lawful agreement to accomplish a lawful end.  Forbes' complaints that the instruction is improper because it discusses methods of proving a conspiracy by circumstantial evidence is a recapitulation of his prior, meritless objection on this subject, as explained supra in the Government's Response to Forbes' Objections to Instructions Regarding Repeated Charge on Proof of Intent.

2.  Forbes grounds this objection on his meritless contention that the conspiracy charge is unconstitutionally vague.  Judge Thompson rejected a similar claim before the first

trial.  Docket 201, Oral Order dated April 19, 2004, denying
Forbes' Pre-Trial Motion No. 29.  See also Docket 295,
Government's Opposition to Forbes' Pre-Trial Motion No. 29.
Forbes provides no basis for this Court to reconsider that
ruling.

Forbes again complains that the instruction does not itemize
the concepts in the manner most beneficial to him.  For instance,
he complains that the instruction should identify the objects of
the unlawful agreement earlier in the instruction than Judge
Thompson chose to do, but effectively concedes that the
instruction properly itemizes all of the objects.  His ordering
complaints fail to demonstrate legal error or any reason for this
Court to waste its time restructuring a perfectly proper
instruction to make it more conducive to Forbes' liking.  Forbes
cites United States v. Mollica, 849 F.2d 723, 729 (2d Cir. 1988),
but that case had nothing to do with ordering concepts in a jury
instruction.

3.  Forbes complains that the intent requirements are not
repeated in this instruction about the element of agreement.
Once again, his complaint stems from his meritless insistence to
read each instruction in isolation and complain about the absence
of concepts that are described in other, oftentimes immediately
adjacent instructions.  For instance, in Instruction II(C)(2),
the instruction which immediately precedes Instruction
II(c)(2)(a), the Court states that the second element of the

43

offense of conspiracy is that the defendant "knowingly and willfully became a member of the conspiracy."  In Instruction II(C)(2)(b)(I), which immediately follows Instruction II(C)(2)(a), the Court defines the terms "knowingly" and "willfully."  Instruction II(C)(2)(a) is not objectionable because it does not repeat the intent elements a third time in the context of the conspiracy instructions.  Forbes' complaint that the intent elements should be regurgitated yet again in other paragraphs of Instruction II(C)(2)(a) is yet another example of his insistence of ad nauseam repetition of concepts that are favorable to him, while concepts that are favorable to the Government should be addressed by implication, rather than expressly.

4.  Forbes' complaints about paragraphs 2, 4, and 5 are predicated on the misguided notion that the Government's proof of the existence of the unlawful agreement is limited to direct evidence, rather than to circumstantial evidence.  Although the Government will present direct evidence of the existence of the unlawful agreement, it will also present circumstantial evidence, and paragraphs 2, 4, and 5 properly address proof of the existence of an unlawful agreement by circumstantial evidence. See Sand & Siffert, Instr. 19-4, third and fourth paragraphs. Contrary to Forbes' assertion, the indictment makes allegations about the existence of the conspiracy, but does not purport to limit the kind of evidence that may be presented to prove those

44

allegations.

5.  Forbes again objects to the use of general rather than specific terms, such as "an unlawful act," and an "unlawful purpose."  He cites no authority for his contention that an instruction is improper merely because it does not incorporate the particular allegations in the indictment when defining an element of a statutory offense, and there is none.  See O'Malley, § 31.04; Sand & Siffert, Instr. 19-4.  Judge Thompson properly exercised his discretion by describing the element of the offense using some general terms.

Additionally, Forbes is speaking out of both sides of his mouth by complaining that this instruction is not limited to the particular allegations in the indictment, after repeatedly objecting to Judge Thompson's decision to read the indictment to the jury as part of the Final Jury Charge.  Forbes should not allowed to have it both ways.

Finally, Forbes provides an incomplete account of the proceedings when he mentions the introduction of certain testimony regarding allegedly false membership numbers, without mentioning that Judge Thompson sustained his objection to that testimony and struck it from the record.  STTr. 3801.

6.  Forbes' complaint that the instruction does not set off the third paragraph with its own "sub-heading" does not address a matter of substance.  Nevertheless, the Government does not

object to Forbes' request for such a sub-heading.

7.   Forbes complains that the fourth paragraph addresses direct and circumstantial evidence because it is supposedly repetitive.  As shown above, Forbes strives for repetition when it suits his purposes, and denounces it when it does not. Forbes' complaint that the discussion of circumstantial evidence of an unlawful agreement and inferences that can be drawn from such evidence dilutes the burden of proof is erroneous, and ignores the Final Jury Charge's other instructions which squarely define the Government's burden to prove each element beyond a reasonable doubt.  That such proof can come from inferences arising from circumstantial evidence is hardly a dilution of the Government's burden.  <u>E.g.</u>, <u>United States v. MacPherson</u>, 424 F.3d 183, 190 (2d Cir. 2005); <u>United States v. Piper</u>, 298 F.3d 47, 59 (1st Cir. 2002).  Forbes' complaint that this instruction suggests that Corigliano's testimony should be accepted by the jury is an unreasonable reading of the neutral language, and ignores other portions of the Final Jury Charge which state that the jury, not the Court, are solely responsible for assessing credibility.  <u>See</u> Instructions I(B) ("Province of the Court and Jury"); IV(K)("Credibility of Witnesses").

8.   Forbes' objection to the fifth paragraph as "prejudicial" and "unbalanced" is meritless.  The instruction properly informs the jurors about matters that they "may . . .

46

consider" in deciding if there was "proof that a common design existed." Such an instruction carries the obvious negative implication that the jury need not consider such factors.

9. Forbes' objection to the use of "generic crimes" in the sixth paragraph, rather than a recitation of the precise allegations in the indictment, is redundant of his fifth objection to this instruction, which is addressed above.

10. The Government does not object to insertion of the word "alleged" in front of the word "conspiracy" in the sentences identified in Forbes' objection.

11. Forbes' redundant objection to the identification of Stuart Bell as one of the unindicted conspirators in this case is meritless for the reasons set forth above in the Government's Response to Forbes' Objections to Instruction II(C)(1), paragraph 5.

12. Forbes erroneously asserts that the indictment charged a scheme only to make false statements in SEC filings and press releases, and did not charge any other kind of securities fraud, such as material omissions, or "devices," "schemes," and "artifices to defraud." He apparently has not read all of the indictment. As previously explained, and contrary to Forbes' assertion, the securities fraud counts of the indictment were not limited to "false statements." Rather, the indictment alleges that Forbes "(I) **employ[ed] devices, schemes, and artifices to**

47

**defraud**; (ii) [made] untrue statements of material facts **and [omitted] to state material facts necessary in order to make the statements made . . . not misleading**; and (iii) engag[ed] in acts, practices, and course of business which operated as a fraud and deceit on the Hartford Steam Boiler." <u>See</u> Indictment, Count 1, ¶ 17(a)(i-iii); Count 4, ¶ 3.  Additionally, the trial evidence will establish that Forbes engaged in each of those means of committing securities fraud.  Forbes' attempt to limit the allegations in the indictment and the Government's evidence to proof of only "false statements" therefore misreads the indictment and the trial evidence.  Because the instructions track the allegations of the indictment, the instructions cannot amount to a constructive amendment of the indictment.  <u>See</u> <u>Skelly</u>, 442 F.3d at 99.

Forbes' reference to a Government brief responding to one of Forbes' mistrial motions during the first trial in 2004 is inapposite.  The Government's 2004 pleading obviously was not addressed to the Final Jury Charge given in December 2005 during the second trial.

13.  Forbes seeks to incorporate by reference his objections to Counts 2-4.  The Government incorporates by reference its responses to those objections.

14.  Forbes' complaint that the unanimity portion of this instruction is not set off by a separate heading does not raise

an issue of substance.  Nevertheless, the Government does not object to Forbes' request for such a heading.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(C)(2)(b) (SECOND ELEMENT - MEMBERSHIP IN THE CONSPIRACY)**

1.   Forbes' unexplained and self-serving assertions that the instruction is "extremely confusing and unbalanced," and that the instruction does not resemble any pattern instruction fail to demonstrate that the instruction is erroneous (or indeed, that it is unbalanced or confusing, for that matter).  To the extent that Forbes fleshes out his assertions in succeeding paragraphs of this objection, the Government will address those arguments in response to those paragraphs.  Forbes also asks that certain of his proposed instructions be given instead of this instruction. The Government's responses to Forbes' proposed instructions for the second trial are set forth in Exhibit B hereto.

2.   The Government does not oppose inclusion of the word "alleged" in the places identified by Forbes.

3.   As demonstrated in the Government's Response to Forbes' objection to Instruction II(C)(2), paragraph 3, Forbes' objection to the phrase "requisite criminal intent" rather than "intent to defraud" is meritless.

4.   Forbes fails to explain and develop his objection to the first paragraph of Instruction II(C)(2)(b) regarding the "distinct issues of membership in the alleged conspiracy and the intent requirement to commit the alleged crimes."  The paragraph properly instructs that the Government must prove that the defendant knowingly and willfully became a member of the

50

conspiracy.  See O'Malley, § 31.05 ("Conspiracy - Membership in an Agreement") (Government must prove that the defendant "knew the purpose or goal of the agreement or understanding and deliberately entered in the agreement") (emphasis added); Sand & Siffert, Instr. 19-6, first and fourth paragraphs ("Membership in the Conspiracy").

