UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>WALTER A. FORBES. )<br>)<br>) | No. 3:02CR264 (AHN)<br>June 15, 2006 |

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF WALTER A.
FORBES TO PRECLUDE HEARSAY STATEMENTS FROM ERNST &
YOUNG DURING THE TESTIMONY OF ANNE PEMBER
(Forbes Third Trial Motion *In Limine* No. 17)**

WILLIAMS & CONNOLLY LLP
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

COWDERY, ECKER & MURPHY, L.L.C.
James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

*Attorneys for Walter A. Forbes*

The government obtained an indictment in this case alleging a conspiracy <u>internal</u> to Cendant. Having failed (twice) to convince a jury that Walter Forbes was part of such a conspiracy, however, the government seeks to proceed upon a new theory: that the conspiracy also included the outside auditors Ernst & Young, upon whom Mr. Forbes has testified he relied.[1] The government's new theory unconstitutionally broadens the scope of the indictment, and must be precluded.[2]

Moreover, any minimal probative value statements suggesting Ernst & Young's purported complicity may have is substantially outweighed by the significant risk that they will confuse or mislead the jury.

## I. EVIDENCE THAT ERNST & YOUNG HAD KNOWLEDGE OF THE FRAUD CONSTRUCTIVELY AMENDS THE INDICTMENT.

The government argues that mere evidence that Ernst & Young knew of the fraud does not make Ernst & Young part of the conspiracy because "[s]omeone who merely knows that others are or may be committing a crime is not guilty of that crime." Gov't Opp. at 8. This argument ignores the fact that Ernst & Young issued a clean opinion blessing CUC's/Cendant's financial statements each and every year of the alleged fraud. If Ernst & Young knew the financial statements were fraudulent, yet nonetheless issued these clean opinions as the company's auditor – a prerequisite for filing of the allegedly false financial statements – there

---

[1] The government introduced some evidence of Ernst & Young's complicity in the first trial, but quickly retreated from that approach after Mr. Forbes objected on the grounds it constituted a constructive amendment of the indictment. See Docket Nos. 802, 803, & 843. After failing to obtain a conviction in that trial, however, the government sought to admit much more evidence of Ernst & Young's purported complicity in the second trial, and to imply Ernst & Young's complicity in closing arguments. See Tr. 12/5/2005 at 3588-90 (rebuttal argument by AUSA Craig Carpenito).

[2] This motion is not governed by the standards for reconsideration or law of the case. See Reply Supp. Forbes Third Trial Mot. *In Limine* No. 9 (filed June 15, 2006).

would be no question but that they had joined the conspiracy and committed a crime. Indeed, despite its protestations to the contrary to suit its present purposes, Gov't Opp. at 9,[3] this is precisely what the government attempted to suggest to the jury when it tried to juxtapose evidence of Ernst & Young's possible knowledge of the fraud with evidence that the auditors nonetheless issued a clean opinion for the year in question. See, e.g., Tr. 10/24/2005 at 912-914.

The government's argument that adding Ernst & Young to the conspiracy would not impermissibly broaden the scope of the indictment also must fail. Gov't Opp. at 7-8. A constructive amendment takes place when the government presents evidence at trial that broadens the scope of the indictment beyond that returned by the grand jury, or when the government presents evidence that is based on facts different than those found by the grand jury that returned the indictment. See, e.g., United States v. Wozniak, 126 F.3d 105, 109-11 (2d Cir. 1997) (finding constructive amendment, and reversing conviction, where indictment charged defendant with conspiracy to distribute cocaine, but government offered evidence of both cocaine and marijuana distribution); United States v. Zingaro, 858 F.2d 94, 103 (2d Cir. 1988) (finding constructive amendment, and reversing conviction, where government offered evidence of loan that fell outside scope of scheme alleged in indictment); see also United States v. Leichtnam, 948 F.2d 370, 377 (7th Cir. 1991) ("Any broadening of the possible bases for conviction from that which appeared in the indictment is fatal. It is reversible per se.") (quotations omitted); United States v. Keller, 916 F.2d 628, 634-36 (11th Cir. 1990) (finding constructive amendment, and reversing conviction, where indictment alleged that defendant conspired with one person, but court instructed jury that he could be convicted if he conspired

---

[3] See also Gov't Opp. to Forbes Third Trial Motion in Limine No. 16 at 4 and Gov't Opp. to Forbes Third Trial Motion in Limine No. 18 at 15.

2

with others); United States v. Yeo, 739 F.2d 385, 387 (8th Cir. 1984) (finding constructive amendment, and reversing conviction, where indictment referred to extortion of specific individual but government offered evidence of extortion of others as alternative basis of conviction); United States v. Figueroa, 666 F.2d 1375, 1378-80 (11th Cir. 1982) (finding constructive amendment, and reversing conviction, where indictment charged attempted hijacking by force and violence, but government proved attempted hijacking by threats and intimidation); United States v. Cusmano, 659 F.2d 714, 715, 719 (6th Cir. 1981) (finding constructive amendment, and reversing conviction, where indictment charged extortion by means of threatened economic loss but government introduced evidence of threatened physical violence as alternative means of extortion).

