UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) ) ) |
| v. | ) ) ) No. 3:02CR264 (AHN) |
| WALTER A. FORBES. | ) June 15, 2006 ) ) |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO
PRECLUDE THE GOVERNMENT FROM INTRODUCING
THE HEARSAY STATEMENTS OF E. KIRK SHELTON
(Forbes Third Trial Motion *in Limine* No. 18)**

WILLIAMS & CONNOLLY LLP
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

COWDERY, ECKER & MURPHY, L.L.C.
James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

The government's Opposition fails to establish that Mr. Shelton's purported statement is non-hearsay. Moreover, even if the statement were non-hearsay, the government cannot overcome the fact that evidence suggesting that Ernst & Young knew of the fraud, yet nonetheless continued to issue clean opinions, would unconstitutionally amend the indictment. Finally, any minimal probative value the statement may have is substantially outweighed by the significant risk that it will confuse or mislead the jury.[1]

## I.  THE ALLEGED STATEMENT OF MR. SHELTON IS INADMISSIBLE HEARSAY, AND WAS NOT IN FURTHERANCE OF THE CONSPIRACY.

The government argues that Mr. Shelton's alleged statement that Mr. Rabinowitz gave an "academy award performance" furthered the conspiracy by:

- Reassuring Ms. Pember that the fraud had not been exposed, and thereby implicitly directing her to continue the fraud;
- Preventing Ms. Pember from defecting from the conspiracy by conveying that there was nothing to worry about; and
- Fostering trust and cohesiveness, thereby ensuring that Ms. Pember would continue to further the goals of the conspiracy.

Gov't Opp. at 8. Although cast as three separate theories, these arguments in fact are all variants of the same theme – that Mr. Shelton reassured Ms. Pember, and kept her in the conspiracy, by characterizing Mr. Rabinowitz's presentation as an "academy award performance."[2] This theme must fail. First, it is not a reasonable inference from the statement. No one would take Mr.

---

[1] The government's Opposition notes that Mr. Corigliano also testified to this alleged statement of Mr. Shelton, but incorrectly assumes that Mr. Forbes is not challenging Mr. Corigliano's testimony in this respect. Gov't Opp. at 5 n.2. As demonstrated in Mr. Forbes' Opening Memorandum, the testimony is inadmissible hearsay, and we object to it being offered through any witness.

[2] The government's argument that the statement is admissible to show the effect it had on Ms. Pember's state of mind is nothing more than another variant on this theme – that "Shelton's statement gave Pember comfort that the inquiry had not uncovered the fraud, reassured her that he remained committed to the conspiracy, and sought to induce her to do the same." Gov't Opp. at 9.

Shelton's statement as one of reassurance to Ms. Pember, intended to induce her to continue in the conspiracy. This is confirmed by the fact that Mr. Shelton is alleged to have repeated the remark to Mr. Corigliano, Gov't Opp. 5 at n.2. Yet Mr. Corigliano witnessed the alleged "performance" himself, and thus did not need any "reassurance." That Mr. Shelton would make the remark to Mr. Corigliano as well thus confirms that it was in fact an off-hand remark, not a shadowed message to Ms. Pember that she could continue to participate in the fraud without worrying about Ernst & Young. Second, it is contrary to the evidence introduced by the government, which demonstrated that Ms. Pember had been removed from the accounting role as of March 5, 1998, and that Ms. Pember considered her job over as of March 6, 1998. Tr. 10/24/2005 at 633. Indeed, Ms. Pember had not even gone into work on March 9th until requested to attend the meeting with Mr. Monaco and Mr. Scott Forbes to review the reserve usage. Id. Thus the government's claim that Mr. Shelton was somehow inducing Ms. Pember to continue the conspiracy by his off-hand remark on March 9th is belied by its own evidence.

