# EXHIBIT A

# TO

# MIL NO. 18

# 05-4342-cr

UNITED STATES COURT OF APPEAL
FOR THE SECOND CIRCUIT

---

United States of America,

Appellee

v.

E. Kirk Shelton,

Appellant

---

## BRIEF FOR APPELLEE

---

On Appeal from the United States District Court
for the District of Connecticut
(Crim. No. 3:02-264 (AWT))(Thompson, J.)

> CHRISTOPHER J. CHRISTIE
> United States Attorney
> GEORGE S. LEONE
> Chief, Appeals Division
> Attorneys for Appellee
> 970 Broad Street
> Newark, New Jersey 07102-2535
> (973) 645-2750

On the Brief:
NORMAN GROSS
GLENN J. MORAMARCO
Assistant U.S. Attorneys
United States Attorney's Office
Camden Federal Building and U.S. Courthouse
401 Market Street, Fourth Floor
Camden, NJ 08101
(856) 968-4930

Shelton's attempt to capitalize on his co-conspirators' success in pulling the wool over the eyes of Monaco and Scott Forbes fails because there was no evidence that Corigliano and Pember falsely told Shelton that reserve adjustments were proper "corrections" of previous misclassifications of merger-related expenses. Indeed, Shelton himself never testified that he had been so misled.[39] Moreover, Shelton apparently never saw the misleading document, DX1303, until the March 9, 1998 meeting. Accordingly, that document could not have given him comfort that the $100 million reserve adjustment set forth on GX62b, which Shelton saw in December 1996 or January 1997, Tr. 6193-96, 6232, was an appropriate use of the merger reserve.

Shelton's reliance on DX1303 and the conspirators' snookering of Monaco and Scott Forbes fails for other reasons. First, viewing the evidence in the light most favorable to the Government, Rabinowitz was not fooled by CUC's improper

---

[39] Although Shelton cites a portion of his testimony on this point, DB82, citing Tr. 12024-25, nowhere in the cited testimony (or elsewhere) did Shelton testify that he was told by anyone that CUC accountants had mistakenly classified merger related expenses as ordinary expenses. Rather, in the cited portion of the transcript, he testified that he assumed that CUC would receive an "earnings benefit" from the fact that certain expenses would be charged to the merger reserve. Of course, since a merger reserve is supposed to be "earnings neutral," the only way that CUC could obtain a benefit from the use of a merger reserve would be for the company to fraudulently misuse the reserve, as in fact occurred here.

97

use of merger reserves.[40] Second, to the extent this argument is meant to imply that the size of the misallocated merger reserves was not highly suspicious, the argument is misplaced. The size of the merger reserve adjustments was so highly suspicious that Monaco and Scott Forbes needed an explanation, and the conspirators provided them with a phony one. The fact that Monaco and Scott Forbes were fooled by <u>phony corroboration</u> does not make the underlying circumstances any less suspicious.

Shelton also claims that he could have innocently believed that the merger reserves could have properly increased income by pointing to the fact that a merger may result in a decrease in total operating expenses for the merged entity with no decrease in total revenue. DB24-25. Shelton's point that the closing of duplicate plants following a <u>merger</u> would result in decreased ordinary, operating expenses does not explain how the <u>merger reserve</u> could properly reduce ordinary expenses,

---

[40] Pember testified that Shelton commented after the meeting with Monaco, which attempted to justify for Cendant the use of the Ideon merger reserves, that Rabinowitz "deserved an academy award for his performance." Tr. 2960. Alternatively, Rabinowitz's failure to recognize that the Ideon merger reserve had been improperly manipulated was attributable to the lies that the conspirators had told him and his colleagues at E&Y. Tr. 2497-2546; GX478, GX484. Rabinowitz had previously audited the use of the Ideon merger reserve and failed to detect the fraud. Not surprisingly, he continued to stand by his prior, albeit incorrect, assessment that the Ideon merger reserve had been properly accounted for when questioned by Monaco.