UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.  ) | No. 3:02CR264 (AHN) |
| ) | |
| WALTER A. FORBES ) | June 15, 2006 |
| ) | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT
WALTER A. FORBES TO PRECLUDE THE GOVERNMENT FROM
PRESENTING IMPROPER LAY OPINION TESTIMONY AT TRIAL**
<u>(Forbes Third Trial Motion *In Limine* No. 10)</u>

WILLIAMS & CONNOLLY LLP
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

COWDERY, ECKER & MURPHY, L.L.C.
James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

*Attorneys for Walter A. Forbes*

Oral Argument Requested

The government agrees with Part II.B. of Mr. Forbes' motion *in limine* to preclude government witnesses from testifying about their speculation, beliefs, or opinions about whether Mr. Forbes had knowledge of, or was involved in, the alleged fraud, or whether Mr. Forbes had knowledge of accounting or other concepts. See Opp'n at 21.[1] The government contends, however, that it should be permitted to offer lay opinion testimony about accounting issues. Such testimony should be excluded under Rule 701 because it is based on specialized knowledge. See Fed. R. Evid. 701(c).[2]

The government's primary argument—that testimony based on "personal knowledge" is fact testimony and that personal knowledge removes such testimony from the realm of lay opinion, see Opp'n at 5—ignores Fed. R. Evid. 701. Not only does Rule 701 recognize that lay opinion testimony may be based on personal knowledge; it requires that lay opinion testimony be based on personal knowledge to be admissible. Fed. R. Evid. 701(a) ("rationally based on the perception of the witness"); United States v. Garcia, 291 F.3d 127, 140 (2d Cir. 2002) (describing first requirement for admissibility of lay opinion testimony as "the familiar requirement of first-hand knowledge or observation" (quoting United States v. Rea, 958 F.2d 1206, 1215 (2d Cir. 1992))).

---

[1] The government's statement that Mr. Forbes "concedes that none of the cooperating witnesses purported to testify about Forbes' mental state during either the first or second trials," Opp'n at 21, is misleading. Mr. Kernkraut, who was not a "cooperating witness," did offer improper speculation about what Mr. Forbes supposedly "knew." See Forbes Third Trial Mot. *In Limine* No. 3 [Docket No. 2253].

[2] This motion is not governed by the standards for reconsideration or law of the case. See Reply Supp. Forbes Third Trial Mot. *In Limine* No. 9 (filed June 15, 2006). Furthermore, as set forth in the opening memorandum, the Court granted certain Rule 701 objections to accounting testimony by lay witnesses. See Mot. Preclude Lay Opinion Testimony at 3 n.1 (Forbes Third Trial Mot. *In Limine* No. 10). Therefore, the government's suggestion that Judge Thompson rejected this argument in toto, see Opp'n at 1, is incorrect.

The Advisory Committee Note provides the following "prototypical example[s]" of lay opinion testimony: "the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, [and] distance." Fed. R. Evid. 701 advisory committee's note to 2000 amendment (quotation omitted). Testimony about each one of these examples may be based on "personal observations," Opp'n at 6, but it still expresses a lay opinion that must satisfy the remaining requirements of Rule 701.

What the government appears to be arguing is that lay opinion testimony based on personal knowledge is admissible. See Opp'n at 6 (citing United States v. Fawaz, 881 F.2d 259 (6th Cir. 1989)).[3] This argument conflates the first and third foundation requirements under Rule 701. The Second Circuit's recent decision in United States v. Garcia, 413 F.3d 201 (2d Cir. 2005), makes clear that Rule 701 has three separate foundation requirements. The testimony must be (1) based on the perception of the witness; (2) helpful to the jury; and (3) not based on specialized knowledge. Id. at 211. It is the government, as "the proponent of lay opinion testimony who must satisfy the rule's three foundation requirements." Id. Irrespective of whether the challenged accounting testimony is based upon the personal knowledge of the witness, the government must still establish the third foundation requirement—that the testimony is not based on specialized knowledge.

