UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | No. 3:02CR264 (AHN) |
| ) | |
| WALTER A. FORBES ) | June 15, 2006 |
| ) | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF
WALTER A. FORBES FOR PERMISSION TO EXAMINE MR.
CORIGLIANO ON POLYGRAPH EXAMINATIONS
(Forbes Third Trial Motion *In Limine* No. 19)**

WILLIAMS & CONNOLLY LLP
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

COWDERY, ECKER & MURPHY, L.L.C.
James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

*Attorneys for Walter A. Forbes*

Oral Argument Requested

The government, in its opposition brief, devotes most of its attention to addressing issues that are not raised, in an apparent hope to avoid the difficult questions that it cannot answer. This reply brief will return the focus to those questions.[1]

The government asserts, incorrectly, that Mr. Forbes seeks "broad-ranging cross of Corigliano regarding the polygraphs." Opp'n at 9; see Opp'n at 11 ("wide-ranging"). Mr. Forbes seeks to examine Mr. Corigliano about two issues—his use of representations about the supposed polygraph results to mislead the government about his culpability, and his prior statements to the polygraphers (including whether he lied).

Neither line of examination depends upon the actual polygraph results or their substantive correctness. Mr. Forbes need not ask what the results were to establish facts that are admissible and probative: (1) Mr. Corigliano, through counsel, used the alleged polygraph results (irrespective of what the results actually were) to mislead the government about his culpability; and (2) Mr. Corigliano lied to a polygrapher about his involvement in the alleged fraud. Therefore, cases addressing the admissibility of polygraph results for their substantive correctness, see Opp'n at 3-4, 6 (citing United States v. Scheffer, 523 U.S. 303 (1998); United States v. MacEntee, 713 F. Supp. 829 (E.D. Pa. 1989); United States v. Rea, 958 F.2d 1206 (2d Cir. 1992); United States v. Messina, 131 F.3d 36 (2d Cir. 1997); United States v. Kwong, 69 F.3d 663 (2d Cir. 1995); United States v. Thomas, 167 F.3d 299 (6th Cir. 1999); United States v. Williams, 95 F.3d 723 (8th Cir. 1996); United States v. Ferris, 719 F.2d 1405 (9th Cir. 1983); United States v. Johnson, 904 F. Supp. 1303 (M.D. Ala. 1995)), are not relevant to the issues presented here.

---

[1] This motion is not governed by the standards for reconsideration or law of the case. See Reply Supp. Forbes Third Trial Mot. *In Limine* No. 9 (filed June 15, 2006).

Both lines of cross-examination are permitted by the Federal Rules of Evidence under Rules 608(b) and 613(a). The government does not deny that the requirements of those rules are satisfied, but instead raises other objections that are without merit.[2]

      1.    <u>Rule 608(b) permits Mr. Forbes to examine Mr. Corigliano about his use of representations about the alleged polygraph results to mislead the government.</u> The government does not deny that such conduct is probative of Mr. Corigliano's character for untruthfulness under Rule 608(b), which it concedes "permits impeachment by reference to specific instances of conduct probative of truthfulness." Opp'n at 11. Instead, the government makes a series of insubstantial Rule 403 arguments.

The probative value of this evidence is not substantially outweighed by the danger that the jury might be misled about the reliability of polygraph exams. Opp'n at 12. This argument is a red herring. The evidence that Mr. Forbes seeks to elicit is what the attorneys represented to the government about the alleged results, <u>not what the results in fact were</u>. Because the jury will not know whether the results showed deception, no deception or were inconclusive, the reliability of the results simply is not an issue.

Without the results, the government argues, the jury might speculate that Mr. Corigliano is such a "skilled liar" that he passed the examinations and fooled the polygraphers, Opp'n at 13, or "the jury might infer that, because Corigliano submitted to a polygraph examination and told the Government that he had done so, but later pleaded

---

[2] The other polygraph cases cited by the government do not involve situations where the evidence is otherwise admissible under Rules 608(b) and 613(a). <u>See, e.g.</u>, Opp'n at 5-6 (citing <u>United States v. Lopez</u>, 885 F.2d 1428 (9th Cir. 1989); <u>United States v. Brown</u>, 289 F.3d 989 (7th Cir. 2002); <u>United States v. Wills</u>, 88 F.3d 704 (9th Cir. 1996); <u>United States v. Bagsby</u>, 489 F.2d 725 (9th Cir. 1973) (per curiam)).

guilty in this case, Corigliano had 'flunked' the polygraph examination and had pleaded guilty because of his poor performance on the polygraph, rather than because he was honestly admitting his guilt." Opp'n at 13-14.[3] These hypothetical risks do not substantially outweigh the probative value of the evidence.[4]

To avoid any potential confusion, the Court can and should issue an appropriate limiting instruction explaining the limited purpose for the impeachment evidence and instructing the jury not to speculate about the results of the examinations.[5]

This line of cross-examination will not delve into allegedly privileged communications, see Opp'n at 16, but will involve questions regarding the fact that Mr.

