UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA ) ) ) v. ) ) ) WALTER A. FORBES ) ) ) | No. 3:02CR264 (AHN)  June 15, 2006 |

REPLY MEMORANDUM IN SUPPORT OF
MOTION OF DEFENDANT WALTER A. FORBES
TO PRECLUDE THE ADMISSION OF GOVERNMENT EXHIBIT 616
(<u>Forbes Third Trial Motion In Limine No. 20</u>)

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon  (Bar No. ct24159)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Oral Argument Requested

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this reply memorandum in support of his motion in limine to preclude the admission of Government Exhibit ("GX") 616.[1]

## I. THE COURT SHOULD EXCLUDE GX 616 PURSUANT TO THE RULE OF COMPLETENESS.

The government seeks to offer GX 616 as "direct evidence of [Mr.] Forbes' [purported] involvement in the fraud." Opp. at 13. But Mr. Forbes is not the author of GX 616; nor did Mr. Forbes review the document before it was sent to Henry Silverman. Tr. (11/15/05) at 2935-36. It would be fundamentally unfair to Mr. Forbes for the government to introduce GX 616 into evidence against Mr. Forbes when the document is incomplete and misleading.

The government does not dispute that two-thirds of the document is missing, namely the two organizational charts that were appended to the original document. See Ex. 1 to Docket No. 2270 ("Attached are two org charts"). Instead, the government asserts that "the organizational charts are neither explanatory of nor relevant to the matter the memorandum will be offered to prove." Opp. at 5. The government's contention is erroneous for several reasons.

First, while the government asserts that "the organizational charts have little or nothing to do with the request to keep Pember 'in the accounting loop,'" Opp. at 5, the record evidence presented by the government is directly to the contrary. The government affirmatively presented evidence in its case-in-chief that Anne Pember told Cosmo Corigliano in mid-October 1997 (around Columbus Day) that she wanted to leave CUC because she had reviewed proposed organizational charts that required her to report to HFS chief accountant Scott Forbes -- an individual with whom Ms. Pember did not get along. See Tr. (7/13/04) at 7289-90 (Corigliano)

---

[1] This motion is not governed by the standards for reconsideration or law of the case. See Reply Supp. Forbes Third Trial Mot. In Limine No. 9 (filed June 15, 2006).

("She told me. She said, I've had enough. She saw the proposed org charts from HFS before I had seen them, saw them having her report to Mr. [Scott] Forbes. She said, I can't do it, I want out, I want to negotiate a severance deal.");[2] see also Tr. (5/27/04) at 2604-05 (Pember) ("The Friday of Columbus Day weekend, Mr. Corigliano came to tell me that the plan was that once the companies merged, that I would report to Mr. Scott Forbes, who was responsible for financial reporting at HFS. . . . I was extremely unhappy about that outcome. . . . Mr. Scott Forbes and I did not get along personally nor professionally and I was not looking forward to the idea of working for him.").[3]

According to the government's evidence, GX 616, which is dated October 21, 1997, was written shortly after Ms. Pember reviewed the proposed organizational charts from HFS and expressed her unhappiness to Mr. Corigliano. Indeed, at the 2005 trial, the government elicited the following testimony from Mr. Corigliano surrounding the government's introduction of GX 616:

---

[2]   Mr. Corigliano is a serial liar who has testified falsely about Mr. Forbes in two trials. Mr. Forbes cites Mr. Corigliano's testimony only to show that, according to the government's own theory of the case and the testimony elicited by the government, the organizational charts that were attached to the original of GX 616 are directly relevant to Ms. Pember and the issues discussed in the text of GX 616.

[3]   At the time Judge Thompson orally denied Mr. Forbes' original motion in limine on this subject, on May 25, 2004, Tr. (5/24/04) at 1989, there had not yet been any testimony about the proposed organizational charts from HFS that concerned Ms. Pember and that preceded GX 616. Both Ms. Pember and Mr. Corigliano testified after May 25, 2004. At the time Judge Thompson issued his written ruling, on May 28, 2004, see Docket No. 809, Mr. Corigliano had not yet testified. Mr. Corigliano's testimony made express reference to HFS's proposed organizational charts as the precipitating event that caused Ms. Pember to want to leave CUC. Tr. (7/13/04) at 7289-90.

> A. Anne called me on a Friday before Columbus Day weekend and was upset because she had seen a <u>proposed organization chart</u> which had Anne reporting to Scott Forbes. She was upset about that.
>
> Q. What did you tell Anne Pember?
>
> A. I told Anne that -- that I hadn't seen the organization chart yet; that it certainly wasn't final and we would talk to Kirk and to Walter and see if -- try to fix it.
>
> \* \* \* \*
>
> A. . . . . So that conversation ended, and after that I went in and talked to Kirk Shelton.
>
> Q. Where did you speak to Kirk Shelton?
>
> A. In his office.
>
> Q. What did you say to Kirk Shelton?
>
> A. I said Anne is upset because she saw an <u>org chart</u> that has her reporting to Scott Forbes. She wants to leave.

