UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | No. 3:02CR264 (AHN) |
| v. | ) ) | |
| WALTER A. FORBES | ) ) ) ) | June 15, 2006 |

REPLY MEMORANDUM IN SUPPORT OF
MOTION OF DEFENDANT WALTER A. FORBES TO
(1) PRECLUDE THE GOVERNMENT FROM REFERRING TO
ROBERT TUCKER'S HANDWRITTEN NOTES AS BOARD "MINUTES"
AND (2) PRECLUDE THE GOVERNMENT FROM PRESENTING ANY
EVIDENCE, CROSS-EXAMINATION OR ARGUMENT CONCERNING
THE DIFFERENCES BETWEEN GX 5, GX 453, & GX 77
(Forbes Third Trial Motion In Limine No. 23)

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon  (Bar No. ct24159)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Oral Argument Requested

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this reply memorandum in support of his motion in limine (1) to preclude the government from referring to Robert Tucker's handwritten notes of CUC Board meetings as "minutes" or "draft minutes" and (2) to preclude the government from presenting any evidence, cross-examination, or argument concerning the differences between or among GX 5, GX 453, and/or GX 77.

The government concedes the first portion of Mr. Forbes' motion.  See Opp. at 5, 6. Accordingly, this reply memorandum is limited to whether the Court should preclude the government from presenting any evidence or argument concerning the differences between or among GX 5, GX 453, and/or GX 77.

## ARGUMENT

## I.     THE GOVERNMENT'S DISCUSSION OF THE PROCEDURAL HISTORY OF THIS ISSUE IS ERRONEOUS.

The government's contention (without any record citation) that Judge Thompson admitted GX 5, GX 453, and GX 77 at the 2004 trial "over Forbes' objection," Opp. at 6, is erroneous.  Contrary to the government's claim, Mr. Forbes did not object to the admission of GX 5.  See Tr. (6/21/04) at 5356-57.  Nor did Mr. Forbes object to the admission of GX 77.  See id. at 5367.  Mr. Forbes also did not object to the admission of GX 453, see Tr. (9/20/04) at 12,712, when it was offered through a proper witness.

While the government briefly mentioned GX 5 in summation at the 2004 trial, Tr. (10/18/04) at 14,916, it did not argue that the draft Board minutes were edited at Mr. Forbes' behest for a nefarious purpose.  Indeed, prior to summations in the 2004 trial, Judge Thompson cautioned the government against making such an argument, and informed the government that a curative instruction might be warranted if the government made such an argument:

there was no nexus established in terms of the defendants[] in this case and the changes to the minutes that I can recall. And I think that limits the types of arguments that can be made. And the jury should not be invited to speculate. I mean, I'll be instructing them they cannot speculate.

So depending what argument is being made, it may become a situation where I conclude it's appropriate to give an instruction.

* * * *

I'll ask government counsel to give that some hard thought. Because the remedy would be to include something in the charge.

Tr. (10/15/04) at 14,801, 14,802. Thus, Judge Thompson did not countenance the government's claim that the draft Board minutes were edited because Mr. Forbes purportedly sought to conceal damaging information concerning the Ideon merger.

Following the 2004 trial, Mr. Forbes filed a motion in limine similar to the instant motion. See Docket Nos. 1684-85. The government misleadingly asserts that "Judge Thompson denied [Mr.] Forbes' prior request to exclude any evidence, cross-examination, or argument regarding GX 5, GX 453, and GX 77." Opp. at 5. In fact, Judge Thompson denied the motion without prejudice on the ground that "the Court's analysis of any issues relating to these documents should be informed by the state of the record as of the time the issue presents itself." Docket No. 1952 at 1. The government did not seek to present any evidence on this subject at the 2005 trial, rendering Mr. Forbes' motion moot.

## II.    THE DIFFERENCES BETWEEN OR AMONG GX 5, GX 453, AND GX 77 ARE NOT PROBATIVE OF ANY OFFENSE CHARGED IN THIS CASE.

