UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
                                   )
**UNITED STATES OF AMERICA**       )
                                   )    No. 3:02CR264 (AHN)
           v.                      )
                                   )
                                   )    June 15, 2006
**WALTER A. FORBES**               )
                                   )
_____)

### REPLY MEMORANDUM IN SUPPORT OF
### MOTION OF DEFENDANT WALTER A. FORBES
### TO PRECLUDE THE GOVERNMENT FROM PRESENTING
### EVIDENCE, CROSS-EXAMINATION, OR ARGUMENT
### CONCERNING THE CHARGING OF MR. FORBES' AIRPLANE
### EXPENSES TO THE CENDANT MERGER RESERVE
### (Forbes Third Trial Motion In Limine No. 22)

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon  (Bar No. ct24159)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Oral Argument Requested

The government apparently concedes that evidence concerning the charging of Mr. Forbes' plane expenses to the Cendant merger reserve should be excluded pursuant to Fed. R. Evid. 403 if that evidence is offered to establish Mr. Shelton's or Mr. Corigliano's participation in the conspiracy. It makes no argument on this subject. Instead, the government advances an entirely new claim, made for the first time after five years of litigation and two trials, that the evidence should be admitted because Mr. Forbes purportedly was involved in the decision to charge the expenses to the reserve. Opp. at 10. The Court should reject this contention, which is utterly inconsistent with facts known to the government, the evidence presented at the 2004 trial by the government and the defense, and the government's own prior representations.

## I. THE DRESCH MEMORANDUM IS CLEARLY ERRONEOUS AND HAS BEEN DISCREDITED BY BETH FREIMOUR.

While the government claims that it has evidence of Mr. Forbes' purported knowledge of the charging of the plane expenses to the reserve, Opp. at 12, and that this evidence purportedly "comes from the mouth of Forbes' own executive assistant, Beth Freimour," id. at 11, the government's representations on this subject are erroneous and misleading. The only purported evidence cited by the government is a June 28, 1998 memorandum written by an Arthur Anderson employee, Christina Dresch, concerning a purported conversation with Mr. Forbes' assistant, Beth Freimour. Opp. at 12. The government fails to inform the Court of two critical facts about this memorandum: (1) the government has had possession of the memorandum for many years and (2) it asked Ms. Freimour about the information contained in the memorandum in a 2001 interview, and Ms. Freimour told the government that it was incorrect.

After receiving the government's opposition memorandum, defense counsel contacted Ms. Freimour's counsel to inquire about this matter. Counsel for Ms. Freimour advised that, in

January 2001, then-AUSA John Carney, together with FBI agents Mark Gerber and John Pittman and postal agent Pat Matthews, conducted an interview of Ms. Freimour. During the interview, the government showed Ms. Freimour a copy of the expense report in question concerning Mr. Forbes' 1995 and 1996 plane expenses (without any attachments). Ms. Freimour told the government that she <u>did not fill out the report and had never seen it before</u>. She was asked whether Mr. Forbes' signature was on the document and confirmed that it was. She also told the government that Mr. Forbes ordinarily submitted expenses on a weekly basis, and explained that an expense report normally would have receipts attached to it.

Subsequent to the January 2001 interview, then-AUSA Carney called Ms. Freimour's counsel and asserted that Ms. Freimour was lying because she had had a conversation with an auditor about the document and had (supposedly) told the auditor that Mr. Forbes had prepared the document and indicated that the expenses should be charged to the merger reserve. After consulting with Ms. Freimour, her counsel informed Mr. Carney that the information reported by Mr. Carney was erroneous. Ms. Freimour's counsel further informed Mr. Carney that Ms. Freimour had never seen the expense report before her January 2001 interview and did not discuss the expense report with an auditor or anyone else before her government interview.[1]

Thus, contrary to the government's claim, the Dresch memorandum does <u>not</u> contain "Freimour's account," Opp. at 12, of anything. The fact that Ms. Freimour <u>denied</u> the

---

[1] Despite the clearly exculpatory nature of the information Ms. Freimour gave the government, the government never disclosed this information to Mr. Forbes' counsel. The government sent defense counsel a July 2003 letter that purported to summarize information provided by Ms. Freimour to the government, but it <u>said nothing about the plane expense issue</u>. See Ex. 1 hereto at 9. The government's conduct in this regard is a further reason for the Court to grant Mr. Forbes' motion for discovery and <u>Brady/Giglio</u> material (Docket No. 2189).

