UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>)<br>WALTER A. FORBES )<br>)<br>) | No. 3:02CR264 (AHN)<br><br>June 15, 2006 |

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF
DEFENDANT WALTER A. FORBES TO PRECLUDE EVIDENCE,
CROSS-EXAMINATION, OR ARGUMENT CONCERNING (1) THE
DECLINE IN CENDANT'S STOCK PRICE ON AND AFTER
APRIL 15, 1998 OR (2) INVESTOR LOSSES
(Forbes Third Trial Motion In Limine No. 11)**

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon  (Bar No. ct24159)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Oral Argument Requested                    Attorneys for Walter A. Forbes

The government does not deny that the critical contested issues in this case are knowledge and intent -- not materiality. The government itself has argued to the jury that the "question in dispute," Tr. (11/29/05) at 3091, is not materiality, but "whether the defendant knew about the fraud. That's the question." Id.; see also id. at 3129 ("The real question, once again, deals with the defendant's knowledge of the scheme to defraud and whether the defendant acted knowingly, willfully and with the intent to defraud."). The government also does not dispute that Mr. Forbes did not elicit any evidence on the subject of materiality at either the 2004 or 2005 trial, or that Mr. Forbes did not make any argument concerning materiality at either trial. Indeed, the government devoted only approximately seven lines of its approximately 1100-line principal summation to the issue of materiality, see id. at 3128:14-20, and mentioned it only to inform the jury that materiality was "plainly," id., established. The government did not even mention the issue of materiality in its rebuttal summation.

Despite the fact that materiality is not a contested issue in this case, the government seeks to present highly prejudicial and cumulative evidence on this subject. In addition to ample other evidence of materiality, the government hopes to present evidence not only that Cendant's stock price declined substantially on and after April 15, 1998, but also that Cendant shareholders suffered substantial losses when the stock price dropped. The government's conduct during the 2005 trial demonstrates that the government's real purpose in offering this evidence is not to prove the undisputed element of materiality, but to arouse juror emotions and obtain a verdict based on anger and class resentment against Mr. Forbes. Because the limited probative value of this evidence is far outweighed by its prejudicial effect, the Court should preclude the government from presenting any evidence or argument concerning either the decline in

Cendant's stock price on and after April 15, 1998 or shareholder losses.[1]

## I. THE GOVERNMENT HAS AMPLE OTHER EVIDENCE OF MATERIALITY.

The government's apparent contention that the Court should disregard the other evidence of materiality available to the government, Opp. at 12, is erroneous. In weighing the probative value of evidence against its prejudicial effect, the Court should consider the other evidence available to the government on the subject of materiality. See Old Chief v. United States, 519 U.S. 172, 183, 184-85 (1997); United States v. Awadallah, 436 F.3d 125, 132 (2d Cir. 2006); Fed. R. Evid. 403, advisory committee notes. While the government attempts to distinguish Awadallah on its facts, Opp. at 13-14, the Second Circuit made clear in Awadallah that "[p]robative value is . . . informed by the availability of alternative means to present similar evidence." 436 F.3d at 132 (citing Old Chief, 519 U.S. at 184). Applying that principle here, the probative value of the evidence the government seeks to present is slight at best.

The government's reliance on United States v. Mohr, 318 F.3d 613 (4th Cir. 2003), for the purported proposition that it should "not be prevented from presenting all available evidence that supports an element of the charged crime merely because the government may have other evidence," Opp. at 12, is misplaced. In Mohr, the evidence in question was probative of the defendant's intent, which was a critical disputed issue in the case. See 318 F. at 619. Because

---

[1] Contrary to the government's contention, Mr. Forbes has not "effectively abandoned other challenges he previously raised to the loss evidence," Opp. at 4, including his argument that the drop in stock price the day accounting irregularities are announced is not probative of the materiality of specific alleged false statements made over a period of years. Mr. Forbes' opening memorandum (Docket No. 2266) expressly incorporated by reference his earlier motion in limine on this subject (Docket No. 1855). See Docket No. 2266 at 3. This motion is not governed by the standards for reconsideration or law of the case. See Reply Supp. Forbes Third Trial Mot. In Limine No. 9 (filed June 15, 2006).

