# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 3:02CR264 (AHN) |
| | ) | June 15, 2006 |
| WALTER A. FORBES. | ) | |
| | ) | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF
DEFENDANT WALTER A. FORBES TO PRECLUDE THE
GOVERNMENT FROM PRESENTING ITS PROPOSED EXPERT
TESTIMONY BECAUSE IT DOES NOT SATISFY THE
RELIABILITY REQUIREMENTS OF <u>DAUBERT</u> AND FEDERAL
RULE OF EVIDENCE 702
(<u>Forbes Third Trial Motion <i>In Limine</i> No. 5</u>)**

WILLIAMS & CONNOLLY LLP
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

COWDERY, ECKER & MURPHY, L.L.C.
James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

*Attorneys for Walter A. Forbes*

**I.    THE GOVERNMENT STRUGGLES TO RE-CHARACTERIZE THE SUBJECT MATTER OF MR. HECKLER'S OPINIONS TO AVOID GENERALLY ACCEPTED AUDITING STANDARDS.**

The government knows that it cannot escape the fact that outside the courtroom, accountants would apply Generally Accepted Auditing Standards in any engagement to express an opinion concerning the accuracy of a company's financial statement. See Kumho Tire Company, Ltd. v. Carmichael, 526 U.S. 137, 152 (1999) ( experts must employ "in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."). Thus the government tries to re-cast Mr. Heckler's work: arguing that he was not engaged to express an opinion on the company's financial statements, but rather to opine upon "potential errors" set forth in the indictment. Gov't Opp. at 7-9. The government cannot avoid the truth simply by re-characterizing what Mr. Heckler did. Mr. Heckler's notes and testimony both make clear that in fact he was asked to opine upon "one or more specified elements, accounts, or items of a financial statement." Because he did not follow GAAS in doing so, his testimony must be precluded under Kumho Tire Company, Ltd., 526 U.S. at 152.[1]

**A.    The Government Does Not, and Cannot, Dispute that GAAS Ordinarily Applies to Any Engagement to Express an Opinion on an Element, Account, or Item of a Financial Statement.**

GAAS explicitly states that it applies "to any engagement to express an opinion on one or more specified elements, accounts, or items of a financial statement," Ex. 1 at 29 (describing the requirements of AU § 623),[2] and even the government does not dispute that GAAS ordinarily would apply to such an opinion if offered outside the confines of the

---

[1] This motion is not governed by the standards for reconsideration or law of the case. See Reply Supp. Forbes Third Trial Mot. *In Limine* No. 9 (filed June 15, 2006).

[2] Unless otherwise noted, all references to exhibits refer to the exhibits attached to Mr. Forbes' Opening Memorandum.

courtroom. Indeed, this was confirmed by the court in <u>In re Imperial Credit Industries, Inc.</u> <u>Securities Litigation</u>, 252 F. Supp.2d 1005 (C.D. Calif. 2003), which held that even when an accountant opines upon the application of GAAP to a <u>single</u> asset within the financial statement <u>"his opinion is properly classified as an audit opinion, since he is opining that [the companies']</u> <u>financial statements during a particular time were inflated and did not comply with GAAP."</u> <u>Id.</u> at 1013 (emphasis added).[3] This conclusion is echoed by Heckler himself, who admitted that in the "real world" outside the courtroom he would have to follow GAAS in order to render an opinion on items of a financial statement. <u>See</u> Open. Mem. at 6-7 (quoting Heckler's testimony). Yet Mr. Heckler never purported to have followed GAAS in forming the opinions expressed in his expert testimony summary.

> **B.      The Government's Argument That Mr. Heckler Was Not Opining Upon an Element, Account or Item of a Financial Statement Is Belied By Mr. Heckler's Own Notes and Testimony.**

In an effort to excuse Mr. Heckler's admitted failure to follow GAAS, the government twists the nature of his opinion in an attempt to argue that he was in fact not opining "on one or more specified elements, accounts, or items of a financial statement." Gov't Opp. at

---

[3] The government attempts to distinguish <u>Imperial Credit's</u> ultimate rejection of a CPA's expert opinion, which was premised on the litigation report of another expert, on the grounds that the expert at issue in <u>Imperial Credit</u> was giving an "audit opinion." Gov't Opp. at 25, n.16. The government can make this argument *only* by ignoring the description of the expert's opinion proffered in <u>Imperial Credit</u>, 252 F.Supp. 2d at 1013, which for all intents and purposes is indistinguishable from Mr. Heckler's, and which the court then classified as an "audit opinion."

