UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **UNITED STATES OF AMERICA** )<br>)<br>v. )<br>)<br>)<br>**WALTER A. FORBES** )<br>)<br>) | No. 3:02CR264 (AHN)<br><br>June 15, 2006 |

REPLY MEMORANDUM IN SUPPORT OF
MOTION OF DEFENDANT WALTER A. FORBES
FOR LEAVE TO CROSS-EXAMINE COSMO CORIGLIANO CONCERNING
(1) SEC REQUESTS PURSUANT TO MR. CORIGLIANO'S PLEA AGREEMENT,
(2) MR. CORIGLIANO'S EFFORTS TO REACH A SETTLEMENT WITH THE SEC,
AND (3) COMMUNICATIONS BETWEEN MR. CORIGLIANO'S COUNSEL AND
THE SEC, AND TO INTRODUCE DOCUMENTS REFLECTING COMMUNICATIONS
BETWEEN MR. CORIGLIANO'S COUNSEL AND THE SEC INTO EVIDENCE
<u>(Forbes Third Trial Motion In Limine No. 4)</u>

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Oral Argument Requested                    Attorneys for Walter A. Forbes

I.  **MR. CORIGLIANO'S FAILURE TO COMPLY WITH HIS PLEA AGREEMENT IS NOT A COLLATERAL MATTER.**

The government seeks once again to elicit testimony from Mr. Corigliano concerning his purported compliance with his obligations under his plea agreement and to preclude Mr. Forbes from presenting contrary evidence to the jury. Although the government attempts to portray Mr. Forbes' proposed cross-examination as collateral, the question of whether Mr. Corigliano violated the terms of his plea agreement and falsely testified to his purported compliance with that agreement is critical to the jury's assessment of Mr. Corigliano's credibility and bias.[1]

"While the trial court has wide discretion to prevent repetition, harassment of the witness or production of irrelevant material, the right of cross-examination is of constitutional dimension and may not be denied." United States v. Segal, 534 F.2d 578, 582 (3d Cir. 1976) (citing Davis v. Alaska, 415 U.S. 308 (1974)). "Wide latitude should be allowed . . . when a government witness in a criminal case is being cross-examined by the defendant, and the trial judge's discretion cannot be expanded to justify a curtailment which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony." United States v. Pedroza, 750 F.2d 187, 195-96 (2d Cir. 1984) (quotation & citations omitted).

While the government asserts that it has not presented Mr. Corigliano as a changed man, Opp. at 7-8 (quoting an examination conducted by Mr. Shelton's counsel), it is important to the government to present Mr. Corigliano as a man who changed his ways after entering into his January 2000 plea agreement. The government elicited testimony from Mr. Corigliano in two trials concerning the terms of Mr. Corigliano's plea agreement and Mr. Corigliano's alleged

---

[1]  This motion is not governed by the standards for reconsideration or law of the case. See Reply Supp. Forbes Third Trial Mot. In Limine No. 9 (filed June 15, 2006).

compliance with that agreement.  See Tr. (7/14/04) at 7500, 7502-03; Tr. (11/1/05) at 1452-53, 1456-57.  The government also elicited testimony in two trials concerning Mr. Corigliano's purported willingness to return all of the net proceeds of his ill-gotten gains to the SEC after he entered into his plea agreement.  Tr. (7/14/04) at 7502-03; Tr. (11/1/05) at 1467-68, 1471-72.  The clear purpose of the government's direct examination of Mr. Corigliano on these subjects is to persuade the jury that, despite Mr. Corigliano's lengthy history as a serial liar who committed dozens of crimes while at CUC and Cendant, his trial testimony is worthy of belief because he entered into a plea agreement and is now a law-abiding truth-teller.  Indeed, given Mr. Corigliano's undisputed history as a liar and criminal, the only way a jury could credit his testimony is if it concluded that he had reformed after entering into his plea agreement.

