UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | No. 3:02CR264 (AHN) |
| ) | |
| WALTER A. FORBES ) | June 15, 2006 |
| ) | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT
WALTER A. FORBES TO PRECLUDE IMPROPER TESTIMONY BY STEVEN
KERNKRAUT**
(**Forbes Third Trial Motion *In Limine* No. 3**)

WILLIAMS & CONNOLLY LLP
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

COWDERY, ECKER & MURPHY, L.L.C.
James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

*Attorneys for Walter A. Forbes*

Oral Argument Requested

The government agrees with the majority of Mr. Forbes' motion *in limine* directed to Mr. Kernkraut's improper testimony—it "will not elicit any testimony from Kernkraut . . . regarding the accuracy of CUC's reported financial results," Opp'n at 4; it "will not elicit any testimony from Kernkraut . . . that Forbes [purportedly] made representations to Kernkraut about CUC's financial numbers that were 'essentially false,'" Opp'n at 6; and it "will not elicit testimony from Kernkraut . . . that CUC's membership numbers and membership renewal rates were overstated," Opp'n at 7. The government's concessions include the repeated caveat that it will not elicit this improper testimony "on direct examination." Opp'n at 4, 6, 7. The testimony would violate the Federal Rules of Evidence if elicited on direct or re-redirect examination,[1] and Mr. Forbes is entitled to an order precluding the testimony, not simply the government's concessions. See Opp'n at 3.[2]

As set forth in the opening memorandum, testimony by Mr. Kernkraut that Mr. Forbes supposedly "knew" CUC's membership numbers and renewal rates would violate Rule 701. See United States v. Rea, 958 F.2d 1206, 1216 (2d Cir. 1992). The government does not address Rea and it appears to concede that such testimony would be improper. "Forbes contends

---

[1] If the government nevertheless intends to elicit such testimony on re-direct examination, it should provide advance notice to the Court and to counsel.

[2] The government suggests, as it did in the second trial, that Mr. Kernkraut's admittedly improper testimony was harmless. See Opp'n at 2 ("Forbes has not disputed . . . that CUC had fraudulently overstated its publicly reported earnings"). There was a substantial dispute (and no concession) regarding the alleged fraud in the pre-1995 era. Mr. Kernkraut testified (purportedly based on his review of the Restatement) to the supposed "fact" that CUC misstated its financial results for the years 1992-97, although the Restatement covered only the years 1995-97. See Mot. Preclude Improper Testimony by Kernkraut (Forbes Third Trial Mot. *In Limine* No. 3). There is no credible evidence (and no expert testimony) that CUC's SEC filings were false before Mr. Corigliano became CFO in 1995. Kernkraut also erroneously and improperly testified to the "fact" that the fraud included false membership numbers and renewal rates, despite the fact that there was no evidence and no allegation that those operational numbers were false.

- 2 -

that Kernkraut cannot testify about what Forbes 'knew' about CUC's membership numbers and renewal rates because Kernkraut is not a 'mind reader.' FM 14 Fair enough." Opp'n at 13.[3]

Although the government agrees with most of this motion *in limine*, it contends that it should be permitted to offer testimony "about what Forbes told Kernkraut about CUC's publicly reported membership numbers and renewal rates." Opp'n at 13. Such testimony should be excluded under Rules 401 & 403. Indeed, the government's own confused arguments in its opposition brief illustrate that this evidence is likely to mislead or confuse the jury. In addition, the Court should preclude Mr. Kernkraut from offering speculation in response to hypothetical questions about what he would have done differently had CUC contemporaneously reported lower financial results.[4]

    1.    <u>Mr. Kernkraut cannot testify about what Mr. Forbes allegedly told him about CUC's membership numbers and renewal rates</u>. This evidence is not relevant to Mr. Forbes' alleged "knowledge of the charged fraud," Opp'n at 8, because, as the government concedes, the indictment does not allege that the membership numbers or the membership renewal rates were overstated. See Opp'n at 9, 12. Not only is there no allegation in the indictment that those figures were overstated, but there is no evidence that those numbers were overstated. See Tr. (12/08/05) at 3,801. Indeed, the only person who has ever claimed that those numbers were overstated is Mr. Kernkraut, whom the government concedes lacks personal knowledge. See Opp'n at 14 n.9.

---

[3] The government claims that Mr. Forbes elicited testimony from Mr. Kernkraut about "Forbes' thoughts, knowledge and state of mind." Opp'n at 6 n.4. The testimony quoted by the government, however, was not about what was inside Mr. Forbes' head, it was based on things that Mr. Kernkraut <u>observed</u> Mr. Forbes <u>do</u> and <u>express</u>. In any event, the government did not object to the testimony.

[4] This motion is not governed by the standards for reconsideration or law of the case. See Reply Supp. Forbes Third Trial Mot. *In Limine* No. 9 (filed June 15, 2006).

Nor is the evidence relevant or probative of Mr. Forbes' alleged knowledge of CUC's "past financial performance." Opp'n at 8. The membership numbers and renewal rates are operational numbers, not financial numbers. This is a critical distinction that the government simply ignores. The alleged accounting irregularities charged in the indictment that supposedly resulted in false financial statements in SEC filings involve accrual-based GAAP accounting. See Mot. Preclude Improper Testimony by Kernkraut at 16 (Forbes Third Trial Mot. *In Limine* No. 3). In contrast, membership numbers and renewal rates do not involve GAAP accounting and one does not need a CPA to determine those figures.

