UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | No. 3:02CR264 (AHN) |
| ) | |
| WALTER A. FORBES ) | August 16, 2006 |
| ) | **(UNDER SEAL)** |

**SUPPLEMENTAL (POST-*EBBERS*) MEMORANDUM IN FURTHER
SUPPORT OF MOTION OF WALTER A. FORBES FOR AN ORDER
REQUIRING THE GOVERNMENT TO CONFER USE IMMUNITY ON
STUART BELL
(Forbes Third Trial Motion No. 3) (FILED UNDER SEAL)**

Walter A. Forbes, through undersigned counsel, respectfully submits this supplemental memorandum to address the Second Circuit's recent (post-argument) decision in United States v. Ebbers, __ F.3d __, 2006 WL 2106634 (2d Cir. July 28, 2006), and the non-published case of United States v. Rodriguez, No. 05-4412, slip op (2d Cir. June 27, 2006), brought to the parties' attention by the Court during oral argument, see Tr. (07/27/06) at 5-6.

Ebbers makes clear that contrary to the government's argument that the issue of defense witness immunity is "moribund" in the Second Circuit, Opp'n at 2, it is a very live doctrine, and the analysis of Ebbers in fact supports this motion. Rodriguez is easily distinguishable because, in that case, no government witness was immunized.

**ARGUMENT**

Because "the ability to give immunity to one witness but not another is a potentially powerful tool for a prosecutor," there are "limits on the government's use of immunity." Ebbers, 2006 WL 2106634, at *7. There is a "three-part test for requiring the government to grant defense witness immunity at the risk of dismissal of the indictment." United States v. Bahadar, 954 F.2d 821, 826 (2d Cir. 1992).

> First, the district court must find that the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the fifth amendment. Second, the witness's testimony must be "material, exculpatory, and not cumulative". Third, the testimony must be unobtainable from any other source.

Id. The Second Circuit in Ebbers confirmed that the exclusion of evidence is another appropriate sanction for the government's refusal to immunize a defense witness. See Ebbers, 2006 WL 2106634, at *8 ("In addition, a court may order the prosecution to choose between forgoing the testimony of an immunized government witness or granting use immunity to potential defense witnesses."). Mr. Forbes seeks an even lesser version of the sanction recognized as an alternative to dismissal. Rather than seek the exclusion of all testimony by Cosmo Corigliano, Kevin Kearney, and the other immunized government witnesses, Mr. Forbes seeks only the exclusion of testimony regarding the alleged involvement of Stuart Bell in alleged unlawful conduct.

The Court should order the government to confer use immunity on Mr. Bell or face the sanction of dismissal, or the sanction of excluding all evidence relating to alleged unlawful conduct by Mr. Bell because there is no dispute that Mr. Bell's testimony is unobtainable from any other source, see Reply at 7, and because Mr. Forbes has also satisfied the first two parts of the test as clarified by Ebbers.

### 1. The Government Has Engaged in the Discriminatory Use of Immunity And/Or Manipulation.

Contrary to the government's suggestion that Mr. Forbes must demonstrate that the government forced Mr. Bell to invoke his privilege through its own overreaching, see Opp'n at 8-9, 9-10, Ebbers holds that there are three alternative ways to satisfy the first prong of the test. A defendant can show either that the government has (i) "used immunity in a discriminatory way," (ii) "forced a potential witness to invoke the Fifth Amendment through

- 2 -

overreaching" "<u>or</u>" (iii) "deliberately denied immunity for the purpose of withholding exculpatory evidence and gaining a tactical advantage through such manipulation." Ebbers, 2006 WL 2106634, at *8 (emphasis added & quotations omitted). "The 'manipulation' standard overlaps to a degree with the discrimination test but involves an express finding of a tactical purpose on the government's part." Id. Mr. Forbes has satisfied the first standard (discrimination) and the third standard (manipulation).

<u>Discrimination.</u> The government has used immunity in a discriminatory way. The Second Circuit in Ebbers again explicitly left open the question of whether the discriminatory use of immunity is "no more than a decision . . . to confer immunity on some witnesses and not on others." Id. (quotation omitted & ellipse in Ebbers).

