UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 3:02CR264 (AHN) |
| | ) | |
| WALTER A. FORBES | ) | September 8, 2006 |
| | ) | |

**OBJECTIONS OF WALTER A. FORBES TO THE GOVERNMENT'S
PRELIMINARY PROPOSED SUPPLEMENTAL JURY INSTRUCTIONS
FOR THE THIRD TRIAL (PART I)**

Walter A. Forbes, through undersigned counsel, respectfully submits Part I of his

objections to the government's preliminary proposed supplemental jury instructions for the third

trial.

**ARGUMENT**

**I.    THE COURT SHOULD PROVIDE AN INFORMAL IMMUNITY INSTRUCTION
REGARDING KEVIN KEARNEY AS IT DID IN THE FIRST TWO TRIALS.**

Mr. Forbes objects to the inclusion of the government's proposed instruction on

"Witness Testifying Pursuant to a Proffer Agreement" in lieu of an instruction on "Informal

Immunity of Government Witness" with respect to Kevin Kearney.  The government promised

Mr. Kearney that it would not prosecute him despite his admitted criminal conduct.  See, e.g., Tr.

(08/05/04) at 9881-82.  Because Mr. Kearney has received such informal immunity, the Court

gave an "informal immunity" charge in the first two trials, instructing the jury that Mr.

Kearney's testimony should be scrutinized because he has a motive to lie.  See Tr. (11/04/2004)

at 16414-15; Tr. (12/08/05) at 3811-12.  The government's statements that it "has never granted

informal immunity to Kearney" and that the informal immunity instruction was based on "a

mistaken assumption of Judge Thompson that the Government inadvertently failed to correct

during the second trial," Gov't Proposed Supplemental Instructions, at 2 [Docket No. 2372]

(emphasis added), are not accurate.

As the lengthy chronology below illustrates, the government in fact promised Mr.

Kearney that he would not be prosecuted and, over the course of two trials, the government

repeatedly agreed and requested that an informal immunity charge be given with respect to Mr.

Kearney.[1]

- During the course of its investigation, the government agreed not to prosecute Mr. Kearney and he agreed to cooperate with the government. See, e.g., DX 1610, at SEC0092 (Kearney Wells Submission) ("It should be noted, moreover, that at no time did the U.S. Attorney's Office condition its own agreement with Kearney upon his simultaneous willingness to cooperate with the [SEC]." (emphasis added)). As part of his cooperation, Mr. Kearney has met with the government on more than fifteen occasions and has testified in two trials about his own criminal conduct. See, e.g., Tr. (08/05/04) at 9862.

- During the first trial, on June 30, 2004, Mr. Forbes proposed an informal immunity charge with respect to Mr. Kearney. Preliminary Proposed Jury Instruction No. 18 [Docket No. 586].

- On August 5, 2004, Mr. Kearney testified that the government agreed not to prosecute him despite his admitted criminal conduct. Tr. (08/05/04) at 9881 ("Q. And then eventually, I gather, in connection with these meetings there was a decision that you would not be prosecuted; am I correct? A. Correct.").

- On October 8, 2004, the government filed its Response to Preliminary Proposed Jury Instructions [Docket No. 814], stating that it "joins in Forbes' request (after removal of the name Mary Sattler) and asks that this [informal immunity] instruction be given." Id. at 6. The government did not ask that Mr. Kearney's name be removed.

- On October 15, 2004, the Court and the parties discussed the informal immunity instruction at the charge conference. The government asked to delete a particular sentence from the Court's draft charge and Mr. Forbes agreed. Tr. (10/15/04) at 14711. The government did not ask that Mr. Kearney's name be removed.

---

[1]    Notably, the prosecutors and agents who have first hand knowledge of the informal immunity agreement with Mr. Kearney are no longer part of the prosecution team. That former government team agreed to the informal immunity instruction regarding Mr. Kearney.

- On the joint request of the defendants and the government in the first trial, the Court gave an informal immunity instruction that named Kevin Kearney specifically.  Tr. (11/04/2004) at 16414-15 ("I next want to talk with you about informal immunity of government witnesses. You have heard the testimony of witnesses Kevin Kearney and Steven Speaks who have been promised by the government that in exchange for their testimony they will not be prosecuted for any crimes they may have admitted either here in court or in interviews with the government.").

- During the second trial, on October 25, 2005, <u>the government requested that the Court give an informal immunity instruction regarding Kevin Kearney</u>.  United States' Preliminary Requests to Charge for Retrial No. 59 [Docket No. 1889] ("You have heard the testimony of witnesses Kevin Kearney and Steven Speaks, who have been promised by the government that, in exchange for their testimony, they will not be prosecuted for any crimes they may have admitted either here in court or in interviews with the government.").

