UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA    :

      v.    :    Criminal No. 3:02CR264(AHN)

WALTER A. FORBES    :

RULING ON PRETRIAL MOTIONS

On July 27, 2006, the court held oral argument on six pretrial motions filed by the defendant, Walter A. Forbes ("Forbes"). Substantially all of the issues raised in these motions were raised before or during the prior trials in this case and were decided by Judge Thompson. This court has carefully reviewed the parties' briefs and Judge Thompson's written and oral rulings. As a general matter, the court concludes that Forbes has presented no cogent or compelling reason why this court should deviate from Judge Thompson's carefully considered, legally sound, and correct decisions on these issues.

Nonetheless, the court will discuss the merits of each motion[1] and set forth its decision as to each one individually.

I. Forbes's Motion to Compel Discovery and Production (Third Trial Motion No. 2)

Forbes maintains that the government has not produced all

---

[1] Forbes's Third Trial Motion No. 3 is filed under seal and will not be addressed in this ruling. The motion is, however, denied for the reasons set forth in a separate ruling that will be filed under seal.

the impeachment material he is entitled to under Fed. R. Crim. P. 16, the Court's Standing Order, Brady, and Giglio, relating to government witnesses Cosmo Corigliano, Kevin Kearney, Casper Sabatino, Michael Monaco, Steven Kernkraut, Stuart Bell, and Kirk Shelton.  Forbes further asserts that there must be additional exculpatory material in the notes of government agents and attorneys that the government also has not produced.

Based on the voluminous record in this case, including Forbes's prior motions seeking the same documents (from the government as well as the individual witnesses) and asserting the same issues, claims, and arguments; the rulings and orders of Judge Thompson as well as this court; and the government's repeated representations that it is aware of and has complied with its disclosure obligations and its continuing duty to turn over all such material in its possession, the court is satisfied that the government has given Forbes all the material exculpatory and impeachment evidence that he is entitled to receive under Rule 16, the Court's Standing Order, Brady, and Giglio, and which the court has ruled Forbes may use at trial for impeachment purposes.  Indeed, the record reflects that the government has given Forbes, out of an abundance of caution as opposed to legal compulsion, far more discovery than any criminal defendant is entitled to receive.

For these reasons, as well as the reasons given by Judge

Thompson and this court in its July 25, 2006 ruling,[2] and because Forbes has made no new argument, claim, or request in the instant motion that convinces the court that he has not received all the discovery to which he is entitled, the motions to compel [doc. # 2189, 2192] are DENIED.

II. <u>Forbes's Motion to Preclude the Government From Referencing the Truth-Telling provisions of Corigliano's Plea Agreement & Presenting Him as Having Complied With the Obligations of His Plea Agreement (Third Trial Motion in Limine No. 1)</u>

In support of his motion to preclude the government from referencing the truth-telling provisions of Cosmo Corigliano's ("Corigliano") plea agreement and from portraying him as having complied with his obligations under that agreement, Forbes relies on his self-serving characterization of Corigliano's testimony as being riddled with lies, and on his claim that Corigliano breached his agreement in numerous respects by, <u>inter</u> <u>alia</u>, providing false, misleading, and incomplete testimony and incomplete and inaccurate financial information to the SEC. And Forbes argues that despite all this, the government has not "thrown his plea agreement out the window." According to Forbes, because the government has not enforced the truth-telling provisions of Corigliano's plea agreement, it would violate due process for the government to portray him as being in compliance

---

[2]This court previously rejected similar if not identical claims and arguments in its ruling on Forbes's motion to obtain, pursuant to Fed. R. Crim. P. 17(c), the same documents from individual witnesses, counsel for Cosmo Corigliano and his wife, the SEC, and Cendant Corp. See doc. # 2409.

with the agreement's terms.

The fundamental flaw in Forbes's claim is that, in Judge Thompson's words, it is based on a self-created fiction. Indeed, as Judge Thompson noted on numerous occasions, Forbes is the only one who believes that Corigliano has breached his plea agreement and testified falsely. For instance, Judge Thompson expressly noted that neither the USAO nor the SEC believe Corigliano breached his plea agreement and that despite the fact that Forbes had ample "opportunity to probe and try to demonstrate that Corigliano had not been living up to his [obligations under his plea agreement] . . . everything that came out showed that [Forbes's] contentions lacked merit." Moreover, Judge Thompson also stated that Forbes had failed to demonstrate that Corigliano gave perjured testimony at the prior trials.

