# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

———————————————————— )
)
**UNITED STATES OF AMERICA** )
) **No. 3:02CR264 (AHN)**
**v.** )
)
) **September 27, 2006**
**WALTER A. FORBES** )
)
———————————————————— )

## SUPPLEMENTAL MEMORANDUM OF DEFENDANT WALTER A. FORBES IN OPPOSITION TO GOVERNMENT'S PROPOSED SUPPLEMENTAL JURY INSTRUCTION CONCERNING KEVIN KEARNEY

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon  (Bar No. ct24159)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Oral Argument Requested                    Attorneys for Walter A. Forbes

## I.    KEVIN KEARNEY WAS NOT PROSECUTED FOR HIS CRIMES IN EXCHANGE FOR HIS COOPERATION WITH THE GOVERNMENT.[1]

Kevin Kearney is one of eight alleged co-conspirators in this case. He began his cooperation with the government in 1998. Tr. 10/25/05 (Ex. 1) at 1122-23. As of August 2004, Mr. Kearney had been interviewed by the government 15-20 times. Id. at 1123. Mr. Kearney testified for the government in both of Mr. Forbes' trials, and met with the government to prepare for his testimony. Tr. 8/5/04 (Ex. 2) at 9886-87; Tr. 10/26/05 (Ex. 3) at 1195.

Mr. Kearney has testified that, after the disclosure of accounting irregularities in April 1998, he initially lied about his participation in wrongdoing because he was scared. Tr. (8/5/04) (Ex. 2) at 9852. He subsequently began cooperating with the government. Tr. (10/25/05) (Ex. 1) at 1122-23. As part of his cooperation, he confessed to participating in significant criminal conduct. Mr. Kearney was a CPA who admitted to repeatedly making improper quarterly topside accounting adjustments at CUC, as well as to making other improper accounting entries.

Mr. Kearney was never charged with any crimes. It is not a mere coincidence that Mr. Kearney was never prosecuted despite repeatedly confessing to criminal conduct. After Mr. Kearney began cooperating with the government, he was told that he would <u>not</u> be prosecuted:

> Q.    Let me backtrack a little bit here. Just at the end of your testimony today you mentioned that you were concerned about your own situation back in 1998; am I correct?
>
> A.    Right.
>
> Q.    And then eventually, I gather, <u>in connection with these meetings [with the government] there was a decision that you would not be prosecuted; am I correct?</u>
>
> A.    <u>Correct.</u>

---

[1]    During argument on September 20, 2006, the Court granted the parties leave to file supplemental memoranda, not to exceed five pages, concerning the government's proposed change to the jury instruction concerning Mr. Kearney.

Q.    No doubt that was the happiest news you've ever received?

A.    Perhaps.

Q.    Perhaps?  I'll say.  It was good news, wasn't it?

A.    Yes.

Q.    About when were you told that you wouldn't be prosecuted?

A.    I was told I was not a target of the investigation pretty early on.

Q.    Do you remember the year, where in the cycle of interviews that that would have occurred?

A.    I believe it was, you know, in '98.

Tr. (8/5/04) (Ex. 2) at 9881-82 (emphasis added).

In May 2000, Mr. Kearney's lawyer, Robert Fettweis, wrote to the SEC seeking leniency for Mr. Kearney.  <u>Mr. Fettweis made clear that Mr. Kearney had an (unwritten) agreement with the U.S. Attorney's Office that he would not be prosecuted in exchange for his cooperation</u>:

> Throughout the negotiations on a possible settlement of the Commission's claim against Kearney, the [SEC] Staff has steadfastly maintained that its proposals do not and should not take into account Kearney's cooperation with the Government's investigation.  <u>That cooperation, the Staff has maintained, has been rewarded by the U.S. Attorney's Office in its decision not to prosecute Kearney.</u>
>
> * * * *
>
> It should be noted, moreover, that <u>at no time did the U.S. Attorney's Office condition its own agreement with Kearney</u> upon his simultaneous willingness to cooperate with the Commission. . . .  <u>His status as a non-target in the criminal investigation</u>, in other words, was not dependent in any way upon the nature and extent of his cooperation with the [SEC] Staff.
>
> * * * *
>
> When someone involved in criminal wrongdoing agrees to cooperate with the U.S. Attorney's Office, that Office necessarily demands that the cooperating individual be as frank and open as possible regarding his own participation in the criminality under investigation. . . . Usually, through the vehicle of a preliminary proffer or some other similar device, <u>the cooperating witness knows in advance what penalty he can expect in the criminal case.</u>

2

Kearney <u>Wells</u> submission (Ex. 4) at SEC0091-93 (emphasis added).  Thus, while Mr. Kearney's

agreement with the U.S. Attorney's Office did not extend to the SEC, Mr. Kearney and/or his

counsel were told by the U.S. Attorney's Office that Mr. Kearney would not be prosecuted in

exchange for his cooperation.[2]

The specific language used by the U.S. Attorney's Office in conveying to Mr. Kearney or

his counsel that Mr. Kearney would not be prosecuted in exchange for his cooperation is

irrelevant.  It does not matter whether Mr. Kearney was orally promised informal immunity in

exchange for his testimony or whether he was simply told or led to believe that he would not be

prosecuted.  As the Second Circuit stated in <u>Dubose v. Lefevre</u>, 619 F.2d 973 (2d Cir. 1980),

> The prosecution cannot, by keeping its promises of consideration to a witness general in
> language or tone, escape the fact that it gives the witness reason to believe that his or her
> testimony will lead to favorable treatment by the State.  <u>Unquestionably agreements in
> general terms to reward testimony by consideration create an incentive on the witness'
> part to testify favorably to the State</u> and the existence of such an understanding is
> important for purposes of impeachment.

