UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA    :

      v.    :    Criminal No. 3:02CR264(AHN)

WALTER A. FORBES    :

## RULING ON PENDING MOTIONS

Presently before the court in this criminal action against Walter A. Forbes ("Forbes") are ten[1] of the remaining[2] twenty pretrial motions filed by Forbes and designated as either a "third trial motion" or a "third trial motion in limine." Substantially all of the issues raised in these motions were raised before or during the prior trials in this case and were decided by Judge Thompson. This court has carefully reviewed the parties' briefs, Judge Thompson's written and oral rulings, and heard extensive oral argument. As a general matter, the court concludes that Forbes has presented no cogent or compelling

---

[1] Specifically, Forbes's third trial motion no. 11 and third trial motions in limine nos. 5-13.

[2] The court has previously ruled on Forbes's third trial motions nos. 2, 3, 4, 5, 6, 7, and 8, the SEC's motion to quash Forbes's Rule 17 subpoenas and Forbes's third trial motions in limine nos. 1, 2, 3, and 4. Also, at various times, the court orally denied as moot Forbes's third trial motion no. 9 and his third trial motion in limine no. 19. And by virtue of its order re Rule 17 subpoenas [doc. # 2195], the court effectively denied Forbes's third trial motion no. 10. The court has also orally granted in part and denied in part Forbes's third trial motion no. 1, pertaining to the juror questionnaire, and granted Forbes's third trial motion no. 12, requesting a trial date and briefing schedule, and no. 13 pertaining to subpoenas <u>ad testificandum</u>.

reason why this court should deviate from Judge Thompson's carefully considered, legally sound, and correct decisions on these issues.

Nonetheless, the court will briefly discuss the merits of each motion and set forth its decision as to each motion.

I. Forbes's Renewed Motions (Third Trial Motion No. 11)

In this motion, Forbes "renews" certain motions and memoranda he previously filed.  All of those motions were decided by Judge Thompson.  Forbes does not seek "to persuade this court to rule differently than Judge Thompson. . . ."  Accordingly, without revisiting these motions, the court adopts Judge Thompson's rulings in their entirety.  Because Forbes does not request that this court take any independent action with regard to these "renewed" motions, his motion [doc. # 2182] is DENIED as moot.

II. Forbes's Motion to Preclude the Government's Expert Testimony (Third Trial Motion in Limine No. 5)

Forbes seeks to preclude the government from presenting the testimony of its two expert witnesses, Robert Sack[3] and Brian Heckler ("Heckler").  Forbes maintains that Heckler's testimony is not reliable and does not satisfy the requirements of Daubert

---

[3]Forbes does not make any arguments in support of his motion to exclude Sack's testimony, but merely refers the court to arguments made in sixteen memoranda filed before the prior trials.  Accordingly, for the reasons previously given by Judge Thompson, the motion to exclude the expert testimony of Robert Sack is denied.

and Fed. R. Evid. 702. Forbes has presented no argument that convinces the court to disagree with Judge Thompson's conclusions, reached after an extensive Daubert hearing and several rounds of briefing, that Heckler's opinions were thoroughly supported by rigorous analysis and that his testimony has a sufficiently reliable foundation.

Specifically, the court agrees with Judge Thompson's rejection of Forbes's claim that Heckler's testimony is deficient because he did not follow generally accepted auditing standards (GAAS) in formulating his opinions. Heckler did not need to perform an audit in accordance with GAAS or attest to the accuracy under generally accepted auditing principles (GAAP) of CUC's and Cendant's financial statements in order to give his expert opinion that those financial statements violated GAAP and to calculate the quantative effect of those GAAP violations on the publicly reported operating income of CUC and Cendant for certain quarters and fiscal years. He also did not need to use GAAS to identify the fraudulent accounting practices or to explain how they violated GAAP and inflated those earnings. As Judge Thompson concluded, Heckler's work on this case is governed by the consulting standards of the American Institute of Certified Public Accountants ("AICPA"), and his testimony complied with those standards. Contrary to Forbes's contention, this does not mean that Heckler did not employ the same level of

intellectual rigor that characterizes the practice of an expert in his field.

