UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA     :

v.                           :     Criminal No. 3:02CR264(AHN)

WALTER A. FORBES             :

## RULING ON GOVERNMENT'S PRE-TRIAL MOTION IN LIMINE

Presently before the court in this criminal action against Walter A. Forbes ("Forbes") is the government's pretrial motion in limine which seeks a ruling as to the admissibility of certain evidence. Each of the five evidentiary issues[1] was considered and decided by Judge Thompson prior to the second trial. This court has carefully reviewed the parties' briefs and Judge Thompson's prior rulings and concludes that there is no cogent or compelling reason why this court should rule differently.

I. Evidence of Forbes's Stock Sales

The court agrees with Judge Thompson that evidence of the timing, volume, and amount of Forbes's stock sales during the conspiracy period, including a sale of more than $11.5 million six weeks before the fraud was disclosed, is relevant and admissible to prove Forbes's knowledge, intent, and motive to commit the charged fraud to inflate the value of his stock

---

[1] With regard to the procedural issue pertaining to redacting Bates numbers and confidentiality legends on exhibits, the court notes that the parties have agreed that Bates numbers do not need to be redacted, but all confidentiality legends on documents to be admitted as exhibits will be redacted to avoid confusion.

holdings. Particularly, in conjunction with other evidence concerning what Forbes knew about Pember's future prospects at Cendant and when he knew it, the evidence of his March 1998 sale is relevant to his knowledge and intent. And because the jury must determine whether his large sale in March 1998 was or was not consistent with his prior trade history, the jury must review the entire history of his sales.

The evidence is not unduly prejudicial under Fed. R. Evid. 403 because it does not place undue emphasis on Forbes's wealth. Indeed, the fact that Forbes is wealthy is not inherently prejudicial. And contrary to Forbes's assertion, there is nothing to suggest that the government improperly seeks to appeal to class prejudice or to the bias of less wealthy jurors by emphasizing Forbes's wealth or to attempt to equate his wealth with wrongdoing. Any risk of undue prejudice from evidence of his stock sales can be avoided by a limiting instruction.

II. Testimony of James Rowan

Rowan's testimony about Forbes's presentation at a January 1998 conference that was sponsored by Morgan Stanley is relevant and admissible to prove Forbes's knowledge and intent as well as the materiality of his statements. Also, Rowan's testimony that Forbes's presentation demonstrated that he knew the business and its nuances very well is relevant to rebut Forbes's defense theory that he did not have the expertise to personally manage or

understand the accounting aspects of the business and that he was a visionary who was only concerned with strategic thinking.

The court also agrees with Judge Thompson that Forbes's argument that the evidence should be excluded under Rule 403 is unpersuasive.

III. <u>Limited Portions of Forbes's Prior Testimony</u>

As Judge Thompson found, there is no merit to Forbes's contention that his prior testimony should not be admitted because he was improperly compelled to testify in order to respond to the false testimony given by Cosmo Corigliano and Kevin Kearney. The assertion that Corigliano and Kearney gave perjured testimony is factually unsupported, as both Judge Thompson and this court have ruled on numerous occasions.

Further, for the reasons previously given by this court and Judge Thompson, the evidence of Forbes's property transfers is probative of consciousness of guilt and is admissible.

Accordingly, the government may offer, pursuant to Fed. R. Evid. 801(d)(2)(A), without opening the door to Forbes's testimony on other subjects, the identified portions of Forbes's prior trial testimony[2] regarding (1) Forbes's conversation with Henry Silverman around Labor Day, 1997 regarding Forbes's request

---

[2] The court notes that the government has agreed to exclude from any transcript excerpts it offers during its case-in-chief any read backs of excerpts of testimony from other witnesses whom it will call at trial.

that Silverman not remove Pember from her position in the accounting department; (2) Forbes's claim that he did not urge the Cendant Executive Committee and the Cendant Audit Committee to retain Ernst & Young as auditor of the former CUC companies; (3) Forbes's transfer of real estate assets to his wife and daughters, the total value of the assets transferred, and his claim that his attorney, Greg Danilow, told him the transfers were lawful; (4) Forbes's desire to know if CUC had "hit the range" of estimates established by Wall Street analysts and that Forbes kept track of and occasionally spoke to Corigliano about whether CUC's earnings were meeting those targets; (5) Forbes's attendance at CUC meetings when "forecasts" were discussed; (6) Forbes's knowledge that CUC was establishing merger reserves for CUC's large acquisitions and knew that such reserves were important to the company; (7) Forbes's claim that in September 1997 he did not have a conversation with Michael Monaco in which Forbes requested Monaco reconsider his proposal to remove Pember from the consolidation function for the CUC division; and (8) Forbes's claim that between April 22, 1996 and December 1996, he did not have a conversation with Kernkraut in which Forbes explained the reasons for CUC's decision to increase the Ideon merger reserve by $27.2 million.

Each of these statements is relevant to Forbes's knowledge of and participation in the conspiracy and is admissible as

evidence of Forbes's guilt, not merely for impeachment purposes.

Under the rule of completeness, Fed. R. Evid. 106, the court deems as counter-designated the portions of Forbes's prior testimony that Judge Thompson previously ruled to be properly counter-designated. The court notes Forbes's objection to that counter-designated testimony.

IV. <u>Evidence of the Amount of Overstated Operating Income in the SEC Filings</u>

As Judge Thompson determined, evidence about the conspirators' GAAP violations and the quantitative effects of those GAAP violations on CUC's reported earnings, when viewed in combination with other evidence in the case, is relevant and admissible as circumstantial evidence of Forbes's knowledge of the fraud.

V. <u>Questions to Corigliano Concerning Whether He is Guilty of Insider Trading</u>

Forbes may not question Corigliano concerning his understanding or belief about whether he committed insider trading or whether he was lying by denying that he committed insider trading. Forbes also may not argue to the jury that Corigliano was in fact guilty of insider trading and that he lied by denying it. As Judge Thompson ruled, this line of questioning calls for improper lay opinion testimony under Fed. R. Evid. 701 and is likely to confuse the jury.

Forbes will be fully able to establish Corigliano's alleged

bias by questioning him about the large volume of stock sales that he made while possessing material inside information that had inflated the price of the stock and about the fact that he was never charged with insider trading.

CONCLUSION

For the foregoing reasons, the government's Third Trial Motion No. 1 [doc. # 2259] is GRANTED.

SO ORDERED this 3rd day of October, 2006 at Bridgeport, Connecticut.

Alan H. Nevas<br>United States District Judge