UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AHN) |
| | : | |
| v. | : | October 4, 2006 |
| | : | |
| | : | |
| WALTER A. FORBES | : | |

**GOVERNMENT'S RESPONSE TO FORBES': (1) SUPPLEMENTAL OBJECTIONS TO THE COURT'S PRELIMINARY PROPOSED CHARGE; AND (2) SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO GOVERNMENT'S PROPOSED SUPPLEMENTAL JURY INSTRUCTION CONCERNING KEVIN KEARNEY**

CHRISTOPHER J. CHRISTIE
NORMAN GROSS
MICHAEL MARTINEZ
CRAIG CARPENITO
MARK E. COYNE
Special Attorneys
U. S. Department of Justice
970 Broad Street
Room 700
Newark, N.J.  07102
(973) 645-2701

**INTRODUCTION**

On September 27, 2006, Forbes filed two submissions relating to the proposed jury charge in this case: a supplemental memorandum in opposition to the Government's proposed supplemental jury instruction concerning Kevin Kearney, Docket 2472; and supplemental objections to the Court's preliminary proposed jury charge, Docket 2473. This response is directed to both of those submissions.

**I.   GOVERNMENT'S RESPONSE TO FORBES' SUPPLEMENTAL OBJECTIONS TO THE COURT'S PRELIMINARY PROPOSED INSTRUCTIONS.**

Forbes objects to the first paragraph of Proposed Instruction IV.J. ("Use of Particular Investigative Techniques or Witnesses"). Forbes points to the first sentence of the model charge from the Sand treatise (L. Sand et al., Modern Federal Jury Instructions), Inst. 4-4, which states:

> During the trial you have heard testimony of witnesses and argument by counsel that the government did not utilize specific investigative techniques.

Forbes argues that this language is inapplicable because he has not argued in the first two trials that the Government did not utilize specific investigative techniques. Forbes declines to mention whether or not he will raise such a challenge during the third trial, however. Additionally, Forbes' challenge to that sentence of the Sand charge declines to mention that the proposed charge given by Judge Thompson during the second trial and requested by the Government for the third trial does not contain the first sentence of the Sand model charge, but starts with the

second sentence of the <u>Sand</u> charge. <u>See</u> Proposed Instruction IV.J. Forbes' challenge to this first paragraph of Proposed Instruction IV.J. is therefore a red herring.

Nevertheless, the <u>Sand</u> treatise "recommends" that the "charge be given in certain cases where the defense unfairly put the government's investigative techniques on trial." <u>Sand</u>, Inst. 4-4, Comment. Accordingly, the Government would agree to eliminate the first paragraph from Proposed Instruction IV.J if Forbes does not challenge, during the third trial, the absence of specific investigative techniques.

Forbes also challenges the second paragraph of Proposed Instruction IV.J., which states in pertinent part that

> all persons who may have been present at any time or place mentioned in the case, or who may appear to have some knowledge of the issues in the case, need not be called as witnesses. Nor does the law require that all things mentioned during the course of trial be produced as exhibits.

Forbes notes that the Comment to <u>Sand</u> Inst. 4-4 states that "no instruction is recommended to the effect that the prosecution is not legally required to call all witnesses with knowledge of the facts or offer as exhibits all pertinent documents," and that such an instruction "should be given with great caution" because the prosecution can deal with the issue in summation if the defense "claims that the prosecution does not call cumulative witnesses." Here, there is a sound reason to give the instruction: one of the jurors who was interviewed by reporters

following the second trial stated that the deliberations were "tough" because certain persons, particularly Stuart Bell and Kirk Shelton, were not called by the Government as witnesses.[1]

Additionally, the <u>Sand</u> Commentary fails to provide a sufficient reason not to give this proposed instruction. It is a legal truism that the Government can meet its burden of proof by presenting sufficient credible evidence that proves every element, and that it need not call all witnesses with knowledge about the relevant facts. <u>United States v. Peterson</u>, 424 F.2d 1357, 1363 (7th Cir. 1970); <u>Velarde-Villarreal v. United States</u>, 354 F.2d 9, 12 (9th Cir. 1965); <u>Washington v. United States</u>, 275 F.2d 687, 690 (5th Cir. 1960). The Government's opportunity to

