# EXHIBIT 1

KRAMER LEVIN NAFTALIS & FRANKEL LLP
919 THIRD AVENUE
NEW YORK, N.Y. 10022 - 3852

GARY P. NAFTALIS
PARTNER
TEL (212) 715-9253
FAX (212) 715-8000
gnaftalis@kramerlevin.com

47, AVENUE HOCHE
75008 PARIS
FRANCE

May 16, 2000

<u>Via Facsimile</u>

Thomas C. Newkirk, Esq.
Associate Director
United States Securities and Exchange Commission
Mail Stop 8-1
450 5th Street, N.W.
Washington, DC 20549

    Re:    <u>In the Matter of Cendant Corporation, No. HO-3401</u>

Dear Tom:

    I have your May 15 letter. Regrettably, it does not fairly reflect our prior dealings. I write to set the record straight.

    First, the Staff has never previously requested that Mr. Corigliano supply it with financial information pursuant to paragraph 12 of the plea agreement. The Staff did demand that Mr. Corigliano pay more than $16 million in disgorgement, plus interest, plus a penalty equal to the disgorgement. And the Staff indicated it would recommend waiving full payment of this amount if Mr. Corigliano was unable to pay. In that event, the Staff would leave Mr. Corigliano with his house, car, legal fees and walking around money. The subject of financial disclosure arose only in connection with the waiver policy and that financial disclosure would be required if Mr. Corigliano sought to avail himself of that policy. To date, we have not availed ourselves of the waiver policy. Instead, we have repeatedly argued that because Mr. Corigliano is not guilty of insider trading, the Staff's disgorgement calculations are inaccurate and punitive, and the fair and equitable disgorgement amount is only a small fraction of the Staff's calculations.

    Second, the Staff did not repeat "several times" any request for financial disclosure, nor was David Frohlich's March 30, 2000 letter in any way a follow up request for any previously sought financial disclosure. As part of our settlement discussions, the Staff asked that we voluntarily supply information concerning Mr. Corigliano's sales of Cendant stock from February 1, 1995 forward. We provided that information under cover of my letter dated March 30, 2000. Apparently, David was unaware that I had already sent the material directly to you, and that same day, he wrote me requesting this information. In his letter, he also asked for the first time for schedule D's to Mr. Corigliano's tax returns, in order to obtain historical information about Mr. Corigliano's trades so computations could be made. I immediately wrote back to David on March 30, 2000, pointing out that his letter had crossed with my letter to you and enclosing a copy of my earlier letter with the detailed trading information the Staff had

KL3:2034390.1

KRAMER LEVIN NAFTALIS & FRANKEL LLP

requested. In fact, we provided more information than had been sought; we also listed Mr. Corigliano's Cendant stock sales in January 1995. Following my March 30 letter, we did not receive any communications from the Staff suggesting that it required additional information concerning Mr. Corigliano's stock sales or any other financial information from him.

Third, there was nothing vague or incomplete about my response to Mr. Walker on May 2 when he asked about the proceeds from Mr. Corigliano's 1998 sales. We explained that the $23 million figure is extremely misleading because it does not reflect what gains Mr. Corigliano in fact received. We went on to explain with some specificity that after taking into account the cost of option exercises and the payment of many millions of dollars in taxes, Mr. Corigliano realized cash proceeds of approximately $8 million from his 1998 sales. We also pointed out that Mr. Corigliano has not been regularly employed since April 1998 (or more than two years), is incurring substantial legal fees and is the sole support of seven people.

Fourth, what the plea agreement says is that Mr. Corigliano, prior to his sentencing, will use his "best efforts" to settle claims that the SEC may assert for recovery of "certain of the proceeds" from his sales of Cendant stock. We have plainly complied with that provision and the other provisions of the plea argument. We have been trying diligently to settle the case. Both orally and in our Wells submission, we reiterated Mr. Corigliano's desire to negotiate a good faith settlement. In our Wells submission at page 22, we also made a substantial settlement proposal of $3.4 million -- a figure which fairly measures the benefit Mr. Corigliano allegedly received. We offered to meet with the Staff to explain the economic basis for our position, as supported by leading econometric experts, and why the Staff's calculations overstated any benefit Mr. Corigliano allegedly obtained. The Staff's response to date has been one of take it or leave it; either we accept the Staff's incorrect disgorgement number or litigate. I called you on Friday to request an additional short meeting with Director Walker to continue our settlement discussions. You advised that you would recommend against such a meeting or any further meetings with the Staff. Given that position, I was surprised by the timing of your new request for financial information and the arbitrary and unrealistic deadlines it purports to set.

