UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | No. 3:02CR264 (AHN) |
| WALTER A. FORBES. ) | October 9, 2006 |
| ) | |
| ) | |

**MEMORANDUM IN SUPPORT OF CERTIFICATION OF WALTER A.
FORBES REGARDING TRIAL SUBPOENAS <u>DUCES TECUM</u> TO THE
SEC AND THREE OF ITS EMPLOYEES[1]**

Walter A. Forbes, through undersigned counsel, respectfully submits this memorandum in support of his Certification concerning the trial testimony subpoenas <u>duces tecum</u> he is serving on the Custodian of Records of the SEC, and SEC employees Mark Greiner, Susan Markel and Roger Paszamont, each seeking production of any notes taken by either Ms. Markel or Mr. Paszamont during the July 10, 2001 interview of Kevin Kearney, and any memoranda in the possession of the SEC, Mr. Greiner, Ms. Markel, or Mr. Paszamont that summarizes any interviews of Mr. Kearney.[2]

As detailed in Forbes Third Trial Motion <u>in Limine</u> No. 6, Mr. Kearney's testimony in both trials against Mr. Forbes directly contradicted his prior statements to the government in several respects. Indeed, the government conceded that there were "inconsistencies" during oral argument on the motion. <u>See</u> Tr. 9/12/2006 at 56-57 (Attorney Gross: "Your Honor, there are inconsistencies. I won't quibble about that. There are

---

[1] Filed over objection that the Court's Order improperly interferes with Walter Forbes' rights under the Sixth Amendment.

[2] The Court has already permitted trial testimony subpoenas to be served on each of these individuals.

inconsistencies between what Mr. Kearney said before the trial and his trial testimony."). In particular, for purposes of the motion here, there are glaring "inconsistencies" between Mr. Kearney's testimony and what Mr. Kearney told the government when he was interviewed on July 10, 2001 by Mark Gerber of the FBI and three employees of the SEC – Mark Greiner, Susan Markel, and Roger Paszamont.

At the 2004 trial, Mr. Kearney claimed that he met with the former CFO, Stu Bell, every quarter to discuss unlawful top-side adjustments, and that Mr. Bell purportedly told him that these adjustments were necessary because Walter Forbes wanted the company's EPS to be a certain number. See Tr. 8/4/2004 at 9715-25, attached as Exhibit ("Ex.") 1.[3] He further claimed that Casper Sabatino told Mr. Kearney not to release financial information to CUC's outside auditors until Walter Forbes signed off on the draft press release. See Tr. 8/4/2004 at 9752, id.

This testimony by Mr. Kearney is diametrically opposite to what he told the government during his July 10, 2001 interview. According to the only notes produced to the defense – those of SEC attorney Matthew Greiner – Mr. Kearney told the government that he had <u>no information</u> to offer the government concerning Mr. Forbes' alleged participation in the accounting fraud. See Ex. 2 at MGR 173 (SEC attorney Matthew Greiner's notes of July 10, 2001 interview in which Mr. Kearney stated that he had "nada w/r/t Walter") and MGR 182 (Greiner notes that while Mr. Kearney "doesn't think $C^2$ was doing this on his own – points to $C^2$'s comment about Shelton; DK [doesn't know] more"). Moreover, Mr. Kearney told the government that Mr. Sabatino referenced <u>Mr. Corigliano, not Mr. Forbes</u>, in directing Mr.

---

[3] Significantly, Mr. Kearney had previously told the government that he had <u>not met</u> with Mr. Bell during this time period. See Forbes Third Trial Motion No. 6.

2

Kearney to withhold material from Ernst & Young. See Ex. 2 at MGR 180 (reflecting that Kearney stated he could not provide materials to E&Y "b/c $C^2$ hasn't 'blessed consolidation'").

On cross-examination at trial, defense counsel attempted to confront Mr. Kearney with his prior inconsistent statements to the government. Nevertheless, Mr. Kearney insisted -- contrary to the notes of his government interviews -- that he had told the government that Mr. Bell purportedly said that Mr. Forbes wanted EPS to be a certain number, and that this story was not a recent "recollection":

> Q. Now, on page 9720 is this correct testimony? You said:
>
> "Question: When Stu Bell came to you, did he indicate to you who wanted these changes to be made?
>
> "Answer: Yes.
>
> "Question: What did Stu Bell tell you with respect to that?
>
> "Answer: He would often come back to us and say Walter Forbes wanted EPS to be a different number than what we had so we needed to make those changes."
>
> Do you see that?
>
> A. Yes.
>
> Q. Sir, is it fair to say that in all of these interviews that you had, you certainly never said that in the first 13 interviews?
>
> A. <u>No</u>.
>
> Q. You think you said that earlier to the government investigators?
>
> A. <u>Yes</u>.
>
> Q. You think you said it as early as the first two, three, four interviews?
>
> A. <u>I believe so</u>.

3

> Q. Well, do you know or do you not know or is this a recent piece of information that you might have been refreshed on?
>
> A. <u>No</u>.
>
> Q. No?
>
> A. No. I've -- <u>I answered that way in several interviews</u>.

