# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 3:02CR264 (AHN) |
| v. | ) | |
| WALTER A. FORBES | ) | October 9, 2006 |

## DEFENDANT WALTER A. FORBES' REQUESTED COUNTER-DESIGNATIONS OF TESTIMONY AND MEMORANDUM IN SUPPORT THEREOF

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits his counter-designations with respect to the previous trial testimony by Mr. Forbes that the government seeks to offer in its case-in-chief.

## BACKGROUND

On April 17, 2006, the government designated portions of Mr. Forbes' prior trial testimony on eight different subjects that it seeks to offer in its case-in-chief. See Docket No. 2262 at 16-18. On May 1, 2006, Mr. Forbes filed a memorandum in which he objected to all of the government's proposed designations. See Docket No. 2320. Because Mr. Forbes opposed all of the government's designations, he did not propose counter-designations at that time. Mr. Forbes indicated that he would counter-designate appropriate testimony in the event the Court permitted the government to introduce portions of Mr. Forbes' prior testimony in the government's case-in-chief. See Docket No. 2320 at 14.

On October 3, 2006, the Court ruled that it would permit the government to offer all of the prior testimony by Mr. Forbes that the government designated for inclusion in its case-in-chief. See Docket No. 2478. Because the Court has now rejected Mr. Forbes' contention that none of his prior testimony should be read during the government's case-in-chief, Mr. Forbes hereby submits (over objection) his counter-designations of testimony.

The Court has ruled that it "deems as counter-designated the portions of Forbes's prior testimony that Judge Thompson previously ruled to be properly counter-designated." Docket No. 2478 at 5. Mr. Forbes respectfully submits that the prior counter-designations from the 2004 trial that Judge Thompson permitted are insufficient in several respects.

First, the government's current designations contain portions of Mr. Forbes' testimony from the 2005 trial regarding issues that arose for the first time during the 2005 trial. See Docket No. 2262 at 17-18, items 7 & 8 (designating 2005 testimony). Mr. Forbes' prior counter-designations of testimony were limited to the government's designations of testimony from the 2004 trial. Mr. Forbes prepared those counter-designations prior to the 2005 trial, see Docket No. 1653 at 12, and they did not contain any testimony from the 2005 trial. As a result, Mr. Forbes' prior counter-designations do not address items 7 and 8 in the government's current designations, which were the subject of testimony only at the 2005 trial. Mr. Forbes needs to designate testimony from the 2005 trial to address the government's new designations of testimony concerning issues that first arose during the 2005 trial.

Second, the government has supplemented one of its designations with testimony on the same subject from the 2005 trial. See, e.g., Docket No. 2262 at 17, item 2. Mr. Forbes' prior counter-designations, which were done in advance of the 2005 trial, see Docket No. 1653 at

2

12, were limited to testimony from the 2004 trial. Mr. Forbes gave additional relevant testimony during the 2005 trial concerning the subjects identified in the government's current designations. Mr. Forbes seeks to designate additional testimony from the 2005 trial that is relevant to the government's designations and that concerns the same subject-matter as the government's designations.

Third, certain testimony previously counter-designated by Mr. Forbes from the 2004 trial is no longer relevant to this case. For example, a portion of testimony previously counter-designated by Mr. Forbes relates to a count that the government has dismissed from the indictment. See Trial 1 Tr. at 13,548:5-9. Accordingly, Mr. Forbes needs to modify his previous counter-designations to respond to changes in the government's case.

