```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA      :  No. 3:02CR00264 (AHN)
                              :
                              :
         v.                   :  October 17, 2006
                              :
                              :
                              :
WALTER A. FORBES              :
```

**GOVERNMENT'S OPPOSITION TO DEFENDANT WALTER A. FORBES' MOTION
FOR A MISTRIAL BASED ON ALLEGED BRADY/GIGLIO VIOLATIONS
AND THE TESTIMONY OF KEVIN KEARNEY**

(Opposition to Forbes Third Trial Motion No. 18)

INTRODUCTION

In this motion -- Forbes' 54th written motion or "pleading" concerning the third trial -- Forbes demands a mistrial or other relief based on information that he supposedly discovered only after prosecution witness Kevin Kearney testified last week. That information pertains to the fact, disclosed to Forbes' defense team at least during the first trial, if not sooner, that Kearney's CPA license was revoked for a five-year period. FTTr. 9854. Forbes claims he only recently learned that a former member of the prosecution team, former AUSA John Carney, spoke to an official at the Connecticut State Board of Accountancy ("CSBA") regarding Kearney's cooperation with federal law enforcement officials in this case.

Based upon a selective reading of the documents appended to his motion, Forbes argues that a mistrial is warranted because

former AUSA Carney's statements to the CSBA official regarding Kearney constitutes important impeachment material that was not available to Forbes when Kearney testified.  Alternatively, Forbes asks that Kearney's testimony be stricken in its entirety. Finally, Forbes asks that the Court give a highly argumentative instruction regarding Kearney's testimony, stating that Kearney supposedly "changed his story" after AUSA Carney's conversation with the CSBA official.  See footnote 5 to Forbes' Memorandum in Support of Forbes Third Trial Motion No. 18 ("FM").

Each of Forbes' requests should be denied.  First, none of the information identified by Forbes is material to Kearney's credibility.  For that reason, the prosecution had no obligation to disclose it to the defense.  Second, the CSBA has confirmed that the information in its files concerning Kearney was available to Forbes long before this third trial, as demonstrated by his ability to obtain that information in time to file the instant motion less than one week after the third trial started. Third, Forbes can make whatever use of the information appended to his motion that he is permitted to make by this Court during this trial, simply by recalling Kearney as a witness and questioning him about it.  Accordingly, there is no need for the Court to grant any of the extraordinary and unprecedented relief requested in this motion.

**ARGUMENT**

I. **THE INFORMATION REGARDING KEARNEY'S SUSPENSION AND THE REINSTATEMENT OF HIS CPA LICENSE IS NOT MATERIAL.**

Forbes contends that supposedly newly-discovered information that former AUSA John Carney spoke to Michael Kozik, formerly the CSBA's General Counsel,[1] "on Kearney's behalf" in October 2002 is material impeachment evidence, because Forbes could have used that information to show that: (1) Kearney received a benefit from the prosecution team in exchange for his cooperation in this case which benefit was not previously disclosed to the defense; and (2) Kearney did not inform any members of the prosecution team that Stuart Bell and Cosmo Corigliano had invoked Forbes' name as a participant in the fraud until after Carney spoke to Kozik. Neither argument demonstrates that the supposedly newly-discovered information is material.

Although the prosecution team must disclose information that is material to the defense, it need not disclose, as Forbes would have it, everything that a member of the prosecution team knows about what a prosecution witness or his or her attorney ever said that might be relevant to this case. "Brady does not . . . require the prosecution to disclose all exculpatory and impeach-ment material; it need disclose only material 'that, if sup-pressed, would deprive the defendant of a fair trial.'" United

---

[1] Kozik is now the Director of Elections for the State of Connecticut.

States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001) (quoting United States v. Bagley, 473 U.S. 667, 675 (1985)).

