## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 3:02CR264 (AHN) |
| | ) | |
| WALTER A. FORBES | ) | October 17, 2006 |
| | ) | |

## REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT WALTER A. FORBES FOR A MISTRIAL BASED ON BRADY/GIGILIO VIOLATIONS AND THE TESTIMONY OF KEVIN KEARNEY
### (Forbes Third Trial Motion No. 18)

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this reply memorandum in further support of his motion for a mistrial based on the government's suppression of Brady/Giglio material, and the false and misleading testimony of Kevin Kearney.

## ARGUMENT

The government's three-part argument—that the suppressed evidence is not material, that the evidence was equally available to the defendant, and that the proper remedy is simply to recall Mr. Kearney—is wrong on all counts. The suppressed evidence of bias is material; the evidence was actually known to the government, whereas Mr. Forbes' prior efforts to obtain this information were unsuccessful; and recalling Mr. Kearney would cause the jury to blame Mr. Forbes, instead of the government, whose suppression of evidence caused the need to recall Mr. Kearney.

The government essentially ignores the arguments regarding its introduction of false and misleading testimony, relegating its response to a footnote. Resp. at 16 n.5. Mr. Kearney lied about Messrs. Forbes and Bell, and misled the jury when he failed to disclose the government's favorable statements to the CSBA. Significantly, the government argues that it did

Oral Argument Requested

not violate Brady because "the undisclosed evidence merely constitutes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable." Resp. at 9 (quotation omitted & emphasis added); see also id. at 8 n.2 (noting that the voluminous notes of Mr. Kearney's interviews "provide ample evidence for Forbes to make this claim" that Mr. Kearney never implicated Mr. Forbes before 2003 (emphasis added)). Based on what the government knows, it should never have called Mr. Kearney and should not be arguing to the jury that his testimony is credible. For this reason alone, the Court should strike Mr. Kearney's testimony and issue a curative instruction.[1]

## I.    THE SUPPRESSED EVIDENCE IS MATERIAL.

The suppressed evidence is material, particularly since the government is attempting to paint Mr. Kearney, falsely, as a "disinterested" witness. The Second Circuit's decision in United States v. Wolfson, 437 F.2d 862 (2d Cir. 1970), reversing a conviction when the district court excluded evidence of civil regulatory benefits, is instructive. Prior to his grand jury appearance, the witness wanted to sell unregistered stock, but needed a no-action letter from the SEC to do so. Id. at 874. After the witness had testified favorably for the government, on October 24, 1966, his attorneys again requested a no-action letter. Id. On December 5, 1966, the SEC issued such a letter. Id. The defendants sought to cross-examine the witness and introduce correspondence from which they could have argued that the no-action letter was the witness' reward and the motive for his testimony against the defendants. Id. The trial court excluded the

---

[1]    The government also argues that "Mr. Forbes has sufficient information to mount an argument that Kearney's testimony against Forbes in this case was motivated by an interest that is much more powerful than the mere timing of when Kearney would be able to apply for reinstatement of his CPA license:  the interest to avoid criminal prosecution and possible incarceration, criminal fines, and the payment of restitution." Resp. at 8-9. For this reason as well, the government should not be presenting Mr. Kearney as a purportedly "disinterested" witness.

evidence and stated that it would have shown a "relatively minor, esoteric manifestation of prejudice." Id. The Second Circuit reversed because there was no opportunity to challenge the witness' motives for giving the specific testimony and "[t]he testimony and the reward therefor were virtually contemporaneous." Id.

Here too, the reward (the lead prosecutor's favorable statements to the CSBA followed almost immediately by a favorable settlement offer by the CSBA) and the change in Mr. Kearney's testimony were linked in time. Moreover, the present case involves even stronger evidence of bias and motive because nothing in Wolfson suggests that the prosecutor spoke with the regulatory body before the favorable ruling; whereas here the lead prosecutor spoke directly to the regulatory body and praised Mr. Kearney's cooperation three weeks before the CSBA made a favorable settlement offer.

The government argues that the CSBA's "five-year revocation of [Mr. Kearney's] CPA certificate . . . was on the severe end of the range of sanctions typically imposed by the CSBA." Resp. at 7. It provides no evidence in support of that assertion, and in any event, Mr. Kearney's certificate was revoked for slightly more than two years. The Order revoking his certificate was entered on April 1, 2003 and he was eligible to apply for reinstatement on July 13, 2005. Mot., Ex. 3. The government's assertion—that a two-year suspension for an accountant who knowingly participated in a substantial accounting fraud is not favorable—is simply not credible. The government is free to argue to the jury that this was a "severe" penalty, but this dubious argument provides no excuse for suppressing the evidence.

