# PART 5 of EXHIBIT 5

www.uark.edu
/depts/acctinfo/
course/5433/
cendant.ppt

Walter Forbes - CEO (1)

Kirk Shelton - Pres

Cosmo    — CFO

Anne - Snr VP; Controller

Casper Sabatino - VP of Acct
      → Fin Rept

S. Deaths - Controller CUC

CUC & HFS
   merger in 1997
ironing it out
Cosmo & Anne told
them to (2)

not CT CPAs
   → Cosmo; Anne
their cases are
     closed).

Revised &
Coffeebread '98
Financials (3)



UNITED STATES
## SECURITIES AND EXCHANGE COMMISSION
450 Fifth Street, N.W.
Washington, D.C. 20549

**DIVISION OF
ENFORCEMENT**

April 4, 2001

Michael T. Kozik
Board Attorney
Connecticut State Board of Accountancy
Office Of The Secretary
30 Trinity Street
Hartford, CT 06106-0470

    Re:    In the Matter of Cendant Corporation (HO-03401-A)

Dear Mr. Kozik:

    Your request, by letter dated March 9, 2001, for access to Commission files has been granted. In granting access, the Commission has relied upon your assurances that, except as set forth in your letter, your agency will:

    provide such safeguards as are necessary and appropriate to protect the confidentiality of these files;

    make no public use of these files or information without prior approval of our staff;

    notify us of any legally enforceable demand for the files or information prior to complying with the demand, and assert such legal exemptions or privileges on our behalf as we may request; and

    not grant any other demand or request for the files or information without prior notice or over our objection.

    The files in this matter may contain "financial records" of "customers" of "financial institutions," as those terms are defined in the Right to Financial Privacy Act of 1978 [12 U.S.C. 3401-22]. In the event that another federal agency should seek information from those files from your agency, we urge you to have the federal agency contact us before you provide such information.

Michael T. Kozik                                          Page 2
April 4, 2001

     The Commission makes no recommendation with respect to investigation or prosecution by your agency. In addition, until this matter is closed, the Commission continues to have an interest and will take such further investigatory or other steps as it considers necessary in the discharge of its duties and responsibilities.

     The files to which access has been granted are being retained by the Home Office of the Commission. Your representative should contact David Frohlich at 202-942-4544 to make arrangements to review the files. I would also appreciate it if you would inform that person in the event that your agency institutes public proceedings based upon information that you obtain as a result of this grant of access.

                                Sincerely,

                                  Stephen J. Crimmins
                                  Deputy Chief Litigation Counsel

KEVIN   KEARY

BOA   Feturse

973-474-5702

Kevin Kearney
121 Peaceable St
West Redding, CT
06896

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES EXCHANGE ACT OF 1934
Release No. 42934 / June 14, 2000

ACCOUNTING AND AUDITING ENFORCEMENT
Release No. 1273 / June 14, 2000

ADMINISTRATIVE PROCEEDING
File No. 3-10226

|  |  |  |
|---|---|---|
| In the Matter of | : | ORDER INSTITUTING PUBLIC ADMINISTRATIVE PROCEEDINGS PURSUANT TO SECTION 21C OF THE SECURITIES EXCHANGE ACT OF 1934, MAKING FINDINGS, AND IMPOSING A CEASE-AND-DESIST ORDER |
| PAUL HIZNAY, | : | |
| Respondent. | : | |

I.

The Securities and Exchange Commission ("Commission") deems it appropriate that public administrative proceedings be, and hereby are, instituted pursuant to Section 21C of the Securities Exchange Act of 1934 ("Exchange Act") against Paul Hiznay ("Hiznay" or "Respondent").

II.

In anticipation of the institution of these administrative proceedings, Hiznay has submitted an Offer of Settlement ("Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings, and any other proceedings brought by or on behalf of the Commission, or in which the Commission is a party, without admitting or denying the findings set forth below, except as to jurisdiction of the Commission over him and over the subject matter of these proceedings, which Respondent admits, Respondent consents to the entry of this Order Instituting Public Administrative Proceedings Pursuant to Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order ("Order") set forth below.

Accordingly, it is ordered that proceedings pursuant to Section 21C of the Exchange Act be, and hereby are, instituted.

III.

