UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AHN) |
| | : | |
| v. | : | October 18, 2006 |
| | : | |
| WALTER A. FORBES | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT WALTER A. FORBES' MOTION
FOR PERMISSION TO INTRODUCE EXTRINSIC EVIDENCE OF BIAS**

**(Opposition to Forbes Third Trial Motion No. 19)**

## INTRODUCTION

In this motion -- Forbes' 55th written motion or "pleading" concerning the third trial -- Forbes demands <u>carte blanche</u> to introduce cumulative, extrinsic evidence that he asserts is probative of the bias of Government witness Henry Silverman. The Government does not dispute that extrinsic evidence, in an appropriate case, is admissible to prove a witness's bias. But this is not an appropriate case for such evidence for at least four reasons:

- <u>First</u>, Forbes has yet to demonstrate a sufficient good faith basis for his proposed line of inquiry.

- <u>Second</u>, having elicited ample evidence of Silverman's potential bias, the additional evidence Forbes intends to proffer would be cumulative and marginally probative (if at all) of bias, and risks creating a time-consuming and distracting trial-within-a-trial on a tangential issue.

- <u>Third</u>, Forbes cannot pursue this line of inquiry merely to attack Silverman's credibility on a collateral matter: whether Silverman or his counsel at his direction told co-Defendant Kirk Shelton's counsel that, if

> Shelton testified against Forbes, Cendant would intercede on Shelton's behalf. As this Court and Judge Thompson have repeatedly ruled in rejecting similar attempts to impeach Cosmo Corigliano, such back-door attacks on credibility are not permissible.
>
> - <u>Fourth</u>, as this Court stated, TTTr. 1437, the extrinsic evidence that Forbes intends to proffer poses substantial hearsay problems -- problems that Forbes has not even bothered to address in his motion.

For these reasons, Forbes' motion should be denied unless he establishes outside the presence of the jury a good faith basis for proffering the testimony he proposes. Furthermore, in the unlikely event that Forbes does establish a sufficient good faith basis for this inquiry, he should not be permitted prolonged examination of multiple witnesses on this issue. At most, he should be permitted to call one witness, that witness should be one who has personal knowledge of Silverman's alleged efforts to encourage Shelton to plead guilty, and the examination should be limited to that single subject.

## ARGUMENT

Forbes cannot dispute that this Court "may, in its discretion, preclude questions for which the questioner cannot show a good faith basis." <u>United States v. Scotti</u>, 47 F.3d 1237, 1248 (2d Cir. 1995) (internal quotation marks omitted). "Although counsel may explore certain areas of inquiry in a criminal trial without full knowledge of the answer to anticipated questions, he must, when confronted with a demand for an offer of proof, provide some good faith basis for questioning that alleges adverse facts." <u>United States v. Katsougrakis</u>, 715 F.2d 769, 779

(2d Cir. 1983). Mere "suspicions" are not enough, id., and doubly so when "there [is] no dearth of other material on which" the witness was "cross-examined," United States v. Concepcion, 983 F.2d 369, 392 (2d Cir. 1992).

Moreover, the issue is not -- as Forbes would have it -- whether extrinsic evidence can be "properly offered to show bias" when the circumstances warrant it; of course it can. United States v. Atherton, 936 F.2d 728, 733 (2d Cir. 1991). Rather, "the question presented" here "is whether" this Court would "abuse[] its discretion by refusing to find the proffered testimony to be sufficiently probative of" Silverman's "asserted bias in favor of the government to warrant its admission into evidence." Id. (emphasis added) (affirming district court's exclusion of proffered extrinsic evidence of bias); see United States v. Abel, 469 U.S. 45, 49, 54 (1984) (holding "that the evidence showing Mills' and respondent's membership in the [same] prison gang was sufficiently probative of Mills' possible bias towards respondent to warrant its admission into evidence" and confirming the "wide discretion" accorded to district courts "in determining the admissibility of evidence") (emphasis added).

