UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AHN) |
| | : | |
| | : | |
| v. | : | October 19, 2006 |
| | : | |
| | : | |
| | : | |
| WALTER A. FORBES | : | |

GOVERNMENT'S RESPONSE ADDRESSING THE COURT'S
CONCERNS ABOUT THE HEARSAY AND PRIVILEGE ISSUES
IMPLICATED BY FORBES THIRD TRIAL MOTION NO. 19

The Government writes to address further the hearsay and privilege issues raised by the Court concerning the extrinsic evidence that Defendant Forbes seeks leave to introduce.

1.  **Kirk Shelton's proposed testimony.**

Apart from the Fifth Amendment, privilege, and Rule 403 problems posed by having a convicted and judicially-declared perjurious co-defendant testify while his direct appeal is pending, any testimony that Shelton could provide on the subject at issue would be at least double hearsay. Defense counsel has admitted that Shelton has no first-hand knowledge of any offers made by Henry Silverman or Silverman's purported agent to Shelton's counsel. Thus, Shelton would be testifying about what his lawyer said the lawyer heard from Silverman -- double hearsay -- or what Shelton's lawyer said Silverman's counsel said that Silverman authorized him to say -- triple hearsay. Such evidence is inadmissible.

For example, in <u>Orjias v. Stevenson</u>, 31 F.3d 995 (10th Cir. 1994), the district court excluded testimony from a defense witness who "did not have firsthand knowledge of the firing" of an employee. <u>Id.</u> at 1003. Instead, the defense "simply offered [the witness's] testimony about his recollection of the information in" the employee's personnel file. <u>Id.</u> The Tenth Circuit ruled that the "evidence was double hearsay" and that "[b]ecause both levels of hearsay did not fall within an exception to the hearsay rule, the district court properly excluded this testimony." <u>Id.</u> (citation omitted).

Similarly, in <u>United States v. Horning</u>, 409 F.2d 424 (4th Cir. 1969), over defense objection, the Government was allowed to prove the value of stolen tools in a grand larceny case through the testimony of a witness who had no first-hand knowledge of the value of those tools. <u>Id.</u> at 426. The Fourth Circuit remanded because the defendant's "motion to strike should have been granted":

> The value of the stolen tools -- a crucial point in the trial -- was sought to be established through a witness who admittedly lacked first-hand knowledge of the subject. His testimony, based on the contents of a catalogue not itself introduced into evidence, constituted inadmissible hearsay and was in violation of the best evidence rule.

<u>Id.</u>

Here, as was the case in in <u>Orjias</u> and <u>Horning</u>, Forbes is proffering Shelton's testimony for the truth of the matter asserted: that Silverman in fact made an offer to Shelton

-2-

through Shelton's counsel and that the alleged offer demonstrates
Silverman's bias.  Furthermore, just like the testimony in <u>Orjias</u>
and <u>Horning</u>, Shelton does not have "first hand" knowledge of the
testimony that Forbes intends to elicit.  Accordingly, just as in
<u>Orjias</u> and <u>Horning</u>, Shelton's testimony on that subject is
inadmissible double (or triple) hearsay and should be precluded.[1]

   **2.   <u>Thomas Puccio's proposed testimony.</u>**

   Tom Puccio's testimony would also be inadmissible hearsay.
Defense counsel has represented that Puccio did **not** speak with
Silverman and that Puccio spoke only with Herbert Stern, Silver-
man's counsel.  TTTr. 2081-2082.  Thus, Puccio can testify only
to what Stern said.  Stern's out-of-court statements, however,
would be probative of Silverman's bias only if they were offered
for the truth of the matter asserted:  that Silverman supposedly
would go easy on Shelton in civil litigation brought by Cendant
and would lobby for a lower sentence if Shelton pled guilty and
cooperated against Forbes.  That is classic hearsay, and there is
no exception to the hearsay rule that permits such testimony to
be introduced at trial.

