## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 3:02CR264 (AHN) |
| | ) | |
| WALTER A. FORBES | ) | October 19, 2006 |
| | ) | |
| | ) | |

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT WALTER A. FORBES FOR PERMISSION TO INTRODUCE EXTRINSIC EVIDENCE OF BIAS
### (Forbes Third Trial Motion No. 19)

To respond to the Court's questions and to the government's opposition and supplemental response briefs, defendant Walter A. Forbes, through undersigned counsel, respectfully submits this supplemental memorandum in further support of his motion for permission to introduce extrinsic evidence of bias, specifically evidence regarding Henry Silverman's efforts to persuade Kirk Shelton to testify against Mr. Forbes and his offer of inducements to Mr. Shelton.

This is a case in which <u>two</u> juries have been unable to reach a verdict with respect to Mr. Forbes despite <u>lengthy</u> deliberations. Mr. Silverman is the <u>only</u> new government witness. Exclusion of this <u>powerful</u> extrinsic evidence of Mr. Silverman's bias would be reversible error. <u>See, e.g.</u>, <u>United States v. Harvey</u>, 547 F.2d 720 (2d Cir. 1976) (reversing conviction based on exclusion of extrinsic evidence of bias); <u>United States v. Haggett</u>, 438 F.2d 396 (2d Cir. 1971) (same).

## BACKGROUND

On cross-examination, Mr. Forbes confronted Mr. Silverman with the circumstances suggesting bias. Mr. Silverman acknowledged that he discussed with Steve

Oral Argument Requested

Kaufman, who was then Mr. Shelton's attorney, the possibility of Mr. Shelton testifying against Mr. Forbes. Tr. (10/16/06) at 1426 ("Q. Sir, isn't it a fact that you had a discussion with Steve Kaufman with respect to Kirk Shelton and the potential for Kirk Shelton to become a witness against Walter Forbes? A. Yes."). Mr. Silverman admitted to having two conversations with Mr. Kaufman. Tr. (10/16/06) at 1427. Mr. Silverman denied offering any inducements concerning Mr. Shelton's possible sentence or civil litigation by Cendant. Tr. (10/16/06) at 1426 ("Q. In that discussion, did you indicate to Mr. Kaufman that if Kirk Shelton was willing to become a witness against Walter Forbes, that you and/or Cendant would do whatever was within their power to help reduce or recommend that Kirk Shelton's sentence be reduced? A. Absolutely not."); id. ("Q. Well did you indicate to Mr. Kaufman that if Kirk Shelton agreed to plead guilty and testify against Walter Forbes, that Cendant would not bring civil actions for damages against Kirk Shelton or his family? A. I made no such statements.").

Tom Puccio subsequently replaced Mr. Kaufman as counsel for Mr. Shelton because Mr. Kaufman had a trial conflict. Mr. Silverman denied authorizing his counsel to approach Mr. Puccio about Mr. Shelton's testimony. Tr. (10/16/06) at 1427-28 ("Q. Now did you authorize your counsel to approach attorney Tom Puccio and indicate to Mr. Puccio that if Kirk Shelton was willing to testify against Walter Forbes and plead guilty, that Cendant would make a recommendation for lesser sentence? A. I know nothing about that. Q. Did you authorize any lawyer on your behalf to talk to Tom Puccio about Kirk Shelton's testimony? A. No.").

Having confronted Mr. Silverman with the bias evidence and provided him an opportunity to explain or deny the circumstances suggesting bias, Mr. Forbes may now call Mr.

