UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AHN) |
| | : | |
| | : | |
| v. | : | October 23, 2006 |
| | : | |
| | : | |
| | : | |
| WALTER A. FORBES | : | |

GOVERNMENT'S RESPONSE ADDRESSING
CERTAIN EVIDENTIARY MATTERS RAISED BY DEFENDANT

The Government writes to address certain evidentiary matters recently raised by defendant Forbes.

1.  **Designations' of Scott Forbes' prior testimony.**

Forbes has proffered designations of substantial portions of Scott Forbes' testimony from the first trial on the grounds that he "is now residing in London, and is 'unavailable' to the defense as that term is defined in" Fed. R. Evid. 804(b). Docket 2527, at 1. Forbes is wrong:  Scott Forbes <u>is</u> available to the defense and, consequently, excerpts from his testimony from the first trial cannot be offered into evidence at this trial.

Section 1783 of Title 28 of the U.S. Code provided Forbes a mechanism for subpoenaing Scott Forbes' live testimony at this trial:

> (a) A court of the United States may order the issuance of a subpoena requiring the appearance as a witness before it, or before a person or body designated by it, of a national or resident of the United States who is in a foreign country, or requiring the production of a specified document or other thing by him, if the court finds that particular testimony or the production of

the document or other thing by him is necessary in the interest of justice, and, in other than a criminal action or proceeding, if the court finds, in addition, that it is not possible to obtain his testimony in admissible form without his personal appearance or to obtain the production of the document or other thing in any other manner.

(b) The subpoena shall designate the time and place for the appearance or for the production of the document or other thing. Service of the subpoena and any order to show cause, rule, judgment, or decree authorized by this section or by section 1784 of this title shall be effected in accordance with the provisions of the Federal Rules of Civil Procedure relating to service of process on a person in a foreign country. The person serving the subpoena shall tender to the person to whom the subpoena is addressed his estimated necessary travel and attendance expenses, the amount of which shall be determined by the court and stated in the order directing the issuance of the subpoena.

28 U.S.C. § 1783.

This statutory provision, the Walsh Act, has been on the books since 1948 and is specifically mentioned in Fed. R. Crim. P. 17(e). Thus, it is hard to believe that defense counsel, given their collective experience in criminal matters, did not know about it. See United States v. Awadallah, 349 F.3d 42, 53 (2d Cir. 2003) (noting that "the Walsh Act . . . confers power upon district courts to issue subpoenas to witnesses outside the United States"), cert. denied, 543 U.S. 1056 (2005).[1] Although Scott Forbes might have qualified as "'unavailable' under Fed. R. Evid. 804(a)(5)" if this Court had denied an application by

---

[1] Cf. In re Tzu Jung, Nos. Misc. 99-0420 (PLF) & Crim. 98-0057 (PLF), 2000 WL 195066, at **1-2 (D.D.C. 2000) (citing 28 U.S.C. § 1783 and listing "Barry S. Simon, Williams & Connolly, Washington, D.C." among counsel of record).

Forbes under the Walsh Act, that did not happen here. <u>United States v. Johnson</u>, 735 F.2d 1200, 1203 (9th Cir. 1984). And when the shoe is on the other foot and a prosecutor fails to make a timely application under the Walsh Act and then tries to introduce in a criminal trial the prior testimony of a U.S. national or resident who is now abroad, courts have not hesitated to exclude the prior testimony. <u>See</u> <u>People v. St. Germain</u>, 187 Cal. Rep. 915, 922 (Cal. Ct. App. 1982) (holding "that failure to attempt to secure the presence of [an overseas witness] through the procedure of" 28 U.S.C. § 1783 "rendered her former testimony inadmissible").

Moreover, "[u]nder Rule 15, courts have authority to order the deposition of a prospective witness by a party seeking to preserve that witness' testimony whenever 'exceptional circumstances' exist," including where a party "has demonstrated that a prospective witness is likely to be unavailable to testify at trial." <u>United States v. Korolkov</u>, 870 F. Supp. 60, 64-64 (S.D.N.Y. 1994) (quoting Fed. R. Crim. P. 15); <u>see</u> <u>United States v. Salim</u>, 855 F.2d 944, 949 (2d Cir. 1988) (Rule 15 "is intended to permit parties to take depositions in certain limited classes of cases pursuant to court order so as to preserve a record of a matter"). Despite having months to do so, however, Forbes never sought even a Rule 15 deposition of Scott Forbes.

