## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 3:02CR264 (AHN) |
| | ) | |
| WALTER A. FORBES | ) | October 23, 2006 |
| | ) | |

## MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT WALTER A. FORBES TO INTRODUCE STATEMENTS OF A PARTY OPPONENT
### (Forbes Third Trial Motion No. 20)

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this memorandum in support of his motion for permission to introduce statements of government counsel under Fed. R. Evid. 801(d)(2).

### ARGUMENT

Statements of a party-opponent are not hearsay. Fed. R. Evid. 801(d)(2). Under this rule, "statements made by an attorney concerning a matter within his employment may be admissible against the party retaining the attorney." United States v. GAF Corporation, 928 F.2d 1253, 1259 (2d Cir. 1991) (quotation omitted). The Second Circuit has focused on three factors when determining whether a statement by counsel should be treated as a statement of a party opponent in a criminal case: (1) the prior statement must involve "an assertion of fact inconsistent with similar assertions in a subsequent trial" (2) the statements must be the "equivalent of testimonial statements" by the client; and (3) the court must determine that the inference the proponent of the statement "seeks to draw from the inconsistency is a fair one and that an innocent explanation for the inconsistency does not exist." United States v. McKeon, 738 F.2d 26, 33 (2d Cir. 1984).

Oral Argument Requested

Applying these factors, the Second Circuit has found numerous statements by counsel to constitute admissions of a party-opponent, including statements made during opening and closing arguments in a related case, <u>United States v. Salerno</u>, 937 F.2d 797, 810-12 (2d Cir. 1991), <u>rev'd on other grounds</u>, 505 U.S. 317 (1992); statements made in pleadings, <u>Andrews v. Metro-North</u>, 882 F.2d 705 (2d Cir. 1989); and statements made in a bill of particulars, <u>GAF Corporation</u>, 928 F.2d at 1260 ("We think that the same considerations of fairness and maintaining the integrity of the truth-seeking function of trials that led this Court to find that opening statements of counsel and prior pleadings constitute admissions also require that a prior inconsistent bill of particulars be considered an admission by the government in an appropriate situation").

Under this analysis, the following statements by government counsel are admissible under Fed. R. Evid. 801(d)(2):

**1.     Excerpt from Government Pleading and Government Proffers Regarding Alleged Alteration of Board Minutes.** In the first trial, both Mr. Forbes and Mr. Shelton were defendants. On June 16, 2004, after the trial had begun and during the timeframe of intense preparation sessions with Cosmo Corigliano, the government submitted a brief signed by five prosecutors essentially proffering that it had <u>no direct evidence</u> that Mr. Forbes was involved in the alleged alteration of the board minutes, but that by virtue of his position he had authority to give directions to General Counsel Amy Lipton regarding the contents of the board minutes, and that there was direct evidence that <u>Kirk Shelton</u> was involved in the alleged deletions. Docket No. 851, at 6-7 (Ex. 1) ("[T]he Government will present evidence that both Forbes and his co-defendant Kirk Shelton were, unlike Corigliano or the other coconspirators, the corporate superiors of then General Counsel of CUC, Amy Lipton. As such, only Forbes and

Shelton had the power to instruct Lipton to remove from the draft minutes any reference to Forbes' efforts to prevent a discussion of the merger reserves. The Government will also present direct evidence of Shelton's involvement with the deletions."). Later in the first trial, during the fifth day of Mr. Corigliano's direct examination, AUSA John Carney, the lead prosecutor who was conducting the examination of Mr. Corigliano, proffered in open court that "Mr. Corigliano has a general recollection of being in Ms. Lipton's office after the St. Regis meeting where the subject of the minutes was raised and he doesn't recall specifically if it was Mr. Shelton or Mr. Forbes saying we don't want that type of thing in the minutes." Tr. (07/12/04) at 7042 (emphasis added). On August 4, 2004, on the seventeenth day of Mr. Corigliano's testimony, AUSA Carney restated the government's proffer that Mr. Corigliano would testify that: "he had a general recollection . . . of a meeting being in Ms. Lipton's office after the St. Regis meeting where the subject of the minutes came up where Ms. Lipton was asked to remove any reference to the reserves. And he would testify that it was either Mr. Shelton or Mr. Forbes but he cannot remember clearly which one but it was definitely one of those two." Tr. (08/04/04) at 9609 (emphasis added); see also id. at 9613 ("THE COURT: As I understand it, the proffer is that Mr. Corigliano will testify that he was in a meeting where Ms. Lipton was instructed by one of the defendants to strike that sentence which refers to the merger reserves and the question that Mr. Davidson asked with respect to merger reserves. MR. CARNEY: Yes, Your Honor.").

