```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA       :    No. 3:02CR00264 (AHN)
                               :
                               :
           v.                  :    October 23, 2006
                               :
                               :
                               :
WALTER A. FORBES               :
```

### GOVERNMENT'S RESPONSE ADDRESSING ANOTHER
### EVIDENTIARY MATTER RAISED BY DEFENDANT

The Government writes to address the additional evidentiary matter that defendant Forbes raised in the brief that he emailed at 8:05 a.m. this morning. Forbes claims that he should be entitled to introduce into evidence as admissions of a party opponent under Fed. R. Evid. 801(d)(2)(D) a slew of Government briefs and pleadings in which the Government mistakenly agreed with Forbes' proposed jury instruction in the first trial that Kevin Kearney had benefitted from an informal immunity agreement. Contrary to Forbes' assertions, however, the seven exhibits he attaches to his brief are not fairly characterized as admissions of a party opponent on this issue.

As Kearney's testimony at trial confirms, the presumed factual predicate underlying Forbes' request -- that Kearney was promised by the government that he would not be prosecuted in exchange for his testimony -- did not, in fact, occur. On direct, Kearney unequivocally denied ever being promised that he would not be prosecuted in exchange for his testimony:

> Q. I asked you before if any criminal charges had been filed against you. Have you entered any agreement with the United States preventing them from bringing criminal charges against you?
>
> A. No.
>
> Q. Were you ever promised by the prosecutor in the case that you would not be prosecuted?
>
> A. No.

TTTr. 787-788. Kearney did not waver from his testimony despite defense counsel's rigorous cross-examination:

> Q. Did you receive at some time the good news that you would not be prosecuted?
>
> A. No.
>
> Q. You were simply told you would not be a target of the investigation?
>
> A. Yes.

TTTr. 840.

On redirect, Kearney again confirmed that he had no informal immunity agreement:

> Q. Mr. Kearney, I want to start out where defense counsel started out. The first question is how long you had been cooperating with the government. Just so the record is clear, have you ever pled guilty to a crime?
>
> A. No.
>
> Q. Did you reach any agreement of, cooperation agreement with the government?
>
> A. No.
>
> Q. You are not here in the hopes of receiving anything in return for your testimony?
>
> A. No.
>
> Q. Fact that you testified has no bearing upon your second civil case, did it?
>
> A. No.

> Q. Has no bearing upon the government decision as to whether or not they are going to prosecute you, there's no agreement to that effect, is there?
>
> A. No.
>
> Q. In fact, you are here pursuant to a subpoena here today?
>
> A. Yes.
>
> Q. Did you ask to come and testify?
>
> A. No.

TTTr. 846-847.

In response to a <u>Giglio</u> claim of dubious merit, Kearney was recalled as a witness. Once again, he testified that he had not been promised anything by the Government in exchange for his testimony:

> Q. Was -- why was your license suspended by the Connecticut State Board of Accountancy?
>
> A. As a result of my employment at CUC.
>
> Q. What specifically about your employment at CUC?
>
> A. The accounting irregularities that I was involved in.
>
> Q. Now, was your right to practice as an accountant suspended by any other agencies?
>
> A. Yes.
>
> Q. What other agencies was it suspended by?
>
> A. The SEC.
>
> Q. And that's the Securities and Exchange Commission?
>
> A. Yes.
>
> Q. How long was it suspended by the Securities and Exchange Commission?
>
> A. Five years.
>
> Q. Is that the same amount of time that it was suspended by the Connecticut State Board of Accountancy?
>
> A. Yes.

