UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 3:02CR264 (AHN) |
| v. | ) | |
| | ) | October 25, 2006 |
| WALTER A. FORBES | ) | |

## NOTICE OF WALTER A. FORBES OF PRESERVATION OF OBJECTIONS TO IMPROPER CLOSING ARGUMENT

Walter A. Forbes, through undersigned counsel, respectfully submits this notice of preservation of objections to improper closing argument by the government.  In addition to all of the matters set forth in Mr. Forbes' pretrial motions, motions in limine, objections during trial, and mistrial motions, Mr. Forbes objects to the government making arguments regarding the following matters in closing argument:

1.     that accounting at CUC prior to January 1, 1995 was improper;

2.     that Stuart Bell was an alleged co-conspirator of Mr. Forbes or that Stuart Bell was involved in financial wrongdoing;

3.     that two CFOs (Bell and Corigliano) were involved in financial wrongdoing;

4.     that the truth-telling provisions of Mr. Corigliano's plea agreement buttress his credibility and/or give him an incentive to tell the truth;

5.     that Mr. Corigliano is in compliance with his plea agreement; see Giglio v. United States, 405 U.S. 150 (1972); Miller v. Pate, 386 U.S. 1 (1967); Napue v. Illinois, 360 U.S.

264 (1959); <u>Alcorta v. Texas</u>, 355 U.S. 28 (1957) (per curiam); <u>White v. Ragen</u>, 324 U.S. 760

(1945) (per curiam); <u>Pyle v. Kansas</u>, 317 U.S. 213 (1942); <u>Mooney v. Holohan</u>, 294 U.S. 103

(1935) (per curiam); <u>Su v. Filion</u>, 335 F.3d 119 (2d Cir. 2003); <u>Jenkins v. Artuz</u>, 294 F.3d 284

(2d Cir. 2002); <u>United States v. Vozzella</u>, 124 F.3d 389 (2d Cir. 1997); <u>United States v. Wallach</u>,

935 F.2d 445 (2d Cir. 1991); <u>DuBose v. Lefevre</u>, 619 F.2d 973 (2d Cir. 1980);

      6.   that Mr. Corigliano is a credible or truthful witness; <u>see</u> <u>Giglio v. United</u>

<u>States</u>, 405 U.S. 150 (1972); <u>Miller v. Pate</u>, 386 U.S. 1 (1967); <u>Napue v. Illinois</u>, 360 U.S. 264

(1959); <u>Alcorta v. Texas</u>, 355 U.S. 28 (1957) (per curiam); <u>White v. Ragen</u>, 324 U.S. 760 (1945)

(per curiam); <u>Pyle v. Kansas</u>, 317 U.S. 213 (1942); <u>Mooney v. Holohan</u>, 294 U.S. 103 (1935)

(per curiam); <u>Su v. Filion</u>, 335 F.3d 119 (2d Cir. 2003); <u>Jenkins v. Artuz</u>, 294 F.3d 284 (2d Cir.

2002); <u>United States v. Vozzella</u>, 124 F.3d 389 (2d Cir. 1997); <u>United States v. Wallach</u>, 935

F.2d 445 (2d Cir. 1991); <u>DuBose v. Lefevre</u>, 619 F.2d 973 (2d Cir. 1980);

      7.   that any alleged facts are true based upon Mr. Corigliano's testimony, <u>see,</u>

<u>e.g.</u>, <u>Giglio v. United States</u>, 405 U.S. 150 (1972); <u>Miller v. Pate</u>, 386 U.S. 1 (1967); <u>Napue v.</u>

<u>Illinois</u>, 360 U.S. 264 (1959); <u>Alcorta v. Texas</u>, 355 U.S. 28 (1957) (per curiam); <u>White v.</u>

<u>Ragen</u>, 324 U.S. 760 (1945) (per curiam); <u>Pyle v. Kansas</u>, 317 U.S. 213 (1942); <u>Mooney v.</u>

<u>Holohan</u>, 294 U.S. 103 (1935) (per curiam); <u>Su v. Filion</u>, 335 F.3d 119 (2d Cir. 2003); <u>Jenkins v.</u>

<u>Artuz</u>, 294 F.3d 284 (2d Cir. 2002); <u>United States v. Vozzella</u>, 124 F.3d 389 (2d Cir. 1997);

<u>United States v. Wallach</u>, 935 F.2d 445 (2d Cir. 1991); <u>DuBose v. Lefevre</u>, 619 F.2d 973 (2d Cir.

