# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:02CR264 (AHN) |
| v. | ) | |
| | ) | October 27, 2006 |
| WALTER A. FORBES | ) | |

## WALTER A. FORBES'
## OBJECTIONS TO GOVERNMENT SUMMATION AND REBUTTAL ARGUMENTS AND MEMORANDUM IN SUPPORT OF ORAL MOTION FOR MISTRIAL

Walter A. Forbes, through undersigned counsel, respectfully submits his

objections to the government's closing and rebuttal arguments, in further support of his oral

motion for a mistrial.[1]  In addition to all of the matters set forth in Mr. Forbes' pretrial motions,

motions in limine, objections during trial, mistrial motions, and the Notice of Preservation of

Objections to Improper Closing Argument (Docket No. 2541) (filed 10/25/06), Mr. Forbes

objects to certain arguments made by the government in opening and rebuttal summation and

seeks a mistrial based on those arguments.  Many of the government's improper arguments

compound the Wallach issues raised by Mr. Forbes throughout these proceedings and exacerbate

the prejudicial effect of evidence admitted during trial over Mr. Forbes' objection.

---

[1]    Prior to the commencement of closing arguments, the Court indicated that counsel were
not required to object contemporaneously during arguments and could state their objections
following the conclusion of argument.  At the conclusion of the arguments, defense counsel
moved for a mistrial and began to state objections.  The Court directed that the objections should
be done in a written pleading for the record.  See Tr. 3635-36.

A.    **IMPROPER ARGUMENTS RELATING TO PRE-1995 ACCOUNTING AND STUART BELL.**

1.    Mr. Forbes objects to the government's argument that accounting at CUC prior to January 1, 1995 was fraudulent.  See Tr. 3416-18, 3627; Docket Nos. 2191, 2433-34, 2450.

2.    Mr. Forbes objects to the government's repeated argument that Stuart Bell was involved in financial wrongdoing.  See Tr. 3416-18, 3627; Docket Nos. 2191, 2433-34, 2450.

3.    Mr. Forbes objects to the government's argument that Mr. Forbes purportedly reviewed "cheat sheets" with Mr. Bell.  See Tr. 3416; Docket Nos. 2191, 2433-34, 2450.

4.    Mr. Forbes objects to the government's argument that two CFOs (Bell and Corigliano) were involved in financial wrongdoing.  See Tr. 3416-18, 3627; Docket Nos. 2191, 2433-34, 2450.

Mr. Forbes was unable to call Mr. Bell as a witness to refute these allegations. The prejudicial effect of these arguments was compounded by the absence of a missing witness instruction concerning Mr. Bell.  It was further compounded by defense counsel's inability even to argue to the jury the government's failure to call Mr. Bell based on the ruling that, if such an argument were made by the defense, the "Uncalled Witness Equally Available," instruction from Sand, Modern Federal Jury Instructions -- Criminal, Instruction 6-7, would be given.

**B.    IMPROPER ARGUMENTS CONCERNING THE CREDIBILITY OF GOVERNMENT WITNESSES.**

1.    Mr. Forbes objects to the government's argument that, to believe Mr. Forbes, the jury must believe that Henry Silverman, Michael Monaco, Jan Davidson, and Greg Danilow are lying. See Tr. 3590-91 ("Ladies and gentlemen, for you to believe the defendant's testimony from that stand, you would have to believe not only is Mr. Corigliano lying, but Mr. Silverman is lying, Mr. Monaco is lying, Mrs. Davidson is lying, and Mr. Danilow is lying. Ladies and gentlemen, to believe that all those witnesses went to that witness stand and lied defies reason, it defies common sense, and it is actually proof beyond a reasonable doubt the defendant is guilty."). See also Tr. 3616. Cf. United States v. Scanio, 900 F.2d 485, 493 (2d Cir. 1990); United States v. Hestie, 439 F.2d 131, 132 (2d Cir. 1971). It is well established that prosecutors may not "vouch for their witnesses' truthfulness." United States v. Modica, 663 F.2d 1173, 1179 (2d Cir. 1981); see also United States v. Young, 470 U.S. 1, 18-19 (1985); United States v. Molina-Guevara, 96 F.3d 698, 704 (3d Cir. 1996); United States v. Manning, 23 F.3d 570, 573 (1st Cir. 1994) (collecting cases).

