## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | No. 3:02CR264 (AHN) |
| v. | ) | |
| | ) | |
| WALTER A. FORBES | ) | October 27, 2006 |
| | ) | |
| | ) | |

## FINAL OBJECTIONS OF WALTER FORBES TO THE
## COURT'S FINAL JURY INSTRUCTIONS

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## TABLE OF CONTENTS

INTRODUCTION..................................................................................1

OBJECTIONS TO DEFINING THE ALLEGED FRAUD MORE BROADLY
THAN THE INDICTMENT ...............................................................2

OBJECTIONS TO FAILURE TO INSTRUCT ON GENERALLY
ACCEPTED ACCOUNTING PRINCIPLES .......................................6

OBJECTIONS TO FAILURE TO GIVE MISSING WITNESS
INSTRUCTION ..............................................................................11

OBJECTIONS TO REPEATED CHARGE ON PROOF OF INTENT .......15

OBJECTIONS TO INSTRUCTION NO. I(A) (Introduction) .................19

OBJECTIONS TO INSTRUCTION NO. I(D) (Failure to Name a Defendant) .........20

OBJECTIONS TO INSTRUCTION NO. I(J) (Government as a Party) ..................22

OBJECTIONS TO INSTRUCTION NO. I(K) (Possible Punishment) .......................23

OBJECTIONS TO INSTRUCTION NO. II(A) (Overview) .........................................25

OBJECTIONS TO INSTRUCTION NO. II(C)(1) (The Indictment and the
Statute) ..........................................................................................27

OBJECTIONS TO INSTRUCTION NO. II(C)(2) (Elements of Conspiracy) .............29

OBJECTIONS TO INSTRUCTION NO. II(C)(2)(a) (First Element –
Existence of Unlawful Agreement).................................................31

OBJECTIONS TO INSTRUCTION NO. II(C)(2)(b) (Second Element –
Membership in the Conspiracy)......................................................37

OBJECTIONS TO INSTRUCTION NO. II(C)(2)(b)(ii)-(iii) (Knowingly and
Willfully) ........................................................................................40

OBJECTIONS TO INSTRUCTION NO. II(C)(2)(b)(iv) (Requisite Intent) ..............45

OBJECTIONS TO INSTRUCTION NO. II(C)(2)(b)(v) (Good Faith) .........................46

OBJECTIONS TO INSTRUCTION NO. II(C)(2)(c) (Third Element –
Commission of Overt Act) ...............................................................48

OBJECTIONS TO INSTRUCTION NO. II(C)(2)(d) (Fourth Element –
Commission of Overt Act in Furtherance of the Alleged Conspiracy) ............49

OBJECTIONS TO INSTRUCTION NO. II(D)(1) (The Indictment and the
Statute) ..........................................................................................50

OBJECTIONS TO INSTRUCTION NO. II(D)(2) (Elements of False
Statement in SEC Report) .............................................................51

i

OBJECTIONS TO INSTRUCTION NO. II(D)(2)(b) (Second Element – Materiality) .................................................................................52

OBJECTIONS TO INSTRUCTION NO. II(D)(2)(c) (Third Element – Made or Caused to Be Made) .................................................................54

OBJECTIONS TO INSTRUCTION NO. II(D)(2)(d) (Fourth Element – Knowingly, Willfully and With the Intent to Deceive) ...................55

OBJECTIONS TO INSTRUCTION NO. II(E)(1) (The Indictment and the Statutes and Regulation) .....................................................................57

OBJECTIONS TO INSTRUCTION NO. II(E)(2) (Elements of the Securities Fraud) ...............................................................................................58

OBJECTIONS TO INSTRUCTION NO. II(E)(2)(a) (First Element – Fraudulent Act) .................................................................................61

OBJECTIONS TO INSTRUCTION NO. II(E)(2)(b) (Second Element – In Connection With) ....................................................................................68

OBJECTIONS TO INSTRUCTION NO. II(E)(2)(c) (Third Element – Use of a Means or Instrumentality of Interstate Commerce) ......................69

OBJECTIONS TO INSTRUCTION NO. II(E)(2)(d) (Fourth Element – Knowingly, Willfully and with the Intent to Defraud) ...................70

OBJECTIONS TO INSTRUCTION NO. II(F) (Aiding and Abetting) .......................71

