# EXHIBIT 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - x
                                :
UNITED STATES OF AMERICA        :No. 3:02CR264(AWT)
                                :
        vs.                     :
                                :
E. KIRK SHELTON,                :
                                :HARTFORD, CONNECTICUT
            Defendant           :JULY 26, 2005
                                :
- - - - - - - - - - - - - - - x

SENTENCING HEARING

VOLUME IV

BEFORE:

        HON. ALVIN W. THOMPSON, U.S.D.J.

                    Corinna Thompson, RPR
                    Diana Huntington, RDR-CRR
                    Official Court Reporters

Vol. IV - Page 479

1    APPEARANCES:

2

        FOR THE GOVERNMENT:

3

            U.S. DEPARTMENT OF JUSTICE
4                970 Broad Street, Suite 700
                Newark, New Jersey 07101
5           BY:  JAMES McMAHON,   SPECIAL ATTORNEY
                RICHARD J. SCHECHTER, SPECIAL ATTORNEY
6

7

        FOR THE DEFENDANT, E. KIRK SHELTON:

8

            THOMAS P. PUCCIO, ESQ.
9                230 Park Avenue
                Suite 301
10               New York, New York   10169

11          SANTOS & SEELEY
                51 Russ Street
12              Hartford, Connecticut   06106
            BY:  HOPE C. SEELEY, ESQ.

13

            DAY, BERRY & HOWARD
14               CityPlace I
                Hartford, Connecticut  06103
15          BY:  GARY COLLINS, ESQ.

16

            MILBANK, TWEED, HADLEY & McCLOY
17               One Chase Manhattan Plaza
                New York, New York   10005
18          BY:  THOMAS ARENA, ESQ.
                SCOTT EDELMAN, ESQ.

19

20

21

22

23

24

25

Vol. IV - Page 560

14:05:04    1           Furthermore, although I know what the jury has
            2    said, I also know that he is simply not capable of the
            3    things that he's been charged with.  You and I have both
            4    heard the man the prosecution claims he is.  You've also
            5    heard the man my family, friends and simply people whose
            6    lives have been touched claims it is.  Who are we to
            7    believe?  I choose the people who are willing to come here
            8    at their own expense in hopes that their mere testimony
            9    will turn this man back to the family and community that
            10   needs him.
14:05:36    11          Your Honor, I thank you for the time to be able
            12   to speak on my father's behalf.
14:05:43    13          Before I leave, I just want to have one more
            14   moment to speak to my father.
14:05:52    15          When I leave here today I'm going to leave a
            16   person whose values have been built by the two of you.
            17   I'm astounded at your ability to grace the family and keep
            18   us to together through all of this.  I love all of you so
            19   much and I will carry what you've taught me with me to the
            20   day I die.
14:06:26    21          Thank you.
14:06:27    22          THE COURT:  Thank you, sir.
14:06:32    23          MR. PUCCIO:  We call Amy Shelton.
14:06:54    24          MRS. SHELTON:  I just need one second.
14:06:56    25          THE COURT:  Take your time, ma'am.

Vol. IV - Page 569

the mornings before we left for Hartford and be home in

the evenings to be able to share dinner with them and do

homework with them.

14:21:44          Providing stability and continuity in their

lives has been our top priority.

14:21:54          Excuse me.

14:22:08          From the moment the accounting irregularities at

CUC were disclosed in April of 1998, Kirk's course of

action has been clear and consistent.  He never once

wavered from being totally stunned by the allegations.  He

never once wavered from being outraged that those he

trusted had violated his trust.  And he never once wavered

from his assertion of his innocence.  Kirk cooperated

fully with the audit investigation, answered all the

questions, turned over all of his documents and his

computer and met with the U.S. Attorney's Office when they

requested it.  He disclosed as much information as

possible as early as possible.

14:23:00          I can't tell you the number of times over the

last seven years the U.S. Attorney's office has come to

Kirk offering him a deal if he would provide information

on their case against Walter Forbes.  The government not

only wanted for Kirk to accept blame for participation and

direction of a crime he did not commit, but insisted that

any deal was contingent upon providing information against

Vol. IV - Page 570

1    Walter Forbes.  He could not do it because he knew he was

2    innocent and he believed he would be exonerated.

14:23:45    3        We believed in the justice system, Your Honor.

