UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 3:02CR264 (AHN) |
| v. | ) | |
| WALTER A. FORBES | ) | November 30, 2006 |

MEMORANDUM OF DEFENDANT WALTER A. FORBES
IN SUPPORT OF MOTION FOR NEW TRIAL

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon  (Bar No. ct24159)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Oral Argument Requested

Defendant Walter A. Forbes, through undersigned counsel, respectfully submits this memorandum in support of his oral motion for a new trial on Counts 1-3 of the indictment. See Tr. 3822. Mr. Forbes is entitled to a new trial in "the interest of justice," Fed. R. Crim. P. 33, for the reasons enumerated below.

## ARGUMENT

### I.    THE STANDARD APPLICABLE TO A MOTION FOR A NEW TRIAL.

The Court may grant a motion for a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33. "Any error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial." 3 Charles Alan Wright, Federal Practice and Procedure § 556, at 530 (3d ed. 2004).

When evaluating the grounds asserted by Mr. Forbes in support of his motion for a new trial, the Court should consider their cumulative effect rather than assessing them separately. "It is the total impact of all the irregularities at trial, rather than the impact of each one examined in isolation, that determines whether a defendant is entitled to a new trial." United States v. Williams, 81 F.3d 1434, 1443-44 (7th Cir. 1996); see also United States v. Parker, 997 F.2d 219, 221 (6th Cir. 1993) (reversing conviction based on four errors that "cumulatively necessitate reversal of the convictions"); United States v. McBride, 862 F.2d 1316, 1320 (8th Cir. 1988) (affirming grant of new trial based on cumulative effect of errors).

### II.    THE GOVERNMENT'S FAILURE TO DISCLOSE BRADY AND GIGLIO MATERIAL, AS WELL AS DOCUMENTS PRODUCIBLE UNDER FED. R. CRIM. P. 16, WARRANTS A NEW TRIAL.

"[T]he Government's failure to disclose evidence that is materially favorable to the defense violates due process," United States v. Rivas, 377 F.3d 195, 199 (2d Cir. 2004), and may warrant a new trial. See id. at 200 (reversing denial of new trial motion based on Brady

violation). A new trial is required if the withheld information is "favorable to the accused, either

because it is exculpatory, or because it is impeaching," id. at 199 (quoting Stickler v. Greene, 527

U.S. 263, 281-82 (1999)), and the defendant is prejudiced by the nondisclosure, id.; see also

United States v. Middlemiss, 217 F.3d 112, 123 (2d Cir. 2000) ("The court must grant a motion

for new trial under Brady v. Maryland if the government failed to disclose exculpatory evidence

to the defense and the suppressed evidence was material.").

      The government should be required to disclose the information and documents

identified below forthwith so that the Court may determine whether the government's

nondisclosure of this material warrants a new trial. At a minimum, the Court should require the

government to submit the documents and information identified below to the Court under seal so

that they are available for appellate review.

### A.    Mr. Forbes Is Entitled To A Full Record Of Mr. Silverman's Bias.

      Mr. Forbes has repeatedly sought information and documents from the

government concerning the efforts made by Henry Silverman and other Cendant representatives

and their counsel to "lobby" the government in this matter. See, e.g., Docket No. 481. Prior to

Mr. Silverman's trial testimony, Mr. Forbes renewed his request for "all Brady, Giglio, and

Jencks material with respect to Henry Silverman, including but not limited to all information

concerning any communications (whether oral or written) by Mr. Silverman and/or his counsel or

other representatives, or by Cendant and/or its counsel or other representatives, with the

government (including the USAO, the SEC, and the DOJ) regarding the investigation or

prosecution of this matter, including communications concerning the question of whether Mr.

Forbes should be indicted, sued by the SEC, retried, and/or tried for a third time." Docket No.

2600 (filed 11/29/06), Ex. 19.  On the morning of October 16, 2006, prior to Mr. Silverman's

testimony, the government represented that it had complied with its obligations in this regard and

had no further response.  Tr. 1194.

   During Mr. Silverman's testimony on October 16, 2006, Mr. Forbes learned for

the first time that Mr. Silverman personally attended a meeting with the former U.S. Attorney for

the District of New Jersey.  See Tr. 1414.  Following that testimony, Mr. Forbes again renewed

his Brady/Giglio request concerning Mr. Silverman and his representatives' contacts with

government representatives.  Tr. 1470-72.

   On October 18, 2006, the government represented that the current U.S. Attorney

for the District of New Jersey, Mr. Christie, had never met with Mr. Silverman.  Tr. 1824-25.

The government refused to represent whether Mr. Christie has met with Mr. Silverman's counsel,

or any other representative of Cendant or Mr. Silverman, concerning this matter.  See id.  The

government also represented that former U.S. Attorney Robert Cleary recalled that he had

attended a meeting with Mr. Silverman.  Tr. 1976.  The government represented that Mr. Cleary

"has no recollection that Mr. Silverman asked that Walter Forbes or anyone else, for that matter

. . . be indicted, and in fact, he would have been surprised by such a request had it been made."

Id.

