UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:02CR00264 (AHN) |
| | : | |
| v. | : | December 20, 2006 |
| | : | |
| WALTER A. FORBES | : | |

## GOVERNMENT'S OPPOSITION TO FORBES' MOTION FOR A NEW TRIAL

### INTRODUCTION

In what is almost entirely a rehash of the avalanche of his objections at trial and his claims in pre-trial motions, Forbes moves for a new trial. Counting conservatively, this Court committed no fewer than 35 <u>reversible</u> <u>errors</u> during a two-week trial, according to Forbes's motion. <u>See</u> Section III of Forbes's Memorandum in Support of New Trial ("FM") at 13 ("Each of the grounds set forth below is an independent basis for the grant of a new trial.").[1] Yet the Supreme Court and commentators have observed that an experienced trial court judge is unlikely to have committed more than one or two reversible errors in any given trial. <u>Jones v. Barnes</u>, 463 U.S. 745, 752 (1983) ("Most cases present only one, two, or three significant questions . . . . [I]f you cannot win on a few major points, the others are

---

[1] This does not include the Court's dozens of supposed errors in formulating the jury charge. FM III(M); Docket 2546. Nor does it include Forbes's 10 claims of Government misconduct, FM III, <u>passim</u>, or the additional claims of prosecutorial misconduct during the summation and rebuttal summation that Forbes incorporates by reference to one of his many mistrial motions. FM III(L), <u>citing</u> Docket 2543. Finally, it does not include Forbes's discovery claims. FM II(A)-(G). Taking all of those claims into account, Forbes's claims of reversible error easily number in the hundreds.

not likely to help.")(quoting R. Stern, Appellate Practice in the United States, 266 (1981)).  The dozens of claims of error advanced by Forbes reflect a truly distorted view of the law: one in which this Court must cede to defense counsel its broad discretion to manage discovery and jury selection, make evidentiary rulings, and frame the jury charge, and must grant virtually every defense request, no matter how unreasonable.  Of course, the law does not require this absurd result.

Rather than identifying (or even prioritizing) those claims about which he truly feels aggrieved, Forbes now challenges virtually every adverse ruling he sustained from this Court.  For many of those claims, Forbes has to show that two judges, this Court and Judge Thompson, came to the same erroneous decision.[2] According to Forbes, then, two experienced judges from this district committed reversible error on a massive scale never before seen in the annals of American jurisprudence.  Forbes's "everything but the kitchen sink" approach should be rejected

---

[2] In previously rejecting many of the claims presented in the instant motion, this Court explained that it had "carefully reviewed the parties' briefs and Judge Thompson's written and oral rulings."  Docket 2466 at 1.  This Court added that "[a]s a general matter, . . . Forbes has presented no cogent or compelling reason why this court should deviate from Judge Thompson's carefully considered, legally sound, and correct decisions on these issues."  Id.  This Court also made clear that it would not "rubberstamp" the rulings of Judge Thompson but would instead conduct its own review. 5/5/06 Tr. at 3-4; see 9/12/06 Tr. at 27 (Government's acknowledgment that the Court would conduct an independent review); Tr. 2611 (Court's statement that it had reviewed prior motions, rulings, and transcripts).

based on the volume of claims alone.[3]

Given that Forbes provides little or no argument in support of most of his present claims, he effectively concedes that there is nothing new for this Court to consider with respect to those undeveloped claims. As such, this Court should readily reject each of those claims, which were thoroughly litigated by extensive briefing, and in many cases supplemented by extensive oral argument. Just as the jurors "got it right" when they convicted Forbes on three of the four counts submitted to them, this Court got it right when it rejected the recycled claims catalogued in Forbes's post-trial motions.

## ARGUMENT

### I.    FORBES HAS FAILED TO MEET THE EXACTING STANDARD IN THIS CIRCUIT FOR OBTAINING A NEW TRIAL.

Citing only out-of-circuit cases and a treatise, Forbes understates his burden for obtaining a new trial under Fed. R. Crim. P. 33 based on the "interest of justice." FM 1. As the Second Circuit has explained, "motions for a new trial are disfavored in this Circuit [and] the standard for granting such a motion is strict." United States v. Gambino, 59 F.3d 353, 364 (2d Cir. 1995). Additionally, "[t]he trial court has broad

---

[3] As Justice Jackson observed: "Legal contentions, like the currency, depreciate through over-issue. . . . . [E]xperience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one." Jackson, "Advocacy Before the Supreme Court," 25 Temple L.Q. 115, 119 (1951), quoted in Barnes, 463 U.S. at 752.

discretion to decide Rule 33 motions based upon its evaluation of the proof produced, and its ruling is deferred to on appeal." Id. As shown herein, Forbes has failed to meet this Circuit's exacting standard.

**II. AS THIS COURT AND JUDGE THOMPSON ACCURATELY FOUND, THE GOVERNMENT VASTLY EXCEEDED ITS DISCLOSURE OBLIGATIONS IN THIS CASE; FORBES'S CONTINUED DEMANDS FOR ADDITIONAL, POST-TRIAL DISCOVERY SHOULD BE REJECTED.**

Throughout the six-plus years that this case has been pending, Forbes has repeatedly insisted that the Government has violated its disclosure obligations. E.g., Dockets 40, 327, 1608, 2189, 2192, 2507. Most recently, Forbes moved this Court to compel the Government to disclose various categories of materials and information to which, he claimed, he was entitled under either Brady, Giglio, or Fed. R. Crim. P. 16. Dockets 2189 and 2192. The Government opposed that motion. Docket 2332. By order and opinion dated September 22, 2006, following extensive briefing and oral argument, this Court concluded:

> Based on the voluminous record in this case, including Forbes's prior motions seeking the same documents (from the government as well as the individual witnesses) and asserting the same issues, claims, and arguments; the rulings and order of Judge Thompson as well as this court; and the government's repeated representations that it is aware of and has complied with its disclosure obligations and its continuing duty to turn over all such material in its possession, the court is satisfied that the government has given Forbes all the material exculpatory and impeachment evidence that he is entitled to receive under Rule 16, the Court's Standing Order, Brady, Giglio, and which the court has ruled Forbes may use at trial for impeachment purposes. Indeed, the record reflects that the government has given Forbes, out of an abundance of caution as opposed

-4-

to legal compulsion, far more discovery than a criminal
defendant is entitled to receive.

Docket 2466 at 2 (denying Forbes's motion at Docket 2189).[4]

Forbes's current discovery claims fare no better than those
which preceded them, and should be rejected.  As this Court is
well aware from presiding over the third trial in this case, the
Government turned over a virtual mountain of documents and other
information which Forbes used to attempt to impeach various
Government witnesses.  Additionally, Forbes's highly resourceful
and amply funded lawyers conducted their own thorough
investigation, which disclosed additional information which they
deployed to attempt to impeach the prosecution witnesses.  E.g.
Third Trial Transcript ("Tr.") 2270-2297 (cross-examination of
Cosmo Corigliano regarding the value of his residence in Old
Saybrook); 2390-2406 (cross-examination of Corigliano regarding
the detection of electronic listening devices at CUC's offices).

As an alternative to disclosing information to the defense,
Forbes requests that the Government turn over the information
identified in this motion to the Court for in camera review.
E.g., FM 2.  In this regard, Forbes seeks disclosure of the
Government's internal prosecution memoranda, either to himself or
to the Court.  FM 5-6.

