# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

FOUR TIMES SQUARE

NEW YORK 10036-6522

TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
(212) 735-2570
DIRECT FAX
(917) 777-2570
EMAIL ADDRESS
SKADET@SKADDEN.COM

FIRM/AFFILIATE OFFICES
-----
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
-----
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

December 5, 2006

Michael Martinez, Esq.
Assistant United States Attorney
Peter W. Rodino Federal Building
970 Broad Street, Suite 700
Newark, New Jersey 07102

Re:   **United States v. Walter A. Forbes**
      **No: 3:02CR0264 (AHN) (D. Conn.)**

Dear Mr. Martinez:

We represent Cendant Corporation, now known as Avis Budget Group, Inc. ("Cendant" or the "Company"). We write to set forth the legal and factual basis on which the Company believes that it is entitled to restitution from Walter A. Forbes, its former Chairman, for the enormous financial losses Cendant has suffered as a result of the crimes for which Forbes was convicted of on October 31, 2006.

## Facts Relevant to Restitution Analysis

To date, Cendant has been forced to spend over $3 billion as a result of the criminal misconduct of Mr. Forbes and others. Cendant spent approximately $20 million in professional fees (legal and accounting) on an internal investigation by the Audit Committee of its Board of Directors into the accounting irregularities that formed the basis of the crimes for which Mr. Forbes was ultimately convicted. Cendant paid an additional $5 million to Deloitte & Touche, LLP to audit the restated financial statements for 1995, 1996 and 1997 that Cendant had to prepare due in large part to Mr. Forbes's criminal acts.

Cendant also has to date paid over $3 billion to settle shareholder litigation based on the accounting irregularities. There were two principal class action settlements. One was for $2.85 billion in cash to a class of persons who purchased or otherwise acquired publicly-traded securities (other than PRIDES, a

Michael Martinez, Esq.
December 5, 2006
Page 2

action settlements. One was for $2.85 billion in cash to a class of persons who purchased or otherwise acquired publicly-traded securities (other than PRIDES, a derivative security) issued by Cendant or CUC International, Inc. between May 1995 and August 1998. In a separate class action settlement, Cendant issued approximately $300 million of securities to compensate persons who purchased PRIDES between February 1998 (when the PRIDES were issued by Cendant pursuant to a registered public offering) and April 15, 1998. The PRIDES settlement offered <u>full</u> compensation to such purchasers for their losses. In addition, to date Cendant has spent in excess of $150 million resolving other class claims and claims of individual investors who pursued litigation against Cendant on their own behalf.

Mr. Forbes's crimes also have caused Cendant to spend in excess of $150 million on legal fees for itself and its officers and directors, including Mr. Forbes, in respect of scores of criminal and civil proceedings. In connection with his legal defense in these actions, Cendant has advanced to Mr. Forbes alone nearly $12 million, subject to Forbes's undertaking to repay such funds if it is ultimately determined that he is not entitled to be indemnified by the Company.

None of these monies spent by Cendant has been repaid to Cendant from any source, including insurance.

**Restitution by Mr. Forbes is Mandatory**

Restitution in this case is required pursuant to the Mandatory Victims Restitution Act of 1996 (the "MVRA"). Specifically, Section 3663A of Title 18 requires courts to enter restitution orders for a defendant who has been convicted of, <u>inter alia</u>, "any offense committed by fraud or deceit." Mr. Forbes's conviction of conspiracy to commit securities fraud pursuant to 18 U.S.C. § 371 falls under the MVRA, and thus the district court is required to order restitution. See United States v. Huang, 213 F.3d 627 (2d Cir. 2000 ) (mandatory restitution for conviction of conspiracy to sell contraband cigarettes in violation of 18 U.S.C. § 371); United States v. Jamieson, 427 F.3d 394, 418 (6th Cir. 2005); United States v. Rand, 403 F.3d 489 (7th Cir. 2005) (MVRA requires restitution for conviction of conspiring to commit identity theft in violation of 18 U.S.C. § 371).

**Cendant is an Appropriate Recipient of Restitution from Mr. Forbes**

The MVRA provides for restitution to the "victims" of crimes which, for purposes of the restitution statutes, is defined as "a person directly and proximately harmed" by the offense in question. 18 U.S.C. § 3663(a)(2). The Second Circuit has instructed district courts to interpret "victim . . . expansive[ly]" under the MVRA. United States v. Ekanem, 383 F.3d 40, 43-44 (2d Cir. 2004) (interpreting "victim" under § 3663A, which has "the same definition of 'victim'" as

Michael Martinez, Esq.
December 5, 2006
Page 3

§ 3663); see also United States v. Malpeso, 943 F. Supp. 254, 257 (E.D.N.Y. 1996) (noting that "'victim' is interpreted broadly" under § 3663). For example, victims entitled to restitution need not be actual people, nor must they be named in the indictment. Kalani v. United States, 02 Civ. 8663, 2002 U.S. Dist. LEXIS 21113, at *27-*28 (S.D.N.Y. Oct. 31, 2002) (interpreting § 3663A).

Here, Cendant is clearly a victim of Mr. Forbes's crimes in at least two respects. The government explicitly indicted and ultimately convicted Mr. Forbes, in part, for "concealing [his and his co-conspirators'] fraud from Cendant corporate officials in New Jersey." (Indictment at ¶ 63(j).) In addition, the indictment repeatedly refers to Mr. Forbes, his former co-defendant E. Kirk Shelton, and his co-conspirators' "caus[ing]" Cendant to make misrepresentations to the SEC and to investors. (E.g., id. ¶¶ 36, 39, 43, 45, 48, 53.)

