# ATTACHMENT  B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 3:02CR264 (AHN) |
| | ) | |
| WALTER A. FORBES | ) | March 8, 2007 |
| | ) | **(UNDER SEAL)** |

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANT WALTER A. FORBES FOR RELEASE PENDING APPEAL**

Brendan V. Sullivan, Jr. (Bar No. ct17115)
Barry S. Simon (Bar No. ct24159)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
(202) 434-5000 (phone)
(202) 434-5029 (fax)
bsimon@wc.com (e-mail)

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT 06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

Because Mr. Forbes poses no risk of flight and no danger to the community; his appeal is not being taken for purpose of delay; and his appeal raises substantial questions, see 18 U.S.C. § 3143(b), the Court's initial reaction that it had "no problem" with Mr. Forbes' motion for release, Tr. (01/17/07) at 56, was correct. The government initially conceded the first two requirements for release; its retraction of that concession is unjustified and undermines the credibility of its position that the appeal does not present any substantial questions. More fundamentally, the government misapprehends the meaning of "substantial," arguing throughout its brief that Mr. Forbes must convince this Court that it committed error. To prevail at this interim stage, however, Mr. Forbes need only identify an issue that is "either novel, which has not been decided by controlling precedent, or which is fairly doubtful"; is "of more substance than would be necessary to a finding that it was not frivolous"; "is a close question or one that very well could be decided the other way"; or is "fairly debatable." United States v. Randell, 761 F.2d 122, 125 (2d Cir. 1985) (quotations omitted). Mr. Forbes has satisfied this standard.

### 1.    No Risk of Flight

After Mr. Forbes moved for release pending appeal, the government conceded in response to a direct question from the Court that Mr. Forbes is not a flight risk.

> THE COURT:         Well, do you claim -- will you claim, Mr.
> Martinez, that he's a risk of flight?
>
> MR. MARTINEZ:     No, your Honor.

Tr. (01/17/07) at 59; see also id. ("We are not suggesting that he's a risk of flight or danger to the community."). The government now states in a footnote that it "does not concede that Forbes poses no flight risk," without arguing that he does pose such a risk. Opp'n at 4 n.4. Any such argument would be unfounded given the government's own prior concession, the record in this case, and the Court's decision to release Mr. Forbes pending sentencing. If the government

seriously believed that Mr. Forbes posed a flight risk, it would not have taken the full 24 days allotted under the rules to respond to his motion for release and then sought an additional seven days to respond. See Unopposed Mot. of United States for One-Week Extension to File Opp'n to Forbes' Mot. for Bail [Docket No. 2651]. It would have responded promptly and requested expedited consideration of the motion given the supposed risk of flight.[1]

### 2.     Appeal Not Taken for Purpose of Delay

In response to an inquiry from the Court, the government represented that the only contested issue on the instant motion was whether the appeal presents a substantial question; the government did not claim that Mr. Forbes' appeal was taken for the purpose of delay.

> THE COURT:     What will your argument be as to why he should not be continued on bond during the pendency of his appeal?
>
> MR. MARTINEZ:     The argument would be that standard is, unless he can show that there's a substantial question that would ultimately lead to reversal, that he should go to prison now . . . . It's solely on substantial question issue and he hasn't met the burden to show that there is a substantial question.

Tr. (01/17/07) at 59 (emphasis added).

The government has flip-flopped on its position, claiming now that the appeal is for the purpose of delay. The government's contention that Mr. Forbes "delayed" all three trials, Opp'n

---

[1]     The government provides no basis for its change in position, stating only that Mr. Forbes has "no dependent minor children," is older than Mr. Shelton who received a "significantly shorter sentence," and "delay[ed] disclosing his finances to Probation." Opp'n at 4 n.4. To the contrary, Mr. Forbes has a dependant minor daughter and there is no material difference for bail purposes between a 12-year-7-month and a 10-year sentence. Moreover, at the time the government conceded that Mr. Forbes posed no risk of flight, it knew Mr. Forbes' age, the length of his sentence relative to Mr. Shelton's, and that Mr. Forbes' financial information had not yet been completed.

at 3, is incorrect.[2]  The government conveniently forgets that it was the cause of substantial delay in the first two trials and the second transfer was the cause of substantial delay in the third trial. The first trial was pushed back five months due to the government's delay in seeking the first superseding indictment, six months due to the government's unsuccessful motion to reconsider the transfer order and mandamus petition, and additional time due to the government's seeking a second superseding indictment following the transfer to this District.  The second trial was continued six months at the government's request and over Mr. Forbes' objection.  The third trial was delayed almost six months because Judge Thompson sua sponte transferred the case—which had been set to commence on April 18, 2006—to this Court.

