```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA       :

          v.                   :     Criminal No. 3:02CR264(AHN)

WALTER A. FORBES               :
```

RULING ON DEFENDANT'S MOTION FOR RELEASE PENDING APPEAL

Pending before the court in this criminal securities fraud case is the motion of the defendant, Walter A. Forbes ("Forbes"), for release pending appeal pursuant to 18 U.S.C. § 3143. The defendant maintains that there are six substantial issues that are likely on appeal to result in reversal of his conviction or a new trial. The court disagrees, and for the following reasons denies the defendant's motion.

## BACKGROUND

On October 31, 2006, the defendant was convicted on three counts of an indictment charging him with conspiracy to commit securities fraud and making false statements in reports required to be filed with the SEC.[1] He was sentenced on January 17, 2007 to 151 months' imprisonment and was ordered to pay $3.275 billion in restitution. At the time of his sentencing, he moved for release pending appeal. The government opposed his motion.

## STANDARD

Pursuant to the Bail Reform Act of 1984, a person who has

---

[1] The defendant was acquitted on one count charging him with a securities fraud violation.

been found guilty and sentenced to a term of imprisonment "shall be detained" pending appeal unless the district court finds (1) by clear and convincing evidence that he is not likely to flee or pose a danger to another person or the community[2] and (2) that the appeal is not for the purpose of delay[3] and raises a substantial question of law or fact likely to result in, <u>inter alia</u>, reversal of his conviction or a new trial.  18 U.S.C. § 3143(b).  The defendant has the burden of rebutting this statute's presumption favoring detention.  <u>See</u> <u>United States v. Randell</u>, 761 F.2d 122, 125 (2d Cir. 1985).

As used in this statute, the term "substantial" goes to the issue's significance with respect to the ultimate disposition of the appeal.  <u>Id.</u>  According to the definition adopted by the Second Circuit, a substantial question "is one of more substance than would be necessary to a finding that it was not frivolous.  It is a 'close' question or one that very well could be decided the other way."  <u>Id.</u> (quoting <u>United States v. Giancola</u>, 754 F.2d 898, 901 (11th Cir. 1985)).

If the court finds that a defendant has raised a substantial

---

[2]The court finds that the defendant has met his burden of showing that he is not likely to flee or pose a danger to the community if he is released.

[3]Because the court finds that the defendant has not raised a substantial question that is likely to result in reversal or a new trial it will not consider whether the appeal is taken for the purpose of delay.

question on appeal, it must nonetheless deny bail if it also finds that the substantial question is not "so integral to the merits of the conviction on which the defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial."  Id.

The court is not required to conclude that it is likely to be reversed before granting bail pending appeal.  Id. at 124-25.

## DISCUSSION

The defendant maintains that he will present six substantial questions on appeal and that if any one of them is decided in his favor, the result is likely to be reversal of his conviction or a new trial.  Four of the six issues involve the court's rulings on evidentiary matters: (1) the admission of evidence of the defendant's property transfers as evidence of his consciousness of guilt; (2) the exclusion of certain government statements as not constituting admissions of a party opponent; (3) the admission of evidence relating to the value of shareholder losses; and (4) the preclusion of certain cross examination of the government's key cooperating witness.  The other two issues relate to (1) the court's finding of no purposeful discrimination in connection with the defendant's Batson/J.E.B. challenge and (2) alleged improprieties in the government's summation.

The defendant raised all six of these issues before, during, and/or after trial.  While the court is reluctant to say that the

issues are frivolous, it is not at all reluctant to say that he has not raised a close question, let alone a substantial one that very well could be decided the other way. See United States v. Giancola, 754 F.2d 898, 901 (11th Cir. 1985). These issues did not present close questions when they were previously raised, and they do not present close questions now. See United States v. Jasper, No. S1 00cr825PKL, 2004 WL 112939 (S.D.N.Y. Jan. 23, 2004) (commenting that it was unimpressed by the defendant's verbatim, recycled arguments which he had made at and after trial and which were thoroughly dealt with at that time). But even if they did, none of them are so integral to the merits of the defendant's conviction that they are likely to result in reversal of his conviction or a new trial.

