# EXHIBIT B

LEXSEE

ARGONAUT INSURANCE COMPANY, ARGONAUT-MIDWEST INSURANCE COMPANY, ARGONAUT-NORTHWEST INSURANCE COMPANY and ARGONAUT-SOUTHWEST INSURANCE COMPANY, Plaintiffs, against JOHN V. GOEPFERT, COLEMAN LEFF, GEORGE OPPENHEIMER, RICHARD MAMARELLA, FRANCIS J. MURPHY, ALLEN ASSAEL, RAYMOND KARLINSKY, SAMUEL NEULINGER, MAURICE NEWMAN, RESOURCES FACILITIES, INC., R.F. AGENCY, INC., AMERACO, INC., MURGO FACILITIES, INC. and INRAM CORP., Defendants, and JOHN V. GOEPFERT, RESOURCES FACILITIES, INC., R.F. AGENCY, INC., and NORTHEAST FACILITIES CO., INC., Defendants and Third-Party Plaintiffs, against NORTH AMERICAN COMPANY FOR PROPERTY AND CASUALTY INSURANCE, THOMAS HARNETT, FRANK DONOHUE, STUART KEIR, JAMES SHEERAN, HERMAN HANSSLER and GERALD PORCELLI, Third-Party Defendants.

No. 76 Civ. 802 (CHT)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1980 U.S. Dist. LEXIS 14548

October 17, 1980

**COUNSEL:** [*1] DONOVAN LEISURE NEWTON & IRVINE, 30 Rockefeller Plaza, New York, New York 10020

WALTER L. STRATTON, ESQ. For Plaintiffs

LIPSIG, SULLIVAN, MOLLEN & LIAPAKIS, P.C., 100 Church Street, New York, New York 10007

SHEPHARD LANE, ESQ. For Goepfert Defendants

RUBIN, SEIDMAN & DOCHTER, 485 Lexington Avenue, New York, New York 10017

ALAN M. RUBIN, ESQ. For Inram Defendants

PARKER AUSPITZ NEESEMANN & DELEHANTY, 451 Madison Avenue, New York, New York 10017

JACK AUSPITZ, ESQ. For Third-Party Defendant North American Company for Property and Casualty Insurance

**OPINION BY:** TENNEY

**OPINION**

OPINION

TENNEY, J.

On September 22, 1980, plaintiff Argonaut Insurance Company ("Argonaut") moved to amend a Judgment and Order entered on September 10, 1980 ("Judgment") granting North American Company for Property and Casualty Insurance ("NACPAC") partial summary judgment against "the Goepfert defendants" if the amount of $482,612, with interest thereon from March 31, 1973 and directing that an accounting be held before Magistrate Joel Tyler to determine the amount, if any, of remaining damages. That motion has now been withdrawn by Argonaut, Affidavit of Walter L. Stratton, sworn to October 9, 1980 [*2] ("Stratton Aff.") P1, but was adopted by defendants John V. Goepfert and Allan Assael, Affidavit of Shephard Lane, dated October 8, 1980. Originally, three basic objections were raised against the Judgment. First, the grant of summary judgment was attacked on the ground that genuine issues of fact remained unresolved. Second, the date from

which interest was to be calculated was challenged. Third, it was contended that because the Judgment was not final within the meaning of *Federal Rule of Civil Procedure ("Rule") 54(b)* and could therefore not be executed, it was error to direct the clerk "to enter judgment."

The Court rejects the argument that any issues of material fact have been raised regarding NACPAC's claims against the Goepfert defendants. When Argonaut initially made this motion, it relied on an affidavit executed by John C. Roper, Argonaut's accountant, to demonstrate that some of the funds awarded to NACPAC actually belonged to Argonaut. The Court expresses no view on the merits of that claim. Argonaut and NACPAC have now resolved their differences and have executed an agreement providing for the equal distribution of NACPAC's recovery from the September 10th Judgment. [*3] Exh. A to Stratton Aff., P1. The Goepfert defendants have never submitted a scintilla of evidence in response to NACPAC's summary judgment motion. They cannot attempt to vacate that Judgment by relying on a prior, but now resolved, dispute between their two adversaries. Furthermore, the Roper affidavit attempted to demonstrate that funds wrongfully procured and used by the defendants actually belonged to Argonaut and not to NACPAC. Nothing in the affidavit suggested that the Goepfert defendants were actually innocent of the charges levelled against them. Accordingly, the Court sees no reason to deviate from its original conclusion that NACPAC's affidavits, depositions, and documents, which remain uncontroverted, amply support summary judgment.

Although Goepfert and Assael have not specifically challenged the March 31, 1973 interest date provided for in the Judgment, this was an issue raised in the motion originally made by Argonaut. While the Court expresses no opinion on the validity of the claim, it agrees that March 31, 1973 may not be the proper date from which to calculate interest on the amount awarded. It is unclear exactly how NACPAC arrived at this particular date. [*4] This question, therefore, should be explored further by Magistrate Tyler when he conducts an accounting on this matter.