5.  Forbes' complaint about the absence of a sub-heading regarding the "alleged conspirators" does not raise an issue of substance.  Nevertheless, the Government does not object to Forbes' request for such a sub-heading.

6.  Forbes' complaint about the omission of the phrase "specific intent" to defraud is substantially similar to his meritless argument in paragraph 3, supra, of his objections to this instruction.

7.  Forbes' redundant objection to the identification of Stuart Bell as one of the unindicted conspirators in this case is meritless for the reasons set forth above in the Government's Response to Forbes' Objections to Instruction II(C)(1), paragraph 5.

8.  Forbes' objections to fifth through sevenths paragraphs of this instruction -- on the ground that they discuss issues of proof, circumstantial evidence, and the drawing of inferences regarding a defendant's mental state, in addition to identifying the second element of conspiracy -- are meritless for the reasons

51

set forth above in the Government's Response to Forbes'
Objections to Instructions Regarding Repeated Charge on Proof of
Intent.

9. Forbes' objection to the fifth paragraph of this
instruction on the ground that modern technology has changed the
manner of proving a mental state of the defendant is meritless
for the reasons set forth in paragraph 3 of the Government's
Response to Forbes' Objections to Instructions Regarding Repeated
Charge on Proof of Intent.

Forbes also points to Corigliano's testimony about his
conspiratorial conversations with Forbes, which proved Forbes'
knowledge of and direct involvement in the fraud.  The admission
of Corigliano's testimony does not preclude the admission of
other, circumstantial evidence of Forbes' knowledge and
involvement.  Nor does that direct evidence preclude instructions
by the Court on the significance of that circumstantial evidence.

Although the "proof beyond a reasonable doubt" requirement
does not appear in the fifth paragraph of this instruction, it is
set forth in the first and final paragraphs.  The instruction is
hardly "unbalanced" because it does not mention proof beyond a
reasonable doubt more than twice regarding a single element of a
single offense.

Contrary to Forbes' contention, the instruction is hardly
erroneous because proof of intent and knowledge is discussed

52

before those terms are defined in the immediately following instruction, II(C)(2)(b)(i-ii).

10.  The sixth paragraph is not unbalanced because it describes how knowledge and intent "may be proved" by circumstantial evidence, because the phrase necessarily connotes that knowledge and intent "might not be proved" by circumstantial evidence.  The second sentence of the sixth paragraph was added by Judge Thompson at Forbes' insistence, over the Government's objection.  Forbes' quibbles with the phraseology of this sentence should be rejected.  The sentence does not confuse the issues of motive and intent, since proof of a criminal motive is typically relevant to prove criminal intent.

11.  Walter Forbes is the defendant in this case.  Judge Thompson did not abuse his discretion by referring to Forbes as the defendant throughout the Final Jury Charge.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION
II(C)(2)(b)(I) (KNOWINGLY AND WILLFULLY)**

1.  The instruction is not confusing in the manner asserted
by Forbes.  If anything, the instruction is overly favorable to
Forbes, since it requires the Government to prove things which
the model instructions do not require.  The instruction first
defines the terms "knowingly" and "willfully" in a manner that is
unduly favorable to Forbes.  The definition of "knowingly" is
limited to one of the specific allegations in this case
("providing materially false information to the SEC and to
investors") even though such a limitation is not required.  See
O'Malley, § 17.04 ("'Knowingly' - Defined (Non-Tax Cases)"); Sand
& Siffert, Instr. 3A-1 ("Knowingly").  Additionally, the
instruction requires that, to prove that Forbes acted
"willfully," the Government must prove that he acted with a "bad
purpose," even though proof of a bad purpose is not required by
the model instructions.  O'Malley, § 17.05 ("'Willfully' -
Defined (Non-Tax Cases)"); Sand & Siffert, Instr. 3A-3
("Willfully").

The instruction is not confusing because it discusses the
element of membership in a conspiracy in addition to defining
"knowingly" and "willfully."  As Forbes effectively concedes, the
instruction properly requires the Government to prove that Forbes
knowingly and willfully joined the conspiracy.  See O'Malley, §
31.05 ("Conspiracy - Membership in an Agreement") (Government

54

must prove that the defendant "<u>knew</u> the purpose or goal of the agreement or understanding and <u>deliberately</u> entered in the agreement") (emphasis added).

Forbes complains about the portion of the instruction that states that the Government need not prove that the conspiracy was successful, but that instruction accurately states the law. <u>O'Malley</u>, § 31.08 ("Success of Conspiracy Immaterial"); <u>Sand & Siffert</u>, Instr. 19-2 ("Purpose of the Statute"). Since that instruction is properly given, Judge Thompson did not abuse his discretion by giving that instruction in the context of this portion of the Final Jury Charge.

2. Forbes' complaints about the omission of "proof beyond a reasonable doubt" in the third paragraph of this instruction are baseless, because the burden of proof is mentioned in the first and second paragraphs. Likewise, the absence of the words "willfully" and "knowingly" in the third paragraph is of no moment since those terms are thoroughly addressed in the first two paragraphs of the instruction.

3. Forbes' objection to the mention of motive is meritless; evidence of motive is always relevant to prove a defendant's <u>mens rea</u>, regardless of the fact that motive is not an element. Forbes' assertion that mention of the defendant's "stake" in the conspiracy "suggests that this element would be satisfied by proof that a defendant earned a salary" grossly distorts the

obvious import of the sentence.  The sentence does not remotely suggest that proof of a stake is sufficient to prove membership in the conspiracy.  The instruction, including the "stake" language, reflects one of the model instructions.  Sand & Siffert, Instr. 19-6 ("Membership in the Conspiracy").  In fact, that sentence favors Forbes, because it requires the Government to prove the defendant's "stake in the venture or outcome" even though there is no such requirement.

The paragraph is not inaccurate because it does not mention the "intent" elements, which are adequately addressed elsewhere in the instruction.  The paragraph properly instructs that financial interest in the scheme is relevant.  Contrary to Forbes' assertion, his immense financial benefit from the fraudulent scheme is highly relevant to his intent and knowledge, as that benefit provided him with a powerful motive to engage in the fraud.[4]  That instruction is fully consistent with the

---

[4]  The Second Circuit recently rejected an argument similar to that presented by Forbes here with the following reasoning:

> The government offered evidence of Quattrone's salary during 1999 and 2000 in order to argue that Quattrone's substantial salary established a motive for him to obstruct the IPO allocation investigations.  Quattrone contends that the evidence was irrelevant and unduly prejudicial because it invited the jury to engage in class-based bias against him.  To this end, Quattrone asserts that evidence of wealth is always irrelevant to motivation.  In our view, the district court acted within the scope of its discretion in finding the evidence relevant and consistent with Rule 403.

(continued...)

admonition that issues of wealth and lifestyle should not give
rise to jury <u>bias</u>.  Instruction I(I).

    4.  As noted above, the first paragraph of this instruction
ties the issue of knowledge to a specific allegation in the
indictment.  Contrary to Forbes' claim, the instruction is proper
even though it does not duplicate "the specific alleged agreement
charged in the indictment" in the fifth paragraph.  The
Government disputes Forbes' contention that the Government
offered evidence concerning matters not charged in the
indictment.  Forbes' complaint about the absence of "specific
intent to defraud" language is meritless for the reasons stated
in the Government's Response to Forbes' Objections to Instruction
No. II(c)(2) (Elements of the Offense), paragraph 3.  Forbes'
complaint that "the key question" phrase singles out only part of
the membership element ignores that the immediately preceding
instruction that is specifically addressed to the membership
element, Instruction II(C)(2)(b), adequately addresses all of the
components of that element.

    5.  Forbes' objection to the inclusion of issues of evidence
and proof of a defendant's mental state in the seventh paragraph
of this instruction are meritless for the reasons stated in the

---

[4](...continued)

<u>United States v. Quattrone</u>, 441 F.3d 153, 187 (2d Cir. 2006).

Government's Response to Forbes' Objections to Instructions
Regarding Repeated Charge on Proof of Intent.  Forbes' complaint
that the seventh paragraph is "divorced" from the indictment
ignores the first paragraph of this instruction.

6.  Contrary to Forbes' challenge to the eighth paragraph of
this instruction, the extent of a defendant's participation "is
not important to [the jury's] decision regarding membership in
the conspiracy."  Sand & Siffert, Instr. 19-6, seventh paragraph;
O'Malley, § 31.05.  This paragraph makes no presumption of guilt;
Forbes' contrary contention misreads the plain language of the
instruction.  Nor does the instruction lower the burden of proof,
which is not mentioned in this paragraph.  That the intent
element is not repeated in this paragraph does not render the
paragraph improper.  That element is adequately addressed in the
following instruction.  See Instruction II(C)(2)(b)(ii).

7.  The instruction regarding whether the defendant played a
major or minor role properly states the law.  Sand & Siffert,
Instr. 19-6, ¶ 7; see also O'Malley, § 31.05 ("the fact that the
defendant . . . did not play a major role in accomplishing the
unlawful goal is not important to your decision").  Although the
evidence will show that Forbes was one of the directors of the
fraud, the jury might erroneously regard his role as minor
because he did not personally effectuate the accounting
manipulations on the books and records of CUC.