Similarly, when the evidence presented by the government at trial establishes materially different facts from those alleged in the indictment, and a defendant is prejudiced in "his ability to defend himself" as a result of a variance between the allegations in the indictment and the government's evidence at trial, United States v. Manning, 142 F.3d 336, 339 (6th Cir. 1998), the variance rises to the level of a constructive amendment of the indictment and constitutes reversible error. Id. As one court in this circuit recently explained:

> A defendant is entitled to fair notice of the charges against him. If the indictment alleges specific facts and theories to support those charges, the defendant should not be placed in the precarious position of mounting a challenge to those facts, only to face contradictory facts when the state changes theories.

United States v. Chase, No. 2:04-CR-135, 2005WL3288731, *4 (D. Vt. November 30, 2005) (finding the government's proffered theory would constructively amend the indictment).

The government's attempt to persuade the jury that E&Y representatives Wilchfort, Rabinowitz, Wood, and Capparelli were knowledgeable about, and acted to facilitate and conceal, alleged accounting fraud at Cendant, is an unconstitutional constructive amendment

3

of the indictment and/or a prejudicial variance. The indictment expressly alleges that Walter Forbes "engaged in a conspiracy with the assistance of <u>co-conspirators who were his corporate subordinates.</u>" Indictment, ¶ 19 (emphasis added). It further makes clear that the auditors were duped by this alleged conspiracy, <u>not part of it</u>, alleging that the purported co-conspirators used various accounting machinations to ensure that the company could "withstand the scrutiny of its required annual audit." Indictment, ¶¶ 26-29.

Indeed, the government confirmed that Ernst & Young was alleged to be a victim of the co-conspirators' lies, not a participant, when seeking a stay of the civil litigation pending between, <u>inter alia</u>, Cendant, Mr. Forbes and Ernst & Young. At that time, government counsel represented to the United States District Court in New Jersey that "Ernst & Young is bright, when I say that, a <u>part of our allegations in our indictment is that Ernst & Young were lied to, that they were misled.</u>" Tr. of 3/8/01 at 10 (emphasis added), attached as Exhibit A hereto. The government further stated that it intended to "<u>vindicate</u>" Ernst & Young during the criminal trial. <u>Id</u>. (emphasis added).

In addition, the government's correspondence concerning alleged co-conspirators – by which it is bound -- does not identify any E&Y representative as an alleged unindicted co-conspirator. <u>See</u> Forbes Trial Motion No. 11 [Docket No. 743]. Adding Ernst & Young to the conspiracy thus poses the risk that the jury will convict Mr. Forbes on facts different from those presented to and alleged by the grand jury.

The case law cited by the government is not to the contrary. Gov't Opp. at 7-8. Two of the cases relied upon by the government – <u>United States v. Schurr</u>, 775 F.2d 549 (3d Cir. 1985) and <u>United States v. Lippner</u>, 676 F.2d 456 (11th Cir. 1982) – involved cases where the government proved a <u>more narrow conspiracy</u> at trial than that alleged in the indictment. As the

4

Schurr court explained it, "any variance between the broad conspiracy outlined in the indictment and the narrow conspiracy proved at trial did not result in Schurr's and Rosetsky's being convicted based on the conduct of other individuals." Schurr, 775 F.2d at 555. The same cannot be said in the present case, where the government seeks to <u>broaden the conspiracy</u>, thereby exposing Mr. Forbes to the risk of being convicted due to the conduct of Ernst & Young.

In <u>United States v. Melekh</u>, 193 F. Supp. 586 (N.D. Ill. 1961), also relied upon by the government, Gov't Opp. at 8, the court held that there was no variance because, although the indictment had failed to name one of the co-conspirators in a paragraph purporting to identify the co-conspirators, <u>the indictment did specifically identify the person as a co-conspirator</u> in the section describing the alleged overt acts. And <u>United States v. Cahalane</u>, 560 F.2d 601 (3d Cir. 1977), Gov't Opp. at 7, involved a case where the indictment stated there were "unknown persons," and the government subsequently wrote a letter identifying five specific persons. Here, in contrast, the indictment explicitly defined the conspiracy as one internal to Cendant, thus excluding the outside auditors. The government's subsequent letter identifying the "unnamed" coconspirators confirmed this, naming persons who were internal to Cendant only. And when the defense moved to restrict the government to the representations it had made concerning the alleged unindicted co-conspirators, Forbes Trial Motion No. 13 [Docket No. 802], the government stated it did not oppose the motion. See Tr. 5/20/2004 at 1542. Mr. Forbes has a right to be tried upon the facts alleged in the indictment returned by the grand jury, and to construct a defense based on those allegations.

That the defense introduced evidence that the alleged co-conspirators lied to Ernst & Young, and that these lies were apparently successful since Ernst & Young continued to issue clean opinions each year, does not thereby open the door to the government broadening the

5

indictment to include Ernst & Young in the conspiracy. Gov't Opp. at 10-13. This argument by the defense amounts to nothing more than pointing out to the jury the exculpatory aspects of the government's own theory – that Ernst & Young was not a member of the conspiracy. That the government has now determined that its own theory is flawed cannot justify the government changing that theory by broadening, and fundamentally changing, the conspiracy alleged in the indictment. See Chase, 2005WL3288731, *4.