Moreover, it is clear that the government is not offering the statement for any of these purported reasons. Indeed, if the government's true goal was simply to establish these three points, it would be sufficient to introduce Mr. Shelton's purported statement that the meeting went well. But the government seeks much more – insisting on also offering the alleged statement regarding an "Academy Award performance." The government plainly wishes to offer this evidence as proof that Ernst & Young knew of the fraud in order to "rebut" Mr. Forbes' reliance on Ernst & Young, arguing that Shelton's purported statement "supports the Government's argument that the conspirators knew E&Y would not seriously question or expose the fraud at CUC." Gov't Opp. at 16. See also Gov't Opp. at 17 (acknowledging that the statement can be construed to suggest that Rabinowitz knew of the fraud) and Exhibit A hereto

(excerpt from the government's brief in opposition to Mr. Shelton's appeal, expressly citing this testimony as evidence that "Rabinowitz was not fooled by CUC's improper use of merger reserves."). Yet to draw the conclusion that Ernst & Young would not question or expose the fraud requires one to accept the truth of the purported statement – that Mr. Rabinowitz gave an academy award performance. Thus this purpose for offering the evidence runs head-first into the prohibition against hearsay. And, contrary to the government's position, it cannot admit a statement for one purpose – such as to show how it purportedly encouraged Pember to remain in the conspiracy – yet then argue the evidence for a different, impermissible hearsay purpose.[3]

Finally, even if the statement did constitute a co-conspirators' statement, it would still be subject to exclusion under Fed. R. Evid. 403. The relevance of the statement is minimal at best. There is no evidence that Mr. Forbes knew of the statement, or that he knew of any suggestion that Ernst & Young purportedly knew about or participated in the fraud. And as explained above, any "encouragement" Mr. Shelton's alleged statement may have provided to Ann Pember was slight given the fact that she was already half-way out the door at the time. Thus any probative value that might possibly be assigned to the evidence is substantially outweighed by the unfair prejudice and potential jury confusion that would result from the suggestion that Ernst & Young participated in the conspiracy.

## II.  INTRODUCTION OF THE STATEMENT WOULD IMPROPERLY AMEND THE INDICTMENT.

The government repeats its claims that (1) it is not arguing that Ernst & Young is a member of the conspiracy, and (2) that including Ernst & Young as part of the conspiracy

---

[3] Notably, the government did just this in the second trial – offering certain statements of Ernst & Young auditors for the purported purpose of offering "context" to alleged co-conspirators' statements, but then arguing in closing that those Ernst & Young statements demonstrated that Ernst & Young had in fact seen "red flags." See Forbes Third Trial Motion in Limine No. 17 at 4-5.

3

would not impermissibly amend the indictment. Mr. Forbes responds at length to these arguments in his Reply Memorandum in Support of Third Trial Motion in Limine No. 17 (filed June 15, 2006), incorporated herein.

Moreover, the government's argument that this evidence rebuts Mr. Forbes' defense of good faith reliance on Ernst & Young is simply wrong. There is no evidence that Mr. Forbes was ever informed that Ernst & Young had seen any "red flags" or had otherwise been suspicious of Cendant's accounting. Nor is there any evidence that Mr. Forbes was told of Mr. Shelton's comments concerning Mr. Rabinowitz's "performance." Thus, while it is conceivable the evidence could be used to rebut a claim of good faith reliance by Mr. Shelton, Mr. Corigliano, or Ms. Pember, each of whom had knowledge of it, it cannot similarly serve to rebut Mr. Forbes' claim of good faith reliance because there is no evidence he ever knew of it.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

4

        James T. Cowdery (Bar No. ct05103)
        Thomas J. Murphy (Bar No. ct07959)
        COWDERY, ECKER & MURPHY, L.L.C.
        750 Main Street
        Hartford, CT 06103-2703
        (860) 278-5555 (phone)
        (860) 249-0012 (fax)
        tmurphy@cemlaw.com (e-mail)

        Attorneys for Walter A. Forbes

Dated: June 15, 2006

CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Reply Memorandum in Support of Motion to Preclude the Government from Introducing the Hearsay Statements of E. Kirk Shelton (Forbes Third Trial Motion *In Limine* No. 18) to be filed electronically and to be served on June 15, 2006 to the following via e-mail:

Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

_____
Barry S. Simon