---

[3]   Fawaz was decided more than a decade before the 2000 amendment to Rule 701 added a new requirement to the existing requirements of personal knowledge and helpfulness—"that testimony cannot be received as lay opinion if it is based on scientific, technical, or other specialized knowledge. Rather, a lay opinion must be the product of reasoning processes familiar to the average person in everyday life." United States v. Garcia, 413 F.3d 201, 215 (2d Cir. 2005) (citation omitted). Therefore, in Garcia, the Second Circuit rejected the government's reliance on pre-amendment cases. Id. at 215 n.9 ("To the extent the government relies on cases that pre-date this 2000 amendment to support its argument that a law enforcement officer may offer opinion testimony as to the criminality of actions witnessed by him, we do not find such cases particularly useful to our analysis."). The government's reliance here upon Fawaz and other cases that pre-date the 2000 amendment to Rule 701, see Opp'n at 16 n.10, 17, 19-20, is similarly misplaced, and Mr. Forbes distinguished such cases previously. Docket No. 683 at 6-9.

To satisfy the third foundation requirement, the government must demonstrate that the testimony is "informed by reasoning processes familiar to the average person in everyday life rather than by scientific, technical, or other specialized knowledge." Garcia, 413 F.3d at 216. Accrual-based, GAAP accounting is simply not familiar to the average person in everyday life, and the government has not demonstrated or even claimed that it is. Instead, the government appears to suggest that the challenged testimony does not rest "in any way," Garcia, 413 F.3d at 215, upon GAAP or accrual based-accounting. The government's assertion that its cooperating witnesses "did not testify in an expert capacity regarding GAAP," Opp'n at 11, is incorrect. They might not have used the acronym "GAAP" expressly, but their opinions and explanations were based on their understandings of GAAP.

Characterizing snippets of the record, as the government does in its brief, Opp'n at 6-9, obscures the issue. The following excerpts from Ms. Pember's testimony about the proper use of merger reserves illustrate the problem. Ms. Pember began by explaining what a "merger reserve" is and identifying what types of expenses she understood may be charged to a merger reserve, issues that are governed by GAAP.[4] Ms. Pember may have personal knowledge of these issues, but it was obtained through her specialized training in accounting and her experience as a CPA. The Court sustained objections to some of this testimony.

Q.  What is a merger reserve?
A.  A merger reserve is a liability account that is established to

---

[4] Indeed, the issues of what expenses are properly chargeable to merger reserves and the proper size and scope of merger reserves have been the subject of considerable debate and analysis in the accounting profession. Two landmark position papers were issued by the Financial Accounting Standards Board's Emerging Issues Task Force ("EITF") in the area of merger reserves, one in 1994 and one in 1995: EITF Issue No. 94-3: Liability Recognition for Certain Employee Termination Benefits and Other Costs to Exit an Activity (Including Certain Costs Incurred in a Restructuring) and EITF Issue No. 95-3: Recognition of Liabilities in Connection with a Purchase Business Combination.

account for expenses that are solely related to the fact that companies merged.

Q. Can you give us an example of a typical merger-related expense?

A. Things such as accounting, legal, investment banker fees that you would pay solely due to the fact that two companies are merging. Those could be merger related.

Q. Is an ordinary operating expense included within a merger reserve?

A. Not if it relates to the ongoing business of the company, no.

Q. How does a merger reserve expense differ from an operating expense?

A. Merger expenses are one time. They're related to the fact the two companies have merged together versus an expense, an operating expense that relates to the ongoing every day business of the company.

Q. And why does that matter?

MS. KEELEY: Objection; 701.

THE COURT: Sustained.

BY MR. CARPENITO:

Q. Why is a merger-related expense -- why does a merger-related expense have to be accounted for differently than an operating expense?

MS. KEELEY: Same objection, Your Honor.

THE COURT: Sustained.

Tr. (10/24/05) at 874-76.