---

[3] Given Mr. Corigliano's testimony in the prior trials, testimony from other witnesses, and Mr. Corigliano's likely testimony in this trial, there is no risk that the jury will infer that Mr. Corigliano is factually innocent, but was duped into pleading guilty by the results of a polygraph examination.

[4] Two cases cited by the government in support of its Rule 403 argument, Opp'n at 13-14, do not support precluding a criminal defendant from examining a key cooperating witness about a matter that is highly probative of character for untruthfulness and is otherwise admissible under Rule 608(b). Neither case involved polygraph evidence that was otherwise admissible under Rule 608(b), and in United States v. Bowen, 857 F.2d 1337, 1341-42 (9th Cir. 1988), the polygraph evidence was offered against the defendant. Moreover, to the extent that United States v. Robbins, 197 F.3d 829, 843-44 (7th Cir. 1999), held that the government may introduce a plea agreement in which the witness agrees to submit to a polygraph exam, but that a defendant is not permitted to examine the witness to show that he or she did not take the exam, the case was incorrectly decided. See United States v. Lynn, 856 F.2d 430 (1st Cir. 1988).

[5] Mr. Forbes agrees that the parties should not speculate about the true facts either. (The government continues to suggest that "the" polygrapher is dead, see Opp'n at 1 n.1, and to make arguments based on the supposed fact that "the" polygrapher is deceased, see, e.g., Opp'n at 13, but we do not know whether there was only one polygrapher who conducted both polygraph exams.) To avoid such speculation, the government should obtain the information from Mr. Corigliano and disclose it. Although the government states that it does not have additional information about the polygraph examinations, see Opp'n at 1 n.1, it does not deny that it could obtain the information simply by asking Mr. Corigliano. See Forbes Mot. Examine Mr. Corigliano on Polygraph Examinations, Ex. 2 at 2 (plea agreement requiring Mr. Corigliano to disclose all information requested by the government). Apparently, the government is not interested in learning the true facts.

Corigliano took a polygraph examination and the fact that his attorneys told the government that he had done well. Both facts were disclosed not only to the government, but to Mr. Forbes as well. Even the cases cited by the government recognize the fundamental principle that <u>matters actually disclosed are not privileged</u>. See Opp'n at 17 n.15. In addition, as discussed below, the fact that Mr. Corigliano was aware that his lawyers would disclose the alleged polygraph results is not privileged.

    2. <u>Rule 613(a) permits Mr. Forbes to examine Mr. Corigliano about his prior statements to the polygraphers and Rule 608(b) permits Mr. Forbes to examine Mr. Corigliano about whether he lied to the polygraphers</u>. The government admits that Rule 613(a) "permits cross-examination by reference to a prior inconsistent statement," Opp'n at 9, and it cites no polygraph statement exception to Rule 613(a). Nor does the government dispute that a prior false statement by Mr. Corigliano about the subject matter of this case is probative of his character for untruthfulness and is a proper subject of cross-examination under Rule 608(b).

    Instead, the government makes the same Rule 403 arguments addressed above. The probative value of the evidence is not substantially outweighed by the danger of misleading the jury, and any possible confusion can be alleviated by an appropriate limiting instruction. Furthermore, evidence that Mr. Corigliano lied to people on his own "team" (one or more polygraphers apparently retained by his attorneys) is not unduly cumulative of evidence that he lied to his then-litigation adversaries, the Cendant Board of Directors and the government. See Opp'n at 10.[6]

---

[6] The government mis-cites <u>United States v. Zaccaria</u>, 240 F.3d 75 (1st Cir. 2001), as a case in which the court precluded cross-examination of a "prosecution witness regarding <u>his</u> failure to take a polygraph examination." Opp'n at 10 (emphasis added).

- 4 -

The government's privilege argument is similarly without merit. Although the questions asked by the polygraphers and the answers provided by Mr. Corigliano purportedly have not been disclosed to the government, any alleged privilege that might attach to those communications is vitiated by the crime-fraud exception. The government does not deny that (i) Mr. Corigliano knew that he had engaged in fraudulent accounting practices; (ii) he took a polygraph exam, knowing that favorable results would be misleading; and (iii) his attorneys then told the government that he had not engaged in fraudulent accounting practices and that he had done well on a polygraph examination. According to the government, despite these uncontested facts, the crime-fraud exception does not apply because Mr. Forbes failed to establish probable cause that Mr. Corigliano authorized the disclosure. Opp'n at 19-20.

Probable cause exists to believe that Mr. Corigliano authorized the disclosure about the polygraph and thereby intended to mislead the government about his culpability. As the government concedes, "Corigliano's attorney represented to Judge Thompson that any communication that Corigliano had regarding the polygraph examinations were made in the context of obtaining legal advice, and were intended to be privileged." Opp'n at 16. If the communications were intended to be privileged, Mr. Corigliano's attorneys would have been ethically precluded from disclosing the information without Mr. Corigliano's consent. See DR 4-101 (prohibiting disclosure of confidences or secrets without client consent). Mr. Corigliano's attorneys are

---

In that case, the defendant wanted to engage in a fishing expedition by asking the case agent "whether polygraphs were used as a tool in the course of this investigation, to whom they were offered, which witnesses agreed to take them, and which did not," with no basis to suggest that the government had engaged in selective polygraphy. 240 F.3d at 80.

experienced criminal defense counsel and it is unlikely that they told the government about a polygraph examination without their client's consent.