Tr. (10/31/05) at 1383-84 (emphasis added). Following this testimony, the government offered

GX 616 into evidence and elicited the following testimony from Mr. Corigliano:

> Q. Mr. Corigliano, would you please turn to Government's Exhibit 616 in your binder. Do you recognize it?
>
> A. Yes, I do.
>
> Q. What is it?
>
> A. It's a memo from Kirk Shelton to Henry Silverman <u>about organization charts</u>.
>
> \* \* \* \*
>
> Q. Mr. Corigliano, does this memorandum relate to your conversation with Kirk Shelton around Columbus Day?
>
> A. Yes, it does.

3

Q. How so?

A. <u>It addresses the fact that Anne did not want to report to Scott Forbes</u>.

Tr. (10/31/05) at 1385, 1387 (emphasis added). Thus, according to the government's own theory of the case, both the timing of GX 616 and the context in which it was written indicate that the organizational charts attached to GX 616 address Ms. Pember's proposed role in the merged company and were a direct response to the proposed organizational charts that displeased Ms. Pember.

Second, while the government asserts that information concerning Ms. Pember's proposed role in the merged company is "superfluous information," Opp. at 6, Ms. Pember's proposed role after the merger is addressed in GX 616 and is <u>the very reason the government seeks to introduce GX 616 into evidence</u>. The omission of two organizational charts that likely address that precise issue is hardly "superfluous"; to the contrary, it is critical to an understanding of the text of GX 616, and "necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, [and] to ensure fair and impartial understanding of the admitted portion." <u>United States v. Jackson</u>, 180 F.3d 55, 73 (2d Cir. 1999) (Opp. at 4).

Third, the language of GX 616 is not clear. The document makes reference to "keeping Anne Pember in the accounting loop for the old CUC businesses," Ex. 1 to Docket No. 2270, but it does not indicate precisely what Anne Pember's proposed job following the CUC/HFS merger would be. The omitted organizational charts are necessary to understand what Ms. Pember's suggested role after the merger was to be, as opposed to the government's characterization of her proposed role. While the government asserts that keeping Ms. Pember was an effort to "conceal the fraud from people outside the conspiracy," Opp. at 12, GX 616 does not describe the

4

proposed relationship of the CUC accounting department to the HFS accounting department following the merger. This information, which likely was reflected in the attached organizational charts, is critical to an understanding of Anne Pember's proposed role after the merger and may have refuted the government's claim that retaining Ms. Pember meant excluding HFS accounting personnel from access to CUC's financial information after the merger. Without the omitted organizational charts, GX 616 is incomplete and misleading and should be excluded under Fed. R. Evid. 106.[4]

## II. THE COURT SHOULD EXCLUDE GX 616 PURSUANT TO FED. R. EVID. 1001 AND 1003.

The Court also should exclude GX 616 pursuant to Fed. R. Evid. 1001(4) and 1003 because it is incomplete and therefore not an accurate reproduction of the original document. See R.R. Mgmt. Co. v. CFS La. Midstream Co., 428 F.3d 214, 220 (5th Cir. 2005) (redacted copy of document not admissible as a duplicate under Rule 1001(4)). The case on which the government relies, Addison v. United States, 317 F.2d 808 (5th Cir. 1963) (Opp. at 7), involved an original tape recording, not a duplicate, id. at 815, and does not discuss Rule 1001(4).

---

[4] The cases cited by the government are inapposite. In United States v. Jackson, 180 F.3d 55 (2d Cir. 1999) (Opp. at 4), the defendant sought to introduce an entire 42-minute tape recording after the government introduced a 90-second excerpt for a limited purpose -- to show that the defendant was on notice "of the unlawfulness of the extortion scheme." Id. at 73. The remainder of the tape was "neither explanatory of nor relevant to the admitted passages." Id. Here, as discussed above, the omitted organizational charts are directly relevant to the memorandum portion of GX 616 that the government seeks to admit. In United States v. Marin, 669 F.2d 73 (2d Cir. 1982) (Opp. at 4), the defendant sought to offer a portion of his post-arrest statement. Id. at 84. The Court held that the redacted portion of the statement addressed an entirely unrelated issue. Id. at 85. Here, in sharp contrast, the organizational charts relate to the same issue discussed in the text of GX 616 -- Anne Pember's proposed role in the newly-merged company. In United States v. Nahrgang, 19 Cust. Ct. 333 (2d Div. App. Term 1947) (Opp. at 5), the record did not reflect the relevance, if any, of the omitted exhibits. Id. at 334. Here, the record made by the government establishes the relevance of the omitted organizational charts.

5

Even assuming arguendo that GX 616 qualifies as a "duplicate" of the original document, GX 616 is not admissible under Fed. R. Evid. 1003 because "in the circumstances it would be unfair to admit the duplicate in lieu of the original." R.R. Mgmt., 428 F.3d at 220 (quotations omitted).[5] The government's contention that GX 616 is admissible under Rule 1003 boils down to its claim that the omitted organizational charts are "not critical -- or even relevant -- to the matter for which the document is being offered." Opp. at 10 n.6. As demonstrated above and in Mr. Forbes' opening memorandum, that simply is not the case. The omitted organizational charts were an integral part of the document and are necessary to explain and place in context the text in the document. While the government blithely labels the attachments irrelevant, it ignores the evidence it introduced in two trials that demonstrates that precisely the opposite is true.