The government again concedes that the two sentences concerning reserves in Mr. Tucker's draft minutes of the April 9, 1997 CUC board meeting (GX 453, Ex. 3 to Docket No. 2312) that were omitted from the final minutes (GX 77, Ex. 1 to Docket No. 2312) were not a

"red flag" that would reveal an accounting fraud. <u>See</u> Opp. at 8. The government also concedes

that the two people involved in preparing and editing the board minutes, attorneys Robert Tucker

and Amy Lipton, are not alleged co-conspirators. <u>Id.</u> at 9. In addition, the government concedes

that Mr. Tucker sent the draft minutes containing the two sentences in question to CUC's outside

auditors at Ernst & Young. <u>Id.</u> The government previously conceded that this fact "shows that

Tucker was not then attempting to conceal the fact that the issue had been raised." Docket No.

1752 at 5 n.1.

      Despite these concessions, the government continues to assert that the deletion of the two

sentences from the draft Board minutes is somehow probative because Mr. Davidson purportedly

"raised questions about the large size of the Ideon merger reserve," Opp. at 3 at the meeting, and

"[t]he conspirators who were engaged in [alleged misuse of the Ideon merger reserve] would not

want to draw any added attention to Davidson's embarrassing questions during the Board

meeting about why the Ideon merger reserve was so large," Opp. at 8. This claim fails, however,

as a matter of both evidence and logic.

      First, contrary to the government's repeated assertion that Mr. Davidson "raised questions

about the large size of the Ideon merger reserve," Opp. at 3,[1] <u>Mr. Davidson testified that he raised</u>

<u>general questions about reserves and said nothing about the Ideon reserve specifically.</u>[2] The

---

[1]    See also, <u>e.g.</u>, Opp. at 8 ("Bob Davidson had raised questions about the Ideon merger reserve"); <u>id.</u> ("Davidson's embarrassing questions during the Board meeting about why the Ideon merger reserve was so large"); <u>id.</u> at 9 ("Davidson's inquiry about the Ideon merger reserve").

[2]    Mr. Davidson testified as follows: "So I said something to the effect that 'It's my understanding that in connection with the acquisitions which have been made and are being made, acquisition reserves are being established. They're not shown on the budgets and things that we have received, to my knowledge. And if this is the case and if they are in the hundreds of

3

government's contentions about the purported information deleted from the draft minutes, Opp. at 8, are equally erroneous.  The draft minutes said <u>nothing</u> about any purported "embarrassing questions," <u>id.</u>, by Mr. Davidson and made <u>no reference</u> to the size of the Ideon merger reserve. Nor did the draft minutes say anything about "the deliberate inflation of the Ideon merger reserve." Opp. at 11.  To the contrary, the draft minutes simply stated that "<u>Mr. Davidson asked certain questions concerning the reserves shown on the Company's financial statements and the Company's policies regarding reserves.  Mr. Corigliano and Mr. Shelton responded to those inquiries.</u>" GX 453 (Ex. 3 to Docket No. 2312) at 2 (emphasis added).

The actual language of the two sentences in the draft minutes was not embarrassing, did not refer to the size of the reserves, and was not "problematic," Opp. at 11.  It merely reflected that certain questions were asked and answered about reserves.  CUC disclosed in public SEC filings that it had reserves, including reserves for the Ideon, Sierra, and Davidson acquisitions; the fact that someone asked a question about a reserve is hardly a damaging fact that would

---

millions of dollars, they would probably be material to me as a director in terms of the income of the corporation.  Is that generally the case?'  And my best recollection is somebody gave a short, short answer of, Well, yes, we do it in the normal course, and there approximately such and such an amount, or  something like that.  But that really wasn't my question, that was the introduction. . . . And my real question was -- and I said, I think given the amount of [sic] these reserves, it would be appropriate  for all of the directors to understand how these reserves were created, for which acquisition, when were they created, what were they created for; how, what, when?  When were they used?  What were they used for?  And in what period?  In other words, a kind of a brief accounting for the reserves." Tr. (6/22/04) at 5564-65.