2

information in the Dresch memorandum in 2001 explains why the government never called either Ms. Freimour or Ms. Dresch as a witness at trial, and why the government has never before asserted that Mr. Forbes had knowledge that the plane expenses would be charged to the reserve.

The Dresch memorandum itself is inadmissible hearsay, and contains clearly erroneous information. Contrary to the Dresch memorandum, which states that the expense report "was prepared by Forbes himself who indicated that the merger reserve was to be charged," Ex. B to Opp., <u>the expense report was prepared by Mr. Shelton, not Mr. Forbes</u>. Mr. Forbes signed the document but <u>did not fill out any other information on the form</u>. See Tr. (9/14/04) at 12,321-32 (Shelton testimony that he filled out the form, not Mr. Forbes). In addition, Mr. Shelton, not Mr. Forbes, wrote the words "charge to merger reserve" on the document. See id. at 12,322.[2] Thus, the reliability of the Dresch memorandum -- even apart from Ms. Freimour's denial of the information attributed to her in the memorandum -- is suspect at best. The government has been on notice for years that the Dresch memorandum is simply wrong in critical respects.

The disingenuousness of the government's current reliance on the Dresch memorandum is highlighted by the fact that neither Ms. Freimour nor Ms. Dresch is on the government's third trial witness list. It is evident from their omission from the government's witness list that the government knows full well that it has no legitimate evidence to back up its current claim.[3] The

---

[2] Ms. Freimour's statement that she had never seen the document before was completely consistent with the record of the 2004 trial, which established that Mr. Shelton gave the form to Mr. Forbes to sign and that Mr. Shelton filled out the form.

[3] If the government had any legitimate basis for contending that Mr. Forbes had anything to do with the decision to charge the plane expenses to the merger reserve, it surely would have made that contention long before May 2006 -- more than five years after the return of the original indictment in this case, and after two lengthy trials.

3

government has <u>no evidence</u> that the words "charge to merger reserve" were on the expense report before Mr. Forbes signed it, and <u>no evidence</u> that Mr. Forbes had anything to do with the decision to charge the expenses to the reserve. The Court should reject the government's attempt to invite the jury to speculate that, because Mr. Forbes' signature is on the document, he must have known that the expenses would be charged to the reserve.[4] Judge Thompson granted Mr. Forbes' motion to preclude any evidence, cross-examination, or argument concerning this issue for precisely that reason. See Docket No. 1965; see also Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 177 (2d Cir. 2003) ("impermissible speculation" cannot form the basis for a jury finding); Radiation Dynamics, Inc. v. Goldmuntz, 464 F.2d 876, 887 (2d Cir. 1972) (improper to ask jury to draw inference based on speculation).[5] That conclusion was correct, and this Court should come to the same conclusion based on the facts and the law.

## II.  THE GOVERNMENT'S NEW CLAIM ABOUT MR. FORBES CANNOT BE RECONCILED WITH THE TESTIMONY OF ITS STAR WITNESS.

The government's new claim about Mr. Forbes' purported knowledge that his plane

---

[4] It is evident that the government wants the jury to draw precisely that inference, based on speculation about the fact that Mr. Forbes' signature is on the document. See Opp. at 1 (asserting that "the exhibit tends to show that Forbes may have known about a critical aspect of the charged fraud, the fraudulent manipulation of merger reserves"); id. (asserting that GX 158 "tells a different story," and undermines Mr. Forbes' defense that "the fraud was perpetrated by his subordinates without his knowledge or involvement"); id. at 25 (asserting that it "presented GX 388 and GX 158 to demonstrate that Forbes submitted a request to be reimbursed for ordinary business expenses with the intent that the Cendant merger reserve be charged").

[5] For the same reasons, the Court should reject the government's argument that the Dresch memorandum "provides the Government with a good-faith basis to cross-examine Forbes about Freimour's allegations if Forbes takes the stand and again denies any knowledge of the decision to improperly charge his 1995 and 1996 travel expenses to the Cendant Merger Reserve." Opp. at 14. The government has no good faith basis for posing any questions to Mr. Forbes based on the memorandum, because it knows that the memorandum contains erroneous information and that Ms. Freimour has refuted the information attributed to her in it.