2

"Mohr specifically disputed her intent at trial," id., and testified that she did not act with criminal intent, id., the court determined that the evidence in question was "necessary," id., for the government to satisfy its burden of proof on the issue of intent. Here, in sharp contrast to Mohr, the evidence in question relates to an element that is not contested, and the proffered evidence is not necessary to establish the element of materiality.[2]

While the government asserts that Mr. Forbes' argument that the government has substantial other evidence of materiality is "disingenuous," Opp. at 12 n.5, because Mr. Forbes has supposedly moved in limine to exclude or limit such evidence, id., the government's assertion is incorrect. With respect to government witness James Rowan, for example, Mr. Forbes has moved only to preclude expert testimony concerning (1) the types of costs that may be charged to a merger reserve; (2) a hypothetical scenario; and (3) whether a false EPS number means that there is something wrong with a company's business plan, because Mr. Rowan has not been named as an expert in this case. See Docket No. 2247. Mr. Forbes expressly did not move to preclude Mr. Rowan's factual testimony concerning his reliance on the accuracy of CUC's reported financial information. See id. at 5 ("Mr. Forbes does not object to Mr. Rowan testifying that he relied on the accuracy of the merger reserve line in CUC's financial statements, or on CUC's historic operating income figures, as reported in CUC's SEC filings, when, on

---

[2] The government's reliance on United States v. Velazquez, 246 F.3d 204 (2d Cir. 2001) (Opp. at 10), is misplaced for the same reason. There, the evidence in question "helped to resolve a disputed point at the trial -- that [the victim's] signature on [the defendant's] cover-up report was coerced by the beating he had just received." Id. at 211. Here, the element of materiality is not a disputed point at trial. Moreover, in Velazquez, the defendant was willing to stipulate that "the beating occurred," id., but apparently did not agree to stipulate that the beating was "cruel and unusual punishment," id., an element of the charged offenses, id. at 209. The evidence in question was probative of that element as well. In this case, the element of materiality is not contested, and the evidence is not probative of anything else.

3

behalf of HSB, he purchased Cendant stock."). Mr. Forbes did not (and does not) object to Mr. Rowan's testimony concerning his reliance on the accuracy of the financial information reported in CUC's SEC filings. See Opening Mem. (Docket No. 2266) at 9. That testimony alone is sufficient to establish the uncontested element of materiality beyond a reasonable doubt.

Similarly, with respect to Mr. Kernkraut, Mr. Forbes has moved to preclude improper lay opinion and other improper testimony, see Docket No. 2253, but Mr. Forbes has not moved to preclude (and did not object to) Mr. Kernkraut's testimony that he relied on the accuracy of the financial information reported in CUC's SEC filings -- the testimony Mr. Forbes cited in his opening memorandum. See Docket No. 2266 at 9 (citing Tr. 10/18/05 at 203). Mr. Forbes has not filed any motion with respect to Michael Monaco, who also testified to his reliance on the accuracy of CUC's reported financial information. See Docket No. 2266 at 9 (citing Tr. (10/19/05) at 550). While Mr. Forbes has moved to preclude the government from making reference to the truth-telling provisions of Mr. Corigliano's plea agreement, Docket No. 2190, or offering improper lay opinion testimony, Docket No. 2255, Mr. Forbes has not moved to preclude Mr. Corigliano or any other witness from offering fact testimony concerning the alleged fraud[3] or investors' reliance on the financial information disseminated by CUC. Although Mr. Forbes has moved to preclude the testimony of Mr. Heckler, Mr. Forbes acknowledged that fact in his opening memorandum. See Docket No. 2266 at 9 n.9. Even without Mr. Heckler's testimony, however, the government cannot seriously dispute that it has ample evidence at its disposal to prove the uncontested element of materiality. The Court should consider the

---

[3] As the government pointed out in its 2005 summation, "the undisputed evidence shows that CUC employees committed a massive fraud." Tr. (11/29/05) at 3090. The government presumably will present evidence of the "massive fraud" again at the third trial.

4

significant alternative evidence available to the government on this subject when it conducts the Rule 403 balancing test.