Moreover, <u>Heller Healthcare Finance, Inc. v. Boyes</u>, Civ. No. 300-1335D, 2002 WL 1558340 (N.D. Tex. July 15, 2002), cited by the government, is not to the contrary. There, an expert's testimony was challenged on the grounds that he did not follow the AICPA procedures for compilations, reviews and audits. The court rejected the challenge, finding that the expert had <u>not</u> performed a compilation, review or audit, and thus the compilation, review and audit standards were inapplicable. <u>Id.</u> at *14. Here, in contrast, Heckler <u>is</u> in fact performing the functions of an audit by opining on the "elements, accounts or items of a financial statement." He should not be permitted to avoid the corresponding professional standards that attach to such work by merely re-labeling it "consulting services."

2. Rather, the government argues, Mr. Heckler will opine on GAAP's application to "those matters identified in the indictment as potential errors and how those errors affected the relevant results in CUC's or Cendant's financial statements" Gov't Opp. at 2. Nowhere does the government attempt to explain the distinction between the "potential errors" which "affect" the financial statements and "elements, accounts, or items" of a financial statement that are subject to GAAS. Rather, the government simply implies that because it chooses to define Mr. Heckler's opinions as non-audit opinions directed toward "potential errors," he need not have followed GAAS in conducting his purported "fact finding" to form those opinions.

Regardless of what terminology the government may try to employ after-the-fact to describe the subject of Mr. Heckler's opinions, there is no question but that <u>Mr. Heckler himself defined the scope of his work to include rendering opinions on management's assertions in the company's financial statements</u>. The most succinct description of the scope of his work was penned by Mr. Heckler himself: "Management, not AA, has made assertions that its original accounting and disclosures complied with GAAP. <u>My scope is to render an opinion on whether management's assertions comply with GAAP</u>, not whether AA's opinion that they do not is reasonable." Exhibit A, attached hereto (handwritten analysis prepared by Mr. Heckler explaining the scope of his opinion) (emphasis added). Mr. Heckler was more specific during his two trial testimonies:

- Heckler described his task to the jury as determining whether there were GAAP violations and, if so, what the effect of those violations were <u>on the company's financial statements,</u> see, e.g., Tr. 11/9/2005 at 2383;
- With respect to the company's revenue recognition policy, Mr. Heckler testified that he compared the company's internal documents regarding revenue, and "<u>what was showing up in the financial statements</u> to see that those amounts compared to one another," and concluded that the company had violated GAAP, Tr. 11/9/2005 at 2401-02 (emphasis added);

- with respect to the so-called "rejects-in-transit" issue, Mr. Heckler testified that he reviewed how "the company had described certain revenue practices in its public financial statements and had certain cash amounts that were portrayed there that were different than what would have been there had these rejects been recorded at the right time," Tr. 11/9/2005 at 2409-10 (emphasis added);

- Mr. Heckler described the "topside adjustments" issue as addressing "adjustments that were made in the quarterly financial reporting to either revenues or expense items in the financial statements," 8/23/2004 at 10615-16 (emphasis added);  he further explained that "one of the key steps was to compare what ultimately was shown as the revenue and expenses and the pre-tax or what is called operating income out to the public in the quarterly financials agrees with what the underlying schedules that accumulate that information," id. at 10628.

Thus, regardless of what label the government may try to apply to Mr. Heckler's opinions for purposes of avoiding Mr. Forbes' Daubert challenge, it cannot escape the clear import of the actual trial testimony:  Mr. Heckler is in fact opining on "elements, accounts, or items of a financial statement."

The government's attempt to cast this issue as a dispute among experts whether to apply GAAS to expert opinions must be rejected.  Gov't Opp. at 11-12.  The testimony of the defense's two forensic accounting experts makes clear that the Accounting standards themselves specify that GAAS applies to Mr. Heckler's opinions.  But even if every accountant in the world agreed that accountants do not need to follow GAAS when providing opinions in court (which they do not), that agreement would have to be rejected in light of the Supreme Court's requirement that an expert employ "in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Company, Ltd., 526 U.S. at 152.  The accounting profession cannot exempt itself out of this requirement simply by promulgating rules specific to "litigation consulting," and then claim that those rules are what experts in their field would employ in the regular practice of "litigation." See Open. Mem. at 6-10.