"[I]f a matter has been raised on direct examination, generally cross-examination must be permitted."  Pedroza, 750 F.2d at 196 (quoting Segal, 534 F.2d at 582).  Mr. Forbes' proposed cross-examination, and the documents Mr. Forbes seeks to introduce, are admissible under the doctrine of impeachment by contradiction and under United States v. Wallach, 935 F.2d 445 (2d Cir. 1991), to remedy the false and misleading testimony the government intends to elicit from Mr. Corigliano concerning his purported compliance with his plea agreement and his purported good faith efforts to settle with the SEC.  See also Pedroza, 750 F.2d at 196 (government's own questioning opened the door to cross-examination on matters raised in direct examination; "it was patently unfair to have had the government elicit on direct examination Carlos's denial of involvement and to preclude the defendants from probing that denial"); United States v. Lynn, 856 F.2d 430, 433 (1st Cir. 1988) (restriction on cross-examination error where government raised issue on direct examination; "we cannot ignore the government's tactic of drafting the plea

2

agreement with the polygraph requirement clause, revealing the entire agreement to the jury (and thereby implying the witness' motivation to tell the truth), then objecting to defense attempts to expose the full implications of the clause.").[2]

The government's strenuous opposition to Mr. Forbes' motion reveals that the government fully understands the power of the information it seeks to withhold from the jury. The jury should be allowed to learn that Mr. Corigliano, through his counsel, provided incomplete and misleading information to the SEC about his asset transfers and the value of his assets, despite Mr. Corigliano's non-delegable obligation under the plea agreement to "truthfully disclose all information he possesse[d]," Plea Agreement at 2, on those subjects. The jury also should be permitted to learn that, while Mr. Corigliano claims that after he entered into his plea agreement he was always willing to relinquish all of the net proceeds of his ill-gotten gains

---

[2] The proposed cross-examination also is directly relevant to Mr. Corigliano's bias. Evidence that Mr. Corigliano breached his plea agreement creates a separate and additional motive for him to testify falsely against Mr. Forbes in order to curry favor with the government in the hope that the government will not act on the breach. See United States v. Lynn, 856 F.2d 430, 433 (1st Cir. 1988) ("present and continuing reasons for the witness to fabricate his testimony in return for future prosecutorial favors" are a basis for bias). For example, Mr. Corigliano still has possession of the second lot valued at $441,000 and presumably seeks to keep it by continuing to please the government, even though it is subject to disgorgement under his settlement agreement with the SEC. See id. at 433 n.5 (desire to keep "assets that may still be subject to forfeiture" is a basis for bias). While the government attempts to distinguish Lynn on the ground that the plea agreement breach there was undisputed, Opp. at 15-16, the record there only reflected that some of the witness's answers in polygraph examinations were "inconclusive." 856 F.2d at 433. In any event, the principles enumerated in Lynn apply with full force here, where there is ample evidence that Mr. Corigliano violated the terms of his plea agreement and (through his counsel) supplied false, misleading, and incomplete information to the SEC. Even assuming arguendo that Mr. Corigliano's compliance with his plea agreement could be considered a collateral issue, once a witness "testifies as to any specific fact on direct testimony, the trial judge has broad discretion to admit extrinsic evidence tending to contradict the specific statement, even if such statement concerns a collateral matter in the case." United States v. Benedetto, 571 F.2d 1246, 1250 (2d Cir. 1978).

3

(which he valued at $13-14 million), Tr. (11/1/05) at 1471-72, his counsel proposed a far lower $3.4 million settlement to the SEC months <u>after</u> Mr. Corigliano entered into the plea agreement. It should further be allowed to learn that, while Mr. Corigliano blames the SEC's purported intransigence on a $6 million tax issue as the reason he failed to settle with the SEC for more than four years after he signed his plea agreement, Mr. Corigliano's counsel raised a host of other objections to the SEC's settlement proposal.