Furthermore, although Mr. Forbes was a visionary, he has not raised a "defense" that he was unconcerned with CUC's past performance, as the government suggests. See Opp'n at 8. Discussing reported financial and operational results with Wall Street was part of Mr. Forbes' job, as he testified. See Tr. (11/14/05) at 2,711 ("We were a public company, so I continued to talk to Wall Street."). Mr. Forbes has never asserted that he could not discuss the numbers provided to him by the accounting department; he just did not know that those numbers were allegedly false. Mr. Forbes' "defense" is not that he was ignorant of the reported financial results, but that he had no knowledge of the fraud. Evidence purporting to show that Mr. Forbes had knowledge of operational numbers that are not alleged to be false has no probative value. It does not "rebut" anything and does not show that Mr. Forbes was "detail-oriented." Opp'n at 8.

Any minimal probative value arising from Mr. Kernkraut's allegation that Mr. Forbes discussed what CUC had accurately reported about its membership numbers and renewal rates is substantially outweighed by the danger of confusion of the issues and misleading the jury. In his opening memorandum, Mr. Forbes explained that:

> Testimony about discussions involving membership numbers and renewal rates is likely to confuse the jury because there is an

>allegation in the indictment that membership <u>cancellation reserves</u> were underfunded, <u>see</u> Redacted Indict. ¶¶ 44-48, a totally separate issue, and in the second trial, Mr. Corigliano often testified in short-hand about this allegation as the "membership accounting" issue. Tr. (10/31/05) at 1381; Tr. (11/01/05) at 1486-93. There is a real risk that the jury will confuse these similar sounding, but different, issues.

Mot. Preclude Improper Testimony by Kernkraut at 15-16 (Forbes Third Trial Mot. *In Limine* No. 3).[5]

Proving Mr. Forbes' point, the government's opposition brief conflates these issues. <u>See</u> Opp'n at 10-11. The allegation in the indictment is that the alleged "conspirators intentionally underfunded this membership <u>cancellation reserve</u>, thereby fraudulently increasing earnings." Redacted Indict. ¶ 46 (emphasis added). The membership cancellation reserve is an estimated contingent liability that is determined based on GAAP. Although "cancellation rates" are part of the reserve analysis, these cancellation rates are not the same as the company's membership renewal rates, discussed by Mr. Kernkraut. The company's various cancellation rates and renewal rates measured different items, and there was no simple mathematical or logical relationship between them; therefore, even if Mr. Forbes knew the membership numbers and membership renewal rates, that would not have made it any more likely that he would have known that the membership cancellation reserve was allegedly underfunded. The fact that the government seeks to confuse the two separate issues (and to confuse them with the issue of an understated cancellation reserve) underscores the fact that evidence of Mr. Forbes' discussions of renewal rates is likely to confuse or mislead the jury.

---

[5]  The government takes on a straw man when it argues that the evidence is not "shocking" or likely to evoke an "emotional" reaction. Opp'n at 15. The point here is that the evidence is confusing and misleading, which are other bases for exclusion under Fed. R. Evid. 403.

If the Court nevertheless permits testimony that Mr. Forbes discussed membership numbers and renewal rates with Mr. Kernkraut, Mr. Forbes respectfully requests that the Court issue a contemporaneous limiting instruction similar to that issued in the second trial at the close of the evidence. See Tr. (12/08/05) at 3,801 ("There is no evidence at all that the membership numbers reported by CUC or Cendant were false or inflated in any respect, and there is no evidence at all that the membership renewal rates reported by CUC or Cendant were false or inflated in any [respect] and I instruct you that there is no issue in the case with respect to those matters.").

2.  **Mr. Kernkraut cannot speculate about what he would have done had CUC contemporaneously reported lower financial results.** See Mot. Preclude Improper Testimony by Kernkraut at 8 n.4 (Forbes Third Trial Mot. *In Limine* No. 3) (citing Tr. (10/18/05) at 215, 217, 218, 229-30, 338-39). The government argues that "[t]his Court should reject that claim, as did Judge Thompson." Opp'n at 5. The government misstates the record. Although Judge Thompson contemporaneously denied objections (as he did with most contemporaneous objections to Mr. Kernkraut's now admittedly improper testimony), he ultimately struck all of the speculative testimony at the cited pages. See Tr. (11/28/05) at 44 (striking testimony at Tr. (10/18/05) at 215:15-218:13, 228:23-232:23, 336:01-339:09).

This Court should preclude a repeat performance because such testimony violates Rules 401, 403, 602 and 701. As the government previously conceded regarding Mr. Forbes' objections to this same testimony, Mr. "Forbes is correct that lay witnesses generally should not testify in the form of a hypothetical opinion." Opp'n Mot. Mistrial Based on Testimony of Kernkraut at 12 [Docket No. 1913].

## CONCLUSION

For the reasons set forth above and in the opening memorandum, Mr. Forbes respectfully requests that the Court grant this motion.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Reply Memorandum in Support of Motion of Defendant Walter A. Forbes to Preclude Improper Testimony by Steven Kernkraut (Forbes Third Trial Motion *In Limine* No. 3) to be filed electronically and to be served on June 15, 2006 to the following via e-mail:

Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

_____
Barry S. Simon