If that is the standard, Mr. Forbes has satisfied the first prong because the government has conferred immunity on some witnesses, but refuses to confer immunity on Mr. Bell.[1] The government incorrectly contends that only grants of statutory immunity pursuant to 18 U.S.C. § 6002 are relevant to the question of whether the government has conferred immunity on some witnesses and not others. See Tr. (07/27/06) at 62 ("[N]o witness was given the kind of immunity that Mr. Forbes is asking for this witness. Full immunity under Section 602 [sic]. Nobody got that. What people got was three cooperating witnesses got partial immunity after pleading guilty . . . .").[2] Immunity for purposes of this standard is not limited to statutory grants, but extends to witnesses who plead guilty to some crimes in exchange for a reduced sentence and

---

[1] United States v. Rodriguez, No. 05-4412, slip op (2d Cir. June 27, 2006), brought to the parties' attention by the Court during oral argument, see Tr. (07/27/06) at 5-6, is distinguishable. In that case, the government plainly did not engage in the discriminatory use of immunity, because it did not grant immunity to <u>any</u> witness. See Rodriguez, slip op at 3.

[2] "Full immunity" under § 6002 is a misnomer because that statute provides only for use and derivative use immunity, not transactional immunity from prosecution.

contractual immunity for other crimes. Indeed, in Ebbers, the Court discussed whether the government had engaged in the discriminatory use of immunity by granting immunity to, among others, three witnesses who pled guilty and received jail sentences and a fourth who pled guilty but was not incarcerated. See Ebbers, 2006 WL 2106634, at *9. Those particular witnesses did not receive statutory immunity under § 6002, but received contractual grants of immunity like those in the present case. See Brief of United States at 37-38, United States v. Ebbers (No. 05-4059).[3]

Even if something more than selective grants of immunity is required to satisfy the discrimination test, the test is satisfied here because the government has no interest in investigating or prosecuting Mr. Bell. Although Ebbers suggested that the judiciary cannot intervene when selective grants of immunity are "obviously based on legitimate law enforcement concerns-e.g., granting immunity to a witness who has pleaded guilty and has been sentenced to substantial jail time while denying it to a principal target of the ongoing criminal investigation," 2006 WL 2106634, at *8 (emphasis added), the government has advanced no such concern here. Nor could it. The government has agreed not to prosecute witnesses who did not plead guilty (Mr. Kearney and Steven Speaks, see Mot. at 9-10) and there is no ongoing investigation of which Mr. Bell is a target, more than eleven years after Mr. Bell left his job as Chief Financial Officer ("CFO"), more than eight years after the public disclosure of accounting irregularities at CUC, and more than six years after Mr. Corigliano claimed to the government that Mr. Bell participated in the alleged fraud. Indeed, in response to argument by defense counsel that the government has no interest in prosecuting Mr. Bell and that the government never represented that Mr. Bell was even a subject of an ongoing investigation, the government did not claim that it

---

[3] Another witness in Ebbers did receive statutory immunity. See id.

was withholding immunity because of an interest in prosecuting Mr. Bell.[4] Rather, the government stated that "the interest the government has is that it should not immunize someone when it has no idea what they're going to say because he's refused to come in and tell us what he's going to say." Tr. (07/27/06) at 67.[5] Whatever the precise boundaries of the discrimination standard, surely it encompasses granting immunity only to those witnesses who will say what the government wants to hear.

Manipulation. The first part of the test also is satisfied because the government deliberately has denied immunity for the purpose of withholding exculpatory evidence and gaining a tactical advantage. The government has made the allegations about Mr. Bell a centerpiece of its case, see, e.g., Tr. (12/05/05) at 3,557 ("What an unfortunate coincidence for the defendant. Not just one but two corrupt CFOs when he was head of the company."); Opp'n at 19 n.6 (characterizing the "'Bell era' fraud" as "[r]elevant and compelling evidence of Forbes' guilt"), and has offered alleged co-conspirator statements of Mr. Bell, see Mot. at 5-6; Mr. Bell would refute those allegations; and the government has withheld immunity not because it intends to prosecute Mr. Bell, but because Mr. Bell does not support its theory of the case. See Reply at 4-5. If the government thought for one moment that Mr. Bell would testify that an alleged fraud started when he was CFO, the government would not be opposed to letting the jury hear his testimony. Because the government knows that this is not the case, it prefers his silence.