- On November 15, 2005, the government's Preliminary Requests to Charge were re-filed with the proposed informal immunity instruction for Kevin Kearney.  United States' Preliminary Requests to Charge for Retrial No. 59 [Docket No. 1986] ("You have heard the testimony of witnesses Kevin Kearney and Steven Speaks, who have been promised by the government that, in exchange for their testimony, they will not be prosecuted for any crimes they may have admitted either here in court or in interviews with the government.").

- On November 15, 2005, Mr. Forbes requested a similar instruction regarding Mr. Kearney.  Preliminary Proposed Jury Instruction No. 18 [Docket No. 1988].

- On November 21, 2005, the government again agreed that an informal immunity charge was appropriate with respect to Mr. Kearney.  United States Response to Preliminary Proposed Jury Instruction No. 18 [Docket No. 1999] ("This instruction appears to be substantially similar to the Government's Preliminary Request to Charge for Retrial No. 59.  The Government has no objection to either version being given, but Mr. Speaks' name should be omitted if the Government's version is given, because he did not testify during the retrial.").

- On November 29, 2005, Mr. Forbes filed a written preservation of objections to any closing argument that Mr. Kearney was a disinterested witness who had no motive to lie.  <u>See</u> Docket No. 2010, at 7.

- On December 5, 2005, Mr. Forbes filed a written objection to the government's improper rebuttal summation that Mr. Kearney had no motive to lie.  <u>See</u> Docket No. 2017, at 3.

- On December 6, 2005, <u>the Court stated that it would have sustained a contemporaneous objection to the government's summation because Mr. Kearney, who had received informal immunity, did have a motive to lie</u>.  But the Court

believed that the instruction on informal immunity would cure the prejudice. Tr. (12/06/05) at 3676-77 ("But I think if an objection had been made, I would have sustained the objection based on the fact that I am going to give an instruction about the way the jury should evaluate the testimony of witnesses who have been given immunity. But given the fact that I'm going to give that instruction to the jury, I think that will be sufficient, especially since an objection should have been made."). The Court emphasized the fact that the instruction identified only Mr. Kearney as a witness who had received informal immunity, as support for the conclusion that the final charge would cure the prejudice. Id. at 3678 ("Just so we're clear, it's informal immunity of government witness and it's only about Kevin Kearney. And I think that will be more than sufficient to address the issue in a fair way to proceed."). At no point did the government suggest that Mr. Kearney had not in fact received informal immunity or that the proposed charge should not be given.

- The Court gave an informal immunity instruction in the second trial that was virtually identical to the charge in the first trial. The charge identified only one testifying witness who had received informal immunity, Mr. Kearney. Tr. (12/08/05) at 3811-12 ("Next I want to talk with you about informal immunity of a government witness. You heard the testimony of Kevin Kearney, who has been promised by the government that, in exchange for his testimony, he will not be prosecuted for any crimes he may have admitted either here in court or in interviews with the government.").

Because the government promised Mr. Kearney that he would not be prosecuted and, over the course of two trials, repeatedly agreed and requested that an informal immunity charge be given with respect to Mr. Kearney, the Court should give the same charge again. The government's suggestion that its misleading redirect examination of Mr. Kearney somehow changes the fact that he received informal immunity is incorrect. See Gov't Proposed Supplemental Instructions, at 2 [Docket No. 2372]. It is true that Mr. Kearney "never pled guilty to any crimes"; it appears to be true that he did not enter into a "written cooperation agreement"; and it may be literally true that he was not testifying in "the hopes of receiving anything in return." Tr. (10/26/05) at 1193-94 (emphasis added) (quotations are from government's leading questions). The complete truth, however, is that Mr. Kearney already had received a significant benefit—an oral promise of non-prosecution in exchange for his cooperation—and it is this circumstance that created the motive to fabricate.

- 4 -

II.    **MR. FORBES WILL OBJECT TO A CONSCIOUS AVOIDANCE INSTRUCTION IF THE GOVERNMENT ULTIMATELY PROPOSES ONE.**

The government did not seek a conscious avoidance charge in the second trial and represented that it would not seek a conscious avoidance charge in this third trial. See Tr. (03/23/06) at 15 ("We won't ask for a willful blindness or conscious avoidance instruction."). The government now states that it "wishes to reserve the right to seek a conscious avoidance instruction in the third trial, and may request such an instruction if the evidence supports such an instruction." Docket No. 2443, at 1. If the government ultimately requests a conscious avoidance instruction, Mr. Forbes will submit his objections to any such instruction, including objections to the proposed language, at that time. He writes now, however, to note the following points.