In addition to Forbes's "self-created fictional" portrayal of Corigliano's testimony, his unilateral interpretation of Corigliano's plea agreement, and the total absence of factual support for the alleged breaches of that agreement, the relief Forbes seeks is contrary to settled law in this circuit. In fact, in circumstances such as this where the lack of credibility of a cooperating witness is central to the defense's strategy, the Second Circuit has expressly ruled, on numerous occasions, that the government may emphasize the truth-telling provisions of that witness's plea agreement. According to those cases, once a cooperating witness's credibility has been attacked, either in

defense counsel's opening statement or on cross-examination, the government may introduce the entire agreement into evidence to rehabilitate that witness.  See United States v. Smith, 778 F.2d 925, 928 (2d Cir. 1985).  And where, as here, defense counsel persistently attacks the credibility of a government witness, not only may the witness's plea agreement be admitted into evidence, the government is allowed to elicit testimony as to the "witness's understanding of what his agreement required - specifically to tell the truth."  United States v. Carr, 424 F.3d 213, 228 (2d Cir. 2005).  Indeed, in such circumstances, it would also be proper for the government to emphasize in summation that the cooperation agreement required its witness to "tell the truth" in order to gain any benefits with respect to sentencing.  See id.

Accordingly, Forbes's motion to preclude the government from referencing the truth-telling provisions of Corigliano's plea agreement and portraying him as having complied with his plea agreement [doc. # 2190] is DENIED.

III. Forbes's Motion to Preclude the Government from Presenting Evidence, Cross-Examination or Argument Concerning His Property Transfers (Third Trial Motion in Limine No. 2)

Forbes moves to exclude evidence, cross-examination, and argument concerning his transfer of four parcels of valuable real estate to his wife and daughters for nominal consideration.  According to Forbes, the approximate total value of this property is more than $25 million.  Two of the transfers took place in

June 1998, another in December 1998, and the fourth in December 1999.  He transferred the properties after the fraud was discovered in April 1998 and after he had been named as a defendant in a number of Cendant-related civil actions, but before he was a focus of the government's criminal investigation. Forbes maintains that the transfers are not evidence of consciousness of guilt.  The court disagrees.

Forbes's reliance on cases involving flight evidence as probative of consciousness of guilt and the chain of inferences required by those cases is misplaced.  Rather, the court finds the test for determining the admissibility of other, non-flight, consciousness of guilt evidence to be more appropriate.  Thus, as the Second Circuit has held, evidence of a party's consciousness of guilt is admissible "if the court (1) determines that it is offered for a purpose other than to prove the defendant's bad character or criminal propensity, (2) decides that the evidence is relevant and satisfies Rule 403, and (3) provides an appropriate instruction to the jury as to the limited purpose for which the evidence is introduced, if a limiting instruction is requested." United States v. Perez, 387 F.3d 201, 209 (2d Cir. 2004).  Despite Forbes's arguments to the contrary, there is nothing in the case law that suggests that a defendant must be indicted or know he is a focus of a criminal investigation for his actions to qualify as evidence of consciousness of guilt. Indeed, as one court observed, to be probative, the conduct must

have occurred after the alleged crime, but not necessarily on the heals of its commission.  See United States v. Foster, 309 F.2d 8 (4th Cir. 1962).

As Judge Thompson found, these property transfers are circumstantial evidence that is probative of whether Forbes had a consciousness of guilt, especially in light of the temporal relationship between them and the other events that were occurring at or about the same time, i.e., Forbes's interview with the Cendant Audit Committee in June 1998, his departure from Cendant in July 1998, the filing of the Cendant Audit Committee Report with the SEC in August 1998, Sabatino's guilty plea in June 1999, and Pember's guilty plea in September 1999.

Moreover, the court agrees with the government's argument that evidence of the transfers, and the financial risk Forbes took by divesting himself of millions of dollars worth of property, tends to prove that he sought to protect the property from the claims of persons who suffered pecuniary loss from the fraud.

The probative value of this evidence is not substantially outweighed by the danger of unfair prejudice or its potential to confuse the issues and mislead the jury.  The evidence does not place undue emphasis on his wealth, and there is no danger that the impact of the evidence would be to suggest that Forbes is a bad man.  There is simply no suggestion that the government is offering this evidence to prove his bad character or criminal

propensity.

For these reasons, Forbes's motion to exclude evidence of his property transfers [doc. # 2185] is DENIED.  The court will give an appropriate limiting instruction to the jury if one is requested.