<u>Id.</u> at 979 (emphasis added); <u>see also</u> <u>Brown v. Wainwright</u>, 785 F.2d 1457, 1464-65 (11th Cir.

1986) ("Certainly <u>Giglio</u> does not require that the word 'promise' is a word of art that must be

specifically employed. . . .  It is a constitution we deal with, not semantics.  The thrust of <u>Giglio</u>

and its progeny has been to ensure that the jury knows the facts that might motivate a witness in

giving testimony . . . .") (quotation & footnote omitted).  Indeed, the Second Circuit concluded in

<u>Dubose</u> that it was a violation of due process for the government to suggest that it had no

agreement with the witness when it had told her attorney that it would "do the right thing for her"

in exchange for her testimony.  619 F.2d at 978-79 (quotations omitted); <u>see also</u> <u>United States</u>

---

[2]    It does not matter whether the government made statements regarding leniency to
Mr. Kearney or to his counsel.  <u>See</u> <u>Hayes v. Brown</u>, 399 F.3d 972 (9th Cir. 2005) (en banc).

ex rel. Washington v. Vincent, 525 F.2d 262, 265 (2d Cir. 1975) (reversing conviction on due

process grounds where prosecutor had said he would "see what (he) could do to help" witness

and witness denied having an agreement with the prosecutor) (ellipsis in original).

## II.     THE GOVERNMENT'S PLEADINGS AND REQUESTS FOR AN INFORMAL IMMUNITY INSTRUCTION CONCERNING MR. KEARNEY ARE ADMISSIBLE AS A STATEMENT OF A PARTY OPPONENT.

In addition to Mr. Kearney's prior testimony and the statements of his counsel,

the government's prior pleadings and in-court representations consenting to and requesting an

informal immunity instruction concerning Mr. Kearney at two prior trials warrant giving the

same instruction at Mr. Forbes' third trial.  The government's prior pleadings and representations

to Judge Thompson are admissible as statements of a party-opponent.  The Second Circuit has

"recognized that the government's attorneys can bind the government with their in-court

statements and filings." United States v. Yildiz, 355 F.3d 80, 82 (2d Cir. 2004) (citing United

States v. Salerno, 937 F.2d 797, 810-12 (2d Cir. 1991), rev'd on other grounds, 505 U.S. 317

(1992), and United States v. GAF Corp., 928 F.2d 1253, 1258-62 (2d Cir. 1991)); see also United

States v. McKeon, 738 F.2d 26 (2d Cir. 1984).  Thus, irrespective of Mr. Kearney's and/or his

counsel's current claims, the government's prior representations on this subject constitute a

sufficient evidentiary basis for an informal immunity instruction concerning Mr. Kearney.

## III.    THE GOVERNMENT'S CHANGED POSITION LACKS AN ADEQUATE BASIS.

Finally, the Court should not countenance the government's changed position concerning

Mr. Kearney eight years after the relevant events and after two trials in which the government

consented to or requested an informal immunity instruction concerning Mr. Kearney.  None of

the current members of the prosecution team was involved in interviewing Mr. Kearney or

4

meeting with his counsel during the relevant period. The prosecutors who dealt directly with Mr. Kearney between 1998 and 2004 included former U.S. Attorney Robert Cleary, former AUSA Paul Weissman, former AUSA Mark Winston, and the government's 2004 trial team -- John Carney, James McMahon, and Richard Schecter.[3]

The government is charged with the knowledge and conduct of the former prosecutors in this case. The prosecutors from the 2004 trial -- who dealt directly with Mr. Kearney for several years -- never objected to an instruction that Mr. Kearney had received informal immunity from the government in exchange for his cooperation. The government itself requested such an instruction at the 2005 trial. Given those undisputed facts, the government cannot satisfy its burden of establishing that it would be error to give an informal immunity instruction concerning Mr. Kearney without even speaking to the prosecutors who interacted directly with Mr. Kearney during the relevant time frame. At a minimum, the Court should conduct an evidentiary hearing on the subject of the statements and promises made to Mr. Kearney by the government between 1998 and 2004, and permit inquiry of all of the prosecutors who interacted with Mr. Kearney and/or his counsel during the relevant time frame, before making any decision to alter the jury instruction given at two prior trials concerning Mr. Kearney. The Court also should order the disclosure of all relevant communications between Mr. Kearney or his counsel and the U.S. Attorney's Office or the SEC so that there is a complete record concerning the "agreement" between Mr. Kearney and the government that is referenced in Mr. Kearney's Wells submission.

---

[3]        During a break in the charge conference on September 20, 2006, counsel for Mr. Forbes inquired whether Messrs. Gross and Martinez had spoken to any of the prosecutors who dealt directly with Mr. Kearney or his counsel during the relevant time frame. Mr. Gross stated that he had not spoken with Mr. Weissman about this matter. The government refused to state whether it had spoken with any of the other prosecutors who previously dealt with Mr. Kearney.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
    Brendan V. Sullivan, Jr. (Bar No. ct17115)
    Barry S. Simon  (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

            - and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Supplemental Memorandum of

Defendant Walter A. Forbes in Opposition to Government's Proposed Supplemental Jury

Instruction Concerning Kevin Kearney to be filed electronically and to be served on September

27, 2006 to the following via e-mail:

> Norman Gross, Esq. (norman.gross@usdoj.gov)
> Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
> Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

Barry S. Simon