There is also no merit to, or factual support for Forbes's contention that Heckler's testimony is inadmissible because he did not perform his own investigation into the accounting irregularities, but "parroted" the information in the Cendant Audit Committee Report. According to Judge Thompson, while Heckler may have permissibly considered the Audit Committee Report as background evidence, he did not rely on that report or its supporting work papers as the basis for his opinions. Rather, based on Heckler's testimony at the Daubert hearing, Judge Thompson found that Heckler conducted an independent investigation that included his review and analysis of CUC's and Cendant's books and records. Further, Judge Thompson found that Heckler did not substantially rely on or uncritically accept as true the report's summaries of statements given by CUC employees to the audit committee investigators.

And in this regard, the court rejects Forbes's assertion that his Sixth Amendment confrontation rights are violated by Heckler's consideration of the alleged "testimonial hearsay" of the CUC employees contained in the Audit Committee Report. Not only did Judge Thompson find that Heckler did not rely on those statements, the statements are neither testimonial nor hearsay and thus are outside the ambit of Crawford v. Washington, 541

U.S. 36 (2004). Cf. United States v. Schlisser, 168 Fed. Appx. 483 (2d Cir. 2006); United States v. Stewart, 433 F.3d 273 (2d Cir. 2006). Indeed, even if the statements arguably had characteristics of Crawford's "core class" of testimonial statements, which they do not, they will not be offered for their truth and thus, according to Crawford, there would be no Sixth Amendment violation because "[t]he [confrontation] clause ... does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford, 541 U.S. at 58-59.

In sum, for these reasons, and the reasons given by Judge Thompson, there is no merit to Forbes's assertion that Heckler's testimony is not based on a reliable foundation and fails to satisfy the requirements of Daubert and Rule 702. The motion to preclude the testimony of the government's expert witnesses [doc. # 2261] is DENIED.

III. Forbes's Motion to Preclude the Government from Eliciting False Testimony from Kevin Kearney or for Leave to Present Documentary Evidence to Impeach Kearney's False Testimony (Third Trial Motion in Limine No. 6)

There is no merit to Forbes's motion to preclude the government from eliciting false testimony from Kevin Kearney ("Kearney") or for leave to present documentary evidence, in the form of government notes, to impeach the allegedly false testimony.

Once again, Forbes relies on his self-created fictional

-5-

portrayal of a witness's testimony as grounds for the relief he seeks. Judge Thompson summarily rejected Forbes's claim "because on each of the repeated occasions when [he] raised it the court ... concluded that he failed to demonstrate that [Kearney] gave perjured testimony ... [and] [c]ontinuously repeating the assertion does nothing to make it meritorious."

Moreover, Forbes will not be permitted to offer into evidence the government notes that are allegedly inconsistent with Kearney's testimony. As Judge Thompson and this court have repeatedly stated, a witness may not be impeached by a summary of his prior statements unless the notes accurately reflect the witness's statements or the witness adopts the summary as his own statement.[4]

Forbes motion [doc. # 2274] is DENIED.

IV. <u>Forbes's Motion to Preclude the Government from Introducing Analysts' Reports (Third Trial Motion in Limine No. 7)</u>

Forbes moves to preclude the government from introducing the analysts' reports because they are inadmissible hearsay and have only limited relevance. For the reasons given by Judge Thompson, the motion is denied.

The government may offer the relevant portions of the

---

[4] Forbes may, however, offer the portion of AUSA Weissman's notes which Judge Thompson found, after considering AUSA Weissman's testimony, were an accurate reflection of Kearney's statements as opposed to AUSA Weissman's summary of his understanding of what Kearney said.

-6-

analysts' reports for the limited, non-hearsay purpose of showing what was communicated to investors about CUC and Cendant by and through analysts and to illustrate that CUC management made particular representations to analysts. Such statements are not being offered for their truth, i.e., as proof that the financial information and projections about CUC and Cendant are true. Rather, the significance of this evidence lies solely in the fact that such statements were made and thus there is no hearsay issue. See United States v. Cardascia, 951 F.2d 474, 486 (2d Cir. 1991).

If, however, the government lays the proper foundation under Fed. R. Evid. 803(6), the reports will be admitted as non-hearsay business records. But, as Judge Thompson noted, to the extent that the reports contain hearsay statements, "the government will have to demonstrate that there is an applicable exception, or otherwise appropriately address that issue."

Forbes's motion to preclude the analysts' reports [doc. # 2246] is DENIED.