---

[1] Kenneth Premo, one of the jurors from the second trial, was interviewed by a journalist following the declaration of the mistrial. The news story regarding that interview stated in pertinent part:

> Jurors did not hear from former CUC President E. Kirk Shelton, who was convicted at the first trial and sentenced to 10 years in prison, or from Stuart Bell, a former CUC finance chief who was never charged. Did that affect your view of the case?
>
> "Where was Kirk Shelton? Where was Stu Bell? I had no clue. Really, that's what made the deliberations so tough. It was just so hard to believe that Kirk wasn't going to testify.
>
> When the government rested, I was shocked. If you kept a tally of all the names mentioned, it had to total 50 or 60. You expected to see maybe a dozen of them."

Jane Mills and David Voreacos, February 15, 2006, Bloomberg News Service.

state in rebuttal summation that it is not required to present every witness is an inadequate substitute for the Court's accurate statement of this legal principle.  See Taylor v. Kentucky, 436 U.S. 478, 488-89 (1978) ("[A]rguments of counsel cannot substitute for instruction by the court.").

Additionally, the defense suffers no harm from the instruction.  The proposed instructions repeatedly explain that reasonable doubt may arise from the evidence and the lack of evidence.  Proposed Jury Instructions I.C., I.H., I.I., I.K., IV.A., V.A.  Thus, the instructions as a whole, including the proposed instruction that the Government is not required to present all witnesses, will properly inform the jury that, although the absence of evidence is a permissible basis for finding a reasonable doubt, the jury may not acquit in the face of sufficient credible evidence of guilt merely because the Government did not present all possible evidence on a subject.

If this Court nevertheless concludes, based on the Sand commentary, that the foregoing instruction should not be given, that is all the more reason why the Court should deliver the Government's "unavailable witness instruction," "Government's Proposed Supplemental Jury Instruction No. 2," Docket 2372.  That proposed instruction, based on Sand Inst. 6-7, provides:

4

## **GOVERNMENT'S PROPOSED SUPPLEMENTAL JURY INSTRUCTION NO. 2**

**UNCALLED WITNESS EQUALLY UNAVAILABLE**

There are several persons whose names you have heard during the course of the trial but who did not appear to testify in this trial. In particular, Kirk Shelton and Stuart Bell are two persons who were identified by Cosmo Corigliano and others as participants in the charged conspiracy. Neither Mr. Shelton nor Mr. Bell were called to testify during this trial. I instruct you that both the Government and the defendant had an equal opportunity or lack of opportunity to call either Mr. Shelton or Mr. Bell. Therefore, you should not draw any inferences or reach any conclusions as to what they would have testified to had they been called. Their absence should not affect your judgment in any way.

You should, however, remember my instruction that the law does not impose on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.

Sources: L. Sand et al., Modern Federal Jury Instructions-Criminal, Instr. 6-7 (modified); United States v. Myerson, 18 F.3d 153, 157-60 (2d Cir. 1994).

For the reasons set forth by the Government during the September 20, 2006 charge conference, transcript at 30-54, and during the September 21, 2006 hearing on various pre-trial motions, transcript at 4-35, this Court should conclude that Stuart Bell and Kirk Shelton are equally unavailable to the Government and to the defense. Additionally, for the reasons stated during those proceedings, Forbes has failed to date to establish through sufficient, sworn testimony that Bell's proposed testimony would be favorable to the defense. For those

5

reasons, the Government's Proposed Supplemental Instruction No. 2 is warranted. If that instruction is given, the Government would agree that the second paragraph of Proposed Instruction IV.J need not be given.