I trust that the Staff is still interested in negotiating a settlement of the matter. To that end, I reiterate my request for a prompt meeting with Mr. Walker so that we can attempt to avoid the unseemly prospect of adversary litigation between the Commission and a significant cooperating witness who has provided substantial assistance to your ongoing investigations.

In all events, you can be assured that we will continue to meet all our obligations under the plea agreement.

Sincerely yours,

Gary P. Naftalis

cc: Paul A. Weissman, Esq.

KL3 2004390.1

# EXHIBIT 2

KRAMER LEVIN NAFTALIS & FRANKEL LLP
919 THIRD AVENUE
NEW YORK, N.Y. 10022-3852

GARY P. NAFTALIS
PARTNER
TEL (212) 715-9253
FAX (212) 715-8000
gnaftalis@kramerlevin.com

47, AVENUE HOCHE
75008 PARIS
FRANCE

May 24, 2000

<u>For Settlement Purposes Only</u>
<u>Via Facsimile</u>

Thomas C. Newkirk, Esq.
Associate Director
United States Securities and Exchange Commission
Mail Stop 8-1
450 5th Street, N.W.
Washington, DC 20549

Re: <u>In the Matter of Cendant Corporation, No. HO-3401</u>

Dear Tom:

I write to reconfirm that our client Cosmo Corigliano will be promptly providing you with financial disclosure in aid of our attempts to reach an amicable resolution of this matter.

In my May 16, 2000 letter, I represented, in response to what we understood to be your first request for financial disclosure pursuant to the plea agreement, that "you can be assured that we will continue to meet all our obligations under the plea agreement." I meant what I said. Cosmo will comply with all his obligations under the plea agreement, including paragraph 12's provision on financial disclosure.

At our meeting on Friday afternoon, May 19, I delineated for the Staff in detail the proceeds Cosmo received from his 1998 stock sales, the amounts paid for option exercises and the taxes he incurred. I described with specificity the form and approximate value of his assets. I also told you that his wife and children have assets as well, that they are separately represented by Harvey Pitt and Audrey Strauss of Fried, Frank, Harris, Shriver & Jacobson, and that questions concerning their assets should be directed to Harvey and Audrey. In response to the Staff's question relating to transfers made by Cosmo to his wife and children, I advised that Harvey and Audrey would provide you with information concerning such transfers. I understand that you subsequently initiated conversations with them on this subject. Moreover, I explicitly stated that Cosmo would fill out the financial disclosure form you have provided -- which also requests transfer information. But I noted that providing the written responses to your detailed form would require some time and that I was cognizant of the need in representing an important cooperating witness to be precise and accurate in our written responses since even small, minor or inadvertent inconsistencies could provide unnecessary potential fodder for future cross-examination of Mr. Corigliano -- an interest that the government shares.

KL3:2014120.1

KRAMER LEVIN NAFTALIS & FRANKEL LLP

Thomas C. Newkirk, Esq.
May 24, 2000
Page 2

       In my voicemail to you of yesterday, I told you that, consistent with my representation on Friday, Harvey and Audrey would call you today to provide you with information relating to transfers between Cosmo and his wife or children. Based on the voicemail you left me this morning, I understand that you wish to receive such information from Cosmo directly as part of any financial disclosure rather than from Fried Frank. Accordingly, Cosmo is working on the financial disclosure form, and we will supply that information to you as promptly as we possibly can.

      Best regards.

                                                                        Sincerely yours,

                                                                       Gary P. Naftalis

GPN/asb
cc:   Richard Walker, Esq.
       Paul A. Weissman, Esq.
       Harvey Pitt, Esq.
       Audrey Strauss, Esq.

KL3:2036120.1

# EXHIBIT 3



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

DIVISION OF
ENFORCEMENT

May 25, 2000

BY FAX (212) 715-8253

Gary P. Naftalis, Esq.
Kramer Levin Naftalis & Frankel LLP
919 Third Avenue
New York, NY 10022-3852

Re: *In the Matter of Cendant Corporation,* No. HO-3401

Dear Mr. Naftalis:

Assistant United States Attorney Paul Weissman has advised me that you have told him that at least some of the financial information we have been seeking from your client Cosmo Corigliano is ready for transmittal to us. As I understand it, this includes the information concerning Mr. Corigliano's assets and asset transfers. Please send us this information and such other information and schedules as are currently available by overnight delivery or by fax to me at 202.946.9636 immediately and without awaiting completion of the other information.

Sincerely yours,

Thomas C. Newkirk
Associate Director

cc: Paul A. Weissman, Deputy Chief
Fraud and Public Protection Division
U.S. Attorney's Office (D.N.J.)