Tr. 8/5/2004 at 9876-78 (emphasis added), attached as Ex. 3. The underscored testimony was false. It cannot be squared with, <u>inter alia</u>, Mr. Greiner's notes stating that Kearney had "nada" regarding Mr. Forbes, and that while he "doesn't think $C^2$ was doing this on his own – points to $C^2$'s comment about Shelton; DK [doesn't know] more"). Ex. 2 at MGR182.

During the 2005 trial, Mr. Kearney repeated his false testimony from 2004 that Mr. Bell purportedly invoked the name Walter Forbes in connection with unsupported topside adjustments, and that Cosmo Corigliano and Casper Sabatino supposedly instructed Mr. Kearney to withhold information from the company's auditors until Mr. Forbes approved earnings press releases. <u>See, e.g.</u>, Tr. 10/25/05 at 1097-110, 1113, attached as Ex. 4. Counsel for Mr. Forbes again attempted to cross-examine Mr. Kearney with his prior inconsistent statements to the government. <u>See</u> Tr. 10/25/2005 at 1123-27 (Ex. 4) & Tr. 10/26/2005 at 1157-77, 1179-81, attached as Ex. 5. Defense counsel then called Mr. Greiner in Mr. Forbes' case, and inquired of Mr. Greiner outside the presence of the jury concerning his notes of Mr. Kearney's July 10, 2001 interview, which state "nada w/r/t Walter." <u>See</u> Ex. 2 at MGR 173. Mr. Greiner testified that he had no recollection whether this notation meant that Mr. Kearney simply said nothing about Mr. Forbes during the interview or whether it meant that Mr. Kearney gave affirmatively exculpatory information about Mr. Forbes. <u>See</u> Tr. 11/14/2005 at 2673-74 ("I think that I wrote this either because Mr. Kearney said nothing about Mr. Forbes, or he in fact said, Mr. Forbes wasn't involved in these conversations. It's either reflecting an absence of commentary or affirmative

4

representation of a lack of involvement. And between those two, I can't speak."), attached as Ex. 6. Based on that testimony, the Court precluded Mr. Forbes from eliciting testimony from Mr. Greiner about this note. Id. at 2676.

Mr. Greiner's testimony that the notation could simply reflect the absence of a statement by Mr. Kearney concerning Mr. Forbes was, at best, improbable. The "nada w/r/t WAF" notation is in the middle of Mr. Greiner's lengthy notes of the July 10, 2001 interview. It would be extremely odd to write during the midst of an interview that was still in progress that the witness had said nothing regarding Mr. Forbes. Moreover, a few pages later Mr. Greiner's notes reflect that the issue of whether anyone superior to Mr. Corigliano had any knowledge of the accounting issues did come up. See Ex. 2 at MGR182 ("doesn't think $C^2$ was doing this on his own – points to $C^2$'s comment about Shelton; DK [doesn't know] more"). Mr. Greiner was not asked about this latter notation when he testified that he could not determine if his "nada" note reflected an absence of commentary or an affirmative representation of a lack of involvement. Had he been asked about this second notation (as he undoubtedly will be in the third trial), it would most likely have resolved the uncertainty that he claimed lingered over the meaning of his "nada" notation. It would be incredulous to continue to claim that the notation might mean that Mr. Forbes' name simply did not come up during the interview when Mr. Kearney was clearly asked about what he knew concerning those above Mr. Corigliano in the company.

Accordingly, Mr. Forbes is serving subpoenas on the SEC and its employees pursuant to Rule 17(c) for any additional notes of the July 10, 2001 interview of Mr. Kearney, or for any memoranda which describe what Mr. Kearney said concerning: (1) his interactions with Stu Bell, (2) his knowledge (or lack of knowledge) concerning Walter Forbes, or (3) his

knowledge concerning the involvement of those more senior to Cosmo Corigliano, and which does not identify Walter Forbes. Should the defense call the SEC employees to testify concerning Mr. Kearney's prior inconsistent statements, the documents sought by these subpoenas may be admitted as the prior statements of the SEC witnesses should they testify inconsistently with the documents they authored, or as prior recollection recorded, as has been done with other notes produced in this case when the Court has found that the defense has satisfied the requirements of Federal Rule of Evidence 803(5).[4]

---

[4] The Court has denied Mr. Forbes' request to either preclude Mr. Kearney's false testimony or to permit Mr. Forbes to enter Mr. Greiner's inconsistent notes into evidence. See Forbes Third Trial Motion in Limine No. 6 and the Court's Ruling thereon, Docket No. 2476. The Court also declined to direct the government to seek such notes from the SEC, presumably because the Court agrees with the government's argument that its discovery and Brady/Giglio obligations do not extend to the SEC. Tr. 9/12/2006 at 157-58.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____
Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Dated: October 9, 2006

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Memorandum in Support of Certification of Walter A. Forbes Regarding Trial Subpoenas <u>Duces</u> <u>Tecum</u> to the SEC and Three of Its Employees, to be filed electronically and to be served on October 9, 2006 to the following via e-mail:

>Norman Gross, Esq. (norman.gross@usdoj.gov)
>Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
>Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

and to be sent on October 9, 2006 to the following by Fed Ex:

>Kathleen Cody, Esq.
>Securities and Exchange Commission
>100 F Street, N.E.
>Washington, D.C. 20549-9162

_____
Barry S. Simon