Finally, Mr. Forbes respectfully submits that Judge Thompson erroneously precluded certain testimony previously counter-designated by Mr. Forbes. The testimony excerpts that Judge Thompson precluded satisfy the standard for admissibility under Fed. R. Evid. 106 and "ought in fairness be considered contemporaneously with," id., the testimony the government intends to introduce. The exclusion of Mr. Forbes' counter-designations will create a fundamentally unfair situation in which the government's selective excerpts "paint[] a distorted picture" of Mr. Forbes' testimony that he will be "powerless to remedy without taking the stand." United States v. Walker, 652 F.2d 708, 713 (7th Cir. 1981) (cited in United States v. Marin, 669 F.2d 73, 85 n.6 (2d Cir. 1982)). In the event Mr. Forbes chooses not to testify, the selective admission of the government's excerpts, without Mr. Forbes' corresponding testimony, will unfairly penalize him and will leave the jury with a misleading picture of Mr. Forbes' prior testimony. See Walker, 652 F.2d at 713-14 (reversing where trial court excluded relevant

3

portions of defendant's prior testimony).  Accordingly, the Court should permit Mr. Forbes to offer the excerpts of his prior testimony that Judge Thomson precluded.

Mr. Forbes' requested counter-designations are set forth below.  For the convenience of the Court, Mr. Forbes has divided the counter-designations into three categories:

(1)    prior counter-designations permitted by Judge Thompson that Mr. Forbes continues to request;

(2)    prior counter-designations precluded by Judge Thompson that Mr. Forbes continues to request; and

(3)    additional counter-designations requested by Mr. Forbes (primarily of 2005 testimony) that were never addressed by Judge Thompson.

**I.     COUNTER-DESIGNATIONS CONCERNING ANNE PEMBER.**

| | | | |
|---|---|---|---|
| 1. | Prior Counter-Designations Permitted By Judge Thompson That Mr. Forbes Requests: | Trial 1 Tr.: | 13774:18-13777:17 |
| 2. | Prior Counter-Designations Precluded By Judge Thompson That Mr. Forbes Requests: | None | |
| 3. | Additional Counter-Designations Requested By Mr. Forbes That Judge Thompson Did Not Address: | Trial 1 Tr.: | 13619:9-19; 13778:20-13781:22; 14364:10-14 |
| | | Trial 2 Tr. | 2941:17-2942:11; 2942:24-2944:1; 2944:10-12; 2944:19-2945:24; 2946:18-2947:4; 2952:18-2954:15 |

One of the government's major themes in this case is that Mr. Forbes sought to keep Anne Pember in her position at CUC (overseeing the consolidation of CUC's financials) in order to keep CUC's accounting separate from HFS's accounting and thereby conceal the fraud from HFS. The government has designated extensive testimony concerning Ms. Pember (Trial 1 Tr.: 14350:15-14364:9) in an attempt to suggest that any actions that Mr. Forbes took on Ms. Pember's behalf were done because Mr. Forbes knew that Anne Pember was involved in fraudulent accounting. The government has designated testimony concerning, inter alia, a conversation between Mr. Forbes and HFS CEO Henry Silverman in which Ms. Pember was discussed, a memo written by Mr. Shelton in October 1997 (and cc'd to Mr. Forbes) that addressed Ms. Pember (GX 616), and the new employment agreement that Ms. Pember received

5

in the fall of 1997 that was signed by Mr. Forbes (GX 498). The government also has designated testimony concerning a purported conversation between Mr. Forbes and Mr. Monaco in 1997 relating to Ms. Pember. See p. 20, infra.

The limited additional testimony counter-designated by Mr. Forbes is directly relevant to the testimony designated by the government concerning Anne Pember. It addresses Mr. Forbes' extremely limited interaction with Ms. Pember and Mr. Forbes' lack of knowledge that Ms. Pember was involved in wrongdoing. It addresses a document directly referenced in the government's designations. It also rebuts the inference that the government wants the jury to draw concerning GX 498 (Ms. Pember's employment contract) -- namely, that Mr. Forbes gave Mr. Pember additional financial benefits and personally signed her employment contract because he purportedly knew that she was involved in fraud. It shows that another CUC employee not involved in any fraud – Laura Hamilton -- received a similar employment contract that Mr. Forbes personally signed, and that Mr. Forbes was not involved in either the preparation of GX 498 or the negotiation of the terms of GX 498. The testimony counter-designated by Mr. Forbes also shows that Mr. Forbes agreed with Mr. Silverman's decision to remove Ms. Pember from her position in March 1998, and did not fight to keep her.