Undisclosed information is not "material" in a constitutional sense simply because it might "help[] the defense" or might "affect[] the outcome of the trial." United States v. Agurs, 427 U.S. 97, 109-10 (1976); see United States v. LeRoy, 687 F.2d 610, 619 (2d Cir. 1982) ("The rationale underlying Brady is not to supply a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence only known to the Government."). Rather, information possessed by the prosecution team must be disclosed under Brady and its progeny only if there is a "reasonable probability" that the information would "affect[] the outcome of the case," or would "put the whole case in such a different light as to undermine confidence in the verdict." Coppa, 267 F.3d at 135 (internal quotation marks omitted).

Here, any statements that former AUSA Carney made to Kozik regarding Kearney do not amount to material impeachment material regarding Kearney, because Carney's statements did not confer any benefit on Kearney. Nor does evidence of former AUSA Carney's statements to Kozik materially advance Forbes' claim that Kearney belatedly and falsely implicated Forbes in order to secure more lenient treatment for Kearney himself. As shown by the CSBA "Case Log" on which Forbes principally relies, former AUSA Carney

-4-

did not seek any favorable treatment from the CSBA on Kearney's behalf.

Rather, the Case Log reveals that, in April 2002, Kearney's lawyer, Robert Fetweiss, truthfully informed Kozik that Kearney had cooperated with Cendant's internal investigation of the charged fraud and the investigation of the United States Attorney's Office ("USAO") into the fraud.  Exhibit 1 to Forbes' Motion.  According to the CSBA Case Log:

> Fetwise [sic] says when it hit the fan inside Cendant, a special audit committe [sic] was appointed, Kearney was contacted by them & extensively cooperated with them;
>
> also cooperated with US Atty WITHOUT COUNSEL; by the time he got a lawyer, he had been fully debriefed by US atty;
>
> Fetwise says: because he cooperated three people above him pleaded guilty & implicated the 2 highest

Fetweiss then told Kozik that then AUSA Carney was the person in the USAO to contact to confirm Fetweiss's statements about Kearney's cooperation with the USAO's investigation.  Id.

According to the Case Log, when contacted by Kozik more than six months later, in late October 2002, AUSA Carney did nothing more than truthfully confirm Fetweiss's prior representations to the CSBA about Kearney's cooperation with the USAO.  The entirety of the Case Log notations regarding AUSA Carney's statements to Kozik is as follows:

> 10/23 left message for Asst US Atty John Carney (Newark) 973-645-2700

> 10/24/02 tel Asst US Atty John Carney was very coop; didn't think up the fraud; did not know initially; got drawn in
>
> very early in coop came to prosecutors without lawyer & wanted to be helpful; valuable in implicating higher-ups; has testified & will testify in future; 2 highest conspirators go on trial in Hartford in next couple of months

Exhibit 1 to Forbes' Motion.

  There is nothing in the Case Log which supports the notion that AUSA Carney sought preferential treatment for Kearney by the CSBA.  Rather, AUSA Carney was merely confirming the accuracy of the information that Fetweiss had previously supplied to the CSBA.  How AUSA Carney's mere, truthful affirmation of information previously supplied to the CSBA by Kearney's own attorney amounts to a "benefit" or "deal" between the Government and Kearney that could have induced Kearney to give false inculpatory testimony against Forbes in this case is a mystery.

  In fact, former AUSA Carney has confirmed that he did not lobby the CSBA on Kearney's behalf.  Although former AUSA Carney does not recall the telephone conversation between him and Kozik reflected in Exhibit 1 of Forbes' motion, former AUSA Carney confirmed that, in response to a regulatory inquiry such as this, he would have described Kearney's efforts to cooperate.  Former AUSA Carney represents that he never agreed to ask, nor did he ask, the CSBA to take any action on Kearney's behalf.  Former AUSA Carney further represents that he did not and would not have

discussed Kearney with the CSBA unless and until the CSBA contacted him first.