The government protests that "Carney's statements did not confer any benefit," Resp. at 4, and that "Carney did not seek any favorable treatment from the CSBA," id. at 5. That may be the conclusion that the government wants the jury to draw from the evidence, but that

does not justify the government's suppression of the evidence either. The timing of the contact in relation to the change in testimony, the favorable nature of Mr. Carney's statements (which he was under no obligation to make), and the favorable nature of the resolution are strong circumstantial evidence that would allow the jury to conclude that Kevin Kearney has a motive to please the government.[2]

## II.    THE EVIDENCE WAS NOT "EQUALLY AVAILABLE TO THE DEFENSE."

Contrary to the government's assertion, the information was not "equally available to the defense." Resp. at 11. The government had actual knowledge of the suppressed information, and Mr. Forbes was rebuffed in his prior efforts to obtain the information.

The fact that then lead prosecutor John Carney made favorable statements to the CSBA in October 2002 regarding Kevin Kearney's cooperation was actually known to the government. So too was the fact that Mr. Kearney first began to make allegations about Mr. Forbes and Mr. Bell after that time. The government wastes more than a page setting up and knocking down a straw man when it argues that "the information identified by Forbes in this motion regarding Kearney was in the files, not of the prosecution team, but in the files of CSBA." Resp. at 13. As Mr. Forbes acknowledged in his opening brief, "the government did not have a duty to obtain the 'Case Log' from the CSBA," Mem. at 3, but it did have a duty to disclose the information known to former lead prosecutor Carney.

Mr. Forbes previously attempted to obtain information concerning the CSBA's handling of Mr. Kearney's case, but the "Case Log" containing the impeachment information was not provided. Mr. Forbes submitted a Freedom of Information Act ("FOIA") request to the

---

[2]    The government's cramped view of what it must disclose under Brady/Giglio should raise questions about the government's representations that it has complied with its obligations. Indeed, as set forth in the opening brief, those representations have repeatedly been proven incorrect.

CSBA on April 5, 2004. Ex. 1. He made a follow up request on April 23, 2004. Ex. 2. On

April 30, 2004, the CSBA disclosed certain information, but not the "Case Log." Ex. 3. On May

13, 2004, Mr. Forbes supplemented his FOIA request and asked for "any notes, memos, or other

writings created by anyone connected with the Board reflecting any such information that may

have been submitted orally by Mr. Kearney or anyone acting on his behalf, including counsel."

Ex. 4. On May 12, 2004, the CSBA made a supplemental production which it represented was

"the file for Kevin Kearney," which included "all available information." Ex. 5 (emphasis

added). This production did not include the "Case Log." Id.; see also Resp. at 12 (CSBA

allegedly represented that settlement agreement had previously been produced, but said nothing

about the Case Log that included the impeachment information). Following Mr. Kearney's

October 12 testimony that his CPA certificate had recently been reinstated, Mr. Forbes again

sought to review the CSBA's file on Mr. Kearney. On October 13, for the first time, the CSBA

provided the Case Log. Ex. 6.

## III.    RECALLING MR. KEARNEY IS AN INSUFFICIENT REMEDY.

The government's non-disclosure of the impeachment material caused the need to

re-call Mr. Kearney. Even if Mr. Kearney is recalled in the government's case, the jury will

understand that Mr. Forbes recalled him because Mr. Forbes will be asking the impeachment

questions and the jury will also conclude that Mr. Forbes is at fault for not asking these questions

when his counsel first cross-examined Mr. Kearney. Those conclusions would be unfounded and

unfair. Accordingly, if the Court declines to grant Mr. Forbes' motion, and decides instead to

allow Mr. Forbes to recall Mr. Kearney in the government's case, the Court should instruct the

jury that: "Following Mr. Kearney's testimony, the defense independently discovered

information that the government should have provided to the defense. Because the government

did not provide this information, I have required the government to recall Mr. Kearney so that

the defense may examine him about this new information."

## CONCLUSION

For the reasons set forth above, Mr. Forbes respectfully requests that the Court

grant a mistrial. In the alternative, Mr. Forbes requests that the Court strike Mr. Kearney's

testimony and issue a curative instruction. If the Court adopts the government's recall proposal,

Mr. Forbes respectfully requests that the Court issue his proposed instruction on the reason for

the recall.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:    _____

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bbsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Reply Memorandum in Support of

Motion of Defendant Walter A. Forbes for a Mistrial Based on Brady/Giglio Violations and the

Testimony of Kevin Kearney (Forbes Third Trial Motion No. 18) to be filed electronically and to

be served on October 17, 2006 to the following via e-mail:

> Norman Gross, Esq. (norman.gross@usdoj.gov)
> Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
> Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

Barry S. Simon