FACTS

The Commission makes the following findings:[1]

A.   **RESPONDENT**

Paul Hiznay, age 37, was a mid-level Accounting Manager at the Comp-U-Card division of CUC International Inc. ("CUC") from July 1995 until October 1997. During that time he ran the day-to-day activities of Comp-U-Card's accounting operations in Trumbull, Connecticut. Hiznay is a certified public accountant and resides in Trumbull, Connecticut.

B.   **OTHER RELEVANT ENTITIES**

1.   HFS Incorporated ("HFS") was a Delaware corporation that had its headquarters in Parsippany, New Jersey, and was principally a controller of franchise brand names in the hotel, real estate brokerage, and car rental businesses. Its securities were registered pursuant to Section 12(b) of the Exchange Act and traded on the New York Stock Exchange ("NYSE").

2.   CUC was a Delaware corporation that had its headquarters in Stamford, Connecticut, and was principally engaged in membership-based consumer services, such as auto, dining, shopping, and travel "clubs." CUC's securities also were registered pursuant to Section 12(b) and traded on the NYSE.

3.   Cendant Corporation, a Delaware corporation with its headquarters in New York City, was created through the December 17, 1997, merger of HFS and CUC. Cendant provides certain membership-based and Internet-related consumer services and controls franchise brand names in the hotel, residential real estate brokerage, car rental, and tax preparation businesses. For corporate law purposes, Cendant is CUC. Pursuant to the Agreement and Plan of Merger between CUC and HFS, on December 17, 1997, HFS was merged with and into CUC, with CUC continuing as the surviving corporation and changing its name to Cendant Corporation. As of March 1, 2000, Cendant's common stock, Income PRIDES, and Growth PRIDES were registered pursuant to Section 12(b) of the Exchange Act and traded on the NYSE. Cendant's 6.45% Trust Originated Preferred Securities, 7 3/4% Notes due 2003, and 3% Convertible Subordinate Notes due 2002 were registered pursuant to Section 12(g) of the Exchange Act.

C.   **THE SCHEME**

Beginning in at least 1985, certain members of CUC's senior management implemented a scheme designed to ensure that CUC always met the financial results anticipated by Wall Street analysts. The CUC senior managers utilized a variety of means to achieve their goals. In the earlier years of the scheme, they relied in large part on manipulating recognition of the

---

[1]   The Commission's findings herein are made pursuant to Respondent's Offer and are not binding upon any other person or entity in these or any other proceedings.

company's membership sales revenue. The CUC senior managers also improperly utilized two liability accounts related to membership sales, consistently maintaining inadequate balances in the accounts and on occasion reversing the accounts directly into operating income. To hide the inadequate balances, senior management periodically kept certain membership sales transactions off-books. In what was the most significant category quantitatively, the CUC senior managers intentionally overstated merger and purchase reserves and subsequently reversed those reserves directly into operating expenses and revenues. Finally, CUC senior management improperly wrote off assets -- including assets that were unimpaired -- and improperly charged the write-offs against the company's merger reserves. By manipulating the timing of the write-offs and by improperly determining the nature of the charges incurred, the CUC senior managers used the write-offs to inflate operating income at CUC.

CUC senior management supervised the scheme over the course of each fiscal year. Beginning in at least 1988, senior management regularly made certain aggregate changes to CUC's reported quarterly financial results. Accordingly, at the end of each of the company's first three fiscal quarters, CUC senior managers directed subordinate financial reporting personnel at CUC corporate headquarters to add whatever amounts were needed in order to bring CUC's quarterly income up to analysts' expectations. Thus, for each of the first three quarters of a CUC fiscal year, the CUC senior managers artificially inflated revenues and decreased operating expenses. In conjunction with these income statement changes, the senior managers also cosmetically altered certain CUC balance sheet items.

At the end of each fiscal year, the CUC senior managers implementing the scheme inflated the company's annual results as recorded on its books and records, so that the books and records would be consistent with the financial results already released and so that CUC's reported annual income would, in fact, meet the expectations of Wall Street analysts. As the scheme progressed over the course of several years, larger and larger year-end adjustments were required. The scheme added more than $500 million to pre-tax operating income during the fiscal years ended January 31, 1996; January 31, 1997; and December 31, 1997. [2]

D.     HIZNAY'S INVOLVEMENT

1.   Making Unsupported Post-closing Entries

Although Hiznay was not a senior manager at CUC and was not involved in the aggregate adjustments of CUC's reported quarterly results, from July 1995 to October 1997 Hiznay took steps which helped to carry out CUC senior managers' scheme to inflate earnings.