This Court has ample discretion to exclude extrinsic evidence of bias where, as here, a prosecution witness has already admitted the principal sources of his bias. See, e.g., Abel, 469 U.S. at 54 ("[a]ssessing the probative value of" extrinsic evidence "and weighing any factors counseling against admissibil-

-3-

ity is a matter first for the district court's sound judgment under Rules 401 and 403"); <u>United States v. Weiss</u>, 930 F.2d 185, 197-98 (2d Cir. 1991) (affirming exclusion of cumulative extrinsic evidence of the bias of a prosecution witness who had already admitted "the main circumstances from which bias proceeds"); <u>United States v. Gomes</u>, 177 F.3d 76, 81 (1st Cir. 1999) ("the trial judge had discretion to exclude such an excursion into extrinsic evidence [about a witness's alleged bias] that would distract the jury from the main issues in this case").

Defense counsel cross-examined Silverman at length -- for approximately 125 pages of the transcript, nearly 40 pages more than the direct examination. During that cross-examination, defense counsel probed the bases for Silverman's bias at length and elicited Silverman's admissions that:

- he "actually lost hundreds of millions of dollars" because of the fraud, TTTr. 1404;
- he "repeatedly indicated to many people . . . that [he] had actually lost a billion dollars," TTTr. 1405;
- it was "very, very hard for [him] to take the impact of what had occurred in the announcement of the discovery of financial manipulation," TTTr. 1405;
- "when the disclosure of . . . financial manipulation occurred, [he] felt that [his] reputation had been badly hurt," TTTr. 1406;
- "it was devastating personally" and he "publicly stated that [he was] in a rage," TTTr. 1406-1407;
- he "wrote a letter to" a "long term friend" in which he "said that [he] lost [his] reputation, [his] credibility and a billion dollars," TTTr. 1407-1408;
- he "felt the pain of people saying" that he was "no longer in that higher atmosphere" of "genius" businessmen, TTTr. 1408;

- he had "said publicly on news stations like CNBC that [he] would expect people to go to jail for what happened at CUC," TTTr. 1409;

- he "said that when some of our former partners are put in jail, I think that will give us an emotional lift, if not a financial one," which "reflected [his] state of mind," TTTr. 1410;

- he felt in February 2000 that "anger was consuming" him and that he "had lost [his] sense of self worth," STTr. 1410-1411;

- he "had a quest . . . for redemption," "wanted to rebuild Cendant," and if he "did that, [he] felt that would help rebuild [his] reputation," TTTr. 1412;

- he was "very angry with Walter Forbes even though [he] had no personal knowledge that [Forbes] did anything wrong," TTTr. 1413;

- he asked a U.S. Senator whom Silverman knew "very well personally" what the Senator "could do to be of help," TTTr. 1414;

- "at some point," Silverman met "with the U.S. Attorney," TTTr. 1414;

- after Corigliano's, Pember's, and Sabatino's guilty pleas, Silverman told CNN in substance that he looked to the courts to be "an instrument of retribution," TTTr. 1416;

- his "objective was . . . to identify and punish the wrongdoers, whoever they were," TTTr. 1418;

- former Senator D'Amato, who sat on the board of one of Cendant's subsidiaries, wrote letters on Cendant's behalf to the SEC, TTTr. 1420;

- "Jim Buckman, the general counsel of Cendant," drafted those letters, sent them to "Senator D'Amato," who in turn sent them to the SEC, TTTr. 1420;

- Silverman's personal counsel have "monitored [in court] all the days of the three trials with respect to Mr. Forbes," TTTr. 1422; and

- and Cendant is "paying" for "the counsel for government witnesses such as Cosmo Corigliano." TTTr. 1431.