   Puccio's testimony is inadmissible for an additional reason.
It is settled in this and other Circuits that "statements of an

---

   [1] Shelton's proposed testimony also suffers from the eviden-
tiary infirmity that Thomas Puccio's and Herbert Stern's does,
given that Forbes is trying to impeach a witness with the state-
ment of the witness's lawyer instead of the witness himself.  <u>See</u>
Points 2-3 below.

attorney cannot be used to impeach the testimony of a client"
where that client is merely a witness, as opposed to a party.
United States v. Cuevas Pimentel, 815 F. Supp. 81, 82 (D. Conn.
1993) (Cabranes, then-C.J.); see, e.g., United States v. Almonte,
956 F.2d 27, 29 (2d Cir. 1992) (per curiam) ("in the absence of
endorsement by the witness, a third party's notes of a witness's
statement may not be admitted as a prior inconsistent statement
unless they are a verbatim transcript of the witness's own
words"); United States v. Tarantino, 846 F.2d 1384, 1416 (D.C.
Cir. 1988) ("witnesses are not impeached by prior inconsistent
statements of other witnesses, but by their own prior inconsis-
tent statements").

    As then-Chief Judge Cabranes explained in Cuevas Pimental,
"as a general matter, Rule 613(b) does not permit an attorney's
statements to be introduced as prior inconsistent statements of
that attorney's client."  815 F. Supp. at 83.  Furthermore,
although "under Rule 801(d)(2) an attorney's statement can
sometimes be used as an admission of the party on whose behalf
the statement was made," that Rule "permits admissions to be
introduced only against parties -- not against all witnesses."
815 F. Supp. at 83-84.  Thus, "a statement is admissible as a
statement of a witness only where that statement was in fact made
by the witness."  Id. at 83.

    Thus, Puccio's proposed testimony about what he heard Stern
say is inadmissible hearsay and cannot be used to contradict

Silverman's testimony.  Much as Forbes may want to depict Silver-
man as his adversary in this criminal case, it is the Government
who is the adverse party here, not Silverman.[2]

### 3. Herbert Stern's proposed testimony.

Herbert Stern's testimony likely will also be inadmissible,
if not protected by the attorney-client privilege.  As demon-
strated above, under <u>Cuevas Pimental</u>, Stern's testimony cannot be
introduced as either a prior inconsistent statement of Silverman
or an admission by him because, "as a general matter, Rule 613(b)
does not permit an attorney's statements to be introduced as
prior inconsistent statements of that attorney's client" and Rule
801(d)(2) "permits admissions to be introduced only against
<u>parties</u> -- not against all witnesses."  815 F. Supp. at 83-84.

The only way Stern's testimony might conceivably qualify as
a "statement" that "was in fact made by" Silverman would be if
Stern testified that Silverman authorized him to convey the terms
of the alleged offer supposedly extended by Stern to Puccio.  But
it is highly likely that Stern would decline to answer such a
question because to do so would disclose privileged information.
For example, suppose that Silverman discussed with Stern various
strategies available to Cendant for settling its potential

---

[2] Puccio's proposed testimony also suffers from the same
evidentiary infirmities that Steve Kafman's proposed testimony
would.  That is, Puccio's testimony is being offered as a prior
inconsistent statement on an otherwise collateral matter, and to
the extent the testimony is marginally probative of bias, it is
merely cumulative.  <u>See</u> Point 5 below.

contribution claim against Shelton in connection with the $2.8 billion that Cendant paid to settle securities class action litigation stemming from the charged fraud.  If, hypothetically, Silverman deferred to Stern's judgment as to which of those strategies to broach with Puccio, that would be privileged, and Stern could properly decline to answer whether Silverman authorized any particular proposal that Stern broached with Puccio.