Kaufman and Mr. Puccio to prove up this bias and to testify that inducements were offered to Mr. Shelton for his testimony against Mr. Forbes.[1]

## ARGUMENT

**1.    Extrinsic evidence of bias is admissible.**  Given the binding precedent from the Supreme Court and the Second Circuit, the government concedes, as it must, that extrinsic evidence is admissible to show bias. See, e.g., United States v. Abel, 469 U.S. 45, 52 (1985); United States v. Harvey, 547 F.2d 720, 722 (2d Cir. 1976); Opp'n at 3 (when the circumstances warrant it "of course" extrinsic evidence can be offered to prove bias).  The government's suggestion that the proffered evidence is not "sufficiently probative" of bias, Opp'n at 3 (quotation omitted); Resp. at 10 (quotation omitted), cannot be taken seriously.  It is difficult to imagine evidence more probative of bias than that proffered by the defense.  Evidence that Mr. Silverman and his counsel encouraged Mr. Shelton (who has always denied wrongdoing) to testify against Mr. Forbes and that they offered Mr. Shelton inducements to do so is extraordinary evidence of bias, never before encountered in defense counsel's collective experience.

The Second Circuit's decision in United States v. Haggett, 438 F.2d 396 (2d Cir. 1971), is instructive.  In that case, the defendant was charged with misapplying bank funds and an executive of the victim bank was called as a government witness. Id. at 398. The bank executive had verified the bank's civil complaint against the defendant and assisted the United States Attorney by locating documents for the prosecution.  Id. The district court, however, excluded the testimony of three defense witnesses who the defendant proffered would testify that

---

[1]      Mr. Forbes does not intend to call Mr. Shelton or Martin Auerbach at this time because they were not participants in the conversations with Mr. Silverman or Mr. Stern. He will have them in Court, however, ready to testify depending on the government's cross-examination of Messrs. Kaufman and Puccio.

the bank executive had offered them favorable loan treatment to testify falsely against the

defendant.  The government argued there, as it does here, that the proffered evidence was not

"sufficiently probative to expose any bias."  Id. at 398.  The Second Circuit disagreed and

reversed the conviction.  Id. at 399 ("It is the bank representative's alleged hostility as an officer

of the defrauded Bank and his willingness to manufacture evidence in order to insure [the

defendant's] conviction that defendant sought and was entitled to elicit from the testimony of his

proffered witnesses.").[2]

### 2.     Counsel has a good faith basis to believe that the testimony will show bias.

In its response brief, the government's lead argument was that "Forbes has yet to

demonstrate a sufficient good faith basis for his proposed line of inquiry."  Opp'n at 1.  As set

forth in open Court on Wednesday, Tr. (10/18/06) at 2070-83, counsel has spoken to Mr.

Kaufman and Mr. Puccio and they have told counsel that they will testify to statements by

Messrs. Silverman and Stern offering inducements for Mr. Shelton's testimony against Mr.

Forbes.  Although the Court has discretion to preclude cross-examination where the questioner

can offer no more than "suspicions" or "mere speculation" as a basis for the question, United

States v. Pedroza, 750 F.2d 187, 196 (2d Cir. 1984), Mr. Forbes has made a specific factual

proffer and his attorney has interviewed the witnesses.  See, e.g., id. (reversible error to preclude

cross-examination where question "had far more evidentiary solidity than the mere speculation

---

[2]     The present case is a far cry from United States v. Atherton, 936 F.2d 728 (2d Cir. 1991). In that case, the district court excluded evidence that the government witness had used drugs. The defendant argued that this criminal conduct gave the witness reason to curry favor with the government to avoid prosecution, but there was "no showing of any government awareness of [the drug] use or any danger to [the witness] that he would be prosecuted because of it."  Id. at 734.  Here, there is no missing link in the chain of inference, the extrinsic evidence will constitute direct evidence of what Mr. Silverman himself and later his attorney said to the witnesses.

of a private investigator"); Haggett, 438 F.2d 396 (reversible error to preclude extrinsic evidence

of bias where defense counsel had interviewed two of three witnesses).[3]

   **3.    The evidence of specific bias is not cumulative.** The proffered evidence

is not "merely cumulative," Resp. at 10, because Mr. Forbes has not introduced any extrinsic

evidence of bias, Mr. Silverman denied this specific evidence of bias, and the proffered

evidence—that Mr. Silverman offered pecuniary and penal inducements to Mr. Shelton (who has

always denied wrongdoing) to testify against Mr. Forbes— is different in kind and degree from

the general evidence of bias elicited on cross-examination (i.e. financial loss, injury to

reputation, emotional impact, desire to see CUC personnel prosecuted).