That Scott Forbes' counsel in a civil matter declined to accept service of a subpoena for Scott Forbes to testify in this

-3-

criminal case is no excuse for Forbes' failure to take other
measures available to him to secure Scott Forbes' live testimony.
TTTr. 2578.  Defense counsel did not even attempt to serve a
trial subpoena upon Scott Forbes until "after Mr. Silverman's
testimony concluded" last week.  TTTr. 2578.  Given Forbes'
profligacy in serving subpoenas in this case and the many months
he had to secure Scott Forbes' testimony, it is hardly "games-
manship" for the Government to insist that Scott Forbes' testi-
mony, to be heard at all, must be heard live.  TTTr. 2578.

    In any event, Forbes' request is untimely.  This Court could
not have been clearer in directing the parties "that all issues
relating to the trial and trial testimony were to be resolved
before we began the trial."  10/10/06 Tr. at 173.  As this Court
explained in denying Forbes' motion to preclude the Government
from calling Greg Danilow in its case-in-chief, "[t]he defendant
was on notice and has been on notice for a long time, that all
evidentiary issues were to be resolved prior to trial."  TTTr.
586.  Forbes -- who filed or renewed more than 50 pretrial
motions concerning this trial -- had ample time to obtain Scott
Forbes' presence at trial; "[r]aising this issue" well after "the
trial was to commence" should "not be countenanced."  TTTr. 586.[2]

_____

    [2] See United States v. Matta-Ballesteros, 71 F.3d 754, 766
(9th Cir. 1995) ("[t]he district court did not abuse its discre-
tion in denying the untimely motion"), amended by 98 F.3d 1100
(9th Cir. 1996); United States v. Aggarwal, 17 F.3d 737, 742 (5th
Cir. 1994) (affirming "denial of [defendant's] motion on the
basis of unexcused delay" where motion was filed "about a month
                                        (continued...)

Accordingly, because Forbes has failed to demonstrate that Scott Forbes is truly unavailable to him, Forbes' request to place before the jury portions of Scott Forbes' testimony at the first trial should be denied.

**2.  Alleged Government Admissions.**

On Friday, October 20, 2006, Forbes gave notice for the first time that he wishes to proffer as admissions of a party opponent under Fed. R. Evid. 801(d)(2)(D) certain statements made by the Government during the first trial.  Forbes claims that he intends to introduce (a) an excerpt and the signature page from a June 16, 2004 brief that the Government filed during the first trial and (b) former Assistant U.S. Attorney John Carney's proffer concerning Cosmo Corigliano's anticipated testimony on a specific subject.  Forbes' request to introduce this evidence should be denied.

During the first trial, Forbes moved to preclude testimony by Jan Davidson (who testified during this trial) and her hus-band, Robert Davidson (who did not testify at this trial) about Forbes' efforts to prevent the CUC Board of Directors from discussing during an April 9, 1997 Board meeting whether CUC was

---

² (...continued)
after the court's deadline for pretrial motions"); <u>United States</u> <u>v. Wardlow</u>, 951 F.2d 1115, 1116 (9th Cir. 1991) ("district court did not abuse its discretion" by denying as untimely a motion for reconsideration that defendant "filed . . . the day before trial was scheduled to begin," where the "jury was standing by" and "the hearing on the motion to [be reconsidered] had taken place almost two weeks earlier").

misusing merger reserves.  Docket 847.  In the Government's
opposition to that motion, the Government rejected Forbes'
contention that there would be "no evidence of Forbes' and
Shelton's involvement in the deliberate deletion from the Board
meeting minutes of any reference to Forbes' hostile reaction to
Robert Davidson":

> the Government will present evidence that both Forbes
> and his co-defendant Kirk Shelton were, unlike Corigli-
> ano or the other coconspirators, the corporate superi-
> ors of the then General Counsel of CUC, Amy Lipton.  As
> such, only Forbes and Shelton had the power to instruct
> Lipton to remove from the draft minutes any reference
> to Forbes' efforts to prevent a discussion of the mer-
> ger reserves.  The Government will also present direct
> evidence of Shelton's involvement with the deletions.