In this third trial involving only Mr. Forbes as a defendant, the government's position changed from no direct evidence regarding Mr. Forbes, to either Mr. Shelton or Mr. Forbes (its two trial one positions), to what it elicited from Mr. Corigliano on direct examination: "I recall Walter indicating that – to Amy that something to the effect we can't have this reserve language in the minutes, got to come out." Tr. (10/18/06) at 1654. Furthermore, Mr. Corigliano

volunteered on cross-examination that the words he attributed to Mr. Forbes were "memorable." Tr. (10/19/06) at 1291 ("Q. So the only thing that you recall pursuant to your testimony is that one statement that you overheard? A. That's what was memorable that I remember, yes."). In this latest version of events, Mr. Shelton was not even present at the alleged meeting. See Tr. (10/18/06) at 1653 ("Q. Now you are at this meeting. Who is again at the meeting so we're clear? A. I was in Amy's office. Amy was there and Walter Forbes was there.").

The June 2004 pleading and July and August 2004 in-court proffers are admissible as statements of a party-opponent. See United States v. Yildiz, 355 F.3d 80, 82 (2d Cir. 2004) (per curiam) ("This Court has recognized that the government's attorneys can bind the government with their in-court statements, and filings." (citations omitted)) (relied upon by the government in its September 20, 2006 letter brief).

First, these statements are prior assertions of fact plainly inconsistent with similar assertions in this trial.

Second, "[a]lthough the government is its own client," the pleading and proffer were "presumably prepared from a review of what the evidence will show, and therefore, the government's statements are the functional equivalent of what the testimony will be." GAF Corp., 928 F.2d at 1261 n.3; see also United States v. Paloscio, No. 99 CR. 1199, 2002 WL 1585835, at *2 (S.D.N.Y. July 17, 2002) (finding that the government's on-the-record statements and letter to the Court constituted statements of a party opponent because, inter alia, the statements were "testimonial since they are proffers of evidence, based on the knowledge of investigating agents").[1]

---

[1]    Any suggestion that the pleading and the proffers are inadmissible because they do not represent the government's own personal knowledge is "unavailing" because the pleading and proffers were based, "presumably, from the government's review of the evidence." GAF Corp.,

Third, the inference to be drawn from the inconsistencies is a fair one, that the government's view of the evidence has changed between trials. Under Second Circuit precedent, "[t]he jury is at least entitled to know that the government at one time believed, and stated, that its proof established something different from what it currently claims. Confidence in the justice system cannot be affirmed if any party is free, wholly without explanation, to make a fundamental change in its version of the facts between trials, and then conceal this change from the final trier of the facts." Salerno, 937 F.2d at 812 (quoting GAF Corp., 928 F.2d at 1260).

### 2.    Prior Pleadings Regarding Kevin Kearney's Informal Immunity Agreement.    In the first and second trials, the government filed multiple pleadings representing that Mr. Kearney has been promised by the government that, in exchange for his testimony, he will not be prosecuted for any crimes.

- During the first trial, on June 30, 2004, Mr. Forbes proposed a jury instruction stating that the government promised Mr. Kearney that in exchange for his testimony he would not be prosecuted. Preliminary Proposed Jury Instruction No. 18 [Docket No. 886] (Ex. 2) ("You have heard the testimony of witnesses Kevin Kearney, Steven Speaks, Mary Sattler, and [], who have been promised by the government that, in exchange for their testimony, they will not be prosecuted for any crimes they may have admitted either here in court or in interviews with the government.").

- On October 8, 2004, the government filed its Response to Preliminary Proposed Jury Instructions [Docket No. 1226] (Ex. 3), stating that it "joins in Forbes' request (after removal of the name Mary Sattler) and asks that this instruction be given." Id. at 6.

- On the joint request of the defendants and the government in the first trial, the Court instructed the jury that the government promised Mr. Kearney that in exchange for his testimony he would not be prosecuted. Tr. (11/04/2004) at 16414-15 ("I next want to talk with you about informal immunity of government witnesses. You have heard the testimony of witnesses Kevin Kearney and Steven

---

928 F.2d at 1261; see also McKeon, 738 F.2d at 32 ("Admissions may thus be used even though the statement . . . was not based upon the personal knowledge of the speaker . . . ."). If the pleading and proffers were made "without careful evaluation of the evidence, that goes to the weight to be accorded to the admission not to" their admissibility. GAF Corp., 928 F.2d at 1261.