> Q. Was it your understanding that the information that you provided to the United States in this case had anything in any way, you know, was going to in any way affect those suspensions?
>
> A. No.
>
> Q. Did the United States ever make any promises or agreements that it would on your behalf go to the Connecticut State Board of Accountancy and lobby them to give you a more lenient sentence?
>
> A. No.
>
> Q. You were never promised anything before providing information to the United States?
>
> A. No.
>
> Q. Now, do you know whether or not anyone from the United States Attorney's Office ever spoke with anyone from the Connecticut State Board of Accountancy?
>
> A. No.
>
> Q. When you say no, you know they haven't or you just don't know at all?
>
> A. Not that I'm aware of.
>
> Q. Now, did the United States, just once again, did you have any agreements or receive any promises in consideration for your testimony here?
>
> A. No.

TTTr. 2105-2107.

After recalling Kearney, the Government also called Michael Kozik, formerly the General Counsel of the Connecticut State Board of Accountancy and now Connecticut's Director of Elections. Kozik testified that the Government did not lobby on Kearney's behalf:

> Q. What happened when you spoke to the Assistant U.S. Attorney Carney?
>
> A. We talked about the representations that, the various representations that the accountant's attorney had made to me. The degree of the accountant's involvement in the conspiracy. How his cooperation came about. How cooperative he had been. I think probably

-4-

also how much he had profited from it.  Let's see.  I'm sure there were other details.  Degree of cooperation.  Oh.  How useful he had been to the government, basically that.  There may have been other details.

Q.  Did he confirm to you that that cooperation by Kevin Kearney, the accountant, was voluntary?

A.  Yes.

Q.  You referred to the term cooperate a couple times.  Did the Assistant U.S. Attorney Carney tell you whether or not there was any agreement between Accountant Kevin Kearney and the government dealing with that cooperation?

A.  I was never told about any agreement by the U. S. Attorney or anybody else for that matter.

Q.  Did Assistant U.S. Attorney Carney tell you if any promises were made to Accountant Kevin Kearney for his cooperation?

A.  The U. S. Attorney never told me that there were any promises made to the accountant.

Q.  Did Assistant U.S. Attorney John Carney in any way attempt to influence the Connecticut State Board of Accountancy's investigation into Accountant Kevin Kearney?

A.  Absolutely not.  And I'm pretty sure somewhere in the course of our conversation he said something to the effect that the government was taking no position about what the board should do with the accountant and the board should exercise its own judgment.

Q.  He told you actually he didn't want to comment in any way upon your investigation?

A.  Correct.

TTTr. 2117-2119.[1]

Forbes has also contended that, even though Kearney's counsel has confirmed that Kearney was not promised immunity, prior members of the prosecution team in this case may have

---

[1] Once this testimony concluded, this Court made clear its "hope that" defense counsel would not "pursue any line of questioning with respect to the inquiry this morning.  That was so obvious."  TTTr. 2180.

offered Kearney informal immunity, either by speaking directly to Kearney or to his lawyer. But since September 20, 2006, members of the current prosecution team have spoken to former U.S. Attorney Robert Cleary, and former Assistant U.S. Attorneys Paul Weissman, Mark Winston, John Carney, James McMahon, and Richard Schechter. Each has confirmed that, not only did they not offer Kearney immunity against prosecution in this case at any time, but they also never offered and would not would have offered any witness "informal immunity" by way of an oral representation. Rather, it was the practice of each of those former members of the prosecution team that any immunity offer they had given to a witness would be reduced to writing. The Government therefore proffers that people with personal knowledge have confirmed that Kearney was not promised immunity in exchange for his testimony.

Forbes' reliance on cases which state that a prosecutor's prior in-court statements and filings are admissible as "statements" of the Government are inapposite. A prior statement or written submission by a prosecutor can be admitted into evidence in order to demonstrate that the Government has taken inconsistent positions on a particular factual dispute only if the defendant can establish that the claim of inconsistency "is a fair [inference] and that an innocent explanation for the inconsistency does not exist." United States v. Salerno, 937 F.2d 797, 811 (2d Cir. 1991) (citing United States v. McKeon, 738 F.2d 26, 33 (2d Cir. 1984)), modified on rehearing on other grounds,

952 F.2d 623 (2d Cir. 1991), reversed on other grounds, 505 U.S. 317 (1992).  The basis for admission of such prior statements is that a party should not be able to conceal from the jury "a fundamental change in its version of the facts between trials" if that change is undertaken "wholly without explanation."  United States v. GAF Corp., 928 F.2d 1253, 1260 (2d Cir. 1991).  Exclusion of such prior inconsistent statements would impair "the function of trials as truth-seeking proceedings."  McKeon, 738 F.2d at 31.