1980);

8.     that Cendant's stock price dropped or that investors lost money (whether $14 billion or any other amount) after accounting irregularities were announced by Cendant in April 1998;

9.     that any alleged drop in CUC's or Cendant's stock price or shareholder losses are relevant to any issue other than materiality or the biases of shareholders/investors who lost money;

10.     any argument contrasting Mr. Forbes' compensation or stock sales with alleged losses to investors in Cendant stock;

11.     that Mr. Forbes' asset transfers after April 1998 are evidence or proof of consciousness of guilt, or that Mr. Danilow's testimony or any testimony by Mr. Forbes on this subject is evidence or proof of consciousness of guilt;

12.     that Kevin Kearney is a credible or truthful witness, see Giglio v. United States, 405 U.S. 150 (1972); Miller v. Pate, 386 U.S. 1 (1967); Napue v. Illinois, 360 U.S. 264 (1959); Alcorta v. Texas, 355 U.S. 28 (1957) (per curiam); White v. Ragen, 324 U.S. 760 (1945) (per curiam); Pyle v. Kansas, 317 U.S. 213 (1942); Mooney v. Holohan, 294 U.S. 103 (1935) (per curiam); Su v. Filion, 335 F.3d 119 (2d Cir. 2003); Jenkins v. Artuz, 294 F.3d 284 (2d Cir. 2002); United States v. Vozzella, 124 F.3d 389 (2d Cir. 1997); United States v. Wallach, 935 F.2d 445 (2d Cir. 1991); DuBose v. Lefevre, 619 F.2d 973 (2d Cir. 1980);

13.     that any alleged facts are true based upon Mr. Kearney's testimony; see Giglio v. United States, 405 U.S. 150 (1972); Miller v. Pate, 386 U.S. 1 (1967); Napue v. Illinois, 360 U.S. 264 (1959); Alcorta v. Texas, 355 U.S. 28 (1957) (per curiam); White v. Ragen, 324 U.S. 760 (1945) (per curiam); Pyle v. Kansas, 317 U.S. 213 (1942); Mooney v. Holohan, 294

3

U.S. 103 (1935) (per curiam); Su v. Filion, 335 F.3d 119 (2d Cir. 2003); Jenkins v. Artuz, 294 F.3d 284 (2d Cir. 2002); United States v. Vozzella, 124 F.3d 389 (2d Cir. 1997); United States v. Wallach, 935 F.2d 445 (2d Cir. 1991); DuBose v. Lefevre, 619 F.2d 973 (2d Cir. 1980);

14.     that anyone allegedly invoked Mr. Forbes' name in connection with topside adjustments, with respect to when information could be provided to E&Y, or with respect to any improper accounting at CUC; see Giglio v. United States, 405 U.S. 150 (1972); Miller v. Pate, 386 U.S. 1 (1967); Napue v. Illinois, 360 U.S. 264 (1959); Alcorta v. Texas, 355 U.S. 28 (1957) (per curiam); White v. Ragen, 324 U.S. 760 (1945) (per curiam); Pyle v. Kansas, 317 U.S. 213 (1942); Mooney v. Holohan, 294 U.S. 103 (1935) (per curiam); Su v. Filion, 335 F.3d 119 (2d Cir. 2003); Jenkins v. Artuz, 294 F.3d 284 (2d Cir. 2002); United States v. Vozzella, 124 F.3d 389 (2d Cir. 1997); United States v. Wallach, 935 F.2d 445 (2d Cir. 1991); DuBose v. Lefevre, 619 F.2d 973 (2d Cir. 1980);

15.     any argument based on Mr. Heckler's testimony;

16.     Mr. Heckler's quantification of the alleged accounting improprieties at CUC and Cendant;

17.     any argument based on consensus data reports;

18.     that anyone other than Walter Forbes, Kirk Shelton, Cosmo Corigliano, Anne Pember, Casper Sabatino, Steven Speaks, Kevin Kearney, or Mary Sattler was an alleged co-conspirator;

19.     that auditors from Ernst & Young engaged in misconduct or were aware of or acquiesced in improper accounting at CUC or Cendant;

20.     that Mr. Corigliano's written SEC settlement agreement permitted Mr. Corigliano to (i) use funds and assets that were otherwise required to be transferred to the receiver pursuant to the SEC settlement agreement to pay his personal living expenses and property taxes, see DX 1060 ¶¶ 3(vi) & 6; (ii) keep the lot at 36 Watrous Point Road; or (iii) continue to use the retainer fees at his or his wife's counsel's firms;

21.     that Mr. Forbes should have known about the alleged accounting irregularities;

22.     that Mr. Forbes held a position similar to the captain of a ship or any other position of absolute power;

23.     that bug sweeping purportedly took place at CUC in connection with the HFS merger between April 1997 and December 1997, or that Cosmo Corigliano's testimony on this subject should be believed;

24.     that Kevin Kearney is a disinterested witness or that Kevin Kearney has no motive to testify falsely to please the government;