2.    Mr. Forbes objects to the government's reliance on the truth-telling provisions of Mr. Corigliano's plea agreement, as well as the government's argument that the truth-telling provisions of Mr. Corigliano's plea agreement buttress his credibility and/or give him an incentive to tell the truth. See Tr. 3627-28; Docket No. 2190; United States v. Carroll, 26 F.3d 1380, 1387-90 (6th Cir. 1994) .

3.    Mr. Forbes objects to the government's argument that Mr. Corigliano has told the truth since entering into his plea agreement. See Tr. 3627-28; Docket No. 2190. The

3

government either knows or should know that Mr. Corigliano testified falsely about material matters in three trials.

    4.    Mr. Forbes objects to the government's argument that Mr. Corigliano is a credible or truthful witness; see, e.g., Tr. 3468, 3627-28; Docket No. 2190; Giglio v. United States, 405 U.S. 150 (1972); Miller v. Pate, 386 U.S. 1 (1967); Napue v. Illinois, 360 U.S. 264 (1959); Alcorta v. Texas, 355 U.S. 28 (1957) (per curiam); White v. Ragen, 324 U.S. 760 (1945) (per curiam); Pyle v. Kansas, 317 U.S. 213 (1942); Mooney v. Holohan, 294 U.S. 103 (1935) (per curiam); Su v. Filion, 335 F.3d 119 (2d Cir. 2003); Jenkins v. Artuz, 294 F.3d 284 (2d Cir. 2002); United States v. Vozzella, 124 F.3d 389 (2d Cir. 1997); United States v. Wallach, 935 F.2d 445 (2d Cir. 1991); DuBose v. Lefevre, 619 F.2d 973 (2d Cir. 1980).

## C.    IMPROPER ARGUMENTS THAT MR. FORBES LIED AND TESTIFIED FALSELY.

    1.    Mr. Forbes objects to the government's repeated argument that Mr. Forbes lied under oath, is a liar, lied about the advice he received from Mr. Danilow, and lied about other matters in his trial testimony (such as the issue of splitting the audit). See Tr. 3465, 3466, 3467, 3601, 3604, 3634; see also Tr. 3602 ("I don't know how he [Forbes] remembers one [memo] and not the other."); Floyd v. Meachum, 907 F.2d 347, 350 (2d Cir. 1990). Mr. Forbes also objects to the government's repeated injection into closing argument of personal views concerning Mr. Forbes' credibility, particularly in the context of improperly admitted and false evidence presented by the government and the government's repeated argument that Mr. Forbes, from the prosecutors' perspective, essentially admitted guilt because he transferred "millions of dollars of real estate out of his name while knowing that prosecutors like Mr. Martinez or I could

use those assets as an admission of his guilt." Tr. 3464; see also Tr. 3465 (reference to

"prosecutors like Mr. Martinez and I using those asset transfers as an admission of his guilt"; he

"lied" about the legal advice); Tr. 3465-66 (defendant did not say he was advised that "the

prosecutors could use those asset transfers as an admission of guilt"; instead, "the defendant

lied"; "the defendant falsely testified"); Tr. 3467 ("those lies didn't end at the prior proceeding . .

. . [I]n this trial the defendant lied again"; Danilow told him that "prosecutors like Mr. Martinez

and myself could use the asset transfers as an admission of his guilt").

### D.    IMPROPER ARGUMENTS CONCERNING ANNE PEMBER.

1.      Mr. Forbes objects to the government's arguments that Anne Pember's

November 1997 employment contract and/or April 1998 severance agreements were payoffs, that

Mr. Forbes paid Anne Pember off to stay in the fraud, and that he did not "admit" to this these

purported facts. See Tr. 3438, 3628. Those arguments were highly prejudicial and are not

supported by the testimony of any government witness.   It is error for a prosecutor to

mischaracterize evidence in a summation, see United States v. Donato, 99 F.3d 426, 432 (D.C.

Cir. 1997), or to state a personal view about the facts.

2.      Mr. Forbes objects to the government's argument that Ms. Pember's

severance agreement was intended to keep her quiet and not raise red flags. See Tr. 3447. That

argument also was highly prejudicial, is not supported by any record evidence, is a

mischaracterization of the evidence, and constituted the prosecutor's personal view of the facts.