OBJECTION TO INSTRUCTION NO. II(H) (Use of Conjunctive in the Indictment) ...............................................................................................75

OBJECTIONS TO INSTRUCTION NO. III (Mr. Forbes' Theory of the Defense) ......................................................................................................76

OBJECTIONS TO INSTRUCTION NO. IV(A) (Evidence in this Case) ....................79

OBJECTIONS TO INSTRUCTION NO. IV(D) (Acts and Declarations of Alleged Co-Conspirators) .................................................................80

OBJECTIONS TO INSTRUCTION NO. IV(I) (Credibility of the Witnesses) ...........81

OBJECTIONS TO INSTRUCTION NO. IV(L) (Uncontradicted Testimony) ...........82

OBJECTIONS TO INSTRUCTION NO. IV(M) (Testimony of Expert Witnesses) ................................................................................................83

OBJECTIONS TO INSTRUCTION NO. IV(O) (Defense Witness Testifying Under Plea Agreement) ....................................................................84

OBJECTIONS TO INSTRUCTION NO. IV(P) (Not Proper to Consider Guilty Plea of Government or Defense Witness) .............................85

OBJECTIONS TO INSTRUCTION NO. IV(Q) (Defendant's Testimony) ................87

OBJECTIONS TO INSTRUCTION NO. V(E) (Exhibits and Testimony; Use
        of the Indictment) .................................................................................... 88
ADDITIONAL OBJECTIONS TO FAILURE TO GIVE CHARGES
        REQUESTED BY MR. FORBES .................................................................. 89

# INTRODUCTION

Mr. Forbes, through undersigned counsel, respectfully submits his final objections to the Court's jury charge.

## OBJECTIONS TO DEFINING THE ALLEGED FRAUD MORE BROADLY THAN THE INDICTMENT

1.    Mr. Forbes objects to the Court's instructions because they define the alleged fraud more broadly than the indictment.  See Court Instructions II(C)(2)(a), II(E)(1), II(E)(2), II(E)(2)(a).  Although there are various types of fraud that can be alleged and proven under the securities fraud statute, only one type of fraud is alleged in Counts 1 and 4 of the indictment—the alleged dissemination of materially false financial information in specific SEC filings, annual reports, and press releases.  However, the Court's instructions and the government's presentation of the case invite the jury to convict Mr. Forbes for other types of alleged fraud that are not charged in this case.  This is an unconstitutional amendment of the indictment and/or a prejudicial variance.  See, e.g., Stirone v. United States, 361 U.S. 212 (1960); United States v. Wozniak, 126 F.3d 105, 109 (2d Cir. 1997) ("A constructive amendment of an indictment is a per se violation of the Grand Jury Clause of the Fifth Amendment that requires reversal even without a showing of prejudice to the defendant." (quotation & brackets omitted)); United States v. Mollica, 849 F.2d 723, 729 (2d Cir. 1988) ("In light of the current broad range of conduct covered by the federal fraud statutes, it is critical that courts vigilantly enforce the Fifth Amendment requirement that a person be tried only on the charges contained in the indictment returned by the grand jury." (quotation omitted)).  The Court's instructions should clearly define the fraud to involve only the alleged dissemination of materially false financial information in specific SEC filings, annual reports, and press releases, and, in instructing the jury on the

2

requirement of unanimity, should identify the particular false statement(s) at issue in each count.

2.     Count 4 of the indictment is predicated solely on alleged false statements. Count 4 does not identify the substance of the alleged fraud, but states that the alleged fraud is set forth in paragraphs 18 through 57 of Count 1. See Indict., Count 4 ¶ 3. Paragraphs 18 through 57 of Count 1 allege that Mr. Forbes was responsible for various purported accounting irregularities that resulted in the alleged fraudulent overstatement of CUC's and Cendant's financial results. Those paragraphs further allege that Mr. Forbes caused these allegedly overstated financial results to be reported to the SEC and to the investing public in periodic filings with the SEC and in press releases. These paragraphs of the indictment identify the following specific SEC filings and press releases, which allegedly contained false statements—(1) a March 19, 1996 CUC press release; (2) an April 25, 1996 CUC Form 10-K; (3) a March 11, 1997 CUC press release; (4) a May 1, 1997 CUC Form 10-K; (5) a December 15, 1997 CUC Form 10-Q; (6) a February 4, 1998 Cendant press release; (7) a March 31, 1998 Cendant Annual Report; and (8) a March 31, 1998 Cendant Form 10-K. Indict., Count 1 ¶¶ 57(a)-(e) & (g)-(i). Thus, the indictment charges only false statements, not some other device, scheme, or artifice to defraud; not omissions; and not some other transaction, practice, or course of business that would operate as a fraud. The government effectively concedes that the substance of the alleged securities fraud consisted of the purported making of materially false statements in the particular SEC filings and