4    Kirk refused their offers because he could not lie and

5    knowingly destroy another person's life.  He didn't do

6    this out of any misplaced sense of loyalty to Walter

7    Forbes.  He didn't do this because he felt he was smart

8    enough to beat the system.  He refused to lie because he

9    would not betray his deep seated sense of loyalty to his

10   values, the very core of his being.  Destroying another

11   person's life, particularly to benefit himself, was out of

12   the question.

14:24:29   13        He knew what the prosecutors wanted.  He knew

14   that if he cooperated he could spare his family from this

15   terrible trauma.  But at what expense?  Kirk is not a

16   gambler, Your Honor, so why would he gamble his future and

17   his family's well-being and put all that in jeopardy?  As

18   the prosecutors have brought up on numerous times, this is

19   an intelligent, Ivy League educated individual.

14:25:01   20        It would have been so easy had he cooperated

21   when he was offered those deals.  I would not be standing

22   before you here today, but Kirk could not and would not do

23   that.  Trust me, Your Honor, if my husband had any

24   information that would have assisted the government in

25   their case against Walter Forbes, he certainly would have

Vol. IV - Page 571

1    provided it.  We wouldn't be standing here today.

14:25:28    2        Kirk would never jeopardize his family and all

3    that is dear and sacred to him if there was any other

4    option available to him.

14:25:38    5        Your Honor, I sat through this trial in that

6    seat where my son is sitting day after day, month after

7    month hanging on to every single word that was spoken

8    here.  I have sat here as the prosecution has twisted and

9    turned around Kirk's words and actions, every good deed he

10   has ever done and any accomplishment he has ever made.  I

11   have seen how the words that people have spoken from their

12   hearts about him have been turned and used as a weapon

13   against him.

14:26:17    14       Mr. Schechter calls this good lawyering.  I am

15   appalled and can only imagine how those good people, our

16   friends and family, Kirk's colleagues, felt.  They all

17   believed they were doing something truly meaningful for

18   Kirk.  Instead they are left to wonder if their words

19   could have possibly caused Kirk any harm.

14:26:42    20       Your Honor, I was traumatized by the events of

21   last week.  I see senseless violence occurring all around

22   us, the terrorism, the child abuse, the lack of concern

23   for humanity, and I am sickened by it.  I cannot see how

24   anything about my husband is consistent with these

25   violent, senseless crimes, and yet here he is being

# EXHIBIT 2

ATT2388887.txt
Cendant Juror Ken Premo Comments on Walter Forbes Fraud Retrial
2006-02-15 11:08 (New York)

By Jane Mills and David Voreacos
    Feb. 15 (Bloomberg) -- Ken Premo was one of 11 jurors at the
fraud retrial of former Cendant Corp. Chairman Walter Forbes,
which ended in a mistrial on Feb. 9 after 27 days of
deliberations in Hartford, Connecticut. Another jury deadlocked
13 months ago after 33 days of deliberations.
    Premo, 33, spoke to Bloomberg News about the trial of
Forbes, the former chief executive officer of CUC International
Inc. CUC merged in 1997 with HFS Inc. to form Cendant, the
largest U.S. travel and real-estate services company.
    Prosecutors accused Forbes, 63, of inflating CUC profits by
$252 million in the largest accounting fraud of the 1990s.
    Forbes testified at both trials and denied wrongdoing,
blaming the fraud on subordinates. During a telephone conference
yesterday, prosecutors told U.S. District Judge Alvin Thompson
they are preparing to try the case a third time.
    Premo, the jury foreman, is an electrician.

Did you think Forbes was guilty?
    ``My vote would have been to convict him. There was no
reasonable doubt in my mind. There wasn't one piece of evidence,
it was all the evidence put together.''

Do you think prosecutors should try Forbes for a third time?
    ``I do, because I think he is guilty, and I would like to
see justice prevail. I understand that the way our judicial
system is set up, it may not be perfect. I have no problem with
the verdict.''

What did you think of Forbes's defense that he was ignorant of
the fraud?
    ``I think a CEO who is dealing with Wall Street would know
the numbers, and he said he didn't. He said he didn't know the
numbers really well, but a CEO who brought the company up from
nothing would be more involved. I believe he would know the
numbers. The CEO would want to know what was going on.''