   The government's failure to disclose until after Mr. Silverman's trial testimony

the fact that Mr. Silverman attended a meeting with former U.S. Attorney Cleary is deeply

troubling.  Documents and other information relating to Mr. Silverman's and his representatives'

efforts to have the government pursue criminal charges or take enforcement action in this matter

are clearly relevant to Mr. Silverman's bias and motive, and constitute Brady/Giglio material.

3

See Rivas, 377 F.3d at 199 ("Impeachment evidence is evidence 'having the potential to alter the jury's assessment of the credibility of a significant prosecution witness.'") (quoting United States v. Avellino, 136 F.3d 249, 255 (2d Cir. 1998)); see generally Docket No. 2509 (discussing relevance of bias evidence to credibility).[1]  Mr. Forbes respectfully requests that the government be ordered to produce forthwith (or to file under seal) all Brady/Giglio information in its possession, custody, or control concerning (1) what transpired at the meeting between Mr. Silverman and Mr. Cleary;[2] (2) the identity of any other persons present at the meeting attended by Mr. Silverman and Mr. Cleary; and (3) what transpired at, and who participated in, any other meeting or communication that took place between Mr. Silverman and/or his counsel and any representative of the U.S. Attorney's Office, the FBI, the Department of Justice, the SEC, or any other agency of the federal government regarding the investigation or prosecution of this matter, including whether Mr. Forbes should be indicted, sued by the SEC, retried, and/or tried for the third time.  Mr. Forbes further requests that the government be ordered to produce forthwith (or to file under seal) all Brady/Giglio information in its possession, custody, or control concerning

---

[1]     During rebuttal summation, the government argued that Mr. Silverman was a "victim" who had a right to cooperate with government authorities.  See Tr. 3615-16.  If the government is withholding information concerning Mr. Silverman's or his representatives' contacts with government representatives on the theory that Mr. Silverman was a victim who had a right to seek justice in this case, the government is in error.  The government's obligations under Brady/Giglio do not turn on the government's interpretation of evidence, but whether defense counsel may use the evidence to impeach a key government witness.  Information concerning Mr. Silverman's or his representatives' contacts with the government in this matter are relevant to Mr. Silverman's bias, irrespective of the government's opinion about Mr. Silverman's right to engage in such communications.

[2]     It is defense counsel's understanding that Mr. Cleary sent an e-mail to current government counsel concerning his meeting with Mr. Silverman.  Mr. Forbes respectfully requests that Mr. Cleary's e-mail be produced to the defense or filed with the Court under seal.

any meeting or communication between Mr. Silverman's counsel, or any other representative of Mr. Silverman, and any representative of the federal government concerning this matter.

### B. The Government Should Be Required To Disclose <u>Brady/Giglio</u> Information Concerning Kevin Kearney.

Mr. Forbes has consistently requested <u>Brady/Giglio</u> information concerning Kevin Kearney, including all documents and information tending to show that (1) Mr. Kearney was asked about Mr. Forbes in government interviews prior to his 2004 trial testimony but said nothing about the purported invocation of Mr. Forbes' name during discussions about topside adjustments; (2) Mr. Kearney was asked questions in government interviews about his conversations with CUC personnel regarding unsupported topside adjustments but said nothing about the purported invocation of Mr. Forbes' name during those conversations or any purported statements about Mr. Forbes' desire to achieve a certain EPS; or (3) Mr. Kearney was asked about the persons with whom he met concerning unsupported topside adjustments and either stated that he did <u>not</u> meet with Mr. Bell or said nothing (at least prior to 2003) about any purported meetings with Mr. Bell. <u>See</u>, <u>e.g.</u>, Docket Nos. 2189, 2341.

On September 12, 2006, the Court directed the government to make further inquiry concerning any internal government memoranda that might contain discoverable information concerning Mr. Kearney's statements to the government. <u>See</u> Tr. (9/12/06) at 70-71. On October 3, 2006, the government disclosed that it had identified four documents that contained prosecutors' assessments of this case. <u>See</u> Docket No. 2600 (filed 11/29/06), Ex. 18. The government refused to produce any of those documents to the defense, asserting that all of

the discoverable information in the documents had been disclosed and that the documents were government work product. Id.

Mr. Forbes is entitled to discovery of internal government documents containing Brady or Giglio material even where work product protection otherwise applies. See United States v. Goldman, 439 F. Supp. 337, 350 (S.D.N.Y. 1977) ("reports, memoranda, or other internal government documents" must be produced "if the material [is] of a Brady nature") (quotation omitted).[3] Mr. Forbes respectfully requests that the government either produce to the defense the portions of the four documents identified in the government's October 3, 2006 letter that relate to Kevin Kearney or file the documents under seal so that they are available for appellate review.

Mr. Forbes also renews his request for all information and documents concerning whether Mr. Kearney -- either directly or through his counsel -- was orally promised informal immunity in exchange for his testimony or was told or led to believe that he would not be prosecuted in exchange for his cooperation. See Docket No. 2472. Given the government's radical change of position in 2006 concerning Mr. Kearney's status, the government should be required to disclose (and should have disclosed prior to or during trial) all communications between Mr. Kearney or his counsel and the U.S. Attorney's Office concerning (1) whether Mr.