---

[4] This Court "previously rejected similar if not identical
claims and arguments in its ruling on Forbes's motion to obtain,
pursuant to Fed. R. Crim. P. 17(c), the same documents from
individual witnesses, counsel for Cosmo Corigliano and his wife,
the SEC, and Cendant Corp." Id. at 3, n. 2, citing Docket 2409.

In camera review is appropriate when the Government is unsure about whether certain information is subject to disclosure, and seeks guidance from the Court.  United States v. Page, 808 F.2d 723, 730 (10th Cir. 1987).  If the Government concludes in good faith that information is not subject to disclosure, it not need burden the Court with in camera review.  United States v. Carmichael, 232 F.3d 510, 517 (6th Cir. 2000) (denying request for in camera review of alleged Brady material; "because prosecutors are officers of the court, district courts may take them at their word when they inform the court that they have reviewed specified sealed documents and that those documents do not contain material subject to compulsory disclosure under Brady"); United States v. Hernandez, 31 F.3d 354, 361 (6th Cir. 1994) (in the absence of "some indication of misconduct by the government, the district court is not required to conduct an in camera review to verify the government's assertion").

In camera review is particularly unwarranted where, as here, the Government has made substantial disclosure of the same or similar information contained in the non-disclosed documents. United States v. Henke, 222 F.3d 633, 642-643 (9th Cir. 2000) ("defendants did not trigger the district court's obligation to review the privileged notes [of interviews] in camera" where "[t]he government provided the defendants with a substantial amount of information about [the witness at issue] including FBI reports, declarations, and a copy of his plea agreement, but

-6-

invoked the work-product privilege as to its pretrial interview notes" and defendants failed to show that "the notes were used or adopted by the witness"); United States v. Sims, 808 F. Supp. 607, 614 (N.D. Ill. 1992) (rejecting a demand for in camera review of non-disclosed documents, and rejecting "the 'Catch 22' argument that the only way a state can prove its right not to turn over information is to turn over that information") (internal quotation marks omitted).[5]

Here, as this Court found, Docket 2466 at 2, the Government consistently erred on the side of caution and disclosed to the defense all information known to the prosecution team that was arguably discoverable.  Having disclosed to the defense the discoverable information set forth in the Government's internal "prosecution memoranda," the Government is under no obligation to disclose the memoranda themselves.  Such disclosure would compromise core attorney deliberative work-product, to which the defense is not entitled to access, particularly in the current posture, where Forbes is seeking a new trial.  United States v. Pfingst, 490 F.2d 262,  274, n. 14 (2d Cir. 1973); Morris v.

---

[5] Although Judge Thompson directed the Government to disclose for in camera review some of the hand-written notes of prosecutors from the first trial team, he concluded that the notes were not subject to disclosure to the defense.  First Trial Transcript 1051-52, 2853-54, 2865-67, 3194.  Thereafter, having satisfied himself that the Government understood and had complied with its disclosure obligations, Judge Thompson declined to undertake any further in camera review of Government documents on Forbes's behalf.

<u>Ylst</u>, 447 F.3d 735, 742-43 (9th Cir. 2006); <u>Williamson v. Moore</u>,

221 F.3d 1177, 1182-83 (11th Cir. 2000).  Accordingly, the

memoranda need not be reviewed by the Court <u>in</u> <u>camera</u>.

### A.    The Government Presented All Material Information Regarding Henry Silverman's Alleged Bias Against Forbes.[6]

Forbes erroneously contends that he is entitled to "a full

record of Mr. Silverman's bias."  FM 2.[7]  That is demonstrably

not the law.  Although the Government endeavored throughout this

case to disclose to the defense all information known to members

of the prosecution team that could be used to attempt to impeach

Silverman and other prosecution witnesses, the Government was not

required to do so.  "<u>Brady</u> does not . . . require the prosecution

to disclose all exculpatory and impeachment material; it need

disclose only material 'that, if suppressed, would deprive the

_____

[6] The Government requests that, to facilitate any possible
appellate review of any of Forbes's claims regarding the
Government's disclosures regarding Silverman, this Court now
unseal any of the submissions that were filed under seal and any
transcript portions that were placed under seal regarding those
disclosures.  Docket 2523; sealed portion of 10/16/06 transcript.

[7] Not content to receive information known to the
prosecution team or the U.S. Attorney's Office, Forbes demands
information regarding any communication or meeting between
Silverman and/or his representatives and "<u>any</u> <u>agency</u> of the
federal government" regarding the investigation or prosecution of
this matter.  FM 4, FM 4-5 (emphasis added).  Forbes's demand
sweeps much further than the law permits.  Were the prosecution
team required to canvass the employees of every federal agency
about what they knew about this case, "it would condemn the
prosecution of criminal cases to a state of paralysis."  <u>United
States v. Avellino</u>, 136 F.3d 249, 255 (2d Cir. 1998) (internal
quotation marks omitted).

-8-

defendant of a fair trial.'"  United States v. Coppa, 267 F.3d
132, 135 (2d Cir. 2001) (quoting United States v. Bagley, 473
U.S. 667, 675 (1985)).

Undisclosed information is not "material" simply because it
might "help[] the defense" or might "affect[] the outcome of the
trial."  United States v. Agurs, 427 U.S. 97, 109-10 (1976).
Rather, information possessed by the prosecution team must be
disclosed under Brady and its progeny only if there is a
"reasonable probability" that the information would  "affect[]
the outcome of the case," or would "put the whole case in such a
different light as to undermine confidence in the verdict."
Coppa, 267 F.3d at 135 (internal quotation marks omitted).  Here,
the Government turned over, or the defense otherwise had access
to, abundant information which permitted Forbes to launch a
vigorous attack against Silverman at trial regarding his bias
against Forbes.[8]

---

[8] Indeed, Silverman conceded such bias at trial.  Silverman
testified that, even though he had no personal knowledge that
Forbes had been engaged in the fraud, Silverman was very angry at
Forbes, because he had been the CEO of CUC for fifteen years,
when the fraud had occurred.  Tr. 1412.  Silverman also testified
that he: (1) lost approximately one billion dollars as a result
of the fraud, Tr. 1405; (2) was "in a rage" and "very angry" as a
result of the fraud, because he lost his reputation, his
credibility, and a billion dollars, Tr. 1407; (3) "expected
[former CUC officials] to go to jail for what happened at CUC,"
Tr. 1408; (4) personally tracked the criminal investigation of
the fraud closely and told the media about his expectations
regarding possible indictments, Tr. 1409; (5) stated that he
would receive an "emotional lift" when some of the former CUC
officials were sent to jail, Tr. 1410; (6) wanted the wrong-doers
(continued...)

Forbes points to information disclosed by the Government to the defense during trial regarding former U.S. Attorney Robert Cleary.[9]  As the Government explained, however, Cleary did not recall any request by Silverman or his attorneys for the U.S. Attorney's Office to investigate or prosecute Forbes.  Tr. 1824-25.  That a prosecutor met with a potential witness is hardly a basis to assume that impeachment information was disclosed to the prosecutor at that meeting.  Yet Forbes seems to think that every such meeting gives rise to disclosure obligations.  He declines to cite a single case which remotely so holds, relying instead on generalities regarding impeachment.  FM 3-4.