By concealing his misconduct from Cendant management and its Board of Directors, Mr. Forbes subverted the Company's efforts to comply with the law. Cendant was forced to investigate the misconduct of Mr. Forbes and his co-conspirators in order to issue accurate financial statements, incurring a loss of approximately $25 million in professional fees, to say nothing of the thousands upon thousands of hours of employee time devoted to the investigation (all of which ultimately aided the government in its prosecution of Mr. Forbes). Cendant also has incurred more than approximately $150 million in legal costs in respect of the multitude of criminal and civil proceedings spawned by Mr. Forbes's criminal misconduct. Restitution to Cendant is appropriate for these monies pursuant to 18 U.S.C. §§ 3663, 3663A and 3664 because Cendant suffered a direct harm due to the criminal acts for which Mr. Forbes has been convicted.

Indeed, a court in the Southern District of New York recently ordered that restitution under 18 U.S.C. § 3663 be made to a public company under circumstances quite similar to those present here. In United States v. Cummings, 189 F. Supp. 2d 67, 70 (S.D.N.Y. 2002), the former chief financial officer of Aurora Foods Inc. ("Aurora"), Laurie Cummings, pleaded guilty to, among other charges, conspiracy to commit securities fraud and to make false statements in SEC filings. Judge Cote concluded that Aurora was a "victim" of defendant Cummings, explaining that "the question is whether the alleged victim was directly harmed by the defendant's conduct that occurred in the course of that conspiracy." Id. at 75. Judge Cote found that Cummings's crimes directly harmed Aurora because Cummings's "financial manipulations" and false statements to the SEC forced Aurora to prepare and publish restated financial restatements. Id. at 75-78 (holding it was "reasonably foreseeable that a restatement would be necessary" in order to correct the misstatements of Cummings and her co-conspirators). Judge Cote therefore ordered Cummings to compensate Aurora for its expenses in preparing the

Michael Martinez, Esq.
December 5, 2006
Page 4

restated financial statements, including fees Aurora paid to its accountants.[1]
Id. at 79-80.

Additionally, Cendant is entitled to an award of restitution equal to the over $3 billion it has advanced to compensate the thousands of investors in Cendant securities for the losses they suffered due to the accounting fraud for which Mr. Forbes has been held responsible. To be sure, § 3664 provides that "[i]f a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation." Id. § 3664(j)(1) (emphasis added). Like an insurance company, Cendant is entitled to restitution under 18 U.S.C. § 3664 for these payments as well, especially as to the first PRIDES settlement since Cendant spent over $300 million to fully compensate one class of Mr. Forbes's victims, purchasers of PRIDES between February 1998 and April 15, 1998.[2] See United States v. Malpeso, 943 F. Supp. 254, 256 (E.D.N.Y. 1996) (explaining that because FBI advanced funds to victim, FBI "is in the same position as an insurer" and is entitled to be reimbursed for its outlay through an order of restitution).

These principles have been recognized by Judge Thompson in this very case. On August 12, 2005, Judge Thompson entered an order directing co-defendant E. Kirk Shelton to make restitution to Cendant pursuant to 18 U.S.C. § 3664 in the amount of $3.275 billion and to immediately deposit $15 million (of his $30 million in claimed net worth) with the Clerk of the Court to be turned over to Cendant upon the conclusion of any appeal by Mr. Shelton.

**Proposed Restitution Plan**

Pursuant to the MVRA, the amount of restitution ordered shall be "the full amount of each victim's losses . . . without consideration of the economic

---

[1] Judge Cote also noted, that under 18 U.S.C. § 3664, Cummings would have had to compensate Aurora for its $10 million settlement with shareholders had Cummings and her co-conspirators not already paid Aurora over $10 million in stock. Id. at 79.

[2] When crime victims receive such compensation in advance of sentencing, as the investors in Cendant securities did here, they are not entitled to additional restitution under 18 U.S.C. § 3663, 3663A and 3664. See United States v. Cummings, 189 F. Supp. 2d 67, 79 (2002) ("Because restitution may not result in double recovery . . . shareholders are prevented from recovering from their losses a second time through an award of restitution."). Thus, Cendant, being out pocket more than $3.25 billion, is the "victim" entitled to restitution from Mr. Forbes.

Michael Martinez, Esq.
December 5, 2006
Page 5

circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A). Thus, Cendant believes that Mr. Forbes should be ordered to make restitution to the Company in the same amount Judge Thompson required Mr. Forbes's co-defendant, Kirk Shelton, to pay $3.275 billion. See Cummings, 189 F. Supp. 2d at 79-80 (co-defendants jointly and severally liable in restitution for all losses attributable to their misconduct).

Based on the restitution Judge Thompson ordered Shelton to make, Cendant also believes that it would be appropriate to require Mr. Forbes to deposit with the Clerk of the Court within 30-days of sentencing at least 90% of his stated $200 million net-worth (Sept. 29, 2004 Tr. at 14076:20-24) -- pending resolution of any appeals. The balance of the restitution amount of $3.275 billion would be payable to Cendant following resolution of any appeal.

Finally, to protect Cendant's interest in Mr. Forbes's assets, Cendant believes that the order of restitution should also enjoin Mr. Forbes from expending more than $10,000 per month on expenses (excluding attorneys' fees), and from transferring any assets that, in the aggregate, exceed $10,000 per month, pending the outcome of any appeal.

Thank you for your consideration.

Very truly yours,

Samuel Kadet