The appeal is not being taken for purposes of delay, but to reverse Mr. Forbes' unjust and erroneous conviction, and the resulting improper 12-year-7-month sentence and $3 billion restitution order.

### 3.    Appeal Raises Substantial Questions

Mr. Forbes' opening brief demonstrates that the questions presented are substantial, and the government does nothing to undermine that showing.  Indeed, the government sends a strong message that the issues presented are substantial.  First, in a desperate attempt to prevail, the government reversed its position on the issues of flight and delay.  Second, the government took a month and nearly twice as many pages as Mr. Forbes to "prepare an opposition brief that addresses [the] claims appropriately in light of the exacting standard governing applications for bail."  Unopposed Mot. of United States for One-Week Extension to File Opp'n to Forbes' Mot.

---

[2]      It is true that the proceedings were prolonged in part because Mr. Forbes filed motions attacking the government's case.  But the government cannot seriously contend that a motion for release should be denied when a defendant presents a vigorous defense and, for example, prevails on a transfer motion.

for Bail at 2 [Docket No. 2651]. Realizing that Mr. Forbes meets the standard for release, the government attempts to raise the bar.

>    **a.     The government conflates the standard on the merits of the appeal with the standard for release.**

In determining whether the third requirement for release is satisfied, a district court must first determine whether any question raised on appeal is "substantial"; and if a question raised on appeal is "substantial," the court must then determine whether "a contrary appellate holding is likely to require reversal of the conviction." Randell, 761 F.2d at 125 (quotation omitted); see United States v. Hart, 906 F. Supp. 102, 106 (N.D.N.Y. 1995) ("[T]he correct approach is to ask whether a new trial or reversal would likely result, assuming the appellate court rules in defendant's favor."). The government concedes that this is the test, but distorts the definition of "substantial."[3]

The government's brief suggests incorrectly that an issue is "substantial" only if the defendant convinces the Court that it acted improperly and committed reversible error. The heading of each substantive section of the government's brief begins with a phrase like "This Court Properly Admitted Evidence," and the argument in those sections includes the following assertions:

>    **Property Transfers:** "Here, Forbes cannot show an abuse of discretion, that is, that this Court acted arbitrarily or irrationally." Opp'n at 5 (quotation omitted & emphasis added). "Forbes has

---

[3]     The government does not seriously dispute the second prong of this test. Harmless error analysis does not apply to the Batson claim. And nowhere does the government claim that any of the other issues, if decided in Mr. Forbes' favor, would be harmless error. Such a claim would be frivolous in a case as close as this one. See, e.g., United States v. Paguio, 114 F.3d 928, 935 (9th Cir. 1997) ("We cannot characterize the error as harmless, because the hung jury at the first trial persuades us that the case was close and might have turned on this evidence."); United States v. Colombo, 909 F.2d 711, 714 (2d Cir. 1990) ("[A] court should be especially loath to regard any error as harmless in a close case, since in such a case even the smallest error may have been enough to tilt the balance." (quotation omitted)).

- 4 -

cited no authority <u>categorically precluding</u> evidence of asset transfers to show consciousness of guilt . . . ." <u>Id.</u> at 10 (emphasis added).

**Batson:** "Forbes cannot show that this Court <u>committed clear error.</u>" <u>Id.</u> at 11 (emphasis added).

**Statements of Party Opponent:** "Forbes cannot show that these evidentiary rulings were <u>arbitrary or irrational.</u>" <u>Id.</u> at 20 (emphasis added).

**Alleged Shareholder Losses:** "Forbes cannot show that these evidentiary rulings were <u>arbitrary or irrational.</u>" <u>Id.</u> at 25 (emphasis added).

**Preclusion of Cross-Examination:** "Forbes cannot show that this Court acted <u>arbitrarily or irrationally</u> in so ruling." <u>Id.</u> at 32 (emphasis added).

**Improper Rebuttal Summation:** "Forbes cannot show that he should have received the extraordinary relief of a mistrial . . . ." <u>Id.</u> at 36.