    A.   Evidence of Property Transfers

Whether the court properly allowed the government to introduce evidence of the defendant's property transfers does not present a substantial or close question. Evidence showing that the defendant transferred real property valued at over $17 million to his wife and daughters for nominal consideration at and shortly after the time the fraud was discovered was probative of his state of mind and the significant probative value of this evidence on that issue was not outweighed by the danger of unfair prejudice. This evidence was also admissible as a necessary foundation for the government's efforts to impeach the defendant

with evidence that he testified falsely at a prior proceeding when he said that, before making the transfers, he consulted his attorney who told him they were proper, lawful, and a reasonable thing to do, despite his awareness of the pending criminal investigation.

Contrary to the defendant's assertion, the fact that the Second Circuit may not have expressly ruled on the precise question of whether evidence of asset transfers is admissible to show consciousness of guilt does not mean that it is per se a substantial question. Indeed, the Second Circuit, as well as the vast majority of other circuits, has held that a question that is not governed by controlling precedent must also be significant to satisfy subsection (b)(2) of the Bail Reform Act. See Randell, 761 F.2d at 125 (rejecting the Third Circuit's definition of substantial question in United States v. Miller, 753 F.2d 19 (3d Cir. 1985) as one which is either novel, not decided by controlling precedent, or fairly doubtful); see also United States v. Smith, 793 F.2d 85, 88 (3d Cir. 1986) (collecting cases and clarifying that its definition of substantial question in Miller requires that the issue be significant as well as novel, not governed by controlling precedent, or fairly doubtful). So, even in the absence of controlling precedent, this issue does not satisfy the substantial question requirement of § 3143(b)(2).

Further, as the Second Circuit noted in United States v.

Perez, 387 F.3d 201, 209 (2d Cir. 2004), it has upheld the admission of various kinds of evidence other than flight to show consciousness of guilt so long as, under the circumstances in which it is offered, the evidence is relevant and probative of an issue in dispute, satisfies Rule 403, is not offered to prove the defendant's criminal propensity or bad character, and a limiting instruction is given, if one is requested. Id.; see, e.g., United States v. Wilson, 11 F.3d 346, 353 (2d Cir. 1993) (observing that the defendant's use of false identification is relevant and admissible to show consciousness of guilt); United States v. Macklin, 927 F.2d 1272, 1279 (2d Cir. 1991) (holding that evidence that the defendant rekindled a relationship with a woman after she was subpoenaed to testify before a grand jury and attempted to dissuade her from testifying was admissible to show consciousness of guilt); United States v. Scheibel, 870 F.2d 818, 822 (2d Cir. 1989) (noting that false exculpatory statements are admissible as evidence of consciousness of guilt); United States v. Deutsch, 451 F.2d 98, 116 (2d Cir. 1971) (holding that evasive conduct aimed at concealing a transaction constitutes circumstantial evidence of guilty consciousness).

In short, the question of whether the court erred in allowing evidence of the defendant's property transfers to show consciousness of guilt does not amount to a substantial question on appeal. But even if it did, it would not support his release

because he has not shown that the issue is so integral to the merits that a contrary appellate ruling would result in reversal or a new trial.

The Second Circuit reviews a district court's decision to admit evidence for abuse of discretion and will reverse a conviction on account of an evidentiary error only if the error affected substantial rights. United States v. Garcia, 413 F.3d 201, 210 (2d Cir. 2005). A non-constitutional error affects substantial rights if it had a "substantial and injurious effect or influence in determining the jury's verdict." United States v. Dukagjini, 326 F.3d 45, 62 (2d Cir. 2002).