The Court regrets if the language in its Judgment and Order directing the clerk to enter judgment created any confusion as to whether the Judgment was "final." The obvious omission of a citation to *Rule 54(b)* and of a statement that "there is no just reason for delay," evidenced the Court's intent that the Judgment not be viewed as final within the meaning of that Rule. This intention was expressly stated at a hearing held on October 9, 1980. Transcript of October 9, 1980 Hearing ("Tr.") at 8-9. At that time, counsel for NACPAC requested that the Court reconsider its decision not to enter a final judgment pursuant to *Rule 54(b)*. Id. at 8. Argonaut concurred in that application. Id. at 10-11. After reviewing the arguments made by NACPAC, as well as the relevant legal precedents and the facts of this particular case, the Court concludes that a final judgment should not be entered at this time.

In considering NACPAC's *Rule 54(b)* motion, this Court is guided by the Supreme Court's recent decision in Curtiss-Wright Corp. v. General Elec. Co., 48 U.S.L.W. [*5] 4422 (U.S. April 22, 1980). The Curtiss-Wright Court stated that "the discretionary judgment of the District Court should be given substantial deference, for that court is 'the one most likely to be familiar with the case and with any justifiable reasons for delay.'" Id. at 4424, quoting Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 437 (1956). Among the factors to be considered, the Court listed: the prevention of piecemeal appeals; whether the claim on which judgment was granted was separable from the rest of the case; the difference between the prejudgment and the market interest rates; and the additional amount of time that would probably be required to complete the litigation. Id.

NACPAC claims that all the Curtiss-Wright factors favoring *Rule 54(b)* certification are present in this case because: (1) NACPAC's summary judgment claim is separable from those remaining to be litigated and the Court has already severed this claim in the September 10th Judgment; (2) the difference between the market and prejudgment rates of interest makes it important for NACPAC to collect now; and (3) NACPAC is likely to be prejudiced by any delay, in light of the precarious financial position [*6] of the Goepfert defendants and their alleged attempts to transfer their New Jersey property. With respect to this last allegation, NACPAC points out that it will have greater rights in a New Jersey action to set aside these conveyances as fraudulent if its claim is reduced to a final judgment.

The Court agrees that the Goepfert defendants' financial situation and their alleged real estate maneuvers place NACPAC in a disadvantageous position with

respect to recovering on the Judgment. This disadvantage, however, is alleviated in part by the Court's issuance of a preliminary injunction restraining the defendants from transferring or encumbering any interest they have in certain properties and from disposing of other assets now in their possession. More importantly, the precise amount of money to be awarded on the summary judgment motion has yet to be determined. Although NACPAC's claims may be "separable" from other claims in this case, its claim for the $482,612 awarded in the Judgment is hardly separate from its claim to other damages that may be awarded by Magistrate Tyler when the accounting on this claim is completed. Bifurcating judgments that award monetary relief based [*7] on the same underlying claim is likely to give rise to piecemeal appeals in which the appellate court is twice presented with the exact same issue. The Curtiss-Wright Court indicated that a court's discretion in a *Rule 54(b)* motion is to be exercised in the interest of sound judicial administration. The Court finds that this interest would be thwarted by granting a final judgment at this time.

At the October 9, 1980 hearing, counsel for the parties and the Court discussed deposing Goepfert and Assael in connection with the accounting being conducted by Magistrate Tyler and to acquire information to effectuate the terms of the preliminary injunction. Counsel for Goepfert and Assael requested that if his clients must appear before the Magistrate, their responses to any and all questions be subject to a protective order. Goepfert has already submitted an affidavit stating that he would take the *Fifth Amendment* rather than respond to any deposition inquiries. No such affidavit has been provided by Assael since the Magistrate suggested that his deposition be deferred. See Tr. at 4-5.

At the hearing, the Court suggested that there must be some relevant questions to which these [*8] gentlemen could respond without incriminating themselves. Tr. at 4, 21. The Court also noted that one major problem with a protective order is that it can prevent the opposing side from effectively pursuing the question of perjury because the deponents' answers to questions cannot be disclosed. In light of the tortured history of his litigation, this risk appears particularly acute. Finally, the Court concludes that neither the *Fifth Amendment* nor the Federal Rules contemplates a blanket refusal to provide any discovery in an action that concerns allegedly unlawful conduct. Rather, "the defendant may be required to attend a deposition or make answers to interrogatories until there is a reasonable danger that continuing to answer will tend to incriminate him." *Guy v. Abdulla, 58 F.R.D. 1, 2 (E.D. Ohio 1973)*; see *Capitol Products Corp. v. Heron, 457 F.2d 541, 543 (8th Cir. 1972)*. The test for evaluating a *Fifth Amendment* privilege claim is whether "from the implications of the question, in the setting in which it is asked, [it is evident] that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosures could [*9] result." *Hoffman v. United States, 341 U.S. 479, 486-87 (1951)*. The defendants, therefore, cannot refuse to participate in discovery but must claim their privilege with specificity in response to particular questions. See *Quinn v. Petto, 84 F.R.D. 104, 105-06 (M.D. Pa. 1979)*; *In re Penn Central Securities Litigation, 347 F. Supp. 1347, 1348 (E.D. Pa. 1972)*.

Accordingly, rather than issue a blanket protective order, the Court directs that Goepfert and Assael appear before Magistrate Tyler to respond to questions propounded by opposing counsel concerning (1) the accounting currently being conducted pursuant to the September 10, 1980 Judgment and Order, and (2) properties and assets that may be subject to the preliminary injunction issued by this Court.

So ordered.