58

8.  The ninth and tenth paragraphs of Instruction II(C)(2)(b)(I) are entirely favorable to Forbes, as they state that "mere presence" and "mere knowledge" are insufficient to prove membership.  The instructions are not improper because they do not repeat concepts regarding knowledge and willfulness, which are adequately addressed in the first two paragraphs of this instruction, and concepts regarding the element of intent, which are addressed in the immediately succeeding instruction, II(C)(2)(b)(ii).

9.  Forbes effectively concedes that an instruction regarding the success of the charged conspiracy is a proper one, but claims that the instruction should be given elsewhere in the Final Jury Charge.  This objection is insubstantial and should be disregarded.

10.  Walter Forbes is the defendant in this case.  Judge Thompson did not abuse his discretion by referring to Forbes as the defendant throughout the Final Jury Charge.

## GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(C)(2)(b)(ii) (REQUISITE INTENT)

1, 2.   Forbes purports to incorporate by reference in these objections his objections to other portions of the Final Jury Charge.   The Government incorporates its responses to those other objections.

3.   Forbes complains because this instruction does not repeat the definition of knowingly set forth in the first paragraph of the immediately preceding instruction, II(C)(2)(b)(I).   This instruction is not erroneous merely because it does not repeat a concept previously and adequately covered.

4.   The definition of "intent to defraud" is not erroneous because it does not identify the victims of the fraud.   Cf. O'Malley, § 47.14 ("Mail, Wire, and Bank Fraud (18 U.S.C. §§ 1341, 1343, 1344), Intent to Defraud-Defined"); Sand & Siffert, Instr. 44-5, fourth and twelfth paragraphs ("Mail Fraud and Wire Fraud (18 U.S.C. §§ 1341, 1343), Second Element - Participation in Scheme with Intent").   The definition is substantially similar to one of the model instructions.   O'Malley, § 47.14 ("To act with an 'intent to defraud' means to act knowingly and with the intention or the purpose to deceive or to cheat").   The Government would not oppose substitution of the phrase "deceive or cheat" in this instruction for the phrase "deceive or defraud".

5.   Walter Forbes is the defendant in this case.   Judge

Thompson did not abuse his discretion by referring to Forbes as the defendant throughout the Final Jury Charge.

### GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(C)(2)(b)(iii) (GOOD FAITH)

1.   Forbes' complaint about the phrase "the unlawful intent . . . you are considering" is addressed in the Government's Response to Forbes' Objections to Instruction No. II(C)(2) (Elements of the Offense), paragraph 3.

2.   Forbes once again fails to identify any authority for his proposed addition to the good faith instruction.  After Forbes failed to provide such authority to Judge Thompson during the initial trial in this case, Judge Thompson properly declined to add that language.

3.   Forbes' objection to the fourth paragraph of this instruction is meritless.  That paragraph is properly included in a model instruction.  O'Malley, § 19.06, third paragraph ("The Good Faith Defense - Explained").  The Government had previously agreed to omit this paragraph during the initial trial because the Government had not adequately researched the issue before responding to Forbes' request.  Judge Thompson did not misstate the law because he declined to accept the Government's erroneous concession.  Moreover, the fourth paragraph addresses a vital issue in this case: whether Forbes acted in good faith by supposedly relying on "clean audit opinions" issued by CUC's outside auditors, Ernst & Young ("E&Y"), when CUC obtained those clean audit opinions only because Forbes and others signed management representation letters which falsely stated to E&Y

62

that CUC's financial statements were prepared in conformity with GAAP and did not contain any material misstatements.[5]

4.  Walter Forbes is the defendant in this case.  Judge Thompson did not abuse his discretion by referring to Forbes as the defendant throughout the Final Jury Charge.

---

[5]  Forbes complains about the allegedly improper second trial testimony of Steven Kernkraut, but Judge Thompson struck all of the improper testimony (and then some) during that trial. STTr. 3801.  The Government will not offer the properly stricken testimony during the third trial unless Forbes opens the door. Docket 2355 (Government's Opposition to Forbes' Third Trial Motion In Limine No. 3).

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(C)(2)(c) (THIRD ELEMENT - COMMISSION OF OVERT ACT)**

1.   The Government does not oppose inclusion of the word "alleged" in the places identified by Forbes.

2, 4.   The fourth and fifth paragraphs properly state the law.  The fourth paragraph accurately states that the Government need not prove that the defendant himself, as opposed to a co-conspirator, committed the overt act.  <u>Sand & Siffert</u>, Instr. 19-7, fourth paragraphs ("Commission of Overt Act"); <u>O'Malley</u>, § 31.07, Notes ("'Overt Act' - Defined") (citing Eighth Circuit Model Instruction: "It is not necessary that defendant have personally committed the act, known about it, or witnessed it.")

In addition, the fifth paragraph of this instruction properly addresses the concept of "on or about," which is properly set forth elsewhere in the Final Jury Charge. Instruction II(G).  Instruction II(C)(2)(c) is not erroneous because it reiterates that point with respect to proof of overt acts.

3.   The fourth paragraph is not erroneous because it reiterates a statement from the third paragraph.  Judge Thompson properly exercised his broad discretion in selecting which concepts to emphasize by reiteration.  The fourth paragraph does not dilute the burden of proof, because the Government's burden is accurately set forth in the first paragraph of this instruction.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(C)(2)(d) (FOURTH ELEMENT - COMMISSION OF OVERT ACT IN FURTHERANCE OF THE CONSPIRACY)**

1.    The Government does not oppose insertion of the word "alleged" in the places identified by Forbes.

2.    The instruction that an overt act "standing alone may be an innocent, lawful act" is an accurate statement of the law. Sand & Siffert, Instr. 19-8, second paragraph ("Commission of Overt Act in Furtherance of the Conspiracy"); O'Malley, § 31.07 ("'Overt Act' - Defined").  Although the overt acts charged in the indictment do involve the transmission of false accounting information, they are, as the instruction accurately goes on to state, "apparently innocent acts [which] shed [their] harmless character if [they are] a step in carrying out . . . the conspiratorial scheme."  The instruction therefore properly addresses the issue of the harmless "appearance" of overt acts which are, in reality, part of the fraudulent scheme.

3.    The Government does not oppose inclusion of the phrase "and every one" after the word "each."

4.    Walter Forbes is the defendant in this case.  Judge Thompson did not abuse his discretion by referring to Forbes as the defendant throughout the Final Jury Charge.

## GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(D)(1) (THE INDICTMENT AND THE STATUTE)

1.  Forbes' objection to the reading of the indictment is meritless for the reasons stated in the Government's Response to Forbes' Objections to Instruction I(A) (Introduction).

2.  Forbes' objection to the reading of the statutory language is meritless for the reasons stated in the Government's Response to Forbes' Objections to Instruction II(C)(1).

3.  Forbes incorporates by reference his objections to the aiding and abetting instruction.  The Government incorporates its response to those objections.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION
II(D)(2) (ELEMENTS OF THE OFFENSE)**

1.  As explained in paragraph 1 of the Government's Response
to Forbes' Objections to Instruction II(C)(2), the Government
does not object to Forbes' request for this caption.

2.  As set forth in the Government's Response to Forbes'
Objections to Instruction II(c)(2) (Elements of the Offense),
paragraph 3, Forbes' objection regarding the "intent to deceive"
element is meritless.  Forbes cites and mischaracterizes <u>United
States v. Dixon</u>, 536 F.2d 1388 (2d Cir. 1976), stating in a
parenthetical that § 78ff(a) "requires knowing and willful
conduct which is grounded in 'fraudulent intent.'"  Forbes'
Objections to Final Jury Charge at 53, ¶ 2.  <u>Dixon</u> does not hold
that "intent to defraud" is an element of making false statements
in reports required to be filed with the SEC, which is punishable
under § 78ff(a).  In the portion of the opinion misquoted by
Forbes, the Court states, in <u>dicta</u>:

> the first clause of § 32(a), under which Dixon's
> violations fell, does not use the adverbs "knowingly"
> or "unlawfully" although the second clause of § 32(a)
> imposes a criminal sanction on any person who willfully
> and knowingly makes . . . any statement in any . . .
> report . . . required to be filed under this chapter .
> . . which statement was false or misleading with
> respect to any material fact . . . .
>
>      The difference seems to have been deliberate since
> the second clause covers violations of the Act that
> involve misrepresentations, hence the inclusion of the
> term "knowingly," a concept **typically associated** with
> prosecution for acts grounded in fraudulent intent . .
> .

Dixon, 536 F.2d at 1396 (emphasis added). The Court's observation that the concept of "knowingly" is "typically associated" with prosecution for acts grounded in fraudulent intent is a far cry from holding that "intent to defraud" is an element of the charges in that case. Thus, as shown above, although a violation of 18 U.S.C. § 1001 requires the defendant to act "knowingly," it does not require an "intent to defraud." Godwin, 566 F.2d at 976. The same is true for a violation of 15 U.S.C. § 78ff(a) based on making false statements in reports required to be filed with the SEC.

3. Forbes complains that this particular instruction does not state expressly that the defendant must know that the statement was false. That point is made in another instruction regarding the crime of making false statements to the SEC. Instruction II(D)(2)(d), second paragraph. Reading the instructions as a whole, the Final Jury Charge makes the precise point that Forbes erroneously states is absent.

4. Walter Forbes is the defendant in this case. Judge Thompson did not abuse his discretion by referring to Forbes as the defendant throughout the Final Jury Charge.