Moreover, the government's argument that this evidence rebuts Mr. Forbes' defense of good faith reliance on Ernst & Young, Gov't Opp. at 16, is simply wrong. There is no evidence that Mr. Forbes was ever informed that Ernst & Young had seen any "red flags" or had otherwise been suspicious of Cendant's accounting. Nor is there any evidence that Mr. Forbes was told of the accountants' communications with Ms. Pember. Thus, while it is conceivable that such evidence could be used to rebut a claim of good faith reliance by Mr. Corigliano or Ms. Pember, it cannot similarly serve to rebut Mr. Forbes' claim of good faith reliance because there is no evidence that he ever knew of it.

Nor can the government justify introducing this evidence under the guise that it is offered to show that the co-conspirators did not provide timely, accurate or complete information to the auditors. Gov't Opp. at 10. As discussed in Forbes Third Trial Motion *In Limine* No. 16 at p.7, although the government now describes such evidence as "vital", id., in the first two trials it was Mr. Forbes who sought to elicit this information, not the government. Moreover, that point can readily be made without eliciting these statements suggesting the potential complicity of the Ernst & Young auditors.

6

## II. THE GOVERNMENT SHOULD NOT BE PERMITTED TO OFFER THIS EVIDENCE FOR A PURPORTEDLY LIMITED, NON-HEARSAY PURPOSE.

The government also argues that the evidence is admissible for a number of non-hearsay purposes: (1) as "context" for 801(d)(2)(E) statements (the basis upon which several of them were admitted in the second trial), (2) for the purported "effect" the statements had on Ms. Pember's state of mind, and (3) for the fact they were said rather than for the truth.

First, none of these non-hearsay purposes resolves the fundamental problem that admission of these statements suggests that Ernst & Young was squarely in the middle of the charged conspiracy, and thus impermissibly amends the indictment, discussed supra.

Second, the government's argument that Ernst & Young's statements "emboldened" Pember to tell even "worse" lies is contrary to the testimony of Ms. Pember. Ms. Pember testified that Mr. Rabinowitz's stated concerns regarding the support for the merger reserves in 1997 caused her to go to Mr. Corigliano and alert him to the issue. Tr. 10/24/2005 at 904-05. It was then Mr. Corigliano who told Ms. Pember not to worry about it, and instructed her what information to provide in 1998. Id. at 905-06.

Third, the fact that Ernst & Young's statements may have had some effect on Ms. Pember's state of mind or actions bears no relevance to the charges against Mr. Forbes, who is not alleged to have known anything about these communications, much less their "effect."

Fourth, this Court should reject the government's continued attempt to introduce evidence of Ernst & Young's alleged complicity by claiming it is admissible for a limited purpose, when it is clear the government wants the evidence for a different, impermissible purpose. As discussed in Mr. Forbes' Opening Memorandum, the statements sought to be precluded here were admitted in the second trial as "context" for Ms. Pember's and Mr. Corigliano's 801(d)(2)(E) statements, and yet the government then argued in its closing that

7

these statements were evidence that in fact Ernst & Young did see "red flags," and nonetheless continued to issue clean opinions. Open. Mem. at 4-5. The government never confronts this issue in its Opposition. Rather, the government implied that the Court should not consider this argument because Mr. Forbes had not objected at the closing. Gov't Opp. at 2 n.3. This was inaccurate, as the government subsequently admitted when it filed its "corrected" Opposition. See Exhibit B hereto. Despite this admission, the government still never addresses the underlying, improper closing argument it made after it induced the Court to admit the evidence for a purportedly limited purpose.

Fifth, even if the statements were relevant for a non-hearsay purpose, they would still be subject to exclusion under Fed. R. Evid. 403. The relevance of the statements is minimal at best. There is no evidence that Mr. Forbes knew of the statements, or knew that Ernst & Young had expressed any concerns with Cendant's accounting. Thus any probative value that might possibly be assigned to the evidence is substantially outweighed by the unfair prejudice and potential jury confusion that would result from the suggestion that Ernst & Young participated in the conspiracy.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

                                     - and -

                            James T. Cowdery (Bar No. ct05103)
                            Thomas J. Murphy (Bar No. ct07959)
                            COWDERY, ECKER & MURPHY, L.L.C.
                            750 Main Street
                            Hartford, CT 06103-2703
                            (860) 278-5555 (phone)
                            (860) 249-0012 (fax)
                            tmurphy@cemlaw.com (e-mail)

                            Attorneys for Walter A. Forbes

Dated:  June 15, 2006

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Reply Memorandum in Support of Motion of Walter A. Forbes to Preclude Hearsay Statements from Ernst & Young During the Testimony of Anne Pember (Forbes Third Trial Motion *In Limine* No. 17) to be filed electronically and to be served on June 15, 2006 to the following via e-mail:

>Norman Gross, Esq. (norman.gross@usdoj.gov)
>Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
>Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

_____
Barry S. Simon