Ms. Pember began to testify that she directed her subordinate to make charges to a merger reserve that were not in accordance with "accepted" accounting principles. The government then attempted to ask whether there was "any basis in accounting" for these charges, but the Court suggested that the government simply ask whether there was "a basis" for these charges. Eliminating the word "accounting" does not solve the problem because generally accepted accounting principles still provide the basis for charges to a merger reserve.

Q. What instructions did you give?

> A. I asked Mr. Speaks to make journal entries to use the merger reserve to reduce ongoing operating expenses and increase revenue that was not in accordance with the accepted use of merger --
>
> MS. KEELEY: Objection, Your Honor; 701. Move to strike.
>
> \* \* \*
>
> Q. Was there any basis in accounting for your instruction to Mr. Speaks to make those journal [entries]?
>
> MS. KEELEY: Same objection.
>
> \* \* \*
>
> THE COURT: To shorten the afternoon, let's just ask her, Did she have a basis, and I will allow that question. Objection's overruled, okay?

Id. at 876-78.

Not content to have Ms. Pember explain the proper and improper uses of merger reserves under her understanding of GAAP and to opine that CUC's use of merger reserves was improper, the government asked Ms. Pember to quantify the impact of "the improper use of merger reserves" on CUC's GAAP financial statements.

> Q. Now, what part, if any -- how much did the improper use of merger reserves contribute to the deliberate overstatement of CUC's income for the year ending 12/31/97?
>
> MS. KEELEY: Objection; 701, 602.
>
> THE COURT: Why don't you leave out a couple of words and restate the question.
>
> BY MR. CARPENITO:
>
> Q. How much did the use of merger reserves contribute to the overstatement of CUC's income for the year ending 12/31/97?
>
> MS. KEELEY: Same objection, Your Honor.
>
> THE COURT: Overruled.

> A. The 12/31/1997 earnings for CUC were overstated by approximately $85 million to the usage of the Ideon and Cendant merger reserves.

Id. at 878-79.

Although Ms. Pember did not use the words that CUC's reported earnings "violated GAAP, or failed to comply with accrual accounting," Opp'n at 13-14, that was the substance of her testimony. Improper expert testimony is not converted into proper lay opinion testimony by excising the acronym "GAAP" from the testimony. This testimony required specialized knowledge that is not familiar to the average person in everyday life. The government's heavy reliance on Medforms, Inc. v. Healthcare Management Solutions, Inc., 290 F.3d 98 (2d Cir. 2002), is misplaced. First, the trial in that case preceded the 2000 amendment to Rule 701, id. at 111, and subsequent cases like Garcia underscore that the post-amendment analysis has changed. Second, as the Second Circuit stated, the challenged testimony in that case was not based on specialized knowledge. A central issue was the authorship of computer programs, id., and Gold testified that he wrote the prior versions of the computer programs and instructed Moldin exactly what to do in writing source code for the later versions. Id. at 108. Likewise, Ms. Pember's testimony as to who made journal entries or what those entries were was not based on specialized knowledge, but her testimony about the legitimacy of the accounting practices and the accuracy of CUC's GAAP financial statements was.

To testify that GAAP earnings were "overstate[d]" by $85 million because of the improper use of merger reserves would require multiple levels of expert testimony. First, it would require one to determine the baseline—what accurate GAAP earnings were for the fiscal year ending 1997. Although the government would like the Court to believe that accounting is as simple as 1 + 1, accrual-based GAAP accounting is not simple math. For example, if a company received five $1,000,000 checks in a financial reporting period, simple math would

indicate that the company's revenues were $5,000,000. But depending on various factors, such as when the company rendered services in exchange for those checks, the company may be required to recognize the revenues in an earlier or in a subsequent period. It requires expertise in GAAP accounting to determine earnings for a particular fiscal period, not "simple mathematics," Opp'n at 14, and not "reasoning processes familiar to the average person in everyday life." Second, it would require one to determine whether use of the merger reserves was "proper" or "improper" by reference to GAAP. Third, it would require one to quantify the "proper" versus the "improper" uses to determine the amount of the overstatement. An untrained layperson who knew which charges were made to the merger reserve would not be able to answer whether those charges were proper and whether they resulted in an overstatement of CUC's income for a particular fiscal year. Ms. Pember's opinions were based on her specialized knowledge and training in accounting. Therefore, the testimony was inadmissible under Fed. R. Evid. 701(c).[5]