There is additional strong circumstantial evidence that Mr. Corigliano knew what his attorneys were doing: (1) he retained the attorneys; (2) they were making representations on his behalf; (3) to federal prosecutors; (4) consistent with his false denials of wrongdoing (Mr. Corigliano directly "lied about his involvement in the charged fraud" "to Government officials," Opp'n at 7); (5) to further his interest; (6) in a matter of extreme importance to Mr. Corigliano; (7) about an extraordinary device, a polygraph examination. Indeed, Mr. Corigliano would have had no good reason to take the polygraph examination if allegedly favorable results were not going to be disclosed.

The government notes Mr. Corigliano's testimony that his lawyers did not report back to him what they had discussed with the government. Opp'n at 20.[7] But Mr. Corigliano was not asked if he knew in advance that his attorneys were going to refer to the polygraph because there was a pending motion in limine on polygraph issues. Although Mr. Corigliano denied knowing what his attorneys were doing on his behalf in other respects, it is likely that he would recall the polygraph issue. Evidence that he knew what his attorneys were doing with respect to the polygraph would put the lie to his denials about knowing that his attorneys were making a false innocence proffer on his behalf.

At the very least, there has been a sufficient crime/fraud showing to have this Court conduct an in camera examination of the relevant documents, Mr. Corigliano, and his attorneys to determine whether Mr. Corigliano authorized his attorneys to

---

[7]   At the pages cited by the government, see Tr. (7/15/04) at 7698-99, Mr. Corigliano testified that his attorneys "advised" him instead.

disclose the results of the polygraph examination. See United States v. Zolin, 491 U.S. 554 (1989).

        3.    <u>Complete foreclosure of cross-examination would violate the Confrontation Clause</u>. Because these are unexplored and probative areas of cross-examination, complete foreclosure of cross-examination would violate the Confrontation Clause, as a case cited by the government recognizes. See Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) ("By thus cutting off all questioning about an event that the State conceded had taken place and that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony, the court's ruling violated respondent's rights secured by the Confrontation Clause.") (cited at Opp'n at 5). The government's reliance on King v. Trippett, 192 F.3d 517 (6th Cir. 1999), see Opp'n at 6 n.7, is misplaced. In that case, the defendant sought to impeach the witness about the fact that he had failed polygraph examinations. Here, Mr. Forbes does not seek to examine Mr. Corigliano about the results of his examinations or to argue the substantive correctness of the examinations. He seeks to offer evidence that is unrelated to the substantive correctness of the results and is otherwise admissible under the Federal Rules of Evidence.[8]

Under these circumstances, where a criminal defendant seeks to cross-examine a key witness concerning a polygraph examination for permissible purposes unrelated to the substantive correctness of the results, courts must grant considerable latitude because of the defendant's Sixth Amendment right of confrontation. See United

---

[8] The government cites United States v. Brown, 289 F.3d 989, 993-94 (7th Cir. 2002), a case precluding cross-examination regarding a failure to appear for a voice stress test, in support of its Confrontation Clause argument, see Opp'n at 6, but that case does not address the Confrontation Clause.

States v. Lynn, 856 F.2d 430 (1st Cir. 1988). The government argues that Lynn is distinguishable because the government in that case opened the door by introducing a plea agreement containing a polygraph provision. Opp'n at 7. But the First Circuit did not base its analysis solely on the government's introduction of the plea agreement. See 856 F.2d at 433 ("Finally, we cannot ignore the government's tactic of drafting the plea agreement with the polygraph requirement clause . . . ." (emphasis added)). Rather, the court based its analysis primarily on the complete foreclosure of an otherwise permissible line of cross-examination.

## CONCLUSION

Accordingly, Mr. Forbes respectfully requests that the Court enter an order permitting him to examine Mr. Corigliano about (i) his use of the alleged polygraph results to mislead the government under Fed. R. Evid. 608(b); and (ii) his prior statements to the polygraph examiners under Fed. R. Evid. 608(b) and 613(a).[9]

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (ct17115)
Barry S. Simon (ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

---

[9] Mr. Forbes reserves the right to examine Mr. Corigliano on the selective use of the examination results if the results are ultimately revealed to the defense and they show that Mr. Corigliano engaged in "cherry-picking" by disclosing the results of a "favorable" polygraph exam and withholding the results of an "unfavorable" one.

- and -

James T. Cowdery (ct05103)
Thomas J. Murphy (ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Reply Memorandum in Support of Motion of Defendant Walter A. Forbes for Permission to Examine Mr. Corigliano on Polygraph Examinations (Forbes Third Trial Motion *In Limine* No. 19) to be filed electronically and to be served on June 15, 2006 to the following via e-mail:

        Norman Gross, Esq. (norman.gross@usdoj.gov)
        Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
        Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

                                                            Barry S. Simon