The government asserts that it wants to offer GX 616 to demonstrate that "Forbes [purportedly] wanted to keep Pember 'in the accounting loop' in furtherance of the fraud." Opp. at 10. That argument assumes that the purpose of keeping Anne Pember in the accounting loop was to exclude HFS accounting personnel from access to CUC's financial information and thereby "conceal the fraud from people outside the conspiracy." Opp. at 12.[6] The organizational charts appended to the original of GX 616 may well have refuted the government's claim by

---

[5] The government's brief seeks to defend the authenticity of GX 616, see Opp. at 7-9, an issue not raised by Mr. Forbes. Since Mr. Forbes did not challenge GX 616 on this ground, see Docket No. 2270 at 3, it is not surprising that Mr. Forbes "has failed to raise a genuine issue, through the admission of admissible evidence or otherwise, regarding the authenticity of the memorandum." Opp. at 9.

[6] There were entirely legitimate reasons for seeking to retain Ms. Pember, including a concern that HFS was treating the merger as a takeover rather than a merger of equals and that Ms. Pember's reassignment or resignation would lead to the departure of a large number of CUC employees unhappy with the way in which they were treated by HFS. E.g., Tr. (11/15/05) at 3008.

6

demonstrating that keeping Ms. Pember in the accounting loop did not mean excluding HFS personnel from access to CUC's financial information. In the absence of the organizational charts, it is fundamentally unfair for the government to offer GX 616 into evidence as purported evidence of Mr. Forbes' alleged effort to conceal the fraud from HFS, or to ask the jury to draw that inference from the text of GX 616.

There is no basis for the government's contention that the omitted organizational charts are "in no way necessary or useful to the defense." Opp. at 10. The government has apparently never seen the organizational charts that were attached to the original document, and it has no way of knowing whether those charts would be useful to Mr. Forbes' defense. Nor can the government offer "any guarantee" that GX 616 is an "accurate reproduction[] of all that may be relevant." Toho Bussan Kaisha, Ltd. v. American President Lines, Ltd., 265 F.2d 418, 424 (2d Cir. 1959) (affirming exclusion of purported duplicate). Under these circumstances, it would be fundamentally unfair to permit the government to offer into evidence a document that Mr. Forbes did not write, and that is two-thirds incomplete, as purported evidence of wrongdoing by Mr. Forbes.

### III.   THE COURT SHOULD EXCLUDE GX 616 UNDER FED. R. EVID. 403.

The Court also should exclude GX 616 pursuant to Fed. R. Evid. 403. The government's defense of the claimed relevance of GX 616 is based on its selective interpretation of the document, which may be inconsistent with the organizational charts omitted from the document. Without the organizational charts, which were an integral part of the document, there is a serious risk that the admission of the document, and the government's characterization of the document, would both mislead and confuse the jury.

In weighing the limited probative value of this evidence against its prejudicial effect, the Court should consider the other evidence available to the government concerning whatever actions Mr. Forbes took with respect to Ms. Pember.[7] Mr. Forbes has <u>acknowledged</u> that he spoke with Mr. Silverman concerning Ms. Pember in the fall of 1997 and that he signed Ms. Pember's November 1997 employment agreement and initialed her 1998 severance agreement. E.g., Tr. (11/15/05) at 2942-43, 2947-48, 3007-08. Given this evidence, the probative value of GX 616, a document that Mr. Forbes did not write, is slight. Mr. Forbes would, however, be unfairly prejudiced by the government's characterization of the memorandum, which presumes that the retention of Ms. Pember was an effort to conceal the fraud from HFS. Opp. at 12. In the absence of the proposed organizational charts attached to the document, it would be improper and misleading for the government to ask the jury to draw such an inference from GX 616. The admission of this incomplete document also would improperly invite the jury to speculate about the contents of the omitted portions of the document.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Docket No. 2270, the Court should exclude GX 616 at Mr. Forbes' third trial.

---

[7] See <u>Old Chief v. United States</u>, 519 U.S. 172, 183 (1997) ("[A] judge applying Rule 403 could reasonably apply some discount to the probative value of an item of evidence when faced with less risky alternative proof going to the same point."); <u>id.</u> at 184-85 (court may evaluate "evidentiary alternatives" to challenged evidence when performing Rule 403 balancing); <u>United States v. Awadallah</u>, 436 F.3d 125, 132 (2d Cir. 2006) (same); Fed. R. Evid. 403, advisory committee notes ("The availability of other means of proof may also be an appropriate factor" to consider in the Rule 403 analysis).

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
    Brendan V. Sullivan, Jr. (Bar No. ct17115)
    Barry S. Simon  (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Reply Memorandum in Support of Motion of Defendant Walter A. Forbes to Preclude the Admission of Government Exhibit 616 (Forbes Third Trial Motion In Limine No. 20) to be filed electronically and to be served on June 15, 2006 to the following via e-mail:

Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

_____
Barry S. Simon