Mrs. Davidson, who was present at the meeting as well, testified as follows: "Q.  "If you could say, what did your husband ask and who did he ask it to?"  A.  "He asked it to -- he asked that the board receive some understanding, that the board should have some understanding of what the financial reserves -- what was happening with the financial reserves and all the acquisitions we were making.  The companies set aside and  reserved money in case, you know, products are returned like in the software business.  And he asked about what our policies were and could the board be informed on them." Tr. (6/21/04) at 5349-50.

4

require a conspiratorial cover-up.  Because the draft minutes made <u>no reference</u> to any purported

"embarrassing question" about "why the Ideon merger reserve was so large," Opp. at 8 (a

question Mr. Davidson did not ask, <u>see</u> n.1, <u>supra</u>), and contained no suggestion that the reserves

were problematic, the government's theory that the minutes had to be edited to hide that

purported information has no basis in fact.

      Second, the government's theory cannot be reconciled with the undisputed fact that Mr.

Tucker provided the draft minutes containing the two sentences in question to Ernst & Young on

April 21, 1997, twelve days after the April 9, 1997 board meeting.  <u>See</u> Tr. (9/20/04) at 12,656-

57; DX 1089 (Ex. 4 to Docket No. 2312).  Ernst & Young reviewed those draft minutes, <u>see</u> Ex.

4 to Docket No. 2312 at Bates No. 001256, discussed them with Mr. Tucker on April 28, 1997,

<u>see</u> <u>id.</u> at Bates No. 001253, and apparently found nothing suspicious about them.[3]  If the draft

minutes truly were "problematic," Opp. at 11, as the government claims, an alleged co-

conspirator of Mr. Forbes surely would have taken action during that twelve-day period to

withhold that information from the <u>company's outside independent auditors</u>.[4]  Despite the

government's effort to come up with an explanation for Mr. Tucker's disclosure of this

information to Ernst & Young that is consistent with its theory of wrongdoing, Opp. at 9, Mr.

Tucker's action is utterly inconsistent with the government's claim that the draft minutes

suggested that merger reserves at CUC were problematic or would have raised a concern about

---

[3]    There is no evidence that Ernst & Young raised any question or concern with respect to those two sentences.

[4]    The government does not dispute that the record of the 2004 and 2005 trials is replete with evidence about Mr. Corigliano's and his subordinates' extensive efforts to conceal from Ernst & Young any information that could reveal the fraud or raise a red flag.

merger reserves.[5]

Third, it is apparent from the government's opposition memorandum that the government does not know who, if anyone, purportedly directed Ms. Lipton to delete the two sentences or why the two sentences were deleted. See Opp. at 8 (asserting that "Lipton or someone else at CUC" wanted the information deleted); Opp. at 11 (asserting that it would be reasonable to conclude that "Forbes or someone acting at his behalf" sought to edit the minutes). The action could have been taken by Ms. Lipton (the General Counsel of CUC and the person who routinely reviewed draft Board minutes), who is not an alleged co-conspirator, for legitimate reasons having nothing to do with the government's theories.[6]

As Mr. Forbes pointed out in his opening memorandum (and the government simply ignores), a large component of the Ideon reserve consisted of funds set aside to resolve a series of pending lawsuits that had been filed against Ideon before it was acquired by CUC. See Docket No. 2312 at 8 n.3. It would certainly be understandable for Ms. Lipton, the General Counsel of the company, to be concerned about maintaining the confidentiality of the amount of the reserve set aside for resolving the Ideon litigation, because the disclosure of that information would give

---

[5]    While the government asserts that the jury was entitled to discredit Mr. Tucker's testimony that the draft minutes were not edited for an improper reason, Opp. at 10, Mr. Forbes' motion is primarily based on the plain language of the draft minutes, the fact that the draft minutes were sent to Ernst & Young, and the absence of any evidence that the draft minutes were edited at Mr. Forbes' behest for improper reasons. In any event, the government offers no reason why Mr. Tucker would perjure himself and no reason to doubt the validity of Mr. Tucker's testimony.