4

expenses would be charged to the reserve also is inconsistent with the testimony of its own star witness, Cosmo Corigliano. While the government claims that "the only witness who testified that Forbes signed the expense report before Kirk Shelton wrote the merger reserve instructions was Forbes himself," Opp. at 10 (initial emphasis added), Mr. Corigliano testified that Mr. Forbes' signature was on the document before Mr. Corigliano even made the suggestion to Mr. Shelton that the expenses should be charged to the reserve.[6] The government previously conceded that fact. In a September 2005 memorandum, government counsel (including Messrs. Gross and Martinez, whose names appear on the government's current opposition memorandum) described the evidence of record as follows:

> Some time later, Shelton told Corigliano that Shelton had convinced Forbes to reduce his reimbursement claim. Tr. 7375-76. Shelton then gave Corigliano an expense report signed by Forbes, seeking reimbursement for more than $266,000 of travel expenses for 1995, and for more than $370,000 for 1996. Tr. 7376-77. Corigliano then told Shelton, "Don't forget the [Cendant] merger reserve." Tr. 7378. Shelton put his finger up in the air, said, "Ah-ha," and wrote something on the expense report. Id.

Docket No. 1740 at 3 (emphasis added) (brackets in original). The citations in the government's September 2005 memorandum are to Mr. Corigliano's 2004 trial testimony, in which Mr. Corigliano made clear that Mr. Forbes had signed the expense report seeking reimbursement for the plane expenses before Mr. Corigliano suggested to Mr. Shelton that the expenses should be charged to the reserve. Tr. (7/14/04) at 7375-78.[7] There is no evidence to the contrary.

---

[6] Mr. Corigliano is a liar and Mr. Forbes does not credit his testimony. As to this issue, Mr. Forbes merely points out that even Mr. Corigliano did not attribute to Mr. Forbes knowledge that the plane expenses were charged to the merger reserve. While the government asserts that Mr. Shelton was Mr. Forbes' "loyal lieutenant," Opp. at 15, it certainly cannot make that claim about Mr. Corigliano, the government's chief witness against Mr. Forbes.

[7] Contrary to the government's contention that "[a]t no point did Corigliano testify that he saw Forbes' signature on the expense report during this meeting with Shelton," Opp. at

5

11, Mr. Corigliano testified as follows:

> Q. Okay. Let me show you what has already been entered into evidence as Government's 158. What type of document is this, Mr. Corigliano?
> A. This is a T&E, an expense report, that we typically used, the employees of CUC used to get reimbursed for business expenses that we paid.
> Q. And who's the employee here in the upper left-hand corner?
> A. Walter Forbes.
> Q. Okay. List the dates. What are the dates? 1995 and 1996, what do they represent?
> A. The time period that the expenses were incurred.
> Q. And there's under totals, there's two totals. Could you read those?
> A. 1995, little over $226,000, and for 1996 a little over $370,000.
> Q. Okay. And at the bottom of the page, the signature of the employee?
> A. Yes.
> Q. Is that the lower left?
> A. Walter's signature as the employee.
> Q. And the date?
> A. 9/30/97.
> Q. Okay. So have you ever seen this before?
> A. I saw this when Kirk came into my office and saw that he was holding it.
> Q. Okay. Now, let's go back up a little bit on the document. Does it appear to be -- appears to be a Xeroxed copy; is that correct?
> A. That's correct.
> Q. Appears to be Post-its or something on there?
> A. Yes.
> Q. One to Steve and one to Nancy?
> A. That's what it looks like.
> Q. Do you recall them being on there when you saw this?
> A. I do not recall them being on there, no.
> Q. So when Mr. Shelton -- let me put you back in your office -- your office?
> A. Yes.
> Q. Mr. Shelton in there?
> A. Yes.
> Q. Anyone else?
> A. No.
> Q. You have a specific recollection of this?
> A. Yes.
> Q. Okay. So what does Mr. Shelton say to you?
> A. Kirk says -- well, as he comes in, he says he was able to reduce Walter's T&E. And he explains that there was some duplication, tells what the amount was, $575,000. And he's sitting across from my desk at this point, and I sort of -- I tell

6

To the extent the government now seeks to rely on portions of Mr. Shelton's testimony concerning the plane expense issue, Opp. at 6, the Court should be aware of the fact that the government previously asserted that Mr. Shelton's testimony concerning the plane expense issue was perjurious. See Docket No. 1604-1 at 35-36.[8] The government's flip-flop on this issue, like its radical change of position with respect to Mr. Forbes' purported knowledge that the expenses would be charged to the reserve, demonstrates that the government apparently will say and do anything in its desperate attempt to win a conviction at Mr. Forbes' third trial.