In conducting the Rule 403 balancing test, the Court also should consider the fact that Mr. Forbes has not disputed the element of materiality. While the government is free not to accept a defendant's stipulation with respect to an element of the offense, Old Chief v. United States, 519 U.S. 172, 189 (1997), as Mr. Forbes pointed out in his opening memorandum,[4] there is no genuine dispute between the parties on the issue of materiality.[5] Where, as here, the evidence the government seeks to present "goes to an element entirely outside the natural sequence of what the defendant is charged with thinking and doing to commit the current offense," id. at 191, is offered to prove an element that is not contested by the defense, and is cumulative of other evidence, the probative value of that evidence is minimal at best.[6]

---

[4]  Mr. Forbes acknowledges that he cannot compel the government to agree to anything with respect to the issue of materiality. The fact that Mr. Forbes is not going to present any evidence on this subject, however, and the fact that there is no genuine dispute between the parties on this matter, are relevant to the question of what evidence of materiality the Court should permit, particularly where the government has repeatedly used evidence of the decline in Cendant's stock price and investor losses for improper purposes.

[5]  The government's assertion that it needs to present this evidence because, without it, "Forbes will be able to create the misleading impression that any increases in the price of the stock helped, rather than hurt the shareholders," Opp. at 17, is a red herring. Mr. Forbes did not present any evidence on this subject at either trial, and he made no such argument to the jury at either trial. Mr. Forbes will not make any such contention, or present any evidence on that issue, at his third trial. Nor will Mr. Forbes make any claim that false information in CUC's financial statements "had no effect on the stock price," Opp. at 17, or that "since there was no evidence that the charged fraud had achieved its intended goal, there must have been no fraud," Opp. at 18. There is accordingly no risk that the jury will be "misled," id., if the government is unable to present evidence concerning the decline in Cendant's stock price or stockholder losses after the disclosure of accounting irregularities on April 15, 1998.

[6]  Indeed, the probative value of evidence of shareholder losses in addition to evidence of the decline in Cendant's stock price on and after April 15, 1998 is nonexistent. The probative

## II. THE PREJUDICIAL EFFECT OF THE EVIDENCE THE GOVERNMENT SEEKS TO PRESENT IS SUBSTANTIAL.

In contrast to the slight probative value of the evidence the government seeks to present, the prejudicial effect of evidence of shareholder losses and the decline in Cendant's stock price is substantial. The government's contention that the "potentially prejudicial effect of the evidence is slight, because it involves only financial harm to the victims," Opp. at 15, is erroneous. The government used this evidence at the 2005 trial to incite juror anger and class resentment against Mr. Forbes because he accepted a significant severance package at a time when ordinary shareholders suffered losses.[7] Tr. (11/29/05) at 3091-92. It also improperly relied on Mr. Forbes' acceptance of his severance at a time when shareholders were suffering losses as purported substantive evidence of Mr. Forbes' knowledge and intent. Id. It is clear from the government's conduct at the 2005 trial that the government seeks to use this evidence not to establish the uncontested element of materiality, but as purported proof of the critical contested elements in this case -- Mr. Forbes' intent and knowledge -- and to convince the jury that Mr. Forbes is a greedy and insensitive person who deserves to be punished.

The government's opposition memorandum confirms that the government seeks to present evidence of shareholder losses, and Mr. Forbes' acceptance of his severance at a time when shareholders suffered losses, for improper purposes. While the government has

---

value of subsequent drops in Cendant's stock price "over the course of more than four months" after April 15, 1998, also is virtually non-existent, as those events are removed in time from the disclosure of accounting irregularities by Cendant in April 1998. Evidence concerning subsequent changes in Cendant's stock price also would be confusing and misleading, and would get into prejudicial areas that have nothing to do with this case, such as Cendant's Restatement.

[7]   Mr. Forbes has moved separately to preclude evidence, cross-examination, or argument concerning his severance agreement. See Docket No. 2272.

6

acknowledged elsewhere that it argued to the jury that Mr. Forbes' acceptance of his $47 million severance after Cendant's stock price declined was substantive evidence of his purported guilt, see Docket No. 2352 at 17, it claims in its opposition memorandum that it did not argue Mr. Forbes' acceptance of his severance as substantive evidence. See Opp. at 21 & n.12. In fact, the government made precisely that argument at the 2005 trial, as its first argument in support of Mr. Forbes' purported guilty knowledge:

> So what's the question in dispute? Simply put, whether the defendant knew about the fraud. That's the question. I'll provide you five reasons that prove that the defendant knew about the fraud. Let's start with the defendant's actions after Cendant publicly announced accounting irregularities in the CUC divisions on April 15, 1998. You saw the defendant testify. The defendant said that he felt very badly for the shareholders after Cendant's stock price collapsed and he was shocked to learn of the fraud. That's what the defendant said. What does the evidence show? The evidence shows that the defendant took another $47 million in severance from the company and then he walked away.