4

**II.    THE GOVERNMENT CANNOT USE MR. HECKLER'S TESTIMONY TO ESCAPE HECKLER'S VIRTUALLY WHOLESALE ADOPTION OF THE ARTHUR ANDERSEN REPORT, WHICH WAS PREPARED IN ANTICIPATION OF LIGITATION.**

The government does not contest the fundamental fact that an expert cannot merely deliver the opinion of another, non-testifying expert. Instead, the government argues that Heckler has gone beyond Arthur Andersen's opinion, spending "hundreds of hours" on his own "independent analysis." See, e.g., Gov't Opp. at 14. Yet the memoranda describing KPMG's "investigation" reveal that these "hundreds of hours" consisted almost exclusively of "reading" and "reviewing" Arthur Andersen's workpapers to gain an understanding of Arthur Andersen's procedures and conclusions, and occasionally "testing" Arthur Andersen's work by tracing a few of its conclusions back to original source documents contained within the Arthur Andersen workpapers. Ex. 3 (collection of memoranda describing the work performed by Heckler on each accounting issue addressed by his report). As a matter of law, mere "confirmation" or "testing" of another's analysis is no substitute for a testifying expert performing his own procedures. American Key Corp. v. Cole Nat'l Corp., 762 F.2d 1569 (11th Cir. 1985) (expert could not testify to other expert's conclusions even though he "spot-checked" the other's analysis). See also Open. Mem. at 25-26.[4]

The government's attempts to cast Mr. Heckler's "spot-checking" as something more ultimately fails. For example, the government attempts to justify Mr. Heckler's

---

[4] While the government devotes much of its Opposition to a discussion of how "professional" the Audit Committee investigation was, it cannot dispute the fact that the investigation and resulting report were conducted and prepared in anticipation of litigation, and as a matter of law is not viewed as reliable, see Hoffman v. Palmer, 129 F.2d 976, 991 (2d Cir. 1942) (describing documents prepared for litigation as "dripping with motivations to misrepresent," and excluding report prepared by employee after accident), aff'd, 318 U.S. 109 (1943), and cannot serve as a reliable basis for expert testimony, see In re Imperial Credit Industries, Inc. Securities Litigation, 252 F. Supp.2d at 1012.

reconciliation between the quantification of the fraud in the indictment to the quantification done by Arthur Andersen as "comparing his own analysis with that of the Audit Committee investigators <u>as a check on his own work</u>." Gov't Opp. at 17 (emphasis added). <u>Yet Mr. Heckler did not do his own work in this area. To the contrary, Heckler admits in his workpapers that he has not analyzed or calculated the effect of the alleged irregularities because the government explicitly directed him not to do so.</u> See Ex. B, attached hereto (stating that the government did not want Heckler to quantify the accounting irregularities because it did not want yet a third set of numbers quantifying the alleged irregularities (AA Report vs. Indictment vs. KPMG)). Instead, Heckler simply adopted the quantification alleged in the indictment, and then relied upon the government to explain how the numbers differed from Arthur Andersen's quantification. See id., attached hereto (stating that the USAO believes Heckler should understand the differences between Arthur Andersen's quantification and the indictment's, but that a reconciliation has yet to be provided).[5] KPMG's notes of the reconciliation ultimately provided by the government make clear that the government's quantification of the irregularities (which Heckler adopts) are nothing more than Arthur Andersen's quantifications, modified to reflect instances where the government investigation unearthed support for transactions that Arthur Andersen had deemed unsupported. See Ex. C,[6] attached hereto (e.g., the impact for

---

[5] The government had repeatedly refused the defendants' request for such a reconciliation, and told KPMG that the defense would not know the basis for the differences even at trial. See Ex. B, attached hereto.

[6] Because the hard copy of this document produced by KPMG is illegible, we have also produced at Ex. C a print out of the electronic version produced by KPMG.