If the jury concludes that Mr. Corigliano is testifying falsely about his purported compliance with his obligations under the plea agreement, and/or that Mr. Corigliano, through his counsel, supplied false or misleading information to the SEC after entering into his plea agreement, it will "call[] into question the veracity of the rest of his statements." Wallach, 935 F.2d at 458.[3] In a case in which Mr. Corigliano is the only witness who claims to have personal knowledge of purported wrongdoing by Mr. Forbes, it is essential that the jury be permitted to make a determination of Mr. Corigliano's credibility based on a full factual record,[4] rather than the self-serving, false, and misleading testimony the government elicits on Mr. Corigliano's direct examination.[5]

---

[3]   The situation here bears no resemblance to that in United States v. Laljie, 184 F.3d 180 (2d Cir. 1999) (Opp. at 9), where the defendant was precluded from cross-examining a witness about "his medical condition, an embarrassing subject of tangential relevance." Id. at 193.

[4]   Even at this late date, the government still has not produced all of the documents and information to which Mr. Forbes is entitled. See Docket Nos. 2189, 2341. Nor has it conducted any investigation into the issues raised by Mr. Forbes. See Morris v. Ylst, No. 05-99002, 2006 U.S. App. LEXIS 11465, at *20 (9th Cir. May 9, 2006).

[5]   Mr. Forbes' proposed cross-examination is not cumulative, and is certainly not "like carrying coals to New Castle," Opp. at 14. The government has not conceded that Mr. Corigliano is a liar who has breached his plea agreement; to the contrary, it continues to present him as a credible witness in full compliance with the agreement. While the government points to

## II. MR. FORBES HAS A GOOD FAITH BASIS FOR THE PROPOSED CROSS-EXAMINATION.

Contrary to the government's contention, Opp. at 25, Mr. Forbes has an ample good-faith basis for cross-examining Mr. Corigliano concerning the information supplied to the SEC on his behalf and the settlement offers made to the SEC on his behalf. Mr. Forbes' proposed cross-examination is based on documents prepared by Mr. Corigliano's counsel and supplied to the SEC on his behalf, as well as documents from the SEC to Mr. Corigliano's counsel. The government does not challenge the authenticity of these documents or the fact that they were exchanged between Mr. Corigliano's counsel and the SEC.

While Mr. Corigliano claimed in 2004 that he knew nothing about the settlement offers made on his behalf or the factual representations made on his behalf to the SEC, that testimony is incredible in light of Mr. Corigliano's non-delegable duties to the SEC under his plea agreement and his attorney's ethical duties to communicate information such as settlement offers to him.[6] It

---

other avenues of cross-examination pursued by Mr. Forbes, Opp. at 12, those subjects deal with Mr. Corigliano's conduct before he entered into his plea agreement and the benefits that he received under the plea agreement. They do not address Mr. Corigliano's conduct after he entered into the plea agreement. Since it is undisputed that Mr. Corigliano was a serial liar and criminal before he entered into the plea agreement, the critical question before the jury is whether Mr. Corigliano should be believed because he has entered into a plea agreement and has changed his ways, or whether he is still lying to serve his own interests and has not been reformed since entering into the agreement. See Lynn, 856 F.2d at 433-34 (while cross-examination of government witness "was extensive, there were relatively few questions concerning Bryon's continuing reasons to lie to please the government"; "by cutting off all cross-examination into a relevant and not fully explored area, the district court abused its discretion").

[6] New York E.C. 7-7 provides, inter alia, "In certain areas of legal representation not affecting the merits of the cause or substantially prejudicing the rights of a client, a lawyer is entitled to make decisions. But otherwise the authority to make decisions is exclusively that of the client and, if made within the framework of the law, such decisions are binding on the lawyer. As typical examples in civil cases, it is for the client to decide whether to accept a settlement offer or whether to waive the right to plead an affirmative defense." See also NYCLA Ethics Op.