---

[4]   In contrast, the government in Ebbers represented that the non-immunized defense witnesses were targets or subjects of the government's investigation. See Brief of United States at 43, United States v. Ebbers (No. 05-4059).

[5]   The suggestion that Mr. Bell might appear and claim that he was solely responsible for an alleged fraud that supposedly lasted until 1998, see id. at 67-68, despite the fact that he was not at CUC after 1995 when Mr. Corigliano became CFO, is preposterous. It demonstrates the lengths to which the government will go to prevent the jury from hearing Mr. Bell's testimony.

Accordingly, this case is unlike Ebbers, where the proposed witnesses were "necessarily legitimate targets of the investigation" and there was "no evidence" of "the manipulation of immunity expressly for tactical reasons." Ebbers, 2006 WL 2106634, at *9. Here, Mr. Bell is not a target of any investigation and there is strong circumstantial evidence of manipulation, including the government's own statements and omissions regarding its reasons for withholding immunity and its lack of interest in prosecuting Mr. Bell.[6]

### 2. Mr. Bell's Testimony Would Be Material, Exculpatory, and Not Cumulative.

The Second Circuit has clarified that this part of the test is satisfied if "the non-immunized witness's testimony would materially alter the total mix of evidence before the jury." Id. at *8. Mr. Bell's testimony easily meets this standard because it would deal a fatal blow to the two-CFO theory, a critical part of the government's case.

In contrast, the proffered testimony in Ebbers related to isolated matters that did not go to the heart of the government's case. For example, some of the proffered testimony related to matters that were not in issue at all, id. at *9 (testimony that reserve release was proper would not alter total mix because propriety of release was not the issue), and some was immaterial impeachment at most. Id. at *11 (Scott's testimony regarding change to monthly revenue reports "would have differed only as to which quarter she might have asked Taranto to correct the corporate unallocated items"). Some of the proffered testimony in Ebbers would have been "devastatingly refuted" by documents authored by the proposed defense witness, id. at *9; whereas there are no such documents authored by Mr. Bell. Some of the proffered testimony

---

[6] The only conceivable reason that the government did not prosecute Mr. Bell is that the evidence of fraud during Mr. Bell's tenure as CFO is weak. By leaving him out of the case, the government eliminated Mr. Bell's interest in testifying and refuting the government's allegations. This is precisely the type of tactical manipulation prohibited by the Due Process Clause.

in Ebbers was from witnesses who were not in a position to know the relevant facts. Id. at *11 ("Because Lomenzo was not directly involved in the program, his (self-serving) testimony about his understanding of its purpose would have had little, if any, probative value regarding its actual purpose"). Mr. Bell is the witness most qualified to testify about CUC's financial reporting when he was the CFO and about his supposed conversations with Messrs. Corigliano and Kearney.

In this case, the government twice has been unable to convince a jury that Mr. Forbes committed any crime even when permitted to present a one-sided and distorted picture of Mr. Bell's tenure as CFO. Not only would Mr. Bell's testimony materially alter the total mix of the evidence, it likely would result in an acquittal.

### 3. The Court Should Determine the Propriety of Mr. Bell's Invocation, and Order Him to Testify if the Court Concludes that He Has No Reasonable Fear of Prosecution.

The government continues to suggest that Mr. Bell does not have a valid Fifth Amendment privilege. See, e.g., Tr. (07/27/06) at 64. Defense counsel previously offered to make a complete record if there was any question about the validity of Mr. Bell's assertion of the privilege, but the Court decided to rest its decision solely on the first prong of the three-part test for defense witness immunity and said that no further record was necessary. See Tr. (11/14/05) at 2,643-44. Mr. Forbes agrees with the government that the Court should determine whether Mr. Bell has a valid Fifth Amendment privilege. Irrespective of whether the three-part test for defense witness immunity is satisfied, Mr. Forbes has a Sixth Amendment right to Mr. Bell's testimony if Mr. Bell has no valid privilege.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (ct17115)
Barry S. Simon (ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (ct05103)
Thomas J. Murphy (ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

- 8 -