First, the government's brief appears to collapse the two elements of the evidentiary basis required for a conscious avoidance charge. As the government recognizes, the threshold predicate for a conscious avoidance charge is that "a defendant asserts the lack of some specific aspect of knowledge required for conviction." United States v. Nektalov, __ F.3d __, No. 05-2780, 2006 WL 2458622, at *3 (2d Cir. Aug. 25, 2006). If that predicate is satisfied, a charge is proper only when the evidence supports findings beyond a reasonable doubt that: (1) the defendant was aware of a high probability of the fact in dispute; and (2) to avoid prosecution he consciously avoided confirming that fact. See, e.g., United States v. Ferrarini, 219 F.3d 145, 154 (2d Cir. 2000); United States v. Rodriguez, 983 F.2d 455, 458 (2d Cir. 1993). The second component of conscious avoidance—"that the defendant must be shown to have decided not to learn the key fact, not merely to have failed to learn it through negligence"—is "essential to the concept of conscious avoidance." Rodriguez, 983 F.2d at 458; see also United States v. Baron, 94 F.3d 1312, 1318 (9th Cir. 1996) ("[E]vidence of negligence or recklessness

- 5 -

concerning such a risk is simply insufficient to justify a [conscious avoidance] instruction."); United States v. Giovannetti, 919 F.2d 1223, 1228 (7th Cir. 1990) (charge improper because "Janis failed to display curiosity, but he did nothing to prevent the truth from being communicated to him. He did not <u>act</u> to avoid learning the truth.").

Second, "a conscious avoidance instruction is not appropriate where the only evidence alerting a defendant to the high probability of criminal activity is direct evidence of the illegality itself—that is, when the evidence is that the defendant had either actual knowledge or no knowledge at all of the facts in question." Nektalov, 2006 WL 2458622, at *5.

Third, no matter what the evidence in this case, a jury instruction on conscious avoidance would constitute a constructive amendment of the indictment and/or a prejudicial variance. The indictment unequivocally and repeatedly alleges that Mr. Forbes <u>directed</u> the alleged fraud and <u>directed</u> the improper accounting that constituted the alleged fraud. See, e.g., Redacted Indict., Count 1 ¶ 24 ("If the consolidated quarterly earnings failed to meet the earnings target, defendant FORBES <u>directed</u> other conspirators to increase the earnings figure so that it met or exceeded that target (emphasis added)); <u>id.</u> ¶ 27 ("defendant WALTER A. FORBES <u>directed</u> other conspirators to increase the consolidated earnings figures for that quarter and the fiscal year by the amounts necessary to meet or exceed their respective earnings targets for that quarter and fiscal year" (emphasis added)). Conscious avoidance is irreconcilable with knowing direction. The indictment also alleges actual knowledge of improper accounting on the part of Mr. Forbes and active participation in improper accounting by Mr. Forbes—not willful blindness. See, e.g., id. ¶ 47 ("As the defendant <u>knew</u>, there was no justification in fact, or under GAAP, for his treatment of this membership cancellation reserve." (emphasis added)); <u>id.</u> ¶ 51 ("defendant WALTER A. FORBES and his co-conspirators <u>deliberately misallocated</u> revenue

generated from deferred recognition programs to immediate recognition programs" (emphasis added)); id. ¶ 52 ("As the defendant <u>knew</u>, there was no justification in fact or under GAAP for the misallocations set forth in paragraph 51" (emphasis added)).  Conscious avoidance is fundamentally inconsistent with active, knowing, intentional participation in accounting manipulations, as alleged in the indictment.  Consequently, any instruction on that subject would constitute a constructive amendment and/or a prejudicial variance.

Fourth, although conscious avoidance instructions have been approved by the Second Circuit, such an instruction would impermissibly dilute the <u>mens rea</u> element of conspiracy, securities fraud, and false statements, which require the government to prove beyond a reasonable doubt that the defendant acted knowingly, willfully and with specific intent to defraud.  Conscious avoidance is not a substitute for these required mental states.

## CONCLUSION

For the reasons set forth above, Mr. Forbes respectfully objects to the government's preliminary proposed supplemental jury instructions for the third trial.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (ct17115)
Barry S. Simon (ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (ct05103)
Thomas J. Murphy (ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Objections of Walter A. Forbes to the

Government's Preliminary Proposed Supplemental Jury Instructions for the Third Trial (Part I)

to be filed electronically and to be served on September 8, 2006 to the following via e-mail:

Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)


Barry S. Simon