IV. <u>Forbes's Motion to Preclude Improper Testimony By Steven Kernkraut (Third Trial Motion in Limine No. 3)</u>

Forbes moves to preclude the government from eliciting improper testimony from Steven Kernkraut, a Bear Stearns stock analyst who covered CUC and testified that he spoke to CUC's senior management 15 to 20 times a year as well as periodically with Forbes about CUC's business practices and financial results.

At the outset, the court notes that a substantial portion of this motion is moot in light of the government's representation that (1) Kernkraut will not offer lay opinion testimony regarding whether Forbes made misstatements to him about CUC's financial results and whether CUC's publicly reported financial results were false; (2) Kernkraut has no personal knowledge that CUC's earnings were overstated and thus will not testify on that subject on direct examination; and (3) it will not elicit any testimony from Kernkraut during his direct examination regarding CUC's inflated membership numbers and renewal rates.  In addition, the government will not be permitted to elicit any testimony from Kernkraut that is similar or identical to the testimony that was stricken by Judge Thompson.  And insofar as Forbes moves to preclude the government from presenting Kernkraut

as its opening "overview" witness, the motion is granted. See United States v. Garcia, 413 F.3d 201 (2d Cir. 2005).

However, Forbes's motion to exclude other portions of Kernkraut's testimony is denied. Kernkraut will be permitted to testify that he would have "changed his analysis" if he had known that CUC's reported financial results were fraudulent and how his analysis would have been different. This testimony is not based on speculation, but is a matter about which Kernkraut has personal knowledge and is relevant to prove that the fraudulently reported financial results were material.

Kernkraut will also be allowed to testify about what Forbes said to him about CUC's membership numbers and renewal rates to prove what Forbes knew about these numbers and rates. Kernkraut testified that he knew what CUC's reported membership numbers were from CUC's public SEC filings and thus he was in a position to compare what Forbes said to him about those numbers with the reported numbers and could therefore assess whether Forbes knew the reported numbers. Moreover, this evidence is not only relevant to prove Forbes's knowledge of the charged fraud, it is also admissible to rebut or impeach by contradiction Forbes's testimony that he was unaware of the accounting manipulations because he focused on long-term strategic matters and the future direction of CUC and did not concern himself with past financial performance. Kernkraut's testimony that Forbes was "up to date" about the "key drivers" of CUC's business also rebuts and

contradicts Forbes's testimony.

There is no merit to Forbes's contention that Kernkraut's testimony as to what Forbes knew about the membership numbers and renewal rates would constructively amend the indictment. Such testimony is within the core of criminality charged in the indictment and as such would not be a constructive amendment. See United States v. Jackson, 38 Fed. Appx. 59 (2d Cir. 2002).

Finally, the probative value of Kernkraut's testimony is not substantially outweighed by the alleged danger of confusing the issues and misleading the jury and thus is not precluded under Fed. R. Evid. 403.

Accordingly, for these reasons, the motion [doc. # 2253] is denied in part, denied in part as moot, and granted in part.

V. Forbes's Motion for Leave to Cross-Examine Corigliano Concerning the SEC (Third Trial Motion in Limine No. 4)

Forbes's moves to cross-examine Corigliano about his efforts to reach a settlement with the SEC with, inter alia, the contents of his Wells submission and statements contained in correspondence between his counsel and the SEC. The court agrees with all of the reasons Judge Thompson gave for not allowing this testimony and exhibits.

In particular, this evidence is not admissible because Corigliano cannot be impeached with his counsel's statements that he did not adopt. Nor can he be impeached by evidence of what his counsel did or said during settlement negotiations with the SEC or with decisions his counsel made with regard to those

negotiations. Moreover, much of the proposed questioning would intrude on matters protected by the attorney-client privilege. Finally, this questioning would be unnecessarily cumulative and concerns collateral or tangential issues.

For these reasons, the motion [doc. # 2273] is DENIED.

## CONCLUSION

For the foregoing reasons, Forbes's Third Trial Motion No. 2, Third Trial Motions in Limine No. 1, No. 2, and No. 4 [doc. ## 2189, 2192, 2190, 2185, and 2273] are DENIED. Forbes's Third Trial Motion in Limine No. 3 [doc. # 2253] is DENIED in part, DENIED in part as moot, and GRANTED in part. Forbes's Third Trial Motion No. 3 [doc. # 2191] is DENIED for the reasons set forth in a separate ruling to be filed under seal.

SO ORDERED this 21st day of September, 2006, at Bridgeport, Connecticut.

_____
Alan H. Nevas
United States District Judge