V. Forbes's Motion to Preclude the Admission of the Cendant Audit Committee Report and Materials Generated During the Audit Committee Investigation (Third Trial Motion in Limine No. 8)

Forbes's motion to preclude the admission of the Cendant Audit Committee Report is denied as moot in light of the government's representation that it will not seek to introduce the report or interview summaries into evidence.

The motion is DENIED insofar as it seeks to preclude the government from eliciting testimony as to the fact that the report was prepared as a result of an investigation to show what steps Cendant took after the fraud was disclosed in April 1998. As stated on the record during oral argument on September 21, 2006, Forbes may have a "blanket" standing objection to any testimony that mentions the investigation or report, in particular what was done to generate the report, the process of preparing the report, the gathering of documents, and the fact that the report was completed, and this blanket objection is overruled. Forbes may renew this blanket, standing objection after the jury is sworn so it will be part of the trial transcript and the objection will again be overruled.

Accordingly, Forbes's motion to preclude the Audit Committee Report [doc. # 2264] is DENIED in part as moot and DENIED in part with regard to testimony concerning the fact of the report or the investigation. Forbes's standing objection to any testimony that mentions the Audit Committee investigation or report is OVERRULED.

VI. <u>Forbes's Motion to Preclude Evidence Regarding Cendant's Restatement (Third Trial Motion in Limine No. 9)</u>

Forbes's motion to preclude admission of the Cendant accounting restatement ("Restatement"), testimony about the amount of the Restatement, and testimony about the fact of the Restatement is DENIED in part as moot and DENIED in part.

Based on the government's representation that it will not seek to offer into evidence either the Restatement or the amount of the Restatement, the motion is denied as moot.

The motion is denied with respect to the preclusion of any testimony about the fact of the Restatement. As Judge Thompson concluded, this evidence is relevant to prove that the previous financial statements were materially false. The probative value of such evidence on the issues of falsity and materiality is not substantially outweighed by any possible prejudice that could result to Forbes from the admission of the evidence. Further, there is no merit to Forbes's assertions that evidence about the fact of the Restatement would be hearsay and would violate his confrontation rights.

Accordingly, the motion [doc. # 2260] is DENIED in part as moot and DENIED in part.

VII. <u>Forbes's Motion to Preclude Improper Lay Opinion Testimony (Third Trial Motion in Limine No. 10)</u>

Forbes moves to preclude the government from presenting any lay opinion testimony from Cosmo Corigliano, Anne Pember ("Pember"), and Kevin Kearney. Based on the government's representation that it will not elicit opinion testimony concerning Forbes's knowledge, intent, or state of mind, this portion of the motion is DENIED as moot.

The court agrees with Forbes that a lay witness cannot, under Fed. R. Evid. 701, offer opinions if they are based on

scientific, technical, or other specialized knowledge and that lay opinion testimony must be the product of reasoning precesses that are familiar to the average person in everyday life.  Thus, with regard to the portion of the motion seeking to preclude the government from eliciting improper lay opinion testimony on accounting issues, the motion is GRANTED.

But this does not mean that it would be improper under Rule 701 for the former CUC accountants who are cooperating with the government and have admitted to intentionally participating in the charged fraud to describe their conduct and the intended and actual consequences of that conduct.  Such testimony would not be based on specialized knowledge, but would be "a [permissible] rendition of facts that the witness[es] personally perceived." United States v. Garcia, 413 F.3d 201, 211 (2d Cir. 2005).  It is proper lay testimony because it results from a process of reasoning familiar in everyday life rather than a process of reasoning which can only be mastered by specialists in the field. See Fed. R. Evid. 701 advisory committee's notes.

For instance, it would not be improper lay opinion testimony for Pember to describe what she was told to do by her superiors, what she did, what she instructed her subordinates to do, the fact that there was no support for what she did and instructed her subordinates to do, why they did it, and the effect of what they did.  In other words, she can testify without giving

improper lay opinions that she and others intentionally inflated the earnings in certain ways and by certain amounts without having any basis or support to do so in order to hit predetermined earnings targets.  It does not require specialized accounting knowledge for the former CUC accountants to testify that they made up the numbers or what the actual numbers were and the difference between the actual numbers and the numbers that were publicly reported because such testimony is not outside the ken of the average person.