**II. AS THIS COURT ANNOUNCED DURING THE JURY CHARGE CONFERENCE, IT SHOULD WAIT UNTIL THE CLOSE OF THE TRIAL EVIDENCE TO DECIDE WHETHER TO GIVE THE GOVERNMENT'S PROPOSED INSTRUCTION REGARDING KEVIN KEARNEY.**

During the second trial, Judge Thompson instructed, as the Government had requested, that:

> You have heard the testimony of Kevin Kearney, who has been promised by the government that, in exchange for his testimony, he will not be prosecuted for any crimes he may have admitted either here in court or in interviews with the government.

The instruction went on to direct the jury that, because Kearney had been "promised" that he would not be prosecuted, the jury should "closely scrutinize" Kearney's testimony because such an informally immunized witness "confronted with the realization that he . . . can win freedom by helping to convict another, has a motive to falsify his testimony." Second Trial Instruction IV.S.

The Government has proposed that this instruction not be given during the third trial, because the presumed factual predicate, that Kearney had "been promised by the government that, in exchange for his testimony, he will not be prosecuted," did not, in fact, occur. Kearney provided information to the Government based on a standard "proffer agreement" (which

provided that the Government could not use Kearney's proffered information against him, but which did not promise Kearney that he would not be prosecuted). Exhibits 1-4, Government's Proposed Supplemental Instructions for Third Trial, Docket 2372. The Government has represented that the third trial evidence may establish that the Government never promised Kearney that he would not be prosecuted. Based on that scenario, the Government proposed the following instruction:

### GOVERNMENT'S PROPOSED SUPPLEMENTAL JURY INSTRUCTION NO. 1

**WITNESS TESTIFYING PURSUANT TO A PROFFER AGREEMENT**

> There was evidence presented during this trial that when Mr. Kearney first told the government about his involvement in the alleged fraudulent scheme in this case, he did so pursuant to what is called a "proffer agreement" between himself and the government. The proffer agreement was admitted into evidence as Government Exhibit Number ____. In that proffer agreement, the Government promised that it would not use any of Mr. Kearney's statements that he made during the proffer session in any subsequent prosecution against him, unless he testified or provided evidence or argument at a subsequent trial that was inconsistent with those statements.
>
> The government is permitted to make these kinds of promises and is entitled to call as witnesses people to whom these promises are given. A defendant may be convicted on the basis of such a witness's testimony alone if the witness's testimony proves every element of the offense charged beyond a reasonable doubt. In assessing Mr. Kearney's credibility, however, you may consider the fact that Mr. Kearney first provided information to the government which implicated him in the alleged crimes in this case only after he entered into a proffer agreement. It is up to you to decide what weight, if any, the evidence about Mr. Kearney's proffer agreement with the government should receive in

>     assessing Mr. Kearney's credibility as a witness in
>     this case.

<u>Source</u>: L. Sand et al., <u>Modern Federal Jury Instructions-Criminal</u>, Instr. 7-9 (modified).

Forbes objected to this proposed instruction on the ground that the trial evidence from the first and second trials established that Kearney <u>had</u> received informal, oral immunity in exchange for his testimony in this case. The Government, however, represented during the September 20, 2006 charge conference that the current prosecutors had spoken to Kearney's attorney, Robert Fettweis, who had stated that Kearney had **not** received informal, oral immunity, or any other immunity in this case. The Government further represented that the evidence presented during the third trial would establish that Kearney did not receive any immunity in exchange for his testimony. Charge Conference Transcript at 6-7, 29.

The Court subsequently inquired if the defense sought the instruction that Kearney had been immunized even if the evidence established that he had not. The defense response was, remarkably, "yes." Charge Conference Transcript at 57. Following extensive discussion, the Court determined that, given the competing factual claims of the parties, the Court would decide the proper scope of an instruction regarding Kearney's testimony at the conclusion of the evidentiary phase of the trial. <u>Id.</u> at 13-30.