The additional testimony counter-designated by Mr. Forbes is necessary to respond to the implication that the government wants the jury to draw from the testimony it has designated -- namely, that Mr. Forbes gave Ms. Pember special treatment and fought to keep her in her position overseeing CUC's consolidation because he knew she was a participant in the fraud. It also is necessary to place the testimony the government seeks to offer into context.

6

**II.    COUNTER-DESIGNATIONS CONCERNING ERNST & YOUNG.**

| | | | |
|---|---|---|---|
| 1. | Prior Counter-Designations Permitted By Judge Thompson That Mr. Forbes Requests: | Trial 1 Tr.: | 13815:8-13821:23 |
| 2. | Prior Counter-Designations Precluded By Judge Thompson That Mr. Forbes Requests: | Trial 1 Tr.: | 13821:24-13831:13 |
| 3. | Additional Counter-Designations Requested By Mr. Forbes That Judge Thompson Did Not Address: | Trial 2 Tr. | 2740:16-2741:9; 2965:16-2966:4; 2970:1-13; 2970:22-25; 2971:20-2972:2 |

The testimony designated by the government on the subject of Ernst & Young ("E&Y") is designed to suggest to the jury that Mr. Forbes purportedly lobbied for E&Y to be the outside auditor of Cendant (or, at a minimum, for the CUC portion of Cendant) so that the fraud at CUC would not be detected.  The government's designations include references to Mr. Monaco's testimony about two meetings in January 1998 -- one on January 16, 1998 and one on January 25, 1998 -- in which Mr. Forbes allegedly lobbied for E&Y and allegedly made incriminating statements.

The counter-designations precluded by Judge Thompson respond to testimony designated by the government concerning Mr. Monaco's assertion that Mr. Forbes lobbied for E&Y at the January 25, 1998 Cendant Executive Committee meeting.  The testimony rebuts the government's contention that Mr. Forbes raised the issue of E&Y at the January 25, 1998 meeting.  It is essential to place the testimony that the government seeks to offer into context and to prevent the jury from being misled by the excerpt the government seeks to offer.

7

The counter-designations precluded by Judge Thompson explain that on January 20, 1998, Deloitte &Touche was selected as Cendant's outside auditor. The testimony explains that it would not have made any sense for Mr. Forbes to re-raise the issue of E&Y on January 25, 1998 because the company had selected Deloitte & Touche as its auditor five days earlier and already had made a public announcement to that effect prior to the January 25, 1998 meeting. The testimony also explains that the minutes of the January 25, 1998 Executive Committee meeting make no reference to Mr. Forbes' purported statements concerning E&Y on January 25, 1998. The testimony is essential to explain the testimony designated by the government and should, in fairness, be considered with that testimony.

Mr. Forbes' additional, extremely limited counter-designations from the 2005 trial (which were not addressed by Judge Thompson) also are necessary to place the government's designations in context. They are essential to address the inference the government wants the jury to draw from its selected excerpts -- namely, that Mr. Forbes repeatedly advocated to keep E&Y as CUC's auditor because he purportedly was aware of the fraud and knew that it had successfully been concealed from E&Y. They show that CUC selected E&Y as its outside auditor based on the recommendation of the CUC Board, and that Mr. Forbes understood that E&Y was a major international accounting firm with a strong reputation. This testimony places in context the government's designations concerning Mr. Forbes' alleged lobbying for E&Y and explains the legitimate reasons why Mr. Forbes put in a good word for E&Y at the January 16, 1998 meeting. The testimony also rebuts the government's contention that Mr. Forbes purportedly lobbied to keep E&Y because he believed that it was necessary to keep E&Y as the outside auditor in order to conceal the fraud. Finally, the testimony shows that Mr. Forbes voted

8

for Deloitte & Touche as Cendant's outside auditor on January 16, 1998. The testimony is directly relevant to the government's designations and should be permitted under Fed. R. Evid. 106.