Confirming former AUSA Carney's representations, Kozik, who is the "MK" referred to in Exhibit 1 to Forbes' motion, has confirmed that he, not former AUSA Carney, initiated the contact concerning Kearney, and that former AUSA Carney merely provided information in response to Kozik's questions and most certainly did not lobby or ask for any special consideration for Kearney. Relatedly, Rebecca Adams, the current CSBA General Counsel, confirmed that, where CSBA inquiries overlap with pending regulatory or criminal matters, CSBA investigators routinely call the government attorneys handling those matters for information concerning those matters.  General Counsel Adams also confirmed that the sanction Kearney received -- a five-year revocation of his CPA certificate, concurrent with the SEC's five-year revocation of his right to practice, with the right to apply for reinstatement after the end of that period at the CSBA's discretion -- was on the severe end of the range of sanctions typically imposed by the CSBA.

Forbes nevertheless argues that the timing of Carney's conversation with Kozik supports Forbes' claim that Kearney has falsely implicated Forbes in the fraud, because Kearney supposedly did not begin to implicate Forbes in the fraud until after Carney's conversation with Kozik in October 2002.  To the contrary, the timing of these events does not materially advance

-7-

Forbes' attempted impeachment of Kearney.  Forbes received, long before the first trial in this case, dozens of documents which, according to Forbes, support his claim that Kearney falsely implicated Forbes in the fraud as shown by the timing of Kearney's accusations.  FM 7; see exhibits attached to Forbes Third Trial Motion In Limine No. 6, Docket 2274.[2]  Forbes' claim of fabrication has been briefed and argued at length by the parties, and both this Court and Judge Thompson have rejected it.

Additionally, there is no dispute that the Government has elected not to prosecute Kearney for his admitted involvement in the charged fraud.  For that reason, Forbes can argue that Kearney has falsely implicated Forbes in the charged fraud based on Kearney's supposed hope and expectation that, in return for his cooperation against Forbes, Kearney would not be criminally prosecuted.  Thus, Forbes already has sufficient information to

---

[2] Forbes contends that, since the Case Log does not reflect that either Fetweiss or Carney told Kozik that Kearney had implicated Forbes by 2002, the Case Log will serve as an additional basis to impeach Kearney on the ground that he supposedly never implicated Forbes before 2003. FM 4.  Suffice it to say that the voluminous notes of Kearney's interviews with members of the prosecution team and with SEC officials, all of which were turned over to the defense before the first trial, already provide ample ammunition for Forbes to make this claim, as he did in each of the three trials.  By contrast, Kozik's Case Log does not even identify the persons whom Kearney implicated, according to Fetweiss and Carney, much less purport to state that Kearney did not implicate Forbes.  Thus, the Case Log adds nothing to Forbes' contention that Kearney did not implicate Forbes in the fraud until 2003 -- matters discussed in the Government's 2003 and 2004 Giglio letters concerning Kearney, all of which were considered by the Court in denying Forbes Third Trial Motion in limine No. 6.  See Docket 2247.

mount an argument that Kearney's testimony against Forbes in this case was motivated by an interest that is much more powerful than the mere timing of when Kearney would be able to apply for reinstatement of his CPA license: the interest to avoid criminal prosecution and possible incarceration, criminal fines, and the payment of restitution. Impeachment evidence is not material where the undisclosed evidence merely constitutes "an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." United States v. Payne, 63 F.3d 1200, 1210 (2d Cir. 1995).

That the supposedly newly discovered impeachment evidence would enable Forbes to also argue that Kearney framed Forbes because he wanted the additional benefit of an earlier date to apply for reinstatement of his CPA license does not render that information material and therefore subject to disclosure under Brady or Giglio. Evidence is material only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles v. Whitley, 514 U.S. 419, 433-34 (1995). Given the extensive material already at Forbes' disposal to challenge Kearney's testimony when he testified during this third trial, and particularly to show his supposed bias, more of the same would not be material. United States v. Zackson, 6 F.3d 911, 919 (2d Cir. 1993) ("we believe that [defendant] had sufficient access to the essential facts enabling him to take advantage of

any exculpatory material that may have been available"); United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987) ("no Brady violation occurs if the defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory evidence").