In early 1997, at the direction of senior management, Hiznay approved a series of entries reversing the commissions payable liability account into revenue at Comp-U-Card. CUC paid commissions to certain institutions on sales of Comp-U-Card membership products sold through those institutions. Accordingly, at the time that it recorded revenue from those sales, CUC

---

[2]   CUC's fiscal year ended on January 31. After the December 17, 1997, merger, Cendant adopted a fiscal year ending December 31.

created a liability to cover its commissions payable obligation. Comp-U-Card senior management used false schedules and other devices to support their understating of the commissions payable liability and to avoid the impact that would have resulted if the liability had been properly calculated. Furthermore, in connection with the January 31, 1997, fiscal year-end, senior management utilized this liability account by directing post-closing entries moving amounts from the liability directly into revenue.[3]

Accordingly, in February 1997, Hiznay received a schedule from the Comp-U-Card controller setting forth the amounts, effective back-dates, and accounts for a series of post-closing entries reducing the commissions payable account by $9.12 million and off-setting that reduction by increases to Comp-U-Card revenue accounts. Hiznay approved the entries and had his staff enter them. Save for his superior's written instructions, the entries were unsupported. They all carried effective dates spread retroactively over prior months. The entries reversed the liability account directly into revenues, a treatment that, under the circumstances, was not in accordance with Generally Accepted Accounting Principles.

Because the entries carried effective dates spread retroactively over November and December of 1996 and January of 1997, they inflated CUC income by $9.12 million for the fiscal year ended January 31, 1997. After the Cendant merger, however, the company changed from a CUC fiscal year-end of January 31 to a Cendant fiscal year-end of December 31. As a function of that change, CUC's January 1997 financial results were reported in both the CUC fiscal year ended January 31, 1997, and the Cendant fiscal year ended December 31, 1997. Because $2.85 million of the improper February 1997 commissions payable reversals had effective dates in January 1997, that $2.85 million also inflated Cendant's income for the fiscal year ended December 31, 1997.

Hiznay received a second schedule of post-closing entries from the Comp-U-Card controller in February 1997. This second schedule listed the amounts, effective back-dates, and accounts for seventy-seven journal entries reducing a large CUC merger reserve by $35 million, with off-setting entries decreasing various Comp-U-Card operating expense accounts. Again, Hiznay approved the entries and had his staff enter them. Again, save for his superior's written instructions, the entries were unsupported, and they all carried effective dates spread retroactively over prior months.

Because these merger reserve reversal entries carried effective dates spread over November and December of 1996 and January of 1997, they inflated CUC income by $35 million for the fiscal year ended January 31, 1997. Again, however, the December 1997 change in fiscal year-end meant that some of the entries inflated income twice. Because $10 million of the improper merger reserve reversals had effective dates in January 1997, that $10 million also inflated Cendant's income for the fiscal year ended December 31, 1997.

---

[3] For purposes of this Order, "post-closing journal entries" means entries that are made after a reporting period has ended, but before the financial statements for the period have been filed, and that have effective dates spread retroactively over prior weeks or months.

### 2. Keeping Rejects and Cancellations Off-Books

During his time at the Comp-U-Card division, Hiznay inherited, but then supervised, a long-standing Comp-U-Card practice of keeping membership sales cancellations and rejects off Comp-U-Card's books during part of each fiscal year. Certain Comp-U-Card membership products were processed through various financial institutions that billed their members' credit cards for new sales and charges related to the various membership products. When Comp-U-Card recorded membership sales revenue from such a sale, it would allocate a percentage of the recorded revenue to cover estimated cancellations of the specific membership product being sold, as well as allocating a percentage to cover estimated rejects and chargebacks.[4] Comp-U-Card used these percentage allocations to establish a membership cancellation reserve.