Given the evidence already before the jury concerning Silverman's well-founded animus against those whom he holds

-5-

responsible for the charged fraud, whether he or his agents attempted to enlist Shelton as a cooperating witness does little if anything to prove that Silverman is biased against Forbes. Thus, excluding proposed "extrinsic evidence of" Silverman's "potential bias" that is, at best, marginally probative, will not leave the jury "without sufficient information to appraise [the witness's] motivations and biases." United States v. Bridgeforth, 441 F.3d 864, 868 (9th Cir. 2006) (affirming conviction); see United States v. Smith, 196 F.3d 1034, 1038 (9th Cir. 1999) (affirming district court's exclusion of proffered bias evidence "because its probative value, if any, was substantially outweighed by the danger of confusing the issues, of misleading the jury, and of needlessly presenting cumulative evidence" and because "to the extent that Thomason was biased in favor of the government, such bias had been established by Thomason's own admissions").[1]

---

[1] Even the pre-Abel cases cited by Forbes recognized "that it is within the sound discretion of the trial judge to determine the extent to which he will receive independent evidence for the purpose of proving a witness' hostility." United States v. Haggett, 438 F.2d 396, 400 (2d Cir. 1971); see United States v. Harvey, 547 F.2d 720, 723 (2d Cir. 1976) ("the scope of a defendant's right to introduce evidence of bias is not limitless, and may be restricted as the trial court in its sound discretion deems proper"). Although Haggett cautioned against "exclud[ing] all [extrinsic] evidence" of bias, 438 F.2d at 400, that is not the case here, given defense counsel's repeated reference on cross-examination to such extrinsic evidence as the letters from two former Senators to the SEC and the U.S. Attorney's Office. TTTr. 1414-1420. Defense counsel did not offer those letters into evidence but the Government made clear that counsel could. TTTr. 1362 (sealed).

Moreover, based on defense counsel's representations to date, counsel's true motive for proffering extrinsic evidence is not to further demonstrate Silverman's bias, but to contradict his testimony. For example, on the issue of whether Silverman sought Shelton's cooperation against Forbes, Silverman testified that he "referred" Shelton's counsel "to Cendant's counsel," TTTr. 1427, and told Shelton's counsel that "Kirk Shelton should tell the truth[,] whatever that might be." TTTr. 1426. Silverman denied "indicat[ing] to" Shelton's counsel "that if Kirk Shelton was willing to become a witness against Walter Forbes, [Silverman] and/or Cendant would do whatever was within their power to help reduce or recommend that Kirk Shelton's sentence be reduced." TTTr. 1426. Silverman also denied "authoriz[ing] his counsel to approach [Shelton's counsel,] attorney Tom Puccio[,] and indicate to Mr. Puccio that if Kirk Shelton was willing to testify against Walter Forbes and plead guilty, that Cendant would make a recommendation for [a] lesser sentence." TTTr. 1427-28. Finally, Silverman denied that he "authorize[d] any lawyer on [his] behalf to talk to Tom Puccio about Kirk Shelton's testimony." TTTr. 1428.

As this Court recognized in rejecting similar efforts to impeach Cosmo Corigliano with extrinsic evidence, Docket 2409, at 12-13 & n.3; Docket 2666, at 10-11, Forbes has no right to mount such a back-door attack on Silverman's credibility. It is well-settled that "[e]xtrinsic evidence offered for impeachment on a

collateral issue is properly excluded." <u>United States v. Purdy</u>, 144 F.3d 241, 245-46 (2d Cir. 1998). While courts have "broad discretion" to admit extrinsic evidence if it contradicts a witness's testimony on direct concerning a "specific fact" that is "closely intertwined with the central issue of th[e] case," <u>United States v. Benedetto</u>, 571 F.2d 1246, 1250 (2d Cir. 1978), "extrinsic evidence to impeach is only admissible for contradiction where the prior testimony being contradicted was itself material to the case at hand." <u>United States v. Perez-Perez</u>, 72 F.3d 224, 227 (1st Cir. 1995).[2] Even where "extrinsic evidence" is admissible "to impeach specific error or falsehoods in a witness's direct testimony," it is "subject to Rule 403 considerations." <u>Benedetto</u>, 571 F.2d at 1250 n.7.

Here, just as in <u>Perez-Perez</u>, any extrinsic evidence that Forbes wants to proffer is "not material to" his "guilt or innocence." <u>Id.</u> Instead, admitting this extrinsic evidence would help Forbes only to the extent that it undermines Silverman's overall credibility, which in turn might cause the jury to question the veracity of other aspects of Silverman's testimony.