It is well-settled that "the district court can bar cross-examination concerning "communication protected by an attorney/client privilege." United States v. Dennis, 843 F.2d 652, 656 (2d Cir. 1988).[3]  This is especially true where the proposed intrusion on the attorney-client privilege concerns "a collateral matter going only to [the witness's] general credibility." United States v. Coven, 662 F.2d 162, 171 (2d Cir. 1981).[4]  If

---

[3] See, e.g., United States v. Gatzonis, 805 F.2d 72, 74-75 (2d Cir. 1986) ("limitation of cross-examination, based on the attorney-client privilege, was within [court's] discretion"); United States v. Sindona, 636 F.2d 792, 804-05 (2d Cir. 1980) (affirming "ruling precluding the cross-examination of Bordoni based upon material obtained from Bordoni's Venezuelan attorney" because "[i]f information obtained as a result of a violation of that privilege were permitted to be used against the client on cross-examination, it would destroy the attorney-client privilege"); see also United States v. Rainone, 32 F.3d 1203, 1207 (7th Cir. 1994) ("[a] trial judge does not violate the Constitution when he limits the scope of cross-examination for a good reason, and here as in the usual case desire to protect the attorney-client privilege was a good reason").

[4] See United States v. Fox, 396 F.3d 1018, 1024 (8th Cir. 2005) ("[t]o allow defense counsel to inquire about the substance of Carter's conversations with his counsel and to put such evidence before the jury would not have resulted in the jury having a significantly different impression of Carter than they
(continued...)

the Court can preclude cross-examination of Silverman concerning his discussions with his counsel, surely the Court can preclude Forbes from circumventing the attorney-client privilege by posing the same questions to counsel directly.

**4.    Martin Auerbach's proposed testimony.**

Martin Auerbach's testimony poses the same double hearsay problem that Shelton's does.  According to defense counsel, like Shelton, Auerbach was not a party to any conversation with Silverman.  TTTr. 2082 ("Auerbach could testify to show that, in fact, he was informed by Kaufman that [the conversation with Silverman] occurred").[5]  Instead, Auerbach can testify only about what another lawyer said that Silverman said.  Because Auerbach has no first-hand knowledge of what, if anything, Silverman said, his testimony would be inadmissible double hearsay.  See Orjias, 31 F.3d at 1003; Horning, 409 F.2d at 426.

**5.    Steve Kaufman's proposed testimony.**

Of the five potential witnesses mentioned by defense coun-sel, apparently only Steve Kaufman has first-hand knowledge of the statement described by defense counsel in which Silverman

---

[4] (...continued)
already had"), overruled on other grounds, United States v. Pirani, 406 F.3d 543, 550 (8th Cir.2005) (en banc).

[5] Of course, Silverman did not dispute that he spoke with Kaufman.  TTTr. 1426-1426 (admitting that Silverman "had a discussion with Steve Kaufman with respect to Kirk Shelton and the potential for Kirk Shelton to become a witness against Walter Forbes" and adding that "Kaufman approached me about this topic. My response was that Kirk Shelton should tell the truth.  What-ever that might be.").

purportedly tried "to make Kirk Shelton become a witness and
testify against Walter Forbes." TTTr. 2077. Here is defense
counsel's examination of Silverman concerning that alleged
statement:

> Q.  Sir, isn't it a fact that you had a discussion with
> Steve Kaufman with respect to Kirk Shelton and the
> potential for Kirk Shelton to become a witness against
> Walter Forbes?
>
> A.  Yes.
>
> Q.  In that discussion, did you indicate to Mr. Kaufman
> that if Kirk Shelton was willing to become a witness
> against Walter Forbes, that you and/or Cendant would do
> whatever was within their power to help reduce or
> recommend that Kirk Shelton's sentence be reduced?
>
> A.  Absolutely not.
>
> Q.  Did you have a discussion with Mr. Kaufman that
> indicated you would like Kirk Shelton to be a witness?
>
> A.  Mr. Kaufman approached me about this topic.  My
> response was that Kirk Shelton should tell the truth.
> Whatever that might be.
>
> Q.  Well did you indicate to Mr. Kaufman that if Kirk
> Shelton agreed to plead guilty and testify against
> Walter Forbes, that Cendant would not bring civil
> actions for damages against Kirk Shelton or his family?
>
> A.  I made no such statements.
>
> Q.  Did you have more than one discussion with Mr.
> Kaufman?
>
> A.  Yes.
>
> Q.  Was the subject matter of the discussion Kirk
> Shelton?
>
> A.  Yes.
>
> Q.  And did it relate to Kirk Shelton testifying?
>
> A.  One of the conversations did.
>
> Q.  And did it relate to Kirk Shelton testifying and
> telling the truth of course with respect to Walter
> Forbes?