   Although a district court retains discretion to regulate the extent of extrinsic

evidence offered to show bias, the Second Circuit has admonished that a district court should not

exclude all extrinsic evidence on this point. See Harvey, 547 F.2d at 722 ("Although we are

mindful that it is within the discretion of the trial judge to determine the extent to which he will

receive independent evidence for the purpose of proving a witness' hostility, we do not believe

that he may as was done below, exclude all such evidence for that purpose." (quoting Haggett,

438 F.2d at 400) (emphasis added)).

> [A] defendant should be afforded the opportunity to present facts
> which, if believed, could lead to the conclusion that a witness who
> has testified against him either favored the prosecution or was
> hostile to the defendant. Evidence of all facts and circumstances

---

[3]    Moreover, the "good faith basis" cases cited by the government deal with whether a defendant can pursue a line of cross-examination, where the mere asking of the question may suggest the existence of facts whether they exist or not. See, e.g., United States v. Katsougrakis, 715 F.2d 769 (2d Cir. 1983) (district court did not abuse discretion in limiting cross-examination when "[c]ounsel failed to advance any grounds to corroborate the 'hit man' inquiry other than to note that a private investigator hired by the defense suspected that Chrisanthou and Kynegos were 'thugs'"). Here, the Court already permitted the cross-examination and Mr. Forbes is going to prove up the adverse facts, not with rumor, suspicion, or speculation, but with witnesses who were first-hand participants in the conversations at issue.

which tend to show that a witness may shade his testimony for the
purpose of helping to establish one side of a cause only, should be
received . . . .

Id. at 723 (quoting Haggett, 438 F.2d at 399).

Furthermore, the extrinsic evidence is not cumulative because Mr. Silverman

denied the approach to Messrs. Kaufman and Puccio. See Abel, 469 U.S. at 467 (a case relied

upon by the government, see Opp'n at 3; Resp. at 10, which held that the district court properly

admitted extrinsic evidence of bias evidence when the witness denied gang membership);

Harvey, 547 F.2d at 722 (reversing conviction based on exclusion of extrinsic evidence when

witness denied accusing defendant of fathering her child and failing to support); Haggett, 438

F.2d at 398 (reversing conviction based on exclusion of extrinsic evidence when government

witness denied he had attempted to influence testimony of three witnesses).  The only Second

Circuit case cited by the government regarding the supposedly cumulative nature of the extrinsic

evidence, United States v. Weiss, 930 F.2d 185 (2d Cir. 1991) (cited in Opp'n at 4), illustrates

Mr. Forbes' point.  Although the defendant Weiss withdrew his objection to the exclusion of the

extrinsic evidence, the Second Circuit noted that even if the objection had been preserved it

would not have been successful because the witness acknowledged her misconduct, the

defendant's discovery of her misconduct, her subsequent involuntary termination, and the

defendant's opposition to her application for unemployment benefits. "The court had discretion

to exclude further proof of these incidents through documentary evidence because Weisz had

admitted to the incidents from which any alleged bias against [the defendant] arose." Id. at 198-

99 (emphasis added).  Here, in contrast, the evidence would not be cumulative because Mr.

Silverman denied the incidents.[4]

_____

[4]    The defendant in Weiss also challenged the district court's limitation on cross-
examination of another government witness.  The district court permitted the defendant to elicit