Docket 851, at 6-7.[3]

Judge Thompson denied Forbes' motion orally and explained
the basis for his ruling in an opinion dated September 22, 2004.
Docket 1197.  But Judge Thompson also precluded the Government
from introducing during Cosmo Corigliano's direct examination GX
454, which was a letter between Robert Tucker and Lipton contain-
ing a draft of the April 9, 1997 Board minutes in which the
reference to the aborted discussion of the merger reserves was
struck out in pencil or pen.  During the extensive colloquy

_____

[3] These statements are hardly "unequivocal representations
by the government" that Cosmo Corigliano did not know whether
Forbes directed Lipton to delete from the minutes the reference
to the merger reserves.  TTTr. 2571.  Nor was this an "unequivo-
cal representation" that there was no direct evidence that Forbes
directed the deletion of these lines from the minutes.

between Judge Thompson and counsel on that issue, FTTr. 7038-7047, former AUSA Carney explained that:

> Mr. Corigliano has a general recollection of being in Ms. Lipton's office after the St. Regis meeting where the subject of the minutes was raised and he doesn't recall specifically if it was Mr. Shelton or Mr. Forbes saying we don't want that type of thing in the minutes.

FTTR. 7042.

Later, after another long colloquy, FTTr. 9609-9617, Judge Thompson precluded the Government from introducing GX 454 or asking Cosmo Corigliano any questions about it during redirect. During that colloquy, AUSA John Carney explained:

> I proffered to the Court what Mr. Corigliano would say and that he had a general recollection of a -- where I was going now, would be a general recollection of a meeting being in Ms. Lipton's office after the St. Regis meeting where the subject of the minutes came up and where Ms. Lipton was asked to remove any reference to the reserves.  And he would testify that it was either Mr. Shelton or Mr. Forbes but he cannot remember clearly which one but it was definitely one of those two.

FTTr. 9609.  Judge Thompson and former AUSA Carney soon revisited the proffer:

> THE COURT:  As I understand it, the proffer is that Mr. Corigliano will testify that he was in a meeting where Ms. Lipton was instructed by one of the defendants to strike that sentence which refers to the merger reserves and the question that Mr. Davidson asked with respect to the merger reserves.
>
> MR. CARNEY:  Yes, Your Honor.

FTTr. 9613.  Judge Thompson, however, barred the Government from questioning Corigliano on redirect on this subject because it was "outside the scope" of cross-examination.  FTTr. 9617.

During the second trial, the Government did not examine Corigliano about the minutes for this Board meeting. Thus, Corigliano's testimony at the third trial is the first time that his testimony has ever been elicited about this subject. On direct, Corigliano testified as follows:

> Q.  Let me take you forward.  Do you recall attending a meeting regarding the minutes for the April 9, 1997 board meeting?
>
> A.  Yes, I do.
>
> Q.  When did that meeting take place?
>
> A.  Sometime after the board meeting.  I can't be specific as to when.  It was in Amy's office when I overheard a conversation between Amy and Walter.
>
> Q.  You say Amy.  Who is Amy?
>
> A.  Amy Lipton was the legal counsel.
>
> Q.  For?
>
> A.  For CUC.
>
> Q.  And let me ask you did you play any role in drafting board minutes?
>
> A.  No, I did not.
>
> Q.  Now, you are at this meeting.  Who is again at the meeting so we're clear?
>
> A.  I was in Amy's office.  Amy was there and Walter Forbes was there.
>
> Q.  And did you review any draft minutes at that meeting?
>
> A.  No, I did not.
>
> Q.  What do you recall the defendant saying at that meeting?
>
> A.  I recall Walter indicating that -- to Amy that, something to the effect we can't have this reserve language in the minutes, got to come out.
>
> Q.  Did the defendant say anything else?
>
> A.  Not that I can remember.

TTTr. 1653-1654.