Speaks who have been promised by the government that in exchange for their testimony they will not be prosecuted for any crimes they may have admitted either here in court or in interviews with the government.").

- During the second trial, on October 25, 2005, <u>the government filed a pleading representing that Mr. Kearney had been promised that in exchange for his testimony he would not be prosecuted</u>. United States' Preliminary Requests to Charge for Retrial No. 59 [Docket No. 1889] (Ex. 4) ("You have heard the testimony of witnesses Kevin Kearney and Steven Speaks, who have been promised by the government that, in exchange for their testimony, they will not be prosecuted for any crimes they may have admitted either here in court or in interviews with the government.").

- On November 15, 2005, the government re-filed its Preliminary Requests to Charge <u>representing again that Mr. Kearney had been promised that in exchange for his testimony he would not be prosecuted</u>. United States' Preliminary Requests to Charge for Retrial No. 59 [Docket No. 1986] (Ex. 5) ("You have heard the testimony of witnesses Kevin Kearney and Steven Speaks, who have been promised by the government that, in exchange for their testimony, they will not be prosecuted for any crimes they may have admitted either here in court or in interviews with the government.").

- On November 15, 2005, Mr. Forbes requested a similar instruction regarding Mr. Kearney. Preliminary Proposed Jury Instruction No. 18 [Docket No. 1988] (Ex. 6).

- On November 21, 2005, the government again agreed that an informal immunity charge was appropriate with respect to Mr. Kearney. United States Response to Preliminary Proposed Jury Instruction No. 18 [Docket No. 1999] (Ex. 7) ("This instruction appears to be substantially similar to the Government's Preliminary Request to Charge for Retrial No. 59. The Government has no objection to either version being given, but Mr. Speaks' name should be omitted if the Government's version is given, because he did not testify during the retrial.").

- The Court gave an informal immunity instruction in the second trial that was virtually identical to the charge in the first trial. The charge identified only one testifying witness who had received informal immunity, Mr. Kearney. Tr. (12/08/05) at 3811-12 ("Next I want to talk with you about informal immunity of a government witness. You heard the testimony of Kevin Kearney, who has been promised by the government that, in exchange for his testimony, he will not be prosecuted for any crimes he may have admitted either here in court or in interviews with the government.").

- On December 13, 2005, the government again represented that Mr. Kearney "has already received the benefit of an informal immunity agreement" and it argued that the Court should not strike its rebuttal argument regarding Mr. Kearney's motivations for testifying because the Court instructed the jury that "a witness

such as Kearney who is testifying pursuant to an informal immunity agreement <u>does</u> have a motivation to testify favorably for the Government that is different from that of an 'ordinary witness.'" Government Opposition to Motion to Strike Improper Rebuttal Argument and for a Curative Instruction, at 6 [Docket No. 2027] (Ex. 8).

In this third trial, the government did an about face, claimed that it had been "mistaken" and that there really was no immunity agreement, formal or informal, with Mr. Kearney. It elicited testimony on direct and re-direct examination that Mr. Kearney had not been promised anything by the government and had not entered into any agreements with the government. Tr. (10/12/06) at 787-788, 846-47.

The prior pleadings are admissible as statements of a party-opponent. First, these statements are prior assertions of fact plainly inconsistent with similar assertions in this trial. Second, the government statements are testimonial. Indeed, the prosecutors from the first trial had first-hand knowledge of the dealings with Mr. Kearney. Third, the inference to be drawn from the inconsistencies is a fair one, that the government has changed its position about whether Mr. Kearney has an informal, non-prosecution agreement. The government's claim of "mistake" does not render the evidence inadmissible. When the government contradicts its prior "version of the historical facts, the jury is entitled to be aware of what the government has previously claimed, and accord whatever weight it deems appropriate to such information." <u>GAF</u>, 928 F.2d at 1262; <u>see also</u> <u>McKeon</u>, 738 F.2d at 32 (stating that the party admission rule is derived from a view of the adversary process "which leaves each party to bear the consequences of its own acts, no matter how unreliable these acts may be as proof").

## CONCLUSION

For the reasons set forth above, Mr. Forbes respectfully requests that the Court permit the introduction into evidence of these statements of the government under Fed. R. Evid. 801(d)(2).

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By: _____

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Memorandum in Support of Motion of Defendant Walter A. Forbes to Introduce Statements of a Party Opponent (Forbes Third Trial Motion No. 20) to be filed electronically and to be served on October 23, 2006 to the following via e-mail:

Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)


Barry S. Simon