    Here, the evidence has established that the "truth" is that Kearney was not promised immunity in exchange for his testimony.  Additionally, the Government has provided an explanation for its change in positions -- its inadvertent failure, during the first two trials, to notice that the Kearney instruction was erroneous as a matter of fact.  Accordingly, this Court should exclude any evidence regarding the Government's change of position, since it is "innocently explained," and since admission of evidence of the change of position will merely permit Forbes to urge the false inference that Kearney was promised immunity when in fact he was not.

    Furthermore, Forbes wants to proffer these materials both to impeach Kearney's credibility.  But as the Second Circuit has held in Purdy, "[e]xtrinsic evidence offered for impeachment on a collateral issue is properly excluded."  United States v. Purdy, 144 F.3d 241, 245-46 (2d Cir. 1998).  The criminal cases cited by

Forbes in his brief are not to the contrary.  None of these cases authorizes what Forbes impermissibly seeks to do here:  impeach a witness with another person's summary of the witness's prior statements without proving that the witness has adopted that summary.  See United States v. Almonte, 956 F.2d 27, 29 (2d Cir. 1992) (per curiam); cf. Palermo v. United States, 360 U.S. 343, 350 (1959) (it would be "grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations").[2]

## CONCLUSION

For the foregoing reasons and those set forth in the Government's prior briefing, the Government respectfully requests that

---

[2] Admission of the signature pages of the seven Government submissions attached to Forbes' brief also poses potential for unfair prejudice and juror confusion.  The prosecutors trying Forbes cannot vouch for Government witnesses by placing before the jury the weight of the prosecutors' offices and their integrity and professional reputation.  That would be improper.  See, e.g., United States v. Carr, 424 F.3d 213, 227 (2d Cir. 2006) (deeming it "well established that prosecutors may not vouch for their witnesses' truthfulness" and that "a prosecutor is prohibited from express[ing] his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant") (citation and internal quotation marks omitted), cert. denied, 126 S. Ct. 1447 (2006); United States v. Feliciano, 223 F.3d 102, 123 (2d Cir. 2000) ("A prosecutor may not properly vouch for the credibility of a witness.") (internal quotation marks omitted); United States v. Pungitore, 910 F.2d 1084, 1125 (3d Cir. 1990) (improper for prosecutor to "invoke his . . . oath of office as a means of defending the credibility of government witnesses").

...

Forbes be precluded from introducing in this trial the purported Government admissions that Forbes has identified.

                                      Respectfully submitted,

                                      CHRISTOPHER J. CHRISTIE  
                                      Special Attorney  
                                      U.S. Department of Justice

                                      MICHAEL MARTINEZ  
                                      Federal Bar Number phv0243  
                                      CRAIG CARPENITO  
                                      Federal Bar Number phv0244  
                                      MARK E. COYNE  
                                      Federal Bar Number phv01079  
                                      NORMAN GROSS  
                                      Federal Bar Number 24933  
                                      Special Attorneys  
                                      U.S. Department of Justice

Bridgeport, Connecticut  
Date:  October 23, 2006

**CERTIFICATE OF SERVICE**

    The undersigned certifies that on this day I caused to be served a copy of the Government's Response Addressing Another Evidentiary Matter Raised by Defendant via email on:

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901
(202) 434-5005
bsimon@wc.com

                                                                Mark E. Coyne

Dated: October 23, 2006
       Bridgeport, CT