25.     that Mr. Corigliano has testified truthfully in these proceedings;

26.     that there is no indication on GX 617 that the document came from Mr. Corigliano. The government either knows or should know that the document was on Mr. Corigliano's computer hard drive and that it was produced by Cosmo Corigliano through his counsel. The footer on the document shows that it was produced by Mr. Corigliano and identifies him by name;

27.     that Mr. Sabatino has no motive to testify in a manner that pleases the government because he was called as a defense witness and gave certain testimony favorable to

the defense. The government knows that Mr. Sabatino has a plea agreement with the government and that the plea agreement gives him a motive to testify falsely in favor of the government;

28.     that there was a meeting attended by Mr. Walter Forbes, Mr. Shelton, and Mr. Corigliano at CUC's offices between March 9, 1998 and March 31, 1998 in which Mr. Forbes purportedly made incriminating statements;

29.     that Mr. Forbes instructed Amy Lipton to delete language from draft minutes of the April 9, 1997 CUC Board meeting;

30.     that there are no documents that incriminate Mr. Forbes because conspirators don't attach their names and signatures to incriminating documents. Mr. Corigliano's handwriting is on GX 58A, GX 62B, and GX 663. That clearly identifies the documents as documents Mr. Corigliano had in his personal possession. In addition, the government either knows or should know that there are several e-mails and other documents that the government described in the 2004 trial as documents showing the fraud that were sent to and from various alleged co-conspirators, including GX 31, GX 506, GX 519, GX 530, and GX 537. It is simply untrue that there are no documents that show the alleged co-conspirators discussing incriminating matters with one another. What is true is that Mr. Forbes was not copied on any of those documents. It would be improper and misleading for the government to argue that conspirators do not attach their names to incriminating documents when the government knows that this is untrue;

31.     that Mr. Corigliano did not receive any reward from his settlement with the SEC because he paid back more than his unjust enrichment. First, the government either knows or should know from DX 1060 that the SEC did not determine that its claims against Mr.

6

Sabatino were satisfied by $14 million. To the contrary, DX 1060 reflects that the SEC forgave an undetermined amount of interest in its settlement with Mr. Corigliano. That was clearly a benefit to Mr. Corigliano, as was the SEC's decision to allow him to keep assets worth $4 million. Second, the government either knows or should know that the SEC could have imposed a 100% penalty on the amounts it claimed from Mr. Corigliano, as it did with Kevin Kearney. The fact that the SEC did not impose any penalty on Mr. Corigliano, and allowed him to keep $4 million is assets, further establishes that the settlement gave Mr. Corigliano significant benefits;

32.    that E&Y saw red flags in CUC's accounting and nevertheless gave CUC clean opinions year after year. This argument, in addition to the testimony and documentary evidence the government presented on this point, including GX 11,007, would constitute a constructive amendment of the indictment and/or a prejudicial variance;

33.    that any alleged co-conspirator's guilty plea is substantive evidence against Mr. Forbes;

34.    that Anne Pember's compensation and severance should be viewed differently that Laura Hamilton's because Ms. Pember was a lower level employee. Ms. Pember was a senior vice president at CUC;

35.    that Mr. Forbes created CUC's financial statements or SEC filings because he signed management representation letters. The unrefuted evidence in the record is that Mr. Forbes had nothing to do with the preparation of CUC's financial statements or SEC filings;

36.    that Mr. Forbes fought to keep Cosmo Corigliano in the accounting function;

7

37.    that, to believe Mr. Forbes, the jury must disbelieve Mr. Monaco or any other witness.  Cf. United States v. Scanio, 900 F.2d 485, 493 (2d Cir. 1990); United States v. Hestie, 439 F.2d 131, 132 (2d Cir. 1971);

38.    any argument based on Mr. Monaco's testimony concerning a purported September 1997 meeting with Mr. Forbes to which Mr. Monaco did not testify at the 2004 trial. At that trial, Mr. Monaco testified to a virtually identical conversation with Mr. Shelton and never said that he discussed Anne Pember with Mr. Forbes.  That testimony, and the government's reliance on it was improper, and violated Wallach; or

39.    that no quarterly earnings release conference calls were held with analysts before May 1997 because Mr. Forbes and/or Mr. Bell did not want questions to be asked about financial results.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:    _____
Brendan V. Sullivan, Jr. (ct17115)
Barry S. Simon (ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (ct05103)
Thomas J. Murphy (ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Dated: October 25, 2006

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Notice of Walter A. Forbes of Preservation of Objections to Improper Closing Argument to be filed electronically and to be served on October 25, 2006 to the following via e-mail:

Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)
Mark Coyne, Esq. (mark.coyne@usdoj.gov)

Barry S. Simon