3.      Mr. Forbes objects to the government's argument that Ms. Pember's

employment contract was intended to make her dismissal cost prohibitive and to deter Mr.

Silverman and/or Mr. Monaco from terminating her. See Tr. 3444. There is no evidentiary basis in the record for this argument.

      4.    Mr. Forbes objects to the government's argument that Anne Pember was not a key employee because her position was not well defined. See Tr. 3439-40, 3444. Ms. Pember's testimony on this subject related to her uncertainty about what her position would be after the completion of the merger. There is no evidence that Ms. Pember's job at CUC prior to the merger was undefined or unimportant.

      5.    Mr. Forbes objects to the government's argument that Mr. Monaco wanted Anne Pember out of the accounting function in the summer of 1997 but that she stayed there, month after month after month, because Mr. Forbes fought to keep her. See Tr. 3614. CUC and HFS were separate corporations, with separate SEC and financial reporting requirements, until the close of the merger in 1997. Until the close of the merger, no one from HFS had the authority to fire Ms. Pember or move the consolidation function to HFS headquarters. The argument that Ms. Pember stayed in her job, month after month, in September 1997, October 1997, November 1997, December 1997, and into 1998, despite Mr. Monaco's desire to eliminate her position was misleading because the companies were not merged until December 17, 1997.

      6.    Mr. Forbes objects to the government's argument that Mr. Forbes admitted talking to Anne Pember in London in November 1997 but did not admit that he was trying to pay Anne Pember off to stay in the fraud. See Tr. 3438 ("he doesn't exactly admit either that he was trying to pay Anne Pember off to stay in the fraud."). That argument is not supported by the

record, is an unjustified attack on Mr. Forbes' credibility, and is a mischaracterization of the evidence.

### E.      IMPROPER ARGUMENT CONCERNING GUILTY PLEAS.

1.      Mr. Forbes objects to the government's reliance during argument on Ms. Pember's and Mr. Corigliano's guilty pleas as substantive evidence. See Tr. 3414 "Anne Pember and Cosmo Corigliano, both of whom  pled guilty to participating in this quarter of a billion dollar fraud, explained how CUC falsely increased merger reserves and then used the cushions in those merger reserves to falsely increase CUC's income.").

### F.      IMPROPER ARGUMENTS CONCERNING KEVIN KEARNEY.

1.      Mr. Forbes objects to the government's reliance on Kevin Kearney's testimony in closing argument and its argument that Kevin Kearney is a credible or truthful witness. See, e.g., Tr. 3417-18; Giglio v. United States, 405 U.S. 150 (1972); Miller v. Pate, 386 U.S. 1 (1967); Napue v. Illinois, 360 U.S. 264 (1959); Alcorta v. Texas, 355 U.S. 28 (1957) (per curiam); White v. Ragen, 324 U.S. 760 (1945) (per curiam); Pyle v. Kansas, 317 U.S. 213 (1942); Mooney v. Holohan, 294 U.S. 103 (1935) (per curiam); Su v. Filion, 335 F.3d 119 (2d Cir. 2003); Jenkins v. Artuz, 294 F.3d 284 (2d Cir. 2002); United States v. Vozzella, 124 F.3d 389 (2d Cir. 1997); United States v. Wallach, 935 F.2d 445 (2d Cir. 1991); DuBose v. Lefevre, 619 F.2d 973 (2d Cir. 1980).

2.      Mr. Forbes objects to the government's argument, based on Kevin Kearney's testimony, that "every quarter he was with the corporate department of CUC, the CFO, first it was Stu Bell, then it was Cosmo Corigliano, would tell Kevin Kearney that he needed to