3

press releases identified in the indictment. <u>See</u> United States Opp'n Forbes Mot. Mistrial Due to Constructive Amendment at 33 [Docket No. 1016] (filed Aug. 2, 2004) ("Forbes was entitled to disclosure of the particular public filings or press releases by CUC or Cendant that were materially false or misleading, but not to each and every non-public statement or omission which made those public filings and statements false or misleading. No bill of particulars was needed for that purpose, since the indictment identified in exacting detail the particular public filings and press releases of CUC and Cendant which contain false and misleading information."); <u>see also</u> Gov't Response to Preliminary Proposed Jury Instructions at 27 [Docket No. 1266] (filed Oct. 8, 2004) ("The Government does not oppose a properly worded instruction that, in order to convict a defendant for securities fraud, the jury must unanimously agree on at least one materially false or misleading statement.").

      3.    The Court's instructions on securities fraud nevertheless define the fraud to encompass more than false statements. For example, Instruction No. II(E)(2)(a) instructs the jury on omissions, "device[s]," "scheme[s]," "artifice[s]," and "trick[s]." Moreover, the Court's instructions on count 4 do not identify the alleged false statements at issue, but instead invite the jurors to convict Mr. Forbes for whatever they each deem the fraud to be.

      4.    The government has also invited the jury to convict Mr. Forbes for alleged frauds that are not charged in the indictment. In light of this evidence,

it is critical that the jury be carefully instructed about what fraudulent conduct must actually be proven.  The Court's charge fails to do so.

## OBJECTIONS TO FAILURE TO INSTRUCT ON GENERALLY ACCEPTED ACCOUNTING PRINCIPLES

Mr. Forbes objects to the Court's instructions because they lack any instructions on generally accepted accounting principles ("GAAP") and on the interaction between GAAP and the elements of falsity and intent. See Forbes Instr. Nos. 29, 36, 50, 56, 66, 72.

1.    The government must prove GAAP violations because all of the substantive charges in the indictment are predicated upon GAAP violations. The failure to provide instructions on GAAP constitutes a constructive amendment and/or a prejudicial variance. The indictment alleges that CUC and Cendant failed to comply with GAAP in accounting for merger reserves, membership cancellation reserves, revenue recognition, and other items and that as a result CUC and Cendant fraudulently inflated their financial results by specific amounts. See, e.g., Indict., Count 1 ¶¶ 31-33 (alleging GAAP standards for merger reserves, i.e., that reserve must be based on good faith estimate of one-time merger costs), 35-36 (alleging that Ideon reserve did not comply with standards set forth in paragraphs 31-33, i.e., that it was not based on a good faith estimate of one-time merger costs), 39-40 (alleging that Cendant reserve did not comply with standards set forth in paragraphs 31-33, i.e., that it was not based on a good faith estimate of one-time merger costs), 42-43 (alleging that treatment of merger reserves violated "GAAP" and that as a result CUC and Cendant fraudulently overstated operating income in the specified amounts), 47-48 (alleging that treatment of membership cancellation reserve violated "GAAP" and that as a result CUC and Cendant fraudulently

6

overstated earnings in the specified amounts), 52-53 (alleging that allocation between deferred and immediate revenue recognition programs violated "GAAP" and that as a result CUC and Cendant fraudulently overstated earnings in the specified amounts), 54 (alleging GAAP violations). These allegations are incorporated in each substantive count of the indictment. See Indict., Counts 2-4 ¶ 1. Moreover, these alleged GAAP violations, which purportedly resulted in overstated financial results, are alleged to be the substance of the purported fraud charged in Count 4. See Indict. Count 4 ¶ 1. Having charged that CUC's and Cendant's operating results were overstated because of the alleged GAAP violations, the government cannot now amend the indictment.