Former CUC Chief Financial Officer Cosmo Corigliano pleaded
guilty and testified for prosecutors that he discussed the fraud
with Forbes. He also said he hid the fraud from CUC's auditors at
Ernst & Young LLP. Forbes testified that he relied on the
auditors at Ernst & Young. Did you believe Corigliano?
    ``I happen to put some credibility into what Mr. Corigliano
said. I didn't believe it was all lies.
    ``To me, former Cendant CFO Michael Monaco was a credible
witness. Someone to corroborate him would have helped. Anyone
that really backed up Mr. Corigliano really would have helped. He
had credibility problems. He could have been on the stand telling
the truth, but there was always a doubt in my mind. I could not
go on his testimony alone. I would have a reasonable doubt. I
think it would have benefited the government to call more
witnesses to corroborate what Mr. Corigliano and other witnesses
said.
    ``The government could have gone a long way in calling other
witnesses. For the most part it was `He said' and `He said,'
Cosmo and Walter.
    ``If Walter had concerns about how the CFO handled Wall
Street, if you had concern about his lack of experience, then you
take more of that responsibility until he got more comfortable
                            Page 1

ATT2388887.txt
with it. Cosmo was lacking something and yet he still recommended
him for the job and I think there was a reason for that.''

Forbes testified that he wasn't involved in daily operations at
CUC and didn't understand all the accounting details. Did you
believe him?
       ``I was impressed by his background, where he started out
and took the company before the fraud. You don't build a company
like that by being stupid. His vision of the Internet and
shopping from home was very cutting edge at the time. I know he
is a smart, smart guy. I was a little bothered by the way he
answered questions. Sometimes a `yes' or `no' would suffice. It
always went a little bit further. It almost seemed too rehearsed.
I am sure they are rehearsed, but he seemed like a robot.''

Former Bear Stearns analyst Steven Kernkraut said that he
regularly discussed details of CUC's finances with Forbes. Did
you believe him?
       Forbes defense attorney Brendan ``Sullivan really
discredited him and made him look like he was confused. I had to
discredit a lot of what he said. I had to say he was confused
with dates and had a lot of facts wrong.''

Prosecutors said that Forbes helped cover up the fraud after the
merger by arranging a bonus and severance package for Anne
Pember, a former CUC controller. She pleaded guilty and testified
against Forbes. What did you think of the bonus and severance
package?
       ``The circumstantial evidence after a while just can't be
coincidental for me. You know he is signing a severance agreement
for an employee who is a key cog in the fraud.''

Jurors did not hear from former CUC President E. Kirk Shelton,
who was convicted at the first trial and sentenced to 10 years in
prison, or from Stuart Bell, a former CUC finance chief who was
never charged. Did that affect your view of the case?
       ``Where was Kirk Shelton? Where was Stu Bell? I had no clue.
Really, that's what made the deliberations so tough. It was just
so hard to believe that Kirk wasn't going to testify.
       ``When the government rested, I was shocked. If you kept a
tally of all the names mentioned, it had to total 50 or 60. You
expected to see maybe a dozen of them.''

Why did the deliberations take 27 days?
       ``A lot of it was up to us to put the puzzle together. As
someone who was involved every day for four months, I would
really like to know the truth. I would like to know everything
that happened. It seems like a puzzle that isn't quite finished
in my mind.
       ``We were handed a sheet of paper with a bunch of dots
scattered all over. The government had to assign the dots
numbers, and we had to connect the dots. What the government
wanted us to see was a Ford pickup truck. Some of us saw that it
was a Ford pickup truck, but others thought it could be a Chevy.
       ``There really is no paper trail, so you go by his actions,
or his lack of actions. Unfortunately, I don't think we got the
truth. I don't think we will know. Only Mr. Forbes knows.
       ``I forgot so much of Mr. Forbes's testimony up to the
rereading of it.''

Prosecutors said that Forbes lied about advice that his former
attorney Gregory Danilow gave him on transferring properties in
Connecticut, Florida and Colorado to his wife after the fraud
                              Page 2

ATT2388887.txt

surfaced. Did you believe Forbes?
    ``I had a lot of questions about the property transfers. He
said he did it as a layer of protection for his family. If I
wanted a layer of protection for my family, the first property I
would transfer would be the home my wife and children live in.''

Do you think jurors should talk about the case?
    ``I wish you could interview everyone, because it was
fascinating.''

    The case is U.S. v. Forbes, 02CR264, U.S. District Court,
District of Connecticut (Hartford).