---

[3]     See also United States v. Eley, 335 F. Supp. 353, 354, 357-58 (N.D. Ga. 1972) (ordering government to produce "[a]ll reports and memoranda prepared on behalf of the Government or otherwise in connection with the investigation of this case" that contain Brady material); 2 Charles Alan Wright, et al., Federal Practice and Procedure § 254.2, at 141 (3d ed. 2000) ("Because Brady is based on the Constitution, it overrides court-made rules of procedure. Thus, the work-product immunity for discovery in Rule 16(a)(2) prohibits discovery under Rule 16 but it does not alter the prosecutor's duty to disclose material that is within Brady." (footnote omitted), quoted in United States v. Armstrong, 517 U.S. 456, 475 (1996) (Breyer, J., concurring).

Kearney would be prosecuted; (2) whether Mr. Kearney would receive any leniency from the

U.S. Attorney's Office in exchange for his cooperation; and (3) whether Mr. Kearney would

receive any benefit or consideration in exchange for his cooperation.  At a minimum, the

government should be required to supply the information to the Court under seal so that it is

available for appellate review.  Mr. Forbes also renews his request for an evidentiary hearing on

the subject of the statements and promises made to Mr. Kearney by the government between

1998 and 2004.  See id.

**C.     The Government Should Be Required To Disclose Whether Mr. Monaco Was Asked About "Lobbying" Efforts For Ms. Pember Prior To The 2005 Trial.**

Mr. Monaco's testimony concerning a purported meeting in Parsippany, New

Jersey at which Mr. Forbes purportedly "lobbied" Mr. Monaco to keep Anne Pember in her

accounting role was a significant issue at trial.  The government opened on this alleged fact, Tr.

44-45, elicited it during Mr. Monaco's direct and redirect examinations, Tr. 343-45, 350, 669-70,

671-72, cross-examined Mr. Forbes about it, Tr. 3263-64, and argued it in summation, Tr. 3434-

35.

When Mr. Forbes challenged Mr. Monaco's testimony on this point, the

government argued to the Court and the jury that  Mr. Monaco's testimony about the purported

Parsippany meeting was not a recent fabrication because Mr. Monaco simply was never asked

about it prior to the 2005 trial.  See, e.g., Tr. 412, 415, 702, 3604.  The government also

represented to the Court that the issue of fighting to keep Anne Pember in her accounting role did

not arise until the middle of the first trial.  See Tr. 702 ("He wasn't even asked in prep session

because the whole saving Ms. Pember, I believe, I don't want to get into the three different

7

lawyers of trial one, was something that one of them kind of fell into midway through the trial.").

In fact, the government opened on this issue in the 2004 trial. See Tr. (5/10/04) at 57 ("it was

very important that the consolidations continue to be done in Stamford for the 20 or so CUC

businesses by the former CUC accountants. But this plan was starting to fall apart. First, Cosmo

Corigliano was no longer the chief financial officer. He'd been transferred to other

non-accounting duties. So that left Anne Pember as the most senior person in the former CUC

accounting department who was part of the conspiracy. So it was important that Anne Pember

stay in place in the CUC accounting department."); id. at 65 ("And you'll hear how Anne Pember

wanted to quit CUC in the fall of 1997. You'll also hear about the lengths that Walter Forbes,

Shelton, and Corigliano went to keep her, to keep her in her critical role in the fraud.").

       The government should be required to disclose whether Mr. Monaco was asked at

any time between 1998 and 2005 about the subject of "lobbying" for Ms. Pember or efforts to

keep Ms. Pember in her accounting role. See Tr. 858-62 (request by Mr. Forbes for this

information pursuant to Brady/Giglio).[4] If Mr. Monaco was asked about either of those subjects,

but said nothing about a purported meeting with Mr. Forbes in Parsippany, New Jersey during

which Anne Pember supposedly was discussed, that is clearly Brady/Giglio information that

---

[4]    The government represented during trial that it had spoken with one of the prosecutors
from the 2004 trial, "and it never had been asked to the best of their recollection." Tr. 858. The
government did not identify what "it" was. Mr. Monaco may not have been specifically asked by
former prosecutors about a meeting with Mr. Forbes in Parsippany, New Jersey in which Anne
Pember was discussed. If, however, Mr. Monaco was asked prior to 2005 about (1) efforts by
CUC representatives to keep Ms. Pember in her accounting position, (2) communications with
CUC representatives concerning Ms. Pember's accounting role after May 1997, or (3) any other
questions that would have called for a response that would have included the purported
Parsippany meeting, but did not supply any information concerning the purported Parsippany
meeting, that is clearly Brady/Giglio information that would have been important to the cross-
examination of a key government witness.

bears on the credibility of a key government witness (and that should have been disclosed prior to or during trial). At a minimum, the government should be required to supply the information to the Court under seal so that it is available for appellate review.

###### D. The Government Should Be Required To Disclose Whether Mr. Corigliano Was Asked Prior To 2006 Whether CUC Conducted Quarterly Earnings Conference Calls Prior To Mid-1997.