---

[8] (...continued)
identified and punished, Tr. 1413; and (7) looked to the courts as "an instrument of retribution" against those who caused the fraud at CUC and Cendant, Tr. 1416.

Silverman also testified that: (1) his reputation as a business man was "badly hurt" by the fraud, "which was very painful, personally," and "devastating," Tr. 1406; and (2) his anger was "consuming him," he had lost his sense of self-worth, and he was on a "quest for redemption, Tr. 1410-11.  Finally, Silverman testified that a then-sitting United States Senator from New Jersey who was a personal friend of Silverman arranged a meeting between Silverman and the then U.S. Attorney for New Jersey.  Tr. 1414-15.

[9] The Government disclosed this information to the defense on the day after it was received from Cleary by the current members of the prosecution team.  Forbes complains about the timing of this disclosure, FM 3, but declined to call Cleary as a defense witness at trial.  Plainly, what Forbes wants is to complain of a supposed <u>Brady</u>/<u>Giglio</u> violation, and not whatever information Cleary could have provided.  Although Forbes speculates that the Government possesses an email from Cleary to current members of the prosecution team regarding Cleary's recollection of his meeting with Silverman, FM 4, n.2, that speculation is incorrect.

-10-

Forbes's demand that the Government now disclose any information regarding any communications between Silverman and/or his lawyers and the U.S. Attorney's Office is misplaced for an additional, more particular reason.  Forbes had abundant information from which to argue that Silverman was biased against Forbes.  Any additional information regarding Silverman's communications to the U.S. Attorney's Office, which would supposedly be relevant as additional evidence of bias, is immaterial.  United States v. Diaz, 176 F.3d 52, 108 (2d Cir. 1999) (affirming Nevas, J.) (rejecting Giglio claims regarding information that "merely constituted cumulative impeachment material" of a witness whom the defendant "was able to cross-examine . . . extensively about the timing of her decision to cooperate and her reasons for such cooperation"); United States v. Locascio, 6 F.3d, 924, 949-50 (2d Cir. 1993)(rejecting claim of newly discovered but cumulative impeachment material).[10]

**B.    The Government Presented All Brady/giglio Information Regarding Kevin Kearney.**

After receiving hundreds of pages of the hand-written notes of prosecutors, FBI agents, and SEC officials which summarized

---

[10] Forbes erects a straw man argument, pointing to the Government's summation as proof of the Government's supposed belief that it could shield what was otherwise discoverable information from the defense because Silverman was a victim of the charged crimes in this case.  FM 4, n.1.  The Government has never claimed that it can avoid its disclosure obligations merely because information came from a crime victim.   The Government's summation argument to the jury was entirely unrelated to its position before this Court regarding discovery.

their interviews of Kevin Kearney, see Exhibits 2-20 to Docket
2274, Forbes now contends that he was also entitled to the
internal memoranda and other work-product of the prosecution team
which may have discussed the information set forth in those
notes. FM 5-6. Forbes is wrong. Although he is entitled to
material impeachment information that Kearney disclosed to
members of the prosecution team, he is not entitled to "internal
government documents," FM 6, possibly setting forth what members
of the prosecution team thought about that information. As
explained above, the latter are confidential work-product that is
protected against disclosure. Fed. R. Crim. P. 16(a)(2); United
States v. Milikowsky, 896 F. Supp. 1285, 1309 (D. Conn. 1994),
aff'd, 65 F.3d 4 (2d Cir. 1995).

Forbes erroneously contends that the Government has
improperly asserted its work-product privilege to conceal
discoverable information. FM 6. The Government has repeatedly
acknowledged that its work-product privilege protects against
disclosure to the defense the subjective views of members of the
prosecution team regarding relevant information, but not the
information itself. E.g. Docket 2332 at 33. This Court accepted
that distinction in denying Forbes's prior demands for the work-
product of the prosecution team, Docket 2466 at 1-3, and should
do so again in rejecting Forbes's current demands for the

Government's internal memoranda.[11]

Forbes also renews his demand for information about whether any member of the prosecution team orally promised informal immunity to Kearney or his lawyer.  FM 6-7.  The Government has previously represented, and Kearney's lawyer has confirmed, that no such promises were made.  9/20/06 Tr. at 56; Tr. 2915-16. Kearney testified unequivocally that those representations were correct.  Tr. 788.  Based on Kearney's uncontradicted testimony and the Government's representations, this Court properly denied Forbes's request to place before the jury the Government's earlier, mistaken representations that Kearney had received "informal immunity" from the Government.  Tr. 846-47, 3170-72.

   **C.    The Government Has Disclosed All Material Information Regarding Michael Monaco's Third Trial Testimony about His Meeting with Forbes Regarding Anne Pember.**

Forbes demands disclosure of "whether Mr. Monaco was asked at any time between 1998 and 2005 about the subject of 'lobbying' for Ms. Pember or efforts to keep Ms. Pember in her accounting role."  FM 8.  As Forbes acknowledges, id., the Government's lead prosecutor previously responded to a similar inquiry in the negative.  Tr. 858-62.  The Court concluded that the Government's response was sufficient and denied further inquiry by the

-----

   [11] Judge Aterton recently rejected a claim that is similar to that presented by Forbes.  United States v. Calhelha, __ F. Supp. 2d __, 2006 WL 2917574, *14 (D. Conn. Oct. 11, 2006) (denying a defense discovery request after the Government represented that it had turned over all discoverable information, but had withheld, inter alia, some "Government work product").

defense.  Tr. 862.

Forbes ignores the Court's prior ruling and demands a
renewed representation from the Government on this score.  He
provides no reason to revisit this issue.  As the Court has
acknowledged, Docket 2466 at 2, the prosecutors who tried the
second and third trials are fully aware of their on-going
disclosure obligations under <u>Brady</u>, <u>Giglio</u>, and Rule 16.

### D.   The Government Has Provided All Material Information Regarding Cosmo Corigliano's Testimony about Quarterly Earnings Conference Calls Prior to Mid-1997.

Forbes demands that the Government "be required to disclose
whether it asked Mr. Corigliano at any time prior to 2006 whether
CUC conducted quarterly conference calls."  FM 10.  This claim
should be rejected, as Forbes received all pertinent information
before the third trial.  During the second trial, Steven
Kernkraut testified on cross-examination that "if [he] had to
pick a point" when quarterly conference calls began, he would
pick 1995.  Second Trial Transcript ("STTr.") 302.  After the
second trial, the prosecution informed Forbes, in a letter dated
August 24, 2006, that Corigliano did not recall quarterly
conference calls with stock analysts before 1997.  Thus, Forbes
was aware of the discrepancy between Kernkraut's and Corigliano's
recollection on this point well before the start of the third
trial.

During the third trial, Corigliano testified on cross-
examination and redirect examination that he did not remember any

quarterly conference calls before 1997.  Tr. 2028, 2050-51.
Forbes could have called Kernkraut to establish a discrepancy
between Kernkraut's and Corigliano's testimony on this point.[12]
Forbes evidently did not think that establishing this point was
worth the effort, particularly since Forbes himself testified
consistently with Corigliano that CUC did not conduct such
conference calls before 1997.