Release pending appeal, however, is not dependent on a showing that the Court acted improperly, abused its discretion, acted arbitrarily or irrationally, committed clear error, or should have granted a mistrial, and does not require the defendant to cite authority "categorically" supporting his position. Appellate courts interpreting the bail statute "have all concluded that the statute does not require the district court to find that it committed reversible error." <u>United States v. Pollard</u>, 778 F.2d 1177, 1181-82 (6th Cir. 1985); <u>accord</u> <u>United States v. Bayko</u>, 774 F.2d 516, 523 (1st Cir. 1985) ("[W]e reject the construction which would make bail contingent upon a finding by the district court that it is likely to be reversed."); <u>United States v. Handy</u>, 761 F.2d 1279, 1281 (9th Cir. 1985) ("[R]equiring the defendant to demonstrate to the district court that its ruling is likely to result in reversal is tantamount to requiring the district court to certify that it believes its ruling to be erroneous. Such an interpretation of the Act would make a mockery of the requirement . . . that the application for bail be made in the first instance in the district court."); <u>Randell</u>, 761 F.2d at 124-25 (release not "dependent upon the willingness

of a trial court to certify that it is likely to be reversed" (quotation omitted)); United States v. Giancola, 754 F.2d 898, 900 (11th Cir. 1985) (per curiam) ("Judges do not knowingly leave substantial errors uncorrected or deliberately misconstrue applicable precedent. Thus, it would have been capricious for Congress to have conditioned bail only on the willingness of a trial judge to certify his or her own error." (quoting United States v. Miller, 753 F.2d 19, 23 (3d Cir. 1985))).

The defendant need only show the existence of a substantial question, which the Second Circuit described as follows:

> The Miller court defined a substantial question as one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful. Giancola held that a substantial question is one of more substance than would be necessary to a finding that it was not frivolous. It is a close question or one that very well could be decided the other way. Handy defined substantial as fairly debatable.

Randell, 761 F.2d at 125 (citations & quotations omitted).[4]

### b.    Mr. Forbes satisfies the standard for release.

Properly applying the Second Circuit's standard, as Mr. Forbes does in his opening brief, illustrates that the questions presented in this case are substantial. For example, the government concedes that the admission of property transfers as consciousness of guilt evidence is a question

---

[4]    The Second Circuit did not, as the government argues, find Miller's definition of substantial "wanting compared to Giancola's." Opp'n at 10 n.8. It held, as Mr. Forbes indicated in his opening brief, that "[w]e do not believe that these definitions of 'substantial' differ significantly from each other, but if we were to adopt only one, it would be the language of Giancola." Randell, 761 F.2d at 125 (quoted in Forbes Mem. at 3); see also 2d Cir. R. 9 (application must include "showing that the questions on appeal are not frivolous"). Applying this standard in white collar cases, which often involve complicated issues, courts in this Circuit have frequently granted release pending appeal. See, e.g., United States v. Shelton, No. 05-4342-cr (2d Cir. Sept. 13, 2005); United States v. Quattrone, No. 04-5007-cr (2d Cir. Oct. 20, 2004); United States v. Ebbers, No. 1:02-cr-01144-BSJ (S.D.N.Y. Sept. 8, 2005); United States v. Rigas, No. 1:02-cr-01236-LBS (S.D.N.Y. July 13, 2005).

of first impression in this Circuit, and it fails to cite a single federal appellate decision going its way, much less "unanimous resolution of the issue by other circuits." Opp'n at 10 (quotation omitted). Moreover, the Ninth Circuit held that an asset transfer to a family member made after the defendant was arrested was not probative of consciousness of guilt. See United States v. Ramirez, 176 F.3d 1179, 1182-83 (9th Cir. 1999). The government insists that Ramirez "did not categorically prohibit" property transfer evidence, and attempts to distinguish Ramirez in various ways. Opp'n at 8 (emphasis added). But such arguments underscore that the appellate question "very well could be decided the other way" or is "fairly debatable"—the very definition of substantial. Randell, 761 F.2d at 125 (quotations omitted). A substantial question is presented where, as here, an argument "has been accepted by at least one other circuit, and there is no authority directly on the point in this circuit." United States v. Powell, 761 F.2d 1227, 1237 (8th Cir. 1985) (en banc) (citation omitted).[5]

The government raises various arguments disagreeing with Mr. Forbes' position on other appellate issues as well, but nowhere does it show that the issues Mr. Forbes raises are not "substantial." Mr. Forbes will not respond to these arguments applying the wrong standard, with