Here, the defendant has not shown that in admitting this evidence the court abused its discretion, i.e., acted arbitrarily or irrationally. See United States v. Malpeso, 115 F.3d 155, 162 (2d Cir. 1997). Further, because the substantial weight of the evidence supported the jury's verdict in this case, it cannot be said that the evidence of the defendant's property transfers had a substantial and injurious effect on or otherwise influenced the jury's verdict. See United States v. Pedroza, 750 F.2d 187, 197 (2d Cir. 1984).

B. Government "Admissions"

The defendant's claim that the court erroneously ruled that certain statements made by government attorneys were not admissible as admissions of a party opponent under Fed. R. Evid.

801(d)(2) also does not present a close or substantial question.

The government's written submission at the first trial in which it mistakenly agreed with the defendant's proposed jury instruction that a cooperating witness had benefitted from an informal immunity agreement was not an admission under Rule 801(d)(2). The witness did not, as a matter of undisputed fact, receive any form of immunity, and thus there was an innocent explanation for the supposed inconsistency and the defendant was correctly precluded from improperly taking advantage of the government's innocent mistake. See United States v. McKeon, 738 F.2d 26, 33 (2d Cir. 1984) (noting that before a prior statement may be admitted under Rule 801(d)(2) the court must, inter alia, determine by a preponderance of the evidence that the inferences sought to be drawn from the inconsistency are fair and that innocent explanations do not exist).

Similarly, neither statements made by one of the prosecutors at the first trial nor an excerpt from the government's written submission, both of which concerned what a witness would testify regarding the identity of the defendant as the person who told a cooperating witness to alter board minutes, were admissible as an admission of a party opponent. The statements were "speculation of counsel" and were not the equivalent of testimonial assertions, see United States v. Walker, 142 F.3d 103, 109 (2d Cir. 1998), and there was no indication that what the government

said constituted a verbatim statement of the government's witness.  See United States v. Yildiz, 355 F.3d 80, 82 (2d Cir. 2004).  As the court noted at trial and notes now, the defendant was free to call the former prosecutor to impeach the witness's trial testimony on this issue.

    None of the government's statements were admissible as admissions of a party opponent under Fed. R. Evid. 801(d)(2) and the defendant's objection to these evidentiary rulings does not raise a close or substantial question.  See United States v. Arrington, 867 F.2d 122, 128 (2d Cir. 1989) (noting that trial courts are accorded "considerable discretion" in the application of Rule 801(d)(2) to attorney statements).  But even if it did, the defendant has failed to demonstrate that a contrary appellate ruling would result in reversal of his conviction or a new trial.

    C.   Evidence Regarding the Value of Shareholder Losses

    Evidence quantifying the drop in Cendant's stock price the day after the massive accounting fraud at CUC was discovered was properly admitted to show materiality, an essential element of the crimes at issue, and to counter the defendant's argument that "CUC was a good company with excellent cash flow that was never on the verge of bankruptcy," – what the government called his "no harm no foul" defense.  And there was little or no risk that the jury would use this probative and relevant evidence for any improper purposes because the jury was instructed that it could

-9-

not consider it with respect to whether the defendant was a knowing and willful participant in the conspiracy or engaged in any wrongdoing.  See United States v. Adeniji, 31 F.3d 58, 63 (2d Cir. 1994) ("few tenets are more fundamental to our jury trial system than the presumption that juries obey the court's instruction").  The admission of this evidence also posed little or no risk of prejudice to the defendant.  The defendant's claim that one of the jurors let out an "audible gasp" when the testimony was elicited is based on mere speculation and is not sufficient to sustain his burden of proving that the evidence caused actual prejudice.

Moreover, while the record does not support the defendant's contention that the court refused to give a limiting instruction at the time this testimony was elicited, the fact that a limiting instruction may not have been given contemporaneously is of no moment because the timing of such an instruction is "best left to the trial court's discretion."  United States v. Garcia, 848 F.2d 1324, 1334-35 (2d Cir. 1988), rev'd on other grounds, 490 U.S. 858 (1989).