68

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(D)(2)(a) (FIRST ELEMENT - FALSE STATEMENT OF FACT IN SEC REPORT)**

1. The Government incorporates by reference its "Response to Forbes' Erroneous Contention That the Final Jury Charge Defined the Alleged False Statements More Broadly than the Indictment" as its response to this objection.  Accordingly, the Government does not oppose modifying the Final Jury Charge II(D)(2)(a) so that the description of the false statements in the instructions mirror the description of the false statements in the indictment. Thus, to use Forbes' example, the modified instruction would state, mirroring the false statements identified in Count 2 of the indictment, that the first false statement at issue in that count was that, for the three months ending October 31, 1997, total revenue was approximately $775 million when, in fact, total revenue was approximately $44 million less.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION
II(D)(2)(b) (SECOND ELEMENT - MATERIALITY)**

1.  The definition of materiality in Instruction
II(D)(2)(b), including the "substantial likelihood" language,
accurately sets forth the law.  Basic, Inc. v. Levinson, 485 U.S.
224, 231 (1988) ("An omitted fact is material if there is a
substantial likelihood that a reasonable shareholder would
consider it important in making an investment decision."); see
O'Malley, § 62.14 ("Instructions Common to the Securities Act of
1933 and the Securities Exchange Act of 1934, Materiality -
Defined") (requiring the Government to prove only a "reasonable
expectation" that the false statement caused or induced the
investor to act); Sand & Siffert, Instr. 57-22, ninth paragraph
("Securities Exchange Act Securities Fraud (15 U.S.C. § 78j(b)),
First Element - Fraudulent Act").  Forbes' proposal, which omits
the "substantial likelihood" provision, was therefore properly
rejected by Judge Thompson.

2.  Forbes' objection to the third paragraph of this
instruction was also properly rejected by Judge Thompson.  That
paragraph accurately states the law, particularly that a sharp
drop in price of a publicly traded company's stock shortly after
information is publicly disclosed (here, public disclosure on
April 14, 1998 of the fact that CUC had engaged in the charged
accounting fraud) is a factor that the jury may consider in
deciding whether or not that information is material.  Forbes

70

conveniently ignores the law on this issue, which was previously
cited to him by the Government.  United States v. Bilzerian, 926
F.2d 1285, 1298 (2d Cir. 1991) ("whether a public company's stock
price moves up or down or stays the same after [information is
publicly disclosed] is a factor the jury may consider relevant"
in assessing materiality).  Forbes' attempt once again to draw a
meaningless distinction between a statement that is false because
it misrepresents the truth and a statement that is false because
it intentionally omits material information which is required to
make the statement accurate should be rejected.  Additionally,
Forbes' assertion that the indictment charges only affirmatively
false statements mischaracterizes the indictment.  See
Indictment, Count 2, ¶ 2 (charging that Forbes "made and caused
to be made" statements that were "false and misleading with
respect to material facts") (emphasis added).  Because the
predicate to Forbes' constructive amendment claim (that the
indictment does not charge material omissions) is erroneous, his
conclusion is meritless as well.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(D)(2)(c) (THIRD ELEMENT - MADE OR CAUSED TO BE MADE)**

1.  Forbes objects to the omission from this instruction of the requirement that Forbes knew that any false statements were actually false.  That requirement is addressed in the second paragraph of the immediately succeeding instruction, II(D)(2)(d). The "intent to deceive" requirement is likewise addressed in the fourth paragraph of Instruction II(D)(2)(d).

2.  Forbes' objection to the "it is sufficient" phrase is meritless.  The sentence expressly requires the Government to prove beyond a reasonable doubt that the defendant caused the false statement to be made by others.  Thus, the instruction is entirely balanced.

3.  Forbes' objection to Judge Thompson's decision not to give Forbes' Instr. 53 is addressed in Exhibit B hereto.

### GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(D)(2)(d) (FOURTH ELEMENT - KNOWINGLY, WILLFULLY AND WITH INTENT TO DECEIVE)

1.    Forbes' reliance on <u>United States v. Dixon</u>, 536 F.2d 1388 (2d Cir. 1976) in support of his claim that making false statements to the SEC requires proof of an "intent to defraud" is meritless for the reasons set forth above in paragraph 2 of the Government's Response to Forbes' Objections to Instruction II(D)(2) (Elements of the Offense), and for the reasons set forth above in the third paragraph of Government's Response to Forbes' Objections to Instruction II(C)(2) (Elements of the Offense).

2.    Forbes' complaint about the absence of separate headings in this instruction does not address an issue of substance. Nevertheless, the Government does not object to Forbes' request for such headings.

3.    Forbes' objection to the sixth paragraph of this instruction for the reasons stated in his objections to Instruction II(C)(2)(b) are meritless for the reasons stated above in the Government's response to those objections.

4.    Judge Thompson did not abuse his discretion by declining to make the already lengthy Final Jury Charge even longer by duplicating in full the "Good Faith" instruction, rather than incorporating the instruction by reference.  Each juror received a copy of the written version of the Final Jury Charge, and could easily refer to the "Good Faith" instruction during

73

deliberations.

5.  The Government does not oppose the inclusion of the phrase "and every one" in the place requested by Forbes.

6.  Walter Forbes is the defendant in this case.  Judge Thompson did not abuse his discretion by referring to Forbes as the defendant throughout the Final Jury Charge.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(E)(1) (THE INDICTMENT AND THE STATUTES AND REGULATION)**

1.   Forbes' objection to the reading of the indictment is meritless for the reasons stated in the Government's Response to Forbes' Objections to Instruction I(A) (Introduction).

2.   Forbes' objection to the reading of the statutory language is meritless for the reasons stated in paragraph 2 of the Government's Response to Forbes' Objections to Instruction II(C)(1) (The Indictment and the Statute).   The applicable model instructions set forth the statutory language.   <u>O'Malley</u>, § 62.06 ("Securities Exchange Act of 1934 - Manipulative and Deceptive Devices, The Statutes Defining the Offenses Charged");   <u>Sand & Siffert</u>, Instr. 57-19 ("Securities Exchange Act Securities Fraud, The Indictment and the Statute") .

3.   Forbes' assertion that the instructions regarding securities fraud supposedly "exacerbate" the supposed vagueness of Count 4 is undeveloped and meritless.   The Government will not guess at the basis for this undeveloped claim and respond to arguments that Forbes has not made.   To the extent that Forbes erroneously asserts that Count 4 charges only material false statements and not other methods of committing securities fraud, he has overlooked the relevant language from the indictment. Indictment, Count 4, ¶ 3.   Forbes' vague reference to unidentified "evidence concerning alleged conduct not charged in the Indictment" is too general to merit a response.

4.  Forbes incorporates by reference his objections to the aiding and abetting instructions.  The Government incorporates by reference its response to those objections.  <u>See</u> Government's Response to Forbes' Objections to Instruction II(F).

## GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(E)(2) (ELEMENTS OF THE OFFENSE)

1.   As explained in paragraph 1 of the Government's Response to Forbes' Objections to Instruction II(C)(2), the Government does not object to Forbes' request for this caption.

2.   Contrary to Forbes' contention, falsity and materiality are not separate elements of securities fraud, as the model instructions demonstrate.  O'Malley, § 62.07, second paragraph ("Securities Exchange Act of 1934 – Manipulative and Deceptive Devices, The Essential Elements of the Offense Charged"); Sand & Siffert, Instr. 57-21, second paragraph ("Securities Exchange Act Securities Fraud, Elements of the Offense").  Tellingly, the only "authority" that Forbes cites for this claim is his own proposed instruction.

3.   Forbes' complaint that the instruction on the first element defines the fraud more broadly than the indictment, which supposedly alleges only false statements, is meritless for the reasons stated in the Government's Response to Forbes' Erroneous Contention That the Final Jury Charge Defined the Alleged Fraud More Broadly than the Indictment, supra.  See Skelly, 442 F.3d at 99.

4.   The Government does not oppose an additional instruction to the effect that Forbes is guilty of securities fraud if he either "made an untrue statement of material fact" or "caused an untrue statement of material fact to be made."

77

5.  The fourth element is not erroneous because it does not identify the victims of the charged fraud.  <u>Cf.</u> <u>O'Malley</u>, § 47.14 ("Intent to Defraud - Defined"); <u>Sand & Siffert</u>, Instr. 44-5 ("Mail Fraud and Wire Fraud (18 §§ 1341, 1343), Second Element - Participation in Scheme with Intent").

6.  Forbes' objection that Count 4 does not allege the sale of any stock is meritless.  Paragraph 3 identifies Hartford Steam Boiler's purchase of 5000 shares of Cendant common stock.  For every purchase, there is a sale.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION
II(E)(2)(a) (FIRST ELEMENT - FRAUDULENT ACT)**

1.    Forbes' objection is misplaced: falsity and materiality
are not separate elements of securities fraud.  O'Malley,
§ 62.07, second paragraph (for the first element, the Government
must prove that the defendant "knowingly . . . made any untrue
statement of a material fact")(emphasis added); Sand & Siffert,
Instr. 57-21.  Tellingly, the only "authority" that Forbes cites
for this objection is his own proposed instruction.

2, 5.  Forbes' complaint that the instruction on the first
element defines the fraud more broadly than the indictment, which
supposedly alleges only false statements, is meritless for the
reasons stated in the Government's Response to Forbes' Erroneous
Contention That the Final Jury Charge Defined the Alleged Fraud
More Broadly than the Indictment.  See Skelly, 442 F.3d at 99.