        That some of the CUC in-house accountants may have gained some knowledge of accounting and GAAP from on-the-job training, see Opp'n at 17 (citing pre-amendment cases), does not change the analysis. Under amended Rule 701, <u>any</u> testimony based on specialized knowledge, education, or training is expert testimony, even if the source of that specialized knowledge, education, or training is experience on the job. See, e.g., Garcia, 413 F.3d at 216 ("We hold that the foundation requirements of Rule 701 do not permit a law enforcement agent to testify to an opinion so based and formed if the agent's reasoning process depended, in whole or in part, on his specialized training and experience."); Black v. Consol. Freightways Corp., 219

---

[5] Moreover, the government wants Mr. Heckler to testify (over defense objections) to these issues as an expert witness. The government cannot have it both ways. Either this is expert testimony or it is not. As set forth above, it is expert testimony. However, if it is not expert testimony, that is a further reason, in addition to those set forth in Forbes Third Trial Motion <i>In Limine</i> No. 5, why Mr. Heckler should not be testifying to the matters as an expert.

F. Supp. 2d 243, 249 & n.6 (E.D.N.Y. 2002). For example, a treating physician's views about a patient's prognosis are expert opinions under amended Rule 701, irrespective of the fact that the physician's views were formed during the ordinary course of his or her work. See Brandon v. Vill. of Maywood, 179 F. Supp. 2d 847, 860 (N.D. Ill. 2001).

The advisory committee's note to the 2000 amendments does not advance the government's position either. The government quotes snippets of one segment from the note, but a complete quotation of that segment illustrates why the note is not helpful to the government.

> For example, most courts have permitted the owner or officer of a business to testify to the value or projected profits of a business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business. The amendment does not purport to change this analysis.

Fed. R. Evid. 701 advisory committee's note to 2000 Amendments (emphasis added & citation omitted). The witnesses here are not business owners or officers testifying to lost profits; they are accountants opining on the legitimacy of accounting practices and the accuracy of GAAP financial statements. Furthermore, lost profit calculations do not depend on specialized training, but can be determined by straightforward, common-sense calculations. See, e.g., Securitron Magnalock Corp. v. Schnabolk, 65 F.3d 256, 265 (2d Cir. 1995) (business owner calculated lost profits based on decrease in sales). The same cannot be said about financial statements that must be prepared in accordance with GAAP.

The government has failed to satisfy the third foundation requirement of Rule 701. Accordingly, the Court should preclude lay witnesses from opining on the legitimacy of accounting practices employed at CUC and the accuracy of CUC's financial statements.[6]

## CONCLUSION

For the reasons set forth above and in the opening memorandum, Mr. Forbes respectfully requests that the Court grant this motion.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

---

[6] Contrary to the government's suggestion, this motion is not "much ado about nothing," Opp'n at 4, or the government would not be so insistent on fighting for the admission of the improper testimony. The government has attempted to use its improper quantifications of the alleged fraud to suggest that Mr. Forbes must have had knowledge of the alleged wrongdoing, the core issue in the case. Similarly, it has relied improperly on its "two-CFO" theory (that the alleged fraud purportedly began in the late 1980s under Mr. Bell) as purported evidence of Mr. Forbes' knowledge. Yet the allegation of pre-1995 fraud is <u>unsupported by any expert testimony</u>. It is "supported" only by improper opinion testimony from lay witnesses.

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Reply Memorandum in Support of Motion of Defendant Walter A. Forbes to Preclude the Government from Presenting Improper Lay Opinion Testimony at Trial (Forbes Third Trial Motion *In Limine* No. 10) to be filed electronically and to be served on June 15, 2006 to the following via e-mail:

> Norman Gross, Esq. (norman.gross@usdoj.gov)
> Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
> Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

_____
Barry S. Simon