[6]    While the government asserts that Ms. Lipton testified at the 2004 trial and "failed to give any 'legitimate reason' for deleting the two sentences," Opp. at 11, the government fails to mention that Judge Thompson precluded the government from offering GX 453 into evidence during Ms. Lipton's testimony, Tr. (9/7/04) at 11,531, and Ms. Lipton testified that she had no recollection with respect to revisions to the draft minutes of this board meeting. Id. at 11,532.

an unfair advantage to Ideon's opponents in the litigation. Indeed, when CUC was asked by the SEC about the Ideon reserve in 1996, Ms. Lipton indicated to CUC's outside counsel that CUC should not identify the amount of the reserve that was set aside to resolve the litigation unless it was "absolutely necessary." See Ex. 1 hereto (DX 1034) at Bates No. 112673. Thus, it would not be surprising that Ms. Lipton -- who is not an alleged co-conspirator -- would have deleted from CUC Board minutes a reference to reserves for reasons wholly unrelated to a purported cover-up of a fraud.

Fourth, the government has presented nothing more than speculation about who caused the minutes to be edited or why it was done. There is simply no evidence that Mr. Forbes or any alleged co-conspirator directed that the minutes be edited, and there is no evidence that the editing was done for any improper reason. The government's theories about the purportedly nefarious reasons for the removal of the two sentences in question, and the purported involvement of a co-conspirator in the editing of the drat minutes, are nothing more than that -- theories unsupported by evidence and an improper invitation for the jury to engage in speculation. See, e.g., Niagara Mohawk Power Corp. v. Jones Chemical, Inc., 315 F.3d 171, 177 (2d Cir. 2003) ("impermissible speculation" cannot form the basis for a jury finding); Radiation Dynamics, Inc. v. Goldmuntz, 464 F.2d 876, 887 (2d Cir. 1972) (improper to ask jury to draw inference that "rests merely upon speculation and conjecture") (quotation marks omitted). Judge Thompson properly recognized that it would be improper to invite the jury to engage in speculation in the absence of evidence that Mr. Forbes had anything to do with editing

the draft Board minutes. <u>See</u> Tr. (10/15/04) at 14,801, 14,802.[7]

Finally, the Court should preclude the government from presenting any evidence or argument concerning this subject pursuant to Fed. R. Evid. 403. It would be misleading, prejudicial, and confusing for the government to present evidence on this subject when there is no legitimate factual basis for the inferences the government seeks to ask the jury to draw. The admission of this evidence also creates a substantial risk that jurors who are unfamiliar with the manner in which corporate board minutes are prepared will conclude that the mere fact that the draft minutes were edited is evidence of wrongdoing.[8]

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Mr. Forbes' opening memorandum, the Court should (1) preclude the government from referring to Robert Tucker's handwritten notes of CUC Board meetings as "minutes" or "draft minutes" and (2) preclude the government from presenting any evidence, cross-examination, or argument concerning the differences between or among GX 5, GX 453, and/or GX 77.

---

[7]     The government's reliance on <u>United States v. MacPherson</u>, 424 F.3d 183 (2d Cir. 2005) (Opp. at 12), is misplaced. In <u>MacPherson</u>, the Court concluded that the evidence in question, the defendant's pattern of structuring transactions, was probative of his knowledge and intent in a structuring case. <u>Id.</u> at 191. Here, the evidence the government seeks to offer is not probative of any element of the charged offenses. While evidence may be admissible if it is "consistent with innocence as well as with guilt," <u>id.</u> at 190, it is not admissible when it has <u>no</u> probative value at all.

[8]     The evidence also should be excluded pursuant to Fed. R. Evid. 404(b), <u>see</u> Docket No. 2312 at 9, an issue the government does not address.

8

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:_____

    Brendan V. Sullivan, Jr. (Bar No. ct17115)
    Barry S. Simon  (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

      - and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

9

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Motion of Defendant Walter A. Forbes to (1) Preclude the Government from Referring to Robert Tucker's Handwritten Notes as Board "Minutes" and (2) Preclude the Government from Presenting any Evidence, Cross-Examination or Argument Concerning the Differences Between GX 5, GX 453, & GX 77 (Forbes Third Trial Motion In Limine No. 23) to be filed electronically and to be served on June 15, 2006 to the following via e-mail:

Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)


Barry S. Simon