### III. THE GOVERNMENT HAS REPEATEDLY ACKNOWLEDGED THAT MR. FORBES HAD NOTHING TO DO WITH CHARGING THE PLANE EXPENSES TO THE RESERVE.

The government's current contention that Mr. Forbes may have had knowledge that certain 1995 and 1996 plane expenses would be charged to the Cendant merger reserve also cannot be reconciled with the government's numerous prior representations to the contrary.

---

        him, Well, don't forget about the merger reserve.
Q.   Does he say anything?
A.   He looks up and goes, Aha, an expression on his face, like, Ah, good idea. He doesn't say "good idea." He just puts his finger up and an expression of "aha."
Q.   You're raising your hands and putting your finger in the air?
A.   Yes.
Q.   Is that what Mr. Shelton did --
A.   Yes.
Q.   -- when he said "aha"?
A.   Yes.
Q.   Did he do anything after he raised his finger?
A.   I saw him write something on the expense report.

Tr. (7/14/04) at 7376-78 (emphasis added).

[8] The government's selective discussion of Mr. Shelton's testimony ignores the fact that Mr. Shelton testified that Mr. Forbes never asked for the plane expenses to be charged to the merger reserve and that Mr. Shelton did not believe that he ever discussed that issue with Mr. Forbes. Tr. (9/22/04) at 13,181.

7

Government counsel -- <u>including two of the three signatories to the government's current opposition memorandum</u>, represented to Judge Thompson in the fall of 2005 that "<u>Shelton[] and Corigliano[]</u>" -- <u>not</u> Mr. Forbes -- made the decision to charge Mr. Forbes' expenses to the reserve. Docket No. 1740 at 3 (emphasis added). In the same pleading, the government -- including current lead trial counsel, Mr. Martinez-- represented that "the Government's evidence during the first trial established that <u>Shelton</u> decided to improperly charge Forbes' 1995 and 1996 travel expenses to the Cendant merger; <u>no witness testified that Forbes knew about that decision before it occurred</u>." Id. at 5 (emphasis added); see also id. at 2 ("evidence regarding acts undertaken in furtherance of the conspiracy by <u>conspirators other than Forbes</u> was relevant to prove the existence of the conspiracy, even if a particular [alleged] conspirator such as <u>Forbes was unaware of those acts</u>.") (emphasis added); id. at 5 (government representation that it "<u>does not intend to argue that Forbes knew about or was involved in that decision</u>") (emphasis added).

The government's September 2005 pleading was not the first time that the government acknowledged that Mr. Forbes had nothing to do with the decision to charge the plane expenses to the merger reserve. On July 21, 2005, during Mr. Shelton's sentencing hearings, then-government counsel Richard Schechter asserted that "<u>Walter Forbes has nothing to do with this</u>." Tr. (7/21/05) at 287 (emphasis added); see also id. ("when Mr. Corigliano testified at trial, Your Honor, he didn't put Mr. Forbes in this, Mr. Walter Forbes in this conversation in any way, shape or form. Your Honor, he didn't put Mr. Forbes in this, Mr. Walter Forbes in this conversation in any way, shape or form.").[9] Similarly, in a 2004 pleading, the government asserted that evidence

---

[9] These statements by former government counsel concerning Mr. Corigliano's testimony refute the government's current suggestion that Mr. Shelton was the only person who testified that Mr. Forbes was not involved in the decision to charge the plane expenses to the

8

concerning the plane expense was relevant to <u>Mr. Shelton's</u> knowledge and intent -- not Mr. Forbes'. <u>See</u> Docket No. 657 (filed 4/29/04) at 15 ("the airplane expenses prove Shelton's knowledge of the charged scheme to misuse merger reserves").

While the government now attempts to distance itself from Mr. Schechter's representations to Judge Thompson, blithely asserting that "the prosecutors in the case have changed since then," Opp. at 16, the government's July 2005 statements were based on the government's knowledge of the <u>full record</u> on this issue -- including the 1998 Dresch memorandum, Ms. Freimour's government interview discrediting that memorandum, and the record of the 2004 trial. Similarly, the government's statements in its September 2005 pleading, which was signed by Mr. Gross, a signatory of the government's current opposition memorandum,[10] as well as current government lead counsel Mr. Martinez, were based on the government's knowledge of the full record on this subject, including the Dresch memorandum and Ms. Freimour's interview.[11] The fact that the government repeatedly acknowledged, both orally and in writing, that Mr. Forbes was not involved in the decision to charge the expenses to

---

reserve.