Tr. (11/29/05) at 3091-92 (emphasis added). The government's post-hoc rationalization that the argument was appropriate impeachment by contradiction, Opp. at 21 & n.12, cannot be reconciled with the record. The government's selective quotation from this argument (Opp. at 21 n.12) omits the key passage in which the government identified the argument that followed as "five reasons that prove that the defendant knew about the fraud." Tr. (11/29/05) at 3091-92.

The Court also should reject the government's contention that "[t]here was nothing improper about the Government juxtaposing Forbes' financial gains and the losses to the shareholders," Opp. at 19, because it was purportedly "relevant to prove that a fraud has occurred." That argument was and is improper, because it involved compensation that Mr. Forbes received as severance months after the conclusion of the alleged fraud -- evidence that was allowed only for purposes of impeachment and not as substantive evidence of the charged

7

offenses.[8] Judge Thompson expressly forbade the government from making this argument, Tr. (11/29/05) at 3080, and struck the argument from the record when the government made it after a warning not to do so, see Tr. (11/29/05) at 3092.[9] The government's continuing interest in making this improper argument confirms the government's true purposes in presenting evidence of the decline in Cendant's stock price and shareholder losses.[10]

The cases cited by the government also reveal that its true intention is to present evidence of the decline in Cendant's stock price and shareholder losses for improper purposes. For example, the government relies on cases in which evidence was admitted with respect to motive. See Opp. at 19 (citing United States v. Salameh, 152 F.3d 88, 111 (2d Cir. 1998); United States v. Reed, 639 F.2d 896, 907 (2d Cir. 1981)). Here, in sharp contrast, evidence of shareholder losses and the decline in Cendant's stock price is admissible (at most) only with respect to

---

[8] The government was permitted to cross-examine Mr. Forbes concerning the severance only for the limited purpose of challenging Mr. Forbes' credibility. The government misused that evidence as purported proof of motive and intent, just as it misused evidence of the decline in Cendant's stock price and shareholder losses, which were admitted only with respect to materiality, as purported proof that Mr. Forbes acted with knowledge and criminal intent. See generally Docket No. 2272; Reply Memorandum in Support of Forbes Third Trial Motion In Limine No. 14 (filed June 15, 2006).

[9] The government also attempts to deflect attention from the fact that it made an improper argument that Judge Thompson struck by citing unrelated instances in which Judge Thompson made inappropriate and baseless remarks about defense counsel. Opp. at 20 n. 11. Mr. Forbes addresses those remarks in Docket No. 2343 at 2-3 & n.2, incorporated herein by reference.

[10] The government offers no explanation as to why Judge Thompson struck the government's argument from the record if it was a proper argument. See Opp. at 22. The reason Mr. Forbes did not articulate the basis for his objection, which Judge Thompson immediately sustained, was that Judge Thompson had, less than thirty minutes earlier, expressly warned the government that he would sustain an objection to such an argument. Tr. (11/29/05) at 3080. The government made no attempt to persuade Judge Thompson that its argument was proper, either during or after its summation.

8

materiality -- not motive.[11] The government also cites United States v. Copple, 24 F.3d 535 (3d Cir. 1994) (Opp. at 20), a mail fraud case in which evidence that the victims lost money was admitted to prove the defendant's intent. Here, the evidence in question is not admissible with respect to intent, although the government seeks to use it for that purpose. The government also argues that "evidence that a defendant obtained money and the victims lost money is relevant to prove that a fraud has occurred." Opp. at 19. But the evidence in question was admitted only with respect to the limited issue of materiality, not as purported proof that a fraud occurred (an issue as to which there is ample admissible evidence in any event).[12]