CUC Europe in 1995 was adjusted downward "$0.4 from the AA Report to indictment due to conversation with CUC Europe CFO").[7]

The cases relied upon by the government are inapposite. United States v. Affleck, 776 F.2d 1451, 1456-57 (10th Cir. 1985), Wechsler v. Hunt Health Systems, Ltd., 381 F. Supp. 2d 135, 144-45 (S.D.N.Y. 2003), and Int'l Adhesive Coating Co. v. Bolton Emerson Int'l, Inc., 851 F.2d 540, 544-45, Gov't Opp. at 15, each stand for the proposition that an accounting expert may base his opinion on company accounting records and employee interviews when he has conducted the investigation of those records and employees himself.[8] Similarly in Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1258-53 (9th Cir. 1984), Gov't Opp. at 15, an expert was permitted to rely upon an audit report prepared for litigation because it was his own firm (Touche Ross) that prepared the report under his guidance. None of these cases address a situation similar to that here, where Mr. Heckler relied upon another expert's review and selection of the original source records and conducted the employee interviews.[9]

---

[7] Indeed, had Mr. Heckler done more than "spot checking," he would not have erroneously testified that his review of the Deloitte & Touche ("D&T") Restatement workpapers confirmed "his" analysis of the membership cancellation reserve, and that Mr. Heckler's conclusions had been "audited" by D&T, Tr. 12/17/2004 at 22999-2306, when in fact D&T's analysis differed substantially from Mr. Heckler's (which was based upon Arthur Andersen's litigation work product). Id.

[8] It is doubtful that this proposition still applies in a criminal case if the interviews qualify as "testimonial" under Crawford v. Washington, 541 U.S. 36, 42 (2004). Even if it does, however, it cannot apply here because Mr. Heckler did not conduct the interviews himself.

[9] The cases cited by the government for the proposition that the Audit Committee's internal investigation report can form a reliable basis for Mr. Heckler's opinions, Gov't Opp. at 18-19, stand for no such thing. In re TMI Litigation, 193 F.3d 615, 697-98 (3d Cir. 1999), stated that there was nothing improper about a medical report prepared solely for litigation, but held that the expert improperly based her opinion on summaries of interviews conducted by plaintiffs' counsel without independently reviewing the patients' medical histories or examining the patients themselves. In United States v. Brown, 7 F.3d 648, 652-53 (7th Cir. 1993), a narcotics expert relied upon his own examination of certain evidence, as well as on a police report's statement

The government's argument that Heckler could rely upon Arthur Andersen's selection of documents is particularly problematic given the nature of Mr. Heckler's opinions – that certain financial transactions violated GAAP because they <u>lacked support</u>. Mr. Heckler cannot reliably opine that certain transactions lacked support – <u>much less quantify such transactions</u> – when he did not look for such support himself, and does not know what Arthur Andersen did to look for such support. Moreover, Mr. Heckler cannot rely upon the government witnesses to fill the gap because (1) none of the government witnesses has yet to testify in the necessary detail to provide Mr. Heckler the necessary information as to individual transactions, and (2) what little detail the witnesses have provided does not match the conclusions opined to by Mr. Heckler. <u>See</u> Open. Mem. at 23-27.

---

that no drug paraphernalia was found on the defendant, but that a gun was. <u>First</u>, the expert in <u>Brown</u> relied upon the police report for a very limited, narrow issue, and did not adopt his conclusions wholesale from the conclusions of the police officers. <u>Second</u>, the court explicitly found that experts in the field regularly rely on such evidence – something the government has not shown here. <u>Id.</u> at 653. In <u>Metabolife International, Inc. v. Wornick</u>, 264 F.3d 832, 841-45 (9th Cir. 2001), the court noted that the testifying experts' opinions were prepared for litigation – as will often be the case with expert testimony – <u>not</u> that the opinions were based on a non-testifying experts' litigation work product. Indeed, the court explicitly found that the relevant portion of the study referenced by the government's Opposition had been completed prior to the litigation, and remanded the issue of reliability to the trial court to evaluate the soundness of the methodology employed. <u>Id.</u> at 843. In <u>Ratliff v. Schiber Truck Co.</u>, 150 F.3d 949, 955 (8th Cir. 1998), a defendant was permitted to cross-examine an accident reconstructionist concerning the report of a police sergeant who had investigated the accident because the testifying expert had reviewed the report and rejected its conclusions. This poses a very different question than that here – and in any event, again the court explicitly found that such reports are of a type regularly relied upon by accident reconstructionists, a hurdle that the government cannot surmount in the present case. <u>Id.</u> at 955. Finally, <u>Manocchio v. Moran</u>, 919 F.2d 770, 779 (1st Cir. 1990), addressed the question of whether admitting an autopsy report in the absence of testimony by the medical examiner violated a defendant's Sixth Amendment right to confrontation, and not whether an expert could reasonably rely upon such a report. Notably, however, the court held that despite being hearsay, the report was sufficiently reliable to be admitted under the pre-<u>Crawford</u> test of <u>Ohio v. Roberts</u>, 448 U.S. 56 (1980), because a medical examiner "bears more similarity to a treating physician than he does to one who is merely rendering an opinion for use in the trial of a case." <u>Id.</u> at 777. The same can hardly be said for the Audit Committee Report.