5

also is incredible in light of Mr. Corigliano's counsel's representation in May 2000 that Mr. Corigliano was personally filling out the SEC disclosure form, see Docket No. 1689, Ex. 4, at 2, and because Mr. Corigliano had to be the source of the factual information his counsel provided to the SEC concerning his finances. At a minimum, the jury should be permitted to learn the pertinent facts and make its own determination whether Mr. Corigliano is lying in order to distance himself from documents that contradict his testimony.[7]

While the government asserts that the documents are not inconsistent with Mr. Corigliano's testimony (Opp. at 4-5), documents that reflect that Mr. Corigliano's counsel, acting on his behalf, supplied the SEC with false, misleading, incomplete, or erroneous financial information clearly contradict Mr. Corigliano's testimony that he has fully complied with his obligation to "truthfully disclose all information he possesses," Plea Agreement at 2, to the SEC.[8]

---

667 (4/5/88) (Ex. 1 hereto) (attorney should communicate all settlement offers to client). New York E.C. 7-8 provides, inter alia, "A lawyer should exert best efforts to ensure that decisions of the client are made only after the client has been informed of relevant considerations."

[7]     Even assuming arguendo that Mr. Corigliano's testimony that he knew nothing about these matters could be credited (which it cannot), the Court should permit such an inquiry where, as here, the lawyer made representations the client was legally required to make and the government has elicited testimony from the witness that he has complied with this legal obligation. See Wallach, 935 F.2d at 456-57. United States v. Cuevas Pimentel, 815 F. Supp. 81 (D. Conn. 1993) (Opp. at 30-31), does not compel a different result. That case addressed the question of whether a transcript of an attorney's statements at a detention hearing was admissible as extrinsic evidence of prior inconsistent statements by the client witness under Rule 613(b). Id. at 83. Pimentel did not involve a situation where a government witness testifying under a plea agreement had a non-delegable duty to make truthful representations to the government, used his attorneys to make representations to the government on his behalf, and testified on direct examination that he had complied with his obligations under the plea agreement.

[8]     This includes, for example, documents reflecting that, in response to a specific SEC inquiry about the value of his property and other assets, Mr. Corigliano's counsel supplied the SEC information about a "comparable" property that was far from comparable to Mr. Corigliano's property; documents reflecting that Mr. Corigliano refused to submit an SEC

6

Similarly, documents reflecting that Mr. Corigliano's counsel offered the SEC a $3.4 million settlement at a time when Mr. Corigliano purportedly "focused on always giving back everything that I made," Tr. (11/3/05) at 1947, is inconsistent with Mr. Corigliano's claimed good-faith "intention to give back the proceeds, the net proceeds that I had made from the stock sales." Id. at 1946.[9] A jury applying common sense would surely conclude that Mr. Corigliano's testimony on this point is far different from the <u>actions</u> his counsel took on his behalf, presumably with his authorization. A jury also likely would conclude that Mr. Corigliano is falsely portraying himself as a man who did not seek to keep his ill-gotten gains, and that, in fact, Mr. Corigliano sought to keep as much money for himself as he could. A jury that learned that there was no $6 million tax issue holding up the settlement for four years (<u>see</u> Opening Mem. at 9) also likely would conclude that Mr. Corigliano's explanation for his failure to settle with the SEC for more than four years was false, and that the truth is that Mr. Corigliano wanted to keep and live on his ill-gotten gains for as long as possible. The record of Mr. Corigliano's counsel's interactions with the SEC stands in stark contrast to the picture of Mr. Corigliano that the government seeks to present. Indeed, it shows a Cosmo Corigliano who did <u>not</u> change after entering into his plea agreement, and who sought to con and deceive the SEC to serve his own interests.

---

financial disclosure form under oath, and documents reflecting misleading or incomplete financial information supplied to the SEC on Mr. Corigliano's behalf. <u>See</u> Opening Mem. at 6-14; Docket Nos. 2186, 2189-90, 2341-43.