That said, the court agrees with Forbes that it would not be proper for Pember or any other lay witness to testify that what they did violated GAAP or constituted improper accrual accounting, was fraudulent, illegal, or wrong, or was not in accordance with the usual custom and practice of corporate accounting departments.  See Bank of China v. NBM LLC, 359 F.3d 171, 181 (2d Cir. 2004).  Thus, while it would be improper for Pember to testify that, for example, the cancellation reserve was overstated because of the improper accounting practices or that the accounting was improper with regard to the merger reserves, this does not mean that she could not properly testify that the way they accounted for the merger reserves resulted in an overstatement of earnings by a certain specified amount.

Accordingly, insofar as the motion seeks to preclude lay witnesses from offering opinion testimony as to Forbes's

-11-

knowledge, intent, or state of mind, the motion [doc. # 2255] is DENIED as moot. To the extent the motion seeks to preclude improper lay opinion testimony, as opposed to fact testimony from former CUC accountants who may testify about how they intended to and did "cook the books" for the specific purpose of inflating the publicly reported results so the price of the stock would go up, the motion [doc. # 2255] is GRANTED.

VIII. <u>Forbes's Motion to Preclude Evidence, Cross-Examination, or Argument Concerning (1) the Decline in Cendant's Stock Price On or After April 15, 1998 or (2) Investor Losses (Third Trial Motion in Limine No. 11)</u>

There is no merit to Forbes's motion to exclude under Fed. R. Evid. 403 any evidence or argument concerning the decline in Cendant's stock price after the fraud was disclosed in April 15, 1998 or shareholder losses.

As Judge Thompson found, this evidence is highly probative and relevant to the issue of materiality. The fact that the government has other, alternative evidence of materiality does not diminish the evidence's significant probative value. And that probative value is not substantially outweighed by the minimal danger of unfair prejudice to Forbes in the form of juror anger or class resentment. Moreover, this evidence is relevant to counter Forbes's claim that CUC was a good company with excellent cash flow that was never on the verge of bankruptcy – in the government's words, his "no harm no foul" defense.

Forbes's motion to exclude evidence, cross-examination, or

-12-

argument concerning the decline in Cendant's stock price after the fraud was disclosed or investor losses [doc. # 2266] is DENIED.

IX. <u>Forbes's Motion to Preclude the Government From Arguing That Forbes Breached A Duty of Trust To CUC Shareholders (Third Trial Motion in Limine No. 12)</u>

Forbes's motion to preclude the government from arguing that he breached a duty of trust, a duty of care, or general fiduciary duties to CUC shareholders is denied as moot in light of the government's representation that it does not intend to use words such as "fiduciary duty," "duty of care," and "duty of trust" in its arguments and questions to Forbes.[5]

But this does not mean that the government cannot argue or question Forbes about his duty, as CEO and Chairman, to disclose truthfully and whether he breached the duty to tell the truth by knowingly and intentionally disseminating materially false and misleading information to the public.

Forbes's motion to preclude the government from arguing that he breached a duty of trust to shareholders [doc. # 2248] is DENIED as moot.

X. <u>Forbes's Motion to Preclude Evidence of the Cendant Class Action Settlement (Third Trial Motion in Limine No. 13)</u>

Forbes's motion to exclude evidence, cross-examination, or

---

[5]The court notes that Forbes has also agreed that he will not argue or question the government's witnesses about whether they had or breached these same duties.

argument concerning the Cendant class action settlement is denied as moot in light of the government's representation that it will not use this evidence at trial unless Forbes "opens the door."

The court will revisit the admissibility of this evidence on request of the government during trial.

Accordingly, Forbes's motion to exclude evidence of the Cendant Class Action Settlement [doc. # 2267] is DENIED as moot.

## CONCLUSION

For the foregoing reasons, Forbes's Third Trial Motion No. 11 [doc. # 2182] is DENIED as moot. Forbes's Third Trial Motions in Limine No. 5 [doc. # 2261], No. 6 [doc. # 2274], No. 7 [doc. # 2246], and No. 11 [doc. # 2266] are DENIED. Forbes's Third Trial Motions in Limine No. 12 [doc. # 2248] and No. 13 [doc. # 2267] are DENIED as moot. Forbes's Third Trial Motions in Limine No. 8 [doc. # 2264] and No. 9 [doc. # 2260] are DENIED in part as moot and DENIED in part. Forbes's Third Trial Motion in Limine No. 10 [doc. # 2255] is DENIED in part as moot and GRANTED in part.

SO ORDERED this 27th day of September, 2006 at Bridgeport, Connecticut.

_____
Alan H. Nevas
United States District Judge