The Government expects that the third trial evidence will establish that Kearney has not received informal immunity in this case. Forbes asks this Court to reverse its prior determination to hold this issue in abeyance until the relevant evidence has been adduced, and conclude before the trial even begins that it should instruct the jury that Kearney was promised immunity from prosecution from the Government. This Court should decline Forbes' invitation for a premature ruling on this issue.

Forbes contends that, even though Kearney's counsel has confirmed that Kearney was not promised immunity, prior members of the prosecution team in this case may have offered Kearney informal immunity, either by speaking directly to Kearney or to his lawyer. Forbes accurately identifies the former prosecutors in this case who might have offered such immunity to Kearney as former United States Attorney Robert Cleary, and former Assistant United States Attorneys Paul Weissman, Mark Winston, John Carney, James McMahon, and Richard Schechter. Forbes' Supp. Mem. at 5. Since the September 20, 2006 charge conference, members of the current prosecution team have spoken to each of those former prosecution team members. Each has confirmed that, not only did they not offer Kearney immunity against prosecution in this case at any time, but they never offered and would not would have offered any witness "informal immunity" by way of an oral representation. Rather, it was the practice of each of those

9

former members of the prosecution team that any immunity offer they had given to a witness would be reduced to writing. The Government therefore proffers that people with personal knowledge have confirmed that Kearney was not promised immunity in exchange for his testimony.

Forbes' insistence that this Court falsely instruct the jury that Kearney was promised informal immunity should be rejected. Under no circumstances should the Court instruct the jury that an event occurred which did not in fact occur. "A defendant is only entitled to a charge for which there is a foundation in the evidence." Wells v. Murray, 831 F.2d 468, 477 (4th Cir. 1987), citing 2 C. Wright, Federal Practice & Procedure, § 485, at 710 (1982).[2] This Court recognized that bedrock principle when it stated that it would not "tell[] the jury something that isn't true." Charge Conference Transcript at 58.

Forbes reiterates that the Government did not object during the first two trials to the erroneous instruction that Kearney was promised immunity in exchange for his testimony, and that the Government affirmatively requested the instruction during the

---

[2] Accord United States v. Ford, 184 F.3d 566, 579 (6th Cir. 1999); United States v. Baskin-Bey, 45 F.3d 200, 205 n.2 (7th Cir. 1995); United States v. Townsend, 924 F.2d 1385, 1414-15 (7th Cir. 1991); Foster v. Withrow, 159 F. Supp. 2d 629, 643 (E. D. Mich. 2001); see generally Williams v. Armontrout, 891 F.2d 656, 661 (8th Cir. 1989)("a court cannot give instructions the evidence does not support"), citing Hopper v. Evans, 456 U.S. 605, 611 (1982), rehearing granted and denial of habeas corpus relief affirmed, 912 F.2d 924 (8th Cir. 1990)(en banc).

second trial because it had been given in the first trial. Forbes cites no authority, however, to support his position that the trial judge should affirmatively and knowingly lie to the jury merely because the Government inadvertently failed to correct a misstatement in a previously delivered instruction. Nor does Forbes provide any authority that, where the Government erroneously requests an instruction because of its misapprehension of the evidence, and that instruction is erroneously favorable to the defense, the Court may not correct that instruction when the error is subsequently brought to the Court's attention. Cf. United States v. Zukowski, 851 F.2d 174, 179 (7th Cir. 1988) ("The district court . . . did not believe that the government should be bound by the mistaken statements of its attorney . . . ").