## III.    ASSET TRANSFERS AND LEGAL ADVICE.

Mr. Forbes has a pending motion for reconsideration concerning the asset transfer evidence the government seeks to present, including the government's designations of Mr. Forbes' prior testimony on this issue. Mr. Forbes also objects to the government's attempt to call Mr. Danilow as a witness in the government's case-in-chief. The government seeks to call Mr. Danilow solely as an <u>impeachment</u> witness, in an attempt to impeach testimony by Mr. Forbes that the government has designated to be read in its case-in-chief.[1]

Judge Thompson previously ruled that the government could <u>not</u> introduce evidence in its case-in-chief that was offered for the purpose of impeaching Mr. Forbes' credibility. <u>See</u> Docket No. 1845 at 1-2 (precluding the government from presenting evidence concerning Mr. Forbes' severance agreement in the government's case-in-chief, because it was impeachment material). Judge Thompson rejected the government's argument that impeachment evidence should be admitted in the government's case-in-chief because the government had designated prior testimony by Mr. Forbes for inclusion in its case-in-chief. <u>Id.</u> He ruled that impeachment material could be offered by the government only if Mr. Forbes actually <u>testified</u> at the trial. <u>See id.</u> at 3.

Judge Thompson's ruling excluding impeachment evidence from the government's case-in-chief applies with equal force to Mr. Danilow. The testimony the

---

[1]    Mr. Forbes will supply counter-designations on the subject of asset transfers (over objection) in the event the Court denies his pending motion for reconsideration and following the Court's ruling concerning whether Mr. Danilow will be permitted to testify in the government's case-in-chief.

10

government seeks to elicit from Mr. Danilow is offered for the purpose of impeaching Mr.

Forbes and cannot be presented in the government's case-in-chief.

Mr. Forbes is not a government witness and cannot be called in the government's

case. "[A]s a general matter of relevance, a person who does not testify at trial and who is not

the source of statements admitted for their truth is not subject to impeachment." United States v.

Finley, 708 F. Supp. 906, 909 (N.D. Ill. 1989); see also United States v. Kabbaby, 672 F.2d 857,

863-84 (11th Cir. 1982).

The government cannot offer impeachment evidence concerning Mr. Forbes'

credibility in its case-in-chief. It is well settled that a party may not call a witness for the sole

purpose of impeaching his credibility with otherwise inadmissible evidence. See United States v.

Johnson, 802 F.2d 1459, 1466-67 (D.C. Cir. 1986) (collecting cases); United States v. Webster,

734 F.2d 1191, 1192 (7th Cir. 1984) (collecting cases); United States v. Gorny, 732 F.2d 597,

604 (7th Cir. 1984); United States v. Rogers, 549 F.2d 490, 497 (8th Cir. 1976); United States v.

Morlang, 531 F.2d 183, 189 (4th Cir. 1975). The government cannot circumvent that rule by

introducing portions of Mr. Forbes' prior testimony and then seeking to impeach the credibility

of that testimony with evidence that is otherwise inadmissible in the government's case. That

tactic would constitute a "subterfuge to get before the jury" evidence that is not otherwise

admissible. United States v. Eisen, 974 F.2d 246, 262 (2d Cir. 1992).

The government's attempt to call Mr. Danilow in its case-in-chief also would

violate Mr. Forbes' absolute Fifth Amendment right not to testify. See Brooks v. Tennessee, 406

U.S. 605, 609 (1972). While a defendant's decision to testify "carries with it serious risks of

impeachment and cross-examination," <u>id.</u>, if a defendant does not testify in a criminal case, the government is <u>not</u> permitted to present evidence offered to impeach his credibility.

The government cannot be allowed to do an end-run around Mr. Forbes' absolute Fifth Amendment right not to testify by offering Mr. Forbes' prior testimony for the purpose of attempting to impeach his credibility through otherwise inadmissible evidence. The Court should preclude the government from calling Mr. Danilow in its case-in-chief because Mr. Danilow's testimony is impeachment evidence that cannot be presented in the government's case.