Additionally, Kearney is hardly the only or even the most significant witness whose testimony implicates Forbes in the charged fraud. That being so, any additional information that Forbes claims he would have used to attack Kearney's testimony is not so material that it justifies the drastic remedy of a mistrial. In a case over which this Court presided, the Second Circuit explained that suppressed impeachment evidence is "material if the witness whose testimony is attacked supplied the only evidence linking the defendant(s) to the crime, or where the likely impact on the witness's credibility would have undermined a critical element of the prosecution's case." United States v. Diaz, 176 F.3d 52, 108-109 (2d Cir. 1999) (affirming Nevas, D.J.) (quoting United States v. Wong, 78 F.3d 73, 79 (2d Cir. 1996) and Payne, 63 F.3d at 1210). For that reason, too, the CSBA documents are not material, and the Government did not violate its disclosure obligations with respect to those documents.

**II. THE PROSECUTION TEAM COULD NOT SUPPRESS INFORMATION THAT WAS EQUALLY AVAILABLE TO THE DEFENSE.**

Forbes' Brady/Giglio claim fails for the additional reason that the prosecution team cannot suppress information that was

equally available to the defense. The key document supporting Forbes' motion is the CSBA Case Log containing the information regarding former AUSA Carney's conversation with Kozik. That conversation was memorialized in the Case Log on October 17, 2002, over 18 months before the first trial in this case commenced. As Forbes accurately concedes, "the government did not have a duty to obtain the Case Log from the CSBA." FM at 3.

Forbes declines to mention in his present motion how it is that the documents from the CSBA files coincidentally came into the possession of defense counsel only after Kearney testified for the third time in this case, and not at some earlier time. Forbes tellingly does not contend that he was unable to secure those documents three or four days before he filed the instant motion, which would have been before Kearney testified in this trial. Having obtained from the CSBA's files the information which he claims that the Government suppressed, Forbes has demonstrated that the information was readily available to him without the assistance of the Government. As such, the Government did not suppress that information.

Indeed, Forbes has only himself to blame for not obtaining any earlier the documents attached to his motion. David Guay, Executive Director of the CSBA, has confirmed that CSBA files concerning Kearney have always been available upon request during the pendency of this case. Rebecca Adams, the CSBA's General Counsel, confirmed that to obtain information from the CSBA, one

-11-

need only enter the CSBA's offices in Hartford, Connecticut and ask for that information.  General Counsel Adams further confirmed that counsel for Forbes began requesting information concerning Kearney prior to the first trial, and that the CSBA first responded to those requests in April 2004 in letters addressed to Thomas Murphy, Esq., Forbes' local counsel.  According to General Counsel Adams, these disclosures included at least Exhibit 3 to Forbes' motion (the settlement agreement between the CSBA and Kearney).  Furthermore, General Counsel Adams has confirmed that minutes of a CSBA meeting discussing Kearney have been available on the CSBA's website since mid-2003; the Government located those minutes yesterday with a simple Google search. http://www.ct.gov/sboa/LIB/sboa/sboaminutes/2003/Apr03min.pdf.

The "purpose [of Brady] is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur."  United States v. Bagley, 473 U.S. 667, 675 (1985).  Brady does not place any burden upon the prosecution team "to conduct a defendant's investigation or assist in the presentation of the defense's case."  United States v. Aubin, 87 F.3d 141, 148 (5th Cir. 1996) (quotations omitted).  For that reason, evidence "is not considered to have been suppressed within the meaning of the Brady doctrine if the defendant or his attorney either knew, or should have known of the essential facts permitting him to take advantage of [that] evidence."  United States v. Torres, 129 F.3d 710,

717 (2d Cir. 1997) (quoting <u>United States v. Gonzalez</u>, 110 F.3d 936, 944 (2d Cir. 1997)).