Over the years, CUC senior management had developed a policy of keeping rejects and cancellations off the Comp-U-Card general ledger during the last three months of each fiscal year. Instead, during that quarter, the rejects and cancellations appeared only on cash account bank reconciliations compiled by the Comp-U-Card accounting personnel in Trumbull, Connecticut. The senior managers then directed the booking of those rejects and cancellations against the membership cancellation reserve in the first three months of the next fiscal year. Because rejects and cancellations were not recorded against the membership cancellation reserve during the final three months of the fiscal year, the policy allowed CUC to hide the fact that the reserve was dramatically understated at each fiscal year-end. At its January 31, 1997, fiscal year-end, the balance in the CUC membership cancellation reserve was $29 million, and the Comp-U-Card accounting personnel were holding $100 million in rejects and $22 million in cancellations off-books.[5] Failing to book cancellations and rejects at each fiscal year-end also had the effect of overstating the company's cash position on its year-end balance sheet.

## E.    FALSE FILINGS AND STATEMENTS

Between Hiznay's arrival at Comp-U-Card in July 1995 and the discovery of the fraudulent scheme by Cendant management in April 1998, CUC and Cendant filed with the Commission false and misleading periodic reports and other filings. Those reports and filings included, directly or by incorporation, financial statements that misrepresented the companies' financial conditions and results of operations, overstating their income and their earnings.

---

[4]  Rejects resulted when the credit card to be charged was over its limit, closed, or reported as lost or stolen. Chargebacks resulted when a credit card holder disputed specific charges related to a particular membership program.

[5]  Although the reserve was already seriously understated, in February 1997, Hiznay, again at the direction of the Comp-U-Card controller, approved a series of unsupported post-closing entries that reduced the membership cancellation reserve by $15 million, with the off-setting entries decreasing Comp-U-Card expense accounts or increasing Comp-U-Card revenue accounts.

IV.

## VIOLATIONS OF THE
## EXCHANGE ACT REPORTING PROVISIONS

Section 13(a) of the Exchange Act and Rule 13a-1 thereunder require issuers with securities registered under Section 12 of the Exchange Act to file annual reports with the Commission and to keep this information current. The obligation to file such reports embodies the requirement that they be true and correct. *See, e.g., SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1165 (D.C. Cir. 1978), *cert. denied*, 440 U.S. 913 (1979).

As discussed above, between Hiznay's arrival at Comp-U-Card in July 1995 and the discovery of the fraudulent scheme by Cendant management in April 1998, CUC and Cendant filed false and misleading annual reports with the Commission that misrepresented their financial results, overstating operating income and earnings and failing to disclose that the financial results were falsely represented. Based on the conduct described above, Hiznay was a cause of the companies' violations of Section 13(a) of the Exchange Act and Rule 13a-1 thereunder.

V.

Based on the foregoing, the Commission finds that Hiznay caused CUC's and Cendant's violations of Section 13(a) of the Exchange Act and Rule 13a-1 promulgated thereunder.

VI.

In view of the foregoing, the Commission deems it appropriate to accept Respondent's Offer and to impose the sanctions agreed to therein. In determining to accept the Offer, the Commission considered remedial acts undertaken by Respondent and cooperation afforded the Commission and other authorities.

---

Accordingly, **IT IS HEREBY ORDERED** that

Hiznay, pursuant to Section 21C of the Exchange Act, cease and desist from violating, and from causing future violations of, Section 13(a) of the Exchange Act and Rule 13a-1 promulgated thereunder.

By the Commission.

Jonathan G. Katz
Secretary

# Connecticut State Board of Accountancy

## Office of the Secretary of the State

30 Trinity Street
P. O. Box 150470
Hartford, Connecticut 06106-0470
(860) 509-6179 - Fax (860) 509-6247



Bernard Blum, CPA, Chairman
Donald S. Brodeur, Sr., CPA
James S. Ciarcia
Philip J. DeCaprio, Jr., CPA
James E. Quinn
Sandra M. Schork
George G. Velly, CPA

David L. Guay, Executive Director
Michael T. Kozik, Board Attorney

March 9, 2001

Mr. Thomas C. Newkirk
Associate Director
Division of Enforcement, Stop 0801
U.S. Securities and Exchange Commission
450 Fifth Street, N.W.
Washington, DC 20549

Re:  Kevin T. Kearney and Paul Hiznay

Dear Mr. West:

We request access to the investigative and other non-public files of the U.S. Securities and Exchange Commission (the "Commission") related to the captioned matter. This request is made in connection with an ongoing lawful investigation or official proceeding inquiring into a violation of, or failure to comply with, a criminal or civil statute or regulation, rule or order issued pursuant thereto, being conducted by the Connecticut Sate Board of Accountancy.