---

[2] Although <u>Benedetto</u> suggests in dicta that courts may "admit extrinsic evidence tending to contradict [a] specific statement, even if such statement concerns a collateral matter," the "specific statement" there "was closely intertwined with the central issue of th[e] case, namely whether [defendant] had received money in connection with his official duties at certain plants." 571 F.2d at 1250. In any event, <u>Benedetto</u> was based upon "the totality of the circumstances" of the case before it, <u>id.</u>, as the Second Circuit subsequently has emphasized, <u>United States v. Colon</u>, 880 F.2d 650, 661 (2d Cir. 1989).

Yet Silverman admitted he does not know whether Forbes knowingly participated in the fraud. Thus, the testimony proposed by Forbes is the epitome of "collateral." See, e.g., United States v. Olivo, 80 F.3d 1466, 1470-71 (10th Cir. 1996) (district court properly excluded extrinsic evidence of state court arrest warrant offered to impeach witness). Moreover, as already shown, Forbes has ample ammunition for challenging Silverman's credibility without delving into the area that is the subject of his present motion.

But if Forbes is permitted to pursue this line of inquiry, he should be limited to only one witness whom defense counsel represents -- outside the jury's presence -- has personal knowledge of the alleged efforts by Silverman or his agents to enlist Shelton as a cooperating witness and will testify about only that subject. See Docket 2409, at 13 (denying SEC's motion to quash, but ordering that "[t]he testimony of these witnesses . . . shall be subject to the constraints of Fed. R. Evid. 403, shall be narrowly circumscribed, and will only be permitted if a proper foundation is laid").

To date, defense counsel has identified four potential witnesses: (1) Steve Kaufman; (2) Tom Puccio; (3) Judge Herbert Stern; and (4) Kirk Shelton. TTTr. 1364-1365 (sealed), 1437. But according to defense counsel's present good faith proffer, Shelton could testify only about alleged "comments" that "were passed on" by Shelton's counsel. TTTr. 1366. Consequently,

Shelton's testimony on this subject would be inadmissible hearsay (and covered by the attorney-client privilege). Any testimony by Shelton poses substantial Rule 403 problems, as well. Shelton was convicted in the first trial, and Judge Thompson enhanced Shelton's sentence for obstruction of justice after finding that Shelton had repeatedly perjured himself during the first trial. Shelton Sent. Tr., 7/26/05, at 490-506

Before Forbes is permitted to call even one of the other witnesses he has identified, this Court should require defense counsel to represent on the record that counsel has spoken with the witness and the witness is "willing and prepared to come into this courtroom and state under oath what you've just said you were told." TTTr. 1369-1370. Finally, as this Court directed concerning any SEC witnesses whom Forbes calls, any testimony proffered by Forbes from Judge Stern, Steve Kaufman or Tom Puccio should be "narrowly circumscribed" and Forbes should not be allowed "to use th[is] witness[] to collaterally impeach the credibility of any government witness," including Silverman. Docket 2409, at 13.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that Forbes' Third Trial Motion No. 19 be denied.

                        Respectfully submitted,

                        CHRISTOPHER J. CHRISTIE
                        Special Attorney
                        U.S. Department of Justice

                        */s/ Mark E. Coyne*

                        MICHAEL MARTINEZ
                        Federal Bar Number phv0243
                        CRAIG CARPENITO
                        Federal Bar Number phv0244
                        MARK E. COYNE
                        Federal Bar Number phv01079
                        NORMAN GROSS
                        Federal Bar Number 24933
                        Special Attorneys
                        U.S. Department of Justice

Bridgeport, Connecticut
Date:  October 18, 2006

## CERTIFICATE OF SERVICE

The undersigned certifies that on this day I caused to be served a copy of the Government's Opposition to Defendant Walter A. Forbes' Motion for Permission to Introduce Extrinsic Evidence of Bias (Opposition to Forbes Third Trial Motion No. 19) via email on:

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901
(202) 434-5005
bsimon@wc.com

Mark E. Coyne

Dated: October 18, 2006
Bridgeport, CT