A.  It was Mr. Kaufman's suggestion that we discuss the matter.  I referred him to Cendant's counsel and I don't know the results of that.

TTTr. 1426-1427.

Having confronted Silverman with his supposed statement,[6] Kaufman's testimony would be admissible as a prior inconsistent statement only if that testimony actually contradicts Silverman's "on a matter material to the substantive issues of the case." United States v. Grooms, 978 F.2d 425, 429 (8th Cir. 1992); see Fed. R. Evid. 613(b) ("[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same"). In turn, "[e]vidence that does not pertain to the substantive issues of the trial and that could not be shown in evidence for any purpose independent of the contradiction is collateral." United States v. Carter, 410 F.3d 1017, 1023 (8th Cir. 2005).

Forbes no doubt will claim that any contradiction between Silverman's and Kaufman's recollection of their conversation concerning Shelton is further evidence of Silverman's bias, and that "[p]roof of bias is almost always relevant." United States v. Abel, 469 U.S. 45, 52 (1984).  But that would blur the difference between two separate and distinct types of impeachment. See, e.g., United States v. Collicott, 92 F.3d 973, 981 n.5 (9th Cir. 1986) (noting that "impeachment with prior inconsistent

---

[6] Defense counsel's gratuitous reference to Shelton's "sentencing," TTTr. 1426, raises extremely prejudicial issues that the Government will address in a supplemental brief.

statements is only one of five main forms of impeachment of the credibility of a witness," another of which is "showing bias"); United States v. Head, 697 F.2d 1200, 1212 (4th Cir. 1982) ("In addition to attacking Elko's bias and motivation, Head sought to confront Elko with numerous prior inconsistent statements.").

But even if a potential contradiction between Silverman and Kaufman is admissible as proof as bias, "the question" would be "whether" this Court would "abuse[] its discretion by refusing to find the proffered testimony to be sufficiently probative of" Silverman's "asserted bias in favor of the government to warrant its admission into evidence." United States v. Atherton, 936 F.2d 728, 733 (2d Cir. 1991) (emphasis added) (affirming district court's exclusion of proffered extrinsic evidence of bias). Given Forbes' concession that his counsel has already made "a substantial record of [Silverman's] bias," TTTr. 2077, Forbes cannot show that Kaufman's testimony is necessary here.  In fact, the testimony would be merely cumulative.  That alone is a sufficient basis to exclude Kaufman's testimony, because "[a]ssessing the probative value of" extrinsic evidence of bias "and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403." Abel, 469 U.S. at 54.

**CONCLUSION**

For the foregoing reasons and those set forth in the Government's prior brief, the Government respectfully requests that Forbes' Third Trial Motion No. 19 be denied.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
Special Attorney
U.S. Department of Justice


MICHAEL MARTINEZ
Federal Bar Number phv0243
CRAIG CARPENITO
Federal Bar Number phv0244
MARK E. COYNE
Federal Bar Number phv01079
NORMAN GROSS
Federal Bar Number 24933
Special Attorneys
U.S. Department of Justice

Bridgeport, Connecticut
Date:  October 19, 2006

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this day I caused to be served a copy of the Government's Sur-Reply in Opposition to Defendant Walter A. Forbes' Motion for Permission to Introduce Extrinsic Evidence of Bias (Opposition to Forbes Third Trial Motion No. 19) via email on:

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901
(202) 434-5005
bsimon@wc.com


_____
Mark E. Coyne

Dated: October 19, 2006
       Bridgeport, CT