Moreover, this evidence of specific bias is different, and far more probative, than the testimony of generalized bias already elicited on cross-examination. Many people in Mr. Silverman's position would be angry and interested in the prosecution, but few would permit that anger and interest to manifest itself in the way that Mr. Silverman's did. If the jury knew that Mr. Silverman was willing to offer inducements to a witness who denied wrongdoing, the jury would have a strong basis to believe that Mr. Silverman would exaggerate or shade his own testimony. As the Supreme Court made clear in <u>Abel</u>, evidence regarding the "<u>strength</u>" of a witness' bias is critical. 469 U.S. at 54. In <u>Abel</u>, the Court held that evidence that the witness and the defendant were in the same prison gang was admissible to show bias, and that a full description of the gang's "odious tenets" was not excludable under Rule 403 because the "attributes of the Aryan Brotherhood–a secret prison sect sworn to perjury and self-protection–bore directly not only on the <u>fact</u> of bias, but also on the <u>source</u> and <u>strength</u> of Mills' bias. The tenets of the group showed that Mills had a powerful motive to slant his testimony towards respondent . . . ." <u>Id.</u>

    **4.**    **Bias evidence is not collateral.** The government's repeated argument that extrinsic evidence may not be offered to impeach on a "collateral" issue, Opp'n at 1, 7-9; Resp. at 6, 9, ignores binding Second Circuit precedent holding that "[t]he law is well settled in this Circuit, as in others, that <u>bias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely.</u>" Harvey, 547 F.2d at 722

---

testimony that the witness had animosity toward the defendant and had punched a hole in the wall out of anger at the defendant. The Second Circuit held that it was not error to preclude further cross-examination on the same incident (or on the witness's relationship with other employees) because <u>the witness admitted to the incident showing animosity towards the defendant</u>. <u>See id.</u> at 198.

(emphasis added). This is true even if the extrinsic evidence also contradicts the witness' testimony.

The government tries to circumvent this "well settled" law by claiming that because Mr. Silverman denied the evidence of bias, Mr. Forbes is really introducing the extrinsic evidence to contradict Mr. Silverman's testimony, or as a prior inconsistent statement. See Opp'n at 7-9; Resp. at 9.

> But there is no rule of evidence which provides that testimony admissible for one purpose and inadmissible for another purpose is thereby rendered inadmissible; quite the contrary is the case. It would be a strange rule of law which held that relevant, competent evidence which tended to show bias on the part of a witness was nonetheless inadmissible because it also tended to show that the witness was a liar.

Abel, 469 U.S. at 56. "The law of evidence has long recognized that a cross-examiner is not required to 'take the answer' of a witness concerning possible bias, but may proffer extrinsic evidence, including the testimony of other witnesses, to prove the facts showing a bias in favor of or against a party." Harvey, 547 F.2d at 722 (emphasis added). The government proposes a contrary rule—if the witness denies the circumstances suggesting bias, the inquiry is over because any extrinsic evidence would really be a "back-door attack" on credibility. Opp'n at 7. The Second Circuit plainly holds otherwise. 547 F.2d at 722 (reversing conviction when witness denied accusing defendant of fathering her child and failing to support the child and district court excluded extrinsic evidence that witness made such accusations).[5]

**5. Mr. Kaufman's testimony about what Mr. Silverman said to him is not hearsay.** Significantly, the government's Response Addressing the Court's Concerns About Hearsay and Privilege Issues does not argue that Mr. Kaufman's testimony would be hearsay.

---

[5] Moreover, Rule 613(b) expressly permits extrinsic evidence of prior inconsistent statements if the witness is first confronted with the statement. See Fed. R. Evid. 613(b).

See Resp. at 7-10. Hearsay is an out of court statement offered for the truth of the matter asserted. See Fed. R. Evid. 801(c). "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted." Id. advisory committee's note. Mr. Kaufman's testimony about what Mr. Silverman said to him is not hearsay because it is not offered for the truth; rather, it is offered for the fact that Mr. Silverman said it and to show Mr. Silverman's state of mind, namely his bias. See, e.g., Cameron v. Community Aid for Retarded Children, 335 F.3d 60, 65 n.2 (2d Cir. 2003) ("Because these statements are not used to prove the truth of the matter asserted, but to establish Melville's state of mind, they are not hearsay . . . ."); United States v. Bellomo, 176 F.3d 580, 586 (2d Cir. 1999) (commands or threats directed to a witness are not offered for the truth of matter asserted); United States v. Murphy, 193 F.3d 1, 5-6 (1st Cir. 1999) (instructions to witness not offered for the truth of the matter asserted); United States v. Royal, 972 F.2d 643, 646 (5th Cir. 1992) (testimony that defendant's girlfriend tried to convince defense witness to testify that contraband belonged to him and not to defendant was relevant non-hearsay evidence admissible to show witness' bias).