On cross-examination, defense counsel grilled Corigliano about his recollection of this event:

> Q.  Thank you.  Now, sir, you testified here in trial number 3 about a meeting and the conversation you overheard in Amy's office, am I correct?
>
> A.  I did testify about overhearing a meeting in Amy's office, yes.
>
> Q.  You testified that you overheard Walter Forbes indicating to Amy something to the effect that we can't have this reserve language in the minutes.  That's got to come out.  Is that your testimony here at trial three?
>
> A.  That's what I heard Walter tell Amy, yes.
>
> Q.  You were asked whether he said anything else, and you said I can't remember.  Am I correct?
>
> A.  That's correct.
>
> Q.  So the only thing that you recall pursuant to your testimony is that one statement that you overheard?
>
> A.  That's what was memorable that I remember, yes.

TTTr. 2191.  Defense counsel then tried to impeach Corigliano's recollection with a slew of interview notes neither written nor adopted by Corigliano.  TTTr. 2191-2196.

Under these circumstances, neither the statements in the Government's June 16, 2004 brief nor former AUSA Carney's cursory proffers in the heat of trial should qualify as Government admissions.  Forbes wants to proffer these materials both to impeach Corigliano's credibility and as part of his ceaseless campaign to "impugn[] the integrity of the prosecution's case." United States v. Purdy, 144 F.3d 241, 245 (2d Cir. 1998).  But as the Second Circuit held in Purdy, "[e]xtrinsic evidence offered for impeachment on a collateral issue is properly excluded."  Id.

-9-

at 245-46.  Similarly, "[t]o bind the Government forever to a
preliminary investigative theory" would only "discourage further
investigation and thereby impede the truth-finding process."  Id.
at 246.  At most, the evidence proffered by Forbes shows that, in
2004, former AUSA Carney believed that Corigliano could not
recall whether it was Forbes or Kirk Shelton who ordered Lipton
to delete the reference.  That Corigliano corrected this when he
finally had the chance to testify on this subject should not
"open[] the door to defense proof of the Government's having
previously entertained a" different theory.  Id.

    The criminal cases previously cited by Forbes on a related
issue -- whether the Government's Giglio letters qualified as
party admissions -- are readily distinguishable.  See United
States v. Salerno, 937 F.2d 797, 810-12 (2d Cir. 1991) (AUSA's
opening and summation in earlier, related case), rev'd on other
grounds, 505 U.S. 317 (1992); United States v. GAF Corp., 928
F.2d 1253, 1262 (2d Cir. 1991) ("prior bill of particulars");
United States v. McKeon, 738 F.2d 26, 33 (2d Cir. 1984) (defense
counsel's prior opening statement); United States v. Paloscio,
No. 99 Cr. 1199 (LMM), 2002 WL 1585835, at **1-2 (S.D.N.Y. July
17, 2002) (AUSA's prior representations seeking pretrial deten-
tion).  None of these cases authorizes what Forbes impermissibly
seeks to do here:  impeach a witness with another person's
summary of the witness's prior statements without proving that
the witness has adopted that summary.  See United States v.

-10-

<u>Almonte</u>, 956 F.2d 27, 29 (2d Cir. 1992) (per curiam); <u>cf.</u> <u>Palermo</u>
<u>v. United States</u>, 360 U.S. 343, 350 (1959) (it would be "grossly
unfair to allow the defense to use statements to impeach a
witness which could not fairly be said to be the witness' own
rather than the product of the investigator's selections, inter-
pretations, and interpolations").

Moreover, the Second Circuit has repeatedly recognized "that
serious collateral consequences could result from the unbridled
use of such statements" and "circumscribed the[ir] evidentiary
use." <u>Salerno</u>, 937 F.2d at 811.[4]  Thus, Forbes cannot proffer
either the Government's 2004 brief or former AUSA Carney's 2004
proffer without satisfying three requirements:

> First, "the district court must be satisfied that the
> prior argument involves an assertion of fact inconsis-
> tent with similar assertions in a subsequent trial."
> Second, the court must determine "that the statements
> of counsel were such as to be the equivalent of testi-
> monial statements" made by the client.  Last, the
> district court must determine by a preponderance of the
> evidence that the inference that the proponent of the
> statements wishes to draw "is a fair one and that an
> innocent explanation for the inconsistency does not
> exist."