make unsupported topside adjustments to the books and records of CUC because the defendant wanted earnings per share to be a certain number. Plain and simple, Walter gave that order." Tr. 3417. The government either knows, or should know, that Mr. Kearney's testimony concerning these matters was false. See Docket No. 2274; Giglio v. United States, 405 U.S. 150 (1972); Miller v. Pate, 386 U.S. 1 (1967); Napue v. Illinois, 360 U.S. 264 (1959); Alcorta v. Texas, 355 U.S. 28 (1957) (per curiam); White v. Ragen, 324 U.S. 760 (1945) (per curiam); Pyle v. Kansas, 317 U.S. 213 (1942); Mooney v. Holohan, 294 U.S. 103 (1935) (per curiam); Su v. Filion, 335 F.3d 119 (2d Cir. 2003); Jenkins v. Artuz, 294 F.3d 284 (2d Cir. 2002); United States v. Vozzella, 124 F.3d 389 (2d Cir. 1997); United States v. Wallach, 935 F.2d 445 (2d Cir. 1991); DuBose v. Lefevre, 619 F.2d 973 (2d Cir. 1980).

       3.     Mr. Forbes objects to the government's argument that "Kevin Kearney told you that Cosmo Corigliano and Stu Bell said the defendant ordered to adjust the numbers up. What else did Kevin Kearney tell you. He said on at least a few occasions, Cosmo Corigliano said that the defendant wanted the earnings per share to be a certain number so that CUC would meet Wall Street's earnings expectations. Think about that. Did Cosmo Corigliano tell Kevin Kearney, what, ten years ago that the defendant had instructed him to increase earnings because he thought, you know what, I might have to be a witness in a federal case someday and I may have to testify that the defendant instructed me to change these numbers and it would be helpful if now, ten years before I started saying that to people so they could corroborate my testimony someday in court. I mean, does that make sense? Or did Mr. Corigliano say that to Kevin Kearney ten years ago because it actually happened? Think about this. Did Kevin Kearney make up that Stu Bell also gave him the same instructions? Ladies and gentlemen, that just doesn't

make sense." Tr. 3418. The government either knows, or should know, that Mr. Kearney's testimony concerning these matters was false. See Docket No. 2274; Giglio v. United States, 405 U.S. 150 (1972); Miller v. Pate, 386 U.S. 1 (1967); Napue v. Illinois, 360 U.S. 264 (1959); Alcorta v. Texas, 355 U.S. 28 (1957) (per curiam); White v. Ragen, 324 U.S. 760 (1945) (per curiam); Pyle v. Kansas, 317 U.S. 213 (1942); Mooney v. Holohan, 294 U.S. 103 (1935) (per curiam); Su v. Filion, 335 F.3d 119 (2d Cir. 2003); Jenkins v. Artuz, 294 F.3d 284 (2d Cir. 2002); United States v. Vozzella, 124 F.3d 389 (2d Cir. 1997); United States v. Wallach, 935 F.2d 445 (2d Cir. 1991); DuBose v. Lefevre, 619 F.2d 973 (2d Cir. 1980).

     4.    Mr. Forbes objects to the government's misleading argument that Mr. Kearney's testimony corroborates Mr. Corigliano's testimony. Tr. 3417-18. Mr. Corigliano did not testify that either Mr. Bell or Mr. Corigliano ever invoked Walter Forbes' name when giving instructions concerning topside adjustments. Moreover, Mr. Corigliano testified that he rarely interacted with Mr. Kearney.

## G.    IMPROPER ARGUMENTS CONCERNING COSMO CORIGLIANO.

     1.    Mr. Forbes objects to the government's argument that Mr. Corigliano did not receive any benefit from his settlement with the SEC because he paid back more than his unjust enrichment. Tr. 3629-30. First, the government either knows or should know from DX 1060 that the SEC did not determine that its claims against Mr. Corigliano were satisfied by $14 million. To the contrary, DX 1060 reflects that the SEC forgave an undetermined amount of interest in its settlement with Mr. Corigliano. That was clearly a benefit to Mr. Corigliano, as was the SEC's decision to allow him to keep assets worth more than $4 million. Second, the

9

government either knows or should know that the SEC could have imposed a 100% penalty on

the amounts it claimed from Mr. Corigliano, as it did with Kevin Kearney.  The fact that the SEC

did not impose any penalty on Mr. Corigliano, and allowed him to keep $4 million is assets,

further establishes that the settlement gave Mr. Corigliano significant benefits.  This improper

argument, which suggests that Mr. Corigliano complied with his obligation under the plea

agreement to make reasonable efforts to settle with the SEC, also highlights the prejudicial effect

of the preclusion of cross-examination of Mr. Corigliano on the subject of his settlement

negotiations with the SEC and his compliance (or lack of compliance) with his obligations to the

SEC under his plea agreement.  See Docket No. 2273.