       2.    Although United States v. Ebbers, __ F.3d __, No. 05-4059, 2006 WL 2106634 (2d Cir. July 28, 2006), held that it was not necessary to prove a GAAP violation in that case, the indictment there "did not allege that the underlying accounting was improper under GAAP." Id. at *14. In contrast, the present indictment is predicated on alleged violations of GAAP.

       3.    The government must prove that a GAAP violation occurred to establish falsity, which is an essential element of the substantive charges in the indictment. The specific purportedly false statements charged in the indictment consist of financial figures contained in CUC's and Cendant's SEC filings, annual reports, and press releases. See, e.g., United States Opp'n Forbes Mot. Mistrial Due to Constructive Amendment at 33 [Docket No. 1016] (filed Aug. 2, 2004) ("Forbes was entitled to disclosure of the particular public filings or press releases by CUC or

7

Cendant that were materially false or misleading, but not to each and every non-

public statement or omission which made those public filings and statements false

or misleading.  No bill of particulars was needed for that purpose, since the

indictment identified in exacting detail the particular public filings and press

releases of CUC and Cendant which contain false and misleading information.").

The truth or falsity of these figures cannot be determined by comparison to the

objective truth as in a false statement case in which a government contractor is

charged with falsely stating that it paid $500,000 for supplies when, in fact, it paid

$5,000 for the supplies.  Nor can the truth or falsity of these figures be determined

by application of a mathematical formula.  The truth or falsity of these figures is

determined by reference to GAAP.  Indeed, according to the securities laws, GAAP

is the standard by which the accuracy of financial statements filed with the SEC is

measured.  See Regulation S-X, 17 C.F.R. § 210.4-01(a)(1) ("Financial statements

filed with the Commission which are not prepared in accordance with generally

accepted accounting principles will be presumed to be misleading or inaccurate . . . .

").  Because falsity is an element of the substantive offenses, and because falsity

turns on non-compliance with GAAP, the government must establish non-

compliance with GAAP.[1]

---

[1]    The Second Circuit's holding in United States v. Simon, 425 F.2d 796 (2d Cir.
1969), that compliance with GAAP is not a "complete defense" in a securities fraud
case predicated on purportedly false accounting should not control.  First, Simon
predates the revision of Regulation S-X on September 25, 1980, in which the SEC
promulgated the rule adopting GAAP as the standard by which to judge the
accuracy of financial statements.  See 17 C.F.R. § 210.4-01(a)(1).  Second, Simon
predates the establishment of the Financial Accounting Standards Board, and the

4.    Because GAAP is not a mathematical formula, but requires judgments and estimates, the question of falsity involves an interpretive question. When the question of falsity involves an interpretive question, the government must prove beyond a reasonable doubt that the statement was false under any reasonable interpretation.  See, e.g., United States v. Whiteside, 285 F.3d 1345, 1351 (11th Cir. 2002) ("In a case where the truth or falsity of a statement centers on an interpretive question of law, the government bears the burden of proving beyond a reasonable doubt that the defendant's statement is not true under a reasonable interpretation of the law."); United States v. Migliaccio, 34 F.3d 1517, 1525 (10th Cir. 1994) (government must "negate any reasonable interpretations that would make a defendant's statement factually correct where reporting requirements are ambiguous"); United States v. Gahagan, 881 F.2d 1380, 1384 (6th Cir. 1989); United States v. Race, 632 F.2d 1114, 1120 (4th Cir. 1980); United States v. Anderson, 579 F.2d 455, 460 (8th Cir. 1978).

5.    The government must prove that Mr. Forbes knew that the reported financial results violated GAAP to establish knowledge of falsity, which is

---

promulgation of a substantial body of standards for financial accounting to guide the accounting profession.  Third, if there is no established set of rules by which to determine the truth or falsity of accounting, a prosecution based on allegedly false accounting would violate fundamental principles of fair notice.  If not to GAAP, where could an individual who wanted to comply with the law look to guide his behavior?  According to the government's theory, the individual would have nowhere to look, but would have to rely upon prosecutors and juries to determine, long after the fact, what the accounting figures should have been based on whatever standards they deem appropriate.

an essential element of the charges in the indictment.  To satisfy this burden, the government must prove knowledge of a GAAP violation.