--Editor: Carter.

Story illustration: To compare Cendant's stock price with the
Standard & Poor's 500 Index and the Dow Jones Industrial Average,
click {CD US <Equity> COMP D SPX INDU <GO>}. For a menu of legal
information, click {BLAW <GO>}. For top legal stories, click
{TLAW <GO>}.

To contact the reporters on this story:
Jane Mills in Hartford, Connecticut, at
(1) (203) 530-6777 or janemills@sbcglobal.net;
David Voreacos in Newark, New Jersey, at
(1) (973) 286-0016 or dvoreacos@bloomberg.net.

To contact the editor responsible for this story:
Patrick Oster at (1) (212) 617-4088 or poster@bloomberg.net.

[TAGINFO]
CD US <Equity> CN

NI COS
NI CONS
NI SVC
NI TRIALS
NI GEN
NI LAW
NI ACC
NI REL
NI GOV
NI CORPGOV
NI CORPFIN
NI VERDICTS
NI SEC
NI INS
NI LEI
NI FIN
NI TRN
NI JUS
NI CRIME
NI US
NI CT
NI NY
NI NJ
NI VOICES


#<225457.3240841.2005-11-10T14:40:00.25>#
-0- Feb/15/2006 16:08 GMT

# EXHIBIT 3

ATT2392116.txt
Cendant Juror Thomas Keegan Comments on Forbes Fraud Retrial
2006-02-15 11:33 (New York)

By Jane Mills and David Voreacos
      Feb. 15 (Bloomberg) -- Thomas Keegan, a member of the jury
that deadlocked this month in the fraud retrial of former
Cendant Corp. Chairman Walter Forbes, comments on the case in an
interview.
      U.S. District Judge Alvin Thompson declared a mistrial on
Feb. 9 after the 11 jurors deliberated for 27 days in Hartford,
Connecticut. Another jury deadlocked 13 months ago after 33 days
of deliberations. Prosecutors told Thompson yesterday that they
are preparing for a third trial for the 63-year-old Forbes, who
is accused of inflating profits at CUC International Inc., a
predecessor to Cendant, by $252 million.
      Keegan, 44, works for the Connecticut Department of Mental
Retardation.

On Forbes's guilt:
      ``I voted not guilty. I was in the minority.''
      ``There were some things that definitely raised doubts,
allegations that were unfounded or questionable. I did not want
to let a guilty man off, and I battled that. There were times at
the trial that if it had ended early, I would have voted guilty.
      ``I might have been 80 percent sure he was innocent. It fit
to me more that he was innocent. The prosecution didn't take it
home. They left things too open. They didn't have enough people
there.''
      ``If they are going to convict this guy for ignorance, then
they should convict all of the Ernst & Young auditors for being
ignorant.''

On the outlook for a third trial:
      ``It is a shame that this had to end in a mistrial. The
government is going to have to rethink its strategy if they are
going to do a third one. They are just going to get another hung
jury if they redo the same case.
      ``when you throw out an accusation, you need to bring your
witnesses there before you can give credence to that accusation.
Nothing in this case was crystal clear on guilt or innocence. I
was very relieved to hear there was another hung jury before
us.''

On whether he believed the testimony of former CUC Chief
Financial Officer Cosmo Corigliano, who said he discussed the
fraud with Forbes and hid it from CUC's auditors at Ernst &
Young LLP.
      ``What settled it for me is that Ernst & Young didn't catch
on for so long. Whether E&Y was in on it weighed heavily. I
settled that with the testimony of Cosmo that he had lied to
them.''

On the bonus and severance package Forbes approved for Anne
Pember, a former CUC controller who pleaded guilty, which
prosecutors said was an attempt to cover up the fraud:
      ``I tried to imagine Walter Forbes as both innocent and
guilty when he signed that letter. My innocent view was that he
was manipulated by Cosmo, who wanted Pember in place, that he
really needed her there and told Walter he really needed her.
Then I tried to look at it as Walter being guilty, and to many
people it made sense, he's guilty.
      ``But I thought if Walter really is guilty and knew how
Page 1

ATT2392116.txt

incriminating it could be, why sign it? Why put his name on
something that was just going to stand out? I absolutely believe
that if he signed that while he was guilty, Anne would have
known of Walter's involvement. Signing something for Anne, who
by the way, couldn't implicate Walter Forbes -- I had to give
the benefit of the doubt to Walter on that. Don't tell me she
didn't know why Walter was signing her severance package when
she is in on it. So I kind of went more toward him being
manipulated by Cosmo to sign those things.''