During the 2006 trial, Mr. Corigliano testified that CUC did not conduct quarterly earnings conference calls prior to mid-1997 because Mr. Forbes and Mr. Bell purportedly did not want to do so for nefarious reasons. See Tr. 2451. Mr. Corigliano did not testify to this purported fact in either the 2004 or 2005 trials and, at least in the 2005 trial, the government suggested during rebuttal summation that Mr. Forbes lied when he testified that there were no such quarterly conference calls prior to mid-1997. See Trial 2 Tr. at 3563-64. If Mr. Corigliano's testimony about the purported reasons that Messrs. Bell and Forbes did not conduct quarterly earnings conference calls is a recent fabrication, that is clearly Brady/Giglio information that should be disclosed to Mr. Forbes (and that should have been disclosed prior to or during trial).

Mr. Corigliano's 2006 testimony that CUC did not conduct quarterly earnings conference calls prior to mid-1997 was directly inconsistent with the government's assertion during the 2005 trial that CUC did conduct such calls in the years prior to 1997. See Trial 2 Tr. at 3661 ("Our review -- first of all, our interviews with witnesses and our review of the records show that in fact it seemed to be par for the course to have conference calls with CUC when it came to quarterly earnings."); id. at 3663 ("Right now our basis would be at the time that we were preparing for [Mr. Kernkraut's] testimony and he gave us the stock analyst community,

9

their approach to the importance of quarterly earnings and that they had these phone calls and there are discussions with other witnesses throughout, that was never contradicted. That seemed to be par for the course."). The government made those representations to Judge Thompson after Mr. Forbes questioned the accuracy of the government's argument in rebuttal summation that CUC conducted quarterly earnings conference calls prior to mid-1997. Presumably, if Mr. Corigliano had informed the government prior to or during the 2005 trial that CUC did <u>not</u> conduct quarterly earnings conference calls prior to mid-1997, the government would not have made a representation to the Court that CUC had conducted such calls.

The government should be required to disclose whether it asked Mr. Corigliano at any time prior to 2006 whether CUC conducted quarterly earnings conference calls. If Mr. Corigliano was asked about the subject of quarterly earnings conference calls prior to 2006, and supplied information to the government that was different than his 2006 trial testimony, that is clearly <u>Brady/Giglio</u> information that should be disclosed to the defense. <u>See</u> Tr. 2543-45 (requesting such information). The government also should be required to identify the first time that Mr. Corigliano told the government that Messrs. Bell and Forbes purportedly did not conduct quarterly earnings calls prior to mid-1997 because they "didn't want to have conference calls with analysts as one big group. They were concerned the smartest analyst in that group might educate other analysts. They might ask questions and get information or make connections that they would not ordinarily make. They wanted to talk with them individually to control the flow of information better." Tr. 2451. If Mr. Corigliano was asked by the government about the subject of quarterly earnings conference calls at CUC prior to the 2006 trial, but did not make the same statements that he made at the 2006 trial, that also is <u>Brady/Giglio</u> information that should

be disclosed to the defense. At a minimum, the government should supply the information to the Court under seal so that it is available for appellate review.

### E. The Government Should Be Required To Disclose Any Communications With Mr. Bell Or His Counsel On The Subject Of Proffers Or Requests For Proffers.

The government should disclose the substance of any communications between the government and either Mr. Bell or his counsel concerning the subject of proffers or requests for proffers. The government revealed during argument on Mr. Forbes' pretrial motions that it subpoenaed Mr. Bell to testify in the grand jury. See Tr. (9/20/06) (sealed portion) at 12; Tr. (9/21/06) at 22-24. The government also asserted during argument concerning Mr. Bell that it would not immunize Mr. Bell until it knew what he had to say because it "should not and will not buy a pig in a poke." Tr. 1184. If the government offered Mr. Bell a proffer agreement at any time, or otherwise sought to obtain incriminating information from Mr. Bell, and was informed by either Mr. Bell or his counsel that Mr. Bell had no incriminating information to supply, that is Brady/Giglio information that should be disclosed to the defense. See Tr. (9/20/06) (sealed portion) at 14-15 (requesting such information). At a minimum, the government should supply the information to the Court under seal so that it is available for appellate review.

### F. The Government Should Be Required To Disclose Communications Between Mr. Corigliano's Counsel And The Government Concerning Mr. Corigliano's Compliance With His Plea Agreement.

Finally, Mr. Forbes renews his request for the production of all communications between Mr. Corigliano or his counsel and the government (including the SEC) with respect to Mr. Corigliano's compliance with his obligations under the plea agreement and settlement

11

negotiations with the SEC. Mr. Corigliano testified on direct examination concerning his purported compliance with his obligations under his plea agreement and his purported good-faith efforts to settle with the SEC. See Tr. 1746-51, 1766-72. Any information in the government's possession, custody, or control that reflects that the SEC was not satisfied with the level of Mr. Corigliano's cooperation or his financial disclosures, or that it excused him from disclosure obligations normally required by the SEC, is Brady/Giglio information that should be produced.