### E.    The Government Has Provided All Material Information Regarding its Communications with Stuart Bell.

Forbes demands disclosure of "the substance of any
communications" between the Government and Stuart Bell or his
lawyers "concerning the subject of proffers or requests for
proffers."  FM 11.  The prosecution team is aware of no
Brady/Giglio information supplied by Mr. Bell.  Given Forbes's
assertions throughout this case that Bell would supposedly
contradict certain testimony of Corigliano, Forbes evidently has
superior access to his good friend Bell and his self-serving
claims than did the Government.[13]

### F.    The Government Has Provided All Required Information Regarding Cosmo Corigliano's Compliance with His Guilty Plea Agreement.

---

[12] Neither side called Kernkraut in the third trial.

[13] Forbes speculates that the Government offered Bell an
opportunity to be interviewed pursuant to a proffer agreement,
but was told that Bell "had no incriminating information to
supply."  FM 11.  According to Forbes, such a scenario amounts to
Brady/Giglio information.  Id.  Neither Bell nor his counsel have
made any such statements to members of the prosecution team.

Forbes "renews" his demand for "all communications" between
the Government (including the SEC) and Corigliano and/or his
lawyers regarding Corigliano's compliance with his guilty plea
agreement and his "settlement negotiations with the SEC."  FM 12.
Forbes also "renews his request" for documents and information
regarding communications between Corigliano and his lawyers on
one hand, and the SEC on the other.  FM 12.  These demands are
"renewed" because they merely rehash the demands that Forbes
previously made for this precise information before the third
trial.  Docket 2189.  As shown above, following extensive
briefing and argument on this subject, Dockets 2411, 2430, this
Court denied that motion.  Docket 2466 at 1-3 (denying Forbes's
motion at Docket 2189).  Forbes provides no basis for this Court
to revisit that ruling.

**III. FORBES'S ADDITIONAL REASONS FOR A NEW TRIAL ARE MERITLESS, CONSIDERED SINGULARLY OR JOINTLY.**

**A.    This Court Properly Conducted Jury Selection.**

1.  This Court properly declined Forbes's request for
individual voir dire.  This Court has ample authority to conduct
group, as opposed to individual voir dire, and Forbes fails to
explain in his motion how this Court abused its discretion.
United States v. Perez-Gonzalez, 445 F.3d 39, 46 (1st Cir. 2006);
United States v. Bakker, 925 F.2d 728, 734 (4th Cir. 1991).  By
conducting collective voir dire and taking other appropriate
measures, this Court reduced the time for jury selection from the

eleven days consumed during the second trial (September 15 through October 3, 2005) to a single day during the third trial.

2.  This Court did not abuse its broad discretion in denying Forbes's challenges for cause to Louis Barney (No. 212), David Cunningham (No. 272), Madeline Isbrandtsen (No. 574), Laurie Kalina (No. 363), and Anne Pucko (No. 378).  United States v. Torres, 128 F.3d 38, 44 (2d Cir. 1997)("Given the special capacity of the trial judge to evaluate actual bias on the part of prospective jurors, that judge's determination in this regard is accorded great deference, since an appellate court [cannot] easily second-guess the conclusions of the decision-maker who heard and observed the witnesses.") (internal quotation marks and citation omitted).  Forbes remarkably contends that, not one or two, but five of the jurors should have been excused for cause. The Court asked all the venire members, including these five jurors, about their ability to be fair and impartial.  None of these five jurors stated that he or she could not be.  Tr. 122-23.  Forbes has failed to point to anything in their questionnaires that repudiates the jurors' representations. United States v. Rubin, 37 F.3d 49, 54 (2d Cir. 1994) (rejecting a similar claim because the defendant "has not made the requisite showing that the jury eventually empaneled was not impartial").

3.  The Court did not abuse its "extremely broad discretion," United States v. Lawes, 292 F.3d 123, 128 (2d Cir. 2002), in denying Forbes's request for additional voir dire

questions regarding the venire persons's beliefs about whether a
CEO should know about accounting fraud conducted by his
subordinates.  Id. at 129 ("[The Second Circuit] appears never to
have reversed a conviction for the failure to ask a particular
question on the voir dire of prospective jurors.").  This Court
instructed the jury that it could not convict Forbes based on a
respondeat theory of liability.  Tr. 3656-57.  Lawes, 292 F.3d at
131 (refusal to voir dire jurors about possible bias was not an
abuse of discretion where the district court properly charged the
jury in regard to assessing credibility); see also United States
v. Barnes, 604 F.2d 121, 137-40 (2d Cir. 1979).

     4.  The Court did not commit clear error in finding that the
prosecutors' proffered, gender-neutral reasons for exercising
peremptory strikes against several female venire persons were
sincere and not pre-textual.  There is nothing about the nature
of charges in this case, or the gender of the witnesses or the
lawyers, which would suggest that the Government had any motive
to intentionally exclude women from the jury.  Compare J.E.B. v.
Alabama, 511 U.S. 127, 129 (1994) (petitioner had been sued for
paternity and child support, the respondent (the State of
Alabama) used 9 of 10 peremptory strikes on males, and the
petitioner was tried by an all-female jury).

     This Court credited the prosecutors' explanations.  That
finding was based on the Court's first-hand assessment of the
explanations when they were offered, the logic of those

explanations, and the Court's unique ability, sitting as the finder of fact, to determine whether those explanations were consistent with the Court's own assessment of the voir dire. Brown v. Kelly, 973 F.2d 116, 120 (2d Cir. 1992) (trial court's "decision on the factual question of discriminatory animus, largely based on determinations of credibility, is ordinarily given great deference"), citing United States v. Ruiz, 894 F.2d 501, 506 (2d Cir. 1990), and United States v. Biaggi, 853 F.2d 89, 96 (2d Cir. 1988).  Forbes has utterly failed to prove that this Court committed clear error in this regard.[14]

-----

[14] Forbes contends that this Court can consider the Government's peremptory challenges from the first two trials in this case, which resulted in deadlocks on the charges against Forbes, in deciding whether the prosecutors' gender-neutral explanations for their peremptory challenges during the third trial were pre-textual.  FM 14.  This Court should decline that invitation for several reasons.  First, the prosecutors during the third trial had no involvement in the first trial.  Thus, the reasons why the first trial team prosecutors exercised their peremptory challenges should not be attributed to the current trial team.

Second, Forbes did not even raise a Batson/J.E.B. challenge to the Government's exercise of peremptory challenges during the first two trials, demonstrating Forbes's contemporaneous assessment that those challenges were permissible.  Additionally, Forbes's failure to raise such a challenge during the first and second trials prevented the Government from making a contemporaneous record regarding the gender composition of the venires in those prior trials, and regarding the reasons for the strikes.  Such a record could have refuted any claim that there was a discriminatory pattern of strikes in those prior trials.

Third, even assuming that the Government's peremptory challenges during the prior trials showed a pattern of strikes against female venire persons, this Court has already determined that there was a prima facie case of discriminatory strikes
(continued...)

**B.    This Court Properly Denied Forbes's Various Requests Regarding Stuart Bell.**

1.   After extensive briefing and oral argument, this Court properly denied Forbes's request to immunize Stuart Bell, a proposed defense witness, or suffer the exclusion of all evidence regarding Bell's involvement in the charged fraud.  Docket 2595 ("ORDER denying [Docket] 2227 Motion for an Order Requiring the Government to Confer Use Immunity on Stuart Bell . . . as noted in the Court's 9/22/2006 Ruling on Pretrial Motions (see doc. # 2466 at n.1) and for the reasons stated on the record on October 19, 2006."); Tr. 1478-83.[15]

2.   This Court properly denied Forbes's request for a missing witness instruction regarding Bell.  Docket 2595 (denying

---

[14] (...continued)
against female venire persons during the third trial, and required the Government to set forth its reasons for those strikes.  Evidence of a pattern of strikes against female venire persons during the first and second trials does not undermine the Court's credibility findings during the third trial that the prosecutors's proffered explanations were not pre-textual.