---

[5]    The government suggests that it is significant that the Ninth Circuit in Ramirez found the error to be harmless. See Opp'n at 9 n.7. A subsequent Ninth Circuit decision, however, took issue with the harmless error analysis in Ramirez, observing that "an error presumptively requires reversal and the burden is on the government to demonstrate otherwise by showing that the error was more probably than not harmless." United States v. Gonzalez-Flores, 418 F.3d 1093, 1099 n.3 (9th Cir. 2005). And while there was "strong evidence against Ramirez—he had care, custody and control of a vehicle containing 46.4 pounds of marijuana," Ramirez 176 F.3d at 1183, the evidence against Mr. Forbes was equivocal and resulted in two hung juries.

The government asserts that Mr. Forbes' allegedly false trial testimony regarding advice from Mr. Danliow was also admissible as consciousness of guilt evidence, see Opp'n at 6, but it cites no case in support of this proposition. A false exculpatory statement is a "pretrial fabrication[], on the theory that the innocent do not fabricate to avoid being accused of crime. That theory does not apply to a defendant's trial testimony." United States v. Clark, 45 F.3d 1247, 1251 (8th Cir. 1995) (citation omitted).

- 7 -

one exception. He will address the government's argument, raised now for the first time, that Mr. Forbes purportedly waived his challenge to the government's gender-based peremptory strikes. See Opp'n at 11.[6]

### c.    The <u>Batson</u> error was preserved.

Mr. Forbes' <u>Batson</u> motion was timely because it was made on the day of jury selection, immediately after the parties had exercised their peremptory strikes, before the 46 remaining members of the venire had been dismissed, and before the jury was empaneled.[7] See <u>Weeks v. New York</u>, 273 F.3d 76, 89 (2d Cir. 2001) (<u>Batson</u> motions should be made "during voir dire or very shortly afterward"); <u>Galarza v. Keane</u>, 252 F.3d 630, 638 (2d Cir. 2001) (<u>Batson</u> motion timely where made "prior to the jury being empaneled"); <u>United States v. Parsee</u>, 178 F.3d 374, 378 (5th Cir. 1999) ("To be timely, such a challenge must be raised before the venire is dismissed."); <u>Morning v. Zapata Protein (USA)</u>, 128 F.3d 213, 216 (4th Cir. 1997) (same); <u>United States v. Parham</u>, 16 F.3d 844, 847 (8th Cir. 1994) (<u>Batson</u> challenge must be "made at

---

[6]    Mr. Forbes also notes his dispute with each part of the government's contradictory assertion that no juror gasped following Mr. Monaco's improper testimony regarding alleged shareholder losses, but that the juror who gasped was purportedly Mr. Dimitrades, who was later excused. See Opp'n at 30-31. First, the government did not contemporaneously dispute the gasp, and members of the defense team noted contemporaneously on the record that they heard it. Second, the government provides no basis in the record to believe that it was Mr. Dimitrades who gasped, as opposed to the woman seated in the back next to him or some other juror or jurors. Defense counsel did not assert that it was a man, and government counsel sat silent when defense counsel challenged them to deny the gasp. See Tr. (10/11/06) at 465.

[7]    The Court directed the parties to exercise their peremptory strikes in the presence of the jury clerks. Tr. (10/04/06) at 228. Before the parties began exercising their strikes, the Court allowed the remaining members of the venire to go home for the day, with instructions to call in the next day to find out whether they had been released. Id. at 229-31. The Court took a recess from 4:59 p.m. to 6:52 p.m., while the parties exercised their strikes. See id. at 228, 238, 240 (The Court: "Well, obviously I wasn't here when you were exercising the challenges."). When the proceedings resumed, Mr. Forbes raised a <u>Batson</u> challenge based on the government's peremptory strikes of female jurors. Id. at 240. At the time Mr. Forbes raised his challenge, none of the 46 remaining members of the venire had been dismissed. See Docket No. 2603, Ex. 1, ¶ 4.

the latest before the venire is dismissed and before the trial commences"); cf. United States v. Thomas, 303 F.3d 138, 143 (2d Cir. 2002) (where jury selection conducted before magistrate, parties should "advis[e] the district judge of a Batson issue promptly, and in any event before the jury is sworn"); Goonewardena v. N.Y. State Ins. Fund, No. 01 Civ. 9706 (HB), 2003 U.S. Dist. LEXIS 9490, at *9 (S.D.N.Y. June 4, 2003) (Batson challenge waived because not raised "before the jury was sworn"), aff'd, 120 F. App'x 410 (2d Cir. 2005).[8]