Further, the court properly overruled the defendant's objection and motion for mistrial based on another witness's testimony that Cendant and its shareholders lost $14 billion in market capitalization on the day following the public announcement of the accounting fraud.  The witness's testimony on

this issue did not constitute improper lay opinion. It was based on facts and did not require any specialized knowledge. Rather, his calculation of the drop in market capitalization was based on simple arithmetic – he merely multiplied the number of outstanding shares by the loss in price per share to obtain the total drop in market capitalization immediately after the fraud was announced. See United States v. Hamaker, 455 F.3d 1316, 1331-1332 (11th Cir. 2006) (finding no error in the admission of lay testimony of a witness who simply added and subtracted numbers and made a simple comparison). Once again, the defendant misstates the record by claiming that this witness improperly testified that "the fraud caused the $14 billion in shareholder losses in one day." Contrary to this assertion, this witness did not give a lay opinion as to the actual amount of losses suffered by Cendant shareholders as a result of the fraud or otherwise give any improper "fraud on the market" expert testimony.

Thus, because this evidence was admissible, the government had a good faith basis to refer to the "$14 billion fraud" in its arguments to the jury.

Admission of this evidence does not present a substantial question that is so integral to the merits that a contrary appellate ruling would result in reversal or a new trial.

D.   Preclusion of Cumulative Cross Examination

The defendant's recycled claim concerning the erroneous

preclusion of cross-examination of the government's key cooperating witness about his purported noncompliance with his plea and settlement agreements does not present a substantial or close question.

As the court stated in its pre and post-trial rulings on this issue, the defendant's unfounded assertion that the witness's supposed breaches of his plea and settlement agreements was a proper subject of cross examination was based on the defendant's unilateral interpretation of those agreements, was his "self-created fiction" that lacked factual support, and was not shared by either the U.S. Attorney's Office or the SEC.  And as the judge who presided over the defendant's prior trials observed, even though the defendant had ample opportunity during trial to try to demonstrate that the witness had breached those agreements, "everything that came out showed that [the defendant's] contentions lacked merit."  Thus, in the absence of a good faith basis, this line of questioning was not proper impeachment by contradiction or bias.  United States v. Scotti, 47 F.3d 1237, 1248 (2d Cir. 1995).

Moreover, this cross-examination was properly precluded even though the government was allowed to elicit from the witness on direct examination his testimony about the truth-telling provisions of his plea agreement and his compliance with the agreement's terms.  The witness's alleged lack of credibility was

central to the defendant's case and thus it was proper to allow the government to question him on this issue. United States v. Carr, 424 F.3d 213, 228 (2d Cir. 2005), cert. denied, 546 U.S. 1221 (2006).

With the exception of this one subject, the court gave the defendant virtually unrestricted latitude to attack, impeach, and challenge the witness's credibility and bias and "to expose his motivations to testify falsely in aid of the government's case." United States v. Mobley, 462 F.2d 69, 71 (2d Cir. 1972). It cannot be said that the court acted arbitrarily or irrationally in limiting cross-examination of this witness in this one minor respect. See, e.g., United States v. Crowley, 318 F.3d 401, 416-17 (2d Cir. 2003).

The defendant again has failed to raise a substantial or close question that would require reversal or a new trial.

E.  Batson/J.E.B. Challenge

Contrary to the defendant's claim, the court's denial of his Batson/J.E.B. motion based on the government's use of peremptory challenges to strike female jurors does not raise a substantial question.

Although the defendant's counsel conceded that the alleged pattern of discriminatory strikes became clear to them once the government exercised its first six strikes, it waited almost two hours, until after the twelve jurors and four alternates were

selected and all forty-six members of the final jury pool had been sent home for the night,[4] to raise the Batson/J.E.B claim. The defendant's failure to timely raise the challenge may be deemed a waiver. See United States v. Franklyn, 157 F.3d 90, 97 (2d Cir. 1998) (noting its holding that the failure to object to an adversary's use of peremptory challenges prior to the conclusion of jury selection waives the objection); McCrory v. Henderson, 82 F.3d 1243, 1249 (2d Cir. 1996) (noting that there are strong reasons for holding that the failure to object to the discriminatory use of peremptory challenges prior to the conclusion of jury selection waives the objection).