3, 4.  Forbes' claim that an instruction which defines the
first element of securities fraud must identify the particular
false statements at issue is incorrect.  O'Malley, § 62.07,
second paragraph; Sand & Siffert, Instr. 57-21.

Additionally, the evidence will prove a host of material
false statements made by the conspirators, and the law does not
require that the jury instructions recapitulate all of the
evidence to which the instructions pertain.  Forbes' vague
reference in paragraph 4 of this objection to the "improper
introduction of evidence relating to matters not charged in the

79

indictment" is too general to merit a response.

6.  Forbes' redundant and meritless claim that this instruction defines the fraud more broadly than the indictment should be rejected for the reasons stated in the Government's Response to Forbes' Erroneous Contention That the Final Jury Charge Defined the Alleged Fraud More Broadly than the Indictment, <u>supra</u>.  Forbes' complaint that the instruction "overwhelm[s] the jury with confusing instructions on words that are not relevant" is baseless.  The instruction properly supplies the definitions set forth in the model instructions.  <u>O'Malley</u>, § 62.09, third and fourth paragraphs ("'Any Manipulative or Deceptive Device or Contrivance' - Defined"), § 62.10, tenth paragraph ("'A Fraud or Deceit Upon Any Person' - Defined"), § 62.13, fifth and sixth paragraphs ("'Device, Scheme, or Artifice to Defraud' - Defined"); <u>Sand & Siffert</u>, Instr. 57-22 ("Securities Exchange Act Securities Fraud, First Element - Fraudulent Act (Classic Fraud)").

Additionally, because the charged fraudulent scheme, which lasted for the better part of a decade and involved many different kinds of accounting manipulations in order to produce fraudulently inflated reported earnings can be accurately characterized as a "device," a "scheme," or an "artifice to defraud," this instruction permissibly defines all of those terms, and is not limited to the making of false statements, which was only part of the charged securities fraud in this case.

80

7.   Forbes' redundant claim that the indictment charges only "false statements" but not omissions ignores ¶ 3 of Count 4 of the indictment.  Forbes' objection to the definition of materiality is meritless for the reasons stated in paragraph 1 of the Government's Response to Forbes' Objections to Instruction II(D)(2)(b) (Second Element - Materiality), <u>supra</u>.  Forbes' claim that materiality cannot be judged in hindsight is meritless for the reasons stated in paragraph two of that same response.  The Government addressed Judge Thompson's decision not to include Forbes' proposed instruction 67 in Exhibit B hereto.

8.   Forbes' redundant and meritless assertion that the indictment charges only false statements, and the arguments that emanate from that erroneous assertion, are addressed in paragraph 2 of this response.  Forbes' redundant and meritless assertion that the ninth paragraph of this instruction is erroneous because it addresses matters of proof is meritless for the reasons stated in paragraph 1 of Government's Response to Forbes' Objections to Instructions Regarding Repeated Charge on Proof of Intent, <u>supra</u>.  Forbes' redundant and meritless claim that materiality must be assessed based only on information available when the statement is made is meritless for the reasons stated in paragraph 2 of the Government's Response to Forbes' Objections to Instruction II(D)(2)(b) (Second Element - Materiality), <u>supra</u>.

9.   Paragraph 10 of this instruction does not constructively amend the indictment merely because it does not identify the

victims of the securities fraud, for the reasons stated in
paragraph 1 of the Government's Response to Forbes' Erroneous
Contention That the Final Jury Charge Defined the Alleged Fraud
More Broadly than the Indictment, <u>supra</u>.  <u>See</u> <u>Skelly</u>, 442 F.3d at
99.  None of the cases cited by Forbes in support of this
objection found a constructive amendment of the indictment
because the jury instructions did not identify the victim of the
offense.

    10.  Forbes' objection to the eleventh and twelfth
paragraphs of this instruction because they purportedly
"suggest" that the victim need not have purchased stock is
meritless.  The immediately succeeding instruction, II(E)(2)(b),
states that the government must prove beyond a reasonable doubt
that "the alleged fraud was in connection with the purchase or
sale of the Cendant common stock described in Count 4."

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(E)(2)(B) (SECOND ELEMENT - IN CONNECTION WITH)**

1.  Forbes' objection that this instruction is improper because it "focuses on what the government need not prove" is baseless.  The model instructions make use of similar wording. O'Malley, § 62.11, ¶ 2 ("'In Connection with the Purchase or Sale of Any Security' - Defined") (describing what "[t]he government need not show"); Sand & Siffert, Instr. 57-22, fourth and fifth paragraphs ("Securities Exchange Act Securities Fraud, First Element - Fraudulent Act").

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION
II(E)(2)(C) (THIRD ELEMENT - USE OF A MEANS OR INSTRUMENTALITY OF
INTERSTATE COMMERCE)

1.   The Government does not oppose insertion of the word "alleged" in the places identified by Forbes.

2.   Assuming that this cryptic objection is addressed to the absence of the word "alleged" in the phrase "of the offense," the Government does not object to insertion of "alleged" in that phrase.

3.   Forbes provides no reasons for his truly pointless objection to the particular examples of interstate commerce employed in paragraph three.   He neither claims that the examples are inaccurate nor that they do not represent instrumentalities of interstate commerce that were actually employed by the conspirators in this case, which they do.

4.   Forbes' contention that the fifth through seventh paragraphs of this instruction are "unbalanced" because they state what the Government need not prove should be rejected.   The challenged language largely tracks the model charges.   <u>O'Malley</u>, § 62.08, fourth and fifth paragraphs ("'The Use of Any Means or Instrumentality of Interstate Commerce or of the Mails or of Any National Securities Exchange' - Defined"); <u>Sand & Siffert</u>, Instr. 57-26 ("Securities Exchange Act Securities Fraud, Third Element - Instrumentality of Interstate Commerce").

5, 6.   Forbes' objections to the fifth paragraph and the

84

last sentence of the sixth paragraph of this instruction because they do not define the word "scheme" are meritless.  The model instructions do not require that the scheme be defined. O'Malley, § 62.08, third paragraph; Sand & Siffert, Instr. 57-26. The phrase "active participant," to which Forbes also objects, increases the Government's burden over that set forth in one of the model charges, which requires the Government to show only that the defendant "set forces in motion which foreseeably resulted in" the use of instrumentalities of interstate commerce. O'Malley, § 62.08, fourth paragraph.  Forbes' objection to the omission of the "knowingly, willfully, and specific intent to defraud" language should be rejected.  Those mental elements of the offense are adequately addressed in Instruction II(E)(2)(d).

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(E)(2)(d) (FOURTH ELEMENT - KNOWINGLY, WILLFULLY AND WITH THE INTENT TO DEFRAUD)**

1.    As explained in paragraph 1 of the Government's Response to Forbes' Objections to Instruction II(C)(2), the Government does not object to Forbes' request for this caption.

2.    Forbes objects that the definition of intent to defraud is deficient because it fails to identify the victims in this case.  This is meritless.  The second paragraph of this instruction states that "[t]he alleged fraudulent scheme involves providing materially false information to the SEC and to investors," and instruction II(E)(2) states that the defendant's fraudulent conduct was "in connection with the purchase or sale of the Cendant common stock described in Count 4."  The Government does not object to the substitution of the word "cheat" for the word "defraud," in the definition of "intent to defraud," so as to conform to the model instruction.  Cf. O'Malley, § 47.14 ("Mail, Wire, and Bank Fraud (18 U.S.C. §§ 1341, 1343, 1344), Intent to Defraud - Defined"); Sand & Siffert, Instr. 44-5 ("Mail Fraud and Wire Fraud (18 §§ 1341, 1343), Second Element-Participation in Scheme with Intent").  The Government addressed Judge Thompson's decision not to give Forbes' Instruction 74 in Exhibit B hereto.

3.    Forbes' objections to the fifth and sixth paragraphs of this instruction for the reasons stated in his objections to

Instruction II(C)(2)(b) are meritless for the reasons stated above in the Government's response to those objections.

4. For the reasons stated in paragraph 4 of the Government's Response to Forbes' Objections to Instruction II(D)(2)(d), Judge Thompson properly declined to include in this instruction a verbatim recitation of the "Good Faith" instruction.

5. Walter Forbes is the defendant in this case. Judge Thompson did not abuse his discretion by referring to Forbes as the defendant throughout the Final Jury Charge.

GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(F)
(AIDING AND ABETTING)

1, 2.  Forbes' assertion that the Government's evidence that
Forbes was one of the persons who directed the conspiracy is
somehow inconsistent with an instruction on aiding and abetting
is unsupported by logic or legal authority.  In fact, the law is
to the contrary.  See United States v. Mucciante, 21 F.3d 1228,
1233-34 (2d Cir. 1994) (holding that an indictment is not
constructively amended by the inclusion of an aiding and abetting
instruction, which "does not penalize conduct apart from the
substantive crime with which it is coupled"); accord, United
States v. Bradstreet, 135 F.3d 46, 53 (1st Cir. 1998).[6]

A person can quite obviously direct certain aspects of a
long-running and widespread fraudulent scheme and also aid and
abet in the commission of other aspects.  Thus, the jury could
find under the evidence in this case that Forbes was one of the

_____

[6]  As the Ninth Circuit has recently explained:

Aiding and abetting is simply one means of committing a
single crime.  Indeed, we have often referred to aiding
and abetting as a theory of liability.  We have also
held a number of times in different contexts that
aiding and abetting is embedded in every federal
indictment for a substantive crime.  It follows that
aiding and abetting is a different means of committing
a single crime, not a separate offense itself, for
otherwise it could not be implicit in a substantive
charge.