[10]    Mr. Gross has worked on this case since at least 2003. <u>See</u> Docket No. 290 (government pleading signed by Mr. Gross).

[11]    At a minimum, the government's prior representations on this subject to Judge Thompson would be admissible as statements of a party-opponent in the event the Court were to permit the government to present any evidence or cross-examination on this subject. <u>See</u> <u>United States v. McKeon</u>, 738 F.2d 26 (2d Cir. 1984); <u>United States v. Salerno</u>, 937 F.2d 797, 811-12 (2d Cir. 1991) ("[T]he jury is at least entitled to know that the government at one time believed, and stated, that its proof established something different from what it currently claims"; "To hold otherwise would not only invite abuse and sharp practice but would also weaken confidence in the justice system itself by denying the function of trials as truth-seeking proceedings.") (quotations omitted), <u>rev'd on other grounds</u>, 505 U.S. 317 (1992). The current prosecutors also are charged with knowledge of information obtained by the earlier prosecutors in this case.

the reserve, demonstrates that the government knows full well -- and has known for years -- that the Dresch memorandum is simply wrong and that Mr. Forbes was not involved in charging the plane expenses to the reserve.[12]

Because the government has no evidence to support its current claim that Mr. Forbes had knowledge that the plane expenses would be charged to the merger reserve and improperly seeks to invite the jury to speculate concerning this issue, and because the admission of this evidence would be unduly prejudicial to Mr. Forbes, see Docket No. 1965, the Court should preclude the government from presenting any evidence, cross-examination, or argument on this subject pursuant to Fed. R. Evid. 403.[13]

---

[12] The government also engages in revisionist history when it contends that Mr. Forbes "gave Mr. Corigliano an expense report, GX 158, seeking over one million dollars in reimbursement for [plane] expenses." Opp. at 4-5. In fact, Mr. Forbes never gave GX 158 to Mr. Corigliano. Nor does GX 158 request "over one million dollars" in reimbursement. See Ex. 1 to Docket No. 2311 (GX 158). The record reflects that, in September 1997, Mr. Forbes submitted expenses to the Compensation Committee of the CUC Board of Directors for approval of the reimbursement after he learned from his accountant that he had erroneously undercharged CUC in prior years. See Ex. 3 to Docket No. 2311 at CEN0370155 (reimbursement request from Mr. Forbes to Mr. Rittereiser). At some later point, Mr. Shelton reduced the reimbursement claim to $596,000 and brought the expense report, which had been signed by Mr. Forbes, to Mr. Corigliano. Tr. (7/14/04) at 7376-78.

[13] The Court also should exclude GX 158 and GX 388 pursuant to Fed. R. Evid. 1001 and 1003. While the government asserts that Mr. Forbes "effectively concedes that both GX 388 and GX 158 are 'duplicates' of the original documents as that term is defined by Fed. R. Evid. 1001(4)," Opp. at 18 n.7, Mr. Forbes makes no such concession. Rule 1001(4) provides that photocopies are considered duplicates of original documents if they "accurately reproduce[] the original." Id. (emphasis added). Here, the original has not been supplied and it is impossible to determine, from the different versions of the document, which is an accurate reproduction of the original. As a result, neither GX 158 nor GX 388 is admissible as a "duplicate" document under Rule 1001(4). GX 158 and GX 388 also are not admissible under Fed. R. Evid. 1003 because a genuine question has been raised as to the authenticity of the original and it would be unfair to admit the purported duplicate in lieu of the original. Mr. Forbes does not concede that the requirements of Rule 1004 has been satisfied either, compare Opp. at 24 n.9. Cendant has not proffered any legitimate explanation for the purported "loss" of the original document.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
     Brendan V. Sullivan, Jr. (Bar No. ct17115)
     Barry S. Simon  (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

            - and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Reply Memorandum in Support of Motion of Defendant Walter A. Forbes to Preclude the Government from Presenting Evidence, Cross-Examination, or Argument Concerning the Charging of Mr. Forbes' Airplane Expenses to the Cendant Merger Reserve (Forbes Third Trial Motion In Limine No. 22) to be filed electronically and to be served on June 15, 2006 to the following via e-mail:

> Norman Gross, Esq. (norman.gross@usdoj.gov)
> Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
> Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

_____
Barry S. Simon