---

[11]    While Mr. Forbes did not (and does not) object to evidence concerning his compensation during the period of the alleged conspiracy, which is at least arguably relevant to motive, Mr. Forbes' acceptance of his severance payment after the conclusion of the alleged conspiracy is not relevant to motive. Nor is evidence of shareholder losses or the decline in Cendant's stock price after April 15,1998. While the government observes that Mr. Forbes did not object to certain questions posed during his cross-examination, Opp. at 18-19, Mr. Forbes moved in limine before the 2005 trial to preclude evidence concerning his severance, shareholder losses, and the decline in Cendant's stock price. See Docket Nos. 1664-65, 1855. By the time of Mr. Forbes' cross-examination, the presiding judge had denied those motions in whole or in part.

[12]    While the government asserts that "[e]vidence describing harms to crime victims which were far more inflammatory than the challenged evidence here is routinely admitted," Opp. at 15, none of the cases cited by the government involved evidence that was improperly used by the government as purported evidence of something other than the limited purpose for which the evidence was admitted. Nor did they involve evidence of, at best, minimal probative value, such as the evidence at issue here. Compare, e.g., United States v. Rivera, 83 F.3d 542, 546-47 & n.6 (1st Cir. 1996) (Opp. at 15) ("the events at Naguabo related to a critical element of the then crime of carjacking -- possession of a firearm. . . . the testimony is highly probative on the issue of firearm possession"); United States v. Lopez, 271 F.3d 472, 482 (3d Cir. 2001) (Opp. at 15-16) (photographs were "the best evidence of mutilation available" in a case in which the government was required to prove that the victim was seriously disfigured by mutilation or that "a body part was destroyed or disabled"); United States v. Rivera-Gomez, 67 F.3d 993, 997 (1st Cir. 1995) (Opp. at 16) (evidence was "highly probative of culpability for an essential element of a section 2119 offense"), overruled on other grounds, United States v. Mojica-Baez, 229 F.3d 292, 310 n.12 (1st Cir. 2000); United States v. Rezaq, 134 F.3d 1121, 1138 (D.C. Cir. 1998) (Opp. at 15) (autopsy evidence was probative of death and "force and intimidation" element, as well as "the way in which Rezaq used systematic executions to maintain control of passengers

It is clear from the arguments advanced by the government at the 2005 trial and in its opposition memorandum that the evidence in question creates a serious risk that jurors will draw the precise conclusion that the government previously asked them to draw-- that Mr. Forbes is a bad person, and is more likely to be guilty of the charged offenses, because he accepted a large severance at a time when shareholders were suffering significant losses.  The risk that this evidence, which is (at most) admissible only with respect to the uncontested issue of materiality, will improperly be construed as substantive evidence against Mr. Forbes, is substantial.

The government's proffered evidence also would be highly prejudicial because it would arouse anger and resentment among jurors who are likely to sympathize with ordinary investors who lost money by investing in Cendant.  The evidence has a strong tendency to incite juror emotions and provoke an instinct among jurors to punish Mr. Forbes for reasons having nothing to do with whether he knowingly and willfully engaged in fraudulent conduct.[13]  Indeed, the government wants to argue that Mr. Forbes' alleged conduct was "particularly wrongful and blameworthy," Opp. at 10, because it resulted in "such a massive loss," id., to shareholders.  It is evident that the government seeks to present this evidence to incite jurors to blame Mr. Forbes for the financial losses caused by the fraud, rather than based on evidence beyond a reasonable doubt that Mr. Forbes actually knew about and directed the fraud.  Because this evidence has minimal probative value, but is extremely prejudicial, the Court should preclude the government from offering it at Mr. Forbes' third trial.

---

and airport personnel"; most autopsy photographs were "fairly antiseptic"; although one photo was graphic, it had "some probative value," and decision to admit it was not a "grave abuse").

[13]   It is inevitable that jurors exposed to such information will associate it with corporate meltdowns such as Enron.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Reply Memorandum in Support of Motion of Defendant Walter A. Forbes to Preclude Evidence, Cross-Examination, or Argument Concerning (1) the Decline in Cendant's Stock Price on and after April 15, 1998 or (2) Investor Losses (Forbes Third Trial Motion In Limine No. 11) to be filed electronically and to be served on June 15, 2006 to the following via e-mail:

Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

_____
Barry S. Simon