III.   **THE GOVERNMENT CANNOT CIRCUMVENT MR. FORBES' SIXTH AMENDMENT RIGHT TO CONFRONTATION.**

      The government does not dispute that the statements made to the Audit Committee investigators constitute testimonial statements subject to the strictures of <u>Crawford v. Washington</u>, 541 U.S. 36, 42 (2004). Instead, the government claims that there is no constitutional issue posed by Mr. Heckler testifying on the basis of what the witnesses are purported to have said because the testimonial statements themselves are not being offered, and because the Court has not explicitly said that the statements will come into evidence if Mr. Forbes elects to challenge the bases of Mr. Heckler's opinions. Gov't Opp. at 32-36.

      <u>First</u>, while the government's Opposition acknowledges that the Second Circuit did not reach the issue of whether <u>Crawford</u> precludes an expert in a criminal case from relying upon out-of-court testimonial statements, the government provides little analysis of why it should not apply. Rather, its only argument as to why <u>Crawford</u> should not apply is its assertion that there is no confrontation issue when the statements themselves are not offered. Gov't Opp. at 32-35. The Second Circuit has expressly found that reliance of an expert on out-of-court testimonial statements in fact can constitute a violation of a defendant's confrontation rights, <u>Howard v. Walker</u>, 406 F.3d 114 (2d Cir. 2005), and explicitly left open the question of whether an expert could <u>ever</u> rely upon testimonial, out-of-court statements without violating a defendant's Sixth Amendment right of confrontation. Thus, while Rule 702 may generally permit an expert to rely upon hearsay or other inadmissible evidence if it is of a type reasonably relied upon by experts in the particular field, it

cannot be interpreted to permit reliance on <u>testimonial</u> out of court statements without denying a defendant his Sixth Amendment right to confrontation.[10]

        <u>Second</u>, the government's attempt to distinguish <u>Howard</u> on the grounds that the Court has not explicitly put Mr. Forbes to a Hobson's choice is without merit. The Court need not have made an explicit ruling that the out-of-court statements could come into evidence if Mr. Forbes challenged the bases of Mr. Heckler's opinions. How can Mr. Forbes challenge the bases of Mr. Heckler's opinions – including the unreliability of the witness interview memos that contain numerous inconsistencies and errors – without eliciting the testimonial statements themselves? No ruling is needed to explicitly spell out what is implicit in the situation – that Mr. Forbes is being put to an impermissible choice of electing to either give up his right to challenge Mr. Heckler's testimony or to give up his rights of confrontation under the Sixth Amendment. <u>Howard</u> makes clear that this cannot be tolerated in light of <u>Crawford</u>. <u>Howard</u>, 406 F.3d at 130. Mr. Heckler's testimony – and certainly any testimony purporting to quantify the alleged violations of GAAP – should be precluded.

---

[10] The government's additional suggestion that there is no confrontation issue because Mr. Forbes can call the witnesses whose testimonial statements are at issue stands <u>Crawford</u> on its head. <u>See</u> Gov't Opp. at 21-22 n. 14.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Dated:  June 15, 2006

CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Reply Memorandum in Support of

Motion of Defendant Walter A. Forbes to Preclude the Government from Presenting its

Proposed Expert Testimony Because it Does Not Satisfy the Reliability Requirements of

Daubert and Federal Rule of Evidence 702 (Forbes Third Trial Motion *In Limine* No. 5) to be

filed electronically and to be served on June 15, 2006 to the following via e-mail:

    Norman Gross, Esq. (norman.gross@usdoj.gov)
    Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
    Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)


Barry S. Simon