[9] The fact that Mr. Corigliano ultimately agreed to pay the SEC a larger sum more than four years later (Opp. at 4-5) -- at a time when Mr. Corigliano and the SEC were under intense pressure to reach a settlement before the commencement of Mr. Forbes' 2004 trial -- does not alter the fact that Mr. Corigliano's counsel repeatedly made settlement offers to the SEC that were far lower than the net proceeds of Mr. Corigliano's stock sales.

The fact that Mr. Corigliano was successful in his strategy is evidenced by the record as well. Mr. Corigliano was able to conceal from the SEC for years the substantial retainers he and his wife paid to their counsel (which he continues to have available to him to use). He also successfully concealed the existence of a valuable separate three-acre lot owned by his wife (worth approximately $450,000) (which he still has), substantial cash transfers he made to his father (which he never disgorged), and the fair market value of his house on eight acres (worth $3.2 million) (which the SEC allowed him to keep after being affirmatively misled about its true value).[10] While the SEC is unwilling to acknowledge that it was duped by Mr. Corigliano, and both the SEC and the U.S. Attorney's Office seek to protect the government's key witness against Mr. Forbes, see Docket Nos. 2190, 2342, the record speaks for itself. The jury should be permitted to learn the facts about Mr. Corigliano and to make its own determination about whether he testifies truthfully about his purported compliance with his obligations to the SEC under the plea agreement or his purported eagerness to return all of his net ill-gotten gains.[11]

---

[10] Mr. Corigliano also presented false information concerning his family to the government. While the government accuses Mr. Forbes of "scorched-earth" tactics for raising this issue, Opp. at 7, it is Mr. Corigliano that will use anyone, even family members, to further his own interests. Mr. Corigliano invoked his family situation in order to increase his already substantial proposed annual budget. In so doing, his counsel represented that his parents were elderly and infirm and had no source of income apart from Social Security and support from Mr. Corigliano. See Docket No. 2188, Ex. 9, Revised Annual Budget at 2 n.3; compare Opp. at 7. It is now clear that, during the years that Mr. Corigliano lived off of his expanded budget, his father was receiving a salary from the candle company owned by Mr. Corigliano's wife. That fact was not disclosed to the SEC. While the government asserts that Mr. Corigliano's father did not begin working at the candle company until 2001 or 2002, Opp. at 7, that purported "fact" is not established by Mr. Corigliano's testimony that he "thinks" his father worked there three or four years. Tr. (11/8/05) at 2159. If candle company records reflect that Mr. Corigliano's father was working at the candle company in 2000, at the time of his counsel's representations to the SEC, the government should disclose that fact under Brady/Giglio and Rule 16.

[11] Mr. Forbes addresses Mr. Frohlich's and Mr. Kidney's testimony and the retainer issue in

### III. THE ATTORNEY-CLIENT PRIVILEGE DOES NOT BAR THE PROPOSED CROSS-EXAMINATION.

Mr. Forbes' proposed cross-examination does not run afoul of the attorney-client privilege. To the extent the cross-examination inquires about documents exchanged between Mr. Corigliano's counsel and the SEC, those materials are not privileged. To the extent the cross-examination inquires about information Mr. Corigliano provided to his counsel with the understanding that it would be given to the SEC, or information from the SEC that his counsel communicated to him, those communications are not privileged. "[I]t is well established that communications between an attorney and his client, though made privately, are not privileged if it was understood that the information communicated in the conversation was to be conveyed to others." United States v. Tellier, 255 F.2d 441, 447-48 (2d Cir. 1958).[12] Where "information is given and it is agreed that it is to be transmitted to a third party, then not only the specific information, but the more detailed circumstances relating to it are subject to disclosure." Id.[13]

Here, as discussed above, Mr. Corigliano's claim that he had no idea that the financial information he provided to his counsel would be supplied to the SEC is not worthy of credence.

---

Docket Nos. 2342 and 2343.