Additionally, Forbes' reliance on cases which state that a prosecutor's prior in-court statements and filings are admissible as "statements" of the Government, Forbes' Supp. Mem. at 4, are inapposite. None hold that the Court is required to give a factually erroneous instruction the jury. Rather, they address the admissibility into evidence of the prosecutor's prior statements. Moreover, a prior statement or written submission by a prosecutor can be admitted into evidence in order to demonstrate that the Government has taken inconsistent positions on a particular factual dispute only if the defendant can

11

establish that the claim of inconsistency "is a fair [inference] and that an innocent explanation for the inconsistency does not exist." United States v. Salerno, 937 F.2d 797, 811 (2d Cir. 1991) (citing United States v. McKeon, 738 F.2d 26, 33 (2d Cir. 1984)), modified on rehearing on other grounds, 952 F.2d 623 (2d Cir. 1991), reversed on other grounds, 505 U.S. 317 (1992). The basis for admission of such prior statements is that a party should not be able to conceal from the jury "a fundamental change in its version of the facts between trials" if that change is undertaken "wholly without explanation." United States v. GAF Corp., 928 F.2d 1253, 1260 (2d Cir. 1991). Exclusion of such prior inconsistent statements would impair "the function of trials as truth-seeking proceedings." McKeon, 738 F.2d at 31.

  Here, the evidence will likely establish that the "truth" is that Kearney was not promised immunity in exchange for his testimony. Additionally, the Government has provided an explanation for its change in positions -- its inadvertent failure, during the first two trials, to notice that the Kearney instruction was erroneous as a matter of fact. Accordingly, this Court should exclude any evidence regarding the Government's change of position, since it is "innocently explained," and since admission of evidence of the change of position will merely permit Forbes to urge the false inference that Kearney was promised immunity when in fact he was not.

In his latest submission, Forbes again argues, as he did in a prior submission, Docket 2452, that Kearney's testimony that he had been told that he was not a target of the investigation, coupled with the fact that Kearney was never prosecuted in this case (although he was required to pay a substantial civil fine, First Trial Transcript at 9855-56), demonstrates that Kearney was in fact promised immunity. As the Government previously explained, there is a big difference between telling a person that he is not presently a target and promising him that he will never be prosecuted. The problem with proposed instruction IV.S. is that it erroneously informs the jury that Kearney was promised immunity.

Forbes also points to a "Wells submission" written by Fettweis to the S.E.C. on behalf of Kearney, which alludes to the "U.S. Attorney's Office[s'] decision not to prosecute Kearney" and the U.S. Attorney Office's "agreement with Kearney." Exhibit 4 to Forbes Supp. Mem., pp. SEC0091-92. Fettweis has confirmed that his references in the Wells submission to the U.S. Attorney's Office's "decision" and "agreement" did not mean that Kearney had received a "promise" or "agreement" that Kearney would not be prosecuted in this case [need to confirm with Fettweis. Rather, Fettweis stated that his use of the word "agreement" in the Wells submission was an "unfortunate" word choice, given that the Government has not prosecuted Kearney

13

without agreeing with or promising Kearney that it would not prosecute him.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that this Court give the Final Jury Charge from the second trial in this case as the Final Charge for the third trial, with the minor changes consented to by the Government in this response and in its Responses to Forbes' Final Objections to the Court's Final Jury Instructions from the Second Trial, 2374, and as modified by the two proposed supplemental jury instructions set forth above.

                                          Respectfully submitted,

                                          CHRISTOPHER J. CHRISTIE
                                          Special Attorney
                                          U.S. Department of Justice

                                          *Norman Gross/s*

                                          NORMAN GROSS
                                          Federal Bar Number 24933
                                          MICHAEL MARTINEZ
                                          Federal Bar Number PHV0423
                                          CRAIG CARPENITO
                                          Federal Bar Number PHV0424
                                          MARK E. COYNE
                                          Federal Bar Number PHV01079
                                          Special Attorneys
                                          U.S. Department of Justice
                                          970 Broad Street
                                          Room 700
                                          Newark, N.J.  07102
                                          (973) 645-2701

Newark, New Jersey
Date: October 4, 2006

**CERTIFICATE OF SERVICE**

    The undersigned certifies that on this day I caused to be served a copy of the Government's Preliminary Proposed Supplemental Jury Instructions for the Third Trial via email on:

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C.  20005-5901
(202) 434-5005
bsimon@wc.com


*Norman Gross/s*
NORMAN GROSS

Dated: October 4, 2006
      Camden, New Jersey