IV.    **COUNTER-DESIGNATIONS CONCERNING ANALYST TARGETS &**
       **PURPORTED MEETINGS WITH COSMO CORIGLIANO.**

    1.    Prior Counter-Designations Permitted
          By Judge Thompson
          That Mr. Forbes Requests:                None

    2.    Prior Counter-Designations Precluded
          By Judge Thompson That Mr. Forbes
          Requests:                                None

    3.    Additional Counter-Designations
          Requested By Mr. Forbes That Judge
          Thompson Did Not Address:                Trial 1 Tr.    13971:1-15

       The extremely limited counter-designation requested by Mr. Forbes directly

responds to the testimony designated by the government and is necessary to place that testimony

in context. It almost directly follows the testimony designated by the government and relates to

the specific matter addressed in the government's designation.

## V.    COUNTER-DESIGNATIONS CONCERNING FORECASTS AND "CHEAT SHEETS."

| | | | |
|---|---|---|---|
| 1. | Prior Counter-Designations Permitted By Judge Thompson That Mr. Forbes Requests: | None | |
| 2. | Prior Counter-Designations Precluded By Judge Thompson That Mr. Forbes Requests: | Trial 1 Tr: | 13688:8-23 |
| 3. | Additional Counter-Designations Requested By Mr. Forbes That Judge Thompson Did Not Address: | Trial 2 Tr.: | 2826:14-2828:8; 2829:13-2830:20 |

The government's designation on this subject seeks to establish that Mr. Forbes was at meetings where forecasts were discussed. The government wants the jury to infer from this testimony that Mr. Forbes received and reviewed "cheat sheets" concerning allegedly improper accounting and was involved in the fraud at CUC.

The testimony counter-designated by Mr. Forbes on this subject places the testimony designated by the government in context. It rebuts the inference the government wants the jury to draw that Mr. Forbes had discussions with Mr. Corigliano in which they reviewed "cheat sheets" and discussed how CUC would meet earnings expectations through improper accounting. The testimony explains that, while Mr. Forbes attended meetings where forecasts were reviewed, he did not receive anything from Mr. Corigliano called a "cheat sheet," never saw a document that showed improper accounting, and never had any discussions with Mr. Corigliano concerning improper accounting or the misuse of merger reserves to achieve financial targets.

14

Without this testimony, the government will be able to create the misleading impression that the testimony excerpts the government seeks to offer somehow corroborate Mr. Corigliano's testimony or establish that Mr. Forbes attended meetings with Mr. Corigliano to review "cheat sheets." The testimony designated by Mr. Forbes is essential to respond to the excerpts the government seeks to introduce and to place that testimony in context.

## VI.    COUNTER-DESIGNATIONS CONCERNING MERGER RESERVES.

| | | | |
|---|---|---|---|
| 1. | Prior Counter-Designations Permitted By Judge Thompson That Mr. Forbes Requests: | Trial 1 Tr.: | 13685:2-13686:10 |
| 2. | Prior Counter-Designations Precluded By Judge Thompson That Mr. Forbes Requests: | Trial 1 Tr: | 13684:8-13685:1; 13686:11-13687:12; 13731:15-23; 13741:10-12; 13744:15-21; 13747:6-8; 13747:15-13749:8; 13765:14-13766:1 |
| 3. | Additional Counter-Designations Requested By Mr. Forbes That Judge Thompson Did Not Address: | Trial 2 Tr.: | 2832:17-2833:8; 2871:5-15; 2885:15-21; 2981:13-15 |

The government has designated the following testimony by Mr. Forbes concerning merger reserves:

Q.   Now, as part of these acquisitions you were aware reserves were going up, right, Mr. Forbes?

MR. SULLIVAN:  I'm sorry.  I didn't hear that.

BY MR. CARNEY:

Q.   As part of the company's acquisitions you were aware the reserves were being put up?

A.   I'm sorry, did you say put up?

Q.   Established?

A.   I would have expected reserves to be establish in most of our acquisitions, yes.

16

Q.  And you not only expected it, you knew it?

A.  I'm not sure that I can say that I knew reserves were set up in every acquisition, but I certainly would have expected that we would have set up reserves when we did an acquisition.