Additionally, the information identified by Forbes in this motion regarding Kearney was in the files, not of the prosecution team, but in the files of CSBA, which even Forbes does not contend was part of the prosecution team in this case.  This Court has previously concluded that information in the hands of persons who were not members of the prosecution team in this case, such as officials of a federal agency, the SEC, do not fall within the prosecution team's disclosure obligations.  <u>See</u> Docket 2466, at 1-3 (this Court's opinion denying Forbes' Third Trial Motion No. 2, alleging <u>Brady/Giglio</u> Violations by the Government).  That being so, information in the hands of the CSBA, which had no involvement in the investigation or prosecution of the federal criminal charges on trial in this case, is not attributable to the prosecution team for purposes of assessing the latter's disclosure obligations.[3]  Other than former AUSA

---

[3] As the Government has previously demonstrated in its Opposition to Forbes Third Trial Motion No. 2, the Government's disclosure obligations extend only to material evidence that is known to the members of the prosecution team.  <u>Kyles v. Whitley</u>, 514 U.S. 419, 437 (1995).  A prosecutor's disclosure obligations under <u>Brady</u> do not "embrace materials that the prosecution team has never had in its files, never inspected, and never knew about."  <u>Morgan v. Salamack</u>, 735 F.2d 354, 358 (2d Cir. 1984) (quoting <u>United States v. Hutcher</u>, 622 F.2d 1083, 1088 (2d Cir. 1980)).  Imposition of a duty on a prosecutor to obtain and disclose information known by officials from other agencies who are not assigned to the criminal prosecution would inappropriately adopt "a monolithic view of government" that would "condemn
(continued...)

Carney's statements to Kozik, it does not appear that any of the information set forth in the Case Log, nor any of the other documents attached to Forbes' motion that came from the files of the CSBA, was in the possession of or known to any of the members of the prosecution team.[4]  The Government did not violate its disclosure obligations regarding that about which it did not have or know.

**III. BECAUSE FORBES HAS OBTAINED THE SUPPOSEDLY IMPEACHING INFORMATION REGARDING KEARNEY IN TIME FOR ITS EFFECTIVE USE AT TRIAL, THIS COURT SHOULD REJECT FORBES' UNNECESSARY "REMEDIES" OF A MISTRIAL, THE STRIKING OF KEARNEY'S TESTIMONY, OR AN ARGUMENTATIVE "CURATIVE" INSTRUCTION.**

Forbes seeks to bring this trial to an untimely end for the sole reason that, at a fourth trial, he would be able to confront Kearney with the information set forth in the documents attached to his motion.  There is no need to stop this trial to accomplish

---

[3] (...continued)
the prosecution of criminal cases to a state of paralysis." United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998) (quoting United States v. Gambino, 835 F. Supp. 74, 95 (E.D.N.Y. 1993), aff'd, 59 F.3d 353 (2d Cir. 1995)).

[4] The documents other than the Case Log appended to Forbes' motion contain nothing that was not previously disclosed to the defense.  Exhibit 2 to Forbes' Motion is the April 8, 2002 letter from Kozik to Kearney, stating that the CSBA could revoke Kearney's CPA license because his right to practice before the SEC had been suspended.  Exhibit 3 is the Settlement Agreement between the CSBA and Kearney, setting forth the terms of the suspension of Kearney's CPA license.  That Kearney's CPA license was suspended as a result of his involvement in the fraud at issue in this case was disclosed to the defense well before this trial. See FTTr. 9854.  Exhibit 4 to Forbes' Motion is an October 13, 2006 letter from the CSBA to Kearney, notifying him that his CPA license had been restored.  This fact, too, was disclosed to the defense.  TTTr. 733-34.

that end because Forbes now has the information which, he claims, the Government should have disclosed to him earlier. That being the case, if Forbes truly has been prejudiced, he can have Kearney recalled to testify during this trial, either during the Government's case, or during Forbes' case, to pose whatever questions suggest themselves to Forbes' lawyers. The fact that Forbes now has the information that was supposedly suppressed in time to make use of it during this trial precludes the need for any remedial action by the Court.