We will establish and maintain such safeguards as are necessary and appropriate to protect the confidentiality of files to which access is granted and information derived therefrom. The files and information may, however, be used for the purpose of our investigation and/or proceeding and any resulting proceedings. They also may be transferred to criminal law enforcement authorities. We shall notify you of any such transfer and use our best efforts to obtain appropriate assurances of confidentiality.

Other than set forth in the proceeding paragraph, we will:

Make no public use of these files or information without prior approval of your staff;

notify you of any legally enforceable demand for the files or information prior to complying with the demand, and assert such legal exemptions or privileges on your behalf as you may request; and

not grant any other demand or request for the files or information without prior notice to and lack of objection by your staff.

We recognize that until this matter has been closed, the Commission continues to have an interest and will take further investigatory or other steps as it considers necessary in the discharge of its duties and responsibilities.

G:\ENF\CASES\21004a Newkirk request for file on Kearney, Hiznay case.doc

Should you have any questions, please contact Michael Kozik.

Sincerely,

Michael T. Kozik
Board Attorney



UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON. D.C. 20549

**OFFICE OF
THE CHIEF ACCOUNTANT**

February 21, 2001

Mr. David Guay
Executive Secretary
Connecticut State Board of Accountancy
Secretary of State
30 Trinity Street
P.O. Box 150470
Hartford, CT  06115

             Re:  Kevin T. Kearney and Paul Hiznay

Dear Mr. Guay:

     As the result of a SEC investigation and subsequent civil
and administrative proceedings (<u>SEC v. Cosmo Corigliano, et al.</u>,
<u>In the Matter of Kevin T. Kearney</u> and <u>In the Matter of Paul</u>
<u>Hiznay</u>), (1) Mr. Kearney has been barred from practicing before
the Commission as an accountant with the right to reapply to
resume such practice after five years under provisions cited in
the Commission's Order and (2) Mr. Hiznay has been Ordered to
cease and desist from violating, and from causing future
violations of, Section 13(a) of the Exchange Act and Rule 13a-1
thereunder.  Each of the respondents consented to the issuance of
the Commission's Orders without admitting or denying the finding
therein.

     The Commission's complaint in <u>SEC v. Cosmo Corigliano, et</u>
<u>al.</u>, alleged, among other things, that Kearney, a former Director
of Financial Reporting at CUC International Inc. (now: Cendant
Corporation), was regularly present when Corigliano would
calculate unsupported alterations to CUC's quarterly results and
that, while he was part of the CUC financial reporting
operations, Kearney supervised the lower-level managers who
actually entered Corigliano's quarterly alterations.  The
Complaint alleges that Kearney also profited from his own wrong-
doing, selling CUC and Cendant stock at prices inflated by the
fraud he had knowingly assisted.  The Commission's complaint
alleges that Kearney, by his actions in furtherance of the fraud,
violated, or aided or abetted violations of, the antifraud,
periodic reporting, corporate record-keeping, and lying to
auditors provisions of the federal securities laws.  Kearney has
consented to entry of a Final Judgment that would enjoin him from
future violations of those provisions, order him to pay
disgorgement of $32,443 in ill-gotten gains (plus prejudgment

- 2 -

interest of $8,234), and order him to pay a civil money penalty of $35,000.

The Commission found that Hiznay, a former Accounting Manager at CUC's largest division, aided and abetted violations of the periodic reporting provisions of the federal securities laws, in connection with actions that he took at the direction of his superiors at CUC. Among other things, the Commission alleges that Hiznay made unsupported journal entries as directed by Anne Pember, the former CUC Controller.

Since Messrs. Kearney and Hiznay are certified public accountants licensed to practice accounting Connecticut, I am enclosing copies of (1) the Commission's Orders, (2) the related Complaint in <u>SEC v. Cosmo Corigliano, et al.</u>. with Kearney's Injunction and Consent thereto, (3) 3 related releases, and (4) a "sample letter" to be used should the Board desire access to the Commission's investigative files in this case.