Even if Mr. Silverman was not going to follow through on his inducements to Mr. Shelton, the fact that he made the inducements is evidence of his bias. Significantly, in two Second Circuit cases reversing convictions based on the improper exclusion of extrinsic evidence of bias, the proffered evidence was testimony about what the government witness said to others. For example, in Haggett, the defendant attempted to call witnesses to testify that the government witness had offered them favorable loan treatment to testify falsely against the defendant. See 438 F.2d at 398. In Harvey, the defendant attempted to call a witness to testify that the government witness had accused the defendant of fathering her child and refusing to pay support.

See 547 F.2d at 722. These statements, like the statements at issue here, were relevant to show bias irrespective of whether they were true.

### 6.     Mr. Puccio's testimony about what Mr. Stern said to him is not hearsay and is relevant.

Mr. Puccio will testify about what Mr. Stern said, not about what Mr. Stern reported that Mr. Silverman said. Contrary to the government's assertion, Mr. Stern's statements are not "probative of Silverman's bias only if they were offered for the truth of the matter asserted: that Silverman supposedly would go easy on Shelton in civil litigation brought by Cendant and would lobby for a lower sentence of Shelton pled guilty and cooperated against Forbes." Resp. at 3. For the same reasons articulated above, Mr. Puccio's testimony about what Mr. Stern said to him is not hearsay because it is not offered for the truth; rather, it is offered for the fact that Mr. Stern said it and to show Mr. Silverman's bias. Even if Mr. Stern was lying to Mr. Shelton in an effort to dupe him into testifying against Mr. Forbes, the statements are still probative of bias.

The fact that Mr. Stern made the statements, instead of Mr. Silverman directly, does not render the evidence hearsay or irrelevant to show Mr. Silverman's bias. The evidence is relevant because the jury could reasonably infer that Mr. Silverman authorized Mr. Stern (expressly or implicitly) to convey the message to Mr. Puccio. Mr. Stern was Mr. Silverman's personal attorney and it would be fair to infer that he would not have conveyed such a message without Mr. Silverman's permission. Because of this link between Mr. Stern and Mr. Silverman, the evidence is non-hearsay and relevant to show Mr. Silverman's state of mind, namely his bias. See, e.g., United States v. Oguns, 921 F.2d 442, 448 (2d Cir. 1990) (agent's testimony regarding his receipt of anonymous call at defendant's apartment asking "Have the apples arrived there?" was admissible as "non-hearsay circumstantial evidence of [defendant's] knowledge and

intent"); <u>Royal</u>, 972 F.2d at 646 (testimony that defendant's girlfriend tried to convince defense witness to testify that contraband belonged to him and not to defendant was relevant non-hearsay evidence admissible to show bias). Moreover, Mr. Silverman himself made nearly identical statements to Mr. Kaufman, which also supports the inference that Mr. Silverman was the ultimate source of the inducements. If the government wants to call Mr. Stern to deny the conversation or to testify that he was not authorized to offer the inducements, it is free to do so.