---

[4] <u>See</u> <u>GAF Corp.</u>, 928 F.2d at 1263-64 (Altimari, J., concur-
ring) ("writ[ing] separately out of concern that the breadth and
scope of Judge Daly's [majority] opinion might lead some to
assume that a bill of particulars is a document that may rou-
tinely be offered and received into evidence" and explaining that
"while we now recognize that bills of particulars are not inad-
missible <u>per</u> <u>se</u>, the district courts must determine whether the
circumstances of a particular case are sufficiently compelling to
necessitate admission"); <u>id.</u> at 1264-65 (Mahoney, J., dissenting)
(disagreeing that trial court erred in excluding bill of particu-
lars; "the government simply revised its theory regarding what it
could establish").

Id. (citations omitted) (quoting McKeon, 738 F.2d at 31).  As already shown, however, Corigliano's testimony does not fundamentally contradict the Government's prior representations, he never adopted those representations, and any inconsistency that does exist can be explained by the fact that former AUSA Carney, unlike the prosecutors in this trial, never had the opportunity to examine Corigliano on this issue under oath.[5]

----

[5] Admission of the signature page of the 2004 Government brief also poses potential for unfair prejudice and juror confusion.  The prosecutors trying Forbes cannot vouch for Government witnesses by placing before the jury the weight of the prosecutors' offices and their integrity and professional reputation. That would be improper.  See, e.g., United States v. Carr, 424 F.3d 213, 227 (2d Cir. 2006) (deeming it "well established that prosecutors may not vouch for their witnesses' truthfulness" and that "a prosecutor is prohibited from express[ing] his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant") (citation and internal quotation marks omitted), cert. denied, 126 S. Ct. 1447 (2006); United States v. Feliciano, 223 F.3d 102, 123 (2d Cir. 2000) ("A prosecutor may not properly vouch for the credibility of a witness.") (internal quotation marks omitted); United States v. Pungitore, 910 F.2d 1084, 1125 (3d Cir. 1990) (improper for prosecutor to "invoke his . . . oath of office as a means of defending the credibility of government witnesses").

Yet Forbes wants to do just that, by demanding that the jury be shown the signature page of the brief:

> If the Court turns to page 6 and page 7, there is a complete paragraph that I believe completely and fairly sets forth the government's position at that time -- and by the way, your Honor, this pleading is signed -- actually, personally signed by five members of the government.  Five prosecutors actually personally signed this pleading.  We are not asking to put the whole pleading in.  We are asking to put this paragraph and the signatures.

TTTr. 2567; see TTTr. 2568 ("[i]t's signed by five prosecutors"); TTTr. 2574 ("these are, again, express unequivocal representations, one signed by five prosecutors"); TTTr. 2580-2581 ("MR. (continued...)

Accordingly, because the brief excerpt and cursory proffer from the first trial, in 2004, are not fairly characterized as Government admissions for purposes of this trial, in 2006, Forbes' request to introduce this evidence should be denied.

### CONCLUSION

For the foregoing reasons, the Government respectfully requests that Forbes be precluded from introducing in this trial the purported Government admissions and portions of Scott Forbes' previous testimony that Forbes has identified.

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
Special Attorney
U.S. Department of Justice


MICHAEL MARTINEZ
Federal Bar Number phv0243
CRAIG CARPENITO
Federal Bar Number phv0244
MARK E. COYNE
Federal Bar Number phv01079
NORMAN GROSS
Federal Bar Number 24933
Special Attorneys
U.S. Department of Justice

Bridgeport, Connecticut
Date:  October 23, 2006

---

[5] (...continued)
SIMON:  With the signatures, just so it's clear that those are the representations of the government and his proffer.") (emphasis added).  No legitimate purpose would be served by admitting the signature page of the brief; it therefore should be excluded even if the excerpt from the body of the brief that Forbes has proffered is otherwise admissible.

-13-

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this day I caused to be served a copy of the Government's Response Addressing Certain Evidentiary Matters Raised by Defendant via email on:

    Barry S. Simon, Esq.
    Williams & Connolly LLP
    725 Twelfth Street, N.W.
    Washington, D.C. 20005-5901
    (202) 434-5005
    bsimon@wc.com



_____
Mark E. Coyne

Dated: October 23, 2006
       Bridgeport, CT