      2.      Mr. Forbes objects to the government's argument that Mr. Forbes has not

paid the SEC a dime and has not lived on a budget, despite the SEC laying claim to his assets,

while Mr. Corigliano paid the SEC $14 million and lived on a budget for four years.  See Tr.

3630-31.  It is improper and misleading to compare Mr. Corigliano to Mr. Forbes in this regard.

Mr. Corigliano is an admitted felon who entered a guilty plea in June 2000 and had no defense to

the SEC action filed against him the same day as his plea.

      3.      Mr. Forbes objects to the government's argument that "[o]n April 22,

1996, more than 10 years ago, Mr. Corigliano, he testified, he said that was the date the Ideon

merger reserve was announced, and there was 100 million dollar merger, and I remember

speaking to stock analysts individually.  Okay.  Defendant takes the stand, he goes, no, there's a

conference call.  On the conference call, we did say that merger reserve was 100 million dollars.

What's the important detail?  That CUC announced to the world that the merger reserve was

100 million dollars. Now, whether they spoke to analysts individually or on the conference call,

why is that an important detail from 10 years ago?" Tr. 3606. Mr. Corigliano's false testimony

on this subject was important, because Mr. Corigliano tied the purported fact that he and Mr.

Forbes talked to analysts separately on April 22, 1996 to a purported conversation later in the day

in which Mr. Forbes allegedly reported back on his conversations with analysts and allegedly told

Mr. Corigliano to make the Ideon reserve bigger because the analysts didn't care about the $100

million. This argument was designed to minimize the significance of Mr. Corigliano's materially

false testimony about critical events on the day of the announcement of the Ideon merger.

      4.    Mr. Forbes objects to the government's repeated arguments that alleged

facts are true based upon Mr. Corigliano's testimony. E.g., Tr. 3409-10, 3414, 3416-17, 3419,

3423, 3425, 3427-28, 3430, 3435, 3448, 3453, 3454, 3456, 3460, 3468, 3592, 3594, 3596, 3601,

3602-03. See, e.g., Giglio v. United States, 405 U.S. 150 (1972); Miller v. Pate, 386 U.S. 1

(1967); Napue v. Illinois, 360 U.S. 264 (1959); Alcorta v. Texas, 355 U.S. 28 (1957) (per

curiam); White v. Ragen, 324 U.S. 760 (1945) (per curiam); Pyle v. Kansas, 317 U.S. 213

(1942); Mooney v. Holohan, 294 U.S. 103 (1935) (per curiam); Su v. Filion, 335 F.3d 119 (2d

Cir. 2003); Jenkins v. Artuz, 294 F.3d 284 (2d Cir. 2002); United States v. Vozzella, 124 F.3d

389 (2d Cir. 1997); United States v. Wallach, 935 F.2d 445 (2d Cir. 1991); DuBose v. Lefevre,

619 F.2d 973 (2d Cir. 1980).

### H.    IMPROPER ARGUMENT REGARDING ALLEGED PARSIPPANY CONVERSATION AND MR. MONACO'S TESTIMONY.

      1.    Mr. Forbes objects to the government's reliance on Mr. Monaco's

testimony concerning a purported September 1997 meeting with Mr. Forbes to which Mr.

Monaco did not testify at the 2004 trial.  <u>See</u> Tr. 3434, 3604.  At the 2004 trial, Mr. Monaco

testified to a virtually identical conversation with Mr. Shelton and never said that he discussed

Anne Pember with Mr. Forbes.  Mr. Monaco's trial 3 testimony and the government's reliance on

it was improper, and violated <u>Wallach</u>.

        2.     Mr. Forbes also objects to the government's attempt to explain this

significant change in Mr. Monaco's testimony by suggesting that new prosecutors asked a

specific question that elicited it, that the prior prosecutors never asked such a question, and that

Mr. Monaco always has answered the question the same way.  <u>See</u> Tr. 3604 ("in 2004, Mr.

Monaco was on the witness stand and he was never asked about the Parsippany conversation.