      6.    There is also a basis for the requested instruction defining GAAP and the instructions which state that there is not <u>always</u> a right answer under GAAP.  As the Supreme Court has recognized: "[f]ar from a single-source accounting rulebook, GAAP encompasses the conventions, rules, and procedures that define accepted accounting practice at a particular point in time.  GAAP changes and, even at any one point, is <u>often indeterminate</u>.  The determination that a particular accounting principle is generally accepted may be difficult because no single source exists for all principles."  <u>Shalala v. Guernsey Mem'l Hosp.</u>, 514 U.S. 87, 101 (1995) (internal quotation & citation omitted) (emphasis added).

## OBJECTIONS TO FAILURE TO GIVE MISSING WITNESS INSTRUCTION

1.      Mr. Forbes objects to the omission of a missing witness instruction from the Court's instructions. See Forbes Instr. No. 11.1.

2.      Although "a prosecutor's failure to immunize a witness does not, categorically, give rise to an inference that the witness's testimony would be unfavorable to the government," the circumstances may support a missing witness instruction when the witness invokes the Fifth Amendment privilege and the government refuses to immunize the witness. United States v. Myerson, 18 F.3d 153, 159 (2d Cir. 1994). The Second Circuit in Myerson accepted the premise that such a witness is peculiarly within the power of the government to produce, but stated that the "[e]xclusivity or peculiarity of power to produce is only one of two necessary predicates for entitlement to the missing witness instruction." Id. (quotation omitted). In addition, a district court must determine "whether from all the circumstances an inference of unfavorable testimony from an absent witness is a natural and reasonable one." Id. (quotation omitted). If it is, a court should give a missing witness instruction. See id. at 160 (no abuse of discretion to decline missing witness instruction "in the absence of circumstances that indicate the government has failed to immunize an exculpatory witness").[2]

---

[2]      The facts of the present case stand in stark contrast to Myerson, in which the Court declined to give a missing witness instruction and instead gave an uncalled witness instruction. The missing accomplice witness had pleaded guilty and admitted wrongdoing, 18 F.3d at 157; the witness's attorney represented that the witness would not exculpate the defendant, id.; the defendant wanted to call the witness to determine whether he had a deal with the government, id.; the defendant declined an opportunity to examine the witness outside the presence of the jury, id.

3.    The circumstances in the present case strongly support an

inference that Mr. Bell's testimony would be unfavorable to the government.

- Mr. Bell has never admitted wrongdoing.

- Mr. Bell's attorney represented that Mr. Bell would give exculpatory testimony. Mr. Bell would refute the government's two-CFO theory by denying committing any fraud at CUC, contradicting Cosmo Corigliano's testimony, and providing legitimate explanations for the accounting during Mr. Bell's tenure as CFO. See Mem. Supp. Forbes Third Trial Mot. No. 3 [Docket Nos. 2191, 2227], Exs. A-B (Declarations of Simon and Cary).

- In the first two trials, Mr. Forbes subpoenaed Mr. Bell to testify and refute the government's allegations, and Mr. Forbes has filed multiple motions seeking defense witness immunity.

- In the third trial, Mr. Forbes again subpoenaed Mr. Bell to testify, and Mr. Bell was willing to provide exculpatory information in an in camera proffer to the Court, so long as the Court ruled that such a proffer would not constitute a waiver of the privilege. The Court declined to take the proffer.

- The government vigorously opposed Mr. Forbes' motions and refused to immunize Mr. Bell, not because it is investigating him or has any interest in prosecuting him, but because the government does not know what Mr. Bell is going to say, and because the government contends that his testimony would be "self-serving.".[3]

- The government has immunized only those witnesses who, unlike Mr. Bell, admit to participating in a fraud.

---

at 157 & 158 n.6; and the defendant did not request defense witness immunity but conceded that there was no basis for such a request, id. at 158.  Accordingly, the district court had a sufficient basis to believe that the missing witness would inculpate the defendant.  See id. at 160.

[3]    The government's argument that Mr. Bell's testimony would be "self-serving" and "highly suspect" because he "is still facing potential civil liability" and "has never previously provided such an account to the Government," Opp'n to Forbes Trial Mot. No. 44, at 10 [Docket No. 1,252], further underscores that the government expects his testimony to be exculpatory.