On Forbes's testimony that he wasn't involved in daily
operations at CUC and didn't understand all of the accounting
details:
      ``The day-to-day was mentioned quite a bit. It sure looked
like he handed that over to others to do. I took it that he was
given these numbers and could speak about them but he wasn't
quite sure how they were reached.''

On the testimony of former Bear Stearns analyst Steven
Kernkraut, who said he regularly discussed details of CUC's
finances with Forbes:
      ``Kernkraut accused people of being on the phone talking to
investors, but nobody showed up to say they were on these calls.
There were little things like that that made me give Walter the
benefit of the doubt. Kernkraut created the first doubt for
me.''

On prosecutors' claim that Forbes lied about advice that his
former attorney, Greg Danilow, gave him on transferring
properties to his wife after the fraud surfaced:
      ``Walter did lie about the property transfers. But I had to
think how that pertained to the charges. Unless the attorney
said `it was illegal, don't do it,' he was going to do it.''


On the length of deliberations:
      ``There were a lot of breaks but to me it seemed to go very
fast. It was emotionally draining. We felt hung once and we
didn't know what else to talk about. Thompson sent us back down.
I think everyone had a sense of defeat when we walked out of
there. It was not what anyone wanted.''

On whether jurors should talk about the case:
      ``I believe that every juror has a duty to let it be known.
It is a bit of a responsibility. If we have a problem speaking
then maybe there is something wrong with our verdict. Some
people are just shy, but it helps both sides, defense and
prosecution. Maybe in a totally different trial they will look
at the common man's take on things.''
      The case is U.S. v. Forbes, 02CR264, U.S. District Court,
District of Connecticut (Hartford).

--Editors: Farr.

Story illustration: To compare Cendant's stock price with the
Standard & Poor's 500 Index and the Dow Jones Industrial
Average, click {CD US <Equity> COMP D SPX INDU <GO>}. For a menu
of legal information, click {BLAW <GO>}. For top legal stories,
click {TLAW <GO>}.

To contact the reporters on this story:
David Voreacos in Newark, New Jersey, at (1) (973) 286-0016 or
dvoreacos@bloomberg.net

```
                            ATT2392116.txt
Jane Mills in Hartford, Connecticut,
at (1) (203) 530-6777.

To contact the editor responsible for this story:
Patrick Oster at (1) (212) 617-4088 or
poster@bloomberg.net.

[TAGINFO]
CD US <Equity> CN

NI Codes:
NI COS
NI CONS
NI SVC
NI TRIALS
NI GEN
NI LAW
NI ACC
NI REL
NI GOV
NI CORPGOV
NI CORPFIN
NI VERDICTS
NI SEC
NI INS
NI LEI
NI FIN
NI TRN
NI JUS
NI CRIME
NI US
NI CT
NI NY
NI NJ
NI VOICES


#<248623.368133.2005-11-10T14:40:00.25>#
-0- Feb/15/2006 16:33 GMT
```

# EXHIBIT 4

ATT2393793.txt
Cendant Juror Angela White Comments on Forbes Fraud Retrial
2006-02-15 11:43 (New York)

By Jane Mills and David Voreacos
     Feb. 15 (Bloomberg) -- Angela White, a member of the jury
that deadlocked this month in the fraud retrial of former
Cendant Corp. Chairman Walter Forbes, comments on the case in an
interview.
     U.S. District Judge Alvin Thompson declared a mistrial on
Feb. 9 after the 11 jurors deliberated for 27 days in Hartford,
Connecticut. Another jury deadlocked 13 months ago after 33 days
of deliberations. Prosecutors told Thompson yesterday that they
are preparing for a third trial for the 63-year-old Forbes, who
is accused of inflating profits at CUC International Inc., a
predecessor to Cendant, by $252 million.
     Keegan, 31, works as an administrative assistant.

On Forbes's guilt:
     ``I thought he was guilty. It was definitely something you
had to read between the lines. It wasn't right out there for
you.''