Mr. Forbes has identified at least four specific letters between Mr. Corigliano's counsel and the SEC that have not been produced (a May 15, 2000 letter from Thomas Newkirk to Mr. Corigliano's counsel and at least three letters dated March 30, 2000). See Docket Nos. 2189, 2341; Ex. A to Docket No. 1944. Mr. Forbes also has identified other communications between Mr. Corigliano's counsel and the SEC as to which no information has been produced (a May 2, 2000 communication between Mr. Corigliano's counsel and Director Walker of the SEC and a meeting between Mr. Corigliano's counsel and the SEC on May 19, 2000). See Docket Nos. 2189, 2341; Ex. B to Docket No. 1944. Mr. Forbes renews his request for the foregoing documents and information, as well as for all communications between Mr. Corigliano or his counsel and the SEC concerning requests for financial disclosure and Mr. Corigliano's compliance with his obligations under his plea agreement. See Docket Nos. 2189, 2341. In addition, Mr. Forbes renews his request for all information concerning any communications (oral or written) between the SEC and the U.S. Attorney's Office concerning Mr. Corigliano's disclosure of financial information to the SEC or his compliance or lack of compliance with requests made by the SEC for financial or other information. See Docket Nos. 2189, 2341. At a

minimum, the documents and information should be filed under seal so that they are available for appellate review.

## III.    THE COURT SHOULD GRANT A NEW TRIAL FOR ADDITIONAL REASONS.

The Court should grant a new trial for the reasons set forth below.  Each of the grounds set forth below is an independent basis for the grant of a new trial.  When considered together, they compel a new trial.  Mr. Forbes incorporates by reference all of the previously-filed pleadings referenced herein.  Mr. Forbes also reasserts, and incorporates by reference herein, all of his oral and written mistrial motions, all of his pretrial motions and motions in limine, and all of the pleadings he filed in connection with the 2006 trial.

### A.    Jury Selection.

1.    The Court erroneously did not conduct individual *voir dire* of all potential jurors as to whom Mr. Forbes asserted a challenge for cause.  See Miller v. Webb, 385 F.3d 666 (6th Cir. 2004); Hughes v. United States, 258 F.3d 453 (6th Cir. 2001); Wolfe v. Brigano, 232 F.3d 499 (6th Cir. 2000); Fietzer v. Ford Motor Co., 622 F.2d 281 (7th Cir. 1980); United States v. Lewin, 467 F.2d 1132 (7th Cir. 1972); Tr. 146, 158; Docket No. 2603 (filed 11/29/06), Ex. 2C.

2.    The Court erroneously denied Mr. Forbes' cause challenges with respect to the following jurors:  Louis Barney (# 212); David Cunningham (# 272); Madeline Isbrandtsen (# 574); Laurie Kalina (# 363); Anne Pucko (# 378).  See Docket No. 2603 (filed 11/29/06), Exs. 2, 2A, 2B, 2D, 3-4, 7, 10.

3.    The Court erroneously denied Mr. Forbes' request that the Court pose the following questions to all prospective jurors during *voir dire*: (1) Is there anyone who believes that if accounting fraud is occurring within a corporation, the CEO should know of it?; (2) Is

13

there anyone who believes that a CEO should be held responsible for accounting fraud occurring during his tenure as CEO regardless of whether he actually knew about it?  <u>See</u> Docket No. 2603 (filed 11/29/06), Ex. 2C; <u>Pitasi v. Stratton Corp.</u>, 968 F.2d 1558 (2d Cir. 1992); Tr. 148-50.

       4.    The Court erroneously denied Mr. Forbes' <u>Batson</u> challenge based on the government's peremptory strikes of female prospective jurors and alternate jurors on the basis of gender.  <u>See</u> Tr. (10/4/06) at 240-41; Tr. (10/5/06) at 1-23; Tr. (4/30/04) (sealed portion) at 1622-28, 1630-31 (government peremptory strikes in trial 1; 5 of 6 government strikes exercised against women; 1 of 3 government alternate strikes exercised against women); Tr. (10/3/05) (sealed portion) at 1116-1120, 1124 (government peremptory strikes in trial 2; 5 of 6 government strikes exercised against women; 3 of 3 government alternate strikes exercised against women); Docket No. 2603 (filed 11/29/06), Exs. 1, 11-13; Notice of Filing Under Seal (filed 11/30/06) (juror questionnaires from trial 3); Docket No. 2604 (filed 11/30/06); <u>J.E.B. v. Alabama ex rel. T.B.</u>, 511 U.S. 127 (1994); <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986).

**B.**    **Stuart Bell.**

       1.    The Court erroneously denied Mr. Forbes' request that the government be required to elect between (a) conferring use immunity upon Mr. Bell or (b) suffering the consequence of the exclusion of all evidence suggesting that Mr. Bell engaged in improper accounting or criminal conduct.  <u>See</u> Docket Nos. 2191, 2306, Tr. 1181-91, 1461-68, 1478-83.

       2.    The Court erroneously denied Mr. Forbes' request for a missing witness instruction concerning Mr. Bell.  <u>See</u> Docket Nos. 2191, 2306; Docket No. 2546 at 11-14; Tr. 1184-92, 1465-68, 3366-70.

14

3.     The Court erroneously precluded Mr. Forbes from making an argument in summation concerning the government's failure to call Mr. Bell based on its ruling that, if such an argument were made by the defense, the "Uncalled Witness Equally Available" instruction from Sand, Modern Federal Jury Instructions -- Criminal, Instruction 6-7, would be given. See Tr. 3366-97; Docket No. 2546 at 13-14; Docket No. 2600 (filed 11/29/06), Ex. 23.