[15] Although this Court unsealed Forbes's pre-trial motions seeking an order to compel the Government to confer immunity on Bell, the Court, apparently inadvertently, did not unseal the Government's opposition to Forbes's motions regarding Bell. Docket 2596 (directing the Clerk to unseal Documents 2227, 2433, and 2434).

The Government requests that this Court unseal the Government's Opposition to Forbes's motion at Docket 2227, filed on April 13, 2006.  See Docket 2241 (Government's Motion to Seal Its Opposition to Walter A. Forbes Third Trial Motion No. 3); Docket 2244, ("Notice of Manual Filing").  The Government incorporates by reference the arguments set forth in that opposition.

Forbes's requests regarding Bell); <u>see</u> <u>also</u> Docket 2372
(Government's Proposed Supplemental Requests to Charge).

3.  This Court did not preclude Forbes from arguing that the
Government's decision not to call Bell as a witness should give
rise to an inference that Bell would have exonerated Forbes.
Rather, Forbes elected not to make such an argument, in response
to the Court's proper ruling that it would give an "equally
unavailable" instruction in the event of such an argument.  Tr.
3366-83, 3406; email from the Court to counsel dated October 25,
2006, 5:29 p.m.[16]

4.  This Court properly rejected Forbes's objections to the
Government's summation and rebuttal arguments concerning the pre-
1995 accounting at CUC.  Docket 2551.  The Government presented
substantial evidence at trial of the pre-1995 fraud.  Indeed,
Casper Sabatino, called as a defense witness during the third
trial, confirmed that he was engaged in fraudulent accounting at
CUC during that period.  Tr. 2935.

   **C.    As this Court and Judge Thompson Properly Concluded,
           Evidence of Forbes's Transfer of Assets to His Wife and
           Children After The Public Disclosure of Potential
           Accounting Irregularities at CUC, Admittedly to Place
           Those Assets Beyond the Reach of Persons Seeking
           Compensation for the Charged Fraud in This Case, Was
           Properly Admitted as Proof of Forbes's Consciousness of
           Guilt.**

_____

[16] That email, from Brian Lamacchia, stated:  "If the
defense raises Stuart Bell's absence as a witness at this trial
during closing argument, then the court will give the jury
Instruction 6-7, entitled 'Uncalled Witness Equally Available,'
from Sand, et al., Modern Federal Jury Instructions--Criminal."

1 and 2.  During the second trial, Forbes testified falsely that he had obtained the advice of his attorney, Gregory Danilow, that Forbes could transfer, without any adverse legal consequences, millions of dollars of real property to his wife and children after the public disclosure of potential accounting irregularities in the former CUC businesses.  Danilow testified that Forbes's testimony on that score was incorrect.  STTr. 2443-46.

This Court properly ruled that Forbes's asset transfers tended to prove his consciousness of guilt.  See State v. Kincaid, 55 S.E. 647, 647 (N.C. 1906); see also United States v. Ross, 123 F.3d 1181, 1184 (9th Cir. 1997) (rejecting sufficiency challenge to conviction because, in addition to other evidence of "consciousness of guilt" and "fear of apprehension," defendant "transferred all of his property to his wife within two weeks of the" crime); United States v. El-Silimy, 228 F.R.D. 52, 59-60 (D. Me. 2005) (denying motion to strike allegations in the indictment that the defendant moved a substantial "amount of money" from one account to another "shortly after significant investigative actions in this case" because, inter alia, "these allegations provide circumstantial evidence of . . . consciousness of guilt").

This Court explained that "these property transfers are circumstantial evidence that is probative of whether Forbes had a consciousness of guilt, especially in light of the temporal

relationship between [the transfers] and the other events that were occurring at or about the same time. . . .  Moreover . . . . the financial risk Forbes took by divesting himself of millions of dollars worth of property tends to prove that he sought to protect the property from claims of persons who suffered pecuniary loss from the fraud." Docket 2466 at 7. <u>See also</u> Docket 2478 (granting Government's Pre-Trial motion in limine) at 3-4 (admitting evidence of Forbes's second trial testimony regarding his "transfer of real estate assets to his wife and daughters, the total value of the assets transferred, and his claim that his attorney, Greg Danilow, told him the transfers were lawful"); Docket 2259 (Government's Pre-Trial Motion in Limine) at 16-20, and Tr. 317 (denying eve-of-trial request for reconsideration of Docket 2466).

Evidence that Forbes lied on the witness stand regarding his conversations with Danilow about the asset transfers further established his consciousness of guilt.  See <u>United States v. Strother</u>, 49 F.3d 869, 877 (2d Cir. 1995); <u>United States v. Rucker</u>, 586 F.2d 899, 904 (2d Cir. 1978).  This Court properly admitted that evidence as well.  Docket 2466 at 5-8 (denying Forbes's motion at Docket 2185); <u>see</u> Docket 2263 (Govt. Opp. to Docket 2185); Tr. 586-87 (denying Forbes's eve-of-trial motion for reconsideration of this Court's ruling regarding the

admissibility of Danilow's testimony).[17]

3.  Because the Court properly admitted, during the
Government's case-in-chief, evidence regarding Forbes's asset
transfers to prove his consciousness of guilt, the Government's
references to that evidence during summation were entirely
proper.  See Frazier v. Cupp, 394 U.S. 731, 737 (1969).
Accordingly, this Court properly overruled Forbes's objections to
those portions of the Government's summation.  Docket 2551
(denying Forbes's mistrial motion at Docket 2543); see also
Docket 2547 (Govt. Opp. to Docket 2543 at 1, ¶ K-1).

**D.    This Court Properly Denied Forbes's Efforts to Offer
        into Evidence the Government's Submissions and Oral
        Statements as Government "Admissions."**

1.  This Court did not abuse its discretion by excluding
various written submissions filed by the Government in this case
regarding proposed jury instructions concerning Kevin Kearney's
alleged receipt of informal immunity.[18]  Docket No. 2477 at 12-13
(denying Forbes's motion at Docket 2441); see also Docket 2454

---

[17] Like this Court, Judge Thompson properly admitted
Danilow's testimony that he warned Forbes about the adverse
consequences of making the asset transfers after the public
disclosure of potential accounting regularities at the former
CUC.  STTr. 2443-46.

[18] Forbes erroneously characterizes the Government's written
submissions regarding proposed jury instructions as "pleadings."
FM at D.1 and D.2.  Technically, a written submission regarding
proposed jury instructions is not a "pleading" in a criminal
case.  Cf. Wright & Miller, Federal Practice and Procedure: Civil
3d, § 1183, n. 13 (2004) (for purposes of Fed. R. Civ. P. 7(a), a
brief is not a pleading).