Mr. Forbes did not lodge his Batson objection "after the jury [was] sworn and trial [had] begun." McCrory v. Henderson, 82 F.3d 1243, 1247 (2d Cir. 1996). He made his challenge before any of the final 46 prospective jurors had been dismissed, at a time when the full panoply of Batson remedies was available to the Court. The government has not cited a single case finding a waiver where a Batson challenge was lodged before the venire was dismissed. See Weeks, 273 F.3d at 89 (challenge made when "stricken jurors were not here anymore" (internal quotations omitted)); United States v. Franklyn, 157 F.3d 90, 97 (2d Cir. 1998) (defendant failed to raise Batson motion until after challenged jurors had been dismissed); McCrory, 82 F.3d at 1244-45, 1249 (defendant first raised Batson challenge after the conclusion of his trial, "three and one half months after the conclusion of jury selection").

At the time Mr. Forbes raised his Batson challenge, the Court stated, "I think the Batson challenge is raised. The burden shifts to [the government.]" Tr. (10/04/06) at 240. Mr. Forbes'

---

[8]    If Mr. Forbes had raised his Batson challenge before the completion of the parties' exercise of peremptory strikes, it could have been rejected on the ground that the final statistics concerning the parties' exercise of strikes were unavailable. In a habeas matter, Overton v. Newton, 295 F.3d 270 (2d Cir. 2002), the Second Circuit observed that it is important to determine what the statistics show "at the conclusion of jury selection" in order to properly assess a Batson challenge. Id. at 279-80. The Court found it "[s]ignificant[]" that "the defendants did not renew their Batson challenges either when the record was made or at the end of jury selection." Id. at 274. It would be a Catch-22 situation if any Batson challenge Mr. Forbes made before the completion of peremptory strikes could be construed as premature and any challenge made after the completion of peremptory strikes were deemed untimely.

challenge was made immediately after the government concluded its exercise of peremptory strikes—a time when the government surely should have known the reasons for its strikes. The government made no complaint that the challenge was untimely. To the contrary, the government requested <u>additional time</u> to give its reasons for striking female jurors. <u>See id.</u> at 240-41. The government stated, "given the seriousness of the charge, if there were a Batson or really JEB charge leveled against us, we would like to file briefing, go through our notes of why we put people in certain orders." <u>Id.</u> at 241. The fact that Mr. Forbes' <u>Batson</u> motion was not decided until the day after jury selection is attributable to the government, not Mr. Forbes. The Court should reject the government's belated claim of waiver.

The government's attempt to avoid the <u>Batson</u> issue by advancing an unfounded waiver argument for the first time underscores the fact that the <u>Batson</u> question is substantial.[9]

## CONCLUSION

For the reasons set forth above and in the opening memorandum, Mr. Forbes respectfully requests that the Court grant his motion for release pending appeal.

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:    Brendan V. Sullivan, Jr. (Bar No. ct17115)
       Barry S. Simon (Bar No. ct24159)

       725 Twelfth Street, N.W.
       Washington, D.C. 20005
       (202) 434-5000 (phone)
       (202) 434-5029 (fax)
       bsimon@wc.com (e-mail)

---

[9]    The government is correct that it exercised 9 of its 12 strikes against women (not 12 of 15). Mr. Forbes regrets the inadvertent error. <u>See</u> Tr. (10/04/06) at 240.

- 10 -

- and -

James T. Cowdery (Bar No. ct05103)
Thomas J. Murphy (Bar No. ct07959)
COWDERY, ECKER & MURPHY, L.L.C.
750 Main Street
Hartford, CT  06103-2703
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cemlaw.com (e-mail)

Attorneys for Walter A. Forbes

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Reply Memorandum in Support of

Motion of Defendant Walter A. Forbes for Release Pending Appeal to be sent on March 8, 2007

to the following via e-mail and Federal Express:

> Norman Gross, AUSA
> Michael Martinez, AUSA
> Craig Carpenito, AUSA
> U.S. Attorney's Office
> District of New Jersey
> 401 Market Street, Fourth Floor
> Camden, NJ 08101

Barry S. Simon