But even if there weren't a waiver, the defendant's dilatory tactic smacks of gamesmanship, the practical effect of which was to make it "much more difficult for the court to determine whether the government's strikes were in reaction to the defendant's challenges or whether they were discriminatory," not to mention the difficult situation it created for the government, which was forced to reconstruct and articulate after the fact its

---

[4] By way of background, twenty-one of the forty-six persons in the final jury pool were women, twenty-five were men. The court gave the defendant eighteen peremptory strikes and gave the government twelve. The government used its challenges to strike nine women and three men. The defendant used his challenges to strike thirteen men and five women (ten of his first fifteen were used to strike men). Eight of the twelve original jurors were men and four were women. One of the four alternates was a woman and she became a juror after a male juror was excused the first day of trial. The jury that deliberated and returned guilty verdicts was comprised of seven men and five women.

subjective and possibly intangible reasons for exercising its strikes. See McCrory v. Henderson, 82 F.3d at 1245 (stating that "the decision to exercise a peremptory challenge, in contrast to a challenge for cause, is subjective; and often the reasons behind that decision cannot be easily articulated" especially where an objection is not raised promptly).

Nonetheless, based on its observations and assessment of the government attorneys' demeanor and credibility during voir dire and when explaining their reasons and strategy, the court had no difficulty concluding that the government's specific, gender-neutral reasons for exercising peremptory strikes against female venire persons were believable, legitimate, and not pretextual. At that time the court had, just as it now has, no trouble concluding that the defendant's quibbles over a number of the government's explanations fell far short of establishing that the government's articulated reasons were pretextual and that it intentionally discriminated against women.

The court's factual finding as to the credibility of the government's gender-neutral explanations for its peremptory challenges will be given great deference on appeal. Hernandez v. New York, 500 U.S. 352, 364 (1991) (noting that Batson treats intent to discriminate as a pure issue of fact that is subject to review under a deferential standard). And the court's finding will not be disturbed on appeal unless it is found to be clearly

erroneous. Id. at 369 (adopting the clearly erroneous standard and noting that where a fact finder takes one of two permissible views of the evidence, its choice between them cannot be clearly erroneous); United States v. Brown, 352 F.3d 654, 661 (2d Cir. 2003) ("Once a trial judge finds that a prosecutor has exercised his peremptory challenges without discriminatory intent, that finding may not be disturbed on appeal unless it is clearly erroneous.").

The court's ruling on the defendant's Batson/J.E.B. challenge does not present a close question, let alone a substantial one that will be found clearly erroneous on appeal, and thus it is highly unlikely that this issue will result in reversal of his conviction.

### E. The Government's Summation

Finally, no close question is presented by the court's denial of the defendant's motion for mistrial based on his claim that the government's summation misleadingly and improperly referred to evidence about a conversation between the defendant and a government witness.

Despite the defendant's claim to the contrary, the record shows that the government's challenged remarks were supported by the evidence and were not contrary to information known to it and as such, were permissible. Cf. United States v. Rosa, 17 F.3d 1531, 1548-49 (2d Cir. 1994) (holding that it is improper for a

-16-

prosecutor in summation to mischaracterize the evidence or to refer to facts not in evidence, but if he does, such impropriety is not grounds for reversal unless the remarks caused the defendant substantial prejudice).

The likelihood that this far-from-substantial issue will result in reversal or a new trial is practically non-existent.

## CONCLUSION

For the foregoing reasons, the defendant has not sustained his burden of showing a substantial question of law or fact that is likely to result in reversal of his conviction or a new trial. Accordingly, his motion for release pending appeal [doc. # 2640] is DENIED. The defendant is ordered to surrender to the institution designated by the Bureau of Prisons on July 16, 2007 to begin serving his sentence.

SO ORDERED this 25th day of April, 2007 at Bridgeport, Connecticut.

```
               /s/
        _____
          Alan H. Nevas
      United States District Judge
```