United States v. Garcia, 400 F.3d 816, 820 (9th Cir. 2005)
(internal citations omitted).

persons who directed his subordinate Cosmo Corigliano to engage in the overall conspiracy, and that Forbes aided and abetted Shelton and Bell in formulating the strategy for the fraud.

Forbes's unsupported contention that the instruction is improper because it does not identify a particular principal is likewise meritless.  Oliphant v. United States, 525 F.2d 505, 508 (9th Cir. 1975) ("there is no need to identify the principal in order to give the instruction on aiding and abetting"); see also United States v. North, 716 F.Supp. 644, 646-47 (D.D.C. 1989) ("It was not essential that the principal in the operation be identified so long as someone had that status.").

2.  Forbes likewise provides no authority for his assertion that an aiding and abetting instruction cannot be given with respect to the false statement counts, merely because those counts do not "expressly refer to section 2(a), as opposed to section 2(b)."  In fact, those counts charge that Forbes violated 18 U.S.C. § 2, without specifying either subsection.  Indictment, Count 2, ¶ 2, final sentence; Count 3, ¶ 2, final sentence. Forbes does not claim or demonstrate, moreover, that the indictment was deficient because it did not specify the subsection of § 2 with which Forbes was charged.

3.  The Government will present sufficient evidence during the third trial, as it did during the previous two trials, that Forbes aided and abetted the substantive crimes by, inter alia, seeking to convince the CEO of Cendant, Henry Silverman, to

89

retain co-conspirator Anne Pember in her accounting position at
Cendant so that Pember could continue to facilitate the fraud,
and by lobbying Silverman and others to retain E&Y as the outside
auditor following the Cendant merger because E&Y had not blown
the whistle on CUC's fraudulent accounting.  Such acts of
concealment are sufficient to establish aiding and abetting
liability.  See United States v. Johnson, 169 F.3d 569, 573 (8th
Cir. 1999) (evidence was sufficient to support the conviction for
aiding and abetting a credit union officer in misapplying funds
belonging to the credit union, where the defendant gave the
officer signed blank checks to provide immediate coverage of
overdrafts in event of a surprise audit); see generally United
States v. Griffin, 324 F.3d 330, 356-59 (5th Cir. 2003) (evidence
was sufficient to support convictions for aiding and abetting the
theft of tax credits, bribery, and laundering of bribery
proceeds, where the evidence proved that the defendants "played
an integral part in the scheme and had a close association with
. . . the key player in the scheme . . . . [and] contains enough
evidence of [the defendants'] use of deception to conceal the
scheme").

      4.  Judge Thompson properly exercised his discretion by
reading the relevant statutory language for aiding and abetting,
consistent with the model charges.  O'Malley, § 18.01, second
paragraph ("Aiding and Abetting-Explained"); Sand & Siffert,
Instr. 11-1, second paragraph ("Aiding and Abetting (18 U.S.C. §

2(a)), The Indictment and the Statute").

5.  Judge Thompson properly declined to repeat the definitions for "knowingly," "willfully," and "intent to defraud" in this instruction. O'Malley, § 18.01. Nor is the instruction defective because it cross-references, rather than repeats verbatim, the good faith instruction. For the reasons stated above in the third paragraph of the Government's Response to Forbes' Objections to Instruction II(C)(2) (Elements of the Offense), Judge Thompson properly used the term "intent to deceive" regarding Counts 2 and 3.

6.  Forbes fails to articulate any basis for his assertion that paragraph one is "unnecessary, unbalanced, and prejudicial." The paragraph merely identifies in neutral language those counts to which the aiding and abetting instructions apply.

7.  None of Forbes' plethora of objections in this paragraph demonstrates any infirmity in the instruction. That the instruction describes what the Government does not have to prove before setting forth the elements of aiding and abetting is a matter of sequence; this does not affect the substance of the instruction. The phrase "physically committing the crime," while perhaps more pertinent to crimes such as assault or robbery than to a conspiracy to make false statements and to defraud, nonetheless conveys the essence of aiding and abetting liability in a way that lay jurors can understand. The sentence stating that an aider and abettor is equally guilty as a principal

accurately states the rule set forth in 18 U.S.C. § 2(a). The
jury could not possibly interpret this instruction to mean that
Judge Thompson believed that Forbes was guilty, particularly
given Judge Thompson's express assurances to the contrary.
Instruction I(B) ("Province of the Court and Jury"), fourth
paragraph ("Nothing I say in these instructions is to be taken as
an indication that I have any opinion about the facts of this
case, or what that opinion is. In any event, it is not my
function, but yours, to determine the facts.").

    8. Forbes' complaint that this instruction does not include
the precise phrase, "specific intent" regarding the commission of
the underlying crime is meritless. The instruction conveys
precisely the concept. Instruction II(F), eighth paragraph ("the
defendant acted with the intention of causing the crime charged
to be committed, with the same intent required for the underlying
offense"); twelfth paragraph (the "government must establish
beyond a reasonable doubt . . . that the defendant acted with the
intention of causing the crime charged to be committed . . . .
[and] that the defendant intended to aid or abet the particular
count charged in the count you are considering . . . . [and] that
the defendant acted with the requisite intent for the crime
charged in the pertinent count").

    9. Forbes' unsupported assertion that he is entitled to
have the jurors instructed that they cannot convict on Counts 2-4
unless they unanimously agree as to whether Forbes is a principal

92

or an aider and abettor is meritless.  <u>United States v. Garcia</u>, 400 F.3d 816, 820 (9th Cir. 2005) (rejecting this precise claim); <u>United States v. Davis</u>, 306 F.3d 398, 414 (6th Cir. 2002) (same).

10.  Walter Forbes is the defendant in this case.  Judge Thompson did not abuse his discretion by referring to Forbes as the defendant throughout the Final Jury Charge.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION II(H)
(USE OF CONJUNCTIVE IN THE INDICTMENT)**

1. Forbes' undeveloped objection to this instruction as "confusing and unnecessary" effectively concedes that the instruction accurately states the law, which it does. United States v. Rioux, 97 F.3d 648, 661 (2d Cir. 1996) ("The rule that a jury's guilty verdict on a conjunctively worded indictment stands if the evidence is sufficient with respect to any of the acts charged, obviously extends to a trial court's jury instructions in the disjunctive in the context of a conjunctively worded indictment.") (internal quotation marks omitted). Contrary to Forbes' claim, the instruction is necessary to dispel any misconception by the jury that, owing to the conjunctive nature of the indictment, the Government is required to prove all of the alternative versions of an element, rather than only one version.

94

### GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION III (THE DEFENDANT'S POSITION)

1.  Judge Thompson properly exercised his discretion in Forbes' favor by permitting a five page recitation of Forbes' "position," which is nothing more than an extended preview of Forbes' summation to the jury.  Because Forbes' "position" instruction is so obviously an advocacy tract, rather than a dispassionate discussion of say, the good faith defense, Judge Thompson necessarily distinguished that tract, with which the Court was not permitted to agree, from the Court's other instructions on the law.  Forbes' complaint that the Court read the indictment without a similar caveat is erroneous: the Court instructed the indictment was "only an accusation."  Instruction I(C).

2.  Forbes' complaint about the precise wording of the caption of this instruction, using "position" rather than "theory of the defense" pertains to an irrelevant matter.  The Government, however, does not object to Forbes' request for this caption.

1, 3.  The instruction reciting Forbes' position is not erroneous merely because it does not recite verbatim Forbes' proposed instruction.  United States v. Han, 230 F.3d 560, 565 (2d Cir. 2000); United States v. Evangelista, 122 F.3d 112, 116 (2d Cir. 1997) (defendants were not entitled to have "the exact language of the charge they submitted . . . read to the jury,"

95

but "are entitled only to have instructions presented which
adequately apprise the jury of the elements of the crime charged
and their defense") (internal punctuation omitted).  Because
there was nothing "prejudicial" about Judge Thompson's reading of
the indictment as part of the Final Jury Charge, given the caveat
in Instruction I(C), Judge Thompson did not have to give Forbes'
entire proposed "position" instruction in order to
"counterbalance" any non-existent prejudice.  The Government did
not object to Forbes' proposed "position" instruction in order to
conserve the resources of the Court, and not because the
Government believed that Forbes was entitled to have his
instruction read in full.

4.  Because, as shown above, the Final Jury Charge
adequately defined the intent elements of the charged crimes,
Forbes' entire "position" instruction was not necessary to cure
any supposed but non-existent shortcomings regarding those
elements.

5.  Because the final sentence of Instruction II(C)(2)(b)
(iii) explained that the jury must acquit unless the Government
proved beyond a reasonable doubt that Forbes did not act in good
faith, Judge Thompson did not abuse his discretion by declining
to repeat that concept in Forbes' "position" instruction.