[12] See also United States v. Oloyede, 982 F.2d 133, 141 (4th Cir. 1992); United States v. White, 950 F.2d 426, 430 (7th Cir. 1991); Mead Data Central, Inc. v. Air Force, 566 F.2d 242, 253 (D.C. Cir. 1977); Brimley v. Hardee's Food Sys., 1995 U.S. Dist. LEXIS 1471, at *6 (S.D.N.Y. 1995); United States ex rel. Stone v. Rockwell Int'l Corp., 144 F.R.D. 396, 400 (D. Colo. 1992); United States v. Rosenthal, 142 F.R.D 389, 392 (S.D.N.Y. 1992).

[13] It is not necessary for the attorney to act as a mere conduit of the information provided by the client. In Tellier, for example, the attorney exercised legal judgment in preparing a letter that included the substance of the information provided by the client but did not repeat it verbatim. 255 F.2d at 447-48. The Second Circuit nevertheless concluded that the attorney-client privilege did not apply to the communication between the client and his counsel. Id.

9

It is extremely unlikely that Mr. Corigliano's counsel would release Mr. Corigliano's financial information to the SEC, or make representations to the SEC concerning Mr. Corigliano's financial information or the value of his assets, without Mr. Corigliano's knowledge and without verifying with Mr. Corigliano that the information was correct -- particularly given the fact that Mr. Corigliano was legally obligated by his plea agreement to provide complete and accurate information to the SEC.

To the extent Mr. Corigliano gave his (unwitting) counsel false or misleading information with the intention that it be supplied to the SEC, the crime/fraud exception also vitiates any privilege claimed by Mr. Corigliano. See In re Grand Jury Subpoena, 731 F.2d 1032, 1038 (2d Cir. 1984) ("It is well-established that communications that otherwise would be protected by the attorney-client privilege or the attorney work product privilege are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct.") (collecting cases); United States v. Ruhbayan, 201 F. Supp. 2d 682, 686 (E.D. Va. 2002) (crime/fraud exception applied to attorney-client communications and attorney work product where client tricked attorney into presenting perjured testimony), aff'd in pertinent part, 406 F.3d 292, 299 (4th Cir.), cert. denied, 126 S. Ct. 291 (2005); In re Grand Jury Subpoena to Carter, 1998 U.S. Dist. LEXIS 19497, at *4-5 (D.D.C. Apr. 28, 1998) (crime/fraud exception applied where client provided false information to counsel, who unwittingly included it in affidavit submitted to court).[14]

---

[14] If the Court seeks additional information, it should conduct an evidentiary hearing outside the presence of the jury pursuant to Fed. R. Evid. 104. At a minimum, Mr. Forbes has satisfied the standard for further inquiry into the matter under United States v. Zolin, 491 U.S. 554 (1989); see also In Re: Grand Jury Investigation, 445 F.3d 266, 274-75 (3rd Cir. 2006) (discussing requirement of prima facie showing necessary for application of crime/fraud exception).

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: /s/ Brendan V. Sullivan, Jr. / Barry S. Simon
    Brendan V. Sullivan, Jr. (Bar No. ct17115)
    Barry S. Simon  (Bar No. ct24159)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

    - and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

11

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Motion of Defendant Walter A. Forbes for Leave to Cross-Examine Cosmo Corigliano Concerning (1) SEC Requests Pursuant to Mr. Corigliano's Plea Agreement, (2) Mr. Corigliano's Efforts to Reach a Settlement with the SEC, and (3) Communications Between Mr. Corigliano's Counsel And the SEC, and to Introduce Documents Reflecting Communications Between Mr. Corigliano's Counsel and the SEC into Evidence (Forbes Third Trial Motion In Limine No. 4) to be filed electronically and to be served on June 15, 2006 to the following via e-mail:

> Norman Gross, Esq. (norman.gross@usdoj.gov)
> Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
> Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

_____
Barry S. Simon