Q.  Okay.  And again, putting aside -- were you aware one was put up for Davidson?

A.  I believe I was.  I'm sure a company that size there would have been a reserve.

Q.  How about Sierra?

A.  Same.  I would have expected we would have had a reserve, yes.

Q.  Certainly Ideon, right?

A.  Yes.

Q.  And the merger with HFS, right?

A.  Yes.

Q.  Absolutely no question about it, right?

A.  No question at all.

Q.  All right.  So merger reserves -- and merger reserves were actually very important to this company, weren't they?

A.  I think if you're going to do mergers and they're going to be one-time costs, having merger reserves are very important, yes.

Trial 1Tr: 14191:11-14192:19.  The clear purpose of this cross-examination by the government was to establish that Mr. Forbes was aware of the existence of the two principal merger reserves that the government alleges were abused at CUC:  the Ideon reserve (consisting of reserves for the Ideon, Sierra, and Davidson acquisitions) and the HFS merger reserve.  The cross-examination also attempted to demonstrate that Mr. Forbes was generally aware that merger

17

reserves were established in connection with acquisitions and that merger reserves were very important to CUC. The cross-examination was designed to suggest that, because Mr. Forbes believed that merger reserves were important to CUC, and because Mr. Forbes was aware that merger reserves were set up for the Ideon, Sierra, Davidson, and HFS mergers, it was more likely that Mr. Forbes was involved in the creation of the reserves, knowledgeable of the "cushions" built into the reserves, and aware of how the reserves were misused at CUC.

The testimony counter-designated by Mr. Forbes that Judge Thompson precluded, and the limited additional testimony Mr. Forbes has designated on this subject, directly respond to the testimony the government has designated concerning Mr. Forbes' understanding of the importance of merger reserves to CUC. It also responds to the testimony the government seeks to offer concerning Mr. Forbes' awareness of the fact that reserves were established for the Ideon, Sierra, Davidson, and HFS mergers. The testimony rebuts the government's suggestion that Mr. Forbes sought to engage in mergers because of the reserves that would be set up in connection with the mergers. It also rebuts the inferences that the government wants the jury to draw -- that because Mr. Forbes was aware of the existence of merger reserves and considered them important to CUC, he was more likely to be aware of the fact that the reserves were inflated and that the reserves were used to inflate CUC's income.

The limited testimony excerpts that Mr. Forbes has designated concerning merger reserves are "necessary to explain the admitted portion, to place it in context, [and] to avoid misleading the trier of fact." Marin, 669 F.2d at 84. They are "relevant to the admitted

18

passages," id., and are needed "to ensure a fair and impartial understanding of the admitted

portion," id. (quotation omitted).  Without the testimony counter-designated by Mr. Forbes, the

government will be able to argue the incriminating inferences described above, without any

response from Mr. Forbes that rebuts those inferences and informs the jury that Mr. Forbes

testified that: (1) he did not seek to engage in mergers in order to create merger reserves; (2) he

did not know that cushions were set up in merger reserves; and (3) he did not participate in, or

have knowledge of, the misuse of merger reserves.  The Court should permit the testimony

counter-designated by Mr. Forbes pursuant to Rule 106.  See Walker, 652 F.2d at 710-15

(reversible error to exclude testimony counter-designated by defendant that was relevant to

excerpts offered by government).

**VII.  COUNTER-DESIGNATIONS CONCERNING MR. FORBES' ALLEGED CONVERSATION WITH MICHAEL MONACO IN 1997 CONCERNING ANNE PEMBER.**

| | | | |
|---|---|---|---|
| 1. | Prior Counter-Designations Permitted By Judge Thompson That Mr. Forbes Requests: | None | |
| 2. | Prior Counter-Designations Precluded By Judge Thompson That Mr. Forbes Requests: | None | |
| 3. | Additional Counter-Designation Requested By Mr. Forbes That Judge Thompson Did Not Address: | Trial 2 Tr.: | 2952:2-17; 3010:23-25 |

Judge Thompson did not address this issue because the testimony designated by the government did not take place until the second trial.  The government's designation is a new one and consists solely of 2005 testimony.