Generally, the courts have approved disclosure of <u>Giglio</u> material on the day that a witness testifies. "Provided that the defendant has sufficient time after receipt of <u>Giglio</u> material to use it effectively at trial, there is no violation of the defendant's rights from deferring production of this material until closer to the time of the witnesses' testimony." <u>United States v. Frank</u>, 11 F. Supp. 2d 322, 324-25 (S.D.N.Y. 1998) (citing <u>United States v. Higgs</u>, 713 F.2d 39, 44 (3d Cir. 1983)); <u>see</u> <u>United States v. Ruiz</u>, 702 F. Supp. 1066, 1069-70 (S.D.N.Y. 1989) (approving the Government's agreement to provide impeachment material on the day before the witness testifies), <u>aff'd</u>, 894 F.2d 501 (2d Cir. 1990). As the Second Circuit has explained:

> [W]e reiterate the longstanding constitutional principle that as long as a defendant possesses <u>Brady</u> evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner. There is no <u>Brady</u> violation unless there is a reasonable

       probability that earlier disclosure of the evidence
       would have produced a different result at trial.

Coppa, 267 F.3d at 144; see United States v. Zichettello, 208 F.3d 72, 102-103 (2d Cir. 2000) (rejecting a Brady claim where the Government disclosed the subject information during trial, and the defendants "were therefore able to use the information").

    In United States v. Blackwell, 459 F.3d 739 (6th Cir. 2006), the Court of Appeals recently rejected a claim similar to Forbes' here, where the defense did not receive supposedly impeaching information until the trial was underway. There, the district court granted the defendant "the opportunity to re-cross examine [the prosecution witness] and took no action to prevent Defendant from calling [another person] as a witness. Accordingly, Defendant had the opportunity to examine both [witnesses] in light of the disclosed documents." Id. at 759. This Court could accomplish the same result here, and alleviate any possible harm to the defense from the timing of Forbes' discovery of the documents attached to his motion.[5]

---

[5] Forbes contends that the Government's examination of Kearney during the third trial "misled the jury about the government's role in helping [Kearney] regain his CPA certificate." FM 8. According to Forbes, because the Government did not ask Kearney if AUSA Carney had "helped" Kearney regain his CPA license, the Government suggested to the jury that it had played no such role. To the contrary, the USAO played no role in the reinstatement of Kearney's CPA license, and that issue was never addressed during Kearney's examination, so the Government could not have mislead the jury in this regard. See TTTr. at 733-34.

-16-

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that Forbes' Third Trial Motion No. 18 be denied.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
Special Attorney
U.S. Department of Justice


MICHAEL MARTINEZ
Federal Bar Number phv0243
CRAIG CARPENITO
Federal Bar Number phv0244
MARK E. COYNE
Federal Bar Number phv01079
NORMAN GROSS
Federal Bar Number 24933
Special Attorneys
U.S. Department of Justice

Bridgeport, Connecticut
Date: October 17, 2006

**CERTIFICATE OF SERVICE**

    The undersigned certifies that on this day I caused to be served a copy of the Government's Opposition to Defendant Walter A. Forbes' Motion for a Mistrial Based on Alleged Brady/Giglio Violations and the Testimony of Kevin Kearney (Opposition to Forbes Third Trial Motion No. 18) via email on:

    Barry S. Simon, Esq.
    Williams & Connolly LLP
    725 Twelfth Street, N.W.
    Washington, D.C. 20005-5901
    (202) 434-5005
    bsimon@wc.com


                                                                         _____
                                                                         Mark E. Coyne

Dated: October 17, 2006
       Bridgeport, CT