If I can provide any additional public documentation please contact me on (202) 942-4423.

Should the Board desire access to the Commission's investigative files in this case, please submit your request to:

        Mr. Thomas C. Newkirk
        Associate Director
        Division of Enforcement, Stop 0801
        U.S. Securities and Exchange Commission
        450 Fifth Street, N.W.
        Washington, DC  20549

This letter and the enclosed documents are for the information of the board. Such submission does not constitute the filing of a complaint by the Commission or its staff.

Please provide this office with a copy of your access request, if filed, and advise us of the results of the Board's review in this matter.

                        Sincerely,

                        Lawrence E. Soper
                        Lawrence E. Soper
                        State Board Liaison


Enclosure - 9

## U.S. SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C.

LITIGATION RELEASE NO.   16587 / June 14, 2000

ACCOUNTING AUDITING ENFORCEMENT RELEASE NO. 1276

Securities And Exchange Commission v. Cosmo Corigliano, Anne M. Pember, Casper Sabatino, and Kevin Kearney, Civil Action No. 00-2873 (AJL) (D.N.J. June 14, 2000)

Securities And Exchange Commission v. Steven Speaks, Civil Action No. 00-2875 (WHW) (D.N.J. June 14, 2000)

Securities And Exchange Commission v. Mary Sattler Polverari, Civil Action No. 00-2874 (WHW) (D.N.J. June 14, 2000)

In the Matter of Cendant Corporation, Administrative Proceeding File No. 3-10225

In the Matter of Steven Speaks, CPA, Administrative Proceeding File No. 3-10227

In the Matter of Mary Sattler Polverari, CPA, Administrative Proceeding File No. 3-10228

In the Matter of Paul Hiznay, Administrative Proceeding File No. 3-10226

## SEC INSTITUTES ENFORCEMENT ACTION AGAINST FORMER TOP FINANCIAL OFFICERS AND MANAGERS AT CUC INTERNATIONAL IN CONNECTION WITH MASSIVE FINANCIAL FRAUD AT CUC AND CENDANT CORPORATION – FINANCIAL REPORTING ACTION BROUGHT AGAINST CENDANT

The U.S. Securities and Exchange Commission ("Commission") today initiated civil litigation in the U.S. District Court for the District of New Jersey against four former officers or managers of CUC International Inc. ("CUC"). The Commission also instituted and simultaneously settled administrative proceedings against Cendant Corporation and three former managers of CUC. Cendant was created through the December 17, 1997, merger of CUC and HFS Incorporated. The proceedings and litigation resulted from the Commission's continuing investigation of a long-running financial fraud that began at CUC in the 1980s and continued until its discovery and disclosure by Cendant in April 1998. Upon disclosure of the fraud, the price of Cendant common stock plummeted, causing billions of dollars in losses for investors.

## SEC CHARGES COSMO CORIGLIANO AND ANNE M. PEMBER, FORMER CUC OFFICERS, WITH MAJOR ROLES IN MASSIVE FRAUD

In the first of three separate complaints filed by the Commission today with the U.S. District Court, the Commission alleged violations of the federal securities laws by Cosmo Corigliano, Anne M. Pember, Casper Sabatino, and Kevin Kearney, all former officers or managers of CUC. Corigliano and Pember are contesting the Commission's action.

The Commission's complaint alleges that Corigliano, the Chief Financial Officer of CUC, was one of the CUC senior officers who helped to engineer the fraud. Among other things, the complaint alleges that during the last several years of the fraud, Corigliano was the CUC officer responsible for creating and maintaining a schedule that management used to track the progress of their fraud. Corigliano regularly directed CUC financial reporting managers to make unsupported alterations to the company's quarterly and annual financial results. The Commission alleges, moreover, that Corigliano profited from his own wrong-doing by selling CUC securities and a large number of Cendant securities at inflated prices while the fraud he helped engineer was underway and undisclosed. The complaint alleges that Corigliano, by his actions in furtherance of the fraud, violated, or aided and abetted violations of, the antifraud, periodic reporting, corporate record-keeping, internal controls, and lying to auditors provisions of the federal securities laws. The Commission's complaint seeks an injunction enjoining Corigliano from future violations of those provisions, disgorgement of his ill-gotten gains (plus prejudgment interest thereon), payment of a civil money penalty, and an order permanently barring him from acting as an officer or director of a public company.