The government confuses the issue by arguing that an attorney's statement does not constitute a prior statement of the witness for purposes of Fed. R. Evid. 613(b). <u>See</u> Resp. 3-4. Mr. Forbes is offering the evidence of what Mr. Stern said as evidence of Mr. Silverman's <u>bias</u>. Impeachment for bias is <u>not</u> governed by Rule 613(b). <u>See Abel</u>, 469 U.S. at 467 ("the Rules do not by their terms deal with impeachment for 'bias'"); Fed. R. Evid. 613(b). Even if Rule 613(b) could be contorted to apply to bias evidence, contrary to the government's suggestion, it is not "settled" that a statement of a witness's attorney cannot be used to impeach the witness under Rule 613(b). Resp. at 3-4. The parties have addressed this issue before and Circuit Court authority goes the other way. <u>See Williams v. Union Carbide Corp.</u>, 790 F.2d 552, 555-56 (6th Cir. 1986) ("It is the general rule that statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney . . . . The statements made in the previous lawsuit were proper for impeachment under <u>Federal Rule of Evidence 613</u>." (quotation omitted & emphasis added)). This rule is consistent with the Second Circuit cases holding that a witness may be impeached with a third party statement that the witness has adopted. <u>See, e.g., United States v. Strother</u>, 49 F.3d 869, 875 (2d Cir. 1995) ("[A] third party's characterization of a witness's statement can constitute a prior statement of the witness where the witness has 'subscribed to that characterization.'" (quoting <u>United States v.</u>

<u>Almonte</u>, 956 F.2d 27, 29 (2d Cir. 1992)).  If a statement is attributable to a witness when he

adopts the statement after the fact, a statement should likewise be attributable to the witness

when he authorized the third party to make the statement before the fact.  In either situation, the

witness has adopted the statement as his own.  To the extent that <u>United States v. Cuevas</u>

<u>Pimentel</u>, 815 F. Supp. 81 (D. Conn. 1993), holds that a statement of a third party can never be

attributable to a witness <u>for purposes of Rule 613</u>, it is flatly inconsistent with these cases.  In

any event, <u>Pimentel</u>'s logic turns in large part on the language of Rule 613(b), which in contrast

to Rule 801(d)(2), "makes no provision, express or implied for the attribution of statements of

others to a witness."  <u>Id.</u> at 83.  As set forth above, bias evidence is not governed by Rule 613, so

this textual argument has no application here.

   The evidence is relevant for another non-hearsay purpose.  The fact that the

statements were made by Mr. Stern makes it more probable that Mr. Kaufman was told the same

thing by Mr. Silverman.  <u>See</u> <u>United States v. Pedroza</u>, 750 F.2d 187, 197 n.5 (2d Cir. 1984)

("To the extent that defendants sought to substantiate their contention that they had been told by

Serrano that Carlos had consented, the testimony of Lupe or Luis as to Carlos' statements should

not be viewed as hearsay, since those statements would not be offered for their truth but only

because the simple fact that they were made makes it more probable that defendants were told

the same thing.").

   **7.**  **<u>The proffered testimony raises no privilege issues</u>.**  The government

does not contend that the proffered testimony of Messrs. Kaufman and Puccio would be

privileged.  <u>See</u> Resp. 3-5, 7-10.  It would not be privileged as evidenced by the fact that Messrs.

Kaufman and Puccio <u>already disclosed the information to defense counsel</u>.  The attorney-client

privilege applies only to confidential communications between client and attorney made for the

purpose of seeking legal advice.  See, e.g., United States v. Int'l Bhd. of Teamsters, 119 F.3d

210, 214 (2d Cir. 1997).  The party asserting the privilege bears the burden of establishing all

elements of the privilege, and the privilege is narrowly construed because it limits every man's

right to evidence.  See In re Grand Jury Subpoenas, 318 F.3d 379, 384 (2d Cir. 2003).

   Mr. Kaufman's communications with Mr. Silverman were not privileged because

there was no attorney-client relationship between Messrs. Kaufman and Silverman.  Similarly,