Can you believe it?  He never mentioned it.  You have seen how it works between lawyers and

witnesses.  Witnesses aren't there to tell free-flowing narratives.  They answer questions.  There

was no evidence he was ever asked that question.  He wasn't asked that question until a later trial

with a whole different team of prosecutors, me and Mr. Carpenito.  That's when he was asked.

And every time he's been asked he says, yeah, that conversation happened.  What's so

frightening about that?  How does that undermine Mr. Monaco's credibility?").  The government

made this argument despite the fact that alleged "lobbying" for Anne Pember was a critical

component of the government's case in 2004.  Any competent prosecutor would have asked a

question of Mr. Monaco to elicit that testimony in the 2004 trial if Mr. Monaco had stated at any

time prior to that trial that Mr. Forbes purportedly lobbied for Anne Pember.  Moreover, there is

no evidence in the record that Mr. Monaco was not asked "that question until a later trial," <u>id.</u>, or

that "every time he's been asked he says, yeah, that conversation happened."  Mr. Monaco

testified that he <u>did not recall</u> whether he had been asked questions that would have called for

that information prior to his preparation for the 2005 trial. See Tr. 427-29. The government's reliance on purported information that is not in the record, and its personal vouching for the supposed fact that Mr. Monaco had not been asked that question until the 2005 trial and always answered the question the same way when asked, was improper. See United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991) ("Implying the existence of additional evidence not formally before the jury severely impairs the likelihood of a fair trial.") (citing Berger v. United States, 295 U.S. 78, 88-89 (1935)).

## I. IMPROPER ARGUMENTS CONCERNING ERNST & YOUNG.

1.     Mr. Forbes objects to the government's argument that the Bruce Botti performance evaluation, GX 11,007, "corroborates the defendant and Cosmo Corigliano's belief that Ernst & Young would put up with CUC's shoddy accounting and still give CUC a clean audit letter every year." Tr. 3453. This argument was both misleading and improper. First, there is no evidence that either the Botti memo or its contents were ever disclosed to anyone outside of E&Y, let alone Mr. Forbes. Second, Mr. Corigliano did not testify that he believed that E&Y would put up with shoddy accounting and still give a clean opinion year after year. Third, the Botti evaluation was a single document written in March 1998 and is not evidence that E&Y put up with shoddy accounting year after year. See also Docket No. 2250.

2.     Mr. Forbes objects to the government's arguments that auditors from Ernst & Young engaged in misconduct, were aware of or acquiesced in improper accounting at CUC or Cendant, and saw red flags in CUC's accounting and nevertheless gave CUC clean opinions year after year. E.g., Tr. 3449-53. Mr. Forbes also objects to the government's argument that E&Y

gave a clean opinion for the 1997 10-K "just six days" after the Botti evaluation memo was

completed. Tr. 3452. These arguments constitute a constructive amendment of the indictment

and/or a prejudicial variance. See also Docket Nos. 2249, 2250, 2251.

## J.    IMPROPER ARGUMENTS CONCERNING APRIL 9, 1997 BOARD MINUTES.

1.     Mr. Forbes objects to the government's extensive reliance on Mr.

Corigliano's false testimony concerning the April 9, 1997 CUC Board meeting and Mr. Forbes'

purported instruction to Amy Lipton to delete certain lines from the draft minutes of the April 9,

1997 Board meeting. E.g., Tr. 3423-29, 3619. That argument, which the government made in

both its opening and rebuttal summations, was based solely on the testimony of Mr. Corigliano,

which the government either knows or should know is false based on its own interviews of Mr.

Corigliano. See, e.g., Giglio v. United States, 405 U.S. 150 (1972); Miller v. Pate, 386 U.S. 1

(1967); Napue v. Illinois, 360 U.S. 264 (1959); Alcorta v. Texas, 355 U.S. 28 (1957) (per

curiam); White v. Ragen, 324 U.S. 760 (1945) (per curiam); Pyle v. Kansas, 317 U.S. 213

(1942); Mooney v. Holohan, 294 U.S. 103 (1935) (per curiam); Su v. Filion, 335 F.3d 119 (2d

Cir. 2003); Jenkins v. Artuz, 294 F.3d 284 (2d Cir. 2002); United States v. Vozzella, 124 F.3d

389 (2d Cir. 1997); United States v. Wallach, 935 F.2d 445 (2d Cir. 1991); DuBose v. Lefevre,

619 F.2d 973 (2d Cir. 1980).

2.     The prejudicial effect of the government's improper argument is

compounded by the government's successful effort to preclude the introduction of the

government's admission that in June 2004, its evidence was that Mr. Shelton allegedly directed

Ms. Lipton to change the April 9, 1997 board minutes, and its representation in July 2004 that

14

Mr. Corigliano had only a general recollection that either Mr. Shelton or Mr. Forbes ordered the change.  See Docket No. 2530.