See Mem. Supp. Forbes Third Trial Mot. No. 3 [Docket Nos. 2191, 2227]; Reply

Supp. Forbes Third Trial Mot. No. 3 [Docket Nos. 2306, 2329]; Mot. to File

Supplemental Mem. Supp. Forbes Third Trial Mot. No. 3 [Docket Nos. 2431-34].

      4.    Had a missing witness instruction been given, a different

argument could have been made with respect to Messrs. Corigliano and Kearney

and with respect to whether there was an alleged fraud before Mr. Corigliano

became CFO.

      5.    In addition to rejecting a missing witness instruction, the Court

effectively precluded Mr. Forbes from arguing that because of Mr. Bell's absence,

the government's case suffered from a lack of proof. The Court ruled that if such an

argument were made, it would instruct the jury that: "There are several persons

whose names you have heard during the course of the trial but who did not appear

here to testify, and one or more of the attorneys has referred to their absence from

the trial. I instruct you that each party had an equal opportunity or lack of

opportunity to call any of these witnesses. Therefore, you should not draw any

inferences or reach any conclusions as to what they would have testified to had they

been called. Their absence should not affect your judgment in any way. You

should, however, remember my instruction that the law does not impose on a

defendant in a criminal case the burden or duty of calling any witness or producing

any evidence." Such an instruction would have been misleading because Mr. Bell

was not equally available or unavailable to the parties. Mr. Bell was available only

to the government. Based on this ruling, Mr. Forbes refrained from his attack on

the government's failure of proof and restructured his closing argument.  <u>See also</u>

Tr. of Charge Conference (10/26/06).

## OBJECTIONS TO REPEATED CHARGE ON PROOF OF INTENT

Mr. Forbes objects to the Court's instructions regarding proof of intent and to the incorporation of these instructions into each of the instructions on the mental states required for the various offenses, including aiding and abetting. See Instruction Nos. II(C)(2)(b), (II)(D)(2)(d), II(E)(2)(d), II(F).

1.      The instructions on matters of proof and evidence should not be intermingled with instructions defining the elements of the offense. There is a separate charge on direct and circumstantial evidence and on inferences. See Instruction No. IV(A). This language is therefore redundant. At most, the paragraph which begins "The question of whether a person . . . ," should be given. It fully sets forth any legal issue with respect to proof of intent.

2.      This language on matters of proof and evidence is only repeated with respect to the intent elements of each of the charges and thereby dilutes the intent elements, which are the most hotly contested issues in the case. It also renders the intent elements confusing, and it marshals certain types of evidence and instructs the jury that it should consider them as more important than other types of evidence, thereby effectively invading the province of the jury. Indeed, in the conspiracy count the incorrect and misleading instructions concerning the general unavailability of direct proof of intent actually precede the instructions concerning what the intent elements are and what the government must prove beyond a reasonable doubt.

15

3.    The language concerning the availability of direct evidence of knowledge and fraudulent intent is an incorrect statement of the law, is inconsistent with the government's case, is inconsistent with the reality of the proof offered in most government fraud prosecutions, and puts the imprimatur of the Court behind the government's proof (or lack thereof).  Direct proof of knowledge and fraudulent intent is often (indeed, almost always) available, particularly in the new electronic age with e-mail, computerized files and databases, and tape recordings.  While this statement may have been accurate decades ago, it is not true today.  Moreover, the government has put on the testimony of Cosmo Corigliano, which Mr. Forbes contends is false, purporting to provide direct proof of knowledge and fraudulent intent.  This instruction is essentially a statement by the Court that this is a rare case, and that the government's case is particularly convincing because it has "direct proof of knowledge and fraudulent intent."

4.    Mr. Forbes objects to incorporating the proof of intent instruction into the instructions on the required mental states for each of the charged offenses.  The government previously agreed that the charge could be given once and need not be repeated or incorporated by reference each time instructions on mental states are given.  See, e.g., Tr. (10/15/04) at 14728, 14745.

5.    An instruction that "[d]irect proof of knowledge and intent is almost never available" is incorrect and impermissibly dilutes the government's burden of proof beyond a reasonable doubt and the presumption of innocence.  The Court's jury instructions should not provide excuses for the government's lack of

16

evidence, including its complete lack of documentary evidence, but neutrally should explain matters of proof in the general charge on direct and circumstantial evidence.

> The presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law. To implement the presumption, courts must be alert to factors that may undermine the fairness of the fact-finding process. In the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established beyond a reasonable doubt.