On Forbes's defense that he was ignorant of the fraud:
     ``I expected a different kind of testimony from him. I am
sure he was nervous, but I was just surprised by his demeanor.
He is not a stupid man, and for him to come across as someone
who didn't know, when he built the company from the ground up,
it didn't make sense to me.''

On whether she believed the testimony of former CUC Chief
Financial Officer Cosmo Corigliano, who pleaded guilty and said
he discussed the fraud with Forbes:
     ``I believed Cosmo for some reason. I know that he was a
liar. But it seemed as if his testimony definitely was backed up
by other witnesses. A lot of the things he said were backed up
by other testimony so it was hard to not believe Cosmo's
testimony.''

On the bonus and severance package Forbes approved for Anne
Pember, a former CUC controller who pleaded guilty, which
prosecutors said was an attempt to cover up the fraud:
     ``The Anne Pember letter produced by Mr. Forbes was very
suspicious. I think he kind of contradicted his testimony that
he was not part of the day-to-day operations.''

On former Bear Stearns analyst Steven Kernkraut, who testified
that he discussed financial details about CUC with Forbes:
     ``I liked Steven Kernkraut. He was very accurate. He
answered well. He wasn't hemming and hawing. He was my favorite.
He knew his facts. He knew his dates.''

     The case is U.S. v. Forbes, 02CR264, U.S. District Court,
District of Connecticut (Hartford).

--Editors: Farr.

Story illustration: To compare Cendant's stock price with the
Standard & Poor's 500 Index and the Dow Jones Industrial
Average, click {CD US <Equity> COMP D SPX INDU <GO>}. For a menu
of legal information, click {BLAW <GO>}. For top legal stories,
click {TLAW <GO>}.

                         Page 1

ATT2393793.txt
To contact the reporters on this story: David Voreacos in
Newark, New Jersey, at (1) (973) 286-0016 or
dvoreacos@bloomberg.net
Jane Mills in Hartford, Connecticut, at (1) (203) 530-6777.

To contact the editor responsible for this story:
Patrick Oster at (1) (212) 617-4088 or
poster@bloomberg.net.

[TAGINFO]
CD US <Equity> CN

NI Codes:
NI COS
NI CONS
NI SVC
NI TRIALS
NI GEN
NI LAW
NI ACC
NI REL
NI GOV
NI CORPGOV
NI CORPFIN
NI VERDICTS
NI SEC
NI INS
NI LEI
NI FIN
NI TRN
NI JUS
NI CRIME
NI US
NI CT
NI NY
NI VOICES
NI NJ


#<248623.368133.2005-11-10T14:40:00.25>#
-0- Feb/15/2006 16:43 GMT

# EXHIBIT 5

ATT2410667.txt
Cendant Juror Gwen Mills Comments on Forbes Fraud Retrial
2006-02-15 13:46 (New York)


By Jane Mills and David Voreacos
     Feb. 15 (Bloomberg) -- Gwen Mills, a member of the jury
that deadlocked this month in the fraud retrial of former
Cendant Corp. Chairman Walter Forbes, comments on the case in an
interview.
     U.S. District Judge Alvin Thompson declared a mistrial on
Feb. 9 after the 11 jurors deliberated for 27 days in Hartford,
Connecticut. Another jury deadlocked 13 months ago after 33 days
of deliberations. Prosecutors told Thompson yesterday that they
are preparing for a third trial for the 63-year-old Forbes, who
is accused of inflating profits at CUC International Inc., a
predecessor to Cendant, by $252 million.
     Mills, a 28-year-old auto-claims adjuster, is expecting a
baby and was set to go on maternity leave on March 24.

On Forbes's guilt:
     ``I felt he was not guilty. My vote for not guilty was not
a popular vote, but I don't feel comfortable saying what the
split was because the judge asked us specifically not to.''
     ``I felt there just wasn't enough evidence. I honestly
don't know if Forbes is guilty or not. It could have happened
the way the government said it did, but it could have happened
the way Walter said it did. There really is no concrete evidence
that it happened either way.
     ``It was very hard for me because it could go either way.
It was a flip of a coin. As far as a civil case, they should
take him to the cleaners because he failed to do his job as a
CEO. But that was not what the trial was about.''

On the outlook for a third trial:
     ``I think it is a waste of money and waste of another 12
peoples' time. There just isn't enough there to go again. Unless
something crucial and new comes up, it really comes down to a
word-versus-word situation. I don't think 12 people will come to
a unanimous agreement.''