4.     The government's summation and rebuttal summation arguments concerning Mr. Bell and pre-1995 accounting at CUC were improper. See Docket No. 2543 at 2.

**C.     Asset Transfer Evidence.**

1.     The Court erroneously permitted the government to present evidence concerning Mr. Forbes' transfer of his interest in certain real estate to members of his family, both in the government's case-in-chief (through a read-back of Mr. Forbes' prior trial testimony and the testimony of Greg Danilow) and during Mr. Forbes' cross-examination. See Docket Nos. 2185, 2320, 2340, 2480; Tr. 1519-42, 1555-64, 3313-21.

2.     The Court erroneously allowed the government to present Mr. Danilow's testimony, which was impeachment evidence not admissible in the government's case-in-chief, during the government's case-in-chief. See Docket Nos. 2185, 2320, 2340, 2480; Docket No. 2487 at 10-12; Tr. 1555-64.

3.     The government's opening, closing, and rebuttal arguments concerning Mr. Forbes' property transfers and Mr. Forbes' purported "lies" about property transfers were improper. See Tr. 52-53, 3463-67, 3631-34; Docket No. 2543 at 4-5, 15.

15

**D.    Preclusion of Government Admissions.**

1.    The Court erroneously precluded Mr. Forbes from offering into evidence as an admission of a party-opponent a number of government pleadings concerning Kevin Kearney's receipt of informal immunity from the government.  <u>See</u> Docket No. 2530; Tr. 2906-23.

2.    The Court erroneously precluded Mr. Forbes from offering into evidence as an admission of a party-opponent oral proffers made by the government to the Court, and an excerpt of a government pleading, concerning the government's position with respect to the identity of the person who purportedly instructed Amy Lipton to delete certain information from CUC's April 9, 1997 Board minutes.  <u>See</u> Docket Nos. 2530, 2537; Tr. 2906-23.

3.    The Court erroneously precluded Mr. Forbes from offering into evidence as admissions of a party-opponent government letters containing representations as to what witnesses said in government interviews.  <u>See</u> Docket Nos. 2444, 2462.  In the alternative, the Court should have permitted Mr. Forbes to introduce prior inconsistent statements of Kevin Kearney, as reflected in government interview notes and letters, into evidence pursuant to <u>United States v. Wallach</u>, 935 F.2d 445 (2d Cir. 1991).  <u>See</u> Docket Nos. 2274, 2391.

**E.    Shareholder Losses.**

1.    The Court erroneously permitted the government to present evidence and argument on the subject of shareholder losses and the decline in Cendant's stock price on and after April 15, 1998.  <u>See</u> Docket No. 1855 (incorporated by reference in Docket No. 2266); Docket Nos. 2266, 2394.

2.     The government's opening argument on the subject of shareholder losses was improper and prejudicial. See Tr. 21-23, 33 ("The United States will prove that the shareholders lost more than 14 billion dollars on the day after CUC publicly announced -- well, the fraud at CUC was publicly announced."); Tr. 34 ("The evidence will show that the defendant, along with his two right hand men in the conspiracy, Cosmo Corigliano, the chief financial officer, and Kirk Shelton, the chief operating officer, coordinated this $14 billion fraud."); Tr. 35 ("Let me turn to the $14 billion fraud that the defendant directed while he was CEO and chairman of the board."); Tr. 51 ("In the first day, it dropped almost 50 percent and Cendant shareholders lost more than $14 billion."); Tr. 51 ("After Cendant shareholders lost $14 billion and after Cendant started an investigation to CUC's books, the defendant who had been the CEO and the chairman of CUC started transferring millions of dollars of assets out of his name."); Tr. 53 ("That's an overview of what the United States expects to prove about the $14 billion fraud that the defendant directed.").

3.     The Court erroneously denied Mr. Forbes' motion for a mistrial based on the government's improper and prejudicial opening argument on the subject of shareholder losses. See Tr. 162-63.

4.     The Court erroneously denied Mr. Forbes' alternative request for a curative instruction after the government's improper and prejudicial opening argument on the subject of shareholder losses. See Tr. 162-63, 297-98, 315-17.

5.     The government failed to present any competent evidence at trial to support its repeated argument that shareholders suffered $14 billion in losses after the announcement of accounting irregularities by Cendant in April 1998. Mr. Monaco's testimony

17

on this subject (Tr. 410) was inadmissible under Fed. R. Evid. 701 and 702 because it was expert

opinion testimony.  See Docket No 1855 (incorporated by reference in Docket No. 2266); Docket

Nos. 2266, 2394.  Mr. Monaco is not an expert in quantifying shareholder losses and he was not

qualified to offer opinion testimony quantifying the shareholder losses purportedly caused by

fraud at CUC or Cendant.  The admission of this improper testimony was highly prejudicial to

Mr. Forbes and resulted in an audible gasp from at least one member of the jury.  See Tr. 465.

      6.    The Court erroneously denied Mr. Forbes' request for a mistrial or a

curative instruction after Mr. Monaco improperly testified that shareholders lost $14 billion after

the announcement of accounting irregularities by Cendant.  See Tr. 464-65.