(Govt. Opp. to Docket 2441). As this Court explained,

> [O]ut-of-court statements of government attorneys
> contained in letters written by the government to
> Forbes setting forth summaries of what certain
> witnesses said during their interviews with the
> government are not admissible as government admissions.
> . . . The statements in those letters are hearsay and
> are not admissions of a party opponent under Fed. R.
> Evid. 801(d)(2) . . . .  Moreover, because a witness
> cannot be impeached by a summary of his prior statement
> unless the witness adopts the summary or it is a
> verbatim transcript of the witness's statement, the
> summaries contained in the government's letters are not
> admissible as the witnesses' prior inconsistent
> statements.  See United States v. Almonte, 956 F.2d 27,
> 29 (2d Cir. 1992).

Docket 2477 at 12-13.

2.  This Court properly precluded evidence regarding oral
proffers made by the Government during the first trial and an
excerpt from a submission concerning the Government's position
with respect to Forbes's identity as the person who instructed
Amy Lipton to delete certain information from CUC's April 9, 1997
Board Minutes.  Docket 2537 ("Ruling on Forbes's  Request to
Admit Into Evidence AUSA John Carney's Statements in a Previous
Trial Regarding Cosmo Corigliano's Possible Testimony").  As this
Court there explained, "Carney's statements were not the
equivalent of testimonial statements of the government, and there
is no indication that they were the verbatim statements of
Corigliano."  Id. at 2-3; see also Tr. 3172 (excluding a portion
of one of the Government's written submissions).  Corigliano
testified during the third trial that Forbes was the person who
instructed Lipton to delete the troublesome language from the

-25-

minutes.  Tr. 1654.  If Forbes wanted to impeach that testimony
by reference to a statement made during the first trial by former
AUSA John Carney, Forbes had Carney under subpoena and could have
called him as a witness, but declined to do so.  Tr. 2917-22.

3.  The Court properly excluded from evidence as admissions
of the Government the letters, memoranda, or other non-verbatim
summaries of interviews of persons who testified as trial
witnesses, none of which were adopted by those witnesses.  United
States v. Almonte, 956 F.2d 27, 29-30 (2d Cir. 1992).  The Giglio
letters were "'out-of-court statements of a government agent made
in the course of the exercise of his authority and within the
scope of that authority.'"  United States v. Yildiz, 355 F.3d 80,
81 (2d Cir. 2004) (per curiam) (quoting United States v. Santos,
372 F.2d 177, 180 (2d Cir. 1967)).  Accordingly, the letters "are
not admissible in a criminal trial . . . as admissions by the
agent of a party opponent," Yildiz, 355 F.3d at 82, and "are not
admissible against the Government as evidentiary proof of the
matter therein stated," Santos, 372 F.2d at 181.  Docket 2476 at
6 (denying Forbes's motion at Docket 2274); see also Docket 2346
(Govt. Opp. to Docket 2274).  Forbes was permitted to examine
under oath, outside the presence of the jury, several persons to
whom prior statements were made by various prosecution witnesses.
E.g. Tr. 2618-96.  Forbes then called some of those persons as
defense witnesses before the jury at trial.  No more is

required.[19]

### E.    This Court Properly Admitted Evidence of the $14 Billion in Shareholder Loss.

1.    This Court properly admitted evidence and argument regarding the decline in Cendant's stock price on or after April 15, 1998 and the resultant shareholder losses.  This "evidence is highly probative and relevant to the issue of materiality." Docket 2476 at 12 (denying Forbes's motion at Docket 2266).[20] See also Docket 2365 (Govt. Opp. to Docket 2266).  This Court further and properly concluded that evidence of shareholder loss and stock price decline was "relevant to counter Forbes's claim that CUC was a good company with excellent cash flow that was never on the verge of bankruptcy -- in the government's words, his 'no harm no foul' defense."  Docket 2476 at 12.

Nevertheless, this Court instructed the jury that "[y]ou may not consider this evidence . . . at all with respect to the question of whether the defendant was a knowing and willful participant in the alleged conspiracy or whether the defendant

---

[19] Forbes cites United States v. Wallach, 935 F.2d 445 (2d Cir. 1991), but that case has no application here.  The Government does not believe, as did the prosecutors in Wallach, that any prosecution witness here committed perjury, much less committed perjury known to the prosecution team.  Nor did the Government here prevent Forbes from calling witnesses who would supposedly testify about the prior inconsistent statements of prosecution witnesses.

[20] Forbes expressly declined to stipulate that the element of materiality had been satisfied as to any of the charges in the indictment.  Even if he had, the Government was entitled to prove that element.  Docket No. 2365 at 8-16.

knowingly and willfully engaged in any wrongdoing." Tr. 3750. Because Forbes's primary defense was that Corigliano had kept Forbes in the dark about the fraud, and because the jury was forbidden by the limiting instruction from considering evidence of the loss amount to assess that defense, the challenged evidence posed little if any risk of prejudice.

2-4.  Because evidence of shareholder losses was properly admitted, the Government's references to those losses were permissible.  See Frazier v. Cupp, 394 U.S. at 737.  Accordingly, this Court properly denied Forbes's mistrial motion regarding the Government's opening statement and his request for a curative instruction.  Docket 2551; see also Docket 2547 at 12, ¶ M2.

5-6.  The Court properly overruled Forbes's objection to and mistrial motion based on Michael Monaco's testimony regarding $14 billion in shareholder losses.  Monaco did not need to be an expert in quantifying shareholder losses in order to offer this testimony.  His testimony was based on a simple arithmetic calculation, multiplying the number of outstanding shares of Cendant stock by the loss in price per share to obtain the total drop in market capitalization.  His testimony therefore was not based on specialized knowledge, but on knowledge available to a lay person.  See United States v. Hamaker, 455 F.3d 1316, 1331-1332 (11th Cir. 2006)(affirming admission of lay opinion testimony under Fed. R. Evid. 701 of a witness who "simply added and subtracted numbers from a long catalogue of [] records, and

-28-

then compared those numbers in a straightforward fashion";
although the witness's "expertise . . . made him more efficient
at reviewing [business] records, his review itself was within the
capacity of any reasonable lay person").

There was no dispute in this case that the value of all
outstanding Cendant shares lost $14 billion on the day after the
accounting irregularities at the former CUC were publicly
announced.  Docket 2365 at 2-3.  Even assuming that some factor
other than Cendant's highly publicized announcement had any
measurable impact on the precipitous drop on Cendant's share
price -- and Forbes points to none -- the jury could reasonably
infer from the proximity of the announcement and the immediate
and precipitous drop in the share price that the fraud caused
most, if not all of the $14 billion loss identified by Monaco.

7.  Based on Monaco's properly admitted testimony, and the
undisputed evidence that the value of Cendant's outstanding
shares lost $14 billion on the first day after the fraud was
publicly disclosed, the Government had a good faith basis to
cross-examine Forbes regarding the fact of that loss.  See United
States v. Holt, 817 F.2d 1264, 1274 (7th Cir. 1987).

8-9.  Forbes compares apples and oranges by faulting the
Government for arguing that the fraud caused a $14 billion loss
even though Brian Heckler testified that the fraud caused CUC's
and Cendant's pre-tax income to be overstated by at least $252
million.  Tr. 1533-37.  The $14 billion in shareholder losses and

-29-

the $252 million in overstated income are distinct facts.
Forbes's observation that Heckler's testimony addressed only the
$252 million in overstated income does not undermine the
undisputed evidence of the $14 billion in shareholder losses.
The Government was entitled to comment on that undisputed
evidence.  See Frazier v. Cupp, 394 at 737.  Accordingly, this
Court properly denied Forbes's mistrial motion directed to those
comments.