6.  The final paragraph of the "position" instruction
properly advised the jury that Forbes' "position" was simply
that: neither evidence nor an indication of Judge Thompson's

96

opinion about the facts, but Forbes' own interpretation of the evidence. Forbes' contrary claim that Judge Thompson erred by clarifying the legal effect of Forbes' "position" instruction is utterly meritless.

7. After repeatedly pointing to the Court's reading of the indictment during the Final Jury Charge as a justification for his "position" instruction, Forbes does an about face and points to the "different legal status" between the indictment and his "position" instruction in order to attack the final paragraph of this instruction. There is an obvious difference between the two, but Judge Thompson did not equate the two, as Forbes erroneously suggests. Rather, the final paragraph of this instruction properly pointed out that neither the indictment nor Forbes' "position" instruction "should [] be taken as an indication" that Judge Thompson had any opinion about the facts. The instruction properly informed the jury that Forbes' "position" was not the Court's "position," and (benefitting Forbes) reminded the jury that the indictment did not set forth the Court's "position," either.[7]

_____

[7] The Government proposed additional language which would have more clearly limited the effect of Forbes' "position" instruction. See Government's Response to Forbes' Supplemental Instruction 1, Exhibit B hereto, p. 37. Acceding to Forbes' arguments on this matter, Judge Thompson declined to give most of the Government's proposed language.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION IV(A)**
**(EVIDENCE IN THIS CASE)**

1. Forbes' quibble that the part of this instruction regarding "situations in which a witness's answer has to be considered in light of the lawyer's question" is illustrative rather than exhaustive is meritless.  The instruction makes the common-sense point that the jurors "must at times consider a lawyer's question to give content and meaning to the witness' answer."  Instruction IV(A), eighth paragraph.  The Court did not err because it did not catalogue all such possible occurrences.

2. Forbes provides no explanation or basis for his objection to the obviously correct statement of the law that the jury should use its common sense and draw reasonable inferences from the evidence.  O'Malley, §§ 12.02, second sentence ("Judging the Evidence"); 12.03, final sentence ("Evidence Received in the Case - Stipulations, Judicial Notice, and Inferences Permitted"); 12.05 ("Inferences from the Evidence"); Sand & Siffert, Instr. 6-1, fourth and fifth paragraphs ("Inferences Defined").

### GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION IV(D)
### (ACTS AND DECLARATIONS OF ALLEGED CO-CONSPIRATORS)

1.  Forbes' assertions that this instruction is "unnecessary," "prejudicial," and a "comment on selected evidence" is so nebulous as to defy a meaningful response. Nevertheless, an instruction about one type of evidence (here, evidence regarding the acts and declarations of alleged co-conspirators) cannot be erroneous because it does not address all other types of evidence.

2.  The Government does not object to the insertion of the word "alleged" in the places identified by Forbes.

3.  Forbes' redundant objection to the identification of Stuart Bell as one of the unindicted conspirators in this case is meritless for the reasons set forth above in the Government's Response to Forbes' Objections to Instruction II(C)(1), paragraph 5.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION IV(G)**
**(EVIDENCE CONCERNING THE CENDANT RESTATEMENT)**

1-3.   Forbes claims that any evidence regarding Cendant's restated financial results was improperly admitted.  That claim is incorrect for the reasons stated in Docket 2348 (Government's Opposition to Forbes' Third Trial Motion In Limine No. 9).  This instruction properly limited the jury's consideration of any testimony about the restatement to matters of falsity and materiality, and was therefore a limiting instruction that benefitted Forbes.  That Cendant restated its earnings after it discovered the massive accounting fraud which improperly inflated CUC's and Cendant's earnings for the fiscal years ended January 31, 1996, January 31, 1997, and December 31, 1997 was relevant to whether the previously issued earnings statements were materially false.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION IV(H)
(CERTAIN TESTIMONY OF STEVEN KERNKRAUT)**

During the second trial, the Government conceded that a very limited portion of the testimony of Steven Kernkraut, a prosecution witness, should not have been offered into evidence. Forbes' objections to Instruction IV(H) pertain to the Court's curative instructions regarding that testimony. Because the Government does not intend to present any testimony from Kernkraut during the third trial which will be inadmissible on any ground, the Government anticipates that no curative instruction regarding Kernkraut will be necessary. Forbes' objections to the curative instructions given during the second trial will therefore be rendered moot. That being said, many of Forbes' objections to Kernkraut's testimony during the second trial which are resuscitated in Forbes' objections to Instruction IV(H) are either moot or meritless for the reasons stated in Docket 2355 (Government's Opposition to Forbes' Third Trial Motion In Limine No. 3).

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION IV(J)
(USE OF PARTICULAR INVESTIGATIVE TECHNIQUES OR WITNESSES)**

1.  Forbes mischaracterizes this instruction and then
attacks his straw man by claiming that it pertains to "the
government's failure to present evidence within its control,
including the testimony of witnesses the government elected not
to call." The instruction has nothing to do with the
Government's trial strategy, but pertains only to the
Government's "investigative techniques," which are undertaken
before the trial begins.

Although Forbes complains about the absence of any mention
in this instruction that reasonable doubt can arise from the lack
of evidence as well as the evidence presented, Judge Thompson
repeatedly gave that precise instruction elsewhere in the Final
Jury Charge. Instructions I(C) ("Indictment is Not Evidence");
I(H) ("Matters the Jury May Not Consider"); I(K) ("Possible
Punishment"); IV(A) ("Evidence in This Case"); V(A) ("Duty to
Deliberate").

2.  Forbes points out that the Government did not employ
such investigative techniques as wiretaps or undercover
operations, but that is precisely why this instruction was
warranted in this case. That this was a historical
investigation, rather than a pro-active one, and that the
Government was not able to undertake pro-active measures such as
wiretapping and using undercover investigators, are points

102

properly made to the jurors lest they improperly conclude that
the Government's failure to undertake such unavailable techniques
rendered the investigation deficient.   There is no basis to
assume, as Forbes speculates, that the jury would misconstrue
this instruction to conclude that it could not consider evidence,
which was admitted without objection by the Government, that
witnesses testified pursuant to plea agreements or were
interviewed repeatedly before testifying.   This is particularly
so given the Court's proper instruction regarding the potential
motives of cooperating defendants to testify falsely, and the
jury's obligation to evaluate such testimony carefully.
Instructions IV(P) and IV(Q).

3.  Forbes' complaint about the second paragraph of this
instruction is meritless.  First, it complies with an applicable
model instruction.  <u>Sand & Siffert</u>, Instr. 6-7 ("Uncalled Witness
Equally Available").  Second, it does not undermine the
Government's burden of proof, which is reiterated dozens of times
throughout the Final Jury Charge.  The instruction that the
Government need not call as witnesses all persons who may have
relevant knowledge does not mean, as Forbes' erroneously
contends, that Forbes could not argue that the absence of those
witnesses is a basis from which to find reasonable doubt.  Forbes
was not restricted from challenging the Government for what it
chose not to do, even if it was not required to do so.  The
instruction properly alleviated the risk that the jurors might

conclude that the evidence was legally insufficient if a person who could have been called as a witness was not.

4.  Because Judge Thompson properly overruled Forbes' meritless request for a missing witness instruction regarding Stuart Bell, this Court should reject Forbes' complaint that this instruction was inconsistent with that meritless request.

5.  Forbes complains because the jury may read the reference to "things mentioned during the course of the trial" in the final sentence of this instruction to refer to documents that might not have been admitted into evidence.  The Final Jury Charge repeatedly instructed that the jurors could only consider testimony and exhibits that were admitted into evidence. Instruction IV(A) ("Evidence in this Case"); IV(C) ("Rulings by the Court as to Evidence"); V(D) ("Exhibits and Testimony: Use of the Indictment").  The challenged portion of this instruction properly informed the jury that the absence of certain things from evidence -- which would include documents that were ruled inadmissible -- did not require the jury to acquit, if the evidence was otherwise sufficient to satisfy the Government's burden of proof.

6.  The Government has addressed Judge Thompson's denial of Forbes' requested "missing witness" instruction in Exhibit B hereto.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION IV(K)
(CREDIBILITY OF THE WITNESSES)**

1.  Forbes provides no insights into the basis for his
objection to "the last two sentences" of this instruction.  Those
sentences properly reflect the concepts set forth in the model
instructions on the subject.  O'Malley, § 14.16 ("Number of
Witnesses called is Not Controlling"); Sand & Siffert, Instr. 4-3
("Numbers of Witnesses and Uncontradicted Testimony").

### GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION IV(N) (UNCONTRADICTED TESTIMONY)

1.  Forbes' objection that this instruction is duplicative of other instructions (which he does not identify) is wrong and beside the point.  No other instruction specifically informs the jury that uncontradicted testimony need not be accepted.  As Forbes effectively concedes, the instruction accurately states the law.  Pariso v. Towse, 45 F.2d 962, 965 (2d Cir. 1930).

2.  Forbes erroneously complains that this instruction is somehow inconsistent with the other instructions that the lack of evidence could establish a reasonable doubt.  There is no inconsistency.  This instruction does not preclude the jurors from considering the lack of contradicting testimony in deciding whether to credit uncontradicted testimony.  It merely reminds the jurors that they are not compelled to accept such testimony.