The Court should permit Mr. Forbes' extremely limited counter-designation on the subject of Mr. Forbes' purported conversation with Mr. Monaco concerning Anne Pember. The testimony counter-designated by Mr. Forbes is directly relevant to the testimony designated by the government and is necessary to place the testimony designated by the government in context.  It explains why Mr. Forbes did not discuss Ms. Pember with Mr. Monaco in a meeting in New Jersey in 1997, contrary to the implication of the testimony designated by the government.  The Court should permit it pursuant to Rule 106.

## VIII. COUNTER-DESIGNATIONS CONCERNING MR. FORBES' ALLEGED CONVERSATION WITH STEVEN KERNKRAUT REGARDING WHY THE IDEON MERGER RESERVE WAS INCREASED.

|   |   |   |
|---|---|---|
| 1. | Prior Counter-Designations Permitted By Judge Thompson That Mr. Forbes Requests: | None |
| 2. | Prior Counter-Designations Precluded By Judge Thompson That Mr. Forbes Requests: | None |
| 3. | Additional Counter-Designation Requested By Mr. Forbes That Judge Thompson Did Not Address: | Trial 2 Tr.:    2871:18-22 |

Judge Thompson did not address this issue because the testimony designated by the government did not take place until the second trial. The government's designation is a new one and consists solely of 2005 testimony.[2]

The Court should permit Mr. Forbes' extremely limited counter-designation on this subject. It is directly relevant to the testimony designated by the government and is necessary to place the testimony designated by the government in context.

---

[2]    In the event Mr. Kernkraut does not testify in this trial, the Court should strike the government's designation on this subject in its entirety. Mr. Forbes denies the alleged conversation with Mr. Kernkraut. The government's prior questions to Mr. Forbes on this subject are not evidence that any such conversation took place. If Mr. Kernkraut does not testify in this trial, there will be no factual basis for an inference that the alleged conversation took place. It would be improper, confusing, misleading, and prejudicial for the government to offer a testimony excerpt that assumes alleged facts not in evidence and that suggests to the jury that a witness who does not testify in this trial had given testimony at odds with Mr. Forbes'.

21

**IX.    COUNTER-DESIGNATIONS CONCERNING MR. FORBES' DENIALS OF WRONGDOING.**

| | | | |
|---|---|---|---|
| 1. | Prior Counter-Designations Permitted By Judge Thompson That Mr. Forbes Requests: | None | |
| 2. | Prior Counter-Designations Precluded By Judge Thompson That Mr. Forbes Requests: | Trial 1 Tr.: | 13537:4-13543:25; 13548:10-13549:15 |
| 3. | Additional Counter-Designation Requested By Mr. Forbes That Judge Thompson Did Not Address: | Trial 2 Tr.: | 2698:22-2700:20; 2701:1-2702:14 |

Finally, Mr. Forbes has designated certain limited testimony to address the totality of the testimony designated by the government. The government will attempt to argue that the excerpts of Mr. Forbes' testimony that it has designated are evidence of his guilt. The testimony counter-designated by Mr. Forbes is necessary to clarify and explain the testimony the government seeks to offer and to place that testimony in context.

Without hearing Mr. Forbes' clear and unequivocal denials of guilt, the jury will be misled by the government's selective excerpts. Because the government will assert that the testimony excerpts it seeks to offer are probative of guilt, it is essential for the jury to hear Mr. Forbes explicitly and clearly deny that he engaged in any wrongdoing. Mr. Forbes' counter-designations ought, in fairness, to be considered together with the testimony the government seeks to offer.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

    Brendan V. Sullivan, Jr. (Bar No. ct17115)
    Barry S. Simon  (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

    - and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Defendant Walter A. Forbes'
Requested Counter-Designations of Testimony and Memorandum in Support Thereof, to be filed
electronically and to be served on October 9, 2006 to the following via e-mail:

> Norman Gross, Esq. (norman.gross@usdoj.gov)
> Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
> Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)
> Mark Coyne, Esq. (mark.coyne@usdoj.gov)

Barry S. Simon