The Commission's complaint alleges that Pember, the former CUC Controller, was the CUC officer most responsible for implementing directives received from Corigliano in furtherance of the fraud. Among other things, the complaint alleges that, in January 1998 alone, Pember was responsible for implementing directives that inflated Cendant's annual income by more than $100 million, primarily through improper use of the company's reserves. The Commission alleges that Pember too profited from her own wrong-doing by selling CUC and Cendant stock at inflated prices while the fraud she helped implement was underway and undisclosed. The complaint alleges that Pember, by her actions in furtherance of the fraud, violated, or aided and abetted violations of, the antifraud, periodic reporting, corporate record-keeping, internal controls, and lying to auditors provisions of the federal securities laws. The Commission's complaint seeks an injunction enjoining Pember from future violations of those provisions, disgorgement of her ill-gotten gains (plus prejudgment interest thereon), payment of a civil money penalty, and an order permanently barring her from acting as an officer or director of a public company.

## SEC SETTLES WITH CASPER SABATINO AND KEVIN KEARNEY, FORMER CUC FINANCIAL REPORTING MANAGERS, REGARDING CHARGES ARISING FROM THE CUC FRAUD

Sabatino and Kearney, without admitting or denying the Commission's allegations, have each consented to the entry of Final Judgments settling the Commission's action against them. The Commission's complaint alleges that Sabatino, a former CUC Vice President of Accounting and Financial Reporting, implemented directives from Corigliano in furtherance of the fraud.

-2-

Among other things, the Commission's complaint alleges that Sabatino was the CUC officer most responsible for directing lower-level CUC financial reporting managers to make Corigliano's alterations to the company's quarterly financial results. The complaint alleges that Sabatino, by his actions in furtherance of the fraud, violated, or aided and abetted violations of, the antifraud, periodic reporting, corporate record-keeping, internal controls, and lying to auditors provisions of the federal securities laws. Sabatino has consented to entry of a Final Judgment that would enjoin him from future violations of those provisions and permanently bar him from acting as an officer or director of a public company.

The Commission's complaint alleges that Kearney, a former CUC Director of Financial Reporting, also instructed lower-level CUC financial reporting managers to carry out directives received from Corigliano in furtherance of the fraud. Among other things, the Commission alleges that Kearney was regularly present when Corigliano would calculate unsupported alterations to CUC's quarterly results and that, while he was part of the CUC financial reporting operations, Kearney supervised the lower-level managers who actually entered Corigliano's quarterly alterations. The complaint alleges that Kearney also profited from his own wrong-doing, selling CUC and Cendant stock at prices inflated by the fraud he had knowingly assisted. The Commission's complaint alleges that Kearney, by his actions in furtherance of the fraud, violated, or aided and abetted violations of, the antifraud, periodic reporting, corporate record-keeping, and lying to auditors provisions of the federal securities laws. Kearney has consented to entry of a Final Judgment that would enjoin him from future violations of those provisions, order him to pay disgorgement of $32,443 in ill-gotten gains (plus prejudgment interest of $8,234), and order him to pay a civil money penalty of $35,000.

Kearney has also agreed to the issuance of a Commission administrative Order that would be issued subsequent to entry of the Final Judgment and that would bar Kearney from practicing before the Commission as an accountant, with the right to reapply after five years.

## U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF NEW JERSEY ANNOUNCES PLEA AGREEMENTS WITH CORIGLIANO, PEMBER, AND SABATINO

The U.S. Attorney's Office ("USAO") for the District of New Jersey today announced that Corigliano, Pember, and Sabatino had each pleaded guilty to Informations in the U.S. District Court for the District of New Jersey, pursuant to plea agreements between those three individuals and the USAO. Pursuant to his agreement, Corigliano pleaded guilty to a two-count Information charging him with wire fraud and with conspiracy to commit mail fraud, wire fraud, and causing false statements to be made in documents required to be filed with the Commission. Similarly, pursuant to her agreement, Pember pleaded guilty to a one-count Information charging her with conspiracy to commit mail fraud and wire fraud. Sabatino, pursuant to his agreement, pleaded guilty to a one-count Information charging him with aiding and abetting wire fraud.