Mr. Puccio's communications with Mr. Stern were not privileged because there was no attorney-

client relationship between Messrs. Puccio and Stern.  If the government (or the defense) were to

call Mr. Stern as a witness, whether Mr. Silverman authorized Mr. Stern to convey the message

to Mr. Puccio is not privileged because it lacked an expectation of confidentiality.  "[I]t is well

established that communications between an attorney and his client, though made privately, are

not privileged if it was understood that the information communicated in the conversation was to

be conveyed to others."  United States v. Tellier, 255 F.2d 441, 447 (2d Cir. 1958).  If a client

intends that the information he provides to counsel will be disclosed to third parties, then his

communications with counsel concerning that information are not protected by the attorney

client privilege.  See id.; United States v. Rosenthal, 142 F.R.D 389, 392 (S.D.N.Y. 1992) ("If a

client communicates material to an attorney with an understanding that it will be communicated

to others, the communication as well as related details will not be considered privileged because

the requisite confidentiality has not existed from the outset."); Mead Data Central, Inc. v. Air

Force, 566 F.2d 242, 253 (D.C. Cir. 1977) ("If the information has been or is later shared with

third parties, the privilege does not apply.").

   In Tellier, for example, the Second Circuit held that attorney-client

communications were not privileged where the client expected his attorney to prepare a letter to

a third party that reflected the substance of the communications. 255 F.2d at 447. The Court

held that communications closely related to the disclosure were not privileged either: the

privilege did not apply to any information communicated between the client and the attorney that

was "closely connected with the information which was intended to be communicated [to a third

party]," id. at 448, and could not be "severed from the entire subject matter" of the contemplated

third-party communication. Id. Moreover, where "information is given and it is agreed that it is

to be transmitted to a third party, then not only the specific information, but the more detailed

circumstances relating to it are subject to disclosure," id., as well.[6]

        Moreover, because Mr. Silverman already answered the question of whether he

authorized his attorney to convey the message, see Tr. (10/16/06) at 1427-28, he has waived any

alleged privilege on that issue. See, e.g., Hawkins v. Stables, 148 F.3d 379, 384 (4th Cir. 1998)

(party waived privilege by testifying that he did not have conversation with his attorney

regarding issue); United States v. Pinho, No. 02-814, 2003 U.S. Dist. LEXIS 12244, at *10-11

(E.D. Pa. 2003) (same). Mr. Silverman, who himself was trained as an attorney, had several

attorneys in the court room when he testified, including Mr. Stern, and none of them objected to

---

[6]     See also United States v. White, 950 F.2d 426, 430 (7th Cir. 1991) (information provided
by client to counsel in connection with preparation of bankruptcy petition not privileged
"because the information is to be disclosed on documents publicly filed with the bankruptcy
court"); United States v. Oloyede, 982 F.2d 133, 141 (4th Cir. 1992) (information communicated
by clients to an attorney with the expectation that it would be used in a citizenship application
filed with the INS was not privileged); Brimley v. Hardee's Food Sys., 1995 U.S. Dist. LEXIS
1471, at *4, *6 (S.D.N.Y. 1995) (communications from client to lawyer not privileged where
lawyer "was acting as a conduit of information from one side to the other"; "the privilege does
not extend to the portion of the client's communication that constitutes the substance of what the
client intends the lawyer to communicate to the third party"); Krishna v. Colgate Palmolive Co.,
1993 U.S. Dist. LEXIS 17935, at *2 (S.D.N.Y. 1993) ("Communications made by a client to an
attorney with the intent that they be communicated in turn to a third party are not privileged.");
United States ex rel. Stone v. Rockwell Int'l Corp., 144 F.R.D. 396, 399 (D. Colo. 1992) ("In
essence, counsel merely acted as a conduit in taking factual material supplied by the client and
relaying that material to the government.").

the question. Asking Mr. Stern whether Mr. Silverman authorized the communication is the flip side of the question that Mr. Silverman already answered.

## CONCLUSION

For the reasons set forth above, Mr. Forbes respectfully requests that the Court permit the introduction of extrinsic evidence of the bias of government witness Henry Silverman.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:    _____

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Reply Memorandum in Support of Motion of Defendant Walter A. Forbes for Permission to Introduce Extrinsic Evidence of Bias (Forbes Third Trial Motion No. 19) to be filed electronically and to be served on October 18, 2006 to the following via e-mail:

Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)


Barry S. Simon