### K.     IMPROPER ARGUMENTS CONCERNING ASSET TRANSFERS.

1.     Mr. Forbes objects to the government's repeated argument, emphasized in both its opening and rebuttal summations, that Mr. Forbes' asset transfers after April 1998 are evidence or proof of consciousness of guilt, and that Mr. Danilow's and Mr. Forbes' testimony on this subject is evidence or proof of consciousness of guilt.  See Tr. 3463-67, 3631-34; Docket No. 2185.  See also Section C, supra.

### L.     RELIANCE ON IMPROPER RULE 701 OPINION TESTIMONY.

1.     Mr. Forbes objects to the government's arguments based on the improper lay opinions of Jan Davidson and Henry Silverman concerning Mr. Forbes' knowledge of financial matters and Ms. Davidson's comparison of Mr. Forbes' financial acumen to that of her husband.  See Tr. 3420-21, 3621-23.  The Second Circuit has determined that "in most instances" lay opinion testimony concerning a party's knowledge "will not meet the requirements of Rule 701."  United States v. Rea, 958 F.2d 1206, 1216 (2d Cir. 1992).

2.     Mr. Forbes objects to the government's reliance on improper lay opinion testimony by Ms. Davidson that her husband was intimidated by Mr. Forbes at the April 9, 1997 CUC Board meeting.  Tr. 3423-24, 3618.

3.     Mr. Forbes objects to the government's reliance in both its principal and rebuttal summation on improper lay opinion testimony it elicited from Casper Sabatino on cross-examination concerning the reasons Mr. Sabatino "blew the whistle" to Mike Monaco and Scott

Forbes rather than Walter Forbes. <u>See</u> Tr. 3413 ("An hour long trip to New Jersey and Mr. Sabatino told you he made, because he feared if he walked two minutes down the street to tell the defendant about the fraud, it would just be squashed and he would have eventually lost his job."); Tr. 3624-26 (repeating argument and quoting Sabatino testimony). Mr. Sabatino's testimony on this point was clearly an improper lay opinion, consisted solely of Mr. Sabatino's personal views and beliefs, and was not admissible as substantive evidence against Mr. Forbes. Yet the government argued Mr. Sabatino's testimony twice as substantive evidence, in a highly prejudicial fashion, close to the beginning of its principal summation and near the conclusion of its rebuttal argument. In addition, the government clearly knew that, to the extent Mr. Sabatino's beliefs could be admissible as substantive evidence, it could <u>not</u> be used as evidence that Mr. Forbes engaged in wrongdoing. Yet that was the clear import of the government's argument.

## M.    IMPROPER ARGUMENTS CONCERNING $14 BILLION STOCK LOSS.

1.    Mr. Forbes objects to the government's repeated argument that shareholders lost $14 billion as a result of the fraud at CUC and Cendant. <u>See</u> Tr. 3413, 3415, 3469, 3615, 3626; Docket No. 2266. That argument was improper because, <u>inter alia</u>, there is no competent evidence in the record that shareholders suffered $14 billion in losses as a result of the fraud.

2.    Mr. Forbes also objects to the government's repeated emphasis on the $14 billion purported investor loss number, Tr. 3413, 3415, 3469, 3615, 3626, and its use of that number as substantive evidence against Mr. Forbes, when the only proper purpose for which that evidence could conceivably be admitted is with respect to materiality. This compounds the

prejudicial effect of the government's improper opening argument on this point and the lack of a curative instruction on this matter immediately after the government's opening argument.