United States v. Gaines, 457 F.3d 238, 245 (2d Cir. 2006) (quotations omitted). Like the instruction in Gaines that impermissibly singled out the defendant's credibility for special treatment, the repeated instruction on proof of intent impermissibly dilutes the government's burden of proof and the defendant's presumption of innocence by isolating the most hotly contested issue in the case. See Docket No. 2374, at 2 (government argument that "this case turns largely on a single issue: whether Forbes knew about and participated in the fraud"). Furthermore, the instruction puts the imprimatur of the Court behind the government's total lack of documentary evidence as well as the scant "proof" that it has presented. Mr. Corigliano's testimony, though false, constitutes direct evidence of knowledge and intent. In this context, the proposed instruction suggests that this is a rare case in which direct evidence exists, and that the government's case is, therefore, particularly convincing.

6.    This improper instruction was particularly prejudicial because the government highlighted it by arguing it in rebuttal summation.

17

18

## OBJECTIONS TO INSTRUCTION NO. I(A)
(Introduction)

      1.    Mr. Forbes objects to the submission of the indictment to the jury because it addresses many evidentiary matters and includes numerous unnecessary allegations. The relevant portions defining the alleged offenses should be integrated into the Court's instructions, as described in the pattern jury instructions in O'Malley. Moreover, the language of the indictment is unconstitutionally vague. There is a serious danger that the jury will convict Mr. Forbes on facts or theories not found by the grand jury. See, e.g., Russell v. United States, 369 U.S. 749 (1962).

      2.    Mr. Forbes objects to the use of the phrase "the defendant's" rather than the phrase "Mr. Forbes'" in the line stating "third, I will explain the defendant's position."

19

## OBJECTIONS TO INSTRUCTION NO. I(D)
(Failure to Name a Defendant)

1.    Mr. Forbes objects to this instruction because the fact that certain persons are not alleged to have engaged in wrongdoing <u>is</u> relevant, and <u>should</u> play a part in the jury's deliberations.  For example, it is appropriate to make comparisons between Mr. Forbes and Mike Monaco and Henry Silverman, who had knowledge similar to (or greater than) that of Mr. Forbes, and who signed the same 10-K at issue in Count 3,  but who are not alleged to have done anything wrong.  <u>See</u> Tr. (11/01/04) at 16048-49 ("THE COURT:  I agree with Mr. Puccio.  I believe the thrust of his argument was that they did this, they did this, they did this, compare that to what Mr. Forbes did.  They didn't do anything wrong, so therefore the inference is Mr. Forbes didn't do anything wrong either.").

2.    Mr. Forbes objects to this instruction because it suggests that the jury may not consider in any way charging decisions concerning witnesses who entered into a plea agreement.  This is an incorrect statement of the law.  Evidence of favorable treatment received by the cooperating witnesses from the government is relevant to the credibility of those witnesses.  <u>See, e.g.</u>, <u>United States v. Prawl</u>, 168 F.3d 622, 628 (2d Cir. 1999) (defendant entitled to instruction that identifies circumstances that make cooperating government witnesses particularly vulnerable to government's power and influence); <u>United States v. Blackwood</u>, 456 F.2d 526, 530 (2d Cir. 1972) ("The rule is that in attempting to establish the motives or bias of a witness against him, a defendant may . . . elicit evidence showing that the government made explicit promises of leniency in return for cooperation." (quotation

20

& brackets omitted)). The second paragraph of the instruction does not adequately address the problem, which goes beyond the question of a government promise not to charge a witness with a crime.

      3.    Mr. Forbes further objects to this instruction because it is unclear what "certain" persons this charge is referring to. If it is Pember, Corigliano, Sabatino, or Kearney, the government's charging decision and related promises are clearly relevant and some of those persons are addressed separately in the Court's instructions. If it is Sattler, Shelton, and/or Bell, there is no evidence either way in the record, and the instruction invites improper speculation by the jury. If it is anyone else (for example, Messrs. Silverman or Monaco), it improperly suggests that there could be a basis for charging them, and/or that it is improper to compare their knowledge and actions with the knowledge and actions of Mr. Forbes, contrary to paragraph 1 above. In short, the instruction is confusing, misleading, and undermines proper arguments that defense counsel should be able to make.

21