On whether she believed the testimony of former CUC Chief
Financial Officer Cosmo Corigliano, who pleaded guilty and said
he discussed the fraud with Forbes:
     ``It came down to Cosmo Corigliano's testimony versus
Walter Forbes's testimony. Nothing of Cosmo's could be
substantiated. None of the documents proved anything.
     ``Cosmo also contradicted his testimony a little too often.
He said he reviewed things with Walter every quarter and then
said Walter was hardly ever in the office.''

On Forbes's defense that he was ignorant of the fraud:
     ``He should have known. He should have been paying
attention. But you know, is it possible when you are doing
adjustments behind the scenes that they are showing you the
numbers they want you to see? It is possible.''

On Forbes as a witness:
     ``He was so well-coached and well-rehearsed that it was
very hard to get a good read on him.'' At one point, Assistant
U.S. Attorney Michael Martinez ``got him going and I thought,
`That's the real Forbes.' But his answers were very clear and
very concise and he tried to be very precise.''

                         Page 1

ATT2410667.txt

On the bonus and severance package Forbes approved for Anne
Pember, a former CUC controller who pleaded guilty, which
prosecutors said was an attempt to cover up the fraud:
    ``The thing that struck me as the oddest was the severance
agreement, not necessarily the employment agreement. Though it
seemed fishy, I understood why he signed the employment
agreement. I felt the severance agreement was odd and even
Walter testified that it was out of his normal practice.
    ``Anne testified that she talked it over with legal, got it
from legal, it was signed by Human Resources, and she returned
it to HR. It was Walter's testimony that HR came to him and
asked him to sign it. I just gave him the benefit of the doubt.
It was the thing that stuck out the most, but I didn't see it as
his attempt to save her, as the government depicted.''

On former CUC accountant Casper Sabatino, who pleaded guilty and
testified as a defense witness:
    ``Anne Pember and Casper weighed very heavily on me. Seeing
that they were guilty co-conspirators, I didn't feel they had
any reason to lie. They were such key cogs in the conspiracy and
both were high-level management. Neither one of them was able to
come out and say, `Yes, I knew Walter was involved in this. They
both said they were unsure.''

On former Bear Stearns analyst Steven Kernkraut, who said he
regularly discussed details of CUC's finances with Forbes:
    ``Steven Kernkraut, what a waste. He was so unclear about
key variables and actual numbers. He was very unclear what he
meant when he talked about key components. He didn't specify
when talking about the components of a merger reserve.''

On Forbes defense attorney Brendan Sullivan:
    ``Sullivan was amazing, picking everything and everyone
apart. I found him entertaining. Someone said he was asking the
same question 10 times. But he didn't. He methodically changed
one word each time. They kind of made the government look
unprepared.''

On why the deliberations took 27 days:
    ``Our first stumbling block was understanding the
indictment and instructions. The second was the holiday took up
a lot of time. Then when we were told to go back, we decided to
rehear the testimony and that took time. It definitely was
hard.''

    The case is U.S. v. Forbes, 02CR264, U.S. District Court,
District of Connecticut (Hartford).

--Editors: Farr.

Story illustration: To compare Cendant's stock price with the
Standard & Poor's 500 Index and the Dow Jones Industrial
Average, click {CD US <Equity> COMP D SPX INDU <GO>}. For a menu
of legal information, click {BLAW <GO>}. For top legal stories,
click {TLAW <GO>}.

To contact the reporters on this story: David Voreacos in
Newark, New Jersey, at (1) (973) 286-0016 or
dvoreacos@bloomberg.net
Jane Mills in Hartford, Connecticut, at (1) (203) 530-6777.

To contact the editor responsible for this story:
Patrick Oster at (1) (212) 617-4088 or

ATT2410667.txt

poster@bloomberg.net.

[TAGINFO]
CD US <Equity> CN

NI Codes:
NI COS
NI CONS
NI SVC
NI TRIALS
NI GEN
NI LAW
NI ACC
NI REL
NI GOV
NI CORPGOV
NI CORPFIN
NI VERDICTS
NI SEC
NI INS
NI LEI
NI FIN
NI TRN
NI JUS
NI CRIME
NI US
NI CT
NI NY
NI NJ


#<248623.368133.2005-11-10T14:40:00.25>#
-0- Feb/15/2006 18:46 GMT