      7.    The government's cross-examination of Mr. Forbes concerning the

purported "fact" that shareholders lost $14 billion was improper and was not supported by any

competent evidence.  See Tr. 3313.

      8.    The government's repeated argument that Mr. Forbes directed a $14

billion fraud was improper, misleading, highly prejudicial, and not supported by any competent

evidence at trial.  The government's expert witness, Mr. Heckler, testified that the fraud at CUC

and Cendant involved the inflation of reported pre-tax income by approximately $252 million.

See Tr. 2536-37.

      9.    The government's closing and rebuttal arguments concerning shareholder

losses were improper and highly prejudicial.  See Tr. 3413, 3415, 3469, 3615, 3626; Docket No.

2543 at 16-17.

F.    **Scott Forbes.**

1.    The Court erroneously precluded Mr. Forbes from reading an excerpt of Scott Forbes' prior trial testimony to the jury pursuant to Fed. R. Evid. 804(b)(1). See Docket No. 2527; Tr. 2575-78, 2886-98, 2923-27.

G.    **Cosmo Corigliano**

1.    The Court erroneously precluded Mr. Forbes from cross-examining Mr. Corigliano and presenting documentary evidence concerning Mr. Corigliano's purported compliance with his obligations under his plea agreement with respect to the SEC.  The cross-examination and evidence precluded by the Court were proper impeachment by contradiction based on the government's direct examination of Mr. Corigliano on the subject of compliance with his plea agreement, see Tr. 1746-51, 1766-72, and were relevant to Mr. Corigliano's bias and motive. See Docket Nos. 2000, 2189, 2273, 2341, 2396; Tr. 2100, 2355-59, 2372-73,[5] 2542-43.

2.    The Court erroneously precluded Mr. Forbes from cross-examining Mr. Corigliano and presenting documentary evidence concerning his efforts to settle with the SEC and the purported reasons that Mr. Corigliano did not reach a settlement with the SEC, despite his obligations under his plea agreement, for more than four years after entering into his plea agreement.  The cross-examination and evidence precluded by the Court were proper impeachment by contradiction based on the government's direct examination of Mr. Corigliano on this subject, see Tr. 1771-72, and were relevant to Mr. Corigliano's bias and motive. See Docket Nos. 2000, 2189, 2273, 2341, 2396; Tr. 2355-59, 2372-73, 2542-43.

_____

[5]    Docket No. 2000 was misidentified as Docket No. 1537.

3.      The Court erroneously precluded Mr. Forbes from calling a defense witness whose testimony was relevant to Mr. Corigliano's bias and motive. <u>See</u> Docket No. 2483.

4.      The Court erroneously permitted Mr. Corigliano to testify concerning the truth-telling provisions of his plea agreement. <u>See</u> Docket Nos. 2190, 2342; Tr. 1746-51, 2101.

5.      The government elicited and/or failed to correct testimony from Mr. Corigliano that it knew or should have known was false. This testimony included, <u>inter alia</u>, Mr. Corigliano's testimony about his purported compliance with his plea agreement, <u>see</u> Tr.1746-51, Mr. Corigliano's testimony about the purported reasons he failed to settle with the SEC until 2004, <u>see</u> Tr. 1771-72, 2199, Mr. Corigliano's redirect testimony about sweeps for eavesdropping devices at CUC, <u>see</u> Tr. 2468-70, 2541, and Mr. Corigliano's testimony about Mr. Forbes' purported instruction to Amy Lipton that certain information be deleted from the minutes of the April 9, 1997 CUC Board of Directors meeting, <u>see</u> Tr. 1653-54. <u>See, e.g.</u>, <u>Napue v. Illinois</u>, 360 U.S. 264, 269 (1959); <u>United States v. Wallach</u>, 935 F.2d 445 (2d Cir. 1991).

6.      The Court erroneously precluded Mr. Forbes from revealing to the jury the fact that there were hung juries as to Mr. Forbes in both of Mr. Forbes' prior trials. <u>See</u> Tr. 306-07, 326; Docket No. 2495. That information was highly relevant to the cross-examination of Cosmo Corigliano, to both (a) demonstrate Mr. Corigliano's bias and motive to testify falsely about Mr. Forbes, <u>see</u> Docket No. 2495, and (b) impeach the testimony elicited from Mr. Corigliano on direct examination that the outcome of the third trial has no bearing on the government's assessment of whether Mr. Corigliano provided substantial assistance to the government, <u>see</u> Tr. 1756-57.

20

7.      The Court erroneously permitted the government to identify Your Honor as the Judge who will sentence Mr. Corigliano. See Docket No. 2442; Tr. 1753, 1757-59, 1764-65.

8.      The Court erroneously rejected Mr. Forbes' contention that the crime/fraud exception to the attorney-client privilege should be applied to Mr. Corigliano with respect to his communications with counsel during the period between April 1998 and February 1999. See Tr. 2098-99; Docket Nos. 2186, 2543.