**F.    This Court Properly Precluded Forbes from Reading an
       Excerpt of the First Trial Testimony of a Witness Whom
       Forbes Could Have Called During the Third Trial.**

1.  This Court properly precluded defendant Walter Forbes
from reading an excerpt from the first trial testimony of Scott
Forbes, because Walter Forbes could have arranged for Scott
Forbes to testify during the third trial through the exercise of
reasonable diligence.  Tr. 2924-25; Docket No. 2529 (Government's
Response Addressing Certain Evidentiary Matters).

**G.    This Court Did Not Improperly Restrict Forbes's Cross-
       examination of Cosmo Corigliano.**

1-2.  This Court, like Judge Thompson, permitted extremely
wide-ranging cross-examination of Cosmo Corigliano.  Even though
Corigliano testified for only approximately 268 transcript pages
on direct and redirect examination (Tr. 1565-1798, 1828-31, 2440-
72), he testified for more than 500 transcript pages on cross-
examination and recross-examination, (Tr. 1831-2068, 2125-2240,
2262-2305, 2313-53, 2373-2439, 2473-74).  This Court has broad

discretion in setting the boundaries of defense cross-
examination, so long as the defendant has an opportunity to
establish a basis to challenge the credibility of the witness.
United States v. Crowley, 318 F.3d 401, 417 (2d Cir. 2003);
United States v. Salameh, 152 F.3d 88, 131 (2d Cir. 1998); United
States v. Concepcion, 983 F.2d 369, 391 (2d Cir. 1992).  This
Court properly exercised its discretion in setting minor limits
on Forbes's cross-examination of Corigliano.  Docket 2466, 10-11
(denying Forbes's motion at Docket 2273); see also Docket 2360
(Govt. Opp. to Docket 2273).

        3.   This Court denied Forbes's motion to call a witness who
was identified to the Court (but not the Government) in a sealed
submission.  Docket 2510 (sealed ruling denying Docket 2483).  As
Forbes has not asked the Court to unseal his submission or the
ruling, the Government cannot further respond to this claim.  The
Government requests that Forbes's submission and this Court's
ruling now be unsealed.

        4.   In his opening statement, Forbes's lawyer vigorously
attacked Corigliano's credibility.  Tr. 58-60, 64-70.  Therefore,
this Court properly permitted Corigliano to testify about the
truth-telling provisions of his guilty plea agreement.  Docket
2466 at 3-5 (denying Forbes's motion at Docket 2190; see Docket
2262 (Govt. Opp. to Docket 2190).  This Court ruled that Forbes's
motion to preclude testimony about the truth-telling provisions
was "based on a self-created fiction" in which "Forbes is the

only one who believes that Corigliano breached his plea agreement and testified falsely." Docket 2466 at 4. This Court explained that Forbes's request was "contrary to settled law in this Circuit," and suffered from "the total absence of factual support." Id.

5. This Court properly rejected Forbes's contentions that Corigliano committed perjury and the Government knew that the testimony was perjured. Id. Given the opportunity to refine their cross-examination of Corigliano during the first two trials, Forbes's lawyers again threw the proverbial kitchen sink at Corigliano on cross-examination during the third trial, then demanded during summation that the jury disbelieve Corigliano's testimony. Tr. 3475-83. The jury declined the invitation. The Government did not violate due process because prosecutors in this case agreed with the jurors and this Court, and disagreed with defense counsel that Corigliano perjured himself at trial.

6. This Court properly exercised its discretion under Fed. R. Evid. 403 by excluding irrelevant and misleading evidence that the two prior juries in this case had failed to reach a verdict as to Forbes. Dockets 2495, 2505 (granting in part Forbes's motion to refer to the fact of the prior trials in this case, but denying Forbes's request to refer to the verdicts in those cases). See United States v. Wilkerson, 361 F.3d 717, 734 (2d Cir. 2004)("it is well within the discretion of the trial judge to disallow any testimony as to the outcome of the prior trial,

where the information would be prejudicial"); <u>United States v.</u>
<u>Giovanelli</u>, 945 F.2d 479, 488-89 (2d Cir. 1991) (considering it
"prudent" to instruct a jury "not to speculate about the outcome
of prior trials," and to permit "counsel to refer to the trials
but not to their outcomes").  The outcomes of the first two
trials had no bearing on Corigliano's alleged motive to testify
falsely against Forbes, as there is no evidence that the
Government would seek a lower sentence for Corigliano merely
because two previous juries had failed to reach a verdict.

7.  This Court, like Judge Thompson before it, properly
exercised its discretion by permitting the Government to elicit
testimony from Corigliano that he understood that this Court
would sentence Corigliano for the crimes to which he pleaded
guilty in this case.  Docket 2477 at 11-12 (denying Forbes's
motion at Docket 2442); <u>see</u> <u>also</u> Docket 2445 (Govt. Opp. to
Docket 2442).  As this Court explained, <u>citing</u> <u>United States v.</u>
<u>Miller</u>, 116 F.3d 641 682-83 (2d Cir. 1997):

> [E]vidence that the cooperating witnesses know that
> their sentences will be determined by the same judge
> who actually hears their testimony is relevant and
> admissible to establish a motive for the witnesses to
> testify truthfully.  What is at issue is what the
> witness understands about the sentencing process, not
> what the judge decides about a witness's credibility.

Docket 2477 at 11.

8.  This Court, like Judge Thompson before it, properly
rejected Forbes's contention that the crime/fraud exception to
the attorney-client privilege required disclosure of Corigliano's

confidential communications with his lawyers.  Docket 2466 at 11

(denying Forbes's motion at Docket 2273); Docket 2360 (Govt. Opp.

to Docket 2273); Tr. 2102 (adhering to prior ruling "that Forbes

has not made the required preliminary showing of probable cause

to warrant further inquiry as to the crime-fraud exception").

**H.  This Court Properly Rejected Forbes's Contentions That the Government Elicited Perjured Testimony from Kevin Kearney, Knowing That it Was False.**

1.  This Court properly rejected Forbes's contention that

the Government elicited testimony from Kevin Kearney which the

Government knew or should have known was false.  Docket 2476 at

5-6 (denying Forbes's motion at Docket 2274); see also Docket

2346 (Govt. Opp. to 2274); Docket 2519 (denying Forbes's motion

at Docket 2507); Docket 2511 (Govt. Opp. to Docket 2507).

**I.  This Court Properly Rejected Forbes's Challenges to Testimony Regarding E&Y's Role as CUC's Independent Outside Auditor During the Fraud, and the Conduct of Certain E&Y Employees That Related to the Fraud.**

1.  Forbes claimed that he reasonably relied on the fact

that Ernst & Young ("E&Y"), CUC's independent outside auditing

company, had consistently issued "clean audit opinions"

throughout the fraud period.  E.g., Tr. 57 (Forbes's opening

statement).  For that reason, this Court properly overruled

Forbes's objection to the admission of GX 11007.  Docket 2477 at

4-6 (denying Forbes's motion at Docket 2250); see also Docket

2356 (Govt. Opp. to Docket 2250).  As this Court explained:

> [T]he government may properly offer GX 11007 to show
> that even though E&Y auditors were extremely frustrated

by the co-conspirators' failures to timely provide
complete and truthful information, E&Y issued clean
audit opinions quarter after quarter.  Such evidence
tends to explain Forbes's motive to lobby Cendant CEO
Silverman and CFO Monaco to retain E&Y as the auditor
for the former CUC's divisions after the merger.  The
exhibit is also relevant to rebut a central theme of
Forbes's defense -- that he relied in good faith on
E&Y's clean audit opinions and that, if the
conspirators were able to conceal the fraud from E&Y,
the fraud could also have been concealed from him.