3.  Forbes complains because the factors cited in the second sentence in assessing uncontradicted testimony are illustrative rather than exhaustive.  The instruction does not preclude the jury from considering other factors.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION IV(O)
(TESTIMONY OF EXPERT WITNESSES)**

1.  Judge Thompson properly admitted the testimony of Brian
Heckler following extensive briefing and a fifteen-day <u>Daubert</u>
hearing.  During the first and second trials, Forbes' lawyers did
not cross-examine Heckler.  Nor did Forbes attack Heckler's
testimony in summation.  Rather, the defense in this case was
that other persons, including Cosmo Corigliano, committed the
fraud that Heckler's expert testimony explicates, but that Forbes
was ignorant of and did not participate in that fraud.

2.  Forbes incorporates his Retrial Motion <u>In</u> <u>Limine</u> No. 26
regarding a portion of this instruction.  The Government
incorporates its response to that motion, Docket 1964.  Judge
Thompson denied that motion by order dated November 13, 2005.
Docket 1973.  That denial was correct for the reasons stated in
Docket 2344 (Government's Opposition to Forbes' Third Trial
Motion <u>In</u> <u>Limine</u> No. 5).

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION IV(Q)**
**(DEFENSE WITNESS TESTIFYING UNDER PLEA AGREEMENT)**

1.  Forbes objects to the "last sentence" of this instruction because it is not limited to testimony that is favorable to the Government.  That point is made in the immediately preceding sentence.  The entire thrust of the instruction is that the plea agreement gives the witness an incentive to testify in favor of the Government.  The instruction is not erroneous because it does not redundantly make that point in the last sentence.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION IV(R)
(NOT PROPER TO CONSIDER GUILTY PLEA OF GOVERNMENT WITNESS)**

1.  Citing O'Malley, § 15.07 ("Credibility of Witnesses-
Conviction of Felony"), Forbes contends that Judge Thompson erred
because he did not instruct the jury that the testimony of Cosmo
Corigliano and Anne Pember "may be discredited by evidence
showing that [they] pled guilty to a felony" and that "[a] guilty
plea to a crime that is a felony is one of the circumstances that
you may consider in determining the credibility of that witness."
(Emphasis added).  Although that instruction is properly given
regarding a witness who was previously convicted but who is not
testifying pursuant to a cooperating plea agreement, it is wholly
unnecessary where, as regards Corigliano and Pember, the witness
is testifying pursuant to a cooperating plea agreement.  In the
latter situation, the district court should give an instruction
which states that the jurors should consider the witness's
alleged motive to falsely implicate the defendant arising from
the fact of the cooperating agreement.  See United States v.
Prawl, 168 F.3d 622, 628-29 (2d Cir. 1999); United States v.
Vaughn, 430 F.3d 518, 523-24 (2d Cir. 2005).

Accordingly, Judge Thompson properly instructed the jury
during the second trial that:

> In this case, there has been testimony from two
> government witnesses who pled guilty after entering
> into an agreement with the government to testify —-
> Cosmo Corigliano and Anne Pember.  There is evidence
> that the government agreed not to prosecute the

witnesses on certain charges in exchange for the
witnesses' agreement to plead guilty to one or more
offenses and testify at this trial against the
defendant.  The government entered into agreements with
these witnesses concerning sentencing issues and
promised to bring the witnesses' cooperation to the
attention of the sentencing court.

The government is permitted to enter into this
kind of plea agreement.  You, in turn, may accept the
testimony of such a witness and convict the defendant
on the basis of this testimony alone, if it convinces
you of every element of the offense charged beyond a
reasonable doubt.

However, you <u>should</u> bear in mind that a witness
who has entered into such an agreement has an interest
in this case different than any ordinary witness.  A
witness who realizes that he or she may be able to
obtain his or her own freedom or receive a lighter
sentence by giving testimony favorable to the
government has a motive to testify falsely.  Therefore,
you <u>must</u> examine the testimony of such a witness with
caution and weigh it with great care.  <u>If, after
scrutinizing the testimony of such a witness,</u> you
decide to accept it, you may give it whatever weight,
if any, you find it deserves.

STTr. 3808-09 (emphasis added).

Because Judge Thompson gave that instruction, and because

this Court will presumably give the same or a similar instruction

at the conclusion of the third trial, the instruction proposed by

Forbes is unnecessary and potentially confusing.  Forbes'

proposed instruction understates the level of scrutiny that the

jury should apply to the testimony of a cooperating

coconspirator, potentially confuses the jury about the effect of

the witness's guilty plea agreement, and at best is merely

cumulative of the instruction regarding the effect of a

cooperating plea agreement in assessing credibility.  For that reason, Forbes has failed to cite a single case which requires the giving of an instruction along the line of <u>O'Malley</u>, § 15.07 with respect to a witness who is testifying pursuant to cooperating plea agreement.

2.  The Government agrees with Forbes that the instruction set forth in paragraph 1 need not be given with respect to Casper Sabatino.

3.  The Government's response to Forbes' complaint that Judge Thompson declined to give Forbes' proposed instructions 19 and 19A is set forth in Exhibit B to this submission.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION IV(T)**
**(DEFENDANT'S TESTIMONY)**

1.  Forbes' contention that this Court should instruct the jury regarding the motive of a cooperating witness to testify falsely, but that it should not instruct about the motive of a defendant to testify falsely, is unprincipled, and is unsupported by argument or authority.  This instruction conforms to one of the model charges.  Sand & Siffert, Instr. 7-4 ("Defendant's Interest if Defendant Testifies").

2.  As demonstrated in Docket 2259 at 5-7 (Government's Opposition to Forbes' Third Trial Motion In Limine No. 1), Forbes' claim that his first trial testimony was improperly compelled is meritless.  Accordingly, portions of Forbes' first trial testimony was properly admitted during the second trial as the admission of a party.  Fed. R. Evid. 801(d)(2).

The Government has sought the admission during the third trial of portions of Forbes' first and second trial testimony.  Docket 2259 at 16-20 (Government's Third Trial Motion In Limine No. 1).  If this Court agrees, it should give this instruction to properly inform the jury of Forbes' powerful motive to falsely exonerate himself.[8]

_____

   [8] United States v. Walker, 652 F.2d 708 (7th Cir. 1981), cited by Forbes, is inapposite.  In Walker, the district court admitted during retrial portions of the defendant's testimony from the first trial.  No error was assigned to the admission of the defendant's prior testimony.  Rather, the Court of Appeals
                                                    (continued...)

### GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION V(B) (NOTES)

1. Forbes provides no authority for the proposition that an official transcript "trumps" the recollection of the jurors in the event of a conflict. Forbes contends that the instruction was improper because the Government was derelict for failing to challenge any transcript portions which the Government believed were erroneous. Forbes, however, does not identify any disputed transcript portions which he wanted the jury to accept as accurate and which the Government believed were inaccurate. In the one instance where there was such a dispute during the first trial, the Government did in fact seek a ruling from the Court, which agreed with the Government that the transcript was inaccurate. FTTr. 9565, Shelton Sentencing Transcript 504.

---

[8](...continued)
held that the district court had violated the "rule of completeness," by excluding from the retrial portions of the defendant's prior testimony which he offered as explanatory of the portions offered by the Government. 652 F.2d at 711. Walker has no bearing on the propriety of this instruction, and this instruction has no bearing on the propriety of Judge Thompson's rulings regarding Forbes' requests for admission of certain portions of his own prior testimony under Rule 106.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO INSTRUCTION V(D)
(EXHIBITS AND TESTIMONY; USE OF THE INDICTMENT)**

Forbes' objection to Judge Thompson's decision to allow the
jury to have a copy of the indictment during deliberations is
meritless for the reasons stated in the paragraph 1 of the
Government's response to "Response to Forbes' Objections to
Instruction I(A) (Introduction)."

**GOVERNMENT'S RESPONSES TO FORBES' OBJECTIONS TO JUDGE THOMPSON'S
DECISION NOT TO GIVE CHARGES REQUESTED BY FORBES**

The Government's responses to Forbes' objections to Judge Thompson's decision not to give the proposed charges requested by Forbes are set forth in Exhibit B hereto.

**GOVERNMENT'S RESPONSE TO FORBES' OBJECTIONS TO JUDGE THOMPSON'S DECISION NOT TO GIVE CURATIVE INSTRUCTIONS REQUESTED BY FORBES**

The Government's responses to Forbes' objections to Judge Thompson's decision not to give the proposed curative instructions requested by Forbes are set forth in Exhibit B hereto.

**CONCLUSION**

The Government respectfully requests that this Court overrule Forbes' objections to the Final Jury Charge except in those instances described herein where the Government does not oppose those objections.

                        Respectfully submitted,

                        CHRISTOPHER J. CHRISTIE
                        Special Attorney
                        U.S. Department of Justice

*Norman Gross/s*

                        NORMAN GROSS
                        Federal Bar Number 24933
                        MICHAEL MARTINEZ
                        Federal Bar Number PHV0423
                        MARK E. COYNE
                        Federal Bar Number PHV01079
                        Special Attorneys
                        U.S. Department of Justice
                        970 Broad Street
                        Room 700
                        Newark, N.J.  07102
                        (973) 645-2701

Newark, New Jersey
Date: June 9, 2006

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this day I caused to be
served a copy of the Government's Responses to Forbes' Final
Objections to the Court's Final Jury Instructions from the First
Retrial via email on:

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901
(202) 434-5005
bsimon@wc.com


*Norman Gross/s*
_____
NORMAN GROSS

Dated: June 9, 2006
       Camden, New Jersey