SEC SETTLES WITH STEVEN SPEAKS, MARY SATTLER POLVERARI, AND PAUL HIZNAY, FORMER LOWER-LEVEL CUC FINANCIAL REPORTING OR ACCOUNTING MANAGERS, REGARDING CHARGES ARISING FROM THE CUC FRAUD

The Commission today also issued administrative Orders instituting settled administrative proceedings against three lower-level financial reporting or accounting managers at CUC. In the first of the three separate administrative Orders, the Commission found that Steven Speaks, the former Controller of CUC's largest division, violated the corporate record-keeping provisions of the federal securities laws, and aided and abetted violations of the antifraud, periodic reporting, and corporate record-keeping provisions, in connection with actions that he took at the direction of Pember and in furtherance of the fraud. Among other things, the Commission's complaint alleges that Speaks made, or instructed others to make, journal entries that effectuated much of the January 1998 income inflation directed by Pember. Simultaneous with the institution of the administrative proceeding, and without admitting or denying the findings contained therein, Speaks consented to the issuance of the Commission Order, which orders Speaks to cease and desist from future violations of the provisions and bars Speaks from practicing before the Commission as an accountant, with the right to reapply after three years.

The Commission also today filed a complaint in U.S. District Court for the District of New Jersey against Speaks, alleging that Speaks violated, or aided and abetted violations, of the antifraud, periodic reporting, and corporate record-keeping provisions of the federal securities laws and seeking an order requiring Speaks to pay a civil money penalty. Without admitting or denying the Commission's allegations, Speaks has consented to the entry of a Final Judgment that would order Speaks to pay a civil money penalty of $25,000.

In a second separate administrative Order, the Commission found that Mary Sattler Polverari, a former CUC Supervisor of Financial Reporting, violated the corporate record-keeping provisions of the federal securities laws, and aided and abetted violations of the antifraud, periodic reporting, and corporate record-keeping provisions, in connection with actions that she took in furtherance of the fraud. Among other things, the Commission alleges that Polverari, at the direction of Sabatino and Kearney, regularly and knowingly made unsupported alterations to CUC's quarterly financial results. Simultaneous with the institution of the administrative proceeding, and without admitting or denying the findings contained therein, Polverari consented to the issuance of the Commission Order, which orders Polverari to cease and desist from future violations of the provisions and bars her from practicing before the Commission as an accountant, with the right to reapply after three years.

The Commission also today filed a complaint in U.S. District Court for the District of New Jersey against Polverari, alleging that she violated, or aided and abetted violations, of the antifraud, periodic reporting, and corporate record-keeping provisions of the federal securities laws and seeking an order requiring her to pay a civil money penalty. Without admitting or denying the Commission's allegations, Polverari has consented to the entry of a Final Judgment that would order her to pay a civil money penalty of $25,000.

-4-

In a third administrative Order, the Commission found that Paul Hiznay, a former Accounting Manager at CUC's largest division, aided and abetted violations of the periodic reporting provisions of the federal securities laws, in connection with actions that he took at the direction of his superiors at CUC. Among other things, the Commission alleges that Hiznay made unsupported journal entries that Pember had directed. Simultaneous with the institution of the administrative proceeding, and without admitting or denying the findings contained therein, Hiznay consented to the issuance of the Commission Order, which orders him to cease and desist from future violations of the provisions.

## SEC SETTLES WITH CENDANT CORPORATION REGARDING CHARGES ARISING FROM THE CUC FRAUD

In a fourth and separate administrative Order issued today, the Commission found that Cendant violated the periodic reporting, corporate record-keeping, and internal controls provisions of the federal securities laws, in connection with the CUC fraud. Among other things, the Commission's Order finds that the company's books, records, and accounts had been falsely altered, and materially false periodic reports had been filed with the Commission, as a result of the long-running fraud at CUC. Simultaneous with the institution of the administrative proceeding, and without admitting or denying the findings contained therein, Cendant consented to the issuance of the Commission Order, which orders Cendant to cease and desist from future violations of the provisions. In fashioning its Order, the Commission recognized remedial acts promptly undertaken by Cendant and cooperation afforded the Commission and other authorities.

The Commission's investigation is continuing.