3.    Mr. Forbes objects to the government's discussion of Mr. Forbes' compensation almost immediately after its argument about shareholder losses as an "undisputed fact" in its principal summation. Tr. 3414-15. The argument was improper, highlighted the government's improper use of this evidence throughout the trial, and was designed to incite juror emotion and anger against Mr. Forbes.

**N.    IMPROPER ARGUMENTS CONCERNING MR. FORBES' ALLEGED EFFORTS TO FIGHT FOR COSMO CORIGLIANO.**

1.    Mr. Forbes objects to the government's argument, based on GX 616, that Mr. Forbes fought to keep Mr. Corigliano in the financial area. Tr. 3610-11. The government's reliance on GX 616 for this argument highlights the prejudicial effect of the improper admission of GX 616. See Docket No. 2270.

2.    Mr. Forbes objects to the government's argument, based on Mr. Silverman's testimony, that Mr. Forbes purportedly told Mr. Silverman in February 1998 that Mr. Corigliano should be brought back into the accounting function to help Ms. Pember. See Tr. 3610. The government either knows, or should know, that, Mr. Silverman's testimony is false, because Mr. Corigliano already was working on CUC/CMS's 1997 financials and information for the Cendant 10-K at that time. Indeed, the government knows, from Mr. Scott Forbes' 2004 testimony -- elicited by the government on direct examination – that Mr. Silverman was present at an early February 1998 meeting with Mr. Corigliano at which Mr. Corigliano directly reviewed financial information with Mr. Silverman that was to be publicly reported the next day. The

17

government's improper argument on this point highlights the prejudicial effect of the exclusion of the designated excerpt of Mr. Scott Forbes' 2004 trial testimony.

### O.   IMPROPER ARGUMENT BASED ON PROOF OF INTENT INSTRUCTION.

1.   Mr. Forbes objects to the government's argument that direct proof of knowledge and intent is almost never available, that such proof is rare, and the government's quoting of the Court's instruction on this point. Tr. 3596. That argument highlights the errors in the Court's instruction on that subject, as Mr. Forbes articulated in his objections to the charge and in the charge conference.

### P.   IMPROPER ARGUMENT THAT THE DEFENSE CLAIMS THAT MR. FORBES WAS A PIE IN THE SKY VISIONARY WHO DID NOT KNOW FINANCIAL NUMBERS.

1.   Mr. Forbes objects to the government's rebuttal argument that the defense claims that Mr. Forbes was a "pie in the sky" visionary who did not know the financial numbers. Tr. 3620-21. That argument misrepresented Mr. Forbes' defense and was extremely prejudicial. Mr. Forbes has never asserted that he did not know the financial numbers reported by CUC. His assertion is that he was not aware of improper, fraudulent accounting at CUC, a matter that was concealed from him and many others.

2.   Mr. Forbes objects to the sandbagging effect of the government making this improper argument for the first time in its rebuttal summation, at a time when Mr. Forbes' counsel had no opportunity to respond to it.

**Q.    IMPROPER ARGUMENTS BASED ON MR. HECKLER'S TESTIMONY.**

1.    Mr. Forbes objects to the government's arguments based on Mr. Heckler's testimony. <u>See</u> Tr. 3407, 3414, 3469; Docket No. 2261.

**R.    IMPROPER ARGUMENT BASED ON MR. FORBES' POSITION AT CUC.**

1.    The government argued that the "undisputed evidence" was that Mr. Forbes was the Chairman and CEO of CUC during the "massive fraud." Tr. 3415. It made this argument directly after referencing $14 billion in shareholder losses, suggesting, improperly, that Mr. Forbes' position at CUC is somehow evidence of his guilt. The government's argument also suggested, improperly, that Mr. Forbes should be held responsible for the fraud at CUC because he was the Chairman and CEO of the company when it took place -- a standard far lower than the burden of establishing knowledge and willfulness on the part of Mr. Forbes beyond a reasonable doubt.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:_____
    Brendan V. Sullivan, Jr. (Bar No. ct17115)
    Barry S. Simon  (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

        - and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing Walter A. Forbes' Objections to

Government Summation and Rebuttal Arguments and Memorandum in Support of Oral Motion

for Mistrial to be served on October 27, 2006 to the following via e-mail:

Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)
Mark Coyne, Esq. (mark.coyne@usdoj.gov)

Barry S. Simon