**H.     Kevin Kearney.**

1.      The government elicited testimony from Mr. Kearney that it knew or should have known was false. This testimony included, inter alia, Mr. Kearney's testimony that he repeatedly attended meetings with Stuart Bell to discuss unsupported quarterly topside adjustments, see, e.g., Tr. 746, 762-65, Mr. Kearney's testimony that both Mr. Bell and Cosmo Corigliano repeatedly invoked Walter Forbes' name during discussions regarding unsupported topside adjustments, see, e.g., Tr. 765-67, 770-72, Mr. Kearney's testimony that he was never promised by the government that he would not be prosecuted, see Tr. 788, Mr. Kearney's testimony that he has no cooperation agreement with the government, see Tr. 846-47, and Mr. Kearney's testimony that his answers to interrogatories -- in which he indicated that he had no information concerning wrongdoing on the part of Mr. Forbes -- were based on his lack of documents rather than his lack of knowledge concerning Mr. Forbes, see Tr. 847-48. See Docket No. 2507; United States v. Wallach, 935 F.2d 445 (2d Cir. 1991).

21

**I.    Ernst & Young.**

1.    The Court erroneously permitted the government to introduce GX 11007 into evidence as a business record and to use that document, which was never shown to anyone outside of Ernst & Young, as purported evidence against Mr. Forbes.  <u>See</u> Docket Nos. 2356, 2381; Tr. 1716-24, 3455-64, 3452-54.

2.    The Court erroneously permitted the government to elicit testimony from Anne Pember that suggested that Ernst & Young was complicit in improper accounting at CUC. <u>See</u> Tr. 967-80, 988-1011, 1173.  That testimony constituted a constructive amendment of the indictment and was improper for the reasons set forth in Docket Nos. 2249 and 2382.

3.    The Court erroneously permitted Ms. Pember and Mr. Corigliano to testify to a hearsay statement by Mr. Shelton concerning Mark Rabinowitz, and erroneously permitted Ms. Pember to testify concerning her interpretation of that statement.  <u>See</u> Tr. 1032-33, 1716, 2462.  That testimony constituted a constructive amendment of the indictment and was improper for the reasons set forth in Docket Nos. 2251, 2255, and 2383.

**J.    Henry Silverman.**

1.    The Court erroneously precluded Mr. Forbes from presenting attorney Thomas Puccio's testimony as extrinsic evidence of Mr. Silverman's bias.  <u>See</u> Docket Nos. 2509, 2525; Tr. 2584-87.

2.    The Court erroneously precluded Mr. Forbes from presenting the testimony of Martin Auerbach and Kirk Shelton concerning statements made by Henry Silverman to attorney Steven Kaufman.  <u>See</u> Docket No. 2509; Tr. 2584-87.

3.    The Court erroneously precluded cross-examination of Mr. Silverman concerning the amount of legal fees Cendant paid to Mr. Corigliano's counsel and Cendant's discriminatory payment of legal fees.  See Tr. 1429-30.

**K.    Lay Opinion Testimony.**

1.    The Court erroneously permitted Ms. Davidson to offer lay opinion testimony concerning Mr. Forbes' knowledge of financial matters and Ms. Davidson's comparison of Mr. Forbes' financial acumen to that of her husband.  See, e.g., Tr. 96-97, 147, 165; Docket Nos. 2255, 2385.

2.    The Court erroneously permitted Ms. Davidson to offer lay opinion testimony concerning duties to shareholders.  See Tr. 121, 164-65.

3.    The Court erroneously permitted Mr. Silverman to offer lay opinion testimony concerning Mr. Forbes' knowledge of financial matters.  See, e.g., Tr. 1227-28; Docket Nos. 2255, 2385.

4.    The Court erroneously permitted Mr. Sabatino to offer speculative lay opinion testimony about the reasons he did not disclose accounting irregularities to Mr. Forbes or other CUC directors.  See Tr. 2944-46; Docket Nos. 2255, 2385.

5.    The Court erroneously permitted lay opinion testimony concerning the cumulative financial impact of certain accounting practices at CUC and whether certain accounting practices prior to 1995 were improper.  See Docket Nos. 2255, 2385; see, e.g., Tr. 954, 958, 1576, 1590, 1596-97.

23

**L.    Summation and Rebuttal Summation.**

1.    The government's summation and rebuttal summation arguments were improper and prejudicial for the reasons set forth in Docket No. 2543.

**M.    Jury Instructions.**

1.    The Court's jury instructions, and the Court's rulings denying Mr. Forbes' requests for certain instructions, were erroneous and prejudicial for the reasons set forth in Docket Nos. 1988, 1997, 2451, 2452, 2472, 2538, and 2546.

## **CONCLUSION**

For the foregoing reasons, the Court should vacate Mr. Forbes' convictions and grant a new trial to Mr. Forbes on Counts 1-3 of the indictment pursuant to Fed. R. Crim. P. 33.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:_____
    Brendan V. Sullivan, Jr. (Bar No. ct17115)
    Barry S. Simon  (Bar No. ct24159)

725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

24

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
Cowdery, Ecker & Murphy, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Memorandum of Defendant Walter A.

Forbes in Support of Motion for New Trial to be filed electronically and to be served on

November 30, 2006 to the following via e-mail:

Norman Gross, Esq. (norman.gross@usdoj.gov)
Michael Martinez, Esq. (michael.martinez2@usdoj.gov)
Craig Carpenito, Esq. (craig.carpenito@usdoj.gov)

Barry S. Simon