Docket 2477 at 5.

2.  This Court properly overruled Forbes's objection to

Pember's testimony regarding her conversations with E&Y officials

and employees, which demonstrated that those persons were

suspicious of the financial information provided to E&Y by Pember

and others in connection with E&Y's audit of CUC.  Docket 2477 at

6-7 (denying Forbes's motion at Docket 2249); see also Docket

2362 (Govt. Opp. to Docket 2249).  This Court properly rejected

Forbes's contention that the evidence amounted to a constructive

amendment of the indictment.  Docket 2477 at 7.

3.  This Court properly overruled Forbes's objection to the

testimony of two of Forbes's co-conspirators, Pember and

Corigliano, regarding statements that another co-conspirator,

Kirk Shelton, made about E&Y partner Marc Rabinowitz during the

course and in furtherance of the charged conspiracy.  Docket 2477

at 7-8 (denying Forbes's motion at Docket 2251); see also Docket

2366 (Govt. Opp. to Docket 2251).  Shelton's remarks were

"statements of a co-conspirator in furtherance of the

conspiracy," were "not just idle chatter," and were "admissible

not to prove the truth of the matters asserted, but to show the effect they had on Pember."  Docket No. 2477 at 8.  This Court properly rejected Forbes's contention that this evidence constructively amended the indictment.  Id.

> **J.   This Court Properly Restricted Evidence That Was Not Relevant to Forbes's Attempted Impeachment of Henry Silverman.**

1.  This Court properly exercised its discretion by precluding Forbes from presenting the testimony of Thomas Puccio, one of the lawyers for Kirk Shelton, regarding a conversation that Puccio allegedly had with attorney Herbert Stern.  Tr. 2581-87; Docket 2534 (denying in part and granting in part Forbes's motion at Docket 2509); see also Dockets 2523, 2524, 2526 (Govt. Opp. and Responses to Docket 2509).

2.  This Court properly precluded Forbes from presenting the testimony of Martin Auerbach and Shelton regarding statements allegedly made by Henry Silverman to attorney Steven Kaufman. Id.  This Court permitted Forbes to elicit testimony from Kaufman that Silverman attempted to persuade Kaufman to enlist Shelton to testify against Forbes.  Tr. 2583-84, 2587.  Kaufman testified outside the presence of the jury, and denied having any conversations with Silverman which were inconsistent with Silverman's trial testimony in this case.  Tr. 2696-2701.  This Court properly overruled Forbes's request to adduce testimony that would have supposedly impeached Kaufman, but not Silverman, especially where Kaufman was never called to testify as a witness

before the jury.  Docket 2534 (denying in part and granting in part Forbes's motion at Docket 2509); <u>see also</u> Dockets 2523, 2424, 2426 (Govt. Opp. and Responses to Docket 2509).

3.  This Court properly excluded cross-examination of Silverman concerning the amount of legal fees that Cendant paid on behalf of Corigliano.  <u>See</u> Tr. 1429-30.

**K.    This Court Properly Overruled Forbes's Meritless Lay Opinion Objections.**

1, 3.  The Court properly overruled Forbes's objection that Jan Davidson's and Henry Silverman's testimony regarding Forbes's knowledge of financial matters constituted inadmissible "lay opinion testimony." <u>E.g.</u>, Tr. 96-97.  Both witnesses had ample opportunity to discuss sophisticated financial matters with Forbes, and could properly testify about Forbes's apparent understanding of those matters.

2.  The Court properly exercised its discretion by overruling Forbes's objection to Jan Davidson's testimony concerning her own understanding that she had an "obligation to serve our shareholders" and to "increase their investment."  Tr. 121, 165-66.  In response to that objection, this Court stated, in the jury's presence, that Davidson was "talking about herself. She's not rendering any opinions."  Tr. 121.  Accordingly, the jury could not have construed the challenged testimony as an improper lay opinion about a matter requiring scientific, technical, or specialized knowledge.  A witness's testimony about

her own state of mind is not improper "opinion." See United States v. Lizardo, 445 F.3d 73, 83 (1st Cir. 2006) (witness properly testified about his subjective interpretation of a conversation in which he participated, which interpretation was "rationally based on his perception and is helpful . . . to the determination of a fact in issue"); Bennett v. Pippin, 74 F.3d 578, 589 (5th Cir. 1996) (witness was competent to testify about her own state of mind).

4.   This Court properly overruled Forbes's objection to Casper Sabatino's testimony about his own subjective reasons for not disclosing the fraud to Forbes or other CUC directors. Sabatino's testimony about his own thought processes is not improper "lay opinion," as it is a matter about which he alone has first-hand knowledge.  See Lizardo, supra; Bennett, supra.

5.   While this Court granted Forbes's motion to preclude "improper lay opinion" testimony from the cooperating co-conspirators such as Corigliano, Pember, and Sabatino, and other conspirators such as Kearney, this Court properly overruled Forbes's "lay opinion" objections to the factual testimony of Forbes's coconspirators about "how they intended to and did 'cook the books' for the specific purpose of inflating the publicly reported results so the price of the stock would go up."  Docket 2476 at 9-12 (granting in part Forbes's motion at Docket 2255); see also Docket 2351 (Govt. Opp. to Docket 2255).

**L.    This Court Properly Overruled Forbes's Objections to the Government's Initial and Rebuttal Summations.**

1.    This Court did not abuse its discretion by overruling Forbes's blunderbuss objections to the Government's summation and rebuttal.  Docket 2551 (denying Forbes's motion at Docket 2543); <u>see also</u> Docket No. 2547 (Govt. Opp. to Docket 2543).

**M.    This Court Properly Denied Forbes's Requests for Unbalanced, Defense-Favoring Jury Instructions.**

1.    This Court properly exercised its discretion by "denying Forbes's request for certain instructions."  <u>See</u> Docket 2374.

<u>**CONCLUSION**</u>

For these reasons, the Government respectfully requests that Forbes's Post-Trial Motions be Denied.

                    Respectfully submitted,

                    CHRISTOPHER J. CHRISTIE
                    Special Attorney
                    U.S. Department of Justice


              By:  Norman Gross/s

                    NORMAN GROSS
                    Federal Bar Number 24933
                    MICHAEL MARTINEZ
                    Federal Bar Number phv0243
                    CRAIG CARPENITO
                    Federal Bar Number phv0244
                    MARK E. COYNE
                    Federal Bar Number phv01079
                    Special Attorneys
                    U.S. Department of Justice

Camden, New Jersey
Date: December 20, 2006

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on this day I caused a copy of the Government's Opposition to Forbes's Motion For A New Trial to be served by email on:

Barry S. Simon, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005-5901
(202) 434-5005
bsimon@wc.com




      Norman Gross/s
NORMAN GROSS

Dated: December 20, 2006
       Camden, NJ